1  MAYER, BROWN, ROWE & MAW LLP
   Donald M. Falk (SBN 150256)
2  Lee H. Rubin (SBN 141331)
   Shirish Gupta (SBN 205584)
3  Two Palo Alto Square, Suite 300
   Palo Alto, California 94306
4  Telephone:     (650) 331-2000
   Facsimile:     (650) 331-2060
5  lrubin@mayerbrownrowe.com

6  MAYER, BROWN, ROWE & MAW LLP
   Alan N. Salpeter (admitted *pro hac vice*)
7  Javier Rubinstein (admitted *pro hac vice*)
   Vincent P. Schmeltz III (admitted *pro hac vice*)
8  190 South LaSalle Street
   Chicago, IL  60603-3441
9  Telephone:     (312) 782-0600
   Facsimile:     (312) 701-7711
10 jrubinstein@mayerbrownrowe.com

11 Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
   J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
12
   ORACLE CORPORATION
13 Dorian Daley (SBN 129049)
   James C. Maroulis (SBN 208316)
14 500 Oracle Parkway, Mailstop 5OP7
   Redwood Shores, California 94065
15 Telephone:     (650) 506-5200
   Facsimile:     (650) 506-7114
16 jim.maroulis@oracle.com

17 Attorneys for Defendant ORACLE CORPORATION

18                        UNITED STATES DISTRICT COURT

19            NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| 20  IN RE ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-0988-MJJ (Consolidated) |
| 21 | |
| 22 | **DISCOVERY MATTER** |
| 23  ------------------- | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C); DECLARATION OF VINCENT P. SCHMELTZ III** |
| 24  This Document Relates To: | |
| 25  ALL ACTIONS. | **Referred to Magistrate Judge Spero** |
| 26 | Date: February 4, 2005 |
| 27 | Time: 9:30 a.m. 15th Floor, Courtroom A |
| 28 | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
PURSUANT TO FED. R. CIV. P. 26(C); CASE NO.: C-01-0988-MJJ**

1  Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley, and Edward J.
2  Sanderson (respectively, the "Company," "Ellison," "Henley," and "Sanderson," and collectively
3  "Oracle") submit this reply memorandum in support of their Motion For Protective Order Pursuant
4  To Fed. R. Civ. P. 26(c) (the "Motion").

5  **I.    INTRODUCTION**

6  Defendants seek a logical discovery sequence that will allow this Court to define the scope
7  of discovery in this litigation, including third party discovery, and permit discovery to proceed as
8  quickly and efficiently as possible. The proposal is simple: consistent with the approach
9  contemplated in the Federal Rules, party discovery should take place before third party discovery.
10 The impact of such a sequence on current discovery efforts would also be negligible: it would
11 merely require Plaintiffs to halt their efforts to enforce their third party subpoenas while the parties
12 attempt—by negotiation or Court intervention—to define the proper scope of discovery in the case.
13 The benefits of such sequencing would be dramatic: neither the parties nor third parties would
14 have to waste their time, effort and money litigating over the scope of discovery, and would also
15 spare third parties from having to produce information that could otherwise be obtained through
16 first party discovery.

17 In response, Plaintiffs seemingly contend that this Court has no power to control either the
18 amount or sequence of third party discovery, and that Plaintiffs thus are free to do whatever they
19 wish in seeking information from third parties. Instead, they suggest that courts around the country
20 should be left to decide whether the information they seek through their wave of subpoenas falls
21 within the proper scope of discovery. Simply put, Plaintiffs' position makes no sense. The Federal
22 Rules clearly grant this Court the authority to control this litigation, including the authority to
23 ensure that discovery is conducted in a manner that is speedy, efficient and does not unnecessarily
24 burden third parties. The relief that Defendants seek is necessary to prevent immediate and
25 significant harm, including damage to Oracle's customer relationships that will result from
26 unfettered discovery into issues having no relationship to this case or information that could
27 otherwise be obtained in first party discovery. Moreover, as demonstrated below, Defendants have
28 sought this relief in a timely and appropriate manner.

Accordingly, Defendants thus respectfully request the Court grant their Motion for a Protective Order, requiring Plaintiffs to withdraw their pending third party subpoenas without prejudice.

## II. THIS COURT HAS THE AUTHORITY TO CONTROL THE SEQUENCE OF DISCOVERY AND SHOULD EXERCISE THAT AUTHORITY.

Contrary to their assertion, Plaintiffs are not entitled to "unfettered discovery." *See* Fed. R. Civ. P. 26(b)(2) (West 2005). The Federal Rules grant this Court clear authority to limit the "frequency or extent of use of the discovery methods otherwise permitted under" the Federal Rules. *Id.* The Court should exercise that power here by imposing a logical discovery sequence that will ensure that the scope of discovery conforms to the actual issues to be resolved in the case. It also will ensure an efficient process in which the parties are required to obtain relevant discovery from each other before they burden third parties.

This Court has "complete control . . . over the discovery process." *See, e.g.,* Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2036 (West 1994). The Court can exercise its power under Fed. R. Civ. P. 26(c) to vary the sequence and timing of discovery. *See, e.g., Roberts v. Americable Int'l Inc.*, 833 F. Supp. 499, 505 (E.D. Cal. 1995).[1] Indeed, even

---

[1] Defendants do not need special standing—as Plaintiffs suggest—to request that the Court exercise this authority. And, in fact, none of the authority on which Plaintiffs rely suggests otherwise. The two Ninth Circuit cases on which Plaintiffs rely are criminal, not civil cases. *See e.g., United States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997) (noting in dicta that "[i]n analogous cases involving rights of witnesses, courts have regularly held that a defendant or putative defendant lacks standing to object to a subpoena issued to a nonparty witness." (citing *United States v. Miller*, 425 U.S. 435, 444 (1976)); *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, (9th Cir. 1991) (also citing Miller, 425 U.S. at 444)). And, they rely on principles that are wholly inapplicable here. Both Ninth Circuit cases rely on the Supreme Court's decision in *Miller*, yet another criminal case. *Miller* stands for the proposition that a bank customer cannot object to the subpoena of his records from his bank on the grounds that such an act infringes upon his Fourth Amendment rights. 425 U.S. at 444. Thus, neither *Miller* nor its Ninth Circuit progeny shed any light on the present issue of whether the Court has authority to limit the scope and sequence of discovery against third parties in a civil case.

In addition, Plaintiffs' attempt to distinguish Defendants' cases falls flat. (Opp'n at 6-7.) While there may be differences in the factual setting of those cases, each stands for the proposition that this Court has the power to control discovery in this case, ***even if it requires issuing an order that impacts subpoenas issued from other courts***.

Plaintiffs concede that the Court has authority under Fed. R. Civ. P. 16(b) to "control and manage discovery." (Opp'n at 12, n. 11.)

"Probably the judge's most important function in the early stages of litigation management is to press the parties to identify, define, and narrow the issues." MOORE'S FED. PRACTICE MANUAL FOR COMPLEX LITIG. § 11.41 (4th ed. 2004). Courts exercise such litigation management by, among other things, ensuring "concurrent issue definition" as discovery unfolds. *See, e.g.,* Report to the President and the Attorney General, 80 F.R.D. 509, 560 (West 1979). This type of control prevents "unduly broad and protracted" discovery "conducted without sufficient direction or reasonable scope." *Id.* That is precisely the situation here. Indeed, given the massive wave of third party discovery that Plaintiffs launched without waiting to receive a single document from Oracle, and without giving this Court a chance to rule on the scope of discovery, the need for this Court's intervention is both compelling and immediate.[2]

The almost 100 subpoenas that Plaintiffs served on third parties seek massive amounts of information that are beyond the scope of discovery, including extensive information about the technical functionality and operability of Oracle's Suite 11i, and specific implementations of Suite 11i at hundreds of individual customers. *See, e.g.,* Defs.' Mem. of Pts. and Auth. in Supp. of Defendants' Mot. for Prot. Order at 4. Such discovery is both unduly burdensome and not reasonably calculated to lead to discovery of admissible evidence. The Revised Second Amended Complaint ("RSAC") alleges only that this securities class action concerns an earnings-miss; it does not allege a product liability action or a customer lawsuit. Plaintiffs, on the other hand, ignoring the allegations of the RSAC, insist that they have an "independent[]" claim based on

---

[2] Defendants originally requested that the Court require Plaintiffs to withdraw 93 subpoenas to Oracle's customers. Plaintiffs also seek overly broad third party discovery from Oracle's former and current auditors. Although Defendants did not reference the subpoenas to these auditors—Arthur Andersen and Ernst & Young—in the original motion, they have since learned that Plaintiffs refuse to narrow the scope of these subpoenas to issues relevant to this case. These subpoenas are also appropriately within the ambit of this requested order, as sequenced discovery would also allow the parties to resolve scope issues with respect to this aspect of the case. Thus, Defendants respectfully request these subpoenas be included in the Court's Order. Defendants have submitted a Revised Proposed Order, to this end.

1  purportedly false statements about Suite 11i regardless of whether Suite 11i played any role in
2  Oracle's earnings-miss. Opp'n. at 9.

3  These hotly disputed issues, as well as other significant disputes about the scope of
4  discovery, will shortly be presented to this Court for its resolution, as the parties presently are
5  completing their meet-and-confer process. To be sure, these are issues that *this* Court should
6  properly resolve given its knowledge of the case, rather than leaving it to courts around the country
7  that have no relationship to this case to deal with a burdensome process that not only risks
8  inconsistent rulings, but inevitably would confuse the discovery process. Absent this Court's
9  intervention, Defendants will have to sort through and review potentially millions of documents,
10 many of which may ultimately deemed be irrelevant based on this Court's subsequent rulings on
11 discovery motions brought by the parties in this case. In addition, Plaintiffs' broad third party
12 discovery requests threaten Oracle's valuable customer relationships, as Oracle's customers are
13 forced to invest significant resources in complying with burdensome discovery requests in
14 litigation that they have nothing to do with.[3]

15 Defendants are not seeking an indefinite delay of third party discovery. The parties have
16 already agreed to a briefing schedule that will place the Suite 11i issue before the Court by Friday,
17 February 4, 2005.[4] Any other issues affecting third party discovery can also be raised with the
18 Court in equally prompt fashion.[5] After the Court rules on these issues, and defines the actual
19 scope of discovery, the parties can then obtain discoverable information from each other before

---

[3] While Plaintiffs vaguely claim that Defendants have not shown that the subpoenas present any harm to Oracle, the subpoenas pose two forms of particularized harm to Oracle: (1) it is undisputed that numerous third parties have objected to the subpoenas as harassment— harassing a company's customers simply *because* they are customers harms the company— and (2) this enormously broad and irrelevant discovery will pose an undue burden on Defendants because they will have to, at a minimum, review the reams of paper generated by these largely impertinent requests.

[4] During a lengthy meet and confer on January 27, 2005, the parties agreed that Defendants would submit a letter brief to the Court regarding the relevance of Suite 11i to this case by Tuesday, February 1, 2005, and Plaintiffs would submit their response on Friday, February 4, 2005, the day this motion is to be heard. V. Schmeltz Decl. at ¶ 3.

[5] For instance, Plaintiffs' document requests to Defendants on accounting issues similar to those propounded on Arthur Andersen and Ernst & Young are equally broad—each can benefit from further refining the outstanding issues in this case. After Defendants complete the meet and confer process, Defendants could present any unresolved issue to this Court in short order.

burdening third parties with document requests. Contrary to Plaintiffs assertions that such sequencing will delay the discovery process (Opp'n at 10-11), it actually will ensure a quicker, more efficient and less burdensome discovery process for all concerned.

### III. DEFENDANTS' MOTION IS TIMELY AND PROPER.

#### A. Defendants Promptly Sought Their Requested Relief

Plaintiffs wrongly contend that because Plaintiffs have been pushing third parties to respond to the subpoenas since December, the instant motion is somehow untimely. This argument lacks any basis in law or fact.

Regarding the legal deficiencies in Plaintiffs' argument, Plaintiffs' opposition papers entirely ignore the well settled law that a party to a litigation creates an undue burden by seeking discovery from third parties *before* attempting to obtain the necessary information from party discovery. *See, e.g., Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 391 (N.D. Cal. 1993).[6] This case presents a wholesale disregard of this basic principal because here Plaintiffs served almost 100 subpoenas before they had received *any documents* from Defendants. Plaintiffs appear to be arguing that a party should be free to burden third parties if that party serves massive amounts of third party discovery at the very beginning of fact discovery. There is simply no legal support for Plaintiffs' position.[7]

Regarding the factual flaws in Plaintiffs' argument, Plaintiffs cannot escape the fact that Defendants promptly brought their objections to the Court for resolution. The matter was considered by Judge Jenkins earlier this month, and he specifically allowed Defendants to bring

---

[6] Plaintiffs' attempt to distinguish this case lacks any substantive support. Plaintiffs state that the *Richards* case stands for the proposition that a court can require a litigant to obtain documents from a party, rather than a third party, when the party can prove its case ***without recourse to the third party's documents.*** (Opp'n. at 12.) Then, Plaintiffs flatly assert that they cannot prove their case without third party documents. Defendants' respectfully assert that ***this is the precise point that supports sequenced discovery***—if this is a forecasting case, as Defendants assert, the only evidence that is relevant is evidence ***to which the Defendants had access***. In other words, a preliminary determination of the scope of the case would shape and define any necessary third party discovery.

[7] Indeed, the only support that Plaintiffs cite is Federal Rule of Civil Procedure 26(d), which largely concerns party discovery, and which explicitly states that the Court may order sequenced discovery "upon motion, for the convenience of parties and witnesses and in the interests of justice."
5

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**
**PURSUANT TO FED. R. CIV. P. 26(C); CASE NO.: C-01-0988-MJJ**

this very Motion. Plaintiffs therefore acted at their own peril when they spent their allegedly "countless hours" continuing to pursue their third party discovery. Indeed, as shown below, Defendants have acted diligently in pursuing the relief that they now seek:

- On December 8, 2004, Plaintiffs served Defendants with notice of the first of several batches of subpoenas (V. Schmeltz Decl. at ¶ 4);

- On December 10, 2004, Defendants notified Plaintiffs' counsel that it objected to the subpoenas, thus beginning the meet and confer process required by the Pretrial Order (V. Schmeltz Decl. Ex. 1);

- When Plaintiffs' counsel refused to withdraw the subpoenas, and instead sought to delay the process, Defendants sought relief by letter brief in accordance with the Pretrial Order (V. Schmeltz Decl. at ¶ 6, Ex. 2);

- On January 4, 2005, the Court held a telephone conference with the parties to discuss Defendants' request for relief and informed them that the Court could only grant the relief sought upon a formal motion (V. Schmeltz Decl. at ¶ 7);

- On January 10, 2005, Defendants filed the present Motion (V. Schmeltz Decl. at ¶8);

- The following day, Defendants filed a motion to shorten time pursuant to Civil L.R. 6-1(B) (V. Schmeltz Decl. at ¶ 9);

- Plaintiffs not only objected to Defendants' request to shorten time, but delayed serving their response to this Motion, which was due on January 24, until January 25 (V. Schmeltz Decl. at ¶ 10).[8]

**B.** **<u>Plaintiffs' Allegations Of Discovery Interference Are Meritless.</u>**

Soon after Plaintiffs served dozens of Oracle customers with burdensome subpoenas, each of which propounded more than twenty document requests, Oracle contacted its customers by letter to apologize for any inconvenience they may suffer. At every turn in this process, however, Oracle has reminded its customers of their legal obligations to respond to the subpoenas within the bounds of the law—Oracle has never "suggested" that parties object, as Plaintiffs imply. *See e.g.,* December 28, 2004 Letter from J. Maroulis, attached as Exhibit 5 to V. Schmeltz Decl. ("the subpoena may have legal consequences to you before such time as Oracle can be heard by a court.

---

[8] Plaintiffs should not be allowed to benefit from their failure to follow the Court's Order, setting the date for their Opposition to January 24, 2005. Local Rule 5.5(a)(1) requires that papers be "actually delivered to the receiving attorney . . . on or before the due date." Their failure to comply with the Local Rules and the Court's Order constitute cause to have their opposition struck, entirely.

1 You may want to consult with your legal counsel as soon as possible, as the Federal Rules of Civil
2 Procedure that govern the subpoena afford you only *fourteen days from the date you first received*
3 *the subpoena from Plaintiffs* to assert any objection you might have to the subpoena.").

4 After the January 4, 2005 telephone conference with Judge Jenkins, Oracle received
5 inquiries from certain of its customers as to the outcome of its request for protective order, as many
6 customers understandably took the position that these issues should be resolved by the parties
7 themselves in the context of first party discovery.  Moreover, Plaintiffs' counsel misleadingly
8 informed the subpoenaed parties that Oracle's request for a protective order had been denied,
9 without informing them that the Court had expressly granted Oracle leave to file the instant motion.

10 Indeed, Plaintiffs told one Oracle customer who had objected to the subpoena that
11 "Defendants' request for a protective order regarding non-party discovery was denied . . . [and] the
12 Court specifically declined to stay the production date of any third party discovery in this action.
13 The spirit of the Court's Order would not be met by Verizon's delay of the production of relevant
14 documents in this action."  V. Schmeltz Decl. ¶ 13, Ex. 7.  Plaintiffs did not inform Verizon that
15 the Court had granted Defendants leave to file a motion for a protective order.  Indeed, Plaintiffs
16 created the false impression that the protective order motion had been resolved in their favor and
17 that Verizon must now produce documents.  In light of Plaintiffs' conduct, it is scarcely surprising
18 that when Defendants offered to exchange with Plaintiffs *all letters* that either party sent to any
19 third party about the subpoenas – so that the Court could have an accurate record of what actually
20 was communicated, rather than mere speculation – Plaintiffs refused.  V. Schmeltz Decl. Ex. 12.

21 Given Plaintiffs' omission of the central fact that the Court did *not* issue a substantive
22 ruling on Oracle's request but rather granted Oracle leave to seek the relief requested by this
23 motion, Oracle's counsel sent the January 11, 2005 letter to its customers, accurately informing
24 them that "the Court would not stay the response/objections dates for the subpoenas.  The Court,
25 however, authorized Oracle to bring a motion for protective order."  (January 11, 2005 Letter,
26 attached as Exhibit 10 to V. Schmeltz Decl.)  Oracle's counsel did not include a copy of the
27 January 6 Order because Oracle's counsel was not aware that any order had been entered.  V.
28 Schmeltz Decl. at ¶¶ 14-18, Decl. Exs. 8 & 9.

7
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
PURSUANT TO FED. R. CIV. P. 26(C); CASE NO.: C-01-0988-MJJ

## IV. GRANTING THIS MOTION WOULD NOT PREJUDICE PLAINTIFFS OR THIRD PARTIES.

Scrambling to find some basis to oppose this motion, Plaintiffs contend that regardless of any legal deficiencies in their position, the motion should be denied because Plaintiffs and third parties will be prejudiced if the motion is granted. This claim is completely unsupported.

As an initial matter, Plaintiffs' claim that third parties would be harmed by granting this motion is simply absurd. To date, Defendants have received more than 28 objections from third parties who have refused to produce documents on the ground that the subpoenas are over broad, unduly burdensome, or constitute harassment. Plaintiffs cannot be contending that it somehow will be *less burdensome* for the subpoenas to be withdrawn. Moreover, there is no factual support for Plaintiffs' claim that "[m]any subpoenaed third parties have . . . agreed to produce documents subject to certain agreements to narrow the scope of the subpoena." (Opp'n. at 13.) To the contrary, Defendants requested that Plaintiffs provide them with a list of third parties with whom such agreements had been reached, and Plaintiffs refused to do so, asserting, *inter alia*, that such agreements were *privileged*. V. Schmeltz Decl. Ex. 12. While Plaintiffs claim there are "many" such agreements, Plaintiffs refuse to disclose how many such agreements there are, with whom, and what the terms of those agreements might be. Thus, the only evidence in the record is that numerous third parties have objected to these subpoenas as unduly burdensome, and staying or withdrawing these subpoenas certainly will not harm those third parties.

Plaintiffs' argue that they would have to "redraft and reissue every subpoena at considerable time and expense" and the entire process will be considerably delayed. Not so. The Court has broad discretion to fashion discovery remedies that best suit the needs of the case. For example, the Court could issue an order stating simply that, until further order of the Court, Plaintiffs may not seek to compel production of documents sought by Plaintiffs' subpoenas pursuant to Rule 45(c). Such an order merely would maintain the status quo. As it stands now, the dozens of customers who properly have objected to the subpoenas have no duty to, and do not intend to, produce documents. V. Schmeltz Decl. at ¶ 20. At least 8 customers have conditioned their production on the outcome of this Motion. V. Schmeltz Decl. at ¶ 21. There is thus no reason

to believe that Plaintiffs would have to redraft the subpoenas. Once the scope of discovery is determined, and after Defendants have produced any discoverable information that Plaintiffs reasonably are entitled to, Plaintiffs could then contact the third parties they have subpoenaed, identifying the categories of information that this Court has ruled to be discoverable, and that Plaintiffs have not otherwise been able to obtain from Defendants. Such a process would neither be unduly burdensome nor protracted.

Moreover, Plaintiffs' complaints about the alleged costs relating to these subpoenas overlook the fact that this situation is entirely of Plaintiffs' making. Plaintiffs chose to seek third party discovery *before* receiving any party discovery, without any attempt to minimize the burdens to third parties, contrary to Rule 45's explicit requirements. Plaintiffs then refused to withdraw or stay the subpoenas, even during the pendency of this motion. Indeed, Plaintiffs even opposed Defendants' motion for an order shortening time, which was designed to obtain quick resolution of this matter in order to minimize the disruption created by these subpoenas. Once again, Plaintiffs apparently argue that they should be entitled to an exception from the general procedures governing discovery not because Plaintiffs have attempted to comply with these procedures, but rather, because Plaintiffs have willfully disregarded them. Having burdened dozens of companies, large and small, with broad subpoenas, Plaintiffs cannot be heard to complain that it would be too burdensome for *them* if the subpoenas were stayed or withdrawn.

## CONCLUSION

For the reasons set forth above, and those previously set forth in Defendants' Motion, Defendants respectfully request that the Court grant their Motion for a Protective Order.

Dated: January 28, 2005                                    MAYER, BROWN, ROWE & MAW LLP


By: /s/ Lee Rubin
    Lee Rubin
Attorneys for Defendants Oracle Corporation,
Lawrence J. Ellison, Jeffrey O. Henley and
Edward J. Sanderson

## DECLARATION OF VINCENT P. SCHMELTZ III

I, VINCENT P. SCHMELTZ III, declare and state that:

1.  I am an attorney admitted *pro hac vice* to practice law in the Northern District of California and am with the law firm of Mayer, Brown, Rowe & Maw LLP, counsel for Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey Henley and Edward Sanderson. I have personal knowledge of the facts set forth in this Declaration and, if called upon, I could testify competently thereto.

2.  I make this declaration in support of Defendants' Reply in Support of Motion for a Protective Order Pursuant to Fed. R. Civ. P. 26(c).

3.  On January 27, 2005, the parties participated in a meet and confer session during which they agreed that Defendants would submit a letter brief to the Court regarding the role of Suite 11i in this case by Tuesday, February 1, 2005, and Plaintiffs would submit their response on Friday, February 4, 2005.

4.  On December 8, 2004, Plaintiffs served Defendants with notice of the first of several batches of subpoenas.

5.  Attached as Exhibit 1 is a true and correct copy of the December 10, 2004 letter from Lee Rubin to Shawn Williams notifying Plaintiffs of Defendants' objections to the subpoenas.

6.  Attached as Exhibit 2 is a true and correct copy of Defendants' December 15, 2004 letter brief.

7.  On January 4, 2005, the Court held a telephonic hearing regarding Defendants' request for a protective order. The Court informed Defendants that a protective order could only issue if they filed a motion, and the Court granted Defendants leave to file such a motion. The Court also declined to stay the subpoenas in the interim. Defendants ask the Court to take judicial notice of the January 4, 2005 Minute Order, which Defendants have attached as Exhibit 3 to this Declaration.

8.  On January 10, 2005, Defendants filed their Motion for Protective Order.

1
**DECLARATION OF V. SCHMELTZ IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
PURSUANT TO FED. R. CIV. P. 26(C); CASE NO.: C-01-0988-MJJ**

9. On January 11, 2005, Defendants filed a Motion to Shorten Time to Hear Defendants' Motion for Protective Order.

10. Plaintiffs' opposition purports to have been served by facsimile on January 24, 2005 and includes a certification of service by Carolyn Burr. However, it is clear from the facsimile header that the document did not arrive in either the Palo Alto or Chicago offices of Mayer, Brown, Rowe & Maw LLP until January 25, 2005. True and correct copies of sample pages from the service to each office are attached as Exhibit 4.

11. Attached as Exhibit 5 is a true and correct copy of the December 28, 2004 letter from Jim Maroulis to an Oracle customer, which is representative of the letters Defendants sent to other Oracle customers that were the subjects of Plaintiffs' notice of subpoenas on or about the same date.

12. Attached as Exhibit 6 is a true and correct copy of an email forwarded to my colleague, Gina Diomedi, by John Walker of Verizon which purports to be a January 7, 2005 email from Plaintiffs' counsel Willow Radcliffe to John Walker.

13. Attached as Exhibit 7 is a true and correct copy of the January 4, 2005 Minute Order which was attached to the email from Willow Radcliff to John Walker, which was forwarded to Gina Diomedi by John Walker.

14. Defendants first learned that the Court entered a January 6, 2005 order regarding Defendants' request for a protective order upon receiving it as an attachment to the Declaration of Shawn Williams in Support of Plaintiffs' Opposition to Defendants' Motion to Shorten Time on January 14, 2005.

15. Defendants did not receive a copy of Plaintiffs' Proposed Order regarding the January 4, 2005 telephonic hearing until after it had been filed.

16. Attached as Exhibit 8 is a true and correct copy of the Court's January 6, 2005 Order regarding the January 4, 2005 telephonic hearing.

17. Plaintiffs did not serve Defendants with the January 6, 2005 Order regarding the January 4, 2005 telephonic hearing when they received it.

**DECLARATION OF V. SCHMELTZ IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C); CASE NO.: C-01-0988-MJJ**

18.     Attached as Exhibit 9 is a true and correct copy of the January 6, 2005 letter from Lee Rubin to Judge Jenkins attaching Defendants' proposed order.

19.     Attached as Exhibit 10 is a true and correct copy of the January 11, 2005 letter from Gina Diomedi to an Oracle customer, which is representative of the letters Defendants sent to other Oracle customers which were the subjects of Plaintiffs' notice of subpoenas on or about the same date.

20.     Attached as Exhibit 11 are true and correct copies of the following Oracle customer responses to Plaintiffs' subpoenas: Letter dated December 28, 2004 from John Cleary on behalf of Alcoa Inc.; Letter dated December 16, 2004 from Wayne Bussell on behalf of Alliance Coal, LLC; January 18, 2005 Amended Responses and Objections of Comcast on behalf of AT&T Broadband; December 27, 2004 Response of New Cingular Wireless, Inc. formerly AT&T Wireless Services, Inc.); Letter dated December 20, 2004 from Jeremy Griffin on behalf of The Boeing Company; Letters dated December 17, 2004 and January 18, 2005 from Steven W. Poquette on behalf of CoBank; December 22, 2004 Responses and Objections and January 5, 2005 Supplemental Responses and Objections of ConocoPhillips Company; Letter dated December 30, 2004 from Julie Nelson on behalf of Diners Club International, Ltd.; December 27, 2004 Objections of DuPont Photomasks, Inc.; Letter dated December 23, 2004 from Louis Karasik on behalf of Eaton Corporation; December 22, 2004 Objection of Empirix, Inc.; Letter dated January 7, 2005 from Charles L. Cope on behalf of Federal Deposit Insurance Corporation; Letter dated December 27, 2004 from Robert Ross on behalf of FedEx Corporation; December 29, 2004 Objections of Hartford Life, Inc.; December 29, 2004 Objections of Hartford Technology Services Company; Letter dated December 23, 2004 from David Pernini on behalf of Hostcentric Technology, Inc.; December 23, 2004 Objections of IKON Office Solutions, Inc.; December 28, 2004 Objections of Infonet Services Corporation and December 28, 2004 cover letter; Letter dated January 11, 2005 from Anthony Bartell on behalf of Ingersoll-Rand Company; December 27, 2004 Objections of JDS Uniphase Corporation; December 17, 2004 and January 12, 2005 Objections of KEMET Electronics Corporation; Letter dated January 6, 2005 from Karen Whitt and Jeffery Gordon on behalf of Legerity, Inc.; Letter dated January 10, 2005 from Janice Rhodes on behalf of Metavente

1  Corporation; Letter dated January 7, 2005 from Ellen Hudock on behalf of Motorola, Inc.; Letter
2  dated December 23, 2004 from David Barron on behalf of Mutual of Omaha Insurance Company;
3  Letter dated December 21, 2004 from Cynthia Weber Scherb on behalf of Sprint Corporation;
4  December 23, 2004 Responses and Objections of Texas Instruments Incorporated; Letter dated
5  January 7, 2005 from John Walker on behalf of Verizon Communications, Inc.

6        21.   At least 8 customers have conditioned their production on the outcome of
7  Defendants' Motion for Protective Order.  *See* December 30, 2004 letter from Julie Nelson on
8  behalf of Diners Club International, Ltd. at p. 2 ("I understand that a motion for protective order is
9  presently pending before the Court.  If the Court permits you to proceed with third party discovery
10 against Diners, Diners is willing to meet and confer regarding a reasonable set of requests, subject
11 to appropriate protections and expense reimbursement."); December 23, 2004 letter from Louis
12 Karasik on behalf of Eaton Corporation at ¶ 8 ("Eaton is advised that defendants' counsel has
13 sought a protective order that would limit or restrict plaintiffs' from pursuing the discovery
14 described in the subpoena, and those objections are now pending before the Court.  Eaton objects
15 to production of any documents until such time as the Court has ruled on these objections.");
16 December 23, 2004 letter from David Pernini on behalf of Hostecentric Technology, Inc. at p. 1
17 ("Hostcentric objects to producing documents in response to the subpoena until Oracle's opposition
18 has been resolved by the Court."); December 28, 2004 letter from Allan Schare on behalf of
19 Infonet Services Corporation ("Without waiving any of ISC's objections to the Subpoena, and
20 subject to the Court's ruling on Oracle's pending motion to quash . . ., if Plaintiff is willing to
21 narrow the scope of the documents requested by the Subpoena, ISC will consider producing
22 responsive documents, if any . . . ."); January 12, 2005 Objections of KEMET Electronics
23 Corporation at ¶ 3 ("KEMET should not have to respond to the requests, or gather the information
24 sought in the Requests, unless and until the Court rules on the Motion for a Protective Order.");
25 January 7, 2005 letter from Ellen Hudock on behalf of Motorola, Inc. at p. 1 ("In the event the
26 Court denies Oracle's request to withdraw the subpoenas, Motorola is prepared to produce at the
27 appropriate time, subject to and without waiving its objections, responsive, non-privileged
28 documents in Motorola's possession, custody or control in response to the subpoena.");

December 23, 2004 Responses and Objections of Texas Instruments Incorporated at ¶ 11 ("TI, a non-party in this action, will not collect or produce responsive documents until plaintiffs' right to obtain discovery has been determined by the Court."); January 7, 2005 letter from John Walker on behalf of Verizon at ¶ 1 ("Until [Defendants' Motion for Protective Order] is ruled on by the Court, and the proper sequencing of discovery is determined, any effort to seek compliance from Verizon is premature."), all of which are included in Exhibit 11.

22. Attached as Exhibit 12 is a true and correct copy of a January 18, 2005 letter from Lee Rubin to Shawn Williams and a January 19, 2005 response letter from Willow Radcliffe to Lee Rubin.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that this Declaration was executed on January 28, 2005 in Chicago, Illinois.

/s/ Vincent P. Schmeltz III
Vincent P. Schmeltz III