LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (68581)
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
401 B Street, Suite 1600
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
   – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
ELI R. GREENSTEIN (217945)
JENNIE LEE ANDERSON (203586)
MONIQUE C. WINKLER (213031)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| ALL ACTIONS. | |
| | DATE:          May 10, 2005 |
| | TIME:          9:30 a.m. |
| | COURTROOM:  Honorable Martin J. Jenkins |

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  STATEMENT OF FACTS COMMON TO ALL CLASS MEMBERS...........................3

III.  ARGUMENT .............................................................................................................5

A.  This Case Appropriately Calls for Class Action Treatment Under Rule 23............5

B.  The Proposed Class Satisfies the Prerequisites of Rule 23(a) ...............................6

    1.  The Class Is so Numerous that Joinder of All Members of the
        Class Is Impracticable ...............................................................................7

    2.  Questions of Law and Fact Are Common to Members of the Class ..........9

    3.  Plaintiffs' Claims Are Typical of Those of the Class ...............................10

    4.  Plaintiffs Will Fairly and Adequately Protect the Interests of the
        Class..........................................................................................................12

C.  The Proposed Class Satisfies Rule 23(b)(3) .........................................................13

    1.  Common Questions of Law and Fact Predominate over Individual
        Questions...................................................................................................13

    2.  A Class Action Is Superior to Other Available Methods for
        Resolving this Controversy......................................................................15

IV.  CONCLUSION...........................................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Page**

[Insert Table of Authorities **here**]

1    Plaintiffs respectfully submit this memorandum of law in support of the accompanying

2  motion to certify this action as a class action and appoint Local 144 Nursing Home Pension Fund

3  (now known as 1199 SEIU Greater New York Pension Fund), Drifton Finance Corporation, Robert

4  D. Sawyer, Ryan Kuehmichel and Dzung Chu (hereinafter "Plaintiffs") as class representatives.

5  **I.     PRELIMINARY STATEMENT**

6    This is a securities class action against defendants Oracle Corporation ("Oracle" or the

7  "Company") and the following individual defendants: (i) Lawrence J. Ellison ("Ellison"), Chief

8  Executive Officer and Board of Directors Chairman, as well as one of the Company's founders; (ii)

9  Jeffrey O. Henley ("Henley"), Executive Vice President and Chief Financial Officer; and (iii)

10  Edward J. Sanderson ("Sanderson"), Executive Vice President.

11    Plaintiffs seek an order certifying this action as a class action pursuant to Fed. R. Civ. P.

12  23(a) and 23(b)(3) on behalf of a Class defined as all persons and entities who purchased or

13  otherwise acquired the publicly traded securities of Oracle during the period beginning December

14  14, 2000, through and including March 1, 2001 (the "Class Period").[1]   Plaintiffs also seek the

15  appointment of designated representatives and their counsel of record.

16    The Revised Second Amended Complaint for Violations of the Federal Securities Laws (the

17  "Complaint") alleges that during the Class Period, defendants violated §§10(b), 20(a), and 20A of

18  the Securities Exchange Act of 1934 (the "Exchange Act") by making false and misleading

19  statements about, among other things, Oracle's financial results for the second quarter of fiscal year

20  2001 ("2Q01"), the effects of the economy on Oracle's business, Oracle's third quarter 2001

21  forecasts, and the functionality of Oracle's 11i Applications Suite ("11i"), which artificially inflated

22  Oracle's stock price throughout the Class Period.  By certifying this case as a class action, Plaintiffs,

23  and thousands of other investors similarly situated who suffered substantial damages when

24  purchasing Oracle stock at artificially inflated prices, will be permitted to efficiently and effectively

25  prosecute this action.

26  _____

27  [1]     Excluded from the Class are officers and directors of the Company as well as their families
and families of the defendants.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                    - 1 -

1    In a long and virtually unbroken line of cases, the Ninth Circuit and the district courts in

2   California and elsewhere have endorsed the use of class action procedures in adjudicating claims

3   under the federal securities laws:

4        [C]lass actions commonly arise in securities fraud cases as the claims of separate
         investors are often too small to justify individual lawsuits, making class actions the
5        only efficient deterrent against securities fraud.

6   *In re Worlds of Wonder Sec. Litig.*, No. C 87 5491 SC (Consolidated Actions), 1990 U.S. Dist.

7   LEXIS 8511, at *4-*5 (N.D. Cal. Mar. 26, 1990).[2]  Indeed, courts throughout the United States have

8   consistently recognized the necessity for class actions such as this one in order to enforce the federal

9   securities law.  *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Blackie v. Barrack*, 524 F.2d

10  891 (9th Cir. 1975).  In recognition of their significant role in protecting investors, courts liberally

11  construe the requirements of Rule 23 of the Federal Rules of Civil Procedure in favor of class

12  certification.  "'[T]he ultimate effectiveness of [the security anti-fraud laws] may depend on the

13  applicability of the class action device.'"  *Id.* at 903.

14    This action satisfies all of the requirements of Fed. R. Civ. P. 23.  The proposed Class is so

15  numerous that joinder of all members is impracticable; there are questions of fact and law common

16  to the Class which predominate; the claims or defenses of the representative parties are typical of the

17  claims or defenses of the Class; the representatives will fairly and adequately protect the interests of

18  the Class; and a class action is the superior means to resolve the issues raised by this case.

19  Accordingly, this case should be certified as a class action.[3]

20

21

22
_____

23  [2]    Here, as elsewhere, emphasis is added and citations are omitted unless otherwise noted.

24  [3]    The questions raised by a class certification motion are purely procedural; the Court does not
    examine the merits of the plaintiff's case when considering a motion for class certification.  *Eisen v.*

25  *Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Blackie*, 524 F.2d at 901 n.17; *Freedman v. La.-*
    *Pac. Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996) ("In ruling on a motion to certify, the court accepts

26  as true the allegations made in support of certification, and does not consider the merits of the
    case.").

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                                    - 2 -

1  **II.      STATEMENT OF FACTS COMMON TO ALL CLASS MEMBERS**

2          Oracle designs and sells software for business information management.  ¶2.[4]   Since the

3  mid-1980s, Oracle has been a market-share leader in database management systems.  ¶3.  By 2000,

4  however, the database market was saturated, and Oracle concluded that its strongest opportunity for

5  growth lay in developing and selling software applications.  *Id.*  In order to compete in the

6  applications market, Oracle developed the 11i software modules to enable businesses to manage

7  financials, manufacturing, sales force, logistics, e-commerce and suppliers with a single integrated

8  package, rather than buying separate software for each function.  ¶4.  Two obstacles, however,

9  impeded this strategy – sales of the 11i were slow due to product defects and the declining U.S.

10 economy impacted many of Oracle's customers, further slowing sales.  ¶¶7, 9, 13-14.

11         To hide Oracle's declining results, defendants knowingly falsified Oracle's 2Q01 revenues

12 by improperly converting approximately $228 million in customer overpayments to "revenue"

13 enabling Oracle to announce on December 14, 2000, that it had exceeded its $0.10 earnings per share

14 ("EPS") forecast for 2Q01 by a penny per share.  ¶¶35-44.  This conversion to revenue violated

15 Generally Accepted Accounting Principles because Oracle had not "earned" and was not entitled to

16 keep money which belonged to its customers.  ¶42.

17         Defendants also falsely assured investors between December 14, 2000 and February 23, 2001

18 that the declining U.S. economy was not negatively impacting Oracle's operations.  ¶¶45, 60, 65.

19 Ellison himself claimed that "[t]he economic slowdown isn't hurting Oracle" and Henley added that

20 "[w]e're seeing no softening in our business" from the slowing economy.  ¶45.  Defendants'

21 assurances were knowingly false when made as countless witnesses have confirmed that Oracle's

22 sales in the second and third quarters of 2001 declined substantially because of the economy and its

23 impact on Oracle customers.  ¶¶47-48, 61, 66.  Indeed, Oracle lost nearly 10-12% of its revenue base

24 when its internet customers closed their doors and millions more when Oracle's database customers

25

26 _____

27 [4]      All paragraph references ("¶") are to the Complaint.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                                    - 3 -

1   cut their IT budgets to brace for an unstable economy.  ¶7.  The defects in 11i compounded these

2   serious problems.  ¶¶9-11.

3        Despite the impact on Oracle's business, defendants continued to assure investors that

4   Oracle's business was sound and growing tremendously.  They forecasted $0.12 EPS, $2.9 billion in

5   revenues, 25% database growth and 75% applications growth for Oracle's third quarter.  Oracle

6   attributed much of that growth to 11i, and emphasized the benefits of 11i's integration and

7   interoperability.  ¶¶46, 65, 70-71.  They claimed that demand for 11i was "strong" and "robust," that

8   "all the pieces [were] designed and engineered to fit together, [with] no systems integration []

9   required" and that 11i would be "up and running in months" for customers.  ¶¶50, 58, 65.  In fact,

10  they told investors that their customers would "get the savings in months," that it "costs you less,"

11  and that "it takes less time to install."  ¶50.  The message was clear – 11i was going to drive Oracle

12  results now and in the future.

13       Defendants' statements were false and misleading and their forecasts had no reasonable basis

14  in fact.  11i was not ready for production and its early and extremely "buggy" release spelled doom

15  for Oracle's third quarter results.  ¶6.  Customers cancelled millions of dollars in orders, refused

16  payment, and delayed installations because, as one witness put it, Oracle was "not just selling a car

17  without tires, they sold it without wheels."  ¶¶52, 54.  Oracle sold 11i to customers with deficient

18  program interfaces, applications modules that were not interoperable, and applications modules that

19  were defective.  *Id.*  Numerous witnesses confirmed that 11i required integration, that integration

20  was not working, and that defendants knew it – the exact opposite of what defendants were telling

21  investors.  ¶¶52, 54-56, 79.

22       Defendants' misstatements drove Oracle's stock price from $27 per share to a Class Period

23  high of $34.00 per share.  ¶9.  Defendants took advantage of this inflation by selling nearly $1

24  billion of their personal holdings.  Henley sold one million shares in one day for proceeds of $32.3

25  million and Ellison sold more than 29 million shares in one week for a total of almost $900 million –

26  nearly pure profit for both defendants.  ¶¶20-21.  Henley acquired the shares that he sold for just

27  $1.04 to $1.69 per share and Ellison acquired all of his for only $0.23 per share.  *Id.*

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                                    - 4 -

1    Then, on March 1, 2001, Oracle announced that it would miss its third quarter forecasts by

2    material amounts *because of the economy and 11i* – the very problems that defendants had been

3    denying throughout the class period.  ¶¶74, 76-77.  It missed its EPS share forecast by $0.02 per

4    share (a $112M or 17% shortfall), it missed its revenue forecast by $233M (an 8% miss), its database

5    growth was only 6% (instead of the forecasted 25%) and its applications (*i.e.*, 11i) growth was a

6    paltry 25% compared to the 75% forecasted.  ¶¶76-77.  Oracle stock collapsed on the news.  It fell

7    from $19.50 per share to $16.88 per share in a single day of trading on record volume of more than

8    224 million shares.  ¶75.  Plaintiffs and the Class lost billions.  *Id.*

9    **III.   ARGUMENT**

10        **A.     This Case Appropriately Calls for Class Action Treatment Under
                   Rule 23**

11        The Ninth Circuit and district courts within it have repeatedly endorsed the use of class

12   action procedures to resolve claims under the federal securities laws.  As one court has stated, "[t]he

13   law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally

14   construed in favor of class action cases brought under the federal securities laws."  *Schneider v.*

15   *Traweek*, No. CV 88-0905 RG (Kx), 1990 U.S. Dist. LEXIS 15596, at *16 (C.D. Cal. Apr. 7, 1990).

16   Courts recognize that any doubt as to the propriety of certification should be resolved in favor of

17   certifying the class because denying class certification will almost certainly terminate the action and

18   be detrimental to the members of the class.  *Id.* at 901.  "[C]lass actions commonly arise in securities

19   fraud cases as the claims of separate investors are often too small to justify individual lawsuits,

20   making class actions the only efficient deterrent against securities fraud.  Accordingly, the Ninth

21   Circuit and courts in this district hold a liberal view of class actions in securities litigation."  *In re*

22   *Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citing *Harris*, 329 F.3d at

23   913).[5]

24

25

26   [5]     *See, e.g., Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub
         nom., Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996); *Arthur Young & Co. v. United
27       States Dist. Court*, 549 F.2d 686 (9th Cir. 1977); *Blackie*, 524 F.2d at 902; *Yamner v. Boich*, No. C-
         92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *6 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit
28       favors a liberal use of class actions to enforce federal securities laws."); *Schaefer v. Overland*

1  The Supreme Court has long recognized, and Congress recently affirmed, that private actions

2  are also an important enforcement mechanism to supplement governmental administrative regulation

3  of the securities markets.  "Private enforcement ... provides a necessary supplement to [Securities

4  and Exchange] Commission action," by both affording relief to those injured by violations of the

5  securities laws and serving as a deterrent to future wrongdoing.  *J. I. Case Co. v. Borak*, 377 U.S.

6  426, 432 (1964); *see also Basic*, 485 U.S. at 231 (private actions for violations of the Exchange Act

7  "constitute[] an essential tool for enforcement of the 1934 Act's requirements").

8  In enacting the PSLRA, Congress reaffirmed the importance of private enforcement of the

9  securities laws:

10  Private securities litigation is an indispensable tool with which defrauded investors
   can recover their losses without having to rely upon government action.  Such private
11  lawsuits promote public and global confidence in our capital markets and help to
   deter wrongdoing and to guarantee that corporate officers, auditors, directors,
12  lawyers and others properly perform their jobs.

13  H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730.  Thus, this

14  Court should liberally construe the requirements of Rule 23 in favor of certifying this securities fraud

15  case as a class action.

16  **B.     The Proposed Class Satisfies the Prerequisites of Rule 23(a)**

17  Rule 23(a) sets forth four prerequisites for certifying a class:

18  (1) [T]he class is so numerous that joinder of all members is impracticable, (2) there
   are questions of law or fact common to the class, (3) the claims or defenses of the
19  representative parties are typical of the claims or defenses of the class, and (4) the
   representative parties will fairly and adequately protect the interests of the class.

20

21

22  *Express Family of Funds*, 169 F.R.D. 124, 130 (S.D. Cal. 1996) ("Courts have generally found that
   actions for securities fraud actions [sic] are usually best maintained as class actions."); *In re Seagate
23  Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994) (finding that doubts should be
   resolved in favor of class certification).  The Private Securities Litigation Reform Act of 1995 (the
24  "PSLRA") has not changed the standard for certifying a class action.  *In re THQ Inc. Sec. Litig.*, No.
   CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753, at *8-*9 (C.D. Cal. Mar. 22, 2002) ("[L]ower
25  courts have recognized that 'the law in the Ninth Circuit is *very well established* that the
   requirements of Rule 23 should be liberally construed in favor of class action cases brought under
26  the federal securities laws.'") (quoting *Schneider*, 1990 U.S. Dist. LEXIS 15596); *In re Blech Sec.
   Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("[I]n an alleged securities fraud case, when a court is in
27  doubt as to whether or not to certify a class action, the court should err in favor of allowing the class
   to go forward.")

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ          - 6 -

Fed. R. Civ. P. 23(a).  Thus, this case may proceed as a class action once plaintiffs establish that their securities fraud claims satisfy the four prerequisites of Rule 23(a) commonly referred to as: numerosity, commonality, typicality, and adequacy of representation.  *See Schaefer*, 169 F.R.D. at 127; *Hernandez v. Alexander*, 152 F.R.D. 192, 193 (D. Nev. 1993); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 253 (C.D. Cal. 1988).  The proposed class in this case easily satisfies each of these prerequisites.

### 1.     The Class Is so Numerous that Joinder of All Members of the Class Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *Harris*, 329 F.2d at 913-14; *see also Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987).  There is no fixed number of class members which either compels or precludes the certification of a class.  *Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Indeed, classes consisting of 25 members have been held large enough to justify certification.  *See In re Cirrus Logic Sec. Litig.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994); *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).  Additionally, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large.  *Id.*; *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification ... and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.").[6]  Indeed, courts in this district have assumed that the numerosity requirement is satisfied in securities cases involving nationally-traded stocks.  *Yamner*, 1994 U.S. Dist. LEXIS 20849, at *7-*8.

---

[6]     *Accord Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) ("'It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.'  ...  The court may draw a reasonable inference of the size of the class from the facts before it.") (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ           - 7 -

1      In securities litigation, district courts regularly find the numerosity requirement satisfied with

2  respect to a purported class of purchasers or resellers of nationally traded securities on the basis of

3  the number of shares sold during the class period.  *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D.

4  717, 719 (C.D. Cal. 2002) ("[T]he Class would include hundreds of thousands of purchasers since

5  approximately five million shares of Emulex stock were traded daily during the Class Period.

6  Individual joinder of members of a class this size would be impracticable."); *Greenspan v. Brassler*,

7  78 F.R.D. 130, 132 n.4 (S.D.N.Y. 1978) (964,000 shares traded during class period); *Trattner v. Am.*

8  *Fletcher Mortgage Investors*, 74 F.R.D. 352, 356 (S.D. Ind. 1976) (mere fact that stock volume was

9  sufficient to be traded on the New York Stock Exchange); *Brady v. Lac, Inc.*, 72 F.R.D. 22, 27

10  (S.D.N.Y. 1976) (1.3 million outstanding shares); *In re Penn Cent. Sec. Litig.*, 62 F.R.D. 181, 188

11  (E.D. Pa. 1974) (1.5 million outstanding shares); *Jacobs v. Paul Hardeman, Inc.*, 42 F.R.D. 595, 598

12  (S.D.N.Y. 1967) (7,000 outstanding).

13      While plaintiffs have not yet obtained Oracle's stock transfer records for the time period in

14  question, Oracle had approximately 5.6 billion shares of common stock outstanding during the Class

15  Period and the daily trading volume of Oracle stock reached as high as 120 million shares during the

16  Class Period.  There were undoubtedly thousands, if not millions, of purchasers of Oracle shares on

17  the NASDAQ National Market System during the Class Period.  ¶29.  In order to meet the

18  numerosity requirement for class certification, plaintiffs may rely on reasonable inferences drawn

19  from available facts in order to demonstrate that the Class is so numerous that joinder of all Class

20  members is impracticable.  *Blech*, 187 F.R.D. at 103.  With 5.6 billion shares of issued Oracle

21  common stock outstanding and enormous trading volume, it is clear that a class of this size is so

22  numerous as to make individual joinder impracticable, if not logistically impossible, especially

23  where members of the Class are located throughout the country.  Plainly, the proposed Class satisfies

24  the numerosity requirement of Rule 23(a).  *See Freedman*, 922 F. Supp. at 398; *Wehner*, 117 F.R.D.

25  at 643; *In re Seagate Techs. Sec. Litig.*, 115 F.R.D. 264, 267 (N.D. Cal. 1987); *Weinberger v.*

26  *Jackson*, 102 F.R.D. 839, 844 (N.D. Cal. 1984).

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ       - 8 -

1  **2.    Questions of Law and Fact Are Common to Members of the Class**

2

3     Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of law or fact

4  common to the class.  Like all the requirements of Rule 23(a), the commonality requirement is to be

5  construed liberally:  "'[T]hose courts that have focused on Rule 23(a)(2) have given it a permissive

6  application so that common questions have been found to exist in a wide range of contexts.'  The

7  rule does not require all questions of law and fact to be common." *Rodriguez v. Carlson*, 166 F.R.D.

8  465, 472 (E.D. Wash. 1996) (quoting *Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986));
   *see also Schneider*, 1990 U.S. Dist. LEXIS 15596.

9     It is well established that the commonality requirement is satisfied if the claims of the

10 prospective class share even one central question of fact or law.  *See, e.g., Hanlon v. Chrysler Corp.*,

11 150 F.3d 1011, 1019-1020 (9th Cir. 1998); Herbert B. Newberg & Alba Conte, Newberg on Class

12 Actions §3.10 at 3-50 (3d ed. 1992).  "All questions of fact and law need not be common to satisfy

13 the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a

14 common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150

15 F.3d at 1019; *see also Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993) ("'A

16 common question is one which arises from a "common nucleus of operative facts" regardless of

17 whether the underlying facts fluctuate over the class period and vary as to individual claimants.'")

18 (quoting *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984)).

19    This action will require the Court to address a series of questions that will affect all Class

20 members.  For example, as alleged in the Complaint common questions of law and fact exist as to:

21     (a)     whether the federal securities laws were violated by defendants' acts;

22     (b)     whether statements made by defendants to the investing public during the

23 Class omitted or misrepresented material facts about the business, financial and operational results of

24 Oracle;

25     (c)     whether defendants acted with the requisite state of mind in misrepresenting

26 or omitting material facts;

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ         - 9 -

1          (d)       whether the market price of Oracle common stock during the Class Period was

2  artificially inflated due to the material omissions and misrepresentations described in the Complaint;

3  and

4          (e)       whether the Class members have sustained damages and, if so, the appropriate

5  measure thereof.

6  *See Yamner*, 1994 U.S.Dist. LEXIS 20849, at *9 ("These are the standard questions upon which

7  federal courts have based the grant of class certification in numerous securities actions.").

8        Underlying these basic common questions is a common nucleus of operative facts pertaining

9  to defendants' scheme to artificially inflate and maintain the price of Oracle securities, thereby

10 deceiving the investing public and causing members of the Class to purchase Oracle's securities at

11 inflated prices. *See generally* Complaint.  These central fact issues and their legal consequences are

12 common to all Class members. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594-95 (E.D.

13 Cal. 1999) ("A common nucleus of operative fact is typically found where 'defendants have engaged

14 in standardized conduct toward members of the proposed class by mailing to them allegedly illegal

15 form letters or documents.'") (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).  Indeed,

16 courts routinely recognize that securities fraud actions alleging such a common course of conduct

17 and based on a "fraud on the market" satisfy the commonality requirements of Fed. R. Civ. P.

18 23(a)(2).  *See THQ, Inc.*, 2002 U.S. Dist. LEXIS 7753 (citing *Blackie*, 524 F.2d at 902); *Cirrus*

19 *Logic*, 155 F.R.D. at 657.  Thus, this action satisfies the commonality requirement of Fed. R. Civ. P.

20 23(a).

21       **3.**      **Plaintiffs' Claims Are Typical of Those of the Class**

22       Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3) if they arise from the

23 same event or course of conduct that gives rise to claims of other Class members and the claims

24 asserted are based on the same legal theory.

25         Plaintiffs have sufficiently demonstrated that the named class representatives' claims
        are typical of those of the entire "global" class because the "typicality" prerequisite

26         of Rule 23(a)(3) is satisfied when all members of the class are victims of the same
        course of conduct.

27

28

1   *Schneider*, 1990 U.S. Dist. LEXIS 15596, at *21; *see also Schaefer*, 169 F.R.D. at 128-29;

2   *Freedman*, 922 F. Supp. at 399; *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 140 F.R.D.

3   425, 430 (D. Ariz. 1992); *United Energy*, 122 F.R.D. at 255-56. In *Hanlon*, 150 F.3d 1011, the

4   Ninth Circuit explained that "[u]nder [Rule 23's] permissive standards, representative claims are

5   'typical' if they are reasonably co-extensive with those of absent class members; they need not be

6   substantially identical." *Id.* at 1020.

7       The purpose of the "typicality" requirement is to ensure that the named representatives'

8   interests "align" with those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

9   1992). The test generally is "whether other members have the same or similar injury, whether the

10   action is based on conduct that is not unique to the named plaintiffs, and whether other class

11   members have been injured by the same course of conduct." *A & J Deutscher Family Fund v.*

12   *Bullard*, No. CV 85-1850-PAR, 1986 U.S. Dist. LEXIS 20054, at *18 (C.D. Cal. Sept. 22, 1986)

13   (citing *Schwartz*, 108 F.R.D. at 282); *see also Schaefer*, 169 F.R.D. at 128-29; *Cirrus Logic*, 155

14   F.R.D. at 657.

15       Typicality does ***not*** require the representatives' claims to be identical (or even "substantially

16   identical") to the class members' claims:

17         ***"Typicality refers to the nature of the claim or defense of the class***
        ***representative, and not to the specific facts from which it arose or the relief sought.***

18         ***Accordingly, differences in the amount of damage, the size or manner of [stock]***
        ***purchase, the nature of the purchaser, and even the specific document influencing***

19         ***the purchase will not render a claim atypical in most securities cases."***

20   *Jackson,* 102 F.R.D. at 844 (quoting 5 Herbert B. Newberg & Alba Conte, Newberg on Class

21   Actions §8816 at 850 (1977)); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), ("We

22   do not insist that the named plaintiffs' injuries be identical with those of the other class members,

23   only that the unnamed class members have injuries similar to those of the named plaintiffs and that

24   the injuries result from the same, injurious course of conduct."); *Yamner*, 1994 U.S. Dist. LEXIS

25   20849 (finding typicality in spite of plaintiff's purchase of stock after learning of fraudulent

26   conduct).

27       The courts have held that Rule 23(a)(3) requires only that there be no express conflict

28   between the representative parties and the class "over the very issue in litigation" and that the

1   representatives' "interests are not antagonistic to those of the class." *Mersay v. First Republic Corp.*,

2   43 F.R.D. 465, 468-69 (S.D.N.Y. 1968); *accord Stolz v. United Bhd. of Carpenters & Joiners, Local*

3   *Union No. 971*, 620 F. Supp. 396, 404 (D. Nev. 1985); *see also Adam v. Silicon Valley Bancshares*,

4   884 F. Supp. 1398 (N.D. Cal. 1995).

5          Here, the typicality requirement is satisfied because the claims of all Class members derive

6   from the same legal theories and allege the same set of operative facts.   Plaintiffs, like the other

7   Class members, allege that they purchased Oracle's common stock and thereby suffered damages as

8   a consequence of defendants' false and misleading statements and/or non-disclosures.  All members

9   of the Class were victims of a common course of fraudulent conduct by defendants throughout the

10   Class Period.  As a result, the claims of plaintiffs are typical of those of the Class.

11          **4.      Plaintiffs Will Fairly and Adequately Protect the Interests of
                   the Class**

12          Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

13   interests of the class."  Courts have established a two-prong test for this requirement.  *See, e.g.,*

14   *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Schaefer*, 169 F.R.D. at

15   130; *United Energy*, 122 F.R.D. at 257.   First, counsel for the class representatives must be

16   competent to undertake the particular litigation at hand.  Second, there can be no antagonism or

17   disabling conflict between the interests of the named class representatives and the members of the

18   class.  "The burden is on the defendants to prove that the representation will be inadequate."

19   *Epitope, Inc., Sec. Litig.*, Civil No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705, at *10 (D. Or. Nov.

20   30, 1992).

21          Defendants cannot meet this burden because both prongs of the "adequacy" test are met here.

22   First, plaintiffs have retained attorneys with extensive experience in the area of securities litigation

23   who have successfully prosecuted numerous securities fraud class actions and other complex actions

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                    - 12 -

1  on behalf of injured investors in this District and across the country.[7]  There can be no legitimate

2  dispute that plaintiffs' counsel are capable of prosecuting this litigation.

3         The second requirement is also satisfied here because there is no antagonism between the

4  representative plaintiffs and the absent Class members.  *See Lubin v. Sybedon Corp.*, 688 F. Supp.

5  1425, 1461 (S.D. Cal. 1988); *Jackson*, 102 F.R.D. at 844-45.  In fact, the proposed Class

6  representatives have the same claims as each Class member.  Accordingly, the interests of the Class

7  will be fairly and adequately protected.  *See* Fed. R. Civ. P. 23(a)(4).

8         **C.     The Proposed Class Satisfies Rule 23(b)(3)**

9         In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies the

10 requirements of Rule 23(b), which requires that the proposed class representatives establish that

11 common questions of law or fact predominate over individual questions and that a class action is

12 superior to other available methods of adjudication.  *See Hernandez*, 152 F.R.D. at 193-94.  As

13 shown above, common questions of law and fact predominate in this case and a class action is the

14 superior, if not the only, method available to fairly and efficiently litigate this securities action.  *See*

15 *Epstein*, 50 F.3d at 668-69; *Schaefer*, 169 F.R.D. at 130-31.

16        **1.     Common Questions of Law and Fact Predominate over
                   Individual Questions**

17
18        Where a complaint alleges a "common course of conduct" of misrepresentations, omissions,

19 and other wrongdoings that affect all members of the class in the same manner, common questions

20 predominate.  *Blackie*, 524 F.2d at 905-08; *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675,

21 684 (N.D. Cal. 1986).  In assessing whether common questions predominate, the Court's inquiry

22 should be directed primarily toward the issue of liability.  *See Blackie*, 524 F.2d at 902; *In re*

23 *Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973).  Indeed, "when determining whether

24 common questions predominate courts 'focus on the liability issue ... and if the liability issue is

25 common to the class, common questions are held to predominate over individual questions.'"  *In re*

---

26 [7]    *See* firm resume of Lerach Coughlin Stoia Geller Rudman & Robbins LLP attached to the
27 Declaration of Monique C. Winkler in Support of Plaintiffs' Motion for Class Certification, filed
   herewith.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                          - 13 -

1    *Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002) (citing *Genden v.*

2    *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) (quoting *Dura-Bilt*

3    *Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

4         As discussed above, there are a host of common questions of law and fact which plaintiffs

5    seek to certify.  These questions clearly predominate over individual questions because defendants'

6    conduct affected all Class members in the same manner through false statements and omissions

7    which artificially inflated the price of Oracle common stock.  It is difficult to discern liability issues

8    in this case that are not common to all members of the Class.  *See, e.g., Freedman*, 922 F. Supp. at

9    399-400; *Schaefer*, 169 F.R.D. at 130-31; *United Energy*, 122 F.R.D. at 256; *Emulex*, 210 F.R.D. at

10   721 (granting motion for class certification where "[t]he predominant questions of law or fact at

11   issue in this case are the alleged misrepresentation Defendants made during the Class Period and are

12   common to the class."); *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 622 (C.D. Cal. 1985) ("As

13   plaintiffs' claim is based on a common nucleus of misrepresentations, material omissions and market

14   manipulations, the common questions predominate over any differences between individual class

15   members with respect to damages, causation or reliance.").  The critical issues of fact and law raised

16   in this action are common to all members of the Class and they will predominate in this case.  Once

17   these common questions are resolved, all that will remain is the purely mechanical act of computing

18   the amount of damages suffered by each Class member.

19         In contrast, there are no significant (let alone predominate) individual issues even with

20   respect to issues such as reliance.  Plaintiffs' claims arising under §10(b) of the Exchange Act

21   require no proof of individual reliance because plaintiffs are entitled to a presumption of reliance

22   when they have alleged that defendants artificially inflated the price of the stock in question by

23   issuing false and misleading statements and by failing to disclose material facts which defendants

24   had a duty to disclose.  *See Basic*, 485 U.S. at 247; *see also Cameron v. E. M. Adams & Co.*, 547

25   F.2d 473 (9th Cir. 1976); *Blackie*, 524 F.2d at 905; *Schaefer*, 169 F.R.D. at 128; *Seagate Tech. II*,

26   843 F. Supp. at 1356-57.

27         Moreover, the fact that class members may not be identically situated is immaterial.  The fact

28   that different members of the class may have invested at different times and may have been exposed

1  to different misrepresentations and/or omissions committed by defendants does not preclude a

2  finding that common issues predominate because a continuous course of conduct has been alleged.

3  *Harris*, 329 F.2d at 914-15; *see Blackie*, 524 F.2d at 902 (endorsing the approach taken by the court

4  of appeals in *Harris*; *see also Indep. Energy*, 210 F.R.D. at 486 (holding that the predominance

5  requirement was easily satisfied in cases where claims were based on a common legal theory of

6  material misrepresentations and omissions, even though damage amounts might vary)).

7         In sum, where a complaint alleges a continuous course of conduct committed by defendants

8  and directed against the members of the class, the issues of law and fact which flow from that

9  wrongful activity clearly predominate over any individual issues.

10              **2.      A Class Action Is Superior to Other Available Methods for
                          Resolving this Controversy**

11

12        Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other

13  available methods for the fair and efficient adjudication of the controversy."  Courts have recognized

14  that the class action device is superior to other available methods for the fair and efficient

15  adjudication of controversies involving a large number of purchasers of securities injured by

16  violations of the securities laws.  Class actions are a "particularly appropriate and desirable" way of

17  resolving securities fraud claims.  *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *accord*

18  *Freedman*, 922 F. Supp. at 400; *Emulex*, 210 F.R.D. at 721 ("Given the identical claims shared by

19  the members of the class, a class action is superior to individual litigation for adjudicating the

20  [securities fraud] controversy.").  Class certification is both useful and necessary and the class action

21  device offers judicial efficiencies because it permits common claims and issues to be tried only once,

22  with binding effect on all parties.  Class representation is the only way to afford relief to those whose

23  claims are too small to permit them to bring individual suits.  To deny class certification would be to

24  "clos[e] the door of justice to all small claimants.  This is what we think the class suit practice was to

25  prevent."  *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941).

26        To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for

27  the court to consider:

28        (A) [T]he interest of members of the class in individually controlling the prosecution
          ... of separate actions; (B) the extent and nature of any litigation concerning the

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                          - 15 -

1  controversy already commenced by ... members of the class; (C) the desirability ... of
2  concentrating the litigation of the claims in the particular forum; (D) the difficulties
   likely to be encountered in the management of a class action.

3  Fed. R. Civ. P. 23(b)(3).

4      Each of these factors is satisfied in this case.  The number of Class members is far too

5  numerous and the typical claim is too small for each individual Class member to maintain a separate

6  action.  The class action device is the only viable vehicle by which the vast majority of persons

7  injured by defendants' wrongful conduct may obtain a remedy.  As the Ninth Circuit stated in

8  *Epstein*, "it is difficult to imagine a case where class certification would be more appropriate.

9  Without it, thousands of identical complaints by former [ ] shareholders would have to be filed – the

10  very result the class action mechanism was designed to avoid."  50 F.3d at 668; *see also Freedman*,

11  922 F. Supp. at 400-01; *Weinberger v. Thornton*, 114 F.R.D. 599, 605 (S.D. Cal. 1986); *Unioil*, 107

12  F.R.D. at 622.  Further, the nationwide geographical dispersion of the Class members, based upon

13  Oracle's sale of the stock on a national exchange, makes it desirable that litigation of the claims

14  involved be concentrated in this forum.

15      Finally, plaintiffs can foresee no management difficulties which would preclude this action

16  from being maintained as a class action and are confident that any potential management problems

17  can be addressed and resolved by the parties or by this Court.  Certainly, possible management

18  problems are not, standing alone, grounds for denying this motion.  In *In re Sugar Indus. Antitrust*

19  *Litig.*, MDL Dkt. No. 201, 1976 U.S. Dist. LEXIS 14955 (N.D. Cal. May 21, 1976), the court stated:

20      [D]enial of class certification because of conjured manageability problems is
21      disfavored among both the courts and the legal commentators because a court
        refusing to certify a class action on the basis of vaguely perceived manageability
22      obstacles is acting counter to the policy behind Rule 23 ....

23  *Id.* at *75; *accord Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972).

24      The Supreme Court has endorsed the superiority of the class action device for resolving

25  securities claims:

26      The aggregation of individual claims in the context of a classwide suit is an
        evolutionary response to the existence of injuries unremedied by the regulatory
        action of government.  Where it is not economically feasible to obtain relief within
27      the traditional framework of a multiplicity of small individual suits for damages,
        aggrieved persons may be without any effective redress unless they may employ the
28      class-action device.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ       - 16 -

1   *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).  Here, too, judicial economy and the

2   best interests of the Class members favor class certification.  For the reasons enumerated above, the

3   proposed Class satisfies the requirements of Rule 23(b)(3).

4   **IV.       CONCLUSION**

5          For the foregoing reasons, plaintiffs request entry of an Order certifying this action as a class

6   action pursuant to Federal Rule of Civil Procedure 23.

7   DATED:  January 31, 2005                           LERACH COUGHLIN STOIA GELLER
                                                          RUDMAN & ROBBINS LLP
8                                                      WILLIAM S. LERACH
                                                       MARK SOLOMON
9                                                      DOUGLAS R. BRITTON

10

11                                                           /s/ Douglas R. Britton
                                                       DOUGLAS R. BRITTON

12

13                                                     401 B Street, Suite 1600
                                                       San Diego, CA  92101
                                                       Telephone:  619/231-1058
14                                                     619/231-7423 (fax)

15                                                     LERACH COUGHLIN STOIA GELLER
                                                          RUDMAN & ROBBINS LLP
16                                                     SHAWN A. WILLIAMS
                                                       WILLOW E. RADCLIFFE
17                                                     ELI R. GREENSTEIN
                                                       JENNIE LEE ANDERSON
18                                                     MONIQUE C. WINKLER
                                                       100 Pine Street, Suite 2600
19                                                     San Francisco, CA  94111
                                                       Telephone:  415/288-4545
20                                                     415/288-4534 (fax)

21                                                     Lead Counsel for Plaintiffs

22   T:\CasesSF\Oracle3\BRF00017585.doc

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ                                       - 17 -

DECLARATION OF SERVICE BY FACSIMILE
PURSUANT TO NORTHERN DISTRICT LOCAL RULE 23-2(c)(2)

I, the undersigned, declare:

1.       That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.       That on January 31, 2005, declarant served by facsimile the **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** to the parties listed on the attached Service List and this document was forwarded to the following designated Internet site at:

http://securities.lerachlaw.com/

3.       That there is a regular communication by facsimile between the place of origin and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 31st day of January, 2005, at San Francisco, California.

                                                          /s/ Marcy Medeiros
                                                          MARCY MEDEIROS

ORACLE III (LEAD)

Service List - 1/31/2005   (201-064-1)

Page 1 of  1

**Counsel For Defendant(s)**

Donald M. Falk
Lee H. Rubin
Shirish  Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306
  650/331-2000
  650/331-2060 (Fax)


Dorian  Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA  94065
  650/506-5200
  650/506-7114 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street, Suite 3900
Chicago, IL  60603-3441
  312/782-0600
  312/701-7711 (Fax)


**Counsel For Plaintiff(s)**

William S. Lerach
Mark  Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA  92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford  Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
  415/288-4545
  415/288-4534 (Fax)