1   LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2   WILLIAM S. LERACH (68581)
    MARK SOLOMON (151949)
3   DOUGLAS R. BRITTON (188769)
    401 B Street, Suite 1600
4   San Diego, CA  92101
    Telephone:  619/231-1058
5   619/231-7423 (fax)
      – and –
6   SHAWN A. WILLIAMS (213113)
    WILLOW E. RADCLIFFE (200087)
7   ELI R. GREENSTEIN (217945)
    JENNIE LEE ANDERSON (203586)
8   MONIQUE C. WINKLER (213031)
    100 Pine Street, Suite 2600
9   San Francisco, CA  94111
    Telephone:  415/288-4545
10  415/288-4534 (fax)

11  Lead Counsel for Plaintiffs

12                          UNITED STATES DISTRICT COURT

13                       NORTHERN DISTRICT OF CALIFORNIA

14

15  In re ORACLE CORPORATION          )   Master File No. C-01-0988-MJJ
    SECURITIES LITIGATION             )
16  _____    )   CLASS ACTION
                                      )
17  This Document Relates To:         )   PLAINTIFFS' CORRECTED
                                      )   MEMORANDUM OF POINTS AND
18        ALL ACTIONS.                )   AUTHORITIES IN SUPPORT OF MOTION
                                      )   FOR CLASS CERTIFICATION
19  _____    )
                                          DATE:          May 10, 2005
20                                        TIME:          9:30 a.m.
                                          COURTROOM:     Honorable Martin J.
21                                                       Jenkins

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.      PRELIMINARY STATEMENT ..................................................................................1

4    II.     STATEMENT OF FACTS COMMON TO ALL CLASS MEMBERS...........................3

5    III.    ARGUMENT ...................................................................................................5

6            A.      This Case Appropriately Calls for Class Action Treatment Under Rule 23............5

7            B.      The Proposed Class Satisfies the Prerequisites of Rule 23(a) .........................6

8                    1.      The Class Is so Numerous that Joinder of All Members of the
9                            Class Is Impracticable ................................................................7

10                   2.      Questions of Law and Fact Are Common to Members of the Class ..........9

11                   3.      Plaintiffs' Claims Are Typical of Those of the Class ..............................10

12                   4.      Plaintiffs Will Fairly and Adequately Protect the Interests of the
                             Class..........................................................................................12

13           C.      The Proposed Class Satisfies Rule 23(b)(3) ........................................................13

14                   1.      Common Questions of Law and Fact Predominate over Individual
15                           Questions......................................................................................13

16                   2.      A Class Action Is Superior to Other Available Methods for
                             Resolving this Controversy...........................................................15

17   IV.     CONCLUSION................................................................................................17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*A & J Deutscher Family Fund v. Bullard*,
  No. CV 85-1850-PAR, 1986 U.S. Dist. LEXIS 20054
5
  (C.D. Cal. Sept. 22, 1986)............................................................11

6
*Adam v. Silicon Valley Bancshares*,
  884 F. Supp. 1398 (N.D. Cal. 1995) ....................................12
7

*Armstrong v. Davis*,
8
  275 F.3d 849 (9th Cir. 2001) .............................................11

9
*Arnold v. United Artists Theatre Circuit*,
  158 F.R.D. 439 (N.D. Cal. 1994)..........................................7
10

*Arthur Young & Co. v. United States Dist. Court*,
11
  549 F.2d 686 (9th Cir. 1977) ..............................................5

12
*Ballard v. Equifax Check Servs., Inc.*,
  186 F.R.D. 589 (E.D. Cal. 1999) ........................................10
13

*Basic Inc. v. Levinson*,
14
  485 U.S. 224 (1988).................................................2, 6, 14

15
*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .....................................*passim*
16

*Brady v. Lac, Inc.*,
17
  72 F.R.D. 22 (S.D.N.Y. 1976) .............................................8

18
*Cameron v. E. M. Adams & Co.*,
  547 F.2d 473 (9th Cir. 1976) ..............................................14
19

*Deposit Guar. Nat'l Bank v. Roper*,
20
  445 U.S. 326 (1980)............................................................17

21
*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ............................................14
22

*Eisen v. Carlisle & Jacquelin*,
23
  417 U.S. 156 (1974)..............................................................2

24
*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985)................................................15
25

*Epitope, Inc., Sec. Litig.*,
26
  Civil No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705
  (D. Or. Nov. 30, 1992).........................................................12
27

*Epstein v. MCA, Inc.*,
28
  50 F.3d 644 (9th Cir. 1995) ...................................5, 13, 16

1

2                                                                                              **Page**

3   *Freedman v. La.-Pac. Corp.*,
        922 F. Supp. 377 (D. Or. 1996) ........................................................................ *passim*
4
    *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
5       114 F.R.D. 48 (S.D.N.Y. 1987) ............................................................................14

6   *Greenspan v. Brassler*,
        78 F.R.D. 130 (S.D.N.Y. 1978) ...............................................................................8
7
    *Hanlon v. Chrysler Corp.*,
8       150 F.3d 1011 (9th Cir. 1998) ...........................................................................9, 11

9   *Hanon v. Dataproducts Corp.*,
        976 F.2d 497 (9th Cir. 1992) ................................................................................11
10
    *Harris v. Palm Springs Alpine Estates, Inc.*,
11      329 F.2d 909 (9th Cir. 1964) ......................................................................5, 7, 15

12  *Haywood v. Barnes*,
        109 F.R.D. 568 (E.D.N.C. 1986) .............................................................................9
13
    *Hernandez v. Alexander*,
14      152 F.R.D. 192 (D. Nev. 1993).........................................................................7, 13

15  *In re Adobe Sys., Inc. Sec. Litig.*,
        139 F.R.D. 150 (N.D. Cal. 1991) .............................................................................5
16
    *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
17      140 F.R.D. 425 (D. Ariz. 1992) .............................................................................11

18  *In re Asbestos Sch. Litig.*,
        104 F.R.D. 422, 429 (E.D. Pa. 1984)........................................................................9
19
    *In re Blech Sec. Litig.*,
20      187 F.R.D. 97 (S.D.N.Y. 1999) ..........................................................................5, 8

21  *In re Cirrus Logic Sec. Litig.*,
        155 F.R.D. 654 (N.D. Cal. 1994).....................................................................7, 10, 11
22
    *In re Computer Memories Sec. Litig.*,
23      111 F.R.D. 675 (N.D. Cal. 1986) ...........................................................................13

24  *In re Emulex Corp. Sec. Litig.*,
        210 F.R.D. 717 (C.D. Cal. 2002) .....................................................................8, 14, 15
25
    *In re Indep. Energy Holdings PLC, Sec. Litig.*,
26      210 F.R.D. 476 (S.D.N.Y. 2002) .......................................................................13, 15

27  *In re Memorex Sec. Cases*,
        61 F.R.D. 88 (N.D. Cal. 1973)................................................................................13
28

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN     - iii -
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ

1

2                                                                                                    **Page**

3  *In re Penn Cent. Sec. Litig.,*
       62 F.R.D. 181 (E.D. Pa. 1974)......................................................................................8
4

5  *In re Seagate Tech. II Sec. Litig.,*
       843 F. Supp. 1341 (N.D. Cal. 1994) ........................................................................5, 14

6  *In re Seagate Techs. Sec. Litig.,*
       115 F.R.D. 264 (N.D. Cal. 1987)..................................................................................8
7

8  *In re Sugar Indus. Antitrust Litig.,*
       MDL Dkt. No. 201, 1976 U.S. Dist. LEXIS 14955
9      (N.D. Cal. May 21, 1976) ...........................................................................................16

10 *In re THQ Inc. Sec. Litig.,*
       No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753
11     (C.D. Cal. Mar. 22, 2002) ........................................................................................5, 10

12 *In re Unioil Sec. Litig.,*
       107 F.R.D. 615 (C.D. Cal. 1985)............................................................................14, 16

13 *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.,*
       122 F.R.D. 251 (C.D. Cal. 1988)...................................................................7, 11, 12, 14
14

15 *In re Worlds of Wonder Sec. Litig.,* No. C 87
       5491 SC (Consolidated Actions), 1990 U.S. Dist. LEXIS 8511
16     (N.D. Cal. Mar. 26, 1990) ............................................................................................2

17 *J. I. Case Co. v. Borak,*
       377 U.S. 426 (1964)......................................................................................................6

18 *Jacobs v. Paul Hardeman, Inc.,*
       42 F.R.D. 595 (S.D.N.Y. 1967) ....................................................................................8
19

20 *Lerwill v. Inflight Motion Pictures, Inc.,*
       582 F.2d 507 (9th Cir. 1978) ......................................................................................12

21 *Lubin v. Sybedon Corp.,*
       688 F. Supp. 1425 (S.D. Cal. 1988)............................................................................13
22

23 *Matsushita Elec. Indus. Co. v. Epstein,*
       516 U.S. 367 (1996)......................................................................................................5

24 *Mersay v. First Republic Corp.,*
       43 F.R.D. 465 (S.D.N.Y. 1968) ..................................................................................12
25

26 *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.,*
       611 F. Supp. 990 (C.D. Cal. 1984) ...............................................................................7

27 *Rodriguez v. Carlson,*
       166 F.R.D. 465 (E.D. Wash. 1996)...............................................................................9
28

Page

*Schaefer v. Overland Express Family of Funds,*
169 F.R.D. 124 (S.D. Cal. 1996) .............................................................. *passim*

*Schneider v. Traweek,*
No. CV 88-0905 RG (Kx), 1990 U.S. Dist. LEXIS 15596
(C.D. Cal. Apr. 7, 1990)............................................................5, 9, 11

*Schwartz v. Harp,*
108 F.R.D. 279 (C.D. Cal. 1985) ..........................................................7, 11

*Sherman v. Griepentrog,*
775 F. Supp. 1383 (D. Nev. 1991) ...........................................................7

*Stolz v. United Bhd. of Carpenters & Joiners, Local Union No. 971,*
620 F. Supp. 396 (D. Nev. 1985) .............................................................12

*Trattner v. Am. Fletcher Mortgage Investors,*
74 F.R.D. 352 (S.D. Ind. 1976)................................................................8

*Weeks v. Bareco Oil Co.,*
125 F.2d 84 (7th Cir. 1941) ...................................................................15

*Wehner v. Syntex Corp.,*
117 F.R.D. 641 (N.D. Cal. 1987)............................................................7, 8

*Weinberger v. Jackson,*
102 F.R.D. 839 (N.D. Cal. 1984)...................................................8, 11, 13

*Weinberger v. Thornton,*
114 F.R.D. 599 (S.D. Cal. 1986) ............................................................16

*Yaffe v. Powers,*
454 F.2d 1362 (1st Cir. 1972)................................................................16

*Yamner v. Boich,*
No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849
(N.D. Cal. Sept. 15, 1994) ...................................................5, 7, 10, 11

*Yslava v. Hughes Aircraft Co.,*
845 F. Supp. 705 (D. Ariz. 1993) ............................................................9

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P
Rule 23 ..........................................................................................1, 2, 5
Rule 23(a)..................................................................................... *passim*
Rule 23(a)(1)...................................................................................7
Rule 23(a)(2)...............................................................................9, 10, 17
Rule 23(a)(4)....................................................................................13
Rule 23(b)(3) ............................................................................... *passim*

**Page**

15 U.S.C.
   §78j(b)............................................................................................................1, 14
   §78t(a)...................................................................................................................1

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369, at 31 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 679, 730 .........................................................6

Herbert B. Newberg & Alba Conte, Newberg on Class Actions
   §3.10 at 3-50 (3d ed. 1992) .................................................................................9

1  Plaintiffs respectfully submit this memorandum of law in support of the accompanying

2  motion to certify this action as a class action and appoint Local 144 Nursing Home Pension Fund

3  (now known as 1199 SEIU Greater New York Pension Fund), Drifton Finance Corporation, Robert

4  D. Sawyer, Ryan Kuehmichel and Dzung Chu (hereinafter "Plaintiffs") as class representatives.

5  **I.   PRELIMINARY STATEMENT**

6  This is a securities class action against defendants Oracle Corporation ("Oracle" or the

7  "Company") and the following individual defendants: (i) Lawrence J. Ellison ("Ellison"), Chief

8  Executive Officer and Board of Directors Chairman, as well as one of the Company's founders; (ii)

9  Jeffrey O. Henley ("Henley"), Executive Vice President and Chief Financial Officer; and (iii)

10  Edward J. Sanderson ("Sanderson"), Executive Vice President.

11  Plaintiffs seek an order certifying this action as a class action pursuant to Fed. R. Civ. P.

12  23(a) and 23(b)(3) on behalf of a Class defined as all persons and entities who purchased or

13  otherwise acquired the publicly traded securities of Oracle during the period beginning December

14  14, 2000, through and including March 1, 2001 (the "Class Period").[1]  Plaintiffs also seek the

15  appointment of designated representatives and their counsel of record.

16  The Revised Second Amended Complaint for Violations of the Federal Securities Laws (the

17  "Complaint") alleges that during the Class Period, defendants violated §§10(b), 20(a), and 20A of

18  the Securities Exchange Act of 1934 (the "Exchange Act") by making false and misleading

19  statements about, among other things, Oracle's financial results for the second quarter of fiscal year

20  2001 ("2Q01"), the effects of the economy on Oracle's business, Oracle's third quarter 2001

21  forecasts, and the functionality of Oracle's 11i Applications Suite ("11i"), which artificially inflated

22  Oracle's stock price throughout the Class Period.  By certifying this case as a class action, Plaintiffs,

23  and thousands of other investors similarly situated who suffered substantial damages when

24  purchasing Oracle stock at artificially inflated prices, will be permitted to efficiently and effectively

25  prosecute this action.

26  _____

27  [1]      Excluded from the Class are officers and directors of the Company as well as their families
and families of the defendants.

28
PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ      - 1 -

1    In a long and virtually unbroken line of cases, the Ninth Circuit and the district courts in

2  California and elsewhere have endorsed the use of class action procedures in adjudicating claims

3  under the federal securities laws:

4    [C]lass actions commonly arise in securities fraud cases as the claims of separate
     investors are often too small to justify individual lawsuits, making class actions the
5    only efficient deterrent against securities fraud.

6  *In re Worlds of Wonder Sec. Litig.*, No. C 87 5491 SC (Consolidated Actions), 1990 U.S. Dist.

7  LEXIS 8511, at *4-*5 (N.D. Cal. Mar. 26, 1990).[2]  Indeed, courts throughout the United States have

8  consistently recognized the necessity for class actions such as this one in order to enforce the federal

9  securities law.  *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Blackie v. Barrack*, 524 F.2d

10  891 (9th Cir. 1975).  In recognition of their significant role in protecting investors, courts liberally

11  construe the requirements of Rule 23 of the Federal Rules of Civil Procedure in favor of class

12  certification.  "'[T]he ultimate effectiveness of [the security anti-fraud laws] may depend on the

13  applicability of the class action device.'"  *Id.* at 903.

14    This action satisfies all of the requirements of Fed. R. Civ. P. 23.  The proposed Class is so

15  numerous that joinder of all members is impracticable; there are questions of fact and law common

16  to the Class which predominate; the claims or defenses of the representative parties are typical of the

17  claims or defenses of the Class; the representatives will fairly and adequately protect the interests of

18  the Class; and a class action is the superior means to resolve the issues raised by this case.

19  Accordingly, this case should be certified as a class action.[3]

20

21

22

_____

23  [2]    Here, as elsewhere, emphasis is added and citations are omitted unless otherwise noted.

24  [3]    The questions raised by a class certification motion are purely procedural; the Court does not
     examine the merits of the plaintiff's case when considering a motion for class certification.  *Eisen v.*
25  *Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Blackie*, 524 F.2d at 901 n.17; *Freedman v. La.-*
     *Pac. Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996) ("In ruling on a motion to certify, the court accepts
26  as true the allegations made in support of certification, and does not consider the merits of the
     case.").

27

28

## II.      STATEMENT OF FACTS COMMON TO ALL CLASS MEMBERS

Oracle designs and sells software for business information management.  ¶2.[4]   Since the mid-1980s, Oracle has been a market-share leader in database management systems.  ¶3.  By 2000, however, the database market was saturated, and Oracle concluded that its strongest opportunity for growth lay in developing and selling software applications.  *Id.*  In order to compete in the applications market, Oracle developed the 11i software modules to enable businesses to manage financials, manufacturing, sales force, logistics, e-commerce and suppliers with a single integrated package, rather than buying separate software for each function.  ¶4.  Two obstacles, however, impeded this strategy – sales of the 11i were slow due to product defects and the declining U.S. economy impacted many of Oracle's customers, further slowing sales.  ¶¶7, 9, 13-14.

To hide Oracle's declining results, defendants knowingly falsified Oracle's 2Q01 revenues by improperly converting approximately $228 million in customer overpayments to "revenue" enabling Oracle to announce on December 14, 2000, that it had exceeded its $0.10 earnings per share ("EPS") forecast for 2Q01 by a penny per share.  ¶¶35-44.  This conversion to revenue violated Generally Accepted Accounting Principles because Oracle had not "earned" and was not entitled to keep money which belonged to its customers.  ¶42.

Defendants also falsely assured investors between December 14, 2000 and February 23, 2001 that the declining U.S. economy was not negatively impacting Oracle's operations.  ¶¶45, 60, 65.  Ellison himself claimed that "[t]he economic slowdown isn't hurting Oracle" and Henley added that "[w]e're seeing no softening in our business" from the slowing economy.  ¶45.  Defendants' assurances were knowingly false when made as countless witnesses have confirmed that Oracle's sales in the second and third quarters of 2001 declined substantially because of the economy and its impact on Oracle customers.  ¶¶47-48, 61, 66.  Indeed, Oracle lost nearly 10-12% of its revenue base when its internet customers closed their doors and millions more when Oracle's database customers

---

[4]      All paragraph references ("¶") are to the Complaint.

1   cut their IT budgets to brace for an unstable economy.  ¶7.  The defects in 11i compounded these

2   serious problems.  ¶¶9-11.

3          Despite the impact on Oracle's business, defendants continued to assure investors that

4   Oracle's business was sound and growing tremendously.  They forecasted $0.12 EPS, $2.9 billion in

5   revenues, 25% database growth and 75% applications growth for Oracle's third quarter.  Oracle

6   attributed much of that growth to 11i, and emphasized the benefits of 11i's integration and

7   interoperability.  ¶¶46, 65, 70-71.  They claimed that demand for 11i was "strong" and "robust," that

8   "all the pieces [were] designed and engineered to fit together, [with] no systems integration []

9   required" and that 11i would be "up and running in months" for customers.  ¶¶50, 58, 65.  In fact,

10  they told investors that their customers would "get the savings in months," that it "costs you less,"

11  and that "it takes less time to install."  ¶50.  The message was clear – 11i was going to drive Oracle

12  results now and in the future.

13         Defendants' statements were false and misleading and their forecasts had no reasonable basis

14  in fact.  11i was not ready for production and its early and extremely "buggy" release spelled doom

15  for Oracle's third quarter results.  ¶6.  Customers cancelled millions of dollars in orders, refused

16  payment, and delayed installations because, as one witness put it, Oracle was "not just selling a car

17  without tires, they sold it without wheels."  ¶¶52, 54.  Oracle sold 11i to customers with deficient

18  program interfaces, applications modules that were not interoperable, and applications modules that

19  were defective.  *Id.*  Numerous witnesses confirmed that 11i required integration, that integration

20  was not working, and that defendants knew it – the exact opposite of what defendants were telling

21  investors.  ¶¶52, 54-56, 79.

22         Defendants' misstatements drove Oracle's stock price from $27 per share to a Class Period

23  high of $34.00 per share.  ¶9.  Defendants took advantage of this inflation by selling nearly $1

24  billion of their personal holdings.  Henley sold one million shares in one day for proceeds of $32.3

25  million and Ellison sold more than 29 million shares in one week for a total of almost $900 million –

26  nearly pure profit for both defendants.  ¶¶20-21.  Henley acquired the shares that he sold for just

27  $1.04 to $1.69 per share and Ellison acquired all of his for only $0.23 per share.  *Id.*

28

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ          - 4 -

Then, on March 1, 2001, Oracle announced that it would miss its third quarter forecasts by material amounts *because of the economy and 11i* – the very problems that defendants had been denying throughout the class period.  ¶¶74, 76-77.  It missed its EPS share forecast by $0.02 per share (a $112M or 17% shortfall), it missed its revenue forecast by $233M (an 8% miss), its database growth was only 6% (instead of the forecasted 25%) and its applications (*i.e.*, 11i) growth was a paltry 25% compared to the 75% forecasted.  ¶¶76-77.  Oracle stock collapsed on the news.  It fell from $19.50 per share to $16.88 per share in a single day of trading on record volume of more than 224 million shares.  ¶75.  Plaintiffs and the Class lost billions.  *Id.*

## III.   ARGUMENT

### A.   This Case Appropriately Calls for Class Action Treatment Under Rule 23

The Ninth Circuit and district courts within it have repeatedly endorsed the use of class action procedures to resolve claims under the federal securities laws.  As one court has stated, "[t]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."  *Schneider v. Traweek*, No. CV 88-0905 RG (Kx), 1990 U.S. Dist. LEXIS 15596, at *16 (C.D. Cal. Apr. 7, 1990).  Courts recognize that any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the members of the class.  *Id.* at 901.  "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud.  Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.3d 909, 913 (9th Cir. 1964)).[5]

---

[5]      *See, e.g., Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996); *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686 (9th Cir. 1977); *Blackie*, 524 F.2d at 902; *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *6 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit favors a liberal use of class actions to enforce federal securities laws."); *Schaefer v. Overland*

1      The Supreme Court has long recognized, and Congress recently affirmed, that private actions

2 are also an important enforcement mechanism to supplement governmental administrative regulation

3 of the securities markets.  "Private enforcement ... provides a necessary supplement to [Securities

4 and Exchange] Commission action," by both affording relief to those injured by violations of the

5 securities laws and serving as a deterrent to future wrongdoing.  *J. I. Case Co. v. Borak*, 377 U.S.

6 426, 432 (1964); *see also Basic*, 485 U.S. at 231 (private actions for violations of the Exchange Act

7 "constitute[] an essential tool for enforcement of the 1934 Act's requirements").

8      In enacting the PSLRA, Congress reaffirmed the importance of private enforcement of the

9 securities laws:

10     Private securities litigation is an indispensable tool with which defrauded investors
     can recover their losses without having to rely upon government action.  Such private
11     lawsuits promote public and global confidence in our capital markets and help to
     deter wrongdoing and to guarantee that corporate officers, auditors, directors,
12     lawyers and others properly perform their jobs.

13 H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730.  Thus, this

14 Court should liberally construe the requirements of Rule 23 in favor of certifying this securities fraud

15 case as a class action.

16     **B.**    **The Proposed Class Satisfies the Prerequisites of Rule 23(a)**

17       Rule 23(a) sets forth four prerequisites for certifying a class:

18     (1) [T]he class is so numerous that joinder of all members is impracticable, (2) there
     are questions of law or fact common to the class, (3) the claims or defenses of the
19     representative parties are typical of the claims or defenses of the class, and (4) the
     representative parties will fairly and adequately protect the interests of the class.

20

21

---

22 *Express Family of Funds*, 169 F.R.D. 124, 130 (S.D. Cal. 1996) ("Courts have generally found that
actions for securities fraud actions [sic] are usually best maintained as class actions."); *In re Seagate*
23 *Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994) (finding that doubts should be
resolved in favor of class certification).  The Private Securities Litigation Reform Act of 1995 (the
24 "PSLRA") has not changed the standard for certifying a class action.  *In re THQ Inc. Sec. Litig.*, No.
CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753, at *8-*9 (C.D. Cal. Mar. 22, 2002) ("[L]ower
25 courts have recognized that 'the law in the Ninth Circuit is ***very well established*** that the
requirements of Rule 23 should be liberally construed in favor of class action cases brought under
26 the federal securities laws.'") (quoting *Schneider*, 1990 U.S. Dist. LEXIS 15596); *In re Blech Sec.*
*Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("[I]n an alleged securities fraud case, when a court is in
27 doubt as to whether or not to certify a class action, the court should err in favor of allowing the class
to go forward.")

28

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ    - 6 -

1   Fed. R. Civ. P. 23(a).  Thus, this case may proceed as a class action once plaintiffs establish that

2   their securities fraud claims satisfy the four prerequisites of Rule 23(a) commonly referred to as:

3   numerosity, commonality, typicality, and adequacy of representation.  *See Schaefer*, 169 F.R.D. at

4   127; *Hernandez v. Alexander*, 152 F.R.D. 192, 193 (D. Nev. 1993); *In re United Energy Corp. Solar*

5   *Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 253 (C.D. Cal. 1988).  The proposed

6   class in this case easily satisfies each of these prerequisites.

7           **1.      The Class Is so Numerous that Joinder of All Members of the
                        Class Is Impracticable**

8

9           Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

10  "impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible, only that it

11  would be difficult or inconvenient to join all members of the class.  *Harris*, 329 F.2d at 913-14; *see*

12  *also Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987).  There is no fixed number of

13  class members which either compels or precludes the certification of a class.  *Arnold v. United*

14  *Artists Theatre Circuit*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Indeed, classes consisting of 25

15  members have been held large enough to justify certification.  *See In re Cirrus Logic Sec. Litig.*, 155

16  F.R.D. 654, 656 (N.D. Cal. 1994); *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,

17  611 F. Supp. 990, 995 (C.D. Cal. 1984).  Additionally, the exact size of the class need not be known

18  so long as general knowledge and common sense indicate that the class is large.  *Id.*; *see also*

19  *Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in

20  the proposed class does not defeat class certification ... and plaintiff's allegations plainly suffice to

21  meet the numerosity requirement of Rule 23.").[6]  Indeed, courts in this district have assumed that the

22  numerosity requirement is satisfied in securities cases involving nationally-traded stocks.  *Yamner*,

23  1994 U.S. Dist. LEXIS 20849, at *7-*8.

24

25  _____

26  [6]      *Accord Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) ("'It is not
        necessary that the members of the class be so clearly identified that any member can be presently

27  ascertained.'  ...  The court may draw a reasonable inference of the size of the class from the facts
        before it.") (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

28
        PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
        SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ           - 7 -

1    In securities litigation, district courts regularly find the numerosity requirement satisfied with

2    respect to a purported class of purchasers or resellers of nationally traded securities on the basis of

3    the number of shares sold during the class period.  *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D.

4    717, 719 (C.D. Cal. 2002) ("[T]he Class would include hundreds of thousands of purchasers since

5    approximately five million shares of Emulex stock were traded daily during the Class Period.

6    Individual joinder of members of a class this size would be impracticable."); *Greenspan v. Brassler*,

7    78 F.R.D. 130, 132 n.4 (S.D.N.Y. 1978) (964,000 shares traded during class period); *Trattner v. Am.*

8    *Fletcher Mortgage Investors*, 74 F.R.D. 352, 356 (S.D. Ind. 1976) (mere fact that stock volume was

9    sufficient to be traded on the New York Stock Exchange); *Brady v. Lac, Inc.*, 72 F.R.D. 22, 27

10   (S.D.N.Y. 1976) (1.3 million outstanding shares); *In re Penn Cent. Sec. Litig.*, 62 F.R.D. 181, 188

11   (E.D. Pa. 1974) (1.5 million outstanding shares); *Jacobs v. Paul Hardeman, Inc.*, 42 F.R.D. 595, 598

12   (S.D.N.Y. 1967) (7,000 outstanding).

13   While plaintiffs have not yet obtained Oracle's stock transfer records for the time period in

14   question, Oracle had approximately 5.6 billion shares of common stock outstanding during the Class

15   Period and the daily trading volume of Oracle stock reached as high as 120 million shares during the

16   Class Period.  There were undoubtedly thousands, if not millions, of purchasers of Oracle shares on

17   the NASDAQ National Market System during the Class Period.  ¶29.  In order to meet the

18   numerosity requirement for class certification, plaintiffs may rely on reasonable inferences drawn

19   from available facts in order to demonstrate that the Class is so numerous that joinder of all Class

20   members is impracticable.  *Blech*, 187 F.R.D. at 103.  With 5.6 billion shares of issued Oracle

21   common stock outstanding and enormous trading volume, it is clear that a class of this size is so

22   numerous as to make individual joinder impracticable, if not logistically impossible, especially

23   where members of the Class are located throughout the country.  Plainly, the proposed Class satisfies

24   the numerosity requirement of Rule 23(a).  *See Freedman*, 922 F. Supp. at 398; *Wehner*, 117 F.R.D.

25   at 643; *In re Seagate Techs. Sec. Litig.*, 115 F.R.D. 264, 267 (N.D. Cal. 1987); *Weinberger v.*

26   *Jackson*, 102 F.R.D. 839, 844 (N.D. Cal. 1984).

27

28

1

## 2.    Questions of Law and Fact Are Common to Members of the Class

2

3    Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of law or fact

4    common to the class.  Like all the requirements of Rule 23(a), the commonality requirement is to be

5    construed liberally:  "'[T]hose courts that have focused on Rule 23(a)(2) have given it a permissive

6    application so that common questions have been found to exist in a wide range of contexts.'  The

7    rule does not require all questions of law and fact to be common." *Rodriguez v. Carlson*, 166 F.R.D.

8    465, 472 (E.D. Wash. 1996) (quoting *Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986));

9    *see also Schneider*, 1990 U.S. Dist. LEXIS 15596.

10    It is well established that the commonality requirement is satisfied if the claims of the

11    prospective class share even one central question of fact or law.  *See, e.g., Hanlon v. Chrysler Corp.*,

12    150 F.3d 1011, 1019-1020 (9th Cir. 1998); Herbert B. Newberg & Alba Conte, Newberg on Class

13    Actions §3.10 at 3-50 (3d ed. 1992).  "All questions of fact and law need not be common to satisfy

14    the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a

15    common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150

16    F.3d at 1019; *see also Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993) ("'A

17    common question is one which arises from a "common nucleus of operative facts" regardless of

18    whether the underlying facts fluctuate over the class period and vary as to individual claimants.'")

19    (quoting *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984)).

20    This action will require the Court to address a series of questions that will affect all Class

21    members.  For example, as alleged in the Complaint common questions of law and fact exist as to:

22        (a)    whether the federal securities laws were violated by defendants' acts;

23        (b)    whether statements made by defendants to the investing public during the

24    Class omitted or misrepresented material facts about the business, financial and operational results of

25    Oracle;

26        (c)    whether defendants acted with the requisite state of mind in misrepresenting

27    or omitting material facts;

28

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ          - 9 -

1           (d)      whether the market price of Oracle common stock during the Class Period was

2  artificially inflated due to the material omissions and misrepresentations described in the Complaint;

3  and

4           (e)      whether the Class members have sustained damages and, if so, the appropriate

5  measure thereof.

6  *See Yamner*, 1994 U.S.Dist. LEXIS 20849, at *9 ("These are the standard questions upon which

7  federal courts have based the grant of class certification in numerous securities actions.").

8          Underlying these basic common questions is a common nucleus of operative facts pertaining

9  to defendants' scheme to artificially inflate and maintain the price of Oracle securities, thereby

10  deceiving the investing public and causing members of the Class to purchase Oracle's securities at

11  inflated prices. *See generally* Complaint.  These central fact issues and their legal consequences are

12  common to all Class members.  *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594-95 (E.D.

13  Cal. 1999) ("A common nucleus of operative fact is typically found where 'defendants have engaged

14  in standardized conduct toward members of the proposed class by mailing to them allegedly illegal

15  form letters or documents.'") (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).  Indeed,

16  courts routinely recognize that securities fraud actions alleging such a common course of conduct

17  and based on a "fraud on the market" satisfy the commonality requirements of Fed. R. Civ. P.

18  23(a)(2).  *See THQ, Inc.*, 2002 U.S. Dist. LEXIS 7753 (citing *Blackie*, 524 F.2d at 902); *Cirrus*

19  *Logic*, 155 F.R.D. at 657.  Thus, this action satisfies the commonality requirement of Fed. R. Civ. P.

20  23(a).

21         **3.**    **Plaintiffs' Claims Are Typical of Those of the Class**

22          Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3) if they arise from the

23  same event or course of conduct that gives rise to claims of other Class members and the claims

24  asserted are based on the same legal theory.

25        Plaintiffs have sufficiently demonstrated that the named class representatives' claims
            are typical of those of the entire "global" class because the "typicality" prerequisite

26        of Rule 23(a)(3) is satisfied when all members of the class are victims of the same
            course of conduct.

27

28

1  *Schneider*, 1990 U.S. Dist. LEXIS 15596, at *21; *see also Schaefer*, 169 F.R.D. at 128-29;

2  *Freedman*, 922 F. Supp. at 399; *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 140 F.R.D.

3  425, 430 (D. Ariz. 1992); *United Energy*, 122 F.R.D. at 255-56.  In *Hanlon*, 150 F.3d 1011, the

4  Ninth Circuit explained that "[u]nder [Rule 23's] permissive standards, representative claims are

5  'typical' if they are reasonably co-extensive with those of absent class members; they need not be

6  substantially identical."  *Id.* at 1020.

7      The purpose of the "typicality" requirement is to ensure that the named representatives'

8  interests "align" with those of the class.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

9  1992).  The test generally is "whether other members have the same or similar injury, whether the

10  action is based on conduct that is not unique to the named plaintiffs, and whether other class

11  members have been injured by the same course of conduct."  *A & J Deutscher Family Fund v.*

12  *Bullard*, No. CV 85-1850-PAR, 1986 U.S. Dist. LEXIS 20054, at *18 (C.D. Cal. Sept. 22, 1986)

13  (citing *Schwartz*, 108 F.R.D. at 282); *see also Schaefer*, 169 F.R.D. at 128-29; *Cirrus Logic*, 155

14  F.R.D. at 657.

15      Typicality does ***not*** require the representatives' claims to be identical (or even "substantially

16  identical") to the class members' claims:

17          ***"Typicality refers to the nature of the claim or defense of the class***
        ***representative, and not to the specific facts from which it arose or the relief sought.***
18      ***Accordingly, differences in the amount of damage, the size or manner of [stock]***
        ***purchase, the nature of the purchaser, and even the specific document influencing***
19      ***the purchase will not render a claim atypical in most securities cases."***

20  *Jackson,* 102 F.R.D. at 844 (quoting 5 Herbert B. Newberg & Alba Conte, Newberg on Class

21  Actions §8816 at 850 (1977)); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), ("We

22  do not insist that the named plaintiffs' injuries be identical with those of the other class members,

23  only that the unnamed class members have injuries similar to those of the named plaintiffs and that

24  the injuries result from the same, injurious course of conduct."); *Yamner*, 1994 U.S. Dist. LEXIS

25  20849 (finding typicality in spite of plaintiff's purchase of stock after learning of fraudulent

26  conduct).

27      The courts have held that Rule 23(a)(3) requires only that there be no express conflict

28  between the representative parties and the class "over the very issue in litigation" and that the

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ          - 11 -

1   representatives' "interests are not antagonistic to those of the class." *Mersay v. First Republic Corp.*,

2   43 F.R.D. 465, 468-69 (S.D.N.Y. 1968); *accord Stolz v. United Bhd. of Carpenters & Joiners, Local*

3   *Union No. 971*, 620 F. Supp. 396, 404 (D. Nev. 1985); *see also Adam v. Silicon Valley Bancshares*,

4   884 F. Supp. 1398 (N.D. Cal. 1995).

5       Here, the typicality requirement is satisfied because the claims of all Class members derive

6   from the same legal theories and allege the same set of operative facts.  Plaintiffs, like the other

7   Class members, allege that they purchased Oracle's common stock and thereby suffered damages as

8   a consequence of defendants' false and misleading statements and/or non-disclosures.  All members

9   of the Class were victims of a common course of fraudulent conduct by defendants throughout the

10  Class Period.  As a result, the claims of plaintiffs are typical of those of the Class.

11      **4.      Plaintiffs Will Fairly and Adequately Protect the Interests of
                 the Class**

12      Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

13  interests of the class."  Courts have established a two-prong test for this requirement.  *See, e.g.,*

14  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Schaefer*, 169 F.R.D. at

15  130; *United Energy*, 122 F.R.D. at 257.  First, counsel for the class representatives must be

16  competent to undertake the particular litigation at hand.  Second, there can be no antagonism or

17  disabling conflict between the interests of the named class representatives and the members of the

18  class.  "The burden is on the defendants to prove that the representation will be inadequate."

19  *Epitope, Inc., Sec. Litig.*, Civil No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705, at *10 (D. Or. Nov.

20  30, 1992).

21      Defendants cannot meet this burden because both prongs of the "adequacy" test are met here.

22  First, plaintiffs have retained attorneys with extensive experience in the area of securities litigation

23  who have successfully prosecuted numerous securities fraud class actions and other complex actions

24

25

26

27

28

1  on behalf of injured investors in this District and across the country.[7] There can be no legitimate

2  dispute that plaintiffs' counsel are capable of prosecuting this litigation.

3       The second requirement is also satisfied here because there is no antagonism between the

4  representative plaintiffs and the absent Class members. *See Lubin v. Sybedon Corp.*, 688 F. Supp.

5  1425, 1461 (S.D. Cal. 1988); *Jackson*, 102 F.R.D. at 844-45. In fact, the proposed Class

6  representatives have the same claims as each Class member. Accordingly, the interests of the Class

7  will be fairly and adequately protected. *See* Fed. R. Civ. P. 23(a)(4).

8      **C.**     **The Proposed Class Satisfies Rule 23(b)(3)**

9       In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies the

10  requirements of Rule 23(b), which requires that the proposed class representatives establish that

11  common questions of law or fact predominate over individual questions and that a class action is

12  superior to other available methods of adjudication. *See Hernandez*, 152 F.R.D. at 193-94. As

13  shown above, common questions of law and fact predominate in this case and a class action is the

14  superior, if not the only, method available to fairly and efficiently litigate this securities action. *See*

15  *Epstein*, 50 F.3d at 668-69; *Schaefer*, 169 F.R.D. at 130-31.

16      **1.**     **Common Questions of Law and Fact Predominate over Individual Questions**

17

18       Where a complaint alleges a "common course of conduct" of misrepresentations, omissions,

19  and other wrongdoings that affect all members of the class in the same manner, common questions

20  predominate. *Blackie*, 524 F.2d at 905-08; *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675,

21  684 (N.D. Cal. 1986). In assessing whether common questions predominate, the Court's inquiry

22  should be directed primarily toward the issue of liability. *See Blackie*, 524 F.2d at 902; *In re*

23  *Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973). Indeed, "when determining whether

24  common questions predominate courts 'focus on the liability issue ... and if the liability issue is

25  common to the class, common questions are held to predominate over individual questions.'" *In re*

---

26  [7]    *See* firm resume of Lerach Coughlin Stoia Geller Rudman & Robbins LLP attached to the

27  Declaration of Monique C. Winkler in Support of Plaintiffs' Motion for Class Certification, filed herewith.

28

1   *Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002) (citing *Genden v.*

2   *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) (quoting *Dura-Bilt*

3   *Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

4           As discussed above, there are a host of common questions of law and fact which plaintiffs

5   seek to certify.  These questions clearly predominate over individual questions because defendants'

6   conduct affected all Class members in the same manner through false statements and omissions

7   which artificially inflated the price of Oracle common stock.  It is difficult to discern liability issues

8   in this case that are not common to all members of the Class.  *See, e.g., Freedman*, 922 F. Supp. at

9   399-400; *Schaefer*, 169 F.R.D. at 130-31; *United Energy*, 122 F.R.D. at 256; *Emulex*, 210 F.R.D. at

10  721 (granting motion for class certification where "[t]he predominant questions of law or fact at

11  issue in this case are the alleged misrepresentation Defendants made during the Class Period and are

12  common to the class."); *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 622 (C.D. Cal. 1985) ("As

13  plaintiffs' claim is based on a common nucleus of misrepresentations, material omissions and market

14  manipulations, the common questions predominate over any differences between individual class

15  members with respect to damages, causation or reliance.").  The critical issues of fact and law raised

16  in this action are common to all members of the Class and they will predominate in this case.  Once

17  these common questions are resolved, all that will remain is the purely mechanical act of computing

18  the amount of damages suffered by each Class member.

19          In contrast, there are no significant (let alone predominate) individual issues even with

20  respect to issues such as reliance.  Plaintiffs' claims arising under §10(b) of the Exchange Act

21  require no proof of individual reliance because plaintiffs are entitled to a presumption of reliance

22  when they have alleged that defendants artificially inflated the price of the stock in question by

23  issuing false and misleading statements and by failing to disclose material facts which defendants

24  had a duty to disclose.  *See Basic*, 485 U.S. at 247; *see also Cameron v. E. M. Adams & Co.*, 547

25  F.2d 473 (9th Cir. 1976); *Blackie*, 524 F.2d at 905; *Schaefer*, 169 F.R.D. at 128; *Seagate Tech. II*,

26  843 F. Supp. at 1356-57.

27          Moreover, the fact that class members may not be identically situated is immaterial.  The fact

28  that different members of the class may have invested at different times and may have been exposed

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ          - 14 -

1    to different misrepresentations and/or omissions committed by defendants does not preclude a

2    finding that common issues predominate because a continuous course of conduct has been alleged.

3    *Harris*, 329 F.2d at 914-15; *see Blackie*, 524 F.2d at 902 (endorsing the approach taken by the court

4    of appeals in *Harris*; *see also Indep. Energy*, 210 F.R.D. at 486 (holding that the predominance

5    requirement was easily satisfied in cases where claims were based on a common legal theory of

6    material misrepresentations and omissions, even though damage amounts might vary)).

7            In sum, where a complaint alleges a continuous course of conduct committed by defendants

8    and directed against the members of the class, the issues of law and fact which flow from that

9    wrongful activity clearly predominate over any individual issues.

10                    **2.      A Class Action Is Superior to Other Available Methods for
                               Resolving this Controversy**

11

12           Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other

13   available methods for the fair and efficient adjudication of the controversy."  Courts have recognized

14   that the class action device is superior to other available methods for the fair and efficient

15   adjudication of controversies involving a large number of purchasers of securities injured by

16   violations of the securities laws.  Class actions are a "particularly appropriate and desirable" way of

17   resolving securities fraud claims.  *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *accord*

18   *Freedman*, 922 F. Supp. at 400; *Emulex*, 210 F.R.D. at 721 ("Given the identical claims shared by

19   the members of the class, a class action is superior to individual litigation for adjudicating the

20   [securities fraud] controversy.").  Class certification is both useful and necessary and the class action

21   device offers judicial efficiencies because it permits common claims and issues to be tried only once,

22   with binding effect on all parties.  Class representation is the only way to afford relief to those whose

23   claims are too small to permit them to bring individual suits.  To deny class certification would be to

24   "clos[e] the door of justice to all small claimants.  This is what we think the class suit practice was to

25   prevent."  *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941).

26           To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for

27   the court to consider:

28           (A) [T]he interest of members of the class in individually controlling the prosecution
             ... of separate actions; (B) the extent and nature of any litigation concerning the

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ        - 15 -

1  controversy already commenced by ... members of the class; (C) the desirability ... of
2  concentrating the litigation of the claims in the particular forum; (D) the difficulties
   likely to be encountered in the management of a class action.

3  Fed. R. Civ. P. 23(b)(3).

4      Each of these factors is satisfied in this case.  The number of Class members is far too

5  numerous and the typical claim is too small for each individual Class member to maintain a separate

6  action.  The class action device is the only viable vehicle by which the vast majority of persons

7  injured by defendants' wrongful conduct may obtain a remedy.  As the Ninth Circuit stated in

8  *Epstein*, "it is difficult to imagine a case where class certification would be more appropriate.

9  Without it, thousands of identical complaints by former [ ] shareholders would have to be filed – the

10 very result the class action mechanism was designed to avoid."  50 F.3d at 668; *see also Freedman*,

11 922 F. Supp. at 400-01; *Weinberger v. Thornton*, 114 F.R.D. 599, 605 (S.D. Cal. 1986); *Unioil*, 107

12 F.R.D. at 622.  Further, the nationwide geographical dispersion of the Class members, based upon

13 Oracle's sale of the stock on a national exchange, makes it desirable that litigation of the claims

14 involved be concentrated in this forum.

15     Finally, plaintiffs can foresee no management difficulties which would preclude this action

16 from being maintained as a class action and are confident that any potential management problems

17 can be addressed and resolved by the parties or by this Court.  Certainly, possible management

18 problems are not, standing alone, grounds for denying this motion.  In *In re Sugar Indus. Antitrust*

19 *Litig.*, MDL Dkt. No. 201, 1976 U.S. Dist. LEXIS 14955 (N.D. Cal. May 21, 1976), the court stated:

20     [D]enial of class certification because of conjured manageability problems is
       disfavored among both the courts and the legal commentators because a court
21     refusing to certify a class action on the basis of vaguely perceived manageability
       obstacles is acting counter to the policy behind Rule 23 ....
22
23 *Id.* at *75; *accord Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972).

24     The Supreme Court has endorsed the superiority of the class action device for resolving

25 securities claims:

26     The aggregation of individual claims in the context of a classwide suit is an
       evolutionary response to the existence of injuries unremedied by the regulatory
27     action of government.  Where it is not economically feasible to obtain relief within
       the traditional framework of a multiplicity of small individual suits for damages,
       aggrieved persons may be without any effective redress unless they may employ the
28     class-action device.

1  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).  Here, too, judicial economy and the

2  best interests of the Class members favor class certification.  For the reasons enumerated above, the

3  proposed Class satisfies the requirements of Rule 23(b)(3).

4  **IV.      CONCLUSION**

5          For the foregoing reasons, plaintiffs request entry of an Order certifying this action as a class

6  action pursuant to Federal Rule of Civil Procedure 23.

7  DATED:  February 1, 2005                 LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
8                                           WILLIAM S. LERACH
                                           MARK SOLOMON
9                                           DOUGLAS R. BRITTON

10

11                                          _____/s/ Douglas R. Britton_____
                                              DOUGLAS R. BRITTON
12
                                           401 B Street, Suite 1600
13                                          San Diego, CA  92101
                                           Telephone:  619/231-1058
14                                          619/231-7423 (fax)

15                                          LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
16                                          SHAWN A. WILLIAMS
                                           WILLOW E. RADCLIFFE
17                                          ELI R. GREENSTEIN
                                           JENNIE LEE ANDERSON
18                                          MONIQUE C. WINKLER
                                           100 Pine Street, Suite 2600
19                                          San Francisco, CA  94111
                                           Telephone:  415/288-4545
20                                          415/288-4534 (fax)

21                                          Lead Counsel for Plaintiffs

22  T:\CasesSF\Oracle3\BRF00017931.doc

23

24

25

26

27

28

PLAINTIFFS' CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION - C-01-0988-MJJ          - 17 -

DECLARATION OF SERVICE BY FACSIMILE
PURSUANT TO NORTHERN DISTRICT LOCAL RULE 23-2(c)(2)

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.      That on February 1, 2005, declarant served by facsimile the **COURTROOM: HONORABLE MARTIN J.                           JENKINS** to the parties listed on the attached Service List and this document was forwarded to the following designated Internet site at:

http://securities.lerachlaw.com/

3.      That there is a regular communication by facsimile between the place of origin and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st day of February, 2005, at San Francisco, California.

                                          /s/ Marcy Medeiros
                                          MARCY MEDEIROS