1  MAYER, BROWN, ROWE & MAW LLP
   Donald M. Falk (SBN 150256)
2  Lee H. Rubin (SBN 141331)
   John C. Kloosterman (SBN 182625)
3  Shirish Gupta (SBN 205584)
   Two Palo Alto Square, Suite 300
4  Palo Alto, California 94306
   Telephone:     (650) 331-2000
5  Facsimile:     (650) 331-2060
   lrubin@mayerbrownrowe.com
6
   MAYER, BROWN, ROWE & MAW LLP
7  Alan N. Salpeter (admitted *pro hac vice*)
   Javier Rubinstein (admitted *pro hac vice*)
8  Vincent P. Schmeltz III (admitted *pro hac vice*)
   190 South LaSalle Street
9  Chicago, IL  60603-3441
   Telephone:     (312) 782-0600
10 Facsimile:     (312) 701-7711
   jrubinstein@mayerbrownrowe.com
11
   Attorneys for Defendant ORACLE CORPORATION
12
   ORACLE CORPORATION
13 Dorian Daley (SBN 129049)
   James C. Maroulis (SBN 208316)
14 500 Oracle Parkway
   Mailstop 5OP7
15 Redwood Shores, California 94065
   Telephone:     (650) 506-5200
16 Facsimile:     (650) 506-7114
   jim.maroulis@oracle.com
17
   Attorneys for Defendant ORACLE CORPORATION
18
                   UNITED STATES DISTRICT COURT
19
20     NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

21 | IN RE ORACLE CORPORATION | Case No. C-01-0988-MJJ |
   | SECURITIES LITIGATION | (Consolidated) |
22
23 NOTICE OF MOTION AND MOTION TO
   DISQUALIFY THE FIRM OF LERACH
   COUGHLIN STOIA GELLER RUDMAN &
24 ROBBINS LLP; DECLARATION OF
   JAVIER H. RUBINSTEIN;
25 DECLARATION OF CAROL LANGFORD.

26 **Judge Martin J. Jenkins**

27 Hearing Date:  March 22, 2005
   Hearing Time:  9:30 a.m.
28

**NOTICE AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** at 9:30 a.m. on Tuesday, March 22, 2005, in Courtroom 11 of the above-captioned Court, located at 450 Golden Gate Ave., San Francisco, California 94102, or as soon thereafter as counsel may be heard, Defendant Oracle Corporation ("Oracle") shall move the Court to disqualify the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

This Motion is made on the ground that Lerach Coughlin Stoia Geller Rudman & Robbins LLP has violated the California Code of Professional Responsibility and breached its duties of loyalty and confidentiality to Oracle by virtue of its concurrent representation of Oracle shareholders derivatively on behalf of Oracle Corporation before the Delaware courts, and of shareholders suing Oracle in the federal securities action pending before this Court.

This Motion is based upon this Notice and Motion, the Memorandum of Points and Authorities in support hereof and the Declarations of Javier H. Rubinstein and Carol M. Langford, all filed concurrently with this Motion, the entire file of this action, and upon such argument as the Court may allow at the hearing on this Motion.

Dated: February 14, 2005                    MAYER, BROWN ROWE & MAW LLP


By:____/s/ Lee H. Rubin_____
                              Lee H. Rubin
                    Attorneys for Defendant Oracle Corporation

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant Oracle Corporation seeks relief from a remarkable breach of professional duties: one of the lead attorneys purporting to act on Oracle's behalf in Delaware derivative litigation—a lawyer who has had full access to numerous confidential materials—has become a name partner in the law firm that is suing Oracle in this Court over the very same events, effectively switching sides in the same litigation while bringing his former law firm with him. This motion involves the two most fundamental ethical obligations demanded by the legal profession: the duties of loyalty and confidentiality. Those duties preclude an attorney, in the absence of informed and written consent, from acting on behalf of a party in one action while proceeding against it in another— especially in a substantially related action. This ethical bar extends to the attorney's entire law firm under California law, and is routinely and properly enforced through the remedy of disqualification.

Samuel H. Rudman serves as Plaintiffs' Delaware Liaison Counsel in a derivative suit brought on behalf of, and for the benefit of, Oracle in the Delaware Court of Chancery. Oracle recently discovered that Mr. Rudman has merged his law firm with Lerach Coughlin Stoia and Robbins LLP, counsel for the plaintiffs proceeding *against* Oracle in this federal securities action. The newly merged firm, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, is therefore concurrently acting *on behalf of* Oracle in the Delaware derivative action (now on appeal to the Delaware Supreme Court), while at the same time representing plaintiffs who are *suing* Oracle in this Court over the same events.

California's Code of Professional Responsibility squarely prohibits simultaneous representation of adverse parties. Courts in California and around the country have also made clear that the very conflict of interest presented here is grounds for *per se* disqualification, and thus absolutely precludes Lerach Coughlin from continuing to represent the plaintiffs in this action.

Lerach Coughlin claims that neither it nor Mr. Rudman continues to participate in the Delaware action. But that is not true as a matter of law. Neither Mr. Rudman nor his post-merger law firm has ever filed a motion to withdraw in the Chancery Court, as Delaware law requires, and

1   the Delaware court never has excused either Mr. Rudman or his law firm from his role as

2   Plaintiffs' Delaware Liaison Counsel in that litigation.   Whatever Mr. Rudman's current

3   involvement in the Delaware action, he and his law firm owe continuing duties of loyalty and

4   confidentiality to Oracle, duties that they plainly continue to violate through their ongoing

5   representation of parties adverse to Oracle in this substantially related securities action.

6   Even if Oracle could be viewed as a former rather than a current client of Mr. Rudman and

7   Lerach Coughlin, the result under California law would be the same. California law prohibits

8   successive representation of parties with adverse interests in substantially related litigation; a

9   violation disqualifies a lawyer's entire firm.  Where the actions are substantially related there is a

10   presumption that confidential information has been shared.  In this case, the presumption is

11   unnecessary: Mr. Rudman (1) *actively* participated in confidential settlement negotiations, (2) had

12   access to many volumes of confidential Oracle documents, including the Report of Oracle's

13   Special Litigation Committee, that were filed under seal with the Delaware Chancery Court and

14   remain sealed, and (3) had access to the work product of the other attorneys acting on behalf of

15   Oracle.  Mr. Rudman has no business playing both sides of the street here. In short, Lerach

16   Coughlin must be disqualified as a matter of California law regardless of whether the conflict here

17   arises from a concurrent or former representation of Oracle.

18   Lerach Coughlin cannot cure its breaches of loyalty and confidentiality to Oracle by

19   erecting an ethical screen.  California law rarely if ever permits lawyers to use screens to paper

20   over ethical breaches of this magnitude, particularly where counsel was substantially involved in

21   related litigation and the conflict arises from a law-firm merger.  In any event, Lerach Coughlin

22   apparently made no effort to erect a screen when Mr. Rudman joined the firm.

23   Oracle brings this motion to remedy the obvious conflict of interest created by the

24   continued representation of Plaintiffs in this action against Oracle by the same law firm acting on

25   behalf of Oracle in a nearly identical action.  Oracle respectfully requests that the Court enforce

26   California's per se rule of disqualification for adverse concurrent or successive representation in

27   substantially related actions and disqualify Lerach Coughlin Stoia Geller Rudman & Robbins from

28   further participation in this litigation.

**STATEMENT OF FACTS**

This action against Oracle and three of its officers and directors (collectively, "Defendants") alleges violations of the federal securities laws.  Plaintiffs purport to represent a class of persons who traded Oracle securities between December 14, 2000 and March 1, 2001.  Their complaint alleges that Defendants withheld material information and made false and misleading statements concerning Oracle's financial results for its second and third quarters of fiscal year 2001 (2Q01 and 3Q01, respectively).  Plaintiffs specifically allege that two of the individual defendants sold Oracle stock while possessing material non-public information.  Among other relief, Plaintiffs seek to recover money damages from Oracle.

Shortly after this action was filed in 2001, the Milberg Weiss firm (a predecessor of the Lerach Coughlin firm) commenced nearly identical state court derivative actions *on behalf of* Oracle Corporation in the Chancery Court of Delaware and in California Superior Court, *see* Rubinstein Decl., Exhs. A and B, alleging common-law insider trading and violation of state insider trading laws during Oracle's 3Q01 (the same time period at issue in this suit); both actions sought disgorgement to Oracle of any profits made by Oracle's insiders.  Indeed, Milberg Weiss filed its Delaware derivative complaint — as co-counsel with Cauley, Geller, Bowman & Coates, Samuel Rudman's old firm — only three days after filing the first complaint in the present action**.** Rubinstein Decl., Exh. A.  The derivative actions arise from the same set of facts alleged in this securities action.  Additional derivative actions were filed in both state courts and in this Court by other counsel.[1]

Thus, Milberg Weiss simultaneously represented the plaintiffs in this securities action *against* Oracle, and shareholders purporting to act *on behalf of* Oracle in the derivative actions. Milberg Weiss did not appear on the first amended version of the Delaware complaint. After a rival

---

[1]  On December 2, 2004, the Delaware Chancery Court granted summary judgment in favor of defendants Lawrence J. Ellison and Jeffrey O. Henley, concluding that no reasonable trier of fact could find that  Ellison or Henley possessed material, non-public information that Oracle would not meet the market estimates it provided to the public for its license revenue and earnings per share for 3Q01.  *See* Opinion of December 2, 2004 (as revised) in the matter of *In re Oracle Corp. Derivative Litig.*, Del. Ch., Consolidated C.A. No. 18751, Rubinstein Decl., Exh. C.  The case currently is on appeal to the Delaware Supreme Court.

1  for the lead counsel position in this case challenged the suitability of the Milberg Weiss firm based

2  on the conflict of interest posed by Milberg's dual representation (the same representation that now

3  gives rise to this Motion), *see* Rubinstein Decl., Exh. D, and Oracle stated its agreement with this

4  position, *see* Rubinstein Decl., Exh. E, Milberg Weiss promptly withdrew from the California and

5  Delaware derivative actions.  *See* Notice of Withdrawal of Counsel, *Alan Pierce, Derivatively on*

6  *Behalf of Oracle Corporation v. Lawrence J. Ellison, et al*., Case No. 416147, Superior Court of

7  the State of California, County of San Mateo; Rubinstein Decl., Exh. F.

8       When the parties later agreed to coordinate the Delaware and California state-court

9  derivative actions, specific counsel were selected to serve as Liaison Counsel between the lawyers

10  for plaintiffs acting derivatively on behalf of Oracle in each of the cases.  Samuel Rudman, then a

11  member of Cauley, Geller, Bowman & Rudman LLP ("Cauley, Geller"), was selected as one of

12  two "Plaintiffs' Delaware Liaison Counsel."  *See In re Oracle Corp. Derivative Litig.*, Del. Ch.,

13  Consolidated C.A. 18751, Case Management Order; Rubinstein Decl., Exhs. G and H, and *Syed*

14  *Akhter, et al. v. Michael J. Boskin, et al*, Case No. 417511, Cal. Super. Ct., San Mateo County;

15  Rubinstein Decl., Exh. I.  Mr. Rudman was admitted *pro hac vice* in the Delaware Court.  *See*

16  Notice of Motion, Motion and Order for the admission of Samuel Rudman, Esq. to be admitted *pro*

17  *hac vice* in the matter of *In re Oracle Corp. Derivative Litig.*, Del Ch., Consolidated C.A. No.

18  18751; Rubinstein Decl., Exh. J.  To this day, neither Mr. Rudman nor his law firm has ever moved

19  to withdraw as counsel in the Delaware derivative litigation.  Nor has the Delaware court ever

20  permitted such a withdrawal. *See In re Oracle Corp. Derivative Litig.*, Del. Ch., Consolidated C.A.

21  18751, Del. Ch. Docket, February 4, 2005; Rubinstein Decl., Exh. K.  Mr. Rudman and his law

22  firm thus remain Plaintiffs' Delaware Liaison Counsel.

23       In his role as Plaintiffs' Delaware Liaison Counsel, Mr. Rudman has participated actively in

24  the Delaware derivative litigation.  In fact, Mr. Rudman was principally responsible for negotiating

25  discovery disputes in that litigation, for negotiating the coordination of the California and Delaware

26  derivative actions, and for arguing matters to the Delaware court on behalf of the plaintiffs.  In his

27  role in Delaware, Mr. Rudman reviewed a vast amount of confidential Oracle information.

28  Rubinstein Decl. ¶¶ 3-7, Exhs. L and M.  For example, Mr. Rudman had access to the confidential

1  Report of the Special Litigation Committee of the Oracle Board of Directors which investigated the

2  allegations made in the derivative actions.  That Report and its multiple volumes of interviews and

3  other exhibits was filed under seal with the Chancery Court and *remains* sealed to this day.

4  Rubinstein Decl. ¶ 4, Exh. M.  Indeed, Mr. Rudman appeared for the Delaware plaintiffs in their

5  challenge to the adequacy of that Report, a challenge that reflected their access to the Report's

6  contents.  *In re Oracle Derivative Litig.*, 824 A.2d 917, 928-29 (Del. Ch. 2003) (noting plaintiffs'

7  access to confidential materials used in the report and their challenge to the reasonableness of the

8  report's conclusions); Rubinstein Decl., Exh. S.  In addition, Mr. Rudman certainly had access to

9  the confidential work product of the other attorneys acting derivatively on behalf of Oracle in the

10  litigation.

11  　　　At some point, Mr. Rudman apparently left the Cauley, Geller firm to form a new firm,

12  Geller Rudman, PLLC.  Then, without any notice to Oracle, and certainly without Oracle's

13  consent, effective August 1, 2004, Mr. Rudman merged his firm (Geller Rudman) with Plaintiffs'

14  counsel in this action, Lerach Coughlin Stoia & Robbins, LLP, to form the firm that now represents

15  Plaintiffs before this Court — Lerach Coughlin Stoia Geller Rudman & Robbins LLP. *See*

16  http://www.lerachlaw.com; Rubinstein Decl., Exh. N.  That merger brought to full fruition the brief

17  collaboration between the two firms' predecessors in filing the original derivative complaint in

18  Delaware only three days after Milberg Weiss filed this action.

19  　　　Upon learning that Mr. Rudman had joined the Lerach Coughlin firm, Oracle sent a letter to

20  that firm informing it of the conflict of interest created by the merger. Rubinstein Decl., Exh. O.

21  Lerach Coughlin responded by denying the existence of any conflict.  Rubinstein Decl., Exh. P.

22  Lerach Couglin did not, however, claim that the firm had even attempted to erect an ethical wall

23  that might safeguard confidential information that Mr. Rudman and his colleagues obtained in  the

24  derivative action.  *Id.*

25  　　　To confirm that the foregoing facts and circumstances give rise to a disqualifiable conflict

26  of interest, Oracle consulted a leading California ethics expert, Professor Carol M. Langford,

27  former Chair of the State Bar Committee on Professional Responsibility and Conduct and acting

28  Adjunct Professor of Law in Ethics at the University of California, Hastings College of the Law

and the University of San Francisco School of Law.   Professor Langford's accompanying Declaration explains that Lerach Coughlin has indeed violated the California Code of Professional Responsibility.

Left with no alternative, Oracle promptly brought this Motion to Disqualify.

## ARGUMENT

The merger of Plaintiffs' Delaware Liaison Counsel in the Delaware derivative litigation with Plaintiffs' counsel in this litigation has produced disturbing breaches of the duties of loyalty and confidentiality, and given rise to the clearest possible conflict of interest.   Attorneys appearing before this court must "comply with the standards of professional conduct required by the members of the State Bar of California," Civ. L. R. 11-4(a)(1), and, accordingly, California law is applied in a motion to disqualify on ethical grounds.   *See Concat LP v. Unilever, PLC*, 2004 WL 2913636, at *15 (N.D. Cal. Sept. 7, 2004).   Three fundamental principles of California law apply:

*First*, attorneys have a duty to maintain undivided loyalty to their clients, and thus may not concurrently act on behalf of parties with interests adverse to one another. Cal. Rules of Professional Conduct, Rule 3-310(C)(3);[2]

*Second*, attorneys have a duty to maintain complete confidentiality, which prohibits attorneys from successively representing parties with adverse interests in actions that are substantially related.   Cal. Rules of Professional Conduct, Rule 3-310(E);[3]

*Third*, an ethical screen will not cure *either* adverse concurrent *or* successive representation, and thus will not prevent the vicarious disqualification of the conflicted law firm. *See Concat*, 2004 WL 2913636, at *20 (Illston, J.); *see also Henriksen v. Great American Sav. & Loan*, 11 Cal. App. 4th 109, 115-17 (1992).

---

[2]   California Rule of Professional Conduct 3-310(C)(3) provides:   "A member shall not, without the informed written consent of each client:  * * * (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

[3]   California Rule of Professional Conduct 3-310(E) provides:   "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

These principles lead to one conclusion:  the Court should exercise its inherent authority to remedy ethical breaches by disqualifying Lerach Coughlin Stoia Geller Rudman & Robbins from any further participation against Oracle in this action.

## I.   LERACH COUGHLIN IS SUBJECT TO *PER SE* DISQUALIFICATION FOR CONCURRENT REPRESENTATION OF THE SECURITIES PLAINTIFFS *AGAINST* ORACLE AND THE DELAWARE DERIVATIVE PLAINTIFFS WHO ACT *FOR* ORACLE.

When a law firm concurrently represents two clients adverse to one another, even on unrelated matters, it is presumed that the duty of loyalty has been breached and counsel is automatically subject to disqualification.  *Concat*, 2004 WL 2913636, at *20.  "[I]ndeed, in all but a few instances, the rule of disqualification * * * is a *per se* or automatic one."  *Flatt v. Superior Court*, 9 Cal. 4th 275, 284 (1994).[4]  This rule is a corollary to California Rule of Professional Conduct 3-310(C)(3), which forbids an attorney to "[r]epresent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."  *Id.*  Invoking the biblical injunction against "serving two masters," *Flatt*, 9 Cal. 4th at 286, the California Supreme Court has reaffirmed that simultaneous adverse representations are prohibited, and that an attorney's disqualification for concurrent adverse representation extends to the attorney's entire firm.  *See People ex rel. Dept. of Corp. v. Speedee Oil Change Sys. Inc.*, 20 Cal. 4th 1135, 1139 (1999) (*citing Flatt*, 9 Cal. 4th at 283).

### A.   Mr. Rudman Acted on Behalf of Oracle in the Delaware Derivative Action.

It is well-established that counsel for the plaintiff in a derivative action represents the interests of the *corporation*, not its shareholders, and thus owes its fiduciary obligations to the corporation.  "The wrong" being litigated "is one that was done to the corporation. Any relief

---

[4] As it does in several areas relating to the professional responsibility of lawyers, California takes a more stringent view of concurrent representation and the result for attorneys who violate the rule than jurisdictions applying the Model Code of Professional Responsibility.  Model Code Disciplinary Rule 5-105 also prohibits concurrent adverse representation but, unlike California, it does not mandate *per se* disqualification. *See Picker Int'l v. Varian Assoc., Inc.*, 869 F.2d 578, 581 (Fed. Cir. 1989).

7

1   which may be afforded is in its behalf and inures to its benefit." *Ainscow v. Sanitary Co. of*

2   *America*, 180 A. 614, 615 (Del. Ch. 1935).  Because the cause of action belongs to the *corporation*,

3   not the shareholders, counsel for plaintiffs in a derivative suit is representing the corporation alone.

4   Because "the recovery, if any, must go to the corporation" (*Tooley v. Donaldson, Lufkin &*

5   *Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004)), "[t]he complainant as a stockholder is interested

6   in the alleged wrong and in the relief only in an indirect and derivative sense" (*Ainscow*, 180 A. at

7   615); the corporation, not the shareholder-plaintiff, benefits from counsel's efforts.  *See also*

8   *MAXXAM, Incorporated/Federated Development Shareholders Litigation*, 698 A.2d 949, 956

9   (Del.Ch. 1996) ("Because the corporation is always the real party in interest, the identity of the

10  specific representative shareholder plaintiff is not a paramount concern") (citations omitted).

11       California law recognizes that "the corporation is 'the *real* plaintiff'" in a derivative action.

12  *McDermott, Will & Emery v. Super. Ct.*, 83 Cal. App. 4th 378, 382 (2000) (quoting *Jones v.*

13  *Ahmanson & Co.*, 1 Cal. 3d 93, 107 (1969)) (emphasis added).  Because the plaintiff-shareholders

14  "derive no benefit" from their counsel's actions "except the indirect benefit resulting from a

15  realization upon the corporations' assets," *id.*, the corporation is the true client represented by the

16  shareholders' counsel.  Indeed, the derivative action itself rests on the premise that shareholder-

17  plaintiffs may in some circumstances represent the corporation in making certain claims.

18       Thus, by acting as counsel for derivative plaintiffs suing on behalf of Oracle in Delaware,

19  Mr. Rudman represents Oracle's interests in that litigation.  Affidavit of Carol M. Langford ¶ 7.

20       **B.    Mr. Rudman Improperly Switched Sides By Joining Lerach Coughlin,**
            **Which Represents Plaintiffs Who Are Suing Oracle.**
21

22       Mr. Rudman's responsibilities as counsel on behalf of Oracle in Delaware preclude him and

23  his law firm from acting adversely to Oracle here.  Affidavit of Carol M. Langford ¶¶ 8 and 9.  As

24  the California Supreme Court explained in *Speedee*, 20 Cal. 4th at 1147:

25           The most egregious conflict of interest is representation of clients whose interests
             are directly adverse in the same litigation.  Such patently improper dual
26           representation suggests to the clients — and to the public at large — that the
             attorney is completely indifferent to the duty of loyalty and the duty to preserve
27           confidences.  However, the attorney's actual intention and motives are immaterial,
             and the rule of automatic disqualification applies.
28

1   Following these principles, courts have repeatedly ordered disqualification under *precisely*

2 these circumstances, even in jurisdictions with less stringent rules than California's.  Counsel

3 cannot ethically act *on behalf of* a corporation in a shareholders derivative action while at the same

4 time or subsequently representing shareholders *suing* the corporation in a related securities action.

5 The conflict is obvious: with one hand the lawyer seeks to fill the corporation's treasury with a

6 recovery from its insiders, while with the other hand the same lawyer seeks to drain the corporate

7 treasury by holding the corporation responsible for the same events.

8   The Ninth Circuit is in the mainstream that recognizes the fundamental conflict posed by

9 such dueling representations.  In a case involving Lerach Coughlin's predecessor (but not squarely

10 presenting the conflict issue on appeal), the court of appeals documented its "concern[] about the

11 potential conflicts created by * * * Milberg, Weiss's dual representation of derivative and

12 securities plaintiffs." *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  And a

13 court in this district presiding over litigation much like this recognized the "inherent conflict

14 between the interests supposedly protected by the class action and those benefited by the derivative

15 action.  Beneficiaries of the former are persons who bought Oracle stock or call options during the

16 Class Period, while beneficiaries of the latter are the current shareholders of Oracle."  *In re Oracle*

17 *Securities Litigation*, 829 F. Supp. 1176, 1183 (N.D. Cal. 1993).  Viewed in this light, the handful

18 of decisions that assign this conflict the epithet "surface duality" (*e.g.*, *Bertozzi v. King Louie Int'l,*

19 *Inc.*, 420 F. Supp. 1166, 1180 (D. R.I. 1976) (citing *Heilbrunn v. Hanover Equities Corp.*, 259 F.

20 Supp. 936 (S.D.N.Y. 1966)) clash both with the legal premise of the derivative action itself and

21 with the practical truth that a successful derivative action results in payment to the corporation —

22 not to individual shareholder-plaintiffs — while securities class actions seek payment *by* the

23 corporation to whatever small subset of former and current shareholders may have traded during

24 the class period.

25   By contrast, the courts that have examined the situation in detail have recognized the

26 "impermissible conflict of interest" posed by "[p]rosecution of both a derivative and class action"

27 on the same subject matter.  *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986).  *See*

28 *also Ryan v. Aetna Life Insur. Co.*, 765 F. Supp. 133, 136-37 (S.D.N.Y. 1991) (plaintiff "subject to

a conflict of interest in pursuing both direct and derivative claims in this action, which renders him unable fairly and adequately to represent the class.") (internal quotations and brackets omitted).  As the court observed in *Stull v. Baker*, 410 F. Supp. 1326, 336-37 (S.D.N.Y. 1976):

> it is difficult to understand how an attorney can properly represent the interests of a corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in a class action against the corporation, without compromising his independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests.

*See also Ruggiero v. American BioCulture, Inc.*, 56 F.R.D. 93, 95-96 (S.D.N.Y. 1972) (after an extended exploration of the conflict, holding that derivative plaintiffs could not fairly and adequately represent the class, nor could counsel for the derivative action "for the benefit of BioCulture" also act as counsel for the class of plaintiffs suing BioCulture under Rule 10(b)-5).

In particular, counsel who derivatively represents a corporation and then turns around to sue the same corporation unquestionably breaches his or her duty of loyalty to the corporation:

> If both are successful, one action would result in a recovery for the corporation; the other would result in a detriment to the corporation.  It is difficult to see how counsel could retain his independence of professional judgment and loyalty to his clients and their interests in both suits.

*Hawk Industries v.* Bausch *& Lomb, Inc.,* 59 F.R.D. 619, 624 (S.D.N.Y. 1973) (disqualifying derivative counsel *on behalf of* Bausch & Lomb from acting as counsel for the class *suing* Bausch & Lomb).

These decisions confirm that the rules of ethics forbid the same counsel to act on behalf of a corporation in a derivative suit and then (simultaneously or successively) represent parties suing the corporation in a related securities suit.  That is exactly what Lerach Coughlin lawyers are undertaking here—diametrically opposed representation of diametrically opposed clients.

**C.      The Lerach Coughlin Conflict Is Continuing And Remains Subject To *Per Se* Disqualification.**

Lerach Coughlin has contended that, when Mr. Rudman joined Lerach Coughlin Stoia Geller Rudman & Robbins, "he immediately ceased representing the plaintiffs in the derivative case."  Letter from Williams to Rubinstein of 2/1/2005, at 1; Rubinstein Decl. at ¶ 9 and Exh. P. That argument is wrong both factually and legally, and moreover has no legal significance because

10

1   of the incurable conflict the dual representation already caused. Under Delaware law, if Mr.

2   Rudman wished to withdraw as Plaintiffs' Delaware Liaison Counsel, he had an affirmative

3   obligation to give notice of that intent to Oracle, and to file a formal motion seeking to withdraw

4   from the derivative action. *See*, *e.g., Picker Int'l Inc., v. Varian Assoc.*, 869 F.2d 578, 582 (Fed.

5   Cir. 1989) (affirming the district court's disqualification of Jones, Day, Reavis & Pogue after

6   merging with another firm and holding, in part, that withdrawal of law firm from representation

7   was incomplete, where law firm did not seek or obtain withdrawal from the court, as required by

8   the Local Rules for the Northern District of California).

9        The withdrawal also would not be effective unless and until it was permitted by the Court.

10   *See* Del. Ch. Ct. R. 5(aa) ("No appearance shall be withdrawn except on written motion and order

11   of the Court").  No such permission has ever been sought, much less granted. To this day, Oracle

12   has never received any notice from Mr. Rudman or his firm that he had any intention of

13   withdrawing from the Delaware case; nor has he or his firm ever filed a motion seeking to

14   withdraw from that case.  The Chancery Court docket likewise reflects no such motion or order.

15   Accordingly, under Delaware law, Mr. Rudman remains Plaintiffs' Delaware Liaison Counsel in

16   that litigation on behalf of Oracle.  *See In re Oracle Corp. Derivative Litig.*, Del. Ch., Civ. Action

17   18751, Del. Ch. Docket, February 4, 2005; Rubinstein Decl., Exh. K; *see also Picker*, 869 F.2d at

18   578.

19        As a matter of law, in any event, Lerach Coughlin cannot cure its earlier failure to withdraw

20   by belatedly seeking an order from the Delaware Chancery Court removing the firm as Plaintiffs'

21   Delaware Liaison Counsel.  "[A] law firm that knowingly undertakes adverse concurrent repre-

22   sentation may *not* avoid disqualification by withdrawing from the representation of the less-favored

23   client before [the disqualification] hearing." *Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6

24   Cal. App. 4th 1050, 1057 (1992) (emphasis added); *see also Picker*, 869 F.2d at 583 ("To allow the

25   merged firm to pick and choose which clients will survive the merger would violate the duty of

26   undivided loyalty that the firms owe each of their clients").

27        This is not, as a court or two has suggested, a mere "potential conflict" that need not be

28   remedied unless and until both sets of plaintiffs win and the court is ready to determine how much

11

the corporation should pay itself. *In re Dayco Corporation Derivative Sec. Litig.*, 102 F.R.D. 624, 631 (S.D. Ohio 1984). Professional standards simply do not permit any law firm to seek to fill Oracle's pockets with one hand while trying to pick them with the other. As a matter of law, the Lerach Coughlin firm represents Oracle derivatively in Delaware while it is suing Oracle over the same events here. That dual representation produces a disqualifiable conflict of interest. Affidavit of Carol M. Langford ¶¶ 5, 8, 9, 11, and 12. Under settled California law, Lerach Coughlin is subject to *per se* disqualification.[5]

## II. LERACH COUGHLIN ALSO IS SUBJECT TO DISQUALIFICATION FOR SUCCESSIVELY REPRESENTING CONFLICTING INTERESTS IN SUBSTANTIALLY RELATED CASES.

Even if Lerach Coughlin were correct that Mr. Rudman silently yet effectively ceased to represent Oracle once his firm merged with counsel for Plaintiffs here, he and his law firm still must be disqualified based on their successive adverse representation because this securities litigation is substantially related to the Delaware derivative action in which Mr. Rudman represented Oracle's interests. *See* California Rule of Professional Conduct 3-310(E); Affidavit of Carol Langford at ¶¶ 10-14. If Oracle is a former client, then Rule 3-310(E) applies, and prohibits (in the absence of written consent) "employment adverse to the * * * former client where, by reason of the representation of the * * * former client, the member has obtained confidential information material to the employment." *See Flatt*, 9 Cal. 4th at 284.

Just as in the case of simultaneous representation, California law clearly prohibits successive representation of parties with adverse interests in substantially related litigation. *See, e.g., Henriksen v. Great American Sav. & Loan*, 11 Cal. App. 4th 109, 114 (1992). Where the actions are substantially related, there is a *conclusive presumption* that the attorney knows

---

[5] In the absence of written consent, there is no cure for a breach of the duty of loyalty, including an ethical screen. As discussed below, under California law an ethical screen provides inadequate safeguards even for *successive* representations and certainly falls short for *concurrent* representations. The absence of written consent here make irrelevant decisions, decided under seemingly more forgiving standards of professional responsibility, that have permitted derivative plaintiffs' counsel to remain in place after withdrawing from representation (1) in an employment action adverse to the corporation, *Dayco*, 102 F.R.D. at 626-27, 631, or (2) of securities class action *plaintiffs* against the represented corporation, *Dollens v. Zionts*, 2001 WL 1543524, at *3 (N.D. Ill. Dec. 4, 2001) — in each case without objection from the former client.

confidential information, *e.g.*, *Brand v. 20th Century Ins. Co./21st Century Ins. Co.*, 124 Cal. App. 4th 594, 603-607 (2004); that knowledge is imputed to (and thus disqualifies) a lawyer's entire firm. *See Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980); *see also Henriksen*, 11 Cal. App. 4th at 117 ("[W]here an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law"); *Speedee*, 20 Cal. 4th at 1146 ("[A] presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm"). This "conclusive presumption" is necessary, in large part, to avoid an inquiry into the details of successive representation that otherwise might reveal the very confidential information that Rule 3-310(E) seeks to protect. *H.F. Ahmanson Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1453 (1991) ("it is not within the power of the former client to prove what is in the mind of the attorney"); *see also, e.g., Trone*, 621 F.2d at 999 ("The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect").

In determining whether cases are "substantially related," courts focus on the practical consequences of the attorney's representation and, in particular, consider: (1) factual similarities between the two representations; (2) similarities of legal issues; and (3) the nature and extent of the attorney's involvement with the case and whether he is in a position to learn of the client's policy or strategy. *H.F. Ahmanson Co.,* 229 Cal. App. 3d at 1455. All three *Ahmanson* factors easily are satisfied here. The Delaware derivative action and this federal securities action involve the same facts and nearly identical legal issues — that is, whether Oracle insiders knew (and sold Oracle stock based on) material, non-public information regarding Oracle's financial performance in 3Q01. Moreover, Mr. Rudman is lead Plaintiffs' Delaware Liaison Counsel and has actively participated in all aspects of the Delaware derivative litigation, obtained confidential Oracle documents that remain under seal in the Chancery Court, and had open access to the work product of the other counsel who continue to serve as derivative counsel. Under these facts, not only does the legal presumption that confidential information has been shared operate with full force,

1   Affidavit of Carol Langford at ¶ 11, but it is clear that Mr. Rudman *actually* possesses confidential

2   information.

3   Finally, as explained above (at pp. 9-11), there is no doubt that Mr. Rudman's

4   representation on behalf of Oracle in the derivative suit is adverse to the representation of a class of

5   plaintiffs seeking to recover damages from Oracle, and thus presents a conflict of interest. Lerach

6   Coughlin is subject to *per se* disqualification under California law, regardless of whether it is

7   current or former counsel in the Delaware derivative litigation.

8   **III.    CALIFORNIA'S RULE OF *PER SE* DISQUALIFICATION PRECLUDES LERACH
        COUGHLIN FROM USING AN  ETHICAL SCREEN TO FORESTALL
9       DISQUALIFICATION HERE.**

10   Lerach Coughlin cannot avoid disqualification by setting up an ethical screen.  As the

11   California Court of Appeal has put it, "there is simply no gray area; * * * the entire firm must be

12   vicariously disqualified even if [the attorney] has been ethically screened from day one."

13   *Henriksen*, 11 Cal. App. 4th at 116.

14   The Northern District of California recently reaffirmed the well-established principle that in

15   instances of *simultaneous* representation, an ethical wall will not prevent the vicarious

16   disqualification of a firm that has breached its duty of loyalty to its client.  *See Concat*, 2004 WL

17   2913636, at 22.  As Judge Illston explained,

18   > [A]n ethical wall * * * cannot, in the absence of an informed waiver, *cure a law
   > firm's breach of its duty of loyalty* to its client.  Screening measures like those
19   > instituted by [the law firm in question] do nothing to mitigate conflict arising from
   > [simultaneous] adverse client relationships, since the purpose of the prohibition
20   > against such relationships is to preserve the attorney's duty of loyalty, not
   > confidentiality, to his client.  Since the duty of loyalty is paramount, the prohibition
21   > applies *even where there is no misuse of confidential information or other evident
   > adverse effect*.
22
23   *Id.* (*citing Flatt*, 9 Cal. 4th at 284-85) (emphasis added).

24   Ethical screens are equally inadequate under California law in cases of *successive*

25   representation in substantially related litigation. That is particularly so where, as here, the attorney

26   involved participated extensively in the former case, and where the conflict itself was created by a

27   merger of entire firms.  In those clear cases, "[n]o amount of assurances or screening procedures,

28   no 'cone of silence' could ever convince the opposing party that the confidences would not be used

14

1    to its disadvantage." *Cho v. Superior Court*, 39 Cal. App. 4th 113, 125 (1995); Affidavit of Carol

2    Langford at ¶¶ 13 and 14.

3        An ethical screen also would ineffective because Mr. Rudman possesses confidential

4    information that he acquired in the course of his derivative representation of Oracle. In California,

5    "where [a private] attorney is disqualified because he formerly represented and therefore *possesses*

6    *confidential information* regarding the adverse party in the current litigation, vicarious

7    disqualification of the entire [private] firm is compelled as a matter of law." *Henriksen*, 11 Cal.

8    App. 4th at 117 (emphasis added). This rule is based on the near-impossibility that a private law

9    firm could create an effective ethical wall around an attorney who has been exposed to confidential

10   information. *See e.g., Speedee*, 20 Cal. 4th at 1153 ("The vicarious disqualification rule recognizes

11   the everyday reality that attorneys, working together and practicing law in a professional

12   association, share each other's, and the clients' confidential information").

13       California courts have accepted the use of ethical screens only in a few, strictly limited

14   circumstances, such as where a lawyer joins a public city attorney's office, or had limited or no

15   involvement with a former client. But *no* California court — or federal court applying California

16   law — has allowed a private firm to use an ethical wall to escape disqualification in a case

17   involving breaches as broad as those here. *See, e.g., City of Santa Barbara v. Superior Court*, 122

18   Cal. App. 4th 17, 24 (2004) (allowing ethical screen where lawyer moved to city attorney's office,

19   but noting that, "[w]ere we concerned with a private law firm, the answer would be clear: [the

20   lawyer's] disqualification would be mandatory and would extend to her entire firm").[6] Under these

21   circumstances, where "a nongovernmental attorney *armed with confidential information*"

22

23

24       [6] In 2003, Oracle learned that Howard K. Coates, Jr., formerly of the Cauley, Geller firm,
     moved to Milberg Weiss Bershad Hynes & Lerach LLP which, at that time, before Milberg and

25   Lerach split into separate firms, was representing the class of plaintiffs in this action. Rubinstein
     Decl. at ¶ 8 and Exh. Q. Because Mr. Coates had virtually no involvement in the Delaware action,

26   and after plaintiffs' written confirmation that he had received no confidential Oracle information,
     *see* Rubinstein Decl. at ¶ 8 and Exh. R, Oracle declined to seek disqualification. That situation,

27   however, stands in marked contrast to the current conflict of interest given Mr. Rudman's extensive
     involvement in the Delaware derivative litigation and the fact that the conflict here arose from a

28   law firm merger.

effectively "switches sides during the pendency of litigation," his firm is automatically and vicariously disqualified. *Henriksen*, 11 Cal. App. 4th at 115-16.

## IV.   PLAINTIFFS WILL SUFFER NO LEGALLY COGNIZABLE PREJUDICE FROM THE DISQUALIFICATION.

Plaintiffs will suffer no legally cognizable prejudice if Lerach Coughlin is disqualified. Every disqualification order causes the present client the usual inconvenience inherent in any change of counsel.   But where adverse concurrent or successive representation exists in a substantially related action, disqualification is nevertheless required. *See, e.g., Henriksen*, 11 Cal. App. 4th at 117.

Here, the inconvenience to plaintiffs will be relatively minor. The discovery process is still in the phase of initial document production. The Case Management Conference took place only two months ago.  No depositions have been taken, and the parties still are in the process of arriving at appropriate limitations on discovery.

Thus, there is no legally cognizable prejudice to plaintiffs from the disqualification of Lerach Coughlin at this early stage of the litigation.  Motions to disqualify always will pit "the clients' right to counsel of their choice" against "the need to maintain ethical standards of professional responsibility." *Speedee Oil Change Sys*, 20 Cal. 4th at 1145.  As the California Supreme Court observed, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Id.*  When the ethical conflict is grave and incurable, the client's "choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.*  This is one of those cases.

16

1

**CONCLUSION**

2        For the reasons set forth above, Defendant respectfully request that this Court order the

3   disqualification of Lerach Coughlin Stoia Geller Rudman & Robbins LLP from any further

4   participation in this litigation.

5

6   Dated:        February 14, 2005            MAYER, BROWN ROWE & MAW LLP

7

8                                             By:____/s/ Lee H. Rubin_____
                                                        Lee H. Rubin
9                                             Attorneys for Defendant Oracle Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3

INTRODUCTION ................................................................................................... 1

4

STATEMENT OF FACTS ...................................................................................... 3

5

ARGUMENT .......................................................................................................... 6

6

7

    I.      LERACH COUGHLIN IS SUBJECT TO *PER SE* DISQUALIFICATION
          FOR CONCURRENT REPRESENTATION OF THE SECURITIES

8

          PLAINTIFFS *AGAINST* ORACLE AND THE DELAWARE DERIVATIVE
          PLAINTIFFS WHO ACT *FOR* ORACLE ........................................................... 7

9

          A.    Mr. Rudman Acted on Behalf of Oracle in the Delaware

10

                 Derivative Action. ..................................................................... 8

11

          B.    Mr. Rudman Improperly Switched Sides By Joining Lerach
                 Coughlin, Which Represents Plaintiffs Who Are Suing Oracle. .............. 9

12

          C.    The Lerach Coughlin Conflict Is Continuing And Remains Subject

13

                 To *Per Se* Disqualification. ....................................................... 11

14

    II.     LERACH COUGHLIN ALSO IS SUBJECT TO DISQUALIFICATION
          FOR SUCCESSIVELY REPRESENTING CONFLICTING INTERESTS

15

          IN SUBSTANTIALLY RELATED CASES ....................................................... 12

16

    III.    CALIFORNIA'S RULE OF *PER SE* DISQUALIFICATION PRECLUDES
          LERACH COUGHLIN FROM USING AN ETHICAL SCREEN TO

17

          FORESTALL DISQUALIFICATION HERE ...................................................... 14

18

    IV.    PLAINTIFFS WILL SUFFER NO LEGALLY COGNIZABLE PREJUDICE
          FROM THE DISQUALIFICATION ................................................................. 16

19

CONCLUSION ...................................................................................................... 18

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ainscow v. Sanitary Co. of America,*
  180 A. 614 (Del. Ch. 1935)........................................................................................8

*Alan Pierce, Derivatively on Behalf of Oracle Corporation v. Lawrence J. Ellison, et al.,*
  Case No. 416147 ......................................................................................................4

*Bertozzi v. King Louie Int'l, Inc.,*
  420 F. Supp. 1166 (D. R.I. 1976)..............................................................................9

*Brand v. 20th Century Insurance Co./21st Century Insurance Co.,*
  124 Cal. App. 4th 594 (2004) .................................................................................12

*Cho v. Superior Court,*
  39 Cal. App. 4th 113 (1995) ...................................................................................14

*City of Santa Barbara v. Super. Ct.,*
  122 Cal. App. 4th 17 (2004) ...................................................................................15

*Concat LP v. Unilever, PLC,*
  2004 WL. 2913636 (N.D. Cal. Sept. 7, 2004) ..............................................6, 7, 14

*In re Dayco Corporation Derivative Sec. Litigation,*
  102 F.R.D. 624 (S.D. Ohio 1984) .....................................................................11, 12

*Dollens v. Zionts,*
  2001 WL. 1543524 (N.D. Ill. Dec. 4, 2001) —.......................................................12

*Flatt v. Superior Court,*
  9 Cal. 4th 275 (1994) ..................................................................................7, 12, 14

*H.F. Ahmanson Co. v. Salomon Brothers, Inc.,*
  229 Cal. App. 3d 1445 (1991) ................................................................................13

*Hawk Industries v. Bausch & Lomb, Inc.,*
  59 F.R.D. 619 (S.D.N.Y. 1973) ..............................................................................10

*Heilbrunn v. Hanover Equities Corp.,*
  259 F. Supp. 936 (S.D.N.Y. 1966)............................................................................9

*Henriksen v. Great American Sav. & Loan,*
  11 Cal. App. 4th 109 (1992) .................................................................7, 12, 14, 15, 16

*Jones v. Ahmanson & Co.,*
  1 Cal. 3d 93 (1969) ..................................................................................................8

*Kamerman v. Steinberg,*
  113 F.R.D. 511 (S.D.N.Y. 1986) ............................................................................10

ii

1

**TABLE OF AUTHORITIES**

2

**(continued)**

3

**Page**

4

*MAXXAM, Incorporated/Federated Development Shareholders Litigation,*
   698 A.2d 949 (Del. Ch. 1996) ................................................................8

5

*McDermott, Will & Emery v. Super. Ct.,*
   83 Cal. App. 4th 378 (2000) ................................................................8

6

7

*In re Oracle Corp. Derivative Litigation,*
   Consolidated C.A. No. 18751 ...........................................................3, 4

8

*In re Oracle Derivative Litigation,*
   824 A.2d 917 ........................................................................................5

9

10

*In re Oracle Securities Litigation,*
   829 F. Supp. 1176 (N.D. Cal. 1993) ....................................................9

11

*In Re Pacific Enterprises Sec. Litigation,*
   47 F.3d 373 (9th Cir. 1995) .................................................................9

12

13

*People ex rel. Dept. of Corp. v. Speedee Oil Change System Inc.,*
   20 Cal. 4th 1135 (1999) ..............................................7, 9, 13, 15, 16

14

*Picker Int'l v. Varian Assoc., Inc.,*
   869 F.2d 578 (Fed. Cir. 1989) .........................................................7, 11

15

16

*Ruggiero v. American BioCulture, Inc.,*
   56 F.R.D. 93 (S.D.N.Y. 1972) ............................................................10

17

*Ryan v. Aetna Life Insur. Co.,*
   765 F. Supp. 133 (S.D.N.Y. 1991) .....................................................10

18

19

*Stull v. Baker,*
   410 F. Supp. 1326 (S.D.N.Y. 1976) ...................................................10

20

*Syed Akhter, et al. v. Michael J. Boskin, et al.,*
   Case No. 417511 ..................................................................................4

21

22

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
   845 A.2d 1031 (Del. 2004) ..................................................................8

23

*Trone v. Smith,*
   621 F.2d 994 (9th Cir. 1980) .........................................................12, 13

24

25

*Truck Insur. Exch. v. Fireman's Fund Insur. Co.,*
   6 Cal. App. 4th 1050 (1992) ...............................................................11

26

27

28

iii

1
2

# TABLE OF AUTHORITIES
## (continued)

3

**Page**

4

## RULES

5    Cal. Rules of Professional Conduct R. 3-310(C)(3) ....................................................6, 7

6    Cal. Rules of Professional Conduct R. 3-310(E) ........................................................6, 12

7    Civ. L. R. 11-4(a)(1) ...............................................................................................6

8    Del. Ch. Ct. R. 5(aa) ..............................................................................................6

9    Model Code Disciplinary Rule 5-105 ..........................................................................7

10   N.D. Cal. Civ. Local Rule 11-4(a)(1) ..........................................................................6

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv