Michael D. Braun (167416)
Timothy J. Burke (181866)
STULL, STULL & BRODY
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA 90024
Tel:     (310) 209-2468
Fax:    (310) 209-2087

Jules Brody
Aaron Brody
Tzivia Brody
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:     (212) 687-7230
Fax:    (212) 490-2022

Kevin J. Yourman (147159)
Vahn Alexander (167373)
WEISS & YOURMAN
10940 Wilshire Boulevard
24th Floor
Los Angeles, CA 90024
Tel: (310) 208-2800
Fax: (310) 209-2348

Attorneys for Plaintiffs/Movants,
The Jose Group, Proposed Co-Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL 144 NURSING HOME PENSION FUND, On Behalf of Itself and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>ORACLE CORPORATION and LAWRENCE J. ELLISON,<br><br>                    Defendants. | CASE NO. CV 01-0988 MJJ<br><br>**CLASS ACTION**<br><br>**OPPOSITION OF THE JOSE GROUP TO THE MOTION TO APPOINT UFCW LOCAL 56 RETAIL MEAT PENSION FUND, ROBERT SAWYER, LOCAL 144 NURSING HOME PENSION FUND AND DRIFTON FINANCE CORP. AS LEAD PLAINTIFFS PURSUANT TO SECTION 21D OF THE SECURITIES EXCHANGE ACT OF 1934 AND APPROVING THEIR CHOICE OF COUNSEL**<br><br>DATE:     June 19, 2001<br>TIME:     9:30 a.m.<br>CTRM:    11<br>               Honorable Martin J. Jenkins |

## MEMORANDUM OF POINTS AND AUTHORITIES

Rene and Cynthia Jose, Thomas Shaffer, Kung Hsu, Chuchen Weng and Charles Combee (collectively the "Jose Group" or ) respectfully submit their Opposition to the Motion to Appoint UFCW Local 56 Retail Meat Pension Fund, Robert Sawyer, Local 144 Nursing Home Pension Fund and Drifton Finance Corp. (collectively the "Movants") As Lead Plaintiffs Pursuant to Section 21d of The Securities Exchange Act of 1934 And Approving Their Choice of Counsel" (the "Motion").

## I.    INTRODUCTION

Movants are precluded from being appointed lead plaintiffs because their choice of counsel, the firm of Milberg, Weiss, Bershad, Hynes and Lerach, LLP (hereinafter "Milberg, Weiss") will be concurrently representing adverse parties in the same litigation. Milberg, Weiss is currently representing plaintiff shareholders of Oracle Corporation (hereinafter "Oracle") in a derivative action on behalf of Oracle. See Pierce v. Ellison, Case No. 416147 (Superior Court of State Of California, San Mateo County, Filed Mar. 12, 2001) Shareholder Derivative Complaint (hereinafter the "Derivative Action") attached to the Declaration of Timothy J. Burke in Support of the Jose Group's Opposition as Exhibit A (hereinafter "Burke Dec. Ex. A").

The Ninth Circuit has already voiced its "concern[s] about the potential conflicts created [] by Milberg Weiss's dual representation of derivative and securities plaintiffs[.]" In re: Pacific Enterprises Sec. Litig., 47 F.3d 373, 378 (9th Cir 1995). The Ninth Circuit's concerns are real. The concurrent representation of adverse parties is strictly prohibited by California law. People ex rel. Dept. of Corp. v. Speedee Oil Change Systems, Inc., 20 Cal. 4th 1135, 1147 (Cal. 1999). The plaintiffs in the Derivative action are adverse parties with plaintiffs in the Class Action. Milberg, Weiss cannot represent a class of purchasers suing Oracle under the federal securities laws while concurrently representing Oracle and all of its shareholders in a breach of fiduciary duty action. Id.

As plaintiffs' counsel in the Derivative Action, Milberg, Weiss is currently representing all shareholders who own Oracle. Cal. Corp. Code §800(b)(1); Derivative Action ¶2. Movants now seek to have Milberg, Weiss appointed Lead Plaintiffs Counsel to represent a class consisting of all

1  purchasers of Oracle stock from  December 15, 2000, and March 1, 2001, inclusive (the "Class

2  Period")( hereinafter the "Class Action").

3      The nature of a derivative suit is twofold: First, it is the equivalent of a suit by stockholders

4  to compel the corporation to sue; and second, it is a suit by the corporation, asserted by the

5  stockholders on its behalf, against those liable to it.  E.g. Aronson v. Lewis, 473 A.2d 805, 811

6  (Del. 1984).  As the second part of this derivative action will be a suit by Oracle, Milberg, Weiss is

7  seeking to concurrently represent adverse parties by trying to represent the Class Action plaintiffs,

8  who are suing Oracle directly.  Milberg, Weiss cannot proceed against Oracle in the Class Action

9  because it is prosecuting claims on Oracle's behalf in the Derivative Action.

10      Another conflict exists between the underlying shareholders in the Derivative Action and the

11  shareholders in the Class Action, which prevents Milberg, Weiss from representing both groups.

12  Any recovery in the Derivative Action gets paid directly to Oracle, which enriches all of Oracles

13  shareholders at the time of the recovery.  However, any recovery in the Class Action that is paid by

14  Oracle damages Oracle's shareholders in the Derivative Action, except those shareholders who will

15  recover in the Class Action.  In short, the Class Action results in a redistribution of wealth from

16  Oracle's current shareholders to those who purchased stock during the Class Period.  See In re

17  Oracle Sec. Litig, 829 F. Supp. 1176, 1183 (N.D. CA 1993).  As such the Derivative plaintiffs and

18  the Class Action plaintiffs are adverse parties.

19      The Derivative plaintiffs and the Class Action plaintiffs are adverse because (1): In the

20  Derivative Action plaintiff is suing on behalf of Oracle while in the Class Action plaintiff is suing

21  Oracle (2);  Any recovery from Oracle in the Class Action will damage the plaintiffs in the

22  Derivative Action and (3); Both the Derivative Action plaintiff and the Class Action plaintiffs have

23  conflicting claims against the same defendant, Ellison.  Under controlling California law Milberg,

24  Weiss cannot concurrently represent adverse parties.  Therefore movants are not adequate

25  representatives based upon their attorney's conflicts of interest with the class, and so the Motion

26  must be denied.

27

28

II.     STATEMENT OF FACTS

A number of complaints for violations of federal securities laws have been filed in this Court requesting class action status on behalf of all purchasers of the securities of Oracle between December 15, 2000, and March 1, 2001, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  Defendants in the complaints include Oracle and Ellison.

As is more fully alleged throughout the complaints, these actions arise from damages incurred by the Class as a result of a scheme and common course of conduct by defendants which operated as a fraud and deceit on the Class during the Class Period.  Defendants' scheme included rendering false and misleading statements and/or omissions concerning the financial condition and business prospects of the Company, as well as the financial benefits that would enure to Oracle and its shareholders.

Oracle is the world's second largest software maker and supplies computer software for enterprise information management systems.  The Company offers database and relational servers, application development and decision support tools, and enterprise business applications.  Oracle's software runs on a variety of computers, including network computers, personal digital assistants, set-top devices, work-stations, PCs, minicomputers, mainframes and powerful super computers.

Oracle's high stock price was dependent upon its phenomenal growth rate.  However, by the beginning of Oracle's third quarter[1] Oracle's business began to fall victim both to the general economic slowdown in the computer industry and the dot-com bust.  Realizing that the public disclosure of Oracle's slowing growth rate would have a huge negative impact on Oracle's stock price, Oracle and Ellison put out a series of false and misleading statements designed to keep Oracle's stock price high while Ellison sold over 61 million shares of Oracle common stock for over $1.8 billion.

On March 1, 2001, Oracle revealed that, contrary to defendants' prior assurances of Oracle's continuing "strong" revenue and EPS growth, which continued to be made less than two weeks

---

[1]     Oracle's third quarter 2001 was from December 1, 2000, to February 28, 2001.

**OPPOSITION OF THE JOSE GROUP TO THE MOTION TO APPOINT UFCW LOCAL 56 RETAIL MEAT PENSION FUND, ET AL. AS  LEAD PLTFS PURSUANT TO §21D OF THE SECURITIES EXCHANGE ACT OF 1934 AND APPROVING THEIR CHOICE OF COUNSEL**
**CASE NO. C 01-0988 MJJ**
W:\DOCS\ORACLE3\PLD\LP-0PP-MPA-001                           3

1  earlier, that it would post revenue and EPS declines, sending Oracle's shares into a free fall. In a

2  press release Oracle stated:

3      -    Database growth would be flat to slightly negative.

4      -    Oracle would post sequential EPS declines.

5      -    Applications growth would be two-thirds of what Ellison had projected.

6      This disclosure shocked the market, causing Oracle's stock to fall to less than $17 per share

7  before closing at $16.88 per share on March 2, 2001, on record volume of more than 221 million

8  shares, causing billions of dollars of damage to plaintiff and the Class. Oracle lost over $90 billion

9  in market capitalization as Oracle stock has fallen over 50% from its class Period high of over $35

10  per share.

11      On March 12, 2001 the firm of Milberg, Weiss filed the Derivative Action on behalf of

12  Oracle and its shareholders. See Burke Dec. Ex. A. The Derivative Action seeks recovery of

13  damages for Oracle for violations of breaches of fiduciary duty committed by certain of Oracle's

14  officers and directors, including defendant Ellison. These breaches are connected to insider sales of

15  Oracle stock between December 19, 2000 and January 31, 2001.

16      Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for

17  the selection of Lead Plaintiffs to oversee class actions brought under the federal securities laws.

18      The PSLRA provides that within 60 days after the publication of the notice, any person or

19  group of persons who are members of the proposed class may apply to the court to be appointed

20  Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) of the Exchange Act directs

21  the Court to consider any motions by plaintiffs or purported class members to serve as Lead

22  Plaintiffs in response to any such notice by not later than 90 days after the date of publication

23  pursuant to §21D, or as soon as practicable after the Court decides any pending motion to

24  consolidate any actions asserting substantially the same claim or claims. Under this section of the

25  Exchange Act, the court "shall" appoint the "most adequate plaintiff," and is to presume that

26  plaintiff is the person, or group of persons, which:

27      (aa)    has either filed the complaint or made a motion in response to a notice . . .;

28

1      (bb)    in the determination of the court, has the largest financial interest in the relief

2                   sought by the class; and

3      (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

4                   Procedure.

5 §21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

6      Here Movants fail to satisfy Rule 23 the *Federal Rules of Civil Procedure* because they

7 cannot fairly and adequately represent the interest of the class since their interests conflict with

8 those whom they seek to represent. Movants' counsel, Milberg, Weiss would be concurrently

9 represent adverse parties if the Motion were granted. The dual representation of adverse parties is

10 strictly prohibited in California, because of counsels obvious conflicts of interest.

11 **III.    ARGUMENT**

12      Determining whether representative parties will adequately represent those on whose behalf

13 they are suing involves consideration of two separate issues: "first, the adequacy of the

14 representative, and second, the adequacy of his counsel." 3B Moore's Federal Practice P 23.07[1]

15 (2d ed. 1991).   Regarding the latter issue, "it has become routine to inquire into the competence,

16 experience and vigor of the representative's counsel," with disqualifying inadequacy often based

17 upon "a prospective determination that a conflict of interest is present." Id. at P 23.07[1.-1]. See

18 also Senter v. General Motors Corp., 532 F.2d 511, 524-25 (6th Cir.), cert. denied, 429 U.S. 870, 50

19 L. Ed. 2d 150, 97 S. Ct. 182 (1976) ("It must appear that the representatives will vigorously

20 prosecute the interests of the class through qualified counsel.")  Indeed, unless the plaintiff has a

21 conflict with the class, "courts look primarily to class counsel, not to the plaintiff, to determine if

22 there will be vigorous prosecution of the class action." 1 Newburg on Class Actions § 3.25 (2d ed.

23 1985).

24

25

26

27

28

1        **A.**     **Milberg, Weiss Cannot Be Appointed Lead Plaintiff's Counsel Because**
                        **its Dual Representation of Plaintiffs in the Class Action and Plaintiff in**

2                          **the Derivative Action Would Create an Impermissible Conflict of**
                        **Interest**

3

4        The district court has the duty and responsibility to supervise the conduct of attorneys who

5  appear before it. Erickson v. Newmar Corp., 87 F.3d 298, 301 (9th Cir. 1996); Lockary v. Kayfetz,

6  974 F.2d 1166, 1170 (9th Cir.), cert. denied, sub nom., Pacific Legal Foundation v. Kayfetz, 508

7  U.S. 931 113 S. Ct. 2397, 124 L. Ed. 2d 298 (1993); Trust Corp. v. Piper Aircraft Corp., 701 F.2d

8  85, 87 (9th Cir. 1983). "Every attorney practicing in the Northern District of California must 'be

9  familiar with and comply with the standards of professional conduct required of members of the

10  State Bar of California.'" Mindscape, Inc. v. Media Depot, Inc., 973 F. Supp. 1130, 1131 (N.D.

11  Cal. 1997) (citing Civil L.R. 11-3(a).) California State Bar Rules of Professional Conduct, Rule 3-

12  310 states, in pertinent part: a member shall not, without the informed written consent of each

13  client: . . . (3) Represent a client in a matter and at the same time in a separate matter accept as a

14  client a person or entity whose interest in the first matter is adverse to the client in the first matter.

15  Id. (citing Cal. St. Bar Rule of Prof. Cond. 3-310(C)). Here, because of its concurrent

16  representation of plaintiffs in the present case and the plaintiffs in the derivative case, the firm of

17  Milberg Weiss cannot be appointed Lead Plaintiffs' Counsel. People ex rel. Dept. of Corp. v.

18  Speedee Oil Change Systems, Inc. 20 Cal. 4th 1135, 1147 (Cal. 1999).

19        The loyalty the attorney owes one client cannot be allowed to compromise the duty owed

20  another. Id. (citing Ishmael v. Millington, 241 Cal. App. 2d 520, 526-527 (Cal. App.1966).

21  Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public

22  confidence in the legal profession and the judicial process. Id. at 1146. (citing Santa Clara County

23  Counsel Attys. Assn. v. Woodside 7 Cal. 4th 525, 547-548, fn. 6 (Cal. 1994). The effective

24  functioning of the fiduciary relationship between attorney and client depends on the client's trust

25  and confidence in counsel. Id. (citing Flatt v. Superior Court, 9 Cal. 4th 275, 282, 285 (Cal. 1994).

26  The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for

27  trust and security in the attorney-client relationship. Id. Therefore, if a law firm simultaneously

28

1  represents clients who have conflicting interests, a more stringent per se rule of disqualification

2  applies. Id.

3      The most egregious conflict of interest is representation of clients whose interests are

4  directly adverse in the same litigation. Id.(emphasis added). Such patently improper dual

5  representation suggests to the clients--and to the public at large--that the attorney is completely

6  indifferent to the duty of loyalty and the duty to preserve confidences. Id. The attorney's actual

7  intention and motives are immaterial, and the rule of automatic disqualification applies. Id. The rule

8  is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but also to keep

9  honest attorneys from having to choose between conflicting duties, or being tempted to reconcile

10 conflicting interests, rather than fully pursuing their clients' rights. Id. (citing Anderson v. Eaton,

11 211 Cal. 113, 116 (Cal. 1930). In the present case there are at least three interests of the plaintiff in

12 the Derivative Action and the plaintiffs in Class Action that are directly adverse.

13      **B.    Milberg, Weiss Cannot Represent Plaintiffs in the Class Action in Their Suit Against Oracle While at the Same Time Maintaining a Derivative Action on Oracle's Behalf**

14

15      As plaintiff's counsel in the Derivative Action, Milberg, Weiss is currently representing all

16 shareholders of Oracle, when certain defendants, including Ellison, allegedly breached the fiduciary

17 duties owed to Oracle by engaging in illegal insider stock sales. Cal. Corp. Code §800(b)(1). The

18 nature of a derivative suit is twofold: First, it is the equivalent of a suit by stockholders to compel

19 the corporation to sue; and second, it is a suit by the corporation, asserted by the stockholders in its

20 behalf, against those liable to it. E.g. Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984). As the

21 second part of this derivative action will be a suit by Oracle, Milberg, Weiss is prohibited from

22 representing the Class Action plaintiffs in their federal securities action Oracle.

23      According to the California Supreme Court this is the "most egregious conflict of interest[.]"

24 See. 20 Cal. 4th at 1147. Milberg, Weiss is seeking to represent a class of shareholders who are

25 suing Oracle, when at the same time Milberg, Weiss is suing on Oracle's behalf in the Derivative

26 action. Milberg, Weiss' actual intention and motives are immaterial, and the rule of automatic

27 disqualification applies. Id.

28

1
2

    **C.**      **Milberg, Weiss Cannot Represent Plaintiffs in the Class Action in Their Suit Against Oracle Because Any Class Action Recovery Will Injure Milberg Weiss' Clients in the Derivative Action**

3        In the present case there is an "inherent conflict between the interests supposedly protected

4  by the class action and those benefitted by the derivative action. Beneficiaries of the former are

5  persons who bought Oracle stock or call options during the Class Period, while beneficiaries of the

6  latter are the current shareholders of Oracle." In re Oracle Sec. Litig, 829 F. Supp. 1176, 1183

7  (N.D. CA 1993). The two groups are by no means identical and their interests not coextensive. Id.

8  at 1184-85. The Movants seek to represent only those who purchased Oracle securities during the

9  Class Period of December 15, 2000, and March 1, 2001. This includes those persons who no longer

10  hold their shares.

11       However, in the Derivative Action, Milberg, Weiss now represents everyone who currently

12  owns Oracle securities. This includes those persons who purchased their shares prior to December

13  15, 2000 and after March 1, 2001. "Inasmuch as [any recovery of the present action] is to be funded

14  by Oracle, it is the current shareholders who are paying[.] Id. at 1185. In short, [] the class action

15  results in a redistribution of wealth from Oracle's current shareholders to certain buyers of Oracle

16  stock[.] Id. Again, the dual representation of these adverse interests prohibits this Court from

17  granting the Motion.

18
19

    **D.**      **Milberg, Weiss Cannot Represent the Class Action Plaintiffs Because They Seek Recovery from the Same Defendant**

20       Movants and the Derivative Action plaintiffs are also adverse parties because they both seek

21  recovery from the same defendant, Ellison. In effect, both groups are fighting over the $849 million

22  dollars in insider trading profits Ellison is alleged to have made. See Burke Dec. Ex A ¶2. As the

23  court in Sullivan v. Chase Investment Services of Boston, Inc., 79 F.R.D. 246, 258 (N.D. Cal.

24  1978), noted, counsel cannot represent different plaintiffs with conflicting claims against the same

25  defendants without violating the ABA Code of Professional Responsibility.

26       A simple hypothetical illustrates the conflict caused by representing different plaintiffs in

27  actions against the same defendant. If a law firm represented two different plaintiffs, each with

28

1    different claims against the same defendant, and the defendant offers to settle both claims for single

2    sum, plaintiffs' attorney would be unable to advocate that either client should get more than the

3    other, as the attorney would be representing both sides of the argument.  In this situation, getting a

4    dollar more for one client means taking that dollar from the other client.  This is an intolerable

5    conflict of interest.  Furthermore, in a class action context, the responsibility of class counsel to

6    absent class members whose control over their attorneys is limited does not permit even the

7    appearance of divided loyalties of counsel.  Id.

8         While it has not directly ruled on this issue, the Ninth Circuit has noted its "concern[s] about

9    the potential conflicts created [] by Milberg Weiss's dual representation of derivative and securities

10   plaintiffs" in a prior case.  In re: Pacific Enterprises Sec. Litig., 47 F.3d 373, 378 (9th Cir 1995).  In

11   that case, an objector to the proposed settlement alleged that "because of a conflict of interest,

12   Milberg Weiss was willing to accept a lower derivative settlement so long as the class action

13   produced a large recovery."  Id.  The Court did not rule on the conflict because the objector failed to

14   raise these issues at any time prior to his appeal.  Id.  However, the Court did state that "[a] timely

15   objection could have been properly evaluated before extensive settlement negotiations were

16   concluded."  Id.  In the present case, such a "timely objection" has been made.  Id.

17   **IV.    CONCLUSION**

18        Because Movants and their attorneys Milberg, Weiss have conflicts of interest with the class

19   they seek to represent, their Motion for Lead Plaintiff and Lead Counsel should be denied.

20   Dated:  May 22, 2001                    Michael D. Braun
                                             Timothy J. Burke
21                                           STULL, STULL & BRODY

22

23                          By:  _____
                                             Timothy J. Burke
24                                           10940 Wilshire Boulevard
                                             Suite 2300
25                                           Los Angeles, CA 90024
                                             Tel:    (310) 209-2468
26                                           Fax:    (310) 209-2087

27   //

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jules Brody
Aaron Brody
Tzivia Brody
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:    (212) 687-7230
Fax:    (212) 490-2022

Kevin J. Yourman
Vahn Alexander
WEISS & YOURMAN
10940 Wilshire Boulevard
24th Floor
Los Angeles, CA 90024
Tel: (310) 208-2800
Fax: (310) 209-2348

Attorneys for Plaintiffs/Movants,
The Jose Group, Proposed Co-Lead Counsel for the
Class

**OPPOSITION OF THE JOSE GROUP TO THE MOTION TO APPOINT UFCW LOCAL 56 RETAIL MEAT PENSION FUND, ET AL. AS LEAD PLTFS PURSUANT TO §21D OF THE SECURITIES EXCHANGE ACT OF 1934 AND APPROVING THEIR CHOICE OF COUNSEL**
**CASE NO. C 01-0988 MJJ**
W:\DOCS\ORACLE3\PLD\LP-0PP-MPA-001                          10

**PROOF OF SERVICE**

1

2    STATE OF CALIFORNIA          )
                                  )ss.:
3    COUNTY OF LOS ANGELES        )

4         I am employed in the county of Los Angeles, State of California, I am over the age of 18 and
     not a party to the within action; my business address is 10940 Wilshire Boulevard, Suite 2300, Los
5    Angeles, CA 90024.

6         On May 22, 2001, I served the document(s) described as **OPPOSITION OF THE JOSE
     GROUP TO THE MOTION TO APPOINT UFCW LOCAL 56 RETAIL MEAT PENSION
7    FUND, ROBERT SAWYER, LOCAL 144 NURSING HOME PENSION FUND AND
     DRIFTON FINANCE CORP. AS LEAD PLAINTIFFS PURSUANT TO SECTION 21D OF
8    THE SECURITIES EXCHANGE ACT OF 1934 AND APPROVING THEIR CHOICE OF
     COUNSEL** by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as
9    follows:

10                          **SEE ATTACHED SERVICE LIST**

11   I served the above document(s) as follows:

12   __xx__  BY MAIL. I deposited such envelope(s) in the mail at Los Angeles, California. The
             envelope(s) was/were mailed with postage thereon fully prepaid. I am familiar with the
13           firm's practice of collection and processing correspondence for mailing. Under that practice
             it would be deposited with U.S. postal service on that same day with postage thereon fully
14           prepaid at Los Angeles, California in the ordinary course of business. I am aware that on
             motion of the party served, service is presumed invalid if postal cancellation date or postage
15           meter date is more than one day after date of deposit for mailing in an affidavit.

16   __xx__  BY PERSONAL SERVICE (as indicated). I delivered such envelope(s) by hand to the
             offices of the addressee(s).
17
          I further declare, pursuant to Civil L.R. 23-3, that on the date hereof I served a copy of the
18   above-listed document(s) on the Securities Class Action Clearinghouse by electronic mail through
     the following electronic mail address provided by the Securities Class Action Clearinghouse:
19
                              **jcarlos@stanford.edu**
20
          I declare that I am employed in the office of a member of the bar of this Court at whose
21   direction the service was made.

22        Executed on May 22, 2001, at Los Angeles, California 90024.

23

24   ___MELANIE JACOBS___
     Type or Print Name                              Signature
25

26

27

28

|   |   |
|---|---|
| 1 | **SERVICE LIST** |

1

2  Jules Brody                                    Michael S. Egan
   Aaron Brody                                   BERNSTEIN LIEBHARD & LIFSHITZ
3  Tzivia Brody                                  10 East 40th Street
   STULL, STULL & BRODY                          New York, NY 10016
4  6 East 45th Street                            Tel:    (212) 779-1414
   New York, NY 10017                            Fax:    (212) 779-3218
5  Tel:    (212) 687-7230
   Fax:    (212) 490-2022                        Ira M. Press
6                                                KIRBY MCINERNEY & SQUIRE LLP
   Kevin J. Yourman**                            830 Third Ave., 10th Fl.
7  Vahn Alexander                                New York, NY 10022
   Jennifer R. Williams                          Tel:    (212) 371-6600
8  WEISS & YOURMAN
   10940 Wilshire Boulevard                      Jill M. Manning
9  24th Floor                                    KIRBY MCINERNEY & SQUIRE LLP
   Los Angeles, CA 90024                         7665 Redwood Blvd., Suite 200
10 Tel: (310) 208-2800                           Novato, CA 94948
   Fax: (310) 209-2348                           Tel: (415) 898-8160
11
   William S. Lerach                             Frederic S. Fox
12 Darren J. Robbins                             Jonathan Levine
   MILBERG WEISS BERSHAD                         KAPLAN, KILSHEIMER & FOX LLP
13 HYNES & LERACH LLP                            805 Third Avenue, 22nd Floor
   600 West Broadway, Suite 1800                 New York, NY 10022
14 San Diego, CA 92101-5050                      Tel:    (212) 687-1980
   Tel:    (619) 231-1058                        Fax:    (212) 687-7714
15 Fax:    (619) 231-7423
                                                 Laurence D. King
16 Reed R. Kathrein                              100 Pine Street, Suite 2600
   Michael Reese                                 San Francisco, CA 94111
17 MILBERG WEISS BERSHAD                         Tel:    (415) 677-1238
   HYNES & LERACH LLP
18 100 Pine Street, Suite 2600                   Mark S. Goldman
   San Francisco, CA 94111                       WEINSTEIN KITCHENOFF SCARLATO
19 Tel:    (415) 288-4545                         & GOLDMAN, LTD.
   Fax:    (415) 288-4534                        1608 Walnut Street, Suite 1400
20                                               Philadelphia, PA 19103
   Alfred G. Yates, Jr.                          Tel: (215) 545-7200
21 LAW OFFICE OF ALFRED G. YATES, JR.
   429 Forbes Avenue                             Joshua M. Lifshitz
22 519 Allegheny Bldg.                           BULL & LIFSHITZ
   Pittsburgh, PA 15219                          246 West 38th Street
23 Tel:    (412) 391-5163                        New York, NY 10018
   Fax:    (412) 471-1033                        Tel:    (212) 869-9449
24
                                                 Marc A. Topaz
25                                               SCHIFFRIN & BARROWAY LLP
                                                 Three Bala Plaza East, Suite 400
26                                               Bala Cynwyd, PA 19004
                                                 Tel: (610) 667-7706
27

28 ** Denotes Personal Service

1   Barbara A. Podell
    SAVETT FRUTKIN PODELL & RYAN PC
2   325 Chestnut Street, Suite 700
    Philadelphia, PA 19106
3   Tel: (215) 923-5400

4   Fred T. Isquith
    WOLF HALDENSTEIN ADLER
5   FREEMAN
       & HERZ
6   270 Madison Avenue
    New York, NY 10016
7   Tel: (212) 545-4600

8   Francis M. Gregorek
    Francis A. Bottini, Jr.
9   Betsy C. Manifold
    WOLF HALDENSTEIN ADLER
10  FREEMAN
       & HERZ
11  Symphony Towers
    750 B. Street, Suite 2770
12  San Diego, CA 92101
    Tel: (619) 239-4599
13
    Douglas Risen
14  BERGER & MONTAGUE
    1622 Locust Street
15  Philadelphia, PA 19103
    Tel: (215) 875-3000
16
    Marc S. Henzel
17  LAW OFFICES OF MARC S. HENZEL
    210 W. Washington Square
18  Third Floor
    Philadelphia, PA 19106
19  Tel: (215) 625-9999

20  Klari Neuwelt
    LAW OFFICE OF KLARI NEUWELT
21  110 East 59th Street
    29th Floor
22  New York, NY 10022
    Tel: (212) 593-8800
23
    Lionel Z. Glancy
24  LIONEL Z. GLANCY LAW OFFICES
    1801 Avenue of the Stars
25  Suite 311
    Los Angeles, CA 90067
26  Tel: (310) 201-9150

27

28

    Brian Barry
    Jill Levine
    8424A Santa Monica Boulevard
    Suite 184
    Los Angeles, CA 90068
    Tel: (213) 969-0551

    Robert C. Susser
    6 East 43rd Street
    Suite 1900
    New York, NY 10017-4609
    Tel: (212) 201-9160

    Jay P. Saltzman
    SCHOENGOLD & SPORN PC
    19 Fulton Street
    Suite 406
    New York, NY 10038

    Joseph V. McBride
    RABIN & PECKEL
    275 Madison Avenue
    New York, NY 10016

    Evan Smith
    BRODSKY & SMITH LLC
    11 Bala Avenue
    Suite 39
    Bala Cynwyd, PA 19004

    James M. Orman
    LAW OFFICES OF JAMES M. ORMAN
    1845 Walnut Street
    14th Floor
    Philadelphia, PA 19103

    James D. Baskin, III
    BASKIN BENNETT & KOMKOV, LLP
    919 Congress Avenue
    Suite 1000
    Austin, TX 78701

    Karen L. Morris
    MORRIS AND MORRIS
    1105 North Market Street
    Suite 1600
    P.O. Box 2166
    Wilmington, DE 19801

1 | David Jaroslawicz
JAROSLAWICZ & JAROS
2 | 150 William Street
19th Floor
3 | New York, NY 10038

4 | Arnold Levin
LEVIN FISHBEIN SEDRAN & BERMAN
5 | 510 Walnut Street
Suite 500
6 | Philadelphia, PA 19106

7 | Bruce G. Murphy
LAW OFFICES OF BRUCE G. MURPHY
8 | 265 Llwyds Lane
Vero Beach, FL 32963
9
Paul J. Geller
10 | CAULEY GELLER BOWMAN & COATES,
LLP
11 | One Boca Place
Suite 421A
12 | 2255 Glades Road
Boca Raton, FL 33431
13
FARUQI & FARUQI, LLP
14 | 320 East 39th Street
New York, NY 10016
15
*Attorneys for Plaintiffs*
16
17
18
19
20
21
22
23
24
25
26
27
28

Steven O. Kramer
Jamie E. Wrage
MAYER BROWN & PLATT
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071
Tel: (213) 229-9500

Javier H. Rubenstein
Alan N. Salpeter
MAYER BROWN & PLATT
190 South LaSalle Street
Chicago, IL 60603
Tel: (312) 701-7317

Robert L. Hickok
PEPPER HAMILTON & SCHEETZ
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103
Tel: (215) 981-4583

Dorian Daley
Lauren G. Segal
ORACLE CORPORATION
500 Oracle Parkway
Mailstop 5op7
Redwood City, CA 94065
Tel: (650) 506-5200

*Attorneys for Defendants*

| | | |
|---|---|---|
| 1 | Barbara A. Podell<br>SAVETT FRUTKIN PODELL & RYAN PC | Brian Barry<br>Jill Levine |
| 2 | 325 Chestnut Street, Suite 700<br>Philadelphia, PA 19106 | 8424A Santa Monica Boulevard<br>Suite 184 |
| 3 | Tel: (215) 923-5400 | Los Angeles, CA 90068<br>Tel: (213) 969-0551 |
| 4 | Fred T. Isquith | |
| 5 | WOLF HALDENSTEIN ADLER<br>FREEMAN | Robert C. Susser<br>6 East 43rd Street |
| 6 | & HERZ<br>270 Madison Avenue | Suite 1900<br>New York, NY 10017-4609 |
| 7 | New York, NY 10016<br>Tel: (212) 545-4600 | Tel: (212) 201-9160 |
| 8 | Francis M. Gregorek | Jay P. Saltzman<br>SCHOENGOLD & SPORN PC |
| 9 | Francis A. Bottini, Jr.<br>Betsy C. Manifold | 19 Fulton Street<br>Suite 406 |
| 10 | WOLF HALDENSTEIN ADLER<br>FREEMAN | New York, NY 10038 |
| 11 | & HERZ<br>Symphony Towers | Joseph V. McBride<br>RABIN & PECKEL |
| 12 | 750 B. Street, Suite 2770<br>San Diego, CA 92101 | 275 Madison Avenue<br>New York, NY 10016 |
| 13 | Tel: (619) 239-4599 | Evan Smith |
| 14 | Douglas Risen<br>BERGER & MONTAGUE | BRODSKY & SMITH LLC<br>11 Bala Avenue |
| 15 | 1622 Locust Street<br>Philadelphia, PA 19103 | Suite 39<br>Bala Cynwyd, PA 19004 |
| 16 | Tel: (215) 875-3000 | |
| 17 | Marc S. Henzel<br>LAW OFFICES OF MARC S. HENZEL | James M. Orman<br>LAW OFFICES OF JAMES M. ORMAN |
| 18 | 210 W. Washington Square<br>Third Floor | 1845 Walnut Street<br>14th Floor |
| 19 | Philadelphia, PA 19106<br>Tel: (215) 625-9999 | Philadelphia, PA 19103 |
| 20 | Klari Neuwelt | James D. Baskin, III<br>BASKIN BENNETT & KOMKOV, LLP |
| 21 | LAW OFFICE OF KLARI NEUWELT<br>110 East 59th Street | 919 Congress Avenue<br>Suite 1000 |
| 22 | 29th Floor<br>New York, NY 10022 | Austin, TX 78701 |
| 23 | Tel: (212) 593-8800 | Karen L. Morris<br>MORRIS AND MORRIS |
| 24 | Lionel Z. Glancy<br>LIONEL Z. GLANCY LAW OFFICES | 1105 North Market Street<br>Suite 1600 |
| 25 | 1801 Avenue of the Stars<br>Suite 311 | P.O. Box 2166<br>Wilmington, DE 19801 |
| 26 | Los Angeles, CA 90067<br>Tel: (310) 201-9150 | |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1 | David Jaroslawicz<br>JAROSLAWICZ & JAROS<br>150 William Street | Steven O. Kramer<br>Jamie E. Wrage<br>MAYER BROWN & PLATT |
| 2 | 19th Floor | 350 South Grand Avenue |
| 3 | New York, NY 10038 | 25th Floor<br>Los Angeles, CA 90071 |
| 4 | Arnold Levin<br>LEVIN FISHBEIN SEDRAN & BERMAN | Tel: (213) 229-9500 |
| 5 | 510 Walnut Street<br>Suite 500 | Javier H. Rubenstein<br>Alan N. Salpeter |
| 6 | Philadelphia, PA 19106 | MAYER BROWN & PLATT<br>190 South LaSalle Street |
| 7 | Bruce G. Murphy<br>LAW OFFICES OF BRUCE G. MURPHY | Chicago, IL 60603<br>Tel: (312) 701-7317 |
| 8 | 265 Llwyds Lane<br>Vero Beach, FL 32963 | Robert L. Hickok |
| 9 | Paul J. Geller | PEPPER HAMILTON & SCHEETZ<br>18th & Arch Streets |
| 10 | CAULEY GELLER BOWMAN & COATES,<br>LLP | 3000 Two Logan Square<br>Philadelphia, PA 19103 |
| 11 | One Boca Place<br>Suite 421A | Tel: (215) 981-4583 |
| 12 | 2255 Glades Road<br>Boca Raton, FL 33431 | Dorian Daley<br>Lauren G. Segal |
| 13 | FARUQI & FARUQI, LLP | ORACLE CORPORATION<br>500 Oracle Parkway |
| 14 | 320 East 39th Street<br>New York, NY 10016 | Mailstop 5op7<br>Redwood City, CA 94065 |
| 15 | | Tel: (650) 506-5200 |
| 16 | *Attorneys for Plaintiffs* | *Attorneys for Defendants* |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |