Shawn A. Williams
ShawnW@Lerachlaw.com

February 22, 2005

<u>VIA E-FILE & HAND DELIVERY</u>

The Honorable Joseph C. Spero
Magistrate Judge of the United States
District Court
450 Golden Gate Avenue
San Francisco, CA  94102

  Re: *In re Oracle Corp. Sec. Litig.*
     Master File No. C-01-0988-MJJ (JCS)

**PLAINTIFFS' PROPOSED DISCOVERY PLAN**

Dear Judge Spero:

Pursuant to the Court's February 8, 2005 Order, this letter sets forth plaintiffs' separate discovery plan.

**I. Relevant Scope of Discovery from Oracle**

The individual files of Oracle Corporation ("Oracle" or the "Company") employees should be searched (within reason) in order to capture information regarding the allegations that false statements were made that (i) the economy was not affecting Oracle; (ii) 11i and its individual modules were preintegrated, interoperable and performing well; (iii) that the Company would report substantial revenue earnings, database sales and applications sales growth; and (iv) the Company financial reporting for 2Q01.

Subject to the production and review of proper organizational charts and noticed Rule 30b(6) depositions, plaintiffs are entitled to documents from the files of Oracle Corporation ("Oracle" or the "Company") and individuals such as sales representatives, executive vice presidents, area vice presidents, regional vice presidents, managers, practice directors, finance personnel, accounting managers, controllers, technical support representatives, and the administrative and executive

The Honorable Joseph C. Spero
February 22, 2005
Page 2

assistants to each, as well as other Oracle employees not currently known to plaintiffs who are likely to have information relevant to the claims and defenses of the parties.

Plaintiffs are also entitled to communications exchanged between Oracle's sales and consulting representatives and Oracle's product support teams and customers discussing integration, implementation and performance problems of Suite 11i, and to individual modules including, but not limited to CRM timing of releases, functionality of patches, etc.

Because Oracle has not yet produced meaningful organizational charts, plaintiffs are not in a position to make a comprehensive and informed proposal on whose files should be searched for responsive documents. However, with regard to the sales staff, the files of the so-called "Speaker's Group" and the area vice presidents and regional managers in each of the sales and consulting divisions – Oracle Product Industries, Oracle Servicing Industries ("OSI"), and North American Sales ("NAS") should be searched. These do not include members of NAS or OSI who also would have relevant and discoverable information.

## II.     Discovery to be Taken from Defendants Re: Economy and Impact on Sales Revenue and Earnings

Documents and communications (including e-mail correspondence) concerning the United States economy; its impact or potential impact on Oracle's revenues, earnings and expenses; and its impact or potential impact on customer purchasing decisions of IT products and services in general, and specifically the purchase of products or services from Oracle should be produced.

## III.    Discovery to be Taken from Defendants re: Product Functionality Problems

Plaintiffs are entitled to the documents and communications (as well as e-mail) relating to the functionality of 11i and its individual modules including, but not limited to, the CRM module (including Oracle's internal implementation). The document requests reprinted below are an attempt to directly capture the responsive information. The remainder of plaintiffs' requests regarding 11i are attached to plaintiffs' separate discovery proposal:

(a)     Documents discussing customers' implementation of the 11i Suite, CRM or any of its individual modules where a customer or Oracle representative

The Honorable Joseph C. Spero
February 22, 2005
Page 3

discussed integration or implementation issues like defects, integration problems, gaps or bugs in software;

(b) Documents discussing defects, integration problems, bugs and gaps in 11i software, including documents from Oracle sales or consulting staff including, but not limited to, software engineering, project managers and sales personnel responsible for doing product demonstrations;

(c) Documents from the files of the Company's technical staff regarding the timing or release of different modules and iterations of modules, and/or patches to fix or correct problems, gaps and bugs;

(d) Documents and communications discussing costs of implementation initially at Oracle and at customer sites and timing of the release of patches; and

(e) Documents and communications regarding discounts or service concessions provided to customers as a result of implementation problems or product defects related to 11i and/or its individual modules.

**IV.    Discovery re: Revenue – Earnings – Product – Consulting Forecasting to be Taken from Defendants:**

Documents, as well as e-mail, discussing the Company's forecasts, including any mention of the economy as it relates to Oracle's ability to make its forecasts or sales and as it related to the Company's pipeline and its growth or decline should be produced. Additionally, documents should be produced relating to Oracle's sales pipeline and pipeline conversion rates/ratios. Plaintiffs are also entitled to documents and communications discussing or comparing Oracle's 3Q01 sales pipeline to past conversion ratios.

**V.    Discovery to be Taken From Defendants Re: Accounting Allegations:**

Documents related to defendants' improper accounting for customer overpayments, including Oracle's accounting policies, internal accounting systems, general ledger, monthly credit memo registers, unassigned cash receipts, miscellaneous offset reports, accounts receivable reserves, and efforts to reconcile

The Honorable Joseph C. Spero
February 22, 2005
Page 4

Oracle's "on account" or "unapplied cash" and corresponding journal entries are relevant and discoverable.

These documents are relevant to the allegations of improper revenue recognition through the creation of phony invoices, and their satisfaction with customer overpayments held in the Company's "on accounts." Plaintiffs are also entitled to discover e-mail communications and memoranda discussing the same and debit memo transactions and "on account clean up" occurring on or around November 17, 2000, information regarding overpayments from sales transactions occurring as early as 1997 as alleged in the Revised Second Amended Complaint ("RSAC").

Further, plaintiffs are entitled to discovery of facts concerning 2002 Oracle internal investigations (occurring only days after plaintiffs filed their Second Amended Complaint ("SAC") resulting in the alteration of documents relevant to the claims in the RSAC is discoverable.

**VI.   Discovery to be Taken from Defendants Re: Insider Trading:**

Documents related to defendants Jeff Henley and Larry Ellison's ("Ellison") actual or contemplated sales of Oracle securities, including documents from defendants' investment and financial advisors or consultants are relevant and discoverable. This includes option agreements, defendants net worth, the reasons and timing of their sales, company policies and procedures regarding trading and options, and knowledge of the allegations in the RSAC regarding accounting, downturn in the economy, forecasts, earnings, product problems, etc.

**VII.   Documents relating to the Special Litigation Committee (SLC):**

Documents related to SLC investigations of insider trading, malfeasance and/or accounting allegations raised in plaintiffs' RSAC should be produced.

**VIII.   Parameters of Document Production from Defendants**

**A.   Format of Production**

Documents that were created in electronic format should be produced in native format. Native format production is necessary to allow plaintiffs to efficiently access and review all relevant information including, but not limited to: (a) formulas,

The Honorable Joseph C. Spero
February 22, 2005
Page 5

comments and other hidden information included in spreadsheets; (b) metadata for all electronic documents; and (c) the identities of recipients of e-mail blind copies and access to documents embedded in and/or attached to e-mail.

### B.    Timing of Production

(a)    Defendants shall make a rolling production of documents and will complete their initial production of responsive documents by March 21, 2005. Plaintiffs will produce those responsive non-class certification documents that they have agreed to produce by March 21, 2005.

(b)    The production of documents from individuals' files not specifically designated shall be reasonably timed so that production occurs before the deposition of an individual and/or the subject matters for which a Company representative is designated. Plaintiffs propose that production occur at a minimum seven days prior to any said deposition.

### C.    Production Source Log

A production log shall be produced on a rolling basis no later than ten days after the production of any set of documents. This log should identify (by Bates number) where and from whose files each responsive document was produced.

### D.    Timing of Production of a Privilege Log

A privilege log shall be produced no later than 30 days after documents are produced.

### E.    Authentication of Documents

The parties agreed to work toward a stipulation for the authenticity of documents produced by defendants in this action. Such a stipulation could help avoid additional deposition testimony for the sole purpose of authenticating documents produced by the defendants.

## IX.    Depositions

The Court has already approved 65 depositions per party.

The Honorable Joseph C. Spero
February 22, 2005
Page 6

### A.     Deponents

Based on plaintiffs' cursory review of a limited number of documents produced by defendants thus far, the following is a non-exclusive list of the depositions of former/current Oracle employees that plaintiffs believe at this juncture will likely be taken: Jennifer Minton; Sergio Giacolletto; George Roberts; Edward J. Sanderson; Jay Nussbaum; Mark Barrenechea; Charles Rozwat; Sohaib Abbasi; Safra Catz; Mark Jarvis; Stephanie Aas; Bruce M. Lange; Deborah A. Lange; Mathew Mayerson; Kate L. McGee; Jennifer L. Minton; Sharon Montoya Bretz; Anil Vora; Keith G. Block; Richard P. Blotner; Valerie A. Borthwick; Jay Carter; Drew Costakis; Michael P. DeCesare; John P. Fikany; Sebastian J. Gunningham; Margaret Marks; Steve McLaughlin; Mark A. Salser; David Cooperman; Joyce E. Westerdahl; Shari A. Simon; Mark T. Tombridge; Jenn Bicho; Joelle Teresa Fitzgerald; Mary Ann Riles; Jim English; Christian Facey; Larry Garnick; Sarah J. Kopp; Annica Magnusson; Cheryl Jean McDowell; Estele Oloresisimo; Daniel N. Sharpley; Thomas A. Williams; David Winton; John Nugent; Frank Varasano; Mary Ann Gillespie; Allen Snyder; Ian Thacker; Joel Summers; Phillip Tate; Ian Sterling; Michael DeCesare; Mike Murphy; Michael Rocha; Conway Snyder; Raymond Barman; Chabra Deepjot; Ray Lane; Carolyn Barkenhoff; Gary Roberts; Terrence Ford; Derek Williams; Gary Bloom; Ira Entis; R. Police; Cayle Fitzpatrick; Kenneth Hammoz; Mike Metcalf; Don Warren; Cliff Godwin; Andrew Huda; Mike Quinn; Greg Myers; Kimberly Henderson; Raul Campos; Bret Fuller; Kimberly Kane and Graham Mair.

In addition to the above, plaintiffs believe they will need to depose members of the SLC and their counsel, analysts, Oracle's two auditors, and customers.

Defendants say that they presently intend to depose the 49 Confidential Witnesses referenced in the RSAC.

### B.     Timing

(a)     30(b)(6) depositions shall be completed before March 30, 2005 (preservation, accounting, forecasting, and Suite 11i interoperability). The 7-hour limit imposed by the federal rules shall be extended if defendants intend to profer the witness in both their individual capacity and as a 30(b)(6) representative.

(b)     Substantive witness depositions will begin in April 2005 subject to timely production of documents.

The Honorable Joseph C. Spero
February 22, 2005
Page 7

   (c) Depositions of non-Oracle employees will be staggered, beginning after plaintiffs have obtained documents pursuant to the third party subpoenas they issued in December 2004/January 2005. The files of any third party current or former Oracle employee shall be produced by Oracle upon 30 days notice.

**X.** **Third Party Customer (Former/Potential Customer) Discovery**

While plaintiffs do not believe the court to have ruled that the substance of plaintiffs' requests were improper or that they should be narrowed more than what they have been during the meet and confer process, the following topics are general topics that support plaintiffs' claims. These subject categories are substantially narrower than those previously sent to the non-parties.

  1. General Subject Matters

   (a) Oracle's Product Problems

Documents from third parties regarding implementation and integration problems with Oracle's products, including customer complaints, cancellations or delays that relate to functionality of application products.

   (b) Downturn in the Economy

Documents relating to the impact of the declining United States economy on third parties' decisions to order, purchase, defer, cancel or modify deals for Oracle products and services. Additionally, documents related to third parties' purchase of IT products in general.

   (c) Accounting

Documents from third parties regarding the accounting allegations in the RSAC (specifically customer overpayments and improper revenue recognition) and any pre- and post-Class Period information related to same (*i.e.,* documents from transactions occurring prior to the Class Period and documents in 2002 related to Oracle's "investigation" and clean up described in §V, supra).

In accordance with the above, plaintiffs have agreed to refine their requests to third parties without prejudice to the following:

The Honorable Joseph C. Spero
February 22, 2005
Page 8

- Documents and communications concerning your actual or attempted installation integration or implementation of Oracle applications and database, products, licenses or services including, but not limited to Oracle 11i, or any of its individual modules including CRM.

- Documents and communications concerning the functionality of Oracle's products and services and compatibility with hardware, software and information technology systems used by or considered for use by your company.

- Documents and communications concerning technical defects, problems, bugs, patches or technical difficulties related to Oracle's applications, product and licenses including complaints you had or raised with Oracle.

- Documents and communications concerning your efforts to audit, collect, or recover payments or monies paid to Oracle or owed to you by Oracle, relating to Oracle's products, licenses or services.

- Documents and communications concerning the loss of business or costs incurred by you in connection with your purchase or use of Oracle's applications and database products, licenses or services including 11i and CRM.

- Documents and communications concerning your information technology budget for Oracle products, licenses or services, including, but not limited to any decline or change due to the slowing of the United States economy.

- Documents and communications concerning sales presentations, promotions or product demonstrations made to you by Oracle for Oracle products, licenses or services including, but not limited to any discussions, promises or guarantees made to you regarding the functionality or performance of Oracle products.

- Documents and communications concerning any discussions or meetings between you and Oracle or any individual defendant relating to Oracle contracts, agreements or Oracle's products, licenses or services.

The Honorable Joseph C. Spero
February 22, 2005
Page 9

- Documents constituting or concerning invoices, purchase orders, receipts, checks, refunds, credits in connection with the purchase or sale of Oracle's products or services relating to 2Q01 (Sept. 2000 - Nov. 2000) regardless of when created.

  2. Timing of Production

  (a) Immediately for those non-parties that have already been subpoenaed.

  (b) Plaintiffs are prepared to subpoena an additional 50 or more non-parties whom plaintiffs have a good faith basis to believe are likely to have information relevant to this action. Plaintiffs are prepared to set an initial limit of 200 non-party document subpoenas and agree to notify defendants of additional non-parties in excess of 200, allowing defendants ten days to seek an order from the Court stating (for good cause shown) why plaintiffs should not issue the additional non-party subpoenas for documents.

  (c) Plaintiffs believe this proposal is extremely reasonable in light of Oracle's position as the second largest software manufacturer in the world, statements that as of December 15, 2000, the Company had "several hundred live" and "several thousand that are in the process of upgrading right now," as well as Ernst & Young LLP's review of 195 accounts alone in connection with the SEC's investigation of accounting allegations in the RSAC.

  3. Relevant Time Period

The Relevant Time Period is June 1, 2000 through and including December 31, 2001 (exclusive of plaintiffs' allegations concerning accounting irregularities), including documents created outside this time frame which relate to *inter alia*, statements, events, circumstances and knowledge during the Relevant Time Period. As set forth in the joint proposal, plaintiffs have proposed to accept a shortened relevant time period ending on August 10, 2001, the date of the filing of the Company's Form 10-K for the fiscal year ending 2001.

**XI. Analysts and Media Organizations Covering the Company**

The scope of discovery sought by plaintiffs from analysts and news services is relevant, including discovery related to:

The Honorable Joseph C. Spero
February 22, 2005
Page 10

      (a)     The defendants' public statements;

      (b)     Customer interviews and complaints/problems with Oracle products, including 11i;

      (c)     The downturn in the economy and IT budgets during the Class Period;

      (d)     Oracle's forecasts and projections;

      (e)     Oracle's revenue and earnings reports and financial statements; and

      (f)     One-on-one interviews with Oracle defendants.

## XII.   Discovery to be Taken From Accountants/Auditors

As set forth in plaintiffs' subpoenas to Arthur Anderson LLP and Ernst & Young LLP, plaintiffs seek the following discovery from the accountants/auditors who performed professional services for the defendants:

      (a)     Integrated workpapers in both hard copy and electronic format for Oracle's 2001 and 2002 fiscal quarters and fiscal year-end. *See* Audit and Accounting Manual §6300.06 ("[w]orking papers should be viewed as an integrated presentation of information.");

      (b)     Documentation of professional services performed for Oracle or the individual defendants. This would include, for example, tax consulting work performed by Ernst & Young LLP for Ellison. It would also include Ernst & Young LLP's investigation of allegations in plaintiffs' RSAC;

      (c)     Desk files, client files and communications (including e-mail) that relate to Oracle's fiscal year 2001 and the quarters therein, whether created during fiscal year 2001 or relating thereto;

      (d)     Documents received or given to the SLC and communications with the SLC;

      (e)     Documents and communications between auditors relating to Oracle or the individual defendants;

The Honorable Joseph C. Spero
February 22, 2005
Page 11

(f) Communications with the SEC, AICPA and other governmental, law enforcement or regulatory agencies related to Oracle or the individual defendants; and

(g) Documents concerning document retention (including any policies) and the alteration, modification or destruction of documents related to plaintiffs' allegations. This would include any documents related to the alteration, modification or destruction of Oracle's audit trail for 2Q01, Account 12601 and/or the debit memoranda or "on account clean up" occurring in November 2000.

### XIII. Discovery to be Taken From Plaintiffs:

1. Confidential Witnesses

Discovery concerning the confidential witnesses should be limited. Plaintiffs are prepared in this case to provide the names of the confidential witnesses along with their correlating witness number so long as an order is in place protecting the confidential witnesses from retaliation and harassment including: that the names of the confidential witnesses only be disclosed to outside counsel for defendants; that the documents that reference the confidential witnesses be filed under seal of the Court; and other additional protections set forth by Judge Alsup in the *In re Northpoint Communications Group, Inc.*, Master File No. C-01-1473-WHA, Order (N.D. Cal. May 13, 2003). Plaintiffs have not had the opportunity to review defendants' proposal regarding a stipulation which was forwarded to plaintiffs at approximately 6:00 p.m. PT time this evening but will be prepared to discuss it at the March 1 hearing.

2. Scope and Timing of Discovery of the Proposed Class Representatives

At this juncture, discovery of plaintiffs should be limited to the adequacy of plaintiffs' proposed class representative: Robert D. Sawyer, Drifton Finance Corporation, Local 144 Nursing Home Pension Fund (now known as 1199 SEIU Greater New York Pension Fund), Ryan Kuehmichel and Dzung Chu. As to Drifton Finance Corporation, 1199 SEIU Greater New York Pension Fund and Robert D. Sawyer, plaintiffs have agreed to endeavor to produce supplemental responses to defendants' second set of interrogatories and documents responsive to defendants' document requests pertaining to class certification by March 7, 2005. Defendants have not propounded discovery on Ryan Kuehmichel or Dzung Chu.

The Honorable Joseph C. Spero
February 22, 2005
Page 12

Depositions of the proposed class representatives should take place beginning in the middle of March 2005 and be completed by mid-April 2005. Plaintiffs will not oppose defendants' request to extend the class certification schedule for six weeks as requested by defendants: (a) opposition to the motion for class certification due May 16, 2005; (b) reply due on June 14, 2005; and (c) oral argument in July 2005.

### 3. Timing and Scope of Contention Interrogatories

The contention interrogatories served on plaintiffs by defendants are premature at this juncture of the litigation and should be deferred until after discovery has progressed. "[C]ontention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110-111 (D.N.J. 1990); *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985). Plaintiffs agreed to supplement their responses to contention interrogatories previously propounded by defendants on or before August 1, 2005.

### 4. Discovery of Absent Class Members Not Permitted

Defendants should be precluded from seeking discovery from absent class members. "Absent a strong showing of necessity, discovery [of absent class members] generally will be denied." 3 Newberg on Class Actions §16.03 & n.57 (2d ed. 1985).

### 5. Attorney Work Product

Defendants should be precluded from seeking plaintiffs' counsel attorney work product, including all facts supporting those persons identified in plaintiffs' initial disclosures.

## XIV.  Conclusion

Plaintiffs respectfully submit that their proposal is designed to focus the discovery in this action based on the information currently available to plaintiffs and reserve their right to seek modification or supplementation of the proposal.

Respectfully submitted,


Shawn A. Williams

The Honorable Joseph C. Spero
February 22, 2005
Page 13

SAW:cs

cc:     All Counsel (see attached)

T:\CasesSF\Oracle3\Corres\Jenkins_Letter_DisPlan2.doc