1    LERACH COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
2    WILLIAM S. LERACH (68581)
     MARK SOLOMON (151949)
3    DOUGLAS R. BRITTON (188769)
     401 B Street, Suite 1600
4    San Diego, CA 92101
     Telephone: 619/231-1058
5    619/231-7423 (fax)
        – and –
6    SHAWN A. WILLIAMS (213113)
     WILLOW E. RADCLIFFE (200087)
7    ELI R. GREENSTEIN (217945)
     JENNIE LEE ANDERSON (203586)
8    MONIQUE C. WINKLER (213031)
     100 Pine Street, Suite 2600
9    San Francisco, CA 94111
     Telephone: 415/288-4545
10   415/288-4534 (fax)

11   Lead Counsel for Plaintiffs

12                        UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT OF CALIFORNIA

14

15   In re ORACLE CORPORATION          )   Master File No. C-01-0988-MJJ
     SECURITIES LITIGATION             )
16                                      )   CLASS ACTION
     _____    )
17   This Document Relates To:          )   PLAINTIFFS' OPPOSITION TO
                                        )   DEFENDANT ORACLE'S MOTION TO
18        ALL ACTIONS.                  )   DISQUALIFY THE FIRM OF LERACH
                                        )   COUGHLIN STOIA GELLER RUDMAN &
19   _____    )   ROBBINS LLP

20                                          DATE: March 22, 2005
                                            TIME: 9:30 a.m.
21                                          CTRM: 11

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL OVERVIEW..............................................................................4

III.  ARGUMENT ........................................................................................................5

      A.    There Was and Is No Attorney-Client Relationship Between Mr. Rudman
            and Oracle that Raises a Conflict of Interest .............................................5

      B.    Mr. Rudman Was Not and Is Not Representing "Adverse" Interests......................9

      C.    Delaware Law, Which Governs Any Confidential Relationship Between
            Oracle and Sam Rudman, Permits Ethical Screening and Makes It the
            Responsibility of the Individual Attorney to Guard Secrets of the Former
            Client.............................................................................................................13

      D.    Ms. Langford's Affidavit Demonstrates a Fundamental Misunderstanding
            of Derivate Actions and Their Relationship to Direct Actions.............................15

IV.   CONCLUSION....................................................................................................18

1

## TABLE OF AUTHORITIES

2

Page

3

*Ainscow v. Sanitary Co. of Am.*,
 21 Del. Ch. 35 ( Del. Ch. Ct. 1935) ..............................................7

4

*Bertozzi v. King Louie Int'l, Inc.*,
5
 420 F. Supp. 1166 (D.R.I. 1976)..........................................9, 10

6
*Brand v. 20th Century Ins. Co./21st Century Ins. Co.*,
 124 Cal. App. 4th 594 (2004) ...............................................8
7

*Cho v. Superior Court*,
8
 39 Cal. App. 4th 113 (1995) ...............................................15

9
*Concat LP v. Unilever, PLC*,
 350 F. Supp. 2d 796 (N.D. Cal. 2004) ....................................15
10

*Dollens v. Zionts*,
11
 No. 01 C 5931, 2001 U.S. Dist. LEXIS 19966
 (N.D. Ill. Dec. 4, 2001) ..............................................10, 11
12

*End of Road Trust v. Terex Corp.*,
13
 No. 99-477 (GMS), 2002 WL 242464
 (D. Del. Feb. 20, 2002) ..............................................13, 14
14

*First Am. Bank & Trust v. Frogel*,
15
 726 F. Supp. 1292 (S.D. Fla. 1989) .....................................6, 11

16
*Flatt v. Superior Court*,
 9 Cal. 4th 275 (1994) ....................................................6
17

*Hawk Industries, Inc. v. Bausch & Lomb, Inc.*,
18
 59 F.R.D. 619 (S.D. N.Y. 1973) ....................................12, 17

19
*Heilbrunn v. Hanover Equities Corp.*,
 259 F. Supp. 936 (S.D.N.Y. 1966)........................................2, 7
20

*Henriksen v. Great Am. Savings & Loan*,
21
 11 Cal. App. 4th 109 (1992) ...............................................8

22
*H.F. Ahmanson & Co. v. Salomon Bros., Inc.*,
 229 Cal. App. 3d 1445 (1991) ...............................................9
23

*In re County of Los Angeles*,
24
 223 F.3d 990 (9th Cir. 2000) ...........................................3, 14

25
*In re Dayco Corp. Derivative Sec. Litig.*,
 102 F.R.D. 624 (S.D. Ohio 1984)..................................... *passim*
26

*In re Int'l Sys. & Controls Corp. Sec. Litig.*,
27
 693 F.2d 1235 (5th Cir. 1982) ...............................................7

28

Page

*In re Oracle Corp. Derivative Litig.*,
    No. 18751, 2004 Del. Ch. LEXIS 177
    (Del. Ch. Ct. Dec. 2, 2004) ...........................................................................................4

*In re Oracle Sec. Litig.*,
    829 F. Supp. 1176 (N.D. Cal. 1993) ...........................................................................7, 18

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...........................................................................................11

*In re Rasterops Corp. Sec. Litig.*,
    No. C-92-20115 RMW (EAI), 1993 WL 476651
    (N.D. Cal. Sept. 10, 1993) ................................................................................1, 2, 9, 10

*In re Rasterops Corp. Sec. Litig.*,
    No. C-92-20349-RMW (EAI), 1994 WL 374332
    (N.D. Cal. Apr. 20, 1994) ...........................................................................................1

*In re Transocean Tender Offer Sec. Litig.*,
    455 F. Supp. 999 (N.D. Ill. 1978) ...........................................................................11

*Joy v. North*,
    692 F.2d 880 (2d Cir. 1982).........................................................................................2, 15

*Kamerman v. Steinberg*,
    113 F.R.D. 511 (S.D.N.Y. 1986) ...........................................................................12

*Manning v. Waring, Cox, James, Sklar & Allen*,
    849 F.2d 222 (6th Cir. 1988) ...........................................................................................3

*McDermott, Will & Emery v. Superior Court*,
    83 Cal. App. 4th 378 (2000) ...........................................................................................7

*Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*,
    632 F. Supp. 418 (D. Del. 1986)...........................................................................13

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*,
    20 Cal. 4th 1135 (1999) ...........................................................................................14

*Picker Int'l, Inc. v. Varian Assocs., Inc.*,
    869 F.2d 578 (Fed. Cir. 1989).........................................................................................12

*Ruggiero v. Am. Bioculture, Inc.*,
    56 F.R.D. 93 (S.D.N.Y. 1972) ...........................................................................12

*Ryan v. Aetna Life Ins. Co.*,
    765 F. Supp. 133 (S.D.N.Y. 1991).........................................................................................12

*Trone v. Smith*,
    621 F.2d 994 (9th Cir. 1980) ...........................................................................................9

**Page**

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*,
    6 Cal. App. 4th 1050 (1992) ................................................................................................12

**STATUTES, RULES AND REGULATIONS**

California Rules of Professional Conduct
    Rule 3-310....................................................................................................5, 7, 12, 18
    Rule 3-310(C)(3).......................................................................................................5, 6
    Rule 3-310(E) ...............................................................................................................5

Delaware Rules of Professional Conduct
    Rule 1.10(c)................................................................................................................13
    Rule 8.5......................................................................................................................13

## I.    INTRODUCTION

Defendants move to disqualify Lead Counsel Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin").  They assert purported conflicts that arose when Sam Rudman ("Mr. Rudman"), one of six counsel in a Delaware derivative action on behalf of Oracle shareholders, joined Lead Counsel's firm on July 1, 2004 – more than seven months before defendants filed the instant motion.  The asserted "conflicts" that defendants portray here have for years been uniformly rejected by courts, including this Court, as a basis for disqualifying counsel because they are nothing more than speculative and theoretical.   As this Court explained in *Rasterops*, "there is no *per se* rule prohibiting shareholders from simultaneously bringing both direct and derivative actions." *In re Rasterops Corp. Sec. Litig.*, No. C-92-20115 RMW (EAI), 1993 WL 476651, at *8 (N.D. Cal. Sept. 10, 1993) (report and recommendation adopted in relevant part in *In re Rasterops Corp. Sec. Litig.*, No. C-92-20349-RMW (EAI), 1994 WL 374332 (N.D. Cal. Apr. 20, 1994)).  The same principle holds true for plaintiffs' counsel.  *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 630 n.6 (S.D. Ohio 1984) ("the analysis [of the cases discussing plaintiff's disqualification] seems fully applicable to the question of attorney disqualification").

Courts have given these "theoretical" conflicts the moniker "surface duality" because the interests that plaintiffs' counsel represent in both actions are not adverse – even if the representation is "simultaneous" – though here it is "successive," not simultaneous.  As Judge Frankel put it nearly 40 years ago, when rejecting the speculative "holocaust [that] defendants envision" here, the purported "conflict" raised by defendants is routine (and routinely rejected as a basis for disqualification) in securities litigation:

> As to the role of plaintiffs as both "friend" and "enemy" to the corporation, this surface duality is in fact a routine matter in the courts.  For more purposes than pleading, "antagonism" between the derivative plaintiff and those who really run (*i.e.*, are) the corporation is a common phenomenon.  We need look no farther for illustration than this case, where the corporation and its able counsel pull the laboring oar on a motion to dismiss a claim purportedly for the corporation's benefit.

1    *Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936, 939 (S.D.N.Y. 1966) (cited with approval in

2    *Rasteros*, 1993 WL 476651, at *8).[1]

3            But in any event, no conflicts, theoretical or otherwise, are present here at all because the

4    derivative case was dismissed at summary judgment with prejudice and Mr. Rudman has effectively

5    withdrawn from the case on appeal.  Aware that even the "theoretical" conflicts that they complain

6    of have disappeared, defendants now are attempting to manufacture a conflict by pretending that a

7    report of the Special Litigation Committee ("SLC") sought by plaintiffs in the instant litigation is a

8    privileged communication already seen by Mr. Rudman acting as counsel for Oracle investors in the

9    derivative case.  But the report – even if it ever was privileged – is no longer.  Oracle waived the

10   privilege when it moved for termination based on that report.  Oracle's own lawyer, retained by

11   Oracle to serve as adversary counsel to the derivative plaintiffs, conceded as much before Judge

12   Strine:

13           [THE COURT:]  As I understand it, the committee has waived its privilege.  Is that
             correct, Mr. Kreisman?
14
                     MR. KREISSMAN: That is correct, Your Honor.  ***The committee, by putting
15           out the special litigation committee report, has waived its privilege***.

16   *See* Declaration of Douglas R. Britton in Support of Plaintiffs' Opposition to Defendant Oracle's

17   Motion to Disqualify the Firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Britton

18   Decl."), Ex. 1 at 80:8-15.

19           Mr. Kreissman's admission, on behalf of Oracle and Mayer Brown, compels two results.

20   First, the SLC report is not the type of confidential communication that can serve as a basis to

21   disqualify counsel.  If it were, and if Oracle truly viewed derivative counsel as its counsel, disclosing

22   the SLC report would not constitute a waiver.  Second, Oracle's waiver in the derivative case means

23   that the SLC report is no longer privileged and must be produced in this case.  *Joy v. North*, 692 F.2d

24   880, 893 (2d Cir. 1982) ("To the extent that communications arguably protected by the attorney-

25   client privilege may be involved in that data, a motion for judgment based on the [SLC] report

26   ───────────────────────

27   [1]        Here, as elsewhere, citations are omitted and emphasis is added unless otherwise noted.

28
     PLAINTIFFS' OPPOSITION TO DEFENDANT ORACLE'S MOTION TO
     DISQUALIFY - C-01-0988-MJJ                                                    - 2 -

1    waives the privilege.").  Oracle cannot use its waiver in the derivative case as a basis now to

2    terminate this case.  The Court should summarily reject as a contrivance Oracle's assertion that a

3    purported privilege that has been waived expressly can nonetheless serve as a basis for

4    disqualification.

5          This case demonstrates why courts must be sensitive to the possibility of strategic abuse of

6    disqualification motions.  *In re County of Los Angeles*, 223 F.3d 990, 994-96 (9th Cir. 2000) ("The

7    vicarious disqualification of an entire firm can work harsh and unjust results, particularly in today's

8    legal world where lawyers change associations more frequently than in the past.").  As Judge

9    Kozinski aptly observed, an easy disqualification rule "also raises the specter of abuse:  A motion to

10   disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of

11   choice."  *Id*. at 996 (citing *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th

12   Cir. 1988) ("Unquestionably, the ability to deny one's opponent the services of capable counsel, is a

13   potent weapon.")).[2]

14         Plaintiffs' interests in this case are not adverse to Oracle's shareholders' interests in the

15   derivative case.  Moreover, the fact that Mr. Rudman has filed formal withdrawal papers in the

16   derivative litigation removes any chance that an actual conflict will arise in the future.   As

17   defendants well know, when Mr. Rudman joined Lerach Coughlin, plaintiffs' derivative counsel in

18   Delaware notified the Delaware Court that he was no longer active in the derivative litigation,

19   stating:

20

21   ────────────────────

22   [2]      When the timing and content of defendants' motion is viewed in context, it becomes clear
     that it is but a component part of defendants' scorched earth litigation tactics.  The motion was filed
23   at around the same time defendants served plaintiffs with notice of their intent to move for Rule 11
     sanctions for arguing in their motion for class certification that plaintiffs' losses are attributable to
24   defendants' fraudulent portrayal of the Oracle 11i Suite of Software ("Suite 11i").  And it also comes
     in the middle of defendants' hell-bent efforts to delay and restrict Suite 11i discovery and discovery
25   into Oracle's accounting shenanigans at the end of 2Q01.  Unlike the derivative case, which pursued
     only an insider trading claim against defendants Larry Ellison ("Ellison") and Jeff Henley
26   ("Henley") and failed to implicate the Suite 11i defects, and accounting misconduct on defendants'
     accounting fraud, the instant case focuses in large measure on the failure of Suite 11i – a failure that
27   made defendants' statements about Suite 11i sales false and caused Oracle to miss its forecasts for
     Applications sales, Database sales, and earnings in the third quarter of 2001.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT ORACLE'S MOTION TO
DISQUALIFY - C-01-0988-MJJ                                                           - 3 -

Mr. Rudman, Mr. Weiser and Mr. Wilens have moved to different firms and are no longer associated with or active in the Oracle litigation.

*See* Declaration of Samuel H. Rudman in Support of Plaintiffs' Opposition to Defendant Oracle's Motion to Disqualify the Firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Rudman Decl."), Ex. 2. Defendants' motion is baseless and should be viewed for what it is – a desperate attempt to disrupt the litigation and avoid, or at least delay, discovery of the serious problems that Oracle was facing with Suite 11i and the serious accounting manipulations in which defendants were engaged and the liability that results therefrom. Defendants' motion should be denied.

## II.   PROCEDURAL OVERVIEW

Lerach Coughlin has been litigating this class action for nearly four years. As this Court is aware, the Revised Second Amended Complaint for Violations of the Federal Securities Laws ("RSAC") alleges that defendants issued false and misleading statements about, among other things, Oracle's financial results for the second quarter of fiscal year 2001 ("2Q01"), the effects of the economy on Oracle's business, Oracle's third quarter 2001 forecasts, and the functionality of Oracle's products. With respect to Oracle's products, plaintiffs specifically allege false statements regarding the functionality and integration of Oracle's Suite 11i Applications and its modules (*e.g.*, ¶¶50-52, 54, 58, 63, 68)[3] and Oracle's belated concession that its applications revenue growth (which includes 11i) would only grow by 25% (compared to its previously projected 75% growth). ¶¶74, 76-77; Corrected Appendix of Exhibits to Plaintiffs' Second Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws, Exs. 4, 13.

By contrast, the allegations pursued in the derivative case were much narrower. Not only did the derivative action involve different defendants, the derivative plaintiffs pursued only violations of Delaware's insider trading laws by Ellison and Henley based on when they knew that Oracle would miss its market estimates during a very narrow subset of the Class Period in this action. As noted by Judge Strine, the derivative plaintiffs abandoned allegations regarding Oracle's product problems, allegations that the class action plaintiffs continue to vigorously pursue here. *See In re Oracle Corp.*

---

[3]      All "¶_" references are to the RSAC unless otherwise specified.

PLAINTIFFS' OPPOSITION TO DEFENDANT ORACLE'S MOTION TO DISQUALIFY - C-01-0988-MJJ                                                                                          - 4 -

*Derivative Litig.*, No. 18751, 2004 Del. Ch. LEXIS 177, at *32 n.26 (Del. Ch. Ct. Dec. 2, 2004) ("It bears mentioning that in earlier stages of this case, the plaintiffs made problems with some of these products a focal point of their case.  They have since entirely abandoned that tack and this opinion therefore does not dilate on the facts relating to these products.").  Moreover, absent from the derivative litigation were any allegations of accounting fraud.

Effective July 1, 2004, Geller Rudman, which had represented the derivative plaintiffs in Delaware, merged with and into Lerach Coughlin.  Rudman Decl., ¶4.  At that time, Mr. Rudman's involvement as counsel in the derivative litigation ended.  In fact, plaintiffs' derivative counsel in Delaware filed an Annual Pro Hac Vice Renewal form on January 27, 2005 and informed the court that Mr. Rudman was not renewing his *pro hac vice* application, and that he and other counsel "have moved to different firms and are no longer associated with or active in the Oracle litigation." *Id*.¶8, Ex. 2.  Mr. Rudman filed notices of substitution of counsel in the Chancery Court of Delaware and in the Delaware Supreme Court, where the case is currently pending on appeal.  *Id*. ¶9, Exs. 4-5.  Mr. Rudman also filed formal withdrawal papers on March 1, 2005 with the Delaware Supreme Court.  *Id*. ¶9, Ex. 3.  Mr. Rudman's office is located in Melville, New York, nearly 3,000 miles from where this case is being actively litigated.  Apart from discussing Mr. Rudman's withdrawal from the derivative litigation and addressing the current motion, neither Mr. Rudman nor counsel litigating this case have discussed this litigation or the litigation in Delaware.  *Id*. ¶¶6-7.

## III.   ARGUMENT

### A.   There Was and Is No Attorney-Client Relationship Between Mr. Rudman and Oracle that Raises a Conflict of Interest

Rule 3-310 of the California Rules of Professional Conduct exists to protect the attorney-client relationship.  Rule 3-310(C)(3) prohibits ***simultaneous*** representation of adverse interests while Rule 3-310(E) prohibits ***successive*** representation of adverse interests unless certain conditions are met:

(C)  A member shall not, without the informed written consent of each client:

\*       \*       \*

(3) Represent a client in a matter and ***at the same time*** in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

*        *        *

(E)  A member shall not, without the informed written consent of the client or former client, accept employment ***adverse*** to the client or former client where, ***by reason of the representation of the client or former client***, the member has obtained confidential information material to the employment.

Cal. R. Prof'l Conduct, Rule 3-310 (C)(3), (E).

Both rules envision an actual attorney-client relationship and seek to protect those clients when their interests are actually adverse to other clients being represented by counsel. *Id.* The prohibition on "successive representation" preserves client confidences and secrets conveyed or given to the attorney in the course of the relationship while the prohibition on "simultaneous" representation is designed to ensure vigorous representation. *See Flatt v. Superior Court*, 9 Cal. 4th 275, 285 (1994). In fact, the prohibition on "simultaneous" representation is automatic because of its potential impact on a client's confidences and trust in his or her attorneys. As the Supreme Court of California put it,

> The reason for such a rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter ***wholly unrelated*** to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship.

*Id.* (emphasis in original). Under California rules, a conflict of interest must be just that – a conflict. And a lawyer does not represent conflicting interests unless "'in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.'" *Id.* at 283 n.2 (quoting canon 6 of the ABA's 1908 Canons of Professional Ethics).

These principles demonstrate that there was no attorney-client relationship between Mr. Rudman and Oracle in the derivative case that would implicate the concerns addressed by simultaneous or successive representation. The attorney-client relationship existed between plaintiffs' counsel and the representative shareholders, not counsel and Oracle. *First Am. Bank & Trust v. Frogel*, 726 F. Supp. 1292, 1297 (S.D. Fla. 1989) ("In derivative actions brought pursuant to Rule 23.1, the representation requirement is designed to ensure that a stockholder bringing suit

1  derived from the corporation's interest will assume strict 'fiduciary' responsibilities."). Perhaps

2  most telling is the fact that Oracle entrusted not a single confidence or secret to Mr. Rudman in the

3  derivative litigation and, instead, retained its own lawyers to oppose the efforts of Mr. Rudman and

4  his co-counsel that were intended to benefit the interests of Oracle shareholders. *See Heilbrunn*, 259

5  F. Supp. at 939 ("We need look no farther for illustration than this case [for the reality that the

6  corporation is at odds with plaintiffs' counsel], where the corporation and its able counsel pull the

7  laboring oar on a motion to dismiss a claim purportedly for the corporation's benefit.").

8        Courts reject the contentions defendants make here because of the practicalities of individual

9  and derivative stockholder suits:

10         [The rejection of a per se rule prohibiting simultaneous representation] is
   supported by the practicalities of most individual and derivative stockholders suits.

11 As suggested by Judge Frankel, and as evidenced by the posture of the instant case,
   the corporation, while technically a plaintiff in the derivative suit, will typically

12 contest the discovery and other efforts of the individual, derivative plaintiffs, even
   though the corporation is not, technically, permitted to defend the derivative suit on

13 the merits.

14 *Dayco*, 102 F.R.D. at 630 n.7; *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1239 (5th

15 Cir. 1982) (In derivative litigation "[i]t is not reasonable to indulge in the fiction that counsel, hired

16 by management, is also constructively hired by the same party counsel is expected to defend

17 against."). There was and is simply no confidence or trust to undermine given that Oracle and its

18 lawyers – not Mr. Rudman – served as plaintiffs' adversaries in the derivative litigation.[4]

19

20 _____

21 [4]     Defendants spend considerable effort attempting to evade the practical realities of derivative
   litigation, but cite not a single authority that supports their proposition that the attorney-client

22 relationship that would invoke Rule 3-310 exists between the corporation and derivative counsel.
   Motion to Disqualify the Firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Defs.'

23 Mem.") at 8. Instead, defendants cite a few cases that stand for nothing more than the unremarkable
   proposition that the corporation is the beneficiary in a derivative suit. *Id.* (citing *McDermott, Will &*

24 *Emery v. Superior Court*, 83 Cal. App. 4th 378, 382 (2000); *In re Oracle Sec. Litig.*, 829 F. Supp.
   1176 (N.D. Cal. 1993); *Ainscow v. Sanitary Co. of Am.*, 21 Del. Ch. 35 ( Del. Ch. Ct. 1935)).

25 Defendants' position is purely tactical harassment. While the corporation may be a beneficiary,
   there are no confidential communications with derivative counsel that would invoke Rule 3-310.

26 Even *McDermott*, upon which defendants rely, supports the reality that in derivative litigation
   confidential communications exist between derivative counsel and the shareholder representatives,

27 not derivative counsel and the corporation. 83 Cal. App. 4th at 383 ("In holding a shareholder
   derivative action not to be tantamount to an assignment, we have reasoned that shareholders in such

28 action essentially 'stand in the shoes' of the corporation."). To hold otherwise would open the

1     Defendants claim that Mr. Rudman's access to confidential information in the derivative

2   litigation, including the SLC report, has turned a "theoretical" conflict into an actual conflict.

3   Defendants ignore the facts and the law.  Defs.' Mem. at 2, 4-5.  In *Dayco*, the court addressed and

4   rejected this very argument because, like here, defendants put forward no proof that counsel had

5   violated any protective orders in the case.  102 F.R.D. at 632.  In *Dayco*, defendants argued that

6   counsel should be disqualified because "certain documents that it provided to Cole and STR for use

7   in the federal suit could have been used in the state court litigation."  *Id.*  Rejecting this argument,

8   the court stated that "there is no proof that Cole and STR violated any confidentiality order of this

9   Court."  *Id.*  The court reasoned that counsel's withdrawal from the prior representation coupled with

10  the presence of other counsel reduced the risk of such a violation.  *Id.*  The court added that it was

11  "confident that Cole and STR will obey the orders and not reveal any confidentially-revealed

12  documents to Lovorn or to any other unauthorized individual."  *Id.*  Like *Dayco*, there is no chance

13  here that Mr. Rudman or Lead Counsel in this case will violate any confidentiality orders.  For the

14  past seven months, he has not shared any information with Lead Counsel and has complied with all

15  outstanding confidentiality orders.  And Lead Counsel has not contacted Mr. Rudman.  There is a

16  3,000 mile wall between them.

17     Defendants cite several cases for the proposition that Mr. Rudman's access to confidential

18  information should be imputed to the entire Lerach Coughlin firm as a basis for disqualification.

19  Defs.' Mem. at 12-13.  Again, defendants' authority is inapposite.  In each case, the disqualified

20  attorney had gained access to confidential information through a traditional attorney-client

21  relationship and not through the compulsory discovery process by which the derivative plaintiffs

22  gained access to information in Delaware.  *See Henriksen v. Great Am. Savings & Loan*, 11 Cal.

23  App. 4th 109, 114 (1992) (firm disqualified when attorney switched sides in litigation over a

24  construction loan); *Brand v. 20th Century Ins. Co./21st Century Ins. Co.*, 124 Cal. App. 4th 594,

25  599, 603-07 (2004) (excluding expert testimony from attorney who was "personally involved in

26

27  communication between derivative counsel and the shareholder representatives to invasion by
    defendants' counsel.  *In re Oracle* and *Ainscow* add nothing meaningful to the analysis.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT ORACLE'S MOTION TO
DISQUALIFY - C-01-0988-MJJ                                        - 8 -

1   providing legal advice and services . . . in matters substantially related to the instant litigation");

2   *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) (plaintiffs' lawyer disqualified where he had

3   personally provided legal advice to defendant in prior representation involving a secondary offering).

4       While these cases are inapposite, the *H.F. Ahmanson & Co.* case relied upon by defendants

5   actually supports plaintiffs' position here.  Defs.' Mem. at 13 (citing *H.F. Ahmanson & Co. v.*

6   *Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1459 (1991)).  There, the court refused to disqualify

7   Wachtel Lipton because it had not received any **confidences** that were relevant to litigation from

8   which plaintiffs were seeking disqualification.  *Id.*  In fact, the court refused to disqualify Wachtel

9   even where it was giving legal advice during a board meeting because the existence of others

10  destroyed the privileged nature of the communications.  *Id.* at 1460.  This case makes clear that the

11  disqualification principles cited by defendants do not apply in the derivative context.

12      **B.    Mr. Rudman Was Not and Is Not Representing "Adverse" Interests**

13      "[A] derivative suit is founded on a cause of action belonging to the corporation, in which the

14  corporation itself is the appropriate plaintiff, but has failed to sue on its own behalf."  *Dayco*, 102

15  F.R.D. at 629.  While the conflicts involved by representing the corporation on the one hand and

16  plaintiff against the corporation on the other have a "surface appeal," the case law is "virtually

17  unanimous in holding that one counsel can represent a stockholder bringing **both** an individual **and** a

18  derivative action" because their interests are not adverse.  *Id.* at 630 (emphasis in original).

19      Most courts have emphasized the "'surface duality' of joining individual and derivative

20  actions, and held that the 'theoretical conflict of interest' does not justify a per se test prohibiting

21  joinder of such actions."  *Id.*  The reason is a simple one – "[t]ypically, **both** such suits will attack

22  some sort of alleged misconduct by corporate management, and diligent counsel can hardly be

23  expected not 'to attack all fronts with equal vigor.'" *Id.* (quoting *Bertozzi v. King Louie Int'l, Inc.*,

24  420 F. Supp. 1166, 1180 (D.R.I. 1976)) (emphasis in original).  It is this frontal attack in both cases

25  that aligns the interests of the plaintiffs in the direct action and the interests of the corporation in the

26  derivative action.  Plaintiffs in both cases can be expected to zealously prosecute their claims –

27  leaving the only potential for a conflict to the remedies stage of the litigation.  *See In re Rasterops*,

28

1993 WL 476651, at *8.  As this Court stated in *Rasterops*, it is defendants' burden to prove an actual conflict, which is difficult to do where both cases pursue a common nucleus of facts:

> In the present case, defendants have failed to establish that there is an actual **conflict**.  Since plaintiffs' success in both actions is "equally contingent upon the proof of the same nucleus of facts, they and their counsel can be expected to attack all fronts with equal vigor."

*Id.* (quoting *Bertozzi*, 420 F. Supp. at 1180).

In *Dollens v. Zionts*, No. 01 C 5931, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001), the Northern District of Illinois addressed this very issue in the context of a motion for lead plaintiff. There, one plaintiff challenged the adequacy of a competing counsel because they purportedly had "a conflict of interest in seeking to represent the derivative plaintiffs because they had previously represented plaintiffs in the securities fraud class action."  *Id.* at *8.  While the plaintiffs in the securities action could have consented to the representation to resolve the issue, there was no need for them to do so because the court held that the parties' interests in the direct and derivative actions were not "materially adverse."  *Id.* at *11.  In fact, they were aligned because "[t]he plaintiffs in both cases need to prove the malfeasance of the same individual defendants based on the same set of facts."  *Id.*  And the perceived conflict at the remedies stage of the litigation did not create divergent interests as the source of recovery was (and often is) the same in both suits:

> Although recovery in the derivative suit could require individual directors to return money to the corporation itself, while recovery in the class action would require the individual defendants and the corporation to compensate the plaintiffs directly, the source of the recovery is the same, and the shareholders benefit from either result.

*Id.*

Mr. Rudman did not then, nor does he now, suffer from a conflict of interest.  Mr. Rudman has filed formal withdrawal papers in the derivative litigation and has had no involvement in this litigation for the entire seven months that he has been with the Lead Counsel's firm.  *See* Rudman Decl., ¶¶4-6, 9, Ex. 3.  There was simply no duty to Oracle in the derivative case that would require Mr. Rudman to take an opposite position in this case.  *Id.*; *see also Rasterops*, 1993 WL 476651, at *8.  To the contrary, it was in the shareholders' best interests in the derivative case for Mr. Rudman to vigorously pursue the action against Ellison and Henley and it is in the shareholders' best interest in this case that plaintiffs' counsel do the same.  *See Dollens*, 2001 U.S. Dist. LEXIS 19966, at *11

PLAINTIFFS' OPPOSITION TO DEFENDANT ORACLE'S MOTION TO DISQUALIFY - C-01-0988-MJJ                                                                                           - 10 -

1   (shareholders benefit from recovery in either a direct action or a derivative action).   In fact,

2   numerous courts have recognized that the interests of the plaintiffs in both direct and derivative

3   actions are essentially the same and are often pursued "simultaneously" in the same action.  *See First*

4   *Am. Bank*, 726 F. Supp. at 1298 ("Although there may well prove to be an actual conflict [where

5   plaintiff brings a direct and derivative action simultaneously] (in which case the court can take

6   appropriate action), the court determines that no conflict exists at this stage in the proceedings."); *In*

7   *re Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978) ("It is well-settled

8   that shareholders have the right to bring direct and derivative actions simultaneously.").

9       Mr. Rudman's withdrawal from the derivative action further weaken defendants' contention.

10   Indeed, courts have found that an attorneys' withdrawal from either a direct or derivative action

11   helps to ensure that no conflicts of interest will arise in the future.  *Dollens*, 2001 U.S. Dist. LEXIS

12   19966, at *11 ("To the extent their interests diverge, the plaintiffs are now represented by separate

13   counsel."); *Dayco*, 102 F.R.D. at 631 ("The withdrawal from representation of Lovorn . . . surely

14   reduces the possibility that Cole and STR will not vigorously pursue the derivative action.").  Even if

15   Mr. Rudman had not withdrawn, the fact that the derivative case has been dismissed substantially

16   reduces the likelihood of an actual conflict at the remedies stage.  *See Transocean*, 455 F. Supp. at

17   1014 ("[I]f this potential conflict should crystallize, for example, if and when the question of remedy

18   is reached, the court has sufficient authority to deal with any problems that may arise.").[5]

19       Defendants cite a handful of cases from the 1970s supporting the minority view that

20   simultaneous representation of direct and derivative actions can serve as a basis for disqualification.

21   Defs.' Mem. at 9-10 (citing cases).  The reason that these cases represent the minority view is a

22   simple one – they focus on theoretical conflicts and ignore the realities of derivative litigation.  As

23   the *Dayco* court noted when rejecting these very cases, the distinction that they make is "not rooted

24   in the realities of most individual and derivative suits:"

25   _____

26   [5]     Defendants' reliance on *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir.
     1995), is misplaced.  There, the Ninth Circuit expressly did not decide the conflicts issue raised by
27   defendants here and expressed concern over a linked settlement and simultaneous representation.  *Id.*
     at 376, 378.  Neither issue exists in this case.

28

1    Several cases cited by Defendant do not compel a different result.  In both

2    *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 94-95 (S.D.N.Y. 1972) and

     *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623-24 (S.D. N.Y.

3    1973), the Courts held that stockholders pursuing individual claims could not also
     serve as representatives of a class of derivative plaintiffs.  These decisions plainly

4    relied on the theoretical distinction between individual and derivative stockholder
     suits.  That distinction is just that, a theoretical one, not rooted in the realities of most

5    individual and derivative suits, which usually are "equally contingent upon the proof
     of the same nucleus of facts."

6    *See Dayco*, 102 F.R.D. at 630.

7    The two more recent decisions cited by defendants from the Southern District of New York

8    do not compel a different result.  Defs.' Mem. at 9.  In both cases, the court disqualified plaintiffs

9    who were seeking to represent direct and derivative actions that were in the initial stages of

10   litigation.  *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) (class certification denied

11   at the pleadings stage); *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 137 (S.D.N.Y. 1991)

12   (derivative claim dismissed at pleadings stage).  And they did so based on the reasoning that the

13   interests would conflict at the remedies stage of both litigations.  *Id.*  Here, by contrast, the potential

14   for a conflict at the remedies stage of this litigation is virtually non-existent given that the derivative

15   case has been dismissed and Mr. Rudman has withdrawn from the litigation.  Even the court in *Ryan*

16   allowed plaintiffs to remove the conflict by electing "to pursue either the direct or derivative . . .

17   action."  *Id.*  Ironically, defendants' own authority rejects their argument that Mr. Rudman's

18   withdrawal cannot cure the perceived conflict here.  Defs.' Mem. at 11.[6]

19

20

_____

21   [6]    Defendants urge this Court to conclude that Mr. Rudman is currently representing Oracle in

22   order to avail themselves of automatic disqualification.  Defs.' Mem. at 7.  The differences in
     concurrent and successive representation are, however, a distinction without a difference in this

23   context.  It is representing interests that are "adverse" that serve as a basis to disqualify counsel.  *See*
     Cal. R. Prof'l Conduct 3-310.  And as discussed herein, the case law is virtually unanimous in

24   holding that the interests raised by defendants in this motion are not "adverse."  Nevertheless, the
     Delaware action has been dismissed at summary judgment, plaintiffs in the Delaware action have

25   informed the court that Mr. Rudman is "no longer associated with or active" in the derivative
     litigation, and Mr. Rudman has filed formal withdrawal papers to remove any potential for a conflict

26   in the future.  *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050 (1992) and *Picker
     Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578 (Fed. Cir. 1989), relied upon by defendants for the

27   proposition that Mr. Rudman cannot eliminate any perceived conflicts by withdrawing, are
     inapposite.  Neither case involved the derivative representation at issue in this case.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT ORACLE'S MOTION TO
DISQUALIFY - C-01-0988-MJJ                                                    - 12 -

**C.   Delaware Law, Which Governs Any Confidential Relationship Between Oracle and Sam Rudman, Permits Ethical Screening and Makes It the Responsibility of the Individual Attorney to Guard Secrets of the Former Client**

Mr. Rudman's representation of Oracle, even if it rose to the level demanded by defendants in their motion, is governed by Delaware ethical principles since the representation, if any, occurred in Delaware. Del. R. Prof'l Conduct 8.5. Delaware, like California, permits ethical screening. Del. R. Prof'l Conduct 1.10(c). Rule 1.10(c) provides that a firm may permissibly represent a client, despite a member's disqualification, if the (1) "disqualified lawyer is timely screened" from participation in the matter and attorneys fees and (2) "written notice is promptly given." *Id.*

In Delaware, the ethical screen is referred to figuratively as a "cone of silence." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986). And unlike a "Chinese wall," which can be envisioned as a wall constructed by the law firm, the "cone of silence" is "the responsibility of the ***individual*** attorney to guard the secrets of the former client." *Id.* (emphasis in original). Factors considered for an effective ethical screen are: geographical location, size of firm, the depth of representation of the former client, and whether affidavits were submitted by the conflicted attorney stating that the confidential information has not been shared with any attorneys at the firm. *See End of Road Trust v. Terex Corp.*, No. 99-477 (GMS), 2002 WL 242464, at *3 (D. Del. Feb. 20, 2002). In *End of Road Trust*, the court found that the geographical separation between the conflicted attorney located in Miami and the attorneys located in New York representing the adverse client "militate[d] against a finding that confidential information will be shared" and noted that a party seeking disqualification must allege "sufficient facts that would permit the court to find that there is a specific or immediate danger that confidential information will be released." *Id.*

Here, Mr. Rudman has complied with Delaware ethical principles. He is located nearly 3,000 miles from where this case has been litigated, has attested to the fact that he has been timely screened from this litigation, and is adhering to his ethical "cone of silence" by maintaining the confidentiality of the information and documentation that he received in the Delaware derivative litigation. And, because the case law is "virtually unanimous" that an attorney in Mr. Rudman's

1   position is not conflicted, he was not obligated to give prompt notice of an ethical screen as required

2   by Delaware Rule of Professional Conduct 1.10(c).  Defendants have not provided any facts, let

3   alone sufficient facts, "that would permit the court to find that there is a specific or immediate

4   danger that confidential information will be released."  *Id.*

5         Even if Delaware law did not apply to the present situation, plaintiffs have erected an ethical

6   screen of 3,000 miles, which precludes the entire firm from disqualification under California law.

7   Defendants contend that "***no*** California court – or federal court applying California law – has

8   allowed a private firm to use an ethical wall to escape disqualification in a case involving breaches

9   as broad as those here." Defs.' Mem. at 15 (emphasis in original).  Defendants are mistaken.  In

10  *County of Los Angeles*, the Ninth Circuit denied a writ of mandamus on a motion to disqualify an

11  entire private law firm ***because it had erected "timely and effective" screening measures***.  223 F.3d

12  at 992.  The court analyzed the California Supreme Court's *SpeeDee Oil* opinion (*People ex rel.*

13  *Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135 (1999), cited by defendants here,

14  as "sending a signal that the California Supreme Court may well adopt a more flexible approach to

15  vicarious disqualification" and explained the reasons for its decision:

16        The vicarious disqualification of an entire firm can work harsh and unjust
    results, particularly in today's legal world where lawyers change associations more
17  freely than in the past.  A rule that automatically disqualifies a firm in all cases
    substantially related to the tainted lawyer's former representation could work a
18  serious hardship for the lawyer, the firm and the firm's clients. . . .  An automatic
    disqualification rule would make firms understandably more reluctant to hire mid-
19  career lawyers, who would find themselves cast adrift as "Typhoid Marys," and
    clients would find their choice of counsel substantially diminished, particularly in
20  specialized areas of law. Such a rule also raises the specter of abuse: A motion to
    disqualify a law firm can be a powerful litigation tactic to deny an opposing party's
21  counsel of choice.

22  *Id.* at 996.  Importantly, the court's decision did not turn on the fact that the lawyer involved was a

23  former government employee. *Id.*  The 3,000 mile distance between Lead Counsel and Mr. Rudman

24  was, and is, a timely and effective ethical screen.  Combined with Mr. Rudman's declaration that he

25

26

27

28

1    has not shared any information with counsel litigating this case and will continue to adhere to all

2    confidentiality orders, there is simply no chance that confidential information will be shared.[7]

3         **D.    Ms. Langford's Affidavit Demonstrates a Fundamental
                   Misunderstanding of Derivate Actions and Their Relationship to
4                  Direct Actions**

5         To support their attempt to terminate this action through disqualification, defendants hired a

6    local sole practitioner, Carol M. Langford ("Langford"), to give her legal opinion on the applicability

7    of California ethical rules to federal and state securities laws.  Ms. Langford's declaration is flawed

8    in countless ways and demonstrates a fundamental misunderstanding of the law and the facts.  Most

9    troubling is her decided lack of qualifications to give the opinions that she seeks to give.  One need

10   only look at her *curriculum vitae* ("CV") for the glaring omission that she has not had even a single

11   day of practice in securities or derivative litigation, and has not written, analyzed, studied, or even

12   reviewed the effect of ethical rules and principles on state and federal securities laws.  In fact, the

13   closest Ms. Langford comes to having any relevant experience at all is a single year of "general

14   business litigation" as an associate at O'Melveny & Myers and four years of "general business

15   litigation" as an associate at Pillsbury Madison & Sutro.  Given that this experience is grouped with

16   "environmental coverage," "criminal litigation," and "construction litigation," it is safe to conclude

17   that Ms. Langford has no basis in experience to give the opinions that she seeks to give.

18        Ms. Langford's written articles take even more away from her qualifications.  According to

19   her CV, she has written on ethics generally and appears to have studiously avoided a close analysis

20

21   [7]    *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796 (N.D. Cal. 2004) and *Cho v. Superior Court*, 39 Cal. App. 4th 113, 125 (1995), cited by defendants, do not compel a different result.

22   Defs.' Mem. at 14-15.  In both cases, the courts refused to permit an ethical screen because "[n]o amount of assurances or screening procedures, no 'cone of silence,' could ever convince the

23   opposing party that the confidences would not be used to its disadvantage" under the facts presented in those cases.  *See Cho*, 39 Cal. 4th at 122, 125 (ethical screen ineffective where former judge

24   presiding over the action joined defense firm after becoming "privy to the confidences of private parties to the litigation" through mediation); *Concat LP*, 350 F. Supp. 2d at 822 (ethical screen

25   ineffective where law firm obtained client confidences through estate planning representation that could be used against client in a related litigation).  The same cannot be said here since Oracle did

26   not entrust any confidences to Mr. Rudman or plaintiffs' derivative counsel.  In fact, the SLC documents that defendants reference in support of their argument were obtained through the

27   discovery process and have become non-privileged because Oracle used those documents in support of its motion to terminate the derivative action.  *Joy*, 692 F.2d at 893.

28

of ethics as they pertain to the facts and circumstances surrounding securities and derivative litigation. Her CV lists the follow books and articles:

- *Finding A Voice: The Legal Ethics Committee*, Journal for the Institute for the Study of Legal Ethics (Spring 2002);

- *"You're Outta Here!": Proposed Disqualification Standards for Texas Courts*, South Texas Law School Journal (2000);

- *Reflections on Confidentiality – A Practitioner's Response to Spaulding v. Zimmerman*, Hofstra Law Conference Papers, Hofstra Law Review (Spring 1998);

- Textbook Co-author, *Legal Ethics in the Practice of Law*, published 1995 (Michie Company), 2d edition published 2001 (Lexis/Nexis); and

- Co-author, *The Moral Compass of the American Lawyer*, published 1999 (Ballantine Books).

Declaration of Carol M. Langford in Support of the Motion to Disqualify the Firm of Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP ("Langford Decl."), Ex. A. Ms. Langford has no business opining on the ethical issues facing securities and derivative litigation – ***especially when her opinions are entirely contrary to every legal opinion that has addressed this issue over the last 40 years***.[8]

The troubles with Ms. Langford are not limited to her decided lack of qualifications. The flaws extend to her analysis of this case. She has failed to review the numerous opinions addressing this issue (referencing only a single case from the 1970s cited in defendants' papers); she mentions nothing about the "prevailing view" adopted by courts across the country; and she mentions nothing about the minority view and the "theoretical" conflicts that they address. In fact, she totally avoids any explanation of how the practical realities of derivative litigation and class litigation, which is the focal point of every opinion addressing this issue, are consistent or inconsistent with the existing case law and ethical principles.

---

[8]    While plaintiffs have reviewed Ms. Langford's articles, at the time of filing this opposition they have been unable to review the topics addressed in the books that she co-authored. The topics addressed in these books, however, assuredly do not add to Ms. Langford's qualifications given that her declaration does not describe any relevant study or analysis of the potential conflicts raised in derivative and direct litigation. If they did, Ms. Langford would most certainly have said so.

1        Even worse, Ms. Langford gives legal opinions on the relationship between plaintiffs'

2 derivative counsel and the corporation, and bases her opinions on a single case out of the Southern

3 District of New York, saying nothing about Delaware corporate law (where Oracle is incorporated)

4 and nothing about California corporate law (where another derivative case against Oracle is

5 pending). *See* Langford Decl., ¶6 (citing *Hawk Indus., Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619,

6 623-24 (S.D.N.Y. 1973)).  Ms. Langford is simply not qualified to give these opinions.

7        What is more, Ms. Langford is also confused about the facts in this case.  She is flatly wrong

8 on three of the seven assertions supporting her legal opinions and provides no basis for her

9 conclusions in another.  The following is just a sampling of Ms. Langford's confusion:

10

| *Factual Assertion* | *True Statement of Facts* |
|---|---|
| (a)    Mr. Samuel H. Rudman, who has been designated Plaintiffs' Delaware Liaison Counsel acting on behalf of Oracle in the matter of *In re Oracle Corp. Derivative Litigation* in Delaware, merged his firm, as of August 1, 2004, with Lerach Coughlin Stoia & Robbins to form a new firm, in which he also is a name [sic] partner, called Lerach Coughlin Stoia Geller Rudman & Robbins ("Lerach Coughlin"). ¶4(a). | Wrong.  Mr. Rudman's firm merged with Lead Counsel's firm on July 1, 2004.  The merger was announced publicly on June 10, 2004.  Rudman Decl., ¶4, Ex. 1. |
| (b)    Mr. Rudman has not withdrawn from his role as plaintiffs' Delaware Liaison Counsel in the Delaware Chancery Court.  ¶4(b). | Wrong.  Mr. Rudman has filed a motion to withdraw and plaintiffs in that action informed the court on January 27, 2005 that "Mr. Rudman [et al.] . . . have moved to different firms and are no longer associated with or active in the Oracle litigation."  Rudman Decl., ¶9, Exs. 2-5. |
| (c)    Mr. Rudman acquired confidential information during his representation of Oracle in the Delaware derivative litigation, including information learned while participating in highly confidential settlement discussions with Oracle.  Mr. Rudman also had access to privileged and confidential documents filed under seal in the Delaware Chancery Court, including the Report of Oracle's Special Litigation Committee, confidential financial documents, and the work product of other attorneys acting on behalf of Oracle.  ¶4(e). | No basis.  Ms. Langford does not have personal knowledge of the confidential information the derivative lawyers received and describes not a single document or piece of information given during the purported "confidential settlement discussions." |
| (d)    Neither Mr. Rudman nor Lerach Coughlin provided notice to Oracle of the merger of the two law firms nor sought Oracle's written consent to act adverse to Oracle in the class action securities suit in the Northern District of California.  ¶4(f). | Wrong.  Lerach Coughlin filed a Notice of Change of Firm Name with the Court on August 12, 2004, notifying all parties of the merger and had no obligation to seek Oracle's written consent. |

1    The Court should disregard Ms. Langford's opinions.[9]

2    **IV.    CONCLUSION**

3        For all of the foregoing reasons, defendants' motion should be denied.

4    DATED:  March 1, 2005                    Respectfully submitted,

5                                            LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
6                                            WILLIAM S. LERACH
                                            MARK SOLOMON
7                                            DOUGLAS R. BRITTON

8

9                                                    /S/ DOUGLAS R. BRITTON
                                                  DOUGLAS R. BRITTON

10

11                                          401 B Street, Suite 1600
                                            San Diego, CA  92101
12                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)

13                                          LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
14                                          SHAWN A. WILLIAMS
                                            WILLOW E. RADCLIFFE
15                                          ELI R. GREENSTEIN
                                            JENNIE LEE ANDERSON
16                                          MONIQUE C. WINKLER
                                            100 Pine Street, Suite 2600
17                                          San Francisco, CA  94111
                                            Telephone:  415/288-4545
18                                          415/288-4534 (fax)

19                                          Lead Counsel for Plaintiffs

20   S:\CasesSD\Oracle3\BRF00018695.doc

21

22

23   _____

24   [9]     Ironically, Ms. Langford mentions nothing about the true conflict in this case.  In fact, defendants' own authority reveals that Mayer Brown is the firm with actual conflicts.  Defs.' Mem. at 9 (citing *Oracle*, 829 F. Supp. at 1183).  At the same time that Mayer Brown is defending against Oracle's interests in both derivative litigations, from which it has not withdrawn, its lawyers are securing confidential information in the course of representing Oracle here that could be adverse to Oracle's interests in California and Delaware.  By engaging in this simultaneous representation, Mayer Brown fits squarely within the prohibitions on representing adverse interests outlined in California Rule of Professional Conduct 3-310.  *See id*. at 1183.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT ORACLE'S MOTION TO
DISQUALIFY - C-01-0988-MJJ                                          - 18 -

1

<u>DECLARATION OF SERVICE</u>

2   I hereby certify that on March 1, 2005, I electronically filed the foregoing with the Clerk of

3 the Court using the CM/ECF system, which will send notification of such filing to the attorneys

4 denoted on the attached Service List.  I hereby certify that I have caused this document to be mailed

5 by the United States Postal Service and/or faxed to the non-CM/ECF participants listed on the

6 attached Service List.

7   I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st day

8 of March 2005, at San Diego, California.

9

10             /S/ KATHLEEN R. JONES

11              KATHLEEN R. JONES

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **SERVICE LIST**
*In re Oracle Corporation Securities Litigation*

| | |
|---|---|
| Dorian Daley<br>Loren G. Segal<br>500 Oracle Parkway<br>Redwood City, CA  94065<br>Telephone:  650/506-5200<br>650/506-7114 (fax) | Corey D. Holzer<br>HOLZER HOLZER & CANNON LLC<br>1117 Perimeter Center West<br>Suite E-107<br>Atlanta, GA 30338<br>Telephone:  770/392-0090<br>770/392-0029 (fax) |
| Steven O. Kramer<br>Jamie E. Wrage<br>MAYER, BROWN, ROWE & MAW LLP<br>350 South Grand Avenue, 25th Floor<br>Los Angeles, CA  90071-1563<br>Telephone:  213/229-9500<br>213/625-0248 (fax) | Brian P. Murray<br>MURRAY FRANK & SAILER LLP<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>Telephone:  212/682-1818<br>212/682/1892 (fax) |
| Javier H. Rubinstein<br>Alan Norris Salpeter<br>MAYER, BROWN, ROWE & MAW LLP<br>190 South LaSalle Street<br>Chicago, IL  60603-3441<br>Telephone:  312/782-0600<br>312/701-7711 (fax) | |