MAYER, BROWN, ROWE & MAW LLP
Donald M. Falk (SBN 150256)
Lee H. Rubin (SBN 141331)
John C. Kloosterman (SBN 182625)
Shirish Gupta (SBN 205584)
Two Palo Alto Square, Suite 300
Palo Alto, California 94306
Telephone:    (650) 331-2000
Facsimile:    (650) 331-2060
lrubin@mayerbrownrowe.com

MAYER, BROWN, ROWE & MAW LLP
Alan N. Salpeter (admitted *pro hac vice*)
Javier Rubinstein (admitted *pro hac vice*)
Vincent P. Schmeltz III (admitted *pro hac vice*)
190 South LaSalle Street
Chicago, IL  60603-3441
Telephone:    (312) 782-0600
Facsimile:    (312) 701-7711
jrubinstein@mayerbrownrowe.com

Attorneys for Defendant ORACLE CORPORATION

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone:    (650) 506-5200
Facsimile:    (650) 506-7114
jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-0988-MJJ (Consolidated)<br><br>DEFENDANT ORACLE'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY THE FIRM OF LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP.<br><br>**Judge Martin J. Jenkins**<br><br>Hearing Date:  March 22, 2005<br>Hearing Time:  9:30 a.m. |

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

I. LERACH COUGHLIN CONTINUES TO REPRESENT ADVERSE INTERESTS AND SHOULD BE DISQUALIFIED *PER SE* ............................... 2

    A. Lerach Coughlin Represents Oracle in Delaware…………………………2

    B. Lerach Coughlin Is Representing *Adverse* Interests………………………3

    C. Lerach Coughlin's Belated And Ineffective Withdrawal Attempts Acknowledge Its Concurrent *Adverse* Representation ............................. 7

II. LERACH COUGHLIN BOTH PRESUMPTIVELY AND ACTUALLY RECEIVED CONFIDENTIAL ORACLE INFORMATION ............................... 9

III. UNDER CONTROLLING CALIFORNIA LAW, A GEOGRAPHICAL ETHICAL SCREEN IS INEFFECTIVE ............................................................ 11

IV. LERACH COUGHLIN'S ATTACKS ON CAROL LANGFORD ARE BESIDE THE POINT ....................................................................................... 13

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

## CASES

*Broad v. Mannesman Anlagenbau AG*,
    196 F.3d 1075 (9th Cir. 1999) ..................................................................................................12

*City of Santa Barbara v. Superior Court*,
    122 Cal. App. 4th 17 (2004) ......................................................................................................12

*Concat LP v. Unilever, PLC*,
    2004 WL. 2913636 (N.D. Cal. Sept. 7, 2004) ..........................................................................11

*In re County of Los Angeles*,
    223 F.3d 990 (9th Cir. 2000) .....................................................................................................12

*In re Dayco Corporation Securities Litigation*,
    102 F.R.D. 624 (S.D. Ohio 1984) ......................................................................................4, 6, 7

*Dollens v. Zionts*,
    2001 WL. 1543524 (N.D. Ill. Dec. 4, 2001) .........................................................................4, 6

*Elan Transdermal Ltd. V. Cygnus Therapeutic Systems*,
    809 F. Supp. 1383 (N.D. Cal. 1992) ....................................................................................9, 10

*Flatt v. Superior Court*,
    9 Cal. 4th 275 (1994) ................................................................................................................12

*H.F. Ahmanson Co. v. Salomon Brothers, Inc.*,
    229 Cal. App. 3d 1445 (1991) ................................................................................................6, 9

*Hawk Industries v. Bausch & Lomb, Inc.*,
    59 F.R.D. 619 (S.D.N.Y. 1973) ..............................................................................................4, 5

*Heilbrunn v. Hanover Equities Corp.*,
    259 F. Supp. 936 (S.D.N.Y. 1966) ..........................................................................................4, 5

*Henriksen v. Great American Sav. & Loan*,
    11 Cal. App. 4th 109 (1992) .....................................................................................................12

*In re International Systems and Controls Corporation Securities Litigation*,
    693 F.2d 1235 (5th Cir. 1982) ..................................................................................................13

*Jessen v. Hartford Casualty Insurance Co.*,
    111 Cal. App. 4th 698 (2003) .....................................................................................................9

*Kamerman v. Steinberg*,
    113 F.R.D. 511 (S.D.N.Y. 1986) ................................................................................................4

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lee v. State Bar*,
   2 Cal. 3d 927 (1970) ..................................................................................................... 3

*In re Pacific Enterprises Sec. Litigation*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................................ 4

*Paul E. Iacono Structural Engineer, Inc. v. Humphrey*,
   722 F.2d 435 (9th Cir. 1983) ........................................................................................ 10

*People ex rel. Dept. of Corp. v. Speedee Oil Change System Inc.*,
   20 Cal. 4th 1135 (1999) ................................................................................................. 3

*Picker International Inc. v. Varian Associate*,
   869 F.2d 578 (Fed. Cir. 1989) .................................................................................. 8, 11

*In re Rasterops Securities Litigation*,
   19993WL 476651 (N.D. Cal. 1993) ........................................................................... 4, 5

*Robbins v. Alibrandi*,
   ___ Cal. App. 4th ___, 2005 WL 273261 (Mar. 7, 2005) ........................................... 3, 4

*Ruggiero v. American BioCulture, Inc.*,
   56 F.R.D. 93 (S.D.N.Y. 1972) .................................................................................... 4, 5

*Schuster v. Gardner*,
   ___ Cal. App. 4th ___, 2005 WL 487880 (March 3, 2005) ........................................... 3

*Stull v. Baker*,
   410 F. Supp. 1326 (S.D.N.Y. 1976) ........................................................................... 4, 5

*Truck Insurance Exchange v. Fireman's Fund Insurance Co.*,
   6 Cal. App. 4th 1050 (1992) ................................................................................. 3, 6, 8

**RULES**

Civ. L. R. 11-4(a)(1) ........................................................................................................... 11

Del. Ch. Ct. R. 5(aa) ............................................................................................................. 7

**OTHER**

Forbes, October 11, 1993 (1993 WLNR 3319154) ............................................................... 1

*California Practice Guide, Professional Responsibility*, The Rutter Group (Rev. 2004) ...... 12

**INTRODUCTION**

Lerach Coughlin seeks to convince this Court that its representation as Plaintiffs' Delaware Liaison Counsel *on behalf of* Oracle in Delaware is not adverse to its representation of plaintiffs here *against* Oracle, and that any adversity that does result amounts to mere "surface duality." That position presumes that derivative actions are simply a sham in which shareholders' counsel do not truly seek to advance the interests of the corporation they purport to represent. Thus, having gotten into court as self-appointed counsel *for* the company's benefit, plaintiffs' counsel in derivative cases nonetheless would be able, for their own convenience, to characterize themselves as acting *against* the corporation, just as if they had sued the corporation for securities fraud in the first place. Lerach Coughlin's founding partner once claimed, "I have the greatest practice of law in the world. I have no clients." William P. Barrett, *I have no Clients (Attorney William Lerach sues public corporations when their stock prices collapse)*, Forbes, October 11, 1993 (1993 WLNR 3319154). Lerach Coughlin now asks this Court to hold that, in derivative cases, plaintiffs' counsel really do have no clients.

Setting aside the disturbing ethical implications, that position is legally untenable. Counsel for derivative plaintiffs acts as a fiduciary on behalf of the corporation, and owes to that corporate client the same ethical duties that all lawyers owe to their clients. Mr. Rudman *does* have a client (Oracle Corporation) and the ethical rules prohibit him from switching sides in the middle of the litigation by merging his firm with a firm that is suing Oracle for securities fraud.

The actions of Lerach Coughlin and its predecessor, Milberg Weiss, acknowledge the conflict more eloquently than words. Most recently, Mr. Rudman scrambled to withdraw from the Delaware action while operating under a supposed "cone of silence" in the firm. Milberg Weiss earlier withdrew from the Delaware derivative case to sidestep a conflict accusation, and purported to erect an "ethical screen" for Mr. Coates, another former Cauley Geller lawyer.

Having recognized by its actions that a conflict exists, Lerach Coughlin tries to characterize the conflict away. Lerach Coughlin does not dispute that a breach of the duty of loyalty to a client through the unconsented, simultaneous representation of adverse interests disqualifies counsel *per se*. Instead, Lerach Coughlin suggests that the duty of loyalty does not

1  even arise unless the attorney also received confidential information. But that is wrong. Mr.
2  Rudman's duty of loyalty to his client, Oracle, exists regardless of the exchange of confidential
3  information. As for the other ethical duty at issue here — the duty of confidentiality — Lerach
4  Coughlin does not dispute that successive adverse representation in substantially related actions
5  gives rise to a conclusive presumption that client confidences were shared. Nor does it dispute
6  that, in the normal course, this breach of the duty of confidentiality alone disqualifies both Mr.
7  Rudman and, by imputation, Lerach Coughlin, from further representation. Here, the
8  presumption gilds the lily: Mr. Rudman admittedly was exposed to an extensive amount of
9  *actual* confidential information, including the SLC report, which (contrary to Lerach Coughlin's
10 assertions) *remains* confidential and sealed by the Delaware court to this day. Further, Lerach
11 Coughlin can marshal no authority allowing it to continue its representation by placing an
12 imaginary "3,000 mile ethical screen" around Mr. Rudman.

13 In short, Lerach Coughlin offers no sound basis to avoid the *per se* disqualification that
14 California law requires. Oracle respectfully requests that this Court enter an order disqualifying
15 the Lerach Coughlin law firm from further representation of Plaintiffs in this action.

**I.    LERACH COUGHLIN CONTINUES TO REPRESENT ADVERSE INTERESTS AND SHOULD BE DISQUALIFIED *PER SE*.**

Lerach Coughlin does not dispute that the California Rules of Professional Conduct prohibit *both* simultaneous representation of adverse interests *and* successive adverse representation in substantially related actions. It is also undisputed that Lerach Coughlin attorneys have been acting simultaneously as Plaintiffs' Delaware Liaison Counsel *on behalf of* Oracle in the shareholder derivative litigation while proceeding *against* Oracle in this case. Lerach Coughlin nonetheless insists that there is no actual conflict between these two representations. That is wrong as a matter of fact and law.

**A.    Lerach Coughlin Represents Oracle in Delaware.**

Lerach Coughlin claims that its self-appointed representation of Oracle's interests in Delaware created no attorney-client relationship with Oracle, noting that Oracle cites "a few cases that stand for nothing more than the unremarkable proposition that the corporation is the

1  beneficiary in a derivative suit." Opp. 7 n. 4. But that is precisely the point. Where the
2  corporation is the beneficiary of the lawsuit, counsel is acting *on behalf of* the corporation for its
3  benefit and, thus, owes to it the fiduciary duties inherent in any other legal representation,
4  including the duties of loyalty and confidentiality. *See e.g., Lee v. State Bar*, 2 Cal. 3d 927, 939
5  (1970); Langford Decl. ¶ 7. The California Court of Appeal reiterated only yesterday that,
6  "because of the nature of derivative actions, [the corporation] is in effect the real plaintiff in
7  interest." *Robbins v. Alibrandi*, __ Cal. App. 4th __, 2005 WL 273261, at *1 (Mar. 7, 2005). As
8  a consequence, the court held, "the plaintiffs' attorneys owe an ethical and fiduciary duty *to their*
9  *clients* — the shareholders and through them to *the corporation itself*." *Id.*

10  Confusing the duty of loyalty with the separate and distinct duty to protect client
11  confidences, Lerach Coughlin asserts that "there are no confidential communications with
12  derivative counsel that would invoke Rule 3-310." Opp. 7 & n.4. But it is the adverse
13  representation itself — not specific exchanges of confidential information — that triggers *per se*
14  disqualification. *See e.g., People ex rel. Dept. of Corp. v. Speedee Oil Change Sys. Inc.*, 20 Cal.
15  4th 1135, 1139 (1999); *Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050,
16  1057 (1992). Moreover, as explained in detail below (at pp. 10-11), Lerach Coughlin does not
17  dispute that Mr. Rudman received several types of confidential information that was accessible
18  to him only because of his derivative representation of Oracle in the Delaware case, claiming
19  only (incorrectly) that one sealed document was in fact public.

20  **B.  Lerach Coughlin Is Representing *Adverse* Interests.**

21  Lerach Coughlin also insists that its representation *on behalf of* Oracle in Delaware is not
22  adverse to its representation *against* Oracle here, labeling the conflict a mere "surface duality."
23  Opp. 9. This argument calls into question the basis for the derivative action itself. As the
24  California Court of Appeal recently re-emphasized, a derivative action is brought "on behalf of"
25  the corporation and for "injury to the corporation," and consequently is "mutually exclusive"
26  with a direct securities action. *Schuster v. Gardner*, ___ Cal. App. 4th ___, 2005 WL 487880, at
27  *3 (March 3, 2005) (internal quotation marks and citations omitted). Lerach Coughlin's
28

1  argument presupposes that counsel for plaintiffs in a derivative suit is not acting in the best
2  interest of the corporation and thus avoids the duties of a fiduciary of the corporation, all while
3  asserting the right to press for a recovery that must go only to the corporation.  However
4  convenient that view might be for Lerach Coughlin and its predecessors, it is *not* the law.
5  Rather, derivative plaintiffs' counsel owes "an ethical and fiduciary duty * * * to the corporation
6  itself."  *Robbins*, 2005 WL 273261, at *1.  For that reason, the Ninth Circuit has specifically
7  expressed its concern "about the potential conflicts created by * * * Milberg, Weiss's dual
8  representation of derivative and securities plaintiffs."  *In re Pacific Enterprises Sec. Litig.*, 47
9  F.3d 373, 378 (9th Cir. 1995).

10  Lerach Coughlin repeatedly makes the astonishing claim that case law is "virtually
11  unanimous" sanctioning its ethically conflicted representations.  See Opp. 9, 12, fn. 6, and 13.
12  Not true — as the numerous cases cited and discussed in Oracle's moving papers demonstrate.
13  Mem. 9-10.  The cases cited by Lerach Coughlin nearly all follow *Heilbrunn v. Hanover Equities*
14  *Corp.*, 259 F. Supp. 936 (S.D.N.Y. 1966), a decision that antedates common use of the implied
15  private cause of action for securities fraud under Section 10(b) and that has not been followed in
16  the Southern District of New York, where it was decided.  *See, e.g., Kamerman v. Steinberg*, 113
17  F.R.D. 511, 516 (S.D.N.Y. 1986) (recognizing impermissible conflict of interest); *Stull v. Baker*,
18  410 F. Supp. 1326, 336-37 (S.D.N.Y. 1976) (recognizing conflict and effect on the attorney's
19  ability to maintain duty of loyalty); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 95-96
20  (S.D.N.Y. 1972) (holding that counsel for the derivative action "for the benefit of BioCulture"
21  could not also act as counsel for the class of plaintiffs suing Bioculture under Rule 10(b)-5));
22  *Hawk Industries, Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619, 624 (S.D.N.Y. 1973)
23  (disqualifying derivative counsel *on behalf of* Bausch & Lomb from acting as counsel for the
24  class *suing* Bausch & Lomb).

25  These decisions turned away from *Heilbrunn* with good reason.  *Heilbrunn* — like the
26  three later decisions on which Lerach Coughlin relies most heavily (*In re Rasterops Securities*
27  *Litigation*, No. C92-20115, 1993 WL 476651 at *7-8 (N.D. Cal. 1993) (unpublished disposition);
28

4

**REPLY IN SUPPORT OF MOTION TO DISQUALIFY - CASE NO: C-01-0988-MJJ**

1  *In re Dayco Corporation Securities Litigation*, 102 F.R.D. 624 (S.D. Ohio 1984); and *Dollens v.*
2  *Zionts*, No. 01C593, 2001 WL 1543524 at *3 (N.D. Ill. 2001) (unpublished disposition)) —
3  cannot be reconciled with the legal underpinnings of the derivative action itself.  A successful
4  derivative action results in payment to the corporation — not to individual shareholder-plaintiffs
5  — while securities class actions seek a judgment against the corporation.  Lerach Coughlin now
6  pooh-poohs the stark conflict between seeking payment for a company and seeking to make the
7  company make payments to others for the same events, but that conflict caused its predecessor,
8  the Milberg Weiss firm, to withdraw from simultaneously representing the Plaintiffs in this
9  securities action and shareholders purporting to act on behalf of Oracle in the derivative actions.
10  Mem. 3-4; Rubinstein Decl., Exhs. D, E, and F.

11  Moreover, *Heilbrunn* did not even address the ethical responsibilities of counsel.  Rather,
12  that court considered whether the same *plaintiff* — not the plaintiff's lawyer — could
13  simultaneously bring a derivative claim and a direct securities claim, categorizing the two claims
14  as a mere "inconsistency in pleading." 259 F. Supp. at 939.  The unpublished magistrate judge's
15  order in *Rasterops* likewise held only that a plaintiff can bring simultaneous derivative and
16  securities cases.  1993 WL 476651 at *7-8.  The courts in *Heilbrunn* and *Rasterops* did not even
17  consider the question of legal ethics raised here, as neither case involved attorneys' duties.
18  Rather, each concerned only the causes of action available to particular shareholder-plaintiffs.
19  Unlike lawyers admitted to practice before this Court, individual plaintiffs do not operate under
20  the ethical restrictions and duties of the California Rules of Professional Responsibility.  Lerach
21  Coughlin cannot avoid the consequences of its ethical violations by contending that its conduct
22  would be acceptable for a plaintiff, even if not for an attorney.

23  By contrast, the post-*Heilbrunn* cases cited in the moving papers both identified and
24  condemned the divided loyalties at issue here:

> it is difficult to understand how an attorney can properly represent
> the interests of a corporation and its present shareholders in a
> derivative action brought on their behalf, and, at one and the same
> time, properly represent its present and/or former shareholders in a
> class action against the corporation, without compromising his

5

> independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests.

*Stull,* 410 F. Supp. at 1337*; see also Ruggiero*, 56 F.R.D. at 95-96; *Hawk Industries*, 59 F.R.D. at 624.

Lerach Coughlin's reliance on the *Dayco* and *Dollens* decisions also is misplaced. In *Dayco*, the conflicted lawyer withdrew from the conflicted representation, a tactic that might be sufficient in other jurisdictions but that cannot cure a breach of the duty of loyalty under California law. *See Truck Ins.*, 6 Cal. App. 4th at 1057. The court recognized that the lawyers for the derivative plaintiffs seeking to recover on behalf of Dayco were "in effect, representing Dayco itself in the federal derivative suit." *Dayco*, 102 F.R.D. at 629-630. Although the *Dayco* court brushed the conflict aside under "the circumstances of this particular case," it allowed the lawyer in question to continue to represent the corporation in the derivative suit *only* after acknowledging that no confidential information was at issue (which is not the case here), and warning that "[s]hould the[] circumstances materially change, the Court stands ready to reconsider its decision." *Id.* at 632. The *Dollens* court likewise allowed the dual representation to proceed only where counsel had withdrawn from the securities class action and the plaintiffs consented to the representation — again, a withdrawal that *cannot* cure a breach of the duty of loyalty in California. 2001 WL 1543524 at *2-3; *see Truck Ins. Exchange*, 6 Cal. App. 4th at 1057.

Moreover, the *Dollens* court misunderstood how derivative actions work, stating that "recovery is the same, and the shareholders benefit from either result." 2001 WL 1543524 at *3. But it is *different* shareholders who benefit:  while current shareholders benefit from the corporation's *receiving* the recovery in a derivative action, their interests suffer when the corporation must *pay* any recovery in a securities case to a subset of former and current shareholders who traded at a particular time. The interests of these different sets of plaintiffs are not "aligned" at all (Opp. 10), since the securities lawsuit aims to force one set of shareholders indirectly to pay off another set.

6

Finally, none of Lerach Coughlin's authorities involved a situation where, as here, counsel received access to confidential and privileged corporate information. Lerach Coughlin's reliance on the *Dayco* court's abstract discussion of whether counsel "violated a protective order," 102 F.R.D. at 632, is irrelevant. Opp. 8. While the *Dayco* court did not decide whether client confidences were presumptively received, *see id.* at 629, California law *conclusively presumes* shared confidences in substantially related actions. *See H.F. Ahmanson Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445, 1455. Moreover, in this case, where *actual* confidential information has changed hands, the conflict is not theoretical. This case illustrates how "the potential conflict of interest ripens into an actual conflict," and therefore requires "a different result" than the one in *Dayco.* 102 F.R.D. at 630. The conflict here is undeniable.[1]

### C. Lerach Coughlin's Belated And Ineffective Withdrawal Attempts Acknowledge Its Concurrent *Adverse* Representation.

Lerach Coughlin repeatedly claims that Samuel Rudman has withdrawn from the Delaware derivative action, but that purported withdrawal is too little, too late. While Rudman's and Lerach Coughlin's belated maneuvering shows that they recognize the present conflict of interest, their tactic of eleventh-hour withdrawal has been unanimously rejected.

Contrary to Lerach Coughlin's assertions, Rudman has not withdrawn at all. As explained in the moving papers (Mem. 11), a lawyer can withdraw from a representation only "on written motion and order of the Court." Del. Ch. Ct. R. 5(aa). To date, no such order has been entered. As a result, while Lerach Coughlin insists that Mr. Rudman tried to withdraw three different ways within the last two months — *after* Oracle discovered Lerach Coughlin's grave conflict of interest — these purported withdrawals were legally ineffective.

First, Lerach Coughlin points to an Annual Pro Hac Vice Renewal form filed with the Supreme Court of Delaware on January 27, 2005 by Robert D. Goldberg, one of plaintiffs' derivative counsel, informing the court in a handwritten note that Mr. Rudman had moved to a

---

[1] The current status of the Delaware case on appeal to the Delaware Supreme Court does not magically resolve the conflict. Much less does the appeal undo the conclusive presumption of shared confidences or render irrelevant the actual confidential information currently in Rudman's possession.

7

1  different firm.  This renewal form, submitted solely for administrative purposes, is certainly *not*
2  an order allowing Mr. Rudman's withdrawal.  Lerach Coughlin also suggests that this renewal
3  was provided *when Mr. Rudman joined Lerach Coughlin* and that Oracle received notice of this
4  renewal.  *See* Opp. 3 ("As defendants well know, when Mr. Rudman joined Lerach Coughlin,
5  plaintiff's derivative counsel in Delaware notified the Delaware court that he was no longer
6  active in the derivative litigation").  But Exhibit 2 to the Rudman Declaration shows that the
7  renewal was signed on January 27, 2005, long after Mr. Rudman joined Lerach Coughlin and a
8  day after Oracle discovered the conflict of interest.  *See* Rubinstein Decl. ¶ 9.

9  Second, and a month later, Mr. Goldberg filed Notices of Substitution of Counsel in the
10  Supreme Court of Delaware and in the Delaware Court of Chancery.  But these mere Notices are
11  equally ineffective under Rule 5(aa), which requires a formal motion and court order.

12  Third, on March 1, 2005, the *same* day Lerach Coughlin filed its opposition to the present
13  motion, Mr. Rudman filed a Motion to Withdraw As Counsel in the Delaware Supreme Court.
14  By letter dated March 4, 2005, the Delaware Supreme Court asserted that it would "take no
15  action" on Mr. Rudman's motion. Rubin Decl., Exh. A.  Mr. Rudman thus has not withdrawn
16  from his conflicting representation.  That failure is enough to disqualify him and his new law
17  firm.  The Federal Circuit affirmed an order disqualifying Jones, Day, Reavis & Pogue after it
18  merged with another law firm, in part on the ground that the firm had not perfected its
19  withdrawal from representation because it did not seek or obtain a withdrawal order from the
20  court as required by Northern District local rules.  *See Picker Int'l Inc., v. Varian Assoc.*, 869
21  F.2d 578, 582 (Fed. Cir. 1989).  The identical situation here mandates an identical result.

22  In any event, Mr. Rudman's last-ditch efforts to withdraw from the Delaware action
23  cannot forestall disqualification under California law.  In fact, under the "hot potato" principle,
24  the attempted withdrawal is itself a breach of the duty of loyalty and will not cure the conflict.
25  "[A] law firm that knowingly undertakes adverse concurrent representation may not avoid
26  disqualification by withdrawing from the representation of the less-favored client before [the
27  disqualification] hearing."  *Truck Ins. Exchange*, 6 Cal. App. 4th at 1057; *see also Picker*, 869

28

8

**REPLY IN SUPPORT OF MOTION TO DISQUALIFY - CASE NO: C-01-0988-MJJ**

F.2d at 583 ("To allow the merged firm to pick and choose which clients will survive the merger would violate the duty of undivided loyalty that the firms owe each of their clients"). Disqualification is necessary whether or not Mr. Rudman ultimately withdraws.

## II. LERACH COUGHLIN BOTH PRESUMPTIVELY AND ACTUALLY RECEIVED CONFIDENTIAL ORACLE INFORMATION.

Related to its effort to withdraw from the Delaware representation in order to characterize that representation as "former" rather than current, Lerach Coughlin has tried to extricate itself from the disqualification that nonetheless would apply to its successive adverse representations. But California courts have consistently rejected Lerach Coughlin's tactic of submitting a declaration from Samuel Rudman asserting that he did not disclose confidential information he received in the Delaware derivative litigation to the Lerach Coughlin lawyers litigating this securities class action. Rudman Decl. ¶ 7; *see Elan Transdermal Ltd. v. Cygnus Therapeutic Systems*, 809 F. Supp. 1383, 1389-1390 (N.D. Cal. 1992) (Orrick, J.). The California courts developed the substantial relationship test and its conclusive presumption of the sharing of confidential information — a presumption that Lerach Coughlin ignores — precisely to avoid a "swearing match" over the disclosure of confidential information. *Id.* at 1392. In cases of successive representation, once a substantial relationship is found, an "irrebuttable presumption, grounded in common sense and the need to protect the fiduciary nature of the attorney-client relationship," of shared confidences arises. *Id*. "[T]o allow this presumption to be rebutted by declarations of self-interested parties, the rebuttal evidence that would inevitably be put forward in every case of this sort, would raise a strong sense of impropriety." *Id.* at 1390.

California courts have repeatedly reaffirmed this rule. *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 706 (2003) (disqualification is "mandatory") (quoting *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 283 (1994), and collecting authorities)). While protesting (incorrectly) that the issues raised in the derivative actions are "much narrower" than those in this case and involve "different defendants" (Opp. 4), Lerach Coughlin cannot seriously deny that the derivative

9

1 actions and the securities class action before this Court are "substantially related," as review of
2 the complaints in both actions easily confirms. *See H.F. Ahmanson Co.*, 229 Cal. App. 3d at
3 1455.[2]

4       While the presumption of shared confidences is sufficient to require disqualification, the
5 presumption merely reinforces the undisputed fact that Lerach Coughlin possesses *actual*
6 confidential information from the Delaware action. Oracle's moving papers explained that Mr.
7 Rudman had access to a wide array of confidential information. *See* Mem. 2, 5, 14; Rubinstein
8 Decl. ¶¶ 3-7. Lerach Coughlin does not dispute Mr. Rudman's confidential communications
9 with the other derivative plaintiffs' attorneys purporting to act on behalf of Oracle, or his
10 participation in confidential settlement negotiations. *See* Mem. 2, 5, 14; Rubinstein Decl. ¶¶ 3-7.

11       While those communications suffice for disqualification, Lerach Coughlin contests only
12 the significance of the SLC Report, asserting that it is not privileged or confidential. But the
13 language they quote (Opp. 2) from a Delaware hearing in fact reflects something quite different:
14 the SLC waived its privilege as to the report only as to plaintiffs' counsel in the Delaware
15 derivative action — who were *purporting to represent* Oracle. The SLC Report and supporting
16 confidential documents were never released for public review; rather, they were sealed by the
17 Chancery Court, and remain sealed to this day.[3]  Rubinstein Decl. ¶ 7, Exhs. L and M. Mr.
18 Rudman received access to this confidential Oracle information only *because* he represented
19 Oracle, not despite the relationship. That representation once inured to his benefit, giving him
20 access to information he otherwise could not have had. Now it disqualifies his firm from
21 continuing representation here.

---

[2] Lerach Coughlin's attempt to distinguish *H.F. Ahmanson* makes no sense. Lerach states that in *Ahmanson* "the court refused to disqualify Wachtel Lipton because it had not received any confidences that were relevant to the litigation from which plaintiffs were seeking disqualification" and held that legal advice given during a board meeting was not privileged because outsiders were present. *See* Opp. at 9. There is no doubt that Mr. Rudman received confidences relevant to *this* litigation precisely because of his privileged position as an attorney purporting to represent Oracle's interests in Delaware.

[3] At a hearing on March 1, 2005, Magistrate Judge Spero specifically declined to order Oracle to produce the SLC Report but granted Plaintiffs leave to bring a motion to compel production of the report.

1  Indeed, Lerach Coughlin's position regarding the SLC Report further underscores the hopeless conflict of interest. While Mr. Rudman asserts that he has complied "with all protective orders" in the Delaware derivative action (Rudman Decl. ¶ 7), his law firm packages that declaration with an argument that the SLC Report is not confidential at all despite its sealing pursuant to one of those orders (Opp. 2). Notwithstanding his duty of confidentiality, Mr. Rudman plainly stands ready to sacrifice Oracle's confidences to serve the interests of Plaintiffs here.

As Lerach Coughlin does not dispute, "knowledge obtained by one member of a firm of lawyers is imputed to all the other members," a presumption that is "conclusive" and "irrebutable." *Elan*, 809 F. Supp at 1389; see also *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 442 (9th Cir. 1983) (reiterating that an entire firm must be disqualified "when one of its members was counsel for an adverse party in a substantially related matter."); Mem. 13. The actual receipt of confidential information merely reinforces Lerach Coughlin's per se disqualification under California law for violating fiduciary duties both of loyalty and confidentiality. It does not matter whether Lerach Coughlin is viewed as Oracle's current or former counsel in the derivative litigation.

**III. UNDER CONTROLLING CALIFORNIA LAW, A GEOGRAPHICAL ETHICAL SCREEN IS INEFFECTIVE.**

Lerach Coughlin apparently knew that its lawyers' derivative representation of Oracle presented a conflict because the firm claims to have erected an ethical screen for another former Cauley Geller attorney (who had *less* involvement in the Oracle derivative case), along with an undefined "cone of silence" (Opp. 13) for Mr. Rudman himself. None of this would make sense if there were no conflict at all, as Lerach Coughlin now insists in this Court. Lerach Coughlin's fallback position is equally meritless: it cannot avoid disqualification by erecting a geographical screen, which it claims to be effective under Delaware law. Indeed, this argument is a red herring in several respects.

11

1    To begin with, Oracle's disqualification motion is governed by California law.[4]  Oracle
2 seeks to disqualify Lerach Coughlin, a California firm, from further participation in *this* action,
3 in *this* Court, and in *this* state — California.  There is no doubt that attorneys appearing before
4 this Court must "comply with the standards of professional conduct required of the members of
5 the State Bar of California," Civ. L. R. 11-4(a)(1), and, accordingly, California law is applied in
6 a motion to disqualify on ethical grounds. *See Concat LP v. Unilever*, PLC, No. C04-1396, 2004
7 WL 2913636, at *15 (N.D. Cal. Sept. 7, 2004).

8    Under California law, where an actual conflict of interest exists, "there simply was no
9 gray area; * * * the entire firm must be vicariously disqualified even if [the attorney] has been
10 ethically screened from day one." *Henriksen v. Great American Savings & Loan*, 11 Cal. App.
11 4th 109, 116 (1992).  Lerach Coughlin has not cited a single contrary case, advancing only a
12 specious argument (Opp. at 14) that the Ninth Circuit somehow altered this California rule in
13 deciding *In re County of Los Angeles*, 223 F.3d 990 (9th Cir. 2000).[5]  Neither that case nor any
14 other decision cited by Lerach Coughlin involves an analogous situation where the same law
15 firm represents, simultaneously or successively, opposite sides in substantially related matters.
16 Lerach Coughlin is not facing disqualification because it hired a lawyer who worked at a firm
17 that previously represented Oracle.  Rather, Mr. Rudman *himself* represents Oracle in a near-
18 identical action and has merged his entire law firm with Plaintiffs' counsel here.  No California

---

[4] As Oracle noted in its moving papers (Mem. 7 n. 4), California enforces several ethical rules more stringently than other jurisdictions.  For example, Model Code Disciplinary Rule 5-105 also prohibits concurrent adverse representation but, unlike California, does not mandate *per se* disqualification. *See Picker*, 869 F.2d at 581 (applying Model Code).

[5] *County of Los Angeles* was a police brutality case in which the plaintiffs' lawyer's partner was a former magistrate judge who had acted as a settlement judge in an unrelated, yet similar, case involving one of the same police officers. The Ninth Circuit held that disqualification was not necessary on that particular set of facts — unsurprisingly, as California precedent permits ethical screening in limited  circumstances when a conflict arises from a lawyer's former *government* service.  *See e.g., City of Santa Barbara v.  Superior Court*, 122 Cal. App. 4th 17, 24 (2004).  If the Ninth Circuit wanted to extend its holding beyond this unique set of facts, it likely would have certified the issue to the California Supreme Court.  *Broad v. Mannesman Anlagenbau AG*, 196 F.3d 1075 (9th Cir. 1999) (existence of important state law question warranted certification to Washington Supreme Court).

1  court, or federal court applying California law, *ever* has relaxed the rule prohibiting ethical
2  screens under these circumstances. This Court should not be the first.

3  In any event, Lerach Coughlin does not even claim to have erected a formal ethical
4  screen. Instead, Lerach Coughlin asserts (Opp. 14) that it has "erected an ethical screen of 3,000
5  miles" (presumably referring to Mr. Rudman's location in the firm's New York office). But this
6  is of no import. Not only are these geographic distinctions irrelevant in light of the conclusive
7  presumption of shared confidences, but California has specifically rejected mere geography as a
8  basis for avoiding disqualification. *See Flatt*, 9 Cal. App. 4th at 286 (citing with approval federal
9  case law so holding); *see also California Practice Guide, Professional Responsibility*, The Rutter
10 Group at 4:34(2) (Rev. 2004) (noting that geographic location is immaterial). Lerach Coughlin's
11 assertion that there is "no chance that confidential information will be shared" given "the 3,000
12 mile distance" is as irrelevant as "Mr. Rudman's declaration that he has not shared any
13 information with counsel litigating this case." Opp. 14-15. California law conclusively
14 presumes shared confidences in this situation, and settled law renders ethical screens inadequate
15 to cure the resulting conflict.

16 **IV.   LERACH COUGHLIN'S ATTACKS ON CAROL LANGFORD ARE BESIDE THE POINT.**
17
18 Unable to dispute the substance of Carol Langford's expert opinion — an opinion that
19 Oracle sought in order to confirm, before filing this motion, that Lerach Coughlin has indeed
20 violated California's Rules of Professional Conduct — Lerach Coughlin attacks Ms. Langford
21 herself, contending primarily that she does not have specific experience involving the application
22 of ethics rules to derivative or securities cases. There is, however, no special set of ethics rules
23 for counsel in derivative actions and securities lawsuits. Counsel involved in every action,
24 derivative or otherwise, are held to the *same* high ethical standards demanded of all attorneys
25 practicing in California, a set of standards with which Ms. Langford has extensive experience.
26 An adjunct professor at two California law schools, Ms. Langford not only acts as a consultant
27 to the Judicial Council, but also served as the former chair of both the State Bar Committee on
28 Professional Responsibility and Conduct and the Ethics Committee of the American Bar

1  Association's Intellectual Property Section. *See* Langford Decl., Exh. A. There can be no
2  serious question that she qualifies as an expert on California's ethics rules.

3        Lerach Coughlin then claims that Ms. Langford's opinions are "entirely contrary to every
4  legal opinion that has addressed the issue over the last 40 years." Opp. 16. As explained above
5  (at pp. 4-6), that is nonsense.[6]

6        Finally, Lerach Coughlin resorts to an argument that Ms. Langford was "wrong" on four
7  factual assumptions. But it is Lerach Coughlin that is mistaken, and on all counts.

8        First, Lerach Coughlin asserts that Ms. Langford is "wrong" because she states that Mr.
9  Rudman merged his firm into Lerach Coughlin on August 1, 2004, when the true date was July
10 1, 2004. But Lerach Caughlin's *own* press release on its *own* website included in its *own*
11 declaration of Mr. Rudman states that the firms were merged effective August 1, 2004. *See*
12 Rudman Decl., Exh. 1; Rubinstein Decl., Exh. N.

13       Second, Lerach Coughlin takes Ms. Langford to task for assuming that Mr. Rudman has
14 not withdrawn from his role as Plaintiffs' Delaware Liaison Counsel. But Mr. Rudman did not
15 even *file* a motion to withdraw until March 1, 2005, more than two weeks after Ms. Langford
16 signed her declaration. That motion has not been granted, and Rudman *remains* in the Delaware
17 action to this day — just as Ms. Langford said.

18       Third, Lerach Coughlin complains that Ms. Langford has no personal knowledge that Mr.
19 Rudman possesses actual confidential information. But she never said she did. *See* Langford
20 Decl. ¶ 4 (identifying her sources of information). Indeed, in light of California's conclusive
21 presumption of shared confidences, her personal knowledge on this point is irrelevant.

22       Fourth, Ms. Langford was hardly "wrong" that Lerach Coughlin did not seek Oracle's
23 consent to this conflicted representation; Lerach Coughlin does not contend that it *did* ask for

---

[6] Lerach Coughlin also cites *In re International Systems and Controls Corporation Securities Litigation*, 693 F.2d 1235, 1239 (5th Cir. 1982), but this case deals with the work product privilege as it applies between shareholders and management and has nothing to do with the disqualifiable conflict of interest at issue here.

14

1  Oracle's consent. Instead, Lerach Coughlin proceeded to violate its fiduciary obligations of
2  loyalty and confidentiality without bothering to ask Oracle.

3        Finally, in a footnote, Lerach Coughlin asserts that Langford was somehow wrong in
4  failing to comment on a purported conflict of interest involving Mayer Brown. Unlike Lerach
5  Coughlin, however, Mayer Brown represents Oracle with full informed and written consent.
6  Indeed, Oracle has been aware of the Mayer Brown relationship since it began, and retained
7  separate counsel in the derivative litigation both for the company and for its Special Litigation
8  Committee. The Mayer Brown relationship raised no issue requiring Langford's comment. By
9  contrast, Lerach Coughlin and its predecessors foisted their representation upon Oracle, merged
10 their practice into the Lerach Coughlin firm without notifying Oracle that they had switched
11 sides, and now try to avoid the consequences simply because the lawyers involved found it in
12 their personal interests to change firm affiliations. That situation unsurprisingly occupied
13 Langford's attention.

## CONCLUSION

15     For the reasons set forth above, and in Oracle's opening memorandum, the firm of Lerach
16 Couglin Stoia Geller Rudman & Robbins LLP should be disqualified.

**Dated: March 8, 2005**　　　　　　　　　**MAYER, BROWN ROWE & MAW LLP**

By:　/s/ Lee H. Rubin
　　　Lee H. Rubin
Attorneys for Defendant Oracle Corporation

15