

**LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

March 23, 2005



The Honorable Martin J. Jenkins
Judge of the United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *In re Oracle Corp. Sec. Litigation,* Master File No. C-01-0988-MJJ (JCS)

Dear Judge Jenkins:

Plaintiffs seek resolution of three discovery issues set forth in detail below that the parties have been unable to resolve informally despite several efforts to meet and confer.

**Rule 30(b)(6) Depositions:** On December 15, 2004, plaintiffs served their Notice of Deposition of Oracle Corporation Pursuant to Federal Rule of Civil Procedure 30(b)(6) relating to Suite 11i. Exhibit A. On March 10, 2005, Magistrate Judge Joseph C. Spero ordered production of categories of discovery relating to Oracle Corp.'s ("Oracle") products, including the 11i Suite of software products. *See* Amended Order Setting a Discovery Plan ("Order") at 2 (Exhibit B). These categories include information "regarding any lost or deferred sales of any Oracle product, as well as any material expense with respect to any Oracle product – such as refunds, rebates or remediation." Order at 2 (Exhibit B). As Judge Spero clarified, these six Suite 11i categories are to guide both the production of documents and plaintiffs' Rule 30(b)(6) depositions and thus entitle plaintiffs to Rule 30(b)(6) depositions with respect to *each* of those categories. *See* Excerpts of March 1, 2005 Transcript of Proceedings at 87-88 (Exhibit C).

Despite these clear directions from the Court, defendants indicate they will produce a Rule 30(b)(6) deponent to address *only* technical issues relating to Suite 11i, and refuse to designate a witness to testify regarding lost or deferred sales and material expenses. In an attempt to justify their disregard for the Court's Orders, defendants argue that the Court's designated deposition topics are not appropriate for 30(b)(6) testimony.

However, it is the Court, through its Orders and the Federal Rules of Civil Procedure, not the defendants, that dictate the scope of discovery which plaintiffs are entitled to, and here both require defendants to designate and produce one or more witnesses prepared to testify regarding subject matters known or reasonably available to the organization. Fed. R. Civ. P. 30(b)(6). Defendants cannot evade their discovery obligations by claiming that no one person at Oracle is presently knowledgeable about the lost or deferred sales of Oracle products and material expenses described in the Court's Order. *See, e.g., United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C. 1996) (the entity must prepare a representative to testify regarding the designated topics at the deposition). Moreover, the Court provided defendants with an additional *six weeks* from the March 1, 2005 hearing to designate and prepare such witnesses. Thus, plaintiffs request that the Court put an end to



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

The Honorable Martin J. Jenkins

the delays and compel compliance with the March 10, 2005 Order and the Federal Rules of Civil Procedure.

**Interrogatory Responses:**   On January 10, 2005, plaintiffs served their First Set of Interrogatories. To date, defendants have failed to adequately respond to Interrogatory Nos. 4, 6, 8, 9, 10, 11, 12, and 13, indicating only that their investigation is ongoing and they will supplement their responses later. *See* Excerpts of Defendants' Responses to First Set of Interrogatories (Exhibit D). Plaintiffs have yet to receive assurances that substantive and complete responses are forthcoming, however. Given that 72 days have already elapsed, adequate responses must be had now.[1] The Interrogatories are straightforward and unobjectionable. *See* Interrogatory No. 4 ("Identify each of the 'very, very large deals [that] didn't sign' referenced by you in the March 15, 2001 third quarter financial results conference call."); Interrogatory No. 8 ("Identify each of the 83 customers you stated were 'live' on 11i as of December 14, 2000."). Plaintiffs are entitled to timely and adequate responses to these Interrogatories, and therefore ask the Court to compel complete and adequate responses to the aforementioned Interrogatories without additional delay.[2]

**Confidential Witnesses ("CWs"):**   Finally, on March 21, 2005, plaintiffs produced documents in response to defendants' discovery, along with a source log for those documents, as required by the Court. *See* Order at 3-4 (Exhibit B). Among the documents produced were documents received from a CW not identified in the revised second amended complaint, but identified in plaintiffs' source log. Plaintiffs have asked defendants for assurances that the protections set forth in Judge Spero's Order apply to the CW identified in their source log. However, defendants have not responded. Because affording equal protection to the CW identified in plaintiffs' source log will not hinder defendants' ability to defend their case and will further the Court's policy goal to protect such individuals from possible retaliation and harassment, plaintiffs respectfully request an Order affording the CW identified in plaintiffs' log the same protections under the Order. *See* Order at 9 (Exhibit B).

Respectfully submitted,

Shawn A. Williams

---

[1]     At 5:30 p.m. on March 23, 2005, defendants called plaintiffs and represented that defendants would call again on March 24 to communicate which Interrogatories would be supplemented by March 30, 2005. Defendants confirmed, however, that others would not be supplemented until a later date.

[2]     Magistrate Judge Spero has stayed responses to contention Interrogatories, and plaintiffs have not demanded responses to Interrogatory Nos. 1, 2, 3, 5, and 7, accordingly.

# Exhibit A

1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   MARK SOLOMON (151949)
3  DOUGLAS R. BRITTON (188769)
   401 B Street, Suite 1600
4  San Diego, CA  92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
      – and –
6  SHAWN A. WILLIAMS (213113)
   WILLOW E. RADCLIFFE (200087)
7  ELI R. GREENSTEIN (217945)
   JENNIE LEE ANDERSON (203586)
8  MONIQUE C. WINKLER (213031)
   100 Pine Street, Suite 2600
9  San Francisco, CA  94111
   Telephone: 415/288-4545
10  415/288-4534 (fax)

11  Lead Counsel for Plaintiffs

12

13                     UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15  In re ORACLE CORPORATION          )  Master File No. C-01-0988-MJJ
    SECURITIES LITIGATION             )
16  _____ )  CLASS ACTION
                                      )
17  This Document Relates To:         )  PLAINTIFFS' NOTICE OF DEPOSITION
                                      )  OF ORACLE CORPORATION PURSUANT
18     ALL ACTIONS.                   )  TO FEDERAL RULE OF CIVIL
    _____ )  PROCEDURE 30(b)(6)
19

20

21

22

23

24

25

26

27

28

1    TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN

2          PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of

3    Civil Procedure, plaintiffs, by their attorneys, will take the deposition of defendant Oracle

4    Corporation ("Oracle") as follows:

| Deponent | Date/Time | Location |
|---|---|---|
| Oracle Corporation | January 21, 2005 10:00 a.m. | Lerach Coughlin Stoia Geller Rudman & Robbins LLP 100 Pine Street, Suite 2600 San Francisco, CA 94111 |

          Said deposition will be taken before a notary public or some other officer qualified to

administer oaths pursuant to Fed. R. Civ. P. 28(a), will be videotaped and recorded by a

stenographer, and will continue from day-to-day excluding Sundays and holidays until the

examination is completed.

          Pursuant to Fed. R. Civ. P. 30(b)(6), Oracle shall designate and produce one or more of its

officers, directors, employees, managing agents or other persons most qualified to testify on its

behalf, and most knowledgeable and properly designated regarding the subject matters set forth in

the Schedule A, attached hereto, for the time period from June 1, 2000 to December 31, 2001.

PLAINTIFFS' NOTICE OF DEPOSITION OF ORACLE CORP PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) - C-01-0988-MJJ                  - 1 -

1    PLEASE TAKE FURTHER NOTICE that pursuant to Fed. R. Civ. P. 30(b)(5), Oracle is

2    commanded to produce to plaintiffs all documents reviewed or relied upon by the deponent in

3    preparation for the above-described deposition by January 17, 2005.

4    DATED:  December 15, 2004                    LERACH COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
5                                                 WILLIAM S. LERACH
                                                 MARK SOLOMON
6                                                 DOUGLAS R. BRITTON
                                                 401 B Street, Suite 1600
7                                                 San Diego, CA  92101
                                                 Telephone:  619/231-1058
8                                                 619/231-7423 (fax)

9                                                 LERACH COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
10                                                SHAWN A. WILLIAMS
                                                 WILLOW E. RADCLIFFE
11                                               ELI R. GREENSTEIN
                                                 JENNIE LEE ANDERSON
12                                               MONIQUE C. WINKLER

13

14                                                        _____

15                                                        MONIQUE C. WINKLER

16                                               100 Pine Street, Suite 2600
                                                 San Francisco, CA  94111
17                                               Telephone:  415/288-4545
                                                 415/288-4534 (fax)

18

19                                               Lead Counsel for Plaintiffs
     T:\CasesSF\Oracle3\NOT00016593.doc
20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF DEPOSITION OF ORACLE CORP PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) - C-01-0988-MJJ                    - 2 -

**SCHEDULE A**

**I.   DEFINITIONS**

Unless otherwise stated, the terms set forth below are defined as follows:

(a)   "Oracle" or the "Company" refers to defendant Oracle Corporation and its parents, subsidiaries, divisions, affiliates, operating units, controlling persons, controlled persons, officers, directors, employees, representatives or agents.

(b)   "Document" or "documents" has the same meaning as Fed. R. Civ. P. 34 and includes, in the broadest sense possible, but is not limited to, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any notes or other markings. Without limiting the generality of the foregoing, "document" or "documents" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, photographic recordings, films tapes, disks, data cells, printouts of information stored or maintained by electronic data processing or word processing equipment, including email, and all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into useable form), including, but not limited to, electromagnetically sensitive stored media such as floppy disks, hard disks and magnetic tapes, and any preliminary versions, drafts or revisions of any of the foregoing.

(c)   "Communication" or "communications" refers to every manner or means of disclosure, transfer or exchange of information (in the form of facts, ideas, inquiries or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery or otherwise.

PLAINTIFFS' NOTICE OF DEPOSITION OF ORACLE CORP PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) - C-01-0988-MJJ            - 1 -

1         (d)    "Concerning" means relating to, referring to, describing, discussing,

2 evidencing, regarding or constituting.

3         (e)    "Refer," "relate," "referring" or "relating" means all documents that,

4 explicitly or implicitly, in whole or in part, were received in conjunction with, or were generated as a

5 result of, the subject matter of the request, including, but not limited to, all documents that reflect,

6 record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate,

7 analyze, review, report on, comment on, impinge upon or impact the subject matter of the request.

8         (f)    "CRM" refers to Oracle's Customer Relationship Management software

9 products and services.

10         (g)    "11i" refers to Oracle's 11i Suite of software products and services, including

11 all of its individual modules such as CRM.

12         (h)    "Person" or "persons" refers to any natural person, proprietorship, public or

13 private corporation, partnership, joint venture, trust, association, company, firm, government or

14 governmental entity (including any government agency, board, authority, commission, or political

15 subdivision or department thereof), or any other form of business or legal entity, organization or

16 arrangement.

17         (i)    "Customer" or "customers" is used in the broadest possible sense, including

18 all members of all target markets. "Customer" for the purposes of this notice also includes any

19 entity that sells, distributes, hosts or licenses Oracle's products.

20         (j)    "Meeting" refers to the contemporaneous presence of any natural persons,

21 whether or not such presence was by chance or prearranged, and whether or not the meeting was

22 formal or informal, occurred in connection with some other activity, or was by telephone or

23 teleconferencing.

24         (k)    The connectives "and" and "or" shall be construed either disjunctively or

25 conjunctively as necessary to bring within the scope of the document request all responses that

26 otherwise might be construed to be outside of its scope.

27         (l)    The use of the singular shall be deemed to include the plural, and the use of

28 one gender shall include all others, as appropriate in the context.

PLAINTIFFS' NOTICE OF DEPOSITION OF ORACLE CORP PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) - C-01-0988-MJJ       - 2 -

## II.    DEPOSITION SUBJECT MATTER

In accordance with Fed. R. Civ. P. 30(b)(6), Oracle is advised of its duty to designate one or more of its officers, directors, employees, managing agents or other persons most qualified to testify on its behalf with respect to the following:

1.    Oracle's marketing of 11i, including, but not limited to, advertising, press releases, conference calls, proposals, white papers, meetings with customers, demonstrations both at customer sites and otherwise, conference appearances, sales promotions, talking points or guidelines, rebates, discounts, guarantees and joint ventures.

2.    Communications with customers concerning their installation, integration or implementation of 11i, including, but not limited to, customer complaints concerning instability, functionality, performance, integration problems, incompatibility with other hardware and/or software, gaps, problems with the base code, inability to customize applications, bugs, product failures, delays, or any other technical support issues, difficulties, problems or defects.

3.    Customer complaints and communications concerning 11i, including, but not limited to, any attempts to fix or remedy any technical defects, problems, bugs or patches.

4.    Agreements or communications between Oracle and any customer or potential customer concerning any customer's attempted or actual return of, exchange of, deferred payment for, forgiveness of payment for, or cancellation of purchase of 11i, and any actual, potential or threatened legal action by a customer against Oracle relating to 11i.

5.    Agreements or communications between Oracle and any customer or potential customer concerning the extension of any service agreement relating to 11i.

T:\CasesSF\Oracle3\NOT00016593.doc

1    <u>DECLARATION OF SERVICE BY MAIL AND FACSIMILE</u>

2    I, the undersigned, declare:

3    1.    That declarant is and was, at all times herein mentioned, a citizen of the United States

4    and employed in the City and County of San Francisco, over the age of 18 years, and not a party to

5    or interest in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San

6    Francisco, California 94111.

7    2.    That on December 15, 2004, declarant served the **PLAINTIFFS' NOTICE OF**

8    **DEPOSITION OF ORACLE CORPORATION PURSUANT TO FEDERAL RULE OF**

9    **CIVIL PROCEDURE 30(B)(6)** by depositing a true copy thereof in a United States mailbox at San

10   Francisco, California in a sealed envelope with postage thereon fully prepaid and addressed to the

11   parties listed on the attached Service List.  Declarant also served the parties by facsimile.

12   3.    That there is a regular communication by mail between the place of mailing and the

13   places so addressed.

14   I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th

15   day of December, 2004, at San Francisco, California.

16

17   _____

     JERRY COHEN

18

19

20

21

22

23

24

25

26

27

28

ORACLE III (LEAD)

Service List - 12/10/2004   (201-064-1)

Page 1 of 1

**Counsel For Defendant(s)**

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
  650/331-2000
  650/331-2060 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
  650/506-5200
  650/506-7114 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street, Suite 3900
Chicago, IL 60603-3441
  312/782-0600
  312/701-7711 (Fax)

**Counsel For Plaintiff(s)**

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
  415/288-4545
  415/288-4534 (Fax)

# Exhibit B

#2469

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) ) Master File No. C-01-0988-MJJ |
| _____ | ) CLASS ACTION |
| This Document Relates To: | ) ) ) AMENDED [~~PROPOSED~~] ORDER SETTING A DISCOVERY PLAN |
| ALL ACTIONS. | ) |
| _____ | ) ) Judge Martin J. Jenkins Magistrate Judge Joseph C. Spero |

On Tuesday, March 1, 2005, the parties appeared before United States Magistrate Judge Joseph C. Spero for a discovery conference. The parties offered written discovery plans and presented oral argument. The Court, having reviewed the written submissions and considered the parties' oral argument, hereby sets forth the following Discovery Plan, which shall govern discovery in this case.

For the reasons stated on the record, IT IS ORDERED THAT:

## I.    SCOPE OF DISCOVERY

The scope of discovery shall be as follows:

### A.    RELEVANT TIME PERIOD

For purposes of responding to written discovery requests, the "Relevant Time Period" shall be from June 1, 2000 to June 1, 2001. Documents created outside of the Relevant Time Period that refer to events within the Relevant Time Period must also be produced.

### B.    FILES TO BE SEARCHED

In responding to Plaintiffs' requests for documents, Oracle Corporation ("Oracle" or the "Company") shall search the hard copy and electronic files of the following individuals:

1.    Lawrence Ellison ("Ellison"), Jeffrey Henley ("Henley"), Edward "Sandy" Sanderson, Stephanie Aas, Jennifer Glass and Jennifer Minton (collectively "the Speakers");

2.    The Speakers' direct reports during the Relevant Time Period including, but not limited to, those represented in Oracle's February 18, 2005 letter to the Court;

3.    The Area Vice Presidents in Oracle's three United States sales and consulting divisions: North American Sales, Oracle Service Industries and Oracle Products Industries;

4.    The following individuals: John Nugent, Bret Fuller, Charles Rozwat, Gary Roberts, John Wheeler, Sergio Giacoletto, Greg Myers, Neil Menon, Brad Scott, Michael Quinn, Michael Rocha, Ray Lane and Ron Cuneo; and

5.    Other individuals, as agreed upon by the parties or ordered by the Court.

### C.    DEFINITION OF KEY ISSUES IN CASE

With respect to the following topics related to discovery between the parties, the Court sets forth the following guidelines:

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

- 1 -

### 1.   Economy

Subject to the limitations set forth in Sections I(A) and (B) above, hereafter ("SCOPE"), Defendants shall produce documents and communications (including e-mail correspondence) concerning the United States economy and its impact or potential impact on Oracle's revenues, earnings and expenses; its impact or potential impact on customer purchasing decisions of IT products and services in general; and specifically the purchase of products or services from Oracle.

### 2.   Functionality of Oracle's Suite 11i Software and Its Individual Modules

Defendants shall produce:

    (a)   Software versions 1, 2 and 3 of Oracle's Suite 11i;

    (b)   High level design documents for Suite 11i;

    (c)   Technical manuals for Suite 11i;

    (d)   "Bug reports" that in any way reference integration or interoperability;

    (e)   High level documents describing the scope and dimension of "bug problems" within Suite 11i and/or any of its modules other than integration and interoperability;

    (f)   Documents regarding any lost or deferred sales of any Oracle product, as well as any material expense with respect to any Oracle product -- such as refunds, rebates or remediation. For purposes of this issue only, "material expense" is defined as having a financial impact greater than or equal to $500,000.

### 3.   Revenue/Earnings Forecasting

Subject to the Court's rulings on SCOPE, Defendants shall produce documents relating to Oracle's forecasts, including any mention of the economy as it relates to Oracle's forecasting during the Relevant Time Period and as it related to the Company's pipeline and its growth or decline. Additionally, Defendants shall produce documents relating to Oracle's sales pipeline and pipeline conversion rates/ratios.

### 4.   Accounting and Underlying Documents

Defendants shall produce all documents relating to (i) the alleged "On Account Cleanup" occurring in November 2000; (ii) the 46,000 debit memoranda; and (iii) the accounting treatment of those debit memoranda, including any audit trail, and all related accounting policies.

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

1

5.     **Insider Trading**

2     Subject to the Court's rulings on SCOPE, Defendants shall produce documents and

3   communications regarding Defendants' sales or contemplated sales of Oracle securities during

4   January 2001.  These documents shall include Defendants' option agreements, the reasons and

5   timing of their sales, and the Company's policies and procedures regarding trading and options.

6

6.     **Special Litigation Committee**

7     Defendants shall produce all underlying documents that the Special Litigation Committee

8   ("SLC") reviewed from whatever source, except documents subject to privilege or work product

9   protection for which they will produce a privilege log.  Defendants are not required to specifically

10   identify these documents as having been produced to the SLC.  Defendants reserve their right to

11   designate any such documents as either "Confidential" or "Highly Confidential" under the terms of

12   the January 11, 2005 Revised Stipulated Protective Order Governing Confidentiality.   Such

13   production shall not constitute a waiver of either the attorney-client or attorney work product

14   privilege.

15     Plaintiffs may file a motion to compel production of documents related to the SLC's

16   investigation including production of the SLC Report itself.

17   **II.     CONVENTIONS FOR PARTY DISCOVERY**

18       **A.     TIMING OF DOCUMENT PRODUCTION**

19     Defendants shall produce documents on a rolling basis with production to be completed by

20   May 1, 2005. Defendants shall produce documents responsive to Plaintiffs' requests for documents

21   contained in the files of any deponent not otherwise within the category of individuals specified in

22   Section I(B) above, no later than seven days prior to the date on which such witness is noticed to be

23   deposed.  Plaintiffs shall complete their document production by March 21, 2005, with the exception

24   of the interrogatory set forth in VII(C) *infra*, which shall be responded to within forty-five (45) days

25   of the entry of this Order.

26       **B.     PRODUCTION FORMAT**

27     When preparing documents for production, the parties shall adhere to the following

28   conventions with respect to documents within their possession, custody or control:

AMENDED [~~PROPOSED~~] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
MJJ (Consolidated)                                                                       - 3 -

(a)    The parties shall produce e-mails in searchable TIFF format. E-mails shall include the following information: sender, recipient, blind and carbon copies, date sent, e-mail box from whom the document is produced, and the date and time it was opened, deleted, responded to or forwarded. Furthermore, the parties shall produce all attachments to or documents embedded in such e-mails in native format, readily accessible from each e-mail.

(b)    The parties shall produce all documents that were created and kept in electronic format in either native format or a searchable electronic format. For example, Microsoft Word or Excel files shall be produced in their native format. Information stored on Oracle databases, such as the accounting treatment for the 46,000 debit memos, shall be downloaded into Excel or another comparable format and produced in that electronic format.

(c)    The parties shall meet and confer regarding locking and protecting electronic documents in order to prevent their alteration or manipulation subsequent to production.

(d)    With respect to documents that were reviewed by the SLC or produced to the plaintiffs in Oracle Cases, JCCP No. 4180 (CIV 417511 San Mateo Co. Sup. Ct.) and in *In re Oracle Corp. Deriv. Litig.*, C.A. No. 18751 (Del. Ct. of Chancery) that have already been produced to Plaintiffs in paper format, Defendants shall also produce to Plaintiffs spreadsheets in native format and e-mails in searchable TIFF format with the metadata described above. Defendants may submit a letter brief to the Court requesting that Plaintiffs share the cost of reproducing these specified documents in electronic format.

## C.    PRODUCTION SOURCE LOG

The parties must produce logs indicating the source files of all produced documents, including for documents previously produced.

## D.    PRIVILEGE LOGS

The parties shall produce privilege logs within forty-five (45) days after a document is withheld for privilege.

## III.    DEPOSITIONS

### A.    TIME LIMIT PER DEPOSITION

Federal Rule of Civil Procedure 30 shall govern the time limit for depositions, except upon agreement of the parties or court order.

### B.    DEPOSITIONS OF 30(b)(6) WITNESSES

(a)    ~~Plaintiffs' Position~~ *x s*

Plaintiffs' depositions of the persons most knowledgeable at Oracle shall be completed by April 15, 2005. The depositions may cover the following agreed upon topics: accounting, electronic systems, forecasting and Suite 11i.

AMENDED [~~PROPOSED~~] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

- 4 -

1   Defendants shall produce a documentary and written response to Plaintiffs' 30(b)(6) subjects

2   relating to document preservation. If, after Plaintiffs have had an opportunity to review those

3   responses, Plaintiffs believe that a deposition regarding document preservation is still necessary, the

4   parties shall meet and confer.

5   Where Defendants offer a Speaker as defined in I(B)(1), a Speaker's direct report as defined

6   in I(B)(2), or an individual named in the Revised Second Amended Complaint for Violations of the

7   Federal Securities Laws ("RSAC") as a 30(b)(6) witness, Plaintiffs shall not be precluded from

8   deposing that same witness in his/her individual capacity at a later date. Instead, in such

9   circumstances, the parties shall meet and confer, taking into account the outstanding discovery and

10  may seek assistance from the Court in the event they are unable to reach an agreement.

11  ~~(b)   Defendants' Position~~

12  Plaintiffs' depositions of the persons most knowledgeable at Oracle shall be completed by

13  April 15, 2005. The depositions may cover the following agreed upon topics: accounting,

14  electronic systems, forecasting and Suite 11i.

15  Defendants shall produce a documentary and written response to Plaintiffs' 30(b)(6)

16  subjects relating to document preservation. If, after Plaintiffs have had an opportunity to review

17  those responses, Plaintiffs believe that a deposition regarding document preservation is still

18  necessary, the parties shall meet and confer.

19  Where an individual is offered by Oracle as a Rule 30(b)(6) witness at a deposition and

20  documents from that individual's files have been produced to Plaintiffs at least seven (7) days prior

21  to the deposition, that individual may not be deposed again in his or her individual capacity at a

22  ~~later date.~~

23  ## C.   FACT WITNESS DEPOSITIONS

24  Depositions of substantive witnesses shall begin after May 1, 2005. Subject to the other

25  limits above, Defendants shall produce documents from the files of a deponent, including a

26  confidential witness ("CW"), no less than seven (7) days before that individual's deposition as a fact

27  witness.

28

AMENDED [~~PROPOSED~~] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
MJJ (Consolidated)                                                    - 5 -

      (a)    Subject to change upon the receipt and review of discovery from Defendants and non-parties, Plaintiffs currently intend to depose the following witnesses:

1.  Anil Vora
2.  Bill Castello
3.  Brad Scott
4.  Bret Fuller
5.  Charles Rozwat
6.  David Winton
7.  Edward J. Sanderson
8.  Frank Varasano
9.  Gary Bloom
10. Gary Roberts
11. George Roberts
12. Ivgen Guner
13. Jay Nussbaum
14. Jeffrey Henley
15. Jennifer Minton
16. Jim English
17. Jody Terry
18. John Nugent
19. Jon Simmons
20. Larry Garnick
21. Lawrence Ellison
22. Mark Barrenchea
23. Mary Ann Gillespie
24. Michael Rocha
25. Michael P. DeCesare
26. Nick Classik
27. Patricia McManus
28. Ray Lane
29. Richard Blotner
30. Ron Police
31. Safra Catz
32. Sarah Kopp
33. Sergio Giacolletto
34. Steve McLaughlin
35. Terrence Ford
36. Tom Thimot
37. Tom Williams
38. Valerie A. Borthwick

Plaintiffs reserve the right to modify this list and to take additional depositions as discovery in this action proceeds.

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

(b)    Defendants currently intend to depose the forty-nine (49) CWs as well as the proposed class representatives. Defendants reserve the right to take additional depositions, up to the sixty-five (65) allowed by the Court, at any time prior to the close of fact discovery.

## IV.    EXPERT DISCOVERY

The parties shall exchange any affirmative expert reports on March 3, 2006, and any rebuttal reports on April 3, 2006. The parties shall complete expert discovery by May 22, 2006.

## V.    THIRD PARTY DISCOVERY

### A.    LIFTING OF THE STAY AND TIMING OF PRODUCTION FOR ALL THIRD PARTY DISCOVERY

The Court hereby lifts the stay on third party discovery put in place by its February 5, 2005 Order, subject to the limitations imposed by this Order. Plaintiffs shall meet and confer with third parties concerning the timing of their document production.

### B.    RELEVANT TIME PERIOD

The definition of Relevant Time Period, June 1, 2000 – June 1, 2001, set forth above, shall apply to all third party discovery.

### C.    SCOPE OF DISCOVERY FROM THIRD PARTY CUSTOMERS

#### 1.    Number of Customers to be Subpoenaed

Without leave of Court, Plaintiffs shall not subpoena more than one hundred (100) of Oracle's current and former customers. Plaintiffs have, to date, subpoenaed ninety-three (93) of Oracle's customers.

#### 2.    Subject Matter of Discovery to Be Produced by Customers

Plaintiffs may seek discovery from Oracle's current and former customers on the following topics only:

##### (a)    The United States Economy

Plaintiffs' third party discovery from customers relating to the economy is hereby limited to the following:

(i) communications with Oracle relating to increases or decreases in purchases from Oracle as a result of the economy; and

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

1    (ii) internal documents relating to decisions to purchase or not to purchase from Oracle

2    because of the economy.

3            (b)    **Oracle Software Integration and Interoperability Problems**

4

5    Plaintiffs' third party discovery from customers relating to problems with Oracle's Suite 11i

6    is hereby limited to documents regarding integration and interoperability (including integration and

7    interoperability gaps and bugs) with Oracle applications Suite 11i and its modules, including but not

8    limited to Oracle's CRM Module.  For purposes of this Order, integration refers to the ability of

9    modules of Suite 11i to work together and share information.

10          (c)    **Accounting**

11   Plaintiffs' third party discovery from customers relating to Oracle's accounting is limited to

12   documents relating to the 46,000 debit memo transactions created on or about November 17, 2000.

13   **D.    DISCOVERY FROM ANALYSTS AND MEDIA ORGANIZATIONS COVERING THE COMPANY**

14   Subject to the Court's rulings on SCOPE, Plaintiffs may seek discovery from analysts and

15   news services on the following topics:

16          (a)    The Defendants' public statements;

17          (b)    Customer interviews and complaints/problems with Oracle products,

18   including 11i;

19          (c)    The downturn in the economy and IT budgets during the Class Period;

20          (d)    Oracle's forecasts and projections;

21          (e)    Oracle's revenue and earnings reports and financial statements;

22          (f)    Integration and/or interoperability gaps and bugs; and

23          (g)    One-on-one interviews with Defendants.

24   **E.    DISCOVERY FROM AUDITORS**

25   Plaintiffs' third party discovery from Oracle's auditors and accountants is limited to

26   documents relating to (i) the debit memo transactions; (ii) the accounting treatment of the 46,000

27   debit memo transactions; and (iii) tax advisory services provided to Henley and Ellison relating to

28   the Relevant Time Period.

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

- 8 -

1      In addition, Oracle's auditors and accountants ARE HEREBY ORDERED to preserve all
2 relevant documents (including electronic documents and e-mail) concerning their audit work on
3 behalf of Oracle for the Relevant Time Period.

4      **F.    DISCOVERY FROM CONFIDENTIAL WITNESSES**

5      .    Plaintiffs shall disclose the names and corresponding CW numbers of the CWs used in the
6 RSAC to Defendants' counsel, including in-house counsel at Oracle, within forty-eight (48) hours of
7 the signing of this Order. Plaintiffs' disclosures shall be subject to the following restrictions:

8      (a)    Counsel for Defendants shall not disclose a CW's role to anyone other than
9 (i) Defendants' counsel within Mayer, Brown, Rowe & Maw LLP ("MBR&M"); (ii) in-house
10 counsel of Oracle Corporation; and (iii) any consultant retained by MBR&M for purposes of this
11 litigation upon receipt of an Undertaking in the form of Exhibit A hereto;

12      (b)    Defendants' counsel may discuss with current or former Oracle employees or
13 third parties the persons who are CWs, including the information attributed to them in this litigation
14 and any other information that may bear upon the case, but shall not disclose in any such
15 communications that the persons are CWs referenced in this litigation;

16      (c)    Defendants' counsel or defendants' experts/consultants shall not make initial
17 contact with a CW without informing Plaintiffs' counsel of their intention to do so no less than
18 forty-eight (48) hours prior to making such initial contact;

19      (d)    The identities of the CWs shall not be used for any purpose other than this
20 litigation; and

21      (e)    When a party seeks to file with the Court a document disclosing the identities
22 of the CWs in their roles as CWs, the procedures specified in paragraph 10 of the January 11, 2005
23 Revised Stipulated Protective Order Governing Confidentiality shall apply. Similarly, portions of
24 depositions or transcripts that refer to any CW's role will be kept confidential consistent with this
25 Order.

26      (f)    The Court retains jurisdiction over the enforcement of this Order for six (6)
27 months after entry of final judgment in this action.

28

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
MJJ (Consolidated)        - 9 -

## VI.   CLASS DISCOVERY

### A.   CLASS REPRESENTATIVES

Plaintiffs shall produce documents regarding class representative discovery by March 7, 2005.

Defendants' brief in opposition to the motion for class certification shall be due by May 6, 2005, and Plaintiffs' reply shall be due by June 13, 2005. The date for oral argument shall be set by the United States District Court Judge Martin J. Jenkins. The parties have requested a hearing date in July 2005 or at the Court's earliest convenience thereafter.

### B.   DISCOVERY FROM ABSENT CLASS MEMBERS

Prior to the discovery conference, the Court was informed that Defendants are not currently seeking any discovery from absent class members, but are reserving their right to do so in the future.

## VII.   MISCELLANEOUS ADDITIONAL DISCOVERY ISSUES

(a)   All contention interrogatories are stayed until further order of the Court. No response or further response to any outstanding contention interrogatory is required at this time.

(b)   Plaintiffs shall produce all documents received from CWs relating to the Defendants and shall identify from which CW the documents were received. The latter information shall be subject to V(F) above.

(c)   With respect to Defendants' Interrogatories to Plaintiffs seeking information concerning the individuals and organizations identified in Plaintiffs' Rule 26(a) Initial Disclosures, Plaintiffs are ordered to respond by describing generally what Plaintiffs understand each of the identified witnesses in their Initial Disclosures know about the case. Plaintiffs shall respond to this modified interrogatory within forty-five (45) days of the entry of this Order.

## VIII.   RECONCILIATION OF DISCOVERY DISPUTES

As outlined in Judge Jenkins' Amended Pretrial Order of December 17, 2004, the parties shall meet and confer about all discovery disputes and, in the event that they cannot resolve such disputes, each party shall submit a two-page letter brief to the Court outlining the party's position on the issue. All matters relating to the modification of the discovery plan shall be addressed to the

1  undersigned.  The parties shall address all future letter briefs to both ~~Judge Jenkins and Magistrate~~

2  ~~Judge Spero.~~  *℘er*

3       **IT IS SO ORDERED.**

4

5  DATED:  3/10/05

6                                                    THE HONORABLE JOSEPH C. SPERO
                                                     UNITED STATES MAGISTRATE JUDGE

7

8       **APPROVED AS TO FORM.**

9  Submitted by:

   DATED:  March 9, 2005
10
   LERACH COUGHLIN STOIA GELLER
11    RUDMAN & ROBBINS LLP
   WILLIAM S. LERACH
12 MARK SOLOMON
   DOUGLAS R. BRITTON
13

14
                      /S/
15            MARK SOLOMON

16 401 B Street, Suite 1600
   San Diego, CA  92101
17 Telephone:  619/231-1058
   619/231-7423 (fax)
18
   LERACH COUGHLIN STOIA GELLER
19    RUDMAN & ROBBINS LLP
   SHAWN A. WILLIAMS
20 WILLOW E. RADCLIFFE
   ELI R. GREENSTEIN
21 JENNIE LEE ANDERSON
   MONIQUE C. WINKLER
22 100 Pine Street, Suite 2600
   San Francisco, CA  94111
23 Telephone:  415/288-4545
   415/288-4534 (fax)
24

25 Lead Counsel for Plaintiffs

26

27

28
   AMENDED ~~[PROPOSED]~~ ORDER SETTING A DISCOVERY PLAN – C-01-0988-
   MJJ (Consolidated)                                                                    - 11 -

1

2  MAYER, BROWN, ROWE & MAW LLP
   ALAN N. SALPETER
3

4

5  _____/ S /_____
                ALAN N. SALPETER
6

7  190 South LaSalle Street, Suite 3900
   Telephone:  312/782-0600
8  312/701-7711 (fax)

9  T:\CasesSF\Oracle3\ORD00019094.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
MJJ (Consolidated)                                                  - 12 -

## DECLARATION OF SERVICE BY FACSIMILE

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.     That on March 9, 2005, declarant served by facsimile the **AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN** to the parties listed on the attached Service List.

3.     That there is a regular communication by facsimile between the place of origin and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of March, 2005, at San Francisco, California.

_____
/s/ Carolyn Burr
CAROLYN BURR

ORACLE III (LEAD)
Service List - 3/9/2005    (201-064-1)
Page 1 of 1

### Counsel For Defendant(s)

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
  650/331-2000
  650/331-2060 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
  650/506-5200
  650/506-7114 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street, Suite 3900
Chicago, IL 60603-3441
  312/782-0600
  312/701-7711 (Fax)

### Counsel For Plaintiff(s)

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
  415/288-4545
  415/288-4534 (Fax)

**EXHIBIT A**

AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, _____, hereby acknowledge that I have read the [Proposed] Order re Discovery Plan that was issued by the United States District Court for the Northern District of California on March ___, 2005, in the case of: *In re Oracle Corporation Securities Litigation*, Lead Case No. 417511, Case No. C-01-0988-MJJ.

I recognize that I am bound by the terms of that Order and I agree to comply with those terms. I fully understand that any disclosure of the identities of the confidential witnesses to anyone other than those individuals expressly permitted by the Order could expose me to sanctions and punishment in the nature of contempt. I hereby agree to abide by the obligation and conditions of the Order.

DATED: _____

_____

Exhibit C

In Re Oracle Securities Litigation

1 documents.

2          And correct me if that's not your understanding.

3          MR. RUBIN: We had indicated to plaintiffs that we

4 thought that our document protection policies and other written

5 material would provide the information they were looking for.

6 But if they choose, we are certainly prepared to offer an

7 organizational representative if they want to inquire --

8          THE COURT: On document preservation, that's fine.

9          On the accounting issues. Is there an issue on the

10 accounting issues?

11         MR. RUBIN: I just was making the point to

12 Mr. Williams in a side bar moment that the scope that the Court

13 has already ruled upon related to the accounting will control

14 the 30(b)6 depositions.

15         THE COURT: Of course. Of course. The subject

16 matter is for discovery, right not just for documents. That's

17 right.

18         Okay. And then there is forecasting. No issue on

19 that, right? There will be a 30(b)6 on forecasting. I mean, I

20 guess that's a reasonably broad subject, but it will be how you

21 do your forecasting and how you came up with the numbers that

22 are the forecasts in this case.

23         Is there any issue on forecasting?

24         MR. WILLIAMS: I don't think we ever had an issue on

25 that.

1          THE COURT: Okay. Now, 11i. 11i interoperability.

2          MR. WILLIAMS: And if I may interrupt, your Honor?

3          THE COURT: Please.

4          MR. WILLIAMS: I think that the interoperability

5 there is -- you know, it's accurate, but probably too narrow.

6          THE COURT: I thought you might say that.

7          MR. WILLIAMS: If I may, your Honor. I don't want to

8 kind of go down a road that we have already been around, but as

9 we were talking over the lunch hour or lunch 20 minutes, we

10 were kind of talking about what your order was earlier on that

11 issue, and I don't know if anyone recalled it specifically

12 enough to have a definitive conclusion.

13         But I understood your Honor to have a long discussion

14 about the integration and interoperability and how even if

15 there are bugs that don't necessarily relate directly to

16 integration and interoperability, that those bugs at some point

17 do -- do rise to a level that the product does not work.

18         And, indeed, we have statements, false statements in

19 the complaint where, I think it was either Sandy Sanderson or

20 George Roberts who said that both the supply chain management,

21 SCM, and the CRM are working, and I think your Honor picked

22 occupy that as well.

23         But as you went further down into your, quote,

24 unquote, order on the subject, your order sounded much narrower

25 than your earlier commentary on it and I don't want the parties

1 later to fight about what you meant.

2          THE COURT: Okay. Let's go back to what I said and

3 what I should have said.

4          The documents that are being produced on the

5 functionality are as follows, and it should guide the scope of

6 the 30(b)6 depositions.

7          Obviously, you are going to produce the three

8 versions of 11i in the code so that plaintiff can contest it

9 anyway they want.

10         They are going to -- you are going to produce the

11 design documents and technical memos.

12         Okay. You are going to produce bug reports that in

13 any way reference integration and interoperability, right?

14 That's included in your things. So that certainly is within

15 the scope.

16         In addition, you are going to produce documents

17 regarding any lost, deferred sales or sales with respects to

18 which there was a material expense with respect to any product

19 before the relevant time period. Materiality being defined as

20 we stated.

21         In addition, I guess the piece that is missing is you

22 did say that we could come up with a high level, some kind of

23 high level documents which are relevant to the scope of

24 problems with the program and I'm not -- you know, without

25 characterizing them, problems with the program on a more global

1 basis that got to the folks in, for example, what you say is

2 the original speakers group, but some way of capturing the bug

3 problem other than integration issues.

4          I guess I had never -- I have neglected to get

5 closure on what that is.

6          MR. RUBINSTEIN: Well, I think what I would like to

7 do, and with the Court's permission, is to basically try to

8 craft an order that reflects what your Honor just said because

9 I don't -- I can't identify what the actual document would be,

10 but I think I understand what the Court's order is and I don't

11 know whether the Court is comfortable proceeding with an order

12 in which the category is described that way.

13         THE COURT: That's not a bad idea. What you are

14 talking about is an order that says, you are going to produce

15 documents that describe the scope and dimension of the bug

16 problems with the program other than, sufficient to, that kind

17 of language.

18         MR. RUBINSTEIN: Okay.

19         THE COURT: Sufficient to describe the scope and

20 dimension of the bug problems with the program other than

21 integration and interoperability.

22         And, obviously, with respect to each of these things,

23 you have the opportunity to have an examination of someone on

24 them.

25         MR. WILLIAMS: Maybe what we will have to do is see

In Re Oracle Securities Litigation

SHEET 12   PAGE 89

89

1 if we can hammer out an agreement on what should be and if
2 we can't agree, we will just submit something separate and have
3 the Court iron it out.
4        I do want to address one more issue, your Honor --
5        THE COURT:  Yes.
6        MR. WILLIAMS:  -- with regard to the materiality.
7        We talked about materiality and I guess a materiality
8 cut-off of $500,000 and I really think that that might narrow
9 things too much.
10        The $500,000 deals -- I can't stand here and say that
11 I know which ones they are, but one of the arguments that they
12 have made is that Oracle has thousands and thousands of
13 customers and that's probably true.  It is true.
14        How many of those are above 500,000 we don't know.
15 They did have, quote, unquote, big deal reports, but they were
16 a small number and those don't encompass all the customers who
17 were buying the product whose businesses were impacted by the
18 fact that the product didn't work.
19        And I think if we just use that $500,000 number,
20 which is a big number, it's a big sale, we are not going to get
21 what we are looking for.
22        And, finally --
23        THE COURT:  Of course, you won't get what you are
24 looking for, but, okay, but let's talk about what you need.
25        I mean, you are trying to get enough information

PAGE 90

90

1 about, frankly, issues with customers other than integration,
2 right?
3        MR. WILLIAMS:  Sure.
4        THE COURT:  And trying to prove that those problems
5 with the customers are so large that notwithstanding the fact
6 that there isn't an actionable representation that there are no
7 bugs in this, or that there are insignificant bugs in it, or
8 trivial bugs or anything like that, that by virtue of the fact
9 that the program has so many flaws, that that means that when
10 you say this is a program that you can buy off the shelf and
11 you don't have to have any integration programming involved,
12 you are really violating that.  You are really making that a
13 false statement.
14        MR. WILLIAMS:  I think you are, right.
15        THE COURT:  That's a pretty high level of problem and
16 I'm wondering how we get into that.
17        One of the ways I'm thinking about getting into it is
18 you say, well, what are the problems that the big players are
19 having with this program?  I mean, aren't you going to capture
20 -- you aren't going to get -- you are right.  You are not going
21 to get every customer, but aren't you going to capture in the
22 machinations between Oracle and one of its bigger customers or
23 50 of its bigger customers are whatever they are, maybe it's
24 not a thousand, but aren't you going to capture in that the
25 dimensions of the bug problem?

PAGE 91

91

1        Those are the people who are going to be all over the
2 program, right?  They are the people -- the big consumers of
3 the product are the ones who are going to have giant in-house
4 technical staff all over the product and all over Oracle.  They
5 are the people who are going to be the ones for whom Oracle is
6 going to have to spend money and time and who are going to
7 have, frankly, their own records and we will get to that.
8        But isn't -- aren't you going to capture the most
9 important problems that way?
10        MR. WILLIAMS:  The answer is maybe.  The answer is
11 maybe.  And that's because some of those big customers were
12 buying, say, the entire 11i Suite.  Some of the smaller
13 customers were buying only certain modules.  And let's say, for
14 example, CRM.
15        Now, a $500,000 threshold might be interesting for
16 the forecast, with regard to customers, some of these
17 customers were buying just the CRM.  And I don't know how much
18 it costs.  I don't think it was a half million dollars, but we
19 know that just the implementation of this -- of the attempted
20 implementation of the CRM shut down entire businesses.
21        And I don't know -- so the impact to that business
22 might be greater than $500,000 even though they didn't pay
23 $500,000 for the software.
24        So to begin, it's difficult to say let's have this
25 $500,000 cut-off because a lot of the problems -- I mean, this

PAGE 92

92

1 was a brand new software.  They were trying to sell it to
2 anybody, not just the big companies.  And what we allege in the
3 complaint is that the big companies were afraid to buy it
4 because they may have heard of some of the smaller companies
5 that had big problems with it.
6        So when we get to that $500,000 cut-off, we may only
7 get a small sliver of what is important for the case.  And
8 maybe we should just come with -- agree on a number that's
9 lower than $500,000.  I'm not saying I want everything --
10        THE COURT:  Why don't I do this?  Let's leave it the
11 way it is.  If it turns out you are right, well, then you are
12 going to be back here.  If you are right that you are not
13 getting a good sense of the dimensions of this problem by what
14 we have ordered, well, then, it was the wrong order and we will
15 fix it.
16        MR. WILLIAMS:  Okay.
17        THE COURT:  We will fix it.  I think that's right.
18        Okay.  So substantive witness depositions, meaning
19 other depositions other than 30(b)6, will start in May I guess.
20        With respect to the files that Oracle has regarding
21 any current or former Oracle employee, that's going to be on
22 the list of 65.  That's the issue you were raising, I think,
23 and those you want to have before you begin the depositions,
24 and they may or may not be within the scope of the files we
25 have ordered reviewed.

## PAGE 157

157

1 going to be something that is going to be useful to anybody
2 ultimately.
3        MR. RUBIN: Your Honor, one other thing. I mentioned
4 it would be extremely useful to us, there are, I think, about
5 350, approximately, organizations, businesses listed. And one
6 issue that we had raised early on was that with businesses the
7 rule speaks of potential witnesses. It speaks of individuals,
8 not entities.
9        So if an entity is listed -- if Alcoa is listed, at a
10 minimum we presume Alcoa is listed because a live human being
11 has some relevant evidence of Alcoa, that we believe there is
12 somebody at Alcoa that has relevant evidence. So who is it?
13       THE COURT: You can presume all you want. I know
14 exactly what they did. They wrote down every name off of every
15 document and every witness list that they ever generated and
16 they put it all together and it's the kitchen sink.
17       MR. RUBIN: We agree, your Honor, and we made an
18 objection these were not Rule 26 disclosures and Judge Jenkins
19 said, okay, well, go back and tell them what categories, but
20 then --
21       MR. WILLIAMS: And we did that.
22       MR. RUBIN: Then defendants have a right, then, to
23 seek discovery underneath the disclosures so they can get an
24 idea of which witnesses are important and which aren't.
25       THE COURT: I don't know that that's actually right.

## PAGE 158

158

1 You have a right to discovery when the Court tells you you have
2 the right to discovery.
3        I never liked that argument, we have a right to get
4 something, because the Court is going to give you proportionate
5 discovery. And the important discovery is not coming off the
6 Rule 26 disclosures.
7        So here is what you are going to. Done. Enough
8 discussion. Enough discussion. I'm done. This is not an
9 important enough subject to spend another 30 seconds on.
10       You will answer the interrogatory which is: Describe
11 generally what each of these witnesses know about the case.
12       Okay. Five-minute break. We are almost done.
13       (Brief recess held in the proceedings.)
14       THE COURT: Okay. Call us back, please.
15       THE CLERK: Resumes session in C01-0988, In Re Oracle
16 Securities Litigation.
17       THE COURT: Okay. Are there any other issues with
18 respect to the discovery order that we need -- other than the
19 preparation of the order that we need to address?
20       The only thing I thought of is the dispute resolution
21 mechanism, but what I think you ought to put in is the Court
22 should comply with Judge Jenkins' standing order on that. I
23 don't know yet who those disputes are going to.
24       I think I have invited one application to me for sure
25 and that is the application regarding sharing of costs. And I

## PAGE 159

159

1 have certainly invited -- you have got to put in a mechanism
2 for modifications to the discovery plan, and I think those
3 should also appropriately come to me since the plan has been
4 referred.
5        And I guess disputes regarding the -- and I think
6 otherwise I would say absent further order of the Court that
7 you will comply with Judge Jenkins' standing order regarding
8 discovery or whatever he said in this case regarding discovery,
9 and then he and I will work out who it actually goes to before
10 you have a dispute. We will figure out who it goes to. Of
11 course, there won't be any, so it's not a problem. So put in
12 those things for the implementation.
13       So you are going to get the transcript, hopefully,
14 tomorrow. How long are -- you better put how soon can you all
15 reasonably get to me an order.
16       MR. RUBINSTEIN: How about Friday?
17       THE COURT: You think you can do it by Friday?
18 That's fine.
19       MR. SALPETER: We thought we would do a draft.
20 Tender it to them and. . .
21       THE COURT: Go back and forth and get it to me by the
22 end of the day Friday maybe?
23       MR. SOLOMON: We will strive for it. I think that's
24 very optimistic, but we will certainly try for it and explain
25 why not if we don't make it.

## PAGE 160

160

1        MR. SALPETER: Best efforts.
2        THE COURT: Best efforts for Friday or some letter
3 saying what's going to happen, so I will not stay up nights
4 waiting for it.
5        Okay. Is there anything pending in front of Judge
6 Jenkins that we can take care of in light of this order? What
7 do you have got -- are there any discovery issues in front of
8 Judge Jenkins that have been sort of stayed?
9        MR. RUBINSTEIN: I think the only issue that was in
10 front of Judge Jenkins was the CW issue, am I wrong, and Suite
11 11i. I think all discovery issues in front of Judge Jenkins --
12       THE COURT: Is there is a Special Master application,
13 or did I deny that?
14       MR. RUBINSTEIN: I think it's been withdrawn, since
15 it's ours. If not, we withdraw it.
16       MR. SOLOMON: Defendants have moved to disqualify us,
17 but we hope you will see us again; but Judge Jenkins is getting
18 that one.
19       THE COURT: I won't comment on that one. If you
20 would communicate to Judge Jenkins with respect to the matters
21 that he actually has got pending, that they were taken care of
22 by the discovery plan.
23       MR. WILLIAMS: Just a quick question, your Honor.
24 With regard to the non-parties, I don't know if it makes sense
25 to send them the order on the entire discovery plan, but I

In Re Oracle Securities Litigation

SHEET 21   PAGE 161

161

1 think it would make sense if -- even if we carve out a separate
2 order for the non-parties because it will -- there will be some
3 difficulty getting them to comply without seeing an order from
4 the Court because they were awaiting an order on this issue.
5           THE COURT:  I understand that.  Why not?  I mean, I
6 don't know.  There is not going to be anything very secret in
7 this order.  I think you should just have one order, one plan
8 and --
9           MR. WILLIAMS:  Just send him the entire plan.
10          THE COURT:  You are going to have to provide
11 something with respect to them, like the stay is lifted with
12 respect to the ones that are done to the extent of the
13 following subject matters or whatever, however you are going to
14 put it, and then you give them that.  And you work out how you
15 deal with that, okay?
16          Okay.  Anything else I can help you with?
17          (No response.)
18          THE COURT:  You did a very good job.  I enjoyed it.
19 I thought I would never say that about a discovery dispute, but
20 thank you all.
21          (Whereupon, further proceedings in the
22           above matter were adjourned.)
23
24                    --oo--
25

PAGE 162

162

1
2
3               CERTIFICATE OF REPORTER
4
5       I, DEBRA L. PAS, Official Reporter for the United
6 States Court, Northern District of California, hereby certify
7 that the foregoing proceedings in C01-0988 MJJ, IN RE ORACLE
8 SECURITIES LITIGATION were reported by me, a certified
9 shorthand reporter, and were thereafter transcribed under my
10 direction into typewriting; that the foregoing is a full,
11 complete and true record of said proceedings as bound by me at
12 the time of filing.
13      The validity of the reporter's certification of said
14 transcript may be void upon disassembly and/or removal
15 from the court file.
16
17      _____
18      -· Debra L. Pas, CSR 11916, CRR, RMR, RPR
19              Wednesday, March 2, 2005
20
21
22
23
24
25

# Exhibit D

1   MAYER, BROWN, ROWE & MAW LLP
    Donald M. Falk (SBN 150256)
2   Lee H. Rubin (SBN 141331)
    Shirish Gupta (SBN 205584)
3   Two Palo Alto Square, Suite 300
    Palo Alto, California 94306
4   Telephone:    (650) 331-2030
    Facsimile:    (650) 331-2060
5   lrubin@mayerbrownrowe.com

6   MAYER, BROWN, ROWE & MAW LLP
    Alan N. Salpeter (admitted *pro hac vice*)
7   Javier Rubinstein (admitted *pro hac vice*)
    Vincent P. Schmeltz III (admitted *pro hac vice*)
8   190 South LaSalle Street
    Chicago, IL  60603-3441
9   Telephone:    (312) 782-0600
    Facsimile:    (312) 701-7711
10  jrubinstein@mayerbrownrowe.com

11  Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
    J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
12

13  ORACLE CORPORATION
    Dorian Daley (SBN 129049)
    James C. Maroulis (SBN 208316)
14  500 Oracle Parkway, Mailstop 5OP7
    Redwood Shores, California 94065
15  Telephone:    (650) 506-5200
    Facsimile:    (650) 506-7114
16  jim.maroulis@oracle.com

17                UNITED STATES DISTRICT COURT

18      NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

19

20  IN RE ORACLE CORPORATION           Case No. C-01-0988-MJJ
    SECURITIES LITIGATION              (Consolidated)

21                                     **DEFENDANTS' SUPPLEMENTAL
                                       RESPONSES TO FIRST
22  This Document Relates To:          SET OF INTERROGATORIES**

23  ALL ACTIONS.

24                                     **Judge Martin J. Jenkins**

25

26

27

28

1    00545 (Flash Report); NDCA-ORCL 00561-01772 (Red/Grey Books).  Finally, through Monday,

2    February 26, 2001, Oracle had closed "big deals" at nearly *triple* the rate of 3Q00.

3            Throughout this time, Mr. Ellison held Oracle's Executive Management Committee

4    accountable for giving him the most accurate possible estimates of Oracle's progress toward the

5    public projections—and he based his statements about the progress of 3Q01 on the information he

6    received.  As Vice Chancellor Strine found, it was an "undisputed fact that Ellison and Henley

7    actively questioned [their] subordinates about their numbers.  . . .  If, after creating an

8    environment in which hard questions about estimates were continually asked by EMC members

9    and by members of [Jennifer] Minton's team in a culture in which conservative projecting was the

10   rule, Ellison and Henley received — as they did — Best Estimates suggesting that Oracle would

11   meet the Market Estimates, the idea that material, adverse information existed simultaneously

12   with those Estimates is less, not more, tenable."  Op. at 70.

13

14   **INTERROGATORY NO. 4:**

15           Identify each of the "very, very large deals [that] didn't sign" referenced by you in the

16   March 15, 2001 third quarter financial results conference call.

17   **RESPONSE TO INTERROGATORY NO. 4:**

18           Defendants incorporate each of their General Objections as though fully set forth herein.

19   Subject to and without waiving these objections, Defendants will, in lieu of a written response,

20   produce responsive documents pursuant to Fed. R. Civ. P. 33(d).

21   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

22           Defendants incorporate each of their General Objections as though fully set forth herein.

23   Subject to and without waiving these objections, Defendants are in the process of investigating

24   and searching for the information requested and, as the information is obtained, will continue to

25   provide supplemental responses to this Interrogatory.

26

27

28

**INTERROGATORY NO. 5:**

State all facts upon which you based your statement made during Oracle's March 15, 2001 third quarter financial results conference call that "in the applications space, clearly, I think part of the reason we did so poorly was because of the slowdown in the U.S. economy."

**RESPONSE TO INTERROGATORY NO. 5:**

Defendants incorporate each of their General Objections as though fully set forth herein. Defendants further object to Interrogatory Number 5 as overbroad and unlikely to lead to the discovery of admissible evidence. Defendants further object to this interrogatory as unduly burdensome to respond in the time allotted, but are willing to meet and confer.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Defendants incorporate each of their General Objections as though fully set forth herein. Subject to and without waiving these objections, Defendants incorporate Supplemental Response to Interrogatory Number 1 as if it were set forth herein.

**INTERROGATORY NO. 6:**

Identify each contract that you indicated during the March 15, 2001 third quarter financial results conference call "slipped as a result of key executives delaying decisions to sign the deals when they represented the final signature."

**RESPONSE TO INTERROGATORY NO. 6:**

Defendants incorporate each of their General Objections as though fully set forth herein. Subject to and without waiving these objections, Defendants will, in lieu of a written response, produce responsive documents pursuant to Fed. R. Civ. P. 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Defendants incorporate each of their General Objections as though fully set forth herein. Subject to and without waiving these objections, Defendants are in the process of investigating and searching for the information requested and, as the information is obtained, will continue to provide supplemental responses to this Interrogatory.

**INTERROGATORY NO. 7:**

State all facts upon which you based your statement made during Oracle's March 15, 2001 third quarter financial results conference call that "the conversion rates were much less than normal in Q3."

**RESPONSE TO INTERROGATORY NO. 7:**

Defendants incorporate each of their General Objections as though fully set forth herein. Subject to and without waiving these objections, Defendants state that the statement that "the conversion rates were much less than normal in Q3" was based on Oracle's forecasting documents, including its 3Q01 Upside Reports and Pipeline Reports, as well as its monthly update reports, such as its Big Deal Reports, Flash Reports and Monthly/Quarterly Financial Reference Books, all of which Defendants produced as part of their Initial Disclosures.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Defendants incorporate each of their General Objections as though fully set forth herein. Subject to and without waiving these objections, Defendants respond as follows:

The December 11 Pipeline Report projected a conversion rate of 53% (identical to the rate in 3Q00). NDCA-ORCL 00505. Oracle's public projection, on the other hand, correlated to a far more conservative 42% conversion rate. Applying the 3Q00 conversion rate to the 3Q01 pipeline as of December 11, 2000 would have yielded earnings of $0.16 per share, well above the $0.12 per share projected on December 14, 2000.

As it turns out, Oracle's actual License revenues for 3Q01 were $1,108,917,000, reflecting a conversion rate of 37% of the December 11 pipeline, 17 percentage points ("pp") below the average conversion rate for the preceding seven quarters, and 7 pp lower than *any* conversion rate within the preceding seven quarters. NDCA-ORCL 00505 and 01916. Had Oracle experienced even the conservative 42% conversion rate, it would have generated sufficient income to report EPS of 12 cents.

Oracle's actual License revenues for 3Q01 reflected a conversion rate of 41% based on the January 15 pipeline. NDCA-ORCL 00515 and 01916. This again was 13 pp lower than the average conversion rate for the preceding seven quarters and 7 pp lower than *any* conversion rate

10

1   in the preceding two years.  NDCA-ORCL 00522.  Had Oracle repeated any of these historic

2   conversion rates in 3Q01, Oracle would have met its quarterly performance forecasts.  *See*

3   NDCA-ORCL 00515.

4

5   **INTERROGATORY NO. 8:**

6       Identify each of the 83 customers that you stated were "live" on 11i as of December 14,

7   2000.

8   **RESPONSE TO INTERROGATORY NO. 8:**

9       Defendants incorporate each of their General Objections as though fully set forth herein.

10  Subject to and without waiving these objections, Defendants will, in lieu of a written response,

11  produce responsive documents pursuant to Fed. R. Civ. P. 33(d).

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

13      Defendants incorporate each of their General Objections as though fully set forth herein.

14  Subject to and without waiving these objections, Defendants are in the process of investigating

15  and searching for the information requested and, as the information is obtained, will continue to

16  provide supplemental responses to this Interrogatory.

17

18  **INTERROGATORY NO. 9:**

19      Identify each of the 165 customers which George Roberts, Oracle Executive Vice

20  President of North American Sales, stated during the February 13, 2001 Robertson Stephens

21  Technology Conference in San Francisco were "live" on 11i as of February 13, 2001.

22  **RESPONSE TO INTERROGATORY NO. 9:**

23      Defendants incorporate each of their General Objections as though fully set forth herein.

24  Defendants further object to Interrogatory Number 9 as overbroad and unlikely to lead to the

25  discovery of admissible evidence.  Defendants further object to this interrogatory as unduly

26  burdensome to respond in the time allotted, but are willing to meet and confer.

27

28

1    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

2          Defendants incorporate each of their General Objections as though fully set forth herein.

3    Subject to and without waiving these objections, Defendants are in the process of investigating

4    and searching for the information requested and, as the information is obtained, will continue to

5    provide supplemental responses to this Interrogatory.

6

7    **INTERROGATORY NO. 10:**

8          Identify each customer you indicated during Oracle's March 1, 2001 pre-announcement

9    conference call "decided to delay their IT spending."

10   **RESPONSE TO INTERROGATORY NO. 10:**

11         Defendants incorporate each of their General Objections as though fully set forth herein.

12   Defendants further object to Interrogatory Number 10 as overbroad and unlikely to lead to the

13   discovery of admissible evidence.   Defendants further object to this interrogatory as unduly

14   burdensome to respond in the time allotted, but are willing to meet and confer.

15   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

16         Defendants incorporate each of their General Objections as though fully set forth herein.

17   Subject to and without waiving these objections, Defendants are in the process of investigating

18   and searching for the information requested and, as the information is obtained, will continue to

19   provide supplemental responses to this Interrogatory.

20

21   **INTERROGATORY NO. 11:**

22         Identify each of the 47 "reps" referenced in the Nick Classik e-mail to George Roberts

23   cited in the Delaware Chancery Court Opinion in *In re Oracle Deriv. Litig.*, Consolidated C.A.

24   No. 18751, 2004 Del. Ch. LEXIS 177 at *55-56 (Del. Ch. Nov. 24, 2004).

25   **RESPONSE TO INTERROGATORY NO. 11:**

26         Defendants incorporate each of their General Objections as though fully set forth herein.

27   Defendants further object to Interrogatory Number 11 as overbroad and unlikely to lead to the

28

12

1    discovery of admissible evidence.   Defendants further object to this interrogatory as unduly

2    burdensome to respond in the time allotted, but are willing to meet and confer.

3    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

4        Defendants incorporate each of their General Objections as though fully set forth herein.

5    Subject to and without waiving these objections, Defendants are in the process of investigating

6    and searching for the information requested and, as the information is obtained, will continue to

7    provide supplemental responses to this Interrogatory.

8

9    **INTERROGATORY NO. 12:**

10       Identify each of the 78 "field deals" which moved out of the quarter as referenced in the

11   Nick Classik e-mail cited in the opinion of the Delaware Chancery Court in *In re Oracle Deriv.*

12   *Litig.*, Consolidated C.A. No. 18751, 2004 Del. Ch. LEXIS 177 at *55 (Del. Ch. Nov. 24, 2004).

13   **RESPONSE TO INTERROGATORY NO. 12:**

14       Defendants incorporate each of their General Objections as though fully set forth herein.

15   Defendants further object to Interrogatory Number 12 as overbroad and unlikely to lead to the

16   discovery of admissible evidence.   Defendants further object to this interrogatory as unduly

17   burdensome to respond in the time allotted, but are willing to meet and confer.

18   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

19       Defendants incorporate each of their General Objections as though fully set forth herein.

20   Subject to and without waiving these objections, Defendants are in the process of investigating

21   and searching for the information requested and, as the information is obtained, will continue to

22   provide supplemental responses to this Interrogatory.

23

24   **INTERROGATORY NO. 13:**

25       Identify each of the 70 transactions which "slipped" in the "West Area" referenced in the

26   February 26, 2001 e-mail from George Roberts to Ellison, Henley and Jennifer Minton cited in

27   the opinion of the Delaware Chancery Court in *In re Oracle Deriv. Litig.*, Consolidated C.A. No.

28   18751, 2004 Del. Ch. LEXIS 177 at *54 (Del. Ch. Nov. 24, 2004).

1   **RESPONSE TO INTERROGATORY NO. 13:**

2          Defendants incorporate each of their General Objections as though fully set forth herein.

3   Defendants further object to Interrogatory Number 13 as overbroad and unlikely to lead to the

4   discovery of admissible evidence.  Defendants further object to this interrogatory as unduly

5   burdensome to respond in the time allotted, but are willing to meet and confer.

6   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

7          Defendants incorporate each of their General Objections as though fully set forth herein.

8   Subject to and without waiving these objections, Defendants are in the process of investigating

9   and searching for the information requested and, as the information is obtained, will continue to

10  provide supplemental responses to this Interrogatory.

11

12  **INTERROGATORY NO. 14:**

13         Identify each entity that conveyed to Oracle in Oracle's third fiscal quarter 2001 that it

14  could not or would not purchase Oracle software licenses or services in Oracle's third fiscal

15  quarter 2001 due to the United States economy, preservation of capital or information technology

16  spending.

17  **RESPONSE TO INTERROGATORY NO. 14:**

18         Defendants incorporate each of their General Objections as though fully set forth herein.

19  Defendants further object to Interrogatory Number 14 as overbroad and unlikely to lead to the

20  discovery of admissible evidence.  Defendants further object to this interrogatory as unduly

21  burdensome to respond in the time allotted, but are willing to meet and confer.

22  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

23         Defendants incorporate each of their General Objections as though fully set forth herein.

24  Defendants further object on the grounds that Interrogatory Number 14 requests information that

25  is beyond the knowledge of the Speakers and their direct reports.  Plaintiffs' inquiries regarding

26  information known to other individuals but not known to the Individual Defendants is not an

27  appropriate line of inquiry.  To the extent that Interrogatory Number 14 seeks information known

28

1   to the Speakers, Defendants object on the grounds that Interrogatory Number 14 is repetitive and

2   duplicative, in whole or in part, of Interrogatories Number 4 and Number 6.

4   Dated:  February 28, 2005               MAYER, BROWN, ROWE & MAW LLP

By:  _____
          Lee H. Rubin
        Attorneys for Defendants Oracle Corporation,
        Lawrence J. Ellison, Jeffrey O. Henley and
        Edward J. Sanderson

15

1

## PROOF OF SERVICE

2

I, Thelma Tannis, declare:

3

I am a resident of the State of California and over the age of eighteen years, and not a party

4

to the within action; my business address is: Two Palo Alto Square, Suite 300, 3000 El Camino

5

Real, Palo Alto, California 94306.

6

On February 28, 2005, I served the foregoing document(s) described as:

7

### DEFENDANTS' SUPPLEMENTAL RESPONSES
### TO FIRST SET OF INTERROGATORIES

8

9

☒ By transmitting via facsimile the document(s) listed above (exclusive of exhibits) to the fax number(s) set forth below on this date.

10

11

☒ By placing the document(s) listed above in a sealed envelope with postage prepaid, via First Class Mail, in the United States mail at Palo Alto, California addressed as set forth below.

12

13

14

15

William S. Lerach
Mark Solomon
Douglas Britton
**LERACH, COUGHLIN, STOIA,**
  **GELLER, RUDMAN & ROBBINS LLP**
401 B Street, Suite 1700
San Diego, CA 92101
Fax: (619) 231-7423

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
**LERACH, COUGHLIN, STOIA,**
  **GELLER, RUDMAN & ROBBINS LLP**
100 Pine Street, Suite 2600
San Francisco, CA 94111
Fax: (415) 288-4534

16

17

18

19

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

20

21

22

I declare under penalty of perjury that the foregoing is true and correct.

23

Executed on February 28, 2005 at Palo Alto, California.

24

25

*Thelma Tannis*

26

Thelma Tannis

27

28