1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   MARK SOLOMON (151949)
3  DOUGLAS R. BRITTON (188769)
   401 B Street, Suite 1600
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
           – and –
6  SHAWN A. WILLIAMS (213113)
   WILLOW E. RADCLIFFE (200087)
7  ELI R. GREENSTEIN (217945)
   JENNIE LEE ANDERSON (203586)
8  MONIQUE C. WINKLER (213031)
   100 Pine Street, Suite 2600
9  San Francisco, CA 94111
   Telephone: 415/288-4545
10 415/288-4534 (fax)

11 Lead Counsel for Plaintiffs

                     UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) Master File No. C-01-0988-MJJ <br> ) <br> ) <u>CLASS ACTION</u> <br> ) |
| This Document Relates To: <br><br> ALL ACTIONS. | ) PLAINTIFFS' MOTION TO COMPEL <br> ) (1) THE REPORT OF ORACLE CORP.'S <br> ) SPECIAL LITIGATION COMMITTEE <br> ) ("SLC"); AND (2) ALL INTERVIEW <br> ) MEMORANDA AND/OR NOTES THAT <br> ) WERE CONSIDERED BY THE SLC IN <br> ) PREPARING THE REPORT |
| | DATE: July 8, 2005 <br> TIME: 9:30 a.m. <br> CTRM: A, 15th Floor <br> Magistrate Judge <br> Joseph C. Spero |

**TABLE OF CONTENTS**

Page

I. Relief Sought ...................................................................................................................1

II. Introduction.....................................................................................................................1

III. The Document Request and Oracle's Response .............................................................3

IV. Procedural Background and Plaintiffs' Good Faith Efforts to Meet and Confer ............3

V. Argument ........................................................................................................................4

    A. Standard ..............................................................................................................4

    B. Defendants' Refusal to Produce the SLC Report and Associated Documents Is Contrary to Public Policy Favoring Access to Judicial Records .................................................................................................................5

    C. Oracle Has Waived the Attorney-Client Privilege and Attorney Work Product Protections that Might Have Applied to the Report or Associated Documents ............................................................................................................7

    D. Defendants Must Produce the SLC Report and the SLC's Interview Memoranda Because They Routinely Use the Court's Opinion in Delaware, Which Depended, in Part, on These Documents, to Defend This Case..................................................................................................................12

VI. Conclusion ....................................................................................................................13

# TABLE OF AUTHORITIES

Page

*Brown & Williamson Tobacco Corp. v. FTC*,
 710 F.2d 1165 (6th Cir. 1983) ................................................................................................7

*FTC v. Standard Fin. Mgmt. Corp.*,
 830 F.2d 404 (1st Cir. 1987) ..................................................................................................8

*Farber v. Public Service Co. of New Mexico*,
 No. 89-0456 JB/WWD, 1991 U.S. Dist. LEXIS 18051
 (D.N.M. Apr. 4, 1991) ..........................................................................................................11

*Foltz v. State Farm Mut. Auto Ins. Co.*,
 331 F.3d 1122 (9th Cir. 2003) ....................................................................................... passim

*Gannett Co. v. DePasquale*,
 443 U.S. 368, 99 S. Ct. 2898 (1979) ......................................................................................5

*Desaigoudar v. Meyercord*,
 108 Cal. App. 4th 173 (2003) ..........................................................................................4, 12

*In re Cont'l Ill. Sec. Litig.*,
 732 F.2d 1302 (7th Cir. 1984) ....................................................................................... passim

*In re Oracle Corp. Derivative Litig.*,
 824 A.2d 917 (Del. Ch. 2003), *aff'd*,
 2005 Del. LEXIS 150 (Del. Apr. 14, 2005) .................................................................5, 6, 11

*In re Perrigo Co.*,
 128 F.3d 430 (6th Cir. 1997) ..........................................................................................10, 11

*In re Qwest Communications Int'l, Inc. Sec. Litig.*,
 No. 01-cv-01451-REB-CBS (D. Colo. May 31, 2005) ....................................................9, 10

*Joy v. North*,
 692 F.2d 890 (2d Cir. 1982) .......................................................................................... passim

*Nixon v. Warner Communications, Inc.*,
 435 U.S. 589, 98 S. Ct. 1306 (1978) ......................................................................................5

*Phillips v. GMC*,
 307 F.3d 1206, 1213 (9th Cir. 2002) ......................................................................................6

*Zapata Corp. v. Maldonado*,
 430 A.2d 779 (Del. 1981) ................................................................................................6, 12

*Zitin v. Turley*,
 No. CIV 89-2061-PHX-CAM, 1991 U.S. Dist. LEXIS 10084
 (D. Ariz. June 25, 1991) .....................................................................................................7, 9

PLAINTIFFS' MOTION TO COMPEL THE REPORT OF ORACLE CORP.'S SLC AND ALL MEMORANDA AND/OR NOTES CONSIDERED BY THE SLC - C-01-0988-MJJ

- ii -

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 26(b)(1) ...................................................................................................................4
    Rule 26(b)(2) ...................................................................................................................4
    Rule 26(c).......................................................................................................................12

Civil Local Rules
    Rule 7-2...........................................................................................................................1
    Rule 34 ............................................................................................................................1
    Rule 37-1 ........................................................................................................................3

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on July 8, 2005, at 9:30 a.m., in Courtroom A, 15th Floor, of the United States District Court, Northern District of California, before the Honorable Joseph C. Spero, plaintiffs, by counsel, will and hereby do move, pursuant to Local Rule 7-2, Rule 34 of the Federal Rules of Civil Procedure, and by Order of this Court dated March 10, 2005, that "Plaintiffs may file a motion to compel production of documents related to the SLC's investigation including production of the SLC Report itself," for an order compelling defendants to produce the report of Oracle's Special Litigation Committee (the "Committee" or the "SLC") that defendants submitted in connection with their motion to terminate a derivative action filed on behalf of Oracle in Delaware. This motion is based on this Notice of Motion and Motion, this memorandum in support of the Motion, the Declaration of Douglas R. Britton, as well as the records contained in the Court's file in this matter and such further evidence as may be presented prior to or at the time of the hearing.

**I.  Relief Sought**

Plaintiffs move this Court for an order compelling defendants to produce (1) the report of the SLC organized by Oracle to investigate claims asserted against defendants Larry Ellison and Jeff Henley in derivative actions filed in Delaware and California; and (2) the interview memoranda and/or notes that the Committee relied upon in preparing the report. Defendants object to producing these documents on the ground that they are subject to the attorney-client privilege and the attorney work product doctrine. Britton Decl., Ex. 1.[1]

**II.  Introduction**

Neither the attorney-client privilege nor the attorney work product doctrine protect the documents that plaintiffs are demanding. The law is clear. Where, as here, defendants rely upon an SLC report and related documents in support of a motion to terminate a derivative action, defendants

---

[1] All exhibit references to the "Britton Decl." are to the Declaration of Douglas R. Britton in Support of Plaintiffs' Motion to Compel (1) the Report of Oracle Corp.'s Special Litigation Committee ("SLC"); and (2) All Interview Memoranda and/or Notes that Were Considered by the SLC in Preparing the Report.

1  are not entitled to protection under any relevant privilege. When Oracle produced the SLC report in
2  connection with its motion to terminate the derivative action filed on behalf of Oracle in Delaware, it
3  waived any privilege to which it was entitled for both the report itself and all materials used in
4  preparation of the report. *Joy v. North*, 692 F.2d 890, 893 (2d Cir. 1982) (ruling that filing a special
5  litigation committee report in connection with a potentially dispositive motion waives the attorney-
6  client privilege and attorney work product protections with respect to all materials used in
7  preparation of the report as well as the report itself); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1314
8  (7th Cir. 1984) ("*Continental*") (special litigation committee reports used in adjudication stages of
9  litigation should be available for public inspection unless exceptional circumstances require
10 confidentiality). Ninth Circuit precedent is in accord with these reasoned decisions. In *Foltz v. State*
11 *Farm*, the Ninth Circuit clearly stated that documents used in connection with a dispositive motion
12 are not entitled to protection. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1134 (9th
13 Cir. 2003) (reversing a district court's refusal to grant access to sealed materials that served as a
14 basis of a dispositive motion). If they are used in support of a potentially dispositive motion, they
15 must be produced absent extraordinary circumstances.

16 Defendants' position that these documents remain protected despite their use in Delaware is
17 therefore at odds with both well-established principles of public access to judicial records and
18 relevant case law. It is also inconsistent with their position in Delaware where defendants conceded
19 in open court that their production of the SLC report waived the privilege:

20 > That is correct, Your Honor. ***The committee, by putting out the special litigation committee report, has waived its privilege***.
21

22 Britton Decl., Ex. 2 at 80:8-15.[2] And now that the court in Delaware received the report and other
23 documents in connection with defendants' motion to terminate, defendants' waiver is clear. The
24 report and all documents used by the SLC to prepare the report must be produced. This is especially
25 true here where Oracle has entangled this litigation with that of the Delaware Chancery Court.
26 Indeed, they have repeatedly asserted in court documents that Judge Strine's opinion in Delaware,

---

27 [2] Here, as elsewhere, all emphasis is added and citations are omitted unless otherwise noted.
28

PLAINTIFFS' MOTION TO COMPEL THE REPORT OF ORACLE CORP.'S SLC AND ALL
MEMORANDA OR NOTES CONSIDERED BY THE SLC - C-01-0988-MJJ                    - 2 -

1  which was based in part on the SLC report and the interview notes that plaintiffs seek here, should
2  influence the outcome in this case and result in its dismissal. Plaintiffs are entitled to these
3  obviously relevant documents.

### III. The Document Request and Oracle's Response

Document Request No. 47 and Oracle's response to that request are as follows:

REQUEST NO. 47:

All documents and communications distributed to or prepared, received or reviewed by any member of the SLC relating to the SLC investigation of claims in the Delaware Derivative Action, the California Derivative Action, and the Federal Securities Action.

RESPONSE TO REQUEST NO. 47:

Defendants incorporate each of their General Objections as though fully set forth herein. Defendants further object to Request No. 47 as overbroad, unduly burdensome. Defendants further object to Request No. 47 as the SLC's report, interview summaries and notes, and advice and analysis received from the SLC's counsel (or consultants acting at the direction of counsel) are protected by the attorney-client privilege and attorney work product doctrine.

Britton Decl., Ex. 1 at 24-25.

### IV. Procedural Background and Plaintiffs' Good Faith Efforts to Meet and Confer

In accordance with Federal Rule of Civil Procedures 26(c) and Civil Local Rule 37-1, plaintiffs' counsel has conferred with counsel for Oracle and has been unable to resolve the dispute informally. Plaintiffs first met and conferred with defendants concerning the SLC report and related documents at the Court ordered meet and confer between the parties on February 18, 2005. Defendants responded at that meet and confer that they would consider plaintiffs' request and respond at a later date. On February 23, 2005, the parties submitted a joint discovery plan to the Court which described their respective positions – defendants had resolved not to produce the report:

**DOCUMENTS RELATING TO THE SPECIAL LITIGATION COMMITTEE (SLC):**

Plaintiffs' Position:

Plaintiffs seek documents related to the SLC investigations of insider trading, malfeasance and/or accounting allegations raised in plaintiffs' RSAC. The SLC specifically investigated claims related to the securities fraud class action.

Defendants' Position:

Defendants have not agreed to produce documents from the SLC claiming that the report is covered by a privilege.

Plaintiffs' Letter Brief – Joint Discovery Plan (#233 on the docket) at 16. The parties raised the issue with the Court during the hearing on March 1, 2005. After hearing the parties' arguments, the Court ordered that "Plaintiffs may file a motion to compel production of documents related to the SLC's investigation including production of the SLC Report itself." Britton Decl., Ex. 3 at 3.

Following the hearing, plaintiffs contacted defendants' counsel on April 14, 2005, to clarify their position on producing documents relating to the SLC's investigation. Defendants responded by letter on April 22, 2005, and confirmed their position that "[n]either the Report nor notes of the attorneys representing the SLC is discoverable. Each is protected by both attorney-client privilege and the work-product immunity doctrine." *Id.*, Ex. 4 at 1. Defendants outlined their position but ignored the wealth of authority holding that the very SLC documents that plaintiffs are requesting are discoverable when the report serves as a basis for a judicial determination on a motion to terminate – as is the case here. *Id*.

## V.     Argument

### A.     Standard

The scope of discovery under the Federal Rules of Civil Procedure is extremely broad. Under Rule 26(b)(1), parties may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." This includes the "existence, description, nature, custody, condition, and location of any books, documents, or other tangible things." *Id.* "Relevant information need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Under Rule 26(b)(2), the Court has the discretion to limit document discovery in certain circumstances enumerated in the Rule. None of the enumerated circumstances apply to plaintiffs' request for the SLC report and the interview memoranda because: (1) the document request is not cumulative or duplicative of other document requests; (2) Oracle is in sole possession of the report and associated documents; (3) the materials are not discoverable through any other means; and (4) the act of producing the report and associated documents is not burdensome since Oracle waived

the attorney-client privilege and work product protection by utilizing the report on its motion to terminate. There is no other valid basis with which to withhold the documents.

### B. Defendants' Refusal to Produce the SLC Report and Associated Documents Is Contrary to Public Policy Favoring Access to Judicial Records

Defendants do not dispute that Oracle's SLC not only produced the SLC report to all parties to the Delaware action, but that it also submitted the report and other related documents to the Delaware Chancery Court in support of its motion to terminate that action, making it part of the judicial record. The sole question considered by the Delaware court was whether the SLC had met its burden of persuasion and whether it had demonstrated that "there [was] no material issue of fact calling into doubt its independence." *See In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 920 (Del. Ch. 2003), *aff'd*, 2005 Del. LEXIS 150 (Del. Apr. 14, 2005). The court focused directly on the SLC report in making its determination:

- "I need examine only the more difficult question, which relates to the SLC's independence. . . . **Noticeably absent from the SLC Report** was any disclosure of several significant ties between Oracle or the Trading Defendants and Stanford University . . . ." *Id.* at 929.

- "*I endeavor a rough attempt to capture the essence of the Report* in understandable terms, surfacing some implicit premises that I understand to have [under girded] the SLC's conclusions." *Id.* at 925-26.

In addition to specifically referencing the report, the opinion went so far as to describe the report (totaling 1,110 pages excluding appendices and exhibits) and summarized the SLC's findings and conclusions. *Id.* at 925-29. As explained below, defendants cannot withhold the report on privilege grounds under these circumstances.

The Supreme Court has left no doubt that there is a federal common-law right "to inspect and copy . . . judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306 (1978); *Gannett Co. v. DePasquale*, 443 U.S. 368, 387 n.15, 99 S. Ct. 2898 (1979) ("For many centuries, both civil and criminal trials have traditionally been open to the public."). And the Ninth Circuit recently confirmed that this right to inspect and copy judicial records and documents "extends to pretrial documents filed in civil cases, including materials submitted in connection with motions for summary judgment." *Foltz*, 331 F.3d at 1134. Notably,

1  Delaware courts apply "a procedural standard akin to a summary judgment" on a motion to
2  terminate. *See Oracle*, 824 A.2d at 928 (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del.
3  1981)). As a result, documents used in connection with a motion to terminate are subject to the right
4  to inspect and copy judicial records. *Foltz*, 331 F.3d at 1134; *Continental*, 732 F.2d at 1309 ("the
5  presumption of [judicial] access applies to the hearings held and evidence introduced in connection
6  with Continental's motion to terminate").

7  While the Ninth Circuit has not addressed the issue of protection for SLC reports in
8  particular, it has made clear that **any** document used in connection with a dispositive motion must be
9  made available publicly absent extraordinary circumstances. *Foltz*, 331 F.3d at 1135. In *Foltz*, the
10 Ninth Circuit stated that "[i]n this circuit, we start with a strong presumption in favor of access to
11 court records" when analyzing the public's right to a document that is part of the judicial record. *Id.*
12 The presumption "is not rebutted where . . . documents subject to a protective order are filed under
13 seal as attachments to a dispositive motion" – as they were in Delaware. *Id.* at 1136. In so holding,
14 the *Foltz* court deliberately limited prior case law that had "carved out an exception to the
15 presumption of access . . . [for] '***nondispositive*** motion[s].'" *Id.* at 1135 (quoting *Phillips v. GMC*,
16 307 F.3d 1206, 1213 (9th Cir. 2002)) (emphasis in original). For dispositive motions, however, the
17 Court held that the exception does not apply. *Id.*

18 Here, Oracle attempts to do what the Ninth Circuit expressly forbids. It asks the Court to
19 protect the SLC report and the interview memoranda even though Oracle offered the report in
20 support of its dispositive motion to terminate. And they seek protection now even though the
21 purported harm that justified sealing the documents in Delaware has long since passed. In fact, the
22 Delaware court apparently permitted the documents to be sealed because defendants had argued that
23 unsealing the documents would have harmed Oracle in this case, which was then still at the motion
24 to dismiss stage and subject to a discovery stay. Britton Decl., Ex. 5 at 11 ("Unsealing the transcript
25 would make available to the Plaintiffs in the class action against Oracle information that could be
26 used in a misleading or incomplete manner" on an amended complaint.). Given that this case is now
27 in discovery, the only plausible basis for continued confidentiality is to protect Oracle from the
28

disclosure of damaging facts and resulting harm in this ongoing litigation – clearly insufficient to justify defendants' position.

Ninth Circuit courts reject the proposition that the presumption in favor of access can be overcome by a litigant who demonstrates that it "might be embarrassed, incriminated, or exposed to litigation through dissemination" of the materials at issue. *Foltz*, 331 F.3d at 1136; *see also Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) ("[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records"). The presumption in favor of public access to judicial records therefore does not afford a defendant the right to withhold documents simply because the materials at issue might expose that party to increased exposure or damage its position in ongoing litigation. *Id*. Indeed, defendants cannot claim that public access to the report or associated documents would cause a hardship or have a deleterious impact on Oracle outside the sphere of its strategic interests in this ongoing litigation. The report addresses conduct that occurred as far back as 2000. Any harm that could have befallen Oracle outside of this litigation has long since passed.

### C. Oracle Has Waived the Attorney-Client Privilege and Attorney Work Product Protections that Might Have Applied to the Report or Associated Documents

Numerous courts hold that filing an SLC report and other documents in connection with a motion to terminate constitutes a waiver as it removes the "confidentiality" concerns that justify a privilege. *Joy*, 692 F.2d at 893; *Continental*, 732 F.2d at 1314-15; *Zitin v. Turley*, No. CIV 89-2061-PHX-CAM, 1991 U.S. Dist. LEXIS 10084, at *15 (D. Ariz. June 25, 1991). Nevertheless, Oracle will undoubtedly assert that the requested documents are entitled to protection because it filed the documents in the Delaware Chancery Court under seal pursuant to a protective order. Although the Ninth Circuit has yet to confront the issue head on, the decisions cited above flatly reject this position. *Id.*

In the leading case of *Joy v. North*, the Second Circuit held that parties waive any applicable privilege by submitting an SLC report in connection with a dispositive motion. 692 F.2d at 892. "[I]f the special litigation committee recommends termination and a motion for judgment follows,

1 the committee must disclose to the court and the parties not only its report but all underlying data. To the extent that communications arguably protected by the attorney-client privilege may be involved in that data, ***a motion for judgment based on the report waives the privilege***." *Id*. at 893. The court was equally unambiguous in rejecting the applicability of the attorney work product doctrine. It held that once the report is filed with the court as part of a dispositive motion (or even communicated to the SLC), the privilege is waived:

> The work product immunity will apply to the documents usually included within its terms to the extent that they are working papers of the committee's counsel and are not communicated to the committee. ***Once communicated, the immunity may not be claimed, since the papers may be part of the basis for the committee's recommendations***.

*Id.* at 893-94.

The court in *Joy* prefaced its conclusion by highlighting the important difference between the discovery and adjudication stages of litigation. The court observed that while discovery involves the use of a compulsory process to facilitate orderly preparation for trial, "very different considerations apply" at the adjudication stage. *Id.* at 893. The court's conclusion was based on the fact that "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Id.* As a result, when a district court relies upon a document "in determining the litigants' substantive rights, and in performing its adjudicatory function . . . [t]he common law presumption of public access" attaches to the documents and waives any applicable privilege. *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). *Joy* therefore echoes the Ninth Circuit's view in *Foltz* that a distinction should be drawn between the public's right to access documents filed in connection with dispositive proceedings and those which are not – the right of public access to documents used in dispositive proceedings trumps other considerations.

The Seventh Circuit agrees. *See Continental*, 732 F.2d at 1314-15. In *Continental*, the court was confronted with an appeal of a collateral order by the district court ordering the defendant corporation to produce its SLC report to a group of newspapers who had filed a motion to gain access but who were not otherwise involved in the case. *Id*. at 1306-07. After discussing the "vital" importance of "[p]ublic scrutiny of the judicial process," the court concluded that "we agree with the

Second Circuit, that special litigation committee reports used in the adjudication stages of derivative litigation should be available for public inspection unless exceptional circumstances require confidentiality." *Id.* at 1313-14 (citing *Joy*, 692 F.2d at 893); *id.* at 1315 ("[W]hen the report is used in an adjudicative procedure to advance the corporate interest, there is a strong presumption that confidentiality must be surrendered.").

The *Continental* court observed that both its holding and the holding in *Joy* are "in keeping with the general rule that protection from disclosure is available only when the party asserting a privilege has maintained confidentiality." *Id.* at 1314. By filing the report as evidence in connection with a dispositive motion and then discussing the report's contents in open court at a hearing before the district court judge, the court concluded that "strict confidentiality" had not been maintained. *Id.* In other words, defendants' decision to utilize the SLC report in connection with a dispositive motion waived the privilege for all purposes.[3] *Id.*; *see also In re Qwest Communications Int'l, Inc. Sec. Litig.*, No. 01-cv-01451-REB-CBS, slip op. at 11 (D. Colo. May 31, 2005) ("[t]he court agrees . . . that Qwest waived any attorney-client or work product privilege to the [investigative] memo when it produced to Plaintiffs a memorandum written by Iwan that contained a summary of the conclusions of the [investigative] memo") (Britton Decl., Ex. 6). And this waiver is solidified by defendants' repeated reference to the report and its contents in open court on their motion for summary judgment:

- "When he was first interviewed by the SLC in 2002, in May, Mr. Ellison told them that he relies primarily on actual sales and pipeline data rather than focusing on what he called the mood ring forecast." Britton Decl., Ex. 7 at 187:21-24;

- "The second interview, in late September, 2002, the SLC specifically questioned him about that comment. And he said, well, he relies on the actuals, but those numbers are of limited value in evaluating the company's prospects of meeting revenue and earnings targets because – back to the hockey stick." *Id.* at 188:5-11; and

---

[3] District courts in this Circuit have followed this analysis. *See, e.g., Zitin v. Turley,* 1991 U.S. Dist. LEXIS 10084, at *15 ("By filing its motion for summary judgment based on the report of the Committee, the Corporation has waived any claims of privilege and any work product immunity to the extent that counsel communicated the information or documents to the committee.").

- "This is from the first SLC interview with Mr. Ellison in May of 2002. And in the interview says that, 'Ellison noted that the actual sales numbers from Q3 FY '01, which were very strong at that point in the quarter, indicated that the time he sold was the perfect time to sell.'" *Id.* at 239:15-20.

*Qwest*, slip op. at 12 ("'The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'") (Britton Decl., Ex. 6). Defendants cannot legitimately claim now that they have a continued expectation of confidentiality that would justify their privilege assertions. *Continental*, 732 F. 2d at 1314-15 (privilege waived where defendants discussed SLC report's contents in open court).

Despite the obvious waiver, defendants have cited *In re Perrigo Co.*, 128 F.3d 430 (6th Cir. 1997), to support their argument that Oracle did not waive its privilege by producing the report to the derivative plaintiffs. Britton Decl., Ex. 4 at 1. Defendants' reliance is misplaced. In *Perrigo*, the Sixth Circuit determined that the mere act of filing an SLC report in support of a motion to dismiss does not automatically waive the relevant privileges and protections. *See Perrigo*, 128 F.3d at 438-39. In an apparent effort to reconcile what the court found to be competing principles, however, the court suggested that once the documents were considered a part of the "judicial record" (the district court had not yet ruled upon defendants' motion), they would become public unless the court found otherwise at a hearing specifically designed to determine whether extraordinary circumstances justified continued confidentiality:

> This Report should not become a part of the "judicial record" until the district court has read the Report and has adequately weighed the interests of public against the interests of Perrigo in maintaining its privilege as to all or part of the Report. If and when the district court intends to rely on the Report in making a decision in this case, then at that time it should conduct a hearing regarding whether the Report or parts thereof should be disclosed to the public, or whether that information should remain sealed.

*Id.* at 440. Thus, *Perrigo* left intact the district court's discretion to protect the public's interest in access to the judicial record if the court relied on the special litigation committee's report in adjudicating the action before it. *Id.* In fact, because the district court had not yet seen the SLC report, the *Perrigo* court was forced to advise the district court as to how it might proceed in a

variety of vague, hypothetical situations, none of which were actually before the court. *Id.* at 440-41.[4]

By contrast, questions in this case are not presented in the abstract. Even if this Court were to accept *Perrigo* wholesale, plaintiffs respectfully submit that the Court should order disclosure based on the extent of the Delaware court's reliance on the SLC report and the presence of the report in the judicial record – the Delaware court's ruling turned on that court's extensive, substantive review of the SLC report. *See Oracle*, 824 A.2d 917. Of course, under *Perrigo*, the Delaware Court would have had the discretion to protect "highly confidential information, business trade practices or secrets, or other materials helpful to competitors and prejudicial to Perrigo itself" – extraordinary facts that would justify continued confidentiality. 128 F.3d at 439-40. The only harm that defendants pointed to here, however, was this case proceeding to discovery, which has happened independent of the SLC report. Requiring Oracle to produce the report now would create no harm and especially not the kind of harm contemplated in *Perrigo*.

Oracle chose to file the SLC report and related documents in connection with a dispositive motion in the Delaware action. That court subsequently relied heavily on those documents in adjudicating the SLC's motion to terminate and summarized and described the report in detail. *See Oracle*, 824 A.2d at 925-29. Under any interpretation of *Joy*, 692 F.3d 890, *Continental*, 732 F.2d 1302, or *Perrigo*, 128 F.3d 430, defendants have waived their claim to protection under the attorney-client privilege and the attorney work product doctrine with respect to the report and all documents that were considered in preparing the report. That defendants assert blanket protection under the attorney-client privilege is surprising given that the Delaware court, in a published opinion, not only made "a rough attempt to capture the essence of the Report," but described the report's contents and quoted from the report. *Oracle*, 824 A.2d at 925. There has been a clear waiver in this case.

---

[4] The only other decision that defendants cited to support their position was *Farber v. Public Service Co. of New Mexico*, No. 89-0456 JB/WWD, 1991 U.S. Dist. LEXIS 18051 (D.N.M. Apr. 4, 1991). *Farber* is wholly inapposite since the SLC documents at issue had not been filed and/or used in connection with a dispositive motion. *Id.* at *3-*5. The same is obviously not true here.

**D. Defendants Must Produce the SLC Report and the SLC's Interview Memoranda Because They Routinely Use the Court's Opinion in Delaware, Which Depended, in Part, on These Documents, to Defend This Case**

Courts routinely require special litigation committees to produce to plaintiffs their reports and investigative memoranda where, as here, they are necessary to address arguments advanced by the committee in defending against the suit. *See*, *e.g.*, *Zapata*, 430 A.2d at 788 ("Under appropriate Court supervision, akin to proceedings on summary judgment, each side should have an opportunity to make a record on the motion."). Access to these critical documents are required where they could form the basis of a court's decision to resolve the suit – whether on a motion to dismiss or on a motion for summary judgment. *Id.*; *see also Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 190-91 (2003) ("it is beyond question that a plaintiff ought to be permitted discovery on these issues [related to the SLC] in order to meet the defendants' motion"). The reason for this access is simple and applies with equal force in this case – SLCs should not be able to operate in secret when their work can be used against a party in litigation:

> We simply do not understand the argument that derivative actions may be routinely dismissed on the basis of secret documents. We cannot say what the effect on investor confidence would be if special litigation committees were routinely allowed to do their work in the dark of night. We believe, however, that confidence in the administration of justice would be severely weakened. Indeed, any other rule might well create serious constitutional issues.

*Joy*, 692 F.2d at 893.

While the foregoing cases discuss production in the derivative context, defendants' use in this case of the Delaware court's opinion as a basis for their defense implicates the same considerations and requires that defendants produce the documents here. Plaintiffs are entitled to the SLC report and the interview notes in order to meet defendants' certain motion for summary judgment, which will undoubtedly rely in large measure on Judge Strine's opinion in Delaware and the facts underlying that opinion that were developed by the SLC. Not only have defendants noted their urgency to file such a motion in this case, but they have also repeatedly argued to this Court (both in pleading and at oral argument) that this case has already been resolved in their favor in Delaware. *See* Defendants' Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) and Memorandum of Points and Authorities, filed on January 10, 2005, at 7 ("The Delaware Court of

1  Chancery . . . recently resolved the underlying merits of this very case in a parallel shareholder
2  derivative action . . . .") (Ex. 8). While the Court has correctly acknowledged that this case will live
3  or die on its own, defendants nevertheless continue to emphasize the Delaware court's opinion. Here
4  are but a few ***arguments*** that defendants made in their supplemental responses to plaintiffs' first set
5  of interrogatories:

- "'Despite the fact that its revenues tended to come in quite close to the end of quarters, Oracle had successfully met its earnings projections in every quarter from 1998 through 2Q 01.' *In re Oracle Corp. Deriv. Litig.*, C.A. No. 18751 (Del. Ct. Chancery – December 2, 2004 Opinion) . . . ." Britton Decl., Ex. 9 at 2;

- "As Vice Chancellor Strine recognized, 'The undisputed evidence [is] that Oracle's 3Q 01 prospects weakened substantially in the last month of the quarter (February 2001), the month following the completion of trading by Henley and Ellison, largely due to customers refusing to close deals in the final days of the quarter.' Strine Op. at 3." *Id*. at 3; and

- "As Vice Chancellor Strine recognized in his December 2004 decision in *In re Oracle Derivative Litigation*, the Covisint deal 'gave Oracle a strong start for the quarter and that revenue was included in the December 11 Upside Report. And, as of that time, the December 11, 2000 Pipeline Report was showing total company Pipeline growth of 52%.' Op. at 20." *Id.* at 7.

Defendants' reliance on Judge Strine's opinion, which was based, at least in part, on the SLC report is extensive. Like derivative plaintiffs defending against a motion to terminate, plaintiffs here are entitled to the report and the interview memoranda as defendants clearly intend to take advantage of these documents (through Judge Strine's opinion) in defending against this suit.

## VI. Conclusion

For all of the foregoing reasons, plaintiffs respectfully request that the Court order Oracle to produce the SLC report and the associated documents forthwith.

DATED: June 3, 2005                    Respectfully submitted,

                                       LERACH COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP
                                       WILLIAM S. LERACH
                                       MARK SOLOMON
                                       DOUGLAS R. BRITTON


                                                   /S/ DOUGLAS R. BRITTON
                                                   DOUGLAS R. BRITTON

|   |   |
|---|---|
| 1 |   |
| 2 | 401 B Street, Suite 1600<br>San Diego, CA  92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax) |
| 3 |   |
| 4 | LERACH COUGHLIN STOIA GELLER<br>  RUDMAN & ROBBINS LLP<br>SHAWN A. WILLIAMS<br>WILLOW E. RADCLIFFE<br>ELI R. GREENSTEIN<br>JENNIE LEE ANDERSON<br>MONIQUE C. WINKLER<br>100 Pine Street, Suite 2600<br>San Francisco, CA  94111<br>Telephone:  415/288-4545<br>415/288-4534 (fax) |

Lead Counsel for Plaintiffs

S:\CasesSD\Oracle3\BRF00021587.doc

PLAINTIFFS' MOTION TO COMPEL THE REPORT OF ORACLE CORP.'S SLC AND ALL
MEMORANDA OR NOTES CONSIDERED BY THE SLC - C-01-0988-MJJ         - 14 -

DECLARATION OF SERVICE

I hereby certify that on June 3, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys denoted on the Court's Electronic Mail Notice List. I hereby certify that I have caused this document to be mailed by the United States Postal Service and/or faxed to the non-CM/ECF participants listed on the attached Manual Notice Service List.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of June 2005, at San Diego, California.

           /S/ DOUGLAS R. BRITTON
           DOUGLAS R. BRITTON

**MANUAL NOTICE SERVICE LIST**
*In re Oracle Corporation Securities Litigation*

| | |
|---|---|
| Dorian Daley<br>Loren G. Segal<br>500 Oracle Parkway<br>Redwood City, CA  94065<br>Telephone:  650/506-5200<br>650/506-7114 (fax) | Corey D. Holzer<br>Holzer Holzer & Cannon LLC<br>1117 Perimeter Center West<br>Suite E-107<br>Atlanta, GA 30338<br>Telephone:  770/392-0090<br>770/392-0029 (fax) |
| Brian P. Murray<br>Murray Frank & Sailer LLP<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>Telephone:  212/682-1818<br>212/682-1892 (fax) | Alan Norris Salpeter<br>Mayer, Brown, Rowe & Maw<br>190 South LaSalle Street<br>Chicago, IL  60603<br>Telephone:  312/782-0600<br>312/701-7711 (fax) |
| Donald M. Falk<br>Shirish Gupta<br>Mayer, Brown, Rowe & Maw*<br>Two Palo Alto Square, Suite 300<br>Palo Alto, CA  60603<br>Telephone:  650/331-2030<br>650/331-2060 (fax) | |

\* Denotes service via facsimile and overnight delivery