# EXHIBIT 5

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

*290*

| | |
|---|---|
| IN RE ORACLE CORPORATION<br>DERIVATIVE LITIGATION | Consolidated<br>C.A. No. 18751 |

**REPLY MEMORANDUM IN SUPPORT OF
THE COMMITTEE'S MOTION TO SEAL PORTIONS
OF THE MAY 28, 2003 ORAL ARGUMENT TRANSCRIPT**

The Special Litigation Committee ("Committee") of Nominal Defendant Oracle

Corporation ("Oracle" or the "Company"), by and through its undersigned counsel,

submits this reply memorandum in support of the Committee's Motion to Seal

Portions of the May 28, 2003 Oral Argument Transcript (D.I. 245), and states as

follows:

## Introduction

1.    In *Nixon v. Warner Communications, Inc.*, the United States Supreme

Court stated "[e]very court has supervisory power over its own records and files, and

access has been denied where court files might have become a vehicle for improper

purposes. . . ."  435 U.S. 589, 597-98 (1974).  The discretion of the Court to seal

records is not limited to proprietary commercial information, but extends to any

information at risk of being utilized for an improper purpose.  *C v. C*, 320 A.2d 717,

723 (Del. 1974) (reversing the Family Court's refusal to seal its records to protect the privacy of litigants, and stating that "[t]here can be no doubt as to the power of the court to prevent such improper use of its records.").

2.    Similarly, this Court noted during the May 16, 2003 telephonic hearing on the Committee's Motion for a Protective Order, "one of the reasons the Court is able to facilitate the effective litigation of cases like this . . . is by implementing confidentiality orders which allow plaintiffs access to what they need to conduct litigation while protecting the legitimate business interests of the corporations [in whom] the stockholders have an economic interest."[1]

3.    During the May 28, 2003 oral argument on the Committee's Motion to Terminate, both counsel for the Committee and counsel for Plaintiffs engaged in substantial and detailed colloquies with the Court on matters concerning, *inter alia*, Oracle's cash flow patterns, forecasting practices, financial analyses, negotiation and sales procedures, and experiences with software products. These colloquies stemmed from counsels' and the Court's exposure to and understanding of the privileged, confidential, and proprietary information contained in the Committee's 1,500 page Report and the 20,000 pages of exhibits that accompanied it, as Plaintiffs themselves admit.[2]

---

[1]    Transcript of May 16, 2003 Hearing (D.I. 227) ("May 16 Tr.") at 20.

[2]    Response at 1.

4.    While conceding that those portions of the transcript for which the Committee seeks continuing confidentiality include "information contained in the Committee's so-called confidential report,"[3] Plaintiffs reach the striking conclusion that the information should be made public, thereby incidentally, if not intentionally, allowing the plaintiffs in the related class actions to have access to that information.[4] Although Plaintiffs argue that the financial information discussed in Court is "stale" — the same argument they made in defense of their earlier disclosure of the Report and its exhibits to Ray Lane in violation of the confidentiality order — Plaintiffs never address the obvious fact, also noted on the earlier motion concerning Plaintiffs' misuse of the Report, that this information is the product of an investigation that is privileged and constitutes work product.  The information was made available to Plaintiffs, and the entire motion to terminate process was undertaken, because Plaintiffs claim they are acting for Oracle and have fiduciary duties to Oracle in conducting this litigation.  Moreover, whether the information is commercially "stale," privileged or constitutes work product, the Court may seal this information to prevent it from being used for the improper purpose of aiding a claim against the Company.

---

[3]  *Id.*

[4]  The Complaint in the class action was dismissed for failure to state a claim under the heightened pleading standards of the PSLRA.  The comments of counsel and the Court at the hearing, taken out of context or selectively quoted, could be of substantial assistance to those plaintiffs in meeting the pleading hurdle, even though the Report in its entirety is exculpatory.

5.     Plaintiffs, as fiduciary representatives of the Company, should be working with the Committee to secure confidential treatment of the information contained in the Report so that it does not fall into the hands of the plaintiffs in the class action lawsuit. In their opposition to sealing the transcript, Plaintiffs never acknowledge the obvious risk to Oracle of the information in question being made available to the plaintiffs in the class action. Nor do the Plaintiffs identify any benefit to Oracle resulting from the unsealing of the transcript. Rather, Plaintiffs merely cite to the public policy of Court records being open to the public – a policy the Committee acknowledges but which is not determinative. The Plaintiffs' myopic attitude toward sealing portions of the transcript does not evidence a concern for the interest of their derivative client – Oracle.

6.     For the reasons explained below, the portions of the transcript that the Committee seeks to seal should be sealed because (i) they contain proprietary commercial information that should not be available to the public, (ii) they contain information detailed in and derived from the Report of the Committee that is both privileged and constitutes attorney work product and (iii) disclosure of the information to the plaintiffs in the class action could cause injury to Oracle, regardless of whether the information is proprietary or privileged, because the information may be misused by the plaintiffs in the class action against Oracle.

4

## The Information The Committee Seeks To Seal Is Not Stale

7.     To suggest, as Plaintiffs do, that the information for which the Committee seeks continued confidential treatment is "stale" and therefore of no continuing commercial consequence or sensitivity to Oracle simply defies common sense.[5]  Irrespective of the "staleness" of the underlying data, the information discussed during oral argument – Oracle's cash flow patterns, forecasting practices, financial analyses, negotiation and sales procedures, and experiences with software products – gives insight into the methods and processes by which Oracle goes about its business and makes its projections and forecasts, information which is proprietary to and commercially sensitive for Oracle

8.     Indeed, as this Court noted during the May 16, 2003 teleconference, Plaintiffs' own fact witness, Mr. Lane, testified extensively as to "what the reporting systems are at Oracle, what these things mean."[6]  Such information, which the Court noted was clearly subject to the terms of the confidentiality stipulation and order in this case,[7] formed the vast bulk of Mr. Weiser's colloquy with the Court during oral argument on the Motion to Terminate.[8]   Given the Court's prior ruling on the

---

[5]    Response at 3.

[6]    May 16 Tr. at 11.

[7]    *See id.* at 13-14 (granting Motion for Protective Order as to Mr. Lane).

[8]    *See* Transcript of May 28, 2003 Hearing ("May 28 Tr.") at 92-94, 97-102, 105-08, 110-11, 113-20, 122.

confidential nature of the information disclosed to Mr. Lane, as well as Plaintiffs'
admission that this same information was what was discussed during oral argument on
May 28, Plaintiffs' assertion that the information is not confidential, proprietary, or
commercially-sensitive is simply "incredible."[9]

9.      Other courts have recognized the appropriateness of maintaining the
confidentiality of information of the type that the Committee seeks to have kept under
seal.  For example, in *In re Adobe Systems, Inc. Securities Litigation*, the United
States District Court for the Northern District of California found good cause to
maintain, under a protective order that had previously been entered into by the parties,
the confidentiality of defendants' and third-parties' "proprietary and technical
information, as well as their business strategy, analysis of their competitors and
relationships with other companies," even though some of that information was at
least two years old.  141 F.R.D. 155, 164 (N.D. Cal. 1992).

10.     In doing so, the *Adobe Systems* court rejected the plaintiffs' arguments
that the information was stale and instead ruled that "[t]his information, created within
the past two years, is still sensitive and disclosure would put defendants and third-
parties at a competitive disadvantage." *Id.*  The court also found it relevant that "[t]he
entity seeking disclosure is a party to the action, who also voluntarily agreed to the

---

[9]   *Id.* at 125 ("THE COURT: I think he means it in terms of lacking credibility.").

protective order," and that "[t]he information has not become public knowledge, nor has it been shared voluntarily among competitors." *Id.*

11.     Also, in *Business Intelligence Services v. Hudson*, the district court found protectible from public dissemination as trade secrets information concerning "the servicing of customer accounts, including difficulties in the software presented in the course of installation and operation and existing programs and various modules currently available." 580 F. Supp. 1068, 1072 (S.D.N.Y. 1984).[10]

12.     These cases provide ample support for the Committee's position that the materials contained in the Report and the documents submitted in support thereof as well as specific portions of the May 28, 2003 Transcript that discuss their contents should remain sealed. This information is not publicly available, has not been shared with competitors and is still commercially sensitive.

## The Information Is Privileged And Constitutes Work Product

13.     The primary purpose of the Committee was to evaluate the claims asserted in the various derivative actions and determine whether it is in the best interests of Oracle to pursue those claims or any other claims arising from the stock sales in question. To that end, the Committee retained legal counsel to: (i) assist the

---

[10]   *Cf. Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, C.A. No. 13389, 1994 Del. Ch. LEXIS 105, Chandler, V.C. (June 30, 1994) (noting that parties did not dispute the confidential, proprietary nature of certain "financial, technological and acquisition information . . . relating to businesses affiliated" with defendant).

Committee, (ii) conduct with the Committee an investigation of the facts relating to the claims, (iii) evaluate the strengths and weaknesses of the claims in light of those facts, existing law and anticipated legal arguments, and, ultimately, (iv) make a determination of the action to be taken by Oracle with respect to those claims. The work of the Committee involved extensive, privileged communications with its counsel concerning the law, the facts learned and an analysis of the law as applied to those facts. These communications are the essence of privileged communications. *See* D.R.E. 502 ("A client [in this case the Committee and Oracle Corporation] has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representatives [this would include the Committee members and employees of Oracle] and the client's lawyer or the lawyer's representative").

14.     The Committee's Report includes extensive discussion of the privileged communications between the Committee and its counsel, including legal advice provided to the Committee, and privileged communications between Oracle or its representatives, including many employees of Oracle, and counsel for the Committee to facilitate counsel's ability to advise the Committee with respect to the legal issues posed by the derivative claims. As such, the Report is replete with privileged communications, much of which was discussed during oral argument. In addition, the

8

Report constitutes attorney "work product" because it was prepared in anticipation of litigation. *See, e.g., Grimes v. DSC Communications*, 724 A.2d 561, 567-570 (Del. Ch. 1998) (report of an SLC is privileged and work product); *In re Perrigo*, 128 F. 3d 430, 437 (D.C. Cir. 1997) ("The work product rule would apply to documents, records, reports, exhibits, and the like which may be contained in the [SLC's] Report, because those documents clearly were created 'in anticipation of litigation.' Other opinions, testimony and/or statements of witnesses made to counsel and certain memoranda would be subject to attorney-client privilege.").

15.     The disclosure of the Report to Plaintiffs or the Court does not waive the privilege as to third parties. *In re Perrigo*, 128 F.3d at 440; American Law Institute, *Principles of Corporate Governance* § 7.13 (commentary at 176-77). The reason for this conclusion is that both Plaintiffs and the Court only have access to the Report because the Committee is not the only party given responsibility for determining what action is in the best interests of the corporation. It is this "shared sovereignty" which requires the Committee to share a Report that would clearly be privileged and confidential were the Committee to have the sole power to determine what should be done with respect to the claims in question.

16.     In *Perrigo*, the Court of Appeals, in circumstances similar to this case, reversed an order of the trial court which would have required public disclosure of a report after it was filed with the Court. 128 F.3d at 432. In that case, as here, a

9

derivative plaintiff accused defendants of breaching fiduciary duties by engaging in insider trading. The company also faced a separate securities fraud suit, which involved similar facts and parties as the derivative action. After an investigation by an independent director, the company moved to dismiss the derivative litigation based upon the director's report. The trial court had concluded that disclosure of the report to the derivative plaintiffs did not constitute a waiver of privilege as to third parties, in particular the plaintiffs in the class actions. However, the trial court concluded that the filing of the report with the Court in support of the motion to terminate would waive the privilege and the report would not be under seal at that point. The Court of Appeals affirmed that the report was privileged and that the production of the report to the derivative plaintiffs did not waive the privilege as to the class action plaintiffs, but the Court reversed the trial court's conclusion that the report should not be filed under seal if it were filed with the Court in support of the motion to terminate. The Court of Appeals stated that public disclosure of the report would "discourage disinterested independent directors from working candidly with counsel in discharging their duties." *Id*. at 439. Noting that the corporation in question already made extensive public disclosures under the securities law, the Court of Appeals stated, "We see no need at this stage, therefore, in the interests of 'fairness', to give the confidential Report information to plaintiffs in a hostile securities litigation (a part of the public domain)." *Id*. at 440.

17.   The American Law Institute reached a similar conclusion.  Criticizing a

contrary decision in *Joy v. North*,[11] the Institute stated as follows:

> This rule, however, may produce a serious dilemma for the
> corporation: if it seeks to terminate the action, it must
> disclose the confidential data whose sensitive nature
> constituted the very basis for finding the action adverse to
> the corporation's interests.  *Also, disclosure to the public*
> *may subject the corporation itself to suit; for example, the*
> *data may suggest corporate liability for a past failure to*
> *disclose material information under the federal securities*
> *laws.*

*See Principles of Corporate Governance* at 176-77 (emphasis added).[12]

18.   In this case, the precise danger cited by the American Law Institute and

the Court of Appeals in *Perrigo* is present.  Unsealing the transcript would make

available to the Plaintiffs in the class action against Oracle information that could be

used in a misleading or incomplete manner.  Indeed, disclosure of some of the

information in the Report could be more harmful than disclosure of all the Report,

because the Report, in its entirety is exculpatory, not incriminating.

---

[11]   692 F. 2d 880, 893 (2d Cir. 1982).

[12]   The American Law Institute considered the Seventh Circuit's opinion in *In re Continental
Securities Litigation*, 732 F. 2d 1302, 1315 (7th Cir. 1984) as being "consistent with [the
section's] general approach." *Principles* § 7.13 at 177.  In that case, the court observed, "As a
common sense matter, we might have greater reluctance to require disclosure if the Report were
clearly and significantly damaging to Continental." *Continental*, 732 F.2d at 1315.  In this case,
the existence of the parallel class action lawsuits and the prospect of a selective misuse of the
Report creates the possibility of injury to Oracle from public disclosure of the Report or its
contents.

19.     The prospect of the misuse of this information is compounded by the fact that it would be utilized in pursuit of class claims the derivative Plaintiffs now have acknowledged lack any merit.  The derivative Plaintiffs have abandoned the claims that are at the core of the class action complaint.  Thus, public disclosure would not serve the interest even of an objective search for the truth, but only a misguided effort to resurrect meritless claims.

### This Court Has Discretion to Prevent Improper Use of the Report

20.     The authority of this Court to seal its records is not limited to the protection of proprietary commercial information or privileged communications and work product.  Rather, this Court has broad discretion to seal the records for any purpose designed to prevent the improper use of those records.  As the United States Supreme Court stated in *Nixon v. Warner Communications Inc.*:

> Every court has the supervisory power over its own records
> and files, and access has been denied where the Court files
> might have become a vehicle for improper purposes.

435 U.S. 589 (1978).  The Supreme Court noted that access can be denied to protect the privacy of the litigants, to prevent Court files from being used as "reservoirs of libelous statements for press consumption" or to protect "business information that might harm a litigant's competitive standings."  *Id.* at 598-99.

21.     The Delaware Supreme Court has also acknowledged that sealing records remains in the sound discretion of the court and that the "public interest" in right of

access to the court is not paramount. *C. v. C.*, 320 A.2d 717, 723 (Del. 1978). The Court must consider the potential harm to the party opposing disclosure and the purpose of the party seeking to have certain information made public. *Id.*

22.     The general rule as stated by one noted commentator is as follows:

> A party may request a court to restrict public access to filed papers on a showing that disclosure would be harmful. In response to this type of request, a court will weigh the competing private and public interests and determine, under a balancing test, whether the private interests furthered by denying access...outweigh the public interest to inspect judicial records.

1 *Moore's Federal Practice* § 5.34[2][c] at 5-71 (3d ed. 2002). That same commentator notes that privacy, trade secrets, and unfair trial publicity have each been a reason for sealing records, and in making the determination whether to seal records, the courts have considered whether the information was significant to the court's decision, whether the information is traditionally private or public, and the motives of those persons who might seek access to the information. *Id.*

23.     A variety of circumstances have been considered as justifying the sealing of court records including privacy concerns,[13] preserving the confidentiality of

---

[13]  *C. v. C.*, 320 A.2d at 722-23; *In re 2 Sealed Search Warrants*, 710 A.2d 202, 211 (Del. Super. 1997).

ongoing investigations,[14] and preserving confidentiality of proceedings against a member of the judiciary where charges are not brought.[15]

24.     In the present case, allowing the plaintiffs in the class action access to the information in the transcript which the Committee seeks to seal would result in an improper use of these derivative proceedings. This derivative action would be used as a vehicle for harming the very corporation on whose behalf it was filed. Indeed, selective access to and selective use of the information to be sealed would cause greater injury to the Company than revealing the entirety of the Committee's Report, which found the claims alleged (and now dismissed by Plaintiffs) to have no merit. The class plaintiffs could use that selective information in an effort to revive their class action, which has been dismissed, on the basis of information in a Report that, when considered in its entirety, establishes that the class claims have no merit – a proposition that the Plaintiffs in this action can no longer dispute given their recent dismissal of six of the eight defendants and the vast majority of their original allegations and claims.

25.     In *Brudno v. Wise,* C.A. No. 19953, 2003 Del. Ch. LEXIS 35, Strine, V.C. (April 1, 2003), this Court expressly recognized that a derivative action such as the present action is essentially a claim on behalf of the company for indemnity from

---

[14]  *In re 2 Sealed Search Warrants*, 710 A.2d at 211.

[15]  *Nichols v. Gamso*, 315 N.E.2d 770, 771 (N.Y. 1974).

its directors for any liability of the company in parallel class actions. Consequently, this Court in *Brudno* stayed the derivative action pending the outcome of the class actions, noting that if the class actions "lead to the exoneration of [the company], it is not apparent what, if anything, would be left of this Action." *Id.* at *12. Staying the derivative action was an implicit recognition that prosecuting the derivative action in advance of the resolution of the class actions was not in the best interests of the company. This Court stated that "it seems sensible (for [the company] and its shareholders) that [the company's] resources be devoted for some time exclusively to the [defense of the class actions]." *Id.* at *14.

26.    In the present action, and with respect to the motion to seal, the interests of Oracle and its shareholders are threatened not simply by diverting Oracle's resources from the defense of the class actions, but are more immediately and directly threatened by the "work product" of this litigation and the corresponding investigation by the Committee being used against Oracle with respect to claims that the derivative Plaintiffs acknowledge lack merit.

27.    Moreover, the other relevant factors support granting the Committee's motion. The information that the Committee seeks to seal was not relied upon by this Court in denying the Committee's motion to terminate. The information goes to the merits of the underlying "insider trading" claim, not the question of the Committee's independence. The Court addressed the latter, not the former, in its decision. In

addition, this information, whether "stale" or not, is not the type of information that Oracle typically makes public. Finally, the information is not relevant to any matter in which the public has an obvious interest, and the only parties likely to have any interest in it are the class plaintiffs, who should not benefit from the filing of this derivative action.

28.     As fiduciaries of Oracle, *In re Fuqua Indus., Inc. S'holder Litig.*, 752 A.2d 126, 129 (Del. Ch. 1999), Plaintiffs are obligated to respond to the Motion to Seal, not from the adversarial posture they appear to have adopted in their Response, but from the single-minded perspective of whether it is in Oracle's best interests that the information disclosed during oral argument remain confidential. *Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003) (noting that a fiduciary must act in the best interests of the corporation it represents).

29.     Plaintiffs' position that *nothing* in the oral argument transcript should remain confidential cannot rationally be understood as having any benefit for Oracle, the entity to whom Plaintiffs owe fiduciary duties, and in whose best interests Plaintiffs, as fiduciaries, are obligated to act. Indeed, Plaintiffs do not articulate any reason why disclosure would be in Oracle's best interest. On the contrary, the only parties which can rationally be understood to benefit from such a position are the class action plaintiffs and their counsel (indeed, the same counsel that initially commenced this action) – who have brought claims directly against Oracle and thus are adverse to

16

Plaintiffs here – by giving them access to information they are not otherwise permitted to receive under the Private Securities Litigation Reform Act of 1997 ("PSLRA") and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

30.    Under the PSLRA, discovery in federal securities class actions is automatically stayed pending a district court's determination of whether there is sufficient merit in the allegations to survive a motion to dismiss.  15 U.S.C. § 78u-4(b)(3)(B).  As the House Report on the PSLRA noted, the automatic discovery stay "protect[s] defendants from plaintiffs who would use discovery to substantiate an initially frivolous complaint." H.R. Rep. 369, 104th Cong., 1st Sess. 31, 32 (1995).

31.    Concern over federal securities class action plaintiffs circumventing the PSLRA by gaining access to otherwise-prohibited discovery through state court actions prompted the enactment of that portion of SLUSA that gives the federal courts the power to stay discovery proceedings in state court actions.  *See* 15 U.S.C. § 78u-4(b)(3)(D).  The purpose of this provision is "to prevent plaintiffs from circumventing the stay of discovery under the [PSLRA] by using State court discovery, which may not be subject to those limitations, in an action filed in State court." *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003) (quoting H. Rep. 105-640 (1998)).

32.    The wholesale public release of those portions of the May 28 oral argument transcript for which the Committee seeks continued confidential treatment, which Plaintiffs themselves acknowledge is information that comes from the

17

Committee's Report and supporting papers, would give the class action plaintiffs access to discovery not permitted under the federal securities laws, discovery which the class action plaintiffs could then selectively and misleadingly use "to substantiate an initially frivolous complaint."[16] The Court should not permit Oracle's interests to be abused in such a fashion.



The special litigation committee process established under *Zapata v. Maldonado* and its progeny is designed in such a way that everyone involved in the process will (or should) have the corporation's best interests at heart. In that spirit, Plaintiffs and the Court were brought "into the tent" to advance that limited purpose and received, pursuant to a valid and enforceable confidentiality stipulation and order, information that was otherwise proprietary, confidential, privileged and constitutes attorney work product. The disclosure of that information poses a real, tangible harm

---

[16] *See* Paragraph 12, *supra*. As the Court may recall, the complaint in the federal securities class action has already been dismissed three times, the final time with prejudice.

to Oracle. The Committee respectfully requests that the Court grant the Committee's

Motion to Seal.

Respectfully submitted,

David C. McBride
Christian Douglas Wright
Adam W. Poff
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

OF COUNSEL:

George M. Newcombe
James G. Kreissman
Alexis Coll-Very
SIMPSON THACHER
  & BARTLETT LLP
3330 Hillview Avenue
Palo Alto, California  94304
(650) 251-5000

*Attorneys for the Special Litigation
Committee of Nominal Defendant
Oracle Corporation*

DATED:  October 7, 2003

19

## CERTIFICATE OF SERVICE

I, David C. McBride, hereby certify that copies of the foregoing *Reply Memorandum In Further Support Of The Committee's Motion To Seal Portions Of The May 28, 2003 Oral Argument Transcript* were caused to be served on October 7, 2003, upon the following counsel of record in the manner indicated:

### BY HAND DELIVERY

Robert D. Goldberg, Esquire
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE  19801

Kenneth J. Nachbar, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

### BY FACSIMILE AND FEDEX

Samuel H. Rudman, Esquire
Cauley Geller Bowman & Coates, LLP
200 Broadhollow, Suite 406
Melville, NY  11747-4806

Robert B. Weiser, Esquire
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004

_____
David C. McBride