# EXHIBIT 8

| | |
|---|---|
| 1 | MAYER, BROWN, ROWE & MAW LLP |
|   | Donald M. Falk (SBN 150256) |
| 2 | Lee H. Rubin (SBN 141331) |
|   | Shirish Gupta (SBN 205584) |
| 3 | Two Palo Alto Square, Suite 300 |
|   | Palo Alto, California 94306 |
| 4 | Telephone:  (650) 331-2030 |
|   | Facsimile:  (650) 331-2060 |
| 5 | lrubin@mayerbrownrowe.com |

REC'D JAN 1 1 2005

6  MAYER, BROWN, ROWE & MAW LLP
   Alan N. Salpeter (admitted *pro hac vice*)
7  Javier Rubinstein (admitted *pro hac vice*)
   Vincent P. Schmeltz III (admitted *pro hac vice*)
8  190 South LaSalle Street
   Chicago, IL 60603-3441
9  Telephone:  (312) 782-0600
   Facsimile:  (312) 701-7711
10 jrubinstein@mayerbrownrowe.com

11 Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
   J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
12
   ORACLE CORPORATION
13 Dorian Daley (SBN 129049)
   James C. Maroulis (SBN 208316)
14 500 Oracle Parkway, Mailstop 5OP7
   Redwood Shores, California 94065
15 Telephone:  (650) 506-5200
   Facsimile:  (650) 506-7114
16 jim.maroulis@oracle.com

17 Attorneys for Defendant ORACLE CORPORATION

18                    UNITED STATES DISTRICT COURT

19           NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-0988-MJJ (Consolidated) |
| | **DEFENDANTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C) AND MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF VINCENT P. SCHMELTZ III** |
| This Document Relates To: | Date: February 15, 2005 |
| ALL ACTIONS. | Time: 9:30 a.m. |
| | Place: Ctrm. 11 |
| | Honorable Martin J. Jenkins |

DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C);
CASE NO.: C-01-0988-MJJ

## NOTICE AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on February 15, 2005 at 9:30 a.m., or as soon thereafter as counsel may be heard, Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley, and Edward J. Sanderson ("Defendants") shall appear before the Honorable Martin J. Jenkins in the Northern District of California—San Francisco Division, San Francisco, California, Courtroom 11—and shall move the Court for a protective order pursuant to Fed. R. Civ. P. 26(c) and L.R. 7-2, or in the alternative, for an order under Fed. R. Civ. P. 26(d) or 16(b).[1] In support of their Motion, Defendants submit the Memorandum of Points and Authorities below, the attached Declaration of Lee Rubin and a [Proposed] Order.

## RELIEF SOUGHT

Defendants move the Court for a protective order that (1) requires Plaintiffs immediately to withdraw, without prejudice, 93 subpoenas issued to Oracle customers or potential customers and (2) imposes a sequenced process for seeking discovery from Oracle's customers under which all such third party discovery is stayed until Plaintiffs have reasonably attempted to obtain the requested information from defendants and the proper scope of discovery is resolved by this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Only two days after the parties held their required conference under Fed. R. Civ. P 26(f), and before Plaintiffs had the opportunity to review even *one* of the thousands of documents that Defendants informed them would be produced in the earliest stages of discovery, Plaintiffs launched a massive third party discovery expedition. Plaintiffs ultimately issued more than 120 subpoenas including 93 to Oracle customers or potential customers.

Plaintiffs' subpoenas are improper for two principal reasons. First, they are premature because they seek information that may be readily available from Defendants. It is well settled that

---

[1] Defendants have sought this expedited hearing date under a separately filed Motion to Shorten Time Pursuant to L.R. 6-3.

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C);**
**CASE NO.: C-01-0988-MJJ**

a party should not impose the burdens of discovery on third parties without first exhausting their efforts to secure the information from the parties to the litigation. Such a departure from the normal discovery process harms not only the third parties, but the Defendants as well because by imposing such an unwarranted burden on Oracle's customers, the subpoenas damage Oracle's ongoing business relationships. Indeed, the third party subpoenas are so broad in their reach that they are more likely intended to harass Oracle than to seek relevant information.

Second, Plaintiffs' third party subpoenas seek broad categories of information that are entirely irrelevant to Plaintiffs' complaint. This is a securities fraud case founded on a missed earnings forecast; it is not a products liability case. Nonetheless, the majority of Plaintiffs' third party requests seek irrelevant information about product defects and the reaction of Oracle's customers or potential customers to those defects.

Because one of the principal objections asserted by the customers to the third party subpoenas is that much of what Plaintiffs seek from third parties is not relevant to the case, this Court is in a far better position to resolve these challenges than are the more than 20 district courts around the country from which the subpoenas issued. Indeed, this Court is almost certain to have an opportunity soon to decide that threshold question because Plaintiffs' initial document requests suffer from the same relevance defects found in the third party subpoenas. By ordering the Plaintiffs to withdraw (without prejudice) their subpoenas served on Oracle's customers or potential customers, this Court will have the chance to consider the proper scope of discovery in the context of party discovery, which is where an issue of such importance should be resolved. Moreover, by sequencing discovery in this manner, Oracle and third parties may be spared from expending substantial resources on third party discovery that has no bearing on this case.

Despite Oracle's requests, Plaintiffs have refused to withdraw these subpoenas. Plaintiffs have made only a half-hearted attempt to explain why the deluge of documents sought by these subpoenas might be discoverable, preferring to argue that even if the subpoenas violate the Federal Rules of Civil Procedure, Oracle lacks standing to object to these subpoenas. Yet, it is well settled that this Court has broad authority to manage the discovery process between and among parties and third parties alike. Accordingly, the Court plainly has the power to stay all third party subpoenas

1  until the Plaintiffs have made reasonable efforts to acquire the information from Defendants and
2  the threshold scope of discovery has been resolved.

## II. STATEMENT OF FACTS

The operative complaint in this case, the Revised Second Amended Complaint ("RSAC"), sets forth a securities fraud claim based on a missed earnings forecast. It alleges that Oracle failed to meet its earnings in the third quarter of FY 2001 because it missed its projection for the sale of applications by $101 million and database sales by $147 million. RSAC ¶¶ 80-82. The RSAC does not include any claims based on fraudulent statements pertaining to, or defects in, Oracle's products or services.

On December 6, 2004, counsel for the parties conducted a conference pursuant to Fed. R. Civ. P. 26(f), in which they discussed, among other things, the documents and disclosures that each side intended to produce at the outset of the discovery process. V. Schmeltz Decl. at ¶3. During that conference, Defendants' counsel informed Plaintiffs that Defendants intended to produce thousands of pages of documents separate and apart from any response to Plaintiffs' initial document request. Defendants' counsel explained that this would include the entire production of documents that Defendants had made to plaintiffs in the parallel shareholder derivative litigation. *See id.*

On December 7, 2004, the Court held a Case Management Conference. *See id* at ¶ 4. The Court also imposed certain limits on discovery, including a maximum of 75 depositions and 75 document requests per side, advising both parties that they could seek leave to take additional discovery for good cause. *See id.* at ¶ 5. Furthermore, the Case Management Order directed the parties to exchange Rule 26(a)(1) disclosures by December 21, 2004.[2] *See id.*

---

[2] The Court further ruled that to the extent a Defendants' initial disclosure included documents that had been designated as confidential in the Delaware derivative litigation, they were not required to produce those documents until a protective order had been entered in this case. The parties jointly submitted a protective order on December 21, 2004, and, pursuant to Court order, made a small number of changes to the proposed order and resubmitted it to the Court. *See* V. Schmeltz Decl. at ¶6.

Beginning the very next day, and throughout the course of the month, Plaintiffs issued over 90 subpoenas to Oracle customers and potential customers. *See id.* at ¶ 7; *see also* V. Schmeltz Decl. Ex. E. These subpoenas, issued in over 20 different jurisdictions, contain over 2,000 separate requests for documents. *See id.* Moreover, Plaintiffs' Rule 26(a)(1)(A) disclosures suggest that Plaintiffs may serve subpoenas on 600 additional Oracle customers. *See id.* This massive third party discovery was launched before Plaintiffs had seen a single document from Defendants.

Plaintiffs' subpoenas seek information about every aspect of Oracle's customers' experience with Oracle products, whether or not Oracle was aware of the information. For instance, Plaintiffs have requested all "documents and communications concerning Oracle's products, licenses or services including, but not limited to, proposed or actual contracts or agreements between you and Oracle." *See* V. Schmeltz Decl. Ex. A. They have also sought "[a]ll documents and communications concerning:" technical problems with Oracle's products, contemplated lawsuits against Oracle, decisions to use Oracle's competitors, damages due to business lost as a result of Oracle's products, and much, much more. *Id.*

In light of the breadth and timing of Plaintiffs' subpoenas, many of Oracle's customers have understandably objected. *See, e.g.,* Decl. Ex. B. (These "very broad requests ... appear to have no limitation to the facts or circumstances of the underlying litigation"). According to one customer, "[t]he documents sought in this request are not relevant to the question of what Defendants knew about Oracle's business during that time period." Decl. Ex. C. That customer went on to object that, "[t]o burden third parties ... with such discovery requests before even reviewing the documents and information provided by Oracle through its initial disclosures, and before serving any discovery requests on Oracle, is an abuse of discovery." *Id.*

Pursuant to a procedure established in the Case Management Order, Defendants' counsel met and conferred with Plaintiffs' counsel regarding the flaws with the subpoenas, and when the parties were unable to reach an agreement, each party submitted a letter brief to the Court regarding whether a protective order should issue. V. Schmeltz Decl. at ¶ 8. On January 4, 2005, the Court held a telephonic hearing regarding the request for a protective order. *See id.* The Court informed

Defendants that a protective order could only issue if they filed a motion, and the Court granted Defendants leave to file such a motion. *See id.*[3]

### III. ARGUMENT

A Rule 26(c) protective order directed at third party subpoenas is available "for good cause shown," when a party can demonstrate that discovery served on third parties jeopardizes the party's own interests. Charles Alan Wright and Arthur R. Miller, 8 FEDERAL PRACTICE & PROCEDURE CIV. 2d § 2035 (West 2004); Fed. R. Civ. P. 26(c) (West 2004). In this case, Defendants are entitled to Rule 26(c) protection.[4]

First, the subpoenas improperly seek information from third parties that may be available from the Defendants. This "cart before the horse" approach to discovery, aimed at Oracle's customers, threatens to harm Oracle's ongoing business relationships and thus directly implicates Oracle's interests. Second, the subpoenas seek information that is largely irrelevant to this case. Discovery that seeks irrelevant information improperly increases the cost of litigation on the parties themselves, thus further harming Oracle. Moreover, Defendants have a strong interest in ensuring that critical issues related to the scope of discovery be decided by the court with the greatest familiarity with the issues rather than district courts throughout the country whose only connection to the case is the issuance of a third party subpoena. All of these concerns provide an ample basis for the Defendants to seek relief and for the Court to rein in the third party discovery process so that discovery can proceed in the orderly and efficient manner contemplated by the Rules.

#### A. It is improper for Plaintiffs to seek discovery from third parties before attempting to obtain those materials from Defendants.

It is well settled that litigants should seek discovery from parties to the litigation before burdening third parties. *See, e.g., Haworth, Inc. v. Caruthers-Wallace Courtenay, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming trial court's decision to require litigant to seek discovery from opposing party before subpoenaing non-party); *Richards of Rockford, Inc. v. Pacific Gas & Elec.*

---

[3] The Court did not stay the subpoenas in the interim, either. *See id.*
[4] As we explain below, this Court also has the power to grant the requested relief pursuant to Rule 26(d) and Rule 16(b).

1   *Co.*, 71 F.R.D. 388, 391 (N.D. Cal. 1993) (refusing to require non-parties to produce discovery that
2   litigant could obtain from opponent); *DeCarlo v. U.S. Equities Realty, Inc.*, 2004 WL 2137818, * 1
3   (E.D. Pa. Sept. 23, 2004) (same). In *Richards of Rockford*, the Court refused to allow plaintiffs'
4   requests for technical information to third parties, finding that they were merely "supplementary"
5   because plaintiffs could have obtained the same information from the defendant. 71 F.R.D. at 391.
6   Similarly, in this case, much of what Plaintiffs seek from "third parties" appears to be
7   "supplementary" because they can obtain the bulk of the third party information they seek from
8   Oracle. *Compare* Schmeltz Decl. Ex. A at Req. Nos. 5 & 9 (subpoena) *with* Schmeltz Decl. Ex. D
9   at Req. Nos. 18-20 & 24; *and compare* Schmeltz Decl. Ex. A at Req. Nos. 13 & 15 *with* Schmeltz
10  Decl. Ex. D at Req. No. 40.

11  Plaintiffs should be required to allow this initial round of discovery with Defendants to run
12  its course before seeking the same material from third parties. Moreover, even where the third
13  party subpoenas seek information different than that sought from the Defendants, plaintiffs should
14  not be permitted to subpoena customers until they have reviewed Defendants' documents to
15  determine whether such additional discovery is even necessary. Sequencing discovery in this
16  manner tends to narrow and focus a party's need for third party discovery, thus streamlining the
17  discovery process.

18  **B.    Plaintiffs' requests are overly broad, largely irrelevant and should be
19         stayed until the scope of discovery is determined through first party
        discovery**

20  There are certain documents sought in Plaintiffs' third party subpoenas that admittedly will
21  not be found in Oracle's files. For example, a number of Plaintiffs' requests focus on the
22  customers' decisions to use Oracle's products and their experiences with those products. *See*
23  Schmeltz Decl. Ex. A at Req. Nos. 8-11, 19-20. While these document requests may not duplicate
24  party discovery, most are completely irrelevant to the case.

25  This is a securities fraud case bottomed on a missed earnings forecast in the third quarter of
26  FY 2001; it is not a product liability suit. Accordingly, customers' experiences with Oracle
27  products or internal deliberations about the possible purchase of those products has no bearing on
28

this suit unless these experiences or deliberations were conveyed to Defendants *and* touch upon Oracle's anticipated revenue or expenses in the third quarter of 2001.

There can be no doubt that Plaintiffs have alleged a forecasting claim. The RSAC alleges that the Defendants committed securities fraud by knowingly misrepresenting its earnings projections in the third quarter of FY 2001, missing its projection for the sale of applications by $101 million and database sales by $147 million. RSAC ¶¶ 80-82. Plaintiffs also allege that problems with Oracle's new suite of e-business software (Suite 11i) ***contributed to*** each of these alleged revenue shortfalls. *Id.* ¶¶ 52, 82 ("Thus, the defects [in Suite 11i] and the economy were the main reasons for the revenue shortfalls in both applications and database sales, and for the accompanying 17% earnings miss."). Plaintiffs do *not* allege any fraud related to Suite 11i separate and apart from the missed earnings forecast.

Thus, discovery into issues such as whether Suite 11i worked as it was intended or how customers reacted to Suite 11i is irrelevant unless it bears directly upon Defendants' knowledge of Oracle's performance during 3Q01. Put another way, the only pertinent inquiry here is whether Defendants had actual knowledge that their earnings forecasts were false when made. *See In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091-92 (9th Cir. 2002). As the court observed in *In re Apple Computer, Inc. Securities Litigation*, "[i]t is not enough for Plaintiffs to allege that Defendants could have known about [product defects] or even that they should have known about them. Plaintiffs must allege something approaching actual knowledge," such that Defendants had no reasonable basis for making an earnings forecast. 243 F. Supp. 2d 1012, 1026 (N.D. Cal. 2002)). Few, if any, of Plaintiffs' requests are even remotely relevant to Plaintiffs' evidentiary burden.

The Delaware Court of Chancery, which recently resolved the underlying merits of this very case in a parallel shareholder derivative action, concluded that ***"no rational person could infer from this record that Oracle could have or did predict this seismic shift in its quarterly fortunes* . . . .** The Oracle sales units didn't see it coming." *In re Oracle Corp. Deriv. Litig.*, No. Civ. 18751, 2004 WL 2847876, * 39-40 (Del. Ch. Nov. 24, 2004). Although Plaintiffs may be entitled to try to prove an element of the case that the derivative plaintiffs could not, they are not

7
DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C) AND
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO.: C-01-0988-MJJ

entitled to burden Defendants and third parties with myriad discovery requests that are completely disconnected from the central elements of their case.

To make matters worse, Plaintiffs' software "functionality" requests are not even confined to Suite 11i. Plaintiffs' requests seek information pertaining to "*all* [Oracle] products, licenses or services," *all* contracts between Oracle and its customers, *all* complaints these customers ever had with Oracle, *all* decisions made by Oracle's customers about purchasing, returning, complaining about Oracle's products, and even *all* decisions to use Oracle's competitors. Schmeltz Decl. Ex. A. Because the RSAC makes no mention of *any Oracle product, license or service beyond Suite 11i*, Plaintiffs cannot justify these requests. Instead, these subpoenas seek far more chaff than wheat and, in doing so, place an unacceptable burden on third parties and improperly expand the scope of discovery in this case.

Defendants do not now seek a ruling from this Court on the relevance of the third party requests. Instead, the breadth of the subpoenas simply underscores the need for a stay of the third party discovery of Oracle's customers so that the Court can consider the proper scope of discovery in the context of discovery between the parties. By deciding that issue in a more appropriate setting, the court will avoid the risk of inconsistent and arbitrary outcomes on this important question in district courts throughout the country.

Plaintiffs will not have to wait long to have this question resolved. Plaintiffs' First Request for Documents contains many of the same over broad requests for information on Oracle's products contained in the third party subpoenas. Thus, in the absence of a negotiated resolution, this Court will soon have the occasion to decide whether much of what Plaintiffs seek from both Defendants and third parties constitutes proper discovery. After that decision is made, it may then be appropriate to permit third party discovery within the parameters set down by the Court.

### C. The Court has the power to order Plaintiffs to withdraw their subpoenas.

It is well within this Court's power to address these issues. Rule 26(c) allows the Court to "make a wide variety of orders for the protection of parties and witnesses in the discovery process." FEDERAL PRACTICE & PROCEDURE § 2035; Fed. R. Civ. P. 26(c) (West 2004). And, as

the Ninth Circuit has expressly held, a trial court has "extensive control over the discovery process." *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1074-75 (9th Cir. 2001). The Court can exercise this control to sequence discovery in this case, even if in doing so the Court impacts subpoenas issued from other district courts.

The Court has ample authority to streamline discovery. *See, e.g., In re Simon II Litig.*, 211 F.R.D. 86, 148 (E.D.N.Y. 2002) (holding that "some discovery necessarily must be foregone if massive cases are to be expeditiously resolved."); *Zaustinsky v. University of California*, 96 F.R.D. 662, 625 (N.D. Ill. 1983) (courts have the authority to "define the issues in a case and to control discovery in conformity with such a definition."). The Federal Rules of Civil Procedure recognize sequenced discovery as a typical trial court tool *See, e.g.,* Fed. R. Civ. P. 26(d) (West 2004) (empowers a court to "sequence" methods of discovery on motion by a party, "for the convenience of the parties and witnesses and in the interests of justice"); Fed. R. Civ. P. 16(b) (West 2004) (provides courts with broad authority to set limits on the scope and timing of discovery and to make other orders "appropriate in the circumstances of the case"). Sequenced discovery is a well-recognized means of promoting the sort of efficiency that Defendants' Rule 26(c) motion seeks to advance. *See* MOORE'S FED. PRAC. MAN. FOR COMPLEX LITIG. §§ 11.41 & 11.422 (4th ed. 2004) (sequenced discovery allows a judge to narrow the issues in a case by focusing discovery, in the first instance, on "matters – witnesses, documents, information – that appear pivotal").

It is equally clear that the Court can utilize this power to control discovery even if it impacts third party subpoenas issued from courts outside of its district, in order to protect litigants' interests. *See Springbrook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679 (N.D. Cal. 1988) (party litigant can seek an order under Rule 26(c) for its protection in response to a subpoena to non-party). Such interests can include a party's relationships with the subpoenaed third parties (FEDERAL PRACTICE & PROCEDURE § 2035) or simply in the scope of discovery being sought. *See Fleet Bus. Credit Corp. v. Hill City Oil Co.*, 2002 WL 1483879, *2 (W.D. Tenn. June 26, 2002) (holding that party had standing under Rule 26(c) to question relevance of subpoena requests directed to a non-party); *United States v. Operation Rescue*, 112 F. Supp. 2d 696, 705 (S.D. Ohio 1999) (plaintiff "has standing [under Rule 26(c)] to seek a protective order on behalf of the non-

1  part[ies]").[5] And, the Court can grant relief without impinging on the jurisdiction of other district
2  courts.

3        *United States v. Operation Rescue*, 112 F. Supp. 2d 696 (S.D. Ohio 1999) is particularly
4  instructive. There, the government sued abortion protestors for violating the Freedom of Access to
5  Clinics Act, and the defendants sought third party discovery from certain abortion clinics. *Id.* at
6  704. The government moved for a protective order to preclude certain aspects of the proposed
7  third party discovery. The court found that the government had "standing to seek a protective
8  order on behalf of the non-party clinics," and granted the government relief in those instances
9  where the third party discovery was seeking irrelevant information. *Id.* at 705. Here, too, this
10 Court can and should make relevance decisions for this case.

11       Rule 16 also give the Court the authority to intervene in third party subpoenas, upon the
12 motion of a party, where irrelevant information is being sought from third parties. *See, e.g.,*
13 *International Brotherhood of Teamsters v. Eastern Conference of Teamsters*, 162 F.R.D. 25, 28
14 (S.D.N.Y. 1995) (finding that district court's powers under Rule 16 allowed it to "provide guidance
15 concerning the relevance of the discovery that defendants [sought from third parties], in
16 furtherance of the control of discovery and the formulation and simplification of the issues
17 presented by this case."); *Dart Industs. Cov. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir.
18 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, [] the
19 necessary restriction may be broader when a nonparty is the target of discovery....").

20       In sum, this Court plainly has the power under the Federal Rules of Civil Procedure to grant
21 the relief that Defendants now request. Given that such intervention by the Court will not
22 prejudice Plaintiffs, and is likely to streamline discovery and avoid the chaos and disorder that will
23 result from multi-district litigation over the proper scope of discovery, the Court should afford
24 Defendants the protection they seek.

---

25 [5] In *Seagate Tech. II Sec. Litig.*, 1993 WL 293008 (N.D. Cal. June 10, 1993), the court held that
26 one who is not a party to a subpoena has no standing to challenge it under Rule 45(c). *Seagate* did
   not contemplate whether or not a party-litigant has standing under Rule 26(c), Rule 26(d) or Rule
27 16(b) to request an order that addresses subpoenas as part of the scope of discovery in litigation.
   Thus, it is inapposite.

28

## CONCLUSION

For the foregoing reasons, Defendants respectfully request a protective order, pursuant to Fed. R. Civ. P. 26(c), or alternatively, pursuant to Fed. R. Civ. P. 26(d) or 16(b), that (1) requires Plaintiff to withdraw all subpoenas currently issued to Oracle's customers; and (2) stays all third party discovery of Oracle's customers until Plaintiffs have reasonably attempted to obtain relevant documents from Defendants and the threshold question related to the proper scope of discovery have been resolved.

DATED: January 10, 2005

MAYER, BROWN, ROWE & MAW LLP

By: /s/ Lee H. Rubin
Lee H. Rubin
Attorneys for Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley and Edward J. Sanderson