MAYER, BROWN, ROWE & MAW LLP
Donald M. Falk (SBN 150256)
Lee H. Rubin (SBN 141331)
Shirish Gupta (SBN 205584)
Two Palo Alto Square, Suite 300
Palo Alto, California 94306
Telephone:     (650) 331-2030
Facsimile:     (650) 331-2060
lrubin@mayerbrownrowe.com

MAYER, BROWN, ROWE & MAW LLP
Alan N. Salpeter (admitted *pro hac vice*)
Javier Rubinstein (admitted *pro hac vice*)
Vincent P. Schmeltz III (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, IL  60606-4637
Telephone:     (312) 782-0600
Facsimile:     (312) 701-7711
jrubinstein@mayerbrownrowe.com

Attorneys for Defendants

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway, Mailstop 5OP7
Redwood Shores, California 94065
Telephone:     (650) 506-5200
Facsimile:     (650) 506-7114
jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. C-01-0988-MJJ<br>(Consolidated)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL (1) THE REPORT OF ORACLE CORP.'S SPECIAL LITIGATION COMMITTEE ("SLC"); AND (2) ALL INTERVIEW MEMORANDA AND/OR NOTES THAT WERE CONSIDERED BY THE SLC IN PREPARING THE REPORT**<br><br>DATE:   July 29, 2005<br>TIME:   9:30 a.m.<br>CTRM:   A, 15TH Floor<br>Magistrate Judge Joseph C. Spero |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. : C-01-0988 MJJ

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1
BACKGROUND .......................................................................................................................... 2
ARGUMENT ................................................................................................................................ 6
    I.   THE DOCUMENTS AT ISSUE ARE PRIVILEGED ....................................................... 6
    II.  PLAINTIFFS CANNOT ARGUE HERE THAT THE PUBLIC HAS A RIGHT OF ACCESS TO DOCUMENTS FILED UNDER SEAL IN DELAWARE STATE COURT ............................................................................................................................ 7
    III. ORACLE DID NOT WAIVE THE ATTORNEY-CLIENT PRIVILEGE OR THE WORK PRODUCT PROTECTION ............................................................................... 8
    IV. THE FUNDAMENTAL FAIRNESS DOCTRINE PROVIDES THAT ANY POSSIBLE WAIVER SHOULD BE LIMITED TO THE DELAWARE ACTION ........ 10
CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

Page

## CASES

*Bittaker v. Woodford,*
331 F.3d 715 (9th Cir. 2003) .................................................................... 2, 10, 11, 13

*Cohen v. Beneficial Loan Corp.,*
337 U.S. 541 (1949) .................................................................................................. 8

*Farber v. Pub. Serv. Co. of N.M.,*
1991 WL 208460 (D.N.M. Apr. 4, 1991) ............................................................... 14

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
331 F.3d 1122 (9th Cir. 2003) ............................................................................ 7, 13

*Hunydee v. United States,*
355 F.2d 183 (9th Cir. 1965) ............................................................................. 9, 10

*Hydranautics v. Filmtec Corp.,*
2003 WL 23358200 (S.D. Cal. Aug. 25, 2003) ........................................................ 9

*In re Continental Ill. Secs. Litig.,*
732 F.2d 1302 (7th Cir. 1984) ................................................................................ 12

*In re MAXXAM, Inc./Federated Dev't Shareholders Litig.,*
698 A.2d 949 (Del. Ch. 1996) .................................................................................. 8

*In re McKesson HBOC, Inc. Secs. Litig.,*
2005 WL 94331 (N.D. Cal. Mar. 31, 2005) .......................................................... 8, 9

*In re Oracle Corp. Deriv. Litig.,*
867 A.2d 904 (Del. Ch. 2004) ............................................................................ 4, 13

*In re Oracle Corp. Deriv. Litig.,*
808 A.2d 1206 (Del. Ch. 2002) ............................................................................ 2, 3

*In re Oracle Corp. Deriv. Litig.,*
824 A.2d 917 (Del. Ch. 2003) ............................................................................ 4, 13

*In re Perrigo Co.,*
128 F.3d 430 (6th Cir. 1997) ...................................................................... 2, 11, 12

*Joy v. North,*
692 F.2d 880 (2d Cir. 1982) ................................................................................... 12

*Merrill Lynch & Co. v. Allegheny Energy, Inc.,*
2004 WL 2389822 (S.D.N.Y. Oct. 26, 2004) ....................................................... 8, 9

*Resolution Trust Corp. v. Castellett,*
156 F.R.D. 89 (D.N.J. 1994) .................................................................................... 7

*Ross v. Bernhard,*
396 U.S. 531 (1970) .................................................................................................. 8

*San Jose Mercury News, Inc. v. United States Dist. Court,*
187 F.3d 1096 (9th Cir. 1999) .................................................................................. 7

*Transamerica Computer Co. v. IBM Corp.*
573 F.2d 646 (9th Cir. 1978) .................................................................................... 3

# TABLE OF AUTHORITIES
(continued)

**Page**

*Upjohn Co. v. United States,*
  449 U.S. 383 (1981) ............................................................................................... 6

*Zapata Corp. v. Moldonado,*
  430 A.2d 779 (Del. 1981) ........................................................................ 4, 10, 11, 12

# INTRODUCTION

Although Plaintiffs already have received *all* of the Oracle business records produced to the SLC in connection with the Delaware derivative action, they demand more. Plaintiffs now seek to compel production of admittedly privileged documents created by Oracle's outside counsel in connection with a special litigation committee ("SLC") established in a Delaware derivative litigation. In particular, Plaintiffs seek: (a) the SLC Report itself ("SLC Report" or "Report"), which sets forth the SLC's and its counsel's analysis of various legal claims; and (b) memoranda summarizing attorneys' interviews of various witnesses. While it is undisputed that the Report and the interview memoranda contain attorney-client privileged information and constitute attorney work product, Plaintiffs wrongly assert that these protections have been waived. In reality, Oracle did not waive any privilege by submitting the Report (and the interview memoranda) under seal in the Delaware action, nor did Oracle waive the privilege by providing these materials to derivative plaintiffs who were *representing Oracle* in that action. Moreover, while Plaintiffs complain that it would be unfair for Oracle to use the SLC Report as a sword to dispose of the Delaware case while shielding that Report from discovery here, Plaintiffs' claim rings hollow since the Delaware court never even considered the substantive conclusions contained in the Report.

Plaintiffs rely on two meritless arguments. *First*, Plaintiffs claim that they are entitled to this material because of the public's right of access to judicial records. Yet, Defendants have not filed (and do not intend to file) the Report in this action. If Plaintiffs seek access to the Delaware Chancery Court's sealed records, they should petition that court for relief, rather than asking this Court to modify the Delaware Court's sealing order.

*Second*, Plaintiffs wrongly argue that Oracle's use of the SLC Report in the derivative litigation constituted a blanket waiver of the privilege. Plaintiffs ignore the fact that: (i) the SLC Report and interview memoranda were filed *under seal* in the Delaware derivative action; and (ii) they were furnished only to plaintiffs in the derivative action who fall within the protective umbrella of the privilege because the derivative plaintiffs represented Oracle in that action. What is more, the interview notes prepared by the SLC's counsel were produced to Delaware plaintiffs

only pursuant to court order — a compelled act that plainly cannot constitute a "voluntary waiver." Plaintiffs' contention that the production of the SLC Report in support of Oracle's motion to terminate constituted a blanket waiver of the privilege for all times and all purposes cannot be squared with binding Ninth Circuit law. *See Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003).

While Plaintiffs concede that the Ninth Circuit has not addressed the issue of protection for SLC reports (Plaintiffs' Brief at 6), they urge this Court to adopt a rule that would be both bad law and bad policy. If relying on an SLC report in support of a motion to terminate a derivative action automatically waived the privilege for all purposes, a company facing a derivative action would be forced to choose between advancing the best interests of the company by seeking an early end to the derivative litigation (where appropriate) or turning over all of its privileged information to other plaintiffs who could then seek to use the information in direct actions against the company. The law should not impose such a "Hobson's choice." *See In re Perrigo Co.*, 128 F.3d 430, 438 (6th Cir. 1997). Such a rule would be particularly unfair if applied here, where the Delaware court never even examined the merits of the SLC's Report.

Faced with such a choice, a special litigation committee would undoubtedly be *discouraged* from conducting a full and fair investigation of derivative claims and communicating frankly with its counsel concerning those claims or, alternatively, from seeking early termination of any shareholder case regardless of the merits or cost to the company. This Court should not impose a waiver rule that has such profoundly adverse consequences on fundamental principles of corporate governance. For all of these reasons, Plaintiffs' motion to compel should be denied.

## BACKGROUND

Within days of Oracle's announcement that it would miss its projected earnings for the third quarter of fiscal year 2001 ("3Q01") by two cents per share, a derivative suit was filed in Delaware. On that same day, March 12, 2001, a nearly identical derivative suit was filed in California by the same firm representing the Delaware derivative plaintiffs, and more derivative claims followed in both state and federal court. *See In re Oracle Corp. Deriv. Litig.*, 808 A.2d

-2-

1206, 1208 (Del. Ch. 2002) (describing procedural history); Affidavit of James G. Kreissman In Support Of Defendants' Opposition To Plaintiffs' Motion To Compel ("Kreissman Aff.") ¶ 2, attached hereto as Exhibit A. The derivative claims all shared the common allegation that certain officers and directors traded Oracle stock while in possession of material, non-public information. *Id.* One year later, on February 1, 2002, Oracle's board of directors appointed two outside directors, Professors Hector Garcia-Molina and Joseph A. Grundfest, to the SLC. Kreissman Aff. ¶ 3. The SLC was charged with the duty to evaluate the derivative claims and to determine whether it was in Oracle's best interest to pursue them. *Id.* ¶¶ 4-5. The SLC retained the law firm of Simpson Thacher & Barlett LLP ("Simpson Thacher") to assist with its investigation of the derivative claims. *Id.* ¶ 8. In the course of the investigation, Simpson Thacher lawyers interviewed numerous Oracle employees about matters within the scope of their employment with Oracle. *Id.* ¶ 9. Each interview was conducted confidentially, and the Oracle employees were advised that the interviews were being conducted as part of an investigation into pending derivative claims against certain Oracle officers and directors. *Id.* ¶ 10. During the witness interviews, the Simpson Thacher attorneys recorded notes of their mental impressions and factual data, which the attorneys then relied upon to draft interview memoranda. *Id.* ¶¶ 11-12. The SLC was given the interview memoranda, but not the underlying attorney notes.[1] *Id.* ¶ 11.

With the assistance of Simpson Thacher, the SLC prepared a report detailing the SLC's factual findings and conclusions concerning the derivative claims, which were derived in large part from Simpson Thacher's privileged interviews of Oracle employees. *Id.* at ¶ 13. Drafted almost exclusively by counsel, the SLC Report reflects the privileged and confidential information received from Oracle's employees and also reflects the detailed factual and legal analysis of counsel. *Id.* ¶ 13.

---

[1] Plaintiffs' motion seeks to compel all documents upon which the SLC relied. (Plaintiffs' Brief at 1.) Since the SLC never saw these notes, they fall outside the scope of Plaintiffs' request. Moreover, Oracle was compelled to provide the derivative plaintiffs with these attorney notes, and Ninth Circuit precedent is clear that "waiver cannot result from compelled production." *Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978). As a result, the notes require no further discussion.

Thereafter, the SLC filed its Report under seal with the Delaware Chancery Court in support of a motion to terminate the Delaware action. *See* Exhibit 1 to Declaration of Vincent P. Schmeltz ("Schmeltz Decl."), attached hereto as Exhibit B, Order dated November 22, 2002 (granting leave to file Report under seal); Kreissman Aff. ¶ 14.[2] The interview memoranda were attached as exhibits to the Report and also filed under seal. The Delaware Court's November 22 Order expressly prohibited use of the "Report, its exhibits or information derived therefrom" for any purpose other than "for purposes of this civil action ...." Ex. 1 to Schmeltz Decl., ¶(a)(1). Subsequently, over Oracle's objection, the Delaware Court ordered the SLC to produce Simpson Thacher attorney notes to the Delaware derivative plaintiffs; that production was made pursuant to a protective order. *See* Kreissman Aff. ¶ 17.

The Delaware Chancery Court denied the SLC's motion to terminate, finding that "the SLC has not met its burden to show the absence of a material fact about its independence." *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917, 942 (Del. Ch. 2003) (hereinafter, "*Oracle I*"), attached hereto as Exhibit 3 to Schmeltz Decl.; Kreissman Aff. ¶ 20. Although the derivative plaintiffs contested both the SLC's independence as well as the reasonableness of its conclusion, the Delaware court expressly determined that it "need examine only the more difficult question, which relates to the SLC's independence." *Id.* at 929. In concluding that the initial hurdle of establishing independence had not been met, the Delaware Chancery Court concluded: "I do not burden the reader with an examination of other *Zapata* factors. In the absence of a finding that the SLC was independent, its subjective good faith and the reasonableness of its conclusions would not be sufficient to justify termination." *Id.* at 948.[3] Thus, the court expressly declined to discuss the merits of the SLC's recommendation.

---

[2] The November 22, 2002 Order was amended and supplemented by an order dated November 25, 2002; however, the key limiting provisions remained the same. *See* Exhibit 2 to Schmeltz Decl., November 25, 2002 Amended And Supplemental Order, ¶(a)(1).

[3] The *Zapata* analysis, referenced by the court, requires that in order for a special litigation committee to succeed on a motion to terminate, it must establish: "(1) its members were independent; (2) that they acted in good faith; and (3) that they had reasonable bases for their recommendations." *Id.* at 928 (citing *Zapata v. Maldonado*, 430 A.2d 779, 788-89 (Del. 1981)).

The Delaware action then proceeded to merits discovery, after which individual defendants Larry Ellison and Jeff Henley sought and were granted summary judgment, in an order affirmed by the Delaware Supreme Court. *In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904 (Del. Ch. 2004), *aff'd.* 872 A.2d 960 (Del. 2005) (hereinafter, *"Oracle II"*) attached hereto as Exhibit 4 to Schmeltz Decl. The plaintiffs and individual defendants submitted 60 volumes of exhibits in connection with the summary judgment motion. Schmeltz Decl. ¶ 4. Notably, among individual defendants' 20 volumes of exhibits, not one included even a portion of the SLC Report or of the interview memoranda or attorney notes prepared during the course of the SLC investigation. *Id.* Simply put, the individual defendants did not rely in any manner on the SLC Report or any material prepared by counsel to the SLC. Consistent with this approach, the Chancery Court did not rely on the SLC Report (or any other SLC-related material) in entering judgment in favor of the individual defendants. Indeed, the Delaware Chancery Court noted that the claims evaluated by the SLC differed markedly from those ultimately contested in defendants' summary judgment motion. *Oracle II*, 867 A.2d at 908 (noting that, as a result of the SLC Report, "plaintiffs have substantially changed their earlier arguments, popping up new ones to replace the ones whacked by the SLC."). While the Delaware Chancery Court did mention the SLC Report in passing its 94-page decision granting summary judgment, it did so largely in describing the procedural history of the case. *Ibid.*

Since discovery began in this case in December 2004, Defendants have not put the SLC Report at issue in this litigation either. To the contrary, Oracle has maintained from the outset that the Report and the Simpson Thacher interview memoranda and rough notes are protected from disclosure by the attorney-client privilege and work product immunity, and repeatedly has resisted discovery requests for this material (and redacted other material) on that basis.[4]

---

[4] Defendants have also redacted all references to the SLC Report and the SLC's investigation from depositions and exhibits that they have produced to Plaintiffs in this matter, further preserving the privilege with respect to the SLC and its efforts.

# ARGUMENT

Plaintiffs now seek to compel production of documents that they concede to be privileged and attorney work product.[5] First, they argue that the public right of access to judicial records provides a basis for this Court to compel production of the documents. Yet, Oracle has filed neither the SLC Report nor the interview memos in *this* proceeding. Rather, the records have been filed under seal in Delaware, and if the Plaintiffs believe they are entitled to access those records they should petition the Delaware Court for relief. Plaintiffs' alternative argument—that Defendants have waived the privilege with respect to these materials—is equally unavailing. Oracle's use of the SLC Report in connection with the derivative action did not constitute a waiver because the derivative plaintiffs were fiduciaries acting on behalf of the company and were bound by court order to preserve the confidentiality of Oracle's documents. Moreover, the law is clear that even if Oracle's use of the SLC Report constitutes "waiver," this waiver should be carefully circumscribed under principles of fairness and cannot be construed broadly enough to allow Plaintiffs access to the Report and interview memoranda.

## I. THE DOCUMENTS AT ISSUE ARE PRIVILEGED.

In their opening papers, Plaintiffs do not contest the fact that the SLC Report and the interview memos are both attorney-client privileged and attorney work product. Nor could they. As discussed in the Background section above, these documents were generated largely by attorneys, while litigation was ongoing, for the sole purpose of evaluating the pending derivative claims against Oracle. Kreissman Aff. ¶¶ 9-12. The documents are both privileged and subject to the work product protection because they reflect confidential communications between the SLC's counsel and Oracle employees, as well as the legal advice and analysis of the SLC's counsel. *Id.* ¶¶ 9-13. *See Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981) (finding that internal investigation of alleged wrongdoing within a corporation is privileged); *In re Perrigo Co.,* 128

---

[5] In support of its claims of privilege, Oracle has prepared a privilege log, attached hereto as Exhibit 5 to Schmeltz Decl., which describes documents for which it now seeks protection.

-6-

F.3d 430, 437 (6th Cir. 1997) (finding attorney-client privilege and work product doctrine apply to report of internal corporate investigation).

## II. PLAINTIFFS CANNOT ARGUE HERE THAT THE PUBLIC HAS A RIGHT OF ACCESS TO DOCUMENTS FILED UNDER SEAL IN DELAWARE STATE COURT.

Plaintiffs' invocation of their federal common law right to inspect judicial records is a non sequitur. Ninth Circuit precedent is plain that if Plaintiffs seek access to records filed under seal with the Delaware Chancery Court, then Plaintiffs must seek to intervene in *that* action and petition *that court* for relief. *See San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999). Indeed, requesting this Court to unseal the records of the Delaware Chancery Court raises serious comity and Full Faith and Credit issues. *See, e.g., Resolution Trust Corp. v. Castellett*, 156 F.R.D. 89, 94 (D.N.J. 1994). Not surprisingly, *none* of the cases Plaintiffs cite holds that a federal court may order the production of documents used in state court litigation on the grounds that the public has a common law right to inspect the state court's judicial records.

While the public may have a right to access certain documents filed with this Court, the SLC Report and related memos are not part of this proceeding, and Defendants have no intention of relying on them in any manner in this litigation. Moreover, as the Ninth Circuit has recognized, the federal common law right to inspect judicial records is a qualified one. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). It must be balanced against countervailing interests, including a litigant's attorney-client privilege and work product immunity. *Id.* Indeed, at issue in *Foltz* was a protective order sealing a motion to disqualify counsel, which revealed certain privileged communications and work product. Rather than hold that the right of access to judicial records vitiated the litigant's privilege rights, the Ninth Circuit held that "[w]e see no conceivable policy reason to serve up such information on a silver platter." *Id.* at 1138. That is especially true here, where the motion to terminate did not dispose of the Delaware litigation.

### III. ORACLE DID NOT WAIVE THE ATTORNEY-CLIENT PRIVILEGE OR THE WORK PRODUCT PROTECTION.

A fundamental flaw in Plaintiffs' waiver argument is that they overlook the fact that the SLC Report was produced to derivative plaintiffs who *represented* Oracle. Indeed, less than two months ago, Judge Jenkins issued an order in this case, which found that "Oracle Corporation was the real plaintiff in the [Delaware] derivative suit." *See* Exhibit 6 to Schmeltz Decl. April 22, 2005 Order at 2. Ample authority supports Judge Jenkins's finding. *In re MAXXAM, Inc./Federated Dev't Shareholders Litig.*, 698 A.2d 949, 956 (Del. Ch. 1996) (the "claim belongs to the corporation, not to the shareholder plaintiff who brings the action"); *see also Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *Zapata Corp. v. Moldonado*, 430 A.2d 779, 784-85 (Del. 1981) ("Derivative suits enforce corporate rights and any recovery obtained goes to the corporation."). Thus, taking on the mantle of derivative plaintiffs in this context, shareholders became corporate fiduciaries, obligated to serve the company's best interests. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 549 (1949). Oracle's production of the SLC Report to the derivative plaintiffs was nothing more than the sharing of privileged materials between factions within the corporation all purporting to represent the company's interest. As such, Oracle did not waive the attorney-client privilege or the work product doctrine.

Likewise, "waiver of the work product doctrine will be found only where the work product was voluntarily disclosed such that it may [have] become readily accessible to an adversary." *In re McKesson HBOC, Inc. Secs. Litig.*, 2005 WL 94331, at *7 (N.D. Cal. Mar. 31, 2005). Because a derivative plaintiff represents the corporation (and has a fiduciary obligation to act in the company's best interest), such a Plaintiff is not an "adversary" of the company. Thus, there is no waiver. In *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 2004 WL 2389822, at *6 (S.D.N.Y. Oct. 26, 2004), the court noted that, in order to demonstrate work product

waiver, the party claiming waiver had to show "a tangible adversarial relationship"—a particularly sensible requirement given the "importance of the work product doctrine in safeguarding our adversarial system of litigation." The court concluded that simple *tension* between two parties—in that case, an auditor obligated to investigate bookkeeping practices and its audit client—is insufficient to create an "adversarial relationship." *Id.*  The court in *Merrill Lynch* upheld the work product protection, finding that the better policy was to encourage corporations to engage in "critical self-analysis" and to share the "fruits of such [inquiries] with the appropriate actors." *Id.* at 7. So too, here, the Court should conclude that the mere tension between the shareholder-fiduciaries and the SLC in the derivative litigation was insufficient to amount to a "tangible adversarial relationship" warranting a blanket waiver. Such a finding would encourage corporations to conduct critical self-analyses, and share them with courts and appropriate shareholder-fiduciaries.

In addition, because the shareholder-fiduciaries in the derivative litigation had the shared goal of benefiting Oracle through their efforts, the SLC materials the shareholders received should remain protected under the "common interest" doctrine, even though the shareholder plaintiffs and nominal defendant Oracle disagreed on the course of action that would, ultimately, benefit Oracle. "Courts have utilized the 'common interest doctrine' to extend the protection of attorney-client privilege to communications shared with individuals with a common interest." *See, e.g., Hydranautics v. Filmtec Corp.*, 2003 WL 23358200, *3 (S.D. Cal. Aug. 25, 2003). *See also In re McKesson HBOC, Inc. Sec. Litig.*, 2005 WL 934331 (N.D. Cal. Mar. 31, 2005) (where "parties have a common interest . . . work-product protection is not waived by the mere sharing of information"). The common interest privilege applies "where the interests of the parties are not identical," and even applies in a case such as this, where the interests of the parties in Delaware "are adverse in substantial respects." *Id.* (*citing Hunydee v. United States*, 355 F.2d 183, 185 (9th

-9-

1  Cir. 1965)). Where, as here, the parties shared the common objective of acting for the benefit of
2  Oracle, the "common interest" doctrine protects the sharing of privileged information even
3  though the shareholder plaintiffs and nominal defendant Oracle disagreed on which course of
4  action was in Oracle's best interest.

**IV.    THE FUNDAMENTAL FAIRNESS DOCTRINE PROVIDES THAT ANY POSSIBLE WAIVER SHOULD BE LIMITED TO THE DELAWARE ACTION.**

Even assuming that Oracle waived the privilege and work product protections (although it did not), that waiver was, at most, an "implied" or "limited waiver" confined only to the Delaware action. Because Oracle was required to produce these materials in order exercise its rights in the Delaware action, binding Ninth Circuit law precludes Plaintiffs from gaining access to these privileged materials.

In *Bittaker*, the Ninth Circuit held that in cases where a litigant has a claim or defense that implicates privileged or work-product protected information, that litigant must waive these protections "to the extent necessary to give [its] opponent a fair opportunity" to litigate. *Id.* at 720. Yet, the *Bittaker* court recognized that the fairness rules imply a waiver "*closely tailored ....* to the needs of the opposing party in litigating the claim in question.*" *Id.* at 719 (emphasis added). This recognition is based on the inherent fairness in forcing a litigant to choose between waiving a substantive right or waiving privilege protections for all time. *Id.* Ultimately, the narrow construction of any implied waiver prevents parties from being "unfairly surprised" in subsequent litigation to learn that they "waived more than [they] bargained for" in asserting available defenses. *Id.*

Oracle submitted the Report because it had but two choices—submit the Report as part of its motion to terminate or force its board of directors to abdicate its responsibility to manage the company. As the Delaware Supreme Court explained in *Zapata Corporation*, 430 A.2d at 788, a board of directors has a statutory right to appoint a special board committee to investigate the allegations of a shareholder derivative suit to determine whether the suit is in the best interests of the corporation. The court explained the mechanics of the effort:

-10-

> After an objective and thorough investigation of a derivative suit, an independent committee may cause its corporation to file a pretrial motion to dismiss in the Court of Chancery. The basis of the motion is the best interests of the corporation, as determined by the committee. The motion should include a thorough written record of the investigation and its findings and recommendations. Under appropriate Court supervision, akin to proceedings on summary judgment, each side should have an opportunity to make a record on the motion.

*Id.* at 788.

Like the defendant in *Bittaker,* Oracle did not waive its privilege for all time and in all respects. *See Bittaker*, 331 F.3d at 719-20. To the extent that Oracle waived at all, such a waiver was necessary to pursue Oracle's defense and to give the Delaware derivative plaintiffs an opportunity to challenge the SLC's findings and/or its independence. Under *Bittaker*, such a circumscribed waiver cannot and should not extend to the Plaintiffs in this case, whose interests are completely adverse to Oracle.

Similarly, in *In re Perrigo Co.*, 128 F.3d 430, 441 (6th Cir. 1997), the Sixth Circuit found it to be error for the district court to require a defendant to either abandon its motion to terminate derivative litigation based on a special investigative report like that at issue here or to waive all privileges for all time with respect to the report. The court reasoned that a finding that corporations automatically waive the attorney-client privilege upon filing an SLC Report with the court "would cause future disinterested independent directors…reviewing whether a derivative litigation is in the corporate interest not to produce extensive written materials." *Id.* at 439. And, it would "hinder future communications between the independent directors and attorneys reviewing whether a derivative action is in the corporation's best interest." *Id.* The court concluded that it was inappropriate "to discourage disinterested independent directors from working candidly with counsel in discharging their duties …." *Id.* The court also recognized the very real harm to the corporation that would attend such a rule, noting consequences such as "the potential for increased bargaining leverage for stockholders, invitation of unscrupulous attempts

to 'graymail' the corporation into settlement, and misuse of the derivative action by attorneys who hope to gain handsome fees." *Id.* at 439 n.6.

Each of these consequences could impact Oracle if the company were found to have waived its attorney-client privilege and work product protection merely because it exercised its statutory rights in a derivative lawsuit. Furthermore, forcing companies like Oracle to waive the privilege entirely or forego the special litigation tool altogether could encourage strike suits. *See, e.g., Zapata Corp.*, 430 A.2d at 786-87 ("If . . . corporations are unable to rid themselves of meritless or harmful litigation and strike suits, the derivative action, created to benefit the corporation, will produce the opposite, unintended result."). Plaintiffs have not shown any reason why the Court should adopt a rule that would so severely undermine the SLC process.

Plaintiffs' attempt to distinguish *Perrigo* falls flat. *See* Plaintiffs' Brief at 10-11. Plaintiffs concede, as they must, that *Perrigo* stands for the proposition that filing an SLC Report in connection with a motion to terminate does not effect an automatic waiver of privilege or work product. *Id.* at 10. Plaintiffs imply, however, that the Sixth Circuit's approach of balancing the litigant's need for confidentiality against the public's right to access court files is somehow novel. It is not.

The Seventh Circuit has done exactly that where an SLC Report was at issue. *See In re Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1304, 1313-1316 (7th Cir. 1984) ("In this appeal we must *balance the public's right of access* to documents relied on as evidence in civil proceedings *against a party's interest in the confidentiality—based primarily upon the attorney-client privilege*—of its investigation into the merits of derivative suits brought on its behalf." (emphasis added)).

Plaintiffs mischaracterize *Continental* as holding that filing or relying upon an SLC Report in support of a motion to terminate effects an automatic waiver. Plaintiffs' Brief at 9-10. To the contrary, the Seventh Circuit noted that although the Second Circuit had found an automatic waiver of the privilege in similar circumstances, "we need not go so far as to hold that the privileges are waived." *Continental*, 732 F.2d at 1314 (distinguishing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). Instead, the Seventh Circuit engaged in a balancing of the litigant's

-12-

interests in maintaining the attorney-client privilege and work product immunity against two newspapers' first amendment rights. *Id.*

While Plaintiffs offer *Joy—which contains no discussion of the unique setting of a derivative action or of principles of limited or implied waiver—*as the "leading case" on this issue, Plaintiffs' Brief at 7, *Joy* actually represents the minority view. Both the Sixth and Seventh Circuits have refused to employ an automatic waiver analysis. The Ninth Circuit, likewise, would balance the circumstances in which the privilege was waived and the fairness of extending the waiver beyond the narrow confines of a party's exercise of his rights before ordering disclosure of privileged documents. *Bittaker*, 331 F.3d at 719.  See also *Foltz*, 331 F.3d at 1138 (reasoning that public right of access did not warrant waiving the work product and attorney client privileges where such materials are "traditionally protected from disclosure.").

Furthermore, Plaintiffs' reasoning—that they are entitled to the SLC Report because Defendants "will undoubtedly rely in large measure on Judge Strine's opinion in Delaware and the facts underlying that opinion that were developed by the SLC"—misstates the record. Vice Chancellor Strine did not base his opinion on facts developed by the SLC. To the contrary, he declined to analyze the substance of the SLC's report; he permitted the derivative plaintiffs to take substantial discovery; and he ultimately decided the case on summary judgment after reviewing a massive record submitted by the parties. *Compare Oracle I*, 824 A.2d at 929 (expressly declining to examine the merits of the SLC's recommendation) *with Oracle II*, 867 A.2d at 908 (referring to SLC report in recounting procedural history and noting the drastic change in plaintiffs' theories from those initially pleaded and examined by the SLC).

"It is not the job of a special litigation committee to assemble and analyze data for use by other litigants in other suits against the corporation." *Farber v. Pub. Serv. Co. of N.M.*, 1991 WL 208460, *2 (D.N.M. Apr. 4, 1991). Yet Plaintiffs seek exactly that here—to piggyback on the work of the SLC. After receiving more than 250,000 pages of documents in discovery, Plaintiffs cannot claim that they *need* the SLC documents to pursue their case. Rather, they simply would prefer to read the SLC's analysis of the claims at issue, hoping it might save them the time and

1  expense of analyzing the evidence themselves. That certainly falls far short of what is required to
2  find that Oracle waived its privilege over the SLC materials for all times and all purposes.
3  //
4  //

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny the Plaintiffs' Motion to Compel and grant Defendants such other and further relief as the Court deems just and proper.

Dated: June 17, 2005                               MAYER, BROWN, ROWE & MAW LLP

                                                   By:   /s/ Lee H. Rubin
                                                         Lee H. Rubin
                                                   Attorneys for Defendants Oracle Corporation,
                                                   Lawrence J. Ellison, Jeffrey O. Henley and
                                                   Edward J. Sanderson

-14-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. :C-01-0988 MJJ