UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

-----------------------------------------------------------------------X
                                         :

In re ORACLE CORPORATION SECURITIES   :
LITIGATION,                                  :
                                         :       No. C 01-0988 (MJJ)
                                         :
-----------------------------------------------------------------------X

## AFFIDAVIT OF JAMES G. KREISSMAN IN SUPPORT OF
## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

        James G. Kreissman, an attorney duly admitted to practice law before the Courts

of the State of California, affirms under penalty of perjury as follows:

        1.      I am a member of the law firm of Simpson Thacher & Bartlett LLP,

counsel to the Special Litigation Committee (the "SLC" or the "Committee") of the Board of

Directors of Defendant Oracle Corporation ("Oracle" or the "Company"). I submit this affidavit

in support of Defendants' Opposition to Plaintiffs' Motion to Compel. I am familiar with the

matters set forth herein based on my own personal knowledge, and a review of the files

maintained by my firm.

### Formation of the Oracle Special Litigation Committee

        2.      On March 1, 2001, Oracle announced that its results for the quarter ended

February 28, 2001 would fall short of its public revenue and earnings guidance for that quarter.

Over the next several months, a series of lawsuits were filed against Oracle and certain of its

officers and directors. Shareholder derivative actions were commenced in state court in

Delaware and California, and in federal court in California. The principal allegation in these

- 1 -

derivative lawsuits was that certain of Oracle's officers and directors sold Oracle stock with the knowledge that Oracle's results for its quarter ending February 28, 2001 would fall short of its guidance for that quarter.

3.      In response to the filing of the derivative suits, the Oracle Board of Directors (the "Board") created the SLC, pursuant to section 141 of the Delaware Corporation Code, to investigate the allegations in the derivative actions and to determine what course of action would be in the best interests of Oracle and its shareholders.  On February 1, 2002, Oracle's board, acting by written consent, appointed two Oracle outside directors, Professor Hector Garcia-Molina and Professor Joseph A. Grundfest, to the Committee (the "Written Consent").

4.      The Written Consent authorized the Committee to "investigate and evaluate the claims" in the Delaware Derivative Action and "to determine and pursue on behalf of the Company the appropriate disposition of the claims asserted" in the Delaware Derivative Action.  The powers delegated to the Committee were broad:

- The Committee was authorized and empowered to "conduct such investigation, review and analysis that it deem[ed] reasonable and necessary to enable it to discharge its responsibilities;"

- The Committee had the authority to "retain, at the expense of the Corporation, such experts and advisors, including independent legal counsel . . .;"

- Upon making its determination of the appropriate disposition of the Delaware Action, the Committee "[was] authorized to file in court, on behalf of the Corporation and without further authorization of the Board, all appropriate pleadings to effectuate the disposition" deemed appropriate by the Committee.

5.      The Committee's authority pursuant to the Written Consent was initially

limited to the Delaware derivative action, but was later extended to include the California and federal derivative actions.  The Committee thus was given the ultimate authority to make decisions regarding the derivative claims for Oracle.  Moreover, the Committee was authorized to act on its conclusions, including acting on behalf of the Company in the courts before which the derivative claims are pending, without further review or approval by Oracle's Board.

6.      Additionally, the Board, through the Written Consent, directed officers, directors and employees of the Company to cooperate fully with the Committee in its requests for information and further directed them to furnish documents and participate in interviews if requested by the Committee.

**Retention of Counsel by the SLC**

7.      In the Written Consent, the Board delegated to the Committee the authority to retain independent legal counsel and any other consultants and advisors that it reasonably believed necessary to assist it in its work.

8.      The Committee identified certain law firms it believed might have the expertise and resources necessary to undertake this representation.  After interviewing several firms, the Committee retained Simpson Thacher Bartlett LLP ("Simpson Thacher") and Young Conaway Stargatt and Taylor LLP ("Young Conaway").

**The SLC's Investigation**

9.      The Committee began its work in February 2002.  As part of its work, the Committee's counsel reviewed tens of thousands of pages of documents produced to the Committee by Oracle.  The Committee and its counsel also interviewed 68 individuals.  The great majority of the witnesses interviewed were current Oracle employees.  Each of the Oracle

employees was questioned solely about matters within the scope of that employee's work at Oracle.

10.     All persons interviewed were informed that the interview was part of an investigation into the derivative claims filed against certain of the company's officers and directors. They were further informed that the interviews were being conducted on a confidential basis. The interviewed employees were also informed that the purpose of the interview was to allow the Committee's counsel to provide legal advice to the Committee about whether pursuit of the claims asserted in the derivative actions was in the best interest of Oracle.

11.     The Committee instructed its counsel to prepare memoranda of each interview. To facilitate preparation of the interview memoranda, the Committee's attorneys took notes during each interview. The Committee's attorneys did not provide copies of these notes to the members of the Committee. Thus, the Committee members never utilized the attorneys' notes for any purposes. Instead, the Committee's attorneys used their notes and, in a few instances, notes taken by the Committee members, to prepare interview memoranda, which were provided to the Committee.

12.     Neither the interview memoranda nor the notes contain stenographic or verbatim accounts of the interviews conducted. Instead, they combine information obtained from the witnesses during the interviews with counsel's mental impressions, judgments and factual and/or legal conclusions.

**Preparation and Filing of the Committee's Report**

13.     The Committee and its counsel ultimately prepared a report, which detailed all of the Committee's factual and legal conclusions (the "Report"). Simpson Thacher

attorneys drafted the great majority of the Report.  The Report reflects the privileged and

confidential information imparted by Oracle's employees to Simpson Thacher and also reflects

the detailed factual and legal analyses undertaken by Simpson Thacher and Young Conaway.

   14. On November 22, 2002, the Committee filed its Report under seal in

support of its Motion to Terminate the Delaware derivative action.  The Committee's burden

under Delaware law was to demonstrate its independence and good faith, as well as the

thoroughness of its investigation.  For this limited purpose, the Committee provided the Report

and its exhibits, including the Simpson Thacher interview memoranda to the Delaware Chancery

Court and produced it to the Delaware derivative plaintiffs.  The Motion to Terminate, the

Report and its exhibits, including the interview memoranda, were filed under seal with the

Delaware Court of Chancery.  Additionally, these documents were produced to the Delaware

plaintiffs pursuant to a Confidentiality Order that prohibited plaintiffs from sharing any of the

information with anyone who was not directly connected to the derivative litigation.  The

Committee insisted on the Confidentiality Order and the filing of the Report and its exhibits

under seal in large part because the Report and the exhibits contained both privileged

communications and work product material.  The Motion to Terminate, the Report and the

accompanying interview memoranda remain under seal to this day and the Confidentiality Order

remains in place.

   15. As a courtesy, copies of the Motion to Terminate and the Report were

provided to the judge in the California Superior Court derivative proceeding.  However, these

documents were not filed with that court and thus were not made available to the public.

Additionally, Motion to Terminate, the Report and the exhibits thereto were provided to the

plaintiffs in the California and federal derivative actions, but only pursuant to agreements that precluded their sharing these documents with anyone who was not connected with the derivative actions.

16.     In filing the Report under seal and producing it to derivative plaintiffs, the Committee intended to disclose it only to those who purport to serve as Oracle fiduciaries (the derivative plaintiffs) and to the Court for the limited purpose of considering the motion to terminate.  By their very nature, the derivative actions are disputes that are brought by shareholders who purport to stand in the shoes of Oracle.  By disclosing the Report to these plaintiffs, the Committee did not turn over the Report to a third party, but rather to a purported alternate incarnation of the corporation itself.

**Discovery of the Committee's Notes in the Delaware Action**

17.     Subsequent to the filing of the Committee's Report, the Delaware derivative plaintiffs demanded production of notes prepared during the witness interviews.  The Committee objected to producing the notes and the parties engaged in motion practice on this issue.  Ultimately, the Delaware Chancery Court ordered the Committee to produce the interview notes.  The Committee produced the interview notes to the Delaware derivative plaintiffs pursuant to the aforementioned Confidentiality Order.  The notes, however, were never provided to or considered by members of the Committee, with the exception of the few pages of notes that had been taken by the Committee members themselves.

18.     In sum, the Committee and its counsel prepared the Report, the interview memoranda and the interview notes in anticipation of litigation.  These materials set forth the mental impressions, conclusions, opinions, and legal theories of the Committee's attorneys

concerning the derivative litigations.

19.     Additionally, the Report, the interview memoranda and the interview notes were prepared for the purpose of providing legal advice to the Committee with respect to the Committee's obligations under Delaware law, and the course of action that the Committee should take to fulfill its duty to act in the best interests of Oracle and its shareholders.  As such, these materials are all protected by the attorney-client privilege.

**The Delaware Chancery Court Decision**

20.     The Delaware Chancery Court denied the Committee's motion to terminate without consideration of the Committee's substantive findings.  Instead, the court based its decision on a determination that the Committee had not established the absence of a material question of fact regarding its independence.

21.     The Delaware Chancery Court subsequently granted summary judgment to defendants in that action.  While this determination was made on the merits, it was based on the submission of defendants' counsel and on the extensive discovery conducted in that case, not on the Report.

James G. Kreissman, Esq.

Dated: Palo Alto, California
         June 16, 2005

- 7 -