1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   MARK SOLOMON (151949)
3  DOUGLAS R. BRITTON (188769)
   401 B Street, Suite 1600
4  San Diego, CA  92101
   Telephone:  619/231-1058
5  619/231-7423 (fax)
      – and –
6  SHAWN A. WILLIAMS (213113)
   WILLOW E. RADCLIFFE (200087)
7  ELI R. GREENSTEIN (217945)
   JENNIE LEE ANDERSON (203586)
8  MONIQUE C. WINKLER (213031)
   100 Pine Street, Suite 2600
9  San Francisco, CA  94111
   Telephone:  415/288-4545
10 415/288-4534 (fax)

11 Lead Counsel for Plaintiffs

12

13                         UNITED STATES DISTRICT COURT

14                       NORTHERN DISTRICT OF CALIFORNIA

15 | In re ORACLE CORPORATION | ) | Master File No. C-01-0988-MJJ |
   | SECURITIES LITIGATION | ) | |
16 | | ) | CLASS ACTION |
   | ——————————————— | ) | |
17 | This Document Relates To: | ) | PLAINTIFFS' REPLY IN FURTHER |
   | | ) | SUPPORT OF THEIR MOTION TO |
18 | ALL ACTIONS. | ) | COMPEL (1) THE REPORT OF ORACLE |
   | | ) | CORP.'S SPECIAL LITIGATION |
19 | ——————————————— | ) | COMMITTEE ("SLC"); AND (2) ALL |
   | | | INTERVIEW MEMORANDA AND/OR |
20 | | | NOTES THAT WERE CONSIDERED BY |
   | | | THE SLC IN PREPARING THE REPORT |

21

22                                       DATE:     July 29, 2005
                                         TIME:     9:30 a.m.
23                                       CTRM:    A, 15th Floor
                                                   Magistrate Judge
24                                                 Joseph C. Spero

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................3

    A.   This Court Has the Authority to Compel Oracle to Produce the Requested
         Documents .....................................................................................................3

    B.   Oracle Waived the Attorney-Client Privilege and Attorney Work Product
         Protection When the SLC Voluntarily Submitted the Report in Connection
         with Its Motion to Terminate .......................................................................5

    C.   The Right to Access Judicial Records Is Paramount to Any Relevant
         Privilege Under These Circumstances ........................................................9

    D.   Defendants' Opposition Demonstrates that Oracle Intends to Utilize the
         SLC Report and Underlying Documents in This Litigation ......................11

III. CONCLUSION...................................................................................................12

1

**TABLE OF AUTHORITIES**

2

**Page**

3  *Bittaker v. Woodford*,
        331 F.3d 715 (9th Cir.), *cert. denied*,
4       540 U.S. 1013, 124 S. Ct. 536 (2003) ................................................2, 6, 7, 8

5  *Brown & Williamson Tobacco Corp. v. FTC*,
        710 F.2d 1165 (6th Cir. 1983) ...............................................................10
6
   *Dreiling v. Jain*,
7       93 P.3d 861 (Wash. 2004) .........................................................................6

8  *FTC v. Standard Financial Management Corp.*,
        830 F.2d 404 (1st Cir. 1987) ....................................................................6
9
   *Foltz v. State Farm Mut. Auto. Ins. Co.*,
10      331 F.3d 1122 (9th Cir. 2003) ............................................................1, 10

11 *Hagestad v. Tragesser*,
        49 F.3d 1430 (9th Cir. 1995) ..................................................................10
12
   *In re Cont'l Ill. Sec. Litig.*,
13      732 F.2d 1302 (7th Cir. 1984) .......................................................1, 6, 9, 10

14 *In re Oracle Corp. Derivative Litig.*,
        824 A.2d 917 (Del. Ch. 2003), *aff'd*,
15      2005 Del. Ch. LEXIS 150 (Del. Apr. 14, 2005) .....................................7, 9

16 *In re Perrigo Co.*,
        128 F.3d 430 (6th Cir. 1997) .................................................................6, 9
17
   *In re Qwest Communications Int'l, Inc. Sec. Litig.*,
18      No. 01-cv-01451-REB-CBS (D. Colo. May 31, 2005).................................6

19 *Joy v. North*,
        692 F.2d 880 (2d Cir. 1982)............................................................1, 6, 8, 9
20
   *Lewis v. Tel. Employees Credit Union*,
21      87 F.3d 1537 (9th Cir. 1996) ................................................................3, 5

22 *Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
        No. 02 Civ. 7689(HB), 2004 U.S. Dist. LEXIS 21543
23      (S.D.N.Y. Oct. 26, 2004) ..........................................................................8

24 *Resolution Trust Corp. v. Castellett*,
        156 F.R.D. 89 (D.N.J. 1994)..............................................................2, 4, 5
25
   *San Jose Mercury News, Inc. v. United States Dist. Court*,
26      187 F.3d 1096 (9th Cir. 1999) ...................................................................5

27 *Zapata Corp. v. Maldonado*,
        430 A.2d 779 (Del. 1981) ........................................................................11

28

**Page**

*Zitin v. Turley,*
No. CIV 89-2061-PHX-CAM, 1991 U.S. Dist. LEXIS 10084
(D. Ariz. June 25, 1991)...................................................................................6


**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
§1738 ...............................................................................................4

Federal Rules of Civil Procedure
Rule 16(b) ....................................................................................3
Rule 26(c)......................................................................................3
Rule 34..................................................................................3, 4, 5
Rule 37..................................................................................3, 4, 5

1  **I.      INTRODUCTION**

2         Plaintiffs' motion to compel has gone largely unchallenged.  It established that virtually

3  every decision that has addressed the issue presented here has found that a party waives the attorney-

4  client privilege and attorney work product protection where it voluntary submits a special litigation

5  committee ("SLC") report in connection with a dispositive motion.  *See*, *e.g.*, *Joy v. North*, 692 F.2d

6  880, 893 (2d Cir. 1982); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1314 (7th Cir. 1984)

7  ("*Continental*").  And, it established that Ninth Circuit precedent is in accord – everyone has a right

8  to inspect documents used in the adjudication stages of litigation.  *Foltz v. State Farm Mut. Auto.*

9  *Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003).  Tellingly, defendants have offered little, if any,

10  authority to the contrary.  In fact, they simply ignore much of the case law that plaintiffs have cited

11  in support and complain that plaintiffs' access will improperly assist them in this litigation.  The

12  reason for the lack of authority seems simple – courts uniformly agree with the fundamental

13  principles cited in plaintiffs' motion.  As the Second Circuit stated in *Joy v. North*, important policy

14  considerations compel the result requested:

15         We simply do not understand the argument that derivative actions may be routinely
           dismissed on the basis of secret documents.  We cannot say what the effect on
16         investor confidence would be if special litigation committees were routinely allowed
           to do their work in the dark of night.  ***We believe, however, that confidence in the***
17         ***administration of justice would be severely weakened.  Indeed, any other rule***
           ***might well create serious constitutional issues***.

18  692 F.2d at 893.[1]  Since Oracle's SLC voluntarily submitted its report in connection with

19  defendants' motion to terminate the Delaware action and repeatedly referenced the substance of the

20  report in open court, it waived all relevant privileges for all purposes.  This is especially true here

21  where Judge Strine relied extensively on the report in resolving defendants' motion to terminate,

22  made it a part of the judicial record, and summarized the report's contents in his published opinion.

23  Plaintiffs are entitled to the requested documents.

24         Acknowledging that relevant legal principles are against them, defendants rely on a handful

25  of inapposite criminal cases to argue that policies favoring special litigation committees should

26  _____

27  [1]      All emphasis is added and citations are omitted, unless otherwise stated.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL - C-01-0988-MJJ     - 1 –

1   outweigh the public's right to judicial access and that any waiver should be limited to the parties in

2   Delaware.  Indeed, they engage in speculative fear-mongering to arrive at the conclusion that a

3   decision in plaintiffs' favor will discourage SLCs from operating and will undermine the entire SLC

4   process.  But neither the facts nor the law support this position.  The authority cited in plaintiffs'

5   motion and the Ninth Circuit case of *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir.), *cert.*

6   *denied*, 540 U.S. 1013, 124 S. Ct. 536 (2003), which defendants emphasize as "binding" precedent,

7   hold that where, like here, a party discloses privileged information to a third party who is not bound

8   by the privilege, or otherwise shows disregard for the privilege by making the information public,

9   the privilege is waived *for all purposes*.  *Id.* at 719-20.  And if a decision in plaintiffs' favor were

10  truly going to upset the entire SLC process as defendants claim, it would have done so by now.  *Joy*

11  *v. North*, 692 F.2d 880, the leading case to require production of SLC reports under circumstances

12  like those here, was decided almost 25 years ago.  Defendants' arguments are baseless.

13          Defendants also attempt to avoid the merits of plaintiffs' motion by arguing that this Court

14  lacks the authority to issue discovery orders governing the parties before it.  But the very case that

15  they cite for this proposition acknowledges that the Court does have the power to compel production

16  of documents from a party even if those documents were sealed in another court.  *Resolution Trust*

17  *Corp. v. Castellett* ("*RTC*"), 156 F.R.D. 89, 94 (D.N.J. 1994).  Plaintiffs are not, as defendants

18  suggest, requesting that this Court issue an order to the Delaware court to unseal the Delaware

19  court's records.  They are asking this Court to compel Oracle to produce records within its

20  possession, custody, or control.  It clearly has the authority to do so under the Federal Rules of Civil

21  Procedure.  Indeed, Ninth Circuit precedent holds that the court's power to issue orders compelling

22  discovery is extremely broad.

23          Finally, defendants have managed two direct responses to plaintiffs' arguments.  They argue

24  that (i) producing the documents to the derivative plaintiffs did not waive the privileges as they were

25  compelled to do so by court order; and (ii) that their use of the report does not result in a waiver

26  because Judge Strine did not rely upon the substance of the report and denied the SLC's motion.

27  Neither argument is compelling.  The SLC's counsel specifically acknowledged that producing the

28  report to derivative plaintiffs' counsel did, in fact, effect a waiver ("That is correct, Your Honor.

The committee, by putting out the special litigation committee report, has waived its privilege."), which defendants here have ignored.  And, the case law holds that defendants' submission of the report on Oracle's motion to terminate, the court's act of making it part of the judicial record, and defendants' reference to the report's contents in open court effects a waiver for all purposes. Declaration of Douglas R. Britton in Support of Plaintiffs' Motion to Compel (1) the Report of Oracle Corp.'s Special Litigation Committee ("SLC"); and (2) All Interview Memoranda and/or Notes that Were Considered by the SLC in Preparing the Report ("Britton Decl."), Ex. 2 at 80:8-15. Defendants have largely ignored these important facts in their opposition. In fact, they fail to even mention counsel's admission, the court's summary of the report in its reported opinion, and counsel's repeated references to the report at the summary judgment hearing in Delaware.  Plaintiffs' motion should be granted.

## II.    ARGUMENT

### A.    This Court Has the Authority to Compel Oracle to Produce the Requested Documents

This Court unquestionably has the authority to control the parties before it – including the authority to issue discovery orders concerning documents within the parties' possession, custody, or control.  Fed. R. Civ. P. 34, 37.  In fact, the Ninth Circuit has specifically "recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'"  *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1557 (9th Cir. 1996).  Defendants themselves have acknowledged in prior pleadings that "[t]his Court has 'complete control . . . over the discovery process'" and that Federal Rule of Civil Procedure 16(b) gives the Court the power to "'control and manage discovery.'"  Defendants' Reply in Support of Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) at 2-3, filed January 28, 2005.  Plaintiffs' research has revealed nothing suggesting that orders and rulings in parallel litigation somehow divest the Court of jurisdiction over the parties before it and the documents that the parties control.

Defendants' authority does not suggest otherwise.  Defendants' Opposition to Plaintiffs' Motion to Compel (1) the Report of Oracle Corp.'s Special Litigation Committee ("SLC"); and

1   (2) All Interview Memoranda and/or Notes that Were Considered by the SLC in Preparing the

2   Report ("Defs.' Mem.") at 7.  Indeed, *RTC*, relied upon by defendants, supports the obvious

3   conclusion that this Court does have the power to order Oracle to produce the documents requested.

4   156 F.R.D. at 94.  In *RTC*, a New Jersey federal court held that it did not have the power to order a

5   New York state court to produce criminal records that had been sealed by operation of a statute when

6   the case terminated in favor of the accused.  *Id.* at 96.  While the court acknowledged that 28 U.S.C.

7   §1738 required it to afford full faith and credit to the state court's ruling on the issue of state law

8   (*i.e.*, the application of New York's sealing statute), it noted that the defendant in the case (over

9   which the court had jurisdiction) had access to the same records under the sealing statute and that

10   Rule 34 of the Federal Rules of Civil Procedure would require the defendant to produce the

11   documents in the case before the court:

12           The Court is not called upon at this time to decide whether the RTC may
obtain the requested materials through other means.  However, the Court notes that

13         defendant [ ] has access to the materials, pursuant to N.Y. Crim. Proc. Law
§160.50(d), which provides that "such records shall be made available to the person

14         accused."  ***Nothing in this Opinion is to be construed as precluding the RTC from
requesting the documents from [defendant], pursuant to Rule 34 of the Federal***

15         ***Rules of Civil Procedure***.

16   *Id.* at 96 n.7.  In other words, the court, by virtue of Rule 34, had the power to order parties before it

17   to produce documents that had been sealed in another jurisdiction.  *Id.*

18        While *RTC*'s language obviously supports the court's authority, it is also factually

19   distinguishable.  Indeed, there is a logical distinction between documents that have been "sealed" by

20   operation of statute, as was the case in *RTC*, and documents that the parties chose to "file under seal"

21   pursuant to a protective order, as was the case in Delaware.  *See id*. at 96.  The *RTC* case dealt with

22   sensitive criminal records where the case had terminated in favor of the accused.  *Id.* at 95.

23   Important policy considerations compel courts to maintain the confidentiality of those records.

24   Indeed, they are compelled to do so by operation of statute.  *Id.*  By contrast, the reason that the

25   report at issue here was filed under seal was because defendants elected to do so.  And the primary

26   reason that the seal was not lifted at the end of the case was defendants' argument about the harm

27   that would befall Oracle had plaintiffs in this case secured the report (or portions of the report) at the

28   motion to dismiss stage.  Plaintiffs' Motion to Compel (1) the Report of Oracle Corp.'s Special

1  Litigation Committee ("SLC"); and (2) All Interview Memoranda and/or Notes that Were

2  Considered by the SLC in Preparing the Report ("Pltfs.' Mem.") at 11. Defendants have elected not

3  to respond to this contention. Principles of comity are simply not at issue here. And even if they

4  were, *RTC* holds that defendants are required to produce documents in their possession pursuant to

5  Rule 34 of the Federal Rules of Civil Procedure even if those records have been "sealed" (as

6  opposed to being filed under seal by a party) in another court. 156 F.R.D. 89.

7       To circumvent their clear waiver of the SLC report and documents relied upon by the SLC in

8  preparing the report, defendants re-cast plaintiffs' motion as one that requests this Court to "unseal"

9  the Delaware court's records. Defs.' Mem. at 7. Plaintiffs ask for nothing of the sort. They are

10  simply asking that this Court evaluate defendants' use of the requested documents and follow the

11  long line of cases (which defendants have failed to distinguish in any meaningful way) holding that

12  its use of the report on a dispositive motion waives the attorney-client privilege and attorney work

13  product protection for all purposes. The Court has the power to do so and the ability to order Oracle

14  to produce documents within its control. *Lewis*, 87 F.3d at 1557; *see also RTC*, 156 F.R.D. at 96

15  n.7.[2]

16  **B.     Oracle Waived the Attorney-Client Privilege and Attorney Work**
   **Product Protection When the SLC Voluntarily Submitted the Report**
17  **in Connection with Its Motion to Terminate**

18       In their motion, plaintiffs established that the overwhelming weight of authority holds that

19  where a defendant voluntarily submits an SLC report to support a motion to terminate – as

20  defendants did here – the attorney-client privilege and attorney work product protection are waived

21  for all purposes. Pltfs.' Mem. at 7-9. Both the Second and Seventh Circuits, in cases remarkably

22  _____

23  [2]     *San Jose Mercury News, Inc. v. United States District Court*, 187 F.3d 1096, 1100 (9th Cir.
   1999), also relied upon by defendants for their comity argument, adds nothing to the analysis. Defs.'
24  Mem. at 7. It says nothing about the court's powers over parties before it and merely reverses a
   district court order denying Mercury News' motion for permissive intervention. *Id.* at 1103.
25  Nevertheless, defendants' constitutional concerns are baseless for an additional reason. The facts
   that justified the Delaware court's original seal have changed dramatically. As plaintiffs
26  demonstrated in their motion, the primary reason that the SLC report remained sealed despite its use
   on the SLC's motion to terminate was that defendants complained that unsealing the records would
27  harm Oracle in this case, which was then still at the motion to dismiss stage and subject to a
   discovery stay. Pltfs.' Mem. at 6, 11.

28

1   similar to this case, are in accord.  "[I]f the special litigation committee recommends termination and

2   a motion for judgment follows, the committee must disclose to the court and the parties not only its

3   report but all underlying data.  To the extent that communications arguably protected by the

4   attorney-client privilege may be involved in that data, a motion for judgment based on the report

5   waives the privilege." *Joy*, 692 F.2d at 893; *Continental*, 732 F.2d at 1313-14 ("***[W]e agree with the***

6   ***Second Circuit***, that special litigation committee reports used in the adjudication stages of derivative

7   litigation should be available for public inspection unless exceptional circumstances require

8   confidentiality.").  Courts in this circuit have followed this analysis.  *See* Pltfs.' Mem. at 7, 9; *see*

9   *also Dreiling v. Jain*, 93 P.3d 861, 871 (Wash. 2004) ("We hold that motions to terminate derivative

10   litigation suits are analogous to motions for dispositive judgment.  Accordingly, any material

11   submitted to the trial court in support of a motion to terminate is presumptively accessible . . . .").

12          Defendants have offered nothing meaningful – let alone exceptional – to justify their demand

13   that the Court ignore these well-reasoned decisions to allow Oracle's SLC to operate in secret.

14   Defs.' Mem. at 12-13.  They have ignored the reasoning in *Joy*, they ineffectively attempted to

15   distinguish *Continental*, and have utterly failed to mention the decisions in *FTC v. Standard*

16   *Financial Management Corp.*, 830 F.2d 404 (1st Cir. 1987), *In re Qwest Communications*

17   *International, Inc. Securities Litigation*, No. 01-cv-01451-REB-CBS, slip op. (D. Colo. May 31,

18   2005) (Britton Decl., Ex. 6), and *Zitin v. Turley*, No. CIV 89-2061-PHX-CAM, 1991 U.S. Dist.

19   LEXIS 10084 (D. Ariz. June 25, 1991), all of which support plaintiffs' motion and flatly reject the

20   limited waiver arguments that defendants make in their opposition.  In fact, defendants have cited

21   only one case that dealt with the issue of SLC reports, *In re Perrigo Co.*, 128 F.3d 430 (6th Cir.

22   1997) (which plaintiffs have shown is distinguishable because the court had not relied on the SLC

23   report as the Delaware court did here) and rely heavily on *Bittaker*, 331 F.3d 715 (which has nothing

24   to do with SLC reports) for the proposition that plaintiffs' waiver argument "cannot be squared with

25   binding Ninth Circuit law."  Defs.' Mem. at 2, 10-13.  Defendants are wrong.

26          Defendants argue that *Bittaker* supports the argument that their use of the report in Delaware

27   affected only a limited waiver "'to the extent necessary to give [its] opponent a fair opportunity' to

28   litigate." Defs.' Mem. at 10.  They argue that *Bittaker* supports the proposition that if Oracle waived

1   the privilege at all, it should be limited to the parties litigating in Delaware.  *Id.  Bittaker* does not

2   support this position.  In *Bittaker*, the court analyzed the waiver implicated by an ineffective

3   assistance of counsel defense under the doctrine of "implied waiver."  331 F.3d at 720.  The court

4   reasoned that "[b]ecause a waiver is required so as to be fair to the opposing side, the rationale only

5   supports a waiver broad enough to serve that purpose."  *Id.* at 720.  A limited waiver was necessary

6   under this scenario because "[a]fter all, it is the federal courts that are inducing the petitioner to

7   waive his privilege."  *Id.* at 726.  By contrast, the court recognized that "[a]n express waiver occurs

8   when a party discloses privileged information to a third party who is not bound by the privilege, or

9   otherwise shows disregard for the privilege by making the information public."  *Id.* at 719.  Under

10  that scenario, "courts have no role in encouraging or forcing the disclosure – they merely recognize

11  the waiver after it has occurred."  *Id.*  Obviously, "once documents have been turned over to another

12  party voluntarily, the privilege is gone."  *Id.* at 720.

13          *Bittaker* supports plaintiffs' position here.  Oracle's SLC expressly waived the privilege by

14  voluntarily submitting the report on its motion to terminate and by voluntarily discussing its contents

15  in open court.  The Delaware court had no role in encouraging the SLC to offer the report in

16  connection with its motion and did not force its disclosure publicly.  Instead, it treated the report as

17  non-privileged by making it a part of the judicial record, and its contents public by summarizing the

18  report in its published opinion.  *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 925-29 (Del. Ch.

19  2003), *aff'd*, 2005 Del. Ch. LEXIS 150 (Del. Apr. 14, 2005).  In fact, Oracle's counsel himself

20  showed a disregard for the privilege by referencing the contents of the SLC report in open court on

21  defendants' motion for summary judgment:

22      •   "When he was first interviewed by the SLC in 2002, in May, Mr. Ellison told them
            that he relies primarily on actual sales and pipeline data rather than focusing on what
23          he called the mood ring forecast."  Britton Decl., Ex. 7 at 187:21-24;

24      •   "The second interview, in late September, 2002, the SLC specifically questioned him
            about that comment.  And he said, well, he relies on the actuals, but those numbers
25          are of limited value in evaluating the company's prospects of meeting revenue and
            earnings targets because – back to the hockey stick."  *Id.* at 188:5-11; and

26

27      •   "This is from the first SLC interview with Mr. Ellison in May of 2002.  And in the
            interview says that, 'Ellison noted that the actual sales numbers from Q3 FY '01,
28          which were very strong at that point in the quarter, indicated that the time he sold
            was the perfect time to sell.'"  *Id.* at 239:15-20.

1  Pltfs.' Mem. at 9-10.  If neither the parties nor the court found it necessary to rely on the report, there

2  would have been no need to reference the SLC or the report during oral argument.  Defendants

3  cannot now claim that their waiver was implied or compelled, in any way, by the Delaware court.

4  *Bittaker*, 331 F.3d at 719 (express waiver occurs where party "shows disregard for the privilege by

5  making the information public").  Indeed, they have simply ignored these compelling facts.  Their

6  waiver was express, voluntary, and for all purposes.  *Id.* at 720.[3]

7        Beyond the remarkable lack of authority to support their position, defendants' opposition is

8  fundamentally misguided.  Oracle spends considerable effort addressing an argument that the SLC's

9  counsel in Delaware already refuted – that the SLC's production of its report **to the derivative**

10  **plaintiffs** did, in fact, waive the privilege.  Defs.' Mem. at 8-10.  Indeed, defendants' opposition

11  ignores that the SLC's counsel expressly acknowledged that its production in that case was a waiver.

12  The cases defendants cite to now do not change the result.  *Id.*  Not one holds that producing an SLC

13  report to derivative plaintiffs preserves the privilege.  In fact, defendants' "representation of Oracle"

14  argument fails here because derivative plaintiffs and defendants in that case (which included

15  defendants Larry Ellison and Jeffrey Henley) were certainly "adversarial" and were pursuing

16  anything but a "common interest."  *Id.*  Derivative plaintiffs fought hard to proceed to trial while

17  defendants demanded from the outset that the case against them be dismissed.  There was certainly a

18  "tangible adversarial relationship" leading to a waiver.  *Merrill Lynch & Co. v. Allegheny Energy,*

19  *Inc.*, No. 02 Civ. 7689(HB), 2004 U.S. Dist. LEXIS 21543, at *20 (S.D.N.Y. Oct. 26, 2004).

20  Plaintiffs' motion also makes clear that the SLC's voluntary submission in support of its motion to

21  terminate, the court's subsequent acts of making the report a part of the judicial record, and

22

23  [3]    Defendants' argument that counsel's interview notes fall outside plaintiffs' request is
nonsensical.  Defs.' Mem. at 3 n.1.  While they argue that the SLC "never saw these notes," they
24  admit that the report was prepared "almost exclusively by counsel."  *Id.* at 3.  As discussed herein,
and in plaintiffs' motion, plaintiffs are entitled to all documents used in preparation of the report,
25  which was submitted to the Delaware court in support of the SLC's motion to terminate.  *Joy*, 692
F.2d at 893 ("[I]f the special litigation committee recommends termination and a motion for
26  judgment follows, the committee must disclose to the court and the parties not only its report but all
underlying data.").  This would include the notes of the attorneys who drafted the report and any
27  other notes that they utilized, in any way, in connection with those efforts.

28

1    counsel's repeated reference to the report in open court that gives rise to waiver. *Joy*, 692 F.2d at

2    893; *Continental*, 732 F.2d at 1313-14. Either way, the Court should compel Oracle to produce

3    these documents.

4           Oracle also protests that plaintiffs' requested relief puts it to a "'Hobson's choice'" that will

5    result in "bad law and bad policy" because of the supposed adverse effect on SLC investigations.

6    Defs.' Mem. at 2, 12. Oracle's argument is not only pure speculation, but it is also short-sighted.

7    Far from creating bad policy that would "discourage" SLCs from performing thorough

8    investigations, the policies implicated by plaintiffs' request, as supported by *Joy*, *Continental*, and

9    many other cases cited in plaintiffs' motion, would likely encourage SLCs to be more thorough in

10   their investigations and to file only those motions that are based on legitimate facts because of the

11   public scrutiny that would follow from disclosure. Indeed, it is this public scrutiny that serves as a

12   foundation to the decisions supporting waiver and the public's right to access documents used in

13   support of a dispositive motion. Policies much stronger than those outlined in Oracle's opposition

14   simply will not allow SLCs to operate in secret if their reports serve as a basis for adjudication. *Joy*,

15   692 F.2d at 893. In any event, special litigation committees have flourished in the 25 years since *Joy*

16   *v. North* compelled disclosure under circumstances similar to those here.[4]

17        **C.    The Right to Access Judicial Records Is Paramount to Any Relevant Privilege Under These Circumstances**

18          Ninth Circuit law is clear. The right to inspect and copy judicial records and documents

19   "extends to pretrial documents filed in civil cases, including materials submitted in connection with

20

21   [4]     Oracle's argument that its privileges have been preserved because the Delaware court did not
22   rely on the substance of the report to grant the motion to terminate is baseless. Defs.' Mem. at 13.
     As plaintiffs showed in their motion, Judge Strine relied heavily on the report in making his
23   decision. Pltfs.' Mem. at 5. Indeed, he specifically referenced the report (totaling 1,110 pages,
     excluding appendices and exhibits) and summarized the SLC's findings and conclusions. *See*
24   *Oracle*, 824 A.2d at 925-26 ("I endeavor a rough attempt to capture the essence of the Report in
     understandable terms, surfacing some implicit premises that I understand to have [under girded] the
25   SLC's conclusions."). Nevertheless, it is the court's act of making the report a part of the judicial
     record (not the success of the motion) that compels the waiver. *Continental*, 732 F.2d at 1313-14;
26   *see also Perrigo*, 128 F.3d at 440. There is no authority to support the proposition that a motion to
     terminate must succeed before the privileges are waived. *See, e.g., Joy*, 692 F.2d at 893 ("To the
27   extent that communications arguably protected by the attorney-client privilege may be involved in
     that data, ***a motion for judgment based on the report waives the privilege***.").

28

1   motions for summary judgment." *Foltz*, 331 F.3d at 1134. ***Any*** document used in connection with a

2   dispositive motion must be made available publicly absent extraordinary circumstances. *Id.* at 1135.

3   And those extraordinary circumstances include "'whether disclosure of the material could result in

4   improper use of the material for scandalous or libelous purposes or infringement upon trade

5   secrets.'" *Id.* at 1135 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). What

6   they do not include, however, is what defendants urge the Court to accept here – protecting Oracle

7   from harm in this litigation. *Foltz*, 331 F.3d at 1136; *see also Brown & Williamson Tobacco Corp.*

8   *v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) ("[s]imply showing that the information would harm

9   the company's reputation is not sufficient to overcome the strong common law presumption in favor

10   of public access to court proceedings and records").

11        Defendants argue that the public's right to access here should give way to the attorney-client

12   privilege. Defs.' Mem. at 7. Their argument is circular. The very reason that the public in general,

13   and plaintiffs in particular, have a right to this information is because Oracle's SLC decided, on its

14   own, to utilize the document in connection with a dispositive motion. It filed the report with the

15   court. The court relied on the report in connection with its determination and made it a part of the

16   judicial record. The court referenced and summarized the report in a published opinion. And the

17   SLC's counsel referenced the report's contents in open court. If the public's right to access takes a

18   back seat to the attorney-client privilege under these circumstances, where numerous courts have

19   held the privilege is to be waived, the right to access would be meaningless. *Continental*, 732 F.2d

20   at 1314 (right to access judicial records supersedes attorney-client privilege where SLC filed its

21   report as evidence in connection with a dispositive motion and then discussed the report's contents in

22   open court because "strict confidentiality" had not been maintained).[5]

23   _____

24   [5]      Defendants argue that the confidentiality of the report should be maintained because Oracle
     has not filed the report in this action and does not intend to use it to defend this action. Defs.' Mem.

25   at 7. Defendants' use of the report is a distinction without a difference. There is no support for the
     proposition that the attorney-client privilege and the attorney work product doctrine can be

26   selectively waived under these circumstances. Indeed, defendants' argument amounts to nothing
     more than the assertion that plaintiffs should not be able to use the documents to harm Oracle in this

27   litigation. *Id.* As discussed above, however, protection from harm in litigation is not the type of
     "extraordinary circumstance" that trumps the right to access. *Foltz*, 331 F.3d at 1136.

28

#### D.  Defendants' Opposition Demonstrates that Oracle Intends to Utilize the SLC Report and Underlying Documents in This Litigation

As plaintiffs showed in their motion, courts routinely require special litigation committees to produce to plaintiffs their reports, investigative memoranda, and notes where, as here, they are necessary to address arguments advanced by the committee in defending against the suit.  *See*, *e.g.*, *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del. 1981) ("Under appropriate Court supervision, akin to proceedings on summary judgment, each side should have an opportunity to make a record on the motion.").  Plaintiffs argued that defendants' use in this case of the Delaware court's opinion as a basis for their defense implicates the same considerations that justify producing the SLC reports in derivative litigation and requires that defendants produce the requested documents here.  Pltfs.' Mem. at 12.

Plaintiffs' motion demonstrated a compelling need for the SLC report and all underlying documents to address Oracle's repeated reference to Judge Strine's opinion in Delaware, which was based, in part, on the contents of the SLC report.  In fact, plaintiffs pointed to several items supporting their contention that Oracle was using the Delaware decision to influence the result in this case.  Pltfs.' Mem. at 12-13.  They cited Defendants' Motion for Protective Order filed on January 10, 2005, where defendants argued that "'[t]he Delaware Court of Chancery . . . recently resolved the underlying merits of this very case in a parallel shareholder derivative action'" and they cited to several arguments in defendants' supplemental responses to plaintiffs' first set of interrogatories specifically referencing Judge Strine's opinion.  *Id.*; Britton Decl., Ex. 8 at 7.  Defendants' intentions here are obvious.

In response, defendants argue that they do not intend to use the report to defend this case and that their reference to Judge Strine's summary judgment opinion does not implicate the report because he did not rely on it in connection with the motion.  Defs.' Mem. at 5, 13.  To support these contentions, defendants cite the fact that neither party submitted the SLC report in connection with Oracle's motion for summary judgment.  *Id.*  Indeed, they argue that "among individual defendants' 20 volumes of exhibits [for that motion], not one included even a portion of the SLC Report or of the interview memoranda or attorney notes prepared during the course of the SLC investigation."  *Id.* at

1   5.  Defendants' contention, however, is belied by counsel's repeated references to the report's

2   contents at the summary judgment hearing, which defendants' opposition ignores. Pltfs.' Mem. at

3   13.  Indeed, Oracle's counsel found it necessary to argue to the court what the SLC found and

4   specifically referenced the SLC's interviews with defendant Larry Ellison.  *Id.*

5         Defendants' opposition also contradicts both arguments.  They cannot help but repeatedly

6   reference Judge's Strine's opinion that "the claims evaluated by the SLC differed markedly from

7   those ultimately contested in defendants' summary judgment motion." Defs.' Mem. at 5, 13.  And,

8   they repeatedly cite to that part of Judge Strine's opinion discussing the SLC report and its effect on

9   the original claims in derivative litigation – claims that they have repeatedly told the Court are

10   identical to the claims in this case.  *Id.* at 5 ("Oracle II, 867 A.2d at 908 (noting that, as a result of

11   the SLC Report, 'plaintiffs have substantially changed their earlier arguments, popping up new ones

12   to replace the ones whacked by the SLC.'")); *Id.* at 13 ("Oracle II, 867 A.2d at 908 (referring to SLC

13   report in recounting procedural history and noting the drastic change in plaintiffs' theories from

14   those initially pleaded and examined by the SLC.")).  While defendants will not likely submit the

15   report to this Court, they are clearly relying on the report, indirectly, to influence events of this case.

16   **III.   CONCLUSION**

17         For all of the foregoing reasons, plaintiffs respectfully request that the Court order Oracle to

18   produce the SLC report and the associated documents forthwith.  Contrary to defendants' claims that

19   plaintiffs are attempting to "piggyback on the work of the SLC" (Defs.' Mem. at 13), plaintiffs'

20   request will streamline the litigation and reduce the burdens on all parties going forward.

21   Defendants' prior pleadings have encouraged this approach.

22   DATED:  June 24, 2005                Respectfully submitted,

23                                      LERACH COUGHLIN STOIA GELLER

24                                       RUDMAN & ROBBINS LLP
                                WILLIAM S. LERACH

25                                   MARK SOLOMON
                                DOUGLAS R. BRITTON

26

27                                     /S/ DOUGLAS R. BRITTON
                                  DOUGLAS R. BRITTON

28

401 B Street, Suite 1600
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
JENNIE LEE ANDERSON
MONIQUE C. WINKLER
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

S:\CasesSD\Oracle3\BRF00022084.doc

1

<u>DECLARATION OF SERVICE</u>

2

I hereby certify that on June 24, 2005, I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system, which will send notification of such filing to the attorneys

4

denoted on the Court's Electronic Mail Notice List.  I hereby certify that I have caused this

5

document to be mailed by the United States Postal Service and/or faxed to the non-CM/ECF

6

participants listed on the attached Manual Notice Service List.

7

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 24th

8

day of June 2005, at San Diego, California.

9

10

/S/ DOUGLAS R. BRITTON

DOUGLAS R. BRITTON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MANUAL NOTICE SERVICE LIST**
*In re Oracle Corporation Securities Litigation*

| | |
|---|---|
| Dorian Daley<br>Loren G. Segal<br>500 Oracle Parkway<br>Redwood City, CA  94065<br>Telephone:  650/506-5200<br>650/506-7114 (fax) | Corey D. Holzer<br>Holzer Holzer & Cannon LLC<br>1117 Perimeter Center West<br>Suite E-107<br>Atlanta, GA 30338<br>Telephone:  770/392-0090<br>770/392-0029 (fax) |
| Brian P. Murray<br>Murray Frank & Sailer LLP<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>Telephone:  212/682-1818<br>212/682-1892 (fax) | Alan Norris Salpeter<br>Mayer, Brown, Rowe & Maw<br>190 South LaSalle Street<br>Chicago, IL  60603<br>Telephone:  312/782-0600<br>312/701-7711 (fax) |

* Denotes service via facsimile and U.S. mail