1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE ORACLE SECURITIES
LITIGATION

_____

This Document Relates To:

ALL ACTIONS.

_____/

No. C-01-0988 MJJ (JCS)

**ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFFS' MOTION TO COMPEL
(1) THE REPORT OF ORACLE CORP.'S
SPECIAL LITIGATION COMMITTEE ("SLC");
AND (2) ALL INTERVIEW MEMORANDA
AND/OR NOTES THAT WERE CONSIDERED
BY THE SLC IN PREPARING THE REPORT
[Docket No. 275]**

## I.       INTRODUCTION

On Friday, July 29, 2005, at 9:30 a.m., Plaintiffs' Motion to Compel (1) the Report of Oracle

Corp.'s Special Litigation Committee ("SLC"); and (2) All Interview Memoranda and/or Notes that Were

Considered by the SLC in Preparing the Report ("the Motion") came on for hearing.  For the reasons

stated below, the Motion is GRANTED in part and DENIED in part.

## II.       BACKGROUND

On May 9, 2001, Plaintiffs sued Defendants in this Court alleging violations of federal securities

laws.  Complaint for Violations of the Federal Securities Laws ("Complaint") at ¶ 1.  Three days later,

Oracle stockholders ("Delaware Plaintiffs") filed a derivative action in Delaware ("the Delaware Action")

against Oracle, Lawrence Ellison, Jeffrey Henley, Donald Lucas, and Michael Boskin ("Delaware

Defendants").  *In re Oracle Corp. Derivative Litig.*, 808 A.2d 1206, 1207, 1208 (Del. Ch. 2002)

("*Oracle I*").

On February 1, 2002, Oracle's board of directors formed a special litigation committee and

granted it the sole power to determine whether it was in Oracle's best interest to settle, dismiss, or

prosecute the Delaware Action.  *Id.* at 1209.  In order to render this decision, the SLC conducted an

extensive factual and legal investigation of Delaware Plaintiffs' claims.  *In re Oracle Corp. Derivative*

1    *Litig.*, 824 A.2d 917, 925 (Del. Ch. 2003) ("*Oracle II*").  The SLC hired outside counsel from Simpson

2    Thacher & Bartlett LLP ("Simpson Thacher"), who interviewed seventy witnesses, including all of Oracle's

3    senior management.  *Id.*  During the interviews, outside counsel took notes that recorded "information

4    obtained from the witnesses" and the attorneys' "mental impressions, judgments and factual and/or legal

5    conclusions."  Defendants' Opposition to Plaintiffs' Motion to Compel (1) the Report of Oracle Corp.'s

6    Special Litigation Committee ("SLC"); and (2) All Interview Memoranda and/or Notes that Were

7    Considered by the SLC in Preparing the Report ("Opposition"), Ex. A ("Kreissman Aff.") at ¶¶ 11, 12.

8    While the Simpson Thacher attorneys used these notes to prepare interview memoranda, they submitted

9    only the memoranda, and not the notes, to the SLC.  Opposition at 3.  After completion of its investigation,

10   the SLC issued a 1,110 page report that concluded it was in Oracle's best interests to dismiss the

11   Delaware Action.  *Oracle II*, 824 A.2d at 925.  "Simpson Thacher attorneys drafted the great majority of

12   the report."  Kreissman Aff. at ¶ 13.

13           In accordance with the report recommendations, the SLC filed a motion to terminate the Delaware

14   Action.  *Oracle II*, 824 A.2d at 920.  In support of the motion to terminate, the SLC filed the SLC report

15   and the interview memoranda (but not the interview notes on which the memoranda were based) under seal

16   with the Delaware Court of Chancery.  Kreissman Aff. at ¶ 14.  The court's sealing order states that the

17   Delaware Defendants "shall not use the Report, its exhibits or information derived therefrom for any

18   purposes other than for purposes of this civil action."  Opposition, Ex. B (Declaration of Vincent P.

19   Schmeltz III in Support [of] Defendants' Opposition to Plaintiffs' Motion to Compel the SLC Report and

20   Related Documents ("Schmeltz Decl."), Ex.1 ("Sealing Order") at ¶ (c)(i).  It is undisputed that the SLC

21   report and its exhibits remained under seal at the time of the filing of the instant Motion.  Kreissman Aff. at ¶

22   13.[1]

23   ─────────────────────

24           [1] Three days after issuing the Sealing Order, the court amended it to add the following paragraph:

25           Notwithstanding the foregoing, the provisions of this order shall not preclude the Committee
             from disclosing the Report, its exhibits or information derived therefrom to the Court and/or
26           parties and their counsel in *Syed Akhter, et al. v. Michael Boskin, et al.*, San Mateo Superior
             Court Case No. 417511, Judicial Coordination Proceeding No. 4180, Superior Court of the
27           State of California, San Mateo County (the "California Derivative Action") and *Paul Bauer
             v. Lawrence J. Ellison, et al.*, No. C-02-1304, United States District Court for the Northern
28           District of California (the "Federal Derivative Action"), with the parties and their counsel being

Following submission of the SLC report in the Delaware Action, the plaintiffs in that action sought production of the underlying notes on which the interview memoranda were based. Kreissman Aff. at ¶ 17. The SLC opposed production of the notes, but the Delaware Court ordered their production. Regarding production of the notes, the judge stated as follows:

> I am . . . going to require production of the actual interview notes that were scribbled down . . . . I believe that does go to the heart of the matter, and there could be potentially discrepancies between the handwriting and the other thing. That doesn't mean that they are material, but I think the plaintiffs get a chance to look at those, and I think that's relevant under *Zapata* to the reasonableness of the committee's efforts.

Declaration of Douglas R. Britton in Support of Plaintiffs' Motion to Compel (1) the Report of Oracle Corp.'s Special Litigation Committee ("SLC"); and (2) All Interview Memoranda and/or Notes that were Considered by the SLC in Preparing the Report ("Britton Decl."), Ex. 2 ("Teleconference Transcript") at 79-80. The judge went on to ask if the SLC had "waived its privilege" as to the interview memoranda. *Id.* at 80. Counsel for the SLC conceded it had, stating that "the Committee, by putting out the Special Litigation Committee report, has waived its privilege." *Id.*

The Delaware Court denied the motion to terminate, concluding that one of the requirements for granting a motion to terminate based on an SLC report – that the SLC members must be independent of the defendant – had not been met.[2] The Delaware Court found that both SLC members and Delaware Defendants had important ties to Stanford University. *Id.* at 920. The court also found that the SLC report failed to disclose those ties and thus the SLC failed to establish its independence. *Id.* at 929, 43, 48.

---

subject to an appropriate confidentiality order.

Opposition, Ex. B (Schmeltz Decl.), Ex. 2 ("Amended Sealing Order") at ¶ (g). Defendants provided the SLC report to the judge in the California Superior Court Derivative Action "[a]s a courtesy" without actually filing the document with that court. Kreissman Aff. at ¶ 15. Defendants also provided the documents to "the plaintiffs in the California and federal derivative actions . . . pursuant to agreements that precluded their sharing these documents with anyone who was not connected with the derivative actions." *Id.*

[2] Delaware law allows a corporation's special litigation committee to file a motion to terminate a derivative suit. *Oracle I*, 808 A.2d at 1210. A Delaware court will grant such a motion as long as: 1) the SLC "members were independent; 2) they acted in good faith; and 3) they had reasonable bases for their recommendations." *Oracle II*, 824 A.2d at 928 (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788-89 (Del. 1981)).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

After the Delaware court rejected the motion to terminate, the Delaware Defendants filed a motion

for summary judgment.  *In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 907, 908 (Del. Ch. 2004)

("*Oracle III*").  At the hearing for their motion, Delaware Plaintiffs' counsel[3] referenced the contents of the

SLC report at least three times, stating as follows:

> When he was first interviewed by the SLC in 2002, in May, Mr. Ellison
> told them that he relies primarily on actual sales and pipeline data rather
> than focusing on what he called the mood ring forecast.

Motion at 9 (quoting Britton Decl., Ex. 7 ("Hearing Transcript") at 163).

> The  second interview, in late September, 2002, the SLC specifically
> questioned him about that comment. And he said, well, he relies on the
> actuals, but those numbers are of limited value in evaluating the company's
> prospects of meeting revenue and earning targets because - back to the
> hockey stick."

*Id.*

> This is from the first SLC interview with Mr. Ellison in May of 2002.  And
> in the interview says that, "Ellison notes that the actual sales numbers from
> Q3 FY '01, which were very strong as that point in the quarter, indicated
> that the time he sold was the perfect time to sell."

*Id.* at 208.  At oral argument, Defendants admitted that the Delaware Defendants neither objected to these

references to the SLC report nor moved to seal the transcript of the summary judgment hearing.

On December 2, 2004, the Delaware Court of Chancery granted summary judgment to the

Delaware Defendants.  *Oracle III*, 867 A.2d at 955.  While the court observed that the SLC report had

affected the Delaware Plaintiffs' and Defendants' choice of arguments, the court was careful to note that its

decision did not address arguments made in the SLC report, but only those in the summary judgment briefs

the Delaware parties submitted.[4]  *Id.* at 908 & n.6.

---

[3]  Although the Motion at 9 alleges that the following statements were made by Defendants, both parties agreed at oral argument that these statements had actually been made by attorneys for the Delaware Plaintiffs.

[4]  The Delaware Chancery Court noted that "the SLC Report was highly influential to the way [the] case . . . proceeded" after the court rejected the motion to terminate.  *Id.* at 908.  The court then explained that the "plaintiffs . . . substantially changed their earlier arguments, popping up new ones to replace the ones whacked by the SLC."  *Id.*  The court also explained that "defendants . . . abandoned theories that did not pan out after the SLC developed an extensive factual record . . . ."  *Id.* at 908 n.6.  The court then noted that "[t]his opinion . . . addresses only the arguments made in this case in the summary judgment briefs."  *Id.*

4

On June 3, 2005, Plaintiffs filed the instant motion asking that, pursuant to Federal Rule of Civil Procedure ("Rule") 26(b)(1), this Court compel production of the SLC report and the interview memoranda as well as the interview notes that Simpson Thacher attorneys used to draft the memoranda. Motion at 1, 4.  Plaintiffs argue that the public has a right to inspect the SLC report and related documents because: 1) the documents are part of a judicial record; 2) Oracle has waived any attorney-client and work product privileges that might have barred Plaintiffs' access; and 3)  Plaintiffs need the SLC report to respond to Defendants' as-of-yet unfiled motion for summary judgment that Plaintiffs predict will rely on the SLC report.  *Id.* at 5, 7, 12.

Defendants counter that this Court must deny the Motion because: 1) Oracle filed the SLC report and interview memoranda under seal; 2) "requesting this Court to unseal the records of the Delaware Chancery Court raises serious comity and Full Faith and Credit issues;" 3) Defendants' have not relied and do not intend to rely on the SLC report in the instant suit; 4) Oracle did not waive attorney-client and work product privileges; and 5) even if they did waive those privileges, their waiver is so limited in scope that it does not extend to the current dispute.  Opposition at 1, 7, 8, 10, 13.

Plaintiffs reply that this Court has the authority to compel production under the Federal Rules of Civil Procedure; principles of comity are not at issue because this Court need not unseal the records of the Delaware Court in order to compel production; and the scope of Defendants' waiver extends to the instant suit.  Plaintiffs' Reply in Further Support of Their Motion to Compel: (1) the Report of Oracle Corp.'s Special Litigation Committee ("SLC"); and (2) All Interview Memoranda and/or Notes that Were Considered by the SLC in Preparing the Report ("Reply") at 3, 4.

## III.    ANALYSIS

### A.    Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Rule 34 allows a plaintiff to request from a defendant documents that fall within the scope of Rule 26.  If the defendant refuses to provide documents requested pursuant to Rule 34, Rule 37 allows a plaintiff to file a motion for an order compelling discovery of those documents.  Rule 26(b)(1) grants the court authority to "order discovery of any matter relevant to the subject matter involved in the action" upon a showing of good cause.

**United States District Court**
For the Northern District of California

**B.      Attorney-Client Privilege and Work Product Doctrine**

As noted above, Rule 26(b)(1) shields privileged documents from discovery.  The attorney-client privilege is oldest common law privilege protecting confidential communications.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (U.S. 1981).  This privilege applies to communications between an attorney and his or her client corporation.  *Id.* at 390.  The attorney-client privilege only protects documents to the extent that they record communications between an attorney and client.  *Id.* at 397.  In order for the attorney-client privilege to shield communications, the party asserting the privilege bears the burden of proving the following elements: [1] communications [2] made in confidence [3] relating to legal advice [4] from an attorney (or other legal advisor) acting in his or her capacity as such, and [5] the privilege has not been waived.  *United States v. Plache*, 913 F.2d 1375, 1379 & n.1 (9th Cir. 1990).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981).

Rule 26(b)(3) protects from discovery documents that fall within the scope of the work product doctrine.  *Upjohn*, 449 U.S. at 398.  The work product doctrine protects documents "prepared in anticipation of litigation or for trial" by an attorney of a party to the litigation.  Rule 26(b)(3).  The work product doctrine creates two classes of material with different levels of protection.  *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).  Discovery of non-opinion work product requires a "'showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent by other means.'"  *Upjohn*, 449 U.S. at 398 & n.7 (citing Fed. R. Civ. P. 26(b)(3)); *Holmgren*, 976 F.2d at 577.  However, discovery of opinion work product, which is comprised of the "'mental impressions, conclusions, opinions, or legal theories of an attorney'" requires a higher showing.  *Upjohn*, 449 U.S. at 398 & n.7 (citing Fed. R. Civ. P. 26(b)(3)); *Holmgren*, 976 F.2d at 577.  Although the United States Courts of Appeals are split over what type of showing, if any, suffices to allow discovery of opinion work product, the Ninth Circuit has held that such documents are discoverable when the mental impressions in the documents are at issue and a party has a compelling need for the documents.  *Id.*  Like the attorney-client privilege, the holder of the work product privilege may waive it.  *United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir. 1979).

**United States District Court**
For the Northern District of California

1   Here, the attorney-client privilege would shield the SLC report, interview memoranda, and notes

2   unless Defendants waived such privilege.  Defendants have established the first four elements of the

3   privilege.  Defendants wish to protect from disclosure communications made in confidence between the

4   Simpson Thacher attorneys and their corporate client, Oracle.  Kreissman Aff. at ¶ 8, 10.  The

5   communications related to legal advice from Simpson Thacher attorneys acting their capacity as such

6   regarding whether it was in Oracle's best interests to pursue the Delaware Plaintiffs' claims.  *Id.* at ¶ 4, 13.

7   Specifically, the attorneys took notes that record information obtained from interviews with Oracle

8   employees and other witnesses.  *Id.* at ¶ 10, 12.  Based on these notes, the attorneys prepared memoranda

9   that also recorded information obtained from the witnesses.  *Id.* at ¶ 11, 12.  Based on these memoranda,

10  the Simpson Thacher attorneys drafted the SLC report, which also contains information gleaned from the

11  witnesses during the interviews.  *Id.* at ¶ 13.  Thus, without considering the element of waiver, Defendants

12  have shown that the SLC report and supporting memoranda and notes satisfy the remaining elements of the

13  attorney-client privilege.

14  If Simpson Thacher did not waive its privilege, the contents of these documents would also be

15  protected by the work product doctrine.  Simpson Thacher prepared the SLC report, memoranda, and

16  notes in anticipation of litigation of the Derivative Action.  *Id.* at ¶ 4, 8, 13, 14.  Because these documents

17  contain "mental impressions, conclusions, opinions, and legal theories" of the Simpson Thacher attorneys,

18  *id.* at ¶ 18, this content is properly classified as opinion work product.  Plaintiffs' suggestion that the mental

19  impressions in the documents are at issue and they has a compelling need for the documents is mistaken.

20  Plaintiffs argue that Defendants will undoubtedly rely on the Delaware Chancery Court's decision in *Oracle*

21  *III* when they submit an as of yet unfiled motion for summary judgment.  Motion at 12.  Plaintiffs allege that

22  the decision in *Oracle III* relies on the SLC report, which in turn relies on the supporting notes and

23  memoranda.  *Id.* at 13.  Not only is this argument pure conjecture, but it is factually incorrect.  The

24  Delaware Chancery Court was careful to note that its decision in *Oracle III* did not address arguments

25  made in the SLC report, but only those in the summary judgment briefs the Delaware parties submitted.

26  867 A.2d at 908 & n.6.  Furthermore, a review of entire majority opinion reveals that the court does not

27  cite the SLC report to support any of its factual or legal conclusions.  *Id.* at 905-55.  Thus, to the extent

28

7

1  that Defendants have not waived their privilege, the SLC report, interview memoranda, and notes would be

2  protected by the work product doctrine.

3  **C.      Waiver of the Attorney-Client Privilege and Work Product Protection**

4  There are two types of waivers of the attorney-client and work product privileges[5]: express and

5  implied. *Bittaker*, 331 F.3d at 719.  "An express waiver occurs when a party discloses privileged

6  information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege

7  by making the information public." *Id.*  A court does not typically force or encourage a party to make the

8  disclosure effecting an express waiver. *Id.*  Instead, the actions that give rise to express waivers are usually

9  within the full control of the party waiving the privilege. *Id.*

10  The Ninth Circuit has noted that whether a party who expressly waives privilege as to one party

11  waives such privilege as to all parties is not settled law. *See id.* at 719 & n.5 (dicta); *see also United*

12  *States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005) (dicta).  *Diversified Industries v. Meredith* is

13  the oldest of the cases the Ninth Circuit cited as an example of express waiver. *See Bittaker*, 331 F.3d at

14  720 n.5 (citing 572 F.2d 596, 604 n.1, 611 (8th Cir. 1978)).  In *Diversified*, the Eight Circuit held that a

15  corporation's voluntary disclosure of a report protected by attorney-client privilege to the Securities and

16  Exchange Commission ("SEC") does not waive the privilege so as to allow discovery of the report in a civil

17  trial against that corporation[6].  572 F.2d 596, 611 (8th Cir. 1978).  There, the defendant-corporation

18  asked a law firm to conduct an investigation after allegations arose that the corporation had bribed its

19  customers. *Id.* at 607.  Based on this investigation, the law firm prepared a report that was protected by

20  attorney-client privilege. *Id.* at 608, 11.  The SEC opened an investigation of the defendant, which

21  voluntarily turned over the report to the SEC in response to an agency subpoena. *Id.* at 611.  In a

22  subsequent civil suit, a district court ordered the defendant to give the report to the plaintiff. *Id.* at 599.

23  The defendant petitioned for writ of mandamus. *Id.* at 598.  The Eight Circuit held that the defendant had

24  not waived attorney-client privilege as to the plaintiff by voluntarily disclosing the documents to the SEC.

---

26  [5] Although the decision of *Bittaker v. Woodford* "is couched in the terms of the attorney-client
privilege, it applies equally to work product privilege . . . ."  331 F.3d 715, 722 n.6 (9th Cir. 2003).

27

28  [6] This type of waiver, which is only effective with regards to some parties, but not others, is known as
a "limited waiver."

*Id.* at 611.  The court reasoned that "[t]o hold otherwise may have the effect of thwarting the developing procedures of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers."  *Id.*  Thus, the Eight Circuit issued a writ of mandamus ordering the district court judge to stay his order compelling production of the report.  *Id.*

The Ninth Circuit has also cited a Third Circuit decision as an example of express waiver.  *See Bittaker*, 331 F.3d at 719 (citing *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-27 (3d Cir. 1991)).  In that decision, the Third Circuit rejected the limited waiver espoused by *Diversified*, concluding instead that a corporation's voluntary disclosure of a report to the SEC and Department of Justice ("DOJ") waives attorney-client and work product privileges as regards a third party who seeks those documents for purposes of a civil trial against the corporation.  *Westinghouse*, 951 F.2d at 1417-18, 25.  In *Westinghouse*, the defendant-corporation hired an outside law firm to investigate whether the corporation had bribed government officials in order to procure contracts.  *Id.* at 1418.  The law firm reported its conclusions in two letters.  *Id.*  The corporation disclosed the contents of the letters to the SEC and DOJ after those agencies began investigating the corporation.  *Id.* at 1418, 19.  The corporation only provided the letters to the DOJ after the agency signed a confidentiality agreement providing that "'the information contained therein would not be disclosed to anyone outside of the [DOJ], and that such review of the [letters] would not constitute a waiver of [the corporation's] work product and attorney-client privileges.'"  *Id.* at 1419.  Later, the plaintiffs filed a civil suit against the corporation in federal district court, which affirmed the magistrate's order compelling production of the letters.  *Id.* at 1420.  The corporation filed for a writ of mandamus.  *Id.* at 1421.  The Third Circuit first noted that the purpose of the attorney-client privilege is to encourage open communication between attorneys and their clients as long as such communication is aimed at obtaining legal advice.  *Id.* at 1423.  However, "when a client voluntarily discloses privileged communication to a third party, the privilege is waived."  *Id.* at 1424.  The court explained that allowing the holder of a privilege to disclose privileged communications to one person, while withholding that information from another person does not encourage open communication with an attorney for the purpose of obtaining legal advice.  *Id.* at 1425.  Rejecting the holding of *Diversified*, the court stated that encouraging corporations to "cooperative with federal investigative agencies [is] beyond the intended purposes of the attorney-client privilege."  *Id.*  The court then concluded

9

United States District Court

For the Northern District of California

that the corporation's confidentiality agreement with the DOJ did not preserve the attorney-client privilege. *Id.* at 1427. "[V]oluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else." *Id.* Even though the corporation submitted the documents to the DOJ in response to a grand jury subpoena, the Third Circuit considered the submission to be voluntary. *Id.* at 1427 n.14. While the corporation initially objected to the subpoena, it relented and voluntarily produced the documents. *Id.* In dicta, the court stated that had the corporation objected to the subpoena and only produced the documents under order of the court, the submission would not be voluntary. *Id.* Thus, the court concluded that the corporation had waived its attorney-client privilege over the two letters, allowing the plaintiffs in the civil action to discover them. *Id.* at 1431.

The Third Circuit then proceeded to determine whether the corporation had also waived work product protections over the two letters. *Id.* at 1427. The court applied a different standard of waiver for work product protections than attorney-client privilege because the two privileges have different purposes. *Id.* at 1428. Because the purpose of the work product doctrine is to prevent disclosure of privileged documents to an adversary, the privilege is only waived when disclosure enables "an adversary to gain access to the information." *Id.* The court concluded that the SEC and DOJ were adversaries of the corporation because the agencies were investigating the corporation. *Id.* Thus, the voluntary disclosure of the letters to the SEC and DOJ waived the work product protection as against all other adversaries, including the plaintiffs in the civil action. *Id.* at 1429. The court reasoned that to rule otherwise might interfere with the operation of the work product doctrine because if outside counsel conducted investigations with the intent of disclosing the results of the investigation to a government agency, counsel might ignore unfavorable legal theories or information about the client. *Id.* at 1429-30. Thus, the court held that the corporation had waived its work product protection as regards the plaintiff in the civil suit and denied the petition for a writ of mandamus. *Id.* at 1431.

District courts in the Northern District of California have rejected the holding of *Diversified* in favor of the conclusion that submission of privileged materials to a federal regulatory agency amounts to a waiver of the privilege with respect to a plaintiff in a subsequent civil trial. *McMorgan & Co. v. First Cal. Mortgage Co.*, 931 F. Supp. 703, 707-708 (N.D. Cal. 1996). In *McMorgan*, the plaintiff filed suit against the defendant alleging violation of federal statute. *Id.* at 705. The defendant filed a motion asking

United States District Court

For the Northern District of California

the court to compel the plaintiff to produce documents that it had voluntarily submitted to the DOL. *Id.* at 706. The plaintiff relied on *Diversified* to argue that its submission of the documents to DOL amounted only to a limited waiver of attorney-client and work product privileges that did not extend to the plaintiffs in the civil suit. *Id.* at 707 (citing 572 F.2d at 611). The court rejected the holding of *Diversified* based on *Westinghouse*'s rationale that "voluntary cooperation with government investigations [has] nothing to do with the attorney-client privilege's purpose of encouraging full disclosure in order to obtain informed legal assistance." *Id.* at 708 (citing *Westinghouse*, 951 F.2d 1424-25). Thus, the court held that the plaintiff had waived any attorney-client privilege as to the documents it submitted to the DOL for purposes of the civil suit. *Id.* at 708. Because the DOL was at least a potential adversary of the plaintiff, submission of the documents to the DOL also waived work product protections as to the defendant. *Id.* at 710. For these reasons, the court granted the defendant's motion to compel the documents the plaintiff submitted to the DOL. *Id.* at 711.

The Second Circuit has held that filing a special litigation committee report in support of a motion to dismiss a shareholder's derivative suit waives the attorney-client privilege and work product protection over the report. *Joy v. North*, 692 F.2d 880, 894-95 (2d Cir. 1982). In *Joy*, the plaintiff filed a derivative suit against a corporation and various officers and directors of the corporation. *Id.* at 882. The defendant-corporation formed a special litigation committee, which issued a report recommending that the corporation dismiss the plaintiff's claims against some of the directors. *Id.* at 884. When the plaintiff refused to withdraw the action with respect to those directors, the corporation filed a motion to dismiss the case based on the special litigation report.[7] *Id.* The district court allowed the plaintiff to obtain discovery of portions of the report, which the court placed under seal. *Id.* The court then granted the summary judgment motion on the basis of the special litigation committee report. *Id.* On appeal, the Second Circuit reversed the trial court's order dismissing the action and held that the court abused its discretion in restricting access to the special litigation committee report by placing it under seal. *Id.* at 884. The court rejected as "patently

---

[7] In the opinion, the court refers to this motion interchangeably as a "summary judgment motion" a "motion to dismiss" and a "motion for judgment . . . based on a recommendation of a special litigation committee." Whatever it is called, it is evident that the motion at issue is a dispositive motion akin to a summary judgment motion. *See id.* at 892. Hereinafter, the Court refers to the motion as "the summary judgment motion."

inadequate" the defendants argument that the report was subject to attorney-client privilege and work

product protection. *Id*. at 894. The court stated, "the submission of materials to a court in order to obtain

summary judgment utterly precludes the assertion of the attorney-client privilege or work product

immunity." *Id*. The court explained that a motion for judgment based on a special litigation committee

report waives the attorney-client privilege. *Id.* at 894. In addition, as soon as outside counsel

communicates a special litigation committee report or other documents to the special litigation committee,

the work product doctrine may not be claimed "since the papers may be part of the basis for the

committee's recommendations." *Id.* at 895. Based on this and other reasons, the Second Circuit reversed

the decision of the district court. *Id.* at 897.

The Court finds the reasoning of *Westinghouse* and *McMorgan* persuasive and thus rejects the

limited waiver doctrine espoused by *Diversified*. Furthermore, the Court follows the Second Circuit in so

far as it holds that submission of an SLC report and other documents in support of a motion to terminate a

shareholder's derivative action waives attorney-client and work product privileges.

Oracle expressly waived its work product and attorney-client privileges over the SLC report and

supporting memoranda by failing to protect the secrecy of the documents on at least three separate

occasions. First, Oracle filed the special litigation committee report and memoranda in support of its

motion to terminate the Delaware Plaintiffs' shareholder's derivative suit. Kreissman Aff. at ¶ 14. This

action waived the attorney-client privileges and work product protection over those documents. *See Joy*

692 F.2d at 894-95. In fact, the Delaware Defendants admitted as much to the Delaware Chancery

Court. Teleconference Transcript at 80. Thus, having expressly waived their privilege, Defendants cannot

prevent discovery of the SLC report and supporting memoranda in the instant suit.

Defendants attempt to rely on *Bittaker* to argue that their submission of the SLC report and

supporting memoranda to the Delaware Chancery Court amounted to a limited implied waiver and should

be shielded from discovery on this basis. Opposition at 10. However, this reliance is misplaced. An

implied waiver arises where a party asserts a claim that places at issue privileged material. *Bittaker*, 331

F.3d at 719. Thus, for example, where, as in *Bittaker*, a petitioner seeking a writ of habeas corpus asserts

ineffective assistance of counsel, the attorney-client privilege and work product immunity are waived as to

attorney-client communications relevant to that claim. In this case, the issue raised by Oracle's motion to

**United States District Court**

For the Northern District of California

1  dismiss the derivative actions is **not** the content of advice given by Oracle's counsel.  The motion to

2  terminate a shareholder's derivative suit pursuant to Delaware Code Annotated title 8, Section 141 does

3  not automatically place at issue attorney communications or work product.  At oral argument, Defendants

4  conceded that nothing in Delaware law requires a special litigation committee to rely on attorney

5  communications or work product in order to file a motion to terminate.  Instead, Oracle chose to retain

6  outside counsel to investigate and draft the SLC report and supporting memoranda.  When Oracle filed a

7  motion to terminate based on these documents, it voluntarily filed those documents, thereby expressly

8  waiving any attorney-client and work product privileges it may have been able to claim over the SLC report

9  and supporting memoranda.  *Bittaker* is not applicable.

10        Second, Oracle voluntarily disclosed its allegedly privileged communications to third party plaintiffs

11  on more than one occasion.  Oracle provided the SLC report and the supporting memoranda to the

12  Delaware Plaintiffs.  Kreissman Aff. at ¶ 14.  Oracle also provided these documents to "plaintiffs in the

13  California and federal derivative actions."  *Id.* at ¶ 15.  Allowing Defendants to disclose privileged

14  communications to these derivative plaintiffs, while withholding that information from the instant Plaintiffs

15  does nothing to encourage open communication with an attorney for the purpose of obtaining legal advice.

16  *Cf. Westinghouse*, 951 F.2d at 1425.  Oracle's confidentiality agreements with the various derivative

17  plaintiffs do not preserve their attorney-client privilege.  *See id.* at 1427.  "[V]oluntary disclosure to a third

18  party waives the attorney-client privilege even if the third party agrees not to disclose the communications to

19  anyone else."  *Id.*  Thus, based on this action alone, Oracle waived any attorney-client privilege over the

20  SLC report and the supporting memoranda, allowing Plaintiffs in instant suit to discover them.

21        As noted above, work product protection is only waived when disclosure enables "an adversary to

22  gain access to the information."  *Id.* at 1428.  Defendants argue that the Delaware Plaintiffs and Oracle did

23  not have a "'tangible adversarial relationship'" because a plaintiff who files a derivative suit represents the

24  best interests of the corporation.  Opposition at 9.  The Court rejects this argument.  When the Delaware

25  Defendants filed the motion to terminate the Delaware Action, the Delaware Plaintiffs adopted an

26  adversarial stance by opposing the motion to terminate.  Under Delaware's interpretation of its own

27  statutory derivative action, Oracle had an adversarial relationship with the Delaware Plaintiffs.  The

28  Delaware Chancery Court has stated that stockholders' derivative suits are "true adversary proceedings," a

**United States District Court**

For the Northern District of California

1    conclusion the court reached after noting that "a court must look beyond the nominal alignment of parties"

2    to determine whether the parties have an adversarial relationship.  *In re Arthur Treacher's Fish & Chips,*

3    *Inc.*, 386 A.2d 1162, 1165 (Del. Ch. 1978) (dicta).  Thus, the voluntary disclosure of the SLC report and

4    the supporting memoranda to the Delaware Plaintiffs waived the work product protection as against all

5    other adversaries, including Plaintiffs in the instant action.

6            Third, Oracle waived any attorney-client and work product privileges over the SLC report when it

7    allowed Delaware Plaintiffs to repeatedly refer to the contents of the report in open court without objecting

8    to the references or moving to seal the transcript of the summary judgment hearing.  Not only did these

9    references allow Oracle's adversaries in the instant suit to gain access to contents of the SLC report, it

10   made these portions public.  When a party waives a privilege over parts of a document by allowing those

11   parts to be aired in open court, that party waives the privilege over the entire document.  *See United*

12   *States v. Salsedo*, 607 F.2d 318, 320 (9th Cir. 1979) (holding that where a defendants' attorney referred

13   during cross-examination of a witness to contents of a transcript that would otherwise have been protected

14   as work product, work product protection was waived as to the entire transcript).  Thus, based on this

15   action alone, Defendants would not be able to shield the SLC report from discovery in the instant suit by

16   claiming privilege.

17           However, for purposes of the instant suit, this Court concludes that Defendants did not waive their

18   attorney-client or work product privileges over the Simpson Thacher notes.  At oral argument, the parties

19   agreed that Simpson Thacher did not file the notes with the court, or even provide them to the SLC.  Thus,

20   the actions that amount to a waiver of attorney-client and work product privileges under *Joy* are not

21   present here.  Furthermore, the holding of *Westinghouse* is expressly conditioned upon the fact that the

22   submission of documents to third parties was voluntary.  951 F.2d at 1424, 1427 n.14.  Unlike

23   *Westinghouse*, it is undisputed here that Delaware Defendants took all possible action to shield the

24   Simpson Thacher notes from disclosure.  Delaware Defendants did not provide these documents to the

25   SLC or the Delaware Chancery court.  Opposition at 3 n.1.  The Delaware Defendants only provided

26   these documents to the Delaware Plaintiffs when ordered to do so by the Delaware Court of Chancery.

27   Kreissman Aff. at ¶ 17.  Because the Delaware Defendants only produced the Simpson Thacher notes

28

1    under compulsion of court order, they have not expressly waived either their attorney-client or work

2    product protection of these documents as regards Plaintiffs in the instant suit.

3        In conclusion, because Oracle voluntarily filed the SLC report and supporting memoranda with the

4    Delaware Chancery Court, provided these documents to third party adversaries, and allowed the contents

5    of the SLC report to be aired in open court, it expressly waived any attorney-client privilege and work

6    product protection that may have shielded those documents from discovery in the instant suit.  On the other

7    hand, because Oracle consistently attempted to shield the Simpson Thacher notes from disclosure and did

8    not voluntarily provide the notes to a third party, Defendants have not expressly waived either their

9    attorney-client or work product protection of these documents as regards Plaintiffs in the instant suit.

10       **D.        The Public Right of Access**

11       Plaintiffs assert that they are entitled to the SLC report and other documents because of the federal

12   common law policy favoring public access to judicial records and documents.  As to the documents that

13   were actually filed in the Delaware Action – the SLC report and the interview memoranda – the Court

14   agrees.  Defendants filed these documents in court.  A party cannot shield documents from discovery on the

15   basis of a privilege when that party had shown "disregard for the privilege by making the information

16   public."  *Bittaker*, 331 F.3d at 719.  Even though Plaintiffs have not asked for access to the records of the

17   Delaware Chancery Court, Oracle, by its own actions, subjected the documents to Plaintiffs' public right of

18   access.  Having subjected the documents to this public access, Oracle can no longer assert a privilege

19   against disclosure.

20       "[C]ourts of this country recognize a general right to inspect and copy public records and

21   documents, including judicial records and documents."  *Nixon v. Warner Communications*, 435 U.S.

22   589, 597 (1978).  A mere exchange of documents during pretrial discovery does not implicate the public

23   right of access.  *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)   Even filing a

24   sealed documents in support of a nondisposotive  motion requires only a showing of good cause to

25   overcome the public's right of access.  *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1135

26   (9th Cir. 2003) (citing *Phillips*, 307 F.3d at 1213).  However, once a document is filed in support of a

27   dispositive pretrial motion, "a strong presumption in favor of access to court records" attaches which can

28   only be overcome by showing "compelling reasons."  *Id.*  When determining whether there are sufficiently

*United States District Court*
For the Northern District of California

15

United States District Court

For the Northern District of California

1   compelling reasons that outweigh the right of access, a court must consider all relevant factors, including

2   "'the public interest in understanding the judicial process and whether disclosure of the material could result

3   in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.'"

4   *Id.* (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

5        In *Foltz*, the plaintiffs alleged that defendants State Farm and the California Institute of Medical

6   Research & Technology ("CMR") had conspired to defraud insureds of personal injury protection under

7   automobile policies issued by State Farm. *Id.* at 1128.  During the course of litigation, several protective

8   orders were entered: the first made confidential all documentary evidence and testimony concerning a

9   motion by State Farm to disqualify the plaintiffs' counsel; the second protected from disclosure a floppy

10  disk produced by CMR during discovery; and the third was a "blanket protective order designed to keep

11  secret 'all other confidential information' produced by the parties in discovery." *Id*.  After four years of

12  litigation, the parties settled.  *Id*.  As part of the settlement, the court granted the parties' request to seal all

13  documents in the court file, including summary judgment motions and documents submitted in support of the

14  summary judgment motions.  *Foltz*, 331 F.3d at 1128.  Subsequently, public and private intervenors

15  brought motions to obtain access to various sealed documents in the court file, including the summary

16  judgment motions and supporting documents. *Id.* at 1129.  The district court denied the motion as to the

17  summary judgment motion and supporting materials, as well as some other sealed documents, on the basis

18  that the documents contained "confidential financial information, third-party medical records, personnel files,

19  and trade secrets" and therefore, that there were compelling reasons to maintain the confidentiality of the

20  documents. *Id.* at 1136.

21       On appeal, the Ninth Circuit held that the district court had abused its discretion in denying the

22  intervenors' request for access to the summary judgment motions and supporting materials. *Id.* at 1139.

23  The court began by holding that "the presumption of access is not rebutted where, as here, documents

24  subject to a protective order are filed under seal as attachments to a dispositive motion." *Id.* at 1136.

25  Rather, the "compelling reasons standard continues to apply." *Id.* (citation omitted).  In reaching this

26  conclusion, the court expressly distinguished *Phillips*, noting that in that case, the good cause requirement

27  that supported the sealing order was sufficient to rebut the presumption of access only because the

28  documents at issue were filed in support of nondispositive rather than dispositive motions. *Id.* at 1135.  In

United States District Court

For the Northern District of California

contrast, the documents in *Foltz* were filed in support of summary judgment motions. *Id.* Because "summary judgment adjudicates substantive rights and serves as a substitute for trial," the higher "compelling reasons" standard applied. *Id.*

Having determined that the presumption of access could be rebutted only by a showing of compelling reasons, the court went on to balance the right of access against the reasons offered by the defendants for maintaining confidentiality over the documents. *Id.* at 1136-38. The court concluded that the defendants did not rebut the presumption of access. *Id.* First, the court rejected the defendants' argument that the documents were subject to protection because they contained confidential financial and medical information of third parties. *Id.* at 1137. Although the district court had cited such information in support of its decision, the court of appeals concluded based on its own review of the documents, that very few contained any third-party medical or financial information and those that did could be easily redacted to remove identifying information. *Id.* The court also noted that the possibility that disclosure might expose State Farm to liability is not the sort of harm that courts consider in determining whether there is a compelling reason to protect a document from disclosure. *Id.* Second, the court rejected the defendants' assertion that their reliance on the protective orders issued during discovery constituted a compelling reason to protect the confidentiality of the documents submitted in support of the summary judgment motions. *Foltz*, 331 F.3d at 1138. The court explained that the defendants could not reasonably have relied on a blanket protective order that purported to cover the summary judgment documents because it did not require a particularized showing of good cause as to any individual document.[8] *Id.* Accordingly, the court of appeals concluded the trial court had abused its discretion in denying the intervenors access to the documents.

---

[8] The court did, however, accept the defendants' position that documents filed in support of the motion to disqualify were subject to protection. The court noted that these documents were likely covered by attorney-client privilege and possibly work product protection and that "[n]either the public nor collateral litigants have any apparent right to or interest in such disclosure." *Id.* Although the court did not state as much, it apparently was following the rule articulated in *Phillips* that the presumption of access is rebutted by good cause – in this case, the existence of privilege – where documents are filed in support of a nondispositive motion. *See Hilleby v. FMC Corp.*, No. C-91-0568 FMS (CW), 1992 U.S. Dist. LEXIS 20835, at *1 (N.D. Cal. 1992) (holding that motion to disqualify counsel is nondispositive). Aside from the documents related to the motion to disqualify, there is no indication in *Foltz* that any of the summary judgment documents were subject to attorney-client privilege or work product protection.

**United States District Court**

For the Northern District of California

*Foltz* teaches that, with respect to documents filed in support of a dispositive motion, the presumption of access applies and can only be rebutted by a compelling reason. This latter inquiry, balancing the public right to access against purported compelling reasons, was conducted in the context of attorney-client privilege and work product protection in two cases involving access to special litigation committee reports decided by other circuits: *Joy*, 692 F.2d at 894 and *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1316 (7th Cir., 1984) ("*Continental*").

As noted above, in *Joy*, the defendant corporation filed a motion to dismiss the case based on a special litigation report prepared with the assistance of outside counsel. 692 F.2d at 884. In holding that the special litigation report should not have been placed under seal, the Second Circuit began with the rule that there is a public right of access to documents filed in support of dispositive motions "absent compelling reasons." *Id.* at 893. The court went on to reject as "patently inadequate" the two reasons for confidentiality offered by the defendants: 1) that the report was subject to attorney-client privilege and work product protection; and 2) that the "candid assessment" of the defendants' internal operations would, if made public, "adversely affect" the corporation in the banking industry and the community. *Id.* at 894. With respect to the first reason, the court stated, "the submission of materials to a court in order to obtain summary judgment utterly precludes the assertion of the attorney-client privilege or work product immunity." *Id.* As to the second reason, the court reasoned that "a naked conclusory statement that publication of the report will injure the bank industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal." *Id.* The court stated:

> The Report is no longer a private document. It is part of a court record. Since it is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny. The potential harm asserted by the corporate defendants is in disclosure of poor management in the past. That is hardly a trade secret. The argument that disclosure of poor management is so harmful as to justify keeping the Report under seal proves too much since it is a claim which grows stronger with the degree of misconduct. Were outright looting of Citytrust disclosed by the Report, for example, the harm of publication would be even greater. Moreover, Citytrust is a publicly owned company and this litigation directly concerns management's obligations to shareholders. We believe that foreclosing public scrutiny of the grounds for this adjudication is wholly unjustifiable.

United States District Court

For the Northern District of California

1    *Id.* The court stated elsewhere in the decision, "[w]e simply do not understand the argument that derivative

2    actions may be routinely dismissed on the basis of secret documents." *Id*. at 893.

3         The Seventh Circuit reached a similar result without actually holding that attorney-client privilege

4    and work product immunity were waived. *Continental*, 732 F.2d at 1316.  In *Continental*, the

5    shareholder-plaintiffs filed derivative suits against the defendants in federal district court. *Id.* at 1304.  The

6    defendants formed a special litigation committee ("committee") to evaluate the plaintiffs' claims. *Id.*  The

7    committee retained outside counsel, which conducted eighty interviews of defendants' employees and

8    others, researched the law in connection with derivative actions, and drafted a special litigation committee

9    report. *Id.* at 1305.  The committee moved to terminate the derivative suit based on the SLC report. *Id*.

10   A protective order was entered pursuant to stipulation of the parties, and the lower court ordered the

11   committee to furnish the report to the court and opposing counsel under seal. *Id*.  The order requiring

12   production of the report expressly preserved any claims of attorney-client or work product immunity

13   associated with the report. *Continental*, 732 F.2d at 1305 n.4.

14        At a hearing addressing whether the SLC conducted an independent good-faith investigation of the

15   allegations and whether its conclusions were reasonable, the defendants introduced the report into

16   evidence. *Id.* at 1305.  Witnesses testified in open court about the contents of the report and counsel for

17   plaintiffs even read excerpts of the report to witnesses. *Id.*  At the end of the hearing, the district court

18   judge discussed his "tentative conclusions" about the merits of the defendants' motion to terminate,

19   concluding that he agreed with defendants that the action should be dismissed against the outside director

20   defendants but disagreed as to the remaining defendants. *Id.* at 1305-1306.  Consistent with these tentative

21   conclusions, the plaintiffs withdrew their claims as to the outside directors and the defendants withdrew their

22   motion to terminate as to the remaining directors. *Id.*   As a result, the court did not actually issue a final

23   decision on the motion to terminate. *Id.* at 1306.  Subsequently, several newspapers covering

24   developments in the case sought to obtain copies of the SLC report on which the judge had relied in

25   making his tentative conclusions. *Continental*, 732 F.2d at 1306.  The court granted their request for

26   access to the report. *Id.*  The defendants appealed the order compelling disclosure of the report. *Id*.

27        On appeal, the Seventh Circuit held, as a threshold matter, that the presumption of access applied

28   to the SLC report because the motion to terminate resulted in dismissal of claims against several defendants

19

United States District Court

For the Northern District of California

1   and required the court to "make complex factual and legal determinations in a proceeding which has been

2   characterized as a 'hybrid summary judgment motion.'"  *Id*. at 1309 (citation omitted).  The court rejected

3   the defendants' assertion that the presumption did not apply because the court did not formally rule on the

4   motion.  *Id*. at 1309-10.  The court reasoned that the withdrawal of the motion was immaterial to whether

5   the presumption applied because "the practical effect of Judge Grady's announcement of his tentative

6   impressions was much the same as a ruling on the motion."  *Id*. at 1310.

7        The court also rejected the defendants' assertion that the presumption did not apply because the

8   report was entered into evidence while under a protective order and the order requiring production of the

9   report preserved any claims of attorney-client privilege or work product immunity.  *Continental*, 732 F.2d

10  at 1312.  The court reasoned that neither the protective order nor the order compelling the defendants to

11  provide the report to the court and the plaintiffs purported to control disclosure of material introduced as

12  evidence in support of a motion.  *Id*.  The court further noted that to the extent the defendants may have

13  relied on these orders to protect the confidentiality of the report after introducing the report into evidence,

14  their reliance was unreasonable.  *Id*.

15  The court went on to address whether the presumption of access was rebutted by a showing of compelling

16  reasons, addressing five reasons offered by the defendants for protecting the confidentiality of the report: 1)

17  the report was protected by attorney-client privilege; 2) the report was subject to work product immunity;

18  3) disclosure of the report would expose the defendant to other litigation; 4) requiring disclosure would

19  threaten the effective functioning of special litigation committees; and 5) requiring disclosure would

20  undermine public confidence in the banking industry.  *Id*.  at 1313.  The Court weighed these against the

21  following factors: 1)  "the general interest in understanding disputes that are presented in a public forum for

22  resolution;" 2) the "public's interest in assuring that courts are fairly run and judges are honest;" and 3) "the

23  public's right of access, guaranteed by the first amendment, to information before the court relating to

24  matters of public interest."  *Id*. at 1314.  Balancing these factors, the court concluded that the trial court did

25  not abuse its discretion in concluding that defendants failed to rebut the presumption of access.  *Id*. at 1316.

26  With respect to the question of attorney-client privilege and work product, the court in *Continental*

27  endorsed in dicta the holding of *Joy v. North* that "attorney-client privilege and work product immunity

28  were waived when the special litigation report was used in support of a motion to dismiss a derivative suit."

*Continental*, 732 F.2d at 1314 (citing *Joy*, 692 F.2d at 894).  According to the court, "[t]hat holding is in keeping with the general rule that protection from disclosure is available only when the party asserting a privilege has maintained confidentiality."  *Id*.  The court went on to hold, however, that even if attorney-client privilege and work product protection were not actually waived,  these protections did not weigh heavily in favor of defendants because strict confidentiality had not been maintained.  The court explained its conclusion as follows:

> Continental did attempt to limit disclosure of the Report and may have been under the impression that the May 12 order protected the claim of privilege even after the Report had been introduced into evidence. However, we attach less weight to the public interest in the attorney-client privilege and work product immunity in the case before us than in a case where absolute confidentiality had been maintained. There is little interest in the confidentiality of documents which have been publicly discussed by their custodian. Such public discussion is a fair characterization of what occurred at the June 30 hearing. Therefore, while we agree with Continental that the public interest in preservation of the attorney-client privilege and work product immunity is a significant factor to be weighed against disclosure, we find that this interest carries less weight here than it would in a case in which strict confidentiality had been maintained.

*Id*. at 1314.

The court also did not find compelling the defendants' assertion that the report should be kept confidential because its might be used by third parties in other litigation.  *Id*. at 1315.  First, the court expressed doubt that "the question whether third parties may use the report in litigation against Continental is, in strict contemplation, legally relevant to whether the Report should be disclosed."  *Id*.  Second, the court found that the report was not "clearly and significantly damaging" to Continental.  *Id*.

The court rejected Continental's contention that the report should not be disclosed because such disclosure would threaten the work of special litigation committees in general.  *Continental*, 732 F.2d at 1315.  The court noted that there was no authority that supported such a "generalized right of confidentiality as a factor to be weighed against disclosure" and that it declined to create such a privilege for internal corporate affairs.  *Id*.  Similarly, the court was skeptical that disclosure of SLC reports would undermine public confidence in the banking industry.  *Id*.  Citing to *Joy*, the court stated, "[w]e also do not understand why public confidence in the banking industry would be undermined by disclosure of the Report.  Certainly an open airing of the issues surrounding the litigation would be more conducive to public confidence than a secret report which led to dismissal of various claims."  *Id*. at 1316.

21

United States District Court

For the Northern District of California

1    In the matter at issue here, it is clear that the documents that were filed in the Delaware Action in

2    support of the motion to terminate – the SLC report and interview memoranda – are entitled to a

3    presumption of access that can only be rebutted by a showing of "compelling reasons."   Although the

4    parties disagree on the extent of the Delaware Court's reliance on these documents, it is undisputed that a

5    motion to terminate is a dispositive motion.

6        Defendants argue that the presumption of access does not apply to any of the documents at issue

7    because they were filed under seal in the Delaware Court, pursuant to an order expressly precluding the

8    parties from using them "for any purpose other than for purposes of this civil action."   Schmeltz Decl., Ex.

9    1.   The Court is not persuaded.   First, as discussed below, to the extent Defendants assert Plaintiffs must

10   petition the Delaware Court for these documents under the doctrines of comity and Full Faith and Credit,

11   the Court concludes that they are incorrect.   Second, to the extent Defendants may have relied on the state

12   court's order sealing the documents, that reliance was, as in *Continental*, misplaced in light of the strong

13   policy favoring public access to documents that are filed in support of dispositive motions.   *See Foltz*, 331

14   F.3d at 1135.

15       Defendants also appear to argue that the presumption of access does not apply because: 1) the

16   Delaware Court did not reach the question of whether the conclusions expressed in the report were

17   reasonable; and 2) Defendants do not intend to rely on the report in this action.   The Court finds no

18   authority supporting these assertions.   The presumption of access, and the policy considerations underlying

19   the presumption, come into play when a party brings a dispositive motion based on a particular filed

20   document, regardless of whether the court relies on that document.   *See id* at 1134-35 (holding that

21   presumption of access attached by virtue of fact that documents were *filed* in support of summary judgment

22   motion without mentioning whether the court ruled on those motions before the action was settled); *see also*

23   *Continental*, 732 F.2d at 1306 (holding that public right of access required disclosure of documents even

24   though parties seeking disclosure were newspapers and were not engaged in any collateral litigation).   In

25   addition, the first argument obscures the facts:  the Delaware Court did, in fact, base its holding on the

26   contents of the SCL report, albeit only on the question of independence.

27       In balancing the right to access against the reasons offered by Defendants for maintaining the

28   confidentiality of these documents, the Court considers the factors listed in *Continental* in favor of public

22

**United States District Court**
For the Northern District of California

1   access, namely,  1)  "the general interest in understanding disputes that are presented in a public forum for

2   resolution;" and 2) the "public's interest in assuring that courts are fairly run and judges are honest."

3   *Continental*, 732 F.2d at 1314; *see also Foltz*, 331 F.3d at 1135.  On the other side of the balance,

4   Defendants point to: 1) attorney-client privilege; 2) work product doctrine; 3) the fact that third parties

5   might use the SLC report and memoranda against it in other litigation; and 4) the alleged harm disclosure

6   will inflict on the work of special litigation committees.  The Court finds that these reasons are not

7   sufficiently compelling to defeat the presumption of access.

8          First, the Court finds the reasoning of *Joy* and *Continental* persuasive on the question of waiver.

9   As noted above, the Court has already concluded that Defendants waived any attorney-client privilege or

10  work product doctrine as to the SLC report and interview memoranda.

11         Second, even if attorney-client privilege and work product doctrine had not been waived, the Court

12  gives little weight to these privileges because Defendants did not keep the documents at issue strictly

13  confidential.  Instead, Oracle relied on the documents in support of a dispositive motion and then allowed

14  opposing counsel to discuss their contents during the summary judgment hearing in the Delaware Action

15  without objection.  Under these circumstances, as in *Continental*, any attorney-client privilege or work

16  product protection that might exist must give way to the important considerations favoring public disclosure.

17  *See* 732 F.2d at 1314-15.

18         The Court also rejects Defendants' assertion that the report should remain confidential because it

19  might be used against Defendants by third parties in other litigation.  As noted in *Foltz*, this is not the sort of

20  harm that courts should consider  in determining whether the public right of access applies.  331 F.3d at

21  1137; *see also Continental*, 732 F.2d at 1315 (expressing doubt as to whether potential harm of releasing

22  SLC report was "legally relevant").

23         Finally, the Court rejects Defendants' contention that SLC reports must remain confidential to

24  protect the functioning of special litigation committees in general.  As the court in *Continental* noted, there

25  appears to be no authority suggesting that such a factor constitutes an appropriate consideration in

26  balancing the public's right to access.  *Id.*  Nor is the Court persuaded that, as a factual matter, disclosure

27  of SLC reports would necessarily be harmful to the functioning of special litigation committees.  To the

28  contrary, it is more likely that a system in which shareholder actions are routinely dismissed on the basis of

United States District Court

For the Northern District of California

secret reports would undermine the legitimacy of special litigation committees in the eyes of the public and therefore threaten the functioning of such committees.  *Joy*, 692 F.2d at 893.  In any event, *Joy* has been the law in the Second Circuit for over 20 years, and Defendants have not offered any evidence that the functioning of special litigation committees has been impaired.

Having balanced the factors supporting the public right of access against the reasons asserted by Defendants for protecting the SLC report and memoranda, the Court concludes that Defendants have not shown compelling reasons that override the presumption of access.

The Court rejects Defendants' reliance on *In re Perrigo*, 128 F.3d 430 (6th Cir. 1997) ("*Perrigo*") in support of a contrary result.  In *Perrigo*, the plaintiffs filed a derivative suit against the a corporation and its directors, officers and shareholders.  *Id.* at 432.  The corporation filed a motion to dismiss based on the recommendation of an SLC report, but did not actually file the report in support of the motion.  *Id.* at 433.  In response, the plaintiffs sought production of the report, arguing that they needed it in order to show the recommendation was not based on a reasonable investigation.  *Id.*  The defendant refused to produce the report on the basis that it was privileged and the plaintiffs brought a motion to compel.  *Id.*  The trial court held that the plaintiffs were entitled to the report because, notwithstanding the asserted privileges, plaintiffs had demonstrated substantial need.  *Id.*  It went on to hold that "once the Report is submitted to this Court to induce reliance upon the Report, the public interest in open adjudication outweighs the interests underlying the attorney-client privilege and work product immunity."  *Perrigo*, 128 F.3d at 433 (quoting trial court decision).  The defendant-corporation petitioned the sixth circuit for mandamus relief.  *Id.* at 434.

On appeal, the Sixth Circuit upheld the trial court's determination that the plaintiffs were entitled to the report based on substantial need.  *Id.* at 438.  It disagreed, however, with the trial court's holding that the report would become part of the public record if it were submitted to the Court.  *Id.* at 437.  The court of appeal objected to this "automatic public disclosure," finding that it posed the defendant with the choice of withdrawing the motion or waiving the protections of attorney-client privilege.  *Id.* at 438.  Instead, the court held, the report, if filed, could only become public after the trial court held a hearing "to consider all the appropriate balancing factors," including whether the report contained "highly confidential information [or] business trade practices or secrets."  *Id.* at 439.

United States District Court

For the Northern District of California

Defendants here do not face the sort of choice faced in *Perrigo* because there has been no "automatic" disclosure.  Rather, Defendants have been given the opportunity to identify any trade secrets or highly confidential material in the report and to point out any other reasons they believe are "compelling" for maintaining its confidentiality.  In contrast to *Perrigo*, the Court here does not base its holding on the mere fact that the SLC report and memoranda were filed in the Delaware Action.  Rather, the Court has conducted the appropriate balancing in determining that there is a public right of access to these documents.  Defendants themselves took the steps that gave rise to this right: they filed the documents.  Accordingly, Defendants are in no position to assert that copies of the documents in their possession may be withheld on the basis of privilege or work product.

### E.       Comity and Full Faith and Credit

In most of the cases discussed above, the courts of appeals addressed the public right to access in the context of a sealing or protective order issued by a federal district court.  *See, e.g., Foltz,* 331 F.3d at 1128*; Joy*, 692 F.2d at 884; *Continental*, 732 F.2d at 1310; *Perrigo*, 128 F.3d at 434.  This case, in contrast, involves a sealing order issued in a separate action by a state court.  Defendants assert that under these circumstances,  Plaintiffs should petition the Delaware Court of Chancery for access to these documents, asserting that "requesting this Court to unseal the records of the Delaware Chancery Court raises serious comity and Full Faith and Credit issues."  Opposition at 7.  Defendants are incorrect.

First, the Court is not ordering any relief with respect to the files of the Chancery Court.  Oracle itself possesses copies of the documents at issue – indeed they are Oracle's documents.         Second, under federal law, this Court may compel production of documents relevant to the claims of any party unless those documents are privileged.  Fed. R. Civ. P. 26(b)(1).  In a federal question case, federal common law, not state law, governs whether a document is privileged.  *United States v. Zolin*, 491 U.S. 554, 557, 62 (1989); *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1519 n.6 (9th Cir. 1987).  Principles of comity do not dictate otherwise.  *Leon v. County of San Diego*, 202 F.R.D. 631, 634-35 (S.D. Cal. 2001) (rejecting the defendants' argument that comity required the court to deny the plaintiffs' motion to compel medical records because they were privileged under state statute).  Instead, comity only requires a court to defer to a state privilege where such deference would not substantially interfere with federal procedural or substantive policy.  *Id.* at 635.  To the extent the Delaware Court's

**United States District Court**

For the Northern District of California

order may prohibit access to documents that were filed in support of a dispositive motion and which this Court holds are subject to the federal common law right of public access, the Court concludes that deference is neither required nor appropriate.

Nor is the Court required to deny the Motion based on the doctrine of full faith and credit.  Under 28 U.S.C. Section 1738, a federal district court is required to give full faith and credit to the judicial proceedings of a state.  The statute mandates that federal courts give preclusive effect to state court judgments whenever the state court issuing the judgment would do so. *Allen v. McCurry*, 449 U.S. 90, 96 (1980).  However, a court order that remains subject to modification in the court of issue may also be modified by the courts of another state. *Halvey v. Halvey*, 330 U.S. 610 (1947).  Thus, for example, full faith and credit does not require a court to deny discovery on the basis of a state court order that prohibits discovery of any kind so long as the state court order remains subject to modification in the court of issue. *Williams v. Gen. Motors Corp.*, 147 F.R.D. 270, 272-73 (S.D. Ga. 1993) (granting the plaintiffs' motion to permit deposition even though state court order enjoined witness from testifying at any deposition on basis that under the law of the state that issued the order, it was an equitable order that could be amended by the issuing court).

Here, the Delaware Chancery Court issued the Amended Sealing Order pursuant to Delaware Court of Chancery Rule 5(g).  This rule provides a mechanism for modifying such orders at any time upon application of a party who wishes the document unsealed. *Fitzgerald v. Cantor*, No. 16297-NC, 2001 Del. Ch. LEXIS 48, at *4-*5 (Del. Ch. 2001).  Indeed, as noted above, the Delaware Court has already amended the sealing order to allow production of the SLC report in other actions.  Amended Sealing Order at ¶ (g).  Therefore, this Court too may require disclosure even if such an order effectively amends the terms of the Chancery Court order without violating the requirement that it give state court judicial proceedings full faith and credit.

Defendants' reliance on *Resolution Trust Corp. v. Castellett* in support of its assertion that this Court will violate the principles of comity and full faith and credit if it grants Plaintiffs' Motion is misplaced. *See* Opposition at 7 (citing 156 F.R.D. 89, 94 (D.N.J. 1994)).  *Resolution Trust Corp.* springs from a line of cases representing a narrow exception to the ordinary rule that the scope of a privilege in a federal question case is not determined by state law. *See id.* at 92-95 (citing cases in which exception has been

1    applied).  These cases stand for the proposition that a court must afford comity to state laws sealing state

2    grand jury materials.  *See, e.g., Socialist Workers Party v. Grubisic*, 619 F.2d 641, 644 (7th Cir. 1980).

3    However, to the extent that these decisions defer to state laws out of comity, they are based on the

4    conclusion that the federal courts can recognize state privileges without substantial cost to federal policy

5    because federal grand jury proceedings are privileged from discovery under Federal Rule of Criminal

6    Procedure 6(e) for the same reasons that underlay the state laws.  *Id.* at 643.  These cases are inapplicable

7    because, as discussed above, the Delaware Court's sealing order interferes with the federal common law

8    right to access to the SLC report and memoranda.

9    **IV.      CONCLUSION**

10          Plaintiffs' Motion is GRANTED as to the SLC report and the interview memoranda attached to the

11   SLC report.  These documents shall be produced to Plaintiffs forthwith.  Plaintiffs' Motion is DENIED as

12   to the interview notes.

13          IT IS SO ORDERED.

14

15   Dated: August 5, 2005



JOSEPH C. SPERO
United States Magistrate Judge