# Exhibit 1

PAGE 53

53

1 declaration establishes that the two have nothing to do with
2 each other.
3          MR. WILLIAMS: Well, the one point there that I would
4 like to address is that it appears the 12601 account is the bad
5 debt reserve account and that --
6          MR. RUBINSTEIN: We agree.
7          THE COURT: Well, that's right, but he's saying that
8 the bad debt reserve account has nothing to do with the debit
9 memos.
10         MR. WILLIAMS: Well, but our investigation thus far,
11 and even a review of these documents show that bad debt reserve
12 -- withdrawn.
13         The monies that were applied to the debit memos came
14 from the bad debt reserve, which is where the unapplied cash
15 went to when it came in.
16         And I have to admit, your Honor, that the information
17 that we have is limited, but we do have people who have said
18 that's what it is.
19         The documents show on their face that the accounts,
20 the 25005 account and the 12601 account are, indeed, related.
21         MR. SOLOMON: In fact, your Honor, they have been
22 described as slush funds, cookie jars.
23         MR. RUBINSTEIN: Your Honor, they are going to get
24 the audit trial for all these debit memos. They will be able
25 to see for themselves.

PAGE 54

54

1          THE COURT: Right. That's right. You will find out,
2 but not by going into the 2002, 3, 4, 5 investigation directly.
3 You are going to look at every piece of paper that has to do
4 with these debit memos up and down and if it goes through the
5 accounts that you suspect it is going through, well, then, that
6 will be one thing. If it isn't, then it isn't. Isn't that the
7 answer? Why isn't that the answer?
8          I mean, if it turns out that none of this money
9 passes through the 12601 account, why isn't that the answer?
10         MR. WILLIAMS: If it gives -- if they give us
11 everything on the 25005 account, then very --
12         THE COURT: They are not going to give you everything
13 on the 2500. They are giving you 46,000 debit memos and the
14 entire audit trail of them. Why doesn't that give you what you
15 need?
16         MR. WILLIAMS: I hope it gives us what we need, but I
17 don't know what it is.
18         THE COURT: Okay. We will find out. Okay. I
19 understand. I understand. We will find out.
20         So with respect to the accounting allegations, the
21 subject matter is all of the documents regarding the on account
22 clean up in the 2000 -- in the relevant time period, all the
23 documents regarding or related to the 46,000 debit memos and
24 all documents related to the accounting treatment of those
25 memos.

PAGE 55

55

1          Okay. Insider trading, you have got an agreement on
2 the subject matter.
3          The special litigation committee. You know,
4 obviously that's an issue -- it strikes me as an issue that we
5 are not going to resolve here today if you are really going to
6 pursue it.
7          So my suggestion on that is that the issue is
8 reserved. I'm obviously not going to allow you to have
9 discovery into it over their objection at the moment. You need
10 to decide whether it's useful to bring a motion on that
11 subject.
12         The one thing I would ask is whether or not the
13 defendants intend to produce all of the underlying documents
14 that the special litigation committee reviewed from whatever
15 source. And I'm not saying you produce them as a package,
16 saying these are the SLC documents, but are all of those
17 underlying documents going to be produced?
18         MR. RUBINSTEIN: I can tell your Honor this, and I
19 hope this is responsive: That we are not -- all of the
20 documents that they have requested and that are responsive to
21 their request are being produced, including the documents that
22 were seen by the SLC.
23         And so, in other words, where I disagree -- where we
24 would object is to tying the relevance of a document to simply
25 the fact that the SLC may have asked for it whether it has

PAGE 56

56

1 anything to do with the case or not. I mean, we are not saying
2 that just because the SLC got an underlying record from Oracle
3 means they don't get it. Of course not.
4          THE COURT: Why not produce them all?
5          MR. RUBINSTEIN: I'm sorry?
6          THE COURT: Why not produce them all?
7          MR. RUBINSTEIN: I'm not saying there are any that we
8 are withholding.
9          THE COURT: I understand. I'm asking you the
10 question. Are there any you are withholding?
11         MR. RUBINSTEIN: I'm not aware of any --
12         THE COURT: How about if I say you can't withhold
13 any. What's wrong with that?
14         MR. RUBINSTEIN: Because if, for instance, there were
15 document that the SLC saw that they haven't asked for or that
16 the Court rules is beyond the scope of discovery --
17         THE COURT: Well, that's an issue, but what is it?
18         MR. RUBINSTEIN: I'm not in a position to say. I
19 don't have anything in my mind right now where I'm saying, oh,
20 there is a document --
21         THE COURT: I understand. This is too technical. We
22 need to get practical here. It's a relevance screen.
23         The Special Litigation Committee was investigating
24 the allegations of the complaint, right?
25         MR. RUBINSTEIN: Correct.

**SHEET 1   PAGE 1**

```
                                                         Pages 1 - 161
                       UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
                BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE
IN RE:                              )
                                    )  Case No. C01-0988 MJJ
ORACLE SECURITIES LITIGATION        )
                                    )  Tuesday
                                    )  March 1, 2005
                                       11:00 a.m.

                         TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:       LERACH, COUGHLIN, STOIA, GELLER
                       Rudman & Robbins LLP
                     100 Pine Street
                     Suite 2600
                     San Francisco, California 94111
                BY:  MARK SOLOMON, ESQ.
                     SHAWN A. WILLIAMS, ESQ.
                     MONIQUE WINKLER, ESQ.
                     WILLOW RADCLIFFE, ESQ.


                (APPEARANCES CONTINUED ON FOLLOWING PAGE)









Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR
               Official Reporter - US District Court
               Computerized Transcription By Eclipse
```

**PAGE 2**

```
APPEARANCES:  (CONTINUED)

For Defendant:       MAYER, BROWN, ROWE & MAW
                     190 South LaSalle Street
                     Chicago, Illinois 60603-3441
                BY:  ALAN N. SALPETER, ESQ.
                     JAVIER H. RUBINSTEIN, ESQ.
                     LEE H. RUBIN, ESQ.
                     ELI GREENSTEIN, ESQ.
                     SHIRISH GUPTA, ESQ.


Also Present:        James C. Maroulis, Esq.
                     Senior Corporate Counsel
                     Oracle Corporation


                     Andy Rudolph
                     Forensic Accountant
                     Lerach, Coughlin, Stoia, Geller,
                       Rudman & Robbins, LLP
```

**PAGE 3**

```
                        PROCEEDINGS
MARCH 1, 2005                                     11:00 a.m.

         THE CLERK: Calling Case C01-0988, In Re Oracle
Securities Litigation. Counsel --
         THE COURT: Do you have the sheet? Do you have a
sheet with these people's names on it, the cards?
         THE CLERK: Yes. I will print it out.
         THE COURT: All right. Why don't you all state your
appearances, please?
         MR. SOLOMON: Mark Solomon, your Honor, appearing
behalf of plaintiffs.
         MR. WILLIAMS: Shawn Williams on behalf of plainti
Good morning, your Honor.
         THE COURT: Good morning.
         MR. GREENSTEIN: Good morning, your Honor. Eli
Greenstein on behalf of the plaintiffs.
         MS. WINKLER: Monique Winkler on behalf of the
plaintiffs.
         MS. RADCLIFFE: And Willow Radcliffe on behalf of
plaintiffs.
         THE COURT: Welcome.
         MR. SALPETER: Good morning, your Honor. I'm Alan
Salpeter from Mayer, Brown in Chicago for Oracle.
         THE COURT: Welcome.
```

**PAGE 4**

```
         MR. RUBINSTEIN: Good morning, your Honor. Javier
Rubinstein on behalf of Oracle also from Mayer, Brown.
         THE COURT: Welcome.
         MR. RUBINSTEIN: Thank you.
         MR. MAROULIS: Good morning, your Honor. James
Maroulis from Oracle Corporation for Oracle.
         MR. RUBIN: And Lee Rubin also from Mayer, Brown.
         THE COURT: All right.
         MR. SOLOMON: Can we also just add we also have And
Rudolph with us, who is our in-house forensic accountant.
         THE COURT: Welcome. Good. All right. We are her
pursuant to Judge Jenkins' order of February 7th referring us
in the matter of preparation of a discovery plan.
         I have reviewed in detail the parties' submissions.
I take as my text for the preparation of the plan the outline
presented in your February 23rd joint letter as supplemented
the Mayer, Brown letter clarifying certain aspects of their
position.
         And what I want to do is I want to go through in th
order you have presented them the issues and come up with an
order that I will ask you all to draft reflecting whatever
agreements or rulings we come to today.
         We don't have endless amounts of time today so we a
going to try to move pretty quickly, but let's start on Page
with the -- or Page 1, 2, and 3, which is the whose files
```

PAGE 45

45

1    THE COURT: I'm not saying that it's easy. But it
2 may be easier -- preferable, I don't know that it's easier than
3 just loading up a truck with them. It may be preferable.
4    But what they have to do -- and I use different
5 language than the one you did, and I do it on purpose. With
6 respect to the 46,000 debit memos that are alleged in the
7 complaint, I would want them to produce every piece of paper or
8 every computer record that relates to that. And that means if
9 they -- all the changes that occurred for them, the
10 transactions that they arise from, if they go up a level or
11 down a level, they have to trace those transactions so you have
12 a complete history of those transactions.
13    That's what you are talking about, right?
14    MR. WILLIAMS: That is what I'm talking about and,
15 again, we understand that --
16    THE COURT: Okay.
17    MR. WILLIAMS: -- it touches other accounts. So the
18 debit memos, it's just not one transaction that hit -- that
19 touched the debit memo and was created. There were other
20 accounts which were implicated by the creation of the debit
21 memos and the application or the movement of that money to
22 revenues, and I would expect that we are going to --
23    THE COURT: Well, I don't know. You will see what it
24 is. You will get all the documents about it. It will touch
25 other accounts. It won't. But whatever has to do with --

PAGE 46

46

1 okay. So the other things other than that, you are going to
2 produce all documents of the so-called on account clean up, all
3 right?
4    MR. RUBINSTEIN: That is what these debit memos are.
5 It's going to be all the audit trail and which is, obviously,
6 related to these 46,000.
7    THE COURT: And, obviously, any documents regarding
8 the accounting treatment by any of the memos including all
9 policy documents on such -- on those accounting treatments.
10 You know, there may be internal systems on the kind of
11 accounting treatment they were given. There may be internal
12 policies, et cetera, et cetera.
13    Anything that touches on the accounting treatment of
14 those debit memos, is that what you are intending?
15    MR. RUBINSTEIN: Yes, yes.
16    THE COURT: Let's talk a little bit about the 2002
17 internal investigation. I guess my concern is this, and this
18 is again for you.
19    At the end of the day the motion was denied. It
20 seems to me that the reason the motion was denied was because
21 of the things that are contained in the declarations with
22 respect to that investigation which basically said, it doesn't
23 have anything to do with the 46,000 debit memos.
24    And as I understand your response, it's limited to,
25 well, it had to do with stuff during the class period.

PAGE 47

47

1 I'm not sure why I care what happened during the
2 class period if it's not actually on the 46,000 debit memos.
3    MR. WILLIAMS: I'm not sure if you mean not actually
4 on the 46,000 debit memos, but I understand their position to
5 be that whatever happened in late 2002 had absolutely nothing
6 to do with the creation and whatever happened to those debit
7 memos, and I think that that's just wrong. And on the face of
8 the declarations that they submitted in support of their
9 opposition it shows that it's wrong.
10    If you just look at that one e-mail from Michael
11 Quinn --
12    THE COURT: Let's see it. Tell me where it is.
13 Point me to an exhibit tab.
14    MR. WILLIAMS: Exhibit number or letter C.
15    THE COURT: Okay.
16    MR. WILLIAMS: That's the declaration itself. And
17 then the document that I'm referring to now is directly behind
18 it.
19    THE COURT: Got it.
20    MR. WILLIAMS: Well, if you just begin with the
21 declaration, if you look at Paragraph 4 of the declaration, he
22 says: "In 2000 my staff participated in the conversion of" --
23    THE COURT: Paragraph 4, there are numbers?
24    MR. WILLIAMS: Yes. Paragraph 4 of the declaration
25 of Michael Quinn.

PAGE 48

48

1    THE COURT: I see.
2    MR. WILLIAMS: I don't need to read it out loud if
3 your Honor wants to just take a look at it.
4    (Brief pause.)
5    THE COURT: Okay. Yes.
6    MR. WILLIAMS: That's directly related to the 25005
7 on account. That is the -- those are the -- that's the account
8 from which we allege the unapplied cash which was applied to
9 the debit memos during our class period came from.
10    The next paragraph he explains this, I guess, other
11 project which related directly again to the same unassigned
12 cash receipts.
13    THE COURT: Yeah, and they are still doing it.
14    MR. WILLIAMS: Right, and it goes to this account,
15 12601.
16    THE COURT: Well, but he says that that
17 investigation, the 2000 and whatever this is, 2, 3, 4, 5
18 investigation has nothing to do with the debit memos, the
19 transactions that occurred on the 17th of November in 2000.
20    MR. WILLIAMS: That's right. He says that, but then
21 if you look at the e-mail that is attached to it --
22    THE COURT: Okay. Now, look at the e-mail, which is
23 an e-mail dated in 2002. Got it.
24    MR. WILLIAMS: It's right behind it. And now Michael
25 Quinn is the same person, your Honor, we allege in the

PAGE 41

1 relevant period of time. And we will get to the relevant
2 period of time later.
3         Revenue earnings and forecastings is agreed to,
4 right?
5         MR. RUBINSTEIN: Generally.
6         MR. WILLIAMS: Generally, yes.
7         THE COURT: Agreed to as to the subject matter, the
8 issue is to be the search.
9         MR. WILLIAMS: That was the open issue.
10        THE COURT: Right.
11        MR. RUBINSTEIN: Your Honor, with respect to the
12 previous ruling, with respect to the materiality threshold?
13        THE COURT: It's $500,000. 500k materiality. My
14 mistake. I meant to insert that.
15        MR. SOLOMON: Your Honor, I guess all I would say to
16 that is, you know, with what -- potentially revisit that as we
17 go along, but based on the information now I understand.
18        THE COURT: Sure. It takes a showing to revisit it
19 obviously, but I don't -- you know, this is a learning process
20 for me, too.
21        So revenue and earnings forecasting is an agreed to
22 subject matter, and I have made a ruling as to the search and
23 that will have whatever indications it has.
24        The accounting allegations. I guess I don't
25 understand why the plaintiffs think they need all of these

PAGE 42

1 accounting documents. The accounting allegations -- this is
2 only in one very small respect, and not an unimportant respect,
3 but in one very small respect an accounting allegation in the
4 case.
5         This isn't, you know, broad based revenue recognition
6 problems in a variety of areas. This is, on November 17th you
7 executed 46,000 false invoices from the -- you know, to convert
8 revenue from unapplied to revenue, convert money from unapplied
9 to revenue in the amount of $228 million.
10        I don't understand why you need all of their
11 accounting documents.
12        MR. WILLIAMS: Well, I think that we had reached an
13 agreement at least or close to an agreement -- and correct me
14 if I'm wrong, defendants -- with regard to the work papers for
15 the entire year of fiscal 2001.
16        And that's really an integration issue not with the
17 product, but with the work papers themselves and being able to
18 understand the work papers.
19        THE COURT: Is that right?
20        MR. RUBINSTEIN: No.
21        MR. WILLIAMS: I thought that we had come very close
22 to an agreement on that at least. If your position is
23 different, maybe it is. . .
24        MR. RUBINSTEIN: We agreed to produce work papers as
25 they relate to this debit memo issue.

PAGE 43

1         MR. WILLIAMS: I don't think that that's correct and
2 I don't think that the law supports that.
3         I think it's just generally being able to understand
4 the work papers for the year, you need the full set of work
5 papers. I understood that we were close to an agreement on
6 that.
7         THE COURT: I guess not. So you are going to have to
8 justify yourself.
9         MR. WILLIAMS: With regard to the integration of the
10 work papers?
11        THE COURT: Yeah. Well, we are not -- the work
12 papers, we haven't even gotten to the accountants yet, but I
13 was talking about the accounting allegations in general. You
14 have asked for all their policies, documents, system documents,
15 general ledger, monthly credit memos, miscellaneous reports,
16 accounting reserves, not to mention the 2002 internal.
17        MR. WILLIAMS: I will begin with the general ledger,
18 your Honor.
19        We need the general ledger because it's clearly -- as
20 we allege, these debit memos were created and money was taken
21 from this unapplied cash account and taken down to revenue.
22        The general ledger is, that's the beginning of
23 understanding these transactions. And where they -- I guess
24 all the T's of the transaction; where the money -- where the
25 money came from, where it went, and the accounts in which it

PAGE 44

1 spread through. Now --
2         THE COURT: Well, if you get every piece of paper or
3 every record that is on these 46,000 debit memos or any piece
4 of paper that is related to those 46,000 debit memos, why isn't
5 that enough?
6         MR. WILLIAMS: I didn't understand that to be the
7 position.
8         MR. RUBINSTEIN: That is our position. That's
9 exactly what we are offering.
10        MR. RUBIN: There has never been a dispute about
11 that.
12        MR. WILLIAMS: So that includes the general ledger?
13        THE COURT: It includes pieces of the general ledger.
14 Can you imagine what Oracle's general ledger looks like?
15        MR. WILLIAMS: I'm sure that --
16        THE COURT: You are not going to read it. You are
17 going to want 46,000 out of two trillion entries, something
18 like that. I mean, it's a tiny little bit.
19        MR. SOLOMON: Your Honor, obviously, we have to trace
20 this up to the financial statements. If they can meaningfully
21 or usefully segregate out revenue items, A/R out items and
22 reserves, that would be meaningful and that has to include the
23 unapplied cash accounts.
24        If they can meaningfully do that, that wouldn't be
25 easy for them I don't think.