Exhibit 3



**LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP**

SAN DIEGO • SAN FRANCISCO
LOS ANGELES • NEW YORK • BOCA RATON
WASHINGTON, DC • HOUSTON
PHILADELPHIA • SEATTLE

Shawn A. Williams
ShawnW@Lerachlaw.com

June 30, 2005

<u>VIA FACSIMILE & U.S. MAIL</u>

Vincent P. Schmeltz, III, Esq.
MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street
Chicago, IL 60603-3441

Lee Rubin, Esq.
MAYER, BROWN, ROWE & MAW LLP
Two Palo Alto Square
El Camino Real, Suite 300
Palo Alto, CA 94306

Re:  *In re Oracle Corporation Securities Litigation*
     Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Counsel:

    I write in response to your June 29, 2005 letter requesting the basis for plaintiffs' belief that the parties should agree that Judge Spero's March 10, 2005 Discovery Plan and Order ("Order") be modified to at least include the full set of audit workpapers for all periods relevant to this action. It is plaintiffs' belief that both Ernst & Young LLP ("Ernst & Young") and Arthur Andersen LLP's ("Arthur Andersen") productions are substantially incomplete, possibly due to the language of the Order, which does not currently require the production of complete sets of workpapers. First, the Order requires that Oracle's auditors produce all documents relating to the debit memo transactions and the accounting treatment of the 46,000 debit memo transactions alleged in the Revised Second Amended Complaint. Order at 8.

    The documents produced by Arthur Andersen evidence an analysis of the Oracle's 25005 account, including, but not limited to, increases and decreases in said account during the relevant time period. It also appears that Arthur Andersen analyzed certain other accounts relating to the Company's 25005 account and customer overpayments, including adjustments to those accounts and purported reasons for the adjustment in said accounts. The need for complete sets of workpapers is evident from the form in which many of the documents have been produced. For example, *see* handwritten notes on many of the Arthur Andersen variation analyses done on Oracle accounts receivable unearned revenue accounts during the relevant period. It appears that these are drafts of such documents; however, the final versions have not been produced.

    Secondly, memos concerning the accounts receivable testing done by Arthur Andersen frequently refer to coded items in the quarterly review files which have not been produced. *See*, for example, AA 00007-15. It is thus impossible, based on Arthur Andersen's production, to understand and evaluate the documents produced in any meaningful way other than to confirm that additional documents are indeed responsive and must be produced. Simply put,


Vincent P. Schmeltz, III, Esq.
Lee Rubin, Esq.
June 30, 2005
Page 2

the full set of audit workpapers is necessary to understand even the limited production thus far as they would include the following documents and its information concerning the same:

    1.    The engagement letters that describes the scope of work that Arthur Andersen was to perform.

    2.    The workpaper's description or index that provides the audit context of the documents provided thus far and identifying other documents relevant to Unapplied Cash accounts #12018, 12570, 25005, customer overpayments, unearned revenue accounts, and earned revenue accounts. All of these relate to the debit memo allegations.

    3.    Arthur Andersen's legend to identify all relevant codes and markings on the documents so that they may be appropriately interpreted. For example, the documents provided in are sometimes labeled with a handwritten "B" or "DD" – followed by a number. The pages do not follow a numerical sequence. In order to follow the audit trail, plaintiffs need to obtain all documents within the "B" and "DD" series.

    4.    The documents produced refer to tests of balances, including use of monetary unit sampling, but Arthur Andersen has not produced documents supporting the execution of such tests.

    5.    The documents produced also contain notes by Arthur Andersen auditors about account descriptions and discussion of variances in Oracle's accounts receivables and unearned revenue accounts, but the sources of this information have not been produced. Thus, the workpapers of interviews with Oracle staff members that was used to reach the conclusions stated must be produced.

    6.    Finally, several documents contain circled letters indicating a cross-reference to another item (*e.g.*, AA 000019, 000023, 000035, 000040, 000044, 000045, and 000051). Plaintiffs need the other workpapers corresponding to those cross-references to identify the work performed.

These are only some of the issues that could be resolved with the production of a complete set of Arthur Andersen's audit workpapers. Ernst & Young has produced even less.





Vincent P. Schmeltz, III, Esq.
Lee Rubin, Esq.
June 30, 2005
Page 3

      Please let me know whether you will agree to the requested modification. If not, let's try to schedule a face-to-face meet-and-confer sometime prior to July 15, 2005.

Very truly yours,

SHAWN A. WILLIAMS

SAW:rc