August 10, 2005



BY HAND-DELIVERY

The Honorable Joseph C. Spero
United States District Court
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

**Vincent Paul Schmeltz III**
Direct Tel (312) 701-8531
Direct Fax (312) 706-8146
tschmeltz@mayerbrownrowe.com

Re:   *In Re Oracle Corporation Securities Litigation*
      Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Judge Spero:

We write in response to Plaintiffs' August 5, 2005 letter, which seeks to compel documents and seeks modification of the Discovery Plan. ***First,*** Plaintiffs are not entitled to compel the production of any documents because Plaintiffs failed to meet and confer on this issue. In any event, Oracle has produced all of the documents contemplated in the Discovery Plan. Plaintiffs merely are seeking to expand discovery in the hopes of discovering a new claim in documents that have nothing to do with the accounting allegations in the Revised Second Amended Complaint. ***Second,*** Plaintiffs' request that the Discovery Plan be modified also lacks merit as it, too, is a baseless effort to expand discovery. It also should be noted that, although Plaintiffs now ask this Court to modify various aspects of the Discovery Plan, they have acted as though the plan were already modified in letters sent to Arthur Anderson LLP and Ernst & Young. In those letters, Plaintiffs claimed that the auditing firms were required to produce various categories of documents that clearly are outside the scope of the Discovery Plan. ***In short***, the Court got it right the first time when it ruled that Plaintiffs were only entitled to documents regarding the debit memos.

I.      **Plaintiffs' Motion To Compel Is Procedurally Defective and Substantively Flawed.**

The parties had a face-to-face meeting on July 27, 2005, but did not confer on Plaintiffs' motion to compel. This fact is confirmed by the July 15, 2005, agenda that Plaintiffs prepared, which lists a variety of topics, but does not mention ***any*** alleged defect in Defendants' production or Plaintiffs' motion. (*See* Ex. A, July 15, 2005 M. Winkler Agenda). At the July 27 meeting, Defendants' lead trial counsel discussed each issue on the agenda. During the course of the lengthy meeting, the parties discussed a number of other issues in passing, and one of these was Plaintiffs' assertion that Defendants had not produced all accounting documents called for by the Discovery Plan. Having not conferred with our clients, we were not prepared to meet and confer about the issue. Indeed, Plaintiffs apparently also were not prepared, as evidenced by the fact that they expressed no familiarity with the accounting-related documents Defendants had produced. Defendants suggested that the parties then engage in further dialogue, but Plaintiffs have never responded.

Moreover, Defendants already have produced all responsive documents called for in the Discovery Plan. Defendants produced "all documents relating to (i) the alleged 'On Account Cleanup,'" including e-mails discussing the clean-up and the SQL script by which it was performed; "(ii) the 46,000 debit memoranda; and (iii) the accounting treatment of those debit memoranda, including any audit trail." Disc. Plan at 2. Oracle also has produced the pertinent accounting policies. These documents show why Oracle created the 46,000 debit memos, how they did so, and the subsequent accounting treatment of these memos. Defendants believe this to be exactly what the Court contemplated. Ex. B, Excerpt from Mar. 1, 2005 Tr. at 54:20-25.

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

The Honorable Joseph C. Spero
August 10, 2005
Page 2

Plaintiffs do not suggest that Defendants failed to produce the accounting history of the 46,000 debit memos. Instead, they seek to redefine the scope of discovery, arguing that Defendants must produce documents *prior to,* but with no relationship to, the debit memos. Plaintiffs claim, for example, that they need the invoices from transactions that led to accounting entries that ultimately were the subject of the debit memos. As the Court recognized on March 1, such discovery has no bearing on whether Oracle used the debit memoranda to improperly recognize revenue. *Id.* at 53-54 (recognizing that the relevant inquiry is whether the debit memos moved into other accounts).

Plaintiffs also take issue with a spreadsheet, complaining that it was "compiled solely for the purpose of this litigation." (Emphasis removed.) In fact, the spreadsheet is generated from data concerning items (ii) and (iii) above, and that data are the only responsive information that exists.[1] Not only is it a bit absurd for Plaintiffs to complain that Oracle (the world's leading database company) stores information in a database, but Plaintiffs have no basis for the conjecture regarding what other responsive documents might exist. Plaintiffs already have taken 30(b)(6) depositions of Oracle representatives on accounting issues and on data storage. From these depositions, they know well that no further documents exist.

## II.   The Discovery Plan Is Working Well and Should Not Be Modified.

Plaintiffs' request to modify the Discovery Plan is yet another attempt to look through the work papers of Oracle's auditors in the hopes of coming up with some new accounting claim. Although the Discovery Plan plainly defines the scope of discovery, Plaintiffs previously have sought documents from the auditors that are outside the scope of the Plan.[2] Finding that effort unsuccessful, Plaintiffs have now sought to modify the Discovery Plan. However, they have identified nothing to justify revisiting the Court's earlier ruling.

Plaintiffs' arguments regarding why the Discovery Plan should be modified lack any merit. *First,* Plaintiffs claim that the Plan should be modified because the work papers contain handwritten notes. Yet, *all* work papers contain handwritten notes. *Next,* Plaintiffs' suggestion that the Andersen documents cross-reference unproduced documents is wrong. The circled letters on AA 000019, AA 000023, AA 000035, AA 000040, AA 000045, and AA 000051 to which Plaintiffs refer do not "indicat[e] a cross reference to another item." Ex. F, Excerpts from Andersen Production. Instead, they indicate that a variance exceeds the dollar threshold and thus requires explanation; the papers then include the explanation directly to the right of the circled letter. With respect to Plaintiffs' remaining arguments (outlined in Ex. 3 to their letter), Plaintiffs have not indicated one document or reference suggesting that any of the account balance testing or other "missing" information has any bearing on the 46,000 debit memos or the 25005 Account. Indeed, if Plaintiffs really have questions about handwritten notes, cross-references or allegedly "missing" documents, they could take short depositions of the auditors and clear these matters up. Modifying a Discovery Plan that was thoroughly litigated and that has been working very well is not the answer.

Very truly yours,

Vincent P Schmeltz III /RC

Vincent Paul Schmeltz III

---

[1] *See* Ex. C, Excerpt from NDCA-ORCL 282677 through NDCA-ORCL 285633, which shows the debit memos—including pertinent information such as the original receipt history, the customer implicated by the debit memo and the subsequent accounting treatment (*i.e.*, the first entry for each transaction shows an identifier of "1," while each subsequent entry shows an identifier of "2"). Printed in 11 x 17 format, this document is over 500 pages in length.
[2] Ex. D, July 12, 2005 V. Schmeltz Ltr. to S. Williams (concerning Andersen) and Ex. E, August 9, 2005 V. Schmeltz Ltr. to S. Williams (concerning E&Y).