Exhibit A

No. 03-932

# In the Supreme Court of the United States

DURA PHARMACEUTICALS, INC., ET AL., PETITIONERS

*v.*

MICHAEL BROUDO, ET AL.

*ON WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE NINTH CIRCUIT*

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PETITIONERS

GIOVANNI P. PREZIOSO
  *General Counsel*
JACOB H. STILLMAN
  *Solicitor*
ERIC SUMMERGRAD
  *Deputy Solicitor*
ALLAN A. CAPUTE
  *Special Counsel to the Solicitor*
  Securities and Exchange
    Commission
  Washington, D.C. 20549

PAUL D. CLEMENT
  *Acting Solicitor General*
  *Counsel of Record*
THOMAS G. HUNGAR
  *Deputy Solicitor General*
DAN HIMMELFARB
  *Assistant to the Solicitor*
    *General*
  Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 110, at 767 (5th ed. 1984) (*Prosser and Keeton on Torts*) ("[I]f false statements are made in connection with the sale of corporate stock, losses due to a subsequent decline in the market, or insolvency of the corporation brought about by business conditions or other factors [that] in no way relate to the representation[,] will not afford any basis for recovery."). As the Restatement explains, "[a]lthough the misrepresentation [in such a case] has in fact caused the loss," in the sense that "it has induced the purchase without which the loss would not have occurred," the misrepresentation "is not a legal cause of the loss for which the maker is responsible." Restatement of Torts § 548A cmt. b.[2]

b. The typical case in which the truth is revealed and the inflation attributable to a misrepresentation is removed from the price of stock is one in which the company makes a corrective disclosure—through a press release, for example, or a public filing—that is followed by a drop in the price. *Semerenko* is such a case. But the fraud can be revealed by means other than a corrective disclosure, and a drop in the stock price may not be a necessary condition for establishing loss causation in every fraud on-the-market case. To the extent that courts or litigants have suggested otherwise, they are mistaken.

First, inflation attributable to a misrepresentation might be reduced or eliminated even if there were a net *increase* in price. That could happen if the company

---

[2] In cases decided both before and after the enactment of the PSLRA, the Second Circuit has relied on this section of the Restatement in describing the loss-causation element of a Rule 10b-5 cause of action. See *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 219-220 (2000); *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (1992); *Marbury Mgmt.*, 629 F.2d at 708.

corrected the false information and at the same time issued unrelated positive information. Thus, while it is ordinarily a decline in the price of stock that harms investors, they can also suffer injury "[i]f a stock does not appreciate as it would have absent the fraudulent conduct," *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 831-832 (8th Cir. 2003), so that their profit is smaller than it would otherwise have been. As Judge Easterbrook has observed, "a firm that lies about some assets cannot defeat liability by showing that other parts of its business did better than expected, counterbalancing the loss." *Goldberg v. Household Bank*, 890 F.2d 965, 966 (7th Cir. 1989).

    Second, the inflation in the price of a security attributable to a misrepresentation might be reduced or eliminated even if the company does not make a public statement that discloses the true state of affairs. The truth can be revealed by events rather than words. If, for example, the misrepresentation is that the financial condition of the company is such that it would be immune from a particular downturn in the economy, and if there is then such a downturn and the company is affected, those events will reveal to the public that the representation was untrue. See Restatement of Torts § 548A cmt. b. A number of court of appeals decisions recognize that loss causation can be established in circumstances of this type (although they are not fraud-on-the-market cases). See, *e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003) (defendants "concealed [facts that] reflected [an] executive's inability to manage debt and maintain adequate liquidity," and plaintiffs' investment "became worthless because of the company's liquidity crisis," which plaintiffs attributed to "the executive's inability to manage the company's finances"); *Bastian*,

20

corrected the false information and at the same time issued unrelated positive information. Thus, while it is ordinarily a decline in the price of stock that harms investors, they can also suffer injury "[i]f a stock does not appreciate as it would have absent the fraudulent conduct," *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 831-832 (8th Cir. 2003), so that their profit is smaller than it would otherwise have been. As Judge Easterbrook has observed, "a firm that lies about some assets cannot defeat liability by showing that other parts of its business did better than expected, counterbalancing the loss." *Goldberg v. Household Bank*, 890 F.2d 965, 966 (7th Cir. 1989).

Second, the inflation in the price of a security attributable to a misrepresentation might be reduced or eliminated even if the company does not make a public statement that discloses the true state of affairs. The truth can be revealed by events rather than words. If, for example, the misrepresentation is that the financial condition of the company is such that it would be immune from a particular downturn in the economy, and if there is then such a downturn and the company is affected, those events will reveal to the public that the representation was untrue. See Restatement of Torts § 548A cmt. b. A number of court of appeals decisions recognize that loss causation can be established in circumstances of this type (although they are not fraud-on-the-market cases). See, *e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003) (defendants "concealed [facts that] reflected [an] executive's inability to manage debt and maintain adequate liquidity," and plaintiffs' investment "became worthless because of the company's liquidity crisis," which plaintiffs attributed to "the executive's inability to manage the company's finances"); *Bastian*,