1  LERACH COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   MARK SOLOMON (151949)
3  DOUGLAS R. BRITTON (188769)
   401 B Street, Suite 1600
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
     – and –
6  SHAWN A. WILLIAMS (213113)
   WILLOW E. RADCLIFFE (200087)
7  ELI R. GREENSTEIN (217945)
   JENNIE LEE ANDERSON (203586)
8  MONIQUE C. WINKLER (213031)
   100 Pine Street, Suite 2600
9  San Francisco, CA 94111
   Telephone: 415/288-4545
10 415/288-4534 (fax)

11 Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | CLASS ACTION |
| This Document Relates To: | DECLARATION OF MICHAEL A. MAREK |
| ALL ACTIONS. | DATE: November 1, 2005<br>TIME: 9:30 a.m.<br>COURTROOM: The Honorable Martin J. Jenkins |

## I. Background and Qualifications

1. I am a founding member of Financial Markets Analysis, LLC ("FMA"). FMA is a securities analysis firm with offices in Princeton, New Jersey and San Diego, California. A copy of my curriculum vitae is attached as Exhibit A.

2. FMA provides financial analysis and related consulting to its clients. FMA personnel have frequently been called upon to prepare reports and to testify as securities valuation experts in class actions under Federal and State securities laws. I have personally testified as an expert regarding matters including: (1) market efficiency; (2) the materiality of information; (3) loss and damage causation; (4) the valuation of securities, including equity, fixed income and derivative (such as options) securities, including valuation based upon the hypothetical absence of alleged misstatements and the disclosure of alleged omissions and misrepresentations; and (5) damages calculations.

## II. Description of Assignment and Summary of Opinions

3. I have been retained by counsel for Plaintiffs in this matter to respond to certain issues raised in Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Defs' Opposition") and the Declaration of Stefan Boedeker In Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (the "Boedeker Declaration"). My Declaration will specifically address Defendants' contention that certain proposed Class representatives "…engaged in trading that did not rely on the integrity of the market price"[1] because they traded "short call options."

4. Based on the analyses described below, it is my opinion that the proposed Class representatives who traded short call options did rely on the integrity of Oracle Corporation's ("Oracle's") common stock price.

---

[1] Defs' Opposition, p. 19, l. 6-7.

DECLARATION OF MICHAEL A. MAREK - C-01-0988-MJJ — - 2 -

### III. Call Option Sales

5. Defendants note that proposed Class representatives Ryan Kuehmichel ("Kuehmichel") and Drifton Finance Corporation ("Drifton") traded "short call options". Options are securities whose prices are determined by, or are "derived" from, the prices of other securities. According to one leading text on investments: "...options have become essential tools a portfolio manager must understand."[2] A call option is a derivative security, which gives its owner the right, but not the obligation, to buy an underlying security (Oracle stock, in this case) at a specified exercise or strike price on or before a specified exercise date. As call option sellers, in return for the proceeds of their call option sales, Kuehmichel and Drifton assumed the risk that the buyers of those call options would "call" Oracle common stock away from them, i.e. obligating Kuehmichel and Drifton to "sell" shares of Oracle common stock at prices below its then-prevailing market price.

6. The price of a call option is directly dependent upon the price of the underlying security.[3] As a result of this universally accepted relationship, the prices at which Kuehmichel and Drifton (as well as proposed Class Representative Robert Sawyer ("Sawyer")) sold Oracle common stock call options during the Class Period were directly established by the price of the underlying security - Oracle common stock. Defendants have offered no expert opinion contrary to the proposition that the market for Oracle common stock during the Class Period was efficient and that its price reflected all publicly available information. Moreover, Defendants have offered no suggestion that the market for Oracle common stock options in and of itself was not efficient.[4] Therefore, the prices of the call options traded by Kuehmichel, Drifton and Sawyer were indisputably reflective of the efficiency, or "integrity", of Oracle's common stock price.

---

[2] Zvi Bodie, Alex Kane and Alan J. Marcus, *Investments*, Sixth Edition, 2005, McGraw-Hill/Irwin, p. 698.

[3] Other factors affecting the price of a call option include: the exercise price (negative relationship), the prevailing interest rate (positive relationship), time until expiration (positive relationship) and the expected volatility of the underlying security price (positive relationship). The underlying security price and these four other factors comprise the inputs for the Black-Scholes formula, a standard model for valuing options.

[4] Empirical evidence indicates that "the CBOE had certainly become... a mature, efficient market ... by the mid-1970s." Donald MacKenzie and Yuval Millo, *Constructing a Market, Performing Theory: The Historical Sociology of a Financial Derivatives Exchange*, American Journal of Sociology, Volume 109 Number 1 (July 2003): 107–145.

DECLARATION OF MICHAEL A. MAREK - C-01-0988-MJJ - 3 -

7. Notably, the call options sales by Kuehmichel were known as "covered calls". This means that when he sold call options, Kuehmichel also owned the shares of Oracle common stock which the call option owners could require him to deliver (sell) upon exercise.[5] The covered call is perhaps the most basic and widely used common stock/option combination and is often used by investors who are neutral to moderately bullish on an underlying security. The investment payoff implications of a covered call strategy based on this neutral to moderately bullish stance were consistent with the notion of reliance upon the price integrity of Oracle common stock and were characteristic of typical Oracle common stock investors during the Class Period.

8. According to the Chicago Board Options Exchange website: "The strategy of writing covered calls is actually more conservative than just buying stock, due to the fact that you have taken in premium and lowered your breakeven price on the stock position. The covered write allows you to be paid for assuming the obligation of selling a particular stock at a specified price."[6] As such, Kuehmichel's call option sales simply enabled him to "hedge" the short-term price volatility associated with ownership of Oracle common stock while enabling him to maintain his long-term underlying Oracle common stock position in a flat to moderately rising market. In summary, contrary to Defendants' contention, Kuehmichel's hedging activity is actually supportive of the principle that he traded in reliance on the integrity of Oracle's common stock price.

9. Because the prices at which Drifton purchased and sold call options and put options[7] during the Class Period were also directly derived from the prices of Oracle common stock (which

---

[5] Kuehmichel's first call option sale of 20 options, representing 2,000 shares of Oracle common stock, occurred on January 23, 2001, at which point he owned 2,000 shares of Oracle common stock. Kuehmichel repurchased these 20 options on February 2, 2001. His next call option sale of 40 options, representing 4,000 shares of Oracle common stock, occurred on February 6, 2001, at which point he owned 4,000 shares of Oracle common stock. Those 40 options expired worthless and unexercised on February 17, 2001. Kuehmichel's last call option sale of 50 options, representing 5,000 shares of Oracle common stock, occurred on February 20, 2001, at which point he owned 5,000 shares of Oracle common stock. Those 50 options were repurchased on March 2, 2001.

[6] http://www.cboe.com/Strategies/CoveredCallOptions.aspx.

[7] A put option gives its holder the right, but not the obligation, to <u>sell</u> an underlying security (Oracle stock, in this case) at a specified exercise or strike price on or before a specified exercise date.

were determined in an efficient market), it is clear that Drifton's options trades were also made in reliance on the integrity of those prices.

10. As noted in the Boedeker Declaration, Drifton's Class Period Oracle investment strategy appears to have been a "short strangle". To implement a short strangle, an investor sells a call and put option with the same expiration date and different strike prices. As stated by a noted authority on options valuation and strategies, a short strangle "…can be appropriate for a trader who feels that large stock price moves are unlikely."[8] As with Kuehmichel's covered call strategy, Drifton's Class Period short strangle trading was therefore consistent with the notion of reliance upon the price integrity of Oracle common stock and was characteristic of typical Oracle common stock investors during the Class Period.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12th day of August, 2005, at Princeton, New Jersey.

_____
MICHAEL A. MAREK

---

[8] John C. Hull, Options, Futures, & Other Derivatives, Fourth Edition, 2000, Prentice-Hall, Inc., p. 197.

DECLARATION OF MICHAEL A. MAREK - C-01-0988-MJJ                                                                    - 5 -

# Exhibit A

**MICHAEL A. MAREK, CFA**
600 Alexander Road, Suite 2-B
Princeton, NJ 08540
Phone: (609) 452-9500     Fax: (609) 452-9881
e-mail: mmarek@fmaonline.biz

**Professional Experience**

| | | |
|---|---|---|
| 05/01 - Present | **Financial Markets Analysis, LLC** | Princeton, NJ |
| 12/97 - 04/01 | **Triumph Partners, LLC** | Princeton, NJ |

Founding Member
Provide financial analysis, valuation services and expert litigation support and testimony. Areas of concentration include valuation of securities and businesses, securities law and economic issues. Testimonial experience in securities class action litigation. Clients include corporations, government agencies (SEC), lawfirms, institutional and individual investors.

10/86 - 12/97     **Princeton Venture Research, Inc.**                    Princeton, NJ

Vice President
Performed securities valuation and financial analysis in connection with investment banking, venture capital and securities law expert consulting operations. Prepared company and industry research reports, valuations and fairness opinions. Responsible for project management and supervision of financial analysts and research personnel.

05/85 - 06/86     **Sage Data, Inc.**                                      Princeton, NJ

Research Analyst
Developed and maintained econometric models and business forecasting systems for Fortune 500 clients. Created, produced and instructed customized PC hardware and software application seminars.

**Education**

1984     **Wharton School of Finance, University of Pennsylvania**

B.S. Economics
Double Major: Finance / Decision Sciences


**Professional Designations and Affiliations**

Chartered Financial Analyst (CFA)
Member, New York Society of Security Analysts (NYSSA)
Member, CFA Institute
Member, American Economic Association (AEA)

## DECLARATION OF SERVICE BY U.S. MAIL & FACSIMILE
## PURSUANT TO NORTHERN DISTRICT LOCAL RULE 23-2(c)(2)

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2. That on August 12, 2005, declarant served by facsimile and U.S. Mail the DECLARATION OF MICHAEL A. MAREK to the parties listed on the attached Service List and this document was forwarded to the following designated Internet site at:

http://securities.lerachlaw.com/

3. That there is a regular communication by facsimile between the place of origin and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of August, 2005, at San Francisco, California.

/s/ Ruth A. Cameron
RUTH A. CAMERON

ORACLE III (LEAD)
Service List - 8/3/2005   (201-064-1)
Page 1 of 1

**Counsel For Defendant(s)**

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
  650/331-2000
  650/331-2060 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606
  312/782-0600
  312/701-7711 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
  650/506-5200
  650/506-7114 (Fax)

**Counsel For Plaintiff(s)**

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
  415/288-4545
  415/288-4534 (Fax)