| | |
|---|---|
| 1 | LERACH COUGHLIN STOIA GELLER<br>  RUDMAN & ROBBINS LLP |
| 2 | WILLIAM S. LERACH (68581)<br>MARK SOLOMON (151949) |
| 3 | DOUGLAS R. BRITTON (188769)<br>401 B Street, Suite 1600 |
| 4 | San Diego, CA 92101<br>Telephone: 619/231-1058 |
| 5 | 619/231-7423 (fax)<br>  – and – |
| 6 | SHAWN A. WILLIAMS (213113)<br>WILLOW E. RADCLIFFE (200087) |
| 7 | ELI R. GREENSTEIN (217945)<br>JENNIE LEE ANDERSON (203586) |
| 8 | MONIQUE C. WINKLER (213031)<br>100 Pine Street, Suite 2600 |
| 9 | San Francisco, CA 94111<br>Telephone: 415/288-4545 |
| 10 | 415/288-4534 (fax) |
| 11 | Lead Counsel for Plaintiffs |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | DECLARATION OF BJORN I. STEINHOLT, CFA IN SUPPORT OF PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION |
| | DATE: November 1, 2005<br>TIME: 9:30 a.m.<br>COURTROOM: The Honorable<br>                       Martin J. Jenkins |

I, BJORN I. STEINHOLT, hereby declare and state as follows:

## I. Introduction and Qualifications

1. I am a Principal at Financial Markets Analysis, LLC ("FMA"), an economic consulting and valuation firm based in San Diego, California and Princeton, New Jersey. FMA provides financial analyses and related economic consulting services to various clients and has frequently been asked to prepare reports and expert testimony regarding the various economic issues that typically arise in securities class actions, including the calculation of damages. I submit this declaration in support of plaintiffs' motion for class certification.

2. I received a Master of International Business degree from the University of San Diego and a Bachelor of Science, Computer Science Engineering degree from California State University, Long Beach. Furthermore, I have earned the professional designation, "Chartered Financial Analyst," awarded by the Association for Investment Management and Research. A summary of my background and qualifications is attached as Exhibit A to this declaration.

## II. Overview of Assignment

3. I was asked by plaintiffs' counsel to explain the general methodology used to calculate damages in §10(b) fraud-on-the-market securities class action cases, and to opine on whether such a methodology could be employed to calculate damages for investors who purchased Oracle Corporation ("Oracle" or the "Company") common stock from December 14, 2000 through March 1, 2001 (the "Class Period"). It should be noted that a comprehensive damage analysis, in my opinion, is premature at this time as I understand full discovery in this matter has not yet been completed so that a complete set of assumptions regarding the full extent of the alleged fraud is not yet available.

## III. Section 10(b) Damage Methodology

4. I have been asked by plaintiffs' counsel to briefly explain the general damage methodology employed by damage experts in fraud-on-the-market cases such as this one. For a more detailed discussion, please see Nicholas I. Crew, Patrick G. Goshtigian, Marnie A. Moore and Atulya Sarin, "Securities Act Violations: Estimation of Damages: Chapter 17," *Litigation Services Handbook: The Role of the Financial Expert*, Third Edition, 2001, attached as Exhibit B hereto, or

Bradford Cornell and R. Gregory Morgan, "Using Finance Theory to Measure Damages in Fraud on the Market Cases," *UCLA Law Review*, 883-923 (June 1990), attached as Exhibit C hereto.

5. Fraud-on-the-market cases generally allege that one or more defendants engaged in a scheme to defraud investors by making certain false and/or misleading public statements, or omitting to publicly disclose certain material facts, or engaging in other fraudulent deceptive conduct concerning a specific publicly traded company. As a result, the public mix of available information regarding the specific company was altered, inflating investors' expectations regarding the specific company's future prospects, thereby also inflating its stock price. Investors who purchased the specific company's shares during a period when the price of these shares was artificially inflated overpaid for their shares giving rise to potential damages. The inflation in the shares is generally eliminated as the company or other market events reveal the true business and financial condition of the specific company previously concealed by the alleged fraud.

6. The methodology used to calculate damages in fraud-on-the-market cases is well established. The primary objective of the damage analysis is to determine the impact of the alleged misrepresentations and/or omissions on the stock price of the publicly traded company being analyzed. The first step of the damage analysis generally involves a so-called event study. An event study is a statistical analysis used to distinguish price movements resulting from market and industry factors from price movements resulting from company specific factors. Consequently, the event analysis eliminates losses attributable to market and industry factors from the damage calculation. The second step of the damage analysis is to analyze price movements attributable to company specific events in order to determine if these events are fraud related or non-fraud related. Using the above methodology, economic losses attributable to the alleged fraud (or damages) can be separated from economic losses attributable to non-fraud related factors.

**IV. Oracle Damage Methodology**

7. I have also been asked by plaintiffs' counsel to opine on whether the above general methodology can be used to calculate damages in this case. In my opinion, the above well-established methodology to calculate fraud on the market damages can be used in this case to arrive at a reasonable damage estimate.

8.　　In this case, plaintiffs allege, among other things, that Oracle reported false financial results for 2Q01 and misled investors as to the difficulties integrating its new Suite 11i software applications, as well as misrepresenting the impact of the US economy on its business, thereby inflating investors' expectations regarding the Company's future prospects (specifically the 3Q01 results), and, in turn, inflating Oracle's stock price. On March 1, 2001, the Company disclosed that it would not be able to meet investors' expectations for 3Q01, and the stock price promptly declined more than 20% the following day. This price decline was highly statistically significant at the 99% level and therefore not explained by market or industry factors. Regardless of whether the Company admitted in the March 1, 2001 press release to issuing false 2Q01 financials, or to the difficulties integrating its Suite 11i software applications, the disclosure did partially reveal the truth about Oracle's business and financial condition that was previously concealed by the alleged fraud. This is a typical scenario in fraud-on-the-market cases. I know of no reason why the damage methodology described above could not be used to provide a reasonable estimate of damages in this case.

9.　　I have reviewed the Declaration of Stefan Boedeker In Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (the "Boedeker Declaration") in this matter in which he concludes the following:

- "Oracle Stock Price Returns Mirrored Those Of The NASDAQ-100" (Boedeker Declaration, p. 2);

- "Given that Oracles's stock price largely moved in tandem with the broader market during the proposed class period, one cannot assume that Plaintiffs will be able to identify, segregate, and measure price effects of the alleged fraud on a class-wide basis." (Boedeker Declaration, p. 3).

10.　　Even in the absence of full discovery and a comprehensive event study, there are serious errors in Mr. Boedeker's conclusions:

(a)　　The common statistical measure of how much of a stock price's movement (in this case Oracle's stock price movement) is explained by the independent variable (in this case the NASDAQ-100), is the so-called R-squared. Using a control period of the year prior to the Class Period, as is customary, the R-squared is 52%. This means that 48% of Oracle's stock price movements are *not* explained by the NASDAQ-100. Consequently, Mr. Boedeker's statement that Oracle's stock returns mirrored those of the NASDAQ-100 is erroneous.

DECLARATION OF BJORN I. STEINHOLT, CFA - C-01-0988-MJJ　　- 3 -

      (b)    Furthermore, there are numerous statistically significant company-specific price movements in Oracle's common stock during the relevant time period, *i.e.*, price movements that are *not* explained by market or industry factors. The most obvious one is the more than 20% price decline on March 2, 2001 that ends the Class Period. On March 1, 2001, after the market had closed, Oracle announced that it would miss its 3Q01 profit forecast, the first such miss in three years. As discussed above, price declines resulting from missing fraudulently inflated expectations set by defendants do give rise to damages. In this case, Mr. Boedeker simply ignores the price decline that ends the Class Period as if it did not occur and erroneously concludes that class-wide damages may not be able to be identified, segregated or measured based on his review of the price movements excluding March 2, 2001. The price decline ending a class period is often the most important price decline (and sometimes the only price decline) to examine. It is certainly not a price decline to be ignored. In my opinion, Mr. Boedeker does not provide a single reason why the above well-established damage methodology could not be employed in this case to arrive at a reasonable damage estimate.

11.    Based on the above, it is my opinion that the above well-established methodology to calculate fraud-on-the-market damages can be used in this case to arrive at a reasonable damage estimate.

## V. Conclusion

12.    As discussed above, the general methodology for calculating damages in fraud-on-the-market cases is well established. Furthermore, in my opinion, Mr. Boedeker does not provide a single reason why the above well-established damage methodology could not be employed in this case to arrive at a reasonable damage estimate. In fact, it is my opinion that the above well-established methodology to calculate fraud-on-the-market damages can be used in this case to arrive at a reasonable damage estimate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 12th day of August, 2005, at San Diego, California.

                                                                          BJORN I. STEINHOLT, CFA

## DECLARATION OF SERVICE BY U.S. MAIL & FACSIMILE
### PURSUANT TO NORTHERN DISTRICT LOCAL RULE 23-2(c)(2)

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2. That on August 12, 2005, declarant served by facsimile and U.S. Mail the DECLARATION OF BJORN I. STEINHOLT, CFA IN SUPPORT OF PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION to the parties listed on the attached Service List and this document was forwarded to the following designated Internet site at:

http://securities.lerachlaw.com/

3. That there is a regular communication by facsimile between the place of origin and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of August, 2005, at San Francisco, California.

/s/ Ruth A. Cameron
RUTH A. CAMERON

ORACLE III (LEAD)

Service List - 8/3/2005   (201-064-1)

Page 1 of 1

**Counsel For Defendant(s)**

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
  650/331-2000
  650/331-2060 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606
  312/782-0600
  312/701-7711 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
  650/506-5200
  650/506-7114 (Fax)

**Counsel For Plaintiff(s)**

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
  415/288-4545
  415/288-4534 (Fax)