**EXHIBIT A**

1  BOUTIN DENTINO GIBSON DI GIUSTO HODELL INC.
   MICHAEL E. CHASE (214506)
2  555 Capitol Mall, Suite 1500
   Sacramento, California 95814
3  Telephone: (916) 321-4444
4  Fax: (916) 441-7597

5      -and-

6  ARNALL GOLDEN GREGORY LLP
   HENRY R. CHALMERS (Georgia Bar No. 118715)
7  (Admitted *pro hac vice*)
   171 17th Street, N.W.
8  Suite 2100
9  Atlanta, Georgia 30363-1031
   Telephone: (404) 873-8646
10 Fax: (404) 873-8647

11
   Counsel for Non-Party PRG-Schultz,
12 f/k/a Profit Recovery Group

13
                    UNITED STATES DISTRICT COURT
14
                    EASTERN DISTRICT OF CALIFORNIA
15

16
17 In re ORACLE CORPORATION           )   No. 2:05-MC-0427 GEB PAN
   SECURITIES LITIGATION              )   (Master File No. C-01-0988-MJJ pending
18                                    )   in N.D. Cal.)
                                      )
19                                    )   **CLASS ACTION**
                                      )
20                                    )   **DECLARATION OF MARTEZ D.**
                                      )   **ANDREWS IN OPPOSITION TO**
21                                    )   **PLAINTIFFS' MOTION TO COMPEL**
                                      )   **PROFIT RECOVERY GROUP-**
22                                    )   **SCHULTZ, USA, INC.'S PRODUCTION**
                                      )   **OF DOCUMENTS IN COMPLIANCE**
23 _____     )   **WITH SUBPOENA**
                                      )
24 This Document Relates To:          )
                                      )   DATE:    August 10, 2005
25     ALL ACTIONS                    )   TIME:    9:00 a.m.
                                      )   COURTROOM:  25
26 _____     )

27
                                  -1-
28

DECLARATION OF MARTEZ D. ANDREWS IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PROFIT RECOVERY
         GROUP-SCHULTZ, USA, INC.'S PRODUCTION OF DOCUMENTS IN COMPLIANCE WITH SUBPOENA
1906854v1

I, Martez D. Andrews, declare as follows:

1. My name is Martez D. Andrews. I am competent to testify regarding the matters set forth herein, and I have personal knowledge of the facts stated herein.

2. I am the Messaging Manager for PRG-Schultz, USA, Inc., f/k/a Profit Recovery Group, ("PRG") and have served in this capacity since June, 2000.

3. My job duties as PRG's Messaging Manager include managing the messaging environment for PRG, which includes e-mail, instant messaging, and wireless devices.

4. It is my understanding that some PRG auditors asserted claims against Oracle for overpayments or under-deductions on behalf of PRG clients. It is possible that some of these auditors sent or received e-mails that refer to Oracle. It also is my understanding that some of these auditors may have retained at their audit sites or elsewhere documents regarding their audits. It further is my understanding that, if such documents ever existed, PRG does not know if they still exist, or where they may be located, though it is possible that some of the auditors might have this knowledge. It is my understanding, however, that PRG does not have a list of all of the auditors who may have been involved in asserting claims against Oracle on behalf of PRG clients. Any attempt to locate these auditors' documents relating to such claims would require the following, six-step process:

    (a) Constructing a list of the relevant current and former PRG auditors;

    (b) Contacting each such auditor to determine whether the auditor remembers what he or she did with the relevant documents created or gathered many years ago;

    (c) If the auditor does remember what he or she did with the relevant documents, determining whether the auditor discarded the documents or retained them somewhere else;

    (d) If the auditor retained them, determining whether the auditor remembers where they were retained or sent;

    (e)    If the auditor can remember whether and where the documents may have been retained or sent, determining whether the documents are in PRG's possession, custody or control; and

    (f)    If the documents are in PRG's possession, custody or control, searching for those documents.

5.    Before PRG even could begin performing steps (b) through (f), above, it would have to construct a list of auditors who may have asserted claims against Oracle on behalf of PRG's clients (*i.e.*, step (a), above). The only available method of which I am aware for possibly constructing such a list would be to:

    (i)    Retrieve all e-mail communications within PRG during the Relevant Time Period;

    (ii)    Segregate out those e-mails that refer to "Oracle"; and

    (iii)    Have PRG employees review each of the e-mails to determine whether it actually relates to a claim asserted

Only then could PRG even begin to undertake steps (b) through (f), above.

6.    To perform the actions involved in step (a) alone would require an enormous amount of PRG's resources and employee time, would impose a tremendous expense on PRG, and would significantly disrupt PRG's ability to conduct its business, all before PRG even could begin attempting to perform steps (b) through (f).

7.    First, PRG would have to locate the archival, backup tapes on which all e-mail traffic for much of the relevant time period has been stored. Because these e-mails are all so old, they no longer reside on PRG's computer system and, therefore, must be restored. This search would be made more difficult by the fact that some of the e-mails will reside on archival tapes from a company that PRG acquired in or around 1999, but whose operations PRG did not fully assume until several years later. The location, condition, and accessibility of those archival tapes is unknown.

8. Second, PRG would then have to restore onto its computer system the software necessary to conduct searches of the archive tapes it was able to locate, because PRG no longer uses the software that was used when the e-mails were created prior to 2002.

9. Third, PRG would have to load the archival tapes onto PRG's computer system so that they could be subjected to searches. This may involve loading as many as 30-40 archival tapes, all of which would take a tremendous amount of time and employee involvement.

10. Fourth, PRG actually would have to build a new server and install it from scratch in order to create a platform into which to restore the data that resides on the archival tapes. PRG would have to undertake this expensive and time-consuming task because it does not currently have sufficient resources to load that much data onto its existing computer system. Building the server and loading the tapes easily could take more than two (2) solid weeks to perform and could require PRG to divert as many as three (3) employees full time from their other job responsibilities in order to perform and monitor this task.

11. Fifth, only then would PRG be in a position to begin the filtering process by entering the relevant search terms and performing the resulting searches. This would take at least one full week of 24-hour days, during which PRG would have to have an employee monitor the search performance to ensure that it proceeds properly.

12. Performing these searches would be extraordinarily disruptive to PRG's business. PRG relies heavily on the searching capabilities of its computer system to perform the company's business. For example, PRG is constantly performing searches of current client data for information to be used by various PRG employees in the performance of their job duties. To the extent those searching capabilities are used instead to perform searches of archival e-mail for Plaintiffs' benefit, those searching capabilities will not be available for PRG's business purposes. The extent of business and financial damage this might impose on PRG is difficult to determine at this time, but the threat is real.

13. Sixth, assuming all of the preceding actions could be performed, the end result would be files filled with e-mail traffic referring in some way to "Oracle." It is impossible to

-4-

determine at this time how large those files might be.

14. Seventh, what is known, however, is that PRG employees would then have to review each individual e-mail and each individual attachment to each individual e-mail to determine whether each actually relates to a claim asserted against Oracle and, if so, whether it also identifies the auditor who made the claim.

15. It is highly likely that many of the e-mails and attachments in the files would be "false positives," or e-mails that contain the word "Oracle" in them, but that have absolutely nothing to do with claims asserted against Oracle for overpayments by PRG clients. For example, any search for e-mail referring to "Oracle" would also produce e-mail regarding PRG's own internal use of Oracle software. Such searches also would produce "spam" e-mail advertisements for Oracle-related products.

16. Those e-mails and attachments that ultimately are found to be relevant and attributable to an identifiable auditor could be placed in a new file, which PRG employees would then use to *begin* performing steps (b) through (f), above.

17. It is difficult at this time to determine precisely how much burden and expense PRG would incur in performing the actions necessary to step (a). It is my educated and reasoned estimation, however, that merely to perform the actions necessary for step (a), alone, would require six (6) to twelve (12) weeks and at least several hundred employee work hours. More importantly, performing these actions would cause an enormous disruption of PRG's business operations and would force PRG to expend significant amounts of money.

18. Ultimately, most, if not all, of the relevant information that might be gathered by this process also resides in the Management Reports and Narrative Audit Reports that PRG prepares for its clients, and copies of which PRG retains in storage. Thus, most, if not all, of the relevant information that could be gathered through the actions discussed above likely would be redundant of information that PRG could produce through much less burdensome means.

-5-

19. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 25 day of July, 2005, at Atlanta, Georgia.

*[signature]*

MARTEZ D. ANDREWS

-6-

DECLARATION OF MARTEZ D. ANDREWS IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, USA, INC.'S PRODUCTION OF DOCUMENTS IN COMPLIANCE WITH SUBPOENA

1906854v1