1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  WILLIAM S. LERACH (68581)
   MARK SOLOMON (151949)
3  DOUGLAS R. BRITTON (188769)
   401 B Street, Suite 1600
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
     – and –
6  SHAWN A. WILLIAMS (213113)
   WILLOW E. RADCLIFFE (200087)
7  ELI R. GREENSTEIN (217945)
   JENNIE LEE ANDERSON (203586)
8  MONIQUE C. WINKLER (213031)
   100 Pine Street, Suite 2600
9  San Francisco, CA 94111
   Telephone: 415/288-4545
10 415/288-4534 (fax)

11 Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | NOTICE OF MOTION AND MOTION TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PRODUCTION OF DOCUMENTS IN COMPLIANCE WITH SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| | DATE: August 19, 2005<br>TIME: 9:30 a.m.<br>CTRM: The Honorable Joseph C. Spero |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................1

II. PROCEDURAL HISTORY ..................................................................................................3

    A. Summary of Plaintiffs' Allegations Relating to PRG Documents. .........................4

    B. Summary Third Party Discovery............................................................................4

III. ARGUMENT.........................................................................................................................7

    A. Legal Standard on a Motion to Compel..................................................................7

    B. PRG Is Admittedly in Possession of Evidence Central to Plaintiffs' Claims and Has Failed to Meet Its Burden of Showing that Discovery Should Not Be Allowed. ..............................................................................................................7

        1. The Discovery Sought Is Relevant and Necessary to the Prosecution of Plaintiffs' Claims ................................................................7

        2. The Documents Sought Are in PRG's Possession and Control ..................9

        3. The Protective Order Shields the Confidentiality of Documents so Designated ...........................................................................................10

IV. CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

Page

**CASES**

*Adolph Coors Co. v. Wallace*,
570 F. Supp. 202 (N.D. Cal. 1983) ...............................................................................11

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) .........................................................................................8

*Centurion Indus., Inc. v. Warren Steurer & Assocs.*,
665 F.2d 323 (10th Cir. 1981) .......................................................................................8

*Comcast of LA, Inc. v. Top End Int'l Inc.*, No. CV 03-2213-JFW(RCX),
2003 U.S. Dist. LEXIS 18640 (C.D. Cal. July 8, 2003) ................................................8

*Hartley Pen Co. v. United States. Dist. Court*,
287 F.2d 324 (9th Cir. 1961) .........................................................................................8

*Hickman v. Taylor*,
329 U.S. 495 (1947) ......................................................................................................8

*In re Agent Orange Prod. Liab. Litig.*,
104 F.R.D. 559 ............................................................................................................11

*In re Remington Arms Co.*,
952 F.2d 1029 (8th Cir. 1991) .....................................................................................11

*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*,
135 F.R.D. 101 (D.N.J. 1990) .......................................................................................8

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ..................................................................................5, 9

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ......................................................................................................8

*Oregon Precision Indus. v. Int'l Omni-Pac Corp.*,
160 F.R.D. 592 (D. Or. 1995) .......................................................................................8

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*,
307 F.3d 1206 (9th Cir. 2002) ..................................................................................8, 11

*Soto v. City of Concord*,
162 F.R.D. 603 (N.D. Cal. 1995) ..................................................................................9

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
§26(b) ............................................................................................................................7
§26(b)(1) .......................................................................................................................8
§26(c) ..........................................................................................................................11
§26(c)(7) ......................................................................................................................11

**Page**

§45(c)(2) ....................................................................................................................................2
§45(d)......................................................................................................................................8

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 19, 2005, plaintiffs will and hereby do move this Court for an order compelling nonparty Profit Recovery Group – Schultz, Inc. ("PRG") to comply with plaintiffs' subpoena and produce documents responsive thereto. This motion to compel is brought pursuant to Fed. R. Civ. P. 45(c)(2)(B). This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Jennie Lee Anderson in Support of Motion to Compel Profit Recovery Group – Schultz, Inc.'s Production of Documents in Compliance with Subpoena ("Anderson Decl."), Declaration of Confidential Witness ("CW") No. 46, filed under seal pursuant to protective order ("CW46 Decl."), the pleadings and other documents contained in the underlying record, and upon any other evidence that is submitted before or during the hearing on this matter.

## I. INTRODUCTION

Applicants are plaintiffs in a federal securities class action pending in the Northern District of California alleging that defendants, Oracle Corporation ("Oracle") and three individual Oracle executives, made false and misleading statements regarding Oracle's financial results for its second quarter of fiscal year 2001 ("2Q01") and concerning operations, products and finances during the third quarter of 2001 ("3Q01").[1] The class includes purchasers of Oracle's publicly traded securities between December 14, 2000 and March 1, 2001. ¶83.[2] Plaintiffs bring this motion to compel because the documents requested are relevant and necessary to plaintiffs' claim that Oracle used customer overpayments to fund more than 46,000 "debit memo" transactions, which Oracle then improperly converted to revenue and used as the basis for its false earnings and revenue statements for 2Q01.

---

[1] Oracle's 2Q01 is September 1, 2000 to November 30, 2000. 3Q1 is December 1, 2000 to February 28, 2001.

[2] All ¶_ references are to Plaintiffs' Revised Second Amended Complaint for Violations of Federal Securities Laws ("Complaint") attached to the Anderson Decl. as Exhibit A.

NOT OF MOT & MOT TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PROD OF
DOCS IN COMPLIANCE WITH SUBPOENA; MEM P&A – C-01-0988-MJJ — - 1 -

On December 15, 2004, plaintiffs issued a subpoena for production of documents from the Eastern District of California because PRG's California agent for service of process resides in Sacramento, California. Plaintiffs have since requested that PRG submit to jurisdiction in the Northern District of California for purposes of this motion because that is where the underlying action is pending, but PRG has not agreed. Accordingly, plaintiffs are required to bring the matter before this Court.

PRG is a global recovery audit and cost containment company that investigates and pursues recovery of inadvertent overpayments on behalf of its clients, including Oracle customers who made inadvertent overpayments to Oracle relating to the 46,000 debit memos alleged in the Complaint. PRG describes itself as "the world leader in recovery auditing," which reviews "procurement databases and the related invoices, purchase orders, buyer files and shipping/receiving documents to identify lost profits due to overpayments." Anderson Decl., Ex. B. As such, PRG has provided audit and recovery services to many clients, including but not limited to large corporations specifically investigating overpayments or duplicate payments inadvertently made to outside vendors.

During the period relevant to plaintiffs' action, PRG uncovered during numerous audits multiple instances of customer overpayments to Oracle, which were not refunded and which plaintiffs allege were improperly recorded as revenue by Oracle. Several of these PRG investigations focused on payments and other transactions between PRG's clients and Oracle, and specifically audited inadvertent overpayments and sought to recover from Oracle money belonging to their clients.

PRG does not contest the relevancy of the requested materials. Nor does it contend that the documents do not exist or are not under its possession and control. Rather, PRG asserts that the documents are protected from discovery by confidentiality clauses contained in its client service contracts and that the search would be overly burdensome. These objections are without merit. The Revised Stipulated Protective Order Governing Confidentiality ("Protective Order") entered in this case thoroughly and thoughtfully addresses the treatment of all confidential documents produced in

1 this case. Anderson Decl., Ex. C. Additionally, plaintiffs' requests are narrowly tailored to
2 documents so central to the claims in this case, that the need for production simply outweighs any
3 interest PRG may have in nondisclosure.

4 **II.    PROCEDURAL HISTORY**

5       On December 9, 2002, class plaintiffs filed their Complaint against defendants. Plaintiffs
6 alleged among other things that in November 2000, Oracle improperly converted to revenue more
7 than $228 million worth of inadvertent customer overpayments and duplicate payments that it had
8 accumulated over a period spanning more than ten years. ¶36. Plaintiffs further allege that Oracle
9 accomplished this improper revenue recognition through a series of transactions, more than 46,000
10 in total, which created "debit memos," or fake invoices, and applied cash belonging to customers to
11 these debit memos to satisfy open invoices. ¶37. The result was the improper recognition of more
12 than $228 million worth of revenue in 2Q01.

13       The allegations in the Complaint are detailed and particularized, and supported by documents
14 evidencing the debit memos and the testimony of CW46. CW46 is a former financial analyst at
15 PRG, who in 2002 engaged in a detailed review and investigation of its clients' billing histories and
16 documented improper withholding of customer funds and conversion of those funds by Oracle to
17 revenue. ¶¶36-38; CW46 Decl.

18       On February 27, 2003, plaintiffs wrote PRG requesting that it preserve all documents in its
19 possession, custody or control relating to the allegations in the Complaint. Anderson Decl., Ex. D.
20 Plaintiffs also thereby notified PRG that they intended to subpoena documents relevant to the
21 allegations in the Complaint once the case proceeded to the discovery phase.

22       On March 24, 2003, United States District Court Judge Martin J. Jenkins dismissed
23 plaintiffs' Complaint with prejudice. On August 11, 2003, plaintiffs timely appealed the March 24,
24 2003 dismissal to the Ninth Circuit Court of Appeals.

25       The Ninth Circuit reversed the District Court's dismissal, on September 1, 2004, specifically
26 authorizing the case to go forward and identifying in particular the improper revenue recognition
27 allegations of the Complaint:

28
NOT OF MOT & MOT TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PROD OF
DOCS IN COMPLIANCE WITH SUBPOENA; MEM P&A – C-01-0988-MJJ    - 3 -

Finally, and very importantly, there is the improper revenue accounting records. Oracle maintained a debit account containing money that customers had inadvertently overpaid to Oracle. On November 17, 2000, Oracle created more than 46,000 invoices ("debit memos") in an effort to "clean up" the account. Plaintiffs allege that Oracle credited the amount of the debit memos as revenue, thereby artificially inflating the amount of revenue reported on December 14 at the end of the second quarter.

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004).

On remand, the District Court entered its Amended Pretrial Order on December 14, 2004, setting a February 2006 discovery cutoff date in this case. Anderson Decl., Ex. E. Accordingly, plaintiffs have demanded relevant and responsive documents in the possession of PRG, but PRG has refused to produce these documents.

**A.     Summary of Plaintiffs' Allegations Relating to PRG Documents.**

Among the false and misleading statements alleged in the Complaint and relevant for the purposes of this motion are allegations that Oracle's 2Q01 reported revenues and earnings were illegitimate and based on $228 million of inadvertent customer overpayments that Oracle improperly converted and recognized as 2Q01 revenue. ¶¶35-44.  Rather than informing its customers of overpayments or issuing refunds, plaintiffs contend that it was Oracle's practice to maintain a fund of customer overpayments as unapplied cash "ON A" or "On Account." ¶¶36, 41. The On Account invoices or debit memos identified in the Complaint were created on November 17, 2000, and each begins with the prefix "550" (between the ranges of 55000387 to 55046825), indicating more than 46,000 On Account debit memos funded by inadvertent customer overpayments that were created on or around that same date. ¶¶36-37. PRG financial analyst, CW46, uncovered 760 of these debit memos during review of approximately 17 different Oracle customers' billing histories, totaling $14.5 million in overpayments.  ¶37; *see also* CW46 Decl.

**B.     Summary Third Party Discovery**

On December 14, 2004, plaintiffs issued a subpoena for the production of documents on nonparty PRG seeking "All documents and communications concerning ***your efforts to audit, collect***

NOT OF MOT & MOT TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PROD OF
DOCS IN COMPLIANCE WITH SUBPOENA; MEM P&A – C-01-0988-MJJ           - 4 -

1 *or recover payments or monies paid to Oracle* or owed to you by Oracle." Anderson Decl., Ex. F at 7 (emphasis added).[3] PRG produced some documents on January 10, 2005, but did not produce any documents pertaining to customer overpayments to Oracle.

On April 14, 2005, plaintiffs contacted PRG and requested production of documents pertaining to the identification and recovery of customer overpayments to Oracle that related to the November 17, 2000 debit memos. *See* Anderson Decl. ¶7. PRG objected, arguing that the language of the subpoena did not reach documents relating to its customers, and stated that PRG would not produce documents unless plaintiffs served an amended subpoena. *Id*. To speed the discovery process, plaintiffs served an amended subpoena on PRG on April 22, 2005.[4]

PRG objected to the subpoena, but acknowledged that it was in possession and control of documents plaintiffs contended were relevant. Anderson Decl., Exs. I, J, K. Specifically, PRG contended that compliance would be overly burdensome and that the subpoena required disclosure of

---

[3] Following a temporary stay on third party discovery, on March 10, 2005, United States District Court Magistrate Judge Joseph C. Spero issued an Amended Order Setting A Discovery Plan, limiting the types of discovery plaintiffs could seek from customers to discovery relating to the following categories: 1) the United States economy, 2) Oracle software integration and interoperability problems; and 3) accounting. Anderson Decl., Ex. G at 7-8. The court limited the accounting category to discovery relating to *"relating to the 46,000 debit memo transactions created on or about November 17, 2000."*

[4] The April 22, 2005 amended subpoena requested the following:

**1.** All documents concerning any overpayment or duplicate payment to Oracle relating to Oracle's 46,000 debit memo transactions created on or about November 17, 2000, made by any person or entity to whom you provided services, including but not limited to recovery auditing services.

**2.** All documents relating to your actual or attempted recovery of monies paid to Oracle, including but not limited to refunds, credits or reimbursement, on behalf of any person or entity to whom you provided services, including but not limited to recovery auditing services, and relating to Oracle's 46,000 debit memo transactions created on or about November 17, 2000.

Anderson Decl., Ex. H.

NOT OF MOT & MOT TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PROD OF DOCS IN COMPLIANCE WITH SUBPOENA; MEM P&A – C-01-0988-MJJ - 5 -

information subject to confidentiality clauses in its client service contracts. Anderson Decl., Exs. J, K.

In response, plaintiffs proposed that PRG first produce what PRG described as "easily accessible" information from its computer database, and that plaintiffs would seek additional documents as necessary. Anderson Decl., Exs. J, K. Plaintiffs also explained that any confidentiality agreements PRG had entered into with its clients would be protected and kept confidential under the terms of the Protective Order. Anderson Decl., Ex. J. PRG rejected plaintiffs' proposal, however, and refused to produce any documents, including easily accessible data from its computer system. Anderson Decl., Ex. K.

Plaintiffs met and conferred with PRG again on May 25, 2005, when PRG stated its intention to stand by all of its objections and reiterated its refusal to produce any documents at that time. Anderson Decl., Ex. L.[5] On May 27, 2005, plaintiffs provided further clarification regarding the language of the subpoena to address PRG's objection that the subpoena was vague and ambiguous. Anderson Decl., Ex. M. While PRG did not indicate that plaintiffs' explanation was insufficient, no documents were produced. Similarly, to further reduce the burden on PRG, plaintiffs provided PRG with the names of PRG employees known to have information regarding efforts to identify and recover customer overpayments to Oracle. *Id*. PRG accepted these names, but as far as plaintiffs know, have taken no steps to identify or produce responsive documents from their files. Indeed, PRG confirmed on June 29, 2005, that it remains unwilling to produce any documents. Anderson Decl. ¶18.

---

[5] The only information PRG has provided is a cumulative dollar amount representing an unknown percentage of funds actually recovered from Oracle on behalf of an unidentified number of clients and gleaned from a concededly incomplete database, which PRG has since admitted produces wildly unpredictable and unreliable results. Anderson Decl., Ex. L.

## III. ARGUMENT

### A. Legal Standard on a Motion to Compel

Federal Rule of Civil Procedure 45(d) governs subpoenas served on nonparties and permits discovery of any and all information discoverable under Rule 26(b). *See Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981). Rule 26(b)(1) provides for discovery of any information that is "relevant to the claim or defense of any party," or "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The permissible scope of discovery therefore includes information that might reasonably assist a party in evaluating the case, preparing for trial or facilitating settlement. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Oregon Precision Indus. v. Int'l Omni-Pac Corp.*, 160 F.R.D. 592, 594 (D. Or. 1995) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Comcast of LA, Inc. v. Top End Int'l Inc.*, No. CV 03-2213-JFW(RCX), 2003 U.S. Dist. LEXIS 18640, at *6 (C.D. Cal. July 8, 2003) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (same). Regardless, the requested documents must be produced if relevancy and need outweigh the harm of disclosure. *Centurion*, 665 F.2d at 325 (citing *Hartley Pen Co. v. United States. Dist. Court*, 287 F.2d 324, 331 (9th Cir. 1961); *see also Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002). Applying these standards here, plaintiffs' motion should be granted.

### B. PRG Is Admittedly in Possession of Evidence Central to Plaintiffs' Claims and Has Failed to Meet Its Burden of Showing that Discovery Should Not Be Allowed.

#### 1. The Discovery Sought Is Relevant and Necessary to the Prosecution of Plaintiffs' Claims

Whether Oracle's 2Q01 reported revenues and earnings were false and misleading is a central issue in this case. Plaintiffs allege that the 2Q01 reported revenues and earnings were false because they were based on $228 million of inadvertent customer overpayments and duplicate payments

1  improperly converted and recognized as 2Q01 revenue. *See* ¶¶35, 36. Plaintiffs' allegations relating
2  to the November 17, 2000 debit memos are based in large part on information from CW46. CW46 is
3  a former financial analyst for PRG who was responsible for reviewing invoices, purchase orders and
4  shipping documents for PRG clients to uncover payment errors and recover inadvertent payments.
5  ¶36; CW46 Decl. ¶¶2-4. As a PRG financial analyst, CW46 reviewed the billing and payment
6  histories of at least 17 separate Oracle customers and corresponded directly with Oracle employees
7  concerning customer overpayment and debit memos. The billing histories reviewed by CW46
8  ranged from 1991-2001 and revealed 760 debit memos totaling $14.5 million in overpayments.
9  ¶¶36, 37. Around the same time that CW46 uncovered 760 debit memos, at least 20 other PRG
10 employees were also working to identify and recover overpayments made to Oracle by PRG clients.
11 Anderson Decl., Ex. N.

12 Thus, the documents sought are not just tangentially or nominally related to plaintiffs'
13 claims, but constitute crucial evidence essential to the prosecution of the case, as both the District
14 Court and the Ninth Circuit have already recognized. *Oracle Corp.*, 380 F.3d at 1233 ("[f]inally,
15 and very importantly, there are the improper revenue accounting records."); *see also* Anderson Decl.,
16 Ex. G at 7-8 (narrowing third party discovery from customers to discovery to three topics, one of
17 which is discovery "relating to the 46,000 debit memo transactions created on or about November
18 17, 2000").

19 Nor are the documents sought readily available by less burdensome means. *See Soto v. City*
20 *of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995). As a global recovery audit and cost containment
21 company, PRG offers its clients specialty auditing services that include reviewing sales databases,
22 related invoices, purchase orders and shipping documents to uncover billing or payment errors, and
23 pursuing recovery of inadvertent overpayments. Anderson Decl., Ex. B. As such, PRG has a unique
24 collection of documents relating to core claims in plaintiffs' Complaint. For example, PRG analyst
25 CW46 examined billing histories and accounts payable records, spoke to Oracle employees,
26 analyzed data and requested supplemental documentation for clients who were Oracle customers,
27 specifically to identify and reclaim overpayments. ¶¶36-38. Indeed, the existence and significance
28

1  of the debit memos alleged in the Complaint was discovered as the result of CW46's document
2  collection, analysis and factual investigation, all of which are in PRG's possession and control.

### 2. The Documents Sought Are in PRG's Possession and Control

Plaintiffs' subpoena is not based on a mere hunch that PRG may have responsive documents. PRG has itself acknowledged that it has documents plaintiffs seek. Anderson Decl., Ex. K, R. Moreover, plaintiffs notified PRG that it was in possession of responsive documents and requested that the documents be preserved accordingly more than two years ago. Anderson Decl., Ex. D.

PRG analyst CW46 has also verified that PRG possesses responsive documents. Indeed the 760 debit memos alleged in the Complaint were uncovered by CW46's review of PRG documents, including billing histories, some of which were attached to plaintiffs' Complaint in support thereof. Anderson Decl., Ex. O. An email exchange with Oracle Collection Analyst, Justin Backs, obtained through plaintiffs' independent investigation, further confirms that PRG is in possession and control of customer billing histories and also correspondence with Oracle and clients regarding the overpayments alleged in the Complaint. Anderson Decl., Ex. P. In addition to documents reviewed by CW46, plaintiffs are also aware of at least 20 other PRG employees who were working on identifying and recovering customer overpayments to Oracle and investigating the debit memos alleged in the Complaint around the same period of time. *See* Anderson Decl., Ex. N.

Finally, documents produced by other third parties in this case also verify that PRG conducted relevant recovery audits on behalf of clients who were also Oracle customers and generated responsive documents relating thereto. Anderson Decl., Ex. Q.

In sum, the documents sought are undisputedly in PRG's possession and control, relate to core issues in the case, and must be produced. PRG has not articulated what harm, if any, it would suffer from the disclosure of these documents, but even if it could, plaintiffs' need for these documents is so great that it outweighs any interest PRG's may have in nondisclosure. Moreover, the Protective Order in place already provides for the treatment of confidential documents.

NOT OF MOT & MOT TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PROD OF
DOCS IN COMPLIANCE WITH SUBPOENA; MEM P&A – C-01-0988-MJJ      - 9 -

### 3. The Protective Order Shields the Confidentiality of Documents so Designated

PRG has not met its burden of making a good cause showing of why the requested discovery should not be allowed. Fed. R. Civ. P. 26(c).[6] Moreover, plaintiffs' discovery should be permitted notwithstanding any showing of good cause because the information sought is relevant and necessary to the case. *See, e.g., General Motors Corp.*, 307 F.3d at 1211 (upon a showing of good cause, the court should balance the interests in disclosure against the interests in non disclosure); *In re Remington Arms Co.*, 952 F.2d 1029, 1032-1033 (8th Cir. 1991). Even under heightened standards of protection not applicable here, discovery must be allowed where the material sought goes to the very "heart of the matter" or is "crucial to the case." *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 208 (N.D. Cal. 1983) (constitutional right of association challenges to disclosure). As such, the only remedy to which PRG may be entitled is a protective order limiting the use of the documents produced. Such an order is already in place here, however, providing the fullest degree of protection permitted under the Federal Rules.

The operative Protective Order in this case provides an uncomplicated mechanism whereby any party or nonparty may designate items produces as Confidential. Anderson Decl., Ex. C at 2. The protections afforded under the Protective Order are coextensive with those available under Rule 26(c) and allow a nonparty to designate any item for protection if disclosure would cause the nonparty prejudice or harm. *Id*. Once properly designated pursuant to the Protective Order, use of confidential material is strictly limited to prosecuting, defending or attempting to settle this case. *Id.* at 7. In light of these protections, taken together with the high degree of relevance and need of the documents requested, PRG is entitled to nothing more under the circumstances.

---

[6] Fed. R. Civ. P. 26(c) provides that a court may issue a protective order upon motion of the party resisting discovery "for good cause shown" . . . "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." For protection of commercial information, the party resisting discovery must establish that the information is a "trade secret or other confidential research, development of commercial information" *and* that disclosure would be harmful to the party's interest in the property. Fed. R. Civ. P. 26(c)(7); *In re Agent Orange Prod. Liab. Litig.,* 104 F.R.D. 559, 574.

NOT OF MOT & MOT TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PROD OF DOCS IN COMPLIANCE WITH SUBPOENA; MEM P&A – C-01-0988-MJJ — - 10 -

## IV. CONCLUSION

The documents sought are necessary to plaintiffs' case and cannot be obtained through less burdensome means. Therefore, while the Court may find the Protective Order limiting the use of such documents applicable, the documents should nonetheless be produced. Indeed, the Protective Order provides PRG with the fullest remedies to which it would otherwise be entitled under the circumstances. For these reasons and those set forth above, plaintiffs' motion should be granted.

DATED:  August 15, 2005

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
JENNIE LEE ANDERSON
MONIQUE C. WINKLER


                              /S/
JENNIE LEE ANDERSON

100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
MARK SOLOMON
DOUGLAS R. BRITTON
401 B Street, Suite 1600
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

T:\CasesSF\Oracle3\NOT00023545.doc

NOT OF MOT & MOT TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PROD OF
DOCS IN COMPLIANCE WITH SUBPOENA; MEM P&A – C-01-0988-MJJ                                     - 11 -