LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (68581)
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
401 B Street, Suite 1600
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
     – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
ELI R. GREENSTEIN (217945)
JENNIE LEE ANDERSON (203586)
MONIQUE C. WINKLER (213031)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | <u>CLASS ACTION</u> |
| This Document Relates To:<br><br>ALL ACTIONS. | PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PROFIT RECOVERY GROUP-SCHULTZ, INC.'S PRODUCTION OF DOCUMENTS IN COMPLIANCE WITH SUBPOENA |
| | DATE: August 19, 2005<br>TIME: 9:30 a.m.<br>CTRM: The Honorable Joseph C. Spero |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. PRG Has Refused to Produce Easily Accessible Documents Admittedly in Its Possession and Control ................................................................................... 2

    B. PRG Must Produce Documents as Required by the Discovery Plan ..................... 2

        1. PRG Must Search for and Produce Responsive Documents in Its Possession or Control ................................................................................ 5

        2. Plaintiffs Have Provided Explicit and Detailed Information to Assist PRG's Search for Responsive Documents ........................................ 5

    C. PRG Has Not Demonstrated that Complying with the Subpoena Would Be Unduly Burdensome ............................................................................................ 6

    D. PRG's Claim that the Subpoena Violates the Order Is Wrong and Yet Another Excuse to Escape Compliance ............................................................... 8

    E. The Protective Order Adequately Protects Confidentiality of PRG and Its Clients .................................................................................................................. 9

    F. Plaintiffs' Subpoena Describes the Documents Requested with Adequate Particularity .......................................................................................................... 9

    G. Complying with Plaintiffs' Subpoena Would Not Be Unreasonably Costly ........ 10

III. CONCLUSION ............................................................................................................ 11

## I.     INTRODUCTION

Two years ago, Profit Recovery Group-Schultz, Inc. ("PRG") was informed of its obligation to preserve documents relevant to this litigation.  Specifically, in February 2003, plaintiffs advised PRG by letter that based on their investigation of the case, they believed that PRG had discoverable information that is relevant to the case:

> ***Therefore, plaintiffs request that you preserve all documents in your possession, custody or control that are relevant to the allegations in the case*** . . . . This request for preservation of documents includes, without limitation, the following:
>
> All electronically recorded or stored data that refer to or relate to Oracle ***or Oracle's products, including but not limited to, electronic mails***.
>
> \*     \*     \*
>
> ***All documents concerning any communications, discussions or meetings between Oracle and Profit Recovery Group-Schultz about Oracle*** or any of its products, including any correspondence, phone logs, meeting minutes, and notes.

Anderson Decl., Ex. D (emphasis added).

Notwithstanding this notice and specific request, PRG seeks to avoid producing responsive documents, and asserts that some have already been improperly destroyed.  PRG's additional assertion of undue burden is wholly undermined by its admission of possible destruction, which is independently worrisome.  In any event, PRG admits that it currently has in its possession or control core documents, relevant and essential to the allegations in plaintiffs' Revised Second Amended Complaint for Violations of the Federal Securities Laws ("Complaint").  Indeed, PRG openly admits that many responsive documents could have been easily produced months ago, but has instead steadfastly refused to produce anything in response to plaintiffs' properly served subpoena.

In an attempt to justify its failure to produce, PRG claims that responsive documents are confidential, despite the existence of a comprehensive protective order governing all documents produced in this case.  PRG also wrongly asserts that plaintiffs' discovery is improper and in

violation of the Amended Order Setting a Discovery Plan ("Order")[1] entered in the Northern District of California, where the underlying action is pending. As demonstrated below, however, the Order in question explicitly provides for discovery of the documents plaintiffs seek. Given the clear relevance of the requested discovery, taken together with PRG's failure to produce even the most readily accessible responsive documents as requested months ago and its failure to preserve relevant documents as requested by plaintiffs more than two years ago, plaintiffs' motion to compel should be granted in its entirety.

## II. ARGUMENT

### A. PRG Has Refused to Produce Easily Accessible Documents Admittedly in Its Possession and Control

For more than two months, plaintiffs have requested that PRG at the very least produce documents that they admit are easily accessible and clearly responsive. *See, e.g.,* Anderson Decl., Ex. J ("plaintiffs are also willing to first review a production of electronically retrieved information and determine from there what additional responsive documents are required"). PRG concedes that such documents could be produced with minimal effort or expense at any time. Declaration of Clinton McKellar, Jr. in Opposition to Plaintiffs' Motion to Compel Profit Recovery Group-Shultz, USA, Inc.'s Production of Documents in Compliance with Subpoena ("McKellar Decl.") at ¶¶17-18. Despite this, PRG has refused to produce *any* documents, regardless of their relevance or the ease with which such documents could be produced. McKellar Decl. at ¶17. ("[i]f so ordered," PRG could produce responsive information "without any significant expenditure of time or expense.") Documents responsive to plaintiffs' subpoena must be produced.

### B. PRG Must Produce Documents as Required by the Discovery Plan

Well aware that its position is untenable, PRG in its Opposition suggests that it could produce some responsive reports, but proposes a narrow time frame and insists it should not be

---

[1] A true and correct copy of the Order is attached to the Declaration of Jennie Lee Anderson in Support of Motion to Compel Profit Recovery Group-Schultz, Inc.'s Production of Documents in Compliance with Subpoena ("Anderson Decl.") as Exhibit G.

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ                                                      - 2 -

required to produce any underlying or supporting documents.[2] PRG's proposal is thus inadequate, as it excludes discovery of documents critical to the prosecution of plaintiffs' claims and explicitly permitted by the Order entered in the underlying action.[3] Indeed, the Ninth Circuit has also authorized pursuit of the very accounting and audit documents plaintiffs seek. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004) ("Finally, and very importantly, there are the improper revenue accounting records.").

For example, PRG seeks to limit its production to documents created between June 1, 2000 and June 1, 2001 (the "Relevant Time Period"). Non-Party PGR-Schultz, USA, Inc.'s Response in Opposition to Plaintiffs' Motion to Compel Profit Recovery Group-Schultz, Inc.'s Production of Documents in Compliance with Subpoena ("PRG's Opp." or "Opposition") at 17. However, the Order requires the production of any document "created outside of the Relevant Time Period that refer to events within the Relevant Time Period," *i.e.*, creation of debit memos alleged in the Complaint and PRG's investigation of overpayments or refunds associated with them. *See* Anderson Decl., Ex. G at 1. Accordingly, plaintiffs specifically requested that PRG produce all responsive documents "relating to the 46,000 debit memo transactions created on or about November 17, 2000" regardless of when such related documents may have been created. Anderson Reply Decl., Ex. C; Anderson Decl. Ex. H; *see also* Anderson Decl., Ex. G at 8.

Plaintiffs' demand for such production is not based on merely a hunch, but on evidence demonstrating that PRG is in fact in possession or control of responsive documents created outside

---

[2] That this proposal includes the electronic discovery PRG consistently refused to produce during the meet and confer process demonstrates PRG's failure to meet and confer in good faith.

[3] Because this motion is closely related to the Order, plaintiffs asked PRG on June 29, 2005, to consent to jurisdiction in the Northern District of California. PRG did not consent, and plaintiffs proceeded in the Eastern District of California on July 7, 2005. Declaration of Jennie Lee Anderson in Support of Plaintiffs' Reply in Support of Motion to Compel Profit Recovery Group-Schultz, Inc.'s Production of Documents in Compliance with Subpoena ("Anderson Reply Decl."), Ex. A. PRG contacted plaintiffs on July 11, 2005, *after* plaintiffs filed their motion in the Eastern District of California to indicate it would submit to jurisdiction in the Northern District of California. *Id*. Rather than attempt to withdraw the motion and seek permission to re-file, plaintiffs indicated that if PRG sought to have the motion transferred as part of its response, they would not object. Anderson Reply Decl., Ex. B.

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ                              - 3 -

the Relevant Time Period that directly relate and refer to the debit memo transactions of November 17, 2000.  For example, Confidential Witness ("CW") 46, during the course of his/her duties as a PRG financial analyst, uncovered overpayments to Oracle Corporation ("Oracle") made by PRG clients in 1990, 1994, and 1997, which were later used to fund the Oracle debit memo transactions of November 17, 2000.  Complaint at ¶38; *see also* Declaration of Confidential Witness No. 46.[4] Moreover, plaintiffs' discovery and independent investigation establish that PRG's investigation of overpayments relating to the debit memos was in progress in November 2001 and that PRG asserted claims relating to the debit memos against Oracle on behalf of its clients in 2002.[5]  Anderson Decl., Ex. N.  Andersen Reply Decl., Exs. D, E.[6]  While this investigation occurred outside the Relevant Time Period, they directly relate and refer to the 46,000 debit memo transactions created on or about November 17, 2000 and alleged in plaintiffs' Complaint.  *See id.*  Therefore, any proposal which seeks to limit discovery to only claims lodged against Oracle and entered into a PRG report within the Relevant Time Period is simply not feasible, particularly because PRG concedes it could just as easily produce reports for larger periods of time.  *See* PRG's Opp. at 11-12.

Equally unacceptable is PRG's proposal that it be excused from producing any underlying or supporting documents beyond the reports attached to the McKellar Decl. as Exhibits A, B, and C.  PRG's Opp. at 10-12.  Indeed, PRG admits that its auditors obtained data and documents from PRG clients and requested account statements from their vendors, including Oracle, and that it collects

---

[4] PRG complains they do now know the name of CW46.  As plaintiffs explained, CW46's identity is protected under the protective order entered in this case.  PRG  has not signed any agreement to be bound by the protective order.  *See* Anderson Decl., Ex. G at Ex. A.

[5] PRG claims that documents and information identified by CW46 are not "reflected in the information available to PRG" based on its client management system ("CMS") database search for claims entered in 2000 and 2001. McKellar Decl. at ¶¶15-16.  But PRG asserted claims against Oracle on behalf of the companies identified in the Complaint in 2002, which explains this discrepancy. *See*, *e.g.*, Anderson Reply Decl., Ex. D, E; Anderson Decl., Ex. N.

[6] In addition to the exhibits attached to the Anderson Decl. and Anderson Reply Decl., which are the product of plaintiffs' investigation, plaintiffs can provide the Court with additional documentary proof that PRG was asserting claims against Oracle relating to the debit memos outside the "Relevant Time Period" *in camera* if necessary.

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ                                                          - 4 -

such data in order to recover assets on behalf of its clients. McKellar Decl., at ¶6. These documents go to the heart of plaintiffs' allegations and must be produced.

### 1. PRG Must Search for and Produce Responsive Documents in Its Possession or Control

PRG's claim that it has no policy requiring auditors to retain and deliver to a PRG office every underlying or supporting document is entirely irrelevant. *See* PRG's Opp. at 12. However, PRG has failed to search for and produce any responsive documents in its possession and control as Fed. R. Civ. P. 45(a)(1)(C) requires, including responsive documents admittedly in its storage facilities. *See* McKellar Decl. at ¶7 (auditors generally compile information regarding claims included in the Narrative Audit Report or a Management Report "copies of which are placed in PRG's storage facilities.") If PRG has a right to demand documents created or maintained by its auditors, which it clearly does, such documents are deemed to be under its control and must be produced. *See United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon demand."). If such documents have been destroyed, as PRG's Opposition suggests, PRG may be subject to sanctions, as it was required to preserve such documents, including documents in its auditors' possession, upon receiving plaintiffs' preservation letter more than two years ago. PRG's Opp. at 3, 13. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (courts have broad discretion to determine appropriate sanctions for spoliation of evidence); *Toste v. Lewis Controls, Inc.*, No. C-95-01366-MHP, 1996 WL 101189, at \*\*3-4 (N.D. Cal. Feb. 27, 1996) (if an affirmative duty to preserve arises, the nonparty entity is required to communicate those obligations to employees in possession of discoverable materials). *See also* Anderson Decl., Ex D.

### 2. Plaintiffs Have Provided Explicit and Detailed Information to Assist PRG's Search for Responsive Documents

Plaintiffs have specifically identified individual PRG employees that were involved in PRG's efforts to recover overpayments made to Oracle that relate to the debit memos alleged in the Complaint. Anderson Decl., Exs. M, N. PRG concedes that these current and former employees were assigned the task of "calling vendors on the telephone to request copies of statements of current

1 accounts for selected clients." McKellar Decl. at ¶11.  Indeed, the PRG email submitted by plaintiffs establishes that these individuals were contacting Oracle regarding overpayments made by PRG clients, inquiring about the very debit memos alleged in the Complaint, and in many cases obtaining documents that are undoubtedly responsive to plaintiffs' requests.  *See, e.g.,* Anderson Reply Decl., Ex. D, E; s*ee also* Anderson Decl., Ex. N.  Even if PRG is correct that the individuals identified in this PRG email were "employees" as opposed to auditors, these individuals were gathering and creating documents on behalf of PRG that are responsive to plaintiffs' discovery requests.  As such, the files of these individuals, along with those of other auditors, analysts, or employees known to have sought recovery of funds from Oracle, must be searched and responsive documents produced.

**C.    PRG Has Not Demonstrated that Complying with the Subpoena Would Be Unduly Burdensome**

Unable to challenge the obvious relevancy of the documents in its possession and control, PRG next argues that retrieving the documents would just be too burdensome.  PRG's Opp. at 9.  This argument is without merit, however, and must be rejected.  To get relief from compliance with the subpoena, PRG must establish that the burden of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the importance of the issues at stake in the litigation, and the role of the proposed discovery in resolving those issues.  *See* Fed. R. Civ. P. 26(b)(2).  PRG has failed to do so here.

The documents plaintiffs seek are relevant and critical to the prosecution of their claims, as both the District Court and the Ninth Circuit have acknowledged.  In upholding plaintiffs' Complaint on appeal, for example, the Ninth Circuit commented extensively on the evidentiary value of the PRG documents.  *See Nursing Home Pension Fund Local 144*, 380 F.3d at 1233.  Acknowledging the merits of plaintiffs' accounting allegations taken as a whole, the court marveled at the relevancy of the PRG documents collected by CW 46, which "themselves appear to establish improper revenue adjustment."  *Id.*  In accord, the District Court has authorized discovery of *all* documents relating to the 46,000 debit memos.  Anderson Decl., Ex. G at 8; Anderson Reply Decl., Ex. F at 95.  Clearly, the value of the requested documents here simply outweighs the slight amount of burden PRG has established it would endure.

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ                                        - 6 -

PRG's convoluted description of the purportedly "laborious and prohibitively expensive six-step process" which it contends it must follow to locate responsive underlying documents is unconvincing. McKellar Decl. at ¶23, *see also* PRG's Opp. at 13-16. For instance, PRG claims that "step (a)," compiling a list of auditors who may have accumulated documents while asserting claims against Oracle, would "likely" require six to twelve weeks and "several hundred employee work hours" to complete. Declaration of Martez D. Andrews in Opposition to Plaintiffs' Motion to Compel Profit Recovery Group-Schultz, USA, Inc.'s Production of Documents in Compliance with Subpoena ("Andrews Decl.") at ¶17. *See also* PRG's Opp. at 16. But the very documents PRG offers in opposition to plaintiffs' motion, which it contends would have been created for any claim made against Oracle, ***identify the auditors***. *See* McKellar Decl., Ex. A.

Because the documents PRG concedes are easy to identify and produce appear to already contain the names of the auditors, and because the auditors most likely to have identified claims are already known, PRG's claim that constructing a list of auditors would require "several hundred of employee work hours" is totally unfounded. *See* PRG's Opp. at 16. Indeed, the declaration upon which this theory is based is that of PRG's Messenger Manager, whose duties are limited to managing PRG's email, instant messaging and wireless devices, and who may be unaware that the auditor names are readily available in existing PRG reports. *See* Andrews Decl. at ¶¶3-4.

The remainder of PRG's purported "six-step process" entails nothing more than gathering and producing relevant documents as routinely required by any document subpoena. However, PRG has managed to compartmentalize the process to the point of absurdity. *See,* McKellar Decl. at ¶23. For example, part (c) of the six-step process is "determining whether the auditor discarded the documents or retained them somewhere else," and part (d) entails, "[i]f the auditor retained them, determining whether the auditor remembers where they were retained or sent." *Id*.

Moreover, PRG boasts that its CMS database is a complete compilation of information regarding *every* claim that is made against a vendor on behalf of a PRG client, and that searches can be done "without any significant expenditure of time or expense." *See* PRG's Opp. at 12; McKellar Decl. at ¶17. Still, no documents have been produced. Given its assurances that it can produce

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ                                         - 7 -

1 unredacted spreadsheets for larger periods of time, PRG's resistant in conducting a search to include
2 the entire time period in which recoveries relating to the 46,000 debit memo transactions may have
3 been entered (such as 2000-present) is also difficult to reconcile. *See* McKellar Decl. at ¶15; PRG's
4 Opp. at 11.

5 PRG's obstinate refusal to produce even the most easily accessible documents further
6 undermines its "burden" argument. PRG has yet to search the files of auditors and employees
7 known to have been directly involved in recovering overpayments relating to the debit memos and
8 has not searched its storage facilities, which it admits contain responsive documents. *See* McKellar
9 Decl. at 7.

### D. PRG's Claim that the Subpoena Violates the Order Is Wrong and Yet Another Excuse to Escape Compliance

The Order allows plaintiffs to subpoena 100 non-party customers.[7] Anderson Decl., Ex. G at
7. PRG was among the first nonparties to be subpoenaed in December 2004, and in any event,
plaintiffs have yet to exhaust their one hundred subpoena limit. Moreover, the court explicitly
ordered that plaintiffs are entitled to seek any and all documents *relating* to the more than 46,000
debit memos alleged in the Complaint. Anderson Reply Decl. Ex. F at 95 ("Any documents relating
to those 49,000 [sic] debit memos, period."); *see also* Anderson Decl., Ex. G at 8. Such discovery
was intended to encompass anything pertaining to the debit memos, "whatever the transactions are
that those involve." Anderson Reply Decl., Ex. F at 95.

PRG contends that plaintiffs' discovery seeks to evade the Order's 100 customer limit or, in
the alternative, that PRG should be protected from any further discovery despite clear showing that it
has core documents essential to plaintiffs' case on the ground that plaintiffs seek documents relating
to overpayments not made by PRG, but by its clients. PRG's Opp. at 7-8. Under either theory,
PRG's argument clearly fails.

---

[7] While the Order does not prohibit or limit discovery from nonparties who are not considered Oracle customers, analysts, or auditors, PRG was a subpoenaed nonparty included in the "customer" category.

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ        - 8 -

### E. The Protective Order Adequately Protects Confidentiality of PRG and Its Clients

On January 11, 2005, District Court Judge Martin J. Jenkins entered the Revised Stipulated Protective Order Governing Confidentiality ("Protective Order"). Anderson Decl., Ex. C. PRG does not contend that the Protective Order is unenforceable or invalid, but instead argues that it does not "address PRG's contractual obligation to its clients not to disclose that information to Plaintiffs or other third parties." PRG's Opp. at 9. PRG's contention is simply incorrect. Applying PRG's logic, confidential information would never be discoverable. In fact, preserving the confidentiality of business, technical and proprietary information is precisely what the Protective Order accomplishes. The Protective Order protects "confidential, proprietary or private information," produced by any party or nonparty and also encompasses "information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations" that might reveal such confidential material. Anderson Decl., Ex. C at 1-3. In any event, in its own client confidentiality agreements, PRG agrees to "preserve as confidential all information pertaining to the Client's business and all technical and proprietary information obtained from Client in the performance of this Agreement," McKellar Decl., Ex. D, and the Protective Order does exactly that.

Notwithstanding court ordered protection and without citing any authority in support of its position, PRG has consistently refused to produce a single responsive document because of these "confidentiality concerns." Anderson Decl., Ex. R. PRG's position is indefensible and serves no purpose but to obstruct necessary discovery in the case.

### F. Plaintiffs' Subpoena Describes the Documents Requested with Adequate Particularity

PRG's assertion in footnote 5 of its Opposition that plaintiffs' motion should be denied because the subpoena is vague and ambiguous is laughable. Plaintiffs' subpoena describes with particularity the documents sought, as required under the Federal Rules. Fed. R. Civ. P. 34(b). Moreover, PRG has identified and produced to the Court documents directly relevant to the case. McKellar Decl., Exs. A, B, C. Plaintiffs actively sought throughout the meet and confer process to

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ                                    - 9 -

address any questions PRG had regarding the subpoena. *See, e.g.,* Anderson Decl. Ex. M. Indeed, plaintiffs explained to PRG that the subpoena seeks documents relating to overpayments and duplicate payments made to Oracle by Oracle customers, which plaintiffs allege were then used to fund the more than 46,000 debit memos described in the Complaint. *Id.* Plaintiffs also referred PRG to specific sections in the Complaint, which describe in detail how CW46, a PRG financial analyst identified overpayments that related to the debit memos. *Id.* PRG indicated it had no further questions, and did not notify plaintiffs at any future time that it failed to understand the nature of the documents requested. *Id.* PRG has illustrated in its Opposition not only that it understands the nature of the documents plaintiffs seek, but also that it has in some instances located, but refused to produce to plaintiffs, responsive documents. PRG's Opp. at 11. PRG's reliance on this objection is nothing more than a charade and should be rejected.

### G.     Complying with Plaintiffs' Subpoena Would Not Be Unreasonably Costly

PRG's request that plaintiffs be ordered to reimburse it for unspecified expenses it may incur when complying with the subpoena is entirely unsupported by these facts and the applicable law. PRG is not being asked to "subsidize an unreasonable share" of plaintiffs' litigation costs. *United States v. CBS, Inc*, 103 F.R.D. 365, 375 (C.D. Cal. 1984). Quite the contrary, plaintiffs' discovery is narrowly tailored to seek only documents highly relevant to specific allegations in the Complaint. Plaintiffs have also taken reasonable measures to reduce the burden placed on PRG, including setting forth a proposal whereby plaintiffs would first review easily retrievable electronic information, and by providing PRG with information from plaintiffs' independent investigation to assist PRG in locating documents. Anderson Decl., Exs. J, M. PRG has simply refused to comply with the subpoena.

Moreover, PRG has failed to demonstrate the estimated or actual costs complying with the subpoena would require, indicating instead that it is "difficult to determine precisely how much burden and expense PRG would incur." PRG's Opp. at 16. To justify reimbursement of costs, PRG must provide reliable evidence regarding the costs incurred. *See*, *e.g., CBS*, 103 F.R.D. at 375 (requiring affidavits and other evidence to provide a sufficient basis to determine appropriate costs).

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ                                                                - 10 -

1  As such, PRG's proffer is insufficient to sustain its objection that plaintiffs' subpoena is so costly as
2  to be unduly burdensome.

3  The cases PRG cites in its Opposition are inapposite. *See, e.g., CBS*, 103 F.R.D. at 368
4  (nonparty witnesses were required to produce "every document in the Nonparty Witnesses'
5  possession relating to television and theatrical production," which ultimately required the production
6  of **6,000,000** documents); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc*., 161
7  F.R.D. 86, 88 (N.D. Cal. 1995) (imposing sanctions pursuant to Fed. R. Civ. P. 45 (c)(1) where
8  subpoenaing party failed to take reasonable steps to avoid imposing undue burden); *Compaq*
9  *Computer Corp. v. Packard Bell Elecs., Inc.,* 163 F.R.D. 329, 331 (N.D. Cal. 1995) (nonparty
10 established costs with particularity, supported by detailed affidavit of vice president). While
11 nonparties are entitled to reasonable protection from undue burden, PRG has not and cannot
12 demonstrate any particularized burden here.

13 **III.   CONCLUSION**

14 Plaintiffs' Motion to Compel Profit Recovery Group-Schultz, Inc.'s Production of
15 Documents in Compliance with Subpoena should be granted in its entirety.

16 DATED: August 15, 2005					LERACH COUGHLIN STOIA GELLER
								  RUDMAN & ROBBINS LLP
17								SHAWN A. WILLIAMS
								WILLOW E. RADCLIFFE
18								ELI R. GREENSTEIN
								JENNIE LEE ANDERSON
19								MONIQUE C. WINKLER

20
									     / S /
21								JENNIE LEE ANDERSON

22								100 Pine Street, Suite 2600
								San Francisco, CA  94111
23								Telephone:  415/288-4545
								415/288-4534 (fax)

| | |
|---|---|
| 1 | |
| 2 | LERACH COUGHLIN STOIA GELLER |
|   |   RUDMAN & ROBBINS LLP |
|   | WILLIAM S. LERACH |
| 3 | MARK SOLOMON |
|   | DOUGLAS R. BRITTON |
| 4 | 401 B Street, Suite 1600 |
|   | San Diego, CA  92101 |
| 5 | Telephone:  619/231-1058 |
|   | 619/231-7423 (fax) |
| 6 | |
|   | Lead Counsel for Plaintiffs |
| 7 | |

T:\CasesSF\Oracle3\BRF00023550___PRG.doc

PLFS' REPLY IN SUPP OF MOT TO COMPEL PRGROUP-SCHULTZ, INC.'S PROD
OF DOCS IN COMPLIANCE WITH SUBPOENA - C-01-0988-MJJ - 12 -