# Exhibit 1

```
MAYER
BROWN
ROWE
& MAW
```

Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112

Main Tel (650) 331-2000
Main Fax (650) 331-2060
www.mayerbrownrowe.com

**Lee H. Rubin**
Direct Tel (650) 331-2037
Direct Fax (650) 331-4537
lrubin@mayerbrownrowe.com

August 25, 2005

**VIA FACSIMILE**

Shawn A. Williams
Lerach Coughlin Stoia Geller
Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

Re: In re Oracle Securities Litigation

Dear Shawn:

I write to memorialize our meet and confer that occurred on August 23, 2005.

At the outset, we explained to you that over the past ten days, we had made inquiries at Oracle to determine the availability of the documents that you described in our meeting on August 12, 2005 (and later itemized in nos. 1-8 in your August 16, 2005 letter to me and Trace Schmeltz) and, to the extent such documents are available, the burden that would be imposed on Oracle in producing these materials. We further explained to you – as we had in Trace's letter to you of August 19, 2005 – that although we believe that we have fully complied with our obligations under the Discovery Plan in connection with the accounting allegations, we agreed to make this inquiry concerning the feasibility of producing additional documents in the spirit of compromise and out of a desire to avoid protracted litigation over this issue. In addition, we explained that we thought it may advance the negotiation process for you to explain to us Plaintiffs' need for certain categories of documents for which we believed production of some or all of the documents would impose an unreasonable burden (such as copies of customers' checks and purchase orders). You categorically refused to explain or describe Plaintiffs' need for any of the items, stating only that you believed that the Court had ordered all of the materials to be produced. We disagree with your position, but if you have a change of heart about your willingness to discuss your need for these documents, we stand ready to participate in further discussions. We have summarized below the information that we have agreed to produce, as well as information that we conveyed to you about the remainder of the requested documents.

(1) **Electronic Data**: Oracle is prepared to produce information that is stored electronically at Oracle that contains the accounting history of the transactions that culminated in the 46,000 debit memos. This information, which can be generated programmatically, includes: the customer receipt number (which is the number of the customer's check), the invoice number, the purchase order number, the Oracle order form number, the number and amount of any Oracle refund check, and the accounting entries related to each transaction, including those entries reflecting the November 17, 2000 debit memos and their accounting history.

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Shawn A. Williams
August 25, 2005
Page 2

(2) **Invoices**: Oracle does not image or otherwise retain invoices that are sent to customers. That being said, Oracle has the ability to programmatically generate invoices from electronically stored information, and, consequently is prepared to produce the invoices related to transactions underlying the 46,000 debit memos. As we explained, these invoices will not be identical in format to those original invoices that were sent to customers but should contain much if not all of the same information.

(3) **Purchase Orders and Oracle Order Forms**: To begin with, it is our understanding that, during the time-period in which we would be searching for purchase orders and order forms (*i.e.*, prior to 2000), approximately half of all such documents were imaged because imaging such documents was not part of the ordinary work flow. As a result, Oracle is likely to have only a portion of the documents in hard copy format. Consequently, Plaintiffs will obtain the most complete information from the electronic data regarding purchase orders and order forms described in category (1), above.

In addition, these documents are extremely burdensome to retrieve. Unlike the information described in the previous two categories, purchase orders and Oracle order forms cannot be retrieved programmatically and, thus, would require manual retrieval. In order to obtain this information, an individual would have to enter each purchase order and order form number (which will be reflected in the electronic data described in item (1) into the system and print each responsive order – an undertaking that would be extraordinarily time-consuming and costly and would pose an unreasonable burden on Oracle.

Nonetheless, Oracle is willing to retrieve a representative sample (to be selected by Plaintiffs) of the purchase orders and order forms. Although we are willing to discuss the precise number of purchase orders that we would be prepared to retrieve, we advised you that, in our view, a sample well below 1,000 would be appropriate.

(4) **Contracts**: Contracts, which also have been imaged by Oracle, can be retrieved only through a manual process. Consequently, it would be unreasonably burdensome for Oracle to retrieve every single contract related to those transactions that culminated in the creation of the debit memos. As with the purchase orders and order forms, we are prepared to retrieve a representative sample (of Plaintiffs' choosing) of the contracts.

(5) **Checks**:

- **Customer/Third-party Checks**: From 1997 to 2000, on a daily basis Oracle received photocopies of checks along with remittance information. These copies are stored by batch by day at an Iron Mountain facility in California. Oracle believes that it is simply too burdensome to sift through its daily batches of checks over a three-year period to retrieve the checks requested by Plaintiffs, a project that, by itself, could take weeks to accomplish.

Mayer, Brown, Rowe & Maw LLP

Shawn A. Williams
August 25, 2005
Page 3

Beginning in 2000, these checks were imaged. It will require a manual query to find checks that Oracle received after 2000. Oracle cannot assess its burden in retrieving this data until it has compiled the data described in category (1), above. However, when such compilation is complete, Oracle is prepared to discuss producing all or a representative sample (chosen by Plaintiffs) of these checks.

- **Oracle Checks**: Since the mid-1990s, Oracle has electronically imaged its outgoing checks. Because Oracle would be required to conduct a manual search for the requested checks (*i.e.*, the checks at issue cannot be generated programmatically), it is prepared to produce a representative sample of these checks (again, the criteria for the sample to be provided by Plaintiffs).

(6) **Debit and Credit Memos**: Oracle does not retain documents known as "debit memos" or "credit memos." These terms connote internal accounting entries at Oracle. Neither debit memos nor credit memos are typically furnished to Oracle's customers or third parties. Accordingly, while Oracle is able to provide you with the entire audit trail related to the debit memos at issue – which we already have done – there are no separate "debit memos" or "credit memos" available for production. Any debit memo or credit memo data that is stored electronically will be produced as part of the electronic data described in category (1).

(7) **Bank Statements**: Oracle possesses hard copies of copies of monthly bank statements in storage at Iron Mountain in California and has soft copies of daily bank statements at the company dating back to 1997 or 1998. It would be an enormous burden to retrieve the requested bank statements. Obtaining the documents in hard-copy or soft-copy form would require hundreds of labor hours. Similarly, because there is no programmatic way to retrieve the specific bank statements preserved in soft-copy form, producing those statements would be equally burdensome. The electronic data described in category (1) and a representative sample of checks, as described in category (5), will contain the same data contained in bank statements – making this category not only extremely burdensome to retrieve but also redundant.

(8) **Correspondence Related to the Transaction**: Oracle does not maintain a repository for copies of correspondence with customers. Accordingly, we are unable to produce such materials. That being said, comments entered electronically by collections department personnel will be produced to you as part of the electronic data production concerning the transactions.

We have already begun the process of retrieving the electronic data and invoice information and are prepared to begin working on retrieving a representative sample of purchase orders, contracts, and Oracle checks as soon as we reach agreement on the appropriate number that should comprise the sample. If you intend to insist upon production of the materials for which we believe production would impose an unreasonable burden, please let us know and we will move the court for a protective order concerning these documents. As noted above, we remain willing to continue to discuss any category of documents described above.

Mayer, Brown, Rowe & Maw LLP

Shawn A. Williams
August 25, 2005
Page 4

      Finally, as we explained during our meeting at the courthouse on August 12, 2005, in our letter of August 19, 2005, and again during our meet and confer on August 23, 2005, the myriad General Ledger accounts identified in your August 19 letter and those sub-ledgers and journals described in item 9 of that same letter are plainly outside the scope of the Discovery Plan. Accordingly, we do not intend to produce any of those materials.

      Very truly yours,

      Lee H. Rubin

cc: James Maroulis
    Vincent P. Schmeltz III