# EXHIBIT A

MAYER, BROWN, ROWE & MAW LLP
Donald M. Falk (SBN 150256)
Lee H. Rubin (SBN 141331)
Shirish Gupta (SBN 205584)
Two Palo Alto Square, Suite 300
Palo Alto, California 94306
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
lrubin@mayerbrownrowe.com

MAYER, BROWN, ROWE & MAW LLP
Alan N. Salpeter (admitted *pro hac vice*)
Javier Rubinstein (admitted *pro hac vice*)
Vincent P. Schmeltz III (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
jrubinstein@mayerbrownrowe.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway, Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. C-01-0988-MJJ (JCS)<br>(Consolidated)<br><br>**DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: ----<br>Time: ----<br>Place: Courtroom 11<br>**Honorable Martin J. Jenkins** |

## INTRODUCTION

In Plaintiffs' Reply in Further Support of Their Motion for Class Certification ("Reply"), they assert for the first time that their expert – Bjorn I. Steinholt, CFA – could use an event study to prove a causal connection between the drop in Oracle's stock price following Oracle's March 1, 2001 earnings announcement and Plaintiffs' fraud claims. Reply at 5. Plaintiffs never explain, however, how they could possibly prove that the earnings announcement or the market's reaction to that announcement had anything to do with their Accounting Claim or their Design Claim, or how an event study could supply a connection that is utterly lacking in the announcement itself.[1]

Plaintiffs thus have failed to offer any realistic methodology for proving loss causation for these claims. See *In re Rubber Chemicals Antitrust Litig.*, 2005 WL 2649292, * 6-7 (N.D. Cal. Oct. 6, 2005) (requiring threshold proof of a "realistic methodolog[y]").[2] Absent such a showing, this Court has no basis for concluding that loss causation can be adjudicated on a class-wide basis. Accordingly, since plaintiffs have not met their burden under Rule 23, the Court should not certify a class with respect to either claim.[3] Fed. R. Civ. P. 23(b)(3), 2003 Adv. Comm. N.; *Dukes v. Wal-Mart Stores,* 222 F.R.D. 137, 143 (N.D. Cal. 2004).

## ARGUMENT

To prove loss causation, Plaintiffs must establish a causal connection between an economic loss and the alleged misrepresentations. *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S.Ct. 1627, 1633-34 (2004). This requires Plaintiffs to demonstrate that the market learned the truth about the alleged misrepresentations and then, in response, devalued Oracle's stock. *Id.* at 1633; see also *In re Gilead Sciences Sec. Litig.*, 2005 WL 2649200, *7 (N.D. Cal. Oct. 11, 2005) (loss causation can be established by showing a "steep drop" in stock price "upon revelation of previously unknown facts") (citing *In re Daou Sys., Inc. Sec. Litig.,* 411 F.3d 1006, 1026 (9th Cir.

---

[1] Throughout this brief, Defendants will use capitalized conventions – such as "Accounting Claim" – defined in their Opposition to Plaintiffs' Motion for Class Certification ("Opposition").

[2] Defendants have attached all unpublished decisions as exhibits to the accompanying Declaration of Vincent P. Schmeltz in Support of Defendants' Sur-Reply.

[3] Of course, Defendants believe the Court should not certify a class with respect to the any of Plaintiffs' claims for the reasons set forth in their Opposition.

2005). In *Daou*, for example, the Ninth Circuit upheld loss causation allegations where the market specifically connected Daou's announcements of its financial condition to the alleged fraud – noting that a stock analyst had interpreted Daou's earnings announcements as demonstrating that the company had been "manufacturing earnings." Id at 1026.

Plaintiffs argue – for the first time in the Reply – that ***any*** revelation that a company's future cash flows will decrease in value can establish loss causation, whether the revelation has a facial connection to the fraud or not. Reply at 4. This test cannot be squared with cases in the Ninth Circuit applying *Dura* – including *Daou* and *Bennett v. H&R Block Fin. Adv., Inc.*, 2005 WL 2811757, *4 (Oct. 27, 2005 N.D. Cal.), which held that *Dura* required plaintiffs to show that the defendants withheld information that, ***once known publicly***, would cause the value of the bonds at issue to depreciate. This clear connection is necessary because "there is no liability when the value of the stock goes down . . . not in any way because of the misrepresented financial condition, but as a result of some subsequent event that has no connection with or relation to [the misrepresented] financial condition." Rest. 2d Torts § 248A (*cited in Dura*, 125 S.Ct. at 1633).

Plaintiffs have failed to provide any realistic methodology for establishing a connection between the drop in Oracle's stock price following its March 1, 2001 earnings announcement and alleged misrepresentations about Oracle's second quarter earnings or the integrated design of its Suite 11*i* software product. The March 1 announcement said nothing about 2Q01 or the Suite 11*i* design – it disclosed only that Oracle "would not be able to meet investors' expectations for 3Q01." Decl. of Bjorn I. Steinholt, CFA in Supp. of Pls.' Reply in Further Supp. Of Their Mot. For Class Cert. ("Steinholt Decl.") at ¶8. In fact, Steinholt admits that the announcement only "***partially reveal[ed]*** the truth about Oracle's business and financial condition." Steinholt Decl. at ¶8 (emphasis added). Plaintiffs also have not pointed to anything suggesting that the ***market*** interpreted the earnings announcement as revealing any "truth" about Oracle's second quarter earnings or design of its Suite 11*i* software product. Absent any such connection, Plaintiffs cannot prove loss causation on a class-wide basis. *See Daou,* 411 F.3d at 1026-27 (any loss between $34.375 and $18.50 could not "be considered causally related to Daou's allegedly

fraudulent accounting methods" because there had been ***no*** revelations indicating such fraudulent accounting during that price movement).

Plaintiffs' proposed "event study" (an approach raised for the first time in the Reply) cannot supply the missing causal connection either. An event study may be able isolate the impact that an earnings announcement has on Oracle's stock price, and may be able to eliminate the impact of other events. See *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F.Supp.2d 1005, 1014 (C.D. Cal. 2003) (citing, *inter alia*, Koslow, *Estimating Aggregate Damages in Class Action Litigation Under Rule 10B*, 59 Fordham L. Rev. 811, 822 & n.50 (1991) ("Koslow")). An event study, however, cannot show the impact on Oracle's stock price of statements that were never made during an earnings announcement. See Koslow at 824 (in situations involving multiple fraudulent misrepresentations, "it may be difficult or impossible to disentangle" the impact of each fraud on the stock price "and thus financial theory may not aid the apportionment of damage"). Tellingly, Steinholt does not even attempt to connect the stock drop with each of the three alleged frauds – stating only that the decline in Oracle's stock price following the March 1, 2001 earnings announcement "was highly statistically significant . . . and therefore not explained by market or industry factors." Steinholt Decl. at ¶8. Thus, Plaintiffs have not offered ***any*** realistic methodology by which they could prove on a class-wide basis that the drop in Oracle's stock price following the March 1 earnings announcement was related to ***anything*** other than the subject of the announcement itself.

If, on the other hand, Plaintiffs try to prove loss causation by demonstrating that the truth about the alleged misstatements in the Accounting Claim and the Design Claim somehow "leak[ed]" into the market over time, they will have the burden of demonstrating that common issues of fact predominate in that inquiry and that the Court can manageably adjudicate loss causation on a class-wide basis. *Dura,* 125 S.Ct. at 1631 (discussing possibility that truth could "leak" into the market); Fed. R. Civ. P. 23(b)(3). The Court cannot presume that Plaintiffs will be able to do so; absent one corrective event – whether it be a circumstance or a disclosure – the jury would have to sort through the "tangle of factors affecting price," *Dura*, 125 S.Ct. at 1632, on a moment-by-moment basis to see if the particular alleged fraud had any continuing effect. *See,*

*e.g.*, Koslow at 823 ("If . . . disclosures seep out over an extended period, it is more difficult to determine when corrective disclosures occur and the impact of such disclosures on the market.") For each of these reasons, Plaintiffs have failed to meet their burden of showing that common issues of fact and law predominate and that class adjudication is superior to other forms of dealing with the Accounting Claim and the Design Claim. Fed. R. Civ. P. 23(b)(3); 2003 Adv. Comm. Notes. As a result, the Court should not certify a class with respect to either claim.

Finally, if the Court certifies any sort of class, it should not include in-and-out traders. The *Dura* Court made clear that those who purchase and sell a security while the price is inflated by fraud do not suffer an economic loss. 126 S.Ct. at 1631. Thus, even if the Court certifies a class, it should not include anyone who both bought and sold shares of Oracle stock during the class period, as they could never prove that they suffered an economic loss.

**CONCLUSION**

For the reasons stated in this sur-reply and in Defendants' Opposition to Plaintiffs' Motion for Class Certification, the Court should refuse to certify a class for any of Plaintiffs claims. In the alternative, the Court should refuse to certify a class for the Accounting Claim and the Design Claim. Finally, in any class the Court may certify, the Court should not include shareholders who both bought and sold the publicly traded securities of Oracle Corporation between December 14, 2000 and March 1, 2001.

DATED: November 21, 2005

MAYER, BROWN, ROWE & MAW LLP

By:/s/ Vincent P. Schmeltz III
Vincent P. Schmeltz III
Attorneys for Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley and Edward J. Sanderson