LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
VALERIE L. McLAUGHLIN (191916)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
MarkS@lerachlaw.com
DougB@lerachlaw.com
ValerieM@lerachlaw.com
     – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
ELI R. GREENSTEIN (217945)
JENNIE LEE ANDERSON (203586)
MONIQUE C. WINKLER (213031)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
ShawnW@lerachlaw.com
WillowR@lerachlaw.com
EliG@lerachlaw.com
JennieA@lerachlaw.com
MoniqueW@lerachlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>   ALL ACTIONS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Master File No. C-01-0988-MJJ<br><br>CLASS ACTION<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY THE AMENDED PRETRIAL ORDER TO EXTEND THE FEBRUARY 24, 2006 DISCOVERY CUTOFF; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:         January 10, 2006<br>TIME:         9:30 a.m.<br>COURTROOM:  The Honorable Martin J. Jenkins |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD ...........................................................................................5

III.  PLAINTIFFS HAVE DILIGENTLY CONDUCTED DISCOVERY SINCE DECEMBER 2004 .................................................................................................5

IV.  AN EXTENSION OF THE CURRENT FEBRUARY 24, 2006 DISCOVERY CUTOFF IS NECESSARY TO MAKE UP FOR THE SUBSTANTIAL DELAYS IN DISCOVERY ....................................................................................6

    A.    Defendants Belatedly Produced Over 80,000 Pages of New Responsive Documents Nearly Four Months After the Court's May 1, 2005 Deadline............6

    B.    Defendants Delayed the Production of Accounting Documents for Seven Months and Recently Produced Hundreds of Thousands of Pages of New Documents ...........................................................................................................7

    C.    Prior to Entry of the Discovery Plan, Defendants Repeatedly Sought to Narrow Discovery to an Unreasonable Scope Which Caused Significant Delays ...................................................................................................................9

         1.    Defendants Delayed Discovery by Refusing to Produce Documents Outside of a Limited "Speakers Group" ...............................................9

         2.    Defendants Delayed Discovery of Documents Related to Suite 11i .........10

    D.    Defendants' Production of Corrupted and Unreadable Files Caused Substantial Delays in Plaintiffs' Document Review.............................................11

    E.    Defendants Did Not Submit Complete Responses to Plaintiffs' Interrogatories Until Four Months After the Interrogatories Were Due................12

    F.    Defendants Resisted Discovery of Thousands of Relevant Documents Related to Oracle's Special Litigation Committee for Eight Months Until the Court Ordered Production .............................................................................12

    G.    Other Delays in Defendants' Production ............................................................13

         1.    Delay in Producing Deposition Transcripts from the Derivative Case ......................................................................................................13

         2.    Source/Privilege Logs ..............................................................................14

V.   THIRD PARTY DISCOVERY HAS BEEN SIGNIFICANTLY DELAYED.................14

VI.  SUMMARY OF PLAINTIFFS' REMAINING DISCOVERY ......................................17

VII. CONCLUSION.................................................................................................18

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Johnson v. Mammoth Recreations, Inc.*,
       975 F.2d 604 (9th Cir. 1992) ..........................................................................5

5

**STATUTES, RULES AND REGULATIONS**

6

Federal Rules of Civil Procedure
       Rule 16(b) ........................................................ *passim*
       Rule 30(b)(6)..............................................................5, 6
       Rule 33 ....................................................................12
       Rule 45 ................................................................15, 16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on January 10, 2006, at 9:30 a.m., or as soon thereafter as counsel may be heard, plaintiffs shall move this Court for an order modifying the Court's December 17, 2004 Amended Pretrial Order to extend the non-expert fact discovery cutoff in this action from February 24, 2006 to October 24, 2006.  A copy of the Amended Pretrial Order is attached as Exhibit 1 to the Declaration of Eli R. Greenstein in Support of Plaintiffs' Motion to Modify the Amended Pretrial Order to Extend the February 24, 2006 Fact Discovery Cutoff ("Greenstein Decl."), submitted herewith.[1]  This motion is brought pursuant to Federal Rule of Civil Procedure 16(b) and Civil Local Rule 16-2(d).  The parties have fulfilled their obligation to meet and confer pursuant to Civil Local Rule 16-2(d)(2), including discussing this matter in person.  Greenstein Decl., ¶¶2-3.  Defendants have indicated that they currently oppose an extension of the discovery cutoff.  *Id.*

As set forth herein, good cause exists to modify the discovery cutoff pursuant to Federal Rule of Civil Procedure 16(b).  This motion is based upon this Notice of Motion and Motion to Modify the Amended Pretrial Order to Extend the February 24, 2006 Fact Discovery Cutoff; and Memorandum of Points and Authorities in Support Thereof, the Greenstein Decl. and [Proposed] Order submitted herewith, the pleadings and documents contained in the underlying record, and any other evidence submitted before or during the hearing on this matter.

## I.     INTRODUCTION

Despite plaintiffs' best effort to proceed expeditiously with discovery in this case, the discovery process has been plagued with severe delays.  Inevitably, some of the delay is a result of the sheer magnitude and complexity of this case.  The vast majority of the delay, however, is a result of defendants' belated production of documents and unreasonable discovery tactics.  With less than three months remaining of a 14-month discovery window, defendants are still producing hundreds of thousands of pages of new documents.  For example, in September 2005, defendants inexplicably

---

[1]     All "Ex." references are to exhibits attached to the Greenstein Declaration.

PLAINTIFFS' REQUEST TO MODIFY THE AMENDED PRETRIAL ORDER TO EXTEND
FEBRUARY 24, 2006 DISCOVERY CUTOFF; MEMO OF Ps & As - C-01-0988-MJJ          - 1 -

produced **80,000 pages** of new responsive documents, more than **five months** after the Court's May 1, 2005 deadline for defendants' complete production of documents.  Ex. 15.  Just last week, defendants curiously produced thousands of additional pages of documents related to problems with Oracle Corporation's ("Oracle") Suite 11i software.  Ex. 62.  To date, defendants have still not explained why those documents were not produced by the May 1, 2005 deadline set forth in the Court's March 10, 2005 Amended Order Setting a Discovery Plan ("Discovery Plan").  Ex. 2 at 3.

Discovery has also been severely hampered by defendants' six-month delay in producing the court-ordered documents related to plaintiffs' accounting allegations.  During the March 1, 2005 discovery conference, Magistrate Judge Spero unequivocally ordered defendants to produce, *inter alia*, "**all of the documents regarding or related to the 46,000 debit memos and all documents related to the accounting treatment of those memos.**"[2]  *See* Ex. 3 at 54:20-25.  After months of plaintiffs' repeated requests, defendants refused to produce the accounting documents, forcing plaintiffs to move to compel.

In opposing plaintiffs' motion to compel in September 2005, defendants admitted that they only began to "focus" on gathering and producing "massive" amounts of accounting documents in August 2005, months after the May 1, 2005 deadline to produce documents.  Ex. 5 at 2.  At the October 18, 2005 hearing on plaintiffs' motion, Judge Spero noted that the Discovery Plan was crafted narrowly in part because defendants agreed to produce the full breadth of documents relating to the debit memos:

> My concerns here are as follows:  Number one, I'm concerned that during the course of setting up the very detailed discovery plan in this case, the **defendants argued and obtain[ed] a narrower scope of discovery in exchange for a commitment that all of the documents regarding all of these debit memos, including all the underlying documents would be committed**.  And that, to my mind, is clear as day in the transcript that that was the position taken at the time.  And you are changing your position.

Ex. 6 at 3:13-4:21.

---

[2]      All emphasis is added unless otherwise indicated.

1    On October 19, 2005, Judge Spero granted plaintiffs' motion to compel and ordered the

2 production of thousands of documents related to over 800 debit memos that defendants previously

3 refused to produce.  Ex. 4.  The production deadline, however, was not until November 18, 2005,

4 more than six months after the May 1, 2005 deadline for defendants to produce all responsive

5 documents, and almost a full year after plaintiffs requested the documents.  *Id*.  The Court also

6 indicated that plaintiffs may take additional discovery regarding the debit memo transactions upon a

7 showing of good cause after defendants' production on November 18, 2005.  *Id*.  ("This Order is

8 without prejudice to plaintiffs' right to come to this Court and seek additional production of

9 documents and electronic information related to the debit memos, upon showing of good cause.").

10 Notably, defendants did not produce all of the documents ordered by the Court before the November

11 18, 2005 deadline.  Exs. 61, 65.  Defendants were still producing thousands of documents on

12 November 23, 2005 pursuant to their "rolling" production and did not state when production would

13 be completed.  Exs. 56-58, 61, 65.  This violates the Court's October 19, 2005 Order to produce

14 documents "within 30 days."  Ex. 4.

15    The current discovery schedule only affords plaintiffs less than three months to review and

16 analyze defendants' belated productions, reconcile the information with documents and testimony

17 already provided, take substantive depositions, and complete the full breadth of discovery on

18 plaintiffs' accounting allegations.  Plaintiffs may also need to seek Court relief for additional

19 documents related to the debit memos as contemplated by the Court's October 19, 2005 Order.  Ex.

20 4.  Three months is simply not enough time for this process to run its course.  Indeed, defendants

21 admitted during the October 18, 2005 hearing on plaintiffs' motion to compel that plaintiffs' review

22 of the new production will take substantial time.  Ex. 6 at 9:2-4 ("***Let them examine all the***

23 ***electronic data which simply by itself would require a lot of work***.").  For this reason alone, the

24 discovery cutoff should be extended.

25    Many other delays have plagued discovery in this case, including: defendants' production of

26 thousands of unreadable and/or corrupted documents; defendants' four-month delay in providing

27 complete interrogatory responses; defendants' eight-month delay in producing documents related to

28 its Special Litigation Committee ("SLC"); and defendants' interference with third-party discovery.

1  The parties also have several outstanding discovery disputes that appear likely to require Court

2  intervention.  For example, defendants recently indicated that they still have not determined if they

3  will be producing additional documents related to a prior investigation by the United States

4  Securities and Exchange Commission ("SEC") into plaintiffs' accounting allegations.  Ex. 7.  This

5  and other discovery disputes will take substantial time to resolve, especially if motion practice is

6  necessary.

7        Plaintiffs would be severely prejudiced if the current discovery cutoff is not extended.  There

8  are less than three months left in the discovery period, and defendants (and many important third

9  parties) still have not produced documents called for by the Discovery Plan.  Plaintiffs still need to

10 review, analyze and interpret defendants' belated production of documents in conjunction with the

11 documents previously produced before taking meaningful substantive depositions.  Plaintiffs also

12 need to depose approximately 65 witnesses, including the 38 witnesses identified in the Discovery

13 Plan and additional witnesses discovered since March 2005.  Ex. 2 at 6.  These depositions have

14 been delayed primarily because defendants have delayed production of key documents and continue

15 to inundate plaintiffs with numerous depositions of plaintiffs' confidential witnesses.

16        In fact, defendants recently notified plaintiffs that they intend to take the depositions of 16 of

17 plaintiffs' confidential witnesses in the near future.  Ex. 63.  These depositions are in addition to the

18 15 confidential witness depositions currently noticed, and the 15 confidential witness depositions

19 already taken thus far in this case.  Most of these 50+ depositions of confidential witnesses were

20 noticed by defendants.  Given the upcoming holidays, it is unlikely that the parties will complete the

21 remaining 30 confidential witness depositions before the new year.  This leaves virtually no time to

22 conduct the additional 50-75 depositions before the discovery cutoff.

23        Accordingly, plaintiffs respectfully request a modification of the December 17, 2004

24 Amended Pretrial Order to extend the February 24, 2006 cutoff for non-expert discovery to October

25 24, 2006.[3]

26 _____

27 [3]     Plaintiffs have submitted a [Proposed] Order modifying the December 17, 2004 Amended

28 Pretrial Order to reflect plaintiffs' proposed discovery cutoff of October 24, 2006.  Accordingly, all

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 16(b), a pretrial scheduling order may be modified upon a showing of good cause.  *See* Fed. R. Civ. P. 16(b).  The court may modify the pretrial order "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Here, the current discovery cutoff cannot reasonably be met despite plaintiffs' diligence in this action.  From the outset of this case, defendants have repeatedly resisted discovery at every turn, forcing plaintiffs to relentlessly fight for the most basic documents relevant to their claims.  Now, with only three months remaining of a 14-month discovery window, defendants are still in the process of producing thousands of relevant documents and 50-75 witnesses still need to be deposed.  Accordingly, an extension of the discovery cutoff is both reasonable and necessary.

## III.  PLAINTIFFS HAVE DILIGENTLY CONDUCTED DISCOVERY SINCE DECEMBER 2004

From the very beginning of this case, plaintiffs have expeditiously sought discovery.  On December 9, 2004, only ***two days*** after the Court authorized the parties to begin propounding discovery, plaintiffs served their first set of document requests on defendants.  Ex. 8.  Plaintiffs also issued approximately fifty third-party subpoenas to Oracle customers, auditors and securities analysts on December 9, 2005.  Ex. 9.  On December 15, 2004, plaintiffs issued an additional fifty subpoenas to relevant third-parties.  Ex. 10.  On December 15-16, 2004, plaintiffs issued notices for at least five preliminary depositions of Oracle, pursuant to Federal Rule of Civil Procedure 30(b)(6).  Exs. 11-12.  On December 30, 2004, plaintiffs served their first set of requests for admissions on defendants.  Ex. 13.  On January 10, 2005, plaintiffs issued their first set of 14 interrogatories.  Ex. 14.  On March 10, 2005, Judge Spero entered the Discovery Plan.  Ex. 2.

Since that time, plaintiffs conservatively spent thousands of hours diligently prosecuting this case.  Plaintiffs have received and reviewed hundreds of thousands of pages of responsive

---

deadlines subsequent to the original February 24, 2006 cutoff have also changed, but the time intervals between each deadline remain the same.

documents from defendants and third parties and still have approximately 100 boxes of new documents to review.  Plaintiffs have dedicated countless hours to meeting and conferring with defendants and third parties and the parties have collectively exchanged hundreds of letters and phone calls regarding a variety of discovery issues. Plaintiffs have been forced to file multiple motions to compel documents from both defendants and third parties, and anticipate filing additional motions to compel in the near future.  Plaintiffs have taken and defended numerous depositions thus far, most of which are either preliminary depositions pursuant to Federal Rule of Civil Procedure 30(b)(6), or depositions of plaintiffs' confidential witnesses alleged in Plaintiffs' Revised Second Amended Complaint for Violations of Federal Securities Laws ("Complaint").  Plaintiffs have been unable to commence taking substantive depositions of Oracle's key percipient witnesses, principally because defendants still have not produced all responsive documents ordered by the Court in its Discovery Plan.  *See* Exs. 56-58, 61, 65.  Defendants also continue to inundate plaintiffs with countless deposition notices of confidential witnesses.  Ex. 63.

In sum, plaintiffs have been more than diligent in proceeding with discovery and have satisfied the "good cause" requirement of Federal Rule of Civil Procedure 16(b).

**IV.    AN EXTENSION OF THE CURRENT FEBRUARY 24, 2006 DISCOVERY CUTOFF IS NECESSARY TO MAKE UP FOR THE SUBSTANTIAL DELAYS IN DISCOVERY**

Plaintiffs served their first set of document requests almost a year ago.  Ex. 8.  Judge Spero entered the Discovery Plan more than eight months ago.  Ex. 2.  The Court set a deadline of May 1, 2005 for defendants to complete their production of all responsive documents.  *Id*. at 3.  Despite this unambiguous discovery schedule, defendants and numerous third parties have still not produced all of the documents ordered by the Court.  Defendants' unreasonable delays in responding to discovery have made it virtually impossible to complete non-expert discovery by February 24, 2006.

**A.    Defendants Belatedly Produced Over 80,000 Pages of New Responsive Documents Nearly Four Months After the Court's May 1, 2005 Deadline**

On September 12, 2005, six months after the Court entered the Discovery Plan, and four months after the Court's May 1, 2005 deadline for producing all responsive documents, defendants sent plaintiffs a letter with a DVD containing approximately ***80,000 pages of new documents***.  Ex.

15.  The letter provided no explanation for the belated production, stating only that: "[t]hese are additional documents that we have determined are responsive to the Court's March 10, 2005 Amended Order Setting a Discovery Plan.  *Id.*  This cryptic statement did not provide plaintiffs with any information about the type of documents defendants produced, and why the documents were not produced earlier.  Defendants' letter also stated that they would provide a "source log within the next three weeks."  *Id.*  As of November 28, 2005, plaintiffs had not received the source log.  Without the corresponding source log, plaintiffs are hampered in their ability to fully analyze the documents and ascertain additional witnesses to depose.

Oracle's inexplicable production of 80,000 pages (approximately 27 boxes) of responsive documents *four months* after the court-imposed deadline demonstrates the need for an extension of the current February 24, 2006 discovery cutoff.  Plaintiffs cannot even begin to notice depositions of substantive fact witnesses until they receive, review and analyze all responsive documents from Oracle.  Further, given defendants' belated production, plaintiffs cannot be sure that defendants have completed their "determination" of whether additional documents are responsive to the Discovery Plan.  Just last week, defendants abruptly produced thousands of additional pages of documents related to bug problems with Oracle's Suite 11i software.  Ex. 62.  Defendants also recently indicated that they were still assessing whether they will ultimately need to produce additional responsive documents related to the SEC's investigation of Oracle's debit memo transactions.  Ex. 7. Plaintiffs believe these documents must be produced.  This issue will likely cause additional delay.

**B.   Defendants Delayed the Production of Accounting Documents for Seven Months and Recently Produced Hundreds of Thousands of Pages of New Documents**

At the March 1, 2005 discovery conference, Magistrate Judge Spero unequivocally ordered defendants to produce the following documents in connection with plaintiffs' accounting allegations:

> So with respect to the accounting allegations, the subject matter is ***all of the documents*** regarding the on account clean up in the . . . relevant time period, ***all the documents*** regarding or related to the 46,000 debit memos and ***all documents*** related to the accounting treatment of those memos.

Ex. 3 at 54:20-25.  Defendants expressed their understanding of the Court's order by confirming that they would produce "every scrap of paper" related to the 46,000 debit memos.  Ex. 3 at 131:2-5.

PLAINTIFFS' REQUEST TO MODIFY THE AMENDED PRETRIAL ORDER TO EXTEND
FEBRUARY 24, 2006 DISCOVERY CUTOFF; MEMO OF Ps & As - C-01-0988-MJJ       - 7 -

1   *Seven months* have now passed, however, and plaintiffs still have not received all underlying source

2   documents related to the 46,000 debit memos.  Prior to defendants' recent production pursuant to the

3   Court's October 19, 2005 Order, the only accounting document defendants initially produced was a

4   500-page spreadsheet of data that appears to have been compiled solely for purposes of this

5   litigation.  Defendants did not produce any of the debit memos or the underlying source documents

6   for each debit memo transaction and audit trail, including checks, credit memos, invoices, and cash

7   receipts journals.  The data compilation produced by defendants also failed include underlying

8   information regarding the transactions related to thousands of debit memos.  On its face, one

9   spreadsheet does not comply with the Court's Discovery Plan.

10          On October 7, 2005, after months of meet and confers, letter briefing and a hearing before

11   Judge Spero on August 12, 2005, the parties submitted a joint letter summarizing the parties'

12   respective positions on the debit memo discovery issue.  Ex. 5.  In that letter, defendants admitted

13   that they actually *had* the source documents underlying the debit memo transactions, but merely

14   *chose* not to produce them before the May 1, 2005 deadline.  *Id*. at 1-2.  Defendants also admitted

15   that they only began to "focus" on preparing and producing the accounting documents long after the

16   Court's May 1, 2005 production deadline:

17              ***Since August, Oracle has focused its efforts on preparing and producing a
                vast quantity of accounting data concerning the transactions associated with the
18              debit memos**, which includes detail of the sub-ledger entries for those underlying
                transactions as well as a number of the other items that Plaintiffs have requested. . . .
19              From this effort, **Oracle is prepared to start by making a rolling production of
                accounting data for all transactions underlying (1) all of the debit memos with a
20              dollar value of $1 million or more (68 DMs) and (2) a random sample of debit
                memos**. . . .*

21   *Id*. at 2.  This admission is startling.  Given Judge Spero's unambiguous order during the March 1,

22   2005 hearing and defendants' representations that they would produce every scrap of paper related to

23   the debit memos, defendants should have "prepar[ed] and produc[ed] a vast quantity of accounting

24   data" seven months ago in compliance with the May 1, 2005 deadline.  That includes the debit

25   memos and underlying source documents.

26          On October 18, 2005, the Court recognized the insufficiency of defendants' initial production

27   by ordering them to produce documents and information related to over 800 of the 46,000 debit

28

1    memos, including electronic and paper source documents.  Ex. 4.  The Court also made it clear that a

2    "sampling" of the other 45,000+ debit memos must also be produced.  Ex. 6 at 15:11-13.  The Court

3    gave defendants 30 days – until November 18, 2005 – to produce the accounting documents.  Ex. 4.

4    Notably, the Court also expressly gave plaintiffs leave to seek additional documents if they could

5    make a good faith showing as to why those documents were needed.  Exs. 4, 6 at 15:5-9.

6         On November 16, 2005, defendants produced over 20,000 pages (13 boxes) of new

7    accounting documents.  Ex. 56.  Curiously, defendants stated that the production would be on a

8    "rolling" basis, which violates the Court's 30-day deadline.  *Id.*  On November 18, 2005, defendants

9    produced a CD and another 28 boxes of accounting documents.  Ex. 57-58.  On November 21, 2005,

10   defendants produced an additional 15 boxes of accounting documents.  Ex. 61.  On November 23,

11   2005, defendants produced 49 additional boxes of documents.  Ex. 65.  In total, defendants have

12   produced over ***100 boxes*** of new documents only three short months before the discovery cutoff.

13        Defendants' repeated refusal to produce accounting documents has already resulted in over

14   seven months of delay.  Plaintiffs have been forced to relentlessly fight defendants just to get them to

15   begin collecting accounting documents that the Court already ordered them to produce in March

16   2005.  Now that the Court has ordered defendants to produce the accounting documents for the

17   second time, plaintiffs need additional time in the discovery schedule to review defendants' new

18   production, depose Oracle witnesses and determine whether additional discovery is needed.  There is

19   simply not enough time left in the current discovery schedule to accommodate this process.

20        **C.     Prior to Entry of the Discovery Plan, Defendants Repeatedly Sought
21               to Narrow Discovery to an Unreasonable Scope Which Caused
                 Significant Delays**

22               **1.     Defendants Delayed Discovery by Refusing to Produce
23                       Documents Outside of a Limited "Speakers Group"**

24        From the inception of discovery, defendants have unreasonably sought to limit their search

25   for documents to a hand-picked "speakers group" consisting of only six individuals and their direct

     reports.  Exs. 16 at 3; 17.  Notably, defendants' proposed "speakers group" failed to include many
26
     crucial witnesses, including many witnesses expressly cited in the Complaint.  Defendants' proposed
27
     list also did not include Oracle executive Ivgen Guner, the Oracle executive identified by Jennifer
28

1  Minton in her deposition as her direct report responsible for the financial analyses underlying

2  Oracle's "upside reports," which purportedly were Oracle's primary forecasting documents.  Exs.

3  18-20.  Defendants have refused to adequately explain why Ms. Guner was omitted from defendants'

4  list of "direct reports."  Exs. 19-20.  Thus, plaintiffs cannot be sure that they have received

5  documents from the files of all relevant witnesses under the Discovery Plan.

6          On March 1, 2005, the Court rejected defendants' "speakers group" limitation and ruled that

7  plaintiffs were entitled to discovery of at least 50 additional Oracle employees, including area vice

8  presidents, and countless other relevant witnesses identified by plaintiffs' counsel during the

9  discovery conference.  Ex. 2 at 1.  The Court also gave plaintiffs leave to provide defendants with

10  additional names of individuals, as they arose during the litigation.  *Id.*  As recently as October 19,

11  2005, plaintiffs sought the files of Julie Chan, Oracle's liaison with its auditors, which had not been

12  produced despite Ms. Chan's relevance to this litigation.  Ex. 64.  Defendants' "speakers group"

13  limitation continues to cause substantial delay in obtaining all relevant documents.

14              **2.      Defendants Delayed Discovery of Documents Related to Suite
                          11i**

15

16          Defendants also sought from the outset of this case to unreasonably narrow the scope of

17  documents related to Oracle's Suite 11i software.  Ex. 21.  Ignoring the express language of the

    Ninth Circuit's opinion on the importance of plaintiffs' specific allegations of Suite 11i problems,
18
    defendants wrongfully asserted that discovery regarding Suite 11i integration problems was only
19
    relevant to the extent it related to lost sales opportunities or sales forecasts.  Ex. 21 at 1.  ("[O]nly
20
    documents that refer to 11i integration problems in connection with lost sales opportunities or sales
21
    forecasts are relevant to this case.")
22
            The Court rejected defendants' unreasonable limitation on Suite 11i discovery.  The
23
    Discovery Plan allowed much broader discovery into Suite 11i problems, including interoperability
24
    and integration problems unrelated to lost sales.  *Compare* Ex. 2 at 2 *with* Ex. 21.  Nevertheless,
25
    defendants' position on Suite 11i discovery resulted in substantial delay.  In fact, just last week
26
    defendants unexpectedly produced thousands of pages of new documents regarding problems with
27
    Suite 11i. Ex. 62. Defendants again failed to provide any explanation of why those documents were
28

1   not produced by the Court's May 1, 2005 deadline.  *Id*.  Plaintiffs may need to seek additional

2   discovery into Suite 11i problems if facts learned in these new documents and future depositions

3   warrant new discovery.  The current discovery schedule leaves no room for the possibility of

4   additional Suite 11i discovery.

5       **D.   Defendants' Production of Corrupted and Unreadable Files Caused
           Substantial Delays in Plaintiffs' Document Review**

6

7           Another issue delaying plaintiffs' ability to advance discovery is defendants' production of

8   corrupted and illegible documents.  In May 2005, defendants began producing purportedly

9   responsive documents on CDs.  After reviewing a sample of the documents produced by defendants,

10  plaintiffs discovered numerous unreadable and corrupted files. Ex. 22.  Plaintiffs promptly informed

11  defendants of this fact, yet defendants denied the problem.  Exs. 22-23.  After plaintiffs provided

12  defendants with numerous examples of corrupted and unreadable files (*see* Exs. 22, 24), defendants

13  left plaintiffs' counsel a voicemail on June 16, 2005, admitting that the files had indeed been

14  corrupted:

15          What we found so far is that there are a certain number of documents that were .tiffs
            or .jpegs that were scanned in a way that is, that makes, that causes them to be
16          illegible, and we've had them rescanned. . . .  In some instances there were files that
            had, for whatever reason through the process, received the wrong extension, so a file
17          that should have been an Excel file, for example, received a dot something else as an
            extension . . . and we fixed that.  And we will produce, or prepared in very short
18          order, I'm hoping by tomorrow . . . to produce a cd with replacement documents. . . .
            The third instance, there are some documents that were password protected that we
19          found and we are going to crack the password on those documents. . . .  Then in the
            last instance, there are some files that are actually just corrupted files and they were
20          corrupted when they were gathered. . . .

21  Defendants also confirmed the data corruption in letters dated June 8, 2005, June 16, 2005 and June

22  20, 2005. Ex. 25.  Defendants later reproduced some corrected CDs on June 20, 2005, more than six

23  weeks after the May 1, 2005 deadline.  Ex. 26.  As recently as October 20, 2005, defendants

24  produced additional corrected copies of corrupted documents previously produced.  *Id.* at 2.  This

25  issue has delayed the discovery process.

26

27

28

1      **E.      Defendants Did Not Submit Complete Responses to Plaintiffs'**
2              **Interrogatories Until Four Months After the Interrogatories Were**
               **Due**

3              On January 10, 2005, plaintiffs served their first set of interrogatories on defendants.  Ex. 14.

4      Pursuant to Federal Rule of Civil Procedure 33, defendants' responses were due February 9, 2005.

5      After plaintiffs offered defendants a two-week extension to file their responses, defendants served

6      plaintiffs with boilerplate responses on February 14, 2005.  Ex. 27.  Defendants finally provided

7      plaintiffs with substantive "supplemental responses" on February 28, 2005.  Ex. 28.  For many of the

8      interrogatories, however, including Nos. 4, 6 and 8-13, defendants stated that they were still

9      investigating the facts underlying the responses and would continue to supplement at a later date.

10     Ex. 29.

11             After countless meet and confers and letter briefs to the court, defendants finally served their

12     "second" supplemental interrogatory responses on March 30, 2005.  Ex. 30.  These responses were

13     also incomplete.  Ex. 31.  Defendants served their "third" supplemental responses on June 21, 2005,

14     more than ***four months*** after defendants' deadline under Federal Rule of Civil Procedure 33.  Ex. 32.

15     Defendants' failure to timely respond to plaintiffs' interrogatories has impeded plaintiffs' ability to

16     advance their case.  Plaintiffs learned crucial facts and admissions from defendants' interrogatory

17     responses, including the identity of relevant customers, lost deals, and facts pertaining to defendants'

18     purported defenses.  Had plaintiffs received timely responses as contemplated by Rule 33, the

19     discovery process would have proceeded at a faster pace.  Defendants' four-month delay in serving

20     complete interrogatory responses injected unnecessary delay into the discovery schedule.

21     **F.      Defendants Resisted Discovery of Thousands of Relevant Documents**
               **Related to Oracle's Special Litigation Committee for Eight Months**
22             **Until the Court Ordered Production**

23             Plaintiffs' December 9, 2004 document requests sought production of all documents related

24     to Oracle's SLC, including the final SLC Report.  Ex. 8 at 13.  Defendants repeatedly objected to

25     this request and refused to produce the SLC documents.  Ex. 33 at 24-25.  The Court's Discovery

26     Plan ordered defendants to produce all documents reviewed by the SLC, and expressly authorized

27     plaintiffs to file a motion to compel the SLC report itself.  *See* Ex. 2 at 3.

28

1    Plaintiffs filed their motion to compel the SLC report on June 3, 2005.  The motion was

2  heard by the Court on July 29, 2005.  On August 5, 2005, the Court granted in part and denied in

3  part plaintiffs' motion.  Ex. 34.  The Court ordered defendants to produce the SLC report, exhibits

4  and interview memoranda attached to the report, but denied plaintiffs' motion to compel the SLC's

5  interview notes taken by the SLC's counsel that were not reviewed by the SLC itself.  *Id.*

6    Despite the Court's August 5, 2005 Order to produce the SLC report and corresponding

7  interview memoranda "***forthwith***," defendants did not produce the documents until August 22, 2005,

8  only after plaintiffs sent multiple letters demanding compliance with the Court's August 5, 2005

9  Order.  Exs. 35-36.  This production consisted of ***tens of thousands*** of pages of new documents that

10  plaintiffs need to review and analyze prior to taking substantive depositions.

11    Notably, defendants' production of SLC documents on August 22, 2005 was incomplete.  On

12  September 12, 2005, defendants produced hundreds of pages of additional exhibits that were

13  "***inadvertently missed*** in the August 22, 2005 production of the SLC Report and Exhibits."  Ex. 37.

14  Additionally, the parties still dispute certain aspects of the SLC production.  Plaintiffs still dispute

15  whether defendants' assertions of privilege with respect to the SLC production comply with the

16  Court's August 5, 2005 Order.  There is also a dispute regarding defendants' refusal to produce 22

17  CDs of email produced to the SLC, which contain ***millions*** of pages of additional documents.

18  Defendants' tardy production of the SLC documents prevented the parties from meeting and

19  conferring on those issues until recently.  Additional motion practice may be necessary.  Defendants'

20  delay in producing the SLC report, which had already been compiled, bound and copied years before

21  discovery in this case, is another reason for the Court to extend the February 24, 2006 discovery

22  cutoff.

23    **G.    Other Delays in Defendants' Production**

24      **1.    Delay in Producing Deposition Transcripts from the Derivative
              Case**

25

26    On December 21, 2004, defendants produced over 50,000 pages (18 boxes) of documents

27  from the Oracle derivative litigation in connection with their initial disclosures.  However,

28  defendants did not produce the deposition transcripts in the derivative case until June 8, 2005, after

1    plaintiffs granted defendants an extension to produce the transcripts.  Exs. 38-39.  Not having the

2    derivative deposition transcripts until six months after discovery commenced has impeded plaintiffs'

3    ability to litigate their case.  Furthermore, defendants improperly redacted entire pages of the

4    transcripts and withheld exhibits marked at those depositions.  Ex. 42.  To date, defendants have not

5    produced a privilege/redaction log for the transcripts.  This has caused additional delay.

6                          **2.      Source/Privilege Logs**

7            Although defendants produced over 50,000 pages of documents in connection with their

8    initial disclosures on December 21, 2004, defendants did not produce source logs for those (or any

9    other) documents until May 19, 2005, five months after production.  Ex. 41.  Further, defendants

10   have not produced a privilege log for any of the documents produced with their initial disclosures.

11   This is significant because many of the documents related to the derivative case are replete with full

12   pages of redactions.  Ex. 42.  Plaintiffs have been denied their rightful opportunity to assess and/or

13   challenge defendants' assertions of privilege, which will take additional time once defendants

14   produce a privilege log.

15   **V.      THIRD PARTY DISCOVERY HAS BEEN SIGNIFICANTLY DELAYED**

16           In addition to defendants' delays in producing documents from Oracle, defendants have also

17   impeded discovery from third parties.  Immediately after plaintiffs served their third-party subpoenas

18   on December 9 and 15, 2004, defendants attempted to interfere with the production of responsive

19   documents encouraging them to resist plaintiffs' discovery.  Ex. 43.  The Court recognized

20   defendants' inappropriate conduct and admonished them in open court.  Ex. 44 at 17:20-24.  ("I'll

21   tell you, the single most disturbing document that I read in this record was the letter from someone

22   internally at Oracle to a customer saying, '[w]e're going to resist all of these subpoenas just like

23   we're resisting the case.'  That is – I guarantee you, that won't happen here.")

24           Defendants also attempted to delay third-party discovery by sending multiple informal letter

25   requests to the Court seeking a blanket stay of all third-party discovery.  Ex. 45.  Those informal

26   requests were rejected.  Ex. 46.  Defendants' campaign to stall third-party discovery culminated in

27   defendants' formal motion for a protective order filed on January 10, 2005.  Ex. 47.  Defendants'

28   position throughout their letter requests and motion was that discovery should be "sequenced," *i.e.*,

1    plaintiffs should not be allowed to take *any* discovery from third parties, until "first-party" discovery

2    was complete.  *Id*. at 6.

3         The Court rejected defendants' notion of "sequenced" discovery.  Ex. 44 at 11 ("By

4    sequencing, I think you're actually incorrect, they don't have [to] wait until they got a bunch of

5    discovery from Oracle to get third party discovery.  I certainly would never force somebody in this

6    compacted schedule, to do that.").  The Court stayed third-party discovery, however, to adopt the

7    Discovery Plan which allowed tailored discovery from third parties, including 100 subpoenas to

8    Oracle customers.  *See* Ex. 2 at 7-8.

9         Defendants' interference effectively stalled plaintiffs' ability to take third-party discovery

10   until mid-March 2005.  It was not until March 10, 2005, more than *three months* into the 14-month

11   discovery period, that the formal Discovery Plan was issued resolving defendants' various attacks on

12   plaintiffs' third-party discovery.

13        Upon the entry of the Court's March 10, 2005 Discovery Plan, plaintiffs immediately

14   reinitiated contact with each subpoenaed third party to resume the Rule 45 process.  Plaintiffs have

15   diligently worked with Oracle's customers to resolve their issues and have received responsive

16   documents from numerous third parties.  However, many third parties have delayed or altogether

17   refused to produce crucial documents requested by plaintiffs' subpoenas many months after those

18   subpoenas were served.  For example, plaintiffs were forced to move to compel production of

19   documents from PRG Schultz, Inc., the third-party audit recovery firm involved with Oracle's

20   customer overpayments.  Plaintiffs' motion to compel was granted on August 23, 2005, many

21   months after the subpoena was served.  Ex. 60.

22        Plaintiffs have also been delayed in obtaining critical accounting documents from Oracle's

23   auditors, in part due to defendants' interference.  Ex. 48.  For example, Arthur Andersen LLP

24   produced only 51 pages of documents, even though it was Oracle's auditor for the entire Class

25   Period (between December 14, 2000 and March 1, 2001).  Exs. 48-49.  Ernst & Young LLP, which

26   was involved in the SLC investigation, also refuses to produce all responsive documents related to

27   the 46,000 debit memo transactions.  Ex. 50.  During the discovery conference on August 12, 2005,

28   the Court recognized that the auditors will likely need to produce additional documents. Ex. 51 at 3

1   ("[W]e've got a good scope of discovery . . . so I don't think the auditors are in a position to take a

2   very hard stand and I think you ought to encourage [the auditors] to avoid a motion to compel.").

3   Plaintiffs are currently preparing a motion to compel documents from Oracle's auditors, which will

4   be filed in the near future.

5          Other examples of third-party delay confirm that additional time is needed to complete

6   discovery.  Plaintiffs belatedly received responsive documents from Eli Lilly & Co. ("Eli Lilly") and

7   Household International ("Household"), two indispensable Oracle customers who plaintiffs

8   subpoenaed in December 2004.  Exs. 52-53.  Obviously, documents from Eli Lilly and Household

9   are critical to plaintiffs' accounting allegations, as those customers were specifically cited in the

10  Complaint.  Yet those third parties did not produce substantive documents until **_ten months_** after the

11  subpoenas were served, and **_six months_** after the Court entered the Discovery Plan.

12         Other Oracle customers are still resisting discovery.  Third party Pfizer, Inc. ("Pfizer") has

13  indicated that it may refuse to produce documents related to its debit memo transactions under

14  $100,000, citing the Court's October 19, 2005 order limiting what defendants must produce.  Ex. 54.

15  Pfizer's unreasonable position would exclude all of the debit memo transactions for Pfizer because

16  they were all under $100,000.  Yet these transactions are certainly relevant as they were expressly

17  cited in the Complaint.  Pfizer's position also suggests that defendants may again be interfering with

18  the Rule 45 process by providing customers with Court orders that do not pertain to them.  Plaintiffs

19  may need to file a motion to compel documents from Pfizer.

20         Finally, many third parties including Sprint, Inc., an Oracle customer expressly cited in the

21  Complaint, are having trouble locating and producing documents related to their debit memo

22  transactions simply because plaintiffs do not have enough specific information from Oracle to assist

23  the customers in their search.   Ex. 55.   Once Oracle completes its production of accounting

24  documents, that information may well assist third parties in locating additional documents related to

25  their debit memos.  This will take substantial time.

26         In sum, delays in obtaining discovery from crucial percipient third-party witnesses have

27  substantially hampered plaintiffs' ability to move their case forward.  As a result, more time is

28  needed to complete fact discovery.

## VI.    SUMMARY OF PLAINTIFFS' REMAINING DISCOVERY

As set forth in detail above, there is still a substantial amount of discovery that needs to take place before the February 24, 2006 cutoff.  The following is merely a summary list of remaining discovery.

**_Depositions_**: The parties still need to take approximately 50-75 depositions, including 30+ depositions of plaintiffs' confidential witnesses, the 38 Oracle employees and defendants identified in the Discovery Plan, and numerous other witnesses and third parties identified since the Discovery Plan was entered.  Plaintiffs are also likely to identify additional witnesses during depositions and review of defendants' belated document production.  Plaintiffs' believe they will use the maximum 65 deposition limit set forth in the Amended Pretrial Order.

**_Defendants' Belated Document Production_**: As of November 23, 2005, defendants were still producing tens of thousands of pages of new documents. Exs. 56-58, 61-62, 65.  Plaintiffs still need to review and analyze these documents along with defendants' belated production of 80,000+ pages of documents in September 2005.    Further, the parties are still discussing a potential production of a "sampling" of debit memos as discussed by the Court in the October 18, 2005 hearing on plaintiffs' motion to compel.  Ex. 59.  Defendants have refused to produce such a sampling at least until plaintiffs review the 100+ boxes of accounting documents recently produced. *Id.*  Defendants have also indicated they may have additional documents related to the SEC investigation of plaintiffs' accounting allegations, which plaintiffs believe must be produced. Ex. 7. These issues will cause further delay and additional discovery and/or motion practice may be necessary.

**_Third-Party Discovery_**: Numerous third parties, including Oracle's auditors and many customers, have not produced documents called for under the Discovery Plan. *E.g.*, Exs. 48-50, 54. Plaintiffs are still in the process of meeting and conferring with many third parties regarding their productions which may need to be supplemented based on the new accounting documents produced by defendants.  Obtaining all relevant documents from approximately 100 third parties will take many additional months.  Motion practice may be necessary.

1   ***Miscellaneous Discovery***: The parties still need to respond to their respective contention

2   interrogatories, which were stayed by the Court in March 2005.  Ex. 2 at 10.  These interrogatories

3   include requests for "all facts" regarding plaintiffs' claims and defendants' affirmative defenses

4   some of which cannot be completed until fact discovery is nearly complete.  The parties will likely

5   propound additional discovery, including interrogatories and requests for admissions once

6   defendants complete their production of documents and depositions have concluded.  Motion

7   practice may be necessary.

8        Simply put, massive amounts of discovery need to be completed before plaintiffs can

9   adequately prove their case at trial.  Accordingly, an extension of the current discovery deadline is

10  both reasonable and necessary.

11  **VII.    CONCLUSION**

12       Based on the foregoing delays in discovery, plaintiffs respectfully request a modification of

13  the Court's Amended Pretrial Order to extend the deadline for non-expert fact discovery until

14  October 24, 2006.

15  DATED:  November 28, 2005              Respectfully submitted,

16                                        LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
17                                        MARK SOLOMON
                                          DOUGLAS R. BRITTON
18                                        VALERIE L. McLAUGHLIN

19

20                                        _____
                                                         /s/
21                                                  MARK SOLOMON

22                                        655 West Broadway, Suite 1900
                                          San Diego, CA  92101
23                                        Telephone:  619/231-1058
                                          619/231-7423 (fax)

24

25

26

27

28

PLAINTIFFS' REQUEST TO MODIFY THE AMENDED PRETRIAL ORDER TO EXTEND
FEBRUARY 24, 2006 DISCOVERY CUTOFF; MEMO OF Ps & As - C-01-0988-MJJ          - 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
JENNIE LEE ANDERSON
MONIQUE C. WINKLER
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

T:\CasesSF\Oracle3\MOT00025201.doc

<u>DECLARATION OF SERVICE BY MAIL AND FACSIMILE</u>

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.     That on November 28, 2005, declarant served the **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY THE AMENDED PRETRIAL ORDER TO EXTEND THE FEBRUARY 24, 2006 DISCOVERY CUTOFF; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** by depositing a true copy thereof in a United States mailbox at San Francisco, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.  Declarant also served the parties by facsimile.

3.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 28th day of November, 2005, at San Francisco, California.

_____
                        /s/
              MARCY MEDEIROS

ORACLE III (LEAD)

Service List - 11/28/2005   (201-064-1)

Page 1 of  1

## Counsel For Defendant(s)

Donald M. Falk
Lee H. Rubin
Shirish  Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306
  650/331-2000
  650/331-2060 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL  60606
  312/782-0600
  312/701-7711 (Fax)

Dorian  Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA  94065
  650/506-5200
  650/506-7114 (Fax)

## Counsel For Plaintiff(s)

Mark  Solomon
Douglas R. Britton
Valerie L. McLaughlin
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
  619/231-1058
  619/231-7423 (Fax)

Sanford  Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
  415/288-4545
  415/288-4534 (Fax)