PAGE 125

125

1 integration of the various parts of the 11i Suite with each
2 other. You know, with the data base part of the suite, you
3 know, with each other, et cetera, et cetera.
4 If that's what you believe the false statement is,
5 that's what you get discovery into.
6 MR. RUBINSTEIN: Again, I think that --
7 THE COURT: Okay. Okay. We have got it. That's
8 done.
9 MR. RUBINSTEIN: Okay.
10 THE COURT: Okay. And then in terms of the timing of
11 the production, you just cooperate with the third parties and
12 work with them. I'm going to be very sensitive to their
13 concerns in terms of that, and so I expect you to cooperate.
14 How about the time period is June 1, 2000 to June 1,
15 2001?
16 MR. WILLIAMS: For non-parties?
17 THE COURT: Everybody. Everything.
18 MR. WILLIAMS: You know, we originally had asked for
19 a much broader period than that and in the meet-and-confers
20 what we said is, look, we are perfectly willing to come down to
21 say when the Form 10K was filed for fiscal year 01, and that
22 was in August, and it makes sense because the fiscal year ended
23 on June 30.
24 So if we stopped production of responsive documents
25 at June 1st, your Honor, we cannot capture even the entire next

PAGE 126

126

1 quarter. It would just stop right in the middle.
2 And the defense is going to be -- and we have seen it
3 in the derivative action, in Judge Strine's opinion that there
4 is a hockey stick effect which Oracle relies on on a
5 quarter-to-quarter basis and that happens in the last month of
6 the quarter.
7 So if we are restricting discovery to end before that
8 last month of the quarter --
9 THE COURT: Well, except the quarter that ends
10 June 30, 01 itself isn't at issue in this case. It's the prior
11 quarters.
12 So the only reason I go out is to capture documents
13 that may have additional relevance to what happened before.
14 MR. WILLIAMS: I agree with that, your Honor, but,
15 again, one of the things that Larry Ellison said when the miss
16 in our quarter is that a lot of these deals were pushed out to
17 the next quarter. Not lost, but pushed out to the next
18 quarter. And they also said that a lot of the deals ended up
19 closing in the final month of the quarter.
20 So one could -- one would imagine that, say, for
21 instance --
22 THE COURT: So the miss in the third quarter of 01,
23 which is -- ends in what, March?
24 MR. RUBINSTEIN: The Q3 ended on February 28.
25 THE COURT: So?

PAGE 127

127

1 MR. RUBINSTEIN: But the statements that Mr. Ellison
2 made were right at the end of the third quarter. And so what
3 happens later --
4 MR. WILLIAMS: To the end of the fourth quarter it
5 should be.
6 MR. RUBINSTEIN: Doesn't matter. Again, the
7 relevance of any -- of any later created documents would be
8 only with respect to matters that refer back to Q3 itself. I
9 think the Court is right that Q4 is not an issue in this case.
10 THE COURT: What do you think about my time period?
11 MR. RUBINSTEIN: We could accept that.
12 THE COURT: Okay. That's the time period. June 1,
13 2000 to June 1, 2001 and documents that refer to events during
14 that period which may have been generated at a later time.
15 15, analysts and media organization. You have
16 already got that, right?
17 MR. WILLIAMS: Think so, your Honor.
18 THE COURT: On all these ones where I say you have
19 got agreement, make sure you put that scope in the order.
20 Auditors and accountants.
21 MR. RUBINSTEIN: Your Honor, we would suggest that
22 the scope be the same as the scope we have already worked out.
23 THE COURT: Right. Why shouldn't it be that?
24 MR. SOLOMON: Are you talking about the conference,
25 your Honor?

PAGE 128

128

1 THE COURT: Yes, sir.
2 MR. SOLOMON: The reason is, your Honor, that -- and
3 I think we have cited a case or there is abundant law to this
4 effect; that is, where you have accounting allegations in a
5 securities fraud case, typically I think this doesn't take us
6 outside of the typical arena, you would need all of the work
7 papers to get an overall understanding and comprehension of
8 just what went on with the financial statements at issue.
9 For example, we have the accounting allegations
10 concerning the end of November 2000 adjustments. They claim
11 that there was no impact on the financial statements. We
12 obviously need to look at what the auditors examined with
13 respect to that issue apart from anything else.
14 Also, there was forecasting allegations in our case.
15 What accountants -- what auditors do when they are auditing
16 companies, as I'm sure you are familiar, is they look at
17 internal controls. They look at management integrity. We need
18 all that stuff. That is clearly relevant to this case. In
19 order to --
20 THE COURT: Indulge me a little bit. Why is that
21 relevant to this case?
22 MR. SOLOMON: Well, there is going to be a defense --
23 there's a number of defenses we know about. One is they don't
24 even hit the financial statements.
25 If it did hit the financial statements, the defense

SHEET 17   PAGE 129

**129**

1 would be the defendants didn't know about it for whatever
2 reasons.
3          And one of the reasons they will say the defendants
4 didn't know about it was because the auditors passed on it.
5          Why did the auditors pass on it? Again, there will
6 be examinations in the audit work papers of what management
7 representations were as to -- in other words, to get a picture
8 of whether or not management knew, whether they should have
9 known, what the accountants thought about the accounting
10 treatment or if they knew about it, how it affected the
11 financial statements ultimately all needs to be examined in the
12 context of Oracle's overall financial statements.
13          And our experts and auditors and courts have
14 concluded time and again the only way to do that is to get all
15 of the papers. Is that difficult? No. They are always
16 organized by the auditors.
17          Very simply, they are ready to be produced right now,
18 I would anticipate --
19          THE COURT: I'm sure they are on a disk.
20          MR. SOLOMON: -- or they could be very quickly.
21          MR. RUBINSTEIN: Your Honor, going back to a comment
22 I believe you made earlier today.
23          This is not an accounting case in which there is some
24 allegation about overarching policies. It's about a particular
25 event that occurred on a particular date involving a finite

PAGE 130

**130**

1 series of transactions.
2          We have agreed to have the outside auditors produce
3 documents that relate to the accounting treatment of those
4 debit memos. I don't think there is any disagreement there.
5          THE COURT: Right.
6          MR. RUBINSTEIN: The rest of it I, frankly, just
7 don't understand.
8          And there is no allegation in this complaint about a
9 lack of internal controls as it relates to the forecasting
10 process.
11          I mean, I just think that this -- this is just way
12 far afield. And to the extent that there are work papers that
13 relate specifically to this debit memo, I don't have a problem
14 with that. But I think anything else is just a fishing
15 expedition and this is not like every other accounting case.
16 It's a very narrow issue. Either it hit revenue or it didn't.
17          And the audit trail we have agreed to produce that
18 and what the accounting treatment was, that's fine. But I
19 think it ought to be restricted to that issue because that's
20 what's went pled.
21          MR. SOLOMON: And, your Honor, ultimately the
22 auditors had to sign off on the fiscal year, not just the
23 quarter in question, and how material the events were that we
24 alleged, to what extent they were known and to what extent the
25 auditors signed off on them with knowledge is all relevant to

PAGE 131

**131**

1 our case.
2          THE COURT: Well, you get all of that by getting
3 every scrap of paper in that audit that has anything to do with
4 the 49,000 debit memos, isn't it?
5          MR. SALPETER: 46.
6          THE COURT: Whatever. 2000 debit memos between us
7 friends . . .
8          MR. SOLOMON: One element to the case, your Honor.
9 Another elements to the case is the forecasting. Expenses,
10 expenses in relation to 11i are all embraced within those
11 allegations.
12          THE COURT: Yes. They didn't audit the forecasts.
13          MR. SOLOMON: No, but certainly the auditors would
14 have looked at the quality of their forecasting function.
15 That's a function of the auditors, and they will have done
16 that. They will do that in every case in which they audit.
17          THE COURT: Why don't I add that? Okay. Why don't I
18 do that? We will say that the auditors have to produce
19 everything in their files related to the 49,000 -- to the
20 accounting treatment of the 49,000 -- related to the 49,000
21 debit memos and any audit of the forecasting function at
22 Oracle.
23          MR. SOLOMON: All right. And what about the
24 expenses?
25          THE COURT: Does that work? Does that work? I mean,

PAGE 132

**132**

1 if it did, audit the forecasting function, it's probably
2 relevant.
3          MR. SOLOMON: The expenses, your Honor, and their
4 financial function.
5          THE COURT: Well, if you -- if the auditors raise
6 that the forecasting function was flawed in the following six
7 ways and you continued to rely on the false forecasting in
8 making these projections, maybe it's relevant. I don't know.
9          MR. RUBINSTEIN: Your Honor, the problem I have with
10 that, it's not been pled. There is no theory in this case that
11 there was a failure of control and that there was some
12 fundamental flaw in the forecasting process.
13          THE COURT: Well, it's an underlying. The allegation
14 is that you forecast -- well, maybe you are right.
15          The allegation is that you forecast -- well, the
16 allegation is that you forecast wrongly, right, is that you
17 made forecasts when, in fact, you knew the forecasts were
18 inaccurate.
19          They were inaccurate, you knew, because the economy
20 was, as you knew, was having a greater impact on sales and, in
21 addition, you knew that the 11i wasn't going as well as you
22 were representing in your forecasts it would go.
23          If the forecasting function was audited, why wouldn't
24 that audit have something do with -- why wouldn't it -- an
25 auditor looking at that, maybe they came up with it and maybe

PAGE 133

133

1  they didn't, that there were these failings in your forecasting
2  function. Maybe they brought it to management's attention and
3  said, "You are not properly accounting for this. You are not
4  properly accounting for that," and so -- or you didn't. And
5  you say, "We had it audited. We have got a validated
6  forecasting function and we followed it, and the auditor signed
7  off on it."
8           I don't know. Are we talking about anything? Is
9  there anything --
10          MR. RUBINSTEIN: No, no, no.
11          MR. SOLOMON: Your Honor --
12          THE COURT: Do the auditors do this?
13          MR. SALPETER: No, because this --
14          MR. SOLOMON: Your Honor, the --
15          THE COURT: Stop. One at a time.
16          MR. SALPETER: This is way beyond the scope of the
17 audit here. The audit is --
18          THE COURT: Okay.
19          MR. SALPETER: -- addressed to the financial
20 statements.
21          THE COURT: That's fine. Did the auditors and
22 accountants here not audit the forecasting functions? You tell
23 me that and you don't get discovery into it.
24          MR. RUBINSTEIN: I'm not aware of any.
25          THE COURT: That's a little different.

PAGE 134

134

1           MR. SOLOMON: The fact that we are having this
2  discussion, I think, reinforces my point that I think we need
3  all of the work papers.
4           THE COURT: No, it doesn't. That is truly the cart
5  before the horse.
6           MR. SALPETER: Your Honor --
7           MR. SOLOMON: Thanks for putting it that way.
8           THE COURT: In any event --
9           MR. SALPETER: Your Honor, can I make one other
10 point?
11          Their allegation isn't that the forecasting process
12 was flawed. It's that Ellison and Henley knew that the
13 12 cent per share forecast wouldn't be met because of these
14 negative things; the economy, 11i, et cetera, right? That's
15 the core of their case.
16          THE COURT: Let me ask you this: What if they can
17 prove the first half and not the second? What if they prove
18 that Ellison knew that the forecast wasn't being met. Okay,
19 just bear with me. I don't expect you to agree with that.
20          And the reason is not because of what they have
21 alleged in the complaint. The reason is because the auditors
22 advised him that his forecasting method was flawed.
23          Can they put on this case?
24          MR. SALPETER: Not on this complaint.
25          THE COURT: You can't put that on this complaint.

PAGE 135

135

1  There is a knowing misrepresentation of a forecast. He makes a
2  forecast knowing it's false and the reason he knows it's false
3  is not the reason that they give. He can't do that?
4           MR. SALPETER: That's not their case.
5           THE COURT: Stop there.
6           MR. SALPETER: It's a hypothetical that is so far
7  afield from really what we are talking about here.
8           I mean, their case and all these derivative cases
9  have all alleged essentially the same thing. Not that the
10 forecasting process was bad or flawed, but that once the
11 forecast was made of 12 cents a share Henley and Ellison knew
12 they weren't going to meet it.
13          THE COURT: Okay.
14          MR. SALPETER: I mean, your hypothetical is
15 interesting, but it's not --
16          THE COURT: It is.
17          MR. SALPETER: It's interesting, and I would like to
18 think about it some more before I answer it, but it is not our
19 case. In fact, it's not even a fifth cousin once removed to
20 this case.
21          THE COURT: So you are giving discovery of the --
22 your forecasting methods and what went into the forecastings
23 that were made public and they are going to look at those.
24          MR. SALPETER: Right. And then they are going to
25 come back if they find some major flaw that they think should

PAGE 136

136

1  be caught by auditors or outsiders, they are going to come back
2  and they will be waving their arms and making an impassioned
3  argument to you about why they should go further.
4           But on the base of this complaint, they really
5  shouldn't be getting into what the auditors have done beyond
6  the narrow scope that has been --
7           THE COURT: I have got to tell you, my predilection
8  with respect to is unlike with the customers, where I'm
9  sensitive to the relationship concerns.
10          My general work in the past has been, you know, what
11 do I care about the work papers? Have them.
12          My concern about the work papers is I don't want it
13 to be a fishing expedition. I don't want this to be an excuse
14 to look for 75 other flaws and amend the complaint for 75 other
15 flaws that they haven't yet discovered in the financial records
16 in the company.
17          So I don't want to get into all of the audit. It's
18 not pled and we are not going to get into it.
19          On the other hand, with respect to the auditing of
20 the forecast model, is that a big deal?
21          MR. SALPETER: I don't think it was done. I don't
22 think it was ever done.
23          THE COURT: Fine.
24          MR. RUBINSTEIN: It's a bit academic.
25          THE COURT: Here is what you do. Here is what you

*Debra L. Pas, CSR, CRR*
*Official Reporter - U.S. District Court*
*(415) 431-1477*

SHEET 18  PAGE 137

**137**

1  do. Okay.
2       MR. WILLIAMS: Can I say one thing, your Honor,
3  before you rule?
4       THE COURT: Yes.
5       MR. WILLIAMS: One of the issues is Andersen.
6  Andersen was the auditors at the time and we have begun the
7  meet-and-confer process with them before we ended up in the
8  position that we are today.
9       Now, I don't know if anyone knows how long those
10 documents will be available, and I think -- what was it? Just
11 ask if we have got them all, then they could produce them
12 quickly or if they have to go through them, they wouldn't be
13 able to produce them quickly; is that correct?
14      MS. RADCLIFFE: My understanding is that Andersen
15 themselves have not looked at the work papers. They are in a
16 warehouse in Redwood City along with all of their other work
17 papers.
18      That they have taken the client -- used to have desk
19 files for the engagement team, but that is now consolidated
20 into a single client file which would be labeled in this case
21 "Oracle" pursuant to numerous preservation orders across the
22 land regarding --
23      THE COURT: Good.
24      MS. RADCLIFFE: But how long those particular
25 documents, you know, would be there, I don't know.

PAGE 138

**138**

1       THE COURT: Would be there? We can take care of the
2  "would be there."
3       MS. RADCLIFFE: What's in them and what's there is
4  questionable.
5       THE COURT: But they are not about to get rid of
6  them.
7       MS. RADCLIFFE: Well, no. I believe that they
8  indicated that Ernst & Young, for example, the subsequent
9  auditor, probably looked at them.
10      THE COURT: My point is you are not saying there is a
11 preservation issue there.
12      MR. WILLIAMS: I thought there may have been one.
13      THE COURT: Aren't there court orders in place for
14 the auditors to preserve --
15      MS. RADCLIFFE: As to this case?
16      THE COURT: Any case. As long as they have to
17 preserve them.
18      MS. RADCLIFFE: I don't know that there is an order
19 that apply to those documents.
20      THE COURT: Is there anybody that would object during
21 the pendency of this case requiring that the work papers be
22 preserved?
23      MR. RUBINSTEIN: No, your Honor.
24      THE COURT: Okay, put that in. Of course, they are
25 not before me, but put it in anyway. You can ask them and then

PAGE 139

**139**

1  they have to do it.
2       MS. RADCLIFFE: One of the issues that's going take
3  arise with the auditors is in addition to the hard copy work
4  papers, will be the work papers in electronic format.
5       THE COURT: Well, you are going to take that up with
6  them. I'm not going to get into the details. I'm going to do
7  scope.
8       MS. RADCLIFFE: There is also, in addition to the
9  work papers, the desk files or client files that relate to at
10 least the allegations in the complaint.
11      THE COURT: Well, you are saying it's all in one
12 file?
13      MS. RADCLIFFE: That's my understanding with respect
14 only as to Arthur Andersen.
15      THE COURT: Well, we will just say documents -- I
16 want them to preserve all of their work papers with respect to
17 the Oracle engagement -- engagements, probably have more than
18 one, certainly for the relevant period of time.
19      So put it that way. Preserve all the work papers for
20 the relevant period of time.
21      If there are other documents that they are required
22 to preserve by someone else's order, that's fine, but I
23 don't -- I don't have a good sense that anything beyond that is
24 obviously relevant here, or even marginally relevant.
25      I mean, I guess I could say preserve everything

PAGE 140

**140**

1  relevant to Oracle, but this may go on for quite some time and
2  I don't know, maybe they keep it anyways.
3       Does any of this matter how I say this from your
4  perspective. Can I just say "preserve documents"?
5       MR. RUBINSTEIN: We have no problem with the
6  preservation.
7       THE COURT: All right. Preserve all documents
8  regarding Oracle for the relevant period. Fine.
9       What you can get from the auditors is documents
10 regarding or relating to the 46,000 debit memos. And I guess
11 there was an agreement on documents relating to tax advisory
12 services to the defendants.
13      Okay. Plaintiffs witnesses and documents --
14      MR. RUBINSTEIN: Your Honor, with respect to the tax
15 advisory services, it's my understanding what that meant was
16 tax advisory services as to Mr. Ellison or Mr. Henley to the
17 extent that that occurred.
18      THE COURT: All right.
19      MR. SOLOMON: Your Honor, are you saying then with
20 respect to expenses associated with 11i problem, costs
21 associated --
22      THE COURT: No, no.
23      MR. SOLOMON: And are you saying with respect to
24 forecasting, that we get nothing from the accountants?
25      THE COURT: Right. Yes.

*Debra L. Pas, CSR, CRR*
*Official Reporter - U.S. District Court*
*(415) 431-1477*

Re Oracle Securities Litigation
Case 3:01-cv-00988-SI   Document 387-4   Filed 11/28/05   Page 5 of 16
PAGE 141
141
PAGE 143
143

**[Page 141]**

1       Okay. Confidential witnesses. You know, why don't
2 we -- can you duplicate Judge Alsup's order, the stipulation in
3 that case?
4       MR. WILLIAMS: We can go very close, your Honor. I
5 think that we made an initial proposal and in their letter we
6 saw their kind of cross-proposal for the first time.
7       I think the only real issue there is to agree on the
8 fact that if they have to do some investigation internally at
9 Oracle about someone they know to be a confidential witness,
10 that they don't represent to people at Oracle that the person
11 is a confidential witness.
12      They can say that, you know, Joe Blow for example,
13 did you know anything about him? Is he a credible guy? Is he
14 somebody that would lie? That's fine.
15      But I don't think they should be able to say, well,
16 this guy is a person who has made -- you know, has made some
17 sort of factual allegation against Oracle and, therefore, was
18 he a credible guy? You know, is he somebody that could be -- I
19 don't think that should be problematic.
20      MR. RUBINSTEIN: Your Honor, we do have a problem
21 with that.
22      Obviously, when -- as we would for any witness, we
23 would want to be able to conduct factual investigation about
24 this person, whoever they are, so that we can actually prepare
25 to take their deposition.

**[Page 142]**

1       THE COURT: Yes.
2       MR. RUBINSTEIN: And we do have a problem if we are
3 impaired in our ability to conduct a meaningful investigation
4 to be able to depose him.
5       THE COURT: I guess I don't understand the issue.
6 What you are saying is they can do that investigation, right?
7       MR. WILLIAMS: Sure.
8       THE COURT: They can ask about this witness, what
9 they said about particular subject matters, what they didn't
10 say, what they did, what they didn't do, whether they are a
11 good guy, whether they are a bad guy, et cetera, et cetera, but
12 you can't tell anyone that the reason for the investigation is
13 because they are a confidential witness in this case.
14      MR. WILLIAMS: That's our position.
15      THE COURT: What's wrong with that?
16      MR. RUBINSTEIN: My concern is that I'm not sure what
17 the legal predicate is for that.
18      THE COURT: Okay. Give me a break. We are talking
19 practicalities here.
20      MR. RUBINSTEIN: Well, no. The concern we have is
21 that the predicate for this is that we are going to be out
22 there harassing and intimidating witnesses and there is
23 absolutely no showing of that.
24      And the Alsup order, I should point out, it was
25 agreed order. So it's not a judicial determination that that

**[Page 143]**

1 is --
2       THE COURT: Of course. Of course, it's an agreed
3 order.
4       The concern is -- and I'm sure you won't do it. I
5 have no idea whether you will do it, but I'm not presuming that
6 you will do it, is that their witnesses may be concerned about
7 this subject. That is, I'm sure, what generates this. Is that
8 the witness will be concerned.
9       This is some modicum of salve on that so that there
10 won't be any. It doesn't cost you anything. Who cares?
11      MR. SALPETER: Well, let me put a hypothetical
12 together. I understand the restriction that the plaintiffs are
13 putting.
14      We cannot actually show any Oracle employee the
15 complaint and say this is what they say this person said. This
16 is the information. We can't say that.
17      THE COURT: No. But you can say, "John Blow has
18 said," and then quote the complaint.
19      MR. RUBINSTEIN: We just can't refer to --
20      THE COURT: You can't refer to them as a confidential
21 witness or say they are a confidential witness. You just can't
22 talk about the fact that they are giving evidence to the
23 plaintiffs which is being used in a complaint.
24      I mean as a practical matter, why does that matter?
25      MR. RUBINSTEIN: Would we be, for instance, able to

**[Page 144]**

1 have in-house counsel at Oracle know who the confidential
2 witnesses are?
3       THE COURT: Well, I think that's an important issue.
4       MR. RUBINSTEIN: For us to be able to advise our
5 client and, obviously, the legal department.
6       THE COURT: Well, so this is part -- I'm trying to
7 focus on your language so I can figure out where it fits in.
8 It fits in, I guess, Condition 3.
9       "Counsel for defendants will not disclose the
10 confidential witness's roll" -- which is what he's talking
11 about, right, their role as a confidential witness -- "to
12 anyone other than" -- and, obviously, you all get to know it.
13 Consultants get to get it. You have got in-house defendants.
14      By "defendants" I assume you meant -- well --
15      MR. RUBINSTEIN: It's Item 2. We would want to be
16 able to provide this to in-house counsel and we also do think
17 to employees.
18      THE COURT: Well, why?
19      MR. RUBINSTEIN: But if the Court is ruling we can't,
20 I mean, at a minimum we need to be able to provide that
21 information to in-house counsel.
22      MR. WILLIAMS: Your Honor, we accept the fact that
23 their counsel, you know, just as an officer of the court, will
24 not convey that information to the employees and we don't have
25 a major objection to that.

SHEET 19   PAGE 145

**145**

1   But you are right, the witnesses, you know, do have
2 some concerns about those things.
3        THE COURT: Then what you should do is -- we will do
4 the defendant's language, except you scratch the word "and
5 Employees" from Z.
6        I think that to be clear you are going to have to
7 scratch the word "defendants" -- or "and their." Scratch the
8 word "and their" from X. So you keep talking about defendant's
9 counsel.
10       THE COURT: Defendant's counsel within Mayer, Brown
11 and Platt -- oh, sorry. I am dating myself. I grew up in
12 Chicago, so it's --
13       MR. RUBINSTEIN: That's all right. We do it all the
14 time.
15       Now, your Honor, I have a question. If we are not
16 going to be permitted to communicate the fact of somebody being
17 a confidential witness to another employee, it does seem to me
18 that the undertaking becomes somewhat irrelevant, right,
19 because the person isn't even being told that they are getting
20 information that is protected in the first place.
21       So it seems to me that the undertaking --
22       THE COURT: Who does the undertaking go to?
23       MR. RUBINSTEIN: Well, the concept had been that if
24 Oracle employees outside of the law department were going to
25 know that someone was a confidential witness, then there would

PAGE 146

**146**

1 be an undertaking that they would comply with the restrictions
2 of the order.
3        And we can -- we would agree to that if we could
4 convey that information; but if we can't, it seems to me that
5 what -- they go together.
6        THE COURT: Well, I understand that. What do you
7 think about that? Who gets -- the only people that are getting
8 this are outside counsel, in-house counsel, consultants and
9 experts.
10       MR. RUBIN: And we would propose three individual
11 defendants.
12       THE COURT: Well, that's the issue.
13       MR. WILLIAMS: That's just not necessary.
14       MR. RUBIN: Those are our --
15       THE COURT: Oh, come on. They have lawyers. They
16 have in-house counsel.
17       MR. WILLIAMS: With regard to the undertaking, your
18 Honor, I think that we can probably address that stipulation
19 and agree on something, but I think --
20       THE COURT: It seems to me the only person you might
21 think about is for consultants or experts.
22       MR. RUBINSTEIN: All right.
23       THE COURT: All right. So we will limit the
24 undertaking to consultants and experts.
25       MR. RUBINSTEIN: The other concern that we have is

PAGE 147

**147**

1 the idea that -- of having the confidential witness identity --
2 or documents, any documents that refer to the confidential
3 witnesses file under seal with the Court.
4        THE COURT: Well, I think the way you put it is
5 correct. They have to seek an order, and then we will take it
6 on a case-by-case basis.
7        At some point it may be totally irrelevant, so --
8 presumably it will be totally irrelevant eventually.
9        So what I'm saying is we will use the defendant's
10 language generally for the stipulation with those modifications
11 we just made as to the undertaking and the scratching out the
12 two bits for the disclosure of the witnesses.
13       MR. RUBINSTEIN: And we just wanted to clarify that
14 we would be getting not only the name of the confidential
15 witnesses, but their corresponding number as referred to in the
16 Revised Second Amended Complaint.
17       THE COURT: They have got to know who is who, right?
18       MR. WILLIAMS: We agreed to that.
19       MR. RUBINSTEIN: Fine. And when -- do we have an
20 agreement as to when we are going to get the names?
21       MR. WILLIAMS: I don't know if we talked about it,
22 but I imagine after we had this discussion today --
23       THE COURT: You know, we are going to do this. What
24 I want to happen -- it is 3:00 o'clock -- is you all go back
25 and get me a proposed form of order that you all agree to based

PAGE 148

**148**

1 on my rulings. And that will probably take at least the rest
2 of the day, right? But quickly,
3        I think we need to do this rare rapidly and then, I
4 don't know, 48 hours after I sign an order, give over the
5 numbers, the names.
6        The next issue on here is the class cert discovery.
7 Is there any issue on that?
8        MR. RUBINSTEIN: I think the parties have agreed to a
9 schedule.
10       MR. WILLIAMS: We agreed on a schedule. I think we
11 agreed on everything else. It was very late in the day. There
12 was an issue as to whether or not they wanted to absent class
13 member discovery --
14       THE COURT: They are reserving on it.
15       MR. WILLIAMS: So there is no issue.
16       THE COURT: That's fine. Well, then, put in whatever
17 the agreement is on the class cert discovery.
18       MR. SALPETER: I just want to clarify, also, I think,
19 as the letter confirms, we are going to be getting the
20 documents from the plaintiffs. The letter indicates by the
21 7th. I don't know. Is that -- I wanted to confirm that that's
22 the case.
23       MR. WILLIAMS: I think so.
24       MS. RADCLIFFE: The non-class cert is the 21st.
25       MR. RUBINSTEIN: Non-class will be the 21st, class

PAGE 149

149

1 will be by the 7th.
2          THE COURT: Class will be by the 7th.
3          MR. RUBINSTEIN: Okay.
4          THE COURT: Contention interrogatories. I don't
5 really like contention interrogatories, though I have
6 propounded many of them.
7          I like them at the end because I think it's a very
8 good trial tool, at least in the trial preparation tool. It
9 confines the case. But I think at the beginning, especially
10 where you are about to produce 2 million pages of documents,
11 it's a little bit dicey.
12         -- So my proposal, what I would say is that you can't
13 produce -- have contention interrogatories in general until --
14 without further order of the Court. And you can apply later
15 on. But that -- and then eventually, but I wouldn't
16 anticipate, that you would get contention interrogatories for
17 the purpose of defining what you are going to try or move for
18 summary judgment on or whatever the final or penultimate
19 resolution of the case is.
20         Does anyone like to take that up?
21         MR. RUBIN: We would only note, your Honor, that we
22 have already been served with contention interrogatories and
23 have been provided some response. And, perhaps, it was our
24 mistake for not objecting.
25         THE COURT: Well, no, because you wanted answers,

PAGE 150

150

1 too.
2          MR. RUBIN: But, certainly, we would just want, you
3 know, from here on out reciprocity on that issue. Contention
4 interrogatories from both sides.
5          So to the extent -- let's put it this way: To the
6 extent that they have any objections to our contention
7 interrogatories, I would think that those will await -- those
8 should await the service of contention interrogatories and
9 response by them. We should just be reciprocal. We should
10 move together.
11         THE COURT: I agree with that, but I'm not sure what
12 it means.
13         MR. WILLIAMS: I agree with the contention
14 interrogatory issue, and maybe there are interrogatories that
15 defendants are construing as contention interrogatories and we
16 didn't construe them in the same way.
17         For example, there are statements that, you know --
18 like the one I represented to the Court earlier. They said
19 they had 160 customers live on 11i in January. So we asked,
20 well --
21         THE COURT: That's not what he's talking about.
22         MR. RUBIN: We are talking about, for example,
23 "provide all facts, your factual basis for the statement that,"
24 and then a statement that on March 15th this was -- that our
25 miss was related to, you know, unforeseen facts.

PAGE 151

151

1          And that was served on us. We have attempted to
2 respond. We don't know if these pages will be sufficient on
3 this. Sit on them --
4          MR. WILLIAMS: We can deal with that, your Honor.
5          THE COURT: You work that out, but nobody gets to get
6 additional answers right now, certainly, to contention
7 interrogatories and I don't want any more served.
8          Now, you know, I have never had to think about the
9 question of exactly what falls within, what doesn't, a
10 contention interrogatory. Usually it's when they ask about
11 pleadings, it's a contention interrogatory, but I can see how
12 there will be things that aren't within strictly focused on the
13 pleadings that are clearly contention interrogatories.
14         But my guess is if you use your common sense, it
15 won't be a problem. But no contention interrogatories and
16 further responses without Court order.
17         Absent class members, we have dealt with. You can
18 come back and seek leave if you think it's appropriate for
19 absent class discovery.
20         Attorney work product. This is taking the easier one
21 first. On the documents from confidential witnesses, you have
22 to produce all the documents you are getting from confidential
23 witnesses and you have to identify who they are from.
24         MR. WILLIAMS: That's fine.
25         THE COURT: Okay. On the work product, there must be

PAGE 152

152

1 a way through this. This is the issue of -- you have got a
2 laundry list of witnesses listed in your Rule 26 disclosure.
3 They don't know which ones are really important and which ones
4 are not.
5          I don't think that if you say, "Tell me what this
6 person knows about the case," that impinges necessarily on work
7 product, or "Tell me what this witness has to say in general."
8          This must be a way for you to get to them without
9 risking your mental impressions in any material way why the
10 witnesses are on the list.
11         MR. WILLIAMS: That may be true, your Honor, and I
12 think maybe the, quote, unquote, work product kind of objection
13 to it, it doesn't fit as nicely as it ought to.
14         Really what they are asking for is something that is
15 very difficult to do at this point.
16         We have been investigating the case for four years.
17 There are a lot of people that we have talked to. There are a
18 lot of people who have told us there are other people at Oracle
19 who might have this information. Now, we wanted to provide
20 that to defendants.
21         Now, I don't know --
22         THE COURT: Well, you wanted to provide that. You
23 wanted to provide them with the list.
24         MR. WILLIAMS: The list of people who may have
25 discoverable information.

SHEET 20   PAGE 153

### PAGE 153

1    Now, we can say, well, this person -- well, it will
2 be part of our investigation. We will say, you know, Jennifer
3 Whoever was somebody that we were told, you know knew about X.
4    But do we know what the information is going to be
5 once we actually get discovery? We don't know that.
6    THE COURT: No, no. They are not asking for that.
7 They are asking for what you know.
8    MS. RADCLIFFE: Your Honor, we already specified in
9 the initial disclosures what subject matters the person would
10 be.
11    The initial disclosures also break out by category
12 what type of person; for example, the customers, the
13 accountants, the former employees of Oracle.
14    For the former employees of Oracle they have already
15 shown that they could run reports as to what their title is and
16 what department they worked at.
17    And what they want to know is all facts of why we
18 believe these people are likely to have discoverable
19 information and those really go to the mental impressions of
20 counsel.
21    THE COURT: That's nonsense. That's a frivolous
22 objection.
23    MS. RADCLIFFE: I mean, they did --
24    THE COURT: That is a completely frivolous objection
25 and we are not going to go there.

### PAGE 154

1    You are going to tell me how you are going to get to
2 them. That's what we are doing here.
3    How are you going to tell them and in what form are
4 you going to tell them what you think these witnesses know.
5    MR. WILLIAMS: Well, like you said, aside from what
6 we have already provided, your Honor, it's just what I have
7 told you today.
8    So if there is a person that was in -- you know, a
9 customer, say XYZ customer. How do you know that -- why do you
10 think that this customer may have documents that are responsive
11 to a discovery request?
12    THE COURT: I have got an answer. Answer the
13 following interrogatory. With respect to all the people on
14 your 26(a) list, I want you to answer the question:
15    What do these witnesses know that is relevant to the
16 case?
17    Now, I will add the following additional conditions:
18    Number one, is the only remedy for the failure to
19 disclose an adequate amount is a motion to compel further
20 disclosure. I don't think I would preclude them or suggest
21 that there is a -- any preclusion here, but I want you to
22 get -- tell them what you think this witness knows about the
23 case and do it -- now, the other thing I would think about is I
24 would want some limitation so that this doesn't become a
25 telephone book.

### PAGE 155

1    What level -- what kind of detail are you thinking
2 of? I mean, what are you looking for? I mean, do you want two
3 paragraphs on each witness?
4    MR. RUBIN: Your Honor, the rule -- Rule 26, as you
5 know, says likely to have discoverable information.
6    We want what they know today, what kind of
7 information they have that they think would bear upon this
8 case. What is it that they know? What facts do they know that
9 this person has? And so if that is in a paragraph narrative,
10 that makes sense.
11    I mean, we just simply want --
12    THE COURT: Fine. If you are not going to answer my
13 question -- mine is a practical question. What you just asked
14 for is a telephone book. He is going --
15    MR. RUBIN: We just want the facts. If they learned,
16 for example --
17    THE COURT: You want everything they learned from
18 these people, that's what you want?
19    MR. RUBIN: No, no. If Jennifer Smith was -- this is
20 an example -- somebody, and a consultant who now, you know,
21 works at, you know, another company and they are not a
22 confidential witness but on their list, we want to know what
23 fact do they know, the basic facts they know. What she would
24 know that would bear upon the complaint. Does she know
25 that --

### PAGE 156

1    THE COURT: That's four years of investigation.
2    MR. RUBIN: Well, sales were falling. Did she know--
3 that, you know, the software was not working in the manner for
4 a particular customer.
5    THE COURT: So you want a general description of what
6 they knew?
7    MR. RUBIN: But if, for example, they knew about a
8 particular customer that was having problems and that's why we
9 were on the list, yes, we would want to know that.
10    If Bell South was having problems with the software
11 and she interacted with Bell South, that's enough for us to get
12 a sense of why they were listed in the case.
13    THE COURT: Can you do that?
14    MR. WILLIAMS: I think we can do that, your Honor,
15 but I would like a substantial amount of time to do it.
16    Because I can tell you now that if they are looking
17 for substantive information, they are not going to be terribly
18 excited about what they get here. Because what we did with our
19 initial disclosures based on our investigation and no documents
20 at all, we listed people who are likely to have discoverable
21 information.
22    Why? Because Jennifer Smith told us that, "Hey, Mike
23 McCarthy was in that department and, you know, at that time
24 and, you know, maybe he knew something about the CRM."
25    So I think what they are after here is not really

PAGE 157

157

1 going to be something that is going to be useful to anybody
2 ultimately.
3      MR. RUBIN: Your Honor, one other thing. I mentioned
4 it would be extremely useful to us, there are, I think, about
5 350, approximately, organizations, businesses listed. And one
6 issue that we had raised early on was that with businesses the
7 rule speaks of potential witnesses. It speaks of individuals,
8 not entities.
9      So if an entity is listed -- if Alcoa is listed, at a
10 minimum we presume Alcoa is listed because a live human being
11 has some relevant evidence of Alcoa, that we believe there is
12 somebody at Alcoa that has relevant evidence. So who is it?
13      THE COURT: You can presume all you want. I know
14 exactly what they did. They wrote down every name off of every
15 document and every witness list that they ever generated and
16 they put it all together and it's the kitchen sink.
17      MR. RUBIN: We agree, your Honor, and we made an
18 objection these were not Rule 26 disclosures and Judge Jenkins
19 said, okay, well, go back and tell them what categories, but
20 then --
21      MR. WILLIAMS: And we did that.
22      MR. RUBIN: Then defendants have a right, then, to
23 seek discovery underneath the disclosures so they can get an
24 idea of which witnesses are important and which aren't.
25      THE COURT: I don't know that that's actually right.

PAGE 158

158

1 You have a right to discovery when the Court tells you you have
2 the right to discovery.
3      I never liked that argument, we have a right to get
4 something, because the Court is going to give you proportionate
5 discovery. And the important discovery is not coming off the
6 Rule 26 disclosures.
7      So here is what you are going to. Done. Enough
8 discussion. Enough discussion. I'm done. This is not an
9 important enough subject to spend another 30 seconds on.
10      You will answer the interrogatory which is: Describe
11 generally what each of these witnesses know about the case.
12      Okay. Five-minute break. We are almost done.
13      (Brief recess held in the proceedings.)
14      THE COURT: Okay. Call us back, please.
15      THE CLERK: Resumes session in C01-0988, In Re Oracle
16 Securities Litigation.
17      THE COURT: Okay. Are there any other issues with
18 respect to the discovery order that we need -- other than the
19 preparation of the order that we need to address?
20      The only thing I thought of is the dispute resolution
21 mechanism, but what I think you ought to put in is the Court
22 should comply with Judge Jenkins' standing order on that. I
23 don't know yet who those disputes are going to.
24      I think I have invited one application to me for sure
25 and that is the application regarding sharing of costs. And I

PAGE 159

159

1 have certainly invited -- you have got to put in a mechanism
2 for modifications to the discovery plan, and I think those
3 should also appropriately come to me since the plan has been
4 referred.
5      And I guess disputes regarding the -- and I think
6 otherwise I would say absent further order of the Court that
7 you will comply with Judge Jenkins' standing order regarding
8 discovery or whatever he said in this case regarding discovery,
9 and then he and I will work out who it actually goes to before
10 you have a dispute. We will figure out who it goes to. Of
11 course, there won't be any, so it's not a problem. So put in
12 those things for the implementation.
13      So you are going to get the transcript, hopefully,
14 tomorrow. How long are -- you better put how soon can you all
15 reasonably get to me an order.
16      MR. RUBINSTEIN: How about Friday?
17      THE COURT: You think you can do it by Friday?
18 That's fine.
19      MR. SALPETER: We thought we would do a draft.
20 Tender it to them and . . .
21      THE COURT: Go back and forth and get it to me by the
22 end of the day Friday maybe?
23      MR. SOLOMON: We will strive for it. I think that's
24 very optimistic, but we will certainly try for it and explain
25 why not if we don't make it.

PAGE 160

160

1      MR. SALPETER: Best efforts.
2      THE COURT: Best efforts for Friday or some letter
3 saying what's going to happen, so I will not stay up nights
4 waiting for it.
5      Okay. Is there anything pending in front of Judge
6 Jenkins that we can take care of in light of this order? What
7 do you have got -- are there any discovery issues in front of
8 Judge Jenkins that have been sort of stayed?
9      MR. RUBINSTEIN: I think the only issue that was in
10 front of Judge Jenkins was the CW issue, am I wrong, and Suite
11 11i. I think all discovery issues in front of Judge Jenkins --
12      THE COURT: Is there is a Special Master application,
13 or did I deny that?
14      MR. RUBINSTEIN: I think it's been withdrawn, since
15 it's ours. If not, we withdraw it.
16      MR. SOLOMON: Defendants have moved to disqualify us,
17 but we hope you will see us again; but Judge Jenkins is getting
18 that one.
19      THE COURT: I won't comment on that one. If you
20 would communicate to Judge Jenkins with respect to the matters
21 that he actually has got pending, that they were taken care of
22 by the discovery plan.
23      MR. WILLIAMS: Just a quick question, your Honor.
24 With regard to the non-parties, I don't know if it makes sense
25 to send them the order on the entire discovery plan, but I

161

1 think it would make sense if -- even if we carve out a separate
2 order for the non-parties because it will -- there will be some
3 difficulty getting them to comply without seeing an order from
4 the Court because they were awaiting an order on this issue.
5          THE COURT: I understand that. Why not? I mean, I
6 don't know. There is not going to be anything very secret in
7 this order. I think you should just have one order, one plan
8 and --
9          MR. WILLIAMS: Just send him the entire plan.
10         THE COURT: You are going to have to provide
11 something with respect to them, like the stay is lifted with
12 respect to the ones that are done to the extent of the
13 following subject matters or whatever, however you are going to
14 put it, and then you give them that. And you work out how you
15 deal with that, okay?
16         Okay. Anything else I can help you with?
17         (No response.)
18         THE COURT: You did a very good job. I enjoyed it.
19 I thought I would never say that about a discovery dispute, but
20 thank you all.
21         (Whereupon, further proceedings in the
22         above matter were adjourned.)
23
24                    --oo--
25

PAGE 162

162

3              CERTIFICATE OF REPORTER

5     I, DEBRA L. PAS, Official Reporter for the United
6 States Court, Northern District of California, hereby certify
7 that the foregoing proceedings in C01-0988 MJJ, IN RE ORACLE
8 SECURITIES LITIGATION were reported by me, a certified
9 shorthand reporter, and were thereafter transcribed under my
10 direction into typewriting; that the foregoing is a full,
11 complete and true record of said proceedings as bound by me at
12 the time of filing.
13     The validity of the reporter's certification of said
14 transcript may be void upon disassembly and/or removal
15 from the court file.
16
17      _____
18      Debra L. Pas, CSR 11916, CRR, RMR, RPR
19           Wednesday, March 2, 2005
20
21
22
23
24
25

*Debra L. Pas, CSR, CRR*
*Official Reporter - U.S. District Court*
*(415) 431-1477*

Debra L. Pas, CSR, CRR
Official Reporter - U.S. District Court
(415) 431-1477

## $

$228 [1] 42:9
$3 [1] 121:10
$500,000 [12] 37:12,15 41:
 13 89:8,10,19 91:15,22,23,
 25 92:6,9

## 0

01 [8] 24:21,24 25:1 36:18
 49:21 125:21 126:10,22
02 [1] 50:1
05 [1] 77:19
06 [1] 79:13

## 1

1 [13] 1:1 3:2 4:24,25 34:19
 78:10,11,18 79:1 125:14,
 14 127:12,13
1:15 [1] 77:8
10 [1] 113:25
10,000 [2] 114:6,7
100 [3] 1:13 114:18 123:10
10k [1] 125:21
11 [3] 50:4,5 79:13
11:00 [1] 3:2
11916 [2] 1:24 162:18
11i [39] 22:5 28:3,4 33:19
 34:12,17 36:17,17 37:5,6,
 19 40:7,20 82:24 86:1,1
 87:8 91:12 109:6,19,25
 110:7,12 113:3 115:2,4,10,
 13,18 119:7,10,24 125:1
 131:10 132:21 134:14 140:
 20 150:19 160:11
11th [1] 79:10
12 [2] 134:13 135:11
12:45 [1] 77:9
12601 [9] 48:15 51:11,21,
 22 52:17,25 53:4,20 54:9
13 [2] 26:18,21
134 [1] 9:22
14 [1] 26:19
144 [1] 10:5
15 [4] 84:5 115:25 116:6
 127:15
15th [2] 84:12 150:24
160 [5] 26:11 115:4,18 119:
 23 150:19
161 [1] 1:1
168 [2] 10:5 13:18
17 [2] 51:20 52:20
17th [3] 21:25 42:6 48:19
18 [1] 121:6
18th [2] 23:8 61:14
1st [1] 125:25

## 2

2 [5] 4:25 9:5 48:17 149:10
 162:19
20 [4] 86:9 94:15 113:25
 116:6
20,000 [1] 70:8
200 [12] 103:12 113:22,25
 114:7,7,18 115:7 117:16,
 16 119:2 123:8,9
2000 [14] 34:13,19 47:22
 48:17,19 51:6,20 54:22
 115:1,3 125:14 127:13
 128:10 131:6
2001 [6] 42:15 115:3,12,19
 125:15 127:13
2002 [5] 43:16 46:16 47:5
 48:23 54:2
2005 [2] 3:2 162:19
2006 [1] 79:23
21 [2] 77:18 79:4
21st [3] 77:23 148:24,25
23rd [1] 4:16
25 [1] 73:9
2500 [2] 54:13 115:12
25005 [6] 48:6 49:16 52:10,
 15 53:20 54:11
26 [6] 67:1 101:11 152:2
 155:4 157:18 158:6
26(a [1] 154:14
28 [1] 126:24

## 3

3 [10] 4:25 7:11 9:7 40:9,10,
 11,15 48:17 54:2 144:8
3:00 [1] 147:24
30 [16] 34:19 80:21 93:20
 94:6,8 117:17,19,23,25
 118:6,25 122:9 123:4 125:
 23 126:10 158:9
30(b)(6 [4] 82:20 83:1 84:
 16 96:17
30(b)6 [15] 83:6,6,14,19,23,
 25 84:7,24 85:14,19 87:6
 92:19 96:8,11,20
30,000 [2] 70:8 73:10
300 [2] 114:18 115:7
30th [2] 83:24 84:4
33 [5] 9:16,17,20 10:5 15:
 15
350 [1] 157:5
3rd [1] 79:25

## 4

4 [5] 47:21,23,24 48:17 54:
 2
40 [1] 7:22
40,000 [2] 13:14,17
400 [3] 113:22,25 115:6

## 2

2 [5] 4:25 9:5 48:17 149:10
 162:19

(second 2 column)

45 [3] 80:21,22,22
46 [1] 131:5
46,000 [14] 42:7 44:3,4,17
 45:6 46:6,23 47:2,4 51:12
 54:13,23 76:19 140:10
48 [1] 148:4
49,000 [5] 113:7 131:4,19,
 20,20
4th [1] 99:13

## 5

5 [2] 48:17 54:2
50 [3] 90:23 114:18 123:4
50,000 [8] 66:23 67:25 68:
 14 70:7,22,22,25 71:3
500,000 [1] 89:14
500k [1] 41:13
53 [7] 10:6 14:22 15:13 16:
 17,19 17:6 27:10

## 6

60 [1] 78:11
60603-3441 [1] 2:4
63 [1] 109:22
65 [6] 81:20,21,22 82:1 92:
 22 93:22

## 7

7 [1] 116:20
73 [1] 123:1
75 [2] 136:14,14
7th [4] 4:12 148:21 149:1,2

## 8

80 [1] 67:15
80,000 [2] 70:9,14
80-some-odd [1] 30:16
83 [1] 115:2

## 9

9/11 [1] 79:14
90 [7] 67:15 70:16 117:19,
 23,25,25 118:25
93 [7] 115:20 116:20 122:9
 123:5,10,17,20
94111 [1] 1:14
95 [2] 103:15 104:9

## A

a.m [1] 3:2
a/r [1] 44:21
abide [1] 97:3
ability [4] 117:10,11 124:5
 142:3
able [26] 13:3 15:10 21:6
 32:23 42:17 43:3 53:24
 62:17,22 82:11,16 83:9,19
 113:17 117:11 118:7,8
 123:3 137:13 141:15,23
 142:4 143:25 144:4,16,20
above [4] 61:15 81:14 89:
 14 161:22
absent [5] 120:18 148:12
 151:17,19 159:6
absolutely [6] 47:5 76:15,
 20 82:8 123:1 142:23
abundant [1] 128:3
academic [1] 136:24
accept [4] 60:7 96:13 127:
 11 144:22
accompanies [1] 61:11
accomplish [1] 63:10
according [2] 9:16 27:9
account [30] 15:11 38:25
 43:21 46:2 48:7,7,14 49:2,
 6,16,18 51:7,11,22 52:5,7,
 8,9,14,18,19 53:4,5,8,20,
 20 54:9,11,21 122:4
accountant [1] 4:10
accountants [8] 43:12 113:
 6 127:20 128:15 129:9
 133:22 140:24 153:13
accounting [34] 41:24 42:1,
 1,3,11 43:13,16 46:8,9,11,
 13 50:3 54:20,24 76:18 82:
 23 83:14,18,19 84:16 85:9,
 10,13 113:4 128:4,9 129:9,
 23 130:3,15,18 131:20
 133:3,4
accounts [7] 43:25 44:23
 45:17,20,25 53:19 54:5
accurate [2] 11:3 86:5
across [1] 137:21
action [9] 17:24 21:8,9 50:
 7 58:24 66:25 70:4 121:9
 126:3
actionable [1] 90:6
actions [1] 106:11
actual [1] 88:9
actually [23] 10:4 17:12 35:
 25 37:1,10 47:2,3 71:12
 73:19 75:23 82:21 83:3
 84:8 94:11 110:6 119:19
 124:14 141:24 143:14 153:
 5 157:25 159:9 160:21
add [12] 4:9 9:3 11:1 16:23
 27:2 30:5,12 58:21 77:22
 122:15 131:17 154:17
added [1] 60:10
addition [12] 10:6 27:14 40:
 22 49:18 62:3 67:3 81:18
 87:16,21 132:21 139:3,8
additional [19] 10:5 15:15,
 25 16:7 17:15 23:2,18 24:
 6 31:7 35:10 61:2,6,14 62:

| | | | |
|---|---|---|---|
| 8 67:10 84:6 126:13 151:6 154:17 | ahead [5] 34:6 65:3 76:13 11\ | anecdotal [2] 114:1,2 | 25 14:3,4 16:20 19:2 20: 16 23:23 27:9,11,21 29:18 39:20,21 65:13 99:12 100: 24 111:6 |
| address [11] 18:24 19:4 36: 8 50:8 53:4 80:24 89:4 96: 5 104:10 146:18 158:19 | alan [3] 3:23 104:18,20 | announcement [1] 121:1 | |
| | alcoa [4] 157:9,10,11,12 | another [19] 14:13 19:2 21: 18,22 22:3 28:7,10 70:8 73:25 100:19 106:13 109: 3 120:12 121:17,23 131:9 145:17 155:21 158:9 | |
| | allegation [8] 42:3 129:24 130:8 132:13,15,16 134: 11 141:17 | | areas [3] 32:9 33:6 42:6 |
| addressed [3] 50:21 81:24 133:19 | | | aren't [12] 18:23 62:17 90: 19,20,21,24 91:8 98:18 104:3 138:13 151:12 157: 24 |
| addressing [1] 103:21 | | answer [17] 18:9 25:12 32: 1,21 33:1 37:10 54:7,7,9 91:10,10 135:18 154:12, 12,14 155:12 158:10 | |
| adds [2] 71:9 121:15 | allegations [14] 36:4 41:24 42:1 43:13 50:3,4 54:20 56:24 76:18 128:4,9,14 131:11 139:10 | | |
| adequate [1] 154:19 | | | arena [1] 128:6 |
| adjourned [2] 77:10 161: 22 | | | argue [3] 14:11 70:21 73: 19 |
| adjustments [1] 128:10 | allege [12] 20:23 21:23 31: 22 34:12,16 43:20 48:8,25 49:16,21 50:10 92:2 | answering [2] 30:1,1 | |
| admirable [1] 84:12 | | answers [2] 149:25 151:6 | argument [6] 12:23 13:2 15:2 25:5 136:3 158:3 |
| admissible [5] 111:7 112:2 117:2,8 120:19 | alleged [7] 45:6 50:8 52:22 124:18 130:24 134:21 135: 9 | anticipate [3] 100:21 129: 18 149:16 | |
| | | anybody [4] 77:1 92:2 138: 20 157:1 | arguments [1] 89:11 |
| admit [1] 53:16 | | | arise [2] 45:10 139:3 |
| admittedly [1] 15:4 | alleging [1] 50:3 | anyway [3] 71:8 87:9 138: 25 | arms [1] 136:2 |
| adopt [2] 40:4 80:8 | allow [4] 32:20 55:8 105:6 112:8 | | around [5] 34:15 86:8 95: 24 119:16 122:25 |
| adopts [1] 118:4 | | | |
| advance [6] 69:14 93:10 94:9,13 95:3,6 | allowed [1] 78:7 | anyways [3] 113:21 118:24 140:2 | art [1] 40:17 |
| | almost [3] 62:15 118:20 158:12 | apart [3] 16:12 113:5 128: 13 | arthur [1] 139:14 |
| advances [1] 29:1 | | | aside [3] 93:16,16 154:5 |
| adversarial [1] 25:24 | already [41] 15:4 23:11 24: 4 34:8 39:24 50:11 63:23 64:8,24 66:2,17,19 67:12 68:1,21 69:1,1,12 70:7 72: 2,15 73:25 75:2,7,22 81: 15 85:13 86:8 110:11,12 115:8 117:4 120:18 123:2, 20 127:16,22 149:22 153: 8,14 154:6 | apologize [1] 65:10 | aspects [1] 4:17 |
| advise [1] 144:4 | | apparent [1] 34:14 | asserted [1] 57:15 |
| advised [1] 134:22 | | apparently [2] 5:24,25 | asserting [1] 38:12 |
| advisory [3] 140:11,15,16 | | appear [3] 8:13 22:10,17 | assistants [1] 12:20 |
| advocate [1] 73:18 | | appearances [4] 1:11,18 2: 1 3:10 | associated [5] 65:25 108: 18 109:1 140:20,21 |
| affect [3] 78:21 101:3,4 | | | |
| affected [1] 129:10 | | appearing [1] 3:11 | assume [4] 59:22 80:25 82: 6 144:14 |
| affecting [2] 101:9 105:20 | | appears [11] 9:24 12:4,19 18:16 21:3 31:17 35:12,13, 15 53:4 60:2 | |
| afford [2] 100:14,20 | alsup [1] 142:24 | | assumed [3] 11:5 31:10 36: 17 |
| afield [3] 23:15 130:12 135: 7 | alsup's [1] 141:2 | application [5] 45:21 99:17 158:24,25 160:12 | |
| | alter [1] 50:8 | | assuming [1] 102:7 |
| afraid [1] 92:3 | alteration [2] 63:21 64:6 | applications [1] 18:14 | attach [1] 65:5 |
| aggressive [1] 84:5 | altered [3] 51:3 64:2 72:23 | applied [2] 48:8 53:13 | attached [7] 8:1 48:21 63:6 65:4 68:6,10 121:20 |
| ago [1] 23:8 | although [4] 12:14 18:13 32:22 94:6 | apply [3] 95:21 138:19 149: 14 | |
| agree [32] 15:7 23:14 24:2, 9,10 53:6 60:7,19 64:5 72: 21 79:21 80:13 82:14 83:8 89:2 92:8 93:13,19 95:11 110:1,25 117:14,14 126: 14 134:19 141:7 146:3,19 147:25 150:11,13 157:17 | | applying [1] 110:13 | attachment [4] 62:23 63:1, 1,4 |
| | amend [1] 136:14 | appreciate [1] 39:10 | |
| | amended [4] 34:21 52:15 109:23 147:16 | approach [4] 5:19 6:1 110: 6 118:5 | attachments [3] 62:14,16 65:7 |
| | | appropriate [5] 28:20 37: 15 58:22 72:17 151:18 | attempted [3] 9:4 91:19 151:1 |
| | amongst [1] 100:14 | | |
| | amount [16] 12:17 30:24 31:2 32:2 42:9 59:21 65:9 83:18 103:12 108:25 109: 8 110:20 113:19 122:11 154:19 156:15 | appropriately [1] 159:3 | attend [2] 61:6 72:25 |
| agreed [17] 41:3,7,21 42:24 60:17 63:20 80:12,16 94: 12 130:2,17 142:25 143:2 147:18 148:8,10,11 | | approved [1] 93:17 | attention [1] 133:2 |
| | | approximately [2] 9:22 157: 5 | attorney [1] 151:20 |
| | | | attorney-client [1] 59:12 |
| | | approximation [1] 9:19 | audit [19] 46:5 49:10,14 52: 24 53:24 54:14 69:6 129:6 130:17 131:3,12,16,21 132:1,24 133:17,17,22 136:17 |
| agreeing [3] 106:4,5,6 | amounts [2] 4:23 119:15 | april [3] 79:25 84:5,12 | |
| agreement [19] 27:24 42: 13,13,22 43:5 55:1 60:3 61:8 63:14,19 64:2 80:20 84:21 89:1 124:7 127:19 140:11 147:20 148:17 | ample [1] 74:3 | arbitrary [12] 119:1,21 120: 6,8,9,13,25 121:18,18,19 23 122:10 | |
| | analysts [1] 127:15 | | |
| | analyze [1] 24:7 | | |
| | and/or [1] 162:14 | | audited [2] 132:23 133:5 |
| | andersen [4] 137:5,6,14 139:14 | area [27] 5:11 8:20,24 9:8, 14 11:7,11,20 12:3,20 13: | auditing [2] 128:15 136:19 |
| agreements [1] 4:22 | | | auditor [3] 132:25 133:6 138:9 |
| agrees [1] 82:22 | andy [2] 2:12 4:9 | | |
| | | | auditors [23] 127:20 128: |

Case 3:01-cv-00988-SI Document 387-4 Filed 11/28/05 Page 14 of 16
In Re Oracle Securities Litigat.

12,15 129:4,5,13,16 130:2, 22,25 131:13,15,18 132:5 133:12,21 134:21 136:1,5 137:6 138:14 139:3 140:9
**august** [1] 125:22
**authentication** [2] 80:24 81:2
**authorized** [1] 81:4
**available** [2] 6:8 137:10
**avp** [4] 12:2 15:16,18,21
**avp's** [1] 9:20
**avps** [2] 15:15 31:8
**await** [2] 150:7,8
**awaiting** [1] 161:4
**aware** [3] 56:11 71:19 133:24
**awareness** [1] 34:16

**B**

**back** [42] 14:25 23:7 24:9 32:23 33:9 49:20 50:1 51:15 59:21 63:25 67:13,18 68:13,14,16,21 69:10 71:15 72:15 74:19 76:9 77:8,11 81:16 82:3 84:3 87:2 92:12 96:23 99:13 105:12 118:21 123:22 127:8 129:21 135:25 136:1 147:24 151:8 157:19 158:14 159:21
**bad** [13] 51:22 52:7,8,14,17, 19 53:4,8,11,14 88:13 135:10 142:11
**balance** [2] 65:11,14
**balances** [1] 15:9
**ball** [2] 29:1 69:15
**bar** [1] 85:12
**base** [2] 125:2 136:4
**based** [21] 7:4 11:22,23 12:9 21:6 23:5 24:4 27:14 41:17 42:5 60:2 61:2 67:3 80:4 99:12 107:7 108:11 112:9 115:5 147:25 156:19
**bases** [1] 35:7
**basic** [2] 95:17 155:23
**basically** [2] 46:22 88:7
**basis** [17] 6:7,9 8:10,15 24:1 60:17 66:6 67:15 72:8 78:2 80:15 88:1 95:21 102:2 126:5 147:6 150:23
**bates** [1] 64:16
**bear** [3] 134:19 155:7,24
**beat** [1] 84:14
**became** [1] 34:14
**become** [2] 72:3 154:24
**becomes** [2] 35:8 145:18
**bed** [1] 103:14

**began** [1] 34:15
**begin** [7] 17:2,7 37:13 43:17 47:20 91:24 92:23
**beginning** [5] 17:6 35:18 38:16 43:22 149:9
**begun** [1] 137:6
**behalf** [6] 3:12,13,17,18,20 4:2
**behind** [3] 47:17 48:24 63:8
**belabor** [1] 103:19
**believe** [21] 23:8 26:2,3 33:2 58:23 59:4 60:22 62:10 69:20 71:13 79:9 81:8 95:22 115:15 120:20 124:22 125:4 129:22 138:7 153:18 157:11
**bell** [3] 20:18 156:10,11
**below** [1] 14:9
**benefit** [1] 15:23
**best** [6] 57:7 123:4,4,5 160:1,2
**better** [4] 18:9 118:1 123:18 159:14
**between** [10] 5:3 13:13 52:16 73:13 79:20 90:22 115:8 117:19 122:3 131:6
**beyond** [12] 6:10 7:20 10:8 16:14 20:6 56:16 61:15 106:21 123:18 133:16 136:5 139:23
**bid** [1] 119:14
**big** [15] 37:14 71:9,10,11 89:15,20,20 90:18 91:2,11 92:2,3,5 117:20 136:20
**bigger** [2] 90:22,23
**binding** [1] 15:5
**bit** [9] 11:1 22:20 44:18 46:16 49:5 119:1 128:20 136:24 149:11
**bite** [1] 77:8
**bits** [1] 147:12
**blame** [1] 25:25
**blind** [1] 61:24
**blood** [1] 77:2
**blow** [2] 141:12 143:17
**book** [2] 154:25 155:14
**borderline** [1] 122:8
**both** [10] 7:6 20:22 25:21, 22,23,25 75:12 86:20 95:25 150:4
**bother** [2] 101:23 111:4
**bought** [1] 109:10
**bound** [1] 162:11
**box** [1] 61:25
**boxes** [2] 94:15,17

**brad** [1] 21:18
**brand** [1] 92:1
**break** [4] 77:2 142:18 153:11 158:12
**breaks** [1] 27:20
**brett** [1] 18:12
**brief** [4] 9:13 48:4 76:12 158:13
**briefing** [1] 76:4
**bring** [2] 55:10 96:23
**broad** [3] 42:5 85:20 104:9
**broader** [2] 97:15 125:19
**broadly** [2] 29:2 103:8
**broken** [1] 110:7
**brought** [2] 112:13 133:2
**brown** [6] 2:3 3:24 4:2,7,17 145:10
**bubble** [1] 105:22
**budgets** [6] 97:25 99:16 100:9,15,25 101:4
**bug** [18] 30:5,9,10,12,25 31:20 32:13 33:15,23,25 35:4 37:1,2 87:12 88:2,15,20 90:25
**buggy** [3] 111:13,17 122:14
**bugs** [33] 28:3,7 29:5,10,15, 21,23 30:20 31:5 32:24 33:15 35:22 86:15,16 90:7,7,8 107:17,18 108:12,19,20, 21,25 109:1,8,13 110:23 111:10,11,14,19 123:25
**bulk** [2] 73:13,22
**bullet** [1] 49:9
**bunch** [1] 111:19
**burden** [8] 15:12,12,24 65:25 68:25 69:20,25 70:25
**burdens** [1] 70:7
**bursting** [1] 105:22
**business** [4] 39:2,14 91:21 105:25
**businesses** [4] 89:17 91:20 157:5,6
**buy** [6] 11:16 90:10 92:3 111:15 114:19 119:19
**buying** [5] 89:17 91:12,13, 17 100:20

**C**

**c01-0988** [4] 3:4 77:12 158:15 162:7
**cabined** [1] 98:14
**calculate** [1] 9:4
**california** [4] 1:3,14 15:7 162:6
**call** [4] 12:11,12 31:20 158:14

**called** [3] 22:14 35:16 75:21
**calling** [1] 3:4
**calls** [2] 12:21 16:9
**came** [10] 43:25 48:9 53:13, 15 85:21 96:20 119:6,11, 16 132:25
**cancel** [1] 100:19
**cancelled** [1] 97:12
**cannot** [6] 25:8 100:14 112:17,17 125:25 143:14
**capacity** [1] 96:9
**capture** [8] 90:19,21,24 91:8 115:20,22 125:25 126:12
**capturing** [1] 88:2
**carbon** [1] 61:24
**cards** [1] 3:7
**care** [6] 47:1 69:23 136:11 138:1 160:6,21
**careful** [1] 105:23
**cares** [1] 143:10
**cart** [2] 102:21 134:4
**carve** [1] 161:1
**case** [76] 3:4 15:11 16:8 17:11 18:16 19:3 24:25 27:4 28:7 34:8,9 38:12,13 42:4 50:25 52:21 56:1 57:10 58:17 59:8 66:11 70:9 74:24 77:11 85:22 92:7 104:24 105:2,16 106:8,18 111:13,15 112:2,24 113:17 122:8 123:4 124:18 126:10 127:9 128:3,5,14,18,21 129:23 130:15 131:1,8,9, 16 132:10 134:15,23 135:4,8,19,20 137:20 138:15, 16,21 141:3 142:13 148:22 149:9,19 152:6,16 154:16,23 155:8 156:12 158:11 159:8
**case-by-case** [1] 147:6
**cases** [2] 68:24 135:8
**cash** [11] 43:21 44:23 48:8, 12 49:15,16,18 51:22 52:6, 19 53:14
**casual** [1] 34:22
**catastrophe** [1] 33:8
**categorical** [2] 23:9,21
**categorically** [1] 25:14
**categories** [7] 9:5 33:14 61:15 116:19,20 120:16 157:19
**category** [7] 31:7 63:22 88:12 103:11 109:15 117:6 153:11

Debra L. Pas, CSR, CRR
Official Reporter - U.S. District Court
(415) 431-1477

caught [2] 106:17 136:1
caveats [1] 108:8
cent [1] 134:13
cents [1] 135:11
cert [4] 79:3 148:6,17,24
certain [15] 4:17 12:12,23 22:11 30:24 32:19 37:11 59:20 79:7 83:18 91:13 101:25 102:21 110:20 119:10
certainly [18] 20:8 27:7 68:11 71:14 83:18 85:6 87:14 97:2 99:20 100:22 101:7 109:1 131:13 139:18 150:2 151:6 159:1,24
certificate [1] 162:3
certification [2] 77:18 162:13
certified [1] 162:8
certify [1] 162:6
cetera [9] 46:12,12 97:12,12 125:3,3 134:14 142:11,11
chain [2] 36:6 86:20
chance [3] 13:24 63:21 112:18
chances [1] 11:15
change [1] 29:19
changed [1] 65:23
changes [1] 45:9
characterizing [1] 87:25
charge [1] 33:6
charged [1] 10:19
charles [2] 19:6,9
chart [4] 5:22 6:3 7:3 10:13
charts [3] 8:11 21:13 25:4
chicago [3] 2:4 3:24 145:12
choice [2] 120:10 122:25
choose [1] 85:6
choosing [1] 117:18
choreographed [1] 13:10
chose [4] 17:9,10,11,14
chosen [2] 17:8 22:8
circuit [1] 34:11
circuit's [1] 34:22
cited [1] 128:3
city [1] 137:16
civil [1] 74:15
claim [1] 128:10
claims [1] 52:21
clarent [1] 106:17
clarify [2] 147:13 148:18
clarifying [2] 4:17 82:25
class [15] 13:8 27:5 46:25 47:2 48:9 49:20 79:3 106:11 148:6, 7,25 149:2 151:17,19
clean [5] 46:2 49:2,6 51:7 54:22
clean-up [2] 52:5,9
clear [6] 76:15 124:3,3,12,13 145:6
clearly [8] 17:4,5 24:24 43:19 58:23 98:9 128:18 151:13
clerk [4] 3:4,8 77:11 158:15
click [1] 62:17
client [4] 137:18,20 139:9 144:5
close [6] 42:13,21 43:5 63:13 80:4 141:4
closing [1] 126:19
closure [1] 88:5
code [3] 40:8 87:8 109:2
colleague [1] 73:9
collected [4] 59:20 66:2 75:2,8
come [30] 4:20,22 5:14 12:2 14:25 23:11,16 24:7,8 42:21 61:13 63:13 70:9 71:19 77:8 87:22 92:8 93:13 98:2 105:17 111:24 117:15 118:21 119:4 125:20 135:25 136:1 146:15 151:18 159:3
comes [2] 21:12 82:18
comfortable [1] 88:11
coming [6] 11:21 24:4 98:8 111:2,3 158:5
comment [6] 20:5 22:24 27:7 35:10 129:21 160:19
commentary [1] 86:25
commented [1] 32:9
comments [3] 29:20 39:19 99:13
committee [18] 49:10,14 55:3,14 56:23 57:12,23,24,25,25 58:6,8,14 59:10,11 67:23 72:11,14
common [4] 60:23 61:4 62:6 151:14
communicate [5] 35:20 100:18 104:25 145:16 160:20
communicated [16] 14:5,15 16:11 97:23 98:24 99:23 100:1 102:7,9,19 104:1 105:9,10,10,13 106:3
communicates [1] 15:18
communicating [1] 98:10
communication [3] 11:12 35:23 99:4
communications [17] 11:13,20,25 35:17 98:21 99:20 100:8,22,24 102:4,22 103:7,21 107:1,3 114:12 117:5
companies [6] 92:2,3,4 115:12 119:4 128:16
company [18] 13:6,9 25:7,17 35:12,20 94:25 99:10,19 101:15,19 102:3,4,14 103:1 105:22 136:16 155:21
company's [1] 37:11
compared [2] 16:8 38:21
comparing [1] 39:22
comparisons [2] 39:17,18
compel [1] 154:19
complaint [34] 10:19 19:22 20:13,17,19,22,25 21:19 34:21 45:7 49:1 50:3,7,17,18 52:15 56:24 86:19 92:3 109:17,21,23 130:8 134:21,24,25 136:4,14 139:10 143:15,18,23 147:16 155:24
complete [3] 45:12 79:25 162:11
completed [1] 78:10
completely [4] 25:5 103:7 117:15 153:24
completion [2] 78:4,6
complex [1] 29:14
complicated [1] 77:6
comply [6] 67:9 71:8 146:1 158:22 159:7 161:3
comprehension [1] 128:7
comprehensive [1] 21:13
computer [2] 45:8 58:9
computerized [1] 1:25
conceiving [1] 72:4
concept [1] 145:23
concern [8] 46:17 81:7 120:12 136:12 142:16,20 143:4 146:25
concerned [4] 57:5 104:6 143:6,8
concerning [6] 40:3 67:4 76:18 77:22 97:17 128:10
concerns [4] 63:24 125:13 136:9 145:2
conclude [1] 79:3
concluded [3] 78:25 83:23 129:14
conclusion [1] 86:12
condition [1] 144:8
conditions [1] 154:17
conduct [3] 80:6 141:23 142:3
conducting [1] 102:11
confer [1] 23:13
conference [4] 12:10,12,21 127:24
conferred [1] 123:1
conferring [1] 23:5
confident [3] 30:20 118:20,21
confidential [21] 50:6 94:23,24 119:8 141:1,9,11 142:13 143:20,21 144:1,10,11 145:17,25 147:1,2,14 151:21,22 155:22
confines [1] 149:9
confirm [1] 148:21
confirms [1] 148:19
conflicted [1] 59:7
connection [3] 33:16 52:16 58:7
consider [1] 73:1
consistent [1] 118:4
consolidated [1] 137:19
constitute [1] 59:12
construe [1] 150:16
construing [1] 150:15
consultant [1] 155:20
consultants [4] 144:13 146:8,21,24
consulting [5] 8:25 16:21 27:12 31:18 32:1
consumers [1] 91:2
consuming [1] 71:12
contained [2] 46:21 99:4
contention [15] 149:4,5,13,16,22 150:3,6,8,13,15 151:6,10,11,13,15
contentious [1] 79:20
contest [1] 87:8
context [3] 30:11 109:25 129:12
continue [1] 116:4
continued [3] 1:18 2:1 132:7
control [2] 85:13 132:11
controls [2] 128:17 130:9
conversion [1] 47:22
convert [2] 42:7,8
convey [2] 144:24 146:4
convince [3] 25:25 95:12 107:22
cookie [1] 53:22
cooperate [2] 125:11,13

Debra L. Pas, CSR, CRR
Official Reporter - U.S. District Court
(415) 431-1477

caught - cooperate

cooperation [1] 84:13
copied [1] 69:4
copies [4] 61:24 64:25,25 70:20
copy [9] 59:2,3 63:17 67:6, 68:10,22 69:4 74:1 139:3
core [1] 134:15
corporation [2] 2:10 4:6
correct [26] 5:16,17 16:18 28:6 31:4 37:5 38:17,24 40:9,21 42:13 43:1 52:9 56:25 60:16 61:21 63:15, 22 75:5,9,15 81:12 85:2 105:3 137:13 147:5
corrected [1] 122:20
correctly [1] 50:16
correspond [1] 37:11
corresponding [1] 147:15
cost [11] 15:23 62:9 67:12 72:4 73:4,21 74:1,10 76:2, 7 143:10
costs [8] 61:6 72:24 73:1 74:19 75:18 91:18 140:20 158:25
coughlin [2] 1:12 2:13
couldn't [3] 109:9 110:23 111:17
counsel [13] 3:5 27:15 144: 1,9,16,21,23 145:9,10 146: 8,8,16 153:20
count [1] 77:4
counted [1] 81:13
couple [13] 7:21 11:10 13: 19,21,22 15:13 28:18 77:4 84:5 108:8 112:13 115:23 119:22
course [12] 56:3 57:16 64: 3 71:6 85:15,15 89:23 102: 18 138:24 143:2,2 159:11
court [489] 1:2 3:6,9,15,22, 25 4:3,8,11 6:13 7:2,5,8, 13,17,23 8:3,7,9,17,23 9:2, 7,14,17,20,23 10:3,7,15, 18,21,24 11:5,24 12:6,18, 22 13:11,19,22 14:17 15:5, 14 16:1,19,25 17:7,10,19, 21 18:1,4,11,18 19:5,8,15, 18,20 20:5,11,14,20 21:1, 14,16 22:1,9,22 23:2,21, 22,23 24:11,15,18 25:1,5, 10,11,12,15,21 26:10,15, 20,23 27:1,6 29:8,18,25 30:16,22 31:2,5,10 32:5, 11 33:3,18,20 34:4,20 35: 19 36:10,22 37:6,10,17,23, 25 38:6,15,18,22,25 39:3,
10,15,19,24 40:2,10,13,16, 20,22 41:7,10,13,18 42:19 43:7,11 44:2,13,16 45:1, 16,23 46:7,16 47:12,15,19, 23 48:1,5,13,16,22 49:4, 12 50:11,14 51:1,24 52:5, 8 53:7 54:1,12,18 56:4,6,9, 12,16,17,21 57:1,16 59:1, 5,9 60:14,18 61:19,22 62: 12,22 63:3,6,9,11 64:3,20, 24 65:7,11,15 66:10,13,15, 19 67:4,8,9,18 68:1,16,20 69:6,23 70:1,6,10,12,15, 21 71:3,6,13,19,22 72:4,6 73:1,5,8,11,14,18 74:7,14, 21,24 75:7,10,14,16,25 76: 10,24 77:1,13 78:3,6,11, 14,19,22 79:6,14,16,22 80: 6,13,16,18 81:11,22 82:1, 5,6,8,18 83:6,11,13,17,20, 22 84:2,12 85:8,12,15 86: 1,3,6 87:2 88:11,13,19 89: 3,5,23 90:4,15 92:10,17 93:6,12,17 94:1,5,8,17 95: 3,10,24,25 96:6,19,24 97: 6,8,17 98:11,14,17,25 99: 6,22,25 100:4,7 101:6 102: 20 103:20 104:10,11,13, 17,19,21 105:3 106:4,23 108:9,20 109:11,14 110:1, 4,9,11,25 112:5,17 113:9, 13 114:5,24 115:20 116:5, 11,15,21 117:2,4,6,14,19, 23 118:5,16,23 120:1,3,8 121:25 122:4,5,18,21 123: 5,7,14,17,24 124:1,13,17, 24 125:7,10,17 126:9,22, 25 127:9,10,12,18,23 128: 1,20 129:19 130:5 131:2,6, 12,17,25 132:5,13 133:12, 15,18,21,25 134:4,8,16,25 135:5,13,16,21 136:7,23, 25 137:4,23 138:1,5,10,13, 13,16,20,24 139:5,11,15 140:7,18,22,25 142:1,5,8, 15,18 143:2,17,20 144:3,6, 18,19,23 145:3,10,22 146: 6,12,15,20,23 147:3,4,17, 23 148:14,16 149:2,4,14, 25 150:11,18,21 151:5,16, 25 152:22 153:6,21,24 154:12 155:12,17 156:1,5, 13 157:13,25 158:1,4,14, 17,21 159:6,17,21 160:2, 12,19 161:4,5,10,18 162:6, 15
court's [4] 70:11 88:7,10 97:3
courts [2] 45:7 129:13
cousin [1] 135:19
cover [1] 71:16
craft [1] 88:8
created [6] 21:25 22:18,20 43:20 45:19 127:7
creation [3] 45:20 47:6 49: 2
credible [2] 141:13,18
credit [1] 43:15
crm [13] 20:18 21:20 31:15, 17 32:1,8 35:13,17 86:21 91:14,17,20 156:24
cross [1] 141:6
crr [2] 1:24 162:18
csr [2] 1:24 162:18
cuneo [1] 22:13
current [3] 51:5 92:21 95:6
currently [1] 115:13
customer [49] 11:16,17,18, 25 22:5 29:1 30:7 31:21 33:16 34:1,16 35:13,14,22 90:21 96:24 97:20 98:2,3, 6,10,17 99:15 100:11 102: 12,24 103:16,18,24 104: 25 105:6,8 106:1,21 107: 12,23 108:22 110:2,21 113:16,18,22 121:12 122: 3 154:9,9,10 156:4,8
customers [73] 11:13,14 12:24 28:4 30:8 35:17,20 89:13,16 90:1,5,22,23 91: 11,13,16,17 97:11,23 98: 23 100:3,8,25 101:13,23 102:1,15 103:12 104:7 107:17 108:4,15,16,16 109:6 110:14 111:3,7,20 112:1,11 113:3,6,14,23 114:3,6,9,10,20,25 115:2, 4,6,17 116:20,25 117:5,12, 16,22 118:6 119:10,14,17, 23 120:20 121:8 122:2,13 136:8 150:19 153:12
cut [5] 23:21 97:2 103:6 115:16 117:11
cut-off [5] 89:8 91:25 92:6 118:20 120:25
cuts [1] 23:10
cw [1] 160:10

---

**D**

daily [3] 30:8 35:16,23
data [3] 35:7 61:4 125:2
date [11] 25:9 60:11 61:25 62:3 77:16 78:3 79:7,8,
12 129:25
dated [1] 48:23
dates [2] 79:22,23
dating [1] 145:11
day [4] 46:19 148:2,11 159: 22
days [11] 50:4,5 78:12 80: 22 94:6,8,12,16,20 95:3,6
days' [1] 93:20
dead [1] 84:14
deadlines [1] 79:18
deal [12] 10:3 36:20 69:3 71:9,10,11 75:25 89:15 96: 16 136:20 151:4 161:15
deals [4] 37:14 89:10 126: 16,18
dealt [1] 151:17
debit [40] 20:24 21:24 42: 25 43:20 44:3,4 45:6,18, 19,20 46:4,14,23 47:2,4,6 48:9,18 49:3,17 51:12 52: 2,6,20,22,24 53:8,13,24 54:4,13,23 76:19 113:7 130:4,13 131:4,6,21 140: 10
debra [3] 1:24 162:5,18
debt [10] 51:22 52:7,8,14, 17,19 53:5,8,11,14
december [1] 115:1
decide [3] 38:2 55:10 76:6
decided [4] 74:25,25 110: 11,12
decision [5] 69:3,21 74:17, 18 107:7
decisions [7] 97:20 98:7, 19 102:11 106:23 107:5, 13
declaration [6] 47:16,21,21, 24 51:10 53:1
declarations [3] 46:21 47:8 51:2
decline [1] 34:15
declining [2] 34:17 102:3
decreases [1] 107:1
defect [1] 28:25
defective [1] 122:14
defects [2] 34:14,16
defendant [1] 2:3
defendant's [8] 40:4 77:17, 18 99:9 145:4,8,10 147:9
defendants [36] 7:19 11:10 16:19 17:23 18:9 23:9 24: 16 26:12 27:10,22 28:6 31: 14 40:6 42:14 55:13 58:25 59:18 64:9 76:5 78:25 94: 21 101:2 106:11 116:3