Exhibit 15

MAYER
BROWN
ROWE
& MAW

September 12, 2005     RECD SEP 1 3 2005

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**VIA OVERNIGHT DELIVERY**

Shawn A. Williams
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

**Vincent Paul Schmeltz III**
Direct Tel (312) 701-8531
Direct Fax (312) 706-8146
tschmeltz@mayerbrownrowe.com

Re:     *In re Oracle Corporation Securities Litigation*
        Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Shawn:

        I have enclosed one DVD (ORC028) containing documents Bates labeled NDCA-ORCL 316200 – NDCA-ORCL 396756. These are additional documents that we have determined are responsive to the Court's March 10, 2005 Amended Order Setting a Discovery Plan.

        As with productions in the past, this production is being provided as a Summation database consisting of TIFF format image files. We will provide you with a source log within the next three weeks.

Very truly yours,

Vincent Paul (Trace) Schmeltz III

cc:     Lee H. Rubin
        James C. Maroulis

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent:  Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Exhibit 16

```
MAYER
BROWN
ROWE
& MAW
```

February 14, 2005

**VIA FACSIMILE**

Shawn A. Williams
Lerach Coughlin Stoia Geller
Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112

Main Tel (650) 331-2000
Main Fax (650) 331-2060
www.mayerbrownrowe.com

Lee H. Rubin
Direct Tel (650) 331-2037
Direct Fax (650) 331-4537
lrubin@mayerbrownrowe.com

Re:     In re Oracle Securities Litigation

Dear Shawn:

Pursuant to Magistrate Judge Spero's order of February 8, 2005, this letter sets forth Defendants' understanding of the threshold discovery that remains unresolved and Defendants' proposals for addressing those issues. The letter also contains a proposed timetable for conducting and completing various stages of discovery.

I.      **Issues for Resolution**

A.      **Plaintiffs' Responses to Discovery Requests**

Soon after the parties held their Rule 26(f) discovery conference marking the beginning of the discovery process, Defendants served on Plaintiffs both document requests and interrogatories largely aimed at gathering information concerning the factual basis behind Plaintiffs' allegations in the Revised Second Amended Complaint ("RSAC"), including allegations related to class certification. (*See, e.g.,* First Set of Interrogatories (served December 22, 2004); Second Set of Interrogatories (served December 24, 2004); First Set of Document Requests (served December 21, 2004); and Second Set of Document Requests (served December 22, 2004)). Remarkably, notwithstanding Defendants' undisputed right to acquire this information, Plaintiffs have yet to produce a single document or offer a single substantive response to Defendants' written discovery. Indeed, Plaintiffs have failed even to produce class certification-related documents, despite the fact that they filed their motion for class certification several weeks ago. Needless to say, any discovery plan must require Plaintiffs to begin fulfilling their discovery obligations by producing the requested information. Now that this litigation is past the motion-to-dismiss stage, Plaintiffs can no longer hide behind the anonymity of confidential witnesses and mere allegations of fraud. To the contrary, they are now required to "put their cards on the table" by telling Defendants what facts and witnesses support their claims. To this end, the timetable for discovery set forth below contains deadlines for Plaintiffs to produce the documents and information that already should have been furnished to Defendants.

Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  Manchester  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Shawn A. Williams
February 14, 2005
Page 2

We also address below specific areas in which Plaintiffs have improperly refused to provide information to which Defendants are plainly entitled.

**Confidential Witnesses.** Defendants are entitled to know the identities of the 49 Confidential Witnesses, including by reference to the numbers assigned to them in the RSAC. The conditions that Plaintiffs propose attaching to the disclosure of this information, see letter from S. Williams to the Honorable Martin Jenkins, dated February 3, 2005, will advance no legitimate interests of any party or witness but will instead result in an absurd game of litigation "hide and seek." Plaintiffs have no reasonable basis for proposing these extreme limitations on disclosing the identities of confidential witnesses. Indeed, when Plaintiffs and Defendants were negotiating the terms of the Stipulated Protective Order, Plaintiffs never suggested that *any information* in this litigation should be subject to such restrictions (even though Plaintiffs knew Defendants were seeking the identities of Confidential Witnesses). Moreover, while Plaintiffs have made vague claims that these unprecedented restrictions are required to protect Confidential Witnesses from harassment, Plaintiffs have not – and cannot – make any showing that any witness faces the threat of any harassment.

**Contention Interrogatories.** Defendants are entitled to know the facts that support the contentions in the RSAC. The RSAC is largely based on the testimony of, and on documents provided by, confidential witnesses. Certainly, Plaintiffs are in possession of this information now, given that they prepared the RSAC, and thus there is no reason for any further delay in providing the requested information to Defendants. Of course, such responses do not hamper Plaintiffs' right (and obligation) to supplement their responses as they develop additional facts in discovery.

**Burden in Responding to Discovery.** Plaintiffs assert that their burden in responding to Defendants' discovery requests is not as great as that facing Defendants. For example, Plaintiffs claim that while Defendants are required to perform extensive searches of computerized information, Plaintiffs themselves should not have to do so in order to provide a "complete" response to Defendants' discovery. Plaintiffs have cited no authority that might support their unequal-discovery theory.

**Refusal to Respond to Discovery about Witnesses in 26(a) Disclosures.** In response to Defendants' interrogatory requesting information concerning the 1000 individuals and entities in their 26(a) disclosures, Plaintiffs objected on the grounds that the request seeks *information about too many people and, as a result, is unduly burdensome.* This objection is directly contrary to the position that Plaintiffs took when the parties met and conferred about Defendants' contention that Plaintiffs had failed to live up to their obligations under Rule 26(a) by submitting a veritable phonebook of possible witnesses. At that time, Plaintiffs asserted (and ultimately represented to the Court) that they needed to list *every* witness that was included in the initial disclosures, and that Defendants would not be prejudiced because Defendants were free to seek discovery regarding these witnesses. Now that Defendants have done so, however, Plaintiffs have changed their tune, asserting that no such discovery should be permitted because Plaintiffs' initial disclosures are woefully over inclusive. This gamesmanship should stop.

Shawn A. Williams
February 14, 2005
Page 3

**Refusal to Respond to Class Certification Discovery.** In response to Defendants' interrogatories seeking discovery into class certification issues (*see* Defendants' Second Set of Interrogatories at Nos. 2-4) Plaintiffs have done nothing but stonewall. To begin with, Plaintiffs objected without providing even one iota of responsive information. After the parties' meet and confer on these responses, Plaintiffs have "taken under advisement" almost every one of the requests, in whole or in part. This continued delay is unacceptable.

**Attorney Work Product.** Plaintiffs have refused to produced numerous documents gathered from third parties under the rubric of "attorney work product." Put simply, this is not a valid objection to discovery into information provided to Plaintiffs by third parties. Defendants are entitled to such documents and to know the identity of the third parties from whom Plaintiffs received them.

**General Refusal to Timely Provide Responses.** Finally, Plaintiffs have altogether failed to be forthcoming in their discovery responses. In fact, in every response but two, Plaintiffs have completely objected to all of Defendants' discovery requests without offering even a partial response. These tactics are slowing the discovery process down needlessly and do not reflect a party litigant's good faith effort to comply with the Federal Rules of Civil Procedure.

**B.    Defendants' Responses to Discovery Requests**

**Speakers.** Plaintiffs have argued that they are entitled to discovery from anyone in Oracle because "Oracle itself is a 'speaker' of *all false statements made by its employees and agents in the scope of their employment*." (Feb. 3, 2005, Eli R. Greenstein Ltr. to V. P. Schmeltz III at 2). Defendants contend that because the core inquiry in this case is whether the people making public statements in their capacity as Oracle's agents knew that their statements were false or, at a minimum, acted with "deliberate or conscious recklessness" (see *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999)), the principal focus of discovery should be on information that was in the possession of or reasonably available to those who allegedly made the false representations. Accordingly, with respect to the forecasting/Suite 11i claims, Defendants have proposed producing information that was in the possession of or reasonably available to the five individuals who are alleged in the Revised Second Amended Complaint to have made false representations to the public: Larry Ellison, Jeff Henley, Edward Sanderson, Stephanie Aas and Jennifer Glass (collectively "Speakers"). Specifically, Defendants have offered to produce responsive documents in the possession of those employees who reported to the Speakers or to Jennifer Minton.

In our previous conversations on this issue, you have stated that you thought an agreement could be reached on the breadth of the discovery net that should be cast within the Oracle but that you required additional information concerning Oracle's organizational structure in order to evaluate our proposal. To that end, I have attached an organizational chart from the third quarter of 2001 for Oracle's U.S. operations and a list of personnel that reflects the Speakers' direct reports from that period. You will note that under our proposal, Oracle would

Shawn A. Williams
February 14, 2005
Page 4

be required to search the files of nearly 50 employees. If the scope of discovery is expanded only to the next tier of direct reports, Oracle would be required to search the files of several hundred employees. Given that the Speakers' knowledge and state of mind at the time of the alleged misrepresentations constitutes the heart of this case, Defendants' proposal provides Plaintiffs with access to the vast bulk of information that could conceivably bear upon Plaintiffs' claims. Any expansion in the scope of discovery beyond the files of the Speakers' direct reports is unlikely to produce any information that would ultimately impact the case and would undoubtedly impose an unreasonable burden on Oracle.

**Suite 11i.** The parties have submitted letter briefs to the Court concerning their disagreement on the appropriate scope of discovery into Suite 11i's performance and functionality; consequently, I will not rehash those arguments here. For purposes of attempting to develop a workable discovery plan, we are prepared to produce information possessed by the Speakers' Group that reflects any lost sales because of alleged Suite 11i problems as well as any such information that directly refers to interoperability problems between or among Oracle modules within Suite 11i.

**Customers.** In their Initial Disclosures, Plaintiffs identified over 350 customers as persons who are likely to have discoverable information to support their claims. They have subpoenaed 93 customers, seeking virtually all information in the customers' files related to their contacts and experience with Oracle and its products over the period of several years. As Plaintiffs themselves have acknowledged, discovery cannot be taken from all of the customers listed in the Initial Disclosures. Nor, as a practical matter, is it viable to proceed with discovery on the 93 customers that Plaintiffs already have subpoenaed. Instead, Defendants propose that Plaintiffs select some representative sample of customers (perhaps from those customers identified in the Complaint), which would be the subject of discovery. With respect to those customers, Plaintiffs would be permitted to proceed with appropriately tailored third party discovery and Oracle would produce relevant documents relating to its interaction with those particular customers. Although Defendants have no magic formula for determining the size of the representative group of customers from which Plaintiffs may seek discovery, we believe that something on the order of 25 customers would provide Plaintiffs with ample opportunity to develop their case.

**Accounting Claims.** The RSAC alleges that "defendants created phony sales invoices and improperly recognized revenue from past customer credits and overpayments it had held in reserve without informing its customers. . . . On November 17, 2000, Oracle executed more than 46,000 sham invoice transactions converting . . . reserved overpayments to revenue totaling approximately $228 million." In 2002, Plaintiffs made an *Ex Parte* Application for an Order Enjoining Defendants to Cease Altering Evidence, Directing Defendants to Preserve Evidence and Granting Plaintiffs' Particularized Discovery to Preserve Evidence based on unsubstantiated and unpleaded allegations of an alleged fraudulent cover-up of the purportedly "sham invoice transactions." The Court denied Plaintiffs' application.

Shawn A. Williams
February 14, 2005
Page 5

Plaintiffs now seek broad discovery into Oracle's accounting processes, including "all documents and communications" relating to debit and credit memos, the reconciliation of Oracle's accounts receivable to its general ledger account, and other similarly broad information. *See* Req. Nos. 28, 29, 37, 38, 39 and 40 ("all documents and communications relating to:" Oracle's monthly reconciliation of its accounts receivable to its general ledger; "Oracle's credit memos and monthly credit memo registers;" "*any* miscellaneous offset report;" "*any* miscellaneous receipt write-off;" "any measures taken from October, 2002 to the present related to refunding customers, adjusting or reconciling customer invoices, or adjusting credit analyst notes for all customers"). Furthermore, Plaintiffs seek discovery into the events alleged in either their *Ex Parte* Application or Defendants' Opposition to that application. *See, e.g.* Req. No. 34 ("*pro forma* website used to generate *pro forma* invoices for clients"). And, finally, Plaintiffs seek discovery of information up to the present day on a wide variety of issues—again, based on the *Ex Parte* Application. *See, e.g.,* Req. Nos. 37 (2002); 38 (2003); 40 (present); 41 (2003).

Defendants contend that the proposed discovery into Oracle's accounting processes bears no rational connection to the accounting allegations in the RSAC and thus exceeds the bounds of permissible discovery. Oracle proposes producing documents, reports and communications, including:

- Those generated as a result of the alleged "On Account Cleanup" in November 2000;

- The 46,000 allegedly false debit memos, including historical records of those debit memos and all 46,000 allegedly false debit memos as they exist today;

- The accounting treatment for these 46,000 debit memos, including any instances in which a debit memo was posted to the general ledger;

- Those communications relating to the decision to perform the "On Account Cleanup," including any analysis of why the cleanup was necessary in light of Oracle's internal conversion to Suite 11i.

To the extent that much, if not all, of this information is in Oracle's Global Single Instance Production, Oracle will consider running specific queries to compile additional information that directly bears on the accounting allegations in the RSAC.

**Time Frame.** Despite the fact that Plaintiffs' class period covers a three month period from December 2000 through February 2001, Plaintiffs seek documents and information for a one-year period from June 1, 2000 to June 30, 2001. In some of their requests, Plaintiffs seek information from 2002 through the present. *See, e.g.,* Request for Production Nos. 37 (August 1, 2002 – December 31, 2002); 38 (September 1, 2002 – March 31, 2003); 43 (October 1, 2002 – March 31, 2003); and 44 (October 1, 2002 – present).

Shawn A. Williams
February 14, 2005
Page 6

Defendants have offered to produce information from June 1, 2000 through April 2001 ("Relevant Time Period"), as well as documents created after that time that refer to events or conduct from that time period. Plaintiffs have rejected this proposal and offered no alternative.

**Meta Data.** Plaintiffs have insisted that Defendants produce documents that were originally created electronically in their native format. Plaintiffs contend that they need electronic documents in their original format in order to review the "meta data" accompanying those documents. Plaintiffs also have claimed that it will be less burdensome for them to review electronic documents in their native formats than to examine those same materials in hard copy. In response, Defendants have explained that because Oracle has preserved and collected documents relating to the claims in the litigation *in paper format* since the initial securities complaints were filed and the Special Litigation Committee was convened over three years ago, it would be an immense burden on Oracle to gather those same documents electronically. Moreover, consistent with Fed.R.Civ.P. 34, Defendants intend to identify documents that are responsive to specific requests, rather than produce them as they are kept in the ordinary course of business. This approach will dramatically reduce any burden Plaintiffs might otherwise face as a result of production in paper format.

That being said, Defendants will consider producing new data (*i.e.*, documents that have not already been generated in paper format) in a searchable format with relevant meta data. Defendants are willing to do so, however, only if Plaintiffs agree to pay the costs of such an effort and an understanding is reached on the specific kind of meta data that would be included in the production. On the latter point, Plaintiffs thus far have been unwilling to provide any meaningful guidance concerning the kind of meta data they seek or the reasons they believe such data is important to their case. Absent some showing of need, the substantial cost in gathering and producing documents in a searchable format cannot be justified.

## II.    Discovery Timetable

In order to create an orderly and efficient discovery process, Defendants propose the following timetable for conducting and completing key stages of discovery:

**Class Certification Discovery.** The parties will in good faith attempt to resolve all class certification discovery objections by Monday, February 21, 2005. Plaintiffs will be required to produce responsive documents by Monday, March 7, 2005. Depositions of the proposed class representatives will take place between March 21 and April 15, 2005. Defendants' brief in opposition to the motion for class certification will be due on May 16, 2005 and Plaintiffs' reply will be due on June 13, 2005. Oral argument will be held in July 2005 or at the Court's earliest convenience thereafter. Defendants are prepared to stipulate to the proposed modification in the class certification briefing schedule.

**Initial Round of Document Discovery.** Defendants already have produced more than 45,000 of pages of documents. Defendants will make a rolling production of documents and will complete their initial production of responsive documents by March 21, 2005. Although

Shawn A. Williams
February 14, 2005
Page 7

Defendants will likely produce additional documents after March 21, based on further review and investigation in the case, this initial production will likely constitute the vast majority of responsive documents. Plaintiffs will produce responsive non-class certification documents by March 21, 2005.

**Initial 30(b)(6) Depositions.** Rule 30(b)(6) depositions that have been noticed by Plaintiffs (on accounting, forecasting, and Suite 11i interoperability) will take place between March 28 through April 22, 2005.

**Fact Discovery.** Between April 22, 2005 and February 24, 2006, the parties will engage in fact discovery, including written discovery and depositions. Defendants presently intend to depose the 49 Confidential Witnesses referenced in the RSAC.

**Expert Discovery.** The parties will exchange any affirmative expert reports on March 3, 2006 and any rebuttal reports on April 3, 2006. The parties will complete expert discovery by May 22, 2006.

Sincerely,

Lee H. Rubin

Lee H. Rubin

Enclosures
cc      Vincent Paul Schmeltz III
        James C. Maroulis

# Exhibit 17

| M A Y E R |
| B R O W N |
| R O W E |
| & M A W |

Mayer, Brown, Rowe & Maw LLP
190 South La Salle Street
Chicago, Illinois 60603-3441

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Vincent Paul (Trace) Schmeltz III
Direct Tel (312) 701-8531
Direct Fax (312) 706-8146
tschmeltz@mayerbrownrowe.com

March 4, 2005

**VIA FACSIMILE**

Shawn A. Williams
Lerach Coughlin Stoia Geller
  Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

Re:   In re Oracle Corporation Securities Litigation

Dear Shawn:

This letter provides a further revised list of Oracle's United States employees that report to the "Speakers" and Jennifer Minton as part of Defendants' "Speaker" objection (originally set forth in my February 1, 2005) and identifies the Area Vice-Presidents in NAS, OPI and OSI.

As in my prior letters, the Speakers and Ms. Minton are listed in bold, along with their direct reports, and the titles of each identified individual during the relevant timeframe.

**Lawrence J. Ellison**, Chairman and CEO

Mr. Ellison's direct reports were Sohaib Abbasi, SVP, Tools; Carolyn Balkenhol, Executive Admin. Assistant; Mark Barrenechea, SVP, CRM Applications; Safra Catz, EVP; Jeff Henley, CFO & EVP; Mark Jarvis, SVP & Chief Marketing Officer; Dirk Kabcenell, Software Developer – Architect; Joseph Lockhart, SVP; Jay Nussbaum, EVP, OSI; Mark Porter, VP, Software Development; George Roberts, EVP, NAS; Mike Rocha, VP, Product Development; Chuck Rozwat, EVP, Database Server; Edward J. Sanderson, EVP, OPI & Latin America; Edward Screven, Software Developer – Architect; Ron Wohl, EVP, Applications.[1]

**Jeffrey O. Henley**, Chief Financial Officer and EVP

Mr. Henley's direct reports were Stephanie Aas, Director Investor Relations; Bruce M. Lange, SVP, Treasury; Deborah A. Lange, SVP, Tax; Mathew Mayerson, VP, Manufacturing & Distribution; Kate L. McGee, VP, Corporate Affairs; Jennifer L. Minton, SVP, Corporate

---

[1] We do not intend to produce documents from the following direct report of Mr. Ellison: Lawrence Lynn, HR Director.

Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles Manchester New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Shawn A. Williams
March 4, 2005
Page 2

Controller; Sharon Montoya Bretz, Executive Admin. Assistant; Anil Vora, VP, Oracle Financing Division.[2]

**Edward J. Sanderson**, EVP, OPI & Latin America

Mr. Sanderson's direct reports were Keith G. Block, SVP; Richard P. Blotner, Business Planning VP-Ops; Valerie A. Borthwick, SVP; Jay Carter, Regional Manager III; Michael P. DeCesare, Area VP IV; Sebastian J. Gunningham, SVP, Latin America; Susan Margaret Marks, Executive Admin. Assistant; Steve McLaughlin, Area VP II; Mark A. Salser, SVP, Emerging Business & Technology; Shari A. Simon, SVP, New Markets; Thomas Thimot, Area VP; Frank Varasano, EVP.

**Stephanie Aas**, Director Investor Relations

Ms. Aas' direct reports were Jenn Bicho, Investor Relations Coordinator; Joelle Teresa Fitzgerald, Investor Relations Manger; Mary Ann Riles, Investor Relations Program Manager.

**Jennifer Glass**, VP, Corporate Finance

Ms. Glass' direct reports were Stacey Torman, Director of Corporate Public Relations and Letty Ledbetter, Director of Corporate Public Relations.

**Jennifer L. Minton**, SVP, Corporate Controller

Ms. Minton's direct reports were Judi Allen, Executive Admin. Assistant; Peter Donnelly, VP; Jim English, VP, Finance; Christian Facey, Senior Finance Director; Larry Garnick, VP & Assistant Corporate Controller; Sarah J. Kopp, Senior Finance Director, OSI; Annica Magnusson, VP, Internal Audit; Cheryl Jean McDowell, Latin America VP, Finance and Administration; Estele Oloresisimo, Executive Admin. Assistant; Daniel N. Sharpley, VP, Finance; Thomas A. Williams, VP, Finance Operations; David Noel Winton, Senior Finance Director.

In addition, the following individuals, not listed above, were Area Vice Presidents in NAS, OPI or OSI during 3Q01: Richard Batenburg, Ted Bereswill, John Boucher, Ted Brady, Richard Burkhart, Michael Cochran, Jonathan Colehower, Al Correa, Miguel Dainesi, Timothy Diaz, Joseph DiBartolomeo, James Felicetti, John Fikany, Stephen Johnson, Jane Kaufman, Markwood Keeney, Anthony Kender, Ann Lanier, William Lay, Barry Leffew, Scott McIntyre,

---

[2]     As stated in prior letters, we do not intend to produce documents from the following direct reports of Mr. Henley: Daniel Cooperman, Senior Vice President, General Counsel and Secretary; and Joyce E. Westerdahl, Senior Vice President, Human Resources.

Scott Miller, Matthew Mills, David Natelson, Lisa Pope, Michael Rosser, Robert Santimauro, Larry Sells, Jon Simmons, Stephen Wellen, Mark Wood.

Very truly yours,

Vincent Paul (Trace) Schmeltz III

cc     Willow E. Radcliffe
       Lee H. Rubin
       James C. Maroulis

Exhibit 18



**LERACH**
**COUGHLIN**
**STOIA**
**GELLER**
**RUDMAN**
**&ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Eli R. Greenstein

April 28, 2005

<u>VIA FACSIMILE</u>

Lee Rubin, Esq.
MAYER, BROWN, ROWE & MAW LLP
Two Palo Alto Square
El Camino Real, Suite 300
Palo Alto, CA  94306
650/331-2060 (fax)

    Re:    *Nursing Home Pension v. Oracle Corporation*
            Civil Case No. CV-01-00988-MJJ

Dear Lee:

    I write to request that defendants produce responsive documents from the files of Ivgen Guner as part of defendants' document production. Based on Jennifer Minton's recent deposition testimony and documents produced by defendants thus far, it is clear that Ms. Guner played a substantial role in Oracle's financial forecasting process during the relevant time period. Ms. Minton testified that Ms. Guner was involved in preparing the underlying analyses for Oracle's "upside reports" and performed other tasks related to Oracle's financial forecasting process. Ms. Minton also testified that she consulted with Ms. Guner regarding the upside reports and even spoke with Ms. Guner prior to her April 21, 2005 deposition to clarify a forecasting issue relating to pipeline conversion calculations. Ms. Minton testified that Ms. Guner reported directly to her during at least a portion of the relevant time period and also reported to Ed Sanderson during the relevant time period. Ms. Guner's name also appears on many documents already produced by defendants related to forecasting (*e.g.*, Minton Ex. 8).

    Given the above and the obvious relevance of Ms. Guner's files, please explain why Ms. Guner's name does not appear in your February 18, 2005 letter to Shawn which purports to list the names of Ms. Minton's direct reports. In any event, irrespective of whether Ms. Guner was technically one of Ms. Minton's direct reports, the March 10, 2005 Amended Order Setting Discovery Plan allows plaintiffs to seek documents from "[o]ther individuals, as agreed upon by the parties or ordered by the Court." Order at 1. Consider this a request to obtain documents in Ms. Guner's files. Please let me know by 5:00 p.m. PST tomorrow whether you agree to produce Ms. Guner's files, as the deadline for defendants' document production is rapidly approaching.



**LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS** LLP

April 28, 2005
Page 2

    If you have any questions regarding the above, please call me. Thank you for your kind attention to this matter.

Very truly yours,

Eli R. Greenstein

ERG:cmb

T:\CasesSF\Oracle3\Corres\Rubin4-28-05_ERG.doc

# Exhibit 19



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Eli R. Greenstein
Elig@lerachlaw.com

May 9, 2005

<u>VIA FACSIMILE</u>

Vincent P. Schmeltz, III, Esq.
MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street
Chicago, IL 60603-3441
312/706-8146 (fax)

Re:    *In re Oracle Corp. Sec. Litig.*
       Master File No. C-01-0988-MJJ

Dear Trace:

We are in receipt of your May 5, 2005 letter stating that Oracle's "personnel database" does not include Ivgen Guner as one of Jennifer Minton's direct reports. It appears that Oracle's personnel database is inaccurate, incomplete and/or directly at odds with Jennifer Minton's sworn deposition testimony. In fact, as I stated in my April 28, 2005 letter, Ms. Minton testified that Ms. Guner reported directly to her during the second half of the relevant time period and may have begun working for her as early as December 2000. Minton Dep. Tr. at 14:2-3; 42:18-24. Ms. Minton also testified that Ms. Guner supported Frank Varsano and Sandy Sanderson (one of the purported "speakers") during the first half of the relevant time period. *Id.* at 42:18-24. Additionally, Ms. Minton testified that Ms. Guner was responsible for the financial analyses underlying Oracle's "upside reports" which were used by Ms. Minton to derive her upside adjustments. *Id.* at 208:19-23.

Your May 5, 2005 letter did not provide any explanation of why Oracle's "personnel database" is inconsistent with Ms. Minton's sworn deposition testimony. Nor did your letter identify *why* you searched Ms. Guner's files even though you contend she was not listed as one of Ms. Minton's direct reports. Finally, your letter did not confirm whether there are other individuals, like Ms. Guner, whose files were searched even though they were not listed in your March 4, 2005 letter or included in one of the categories in Section I.B of the Court's March 10, 2005 Amended Order Setting Discovery Plan. If there are, please provide the names of those individuals and explain why you decided to search their files.

Given both your failure to explain the above questions raised in my April 28, 2005 letter, and the irreconcilable conflict between Ms. Minton's deposition testimony and Oracle's purported "personnel database," we are justifiably concerned that we are not getting accurate information about Oracle's organizational structure. We are also concerned that there are other crucial percipient witnesses at Oracle, like Ms. Guner, who were direct reports in practice, but whose files were not searched merely because they were not listed as a "direct

LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

Vincent P. Schmeltz, III, Esq.
May 9, 2005
Page 2

report" in Oracle's so-called "personnel database." Please provide a clear explanation of the above and the questions raised in my April 28, 2005 letter as soon as possible so we can determine whether your list of direct reports was accurate, and ensure that we are getting all responsive documents pursuant to the Court's March 10, 2005 Amended Order Setting Discovery Plan.

Thank you for your kind attention to this matter.

Very truly yours,

Eli R. Greenstein

ERG:cmb
cc:  Lee Rubin, Esq

T:\Cases.SF\Oracle3\Corres\Schmeltz 5-9-05erg.doc

# Exhibit 20

MAYER
BROWN
ROWE
& MAW

May 5, 2005

Mayer, Brown, Rowe & Maw LLP
190 South La Salle Street
Chicago, Illinois 60603-3441

_VIA FACSIMILE (415) 288-4534_

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Eli R. Greenstein
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

Vincent Paul Schmeltz III
Direct Tel (312) 701-8531
Direct Fax (312) 706-8146
tschmeltz@mayerbrownrowe.com

Re:    In re Oracle Corporation Securities Litigation,
       Case No. C-01-0988-MJJ (Consolidated)

Dear Eli:

I write in response to your May 5, 2005 letter.  According to Oracle's personnel database, Ms. Guner was not a direct report to Ms. Minton.  Thus, I have neither included her on the list of Custodians nor inadvertently left her out of my March 4, 2005 letter.  Nonetheless, we have reviewed her files in accordance with Section I.B of the Court's Discovery Plan.

Kind regards,

Vincent Paul Schmeltz III

TS:tt

cc:    Shawn Williams, Esq.
       Lee H. Rubin, Esq.
       James C. Maroulis, Esq.

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent:  Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Exhibit 21

February 1, 2005

**VIA FACSIMILE**

MAYER
BROWN
ROWE
& MAW

Honorable Martin J. Jenkins
United States District Court
Northern District of California -- San Francisco Division
450 Golden Gate Avenue, 19th Floor
San Francisco, CA 94102

Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112

Re:   In re Oracle Corporation Securities Litigation,
      Case No. C-01-0988-MJJ (Consolidated)

Lee H. Rubin
Direct Tel (650) 331-2037
Direct Fax (650) 331-4537
lrubin@mayerbrownrowe.com

Dear Judge Jenkins:

In accordance with the Court's December 10, 2004 Amended Pretrial Order, Defendants ask the Court to issue a protective order limiting discovery in the above referenced cases as it relates to plaintiff's allegations of Suite 11i "defects."[1]

*Summary Of Discovery Dispute*:    The parties disagree as to the appropriate scope of discovery regarding plaintiffs' allegations concerning Oracle's Suite 11i software product. Plaintiffs seek broad discovery concerning virtually every facet of Suite 11i, including development, marketing, implementation, and customer communications. (*see e.g.*, Ex. A, Doc. Req. Nos. 20, 22, 23-26; Ex. B, December 15, 2004, Dep. Notice at 3). However, Plaintiffs have ultimately acknowledged that they largely are most interested in taking discovery about alleged product "bugs" or "defects" in Suite 11i. Plaintiffs have not alleged, and cannot allege, that Oracle represented to the market that Suite 11 was problem-free. Indeed, it is common knowledge that new integration and implementation challenges accompany new software products and it is undisputed that Oracle and Oracle users publicly discussed those issues in connection with 11i before the relevant period (3Q01), and yet, Oracle continued to sell 11i software and make record profits in the two quarters preceding 3Q01. The real issue in this securities case is whether the persons who allegedly made false statements had knowledge that the alleged 11i integration defects were contemporaneously affecting Oracle's ability to achieve its 3Q01 market guidance.

Production of company-wide documents that reflect routine product implementation issues serve no legitimate purpose in this securities case and would be extraordinarily burdensome to people -- thousands of people worked on implementation of the software at more than a thousand customers and generated perhaps millions of documents in the course of performing that work. Instead, only documents that refer to 11i integration problems in connection with lost sales opportunities or sales forecasts are relevant in this case.

[1] Defendants certify that they have met and conferred with Plaintiffs about these issues. However, the parties were unable to come to an agreement regarding the appropriate scope of discovery regarding plaintiffs' allegations concerning Oracle's Suite 11i software product.

Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles Manchester New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Accordingly, Defendants have offered to produce documents concerning alleged 11i integration defects (i) that were received by or sent to: (w) the persons who Plaintiffs allege made false statements ("Speakers"); (x) persons who directly reported to the Speakers; (y) members of the executive committee; and (z) persons who directly reported to Jennifer L. Minton, who was responsible for Oracle's forecasting (the "Speaker Documents") and (ii) that refer to lost 3Q01 sales and/or sales forecasts. Defendants will also provide deposition testimony regarding Oracle's forecasting process during the relevant time period and the extent to which Speakers were informed that alleged 11i integration problems were affecting sales or sales forecasts. Defendants should not be required to provide information concerning routine remediation of software implementation problems in the ordinary course of Oracle's business.

Plaintiffs always have pled this case as a missed forecast case, making statements regarding 11i functionality actionable only to the extent that the alleged defects affected sales forecasts in the quarter at issue. *See e.g., Nursing Home Pension Fund v. Oracle Corp.*, 242 F. Supp. 2d 671, 684 (N.D. Cal. 2002) ("*Oracle I*") ("Plaintiffs contend that '[t]his is a fraud case in which false statements about product integration are intertwined, and served as a basis for false forecasts about applications revenue growth.'") (quoting Plaintiffs' Opp. To Mot. To Dismiss First Am. Consol. Compl. at 17:16-18); *see also In re Oracle Corp. Secs. Litig.*, 2003 WL 23208956, *9 (N.D. Cal. March 24, 2003) ("*Oracle II*") (holding that the RSAC contained the same defects as the FACC in that plaintiffs failed to establish "'how Oracle's alleged difficulty implementing the 11i Suite affected the revenue projections made prior to the close of 3Q01.'" (quoting *Oracle I*)), *rev'd*, 380 F.3d 1226 (9th Cir. 2004) ("*Oracle III*"). Although the Ninth Circuit came to a different conclusion as to whether plaintiffs sufficiently pled scienter, it did not change the fact that allegations regarding 11i integration defects are relevant in this securities fraud case only to the extent that the alleged defects were such that they caused the Speakers to believe that Oracle "would not make its third quarter sales projections due to declining sales to dot-com businesses and defects in the 11i Suite." *Oracle III* at 1232-34.

*__Legal Authority__*: The Court has "extensive control over the discovery process," *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1074-75 (9th Cir. 2001), including the power to "define the issues and to control discovery in conformity with such a definition." *Zaustinsky v. Univ. of Calif.*, 96 F.R.D. 662, 625 (N.D. Ill. 1983). Indeed, the Manual For Complex Litigation notes that "the judge's most important function in the early stages of litigation management is to press the parties to identify, define, and narrow the issues." MOORE'S FED. PRACTICE MANUAL FOR COMPLEX LITIG. § 11.41 (4th ed. 2004). The power to define and narrow the scope of discovery arises from the Court's inherent power to control its docket, as well as the express authority provided by a panoply of Federal Rules to ensure the just and speedy resolution of cases. *See, e.g.,* Fed. R. Civ. P. 16(a); Fed. R. Civ. P. 26(c).

The discovery scope that Oracle seeks is reasonable and properly tailored to the allegations of the RSAC. Plaintiffs' discovery should be limited to information concerning alleged 11i integration defects within the Speakers' knowledge that refer to lost sales opportunities and/or sales forecasts, as only that information is reasonably calculated to lead to discovery of admissible evidence in this securities case.

Honorable Martin J. Jenkins

Respectfully submitted,

Lee H. Rubin
Counsel for Defendants

cc:    Shawn A. Williams, Plaintiffs' Counsel

Exhibit 22



**LERACH**
**COUGHLIN**
**STOIA**
**GELLER**
**RUDMAN**
**& ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Monique C. Winkler
MoniqueW@lerachlaw.com

June 3, 2005

<u>VIA FACSIMILE</u>

Shirish Gupta, Esq.
MAYER, BROWN, ROWE & MAW LLP
Two Palo Alto Square
El Camino Real, Suite 300
Palo Alto, CA 94306

Re:    *In re Oracle Corporation Securities Litigation*
       U.S.D.C. ND. Cal. Master File No. C-01-0988-MJJ

Dear Shirish:

Pursuant to our conversation earlier today, I write to identify examples from defendants' production of bad images and tif files produced with blank OCR text. Documents identified as NDCA-ORCL 190328, 250021, and 270738 are examples of bad images. Copies are attached. Documents identified as NDCA-ORCL 259694-259702 are examples of tif files produced with blank OCR text. As we explained on the call, the issues render cds ORC011-ORC016 unusable. If you have any questions, please do not hesitate to contact me.

Very truly yours,

Monique C. Winkler

MCW:mog
Enclosures

T:\cases\SF\oracle3\corres\Gupta_060305.doc







# Exhibit 23

Monique Winkler - Oracle Securities: Document production issues

| | |
|---|---|
| **From:** | "Gupta, Shirish" <SGupta@mayerbrownrowe.com> |
| **To:** | <moniquew@lerachlaw.com> |
| **Date:** | 6/3/2005 6:18 PM |
| **Subject:** | Oracle Securities: Document production issues |
| **CC:** | "Schmeltz, Trace" <tschmeltz@mayerbrownrowe.com> |

Monique,

In response to your June 3, 2005 letter, we have reviewed our set of the CDs containing the documents that you referenced. The documents (NDCA-ORCL 190328, 250021 and 270738) are not "bad" images. Instead, they are TIFF renderings of graphics. Specifically, they are icons to webpages that were produced. For example, the icon at NDCA-ORCL 190328 is associated with the webpage at NDCA-ORCL 190335. The Summation load file that we provided you should show that these documents are part of one message unit. Please let me know if you are finding any errors with the load file.

In addition, the documents at NDCA-ORCL 259694-259702 were produced with blank OCR text because they are stored by Oracle in non-native, non-searchable electronic format. Oracle scans these images from paper format and stores them electronically. As such, we were not under an obligation to produce them in searchable format. See Amended Order Setting a Discovery Plan at II.B.(b). In any case, we are willing to discuss cost-sharing as to scanning these documents.

Please be advised that I will be on vacation next week. As such, feel free to contact Trace or me (in a week) with any other concerns.

Sincerely,
Shirish

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Exhibit 24



**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Shawn A. Williams
Shawn W@Lerachlaw.com

June 8, 2005

<u>VIA UPS NEXT DAY AIR</u>

Vincent P. Schmeltz, III, Esq.            Lee Rubin, Esq.
MAYER, BROWN, ROWE & MAW LLP              MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street                  Two Palo Alto Square
Chicago, IL 60603-3441                    El Camino Real, Suite 300
                                          Palo Alto, CA 94306

     Re:    *In re Oracle Corp. Sec. Litig.*
           Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Counsel:

    Enclosed please find samples of documents printed from the CD numbers 11-16 that defendants have produced pursuant to Magistrate Judge Spero's March 10, 2005 Order. The CDs are clearly corrupted in one way or another. Thousands of pages of documents are simply gibberish and thousands of pages of documents say "unsupported format." I understand that these documents are likely Excel spreadsheets which, as you know, should be in their native format. Please do whatever is necessary to correct the problem and reproduce the relevant documents. Please contact me with any questions.

                      Very truly yours,

                      Shawn A. Williams

SAW/rc

T:\CasesSF\Oracle3\Corres\Schmeltz_Rubin 6_8_05.doc