Exhibit 45

December 15, 2004

**VIA FACSIMILE**

Honorable Martin J. Jenkins
United States District Court
Northern District of California – San Francisco Division
450 Golden Gate Avenue, 19th Floor
San Francisco, CA 94102

MAYER
BROWN
ROWE
& MAW

Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112

Lee H. Rubin
Direct Tel (650) 331-2037
Direct Fax (650) 331-4537
lrubin@mayerbrownrowe.com

Re:    In re Oracle Corporation Securities Litigation,
       Case No. C-01-0988-MJJ (Consolidated)

Dear Judge Jenkins:

In accordance with the Court's December 10, 2004 Amended Pretrial Order, Defendants Lawrence J. Ellison, Jeffrey O. Henley, Edward J. Sanderson and Oracle Corporation (collectively, "Oracle") write to request a Fed. R. Civ. P. 26(c) protective order, requiring that Plaintiffs immediately withdraw, without prejudice, 107 subpoenas issued to Oracle's customers and other entities, until (i) Plaintiffs have reasonably attempted to obtain appropriate discovery from Oracle, and (ii) the parties (or the Court) have determined the proper scope of discovery in this case.[1]  Given the short return date for the subpoenas, Oracle seeks a protective order on an expedited basis.

_**Summary Of Discovery Dispute**_: Within one week of the Case Management Conference, in which the Court expressed a strong preference for staged, proportionate discovery, and limited the number of document requests that each party could propound to 75, Plaintiffs issued a blizzard of third-party discovery.  Between December 8 and 15, Plaintiffs issued over *one hundred subpoenas*, which threaten to harm Oracle by burdening over seventy-nine of Oracle's largest customers.[2]  These subpoenas contain more than *2,300* requests for documents and seek information from a three and-a-half year period, from January 1, 2000 through June 18, 2003, well beyond the defined class period of December 14, 2000 through March 1, 2001.  Moreover, they contain a number of highly inflammatory, irrelevant requests that, combined with the sheer volume of documents sought, threaten to impose an immediate harm on Oracle.

Plaintiffs' requests are extraordinarily broad; they are neither tailored to the specific accounting and product issues outlined in the Revised Second Amended Complaint ("RSAC") nor issued to parties that are actually likely to have responsive information.  For example, Plaintiffs seek to compel seventy-nine Oracle customers (a number of whom are not even

---

[1] Oracle certifies that it has satisfied its obligation to confer with Plaintiffs about these issues. Oracle has requested that Plaintiffs voluntarily withdraw their subpoenas without prejudice. Plaintiffs have indicated that they intend to amend their subpoenas to shorten the applicable time periods but otherwise have refused to withdraw their subpoenas.

[2] See, *e.g.*, Ex. A.

Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  Manchester  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent:  Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

mentioned in the RSAC) to produce "[a]ll documents and communications concerning Oracle's products, licenses or services," without limitation to the Suite 11i allegations pleaded in the RSAC. Ex. A, Req. No. 1. They also ask financial institutions to produce "[a]ll documents concerning Oracle's accounting or internal control systems," regardless of whether those documents concern the allegations in the RSAC. Ex. B, Req. No. 10. Plaintiffs even seek "[a]ll documents and communications with governmental, judicial or law enforcement agencies . . . concerning Oracle, Ellison, Henley, Sanderson," regardless of whether such communications relate to *anything* pleaded in the RSAC. Ex. C, Req. No. 4. In certain cases, Plaintiffs have issued two subpoenas, sometimes to different offices, of the same entity. At bottom, this raft of discovery is nothing more than an improper fishing expedition.

Although the subpoenas seek broad swaths of information, Plaintiffs have set short return dates of January 7, 10 & 17, 2005. The return dates closely follow the deadline for the parties to make their Rule 26 initial disclosures, and are contemporaneous with the time period for Oracle to respond to Plaintiffs' first set of document requests. As a consequence, Plaintiffs will have had no opportunity to review the more than 80,000 pages of documents Oracle that is prepared to produce in order to determine if the information it now seeks from Oracle's customers and other entities was provided directly by Oracle, or at least could be obtained from Oracle itself.

This Court is the most appropriate forum for determining the proper scope of discovery, given its familiarity with the pleadings, facts and issues in the case. Unless Plaintiffs are ordered to withdraw their subpoenas, however, the parties will be forced to litigate in district courts around the country, a process that will impose enormous burden and expense on both parties.

***Legal Authority***: It is well within this Court's discretion to order Plaintiffs to withdraw their one hundred and seven subpoenas as part of managing discovery in this case.[3] The Court may require that Plaintiffs first request the information they now seek directly from Oracle before burdening third parties.[4] More importantly, however, if the parties cannot agree as to the appropriate scope of discovery, this Court should make that determination in the first instance so that third-party discovery and discovery between the parties can proceed in an efficient and uniform manner.

***Relief Requested***: Oracle respectfully requests that the Court enter a protective order requiring Plaintiff to give notice to all subpoenaed third parties that it has withdrawn its subpoenas by December 20, 2004.

---

[3] Although some authority holds (wrongly so) that a party does not have standing to bring a motion to quash under Rule 45(c), *see Seagate Tech. II Sec. Litig.*, 1993 WL 293008 (N.D. Cal. June 10, 1993), courts consistently have allowed parties to seek protection from discovery served on non-parties under Rule 26(c). *See e.g., Fleet Bus. Credit Corp. v. Hill City Oil Co.*, 2002 WL 1483879, *2 (W.D. Tenn. June 26, 2002) ("Many district courts have acknowledged this aspect of [Rule 26(c)] which allows a party to file a motion for protective order on behalf of a non-party."); *United States v. Operation Rescue*, 112 F. Supp. 2d 696, 705 (S.D. Ohio 1999) (plaintiff "has standing [under Rule 26(c)] to seek a protective order on behalf of the non-part[ies]"). Courts also grant protective orders quashing subpoenas to further their own case management orders. *See Adidas Am. Inc. v. Payless Shoesource, Inc.*, 2004 WL 948940, *2 (D. Or. April 27, 2004) (quashing subpoenas that violated the discovery cut-off date); *Rice v. United States*, 164 F.R.D. 556 (N.D. Okla. 1995) (same). This Court also has the authority to limit third-party discovery pursuant to Fed. R. Civ. P. 16. *Int'l Brotherhood of Teamsters v. Int'l Brotherhood of Teamsters*, 162 F.R.D. 25 (S.D.N.Y. 1995) (recognizing court's duty to resolve relevance objections to third-party discovery).
[4] *See Haworth, Inc. v. Caruthers-Wallace Courtenay, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming trial court's decision to require party to seek discovery from opposing party before subpoenaing non-party).

Respectfully submitted,

Lee H. Rubin
Counsel for Defendants

cc:     Shawn A. Williams, Plaintiffs' Counsel

# Exhibit 46

# ORIGINAL

RECEIVED

05 JAN -5 PH 3: 35

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

REC'D JAN 1 0 2005

# FILED

JAN 0 6 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) Master File No. C-01-0988-MJJ |
| | ) |
| | ) CLASS ACTION |
| This Document Relates To: | ) |
| | ) [PROPOSED] ORDER REGARDING |
| ALL ACTIONS. | ) DISCOVERY CONFERENCE |
| | ) |

1    On January 4, 2005, counsel for both plaintiffs and defendants appeared before the Court for

2  a telephonic discovery conference regarding plaintiffs' Initial Disclosures and non-party discovery

3  requests.  After consideration of the letter briefs submitted by counsel and oral argument of counsel,

4  the Court HEREBY ORDERS AS FOLLOWS:  *without prejudice ·MJJ*

5    1.    Defendants' request for a protective order is denied.  The Court specifically declines

6  to limit or stay the production of non-party discovery. *at this time.  MJJ*

7    2.    Plaintiffs shall amend Sections G, H and I of their Initial Disclosures no later than

8  January 10, 2005 to include the specific subject matter for which each entity or individual listed may

9  have discoverable information.

10                    *     *     *

11                  **O R D E R**

12    IT IS SO ORDERED.

13  DATED:  __1 | 6 | 2005__                    _____

14                                THE HONORABLE MARTIN J. JENKINS
                                UNITED STATES DISTRICT JUDGE

15

    DATED:  January __5__, 2005
16
    Submitted by:
17
    LERACH COUGHLIN STOIA GELLER
18    RUDMAN & ROBBINS LLP
    WILLIAM S. LERACH
19  SHAWN A. WILLIAMS
    WILLOW E. RADCLIFFE
20  ELI R. GREENSTEIN
    JENNIE LEE ANDERSON
21  MONIQUE C. WINKLER

22

23  _____
          SHAWN A. WILLIAMS
24
    100 Pine Street, Suite 2600
25  San Francisco, CA  94111
    Telephone:  415/288-4545
26  415/288-4534 (fax)

27

28

    [PROPOSED] ORDER REGARDING DISCOVERY CONFERENCE - C-01-0988-MJJ        - 1 -

1
2
3
4
5

LERACH COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
MARK SOLOMON
DOUGLAS R. BRITTON
401 B Street, Suite 1600
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

6

Lead Counsel for Plaintiffs

7

T:\CasesSF\Oracle3\ORD00017038.doc

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF SERVICE BY MAIL AND FACSIMILE

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.     That on January 5, 2005, declarant served the **[PROPOSED] ORDER REGARDING DISCOVERY CONFERENCE** by depositing a true copy thereof in a United States mailbox at San Francisco, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.  Declarant also served the parties by facsimile.

3.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 5th day of January, 2005, at San Francisco, California.

_____
CYNTHIA SHEPPARD

ORACLE III (LEAD)
Service List – 1/5/2005   (201-064-1)
Page 1 of 1

## Counsel For Defendant(s)

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
  650/331-2000
  650/331-2060 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street, Suite 3900
Chicago, IL 60603-3441
  312/782-0600
  312/701-7711 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
  650/506-5200
  650/506-7114 (Fax)

## Counsel For Plaintiff(s)

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
  415/288-4545
  415/288-4534 (Fax)

# Exhibit 47

1   MAYER, BROWN, ROWE & MAW LLP
    Donald M. Falk (SBN 150256)
2   Lee H. Rubin (SBN 141331)
    Shirish Gupta (SBN 205584)
3   Two Palo Alto Square, Suite 300
    Palo Alto, California 94306
4   Telephone:     (650) 331-2030
    Facsimile:     (650) 331-2060
5   lrubin@mayerbrownrowe.com

                                        REC'D JAN 1 1 2005

6   MAYER, BROWN, ROWE & MAW LLP
    Alan N. Salpeter (admitted *pro hac vice*)
7   Javier Rubinstein (admitted *pro hac vice*)
    Vincent P. Schmeltz III (admitted *pro hac vice*)
8   190 South LaSalle Street
    Chicago, IL 60603-3441
9   Telephone:     (312) 782-0600
    Facsimile:     (312) 701-7711
10  jrubinstein@mayerbrownrowe.com

11  Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
    J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
12
    ORACLE CORPORATION
13  Dorian Daley (SBN 129049)
    James C. Maroulis (SBN 208316)
14  500 Oracle Parkway, Mailstop 5OP7
    Redwood Shores, California 94065
15  Telephone:     (650) 506-5200
    Facsimile:     (650) 506-7114
16  jim.maroulis@oracle.com

17  Attorneys for Defendant ORACLE CORPORATION

18                  UNITED STATES DISTRICT COURT

19      NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

20
    IN RE ORACLE CORPORATION          Case No. C-01-0988-MJJ
21  SECURITIES LITIGATION             (Consolidated)

22                                    DEFENDANTS' MOTION FOR
                                      PROTECTIVE ORDER PURSUANT TO FED.
23                                    R. CIV. P. 26(C) AND MEMORANDUM OF
                                      POINTS AND AUTHORITIES;
24                                    DECLARATION OF VINCENT P.
                                      SCHMELTZ III
25  This Document Relates To:
                                      Date:       February 15, 2005
26  ALL ACTIONS.                      Time:       9:30 a.m.
                                      Place:      Ctrm. 11
27                                                Honorable Martin J. Jenkins

28

    DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C);
                                      CASE NO.: C-01-0988-MJJ

## NOTICE AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 15, 2005 at 9:30 a.m., or as soon thereafter as counsel may be heard, Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley, and Edward J. Sanderson ("Defendants") shall appear before the Honorable Martin J. Jenkins in the Northern District of California—San Francisco Division, San Francisco, California, Courtroom 11—and shall move the Court for a protective order pursuant to Fed. R. Civ. P. 26(c) and L.R. 7-2, or in the alternative, for an order under Fed. R. Civ. P. 26(d) or 16(b).[1] In support of their Motion, Defendants submit the Memorandum of Points and Authorities below, the attached Declaration of Lee Rubin and a [Proposed] Order.

### RELIEF SOUGHT

Defendants move the Court for a protective order that (1) requires Plaintiffs immediately to withdraw, without prejudice, 93 subpoenas issued to Oracle customers or potential customers and (2) imposes a sequenced process for seeking discovery from Oracle's customers under which all such third party discovery is stayed until Plaintiffs have reasonably attempted to obtain the requested information from defendants and the proper scope of discovery is resolved by this Court.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Only two days after the parties held their required conference under Fed. R. Civ. P 26(f), and before Plaintiffs had the opportunity to review even *one* of the thousands of documents that Defendants informed them would be produced in the earliest stages of discovery, Plaintiffs launched a massive third party discovery expedition. Plaintiffs ultimately issued more than 120 subpoenas including 93 to Oracle customers or potential customers.

Plaintiffs' subpoenas are improper for two principal reasons. First, they are premature because they seek information that may be readily available from Defendants. It is well settled that

---

[1] Defendants have sought this expedited hearing date under a separately filed Motion to Shorten Time Pursuant to L.R. 6-3.

1   a party should not impose the burdens of discovery on third parties without first exhausting their

2   efforts to secure the information from the parties to the litigation.   Such a departure from the

3   normal discovery process harms not only the third parties, but the Defendants as well because by

4   imposing such an unwarranted burden on Oracle's customers, the subpoenas damage Oracle's

5   ongoing business relationships.   Indeed, the third party subpoenas are so broad in their reach that

6   they are more likely intended to harass Oracle than to seek relevant information.

7   　　　　Second, Plaintiffs' third party subpoenas seek broad categories of information that are

8   entirely irrelevant to Plaintiffs' complaint.  This is a securities fraud case founded on a missed

9   earnings forecast; it is not a products liability case.  Nonetheless, the majority of Plaintiffs' third

10  party requests seek irrelevant information about product defects and the reaction of Oracle's

11  customers or potential customers to those defects.

12  　　　　Because one of the principal objections asserted by the customers to the third party

13  subpoenas is that much of what Plaintiffs seek from third parties is not relevant to the case, this

14  Court is in a far better position to resolve these challenges than are the more than 20 district courts

15  around the country from which the subpoenas issued.  Indeed, this Court is almost certain to have

16  an opportunity soon to decide that threshold question because Plaintiffs' initial document requests

17  suffer from the same relevance defects found in the third party subpoenas.  By ordering the

18  Plaintiffs to withdraw (without prejudice) their subpoenas served on Oracle's customers or

19  potential customers, this Court will have the chance to consider the proper scope of discovery in

20  the context of party discovery, which is where an issue of such importance should be resolved.

21  Moreover, by sequencing discovery in this manner, Oracle and third parties may be spared from

22  expending substantial resources on third party discovery that has no bearing on this case.

23  　　　　Despite Oracle's requests, Plaintiffs have refused to withdraw these subpoenas.  Plaintiffs

24  have made only a half-hearted attempt to explain why the deluge of documents sought by these

25  subpoenas might be discoverable, preferring to argue that even if the subpoenas violate the Federal

26  Rules of Civil Procedure, Oracle lacks standing to object to these subpoenas.  Yet, it is well settled

27  that this Court has broad authority to manage the discovery process between and among parties and

28  third parties alike.  Accordingly, the Court plainly has the power to stay all third party subpoenas

1   until the Plaintiffs have made reasonable efforts to acquire the information from Defendants and

2   the threshold scope of discovery has been resolved.

3   **II.     STATEMENT OF FACTS**

4       The operative complaint in this case, the Revised Second Amended Complaint ("RSAC"),

5   sets forth a securities fraud claim based on a missed earnings forecast. It alleges that Oracle failed

6   to meet its earnings in the third quarter of FY 2001 because it missed its projection for the sale of

7   applications by $101 million and database sales by $147 million. RSAC ¶¶ 80-82. The RSAC

8   does not include any claims based on fraudulent statements pertaining to, or defects in, Oracle's

9   products or services.

10       On December 6, 2004, counsel for the parties conducted a conference pursuant to Fed. R.

11   Civ. P. 26(f), in which they discussed, among other things, the documents and disclosures that each

12   side intended to produce at the outset of the discovery process. V. Schmeltz Decl. at ¶3. During

13   that conference, Defendants' counsel informed Plaintiffs that Defendants intended to produce

14   thousands of pages of documents separate and apart from any response to Plaintiffs' initial

15   document request. Defendants' counsel explained that this would include the entire production of

16   documents that Defendants had made to plaintiffs in the parallel shareholder derivative litigation.

17   *See id.*

18       On December 7, 2004, the Court held a Case Management Conference. *See id* at ¶ 4. The

19   Court also imposed certain limits on discovery, including a maximum of 75 depositions and 75

20   document requests per side, advising both parties that they could seek leave to take additional

21   discovery for good cause. *See id.* at ¶ 5. Furthermore, the Case Management Order directed the

22   parties to exchange Rule 26(a)(1) disclosures by December 21, 2004.[2] *See id.*

23

24

---

25   [2]     The Court further ruled that to the extent a Defendants' initial disclosure included documents that had been designated as confidential in the Delaware derivative litigation, they were

26   not required to produce those documents until a protective order had been entered in this case. The parties jointly submitted a protective order on December 21, 2004, and, pursuant to Court order,

27   made a small number of changes to the proposed order and resubmitted it to the Court. *See* V. Schmeltz Decl. at ¶6.

28

1    Beginning the very next day, and throughout the course of the month, Plaintiffs issued over

2    90 subpoenas to Oracle customers and potential customers. *See id.* at ¶ 7; *see also* V. Schmeltz

3    Decl. Ex. E. These subpoenas, issued in over 20 different jurisdictions, contain over 2,000 separate

4    requests for documents. *See id.* Moreover, Plaintiffs' Rule 26(a)(1)(A) disclosures suggest that

5    Plaintiffs may serve subpoenas on 600 additional Oracle customers. *See id.* This massive third

6    party discovery was launched before Plaintiffs had seen a single document from Defendants.

7        Plaintiffs' subpoenas seek information about every aspect of Oracle's customers'

8    experience with Oracle products, whether or not Oracle was aware of the information. For

9    instance, Plaintiffs have requested all "documents and communications concerning Oracle's

10   products, licenses or services including, but not limited to, proposed or actual contracts or

11   agreements between you and Oracle." *See* V. Schmeltz Decl. Ex. A. They have also sought "[a]ll

12   documents and communications concerning:" technical problems with Oracle's products,

13   contemplated lawsuits against Oracle, decisions to use Oracle's competitors, damages due to

14   business lost as a result of Oracle's products, and much, much more. *Id.*

15       In light of the breadth and timing of Plaintiffs' subpoenas, many of Oracle's customers

16   have understandably objected. *See, e.g.,* Decl. Ex. B. (These "very broad requests . . . appear to

17   have no limitation to the facts or circumstances of the underlying litigation"). According to one

18   customer, "[t]he documents sought in this request are not relevant to the question of what

19   Defendants knew about Oracle's business during that time period." Decl. Ex. C. That customer

20   went on to object that, "[t]o burden third parties ... with such discovery requests before even

21   reviewing the documents and information provided by Oracle through its initial disclosures, and

22   before serving any discovery requests on Oracle, is an abuse of discovery." *Id.*

23       Pursuant to a procedure established in the Case Management Order, Defendants' counsel

24   met and conferred with Plaintiffs' counsel regarding the flaws with the subpoenas, and when the

25   parties were unable to reach an agreement, each party submitted a letter brief to the Court regarding

26   whether a protective order should issue. V. Schmeltz Decl. at ¶ 8. On January 4, 2005, the Court

27   held a telephonic hearing regarding the request for a protective order. *See id.* The Court informed

28

1  Defendants that a protective order could only issue if they filed a motion, and the Court granted

2  Defendants leave to file such a motion. *See id.*[3]

3  **III.   ARGUMENT**

4       A Rule 26(c) protective order directed at third party subpoenas is available "for good cause

5  shown," when a party can demonstrate that discovery served on third parties jeopardizes the party's

6  own interests.   Charles Alan Wright and Arthur R. Miller, 8 FEDERAL PRACTICE & PROCEDURE

7  CIV. 2d § 2035 (West 2004); Fed. R. Civ. P. 26(c) (West 2004).   In this case, Defendants are

8  entitled to Rule 26(c) protection.[4]

9       First, the subpoenas improperly seek information from third parties that may be available

10 from the Defendants.   This "cart before the horse" approach to discovery, aimed at Oracle's

11 customers, threatens to harm Oracle's ongoing business relationships and thus directly implicates

12 Oracle's interests.   Second, the subpoenas seek information that is largely irrelevant to this case.

13 Discovery that seeks irrelevant information improperly increases the cost of litigation on the parties

14 themselves, thus further harming Oracle.   Moreover, Defendants have a strong interest in ensuring

15 that critical issues related to the scope of discovery be decided by the court with the greatest

16 familiarity with the issues rather than district courts throughout the country whose only connection

17 to the case is the issuance of a third party subpoena.   All of these concerns provide an ample basis

18 for the Defendants to seek relief and for the Court to rein in the third party discovery process so

19 that discovery can proceed in the orderly and efficient manner contemplated by the Rules.

20       **A.    It is improper for Plaintiffs to seek discovery from third parties before**
21            **attempting to obtain those materials from Defendants.**

22       It is well settled that litigants should seek discovery from parties to the litigation before

23 burdening third parties. *See, e.g., Haworth, Inc. v. Caruthers-Wallace Courtenay, Inc.*, 998 F.2d

24 975, 978 (Fed. Cir. 1993) (affirming trial court's decision to require litigant to seek discovery from

25 opposing party before subpoenaing non-party); *Richards of Rockford, Inc. v. Pacific Gas & Elec.*

26 [3] The Court did not stay the subpoenas in the interim, either. *See id.*
   [4] As we explain below, this Court also has the power to grant the requested relief pursuant to Rule
27 26(d) and Rule 16(b).

28

1    *Co.*, 71 F.R.D. 388, 391 (N.D. Cal. 1993) (refusing to require non-parties to produce discovery that

2    litigant could obtain from opponent); *DeCarlo v. U.S. Equities Realty, Inc.*, 2004 WL 2137818, * 1

3    (E.D. Pa. Sept. 23, 2004) (same).  In *Richards of Rockford*, the Court refused to allow plaintiffs'

4    requests for technical information to third parties, finding that they were merely "supplementary"

5    because plaintiffs could have obtained the same information from the defendant.  71 F.R.D. at 391.

6    Similarly, in this case, much of what Plaintiffs seek from "third parties" appears to be

7    "supplementary" because they can obtain the bulk of the third party information they seek from

8    Oracle.  *Compare* Schmeltz Decl. Ex. A at Req. Nos. 5 & 9 (subpoena) *with* Schmeltz Decl. Ex. D

9    at Req. Nos. 18-20 & 24; *and compare* Schmeltz Decl. Ex. A at Req. Nos. 13 & 15 *with* Schmeltz

10   Decl. Ex. D at Req. No. 40.

11           Plaintiffs should be required to allow this initial round of discovery with Defendants to run

12   its course before seeking the same material from third parties.  Moreover, even where the third

13   party subpoenas seek information different than that sought from the Defendants, plaintiffs should

14   not be permitted to subpoena customers until they have reviewed Defendants' documents to

15   determine whether such additional discovery is even necessary.  Sequencing discovery in this

16   manner tends to narrow and focus a party's need for third party discovery, thus streamlining the

17   discovery process.

18           **B.      Plaintiffs' requests are overly broad, largely irrelevant and should be**
19                   **stayed until the scope of discovery is determined through first party**
                     **discovery**

20           There are certain documents sought in Plaintiffs' third party subpoenas that admittedly will

21   not be found in Oracle's files.  For example, a number of Plaintiffs' requests focus on the

22   customers' decisions to use Oracle's products and their experiences with those products.  *See*

23   Schmeltz Decl. Ex. A at Req. Nos. 8-11, 19-20.  While these document requests may not duplicate

24   party discovery, most are completely irrelevant to the case.

25           This is a securities fraud case bottomed on a missed earnings forecast in the third quarter of

26   FY 2001; it is not a product liability suit.  Accordingly, customers' experiences with Oracle

27   products or internal deliberations about the possible purchase of those products has no bearing on

28

6

1   this suit unless these experiences or deliberations were conveyed to Defendants *and* touch upon

2   Oracle's anticipated revenue or expenses in the third quarter of 2001.

3       There can be no doubt that Plaintiffs have alleged a forecasting claim. The RSAC alleges

4   that the Defendants committed securities fraud by knowingly misrepresenting its earnings

5   projections in the third quarter of FY 2001, missing its projection for the sale of applications by

6   $101 million and database sales by $147 million. RSAC ¶¶ 80-82. Plaintiffs also allege that

7   problems with Oracle's new suite of e-business software (Suite 11i) *contributed to* each of these

8   alleged revenue shortfalls. *Id.* ¶¶ 52, 82 ("Thus, the defects [in Suite 11i] and the economy were

9   the main reasons for the revenue shortfalls in both applications and database sales, and for the

10  accompanying 17% earnings miss."). Plaintiffs do *not* allege any fraud related to Suite 11i

11  separate and apart from the missed earnings forecast.

12      Thus, discovery into issues such as whether Suite 11i worked as it was intended or how

13  customers reacted to Suite 11i is irrelevant unless it bears directly upon Defendants' knowledge of

14  Oracle's performance during 3Q01. Put another way, the only pertinent inquiry here is whether

15  Defendants had actual knowledge that their earnings forecasts were false when made. *See In re*

16  *The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091-92 (9th Cir. 2002). As the court observed in *In*

17  *re Apple Computer, Inc. Securities Litigation,* "[i]t is not enough for Plaintiffs to allege that

18  Defendants could have known about [product defects] or even that they should have known about

19  them. Plaintiffs must allege something approaching actual knowledge," such that Defendants had

20  no reasonable basis for making an earnings forecast. 243 F. Supp. 2d 1012, 1026 (N.D. Cal.

21  2002)). Few, if any, of Plaintiffs' requests are even remotely relevant to Plaintiffs' evidentiary

22  burden.

23      The Delaware Court of Chancery, which recently resolved the underlying merits of this

24  very case in a parallel shareholder derivative action, concluded that *"no rational person could*

25  *infer from this record that Oracle could have or did predict this seismic shift in its quarterly*

26  *fortunes . . . .* The Oracle sales units didn't see it coming." *In re Oracle Corp. Deriv. Litig.*, No.

27  Civ. 18751, 2004 WL 2847876, * 39-40 (Del. Ch. Nov. 24, 2004). Although Plaintiffs may be

28  entitled to try to prove an element of the case that the derivative plaintiffs could not, they are not

1  entitled to burden Defendants and third parties with myriad discovery requests that are completely

2  disconnected from the central elements of their case.

3      To make matters worse, Plaintiffs' software "functionality" requests are not even confined

4  to Suite 11i. Plaintiffs' requests seek information pertaining to "*all* [Oracle] products, licenses or

5  services," *all* contracts between Oracle and its customers, *all* complaints these customers ever had

6  with Oracle, *all* decisions made by Oracle's customers about purchasing, returning, complaining

7  about Oracle's products, and even *all* decisions to use Oracle's competitors. Schmeltz Decl. Ex. A.

8  Because the RSAC makes no mention of *any Oracle product, license or service beyond Suite 11i,*

9  Plaintiffs cannot justify these requests. Instead, these subpoenas seek far more chaff than wheat

10 and, in doing so, place an unacceptable burden on third parties and improperly expand the scope of

11 discovery in this case.

12     Defendants do not now seek a ruling from this Court on the relevance of the third party

13 requests. Instead, the breadth of the subpoenas simply underscores the need for a stay of the third

14 party discovery of Oracle's customers so that the Court can consider the proper scope of discovery

15 in the context of discovery between the parties. By deciding that issue in a more appropriate

16 setting, the court will avoid the risk of inconsistent and arbitrary outcomes on this important

17 question in district courts throughout the country.

18     Plaintiffs will not have to wait long to have this question resolved. Plaintiffs' First Request

19 for Documents contains many of the same over broad requests for information on Oracle's

20 products contained in the third party subpoenas. Thus, in the absence of a negotiated resolution,

21 this Court will soon have the occasion to decide whether much of what Plaintiffs seek from both

22 Defendants and third parties constitutes proper discovery. After that decision is made, it may then

23 be appropriate to permit third party discovery within the parameters set down by the Court.

C.    **The Court has the power to order Plaintiffs to withdraw their
       subpoenas.**

It is well within this Court's power to address these issues. Rule 26(c) allows the Court to

"make a wide variety of orders for the protection of parties and witnesses in the discovery

process." FEDERAL PRACTICE & PROCEDURE § 2035; Fed. R. Civ. P. 26(c) (West 2004). And, as

1    the Ninth Circuit has expressly held, a trial court has "extensive control over the discovery

2    process." *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1074-75 (9th Cir. 2001). The Court

3    can exercise this control to sequence discovery in this case, even if in doing so the Court impacts

4    subpoenas issued from other district courts.

5            The Court has ample authority to streamline discovery. *See, e.g., In re Simon II Litig.*, 211

6    F.R.D. 86, 148 (E.D.N.Y. 2002) (holding that "some discovery necessarily must be foregone if

7    massive cases are to be expeditiously resolved."); *Zaustinsky v. University of California*, 96 F.R.D.

8    662, 625 (N.D. Ill. 1983) (courts have the authority to "define the issues in a case and to control

9    discovery in conformity with such a definition."). The Federal Rules of Civil Procedure recognize

10   sequenced discovery as a typical trial court tool. *See, e.g.*, Fed. R. Civ. P. 26(d) (West 2004)

11   (empowers a court to "sequence" methods of discovery on motion by a party, "for the convenience

12   of the parties and witnesses and in the interests of justice"); Fed. R. Civ. P. 16(b) (West 2004)

13   (provides courts with broad authority to set limits on the scope and timing of discovery and to

14   make other orders "appropriate in the circumstances of the case"). Sequenced discovery is a well-

15   recognized means of promoting the sort of efficiency that Defendants' Rule 26(c) motion seeks to

16   advance. *See* MOORE'S FED. PRAC. MAN. FOR COMPLEX LITIG. §§ 11.41 & 11.422 (4th ed. 2004)

17   (sequenced discovery allows a judge to narrow the issues in a case by focusing discovery, in the

18   first instance, on "matters – witnesses, documents, information – that appear pivotal").

19           It is equally clear that the Court can utilize this power to control discovery even if it

20   impacts third party subpoenas issued from courts outside of its district, in order to protect litigants'

21   interests. *See Springbrook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679 (N.D. Cal.

22   1988) (party litigant can seek an order under Rule 26(c) for its protection in response to a subpoena

23   to non-party). Such interests can include a party's relationships with the subpoenaed third parties

24   (FEDERAL PRACTICE & PROCEDURE § 2035) or simply in the scope of discovery being sought. *See*

25   *Fleet Bus. Credit Corp. v. Hill City Oil Co.*, 2002 WL 1483879, *2 (W.D. Tenn. June 26, 2002)

26   (holding that party had standing under Rule 26(c) to question relevance of subpoena requests

27   directed to a non-party); *United States v. Operation Rescue*, 112 F. Supp. 2d 696, 705 (S.D. Ohio

28   1999) (plaintiff "has standing [under Rule 26(c)] to seek a protective order on behalf of the non-

9

1    part[ies]").[5]  And, the Court can grant relief without impinging on the jurisdiction of other district

2    courts.

3        *United States v. Operation Rescue*, 112 F. Supp. 2d 696 (S.D. Ohio 1999) is particularly

4    instructive.  There, the government sued abortion protestors for violating the Freedom of Access to

5    Clinics Act, and the defendants sought third party discovery from certain abortion clinics.  *Id.* at

6    704.  The government moved for a protective order to preclude certain aspects of the proposed

7    third party discovery.  The court found that the government had "standing to seek a protective

8    order on behalf of the non-party clinics," and granted the government relief in those instances

9    where the third party discovery was seeking irrelevant information.  *Id.* at 705.  Here, too, this

10   Court can and should make relevance decisions for this case.

11       Rule 16 also give the Court the authority to intervene in third party subpoenas, upon the

12   motion of a party, where irrelevant information is being sought from third parties.  *See, e.g.,*

13   *International Brotherhood of Teamsters v. Eastern Conference of Teamsters*, 162 F.R.D. 25, 28

14   (S.D.N.Y. 1995) (finding that district court's powers under Rule 16 allowed it to "provide guidance

15   concerning the relevance of the discovery that defendants [sought from third parties], in

16   furtherance of the control of discovery and the formulation and simplification of the issues

17   presented by this case."); *Dart Industs. Cov. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir.

18   1980) ("While discovery is a valuable right and should not be unnecessarily restricted, [] the

19   necessary restriction may be broader when a nonparty is the target of discovery....").

20       In sum, this Court plainly has the power under the Federal Rules of Civil Procedure to grant

21   the relief that Defendants now request.  Given that such intervention by the Court will not

22   prejudice Plaintiffs, and is likely to streamline discovery and avoid the chaos and disorder that will

23   result from multi-district litigation over the proper scope of discovery, the Court should afford

24   Defendants the protection they seek.

25   [5] In *Seagate Tech. II Sec. Litig.*, 1993 WL 293008 (N.D. Cal. June 10, 1993), the court held that
     one who is not a party to a subpoena has no standing to challenge it under Rule 45(c).  *Seagate* did
26   not contemplate whether or not a party-litigant has standing under Rule 26(c), Rule 26(d) or Rule
     16(b) to request an order that addresses subpoenas as part of the scope of discovery in litigation.
27   Thus, it is inapposite.

28

1

## CONCLUSION

2    For the foregoing reasons, Defendants respectfully request a protective order, pursuant to

3   Fed. R. Civ. P. 26(c), or alternatively, pursuant to Fed. R. Civ. P. 26(d) or 16(b), that (1) requires

4   Plaintiff to withdraw all subpoenas currently issued to Oracle's customers; and (2) stays all third

5   party discovery of Oracle's customers until Plaintiffs have reasonably attempted to obtain relevant

6   documents from Defendants and the threshold question related to the proper scope of discovery

7   have been resolved.

8
DATED:   January 10, 2005

9                                          MAYER, BROWN, ROWE & MAW LLP

10

11

12    By: *Lee H. Rubin*

       Lee H. Rubin
13     Attorneys for Defendants Oracle Corporation,
       Lawrence J. Ellison, Jeffrey O. Henley and
14     Edward J. Sanderson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. CIV. P. 26(C) AND
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO.: C-01-0988-MJJ

# Exhibit 48



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO<br>
LOS ANGELES · NEW YORK · BOCA RATON<br>
WASHINGTON, DC · HOUSTON<br>
PHILADELPHIA · SEATTLE

**Monique C. Winkler**
MoniqueW@Lerachlaw.com

September 7, 2005

<u>**VIA FACSIMILE AND U.S. MAIL**</u>

Melissa S. Widen
Arthur Andersen LLP
18th Floor
33 W. Monroe Street
Chicago, IL 60603

      Re:   *In re Oracle Corp. Sec. Litig.*
            Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Melissa:

    I am writing to confirm our September 6, 2005 telephone conversation regarding Arthur Andersen LLP's ("Andersen") production of documents in response to the subpoena served by plaintiffs in December 2004. Plaintiffs requested that Andersen further meet and confer based upon Magistrate Judge Spero's suggestion at the August 12, 2005 hearing that plaintiffs and Andersen again discuss Andersen's production of documents.

    Although plaintiffs offered to provide you with additional details regarding the deficiencies plaintiffs believe exist in Andersen's production, you acknowledged that plaintiffs had already identified those areas in a letter and you refused to spend any time discussing the issue further. Instead, you stated that Andersen's position remains unchanged: Andersen has fully complied with plaintiffs' subpoena and the Court's March 10, 2005 Amended Order Setting a Discovery Plan. Unless the Court issues a modification or Oracle gives you permission to produce additional documents, Andersen will not produce any additional documents. You also indicated that you had discussed the August 12, 2005 hearing with Oracle's counsel, and that Oracle's counsel did not encourage Andersen to produce additional documents.



**LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP**

Melissa S. Widen
September 7, 2005
Page 2

I enclose for your review, a copy of the transcription of the August 12, 2005 proceedings before Magistrate Judge Spero recorded after plaintiffs and defendants met and conferred as ordered by Magistrate Judge Spero.

Very truly yours,

Monique C. Winkler

MCW:mm
Enclosure
T:\CasesSF\Oracle3\Corres\Widen 090705 (MCW).doc

# Exhibit 49

# ANDERSEN

**Arthur Andersen LLP**

33 West Monroe Street
Chicago IL 60603-5385
www.andersen.com

June 21, 2005

REC'D JUN 2 2 2005

**VIA FEDERAL EXPRESS**

**Attn: Shawn Williams, Esq.**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP
100 Pine Street
Suite 2600
San Francisco, CA 94111

　　　　　Re:　　*Nursing Home Pension v. Oracle Corporation*
　　　　　　　　　Arthur Andersen LLP ("Andersen") Subpoena

Shawn:

In response to the above refererenced subpoena *duces tecum,* Andersen was able to locate certain responsive documents. Per your request, enclosed are bates labeled print-outs, AA 00001 through AA 000051.　Please let me know if I can be of further assistance to you in this matter.

Regards,

Melissa S. Widen
Counsel

Enclosure

# Exhibit 50

≡**ERNST&YOUNG**

Ernst & Young LLP
General Counsel's O.
Suite 300
725 South Figueroa Street
Los Angeles, California 90017

Phone: (213) 977-3200
Fax:    (213) 977-3541
Fax:    (213) 977-3550
www.ey.com

September 16, 2005                RECD SEP 19 2005

VIA FASCILEMILE AND FEDERAL EXPRESS

Shawn A. Williams, Esq.
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, 26th Floor
San Francisco, CA 94111

*In re Oracle Corporation Securities Litigation.*

Dear Shawn:

I write in further response to your letter of June 6, 2005, and recent inquiries made by phone on September 12, 2005.

As previously stated, we have produced all documents in connection with agreed upon procedures performed by E&Y in connection with the debit memos transactions. There was no separate engagement letter for this work. Interview notes, if any, reflecting conversations with Oracle personnel were not retained. The agreed upon procedures memo at EY 000143 - EY 000146 summarizes the work performed and conclusions reached.

The remainder of your June 6, 2005 letter contains argumentative commentary about procedures E&Y should have performed, documents it should have reviewed, and evidentiary matter it should have retained. Suffice it to say that I disagree with all of your characterizations. We have produced everything from our files. Although you apparently believe we should have done or retained more, we can only produce what we have. We are not obligated, as you suggested during our September 12, 2005 phone call, to explain why we didn't do more work or keep more documents. We are a third party and our obligation is to produce responsive documents within our possession and control. I am unaware of any provision in Rule 45 of the F.R.C.P. that requires a non-party to explain why it didn't do more work or retain more documents.

During the September 12 call, accountants employed by your firm stated that documents referenced in the agreed upon procedures workpapers appeared to be missing. That is not the case. Your accountants first referenced EY 000001, stating that documents referenced on this page had not been produced. EY 000001 is a binder cover titled "Agreed Upon Procedures With Respect To Debit Memos To Account #25005 In

**Ξ ERNST & YOUNG**

■ Ernst & Young LLP

September 16, 2005
Page 2

November 2000." All documents from that binder have been produced -- no other documents are referenced on the binder cover.

Your accountants next referenced EY 000144 and the statement on that page "See X2 for further information on the Company's procedures as it relates to the Complaint, and its policy regarding 'on account' transactions at X5." Your accountants noted that E&Y had not produced the contents of the folder labeled X2. They are absolutely correct. However, the documents are not "missing," rather, they were withheld pursuant to a claim of attorney-client privilege asserted by Oracle. This information was conveyed to you in our transmittal letter dated June 2, 2005, where my paralegal, Alissa Brice, informed you that the documents had been withheld and that you should contact Oracle's counsel for a privilege log. I further note that we did produce a copy of the outside of the X2 folder (labeled EY 000152) and that had somebody bothered to check the transmittal letter they would have seen that the contents of that folder (EY 000153 - EY 000160) had been withheld pursuant to Oracle's assertion of attorney-client privilege (EY 000161 was produced to you and is a copy of the outside of the X3 folder).

The next document referenced during the call was EY 000232. A question was raised regarding the location of the memo referenced in a notation "See memo from Oracle for further discussion." The memo referenced is contained in the X2 folder and was withheld pursuant to Oracle's claim of attorney-client privilege. On the same page, a question was raised regarding the A tickmarks along the right column and the related tickmark reference: "See attached for corresponding entries and explanation." The documents referenced as "attached" can be found at EY 000234 - EY 000237. Find enclosed the best legible copies of these documents we could produce -- we have produced two copies of some pages so you can read the typed portion of the document as well as the handwritten notes which are in lighter ink.

I believe this answers all of your outstanding questions. Let me know if I can be of further assistance.

Very truly yours,

Stephen N. Young

# Exhibit 51

### C01-0988MJJ

### *In re: Oracle Securities Litigation*

### Hearing Date: 8/12/05

### Judge Spero

| | |
|---|---|
| Courtroom Clerk: | [Inaudible]<br>Master File No. C-01-0988-MJJ, *In re Oracle Securities Litigation*<br>Counsel? |
| Mark Solomon: | Thank you your honor. |
| Judge Spero: | All right. What's up? |
| Mark Solomon: | I apologize for having to get you back out. |
| Judge Spero: | Oh no, no. |
| Mark Solomon: | Here's where we're at. We have arrived here today apparently with a fundamental dispute on to what the scope was of your order concerning the 46,000 debit memo transactions. |
| Judge Spero: | I could tell that. |
| Mark Solomon: | And the defendants have now told us that they are willing to go back to their client and to investigate what the burden would be of seeking documents that relate to those transactions prior to November 17, 2000. But they can't tell us what the burden is right now because they haven't looked into that issue before because they have preferred to adopt a narrow view of the scope that we agree with. We've been using your language, your honor, from your, from the transcripts. I know that you used the language "every scrap of paper," I want to assure you that we're not after every single scrap of paper . . . |
| Judge Spero: | I didn't think you were. |
| Mark Solomon: | We are willing to compromise when we can do so on an informed basis, but we cannot because we don't have any information on the burden argument that's now being raised. |
| Judge Spero: | And this is, this is the dispute as to whether the documents from the original transactions with the particular customers would be [produced]<br>. . . |

**Trace Schmeltz:**  Right, and Your Honor, we're willing, literally in the next week, to go back and look at what that would take. We believe we have complied with the order and, and if there's a world where we haven't complied, or where we justified breaching a compromise can obviate this dispute, we're willing to go investigate, come back, and in good faith say here's what it would take to put that information together and give it to you, and here's the form we could do that. We're willing to do that over the next week, come back to the plaintiffs in one week, and then have any further conversation. Certainly, everyone has the right to seek protective order or motion to compel, or whatever, but we think we could come up with a compromise solution in that regard.

**Judge Spero:**  Okay.

**Mark Solomon:**  And, we're happy to do that, Your Honor. I want to just, just for the information for the Court, that there's an issue that is percolating that is we've been hearing a lot that Oracle doesn't have physical documents, doesn't have source documents, it's all on the databases. But it's not all, because there are some — I just don't know what the burden is. I'm afraid that that's an issue that is going to have to be flushed out down the road, but this is the first step.

**Trace Schmeltz:**  We can certainly address that. Certainly Oracle, no great surprise, the primary place they store data is on the database. I know that for sure.

**Judge Spero:**  I'm sure they do both things.

**Mark Solomon:**  Until they comply with the order . . .

**Trace Schmeltz:**  But to the extent there's paper I want to go find that out. It will take a week and we can come back to them.

**Judge Spero:**  If there's data, you have to produce data. If there's paper you have to produce paper. If there's both, you have to produce both.

**Trace Schmeltz:**  Right.

**Judge Spero:**  You know. I mean, its, as I recall, what the plaintiffs wanted in this case was much broader than the scope of discovery they ended up. So you've already carved out 90% of the burden that you would have had in this case. So I want you all to compromise, I want you all to reach agreements, I won't tell you what I would have done otherwise, but don't, nobody should be overreaching in this. And, you know, it's a big case, burdens are important, and that's why I narrowed the scope of

discovery, but don't, don't overplay your hand either. What about the issue with the accountants?

**Mark Solomon:** Well, Your Honor, um, we're willing, well we do, I think, want to make a motion or we're going to be asking for permission to make a motion, but actually we don't yet have the Special Litigation Committee report, which I know you want to be produced, I'm sure that's going to be coming very soon . . .

**Judge Spero:** Right . . .

**Mark Solomon:** I think we need to digest that. And also it would be perhaps helpful to see if we can resolve this current dispute and then get back to you on this issue.

**Judge Spero:** All right. Let me just give you some unsolicited advice on the accountants. It does appear that the issue is not the scope of the discovery order on that one to me, that it is whether or not they're doing what the discovery order requires. And, you know, if, I don't, it seems, I don't think I will get too far into whether the discovery order needs to be modified because it seems premature. The question is whether or not they produced the documents that are called for by the scope of the discovery order. And I think that that you all should just work that out. I don't, the, it is, it baffles me that there is a fight about this, actually, because it's going to be eight pieces of paper by then, or ten. It's not a burden question. And it's not a privacy question. It is "we don't want to get you further into our workpapers than we want because we don't want you trying to add issues into the case." Okay, I understand that. That's a perfectly legitimate thing. But we've got a good scope of discovery and you're going to get things within the scope of discovery, so I don't think the auditors are in a position to take a very hard stand and I think you ought to encourage these people to avoid a motion to compel.

**Trace Schmeltz:** I completely understand your point, Your Honor. I would note that a lot of the areas where the plaintiffs have suggested the audit workpapers reference other things that aren't there, the workpapers are in many ways self contained and I think . . .

**Judge Spero:** If there is a misunderstanding, that's one thing.

**Trace Schmeltz:** [Inaudible] the deposition or further learning can, can accomplish that, okay . . .

**Judge Spero:**     If there's a misunderstanding that's fine. And maybe it does take a short document deposition to figure out what's there and that's a perfectly legitimate way of doing it, and then at least you'll know what you're dealing with, but on the other hand [inaudible]. Allright. So I'm not going to do anything until I hear from you all. If you want to tee up the issue about the company's production on, of documents that underlie the debit memos, you can do that by letter?

**Trace Schmeltz:**     Okay.

**Judge Spero:**     Do it — let's have a joint letter setting forth positions, and then we'll have a brief telephonic hearing on it. I recommend against having such a hearing, but —

**Trace Schmeltz:**     Do you have a length preference on that joint letter?

**Judge Spero:**     Yeah, two pages.

**Trace Schmeltz:**     Thank you.

**Mark Solomon:**     One page each?

**Judge Spero:**     Yeah, well . . .

**Trace Schemltz:**     I think we get a page and a quarter . . .

**Judge Spero:**     Two pages is probably a page and a half, so it's, or a page and a quarter, so you're going to each get, you know, I'm sure you'll divide it by number of characters or something like that.

**Mark Solomon:**     [Laughs]

**Trace Schmeltz:**     We'll do our best. Thank you, Your Honor.

**Judge Spero:**     I know you will. Thanks. Okay.

**Mark Solomon:**     Thank you, Your Honor.

**Shawn Williams:**     Thank you, Your Honor.

T:\CasesSF\Oracle3\NonPldgs\Hearing Transcript 8_12_05.doc

## DECLARATION OF TRANSCRIPTION

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and resident of the County of Alameda, over the age of 18 years, and not a party to or interested in any action relating to subject matter of this declaration; and that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.    That on September 7, 2005, declarant listened to the electronic recording labeled C01-0988MJJ, In re: Oracle Securities Litigation, Hearing Date: 8/12/05, Judge Spero, and that I transcribed the hearing to the best of my abilities, and that this transcription is attached to this declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 7th day of September, 2005, at San Francisco, California.

_____
RUTH A. CAMERON