Exhibit 6



Willow Radcliffe
Lerach Coughlin Stoia Geller Rudman Robbins LLP
100 Pine Street
26th Floor
San Francisco, CA 94111

**Arthur Andersen LLP**
33 West Monroe Street
Chicago IL 60603-5385
www.andersen.com

REC'D NOV 1 4 2005

November 9, 2005

Re:     In re Oracle Corporation Securities Litigation
        Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Ms. Radcliffe:

I am writing to follow up on our telephone conversation of November 8, 2005. In that call, you informed me that plaintiffs intended to file a motion to compel production by Andersen for its alleged failure to comply with the Discovery Plan and Order as specified in Shawn William's letter of June 27, 2005.

Andersen has fully complied with its production obligations under the Discovery Plan, and your motion to compel is not warranted. If, however, you proceed with filing the motion, we consent to jurisdiction in the Northern District of California before Magistrate Judge Spero.

Sincerely,

Melissa S. Widen

Exhibit 7

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN _____ DISTRICT OF _____ ILLINOIS

In re Oracle Corporation Securities Litigation

V.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1] C-01-0988-MJJ

(Northern District of California)

Arthur Andersen LLP

TO: 33 West Monroe St., 18th Floor
Chicago, IL 60603

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A (attached hereto)

| PLACE | DATE AND TIME |
|---|---|
| 33 West Monroe St., 18th Floor Chicago, IL 60603 | January 7, 2005 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Willow E. Radcliffe*  Attorneys for Plaintiffs | December 8, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 100 Pine St., Ste. 2600, San Francisco, CA 94111, 415/288-4545

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

**PROOF OF SERVICE**

|              | DATE | PLACE |
|--------------|------|-------|
| SERVED       |      |       |

SERVED ON (PRINT NAME)                          MANNER OF SERVICE

SERVED BY (PRINT NAME)                          TITLE

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                 DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**SCHEDULE A**
**(Arthur Andersen LLP)**

I.     **DEFINITIONS**

Unless otherwise stated, the terms set forth below are defined as follows:

1.     "Arthur Andersen," "you" or "your" refer to Arthur Andersen LLP, Arthur Andersen International LLP and any of their members (as defined by ET 92.06, 92.09 and 92.16 of the American Institute of Certified Public Accountants Code of Professional Conduct as of June 1, 2002) and any of Arthur Andersen's predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants and all other persons acting or purporting to act on its behalf.

2.     "Document" or "documents" has the same meaning as "writings," which is defined in Fed. R. Civ. P. 34 and Fed. R. Evid. 1001 including, but not limited to, any electronically stored documents, preliminary versions, drafts or revisions, and is used as broadly as allowed under the Federal Rules of Civil Procedure.

3.     "Oracle" refers to defendant Oracle Corporation, any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors and any present and former officers, directors, employees, agents or members of the Board of Directors of Oracle, its attorneys, accountants, advisors, committees and all other persons acting or purporting to act on its behalf.

4.     "Ellison" refers to defendant Lawrence J. Ellison and his agents, attorneys, advisors, accountants, assistants, brokers and all other persons acting or purporting to act on his behalf.

5.     "Henley" refers to defendant Jeffrey O. Henley and his agents, attorneys, advisors, accountants, assistants, brokers and all other persons acting or purporting to act on his behalf.

6.     "Sanderson" refers to defendant Edward J. Sanderson and his agents, attorneys, advisors, accountants, assistants, brokers and all other persons acting or purporting to act on his behalf.

SCHEDULE A - C-01-0988-MJJ

1   7.   "Individual Defendants" refers to Ellison, Henley and Sanderson, and their agents,

2   attorneys, advisors, accountants, assistants, brokers and all other persons acting or purporting to act

3   on their behalf.

4   8.   "Defendants" refers to Oracle and the Individual Defendants.

5   9.   "SLC" refers to the Special Litigation Committee created to investigate the

6   allegations made in derivative actions filed in Delaware and California State Courts and Federal

7   Court by Oracle Shareholders on behalf of Oracle, and includes its members, Joseph Grundfest and

8   Hector Garcia-Molina, attorneys (including Simpson Thacher & Bartlett LLP; Young, Conaway,

9   Stargatt & Taylor, LLP; George Newcombe and James Kreissman), advisors (including National

10   Economic Research Advisors), agents, auditors or anyone acting or purporting to act on its behalf.

11   10.   "E&Y" refers to Ernst & Young LLP, Ernst & Young International and any of their

12   members (as defined by ET 92.06, 92.09 and 92.16 of the American Institute of Certified Public

13   Accountants Code of Professional Conduct as of June 1, 2002) and any of E&Y's predecessors,

14   successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign,

15   national, regional and local offices; all present or former officers, directors, partners, employees,

16   agents, attorneys, advisors, accountants, consultants and all other persons acting or purporting to act

17   on its behalf.

18   11.   "Person" or "persons" refers to any natural person, proprietorship, public or private

19   corporation, partnership, joint venture, trust, association, company, firm, government or

20   governmental entity (including any government agency, board, authority, commission, or political

21   subdivision or department thereof), or any other form of business or legal entity, organization, or

22   arrangement.

23   12.   "Communication" or "communications" refers to every manner or means of

24   disclosure, transfer or exchange of information (in the form of facts, ideas, inquiries or otherwise),

25   whether orally, electronically, by document, telecopier, mail, personal delivery or otherwise.

26   13.   "Concerning" means relating to, referring to, describing, evidencing, regarding or

27   constituting.

28

SCHEDULE A - C-01-0988-MJJ

1    14.    "Refer," "relate," "referring" or "relating" means all documents which explicitly or

2  implicitly, in whole or in part, were received in conjunction with, or were generated as a result of,

3  the subject matter of the request, including, but not limited to, all documents which reflect, record,

4  memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze,

5  review, report on, comment on, impinge upon, or impact the subject matter of the request.

6    15.    "Meeting" refers to the contemporaneous presence of any natural persons, whether or

7  not such presence was by chance or prearranged, and whether or not the meeting was formal or

8  informal, occurred in connection with some other activity, or was by telephone or teleconferencing.

9    16.    "Financial Statements" includes, without limitation, the following (whether audited or

10  unaudited, and whether final, interim, pro forma, complete or partial): consolidated and non-

11  consolidated balance sheets, statements of earnings, revenues, profits and losses, additional paid-in

12  capital, retained earnings, source and application of funds, cash flow statements, projections, notes to

13  each of such statements, and any and all other statements and notes that pertain to Oracle's past or

14  present financial condition.

15    17.    "SEC" refers to the United States Securities and Exchange Commission, its national,

16  regional and branch officers and its commissioners, directors, administrators, branch chiefs,

17  attorneys, accountants, investigators, paralegals and staff.

18    18.    The term "workpapers" means all documents concerning the procedures applied,

19  work performed, evidence obtained and conclusions reached in the engagement by any auditor,

20  practitioner, consultant or any other person working on your behalf.  Workpapers for any audit or

21  attestation include, but are not limited to:

22      Working papers are records kept by the auditor [or practitioner] of the procedures
        applied, the tests performed, the information obtained, and the pertinent conclusions
23      reached in the engagement.  Examples of working papers are audit programs,
        analyses, memoranda, letters of confirmation and representation, abstracts of
24      [Oracle] documents, and schedules or commentaries prepared or obtained by the
        auditor. ***Working papers also may be in the form of data stored on tapes, films, or***
25      ***other media.***

26  AU §339.03 (emphasis added).

27    19.    The term "audit documentation," as defined by SEC Regulation S-X §210.2-6,

28  consists of records relevant to the audit or review, including workpapers and other documents that

SCHEDULE A - C-01-0988-MJJ

- 3 -

1  form the basis of the audit or review, and memoranda, correspondence, communications, other

2  documents and records (including electronic records), which: (1) are created, sent or received in

3  connection with the audit or review and (2) contain conclusions, opinions, analyses, or financial data

4  related to the audit or review. Such memoranda, correspondence, communications, other documents,

5  and records (including electronic records) are considered audit documentation whether they support

6  the final conclusions regarding the audit or review, or contain information or data, relating to a

7  significant matter, that is inconsistent with the auditor's final conclusions regarding that matter or the

8  audit or review. Such documents and records include, but are not limited to, those documenting a

9  consultation on or a resolution of differences in professional judgment. Further, such audit

10 documentation must be sufficient to enable a reviewer with relevant knowledge and experience,

11 having no previous connection with the audit engagement, to understand the nature, timing, extent,

12 and results of the auditing or other procedures performed, evidence obtained, and conclusions

13 reached, and to determine the identity of the persons who performed and reviewed the work.

14       20.    The term "professional services" means any work or services performed by you for

15 Oracle, the Individual Defendants or the SLC.

16       21.    The connectives "and" and "or" shall be construed either disjunctively or

17 conjunctively as necessary to bring within the scope of the document request all responses that

18 otherwise might be construed to be outside of its scope.

19       22.    The use of the singular shall be deemed to include the plural, and the use of one

20 gender shall include all others, as appropriate in the context.

21       23.    "Including" shall be construed to mean "without limitation."

22 **II.    INSTRUCTIONS**

23       1.    All documents shall be produced as they are maintained in the ordinary course of

24 business, and shall be produced in their original folders, binders, covers or containers, or facsimile

25 thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such

26 documents are stored and retrieved.

27       2.    In responding to these requests, you shall produce all responsive documents

28 (including those stored electronically), which are in your possession, custody or control, or in the

SCHEDULE A - C-01-0988-MJJ

1   possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or

2   affiliates, or any of your respective directors, officers, managing agents, agents, employees,

3   attorneys, accountants or other representatives.  A document shall be deemed to be within your

4   control if you have the right to secure the document or a copy of the document from another person

5   having possession or custody of the document.

6        3.    Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection

7   and copying by plaintiffs *original* documents including those stored electronically as they are kept in

8   the usual course of business.  If the original is not in your custody, then a copy thereof, and all non-

9   identical copies which differ from the original or from the other copies produced for any reason,

10  including, without limitation, the making of notes thereon.

11       4.    To the extent that there are documents containing information relevant to these

12  requests that are currently in electronic format, the documents are to be produced in their native

13  format (*e.g.*, Word, Excel, or Word Perfect).

14       5.    If production of documents is withheld on the ground of privilege, as to each such

15  withheld document state the following information:

16           (a)    which privilege is claimed;

17           (b)    who is asserting the privilege;

18           (c)    a precise statement of the facts upon which said claim of privilege is based;

19  and

20           (d)    the following information describing each purportedly privileged document:

21               (i)    a brief description sufficient to identify its nature, *i.e.*, agreement,

22  letter, memorandum, type, etc.;

23               (ii)    a brief description sufficient to identify its subject matter and the

24  purpose of the document;

25               (iii)    the date it was prepared;

26               (iv)    the date it bears;

27               (v)    the date it was sent;

28               (vi)    the date it was received;

SCHEDULE A - C-01-0988-MJJ

1     (vii) the identity of the person preparing it;

2     (viii) the identity of the person sending it;

3     (ix) the identity of each person to whom it was sent or was to have been

4 sent, including all addresses and all recipients of copies;

5     (x) a statement as to whom each identified person represented or

6 purported to represent at all relevant times;

7     (xi) all persons to whom its contents have been disclosed; and

8     (xii) a precise description of the place where each copy of that document is

9 kept, including the title or description of the file in which said document may be found and the

10 location of such file.

11  6. If a portion of any document responsive to these requests is withheld under claim of

12 privilege pursuant to Instruction No. 5, any non-privileged portion of such document must be

13 produced with the portion claimed to be privileged redacted.

14  7. You are to produce each document requested herein in its entirety, without deletion or

15 excision (except as qualified by Instruction Nos. 5 and 6 above), regardless of whether you consider

16 the entire document to be relevant or responsive to the requests.

17  8. Whenever a document is not produced in full or is produced in redacted form, so

18 indicate on the document and state with particularity the reason or reasons it is not being produced in

19 full, and describe to the best of your knowledge, information and belief, and with as much

20 particularity as possible, those portions of the document which are not being produced.

21  9. If a document responsive to these requests was at any time in your possession,

22 custody or control but is no longer available for production, as to each such document state the

23 following information:

24     (a) whether the document is missing or lost;

25     (b) whether it has been destroyed;

26     (c) whether the document has been transferred or delivered to another person and,

27 if so, at whose request;

28     (d) whether the document has been otherwise disposed of; and

SCHEDULE A - C-01-0988-MJJ

(e)     a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10.     With respect to any category of documents, the production of which you contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

## III.     RELEVANT TIME PERIOD

All requests herein refer to the period from January 1, 2000 through June 18, 2003 (the "relevant time period"), unless otherwise specifically indicated, and shall include all documents and information that relate to such period, even though prepared or published outside of the relevant time period.  Any request that elicits documents relating to the SLC shall include the relevant period described above, as well as the period from June 18, 2003 to the present.

## IV.     DOCUMENTS REQUESTED

REQUEST NO. 1:

All documents and communications relating to or discussing any professional services performed by you for Oracle, Ellison, Henley, Sanderson, or the SLC, including, but not limited to:

(a)     audits;

(b)     consulting;

(c)     reviews;

(d)     tax;

(e)     assurance, accounting and attestation; and

(f)     agreed upon procedures.

REQUEST NO. 2:

All audit documentation and engagement workpapers concerning all professional services performed by you for Oracle, Ellison, Henley, Sanderson, or the SLC, including, but not limited to:

(a)     audits;

(b)     consulting;

(c)     reviews;

SCHEDULE A - C-01-0988-MJJ

- 7 -

1      (d)     tax;

2      (e)     assurance, accounting and attestation; and

3      (f)     agreed upon procedures

4 **REQUEST NO. 3:**

5     All documents constituting or concerning communications to, from, or relating to Oracle,

6 Ellison, Henley, Sanderson, or the SLC, including correspondence files and written communications

7 electronically preserved, including email and instant messages.

8 **REQUEST NO. 4:**

9     All documents and communications with governmental, judicial or law enforcement agencies

10 including the SEC, the U.S. Department of Justice and the U.S. Attorney's Office, concerning

11 Oracle, Ellison, Henley, Sanderson or the SLC. This request includes documents produced to the

12 SEC and transcripts of testimony to the SEC.

13 **REQUEST NO. 5:**

14     All documents and communications with regulatory agencies concerning Oracle, Ellison,

15 Henley, Sanderson or the SLC, including, but not limited to, the Public Oversight Board, the AICPA

16 (American Institute of Certified Public Accountants) and the National Association of Securities

17 Dealers.

18 **REQUEST NO. 6:**

19     All documents and communications relating to or discussing Oracle, Ellison, Henley,

20 Sanderson or the SLC, kept or maintained by all personnel who provided professional services for

21 Oracle, Ellison, Henley, Sanderson or the SLC.

22 **REQUEST NO. 7:**

23     To the extent not covered in Request Nos. 1-6, all documents and communications, without

24 limitations as to time, relating to or discussing (including any assignments or instructions by Thomas

25 (Tom) Williams, Michael (Mike) Quinn, Jennifer Minton or any other Oracle executive, officer, or

26 employee) the location, disposition, destruction or alteration of any electronic and paper documents

27 and correspondence relating to Oracle customer invoices, debit memos, overpayments, accounts

28 receivable reserve account, account 12601, unassigned cash or unapplied cash.

SCHEDULE A - C-01-0988-MJJ

1 | REQUEST NO. 8:

2      To the extend not covered in Request Nos. 1-7, all documents and communications with the

3 | SLC, without limitation as to time, relating to or discussing any review or investigation of Oracle's

4 | financial statements, forecasts, projections or recognition of revenue for Oracle's fiscal year 2001

5 | and each of the quarters therein.

6 | REQUEST NO. 9:

7      All documents received from or sent to E&Y, concerning Oracle, the Individual Defendants

8 | or the SLC.

9 | REQUEST NO. 10:

10      All documents constituting or concerning communications with E&Y, or any of E&Y's

11 | former employees or partners relating to or discussing Oracle, Ellison, Henley, Sanderson or the

12 | SLC.

13 | REQUEST NO. 11:

14      All documents and communications concerning your document destruction, retention and

15 | alteration policy in effect during the relevant time period, including, without limitation, any such

16 | policies concerning electronically stored documents and e-mail.

17 | REQUEST NO. 12:

18      All documents concerning the preservation, search for, collection, maintenance, destruction

19 | or alteration of any and all documents (including e-mail and other electronic data) concerning Oracle

20 | or the Individual Defendants that were undertaken with respect to this action, including, without

21 | limitation, all such action taken after this action was filed but prior to this request.

22 | T:\CasesSF\Oracle3\SCH00013385_AUDITOR.doc

23

24

25

26

27

28

SCHEDULE A - C-01-0988-MJJ

# Exhibit 8



**ANDERSEN**

December 21, 2004

Arthur Andersen LLP

33 West Monroe Street
Chicago IL 60603-5385

www.andersen.com

*VIA FACSIMILE 415/288-4534*

Willow E. Radcliffe, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

RE:   *In re: Oracle Corporation Securities Litigation; (Case No. C-01-0988-MJJ)*
      Arthur Andersen LLP Subpoena

Dear Ms. Radcliffe:

Arthur Andersen LLP ("Andersen"), which is not a party to the above litigation has received a copy of the subpoena dated December 8, 2004.   Andersen hereby makes and reserves the following objections to the subpoena to the extent they may apply:

1.   The subpoena is overbroad and purports to designate large groups of documents which do not appear to be relevant to the subject matter of this action (nor reasonably calculated to lead to the discovery of admissible evidence), thus imposing an unwarranted and undue burden on Andersen.

2.   As a result of the overly broad nature of the subpoena described in Objection No. 1, the subpoena appears to seek documents the production of which would be unreasonable and oppressively intrusive into the privacy of Andersen, a non-party.

3.   The timing for response to the subpoena is unreasonable and imposes an undue burden on Andersen.

4.   The subpoena is unduly vague, ambiguous, and lacking in necessary particularization, precluding Andersen from determining the identity of the documents of which the subpoena seeks production.

5.   The subpoena is unduly burdensome and oppressive, includes duplicate requests, and fails to reflect your duty to minimize discovery issued to third parties.

Ms. Willow E. Radcliffe, Esq.
December 21, 2004
Page 2

6. The subpoena requires Andersen to produce proprietary and/or confidential documents including documents which may constitute or contain trade secrets and confidential commercial information. In particular, Andersen objects to the production of confidential proprietary information of Andersen in the nature of trade secrets concerning Andersen's methodology for designing, performing, documenting and billing for its services.

7. Andersen objects to the production of any documents except pursuant to an appropriate protective order limiting use of and access to confidential documents or information.

8. Andersen objects to the production of any information stored exclusively in electronic format as unduly burdensome.

9. The subpoena is oppressive and unreasonable to the extent it seeks information from a non-party that has been obtained or made available already or could be obtained or made available from some other source that is more convenient, less burdensome, or less expensive. In particular, Andersen objects to the subpoena to the extent it seeks documents and/or information more properly obtained from one of the parties in the case (or others under their control) rather than a third party, thus failing to meet the obligation to minimize discovery burdens imposed on third parties.

10. Andersen objects to the subpoena to the extent it requires the production of documents protected from discovery pursuant to applicable privileges and statutory restrictions, including but not limited to the attorney-client privilege, the attorney work product doctrine, laws protecting privacy rights, accountant-client privilege, and/or any other applicable privilege or statutory or contractual restriction on disclosure. Similarly, Andersen objects to the subpoena to the extent that any of the material requested is protected from disclosure by any applicable state taxpayer privilege or any other constitutional, statutory and/or common law rights of privilege, including public policy grounds, recognized under applicable state law(s).

11. Andersen objects to the document requests contained in the subpoena to the extent that they seek information regarding time periods that bear no relation to the relevant time period at issue in the litigation.

12. Section 7216 of the Internal Revenue Code precludes Andersen, as provider of tax services, from producing tax documents or information relating to those tax services absent express waiver of statutory protection by Andersen client(s) or an order of the Court. To the extent this prohibition in the Code, or any similar prohibition under applicable state law, is implicated by virtue of your subpoena

Ms. Willow E. Radcliffe, Esq.
December 21, 2004
Page 3

> request, the law's requirements will need to be satisfied before any such
> information is disseminated.

13. Andersen objects to the subpoena to the extent it calls for reports to or by
regulatory authorities that Andersen is prohibited from producing without the
consent of such authorities.

14. Andersen objects to the subpoena to the extent it purports to impose duties of
disclosure beyond those imposed by the Rules of Civil Procedure. Andersen
denies any obligation to respond beyond that imposed by the applicable Rules.

15. Any objection that Andersen makes with regard to the requests for documents is
not an admission that such documents in fact exist.

Andersen expressly reserves the right to amend, expand, or delete any part of the objections
stated herein. Please be advised that we will not provide documents in response to the
subpoena as long as the foregoing objections are outstanding, unless such objections are
resolved, waived or adjudicated. Nevertheless, as mentioned previously, I hope that we can
resolve these issues amicably and I encourage you to contact us to explore potential resolution
of any outstanding objections going forward, so that we may work out mutually acceptable
parameters for production. In the event that good faith discussions bring us to an impasse and
you decide to file a motion to compel production, Andersen respectfully requests timely notice
of your intent to file such a motion and an opportunity to be heard.

If you have any questions, please do not hesitate to call Melissa S. Widen at (312) 507-2258 at
your convenience. Thank you for your cooperation in this matter.

Very truly yours,

ARTHUR ANDERSEN LLP

By

Melissa S. Widen
Counsel

# Exhibit 9



**LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Monique C. Winkler
MoniqueW@lerachlaw.com

March 11, 2005

**VIA U.S. MAIL**

Melissa S. Widen
Arthur Andersen LLP
33 W. Monroe St
Chicago, IL 60603

> Re:   *In re Oracle Corporation Securities Litigation*
>        U.S.D.C. ND Cal. Master File No. C-01-0988-MJJ

Dear Ms. Widen:

As you are aware, on February 5, 2005, the Court in the above-referenced matter temporarily stayed the enforcement of third-party subpoenas until after the March 1, 2005 discovery conference. On March 10, 2005, United States Magistrate Judge Joseph C. Spero entered the attached Amended Order Setting a Discovery Plan ("Order"). Pursuant to the Order, the temporary discovery stay has been lifted.

The Order identifies the discovery to be produced by Oracle's auditors and accountants. We believe the Order should relieve all ambiguity on the matter. Specifically, the Order provides:

> Plaintiffs' third party discovery from Oracle's auditors and accountants is limited to documents relating to (i) the debit memo transactions; (ii) the accounting treatment of the 46,000 debit memo transactions; and (iii) tax advisory services provided to Henley and Ellison relating to the Relevant Time Period.

Order at 8.

The Court also issued a preservation order to Oracle's auditors and accountants:

> In addition, Oracle's auditors and accountants ARE HEREBY ORDERED to preserve all relevant documents (including electronic documents and e-mail) concerning their audit work on behalf of Oracle for the Relevant Time Period.

Order at 9.



**LERACH**
**COUGHLIN**
**STOIA**
**GELLER**
**RUDMAN**
**& ROBBINS** LLP

Melissa S. Widen
March 11, 2005
Page 2

        The Order defines Relevant Time Period as June 1, 2000 through June 1, 2001 and states that documents created outside the period that refer to events within the period must also be produced. Order at 1.

        Please call with any questions. Thank you in advance for your cooperation in responding to the outstanding discovery.

                                Very truly yours,

                                Monique C. Winkler

MCW:mm
Enclosure

T:\CasesSF\Oracle3\Corres\Andersen ltr_031105.doc



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |

Master File No. C-01-0988-MJJ

CLASS ACTION

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN

Judge Martin J. Jenkins
Magistrate Judge Joseph C. Spero

1   On Tuesday, March 1, 2005, the parties appeared before United States Magistrate Judge

2   Joseph C. Spero for a discovery conference.  The parties offered written discovery plans and

3   presented oral argument.  The Court, having reviewed the written submissions and considered the

4   parties' oral argument, hereby sets forth the following Discovery Plan, which shall govern discovery

5   in this case.

6   For the reasons stated on the record, IT IS ORDERED THAT:

7   **I.   SCOPE OF DISCOVERY**

8   The scope of discovery shall be as follows:

9   **A.   RELEVANT TIME PERIOD**

10   For purposes of responding to written discovery requests, the "Relevant Time Period" shall

11   be from June 1, 2000 to June 1, 2001.  Documents created outside of the Relevant Time Period that

12   refer to events within the Relevant Time Period must also be produced.

13   **B.   FILES TO BE SEARCHED**

14   In responding to Plaintiffs' requests for documents, Oracle Corporation ("Oracle" or the

15   "Company") shall search the hard copy and electronic files of the following individuals:

16   1.   Lawrence Ellison ("Ellison"), Jeffrey Henley ("Henley"), Edward "Sandy"

17   Sanderson, Stephanie Aas, Jennifer Glass and Jennifer Minton (collectively "the Speakers");

18   2.   The Speakers' direct reports during the Relevant Time Period including, but not

limited to, those represented in Oracle's February 18, 2005 letter to the Court;

19   3.   The Area Vice Presidents in Oracle's three United States sales and consulting

20   divisions: North American Sales, Oracle Service Industries and Oracle Products Industries;

21   4.   The following individuals: John Nugent, Bret Fuller, Charles Rozwat, Gary Roberts,

John Wheeler, Sergio Giacoletto, Greg Myers, Neil Menon, Brad Scott, Michael Quinn, Michael

22   Rocha, Ray Lane and Ron Cuneo; and

23   5.   Other individuals, as agreed upon by the parties or ordered by the Court.

24   **C.   DEFINITION OF KEY ISSUES IN CASE**

25   With respect to the following topics related to discovery between the parties, the Court sets

26   forth the following guidelines:

27

28

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
MJJ (Consolidated)

1       **1.      Economy**

2       Subject to the limitations set forth in Sections I(A) and (B) above, hereafter ("SCOPE"),

3   Defendants shall produce documents and communications (including e-mail correspondence)

4   concerning the United States economy and its impact or potential impact on Oracle's revenues,

5   earnings and expenses; its impact or potential impact on customer purchasing decisions of IT

6   products and services in general; and specifically the purchase of products or services from Oracle.

7       **2.      Functionality of Oracle's Suite 11i Software and Its Individual**
        **Modules**

8   Defendants shall produce:

9

10      (a)     Software versions 1, 2 and 3 of Oracle's Suite 11i;

11      (b)     High level design documents for Suite 11i;

12      (c)     Technical manuals for Suite 11i;

13      (d)     "Bug reports" that in any way reference integration or interoperability;

14      (e)     High level documents describing the scope and dimension of "bug
    problems" within Suite 11i and/or any of its modules other than integration and interoperability;

15

16      (f)     Documents regarding any lost or deferred sales of any Oracle product, as
    well as any material expense with respect to any Oracle product – such as refunds, rebates or

17  remediation. For purposes of this issue only, "material expense" is defined as having a financial
    impact greater than or equal to $500,000.

18      **3.      Revenue/Earnings Forecasting**

19      Subject to the Court's rulings on SCOPE, Defendants shall produce documents relating to

20  Oracle's forecasts, including any mention of the economy as it relates to Oracle's forecasting during

21  the Relevant Time Period and as it related to the Company's pipeline and its growth or decline.

22  Additionally, Defendants shall produce documents relating to Oracle's sales pipeline and pipeline

23  conversion rates/ratios.

24      **4.      Accounting and Underlying Documents**

25      Defendants shall produce all documents relating to (i) the alleged "On Account Cleanup"

26  occurring in November 2000; (ii) the 46,000 debit memoranda; and (iii) the accounting treatment of

27  those debit memoranda, including any audit trail, and all related accounting policies.

28  AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
    MJJ (Consolidated)

5. **Insider Trading**

Subject to the Court's rulings on SCOPE, Defendants shall produce documents and communications regarding Defendants' sales or contemplated sales of Oracle securities during January 2001. These documents shall include Defendants' option agreements, the reasons and timing of their sales, and the Company's policies and procedures regarding trading and options.

6. **Special Litigation Committee**

Defendants shall produce all underlying documents that the Special Litigation Committee ("SLC") reviewed from whatever source, except documents subject to privilege or work product protection for which they will produce a privilege log. Defendants are not required to specifically identify these documents as having been produced to the SLC. Defendants reserve their right to designate any such documents as either "Confidential" or "Highly Confidential" under the terms of the January 11, 2005 Revised Stipulated Protective Order Governing Confidentiality. Such production shall not constitute a waiver of either the attorney-client or attorney work product privilege.

Plaintiffs may file a motion to compel production of documents related to the SLC's investigation including production of the SLC Report itself.

**II.     CONVENTIONS FOR PARTY DISCOVERY**

**A.     TIMING OF DOCUMENT PRODUCTION**

Defendants shall produce documents on a rolling basis with production to be completed by May 1, 2005. Defendants shall produce documents responsive to Plaintiffs' requests for documents contained in the files of any deponent not otherwise within the category of individuals specified in Section I(B) above, no later than seven days prior to the date on which such witness is noticed to be deposed. Plaintiffs shall complete their document production by March 21, 2005, with the exception of the interrogatory set forth in VII(C) *infra*, which shall be responded to within forty-five (45) days of the entry of this Order.

**B.     PRODUCTION FORMAT**

When preparing documents for production, the parties shall adhere to the following conventions with respect to documents within their possession, custody or control:

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

1       (a)    The parties shall produce e-mails in searchable TIFF format. E-mails shall include the following information: sender, recipient, blind and carbon copies, date sent, e-mail box

2 from whom the document is produced, and the date and time it was opened, deleted, responded to, or forwarded. Furthermore, the parties shall produce all attachments to or documents embedded in

3 such e-mails in native format, readily accessible from each e-mail.

4

5       (b)    The parties shall produce all documents that were created and kept in electronic format in either native format or a searchable electronic format. For example, Microsoft

6 Word or Excel files shall be produced in their native format. Information stored on Oracle databases, such as the accounting treatment for the 46,000 debit memos, shall be downloaded into

7 Excel or another comparable format and produced in that electronic format.

8       (c)    The parties shall meet and confer regarding locking and protecting electronic documents in order to prevent their alteration or manipulation subsequent to production.

9

10       (d)    With respect to documents that were reviewed by the SLC or produced to the plaintiffs in Oracle Cases, JCCP No. 4180 (CIV 417511 San Mateo Co. Sup. Ct.) and in *In re*

11 *Oracle Corp. Deriv. Litig.*, C.A. No. 18751 (Del. Ct. of Chancery) that have already been produced to Plaintiffs in paper format, Defendants shall also produce to Plaintiffs spreadsheets in native

12 format and e-mails in searchable TIFF format with the metadata described above. Defendants may submit a letter brief to the Court requesting that Plaintiffs share the cost of reproducing these

13 specified documents in electronic format.

14   **C.**    **PRODUCTION SOURCE LOG**

15     The parties must produce logs indicating the source files of all produced documents,

16 including for documents previously produced.

17   **D.**    **PRIVILEGE LOGS**

18     The parties shall produce privilege logs within forty-five (45) days after a document is

19 withheld for privilege.

20 **III.**   **DEPOSITIONS**

21   **A.**    **TIME LIMIT PER DEPOSITION**

22     Federal Rule of Civil Procedure 30 shall govern the time limit for depositions, except upon

23 agreement of the parties or court order.

24   **B.**    **DEPOSITIONS OF 30(b)(6) WITNESSES**

25       (a)   ~~Plaintiffs' Position~~

26     Plaintiffs' depositions of the persons most knowledgeable at Oracle shall be completed by

27 April 15, 2005. The depositions may cover the following agreed upon topics: accounting, electronic

28 systems, forecasting and Suite 11i.

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

1  Defendants shall produce a documentary and written response to Plaintiffs' 30(b)(6) subjects

2  relating to document preservation.  If, after Plaintiffs have had an opportunity to review those

3  responses, Plaintiffs believe that a deposition regarding document preservation is still necessary, the

4  parties shall meet and confer.

5  Where Defendants offer a Speaker as defined in I(B)(1), a Speaker's direct report as defined

6  in I(B)(2), or an individual named in the Revised Second Amended Complaint for Violations of the

7  Federal Securities Laws ("RSAC") as a 30(b)(6) witness, Plaintiffs shall not be precluded from

8  deposing that same witness in his/her individual capacity at a later date.  Instead, in such

9  circumstances, the parties shall meet and confer, taking into account the outstanding discovery and

10  may seek assistance from the Court in the event they are unable to reach an agreement.

11  ~~(b)   Defendants' Position~~

12  Plaintiffs' depositions of the persons most knowledgeable at Oracle shall be completed by

13  April 15, 2005.  The depositions may cover the following agreed upon topics: accounting,

14  electronic systems, forecasting and Suite 11i.

15  Defendants shall produce a documentary and written response to Plaintiffs' 30(b)(6)

16  subjects relating to document preservation.  If, after Plaintiffs have had an opportunity to review

17  those responses, Plaintiffs believe that a deposition regarding document preservation is still

18  necessary, the parties shall meet and confer.

19  Where an individual is offered by Oracle as a Rule 30(b)(6) witness at a deposition and

20  documents from that individual's files have been produced to Plaintiffs at least seven (7) days prior

21  to the deposition, that individual may not be deposed again in his or her individual capacity at a

22  later date.

23  C.   FACT WITNESS DEPOSITIONS

24  Depositions of substantive witnesses shall begin after May 1, 2005.  Subject to the other

25  limits above, Defendants shall produce documents from the files of a deponent, including a

26  confidential witness ("CW"), no less than seven (7) days before that individual's deposition as a fact

27  witness.

28

(a)     Subject to change upon the receipt and review of discovery from Defendants and non-parties, Plaintiffs currently intend to depose the following witnesses:

1. Anil Vora
2. Bill Castello
3. Brad Scott
4. Bret Fuller
5. Charles Rozwat
6. David Winton
7. Edward J. Sanderson
8. Frank Varasano
9. Gary Bloom
10. Gary Roberts
11. George Roberts
12. Ivgen Guner
13. Jay Nussbaum
14. Jeffrey Henley
15. Jennifer Minton
16. Jim English
17. Jody Terry
18. John Nugent
19. Jon Simmons
20. Larry Garnick
21. Lawrence Ellison
22. Mark Barrenchea
23. Mary Ann Gillespie
24. Michael Rocha
25. Michael P. DeCesare
26. Nick Classik
27. Patricia McManus
28. Ray Lane
29. Richard Blotner
30. Ron Police
31. Safra Catz
32. Sarah Kopp
33. Sergio Giacolletto
34. Steve McLaughlin
35. Terrence Ford
36. Tom Thimot
37. Tom Williams
38. Valerie A. Borthwick

Plaintiffs reserve the right to modify this list and to take additional depositions as discovery in this action proceeds.

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

1      (b)    Defendants currently intend to depose the forty-nine (49) CWs as well as the
2  proposed class representatives.  Defendants reserve the right to take additional depositions, up to the
   sixty-five (65) allowed by the Court, at any time prior to the close of fact discovery.

3  **IV.    EXPERT DISCOVERY**

4
5      The parties shall exchange any affirmative expert reports on March 3, 2006, and any rebuttal
   reports on April 3, 2006. The parties shall complete expert discovery by May 22, 2006.

6  **V.    THIRD PARTY DISCOVERY**
7
       **A.    LIFTING OF THE STAY AND TIMING OF PRODUCTION FOR**
8            **ALL THIRD PARTY DISCOVERY**

9      The Court hereby lifts the stay on third party discovery put in place by its February 5, 2005
10 Order, subject to the limitations imposed by this Order.  Plaintiffs shall meet and confer with third
11 parties concerning the timing of their document production.

12     **B.    RELEVANT TIME PERIOD**

13     The definition of Relevant Time Period, June 1, 2000 – June 1, 2001, set forth above, shall
14 apply to all third party discovery.

15     **C.    SCOPE OF DISCOVERY FROM THIRD PARTY CUSTOMERS**

16         **1.    Number of Customers to be Subpoenaed**

17     Without leave of Court, Plaintiffs shall not subpoena more than one hundred (100) of
18 Oracle's current and former customers.  Plaintiffs have, to date, subpoenaed ninety-three (93) of
19 Oracle's customers.

20         **2.    Subject Matter of Discovery to Be Produced by Customers**

21     Plaintiffs may seek discovery from Oracle's current and former customers on the following
22 topics only:

23         **(a)    The United States Economy**

24     Plaintiffs' third party discovery from customers relating to the economy is hereby limited to
25 the following:

26     (i) communications with Oracle relating to increases or decreases in purchases from Oracle
27 as a result of the economy; and

28

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
MJJ (Consolidated)

1    (ii) internal documents relating to decisions to purchase or not to purchase from Oracle

2    because of the economy.

### (b) Oracle Software Integration and Interoperability Problems

5    Plaintiffs' third party discovery from customers relating to problems with Oracle's Suite 11i

6    is hereby limited to documents regarding integration and interoperability (including integration and

7    interoperability gaps and bugs) with Oracle applications Suite 11i and its modules, including but not

8    limited to Oracle's CRM Module.  For purposes of this Order, integration refers to the ability of

9    modules of Suite 11i to work together and share information.

### (c) Accounting

11    Plaintiffs' third party discovery from customers relating to Oracle's accounting is limited to

12    documents relating to the 46,000 debit memo transactions created on or about November 17, 2000.

### D.    DISCOVERY FROM ANALYSTS AND MEDIA ORGANIZATIONS COVERING THE COMPANY

14    Subject to the Court's rulings on SCOPE, Plaintiffs may seek discovery from analysts and

15    news services on the following topics:

16    (a)    The Defendants' public statements;

17    (b)    Customer interviews and complaints/problems with Oracle products,

18    including 11i;

19    (c)    The downturn in the economy and IT budgets during the Class Period;

20    (d)    Oracle's forecasts and projections;

21    (e)    Oracle's revenue and earnings reports and financial statements;

22    (f)    Integration and/or interoperability gaps and bugs; and

23    (g)    One-on-one interviews with Defendants.

### E.    DISCOVERY FROM AUDITORS

25    Plaintiffs' third party discovery from Oracle's auditors and accountants is limited to

26    documents relating to (i) the debit memo transactions; (ii) the accounting treatment of the 46,000

27    debit memo transactions; and (iii) tax advisory services provided to Henley and Ellison relating to

28    the Relevant Time Period.

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

- 8 -

1      In addition, Oracle's auditors and accountants ARE HEREBY ORDERED to preserve all

2   relevant documents (including electronic documents and e-mail) concerning their audit work on

3   behalf of Oracle for the Relevant Time Period.

4   **F.      DISCOVERY FROM CONFIDENTIAL WITNESSES**

5      Plaintiffs shall disclose the names and corresponding CW numbers of the CWs used in the

6   RSAC to Defendants' counsel, including in-house counsel at Oracle, within forty-eight (48) hours of

7   the signing of this Order.  Plaintiffs' disclosures shall be subject to the following restrictions:

8           (a)     Counsel for Defendants shall not disclose a CW's role to anyone other than

9   (i) Defendants' counsel within Mayer, Brown, Rowe & Maw LLP ("MBR&M"); (ii) in-house

10  counsel of Oracle Corporation; and (iii) any consultant retained by MBR&M for purposes of this

11  litigation upon receipt of an Undertaking in the form of Exhibit A hereto;

12          (b)     Defendants' counsel may discuss with current or former Oracle employees or

13  third parties the persons who are CWs, including the information attributed to them in this litigation

14  and any other information that may bear upon the case, but shall not disclose in any such

15  communications that the persons are CWs referenced in this litigation;

16          (c)     Defendants' counsel or defendants' experts/consultants shall not make initial

17  contact with a CW without informing Plaintiffs' counsel of their intention to do so no less than

18  forty-eight (48) hours prior to making such initial contact;

19          (d)     The identities of the CWs shall not be used for any purpose other than this

20  litigation; and

21          (e)     When a party seeks to file with the Court a document disclosing the identities

22  of the CWs in their roles as CWs, the procedures specified in paragraph 10 of the January 11, 2005

23  Revised Stipulated Protective Order Governing Confidentiality shall apply.  Similarly, portions of

24  depositions or transcripts that refer to any CW's role will be kept confidential consistent with this

25  Order.

26          (f)     The Court retains jurisdiction over the enforcement of this Order for six (6)

27  months after entry of final judgment in this action.

28

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
MJJ (Consolidated)

- 9 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.    CLASS DISCOVERY

### A.    CLASS REPRESENTATIVES

Plaintiffs shall produce documents regarding class representative discovery by March 7, 2005.

Defendants' brief in opposition to the motion for class certification shall be due by May 6, 2005, and Plaintiffs' reply shall be due by June 13, 2005. The date for oral argument shall be set by the United States District Court Judge Martin J. Jenkins. The parties have requested a hearing date in July 2005 or at the Court's earliest convenience thereafter.

### B.    DISCOVERY FROM ABSENT CLASS MEMBERS

Prior to the discovery conference, the Court was informed that Defendants are not currently seeking any discovery from absent class members, but are reserving their right to do so in the future.

## VII.    MISCELLANEOUS ADDITIONAL DISCOVERY ISSUES

(a)    All contention interrogatories are stayed until further order of the Court. No response or further response to any outstanding contention interrogatory is required at this time.

(b)    Plaintiffs shall produce all documents received from CWs relating to the Defendants and shall identify from which CW the documents were received. The latter information shall be subject to V(F) above.

(c)    With respect to Defendants' Interrogatories to Plaintiffs seeking information concerning the individuals and organizations identified in Plaintiffs' Rule 26(a) Initial Disclosures, Plaintiffs are ordered to respond by describing generally what Plaintiffs understand each of the identified witnesses in their Initial Disclosures know about the case. Plaintiffs shall respond to this modified interrogatory within forty-five (45) days of the entry of this Order.

## VIII.    RECONCILIATION OF DISCOVERY DISPUTES

As outlined in Judge Jenkins' Amended Pretrial Order of December 17, 2004, the parties shall meet and confer about all discovery disputes and, in the event that they cannot resolve such disputes, each party shall submit a two-page letter brief to the Court outlining the party's position on the issue. All matters relating to the modification of the discovery plan shall be addressed to the

AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-MJJ (Consolidated)

1    undersigned.  ~~The parties shall address all future letter briefs to both Judge Jenkins and Magistrate~~

2    ~~Judge Spero.~~ *er*

3         IT IS SO ORDERED.

4

5    DATED: 3/10/05                    _____

6                                     THE HONORABLE JOSEPH C. SPERO
                                      UNITED STATES MAGISTRATE JUDGE
7

8         APPROVED AS TO FORM.

9    Submitted by:

     DATED:  March 9, 2005
10
     LERACH COUGHLIN STOIA GELLER
11     RUDMAN & ROBBINS LLP
     WILLIAM S. LERACH
12   MARK SOLOMON
     DOUGLAS R. BRITTON
13

14
                      /S/
15             MARK SOLOMON

16   401 B Street, Suite 1600
     San Diego, CA  92101
17   Telephone:  619/231-1058
     619/231-7423 (fax)
18
     LERACH COUGHLIN STOIA GELLER
19     RUDMAN & ROBBINS LLP
     SHAWN A. WILLIAMS
20   WILLOW E. RADCLIFFE
     ELI R. GREENSTEIN
21   JENNIE LEE ANDERSON
     MONIQUE C. WINKLER
22   100 Pine Street, Suite 2600
     San Francisco, CA  94111
23   Telephone:  415/288-4545
     415/288-4534 (fax)
24

25   Lead Counsel for Plaintiffs

26

27

28

     AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN – C-01-0988-
     MJJ (Consolidated)                                                - 11 -

1

2  MAYER, BROWN, ROWE & MAW LLP
   ALAN N. SALPETER
3

4

5                    / S /
   _____
6              ALAN N. SALPETER

7  190 South LaSalle Street, Suite 3900
   Telephone:  312/782-0600
8  312/701-7711 (fax)

9  T:\CasesSF\Oracle3\ORD00019094.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY FACSIMILE

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.      That on March 9, 2005, declarant served by facsimile the **AMENDED [PROPOSED] ORDER SETTING A DISCOVERY PLAN** to the parties listed on the attached Service List.

3.      That there is a regular communication by facsimile between the place of origin and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of March, 2005, at San Francisco, California.

                                      /s/ Carolyn Burr
                                      CAROLYN BURR

ORACLE III (LEAD)
Service List – 3/9/2005    (201-064-1)
Page 1 of 1

**Counsel For Defendant(s)**

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306
  650/331-2000
  650/331-2060 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street, Suite 3900
Chicago, IL  60603-3441
  312/782-0600
  312/701-7711 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA  94065
  650/506-5200
  650/506-7114 (Fax)

**Counsel For Plaintiff(s)**

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA  92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
  415/288-4545
  415/288-4534 (Fax)

**EXHIBIT A**

AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, _____, hereby acknowledge that I have read the

[Proposed] Order re Discovery Plan that was issued by the United States District Court for the

Northern District of California on March ____, 2005, in the case of: *In re Oracle Corporation*

*Securities Litigation*, Lead Case No. 417511, Case No. C-01-0988-MJJ.

I recognize that I am bound by the terms of that Order and I agree to comply with those

terms. I fully understand that any disclosure of the identities of the confidential witnesses to

anyone other than those individuals expressly permitted by the Order could expose me to

sanctions and punishment in the nature of contempt. I hereby agree to abide by the obligation

and conditions of the Order.

DATED: _____

_____

# Exhibit 10

Shawn A. Williams
ShawnW@Lerachlaw.com

June 27, 2005

VIA FACSIMILE & U.S. MAIL

Melissa S. Widen
Arthur Andersen LLP
18th Floor
33 W. Monroe Street
Chicago, IL 60603

Re:     *In re Oracle Corporation Securities Litigation*
        Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Melissa:

Thank you for the production (51 pages) in response to plaintiffs' December 8, 2004 subpoena and Magistrate Judge Spero's March 10, 2005 Discovery Plan and Order ("Order") in the above-referenced case. It is our belief, however, that the production is substantially incomplete. The Order requires that Arthur Andersen LLP ("Arthur Andersen") produce all documents relating to the debit memo transactions and the accounting treatment of the 46,000 debit memo transactions alleged in the Revised Second Amended Complaint. Order at 8. As you know, plaintiffs' Revised Second Amended Complaint alleges that the debit memo transactions and customer overpayments had a direct impact upon the Company's 25005 account, its "On Account," its "Unapplied Cash" account, and its cash advances and unearned revenue accounts. The result was the improper recognition of revenues and the issuance of false financial statements.

It appears from the documents produced by Arthur Andersen that it analyzed the Company's 25005 account, including, but not limited to, increases and decreases in said account during the relevant time period. It also appears that Arthur Andersen analyzed certain other accounts relating to the Company's 25005 account and customer overpayments, including adjustments to those accounts and purported reasons for the adjustment in said accounts. The deficiency of Arthur Andersen's production, even on a surface level, is evident from the form in which many of the documents have been produced. For example, *see* handwritten notes on many of the variation analyses done on Oracle Corporation's ("Oracle") accounts receivable unearned revenue accounts during the relevant period. It appears that these are drafts of such documents; however, the final versions have not been produced.

Secondly, memos concerning the accounts receivable testing done by Arthur Andersen frequently refer to coded items in the quarterly review files which have not been produced. *See*, for example, AA 00007-15. It is thus impossible, based on Arthur Andersen's production, to understand and evaluate the documents produced in any meaningful way other than to

Melissa S. Widen
June 27, 2005
Page 2

confirm that additional documents are indeed responsive and must be produced.  The following are examples of such documents plaintiffs believe they are entitled to:

      1.    The engagement letters that describes the scope of work that Arthur Andersen was to perform.

      2.    The workpaper's description or index that provides the audit context of the documents provided thus far and identifying other documents relevant to Unapplied Cash accounts #12018, 12570, 25005, customer overpayments, unearned revenue accounts, and earned revenue accounts.  All of these relate to the debit memo allegations.

      3.    Arthur Andersen's legend to identify all relevant codes and markings on the documents so that they may be appropriately interpreted.  For example, the documents provided in AA 000001-000051 are sometimes labeled with a handwritten "B" or "DD" – followed by a number.  The pages do not follow a numerical sequence. In order to follow the audit trail, plaintiffs need to obtain all documents within the "B" and "DD" series.

      4.    The documents produced refer to tests of balances, including use of monetary unit sampling, but Arthur Andersen has not produced documents supporting the execution of such tests.

      5.    The documents produced also contain notes by Arthur Andersen auditors about account descriptions and discussion of variances in Oracle's accounts receivables and unearned revenue accounts, but the sources of this information have not been produced.  Thus, the workpapers of interviews with Oracle staff members that was used to reach the conclusions stated must be produced.

      6.    Finally, several documents contain circled letters indicating a cross-reference to another item (*e.g.*, AA 000019, 000023, 000035, 000040, 000044, 000045, and 000051). Plaintiffs need the other workpapers corresponding to those cross-references to identify the work performed.

      Please let me know when such documents will be produced.

            Very truly yours,

            SHAWN A. WILLIAMS

SAW:rc