Exhibit 11



**LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Shawn A. Williams
ShawnW@Lerachlaw.com

June 30, 2005

<u>VIA FACSIMILE & U.S. MAIL</u>

Vincent P. Schmeltz, III, Esq.          Lee Rubin, Esq.
MAYER, BROWN, ROWE & MAW LLP            MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street                Two Palo Alto Square
Chicago, IL 60603-3441                  El Camino Real, Suite 300
                                        Palo Alto, CA 94306

Re:     *In re Oracle Corporation Securities Litigation*
        Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Counsel:

I write in response to your June 29, 2005 letter requesting the basis for plaintiffs' belief that the parties should agree that Judge Spero's March 10, 2005 Discovery Plan and Order ("Order") be modified to at least include the full set of audit workpapers for all periods relevant to this action. It is plaintiffs' belief that both Ernst & Young LLP ("Ernst & Young") and Arthur Andersen LLP's ("Arthur Andersen") productions are substantially incomplete, possibly due to the language of the Order, which does not currently require the production of complete sets of workpapers. First, the Order requires that Oracle's auditors produce all documents relating to the debit memo transactions and the accounting treatment of the 46,000 debit memo transactions alleged in the Revised Second Amended Complaint. Order at 8.

The documents produced by Arthur Andersen evidence an analysis of the Oracle's 25005 account, including, but not limited to, increases and decreases in said account during the relevant time period. It also appears that Arthur Andersen analyzed certain other accounts relating to the Company's 25005 account and customer overpayments, including adjustments to those accounts and purported reasons for the adjustment in said accounts. The need for complete sets of workpapers is evident from the form in which many of the documents have been produced. For example, *see* handwritten notes on many of the Arthur Andersen variation analyses done on Oracle accounts receivable unearned revenue accounts during the relevant period. It appears that these are drafts of such documents; however, the final versions have not been produced.

Secondly, memos concerning the accounts receivable testing done by Arthur Andersen frequently refer to coded items in the quarterly review files which have not been produced. *See*, for example, AA 00007-15. It is thus impossible, based on Arthur Andersen's production, to understand and evaluate the documents produced in any meaningful way other than to confirm that additional documents are indeed responsive and must be produced. Simply put,



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
&ROBBINS LLP

Vincent P. Schmeltz, III, Esq.
Lee Rubin, Esq.
June 30, 2005
Page 2

the full set of audit workpapers is necessary to understand even the limited production thus far as they would include the following documents and its information concerning the same:

1.      The engagement letters that describes the scope of work that Arthur Andersen was to perform.

2.      The workpaper's description or index that provides the audit context of the documents provided thus far and identifying other documents relevant to Unapplied Cash accounts #12018, 12570, 25005, customer overpayments, unearned revenue accounts, and earned revenue accounts. All of these relate to the debit memo allegations.

3.      Arthur Andersen's legend to identify all relevant codes and markings on the documents so that they may be appropriately interpreted. For example, the documents provided in are sometimes labeled with a handwritten "B" or "DD" – followed by a number. The pages do not follow a numerical sequence. In order to follow the audit trail, plaintiffs need to obtain all documents within the "B" and "DD" series.

4.      The documents produced refer to tests of balances, including use of monetary unit sampling, but Arthur Andersen has not produced documents supporting the execution of such tests.

5.      The documents produced also contain notes by Arthur Andersen auditors about account descriptions and discussion of variances in Oracle's accounts receivables and unearned revenue accounts, but the sources of this information have not been produced. Thus, the workpapers of interviews with Oracle staff members that was used to reach the conclusions stated must be produced.

6.      Finally, several documents contain circled letters indicating a cross-reference to another item (e.g., AA 000019, 000023, 000035, 000040, 000044, 000045, and 000051). Plaintiffs need the other workpapers corresponding to those cross-references to identify the work performed.

These are only some of the issues that could be resolved with the production of a complete set of Arthur Andersen's audit workpapers. Ernst & Young has produced even less.



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS ᴸᴸᴾ

Vincent P. Schmeltz, III, Esq.
Lee Rubin, Esq.
June 30, 2005
Page 3

       Please let me know whether you will agree to the requested modification.  If not, let's try to schedule a face-to-face meet-and-confer sometime prior to July 15, 2005.

                    Very truly yours,

                    SHAWN A. WILLIAMS

SAW:rc

# Exhibit 12

**C01-0988MJJ**

*In re: Oracle Securities Litigation*

**Hearing Date: 8/12/05**

**Judge Spero**

| | |
|---|---|
| Courtroom Clerk: | [Inaudible]<br>Master File No. C-01-0988-MJJ, *In re Oracle Securities Litigation*<br>Counsel? |
| Mark Solomon: | Thank you your honor. |
| Judge Spero: | All right.  What's up? |
| Mark Solomon: | I apologize for having to get you back out. |
| Judge Spero: | Oh no, no. |
| Mark Solomon: | Here's where we're at.  We have arrived here today apparently with a fundamental dispute on to what the scope was of your order concerning the 46,000 debit memo transactions. |
| Judge Spero: | I could tell that. |
| Mark Solomon: | And the defendants have now told us that they are willing to go back to their client and to investigate what the burden would be of seeking documents that relate to those transactions prior to November 17, 2000.  But they can't tell us what the burden is right now because they haven't looked into that issue before because they have preferred to adopt a narrow view of the scope that we agree with.  We've been using your language, your honor, from your, from the transcripts.  I know that you used the language "every scrap of paper," I want to assure you that we're not after every single scrap of paper . . . |
| Judge Spero: | I didn't think you were. |
| Mark Solomon: | We are willing to compromise when we can do so on an informed basis, but we cannot because we don't have any information on the burden argument that's now being raised. |
| Judge Spero: | And this is, this is the dispute as to whether the documents from the original transactions with the particular customers would be [produced]<br>. . . |

| | |
|---|---|
| Trace Schmeltz: | Right, and Your Honor, we're willing, literally in the next week, to go back and look at what that would take. We believe we have complied with the order and, and if there's a world where we haven't complied, or where we justified breaching a compromise can obviate this dispute, we're willing to go investigate, come back, and in good faith say here's what it would take to put that information together and give it to you, and here's the form we could do that. We're willing to do that over the next week, come back to the plaintiffs in one week, and then have any further conversation. Certainly, everyone has the right to seek protective order or motion to compel, or whatever, but we think we could come up with a compromise solution in that regard. |
| Judge Spero: | Okay. |
| Mark Solomon: | And, we're happy to do that, Your Honor. I want to just, just for the information for the Court, that there's an issue that is percolating that is we've been hearing a lot that Oracle doesn't have physical documents, doesn't have source documents, it's all on the databases. But it's not all, because there are some – I just don't know what the burden is. I'm afraid that that's an issue that is going to have to be flushed out down the road, but this is the first step. |
| Trace Schmeltz: | We can certainly address that. Certainly Oracle, no great surprise, the primary place they store data is on the database. I know that for sure. |
| Judge Spero: | I'm sure they do both things. |
| Mark Solomon: | Until they comply with the order . . . |
| Trace Schmeltz: | But to the extent there's paper I want to go find that out. It will take a week and we can come back to them. |
| Judge Spero: | If there's data, you have to produce data. If there's paper you have to produce paper. If there's both, you have to produce both. |
| Trace Schmeltz: | Right. |
| Judge Spero: | You know. I mean, its, as I recall, what the plaintiffs wanted in this case was much broader than the scope of discovery they ended up. So you've already carved out 90% of the burden that you would have had in this case. So I want you all to compromise, I want you all to reach agreements, I won't tell you what I would have done otherwise, but don't, nobody should be overreaching in this. And, you know, it's a big case, burdens are important, and that's why I narrowed the scope of |

|  | discovery, but don't, don't overplay your hand either. What about the issue with the accountants? |
|---|---|
| Mark Solomon: | Well, Your Honor, um, we're willing, well we do, I think, want to make a motion or we're going to be asking for permission to make a motion, but actually we don't yet have the Special Litigation Committee report, which I know you want to be produced, I'm sure that's going to be coming very soon . . . |
| Judge Spero: | Right . . . |
| Mark Solomon: | I think we need to digest that. And also it would be perhaps helpful to see if we can resolve this current dispute and then get back to you on this issue. |
| Judge Spero: | All right. Let me just give you some unsolicited advice on the accountants. It does appear that the issue is not the scope of the discovery order on that one to me, that it is whether or not they're doing what the discovery order requires. And, you know, if, I don't, it seems, I don't think I will get too far into whether the discovery order needs to be modified because it seems premature. The question is whether or not they produced the documents that are called for by the scope of the discovery order. And I think that that you all should just work that out. I don't, the, it is, it baffles me that there is a fight about this, actually, because it's going to be eight pieces of paper by then, or ten. It's not a burden question. And it's not a privacy question. It is "we don't want to get you further into our workpapers than we want because we don't want you trying to add issues into the case." Okay, I understand that. That's a perfectly legitimate thing. But we've got a good scope of discovery and you're going to get things within the scope of discovery, so I don't think the auditors are in a position to take a very hard stand and I think you ought to encourage these people to avoid a motion to compel. |
| Trace Schmeltz: | I completely understand your point, Your Honor. I would note that a lot of the areas where the plaintiffs have suggested the audit workpapers reference other things that aren't there, the workpapers are in many ways self contained and I think . . . |
| Judge Spero: | If there is a misunderstanding, that's one thing. |
| Trace Schmeltz: | [Inaudible] the deposition or further learning can, can accomplish that, okay . . . |

**Judge Spero:**    If there's a misunderstanding that's fine.  And maybe it does take a short document deposition to figure out what's there and that's a perfectly legitimate way of doing it, and then at least you'll know what you're dealing with, but on the other hand [inaudible].  Allright.  So I'm not going to do anything until I hear from you all.  If you want to tee up the issue about the company's production on, of documents that underlie the debit memos, you can do that by letter?

**Trace Schmeltz:**    Okay.

**Judge Spero:**    Do it – let's have a joint letter setting forth positions, and then we'll have a brief telephonic hearing on it.  I recommend against having such a hearing, but –

**Trace Schmeltz:**    Do you have a length preference on that joint letter?

**Judge Spero:**    Yeah, two pages.

**Trace Schmeltz:**    Thank you.

**Mark Solomon:**    One page each?

**Judge Spero:**    Yeah, well . . .

**Trace Schemltz:**    I think we get a page and a quarter . . .

**Judge Spero:**    Two pages is probably a page and a half, so it's, or a page and a quarter, so you're going to each get, you know, I'm sure you'll divide it by number of characters or something like that.

**Mark Solomon:**    [Laughs]

**Trace Schmeltz:**    We'll do our best.  Thank you, Your Honor.

**Judge Spero:**    I know you will.  Thanks.  Okay.

**Mark Solomon:**    Thank you, Your Honor.

**Shawn Williams:**    Thank you, Your Honor.

# Exhibit 13



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Monique C. Winkler
MoniqueW@Lerachlaw.com

September 7, 2005

**VIA FACSIMILE AND U.S. MAIL**

Melissa S. Widen
Arthur Andersen LLP
18th Floor
33 W. Monroe Street
Chicago, IL 60603

Re:    *In re Oracle Corp. Sec. Litig.*
       Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Melissa:

I am writing to confirm our September 6, 2005 telephone conversation regarding Arthur Andersen LLP's ("Andersen") production of documents in response to the subpoena served by plaintiffs in December 2004. Plaintiffs requested that Andersen further meet and confer based upon Magistrate Judge Spero's suggestion at the August 12, 2005 hearing that plaintiffs and Andersen again discuss Andersen's production of documents.

Although plaintiffs offered to provide you with additional details regarding the deficiencies plaintiffs believe exist in Andersen's production, you acknowledged that plaintiffs had already identified those areas in a letter and you refused to spend any time discussing the issue further. Instead, you stated that Andersen's position remains unchanged: Andersen has fully complied with plaintiffs' subpoena and the Court's March 10, 2005 Amended Order Setting a Discovery Plan. Unless the Court issues a modification or Oracle gives you permission to produce additional documents, Andersen will not produce any additional documents. You also indicated that you had discussed the August 12, 2005 hearing with Oracle's counsel, and that Oracle's counsel did not encourage Andersen to produce additional documents.



**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**

Melissa S. Widen
September 7, 2005
Page 2

I enclose for your review, a copy of the transcription of the August 12, 2005 proceedings before Magistrate Judge Spero recorded after plaintiffs and defendants met and conferred as ordered by Magistrate Judge Spero.

Very truly yours,

Monique C. Winkler

MCW:mm
Enclosure
T:\CasesSF\Oracle3\Corres\Widen 090705 (MCW).doc

### C01-0988MJJ

*In re: Oracle Securities Litigation*

**Hearing Date: 8/12/05**

**Judge Spero**

| | |
|---|---|
| Courtroom Clerk: | [Inaudible]<br>Master File No. C-01-0988-MJJ, *In re Oracle Securities Litigation*<br>Counsel? |
| Mark Solomon: | Thank you your honor. |
| Judge Spero: | All right.  What's up? |
| Mark Solomon: | I apologize for having to get you back out. |
| Judge Spero: | Oh no, no. |
| Mark Solomon: | Here's where we're at.  We have arrived here today apparently with a fundamental dispute on to what the scope was of your order concerning the 46,000 debit memo transactions. |
| Judge Spero: | I could tell that. |
| Mark Solomon: | And the defendants have now told us that they are willing to go back to their client and to investigate what the burden would be of seeking documents that relate to those transactions prior to November 17, 2000. But they can't tell us what the burden is right now because they haven't looked into that issue before because they have preferred to adopt a narrow view of the scope that we agree with.  We've been using your language, your honor, from your, from the transcripts. I know that you used the language "every scrap of paper," I want to assure you that we're not after every single scrap of paper . . . |
| Judge Spero: | I didn't think you were. |
| Mark Solomon: | We are willing to compromise when we can do so on an informed basis, but we cannot because we don't have any information on the burden argument that's now being raised. |
| Judge Spero: | And this is, this is the dispute as to whether the documents from the original transactions with the particular customers would be [produced] . . . |

| | |
|---|---|
| Trace Schmeltz: | Right, and Your Honor, we're willing, literally in the next week, to go back and look at what that would take. We believe we have complied with the order and, and if there's a world where we haven't complied, or where we justified breaching a compromise can obviate this dispute, we're willing to go investigate, come back, and in good faith say here's what it would take to put that information together and give it to you, and here's the form we could do that. We're willing to do that over the next week, come back to the plaintiffs in one week, and then have any further conversation.   Certainly, everyone has the right to seek protective order or motion to compel, or whatever, but we think we could come up with a compromise solution in that regard. |
| Judge Spero: | Okay. |
| Mark Solomon: | And, we're happy to do that, Your Honor. I want to just, just for the information for the Court, that there's an issue that is percolating that is we've been hearing a lot that Oracle doesn't have physical documents, doesn't have source documents, it's all on the databases. But it's not all, because there are some – I just don't know what the burden is. I'm afraid that that's an issue that is going to have to be flushed out down the road, but this is the first step. |
| Trace Schmeltz: | We can certainly address that. Certainly Oracle, no great surprise, the primary place they store data is on the database. I know that for sure. |
| Judge Spero: | I'm sure they do both things. |
| Mark Solomon: | Until they comply with the order . . . |
| Trace Schmeltz: | But to the extent there's paper I want to go find that out. It will take a week and we can come back to them. |
| Judge Spero: | If there's data, you have to produce data. If there's paper you have to produce paper. If there's both, you have to produce both. |
| Trace Schmeltz: | Right. |
| Judge Spero: | You know. I mean, its, as I recall, what the plaintiffs wanted in this case was much broader than the scope of discovery they ended up. So you've already carved out 90% of the burden that you would have had in this case. So I want you all to compromise, I want you all to reach agreements, I won't tell you what I would have done otherwise, but don't, nobody should be overreaching in this. And, you know, it's a big case, burdens are important, and that's why I narrowed the scope of |

discovery, but don't, don't overplay your hand either. What about the issue with the accountants?

Mark Solomon:     Well, Your Honor, um, we're willing, well we do, I think, want to make a motion or we're going to be asking for permission to make a motion, but actually we don't yet have the Special Litigation Committee report, which I know you want to be produced, I'm sure that's going to be coming very soon . . .

Judge Spero:     Right . . .

Mark Solomon:     I think we need to digest that. And also it would be perhaps helpful to see if we can resolve this current dispute and then get back to you on this issue.

Judge Spero:     All right. Let me just give you some unsolicited advice on the accountants. It does appear that the issue is not the scope of the discovery order on that one to me, that it is whether or not they're doing what the discovery order requires. And, you know, if, I don't, it seems, I don't think I will get too far into whether the discovery order needs to be modified because it seems premature. The question is whether or not they produced the documents that are called for by the scope of the discovery order. And I think that that you all should just work that out. I don't, the, it is, it baffles me that there is a fight about this, actually, because it's going to be eight pieces of paper by then, or ten. It's not a burden question. And it's not a privacy question. It is "we don't want to get you further into our workpapers than we want because we don't want you trying to add issues into the case." Okay, I understand that. That's a perfectly legitimate thing. But we've got a good scope of discovery and you're going to get things within the scope of discovery, so I don't think the auditors are in a position to take a very hard stand and I think you ought to encourage these people to avoid a motion to compel.

Trace Schmeltz:     I completely understand your point, Your Honor. I would note that a lot of the areas where the plaintiffs have suggested the audit workpapers reference other things that aren't there, the workpapers are in many ways self contained and I think . . .

Judge Spero:     If there is a misunderstanding, that's one thing.

Trace Schmeltz:     [Inaudible] the deposition or further learning can, can accomplish that, okay . . .

| | |
|---|---|
| Judge Spero: | If there's a misunderstanding that's fine.  And maybe it does take a short document deposition to figure out what's there and that's a perfectly legitimate way of doing it, and then at least you'll know what you're dealing with, but on the other hand [inaudible].  Allright.  So I'm not going to do anything until I hear from you all.  If you want to tee up the issue about the company's production on, of documents that underlie the debit memos, you can do that by letter? |
| Trace Schmeltz: | Okay. |
| Judge Spero: | Do it – let's have a joint letter setting forth positions, and then we'll have a brief telephonic hearing on it.  I recommend against having such a hearing, but – |
| Trace Schmeltz: | Do you have a length preference on that joint letter? |
| Judge Spero: | Yeah, two pages. |
| Trace Schmeltz: | Thank you. |
| Mark Solomon: | One page each? |
| Judge Spero: | Yeah, well . . . |
| Trace Schemltz: | I think we get a page and a quarter . . . |
| Judge Spero: | Two pages is probably a page and a half, so it's, or a page and a quarter, so you're going to each get, you know, I'm sure you'll divide it by number of characters or something like that. |
| Mark Solomon: | [Laughs] |
| Trace Schmeltz: | We'll do our best.  Thank you, Your Honor. |
| Judge Spero: | I know you will.  Thanks.  Okay. |
| Mark Solomon: | Thank you, Your Honor. |
| Shawn Williams: | Thank you, Your Honor. |

## DECLARATION OF TRANSCRIPTION

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and resident of the County of Alameda, over the age of 18 years, and not a party to or interested in any action relating to subject matter of this declaration; and that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.     That on September 7, 2005, declarant listened to the electronic recording labeled C01-0988MJJ, In re: Oracle Securities Litigation, Hearing Date: 8/12/05, Judge Spero, and that I transcribed the hearing to the best of my abilities, and that this transcription is attached to this declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 7th day of September, 2005, at San Francisco, California.

RUTH A. CAMERON

# Exhibit 14



**LERACH
COUGHLIN
STOIA
GELLER
RUDMAN** LLP
**& ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Willow E. Radcliffe

November 7, 2005

<u>VIA FACSIMILE</u>

Melissa S. Widen
Arthur Andersen LLP
33 W. Monroe Street, 18th Floor
Chicago, IL 60603

    Re:   *In re Oracle Corporation Sec. Litig.*
          Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Ms. Widen:

    I have left several messages for you regarding the subpoena issued to Arthur Andersen LLP in the above-referenced case. Please call me as soon as possible. Among other issues, we need to discuss whether Arthur Andersen LLP will consent to the jurisdiction of the United States District Court for the Northern District of California for enforcement of the subpoena. Thank you.

                Very truly yours,

                Willow E. Radcliffe

WER:cs

cc:   Mark Solomon
      Shawn Williams



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

Melissa S. Widen
September 7, 2005
Page 2

I enclose for your review, a copy of the transcription of the August 12, 2005 proceedings before Magistrate Judge Spero recorded after plaintiffs and defendants met and conferred as ordered by Magistrate Judge Spero.

Very truly yours,

Monique C. Winkler

MCW:mm
Enclosure
T:\CasesSF\Oracle3\Corres\Widen 090705 (MCW).doc

# Exhibit 15



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
&ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Willow E. Radcliffe

November 28, 2005

<u>VIA FACSIMILE</u>

Melissa S. Widen
Arthur Andersen LLP
33 West Monroe Street, 18th Floor
Chicago, IL 60603-5385

> Re: *In re Oracle Corporation Sec. Litig.*
> Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Ms. Widen:

As I indicated to you in early November, plaintiffs intend to file a motion to compel Arthur Andersen LLP ("Andersen") to produce documents that Andersen previously agreed to produce, as well as additional documents that are both relevant and necessary to the above-referenced litigation. Since that time, I have left you several messages regarding this matter but have been unable to reach you.

It is plaintiffs' understanding that Andersen will not produce any further documents responsive to plaintiffs' subpoena without a Court Order. In an effort to obviate the need for Court intervention, we are prepared to meet and confer in person regarding this matter if Andersen believes that such a meeting would be productive. Please call me to discuss. Thank you.

Very truly yours,

Willow E. Radcliffe

WER:cs

cc:   Mark Solomon
      Shawn Williams

Exhibit 16

# FILED UNDER SEAL

Exhibit 17

SCHEDULE 14A INFORMATION

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934

Filed by the Registrant {X}

Filed by a Party other than the Registrant {_}

Check the appropriate box:

{_} Preliminary Proxy Statement          {_} Confidential, for Use of the
                                             Commission Only (as permitted by
                                             Rule 14a-6(e)(2))

{X} Definitive Proxy Statement

{_} Definitive Additional Materials

{_} Soliciting Material Pursuant to Section 240.14a-12

ORACLE CORPORATION

----------------

(Name of Registrant as Specified In Its Charter)

----------------

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

{X} No fee required.

{_} Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

  (1) Title of each class of securities to which transaction applies:

  (2) Aggregate number of securities to which transaction applies:

  (3) Per unit price or other underlying value of transaction computed
      pursuant to Exchange Act Rule 0-11 (set forth the amount on which the
      filing fee is calculated and state how it was determined):

  (4) Proposed maximum aggregate value of transaction:

  (5) Total fee paid:

{_} Fee paid previously with preliminary materials.

{_} Check box if any part of the fee is offset as provided by Exchange Act Rule
    0-11(a)(2) and identify the filing for which the offsetting fee was paid
    previously. Identify the previous filing by registration statement number,
    or the Form or Schedule and the date of its filing.

  (1) Amount Previously Paid:

  (2) Form, Schedule or Registration Statement No.:

  (3) Filing Party:

  (4) Date Filed:

{ORACLE LOGO APPEARS HERE}

500 Oracle Parkway
Redwood City, California 94065

September 5, 2001
To our Stockholders:

   You are cordially invited to attend the Annual Meeting of Stockholders of
Oracle Corporation (the "Company"). The Annual Meeting will be held on Monday,
October 15, 2001, at 10:00 a.m., in the Oracle Corporation Conference Center,
located at 350 Oracle Parkway, Redwood City, California.

   The actions expected to be taken at the Annual Meeting are described in
detail in the attached Proxy Statement and Notice of Annual Meeting of
Stockholders.

   Included with the Proxy Statement is a copy of the Company's Annual Report
on Form 10-K for fiscal year 2001. We encourage you to read the Form 10-K. It
includes information on the Company's operations, markets, products and
services, as well as the Company's audited financial statements.

   Please use this opportunity to take part in the affairs of the Company by
voting on the business to come before this meeting. Whether or not you plan to
attend the meeting, please complete, sign, date and return the accompanying
proxy in the enclosed postage-paid envelope or vote electronically via the
Internet or telephone. See "Voting Via the Internet or By Telephone" in the
Proxy Statement for more details. Returning the proxy or voting electronically
does NOT deprive you of your right to attend the meeting and to vote your
shares in person for the matters acted upon at the meeting.

   We look forward to seeing you at the Annual Meeting.

                              Sincerely,

                              /s/ Lawrence J. Ellison

                              Lawrence J. Ellison
                              Chairman of the Board and Chief
                               Executive Officer

*ORACLE CORP DE*                                                   *Filing Date: 10/15/01*

{ORACLE LOGO APPEARS HERE}

500 Oracle Parkway
Redwood City, California 94065

----------------

NOTICE OF ANNUAL MEETING OF STOCKHOLDERS

----------------

To our Stockholders:

The Annual Meeting of Stockholders of the Company will be held on Monday, October 15, 2001, at 10:00 a.m., in the Oracle Corporation Conference Center, located at 350 Oracle Parkway, Redwood City, California, for the following purposes:

1. To elect a Board of Directors to serve for the ensuing year.

2. To adopt the Fiscal Year 2002 Executive Bonus Plan.

3. To ratify the appointment of Arthur Andersen LLP as independent public accountants for the Company for the current fiscal year.

4. To transact any other business that may properly come before the meeting.

Stockholders of record at the close of business on August 20, 2001 will be entitled to receive notice of and to vote at the Annual Meeting and at any continuation or adjournment thereof.

By Order of the Board of Directors,

/s/ Daniel Cooperman

DANIEL COOPERMAN
Senior Vice President, General
 Counsel and Secretary

Redwood City, California
September 5, 2001

Whether or not you plan to attend the meeting, please complete, sign, date and return the accompanying proxy in the enclosed postage-paid envelope or vote electronically via the Internet or telephone.

PROXY STATEMENT

September 5, 2001

The accompanying proxy is solicited on behalf of the Board of Directors (the "Board") of Oracle Corporation, a Delaware corporation (the "Company"), for use at the Annual Meeting of Stockholders of the Company (the "Annual Meeting"). The Annual Meeting will be held on Monday, October 15, 2001, at 10:00 a.m., in the Oracle Corporation Conference Center, located at 350 Oracle Parkway, Redwood City, California. All holders of record of Common Stock, par value $0.01 per share (the "Common Stock"), at the close of business on August 20, 2001, the record date, will be entitled to vote at the Annual Meeting. At the close of business on the record date, the Company had 5,577,428,054 shares of Common Stock outstanding and entitled to vote. A majority, 2,788,714,028, of these shares of Common Stock will constitute a quorum for the transaction of business at the Annual Meeting. This Proxy Statement, the accompanying proxy, and the Company's Annual Report on Form 10-K were first mailed to stockholders on or about September 5, 2001. The Company's Annual Report on Form 10-K contains the information required by Rule 14a-3 of the Rules of the Securities and Exchange Commission (the "SEC").

### VOTING RIGHTS AND SOLICITATION OF PROXIES

Stockholders are entitled to one vote for each share of Common Stock held. Shares of Common Stock may not be voted cumulatively.

Any person signing a proxy in the form accompanying this Proxy Statement, voting by telephone or voting on the Internet has the power to revoke it either before the meeting at which the matter voted by proxy is acted upon or at the meeting before the vote on the matter. A proxy may be revoked by a later proxy that is signed by the person who signed the earlier proxy and presented at the meeting or by attendance at the meeting and voting in person.

The expense of printing and mailing proxy material will be borne by the Company. In addition to the solicitation of proxies by mail, solicitation may be made by directors, officers, and other employees of the Company by personal interview, telephone, or facsimile. No additional compensation will be paid for such solicitation. The Company will request brokers and nominees who hold shares of Common Stock in their names to furnish proxy material to beneficial owners of the shares and will reimburse such brokers and nominees for their reasonable expenses incurred in forwarding solicitation materials to such beneficial owners.

### PROPOSAL NO. 1

### ELECTION OF DIRECTORS

At the Annual Meeting, the stockholders will elect directors to hold office until the next annual meeting of stockholders and until successors have been duly elected and qualified or until any such director's earlier resignation or removal. The Board of Directors has approved an increase in the number of directors to nine and has nominated nine individuals. Proxies cannot be voted for a greater number of persons than the number of nominees named. Shares represented by the accompanying proxy will be voted for the election of the nine nominees recommended by the Board of Directors, unless the proxy is marked in such a manner as to withhold authority to vote or as to vote for one or more alternate candidates. If any nominee for any reason is unable to serve or will not serve, the proxies may be voted for such substitute nominee as the proxyholder may determine. The Company is not aware of any nominee who will be unable to or for good cause will not serve as a director.

1

Termination of Employment. Should the participant's employment with the Company terminate for any reason during the plan year, the participant will not be eligible to receive an award under the Bonus Plan.

Federal Income Tax Consequences. Under present federal income tax law, participants will realize ordinary income equal to the amount of the award received in the year of receipt. That income will be subject to applicable income and employment tax withholding by the Company. The Company will receive a deduction for the amount constituting ordinary income to the participant, provided that the Bonus Plan satisfies the requirements of Code Section 162(m), which limits the deductibility of nonperformance-related compensation paid to certain corporate executives (and otherwise satisfies the requirements for deductibility under federal income tax law).

## PROPOSAL NO. 3

### RATIFICATION OF SELECTION OF
### INDEPENDENT PUBLIC ACCOUNTANTS

The Company has engaged Arthur Andersen LLP as its principal independent public accountants to perform the audit of the Company's financial statements for fiscal year 2002. Arthur Andersen LLP has audited the Company's financial statements for its last fourteen fiscal years. The Board of Directors expects that representatives of Arthur Andersen LLP will be present at the Annual Meeting, will be given an opportunity to make a statement at the meeting if they desire to do so and will be available to respond to appropriate questions.

The F&A Committee reviews audit and non-audit services performed by Arthur Andersen LLP as well as the fees charged by Arthur Andersen LLP for such services. In its review of non-audit service fees, the F&A Committee considers, among other things, the possible effect of the performance of such services on the auditor's independence. Additional information concerning the F&A Committee and its activities with Arthur Andersen LLP can be found in the following sections of this proxy statement: "Board Committees and Meetings" and "Report of the Finance & Audit Committee."

Audit Fees

The following table sets forth approximate aggregate fees billed to the Company for fiscal year 2001 by Arthur Andersen LLP:

| | |
|---|---|
| Audit Fees | $ 700,000 |
| Financial Information Systems Design and Implementation Fees | $1,100,000 |
| All Other Fees(1) | $5,300,000 |

--------

(1) Includes fees for various advisory services related principally to tax preparation services, tax consultation services and business consulting services.

Required Vote

The ratification of the selection of Arthur Andersen LLP requires the affirmative vote of the holders of a majority of shares of Common Stock present or represented and entitled to vote at the Annual Meeting. Abstentions and broker non-votes will be counted as present for purposes of determining whether a quorum is present, and broker non-votes will not be treated as entitled to vote on this matter at the Annual Meeting.

The Board of Directors recommends a vote for the
ratification of the selection of Arthur Andersen LLP

## STOCKHOLDER PROPOSALS

From time to time, certain stockholders of the Company submit proposals that they believe should be voted upon by the stockholders. The Commission has adopted regulations that govern the inclusion of such proposals in the Company's annual proxy materials. Stockholder proposals for inclusion in the Company's Proxy Statement and form of proxy relating to the Company's 2002 Annual Meeting of Stockholders must be received by May 8, 2002. If the Company is not notified of a stockholder proposal by July 22, 2001, then the management proxies may have the discretion to vote against such stockholder proposal, even though such proposal is not discussed in the proxy statement. Stockholder proposals should be addressed to Daniel Cooperman, Senior Vice President, General Counsel & Secretary, Oracle Corporation, 500 Oracle Parkway, Mailstop 5op7, Redwood City, California 94065.

## OTHER BUSINESS

The Board of Directors does not presently intend to bring any other business before the meeting, and, so far as is known to the Board of Directors, no matters are to be brought before the meeting except as specified in the Notice of Annual Meeting. As to any business that may properly come before the meeting, however, it is intended that proxies, in the form enclosed, will be voted in respect thereof in accordance with the judgment of the persons voting such proxies.

18

# Exhibit 18

# FILED UNDER SEAL

Exhibit 19

# FILED UNDER SEAL