MAYER, BROWN, ROWE & MAW LLP
Donald M. Falk (SBN 150256)
Lee H. Rubin (SBN 141331)
Shirish Gupta (SBN 205584)
Two Palo Alto Square, Suite 300
Palo Alto, California 94306
Telephone:     (650) 331-2000
Facsimile:     (650) 331-2060
lrubin@mayerbrownrowe.com

MAYER, BROWN, ROWE & MAW LLP
Alan N. Salpeter (admitted *pro hac vice*)
Javier Rubinstein (admitted *pro hac vice*)
Vincent P. Schmeltz III (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, IL  60606-4637
Telephone:     (312) 782-0600
Facsimile:     (312) 701-7711
jrubinstein@mayerbrownrowe.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway, Mailstop 5OP7
Redwood Shores, California 94065
Telephone:    (650) 506-5200
Facsimile:     (650) 506-7114
jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. C-01-0988-MJJ (JCS) (Consolidated)<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE:     January 27, 2006<br>TIME:      1:30 p.m.<br>CTRM:    A, 15TH Floor<br>Magistrate Judge Joseph C. Spero |

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL BACKGROUND ........................................................................................ 2
III. LEGAL ARGUMENT ................................................................................................... 6
    A. Legal Standard ................................................................................................. 6
    B. Plaintiffs' Demands From Andersen Violate the Discovery Plan. ..................... 7
    C. Andersen's Production Is Complete .................................................................. 7
    D. There Is No Need To Amend the Discovery Plan. ............................................ 8
IV. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Brulotte v. Regimba,*
 368 F.2d 1003 (9th Cir. 1966) .......................................................................................... 6

*Dolby Laboratories, Inc. v. Lucent Tech., Inc.*,
 2004 WL 2445232 (N.D. Cal. May 26, 2004) ................................................................ 6

*In re Oracle Corp. Sec. Litig.*,
 242 F. Supp. 2d 671 (N.D. Cal. 2002) ............................................................................. 2

*MacKnight v. Leonard Morse Hosp.*,
 828 F.2d 48, 52 (1st Cir. 1987) ) ...................................................................................... 7

*Micro Motion, Inc. v. Kane Steel Co.*,
 894 F.2d 1318 (Fed. Cir. 1990) ........................................................................................ 7

*Netto v. Amtrak*,
 863 F.2d 1210 (5th Cir. 1989) .......................................................................................... 7

*Reed v. Amax Coal Co.*,
 971 F.2d 1295 (7th Cir. 1992) .......................................................................................... 6

*Rivera v. NIBCO, Inc.*,
 384 F.3d 822 (9th Cir. 2004) ............................................................................................ 6

*Sega Enterprises Ltd. v. Accolade, Inc.*,
 977 F.2d 1510 (9th Cir. 1993) .......................................................................................... 7

*United States v. CBS, Inc.*,
 666 F.2d 364 (9th Cir. 1982) ............................................................................................ 6

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller,
 *Federal Practice and Procedure* § 2036 .......................................................................... 6

**NOTICE AND MOTION**

Please take notice that, on January 27, 2006 at 1:30 p.m. (or as soon as practical prior to that date), before The Honorable Joseph C. Spero, Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley, and Edward J. Sanderson (collectively, "Defendants") will and hereby do move this Court for a protective order pursuant to Federal Rule of Civil Procedure 26(c). This Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, the Declaration of Vincent P. Schmeltz III, and the underlying record in this matter.

Defendants seek a protective order to prevent Plaintiffs from violating the Court's March 10, 2005 Amended Order Setting a Discovery Plan ("Discovery Plan"). Defendants request that this Court issue an Order prohibiting Plaintiffs from seeking or accepting any documents from Arthur Andersen LLP other than those relating to: (1) the debit memo transactions alleged in Plaintiffs' Revised Second Amended Complaint; (2) the accounting treatment of the 46,000 debit memo transactions; and (3) tax advisory services provided to Messrs. Henley and Ellison relating to FY2001. Defendants have attached a Proposed Order memorializing these requests.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In order to obtain discovery denied them by this Court's March 10, 2005 Amended Order Setting a Discovery Plan ("Discovery Plan"), Plaintiffs filed a motion to compel against third party Arthur Andersen LLP, falsely claiming that Andersen has an obligation to produce reams of documents and electronic evidence related to matters wholly outside the scope of the Discovery Plan. Plaintiffs' motion sought to compel production of *all* of Andersen's audit workpapers in both hardcopy and electronic format, Andersen's electronic communications with Oracle, and documents pertaining to Suite 11i and Oracle's economic forecasts. Plaintiffs even demanded that Andersen had some obligation to restore backup tapes and retrieve inaccessible data. This Court already has ruled that Plaintiffs are not entitled to any of this information. Indeed, Plaintiffs previously acknowledged that they cannot obtain such discovery absent modification of the Discovery Plan.

Nonetheless, through their motion, Plaintiffs managed to browbeat Andersen into agreeing

1  to produce all of the workpapers from its FY2001 quarterly reviews and year-end audit of Oracle
2  Corporation.[1]  We understand that Andersen has agreed to make this production—even though it
3  previously had represented that its existing production met the Discovery Plan's requirements—in
4  order to avoid spending any more of its limited resources to fight Plaintiffs' motion.  Andersen
5  has not changed its position that its prior production constituted all of the documents mandated
6  under the Discovery Plan.  Rather, Andersen merely agreed to produce the documents that
7  Plaintiffs are demanding in order to stop spending more of Andersen's limited resources of this
8  matter.  Andersen's anticipated production is plainly outside of the scope of the Discovery Plan
9  and Plaintiffs have violated that Plan by entering into an agreement with Andersen that would
10 afford them access to these documents.

11       As a result, Defendants request that the Court preclude Plaintiffs from obtaining any
12 documents from Andersen except those from the "Relevant Time Period" of June 1, 2000 through
13 June 1, 2001 pertaining specifically to the 46,000 debit memos, the accounting treatment for those
14 debit memos, and any tax advisory services provided to Messrs. Henley and Ellison relating to the
15 Relevant Time Period.  *See* Discovery Plan at 8.

16 **II.   FACTUAL BACKGROUND**

17       Plaintiffs' accounting claims were not part of Plaintiffs' original suit against Oracle; rather
18 they only surfaced in late 2002, after Judge Jenkins had dismissed Plaintiffs' complaint in this
19 matter for the second time.  *See, e.g., In re Oracle Corp. Sec. Litig.*, 242 F. Supp. 2d 671, 674-75
20 (N.D. Cal. 2002).  In doing so, he found that "Plaintiffs [had] not plead anything that would have
21 made it unreasonable for Oracle to expect that the financial success it enjoyed during the two
22 quarters following [Suite 11i's] release would also obtain in 3Q01."  *Id.* at 684.  In response,
23 Plaintiffs alleged, for the first time, that Oracle's financial success during 2Q01 was the product
24 of falsely recognized revenue.  *See, e.g.,* Rev. Sec. Am. Compl. ("RSAC") at ¶8.

25       These new allegations are narrow.  In the RSAC, Plaintiffs asserted—based on alleged

---

[1] Throughout this brief, Defendants will refer to Oracle's 2001 fiscal year as "FY2001" and the relevant quarters within that year as "2Q01" and "3Q01," respectively.

2

1   "testimony" from a confidential witness—that Oracle had created over 46,000 phony sales

2   invoices on November 17, 2000 in order to "improperly recognize revenue from customer credits

3   and overpayments." *Id.*; *see also id.* at ¶¶37 & 38(c).  Through these sham transactions, Oracle

4   allegedly falsely recognized $228,000,000 in revenue during 2Q01.  *Id.* at ¶¶ 39-40 (setting forth

5   testimony of statistical expert who reviewed random sample of debit memos).  Plaintiffs have not

6   alleged that Defendants utilized *any other improper accounting* in furtherance of their

7   "fraudulent scheme." *See, e.g.*, Mar. 1, 2005 Tr. at 42, attached as Exhibit 1 to Decl. of V.

8   Schmeltz in Supp. of Defs.' Mot. for Protective Order (hereinafter "S.D. Ex.___") (conclusion by

9   the Court that Plaintiffs' claims do not involve "broad based revenue recognition problems in a

10  variety of areas").

11         Despite the limited scope of these claims, Plaintiffs have issued two exceptionally broad

12  subpoenas directed at Arthur Andersen LLP and Ernst & Young, Oracle's past and current

13  auditors, respectively.  Through those subpoenas, Plaintiffs sought a host of information,

14  including "***all documents*** . . . relating to . . . audits[,] . . . consulting[,] . . . [or] reviews." *See* S.D.

15  Ex. 2, Notice of Pls.' Subpoenas for Prod. of Docs. to Third Parties (1) Arthur Andersen LLP and

16  (2) Ernst & Young LLP at 7 (emphasis added).  Plaintiffs even sought documents from the

17  auditors that related to Suite 11i and Oracle's forecasting process. *See* S.D. Ex. 1 at 128, 131,

18  136, 140 (discussing Plaintiffs' belief that their request rightly encompassed forecasting and 11i

19  information).

20         On February 4, 2005, the Court stayed enforcement of all of Plaintiffs' third party

21  subpoenas, including the auditor subpoenas.  S.D. Ex. 3, Feb. 4, 2005 Tr. at 29.  In a discovery

22  conference the following month, the Court analyzed both these specific subpoenas as well as the

23  general scope of discovery in the case, and concluded that it did not "understand why [Plaintiffs]

24  need[ed] all of [the] accounting documents" they were seeking. S.D. Ex. 1 at 42.  In fact, the

25  Court specifically stated that:

26  > My concern about the work papers is I don't want it to be a fishing
    > expedition.  I don't want this to be an excuse to look for 75 other
27  > flaws and amend the complaint for 75 other flaws that [Plaintiffs]
    > haven't yet discovered in the financial records in the company.
28

3

> *So I don't want to get into all of the audit. It's not pled and we are not going to get into it.*

S.D. Ex. 1 at 136 (emphasis added). The Court also denied Plaintiffs' pointed requests for forecasting and Suite 11i related documents from the auditors:

> Mr. Solomon: Your Honor, are you saying then with respect to expenses associated with [*sic*] 11i problem, costs associated –
>
> The Court: No, no.
>
> Mr. Solomon: And are you saying with respect to forecasting, that we get nothing from the accountants?
>
> The Court: Right. Yes.

*Id.* at 140.

The Discovery Plan entered shortly after the March hearing included the Court's subject matter limitation and applied a timeframe limitation of June 1, 2000 to June 1, 2001 to discovery from Oracle's auditors. Plan at 7 & 8.

In response to Plaintiffs' requests, as circumscribed by the Discovery Plan, in June 2005, Andersen produced documents from its FY2001 quarterly reviews and year-end audit relating to the Customer Advances and Unearned Revenue account in which the debit memos were alleged to have been raised. *See, e.g.,* S.D. Ex. 5, AA00040; *see also* RSAC ¶41(f). Andersen also produced its quarterly and year-end Variation Analyses of Oracle's Accounts Receivable, which analyze, among other unrelated accounts, the Unapplied Cash referenced in the RSAC. *See, e.g.,* S.D. Ex. 5, AA00004 – 05; *see also* RSAC ¶41(b) (discussing "unapplied cash" account). On July 19, 2005, Andersen verified that its "production of documents [was] complete, and that Andersen ha[d] complied with the Discovery Plan and Order." S.D. Ex. 6, July 19, 2005 M. Widen Ltr. to S. Williams.

On August 5, 2005, after several letters between counsel and an in-person meet-and-confer (S.D. ¶ 15), counsel for Plaintiffs wrote the Court requesting an order modifying the Discovery Plan. S.D. Ex. 7, Aug. 5, 2005 S. Williams Ltr. to The Hon. J. C. Spero. In that letter, counsel explained that the "deficiencies" in Andersen's production were due to the fact that the production did not include all audit work papers and requested that the "Court . . . order . . .

further proceedings regarding modification of the Discovery [Plan] to allow discovery of [the complete set of] work papers." *Id.* at 2. Plaintiffs' letter to the Court followed a theme from an earlier letter between counsel for the parties, in which Plaintiffs admitted that most, if not all, of the documents that they sought—and that they seek now—would be outside of the scope of discovery, insofar as the Discovery Plan did not "incorporate the full set of audit workpapers and quarterly reviews." S.D. Ex. 8, June 24, 2005 S. Williams Ltr. to V. Schmeltz.

At the August 12 hearing on Plaintiffs' request to modify the Discovery Plan, the Court denied Plaintiffs' request. S.D. Ex. 4 at 3. The Court explained that Plaintiffs could request documents "regarding or relating to the 46,000 debit memos" from the auditors (S.D. Ex. 1 at 140) and that production likely would amount to no more than "eight pieces of paper . . . or ten." S.D. Ex. 4, Aug. 12 Tr. at 3. The Court then also reaffirmed Oracle's valid interest in keeping Plaintiffs from rooting around the audit work papers. "It is 'we don't want to get you further into our workpapers than we want because we don't want you trying to add issues into the case.' Okay, I understand that. That's a perfectly legitimate thing." S.D. Ex. 4 at 6.

Now, despite the Court's two prior rulings on this issue, and notwithstanding Plaintiffs' own admission that these documents would be outside of the scope of the Discovery Plan, Plaintiffs' sought to compel Andersen to produce all workpapers. S.D. Ex. 12 at 13-16. Plaintiffs also have insisted that Andersen produce a host of documents beyond those called for in the Discovery Plan, including documents demonstrating "what steps Andersen took with respect to its audits, reviews ***and other engagements concerning Oracle***, and what Oracle's management conveyed to Andersen regarding various aspects of Oracle's financial and business condition." S.D. Ex. 12 at 13 (emphasis added). Plaintiffs also have sought the audit engagement letter, indexes, and legends, as well balance tests and monetary unit sampling for accounts ***that have no bearing on the issues in this case.*** S.D. Ex. 12 at 6.

On December 22, 2005, Defendants learned that Andersen has agreed to produce all workpapers relating to its FY2001 quarterly reviews and year-end audit of Oracle in exchange for Plaintiffs' withdrawal of their motion. S.D. at ¶ 17. Defendants understand that, as a third-party which is effectively out of business, Andersen has conceded solely because it does not have the

5

financial resources to litigate this issue with Plaintiffs. S.D. at ¶ 17. Andersen intends to make its production during the week of January 3, 2006. S.D. at ¶17. This agreement was confirmed by the fact that on December 22, 2005, Plaintiffs withdrew their Motion to Compel. S.D. Ex. 13.

### III.   LEGAL ARGUMENT

Plaintiffs are not entitled to a complete set of Andersen's FY2001 workpapers, nor do they need them. As this Court explicitly has recognized, Plaintiffs have a narrow accounting claim in this case and may gain access only to those particular audit workpapers that bear upon that claim. By attempting to circumvent the Discovery Plan and obtain a full set of workpapers from Andersen, Plaintiffs are doing precisely what the Court prohibited: a full-fledged fishing expedition to discover other accounting issues unrelated to the allegations in the RSAC. Furthermore, Plaintiffs have received more than sufficient discovery to evaluate their accounting claim; they do not need the entire set of workpapers to do so.

#### A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(c), a protective order "should be granted when the moving party establishes 'good cause' for the order and justice requires that a protective order issue 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense….'" *Dolby Laboratories, Inc. v. Lucent Tech., Inc.*, 2004 WL 2445232, at *3 (N.D. Cal. May 26, 2004). This subsection "underscores the extensive control that district courts have over the discovery process." *United States v. CBS, Inc.*, 666 F.2d 364, 369 (9th Cir. 1982). Moreover, because Rule 26(c) "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)," *id.* at 368-69, "a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." *Id.* at 369 (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2036 (citing *Brulotte v. Regimba,* 368 F.2d 1003, 1004 (9th Cir. 1966))).

A movant may establish good cause by demonstrating " a particular and specific need for the protective order." *Dolby Laboratories*, 2004 WL 2445232, at *3. The threat of violation of a discovery plan constitutes "good cause." *See Reed v. Amax Coal Co.*, 971 F.2d 1295, 1301 (7th

1  Cir. 1992) ("A district court acts well within its [Rule 26(c)] authority when it issues a protective

2  order to prevent blatant violations of its earlier directives.")  A movant also may establish good

3  cause by showing that discovery will serve to introduce collateral issues in the litigation, *Rivera v.*

4  *NIBCO, Inc.*, 384 F.3d 822, 824 (9th Cir. 2004), or will afford Plaintiffs an opportunity to "hunt"

5  for another claim rather than help them prove the claim they pleaded.[2]

6  **B.    Plaintiffs' Demands From Andersen Violate the Discovery Plan.**

7  Simply put, we think the Court got this issue right the first three times.  The Court told

8  Plaintiffs that work papers would not be part of this case in March; the Court reiterated that ruling

9  in the Discovery Plan; and the Court again reiterated this ruling at the August hearing.  Despite

10 being thrice told that this discovery is off limits, Plaintiffs have used the threat of litigation to

11 force a company that is now out of business to agree to hand over confidential documents.

12 Plaintiffs have admitted that the Discovery Plan would need to be modified before they could

13 seek such discovery, and they know the plan has not been modified.

14 Plaintiffs' demands that Andersen produce the workpapers constitute a willful violation of

15 this Court's orders.  Defendants should not have to bear the cost of litigating the same issue

16 repeatedly, and this Court should not be asked to rule on the same issue over and over.  The Court

17 should issue a protective order to prevent violation of the Discovery Plan and to continue to

18 preclude Plaintiffs from using discovery to add new issues to this case rather than to refine the

19 claims they pleaded.

20 **C.    Andersen's Production Is Complete.**

21 The workpapers that Andersen has produced are complete and Plaintiffs do not need any

22 other documents to understand them.  The documents describe each account that they reference.

---

[2] As the Court recognized when entering the Discovery Plan (S.D. Ex. 1 at 136), discovery is intended to allow Plaintiffs "to prove a claim [they] reasonably believe[] to be viable *without discovery*, not to find out if [they have] any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (citing *Netto v. Amtrak*, 863 F.2d 1210, 1215 (5th Cir. 1989); *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir. 1987)).  *See also Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir. 1993) (purpose of a protective order "is to prevent harm by limiting disclosure of relevant and necessary information') (citing *Micro Motion*, 894 F.2d at 1325).

7

DEFENDANTS' MOTION FOR A PROTECTIVE ORDER
CASE NO.:  C-01-0988 MJJ (JCS)

1  *See* S.D. Ex. 5, AA000046-50.  Some of the workpapers include tick marks (*see id.* at AA
2  000051)— circled letters explained in the margin of the document; however, the documents do
3  not contain any cross-references to other documents, tests or sampling for either of the two
4  accounts referenced in the RSAC, the Unapplied Cash and Customer Overpayment accounts.[3]
5  *See, e.g., id.* (25005 account has two tick marks, each of which is explained in a margin note, and
6  no cross-references).  Indeed, Andersen has certified that its production is complete and complies
7  with the Discovery Plan, and Plaintiffs have not pointed to anything suggesting otherwise.  As a
8  result, Plaintiffs already have obtained the documents to which they are entitled under the
9  Discovery Plan and have no basis to seek additional documents.

10        **D.**     **There Is No Need To Amend the Discovery Plan.**

11       There is no need for the Court to modify its prior rulings to allow Plaintiffs this discovery.
12  Plaintiffs argue that they need more discovery from Andersen because the discovery allowed by
13  the Discovery Plan has not provided them with documents to "analyze and trace the accounting
14  treatment of the . . . debit memos."  S.D. Ex. 12 at 15.  Plaintiffs are mistaken.  By ***February***
15  ***2005***, Defendants had produced a series of reports that provide sub-ledger detail for the accounts
16  discussed in the RSAC.  From even a handful of these reports, Plaintiffs can trace the audit trail
17  for these debit memos and understand their resulting impact on Oracle's income statement.

18       The documents that Plaintiffs received in February included a Transaction Register for
19  November 17, 2000, an 853 page report providing the customer name, invoice number, and
20  invoice amount for each of the 46,881 debit memos.  (S.D. Ex. 9, NDCA-ORCL 049208 &
21  050060 (first and last pages of report).)  The Transaction Register demonstrates that the so-called
22  "phony invoices" raised on November 17, 2000 each had an "invoice number" bearing a prefix of
23  "550."  It also shows that the November 17 debit memos totaled $692,415,514.97.  (*Id.*)

24       The February 2005 production also included an Account Analysis Report for Account
25  25005, Customer Advances and Unearned Revenue.  (S.D. Ex. 10, NDCA-ORCL 050356 –

---

[3]  Plaintiffs have not, nor can they, demonstrate that any of the cross-references in these documents actually relate to accounts that are germane to this case.

8

1  050360.)  According to this report, which provides sub-ledger detail for the 25005 Account from
2  October through December 2000, Oracle posted both a credit *and* a debit of $692,415,514.97 in
3  November.
4       The February 2005 production also included a Sales Journal by GL Account Report,
5  which details *every single transaction* posted to a revenue account on November 17, 2005.  (S.D.
6  Ex. 11, NDCA-ORCL 004379 & 004597 (excerpting first and last pages of 220 page report).)[4]
7  This report provides the customer name, invoice number, and invoice amount for each
8  transaction.  Furthermore, the Sales Journal by GL Account Report shows the amount of revenue
9  recorded on November 17, 2000.   The February 2005 production also included a November 2000
10 Summary Trial Balance for *every general ledger account*.  (S.D. Ex., 10, NDCA-ORCL 050356
11 – 050360.)
12      Then, in November 2005, before Plaintiffs even filed their motion, Defendants produced a
13 4,500 page spreadsheet that includes *all* of the accounting history for the transactions associated
14 with the 776 specific debit memos and the subsequent accounting treatment for *each* of those
15 debit memos.  S.D. at ¶16.  Defendants also produced 118 boxes of documents, including checks,
16 invoices, purchase orders, correspondence, and contracts, relating to each of the transactions
17 leading up to the 776 debit memos.  *Id.*  This information gives Plaintiffs the complete history of
18 each of the transactions that led to the debit memos and of the debit memos themselves.  *Id.*
19      As shown above, Plaintiffs certainly have more than enough information to follow the
20 "audit trail" of these debit memo.  Apparently, they do not like where the trail leads.  But
21 Plaintiffs' frustration with the evidence is not a reason to modify the Discovery Plan.  Thus, even
22 if the Court is inclined to consider over the question whether the Discovery Plan should be
23 modified (a dispute that is not ripe, as neither party has raised it), there is no justification for
24 doing so.

---

[4] Defendants produced the Sales Journal by GL Account Report with their initial disclosures in January, 2005.

## IV. CONCLUSION

The Court should not countenance Plaintiffs' disregard for the Court's prior orders in this case. The Court previously has ruled—and rightly so—that Plaintiffs are not entitled to a complete set of Andersen's workpapers. Plaintiffs have offered no basis to revisit the Court's earlier rulings, but instead, have attempted an end-around of the Court's orders by impermissibly obtaining material outside the scope of the discovery plan from a third-party. As a result, the Court should enter an order that prevents Plaintiffs from obtaining Andersen's workpapers and that limits them to only those documents in FY2001 that are related either to: (1) the debit memo transactions; (2) the accounting for the debit memo transactions; or (3) tax advice that Andersen provided to either Jeffrey Henley or Lawrence Ellison.

Dated: December 23, 2005

MAYER, BROWN, ROWE & MAW LLP

By: /s/ Vincent P. Schmeltz III
      Vincent P. Schmeltz III

Attorney for Defendants, Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley and Edward Sanderson

| | |
|---|---|
| 1 | MAYER, BROWN, ROWE & MAW LLP |
|   | Donald M. Falk (SBN 150256) |
| 2 | Lee H. Rubin (SBN 141331) |
|   | Shirish Gupta (SBN 205584) |
| 3 | Two Palo Alto Square, Suite 300 |
|   | Palo Alto, California 94306 |
| 4 | Telephone:   (650) 331-2000 |
|   | Facsimile:    (650) 331-2060 |
| 5 | lrubin@mayerbrownrowe.com |

MAYER, BROWN, ROWE & MAW LLP
Alan N. Salpeter (admitted *pro hac vice*)
Javier Rubinstein (admitted *pro hac vice*)
Vincent P. Schmeltz III (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone:   (312) 782-0600
Facsimile:    (312) 701-7711
jrubinstein@mayerbrownrowe.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway, Mailstop 5OP7
Redwood Shores, California 94065
Telephone:   (650) 506-5200
Facsimile:    (650) 506-7114
jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-0988-MJJ (JCS) (Consolidated) |
| | **DISCOVERY MATTER** |
| | **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C)** |
| This Document Relates To: ALL ACTIONS. | DATE:   January 27, 2006<br>TIME:    1:30 p.m.<br>CTRM:   A, 15TH Floor<br>Magistrate Judge Joseph C. Spero |

1  On January 27, 2006, the parties in the above-captioned matter appeared before the Court concerning Defendants' Motion for a Protective Order. The parties were represented by counsel of record. Having considered the parties' submissions and argument, and for good cause showing:

**IT IS HEREBY ORDERED THAT:**

1. Plaintiffs are prohibited from seeking or accepting any documents from Arthur Andersen LLP other than those from the Relevant Time Period of June 1, 2000 through June 1, 2001 relating to: (1) the debit memo transactions alleged in Plaintiffs' Revised Second Amended Complaint; (2) the accounting treatment of the 46,000 debit memo transactions; and (3) tax advisory services provided to Messrs. Henley and Ellison relating to FY2001.

2. Arthur Andersen LLP shall not produce any documents other than those from the Relevant Time Period of June 1, 2000 through June 1, 2001 relating to: (1) the debit memo transactions alleged in Plaintiffs' Revised Second Amended Complaint; (2) the accounting treatment of the 46,000 debit memo transactions; and (3) tax advisory services provided to Messrs. Henley and Ellison relating to FY2001.

Dated: _____, 2006   _____

The Honorable Joseph C. Spero
United States Magistrate Judge

[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR A
PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C)
CASE NO. C-01-0988-MJJ(JCS)