Oracle's "financial statements taken as a whole." *See* Radcliffe Decl., Ex. 24. Likewise, Accounting Standards require review of workpapers as an integrated set, the AICPA Audit and Accounting Manual ("AAM"):

> ***Working papers should be viewed as an integrated presentation of information.*** The auditor should cross-reference working papers to call attention to interaccount relationships and to reference a paper to other working papers summarizing or detailing related information.

AAM §6300.06 (emphasis added).

Because workpapers are both integrated and interdependent, they can only be fully analyzed and understood by accounting experts, plaintiffs' counsel and the trier of fact if they are produced in their entirety. For example Andersen documents Bates numbered AA 000004-06 (Accounts Receivable Variation Analysis as of 5/31/01) make numerous cross references that are missing from Andersen's production including: (1) accounts receivable workpapers B-15, B-30, B-35, B-40, B-45, B-50 and B-60; (2) accounts receivable account 12540-M@DD (which appears to refer to the testing of an account receivable balance in the 25000 series workpapers – customer advances and unearned revenue); (3) detail of cash in transit; and (4) account 25006-DD. *See* Radcliffe Decl, Ex. 4 at AA 000004-6. Without these (and numerous other) missing but responsive documents plaintiffs have no way of determining what Andersen did to assess Oracle's revenue recognition.

Indeed, courts routinely hold that auditors must produce their workpapers in their entirety, as an integrated set. *See Marksman Partners, L.P. v. Chantal Pharm. Corp.*, Master File No. CV-96-0872-WJR (JRx), 1996 U.S. Dist. LEXIS 13870, at *15 (C.D. Cal. Aug. 15, 1996) ("mere partial disclosure of workpapers . . . will prevent a comprehensive understanding of their contents"); *In re Control Data Corp. Sec. Litig.*, No. 3-85-1341, 1987 U.S. Dist. LEXIS 16829, at *11 (D. Minn. Dec. 10, 1987) aff'd, 1988 U.S. Dist. LEXIS 18603 (D. Minn. Feb. 22, 1988) ("[i]t is generally the case that piecemeal or limited disclosure of workpapers fails to satisfy the purpose of examining the integrity or accuracy of the accounting work").[14]

---

[14] *See also Cooperman v. Fairfield Communities, Inc.*, No. LR-C-90-464, 1992 U.S. Dist. LEXIS 22877, at **6-7 (E.D. Ark. May 12, 1992) (compelling non-party auditor to produce full set of workpapers and stating "[non-party auditor's] observations and conclusions are contained in

1    Moreover, even where there are no direct "accounting" allegations, complete auditor workpapers and communications between an auditor and a company have been compelled. In *In re Hi/fn, Inc. Sec Litig.*, the Honorable Susan Illston ordered that the entirety of PricewaterhouseCoopers LLP's ("PwC") workpapers and documents concerning its professional services and documents constituting/concerning communications between Hi/fn and its auditor PwC be produced. *In re Hi/fn, Inc. Sec. Litig.*, No. C 99-4531 SI, slip op. at 7-9 (N.D. Cal. May 25, 2001) (Radcliffe Decl., Ex. 26). That case involved allegations concerning forecasts of Hi/fn's future sales, the development of the market for the company's products and the company's general financial condition. *Id.* Here, plaintiffs not only make similar allegations as those asserted in *Hi/fn*, they also make claims concerning improper revenue recognition. Thus, there is even a greater need for a complete set of Andersen's workpapers and communications here.

Plaintiffs need to examine all of Andersen's work performed in connection with the debit memo transactions. Indeed, defendants' latest refusal to produce documents sufficient to adequately analyze and trace the accounting treatment of the 46,000 debit memos increases the need for these documents. To accomplish this, all of Andersen's workpapers must be produced because these transactions involve all account categories, according to the defendants' own spreadsheet of the debit memo transactions (NDCA-ORCL 396790). *See* Radcliffe Decl., ¶9. According to defendants' spreadsheet as well as Andersen workpapers, the account categories for the debit memo transactions include asset accounts (*e.g.*, cash, accounts receivable,[15] unapplied cash, inter-company receivables, prepaid expenses and goodwill); liability accounts (*e.g.*, unearned revenue, reserve for uncollectible

---

E&Y's integrated set of workpapers, which workpapers, in order for any part of them to be properly understood, must be produced in their entirety"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 1:89-0894X, 1991 U.S. Dist. LEXIS 14486, at **10-11 (N.D. Ohio June 21, 1991) (granting motion to compel complete workpapers from non-party auditor and stating "piecemeal review of certain workpapers would not adequately serve the function of identifying the relevant information for use in the principal litigation").

[15] Indeed, it appears from Andersen's documents that Oracle reclassified amounts between reported "trade receivable" and "customer advances unearned revenue" which resulted in a significant accounts receivable reduction. Thus, Andersen's documents that related to Oracle's accounts receivable are directly relevant to its accounting treatment of the 46,000 debit memos.

NOTICE AND MOTION TO COMPEL ARTHUR ANDERSEN TO COMPLY WITH COURT'S
MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCS - C-01-0988-MJJ JCS    - 15 -

accounts, refunds clearing, accounts payable, accrued liabilities and customer overpayments); equity accounts (*e.g.*, paid-in capital); expense accounts (*e.g.*, bad debt write-off); and revenue accounts (*e.g.*, applications license revenue, non-applications license revenue, applications revenue, CD packs revenue and other revenues). *See* Radcliffe Decl., Ex. 4 at AA 000010-14 and ¶9. In all, defendants' spreadsheet NDCA-ORCL 396790 lists debit memo accounting entries that have affected more than 90 different Oracle accounts. *See* Radcliffe Decl., ¶9.

The nature and extent of accounts involved in the debit memo transactions is such that workpapers cannot be produced in bits and pieces that only show a fragment of the work that Andersen performed. Further, many of the accounts are interrelated and the plaintiffs must be able to trace through all of Andersen's work that touches upon the audit trail of the debit memo transactions, including how the results of Oracle's transactions support each item in the financial statements.

In short, to properly understand, analyze, interpret and fully inquire into Oracle's accounting improprieties, full access to a complete and integrated set of Andersen's workpapers is both necessary and appropriate.[16] *Marksman*, 1996 U.S. Dist. LEXIS 13870, at **11-12; *In re Control Data Corp. Sec Litig.*, Master Dkt. 3-85-1341, 1987 U.S. Dist. LEXIS 16829, at *11 (D. Minn. Dec. 10, 1987); *Cooperman*, 1992 U.S. Dist. LEXIS 22877, at **6-7; *Goodyear Tire*, 1991 U.S. Dist. LEXIS 14486, at **10-11. Indeed, Andersen's workpapers are the best contemporaneous documentary evidence of Oracle's representations regarding the debit memos and how they affect each of the accounts.

E.   **Andersen Must Produce Electronic Documents**

Not only is Andersen required to produce relevant workpapers in their entirety, but it must also produce documents as they were kept in the usual course of business (hard copy and/or electronic format). *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 296-97 (S.D.N.Y.

---

[16]   Recognizing the Court's previous reluctance to order the production of *all* of the workpapers, plaintiffs only seek the workpapers and documents that are relevant to the claims and defenses in this action.

1  2003) (granting motion to compel non-party auditor to produce workpapers in electronic format).
2  Andersen's electronic workpapers/documents are critical evidence which has not been produced.

3  The recent case of *Telxon*, 2004 U.S. Dist. LEXIS 27296, exemplifies the need for electronic
4  documents/workpapers from auditors like Andersen. In *Telxon*, it came to light that PwC's
5  electronic files contained critical information that had not been produced by PwC in its hardcopy
6  production. *See id.* at **44-62 (discussing the various differences between the hardcopy and
7  electronic production, including links to other documents, modification dates, missing audit steps,
8  missing inquiry comments, etc.). The resulting injury to plaintiffs and Telxon was so severe that the
9  court awarded sanctions in the form of default judgment. *Id.* at *121. Plaintiffs in this case will be
10 similarly prejudiced without the production of Andersen's electronic files in their native format.

11 To date, Andersen has not produced any electronic documents, including e-mail. Oracle's
12 production, however, evidences that Oracle personnel communicated with Andersen by e-mail
13 during the Class Period. *See, e.g.,* Radcliffe Decl., Ex. 27. Moreover, many of the documents
14 Andersen has produced appear to be computer generated at some point in time. *See, e.g.,* Radcliffe
15 Decl., Ex. 4 at AA 000004, AA 000007-9, AA 000035-38, AA 000040. The question then remains –
16 where are Andersen's electronic documents?

17 Any unsupported burden of Andersen to produce electronic files is outweighed by plaintiffs'
18 necessity for such documents. *See In re: Honeywell Int'l*, 230 F.R.D. at 296-97 (when paper copies
19 of work papers contained undecipherable hieroglyphics and hieroglyphics became meaningful and
20 references became identifiable only when documents were viewed in electronic form, respondent
21 had to produce documents in original electronic format). Defendants have thus far succeeded in
22 drastically reducing their burden of producing documents in this large and complex case. *See*
23 Radcliffe Decl., Ex. 12. It is well known that defendants in securities cases attempt to hinder
24 plaintiffs' efforts to prove their claims by hampering their discovery efforts. Plaintiffs' hands will be
25 tied if they are also blocked from relevant electronic discovery from Andersen – a key witness to
26 plaintiffs' allegations.

27
28
NOTICE AND MOTION TO COMPEL ARTHUR ANDERSEN TO COMPLY WITH COURT'S
MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCS - C-01-0988-MJJ JCS        - 17 -

### F. Andersen's Other Objections Are Also Unfounded and Meritless

Aside from its relevancy objection, Andersen principally claims that production of defendants' workpapers and other relevant documents sought by the subpoena would be unduly burdensome. *See* Radcliffe Decl., Ex. 8. But the burden is on Andersen to show that "'compliance threatens to unduly disrupt or seriously hinder normal operations'" of its business.[17] Andersen has not (and can not) offer such a showing so as to meet its burden on this point. The workpapers and correspondence by their nature are "specifically defined, readily identifiable and likely to be located in but a few locations."[18] Indeed, Andersen has essentially conceded that its documents are kept in a central location. *See* Radcliffe Decl., Ex. 5. Moreover, Andersen appears to have already allowed defense counsel unfettered access to these documents. *See* Radcliffe Decl., Ex. 4 at AA 000003, 000018, 000025, 000042 (indicating that on May 8, 2005 Vincent Schmeltz of Mayer Brown received Andersen's original documents from Iron Mountain). Defendants will attack plaintiffs' experts at trial by arguing that defense experts have better access to records and key witnesses to perform their analysis and that their auditors were "independent" corroborators of their financial presentations to the market (*i.e.*, unpaid "experts"). Andersen's unsupported undue-burden claim simply cannot rise to the level necessary to justify withholding such important evidence and information from plaintiffs.

Andersen's refusal is also premised on the baseless position that its workpapers constitute proprietary material. *See* Radcliffe Decl., Ex. 8. But, there is a confidentiality order which will protect any such information. Further, any material that Andersen contends is proprietary is now stale, relating to a period over four years ago and concerning an entity which is no longer its client. Indeed, Andersen no longer performs audits of SEC registrants. *See* Radcliffe Decl., Ex. 28. Further, still Andersen's objection is particularly suspect in light of the fact that in other matters,

---

[17] *FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981) (citation omitted).

[18] *Fein*, 92 F.R.D. at 97.

NOTICE AND MOTION TO COMPEL ARTHUR ANDERSEN TO COMPLY WITH COURT'S
MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCS - C-01-0988-MJJ JCS      - 18 -

1  Andersen has given plaintiffs' counsel virtually unfettered access to its files. *See* Radcliffe Decl.,
2  Ex. 29.

3  **IV.   CONCLUSION**

4       Plaintiffs have attempted to resolve the issues surrounding their right to obtain relevant and
5  essential documents from Andersen, but the auditor has chosen to ignore the Court's Discovery
6  Order, the Federal Rules of Civil Procedure and common sense. Consequently, the Court should
7  compel Andersen to produce the entirety of its relevant workpapers as well as
8  communications/documents with the SLC (Request No. 8), E&Y (Requests Nos. 9 and 10), the SEC,
9  AICPA and other governmental, law enforcement or regulatory agencies (Requests Nos. 4 and 5) as
10 well as documents related to document retention and destruction (Requests Nos. 7, 11 and 12).

11 DATED: December 8, 2005            Respectfully submitted,

                                      LERACH COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP
                                      SHAWN A. WILLIAMS
                                      WILLOW E. RADCLIFFE
                                      ELI R. GREENSTEIN
                                      JENNIE LEE ANDERSON
                                      MONIQUE C. WINKLER


                                            /s/ Shawn A. Williams
                                      SHAWN A. WILLIAMS

                                      100 Pine Street, Suite 2600
                                      San Francisco, CA  94111
                                      Telephone: 415/288-4545
                                      415/288-4534 (fax)

                                      LERACH COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP
                                      MARK SOLOMON
                                      DOUGLAS R. BRITTON
                                      VALERIE L. McLAUGHLIN
                                      GAVIN M. BOWIE
                                      655 West Broadway, Suite 1900
                                      San Diego, CA  92101
                                      Telephone: 619/231-1058
                                      619/231-7423 (fax)

                                      Lead Counsel for Plaintiffs

1  I, Willow E. Radcliffe, am the ECF User whose ID and password are being used to file this Notice of Motion and Motion to Compel Arthur Andersen LLP to Comply with the Court's
2  March 10, 2005 Discovery Order and Produce Relevant Documents; and Memorandum of Points and Authorities in Support Thereof. In compliance with General Order 45, X.B., I hereby attest
3  that Shawn A. Williams has concurred in this filing.

4  T:\CasesSF\Oracle3\PDF_rtf\BRF00025415.doc

## DECLARATION OF SERVICE BY MAIL AND FACSIMILE

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2. That on December 8, 2005, declarant served the **NOTICE OF MOTION AND MOTION TO COMPEL ARTHUR ANDERSEN LLP TO COMPLY WITH THE COURT'S MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCUMENTS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** by depositing a true copy thereof in a United States mailbox at San Francisco, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List. Declarant also served the parties by facsimile.

3. That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of December, 2005, at San Francisco, California.

/s/ Cynthia Sheppard
CYNTHIA SHEPPARD

ORACLE III (LEAD)

Service List - 12/7/2005   (201-064-1)

Page 1 of 1

**Counsel For Defendant(s)**

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
  650/331-2000
  650/331-2060(Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606
  312/782-0600
  312/701-7711(Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
  650/506-5200
  650/506-7114(Fax)

**Counsel For Plaintiff(s)**

Mark Solomon
Douglas R. Britton
Valerie L. McLaughlin
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
  619/231-1058
  619/231-7423(Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
  415/288-4545
  415/288-4534(Fax)

Counsel for Arthur Andersen LLP

Melissa S. Widen
Arthur Andersen LLP
33 West Monroe Street, 18th Floor
Chicago, IL 60603-5385
312/580-0033
312/462-8258 (Fax)