Exhibit 7

1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  MARK SOLOMON (151949)
   DOUGLAS R. BRITTON (188769)
3  VALERIE L. McLAUGHLIN (191916)
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   MarkS@lerachlaw.com
6  DougB@lerachlaw.com
   ValerieM@lerachlaw.com
7      – and –
   SHAWN A. WILLIAMS (213113)
8  WILLOW E. RADCLIFFE (200087)
   ELI R. GREENSTEIN (217945)
9  JENNIE LEE ANDERSON (203586)
   MONIQUE C. WINKLER (213031)
10 100 Pine Street, Suite 2600
   San Francisco, CA 94111
11 Telephone: 415/288-4545
   415/288-4534 (fax)
12 ShawnW@lerachlaw.com
   WillowR@lerachlaw.com
13 EliG@lerachlaw.com
   JennieA@lerachlaw.com
14 MoniqueW@lerachlaw.com

15 Lead Counsel for Plaintiffs

16                    UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

| 18  In re ORACLE CORPORATION SECURITIES LITIGATION | ) | Master File No. C-01-0988-MJJ JCS |
|---|---|---|
| 19 | ) | **CLASS ACTION** |
| 20  This Document Relates To: | ) | **DISCOVERY MATTER** |
| 21      ALL ACTIONS. | ) | NOTICE OF MOTION AND MOTION TO COMPEL ARTHUR ANDERSEN LLP TO COMPLY WITH THE COURT'S MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCUMENTS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |

25                              DATE:            January 13, 2006
26                              TIME:            1:30 p.m.
                               COURTROOM:       The Honorable
27                                               Joseph C. Spero

28

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND TO MOTION .............................................................................3

     A.   The Complaint .............................................................................................3

     B.   The Subpoena and Andersen's Response ....................................................4

     C.   The Meet and Confer Process ......................................................................4

III. ARGUMENT ..........................................................................................................7

     A.   Andersen Has Failed to Comply with the Court's Discovery Order ..........7

          1.   Legal Standard .....................................................................................7

          2.   The Court's Discovery Order................................................................7

          3.   Andersen's Insufficient Production .....................................................7

          4.   The Documents Sought Are Necessary and Relevant ..........................8

               a.   Andersen Documents Relating to Plaintiffs' Claims Must
                    Be Produced.................................................................................8

     B.   Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs Are Entitled to
          Discovery Related to the Defenses in this Action ......................................10

     C.   Andersen Is a Unique Source for Critical Documents...............................11

     D.   Andersen's Scarce Production Evidences the Need for Andersen's
          Workpapers be Produced as an Integrated Set...........................................13

     E.   Andersen Must Produce Electronic Documents ........................................16

     F.   Andersen's Other Objections Are Also Unfounded and Meritless...........18

IV.  CONCLUSION.....................................................................................................19

NOTICE AND MOTION TO COMPEL ARTHUR ANDERSEN TO COMPLY WITH COURT'S
MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCS - C-01-0988-MJJ  JCS

- i -

1

## TABLE OF AUTHORITIES

2                                                                          Page

3   **CASES**

4   *Cooperman v. Fairfield Communities, Inc.*,
        No. LR-C-90-464, 1992 U.S. Dist. LEXIS 22877
5       (E.D. Ark. May 12, 1992) ............................................................14, 16

6   *FTC v. Jim Walter Corp.*,
        651 F.2d 251 (5th Cir. 1981) ........................................................18
7
    *Fein v. Numex Corp.*,
8       92 F.R.D. 94 (S.D.N.Y. 1981) ......................................................11, 18

9   *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*,
        211 F.R.D. 658 (D. Kan. 2003) .....................................................7
10
    *In re Control Data Corp. Sec. Litig.*,
11      No. 3-85-1341, 1987 U.S. Dist. LEXIS 16829
        (D. Minn. Dec. 10, 1987) aff'd, 1988 U.S. Dist. LEXIS 18603
12      (D. Minn. Feb. 22, 1988) ..............................................................14

13  *In re Goodyear Tire & Rubber Co. Sec. Litig.*,
        No. 1:89-0894X, 1991 U.S. Dist. LEXIS 14486
14      (N.D. Ohio June 21, 1991)............................................................14, 15, 16

15  *In re Honeywell Int'l, Inc. Sec. Litig.*,
        230 F.R.D. 293 (S.D.N.Y. 2003) ..................................................16, 17
16
    *In re Scholastic Corp. Sec. Litig.*,
17      252 F.3d 63 (2d Cir. 2001)............................................................12

18  *In re Telxon Corp. Sec. Litig.*,
        No. 5:98CV2876, 2004 U.S. Dist. LEXIS 27296
19      (N.D. Ohio, July 16, 2004) ...........................................................8, 17

20  *In re WorldCom, Inc., Sec. Litig.*,
        352 F. Supp. 2d 472 (S.D.N.Y. 2005)...........................................12, 13
21
    *Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
22      Master File No. CV-96-0872-WJR (JRx), 1996 U.S. Dist. LEXIS 13870
        (C.D. Cal. Aug. 15, 1996).............................................................14, 16
23
    *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
24      380 F.3d 1226 (9th Cir. 2004) ......................................................4

25

26  **STATUTES, RULES AND REGULATIONS**

27  15 U.S.C.
        §78j(b).........................................................................................3
        §78t(a) .........................................................................................3
28      §78t-1 ..........................................................................................3

1

2                                                                                          **Page**

3   Federal Rules of Civil Procedure

        26(b)...........................................................................................................................7
4       26(b)(1) ................................................................................................7, 9 10
        37..........................................................................................................................1, 10
5       37-1(a)..................................................................................................................1
        45...............................................................................................................1, 7, 10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that on January 13, 2006, at 1:30 p.m. before the Honorable

3   Joseph C. Spero, plaintiffs will and hereby do move this Court for an order compelling Arthur

4   Andersen LLP ("Andersen") to produce documents relating to allegations in Plaintiffs' Revised

5   Second Amended Complaint for Violations of the Federal Securities Laws ("Complaint") and in

6   compliance with the Honorable Joseph C. Spero's Amended Order Setting a Discovery Plan

7   ("Discovery Order"), entered on March 10, 2005. This motion to compel is brought pursuant to

8   Federal Rule of Civil Procedure 37, 45 and Civil Local Rule 37. The parties have fulfilled their

9   obligation to meet and confer pursuant to Civil Local Rule 37-1(a).[1] This motion is based upon this

10  Notice of Motion, the Memorandum of Points and Authorities herein, the Radcliffe Declaration, the

11  pleadings and other documents contained in the underlying record.

12         By this motion, plaintiffs seek a Court order compelling Andersen to comply with the

13  Court's March 10, 2005 Discovery Order by producing all documents (electronic and/or hard copy)

14  relating to Oracle Corporation's ("Oracle" or the "Company") improper revenue recognition and

15  improper accounting for customer overpayments including, Andersen's workpapers, documents

16  referenced in the workpapers, communications to/from Oracle, engagement letters and planning

17  documents. Additionally, plaintiffs seek those documents Andersen previously agreed to produce

18  (but have not) including: (1) communications between Andersen and (a) Oracle, (b) governmental

19  agencies, (c) regulatory agencies, (d) law enforcement agencies, (e) Ernst & Young LLP ("E&Y")

20  and (f) Oracle's Special Litigation Committee ("SLC") regarding Oracle; and (2) documents related

21  to document retention and destruction.

22  I.      INTRODUCTION

23         On March 10, 2005 the Court issued a Discovery Order, directing Andersen to produce

24  "documents relating to (i) the debit memo transactions; (ii) the accounting treatment of the 46,000

25

26  [1]   *See* the Declaration of Willow E. Radcliffe in Support of Motion to Compel Arthur Andersen
27  LLP to Comply with the Court's March 10, 2005 Discovery Order and Produce Relevant Documents
    ("Radcliffe Declaration" or "Radcliffe Decl."), ¶¶2-7.

28

1   debit memo transactions; and (iii) tax advisory services provided to Henley and Ellison relating to

2   the Relevant Time Period." *See* Radcliffe Decl., Ex. 1. It is incredulous that Andersen, who audited

3   Oracle's financial statements for 15 years and was paid more than $7 million in Oracle's fiscal year

4   2001, believes that its mere 51-page production (with numerous references to documents not

5   produced) constitutes full compliance with the Court's Discovery Order. *See* Radcliffe Decl., Ex. 2.

6   Plaintiffs have explained in detail the deficiencies in Andersen's production, and yet, Andersen still

7   refuses to produce a single additional (and relevant) document without Oracle's permission or a

8   further Court order. Andersen is a central witness to Oracle's accounting practices and business

9   conditions at issue in this case as Oracle's designated outside observer, reviewer, auditor and

10  business consultant. The records Andersen refuses to produce memorialize its audits, reviews and

11  other engagements concerning Oracle's financial statements, and will more clearly reflect Oracle's

12  accounting practices, business conditions and financial performance during the Class Period

13  (December 14, 2000 – March 1, 2001) – all matters at the heart of this case.

14        Notably, Andersen's refusal to comply with the Court's Discovery Order is encouraged by

15  Oracle. *See* Radcliffe Decl., Ex. 3. Not only did Oracle's counsel at Mayer Brown Rowe & Maw

16  LLP ("Mayer Brown") receive/review Andersen documents more than a month before any

17  documents were produced to plaintiffs, absent a Court order, Andersen requires the approval of

18  Oracle before producing additional documents that this Court has already ordered produced. *See*

19  Radcliffe Decl., Exs. 3 and 4 at AA 000003, AA 000018, AA 000025, AA 000042 (indicating that

20  on May 8, 2005 Vincent Schmeltz of Mayer Brown received Andersen's documents from Iron

21  Mountain). The gamesmanship must end.

22        Before Oracle's counsel interjected themselves in Andersen's production, Andersen was

23  considering plaintiffs' proposal to review Andersen's workpapers in their entirety at Andersen's

24  storage facility approximately 30 miles from the courthouse. *See* Radcliffe Decl., Ex. 5. Further,

25  Andersen indicated that it was willing to produce communications it had with defendants located in a

26  central client file (Request Nos. 3 and 6), any communications, documents that it exchanged with the

27  SLC (Request No. 8), E&Y (Requests Nos. 9 and 10), the United States Securities and Exchange

28  Commission ("SEC"), American Institute of Certified Public Accountants ("AICPA") and other

1  governmental, law enforcement or regulatory agencies (Requests Nos. 4 and 5) as well as documents

2  related to document retention and destruction (Requests Nos. 7, 11 and 12). *See* Radcliffe Decl., Ex.

3  5.

4         There is no justifiable reason why Andersen has not complied with the Court's Discovery

5  Order and/or produced those documents it previously agreed to produce. The documents sought by

6  plaintiffs are relevant and necessary to the allegations of defendants' improper revenue recognition

7  through the creation of phony invoices, and the improper satisfaction of such invoices using

8  customer overpayments held in Oracle's "on accounts." *See, e.g.*, ¶¶8, 36, 42.[2] The documents are

9  also relevant to the demand for Oracle's products, the functionality of Oracle's products and

10  Oracle's forecasting practices. *See, e.g.*, ¶¶7, 10-11, 14, 45-47, 50. Accordingly, Andersen should

11  be ordered to produce all documents related to the claims and defenses in this action.

12  **II.     BACKGROUND TO MOTION**

13         **A.     The Complaint**

14         On December 9, 2002, plaintiffs filed the operative Complaint in this action. On September

15  18, 2004, the Ninth Circuit upheld the Complaint, and later remanded the action for future

16  proceedings. The Complaint alleges that during the Class Period, defendants violated §§10(b),

17  20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") by making false and

18  misleading statements about, among other things, Oracle's financial results for the second quarter of

19  fiscal year 2001 ("2Q01"), the effects of the economy on Oracle's business, Oracle's third quarter

20  2001 forecasts, and the functionality of Oracle's 11i Applications Suite, which artificially inflated

21  Oracle's stock price throughout the Class Period. The Complaint specifically alleges that defendants

22  made false and misleading statements regarding Oracle's 2Q01 reported revenues and earnings,

23  which included $228 million of customer overpayments that Oracle improperly converted and

24  recognized as 2Q01 revenue. ¶¶35-44. To facilitate its improper revenue recognition, Oracle

25  maintained a fund of customer overpayments as unapplied cash "ON A" or "On Account" and used

26

27  [2]     All paragraph references ("¶") refer to the Complaint.

28

1 | these overpayments to create more than 46,000 debit memos ultimately recognized as revenue in

2 | violation of Generally Accepted Accounting Principles. ¶¶36, 41.[3] The Complaint also alleges that

3 | defendants made false statements concerning the impact of the slowing economy on Oracle and its

4 | sales pipeline (forecasts) and the functionality of Oracle's products. ¶¶46-48, 50.

5 | **B.     The Subpoena and Andersen's Response**

6 | On December 8, 2004, plaintiffs' issued a subpoena from the Northern District of Illinois[4] to

7 | Andersen requesting the following: (i) documents relating to, and audit documentation/engagement

8 | workpapers concerning, professional services performed by Andersen for the defendants including

9 | audits, consulting, reviews, tax, assurance, accounting, attestation and agreed upon procedures

10 | (Request Nos. 1 and 2); (ii) documents/communications to/from or relating to defendants, including

11 | those kept by Andersen personnel who provided defendants with professional services (Request Nos.

12 | 3 and 6); (iii) documents/communications with regulatory agencies, governmental, judicial or law

13 | enforcement agencies (*e.g.*, the SEC) concerning the defendants (Request Nos. 4 and 5); (iv)

14 | documents/communications concerning document retention/destruction (Request Nos. 7, 11 and 12);

15 | (v) documents/communications with the SLC (Request No. 8); and (vi) documents/communications

16 | with E&Y regarding the defendants (Request Nos. 9 and 10). *See* Radcliffe Decl., Ex. 7 (plaintiffs'

17 | subpoena to Andersen).

18 | Andersen objected to plaintiffs' subpoena on December 21, 2004 asserting, among other

19 | things, that plaintiffs' requests were overbroad, burdensome and sought privileged material. *See*

20 | Radcliffe Decl., Ex. 8 (Andersen's objections to plaintiffs' subpoena).

21 | **C.     The Meet and Confer Process**

22 | Plaintiffs met and conferred with Andersen regarding its December 21, 2004 objections on

23 | January 6, 2005. Plaintiffs and Andersen made substantial progress in reaching an agreement as to

24 |

25 | [3]     The Ninth Circuit recognized the significance of plaintiffs' accounting allegations. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004)

26 | ("Finally, and very importantly, these are the improper revenue accounting records.").

27 | [4]     Andersen has consented to jurisdiction of the enforcement of the subpoena in this Court. *See* Radcliffe Decl., Ex. 6.

28 |

1    the scope of Andersen's production. *See* Radcliffe Decl., Ex. 5.  Andersen agreed to produce many

2    documents, including communications it had with defendants located in a central client file (Request

3    Nos. 3 and 6), any communications that it had with the SLC (Request No. 8), E&Y (Requests Nos. 9

4    and 10), the SEC, AICPA and other governmental, law enforcement or regulatory agencies

5    (Requests Nos. 4 and 5) as well as documents related to document retention and destruction

6    (Requests Nos. 7, 11 and 12). *See* Radcliffe Decl., Ex. 5.  No agreement was reached regarding the

7    scope of discovery with respect to documents/communications relating to Andersen's professional

8    services (Request Nos. 1 and 2) and Andersen's need to review electronic files for responsive

9    documents.[5] *Id.*  On February 5, 2005, the Court temporarily stayed the enforcement of third-party

10   subpoenas until a discovery conference could be held on March 1, 2005, before the Honorable

11   Joseph C. Spero.

12        On March 1, 2005, the parties presented oral argument to the Court concerning the scope of

13   production. Thereafter Magistrate Judge Spero issued his March 10, 2005 Discovery Order directing

14   Oracle's auditors and accountants (*i.e.*, Andersen) to produce "documents relating to (i) debit memo

15   transactions; (ii) the accounting treatment of the 46,000 debit memo transactions and (iii) tax

16   advisory services provided to Henley and Ellison relating to the Relevant Time Period." *See*

17   Radcliffe Decl., Ex. 1.[6]  On March 11, 2005, plaintiffs provided Andersen a copy of the Court's

18   March 10, 2005 Discovery Order. *See* Radcliffe Decl., Ex. 9.  On June 21, 2005, Andersen produced

19   "certain responsive documents" totaling 51 pages. *See* Radcliffe Decl., Ex. 4.  Thereafter, on June

20   27, 2005, plaintiffs advised Andersen of the major deficiencies in its production. *See* Radcliffe

21   Decl., Ex. 10.  Plaintiffs explained, *inter alia*, the following documents must be produced:

22        1.    The engagement letters that describes the scope of work that Arthur Andersen
             was to perform.
23

24   [5]    Pursuant to Civil L.R. 37-2, plaintiffs set forth the reasons why they are entitled to these
25   documents in §III herein.

26   [6]    While the Court found at the March 1, 2005 hearing that defendants should produce certain
     documents related to plaintiffs' claims regarding Oracle's forecasts and its product problems, the
27   Court did not address whether such documents in the auditor's possession, custody or control should
     be produced. As discussed herein, these documents are relevant and discoverable.

28

1        2.    The workpaper's description or index that provides the audit context of the documents provided thus far and identifying other documents relevant to Unapplied Cash accounts #12018, 12570, 25005, customer overpayments, unearned revenue accounts, and earned revenue accounts. All of these relate to the debit memo allegations.

3.    Arthur Andersen's legend to identify all relevant codes and markings on the documents so that they may be appropriately interpreted. For example, the documents provided in AA 000001-000051 are sometimes labeled with a handwritten "B" or "DD" – followed by a number. The pages do not follow a numerical sequence. In order to follow the audit trail, plaintiffs need to obtain all documents within the "B" and "DD" series.

4.    The documents produced refer to tests of balances, including use of monetary unit sampling, but Arthur Andersen has not produced documents supporting the execution of such tests.

5.    The documents produced also contain notes by Arthur Andersen auditors about account descriptions and discussion of variances in Oracle's accounts receivables and unearned revenue accounts, but the sources of this information have not been produced. Thus, the workpapers of interviews with Oracle staff members that was used to reach the conclusions stated must be produced.

6.    Finally, several documents contain circled letters indicating a cross-reference to another item (*e.g.*, AA 000019, 000023, 000035, 000040, 000044, 000045, and 000051). Plaintiffs need the other workpapers corresponding to those cross-references to identify the work performed.

*See* Radcliffe Decl., Ex. 10.[7]

On August 5, 2005, plaintiffs advised the Court of the auditors' failure to comply with its Discovery Order and for the necessity of a complete set of the auditor's workpapers. Thereafter, on August 12, 2005, Magistrate Judge Spero indicated during a discovery hearing that "I don't think the auditors are in a position to take a very hard stand and I think you ought to encourage these people to avoid a motion to compel." *See* Radcliffe Decl., Ex. 12. Consistent with Magistrate Judge Spero's directive, plaintiffs made additional efforts to avoid Court intervention, including providing Andersen with the entirety of the Court's August 12, 2005 transcript. *See* Radcliffe Decl., Ex. 13. Despite plaintiffs' efforts to reach an agreement and the Court's comments regarding discovery, Andersen remains steadfast in its refusal to produce additional documents, forcing plaintiffs to bring the instant motion to compel. *See* Radcliffe Decl., Exs. 2, 3, 9, 14, 15.

---

[7]    By way of letter dated June 30, 2005, plaintiffs explained the same deficiencies to defendants. *See* Radcliffe Decl., Ex. 11.

III.   **ARGUMENT**

    A.   **Andersen Has Failed to Comply with the Court's Discovery Order**

        1.   **Legal Standard**

A party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* The scope of discovery from non-parties pursuant to Fed. R. Civ. P. 45 is substantially the same as the scope of discovery from parties under Fed. R. Civ. P. 26(b) and 34. *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) ("the court must examine whether a request contained in a subpoena is overly broad or seeks irrelevant information under the same standards as set forth in [Fed. R. Civ. P.] 26(b) and as applied to [Fed. R. Civ. P.] 34 requests for production").

        2.   **The Court's Discovery Order**

The Court has already determined that "documents relating to (i) debit memo transactions; (ii) the accounting treatment of the 46,000 debit memo transactions and (iii) tax advisory services provided to Henley and Ellison relating to the Relevant Time Period" are relevant and discoverable from the auditors. *See* Radcliffe Decl., Ex. 1. Magistrate Judge Spero has also cautioned the auditors not to narrowly interpret its Discovery Order, indicating at the August 12, 2005 hearing regarding plaintiffs' request that Andersen produce all responsive documents, that the issue appeared to be the scope of Andersen's production and not the Discovery Order. *See* Radcliffe Decl., Ex. 12. Despite plaintiffs' efforts to explain to Andersen the necessity of the production of additional documents, Andersen continues to refuse to produce additional documents.

        3.   **Andersen's Insufficient Production**

Andersen's production is deficient on many fronts. The few documents Andersen has produced appear to consist of selective portions of Andersen's workpapers as follows:

      AA 000002-14      May 31, 2001 Audit Workpapers

      AA 000015-23      August 31, 2000 Review Workpapers

      AA 000026-40      November 31, 2000 Review Workpapers

1      AA 000041-51      February 28, 2001 Review Workpapers

2 *See* Radcliffe Decl., Ex. 4.[8]

3      A review of Andersen's scarce production heightens plaintiffs' concern that critical

4 documents are being withheld. For example, it appears from the documents produced, that Andersen

5 analyzed Oracle's 25005 account and certain other accounts relating to Oracle's 25005 account and

6 customer overpayments.[9] Handwritten notes on the few documents produced, however, indicate that

7 final versions of documents may be missing from the production. *See, e.g.*, Radcliffe Decl., Ex. 4 at

8 AA 000004, AA 000019, AA 000045. Moreover, memos concerning the accounts receivable testing

9 done by Andersen frequently refer to coded items, which also have not been produced. *See, e.g.*,

10 Radcliffe Decl., Ex. 4 at AA 000004, AA 000019, AA 000035.

11      Without production of the missing workpapers/documentation cross-referenced on the face of

12 the documents, the piecemeal workpapers produced by Andersen are incomprehensible. *See In re*

13 *Telxon Corp. Sec. Litig.*, No. 5:98CV2876, 2004 U.S. Dist. LEXIS 27296 (N.D. Ohio, July 16, 2004)

14 ("'[t]o the extent there are references to work papers, to policies, then indeed

15 [PricewaterhouseCoopers LLP] will produce those manuals'"). *Id.* at *13 (citation omitted), *109,

16 n.56. As discussed, *infra*, workpapers must be produced as an integrated set in order to properly

17 evaluate what work was performed by an auditor.

18          **4.**      **The Documents Sought Are Necessary and Relevant**

19            **a.**      **Andersen Documents Relating to Plaintiffs' Claims**
                      **Must Be Produced**

20

21      The Court has already determined that documents relating to plaintiffs' claims regarding

Oracle's revenue recognition and 46,000 debit memos are discoverable from Andersen. *See*

22

23 Radcliffe Decl., Ex. 1. In addition to plaintiffs' allegations regarding the improper recognition of

24

25 [8]      The absence of documents suggests that Andersen did not provide tax advisory services to Henley and/or Ellison. Plaintiffs request that Andersen, by way of declaration, confirm that it did not provide these professional services.

26

27 [9]      Oracle has represented that the general ledger account that held the "On Account" status was 25005. *See* Radcliffe Decl., Ex. 16 at 60:15-18.

28

1   revenue in 2Q01 *vis-á-vis* the creation of 46,000 debit memos, plaintiffs' claims involve the (i)

2   issuance of false statements concerning the impact of the economy on Oracle; (ii) false forecasts for

3   Q301; and (iii) false statements concerning the functionality of Oracle's products. *See, e.g.*, ¶¶7-11,

4   14, 36, 42, 45-47, 50. Pursuant to Federal Rule of Civil Procedure 26(b)(1), plaintiffs are entitled to

5   discovery relating to these claims.

6          Andersen was paid over $7 million in fiscal year 2001 by Oracle, of which less than 10% is

7   attributed to auditing, the remaining millions were for, *inter alia*, the design/implementation of a

8   financial information system and "business consulting" services for Oracle. *See* Radcliffe Decl., Ex.

9   17. Thus, Andersen is likely to have in its possession, custody or control numerous discoverable

10  documents that relate to plaintiffs' allegations. This includes documents that concern Oracle's

11  forecasting and the impact of the slowdown in the economy on Oracle, such as Andersen documents

12  that relate to Oracle's internal controls, its forecasting methods, its sales pipelines, its customers'

13  product demand, its customers' credit worthiness and/or solvency. Additionally, documents that

14  assess/confirm whether a customer has accepted Oracle's product are also relevant and discoverable

15  as they evidence not only whether revenue recognition was proper but whether a customer expressed

16  concerns regarding the functionality of Oracle's products. Andersen has not only withheld those

17  documents that the Court specifically found relevant and discoverable, it refuses to produce

18  numerous other documents in its possession, custody and control that are relevant and necessary to

19  plaintiffs' claims. These documents cannot be obtained from any other source.

20         Notably, Andersen's documents are crucial proof not only of defendants' conduct during the

21  Class Period but also of defendants' ***state of mind in a case where scienter*** is a required element of

22  plaintiffs' claims. Accordingly, Andersen's documents are essential evidence which will shed light

23  on defendants' awareness of any lack of controls, accounting practices, product problems and the

24  surrounding factual circumstances, all of which bear upon defendants' ***knowledge*** of plaintiffs'

25  alleged claims.

26

27

28

**B.      Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs Are
Entitled to Discovery Related to the Defenses in this Action**

Federal Rule of Civil Procedure 26(b)(1) permits discovery of any matter "that is relevant to

the . . . defense of any party." In response to plaintiffs' allegations, defendants have concocted a

defense – claiming that the debit memo transactions did not hit revenue or any of the Oracle's

financial statements. *See, e.g.*, Radcliffe Decl., Ex. 16 at 144. Oracle asserted this defense to the

SEC – claiming that the overpayments were refunded "long ago" and that none of the overpayments

or duplicate payments ever hit revenue. Radcliffe Decl., Ex. 18. The SLC Report also reflects this

defense. Radcliffe Decl., Ex. 19. Documents and communications that reflect how Oracle

recognized revenue and the audit trail of the debit memos are crucial to countering Oracle's

purported defense. At the Court's March 1, 2005 hearing, the Court recognized the importance of

these documents and ordered Oracle to produce *all* documents related to the 46,000 debit memos.

*See* Radcliffe Decl., Ex. 20 at 45:5-12, 130:21-131:4. Since March 1, 2005, however, defendants

have disavowed the Court's Discovery Order and reneged on their production of these critical

documents on the purported basis of burden. As such, Oracle's production in this regard has been

severely limited.[10] *See* Radcliffe Decl., Ex. 22. Accordingly, plaintiffs have an even greater need to

obtain documents related to the audit trail of Oracle's debit memos from Andersen than they did in

March.

Andersen cannot support a burden argument with respect to these documents. Auditor

documents are a discrete set of documents easily located and produced that could shed light on

---

[10]      Indeed, it already appears from *third-party* production that Oracle's defense is faulty. For
example, Oracle told the SEC that three separate overpayments made to Oracle by Household
International ("Household") in the amounts of $25,000, $45,000, and $76,645.04, which plaintiffs
allege funded November 17, 2000 debit memos, were refunded in 1991 and 1994. Radcliffe Decl.,
Ex. 18 at 13-20. In fact, evidence produced by Household, not defendants, proves that Household
demanded refunds from Oracle and that Oracle refunded these same overpayments in 2002 (after
Oracle's improper revenue recognition in 2001). Radcliffe Decl., Ex. 21. The Court's October 19,
2005 Order limiting Oracle's production of source documents regarding debit memo transactions
would exclude documentation from Oracle concerning these transactions as they are individually
under $100,000. *See* Radcliffe Decl., Ex. 22. Thus, under Federal Rule of Civil Procedure
26(b)(2)(i), discovery from Andersen is critical as plaintiffs have been thus far denied this discovery
from Oracle.

1    Oracle's improper revenue recognition. *Fein v. Numex Corp.*, 92 F.R.D. 94, 97 (S.D.N.Y. 1981)

2    (Andersen workpapers by their nature are "specifically defined, readily identifiable and likely to be

3    located in but a few locations.")

4         Moreover, defendants have already asserted as an affirmative defense its "good faith reliance

5    on the statements and representations of others." *See* Radcliffe Decl., Ex. 23 at 24:22-24. To the

6    extent defendants rely on Andersen's audit or review of Oracle's financial statements as a defense to

7    plaintiffs' claims, Andersen documents will be highly relevant to show the extent of the information

8    Andersen looked at and considered during its audits and reviews, including what contemporaneous

9    representations were made to Andersen and what information may have been withheld by Oracle.

10   This information from Andersen is critical in a case where discovery of Oracle employee files has

11   been severely limited based on Oracle's alleged burden. *See* Radcliffe Decl., Exs. 1 at §I(B) and 20

12   at 14:19-15:13. Andersen's files are centrally kept and involve only specific, known members of an

13   audit team. Thus, the burden on Andersen to produce relevant documents is minimal. Moreover, the

14   prejudice to plaintiffs if this information is withheld is severe. Defendants will undoubtedly rely on

15   Andersen's quarterly reviews and unqualified opinion (clean audit) as purported evidence of their

16   compliance with the securities laws and will also attack plaintiffs' experts for not reviewing all of

17   the procedures/testing employed by Oracle's auditors. Further, because Andersen provided

18   numerous services to Oracle in addition to audits and reviews, Andersen's search for responsive

19   documents must encompass ***all*** services provided.

20       **C.   Andersen Is a Unique Source for Critical Documents**

21        Andersen served as Oracle's auditor for 15 years, certified fiscal Oracle's 2001 financial

22   results, reviewed the Company's quarterly financial results before they were issued to the market and

23   designed/implemented a financial system for Oracle. *See* Radcliffe Decl., Exs. 17, 24 and 25. As

24   such, Andersen has in-depth knowledge concerning Oracle's accounting and financial condition.

25   Indeed, Andersen's report of Independent Public Accountant filed with the SEC by Oracle with its

26   2001 Form 10-K indicates:

27       We conducted our audits in accordance with auditing standards generally accepted in
    the United States. Those standards ***require that we plan and perform the audit to***

28       ***obtain reasonable assurance about whether the financial statements are free of***

1    *material misstatement*. An audit includes examining, on a test basis, *evidence*
     *supporting the amounts* and *disclosures in the financial statements*. An audit also
2    includes assessing the accounting principles used and significant estimates made by
     management, as well as evaluating the *overall financial statement presentation*. We
3    believe that our audits provide a reasonable basis for our opinion.

4        In our opinion, the financial statements referred to above present fairly, in all
     material respects, the financial position of Oracle Corporation and subsidiaries as of
5    May 31, 2001 and 2000, and the results of their operations and their cash flows for
     each of the three years in the period ended May 31, 2001, in conformity with
6    accounting principles generally accepted in the United States.

7        Our audits were made for the purpose of forming an opinion on the basic *financial*
     *statements taken as a whole*.

8
*See* Radcliffe Decl., Ex. 24 (emphasis added).
9
          Andersen's scarce production does not begin to allow plaintiffs to analyze what Andersen's
10
audit and review plans were, what evidence it reviewed to support Oracle's financial results or what
11
steps Andersen undertook to assess the accounting policies, procedures and principles used by
12
Oracle. As an auditor, Andersen must adhere to its engagement plan (not produced) in assessing
13
whether Oracle properly recognized revenue. *See generally, In re WorldCom, Inc., Sec. Litig.*, 352
14
F. Supp. 2d 472, 480-81 (S.D.N.Y. 2005), for a discussion on audit planning and the assessments an
15
auditor should make – *e.g.*, management's state of mind. Andersen must also assess Oracle's
16
internal controls in order to plan its audits and reviews, and determine the nature, timing and extent
17
of tests and procedures to be performed – the documents/communications that cover these matters
18
have not been produced.[11]  Andersen has also not produced the documents that reflect which
19
customers and transactions it reviewed or audited (or the extent of its procedures) in ensuring the
20
accuracy of Oracle's revenue recognition (*e.g.*, the testing it performed, the questions or inquiries
21
that it made of Oracle and/or its customers). Also missing from Andersen's production is its basis
22
for determining whether a transaction materially affected Oracle's financial statements and the
23
customer confirmations obtained by Andersen confirming the validity of the revenue booked by
24
Oracle.
25

26   _____
     [11]    Indeed, proof of recklessness may be established if Oracle took actions contrary to its
27   "expressed policy and prior practice" concerning its accounting. *See In re Scholastic Corp. Sec.*
     *Litig.*, 252 F.3d 63, 77 (2d Cir. 2001).
28

1    The absence of these materials in Andersen's production is highly unusual as the AICPA's

2  Statement on Auditing Standards (SAS) No. 41, Working Papers, provides "working papers

3  ordinarily should include documentation showing (a) the work was adequately planned and

4  supervised; (b) sufficient understanding of the internal control structure was obtained to plan the

5  audit and determine nature, timing and extent of audit tests; and (c) the audit evidence obtained, the

6  auditing procedures applied, and the testing performed have provided sufficient competent evidential

7  matter to afford a reasonable basis for an opinion."[12]

8    In sum, Andersen's documents are a contemporaneous recording of events and circumstances

9  affecting Oracle's business and operating trends during the Class Period unavailable from any other

10 source.[13]  Andersen's documents should show what steps Andersen took with respect to its audits,

11 reviews and other engagements concerning Oracle and what Oracle's management conveyed to

12 Andersen regarding various aspects of Oracle's financial and business condition – critical aspects of

13 plaintiffs' case.

14    **D.    Andersen's Scarce Production Evidences the Need for Andersen's
       Workpapers be Produced as an Integrated Set**

15

16    As discussed, *supra*, the few documents that Andersen has grudgingly produced reference

17 numerous missing documents which plaintiffs require to be able to comprehend the testing and

18 analysis performed by Andersen. Andersen's incomplete production demonstrates why workpapers

19 are kept, reviewed and exist as an integrated set. According to Andersen it reviewed and audited

20

21 [12]    *See In re Worldcom Sec. Litig.*, 352 F. Supp. 2d at 479 (explaining that an auditor must
    follow Generally Accepted Auditing Standards ("GAAS") and must explain any departures from
22 AICPA's auditing standards).

23 [13]    Indeed, the evidentiary value of workpapers is obvious from the definition:

24    Working papers are records kept by the auditor of the procedures applied, the tests
       performed, the information obtained, and the pertinent conclusions reached in the
25    engagement. Examples of working papers are audit programs, analyses, memoranda,
       letters of confirmation and representation, abstracts of company documents, and
26    schedules or commentaries prepared or obtained by the auditor. Working papers also
       may be in the form of data stored on tapes, films, or other media.

27 SAS No. 41.

28

1   Oracle's "financial statements taken as a whole." *See* Radcliffe Decl., Ex. 24.   Likewise,

2   Accounting Standards require review of workpapers as an integrated set, the AICPA Audit and

3   Accounting Manual ("AAM"):

> ***Working papers should be viewed as an integrated presentation of information.***
> The auditor should cross-reference working papers to call attention to interaccount
> relationships and to reference a paper to other working papers summarizing or
> detailing related information.

AAM §6300.06 (emphasis added).

Because workpapers are both integrated and interdependent, they can only be fully analyzed

and understood by accounting experts, plaintiffs' counsel and the trier of fact if they are produced in

their entirety.   For example Andersen documents Bates numbered AA 000004-06 (Accounts

Receivable Variation Analysis as of 5/31/01) make numerous cross references that are missing from

Andersen's production including: (1) accounts receivable workpapers B-15, B-30, B-35, B-40, B-45,

B-50 and B-60; (2) accounts receivable account 12540-M@DD (which appears to refer to the testing

of an account receivable balance in the 25000 series workpapers – customer advances and unearned

revenue); (3) detail of cash in transit; and (4) account 25006-DD. *See* Radcliffe Decl, Ex. 4 at AA

000004-6. Without these (and numerous other) missing but responsive documents plaintiffs have no

way of determining what Andersen did to assess Oracle's revenue recognition.

Indeed, courts routinely hold that auditors must produce their workpapers in their entirety, as

an integrated set. *See Marksman Partners, L.P. v. Chantal Pharm. Corp.*, Master File No. CV-96-

0872-WJR (JRx), 1996 U.S. Dist. LEXIS 13870, at *15 (C.D. Cal. Aug. 15, 1996) ("mere partial

disclosure of workpapers . . . will prevent a comprehensive understanding of their contents"); *In re

Control Data Corp. Sec. Litig.*, No. 3-85-1341, 1987 U.S. Dist. LEXIS 16829, at *11 (D. Minn. Dec.

10, 1987) aff'd, 1988 U.S. Dist. LEXIS 18603 (D. Minn. Feb. 22, 1988) ("[i]t is generally the case

that piecemeal or limited disclosure of workpapers fails to satisfy the purpose of examining the

integrity or accuracy of the accounting work").[14]

---

[14]   *See also Cooperman v. Fairfield Communities, Inc.*, No. LR-C-90-464, 1992 U.S. Dist.
LEXIS 22877, at **6-7 (E.D. Ark. May 12, 1992) (compelling non-party auditor to produce full set
of workpapers and stating "[non-party auditor's] observations and conclusions are contained in

1      Moreover, even where there are no direct "accounting" allegations, complete auditor

2   workpapers and communications between an auditor and a company have been compelled. In *In re*

3   *Hi/fn, Inc. Sec Litig.*, the Honorable Susan Illston ordered that the entirety of

4   PricewaterhouseCoopers LLP's ("PwC") workpapers and documents concerning its professional

5   services and documents constituting/concerning communications between Hi/fn and its auditor PwC

6   be produced. *In re Hi/fn, Inc. Sec. Litig.*, No. C 99-4531 SI, slip op. at 7-9 (N.D. Cal. May 25, 2001)

7   (Radcliffe Decl., Ex. 26). That case involved allegations concerning forecasts of Hi/fn's future sales,

8   the development of the market for the company's products and the company's general financial

9   condition. *Id.* Here, plaintiffs not only make similar allegations as those asserted in *Hi/fn*, they also

10  make claims concerning improper revenue recognition. Thus, there is even a greater need for a

11  complete set of Andersen's workpapers and communications here.

12      Plaintiffs need to examine all of Andersen's work performed in connection with the debit

13  memo transactions. Indeed, defendants' latest refusal to produce documents sufficient to adequately

14  analyze and trace the accounting treatment of the 46,000 debit memos increases the need for these

15  documents. To accomplish this, all of Andersen's workpapers must be produced because these

16  transactions involve all account categories, according to the defendants' own spreadsheet of the debit

17  memo transactions (NDCA-ORCL 396790). *See* Radcliffe Decl., ¶9. According to defendants'

18  spreadsheet as well as Andersen workpapers, the account categories for the debit memo transactions

19  include asset accounts (*e.g.*, cash, accounts receivable,[15] unapplied cash, inter-company receivables,

20  prepaid expenses and goodwill); liability accounts (*e.g.*, unearned revenue, reserve for uncollectible

21

---

22  E&Y's integrated set of workpapers, which workpapers, in order for any part of them to be properly
    understood, must be produced in their entirety"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No.
23  1:89-0894X, 1991 U.S. Dist. LEXIS 14486, at **10-11 (N.D. Ohio June 21, 1991) (granting motion
    to compel complete workpapers from non-party auditor and stating "piecemeal review of certain
24  workpapers would not adequately serve the function of identifying the relevant information for use
    in the principal litigation").
25

26  [15]   Indeed, it appears from Andersen's documents that Oracle reclassified amounts between
    reported "trade receivable" and "customer advances unearned revenue" which resulted in a
27  significant accounts receivable reduction. Thus, Andersen's documents that related to Oracle's
    accounts receivable are directly relevant to its accounting treatment of the 46,000 debit memos.

28

1   accounts, refunds clearing, accounts payable, accrued liabilities and customer overpayments); equity

2   accounts (*e.g.,* paid-in capital); expense accounts (*e.g.,* bad debt write-off); and revenue accounts

3   (*e.g.,* applications license revenue, non-applications license revenue, applications revenue, CD packs

4   revenue and other revenues).  *See Radcliffe Decl.,* Ex. 4 at AA 000010-14 and ¶9.  In all,

5   defendants' spreadsheet NDCA-ORCL 396790 lists debit memo accounting entries that have

6   affected more than 90 different Oracle accounts.  *See Radcliffe Decl.,* ¶9.

7       The nature and extent of accounts involved in the debit memo transactions is such that

8   workpapers cannot be produced in bits and pieces that only show a fragment of the work that

9   Andersen performed.  Further, many of the accounts are interrelated and the plaintiffs must be able

10  to trace through all of Andersen's work that touches upon the audit trail of the debit memo

11  transactions, including how the results of Oracle's transactions support each item in the financial

12  statements.

13      In short, to properly understand, analyze, interpret and fully inquire into Oracle's accounting

14  improprieties, full access to a complete and integrated set of Andersen's workpapers is both

15  necessary and appropriate.[16]  *Marksman,* 1996 U.S. Dist. LEXIS 13870, at **11-12; *In re Control*

16  *Data Corp. Sec Litig.,* Master Dkt. 3-85-1341, 1987 U.S. Dist. LEXIS 16829, at *11 (D. Minn. Dec.

17  10, 1987); *Cooperman,* 1992 U.S. Dist. LEXIS 22877, at **6-7; *Goodyear Tire,* 1991 U.S. Dist.

18  LEXIS 14486, at **10-11.   Indeed, Andersen's workpapers are the best contemporaneous

19  documentary evidence of Oracle's representations regarding the debit memos and how they affect

20  each of the accounts.

21      **E.    Andersen Must Produce Electronic Documents**

22      Not only is Andersen required to produce relevant workpapers in their entirety, but it must

23  also produce documents as they were kept in the usual course of business (hard copy and/or

24  electronic format).  *See In re Honeywell Int'l, Inc. Sec. Litig.,* 230 F.R.D. 293, 296-97 (S.D.N.Y.

25

26  [16]    Recognizing the Court's previous reluctance to order the production of *all* of the workpapers,
27  plaintiffs only seek the workpapers and documents that are relevant to the claims and defenses in this
    action.

28

1   2003) (granting motion to compel non-party auditor to produce workpapers in electronic format).

2   Andersen's electronic workpapers/documents are critical evidence which has not been produced.

3          The recent case of *Telxon*, 2004 U.S. Dist. LEXIS 27296, exemplifies the need for electronic

4   documents/workpapers from auditors like Andersen.  In *Telxon*, it came to light that PwC's

5   electronic files contained critical information that had not been produced by PwC in its hardcopy

6   production.  *See id.* at **44-62 (discussing the various differences between the hardcopy and

7   electronic production, including links to other documents, modification dates, missing audit steps,

8   missing inquiry comments, etc.).  The resulting injury to plaintiffs and Telxon was so severe that the

9   court awarded sanctions in the form of default judgment.  *Id.* at *121.  Plaintiffs in this case will be

10  similarly prejudiced without the production of Andersen's electronic files in their native format.

11         To date, Andersen has not produced any electronic documents, including e-mail.  Oracle's

12  production, however, evidences that Oracle personnel communicated with Andersen by e-mail

13  during the Class Period.  *See, e.g.,* Radcliffe Decl., Ex. 27.  Moreover, many of the documents

14  Andersen has produced appear to be computer generated at some point in time.  *See, e.g.,* Radcliffe

15  Decl., Ex. 4 at AA 000004, AA 000007-9, AA 000035-38, AA 000040.  The question then remains –

16  where are Andersen's electronic documents?

17         Any unsupported burden of Andersen to produce electronic files is outweighed by plaintiffs'

18  necessity for such documents.  *See In re: Honeywell Int'l*, 230 F.R.D. at 296-97 (when paper copies

19  of work papers contained undecipherable hieroglyphics and hieroglyphics became meaningful and

20  references became identifiable only when documents were viewed in electronic form, respondent

21  had to produce documents in original electronic format).  Defendants have thus far succeeded in

22  drastically reducing their burden of producing documents in this large and complex case.  *See*

23  Radcliffe Decl., Ex. 12.  It is well known that defendants in securities cases attempt to hinder

24  plaintiffs' efforts to prove their claims by hampering their discovery efforts.  Plaintiffs' hands will be

25  tied if they are also blocked from relevant electronic discovery from Andersen – a key witness to

26  plaintiffs' allegations.

27

28

NOTICE AND MOTION TO COMPEL ARTHUR ANDERSEN TO COMPLY WITH COURT'S
MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCS - C-01-0988-MJJ  JCS          - 17 -

1        **F.    Andersen's Other Objections Are Also Unfounded and Meritless**

2        Aside from its relevancy objection, Andersen principally claims that production of

3    defendants' workpapers and other relevant documents sought by the subpoena would be unduly

4    burdensome. *See* Radcliffe Decl., Ex. 8. But the burden is on Andersen to show that "'compliance

5    threatens to unduly disrupt or seriously hinder normal operations'" of its business.[17] Andersen has

6    not (and can not) offer such a showing so as to meet its burden on this point. The workpapers and

7    correspondence by their nature are "specifically defined, readily identifiable and likely to be located

8    in but a few locations."[18] Indeed, Andersen has essentially conceded that its documents are kept in a

9    central location. *See* Radcliffe Decl., Ex. 5. Moreover, Andersen appears to have already allowed

10   defense counsel unfettered access to these documents. *See* Radcliffe Decl., Ex. 4 at AA 000003,

11   000018, 000025, 000042 (indicating that on May 8, 2005 Vincent Schmeltz of Mayer Brown

12   received Andersen's original documents from Iron Mountain). Defendants will attack plaintiffs'

13   experts at trial by arguing that defense experts have better access to records and key witnesses to

14   perform their analysis and that their auditors were "independent" corroborators of their financial

15   presentations to the market (*i.e.,* unpaid "experts"). Andersen's unsupported undue-burden claim

16   simply cannot rise to the level necessary to justify withholding such important evidence and

17   information from plaintiffs.

18       Andersen's refusal is also premised on the baseless position that its workpapers constitute

19   proprietary material. *See* Radcliffe Decl., Ex. 8. But, there is a confidentiality order which will

20   protect any such information. Further, any material that Andersen contends is proprietary is now

21   stale, relating to a period over four years ago and concerning an entity which is no longer its client.

22   Indeed, Andersen no longer performs audits of SEC registrants. *See* Radcliffe Decl., Ex. 28.

23   Further, still Andersen's objection is particularly suspect in light of the fact that in other matters,

24

25

26   [17]   *FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981) (citation omitted).

27   [18]   *Fein*, 92 F.R.D. at 97.

28

NOTICE AND MOTION TO COMPEL ARTHUR ANDERSEN TO COMPLY WITH COURT'S
MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCS - C-01-0988-MJJ JCS        - 18 -

1  Andersen has given plaintiffs' counsel virtually unfettered access to its files. *See* Radcliffe Decl.,

2  Ex. 29.

3  **IV.      CONCLUSION**

4          Plaintiffs have attempted to resolve the issues surrounding their right to obtain relevant and

5  essential documents from Andersen, but the auditor has chosen to ignore the Court's Discovery

6  Order, the Federal Rules of Civil Procedure and common sense.  Consequently, the Court should

7  compel  Andersen  to  produce  the  entirety  of  its  relevant  workpapers  as  well  as

8  communications/documents with the SLC (Request No. 8), E&Y (Requests Nos. 9 and 10), the SEC,

9  AICPA and other governmental, law enforcement or regulatory agencies (Requests Nos. 4 and 5) as

10  well as documents related to document retention and destruction (Requests Nos. 7, 11 and 12).

11  DATED:  December 8, 2005                    Respectfully submitted,

12                                             LERACH COUGHLIN STOIA GELLER
                                                   RUDMAN & ROBBINS LLP
13                                             SHAWN A. WILLIAMS
                                               WILLOW E. RADCLIFFE
14                                             ELI R. GREENSTEIN
                                               JENNIE LEE ANDERSON
15                                             MONIQUE C. WINKLER

16

17                                                    /s/  Shawn A. Williams
                                               SHAWN A. WILLIAMS

18
                                               100 Pine Street, Suite 2600
19                                             San Francisco, CA  94111
                                               Telephone:  415/288-4545
20                                             415/288-4534 (fax)

21                                             LERACH COUGHLIN STOIA GELLER
                                                   RUDMAN & ROBBINS LLP
22                                             MARK SOLOMON
                                               DOUGLAS R. BRITTON
23                                             VALERIE L. McLAUGHLIN
                                               GAVIN M. BOWIE
24                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
25                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)

26
                                               Lead Counsel for Plaintiffs
27

28

1    I, Willow E. Radcliffe, am the ECF User whose ID and password are being used to file this
     Notice of Motion and Motion to Compel Arthur Andersen LLP to Comply with the Court's
2    March 10, 2005 Discovery Order and Produce Relevant Documents; and Memorandum of Points
     and Authorities in Support Thereof.  In compliance with General Order 45, X.B., I hereby attest
3    that Shawn A. Williams has concurred in this filing.

4
     T:\CasesSF\Oracle3\PDF_rtf\BRF00025415.doc
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE AND MOTION TO COMPEL ARTHUR ANDERSEN TO COMPLY WITH COURT'S
MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCS - C-01-0988-MJJ  JCS     - 20 -

1    DECLARATION OF SERVICE BY MAIL AND FACSIMILE

2        I, the undersigned, declare:

3        1.    That declarant is and was, at all times herein mentioned, a citizen of the United States

4    and employed in the City and County of San Francisco, over the age of 18 years, and not a party to

5    or interested party in the within action; that declarant's business address is 100 Pine Street,

6    Suite 2600, San Francisco, California 94111.

7        2.    That on December 8, 2005, declarant served the **NOTICE OF MOTION AND**

8    **MOTION TO COMPEL ARTHUR ANDERSEN LLP TO COMPLY WITH THE COURT'S**

9    **MARCH 10, 2005 DISCOVERY ORDER AND PRODUCE RELEVANT DOCUMENTS;**

10   **AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** by

11   depositing a true copy thereof in a United States mailbox at San Francisco, California in a sealed

12   envelope with postage thereon fully prepaid and addressed to the parties listed on the attached

13   Service List.  Declarant also served the parties by facsimile.

14       3.    That there is a regular communication by mail between the place of mailing and the

15   places so addressed.

16       I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8th

17   day of December, 2005, at San Francisco, California.

18

19                                    /s/ Cynthia Sheppard
                                   CYNTHIA SHEPPARD

20

21

22

23

24

25

26

27

28

ORACLE III (LEAD)

Service List – 12/7/2005    (201-064-1)

Page 1 of 1

### Counsel For Defendant(s)

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
650/331-2000
650/331-2060 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606
312/782-0600
312/701-7711 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
650/506-5200
650/506-7114 (Fax)

### Counsel For Plaintiff(s)

Mark Solomon
Douglas R. Britton
Valerie L. McLaughlin
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
619/231-1058
619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
415/288-4545
415/288-4534 (Fax)

Counsel for Arthur Andersen LLP

Melissa S. Widen
Arthur Andersen LLP
33 West Monroe Street, 18th Floor
Chicago, IL 60603-5385
312/580-0033
312/462-8258 (Fax)