# Exhibit 11

Pages 1 - 21

United States District Court

Northern District of California

Before The Honorable Joseph C. Spero, Judge

In re:  Oracle                    )
Securities Litigation,            )
                                  )      COPY
            Plaintiff,            )
                                  )
                                  )      No. C01-0988 JCS
                                  )
_____)

                                         San Francisco, California
                                         Tuesday, October 18, 2005

**Reporter's Transcript Of Proceedings**

**Appearances:**

For Plaintiff:              Lerach Coughlin Stoia
                            Geller Rudman & Robbins
                            655 West Broadway, Suite 1900
                            San Diego, California   92101-3301
                    By:     **Mark Solomon, Esquire**
                            **Jennie Lee Anderson, Esquire**
                            **Monique Winkler, Esquire**

For Defendant:              Mayer, Brown, Rowe & Maw
                            71 South Wacker Drive
                            Chicago, Illinois   60606
                    By:     **Lee Rubin, Esquire**
                            **Vincent P. Schmeltz III, Esquire**
                            **Alan Salpeter, Esquire**

Also Present                James C. Maroulis, Esquire
                            Oracle Corporation

                            James Feldman, CPA, ABV, MBA
                            Forensic Accountant

*Reported By:*              *Sahar McVickar, RPR, CSR No. 12963*
                            *Official Reporter, U.S. District Court*
                            *For the Northern District of California*

               (Computerized Transcription By Eclipse)

**Tuesday, October 18, 2005**                                          **11:00 a.m.**

## P R O C E E D I N G S

1

2

3          **THE CLERK:**  Judge, I have counsel by phone,

4    Mr. Salpeter.

5          **THE COURT:**  I wonder what the best way to do that

6    is, if he's really going to hear.  We'll see how it works.

7          Mr. Salpeter?

8          **MR. SALPETER:**  Yes, good morning.

9          **THE COURT:**  I will ask my deputy to call the case.

10          **THE CLERK:**  Calling case C01-0988, In re:  Oracle

11    Securities Litigation.

12          **MR. SOLOMON:**  Mark Solomon representing plaintiffs.

13          **MS. ANDERSON:**  Jennie Lee Anderson representing

14    plaintiffs.

15          **MS. WINKLER:**  Monique Winkler representing

16    plaintiffs.

17          **MR. FELDMAN:**  James Feldman representing plaintiffs.

18          **MR. RUBIN:**  Lee Rubin representing defendants.

19          **MR. MAROULIS:**  James Maroulis for Oracle

20    Corporation.

21          **MR. SCHMELTZ:**  Vincent Schmeltz, from Mayer Brown,

22    representing defendants.

23          **MR. SALPETER:**  And Alan Salpeter, Your Honor, on the

24    phone.

25          **THE COURT:**  Thank you very much.

1          There are two matters in front of the Court.  The

2    first is the letter requests, or the request for the issuance

3    of letters by the Court to the Ministry of Justice in Denmark.

4    My reaction to that is that the letter is basically okay with

5    the exception of a couple of things.

6          On page 4 of the letter, line 2, I would delete the

7    words "this Court," and on lines 3 and 4, I would delete the

8    last sentence that reads -- of the paragraph that reads,

9    "Further the deposition in evidence sought in the letter

10   request would ultimately be needed for trial," on the basis

11   that that hadn't been shown.

12         On page 4, line -- let me see, where is that, line

13   18, I would replace the words "they will look to her to provide

14   testimony in support of their case with respect to," with the

15   words "Ms. Kammer has knowledge of," okay?  But other than

16   that, I think the letter is fine.

17         Anyone want to make any comments?

18         **MR. SCHMELTZ:**  Absolutely.

19         Vincent Schmeltz on behalf of the defendants.

20         The only thing I would ask, I think that someone,

21   and it may not be the plaintiffs, is going to ask for

22   Ms. Kaymer's testimony.  I mean, she has specific knowledge in

23   the case.  And we have put that in our papers.  I won't state

24   on the record that issue again, since it's in our papers that

25   are filed under seal.  I think someone will ask for the

1   testimony.   It may be the defendants, if the testimony goes the

2   way we hope it will.

3           **THE COURT:**  Okay.

4           **MR. SCHMELTZ:**  So I would ask for that modification.

5           **THE COURT:**  I'm not going to give that modification.

6           **MR. SOLOMON:**  I have nothing.

7           **THE COURT:**  All right.   Then that is the order of

8   the Court.   I'll ask counsel who are requesting the letter to

9   prepare a letter in the form that I've authorized, and I will

10  enter an order authorizing it, and you can prepare a proposed

11  form of order as well, and we'll get that out.   Now, on to the

12  real fight.

13          My concerns here are as follows:   Number one, I'm

14  concerned that during the course of setting up the very

15  detailed discovery plan in this case, the defendants argued and

16  obtain a narrower scope of discovery in exchange for a

17  commitment that all of the documents regarding all of these

18  debit memos, including all the underlying documents would be

19  committed.   And that, to my mind, is clear as day in the

20  transcript that that was the position taken at that time.   And

21  you are changing your position.

22          Now, there may be good reasons to change your

23  position, and maybe I'll buy that, but one of the things that

24  occurs to me is, and it's a somewhat simple-minded reaction,

25  and it's for that reason maybe worth questioning, is why

1  shouldn't I just hold you to your position?  You bought off on

2  this at the earlier stage.  You bought off on it for very good

3  reasons, because we were arguing about a much broader scope of

4  discovery.  And the fact that you find it inconvenient at the

5  moment to live up to it, that's question number one.

6          Question number 2 is for the plaintiffs.  I'm never

7  going to believe that every canceled check, that every canceled

8  check on 10,000 debit memos are relevant to this case.  You are

9  never going to be able to convince me of that.  So doesn't that

10  mean that we need some dramatic compromise?  You both have to

11  answer those questions.

12          My suggestion would be as follows, that in

13  Solomonic -- that's probably too self-aggrandizing, in the way

14  that I tell you that judges can rule on these things, that is,

15  from 30,000 feet because I don't have anywhere near the

16  knowledge, I would propose the following order in the case:

17  That the defendants produce all information stored in

18  electronic form regarding all 45,000 debit memos in all

19  underlying transactions, anything stored in electronic form,

20  and that we set a date for that; that the defendants produce

21  all documents regarding the -- that are not in electronic form

22  regarding the debit memos in the underlying transactions only

23  for debit memos over $1 million, and that we set a date for

24  that; and that lastly, if after reviewing all this evidence the

25  plaintiffs can convince me that there is a good reason why they

```
 1   should get more of the hard documentation regarding --
 2   presumably they are the underlying transactions, well, then,
 3   we'll take that up at the time.  That is my suggestion.
 4             Who wants to go first?  I guess why don't I ask
 5   plaintiffs to speak to this first.
 6             We are done at 11:30 because I'm in the middle of a
 7   criminal matter.
 8             MR. SOLOMON:  First of all, I have to agree that
 9   being Solomonic is the appropriate thing to do.  If I didn't
10   say that, someone would say I should have said it.
11             And secondly, if your suggestion, as I understand
12   it, is without prejudice for us to come back and make that sort
13   of showing, then I think that's something we can live with, and
14   it will move the discovery process.
15             THE COURT:  Yes, it is.  You wouldn't be able to
16   just ask for it, you would have to be able to make sure --
17             MR. SOLOMON:  Absolutely.  I would submit on that
18   basis subject to what they have to say.
19             THE COURT:  Sure.
20             Mr. Rubin?
21             MR. RUBIN:  Yes, thank you, Your Honor.
22             THE COURT:  Yeah.
23             MR. RUBIN:  Just briefly.
24             THE COURT:  Speak into the microphone, it will help
25   Mr. Salpeter.
```

1      **MR. SALPETER:**  Thank you.

2      **MR. RUBIN:**  Okay.

3      Can you hear me, Mr. Salpeter?

4      **MR. SALPETER:**  Yes.

5      **MR. RUBIN:**  Your Honor, let me just very briefly

6  tell you what Oracle has been doing internally to try to get

7  our hands around this electronic production, which I will

8  frankly tell you has been far more difficult than we had

9  anticipated.  And that is not withstanding the fact that there

10  is the idea that we are a database company and, of course, you

11  should be able to do this.

12      The fact is we are doing something artificially

13  here.  This is not something that Oracle would do in the normal

14  course, to look back fifteen years and pull the transactions.

15  I want to assure the Court that from the moment we left the

16  courtroom and my colleagues did on August 12, we have spent

17  lots and lots of hours with our IT people and accounting people

18  to figure out the most practical and efficient way and feasible

19  way that this could be done.

20      I know the Court has read the correspondence and

21  looked at the different proposals that we have offered, and I

22  appreciate the Court's proposal.  One of the things we

23  discovered in the last two weeks is the following:  We

24  essentially created a script, just like we have for the

25  production we already gave.  The production we've already

1    provided was November 17th and forward.  Now we are trying to

2    do the more difficult process of going backwards, that is,

3    looking at the original transactions that are associated with

4    the debit memos, 1991 -- customer payment for an invoice in

5    1991, money comes in $100 more than what was paid, and

6    following all the accounting entries; debit accounts

7    receivable, debit to cash, debit to sales tax, trying to follow

8    it all the way through.

9              So I just wanted to visually show you; (holding up

10   chart) this, for example, is one debit memo.  I think it's --

11   I'm sorry, this is one debit memo.  Page 1 through 18, the

12   original transaction was August 31st, 1995.  And these are all

13   the transactions, all of the accounting entries related to this

14   one debit memo.

15              **THE COURT:**  So that document represents the success

16   of your script.  That is to say, you have now pulled together

17   all of the electronic entries regarding the underlying

18   transactions.

19              **MR. RUBIN:**  Regarding one of the 46,000.

20              **MR. SCHMELTZ:**  Just to be very clear, it also

21   presents one of the problems we have had.  It is a success in

22   that we were able to pull a lot of information.  It presents a

23   problem in that we have to use in some cases a fuzzy matching

24   logic to find -- there's not a key number that ties, so we use

25   a fuzzy logic like an exclamation point in a Westlaw search.

1    And it pulls more data than we need for the transaction.  There

2    is some amount of human intervention --

3         **THE COURT:**  Sure.

4         **MR. SCHMELTZ:**  -- for these.  We need to go back and

5    do the research.  Is it I search for Spero with an exclamation

6    point after the "R"?  Is it this Spero or a different Spero?

7         **MR. RUBIN:**  Right.

8         **MR. SCHMELTZ:**  With that caveat.

9         **MR. RUBIN:**  We had initially thought, when we

10   thought at the time -- when we were here at the time of

11   discovery conference in February, and we thought even as of the

12   time we were here in August, that we would with some work be

13   able to to create a script that essentially programmatically

14   ran the electronic data for these 46,000 debit memos going

15   backwards.

16        At least half of the debit memos in the samples that

17   we have run in this first tranche of approximately 700 that

18   includes the 1 million that you are focusing on, plus

19   additional ones under 100,000 to a million, we found that over

20   half require manual intervention; that is, we are not --

21   because there is no link, as Mr. Schmeltz said, we don't have a

22   customer receipt number that follows through, then we have to

23   basically use, like, Westlaw search methods.  If we were

24   searching for your name, we would say S-p-e, exclamation point,

25   and we get a lot of data coming back.  So then we have to sort

1   out, well, which particular transaction matches this particular

2   debit memo going backwards.

3          All that being said, Your Honor, what we would like

4   to propose today is the following:  There are 780 debit memos

5   of $100,000 or more, and there are 780 of the 46,000.  And --

6          **THE COURT:**  780 debit memos of 1 million --

7          **MR. RUBIN:**  100,000 or more.  There are about 68

8   that are 1,000,000 or more.  And then when you drop down to

9   100,000 --

10         **THE COURT:**  It's 780.

11         **MR. RUBIN:**  It's about 780.

12         This is what we would propose:  That we produce all

13  of the electronic data, and it's going to require some manual

14  intervention, like I said, even as to those, probably at least

15  half, so it's going to take us a little time, but we'll produce

16  all those and then provide those to the plaintiffs as you

17  proposed, have them look at that data, and, again, picking up

18  on your suggestion without prejudice they would then come back.

19         So this would give them, just to give you an idea of

20  the amounts, the amount of all the debit memos taken together

21  is $690 million.  Those 780 debit memos would constitute

22  $520 million, so you -- basically, with those debit memos you

23  would have about 80-something, 85 percent of the total amount.

24         We would then provide that, let them look at that

25  data.  In our meet and confer discussions, it's been quite

1   clear that they have even said there certainly is data that we

2   may not need, we don't have enough visibility.  Let them

3   examine all the electronic data which simply by itself would

4   require a lot of work.  We'll produce that to them as quickly

5   and as soon as we can and then allow them -- if they can -- if

6   they have an indication that they need more, then we can talk

7   about it.

8           But that, we believe, given the difficulties and the

9   complexities that we have faced, we think it's a very sensible

10  and fair place to start.  Once you start getting much beyond

11  that, Your Honor, we are really, and I'm not one for hyperbole,

12  but you really starting to talk about months of work, even as

13  to the electronic data because of the manual intervention that

14  would need to take place in order to match up these

15  transactions.

16          THE COURT:  You have in front of you a debit memo

17  that was done successfully, how much people time did it take to

18  narrow this -- the data?

19          MR. RUBIN:  This particular one I believe was about

20  an hour and a half or two hours.

21          MR. SCHMELTZ:  For that one, like I said, there is

22  still some errors in that one, but for a typical one it can

23  take anywhere from twenty minutes to two hours.

24          THE COURT:  So you think about 50 percent of the

25  debit memos -- well, are the larger ones more difficult?

1      **MR. RUBIN:** Not necessarily. Sometimes --

2      **THE COURT:** Are there more underlying transactions

3 with the larger debit memos so you are going to have more --

4      **MR. RUBIN:** I think it's random.  I think you could

5 find some difficult ones at 150,000 and some easy ones at

6 1 million, and vice-versa.

7      **MR. SCHMELTZ:** You have --

8      **THE COURT:** Let's have one lawyer.

9      **MR. RUBIN:** So there is some randomness.  I think

10 there might be some smaller ones that create the same kinds of

11 difficulties.  Some of the million-dollar ones may be simple,

12 some might be complex.  So I'm clearly speaking on averages.

13 Some may be ten minutes, but like this one, which Mr. Schmeltz

14 said still contains errors, it could well take over two hours

15 to try to find the right link or try to find the common

16 thread --

17      **THE COURT:** Did you talk about -- maybe I missed it,

18 did you talk about the paper documents that I was interested

19 in?

20      **MR. RUBIN:** The paper documents, that's fine, Your

21 Honor.  So the paper documents over a million, we will find all

22 the paper documents related to the 1 million and over debit

23 memos and produce those to them.

24      **THE COURT:** How quickly?

25      **MR. RUBIN:** Let me have the Court's indulgence for a

1  moment, so I don't overstate.

2          We think we can accomplish it 30 days from today.

3          **THE COURT:**  Including the paper document?

4          **MR. RUBIN:**  Yes.

5          **THE COURT:**  Mr. Solomon?

6          **MR. SOLOMON:**  Thank you, Your Honor.

7          The problem we have, Your Honor, is that we do need

8  the audit trail.  What is being suggested does not amount to an

9  audit trail.  It's certainly not something that an auditor can

10  rely on without looking at the source documents.

11          **THE COURT:**  Wait, wait, wait.  Stop.

12          If you get all the electronic documents on all debit

13  memos over $100,000, okay, I don't know whether their format is

14  that or not, frankly, I don't particularly care.  But if you

15  get all the electronic information that they have on the debit

16  memos, $100,000 or more and all of the paper documents on

17  documents over $1 million or more, and you get all that in 30

18  days, how about that?

19          **MR. SOLOMON:**  When we are talking about electronic,

20  I want to include image documents.  That would be important,

21  Your Honor.

22          **THE COURT:**  Okay.

23          **MR. SOLOMON:**  And if we understand that and we get

24  all the paper documents --

25          **THE COURT:**  Well, okay, image documents, yes, of

1    course.   I mean, one way or the other those are going to be
2    included.

3          **MR. SOLOMON:**   We don't want something that they have
4    created with a "trust-me-to-the-source" type explanation.

5          **THE COURT:**   Some of it is going to be.   I mean, it's
6    a database.   And then they'll have to have some explanation for
7    how it was put together so it's a sufficiently reliable
8    indication of what is in the database.   They have to preserve
9    the database so you can test that if it ever needs to be
10   tested.   They have to authenticate it themselves and that, you
11   know, so it is real data.   But some of it is taken based on
12   those sorts of assurances, I suppose.

13         But so that if you have all the electronic
14   information on debit memos of $100,000 or more, including
15   images; second, all paper documents, I mean -- by debit memos,
16   I mean debit memos and the underlying transactions, paper docs
17   on the debit memos and underlying transactions of $1 million or
18   more, and you did that within 30 days, and it's without
19   prejudice to applying for more, how does that work?

20         **MR. SOLOMON:**   It works for me in terms of us getting
21   information that we can work with and move the case forward,
22   your Honor, and I appreciate that.   As long as I'm welcome when
23   we come back for follow-up, then we can live with it.

24         **THE COURT:**   Well, it depends on your showing.   You
25   are welcome if you make a good showing, you are unwelcome if

1    you make a bad showing.

2             Seriously, at some point it becomes such minutia.

3    And I'm not reluctant to have them spend a thousand hours

4    preparing what the Court has suggested in terms of the

5    electronic data, I am reluctant to have them spend 45,000 hours

6    or 25,000 hours preparing.  It would take some more significant

7    showing to do that.

8             A note is being passed, so I think I'll wait.

9             You want to say something, I'll give you a chance.

10   No?  Okay.

11            Have I missed something?

12            MR. SOLOMON:  Do you mind if I confer with my

13   colleague?

14            THE COURT:  Go ahead.

15            Did you want to add something?

16            MR. RUBIN:  No.

17            THE COURT:  We're fine so far?

18            MR. RUBIN:  Yes.

19                   (Counsel Confer.)

20            MR. SOLOMON:  Thank you, Your Honor.

21            Three things, I think.  We need to look at entire

22   customers as a block.  Because so many transactions are

23   interrelated, we want to be sure that we are getting with

24   respect to that limited production at least the entire customer

25   history within the debit transactions.

1    Number two, we would want to include all credit

2    memos.  We understand there is around 1000 of them.  This is

3    supposedly overpayments that were repaid after October of 2000.

4    And I think this is probably for when we come back, Your Honor,

5    but we don't want to simply ignore the 40,000-odd transactions

6    that are under the $100,000.  We want at some stage some

7    sampling, I think.  But with those comments and caveats, we go

8    along with the program.

9         THE COURT:  Well, I don't know what it means.  I

10   don't know what you mean by "credit memos."  Are those included

11   in the transactional history of these debit memos?

12        MR. SOLOMON:  Yes, in a sense.

13        THE COURT:  No, no, I'm asking you.

14        MR. RUBIN:  Yes.

15        THE COURT:  So the answer is yes.

16        MR. RUBIN:  To the extent they are credit memos

17   associated with the 785, it would be reflected.

18        THE COURT:  So any credit memos associated with the

19   underlying transactions of these 780-odd, those would be

20   included in the electronic and ultimately, I suppose, in the

21   paper for the larger ones.

22        With respect to customers, I don't know how that

23   breaks out.  I mean, maybe -- I don't know how that breaks out.

24   What he is saying is, you know, if you've got a certain

25   customer that is a database customer with the debit memo, does

1    that mean -- and you produce that, will there be other debit

2    memos for those customers that aren't produced, smaller ones,

3    perhaps?

4              MR. RUBIN:   This has always been an exercise in

5    producing the transactions related to the debit memos that

6    customers paid Oracle in 1998, and that transaction didn't end

7    up being --

8              THE COURT:   But I don't know how the -- would there

9    be multiple debit memos for any given customer such that there

10   might be some that aren't included in the 780, even though

11   you've got one or two?

12             MR. RUBIN:   There could be.  So there could be a

13   $50,000 debit memo that relates to --

14             THE COURT:   Why do you need the smaller one?

15             MR. SOLOMON:   Just to show, Your Honor, how

16   ultimately -- having looked at one account that everybody seems

17   to have focused on, which is Household, it becomes apparent

18   that regardless of the dollar amount, you need to know the

19   transaction in order to ultimately demonstrate whether that

20   amount was on account and whether that amount was properly

21   taken into revenue or not.

22             THE COURT:   But you are going to get the

23   transaction.  You just might not get other transactions with

24   the same customers.  I mean, your theory is that maybe there

25   are transaction that are related.

1  MR. SOLOMON:  Correct, Your Honor, what may affect a
2  customer's AR balance, at any point in time.
3  THE COURT:  I guess that's right, but why it's
4  significant in this case I'm not entirely sure.  But I don't
5  know.  I'm not going to go into that.  If you put some showing
6  that I've got customer A, and our account's experts say they
7  cannot do the following evaluation without the rest of the
8  debit memo information on that customer, well, then, we'll
9  revisit that.
10  MR. SOLOMON:  Okay.
11  THE COURT:  And the other transactions, if you guys
12  can work out a sampling on them, that would be great.  I think
13  you proposed a sampling at some point.
14  MR. SOLOMON:  One caveat or additional comment, in
15  Household Oracle refunded 15 debit memos in one lump sum, so
16  what I'm saying is regardless of the dollar amount, clearly,
17  those 15 transactions need to be fully accounted for.
18  THE COURT:  Do you know what he's referring to?
19  MR. RUBIN:  That could be the case with any
20  particular transaction.  I don't know specifically with
21  Household, but the point is that we are starting with an amount
22  that is clearly more than material to the claim, that
23  $228,000,000 of revenue was --
24  THE COURT:  Well, I understand, but depending on how
25  they are lumped together and paid or not paid and assigned,

1    take three or four of them together, I don't know.

2             Here is what we are going to do, nobody has enough

3    information to convince me one way or another whether these

4    distinctions you are making are important or not at this point,

5    so we are not going to make them at this point.  If at some

6    point they are important and you can't work them out, we'll

7    work them out then.  For the moment, that will be the order of

8    the Court.  No more argument, no more distinction, no more note

9    passing.

10            Within 30 days from today, I want for Oracle to

11   produce the following:  All electronic information, including

12   imaging, on the debit memos and the transactions that underlie

13   those debit memos or relating to the debit memos that are over

14   $100,000 in value.

15            Second, on or before the same time period, produce

16   with respect to debit memos that are over $1 million, a million

17   dollars or more, all paper documents relating to those debit

18   memos in the underlying transactions.  This order will be

19   without prejudice to the plaintiffs making an application to

20   the Court for some additional productions with respect to the

21   debit memos.

22            Thank you.  All right, thank you very much.

23            MR. SOLOMON:  Did you mention 30 days?

24            THE COURT:  Thirty days from today.

25            MR. RUBIN:  I just want to clarify, on the

1  electronic data you said imaging?

2          **THE COURT:**  Well, if there are imaged documents,

3  those are included in the "all electronic information."

4          **MR. RUBIN:**  If they are imaged but not hard copies

5  in storage.

6          **THE COURT:**  No, no, hard copies in storage all apply

7  to million dollars or more.  Got it?  Great.  I knew you could

8  work through this.

9          **MR. SALPETER:**  Thank you very much.

10                 **(Proceedings adjourned at 11:31 a.m.)**

11

12

13                          **---o0o---**

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

Sahar McVickar, RPR, CSR No. 12963

October 18, 2005