MAYER, BROWN, ROWE & MAW LLP
Donald M. Falk (SBN 150256)
Lee H. Rubin (SBN 141331)
Shirish Gupta (SBN 205584)
Two Palo Alto Square, Suite 300
Palo Alto, California 94306
Telephone:    (650) 331-2000
Facsimile:    (650) 331-2060
lrubin@mayerbrownrowe.com

MAYER, BROWN, ROWE & MAW LLP
Alan N. Salpeter (admitted *pro hac vice*)
Javier Rubinstein (admitted *pro hac vice*)
Vincent P. Schmeltz III (admitted *pro hac vice*)
71 South Wacker Drive
Chicago,  IL 60606-4637
Telephone:    (312) 782-0600
Facsimile:    (312) 701-7711
jrubinstein@mayerbrownrowe.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J.
ELLISON, JEFFREY O. HENLEY, AND EDWARD J. SANDERSON

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone:    (650) 506-5200
Facsimile:    (650) 506-7114
jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA -SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION, | Case No. C-01-0988-MJJ (JCS) (Consolidated) |
| This Documents Relates To: | **DISCOVERY MATTER** |
| ALL ACTIONS | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C)** |
| | **Magistrate Judge Joseph C. Spero** |
| | Date: January 27, 2006 Time: 1:30 p.m. 15th Floor, Courtroom A |

## I.       Introduction

Plaintiffs' Opposition to Defendants' Motion for Protective Order ("Opposition") ignores this Court's repeated rulings and statements that Plaintiffs are not entitled to an integrated set of workpapers from Andersen.  Our opening papers cited the following directives from the Court, which could not be clearer:

- **March 1, 2005 Hearing**:  "I don't want to get into all of the audit.  It's not pled and we are not going to get into it."  Mar. 1, 2005 Tr. at 136, attached as Exhibit 1 to Decl. of V. Schmeltz in Supp. of Defs.' Mot. for a Protective Order ("S.D. Ex.___").

- **March 10, 2005 Discovery Plan**: Section III.E of the Discovery Plan specifically addresses the limits on "Plaintiffs' third party discovery from Oracle's auditors and accountants. . . ."  Am. Order Setting a Disc. Plan at 8-9 ("Disc. Plan").  Under these limits, Plaintiffs plainly may not demand a complete set of workpapers from Andersen.

- **August 12, 2005 Hearing**:  The Court again reiterated that Plaintiffs are not entitled to receive all of the workpapers from Andersen.  *See* S.D. Ex. 4, Aug. 12, 2005 Tr. at 3.

Plaintiffs make *no effort* in their Opposition to explain how their demands that Andersen produce all of Oracle's workpapers can be reconciled with these rulings.

Rather, Plaintiffs raise a series of meritless arguments.  First, Plaintiffs argue that the documents from Andersen's production "strongly suggest" that some responsive documents are missing.  (Opposition at 5.)  Of course, Defendants dispute this claim.  Moreover, Plaintiffs' argument overlooks the fact that five months ago, the Court told Plaintiffs how to address this issue:  "[M]aybe it does take a short document deposition to figure out what's there and that's a perfectly legitimate way of doing it, and then at least you'll know what you're dealing with."  S.D. Ex. 4 at 4.  Plaintiffs did not notice a deposition; instead, they demanded that Andersen produce a complete set of workpapers.

Plaintiffs then argue that "[n]othing in the Discovery Plan or any of the Court's rulings precludes or prevents plaintiffs from . . . reaching an agreement with non-parties without Court intervention."  (Opposition at 4-5.)  Yet the Discovery Plan was designed specifically to prevent Plaintiffs from demanding that third parties produce documents that are outside the scope of this litigation.  Thus, the Discovery Plan *does preclude and prevent* Plaintiffs from demanding that Andersen hand over all of Oracle's confidential work papers.

1      Plaintiffs next argue that Defendants' Motion for a Protective Order Pursuant to Fed. R.

2  Civ. P. 26(a) ("Motion") fails to demonstrate good cause because it is based on Defendants'

3  mere "speculation that Andersen documents *may* result in plaintiffs seeking to add new claims to

4  the litigation."  (Opposition at 8.)  Again, Plaintiffs disregard the Court's own words.  At the

5  March 1, 2005, hearing, Your Honor explained that "I don't want [Plaintiffs' request for audit

6  workpapers] to be an excuse to look for 75 other flaws and amend the complaint for 75 other

7  flaws that they haven't yet discovered in the financial records in the company."  S.D. Ex. 1 at

8  136.  On August 12th, the Court noted Defendants' "perfectly legitimate" concern that Plaintiffs

9  were trying to gin-up a new claim through overly broad discovery from Andersen.  S.D. Ex. 4 at

10  3.  This same concern—not mere speculation—motivates Defendants' Motion.

11     Finally, Plaintiffs round out their Opposition with a series of makeweight arguments,

12  which are meritless for the reasons explained below.

13     Defendants respectfully request that the Court rule—for the fourth time—that Plaintiffs

14  may not seek accounting workpapers from Andersen.

15  **II.    Argument**

16     A.    **The Discovery Plan Sets The Limits On All Discovery In This Case And Does**

17           **Not Permit Plaintiffs To Seek Andersen's Workpapers**

18     The Court has broad latitude to define the breadth and amount of discovery.  *See, e.g.*,

19  Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2036 (West 1994)

20  (noting that district courts have "complete control . . . over the discovery process"); Manual for

21  Complex Litigation (Fourth) § 11.31 (2004) (noting that "[t]he judge should construct the

22  discovery plan after identifying the primary issues").  The Discovery Plan, which was negotiated

23  jointly by *both* parties, is the fruit of this Court's determinations on the appropriate breadth and

24  amount of discovery in this case.  A Rule 26 protective order is an appropriate means to ensure

25  that Plaintiffs (as well as Defendants) abide by the limits of that plan.  *See Auto-Owners Ins. Co.*

26  *v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (citing *Washington v.*

27  *Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005)) (recognizing that parties have

28  standing to move for a Rule 26 protective order if a third-party subpoena seeks information

1  outside the scope of discovery).

2       The development of the Discovery Plan reflects significant effort by the parties and the

3  Court.  Throughout that process, Plaintiffs repeatedly asserted a right to all of Andersen's audit

4  workpapers.  *See, e.g.*, Parties' Joint Disc. Plan at 27, attached as Exhibit 1 to Supplemental

5  Decl. of V. Schmeltz in Further Supp. of Defs.' Mot. for a Protective Order  ("S.S.D. Ex.___")

6  (requesting Andersen's workpapers "in both hard copy and electronic format from Oracle's 2001

7  and 2002 fiscal quarters and fiscal year-end.").  After a lengthy meet-and-confer process, the

8  Court held a five-hour hearing on March 1, 2005, to establish the ultimate discovery plan.  *See*

9  S.D. Ex. 1.  During that hearing, Plaintiffs again claimed that they needed ***all*** of Andersen's

10  workpapers.  *See id*. at 42-33, 128.  The Court rejected this argument.  *See id.* at 140.  At the end

11  of the hearing, the Court sent the parties out to finalize a plan based on the Court's rulings.  *See*

12  *id.* at 147.  On March 10, 2005, the Court signed the resulting Discovery Plan, which ***did not***

13  entitle Plaintiffs to ***all*** of Andersen's audit workpapers.  *See* Disc. Plan at 8-9*.*

14       At the August 12, 2005 hearing, the Court reiterated that under the Discovery Plan,

15  Plaintiffs' are not entitled to these workpapers.  S.D. Ex. 4 at 3.  The Court correctly summarized

16  Oracle's position as "'we don't want to get you further into our workpapers . . . because we don't

17  want you trying to add issues into the case.'"  *Id.*  The Court then agreed that this concern was "a

18  perfectly legitimate thing."  *Id.*

19       Plaintiffs'  Opposition  fails  to  address  either  the  Court's  holdings  or  Defendants'

20  legitimate concerns.  Plaintiffs claim that Defendants have failed to show good cause for this

21  Motion because Defendants' worries about Plaintiffs' attempts to bring new claims are mere

22  "speculation."  (Opposition at 10.)  Yet, they ignore the fact that the Court has twice recognized

23  that this is a ***real*** problem and, thus, it is good cause unto itself.[1]  *See* S.D. Ex. 1 at 136 ("My

24  concern about the work papers is I don't want it to be a fishing expedition."); S.D. Ex. 4 at 3

25  (describing Defendants' concern about Plaintiffs' attempting to bring new claims as  "perfectly

26  legitimate").  In addition, good cause for a protective order clearly is shown where a party is

27   

---

[1]  For legal authority for this point, *see* Motion at 7 & n.2.

28   

1   seeking to enforce the plain terms of a Discovery Plan, as are the Defendants in this instance.

2   *See Reed v. Amax Coal Co.*, 971 F.2d 1295, 1301 (7th Cir. 1992) ("A district court acts well

3   within its [Rule 26(c)] authority when it issues a protective order to prevent blatant violations of

4   its earlier directives.").

5            B.        **Plaintiffs Are Not Entitled To Any Further Documents From Andersen.**

6            The Discovery Plan limits Plaintiffs' discovery from Andersen to documents relating to:

7   (1) the debit memo transactions alleged in Plaintiffs' Revised Second Amended Complaint

8   ("RSAC"); (2) the accounting treatment of those 46,000 debit memo transactions; and (3) tax

9   advisory services provided to Messrs. Henley and Ellison for FY2001.  *See* Disc. Plan at 8-9**.**

10  Consistent with this direction, in June 2005, Anderson produced all workpapers that even

11  arguably could have been related to the 46,000 debit memos.  As Defendants explained in the

12  RSAC, this production included Andersen's FY2001 quarterly reviews and year-end audit

13  relating to Oracle's Customer Advances and Unearned Revenue account (*i.e.*, the 25005 account)

14  and its Unapplied Cash accounts, the accounts that Plaintiffs specifically have implicated in their

15  Complaint.  S*ee, e.g.*, S.D. Ex. 5, AA000040; AA00004-05; *see also* RSAC ¶¶ 41(f) & (b)..

16  These documents provide Plaintiffs with an independent basis on which to evaluate their

17  accounting allegations.

18          Plaintiffs' Opposition offers three justifications for their claim that Andersen should

19  produce additional documents.  All three lack any pretense that Andersen's workpapers actually

20  contain any documents related to the 46,000 debit memos.  First, Plaintiffs claim that they need

21  "workpapers in an integrated set" to evaluate the accounting allegations.  (Opposition at 6.)  As

22  discussed at length above, this argument has been rejected repeatedly by this Court, and should

23  be rejected again.

24          Next, Plaintiffs assert that handwritten notes on workpapers "strongly suggest" that the

25  documents are drafts and that Andersen has final versions of the documents in its possession.

26  (Opposition at 5.)  As Plaintiffs in-house forensic accountants must know, this argument is

27  absurd.  The American Institute of Certified Public Accountants' Professional Standards AU

28  Section 339, *Audit Documentation*, makes it clear that the form of audit documentation is in the

1  auditor's discretion—meaning that the entire set of workpapers can be handwritten.  *See* AU

2  Section 339, *Audit Documentation* (American Inst. Of Certified Pub. Accountants 2005),

3  attached as S.S.D. Ex. 2, at .01.  Furthermore, according to these audit standards, an auditor need

4  not reduce handwritten notes to an electronic format.  *Id.* at .05 ("Audit documentation may be in

5  paper form, electronic form, or other media.")  Thus, there is no basis for Plaintiffs' assertion

6  that handwriting in workpapers indicates the existence of an additional draft.

7       Plaintiffs also argue that Andersen's documents include tick-marks and cross-references

8  to other documents that they did not receive.  (*See* Opposition at 5.)  As stated in Defendants'

9  initial brief, however, Plaintiffs do not and cannot suggest that there are any cross-referenced

10  documents ***relating to the 46,000 debit memos***.  *See, e.g.,* S.D. Ex. 5 at AA000051 (25005

11  account has two tick-marks, each of which is explained in a margin note, and no cross-

12  reference); *see also* Opposition at 5 (stating, without citation, that Andersen did not produce "all

13  the documents relating to the analysis" of the 25005 account).  The mere existence of irrelevant

14  cross-references does not entitle Plaintiffs to discovery of documents outside the scope of the

15  Discovery Plan.[2]

16       Rather than have the parties rehash the arguments made in August about whether the

17  Andersen production is or is not complete, there is a practical solution to this problem.

18  Plaintiffs' proper recourse is to depose a member of Andersen's audit engagement team to learn

19  about Andersen's review (if any) of the 46,000 debit memos and how they documented that

20  review.  At the August 12, 2005 hearing, the Court recommended that Plaintiffs take this step if

21  there was any "misunderstanding" about the workpapers Andersen had produced.  *See* S.D. Ex.

22  4, Aug. 12, 2005 Tr. at 4.  Rather than follow this approach, Plaintiffs made repeated demands

---

[2] Plaintiffs have attempted—incorrectly—to lump the entire 25000 series of accounts together as "related" in order to justify their request for the audit workpapers for the entire series.  They suggest that the ***series*** is called "customer advances and unearned revenue," which actually is the name of only one account in the series, the 25005 account.  (Opposition at 5.)  As AA000023 demonstrates however, the 25000 series is a series of unearned revenue accounts that are entirely unrelated to each other (*i.e.,* "Other Tech Support," "Consulting" and "Customer Overpayments").  *See* Decl. of Willow E. Radcliffe in Supp. of Pls.' Opp'n to Defs.' Mot. For Prot. Order, Ex. 3 at AA000023.

1    that Andersen—a company that is winding down—produce a complete set of workpapers *and*

2    restore numerous disaster-recovery backup tapes at enormous expense to Andersen.   Those

3    demands were not designed to resolve questions about handwritten notations or tick-marks; those

4    demands were an end-run around the limits on discovery imposed by this Court.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER
PURSUANT TO FED. R. CIV. P. 26(C); CASE NO. C-01-0988-MJJ(JCS)

1

### C.   **Plaintiffs Remaining Arguments Are Meritless**

2     Plaintiffs' Opposition is sprinkled with a number of other arguments, also equally
3 meritless.  First, Plaintiffs argue that Defendants' Motion is procedurally defective because the
4 parties have not met and conferred.  (*See* Opposition at 3-4.)  Of course, Plaintiffs cannot
5 seriously maintain that the parties' meet-and-confer sessions were sufficient for Plaintiffs' now-
6 withdrawn Motion to Compel, but not sufficient for Defendants' Motion for a Protective Order
7 concerning the very same documents.  As Plaintiffs know, the parties did meet and confer
8 regarding the issues raised in this Motion.  On July 27, 2005, the parties participated in an in-
9 person meet-and-confer concerning, among other things, whether the Discovery Plan should be
10 altered to permit Plaintiffs to obtain a full set of workpapers.  *See* S.D. ¶ 15.  Further, Plaintiffs
11 brought this same issue in front of the Court in August and again were rebuffed.  *See* S.D. Ex. 4
12 at 3.  Thereafter, in December, Plaintiffs brought a motion to compel Andersen to produce
13 documents without any further in-person meet and confer.  *See* S.S.D. ¶ 5.

14     Next, Plaintiffs make the red-herring argument that they had every right to move to
15 compel Andersen to produce a complete set of workpapers.  (*See* Opposition at 4-5.)  Clearly,
16 Plaintiffs can bring any motion they wish, but such a motion would be meritless in light of the
17 rulings discussed above.

18     Plaintiffs also suggest that Defendants' Motion somehow interferes with Plaintiffs'
19 agreement with Andersen.  (*See* Opposition at 6.)  Oracle, as a party to this action and as the
20 audit client, has every right to object to the production of these accounting documents.

21     Finally, Plaintiffs argue that Defendants "have no standing" to object to Plaintiffs'
22 attempt to seek discovery from a third party such as Andersen.  (Opposition at 1.)  That issue was
23 resolved on February 4, 2005, when the Court heard (and ultimately granted in part) Defendants'
24 motion for a protective order limiting certain third-party discovery:

25     I think it's transparent that 26(b)(2) gives the Court the power to limit any or all
       discovery methods, based on a measure of the burdens and benefits of those
26     discovery methods, and that that includes third party discovery.

27 S.D. Ex. 3, Feb. 4, 2005 Tr. at 3.

28

---

**III.     Conclusion**

Plaintiffs' actions (*e.g.*, attempting to modify the Discovery Plan) clearly confirm their awareness that the scope of discovery does not encompass all of Andersen's workpapers.  The Court should not permit Plaintiffs to circumvent either its unambiguous rulings or the Discovery Plan itself.  For the reasons set forth above, and those previously set forth in Defendants' Motion, Defendants respectfully request that the Court grant their Motion and enter an order that prevents Plaintiffs from obtaining a complete set of Andersen's workpapers.

Dated: January 13, 2006                    By,

                                                          /s/ Vincent P. Schmeltz III
                                                          Vincent P. Schmeltz III
                                                          MAYER, BROWN, ROWE & MAW LLP

                                                          Attorney for Defendants Oracle Corporation,
                                                          Lawrence J. Ellison, Jeffrey O. Henley and
                                                          Edward Sanderson