

The Honorable Joseph C. Spero
February 23, 2005
Page 21

Defendants' Position:

Defendants propose producing privilege logs within a reasonable amount of time, not to exceed 45 days, after documents are produced from which privileged documents are withheld.

**Authentication of Documents**

Agreement: The parties agreed to work toward a stipulation for the authenticity of documents produced by defendants in this action. Such a stipulation could help avoid additional deposition testimony for the sole purpose of authenticating documents produced by the defendants.

## DEPOSITIONS

The Court has already approved 65 depositions per party. The parties set forth their anticipated deponents below.

**Deponents**

Plaintiffs' Position:

Based on plaintiffs' cursory review of a limited number of documents produced by defendants thus far, the following is a non-exclusive list of the depositions of former/current Oracle employees that plaintiffs believe at this juncture will likely be taken: Jennifer Minton; Sergio Giacolletto; George Roberts; Edward J. Sanderson; Jay Nussbaum; Mark Barrenechea; Charles Rozwat; Sohaib Abbasi; Safra Catz; Mark Jarvis; Stephanie Aas; Bruce M. Lange; Deborah A. Lange; Mathew Mayerson; Kate L. McGee; Jennifer L. Minton; Sharon Montoya Bretz; Anil Vora; Keith G. Block; Richard P. Blotner; Valerie A. Borthwick; Jay Carter; Drew Costakis; Michael P. DeCesare; John P. Fikany; Sebastian J. Gunningham; Margaret Marks; Steve McLaughlin; Mark A. Salser; David Cooperman; Joyce E. Westerdahl; Shari A. Simon; Mark T. Tombridge; Jenn Bicho; Joelle Teresa Fitzgerald; Mary Ann Riles; Jim English; Christian Facey; Larry Garnick; Sarah J. Kopp; Annica Magnusson; Cheryl Jean McDowell; Estele Oloresisimo; Daniel N. Sharpley; Thomas A. Williams; David Winton; John Nugent; Frank Varasano; Mary Ann Gillespie; Allen Snyder; Ian Thacker; Joel Summers; Phillip Tate; Ian Sterling; Michael DeCesare; Mike Murphy; Michael Rocha; Conway Snyder; Raymond Barman; Chabra Deepjot; Ray Lane; Carolyn Barkenhoff; Gary Roberts; Terrence Ford; Derek Williams; Gary Bloom; Ira Entis; R. Police; Cayle Fitzpatrick; Kenneth Hammoz; Mike



The Honorable Joseph C. Spero
February 23, 2005
Page 22

Metcalf; Don Warren; Cliff Godwin; Andrew Huda; Mike Quinn; Greg Myers; Kimberly Henderson; Raul Campos; Bret Fuller; Kimberly Kane and Graham Mair.

In addition to the above, plaintiffs believe they will need to depose members of the SLC and their counsel, analysts, Oracle's two auditors, and customers.

<u>Defendants' Position</u>:

Defendants presently intend to depose the 49 Confidential Witnesses referenced in the RSAC, as well as the class representatives identified in Plaintiffs' Motion for Class Certification.

**Timing**

    (a)    30(b)(6) depositions: Plaintiffs propose that 30(b)(6) depositions be completed before March 30, 2005 (preservation, accounting, forecasting, and Suite 11i interoperability). Defendants propose that 30(b)(6) depositions on electronic systems be completed by March 30, 2005.

    (b)    The parties agree that substantive witness depositions will begin in April 2005 subject to timely production of documents.

    (c)    The parties agree that depositions of non-Oracle employees will be staggered, beginning after plaintiffs have obtained documents pursuant to the third party subpoenas they issued in December 2004/January 2005. The files of any third party current or former Oracle employee shall be produced by Oracle upon 30 days notice.

<u>Open Issues</u>:

    (a)    Plaintiffs propose that for 30(b)(6) depositions, that the 7-hour limit be extended if defendants intend to profer the witness in both their individual capacity and as a 30(b)(6) representative.

    (b)    Between April 22, 2005 and February 24, 2006, the parties will engage in additional fact discovery, including written discovery and depositions.



The Honorable Joseph C. Spero
February 23, 2005
Page 23

**THIRD PARTY CUSTOMER (FORMER/POTENTIAL CUSTOMER) DISCOVERY**

<u>Plaintiffs' Position</u>: While plaintiffs do not believe the court to have ruled that the substance of plaintiffs' requests were improper or that they should be narrowed more than what they have in meet and confers. The following topics are the general topics plaintiffs believe they are entitled to support their claims. These subject categories are substantially narrower than those previously sent to the non-parties.

1. General Subject Matters

    (a) Oracle's Product Problems

Plaintiffs seek documents from third parties regarding implementation and integration problems with Oracle's products, including customer complaints, cancellations or delays that relate to functionality of application products.

    (b) Downturn in the Economy

Plaintiffs seek documents relating to the impact of the declining United States economy on third parties' decisions to order, purchase, defer, cancel or modify deals for Oracle products and services. Plaintiffs also seek documents related to third parties' purchase of IT products in general. Many of these documents will not be found in Oracle's files because they were exchanged internally at the third party companies and may not have been communicated to Oracle.

    (c) Accounting

Plaintiffs seek documents from third parties regarding the accounting allegations in the RSAC (specifically customer overpayments and improper revenue recognition) and any pre- and post-Class Period information related to same (*i.e.*, documents from transactions occurring prior to the Class Period and documents in 2002 related to Oracle's "investigation" and clean up described in §V, supra).

Accordingly plaintiffs have agreed to refine their requests without prejudice to the following:

- Documents and communications concerning your actual or attempted installation integration or implementation of Oracle applications and database, products, licenses or services including, but not limited to Oracle 11i, or any of its individual modules including CRM. ¶¶52-55.



The Honorable Joseph C. Spero
February 23, 2005
Page 24

- Documents and communications concerning the functionality of Oracle's products and services and compatibility with hardware, software and information technology systems used by or considered for use by your company. ¶¶52-55.

- Documents and communications concerning technical defects, problems, bugs, patches or technical difficulties related to Oracle's applications, product and licenses including complaints you had or raised with Oracle. ¶¶52-55.

- Documents and communications concerning your efforts to audit, collect, or recover payments or monies paid to Oracle or owed to you by Oracle, relating to Oracle's products, licenses or services. ¶¶36-38.

- Documents and communications concerning the loss of business or costs incurred by you in connection with your purchase or use of Oracle's applications and database products, licenses or services including 11i and CRM. ¶54(j).

- Documents and communications concerning your information technology budget for Oracle products, licenses or services, including, but not limited to any decline or change due to the slowing of the United States economy. ¶¶47-49.

- Documents and communications concerning sales presentations, promotions or product demonstrations made to you by Oracle for Oracle products, licenses or services including, but not limited to any discussions, promises or guarantees made to you regarding the functionality or performance of Oracle products. ¶52(k).

- Documents and communications concerning any discussions or meetings between you and Oracle or any individual defendant relating to Oracle contracts, agreements or Oracle's products, licenses or services. ¶¶36-43.

- Documents constituting or concerning invoices, purchase orders, receipts, checks, refunds, credits in connection with the purchase or sale of Oracle's products or services relating to 2Q01 (Sept. 2000 - Nov. 2000) regardless of when created. ¶¶36-43.



The Honorable Joseph C. Spero
February 23, 2005
Page 25

Defendants' Position:

Plaintiffs are to propound five requests, with Defendants' agreement, to third-party customers. Defendants have agreed to allow subpoenas to 30 third-party customers. Subject to these agreements and to the other limitations on discovery that Defendants have proposed, Defendants will produce documents relating to the same third-party customers.

Plaintiff seek the Court's permission to obtain discovery from the 93 customers that are the subject to the current stay and propose that the discovery plan expressly authorize the issuance of up to 200 subpoenas to Oracle's customers.

2. Timing of Production

Plaintiffs' Position:

(a) Immediately for those non-parties that have already been subpoenaed.

(b) Plaintiffs are prepared to subpoena an additional 50 or more non-parties whom plaintiffs have a good faith basis to believe are likely to have information relevant to this action. Plaintiffs are prepared to set an initial limit of 200 non-party document subpoenas and agree to notify defendants of additional non-parties in excess of 200, allowing defendants ten days to seek an order from the Court stating (for good cause shown) why plaintiffs should not issue the additional non-party subpoenas for documents.

(c) Plaintiffs believe this proposal is extremely reasonable in light of Oracle's position as the second largest software manufacturer in the world, statements that as of December 15, 2000, the Company had "several hundred live" and "several thousand that are in the process of upgrading right now," as well as Ernst & Young LLP's review of 195 accounts alone in connection with the SEC's investigation of accounting allegations in the RSAC.

3. Relevant Time Period

Plaintiffs' Position:

Plaintiffs' position is that the Relevant Time Period is June 1, 2000 through and including December 31, 2001 (exclusive of plaintiffs' allegations concerning accounting



The Honorable Joseph C. Spero
February 23, 2005
Page 26

irregularities), including documents created outside this time frame which relate to *inter alia*, statements, events, circumstances and knowledge during the Relevant Time Period. Plaintiffs have proposed to accept a shortened relevant time period ending on August 10, 2001, the date of the filing of the Company's Form 10-K for the fiscal year ending 2001. For example, because Oracle internally does its financial analysis on a quarter-to-quarter and year-over-year basis, it is important to have the entire next quarter and arguably through the third quarter fiscal 2002 to indeed determine whether the economy was impacting the Company and whether 11i applications would indeed help save money in difficult times. Secondly, customers that plaintiffs alleged were buying or attempting to implement 11i applications were still experiencing significant technological and functionality defects. Defendant Ellison stated that many of the 3Q01 deals simply slipped from 3Q01 to 4Q01 and therefore would or should show up in the 4Q01 revenue stream.

Moreover, defendants made multiple admissions in 4Q01 that go to the veracity of statements made during the Class Period, for example, the August 2001 *Wall Street Journal* article attached as Exhibit 1 to the Revised Second Amended Complaint quotes Ellision and the Company admitting to the 11i product defects and outlines **at least** four customers – General Electric Co., Ford Motor Co., Alcoa Inc. and Hewlett Packard – who confirm Ellison's statements that they were "live and running their business on 11i" were not true.

Finally, plaintiffs note that in the narrower California derivative action, defendants were ordered to produce documents through January 31, 2001.

Defendants' Position:

Despite the fact that Plaintiffs' class period covers a three month period from December 2000 through February 2001, Plaintiffs seek documents and information for a period over one-year, from June 1, 2000 to August 31, 2001. In some of their requests, Plaintiffs seek information from 2002 through the present. *See, e.g.,* Request for Production Nos. 37 (August 1, 2002 – December 31, 2002); 38 (September 1, 2002 – March 31, 2003); 43 (October 1, 2002 – March 31, 2003); and 44 (October 1, 2002 – present).

Defendants have offered to produce information from June 1, 2000 through April 2001 ("Relevant Time Period"), as well as documents created after that time that refer to events or conduct from that time period.



## ANALYSTS AND MEDIA ORGANIZATIONS COVERING THE COMPANY

Agreement: The parties agree that the scope of discovery sought by plaintiffs from analysts and news services is relevant, including discovery related to:

(a) The defendants' public statements;

(b) Customer interviews and complaints/problems with Oracle products, including 11i;

(c) The downturn in the economy and IT budgets during the Class Period;

(d) Oracle's forecasts and projections;

(e) Oracle's revenue and earnings reports and financial statements; and

(f) One-on-one interviews with Oracle defendants.

## DISCOVERY TO BE TAKEN FROM ACCOUNTANTS/AUDITORS

Plaintiffs' Position:

As set forth in plaintiffs' subpoenas to Arthur Anderson LLP and Ernst & Young LLP, plaintiffs seek the following discovery from the accountants/auditors who performed professional services for the defendants:

(a) Integrated workpapers in both hard copy and electronic format for Oracle's 2001 and 2002 fiscal quarters and fiscal year-end. See Audit and Accounting Manual §6300.06 ("[w]orking papers should be viewed as an integrated presentation of information.");

(b) Documentation of professional services performed for Oracle or the individual defendants. This would include, for example, tax consulting work performed by Ernst & Young LLP for Ellison. It would also include Ernst & Young LLP's investigation of allegations in plaintiffs' RSAC;



  (c) Desk files, client files and communications (including e-mail) that relate to Oracle's 2001 fiscal year and the quarters therein, whether created during fiscal year 2001 or relating thereto;

  (d) Documents received or given to the SLC and communications with the SLC;

  (e) Documents and communications between auditors relating to Oracle or the individual defendants;

  (f) Communications with the SEC, AICPA and other governmental, law enforcement or regulatory agencies related to Oracle or the individual defendants; and

  (g) Documents concerning document retention (including any policies) and the alteration, modification or destruction of documents related to plaintiffs' allegations. This would include any documents related to the alteration, modification or destruction of Oracle's audit trail for 2Q01, Account 12601 and/or the debit memoranda or "on account clean up" occurring in November 2000.

Defendants' Position:

Plaintiffs are entitled to accounting work papers from Arthur Andersen and Ernst & Young that relate to the debit memo cleanup alleged in the RSAC to have occurred in November 2000. Plaintiffs are also entitled to documents relating to tax advisory services provided to the Defendants by either AA or E&Y, provided that such documents are accorded "Highly Confidential-Attorneys' Eyes Only" treatment.

Plaintiffs seek all 2001 and 2002 work papers from E&Y and AA, together with the auditors' desk files or client files for those years, and all documents reflecting consulting services provided by E&Y and AA to the Defendants. As the discussion below demonstrates, this request seeks information well beyond the bounds of the narrow accounting issue alleged in the RSAC.

## DISCOVERY TO BE TAKEN FROM PLAINTIFFS:

  1. Confidential Witnesses



The Honorable Joseph C. Spero
February 23, 2005
Page 29

Plaintiffs' Position:

Discovery concerning the confidential witnesses should be limited. Plaintiffs are prepared in this case to provide the names of the confidential witnesses along with their correlating witness number so long as an order is in place protecting the confidential witnesses from retaliation and harassment including: that the names of the confidential witnesses only be disclosed to outside counsel for defendants; that the documents that reference the confidential witnesses be filed under seal of the Court; and other additional protections set forth by Judge Alsup in the *In re Northpoint Communications Group, Inc.*, Master File No. C-01-1473-WHA, Order (N.D. Cal. May 13, 2003). Plaintiffs have not had the opportunity to review defendants' proposal regarding a stipulation which was forwarded to plaintiffs at approximately 6:00 p.m. PT time this evening.

Defendants' Position:

Defendants are entitled to know the identities of the 49 Confidential Witnesses ("CWs"), including by reference to the numbers assigned to them in the RSAC. Plaintiffs have proposed to identify the CWs by name and by the number associated with them in the Revised Second Amended Complaint ("RSAC"), providing the parties can agree to an appropriate stipulation to protect these CWs. Although Defendants do not believe that the Plaintiffs have made any showing of potential harm to these CWs by their disclosure – and have no basis for believing that the CWs may be harassed – Defendants are willing to agree to a confidentiality stipulation in the interest of advancing this litigation. Accordingly, Defendants are willing to enter into a stipulation that imposes the following limitations: (1) Defendants will not make initial contact with a CW without informing Plaintiffs' counsel of its intention to do so no less than forty-eight hours prior to making such initial contact; (2) Counsel for Defendants shall cause anyone obtaining information about a CW in connection with his or her role as a CW, including the fact that such a person was a CW ("CW's Role") to sign an "Undertaking" identical in substance to that ordered by Judge Alsup in *In re Northpoint Communications* (the court's order is attached to Defendants' separate submission as Attachment A); (3) Counsel for Defendants will not disclose a CW's Role to anyone other than (x) Defendants and their counsel within Mayer, Brown, Rowe & Maw LLP ("MBR&M"); (y) any consultant retained by MBR&M for purposes of this litigation; and (z) in-house counsel and employees of Oracle Corporation, without first obtaining written acceptance of such disclosure from the Plaintiffs or the Court in the manner set forth in paragraph 4 of the Alsup Order; (4) The identities of the CWs will



The Honorable Joseph C. Spero
February 23, 2005
Page 30

not be used for any purpose other than this litigation; (5) Defendants will not object to Plaintiffs seeking an order from the Court requiring that any court paper, deposition, hearing or testimony identifying the CWs by anything other than CW number be sealed, in a manner consistent with Paragraph 5.2 of the Revised Stipulated Protective Order Governing Confidentiality entered on January 14, 2005, in this case.

2.  Scope and Timing of Discovery of the Proposed Class Representatives

Plaintiffs' Position:

At this juncture, discovery of plaintiffs should be limited to the adequacy of plaintiffs' proposed class representative: Robert D. Sawyer, Drifton Finance Corporation, Local 144 Nursing Home Pension Fund (now known as 1199 SEIU Greater New York Pension Fund), Ryan Kuehmichel and Dzung Chu. As to Drifton Finance Corporation, 1199 SEIU Greater New York Pension Fund and Robert D. Sawyer, plaintiffs have agreed to endeavor to produce supplemental responses to defendants' second set of interrogatories and documents responsive to defendants' document requests pertaining to class certification subject to their objections by March 7, 2005. Defendants have not propounded discovery on Ryan Kuehmichel or Dzung Chu.

Depositions of the proposed class representatives should take place beginning in the middle of March 2005 and be completed by mid-April 2005. Plaintiffs will not oppose defendants' request to extend the class certification schedule for six weeks as requested by defendants: (a) opposition to the motion for class certification due May 16, 2005; (b) reply due on June 14, 2005; and (c) oral argument in July 2005.

Defendants' Position:

The parties will in good faith attempt to resolve all class certification discovery objections by Monday, March 4, 2005. Plaintiffs will be required to produce responsive documents by Monday, March 7, 2005. Depositions of Lead Plaintiffs will take place between March 21 and April 15, 2005. Defendants' brief in opposition to the motion for class certification will be due on May 16, 2005 and Plaintiffs' reply will be due on June 13, 2005. Oral argument will be held in July 2005 or at the Court's earliest convenience thereafter. Defendants are prepared to stipulate to the proposed modification in the class certification briefing schedule. **The parties have agreed to all of the dates set forth above, except that with respect to the proposed date for Defendants' to file its opposition to the motion for class certification**



The Honorable Joseph C. Spero
February 23, 2005
Page 31

**(May 16, 2005), Plaintiffs have represented that they do not oppose a modification of the current schedule consistent with this proposed new deadline.**

    3.    Timing and Scope of Contention Interrogatories

Plaintiffs' Position:

The contention interrogatories served on plaintiffs by defendants are premature at this juncture of the litigation and should be deferred until after discovery has progressed. "[C]ontention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110-111 (D.N.J. 1990); *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985). Plaintiffs agreed to supplement their responses to contention interrogatories previously propounded by defendants on or before August 1, 2005.

Defendants' Position:

Defendants are entitled to know the facts that Plaintiffs currently contend support the contentions in the RSAC. At a minimum, this information is necessary to allow Defendants to determine whether Plaintiffs fully complied with their obligations under Fed. R. Civ. P 11(b) in filing the complaint. *See* 15 U.S.C. § 78u-4(c)(1) (court is required "upon final adjudication of the action" to make specific findings "regarding compliance, by each party ... with each requirement of Rule 11(b) ... as to any complaint [.]" ) Defendants respectfully request that Plaintiffs provide responses to Defendants so-called contention interrogatories (Second Set, Interrogatory Nos. 5-7, 9-15) by April 15, 2005.

    4.    Discovery of Absent Class Members Not Permitted

Plaintiffs' Position:

Defendants should be precluded from seeking discovery from absent class members. "Absent a strong showing of necessity, discovery [of absent class members] generally will be denied." 3 Newberg on Class Actions §16.03 & n.57 (2d ed. 1985).

Defendants' Position:

Defendants are not seeking discovery from absent class members.



The Honorable Joseph C. Spero
February 23, 2005
Page 32

5.  Attorney Work Product

Plaintiffs' Position:

(a) **Defendants Improperly Seek Work Product**: Defendants' impermissibly seeks attorney work product, including the mental impressions of counsel by insisting on the identification of all facts that support the inclusion of persons identified in their Rule 26(a) Initial Disclosures. Further, the RSAC and the documents attached thereto provide facts indicating that several of the names listed on plaintiffs' Initial Disclosures are likely to have discoverable information. Moreover, certain of the entities listed on plaintiffs' Initial Disclosures obviously have discoverable information including, for example, the analysts who covered Oracle and the auditors who audited or performed engagements for Oracle

(b) **Documents from Confidential Witnesses**: Plaintiffs have agreed to produce those documents relevant to the claims or defenses in this litigation received by a confidential witness. Plaintiffs, however, object on attorney work-product grounds to identifying from which confidential witness lead counsel received which documents, particularly since defendants have refused to produce a source log of those documents it produces. As a compromise, plaintiffs, without waiving their assertion of attorney work-product agreed to identify the documents received by confidential witness, if defendants also agreed to identify the source from which their documents were obtained. Defendants continue to refuse.

Defendants' Position

(c) **Refusal to Respond to Discovery About Witnesses in 26(a) Disclosures.** Defendants have requested, in an interrogatory, that Plaintiffs identify all facts supporting their belief that each person identified in their Rule 26(a) Initial Disclosures is "likely to have discoverable information" that support Plaintiffs' "claims." In response to this interrogatory, Plaintiffs have objected on the grounds that the request seeks ***information about too many people and, as a result, is unduly burdensome.*** This objection is directly contrary to the position that Plaintiffs took when the parties met and conferred about Defendants' contention that Plaintiffs had failed to satisfy their obligations under Rule 26(a) by submitting a laundry list of



The Honorable Joseph C. Spero
February 23, 2005
Page 33

individuals and organizations as possible witnesses. At that time, Plaintiffs asserted (and ultimately represented to the Court) that they needed to list *every* witness that was included in the initial disclosures, and that Defendants would not be prejudiced because Defendants were free to seek discovery regarding these witnesses. Now that Defendants have done so, however, Plaintiffs assert that no such discovery should be permitted because of the burden to Plaintiffs. **Defendants cannot make meaningful decisions about third parties from whom to seek discovery without this information. Plaintiffs should either be required to narrow their Rule 26(a) disclosures or to submit detailed information concerning the individuals and organizations which they have identified as having discoverable information.**

(d)  **Documents from Confidential Witnesses.** In response to a document request and interrogatory from Defendants, Plaintiffs have agreed to specifically correlate each document they received from a third party with the identity (or CW number, if the parties cannot agree on a stipulation) of the third party or CW from whom they received the document, providing Defendants will agree to identify the source of each document they produce. Defendants have agreed that, on a going-forward basis, they will identify the sources of the documents they produce.

## CONCLUSION

Pursuant to the Court's directive, attached hereto are plaintiffs' and defendants' separate discovery plans.

Respectfully submitted,

/s/ Shawn A. Williams

Shawn A. Williams



The Honorable Joseph C. Spero
February 23, 2005
Page 34

I, Shawn A. Williams, am the ECF User whose ID and password are being used to file this Joint Discovery Plan. In compliance with General Order 45, X.B., I hereby attest that Lee H. Rubin has concurred in this filing.

Approved: _____/s/_____
Lee H. Rubin
Mayer, Brown Rowe & Maw LLP

SAW:cmb
Enclosures

cc: All Counsel (see attached)

T:\CasesSF\Oracle3\Corres\Jenkins_Letter_DisPlan.doc

ORACLE III (LEAD)
Service List - 2/22/2005   (201-064-1)
Page 1 of 1

**Counsel For Defendant(s)**

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306
  650/331-2000
  650/331-2060 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA  94065
  650/506-5200
  650/506-7114 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street, Suite 3900
Chicago, IL  60603-3441
  312/782-0600
  312/701-7711 (Fax)

**Counsel For Plaintiff(s)**

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
401 B Street, Suite 1600
San Diego, CA  92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
  415/288-4545
  415/288-4534 (Fax)