LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
  Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
       michele.kyrouz@lw.com

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
135 Commonwealth Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
  Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian E. Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988-MJJ (JCS)<br>(Consolidated)<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR IMMEDIATE ENFORCEMENT OF THE MARCH 10, 2005 DISCOVERY PLAN** |

I.      INTRODUCTION

Plaintiffs' contention that the March 10, 2005 Discovery Plan requires Defendants to produce 22 CD-ROMs of email that Oracle previously produced to Counsel for the Company's Special Litigation Committee (the "Committee") is completely meritless. In support of their argument, Plaintiffs rely upon Section I.C.6 of the Discovery Plan, which requires Defendants to produce documents that "the Special Litigation Committee <u>reviewed</u> from whatever source, except documents subject to privilege or work product protection . . . ."[1] However, the Committee never reviewed the 22 CD-ROMs and in fact, never even had access to the 22 CD-ROMS. The Committee's lawyers only reviewed approximately three percent of the emails on these CD-ROMS, and after that review, Counsel provided the Committee with an even smaller subset of documents culled from this three percent. Perhaps more importantly, all of the documents that were relevant to the Committee's investigation (including any emails) already were produced to Plaintiffs in August 2005, as exhibits to the Special Litigation Committee Report.

In any event, in connection with Defendants' May 2005 document production in this case, Defendants reviewed the emails on the 22 CD-ROMs and produced any responsive documents to Plaintiffs. Despite the fact that Plaintiffs have obtained all responsive documents from the CD-ROMs, Plaintiffs now demand that Oracle produce all 3.5 million pages of emails. Such a production is inappropriate not only because it is uncalled for in the Discovery Plan, but because it would lead to the wholesale waiver of attorney-client privilege, as the emails contained on the CD-ROMs were never reviewed for privilege prior to the production to the Committee's Counsel. Such a production also would give Plaintiffs unwarranted access to large quantities of Oracle's sensitive business information that is utterly unrelated to this case. When

---

[1] *See* Plaintiffs' Request for Immediate Enforcement of the March 10, 2005 Discovery Order Setting a Discovery Plan to Order Production of All Email Reviewed by Oracle's Special Litigation Committee ("Plaintiffs' Mot.") at 1:5-6; *see also* Declaration of Eli R. Greenstein in Support of Plaintiffs' Request for Immediate Enforcement of the March 10, 2005 Discovery Order Setting a Discovery Plan to Order Production of All Email Reviewed by Oracle's Special Litigation Committee ("Greenstein Decl.") Ex. A at 3 (emphasis added).

the Court suggested that Oracle supply Plaintiffs with the materials the Committee reviewed as a practical way to advance discovery in this case, we do not believe that the Court intended or even envisioned such an unfair result.

## II. ARGUMENT

The Committee was charged with investigating allegations made in certain derivative actions pending in the Delaware Chancery Court, the California Superior Court and the United States District Court for the Northern District of California, as well as certain accounting allegations alleged in the Second Amended Class Action Complaint in this case. *See* Declaration of James G. Kreissman in Support of Defendants' Opposition to Plaintiffs' Request for Immediate Enforcement of the March 10, 2005 Discovery Plan ("Kreissman Decl.") at ¶ 2. The Committee's investigation culminated in a comprehensive report (the "Report"), which included hundreds of exhibits of relevant documents which the Committee obtained and reviewed as part of its investigation. *Id.*

After the Committee had requested various categories of documents from Oracle, the Company produced documents to the Committee's Counsel, Simpson Thacher & Bartlett LLP. Among other things, Oracle produced to Counsel for the Committee 22 CD-ROMs of e-mails containing the equivalent of approximately 3.5 million pages of materials. *See* Kreissman Decl. at ¶ 3. These 22 CD-ROMs contained the entire e-mail boxes of approximately 21 different custodians. Prior to producing them to the Committee's Counsel, Oracle did not conduct any type of review, for relevance, privilege, or otherwise. *See id.* at ¶ 3.

Because the 22 CD-ROMs contain approximately 3.5 million pages of documents, Counsel for the Committee located potentially relevant documents by searching the disks by file owner, category, and file name, rather than reviewing each e-mail. *See* Kreissman Decl. at ¶ 4. Beyond running these focused file searches, the Committee's Counsel never reviewed the full content of the 22 CD-ROMs. Instead, Counsel for the Committee identified and printed approximately 117,000 pages of potentially relevant documents from the 22 CD-ROMs based solely on searches relating to the owner, category, and file name. *Id.* These approximately 117,000 pages then were reviewed by Counsel in order to identify those documents which truly

1   were relevant to the issues that the Committee was investigating. *Id.* Through this review,
2   Counsel for the Committee substantially trimmed down the set of potentially relevant documents
3   to approximately two boxes, which Counsel then provided to the Committee. *Id.*

4   In this manner, Counsel ultimately provided to the Committee for its review a
5   very small subset of the documents contained on the 22 CD-ROMs; this subset came exclusively
6   from the approximately two boxes of documents which the Committee's Counsel provided to the
7   Committee. *See* Kreissman Decl. at ¶ 5. Of the subset of documents provided to the Committee,
8   all of the documents which were determined to be relevant to the issues under investigation were
9   attached as exhibits to the Report. *Id.* ¶ 6. All of these documents have been produced to
10  Plaintiffs as part of the Special Litigation Committee's Report.

11  Here, in arguing they are entitled to the 22 CD-ROMs of emails, Plaintiffs point
12  to the Report itself and claim that it says the "SLC" reviewed all of the emails contained on the
13  CD-ROMs. Plaintiffs' Mot. at 2:8-9. However, as the Report itself clearly states: "<u>Counsel</u> for
14  the Committee reviewed these emails by category and file name and printed approximately
15  117,000 pages of documents from these CD-ROMS." Greenstein Decl., Ex. B at NDCA-ORCL
16  294810, n.1 (emphasis added). In fact, the Committee never even had access to the 22 CD-
17  ROMS nor the 117,000 pages printed from them; the Committee only had access to the small
18  subset of those documents that were provided by its Counsel. Equally importantly, even Counsel
19  for the Committee did not review the entire 22 CD-ROMs, but instead, confined the scope of the
20  review to a much smaller and more narrow sampling.

21  Plaintiffs will face no prejudice if they do not receive these CD-ROMs, as Oracle
22  already has reviewed the emails on these CD-ROMs for responsiveness under the Discovery
23  Plan. By contrast, Oracle would face profound prejudice, as the emails on the CD-ROMs
24  contain privileged communications and sensitive business information that has nothing to do
25  with this case.

26  Moreover, Plaintiffs' contention that they need <u>immediate</u> enforcement of the
27  Discovery Plan is similarly unfounded and suggests a false sense of urgency to the Court. On the
28  first page of the Chapter entitled "Data Analyzed," the Report identifies the existence of the 22

1  CD-ROMs.  The Report was produced to Plaintiffs in August 2005.  Moreover, as Plaintiffs
2  admit, they requested production of the 22 CD-ROMs at issue back on September 1, 2005, and
3  Defendants declined the request for good reason based on the facts detailed above.  *See*
4  Greenstein Decl. ¶ 2.  Plaintiffs have failed to explain why they waited until now, over six
5  months later and after depositions have commenced, to raise this issue with the Court and insist
6  upon immediate relief.

## III.    CONCLUSION

For the reasons stated above, Plaintiffs' request for immediate enforcement of the discovery plan should be denied.

Dated:  March 15, 2006

LATHAM & WATKINS LLP
  Peter A. Wald
  Michele F. Kyrouz
  Jamie L. Wine
  Patrick E. Gibbs

/s/

By:_____
  Michele F. Kyrouz
  Attorneys for Defendants ORACLE
  CORPORATION, LAWRENCE J.
  ELLISON, JEFFREY O. HENLEY,
  and EDWARD J. SANDERSON