1  LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2  MARK SOLOMON  151949)
  DOUGLAS R. BRITTON (188769)
3  VALERIE L. McLAUGHLIN (191916)
  GAVIN M. BOWIE (235532)
4  655 West Broadway, Suite 1900
  San Diego, CA  92101
5  Telephone:  619/231-1058
  619/231-7423 (fax)
6  marks@lerachlaw.com
  dougb@lerachlaw.com
7  valeriem@lerachlaw.com
  gbowie@lerachlaw.com
8        – and –
  SHAWN A. WILLIAMS (213113)
9  WILLOW E. RADCLIFFE (200087)
  ELI R. GREENSTEIN (217945)
10  JENNIE LEE ANDERSON (203586)
  MONIQUE C. WINKLER (213031)
11  100 Pine Street, Suite 2600
  San Francisco, CA  94111
12  Telephone:  415/288-4545
  415/288-4534 (fax)
13  shawnw@lerachlaw.com
  willowr@lerachlaw.com
14  elig@lerachlaw.com
  jenniea@lerachlaw.com
15  moniquew@lerachlaw.com

16  Lead Counsel for Plaintiffs

17            UNITED STATES DISTRICT COURT

18          NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY THE AMENDED PRETRIAL ORDER AND EXTEND THE JUNE 30, 2006 FACT DISCOVERY CUTOFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |

DATE:          June 20, 2006
TIME:         9:30 a.m.
COURTROOM:  The Honorable
                    Martin J. Jenkins

1

## TABLE OF CONTENTS

2

**Page**

3    I.    INTRODUCTION .................................................................................................1

4    II.   ARGUMENT .......................................................................................................4

5          A.    Legal Standard ......................................................................................4

6          B.    From the Outset Plaintiffs Have Actively and Diligently Pursued
                 Discovery from Oracle and Nonparties .................................................5
7
8                1.    Oracle Immediately Sought to Delay Production of Relevant
                       Documents .................................................................................5

9                2.    Oracle Failed to Comply with Two Separate Orders of the Court to
                       Produce Documents Responsive to Plaintiffs' Accounting
10                     Allegations ................................................................................7

11               3.    Defendants Failed to Produce Documents by the May 1, 2005
                       Deadline Prompting Plaintiffs' November 2005 Motion to Extend
12                     the Discovery Cutoff ..................................................................9

13               4.    Plaintiffs Continued to Aggressively Pursue Discovery After Filing
                       Their Motion to Extend February 24, 2006 Cutoff....................10
14
15               5.    Plaintiffs Aggressively Noticed Depositions; Defendants' Actions
                       Have Resulted in Further Delay.................................................10

16         C.    Despite Defendants' Assurances to the Contrary and Plaintiffs' Diligent
                 Pursuit of Resolution, Outstanding Discovery Issues Remain,
17               Necessitating an Extension of the June 30, 2006 Discovery Cutoff.....12

18               1.    Defendants Delayed Meeting and Conferring on Numerous
                       Outstanding Discovery Issues...................................................12
19
20               2.    After More than a Year of Discovery, Oracle Terminated Mayer
                       Brown, Causing Significant Delay ............................................12

21               3.    The Court Appointed a Special Master for Discovery Purposes ...........13

22               4.    Special Master Infante Authorized Further Discovery and
                       Requested Further Briefing on Two Crucial Discovery Issues .................14
23
24               5.    Discovery Cannot Be Completed Until Issues Regarding
                       Defendants' Failure to Preserve Documents Are Resolved.......................14

25               6.    Defendants Are Still Producing Documents the Court Ordered
                       Them to Produce More than a Year Ago ...................................15
26
27               7.    Defendants Have Failed to Produce Documents from Witness Files
                       at Least Seven Days in Advance................................................16

28

**Page**

8.    Production of Unreadable and Corrupt Documents Has Caused and Continues to Cause Additional Delay ........................................................ 17

9.    Defendants Failed to Timely Produce Source and Privilege Logs Causing Further Delay ................................................................................ 18

10.    Failure to Produce Documents Has Inhibited Plaintiffs' Ability to Do Expert Analysis Necessary to Prosecute Their Claims ...................... 19

D.    Significant Discovery Remains to Be Taken in the Case ...................................... 19

1.    Defendants Must Produce Additional Documents and Adequately Respond to Discovery ................................................................................ 19

2.    Multiple Key Depositions Must Be Taken ................................................ 20

3.    Third-Party Discovery ............................................................................ 20

III.    CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

Page

**CASES**

*Jackson v. Laureate, Inc.*,
     186 F.R.D. 605 (E.D. Cal. 1999) ...................................................................................4

*Johnson v. Mammoth Recreations, Inc.*,
     975 F.2d 604 (9th Cir. 1992) .........................................................................................4

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
     Rule 16............................................................................................................................4
     Rule 16(b) ...................................................................................................................1, 4
     Rule 26..........................................................................................................................18
     Rule 26(c).......................................................................................................................5
     Rule 30(b)(6)...............................................................................................................5, 6
     Rule 53............................................................................................................................4

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on June 20, 2006, at 9:30 a.m., or as soon thereafter as counsel may be heard, plaintiffs shall move this Court for an order modifying the Amended Pretrial Order and extending the June 30, 2006 discovery cutoff for non-expert discovery, as ordered by the Court on January 5, 2006.  This motion is brought pursuant to Fed. R. Civ. P. 16(b) and Civ. L.R. 16-2(d) and is based upon Plaintiffs' Notice of Motion and Motion to Modify the Amended Pretrial Order and Extend the June 30, 2006 Fact Discovery Cutoff; Memorandum of Points and Authorities in Support Thereof, the Declaration of Jennie Lee Anderson in Support of Plaintiffs' Motion to Modify the Amended Pretrial Order and Extend the June 30, 2006 Fact Discovery Cutoff ("Anderson Declaration"),[1] the proposed order submitted herewith, the pleadings and documents contained in the underlying record, and any other evidence submitted before or during the hearing on this matter.

As set forth herein, good cause exists to modify the discovery cutoff pursuant to Fed. R. Civ. P. 16(b).  Accordingly, plaintiffs respectfully request that the Court grant the request for an extension of the fact discovery cutoff consistent with the conduct described herein.

## I.     INTRODUCTION

Plaintiffs have no doubt actively pursued discovery.  To date, plaintiffs have taken at least 39 depositions, with many more depositions scheduled on the near horizon.  They have persistently demanded documents from Oracle Corporation ("Oracle" or the "Company") and nonparties. Plaintiffs have filed and prevailed on timely motions to compel in order to meet the Court's deadline for the completion of the non-expert discovery cutoff.  Two more motions are currently pending before the Court appointed Special Discovery Master, the Honorable Edward A. Infante (Ret.).  In pursuit of evidence, plaintiffs have uncovered what appears to be a knowing and in some instances intentional failure to preserve documents known to be relevant to plaintiffs' allegations.  On May 12,

---

[1]       All "Ex." references herein are to the Anderson Declaration, unless otherwise indicated.

1   2006, plaintiffs filed a Motion to Compel the Restoration of Backup Tapes and for Miscellaneous

2   Relief for the Destruction of Evidence.

3       Defendants delayed discovery from the start and on March 10, 2005 – three months after

4   discovery originally commenced – the Amended Order Setting a Discovery Plan ("Discovery Plan")

5   was entered, setting a deadline for the production of *all responsive documents* by May 1, 2005.

6   Defendants' response was more delay: blatantly ignoring the Court's production deadline; producing

7   the vast majority of documents well after the May 1, 2005 deadline.  Additional productions of

8   relevant documents occurred only upon plaintiffs' insistence of compliance and motions to compel.

9   For example, defendants resisted discovery of documents relating to the Special Litigation

10  Committee ("SLC") until ordered to comply in August 2005, and even then failed to produce

11  hundreds of pages of relevant SLC documents until September 2005.  Tens of thousands of pages of

12  documents arrived *nearly six months after the Court-ordered deadline* without any explanation as

13  to why these documents had not been produced by May 1, 2005.  More documents relating to defects

14  in Oracle's Suite 11i, clearly a principal issue in the case, were not produced until November 21,

15  2005, nearly seven months after the production deadline.  Indeed, late productions, including files

16  pertaining to witnesses that have already been deposed, continued with the newest productions

17  occurring as recently as April 7, 2006, April 27, 2006 and May 19, 2006.

18      Notwithstanding two Court orders regarding the production of documents relating to

19  plaintiffs' accounting claims, defendants failed to comply with both.  Remarkably, defendants seem

20  content, if not eager, to disregard the Court's orders and produce documents on their own timeline

21  without regard to discovery deadlines in the case.  On May 9, 2006, after plaintiffs demanded an

22  explanation for defendants' year-late production of documents, defendants boasted that they should

23  be "*commended for producing this information* . . . *without forcing Plaintiffs to request the*

24  *production affirmatively either by letter or motion*."[2]  Ex. 117.[3]  Defendants' production of

25

26

27  [2]      All emphasis is added unless otherwise indicated.

28

accounting documents remains woefully incomplete, however, and on May 25, 2006, plaintiffs filed their Motion to Compel Defendants' Production of Accounting Documents.

Even when defendants' burden was minimized by the Discovery Plan, which vastly limited the number of former and current Oracle employees whose files had to be searched, defendants still failed to meet production deadlines.  As recently as ***May 19, 2006***, defendants were still producing responsive documents from these files, which should have been produced a year earlier.

On May 22, 2006, pursuant to a motion to compel, Special Master Infante issued an order that the files of at least 14 more individuals, which plaintiffs had demanded in January of 2006, be produced.  Ex. 127.  When Oracle will produce these and other responsive documents due over a year ago, is anyone's guess.

In November 2005, plaintiffs came before the Court to request an extension of the discovery cutoff.  Oracle sought to limit any extension, falsely assuring the Court that all documents had been produced and that all Company witnesses would be available for depositions, "[n]o schedules to accommodate, no excuses."  Ex. 51.  Accordingly, in January 2006 Magistrate Judge Joseph C. Spero reset the discovery cutoff from February 24, 2006 to June 30, 2006.  However, some depositions noticed in January 2006 have still not occurred.

In February 2006, in the midst of several discovery disputes and scheduling depositions, Oracle abruptly fired its lawyers Mayer Brown Rowe & Maw LLP ("Mayer Brown").  Two months of delay followed as Latham & Watkins LLP ("Latham"), Oracle's new counsel, tried, but could not fit necessary hearings into its schedule.  Court-ordered meet and confers, which had taken place with Mayer Brown, had to be done again, this time with Oracle's new counsel who knew little about the facts and discovery to date.  Thus, discovery issues ripe for presentation to the Court in January 2006 were not heard until March 15, 2006.  Even then, they were not resolved.

---

[3]     In addition, defendants have brazenly ignored their duty to properly respond to interrogatories which seek basic information regarding the claims and defenses at issue in the case, including the identity of the deals they admit failed to close in 3Q01.

On April 6, 2006, the Court appointed a special master pursuant to Fed. R. Civ. P. 53 to resolve the remaining discovery issues presented to the Court on March 15, 2006 after more than a year of discovery.  The parties met with Special Master Infante for the first time on April 25, 2006.  Special Master Infante is currently resolving the open disputes and motions.

## II.     ARGUMENT

### A.     Legal Standard

Pursuant to Fed. R. Civ. P. 16(b), a pretrial scheduling order may be modified upon a showing of good cause.  *See* Fed. R. Civ. P. 16(b).  Good cause exists if the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quotations and citation omitted).  When judging the party's diligence, the Court may consider the moving party's diligence in assisting the Court in creating a workable Fed. R. Civ. P. 16 order, whether the moving party's inability to comply with the schedule is the result of circumstances not reasonably anticipated at the time of the scheduling conference, and whether the moving party promptly requested modification once it became apparent compliance with the scheduling order was not possible. *Jackson v. Laureate, Inc*., 186 F.R.D. 605, 608 (E.D. Cal. 1999).

Plaintiffs have diligently pressed for discovery from the beginning.  Plaintiffs could not have reasonably anticipated that defendants would refuse to comply with Court-ordered production dates or that defendants would fire their lawyers shortly after negotiating a discovery cutoff date. Oracle's representations to the Court that it had produced all documents, and that deponents would be available for depositions "no schedules to accommodate, no excuses" proved to be false.  Plaintiffs could also not have reasonably anticipated that discovery and recent admissions would disclose widespread destruction of evidence and failure to preserve documents.  Given these recent events, along with defendants' refusal to cooperate at every opportunity since the beginning of discovery, the discovery cutoff of June 30, 2006 cannot be met despite plaintiffs' diligence and should be extended.

### B.   From the Outset Plaintiffs Have Actively and Diligently Pursued Discovery from Oracle and Nonparties

Discovery commenced on December 7, 2004.  Plaintiffs immediately began serving both party and nonparty discovery.  On December 9, 2004, plaintiffs served their first set of document requests on defendants relating to Oracle's actual or forecasted revenue and sales, product defects, lost sales and accounting practices.  Exs. 1, 10.  Plaintiffs also issued approximately 50 third-party subpoenas to Oracle customers, auditors and securities analysts on December 9, 2004.  Ex. 2.  On December 15, 2004, plaintiffs issued an additional 50 subpoenas to relevant third-parties and notices pursuant to Fed. R. Civ. P. 30(b)(6).  Exs. 4, 6-7.  On December 30, 2004, plaintiffs served their first set of requests for admissions on defendants.  On January 10, 2005, plaintiffs issued their first set of interrogatories.  Ex. 8.[4]

### 1.   Oracle Immediately Sought to Delay Production of Relevant Documents

No sooner had discovery commenced, than defendants took steps to delay the production of plainly relevant information.  *See, e.g.*, Ex. 12.  On January 10, 2005 Oracle filed Defendants' Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) seeking to deter plaintiffs' nonparty discovery ("Plaintiffs should be required to allow this initial round of discovery with Defendants . . . before seeking the same material from third parties.").  Ex. 128.  On February 8, 2005, Magistrate Judge Spero stayed all nonparty discovery.  Ex. 11.

A month later, on March 10, 2005, Magistrate Judge Spero entered the Discovery Plan, specifically requiring production of documents related to Oracle Suite 11i, the slowing economy, lost deals and plaintiffs' accounting allegations.  In addition, the Discovery Plan set a deadline of ***May 1, 2005*** for defendants to complete their production of ***all responsive*** documents.  Ex. 16 at 3. Plaintiffs were not permitted to enforce nonparty subpoenas until the Court entered the March 10, 2005 Order, three months after the issuance of the subpoenas.

---

[4]   Plaintiffs served their second set of requests for admissions on defendants on January 20, 2006, their second set of interrogatories on defendants on March 21, 2006, and their third set of interrogatories on April 6, 2006.  Plaintiffs have also noticed numerous depositions and continue to meet and confer with nonparties regarding the production of documents.

1    Notwithstanding the explicit terms of the Discovery Plan, Oracle substantially ignored its

2    requirements.  For example, Oracle refused to produce witnesses pursuant to Fed. R. Civ. P.

3    30(b)(6).  Ex. 18.  ("Defendants do not intend to produce a 30(b)(6) witness to discuss these [11i]

4    issues").  In addition, as of March 23, 2005, 72 days had elapsed from the date of service and

5    defendants still had failed to respond substantively to plaintiffs' first set of interrogatories.  Thus, on

6    March 23, 2005, plaintiffs submitted the first letter brief seeking to compel the designation of a Fed.

7    R. Civ. P. 30(b)(6) witness, and seeking an order compelling long overdue responses to plaintiffs'

8    interrogatories.  Ex. 19.

9    In fact, it was not until June 21, 2005, *five months* after service of plaintiffs' first set of

10   interrogatories were served that Oracle responded, and even then their responses were deficient.  Ex.

11   122.  As of May 19, 2006, the responses remain incomplete with Oracle claiming "we will provide a

12   further supplemental response within a reasonable time."  Ex. 126.  Notably, Oracle initially sought a

13   protective order complaining that plaintiffs had issued too many nonparty subpoenas.  ("[p]laintiffs'

14   issued over *one hundred subpoenas*, which threaten to harm Oracle by burdening over seventy-nine

15   of Oracle's largest customers").  Ex. 5.  However, on June 21, 2005, when Oracle finally identified

16   some potential sales that did not close during 3Q01, it provided a list of *182 customers*.  These

17   customers apparently do not even include those alleged to have suffered severe implementation

18   delays due to bugs and defects in Suite 11i.  On April 25, 2006, pursuant to a motion to compel,

19   Special Master Infante granted plaintiffs leave to serve eighteen additional customer subpoenas

20   based on Oracle's interrogatory response.  Ex. 10 at 31-36.

21   Plaintiffs also demanded the SLC Report which the Company submitted to the Delaware

22   Chancery Court, explicitly waiving any applicable privileges.  Oracle refused to produce the report

23   despite the waiver.  On June 3, 2005, plaintiffs were forced to move to compel defendants'

24   production of the SLC Report and supporting documents.  On August 5, 2005, the Court agreed with

25   plaintiffs and found that Oracle had indeed waived the privilege over the SLC Report and granted in

26   part plaintiffs' motion.  Ex. 26.  Even then Oracle did not complete production of the SLC Report

27   until September 12, 2005 – a month after the Court's order.  Ex. 32.

28

1

2

      **2.**     **Oracle Failed to Comply with Two Separate Orders of the Court to Produce Documents Responsive to Plaintiffs' Accounting Allegations**

3

      The Court's March 10, 2005 Order required Oracle by May 1, 2005 to produce all documents

4

related to the debit memos in the complaint:

5

6

7

     Defendants shall produce all documents relating to (i) the alleged "On Account Cleanup" occurring in November 2000; (ii) the 46,000 debit memoranda; and (iii) the accounting treatment of those debit memoranda, including any audit trail, and all related accounting policies.

8

Ex. 16 at 2; *see also* Ex. 14 at 54.  To date Oracle has still not produced all of the Court-ordered

9

financial records.  Instead, Oracle pieced together a spreadsheet created by its lawyers, replete with

10

unexplainable accounting errors and omitting plainly relevant information.  On August 8, 2005,

11

plaintiffs submitted a letter brief to the Court seeking an order of compliance.  Ex. 27.  On August 8,

12

2005, plaintiffs also moved to compel responsive documents from nonparty auditors Arthur

13

Andersen LLP ("Arthur Andersen") and Ernst & Young LLP ("E&Y").  *Id.*[5]  On August 12, 2006,

14

Magistrate Judge Spero ordered further meet and confer and more briefing.  Ex. 28.  Months elapsed

15

without productions of responsive financial documents.[6]  On October 7, 2005, plaintiffs moved to

16

compel the production of defendants' accounting documents.

17

      On October 19, 2005, the Court ordered for a ***second time*** that Oracle produce documents

18

and information related to the debit memos alleged in the complaint.  Ex. 35.  This time the Court

19

was more specific requiring production within 30 days of 776 of the more than 46,000 debit memos,

20

_____

21

22

23

24

25

[5]     Plaintiffs withdrew their motion because Arthur Andersen agreed to produce all of the workpapers pertaining to Oracle's fiscal year 2001.  Ex. 47.  However, Oracle derailed the production, filing a motion for a protective order on Arthur Andersen's behalf on December 23, 2005.  Ex. 50.  On February 2, 2006 the Court entered an order directing Arthur Andersen to produce documents as agreed, but allowing Oracle, over plaintiffs' objections, to determine which of the Arthur Andersen documents should be produced.  Ex. 129.  Oracle produced approximately 50 pages of the two boxes of documents Arthur Andersen represented comprised all of the fiscal year 2001 workpapers.  Ex. 67.  This production is materially incomplete.

26

27

[6]     Defendants failed to produce documents despite plaintiffs' provision of a detailed list of relevant documents.  *See*, *e.g.*, Ex. 30.  Defendants also admitted that they only became "focused" on preparing and producing the accounting documents long ***after the Court's May 1, 2005 production deadline***.  Ex. 33.

28

1   including *all* electronic and paper source documents.  Exs. 34-35.[7]  The Court ordered further meet

2   and confers regarding the remaining debit memo transactions.  On January 11, 2006, instead of

3   complying with the Court order, Oracle stated that plaintiffs' accounting claims should be dropped

4   all together.  Ex. 57.  Needless to say, Oracle has not complied with the Court's Orders.  *See*, *e.g.*,

5   Exs. 52, 69.  While Oracle has produced documents purporting to be responsive, most are not.  On

6   April 25, 2006, many of the deficiencies in Oracle's production of accounting documents were

7   brought before Special Master Infante, who, upon plaintiffs' request, agreed that more briefing was

8   needed.  Ex. 110 at 38 ("And I don't have enough information . . . .  I would want a specific

9   motion.").  Moreover, as recently as April 27, 2006, defendants produced *thousands of pages* of new

10   data purporting to be responsive to the October 19, 2005 Order.  Ex. 112.  The April 27, 2006

11   production included documents requested in December 2004, and occurred *after* plaintiffs had

12   already taken the depositions of several key accounting witnesses which may now have to be

13   retaken.  Oracle's production is far from complete.  Key documents remain outstanding, including

14   documents relating to Oracle's treatment of customer payments related to debit memos, refunds to

15   customers, customer A/R balances and billing histories, credit memos, Customer Overpayments

16   account and notes written by Oracle's Credit & Collections Department.[8]  On May 25, 2006,

17   plaintiffs filed their Motion to Compel Defendants' Production of Accounting Documents.  The

18   motion details the outstanding issues regarding Oracle's production of accounting documents.  Ex.

19   131.

20

21

22

---

23   [7]     The Court also expressly granted plaintiffs leave to seek additional documents upon a good faith showing as to why those documents were needed.  Ex. 35.

24   [8]     Plaintiffs also demanded documents from the files of Oracle's Senior Accounts Receivable
25   Manager, Julie Chan.  Exs. 36, 74.  Chan is a key witness regarding allegations of improper use of unapplied cash in Account 25005 as alleged in the complaint.  Chan provided to Arthur Andersen
26   detailed information concerning the Company's "unapplied cash" account and "customer overpayments."  Ex. 130 ("Per discussion with Julie Chan . . . when cash is initially received by the
27   company and cannot be immediately identified it is entered into account 25005, customer overpayments.").  Oracle has not produced any documents from her files.

28

### 3.  Defendants Failed to Produce Documents by the May 1, 2005 Deadline Prompting Plaintiffs' November 2005 Motion to Extend the Discovery Cutoff

The Court imposed deadline of May 1, 2005 passed, however Oracle produced only a mere fraction of responsive documents in its possession.  Despite plaintiffs' diligence, defendants resisted discovery and delayed compliance with the Court-ordered deadline for months.  On September 12, 2005, for example, six months after the Court entered the Discovery Plan and four months after the Court's May 1, 2005 deadline for producing all responsive documents, Oracle produced 80,000 pages of admittedly relevant documents.

On November 7, 2005, defendants falsely represented that **all** documents responsive to the Court's March 10, 2005 Order had been produced with the exception of those accounting documents called for by the October 19, 2005 Order and the United States Securities and Exchange Commission ("SEC") documents.  Ex. 38.  This representation was untrue.  November 21, 2005, Oracle produced thousands of pages of additional documents responsive to the March 10, 2005 Order.  Ex. 42.  ("These are additional bug reports that we collected pursuant to the Court's March 10, 2005 Order . . . .").[9]

So crippling were these delays that, on November 28, 2005, plaintiffs filed their Notice of Motion and Motion to Modify the Amended Pretrial Order to Extend the February 24, 2006 Discovery Cutoff; and Memorandum of Points and Authorities in Support Thereof ("Motion to Extend February 24, 2006 Cutoff"), requesting that the fact discovery cutoff be extended to October 24, 2006.  On December 6, 2005, the Motion to Extend February 24, 2006 Cutoff was referred to Magistrate Judge Spero.

On December 27, 2005, the parties submitted a joint letter to the Court regarding their respective positions on the discovery cutoff.  Oracle assured plaintiffs and the Court that plaintiffs "*will have ample time to wrap up any remaining document issues and complete the depositions of*

---

[9]     Defendants also failed to produce communications with the SEC, which plaintiffs ultimately sought from nonparty Morrison & Foerster LLP, counsel in the Oracle derivative action, until December 2, 2005, although the documents were responsive to the March 10, 2005 Discovery Plan. Ex. 44.

1    *Oracle employees. . . . Months ago, Plaintiffs received all of the documents for every key witness*

2    *in this case.*"  Ex. 51.  Oracle also declared that it would make all witnesses within Oracle's control

3    available for deposition promptly upon being noticed by plaintiffs – "*No schedules to accommodate,*

4    *no excuses.*"  *Id.*  Based upon those representations, the Court extended the discovery cutoff, but

5    only to June 30, 2006.  It has now become clear that defendants' assurances were false, as they

6    continued to delay depositions and resist plaintiffs' efforts to move the case forward.  In truth,

7    plaintiffs had not received all of the documents and in fact a startling amount of critical evidence was

8    never preserved.  Ex. 121.

9          **4.**      **Plaintiffs Continued to Aggressively Pursue Discovery After**
                  **Filing Their Motion to Extend February 24, 2006 Cutoff**

10

11          On December 22, 2005, plaintiffs identified multiple missing forecasting reports and

12   requested the files of certain individuals to be searched.  Ex. 48.  Plaintiffs continued to press these

13   issues without any clear response from defendants.  Exs. 56, 58.  On January 17, 2006, plaintiffs

14   identified seven additional witnesses whose files should be searched.  Ex. 60.  Though plaintiffs had

15   already made a showing of why certain individuals' files should be searched, they made an even

16   greater and more detailed showing on January 18, 2006.  Ex. 63.  Defendants rejected plaintiffs'

17   good faith showing and request for responsive documents and produced nothing in response.

18   Plaintiffs were again forced to move to compel.  Ex. 91.  As discussed below, on May 22, 2006,

19   Special Master Infante ordered Oracle to produce documents from additional witnesses' files.
     Ex. 127.

20         **5.**      **Plaintiffs Aggressively Noticed Depositions; Defendants'**
                  **Actions Have Resulted in Further Delay**

21

22          Since January 2006, plaintiffs have noticed the depositions of more than 40 current or former

23   Oracle employees.  On January 17, 2006, plaintiffs noticed the depositions of eight former and

24   current Oracle employees, based on defendants' representation that they had produced all documents

25   for all key witnesses in the case.  Exs. 51, 61.  Despite the looming discovery cutoff, and promise to

26   the Court to make witnesses available, Oracle failed to confirm dates for several depositions for over

27   a month.  Ex. 76.  Many of the dates proffered by defendants were weeks, or even more than a

28   month, after the date originally noticed by plaintiffs.  Exs. 35-36, 66, 80, 82 .  Depositions noticed by

1    plaintiffs on February 22, 2006 and on March 1, 2006 were not confirmed for more than a month.

2    Exs. 102, 108; *see also* Exs. 76, 81, 86.  Indeed, the delays have been unreasonable and in many

3    instances simply due to counsel's failure to demonstrate that they even represent the witness.  *See,*

4    *e.g.*, Ex. 70.[10]

5         Other depositions have necessarily been continued in the face of defendants' admission that

6    they knowingly withheld or destroyed documents relating to the 46,000 debit memo transactions,

7    including documents specifically relating to debit memo transactions alleged in the compliant and in

8    the files of witness Ian Hatada, whose deposition plaintiffs noticed in February 2006.  Exs. 65, 72.

9    Though plaintiffs raised these glaring omissions in February, defendants have refused to produce

10   relevant documents from Hatada's files.  Instead, defendants claim that they are not required to

11   produce documents that relate to any of the more than 46,000 debit memo transactions under

12   $100,000 from witness files.  Exs. 75, 79.  This is inconsistent with the Discovery Plan and the logic

13   of the Court's October 19, 2005 Order.

14        Defendants have not completed their depositions either.  Oracle has unreasonably delayed the

15   scheduling of Confidential Witness ("CW") depositions they indicated six months ago they intend to

16   take.  *See, e.g.*, Exs. 39, 41.  Defendants indicated that they would notice and depose all CWs by

17   February 24, 2006.  Indeed, they have known their identities for more than a year.  However,

18   approximately thirteen CW depositions have yet to be taken.

19

20

21

22

---

23   [10]   Additional depositions have been delayed for a variety of reasons, and not due to plaintiffs'
     lack of diligence.  As a result of an illness in his family, Joe DiBartolomeo was unavailable for his

24   deposition on March 28, 2006.  Ex. 92.  The parties agreed to postpone the March 17, 2006
     depositions of Donald Klaiss and Kenneth Hamel ("Hamel") as a result of disputes regarding

25   defendants' failure to preserve documents.  Ex. 90.  Hamel did not take place until May 22, 2006,
     and Klaiss will not take place until June 15, 2006 – nearly four months after the originally noticed

26   date.  Nonparty Household International, Inc. has failed to proffer an appropriate witness to testify.
     Exs. 98, 100.  Defendants requested that plaintiffs continue the deposition of nonparty Eli Lilly and

27   Company ("Eli Lilly"), a deposition that was previously postponed at Eli Lilly's request.  Ex. 89.

28

**C.    Despite Defendants' Assurances to the Contrary and Plaintiffs'
Diligent Pursuit of Resolution, Outstanding Discovery Issues Remain,
Necessitating an Extension of the June 30, 2006 Discovery Cutoff**

Despite all assurances, Oracle failed to produce documents in its possession and failed to cure significant delays.  In fact, many discovery issues pending since January are only now being briefed before and decided by the Court.  Exs. 121, 131.  Moreover, revelations concerning Oracle's failure to preserve documents will no doubt cause significant delays as plaintiffs expect that, at a minimum, restoration of backup tapes will be required to cure such failure.

**1.    Defendants Delayed Meeting and Conferring on Numerous
Outstanding Discovery Issues**

On January 18, 2006, a month after plaintiffs had requested, the parties held an in-person meet and confer to resolve open disputes threatening the June 30, 2006 deadline.  These issues included: (1) defendants' refusal to search files of the additional witnesses; (2) defendants' failure to comply with this Court's October 19, 2005 Order; (3) defendants' refusal to agree to a sampling of debit memos under $100,000 for which underlying documents should be produced; (4) defendants' refusal to allow limited discovery on nonparties identified in defendants' Supplemental Response to Interrogatory No. 4; and (5) defendants' failure to produce any documents from the files of certain of its current and former employees, including Chan, the majority of the CWs and the Area Vice Presidents ("AVP").  Exs. 59, 62.  Plaintiffs' efforts to timely resolve these issues were abruptly derailed, however, when, without warning, Oracle fired its counsel.

**2.    After More than a Year of Discovery, Oracle Terminated
Mayer Brown, Causing Significant Delay**

On February 3, 2006, Oracle fired its counsel, Mayer Brown.  Although the parties had satisfied the Court's face-to-face meet and confer requirement with Mayer Brown on January 18, 2006, all of plaintiffs' issues were tabled until mid-March 2006 when new defense counsel, Latham, was prepared to meet face-to-face on the very same issues.  In addition, plaintiffs had previously requested a second in-person meet and confer on January 30, 2006, with respect to additional outstanding discovery issues, as required by Magistrate Judge Spero.  *See* Ex. 68.  This meet and confer also was substantially delayed as a result of Oracle's decision to change counsel.  The Court-ordered in-person meet and confer took place nearly six weeks later on March 10, 2006, resulting in

1   the parties' March 15, 2006 omnibus letter briefs of 17 outstanding discovery disputes to the Court.[11]

2   Ex. 91.  Oracle's lead trial counsel was unable to attend any hearing on the omnibus letters until

3   March 30, 2006, causing yet further delay of the resolution of outstanding discovery disputes.  Ex.

4   94.

### 3.   The Court Appointed a Special Master for Discovery Purposes

6           On March 30, 2006, the Court held a conference with the parties concerning the March 15,

7   2006 submissions.  The submissions addressed issues the parties were unable to resolve informally,

8   including the following 11 issues raised by plaintiffs:

9   - Defendants' failure to preserve and their destruction of relevant documents;

10  - Defendants' failure to produce complete documents seven days before deposition;

12  - Defendants' refusal to produce documents used to refresh deponents' memories;

13  - Defendants' refusal to search files of the additional witnesses identified by plaintiffs pursuant to the Discovery Plan;

15  - Defendants' failure to produce relevant forecast packages;

16  - Defendants' failure to timely produce privilege and source logs;

17  - Defendants' failure to produce a complete set of unredacted documents from the derivative actions;

18  - Defendants' refusal to allow limited discovery on nonparties identified in defendants' supplemental interrogatory responses;

20  - Defendants' failure to comply with this Court's October 19, 2005 Order;

22  [11]      In addition to substantive issues, plaintiffs were also forced to waste time rehashing with new
23  counsel discovery protocol established in this case months earlier.  For example, since deposition
     discovery in the case began, it has been the protocol for the noticing party to set forth a date in its
24  deposition notice, with the understanding that the date is a proposed date, subject to confirmation.
     This process greatly facilitated the noticing of depositions until Latham objected to the protocol in
25  February 2006.  Ex. 83.  While plaintiffs assured Latham that the parties had adopted this efficient
     approach months before, defendants refused to cooperate.  Ex. 84.  Despite plaintiffs' explanation
26  (again) at the in-person meet and confer on March 10, 2006, defendants insisted on bringing this
     issue before the Court in the March 15, 2006 letter briefs.  Ex. 91.  While this issue has since been
27  resolved, it unreasonably required nearly four weeks of meeting and conferring with new counsel to
     do so.  Ex. 104.

28

- Defendants' refusal to produce documents relating to a sampling of debit memos under $100,000 as directed by the Court; and

- Substantial delays to noticed depositions.

Ex. 91.

The Court did not rule on any of the pending discovery issues. Instead, on April 6, 2006, the Court issued its Order Appointing Master for Discovery Purposes, naming the Honorable Edward A. Infante (Ret.) as Special Master. Ex. 105. It was not until April 25, 2006, more than four months after plaintiffs demanded a meet and confer session, more than three months after the actual January 18, 2006 meet and confer and six weeks after the parties initially filed their letter briefs, that the parties met with Special Master Infante regarding these discovery issues.

### 4. Special Master Infante Authorized Further Discovery and Requested Further Briefing on Two Crucial Discovery Issues

On April 25, 2006, Special Master Infante heard argument on the issues raised in the parties' March 15, 2006 joint letter brief. Special Master Infante granted plaintiffs leave to issue 18 additional subpoenas regarding 182 lost deals that failed to close in 3Q01. Ex. 110 at 31-36. After taking the matter under submission, on May 22, 2006, Special Master Infante also ordered defendants to search the files of 14 additional witnesses identified by plaintiffs. Ex. 127. Because of the complex factual and legal issues at hand, Special Master Infante ordered additional briefing with respect to defendants' destruction of documents, including plaintiffs' request for restoration of Company backup tapes and sanctions, and deficiencies in defendants' production of accounting documents. Plaintiffs have submitted motions on both issues. Exs. 121, 131.

### 5. Discovery Cannot Be Completed Until Issues Regarding Defendants' Failure to Preserve Documents Are Resolved

Discovery has recently confirmed that Oracle failed to take the most basic steps to preserve the files of countless senior Oracle employees.[12] Defendants' knowing failure to preserve even a

---

[12] Defendants also delayed plaintiffs' diligent efforts to uncover these preservation issues by refusing to timely provide plaintiffs with a list of individuals whose files were preserved upon the filing of this lawsuit in March 2001, or to designate a deponent to testify about Oracle's efforts to preserve documents. Ex. 18 ("Defendants continue to take the position that a deposition on [preservation efforts] is both unnecessary and inappropriate"). Plaintiffs cannot determine the full

single document from the files of many Oracle AVPs and other crucial witnesses has already

prejudiced plaintiffs and caused significant delays.  Clearly, depositions cannot be completed until

defendants complete production, including documents from witness files, in compliance with the

Discovery Plan.  Plaintiffs filed their brief seeking restoration of Oracle's backup tapes and other

relief for destruction of evidence on April 12, 2005.  Ex. 121.  The matter will not be fully briefed

until sometime in June 2006 at the earliest.  Thereafter plaintiffs will need additional time to review

restored documents before depositions can proceed.  This cannot be accomplished before June 30,

2006.

### 6. Defendants Are Still Producing Documents the Court Ordered Them to Produce More than a Year Ago

At defendants' behest, Oracle was only required to search and produce responsive documents

from the files of a very limited number of current and former employees pursuant to the Discovery

Plan. Ex. 14 at 14; Ex. 16 at 1.  All responsive documents from these files were to be produced by

May 1, 2005.  Defendants did not comply. *See*, *e.g.*, Ex. 54.  For example, on January 11, 2006,

defendants admitted that they had not searched for responsive documents from the files of three of

the AVPs. Ex. 55.  On February 10, 2006, defendants produced "supplemental documents" from the

files of AVPs and additional forecasting documents.  Ex. 71.  On February 13, 2006, Oracle

produced two new boxes of accounting documents, more "supplemental documents" from the files

of AVP Robert Makheja and additional forecasting documents, all of which were ordered to be

produced no later than May 1, 2005. Ex. 73.  As detailed in Plaintiffs' Corrected Notice of Motion

and Motion to Compel the Restoration of Backup Takes and for Miscellaneous Relief for the

Destruction of Evidence, files of multiple other witnesses including AVPs have yet to be searched,

likely because defendants know they failed to preserve the files.  Ex. 121.

On March 3, 2006, defendants inexplicably produced hundreds of pages of responsive

documents regarding deals that did not close in the last month of 3Q01, including a highly relevant

---

extent of defendants' preservation violations until defendants submit to proper discovery on the
matter.

1  e-mail authored by a witness plaintiffs had already deposed.  Exs. 85, 87.  Even this belated

2  production was admittedly incomplete.  Defendants did not produce documents from the files of

3  Valerie Borthwick, Senior Vice President of Consulting, who reported directly to individual

4  defendant Edward "Sandy" Sanderson, until April 4, 2006.  Exs. 13, 16, 103.  Then, on April 7,

5  2006, Oracle produced hundreds of additional pages of documents from the files of at least **_ten_**

6  **_different individuals_**, all of whom were "Speakers," their direct reports and/or named in the

7  Discovery Plan as someone whose files should be searched.[13]  Exs. 13, 106.

8           On April 26, 2006, defendants produced documents for which they could not even verify the

9  source.  Ex. 111.  Plaintiffs demanded an explanation, and on May 12, 2006, defendants finally

10  verified that the documents were from the files of "Speaker" Jennifer Minton's direct report.  Exs.

11  13, 16, 116, 125.

12          At the May 4, 2006 deposition of Charles Kendig, Oracle's Vice President of Quality

13  Assurance, defendants produced documents from the files of Oracle EVP Ronald Wohl, a direct

14  report to individual defendant Lawrence Ellison.  Defendants did not produce a CD containing these

15  documents or a source log until May 12, 2006, however.  Exs. 13, 16, 119, 120.  Indeed, as recently

16  as **_May 19, 2006_**, Oracle produced additional documents from the files of Minton's direct report.

17  Exs. 13, 124.

18                    **7.       Defendants Have Failed to Produce Documents from Witness
                              Files at Least Seven Days in Advance**

19
          Defendants are required to produce all relevant documents from witnesses' files at least

20
    seven days prior to their depositions, pursuant to the Discovery Plan.  Defendants have failed, and in

21
    some cases, flatly refused to comply.

22

23

24
    _____

25  [13]      The April 7, 2006 production included documents from the files of Company spokesperson
    Stephanie Aas; individual defendant Executive Vice President ("EVP") Sanderson; EVP Sergio

26  Giacolletto; Senior Vice President ("SVP"), Michael Rocha; VP of Business Planning, Richard
    Blother; EVP Safra Catz; SVP of New Markets, Shari Simon; EVP Frank Varasano; VP of Finance,

27  Thomas Williams; Senior Finance Director, David Winton; and EVP of Applications, Ronald Wohl.
    Exs. 106, 119.

28

On March 23, 2006, for instance, plaintiffs noticed the depositions of nine witnesses, including Julie Cullivan, for April 24, 2006.  Ex. 97.  Ms. Cullivan was a Vice President of Sales Consulting at Oracle during the relevant time period.  As of April 21, 2006, defendants had still not produced documents from Cullivan's files, forcing plaintiffs to continue her deposition.  Ex. 109.  Cullivan's deposition was rescheduled for May 24, 2006, an entire month after the originally noticed date.  On May 18, 2006, defendants informed plaintiffs of their contention that Cullivan's files contain no responsive documents.  Ex. 123.

Similarly, defendants unreasonably failed to produce documents from the files of Charles Kendig, whose deposition was noticed on February 17, 2006 for March 27, 2006.  Ex. 78.  On March 17, 2006, Oracle advised plaintiffs that due to "scheduling and technical issues," Oracle would be unable to produce his files seven days in advance.  Exs. 93, 95.  Defendants then unilaterally cancelled the deposition on March 22, 2006 forcing plaintiffs to file a Request for Immediate Enforcement of Section II.B. of the Amended Order Setting a Discovery Plan to Order Defendants' Timely Production of Deponents' Files on March 30, 2006.  Exs. 96, 113.  As a result, the Kendig deposition was delayed until May 4, 2006.

Plaintiffs noticed the deposition of Oracle's AVP Michael Cochran on January 17, 2006 for February 23, 2006.  Ex. 61.  The deposition was rescheduled for March 8, 2006.  However, defendants refused to confirm whether they had exhausted all efforts to locate documents for Cochran prior to the deposition.  Ex. 87.  Plaintiffs offered to go forward with the deposition, as long as the defendants agreed to hold the deposition open in the event additional documents relating to Cochran were subsequently produced, but defendants refused.  Ex. 87.  Defendants later admitted that his documents were destroyed.  Now, the Cochran deposition will not occur until June 16, 2006.  Ex. 116.

### 8. Production of Unreadable and Corrupt Documents Has Caused and Continues to Cause Additional Delay

From the beginning, Oracle has repeatedly produced corrupted, unreadable electronic files, requiring time-consuming correspondence and duplicate productions.  *See, e.g.*, Exs. 23-24.  Shortly after defendants began producing documents in May 2005, plaintiffs notified them that the

1    production contained multiple corrupted and unreadable files.  Exs. 21-22.  On June 20, 2005, more

2    than six weeks after the May 1, 2005 deadline, defendants produced some corrected CDs.  Ex. 25.

3    Additional corrected CDs were not produced until October 20, 2005.  Ex. 32.  On February 10, 2006,

4    defendants produced replacement forecasting documents, indicating only that the documents had

5    been previously produced in an improperly converted format.  Ex. 71.  On February 13, 2006,

6    defendants produced another CD with "technical problems" that had to be replaced.  Ex. 77.  Three

7    other disks had to be replaced on March 29, 2006 because the documents had been improperly Bates

8    labeled.  Ex. 132.  Cumulatively, these problems have delayed discovery and hampered plaintiffs'

9    ability to fully assess the inadequacies of defendants' production.

10           **9.     Defendants Failed to Timely Produce Source and Privilege
                      Logs Causing Further Delay**

11           Defendants have also consistently failed to timely produce adequate privilege and source logs

12   in violation of the Discovery Plan.  *See*, *e.g.*, Ex. 54.  Defendants did not produce a source log for

13   documents Bates labeled NDCA-ORCL 396791-443256 until December 19, 2005.  Ex. 46.  On

14   January 11, 2006, defendants indicated they would not be producing a source log (despite the

15   Court's order) for documents produced responsive to the October 19, 2005 Order.  Ex. 55.  Not until

16   March 27, 2006, did defendants provide a source log for what purports to be the entirety of their

17   productions to date.  Ex. 99.  In fact, plaintiffs have yet to receive a source log for more than 100,000

18   pages of documents.  Ex. 114.  Defendants also failed to produce a privilege log for documents

19   produced as part of their Fed. R. Civ. P. 26 initial disclosures and documents previously produced in

20   the related derivative cases for more than a year, despite plaintiffs' multiple requests, and in

21   violation of the Discovery Plan.  Ex. 91.  Many of defendants' privilege logs do not state adequate

22   grounds for privilege, and plaintiffs have demanded a meet and confer.[14]

23

24   _____

25   [14]       Also deficient is E&Y's privilege log, which defendants produced as a result of a claim of
     privilege being asserted by Oracle.  Ex. 43.  On February 14, 2006, defendants indicated they would
26   provide a supplemental privilege log, but no supplemental log was provided until March 27, 2006,
     and the log is still deficient as it fails to identify who at E&Y was privy to the information.  Exs. 88,
27   99.

28

## 10.   Failure to Produce Documents Has Inhibited Plaintiffs' Ability to Do Expert Analysis Necessary to Prosecute Their Claims

Plaintiffs' experts cannot prepare reports until fact discovery is substantially complete.  As demonstrated above, setting aside the whole preservation issue, at a minimum, defendants have yet to produce accounting documents as ordered by the Court, they refuse to produce documents from the files of key accounting witnesses and AVPs, and they have yet to produce critical forecasting documents, including volumes of regularly created forecasting reports.  Plaintiffs cannot be expected to commit to a deadline for expert discovery when fact discovery is so far from completion due to defendants' delays.

### D.   Significant Discovery Remains to Be Taken in the Case

The issues set forth above have caused there to be a substantial amount of discovery that must take place before the fact discovery cutoff.  The pending preservation and accounting motions make completion by June 30, 2006 impossible.  The following is merely a summary of remaining discovery:

#### 1.   Defendants Must Produce Additional Documents and Adequately Respond to Discovery

Defendants' document production is still incomplete.  Plaintiffs also anticipate that as a result of the accounting and preservation motions currently pending, defendants will be required to produce additional documents.  Additional time will be necessary for defendants to do this, including the restoration of the backup tapes, and plaintiffs will require more time still to review, and evaluate these documents.  Further, the parties must still work out a proposed sampling of debit memos as discussed by the Court in the October 18, 2005 hearing on plaintiffs' motion to compel.  Ex. 34 at 18:11-13; *see also* Ex. 45.

Moreover, as discussed above, Special Master Infante recently granted plaintiffs leave to issue 18 additional nonparty subpoenas regarding lost deals identified in defendants' responses to Interrogatory No. 4 of Plaintiffs' First Set of Interrogatories, and on May 23, 2006 ordered defendants to produce documents from the files of 14 additional witnesses.  Ex. 110 at 31-36; Ex. 127.  Defendants' responses to Interrogatory No. 4 also remain insufficient and the parties are

1   continuing to meet and confer on this issue as well as deficiencies in defendants' responses to other

2   interrogatories.

### 2.   Multiple Key Depositions Must Be Taken

4          The parties still need to take numerous depositions, including the depositions of many of the

5   CWs, the individual defendants and securities analysts.   Plaintiffs are also likely to identify

6   additional witnesses as they review defendants' belated and seemingly open-ended production of

7   documents, and once their motion to restore the backup tapes is resolved.  Plaintiffs fully anticipate

8   using the maximum 65 deposition limit set forth in the pretrial order, and will seek leave of Court to

9   notice additional depositions.

### 3.   Third-Party Discovery

11          Once defendants adequately respond to Interrogatory No. 4 and the follow-up interrogatories,

12   plaintiffs will also need time to serve subpoenas, meet and confer with nonparties, review documents

13   produced and possibly file additional motions to compel.   In addition, plaintiffs believe the

14   production of Arthur Andersen audit workpapers now in the custody and control of Oracle is

15   materially incomplete, and have noticed a deposition pursuant to Fed. R. Civ. P. (30)(b)(6).

16   Plaintiffs have also noticed the depositions of nonparties, and several third parties have yet to

17   produce documents called for under the Discovery Plan.   Additional motion practice may be

18   necessary.

19

20

21

22

23

24

25

26

27

28

1

### III.     CONCLUSION

2    Based on the foregoing delays in discovery, plaintiffs respectfully request a modification of

3    the Court's Amended Pretrial Order and an extension of the June 30, 2006 deadline for non-expert

4    fact discovery pending resolution of plaintiffs' Motion to Compel the Restoration of Backup Tapes

5    and for Miscellaneous Relief for Destruction of Evidence, and the plaintiffs' Motion to Compel

6    Defendants' Production of Accounting Documents.

7    DATED:  May 26, 2006                         Respectfully submitted,

8                                                LERACH COUGHLIN STOIA GELLER
                                                   RUDMAN & ROBBINS LLP
9                                                SHAWN A. WILLIAMS
                                                 WILLOW E. RADCLIFFE
10                                               ELI R. GREENSTEIN
                                                 JENNIE LEE ANDERSON
11                                               MONIQUE C. WINKLER

12

13                                                       /s/ Jennie Lee Anderson

14                                                    JENNIE LEE ANDERSON

15                                               100 Pine Street, Suite 2600
                                                 San Francisco, CA  94111
16                                               Telephone:  415/288-4545
                                                 415/288-4534 (fax)
17
                                                 LERACH COUGHLIN STOIA GELLER
18                                                  RUDMAN & ROBBINS LLP
                                                 MARK SOLOMON
19                                               DOUGLAS R. BRITTON
                                                 VALERIE L. McLAUGHLIN
20                                               GAVIN M. BOWIE
                                                 655 West Broadway, Suite 1900
21                                               San Diego, CA  92101
                                                 Telephone:  619/231-1058
22                                               619/231-7423 (fax)

23                                               Lead Counsel for Plaintiffs

24   T:\CasesSF\Oracle3\BRF00030449 2nd.doc

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

      s/ Jennie Lee Anderson
JENNIE LEE ANDERSON

LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:jenniea@lerachlaw.com

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jenniea@lerachlaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com cheryl.grant@pillsburylaw.com

- **Reed R. Kathrein**
  reedk@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Michele F. Kyrouz**
  michele.kyrouz@lw.com

- **Nicole Lavallee**
  nlavallee@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com e_file_sf@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com sandradiluzio@paulhastings.com

- **Willow E. Radcliffe**
  willowr@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Darren J. Robbins**
  e_file_sd@lerachlaw.com

- **Sanna Rachel Singer**
  sanna.singer@pillsburylaw.com

- **Mark Solomon**
  marks@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Shawn A. Williams**
  shawnw@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Monique Winkler**
  MoniqueW@lerachlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Dorian Daley**
500 Oracle Parkway
Redwood City, CA 94065

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Brian P. Murray**
Murray Frank & Sailer LLP
275 Madison Avenue
Suite 801
New York, NY 10016