# EXHIBIT A

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-09888-MJJ (JCS) **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF ACCOUNTING DOCUMENTS** |

On May 25, 2006, Plaintiffs submitted a motion to compel Defendants' production of accounting documents.  Defendants' opposition to the motion was submitted on June 6, 2006. Plaintiffs' reply was submitted on June 12, 2006.   The Special Master granted Defendants' request to file a sur-reply, which was submitted on June 16, 2006.  On June 22, 2006, Plaintiffs submitted a response to Defendants' sur-reply.  A hearing on the motion was held July 10, 2006. The Special Master has considered the papers and the arguments of counsel and rules as follows:

<u>Background</u>

*The Revised Second Amended Complaint for Violation of the Federal Securities Laws*

On March 9, 2001, Plaintiff Local 144 Nursing Home Pension Fund, on behalf of itself and all persons who publicly traded securities of Oracle Corporation between December 15, 2000 and March 1, 2001 ("the Class period"), filed a complaint for violation of the federal securities laws (Section 10(b) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder) against Defendants Oracle Corporation ("Oracle" or "the Company") and Lawrence J. Ellison ("Ellison") arising out of Defendants' dissemination of false and misleading statements concerning Oracle's operations and prospects for Q3 2001.

On October 11, 2002, Plaintiffs filed a second amended complaint.  The complaint included, for the first time, allegations concerning Oracle's accounting during the second quarter

of fiscal year 2001. *Id.* at ¶¶ 8, 35-44.  On December 9, 2002, Plaintiffs filed a revised second amended complaint ("RSAC"), which added additional facts and witnesses relating to the accounting allegations.  Greenstein Decl., Ex. 1.  Plaintiffs allege that in order to mask the fact that sales of Suite 11i were not growing as expected in the second quarter of 2001 and to give investors the impression that sales were accelerating, Defendants created phony sales invoices and improperly recognized revenue from past customer credits and overpayments that Oracle had held in reserve (its "unapplied account") without informing its customers between 1991 and 2000. *Id.*, Ex. 1 at ¶¶ 8, 36(c).  Plaintiffs allege that on November 17, 2000, Oracle executed more than 46,000 sham invoice transactions (debit memos) in order to "clean up" the account, converting the reserved overpayments to revenue totaling approximately $228 million.[1] *Id.*, Ex. 1 at ¶¶ 8, 37.  As a result of Oracle's improper conversion of customer credits to revenue, on December 14, 2000, Oracle falsely reported 2Q01 revenues, causing the Company's stock price to increase.[2] *Id.*, Ex. 1 at 8, 43.  Plaintiffs allege that Oracle's recognition of $228 million as revenue was a violation of Generally Accepted Accounting Principles ("GAAP"), because Oracle had not earned the revenue it was reporting and was not entitled to retain the overpayments it had previously received from its customers. *Id.*, ¶ 42.  "Oracle owed its customers refunds for that amount." *Id.*

### Plaintiffs' Requests for Production of Accounting Documents

On December 9, 2004, after the stay on discovery was lifted, Plaintiffs propounded upon Defendants their first set of requests for production of documents. *See* Greenstein Decl., Ex. 2. The requests sought, *inter alia*, all documents relating to:  credit or debit memos created in November 2000 (request 32); the disposition of unassigned cash receipts assigned to any Oracle reserve account, including but not limited to account 12601 and/or customer overpayments (request 36); any effort or actions reconcile Oracle's "On Account" or "unapplied cash,"

---

[1] "Debit memos" are essentially fake invoices that were created by Oracle to make it look like the customer overpayments were actually payments for legitimate invoices.  RSAC, ¶ 37(c).  "Each of the debit memos lists a 'credit' in the amount of the overpayment and clearly states 'Revenue' at the start of the line item." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004).  "Each of the credit line items offsets a debit of the same amount that is identified as a 'Receivable,' which reveals that the funds apparently moved from the receivable to the revenue account … [i]n other words, the amounts were improperly recognized as revenue." *Id.*

[2] Plaintiffs allege that a witness, Confidential Witness ("CW") 46, reported that Oracle's 2Q01 reported revenues and earnings were false when made and were the result of the improper conversion of more than $228 million of customer cash "On Account" to revenue in 2Q01.  RSAC, ¶¶ 36-38.  Additional corroboration of is provided by CW 49. *Id.*, ¶ 41

including unapplied cash account 25005 (request 39); any measures taken from October 2002 to the present relating to refunding customers, adjusting or reconciling invoices, or adjusting credit analyst notes for all customers (request 40); the November 17, 2001 debit memos and/or unapplied cash (request 42); transactions in Oracle's 25005 account occurring between November 1, 2000 and November 30, 2000 and between October 11, 2002 and March 31, 2003 (request 43); and any "On Account" clean up or reconciliation of Oracle's "On Account" during the relevant time period and/or between October 2001 and March 31, 2003 (request 44). *Id.*

On January 18, 2005, Defendants provided Plaintiffs with responses to the requests. Greenstein Decl., Ex. 2. Subject to and without waiving numerous objections, Defendants agreed to produce "responsive, non-privileged documents for the period June 1, 2000 to March 1, 2001 that relate to debit memoranda identified in the [RSAC] as occurring November 17, 2000." *Id.* On February 17, 2005, Oracle produced a number of documents in response to Plaintiffs' requests. [3] Glennon Decl., Ex. 7.

*The Discovery Plan*

Pursuant to Magistrate Judge Spero's instructions, the parties filed a proposed Joint Discovery Plan on February 23, 2005. Greenstein Decl., Ex. 8. With respect to accounting documents, Plaintiffs sought production of documents related to Defendants' improper accounting for customer overpayments, including but not limited to Oracle's accounting policies, internal accounting systems, general ledger, monthly credit memo registers, unassigned cash receipts, miscellaneous offset reports, accounts receivable reserves, and efforts to reconcile Oracle's 'on account' or 'unapplied cash' and corresponding journal entries." *Id.*, Ex. 8 at 11. Plaintiffs also sought discovery of facts concerning Oracle's 2002 internal investigations, including Oracle's 2002 "clean up" of documents relating to Plaintiffs' accounting allegations. *Id.*, Ex. 8 at 12. Defendants, on the other hand, argued that discovery should focus upon the alleged On Account cleanup in November 2000, the 46,000 debit memos (including the historical records of those debit memos) and the accounting treatment of each memo (including

---

[3] As part of its production, Oracle produced accounting documents, including: (1) internal and external e-mail communications regarding the creation of the computer program that effected the debit memo project, refunds to customers, and the "on account" clean up generally; (2) screenshots from Oracle's accounts receivable program showing the offsetting debits, credits, refunds and payments for a variety of customers; (3) a variety of reports, including Billing Histories, Summary Trial Balance sheets, Segment Values Listing, Sales Journals, Receipt Histories and the Invoice Register; (4) copies of refund checks; (5) accounts payable check request forms; and (6) a copy of Oracle's presentation to the SEC. Greenstein Decl., Ex. 7.

any instance in which a debit memo was posted to the general ledger), and documents relating to the decision to perform the On Account Cleanup. *Id.*, Ex. 8 at 14-16.

On March 1, 2005, Judge Spero held a day-long discovery conference with the parties regarding the Discovery Plan. Greenstein Decl., Ex. 3. Judge Spero recognized that he was making some "rather gross calls" about the scope of discovery. *Id.*, Ex. 3 at 16:9-15. With respect to the accounting documents, Judge Spero first noted as follows:

> I guess I don't understand why the plaintiffs think they need all of these accounting documents. . . . This isn't, you know, broad based revenue recognition problems in a variety of areas. This is, on November 17th you executed 46,000 false invoices. . . . [to] convert money from unapplied to revenue in the amount of $228 million. I don't understand why you need all of their accounting documents. ... You have asked for all their policies, documents, system documents, general ledger, monthly credit memos, miscellaneous reports, accounting reserves, not to mention 2002 internal.

*Id.*, Ex. 3 at 41:24 – 43:16. After argument by Plaintiffs' counsel, the following colloquy occurred:

> THE COURT: Well, if you get every piece of paper or every record that is on these 46,000 debit memos or any piece of paper that is related to those 46,000 debit memos, why isn't that enough?
> [Plaintiffs' Counsel]: I didn't understand that to be the position.
> [Defendants' Counsel]: That is our position. That's exactly what we are offering.
> [Plaintiffs' Counsel]: So that includes the general ledger
> THE COURT: It includes pieces of the general ledger. ...
>      *      *      *
> THE COURT: With respect to the 46,000 debit memos that are alleged in the complaint, I would want them to produce every piece of paper or every computer record that relate to that. . . . . [T]he transactions that they arise from, if they go up a level or down a level, they have to trace those transactions so you have a complete history of those transactions.

*Id.*, Ex. 3 at 44:2-9 - 45:7-12. With respect to the 2002 internal investigation and whether it related to the 46,000 debit memos, after extensive argument regarding *inter alia* whether the November 2001 transactions had anything to do with investigation into Oracle's bad debt reserve account (Account 12601), Judge Spero determined that because Plaintiffs would be getting the audit trail for the debit memos, Plaintiffs would not be allowed discovery into "the 2002, 3, 4, 5 investigation directly." *Id.*, Ex. 3 at 46:16 – 54:7. However, Judge Spero also stated to Plaintiffs' counsel that:

> You are going to look at every piece of paper that has to do with these debit memos up and down and if it goes through the accounts that you suspect it is going through, well,

then, that will be one thing. If it isn't, then it isn't... if it turns out that none of this money passes through the 12601 account, then why isn't that the answer? ... Okay. We will find out.

*Id.*, Ex. 3 at 44:3-19. Judge Spero concluded by stating that:

So with respect to the accounting allegations, the subject matter is all of the documents regarding the on account clean up in 2000 – in the relevant time period, all the documents regarding or related to the 46,000 debit memos and all documents related to the accounting treatment of those memos.

*Id.*, Ex. 3 at 44:20-25.

On March 10, 2005, Judge Spero issued an Amended Order Setting a Discovery Plan ("the Discovery Plan"). Greenstein Decl., Ex. 4. Section I of the Discovery Plan addresses the scope of discovery. Section I.A provides that for purposes of responding to written discovery requests, the "Relevant Time Period" shall be from June 1, 2000 to June 1, 2001. Documents created outside the Relevant Time Period that refer to events within the Relevant Time Period must also be produced. Discovery Plan, § I.A. With respect to certain topics related to discovery between the parties, the Discovery Plan sets forth guidelines, including that Defendants shall produce:

all documents relating to (i) the alleged 'On Account Cleanup' occurring in November 2000; (ii) the 46,000 debit memoranda; and (iii) the accounting treatment of those debit memoranda, including any audit trail, and all related accounting policies.

*Id.*, Ex. 4 at § I.C.4. The Court ordered Defendants to produce all responsive documents by May 1, 2005. *Id.*, Ex. 4 at § II.A.

On May 10, 2005, Defendants produced additional documents in response to the Discovery Plan. Glennon Decl., Ex. 12. Defendants' production included a spreadsheet containing information for each of the 46,000 debit memos, including the debit memo amount and the corresponding credit amount. Myers Decl., ¶ 11.

*The October 19, 2005 Order*

On August 5, 2005, Plaintiffs sent a letter to Judge Spero requesting an order compelling Defendants to produce all documents relating to the 46,000 debit memos. Glennon Decl., Ex. 13. Plaintiffs took issue with the spreadsheet produced by Oracle and asserted that Defendants had failed to produce underlying or supporting documents relating to the debit memos, including, invoices, all journal entries and correspondence with customers regarding overpayments. In

response, Defendants asserted that they had produced all of the documents contemplated by the Discovery Plan. *Id.*, Ex. 14.  On August 12, 2005, the parties participated in another conference with Judge Spero.  Glennon Decl., Ex. 15.  Further meet and confer efforts failed to resolve the parties' dispute. *See* Glennon Decl., Exs. 16-22.

On October 7, 2005, the parties submitted a joint letter to the Court regarding Defendants' production of accounting documents in response to the Discovery Plan.  Glennon Decl., Ex. 25.  In the joint brief, Plaintiffs asserted that: (1) Plaintiffs are entitled to the complete audit trail[4] (paper and electronic source documents and materials) regarding all 46,000 debit memos; (2) the spreadsheet Defendants were offering to produce (which Defendants asserted would include preexisting electronic data about the history and accounting impact of the debit memos) did not include the source documents relating to the transactions themselves, which Defendants had agreed to produce; (3) Defendants refused to discuss the production of standard Oracle reports, ledgers and journals that would disclose the audit trail and accounting treatment of the debit memos from inception to finalization in Oracle's public financial records via the general ledger ("e.g., account status reports, receipt history reports, and billing history reports"); and (4) Plaintiffs proposed and Defendants rejected a compromise whereby Oracle would produce all documents relating to and underlying 10,000 of the debit memos. *Id.*

Defendants asserted that: (1) some categories of documents (e.g., copies of checks sent by customers) would be extremely expensive to locate and produce and would be of minimal relevance; (2) the best way to proceed was to have Oracle continue with its plan to produce data concerning the underlying transactions, and Plaintiffs can review that data and see if they need additional information; (3) Oracle was prepared to start a rolling production of accounting data for all transactions underlying the debit memos with a dollar value of $ 1 million or more *and* a random sample of debit memos, generated using an optimal allocation methodology, from all remaining debit memos (50% of the total dollar value of all debit memos); (4) Oracle was offering to produce certain information that is stored only as electronic data; (5) the debit memos were simply accounting entries that are recorded and stored electronically, and there are no

---

[4] Plaintiffs sought documents reflecting the entirety of each debit memo transaction (from the time of Oracle's invoice to the customer through any credits or refunds to the customer), including purchase orders, contracts, invoices, debit memos, credit memos, bank statements (including deposits, adjustments and refund information), checks, memoranda, account status reports, receipt history reports, deposited check reports, billing history reports, adjusted registers, information on all general ledger accounts, information on all general ledger activity and reconciliations.  Glennon Decl., Exs. 14 and 25.

separate documents that can be produced; (6) Plaintiffs were requesting documents that were not retained by Oracle in the normal course of business, and discarded long before the filing of the lawsuit; and (7) certain categories of documents would be unduly burdensome to produce. Glennon Decl., Ex. 25.

A hearing regarding the dispute was held before Judge Spero on October 18, 2005. Greenstein Decl., Ex. 6. Judge Spero began the hearing by noting that:

> My concerns here are as follows: Number one, I'm concerned that during the course of setting up the very detailed discovery plan in this case, the defendants argued and obtain[ed] a narrower scope of discovery in exchange for a commitment that all of the documents regarding all of these debit memos, including all the underlying documents would be committed. And that, to my mind, is clear as day in the transcript that that [sic] was the position taken at that time. And you are changing your position.
>
> Now, there may be good reasons to change your position, maybe I'll buy that, but one of the things that occurs to me is … why shouldn't I just hold you to your position?

*Id.*, Ex. 6 at 4:13 -5:1. Judge Spero, however, also stated that:

> I'm never going to believe that every canceled check, that every canceled check on 10,000 debit memos are relevant to this case . . . You are never going to be able to convince me of that. So doesn't that mean that that we need some dramatic compromise? You both have to answer those questions.

*Id.*, Ex. 6 at p. 5:6-11. Prior to hearing oral argument, Judge Spero proposed the following order:

> That the defendants would produce all information stored in electronic form regarding all [46,000] debit memos in all underlying transactions …; that the defendants produce all documents [not in electronic form] regarding the … debit memos in the underlying transactions only for debit memos over $ 1 million …; and that lastly, if after reviewing all this evidence the plaintiffs can convince me that there is a good reason why they should get more of the hard documentation regarding … the underlying transactions … then we'll take that up at that time.

*Id.*, Ex. At 6:16 – 7:3. Addressing the possibility of a further request for accounting documents by Plaintiffs, Judge Spero observed that:

> Well, it depends on your showing. You are welcome if you make a good showing, you are unwelcome if you make a bad showing. Seriously, at some point it becomes such minutia. And I'm not reluctant to have them spend a thousand hours preparing what the Court has suggested in terms of the electronic data, I am reluctant to have them spend 45,000 hours or 25,000 hours preparing. It would take some more significant showing to do that.

Greenstein Decl., Ex. 6 at 14:22 – 15:7. After hearing further argument by the parties, Judge Spero ordered that Oracle must produce with 30 days:

1.     All electronic information, including electronic images of documents, relating to the debit memos at issue in this case and all transactions that underlie those debit memos, where the debit memos are in amounts the debit memos at issue in this case and all transactions that underlie those debit memos, where the debit memo are in amounts of $100,000 or greater.

2.     All paper documents relating to the debit memos at issue in this case and all transactions that underlie those debit memos, where the debit memos are in amounts of $1,000,000 or greater.

Glennon Decl., Ex. 27; *see also* Greenstein Decl., Ex. 6 at 19:10-18.   There are 776 debit memos in excess of $100,000; these debit memos account for $528 million of the $692 million total of the debit memos created on November 17, 2000. *See* Myers Decl., ¶ 8.  The October 19, 2005 order was made "without prejudice to Plaintiffs right to come to this Court and seek additional production of documents and electronic information related to the debit memos, upon a showing of good cause." Glennon Decl., Ex. 27.  With respect to the remaining debit memos, Judge Spero stated that "if you guys can work out a sampling on them, that would be great," and that "I think you proposed a sampling at some point."[5]  Greenstein Decl., Ex. 6 at 18:11-13.

In November 2005, Defendants produced more than 100 boxes of hard copy documents relating to the transactions underlying the debit memos worth $1 million or more. Myer Decl., ¶ 12; Glennon Decl., Ex. 28.  Defendants spent more than $1 million on outside lawyers and accountants in connection with this project, and a team of Oracle in-house accounting personnel worked full time on this project for a month. Myers Decl., ¶ 12.  Defendants have also produced an excel spreadsheet, in native format, containing electronic-stored data regarding the 776 debit memos (that have a dollar amount in excess of $100,000).  Myers Decl., ¶¶ 13-14; *see* Glennon Decl., Ex. 29.  The spreadsheet or "script output" provides a complete accounting history for the debit memos, organized according to debit memo and their underlying transactions, contemplated by the October 19, 2005 Order. *See* Myers Decl. at ¶¶ 13-14.  Defendants spent over 3,600 hours producing the script output, which currently is 152,237 lines in length and 29 columns wide. *Id.*  With the script output, Plaintiffs can trace the accounting treatment of all the transactions before and after each of the debit memos were created on November 17, 2000. *Id.*

---

[5] On November 15, 2006, Plaintiffs proposed that, "in accordance" with Judge Spero's "direction" regarding a sampling of debit memo transactions under $100,000, Oracle produce all underlying documents for 600 of such debit memos to be selected by Plaintiffs.  Glennon Decl., Ex. 31.  In response, Defendants asserted that this request was premature. Id., Ex. 32  Plaintiffs reiterated their request a few weeks later. *Id.*, Ex. 33.  The parties met and conferred regarding this "proposed sampling" on January 18, 2006. *See id.*, Ex. 34. Further discussions did not resolve the parties' dispute regarding debit memos transactions under $100,000.

The script output extracts and consolidates data from numerous electronic records (i.e., the accounts receivable system, including receipt registers and billing and receipt history reports). *Id.* On February 13, 2006 and February 16, 2006, Defendants produced additional accounting documents. Greenstein Decl., Ex. 10. On April 27, 2006, Defendants produced thousands of pages of additional spreadsheets, including "call notes" related to customer overpayments and unapplied cash items. *Id.*, Ex. 11.

Legal Standard

"Any party may serve on any other party a request to produce … any designated documents … which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Whether material is relevant is … a function of the relationship of the data to the central accusations of [the] lawsuit." *U.S. ex rel. Fisher v. Network Software Associates,* 217 F.R.D. 240, 245 (D.D.C. 2003) (citation omitted).

"All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." Fed. R. Civ. Proc. 26(b)(1). "Rule 26(b)(2)(iii) expressly limits discovery where the burden or expense of the proposed discovery outweighs its likely benefit." *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528 (D.Nev. 1997). "The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence. *Id.* at 528-529 (citations omitted). "Just because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome." *Id.* at 529 (citations omitted).

Discussion

Plaintiffs' motion seeks an order compelling Defendants to produce documents that they assert relate to the accounting allegations in the RSAC.[6]  More specifically, Plaintiffs seek:  (1) to enforce the Court's March 10, 2005, and October 19, 2005 orders by compelling Defendants to produce all documents relating to the 46,000 debit memos and the underlying transactions as previously agreed upon by Defendants on March 1, 2005, including eight specific categories of documents; (2) an order permitting discovery into Oracle's improper transfers of tens of millions of dollars in customer overpayments and unapplied cash to its bad debt reserve and other accounts (including $20 million in transfers in 2Q01) to inflate Oracle's earnings; and (3) an order compelling defendants to produce documents related to Oracle's 2002 Clean Up and investigation regarding customer overpayments and unapplied cash.

**Production of All Court-Ordered Documents**
**Related to the 46,000 Debit Memo Transactions**

.      Plaintiffs assert that Judge Spero already has ordered discovery of all documents relating to the 46,000 debit memo transactions, including the "accounting treatment" of the debit memos, the "audit trail" to track the history of the underlying transactions and all records related to the "On Account Clean Up of U.S.A. Data" in November 2000 and that Defendants have failed to produce entire categories of information that were clearly ordered under the Court's March 10, 2005 and October 19, 2005 discovery orders.  Plaintiffs have compiled a chart of specific documents that they assert Defendants have not produced and which are necessary to trace the "accounting treatment," "audit trail" and underlying transactions related to the debit memos. *See* Greenstein Decl., Ex. 69.

As an initial matter, whereas the Discovery Plan required Defendants to produce "all documents [defined by Judge Spero during the March 1, 2005 hearing as "every piece of paper or every computer record"] relating to … the 46,000 debit memoranda and … the accounting treatment of those debit memoranda, including any audit trail, and all related accounting policies," the October 19, 2005 order, albeit implicitly, reduced Defendants' obligations with respect to the production of documents related to the debit memos.  The October 19, 2005 requires Defendants, with respect to the 776 debit memos in excess of $100,000, to produce *all* electronic information relating to the debit memos and all transactions that underlie those debit

---

[6] Contrary to Defendants' assertion, Plaintiffs' motion is not an improper motion for reconsideration.  The October 19, 2005 order was made without prejudice to Plaintiffs' bringing future motions to compel production of accounting documents beyond those identified in the order.

memos.  With respect to debit memos in excess of $1 million, Defendants must produce *all* paper documents relating to such debit memos and all transactions that underlie those debit memos. The October 19, 2005 order, however, does not require Defendants to produce documents regarding the more than 45,000 debit memos that do not exceed $100,000.  Accordingly, Plaintiffs' assertion that the prior orders require that Defendants produce "all documents relating to the 46,000 debit memo transactions" is inaccurate.

Defendants obligation to produce documents relating to the debit memos is dependent upon either: (1) the documents falling within the scope of documents ordered produced by Judge Spero on October 19, 2005; or (2) with respect to information not encompassed by the October 19, 2005 order, Plaintiffs establishing the relevance of the additional information, and that the likely benefit of the additional information outweighs the burden or expense the additional discovery will impose upon Defendants.

Documents relating to the 46,000 debit memo transactions are relevant to Plaintiffs' accounting allegations.  In the October 19, 2005 order, Judge Spero necessarily found that the burden or expense of discovery regarding all 46,000 outweighed its likely benefit.  In the present motion, Plaintiffs have again failed to establish that the burden or expense to Defendants of discovery regarding all 46,000 is outweighed by its likely benefit to Plaintiffs.  Accordingly, Plaintiffs' motion to compel production of all documents relating to the 46,000 debit memo transactions is DENIED.

### Documents Responsive to the Court's Orders

Plaintiffs contend that Defendants have failed to produce entire categories of information that were clearly ordered under the Court's March 10, 2005 and October 19, 2005 discovery orders.  Plaintiffs assert that Defendants have not produced four categories of documents necessary to trace the "accounting treatment," "audit trail" and underlying transactions related to the debit memos:  (1) refunds and credit memos, (2) cash receipt history, including unapplied cash reports, (3) electronic "comment" fields and customer "notes," and (4) summaries, reconciliations and account level data. *See* Greenstein Decl., Ex. 69.

Viewed together, the March 10, 2005 order and the October 19, 2005 order require Defendants to produce all electronic information relating to:  (1) the 776 debit memos valued at more than $100,000; (2) the accounting treatment of the 776 debit memos; and (3) the transactions that underlie the 776 debit memos.  With respect to debit memos in excess of $1

million, Defendants must produce all paper documents relating to any the debit memos, the accounting treatment of the debit memos and all transactions that underlie the debit memos.   In other words, Defendants must produce *all* electronic information relating to the 776 debit memo transactions valued at more than $100,000, and *all* papers documents relating the debit memo transaction valued at more than $1 millions.  Categories of transactional documents responsive to the prior orders include:  (a) all electronic information relating to credit memos and refunds issued to customers in connection with debit memo transactions valued at more than $100,000; (b) all electronic cash receipt information for debit memos in excess of $100,000 and any such paper documents for debit memos in excess of $1 million; (c) all electronic information relating to account-level data, summaries and reconciliations for debit memos in excess of $100,000 and any such paper documents for debit memos in excess of $1 million; (d) all electronic notes and comments related to debit memos valued at greater than $100,000; (e) for debit memos in excess of $100,000, all of the electronic source documents Oracle provided to the SEC in support of Oracle's defenses, and any such paper documents for debit memos in excess of $1 million; and (f) Oracle's A/R Trial Balance Aging reports and related documents concerning A/R reserves and write offs for the relevant period.

Plaintiffs contend that Defendants' litigation spreadsheet is not sufficient under Fed.R.Civ.P. 26.  Plaintiffs assert that the underlying data purportedly comes from actual source documents and business records, which must be produced as they were kept in the ordinary course of business (e.g., refund documents, billing histories, account analyses, receipt histories, unapplied cash information).  *See* Greenstein Decl., Ex. 24 at 2.  Plaintiffs assert that Defendants cannot withhold the actual documents, databases and source information from plaintiffs and produce an incomplete and doctored spreadsheet that omits and alters key data, in lieu of standard documents and reports that it could easily produce.

Defendants assert that the script output provides Plaintiffs with an accounting trail (or history) for each of the debit memos contemplated by the October 19, 2005 order.  Defendants assert that the script contains all of the relevant data Plaintiffs seek in their document requests, i.e., it depicts the accounting history in their entirety.[7]  *See* Myers Decl., ¶ 14, Exs. D and E.

The pertinent question for purposes of the present motion is whether the spreadsheet

---

[7] Defendants assert that the script extracts data from various areas in Oracle's database (i.e., the accounts receivable system, including receipt registers, and billing and invoice history reports) and that the script output consolidates this data in one location, organized according to debit memo.  Myers Decl., ¶¶ 15-26.

provides Plaintiffs with *all* electronic information required by the prior orders.  The spreadsheet was created by Oracle in good faith and is a helpful tool to be used in connection with this case.  Defendants' production of the spreadsheet, however, does not satisfy their obligation to produce *all* electronic information relating to the pertinent debit memo transactions.  In addition to the spreadsheet, Defendants must produce all electronic information, including electronic images of documents, from Oracle's database relating to the relevant debit memo transactions as it was kept in the ordinary course of business.

Accordingly, Plaintiffs' motion to compel production of documents ordered produced by the March 10, 2005 and October 19, 2005 orders is GRANTED IN PART.  Consistent with the foregoing, Defendants must produce *all* electronic information relating to the 776  debit memo transactions that exceed $100,000 and *all* paper documents relating to the debit memo transactions that exceed $1 million.

### Ernst & Young and Arthur Andersen

Plaintiffs contend that Defendants have failed to produce documents related to Ernst & Young LLP's ("Ernst & Young") investigation and "testing" of the debit memos and Arthur Andersen ("Arthur Andersen") audit during the class period.

Documents related to Ernst & Young's investigation and "testing" of the debit memos and Arthur Andersen audit during the class period have been the subject of a number of a prior motions or argument heard by Judge Spero.  *See* Glennon Decl., Exs. 10, 13, 14, 15, 37 38, 39, 40.  Plaintiffs' present motion with respect to these issues is an improper motion for reconsideration.  Accordingly, Plaintiffs' motion to compel production of documents related to Ernst & Young's investigation and "testing" of the debit memos and Arthur Andersen's audit during the class period is DENIED.

### A Sample of Debit Memos Valued at Under $100,000

Plaintiffs assert that Defendants have refused to comply with Judge Spero's instruction to produce a sample of debit memos valued at under $100,000.  Defendants dispute whether Judge Spero ordered Defendants to produce a sample of debit memos valued at under $100,000 and assert that the benefit of any such production would be substantially outweighed by the burden and expense that would be imposed upon Oracle.

The October 19, 2005 order does not require production of any information related to debit memos valued at under $100,000.  A review of the transcript of the October 18, 2005

hearing before Judge Spero does not compel the conclusion that Defendants were ordered to produce documents related to a sample of the debit memos valued at under $100,000.

Documents relating to the debit memos valued at less than $100,000 are relevant to Plaintiffs' accounting claims. The question for the Special Master is whether the benefit of a production of documents relating to a sample of the debit memos valued at less than $100,000 outweighs the burden of any such production on Oracle. The October 19, 2005 order determined that the burden of searching for documents related to all of the debit memos was unduly burdensome. More than 45,000 of the debit memos are valued at less than $100,000, including the specific transactions alleged in the RSAC. The total value of these 45,000+ smaller transactions ($164 million) is minor in comparison to the total value of the 776 debit memos that exceed $100,000 ($528 million of the $692 million). The RSAC alleges facts related to a number debit memos valued at less than $100,000, including transactions involving Household International, Eli Lilly and Phillips Petroleum. Greenstein Decl., Ex. 1. at ¶ 38. There is no question that all of the transactions underlying the 46,000 debit memos are directly relevant to Plaintiffs' claims. However, as Judge Spero recognized, the burden and expenses associated with producing vast amount of transactional data that may be several years old outweighs the relevancy this information.

Nonetheless, Judge Spero expected that the parties would meet and confer regarding the production of documents relating to a sampling of debit memos valued at less than $100,000. Having considered the parties' contentions and arguments regarding the debit memos, it is hereby ordered that Plaintiffs are authorized to identify up to 150 debit memo transactions and that Defendants shall produce all electronic information relating to this additional sampling of November 17, 2000 debit memos valued at less than $100,000. The Special Master is satisfied that the likely benefit of electronic information relating to 150 debit memos valued at less than $100,000 outweighs the burden on Oracle of producing such information.

Accordingly, Plaintiffs' motion to compel Defendants to produce documents related to a sample of debit memos valued at under $100,000 is GRANTED IN PART. Defendants shall produce all electronic information relating to 150 November 17, 2000 debit memos valued at less than $100,000 and all transactions that underlie those debit memos.

### Documents Related to Oracle's Transfers of Customer Overpayments to Oracle's Bad Debt Reserve

Plaintiffs assert that discovery has demonstrated that Oracle overstated its 2Q01 earnings by at least an additional $20 million by improperly transferring customer overpayments (Account 25005) to Oracle's Bad Debt Reserve (Account 12601) between August 2000 and August 2002, directly impacting the Class Period. *See e.g.*, Greenstein Decl., Exs. 17 at NDCA-ORCL 313783, 42 and 50. Plaintiffs assert that documents relating to Oracle's improper transfers of unapplied cash to the bad debt reserve are relevant to Plaintiffs' allegations that Oracle improperly used customer overpayments and unapplied cash to inflate Oracle's earnings in 2Q01, citing paragraphs 35-41 of the RSAC.[8] Defendants contend that Plaintiffs are not entitled to documents relating to Oracle's transfer of money to its bad debt reserve accounts.

The primary question with respect to the requested discovery it is relevant to a claim or defense of a party. Fed.R.Civ.P. 26. Plaintiffs' assertions to the contrary, Plaintiffs' RSAC does not generally allege that Defendants improperly used customer overpayments and unapplied cash to inflate Oracle's earnings in 2Q01. Plaintiffs instead specifically allege that Defendants' created debit memos on November 17, 2001 converting customer overpayments to revenue totaling $228 million, and that as a result of this specific improper conversion of customer overpayments, Oracle falsely reported 2Q01 revenues. RSAC, ¶¶ 8, 36-43. The RSAC does not refer to Oracle's bad debt reserve account, the transfer of customer overpayments to Oracle's bad debt reserve account or any impact that transfers from the customer overpayment account to Oracle's bad debt reserve account had on Oracle's 2Q01 revenues. *Id.*

Plaintiffs, however, offer evidence that some of the November 17, 2000 debit memos valued at more than $100,000 passed through Oracle's bad debt reserve account. *See* Greenstein Reply Decl., Ex. E [Deposition of Thomas Williams] at 150 and Ex. K. Documents relating to transfers of customer overpayments and unapplied cash to Oracle's bad debt reserve which can also be linked to the November 17, 2000 debit memos are relevant to Plaintiffs' accounting claims. In other words, to the extent that the history of a November 17, 2001 debit memo transaction includes a transfer to the Oracle's bad debt reserve account, documents relating to the transfer are relevant to Plaintiffs' accounting allegations. Even assuming that the documents did not directly relate to Plaintiffs' accounting claims, the documents are relevant to the subject

---

[8] Plaintiffs seek an order compelling Defendants to produce "all documents and communications relating to Oracle Corporation's transfers of customer overpayments (Account 25005) and unapplied cash (Account 12018) to Oracle's bad debt reserve write off accounts, including Account 12601, from the period June 2000 through the present." *See* Plaintiffs' Proposed Order Granting Plaintiffs' Motion to Compel Defendants' Production of Accounting Documents at ¶ 3.

matter of Plaintiffs' accounting claims, and Plaintiffs have established good cause for the production of such documents.

Accordingly, Plaintiffs' motion to compel production of documents related to Oracle's transfers of customer overpayments to Oracle's bad debt reserve account is GRANTED IN PART.  Defendants shall produce all documents and communications relating to Oracle Corporation's transfers of customer overpayments (Account 25005) and unapplied cash (Account 12018) to Oracle's bad debt reserve write off accounts, including Account 12601, that relate to (can also be linked to) the November 17, 2000 debit memos valued at more than $100,000.

### Documents Related to the 2002 "Clean Up"

Finally, Plaintiffs seek production of documents related to Oracle's 2002 "Clean Up" of customer overpayments and unapplied cash.  Plaintiffs assert that the 2002 Clean Up, commenced shortly after Plaintiffs filed their second amended complaint adding accounting allegations, was an attempt to conceal the previous November 2000 Clean Up, the fraudulent impact of the debit memo transactions, the improper bad debt reserves transfers and the overall unapplied cash scheme to hide customer overpayments.  *See* Greenstein Decl., Exs. 29, 44, 52-63, 67 and 68.  Plaintiffs seek an order compelling Defendants to produce "all documents and communications relating to any investigation, clean up, project or reconciliation relating to Oracle's unapplied cash, bad debt reserve, or customer overpayment accounts after November 17, 2000, including but not limited to any investigation relating to Account 25005, Account 12601, or Account 12018 and any debit memos, credit memos or refunds associated with those investigations.  *See* Plaintiffs' Proposed Order Granting Plaintiffs' Motion to Compel Defendants' Production of Accounting Documents at ¶ 4.

Plaintiffs' accounting allegations are focused upon the November 17, 2000 debit memos, not Oracle's 2002 Clean Up.  As previously stated, documents related to credit memos and refunds that were issued to customers in connection with debit memos are relevant to Plaintiffs' accounting claims and must be produced.  Documents related to bad transfers that can be connected to debit memos in excess of $100,000 also must be produced.  Plaintiffs' request for production of all documents related to Oracle's 2002 Clean Up, however, is overbroad.

Accordingly, Plaintiffs' motion to compel production of all documents related to Oracle's 2002 Clean Up is DENIED.

Order

For the reasons set forth above,

1.      Plaintiffs' motion to compel production of all documents relating to the 46,000
        debit memo transactions is denied.

2.      Plaintiffs' motion to compel production of documents ordered produced by the
        March 10, 2005 and October 19, 2005 orders is granted in part.  Defendants must
        produce *all* electronic information relating to the 776  debit memo transactions
        that exceed $100,000 and *all* paper documents relating to the debit memo
        transactions that exceed $1 million.[9]  In addition to Oracle's spreadsheet,
        Defendants must produce all electronic information from Oracle's database
        regarding the relevant debit memo transactions as it was kept in the ordinary
        course of business.

3.      Plaintiffs' motion to compel Defendants to produce documents related to a sample
        of debit memos valued at under $100,000 is granted in part.  Defendants shall
        produce all electronic information relating to 150 November 17, 2000 debit
        memos valued at less than $100,000 (selected by Plaintiffs) and all transactions
        that underlie those debit memos.

4.      Plaintiffs' motion to compel production of documents related to Ernst & Young's
        investigation and "testing" of the debit memos and Arthur Andersen's audit
        during the class period is denied.

5.      Plaintiffs' motion to compel production of documents related to Oracle's transfers
        of customer overpayments to Oracle's bad debt reserve account is granted in part.
        Defendants shall produce all documents and communications relating to Oracle
        Corporation's transfers of customer overpayments (Account 25005) and
        unapplied cash (Account 12018) to Oracle's bad debt reserve write off accounts,

---

[9] Categories of information and documents to be produced include:  (a) all electronic information relating to credit memos and refunds issued to customers in connection with debit memo transactions valued at more than $100,000; (b) all electronic cash receipt information for debit memos in excess of $100,000 and any such paper documents for debit memos in excess of $1 million; (c) all electronic information relating to account-level data, summaries and reconciliations for debit memos in excess of $100,000 and any such paper documents for debit memos in excess of $1 million; (d) all electronic notes and comments related to debit memos valued at greater than $100,000; (e) for debit  memos in excess of $100,000, all of the electronic source documents Oracle provided to the SEC in support of Oracle's defenses, and any such paper documents for debit memos in excess of $1 million; (f) Oracle's A/R Trial Balance Aging reports and related documents concerning A/R reserves and write offs for the relevant period.

including Account 12601 which can also be linked to the November 17, 2000 debit memos valued at more than $100,000.

6.    Plaintiffs' motion to compel production of all documents related to Oracle's 2002 Clean Up is denied.

7.    Defendants shall provide Plaintiffs with the electronic information and documents required by this order no later than August 31, 2006.

IT IS SO ORDERED.

Dated: July 17, 2006

_____/s/Edward A. Infante_____
Hon. Edward A. Infante (Ret.)
Special Master