# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MAURICIO A. LEON, M.D., *Plaintiff-Appellant,* v. IDX SYSTEMS CORPORATION, a Vermont Corporation, *Defendant-Appellee.* | No. 04-35983 D.C. No. 03-01158 MJP |
| MAURICIO A. LEON, M.D., *Plaintiff-Appellee,* v. IDX SYSTEMS CORPORATION, a Vermont Corporation, *Defendant-Appellant.* | No. 05-35426 D.C. No. 03-01158 MJP OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
June 9, 2006—Seattle, Washington

Filed September 20, 2006

Before: David R. Thompson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima

11689

**COUNSEL**

Kenneth G. Kieffer, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim LLP, Tacoma, Washington, for the plaintiff-appellant/appellee.

Angelo J. Calfo, Yarmuth Wilsdon Calfo PLLC, Seattle, Washington, for the defendant-appellee/appellant.

**OPINION**

TASHIMA, Circuit Judge:

Dr. Mauricio Leon ("Leon") worked as the director of medical informatics at IDX Systems Corporation ("IDX"). After he was placed on unpaid leave, Leon sued IDX, alleging violations of the anti-retaliation provision of the False Claims Act, Title VII, the Americans with Disabilities Act ("ADA"), and Washington state law. He also filed a complaint with the United States Department of Labor ("DOL"), claiming that IDX violated the whistleblower-protection provision of the Sarbanes-Oxley Act ("SOX"). The district court dismissed all of Leon's claims with prejudice after determining that Leon despoiled evidence by deleting 2,200 files from his IDX-issued laptop computer during the pendency of the litigation. The court also imposed a $65,000 monetary spoliation sanction. Leon appeals the sanctions and IDX cross-appeals the district court's decision not to enjoin, on res judicata grounds, the DOL's proceedings against IDX. We affirm the district court's spoliation sanctions, reverse its res judicata determina-

tion, and remand the case to the district court to reassess whether it should enjoin the DOL proceedings.

The district court's jurisdiction arose under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction over Leon's appeal and IDX's cross-appeal under 28 U.S.C. § 1291.

## BACKGROUND

Leon was hired by IDX in 2001. In mid-2002, Leon began complaining of mismanagement of the "Standards-Based Interoperable Guideline System" ("SAGE") project, claiming there were irregularities in the financing and reporting of the federally-funded project. On April 25, 2003, after putting Leon on unpaid leave, IDX brought an action for declaratory relief, seeking to establish that it could terminate Leon's employment without violating the anti-retaliation provisions of the False Claims Act, SOX, and the ADA. On May 20, 2003, Leon filed his own action, which included claims for retaliation under the False Claims Act, violations of Title VII, the ADA, and state law claims. Leon's complaint alleged that IDX fired him in retaliation for his whistle-blowing activities.

On April 30 and May 7, 2003, IDX's attorneys sent letters to Leon's attorney, requesting that Leon return the IDX-issued laptop to IDX. On May 8, 2003, Leon's attorney responded in writing by asking if Leon could keep his laptop for the duration of an audit of the SAGE project. On May 9, IDX's counsel stated that Leon could keep the laptop for the specific purpose of responding to the auditors. The April 30 and May 9 letters cautioned that Leon should take care to preserve all data; one letter specifically warned that Leon should "ensure no data on the laptop is lost or corrupted so as to avoid any possible despoliation of evidence." The audit was completed in July, and by October, counsel for both sides were negotiating the return of the laptop. IDX's computer forensics expert received the laptop on February 5, 2004.

After conducting a forensic analysis, IDX's expert reported that all data in the hard drive's unallocated space had been intentionally wiped, and also reported that the computer had been used to view and download pornography. The expert concluded that more than 2,200 files had been deleted. After receiving this information, IDX moved for dismissal of Leon's action based on Leon's intentional spoliation of evidence.

In his deposition, Leon admitted deleting entire directories of personal files after he was placed on leave by IDX in April 2003. He also stated that the week before he shipped the computer back to IDX he wrote a program to "wipe" any deleted files from the unallocated space in the hard drive. He also admitted that some of these files included pornographic content.

The district court held an evidentiary hearing on September 8, 2004, at which Leon did not appear. The court commented at the hearing that Leon's behavior was "very egregious" and, from the written documents, "appears to be without remorse." The court found Leon's written testimony "to be extremely evasive" and that Leon "can't answer a straight question that's being posed."

After considering the parties' additional video submission of Leon's deposition, the court granted IDX's motion to dismiss on September 30, 2004. The district court relied on its "wide range of inherent powers" in issuing the sanction. It first discussed Leon's duty to preserve the data on the laptop, holding that Leon "knew or should have known that he was in possession of evidence relevant to pending litigation by April 30, 2004."[1] It then discussed the extent of prejudice to

---

[1]The district court's reference here to "April 30, 2004" appears to be a typographical error. The quoted sentence clearly is referring to the letter of April 30, 2003, to Leon's counsel, which is mentioned in the sentence immediately preceding the quoted sentence.

IDX as a result of the spoliation, observing that "a wealth of 'personal' material . . . could be relevant to Dr. Leon's ADA and employment-related claims," such as communications with health care providers or with realtors regarding his relocation from Seattle. "[B]ecause of Dr. Leon's actions there is no way of knowing what might have been stored on the laptop's hard-drive and no reliable way of recreating what might have been there." Accordingly, the court concluded that the deletion and wiping of the files "severely prejudice[s]" IDX.

The court also found that Leon acted in bad faith. While Leon claimed that his wiping of relevant evidence was merely negligent because he meant to wipe only "personal" information, "Dr. Leon did not have the authority to make unilateral decisions about what evidence was relevant in this case." The court concluded "that the extraordinary measures to which Dr. Leon resorted to destroy evidence relevant to this litigation merit a finding of bad-faith."

Turning to the choice of sanction, the court found that dismissal was the appropriate sanction because a ruling excluding evidence would be "futile, as the most salient evidence has been destroyed," a jury presumption in favor of the defense would be ineffectual, and a fine would not "arm the Defense with evidence to counter Plaintiff's claim." Regarding the monetary sanction of $65,000, which was IDX's submitted cost of investigating and litigating the spoliation issue, the court "reviewed this information and [found] the charges and costs listed therein to be reasonable."

On October 14, 2004, IDX filed its motion to enjoin, under the All Writs Act, the DOL's administrative proceeding. At that time the DOL[2] was still conducting its investigation of IDX. The district court denied this motion, finding a lack of

---

[2] While the parties refer to the agency as the "DOL," the specific agency within the DOL responsible for the SOX investigation is the Occupational Safety and Health Administration ("OSHA").

identity or privity between Leon and the DOL; consequently, it held that res judicata did not bar the agency proceedings against IDX. The court subsequently denied IDX's motion for reconsideration of this decision, adhering to its view that privity was not satisfied and observing that SOX gives OSHA the right to petition for review of a settlement agreement, thus showing that OSHA is not a "mere proxy" for the complaining party. The court noted that the agency proceedings were still investigative, and that res judicata principles apply only to adjudicative proceedings.

On June 20, 2005, the DOL issued its findings and order, in which it concluded that "[t]here is reasonable cause to believe that [IDX] has violated the [SOX] Act." The DOL did not refer to the district court's dismissal of Leon's claims, but seemed to incorporate the spoliation findings when it limited the amount of Leon's back wages because there was "reasonable cause to believe that [IDX] would have fired [Leon] on June 11, 2004, regardless of his protected activities, based on its discovery that [Leon] had downloaded pornography on a company computer." The DOL ordered IDX to pay Leon back wages, compensatory damages, and reasonable attorneys' fees; provide a neutral employment reference for Leon and expunge negative employment records; post the "enclosed Notice to Employees in a conspicuous place;" "[c]omply with all the terms and provisions of the Notice;" and refrain from future retaliation against Leon. The enclosed Notice stated, *inter alia*, that IDX "agrees it will not discharge or in any manner discriminate against any employee" who files a complaint under SOX.[3]

---

[3]Presumably because of the DOL's findings and order, summarized above, the parties do not pursue the investigative/adjudicative nature of the DOL proceeding on appeal. Because the parties have not raised it, we do not address it. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (stating that "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived") (citation omitted).

Leon timely appealed the dismissal of his action and the monetary sanction. IDX timely appealed the district court's denials of the injunction and the motion for reconsideration.

## STANDARD OF REVIEW

We review the district court's imposition of spoliation sanctions for an abuse of discretion. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (applying the abuse of discretion standard to sanctions levied pursuant to Fed. R. Civ. P. 37 as well as to sanctions issued pursuant to the court's "inherent power"). The district court's factual findings, including findings of bad faith and prejudice, are reviewed for clear error. *Id.*; *see also Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985). "[T]he district court's credibility determinations are entitled to special deference." *Anheuser-Busch*, 69 F.3d at 348 (citation omitted). Issues of law underlying the district court's denial of injunctive relief, including the determination that a party's claims are not barred by res judicata, are reviewed *de novo. Milberg Weiss Bershad Hynes & Lerach v. Lexicon Inc. (In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.)*, 102 F.3d 1524, 1535 (9th Cir. 1996), *rev'd on other grounds*, 523 U.S. 26 (1998).

## DISCUSSION

### I.  The Dismissal Sanction

There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who "fails to obey an order to provide or permit discovery." *Fjelstad*, 762 F.2d at 1337-38; FED. R. CIV. P. 37(b)(2)(C). In this case, the district court relied on its "inherent authority" in sanctioning Leon because

Leon's conduct was not in violation of any discovery order governed by Rule 37.

**[1]** Dismissal is an available sanction when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch*, 69 F.3d at 348 (internal quotation marks and citations omitted). Before imposing the "harsh sanction" of dismissal, however, the district court should consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."[4] *Id.*

**[2]** While the district court need not make explicit findings regarding each of these factors, *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988), a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Anheuser-Busch*, 69 F.3d at 348 (citation omitted). Additionally, the district court must consider "less severe alternatives" than outright dismissal. *Wiltec-Guam*, 857 F.2d at 604. The district court here did not explicitly refer to the five-factor test articulated in *Anheuser-Busch*, but did specifically consider Leon's "level of culpability," the prejudice suffered by IDX, and the availability of lesser sanctions.[5]

---

[4] Although this five-factor test is usually used to review the propriety of Rule 37 sanctions, this same test was applied in *Anheuser-Busch* to review sanctions granted under a court's "inherent power." *See* 69 F.3d at 348. Accordingly, we also apply the five-factor test.

[5] The first two *Anheuser-Busch* factors, although not discussed by the district court, support the district court's decision to dismiss Leon's case. Leon's destruction of 2,200 files on his employer-issued computer

### A. *Bad Faith*

A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (emphasis added) (internal quotation marks and citation omitted). Moreover, because "the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982).

The district court concluded that Leon's behavior amounted to willful spoliation because he knew he was under a duty to preserve all data on the laptop, but intentionally deleted many files and then wrote a program to write over deleted documents. The court rejected Leon's explanation that the deleted documents were "personal," observing that "personal" documents are highly relevant to an employment discrimination claim and noting the IDX-proffered evidence that work-related documents were also deleted and written over. The district court's finding that Leon acted in bad faith is not clearly erroneous.

Leon admits that he intended to destroy information, including evidence of pornographic files, but he contends that his intent was merely to protect his privacy. Leon had ample

---

"greatly impeded resolution of the case" by obscuring the factual predicate of the case and consuming months of sanction-related litigation. *See Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987) (holding, in a brief but "independent" review of the five factors, that the first two factors supported the dismissal sanction because the district court was prevented from adhering to its trial schedule). Here, there was ample evidence of the time and resources spent in investigating and resolving the spoliation issues.

notice, however, that the files he destroyed were not merely "private" and were potentially relevant to the litigation at hand. Leon ran the wiping program, eliminating over 2,200 files, including pornographic files, well after IDX had filed its action for declaratory judgment and he had filed his own employment discrimination action. IDX's declaratory judgment action sought to establish whether IDX could legally fire Leon for his "failure to satisfactorily perform his job duties." Therefore, Leon was on notice that files created on his employer-issued computer were relevant to a lawsuit centering on the existence of legitimate grounds for firing Leon. For example, IDX's employee guide specifically forbids "access or sending of sexually oriented messages or images of any kind." Leon was on notice that files created in violation of this IDX company policy would be relevant to IDX's lawsuit against him. His deletion and "wiping" of 2,200 files, acts that were indisputably intentional, amounted to willful spoliation of relevant evidence. Accordingly, the district court's finding was not clearly erroneous.

### B.  *Prejudice*

The prejudice inquiry "looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Wiltec Guam*, 857 F.2d at 604 (citation omitted). In *Anheuser-Busch*, we found prejudice when a party's refusal to provide certain documents "forced Anheuser to rely on incomplete and spotty evidence" at trial. 69 F.3d at 354.

The district court found that IDX would be prejudiced by Leon's deletion of the files. The district court discussed types of "personal" files that could have helped IDX with its case, including Leon's correspondence with realtors and financial institutions (relevant to the timing of his decision to resign from IDX); communications with health care providers regarding work-related illness (relevant to his ADA claim); and the timing of and efforts to find other employment. The

11702        LEON v. IDX SYSTEMS CORP.

court noted that there was no way of recreating the contents of these files, and discounted Leon's contention that IDX should have examined the laptop's contents earlier or should examine the IDX network for files relevant to Leon and the litigation.

We conclude that the district court's finding is not clearly erroneous. As the district court observed, the types of files Leon would have deleted out of privacy concerns would "likely be at the heart of IDX's defense were [the files] available." Leon's spoliation "threatened to distort the resolution" of the case, *see Wiltec Guam*, 857 F.2d at 604, because any number of the 2,200 files could have been relevant to IDX's claims or defenses, although it is impossible to identify which files and how they might have been used.[6] Because of the obvious relevance of Leon's "personal" files to the litigation and the harm to IDX caused by Leon's destruction of these files, the district court did not clearly err in its finding of prejudice.

### C.  *Lesser Sanctions*

In reviewing whether the district court properly considered lesser sanctions prior to dismissing Leon's case, we examine: "(1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal." *Anheuser-Busch*, 69 F.3d at 352 (citation omitted).

The district court found that "less drastic sanctions are not useful" because a ruling excluding evidence would be "futile," and fashioning a jury instruction that creates a presump-

---

[6]For example, one of the wiped files identified in the computer forensics report was named "SAGE_assesment_Key strategic issues.doc."

LEON v. IDX SYSTEMS CORP.   11703

tion in favor of IDX "would leave Defendants equally helpless to rebut any material that Plaintiff might use to overcome the presumption." The district court therefore satisfied the first criterion. The second criterion is inapplicable here because Leon erased the files and ran the wiping program before the district court had an opportunity to compel discovery or otherwise order "lesser sanctions." Likewise, the third criterion, which examines whether the district court warned the party, is inapplicable here because the destruction of the evidence occurred before the court had any opportunity to warn Leon. *See Malone*, 833 F.2d at 133 (observing that "[f]ailure to warn has frequently been a contributing factor in our decisions to reverse orders of dismissal," but also holding that an explicit warning was "unnecessary" in certain circumstances).

**[3]** In sum, four of the five *Anheuser-Busch* factors support the district court's decision to dismiss. The prejudice to IDX, and the unavailability of lesser sanctions weigh heavily in favor of dismissal. Also, the need to manage the court's docket, as well as the public interest in expeditious resolution of litigation, weigh in favor of dismissal. The only factor weighing against dismissal is "the public policy favoring disposition of cases on their merits," which, standing alone, "is not sufficient to outweigh the other four factors." *See Malone*, 833 F.2d at 133 n.2. Additionally, the bad-faith determination, which is a prerequisite to dismissing a case pursuant to a court's inherent power, *see Anheuser-Busch*, 69 F.3d at 348, was not clearly erroneous. "Although dismissal was harsh," *Yourish v. Cal. Amplifier*, 191 F.3d 983, 992 (9th Cir. 1999), we do not disturb the district court's choice of sanction unless we have a "definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors," *id.* (internal quotation marks and citation omitted). In this case, we do not have such a conviction. We therefore affirm the dismissal sanction.

11704 LEON v. IDX SYSTEMS CORP.

## II. The Monetary Sanction

**[4]** Under its "inherent powers," a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (discussing a sanction against an attorney) (citation omitted). Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." *Id.* (citation omitted). A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* at 649 (internal quotation marks and citation omitted). The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." *Id.* Additionally, the amount of monetary sanctions must be "reasonable." *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1184 (9th Cir.), *as amended by* 803 F.2d 1085 (1986) (reviewing a Rule 11 sanction but announcing a standard applicable to other sanctions as well).

**[5]** The district court made an explicit finding that Leon acted in bad faith, as discussed in Section I-A, *supra*, which is the primary prerequisite for sanctions issued pursuant to a court's inherent power. Leon's only argument on appeal is that the sanction was "excessive" because not all the attorneys' fees requested by IDX were attributable to the spoliation issue. The district court, however, found that IDX's accounting of fees was reasonable. Upon reviewing the record on this issue, we find no clear error in the district court's determination that the fees were related to the spoliation motion and were reasonable. We thus affirm the monetary sanction as within the district court's broad discretion.

LEON v. IDX SYSTEMS CORP. 11705

## III. The Injunction

The district court denied IDX's motion to enjoin the DOL's investigation and adjudication of Leon's SOX complaint, and subsequently denied IDX's motion for reconsideration of that decision.**7** The court's decision turned on its determination that there was no privity between Leon and the DOL. IDX appeals, arguing that the requirements for res judicata were satisfied because the DOL was in privity with Leon.

**[6]** The All Writs Act "empowers a district court to issue injunctions to enforce judgments and to reinforce the effects of the doctrines of res judicata and collateral estoppel." *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988) (citation omitted); *see also* 28 U.S.C. § 1651(a). Res judicata applies when the earlier suit: (1) reached a final judgment on the merits; (2) involved the same cause of action or claim; and (3) involved identical parties or privies. *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002).

**[7]** The first requirement is satisfied, because a dismissal with prejudice is a determination on the merits. *See Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474, 477 n.3 (9th Cir. 1990) ("Federal law dictates that a dismissal with prejudice bars a later suit under res judicata."). The second requirement, identity of the cause of action, is also satisfied, because the SOX claim involves largely the same nucleus of facts — the time, cause, and circumstances of Leon's termination vis-a-vis his whistle-blowing activities — as Leon's claim under the False Claims Act and his other whistle-blower claims. *See Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 770

---

**7**Because we conclude that the district court erred in denying IDX's motion for an injunction, we need not address the appeal from the court's denial of reconsideration.

(9th Cir. 2003) ("Identity of claims exists when two suits arise from the same transactional nucleus of facts.").**8**

**[8]** Finally, we must decide whether the third requirement, which examines the identity of the parties, has also been satisfied in this case. The district court concluded that Leon and the DOL were not privies because their interests differed — the DOL represents a "broad public interest," whereas Leon was seeking only money damages. We disagree. When "[t]he Secretary [of Labor] is suing for employee-specific rights of precisely the sort [plaintiff] already pursued" then the "requisite closeness of interests for privity is present." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 923 (9th Cir. 2003) (applying the remedial scheme of the Fair Labor Standards Act) (internal quotation marks omitted). The *Chao* court found determinative the fact that the Secretary sought to recoup the plaintiff's personal economic loss, "not to vindicate broader governmental interests by, for example, seeking an injunction." *Id.* Similarly, the remedies available under SOX include *only* individual compensatory remedies, including reinstatement, back pay, litigation costs, expert witness fees, and reasonable attorneys' fees. *See* 18 U.S.C. § 1514A. Injunctive and other broad remedial relief is not available under the statute.**9** *See id.*; *see also* 29 C.F.R. §§ 1980.105,

---

**8**The fact that Leon did not actually bring a SOX claim does not preclude the satisfaction of the identity of claims requirement, because he could have amended his complaint to add the SOX claim after 180 days had passed without any action by the DOL. *See* 18 U.S.C. § 1514A (b)(1)(B) ("[I]f the Secretary has not issued a final decision within 180 days of the filing of the complaint" a litigant can "bring[ ] an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action.").

**9**Leon contends that the DOL seeks broader, non-private remedies because the DOL ordered that IDX, in addition to providing back wages, compensatory damages, and attorneys' fees, was also required to "post the enclosed Notice to Employees in a conspicuous place" for 60 days. The Notice to Employees states, *inter alia*, that the employer agrees not to discharge or discriminate against any employee who files a complaint under

.109 (listing the remedies that can be awarded by the agency, all of which are compensatory). We conclude that, under *Chao*, the private nature of the remedy sought by the DOL demonstrates that the agency is in privity with Leon. *See also EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 496 (3d Cir. 1990) (determining that privity is satisfied when the agency "seeks individualized benefits under the ADEA for particular grievants").

**[9]** Because all of the requirements of res judicata are satisfied, the district court erred in denying the injunction based on lack of privity. We therefore reverse the order denying the injunction and remand for the district court to consider whether it should, in the exercise of its discretion, enjoin the DOL's proceedings under the All Writs Act. *See Clark v. Busey*, 959 F.2d 808, 813 (9th Cir. 1992) (discussing application of the All Writs Act to injunctions of administrative proceedings); *DeNardo v. Murphy*, 781 F.2d 1345, 1348 (9th Cir. 1986) (discussing application of the All Writs Act to injunctions of adjudicative proceedings).

## CONCLUSION

The district court did not abuse its discretion when it imposed a terminating sanction dismissing with prejudice Leon's action and imposed a monetary sanction. Because, however, the court erred in concluding that the privity element of res judicata was not satisfied, we reverse and remand the case to the district court to determine whether an injunc-

---

the whistle-blower provisions of SOX. SOX and its implementing regulations, however, do not appear to authorize this type of remedy. *See* 18 U.S.C. § 1514A; 29 C.F.R. § 1980.105. It is therefore, at the least, unclear what authority supports the issuance of such an order. In any event, we are not persuaded that the mere additional requirement of posting a notice alone is sufficient to alter the private nature of the remedy sought by the DOL. We note further that, although it filed a brief in the district court, the DOL has not participated in these proceedings on appeal.

| 11708 | LEON v. IDX SYSTEMS CORP. |
|---|---|

tion should be issued pursuant to the All Writs Act. IDX shall recover of Leon its costs on appeal.

In No. 04-35938, the judgment is **AFFIRMED.**

In No. 05-35426, the order denying the injunction is **REVERSED and REMANDED** for further proceedings consistent with this opinion.