**Filed**

DEC 20 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NURSING HOME PENSION FUND ET AL, | No. C01-00988 MJJ |
| Plaintiff, | **ORDER RE MOTION FOR CLASS CERTIFICATION** |
| v. | |
| ORACLE CORPORATION ET AL, | |
| Defendant. | |

Pending before the Court is Plaintiffs 1199 SEIU Greater New York Pension Fund ("1199 SEIU"),[1] Drifton Finance Corporation, Robert D. Sawyer, Ryan Kuehmichel, and Dzung Chu (collectively, "Plaintiffs") Motion for Class Certification (Doc. #221). Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley, and Edward J. Sanderson (collectively, "Defendants") have filed an Opposition (Doc. #299), to which Plaintiffs filed a Reply (Doc. #320). Defendants ha also filed a Sur-Reply (Doc. #391). For the following reasons, the Court **GRANTS** Plaintiffs' Motion.

I. **Background**

Plaintiffs move to certify this case as a class action on behalf of all persons and entities who purchased or otherwise acquired the publicly traded securities of Oracle Corporation between December 14, 2000 to March 1, 2001 (the "Class Period"). Plaintiffs also seek the appointment of designated class representatives and their counsel of record.

In their Revised Second Amended Complaint for Violations of the Federal Securities Laws,

---

[1] Formerly known as, "Local 144 Nursing Home Pension Fund."

Plaintiffs allege that during the Class Period, Defendants violated sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 by making false and misleading statements about Oracle's financial results for the second quarter of fiscal year 2001 ("2Q01"), the effects of the economy on Oracle's business, Oracle's third quarter 2001 forecasts, and the functionality of Oracle's 11i Applications Suite ("11i"). Plaintiffs argue that this course of conduct artificially inflated the price of Oracle common stock from $27 per share, to a Class Period high of $34 per share, thereby allowing Defendants to sell nearly $1 billion of their personal holdings. Plaintiffs further allege that on March 1, 2001, Oracle announced that it would miss its third quarter forecasts by material amounts because of the economy and 11i, which caused the value of Oracle stock to drop from $19.50 per share to $16.88 per share in a single day of trading.

Defendants are the Oracle Corporation and the following individuals: Lawrence J. Ellison, Chief Executive Officer, Board of Directors Chairman, and co-founder; Jeffrey O. Henley, Executive Vice President and Chief Financial Officer; and Edward J. Sanderson, Executive Vice President. Defendants oppose the motion on the grounds that the proposed class representatives are atypical and inadequate to represent the class and because questions affecting only individual members predominate over questions common to members of the class.

## II. Legal Standard

A party seeking to certify a class must demonstrate that it has met all four requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b). According to Rule 23(a), a class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).[2] If these requirements are met, the class proponents must also show that they have met one of the four disjunctive prerequisites of Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3). Under this subsection, the Court must find "that the questions of law or fact common to

---

[2] The four requirements of Rule 23(a) are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See, e.g., Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004).

2

the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) the difficulties likely to be encountered in the management of a class action.

*Id.*.

The proponents of the class bear the burden of demonstrating that all the prerequisites for class designation are met. *See In re N. Dist. of Cal. Dalcon Shield IUD Prod. Liability Litig.*, 693 F.2d 847, 854 (9th Cir. 1982). In analyzing whether the putative class meets the requirements of Rule 23, a court is to take the substantive allegations of the complaint as true, and may also consider extrinsic evidence submitted by the parties. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

### III.  Discussion

#### A.  Rule 23(a)

Plaintiffs maintain that the proposed class meets all four requirements of Rule 23(a). Defendants contest that two of these requirements have not been met—typicality and adequacy of representation. (Defs.' Opp'n at 3:3–6.) Despite Defendants' concession of the numerosity and commonality requirements, the Court will address all four requirements of Rule 23(a).

##### 1.  Numerosity

Numerosity under Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Plaintiffs need not state the exact number of potential class members, nor is a specific number of class members required. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.* The fact that a class is geographically dispersed and that class members are difficult to identify supports a finding of numerosity. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996). Moreover, numerosity is generally presumed in class action suits involving nationally traded securities. *Zeidman v. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Defendants do not contest that numerosity is satisfied here. The daily trading volume of Oracle stock reached as high as 120 million shares during the Class Period. This indicates that the purported class consists of thousands of individuals, dispersed throughout the country, who purchased Oracle shares during the Class Period. Accordingly, the Court finds that joinder of all class members is impracticable and that the proposed class satisfies the numerosity requirement of Rule 23(a)(1).

### 2. Commonality

Commonality under Rule 23(a)(1) requires that there be questions of law or fact that are common to the class. This requirement has been construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

The claims asserted in the present case involve the same core legal and factual questions. Specifically at issue is whether: (1) Defendants violated the federal securities laws; (2) Defendants made statements to the investing public during the Class Period that omitted or misrepresented material facts about the business, financial, and operational results of Oracle; (3) Defendants acted with the requisite state of mind in omitting or misrepresenting material facts; (4) the alleged material omissions and misrepresentations artificially inflated the market price of Oracle stock during the Class Period; and (5) whether the putative class members were injured as a result of Defendants' conduct and, if so, what the appropriate class-wide measure of damages would be. Accordingly, the Court finds that the commonality requirement under Rule 23(a)(2) is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class. Typicality requires that the class representatives "be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (citations and internal quotation marks omitted). Under Rule 23(a)(3)'s permissive standards, the claims of the class representatives need not be identical or even substantially identical to those of the absent class members. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Instead, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members." *Id.* (quoting

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). As is discussed below, Defendants challenge all five proposed class representatives on the ground that they are subject to unique defenses.

### 4. Adequacy

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. The adequacy requirement is comprised of two separate inquiries. First, the representative plaintiffs' interests must not be antagonistic to the interests of the purported class. Second, the plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the claims. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

Defendants do not dispute the adequacy of Plaintiffs' lead counsel Lerach Coughlin Stoia Geller Rudman & Robbins. Instead, Defendants attack the ability of the proposed class representatives to adequately represent the class. Because courts often discuss the adequacy and typicality requirements together, the two factors are applied in combination to each of the Plaintiffs below. *See Welling v. Alexy*, 155 F.R.D. 654, 657–58 (N.D. Cal. 1994).

### 5. Application

#### a. 1199 SEIU

Defendants contend that 1199 SEIU is atypical and inadequate to represent the class because: (1) it is a "professional plaintiff"; (2) it lacks standing to sue under Section 10(b); and (3) its sophisticated investment advisors could not have been deceived by Oracle's alleged omissions and misstatements.

##### i. "Professional Plaintiff"

First, Defendants argue that 1199 SEIU should be disqualified as a "professional plaintiff," pointing to its involvement in at least seventeen prior securities fraud actions with Lerach Couglin serving as counsel in all of them. In support, Defendants cite to the legislative history of the Private Securities Litigation Reform Act ("PSLRA"). In the PSLRA, Congress took aim at "professional

plaintiffs" who typically own a handful of shares in numerous companies and who repeatedly file securities class action lawsuits usually employing the same law firm. H.R. Conf. Rep. No. 104-369, at *32–33 (1995); 1995 U.S.C.C.A.N. 730, **731–32; H.R. Rep. No. 104-50, at 16 (1995). These "professional plaintiffs" often receive compensation from their "entrepreneurial trial lawyers," and as such, do not adequately represent other shareholders. H.R. Conf. Rep. No. 104-369, at *32–33 (1995); 1995 U.S.C.C.A.N. 730, **731–32; H.R. Rep. No. 104-50, at 16 (1995).

While these authorities provide some support for Defendants' argument that 1199 SEIU should be disqualified, the plain terms of the PSLRA provision addressing "professional plaintiffs" demonstrate that Defendants' argument is misplaced. The "professional plaintiff" provision prohibits a person or entity from serving as a lead plaintiff in more than five securities class actions in a three year period. 15 U.S.C. § 77z-1(a)(3)(B)(vi). This provision has been construed to apply only to proposed lead plaintiffs, not to proposed class representatives, as Defendants attempt to do here. *In re DJ Orthopedics, Inc.*, 2003 U.S. Dist. LEXIS 21534, at **19–20 (S.D. Cal. Nov. 16, 2003).

Even if the Court were to construe the legislative history of the PSLRA that Defendants cite as applying to proposed class representatives, Congress has indicated that legislation seeking to prohibit "professional plaintiffs" from participating in securities class actions was not intended to apply to institutional investors. According to the House of Representatives Conference Report No. 104-396 of the 104th Congress at 35 (1999), "[i]nstitutional investors . . . do not represent the type of professional plaintiff [the PSLRA] seeks to restrict." Thus, Defendants' reliance on the legislative history of the PSLRA addressing "professional plaintiffs" fails to support their argument that 1199 SEIU is atypical and inadequate. *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001).

Defendants next proffer case law for the proposition that courts often hold atypical proposed class representatives who are "professional plaintiffs." In *Hanon v. Dataproducts Corporation*, the Ninth Circuit disqualified a proposed class representative (Hanon) because his unique background and factual situation would require him to prepare to meet defenses atypical of those which might be raised against other proposed class members. 976 F.2d 497, 508–509 (9th Cir. 1992). In so holding, the court identified four factors that weighed against permitting Hanon to serve as a class representative:

> Hanon's reliance on the integrity of the market would be subject to serious dispute as a result of [1] his extensive experience in prior securities litigation, [2] his relationship

6

with his lawyers, [3] his practice of buying a minimal number [of] shares of stock in various companies, and [4] his uneconomical purchase of only ten shares of stock in [the defendant company].

*Id.* at 508. Here, while Plaintiffs have "extensive experience in prior securities litigation" and an ongoing relationship with Lerach Couglin, there is no indication that 1199 SEIU was engaged in the practice of buying a nominal number of shares in various companies to later serve as a class representative. *See id.*

However, in *Welling v. Alexy*, the District Court of the Northern District of California found that just two of the *Hanon* factors, supplemented by one additional factor not mentioned in *Hanon*, justified the disqualification of a proposed class representative (Kassover). 155 F.R.D. 654, 658 (N.D. Cal. 1994). As in the present case, only two of the four *Hanon* factors applied to Kassover—"extensive experience in prior securities litigation" and his reliance on the same attorney. *Id.* at 659. It did not appear to the court that Kassover had a practice of buying only a small number of shares in various companies in an effort to buy a lawsuit, which was integral to the Ninth Circuit's holding in *Hanon*. *Id.*

Nevertheless, the court ruled that Kassover was inadequate to serve as class representative. *Id.* It did so by adding one final factor not explicitly mentioned in the *Hanon* decision. *Id.* That factor inquires into the proposed class representative's familiarity with the case, the rationale being that a class representative unfamiliar with the case will be unable to "check the otherwise unfettered discretion of counsel in prosecuting the suit." *Id.* (quoting *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978)). The court adopted a standard of "striking unfamiliarity" in determining whether a representative could adequately police the prosecution of his or her lawsuit. *Id.* The court found that Kassover was strikingly unfamiliar with the case, looking to the following facts: (1) he performed no further investigation of the stock company after reporting to his attorneys that the company's earnings reports had been released; (2) his attorneys decided who to name as defendants and what types of claims to bring; (3) he was unaware that his attorneys had filed an amended complaint; and (4) he expressed an intention not to supervise the amount of time that his attorneys spent on the case. *Id.* Moreover, the court pointed out that a court in a prior class action had refused to certify Kassover as a class representative because he knew nothing about the case and had relied entirely on his attorney to direct the litigation. *Id.* (citing *Kassover v. Computer Depot*, 691 F. Supp. 1205, 1213–14 (D. Minn. 1987)).

The court thus concluded that the proposed class representative's "demonstrated level of disinterest in [the] lawsuit coupled with his vast experience as a securities class action plaintiff render[ed] him subject to unique defenses and, consequently, inadequate to serve as class representative." *Id.*

Defendants put forth a similar argument here. They point out that an 1199 SEIU trustee "was unable to describe at his deposition whether the Fund engaged in any due diligence before bringing this suit, or whether the suit was the Fund's or the law firm's idea." (Defs.' Opp'n at 21:7–10.) They argue that 1199 SEIU and Lerach Couglin "formed precisely the sort of partnership to further their own interests that the courts and Congress have concluded makes a plaintiff unfit to represent a class." (*Id.* at 21:10–13.) Plaintiffs contend that 1199 SEIU is pursuing this action because: (1) the Department of Labor mandates the action insofar as it considers it "best practice" for institutions to pursue securities litigation; (2) it is in the best interests of 1199 SEIU's beneficiaries; and (3) 1199 SEIU's relationship with Lerach Coughlin is strictly professional. (Pls.' Reply at 11:11–19.)

The Court, however, is unpersuaded by Defendants' challenges. The record fails to evince that 1199 SEIU is "strikingly unfamiliar" with the present case such that it will be unable to control its lawyers. *Welling*, 155 F.R.D. at 659. The representative for 1199 SEIU, John Chobor, correctly named all Defendants by name, correctly described the Class Period, discussed the allegedly false statements made by Defendants, and described why they were false. (Pls.' Reply at 10:17–19.) There is simply not the degree of unfamiliarity with the action that motivated the *Welling* court to disqualify the proposed class representative in that action. Moreover, there is nothing in the record that indicates that 1199 SEIU has ever been disqualified from serving as a class representative in a previous action. Finally, and perhaps most importantly, 1199 SEIU's status as an institutional investor militates against finding it atypical or inadequate to represent the class. All the cases cited by Defendants involved individual investors, whereas here, 1199 SEIU is an institutional investor. As mentioned above, the concern over "professional plaintiffs" manifests itself most pointedly where individual investors seek to serve as class representatives. *See* H.R. Conf. Rep. No. 104–396, 104th Cong. at 35 (1999). Accordingly, the Court rejects Defendants' request to disqualify 1199 SEIU on the grounds that it is a "professional plaintiff."

8

### ii. Standing

Defendants next argue that 1199 SEIU lacks standing to sue under section 10(b) because it conferred complete investment discretion on Turner Investment Partners and Congress Asset Management. (Opp. at 21.) Defendants argue that litigating its standing will divert 1199 SEIU from issues common to the class, thereby rendering it an inadequate class representative. (*Id.* at 21:23–24.) Plaintiffs contend that nothing in the case law precludes an institutional investor that delegates investment authority to professional investment advisors from serving as a class representative in a securities class action. (Reply at 16.)

Defendants cite to two Seventh Circuit cases which held that there can be no section 10(b) liability where the trustees of a pension trust fund have delegated complete discretion to make investments on behalf of the trust: *Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.*, 800 F.2d 177 (7th Cir. 1986);and *O'Brien v. Continental Ill. Nat'l Bank and Trust*, 593 F.2d 54 (7th Cir. 1979). Both cases are distinguishable. In *O'Brien*, the investment bank was delegated "sole discretionary power" to purchase and sell securities on the fund's behalf and the fund had no right to participate in investment decisions or to be consulted about purchases or sales. 593 F.2d at 57. Similarly, in *Kidder Peabody*, the broker retained "full discretion to develop and implement a prudent portfolio strategy." *Kidder Peabody*, 800 F.2d at 181. In contrast, the record in the present case indicates that 1199 SEIU could advise and/or restrict Turner Investments in terms of which securities to purchase or sell. (*See* Decl. of Vincent P. Schmeltz III in Supp. of Opp. ("Schmeltz Decl."), Ex. 30 at 43:24–44:11.) Thus, because 1199 SEIU did not relinquish total control over investment decisions, *Kidder Peabody* and *O'Brien* are inapplicable. *See In re Verisign, Inc.*, 2005 WL 88969, at *7 (N.D. Cal. Jan. 13, 2005); *Cox v. Bateman Eichler Hill Richards, Inc.*, 765 F. Supp. 601, 608 n.3 (N.D. Cal. 1990).

Additionally, even if *Kidder Peabody* and *O'Brien* did apply to the present case, Defendants have failed to point to any cases that support their claims that 1199 SEIU's alleged delegation of complete investment authority to Turner and Congress renders it an inadequate class representative. *Katz v. Comdisco, Inc.* lends little support to Defendants' argument. 117 F.R.D. 403 (N.D. Ill. 1987). The court in *Katz* concluded that lack of standing is a unique defense that precludes a named plaintiff from

9

representing a class. *Id.* at 407. However, the plaintiff in *Katz* lacked standing because he had suffered no financial loss as a result of the defendant's alleged misrepresentations. *Id.* Unlike the plaintiff in *Katz*, 1199 SEIU suffered financial loss. The Court thus denies Defendants' request to disqualify 1199 SEIU as a class representative on the ground that it lacks standing to sue.

### iii. Sophisticated Investment Advisors

Finally, Defendants argue that 1199 SEIU is atypical because it is subject to the unique defense that its sophisticated investment advisors, Turner and Congress, could not have been deceived by Oracle's alleged misstatements. (Opp. at 21.) Defendants point out that Turner and Congress had access to and incorporated information about the risks of a slowing economy on the price of Oracle stock, the "hockey stick effect" that made earnings unpredictable, and the bugs in Suite 11i into its analysis of Oracle's worth. (*Id.* at 22:1–5.) Defendants maintain that because Turner and Congress were sophisticated brokers who had access to more information than other investors in the proposed class, 1199 SEIU is atypical. *See Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 59 (2d. Cir. 2000).

Defendants' argument is without merit. The Ninth Circuit has emphasized that the defense of non-reliance is not a basis for denial of class certification. *Hanon*, 976 F.2d at 509; *see also In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 22 (N.D. Cal. 1986) (stating that "although lack of reliance may be a defense, that goes to the merits of the case and cannot be considered in a certification motion"). "Sophisticated investors are as entitled to rely on the fraud-on-the-market theory as anyone else." *Hanon*, 976 F.2d at 506. Accordingly, 1199 SEIU is neither atypical nor inadequate to represent the putative class in the present action.

### b. Dzung Chu

Defendants argue that Dzung Chu is atypical and inadequate to represent the class for three reasons. First, Defendants argue that Chu is not adequate to represent the class because he is "startlingly unfamiliar" with the case and lacks interest in controlling the suit. (Opp. at 22.) However, Chu's deposition transcript indicates that he understands the general allegations of the complaint. (Reply at 14.) It is enough that Chu was "aware of the general nature of the allegations, and . . . [had] some familiarity with the underlying legal principles." *In re Terayon Communs. Sys.*, 2003 U.S. Dist. LEXIS

2852, at *10 (N.D. Cal. Feb. 24, 2003). The court therefore concludes that Chu is sufficiently familiar with the case to act as a class representative.

Defendants next argue that Chu's standing is in doubt because his wife traded on his account. Defendants fail to cite any cases supporting this proposition. Moreover, Chu's deposition transcript indicates that he played an active role in deciding to hold and then to sell his Oracle shares. (Pls.' Reply at 18:20–23.) Thus, there is no individual standing issue that Chu would have to litigate that renders Chu an atypical class representative.

Lastly, Defendants contend that Chu's practice of short-term swing trading exposes him to a reliance defense that makes him atypical of the class. (Defs.' Opp'n at 23:3–5.) Defendants again fail to cite any authority supporting this argument. Even had they done so, Defendants have failed to establish that Chu was a swing trader. Indeed, Chu held his largest purchase of Oracle shares for two months. (Pls.' Reply at 18:10–13.) Thus, Defendants' argument that Chu is atypical because his alleged swing trading patterns exposes him to a reliance defense is without merit. Accordingly, the Court finds no basis to exclude Chu as a class representative.

### c. Robert D. Sawyer

Defendants next contend that Sawyer is an atypical and inadequate class representative. Specifically, Defendants assert that because Sawyer sold more shares than he purchased during the Class Period, he "almost certainly suffered no injury from the fraud plaintiffs allege." (Defs.' Opp'n at 23:8–10; Decl. of Stefan Boedeker in Supp. of Defs.' Opp'n to Pls.' Mot. for Class Cert. ("Boedeker Decl.") at ¶ 23.) According to Defendants, any price inflation that would have harmed Sawyer as a purchaser would have *benefitted* him more as a seller. (Defs.' Opp'n at 23:10–11.) As this point, however, Defendants' charge that Sawyer "almost certainly suffered no injury," is merely speculative and therefore does not establish that Sawyer is an inadequate class representative.

Defendants also argue that Sawyer's unfamiliarity with the lawsuit makes him ill-suited to be a class representative. Specifically, Defendants charge:

> Sawyer thinks he is suing Oracle and perhaps Ellison, but no one else; believes the class period began when Ellison first sold Oracle securities and ended when he stopped; and does not know what his allegations about Oracle's 2Q01 results or 3Q01 forecasting are. []

However, as Plaintiffs point out, Sawyer has been actively involved in this case: he has reviewed the

11

pleadings, discussed the case with counsel, responded to discovery requests, and underwent a seven hour deposition relating t the case. The Court therefore agrees with Plaintiffs that Sawyer is sufficiently aware of the allegations and claims to serve as a class representative.

Finally, Defendants argue that because margin calls drove Sawyer's trading during the Class Period and a change in brokerage accounts prevented him from selling his Oracle holdings during the last weeks of the Class Period, Defendants contend that Sawyer is subject to unique reliance defenses. Defendants fail to cite any authority in support of this argument or otherwise explain how these facts, even assuming they are true, would make Sawyer an inadequate class representative.

In sum, the Court has considered Defendants' challenges, and finds no basis for disqualifying Sawyer as a class representative.

### d.    Ryan Kuehmichel

Defendants urge the Court to disqualify Kuehmichel as a class representative, arguing that his status as a sophisticated options trader risks becoming a focal point at trial. (Opp. at 23.) Plaintiffs contend that sophisticated trading does not render Kuehmichel atypical. The Court agrees with Plaintiffs. In *Hanon*, the Ninth Circuit held that an investor's sophistication does not vitiate her ability to invoke the fraud-on-the-market theory. *Id.* at 506. Moreover, "investors who trade options are entitled to the fraud-on-the-market presumption because the value of options is directly related to the value of common stock." *Crossen v. CV Therapeutics*, 2005 WL 1910928, *4 (N.D. Cal. Aug. 10, 2005) (Slip Copy).

Defendants also argue that Kuemichel would be subject to the unique defense of non-reliance because he sold "call options" that assume the market overvalued Oracle stock. Courts have recognized the imprudence of appointing a class representative who engaged in a trading practice premised on the belief that the stock would fall. *See, e.g., In re Critical Path*, 156 F. Supp. 2d 1102, 1109–10 (N.D. Cal. 2001). However, as *Crossen* recognized, "[while the motivations behind short selling may be inconsistent with the assumptions underlying the fraud on the market theory, a plaintiff may still be entitled to the presumption of reliance if he makes ordinary purchases of common stock and sustains losses on these holdings." *Crossen*, 2005 WL 1910928, *5. Here, Kuehmichel made several ordinary purchases of common stock based on Oracle's alleged false and misleading statements. (Pls.' Reply at

12

1  19:9–14; Boedeker Decl. at Ex. 3.) Accordingly, the Court finds that Kuemichel is not atypical because of his strategy of selling "call options."

Lastly, Defendants argue that Kuemichel should be disqualified because the fact that he sold the "call options" raises the question of whether he was injured at all. (Defs.' Opp'n at 24:6–8.) Defendants assert that by selling short call options, Kuehmichel made a profit of $12,063 over the Class Period. (Boedeker Decl. at ¶ 21.) Although this amount could possibly exceed the amount of his losses as a result of the alleged fraud, it fails to establish that he suffered no injury. The Court therefore finds that Kuemichel satisfies both the typicality and adequacy requirements of Rule 23(a).

### e. Drifton Finance Corporation

Defendants also seek to disqualify Drifton Finance Corporation on several of the same grounds already discussed—*e.g.*, that it was a sophisticated investor, that it failed to perform basic due diligence about the case, that it used complex trading strategies, and that it could not supervise counsel. For the reasons discussed above, the Court rejects these challenges as to Drifton Finance Corporation, and finds no basis to exclude it as a class representative.

## B. Rule 23(b)(3)

The Court has found that Plaintiffs have adequately established each of the requirements of Rule 23(a), it next addresses whether Plaintiffs have made a sufficient showing under Rule 23(b)(3). Under this subsection, the Court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Defendants argue that Plaintiffs cannot make Rule 23(b)(3)'s requisite showing of predominance because "investor-, time-, and transaction specific inquiries into [1] loss causation, [2] knowledge, and [3] reliance are necessary to determine liability to each putative class member." (Opp. at 7.)

### 1. Loss Causation under *Dura Pharmaceuticals v. Broudo*

Defendants maintain that after the Supreme Court's decision in *Dura Pharmaceuticals v. Broudo*, 125 S.Ct. 1627 (2005), a Section 10(b) plaintiff must, in addition to showing artificial inflation at the time of purchase, plead and prove that he suffered economic loss caused by the alleged misrepresentation

13

(loss causation) in order to satisfy Rule 23(b)(3). Specifically, Defendants argue that *Dura* requires Plaintiffs to identify a "corrective disclosure" before inflated purchase price can constitute evidence of loss causation. According to Defendants, because Plaintiffs have not and cannot point to a "corrective disclosure," Plaintiffs cannot prove loss causation on a class-wide basis. Defendants further argue that Plaintiffs have not proffered an alternative methodology by which injury could be traced class-wide to Oracle's alleged misstatements. According to Defendants, "[w]ith no class-wide methodology to prove loss causation, that issue would require individual mini-trials incompatible with class adjudication." Plaintiffs, however, argue that *Dura* does not require a corrective disclosure to prove loss causation, and contend that they have adequately alleged that

Plaintiffs contest Defendants' reading of *Dura*. Plaintiffs argue that *Dura* does not require a "corrective disclosure" to prove loss causation. Moreover, Plaintiffs maintain that *Dura* does not address class certification. The Court agrees with Plaintiffs.

In *Dura*, the Supreme Court addressed what plaintiffs must plead and prove in securities fraud actions under Section 10(b) of the Securities Exchange Act of 1934. *Id.* at 1629. Specifically, the Court considered how plaintiffs can establish the requirement of "loss causation"—*i.e.*, "a causal connection between the material misrepresentation and the loss." *Id.* at 1631 (citing 15 U.S.C. § 78u-4(b)(4)).[3] The lower appellate court decision from the Ninth Circuit had adopted an "inflated purchase price" approach to proving causation and loss—*i.e.*, that a plaintiff can satisfy this requirement by simply alleging and later establishing that "the price [of the security] *on the date of purchase* was inflated because of the misrepresentation." *Id.* (quoting 339 F.3d 933, 938 (9th Cir. 2003) (internal quotation marks omitted) (emphasis in original)).

The Supreme Court rejected the Ninth Circuit's approach and held that a plaintiff must prove that the defendant's misrepresentation proximately caused the plaintiff's economic loss. *Id.* at 1633. In so holding, the Court explained that "the logical link between the inflated share purchase price and any later economic loss is not invariably strong." *Id.* at 1631. The Court provided the following explanation for why a causal link between artificially inflated stock price and a purchaser's economic loss may be

---

[3] "Loss causation" refers to the requirement of proximate cause specifically within the context of securities fraud actions.

1  attenuated:

> Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly *before the relevant truth begins to leak out*, the misrepresentation will not have led to any loss. If the purchaser sells later *after the truth makes its way into the market place*, an initially inflated purchase price *might* mean a later loss. But this is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. . . . Other things being equal, the longer the time between purchase and sale, the more likely that this is so, *i.e.*, the more likely that other factors caused the loss.

*Dura*, 125 S.Ct. at 1631–32 (emphasis added).

Defendants interpret the above passage to require Plaintiffs to identify corrective disclosures that caused Oracle's stock price to decline to satisfy Rule 23(b)(3)'s predominance standard. The Court disagrees. As Plaintiffs point out, several courts have recognized that *Dura* does not require a 10(b) plaintiff to identify a corrective disclosure in order to properly plead or prove loss causation. *See In re Verisign Corp. Secs. Litig.*, 2005 WL 2893783, at *5 (N.D. Cal. Nov. 2, 2005); *In re Loewen Group Inc. Secs. Litig.*, 395 F. Supp. 2d 211, 218 (E.D. Pa. 2005); *In re Parmalat Secs. Litig.*, 375 F. Supp. 2d 278, 305 (S.D.N.Y. 2005). Indeed, the language from which Defendants extract this corrective disclosure requirement speaks only in terms of the "truth" and "relevant truth" reaching the market place. *See Dura*, 544 U.S. at 1631-34. At most, what can be inferred from this language is that identifying a "corrective disclosure" is *one way* in which a 10(b) plaintiff can demonstrate loss causation. *Dura* does not, however, state that this is the *only way* to plead and prove loss causation. The Ninth Circuit's application of a differently phrased standard supports this reading of *Dura*. *See In re Daou Systems, Inc.*, 411 F.3d 1006, 1026 (9th Cir. 2005) (holding that a plaintiff adequately alleges loss causation where a defendant reveals the company's "true financial condition"). Accordingly, as to Defendants argument that Plaintiffs have failed to identify a corrective disclosure with regard to Plaintiffs' Accounting Claim and Design Claim, the Court finds them without merit.

Defendants next contend that, because Plaintiffs have not shown any "corrective disclosures," Plaintiffs must demonstrate some alternative methodology to prove loss causation on a class-wide basis. (Defs' Opp'n at 7:15–22, 11:3–6.) Defendants also attack Plaintiffs' Forecast Claim—that Oracle misstated expected 3Q01 earnings and that Oracle's March 1, 2001 earnings warning was a corrective

disclosure, causing a one-day price decline of a few dollars. Defendants argue that Plaintiffs have not shown that the price decline was caused by Oracle's earnings warning rather than changed "economic circumstances" or "investor expectations, new industry-specific or firm-specific facts," or "other events" unrelated to the alleged fraud. (Defs' Reply at 10:12–18.)

Plaintiffs counter that "loss causation and damages remain a predominately class-wide issue based on proof of: (a) defendants' misrepresentations; omissions, or other fraudulent conduct; (b) resulting inflation in stock price; (c) purchase by class members at the inflated price; and (d) an event study establishing a causal connection between defendants' misconduct and plaintiffs' economic loss." (Pl. Reply at 5.) Plaintiffs also proffer the Declaration of Bjorn I. Steinholdt, wherein Mr. Steinholdt avers that a methodology consisting of an event study and analysis of price movements attributable to company specific events could be used in this case to arrive at a reasonable damages estimate for the class.[4] Mr. Steinholdt also opines that "there are numerous statistically significant company-specific price movements in Oracle's common stock during the relevant time period, i.e., price movements that are not explained by market or industry factors." (Steinholdt Decl. ¶10(b).) In particular, Mr. Steinholdt states that, with respect to Oracle's announcement that it would miss its 3Q01 profit forecast, that "price declines resulting from missing fraudulently inflated expectations set by defendants do give rise to damages," and reiterates that the methodology outlined in his Declaration could be employed to ascertain

---

[4]Specifically, Mr. Steinholdt explains the methodology as follows:

> The methodology used to calculate damages in fraud-on-the-market cases is well established. The primary objective of the damage analysis is to determine the impact of the alleged misrepresentations and/or omissions on the stock price of the publicly traded company being analyzed. The first step of the damage analysis generally involves a so-called event study. An event study is a statistical analysis used to distinguish price movements resulting from market and industry factors from price movements resulting from company specific factors. Consequently, the event analysis eliminates losses attributable to market and industry factors from the damage calculation. The second step of the damage analysis is to analyze price movements attributable to company specific events in order to determine if these events are fraud related or non-fraud related. Using the above methodology, economic losses attributable to the alleged fraud (or damages) can be separated from economic losses attributable to non-fraud related factors.

(Steinholdt Decl. ¶6.)

economic losses arising from Defendants' conduct. (*Id.*) Having carefully considered the parties submissions on this issue, the record before the Court clearly establishes that loss causation is susceptible to proof on a class-wide basis. Accordingly, the Court denies Defendants' request to deny class certification on this basis.[5]

### 2. Lack of Knowledge

Defendants next argue that Plaintiffs must prove that they traded Oracle stocks without knowledge of the alleged omissions and their falsity to satisfy Rule 23(b)(3)'s predominance requirement. (Opp at 12.) Defendants admit that proof of lack of knowledge is not an issue in most securities fraud cases. However, Defendants contend that the present case is different because Plaintiffs underlying claims of fraud were widely publicized and available to investors. (Opp. at 13.) According to Defendants, determining who knew and who did not know of these facts will result in countless mini-trials, which renders class certification inappropriate under Rule 23(b)(3)'s predominance requirement. (Opp. at 13.)

The Court disagrees. As Plaintiffs point out, the authorities cited by Defendants are inapposite. (Pls' Reply at 21 fn.9.) In *Zimmerman v. Bell*, the Fourth Circuit concluded that to recover in a securities fraud action, plaintiffs "must demonstrate that the omitted information was not otherwise available to them." 800 F.2d 386, 390 (4th Cir. 1986). The court stated that "[b]ecause the extent of knowledge of the omitted facts or reliance on misrepresented facts will vary from shareholder to shareholder, the question of whether the omission was material might require an individual inquiry for each shareholder." *Id.* Accordingly, the court concluded that common issues did not predominate over individual ones and class certification was inappropriate under Rule 23(b)(3).

*Zimmerman* is distinguishable from the facts of the present case. *Zimmerman* involved allegations that the defendant corporate directors failed to disclose material facts in connection with tender offers. *Id.* at 388. The media covered the tender offers extensively, and as a result, much of the information allegedly omitted from the solicitation registration statement was publicly disclosed. *Id.* at

---

[5] Without resolving the merits of the "battle of he experts" on this important issue, the Court has carefully evaluated the evidence submitted by the parties and finds that Plaintiffs have presented evidence sufficient to establish that loss causation can be proved on a class-wide basis for purposes of Rule 23(b)3 and no more is required at this stage.

17

390. Here, Defendants point to no such disclosures demonstrating that the alleged fraud was *explicitly* revealed to investors. Rather, Defendants have put forth general market information that might have put Plaintiffs on notice of Oracle's actual financial condition. The district court in *In re Initial Public Offering Securities Litigation* ("*IPO*") similarly distinguished *Zimmerman*, finding that *Zimmerman* "concerned a situation where the alleged fraud was *explicitly* revealed by numerous publications." 227 F.R.D. 65, 111 n.342 (S.D.N.Y. 2004) (also distinguishing *Zimmerman* on the ground that it "pre-dated the fraud on the market presumption of reliance created in *Basic*") (emphasis in original). The Court finds *IPO*'s reasoning persuasive and rejects Defendants argument.

Defendants also cite to a Second Circuit case for the proposition that a "a plaintiff alleging fraud 'cannot say that he has been deceived' where he has 'ready access to the information involved.'" *Frigitemp Corporation v. Financial Dynamics Fund*. 524 F.2d 275, 282 (2d Cir. 1975). The *Frigitemp* court, however, did not go this far, stating that "[w]hether 'constructive knowledge,' or 'ready access to the information involved,' [citation omitted] is always a bar to the plaintiff we need not decide." *Id.* The court nevertheless found that the defendants were not liable for failing to disclose material facts because they could reasonably assume that the plaintiffs already had the information that was previously disclosed in the transfer sheets. *Id.* at 283. This is not the case here. There was no explicit disclosure of facts as in *Frigitemp*, and thus, *Frigitemp* does not support Defendants' argument. Therefore, the Court rejects Defendants' request to deny class certification based on this ground.

### 3. Reliance

Finally, Defendants argue that Plaintiffs have failed to meet their burden of showing that each investor's reliance on the alleged misstatements can be proved on a class-wide basis. Defendants acknowledge that under *Basic v. Levinson*, Plaintiffs are entitled to a presumption that they relied on the alleged misstatements in trading in Oracle stock in alleging a fraud-on-the-market theory. 485 U.S. 224, 247 (1988). However, Defendants point out that many of members of the proposed class were day and swing traders and that this fact requires Plaintiffs to show that each investor traded in Oracle securities in reliance on the alleged misstatements.

Plaintiffs contend that reliance is presumed under a fraud-on-the-market theory. Accordingly, they argue that they are not required to show that each investor traded in Oracle securities without

knowledge of the alleged misstatements.

The Court agrees with Plaintiffs. The Ninth Circuit has made clear that "the defense of non-reliance is not a basis for denial of class certification." *Hanon*, 976 F.2d at 509. While the number of short sellers trading in Oracle stock may present an issue later in this case, the Court finds that this argument is not a basis to deny class certification under Rule 23(b)(3).

## IV.   Conclusion

In sum, the Court finds that Plaintiffs have sufficiently demonstrated each of the required factors for class certification under Federal Rule of Civil Procedure 23(a). Additionally, Plaintiffs have adequately shown that questions of law or fact common to the members of the class predominate over any questions affecting individual members and that a class action is superior to other methods for adjudication of this case, in satisfaction of Rule 23(b)(3).

Accordingly, the Court **GRANTS** Plaintiffs motion for class certification and **HEREBY** certifies a class consisting of:

> all persons who purchased or otherwise acquired the publicly traded securities of Oracle during the class period.

The Court also **GRANTS** Plaintiffs motion for appointment of designate representatives and appoints Local 144 Nursing Home Pension Fund (now known as 1199 SEIU Greater New York Pension Fund), Drifton Finance Corporation, Robert D. Sawyer, Ryan Kuehmichel and Dzung Chu as class representatives of the various securities claims alleged by plaintiffs herein.

**IT IS SO ORDERED.**

Dated: December 20, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE