# EXHIBIT A

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-09888-MJJ (JCS) |
| | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE SEPTEMBER 22, 2006 ORDER AND FOR FINDING OF WAIVER FOR FAILURE TO PRODUCE A PRIVILEGE LOG** |

On October 30, 2006, Plaintiffs submitted a motion to enforce September 22, 2006 order and for finding of waiver for failure to produce a privilege log. The opposition of Defendant Oracle Corporation ("Oracle"), Lawrence J. Ellison, Jeffrey O. Henley and Edward J. Sanderson (collectively "Defendants") was submitted on November 13, 2006. Plaintiffs' reply was submitted on November 20, 2006. The Special Master has considered the papers and the arguments of counsel and rules as follows:

Background

On March 9, 2001, Plaintiff Local 144 Nursing Home Pension Fund, on behalf of itself and all persons who publicly traded securities of Oracle Corporation between December 15, 2000 and March 1, 2001 ("the Class period"), filed a complaint for violation of the federal securities laws (Section 10(b) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder) against Defendants Oracle Corporation ("Oracle" or "the Company") and Lawrence J. Ellison ("Ellison") arising out of Defendants' dissemination of false and misleading statements concerning Oracle's operations and prospects for Q3 2001.

Plaintiffs allege that at the beginning of the Class period, Defendants represented that Oracle would have sequential EPS growth of 9% and revenue of over $2.9 billion, assured

1

investors that Oracle's new 11i Suite required no programming systems integration to implement the product, and represented that using the product internally would save the Company $1 billion. Plaintiffs, however, allege that Defendants knew that: (1) Suite 11i was fraught with massive technical problems, including giant gaps in its Customer Relationship Management ("CRM") modules, and required expensive systems integration work to implement; and (2) Oracle's so-called billion dollar savings was not the result of the synergies created by the 11i Suite, but rather by Ellison's decision to terminate more than 2,000 employees. During the Class Period, Defendants repeatedly stated that Oracle's Q3 2001 estimates were easily achievable, that Oracle's pipeline had never been stronger, that its application growth was accelerating, that its database and application sales were rapidly growing and that the slowing economy was showing no impact on Oracle's Q3 2001 performance. The complaint also alleged that with knowledge of the falsity of the statements, Ellison sold a large quantity of Oracle stock, and that Ellison had not sold a single share of Oracle stock in the prior five years. On March 1, 2001, Oracle revealed that, contrary to prior assurances by Defendants, Oracle would post revenue and EPS declines, database growth would be flat to slightly negative and applications growth would be 2/3 of Ellison's projections. Plaintiffs filed a revised second amended complaint on December 9, 2002.

On December 9, 2004, Plaintiffs served upon Defendants a first set of requests for production of documents, seeking documents relating to *inter alia* customer complaints, concerns and dissatisfaction with Oracle's Suite 11i.

On March 15, 2005, Judge Spero issued an Amended Order Setting a Discovery Plan ("the Discovery Plan"). The Discovery Plan sets forth a number of discovery guidelines with respect to the key issues in this case. *Id.,* § I.C. The guidelines state that Defendants shall produce *inter alia* documents and communications relating to: (1) the United States economy and its impact or potential impact on Oracle's revenues, earnings and expenses (subject to §§ I.A and I.B); (2) the functionality of Oracle's Suite 11i software and its individual modules;[1] (3) Oracle's forecasts and Oracle's sales pipeline and pipeline conversion rates/ratios (subject to § I); (4) the alleged "On Account Cleanup" occurring in November 2000, the 46,000 debit memoranda, and the accounting

---

[1] More specifically, the Discovery Plan provides that "Defendants shall produce: (a) Software versions 1, 2 and 3 of Oracle's Suite 11i; (b) High level design documents for Suite 11i; (c) Technical manuals for Suite 11i; (d) "Bug reports" that in any way reference integration or interoperability; (e) High level documents describing the scope and dimension of "bug problems" within Suite 11i and/or any of its modules other than integration and interoperability; (f) Documents regarding any lost or deferred sales of any Oracle product, as well as any material expense with respect to any Oracle product – such as refunds, rebates or remediation. For purposes of this issue only, "material expense" is defined as having a financial impact greater than or equal to $500,000." Discovery Plan, § I.C.2.

treatment of those memoranda; (5) Defendants' sales of Oracle securities during January 2001; and (6) all non-privileged documents reviewed by the SLC. *Id.*, § I.C.

On September 15, 2006, the Special Master issued an order granting in part and denying in part Plaintiffs' motion to compel further responses by Defendants to Plaintiffs' third set of requests for production, third set of requests for admission and fourth set of interrogatories. The order required production of documents responsive to the order by September 29, 2006.

Plaintiffs had also filed a motion to compel production of documents responsive to its first set of requests for production relating to Suite 11i customer escalations and settlements, refunds and other concessions negotiated or made by Oracle in connection with Suite 11i problems. On September 22, 2006, the undersigned granted in part and denied in part the motion. Defendants were ordered to produce three categories of documents by October 2, 2006, including all documents pertaining to settlements, concessions, payments, refunds or any other remediation negotiated or made by Oracle from July 1, 2000 through March 3, 2001 with 80 Suite 11i customers identified by Plaintiffs. The order required Oracle to search the files of: (a) the custodians identified in section 1.B of the Discovery Plan; (b) any witness seven days prior to their deposition; (c) any witness previously deposed in the case; (d) the fourteen individuals identified by Plaintiffs under the Special Master's May 22, 2006 order; and (e) Phillip Tate, Bob Hunt, Marcia B. Hill, and any three additional persons identified by Plaintiffs before September 22, 2006. On September 25, 2006, Plaintiffs identified 68 of 80 customers called for by the order. Plaintiffs identified the remaining 12 customers on September 27, 2006.

Defendants produced documents in response to both the September 15 and September 22 orders on September 29 and October 2, 2006. A number of the documents were not in a "usable" form. On October 10, 2006, Plaintiffs submitted a letter requesting an extension of time to file a motion to compel and to tie the extension to the date when the Defendants completed their production of documents and produced an adequate privilege log. On October 11, 2006, the undersigned directed Defendants to produce the documents in a usable format by October 16, 2006. The parties were also ordered to meet and confer regarding this production by October 20, 2006, and to file any motions to compel by October 30, 2006.

On October 16, 2006, Defendants produced documents responsive to the September 15 and 22 orders in a useable format. Plaintiffs began efforts to meet and confer about Defendants' production on October 20, 2006. Plaintiffs asserted *inter alia* that Defendants had failed to

3

produce settlement and concession documents regarding the vast majority of Suite 11i customers identified by Plaintiffs.  The parties met and conferred on October 24, 2006.  Plaintiffs sought to learn whether Defendants had produced all documents relating to settlements and concessions. Plaintiffs assert that Defendants declined to say whether all responsive documents had been produced, whether responsive documents had been withheld and declined to state what steps were taken to ensure that responsive documents had been produced.  Anderson Decl., Ex. G. Defendants assert their counsel explained that Defendants had conducted a reasonable and diligent search for documents responsive to the September 22, 2006 and had produced all-non-privileged responsive documents found in the course of that search.  Coyle Decl., ¶ 26 and Ex. 15 thereto.  Further meet and confer efforts were unsuccessful.

On October 27, 2006, Defendants provided Plaintiffs with a privilege log identifying responsive documents withheld from Defendants' October 16, 2006 production.   Plaintiffs filed the present motion on October 30, 2006.  Plaintiffs' motion seeks:  (1) to "enforce the September 22, 2006 Order," and (2) a "finding of waiver for Defendants' failure to timely produce a privilege log for responsive documents withheld."

### Legal Standard

"When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5).   "To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Adv. Comm. Notes to 1993 Amendments to Fed.R.Civ.P. 26(b); see also *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist.,* 408 F.3d 1142, 1147 (9th Cir. 2005). "The party must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection." Adv. Comm. Notes to 1993 Amendments to Fed.R.Civ.P. 26(b) "The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection." *Id.* "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

documents are claimed to be privileged or protected, particularly if the items can be described by categories." *Id.*

To facilitate its determination of privilege, a court may require "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). The privilege log should "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473. (2nd Cir. 1996). "Other required information, such as the relationship between    individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony." *Id.* "Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected." *Id.* In *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992), the court noted that a privilege log that contained the following information would be sufficient: (a) the attorney and client involved; (b) the nature of the document; (c) all persons or entities shown on the document to have received or sent the document; (d) all persons or entities known to have been furnished the document or informed of its substance; and (e) the date the document was generated, prepared, or dated.

Discussion

*Compliance with September 22, 2006 Order*

Plaintiffs assert that Defendants have failed to produce settlement and concessions documents as required by the September 22, 2006 order and refuse to confirm whether they had produced all documents relating to the settlements and concessions at issue.

Defendants assert that in accordance with the September 22, 2006 order, Defendants have conducted a reasonable and diligent search and produced all responsive, non-privileged documents.

Any party may serve on any other party a request to produce any designated documents which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served. Fed.R.Civ.P. 34(a). "A response to a request for production "shall state, with respect to each item or category, that inspection and related activities will be permitted as requested." Fed.R.Civ.P. 34(b).

The September 22, 2006 order required Defendants to produce *inter alia* all documents pertaining to settlements, concessions, payments, refunds or any other remediation negotiated or made by Oracle from July 1, 2000 through March 3, 2001 with 80 Suite 11i customers identified by Plaintiffs.  The order required Oracle to search the files of specified individuals.

The parties have not provided the Special Master with an exhibit reflecting Defendants' initial response to the order.  Defendants' October 16, 2001 response identifies CDs containing documents, and states that the documents are responsive *inter alia* to the September 15 and 22, 2006 orders.  Based upon the record presented, the Special Master is unable to determine whether Defendants have conducted the searches required by September 22, 2006 order and is unable to determine whether Defendants have produced all responsive, non-privileged documents in their possession, custody or control.   Plaintiffs' speculation about missing documents is insufficient.  The declaration of Defendants' counsel regarding what has been produced similarly is insufficient to resolve whether Defendants have complied with the order.

Accordingly, the motion to compel compliance with the September 22, 2006 order is GRANTED IN PART.  On or before December 29, 2006, Defendants shall provide Plaintiffs with a sworn declaration from an Oracle representative with knowledge stating that Defendants have conducted the searches required by September 22, 2006 order and that Defendants have produced all responsive, non-privileged documents in their possession, custody or control.

*Waiver*

Plaintiffs contend that Defendants' failure to timely produce a privilege log constitutes waiver.  Plaintiffs assert that "ignoring Plaintiffs' repeated requests, Defendants did not produce a log until 4:00 p.m. one business day before the deadline to move to compel and a full week after the deadline to meet and confer had passed."  Plaintiffs assert that Defendants' untimely production denied Plaintiffs the opportunity to assess and challenge the validity of Defendants' privilege claims.  Plaintiffs assert that the Discovery Plan called for production of these documents nearly 18 months ago, and four weeks have passed since Defendants produced documents in response to the Special Master's recent discovery orders.

Defendants assert that their privilege log was timely produced.

Section II.D of the Discovery Plan states that the parties "shall produce privilege logs within forty-five (45) days after a document is withheld as privileged.

6

On October 2, 2006, Defendants produced documents in response to the September 22, 2006 order.   Defendants' privilege log with respect to this production is dated October 27, 2006. Under the terms of the Discovery Plan, the privilege log is not untimely.  Even assuming that the privilege log was untimely, a finding of waiver is discretionary.  Based upon the record presented, such a finding is not appropriate.

Plaintiffs further assert that Defendants' privilege log is deficient on its face.  Defendants assert that each entry on the log clearly identifies a legitimate basis for claiming privilege or work product protection.

The Special Master has reviewed the privileged log produced by Defendants in light of the general deficiencies identified in Plaintiffs' motion.  *See* Motion at 7.  The arguments made in the motion by Plaintiffs go to the sufficiency of the claim of privilege (e.g., documents exchanged between attorneys), not the adequacy of the description in the log.  The arguments made for the first time in Plaintiffs' reply should have been raised in Plaintiffs' motion, and will not be considered.

In light of the foregoing, Plaintiffs' request for a finding of waiver in connection with Defendants' October 27, 2006 privilege log is DENIED.

IT IS SO ORDERED.

Dated: ___12-14-06___

Hon. Edward A. Infante (Ret.)
Special Master

7