Exhibit A

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-09888-MJJ (JCS) |
| | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DOCUMENTS CONTAINED IN DEFENDANTS' PRIVILEGE AND REDACTION LOGS** |

On October 30, 2006, Plaintiffs submitted a motion to compel production of documents contained in Defendants' privilege and redaction logs. The opposition of Defendants Oracle Corporation ("Oracle"), Lawrence J. Ellison, Jeffrey O. Henley and Edward J. Sanderson (collectively "Defendants") was submitted on November 13, 2006. Plaintiffs' reply was submitted on November 20, 2006. The Special Master has considered the papers and the arguments of counsel and rules as follows:

### I. Background

Plaintiffs' motion asserts that Defendants have provided Plaintiffs with at least nine privilege logs in this case, each of which identify a large number of documents withheld from production on the basis of the attorney-client privilege and work product doctrine. Plaintiffs' motion references four privilege logs produced by Defendants. The first is dated June 9, 2005. Britton Decl., Ex. 2. The second log, dated January 17, 2006, is 130 pages and corresponds to Defendants' November 2005 production of documents. *Id.*, Ex. 14. On March 27, 2006, Defendants produced a number of supplemental privilege logs pertaining to a number of prior productions by Defendants. Glennon Decl., Ex. 3. On June 26, 2006, Defendants provided Plaintiffs with an updated privilege log (77 pages in length) for Defendants' November 2005 production of documents relating to debit memos. Britton Decl., Ex. 15. On September 26, 2006,

Defendants provided Plaintiffs with a privilege log for Oracle's supplemental production of accounting documents. *Id.*, Ex. 16.

Plaintiffs assert that "most of the documents" withheld or redacted by Defendants are not privileged or protected by the work product doctrine and that Defendants have improperly redacted hundreds of document based on alleged non-responsiveness. Plaintiffs assert that the parties met and conferred on October 23, 2006, but that Defendants refused to comply with Plaintiffs' requests for production of the documents at issue.

On October 27, 2006, Defendants sent a meet and confer letter to Plaintiffs regarding privilege logs provided by Defendants on June 26, 2006 and September 26, 2006 in connection with Oracle's production of documents related to debit memos. Glennon Decl., Ex. 2. Therein, Defendants offered to review and supplement descriptions in the privilege logs to the extent that Plaintiffs' truly believed that they were insufficient. *Id.* The letter asserts that Plaintiffs' response was "it's too late" to revisit the sufficiency of the logs. *Id.* The letter asserts that Plaintiffs did not make any serious effort to meet and confer about this issue until October 23, 2006. *Id.* With respect to Plaintiffs' concerns about the number of documents withheld on the basis of the attorney-client privilege, Defendants offered to produce redacted copies of certain portions of documents described generally in the privilege log as communications seeking approval of contract terms from Oracle's legal department, redacting only the question posed to and answers provided by Oracle's in-house counsel (as well as any other statements or comments reflecting such protected communications). *Id.* This offer was conditioned on the fact that any such production not be construed as a general waiver based upon the selective disclosure of privileged material. *Id.* Plaintiffs rejected this offer as well, and instead requested that Oracle produce unredacted copies of all such documents in their entirety. *Id.*

Plaintiffs filed the present motion on October 30, 2006, seeking an order compelling production of documents contained in Defendants' privilege and redaction logs. On November 17, 2006, well after the present motion was filed, Defendants provided Plaintiffs with an updated version of the privilege log served by Defendants on June 9, 2005. Solomon Reply Decl., Ex. 1. The log was modified to reflect: (1) Defendants' "recent" production of certain documents from the files of Daniel Cooperman that had previously been withheld and logged on the basis of attorney-client privilege; (2) Defendants' production of bug reports that were previously logged as non-responsive; and (3) a corrected Bates number on page 21 of the log. *Id.*

## II. Legal Standard

### A. *Attorney-Client Privilege*

The attorney-client privilege exists to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege protects not only an attorney's communication of legal advice to his client, but also the client's communication of information to the attorney "to enable him to give sound and informed advice." *Id.* at 390. The protection extends only to communications; however, it does not extend to the facts underlying privileged communications. *Id.* at 395-96.

The attorney-client privilege may be broken down into eight elements: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). Although element (5) refers to communications by the client to the attorney, it is well-established that the privilege also applies to communications by the attorney to the client. *Upjohn*, 449 U.S. at 390; *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). The party asserting the privilege has the burden of establishing that the privilege applies to a particular document or set of documents. *In re Grand Jury Investigation*, 974 F.2d at 1070.

In the corporate context, employees of every level may have information needed by corporate counsel to give sound advice. *Upjohn*, 449 U.S. at 391. Accordingly, a communication of even a low-level employee may be privileged if made to counsel for the purpose of obtaining legal advice for the corporation. *Id.* at 394. Moreover, a communication from one employee to another may be protected if it is intended that the second employee transmit the information to corporate counsel for advice. *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514 (S.D. Cal. 2003).

Not all communications involving corporate employees and corporate counsel are privileged, however. The protection extends only to communications relayed for the purpose of giving or obtaining legal advice. *Kintera*, 219 F.R.D. at 515. Communications regarding business advice are not protected. *Id.*; *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990). And "where there is a clear business purpose in the environment in which the

communications occurred[ ], the court should sustain an assertion of privilege only when there is a clear evidentiary predicate for concluding that each communication in question was made primarily for the purpose of generating legal advice." *McCaugherty*, 132 F.R.D. at 238. Communications between attorney and client are not protected when it is intended that the communications be relayed to a third party. *United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003).

Voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir. 1981). "The privilege which protects attorney-client communications may not be used both as a sword and a shield. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted). "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.* "A client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client communication." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999). "A client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same matter [because] 'the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former." *Id.* at 207 n.19 (citation omitted).

B. *Work Product Doctrine*

Work product protection is designed to preserve the privacy of attorneys thought processes, and to prevent parties from borrowing the wits of their adversaries. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Fed. R. Civ. P. 26(b)(3) provides that:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

"The party claiming work product immunity has the burden of proving the applicability of the doctrine." *In re Syncor Erisa Litigation,* 229 F.R.D. 636, 644 (C.D.Cal. 2005) (citation omitted). "To qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),* 357 F.3d 900, 907 (9th Cir. 2004)(citations and quotations omitted). "Work product may include documents prepared by a party, as well as by the party's attorney." *U.S. ex rel. Bagley v. TRW, Inc.,* 212 F.R.D. 554, 559 (C.D.Cal. 2003).

"The work product privilege is not automatically waived by any disclosure to third persons." *Samuels v. Mitchell,* 155 F.R.D. 195, 200 (N.D.Cal. 1994) (citation omitted). "Rather, the courts generally find a waiver only if the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Id.* at 200-201 [citing *In re Grand Jury,* 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982); *United States v. American Telephone and Telegraph Co.,* 642 F.2d 1285 (D.C.Cir. 1980); *In re Doe,* 662 F.2d 1073 (4th Cir. 1981) ("To effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.")] "Although the work product doctrine provides protection only against adversaries, and, thus, is not as easily waived as the attorney-client privilege, the standard for waiving the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege." *In re Syncor Erisa Litigation,* 229 F.R.D. at 645 (case citations and quotations omitted).

## C. *Withholding Privileged Information*

"When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). "To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Adv. Comm. Notes to 1993 Amendments to Fed.R.Civ.P. 26(b); see also *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist.,* 408 F.3d 1142, 1147 (9th

Cir. 2005). "The party must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection." Adv. Comm. Notes to 1993 Amendments to Fed.R.Civ.P. 26(b) "The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection." *Id.* "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." *Id.*

To facilitate its determination of privilege, a court may require "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). The privilege log should "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473. (2nd Cir. 1996). "Other required information, such as the relationship between … individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony." *Id.* "Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected." *Id.* In *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992), the court noted that a privilege log that contained the following information would be sufficient:  (a) the attorney and client involved;  (b) the nature of the document; (c) all persons or entities shown on the document to have received or sent the document; (d) all persons or entities known to have been furnished the document or informed of its substance; and (e) the date the document was generated, prepared, or dated.

"When the propriety of the privilege is disputed, then courts must resort to *in camera* inspection to determine what documents if any are protected." *Power Mosfet Technologies v. Siemens AG*, 206 F.R.D. 422, 426 n.12 (E.D. Tex. 2000); *In re Grand Jury Investigation*, 974 F.2d at 1074. "*In camera* review of documents is a much smaller intrusion on the attorney-client privilege than full disclosure. *In re Grand Jury Investigation*, 974 F.2d at 1072. "Although *in camera* review of documents does not destroy the attorney-client privilege, it is an intrusion which must be justified." *Id.* at 1074. "To empower the district court to review the disputed

materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075. "If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court." *Id.* Once the threshold showing is made to allow *in camera* review, courts should make the decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that *in camera* review will reveal evidence to establish that the materials are not privileged. *Id.* at 1073, 1075.

## III. Discussion

Plaintiffs' motion seeks to compel production of the following categories of allegedly improperly withheld or redacted documents:  (1) documents withheld by Defendants related to debit memo transactions; (2) documents produced to Ernst & Young; (3) documents related to business transactions; (4) documents related to document preservation and destruction of evidence; (5) documents without a sufficient description; and (6) documents containing unlogged and unexplained redactions.

### A. *Documents Related to Debit Memo Transactions*

Plaintiffs assert that Defendants are attempting to shield over 2,000 relevant documents (and e-mails) related to the debit memo transactions on the basis of the attorney-client privilege, citing Britton Decl., Exs. 14-16 ( January 17, 2006, June 26, 2006 and September 26, 2006 privilege logs).[1]  Plaintiffs assert that for 99% of these documents, Defendants include a single description, "e-mails between in-house counsel and sales personnel regarding approval of contract terms." *See e.g.*, Britton Decl., Ex. 15 at 1. Plaintiffs assert that most if not all of the e-mails are related to transactions that occurred before the filing of this lawsuit, and thus there is no clear evidentiary predicate for concluding that the primary purpose of the e-mails concerning contract approvals was to give legal rather than business advice.

Plaintiffs assert that these documents are being improperly withheld and should be produced.  Plaintiffs assert that: (1) Defendants do not contend that the communications contain legal advice; (2) Defendants do not provide enough detail about the communications to meet their burden of invoking the attorney-client privilege; (3) the e-mails appear to involve routine approvals of business transaction, and do not reference pending litigation and do not indicate that

---

[1] Plaintiffs' motion, however, does not specify the specific privilege log entries that are at issue.

they are being sent to counsel for legal advice; and (4) there is no clear evidentiary predicate for concluding that the primary purpose for thousands of e-mails concerning contract approvals was to give legal rather than business advice.

Defendants assert that:  (a) most of the entries that Plaintiffs challenge are from a superseded privilege log[2] (January 17, 2006 log, Britton Decl., Ex. 14) that Defendants voluntarily replaced (with the June 26, 2006 log, Britton Decl., Ex. 16), and as a result, much of Plaintiffs' debit memo argument is moot; (b) the descriptions of the withheld documents on the debit memo logs are more than sufficient; (c) because communications between in-house counsel and an employee regarding contract terms are privileged (drafting legal documents is an activity of lawyers and constitutes legal advice), the underlying documents were properly withheld; and (d) Plaintiffs refused Defendants proposed compromise, i.e., that Defendants would produce documents with privileged material after redacting the explicit request for advice to, and response from in-house counsel (and other exchanges reflecting attorney-client advice or work product), but this production would not be considered a general waiver.

In reply, Plaintiffs assert that:  (1) even if one privilege log superseded another, there are at least three logs (dated June 26, 2006, September 26, 2006 and October 27, 2006) for debit memo documents containing approximately 100 pages of logs and over 1,300 entries; (2) the documents in question are a product of the *business* function of Oracle's legal department; (3) the documents at issue are routine approvals of business transactions between Oracle and their customers, and do not contain privileged legal advise; (4) there is no basis to assert privilege over hundreds of routine business communications approved by lawyers in the normal course of business without "legal advice" being shown to have been offered; and (5) if the Special Master is not convinced of Plaintiffs' position on this specific series of documents, Plaintiffs' request that the Special Master review a representative sampling of these documents randomly chosen by him, to determine whether they are privileged.

The initial question for the Special Master is the privilege logs and/or entries at issue. Plaintiffs' motion improperly relies upon Defendants' January 17, 2006 privilege log (Britton Decl., Ex. 14).  Defendants' privilege log dated June 26, 2006 (Britton Decl., Ex. 15) is essentially identical to the January 17, 2006 and supersedes the January 17, 2006 privilege.

---

[2] Defendants asserts that they "removed and produced more than 1,300 documents, including many of the documents that Plaintiffs are complaining about in the present motion;"

Defendants' June 26, 2006 and September 26, 2006 (Britton Decl., Ex. 16) privilege logs contain numerous entries regarding debit memo transactions described as "e-mails between in-house counsel and sales personnel regarding approval of contract terms," and Defendants concede that these privilege logs are "operative." Opposition at 3 n. 1. Plaintiffs' reply references a third privilege log, dated October 27, 2006, which they contend is at issue. The Special Master carefully has reviewed the parties' papers and no such privilege log has been included in the motion or opposition papers. Defendants' November 17, 2006 privilege log was included with Plaintiffs' reply. The November 17, 2006 privilege log updates Defendants' June 9, 2005 privilege log, and unlike the June 26, 2006 and September 26, 2006 logs, does not appear to address debit memo transactions. Accordingly, the only privilege logs at issue for purposes of this portion of Plaintiffs' motion are the June 26, 2006 and September 26, 2006 logs. *See* Britton Decl., Exs. 15 and 16.

The entries in the June 26, 2006 and September 26, 2006 logs which contain the description "e-mails between in-house counsel and sales personnel regarding approval of contract terms" (or something similar thereto) are insufficient to demonstrate that the communication was made for the purpose of generating legal as opposed to business advice, and as such these entries are insufficient to establish that the withheld documents are privileged from disclosure by the attorney-client privilege. Defendants did not offer additional evidence to establish the application of the privilege to the documents. During the parties' meet and confer discussions, Defendants offered to produce documents with privileged material after redacting the explicit request for advice to, and response from in-house counsel (and other exchanges reflecting attorney-client advice or work product) provided that this production would not be considered a general waiver. This was a reasonable proposal, and will be ordered by the Special Master as an interim step prior to final resolution of Defendants' privilege claims with respect to the entries at issue.

Plaintiffs' motion to compel production of withheld documents related to debit memo transactions is GRANTED IN PART. Defendants shall produce to Plaintiffs the entries in the June 26, 2006 and September 26, 2006 logs which contain the description "e-mails between in-house counsel and sales personnel regarding approval of contract terms" (or something similar thereto), redacting only the question posed to and answers provided by Oracle's in-house counsel (as well as any other statements or comments reflecting such protected communications). This production shall not be construed as a general waiver based upon the selective disclosure of

privileged material.  Upon receipt of these documents (with redactions), Plaintiffs may select up to 100 of the documents ordered produced (with redactions) as a sampling to be submitted to the Special Master for *in camera* review.  Defendants shall produce unredacted copies of the documents selected by Plaintiffs to the Special Master within five days of receipt of Plaintiffs' identification of the sample documents.

### B. *Documents produced to Ernst & Young*

On March 27, 2006, Defendants provided Plaintiffs with a supplemental privilege log pertaining to the Ernst & Young document production. Glennon Decl., Ex. 3.  The log contains four entries that reflect documents (from October and November 2002) that were in the possession of Ernst & Young.  *Id.*  The log describes the documents as confidential memoranda from Oracle's in-house or general counsel to Oracle's board members and senior executives analyzing and/or providing legal advice regarding *In re Oracle Corporation Securities Litigation*. The documents are being withheld on the basis of the attorney-client privilege and the work product doctrine.

Plaintiffs contend that by producing these documents to their accountant and then producing the underlying information to the Special Litigation Committee ("SLC"), Defendants have waived any claim of attorney-client privilege or work product with respect to these documents.  Plaintiffs assert that: (1) the SLC relied upon and specifically cited Ernst & Young's investigation of the debit memos in forming their conclusions in the SLC report; (2) Ernst & Young's representative made representations to the SLC about Ernst & Young's investigation, and that his testimony was undoubtedly based upon the memos produced to Ernst & Young; and (3) Defendants cannot shield relevant information that forms the basis for Ernst & Young's conclusions, when those conclusions were provided to the SLC and thus used as a defense.

Defendants contend that the memoranda listed on the log are protected by the work product doctrine and the attorney-client privilege, and that Plaintiffs have failed to meet their burden to establish a waiver.  Defendants assert that they did not waive the work product doctrine simply by sharing the memoranda with their outside accountant.  Defendants further assert that: (1) there is no evidence to suggest that Ernst & Young relied upon the memoranda in reaching any conclusions or that Ernst & Young's representative disclosed the contents of any of the memoranda when he was interviewed by the SLC (one of the memoranda is dated two weeks after the SLC interviewed Ernst & Young's representative); (2) neither of the two documents

cited by Plaintiffs mentions the memoranda at issue, and to the contrary, both documents indicate that the conclusions Ernst & Young's representative communicated to the SLC were based upon independent procedures that Ernst & Young had performed at the request of Oracle's management. *See* Britton Decl., Exs. 17 and 18.

In reply, Plaintiffs assert that Defendants provided Ernst & Young with the memoranda at issue for the purpose of reporting its finding to the SLC; that Ernst & Young's relationship to Oracle was limited to the SLC investigation as a third-party auditor; that Oracle intended Ernst & Young to make use of these memoranda in the SLC investigation; and that after Ernst & Young's conclusions and facts were provided to the SLC, Oracle referred to them as a defense in this and other litigation. Plaintiffs assert that there hardly could be a clearer demonstration of waiver than these particular memoranda. Plaintiffs assert that the interests between Oracle and Ernst & Young were more akin to adversaries than in the typical auditing relationship and fall squarely within the reasoning of those case that find waiver. Plaintiffs assert that Ernst & Young's analysis would have resulted in disclosure of adverse facts to the SEC. Plaintiffs conclude that Oracle's disclosure of the documents to Ernst & Young waived any work product protection.

In *In re JDS Uniphase Corporation Securities Litigation*, 2006 WL 2850049 (N.D.Cal. October 5, 2006), the lead plaintiff propounded requests for production of documents seeking production of minutes from the meetings of the defendant board of directors. In response, Defendant produced redacted minutes, and a privilege log listing the redacted minutes as protected by the attorney-client privilege and the work product doctrine. The lead plaintiff filed a motion to compel production of unredacted Board minutes, arguing that the minutes were not entitled to work product protection and even if they were, the protection was waived by disclosure of the minutes to Defendants' auditing firm, Ernst & Young. In response to the Court's request, Defendant lodged the eight disputed board minutes for *in camera* review. *Id.* at *1.

After citing *Samuels* for the proposition that work product protection may be waived by disclosures to third parties "in a manner which substantially increases the opportunity for potential adversaries to obtain the information," the Court stated that:

> Courts are split as to whether disclosure to an outside auditor constitutes a waiver. Compare, *e.g., Medinol v. Boston Scientific Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002) (determining that the work product protection was waived with respect to litigation committee minutes that were disclosed to outside auditor because the auditor's interests were not aligned with the company; "in order for auditors to properly do their job, they must not share common interests with the company they audit. 'Good auditing requires

adversarial tension between the auditor and the client.'" ) (emphasis in original), *with, e.g.,*
*Merrill Lynch & Co. v. Allegheny*, 229 F.R.D. 441 (S.D.N.Y. 2004) (determining that the
work product protection was not waived with respect to internal investigative reports of
circumstances surrounding executive theft which were disclosed to an independent
auditor; the relationship between an auditor and client was not the kind of adversarial
relationship contemplated by the work product doctrine); *see also Samuels*, 155 F.R.D.
195 (determining that the work product protection was not waived with respect to
documents disclosed to outside auditor acting as a consultant where there was not a
substantial danger that the documents would be disclosed to an adversary, and the
company kept all communications with the auditor confidential and took steps to
guarantee that the documents would not be given to an adversary).

*Id.* The Court concluded that "[w]hile there are good arguments on both sides of the issue, at this
time, the Court is more persuaded by the latter view" [and that] "[a]t least under the
circumstances of this case, the disclosure did not constitute an automatic waiver of the work
product protection." *Id.* "The Court nonetheless reviewed the unredacted minutes *in camera* to
see if the material withheld came within the privilege." *Id.* at *2.

Plaintiffs do not assert that the documents at issue are not, at least initially, entitled to
protection pursuant to the attorney-client privilege and/or work product doctrine. Instead,
Plaintiffs assert that any such protection has been waived by disclosure to Ernst & Young. Ernst
& Young became Oracle's independent auditors in April 2002, replacing Arthur Andersen.
Britton Decl., Ex. 17 at XV-49 n. 127. Ernst & Young performed the audit of Oracle's
consolidated financial statements for FY 2002. *Id.* The documents cited by Plaintiffs reveal that
Ernst & Young's presentation to the SLC was based upon certain procedures performed by Ernst
& Young at the request of Oracle's management. *Id.* at XV-50. The documents do not reveal that
Ernst & Young's presentation was based upon the Oracle documents at issue, or that the
documents were disclosed by Ernst & Young's representative.

Based upon the record presented, the Special Master does not find that the disclosures to
Ernst & Young by Oracle resulted in a waiver of work product protection. The work product
privilege is not automatically waived by any disclosure to third persons. The facts presented do
not compel the conclusion that Oracle's disclosures to Ernst & Young substantially increased the
opportunity for potential adversaries to obtain the information. Accordingly, Plaintiffs' motion to
compel production of documents on the Ernst & Young privilege log is DENIED.

//

//

## C. *Documents related to "Business Transactions"*

### 1. Forwarded E-mails

Plaintiffs assert that Defendants are asserting privilege over a number of e-mails and documents related to customer disputes and contractual issues. Britton Decl., Ex. 2 at 1-3. The log describes the documents as "e-mail from Oracle executive to Oracle senior executives forwarding in-house counsel's legal advice regarding settlement of customer dispute." *Id.*

Plaintiffs assert that many of these e-mails were not sent between attorney and client, but rather contained forwarded e-mails between non-lawyers that purportedly contained legal advice. *See id.* (8/29/00 e-mail from Sandy Sanderson to Frank Varasano and other non-lawyer employees). Plaintiffs assert that because this e-mail is not a communication between attorney and client, it must be produced. Plaintiffs further assert that Defendants have not established the evidentiary predicate for establishing that the forwarded part of the e-mail was privileged, e.g., that the primary purpose of the communications were legal rather business in nature.

Defendants assert that Plaintiffs ignore well established law which provides that if an underlying communication between an attorney and client is protected, forwarding the communication to another agent of the client, who must act upon the advice, also is protected, citing *inter alia Andritz Sprout-Bauer v. Beazer East, Inc.*, 174 F.R.D. 609, 633-634 (M.D. Pa. 1997). Defendants assert that each of the four e-mails cited by Plaintiffs fall squarely within the ambit of these holdings.

Defendants' privilege log (Britton Ex. 2 at 1-3) is insufficient to demonstrate that the four e-mails are privileged from disclosure by the attorney-client privilege. Defendants did not offer additional evidence to establish the application of the privilege to the documents. Defendants shall produce the four e-mails for *in camera* review no later than January 11, 2007.

### 2. Ingersoll-Rand and Century Aluminum E-mails

In a privilege log dated February 10, 2006 – March 20, 2006, Defendants assert privilege regarding eight e-mails relating to two customers, Ingersoll-Rand and Century Aluminum. Britton Decl., Ex. 20. Plaintiffs assert that Defendants did not provide the requisite evidentiary foundation for the privilege. Plaintiffs assert that the description, which states that the communications are "privileged and confidential," is insufficient to carry Defendants' burden.

Defendants assert that the description is sufficient.

Defendants' privilege log (Britton Decl., Ex. 20) is insufficient to demonstrate that the eight e-mails are privileged from disclosure by the attorney-client privilege. Defendants did not offer additional evidence to establish the application of the privilege to the documents. Defendants shall produce the eight e-mails for *in camera* review no later than January 11, 2006.

D. *Documents related to Document Preservation and Destruction of Evidence*

Defendants have withheld and asserted privilege over numerous documents relating to Oracle's document retention, collection and preservation efforts in connection with the litigation. *See* Britton Decl., Ex. 2 at 5-17.

Plaintiffs assert that even if the documents were privileged from disclosure, Defendants have waived any protection by producing to Plaintiffs and the Court in this case, documents, letter, sworn declarations, and deposition testimony setting forth facts and communications surrounding Oracle's document preservation, retention and collection efforts. *See id.,* Ex. 21 (declaration of Lauren Segal in support of Defendants' opposition to Plaintiffs' motion to compel recovery of backup tapes). Plaintiffs assert that any privilege that may have attached to Oracle's preservation efforts has been intentionally compromised by Defendants' extensive use of those privileged communications to litigate this case. Plaintiffs assert that they are at a major disadvantage and will be severely prejudiced if Defendants are allowed to selectively choose the communications regarding preservation they provide to the parties and the Court. Plaintiffs further assert that one e-mail is not a communication between attorney and client and therefore must be produced. (6/20/01 e-mail from Vallarino to Rocha on page 16 of the June 8, 2005 log).

Oracle asserts that it has not waived the attorney-client privilege with respect to communications regarding document preservation and collection. Oracle asserts that while they have disclosed the facts relating to Oracle's document gathering and retention, it has not revealed the specific attorney-client communications, and that this approach is consistent with Judge Spero's prior order and Plaintiffs' prior endorsement of this approach. Oracle asserts that disclosure of facts relating to document preservation does not result in a waiver. Oracle asserts that the only communication identified by Plaintiffs as an example of Oracle's use of privileged communication is the foundation preservation notice sent to employees at the outset of the lawsuit. Oracle asserts that this document was produced only after Judge Spero ordered production of the SLC report and its exhibits, and the order foreclosed any claim of subject matter

waiver. Oracle asserts that the attachment to the Segal declaration, which was long ago produced to Plaintiffs pursuant to Judge Spero's order, creates no basis whatsoever for a general waiver.

In reply, Plaintiffs assert that documents withheld relating to preservation issues should be produced. Plaintiffs assert that Defendants' preservation efforts and the legal advice of counsel formed a part of the SLC report and were used by Defendants in the Delaware derivative litigation, that such information was used in the Delaware litigation, and that Defendants have consequently waived the privileged concerning document preservation in this case.

Plaintiffs have failed to identify any privileged attorney-client communications that Defendants have voluntarily disclosed in this action. In support of their waiver argument, Plaintiffs cite the declaration of Ms. Segal. The declaration sets forth facts surrounding Oracle's document preservation efforts. Plaintiffs, however, have failed to identify a specific privileged communication in her declaration that was voluntarily disclosed by Defendants. In reply, Plaintiffs make no mention of the Segal declaration. Instead, Plaintiffs refer the Special Master to a portion of the SLC report. *See* Solomon Decl., Ex. 8. Plaintiffs, however, have failed to identify any statement in the SLC report that amounts to the disclosure of a privileged communication. Finally, Plaintiffs note that the destruction of evidence has become a paramount issue in the case. Nevertheless, Plaintiffs have failed to establish a waiver of the attorney-client privilege or work product doctrine in connection with Oracle's document preservation efforts. Accordingly, Plaintiffs' motion to compel production of withheld documents related to document preservation and destruction of evidence is DENIED.

### E. *Documents without a Sufficient Description*

Plaintiffs assert that most of Defendants' privilege and redaction log entries do not give sufficient description for the basis for withholding the documents. *See* Britton Decl., Ex. 22 (Defendants' June 8, 2005 privilege log). Plaintiffs assert that Defendants must produce complete unredacted copies of relevant documents unless a privilege is effectively claimed.

Defendants assert that they have always been willing to revisit the adequacy of the descriptions in its privilege logs. Defendants nonetheless assert that the descriptions in the challenged entries are more than sufficient. Defendants assert that Plaintiffs cannot credibly demand that "with the exception of privilege information, defendants ... must produce complete unredacted copies of relevant documents." Defendants assert that there is no basis for Plaintiffs'

claim, and that Oracle offered this compromise during meet and confer, but Plaintiffs rejected the offer. Glennon Decl., Ex. 2.

The descriptions challenged by Plaintiffs (Britton Decl., Ex. 22) identify the documents and the individuals who were parties to the communications, and provide sufficient detail to permit an initial determination as to whether the documents are at least potentially protected from disclosure. While the entries alone are insufficient to allow a final determination that the documents are in fact privileged from disclosure, the privilege log entries are adequate. Consistent with Oracle's offer to produce unredacted copies of withheld documents on non-responsiveness grounds, Defendants shall produce copies of the documents identified in exhibit 22 to the Britton declaration, redacting only privileged information.

### F. *Documents containing Unlogged and Unexplained Redactions*

Plaintiffs assert that Defendants' production is replete with unlogged redactions. Plaintiffs assert that many of the documents within the Bates pages set forth on exhibit 4 to the Britton declaration contain unexplained deletions and redactions. Plaintiffs assert that every document produced by Defendants in redacted form should be reproduced unredacted in its entirety.

Defendants assert that the vast majority of the redacted documents listed in the spreadsheet (Britton Decl., Ex. 4) relate to the supplemental accounting production (which documents were also addressed in Plaintiffs' motion to compel additional accounting documents based upon recent testimony and new evidence). Defendants assert that the redactions to the accounting documents were explained to Plaintiffs on multiple occasions. Defendants explained that the redacted portions of the supplemental accounting production contained data that could not be linked to one of the 926 debit memos, and therefore Defendants would not be producing a redaction log for the supplemental accounting production. *See* Glennon Decl., Exs. 17-19. With respect to the individually-cited exhibits (5-13 and 23-32) to the Britton declaration cited in Plaintiffs' motion (which are included in exhibit 4), Defendants asserts that the documents (and redactions thereon) were part of Oracle's initial disclosures and documents produced in one of the derivative lawsuits. *See* Glennon Decl., ¶ 21 (and Ex. 20 thereto) Defendants assert that the exhibits do not involve redaction made in the course of this lawsuit, and that the exhibits were produced to Plaintiffs as part of Defendants' initial disclosures in this action prior to entry of the Discovery Plan.

In reply, Plaintiffs assert that pursuant to the Discovery Plan, Defendants must produce documents produced in the derivative case, and that the fact Defendants produced the documents in redacted form with their initial disclosures does not exempt Defendants from abiding by the Court's order to produce all documents called for under the Discovery Plan or a log within 45 days of production. Plaintiffs assert that Defendants have made no attempt to show that any of the redacted documents from the derivative case, produced in this case, have been properly redacted. Plaintiffs assert that all of the documents that have been redacted without explanation should be produced "complete and unredacted."

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

In *In re Atlantic Financial Federal Securities Litigation,* 1991 WL 153075 (E.D.Pa. August 6, 1991), a class action securities fraud case, the plaintiffs filed a motion to compel production of *inter alia* minutes of and reports to the board of directors and unredacted copies of documents previously produced. The plaintiffs asserted that the defendants had deleted and withheld highly relevant pages from the documents it produced, and that the defendants had redacted other documents to such an extent that they had been rendered meaningless. Defendants responded "that the vast majority of the documentation would be provided in unredacted form," but noted that "only those documents containing irrelevant information ... were ... redacted." After noting the plaintiffs' reliance upon *Seafirst Corp. v. Jenkins*, 644 F.Supp. 1160 (W.D.Wash. 1986), the court stated that:

> In the present case, no privileges are asserted by [the defendants] and the only objection made is that the redacted information is irrelevant. Given that relevancy is broadly construed for discovery purposes ... and that plaintiffs have indicated the possibility of additional relevant information within the redacted documents, it is within this Court's discretion to order the documents produced in unredacted form. Moreover, defendants are already well-protected from improper disclosure by the confidentiality order. Therefore, in the event that there are documents yet unproduced or produced in redacted form, defendants are ordered to produce those to plaintiffs.

*Id.* at *4.

*In re Medeva Securities Litigation,* 1995 WL 943468 (C.D.Cal. May 30, 1995), the plaintiff filed a motion for an order compelling further production of documents. The plaintiff complained that the defendants had redacted at least some material from "thousands" of documents, and that in some cases, the documents have been redacted so severely that they are unusable or devoid of context. Defendants responded that they have redacted the documents based upon a number of principles, including: (i) privilege; (ii) descriptions of pending litigation; and (iii) outside the relevant time period. The court stated that:

> The problem is less the principles than the procedure. The Court does not welcome unilateral editing of documents by the producing party. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing or difficult to use. All too often, the practice results in litigation of collateral issues and *in camera* review of documents by the Court, with the result that the time of both counsel and the Court is wasted. These drawbacks ordinarily outweigh the minimal harm that may result from disclosure of some irrelevant material. Infrequently, where a document contains a paragraph of privileged or very sensitive material, redaction is a sensible solution. Under those circumstances, however, the party requesting production should be given a document-by-document indication, such as plaintiffs received with respect to allegedly privileged documents in this case, as to the nature of the material redacted and the basis for the redaction.

*Id.* at *3. The court found that with respect to documents redacted for reasons other than privilege, corrective measures were warranted, and granted the plaintiffs' motion to compel the defendants to produce unredacted copies of documents redacted on a basis other than privilege. *Id.*

Defendants assert that, and Plaintiffs do not dispute, the vast majority of the redacted documents listed in the spreadsheet (Britton Decl., Ex. 4) relate to the supplemental accounting production. As noted by the Special Master in the order granting Plaintiffs' motion to enforce the Special Master's July 17, 2006 order and to compel additional accounting documents based on recent testimony and new evidence:

> The July 17, 2006 Order requires Defendants to produce documents and information related to the 926 debit memos. The order did not permit Defendants to redact information from the documents that Defendants believe to be non-responsive. The documents at issue were produced by Defendants in response the July 17, 2006 order, and thus clearly contain relevant information. Any and all redactions from responsive documents must be logged and explained. Consistent with the cases cited above, while a party may redact privileged material from a responsive document, it is inappropriate for a party to redact information on the basis that information is "non-responsive." Defendants'

redaction of information from the supplemental accounting documents on the grounds it is not relevant or is "non-responsive" is improper. Defendants have failed to support their brief assertion that they have redacted "confidential" and "proprietary information" from the documents responsive to the July 17, 2006 order. Defendants' burden argument with respect to producing unredacted copies of the documents already produced is unpersuasive.

Accordingly, Plaintiffs motion to compel production of unredacted copies of all documents (including reports, spreadsheets and e-mails) produced by Defendants pursuant to July 17, 2006 order is GRANTED.

Consistent with the prior order, any of redacted documents listed in the spreadsheet (Britton Decl., Ex. 4) that relate to the supplemental accounting production must be produced to Plaintiffs in unredacted form.

With respect to the redacted documents included in exhibit 4 to the Britton declaration that were first produced by Oracle in the derivative litigation, Oracle asserts that it produced the documents in precisely the same format in which they were produced in the derivative litigation. The Special Master will not permit Plaintiffs to challenge Oracle's production and logs from an earlier case in which Plaintiffs were not a party, and will not require Oracle to eliminate or explain the earlier redactions.

With respect to any additional documents included in exhibit 4 that were not part of the supplemental accounting production or first produced by Oracle in redacted form in one of the derivative lawsuits, the documents have been produced by Defendants in this action, and therefore contain relevant information. All redactions from responsive documents must be logged and explained. Consistent with the cases cited above, while a party may redact privileged material from a responsive document, it is inappropriate for a party to redact information on the basis that it believes information in a document is not relevant. Defendants must produce unredacted copies of any documents redacted on a basis other than privilege, and must log any and all privilege redactions .

With respect to Plaintiffs' request that every document produced by Defendants in redacted form be reproduced unredacted in its entirety, the Special Master declines to make such a broad order. The order will be limited to the documents identified by Plaintiffs' motion, i.e., those documents included in exhibit 4 to the Britton declaration.

Accordingly, Plaintiffs' motion to compel production of unredacted copies of documents included in exhibit 4 to the Britton declaration which were first produced in redacted form in one

of the derivative lawsuits is DENIED. The motion to compel production of unredacted copies of any supplemental accounting documents included in exhibit 4 is GRANTED. With respect to any additional documents included in exhibit 4 that were not part of the supplemental accounting production or first produced by Oracle in redacted form in one of the derivative lawsuits, Defendants shall produce unredacted copies of any documents redacted on a basis other than privilege, and must log any and all privilege redactions. Defendants shall produce unredacted copies of these documents no later than January 11, 2006.

## IV. Order

For the reasons set forth above,

1.  Plaintiffs' motion to compel production of withheld documents related to debit memo transactions is granted in part. Defendants shall produce to Plaintiffs the entries in the June 26, 2006 and September 26, 2006 logs which contain the description "e-mails between in-house counsel and sales personnel regarding approval of contract terms" (or something similar thereto), redacting only the question posed to and answers provided by Oracle's in-house counsel (as well as any other statements or comments reflecting such protected communications). This production shall not be construed as a general waiver based upon the selective disclosure of privileged material. Upon receipt of these documents (with redactions), Plaintiffs may select up to 100 of the documents ordered produced (with redactions) as a sampling to be submitted to the Special Master for *in camera* review. Defendants shall produce unredacted copies of the documents selected by Plaintiffs to the Special Master within five days of receipt of Plaintiffs' identification of the sample documents.

2.  Plaintiffs' motion to compel production of documents related to "business transactions" is granted in part. Defendants shall produce the four e-mails identified in June 9, 2005 privilege log (Britton Ex. 2 at 1-3) and the eight e-mails relating to Ingersoll-Rand and Century Aluminum (Britton Decl., Ex. 20) for *in camera* review no later than January 11, 2007.

3.  Plaintiffs' motion to compel production of documents "withheld without a sufficient description" is granted in part. Defendants shall produce to Plaintiffs copies of the documents identified in exhibit 22 to the Britton declaration,

redacting only privileged information.

4.   Plaintiffs' motion to compel production of unredacted copies of documents
     included in exhibit 4 to the Britton declaration which were first produced in
     redacted form in one of the derivative lawsuits is denied.

5.   Plaintiffs' motion to compel production of unredacted copies of any supplemental
     accounting documents included in exhibit 4 is granted.  With respect to any
     additional documents included in exhibit 4 that were not part of the supplemental
     accounting production or first produced by Oracle in redacted form in one of the
     derivative lawsuits,  Defendants shall produce unredacted copies of any documents
     redacted on a basis other than privilege, and must log any and all privilege
     redactions.  Defendants shall produce unredacted copies of these documents no
     later than January 11, 2007.

6.   Plaintiffs' motion to compel production of documents on the Ernst & Young
     privilege log is denied.

7.   Plaintiffs' motion to compel production of withheld documents related to
     document preservation and destruction of evidence is denied.

IT IS SO ORDERED.


Dated: January 3, 2007                    _____/s/Edward A. Infante_____
                                          Hon. Edward A. Infante (Ret.)
                                          Special Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 4, 2007, I served the attached amended ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DOCUMENTS CONTAINED IN DEFENDANTS' PRIVILEGE AND REDACTION LOGS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Mark Solomon Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | marks@lerachlaw.com |
| Douglas Britton Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | dougb@lerachlaw.com |
| Valerie McLaughlin Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | valeriem@lerachlaw.com |
| Gavin Bowie Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | gbowie@lerachlaw.com |
| Shawn Williams Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | shawnw@lerachlaw.com |
| Willow Radcliffe Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | willowr@lerachlaw.com |
| Eli Greenstein Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | elig@lerachlaw.com |
| Jennie Anderson Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | jenniea@lerachlaw.com |
| Monique Winkler Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | moniquew@lerachlaw.com |
| Peter Wald Esq. | Latham & Watkins | peter.wald@lw.com |
| Michele Kyrouz Esq. | Latham & Watkins | michele.kyrouz@LW.com |
| Patrick Gibbs Esq. | Latham & Watkins | patrick.gibbs@lw.com |
| Matthew Harrison Esq. | Latham & Watkins | matt.harrison@LW.com |
| Sean Coyle Esq. | Latham & Watkins | sean.coyle@lw.com |