1　LATHAM & WATKINS LLP
　　　Peter A. Wald (SBN 85705)
2　　　Michele F. Kyrouz (SBN 168004)
　　505 Montgomery Street, Suite 2000
3　San Francisco, California  94111-2562
　　Telephone:  (415) 391-0600
4　Facsimile:  (415) 395-8095
　　E-mail:  peter.wald@lw.com
5　　　　　　michele.kyrouz@lw.com

6　Attorneys for Defendants ORACLE CORPORATION,
　　LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and
7　EDWARD J. SANDERSON

8　ORACLE CORPORATION
　　　Dorian E. Daley (SBN 129049)
9　　　James C. Maroulis (SBN 208316)
　　500 Oracle Parkway
10　Mailstop 5OP7
　　Redwood Shores, California 94065
11　Telephone:  (650) 506-5200
　　Facsimile:  (650) 506-7114
12　E-mail:  jim.maroulis@oracle.com

13　Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
　　Patrick E. Gibbs  (SBN 183174)
140 Scott Drive
Menlo Park, California 94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600
E-mail:  patrick.gibbs@lw.com

LATHAM & WATKINS LLP
　　Jamie L. Wine  (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
E-mail: jamie.wine@lw.com

14　　　　　　UNITED STATES DISTRICT COURT

15　　NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

16

17　In re ORACLE CORPORATION
　　SECURITIES LITIGATION,

18　This Documents Relates To:

19　ALL ACTIONS

20

21

22

23

24

25

26

27

28

Case No. C-01-0988-MJJ (JCS) (Consolidated)

**DECLARATION OF PATRICK E. GIBBS
IN SUPPORT OF DEFENDANTS'
RESPONSE TO PLAINTIFFS' REQUEST
FOR A CASE MANAGEMENT
CONFERENCE PURSUANT TO FED. R.
CIV. P 16(a)**

DATE: N/A
TIME:  N/A
COURT:  The Honorable Martin J. Jenkins

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF P. GIBBS RE RESPONSE TO PLAINTIFFS'
REQUEST FOR CASE MANAGEMENT CONFERENCE
Master Case File. C-01-0988-MJJ (JCS)

1    I, Patrick E. Gibbs, declare as follows:

2    1.    I am an attorney duly licensed to practice law before the courts of the State

3    of California.  I am a partner with the law firm of Latham & Watkins LLP ("Latham"), counsel

4    of record for Defendants in the above-entitled action.  I submit this declaration in support of

5    Defendants' Response to Plaintiffs' Request for a Case Management Conference Pursuant to

6    Fed. R. Civ. P. 16(a).  I have personal knowledge of the matters stated herein and, if called upon

7    to do so, I could and would competently testify thereto.

8    2.    Attached hereto as Exhibit A is a true and correct copy of the Parties'

9    January 5, 2007 Joint Status Statement Pursuant to December 15, 2006 Order Re Telephonic

10   Status Conference.

11   3.    Attached hereto as Exhibit B is a true and correct copy of Plaintiffs'

12   January 11, 2007 Opposition to Defendants' Motion for Modification of Order Granting

13   Plaintiffs' Motion to Enforce the Special Maser's July 17, 2006 Order and to Compel Additional

14   Accounting Documents Based on Recent Testimony and New Evidence.

15   4.    Attached hereto as Exhibit C is a true and correct copy of the January 30,

16   2007 Stipulation and Order Setting a Deadline and Briefing Schedule for Plaintiffs'

17   Contemplated Motion to Compel Additional Time for the Depositions of Larry Ellison and Safra

18   Catz.

19   5.    Attached hereto as Exhibit D is a true and correct copy of Plaintiffs'

20   October 30, 2006  Notice of Motion and Motion to Compel the Depositions of Christopher

21   Balkenhol and Dorian Daley and Additional Time for the Depositions of Larry Ellison and Safra

22   Catz.

23   6.    Attached hereto as Exhibit E is a true and correct copy of the December

24   17, 2004 Amended Pretrial Order.

25   7.    Attached hereto as Exhibit F is a true and correct copy of the January 5,

26   2006 Order Re Plaintiffs' Motion to Modify the Amended Pretrial Order to Extend the February

27   24, 2006 Discovery Cutoff.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8.      Attached hereto as Exhibit G is a true and correct copy of the July 19, 2006 Order Granting in Part and Denying in Part Plaintiffs' Motion to Modify the Amended Pretrial Order and Extend the June 30, 2006 Fact Discovery Cutoff and Plaintiffs' Motion to Amend the December 14, 2004 Amended Pretrial Order to Include Additional Depositions.

I hereby certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on February 14, 2006 in Menlo Park, California.

_____/s/_____
Patrick E. Gibbs

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF P. GIBBS RE RESPONSE TO PLAINTIFFS'
REQUEST FOR CASE MANAGEMENT CONFERENCE
Master Case File. C-01-0988-MJJ (JCS)

# Exhibit A

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
VALERIE L. McLAUGHLIN (191916)
GAVIN M. BOWIE (235532)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
marks@lerachlaw.com
dougb@lerachlaw.com
valeriem@lerachlaw.com
gbowie@lerachlaw.com
    – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
ELI R. GREENSTEIN (217945)
JENNIE LEE ANDERSON (203586)
MONIQUE C. WINKLER (213031)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@lerachlaw.com
willowr@lerachlaw.com
elig@lerachlaw.com
jenniea@lerachlaw.com
moniquew@lerachlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) ) |

Master File No. C-01-0988-MJJ

CLASS ACTION

JOINT STATUS STATEMENT PURSUANT TO DECEMBER 15, 2006 ORDER RE TELEPHONE STATUS CONFERENCE

On October 26, 2006, this Court issued an order requiring the parties to submit a Joint Status Statement. On November 2, 2006, the parties submitted a Joint Status Statement Pursuant to the Court's October 26, 2006 Order. On December 15, 2006, the Court scheduled a telephone status conference for January 9, 2007 at 2:00 p.m. The parties hereby submit their supplemental Joint Status Statement detailing current motions before the Court, recent discovery orders issued by the Special Master, Magistrate Judge Edward A. Infante (Ret.) and a proposed schedule for expert discovery and dispositive motions:

**A.      Current Motions Pending Before the Honorable Judge Martin J. Jenkins**

1.      Plaintiffs' Notice of Objection to the Special Master's July 17, 2006 Ruling.

**B.      Fact Discovery Cut-Off – Current Motions Pending Before the Honorable Special Master Edward A. Infante (Ret.)**

On July 10, 2006, Special Master Infante set a fact discovery cut-off of October 2, 2006. On October 9, October 30, and November 7, 2006, plaintiffs and defendants filed respective motions to compel. Between December 19, 2006 and January 7, 2007 orders were issued regarding the parties' various motions to compel. Set forth below are each of the parties' motions and the respective orders issued by the Special Master.

**1.      Plaintiffs' Motions**

(a)      Plaintiffs' Notice of Motion and Motion to Compel the Depositions of Christopher Balkenhol and Dorian Daley and Additional Time for the Depositions of Larry Ellison and Safra Catz. On December 14, 2006, the Special Master issued an order granting in part and denying in part plaintiffs' motion to compel. The order denied plaintiffs' request for depositions of Dorian Daley and Christopher Balkenhol. The order granted plaintiffs an additional 3.5 hours of deposition testimony with defendant Larry Ellison, and 2.5 hours with Safra Catz, Oracle's current President and Chief Financial Officer, to be taken no later than January 25, 2007;

(b)      Plaintiffs' Notice of Motion and Motion to Compel Defendants' Production of Documents Concerning and Created in Preparation for the Book SOFTWAR. On January 2, 2007, the Special Master granted in part and denied in part plaintiffs' motion to compel. The order requires defendants to produce, no later than January 16, 2007, "any and all tape

1  recordings and/or transcripts of interviews with Ellison created in preparation for the book"

2  SOFTWAR as well as the final agreement between Ellison and Matthew Symonds;

3  (c)  Plaintiffs' Notice of Motion and Motion to Enforce Court's September

4  15, 2006 Order Compelling Defendants to Produce Forecasting and Deal Reports. On December 22,

5  2006, the Special Master issued an order granting in part and denying in part plaintiffs' motion. The

6  Special Master ordered that within 30 days of plaintiffs' identification of these reports, defendants

7  must produce accurately dated versions of the reports and must search all potentially applicable files

8  to do so. In addition, defendants must provide plaintiffs with a sworn declaration by January 5,

9  2007, indicating whether defendants have produced all responsive documents. The declaration must

10  address each of the reports set forth in plaintiffs' motion, and to the extent that responsive documents

11  are not in defendants' possession, custody or control, the declaration shall clearly so indicate on a

12  report-by-report basis;

13  (d)  Plaintiffs' Notice of Motion and Motion to Compel Defendants'

14  Production of Documents Concerning Oracle Corporation's Stock Repurchase Program. On

15  December 14, 2006, the Special Master issued an order denying plaintiffs' motion to compel in its

16  entirety;

17  (e)  Plaintiffs' Notice of Motion and Motion to Compel Documents

18  Contained in Defendants' Privilege and Redaction Logs. On January 4, 2007, the Special Master

19  issued an order granting in part and denying in part plaintiffs' motion to compel. The order requires

20  defendants to produce to plaintiffs the entries in the June 26, 2006 and September 26, 2006 logs

21  which contain the description "e-mails between in-house counsel and sales personnel regarding

22  approval of contract terms" redacting only the question posed to and answers provided by Oracle's

23  in-house counsel (as well as any other statements or comments reflecting such protected

24  communications). The production shall not be construed as a general waiver based upon the

25  selective disclosure of privileged material. Upon plaintiffs' receipt of the documents (with

26  redactions), plaintiffs may select up to 100 of the documents ordered produced (with redactions) as a

27  sampling to be submitted to the Special Master for *in camera* review. Defendants shall produce

28  unredacted copies of the documents selected by plaintiffs to the Special Master within five days of

1  receipt of plaintiffs' identification of the sample documents.  Defendants are also required to produce

2  the four e-mails identified in the June 9, 2005 privilege log and the eight e-mails relating to

3  Ingersoll-Rand and Century Aluminum for *in camera* review no later than January 11, 2007, and

4  copies of the documents identified in Exhibit 22 to the Britton declaration, redacting only privileged

5  information.  With respect to any additional documents included in Exhibit 4 that were not part of

6  the supplemental accounting production or first produced by Oracle in redacted form in one of the

7  derivative lawsuits, defendants shall produce unredacted copies of any documents redacted on a

8  basis other than privilege, and must log any and all privilege redactions.  Defendants are required to

9  produce unredacted copies of these documents no later than January 11, 2007;

10         (f)     Plaintiffs' Notice of Motion and Motion to Enforce September 22,

11  2006 Order and for Finding of Waiver for Failure to Timely Produce a Privilege Log.  On December

12  14, 2006, the Special Master issued an order granting in part and denying in part plaintiffs' motion.

13  The order requires defendants to provide plaintiffs with a sworn declaration from an Oracle

14  representative with knowledge stating that defendants have conducted the searches required by the

15  September 22, 2006 order and that defendants have produced all responsive, non-privileged

16  documents in their possession, custody or control.   The Court ordered defendants to provide

17  plaintiffs with the required declaration by December 29, 2006.  At defendants' request, plaintiffs

18  agreed to extend the deadline to January 5, 2007;

19         (g)     Plaintiffs' Notice of Motion and Motion for an Order Compelling

20  Defendants to Produce Documents Shown to or Reviewed by Lauren Segal in Preparation and

21  Review for the Declaration of Lauren Segal in Support of Defendants' Opposition to Plaintiffs'

22  Motion to Compel the Recovery of Backup Tapes and Miscellaneous Relief for the Destruction of

23  Documents.  On December 19, 2006 the Special Master issued an order denying plaintiffs' motion to

24  compel in its entirety;

25         (h)     Plaintiffs' Motion to Enforce the Special Master's July 17, 2006 Order

26  and to Compel Additional Accounting Documents Based on Recent Testimony and New Evidence.

27  On December 19, 2006, the Special Master issued an order granting plaintiffs' motion.  The order

28  requires defendants to produce unredacted copies of all documents and spreadsheets previously

1    produced no later than January 17, 2007.  The order also requires defendants to produce all

2    documents relating to Oracle's accounting "clean up" project beginning in October 2002 (the "2002

3    Clean Up") and all documents relating to Oracle's improper transfer of customer overpayments to its

4    bad debt reserve in connection with Oracle's 2Q01 results by January 2007;

5                  (i)      Plaintiffs' Motion to Compel Additional Deposition Time for Daniel

6    Cooperman.  On December 20, 2006, the Special Master issued an order denying plaintiffs' motion

7    to compel in its entirety; and

8                  (j)      Plaintiffs' Motion to Lift the Stay on Contention Interrogatories

9    Pursuant to the March 10, 2005 Discovery Plan.  In their motion, filed on December 22, 2006 and

10    currently pending before the Special Master, plaintiffs seek an order lifting the stay and requiring the

11    parties to simultaneously respond to contention interrogatories by January 31, 2007.  The Special

12    Master has ordered plaintiffs to respond to such interrogatories by January 31, 2007, as noted below

13    in Section B.2.(c).

14           **2.**      **Defendants' Motions**

15        (a)      Defendants' Motion to Enforce the Court's April 27, 2006 Order Re

16    Documents Exchanged Between Plaintiffs' Counsel and the Confidential Witnesses.  On December

17    19, 2006, the Special Master issued an order granting in part defendants' motion.  The December 19,

18    2006 order requires plaintiffs, on or before January 5, 2007, to provide defendants with a sworn

19    declaration from an individual with knowledge clearly indicating whether plaintiffs have produced

20    all responsive, non-privileged documents in their possession, custody or control.  The declaration

21    must identify any responsive documents of which plaintiffs are aware that are not in plaintiffs'

22    possession, custody or control, and specifically address the testimony of the CWs identified in

23    defendants' motion and whether plaintiffs have produced all responsive documents for these

24    individuals.

25        (b)      Defendants' Notice of Motion and Motion to Enforce Section V.C. of 10,

26    2005 Discovery Plan and for Sanctions for Plaintiffs' Repeated Violations of the Plan as It Pertains

27    to Third Party Customers.  On December 19, 2006, the Special Master issued an order granting

28    defendants' motion.  The December 19, 2006 order quashed plaintiffs' 18 subpoenas to Oracle

1  Corporation customers that were held to violate the Discovery Plan.  The order further required

2  plaintiffs, no later than December 29, 2006, to provide defendants with a copy of every subpoena

3  they have issued to third party Oracle customers as part of this litigation.  The order permitted

4  plaintiffs to serve corrected subpoenas, consistent with the Discovery Plan, to these entities no later

5  than January 5, 2007.  The order denied defendants' request for sanctions.  Finally, the order denied

6  plaintiffs' request, in opposition to the motion, to amend the Discovery Plan.

7        (c)    Defendants' Notice of Motion and Motion to Compel Plaintiffs' Supplemental

8  Responses to Defendants' Second Set of Interrogatories.  On December 14, 2006, the Special Master

9  issued an order granting defendants' motion to compel.  The December 14, 2006 order requires

10 plaintiffs to serve supplemental responses to Interrogatory Nos. 5-7 and 9-15 of Defendants' Second

11 Set of Interrogatories on or before January 31, 2007.

12       (d)    Defendants' Notice of Motion and Motion for Modification of Order Granting

13 Plaintiffs' Motion to Enforce the Special Master's July 17, 2006 Order and to Compel Additional

14 Accounting Documents Based on Recent Testimony and New Evidence ("Defendants' Motion for

15 Modification of the July 17, 2006 Order").  On January 5, 2007, defendants filed a motion seeking

16 modification of the December 19, 2006 Order Granting Plaintiffs' Motion to Enforce the Special

17 Master's July 17, 2006 Order and to Compel Additional Accounting Documents Based on Recent

18 Testimony and New Evidence (the "Order").  Defendants sought to modify the Order in two

19 respects.  First, defendants sought an extension of time (of approximately one month) within which

20 to produce two of the three categories of documents called for by the Order.  Second, defendants also

21 requested that the Special Master remove from the Order certain language suggesting, defendants

22 believe incorrectly, that defendants have shifted positions on a focal issue in the litigation.

23 **C.**    **Outstanding Fact Discovery**

24     Aside from pending motions, the fact discovery currently outstanding in this case is the

25 parties' compliance with the discovery orders issued by Judge Infante, as set forth in detail in §B,

26 above.  In addition, plaintiffs reserve the right to move for any further discovery that may be ordered

27 following the provision of the discovery required by Judge Infante. Defendants have informed

28 plaintiffs that they intend to oppose any further discovery.

**D.      Court Ordered Settlement Conference**

On November 28, 2006, the parties participated in a settlement conference before Magistrate Judge Bernard Zimmerman, but no settlement was reached.

**E.      Proposed Schedule for Expert Discovery and Trial**

In the parties October 26, 2006 Joint Status Statement, the parties proposed a schedule for expert discovery and trial.

**1.      Plaintiffs' View**

Plaintiffs requested, on January 4, 2007, that defendants provide them with some indication of what type and quantity of documents and other materials would be produced pursuant to Judge Infante's recent orders.  Defendants, however, were unable to provide plaintiffs with any meaningful information other than that an unknown quantity of documents would likely be produced in the future.  As to one category of documents, defendants claimed in a telephone conference that they did not know if they would take the position that they had been destroyed or instead claim an inability to obtain them.  Via a declaration served on plaintiffs late this afternoon, plaintiffs were first alerted to the fact that with respect to just one order issued by Judge Infante, hundreds of thousands of pages are going to be produced on January 17, 2007.  Via another declaration, defendants have stated that their searches of additional unspecified files have yielded further forecasting documents that now are being reviewed by defendants.  Plaintiffs anticipate that there will be voluminous productions by defendants to comply with various other orders issued by the Special Master.  In light of the foregoing, plaintiffs are not currently able to provide the Court with a reliable schedule for the completion of discovery and trial.

**2.      Defendants' View**

Defendants disagree with plaintiffs' statement of reasons for failing to suggest a schedule for the completion of discovery.  Defendants have attempted to provide plaintiffs with as much information as possible, as quickly as possible, regarding the timing and volume of documents to be produced in response to Judge Infante's recent orders.

With regard to the accounting-related documents that Judge Infante ordered produced, defendants have requested a one-month extension of time to produce the documents, and (as

1   plaintiffs note above) submitted a declaration indicating the anticipated scope of the production (*i.e.*,

2   hundreds of thousands of pages).  Thus, plaintiffs are aware of the scope and timing of that

3   production.  With regard to the other category of documents plaintiffs discuss above – materials

4   relating to the book SOFTWAR – defendants did not, as plaintiffs claim, suggest that any materials

5   had been destroyed, or that defendants would "take the position" that any materials had been

6   destroyed.  Defendants merely pointed out that defendants do not know whether or when any such

7   materials will be produced because, as plaintiffs know, the materials are in the physical possession of

8   a third party who lives and works in the United Kingdom (Matthew Symonds), and defendants do

9   not yet know whether Mr. Symonds will agree to turn over the materials to defendants for production

10  in this case.  (Although none of the defendants has physical possession or custody of these materials,

11  Judge Infante ordered defendants to produce them on based on a finding that Mr. Ellison has

12  "control" over the materials under the terms of a contract between Mr. Ellison and Mr. Symonds.

13  Defendants do not understand the agreement to give Mr. Ellison such control, nor does Mr.

14  Symonds, who submitted a declaration stating that the materials are his sole property, to which no

15  one else has a right of access.)  Defendants are in the process of determining whether Mr. Symonds

16  will turn over the materials for production in this case.

17       In any event, defendants believe that, if each of the dates in the schedule proposed in the

18  parties' prior joint submission were pushed back by two months, the parties would have sufficient

19  time to complete all remaining tasks and prepare the case for trial.

20

21

22

23

24

25

26

27

28

1  DATED:  January 5, 2007                    Respectfully submitted,

2                                             LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
3                                             SHAWN A. WILLIAMS
                                              WILLOW E. RADCLIFFE
4                                             ELI R. GREENSTEIN
                                              JENNIE LEE ANDERSON
5                                             MONIQUE C. WINKLER

6

7                                                        /s/
                                              SHAWN A. WILLIAMS

8
                                              100 Pine Street, Suite 2600
9                                             San Francisco, CA  94111
                                              Telephone:  415/288-4545
10                                            415/288-4534 (fax)

11
                                              LERACH COUGHLIN STOIA GELLER
12                                              RUDMAN & ROBBINS LLP
                                              MARK SOLOMON
13                                            DOUGLAS R. BRITTON
                                              VALERIE L. McLAUGHLIN
14                                            GAVIN M. BOWIE
                                              655 West Broadway, Suite 1900
15                                            San Diego, CA  92101
                                              Telephone:  619/231-1058
16                                            619/231-7423 (fax)

17                                            Lead Counsel for Plaintiffs

18
   DATED:  January 5, 2007                    Respectfully submitted,
19
                                              LATHAM & WATKINS
20                                            PATRICK E. GIBBS

21

22                                                       /s/
                                              PATRICK E. GIBBS
23
                                              140 Scott Drive
24                                            Menlo Park, CA  94025
                                              Telephone:  650/328-4600
25                                            650/463-2600 (fax)

26                                            LATHAM & WATKINS LLP
                                              PETER A. WALD
27                                            MICHELE F. KYROUZ
                                              505 Montgomery Street, Suite 1900
28                                            San Francisco, CA  94111

JOINT STATUS STATEMENT PURSUANT TO DECEMBER 15, 2006 ORDER RE TELEPHONE
STATUS CONFERENCE  - C-01-0988-MJJ                                          - 8 -

Telephone: 415/391-0600
415/395-8095 (fax)

LATHAM & WATKINS LLP
JAMIE L. WINE
BRIAN T. GLENNON
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: 213/485-1234
213/891-8763 (fax)

ORACLE CORPORATION
DORIAN DALEY
JAMES C. MAROULIS
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
Telephone: 650/506-5200
650/506-7114 (fax)

Counsel for Defendants

I, Shawn A. Williams, am the ECF User whose ID and password are being used to file this JOINT STATUS STATEMENT PURSUANT TO OCTOBER 26, 2006 ORDER. In compliance with General Order 45, X.B., I hereby attest that Patrick E. Gibbs has concurred in this filing.

T:\CasesSF\Oracle3\SCS00037964.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/
SHAWN A. WILLIAMS

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: shawnw@lerachlaw.com

CAND-ECF                                                                    Page 1 of 3

Case 3:01-cv-00988-SI  Document 672  Filed 02/14/07  Page 16 of 83
Case 3:01-cv-00988-MJJ  Document 612  Filed 02/05/2007  Page 123 of 14

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jenniea@lerachlaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com cheryl.grant@pillsburylaw.com

- **Reed R. Kathrein**
  reedk@lerachlaw.com
  e_file_sf@lerachlaw.com;e_file_sd@lerachlaw.com

- **Michele F. Kyrouz**
  michele.kyrouz@lw.com

- **Nicole Lavallee**
  nlavallee@bermanesq.com

- **William S. Lerach**

CAND-ECF                                                                        Page 2 of 3
Case 3:01-cv-00988-SI Document 672 Filed 02/14/07 Page 17 of 83
Case 3:01-cv-00988-MJJ Document 612 Filed 04/05/2007 Page 13 of 14

e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com swalker@be-law.com

- **Brian P Murray**
  bmurray@rabinlaw.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Willow E. Radcliffe**
  willowr@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Darren J. Robbins**

- **Sanna Rachel Singer**
  ssinger@sideman.com mthomas@sideman.com

- **Mark Solomon**
  marks@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Shawn A. Williams**
  shawnw@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com;AelishB@lerachlaw.

- **Jamie Lynne Wine**
  jamie.wine@lw.com karen.kelly@lw.com

- **Monique Winkler**
  MoniqueW@lerachlaw.com
  E_File_SF@lerachlaw.com;MoniqueW@lerachlaw.com;shawnw@lerach

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail

CAND-ECF                                                                      Page 3 of 3
Case 3:01-cv-00988-SI Document 672   Filed 02/14/07 Page 18 of 83
Case 3:01-cv-00988-MJJ  Document 612   Filed 01/05/2007 Page 14 of 14

notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Dorian Daley**
500 Oracle Parkway
Redwood City, CA 94065

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

# Exhibit B

·1 ‖ LERACH COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2 ‖ MARK SOLOMON (151949)
     DOUGLAS R. BRITTON (188769)
3 ‖ VALERIE L. McLAUGHLIN (191916)
     GAVIN M. BOWIE (235532)
4 ‖ 655 West Broadway, Suite 1900
     San Diego, CA 92101
5 ‖ Telephone: 619/231-1058
     619/231-7423 (fax)
6 ‖ marks@lerachlaw.com
     dougb@lerachlaw.com
7 ‖ valeriem@lerachlaw.com
     gbowie@lerachlaw.com
8 ‖      – and –
     SHAWN A. WILLIAMS (213113)
9 ‖ WILLOW E. RADCLIFFE (200087)
     ELI R. GREENSTEIN (217945)
10 ‖ JENNIE LEE ANDERSON (203586)
      MONIQUE C. WINKLER (213031)
11 ‖ 100 Pine Street, Suite 2600
      San Francisco, CA 94111
12 ‖ Telephone: 415/288-4545
      415/288-4534 (fax)
13 ‖ shawnw@lerachlaw.com
      willowr@lerachlaw.com
14 ‖ elig@lerachlaw.com
      jenniea@lerachlaw.com
15 ‖ moniquew@lerachlaw.com

16 ‖ Lead Counsel for Plaintiffs

17 ‖                         UNITED STATES DISTRICT COURT

18 ‖                     NORTHERN DISTRICT OF CALIFORNIA

| 19 ‖ In re ORACLE CORPORATION<br>SECURITIES LITIGATION | ) | Master File No. C-01-0988-MJJ |
|---|---|---|
| 20 ‖ | ) | **DISCOVERY MATTER** |
| 21 ‖ This Document Relates To: | ) | <u>CLASS ACTION</u> |
| 22 ‖ ALL ACTIONS. | ) | PLAINTIFFS' OPPOSITION TO<br>DEFENDANTS' MOTION FOR |
| 23 ‖ | | MODIFICATION OF ORDER GRANTING<br>PLAINTIFFS' MOTION TO ENFORCE THE |
| 24 ‖ | | SPECIAL MASTER'S JULY 17, 2006 |
| 25 ‖ **CONFIDENTIAL** | | ORDER AND TO COMPEL ADDITIONAL<br>ACCOUNTING DOCUMENTS BASED ON<br>RECENT TESTIMONY AND NEW |
| 26 ‖ | | EVIDENCE |

27

28

## I.  INTRODUCTION

Despite the title of their motion, defendants are not merely seeking to "modify" the Special Master's December 19, 2006 Order Granting Plaintiffs' Motion to Enforce the Special Master's July 17, 2006 Order and to Compel Additional Accounting Documents Based on Recent Testimony and New Evidence ("December 19 Order"), Greenstein Decl., Ex. 1.[1]  Defendants are attacking the language, reasoning and analysis employed by the Special Master in formulating his conclusions in the December 19 Order.  Specifically, defendants seek to delete the Special Master's finding that defendants "shifted" their position regarding the connection between Oracle's unapplied cash project beginning in 2002 (the "2002 Clean Up") and the debit memos that form the basis for plaintiffs' accounting allegations.

As an initial matter, the Court should not consider defendants' motion because it completely ignores the procedural requirements for moving to reconsider under Civ. L.R. 7-9.  Defendants are attempting to fashion their own procedural rules and they fail to cite a single precedent for the relief they seek.  The motion is procedurally defective and should be denied on that basis.

Defendants' motion is also substantively meritless.  Defendants fail to provide any legal or factual basis for the deletion of carefully crafted language and analysis used by the Special Master in the December 19 Order.  The Special Master's finding that defendants "shifted" their position on the 2002 Clean Up is supported overwhelmingly by the evidentiary record in this case.  The record demonstrates that defendants repeatedly represented to Judge Jenkins, Judge Spero and the Special Master that there was "***no connection whatsoever***" and "***no link***" between the 2002 Clean Up and the debit memos created in November 2000.  Defendants also submitted a sworn declaration stating that the 2002 Clean Up had "***nothing to do***" with the "debit memos transactions."

---

[1]  "Greenstein Decl." refers to the Declaration of Eli R. Greenstein in Support of Plaintiffs' Opposition to Defendants' Motion for Modification of Order Granting Plaintiffs' Motion to Enforce the Special Master's July 17, 2006 Order and to Compel Additional Accounting Documents Based on Recent Testimony and New Evidence, filed herewith.  All "Ex." references are to the Greenstein Decl.

1    The record also shows that once the evidence establishing a link between the debit memos
2  and the 2002 Clean Up became too overwhelming for defendants to dispute, they finally admitted
3  that they were connected, but asserted that it somehow was not material or significant. Now,
4  defendants try to back away from their position even further by making strenuously nuanced
5  distinctions between "debit memos" and "debit memo transactions" and between the "creation and
6  accounting" for the debit memos and the debit memos themselves. But defendants never qualified
7  their representations to the Court. They stated unequivocally and swore in declarations that there
8  was "*no connection whatsoever*" and "*no link*" between the debit memos and the 2002 Clean Up.

9    Defendants also request a month extension of time to produce documents relating to the 2002
10  Clean Up and Oracle's transfers to its bad debt reserve. Defendants claim that the month allowed by
11  the Special Master is not enough time to gather, review and produce the documents. Defs' Mot. at
12  1.[2] During the January 9, 2007 Case Management Conference ("CMC") before Judge Jenkins,
13  however, defendants downplayed the volume of that production to persuade the Court to adopt an
14  ambitious schedule for the remainder of the case. Greenstein Decl. at ¶2. Defendants represented
15  that the production subject to the extension would be only 1,000 pages/documents. *Id.* Following
16  these and other representations, Judge Jenkins adopted a case management schedule that, among
17  other things, requires expert disclosures on April 27, 2007. Accordingly, time is now of the essence
18  and plaintiffs and their experts will be severely impeded if they are forced to wait another month
19  before having access to the documents relating to the 2002 Clean Up and bad debt transfers.

20  **II.    LEGAL ARGUMENT**

21    **A.    Defendants' Request to Rewrite the December 19, 2006 Order
            Because They Do Not Agree with It Should It Be Rejected**

22    Defendants devote most of their motion to rearguing their previous briefing that there is no
23
    significant connection between the debit memos and the 2002 Clean Up. Defs' Mot. at 3-7. That
24

25    _____

26    [2]    "Defs' Mot." refers to Defendants' Notice of Motion and Motion for Modification of Order
    Granting Plaintiffs' Motion to Enforce the Special Master's July 17, 2006 Order and to Compel
27    Additional Accounting Documents Based on Recent Testimony and New Evidence dated January 5,
    2007.

28

1  issue has already been decided and the Special Master should not have to go through that exercise

2  again.  As the Special Master recognized in the December 19 Order, to initially represent to the

3  Court that there was "no connection whatsoever" between two events, and then to admit later that

4  there was some connection but it was immaterial or not important to the overall merits of the case, is

5  two different positions indeed.

6  Let there be no mistake, the Special Master's conclusion that "defendants have stated one

7  position (that there is no link between the debit memos and the 2002 Clean Up Project) and later

8  shifted that position (by claiming that all linked documents have been produced and that the link is

9  not substantial)" is fully supported by the record.  The following are the representations made by

10  defendants regarding the relationship between the 2002 Clean Up and the debit memos:

11  **November 14, 2002 Sworn Declaration**:

12  "Our ongoing investigation into the origin and disposition of cash receipts contained
    in Oracle's Accounts Receivable (A/R) reserve account (known as Account 12601)

13  has *nothing to do* with the approximately 46,000 debit memo transactions that
    occurred on November 17, 2000."

14  Ex. 2 at 2.[3]

15  **March 1, 2005 Discovery Hearing**:

16
17  Now, it turns out that the investigation regarding the bad debt reserve account
    happened to be going on when the plaintiffs amended their complaint with respect to
    the 25005, but there is *no connection whatsoever between those two events*.

18  Ex. 3 at 52:13-16.

19  **June 6, 2006 Sworn Declaration**:

20
21  "The October 2002 project was *not related* to the November 17, 2000 'on account'
    clean up."

22  Ex. 4 at 7, ¶28.

23  **July 10, 2006 Hearing**:

24  The creation of the debit memos had no financial impact whatsoever and that *it was a
    discrete separate event from the unapplied cash cleanup that happened in October*

25  *of 2002*.

26  _____

27  [3]    All emphasis is added unless otherwise noted.

28
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION
OF ORDER - C-01-0988-MJJ                                                                    - 3 -

1

2

3

So they don't have anything new here today. And *there is no link*, there's no reason for them to, you know -- for us to modify the prior orders that have been entered in this case and to now allow them broader discovery into issues beyond the debit memos.

\* \* \*

4

5

"*There simply is no connection there.*"

Ex. 5 at 79:11-19, 80:9.

6

7

8

Based on the foregoing statements by defendants, there can be no question that Oracle's initial position was emphatic and unequivocal – there is no relationship between the two events.

9

10

11

12

13

14

15

16

17

18

After the evidence began to mount establishing a direct connection between the debit memos and the 2002 Clean Up, however, defendants indeed began to "shift" their position. As the Special Master noted in the December 19 Order, defendants changed their prior position by conceding that there was some link between the 2002 Clean Up and the debit memos, but the link was not significant or material to the overall allegations. Ex. 2 at 19; *see also* Ex. 6 at 4 ("With respect to Plaintiffs' current request for discovery into the unapplied cash project, as a practical matter, defendants have produced any documents or electronic information generated as part of that project that *could be linked* to one of the 926 debit memos."). In addition, defendants admitted in a prior brief that "to the extent that there were any refunds, credit memos, reversals or anything else occurring during the October 2002 unapplied cash project that *involved* any of the 926 *debit memos*, Defendants produced those electronic and hard copy documents as well." Ex. 6 at 16:14-17.

19

20

21

22

23

24

25

26

27

28

Ironically, the representations made in defendants' current motion actually reinforce the Special Master's conclusion that defendants shifted their position. Defendants no longer argue that there is "no connection whatsoever" between the 2002 Clean Up and the debit memos. Now their comments are more nuanced. They contend that there "is no link between the *creation and accounting* for the debit memos in November 2000 and the unapplied cash project in 2002." Defs' Mot. at 4. They also contend that "[S]ome of the transfers into and/or out of the bad debt reserve appear in the accounting history of *transactions* whose histories also include November 2000 debit memos." They claim that "[a]t no point have Defendants suggested that there is no connection between those *transactions* and the October 2002 unapplied cash project." *Id.* at 5.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION
OF ORDER - C-01-0988-MJJ                                                                          - 4 -

1    But that is exactly what defendants "suggested" on repeated occasions. In fact, they did more
2  than "suggest" it; they declared it unequivocally. Defendants never qualified their statements to the
3  Court by saying that the 2002 Clean Up was related only to "transactions" underlying the debit
4  memos but not the "accounting" or "creation" of the debit memos. In fact, Oracle submitted a sworn
5  declaration to Judge Jenkins in November 2002 during the heart of the 2002 Clean Up stating that
6  the investigation had "*nothing to do*" with the approximately 46,000 debit memo *transactions* that
7  occurred on November 17, 2000." Ex. 2 at 2, ¶7. That is demonstrably false.

8    In any event, the "transactions" underlying the debit memos have always been recognized as
9  an integral part of the debit memo discovery. Judge Spero's October 19, 2005 Order required
10 defendants to produce documents relating to "*all transactions underlying those debit memos.*" Ex.
11 7 at 1. The Special Master's July 17, 2006 Order was also careful to include a requirement that
12 defendants produce documents related to not only the debit memos themselves, but "all *transactions*
13 that underlie those debit memos." Ex. 8 at 17. Defendants were well aware that the debit memos
14 and the "transactions" underlying the debit memos were two sides of the same coin.

15   Further, the 2002 Clean Up involved transactions that credited, reversed and refunded
16 specific debit memos that were created in November 2000. Notably, defendants have never denied
17 or explained how debit memos could be reversed and refunded during the 2002 Clean Up if there
18 was in fact no connection to the debit memos. Additionally, the "transactions" underlying the debit
19 memos are part of the "audit trail" which was enshrined in the Discovery Plan itself. *See* Ex. 9 at 2
20 (ordering production of all documents relating to the "audit trail" of the debit memos). Defendants
21 have always been aware of the relevance of the "transactions" and audit trail underlying the debit
22 memos, yet they never qualified their "no connection whatsoever" remarks to the Court.

23   Finally, plaintiffs note that some of the language defendants seek to delete from the
24 December 19 Order pertains to findings made by Judge Spero, not the Special Master. Defs' Mot. at
25 3 (seeking to remove language stating that "Judge Spero has already voiced concern that Defendants
26 have made statements to the Court regarding discovery of accounting documents and then later
27 changed their position."). Defendants cite no evidence to dispute Judge Spero's finding. In fact, that
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION
OF ORDER - C-01-0988-MJJ                                                     - 5 -

1  language in the December 19 Order is entirely consistent with Judge Spero's comments at the

2  October 18, 2006 hearing:

3       "I'm concerned that during the course of setting up the very detailed plan in this case,
        the defendants argued and obtain[ed] a narrower scope of discovery in exchange for
4       a commitment that all of the documents regarding all of these debit memos, including
        all the underlying documents would be committed. And that, to my mind, is clear as
5       day in the transcript that that [sic] was the position taken at the time. *And you are
        changing your position*."

6
   Ex. 10 at 4:13-21. Thus, the Special Master's use of that language in the December 19 Order was
7
   entirely appropriate. Defendants' motion should be denied.
8
                **B.    Defendants' Requested Extension is Unreasonable Given the Trial
9                       Schedule in This Case and Defendants' History of Producing
                        Documents After Court Ordered Deadlines**
10
        The Special Master's Order required the production of three main categories of documents:
11
   (1) unredacted copies of all documents produced pursuant to the Special Master's July 17, 2006
12
   Order; (2) documents relating to the 2002 Clean Up; and (3) documents relating to Oracle's transfer
13
   of unapplied cash to Oracle's bad debt reserve in connection with Oracle's 2Q01. Ex. 1 at 23. The
14
   Order required defendants to produce all responsive documents by no later than January 17, 2007.
15
   *Id.*
16
        Now, with the production deadline looming, defendants seek to extend the time they have to
17
   produce two of the three categories of documents (relating to the 2002 Clean Up and bad debt
18
   transfers), from January 17, 2007, to February 15, 2007. Defs' Mot. at 1. Defendants' only support
19
   for the extension is that they "must gather, review, Bates label and log hard copy and electronic data
20
   from a variety of different sources" and that the production was made more difficult by the holidays.
21
   *Id.* at 2-3.
22
        Ordinarily, plaintiffs would not oppose such an extension as a matter of professional
23
   courtesy. However, given the proposed trial schedule in this case, defendants' history of violating
24
   deadlines and producing corrupted and incomplete documents, and the fact that plaintiffs have had to
25
   file numerous motions just to enforce pre-existing court orders, plaintiffs have no choice but to
26
   oppose the extension here.
27

28
   PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION
   OF ORDER - C-01-0988-MJJ                                                          - 6 -

1    The extension is unwarranted for several reasons. First, there is simply not enough time built

2 into the recently proposed trial schedule to accommodate defendants' request. On January 9, 2007,

3 Judge Jenkins held a CMC to discuss proposed scheduling for the remaining issues in the case.[4]

4 Greenstein Decl. at ¶2. In the proposed case management schedule submitted to Judge Jenkins prior

5 to the CMC, plaintiffs argued that it was premature to establish a firm schedule for trial and the

6 remaining issues in the litigation because plaintiffs were not aware of the volume and complexity of

7 defendants' future productions and it was not clear what issues would arise from those productions.

8 Ex. 11 at 6. In an effort to propel the case along, Judge Jenkins suggested general scheduling dates

9 as follows:

10

| Description | Proposed Dates |
|---|---|
| Expert Disclosures and Opening Reports | April 27, 2007 |
| Rebuttal Expert Disclosure and Reports | May 25, 2007 |
| Close of Expert Discovery | June 29, 2007 |
| Motions for Summary Judgment and Daubert Motions | July 16, 2007 |
| Opposition to Summary Judgment and Daubert Motions | August 17, 2007 |
| Replies in Support of Summary Judgment and Daubert Motions | August 31, 2007 |
| Hearing on Summary Judgment | September 17, 2007 |
| Settlement Conference before Judge Zimmerman | October 2007 (TBD) |
| Pre-Trial Conference | November 13, 2007 |
| Trial | November 26, 2007 |

18   Ex. 12.

19    Notably, during the January 9, 2007 CMC, Judge Jenkins pointedly asked defendants about

20 the volume of documents that were subject to their request for an extension (presumably to

21 determine how much time was needed in the schedule to deal with any compliance issues that arise

22 from that production). Greenstein Decl. ¶2. Defendants attempted to downplay the issue, stating

23 that the production related to the 2002 Clean Up and the bad debt transfers and would only be

24 approximately 1,000 pages/documents. *Id.*

25

26 _____

27   [4]   This January 9, 2007 CMC was not transcribed.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION
OF ORDER - C-01-0988-MJJ                                                                    - 7 -

1    Plaintiffs cannot conceive how the production related to the 2002 Clean Up can be so
2 minimal given the fact that the project spanned many years and involved thousands of items and
3 hundreds of millions of dollars in customer overpayments. But in any event, the simple fact is that
4 there is not enough time built into the remaining case schedule to grant defendants a one-month
5 extension. Plaintiffs and their experts have to review, analyze and potentially seek further relief
6 concerning the documents in preparation for summary judgment and expert discovery.

7    Further, given defendants' representation that the production is minimal, it may be that
8 plaintiffs will have to seek further relief to enforce the December 19 Order or to compel documents
9 inappropriately redacted or withheld. This has already happened many times before. In fact, it took
10 plaintiffs no less than four separate motions to compel and almost two years merely to obtain the
11 documents ordered by the March 10, 2005 Discovery Plan. Amazingly, as of December 2006, there
12 were still major problems with defendants' production in connection with the Court's July 17, 2006
13 Order. Those documents were supposed to be produced by August 31, 2006, yet as of December
14 2006, defendants were still replacing scores of documents in their production and have not fixed
15 many problems raised by plaintiffs. For example, on December 15, 2006, Oracle unsuccessfully
16 attempted to replace 4 CDs containing 66,320 pages of documents. There were major problems with
17 that production and plaintiffs documented the problems in letters to defendants. Ex. 13. As of
18 January 11, 2007, (four months after the August 31, 2006 deadline) defendants still had not fixed the
19 problems with the production. *Id.* Thus, it is very possible that issues will arise with respect to
20 future productions that may take months to resolve.

21    Defendants had had more than enough time to gather, review and produce documents
22 relating to the 2002 Clean Up and the bad debt transfers. Plaintiffs first sought discovery of these
23 documents in 2002 as part of an *Ex Parte* Application relating to the destruction and preservation of
24 documents. Ex. 14. At that time, defendants signed sworn declarations stating that all documents
25 relating to the 2002 Clean Up had been fully "preserved." Ex. 2 at 2. Since then, plaintiffs have
26 sought discovery of the 2002 Clean Up and the bad debt transfers on multiple occasions and
27 defendants were well aware of the possibility that those documents would have to be produced. The
28 December 19 Order afforded defendants nearly a full month to produce the documents that they

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION
OF ORDER - C-01-0988-MJJ                                                          - 8 -

1    claim have already been preserved.  There is no reason to delay the production of accounting

2    documents any further.  Defendants' request for an extension should be denied.[5]

3    **III.    CONCLUSION**

4         Based on the foregoing, defendants' motion should be denied.

5    DATED: January 11, 2007                    Respectfully submitted,

6                                               LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
7                                               SHAWN A. WILLIAMS
                                                WILLOW E. RADCLIFFE
8                                               ELI R. GREENSTEIN
                                                JENNIE LEE ANDERSON
9                                               MONIQUE C. WINKLER

10

11                                              ELI R. GREENSTEIN

12
                                                100 Pine Street, Suite 2600
13                                              San Francisco, CA 94111
                                                Telephone: 415/288-4545
14                                              415/288-4534 (fax)

15                                              LERACH COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
16                                              MARK SOLOMON
                                                DOUGLAS R. BRITTON
17                                              VALERIE L. McLAUGHLIN
                                                GAVIN M. BOWIE
18                                              655 West Broadway, Suite 1900
                                                San Diego, CA 92101
19                                              Telephone: 619/231-1058
                                                619/231-7423 (fax)
20
                                                Lead Counsel for Plaintiffs
21   T:\CasesSF\Oracle3\OPP00038131.doc

22

23

24

25   [5]   In the event the Special Master grants defendants' requested extension, plaintiffs respectfully
     request that the Special Master issue a supplemental order requiring the parties to attend a telephonic
26   hearing within 7 days of defendants' production on February 15, 2007, so that the Special Master
     can monitor compliance with the December 19 Order and assess any discovery disputes arising from
27   the new production.

28

     PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION
     OF ORDER - C-01-0988-MJJ                                                              - 9 -

1

## PROOF OF SERVICE BY E-MAIL

2   I, CAROLYN BURR, not a party to the within action, hereby declare that on January 11,

3   2007, I served the attached PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR

4   MODIFICATION OF ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE THE

5   SPECIAL MASTER'S JULY 17, 2006 ORDER AND TO COMPEL ADDITIONAL

6   ACCOUNTING DOCUMENTS BASED ON RECENT TESTIMONY AND NEW EVIDENCE on

7   the parties in the within action by e-mail addressed as follows:

8   **COUNSEL FOR PLAINTIFFS:**

| | | |
|---|---|---|
| Mark Solomon, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | marks@lerachlaw.com |
| Douglas Britton, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | dougb@lerachlaw.com |
| Valerie McLaughlin, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | valeriem@lerachlaw.com |
| Gavin Bowie, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | gbowie@lerachlaw.com |
| Shawn Williams, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | shawnw@lerachlaw.com |
| Willow Radcliffe, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | willowr@lerachlaw.com |
| Eli Greenstein, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | elig@lerachlaw.com |
| Jennie Anderson, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | jenniea@lerachlaw.com |
| Monique Winkler, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | moniquew@lerachlaw.com |

**COUNSEL FOR DEFENDANTS:**

| | | |
|---|---|---|
| Peter Wald, Esq. | Latham & Watkins 505 Montgomery Street, Suite 2000 San Francisco, CA  94111 | peter.wald@lw.com |
| Michele Kyrouz, Esq. | Latham & Watkins – SF | michele.kyrouz@lw.com |
| Matthew Harrison, Esq | Latham & Watkins – SF | matthew.harrison@lw.com |
| Patrick Gibbs | Latham & Watkins – Menlo Park | patrick.gibbs@lw.com |
| Brian Glennon | Latham & Watkins –LA | brian.glennon@lw.com |
| Jamie Wine | Latham & Watkins – NY | jamie.wine@lw.com |

# Exhibit C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Original**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS) (Consolidated) |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **STIPULATION AND [~~PROPOSED~~] ORDER SETTING A DEADLINE AND BRIEFING SCHEDULE FOR PLAINTIFFS' CONTEMPLATED MOTION TO COMPEL ADDITIONAL TIME FOR THE DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ** |
| ALL ACTIONS. | |
| | DISCOVERY MATTER |
| | **Judge Martin J. Jenkins**<br>**Magistrate Judge Joseph C. Spero**<br>**Judge Edward A. Infante (Ret.)** |

1    WHEREAS, Defendants have made multiple document productions since the Court's

2   December 14, 2006 Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel the

3   Depositions of Christopher Balkenhol and Dorian Daley and Additional Time for the Depositions

4   of Larry Ellison and Safra Catz.

5    WHEREAS, Defendants will continue to make additional document productions to

6   Plaintiffs based on existing Court Orders.

7    WHEREAS, Plaintiffs believe documents from Defendants' above-mentioned productions

8   may give rise to a future motion to compel additional time for the depositions of Larry Ellison and

9   Safra Catz.

10    WHEREAS, pursuant to the Court's instruction at the October 11, 2006 telephonic

11   hearing, the Parties are required, unless there is good cause otherwise, to file any motions to

12   compel based on a new document production within seven court days of that production.

13    WHEREAS, Plaintiffs have requested to extend the deadlines to allow Plaintiffs to bring a

14   single motion to compel additional time for the depositions of Larry Ellison and Safra Catz after

15   Defendants' currently-ordered document productions are complete.

16    NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE AS

17   FOLLOWS:

18    Plaintiffs shall file with the Court any motion to compel additional deposition time with

19   Larry Ellison and Safra Catz no later than seven court days after the completion of Defendants'

20   currently-ordered productions, and in no event later than February 20, 2007. Defendants shall

21   have 10 days to file any opposition to such a motion and Plaintiffs shall then have five days to file

22   any reply. The hearing on any such motion shall take place no later than March 13, 2007 to

23   account for the currently-scheduled additional depositions of Larry Ellison and Safra Catz. By

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

STIP. AND [PROPOSED] ORDER SETTING A DEADLINE FOR
PLFS' CONTEMPLATED MOT. FOR ADD'L DEPOS. TIME
Case No. C-01-0988-MJJ

1 | agreeing to this Stipulation, Defendants are in no way agreeing that Plaintiffs are entitled to

2 | additional deposition time with Larry Ellison or Safra Catz.

3

4 | DATED:  January 26, 2007

5 | Respectfully submitted,

6

7 | LATHAM & WATKINS LLP                    LERACH COUGHLIN STOIA GELLER
                                                              RUDMAN AND ROBBINS LLP

8 |                                                                 with
                                                                 permission
                                                                  SMK

9 | By  *Michele F. Kyrouz*                    By  *Stacey Kaplan*
       Michele F. Kyrouz                               Stacey Kaplan
10 |     Counsel for Defendants Oracle Corporation,     Counsel for Plaintiffs
        Lawrence J. Ellison, Jeffrey O. Henley, and
11 |    Edward J. Sanderson

12 |                                            IT IS SO ORDERED:

13

14 |        1-30-07          *Edward A. Infante*
                            THE HONORABLE EDWARD A. INFANTE (Ret.)
15 |                        SPECIAL MASTER

16

17

18

19

20

21

22

23

24

25

26

27

28

STIP. AND [PROPOSED] ORDER SETTING A DEADLINE FOR
PLFS' CONTEMPLATED MOT. FOR ADD'L DEPOS. TIME
Case No. C-01-0988-MJJ

## PROOF OF SERVICE BY E-MAIL

I, Tamara Thweatt, not a party to the within action, hereby declare that on January 29, 2007, I served the attached **STIPULATION AND [PROPOSED] ORDER SETTING A DEADLINE AND BRIEFING SCHEDULE FOR PLAINTIFFS' CONTEMPLATED MOTION TO COMPEL ADDITIONAL TIME FOR THE DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ** on the parties in the within action by e-mail addressed as follows:

### COUNSEL FOR PLAINTIFFS:

| | | |
|---|---|---|
| Mark Solomon, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | marks@lerachlaw.com |
| Douglas Britton, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | dougb@lerachlaw.com |
| Valerie McLaughlin, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | valeriem@lerachlaw.com |
| Gavin Bowie, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | gbowie@lerachlaw.com |
| Shawn Williams, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | shawnw@lerachlaw.com |
| Willow Radcliffe, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | willowr@lerachlaw.com |
| Eli Greenstein, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | elig@lerachlaw.com |
| Monique Winkler, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | moniquew@lerachlaw.com |

### COUNSEL FOR DEFENDANTS:

| | | |
|---|---|---|
| Peter Wald, Esq.* | Latham & Watkins 505 Montgomery Street, Suite 2000 San Francisco, CA  94111 | peter.wald@lw.com |
| Michele Kyrouz, Esq. | Latham & Watkins – SF | michele.kyrouz@lw.com |
| Matthew Harrison, Esq. | Latham & Watkins – SF | matthew.harrison@lw.com |
| Patrick Gibbs | Latham & Watkins – Menlo Park | patrick.gibbs@lw.com |
| Brian Glennon | Latham & Watkins –LA | brian.glennon@lw.com |
| Jamie Wine | Latham & Watkins – NY | jamie.wine@lw.com |

* Denotes service via hand delivery and e-mail.

# Exhibit D

1  LERACH COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  MARK SOLOMON (151949)
   DOUGLAS R. BRITTON (188769)
3  VALERIE L. McLAUGHLIN (191916)
   GAVIN M. BOWIE (235532)
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6  marks@lerachlaw.com
   dougb@lerachlaw.com
7  valeriem@lerachlaw.com
   gbowie@lerachlaw.com
8       – and –
   SHAWN A. WILLIAMS (213113)
9  WILLOW E. RADCLIFFE (200087)
   ELI R. GREENSTEIN (217945)
10 JENNIE LEE ANDERSON (203586)
   MONIQUE C. WINKLER (213031)
11 100 Pine Street, Suite 2600
   San Francisco, CA  94111
12 Telephone:  415/288-4545
   415/288-4534 (fax)
13 shawnw@lerachlaw.com
   willowr@lerachlaw.com
14 elig@lerachlaw.com
   jenniea@lerachlaw.com
15 moniquew@lerachlaw.com

16 Lead Counsel for Plaintiffs

17                  UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19 In re ORACLE CORPORATION          )   Master File No. C-01-0988-MJJ
   SECURITIES LITIGATION             )
20 _____    )   CLASS ACTION
                                     )
21 This Document Relates To:         )   **DISCOVERY MATTER**
                                     )
22     ALL ACTIONS.                  )   PLAINTIFFS' NOTICE OF MOTION AND
                                     )   MOTION TO COMPEL THE DEPOSITIONS
23 _____    )   OF CHRISTOPHER BALKENHOL AND
                                         DORIAN DALEY AND ADDITIONAL
24                                       TIME FOR THE DEPOSITIONS OF LARRY
                                         ELLISON AND SAFRA CATZ
25
                                         DATE:      N/A
26                                       TIME:      N/A
                                         JUDGE:     The Honorable
27                                                  Edward A. Infante (Ret.)

28                         **CONFIDENTIAL**

1

**TABLE OF CONTENTS**

2

**Page**

3   I.       INTRODUCTION ......................................................................................................1

4   II.      LEGAL STANDARD..............................................................................................2

5   III.     ARGUMENT ...........................................................................................................4

6            A.      Plaintiffs Should Be Granted Additional Time to Examine Larry Ellison
                     Regarding a Mystifying Recent Production of Documents from His Files
7                    and Numerous Highly Incriminating Documents Recently and Previously

8                    Produced ..............................................................................................................4

9                    1.       Plaintiffs Should Be Allowed to Question Mr. Ellison Regarding
                              Defendants' Recent Production of a Baffling Array of Documents
10                            Purportedly from Mr. Ellison's Files ..........................................................4

11                   2.       Recently Produced Documents Prove that Mr. Ellison Lied Under
                              Oath.............................................................................................................5

12                   3.       Because Defendants' Recently Produced Over A Thousand Pages
                              of Highly Relevant Documents Implicating Mr. Ellison, Plaintiffs
13                            Are Entitled to Re-examine Him .................................................................6

14                   4.       Despite Diligent Efforts, Plaintiffs Were Unable to Question Mr.
                              Ellison Regarding Huge Amounts of Previously Produced
15                            Incriminating Evidence ...............................................................................9

16           B.      Plaintiffs Should Be Granted Additional Time to Examine Safra Catz in
                     Light of Defendants Recent Production of Critical Documents from Her
17                   Files and Other Highly Relevant Documents Implicating Her............................10

18           C.      Plaintiffs Should Have the Opportunity to Depose Christopher Balkenhol
                     in Light of Defendants' Recent Production of Highly Relevant Documents
19                   from His Files Revealing, for the First Time, His Level of Involvement in
                     Escalations .........................................................................................................11
20
                     1.       Previously Withheld Documents Indicate that Mr. Balkenhol
21                            Managed CRM 11i Customer Escalations...................................................12

22                   2.       Mr. Balkenhol Specifically Monitored High-Profile Escalated
                              Customers ..................................................................................................12
23
                     3.       Plaintiffs Were Deprived of the Opportunity to Depose
24                            Mr. Balkenhol Regarding These Critical Documents Despite Their
                              Diligence ...................................................................................................13
25
             D.      Plaintiffs Should Have the Opportunity to Depose Dorian Daley in Light
26                   of Recent Deposition Testimony and Defendants' Recent Production of
                     Documents Which Reveal, for the First Time, Her Involvement in
27                   Customer Settlements and Concessions................................................................14

28

**Page**

1.  Previously Withheld Documents Indicate that Ms. Daley Was in Charge of Settlements with and Concessions to Dissatisfied 11i Customers ...............................................................................................14

2.  Recent Testimony Reveals that Ms. Daley Was in Charge of Preserving the Documents Contained on Mr. Ellison's Computers ..........16

E.  Defendants Have Refused to Meet and Confer in Good Faith ..............................17

IV.  CONCLUSION................................................................................................................18

PLTFS' NOT OF MOT & MOT TO COMPEL THE DEPOS OF C. BALKENHOL AND D. DALEY
AND ADDITIONAL TIME FOR THE DEPOS OF L. ELLISON & SAFRA CATZ - C-01-0988-MJJ

- ii -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Dixon v. Certainteed Corp.,*
    164 F.R.D. 685 (D. Kan. 1996)......................................................................5

*Grill v. Costco Wholesale Corp.,*
    No. C03-2450R SM, 2004 WL 2314639
    (W.D. Wash. Oct. 7, 2004) .......................................................................5

*Hickman v. Taylor,*
    329 U.S. 495 (1947)................................................................................4

*Hurley v. JARC Builders, Inc.,*
    164 F.R.D. 39 (E.D. Pa. 1995).................................................................5

*Boston Scientific Corp. v. Cordis Corp.,*
    No. 5:02CV1474 JW (RS), 2004 WL 1945643
    (N.D. Cal. Sept. 1, 2004) .......................................................................5

*Jackson v. Laureate, Inc.,*
    186 F.R.D. 605 (E.D. Cal. 1999) ............................................................5

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992) ..................................................................5

*Keck v. Union Bank of Switzerland,*
    No. 94CIV.4912 (AGS) (JCF), 1997 WL 411931
    (S.D.N.Y. July 22, 1997) .......................................................................5

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 16(b) ............................................................................................5
    Rule 30(d)(2)....................................................................................3, 4

PLTFS' NOT OF MOT & MOT TO COMPEL THE DEPOS OF C. BALKENHOL AND D. DALEY
AND ADDITIONAL TIME FOR THE DEPOS OF L. ELLISON & SAFRA CATZ - C-01-0988-MJJ

- iii -

TO:      ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that plaintiffs hereby move this Court for deposition time for Christopher Balkenhol and Dorian Daley and additional time for the depositions of Larry Ellison and Safra Catz. This motion to compel is brought pursuant to Fed. R. Civ. P. 30(d)(2) and 37(a) and Civil L.R. 37. Plaintiffs have attempted in good faith to meet and confer without court action. This motion is based on this notice of motion, the points and authorities addressed below, the pleadings and evidence contained in the underlying record, and any other information submitted before or during the hearing on this matter.

## I.      INTRODUCTION

Plaintiffs file this motion to request seven hours of deposition time with Christopher Balkenhol and Dorian Daley and an additional seven hours of deposition time with Larry Ellison and Safra Catz. Plaintiffs believe that they are entitled to this time in order to examine these witnesses about documents recently produced by defendants. Granting plaintiffs the ability to question these key witnesses regarding recently produced documents will alleviate any prejudice caused by defendants' late production.

Two weeks after the close of discovery, defendants produced almost 50,000 pages of new documents. Included in this production were over a thousand pages of documents from the files of Mr. Ellison and Ms. Catz, most of which relate directly to key allegations in this case. Mr. Ellison and Ms. Catz are also implicated in hundreds of other recently produced documents (again, totaling thousands of pages). Defendants' antics should not be condoned. Plaintiffs respectfully request that defendants' late production not preclude plaintiffs from questioning Oracle's two top executives about documents which go to the core of their allegations. In addition, despite their most diligent efforts, the sheer volume of highly incriminating documents previously produced in this case prevented plaintiffs from questioning Mr. Ellison regarding all relevant allegations in the time allotted. Mr. Ellison is a key player in this litigation. The volume of incriminating evidence implicating him provides additional reason to grant plaintiffs' request for additional time.

1    Likewise, defendants have recently produced more than 2,200 documents totaling over

2    10,000 pages from the files of Mr. Balkenhol. These documents indicate, for the first time, the depth

3    of Mr. Balkenhol's involvement with customer escalations at the highest levels.   In addition,

4    documents recently produced by defendants reveal, again for the first time, Ms. Daley's involvement

5    in costly settlements with and concessions granted to a variety of Oracle 11i customers (many of

6    which were approved by the individual defendants).  Documents concerning problems with 11i and

7    the impact of such problems on Oracle's financial results through settlements and concessions go to

8    the heart of plaintiffs' case.  Despite their duty to produce these incriminating documents over 18

9    months ago, defendants produced them, along with almost 40,000 additional pages, two weeks after

10   the discovery cut-off.

11   Clearly, plaintiffs could not have reasonably anticipated such egregious behavior by

12   defendants.  In line with their conduct throughout the discovery process, plaintiffs have diligently

13   worked through defendants' late production and have narrowed their requests to seek only those

14   depositions deemed absolutely necessary.  Plaintiffs should not lose the opportunity to question Mr.

15   Balkenhol or Ms. Daley on documents which go to the core of their case simply as a result of

16   defendants' late production.

17   Defendants have effectively refused to meet and confer regarding deposition time for Mr.

18   Ellison, Ms. Catz, Mr. Balkenhol, or Ms. Daley.  Plaintiffs have sent numerous letters to defendants

19   setting forth their position on this issue and requesting a response.  Over a week ago, plaintiffs spoke

20   with counsel for defendants and again set forth their position.  At that time, defendants assured

21   plaintiffs that they would timely respond to their requests.  Yet despite plaintiffs' efforts, defendants

22   have not provided plaintiffs with their position on this issue.  As a result, the parties are at an

23   impasse.

24   **II.    LEGAL STANDARD**

25   A request for additional deposition time must be granted "if needed for a fair examination of

26   the deponent or if the deponent or another person, or other circumstance, impedes or delays the

27   examination." Fed. R. Civ. P. 30(d)(2); *see also* Fed. R. Civ. P. 30(a)(2)(B) (requests for second

28   depositions shall be granted consistent with Fed. R. Civ. P. 26(b)(2)).  The rules governing

1    depositions should be construed broadly and in favor of discovery.  *Hickman v. Taylor*, 329 U.S.

2    495, 507 (1947) ("deposition-discovery rules are to be accorded a broad and liberal treatment").

3          In light of these principles, courts routinely grant requests for additional deposition time upon

4    showing of good cause.  *See Grill v. Costco Wholesale Corp.*, No. C03-2450RSM, 2004 WL

5    2314639, at *1 (W.D. Wash. Oct. 7, 2004).  In assessing good cause, courts should consider "'the

6    need for additional time for full exploration of the theories upon which the witness relies, or where

7    new information comes to light triggering questions that the discovering party would not have

8    thought to ask at the first deposition.'"  *Id.* (citation omitted).  As this Court has recognized,

9    additional deposition time is proper if the deposing party was unable to question the witness

10   regarding all relevant allegations during the allotted time period, or where relevant documents were

11   subsequently produced.  *Id.; see also Boston Scientific Corp. v. Cordis Corp.*, No. 5:02CV1474 JW

12   (RS), 2004 WL 1945643, at *2 (N.D. Cal. Sept. 1, 2004) (granting additional deposition time when

13   additional documents were produced on the day of and after the deposition, regardless of the fact that

14   the witness had already given five full days of deposition testimony in the case).  *See also Keck v.*

15   *Union Bank of Switzerland*, No. 94CIV.4912(AGS)(JCF), 1997 WL 411931, at *3 (S.D.N.Y. July

16   22, 1997) (ordering depositions be reopened to resolve inconsistent testimony regarding destruction

17   of evidence); *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996) (granting second

18   deposition where relevant documents subsequently produced); *Hurley v. JARC Builders, Inc.*, 164

19   F.R.D. 39, 40 (E.D. Pa. 1995) (reopening of deposition to explore corporate relationships of which

20   deposing party was unaware at first deposition).

21         Similarly, requests to take depositions after the discovery cutoff are also granted upon

22   showing of good cause.  *See* Fed. R. Civ. P. 16(b).  Good cause in this context is assessed by the

23   moving party's diligence in taking discovery.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

24   604, 609 (9th Cir. 1992).  To judge diligence, the court may consider whether the moving party's

25   inability to comply with the discovery cutoff is the result of circumstances not reasonably anticipated

26   at the time of the scheduling conference and whether the moving party promptly requested

27   modification once it became apparent compliance with deadline was not possible.  *Jackson v.*

28   *Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   ARGUMENT

**A.   Plaintiffs Should Be Granted Additional Time to Examine Larry Ellison Regarding a Mystifying Recent Production of Documents from His Files and Numerous Highly Incriminating Documents Recently and Previously Produced**

**1.   Plaintiffs Should Be Allowed to Question Mr. Ellison Regarding Defendants' Recent Production of a Baffling Array of Documents Purportedly from Mr. Ellison's Files**

Two weeks after the close of discovery, defendants produced 346 additional documents, totaling over 1000 pages, from Mr. Ellison's files.  The documents, with few exceptions, consist of e-mail exchanges of customer escalation reports between upper and lower level escalation managers.  Mr. Ellison is listed as a sender or recipient on only 4 of these 346 documents and is implicated in only 7 more.  As a result, plaintiffs are completely baffled as to how 335 of these documents suddenly appeared, more than 18 months into discovery, from the files of an individual defendant who sold almost a billion dollars in stock during the Class Period.  This is all the more reprehensible since almost all of Mr. Ellison's files containing his own communications have been destroyed.

The escalation reports recently produced from Mr. Ellison's files detail problems with the following customers: APC, Indiana Mills, Foster, Timex, GE Corporate, Value Vision, Xerox, Honeywell, TMP, Brock Tools, GE Medical, Ingersoll Rand, BellSouth, Huawei, and Harmonics.  Of these customers, BellSouth, Fosters and GE were specifically pled in plaintiffs' complaint as customers who were experiencing difficulty with Oracle's software.  Defendants have been on notice of their duty to produce documents regarding problems with these customers for over 18 months.  The production of such documents from the files of Mr. Ellison two weeks after the end of discovery is completely unacceptable.

Of the customers mentioned above, Mr. Ellison is mentioned only on the documents involving GE, Fosters, and Brock Tools and is a recipient only of the Brock Tools documents.  Ironically, the only customer whose report Mr. Ellison received is a customer who he testified to knowing nothing about.  *See* Ex. 1 at 159: 21-25.  Also of concern to plaintiffs is the fact that the documents produced from Mr. Ellison's files regarding Brock Tools have been previously produced from the files of other Oracle employees in previous productions.  If these documents were deemed

1   relevant to the case and produced from the files of other, lower level employees, it is absolutely

2   astounding that they have been sitting in Mr. Ellison's files for almost two years and have never

3   been produced.  Defendants should not be allowed to get away with such abusive conduct.

4           Finally, as a result of recent testimony from Oracle's general counsel, it is entirely unclear to

5   plaintiffs whether the newly produced documents sourced to Mr. Ellison actually came from his

6   files.  At the deposition of Daniel Cooperman, Mr. Cooperman testified, after being confronted with

7   literally thousands of pages of bug reports and other documents which he professed he had never

8   seen, did not receive, and had no explanation as to why they came from his files.  *See, e.g.*, Ex. 2 at

9   129:16-130:24; 148:13-150:7.  Mr. Cooperman, ***Oracle's General Counsel, admitted during his***

10  ***testimony that defendants' source logs are inaccurate***.  *Id.* at 180:17-23 ("Q: Okay.  I'm going to

11  represent to you it was produced – it was sourced to you from your files.  A:  Okay.  That's fine;

12  Q: And that day –.  A: Although as we've seen, that's not dispositive.").   Cooperman himself

13  testified that he no idea how documents such as those recently produced by defendants and sourced

14  to Mr. Ellison could have come from Mr. Ellison's files.  *Id.* at 136:11-137:9.  As such, the recent

15  production is a mystery to plaintiffs.   Either defendants recently produced documents from

16  Mr. Ellison's files which clearly should have been produced when discovery commenced or they

17  have incorrectly sourced hundreds of documents to Mr. Ellison at the very end of discovery.  Either

18  way, defendants have a good deal of explaining to do.   And either way, plaintiffs are entitled to

19  examine Mr. Ellison about the documents, whether he has seen them, and why they have suddenly

20  turned up from his files 18 months into discovery.

21              **2.      Recently Produced Documents Prove that Mr. Ellison Lied
                          Under Oath**

22

23          At his deposition on September 21, 2006, Ellison admitted under oath that he has lied.  *See*

24  Ex. 3 at 544:5-7 ("Q: Did you lie about getting into medical school?; A: I did."); 541:22-542:1

25  (Q: Now, it's true, isn't it, that you have admitted in the past that you lied about having a degree; is

26  that true?; A: In order to get a job in Silicon Valley, I did, yeah.); 542:11-14 ("maybe I exaggerated

27  the capabilities of our database early on, but I don't think I've, you know, made a habit of it over the

28  years.").  Documents recently produced by defendants prove that Mr. Ellison lied under oath

1    regarding facts in this litigation.  At his September deposition, Mr. Ellison testified as follows

2    regarding his early February 2001 meeting with HealthSouth executive Richard Scrushy: "Actually,

3    I decided that under no circumstances do we do business with HealthSouth after meeting Richard

4    Scrushy."  *See* Ex. 4 at 261:18-20.  However, documents recently produced reveal that HealthSouth

5    purchased the entire Oracle 11i Suite later that month.  *See* Ex. 5 at NDCA-ORCL 1053746

6    ("[HEALTHSOUTH] JUST BOUGHT THE ENTIRE EBUSINESS SUITE").  This document also

7    reveals that the deal with HealthSouth was Oracle's first major project in the healthcare industry and

8    that Oracle was developing software specifically for the project.  *Id.* at 1053743-5.  Finally, the

9    document reveals that Ellison was highly involved in both deal and the publicity surrounding it.  *See,*

10   *e.g.*, *id.* at 1053744 ("Larry will be in Birmingham, Alabama on Monday, March 26, to do a press

11   conference at 3:00 p.m. with CEO of HealthSouth Richard Scrushy and the governor of Alabama.").

12   Clearly, plaintiffs are entitled to examine Mr. Ellison regarding his earlier statements under oath and

13   the newly produced document which proves that those statements were blatantly untrue.

14           **3.    Because Defendants' Recently Produced Over A Thousand**
                     **Pages of Highly Relevant Documents Implicating Mr. Ellison,**
15                   **Plaintiffs Are Entitled to Re-examine Him**

16           In addition to documents sourced to him, defendants recently produced an additional 600

17   pages of new documents which implicate Mr. Ellison.  These fall within the following categories:

18   settlements/concessions for dissatisfied 11i customers (most of which Mr. Ellison had to personally

19   approve); escalation reports and documents detailing 11i problems, documents discussing the effect

20   of the economy on Oracle's revenues, documents discussing swap transactions, and documents

21   providing interviews and information regarding meetings with analysts.

22           Although plaintiffs are not willing to detail the documents that they wish to utilize in any

23   future deposition of Mr. Ellison, thus providing defense counsel with an effective preparation

24

25

26

27

28

roadmap, plaintiffs offer the following as examples of documents which we wish to further examine Mr. Ellison on[1]:

- Approval request to Larry Ellison for Select Medical Corporation for "Renewal of Non E-Business Licenses at 100% discount of support cap." *See* Ex. 6 at NDCA-ORCL 1056881-82 ("Select Medical has been experiencing difficulty running their 11i versions of HR and Financials.  In the past they have been a reference account.  Recently, they have asked that potential customers not contact them, due to the extent of their problems, until they are resolved.  They went live with 11i last winter and it took 2 months just to get the database supporting it stable. . . .  Financials has been 'stable' for the last two months, but HR is under performing/slow and the customer recently came within 15 minutes of missing their direct deposit pay run deadline due to poor system performance.  Their problems have been escalated to development and from what I understand, there is a weekly conf call on Wednesdays to go over the 10 hottest tars of the week.  Most of the Sev 1's have been on the financials, but HR has had its share.  Customer went live to 11.5.3 about 3 weeks ago, but this has caused more issues. . . .  I believe this action will also help the customer return to the status of a reference account by showing the customer that we are willing to work through their problems with good business solutions.").

- E-mail from Mr. Ellison to Mark (most likely Barrenechea) following up on several emails (one from November 20, 2000 the other undated) from Paul Whitehead, CFO, Zapmedia and asking that Mark "look at this personally." *See* Ex. 7 at NDCA-ORCL 1034210-11 ("Larry – I wanted to follow up on my email from November 20, 2000, to plead for your direct assistance in resolving the major problems that we are having with the Oracle 11i CRM module. . . . the net effect is that after some 50 hours of patching last week by your Oracle Consulting team, the Oracle 11i CRM application just does not work. . . .  As I explained to you after the presentation last week, ZapMedia is in the process of rolling out a truly revolutionary form of internet-based home entertainment, and we are deeply wedded to the Oracle 11i platform as a key back-end component of our entire ZapMedia Ecosystem. While admittedly it is not the only factor, the severe challenges that we have faced and continue to face with Oracle 11i have caused (and if not remedied immediately) will continue to cause delay in our product rollout-something that we can ill afford given the fact that we have limited funding ($28 million to date) that we are burning through at a rate of approximately $1.6 million for each month of delay in releasing our product.... Oracle Support is not providing solutions to our problems with 11i. There is limited knowledge of 11i; our problems are given low priorities and are not being escalated. Critical functions that were promised to us during the Oracle sales process do not exist in 11i.  The CRM package is too unstable to implement without a stand alone environment.").

- August 29, 2001 settlement approval for Mr. Ellison regarding Zapmedia, Inc (company in second example, above) "that would permit Zapmedia to pay $88,833.00 in satisfaction of its outstanding consulting invoices totaling $355,334.00.  The request is based on (i) liability issues related to the functionality of the programs sold to and implemented at Zapmedia and (ii) Zapmedia's inability to

---

[1]     In addition, should the Court so desire, plaintiffs are willing to submit both the newly produced and previously produced documents which we wish to examine Mr. Ellison on for *in camera* review.

PLTFS' NOT OF MOT & MOT TO COMPEL THE DEPOS OF C. BALKENHOL AND D. DALEY
AND ADDITIONAL TIME FOR THE DEPOS OF L. ELLISON & SAFRA CATZ - C-01-0988-MJJ        - 7 -

1   pay more than the discounted amount." *See* Ex. 8 at NDCA-ORCL 1056885-86
    ("The Oracle representative suggested that Zapmedia had been 'misled' by Oracle's
2   sales representatives and stated that Zapmedia had a claim to acquire the additional
    functionality based on programs that it thought it was acquiring.  Finally, due to
3   program instability, there were problems with implementing the programs that that
    were indisputably purchased, causing ZapMedia to suffer delays in its 'go live' date.
4   Zapmedia is also on the verge of going out of business. The company has downsized
    from 125 to 28 employees.  It is almost out of funds and may dissolve the company
5   voluntarily or declare bankruptcy. . . .  Recommendation:  Keith Block has approved
    stating that it is this 88K or nothing as they are going under.  Approve.").

6
        •    December 2000 e-mail from Sergio Giacoletto stating: "see attached escalation from
7            Barclays to Larry Ellison.  This time we need a 100% commitment or we will totally
             loose our credibility."  *See* Ex. 9 at NDCA-ORCL 1026720-21.

8
        •    E-mail regarding GE, for whom Larry Ellison was the corporate sponsor, from
9            November 2000 stating "GE's biggest issue revolves around 'the rapidly growing
             impression on GE's part that the products have not been properly or effectively
10           tested.'   GE are very upset that they have to first identify a problem before
             development work on fixing it."  *See* Ex. 10 at NDCA-ORCL 1027519.

11
        •    March 28, 2001 e-mail from Michael Rocha to Mr. Ellison and Safra Catz, among
12           others, attaching an Escalated Account Report detailing numerous escalated
             customers and the problems that they had been experiencing in the months leading
13           up to the report (*i.e.*, January and February of 2001).  *See* Ex. 11 at NDCA-ORCL
             1027667-750 (defendants had previously produced the first page of the email but not
14           the attached report).

15      None of these highly relevant documents have been previously produced by defendants in

16  this litigation.  Plaintiffs should not be denied the opportunity to examine Mr. Ellison regarding

17  these customers who were harmed by Oracle's products.

18      In addition, defendants recently produced Mr. Ellison's unredacted calendar, detailing his

19  activities on a daily basis throughout the Class Period.  Previously, his personal custom calendar had

20  been redacted for the month of February.  Although plaintiffs requested an unredacted calendar

21  weeks before Mr. Ellison's deposition, defendants failed to produce an unredacted version until after

22  Mr. Ellison's second day of deposition.  Plaintiffs are entitled to examine Mr. Ellison regarding his

23  whereabouts and activities during the Class Period.  As a result, plaintiffs should be entitled to

24  examine Mr. Ellison regarding his fully unredacted custom calendar, which defendants should have

25  produced in unredacted form over 18 months ago.

26      As fully detailed in Plaintiffs' Motion to Compel Documents Concerning and Created in

27  Preparation For the Book SOFTWAR, filed concurrently with this motion, defendants recently

28  produced documents concerning SOFTWAR: An Intimate Portrait of Larry Ellison and Oracle.

1  Despite the clear relevance of the information contained in SOFTWAR to plaintiffs' allegations,

2  defendants failed to produce these documents until after Mr. Ellison's second day of deposition.

3  Plaintiffs deserve the opportunity to question Mr. Ellison regarding these documents and should not

4  be prejudiced by defendants' failure to adequately and timely respond to plaintiffs' discovery

5  requests.

6       Finally, plaintiffs are moving to compel the production of several categories of documents

7  which are likely to implicate Mr. Ellison, including documents concerning and created in preparation

8  for SOFTWAR, documents concerning Oracle's stock repurchase program (and whether Oracle was

9  purchasing stock as Mr. Ellison was selling), documents which have been withheld on assertions of

10  privilege, accounting documents, historical forecasting reports, and documents concerning

11  settlements and concessions for disgruntled 11i customers.  If plaintiffs are successful in their pursuit

12  of these documents, plaintiffs expect that they will want to examine Mr. Ellison regarding their

13  contents.

14       As detailed above, a vast array of documents implicating Mr. Ellison and relating to

15  plaintiffs' core allegations have recently been produced by defendants two weeks after the close of

16  discovery.  Plaintiffs should not be prejudiced by defendants' tardy productions.  Accordingly,

17  plaintiffs request the opportunity to examine Mr. Ellison regarding these core documents.

18       **4.    Despite Diligent Efforts, Plaintiffs Were Unable to Question
             Mr. Ellison Regarding Huge Amounts of Previously Produced
19             Incriminating Evidence**

20       In addition, although plaintiffs have efficiently and diligently utilized the full time allotted at

21  each of Mr. Ellison's depositions, plaintiffs have not been able to fully examine Mr. Ellison on the

22  core issues in this case.  Plaintiffs have been extremely diligent in examining Mr. Ellison.  However,

23  plaintiffs were unable to examine Mr. Ellison regarding approximately a hundred highly relevant

24  documents relating to: forecasting and the economy, problems with 11i, statements made by Mr.

25  Ellison, insider trading, and SOFTWAR.

26       Plaintiffs have received, as a result of well-prepared and diligent examination, incriminating

27  testimony in a number of these areas.  *See, e.g.*, Ex. 12 (comparing the material from SOFTWAR

28  with the testimony it previously elicited from Mr. Ellison).  However, due to the vast amount of

PLTFS' NOT OF MOT & MOT TO COMPEL THE DEPOS OF C. BALKENHOL AND D. DALEY
AND ADDITIONAL TIME FOR THE DEPOS OF L. ELLISON & SAFRA CATZ - C-01-0988-MJJ          - 9 -

1   relevant evidence in this case, plaintiffs have been unable to delve as deep as they would like.  Mr.

2   Ellison is the key defendant in this case.  He sold nearly a billion dollars in Oracle stock during the

3   relevant time period.  Plaintiffs should be allowed the opportunity to fully and completely examine

4   Mr. Ellison regarding relevant documents which go to the heart of their case.

5          Because plaintiffs have received thousands of pages of new documents implicating Mr.

6   Ellison and proving that he lied under oath, and because plaintiffs have not had the opportunity to

7   examine Mr. Ellison about previously produced and incriminating documents or the baffling recent

8   production from his files, plaintiffs respectfully request that this Court compel Mr. Ellison to appear

9   for an additional seven hours of deposition time.

10          **B.**     **Plaintiffs Should Be Granted Additional Time to Examine Safra Catz**
                        **in Light of Defendants Recent Production of Critical Documents from**
11                      **Her Files and Other Highly Relevant Documents Implicating Her**

12          On October 16, two weeks after discovery ended and months after Ms. Catz was deposed,

13   defendants produced 181 documents from her files and hundreds of additional documents

14   implicating her.  The documents from her source file include escalation reports, e-mails discussing

15   the effect of the economy on Oracle's business during the Class Period, documents concerning

16   Oracle's deal with HealthSouth and Mr. Ellison's involvement in that deal (again, Mr. Ellison

17   testified that Oracle refused to deal with HealthSouth and Mr. Scrushy), documents concerning

18   concessions for dissatisfied customers, and documents relating to SOFTWAR.

19          For example, in an email sent on March 14, 2001 from Mr. Ellison to Ms. Catz, Mr. Ellison

20   approves a $2.7 M concession for Xerox due to "significant issue with crm and order management

21   integration.  Code stability, lack of quoting capability within iStore and lack of integration between

22   Contracts and Order Management have been major issues for them."  *See* Ex. 13 at NDCA-ORCL

23   1056920.

24          In another document sourced to Ms. Catz, in May 2001 she forwards a note to Mr. Ellison

25   which contains the following statements: "As many IT vendors, Oracle blamed the economic

26   slowdown in the United States for affecting its business, with many enterprises deferring purchases.

27   However, several factors unique to Oracle – including database pricing, 11i quality and the suite

28   approach to selling applications – may make recovery from the economic downturn more

1   difficult . . . .   Slower 11i adoption by customers will also make it more difficult to generate

2   momentum for the product and to stabilize it through production testing and usage."  Ex. 14 at

3   NDCA-ORCL 1053804-05.

4   　　　　None of the document in the categories referenced above have previously been produced in

5   this litigation.   As a result of defendants' tardy production, plaintiffs have been denied the

6   opportunity to examine Ms. Catz about a large number of documents from her files which relate to

7   key issues in this litigation.   To avoid prejudice, plaintiffs request the opportunity to examine

8   Ms. Catz regarding these highly relevant newly produced documents.

9   　　　　In addition, documents produced from the files of other Oracle employees which implicate

10   Ms. Catz involve customer concessions and escalation and bug reports.  For example, an email sent

11   from George Roberts on March 26, 2001 to Ms. Catz, among others, describes performance

12   problems with an implementation at Chipotle ("Chipotle has removed themselves from the reference

13   program until the 'reality meets the hype'") which is affecting Oracle's ability to sell its products to

14   McDonald's ("our credibility [with McDonald's] is being undermined by the problems that

15   [McDonald's subsidiary] Chipotle is having").  *See* Ex. 15 at NDCA-ORCL 1027934.

16   　　　　Again, defendants' failure to produce these incriminating documents until two weeks after

17   the close of discovery is baffling.   Plaintiffs should not suffer as a result of defendants' late

18   production.   Plaintiffs should be permitted to examine Ms. Catz regarding her involvement in these

19   core issues.   Good cause being shown, plaintiffs request this Court grant plaintiffs request for

20   additional time to depose Ms. Catz.

21   　　**C.**　　**Plaintiffs Should Have the Opportunity to Depose Christopher
        Balkenhol in Light of Defendants' Recent Production of Highly
22        Relevant Documents from His Files Revealing, for the First Time, His
        Level of Involvement in Escalations**

23

24   　　　　On October 16, 2006, two weeks after the fact discovery cutoff and nearly 18 months after

25   the Court-ordered production deadline in this case, defendants produced ***over 2,200 documents
     totaling more than 10,000 pages*** from the files of Christopher Balkenhol, Vice President of

26   Customer Relationship Management ("CRM") Development at Oracle during the relevant time

27   period.  Although defendants previously produced documents from Mr. Balkenhol's files, the newly

28

1   produced documents are crucial because they demonstrate, for the first time, that Mr. Balkenhol was

2   not merely engaged in product development, but was also intimately involved with CRM 11i

3   customer escalations monitored at the highest levels of the company.  While the sheer volume of the

4   production at this late date alone justifies plaintiffs' request to depose Mr. Balkenhol after the

5   discovery cutoff, the plain relevancy of the newly produced documents establishes beyond doubt that

6   plaintiffs' request is amply supported by good cause and should be granted.

7   **1.    Previously Withheld Documents Indicate that Mr. Balkenhol
     Managed CRM 11i Customer Escalations**

8

9       The recently produced documents indicate that Mr. Balkenhol assumed responsibility for

10  CRM customer escalations on or around December 14, 2000.  Ex. 16 at NDCA-ORCL 1034121-126,

11  103422 and 103124 ("I will handle all new escalations . . . [a]ll reporting should change to me."); *see*

12  *also* Ex. 17 at NDCA-ORCL 1034196-97 ("New Service escalations have already been assigned to

13  Chris.").  By January 22, 2001, Mr. Balkenhol was actively prioritizing and managing what had

14  become an overwhelming number of customer escalations.  Ex. 18 at NDCA-ORCL 1024798.  As

15  part of his duties, Mr. Balkenhol received daily detailed CRM escalation reports throughout the class

16  period, and communicated with Mr. Barrenechea and others in the CRM team regarding the

17  problems identified in those reports.  *See, e.g.*, Ex. 19 at NDCA-ORCL 1032215-22; Ex. 20 at

18  NDCA-ORCL 1034405-10; Ex. 17 at NDCA-ORCL 1034196-97.  Mr. Balkenhol also participated

19  in weekly bug review meetings, in which "P1" bugs and missed deadlines were at the top of the

20  agenda.  Ex. 21 at NDCA-ORCL 1030226-37 (February 6, 2001 email re Bug Review Meeting

21  Going Forward).

22  **2.    Mr. Balkenhol Specifically Monitored High-Profile Escalated
     Customers**

23      The documents defendants produced on October 16, 2006 also reveal that Mr. Balkenhol

24  tracked the progress of several high-profile CRM 11i customers which were escalated to the top

25  levels of the company.   These customers, many of whom were also monitored by the individual

26  defendants, include, but are not limited to the following:

27      •      Wincor Nixdorf

28      •      Zap Media

1    •    Hewlett Packard

2    •    Zhone Technologies

3    •    BellSouth

4    •    GE Medical

5    •    Posco

6    •    Tricare

7    •    Toshiba

8    •    Silterra

9        These key customers were escalated to the highest levels of the company.  Mr. Ellison has

10   already testified about his involvement with or knowledge of several of these escalations, including

11   GE Medical, Bellsouth, and POSCO.  Mr. Balkenhol's testimony would shed deeper light on the

12   problems encountered by these dissatisfied 11i customers.

13           **3.       Plaintiffs Were Deprived of the Opportunity to Depose**
                         **Mr. Balkenhol Regarding These Critical Documents Despite**
14                       **Their Diligence**

15       Despite plaintiffs' diligent pursuit and review of documents throughout the discovery period,

16   they could not have reasonably anticipated that defendants would improperly withhold more than

17   10,000 pages of highly relevant documents from Mr. Balkenhol's files until ***two weeks after the***

18   ***discovery cutoff.***  These documents demonstrate Mr. Balkenhol's central role in managing CRM 11i

19   customer escalations, fall squarely within the scope of the Discovery Plan, and should have been

20   produced nearly 18 months ago.  Defendants' failure to comply with this Court's orders wrongfully

21   deprived plaintiffs the opportunity to depose Mr. Balkenhol regarding these core documents and

22   issues prior to close of discovery.  Good cause being shown, this Court should therefore grant

23   plaintiffs' request to depose Mr. Balkenhol now.

24

25

26

27

28

D.     **Plaintiffs Should Have the Opportunity to Depose Dorian Daley in Light of Recent Deposition Testimony and Defendants' Recent Production of Documents Which Reveal, for the First Time, Her Involvement in Customer Settlements and Concessions.**

1.     **Previously Withheld Documents Indicate that Ms. Daley Was in Charge of Settlements with and Concessions to Dissatisfied 11i Customers**

Dorian Daley is the Manager of Oracle's litigation department.  Recently produced documents reveal, for the first time, how integral her role was in settlements and concessions for dissatisfied Oracle 11i customers.  She is a recipient of or is implicated in documents involving customers such as Bellsouth, Merrill Lynch, Cyrk Inc., Paxar, Arctic Slope and Interlogix, Inc.  Each of these customers was unhappy with the performance of Oracle's products, causing Oracle to refund or discount between $100,000 and $31,976,798 worth of products and services to appease them.

For example, in late October 2000, George Roberts and Jay Nussbaum requested Larry Ellison's approval of a $450,000 concession to Interlogix, Inc. to "moderate customer satisfaction issues with their 11i upgrade difficulties."  *See* Ex. 22 at NDCA-ORCL 1056850.  As the document explains: "The initial attempt to upgrade to 11.5.1 was a disaster.  The current attempt to go directly from 10.7 to 11.5.3 is going better, but is slow and has met with extreme difficulties, as well.  They have missed several go live dates, forcing them to retrench and spend significantly more money each time on consulting services and internal costs . . . .  The project has lost the confidence of the Interlogix Steering Committee and their CEO Brian McCarthy.  Mr. McCarthy told me that his company has lost $2.4 M in cost overruns associated with excessive bug fix's, poorly documented upgrade scripts, and scripts that didn't take into consideration integration with other modules.  Mr. McCarthy also mentioned that his firm has had to implement costly interim solutions while his business waits for the upgrade to be fully tested and implemented . . . .  Note that Interlogix has acquired $2.3 M in Oracle produce and $1.1 M in Oracle services in FY01.  ***They are a great Oracle customer that is living through an extremely burdensome upgrade that is effecting employee moral and the firms financial health***."  *Id.* (emphasis added).

Incredibly, the approval request then recommends "Approve w/ George's requirements that they sign a release & ***agree to be a reference***.  Dorian is involved."  This document demonstrates

1   clearly Oracle's desperate need of references and its attempts to bribe extremely unhappy customers

2   to get them.  Plaintiffs should be afforded the opportunity to examine Ms. Daley regarding her

3   involvement and the involvement of top Oracle executives, including Mr. Ellison, in such

4   concessions.

5          In addition, there are numerous other newly produced settlement documents which make

6   references to "Legal" being involved but do not specify an individual responsible (including

7   customers who could not pay as a result of financial problems resulting from their use of Oracle's

8   products).  Plaintiffs have also moved to compel the production of final settlement/concession

9   agreements and releases with Oracle's multitude of unhappy 11i customers.  If such documents are

10  produced, plaintiffs request the opportunity to examine Ms. Daley regarding them.

11         The effects of the above-mentioned settlements and concessions clearly impacted Oracle's

12  financial prospects and, as a result, are highly relevant to plaintiffs' allegations.  For example, a EJS

13  (Edward J. Sanderson) Q301 Ops Review presentation slide titled "R11i Product Issues has a large

14  impact YTD, further negotiations and settlements are ongoing" lists a variety of customers with

15  costly product issues.  The slide concludes that the Total Q3 YTD negative revenue value for Oracle

16  of such settlements/concessions in just NAS and OPI was $14.6 M.  *See* Ex. 23 at NDCA-ORCL

17  069374.

18         Plaintiffs could not reasonably have expected defendants to produce documents showcasing

19  Ms. Daley's involvement, for the first time, in various settlements and concessions for 11i customers

20  two weeks after the end of discovery.  As Ms. Daley was the head of Oracle's litigation during the

21  relevant time period and, based on recently produced documents, was involved in so many

22  settlements/concessions for dissatisfied customers[2], plaintiffs request the opportunity to examine her

23  regarding this involvement.

24

25  _____

26  [2]       On October 27, 2006, defendants sent plaintiffs a letter purporting to withdraw a variety of
    documents which they had mistakenly produced on October 4, 2006 and again on October 16, 2006.
    Although plaintiffs intend to vigorously challenge defendants' tardy assertion of privilege, plaintiffs
27  have not cited those documents out of respect for defendants' contentions.  However, those
    documents show an even greater amount of involvement by Ms. Daley in the settlement/concession
28

1
      **2.**      **Recent Testimony Reveals that Ms. Daley Was in Charge of**
2
             **Preserving the Documents Contained on Mr. Ellison's**
             **Computers**

3
      In addition, recent testimony from Mr. Ellison and Ms. Segal reveals that Ms. Daley was in

4
charge of gathering Mr. Ellison's computers and preserving the documents contained thereon.

5
Mr. Ellison testified, regarding the preservation of documents on the computers located on his boats

6
and in his homes, that "I believe Dorian was in charge of all that." *See* Ex. 24 at 93:23-95:22.

7
Ms. Segal corroborated Mr. Ellison's testimony, stating that "I believe Dorian did [look at

8
documents on Mr. Ellison's home and boat computers] at some point." *See* Ex. 25 at 266:14-23.

9
Finally, Mr. Ellison later testified that his computers have been retained and are located in "Some

10
lawyer's office." *See* Ex. 26 at 472: 8-16.

11
      Given the plethora of incriminating documents which plaintiffs know were sent from or

12
received by Mr. Ellison which are mysteriously missing from his files, plaintiffs request the

13
opportunity to examine Ms. Daley regarding the steps she took to preserve Mr. Ellison's computers

14
and the documents contained thereon. For example, in mid-March 2001 George Roberts sent Ellison

15
an email stating: "this situation can no longer wait. I have 3-4 clients where we are about to lose

16
control . . . . I have 6 situations like this or more depending on the day of the week." On March 23,

17
2001 Ellison replied to Roberts, CCing Mark Barrenechea, Ron Wohl, and Safra Catz stating: "OK. I

18
want all escalated customers to belong to development managers . . . . Mark, I need daily reports

19
until the customer is happy. I need a list of other escalated customers and I need it now. And I need

20
support to resurrect the reports grading whether products are within the agreed quality parameters."

21
*See* Ex. 27 at NDCA-ORCL 054077. In another document, sent to Ellison, among others, by Sergio

22
Giacoletto on June 7, 2001, Mr. Giacoletto writes: "I also disappointed by the results . . . . but . . . as

23
you know, we have six-nine months of product issues which caused loss of confidence by sales,

24
partners, analysts and customers. Even as of today, R11.5.4 which is the first stable release is NOT

25
AVAILABLE in local language and we will only get it between July and October 2001. This

26

27
process and should plaintiffs prevail, we intend to question Ms. Daley regarding those documents, as
well.

28

1  continued delay between the American English release and the local language is hurting us." *See*

2  Ex. 28 at NDCA-ORCL 162215.

3       These documents are just a few examples of many.  Plaintiffs specifically cite documents

4  created after the initiation of this lawsuit to highlight the egregiousness of defendants' behavior.

5  Even clearly relevant documents sent from or received by Mr. Ellison ***after plaintiffs' action was***

6  ***filed and after he had received a preservation notice*** are missing from his files.  Plaintiffs request

7  the opportunity to question Ms. Daley, the person in charge of the preservation effort with regard to

8  Mr. Ellison, about the reason for this discrepancy.

9       **E.      Defendants Have Refused to Meet and Confer in Good Faith**

10      On October 4, 2006 defendants produced over 50,000 pages of new documents.   On

11  October 10, 2006 plaintiffs wrote a letter informing defendants of their requests for, among other

12  things: (1) additional deposition time for defendant Larry Ellison based on recently produced

13  documents as well as previously produced documents which plaintiffs, as a result of time constraints,

14  were not able to question Mr. Ellison about; (2) additional deposition time for Safra Catz based on

15  recently produced documents; (3) deposition time for Christopher Balkenhol based on recently

16  produced documents; and (4) deposition time for Dorian Daley based on testimony and recently

17  produced documents.  *See* Ex. 29.

18      On October 16, 2006 defendants reproduced their October 4th production in an effort to

19  alleviate the problems rampant in their first effort.  Despite having had the new production in a

20  usable format for less than 48 hours, plaintiffs worked diligently to press through the documents in

21  order to provide defendants with greater detail on their need for additional deposition time.  On

22  October 19, 2006, the parties held a meet and confer session on additional deposition time for

23  Mr. Ellison, Ms. Catz, Mr. Balkenhol, and Ms. Daley.  At that session, plaintiffs provided defendants

24  with the categories of new documents, old documents, and testimony we intend to utilize for each of

25  these four witnesses.  Plaintiffs declined, however, to provide defendants with a specific roadmap of

26  exactly which documents they intended to examine those witnesses regarding.

27      On October 20, 2006, the parties again held a meet and confer session on this issue and

28  plaintiffs were able, through their efforts, to provide defendants with even greater detail to support

1    their requests, including the amount of time requested for each witness and additional categories of

2    new documents plaintiffs intend to examine those witnesses regarding.  Defendants stated that they

3    would speak to their client and timely respond to plaintiffs' requests.  On October 24, 2006, having

4    heard absolutely no response from defendants, plaintiffs again sent a letter requesting defendants'

5    position.  *See* Ex. 30.  Despite plaintiffs' diligent efforts to plow through the new production and

6    meet and confer with defendants on additional deposition time, defendants have blatantly refused to

7    provide plaintiffs with their position.

8         In order to alleviate the prejudice caused by defendants' late production of thousands of

9    pages of new documents from the files of and implicating Mr. Ellison, Ms. Catz, Mr. Balkenhol, and

10   Ms. Daley, and as a result of recent deposition testimony, the glut of evidence implicating Mr.

11   Ellison and defendants' refusal to meet and confer in good faith, plaintiffs are entitled to additional

12   deposition time to examine these important witnesses.

13   **IV.    CONCLUSION**

14        For all of the foregoing reasons, plaintiffs respectfully request an Order compelling

15   Mr. Ellison, Ms. Catz, Mr. Balkenhol, and Ms. Daley for seven hours of examination each.

16   DATED:  October 30, 2006                    Respectfully submitted,

17                                               LERACH COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
18                                               MARK SOLOMON
                                                 DOUGLAS R. BRITTON
19                                               VALERIE L. McLAUGHLIN
                                                 GAVIN M. BOWIE

20

21

22

23

24                                                        MARK SOLOMON

25                                               655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
26                                               Telephone:  619/231-1058
                                                 619/231-7423 (fax)

27

28

PLTFS' NOT OF MOT & MOT TO COMPEL THE DEPOS OF C. BALKENHOL AND D. DALEY
AND ADDITIONAL TIME FOR THE DEPOS OF L. ELLISON & SAFRA CATZ - C-01-0988-MJJ        - 18 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
JENNIE LEE ANDERSON
MONIQUE C. WINKLER
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

S:\CasesSD\Oracle3\mot00036266.doc

**PROOF OF SERVICE BY E-MAIL**

I, Kelly Brennan, not a party to the within action, hereby declare that on October 30, 2006, I served the attached **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL THE DEPOSITIONS OF CHRISTOPHER BALKENHOL AND DORIAN DALEY AND ADDITIONAL TIME FOR THE DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ** on the parties in the within action by e-mail addressed as follows:

**COUNSEL FOR PLAINTIFFS:**

| | | |
|---|---|---|
| Mark Solomon, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | marks@lerachlaw.com |
| Douglas Britton, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | dougb@lerachlaw.com |
| Valerie McLaughlin, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | valeriem@lerachlaw.com |
| Gavin Bowie, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP - SD | gbowie@lerachlaw.com |
| Shawn Williams, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | shawnw@lerachlaw.com |
| Willow Radcliffe, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | willowr@lerachlaw.com |
| Eli Greenstein, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | elig@lerachlaw.com |
| Jennie Anderson, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | jenniea@lerachlaw.com |
| Monique Winkler, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | moniquew@lerachlaw.com |

**COUNSEL FOR DEFENDANTS:**

| | | |
|---|---|---|
| Peter Wald, Esq.* | Latham & Watkins 505 Montgomery Street, Suite 2000 San Francisco, CA  94111 | peter.wald@lw.com |
| Michele Kyrouz, Esq. | Latham & Watkins – SF | michele.kyrouz@lw.com |
| Matthew Harrison, Esq. | Latham & Watkins – SF | matthew.harrison@lw.com |
| Patrick Gibbs | Latham & Watkins – Menlo Park | patrick.gibbs@lw.com |
| Brian Glennon | Latham & Watkins –LA | brian.glennon@lw.com |
| Jamie Wine | Latham & Watkins – NY | jamie.wine@lw.com |

* Denotes service via hand delivery and e-mail.

# Exhibit E

SPECIALIZED LEGAL SVCS Fax:4153570595          Dec 27 2005  12:04    P.03



ORIGINAL

04 DEC 10 PM 4:07

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

DEC 17 2004

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   MAYER, BROWN, ROWE & MAW LLP
    Donald M. Falk (SBN 150256)
2   Lee H. Rubin (SBN 141331)
    Shirish Gupta (SBN 205584)
3   Two Palo Alto Square, Suite 300
    Palo Alto, California 94306
4   Telephone:   (650) 331-2000
    Facsimile:   (650) 331-2060
5
    MAYER, BROWN, ROWE & MAW LLP
6   Alan N. Salpeter (admitted *pro hac vice*)
    Javier Rubinstein (admitted *pro hac vice*)
7   190 South LaSalle Street
    Chicago, IL 60603-3441
8   Telephone:   (312) 782-0600
    Facsimile:   (312) 701-7711
9
    Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
10  J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

11  ORACLE CORPORATION
    Dorian Daley (SBN 129049)
12  James C. Maroulis (SBN 208316)
    500 Oracle Parkway
13  Mailstop 5OP7
    Redwood Shores, California 94065
14  Telephone:   (650) 506-5200
    Facsimile:   (650) 506-7114
15
    Attorneys for Defendant ORACLE CORPORATION
16
                    UNITED STATES DISTRICT COURT
17
          NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION
18

19  IN RE ORACLE CORPORATION          Case No. C-01-0988-MJJ
    SECURITIES LITIGATION             (Consolidated)
20
                                      [~~PROPOSED~~] AMENDED PRETRIAL
21                                    ORDER

22  This Document Relates To:

23  ALL ACTIONS.                      Judge Martin J. Jenkins

24

25

26

27

28

                                      [~~PROPOSED~~] AMENDED PRETRIAL ORDER;
                                      CASE NO.: C-01-0988-MJJ

It is hereby **ORDERED** pursuant to F.R.C.P. and the Local Rules of this Court:

**TRIAL DATE:** Monday, <u>September 11, 2006</u> at 8:30 a.m., Courtroom 11, 9th floor.
TRIAL LENGTH is estimated to be **TBD** days. (**x**) jury  ( ) court

**PRETRIAL CONFERENCE DATE:** Tuesday, <u>August 29, 2006</u> at 3:30 p.m.
(Counsel who intend to try the case must attend the pretrial conference. Counsel shall be prepared to discuss all aspects of the case, including settlement. Pretrial to conform to the attached instructions).

DISCOVERY LIMITS:

| | | | | | |
|---|---|---|---|---|---|
| Depositions: | Pltf. | 65 | Def. | 65 |
| Interrogs: | Pltf. | 55 | Def. | 55 |
| Doc. Req.: | Pltf. | 75 | Def. | 75 |

(Per Federal Rules of Civil Procedure and Local Rules, subject to any provisions below)

**DISCOVERY DISPUTES:** All requests for discovery relief must be summarized in letter briefs no longer than two pages for each party. The letter briefs must attest that, prior to filing the request for relief, counsel met and conferred in person or by telephone and must concisely summarize those remaining issues that counsel were unable to resolve. The letter briefs may cite to limited and specific legal authority only for resolution of dispositive issues. The letter briefs may not be accompanied by declarations; however any specific excerpt of disputed discovery material may be attached. The Court will then advise the parties if additional briefing or a telephonic conference will be necessary.

NON-EXPERT DISCOVERY CUTOFF is: **2/24/06**

DESIGNATION OF EXPERTS:          **TBD**

EXPERT DISCOVERY CUTOFF is:      **TBD**

DISPOSITIVE MOTIONS SHALL be heard by **July 31, 2006**

SETTLEMENT CONFERENCE shall be held before Magistrate Judge **Zimmerman** and scheduled to take place **August 2006**

FURTHER STATUS CONFERENCE: July 12, 2005 at 2:00 p.m.

**ADDITIONAL ORDERS:**
<u>Initial disclosures and protective order due by 12/21/04</u>

CLASS CERTIFICATION: Plaintiffs shall file their class certification motion on or before **January 31, 2005**. Defendants shall file their opposition brief by **March 28, 2005**. Any reply brief shall be filed by **April 22, 2005**. A hearing will be held before the Court regarding class certification in May **2005** or at the Court's earliest convenience thereafter.

**PLAINTIFF IS ORDERED TO SERVE A COPY OF THIS ORDER ON ANY PARTY SUBSEQUENTLY JOINED IN THIS ACTION.**

Dated:        December 14, 2004

MARTIN J. JENKINS
United States District Judge

[PROPOSED] AMENDED PRETRIAL ORDER;
CASE NO.: C-01-0988-MJJ

1

2

APPROVED AS TO FORM:

3  DATED: December 10, 2004

4

LERACH COUGLIN STOIA GELLER RUDMAN & ROBBINS LLP

5

SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
JENNIE LEE ANDERSON
MONIQUE C. WINKLER

6

7

8

By:_____

9      Shawn A. Williams
       Lead Counsel for Plaintiffs

10

11

12  DATED: December 10, 2004

MAYER, BROWN ROWE & MAW LLP

13

DONALD M. FALK
LEE H. RUBIN
SHIRISH GUPTA

14

15

By:_____ by SAN

16      Lee H. Rubin
Attorneys for Defendants

17  Oracle Corporation, Lawrence J. Ellison, Jeffrey O.
Henley and Edward J. Sanderson

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] AMENDED PRETRIAL ORDER;
CASE NO.: C-01-0988-MJJ



## PRETRIAL INSTRUCTIONS

Counsel SHALL meet and confer in good faith in advance of complying with the following pretrial requirements for the purpose of preparing for the Pretrial Conference and to discuss settlement.

### A.     20 CALENDAR DAYS PRIOR TO PRETRIAL CONFERENCE

The following shall be accomplished not later than **20 calendar days** prior to the scheduled Pretrial Conference:

1.     **PRETRIAL STATEMENT:** The parties shall comply in all respects with FRCivP 16(c)(1)(2)(3)(4)(7)(13)(14)(15)(16)

2.     **JURY INSTRUCTIONS:**

a.     Joint Set of Agreed Upon Instructions: The parties shall jointly prepare a set of agreed upon jury instructions, and shall file an original and two copies of same **20 calendar days** prior to the Pretrial Conference.

b.     Separate Instructions: Separate instructions may be submitted only as to those instructions upon which the parties cannot agree. Each separate instruction shall note on its face the identity of the party submitting such instruction.

No later than **10 calendar days** prior to the Pretrial Conference, the party or parties objecting to an instruction shall file a written objection to such instruction. The form of the objection shall be as follows:

(1) Set forth in full the instruction to which the objection is made;

(2) Provide concise argument and citations to authority explaining why the opposing party's instruction is improper; and

(3) Set forth in full an alternative instruction, if any.

An original and two copies of the separate instructions with objections shall be filed **10 calendar days** prior to the Pretrial Conference.

c.     Substance and Format of Instructions: The instructions shall cover all substantive issues. Proposed instructions shall be consecutively numbered. Each proposed instruction shall be typed in full on a separate page and cover only one subject, to be indicated in the title. Citations to the authorities upon which the instruction is based shall be included. Instructions shall be brief, clear, written in plain English and free of argument. Pattern or form instructions shall be revised to address the particular facts and issues of this case.

d.     Preliminary Statement and Instructions: If the parties wish to have a preliminary statement read to the jury, and/or preliminary instructions given to the jury, they shall jointly prepare and submit to the Court, **one week** prior to trial, the text of the statement and instructions, clearly marked.

e.     Clean Copies: The parties shall be prepared to submit two clean copies of instructions without citations, titles or attribution on or before the date trial commences.

3.     **FINDINGS OF FACT and CONCLUSIONS OF LAW:** In non-jury cases, each party shall serve and lodge with the Court proposed findings of fact and conclusions of law on all material issues. Proposed findings shall be brief, written in plain English and free of pejorative language and argument.

2

4.   **EXHIBITS:**

   a.   <u>Provide Copies of Exhibits to Other Parties</u>:  Each party shall provide every other party with one set of all proposed exhibits, charts, schedules, summaries, diagrams and other similar documentary materials to be used in its case in chief at trial, together with a complete list **(see attached)** of all such proposed exhibits.  Voluminous exhibits shall be reduced by elimination of irrelevant portions or through the use of summaries. Each item shall be <u>pre-marked with an exhibit sticker</u> **(see attached)**, plaintiff's exhibits with numbers, defendant's exhibits with letters. If there are numerous exhibits, they should be provided in three-ring binders with marked tab separators.  All exhibits which have not been provided as required are subject to exclusion.

   b.   <u>Stipulations re Admissibility</u>:  Prior to the Pretrial Conference, the parties shall make a good faith effort to stipulate exhibits into evidence and be prepared to place their admission on the record at the Pretrial Conference.  If stipulation to admission in evidence is not possible, the parties shall make every effort to stipulate to authenticity and foundation absent a legitimate (not tactical) objection.

   c.   <u>Provide Copies of Exhibits to Court</u>:  One set of exhibits shall be provided to the Court on the <u>one week prior to trial</u>.  Each set shall be in binders, tabbed and indexed.

   d.   <u>Disposition of Exhibits After Trial</u>:  Upon the conclusion of the trial, each party shall retain its exhibits through the appellate process.  It is each party's responsibility to make arrangements with the Clerk of the Court to file the record on appeal.

5.   **WITNESSES:**

   a.   <u>Jury Trials</u>:  The Pretrial Conference Statement shall include a witness list required by FRCivP 16(c)(7). Expert witnesses shall be listed separately.  In addition, in the case of expert witnesses, the summary shall **clearly state the expert's theories and conclusions and the bases therefor and SHALL be accompanied by a curriculum vitae**; if the expert has prepared a report in preparation for the testimony, a copy thereof shall be furnished to opposing counsel.  Witnesses not included on the list may be excluded from testifying.

   b.   <u>Non-Jury Trials</u>:  In non-jury cases, each party shall serve and lodge with the Court a written <u>narrative statement</u> of the proposed direct testimony of each witness under that party's control in lieu of a summary.  Each statement shall be marked as an exhibit and shall be in a form suitable to be received into evidence.

6.   **MOTIONS IN LIMINE:**  Motions in limine are limited to motions to exclude specific items of evidence (i.e. specific testimony or exhibits) on a ground and upon such authority as would be sufficient to sustain an objection to such evidence at trial.  Motions in limine shall be filed and served no later than **ten Court days** prior to the date set for the pretrial conference.  Any party opposing such a motion in limine shall file and serve its opposition papers no later than **five Court days** prior to the pretrial conference.  No reply papers will be considered.

**B.   10 COURT DAYS PRIOR TO PRETRIAL CONFERENCE**

   The following shall be accomplished not later than **10 Court days** prior to the Pretrial Conference:

   1.   <u>List of Exhibits With Stipulations and Objections</u> - The parties shall file with the Court a list of all exhibits admitted by stipulation; and a list of all exhibits as to which objections have been made, with a brief notation indicating which party objects and for what reason.

   2.   <u>Objections to Other Evidence</u> - In addition to exhibit lists, counsel shall confer with respect to any other evidentiary objections in advance of the Pretrial Conference as required by Local Rule.  Each party shall file and serve a statement briefly identifying each item objected to, the grounds for the objection and the position of the offering party as stated at the conference.

3.    Voir Dire and Verdict Forms - Each party shall serve and file proposed questions for jury voir dire and a proposed form of verdict.

## C.    OTHER PRETRIAL MATTERS

1.    Citations - In all Pretrial Statements, memoranda of points and authorities and jury instructions, citations shall be as follows: (1) all United States Supreme Court citations shall be to both the official reporter and to the West Supreme Court Reporter, (2) all citations to California state courts shall be to both the official reporter and to the West California Reporter, and (3) all citations to the courts of any other state shall be to both the official reporter of that state and to the West Regional Reporter.

2.    Settlement Conferences - Any party utilizing another form of Alternative Dispute Resolution who wishes to arrange a settlement conference before a judge or magistrate judge thereafter may do so by contacting the Courtroom Deputy.

3.    Copies - Unless otherwise indicated, each document filed or lodged with the Court must be accompanied by a copy for use in the Judge's chambers. In addition, one copy of the witness and exhibit lists should be furnished to the court reporter.

4.    Daily Transcripts - If transcripts will be requested during or immediately after trial, arrangements must be made with the court reporter at least **one week** before trial commences.

Attachments

4

SPECIALIZED LEGAL SVCS Fax:4153570595          Dec 27 2005  12:06     P.09



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CASE NO. C-                    MJJ                                        DATE:

_____ v. _____

(   ) Plaintiff              EXHIBIT LIST

                                                     (   ) Defendant

| EXHIBIT NUMBER | MARKED | ADMITTED | SPONSORING WITNESS | DESCRIPTION |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| | |
|---|---|
| Case No. | Case No. |
| **PLNTF** Exhibit No. _____ | **DEFT** Exhibit No. _____ |
| Date Entered _____ | Date Entered _____ |
| Signature _____ | Signature _____ |

| | |
|---|---|
| Case No. | Case No. |
| **PLNTF** Exhibit No. _____ | **DEFT** Exhibit No. _____ |
| Date Entered _____ | Date Entered _____ |
| Signature _____ | Signature _____ |

| | |
|---|---|
| Case No. | Case No. |
| **PLNTF** Exhibit No. _____ | **DEFT** Exhibit No. _____ |
| Date Entered _____ | Date Entered _____ |
| Signature _____ | Signature _____ |

| | |
|---|---|
| Case No. | Case No. |
| **PLNTF** Exhibit No. _____ | **DEFT** Exhibit No. _____ |
| Date Entered _____ | Date Entered _____ |
| Signature _____ | Signature _____ |

| | |
|---|---|
| Case No. | Case No. |
| **PLNTF** Exhibit No. _____ | **DEFT** Exhibit No. _____ |
| Date Entered _____ | Date Entered _____ |
| Signature _____ | Signature _____ |

| | |
|---|---|
| Case No. | Case No. |
| **PLNTF** Exhibit No. _____ | **DEFT** Exhibit No. _____ |
| Date Entered _____ | Date Entered _____ |
| Signature _____ | Signature _____ |

| | |
|---|---|
| Case No. | Case No. |
| **PLNTF** Exhibit No. _____ | **DEFT** Exhibit No. _____ |
| Date Entered _____ | Date Entered _____ |
| Signature _____ | Signature _____ |



## DECLARATION OF SERVICE BY MAIL AND FACSIMILE

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.     That on December 10, 2004, declarant served the **[PROPOSED] AMENDED PRETRIAL ORDER** by depositing a true copy thereof in a United States mailbox at San Francisco, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List. Declarant also served the parties by facsimile.

3.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of December, 2004, at San Francisco, California.

KAREN HEINZ

ORACLE III (LEAD)
Service List - 12/10/2004  (201-064-1)
Page 1 of 1

## Counsel For Defendant(s)

Donald M. Falk
Lee H. Rubin
Shirish Gupta
Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
  650/331-2000
  650/331-2060 (Fax)

Alan N. Salpeter
Javier H. Rubinstein
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street, Suite 3900
Chicago, IL 60603-3441
  312/782-0600
  312/701-7711 (Fax)

Dorian Daley
James C. Maroulis
Oracle Corporation
500 Oracle Parkway, Mail Stop 50P7
Redwood City, CA 94065
  650/506-5200
  650/506-7114 (Fax)

## Counsel For Plaintiff(s)

William S. Lerach
Mark Solomon
Douglas R. Britton
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101-4297
  619/231-1058
  619/231-7423 (Fax)

Sanford Svetcov
Shawn A. Williams
Willow E. Radcliffe
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
  415/288-4545
  415/288-4534 (Fax)

SPECIALIZED LEGAL SVCS Fax:4153570595          Dec 27 2005 12:07    P. 13

Case 3:01-cv-00988-MJJ    Document 215-2    Filed 01/24/2005    Page 1 of 31

Web PACER (v2.3)
Docket as of October 4, 2005 9:05 pm                    Page 1

Proceedings include all events.                                    REOPEN CONSOL
3:01cv988 Nursing Home Pension, et al v. Oracle Corporation, et al ROTO   REFER
                                                                    STOP   CM/ECF
                                                                REOPEN CONSOL
                                                                PROTO  REFER
                                                                STOP   CM/ECF

                        U.S. District Court
        U.S. District for the Northern District of California (S.F.)

                    CIVIL DOCKET FOR CASE #: 01-CV-988

Nursing Home Pension, et al v. Oracle Corporation, et al    Filed: 03/09/01
Assigned to: Judge Martin J. Jenkins          Jury demand: Both
          Referred to: Magistrate Judge Joseph C. Spero
Demand: $0,000                                Nature of Suit: 850
Lead Docket: None                             Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 15:78m(a) Securities Exchange Act


NURSING HOME PENSION FUND,        Darren J. Robbins
LOCAL 144                         [COR LD NTC]
     Plaintiff                    Milberg Weiss Bershad Hynes &
                                  Lerach LLP
                                  401 B Street
                                  Suite 1700
                                  San Diego, CA 92101
                                  619-231-1058

                                  Corey D. Holzer
                                  [COR NTC]
                                  Holzer Holzer & Cannon LLC
                                  1117 Perimeter Center West
                                  Suite E-107
                                  Atlanta, GA 30338
                                  770-392-0090

                                  Reed R. Kathrein
                                  [COR LD NTC]
                                  Lerach Coughlin Stoia Geller
                                  Rudman & Robbins LLP
                                  100 Pine Street, Suite 2600
                                  San Francisco, CA 94111
                                  415-288-4545

                                  Brian Murray
                                  [COR NTC]
                                  Murray Frank & Sailer LLP
                                  275 Madison Avenue
                                  Suite 801
                                  New York, NY 10016
                                  212-682-1818

                                  William S. Lerach
                                  [COR LD NTC]

# Exhibit F

United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE ORACLE SECURITIES
LITIGATION

_____

This Document Relates To:

ALL ACTIONS.

_____/

No. C-01-0988 MJJ (JCS)

**ORDER RE PLAINTIFFS' MOTION TO
MODIFY THE AMENDED PRETRIAL ORDER
TO EXTEND THE FEBRUARY 24, 2006
DISCOVERY CUTOFF [Docket No. 386]**

Plaintiffs filed a Motion to Modify the Amended Pretrial Order to Extend the February 24, 2006

Discovery Cutoff (the "Motion") on or about November 28, 2005. The Motion was referred to the

undersigned. Pursuant to the order of this Court, counsel for the parties met and conferred and

subsequently filed a Joint Letter dated December 27, 2005. Good cause appearing, IT IS HEREBY

ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows:

    1.    The current February 24, 2006 discovery cutoff for non-expert discovery is extended to

**June 30, 2006**.

    2.    On or before **April 1, 2006**, Plaintiffs shall disclose to Defendants a list of all Oracle

employees whom Plaintiffs desire to depose.

    3.    On or before **April 8, 2006**, Defendants shall identify those individuals listed by Plaintiffs

pursuant to Paragraph 2 hereof who will have **no available time to sit for a deposition**

**during the period from May 15 to June 30** due to their duties at Oracle in connection

with the closing of Oracle's fiscal year on May 31, 2006, and/or the preparation of year-

end quarterly financial records for the fiscal year and for the quarter that end on that date.

Those employees so identified shall be deposed prior to May 15, 2006.

IT IS SO ORDERED.

Dated:   January 5, 2006

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
For the Northern District of California

2

# Exhibit G

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) ) | Master File No. C-01-0988-MJJ |
| | | CLASS ACTION |
| This Document Relates To: | ) ) ) ) ) ) | [~~PROPOSED~~] ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO MODIFY THE AMENDED PRETRIAL ORDER AND EXTEND THE JUNE 30, 2006 FACT DISCOVERY CUTOFF AND PLAINTIFFS' MOTION TO AMEND THE DECEMBER 14, 2004 AMENDED PRETRIAL ORDER TO INCLUDE ADDITIONAL DEPOSITIONS |
| ALL ACTIONS. | | |

On July 10, 2006, the parties appeared before Special Master, the Honorable Edward A. Infante (Ret.), regarding plaintiffs' Motion to Modify the Amended Pretrial Order and Extend the June 30, 2006 Fact Discovery Cutoff and plaintiffs' Motion to Amend the December 14, 2004 Amended Pretrial Order to Include Additional Depositions.  The Court has considered all of the papers submitted in support of and in opposition to plaintiffs' motions, as well as oral argument from counsel. Having found plaintiffs have diligently pursued their case and good cause therefor, the Court hereby orders as follows:

1.      the fact discovery cutoff shall be extended to October 2, 2006;

2.      the Court's December 14, 2004 Amended Pretrial Order shall be modified to allow plaintiffs to take up to 72 depositions; and

3.      plaintiffs shall have the option of splitting the two-day depositions of individual defendants Lawrence Ellison and Jeffrey Henley. The first day of each deposition shall take place in July 2006, as previously scheduled and confirmed by the parties, and the second day of each deposition may take place at a later date prior to the October 2, 2006 fact discovery cutoff to be determined by the parties.

*     *     *

**O R D E R**

IT IS SO ORDERED.

DATED: _July 19 2006_     _____
THE HONORABLE EDWARD A. INFANTE
(RET.) SPECIAL MASTER

Submitted by:

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
JENNIE LEE ANDERSON
MONIQUE C. WINKLER

_____
     JENNIE LEE ANDERSON

[PROP] ORD GRAN IN PART & DEN IN PART PLFS' MOT TO MOD THE AM PRETRIAL ORD &
EXT THE JUNE 30, 2006 FACT DISC CUTOFF & TO AM THE DEC 14, 2004 - C-01-0988-MJJ          - 1 -

1

100 Pine Street, Suite 2600
2   San Francisco, CA  94111
Telephone:  415/288-4545
3   415/288-4534 (fax)

4   LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
5   MARK SOLOMON
DOUGLAS R. BRITTON
6   VALERIE L. McLAUGHLIN
GAVIN M. BOWIE
7   655 West Broadway, Suite 1900
San Diego, CA  92101
8   Telephone:  619/231-1058
619/231-7423 (fax)
9
Lead Counsel for Plaintiffs
10
T:\CasesSF\Oracle3\ORD00033030.doc
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

_____
/s/
Nicole Villacorta
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jenniea@lerachlaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com cheryl.grant@pillsburylaw.com

- **Reed R. Kathrein**
  reedk@lerachlaw.com
  e_file_sf@lerachlaw.com;e_file_sd@lerachlaw.com

- **Michele F. Kyrouz**
  michele.kyrouz@lw.com

- **Nicole Lavallee**
  nlavallee@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com swalker@be-law.com

- **Brian P Murray**
  bmurray@rabinlaw.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Willow E. Radcliffe**
  willowr@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Darren J. Robbins**

- **Sanna Rachel Singer**
  ssinger@sideman.com mthomas@sideman.com

- **Mark Solomon**
  marks@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Shawn A. Williams**
  shawnw@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com;AelishB@lerachlaw.

- **Jamie Lynne Wine**
  jamie.wine@lw.com karen.kelly@lw.com

- **Monique Winkler**
  MoniqueW@lerachlaw.com
  E_File_SF@lerachlaw.com;MoniqueW@lerachlaw.com;shawnw@lerach

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Dorian Daley**
500 Oracle Parkway
Redwood City, CA 94065

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338