# EXHIBIT 1

```
 1                    Pages 1 - 161
 2            UNITED STATES DISTRICT COURT
 3           NORTHERN DISTRICT OF CALIFORNIA
 4      BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE
 5  IN RE:                    )
                              ) Case No. C01-0988 MJJ
 6  ORACLE SECURITIES LITIGATION  )
                              ) Tuesday
 7  _____) March 1, 2005
                      11:00 a.m.
 8
 9            TRANSCRIPT OF PROCEEDINGS
10
11  APPEARANCES:
12  For Plaintiff:   LERACH, COUGHLIN, STOIA, GELLER
                     Rudman & Robbins LLP
13                   100 Pine Street
                     Suite 2600
14                   San Francisco, California 94111
              BY: MARK SOLOMON, ESQ.
15                SHAWN A. WILLIAMS, ESQ.
                  MONIQUE WINKLER, ESQ.
16                WILLOW RADCLIFFE, ESQ.
17
18         (APPEARANCES CONTINUED ON FOLLOWING PAGE)
19
20
21
22
23
24  Reported By:  Debra L. Pas, CSR 11916, CRR, RMR, RPR
                  Official Reporter - US District Court
25                Computerized Transcription By Eclipse
```

1    MR. RUBIN: Well, it's also all the forecast reports,

2 the --

3    THE COURT: It's 50,000 pages?

4    MR. RUBIN: In other words, it would be a different

5 process than searching.

6    THE COURT: Of course, it's a different process than

7 searching, but it seems to me it's dwarfed by what you are

8 going to undertake to comply with this order anyway. If it

9 adds ten percent, I don't think it's a big deal.

10    MR. RUBIN: Well, it's a big deal -- all I'm saying

11 is it's a big deal in terms of it -- in terms of it being time

12 consuming. I actually also think the documents may be more

13 than what the Court may believe.

14    But certainly in terms of time, if you have to go

15 back and identify each individual document that we produced by

16 paper and try to find that document to be sure we cover the

17 landscape, that's a very time-consuming process.

18    When we search in the future, what we are going to

19 do, as the Court, I'm sure, is aware is are going to come up

20 with some search terms; interoperability integration, forecast,

21 sales, loss --

22    THE COURT: Sure, I know.

23    MR. RUBIN: And that is a process that fortunately in

24 the world of electronics we can get a read. We can get a list

25 and then we pick from that what is responsive.

Hearing before Spero  3/1/2005  10:02:00 AM

1      The prior process would require matching up each
2  paper document that's already been provided and trying to go
3  become into the electronic files and pinpoint it and find it.
4  I think the cost may be more than what the Court is conceiving.
5      MR. WILLIAMS: Very quickly, your Honor --
6      THE COURT: No. Nothing more on that.
7      Here is what you are going to produce. You are going
8  to produce, on a going-forward basis all documents will be
9  produced in native format that you uncover.
10     And the only exception to that is with respect to the
11 documents reviewed by the Special Litigation Committee, those
12 are going to be produced in paper.
13     Okay. Now, with respect to those documents reviewed
14 by the Special Litigation Committee and with respect to the
15 paper that's already been produced, you are going to go back
16 through them and you are going to produce e-mails in an
17 appropriate electronic searchable format that we have been
18 discussing.
19     And you are going to produce the spreadsheets also in
20 electronic format that we have been discussing. Obviously, the
21 parties are going to need to meet-and-confer and agree upon a
22 method for locking those spreadsheets so that they can't be
23 altered, the electronic versions of those.
24     MR. RUBIN: Your Honor, in light of the costs that
25 could attend the retrieval of electronic e-mail searches, we

1   would ask that the Court consider some sharing of costs on

2   that, at least on that portion. Because the electronic

3   retrieval for going forward we are not asking for any, we are

4   not asking for any cost sharing --

5       THE COURT: How many e-mails are there?

6       MR. RUBIN: I think the fair number of the documents

7   are e-mails.

8       THE COURT: What's a fair number?

9       MR. RUBIN: I'm turning to my colleague. 25 to

10  30,000.

11      THE COURT: Pages of e-mails?

12      MR. RUBIN: That was a fair -- that was a substantial

13  bulk of the production between the reports --

14      THE COURT: No, no, no. It's a fair point.

15      MR. SOLOMON: Your Honor, my position would be really

16  to reiterate what you said. I don't think that we should be

17  penalized or punished --

18      THE COURT: All right. I was being devil's advocate.

19  I want you to actually argue the point though.

20      Why isn't it fair policy that there be some -- they

21  are not asking you to share the cost of the searching for any

22  documents going forward, which is going to be the vast bulk of

23  those documents.

24      They are just saying with respect to the ones that

25  they have already produced in paper format, if you want another

1    MR. SOLOMON: The fact that we are having this

2    discussion, I think, reinforces my point that I think we need

3    all of the work papers.

4    THE COURT: No, it doesn't. That is truly the cart

5    before the horse.

6    MR. SALPETER: Your Honor --

7    MR. SOLOMON: Thanks for putting it that way.

8    THE COURT: In any event --

9    MR. SALPETER: Your Honor, can I make one other

10   point?

11   Their allegation isn't that the forecasting process

12   was flawed. It's that Ellison and Henley knew that the

13   12 cent per share forecast wouldn't be met because of these

14   negative things; the economy, 11i, et cetera, right? That's

15   the core of their case.

16   THE COURT: Let me ask you this: What if they can

17   prove the first half and not the second? What if they prove

18   that Ellison knew that the forecast wasn't being met. Okay,

19   just bear with me. I don't expect you to agree with that.

20   And the reason is not because of what they have

21   alleged in the complaint. The reason is because the auditors

22   advised him that his forecasting method was flawed.

23   Can they put on this case?

24   MR. SALPETER: Not on this complaint.

25   THE COURT: You can't put that on this complaint.

1   There is a knowing misrepresentation of a forecast. He makes a

2   forecast knowing it's false and the reason he knows it's false

3   is not the reason that they give. He can't do that?

4         MR. SALPETER: That's not their case.

5         THE COURT: Stop there.

6         MR. SALPETER: It's a hypothetical that is so far

7   afield from really what we are talking about here.

8         I mean, their case and all these derivative cases

9   have all alleged essentially the same thing. Not that the

10  forecasting process was bad or flawed, but that once the

11  forecast was made of 12 cents a share Henley and Ellison knew

12  they weren't going to meet it.

13        THE COURT: Okay.

14        MR. SALPETER: I mean, your hypothetical is

15  interesting, but it's not --

16        THE COURT: It is.

17        MR. SALPETER: It's interesting, and I would like to

18  think about it some more before I answer it, but it is not our

19  case. In fact, it's not even a fifth cousin once removed to

20  this case.

21        THE COURT: So you are giving discovery of the --

22  your forecasting methods and what went into the forecastings

23  that were made public and they are going to look at those.

24        MR. SALPETER: Right. And then they are going to

25  come back if they find some major flaw that they think should

1   be caught by auditors or outsiders, they are going to come back

2   and they will be waving their arms and making an impassioned

3   argument to you about why they should go further.

4       But on the base of this complaint, they really

5   shouldn't be getting into what the auditors have done beyond

6   the narrow scope that has been --

7       THE COURT: I have got to tell you, my predilection

8   with respect to is unlike with the customers, where I'm

9   sensitive to the relationship concerns.

10      My general work in the past has been, you know, what

11  do I care about the work papers? Have them.

12      My concern about the work papers is I don't want it

13  to be a fishing expedition. I don't want this to be an excuse

14  to look for 75 other flaws and amend the complaint for 75 other

15  flaws that they haven't yet discovered in the financial records

16  in the company.

17      So I don't want to get into all of the audit. It's

18  not pled and we are not going to get into it.

19      On the other hand, with respect to the auditing of

20  the forecast model, is that a big deal?

21      MR. SALPETER: I don't think it was done. I don't

22  think it was ever done.

23      THE COURT: Fine.

24      MR. RUBINSTEIN: It's a bit academic.

25      THE COURT: Here is what you do. Here is what you