# EXHIBIT 3



ORACLE

January 8, 2001
Board of Directors

EXHIBIT 131
Rachel A. Ferrier
CSR No. 6948
Date: 9/21/06
Witness: Ellison

CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

CD-I 01178

NDCA-ORCL 044428

Δ π EXHIBIT 58
Deponent_____
Date_____ Rptr._____
WWW.DEPOBOOK.COM

ORACLE˙

**NOTICE OF THE REGULAR MEETING OF**
**THE BOARD OF DIRECTORS**
**ORACLE CORPORATION**

TO:   Lawrence J. Ellison, Chair      Jack F. Kemp
      Jeffrey Berg                   Kay Koplovitz
      Michael J. Boskin             Donald L. Lucas
      Jeffrey O. Henley             Richard A. McGinn

RE:   January 8, 2001 Board Meeting

    This notice confirms that the Board of Directors of Oracle Corporation will hold its regular meeting on Monday, January 8, 2001, at approximately 9:00 a.m. in the Board Room located on the 11th floor of Oracle Headquarters, 500 Oracle Parkway, Redwood City, California.

    The items to be discussed at the meeting include the matters described in the enclosed agenda. This notice is accompanied by the following enclosures:

- Agenda
- Draft minutes for the October 16, 2000 meeting and written consents adopted since October 16, 2000
- Index of actions taken by the Board and its committees in FY 2001
- Proposed resolutions and supporting information

    If you have any questions regarding the Board meeting, please do not hesitate to contact me at (650) 506-5500 or Matthew Ng at (650) 506-5100.

Daniel Cooperman
Senior Vice President, General Counsel & Secretary
December 29, 2000

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01179

NDCA-ORCL 044429

**BOARD MEETING AGENDA**
**ORACLE CORPORATION**

January 8, 2001
9:00 a.m.

Tab

I.    Approve minutes from October 16, 2000 meeting and review written consents         1
      adopted since October 16, 2000. Index of FY01 Board and Committee actions
      enclosed for reference. (COOPERMAN) 5 min.

II.   **Management Presentation.** No exhibits. Overview of the Status of E-Business Suite
      Release 11i. Ronald Wohl, Executive Vice President, Applications Development and
      Mark Barrenechea, Senior Vice President, CRM Products. 60 min.

III.  **Allocation of Executive Responsibilities following Bloom's Departure.** No
      exhibits. (ELLISON) 30 min.

IV.   **Review Second Quarter Financial Results.** Please refer to the Financial Package
      delivered separately. (HENLEY) 20 min.

V.    **Executive Items.** Proposed resolutions at referenced tab. (COOPERMAN) 20 min.
      total.

      A.    Amendment of Financial Approval Levels.                                      2

      B.    Promotion to Executive Management Committee.                                 3

      C.    Security Clearance Exclusions.                                               4

      D.              **REDACTED**                                                       5

VI.   **Report of Finance and Audit Committee.** No exhibits. (LUCAS) 15 min.


Following the Board Meeting:

      **Executive Session.** Meeting of outside directors with CEO. 30 min.


CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01180


NDCA-ORCL 044430

CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01181

NDCA-ORCL 044431

INDEX

**ORACLE CORPORATION**
**Board of Directors Actions**
**June 1, 2000 - May 31, 2001**

| Board Entity | Type | Date | Action(s) Taken |
|---|---|---|---|
| Board of Directors | Regular Meeting | October 16, 2000 | 1. Reduction of Board Size<br>2. Annual Election of Chairman<br>3. Appointment of Corporate Officers<br>4. Election of Members of Board Committee<br>5. Establishment of 2001/2002 Regular Board Meeting Schedule<br>6. Increase Allocation for Investments in Venture Funds |

**REDACTED**

| Board Entity | Type | Date | Action(s) Taken |
|---|---|---|---|
| Board of Directors | Written Consent | September 13, 2000 | Stock Split Effected as Dividend |
| Board of Directors | Special Meeting | August 21, 2000 | Discussion of Stockholder Proposal for 2000 Proxy Statement |
| Board of Directors | Regular Meeting | July 17, 2000 | 1. Record Date of Annual Meeting<br>2. Promotions to Executive Management Committee<br>3. Security Clearance Exclusions<br>4. Amendment of 1991 Long-Term Equity Incentive Plan<br>5. Agreement with<br>6. Adoption of 2000 Long-Term Equity Incentive Plan<br>7. Adoption of Conflicts of Interest Policy<br>8. Report of Nominating Committee<br>9. Approval of Fiscal Year 2001 Advertising Budget<br>10. Report of Finance and Audit Committee |
| Board of Directors | Written Consent | June 2, 2000 | Amendment of 1991 Long-Term Equity Incentive Plan |
| Committee on Compensation and Management Development | Written Consent | December 14, 2000 | 1. Amendment and Restatement of 1993 Deferred Compensation Plan<br>2. Conditions of Foreign Grants Under the 2000 Long-Term Equity Incentive Plan |

CONFIDENTIAL --
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01182

NDCA-ORCL 044432

| | | | |
|---|---|---|---|
| Committee on Compensation and Management Development | Written Consent | October 18, 2000 | Form of Non-Qualified Stock Option Grant Agreement and Stock Option Exercise Notice and Agreement |
| Committee on Compensation and Management Development | Written Consent | September 29, 2000 | Employee Stock Option Grants |
| Committee on Compensation and Management Development | Written Consent | September 7, 2000 | 1. Compensation Committee Report on Executive Compensation 2. Discussion of 2000 Long-Term Equity Incentive Plan |
| Committee on Compensation and Management Development | Written Consent | August 2, 2000 | Interpretation of Oracle 1991 Long-Term Equity Incentive Plan |
| Committee on Compensation and Management Development | Regular Meeting | July 17, 2000 | 1. Review Fiscal Year 2000 Compensation for Outside Directors 2. Review Payments Under Fiscal Year 2000 Bonus Plan 3. Review Executive Officer and Outside Director Compensation 4. Approval of Executive Officers 2001 Base Salaries 5. Approval of Fiscal Year 2001 Executive Bonus Plan 6. Approval of Cumulative Total Return Graph |
| Committee on Compensation and Management Development | Special Meeting | July 12, 2000 | Interpretation of Oracle 1991 Long-Term Equity Incentive Plan |
| Committee on Compensation and Management Development | Special Meeting | June 30, 2000 | Interpretation of Oracle 1991 Long-Term Equity Incentive Plan |
| Committee on Compensation and Management Development | Written Consent | June 23, 2000 | Form of Non-Qualified Stock Option Grant Agreement and Stock Option Exercise Notice and Agreement |
| Committee on Compensation and Management Development | Special Meeting | June 9, 2000 | 1. EMEA Stock Option Grants 2. Discussion of Executive Compensation 3. Discussion of Executive Bonus Plan 4. Discussion of Outside Director Fees |
| Executive Committee | Written Consent | December 8, 2000 | Approval of · Agreement |
| Executive Committee | Special Meeting | December 7, 2000 | |
| Executive Committee | Written Consent | December 4, 2000 | **REDACTED** |

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD-1 01183

NDCA-ORCL 044433

| | | | |
|---|---|---|---|
| Executive Committee | Special Meeting | November 30, 2000 | **REDACTED** |
| Executive Committee | Special Meeting | October 2, 2000 | |
| Executive Committee | Written Consent | June 30, 2000 | 1. Oracle OpenWorld 2000 Budget<br>2. Oracle Approved Education Center Budget |
| Finance and Audit Committee | Written Consent | September 5, 2000 | 1. Adoption of Audited Financial Statements for the Fiscal Year Ended May 31, 2000<br>2. Finance and Audit Committee Report |
| Finance and Audit Committee | Regular Meeting | July 14, 2000 | |
| Independent Committee | Special Meeting | October 2, 2000 | **REDACTED** |
| Independent Committee | Written Consent | September 15, 2000 | |
| Independent Committee | Special Meeting | July 14, 2000 | Discussion of Conflict of Interest Policy for Executive Officers |
| Nominating Committee | Special Meeting | July 14, 2000 | Discussion of the Composition of Oracle Board |
| Stockholder | Annual Meeting | October 16, 2000 | 1. Election of Directors<br>2. Adoption of 2000 Long-Term Equity Incentive Plan |

**REDACTED**

**REDACTED**

CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

3

CD-1 01184

NDCA-ORCL 044434



CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

CD- I 01185

NDCA-ORCL 044435

DRAFT

MINUTES OF THE REGULAR MEETING
OF THE BOARD OF DIRECTORS
ORACLE CORPORATION

October 16, 2000

A Regular Meeting of the Board of Directors (the "Board") of Oracle Corporation, a Delaware corporation (the "Corporation"), was held on Monday, October 16, 2000, beginning at 1:00 p.m. in the Board Room at 500 Oracle Parkway, Redwood Shores, California.

1.   **ATTENDANCE AND QUORUM**

The following directors were present, constituting a majority of the Board and a quorum: Lawrence J. Ellison, Donald L. Lucas, Michael J. Boskin, Jeffrey O. Henley, Jack F. Kemp, Jeffrey Berg and Kay Koplovitz. Richard A. McGinn was not in attendance.

Also present were Safra Catz, Executive Vice President, Gary L. Bloom, Executive Vice President, and Daniel Cooperman, Senior Vice President, General Counsel & Secretary.

Mr. Ellison, Chairman of the Board, called the meeting to order and announced that the meeting was held pursuant to a written notice of meeting which was delivered to all members of the Board. Mr. Cooperman recorded the minutes of the meeting

2.   **REVIEW AND APPROVAL OF MINUTES**

The Board reviewed the minutes from the previous regular meeting of the Board, draft copies of which had been delivered to each director. Upon motion duly made, seconded and unanimously carried, the Board took action as follows.

RESOLVED THAT:

The minutes of the Regular Meeting of the Board held on July 16 and July 17, 2000 hereby are approved for inclusion in the minute books of the Corporation.

3.   **MANAGEMENT PRESENTATION**

Gary Bloom, Executive Vice President, gave a presentation about Oracle's hosting strategy.

4.   **REVIEW FIRST QUARTER FINANCIAL RESULTS**

Mr. Henley reviewed the financial results for the first quarter of the Corporation's 2001 fiscal year which ended August 31, 2000.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01186

NDCA-ORCL 044436

5.   **REDUCTION OF BOARD SIZE**

The Board ratified the reduction of the Board size.  Upon motion duly made, seconded and unanimously carried, the Board took action as follows:

WHEREAS:

The Board of Directors elected by the Corporation's Stockholders, at the Annual Meeting of Shareholders held this morning, consists of eight members.

RESOLVED THAT:

Pursuant to Section 2.1 of the Corporation's bylaws, the number of authorized directors of this Corporation hereby is decreased from nine directors to eight directors, effective as of October 16, 2000.

6.   **ANNUAL ELECTION OF CHAIRMAN**

The Board elected Mr. Lawrence J. Ellison as Chairman of the Board.  Upon motion duly made, seconded and unanimously carried, the Board took action as follows:

RESOLVED THAT:

Mr. Ellison hereby is elected to serve as Chairman of the Board until his successor is duly elected and qualified or his earlier resignation or removal.

7.   **APPOINTMENT OF CORPORATE OFFICERS**

The Board elected the following persons as corporate officers of the Corporation.  Upon motion duly made, seconded and unanimously carried, the Board took action as follows:

RESOLVED THAT:

Each individual listed below hereby is appointed to serve as an officer of the Corporation in the position specified below, until his or her successor is duly appointed and qualified or his or her earlier resignation or removal:

| | |
|---|---|
| Lawrence J. Ellison | Chief Executive Officer |
| Gary L. Bloom | Executive Vice President |
| Safra Catz | Executive Vice President |
| Sergio Giacoletto | Executive Vice President, Oracle Europe, Middle East and Africa |
| Jeffrey O. Henley | Executive Vice President and Chief Financial Officer |

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD- I 01187

NDCA-ORCL 044437

| Jay Nussbaum | Executive Vice President, Oracle Service Industries |
| George Roberts | Executive Vice President, North American Sales |
| Charles A. Rozwat | Executive Vice President, Database Server |
| Edward J. Sanderson | Executive Vice President, Consulting and Latin America Division |
| Frank Varasano | Executive Vice President, Oracle Products Industries |
| Ron Wohl | Executive Vice President, Applications Development |
| Daniel Cooperman | Senior Vice President, General Counsel and Secretary |
| Jennifer Minton | Senior Vice President and Corporate Controller |
| Bruce M. Lange | Vice President and Corporate Treasurer |
| Deborah A. Lange | Vice President, Taxation |
| Matthew Ng | Assistant General Counsel and Assistant Secretary |
| Susan Hafleigh | Assistant Treasurer |

8.   **ELECTION OF MEMBERS OF BOARD COMMITTEES**

The Board elected the members of the following committees of the Board: Executive Committee, Finance and Audit Committee, Committee on Compensation and Management Development, Nominating Committee, Special Litigation Committee and Independent Committee for Review of Interested Transactions. Upon motion duly made, seconded and unanimously carried, the Board took action as follows:

ELECTION OF EXECUTIVE COMMITTEE

RESOLVED THAT:

1.   The Board hereby elects the following directors to serve on the Executive Committee of the Board:

Donald L. Lucas, Chairman
Lawrence J. Ellison
Jeffrey O. Henley

2.   Each of the foregoing members of the Board shall serve on the Executive Committee until his successor is duly elected.

3.   Any and all previous actions taken by the Executive Committee hereby are ratified, confirmed and approved as the acts and deeds of the Board.

ELECTION OF FINANCE AND AUDIT COMMITTEE

RESOLVED THAT:

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

3

CD-1 01188

NDCA-ORCL 044438

1. The Board hereby elects the following directors to serve on the Finance and Audit Committee of the Board:

> Donald L. Lucas, Chairman
> Michael J. Boskin
> Jeffrey Berg

2. Each of the foregoing members of the Board shall serve on the Finance and Audit Committee until his successor is duly elected.

3. Any and all previous actions taken by the Finance and Audit Committee hereby are ratified, confirmed and approved as the acts and deeds of the Board.

## ELECTION OF COMMITTEE ON COMPENSATION AND MANAGEMENT DEVELOPMENT

RESOLVED THAT:

1. The Board hereby elects the following directors to serve on the Committee on Compensation and Management Development of the Board (the "Committee"):

> Michael J. Boskin, Chairman
> Donald L. Lucas

2. Each of the foregoing members of the Board shall serve on the Committee until his successor is duly elected.

3. Any and all previous actions taken by the Committee hereby are ratified, confirmed and approved as the acts and deeds of the Board.

## ELECTION OF NOMINATING COMMITTEE

RESOLVED THAT:

1. The Board hereby elects the following directors to serve on the Nominating Committee of the Board:

> Michael J. Boskin
> Donald L. Lucas
> Kay Koplovitz

2. Each of the foregoing members of the Board shall serve on the Nominating Committee until his or her successor is duly elected.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

4

CD-1 01189

NDCA-ORCL 044439

3. Any and all previous actions taken by the Nominating Committee hereby are ratified, confirmed and approved as the acts and deeds of the Board.

ELECTION OF SPECIAL LITIGATION COMMITTEE

**REDACTED**

ELECTION OF INDEPENDENT COMMITTEE FOR REVIEW OF INTERESTED TRANSACTIONS

RESOLVED THAT:

1. The Board hereby elects the following directors to serve on the Independent Committee for Review of Interested Transactions of the Board (the "Independent Committee"):

Michael J. Boskin
Donald L. Lucas

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

5

CD-1 01190

NDCA-ORCL 044440

except in the case of transactions where either Dr. Boskin or Mr. Lucas will receive a direct or indirect benefit from such transaction, in which case the Board will elect a director to serve in place of each interested Independent Committee member.

2. Each of the foregoing members of the Board shall serve on the Independent Committee until his successor is duly elected.

3. Any and all previous actions taken by the Independent Committee hereby are ratified, confirmed and approved as the acts and deeds of the Board.

9.     <u>ESTABLISHMENT OF 2001/2002 REGULAR BOARD MEETING SCHEDULE</u>

The Board confirmed its 2001 calendar year meeting schedule and established its 2002 calendar year meeting schedule. Upon motion duly made, seconded and unanimously carried, the Board took action as follows:

RESOLVED THAT:

1. The Board sets the dates for the 2001 regular Board meetings as follows:

      Monday, January 8, 2001
      Monday, April 23, 2001
      Monday, July 16, 2001
      Monday, October 15, 2001

2. The Board sets the dates for the 2002 regular Board meetings as follows:

      Monday, January 14, 2002
      Monday, April 15, 2002
      Monday, July 15, 2002
      Monday, October 14, 2002

10.     <u>INCREASE ALLOCATION FOR INVESTMENTS IN VENTURE FUNDS</u>

**REDACTED**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-101191

NDCA-ORCL 044441

**REDACTED**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

7

CD- I 01192

NDCA-ORCL 044442

<u>**LAND PURCHASE**</u>

REDACTED

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

8

CD-1 01193

NDCA-ORCL 044443

**REDACTED**

12.   **REPORT OF FINANCE AND AUDIT COMMITTEE**

Mr. Lucas reported on the Finance and Audit Committee Meeting held on Friday, October 13, 2000.

13.   **ADJOURNMENT**

There being no further business to come before the meeting, it was, upon motion duly made, seconded and unanimously carried, adjourned at 3:20 p.m.

Following adjournment of the Board meeting, the outside members of the Board met with the Chief Executive Officer in executive session.

_____
Daniel Cooperman
Secretary

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

9

CD-1 01194

NDCA-ORCL 044444

MINUTES OF THE ANNUAL MEETING
OF STOCKHOLDERS
OF ORACLE CORPORATION

October 16, 2000

The Annual Meeting of the Stockholders of Oracle Corporation, a Delaware corporation (the "Corporation"), was held on October 16, 2000, at 10:15 a.m. in the Oracle Corporation Conference Center, located at 350 Oracle Parkway, Redwood City, California.

## 1.    ATTENDANCE

The following directors were present: Lawrence J. Ellison, Chairman of the Board and Chief Executive Officer; Jeffrey O. Henley, Executive Vice President and Chief Financial Officer; Donald L. Lucas; Michael J. Boskin; Jack F. Kemp; Jeffrey Berg, and Kay Koplovitz. Neither Richard A. McGinn nor Raymond J. Lane was in attendance.

Also present were Daniel Cooperman, Senior Vice President, General Counsel and Secretary; Gary Matuszak, partner at Arthur Andersen LLP, the Corporation's independent public accountants; certain representatives of Boston Equiserve, the Corporation's transfer agent; and approximately 500 stockholders of the Corporation.

Mr. Ellison, Chairman of the Board, called the meeting to order and announced that the meeting was held pursuant to a written Notice of Meeting which was mailed to all Stockholders on or about September 11, 2000. Mr. Cooperman recorded the minutes of the meeting.

## 2.    PRESENTATION OF LIST OF STOCKHOLDERS

Mr. Cooperman reported that of the 2,821,650,145 shares of the Corporation's common stock outstanding as of August 21, 2000, the record date for the meeting, based on the tabulation of shares immediately prior to the commencement of the meeting, 2,471,102,000 were present in person or by proxy, representing approximately 87.6% of the outstanding common stock of the Corporation

Mr. Ellison then declared a quorum present at the meeting.

CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

CD-1 01195

NDCA-ORCL 044445

3    ELECTION OF DIRECTORS

The Stockholders considered candidates for election to the Board of Directors of the Corporation. Upon motion duly made, seconded and carried by at least 2,452,094,000 shares of the Corporation's common stock voting for each Director, each individual below was elected by the Stockholders to serve as a Director of the Corporation:

| | |
|---|---|
| Lawrence J. Ellison, Chairman | Jack F. Kemp |
| Jeffrey O. Henley | Jeffrey Berg |
| Donald L. Lucas | Richard A. McGinn |
| Michael J. Boskin | Kay Koplovitz |

4.    ADOPTION OF 2000 LONG-TERM EQUITY INCENTIVE PLAN

The Stockholders considered approval of the adoption of the Company's 2000 Long-Term Equity Incentive Plan. Upon motion duly made, seconded and carried by at least 1,664,378,000 shares of the Corporation's common stock, the adoption of the 2000 Long-Term Equity Incentive Plan was approved by the Stockholders.

5.    RATIFICATION OF THE APPOINTMENT OF ARTHUR ANDERSEN LLP
AS INDEPENDENT PUBLIC ACCOUNTANTS

The Stockholders considered approval of the ratification of the appointment of Arthur Andersen LLP as independent public accountants. Upon motion duly made, seconded and carried by at least 2,461,481,000 shares of the Corporation's common stock, the ratification of the appointment of Arthur Andersen LLP as independent public accountants was approved by the stockholders.

6.    STOCKHOLDER PROPOSAL

## REDACTED

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01196

NDCA-ORCL 044446

7.    ADJOURNMENT

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned at 10:40 a.m.

*Daniel Cooperman*
Daniel Cooperman
Secretary

Attached to these minutes are the final Stockholder vote totals as provided by Equiserve.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

3

CD-1 01197

NDCA-ORCL 044447


EQUISERVE

October 27, 2000

Susan Haflegh
Director of Treasury Operations
Oracle Corporation
500 Oracle Parkway
Redwood Shores, CA 94065

*Certificate of Tabulation*

Dear Susan

In connection with the Annual Meeting of Oracle Corporation held on October 16, 2000, we tabulated proxies representing 2,483,060,300 votes, or 88 032% of the outstanding vote as follows.

**PROPOSAL I**   (Election of Directors)

| For All Nominees | Instructed | Withheld From All Nominees |
|---|---|---|
| 2,464,014,359 | 3,152,484 | 17,893,457 |

| | Total Vote For Each Director | Total Vote Withheld From Each Director |
|---|---|---|
| Lawrence J. Ellison | 2,464,812,097 | 18,348,203 |
| Donald L. Lucas | 2,464,559,460 | 18,500,840 |
| Michael J. Boskin | 2,464,810,562 | 18,135,738 |
| Jeffrey O Henley | 2,465,166,843 | 17,893,457 |
| Jack F. Kemp | 2,464,014,359 | 19,045,941 |
| Jeffrey Berg | 2,464,671,863 | 18,388,407 |
| Richard McGinn | 2,464,587,098 | 18,473,202 |
| Kay Koplovitz | 2,464,684,162 | 18,396,138 |

**PROPOSAL II**   (Approval the Adoption of the Company's 2000 Long Term Equity Incentive Plan)

| For | Against | Abstain | Broker Non-Vote |
|---|---|---|---|
| 1,665,940,658 | 808,002,018 | 9,117,624 | -0- |

**Proposal III**   (Proposal to ratify the appointment of Arthur Andersen LLP as Independent Public Accounts of the Company for the fiscal year ending May 31, 2001)

| For | Against | Abstain | Broker Non-Vote |
|---|---|---|---|
| 2,473,390,110 | 3,251,346 | 6,418,844 | -0- |

As the stockholders of Oracle Corporation have approved Proposal II, we require the following documentation·

i)   Certified copy of the Board of Resolution adopting the above proposal.

ii)   Opinion from counsel attesting to the validity of shares increased with reference to the specific number of shares per plan authorized for issuance Further, the opinion should state that upon issuance, the shares of the Company are fully paid and non-assessable and whether the reserved shares should bear restrictive legend(s) or if the shares have been registered [i e S 8 filing,] and therefore, bear no restrictive legend(s)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CD- I 01198

NDCA-ORCL 044448



Thank you in advance for your assistance in this matter and please feel free to call me at (781) 575-2394 if you have any questions

Sincerely,

Norris Richardson
"Ricky"
*Senior Account Manager*

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01199

NDCA-ORCL 044449

### WRITTEN CONSENT OF THE
### COMPENSATION COMMITTEE
### OF THE BOARD OF DIRECTORS
### ORACLE CORPORATION

October 18, 2000

Pursuant to Section 141(f) of the Delaware General Corporation Law, the following resolutions hereby are adopted by the unanimous written consent, without a meeting, of the Committee on Compensation and Management Development (the "Committee") of the Board of Directors (the "Board") of Oracle Corporation, a Delaware corporation (the "Corporation"):

### FORM OF NON-QUALIFIED STOCK OPTION GRANT AGREEMENT AND STOCK OPTION EXERCISE NOTICE AND AGREEMENT

WHEREAS:

A. On July 17, 2000 and September 7, 2000, the Board adopted the Corporation's 2000 Long-Term Equity Incentive Plan (the "Plan").

B. On October 16, 2000, the stockholders of the Corporation approved the adoption of the Plan.

C. Pursuant to the terms of the Plan, the Committee is authorized to approve the forms of agreement, or other forms for communicating to participants that they have been granted an award under the Plan, for use under the Plan.

D. The Committee has determined that it is in the best interests of the Corporation and its stockholders to adopt forms of the Non-Qualified Stock Option Grant Agreement in the form attached hereto as Exhibit A (the "NQ Grant Agreement") and the Stock Option Exercise Notice and Agreement in the form attached hereto as Exhibit B (the "Exercise Agreement").

RESOLVED THAT.

1. The form, terms and provisions of the NQ Grant Agreement and Exercise Agreement (collectively, the "Agreements") are approved for use in connection with the grant and the exercise of non-qualified stock options, respectively, pursuant to the Plan in substantially the forms presented to the Committee,

2. Each of the officers of the Corporation, with full authority to act without the others, is authorized and empowered to make any revisions in the Agreements which such officer deems necessary or advisable as long as such revisions do not significantly alter the substance of the Agreements; and

CONFIDENTIAL --
SUBJECT TO PROTECTIVE
ORDER

CD-1 01200

NDCA-ORCL 044450

FROM : TADDEO          PHONE NO. : +415851960l          Oct. 18 2000 11:02AM P1
                                                                          Q001

3.  Any and all prior actions taken by the officers of the Corporation that are within the scope of these resolutions hereby are ratified, confirmed and approved as the actions of the Corporation.

The undersigned, being all the members of the Committee, do hereby approve and consent to the adoption of the foregoing resolutions as of October 18, 2000. This consent may be executed in any number of counterparts, each of which so executed shall be deemed an original and together such counterparts shall constitute one instrument.

_____          _____
Michael J. Boskin                  Donald L. Lucas

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-I 01201

NDCA-ORCL 044451

3.   Any and all prior actions taken by the officers of the Corporation that are within the scope of these resolutions hereby are ratified, confirmed and approved as the actions of the Corporation.

The undersigned, being all the members of the Committee, do hereby approve and consent to the adoption of the foregoing resolutions as of October 18, 2000.  This consent may be executed in any number of counterparts, each of which so executed shall be deemed an original and together such counterparts shall constitute one instrument.

_____
Michael J. Boskin

_____
Donald L. Lucas

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01202

NDCA-ORCL 044452

EXHIBIT A

### NOTICE OF STOCK OPTION GRANT
### 2000 LONG-TERM EQUITY INCENTIVE PLAN
#### NON-QUALIFIED STOCK OPTION

1. **Grant.** Oracle Corporation (the "Company") has granted to the optionee ("Optionee") named on the preceding Certificate of Stock Option Grant (the "Certificate") a non-qualified option (the "Option") to purchase the total number of shares of Common Stock set forth on such Certificate (the "Shares") at the exercise price per share set forth therein (the "Exercise Price"). This Option is subject to the terms set forth below and in the Company's 2000 Long-Term Equity Incentive Plan as amended to date (the "Plan"). In the event of a conflict between the terms of the Plan and the terms of this Notice of Stock Option Grant (the "Grant Notice"), the terms of the Plan shall govern. All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

2. **Restrictions on Exercise.** Subject to the terms of the Plan and this Grant Notice, the Option may be exercised in increments on or after each vesting date specified on the Certificate, provided that in no event may the Option be exercised after the last date to exercise specified on the Certificate (the "Expiration Date"). In addition, this Option may not be exercised as to fewer than 100 shares unless it is exercised as to all Shares as to which this Option is then exercisable.

3. **Termination of Option.**

   a) This Option shall cease vesting upon termination of Optionee's employment relationship with Optionee's employer. An Optionee's employment relationship shall be considered to have terminated, and the Optionee to have ceased to be employed by the Company or its Parent, Subsidiary or Affiliate, on the earliest of:

      (1) the date on which the Company, or any Parent, Subsidiary or Affiliate of the Company, as appropriate, delivers to the Optionee notice in a form prescribed by the Company that the Company, or such other entity, is thereby terminating the employment relationship (regardless of whether the notice or termination is lawful or unlawful or is in breach of any contract of employment);

      (2) the date on which the Optionee delivers notice in a form prescribed by the Company, to the Company, or any Parent, Subsidiary or Affiliate of the Company, as appropriate, that the Optionee is terminating the employment relationship (regardless of whether the notice or termination is lawful or unlawful or is in breach of any contract of employment);

      (3) the date on which the Optionee ceases to provide services to the Company, or any Parent, Subsidiary or Affiliate of the Company, as appropriate, except where the Optionee is on an authorized leave of absence; or

      (4) the date on which the Optionee ceases to be considered an "employee" under applicable law.

   The committee of the Board of Directors of the Company administering the Plan (the "Committee") shall have discretion to determine whether Optionee has ceased to be employed by the Company or any Parent, Subsidiary or Affiliate of the Company and the effective date on which such employment terminated.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01203

NDCA-ORCL 044453

b) If Optionee ceases to be employed by the Company or any Parent, Subsidiary or Affiliate of the Company, as appropriate, for any reason except death or disability, this Option may be exercised to the extent (and only to the extent) that it would have been exercisable upon the date of termination of Optionee's employment, within three (3) months after the date of termination, but in any event no later than the Expiration Date of the Option. If employment ceases because of death or disability, this Option may be exercised to the extent (and only to the extent) specified in the Plan.

c) **FOR UK RESIDENTS ONLY.** Optionee acknowledges and agrees that Optionee shall be liable for all contributions required under the Social Security Contributions and Benefits Act 1992, including both primary and secondary contributions on any gains made by the Optionee, and that liability for the secondary contributions shall be transferred to the Optionee to the fullest extent permitted by law. Prior to the earlier of the one year anniversary of the date of the grant of this Option or the first vesting date, the Optionee shall make an election, in the form specified and/or approved for such election by the Inland Revenue, that the liability for the secondary contributions on any gains shall be transferred to the Optionee (the "Election") and that the Optionee shall prior to any exercise of this Option either authorize the Company, Oracle Corporation UK Limited or any subsidiary owned directly or indirectly by the Company (the "Company Group") to withhold such secondary contributions or make payment for such secondary contributions by cash or check to the member of the Company Group who will remit any such contributions to the Inland Revenue. If the Optionee does not make an Election prior to the earlier of the one year anniversary of the date of the grant of this Option or the first vesting date, or shall at any time revoke such Election, this Option shall become null and void without any liability to the Company Group and may not be exercised. Unless expressly revoked, the Election shall apply to all future stock option grants by the Company Group to Optionee.

4. <u>Manner of Exercise; Consideration.</u>  The Option may be exercised by delivery to the Company of the stock option exercise agreements in the form then approved by the Committee, stating the number of Shares being purchased, the restrictions imposed on the Shares, if any, and such representations and agreements, as may be required by the Company to comply with applicable laws, together with payment in a form allowed under the Plan. The current forms of Stock Option Exercise Form and Stock Option Exercise Notice and Agreement (the "Exercise Agreement") are available at the Company's web site at:

http://hrweb.us.oracle.com/benefits/option.htm

The Committee may permit the execution of "same day sale" transactions electronically.

5. <u>Compliance with Laws and Regulations.</u>  The issuance and transfer of Shares shall be subject to compliance by the Company and Optionee with all applicable requirements of federal, state or local securities laws and with all applicable requirements of any stock exchange or national market system on which the Company's common stock may be listed at the time of such issuance or transfer.

6. <u>Transferability of Option.</u>  This Option may not be transferred in any manner other than (i) by will, or (ii) by the laws of descent and distribution.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-1 01204

NDCA-ORCL 044454

7.  <u>Tax Consequence</u>. The tax consequences of receipt and exercise and transfer of the Option, as well as upon disposition of the Shares following exercise, are set forth in the Plan Prospectus made available at the Company's web site at

http://crweb.us.oracle.com/guest/plsql/file_content.download/nowarning/109774.pdf

8.  <u>Tax Withholding</u>. Prior to the issuance of the Shares upon exercise of the Option, Optionee must pay or make adequate provision for any federal, state or local withholding obligations of the Company. Optionee agrees that, if necessary to cover any tax withholding obligations of Optionee upon exercise of the Option, the Company may withhold the appropriate amount at or after the time of such exercise. The Company (a) makes no representations nor undertakings regarding treatment of any tax-related items in connection with any aspect of the Option grant, including the grant, vesting or exercise of the Option and the subsequent sale of shares acquired pursuant to such exercise; and (b) does not commit to structure the terms of the grant or any aspect of the Option to reduce or eliminate the Optionee's liability regarding tax-related items.

9.  <u>Standard Acknowledgement & Waiver</u>. By entering into this Agreement and accepting the grant of an Option evidenced hereby, Optionee acknowledges that: (i) the Plan is discretionary in nature and may be amended, suspended or terminated by the Company at any time in accordance with its terms; (ii) the grant of the Option is a one-time benefit which does not create any contractual or other right to receive future grants of options, or benefits in lieu of options; (iii) all determinations with respect to any such future grants, including, but not limited to, the times when options shall be granted, the number of shares subject to each option, the option price, and the time or times when each option shall be exercisable, will be at the sole discretion of the Company; (iv) the Optionee's participation in the Plan shall not create a right to further employment with the Optionee's employer and shall not interfere with the ability of the Optionee's employer to terminate the Optionee's employment relationship at any time with or without cause; (v) the Optionee's participation in the Plan is voluntary; (vi) the value of the Option is an extraordinary item of compensation which is outside the scope of the Optionee's employment contract, if any; (vii) the Option is not part of normal or expected compensation for purposes of calculating any severance, resignation, redundancy, end of service payments, bonuses, overtime, long-service awards, pension or retirement benefits (including the 401(k) Savings and Investment Plan and the Deferred Compensation Plan) or similar payments; (viii) the vesting of any Option ceases upon termination of employment for any reason except as may otherwise be explicitly provided in the Plan document; (ix) the future value of the underlying shares is unknown and cannot be predicted with certainty; (x) the Option has been granted to the Optionee in the Optionee's status as an employee of Optionee's employer, and if the Company is not the Optionee's employer, can in no event be understood or interpreted to mean that the Company is the Optionee's employer; and (xi) if the underlying shares do not increase in value prior to the expiration of the Option, the option will have no value.

10. <u>Data Privacy Consent</u>. As a condition of the grant of the Option, the Optionee consents to the collection, use and transfer of personal data as described in this paragraph. The Optionee understands that the Company and any Parent, Subsidiary or Affiliate hold certain personal information about the Optionee, including, but not limited to, the Optionee's name, home address and telephone number, date of birth, social security number of identification number,

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-I 01205

NDCA-ORCL 044455

salary, nationality, job title, any shares of stock or directorships held in the Company, details of all options or any other entitlement to shares of stock awarded, canceled, exercised, vested, unvested or outstanding in the Optionee's favor, for the purpose of managing and administering the Plan ("Data"). The Optionee further understands that recipients of Data including the Company and/or any Parent, Subsidiary or Affiliate will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of the Optionee's participation in the Plan, and that the Company and/or any Parent, Subsidiary or Affiliate may each further transfer Data to recipients including third parties assisting the Company in the implementation, administration and management of the Plan. The Optionee understands that these recipients may be located in the United States or the European Economic Area.  The Optionee authorizes the recipients to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing the Optionee's participation in the Plan, including any requisite transfer to a broker or other third party with whom the Optionee may elect to deposit any shares of stock acquired upon exercise of the option such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of Stock on Optionee's behalf. The Optionee understands that the Optionee may, at any time, view Data, require any necessary amendments to Data or withdraw the consents herein in writing by contacting Optionee's local Human Resources representative. Withdrawal of consent may, however, affect Optionee's ability to exercise or realize benefits from the Option.

11. Entire Agreement; Interpretation.  The Plan made available at the Company's web site at http://crweb.us.oracle.com/guest/plsq7/file_content.download/nowarning/109774.pdf is incorporated herein by reference. This Grant Notice and the Plan constitute the entire agreement of the parties and supersede all prior undertakings and agreements with respect to the subject matter hereof. This Grant Notice and the Plan may be amended from time to time by the Committee. Optionee agrees that the terms of the Plan govern the Option and that all interpretations and determinations made by the Company (or its Board of Directors and any committee of the Board administering the Plan) with respect to the Plan and this Grant Notice shall be final and binding on all persons. This Grant Notice is governed by California law except for that body of law pertaining to conflict of laws.  Optionee agrees to institute any legal action or legal proceeding relating to the Grant Notice or the Plan in state court in San Mateo County, California or in federal court in San Francisco, California.  Optionee agrees to submit to the jurisdiction of and agrees that venue is proper in the aforesaid courts in any such action or proceeding.

12. By clicking "I have Read and Agree" on the button below, Optionee accepts the Option and agrees to be bound by its terms.

Date First Posted: _____ __, 2000

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01206

NDCA-ORCL 044456

EXHIBIT B

## ORACLE CORPORATION
### STOCK OPTION EXERCISE NOTICE AND AGREEMENT

1. <u>Representation of the Optionee</u>. I acknowledge that I have received, read and understood the 2000 Long-Term Equity Incentive Plan (the "Plan"), the Notice of Stock Option Grant (the "Grant Notice") and the prospectus relating to the Plan and agree to abide by and be bound by their terms and conditions.

2. <u>Compliance with Securities Laws</u>. I understand and acknowledge that the exercise of any rights to purchase shares of Common Stock of Oracle Corporation ("Shares") is expressly conditioned upon compliance with the Securities Act of 1933, as amended, and all applicable state securities laws. I agree to cooperate with Oracle Corporation (the "Company") to ensure compliance with such laws.

3. <u>Tax Consequences</u>. I understand that I may suffer adverse tax consequences as a result of my purchase or disposition of the Shares. I represent that I have consulted with any tax consultant(s) that I deem advisable in connection with the purchase or disposition of the Shares and that I am not relying on the Company for any tax advice. I have made provision for the payment of any federal and state withholding taxes required to be paid or withheld by the Company.

4. <u>Insider Trading</u>. I acknowledge that I have received, read and understood the Company's policy against trading in Company stock while in the possession of inside information (i.e., material nonpublic information), as set forth in the Company's Employee Handbook. I agree to sell or otherwise dispose of the Shares strictly in compliance with this Company policy and all related securities laws.

5. <u>Entire Agreement</u>. I acknowledge the following: The Plan and the Grant Notice are incorporated herein by reference; this Agreement, the Plan and the Grant Notice constitute my entire agreement with the Company and supersede all prior undertakings and agreements between us with respect to the subject matter hereof; and this Agreement is governed by California law except for that body of law pertaining to conflict of laws. Optionee agrees to institute any legal action or legal proceeding relating to the Grant Notice, the Plan or this Agreement in state court in San Mateo County, California or in federal court in San Francisco, California. Optionee agrees to submit to the jurisdiction of and agrees that venue is proper in the aforesaid courts in any such action or proceeding.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01207

NDCA-ORCL 044457

MINUTES OF THE SPECIAL MEETING
OF THE EXECUTIVE COMMITTEE
OF THE BOARD OF DIRECTORS
ORACLE CORPORATION

November 30, 2000

A Special Meeting of the Executive Committee (the "Committee") of the Board of Directors (the "Board") of Oracle Corporation, a Delaware corporation (the "Corporation"), was held by telephone conference on November 30, 2000 at 11:45 a.m. Pacific Daylight Time.

1.    ATTENDANCE AND QUORUM

  The following directors were present, constituting a majority of the Committee and a quorum:  Lawrence J. Ellison and Jeffrey O. Henley.  Donald L. Lucas was not in attendance.

  Also present was Safra Catz, Executive Vice President, and Daniel Cooperman, Senior Vice President, General Counsel and Secretary.

  Mr. Cooperman called the meeting to order and announced that the meeting was held pursuant to a telephonic notice of meeting delivered to all members of the Committee. Mr. Cooperman confirmed that each participant was able to hear clearly all other participants. Mr. Cooperman recorded the minutes of the meeting.

2.    APPROVAL OF PURCHASE OF HARDWARE AND SERVICES FROM THE

**REDACTED**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01208

**REDACTED**

3.   <u>ADJOURNMENT</u>

There being no further business to come before the meeting, it was, upon motion duly made, seconded and unanimously carried, adjourned at approximately 12:00 p.m.

Daniel Cooperman
Secretary

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD- I 01209

NDCA-ORCL 044459

WRITTEN CONSENT OF THE
EXECUTIVE COMMITTEE OF
THE BOARD OF DIRECTORS
ORACLE CORPORATION

December 4, 2000

Pursuant to Section 141(f) of the Delaware Corporation Law, the following resolutions
are hereby adopted by the unanimous written consent, without a meeting, of the
Executive Committee (the "Committee") of the Board of Directors (the "Board") of
Oracle Corporation, a Delaware corporation (the "Corporation").

1.  VALUATION OF INVESTMENT IN :

        WHEREAS:

**REDACTED**

The undersigned, being all the members of the Committee, do hereby approve and
consent to the adoption of the above resolutions as of December 4, 2000  This consent

CONFIDENTIAL--
SUBJECT TO PROTECTIVE
ORDER

CD-101210

NDCA-ORCL 044460

may be executed in any number of counterparts, each of which shall be deemed an original, and together the counterparts shall constitute one instrument.

_____          _____
Donald L. Lucas                      Jeffrey O. Henley

_____
Lawrence J. Ellison

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01211

NDCA-ORCL 044461

may be executed in any number of counterparts, each of which shall be deemed an original, and together the counterparts shall constitute one instrument.

_____          _____
Donald L. Lucas                                              Jeffrey O. Henley


Lawrence J. Ellison

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01212

NDCA-ORCL 044462

may be executed in any number of counterparts, each of which shall be deemed an original, and together the counterparts shall constitute one instrument.

_____
Donald L. Lucas

_____
Jeffrey O. Henley

_____
Lawrence J. Ellison

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01213

NDCA-ORCL 044463

MINUTES OF THE SPECIAL MEETING
OF THE EXECUTIVE COMMITTEE
OF THE BOARD OF DIRECTORS
ORACLE CORPORATION

December 7, 2000

A Special Meeting of the Executive Committee (the "Committee") of the Board of Directors (the "Board") of Oracle Corporation, a Delaware corporation (the "Corporation"), was held by telephone conference on December 7, 2000 at 4:35 p.m. Pacific Daylight Time.

1.      ATTENDANCE AND QUORUM

The following directors were present, constituting a majority of the Committee and a quorum:  Lawrence J. Ellison and Donald L. Lucas.  Jeffrey O. Henley was not in attendance.

Also present was Safra Catz, Executive Vice President, Matthew Ng Assistant General Counsel and Assistant Secretary and George Gucker, Senior Corporate Counsel.

Ms. Catz called the meeting to order and announced that the meeting was held pursuant to a telephonic notice of meeting delivered to all members of the Committee.  Ms. Catz confirmed that each participant was able to hear clearly all other participants.  Mr. Ng recorded the minutes of the meeting.

2.      APPROVAL OF CAPITAL CONTRIBUTION TO   _____

WHEREAS:

**REDACTED**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01214

NDCA-ORCL 044464

REDACTED

RESOLVED THAT·

REDACTED

. 3.    ADJOURNMENT

There being no further business to come before the meeting, it was, upon motion duly made, seconded and unanimously carried, adjourned at approximately 4:40 p.m.

Matthew Ng
Assistant Secretary

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD-1 01215

NDCA-ORCL 044465

WRITTEN CONSENT OF THE
EXECUTIVE COMMITTEE OF
THE BOARD OF DIRECTORS
ORACLE CORPORATION

December 8, 2000

Pursuant to Section 141(f) of the Delaware Corporation Law, the following resolutions are hereby adopted by the unanimous written consent, without a meeting, of the Executive Committee (the "Committee") of the Board of Directors (the "Board") of Oracle Corporation, a Delaware corporation (the "Corporation").

1. APPROVAL OF: **REDACTED** AGREEMENT

WHEREAS:

**REDACTED**

RESOLVED THAT:

**REDACTED**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-1 01216

The undersigned, being all the members of the Committee, do hereby approve and consent to the adoption of the above resolutions as of December 8, 2000. This consent may be executed in any number of counterparts, each of which shall be deemed an original, and together the counterparts shall constitute one instrument.

_____
Donald L. Lucas

_____
Jeffrey O. Henley

_____
Lawrence J. Ellison

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01218

NDCA-ORCL 044468

The undersigned, being all the members of the Committee, do hereby approve and consent to the adoption of the above resolutions as of December 8, 2000.   This consent may be executed in any number of counterparts, each of which shall be deemed an original, and together the counterparts shall constitute one instrument.

_____
Donald L. Lucas

_____
Jeffrey O. Henley

_____
Lawrence J. Ellison

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01219

NDCA-ORCL 044469

The undersigned, being all the members of the Committee, do hereby approve and consent to the adoption of the above resolutions as of December 8, 2000. This consent may be executed in any number of counterparts, each of which shall be deemed an original, and together the counterparts shall constitute one instrument.

_____          _____
Donald L. Lucas                    Jeffrey O. Henley


_____
Lawrence J. Ellison

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01217

WRITTEN CONSENT OF THE
COMMITTEE ON COMPENSATION
AND MANAGEMENT DEVELOPMENT
OF THE BOARD OF DIRECTORS
ORACLE CORPORATION

December 14, 2000

Pursuant to Section 141(f) of the Delaware General Corporation Law, the following resolutions hereby are adopted by the unanimous written consent, without a meeting, of the Committee on Compensation and Management Development (the "Committee") of the Board of Directors (the "Board") of Oracle Corporation, a Delaware corporation (the "Corporation"):

1.  AMENDMENT AND RESTATEMENT OF 1993 DEFERRED COMPENSATION PLAN

    WHEREAS:

    A.  The Corporation previously adopted the Oracle Corporation 1993 Deferred Compensation Plan (the "1993 Plan") by resolutions dated April 25, 1994 and amended and restated the 1993 Plan by resolutions dated November 21, 1997.

    B.  The Committee has determined that it is in the best interests of the Corporation to make certain changes to the 1993 Plan.

    C.  The Committee has reviewed the Oracle Corporation 1993 Deferred Compensation Plan in the form attached hereto as Exhibit A (the "Amended Plan") and has determined that it is in the best interests of the Corporation to approve and adopt the Amended Plan

    RESOLVED THAT:

    1.  The Amended Plan is approved, adopted and ratified.

    2.  Each of the Chief Executive Officer, the Chief Financial Officer, any Executive Vice President, the Treasurer, the Assistant Treasurer, the Secretary and the Assistant Secretary (the "Authorized Officers") is authorized and directed to execute such instruments and to take such other action as he shall deem appropriate to carry out the intent and purposes of these resolutions, except that such actions that were taken prior to the adoption of such resolutions are ratified, confirmed, approved and adopted as actions of the Corporation.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-I 01220

NDCA-ORCL 044470

MICHAEL BOSKIN
CORPORATE LEGAL                                          PAGE  01/01

2.    CONDITIONS OF FOREIGN GRANTS UNDER THE 2000 LONG-TERM EQUITY
      INCENTIVE PLAN

      WHEREAS:

      A.  The Board of Directors and the stockholders of the Corporation have approved the
          2000 Long-Term Equity Incentive Plan.

      B.  The Committee has determined that certain conditions are required or beneficial in
          connection with option grants made to employees in certain countries under the 2000
          Long-Term Equity Incentive Plan, as specifically described in Exhibit B hereto.

      RESOLVED THAT:

      1.  Options granted in the countries set forth in Exhibit B attached hereto shall be subject
          to the conditions described in Exhibit B.

      2.  Each of the Chief Executive Officer, the Chief Financial Officer, any Executive Vice
          President, the Treasurer, the Assistant Treasurer, the Secretary and the Assistant
          Secretary (the "Authorized Officers") is authorized and directed to execute such
          instruments and to take such other actions as he or she shall deem appropriate to carry
          out the intent and purposes of these resolutions, except that such actions that were
          taken prior to the adoption of such resolutions are ratified, confirmed, approved and
          adopted as actions of the Corporation.

The undersigned, being all the members of the Committee, do hereby approve and consent to the
adoption of the foregoing resolutions as of December 14, 2000.


_____                    _____
Michael Boskin                                   Donald Lucas


CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD-1 01221

2. <u>CONDITIONS OF FOREIGN GRANTS UNDER THE 2000 LONG-TERM EQUITY INCENTIVE PLAN</u>

WHEREAS:

A. The Board of Directors and the stockholders of the Corporation have approved the 2000 Long-Term Equity Incentive Plan.

B. The Committee has determined that certain conditions are required or beneficial in connection with option grants made to employees in certain countries under the 2000 Long-Term Equity Incentive Plan, as specifically described in Exhibit B hereto.

RESOLVED THAT:

1. Options granted in the countries set forth in Exhibit B attached hereto shall be subject to the conditions described in Exhibit B.

2. Each of the Chief Executive Officer, the Chief Financial Officer, any Executive Vice President, the Treasurer, the Assistant Treasurer, the Secretary and the Assistant Secretary (the "Authorized Officers") is authorized and directed to execute such instruments and to take such other actions as he or she shall deem appropriate to carry out the intent and purposes of these resolutions, except that such actions that were taken prior to the adoption of such resolutions are ratified, confirmed, approved and adopted as actions of the Corporation.

The undersigned, being all the members of the Committee, do hereby approve and consent to the adoption of the foregoing resolutions as of December 14, 2000.

_____
Michael Boskin

Donald Lucas

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD-1 01222

CONFIDENTIAL --
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01223

NDCA-ORCL 044473

<u>EXHIBIT A</u>

**ORACLE CORPORATION**
**1993 DEFERRED COMPENSATION PLAN**

(Amended and Restated as of November 15, 2000)

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01224

NDCA-ORCL 044474

## TABLE OF CONTENTS

| Plan Provisions | | Page |
|---|---|---|
| Section 1 – | Definitions | 1 |
| Section 2 - | Eligibility | 2 |
| Section 3 - | Deferred Compensation | 3 |
| Section 4 - | Designation of Beneficiary | 6 |
| Section 5 - | Change in Control | 6 |
| Section 6 - | Trust Provisions | 6 |
| Section 7 - | Amendment and Termination | 7 |
| Section 8 - | Administration | 7 |
| Section 9 - | General and Miscellaneous | 7 |
| Appendices | | |
| Appendix 1 | Distribution Election | 10 |
| Appendix 2 | Beneficiary Designation | 11 |

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01225

NDCA-ORCL 044475

## ORACLE CORPORATION
## 1993 DEFERRED COMPENSATION PLAN

### (Amended and Restated as of November 15, 2000)

Oracle Corporation, a Delaware Corporation (referred to hereafter as "Employer") hereby establishes an unfunded plan for the purpose of providing deferred compensation for a select group of management and highly compensated employees.

### RECITALS

WHEREAS, those employees identified by the Compensation Committee of the Board of Directors of Employer or any other committee designated by the Board of Directors of Employer to administer this Plan in accordance with Section 8 hereof (hereinafter referred to as the "Committee") as eligible to participate in this Plan (each of whom are referred to hereafter as the "Employee" or collectively as the "Employees") are employed by Employer;

WHEREAS, Employer desires to adopt an unfunded deferred compensation plan and the Employees desire Employer to pay certain deferred compensation and/or related benefits to or for the benefit of Employees, or a designated Beneficiary, or both; and

NOW THEREFORE, Employer hereby establishes this deferred compensation plan.

### SECTION 1
### DEFINITIONS

1.1   "Account" shall mean the separate account(s) established under this Plan and the Trust for each participating Employee.  Statements of a Participant's account balance will be made available electronically.

1.2   "Base Salary" shall mean an Employee's regular compensation without reduction for compensation deferred pursuant to all qualified and non-qualified plans of Employer, but excluding all of the following: bonuses, commissions, overtime, incentive payments, non-monetary awards, and other special compensation.

1.3   "Beneficiary" shall mean the Beneficiary designated by the Employee to receive Employee's deferred compensation benefits in the event of his or her death.

1.4   "Change in Control" shall have the meaning set forth in Section 5.1 hereof

1.5   "Code" shall mean the Internal Revenue Code of 1986, as it may be amended from time to time, and the rules and regulations promulgated thereunder.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-1 01226

NDCA-ORCL 044476

1 6    "Committee" shall mean the Compensation Committee of the Board of Directors of Employer or any other committee designated by the Board of Directors of Employer to administer this Plan in accordance with Section 8 hereof.

1.7    "Employee" shall mean each Employee of Employer designated by Employer to be entitled to deferred compensation pursuant to this Plan; references to Employee herein shall include references to an Employee's Beneficiary where the context so requires.

1 8    "Employer" shall mean Oracle Corporation, a Delaware Corporation, and any successor organization thereto.

1.9    "Hardship" shall have the meaning set forth in Section 3.5 hereof.

1.10   "Plan" shall mean the Oracle Corporation 1993 Deferred Compensation Plan, as amended.

1.11   "Permanent Disability" shall mean that the Employee is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or otherwise meets the definition of "Permanent Disability" as set forth in Employer's Long Term Disability Plan. An Employee will not be considered to have a Permanent Disability unless he or she furnishes proof of such condition sufficient to satisfy Employer, in its sole discretion.

1.12   "Trust" or "Trust Agreement" shall mean the Oracle Corporation 1993 Deferred Compensation Plan Trust Agreement, including any amendments thereto, entered into between Employer and the Trustee to carry out the provisions of the Plan.

1.13   "Trust Fund" shall mean the cash and other properties held and administered by Trustee pursuant to the Trust to carry out the provisions of the Plan.

1.14   "Trustee" shall mean the designated Trustee acting at any time under the Trust.

1 15   "Variable compensation" shall mean bonuses and commissions.

## SECTION 2
## ELIGIBILITY

2.1    Eligibility. Excepting the first year of the Plan, eligibility to participate in the Plan in a calendar year shall be limited to Employees of Employer who are selected by the Committee (or its designee), in its sole discretion, which Employees generally shall either be Employees (i) whose annualized base salary in United States Dollars determined as of September 30 of the prior calendar year equals or exceeds $150,000, or (ii) who participated in the Plan in the prior calendar year. The Committee also may

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD- I 01227

NDCA-ORCL 044477

select for eligibility an Employee whose base salary reaches $150,000 in a given year. For purposes of this Section 2.1, "base salary" means an Employee's regular compensation without reduction for compensation deferred pursuant to all qualified and non-qualified plans of Employer, but excluding all of the following: bonuses, commissions, overtime, incentive payments, non-monetary awards, and other special compensation.

## SECTION 3
## DEFERRED COMPENSATION

3.1    Deferred Compensation. Participation in the Plan shall commence once the employee has made a deferral election. Deferral of compensation under the Plan shall not commence until the Employee has complied with the election procedures set forth in Section 3.3. Each participating Employee may elect, in accordance with Section 3.3 of this Plan, to defer annually the receipt of a percentage of the base salary and variable compensation otherwise payable to him or her by Employer during each calendar year or portion of a calendar year that the Employee shall be employed by Employer. Any base salary or variable compensation deferred pursuant to this Section shall be recorded by Employer in an Account, maintained in the name of the Employee, which Account shall be credited with a dollar amount equal to the total amount of base salary and/or variable compensation deferred during each calendar year under the Plan together with deemed earnings thereon credited in accordance with Section 3.7. The percentage of base salary and variable compensation that Employee elects to defer under this Section 3.1 will remain constant until suspended or modified by the filing of another election with Employer by the Employee in accordance with Section 3.3 of the Plan.

3.2    Payment Of Account Balances. (a) The Employee shall elect whether he or she will receive distribution(s) from his or her Account (i) upon reaching age 59½, or (ii) upon termination of employment of Employee with Employer. The Employee also shall elect whether distribution(s) of the amounts credited to Employee's Account, including earnings (if any) credited thereto pursuant to Section 3.7, will be in a lump sum, or in installments over a period of five (5) years or ten (10) years. Such elections shall be made at the time that the Employee first elects to defer compensation under the Plan. The Employee's distribution elections shall be on forms (whether paper or electronic) furnished by the Committee. If no distribution election is made, the amounts credited to a participant's account will be distributed in a lump sum on the first distribution date, as set forth in section 3.2(d), after termination of employment. A participant may make a total of no more than three changes to his or her distribution election. Any change in distribution election will apply to all amounts in the Employee's Account, whether related to deferrals of compensation for years before or after January 1, 1997. A change in distribution election shall be made on forms (whether paper or electronic) furnished by the Committee and will be effective only if the change in distribution election has been in effect for at least one year before the occurrence of the

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

3

CD- I 01228

NDCA-ORCL 044478

EXHIBIT A

event specified both in the original election and in the change of election as triggering distribution.

(b) Upon the death of Employee after the date of termination of employment with Employer but before complete distribution to him or her of the entire balance of his or her Account, Employer may, in the sole discretion of the Committee, pay the balance of his or her Account(s) to Employee's designated Beneficiary in the form of one lump sum payment (notwithstanding any election to receive distributions under clause (i) of Section 3.2(a) or in installments).

(c) Notwithstanding any other provision of this Plan, upon termination of Employee's employment with Employer by reason of death, the Employer shall distribute in a lump sum to Employee or Employee's designated Beneficiary all amounts credited to the Employee's Account. Notwithstanding any other provision of this Plan, upon termination of Employee's employment with Employer, other than by reason of death, Employer may, in the sole discretion of the Committee, distribute to Employee or Employee's designated Beneficiary all amounts credited to the Employee's Account.

(d) A distribution shall be made or commence on the seventeenth (17th) day of the month (or the first business day after the seventeenth) following the calendar quarter in which the event triggering a distribution under any of the foregoing subsections of this Section 3.2 occurs. Subsequent distributions, if any, shall be made on each quarter-annual anniversary date of the date of the first distribution. Each such distribution, if any, shall include interest or other earnings credited to the balance of an Employee's Account remaining unpaid

3.3     Election To Defer Compensation.  The Employee's election to defer compensation as provided in Section 3.1 of this Plan shall be made on forms (whether paper or electronic) furnished by the Committee. The deferral election must be made at least twenty (20) days prior to January 1 of the calendar year in which the compensation to be deferred is otherwise payable to Employee; provided, however, that the Committee shall have the discretion to designate a different election period in any year so long as such election period expires prior to January 1 of the calendar year in which the compensation to be deferred is otherwise payable to Employee. In the case of a newly eligible Employee, the election must be made within thirty (30) days of the date it is determined that the Employee is eligible. In the case of a newly eligible Employee, the election will be effective for the calendar quarter after the election is made. Such deferral election (and any subsequent election) will continue until suspended or modified on a form (whether paper or electronic) furnished by the Committee, which new election shall only apply to compensation otherwise payable to Employee after the end of the calendar year in which such election is delivered to Employer. Any deferral election made by Employee shall be irrevocable with respect to any compensation covered by such election, including the compensation payable in the calendar year in which the election suspending or modifying the prior deferral election is delivered to Employer. Absent a suspension or modification election, such original election shall remain in effect from

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

4

CD-1 01229

NDCA-ORCL 044479

year to year until the date for distribution of the Employee's Account under Section 3.2. Employer shall withhold the percentage of base salary specified to be deferred for each payroll period and shall withhold the percentage of variable compensation specified to be deferred at the time or times such variable compensation is or otherwise would be paid to the Employee.

3.4    Payment Upon Change in Control.  Notwithstanding any other provisions of this Plan, the aggregate balance credited to and held in the Employee's Account shall be distributed to the Employee in a lump sum within thirty (30) days of a Change in Control, as defined in Section 5.1.

3.5    Hardship.  In case of an unforeseeable emergency, a participant may request the Committee, on a form to be provided by the Committee or its delegate, that payment be made earlier than the date to which it was deferred or that there be a cessation of deferrals under the Plan.

For purposes of this section 3.5, an "unforeseeable emergency" shall be limited to a severe financial hardship to the participant resulting from a sudden and unexpected illness or accident of the participant or of a dependent (as defined in section 152(a) of the Code) of the participant, loss of the participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant. The circumstances that will constitute an unforeseeable emergency will depend upon the facts of each case, but, in any case, payment may not be made and a cessation of deferral may not occur to the extent that such hardship is or may be relieved: (i) through reimbursement or compensation by available insurance or otherwise or (ii) by liquidation of the participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship. Moreover, payment of a deferred amount may not be made ahead of the date to which the amount was deferred to the extent that such hardship is or may be relieved by cessation of deferrals under the Plan.

The Committee shall consider any requests for payment under this Section 3.5 on a uniform and nondiscriminatory basis and in accordance with the standards of interpretation described in section 457 of the Code and the regulations thereunder. In the event there is a payment or a cessation of deferrals under this Section 3.5, the participant shall be ineligible to make further Deferral Elections for one year from the date of the Committee action approving the payment or cessation of deferral.

3.6    Employee's Rights Unsecured.  The right of the Employee or his or her designated Beneficiary to receive a distribution hereunder shall be an unsecured claim against the general assets of Employer, and neither the Employee nor his or her designated Beneficiary shall have any rights in or against any amount credited to his or her Account or any other specific assets of Employer.  The plan constitutes a mere promise by the Employer to make benefit payments in the future.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

5

CD-1 01230

NDCA-ORCL 044480

3.7    Investment of Contribution.  All amounts credited to an Account shall be credited throughout the year with the deemed earnings thereon, which may be positive or negative (hereinafter and previously sometimes referred to as "interest or other earnings") pursuant to the Employee's election as to investment return, until the Account has been fully distributed to the Employee or to the Beneficiary designated by the Employee in a writing delivered to Employer.

## SECTION 4
## DESIGNATION OF BENEFICIARY

4.1    Designation of Beneficiary.  Employee may designate a Beneficiary to receive any amount due hereunder by Employee via written notice thereof to Employer at any time prior to his or her death and may revoke or change the Beneficiary designated therein by written notice delivered to Employer at any time and from time to time prior to Employee's death, provided that any such designation or change of designation naming a Beneficiary other than the Employee's spouse shall be effective only if spousal consent is provided.  If Employee shall have failed to designate a Beneficiary, or if no such Beneficiary shall survive him or her, then such amount shall be paid to the Employee's estate.  Designation of Beneficiary shall be in the form attached hereto as Appendix 2.

## SECTION 5
## CHANGE IN CONTROL

5.1    Change in Control.  For purposes of this Plan, a Change in Control shall mean (a) the purchase or other acquisition by any person, entity, or group of persons, within the meaning of section 13(d) or 14(d) of the Securities Exchange Act of 1934 ("Act"), or any comparable successor provisions, of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Act) of fifty percent (50%) or more of either the outstanding shares of common stock or the combined voting power of Employer's then outstanding voting securities entitled to vote generally, or (b) the approval by the stockholders of Employer of a reorganization, merger, or consolidation, in each case, with respect to which persons who were stockholders of Employer immediately prior to such reorganization, merger or consolidation do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power entitled to vote generally in the election of directors of the reorganized, merged or consolidated Employer's then outstanding securities, or a liquidation or dissolution of Employer or of the sale of all or substantially all of Employer's assets.

## SECTION 6
## TRUST PROVISIONS

6.1    Trust Agreement.  Employer may establish the Trust for the purpose of retaining assets set aside by Employer pursuant to the Trust Agreement for payment of all

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

6

CD-1 01231

NDCA-ORCL 044481

or a portion of the amounts payable pursuant to the Plan. Any benefits not paid from the Trust shall be paid from Employer's general funds, and any benefits paid from the Trust shall be credited against and reduce by a corresponding amount Employer's liability to Employees under the Plan. All Trust Funds shall be subject to the claims of general creditors of Employer in the event Employer is Insolvent as defined in Section 3 of the Trust Agreement. The obligations of Employer to pay benefits under the Plan constitute an unfunded, unsecured promise to pay and Employees shall have no greater rights than general creditors of Employer. It is Employer's intention that the arrangements be unfunded for tax purposes and for purposes of Title I of ERISA.

## SECTION 7
## AMENDMENT AND TERMINATION

7.1    Amendment.  The Committee shall have the right to amend this Plan at any time and from time to time, including a retroactive amendment.  Any such amendment shall become effective upon the date stated therein, and shall be binding on all Employees, except as otherwise provided in such amendment; provided, however, that said amendment shall not affect benefits adversely to the affected Employee without the Employee's written approval.  Benefits accruing to an Employee pursuant to any employment agreement in effect between Employer and Employee which entitles the Employee to participate in and to certain rights under this Plan shall not be affected by an amendment of this Plan.

## SECTION 8
## ADMINISTRATION

8.1    Administration.    The Committee shall have complete authority to administer the Plan, interpret the terms of the Plan, determine eligibility of Employees to participate in the Plan, reduce the amount to be deferred under the Plan as to any Employee, and make all other determinations and take all other actions in accordance with the terms of the Plan and the Trust Agreement. Any determination or decision by the Committee shall be conclusive and binding on all persons who at any time have or claim to have any interest whatever under this Plan.

8.2    Liability of Committee, Indemnification. To the extent permitted by law, the Committee shall not be liable to any person for any action taken or omitted in connection with the interpretation and administration of this Plan unless attributable to his or her own bad faith or willful misconduct.

8.3    Expenses.  The costs of the establishment of the Plan and the adoption of the Plan by Employer, including but not limited to legal and accounting fees, shall be borne by Employer.  The expenses of administering the Plan shall be borne by the Trust; provided, however, that Employer shall bear, and shall not be reimbursed by, the Trust for any tax liability of Employer associated with the investment of assets by the Trust.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

7

NDCA-ORCL 044482

EXHIBIT A

## SECTION 9
## GENERAL AND MISCELLANEOUS

9.1     Rights Against Employer.  Except as expressly provided by the Plan, the establishment of this Plan shall not be construed as giving to any Employee or to any person whomsoever, any legal, equitable or other rights against Employer, or against its officers, directors, agents or shareholders, or as giving to any Employee or Beneficiary any equity or other interest in the assets, business or shares of Employer stock or giving any Employee the right to be retained in the employment of Employer.  All Employees shall be subject to discharge (with or without cause) to the same extent they would have been if this Plan had never been adopted.  The rights of an Employee hereunder shall be solely those of an unsecured general creditor of Employer.  Nothing in the Plan should be construed to require any contributions to the Plan on behalf of an Employee by Employer.

9.2     Assignment or Transfer.  No right, title or interest of any kind in the Plan shall be transferable or assignable by any Employee or Beneficiary or be subject to alienation, anticipation, sale, pledge, encumbrance, garnishment, attachment, execution or levy of any kind, whether voluntary or involuntary, nor subject to the debts, contracts, liabilities, engagements, or torts of the Employee or Beneficiary.  Any attempt to alienate, anticipate, encumber, sell, transfer, assign, pledge, garnish, attach or otherwise subject to legal or equitable process or encumber or dispose of any interest in the Plan shall be void.

9.3     Severability.  If any provision of this Plan shall be declared illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining provisions of this Plan but shall be fully severable, and this Plan shall be construed and enforced as if said illegal or invalid provision had never been inserted herein.

9.4     Construction.  The article and section headings and numbers are included only for convenience of reference and are not to be taken as limiting or extending the meaning of any of the terms and provisions of this Plan.  Whenever appropriate, words used in the singular shall include the plural or the plural may be read as the singular.  When used herein, the masculine gender includes the feminine gender.

9.5     Governing Law.  The validity and effect of this Plan and the rights and obligations of all persons affected hereby shall be construed and determined in accordance with the laws of the State of California unless superseded by federal law, which shall govern correspondingly.

9.6     Payment Due to Incompetence.  If the Committee receives evidence that an Employee or Beneficiary entitled to receive any payment under the Plan is physically or mentally incompetent to receive such payment, the Committee may, in its sole and absolute discretion, direct the payment to any other person or Trust which has been legally appointed by the courts.

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

8

CD-1 01233

NDCA-ORCL 044483

9.7    Taxes.  All amounts payable hereunder shall be reduced by any and all federal, state, local, and employment taxes imposed upon Employee or his or her Beneficiary which are required to be paid or withheld by Employer.  Amounts deferred will be taken into account for purposes of any tax of withholding obligation under the Federal Insurance Contribution Act and Federal Unemployment Tax Act, not in the year distributed, but at the later of the year the services are performed or the year in which the rights to the amounts are no longer subject to a substantial risk of forfeiture, as required by sections 3121(v) and 3306(r) of the Code and the regulations thereunder.  Amounts required to be withheld pursuant to sections 3121(v) and 3306(r) of the Code shall be withheld out of other current wages paid by Employer.  The determination of Employer regarding applicable income and employment tax withholding requirements shall be final and binding on Employee.

9.8    Insurance.  In the event that any Employee elects, in his or her sole discretion, to independently purchase an insurance policy covering the inability of the Plan or the Trust to make any payments to which Employee is entitled under the Plan or the Trust, Employer shall use its best efforts to facilitate the payment by Employee of any excise taxes which become due as the result of the payment of premiums under such policy.  Nothing contained herein shall be construed as an endorsement by Employer of the purchase of such a policy or a recommendation by Employer that the purchase of such a policy is necessary or desirable as the result of Employee's participation in the Plan.

CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

9

CD-101234

NDCA-ORCL 044484

EXHIBIT A

APPENDIX 1

DISTRIBUTION ELECTION

Pursuant to Section 3.3 of the Oracle Corporation 1993 Deferred Compensation Plan (the "Plan"), I hereby elect to have all amounts credited to my Account, together with any interest or other earnings credited thereon, distributed to me on the terms elected below:

I.      Check one of the following:
        _____ Initial Distribution Election _____ Change in Distribution Election

II.     I elect to have distributions of all amounts credited to Accounts covered by this Plan paid to me beginning as follows (check one):

        _____ upon reaching age 59 1/2.

        _____ upon termination of employment.

III.    I elect to have distribution of all amounts credited to Accounts covered by this Plan paid to me in the following form (check one):

        _____ a lump sum.

        _____ an annuity of twenty (20) quarter-annual installments determined as of each installment date by dividing the entire amount in my Account (including interest and other earnings) by the number of installments then remaining to be paid.

        _____ an annuity of forty (40) quarter-annual installments determined as of each installment date by dividing the entire amount in my Account (including interest and other earnings) by the number of installments then remaining to be paid.

NOTE: A participant's ability to change his or her distribution election is limited. An Employee's distribution election can be changed a total of only three times. Any change in distribution election will apply to all amounts credited to the Employee's Account and will be effective only if in place for at least one year before the occurrence of the event specified in the change of distribution election as triggering the beginning of the distribution.

NOTE: Under the State Taxation of Pension Act of 1995, California is precluded from taxing amounts deferred under the Oracle Corporation Executive Deferred Compensation Plan (the "Plan") if you (i) elect an annuity of forty (40) quarter-annual installments and (ii) reside in a state other than California when you receive your distributions. Consequently, if you expect to be residing in a state with no individual income tax (such as Washington, Nevada, Florida, New Hampshire), or a low rate of individual income tax, when you receive your distributions, there may be significant state tax saving to you if you elect to receive the distributions in 40 quarter-annual installments.

Signed: _____        Date: _____

Name. _____        Employee Number: _____

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

10

CD- I 01235

NDCA-ORCL 044485

EXHIBIT A

## APPENDIX 2

### BENEFICIARY DESIGNATION

In the event I should die prior to the receipt of all money accrued to my credit under this election, I elect to have the balance paid to the following named individual(s) in the following percentage(s):

| Percent | Name | Soc. Sec. # | (P)rimary or (S)econdary |
|---------|------|-------------|--------------------------|
|         |      |             |                          |
|         |      |             |                          |
|         |      |             |                          |

Signed: _____ Date: _____

Name: _____

To be completed only if I am married and any above named beneficiary is not my spouse:

I, as the spouse of _____, do hereby consent to designation of any beneficiary that might in any way impair my rights under applicable state law, including but not limited to, laws relating to Community Property, Wills, Trusts, and Intestacy.

Signed: _____ Date: _____

Name: _____

Notary: _____ Date: _____

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

11

CD-I 01236

NDCA-ORCL 044486

<u>EXHIBIT B</u>

In France, the following language should be added to Paragraph 2, "Restrictions on Exercise," of the form of option agreement to be executed between Oracle Corporation and each optionee:

> "One half of the total number of options will be exercisable at 2 years after the grant date; the other half of the total number of options will become exercisable by an additional quarter over each of the next two years. Employees will not be able to sell their shares until five years from the date of grant. In the event of the death of an employee who has been granted French qualified options, the vesting of the option will accelerate and the employee's heirs will have six months to exercise the options, after which time the options will be forfeited."

In each of China, India, Indonesia, Korea, Netherlands, Romania, Russia, South Africa, Switzerland, and Ukraine, the following language should be added to Paragraph 4, "Manner of Exercise; Consideration," of the form of option agreement to be executed between Oracle Corporation and each optionee:

> "Due to exchange control regulations restricting the remittance of cash for the purchase of foreign securities or the holding of such securities, or securities law restrictions restricting the offering of foreign securities or the holding of such securities, optionees in [*name of country*] will be limited to the "full cashless" method of exercise only. The "full cashless" exercise method uses a broker who, upon exercise, will simultaneously sell all of the shares of Oracle stock that the optionee was entitled to upon exercise, use the proceeds to pay the option exercise price (plus any applicable fees or taxes) and remit the balance to the optionee in cash."

In Vietnam, the following language should be added to Paragraph 4, "Manner of Exercise; Consideration," of the form of option agreement to be executed between Oracle Corporation and each optionee:

> "Due to exchange control regulations restricting the remittance of cash for the purchase of foreign securities or the holding of such securities, or securities law restrictions restricting the offering of foreign securities or the holding of such securities, optionees in Vietnam will be limited to the "full cashless" method of exercise only. The "full cashless" exercise method uses a broker who, upon exercise, will simultaneously sell all of the shares of Oracle stock that the optionee was entitled to upon exercise, use the proceeds to pay the option exercise price (plus any applicable fees or taxes) and remit the balance to the optionee in cash. Vietnamese nationals will be required to remit the proceeds to Vietnam."

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

**CD-1 01237**

NDCA-ORCL 044487

In each of Brazil, Croatia, Thailand, and Turkey, the following language should be added to Paragraph 4, "Manner of Exercise; Consideration," of the form of option agreement to be executed between Oracle Corporation and each optionee:

"Due to exchange control regulations restricting the remittance of cash for the purchase of foreign securities or the holding of such securities, or securities law restrictions restricting the offering of foreign securities or the holding of such securities, optionees in [*name of country*] will be limited to the following exercise methods only:

(a) the "full cashless" exercise method using a broker who, upon exercise, will simultaneously sell all of the shares of Oracle stock that the optionee was entitled to upon exercise, use the proceeds to pay the option exercise price (plus any applicable fees or taxes) and remit the balance to the optionee in cash; and

(b) the "partial cashless" exercise method using a broker who, upon exercise, will sell only enough shares of Oracle stock to cover the option exercise price (plus any applicable fees or taxes) and hold the remaining shares of Oracle stock in an account on the optionee's behalf."

In each of Denmark, Hong Kong, Hungary and Slovenia, the following language should be added to Paragraph 1 "Grant" of the form of option agreement to be executed between Oracle Corporation and each optionee:

"Due to certain legal issues with respect to the offering of securities in [*name of country*], only treasury shares shall be issued upon the exercise of options granted under the Plan to optionees in [*name of country*]."

In Egypt, the following language should be added to Paragraph 1 "Grant" of the form of option agreement to be executed between Oracle Corporation and each optionee:

"Due to certain legal issues with respect to the offering of securities in Egypt, only newly issued shares shall be issued upon the exercise of options granted under the Plan to optionees in Egypt."

In Ireland, the following language should be added to Paragraph 1 "Grant" of the form of option agreement to be executed between Oracle Corporation and each optionee:

"Due to certain legal issues with respect to the offering of securities in Ireland, only newly issued shares shall be issued upon the exercise of options granted under the Plan to optionees who are also directors/shadow directors of an Irish subsidiary in Ireland."

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01238

NDCA-ORCL 044488



CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01239

NDCA-ORCL 044489

### M E M O R A N D U M

TO:   Oracle Corporation Board of Directors

FR:   Daniel Cooperman
      Senior Vice President, General Counsel and Secretary

RE:   Increase Financial Approval Level for Chief Executive Officer

DT:   December 29, 2000

---

**REDACTED**

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01240

NDCA-ORCL 044490

PROPOSED RESOLUTIONS
ORACLE CORPORATION

January 8, 2001

**REDACTED**

**ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01241

NDCA-ORCL 044491

**REDACTED**

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD-1 01242

NDCA-ORCL 044492

REDACTED          ATTORNEY CLIENT PRIVILEGED
                  NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER                                3

CD-101243

NDCA-ORCL 044493

Exhibit A

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

**REDACTED**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01244

NDCA-ORCL 044494

*3*

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01245

NDCA-ORCL 044495

# M E M O R A N D U M

TO:   Oracle Corporation Board of Directors

FR:   Daniel Cooperman
      Senior Vice President, General Counsel and Secretary

RE:   Promotion to Executive Management Committee

DT:   December 29, 2000

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01246

NDCA-ORCL 044496

PROPOSED RESOLUTIONS
ORACLE CORPORATION

January 8, 2001

**ATTORNEY CLIENT PRIVILEGED**
**NOT SUBJECT TO DISCOVERY**

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01247

NDCA-ORCL 044497



CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01248

NDCA-ORCL 044498

## MEMORANDUM

TO:    Oracle Corporation Board of Directors

FR:    Daniel Cooperman
       Senior Vice President, General Counsel and Secretary

RE:    Security Clearance Exclusions

DT:    December 29, 2000

---

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-1 01249

NDCA-ORCL 044499

PROPOSED RESOLUTIONS
ORACLE CORPORATION

January 8, 2001

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-1 01250

NDCA-ORCL 044500

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

2

CD-1 01251

NDCA-ORCL 044501



CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

CD- 1 01252

NDCA-ORCL 044502

MEMORANDUM

TO:   Oracle Corporation Board of Directors

FR:   Daniel Cooperman
      Senior Vice President, General Counsel and Secretary

RE:   Merger of    REDACTED    with and into Oracle

DT:   December 29, 2000

CC:   Matthew Ng

_____

**REDACTED**

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD-101253

NDCA-ORCL 044503

PROPOSED RESOLUTIONS
ORACLE CORPORATION

January 8, 2001

**REDACTED**

ATTORNEY CLIENT PRIVILEGED
NOT SUBJECT TO DISCOVERY

CONFIDENTIAL –
SUBJECT TO PROTECTIVE
ORDER

CD- I 01254

NDCA-ORCL 044504

**ATTORNEY CLIENT PRIVILEGED**
**NOT SUBJECT TO DISCOVERY**

REDACTED

CONFIDENTIAL -
SUBJECT TO PROTECTIVE
ORDER

CD- I 01255

NDCA-ORCL 044505