# Exhibit 4



SAN DIEGO • SAN FRANCISCO
LOS ANGELES • NEW YORK • BOCA RATON
WASHINGTON, DC • HOUSTON
PHILADELPHIA • SEATTLE

Shawn A. Williams
ShawnW@Lerachlaw.com

February 23, 2007

**VIA FACSIMILE AND EMAIL**

Patrick E. Gibbs, Esq.
LATHAM & WATKINS
135 Commonwealth Drive
Menlo Park, CA 94025

Re:   *In re Oracle Corporation Sec. Litig.*
      Master File No. C-01-0988-MJJ (N.D. Cal.)

Dear Patrick:

The content of your February 22, 2007 letter regarding Mr. Symonds is equally, if not more shocking, than your letter of January 11, 2007, which described an incredible story surrounding the intentional destruction of the audio files ordered produced by the Court. It is indeed remarkable, in that it arrived only hours after service of notice of deposition subpoena on Mr. Symonds and the upcoming deposition of PC World in London, United Kingdom. In addition, while superficially frank, the letter is an obvious attempt to distance defendants and yourselves from the events you describe. The story of Mr. Symonds' junking of his computer at an unidentified facility for the "ecological disposal of computers" is manifestly vague and insufficient, similar to your January 11, 2007 claim that Mr. Symonds delivered the computer to an unidentified "repair shop."

Your February 22, 2007 letter states that Mr. Symonds did not identify the facility. Did you ask for the identity? If you did, why have you not provided his response? If you did not, why are you so passive given your duty to comply with the January 2, 2007 Order? When was the computer taken to this "facility"? Have you had anyone go to the "facility" and attempt to retrieve the computer? If not, why not? Please inform us immediately. Recall that it was January 16, 2007, five days from defendants' January 11, 2007 letter to Mark Solomon detailing the fatal diagnosis of the so-called "repair shop" before the "repair shop" was identified to plaintiffs as PC World, 6 West Cross Way, Brentford, Middlesex, TW8 9DE, London, United Kingdom, telephone 0870 2420444. We are now lead to believe that was a lie. Indeed, on January 11, 2007, plaintiffs specifically asked you, by letter, to identify steps you were taking to obtain the *Softwar* materials ordered produced and the steps taken to locate the computer. The same letter asked you to provide details of the "repair shop." On January 16, 2007, you wrote that if plaintiffs had simply asked for information (which we already asked for by letter the week prior), you would have provided the information. There are several additional questions that we would like answered now. And, since Latham & Watkins does not represent Mr. Symonds, and you have already disclosed what you have characterized as the substance of your conversations with him, we see no reason why you cannot answer certain questions immediately or why you did not before.



Patrick E. Gibbs, Esq.
February 23, 2007
Page 2

     During your communication with Mr. Symonds on Thursday, February 22, 2007, did you or anyone ask Mr. Symonds why he would have spun the tall tale now in the Court record which included: (1) a trip to a repair shop; (2) a conversation with a store employee who purported to tell Mr. Symonds that the cost of repairing the computer would be greater than replacing it; (3) an apparent instruction by Mr. Symonds to the repair shop personnel to dispose of the computer; and (4) an additional phone call to the repair shop which confirmed disposal of the computer? If you asked this question, why have you not provided his response? If you did not ask this question, why not? Were you not suspicious considering prior false representations now in the Court record? The detail of this story makes it even more remarkable since you say that Mr. Symonds maintains the ultimate conclusion is true, *i.e.*, the computer was not working so he intentionally destroyed it.

     Did defendants or their counsel initiate the February 22, 2007 communication to Mr. Symonds or did he reach out to you? What time was the communication (Pacific Standard Time)? Did Mr. Symonds send you a letter or email explaining what you have now indicated were lies? Did he send you a letter or an email on the subject at all? If so, please produce them and explain why they have not already been produced to plaintiffs.

     Your February 22, 2007 letter and your Supplement to the Motion to Reverse Special Master's Order Re: *Softwar* Materials also states that defendants have no personal knowledge about the events described by Mr. Symonds. Which "defendants" did you or anyone from your legal team speak with between the time of the communication with Mr. Symonds on February 22, 2007 and 5:13 p.m. when plaintiffs received your letter? If you or anyone from your firm spoke with Oracle, Mr. Ellison, Mr. Henley or Mr. Sanderson, please identify the people involved in the communication and the time and mode of the communication. That information is not subject to any privilege.

     Furthermore, we asked you on January 11, 2007, when this tale was first told to plaintiffs, what efforts defendants and their attorneys had taken to secure the evidence and information in London, where your firm boasts an office of 140 lawyers. You did not respond. Your January 15, 2007 letter to Judge Infante characterized plaintiffs' claim of intentional spoliation as "wild and inaccurate." You must now concede that plaintiffs' claims were and are correct, so please appropriately correct the record, including your January 22, 2007 Motion to Reverse Special Master's Order Re *Softwar*, which also states that plaintiffs have made "wild accusations" concerning the intentional spoliation of evidence. In addition, please indicate what, if anything, defendants have done to verify any of the representations that you have made concerning Mr. Symonds and the availability of the audio files?

     Further, defendants' supplemental motion states that you "demanded that Mr. Symonds produce these materials to defendant." Please state exactly when, and who on behalf of defendants "demanded" audio files from Mr. Symonds and the form of communication that "demand" occurred. All your representations prior to the Motion to Reverse purport to claim that neither defendants nor their counsel had communicated with Mr. Symonds after Judge Infante's January 2, 2007 order until January 11, 2007 – a remarkable



Patrick E. Gibbs, Esq.
February 23, 2007
Page 3

failure in and of itself. Your January 11, 2007 letter to Mark Solomon says that you "requested" that Mr. Symonds provide you with copies of all audio files and transcripts provided by the Order. The belated activist tenor of the Motion to Reverse and Supplemental Motion are striking given the history of complacency (to say the very least) concerning defendants' duties to preserve and produce the audio files. Had defendants and their attorneys taken even the minimal necessary steps to secure the laptop as late as January 2007 (then claimed to have been at PC World), you inevitably would have also learned, if you were then unaware, that the information provided to plaintiffs and the Court had been wholly concocted. Indeed, had you simply asked the obvious questions, considering defendants were subject to a specific order of the Court, disclosure of facts closer to the truth would have been more timely provided to the Court and plaintiffs. Instead, the failure to take any affirmative timely efforts to conduct an investigation has caused weeks to pass and plaintiffs to incur substantial expense in lawyer time and investigation fees. As a result of the representations concerning the audio files, the parties also have invoked the service of the Special Master who, on January 16, 2007, heard argument on the destruction of the audio files, then issued an order allowing plaintiffs to take discovery from Mr. Symonds and PC World in London. Plaintiffs then invoked the power of the District Court in its request to issue a Fed. R. Civ. P. 28 Letter Rogatory to the High Court in London. Magistrate Judge Spero issued an order on February 1, 2007, authorizing that discovery. Finally, plaintiffs have engaged English counsel to present the papers to the London High Court.

      Please provide us with the information requested above immediately so that we can take the appropriate action to attempt to recover the audio files. Based on your communication of yesterday, it is clear that the last few weeks have been a costly wild-goose chase, apparently by design.

Very truly yours,

SHAWN A. WILLIAMS

SAW:rc

T:\CasesSF\Oracle3\Corres\Gibbs_2_23_07_SAW.doc