1   Edward W. Swanson SBN 159859
    Alexis Haller SBN 201210
2   SWANSON, McNAMARA & HALLER LLP
    300 Montgomery Street, Suite 1100
3   San Francisco, California 94104
    Telephone: (415) 477-3800
4   Facsimile: (415) 477-9010

5   Attorneys for Third-Party Witness Matthew Symonds

6

7

8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10

11
    In re ORACLE CORPORATION SECURITIES          Master File No. C-01-0988-MJJ
12  LITIGATION
                                                 CLASS ACTION
13
                                                 **THIRD-PARTY WITNESS MATTHEW**
14                                               **SYMONDS' OPPOSITION TO**
                                                 **PLAINTIFFS' MOTION TO COMPEL**
15                                               **TESTIMONY AND DETERMINE**
                                                 **APPLICABILITY OF FIFTH**
16                                               **AMENDMENT PRIVILEGE AGAINST**
                                                 **SELF-INCRIMINATION**
17  This Document Relates To:
                                                 Date:    May 1, 2007
18      ALL ACTIONS.
                                                 Time:   9:30 a.m.
19
                                                 Court:  The Honorable Martin J. Jenkins
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    MR. SYMONDS FACES A REASONABLE POSSIBILITY OF INCRIMINATION
        FOR FIFTH AMENDMENT PURPOSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      The Fifth Amendment Privilege Against Self-Incrimination . . . . . . . . . . . . . . . . . . . . . 1

        B.      18 U.S.C. Section 1512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        C.      There is a Possibility of Prosecution Under 18 U.S.C. Section 1512(c)
                for the Alleged Destruction of the Softwar Materials . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     MR. SYMONDS IS ENTITLED TO ASSERT THE FIFTH AMENDMENT
        PRIVILEGE AGAINST SELF-INCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Because Mr. Symonds Would be Entitled to Invoke the Fifth Amendment
                Privilege Against Self-Incrimination in the United States, He is Entitled
                to Invoke the Privilege During his Deposition in England . . . . . . . . . . . . . . . . . . . . . 5

        B.      Because the Deposition in England is Under the Federal Rules of Civil
                Procedure, Mr. Symonds Can Assert the Fifth Amendment Privilege
                Against Self-Incrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.      Because the Fifth Amendment Privilege Against Self-Incrimination
                Applies to Hague Evidence Convention Depositions in England,
                Mr. Symonds is Entitled to Invoke the Privilege at his Deposition . . . . . . . . . . . . . . . . . 9

                1.      This Case Does Not Represent an "Extraterritorial" Application
                        of the Fifth Amendment Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                2.      The Authorities Relied Upon by Plaintiffs, Which Do Not Address
                        the Fifth Amendment Privilege Against Self-Incrimination, are
                        Inapposite . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                3.      The Only Court to Decide the Issue Presented in this Case Upheld
                        the Fifth Amendment Privilege Claim by a British Subject Subpoenaed
                        to Testify on British Soil . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                4.      Based Upon the Hague Evidence Convention, International Comity,
                        International Law, and Principles of Fairness, the Court Should Follow
                        *Westinghouse* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.      MR. SYMONDS HAS NOT WAIVED HIS PRIVILEGE AGAINST
        SELF-INCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        A.      The November 9, 2006 Declaration and the Subsequent Deposition
                Testimony Do Not Constitute Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.    Mr. Symonds' Alleged Communications with Defendants' Counsel and Ellison Do Not Constitute Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

C.    Mr. Symonds' Production of Documents Does Not Constitute Waiver . . . . . . . . . . . . 24

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Armour & Co. v. Wantock*,
    323 U.S. 126 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4

*Barrera-Echavarria v. Rison*,
5
    44 F.3d 1441 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9

6

*Bear Sterns & Co., Inc. v. Wyler*,
    182 F. Supp. 2d 679 (N.D. Ill. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9
7

*Boumediene v. Bush*,
8
    476 F.3d 981 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9

9
*Campbell v. Gerrans*,
    592 F.2d 1054 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9
10

*Cohens v. State of Virginia*,
11
    19 U.S. 264 (1821) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12
*De Sanchez v. Banco Central De Nicaragua*,
    770 F.2d 1385 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 n.13
13

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
14
    232 F.3d 1258 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3,5

15
*DP Aviation v. Smiths Industries Aerospace and Defense Systems Ltd.*,
    268 F.3d 829 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 n.6
16

*EEOC v. Pacific Commercial Equipment, Inc.*,
17
    No. C04-940Z, 2005 WL 1533104 (W.D. Wash. June 28, 2005) . . . . . . . . . . . . . . . . . . 8

18
*Emspak v. United States*,
    349 U.S. 190 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
19

*Gatoil, Inc. v. Forest Hill State Bank*,
20
    104 F.R.D. 580 (D. Md. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

21
*Gherebi v. Bush*,
    374 F.3d 727 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9
22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
23
    466 U.S. 408 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

24
*Hicks v. Bush*,
    No. 02-299 (CKK), 2007 WL 902303 (D.D.C. Mar. 23, 2007) . . . . . . . . . . . . . . . . . 10 n.9
25

*Hoffman v. United States*,
26
    341 U.S. 479 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,20

27
*In re DG Acquisition Corp.*,
    151 F.3d 75 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
28

*In re Estate of Marcos, Human Rights Litig.*,
    25 F.3d 1467 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9

*In re Grand Jury Proceedings, Doe No. 700*,
    817 F.2d 1108 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Grand Jury Subpoena*,
    383 F.3d 905 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Iraq and Afghanistan Detainees Litigation*,
    — F. Supp. 2d —,  2007 WL 926145 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9

*In re Master Key Litigation*,
    507 F.2d 292 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,24 n.21,25

*In re Roman Catholic Archbishop of Portland in Oregon*,
    335 B.R. 815 (Bkrtcy. D. Or. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Johnson v. Eisentrager*,
    339 U.S. 763 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11,11 n.12

*Kim Ho Ma v. Ashcroft*,
    257 F.3d 1095 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,19 n.14

*Klein v. Harris*,
    667 F.2d 274 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22,23,23 n.20,24,25

*Kwai Fun Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Madanes v. Madanes*,
    186 F.R.D. 279 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Malloy v. Hogan*,
    378 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,20

*Mathews v. Diaz*,
    426 U.S. 67 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Matter of Seper*,
    705 F.2d 1499 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*McCarthy v. Arndstein*,
    266 U.S. 34 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Murphy v. Waterfront Com'n of New York Harbor*,
    378 U.S. 52 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Murray v. Schooner Charming Betsy*,
    2 Cranch 64 (1804) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 19 n.16

*Ohio v. Reiner*,
    532 U.S. 17 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ohio Adult Parole Authority v. Woodard*,
　　523 U.S. 272 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.5

*Pazcoguin v. Radcliffe*,
　　292 F.3d 1209 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Quinn v. United States*,
　　349 U.S. 155 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2

*Rasul v. Bush*,
　　542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Renfield Corp. v. E. Remy Martin & Co., S.A.*,
　　98 F.R.D. 442 (D. Del. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Serbian E. Orthodox Diocese v. Milivojevich*,
　　426 U.S. 696 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court*,
　　482 U.S. 522 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Starkovich v. United States*,
　　231 F.2d 411 (9th Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

*Tan v. Reno*,
　　No. C 99-4000 MJJ, 1999 WL 969643 (N.D. Cal. Oct. 15, 1999) . . . . . . . . . . . . . . . . . . . . 3 n.4

*Tulip Computers Intern. B.V. v. Dell Computer Corp.*,
　　254 F. Supp. 2d 469 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ullmann v. United States*,
　　350 U.S. 422 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2,20,21

*United States v. Anderson*,
　　79 F.3d 1522 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 n.21

*United States v. Bin Laden*,
　　132 F. Supp. 2d 168 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

*United States v. Davis*,
　　905 F.2d 245 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Drollinger*,
　　80 F.3d 389 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Jenkins*,
　　785 F.2d 1387 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Karake*,
　　443 F. Supp. 2d 8 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Mandujano*,
　　425 U.S. 564 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.5

1   *United States v. Neff*,
        615 F.2d 1235 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2
    *United States v. O'Henry's Film Works, Inc.*,
3       598 F.2d 313 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

4   *United States v. Raven*,
        103 F. Supp. 2d 38 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.9
5
    *United States v. Seifert*,
6       648 F.2d 557 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

7   *United States v. Verdugo-Urquidez*,
        494 U.S. 259 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,13,14
8
    *United States v. Weisman*,
9       111 F.2d 260 (2d Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

10  *United States v. Yousef*,
        327 F.3d 56 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
11
    *United States v. Yunis*,
12      859 F.2d 953 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13  *Volkswagenwerk Aktiengesellschaft v. Schlunk*,
        486 U.S. 694 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
14
    *Wang v. Reno*,
15      81 F.3d 808 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16  *Wood v. United States*,
        128 F.2d 265 (D.C. Cir. 1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.5
17
    *Zadvydas v. Davis*,
18      533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,13

19  **CONSTITUTIONAL PROVISIONS**

20  U.S. Const. Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21  **STATUTES AND RULES**

22  10 U.S.C. § 948r(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n.11

23  18 U.S.C. § 1512(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

24  18 U.S.C. § 1512(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,9,20

25  18 U.S.C. § 1515(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

26  18 U.S.C. § 6002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

27  18 U.S.C. § 6003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,16

28  28 U.S.C. § 1781 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,21

1    FED. R. CIV. P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2    FED. R. CIV. P. 30(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3    FED. R. CIV. P. 30(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4    FED. R. CIV. P. 30(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5    FED. R. CIV. P. 44.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,6 n.6

6    FED. R. EVID. 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7    FED. R. EVID. 801(d)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8    FED. R. EVID. 1101(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9    **OTHER AUTHORITIES**

10   8 FED. PROC. FORMS § 23:234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11   Evidence (Proceedings in Other Jurisdictions) Act 1975 . . . . . . . . . . . . . . . . . . . . . . 6,6 n.6,6 n.7,7,7 n.7

12   Hague Convention of 18 March 1970 on the Taking of Evidence
13   Abroad in Civil or Commercial Matter, 847 U.N.T.S. 231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,17,20

14   International Covenant on Civil and Political Rights, 999 U.N.T.S. 171 . . . . . . . . . . . . . . . . 19,19 n.14

15   Philip W. Amram, *Explanatory Report, reprinted in* HAGUE CONFERENCE
     ON PRIVATE INTERNATIONAL LAW, PRACTICAL HANDBOOK ON THE OPERATION
16   OF THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE
     ABROAD IN CIVIL AND COMMERCIAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

17   Protocol Additional to the Geneva Conventions of 12 August 1949,
     Relating to the Protection of Victims of Non-International Armed Conflicts,
18   16 I.L.M. 1442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 n.15

19   *Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.*,
     [1978] 1 All E.R. 434 (H.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,15,16-17
20
21   Robert R. Merhige, *The Westinghouse Uranium Case: Problems Encountered in
     Seeking Foreign Discovery and Evidence*, 13 INT'L LAW. 19 (1979) . . . . . . . . . . . . . . . . . . . . 16,18-19

22   THE HAGUE CONVENTIONS ON THE SERVICE OF PROCESS, THE TAKING OF EVIDENCE,
     AND LEGALISATION, *Explanatory documentation prepared for Commonwealth
23   jurisdiction by Professor David McClean in association with the
     Commonwealth Secretariat* (Feb. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.7
24
     WRIGHT & MILLER, 8 FEDERAL PRACTICE AND PROCEDURE § 2018 . . . . . . . . . . . . . . . . . . . . . . . . . 9
25

26

27

28

I.   **INTRODUCTION**

Matthew Symonds has the right to assert his Fifth Amendment privilege in these proceedings.   That right is available to him under English law, U.S. law, and international law, and upholding that right is consistent with principles of fundamental fairness.  Nothing Mr. Symonds has done constitutes a waiver of the right.  Plaintiffs' motion to compel him to give possibly incriminating testimony against himself in these U.S. proceedings must be denied.

II.   **FACTUAL BACKGROUND**

For purposes of this brief only, and because the nature of the issues the Court must resolve is legal rather than factual, counsel for Mr. Symonds will proceed upon the alleged facts set forth in pages 5:18 to 8:22 of the Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matter, dated February 1, 2007 ("Letter of Request") and pages 4:22 to 9:6 of Plaintiffs' Motion to Compel ("Pltfs' Mtn."), dated March 30, 2007.  Mr. Symonds does not admit or concede any of the alleged facts set forth in the Letter of Request or Plaintiffs' motion and expressly reserves all privileges applicable to the subject matters set forth therein.

To the extent that the Court requires information from Mr. Symonds relating to Fifth Amendment privilege issues, an *in camera* hearing outside of the presence of the parties is the proper procedure under Ninth Circuit law. *See, e.g.*, *United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996).[1]

III.   **MR. SYMONDS FACES A REASONABLE POSSIBILITY OF INCRIMINATION FOR FIFTH AMENDMENT PURPOSES**

A.   **The Fifth Amendment Privilege Against Self-Incrimination**

The Fifth Amendment privilege against self-incrimination enshrines an English common law rule dating back to the 1600's. *Quinn v. United States*, 349 U.S. 155, 161 (1955).  The privilege "registers an important advance in the development of our liberty – one of the great landmarks in man's struggle to make

---

[1] Mr. Symonds focuses only on Fifth Amendment privilege issues here.  If the Court finds that Mr. Symonds is entitled to the Fifth Amendment privilege, the reporters' privilege is irrelevant because the Fifth Amendment privilege would offer Mr. Symonds with sufficient protection.  If the Court denies Mr. Symonds the right to invoke the Fifth Amendment privilege, Mr. Symonds acknowledges that the reporters' privilege is unlikely to afford protection because it is less robust than the Fifth Amendment privilege.

himself civilized." *Ullmann v. United States*, 350 U.S. 422, 426 (1956).[2]  Under the Fifth Amendment, "any compulsory discovery by extorting the party's oath . . . to convict him of crime . . . is contrary to the principles of a free government.  It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American.  It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom."  *Malloy v. Hogan*, 378 U.S. 1, 9 n.7 (1964).  As the Supreme Court has stated:

> [The privilege] reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load; our respect for the inviolability of the human personality and of the right of each individual to a private enclave where he may lead a private life; our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes a shelter to the guilty, is often a protection to the innocent.

*Murphy v. Waterfront Com'n of New York Harbor*, 378 U.S. 52, 55 (1964).  One of the "Fifth Amendment's basic functions . . . is to protect *innocent* men . . . who otherwise might be ensnared by ambiguous circumstances."  *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (emphasis in original).

Given its central importance, "[t]his provision of the [Fifth] Amendment must be accorded liberal construction in favor of the right it was intended to secure."  *Hoffman v. United States*, 341 U.S. 479, 486 (1951); *see also*, *e.g.*, *Ullmann*, 350 U.S. at 426 ("This constitutional protection must not be interpreted in a hostile or niggardly spirit."); *Quinn*, 349 U.S. at 162 ("To apply the privilege narrowly or begrudgingly – to treat it as an historical relic, at most merely to be tolerated – is to ignore its development and purpose.").

The "Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory."  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000).  In the civil context, "the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner."  *Id.* The "privilege against self-incrimination does not depend upon the *likelihood,* but upon the *possibility*

---

[2] Emphasis is added, and citations and internal quotations are omitted, throughout this brief, except as otherwise indicated.

of prosecution and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence." *Id.* (emphasis in original).

### B.      18 U.S.C. Section 1512

Section 1512(c) of Title 18, enacted as part of the Sarbanes-Oxley Act of 2002, states the following:

**(c)** Whoever corruptly–

**(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

**(2)** otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).  By its terms, the criminal statute applies extraterritorially.  *See* 18 U.S.C. § 1512(h) ("There is extraterritorial Federal jurisdiction over an offense under this section.").

### C.      There is a Possibility of Prosecution Under 18 U.S.C. Section 1512(c) for the Alleged Destruction of the Softwar Materials

Plaintiffs allege that "some time ***after*** becoming aware of plaintiffs' motion to compel [the Softwar Evidence], Mr. Symonds participated in the destruction of Softwar Evidence and then fabricated an unbelievable story about how, when and why the materials were destroyed."  Pltfs' Mtn. at 1-2 (emphasis and brackets in original).[3]  Accordingly, under Plaintiffs' version of the facts, Mr. Symonds destroyed material evidence "after becoming aware" that they were being sought in a judicial proceeding.  Plaintiffs explicitly seek to discover "when, how and why highly relevant evidence ordered by Special Master Infante was destroyed, and what Mr. Symonds knows about the substantive facts of the case."  *Id.* at 2.  Given that section 1512(c) applies extraterritorially, there is a "possibility" of prosecution for the purported destruction of evidence.  *Glanzer*, 232 F.3d at 1263.[4]

---

[3] Similarly, the Letter of Request, which appears to have been drafted by Plaintiffs, states that the "destruction" of the Softwar materials "must necessarily have taken place between November 9, 2006 and January 11, 2007[,]" *i.e.*, after Plaintiffs filed the motion to compel and after Mr. Symonds allegedly submitted a declaration to the Court.  Letter of Request at 7.

[4] Plaintiffs cite *Tan v. Reno*, No. C 99-4000 MJJ, 1999 WL 969643 (N.D. Cal. Oct. 15, 1999), for the proposition that a foreign national was not entitled to assert the Fifth Amendment privilege where there was no "real danger" of incrimination.  In *Tan*, however, the petitioner "had already been convicted" of the offense and "served his time[,]" and therefore this Court found that the potential threat of criminal prosecution was "nonexistent."  *Id.* at *5.

1    Plaintiffs make five arguments as to why Mr. Symonds has made an insufficient showing of possible

2    incrimination.  First, Plaintiffs argue that Mr. Symonds has not "set forth any facts" showing that he acted

3    "corruptly" under section 1512(c).  Pltfs' Mtn. at 12.  The Fifth Amendment does not, however, require a

4    person to prove each element of a criminal case in order to assert the privilege.  *See*, *e.g.*, *Hoffman v. United*

5    *States*, 341 U.S. 479, 486 (1951) ("if the witness, upon interposing his claim, were required to prove the

6    hazard in the sense in which a claim is usually required to be established in court, he would be compelled

7    to surrender the very protection which the privilege is designed to guarantee."); *United States v. Neff*, 615

8    F.2d 1235, 1240 (9th Cir. 1980) (stating that a defendant need not "confess the crime he has sought to

9    conceal by asserting the privilege.  The law does not require him to prove guilt to avoid admitting it.").

10    Second, Plaintiffs claim that Mr. Symonds has not "demonstrated that [section 1512(c)] necessarily

11    implicates civil discovery proceedings unconnected to any criminal investigation or regulatory inquiry[.]"

12    Pltfs' Mtn. at 13.  Plaintiffs' argument ignores the plain language of statute, which states that an "official

13    proceeding" for purposes of section 1512(c) includes "a proceeding before a judge or court of the United

14    States [or] a United States magistrate judge."  18 U.S.C. § 1515(a)(1)(A).  There is no requirement that the

15    proceeding be connected to a "criminal investigation" or "regulatory inquiry."

16    Third, Plaintiffs appear to argue that section 1512(c) cannot be applied extraterritorially.  *See* Pltfs'

17    Mtn. at 14 n.7.  Once again, Plaintiffs' argument ignores the plain language of the statute.  *See* 18 U.S.C.

18    § 1512(h); *see also*, *e.g.*, *United States v. Yousef,* 327 F.3d 56, 86 (2d Cir. 2003) ("As long as Congress has

19    indicated its intent to reach such [extraterritorial] conduct, a United States court is bound to follow the

20    Congressional direction unless this would violate the due process clause of the Fifth Amendment.").

21    Fourth, Plaintiffs claim that the compulsion of incriminating testimony is permissible "so long as

22    those statements (or evidence derived from those statements) cannot be used against the speaker in any

23    criminal case."  Pltfs' Mtn. to Compel at 12.  Plaintiffs do not explain why any deposition testimony could

24    not be used against Mr. Symonds in any future criminal proceeding.  *See*, *e.g.*, FED. R. EVID. 801(d)(2)(A);

25    *see also United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986) (stating that statements in a deposition

26    are "clearly admissible" as "party admissions under Federal Rule of Evidence 801(d)(2)(A)" in subsequent

27    criminal proceedings).  Moreover, this Court cannot, without a prior request by the United States Attorney

28    for the Northern District of California, grant Mr. Symonds use and derivative use immunity for his

deposition testimony. *See* 18 U.S.C. § 6003 (request from U.S. Attorney required before grant of immunity).

Finally, Plaintiffs argue that "Mr. Symonds is not a defendant in this case nor is he the subject of a U.S. criminal proceeding." Pltfs' Mtn. at 13. However, under settled law, third party witnesses are entitled to assert the Fifth Amendment privilege. *See*, *e.g.*, *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924) ("The privilege protects a mere witness as fully as it does one who is also a party defendant."). In addition, a witness need not be the "subject" of a criminal proceeding to assert the Fifth Amendment privilege. *See*, *e.g.*, *Glanzer*, 232 F.3d at 1263 (stating that the privilege applies where a person "reasonably believes that his disclosures *could* be used in a criminal prosecution, or *could* lead to other evidence that could be used in that manner.").

In short, given the possibility of prosecution for the alleged destruction of evidence, Mr. Symonds faces a reasonable possibility of incrimination under the Fifth Amendment.[5]

## IV.   MR. SYMONDS IS ENTITLED TO ASSERT THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

### A.   Because Mr. Symonds Would be Entitled to Invoke the Fifth Amendment Privilege Against Self-Incrimination in the United States, He is Entitled to Invoke the Privilege During his Deposition in England

Plaintiffs' argument that Mr. Symonds is not entitled to the protections afforded by the privilege against self-incrimination is based upon one central premise: that the issue before the Court is whether the Fifth Amendment privilege applies extraterritorially. *See* Pltfs' Mtn. at 9-11. In fact, the issue before the Court is whether Mr. Symonds would be entitled to assert the Fifth Amendment privilege *if he were*

---

[5] Plaintiffs also appear to argue that compelling Mr. Symonds to testify would not violate the Fifth Amendment, because a violation "occurs only" when the statement is introduced at a criminal trial. Pltfs' Mtn. at 3, 13-14. The cases Plaintiffs cite for this proposition discuss custodial interrogations by law enforcement; in that context, courts have stated that the Fifth Amendment violation occurs when the coerced statement is introduced at trial rather than when the interrogation occurs. Here, Plaintiffs are seeking to have Mr. Symonds' testimony compelled in a judicial proceeding – which directly implicates the Fifth Amendment privilege. *See*, *e.g.*, *Wood v. United States*, 128 F.2d 265, 268 (D.C. Cir. 1942) (stating that privilege "protects against the force of the court itself" and "guards against the ancient abuse of judicial inquisition"); *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 286 (1998) ("The Fifth Amendment protects against compelled self-incrimination."); *United States v. Mandujano*, 425 U.S. 564, 592 n.7 (1976) (Brennan, J., concurring) (stating that "[j]udicial compulsion" is the "very phenomenon" against which the Fifth Amendment protects). Indeed, if Plaintiffs' position were accepted, a court would be able to compel a criminal defendant to testify at a preliminary examination, because as long as the statement were not introduced against the defendant "at trial," there would be no "violation." That is plainly not the law.

1   *testifying in the United States*.  That is the inquiry demanded by English law.  The distinction is significant,

2   because even Plaintiffs do not dispute that Mr. Symonds would be entitled to Fifth Amendment protections

3   if he were testifying in the United States.

4       In "determining foreign law," a court "may consider any relevant material or source[.]"  FED. R. CIV.

5   P. 44.1; *see also Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1216 (9th Cir. 2002) (stating that a court may

6   resolve foreign law issues "on the basis of independent examination of foreign legal authorities" and

7   interpreting Philippine law based upon, *inter alia*, the "Philippine statute at issue").[6]  As Plaintiffs concede

8   (Pltfs' Mtn. at 8 n.4), the Evidence (Proceedings in Other Jurisdictions) Act 1975 ("the 1975 Act") is the

9   law governing Mr. Symonds' deposition in England.  Section 3(1) of the 1975 Act states as follows:

10      3.– (1) A person shall not be compelled by virtue of an order under section 2 above to give
        any evidence which he could not be compelled to give –

11      (a) in civil proceedings in the part of the United Kingdom in which the court that made the
        order exercises jurisdiction; or

12      (b) subject to subsection (2) below, *in civil proceedings in the country or territory in which
        the requesting court exercises jurisdiction.*

13   1975 Act, § 3(1), attached as Exhibit A.[7]  By its plain terms, the 1975 Act explicitly requires the privilege

14

15      [6] On March 27, 2007, counsel for Mr. Symonds noticed their intent to rely upon foreign law pursuant
16   to Federal Rule of Civil Procedure 44.1 and specifically identified the 1975 Act discussed below.  Ironically,
     although Plaintiffs rejected the notice as untimely (*see* Solomon Decl., Exh. L), Plaintiffs themselves rely
17   upon the 1975 Act – without providing any notice to the undersigned.  Pltfs' Mtn. at 8 n.4.
18      In any event, the notice provided by Mr. Symonds – less than a week after Mr. Symonds' deposition
     – was more than sufficient under Rule 44.1, particularly given that the 1975 Act was openly discussed by
19   the Examiner appointed by the English court.  *See* Solomon Decl., Exh. J, at 9; *see also DP Aviation v.
     Smiths Industries Aerospace and Defense Systems Ltd.*, 268 F.3d 829, 846 (9th Cir. 2001) ("The primary
20   purpose of Rule 44.1's notice requirement is to avoid unfairly surprising opposing parties.").

21      [7] Subsection 2 of section 3 states:

22      (2) Subsection (l)(b) above shall not apply unless the claim of the person in question to be
23   exempt from giving the evidence is either –
        (a) supported by a statement contained in the request (whether it is so supported
24   unconditionally or subject to conditions that are fulfilled); or
        (b) conceded by the applicant for the order;
25   and where such a claim made by any person is not supported or conceded as aforesaid he may
     (subject to the other provisions of this section) be required to give the evidence to which the
26   claim relates but that evidence shall not be transmitted to the requesting court if that court,
     on the matter being referred to it, upholds the claim.
27

28   In this case, Plaintiffs stipulated to having the matter referred to this Court, without Mr. Symonds being

1    issue to be determined as if the witness were testifying in proceedings "*in the country or territory*" of the

2    requesting court – here, of course, the United States.  1975 Act, § 3(1); *see also Rio Tinto Zinc Corp. v.*

3    *Westinghouse Electric Corp.*, [1978] 1 All E.R. 434 (H.L. 1977), attached hereto as Exhibit B ("The

4    individual witnesses claim privilege against giving any oral evidence on the ground that to do so might

5    incriminate them.  This claim attracts the protection of the fifth article of amendment to the United States

6    Constitution.  Since it is a claim for privilege under United States law, *its validity has to be determined as*

7    *if it had been made in civil proceedings in the United States of America* (s 3(I)(b) of the 1975 Act)."); *id.*

8    at 447 ("the evidence sought was evidence which the witnesses could not be compelled to give *in civil*

9    *proceedings in the country* in which the requesting court exercises jurisdiction").  Because the question is

10   whether Mr. Symonds would be entitled to assert the privilege if he were in the United States or on United

11   States "territory," the Supreme Court "extraterritoriality" cases cited by Plaintiffs are wholly inapplicable.

12        Plaintiffs do not contend that Mr. Symonds would not be entitled to assert the Fifth Amendment

13   privilege if he were testifying in civil proceedings in the United States.  Pltfs' Mtn., *passim*.  Indeed, the

14   clear import of Plaintiffs' brief is that he *would* be entitled to assert the privilege here.  *See* Pltfs' Mtn. at

15   9-11.  Moreover, as this Court is well aware from, for example, plea colloquies in section 1326 cases, aliens

16   present in the United States are entitled to constitutional rights, including the privilege against self-

17   incrimination.  *See also*, *e.g.*, *Kwai Fun Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004), *quoting*

18   *Mathews v. Diaz,* 426 U.S. 67, 77 (1976) ("'[t]here are literally millions of aliens within the jurisdiction of

19   the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these

20   persons from deprivation of life, liberty, or property without due process of law.  Even one whose presence

21   in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.'").

22        Given the issue properly before the Court – whether Mr. Symonds would be entitled to the Fifth

23

24   required first to give the evidence to the English Examiner. *See* Solomon Decl., Exh. K at 44-46; Pltfs' Mtn.
     at 8 n.4 (stating that the deposition was properly adjourned under section 3); *see also*, *e.g.*, THE HAGUE

25   CONVENTIONS ON THE SERVICE OF PROCESS, THE TAKING OF EVIDENCE, AND LEGALISATION, *Explanatory*
     *documentation prepared for Commonwealth jurisdiction by Professor David McClean in association with*

26   *the Commonwealth Secretariat* (Feb. 1979) at 36 ("Where the privilege arises under the law of the
     requesting State and the privilege has not been stated in the Letter, the requested authority may ask the

27   requesting authority to confirm whether such privilege or duty exists, in order to safeguard the witness's
     interests.").  Accordingly, the procedural limitations set forth in subsection 2 do not apply, and the question

28   is solely whether Mr. Symonds is entitled to the substantive protection afforded by section 3(1)(b).

Amendment privilege if he were testifying in the United States – it is clear that Mr. Symonds can invoke the privilege against self-incrimination during his deposition in England.

**B.    Because the Deposition in England is Under the Federal Rules of Civil Procedure, Mr. Symonds Can Assert the Fifth Amendment Privilege Against Self-Incrimination**

Mr. Symonds is also entitled to assert the Fifth Amendment privilege against self-incrimination because, at Plaintiffs' request, Mr. Symonds' deposition is proceeding under the Federal Rules of Civil Procedure.

Item 13 of the Letter of Request expressly sets forth "[s]pecial methods or procedures to be followed" pursuant to Article 9 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matter ("Hague Evidence Convention").  The Letter of Request, drafted by Plaintiffs, states: "The examinations *shall* be taken under the Federal Rules of Civil Procedure of the United States of America, except to the extent such rules are incompatible with the internal laws of the United Kingdom, in which case, such laws shall control."  Letter of Request at 10.

Federal Rule of Civil Procedure 26(b)(1), the general discovery rule, states that "[p]arties may obtain discovery regarding any matter, *not privileged*, that is relevant to the claim or defense of any party[.]" FED. R. CIV. P. 26(b)(1).  Moreover, Rule 30(c) states that "[e]xamination and cross-examination of witnesses may proceed as permitted at the trial *under the provisions of the Federal Rules of Evidence*[.]"  FED. R. CIV. P. 30(c).  Finally, Rule 30(d)(1) states that "[a] person may instruct a deponent not to answer only when necessary to preserve a *privilege*[.]"  FED. R. CIV. P. 30(d)(1).

As the Ninth Circuit has stated, "Rule 26 provides that discovery may only be had of matter 'not privileged, which is relevant to the subject matter involved in the pending action.'  What is privileged is defined by the Federal Rules of Evidence; *these rules include the privilege against self-incrimination.*" *Campbell v. Gerrans*, 592 F.2d 1054, 1056 (9th Cir. 1979); *see also*, *e.g.*, *EEOC v. Pacific Commercial Equipment, Inc.*, No. C04-940Z, 2005 WL 1533104, at *1 (W.D. Wash. June 28, 2005) ("[Federal Rule of Civil Procedure] 30(d)(1) states that 'a person may instruct a deponent not to answer only when necessary to preserve a privilege. . . .'  What is privileged is defined by the Federal Rules of Evidence; these rules include the rule against self-incrimination."); *Gatoil, Inc. v. Forest Hill State Bank*, 104 F.R.D. 580, 581 (D. Md. 1985) ("It is clear that the Federal discovery rules protect common law privileges, including the

privilege against self-incrimination."); FED. R. EVID. 501 (recognizing privileges "required" by the Constitution); FED. R. EVID. 1101(c) (stating that the "rule with respect to privileges applies at all stages of all actions, cases, and proceedings."); *see also* WRIGHT & MILLER, 8 FEDERAL PRACTICE AND PROCEDURE § 2018, *citing Campbell* and *Gatoil* ("Since Rule 26(c) provides that discovery may only be had of matter that is 'not privileged,' the discovery rules cannot reach information that is protected by the privilege against self-incrimination."). By explicitly invoking the Federal Rules of Civil Procedure (and thereby also invoking the Federal Rules of Evidence) in the Letter of Request, Plaintiffs agreed to all of the restrictions and limitations set forth therein, including the privilege against self-incrimination.[8]  Accordingly, Mr. Symonds is entitled to assert the Fifth Amendment privilege against self-incrimination at the deposition.

### C. Because the Fifth Amendment Privilege Against Self-Incrimination Applies to Hague Evidence Convention Depositions in England, Mr. Symonds is Entitled to Invoke the Privilege at his Deposition

Plaintiffs argue that "a legion of Supreme Court authority" precludes Mr. Symonds' "extraterritorial" invocation of the Fifth Amendment privilege.  Pltfs' Mtn. at 2, 9.  Plaintiffs' argument fails as a matter of fact and law.

### 1. This Case Does Not Represent an "Extraterritorial" Application of the Fifth Amendment Privilege

The basic premise of Plaintiffs' argument – that this is an "extraterritorial" application of the Fifth Amendment – is untenable.  Mr. Symonds is being ordered to provide testimony in a United States civil proceeding, pursuant to a Letter of Request issued by a court in the United States.  If his deposition is taken, it would be admissible in the United States civil proceeding (*see, e.g.*, FED. R. CIV. P. 30(a)(3)(B)) and would be admissible against Mr. Symonds in any future criminal prosecution in the United States. *See supra* at 4.  Moreover, by its terms, the United States criminal statute at issue applies overseas.  18 U.S.C. § 1512(h).  As a result, the question is whether the Fifth Amendment privilege applies to a deposition in a United States civil proceeding, occurring under the Federal Rules of Civil Procedure and the Federal Rules

---

[8] Plaintiffs, the drafters of the Letter of Request, should not be able to pick and choose *which* rules of civil procedure they have chosen to incorporate in a Hague Evidence Convention proceeding, particularly given that any ambiguities should be construed against them under the doctrine of *contra proferentum.* Otherwise, Plaintiffs would be able to take advantage of the United States' liberal discovery rules overseas, but without any limitations – including those imposed by the United States Constitution.

of Evidence, where the alleged criminal conduct potentially falls within the scope of a federal criminal statute and where the testimony could be introduced in civil and criminal proceedings in the United States. There is nothing "extraterritorial" about the application of the only evidentiary privilege enshrined in the Constitution under these circumstances.

### 2. The Authorities Relied Upon by Plaintiffs, Which Do Not Address the Fifth Amendment Privilege Against Self-Incrimination, are Inapposite

Plaintiffs' argue that a "legion" of supposedly binding Supreme Court cases compels a finding that Mr. Symonds cannot assert the privilege. However, that case law says nothing of the sort. Indeed, *none* of the cases cited even addresses the privilege against self-incrimination. *See Johnson v. Eisentrager*, 339 U.S. 763 (1950) (no discussion of privilege against self-incrimination); *Zadvydas v. Davis*, 533 U.S. 678 (2001) (same); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (stating that the Fifth Amendment privilege against self-incrimination "is not at issue in this case").[9]  Given that the Supreme Court has expressly held that the Fifth Amendment's privilege against self-incrimination "must be accorded liberal construction" (*Hoffman*, 341 U.S. at 486), it is unclear how cases that do not even address the privilege are a "legion" of authority on the issue before this Court. *See, e.g.*, *Cohens v. State of Virginia*, 19 U.S. 264, 399 (1821) ("[i]t is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."); *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33 (1944) ("words of . . . opinions are to be read in the light of the facts of the case under discussion . . . . General expressions transposed to other facts are often misleading."); *see also Eisentrager*, 339 U.S. at 772 (noting that "[m]uch of the obscurity which surrounds the rights of aliens has its origin in th[e]

---

[9] For that matter, apart from a *single* district court case from the Northern District of Illinois, none of the cases relied upon by Plaintiffs for their "extraterritoriality" argument addresses the Fifth Amendment privilege against self-incrimination. *See Gherebi v. Bush*, 374 F.3d 727 (9th Cir. 2004) (no discussion of privilege against self-incrimination); *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (same); *In re Estate of Marcos, Human Rights Litig.*, 25 F.3d 1467 (9th Cir. 1994) (same); *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) (same); *Hicks v. Bush*, No. 02-299 (CKK), 2007 WL 902303 (D.D.C. Mar. 23, 2007) (same); *In re Iraq and Afghanistan Detainees Litigation*, — F. Supp. 2d —,  2007 WL 926145 (D.D.C. 2007) (same); *United States v. Raven*, 103 F. Supp. 2d 38, 39-40 (D. Mass. 2000) (Fifth and Sixth Amendment rights to counsel).  Moreover, the sole case that addresses the Fifth Amendment privilege, *Bear Sterns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679 (N.D. Ill. 2002), involves a party defendant, not a third-party witness, and does not (contrary to Plaintiffs' claim (Pltfs' Mtn. at 13 n.6)) involve proceedings under the Hague Evidence Convention or a letter rogatory.

confusion of diverse subjects.").

*Eisentrager*, the main case relied upon by Plaintiffs, demonstrates precisely the dangers of relying on general statements made by the Supreme Court in a different context. In *Eisentrager*, twenty-one German nationals had been convicted of violating laws of war by engaging in military activity against the United States after the surrender of Germany but before the surrender of Japan. They had been tried by a United States Military Commission in China, pursuant to authority specifically granted by the Joint Chiefs of Staff of the United States. *Eisentrager*, 339 U.S. at 765-66. The issue before the *Eisentrager* Court was whether the German nationals were entitled to petition the District Court for the District of Columbia for writs of habeas corpus, alleging, *inter alia*, violations of their due process rights under the Fifth Amendment. *Id.*

The *Eisentrager* Court emphasized that the nationals were *enemies* of the United States. *See*, *e.g.*, *Eisentrager*, 339 U.S. at 769 ("our law does not abolish inherent distinctions recognized throughout the civilized world between citizens and aliens, nor between aliens of friendly and of enemy allegiance, nor between resident enemy aliens who have submitted themselves to our laws and nonresident enemy aliens who at all times have remained with, and adhered to, enemy governments."). The *Eisentrager* Court further made it clear that the case before it involved the proper division of power between the executive and judicial branches – an issue wholly absent from the case at bar. *See id.* at 774 ("[e]xecutive power over enemy aliens, undelayed and unhampered by litigation, has been deemed . . . essential to war-time security.")

The *Eisentrager* Court clearly identified the issue before it:

> We are here confronted with a decision whose basic premise is that these prisoners are entitled, as a constitutional right, to sue in some court of the United States for a writ of habeas corpus. To support that assumption we must hold that a prisoner of our military authorities is constitutionally entitled to the writ, even though he (a) is an enemy alien; (b) has never been or resided in the United States; (c) was captured outside of our territory and there held in military custody as a prisoner of war; (d) was tried and convicted by a Military Commission sitting outside the United States; (e) for offenses against laws of war committed outside the United States; (f) and is at all times imprisoned outside the United States.

*Id.* at 777. Indeed, the Supreme Court recently recognized that these were "the six critical facts" of *Eisentrager*. *Rasul v. Bush*, 542 U.S. 466, 475-76 (2004). *None* of these facts applies to Mr. Symonds.[10]

*See Rasul*, 542 U.S. at 476 (distinguishing and limiting *Eisentrager* to its facts).

---

[10] For purposes of this brief, undersigned counsel proffers that Mr. Symonds has previously been in the United States.

In light of the facts of the case before it, the conclusion of the *Eisentrager* Court is unsurprising – it was unwilling to afford all enemy combatants overseas constitutional rights, lest United States courts be inundated with habeas petitions, enemy prisoners be brought into the United States for habeas proceedings, and United States military officers abroad be called to testify in judicial proceedings to defend their actions. *See Eisentrager*, 339 U.S. at 778-79. The Court also noted that the appellate court's position that the Fifth Amendment applied to enemy combatants precluded *any* punishment for enemies caught during war, because the Sixth Amendment would "clearly prohibit[] their trial by civil courts." *Id.* at 782-83.

The language relied upon by Plaintiffs (*see* Pltfs' Mtn. at 9-10) must be read in this context. Indeed, the full quote demonstrates the reasoning of the Court:

> If the Fifth Amendment confers its rights on all the world except Americans engaged in defending it, the same must be true of the companion civil-rights Amendments, for none of them is limited by its express terms, territorially or as to persons. *Such a construction would mean that during military occupation irreconcilable enemy elements, guerrilla fighters, and 'were-wolves' could require the American Judiciary to assure them freedoms of speech, press, and assembly as in the First Amendment, right to bear arms as in the Second, security against 'unreasonable' searches and seizures as in the Fourth, as well as rights to jury trial as in the Fifth and Sixth Amendments.*
>
> Such extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. Not one word can be cited. No decision of this Court supports such a view. None of the learned commentators on our Constitution has ever hinted at it. The practice of every modern government is opposed to it.

*Id.* at 784-85; *compare* Pltfs. Mtn. at 9-10. This is not, as Plaintiffs claim, a rejection of the applicability of the privilege against self-incrimination to a foreign national testifying in a United States civil proceeding. Instead, it is the quite reasonable rejection of granting all enemy combatants throughout the world all of the rights conferred by the United States Constitution. In fact, the *Eisentrager* Court was explicit about the narrowness of its holding: "We hold that the Constitution does not confer a right of personal security or an immunity from military trial and punishment upon an alien enemy engaged in the hostile service of a government at war with the United States." *Id.* at 785. Plaintiffs do not explain how any part of the *Eisentrager* Court's actual holding applies to the case at bar.[11]

---

[11] The other enemy combatant cases cited by Plaintiffs – which, as stated above, do not address the privilege against self-incrimination – merely follow *Eisentrager*, and are therefore not precedent for the same reasons. There is, however, more than a little irony in Plaintiffs' reliance on the Guantanamo Bay cases to argue that Mr. Symonds should not be entitled to the privilege against self-incrimination, given that

The other Supreme Court cases relied upon by Plaintiffs are similarly off the mark. The *Zadvydas* Court stated only that "*certain*" constitutional protections are not available outside of the United States. *Zadvydas*, 533 U.S. at 693. Given that the privilege against self-incrimination – which was not discussed in *Zadvydas* – is to be broadly construed, there is no reason to believe that the Fifth Amendment privilege would be one of the "certain constitutional protections" referred to by the Court. Moreover, *Zadvydas* addressed an immigration law issue, and the Court specifically noted that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs *throughout immigration law*." *Id.* at 693. Again, it is unsurprising that, for immigration purposes, the Court has been unwilling to extend constitutional due process rights to all aliens outside United States territories – an expansion that could have profound ramifications, given that it could theoretically provide the average visa applicant with all of the rights afforded under the Due Process Clause, including, *inter alia*, notice, an opportunity to be heard, and a decision based upon reliable evidence.

*Verdugo-Urquidez* is also inapposite. As noted above, the *Verdugo-Urquidez* Court specifically stated that the privilege against self-incrimination "is not at issue in this case." *Verdugo-Urquidez*, 494 U.S. at 264. Moreover, the *Verdugo-Urquidez* Court observed that the Fourth Amendment, "by contrast with the Fifth and Sixth Amendments, extends its reach only to 'the people.'" *Id.* at 265. The Court noted that "'the people' seems to have been a term of art employed in select parts of the Constitution" that refers to "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* Thus, the Court reasoned, the purpose of the Fourth Amendment was to "protect the people of the United States against arbitrary action by their own Government," and not "to restrain the actions of the Federal Government against aliens outside of the United States territory." *Id.* at 266. However, as the *Verdugo-Urquidez* Court expressly noted, the Fifth Amendment provides protection to the "person" rather than "the people." *Id.* at 817; *see also Wang v. Reno*, 81 F.3d 808, 817 (9th Cir. 1996) (discussing the *Verdugo-Urquidez* Court's treatment of the

even "unlawful enemy combatants" held in Guantanamo Bay are entitled to the assert a privilege against self-incrimination. *See* 10 U.S.C. § 948r(a) ("No person shall be required to testify against himself at a proceeding of a military commission under this chapter."). Plaintiffs' position, in other words, is that Mr. Symonds, an English third-party witness testifying in a United States civil proceeding, is entitled to *less* protection than an unlawful enemy combatant appearing before a military tribunal in Guantanamo Bay.

difference in language between the Fourth and Fifth Amendments); *United States v. Bin Laden*, 132 F. Supp. 2d 168, 183 (S.D.N.Y. 2001) ("The crucial phrase is 'no person' and it neither denotes nor connotes any limitation in scope, in marked contrast to the use of 'the people' in most of the other Amendments contained within the Bill of Rights."). Because the *Verdugo-Urquidez* Court addressed solely the Fourth Amendment, it is inapposite to the issue presented here.

The case before the Court is neither an enemy combatant case, nor an immigration case, nor a Fourth Amendment case. The question, instead, is whether the Fifth Amendment privilege against self-incrimination applies in *this* context, where a foreign national is testifying in a United States judicial proceeding and facing potential prosecution under a federal criminal statute that expressly applies extraterritorially.

> ### 3. The Only Court to Decide the Issue Presented in this Case Upheld the Fifth Amendment Privilege Claim by a British Subject Subpoenaed to Testify on British Soil

In *Westinghouse*, the only case to decide the issue before this Court – namely, whether a British subject on British soil testifying in a Hague Evidence Convention proceeding is entitled to invoke the Fifth Amendment privilege against self-incrimination – the district court held that the witnesses were entitled to the protections afforded by the Fifth Amendment. This Court should follow *Westinghouse* in the case at bar.

As an initial matter, it is clear that constitutional protections *do* apply to foreign persons who are subject to the potential jurisdiction of United States courts. For example, foreign corporations are entitled to assert protections set forth by the Due Process Clause. *See*, *e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-15 (1984) (applying Due Process Clause's "minimum contacts" test to Colombian company); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) ("there has been no question in this country of excepting foreign nationals from the protection of our Due Process Clause."). The First Amendment has been held to preclude judicial inquiry into the internal affairs and doctrine of the Serbian Orthodox Church in Yugoslavia. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976). In addition, the Ninth Circuit has held, in cases involving foreign nationals, that the Due Process Clause limits Congress's ability to extend federal criminal statutes extraterritorially. *See United States v. Davis*, 905 F.2d 245, 248 (9th Cir. 1990).

As a result, in situations where an Article III court is asserting jurisdiction over a foreign national,

rather than – as in the enemy combatant and immigration context – where an alien is attempting to invoke the jurisdiction of the federal courts, courts recognize a foreign national's rights under the Constitution. This case, of course, involves the assertion of the jurisdiction of a United States court over a foreign national. Plaintiffs seek an order "compel[ling]" Mr. Symonds' testimony, and Mr. Symonds faces potential criminal prosecution based upon the extraterritorial assertion of jurisdiction under a federal criminal statute.

Consistent with the principle that Fifth Amendment rights should attach when United States law is being given extraterritorial reach, courts have held that the Fifth Amendment privilege against self-incrimination protects foreign nationals who undergo custodial interrogation overseas. In *United States v. Bin Laden*, 132 F. Supp. 2d 168 (S.D.N.Y. 2001), the court granted the foreign defendants' motion to suppress custodial statements made overseas to United States law enforcement. The court found that the result was dictated by "the Fifth Amendment, overarching notions of fundamental fairness, relevant caselaw, and the policy goals supporting the privilege against self-incrimination." *Id.* at 181; *see also id.* at 181-85; *United States v. Yunis,* 859 F.2d 953, 970-71 (D.C. Cir. 1988) (Mikva, J., concurring specially) (reaching same conclusion). Since *Bin Laden*, the United States government has conceded that *Miranda* warnings must be given to foreign nationals overseas when United States law enforcement officials are involved in the interrogation. *See*, *e.g.*, *United States v. Karake*, 443 F. Supp. 2d 8, 13 n.2 (D.D.C. 2006) ("Not at issue is whether *Miranda* applies to overseas interrogations of non-citizens by American officials, for the government concedes that *Miranda* applies as long as Americans are participating in the interrogation.").

In fact, in the *only* case directly addressing the situation presented in this case, a United States district judge concluded that English witnesses should be entitled to assert the Fifth Amendment privilege against self-incrimination in a deposition taken in England as part of a lawsuit filed in U.S. district court. In *Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.*, [1978] 1 All E.R. 434 (H.L. 1977), utility companies in Richmond, Virginia, sued Westinghouse Electric Corporation ("Westinghouse"), an American corporation, alleging breach of contract for the supply of uranium. *Id.* at 434. When Westinghouse had agreed to the contracts in 1973, the price of uranium was approximately $6 per pound; by 1976, it was $41 per pound. *Id.* at 451. Because Westinghouse failed to provide the uranium, the utilities sued for breach of contract. With billions of dollars at stake, Westinghouse's defense was that the performance of the contracts had been rendered commercially impracticable because of the existence of an international cartel of uranium

producers whose activities had artificially raised the price. *Id.* at 434. In support of its defense, Westinghouse sought documentary evidence and deposition testimony under the Hague Evidence Convention from Rio Tinto Zinc Corp., an alleged member of the international cartel, and its directors and employees. *Id.* All of the individual witnesses, who were foreign nationals residing in England, invoked the Fifth Amendment privilege against self-incrimination. *Id.* at 445.

Confronted with the invocation of the Fifth Amendment privilege, the Honorable Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, "ruled that the privilege was well taken and that the witnesses need answer no questions except to give their names and addresses." *Id.* at 445. As Judge Merhige later explained,[12] "[a]fter extensive argument, *I ruled that although these witnesses were British subjects, subpoenaed to testify on British soil, they had the right to avail themselves of the privilege against self-incrimination under our Constitution*." Robert R. Merhige, *The Westinghouse Uranium Case: Problems Encountered in Seeking Foreign Discovery and Evidence*, 13 INT'L LAW. 19, 24-25 (1979), attached hereto as Exhibit C. Even after receiving a letter from the United States Department of Justice stating that it "would not utilise the testimony of any of the named witnesses as a basis for a criminal prosecution of that witness in the United States[,]" Judge Merhige ruled that the privilege was "still effective" because the United States government had failed to comply with 18 U.S.C. sections 6002 and 6003. *Rio Tinto Zinc Corp.*, [1978] 1 All E.R. at 445-46. As Judge Merhige stated:

> While I concluded that the letter would bar the Department of Justice from using any testimony given by these witnesses in any prosecution of them under our antitrust laws, I also concluded that it was not in conformity with the requirements of our immunity statutes and hence the decision to be made was one based upon discretion as distinguished from mandatory requirements of the immunity statutes. *My view of the matter was that the overriding consideration was to accord the British witnesses every benefit of the doubt, and every opportunity to protect their legal rights.*

Merhige, *supra*, at 25.

Finally, the United States Department of Justice conferred immunity upon all of the individual witnesses pursuant to 18 U.S.C. sections 6002 and 6003. *Rio Tinto Zinc Corp.*, [1978] 1 All E.R. at 446. Once statutory immunity was granted, Judge Merhige entered an order compelling each witness to testify in the terms provided for by section 6002 and 6003. *Id.* at 447. The English courts, however, held that the

---

[12] Although it is reflected in the English case law, Judge Merhige's decision, which appears to have been made orally, was not reported in the Federal Supplement.

Department of Justice's actions constituted an improper attempt under the Hague Evidence Convention to obtain testimony for use in a criminal proceeding and refused to compel the testimony. *Id.* at 447-48.

The *Westinghouse Uranium Case* is directly applicable here. Despite the fact that the witnesses "were British subjects, subpoenaed to testify on British soil," Judge Merhige ruled – in a case closely analogous to the one before the Court – that they were entitled to invoke the Fifth Amendment's privilege against self-incrimination. There is no reason why Mr. Symonds should not receive the same protection.

> **4.     Based Upon the Hague Evidence Convention, International Comity, International Law, and Principles of Fairness, the Court Should Follow *Westinghouse***

There are four compelling reasons why this Court should follow Judge Merhige's decision in the *Westinghouse* case. Judge Merhige's decision that a British subject is entitled to invoke the Fifth Amendment privilege in a U.S. deposition in England is consistent with the Hague Evidence Convention, international comity, international law, and basic principles of fairness.

First, the *Westinghouse* court's decision is consistent with the Hague Evidence Convention. Article 11(b) of the Convention states:

> In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence . . . under the law of the State of origin, and the privilege or duty has been specified in the Letter, or, at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.

Hague Evidence Convention, art. 11(b), 847 U.N.T.S. 231, *reproduced in* 28 U.S.C. following § 1781. Courts and commentators have read article 11(b) broadly. *See*, *e.g.*, *Renfield Corp. v. E. Remy Martin & Co., S.A.*, 98 F.R.D. 442, 444 (D. Del. 1982) (stating that the United States intended the Hague Evidence Convention to "be a privilege creating, rather than privilege limiting, law."); *Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003) ("The person to whom the discovery requests in a Letter of Request are directed has the right to 'refuse to give evidence' to the extent that the person has a privilege under the law of the State of execution or the State of origin."); McClean, *supra*, at 36 ("A witness may refuse to give evidence if he has a privilege or duty to do so either under the law of the requested State or under the law of the requesting State."); 8 FED. PROC. FORMS § 23:234 ("Article 11 means that a witness will be given the benefit not only of privileges recognized by the forum state, but also privileges recognized by the state where the letters are executed . . . . This provision is intended to provide

for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law."). Indeed, United States courts that entertain foreign discovery requests under the Hague Evidence Convention recognize that foreign privileges against self-incrimination apply. *See In re Grand Jury Proceedings, Doe No. 700*, 817 F.2d 1108, 1112 (4th Cir. 1987) (stating that 28 U.S.C. section 1782 "forbids the taking of testimony in violation of any privilege, including the Philippine privilege against self-incrimination."); *Madanes v. Madanes*, 186 F.R.D. 279, 287 (S.D.N.Y. 1999) ("the privilege against self-incrimination as established by Article 18 of the Argentine Constitution shall be recognized in this litigation."). Consistent with the intent and interpretation of article 11(b) of the Hague Evidence Convention, this Court should recognize Mr. Symonds' privilege against self-incrimination as well.

Second, principles of international comity compel recognition of Mr. Symonds' privilege against self-incrimination. In *Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522 (1987), a case addressing the Hague Evidence Convention, the Supreme Court stated as follows:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. . . . Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration. . . . American courts should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations[.]

*Id.* at 546. It is difficult to imagine discovery more "burdensome" or more likely to place a foreign national in a "disadvantageous position" than that sought by Plaintiffs here. If the Fifth Amendment privilege against self-incrimination is not recognized, Mr. Symonds faces potential federal criminal prosecution and a maximum prison sentence of twenty years, even though a similarly situated witness in the United States would be entitled to invoke the most fundamental privilege recognized by law. "[D]ue respect" for the "special problem" caused by Plaintiffs' discovery request requires permitting Mr. Symonds to invoke the Fifth Amendment privilege against self-incrimination. *See* Merhige, *supra*, at 25 ("My view of the matter was that the overriding consideration was to accord the British witnesses every benefit of the doubt, and every opportunity to protect their legal rights."); *see also id.* (stating that statutory immunity should be utilized "[w]hen an American court . . . asks a British court to require its citizens to attend judicial

proceedings of an American court to which, indeed, said British are not litigants[.]"); *cf. In re Roman Catholic Archbishop of Portland in Oregon*, 335 B.R. 815, 835 (Bkrtcy. D. Or. 2005) ("Whether or not the information sought might be relevant or lead to discovery of admissible evidence, and whether or not it is protected by some immunity or privilege, I will not require [the deponent] to answer questions that could potentially cause him to be excommunicated, arrested, or stripped of his authority in the church. That is an undue burden.").[13]

Third, international law supports recognizing Mr. Symonds' right to the privilege.  The privilege against self-incrimination is not unique to the United States or England.  It is, instead, recognized throughout the world, including in the International Covenant on Civil and Political Rights ("ICCPR"), *opened for signature,* Dec. 19, 1966, 999 U.N.T.S. 171, *entered into force* Mar. 23, 1976.[14]  *See* ICCPR, art. 14(3)(g) ("In the determination of any criminal charge against him, everyone shall be entitled to the following minimum guarantees, in full equality: . .  (g) Not to be compelled to testify against himself or to confess guilt.").[15]  Given the recognition of the privilege in the ICCPR, the court should, under the "well-established *Charming Betsy*[16] rule of statutory construction[,]" construe the applicable Congressional legislation – here, 28 U.S.C. section 1781, which provides the Court with statutory authority to issue letters of request – "to avoid violating international law."  *Kim Ho Ma*, 257 F.3d at 1114.  The Court should not request a foreign tribunal to force a witness to testify in a manner that violates applicable international conventions,

---

[13] Moreover, "[i]n the field of international law, where no single sovereign reigns supreme, the Golden Rule takes on added poignancy." *De Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985).  Just as the United States would want its citizens testifying in a Hague Evidence Convention proceeding on United States territory to be entitled to assert the foreign law's privilege against self-incrimination when they faced the possibility of foreign prosecution and a twenty-year sentence, the Court should extend the same protection to Mr. Symonds.

[14] The ICCPR was ratified by the United States in 1992. *See Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1114 (9th Cir. 2001).

[15] The privilege is also recognized in other international conventions. *See*, *e.g.*, Protocol Additional to the Geneva Conventions of 12 August 1949, Relating to the Protection of Victims of Non-International Armed Conflicts, 16 I.L.M. 1442 (1977), art. 75(4)(f) ("No one shall be compelled to testify against himself or to confess guilt[.]").

[16] *Murray v. Schooner Charming Betsy,* 2 Cranch 64 (1804).

particularly given that the United States explicitly declared with respect to the ICCPR that "States Party to the Covenant should wherever possible refrain from imposing any restrictions or limitations on the exercise of the rights recognized and protected by the Covenant[.]"[17]

Finally, recognizing Mr. Symonds' privilege against self-incrimination is the right result. The reason Mr. Symonds is in danger of incriminating himself is because the alleged conduct potentially falls within a federal criminal statute with explicit extraterritorial reach. *See* 18 U.S.C. § 1512(h). The United States should not be able to extend the reach of its substantive criminal law without also affording foreign nationals with the protections of a basic privilege that is "one of the great landmarks in man's struggle to make himself civilized." *Ullmann*, 350 U.S. at 426. As the Supreme Court has stated, "any compulsory discovery by extorting the party's oath . . . to convict him of crime" may "suit the purposes of despotic power," but it is "abhorrent to the instincts of an Englishman" and "abhorrent to the instincts of an American." *Malloy*, 378 U.S. at 9 n.7. There is no reason to exert such "despotic" power here, particularly given that the Fifth Amendment privilege against self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman*, 341 U.S. at 486.

Under Plaintiffs' argument, Mr. Symonds, a citizen of a country where the privilege against self-incrimination first took hold 400 years ago, must be compelled to testify and potentially subject himself to a twenty-year prison sentence in the United States, where the privilege has been enshrined in the Bill of Rights for over 200 years. This absurd result would follow *solely* because Plaintiffs did not specifically enumerate the Fifth Amendment privilege in the Letter of Request (*see* Hague Evidence Convention, art. 11(b)), even though Plaintiffs fully intended to question Mr. Symonds regarding the alleged "deliberate destruction" of evidence in a judicial proceeding. Letter of Request at 9; *see also* Philip W. Amram, *Explanatory Report*, *reprinted in* Hague Conference on Private International Law, Practical Handbook on the Operation of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters at 26 (discussing the "difficult position" of the Hague Evidence Convention deponent because "[t]he moving party in the State of origin naturally wishes the maximum of testimony from the witness and he will not go out of this way to have the issuing authority

---

[17] http://www.ohchr.org/english/countries/ratification/4_1.htm.

include any restrictive privileges which would reduce the scope of the witness's evidence."). Under basic principles of fairness, Plaintiffs' hyper-technical position must be rejected. Mr. Symonds' fundamental privilege against self-incrimination, recognized under United States law and international law, should not be vitiated because Plaintiffs decided not to enumerate it in the Letter of Request.[18] Just as Judge Merhige recognized the privilege in analogous circumstances 30 years ago, so should this Court here.[19]

## V.    MR. SYMONDS HAS NOT WAIVED HIS PRIVILEGE AGAINST SELF-INCRIMINATION

Plaintiffs argue that Mr. Symonds waived his right to assert the privilege against self-incrimination by (1) submitting a declaration and answering two questions about it during his deposition, (2) making representations regarding Softwar to the Court and the parties, and (3) producing documents. None of these arguments has any merit.

The Fifth Amendment privilege is not lightly waived. The Supreme Court teaches that the Fifth Amendment is a fundamental right that "must not be interpreted in a hostile or niggardly spirit," *Ullman*, 350 U.S. at 426, and that courts must "indulge every reasonable presumption against waiver," *Emspak v. United States*, 349 U.S. 190, 198 (1955). Fifth Amendment waivers "should be inferred only in the most compelling of circumstances." *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981). Additionally, the Ninth Circuit recognizes a distinction for Fifth Amendment waiver "between a non-defendant witness called to testify and a defendant who voluntarily takes the stand." *United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980).

### A.    The November 9, 2006 Declaration and the Subsequent Deposition Testimony Do Not Constitute Waiver

It appears Plaintiffs are not contending the November 9 declaration itself constituted a waiver of the privilege; rather it is the declaration in conjunction with the brief answers Mr. Symonds gave during his deposition that Plaintiffs contend was the waiver. Of course, the declaration itself could not constitute

---

[18] As stated above, Plaintiffs did include the privilege in the Letter of Request by stating that the rules of civil procedure apply. However, if Plaintiffs had explicitly enumerated the privilege in the Letter of Request – as Item 16 of the Model Letter of Request, attached to 28 U.S.C. § 1781, allows them to do – Plaintiffs would have been foreclosed at the outset from arguing that the privilege does not apply.

[19] This Court can, of course, simply provide the English courts with a new Letter of Request that specifically enumerates the privilege against self-incrimination in Item 16 or, in the alternative, enter a protective order. Mr. Symonds will file a motion for this relief on Tuesday, April 17, 2007.

waiver. The declaration was made on November 9 and, according to Plaintiffs' theory, the alleged destruction of evidence occurred after November 9. *See* Pltfs' Mtn. at 1-2. It is well-established that a change in circumstances following an earlier statement can justify the later assertion of the Fifth Amendment. *See*, *e.g.*, *In re DG Acquisition Corp.*, 151 F.3d 75, 83 (2d Cir. 1998) ("when time passes and circumstances change between a waiver and a subsequent appearance, the initial waiver may not be applied to the subsequent event."). Given that the alleged illegal activity occurred after the November 9 declaration was allegedly executed, the declaration cannot support a claim of waiver for testimony given in March.

Contrary to Plaintiffs' claims, the declaration and the deposition, taken together, also could not constitute waiver under Ninth Circuit law. During the deposition, Mr. Symonds provided two and a half answers regarding the drafting of the November 9, 2006 declaration, after which he was cut off by his English barrister. *See* Solomon Decl., Exh. K at 10. This does not constitute a waiver by a third-party witness. As the Ninth Circuit has stated:

> Whatever may be the rule with respect to such a "waiver" by a criminal defendant who elects to take the stand in his own behalf, an ordinary witness may "pick the point beyond which he will not go," and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further incriminate him.

*In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974); *see also Seifert*, 648 F.2d at 561 (same); *Matter of Seper*, 705 F.2d 1499, 1501 (9th Cir. 1983) ("in this circuit the witness has considerable latitude in deciding when to stop responding to questions."). Accordingly, under Ninth Circuit law, Mr. Symonds was entitled to "pick the point beyond which he will not go[,]" and that point was after he provided two and a half answers at his deposition.

Additionally, the statements do not constitute a waiver even under the "*Klein*" test cited by Plaintiffs. First, Mr. Symonds' prior statements have not "created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth[.]" *Klein*, 667 F.2d at 287. Mr. Symonds' comments were few: he said a total of ten words before he was instructed by counsel to assert his Fifth Amendment privilege. It is difficult to understand how Plaintiffs can characterize Mr. Symonds' two-and-a-half answers over the course of the entire deposition as creating a "significant likelihood" that the truth at

trial will be "distorted."[20]

Second, *Klein* requires that "the witness had reason to know that his prior statements would be interpreted as waiver of the fifth amendment's privilege against self-incrimination." *Id.* at 287. Under *Klein*, such knowledge may be inferred only when the statement is "incriminating," and *cannot* be inferred where the statement involves matters collateral to the events surrounding the commission of the alleged crime. *Id.* at 288. The alleged crime here is the supposed destruction of evidence sometime *after* the declaration was created. Questions about how a declaration was created *prior to* any purported criminal activity are, at best, collateral to the alleged crime. *See also Starkovich v. United States,* 231 F.2d 411, 412 (9th Cir. 1956) (where answer itself is not incriminating, answer does not constitute waiver).

In addition, Mr. Symonds was represented during the deposition by English counsel who was admittedly unfamiliar with how and when a witness should exercise the Fifth Amendment privilege. *See* Solomon Decl., Exh. I at 30-32 (counsel relying on information recently obtained from U.S. counsel regarding assertion of privilege). Mr. Symonds' barrister allowed him to answer two questions and then promptly interrupted his answer to the third question with an instruction that Mr. Symonds assert his Fifth Amendment privilege. Solomon Decl., Exhibit K at 10. As Plaintiffs' counsel pursued the issue, Mr. Symonds, on the instruction of counsel, repeatedly asserted his Fifth Amendment privilege to the very matters about which he is alleged to have waived the privilege. *See id.* at 10-11, 32-34. Accordingly, there is no support for the notion that Mr. Symonds "had reason to know" that his statements would constitute a waiver – indeed, the opposite is true.

Finally, a witness asserting the Fifth Amendment must "navigate the perilous straits between contempt . . . and waiver of his Fifth Amendment rights." *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 319 (2d Cir. 1979). If the barrister's failure to instruct Mr. Symonds to assert his privilege to the first two questions regarding the declaration could be viewed as a waiver, it was not intentional. Rather, the

---

[20] Moreover, Plaintiffs can seek evidentiary sanctions precluding Defendants from introducing Mr. Symonds' deposition and adverse inferences based upon the alleged destruction of evidence. *See* Letter of Request at 8 (stating that Plaintiffs intend to seek sanctions and adverse inferences). The situation is therefore wholly dissimilar to that in *Klein*, when the witness had already testified *in front of the jury* for the prosecution and then invoked the Fifth Amendment privilege during the defense's cross-examination. *Klein*, 667 F.2d at 288. Here, evidentiary sanctions and adverse inferences can ensure that the finder of fact will not be left with only one side of the facts. *See Klein*, 667 F.2d 288-29.

answer was a "slip," and courts do not find such brief and unintentional statements constitute waiver.  *See Starkovich*, 231 F.2d at 412, n. 2 ("At most, this would be no more than a slip," and therefore no waiver); *see also United States v. Weisman*, 111 F.2d 260, 261 (2d Cir. 1940) (same).  An accidental slip by English counsel inexperienced in the ways of the Fifth Amendment hardly constitutes "the most compelling of circumstances" (*Klein*, 667 F.2d at 288) justifying a finding of waiver.

### B.   Mr. Symonds' Alleged Communications with Defendants' Counsel and Ellison Do Not Constitute Waiver

Plaintiffs next argue that Mr. Symonds communicated with defense counsel and Mr. Ellison about the alleged destruction of evidence, and these communications constitute waiver of the Fifth Amendment privilege.  This argument has no support in fact or law.

Plaintiffs point to a January 14, 2007 letter that Mr. Symonds allegedly wrote to defense counsel, and, based on this letter, argue that "it is clear that Mr. Symonds has generously provided testimony [to defense counsel] about the very subject matter he claims is incriminating . . . ." Pltfs' Mtn. at 19.  A letter is not testimony.  Writing a letter to counsel – not a sworn declaration, not a document to be filed in court, but a letter – has never been held to constitute a waiver of the Fifth Amendment, intentional or otherwise.  *See Klein*, 667 F.2d at 288 (for a witness' prior statements to constitute waiver, they must be "'testimonial,' *meaning that they were voluntarily made under oath in the context of the same judicial proceeding*.").

Additionally, in making this argument, Plaintiffs have confused Mr. Symonds' actions with those of defense counsel.  It was defense counsel, not Mr. Symonds, who made "representations to plaintiffs and the Court[.]" Pltfs' Mtn. at 19.  Defense counsel's decision to share with Plaintiffs' counsel or the Court Mr. Symonds' purported unsworn, out-of-court statements cannot transmogrify those statements into an intentional waiver by Mr. Symonds of his Fifth Amendment privilege in any subsequent court proceeding.[21]

### C.   Mr. Symonds' Production of Documents Does Not Constitute Waiver

Plaintiffs argue that Mr. Symonds production of documents in response to their subpoena constituted a "waiver of any Fifth Amendment right that would attach to the testimonial subject matter of those documents."  Pltfs' Mtn. at 20.  That is not how the law works.

---

[21] Even if these are considered Mr. Symonds' acts, Plaintiffs' waiver theory is precluded under *In re Master Key Litigation* and the other Ninth Circuit cases discussed above.  *See supra* at 22.

Once again, Plaintiffs' argument fails under *In re Master Key Litigation* – even if the prior production could be viewed as testimony, Mr. Symonds was entitled pick the point beyond which he would not go. Moreover, Plaintiffs do not meet the requirements of *Klein*, given that they making no showing that the production was itself incriminating. In addition, unlike in *Klein*, Plaintiffs concede that they have other available remedies, such as exclusion of the evidence or adverse inferences. *See supra* at 23 n.20.

Finally, the production of documents did not constitute a waiver. To the extent there is a testimonial aspect to the production of documents, it is simply that the witness had the documents. *See In re Grand Jury Subpoena*, 383 F.3d 905, 910 (9th Cir. 2004). It is *not* that the witness is vouching for the accuracy of the documents being produced or waiving his Fifth Amendment privilege to what Plaintiffs describe as "the testimonial subject matter of those documents." Pltfs' Mtn. at 20. If that were the case, witnesses with Fifth Amendment concerns could refuse to turn over any documents, even if their existence and location were a foregone conclusion, on the grounds that production would constitute waiver as to any questions concerning their contents. That is most certainly not the law, and therefore Mr. Symonds' production of documents cannot be held to constitute a waiver of the Fifth Amendment to questions about their contents.[22]

## VI.    CONCLUSION

Based upon the foregoing, Plaintiffs' motion to compel should be denied.

Dated: April 13, 2007                                          Respectfully submitted,

                                          _____/s/ Edward W. Swanson_____
                                          EDWARD W. SWANSON
                                          ALEXIS HALLER
                                          SWANSON, McNAMARA & HALLER LLP
                                          Attorneys for MATTHEW SYMONDS

---

[22] The sole case cited by Plaintiffs does not support their argument. In *United States v. Anderson*, 79 F.3d 1522 (9th Cir. 1996), the defendant explicitly waived the privilege in a letter. *See id.* at 1527 ("Here, [the defendant] did not simply fail to assert his privilege; he explicitly stated through counsel that he waived the assertion of his fifth amendment rights.") Moreover, the defendant then attended a deposition and testified, without invoking his Fifth Amendment privilege. *Id.* Under these circumstances, the court had "no difficulty in concluding . . . that [defendant] waived his fifth amendment privilege." *Id.*