LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
VALERIE L. McLAUGHLIN (191916)
GAVIN M. BOWIE (235532)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@lerachlaw.com
dougb@lerachlaw.com
valeriem@lerachlaw.com
gbowie@lerachlaw.com
skaplan@lerachlaw.com
        – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@lerachlaw.com
willowr@lerachlaw.com
moniquew@lerachlaw.com
elig@lerachlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) Master File No. C-01-0988-MJJ |
| | ) CLASS ACTION |
| This Document Relates To: | ) ) REPLY IN SUPPORT OF PLAINTIFFS' ) MOTION TO COMPEL THE TESTIMONY |
| ALL ACTIONS. | ) OF MATTHEW SYMONDS ) |

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II. LEGAL ARGUMENT....................................................................................................2

    A.  Symonds is a Foreign Citizen and Non-U.S. Resident and Has Failed to
        Demonstrate Any Substantial Connection to the United States As
        Required by the U.S. Supreme Court to Invoke Constitutional Rights ..................2

    B.  Symonds Cannot Refuse to Testify Under English Law ........................................8

        1.  Symonds' Deposition Proceeded Under English Rules of Civil
             Procedure, Not the Fed. R. Civ. P................................................................8

        2.  Symonds Has Failed to Meet the Exemption Requirements of
             Section 3 of the 1975 Act........................................................................8

    C.  Symonds Fails to Demonstrate That His Testimony Would Reasonably
        Incriminate Him at Trial in the U.S. And Ignores Testimony that is
        Unrelated to the Destruction of Softwar Evidence ...............................................10

    D.  Symonds Has Waived Any Purported Fifth Amendment Right ...........................12

        1.  Symonds' November 9, 2006 Sworn Declaration and Testimony
             About the Facts Surrounding the Declaration Constitute Waiver ............12

        2.  Symonds' Voluntary Production of Documents and Testimonial
             Evidence Provided to Defendants Knowing That Evidence Would
             Be Used in Sworn Court Filings Constitutes Waiver ...............................14

    E.  Symonds' Invitation to Plaintiffs to Seek Sanctions and Adverse
        Inferences at Trial Does Not Substitute for an Accurate Record..........................15

# TABLE OF AUTHORITIES

**Page**

*Bears Stearns & Co., Inc. v. Wyler*,
    182 F. Supp. 2d 679 (N.D. Ill. 2002) .......................................................5, 6, 11

*Boumediene v. Bush*,
    476 F.3d 98, 2007 U.S. App. LEXIS 3682
    (D.C.C. Feb. 27, 2007).........................................................................................3

*In re Estate of Marcos, Human Rights Litig.*,
    25 F.3d 1467 (9th Cir. 1994) ..............................................................................3

*In re Iraq & Afghanistan Detainees Litigation*,
    Misc. No. 06-0145 (TFH), 2007 U.S. Dist. LEXIS 21853
    (D.D.C. Mar. 27, 2007).......................................................................................3

*In re Master Key Litigation*,
    507 F.2d 292 (9th Cir. 1974) .........................................................................12, 14

*Jifry v. FAA*,
    370 F.3d 1174 (D.C. Cir. 2004) .........................................................................3

*Johnson v. Eisentrager*,
    339 U.S. 763 (1950)........................................................................................2, 3, 5

*Klein v. Harris*,
    667 F.2d 274 (2d Cir. 1981)...........................................................................13, 14

*Mitchell v. United States*,
    526 U.S. 314 (1999)...........................................................................................12

*Nutramax Labs., Inc. v. Twin Labs., Inc.*,
    32 F. Supp. 2d 331 (D. Md. 1999) ....................................................................12

*OSRecovery Inc. v. One Group Int'l*,
    262 F. Supp. 2d 302 ...................................................................................11, 12, 14

*People's Mojahedin Organization of Iran, Petitioner v. United States Dep't of State*,
    182 F.3d 17 (D.C. Cir. 1999)..............................................................................3

*Rio Tinto Zinc Corp. v. Westinghouse Electric Corp*
    [1978] 1 All E.R. 434 (H.L. 1977)......................................................................6

*Rogers v. United States*,
    340 U.S. 367 (1951)....................................................................................12, 13, 15

*United States v. Baboolal*,
    No. 05-CR-215, 2006 U.S. Dist. LEXIS 40645
    (E.D. Wis. June 16, 2006)...................................................................................4

*United States v. Barona*,
    56 F.3d 1087 (9th Cir. 1995) ..............................................................................4

1

2                                                                              **Page**

3   *United States v. Bin Laden*,
        132 F. Supp. 2d 168 (S.D.N.Y. 2001)..............................................................4, 6
4
    *United States v. Neff*,
5       615 F.2d 1235 (9th Cir. 1980) ......................................................................5, 11

6   *United States v. Raven*,
        103 F. Supp. 2d 38 (D. Mass. 2000) .........................................................5, 6, 11
7
    *United States v. Ullah*,
8       No. 04-CR-30A(F), 2005 U.S. Dist. LEXIS 12419
        (W.D.N.Y. Mar. 17, 2005)...................................................................................3
9
    *United States v. Verdugo-Urquidez*,
10      494 U.S. 259 (1990)...............................................................................2, 3, 4, 5

11  *United States v. Vilches-Navarrette*,
        413 F. Supp. 2d 60 (D.C.P.R. 2006) ...............................................................3, 5
12
    *United States v. Zakharov*,
13      468 F.3d 1171 (9th Cir. 2006) ..............................................................................4

14  *United States v. Anderson*,
        79 F.3d 1522 (9th Cir. 1996) ..............................................................................14
15
    *Universal Trading & Investment Co. v.  Kiritchenko*,
16      2006 U.S. Dist. LEXIS 94550
        (N.D. Cal. Dec. 22, 2006) ............................................................................10, 11
17
**STATUTES, RULES AND REGULATIONS**

18

19  18 U.S.C.
        §1512(c) .......................................................................................................11, 12
20
    Evidence (Proceedings in Other Jurisdictions ) Act 1975 ................................... *passim*
21
    Hague Convention of 18 March 1970 on the Taking of Evidence
22      Article 11(b)  ....................................................................................................10

23  Robert R. Merhige, *The Westinghouse Uranium Case: Problems Encountered in Seeking
    Foreign Discovery and Evidence*,
24      13 Int'l Law. 19 (1979) .........................................................................................7

25  Civil Procedure Rule 5.4........................................................................................8
26

27

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY        - iii -
OF MATTHEW SYMONDS - C-01-0988-MJJ

## I.      INTRODUCTION

Symonds' opposition fails to cite a single binding decision to overcome the well-settled principle of law that the Fifth Amendment to the U.S. Constitution, including the right to self incrimination, cannot be invoked by a foreign citizen and non-resident alien outside the sovereign control of the United States without substantial connections to the United States.  Mot. at 9-12. Despite the availability of 216 years of precedent, Symonds relies upon a patchwork of non-binding citations including an opinion issued 30 years ago by the English House of Lords, an article published in a 1979 issue of the journal "International Lawyer," and an unpublished "oral" decision by a district judge in Virginia.  Opp. at 17-21.  Symonds even resorts to invoking the "Golden Rule." *Id.* at 19 n.13.

None of Symonds' tenuous cites allows him to refuse to testify under the Fifth Amendment. He has no substantial connections to the United States and there is no reasonable danger of incrimination.  In fact, many of the questions posed by plaintiffs at Symonds' deposition had nothing to do with the destruction of the Softwar Evidence and could not foreseeably incriminate him.  *See*, Solomon Decl., Ex. 1.[1]  Symonds' opposition fails to even address non-spoliation questions raised by plaintiffs at the deposition.

In any event, even if Symonds was entitled to invoke the Fifth Amendment, and even if he could establish that his testimony posed a reasonable danger of incrimination at trial in the United States, his testimony and conduct in this case constitutes waiver of any Fifth Amendment rights. Since the very beginning of the parties' dispute over the Softwar Evidence, Symonds aligned himself with defendants and his longtime close friend Larry Ellison to prevent plaintiffs from obtaining highly relevant documents and thereby shield them from the Court.  By engaging in secret discussions with counsel for defendants and with Larry Ellison himself, Symonds and defendants have attempted to manufacture a partial, one-sided, and fantastical version of the facts surrounding the destruction of the Softwar Evidence and the statements made by Defendant Ellison about the

---

[1]      "Solomon Decl." refers to the supporting declaration of Mark Solomon submitted herewith.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                          - 1 -

1   issues in this case.  Symonds has generously provided testimonial evidence to defendants and the

2   Court only when seeking to help Ellison and Oracle resist court orders and hide incriminating

3   discovery from plaintiffs.

4       Now that Symonds is being asked to tell a full and unedited version of the truth about

5   Ellison's interviews and the destruction of the Softwar Evidence without the adversarial filter of

6   Oracle's lawyers, Symonds is suddenly silent.  This calculated silence leaves plaintiffs, the Court

7   and the jury with a severely incomplete and intentionally distorted version of the truth about

8   Ellison's involvement in the destruction of Softwar Evidence, and what Ellison said and knew about

9   events at issue during the Class Period, including his $900+ million in stock sales while the economy

10  was imploding and Oracle's missed forecast and problematic 11i product.  The primary question

11  Symonds must answer is: why were the tapes containing highly relevant information inexplicably

12  destroyed at a time when Ellison was engaging in secret discussions with Symonds – while his

13  lawyers were telling the Court he was not?  Symonds refuses to answer and Ellison recalls very little.

14  The Fifth Amendment should not be exploited in this way.  Plaintiffs' motion should be granted.

15  **II.    LEGAL ARGUMENT**

16      **A.    Symonds is a Foreign Citizen and Non-U.S. Resident and Has Failed
            to Demonstrate Any Substantial Connection to the United States As
17          Required by the U.S. Supreme Court to Invoke Constitutional Rights**

18      Despite the existence of over 50 years of U.S. Supreme Court precedent establishing that

19  non-resident aliens without substantial connections to the U.S. have no rights under the Fifth

20  Amendment in any fashion or form, Symonds contends that an exception should be made only for

21  him. *See* Opp. at 5-17.  Symonds apparently believes that when the U.S. Supreme Court stated that

22  "our rejection of extraterritorial application of the ***Fifth Amendment*** was emphatic" they meant to

23  carve out an exception for the privilege against self-incrimination.  *United States v. Verdugo-*

24  *Urquidez*, 494 U.S. 259, 269 (1990) (citing *Johnson v. Eisentrager*, 339 U.S. 763 (1950)).[2]

25  Symonds also apparently believes that when the Ninth Circuit stated that "***the Constitution itself***

---

[2]     Unless otherwise noted, emphasis is added and citations omitted.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                    - 2 -

does not apply to aliens whose claims arise outside the United States," the panel meant to establish an exception for a singular derivative right.  *In re Estate of Marcos, Human Rights Litig.*, 25 F.3d 1467, 1476 n.12 (9th Cir. 1994).

And, although recent decisions have held that "[p]recedent in this court and the Supreme Court holds that the Constitution does not confer rights on aliens without property or presence in the United States," *Boumediene v. Bush*, 476 F.3d 98, No. 05-5062, 2007 U.S. App. LEXIS 3682, at *26 (D.C.C. Feb. 27, 2007), and that "it is considered ***settled law*** that nonresident aliens must be within the sovereign territory of the United States to stake ***any claim*** to the rights secured by the Fifth Amendment," *In re Iraq & Afghanistan Detainees Litigation*, Misc. No. 06-0145 (TFH), 2007 U.S. Dist. LEXIS 21853, at *31 (D.D.C. Mar. 27, 2007), Symonds contends that such precedent should be disregarded.

Contrary to Symonds' contention, the principles espoused in *Eisentrager*, 339 U.S. 763, *Verdugo-Urquidez*, 494 U.S. at 270-71 and their progeny are not "inapposite" to the present case. *Eisentrager* was a Fifth Amendment case, and although the specific finding in *Verdugo-Urquidez* was made in connection with a Fourth Amendment case, it has been adopted and followed by numerous courts over the past decade in deciding issues relating to the reach of ***all*** Constitutional Rights, including the Fifth Amendment.  *See Jifry v. FAA*, 370 F.3d 1174, 1182-83 (D.C. Cir. 2004) (collecting cases) ("[t]he Supreme Court has long held that non-resident aliens who have insufficient contacts with the United States are not entitled to ***Fifth Amendment*** protections.").[3]

---

[3]      *See also United States v. Vilches-Navarrette*, 413 F. Supp. 2d 60, 70-71 (D.C.P.R. 2006) (holding that "[t]he lynchpin of the Supreme Court's holding in *Verdugo-Urquidez* was the fact that the defendant in that case was 'an alien who had no previous significant voluntary connection with the United States . . .'"); *United States v. Ullah*, No. 04-CR-30A(F), 2005 U.S. Dist. LEXIS 12419, at **98-99, 104-105 (W.D.N.Y. Mar. 17, 2005) (citing *Verdugo-Uriquez* and stating, "[s]ignificantly, as the protection afforded by Miranda is primarily based on the Fifth Amendment ***protection against self-incrimination***, it follows that absent the requisite ties to the United States, an alien seeking entry into the United States is not entitled to Miranda protection absent a demonstration of substantial voluntary connections with this county."); *see also People's Mojahedin Organization of Iran, Petitioner v. United States Dep't of State*, 182 F.3d 17 (D.C. Cir. 1999) ("A foreign entity without property or presence in this country has ***no constitutional rights, under the due process clause or otherwise***.  'Aliens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country.'").

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                                    - 3 -

1        Ignoring principles, Symonds contends that "aliens **present** in the United States are entitled

2  to constitutional rights, including the privilege against self-incrimination."  Opp. at 7.  It is difficult

3  to see how such cases help Symonds because he is not present in the U.S. and was deposed in

4  England.  In any event, the U.S. Supreme Court and the Ninth Circuit have held that "aliens receive

5  constitutional protections when they have come within the territory of the United States and

6  ***developed substantial connections with the country***."  *Verdugo-Uriquez*, 494 U.S. at 271.

7  ("Respondent is an alien who has had no previous significant voluntary connection with the United

8  States, so these cases avail him not."); *accord United States v. Zakharov*, 468 F.3d 1171, 1179-80

9  (9th Cir. 2006) (rejecting non-resident alien's claim to Constitutional rights because "there is no

10  suggestion that [defendant] had any substantial connection to this country"); *United States v.*

11  *Barona*, 56 F.3d 1087, 1093 (9th Cir. 1995) (holding that Fourth Amendment protection does not

12  apply to an alien until he "has assumed the complete range of obligations that we impose on the

13  citizenry").[4]

14        Symonds has not established any significant connection to the U.S. that would trigger U.S.

15  Constitutional rights.  Indeed, in a footnote, Symonds states that "[f]or purposes of this brief,

16  undersigned counsel proffers that Symonds has previously been in the United States."  Opp. at 11

17  n.10.  An unsupported statement by counsel that a non-resident alien has, at some unknown point in

18  time, set foot in the U.S. is not sufficient to establish the "substantial connection" required to invoke

19  Constitutional rights.  *See United States v. Baboolal*, No. 05-CR-215, 2006 U.S. Dist. LEXIS 40645,

20  **6-8 (E.D. Wis. June 16, 2006) rejecting non-resident alien's claim to Constitutional rights despite

---

22  [4]    Symonds' citation of *United States v. Bin Laden*, 132 F. Supp. 2d 168 (S.D.N.Y. 2001) is
misplaced.  In *Bin Laden*, the court held that a foreign national may be protected by the Fifth
23  Amendment "**insofar** as he is the ***present subject of a domestic criminal proceeding*** . . . ."  *Id.* at
181.  The court was comfortable extending the right only because it found that "any violation of the
24  privilege against self-incrimination occurs, not at the moment law enforcement officials coerce
statements through custodial interrogation, but when a defendant's involuntary statements are
25  ***actually used against him at an American criminal proceeding***."  *Id.* at 181-82.  Indeed, the court
cited a long history of cases holding that the Fifth Amendment right against self-incrimination does
26  not attach until the evidence is sought to be admitted against the defendant in a criminal case.  *Id.*
Here, as set forth above, Symonds is not currently the subject of any investigation and there are no
27  facts indicating that Symonds is or will be the subject of any criminal prosecution.  Thus, the holding
in *Bin Laden* is not applicable to the facts here.

---

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ           - 4 -

1   the assertion that he "regularly visits" relatives in the United States, once vacationed in the United

2   States and went shopping in New York); *Vilches-Navarrette*, 413 F. Supp. 2d at 70-71 ("an alien's

3   presence within the U.S. is not enough to trigger Fourth Amendment protections").

4          *United States v. Raven*, 103 F. Supp. 2d 38, 39-40 (D. Mass. 2000) is instructive.  In *Raven*,

5   the court held that a citizen and resident of the Netherlands could not invoke Fifth Amendment

6   protections to resist questioning by U.S. officials in Belgium even though the witness was a ***criminal***

7   ***defendant facing imminent trial in the United States***.  Citing both *Eisentrager*, 339 U.S. 763, and

8   *Verdugo-Urquidez*, 494 U.S. 259, the court held that "[w]hen the questioning takes place

9   overseas . . . foreign nationals do not benefit from the protections of the United States Constitution."

10  *Raven*, 103 F. Supp. 2d at 39-40.[5]

11         The holding in *Bears Stearns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679, 680-81 (N.D. Ill.

12  2002) is also instructive.  In *Bear Stearns*, plaintiff investment firm moved to compel documents

13  from a civil defendant and Dutch citizen residing in the Netherlands who refused to produce

14  discovery based on the Fifth Amendment right against self-incrimination.  *Id.*  Noting that the Fifth

15  Amendment may be extended to ***resident*** aliens under certain circumstances, the court found that

16  defendant was not entitled to invoke the Fifth Amendment because he was a Dutch citizen and

17  "[t]here is nothing to suggest that he is a resident alien here . . . ."  *Id.*  Accordingly, the court found

18  that defendants' failure to demonstrate the applicability of the Fifth Amendment was "reason enough

19  to grant plaintiff's motion to compel."   Further, even though there was an ongoing criminal

20  investigation concerning the events alleged in *Bear Stearns*' complaint, the court held that defendant

21  failed to demonstrate that the testimonial aspect of the document production posed a risk of

22  incrimination.  *Id.* at 681-83.

23

24

25  [5]      Notably, in *Raven* the foreign witness' testimony was secured through the use of a "letter
26  rogatory" and the questioning U.S. representatives "obtained the approval" of a Belgian judge before
    proceeding with the questioning.  *Id.* at *40.  Like plaintiffs here, the U.S. representatives in *Raven*
27  followed all applicable rules and procedures under the law of the host country prior to conducting
    the questioning.  *Id.*  The Fifth Amendment claim did not attach.  *Id.*

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                           - 5 -

1    Symonds barely mentions *Raven* and *Bear Stearns*. He attempts to distinguish *Raven* in a

2    footnote by lumping it together with numerous other U.S. Supreme Court and Ninth Circuit cases

3    contending that *Raven* involved the "Fifth and Sixth Amendment right to counsel." Opp. at 10, n. 9.

4    That misses the import of these cases entirely.  *Raven*, and numerous cases before and after it,

5    followed the well-established principle that non-resident foreign nationals overseas "do not benefit

6    from the protections of the **United States Constitution**," period.  *Raven*, 103 F. Supp. 2d at 39.

7    Plaintiffs fail to see how Symonds can hope to invoke a particular derivative right in the Fifth

8    Amendment when he is not entitled to invoke **any** Constitutional rights, including the Fifth

9    Amendment itself.[6]

10   Symonds relies heavily upon an unpublished non-binding journal article discussing a 30-year

11   old breach of contract/anti-trust case from the District of Virginia.  Opp. at 15; *Rio Tinto Zinc Corp.*

12   *v. Westinghouse Electric Corp.*, [1978] 1 All E.R. 434 (H.L. 1977) (Opp., Ex. B).  As an initial

13   matter, there does not appear to be any written decision by the Virginia Judge presiding over the

14   case.  Thus, the precedential value, if any, is minimal.  See Opp. at 16 (". . . Judge Merhige's

15   decision, which appears to have been made orally, was not reported in the Federal Supplement.").

16   That Symonds seeks refuge in this secondary source demonstrates the weakness in his position.

17   Even without a written decision, it is clear that *Westinghouse* arose under very different

18   circumstances and is distinguishable from the facts here.  In *Westinghouse*, the purpose of the

19   depositions sought by plaintiff in England was to elicit testimony about violations of U.S. anti-trust

20   laws and alleged price fixing by an "international cartel of uranium producers," including an English

21   company.  1 All E.R. at 434.  Judge Merhige prefaced his decision by stating that "[i]t should be

22   pointed out that at this same time a federal grand jury was sitting in the District of Columbia

23

24   [6]  Symonds attempts to distinguish *Bear Stearns*, 182 F. Supp. 2d at 680, by stating that the
25   witness in that case was a "defendant" rather than a third-party.  This fact lends support to plaintiffs'
     position.  Indeed, the danger of incrimination is much greater for a party-defendant during an
26   ongoing criminal investigation than it is for a third party who has demonstrated no facts indicating
     the reasonable possibility of incrimination.  Notably, the court in *Bear Stearns* declined to follow the
27   holding of *Bin Laden*, 132 F. Supp. 2d 168, for the same reasons articulated by plaintiffs in *supra*,
     n.4.  *See Bear Stearns*, 182 F. Supp. 2d at 681.

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                           - 6 -

1    investigating the possibility of anti-trust violations by uranium producers." Article at 25.[7] Thus, at

2    the time of the Fifth Amendment invocations by English witnesses in *Westinghouse*, the likelihood

3    of incrimination was extremely high.

4            Another crucial fact that distinguishes *Westinghouse* from the present case is that the English

5    witnesses in that case vigorously disputed the letters rogatory issued by the U.S. Courts before an

6    order was executed by the English courts.  Article at 22 (". . . counsel for the witnesses opposed the

7    taking of testimony under the letters rogatory on a number of grounds. . . ." including "that in no

8    event should the witnesses be required to testify because of their rights to privilege under the Fifth

9    Amendment of the [U.S. Constitution] and English Law . . . .").  Further, once the English courts

10   issued an order "giving effect to the letters rogatory" the witnesses "applied to have the order set

11   aside."  1 All ER 435.  It also appears that the witnesses properly complied with the Evidence

12   (Proceedings in Other Jurisdictions) Act of 1975 ("1975 Act"), Opp., Ex. A, by seeking to include a

13   supporting "statement contained in the request" under Section 3(2)(a), which triggered the

14   exemption in Section 3(1)(b).  1 All E.R. at 436 (*see* detailed analysis of this issue in Section B.1.,

15   immediately below).

16           In other words, unlike Symonds here, the witnesses in *Westinghouse* properly followed the

17   procedural mechanisms provided under the 1975 Act and satisfied the requirements for seeking an

18   exemption from the English order.  Given these unique facts and the high likelihood of incrimination

19   under a then-current grand jury investigation (which threatened British commercial sovereignty if

20   testimony was compelled), the *Westinghouse* case is inapposite to the facts here.  Further, the fact

21   that Symonds relies upon a 30-year old "oral" decision and cannot cite any binding precedent since

22   the adoption of the Bill of Rights in 1791, speaks for itself.

23

24

25

26   _____

27   [7]      "Article" refers to Robert R. Merhige, *The Westinghouse Uranium Case: Problems Encountered in Seeking Foreign Discovery and Evidence*, 13 Int'l Law. 19 (1979) (Opp., Ex. C).

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                              - 7 -

1

### B.   Symonds Cannot Refuse to Testify Under English Law

2

#### 1.   Symonds' Deposition Proceeded Under English Rules of Civil Procedure, Not the Fed. R. Civ. P.

3

4

Symonds asserts that he is entitled to Fifth Amendment protections because the Letter

5

Request issued here referenced the "Federal Rules of Civil Procedure."   Opp. at 8-9.

6

Notwithstanding that reference, however, the deposition did not proceed under the U.S. rules.  The

7

entire proceeding was conducted by an English Court Examiner appointed by the English Courts,

8

pursuant to an order issued by the High Court of Justice in the UK, under the English Civil

9

Procedure Rules ("CPR") and the 1975 Act.  Mot., Ex. H ("March 2, 2007 Order").

10

Indeed, the March 2, 2007 Order governing Symonds' deposition did not once mention the

11

Federal Rules of Civil Procedure.  The Order expressly stated that the deposition and document

12

production were subject to Section 2(2)(b) & (c) of the 1975 Act and Rule 5.4 of the CPR.  *See* Mot.,

13

Ex. H at ¶¶3, 6.  The March 2, 2007 Order also included rights of appeal under English law.  *Id.* at ¶9

14

("Any person affected by this order may apply to set aside or vary [the] order . . . .").

15

Symonds never once made any attempt to "set aside or vary" the March 2, 2007 Order, as he

16

was entitled to do (and as the witnesses in *Westinghouse* did).  Thus, in accordance with the March

17

2, 2007 Order, the Symonds' deposition proceeded and was governed exclusively by the rules and

18

laws of England.

19

#### 2.   Symonds Has Failed to Meet the Exemption Requirements of Section 3 of the 1975 Act

20

During the March 19, 2007 deposition, counsel for Symonds conceded that English law does

21

not afford protections against self-incrimination for crimes committed under U.S. statutes.  ██████

22

████████████████████████████████████████████████████

23

████████████████████████████████████████████████████

24

████████████████████████████████████████████████████

25

████████████████████████████████████████████████████

26

██████████████████████████████████████

27

Given Symonds' lack of available self-incrimination protections for foreign crimes under

28

English law, he attempts to utilize the procedures under the 1975 Act, which purportedly establish an

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                              - 8 -

exemption from British orders issued pursuant to letter requests from foreign jurisdictions.  Opp., Ex. A.  Section (3)(1) provides the exemption in pertinent part as follows:

> 3. – (1)  A person shall not be compelled by virtue of an order under Section 2 above to give any evidence which he could not be compelled to give—
>
> > (a) in civil proceedings in the part of the United Kingdom in which the court that made the order exercises jurisdiction; or
> >
> > (b) **subject to subsection (2) below**, in civil proceedings in the country or territory in which the requesting court exercises jurisdiction.

As Symonds acknowledges (in a footnote), the exemption under Section (3)(1)(b) "shall not apply" unless a witness satisfies two requirements set forth in Section 3(2).  That subsection states as follows:

> Subsection (1)(b) **shall not apply unless** the claim of the person in question to be exempt from giving the evidence is either—
>
> (a) **supported by a statement contained in the request** (whether it is so supported unconditionally or subject to conditions that are fulfilled); or
>
> (b) **conceded by the applicant for the order**;
>
> and where such a claim made by any person is not supported or conceded as aforesaid he may (subject to the other provision of this section) be required to give the evidence to which the claim relates but that evidence shall not be transmitted to the requesting court if that court, on the matter being referred to it, upholds the claim.

Symonds has failed to satisfy a claim for exemption under Section 3(1)(b) of the 1975 Act. First, the Court Examiner expressly found that Symonds' claim for exemption was not ███████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████[8]

---

[8]      Symonds had numerous opportunities to seek to amend or set aside the Letter Request to include a supporting "statement contained in the request" as required under Section 3(2)(a).  He failed to do so.  In fact, Symonds and plaintiffs' counsel had extensive discussions and lengthy correspondence about the terms and parameters of the deposition.  Mot., Ex. I.  The Order of the Royal Courts was amended pursuant to those discussions at the behest of Symonds.  *Id.*, Ex. H. During those discussions, meetings and correspondence, Symonds did not **once** mention the Fifth

1   The Court Examiner also acknowledged that Symonds' claim of exemption was not

2   "conceded by the applicant for the order" under Section (3)(2)(b). Indeed, plaintiffs did not and do

3   not concede Symonds' claim. Plaintiffs argued that the Court Examiner should exercise his

4   discretion to compel Symonds to testify, seal the transcript, and preclude the transmission of the

5   evidence to the U.S. until this Court decides the issue, as expressly contemplated in Section 3(2).

6   Mot., Ex. J at 24-26. Although the Court Examiner ultimately adopted a slightly different approach

7   under Section 3(2) that allows for submission of the dispute directly to this Court to decide the Fifth

8   Amendment issue under U.S. law, this decision was premised on his earlier finding that Symonds

9   had failed to satisfy the requirements under Section 3(2)(a) and (b) of the 1975 Act. *Id*.

10   Thus, Symonds' contention that the issue is whether the Fifth Amendment would attach "*if*

11   he were testifying in the United States*" is irrelevant because he has failed to meet the two prongs of

12   Section 3(2)(a) and (b), and does not have U.S. constitutional rights. The inquiry at issue here is

13   simply whether Symonds, a non-U.S. resident alien with no connections to the U.S., is entitled to

14   invoke the Fifth Amendment at a deposition in England, proceeding under U.K. law. He is not.[9]

15   **C.    Symonds Fails to Demonstrate That His Testimony Would**
16   **Reasonably Incriminate Him at Trial in the U.S. And Ignores**
       **Testimony that is Unrelated to the Destruction of Softwar Evidence**

17   One major fundamental flaw in Symonds' opposition brief is that he attempts to label his

18   entire deposition as "incriminating" without distinguishing between (a) his testimony concerning the

19   destruction of Softwar Evidence and (b) his testimony concerning other facts having nothing to do

20   with document destruction. This is a fatal omission because "[i]f the incriminatory nature of the

21   questions is not readily apparent, [the party asserting the privilege] bears the burden to show 'a

22   credible basis for invoking the Fifth Amendment.'" *See Universal Trading & Investment Co. v.*

23   _____

24   Amendment. Thus, there can be no argument that Symonds included or even implied any "statement
     contained in the request" under Section 3(2)(a).

25   [9]    Symonds' reliance on Article 11(b) of the Hague Convention and other international
26   authorities is a red herring. The 1975 Act already incorporates Article 11(b) into its statutory
     scheme by virtue of the exemption provision under Section 3(1)(b). The language of the two parallel
27   provisions are virtually identical in substance. *Compare* Opp., Ex. A at 2 *with* Opp. at 17.
     Symonds' other "international" authorities and covenants do not trump U.S. or English law.

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                    - 10 -

1  *Kiritchenko*, No. C-99-3073 MMC(EDL), 2006 U.S. Dist. LEXIS 94550, *9 (N.D. Cal. Dec. 22,

2  2006) (citing *OSRecovery Inc. v. One Group Int'l*, 262 F. Supp. 2d 302, 307 and n.23 (S.D.N.Y.

3  2003)).

4       At the Symonds deposition, plaintiffs asked many relevant questions that did not touch upon

5  the destruction of the Softwar Evidence. Solomon Decl., Ex. 1. In fact, many of the questions posed

6  by plaintiffs sought facts and information concerning conversations with Larry Ellison that occurred

7  ***before*** the destruction of the Softwar tapes. *Id.* Symonds' opposition brief fails to demonstrate that

8  the questions posed in Ex. 1 would elicit incriminating testimony or evidence under 18 U.S.C.

9  1512(c) or otherwise. Accordingly, he must be compelled to answer, irrespective of whether his

10 other testimony regarding the destruction of the Softwar Evidence is found to implicate the Fifth

11 Amendment. *See United States v. Neff*, 615 F.2d 1235, 1240 (9th Cir. 1980) ("If the trial judge

12 decides from this examination of the questions, their setting, and the peculiarities of the case, that no

13 threat of self-incrimination exists, it then becomes incumbent 'upon the defendant to show that

14 answers to (the questions) might criminate him.'"). As one court stated:

15          [The Witness'] ritualistic assertion of the Fifth Amendment does not justify his
            refusal to answer apparently innocuous questions, and no further elaboration has
16          been offered in response to plaintiffs' application. Indeed, [the Witness'] behavior
            suggests an unprincipled and ill-advised effort to frustrate lawful discovery.

17
   *OSRecovery*, 262 F. Supp. 2d 306-307.
18

19      Additionally, Symonds has failed to demonstrate that his testimony surrounding the

20 destruction of the Softwar Evidence raises the reasonable possibility of incrimination. The fact that

21 a U.S. statute may be applied extraterritorially does not mean that testimony overseas raises the

22 possibility of incrimination nor does it demonstrate that Symonds could legally be extradited to the

23 U.S. Indeed, even when foreign witnesses have already been ***indicted and charged*** with U.S.

24 crimes, courts have held they are not entitled to invoke the Fifth Amendment to refuse to testify

25 overseas. *Raven*, 103 F. Supp. 2d at 39 (rejecting claim to Fifth Amendment even though witness

26 had already been charged with U.S. crimes and was facing trial); *see also, Bears Stearns*, 182 F.

27 Supp. 2d at 680-81 (foreign national not entitled to Fifth Amendment right against self-incrimination

28 overseas despite ongoing criminal investigation in the U.S.). Accordingly, Symonds' speculative

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                                          - 11 -

1    belief that there is an imaginary possibility of incrimination by the U.S. government under 18 U.S.C.

2    1512(c) if he testifies in England is not sufficient to trigger Fifth Amendment rights (assuming he

3    has them).

4              **D.       Symonds Has Waived Any Purported Fifth Amendment Right**

5              Plaintiffs recognize that waiver of the Fifth Amendment right against self-incrimination is

6    not taken lightly.  Here, however, a finding of waiver is particularly warranted given Symonds one-

7    sided use of the Fifth Amendment as both a "shield and a sword" to help his friend and collaborator

8    Larry Ellison distort the truth about the Softwar Evidence.  *See OSRecovery*, 262 F. Supp. 2d at 307

9    ("An individual may not use the Fifth Amendment as both a shield and a sword, answering some

10   questions related to a particular topic in a given proceeding and avoiding others, as dictated by whim

11   or self-interest.") (*citing, e.g.*, *Mitchell v. United States*, 526 U.S. 314, 321 (1999)).

12             **1.       Symonds' November 9, 2006 Sworn Declaration and**
                          **Testimony About the Facts Surrounding the Declaration**
13                        **Constitute Waiver**

14             Contrary to Symonds' contention, plaintiffs' motion expressly asserted that the November 9,

15   2006 Declaration constituted waiver in and of itself.  Opp. at 21.  Plaintiffs cited authority holding

16   that the filing of a sworn affidavit or declaration constituted waiver of the subject matter of those

17   testimonial documents.  Mot. at 16-17.; *OSRecovery*, 262 F. Supp. 2d at 310; *Nutramax Labs., Inc. v.*

18   *Twin Labs., Inc.*, 32 F. Supp. 2d 331 (D. Md. 1999).

19             Symonds claims that because "the alleged illegal activity occurred after the November 9,

20   [2006] declaration was allegedly executed, the declaration cannot support a claims of waiver for

21   testimony given in March [2007]."  Opp. at 22.  In other words, on one hand, Symonds is claiming

22   that his testimony surrounding the November 9 Declaration is incriminating; on the other hand, he is

23   asserting that the testimony cannot possibly be incriminating because the Declaration was executed

24   before the destruction of the Softwar Evidence.  Symonds cannot have it both ways.

25             Symonds has already testified first that ███████████████████████████████

26   ███████████████████████.  Additional questions about the circumstances surrounding the drafting

27   of the declaration do not pose any danger of "further incrimination" under the principles articulated

28   in *In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974).  *See also Rogers v. United States*,

340 U.S. 367, 372-73 (1951) ("Since the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the privilege where response to the specific question in issue here would not further incriminate her."); *Klein v. Harris*, 667 F.2d 274, 287-88 (2d Cir. 1981) ("It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it . . . .").

Symonds' other contentions in support of a finding of no waiver are that his voluntary testimony concerning the November 9 Declaration was a "slip" of the tongue at a time when his English Counsel was "admittedly unfamiliar" with the Fifth Amendment.  Opp. at 22-23.  A quick reading of the transcript, however, reveals that the testimony was quite intentional:



Mot., Ex. K at 10.  This is hardly a "slip" as Symonds contends.  It was a knowing intelligent waiver of any Fifth Amendment rights after conferring with counsel off the record.  Symonds carefully attempted to construct a specific record that it was he, not defendants, who drafted the declaration, without disclosing the details.  *See Rogers*, 340 U.S. at 373 ("Disclosure of a fact waives the privilege as to its details.").  In fact, when pressed by plaintiffs' counsel about whether he actually drafted the declaration, as opposed to merely signing it, Symonds testified,

1  ████████████████████████. Mot., Ex. K at 10.  This is a transparent attempt to use the Fifth

2  Amendment as both a shield and sword in order to "furnish one side with what may be false

3  evidence and deprive the other of any means of detecting the imposition."  *Klein* 667 F.2d at 287-88;

4  *see also*, *OSRecovery*, 262 F. Supp. 2d 307-308.

5          **2.      Symonds' Voluntary Production of Documents and
                      Testimonial Evidence Provided to Defendants Knowing That
6                    Evidence Would Be Used in Sworn Court Filings Constitutes
                      Waiver**

7

8          Symonds' deliberate conduct and communications with Ellison and Oracle's lawyers

9  combined with his production of documents operates as waiver of any alleged Fifth Amendment

10  rights.  First, Symonds' selective production of interview transcripts without asserting the Fifth

11  Amendment waives any incriminating aspect to further testimony about the subject matter of the

12  transcripts.  *See, e.g., United States v. Anderson*, 79 F.3d 1522, 1527 (9th Cir. 1996) (production of

13  documents waived Fifth Amendment privilege).  In any event, as set forth *supra*, testimony

14  concerning what Ellison said during the interviews reflected in the transcribed documents is not

15  incriminating at all because those interviews occurred long before the evidence was destroyed.

16  Further, additional testimony regarding the interviews would not "further" incriminate Symonds.

17  *See Master Key*, 507 F.2d at 294.

18          Symonds' actions and communications also had a testimonial aspect because defendants

19  created Symonds' representations (apparently without objection from Symonds) in sworn filings to

20  the Court with the specific intent to thwart plaintiffs from discovering the truth about the Softwar

21  Evidence and to distort the record.  Mot., Exs. B, G, N, O.  Indeed, contrary to Defendants' previous

22  representations to the Court that Ellison and defendants had "no personal knowledge" of the issues

23  surrounding the Softwar Evidence and only spoke to Symonds "through" Oracle's counsel, Ellison

24  recently testified on March 30, 2007 that ████████████████████████████

25  ████████████████████████████████████████

26  ████████████████████████████████████████

27  ██████████████████████████████████

28

Because defendants claim that much of their information was obtained from Symonds voluntarily, without any objection raised under the Fifth Amendment, it is essential that plaintiffs be given an opportunity to test the veracity of defendants' court filings and Ellison's sworn testimony. *Rogers*, 340 U.S. at 373.

### E. Symonds' Invitation to Plaintiffs to Seek Sanctions and Adverse Inferences at Trial Does Not Substitute for an Accurate Record

Symonds contends plaintiffs can cure the distortions in the record before the jury by seeking evidentiary sanctions and adverse inferences at trial. Opp. at 23 n. 20 ("Here, evidentiary sanctions and adverse inferences can ensure that the finder of fact will not be left with only one side of the facts."). While plaintiffs intend to seek such sanctions and adverse inferences at the appropriate time, the prospect of such relief is not a substitute for an accurate and complete record and the recovery of uniquely relevant evidence ordered by the Special Master. Indeed, Larry Ellison has already admitted that ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████. The Softwar Evidence contains contemporaneous interviews of Larry Ellison speaking on the record about his insider selling, 11i, the economy, Oracle's forecasts, Ellison's access to information and e-mail usage and nearly every issue raised in plaintiffs' Complaint. Plaintiffs are entitled to this uniquely relevant evidence at Summary Judgment, as well as to frame the issues for trial. Symonds' suggestion to seek sanctions does not negate the burden he must overcome to refuse to testify.[10]

DATED:  April 20, 2007                                   Respectfully submitted,

                                                        s/Mark Solomon
                                                        MARK SOLOMON

---

[10] As plaintiffs explained in their Motion, Symonds has also refused to produce documents related to the Softwar Evidence, including communications between Symonds, Oracle's counsel, Larry Ellison and any other third parties.  Symonds has failed to even address the document production aspect of plaintiffs' motion. Therefore, he has waived the right to oppose and must produce the documents set forth in the March 2, 2007 Order issued by the English Court.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY OF MATTHEW SYMONDS - C-01-0988-MJJ                                    - 15 -

1

2

3                                 LERACH COUGHLIN STOIA GELLER
                                     RUDMAN & ROBBINS LLP

4                                 MARK SOLOMON
                                DOUGLAS R. BRITTON

5                                 VALERIE L. McLAUGHLIN
                                GAVIN M. BOWIE

6                                 STACEY M. KAPLAN
                                655 West Broadway, Suite 1900

7                                 San Diego, CA  92101
                                Telephone: 619/231-1058

8                                 619/231-7423 (fax)

9                                 LERACH COUGHLIN STOIA GELLER
                                RUDMAN & ROBBINS LLP

10                                SHAWN A. WILLIAMS
                               WILLOW E. RADCLIFFE

11                                MONIQUE C. WINKLER
                               ELI R. GREENSTEIN

12                                100 Pine Street, Suite 2600
                               San Francisco, CA  94111

13                                Telephone: 415/288-4545
                               415/288-4534 (fax)

14                                Lead Counsel for Plaintiffs

15 T:\CasesSF\Oracle3\BRF00041148-REDACTED.doc

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY
OF MATTHEW SYMONDS - C-01-0988-MJJ                          - 16 -

| | |
|---|---|
| 1 | <div align="center">CERTIFICATE OF SERVICE</div> |
| 2 | I hereby certify that on April 20, 2007, I electronically filed the foregoing with the Clerk of |
| 3 | the Court using the CM/ECF system which will send notification of such filing to the e-mail |
| 4 | addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have |
| 5 | mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF |
| 6 | participants indicated on the attached Manual Notice List. |
| 7 | I further certify that I caused this document to be forwarded to the following designated |
| 8 | Internet site at:  http://securities.lerachlaw.com/. |
| 9 | I certify under penalty of perjury under the laws of the United States of America that the |
| 10 | foregoing is true and correct.  Executed on April 20, 2007. |
| 11 | |
| 12 | s/ Mark Solomon<br>MARK SOLOMON |
| 13 | |
| 14 | LERACH COUGHLIN STOIA GELLER<br>RUDMAN & ROBBINS LLP |
| 15 | 655 West Broadway, Suite 1900<br>San Diego, CA  92101-3301 |
| 16 | Telephone:  619/231-1058<br>619/231-7423 (fax) |
| 17 | |
| 18 | E-mail:MarkS@lerachlaw.com |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylawoffice.com

- **Eric J. Belfi**
  ebelfi@labaton.com ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com cheryl.grant@pillsburylaw.com

- **Stacey Marie Kaplan**
  SKaplan@lerachlaw.com

- **Reed R. Kathrein**
  reed@hbsslaw.com nancyq@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com

- **Nicole Lavallee**
  nlavallee@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com swalker@be-law.com

- **Valerie McLaughlin**
  valeriem@lerachlaw.com kellyb@lerachlaw.com

- **Brian P Murray**

bmurray@rabinlaw.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Willow E. Radcliffe**
  willowr@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Darren J. Robbins**

- **Sanna Rachel Singer**
  ssinger@sideman.com mthomas@sideman.com

- **Mark Solomon**
  marks@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com;aelishb@lerachlaw.com;moniquew@lerachla

- **Jamie Lynne Wine**
  jamie.wine@lw.com karen.kelly@lw.com

- **Monique Winkler**
  MoniqueW@lerachlaw.com
  E_File_SF@lerachlaw.com;MoniqueW@lerachlaw.com;shawnw@lerachlaw.com;travisd@lerachl

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Dorian Daley
500 Oracle Parkway
Redwood City, CA 94065

Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338
```