United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   NURSING HOME PENSION FUND ET AL,              No. C01-00988 MJJ

12              Plaintiff,                          **ORDER REGARDING PLAINTIFFS'**
                                                    **MOTION TO COMPEL TESTIMONY**
13      v.                                          **AND DETERMINE THE**
                                                    **APPLICABILITY OF THE FIFTH**
14   ORACLE CORPORATION ET AL,                      **AMENDMENT RIGHT AGAINST SELF-**
                                                    **INCRIMINATION TO FOREIGN**
15              Defendant.                          **CITIZEN AND NON-U.S. RESIDENT**
     _____/              **MATTHEW SYMONDS**
16

17                                  **INTRODUCTION**

18          Before the Court is Plaintiff's Motion To Compel Testimony And Determine The

19   Applicability Of The Fifth Amendment Right Against Self-Incrimination To Foreign Citizen And

20   Non-U.S. Resident Matthew Symonds.  (Docket No. 752).

21          For the following reasons, the Court **DENIES** the Motion in most respects, but will schedule

22   an *in camera* hearing to resolve privilege issues with respect to certain questions that Symonds

23   refused to answer in his deposition, as identified below.

24                                **FACTUAL BACKGROUND**

25          Third-party Matthew Symonds, an author and editor with *The Economist*, conducted at least

26   135 hours of recorded interviews between March 2001 and August 2002 with Defendant Larry

27   Ellison in preparation for a book titled *Softwar: An Intimate Portrait of Larry Ellison and Oracle*

28   ("*Softwar*").

United States District Court

For the Northern District of California

In fall 2006, Plaintiffs moved to compel Defendants to produce documents concerning and created in preparation for Softwar. In the course of briefing on that motion, Symonds signed a declaration in support of Defendants' Opposition to Plaintiffs' Motion to Compel. The only paragraph of the declaration that addressed the existence of any tapes or transcripts of Symonds' interviews with Ellison stated as follows:

> The materials that I created in the course of researching and writing SOFTWAR, including any interview notes, transcripts or digital recording files, are my sole property, to which neither Mr. Ellison nor anyone else has any right of access. I have never provided Mr. Ellison with access to or copies of any interview notes, transcripts or digital recording files that I created in the course of researching and writing SOFTWAR.

(Solomon Decl., Exh. A at ¶ 3.) On January 2, 2007, Special Master Infante issued an Order finding that, although such materials were in the physical possession of Symonds, Ellison had legal control of them pursuant to a contract between Symonds and Ellison. (Docket No. 620.) As a result, Special Master Infante ordered Defendants to produce copies of "any and all tapes recordings and/or transcripts of interviews with Ellison created in preparation of the book [*Softwar*]." *Id.*[1]

A series of communications that Symonds had with Defendants' counsel after the motion to compel was granted raised questions about whether Symonds may have discarded or destroyed the audio recordings and transcripts after learning that Plaintiffs were seeking production of such materials.[2] Conversations that Symonds had with Defendants' counsel (which were subsequently described in letters sent from Defendants' counsel to Plaintiffs' counsel), and a letter that Symonds sent to Defendants' counsel, offer inconsistent accounts by Symonds of what happened to these *Softwar* materials. Though the details vary, Symonds has apparently represented to Defendants' counsel that responsive tapes and transcripts are no longer in his possession because the laptop computer containing them was discarded by him at some point after learning of Plaintiffs' motion to compel. (Solomon Decl., Exhs. E, F, G.)

---

[1] This Court denied Defendants' motion to reverse that ruling in an April 4, 2007 Order. (Docket No. 783.)

[2] Plaintiffs have expressed concern that Defendants may have also played a role in the alleged destruction of this evidence. The issue of Defendants' role, if any, in the loss of this evidence is not presently before this Court and the Court expresses no view as to whether Defendants had any involvement.

1    Based on Symonds' representations, Plaintiffs brought a motion before Special Master

2 Infante seeking further discovery into the unavailability of the materials ordered produced.  In a

3 January 23, 2007 Order, Special Master Infante ruled:

> Plaintiffs are also granted leave to seek, through the appropriate Hague
> Convention measures, discovery of the materials ordered produced by
> the Order and their unavailability from Matthew Symonds and PC
> World computer store in Brentford, England, each having been
> identified by defendants as possessing knowledge concerning the
> unavailability of the responsive materials.

7 (Docket 648.)

8    On February 1, 2007, Magistrate Judge Spero signed a Request For International Judicial

9 Assistance ("Letter of Request") pursuant to the Hague Convention of 18 March 1970 on the Taking

10 of Evidence Abroad in Civil or Commercial Matters, 847 U.N.T.S. 231.  (Solomon Decl., Exh. M.)

11 The Letter of Request sought the assistance of the courts of the United Kingdom in obtaining

12 documentary and testamentary evidence from Symonds.  Specifically, the Request asked that a

13 United Kingdom judicial authority compel Symonds to appear and be deposed under oath as to his

14 knowledge of "matters described in this Letter of Request and knowledge of all facts discovered

15 regarding the Softwar materials ordered produced by the Court on January 2, 2007 and the

16 whereabouts or destruction of any of those materials."  The Letter of Request also asked the United

17 Kingdom judicial authority to compel Symonds to produce specifically-enumerated documentary

18 evidence: the recordings and transcripts of Symonds' interviews of Ellison, and the computer on

19 which Symonds stored such documents.  The Letter of Request, citing Articles 3(I) and 9 of the

20 Hague Evidence Convention, specified:

> The examinations shall be taken under the Federal Rules of Civil
> Procedure of the United States of America, except to the extent such
> rules are incompatible with the internal laws of the United Kingdom,
> in which case, such laws shall control.

24  (Solomon Decl., Exh. M.)

25    On March 2, 2007, in response to the Letter of Request, the Royal Courts of Justice in the

26 United Kingdom ordered that Symonds' deposition take place in London and that, at the deposition,

27 he produce the laptop in question as well as any of the interview recordings or transcripts on that

28

3

computer.  (Solomon Decl., Exh. H.)

On the first day of Symonds' deposition in London, March 19, 2007, after the witness was sworn in and testified that his name was "Matthew John Symonds", counsel for Symonds stated as follows on the record: "On the advice of counsel, Mr. Symonds will not be answering any further questions.  He will be asserting the privilege not to answer, pursuant to the Fifth Amendment to the U.S. Constitution."  (Solomon Decl., Exh. J. at 3.)  After considerable discussion by the parties and the Court Examiner on the record, the Examiner ordered the deposition adjourned until the next day to permit the parties to research and develop their positions.  (*Id.* at 48-57.)

On March 20, 2007, the deposition reconvened.  Plaintiffs' counsel began by indicating on the record that the parties had arrived at a stipulated approach to resolving the Fifth Amendment issues.  Plaintiffs' counsel stated that the Fifth Amendment issues "are, we have agreed, best considered in writing by the U.S. Court.  That is with the greatest respect to you and to the English court.  We just think they are rights that emanate under U.S. law, for the courts in that jurisdiction to decide it."  (Solomon Decl., Exh. K at 5.)  Plaintiffs' counsel told the Court Examiner that the stipulated approach was "[t]hat you do not exercise your discretion today to make any decision at all under Section 3."  (*Id.*)  Counsel for Symonds confirmed the stipulation: "Can I just say on behalf of Mr. Symonds that this proposal is agreed to.  It seems eminently sensible that the matter should be determined by the U.S. courts..."  (*Id.* at 6-7.)  The Examiner apparently acceded to this approach, indicating that "I am not going to rule on any objection taken."  (*Id.* at 7.)  At the close of the deposition session, counsel described in more detail their stipulation for Plaintiffs to bring a motion to compel further answers from Symonds directly to this Court.  (*Id.* at 45-52.)  The Court Examiner made no further comments regarding this stipulation, other than to indicate: "As requested at the start, what I am going to do is simply to adjourn . . . this examination to a date to be fixed, if any."  (*Id.* at 52.)

During the March 20, 2007 deposition session, the parties also agreed that Plaintiffs would conduct specific questioning of Symonds and, to the extent Symonds believed he was entitled to the Fifth Amendment privilege, he could assert it in response to each question individually.  Mr.

4

**United States District Court**
For the Northern District of California

1    Symonds subsequently refused to answer almost all of the numerous questions put to him throughout

2    the day.  The only substantive answers that he gave were as follows:

3           Q.  And the pending question is: have you ever drafted a declaration for
            submission to a U.S. court in connection with pending proceedings against Oracle

4           corporation and Mr. Ellison and others?

5           A.  ***Yes, I have.***

6           Q.  And when did you do that?

7           A.  ***Early November 2006.***

8           Q.  And did somebody ask you to draft that declaration?

9           A.  On the advice of counsel, I assert the privilege not to answer, pursuant
            to the Fifth Amendment of the U.S. constitution.

10          Q.  Okay.  But your testimony is that you did draft it, as opposed to simply

11          signing it; is that true?

12          A.  ***No.  Well, I signed*** –

13          MR. PARKES: Forgive me.  I am instructing Mr. Symonds to assert his
            privilege.

14
            A.  Okay.  On the advice of counsel, I assert the privilege not to answer,

15          pursuant to the Fifth Amendment of the U.S. constitution.

16   (Solomon Decl., Exh. K. at 10, emphasis added.)

17          Plaintiffs now bring the instant Motion seeking an order compelling Symonds' testimony and

18   asking this Court to determine the applicability of the Fifth Amendment privilege to Symonds.

19                                   **DISCUSSION**

20   **A.    Procedural Posture Of Plaintiffs' Motion.**

21          The Fifth Amendment issues raised by the instant Motion come before this Court in an

22   unusual procedural posture.  Plaintiff's Motion in part, is a traditional discovery motion under

23   Federal Rule of Civil Procedure 37(a), seeking an order compelling third-party witness Symonds to

24   answer certain questions that he refused to answer during his London deposition after invoking a

25   Fifth Amendment self-incrimination privilege.  (Plaintiff's Notice of Motion at 1:2-7.)[3]  However,

26   ───────────────────────

27          [3] The Court considers the question of whether Symonds should be compelled to produce further documents to be
     outside the scope of the present Motion before the Court.  Plaintiffs' Notice of Motion did not seek to compel the production

28   of documents of Symonds, although Plaintiffs do make some references to such relief in their supporting memorandums.

by stipulation, Plaintiffs and Symonds also have apparently agreed to use Plaintiffs' Motion as a vehicle for resolving other issues relating to Symonds' assertion of privilege, some of which may fall outside the scope of a Rule 37 motion.[4]  Plaintiffs and Symonds both agree that the Court Examiner appointed by the English courts to oversee the deposition endorsed referring the issues surrounding Symonds' assertion of privilege back to this Court on the basis of a procedure authorized by an English statute, the Evidence (Proceedings in Other Jurisdictions) Act 1975 ("the 1975 Act").  (Plaintiffs' Motion at 8 n.4; Symonds' Opposition at 1:12 & 6 n.7.).  They also agree that the 1975 Act, which governs depositions taken in the United Kingdom under the Hague Evidence Convention, "contemplates that a deposition may be adjourned until the parties obtain a ruling on the privilege issues from U.S. courts", and that the Examiner has adjourned the deposition for such a purpose here.  (Plaintiffs' Motion at 8 n.4; Symonds' Opposition at 1:12 & 6 n.7.)[5]

## B.  The Parties' Positions.

Plaintiffs and Symonds frame the central legal question at issue quite differently.[6]  Plaintiffs contend that the relevant question is whether a foreign citizen and non-U.S. resident is entitled, under U.S. law, to invoke the Fifth Amendment right against self-incrimination ***extraterritorially***.

---

At oral argument, Symonds contended, and this Court agrees, that issues raised by document production issues had not been adequately presented to the Court.  Accordingly, any outstanding disputes regarding Symonds' document production that require this Court's attention should be raised by separate motion.

[4] *See* Stipulated Request, Docket No. 748, at ¶ 2: ("During Mr. Symonds' deposition, counsel for all parties and witness Matthew Symonds agreed, and the Court Examiner appointed by the High Court of Justice in England endorsed, that the deposition be adjourned until this Court resolves the issues raised by Mr. Symonds' invocation of privilege.")  In describing this additional component to Plaintiffs' Motion, Plaintiffs and Symonds indicate that "[a]t the end of the March 20, 2007 deposition, the parties and Mr. Symonds agreed, and the Special Examiner endorsed, that the most expeditious way to determine whether Mr. Symonds' invocation of U.S. Constitutional rights was proper was to submit the issue to this Court for resolution."  (Plaintiffs' Motion at 8:15-18; Symonds' Opposition at 1:12.)  They also represent that "Mr. Symonds' counsel has agreed to consent to jurisdiction in this Court for the limited purpose of determining whether U.S. Constitutional rights apply and whether Mr. Symonds should be compelled to testify."  (Plaintiff's Motion at 9:1-3; Symonds' Opposition at 1:12.)

[5] Article 11(b) of the Hague Evidence Convention authorizes this Court to rule, at the request of the United Kingdom judicial authorities, on questions of privilege that arise under the law of the United States.  *See* Article 11(b) ("In the execution of a Letter of Request,  the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence . . .(b) under the law of the State of origin [where] ***at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority***.") (emphasis added).

[6] Defendants have not taken a position as to whether Symonds can invoke a privilege against self-incrimination.

United States District Court

For the Northern District of California

1    Plaintiffs therefore primarily rely on several Supreme Court decisions and their progeny for the

2    proposition that certain U.S. constitutional rights, including the Fifth Amendment privilege against

3    self-incrimination, cannot be invoked by non-resident aliens when they are outside of the territory of

4    the United States.

5         Symonds, in contrast, begins his analysis with English law.  Symonds contends that the

6    English statute governing Symonds' deposition in England, the Evidence (Proceedings in Other

7    Jurisdictions) Act 1975 ("the 1975 Act"), does not allow a person to be compelled to give evidence

8    which he could not be compelled to give "in civil proceedings in the country or territory in which the

9    requesting court exercises jurisdiction."  Symonds therefore argues that this Court's evaluation of

10   his right to assert privilege begins and ends with the 1975 Act, which he asserts entitles him to

11   refuse to testify *as if he were providing deposition testimony in the United States*.

12
     **C.     Symonds' Ability To Invoke A Privilege Against Self-Incrimination In A
13            Deposition Proceeding Under The Hague Evidence Convention.**

14        Though Plaintiffs begin their analysis with United States constitutional law, and Symonds

15   begins his analysis with English statutory law, the Court after careful consideration finds it most

16   appropriate to begin its analysis with the provisions of the Hague Evidence Convention itself.  *See*

17   Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T.

18   2555; T.I.A.S. No. 7444; 847 U.N.T.S. 231, reproduced in 28 U.S.C.A. following § 1781 ("Hague

19   Evidence Convention" or "Convention").  The Convention, as a treaty ratified by and acceded to the

20   United States (*see Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482

21   U.S. 522, 524 & n.1 (1987), is the "law of this land" with the same force and effect as a federal

22   statute.  *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 167 (1999)*; see also State of*

23   *Missouri v. Holland*, 252 U.S. 416, 434 (1920); U.S. Const. art. VI, cl. 2.[7]   "[B]oth the discovery

24   rules set forth in the Federal Rules of Civil Procedure and the Hague Convention are the law of the

25   United States."  *Societe*, 482 U.S. at 533.

26        The Convention sets forth certain procedures by which a judicial authority in one contracting

27   _____

28        [7] The Convention is also in force in the United Kingdom and at least 15 other nations.  *Societe*, 482 U.S. 524 n.1.

7

state may request evidence located in another contracting state.  Moreover, the Convention specifically addresses the availability of privileges to refuse to give evidence in a deposition that is proceeding under the Convention.  Article 11 of the Convention states:

> In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence–
>
> (a) under the law of the State of execution; or
>
> (b) under the law of the State of origin, and the privilege or duty has been specified in the Letter, or, at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.
>
> A Contracting State may declare that, in addition, it will respect privileges and duties existing under the law of States other than the State of origin and the State of execution, to the extent specified in that declaration.

Because the Convention has the same force and effect as would a federal statute passed by Congress, this Court is obligated to provide Symonds with the protection of any privilege that satisfies the requirements of Article 11 of the Convention, including any privilege available either:

- under the law of the United Kingdom, pursuant to subsection (a);[8] or

- under the law of the United States, pursuant to subsection (b), if that privilege has been specified in the Letter of Request or has been confirmed by the courts of the United States at the request of the United Kingdom judicial authorities.

Out of prudential concerns, the Court will turn first to the question presented by subsection

---

[8] English law becomes important to this Court's analysis because of the explicit provision in Article 11(a) of the Hague Evidence Convention affording deponents with any privileges they would be entitled to under the law of the State of execution.  *See In re Letter Rogatory from Local Court of Ludwigsburg, Federal Republic*, 154 F.R.D. 196, 201 (N.D. Ill. 1994) ("Article 11 contemplates legally recognized privileges from either the foreign state of origin or the state of execution."); *Renfield Corp. v. E. Remy Martin & Co., S.A.*, 98 F.R.D. 442, 444 (D. Del. 1982) (negotiating history indicates United States intended to Convention to "be a privilege creating, rather than privilege limiting, law."); *Tulip Computers Intern B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003) ("The person to whom the discovery requests in a Letter of Request are directed has the right to 'refuse to give evidence' to the extent that the person has a privilege under the law of the State of execution or the State of origin."); 8 Fed. Proc. Forms § 23:234 ("Article 11 means that a witness will be given the benefit not only of privileges recognized by the forum state, but also privileges recognized by the state where the letters are executed . . . . This provision is intended to provide for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law.").  English law, of course, is not otherwise binding on this Court and does not govern the scope of United States constitutional rights that would be independently afforded to Symonds if the Hague Evidence Convention did not apply.

United States District Court

For the Northern District of California

(a) – whether the law of the United Kingdom provides Symonds with a privilege against

incriminating himself.  As the parties' briefs make clear, the question of whether the United States

Constitution **independently** provides a non-resident alien with a right to refuse to provide

incriminating testimony when being deposed overseas at the request of this Court is a complex and

potentially novel question of constitutional law.  "[I]f a case can be decided on either of two

grounds, one involving a constitutional question, the other a question of statutory construction or

general law, the Court will decide only the latter." *Anchustegui v. Department of Agriculture*, 257

F.3d 1124, 1129 (9th Cir. 2001) (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J.,

concurring)).  "The Court will not pass upon a constitutional question, although properly presented

by the record, if there is also present some other ground upon which the case may be disposed of."

*Id.* (quoting *Ashwander*, 297 U.S. at 347 (Brandeis, J., concurring)); *see also Scott v. Pasadena*

*Unified School Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (recognizing the "rule that it is always

prudent to avoid passing unnecessarily on an undecided constitutional question").

> **1.  Privileges Provided To Symonds Under English Law.**

This Court first examines whether Symonds has a privilege to refuse to give testimony under

the law of the United Kingdom.  "The Court in determining foreign law, may consider any relevant

material or source, including testimony, whether or not submitted by a party or admissible under the

Federal Rules of Evidence."  Fed. R. Civ. Proc. 44.1.  This Court is not limited to the evidence of

foreign law as presented by the parties and can reach its own independent determination based upon

an independent examination of foreign legal authorities.  *See, e.g., Twohy v. First Nat. Bank of*

*Chicago*, 758 F.2d 1185, 1193 (7th Cir. 1985); Advisory Committee Notes to Fed. R. Civ. Proc.

44.1.

> **a.  Section 3(1)(b) of the 1975 Act Provides Symonds With Any Privileges He Could Invoke Were He Deposed On U.S. Soil.**

Here, Plaintiffs and Symonds agree (Plaintiffs' Motion at 8 n.4; Symonds' Opposition at 6:7-

9; Plaintiffs' Reply at 8:8-9), the Court Examiner stated on the deposition record (Solomon Decl.,

Exh. J at 8), and this Court finds, that Section 3(1)(b) of the 1975 Act governs which privileges are

9

respected by English law during depositions requested under the Hague Evidence Convention by a

foreign tribunal.   Specifically, Section 3(1) of the 1975 Act states:

> 3.- (1) A person shall not be compelled by virtue of an order under section 2 above to give any evidence which he could not be compelled to give -
>
> (a) in civil proceedings in the part of the United Kingdom in which the court that made the order exercises jurisdiction; or
>
> (b) *subject to subsection (2) below, in civil proceedings in the country or territory in which the requesting court exercises jurisdiction.*

(Emphasis added.)

Because Section 3(1)(a) is of no use to Symonds[9], Section 3(1)(b) of the 1975 Act is the

statutory provision that potentially affords Symonds with a privilege against self-incrimination under

English law.  As an initial matter, subject only to any restrictions imposed by subsection (2) – which

are discussed in more detail below – this Court finds that Section 3(1)(b) of the 1975 Act provides

that Symonds may not be compelled, under English law, to give evidence if he could not be

compelled to give the same evidence in a deposition taking place on United States soil.  This

conclusion is supported, first and foremost, by the plain wording of the English statute, which does

not permit the deponent to be compelled to give evidence which he could not be compelled to give

"in civil proceedings in the country or territory" in which this Court exercises jurisdiction.  By

providing the deponent the right to refuse to give evidence if he could not be compelled to provide

the evidence in a civil proceeding taking place "in the country or territory" of the United States,

Section 3(1)(b) of the 1975 Act apparently is designed to extend a Hague Evidence Convention

deponent the same protections that he would be afforded have if he were deposed in United States

civil proceedings on this side of the Atlantic.  Plaintiffs do not advance a different reading of this

portion of Section 3(1)(b).

---

[9] It appears to be a settled principle, undisputed by the parties and confirmed by the Examiner on the record during the deposition, that aside from any protections that would be provided by the 1975 Act, English law does not otherwise provide Symonds with a privilege against self-incrimination with respect to risk of prosecution under the criminal laws of other jurisdictions, such as the United States. *See* Plaintiff's Reply at 8:20-26; Solomon Decl., Exh. J. at 4 (Symonds' English barrister conceding this point during deposition); *id.* at 7-8 & 17 (Examiner agreeing on this point during deposition).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

English case law confirms this reading of Section 3(1)(b), and this Court's independent

research has not turned up any contrary interpretations in the published decisions of the English

courts.  In *Rio Tinto Zinc Corp. v. Westinghouse Electronic Corp.*, [1978] 1 All E.R. 434 (H.L.

1977), for example, the House of Lords (the highest judicial authority of the United Kingdom)

considered assertions of Fifth Amendment privilege by English citizens being deposed in the United

Kingdom pursuant to a Hague Evidence Convention request made by a United States district court.

In discussing the applicability of Section 3(1)(b) of the 1975 Act, Lord Wilberforce stated:

> The individual witnesses claim privilege against giving any oral
> evidence on the ground that to do so might incriminate them.  This
> claim attracts the protection of the fifth article of amendment to the
> United States Constitution.  Since it is a claim for privilege under
> United States law, its validity has to be determined *as if it had been
> made in civil proceedings in the United States of America* (s 3(I)(b)
> of the 1975 Act).

*Id.* at 445 (emphasis added.)

Moreover, referring to a ruling issued earlier in the proceeding by the United States district

court on the viability of the English individuals' invocation of a Fifth Amendment privilege, Lord

Wilberforce described the ruling as one:

> given by the competent authority that the evidence sought was
> evidence which the witnesses *could not be compelled to give in civil
> proceedings in the country in which the requesting court exercises
> jurisdiction* (s 3(1)(b) of the 1975 Act).

*Id.* at 447 (emphasis added).  *Rio Tinto Zinc* therefore confirms that the relevant inquiry under

Section 3(1)(b) of the 1975 Act is whether Symonds could invoke a privilege against self-

incrimination if he were deposed inside the United States.[10]

The Court Examiner overseeing Symonds' deposition appears to have understood and

interpreted Section 3(1)(b) in the same fashion.  After hearing argument from Plaintiffs and

Symonds regarding the assertion of privilege under the 1975 Act, and after adjourning to consider

the issue, the Examiner stated on the record:

---

[10] *Rio Tinto Zinc* is apparently "[t]he leading authority upon the correct interpretation of the Evidence (Proceedings in other Jurisdictions) Act 1975" under English law.  *Apple Computers Inc. v. Doe*, 2002 WL 31476324 (QBD), [2002] EWHC 2064.

1
2
3
4

> So section 3(1)(b) is, on what Mr. Parkes has said, potentially applicable because it is – it provides effectively that a person shall not be compelled by virtue of an order under this Act to give evidence which he could not be compelled to give in civil proceedings in the country or territory in which the requesting court exercises jurisdiction.  So that would be a matter for the District Court.  A question of what the District Court in California would do.

5  (Solomon Decl., Exh. J. at 8-9.)

6  This Court therefore concludes that Symonds may not be compelled, under English law, to

7  give evidence if he could not be compelled to give the same evidence in a deposition taking place on

8  United States soil, unless Section 3(2) of the 1975 Act precludes Symonds from invoking such a

9  privilege.

10
11

         **b.**        **Section 3(2) of the 1975 Act Does Not Preclude Symonds From Invoking The Privilege Contemplated By Section 3(1)(b).**

12  Recognizing the potential support that Section 3(1)(b) of the 1975 Act provides for

13  Symonds' invocation of privilege, Plaintiffs argue that Symonds cannot avail himself of any

14  privileges recognized by Section 3(1)(b) because by its own terms it is "subject to subsection (2)

15  below" and, according to Plaintiffs, the requirements established by subsection (2) have not been

16  met here.

17  Subsection 2 of section 3 of the 1975 Act states:

18
19

> (2) Subsection (1)(b) above shall not apply unless the claim of the person in question to be exempt from giving the evidence is either -

20
21

> (a) supported by a statement contained in the request (whether it is so supported unconditionally or subject to conditions that are fulfilled); or

22

> (b) conceded by the applicant for the order;

23
24
25

> and where such a claim made by any person is not supported or conceded as aforesaid he may (subject to the other provisions of this section) be required to give the evidence to which the claim relates but that evidence shall not be transmitted to the requesting court if that court, on the matter being referred to it, upholds the claim.

26  The interaction of Section 3(2) with Section 3(1)(b) presents a question of statutory

27  construction under foreign law that is not easily resolved.  However, after careful analysis, the Court

28

disagrees with Plaintiffs' assertion that a failure to satisfy Section 3(2)(a) or 3(2)(b) entirely forbids Symonds, under English law, from ultimately being able to invoke a privilege available "in civil proceedings in the country or territory in which the requesting court exercises jurisdiction" as provided for in Section 3(1)(b).  In this Court's view, the most reasonable interpretation of Section 3(2), taken as a whole, is that it contemplates that a "claim" of privilege will be dealt with in a procedurally different fashion depending on whether Section 3(2)(a) and/or Section 3(2)(b) have been satisfied.  For example, where Section 3(2)(a) or Section 3(2)(b) are satisfied – where the claim of privilege is either "supported by a statement contained in the request" or is "conceded by the applicant for the order" – the 1975 Act permits the deponent to refuse to provide the evidence in the first instance.  In contrast, where the claim of privilege is not "supported or conceded as aforesaid", the Court Examiner has discretion to proceed by ordering the deponent to furnish the evidence which is held in abeyance and not transmitted in the event the claim is ultimately upheld by a court of the requesting jurisdiction.  Plaintiffs' constructions of Sections 3(2)(a) and 3(2)(b) as limiting a deponent's assertion of privilege to circumstances where the assertion is supported by a statement in the request or conceded by the applicant ultimately fails because it does not account for the portion of Section 3(2) that affords the Court Examiner discretion to seek the opinion of a court in the requesting jurisdiction.  This Court must give this final clause of Section 3(2) meaning so that it is not mere surplusage.  The most reasonable interpretation of the this clause is that it provides an alternative process by which a deponent's assertion of privilege can be raised and resolved, where the assertion is not supported by a statement in the request nor conceded by the applicant.

The discussion between Plaintiffs, Symonds and the Court Examiner during the deposition proceedings is consistent with this Court's interpretation of Section 3(2).  The Court Examiner observed that, in his view, if Section 3(2)(a) or Section 3(2)(b) were not established to his satisfaction, he had:

> discretion to require the evidence to be given, to require Mr. Symonds to answer.  But the evidence will not be transmitted to the requesting court if I required it and if he answered it, or if the court required it and he answered it, the English court required it and he answered it; if objection was taken to the admissibility of the evidence before the Californian court. . . . What I would like some assistance on is the

United States District Court
For the Northern District of California

exercise of my discretion as to whether or not Mr. Symonds should be required to answer.

Solomon Decl., Exh. J. at 10; *see also id.* at 32.

Notably, on the record at the deposition, though Plaintiffs asserted that the Section 3(2)(a) and Section 3(2)(b) prerequisites were not met, they agreed that the Court Examiner had discretion to require Symonds to answer the questions and then to submit his claim of privilege to this Court. Plaintiffs' counsel stated:

> Our position is we do accept you have a discretion whether to proceed as you have suggested, with you directing Mr. Symonds to answer questions and then his deposition being held in the, the by the Master pending decisions by the United States court as to whether or not his claim to privilege would be upheld.  We are accepting that discretion exists.  We think, that is exactly what you should do...

Solomon Decl., Exh. J at 24-25.

The Court Examiner also explicitly observed that a failure to find Section 3(2)(a) or Section 3(2)(b) satisfied did ***not*** eliminate Symonds' ability to assert a claim of privilege during the deposition of the type contemplated by Section 3(1)(b).  In rejecting Symonds' position that Section 3(2)(a) was satisfied, the Examiner stated:

> Now, the argument was put on two bases by Mr. Parkes.  Firstly, that the claim to privilege was supported by a statement contained in the letter of request within the meaning of section 3(2)(a) of the Evidence (Proceedings in Other Jurisdictions) Act 1975.  I am satisfied that that is not so supported, but that is not the end of the matter because in those circumstances, the same subsection gives the Examiner a discretion as to how to proceed.

Solomon Decl., Exh. J. at 43.

Ultimately, because the parties stipulated to a modified procedure, the Examiner did not exercise his discretion to order Symonds to testify under a procedure that would keep his testimony in abeyance pending a ruling by this Court.[11]  But Plaintiffs concede that the procedure ultimately followed by the Examiner (and to which Plaintiffs stipulated) is simply "a slightly different approach

---

[11]   During the first day of the deposition, Symonds' counsel raised the concern that compelling Symonds to testify under such a procedure would undermine the core purpose of the privilege against self-incrimination, because American prosecutors would still be able to subpoena the American lawyers attending the deposition to testify about any admissions made by Symonds if compelled to answer by the Examiner.  (Solomon Decl., Exh. J. at 33-39.)

United States District Court

For the Northern District of California

1  under Section 3(2) that allows for submission of the dispute directly to this Court to decide the Fifth

2  Amendment issue under U.S. law."  (Plaintiffs' Reply at 10:3-9.)[12]

3         Thus – for purposes of determining under Article 11(a) of the Hague Convention whether the

4  law of the United Kingdom provides Symonds with a privilege against incriminating himself – the

5  Court finds that although Section 3(2)(a) and Section 3(2)(b) of the 1975 Act were not satisfied,[13]

6  Symonds is not thereby foreclosed from the scope of protection contemplated under Section 3(1)(b)

7  of that Act.

8         The next step of this Court's analysis will therefore be to determine whether Symonds meets

9  the requirements of Section 3(1)(b) of the 1975 Act.  If he does, the law of the United Kingdom

10 provides Symonds with a privilege against incriminating himself that Article 11(a) of the Hague

11 Convention requires this Court to recognize.  Accordingly, this Court must resolve whether

12 Symonds' claim under Section 3(1)(b) that he could not be compelled to give the evidence "in civil

13 proceedings in the country or territory in which the requesting court exercises jurisdiction" has

14 merit.[14]

15

16         [12] At the beginning of the second day of the deposition, Plaintiffs and Symonds announced on the record that they

17 had stipulated to submit the privilege issues to this Court, and had agreed to a procedure by which the Examiner would "not exercise [his] discretion today to make any decision at all under Section 3."  (Solomon Decl., Exh. K at 5.)  The Examiner acceded to this approach.  (Id. at 5-7.)

18         [13]  Symonds argued to the Examiner, and argues to this Court, that Section 3(2)(a) was satisfied because the Letter

19 of Request's statement that the deposition should proceed under the Federal Rules of Civil Procedure means Symonds'

20 assertions of Fifth Amendment privilege were "supported by a statement contained" in the Letter of Request.  Plaintiffs contend that the Examiner has already determined this issue and that the Court should defer to the English judicial authority's interpretation of English law.  (Solomon Decl., Exh. J at 43 ("I am satisfied that that is not so supported.")).  This Court need

21 not determine whether it is obligated to defer to the Examiner's finding because this Court independently arrives at the same conclusion.  Symonds contends that Federal Rules of Civil Procedure 26(b)(1), 30(c), and 30(d)(1), and their cross-references

22 to the Federal Rules of Evidence, including Federal Rules of Evidence 501 and 1101(c), collectively recognize that the scope of discovery is restricted by applicable privileges including specifically the privilege against self-incrimination.  Symonds'

23 circular argument fails because Federal Rule of Evidence 501 ultimately incorporates only those privileges required under already-existing federal law, and does not constitute an independent source of privilege.  See Advisory Committee Notes to

24 Federal Rule of Evidence 501 (adopted Rule "left the law of privilege in its current state and further provided that privileges shall continue to be developed by the courts of the United States").  The Letter of Request did not purport to state either: (1)

25 whether Symonds could invoke the Fifth Amendment privilege in a civil proceeding taking place on U.S. soil, nor (2) whether American constitutional law independently provides Symonds, a non-resident alien, with an ability to invoke a privilege

26 against self-incrimination in a deposition taking place overseas.

27         [14] Though the next step of the Court's analysis will therefore hinge upon American law, the Court reiterates that it

28 has reached this step of the analysis solely as part of its inquiry under Article 11(a) of the Hague Evidence Convention as to whether English law provides Symonds with a privilege or duty to refuse to give the evidence.  The Court has returned

United States District Court

For the Northern District of California

**2.      Symonds' Right To Fifth Amendment Protections In Civil Proceedings Taking Place Within The United States.**

Plaintiffs and Symonds dispute whether Symonds could be compelled to give the requested testimony in a civil proceeding taking place in the United States. Plaintiffs and Symonds dispute three key issues:

•   whether Symonds would be a "person" able to invoke the privilege under the Fifth Amendment;

•   whether Symonds is sufficiently at risk of prosecution under United States criminal statutes to trigger application of the privilege; and

•   whether Symonds' conduct has waived the privilege.

**a.      If Symonds Were Deposed Inside The United States, He Would Be A "Person" Able To Invoke The Fifth Amendment.**

Although Plaintiffs contend otherwise, the Court has little doubt that if Symonds were deposed inside the territory of the United States, he would be a "person" within the meaning of the Fifth Amendment. Long-standing Supreme Court precedent has extended Fifth Amendment due process protections to aliens within the United States, without distinguishing between those who are here legally or illegally, or between residents and visitors. *See, e.g., Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("holding that "all persons within the territory of the United States are entitled to the protection guaranteed by [the fifth and sixth] amendments"); *In re Ross*, 140 U.S. 453, 464 (1891) (holding that fifth and sixth amendments apply to "citizens and others within the United States, or who are brought there for trial"); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."); *Plyer v. Doe*, 457 U.S. 202,

_____

to a question of American law because the availability of privilege under the relevant English statute depends on a question of American law. However, the issue of American law that is relevant to application of the English statute – whether Symonds could be compelled to give the evidence "in civil proceedings in the country or territory in which the requesting court exercises jurisdiction" – is not necessarily the same issue that would be presented by an analysis under Article 11(b) of the Convention of whether American constitutional law independently provides a non-resident alien being deposed overseas with a privilege against self-incrimination.

16

United States District Court

For the Northern District of California

1   211 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been

2   recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.");

3   *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("the Due Process Clause applies to all 'persons'

4   within the United States, including aliens, whether their presence here is lawful, unlawful,

5   temporary, or permanent.").  Consistent with these principles, in this circuit, even an alien illegally

6   in this country may assert a Fifth Amendment right to refuse to answer questions in a deportation

7   hearing if the answers would incriminate him or her on a criminal matter.  *See, e.g.*, *U.S. v.*

8   *Alderete-Deras*, 743 F.2d 645, 647 (9th Cir. 1984); *Wall v. INS*, 722 F.2d 1442, 1443 (9th Cir.

9   1984); *Cabral-Avila v. INS*, 589 F.2d 957, 959 (9th Cir. 1978).

10          Plaintiffs contend that mere presence inside the territory of the United States would not be

11  enough to confer upon Symonds the right to invoke a Fifth Amendment privilege against self-

12  incrimination, and insist he must also "develop[] substantial connections with the country" before

13  such rights could be afforded.  (Plaintiffs' Reply at 4:1-5:3.)  The Court rejects Plaintiffs' analysis

14  on this issue.  The authorities cited by Plaintiffs for this proposition are inapposite cases that rejected

15  extraterritorial application ***of the Fourth Amendment*** under an analysis ***explicitly distinguished***

16  from the Fifth Amendment.  *See United States v. Verdugo-Uriquez*, 494 U.S. 259, 264 (1990)

17  (noting that Fourth Amendment "operates in a different manner than the Fifth Amendment, which is

18  not at issue in this case"); *United States v. Zakharov*, 468 F.3d 1171, 1175-80 (9th Cir. 2006)

19  (finding Fourth Amendment inapplicable to alien outside United States territory but applying Fifth

20  Amendment due process analysis to conviction); *United States v. Barona*, 56 F.3d 1087, 1093 (9th

21  Cir. 1995) ("Unlike the Due Process Clause of the Fifth Amendment, which protects all 'persons,'

22  the Fourth Amendment protects only 'the People of the United States.'  This term 'refers to a class

23  of persons who are part of a national community or who have otherwise developed sufficient

24  connection with this country to be considered part of that community.'  The Fourth Amendment

25  therefore protects a much narrower class of individuals than the Fifth Amendment."); *United States*

26  *v. Baboolal*, 2006 U.S. Dist. LEXIS 40645 at *12 (E.D. Wis. June 16, 2006) ("A nonresident alien

27  with no substantial connection to the United States is not one of 'the people' protected by the Fourth

28

Amendment but certainly is a 'person' and is therefore entitled to the trial protections guaranteed by the Fifth Amendment.")

Accordingly, this Court concludes that were Symonds asked to give the requested testimony in a civil proceeding within the United States, he would constitute a "person" able to invoke the Fifth Amendment "evidentiary privilege that protects witnesses from being forced to give incriminating testimony, even in noncriminal cases, unless that testimony has been immunized from use and derivative use in a future criminal proceeding before it is compelled." *Chavez v. Martinez*, 538 U.S. 760, 770-71 (2003). This is a "prophylactic rule[] designed to safeguard the core constitutional right protected by the Self-Incrimination Clause." *Id.* at 770.

> **b. Symonds Is Sufficiently At Risk Of Prosecution Under United States Law To Trigger The Privilege.**

This Court finds that Symonds is sufficiently at risk of prosecution under United States law to trigger application of the Fifth Amendment privilege. "[I]n the civil context, the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). "[T]he privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence." *Id.*

Given Plaintiffs' accusations that Symonds participated in the destruction of the *Softwar* materials after learning that they were sought by Plaintiffs for use in this litigation, Symonds contends that he faces a "possibility" of prosecution under 18 U.S.C. § 1512(c), which reads:

> (c) Whoever corruptly-
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

By its explicit terms, the criminal statute applies extraterritorially. 18 U.S.C. § 1512(h)

United States District Court

For the Northern District of California

18

United States District Court

For the Northern District of California

1   ("There is extraterritorial Federal jurisdiction over an offense under this section.")

2        The Court agrees that Symonds faces the possibility of prosecution under Section 1512(c).[15]

3   Plaintiffs' allegations regarding Symonds' role in destroying evidence – which supplied the rationale

4   for seeking his deposition in the first place – place Symonds' conduct squarely within the ambit of

5   Section 1512(c).  The statute indicates that, for its purposes, an "official proceeding" includes "a

6   proceeding before a judge or court of the United States [or] a United States magistrate judge" (18

7   U.S.C. § 1515(a)(1)(A)), and contrary to Plaintiffs' position, imposes no requirement that the

8   proceeding be connected to an ongoing criminal investigation or regulatory inquiry.  Moreover,

9   Section 1512(h) constitutes a clear indication of Congressional intent to reach extraterritorial

10  conduct with the criminal statute, which governs application of the statute unless there is a violation

11  of due process.  *United States v. Yousef*, 327 F.3d 56, 86 (2d. Cir. 2003).

12              **c.      Symonds Did Not Waive The Privilege Against Self-Incrimination.**

13       Plaintiffs contend that even if Symonds could assert a Fifth Amendment privilege against

14  self-incrimination, he has waived that right by his actions, including submitting a sworn declaration,

15  producing documents, answering a few select questions at his deposition, and making

16  representations to the parties' counsel.  This Court, however, finds that none of these actions

17  constitute waiver.

18       A non-party witness "may 'pick the point beyond which he will not go,' and refuse to answer

19  any questions about a matter already discussed, even if the facts already revealed are incriminating,

20  as long as the answers sought may tend to further incriminate him."  *United States v. Seifert*, 648

21  F.2d 557, 561 (9th Cir. 1980).  Moreover, " a 'testimonial waiver' is not to be lightly inferred, and

22  the courts accordingly indulge every reasonable presumption against finding a testimonial waiver."

23  *Klein v. Harris*, F.2d 274, 287 (2d Cir. 1981) (citations omitted).  Under the widely-cited *Klein* test,

24  waiver will be found only if:

25                   (1) the witness' prior statements have created a significant likelihood

---

27  [15] At oral argument, Plaintiffs conceded that Symonds faced a "possibility" of prosecution under Section 1512(c)
    but nonetheless argued that the mere "possibility" of prosecution is not considered sufficient to trigger Fifth Amendment
28  protection.  The Court disagrees and finds no support for this proposition in the authorities cited by Plaintiffs.

United States District Court

For the Northern District of California

1  that the finder of fact will be left with and prone to rely on a distorted
2  view of the truth, and (2) the witness had reason to know that his prior
   statements would be interpreted as a waiver of the fifth amendment's
   privilege against self-incrimination.

3  *Id.* at 287.[16]

4  With respect to Symonds' voluntarily-submitted declaration, the Court finds no waiver.

5  Symonds' declaration did not make representations about the continuing existence of the *Softwar*

6  documents as of the time the declaration was executed, nor about whether, when, or how such

7  materials may have been destroyed.  (Solomon Decl., Exh. A.)  The substantive topic addressed by

8  his declaration was simply the ownership and access rights to the *Softwar* transcripts and recordings.

9  (Solomon Decl., Exh. A at ¶ 3.)  This testimony on a collateral topic was not "incriminating" as to

10 any aspect of the alleged destruction of the materials, and therefore cannot satisfy the second prong

11 of the *Klein* test advocated by Plaintiffs themselves.  *See Klein*, 667 F.2d at 288 ("The requisite

12 reason to know that a waiver might be inferred should be found only if the witness' prior statements

13 were . . . 'incriminating,' meaning that they did not merely deal with matters 'collateral' to the

14 events surrounding commission of the crime. . . ."); *accord OSRecovery, Inc. v. One Groupe Int'l,*

15 *Inc.*, 262 F. Supp. 2d 302, 310 (S.D.N.Y. 2003) ("Testimony is 'incriminating' in the sense required

16 to ground an inference of waiver when, by virtue of its incriminating nature, it contains information

17 that the witness was privileged not to reveal.  In other words, the pivotal attribute of 'incriminating'

18 testimony, as *Klein* used the word, is the witness's ability to have invoked the privilege, not whether

19 the testimony given actually harmed the witness.") (quotations and citations omitted).[17]

20 With respect to the two-and-a-half questions that Symonds answered at his subsequent

21 deposition, the Court also finds no waiver.  This limited testimony encompassed only the

22 preparation, drafting or signing of his earlier declaration (Solomon Decl., Exh. K. at 10), and was no

23 more "incriminating" under the second prong of the *Klein* test than was the content of the

---

[16] Although the *Klein* test has not been expressly adopted in the Ninth Circuit, it is considered instructive by this Court.  *See Universal Trading & Inv. Co. v. Kiritchenko*, 2006 U.S. Dist. LEXIS 94550 at *11 (N.D. Cal. Dec. 22, 2006).

[17] The Court does not agree with Plaintiffs that *Nutramax Labs., Inc. v. Twin Labs, Inc.*, 32 F. Supp. 2d 331 (D. Md. 1999) supports a finding of waiver in these circumstances.  In *Nutramax Labs*, unlike here, the affidavit voluntarily supplied by an officer of the corporate defendant directly related to the core topics on which he later invoked the Fifth Amendment privilege.  *Id.* at 336.

United States District Court

For the Northern District of California

1    declaration itself.  Symonds' limited deposition testimony does not reflect a voluntary waiver.  *See*

2    *OSRecovery*, 262 F. Supp. 2d at 309.

3           Moreover, because neither the declaration nor Symonds' limited testimony regarding the

4    declaration have yet been submitted to the fact-finder in this case, there is no basis under the first

5    prong of the *Klein* test to find waiver because there is not "a significant likelihood that the finder of

6    fact will be left with and prone to rely on a distorted view of the truth."  *Klein*, 667 F.2d at 287.

7    Unlike in *Klein*, where the witness had already testified for the prosecution in front of the jury but

8    then invoked the privilege during the defense's cross-examination, it is not too late for this Court to

9    exclude at trial any portions of Symonds' testimony that cannot adequately be tested or challenged

10   by cross-examination.  Given that waiver "should be inferred only in the most compelling of

11   circumstances", where there are adequate safeguards (as there are here) against any prejudice to

12   Plaintiffs, "[s]uch circumstances do not exist."  *Id.* at 288.

13          With respect to Symonds' communications with counsel for Defendants, many of which

14   were subsequently relayed to Plaintiffs' counsel and/or this Court by counsel for Defendants, the

15   Court also finds no waiver.  For a witness' prior statements to constitute waiver, they must be

16   "testimonial" in nature, meaning that they were "voluntarily made under oath in the context of the

17   same judicial proceeding."  *Klein*, 667 F.2d at 288.  Here, Symonds' telephone conversations with

18   and letters sent to Defendants' counsel were simply unsworn, out-of-court statements.  The Court

19   rejects Plaintiffs' contention, unsupported by legal authority, that the fact that some of the these

20   statements were later submitted to the Court ***by Defendants' counsel*** somehow renders them a

21   voluntary waiver of privilege by Symonds.  There is no evidence in the record indicating that

22   Symonds intended or understood that his statements to Defendants' counsel would be used as

23   evidence or treated as testimonial in nature.

24          Finally, with respect to Symonds' voluntary production of certain documents, the Court finds

25   no waiver.  The Court reads no testimonial aspect into Symonds' production of certain interview

26   transcripts.  In any event, any testimonial aspect to Symonds' production of these documents would

27   be limited to the fact that Symonds possessed these documents.  The mere production of these

28

21

documents cannot be considered a waiver of privilege by Symonds as to the accuracy or content of the documents themselves, or as Plaintiffs vaguely put it, the "testimonial subject matter of those documents." *See In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974) ("as to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further incrimination.") Moreover, the primary authority cited by Plaintiffs, *United States v. Anderson*, 79 F.3d 1522 (9th Cir. 1996), does not support a finding of waiver.  In *Anderson*, unlike here, the defendant "explicitly stated through counsel that he waived the assertion of his fifth amendment rights" in a written letter, and later testified without at all invoking the privilege.  *Id.* at 1527.  On those facts, unlike here, the *Anderson* court had a clear basis for finding a broad waiver.

### 3.    Scope Of Symonds' Privilege Against Self-Incrimination.

Having concluded that Symonds can invoke the privilege and has not waived it, the Court next considers the appropriate scope of the privilege; i.e., which questions the privilege will permit Symonds to refuse to answer.  "If the incriminatory nature of the questions is not readily apparent, [the witness asserting the privilege] bears the burden to show a credible basis for invoking the Fifth Amendment."  *Universal Trading & Investment Co. v. Kiritchenko*, 2006 U.S. Dist. LEXIS 94550 at *9 (N.D. Cal. Dec. 22, 2006); *see also United States v. Edgerton*, 734 F.3d 913, 919 (2d Cir. 1984) ("If the court determines that the incriminatory nature is not readily apparent, the witness then must endeavor to explain how his answer will be incriminatory.").

Here, after reviewing the March 20, 2007 deposition transcript, the Court finds that the questions that Symonds declined to answer fall into two basic categories: (1) those where the danger of self-incrimination is readily apparent, and (2) those where the danger is less apparent and insufficient as currently identified by Symonds.

The first category of questions, for which the danger of self-incrimination is readily apparent, consists primarily of questions concerning the destruction of the *Softwar* recordings and transcripts, as well as questions about communications with Defendants or their lawyers after Plaintiffs filed their motion to compel.  Given the record before this Court, and the nature of the allegations that

United States District Court
For the Northern District of California

Plaintiffs have made about Symonds' conduct, such questions clearly run the risk of self-incrimination.[18]  The Court will therefore not order Symonds to answer them.

The second category of questions, for which Symonds has made an insufficient showing at the present time, includes questions directed at the content of Symonds' original interviews for the *Softwar* book, as well as other events that preceded Plaintiffs' motion to compel the *Softwar* materials.[19]  The incriminating nature of such questions is not readily apparent to the Court.  The Court will not sustain Symonds' privilege objections these questions unless he articulates a credible basis for invoking the Fifth Amendment.[20]  Symonds has requested the opportunity to present evidence *in camera* to the extent that the Court requires additional information regarding the incriminating nature of the questions asked.  Under Ninth Circuit law, an *in camera* proceeding is appropriate.  *United States v. Dollinger*, 80 F.3d 389, 393 (9th Cir. 1996) ("the required inquiry is best made in an *in camera* proceeding, where the defendant is given the opportunity to substantiate his claims of the privilege and the district court is able to consider the questions asked").  The Court will therefore schedule an *in camera* proceeding to provide Symonds with a further opportunity to substantiate his claims of privilege with respect to this second category of questions.

**D.      The Court Need Not Reach The Other Constitutional Or Comity Questions Raised By Plaintiffs' Motion.**

Because application of the Hague Convention dictates the outcome of Plaintiffs' Motion here, the Court need not reach other arguments raised by the parties.  For example, Plaintiffs urge

---

[18] Unless otherwise specifically identified in footnote 19 below, the Court considers questions asked during the March 20, 2007 deposition session to which Symonds asserted privilege to fall in this first category.

[19] The questions in this second category include the questions asked during the March 20, 2007 deposition session, attached as Exhibit K to the Solomon Declaration, found at pages 12:17-19, 13:25-14:1, 15:16-17, 15:21-22, 18:13-14, 18:18-20, 18:24-19:1, 19:5-6, 19:18-20, 20:25-21:1, 21:9-11, 22:7-9, 22:13-15, 22:23, 23:6, 23:14-15, 25:25, 26:4-5, 26:9-10, 26:14-15, 26:19-20, 26:24, 27:3-4, 27:8-9, 27:17-19, 27:23-28:1, 28:5-6, 28:14-15, 29:5-6, 29:14-15, 29:23-25, 30:4-5, 30:13-14, 30:23-24, 31:8-9, 31:13-14, 36:3-6, 36:24-37:2, 37:7, 38:5-6, 38:9-10, 38:13-14, 38:17-18, 38:20-21, 40:4-6, 40:12-13, 40:19-20, 41:1-2, 41:8-10, 41:16-18, 41:25-42:2, 42:9-11, 42:17-19, 42:25-43:2, 43:8-10, 43:16-18, 43:24-25, 44:20-22, 45:3-5, 46:18, 46:21-22, and 47:16-17.

[20] Though Symonds originally asserted a reporter's privilege in connection with some of these questions, Symonds abandoned this assertion in his Opposition. (Symonds' Opp. at 1 n.1) ("If the Court denies Mr. Symonds the right to invoke the Fifth Amendment privilege, Mr. Symonds acknowledges that the reporters' privilege is unlikely to afford protection because it is less robust than the Fifth Amendment privilege").

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

the Court to rule that, as a non-resident alien being deposed abroad, Symonds is not able to directly invoke the Fifth Amendment as a basis for his assertions of privilege.  As is evident from the discussion above, however, the Court has determined that Article 11(a) of the Hague Convention provides Symonds with a privilege against self-incrimination at least as broad as any independent right that he could derive directly from the United States Constitution.  The Court therefore need not reach this complex and apparently novel constitutional question today.[21]  Nor need the Court reach the question of whether principles of international comity would provide an independent basis for declining to order Symonds to answer incriminating questions that he would not have to order in a proceeding taking place on U.S. soil.[22]

//

//

//

---

[21] The issue is complex, and apparently novel, because the constitutional principles cited by the parties that would bear on this question evolved from highly distinguishable factual contexts, including enemy combatant cases or other situations in which non-resident aliens sought to invoke the jurisdiction of the United States courts, or to assert causes of action predicated upon the United States Constitution, from overseas.  The facts of this case, in contrast, involve extra-territorial discovery taken as a result of, and at the behest of, this United States district court, which leaves a distinct judicial imprimatur on the involuntary nature of any incriminating testimony compelled from a foreign witness.  When this Court, using Hague Evidence Convention procedures, enlists the help of the English courts to extend the reach of its discovery powers overseas, the compelling of involuntary incriminating testimony potentially raises serious constitutional issues that apparently have not yet been resolved by the higher courts. Cf. *Balsys*, 524 U.S. at 698-99 (discussing, but not reaching, the possibility that cooperative conduct between the United States and foreign nations could expand the scope of the Fifth Amendment protection).

[22] The Court is cognizant that compelling incriminating testimony from Symonds could place him, an English citizen, in the same unfair "trilemma" of choosing between forced incrimination, perjury, or contempt that Fifth Amendment jurisprudence would not countenance for anyone permitted to invoke the constitutional privilege.  *See, e.g., U.S. v. Balsys*, 524 U.S. 666, 683 (1998) ("at [the Fifth Amendment's] heart lies the principle that the courts of a government from which a witness may reasonably fear prosecution may not in fairness compel the witness to furnish testimonial evidence that may be used to prove his guilt.")  If compelled to give incriminating testimony, Symonds faces potential federal criminal prosecution and a maximum prison sentence of 20 years on the basis of that testimony, even though a witness being deposed in the United States – even a non-resident, illegal alien – would be entitled to invoke privilege.  Using Hague Evidence Convention procedures to place such burdens on a foreign citizen potentially raises issues of international comity. *See Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 543 n. 27 (1987). ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. . . . American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.")

.

1  //

2                                        **CONCLUSION**

3          For the foregoing reasons, the Court will schedule an *in camera* hearing to resolve privilege

4  issues with respect to the deposition questions set forth in footnote 19, above.  In all other respects,

5  the Court **DENIES** the Motion.

6

7  **IT IS SO ORDERED.**

8  Dated:    6/29/2007                          _____

9                                               MARTIN J. JENKINS

10                                              UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California