LATHAM & WATKINS LLP
   Peter A. Wald (SBN 85705)
   Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
       michele.kyrouz@lw.com

LATHAM & WATKINS LLP
   Patrick E. Gibbs (SBN 183174)
   Matthew Rawlinson (SBN 231890)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com
       matt.rawlinson@lw.com

LATHAM & WATKINS LLP
   Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071
Phone: (213) 485-1234
Fax: (213) 891-7863
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
   Dorian Daley (SBN 129049)
   James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, CA 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS) (Consolidated) |
| | CLASS ACTION |
| This Document Relates To: | DEFENDANTS' NOTICE OF *DAUBERT* MOTION AND *DAUBERT* MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ALAN G. GOEDDE; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT |
| ALL ACTIONS. | **Honorable Judge Martin J. Jenkins** |

LATHAM•WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

TABLE OF CONTENTS

Page

## **TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.   SUMMARY OF DR. GOEDDE'S OPINIONS ................................................... 2

    A.    Dr. Goedde's "Major Macroeconomic Change" Opinion ...................... 3

    B.    Dr. Goedde's Forecasting Process Opinion ........................................... 5

III.  ARGUMENT ....................................................................................................... 7

    A.    Legal Standard ...................................................................................... 7

    B.    Dr. Goedde's Opinion Regarding Macroeconomic Conditions
        Facing Oracle In Q301 Should Be Excluded .......................................... 8

    C.    Dr. Goedde's Opinion Regarding Oracle's Forecasting Process
        Should Be Excluded............................................................................ 14

IV.   CONCLUSION.................................................................................................. 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Alexander v. Smith & Nephew, P.L.C.,*
  98 F. Supp. 2d 1310 (D. Okla. 2000) ........................................................................... 9

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
  303 F.3d 256 (2d Cir. 2002) ...................................................................................... 14

*Berry v. City of Detroit,*
  25 F.3d 1342 (6th Cir 1994) ................................................................................. 7, 10

*Brooke Group v. Brown & Williamson Tobacco Corp.,*
  509 U.S. 209 (1993) .............................................................................................. 8, 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ....................................... 7, 8, 10, 11, 13, 14, 15, 16, 18

*DSU Medical Corporation v. JMS Co., LTD,*
  296 F. Supp. 1140 (N.D. Cal. 2003) ........................................................................ 7

*Elsayed Mukhtar v. Cal. State Univ., Hayward,*
  299 F.3d 1053 n.7 (9th Cir. 2002) ..................................................................... 13, 16

*General Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ................................................................................................. 13

*Guillory v. Domtar Indus. Inc.,*
  95 F.3d 1320 (5th Cir. 1996) ........................................................................ 8, 15, 17

*Hoffman v. Caterpillar, Inc.,*
  368 F.3d 709 (7th Cir. 2004) ................................................................................... 18

*In re Williams Sec. Litig.,*
  No. 4:02-cv-00072 SPF-FHM, 2007 WL 2007987, at *49 (N.D. Okla. July 6,
  2007) ........................................................................................................................ 18

*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137 (1999) ......................................................................................... 7, 8, 14

*Lust v. Merrell Dow Pharms., Inc.,*
  89 F.3d 594 (9th Cir. 1996) ................................................................................. 7, 12

*Nimely v. City of New York,*
  414 F.3d 381 (2d Cir. 2005) ......................................................................... 8, 10, 11

*Playtex Products, Inc. v. Proctor and Gamble Co.,*
  No. 02 Civ. 8046, 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003). ......... 8, 16

*Redman v. John D. Brush & Co.,*
  111 F.3d 1174 (4th Cir. 1997) ...................................................................... 8, 11

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

## TABLE OF AUTHORITIES

Page(s)

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.,*
   No. 95 CIV.8136(RCC), 2001 WL 1602976, at *5 (S.D.N.Y. 2001) ............................ 15, 17

*Thomas J. Kline, Inc. v. Lorillard, Inc.,*
   878 F.2d 791 (4th Cir. 1989) ......................................................................................... 9

*United States v. Webb,*
   115 F.3d 711 (9th Cir. 1997) ......................................................................................... 7

*Weisgram v. Marley Co.,*
   528 U.S. 440 (2000) ............................................................................................... 1, 7, 10

*Whiting v. Boston Edison Co.,*
   891 F. Supp. 12 (D. Mass. 1995) .................................................................................. 8

*Zenith Elec. Corp. v. WH-TV Broadcasting Corp.*
   395 F.3d 416 (7th Cir. 2005) ......................................................................................... 13

### RULES

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................... 18

Fed. Rule Evid. 702 ...................................................................................... 7, 8, 10, 11, 13, 18

Fed. Rule Evid. 703 ........................................................................................................ 8, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1  TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE THAT Defendants Oracle Corporation, Lawrence J. Ellison,

3  Jeffrey O. Henley and Edward J. Sanderson (collectively, "Defendants") hereby move for an

4  order precluding Plaintiffs from offering Alan G. Goedde's May 25, 2007 Expert Report ("Initial

5  Report"), his June 22, 2007 Rebuttal Report ("Rebuttal Report") (collectively, the "Reports"),

6  and any testimony related to his opinions regarding macroeconomic conditions affecting Oracle

7  in 3Q01 and Oracle's forecasting process, at trial of this matter.  This motion is based upon this

8  Notice of Motion, the following Memorandum of Points and Authorities, the files and records in

9  this action, and such arguments and evidence as may be presented to the Court.

10              **MEMORANDUM OF POINTS AND AUTHORITIES**

11  **I.**      **INTRODUCTION**

12        Dr. Goedde purports to opine that Oracle was facing a major macroeconomic change

13  heading into 3Q01 and that Oracle's forecasting process was hopelessly flawed and completely

14  unreliable, even though that same process had accurately (but conservatively) predicted Oracle's

15  quarterly performance over the course of the preceding two years.  Dr. Goedde's opinions must

16  be excluded because they do not meet the "exacting standards of reliability" required by *Daubert*

17  and Rule 702.  *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

18        Dr. Goedde is not qualified to testify about macroeconomic conditions facing Oracle in

19  3Q01 because he lacks any relevant education and professional experience.  His economic

20  training and experience is in the areas of industrial organization, international trade and statistics.

21  Other than perhaps one instance of paid testimony, he has absolutely no experience evaluating

22  macroeconomic trends.  Not surprisingly, then, his opinion that Oracle faced a major

23  macroeconomic change in 3Q01 is not grounded in macroeconomic science; indeed, it is wholly

24  unscientific, subjective and unreliable.  At his deposition, Dr. Goedde was unable to provide a

25  coherent definition of a "major macroeconomic change" (a phrase not otherwise defined or used

26  in the relevant academic literature), nor could he identify any objective criteria for determining

27  whether or when such a change has occurred.  It is merely a label that Dr. Goedde made up to

28  characterize a completely subjective conclusion he reached based on a handful of factors—

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1  factors Dr. Goedde chose to include in his "analysis" without reference to any objective

2  standards or criteria.  Indeed, the factors Dr. Goedde reviewed in forming his opinion bear no

3  resemblance to the types of macroeconomic indicators that experts in the field use to reach

4  conclusions about macroeconomic trends.  Based on the current record, Dr. Goedde appears to

5  have started with his conclusion that Oracle faced a "major macroeconomic change," and then

6  worked backwards to select a set of purported economic indicators that would support it.

7  　　　　Finally, Dr. Goedde performed absolutely no analysis (scientific or otherwise) to

8  determine whether the factors he examined have anything to do with Oracle's business.  Because

9  his opinion at least purports to be that Oracle faced a "major macroeconomic change" that

10  negatively affected its business, Dr. Goedde's failure to even attempt to demonstrate a link

11  between the factors he examined and the strength or weakness of Oracle's business and its

12  forecasted sales and profits per quarter renders his opinion utterly useless to the finder of fact.

13  Simply put, Dr. Goedde's process does not come close to the "reliable principles and methods"

14  required by Rule 702.

15  　　　　Dr. Goedde's opinion regarding Oracle's forecasting process fares no better.  To begin

16  with, his opinion that Oracle's forecasting process was flawed is based on his unreliable and

17  inadmissible opinion that Oracle was facing a "major macroeconomic change"—fatally

18  undercutting his opinion on the forecasting process.  Even setting that flaw aside, Dr. Goedde's

19  conclusion lacks any semblance of analysis and is riddled with factual errors.  Dr. Goedde relies

20  on assumptions that are contradicted by the record, and again fails to conduct any meaningful

21  analysis that could be tested and evaluated in the manner *Daubert* requires to ensure that his

22  opinions are sufficiently reliable to be presented to the trier of fact.  As such, Dr. Goedde's

23  opinions must be excluded.

24  **II.      SUMMARY OF DR. GOEDDE'S OPINIONS**

25  　　　　Dr. Goedde is a Vice President at Freeman & Mills, Inc. where he spends "greater than

26  50 percent" of his time consulting on litigation matters.  Initial Report, p. 2; Goedde Depo. at

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   39:19-40:9.[1]  His educational background includes an B.S. in engineering and an M.A. and Ph.D.

2   in economics from Duke University.  Initial Report, p. 2.  He offers two opinions, both of which

3   are inadmissible in this case.

4        A.   **Dr. Goedde's "Major Macroeconomic Change" Opinion**

5        Dr. Goedde's first opinion is that "Oracle was facing a major macroeconomic change

6   heading into Q3 FY01 resulting in a decline in the market for its products."  Initial Report, p. 4.

7   Dr. Goedde reached this conclusion based upon:  (1) the NASDAQ index; (2) Oracle's sales to

8   dot com companies; (3) press reports that venture capital investment declined; (4) his own

9   conclusion, based on anecdotal reports, that "[b]y November 2000, technology spending was

10  down considerably and companies had problems acquiring financing;" and (5) that Cisco

11  Systems and Sun Microsystems purportedly lowered earnings expectations during Oracle's

12  3Q01.  Initial Report, pp. 4-8.  Dr. Goedde chose these factors without reference to any objective

13  standards or criteria, and consulted no pre-established parameters in his analysis.  *See id.*  His

14  conclusion is based entirely on his own subjective judgment regarding the data.

15       The phrase "major macroeconomic change" is not a term of art and has no generally

16  accepted meaning among macroeconomists.  *See* Goedde Depo. at 79:6-84:23; *see also id.* at

17  84:24-85:4 (conceding that "major macroeconomic change" is not a term of art and has no

18  generally accepted meaning among macroeconomists).  Although Dr. Goedde repeatedly used

19  the phrase, at his deposition he had enormous difficulty defining it:  "[Q.]  What is your

20  definition of a major macroeconomic change? A.  A change that affects their business.

21  Q. So you're saying it's a macroeconomic change that affects Oracle's business?  A.  Yes."

22  Goedde Depo. at 79:6-11.  After defining a "major macroeconomic change" as one that affects

23  Oracle's *business*, Dr. Goedde changed his definition and instead focused on a change that

24  affected Oracle's *customers*, but in so doing, he created a circular definition—using the very

25  term "major macroeconomic change" in his answer:

26

----

27  [1]  All exhibits are to the Declaration of Andrew M. Farthing ("Farthing Decl."), filed
28  concurrently herewith.  Exhibits 1-3 of the Farthing Declaration are the Initial Report, Rebuttal Report and the transcript of Dr. Goedde's July 11, 2007 deposition ("Goedde Depo."), respectively.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Q.    So you're saying – when you say that Oracle was facing a major
macroeconomic change, you're saying it was the sector that Oracle operated in,
2    that part of the economy had suffered some sort of an economic – macroeconomic
change?  Is that what you mean?

3    A.    The sector that – in which it sold its products.  The purchasers of those –
there was a major macroeconomic change that affected the purchasers of Oracle's
4    products.

Goedde Depo. at 80:12-20.  No doubt recognizing that these circular definitions are not

defensible, Dr. Goedde changed direction again, defining a "major macroeconomic change" by

reference to growth in the economy:

Q.    I'm asking for your definition of how you know what is a major
macroeconomic change.

…

THE WITNESS:    Macroeconomics would be outside the operation of Oracle.
There were several changes.  The economy – overall economy was experiencing a
period of lower growth, and the more sector-specific economy was experiencing a
change in growth as well.

BY MS. KYROUZ:

[Q.]    Okay.  So a period of lower growth or change in growth is, in your mind, a
major macroeconomic change?

A.    Yes.

Goedde Depo. at 81:6-17.

Within this new framework, however, Dr. Goedde could not put any parameters around

this change in growth:  "Q.  [O]ver what particular time period would there have to be a lower

growth rate for there to be a major macroeconomic change, according to your definition?  A.  It

would affect – it's not so much the time period.  It's what the extent of the change was."  Goedde

Depo. at 81:18-23.

Dr. Goedde likewise could not identify any objective, coherent parameters to distinguish

a "major" macroeconomic change from any other change:

Q.    So you think any change in the trend of the economy is a major
macroeconomic change?

…

THE WITNESS:    No, not necessarily.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    BY MS. KYROUZ:

2        Q.    Okay.  So how do you know if it qualifies to the level of a major
         macroeconomic change under your definition?
3
         A.    I would look to see what the conditions are of the change, what – I'd have
4        to look in more detail of the different changes.

5    Goedde Depo. at 83:9-20.  When asked how to determine whether a change was "major," Dr.

6    Goedde responded that it would be "a change [that] would require some sort of activity or action

7    on behalf of the participants in the market," but that that activity or action would be is unknown.

8    Goedde Depo. at 84:13-23.  Dr. Goedde's opinion regarding a "major macroeconomic change" is

9    nothing more than a label he made up based on definitions even he cannot fully explain.

10       B.    **Dr. Goedde's Forecasting Process Opinions**

11       Dr. Goedde's second category of opinions is that Oracle's forecasting process was flawed

12   for a variety of reasons, in particular that "Oracle failed to make adjustments to its forecasting

13   process to account for the negative impact of the changes in the economy and the market for

14   Oracle's products in violation of accepted forecast principles."  Initial Report, p. 4.  This

15   conclusion is based in large part on Dr. Goedde's first opinion that Oracle faced a "major

16   macroeconomic change" going into 3Q01, and Dr. Goedde concedes that he cannot separate the

17   opinions.  *See* Goedde Depo. at 101:13-20.

18       In addition, in reaching his opinion about Oracle's forecasting process, Dr. Goedde

19   assumed that Jennifer Minton, who was in charge of Oracle's forecasting process in 3Q01,

20   mechanically applied a conversion ratio (sales divided by pipeline) in determining the

21   adjustments she made to the field forecasts, purportedly on the basis of "very little deviation"

22   between Ms. Minton's forecast and the mathematical product of the current pipeline against the

23   prior year's conversion ratio.  *See* Initial Report, pp. 17-22; Rebuttal Report, pp. 74-76; Goedde

24   Depo. at 170:19-171:8.  Yet Dr. Goedde was unable to define what "very little deviation" meant,

25   tie it to any objective, generally accepted framework, or explain why the deviations here still

26   supported his opinion.  Goedde Depo. at 170:19-172:7.  Furthermore, Dr. Goedde either did not

27   consider or simply ignored Ms. Minton's testimony that her adjustments were based on a series

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    of factors beyond the conversion ratio.[2]   *See* Farthing Decl. Ex. 4, Minton Depo. at 121:24-

2    126:15.  Dr. Goedde did not test whether the deviations between Ms. Minton's Potential

3    projection and a mechanical application of the conversion ratio are meaningful, statistically

4    significant, or whether macroeconomic information was reflected in Oracle's forecast.

5         Dr. Goedde also claims that Oracle's forecasting process did not take into account

6    macroeconomic information in 3Q01, Initial Report, p. 11-12.  For this conclusion, Dr. Goedde

7    purports to rely on Jennifer Minton's testimony that she "did not consider any economic factors

8    when performing the license – when we prepared the license pipeline conversion package."

9    Initial Report, p. 12.  But this testimony says nothing about the forecasting process generally—

10   only the preparation of the license pipeline conversion package.  *Id.*

11        For his conclusion that Oracle's process was unreliable and unreasonable, Dr. Goedde

12   also relies on a single email from one divisional finance analyst to another.  *See* Farthing Decl.

13   Ex. 5, NDCA-ORCL 203681-83.  From this email, Dr. Goedde assumed that Mr. Ellison sought

14   to, and did, introduce more risk into the forecasting process.  Initial Report, pp. 4, 22-26.  Dr.

15   Goedde either ignored or did not fairly consider Mr. Ellison's on the subject:  "Q.  Okay.  At

16   around this time, did you want more risk to be put into the forecasts? … THE WITNESS:  *No.*

17   I've always wanted the forecast to be accurate.  You know, I would say slightly conservative but

18   accurate."  Farthing Decl. Ex. 6, Ellison Depo. at 423:7-12 (emphasis added).  Dr. Goedde also

19   accuses Oracle of doubling the risk in the forecast, but his Reports reflect absolutely no scientific

20   or quantitative analysis to show how the risk in the forecast was increased, much less doubled.

21   Although Dr. Goedde claimed at his deposition that he performed an analysis, it is not reflected

22   in either of his Reports.  *See* Goedde Depo. at 217:3-220:14.

23

24

---

25   [2]   In fact, Dr. Goedde's report itself illustrates the lack of foundation for his opinion.  In Exhibit
26   4 to his Rebuttal Report, Dr. Goedde notes that between February 26, 2001 and February 28,
     2001, the Potential projection declined by 11%–almost $139 million—even though the
27   pipeline remained the same.  Rebuttal Report at Ex. 4.  If Dr. Goedde's hypothesis were
     correct (that Minton performed a mechanical application of the prior year's conversion ratio
28   to the current quarter's pipeline to derive the Potential projection), the Potential on February
     28, 2001 would have been the same as it had been two days earlier.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

## III.    ARGUMENT

### A.    Legal Standard

Federal Rule of Evidence 702 states that a "witness qualified as an expert by knowledge, skill, experience, training, or education" can offer opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. Rule Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). These requirements apply not just to scientific knowledge, but also to other technical or specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Expert economic analysis qualifies as "technical" or "specialized" knowledge for purposes of *Daubert. See DSU Medical Corporation v. JMS Co., LTD*, 296 F. Supp. 1140, 1146-47 (N.D. Cal. 2003).

The party seeking to introduce expert testimony bears the burden of proving that the expert's testimony is admissible under Rule 702. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594 (9th Cir. 1996). To that end, *Daubert* and its progeny require proposed expert testimony to meet two criteria. First, the proposed expert must have appropriate "knowledge, skill, training, experience or education in the field in question. Fed. Rule Evid. 702. The proposed expert's qualifications must "provide a foundation for a witness to answer a specific question" relevant to the issues at hand. *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir 1994). The relevant inquiry is whether a witness has "sufficient *specific knowledge* to deal with the particular issues in the case at hand". *United States v. Webb*, 115 F.3d 711, 718 (9th Cir. 1997) (emphasis added).

Second, if the proposed expert is sufficiently qualified, the court must determine whether his opinions meet "exacting standards of reliability" in the sense required by *Daubert* and *Kumho.*[3] *Weisgram*, 528 U.S. at 455. In that regard, Rule 702 requires that expert testimony be based on objective criteria and reliable scientific methodology before it can be admitted. *See*

---

[3] Factors articulated by *Daubert* to aid in determining reliability include: (1) whether the expert's theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the theory has achieved general acceptance. *Daubert*, 509 U.S. at 593-94.

1    *Daubert*, 509 U.S. at 593; *Nimely v. City of New York*, 414 F.3d 381, 396, 399 (2d Cir. 2005).

2    The proffered testimony must be "properly grounded, well-reasoned and not speculative." Fed.

3    Rule Evid. 702, Adv. Comm. Notes (2000).  Further, Rule 703 demands that expert witnesses

4    rely only "on information of a kind reasonably relied on by experts in the field."  *Redman v. John*

5    *D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997).

6          Other factors may also be considered where appropriate.  *Daubert*, 509 U.S. at 594; *see*

7    *also* Fed. Rule Evid. 702 Adv. Comm. Notes.  Among the factors courts have considered are:

8    - Whether the opinion is based on "sound science," "discernible methodology" and an
9      "objective, independent validation" of that methodology.  *Daubert v. Merrell Dow
       Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir.); *Playtex Products, Inc. v. Proctor and
10     Gamble Co.*, No. 02 Civ. 8046, 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003).

11   - Whether the expert employs "the same level of intellectual rigor that characterizes the
       practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.

12   - Whether the opinion is supported by facts present in the record.  *Brooke Group v.
       Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242-243 (1993); *Guillory v.
13     Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

14   B.    **Dr. Goedde's Opinion Regarding Macroeconomic Conditions Facing Oracle
              In Q301 Should Be Excluded**
15
              1.    **Dr. Goedde Is Not Qualified To Testify Regarding Macroeconomic
16                    Conditions Facing Oracle In Q301**

17         Dr. Goedde lacks the necessary education and experience to opine on macroeconomic

18   conditions Oracle may have faced in 2000-2001.  That Dr. Goedde is trained as an economist

19   does not, without more, qualify him to opine on the macroeconomic conditions facing Oracle in

20   3Q01.  *See Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) (holding that

21   under FRE 702, "a witness must be qualified in the specific subject for which his testimony is

22   offered.  Just as a lawyer is not by general education and experience qualified to give an expert

23   opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have

24   expert knowledge about every conceivable scientific principle or disease.").  In that regard, Dr.

25   Goedde's masters and doctorate studies were focused not on macroeconomics, but instead on

26   "industrial organization and international trade and statistics."  Goedde Depo. at 47:1-12.  These

27   fields do not involve the kind of macroeconomic analysis Dr. Goedde purports to offer in his

28

opinion.[4] As such, Dr. Goedde's educational background does not qualify him to opine on the state of the macroeconomic conditions facing Oracle in 3Q01. *See Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1315 (D. Okla. 2000) (excluding physician's testimony, holding that "[t]he simple possession of a medical degree is insufficient to qualify a physician to testify as to the advantages of a spinal fixation device, the medical causation of spine-related ailments, or the mechanical functioning of an orthopedic implantation device").

Moreover, Dr. Goedde has never published any research assessing or evaluating macroeconomic conditions, nor has he previously analyzed macroeconomic conditions in the years 2000 and 2001, or prepared a macroeconomic forecast. Goedde Depo. at 73:16-18; 77:23-78:7. His only prior experience opinion on macroeconomic conditions involved alleged expert testimony on economic conditions facing the semiconductor industry in the late 1990's. *Id.* at 23:2-15. That experience, of course, does not qualify him as an expert in the field. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) (noting that "it would be absurd to conclude that one can become an expert simply by accumulating experience in testifying").[5] Lacking any education, training, or experience in assessing macroeconomic conditions, Dr. Goedde is not qualified to opine on the state of the economy in 2000-2001 and

---

[4] For example, macroeconomics has been defined as "the study of the structure and performance of national economies and the policies that governments use to try to affect economic performance." Farthing Decl. Ex. 7, ANDREW B. ABEL & BEN S. BERNANKE, MACROECONOMICS at 2 (4th ed. 2001). In contrast, industrial organization is the study of the structure of firms and markets and of their interactions…. The study of industrial organization to perfectly competitive model real-world frictions such as limited information, transaction costs, costs of adjusting prices, government actions, and barriers to entry by new firms into a market. It then considers how firms are organized and how they compete in such a world." Farthing Decl. Ex. 8, DENNIS W. CARLTON & JEFFREY M. PERLOFF, MODERN INDUSTRIAL ORGANIZATION at 3 (2d ed. 1994). International economics is the study of "issues raised by the special problems of economic interaction between sovereign states." Farthing Decl. Ex. 9, PAUL R. KRUGMAN & MAURICE OBSTFELD, INTERNATIONAL ECONOMICS at 3 (6th ed. 2003).

[5] In contrast, Defendant's macroeconomics expert, Professor R. Glenn Hubbard, Ph.D., served as an advisor to President-Elect Bush and as the Chairman of President Bush's Council of Economic Advisers in the 2000-2001 time period. Farthing Decl. Ex. 10, Hubbard Report ¶ 6. The Council of Economic Advisers has the duty "to gather timely and authoritative information concerning economic developments and economic trends, both current and prospective, to analyze and interpret such information for the purpose of determining whether such developments and trends are interfering, or are likely to interfere, with the achievement of such policy, and to compile and submit to the President studies relating to such developments and trends." *See* http://www.whitehouse.gov/cea (visited July 23, 2007).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   how the economy may have affected Oracle.  *Berry*, 25 F.3d at 1351 ("The witness's

2   qualifications must "provide a foundation for a witness to answer a specific question.").

3        2.   **Dr. Goedde's Opinion Regarding A Major Macroeconomic Change is Unreliable and Unscientific**

4

5        Setting aside his lack of qualifications, Dr. Goedde's methods fall far short of the

6   "exacting standards of reliability" required by *Daubert* and Rule 702.  *Weisgram*, 528 U.S. at

7   455.  His opinion that "Oracle was facing a major macroeconomic change heading into Q301

8   resulting in a decline in the market for its products" is wholly subjective and unscientific, and

9   fails to meet any meaningful standard of reliability.  Indeed, Dr. Goedde's "method"—and the

10  very phrase "major macroeconomic change"—appear to have been made up for the sole purpose

11  of offering an opinion in this case.

12       a.   **Dr. Goedde Cannot Reliably Define A "Major Macroeconomic Change"**

13

14       One key touchstone of a reliable, scientific opinion is that it be based upon "objective

15  criteria."  Fed. R. Evid. 702; *see also* Fed. Rule Evid. 702, Adv. Comm. Notes (2000); *Nimely*,

16  414 F.3d at 396, 399 (rejecting expert opinion premised on "unverifiable subjectivity").  Dr.

17  Goedde's opinion that Oracle faced a "major macroeconomic change" fails this most basic test.

18       Dr. Goedde concedes that "major macroeconomic change" is not a term of art within the

19  field of macroeconomics, has not been used in any peer-reviewed article, and indeed, has no

20  established, objective definition among macroeconomists.  Goedde Depo. at 84:24-85:4.

21  Lacking any established, objective definition generally accepted by experts in the field, Dr.

22  Goedde simply made one up.[6]  During his deposition, however, Dr. Goedde was utterly unable to

23  provide a coherent, objective definition of the term.  *See* Section II, *supra*; Goedde Depo. at

24  79:6-84:23.  He began with a thoroughly circular definition, under which a "major

_____

25  [6]   Indeed, it appears that Dr. Goedde made up this term in order to invoke lay testimony of Mr.
    Ellison that if there had been a "major macroeconomic change," it would no longer be
26  possible to "extrapolate" based on historical trends.  Initial Report, p. 18; Farthing Decl. Ex.
    6, Ellison Depo. at 384:6-385:7.  Having done so, however, Dr. Goedde rejected Mr.
27  Ellison's own definition of the term (a "sudden growth in the economy or sudden shrinkage
    in the economy"), presumably because the economic data do not support Dr. Goedde's
28  conclusion under that definition, as he conceded in his deposition.  *See* Goedde Depo. at
    181:2-182:17.  ("There was not a contraction in the economy.").

1   macroeconomic change" (which Dr. Goedde claims fundamentally affected Oracle's business), is

2   defined as a macroeconomic change that affects Oracle's business. *See* Goedde Depo. at 79:6-

3   11. He later defined it as a change affecting Oracle's customers, but this definition was also

4   circular, using the very phrase "major macroeconomic change" to define itself. *See id.* at 80:12-

5   20. He finally defined it, amorphously, as "a period of lower growth" or a "change in growth."

6   *See id.* at 81:6-17. But even with this change, Dr. Goedde was unable to quantify the degree of

7   change necessary to qualify as a "major" change or the period of time over which the change

8   would occur. *See id.* at 81:18-84:23.

9        Simply put, the phrase "major macroeconomic change" is a label that Dr. Goedde created

10   *solely for purposes of this litigation.* Goedde Depo. at 85:13-15. It is a "subjective, conclusory

11   approach" that lacks any objective criteria, and therefore it "cannot reasonably be assessed for

12   reliability." Fed. Rule Evid. 702, Adv. Comm. Notes (2000). It therefore fails to meet the

13   requirements of *Daubert* and Rule 702. *Id.*; *Nimely*, 414 F.3d at 396, 399 (rejecting an expert

14   opinion premised on "unverifiable subjectivity").

15        b.   **There Is No Objective or Scientific Basis for Selecting the Five**
16             **Factors Dr. Goedde Relied Upon in Concluding That A "Major**
                 **Macroeconomic Change" Occurred**

17

18        Expert opinions that do not rely "on information of a kind reasonably relied on by experts

19   in the field" are not admissible under Rule 703. *Redman*, 111 F.3d at 1179. Here, Dr. Goedde

20   relied on five factors in assessing the macroeconomic climate as of Oracle's 3Q01:  (1) the

21   NASDAQ index; (2) Oracle's sales to dot com companies; (3) press reports that venture capital

22   investment declined; (4) anecdotal reports that "[b]y November 2000, technology spending was

23   down considerably and companies had problems acquiring financing;"[7] and (5) that Cisco

24   Systems and Sun Microsystems purportedly lowered earnings expectations during Oracle's

25   3Q01. Initial Report, pp. 4-8. As with Dr. Goedde's creation of the phrase "major

26   macroeconomic change," there is absolutely no science behind Dr. Goedde's selection of these

27   _____

28   [7]   Dr. Goedde later conceded that the U.S. government data showed that spending on software
         continually increased during calendar year 2000. Goedde Depo. at 120:20-122:17 ("THE
         WITNESS:  Those numbers are increasing over time.").

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    five factors.

2         Dr. Goedde cites no objective criteria for selecting the five factors he relied upon, nor

3    does he cite any published research or authoritative source suggesting that an expert in the field

4    can reliably assess macroeconomic conditions by analyzing those five factors.  *See* Reports at

5    *passim*.  Indeed, Dr. Goedde has not cited any rationale (let alone a scientific basis) for relying

6    on these factors, and other than the fact that they support his conclusion, there appears to be

7    none.

8         Moreover, the factors Dr. Goedde relied upon bear no resemblance to the economic

9    indicators actually relied upon by experts in the field to evaluate macroeconomic trends.  For

10   example, the Business Cycle Dating Committee of the National Bureau of Economic Research

11   ("NBER") "maintains a quarterly chronology of the U.S. business cycle" and identifies peaks

12   and troughs in the business cycle.[8]  *See* Farthing Decl. Ex. 11 at 6.  For that purpose, in 2000 and

13   2001, the Committee analyzed four factors:  industrial production, employment, real income, and

14   wholesale-retail trade (or in other words, the volume of sales of the manufacturing and trade

15   sectors).  *Id.* at 1.  In analyzing industrial production and manufacturing/trade sales, NBER relies

16   on data provided by the Federal Reserve and the Commerce Department's Bureau of Economic

17   Analysis, respectively.  *Id.*  Dr. Goedde did not rely on any of these factors in forming his

18   opinion here.  Initial Report, pp. 4-8.  Indeed, none of Dr. Goedde's inputs are true

19   macroeconomic indicators.  The NASDAQ index comes closest, but it is a measure of equity

20   values of companies and not a core measure of the health of the economy.  For example, in

21   analyzing the macroeconomic trends during the relevant period, the NBER did not consider the

22   performance of any selection of equity securities to be a legitimate and accurate macroeconomic

23   indicator; indeed, in the Business Cycle Dating Committee release, the stock market receives no

24   mention.[9]  *See* Farthing Decl. Ex. 11.

---

26   [8]   The NBER was founded in 1920 and is "the nation's leading nonprofit economic research
27        organization. Sixteen of the 31 American Nobel Prize winners in Economics and six of the
          past Chairmen of the President's Council of Economic Advisers have been researchers at the
          NBER." *See* http://www.nber.org/info.html (visited July 23, 2007).

28   [9]   Notably, in November 2001, the NBER concluded that business activity in the U.S. had
          peaked in March 2001, nearly a full year after Dr. Goedde claims there was a "major" (and

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1
               c.     **Dr. Goedde Offers No Reliable, Scientific Basis for Connecting His "Major Macroeconomic Change" to Oracle's Business**

2

3      "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to

4 admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.

5 A court may conclude that there is simply too great an analytical gap between the data and the

6 opinion offered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Zenith Elec. Corp. v.*

7 *WH-TV Broadcasting Corp.* 395 F.3d 416, 419-20 (7th Cir. 2005) (excluding expert testimony

8 and concluding, that "[a]n expert who supplies nothing but a bottom line supplies nothing of

9 value to the judicial process"); *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053,

10 1063 n.7 (9th Cir. 2002).

11      Ostensibly, the purpose of Dr. Goedde's work was to demonstrate that at the beginning of

12 3Q01, Oracle faced a significant change in its business and, more specifically, in its ability to

13 forecast quarterly sales and profits.  Put another way, unless the "major macroeconomic change"

14 that Dr. Goedde observes had some meaningful impact on Oracle's business and its ability to

15 forecast quarterly results, Dr. Goedde's opinion is utterly irrelevant to the case.  *See* Fed. Rule

16 Evid. 702 (only permitting expert testimony that "will assist the trier of fact to understand the

17 evidence or to determine a fact in issue").  Given the apparent purpose of his work, one would

18 expect Dr. Goedde to analyze economic factors that have a demonstrable impact on Oracle's

19 business, or at least some observable correlation with them.  He did not.  In fact, Dr. Goedde

20 made absolutely no effort to show that the factors he analyzed have any impact on Oracle's

21 business at all, much less an impact that significantly hampered Oracle's ability to forecast its

22 quarterly results.  For example, Dr. Goedde has performed no analysis, let alone a scientific one,

23 to show that Oracle's forecasting process was unable to properly account for any supposed

24 decline in sales to dot-com customers, or any other customers.  Initial Report at pp. 12-16.

25

26 downward) "macroeconomic change" and after the end of the fiscal quarter at issue in this
case.  Farthing Decl. Ex. 11.  This fact strongly undercuts Dr. Goedde's opinion. *See Lust*,

27 89 F.3d at 598; *see also* Fed. Rule Evid. 702, Adv. Comm. Notes (2000) ("when an expert
purports to apply principles and methods in accordance with professional standards, and yet

28 reaches a conclusion that other experts in the field would not reach, the trial court may fairly
suspect that the principles and methods have not been faithfully applied").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

As for the remaining factors, Dr. Goedde has done nothing to show that they have any relationship at all with Oracle's business.  Dr. Goedde did not analyze the relationship, if any, between Oracle's quarterly sales and movements in the NASDAQ index, changes in "technology" spending, and venture capital investment.  Had he done so, he would have found (as Defendants' experts did) that there is no meaningful correlation.  *See also* Farthing Decl. Ex. 12, Hubbard Rebuttal ¶¶ 61-102; Farthing Decl. Ex. 13, Foster Report ¶ 63.  Dr. Goedde's failure to demonstrate a connection between the five factors he analyzed and Oracle's business can hardly be considered the "intellectual rigor that characterizes the practice of" macroeconomists. *Kumho Tire*, 526 U.S. at 152.  As such, Dr. Goedde's opinion that Oracle faced a "major macroeconomic change" is inadmissible.  *Id.*

C.   **Dr. Goedde's Opinions Regarding Oracle's Forecasting Process Should Be Excluded**

1.   **Dr. Goedde's Opinions Regarding Oracle's Forecasting Process Are Based On His Inadmissible Opinion That Oracle Was Facing A Major Macroeconomic Change**

Dr. Goedde opines that Oracle's forecasting process was flawed because, among other perceived deficiencies, it failed to consider the major macroeconomic change facing Oracle in Q301.  Initial Report, pp. 17-22; Rebuttal Report, pp. 76-81.  This opinion is based upon Dr. Goedde's opinion that Oracle confronted a major macroeconomic change, which is itself unscientific and unreliable by *Daubert* standards.  *See* discussion *supra* at III.B.  As such, his opinion regarding Oracle's forecasting process is also unreliable and is inadmissible for the same reasons.[10]  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (holding that "any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible") (citations and internal quotations omitted).

2.   **Dr. Goedde's Opinions Regarding Oracle's Forecasting Process are Unreliable and Unscientific**

Setting aside the reliance on Dr. Goedde's first, inadmissible opinion, Dr. Goedde's opinions about Oracle's forecasting process independently fail the *Daubert* test.  In particular,

---

[10]   Dr. Goedde admits the two opinions cannot be separated.  *See* Goedde Depo. at 101:13-20 ("I didn't segment it to determine what the weight was for each of these factors.")

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Dr. Goedde makes numerous conclusions without testing his hypotheses, and relies on premises

2    that are expressly contradicted by the record.  These defects also render his opinions regarding

3    Oracle's forecasting process inadmissible.  *See Daubert*, 509 U.S. at 593; *Supply & Bldg. Co. v.*

4    *Estee Lauder Int'l, Inc.*, No. 95 CIV.8136(RCC), 2001 WL 1602976, at *5 (S.D.N.Y. 2001)

5    (rejecting expert who relied on premises that were "contradicted by other data available to [the

6    expert]").

7            As noted above, Dr. Goedde's opinions rely in part on his criticism that Ms. Minton

8    improperly derived the Potential Projection for Q301, when the NASDAQ index was increasing,

9    from the Conversion Ratio in Q300, when the NASDAQ was decreasing.  Initial Report, pp. 5,

10   19-20.  In so doing, Dr. Goedde simply ignored Ms. Minton's testimony as to how she derived

11   the Potential Projection.  Farthing Decl. Ex. 4, Minton Depo. at 121:24-126:24 (testifying that

12   her upside adjustments were based on a number of factors, including:  1) the status of large deals;

13   2) the best, forecast and worst case numbers for each division; 3) the actual conversion ratio

14   from the same quarter in the prior year; 4) an analysis of the opportunities for the current quarter

15   and the likelihood that they would close informed by discussion with field sales and finance

16   personnel; and 5) the "forecasting behaviors" of the individuals involved in the process and

17   whether they historically sandbagged).  Dr. Goedde's assumptions are contradicted by Ms.

18   Minton's testimony and his conclusions are therefore unreliable and inadmissible.  *See Guillory*,

19   95 F.3d at 1331 (5th Cir. 1996) (holding that expert testimony based on facts contradicted by the

20   record was properly excluded because "[e]xpert evidence based on a fictitious set of facts is just

21   as unreliable as evidence based upon no research at all").

22           Dr. Goedde also apparently assumed that the direction of the NASDAQ index had an

23   effect on Oracle's Conversion Ratio.  Otherwise, his criticism of Ms. Minton for using a

24   conversion ratio from a period when NASDAQ was rising to forecast results in a period when

25   NASDAQ was decreasing would make no sense.  But he performed absolutely no empirical

26   analysis to confirm this hypothesis; he simply assumed there was a meaningful relationship

27   between the two.  Initial Report, pp. 19-20.  In contrast, Professor Foster's quantitative analysis

28   compared Oracle's conversion ratio in quarters prior to Q301 and found that Dr. Goedde's

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   hypothesis was false—there was no relationship between Oracle's conversion ratios and the

2   direction of the NASDAQ index.  Foster Report ¶ 63.  Dr. Goedde's failure to even try to test his

3   hypothesis, and the fact that it is demonstrably false, further undercuts his opinion.  *See Daubert*,

4   509 U.S. at 593 (scientific methodology requires generating and testing hypotheses).

5          Dr. Goedde's conclusion that Minton was mechanically applying the conversion ratio in

6   making her upside adjustments also lacks any analytical connection to the data.  Goedde purports

7   to compare the Upside adjustments to a mechanical application of the conversion ratio and

8   determines that those numbers are <u>not</u> identical – but he claims that there is "very little

9   deviation" between the numbers.  This assertion lacks any analytical framework and Goedde is

10  unable to articulate how much deviation would change his opinion that Minton was mechanically

11  applying a conversion ratio rather than engaging in the actual process she testified that she

12  performed each quarter.  *See* Goedde Depo. at 170:19-172:7.  Because there is no analytical

13  connection between the data and Dr. Goedde's conclusions, those conclusions are unreliable and

14  inadmissible under *Daubert*.  *Elsayed Mukhtar*, 299 F.3d at 1063 n.7 (excluding "opinion

15  evidence which is connected to existing data only by the *ipse dixit* of the expert"); *Playtex*, 2003

16  WL 21242769, at *10 (excluding expert testimony for "fail[ing] to meet the threshold for

17  reliability under *Daubert*, as they did not rely on any discernable methodology, have not been

18  subject to peer review and cannot be tested or verified here").[11]

19         Dr. Goedde also claims that Oracle's forecasting process did not take into account

20  macroeconomic information in 3Q01, misconstruing Ms. Minton's very clear testimony.  Initial

21

22

---

23  [11]  Dr. Goedde's subsidiary opinions regarding the forecasting process, including the hockey-
         stick effect and certain of Oracle's internal forecasting measures suffer from these same
24       defects.  Initial Report, pp. 4, 26-51.  For instance, Dr. Goedde contends that Oracle's actual
         monthly revenues "informed defendants that Oracle would not meet its Public Guidance,"
25       Initial Report, p. 51, but Professor Foster concluded that not only was Dr. Goedde's analysis
         improperly constructed, Farthing Decl. Ex. 13, Foster Report ¶¶ 70-7, but that a properly
26       constructed analysis shows that there is no predictive value to actual revenues for the first
         two months of a quarter.  *Id.* at ¶¶ 72-76.  Similarly, Dr. Goedde concludes that "[s]ignificant
27       pipeline declines" over the course of 3Q01 "informed defendants … that Oracle was being
         adversely affected by the economic environment," Initial Report, p. 37, but Professor Foster
28       demonstrated that as a matter of historical fact, Oracle tended to have greater revenue growth
         in quarters where the pipeline decreased.  Farthing Decl. Ex. 13, Foster Report ¶¶ 108-10.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   Report, pp. 11-12. As both Professors Hubbard and Foster have demonstrated,[12] the record

2   amply demonstrates that macroeconomic information was taken into account in Oracle's

3   forecasting process and that the process was historically accurate.[13]  Dr. Goedde's conclusion is

4   contrary to Ms. Minton's testimony, and is therefore unreliable. *See Brooke*, 509 U.S. at 242-

5   243 ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the

6   law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it

7   cannot support a jury's verdict."); *Supply & Bldg. Co.*, 2001 WL 1602976, at *5.

8       Finally, Dr. Goedde's opinion that Mr. Ellison directed more "risk" to be included in the

9   forecast, causing the forecast process to be flawed (Initial Report, pp. 4, 22-26), is unreliable

10  because it is based on a misreading of the evidence.[14]  Dr. Goedde's opinion that more "risk"

11  was introduced into the forecasting process is not supported by any quantitative analysis. *See*

12  Initial Report, pp. 22-26; Rebuttal Report, pp. 81-84.  Instead, he simply assumes on the basis of

13  single email between two finance employees in one department that sales personnel all uniformly

14  received and followed the supposed "directive" in a way that miraculously ended sandbagging

15  despite it being contrary to their own interests and incentives. *See* Goedde Depo. at 223:18-

16  224:15. Because he did no quantitative analysis, Dr. Goedde was unable to say how much less

17

18  [12] *See* Farthing Decl. Ex. 13, Foster Report ¶¶ 56-61 (opining that macroeconomic information
    was incorporated through "1) sales representatives' deal-level forecast, which were based on

19  their discussions with customers; and 2) management judgment based on discussions
    between managers and their direct reports, their customers, and other internal company

20  information as well as their understanding of the world around them); *id.* ¶ 62 (demonstrating
    that Oracle's EPS projections were consonant with those of securities analysts, who are

21  incorporating market information into their projections); Farthing Decl. Ex. 12, Hubbard
    Rebuttal ¶¶ 51-60 ("economic data are incorporated to inform the [forecasting] process").

22  [13] Professor Foster concluded that the Potential Forecast, generated by the forecasting process,
    was indeed Oracle's most accurate forecasting metric. Farthing Decl. Ex. 13, Foster Report

23  ¶ 114. Professor Foster analyzed the Potential Forecast for six of seven quarters prior to Q3
    FY01 and established that Oracle's forecasting process yielded a Potential Projection that

24  was conservative when compared to Actual Results. *Id.* at ¶¶ 47, 114.

25  [14] Dr. Goedde's conclusion is based on a misconstruction of Mr. Ellison's deposition testimony,
    and is therefore inadmissible. *Supply & Bldg. Co.*, 2001 WL 1602976, at *5 (rejecting expert

26  who relied on premises that were "contradicted by other data available to [the expert]"). Mr.
    Ellison specifically testified that he did not request more risk, but rather he "always wanted

27  the forecast to be accurate. ... slightly conservative but accurate." Farthing Decl. Ex. 6,
    Ellison Depo. at 423:7-12. Indeed, Dr. Goedde does not discuss this testimony in his Initial

28  Report to explain why he disregarded it or found it not credible. Dr. Goedde's opinion on
    this subject is therefore unreliable and inadmissible. See *Guillory*, 95 F.3d 1320 at 1331.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                17

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   sandbagging occurred after the purported change in the process.   Goedde Depo. at 227:14-228:9.

2   This lack of methodology is consistent with the other "I know it when I see it" opinions offered

3   by Dr. Goedde.  Because of the lack of an empirical analysis that additional risk actually was

4   introduced into the field forecast—much less the "double" risk Dr. Goedde touts—his opinion is

5   not reliable under the principles articulated in *Daubert*, and not admissible.[15]

6        In sum, because Dr. Goedde's opinion that Oracle's forecasting process was flawed relies

7   on his inadmissible opinion that Oracle was facing a "major macroeconomic change" and in any

8   event is based on no empirical data or reliability methodology, it is therefore inadmissible under

9   *Daubert*.

10  **IV.    CONCLUSION**

11       For the foregoing reasons, Defendants respectfully request that Dr. Goedde's

12  reports and opinions be excluded in their entirety.

13  Dated:  July 26, 2007                          Respectfully submitted,

14                                                 LATHAM & WATKINS LLP

15

16                                                 By:_____/s/ Peter A. Wald_____
                                                   Peter A. Wald
17                                                 Attorneys for Defendants ORACLE
                                                   CORPORATION, LAWRENCE J.
18                                                 ELLISON, JEFFREY O. HENLEY,
                                                   and EDWARD J. SANDERSON
19

20

---

21  [15]  At his deposition, Dr. Goedde purported to testify that his opinion that more risk was
22  introduced into the forecast by Mr. Ellison was based on an analysis of the field forecast. *See*
    *generally* Goedde Depo. at 217:3-220:11, 223:18-227:24. Dr. Goedde, admitted, however,
23  that the analysis discussed at his deposition is not contained in either of his reports. *Id.* at
    220:12-14 ("Q.  Have you set forth, that analysis, in any of your reports?  A. I haven't
24  included it in my reports."). Rule 26(a)(2)(B) requires that an expert's report "contain a
    complete statement of all opinions to be expressed and the basis and reasons therefor." Fed.
25  R. Civ. P. 26(a)(2)(B). Rule 26(a)(2)(B) is designed to prevent this type of unsupported,
    after-the-fact assertion, and prohibits Dr. Goedde from relying on this purported analysis in
26  support of his opinions. *See In re Williams Sec. Litig.*, No. 4:02-cv-00072 SPF-FHM, 2007
    WL 2007987, at *49 (N.D. Okla. July 6, 2007) (holding that failure to disclose the basis and
27  reasons for the expert's opinion in his report according to Rule 26(a)(2)(B) precluded that
    opinion under Rule 702 and *Daubert*); *see also Hoffman v. Caterpillar, Inc.*, 368 F.3d 709,
28  715 (7th Cir. 2004) (excluding portion of expert's opinion under Rule 37(c)(1) because the
    basis for that opinion was not disclosed as required by Rule 26(a)(2)(B)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)