LATHAM & WATKINS LLP
　Peter A. Wald (SBN 85705)
　Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
　　　　 michele.kyrouz@lw.com

LATHAM & WATKINS LLP
　Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
　Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
　Dorian Daley (SBN 129049)
　James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988-MJJ (Consolidated)<br><br>CLASS ACTION<br><br>**DECLARATION OF MARY ANN ANTHONY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　N/A<br>Time:　N/A<br>Judge:　Hon. Martin J. Jenkins |

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF MARY ANN ANTHONY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Master File No. C-01-0988-MJJ

I, Mary Ann Anthony, declare as follows:

1. I submit this declaration in support of Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication. I have personal knowledge of the facts set forth below and, if called upon, I could and would competently testify thereto.

2. I was employed by Oracle Corporation ("Oracle") from 1996 to 2002. During the time period I am informed is relevant to this litigation (the June 2000 through June 2001 time frame) I served as a director in Oracle's Enterprise Resource Planning ("ERP") development group, and in that capacity as the coordinator of the ERP group's Product Release Process ("PRP") group.

3. During the relevant time period, in my capacity as the coordinator of Oracle's ERP PRP group, I was responsible for, among other things, gathering and recording information on a regular basis regarding customers who were "live" on Oracle's Suite 11i software, as well as regarding customers who had agreed to serve as references for Suite 11i.

4. Throughout my entire employment at Oracle, including that period of my employment that preceded the commercial release of Suite 11i in May of 2000, the term "live" was used at Oracle to refer to a customer that was running some aspect of its business on one or more Oracle application modules. Thus, for instance, if a customer was running its business on any one of the several modules within Oracle's iProcurement 11i application family (*e.g.*, Purchasing, Self-Service, or Supplier Scheduling), that customer would be considered live on Suite 11i. Oracle used this definition in the context of Suite 11i, as well as Oracle's previous applications releases because it reflected the reality of the way customers of business enterprise software purchase and install it. While some customers purchased all of the applications offered by Releases 10.7, 11.0 and 11i and implemented them all at once, others purchased only one of the applications, or purchased only a few of the applications and implemented them over time, across business units or geographic lines.

5. Throughout my employment at Oracle, a customer was considered a reference customer if the customer had agreed to allow Oracle to make public reference to the fact that the customer was a user or purchaser of Oracle products or services. Reference

LATHAM•WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

1

DECLARATION OF MARY ANN ANTHONY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Master File No. C-01-0988-MJJ

customers also often agreed to speak with potential Oracle customers or members of the press or analyst community regarding their experience with Oracle's products and services. Typically, customers who agreed to be references were running their businesses on one or more modules of Oracle's software applications. However, it was not uncommon for customers to serve as a reference prior to going live if the customer was familiar with the software from pilot testing or other pre-installation use, and willing to discuss their experience with the software.

6. During 2000 and 2001, it was my regular practice to gather information regarding customers that were live on Suite 11i by speaking with personnel in Oracle's development, support and consulting divisions who, through their ordinary duties, were in contact with these customers and were familiar with their implementations. When I learned that a customer was live on Suite 11i, I would on a regular basis record that information on spreadsheets, along with other information regarding the customer's implementation I was able to gather, including what applications the customer was running, whether the implementation was an upgrade from a prior version of Oracle's enterprise applications, the source from which I derived the information, and any future implementation plans of which I became aware. I also dated the spreadsheets to indicate when I last updated them.

7. Because I was charged with tracking the number of customers live on Suite 11i, I gathered information regarding as many live customers as I could, but it is possible that there were customers that were live on Suite 11i during the time period relevant to this litigation of which I was not aware. In addition, when in the course of gathering information regarding live customers I learned that a customer would soon be going live on Suite 11i, I would make a note of that on my spreadsheet. However, I was not charged with, nor did I endeavor to record every customer that was implementing Suite 11i during the time period relevant to his suit. In fact, the currently-implementing customers listed on my spreadsheets of live Suite 11i customers would only have represented a small percentage of the customers that were implementing Suite 11i at that time.

8. Attached hereto as Exhibits 44 -50 are several of the spreadsheets that I created to track live Suite 11i customers during the time period relevant to this suit.

LATHAM WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF MARY ANN ANTHONY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Master File No. C-01-0988-MJJ

9. As I said, I was responsible for keeping track of the number of live customers for the company and this information was used for a number of purposes, including for public statements and press releases. For example, attached hereto as Exhibit 51 is a February 20, 2001 press release from Oracle indicating that at that time there were more than 180 customers live on Suite 11i. Though I do not specifically remember when or to whom I would have provided that number, I am confident that the information in this press release regarding the number of live Suite 11i customers was provided by me at some point to someone in Oracle's marketing division, and that it would have been the regular practice of those who created public pronouncements referencing the number of live Suite 11i customers to get that information from me, as the custodian of that information. I maintained the information on the live customer spreadsheets I referenced above.

10. During the relevant time period, it was also my responsibility to gather information regarding customers who had agreed to act as references for Suite 11i from personnel in Oracle's development and marketing divisions who, through their ordinary duties, were in contact with those customers and familiar with their experience with the product and their willingness to act as references for it. It was my regular practice to summarize the live customer and reference information I had received and send that information via email to members of the Oracle Applications Management Committee ("AMC") for discussion at the Applications Management Committee Meeting ("AMCM"), which was a periodic meeting of Oracle Vice Presidents in the development organization who reported to Senior Vice President Ron Wohl.

11. Attached hereto as group Exhibit 52 are several examples of the emails that I sent to the AMC summarizing (among other things) live customer and reference information for discussion at the AMCM.

12. In addition, my contacts in the development organization would, as part of their ordinary duties, draft short summaries regarding customer experiences with Suite 11i, including the products those customers were using and other relevant information about those

LATHAM·WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

3

DECLARATION OF MARY ANN ANTHONY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Master File No. C-01-0988-MJJ

1  customers. As part of my regular duties, I would periodically synthesize that information into a
2  report regarding Suite 11i references.
3       13.    Attached hereto as Exhibit 53 is a report that I put together regarding
4  customers that had agreed to serve as references for Oracle's Suite 11i.
5       I declare under penalty of perjury under the laws of the State of California that the
6  foregoing is true and correct. Executed this 20th day of July, 2007, at Mountain View
7  California.

_____
Mary Ann Anthony

LATHAM-WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

4

DECLARATION OF MARY ANN ANTHONY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Master File No. C-01-0988-MJJ