IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**Certified Copy**

In re ORACLE CORPORATION

SECURITIES LITIGATION.

                Master File No. C-01-0988-MJJ

This Document Relates To:

   ALL ACTIONS.

_____/

---oOo---

VIDEOTAPED DEPOSITION OF EDWARD YOURDON

TUESDAY, JULY 3, 2007

---oOo---

SHEILA CHASE & ASSOCIATES
REPORTING FOR:
LiveNote World Service
221 Main Street, Suite 1250
San Francisco, California 94105
Phone:  (415) 321-2311
Fax:    (415) 321-2301

Reported by:
DIANA NOBRIGA, CSR, CRR
LICENSE NO. 7071

1  my estimate of the size of Suite 11i was incorrect. I
2  felt that he agreed that Suite 11i was very large, and
3  did not offer any disagreement with the estimate that I
4  quoted in my report about ERP systems like Suite 11i
5  being approximately 250,000 function points in size.
6  And I specifically disagreed with an interpretation that
7  he made of one paragraph of my report about urgent bugs
8  being implemented. I believe it was in paragraph 34 of
9  my report, perhaps it was paragraph 84.
10          There was a paragraph in my report where I
11 said that a decision has to be made about whether to
12 implement patches and bug fixes -- here it is, it is
13 page 13 -- I'm sorry, page 14, paragraph 33, my
14 statement said, "The decision to install 'bug fixes'
15 typically requires careful analysis," et cetera, et
16 cetera, for the remainder of that paragraph.
17          And what I was describing in that paragraph
18 was the decision by customers as to whether or not they
19 would install patches or bug fixes was a decision that
20 required careful analysis. I believe that the expert,
21 whose name I've now forgotten, at the end of the day --
22     Q.   Randy Jensen?
23     A.   Dr. Jensen interpreted that statement as being
24 the decision by a vendor, i.e., by a company like Oracle
25 to install bug fixes required a careful analysis, and

```
 1   that's not what I was talking about at all.
 2       Q.  So you're saying that he misinterpreted what
 3   you wrote?
 4       A.  I believe he did.  And from that drew a
 5   conclusion that the 5,000 patches that have been
 6   attributed to Oracle 11i were all urgent bugs that had
 7   to be implemented.
 8       Q.  So had you -- had his interpretation been the
 9   correct interpretation, would his conclusion have been
10   correct?
11       A.  I don't believe it would have been, because he
12   used that to conclude that the 5,000 patches, first of
13   all, were all bugs, but equally importantly, that they
14   were priority one or very urgent bugs, and I don't
15   believe that conclusion.
16       Q.  I may have misstated my question.  If you had
17   written or if you intended what he interpreted your
18   comment to be, would his conclusion have been correct?
19           MR. RAWLINSON:  Objection to form, vague.
20           MR. WILLIAMS:  Q.  Do you understand that?
21   You said he misinterpreted what you said; right?
22       A.  Yes.
23       Q.  Based on his interpretation, were his
24   conclusions correct, in your view, based on his
25   interpretation?  Notwithstanding the fact that you
```

```
 1   believe he misinterpreted what you said.  But was there
 2   a failure in his analysis or conclusion, or was it
 3   simply that he misinterpreted what you wrote?
 4             MR. RAWLINSON:  Same objection; vague.
 5             THE WITNESS:  I believe that his
 6   misinterpretation led to a substantial assumption on his
 7   part that changed his opinion, and -- or led to his
 8   opinion that I disagreed with.  And if he had
 9   interpreted this correctly, I think he would have been
10   using facts that simply were not true.
11             MR. WILLIAMS:  Q.  When you say if he had
12   interpreted it correctly, you mean if he had interpreted
13   it the way you meant it?
14        A.   No.  I meant that if, following your
15   hypothetical scenario, if his interpretation had somehow
16   been correct, if he had assumed that my paragraph about
17   installing bug fixes was something that was pertaining
18   to a vendor installing bug fixes within their base
19   product, that would have led him, as indeed it did lead
20   him, to assumptions that I think were completely
21   incorrect and could not be sustained within this case.
22             MR. WILLIAMS:  I have nothing further.
23             EXAMINATION BY MR. RAWLINSON
24             MR. RAWLINSON:  Q.  Mr. Yourdon, you indicated
25   earlier that you have not examined the user interface
```

```
 1   STATE OF CALIFORNIA        )
                                )
 2                              )
                                )
 3   COUNTY OF ALAMEDA          )

 4          I, DIANA NOBRIGA, hereby certify that the
 5   witness in the foregoing deposition was by me duly sworn
 6   to testify to the truth, the whole truth, and nothing
 7   but the truth in the within-entitled cause; that said
 8   deposition was taken at the time and place therein
 9   stated; that the testimony of said witness was reported
10   by me, a Certified Shorthand Reporter and disinterested
11   person, and was thereafter transcribed into typewriting,
12   and that the pertinent provisions of the applicable code
13   or rules of civil procedure relating to the notification
14   of the witness and counsel for the parties hereto of the
15   availability of the original transcript of the
16   deposition for reading, correcting and signing have been
17   met.
18          And I further certify that I am not of counsel
19   or attorney for either or any of the parties to said
20   deposition, nor in any way interested in the outcome of
21   the cause named in said action.
22          DATED:  July 6, 2007
23
24                              _____
25                              DIANA  NOBRIGA, CSR NO. 7071
```