1  LATHAM & WATKINS LLP
      Peter A. Wald (SBN 85705)
2     Michele F. Kyrouz (SBN 168004)
   505 Montgomery Street, Suite 2000
3  San Francisco, CA 94111-2562
   Telephone: (415) 391-0600
4  Facsimile: (415) 395-8095
   E-mail: peter.wald@lw.com
5          michele.kyrouz@lw.com

6  LATHAM & WATKINS LLP
      Jamie L. Wine (SBN 181373)
7  633 West Fifth Street, Suite 4000
   Los Angeles, CA 90071-2007
8  Phone: (213) 485-1234
   Fax: (213) 891-8763
9  E-mail: jamie.wine@lw.com

10  Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
    J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

11

12  ORACLE CORPORATION
      Dorian Daley (SBN 129049)
13    James C. Maroulis (SBN 208316)
    500 Oracle Parkway
14  Mailstop 5OP7
    Redwood Shores, California 94065
15  Telephone: (650) 506-5200
    Facsimile: (650) 506-7114
16  E-mail: jim.maroulis@oracle.com

17  Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
   Patrick E. Gibbs (SBN 183174)
   Matthew Rawlinson (SBN 231890)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS) (Consolidated) |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANTS' NOTICE OF *DAUBERT* MOTION AND *DAUBERT* MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF BJORN I. STEINHOLT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT** |
| ALL ACTIONS. | |
| | Honorable Judge Martin J. Jenkins Hearing Date:  September 24, 2007 Time:  9:30 a.m. |

LATHAM•WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE THAT on September 24, 2007, at 9:30 a.m., or as soon

3   thereafter as counsel may be heard, in Courtroom 11 of the United States District Court,

4   Northern District of California, located at 450 Golden Gate Avenue, 19th Floor, San Francisco,

5   California, Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley and Edward

6   J. Sanderson (collectively, "Defendants") will and hereby do move this Court for an order

7   excluding Bjorn I. Steinholt's May 25, 2007 Expert Report ("Report"), his June 22, 2007

8   Rebuttal Report ("Rebuttal Report") (collectively, the "Reports"), and his testimony.  This

9   motion is made on the grounds that his Reports are unreliable and irrelevant and thus

10   inadmissible pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow*

11   *Pharmaceuticals*, 509 U.S. 579 (1993).

12         This motion is based upon this Notice of Motion, the following Memorandum of

13   Points and Authorities, and the files and records of this action, together with such arguments and

14   evidence as may be presented to the Court at or prior to the hearing on this motion.

15                   **ISSUE TO BE DECIDED**

16         Whether Bjorn I. Steinholt's expert reports and his testimony are unreliable and

17   irrelevant, and thus inadmissible pursuant to the Federal Rules of Evidence and *Daubert v.*

18   *Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 2

A. Legal Standard ..................................................................................... 2

B. Mr. Steinholt's Opinions Regarding Materiality Are Irrelevant and Unreliable............................................................................................. 3

1. Mr. Steinholt's Opinions Regarding Materiality Should Be Excluded Because He Applies an Incorrect Legal Standard. .................. 4

2. Mr. Steinholt Performed No Independent Analysis of the Materiality of the Alleged False Statements and Omissions, and as a Result, Any Testimony Regarding "Materiality" from Mr. Steinholt Would Be Irrelevant and Unhelpful to the Trier of Fact. ................................................................................ 5

C. Mr. Steinholt's Opinion Regarding Loss Causation Is Unhelpful to the Trier of Fact and Should Be Excluded............................................. 8

D. Mr. Steinholt's Calculation of Damages from Defendants' Alleged Violation of 10b-5 is Unreliable and Does Not Comport with *Dura*. .................................................................................................. 10

1. Mr. Steinholt Fails to Limit Damages to Those Recoverable Under *Dura* Because He Does Not Remove the Portion of the Price Decline Attributable to Non-Fraud-Related Factors.......................................................................................... 10

2. Mr. Steinholt's "Constant Percentage Inflation" Is Inconsistent with *Dura*.................................................................. 13

E. Mr. Steinholt's Estimate of Section 20A Damages Is Unreliable and Does Not Comport with *Dura*........................................................ 15

III. CONCLUSION ................................................................................................ 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ahlberg v. Chrysler Corp.,*
481 F.3d 630 (8th Cir. 2007) ............................................................................ 7

*Basic v. Levinson,*
485 U.S. 224 (1988) ....................................................................................... 1, 4

*Cicero v. Borg-Warner Automotive, Inc.,*
163 F. Supp. 2d 743 (E.D. Mich. 2001) .......................................................... 15

*Daubert v. Merrell Dow Pharm., Inc.,*
43 F.3d 1311 (9th Cir. 1995) ............................................................................ 3

*Daubert v. Merrell Pharm,. Inc.,*
509 U.S. 579 (1993) ................................................................................... passim

*DSU Med. Corp. v. JMS Co., LTD,*
296 F. Supp. 2d 1140 (N.D. Cal. 2003) ......................................................... 2, 5

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005) ................................................................................... passim

*Elsayed Mukhtar v. Cal. State Univ., Hayward,*
299 F.3d 1053 (9th Cir. 2002) ..................................................................... 3, 10

*In re AOL Time Warner, Inc. Sec. Litig.,*
2007 WL 1789013 (S.D.N.Y. Jun. 20, 2007) ................................................. 16

*In re Boston Scientific Corp. Sec. Litig.,*
2007 WL 1775695 (D. Mass. Jun. 21, 2007) .................................................... 8

*In re Daou Systems, Inc. Sec. Litig.,*
411 F.3d 1006  (9th Cir. 2005) ................................................................... 9, 14

*In re Gilead Sciences Sec. Litig.,*
2006 WL 1320466 (N.D. Cal. May 12, 2006) ................................................... 8

*In re Imperial Credit Sec. Litig.,*
252 F. Supp. 2d 1005 (C.D. Cal. 2003) ........................................................... 11

*In re Oracle Litig.,*
829 F. Supp. 1176 (N.D. Cal. 1993) ............................................................... 11

*In re Stratosphere Corp. Sec. Litig.,*
66 F. Supp. 2d 1182 (D. Nev. 1999) ................................................................. 4

*In re Verifone Sec. Litig.,*
784 F. Supp. 1471 (N.D. Cal. 1992) ............................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

*In re Williams Sec. Litig.,*
　　2007 WL 2007987 (N.D. Okla. Jul. 6, 2007) ...................................................................... 14

*In re Worlds of Wonder Sec. Litig.,*
　　35 F.3d 1407 (9th Cir. 1994) ....................................................................................... 8

*Kaplan v. Rose,*
　　49 F.3d 1363 (9th Cir. 1994) ....................................................................................... 5

*Kumho Tire Co., Ltd. v. Carmichael,*
　　526 U.S. 137 (1999) ................................................................................................... 2

*Lattanzio v. Deloitte & Touche LLP,*
　　476 F.3d 147 (2d Cir. 2007) ...................................................................................... 12

*Lust v. Merrell Dow Pharm., Inc.,*
　　89 F.3d 594 (9th Cir. 1996) ......................................................................................... 3

*Odyssey Waste Serv., LLC v. BFI Waste Sys. of N.A., Inc.,*
　　2007 WL 674594 (E.D. Pa. Feb. 28, 2007) ............................................................... 17

*Oscar Private Equity Investors v. Allegiance Telecom,*
　　487 F.3d 261 (5th Cir. 2007) .................................................................................... 11

*Playtex Prod., Inc. v. Proctor & Gamble Co.,*
　　2003 WL 21242769 (S.D.N.Y. May 28, 2003) ............................................................ 3

*Redfoot v. B.F. Ascher & Co.,*
　　2007 WL 1593239 (N.D. Cal. Jun. 1, 2007) ................................................................ 2

*S.E.C. v. MacDonald,*
　　699 F.2d 47 (1st Cir. 1983) ....................................................................................... 15

*S.E.C. v. Todd,*
　　2007 WL 1574756 (S.D. Cal. May 30, 2007) .............................................................. 4

*Short v. Bellville Shoe Mfg. Co.,*
　　908 F.2d 1385 (7th Cir. 1990) ................................................................................... 15

*Tech. Licensing Corp. v. Gennum Corp.,*
　　2004 WL 1274391 (N.D. Cal. Mar. 26, 2004) ......................................................... 3, 5

*TSC Indus. v. Northway, Inc.,*
　　426 U.S. 438 (1976) ................................................................................................... 4

*U.S. v. Bingham,*
　　992 F.2d 975 (9th Cir. 1993) ....................................................................................... 4

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.,*
　　173 F.R.D. 675 (D. Kan. 1997) ................................................................................. 15

*Zenith Elec. Corp. v. WH-TV Broadcasting Corp.,*
　　395 F.3d 416  (7th Cir. 2005) ................................................................................. 3, 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1

## STATUTES

2

15 U.S.C. § 78u-4(b)(1) ............................................................................................. 8

3

15 U.S.C. § 78u-4(b)(4) ............................................................................................. 8

4

## RULES

5

Fed. R. Evid. 702 ....................................................................................................... 2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                         <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.**       **INTRODUCTION**

3                 Defendants move to exclude the May 25, 2007 Expert Report ("Report"), the June

4 22, 2007 Rebuttal Report ("Rebuttal Report) (collective, the "Reports") and the testimony of

5 Bjorn I. Steinholt, Plaintiffs' purported expert on market efficiency, materiality, loss causation,

6 and damages.[1]

7                 Mr. Steinholt's opinions regarding materiality must be excluded for the most

8 basic of reasons – he applies the wrong legal standard and performs no independent analysis of

9 the issues.  First, he applies a definition of materiality that is contrary to that adopted by the

10 Supreme Court in *Basic v. Levinson*, 485 U.S. 224 (1988).  Mr. Steinholt does not specify what

11 Defendants allegedly could have and should have said (and when) to the market.  Nor does he

12 analyze how the difference between what was said and what should have been said would affect

13 the total mix of information.  Thus, Mr. Steinholt cannot determine, as he must, whether any

14 alleged omitted fact "would have been viewed by the reasonable investor as having ***significantly***

15 ***altered*** the 'total mix' of information made available."  *Id.* at 231-32 (emphasis added).  Second,

16 because Mr. Steinholt does not perform this analysis, his opinion boils down to the following

17 tautology:  if Plaintiffs prove that the alleged material misstatements caused the loss on March 2,

18 then those statements were in fact material.  This "opinion" does not assist the trier of fact in

19 determining whether the alleged misstatements and omissions were material.

20                 Mr. Steinholt's loss causation opinion also fails to offer any independent analysis

21 on the key question:  whether the alleged misstatements and omissions *proximately caused* the

22 loss.  Rather, Mr. Steinholt merely states that Oracle's failure to meet its third quarter guidance

23 caused the residual stock drop (a conclusion that is not contested and needs no expert

24 explication), and he *assumes* that Plaintiffs will prove that Defendants' alleged

25 misrepresentations and omissions artificially inflated Oracle's stock price by the exact amount of

26 that residual drop.

27 _____

28 [1]    Mr. Steinholt's May 25, 2007 Report and June 22, 2007 Rebuttal Report are attached as
Exhibits A and B, respectively, to the Declaration of Holly J. Tate ("Tate Decl."), ¶¶ 3-4.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Mr. Steinholt's damages calculations for both the 10b and 20A violations are also

2    inconsistent with the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544

3    U.S. 336 (2005), as they include damages for losses that cannot be explained by the alleged

4    fraud. First, Mr. Steinholt wrongly assumes that 100% of the residual stock drop on March 2,

5    2001 was attributable to the alleged fraud. Second, Mr. Steinholt's damages calculations for the

6    10b and 20A violations include losses that occurred both before the alleged truth was revealed

7    and well after the truth was revealed, both of which are precluded from recovery under *Dura* and

8    other well-established precedent.

9    Consequently, the Court should exclude Mr. Steinholt's Report, Rebuttal Report,

10    and his testimony.

11    **II.    ARGUMENT**

12    **A.    Legal Standard**

13    Scientific, technical, or other specialized knowledge is admissible *only* if it "will

14    assist the trier of fact to understand the evidence or to determine a fact in issue" *and* if "(1) the

15    testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

16    principles and methods, and (3) the witness has applied the principles and methods reliably to the

17    facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Pharm,. Inc.*, 509 U.S. 579,

18    594 (1993).[2]

19    In addition, *Daubert* requires that a trial court "determine whether the expert

20    testimony is sufficiently tied to the facts of the case to be of use to the trier of fact in resolving a

21    factual dispute," 509 U.S. at 591, or, in other words, that the expert testimony "fits" the facts of

22    the case. "[T]he standard for fit [under Daubert] is higher than bare relevance." *Redfoot v. B.F.*

23    *Ascher & Co.*, 2007 WL 1593239, at *4 (N.D. Cal. Jun. 1, 2007) (citation omitted).

24    Accordingly, a court "must ensure that the proposed expert testimony . . . logically advances a

25    _____

26    [2]    The *Daubert* requirements that evidence be both relevant and reliable apply not just to
       scientific knowledge, but to other technical or specialized knowledge as well. *Kumho Tire*

27    *Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Courts have concluded that expert
       economic analysis qualifies as "technical" or "specialized" knowledge for purposes of

28    *Daubert. See, e.g., DSU Med. Corp. v. JMS Co., LTD*, 296 F. Supp. 2d 1140, 1146-47 (N.D.
       Cal. 2003)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1  material aspect of the proposing party's case," *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d

2  1311, 1315 (9th Cir. 1995), *on remand, cert. denied,* 516 U.S. 869 (1995), or that the "evidence

3  [has] a valid scientific connection to the disputed material facts in a case." *Daubert*, 509 U.S. at

4  591.  Testimony in which an expert applies an incorrect legal standard to an analysis is

5  irrelevant, and should be excluded.  *See, e.g., DSU Med. Corp.*, 296 F. Supp. 2d at 1148; *Tech.*

6  *Licensing Corp. v. Gennum Corp.*, 2004 WL 1274391, at *3-4 (N.D. Cal. Mar. 26, 2004).

7          The trial court must also determine that the proposed expert opinion is reliable,

8  predicated on a discernable methodology, and contains an analysis that is more than just the

9  expert's unsupported assertions.  *See, e.g., Daubert*, 509 U.S. at 593-94; *Zenith Elec. Corp. v.*

10  *WH-TV Broadcasting Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005) (excluding expert testimony

11  and stating, "An expert who supplies nothing but a bottom line supplies nothing of value to the

12  judicial process.") (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333,

13  1339 (7th Cir. 1989)); *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 n.7

14  (9th Cir. 2002) (excluding "opinion evidence which is connected to existing data only by the *ipse*

15  *dixit* of the expert"); *Playtex Prod., Inc. v. Proctor & Gamble Co.*, 2003 WL 21242769, at *10

16  (S.D.N.Y. May 28, 2003) (excluding expert opinions for "fail[ing] to meet the threshold for

17  reliability under *Daubert*, as they did not rely on any discernable methodology").

18          The proponent of the expert has the burden of proving that the expert's testimony

19  is admissible. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594 (9th Cir. 1996).

20  **B.**    **Mr. Steinholt's Opinions Regarding Materiality Are Irrelevant and**
        **Unreliable.**

21

22          Mr. Steinholt indicates that he intends to offer testimony in support of the

23  "materiality" element of Plaintiffs' case.  Specifically, Mr. Steinholt intends to offer testimony

24  that three different subject areas – Oracle's Second Quarter 2001 earnings growth, customer

25  acceptance of Suite 11i, and the impact of the slowing economy on Oracle – were "key issues"

26  that would generally be important to the reasonable investor and, therefore, material.  Report at

27  ¶ 31.  Mr. Steinholt, however, reaches his conclusions by applying an incorrect legal standard

28  and, by his own admission, without performing the independent analysis that is necessary to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   determine whether the alleged false statements and omissions were, in fact, material even under

2   the erroneous legal standard he applies.  As such, any testimony he offers with respect to

3   "materiality" should be excluded.

   1. **Mr. Steinholt's Opinions Regarding Materiality Should Be Excluded**

4         **Because He Applies an Incorrect Legal Standard.**

5

6      The legal definition of materiality is well-established:  an omitted fact or

7   misrepresentation is material if there is "a substantial likelihood that the disclosure of the ***omitted***

8   ***fact*** would have been viewed by the reasonable investor as having ***significantly altered*** the ***'total***

9   ***mix'*** of information made available."  *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 448 (1976)

10  (emphasis added); *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1196 (D. Nev.

11  1999).

12     Mr. Steinholt does not apply this standard.  Instead, he deems information

13  material "if there is a substantial likelihood that a reasonable shareholder would consider it

14  important" ***or*** if it would alter the total mix of information.  Report at ¶ 28; *see also* Tate Decl.,

15  Ex. C (Transcript of the July 2, 2007 Deposition of Bjorn Steinholt ("Steinholt Dep.")) at 122:6-

16  123:4.  This definition is contrary to established precedent.  *See, e.g., U.S. v. Bingham*, 992 F.2d

17  975, 976 (9th Cir. 1993) ("Materiality must be judged in the context of the 'total mix' of

18  information available to investors."); *S.E.C. v. Todd*, 2007 WL 1574756, at *3 (S.D. Cal. May

19  30, 2007) (emphasizing that the test for materiality looks at whether a piece of information

20  would significantly affect an investor's thinking when taken together with all other information

21  available).  Indeed, the Supreme Court specifically required that information must significantly

22  alter the total mix of information to be material so that the threshold would not be set too low.

23  *Basic*, 485 U.S. at 232.

24     The difference between Mr. Steinholt's definition of materiality and that

25  articulated by the Supreme Court is not merely semantic.  Mr. Steinholt's definition assumes that

26  reasonable investors would deem information to be important (and, therefore "material" for

27  purposes of securities fraud) even if that information were already known to them.  Steinholt

28  Dep. at 122:6-123:4.  However, already-known information will not further affect the value of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   the stock (because the market has already digested it), and, as such, it cannot be material – both

2   points that Mr. Steinholt eventually conceded at deposition.  Steinholt Dep. at 119:25-120:9;

3   128:19-129:2; *see also* at 140:21-141:19 (information was already in the market if the stock price

4   did not decline).  Stated another way, a reasonable investor considers information important

5   **because** it alters the total mix of information.  *See, e.g., Kaplan v. Rose*, 49 F.3d 1363, 1381 (9th

6   Cir. 1994) (stating that a plaintiff must establish materiality "by showing that a reasonable

7   shareholder would consider the misrepresentation or omission important, because it altered the

8   total mix of available information").

9              Because Mr. Steinholt applies an incorrect legal standard, his opinions regarding

10  materiality should be excluded.  *See, e.g., DSU Med. Corp.*, 296 F. Supp. 2d at 1148 (excluding

11  damages expert under *Daubert* because the damage analysis was not grounded on established

12  legal principles); *Tech. Licensing Corp.*, 2004 WL 1274391, at *3-4 (same).

13             2.    **Mr. Steinholt Performed No Independent Analysis of the Materiality
                     of the Alleged False Statements and Omissions, and as a Result, Any**
14                   **Testimony Regarding "Materiality" from Mr. Steinholt Would Be**
                     **Irrelevant and Unhelpful to the Trier of Fact.**
15

16             Mr. Steinholt concedes that one cannot determine whether something is material,

17  even under his definition, without comparing the allegedly false aspect of the statement to the

18  underlying "truth" and determining whether the discrepancy between the two was important to

19  investors:

20             Q.  And I thought I heard you say earlier that in the case of a
                   misrepresentation to assess materiality you need to look both at
21                 what was said and what was true?  Is that fair?

22             A.  That's fair, yes.

23             Q:  And the question you'd essentially be asking is, if the true facts
                   had been revealed, would that have impacted the value of the
24                 company?

25             A.  Correct, yes.

26  Steinholt Dep. at 121:4-15 (objections to form omitted).

27             Notwithstanding this concession, Mr. Steinholt admits that he made no effort to

28  perform such an analysis with respect to any of the specific alleged false statements, or even with

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   respect to the categories of statements he deems material. *See, e.g.,* Steinholt Dep. at 127:20-

2   128:2; 144:25-145:7; 147:18-148:12.  The problem with failing to perform this analysis is easily

3   illustrated.  For instance, Mr. Steinholt assumes that Oracle falsely stated that "Suite 11i . . .

4   worked well and was pre-integrated and interoperable out-of-the-box" and deems information

5   related to Suite 11i to be material.  Mr. Steinholt, however, never specifies what Oracle could

6   have and should have said about Suite 11i instead.  As a result, he cannot (nor can the trier of

7   fact) determine whether the difference between the statement and the alleged truth about Suite

8   11i would have significantly altered the total mix of information available and been important to

9   investors.  Similarly, with regard to the December 14, 2000 earnings announcement, Mr.

10  Steinholt does not specify what guidance Oracle should have given.  Based on his damages

11  calculations, described below, it appears that Mr. Steinholt assumes that Oracle could have and

12  should have announced on December 14, 2000 that it would only earn ten cents per share for the

13  third quarter ending February 28, 2001.  This would assume that Oracle could have perfectly

14  predicted the future.  Only 20/20 hindsight can provide such accurate figures.  It is also worth

15  noting that even before Oracle made the announcement on December 14, 2000, the analysts'

16  consensus estimate for Oracle's third quarter earnings per share was 12 cents.  *See* Tate Decl.

17  ¶ 7, Ex. E (June 22, 2007 Rebuttal Report of Christopher M. James ("James Rebuttal Report"))

18  at Ex. 2.  Thus, Mr. Steinholt makes no effort to explain how the market would have reacted if

19  Oracle offered guidance below the analysts' consensus.  Rather, he simply assumes the market

20  would have reacted exactly the way it ultimately did react when Oracle announced its earnings

21  miss three months later.

22          Ultimately, Mr. Steinholt's "opinion" consists merely of an assumption that

23  Plaintiffs will demonstrate that the stock drop was caused by the revelation of the alleged

24  misrepresentations and omissions, and if that is proven, those misrepresentations and omissions

25  were in fact material.  *See, e.g.,* Steinholt Dep. at 139:8-11 ("I think [plaintiffs] have to . . . prove

26  the assumptions that I rely on in order to, you know, conduct my analysis [as to materiality].");

27  127:20-128:2; 138:21-139:11; 140:8-20; *see also* Report at ¶¶ 7-9.  Because this merely assumes

28  the materiality conclusion, it provides no benefit to the finder of fact.  To the contrary, it has

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   significant potential to mislead the finder of fact into believing that Mr. Steinholt has performed

2   a more meaningful analysis than he has.  As such, his testimony should be excluded.  *See, e.g.,*

3   *Zenith*, 395 F.3d at 419-20 (excluding expert testimony and stating, "An expert who supplies

4   nothing but a bottom line supplies nothing of value to the judicial process."); *Ahlberg v. Chrysler*

5   *Corp.*, 481 F.3d 630, 635-36 (8th Cir. 2007) ("The proffer of [the expert's] testimony was

6   properly rejected because [the expert] employed no methodology whatsoever-reliable or

7   otherwise").

8           Instead of specifying the alleged omitted facts and subsequently performing an

9   analysis based on reliable principles and methods and sufficient facts or data to demonstrate that

10  the alleged omitted facts would significantly have altered the total mix of information, Steinholt

11  simply asserts that three subject matter areas are "key issues" that he believes would generally be

12  important to reasonable investors.  Report at ¶ 31.  Mr. Steinholt concedes, however, that the

13  specific statements and omissions alleged in the Complaint may still be ***immaterial*** even if they

14  relate to these "key issues."

15          Q.  Okay.  At least in paragraph 31, though, you don't identify any
            specific statements by any of the defendants regarding any of these
16          subject matters; correct?

17          A.  In paragraph 31, no.  I'm talking about the subject matter being
            material based on -- obviously, based on my review of the
18          information, the media, the balance reports and so on, but these
            were the key issues, in my opinion, that investors focused on.

19
            Q.  And would you agree that just because a particular subject
20          matter is material doesn't necessarily mean that anything a
            company says about that subject matter is material?  Would you
21          agree with that?

22          A.  Yes, correct.  That's why I -- what I was explaining before and
            that is that, you know, it has to, you know, impact, you know, the -
23          - it has to impact valuation of the company -- I mean, in order for it
            by itself to be -- to be material.

24

25  Steinholt Dep. at 125:2-19: *see also id.* at 129:3-20.  Because Mr. Steinholt fails to analyze the

26  specific alleged false statements and omissions, and does not consider them in the context of

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   what could have and should have been said and how that impacts the total mix of information,

2   his opinion is simply irrelevant to the question of materiality.[3]

3   **C.    Mr. Steinholt's Opinion Regarding Loss Causation Is Unhelpful to the Trier of Fact and Should Be Excluded.**

4

5          Loss causation is an essential element of any claim for a violation of the

6   Securities and Exchange Act.  15 U.S.C. § 78u-4(b)(4); *Dura*, 544 U.S. at 342; *In re Gilead*

7   *Sciences Sec. Litig.*, 2006 WL 1320466, at *6 (N.D. Cal. May 12, 2006).  To prevail, Plaintiffs

8   must prove that Defendants' misrepresentations "caused the loss for which the plaintiff seeks to

9   recover."  15 U.S.C. §78u-4(b)(4).  As this Court has held:

10              It is insufficient for a misrepresentation to "touch upon" an
                economic loss; a plaintiff must demonstrate an actual "causal
11              connection" between the defendant's material misrepresentation
                and the economic loss suffered. In other words, "to prove loss
12              causation, the plaintiff must demonstrate a causal connection
                between the deceptive acts that form the basis for the claim of
13              securities fraud and the injury suffered by the plaintiff."

14   *Gilead Sciences*, 2006 WL 1320466, at *21 (citations omitted).  Plaintiffs must show that the

15   loss that occurred was not the result of "changed economic circumstances, changed investor

16   expectations, new industry-specific or firm-specific facts, conditions, or other events" unrelated

17   to the alleged fraud.  *Dura*, 544. U.S. at 343.

18          Mr. Steinholt indicates that he was retained to opine on loss causation, Report at

19   ¶ 4, and his opening report specifically indicated that it was his opinion that Oracle's March 1

20   disclosure of its earnings miss "reduced and/or eliminated the inflation in Oracle's common

21   stock resulting from the alleged false and misleading statements and omissions."  *Id.* at ¶ 46.  At

22   his deposition, however, it became clear that Mr. Steinholt performed no analysis to determine

23   what caused the loss – he merely *assumes* Plaintiffs will prove it.

24

---

25   [3]  This highlights another deficiency in Mr. Steinholt's materiality opinion.  To prevail at trial,
     Plaintiffs must proffer evidence actually showing a "genuine issue of [material] fact with
26   regard to a *particular statement* by the company or its insiders."  *In re Worlds of Wonder
     Sec. Litig.*, 35 F.3d 1407, 1412 (9th Cir. 1994) (emphasis added).  Plaintiffs are required to
27   prove that each alleged statement or omission is material, and each needs to be viewed
     independently, as opposed to based on the "general flavor" of the challenged statements.
28   *See, e.g., In re Boston Scientific Corp. Sec. Litig.*, 2007 WL 1775695, at *9 (D. Mass. Jun.
     21, 2007); *see also* 15 U.S.C. § 78u-4(b)(1).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                          8
                                                    DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
                                                    REPORTS AND TESTIMONY
                                                    Master File No. C-01-0988-MJJ (JCS)

1    Q.  Mr. Steinholt, I want to ask you to take a look again at paragraph 13 of your rebuttal report, which is Exhibit 2 to your deposition.  And I'm looking, in particular, at the last sentence of the paragraph, "For my purposes, I assume that Plaintiffs' allegations are true, and, consequently, I concluded that the price decline on March 2nd, 2001, relates directly to Plaintiffs' allegations."

It is your assumption that Plaintiffs' allegations, discussed in your reports, are true, that furnishes the link between Plaintiffs' allegations and the March 2nd price decline; is that correct?

A.  Yes.  I mean, if Plaintiffs' allegations are not true, or they are unable to prove those allegations, then that is obviously, you know, that obviously changes my opinion.

Q.  Well, changes your opinion how?

A.  Well, if they cannot prove the case, their case, then obviously there are no damages.

Steinholt Dep. at 54:5-24 (objection to form omitted).  When pressed at his deposition, Mr. Steinholt went so far as to admit that *he had no "opinion as to what specifically caused"* Oracle to miss its guidance.  *Id.* at 108:5-11 (Q. "[Y]ou're not offering an opinion as to what specifically caused Oracle to miss its third quarter 2001 guidance; is that correct?  A. "That is correct.  I mean -- yes.");  90:23-94:14 (offering no opinion as to whether the alleged misstatements concerning Oracle's second quarter financial results caused the third quarter miss).  Mr. Steinholt admits that the earnings miss could be explained by factors totally unrelated to Plaintiffs' allegations.  *Id.* at 12:5-17.

Rather, Mr. Steinholt agrees with Defendants' expert, Professor Christopher M. James, that "Oracle's stock price fell in reaction to its earnings and revenue miss for the quarter which had current and future cash flow implications." Rebuttal Report at ¶ 13.  This is not in contention.  *See, e.g.,* Tate Decl., ¶ 6, Ex. D (May 25, 2007 Expert Report of Chris James ("James Report")) at ¶ 3c.  More importantly, this opinion does not assist the trier of fact in determining whether the specific misrepresentations and omissions alleged in the Complaint substantially caused the loss.  *See In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005).  He relies entirely on Plaintiffs to prove this fact.  As such, his opinions regarding loss causation should be excluded.  *See, e.g., Zenith*, 395 F.3d at 420 ("[N]othing in either

LATHAM&WATKINS⊔ᴘ
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence

2    which is connected to existing data only by the *ipse dixit* of the expert.") (citation omitted);

3    *Elsayed Mukhtar*, 299 F.3d at 1063 n.7.

4    **D.    Mr. Steinholt's Calculation of Damages from Defendants' Alleged Violation of 10b-5 is Unreliable and Does Not Comport with *Dura*.**

5

6            Mr. Steinholt's damages analysis suffers from the same flaws as his loss causation

7    analysis and should be excluded.  Mr. Steinholt again merely assumes that 100% of Oracle's

8    residual stock drop on March 2 was attributable to the fraud and does not eliminate the portion of

9    the stock decline attributable to "changed economic circumstances, changed investor

10   expectations, new industry-specific or firm-specific facts, conditions, or other events" unrelated

11   to the alleged fraud.  *Dura*, 544 U.S. at 343.

12           To calculate damages, Mr. Steinholt uses a regression analysis and assumes the

13   entire residual loss on March 2 was the result of the alleged fraud.  Rebuttal Report at ¶ 12.  He

14   calculates a residual return of -16.68 percent or $3.57 per share on March 2.  Report at Ex. H.

15   He then determines the alleged inflation that existed on March 1 (17.44 percent or $3.73 per

16   share on March 1)[4], and applies that 17.44 percentage inflation as a constant ratio throughout the

17   Class Period to calculate the per share damages.  *See* Report at ¶ 50.  By using "constant

18   percentage inflation," he calculates per share damages that vary during the Class Period, and are

19   in all days during the Class Period, except for one, higher than his measure of Oracle's residual

20   stock price decline on March 2, 2001 of  $3.57, and are as high as $6.03 per share.  Report, Ex. I.

21           1.    **Mr. Steinholt Fails to Limit Damages to Those Recoverable Under *Dura* Because He Does Not Remove the Portion of the Price Decline Attributable to Non-Fraud-Related Factors.**

22

23           "A proper measure of damages requires elimination of any portion of the price

24   decline that is the result of either general market factors or company specific factors that are

25   unrelated to the fraud."  *In re Imperial Credit Sec. Litig.*, 252 F. Supp. 2d 1005, at 1014-15 (C.D.

26   _____

27   [4]    Mr. Steinholt obtained this figure by dividing the difference between Oracle's actual price on
         *March 1*, 2001, $21.38, and what he inferred to be the "true value" of the stock, $17.65, by
28       the actual price of the stock on that date, again $21.38.  $21.38 minus $17.65 equals $3.73.
         $3.73 divided by $21.38 and multiplied by 100% equals 17.44%.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   Cal. 2003) (citations omitted); *see also Dura*, 544 U.S. at 343.  A damages expert's failure to

2   "distinguish between the fraud-related and non-fraud-related influences on the stock's price

3   behavior" is grounds for exclusion.  *See In re Oracle Litig.*, 829 F. Supp. 1176, 1181 (N.D. Cal.

4   1993); *see also Oscar Private Equity Investors v. Allegiance Telecom*, 487 F.3d 261, 271 (5th

5   Cir. 2007); *Imperial Credit*, 252 F. Supp. 2d at 1015.

6             Mr. Steinholt's only attempt to factor out the non-fraud related influences from

7   Oracle's stock drop is to conduct a regression, analyzing the relationship of Oracle's stock price

8   movements to that of the NASDAQ-100, an index of the 100 largest companies listed on the

9   NASDAQ stock exchange.  This analysis fails to remove all of the industry-specific factors that

10  caused the loss on March 2 because it did not specifically examine Oracle's competitors.  Thus,

11  Mr. Steinholt did not remove the portion of the loss that was caused by non-fraud related factors,

12  such as the new information regarding the effect of the economic downturn on the enterprise

13  software sector.[5]  Nor did the analysis conducted by Mr. Steinholt attempt to factor out any of

14  the Oracle-specific influences from the stock drop that were not attributable to the alleged fraud.

15  Rather, Mr. Steinholt assumed that the entire portion of the price drop that he determined to be

16  Oracle-specific was related to the alleged fraud.

17             Q:  And you have concluded that 100 percent of the Oracle-
             specific information that caused that residual price drop was
18             related to fraud; correct?

19             A:  This – yes.  I mean, this damage analysis looks at the entire
             company-specific portion of that price decline as relating to the
20             alleged fraud in this matter.  After – as the trial progresses and so
             on, if somebody would attribute 50 percent to it or 20 or 75
21             percent, sure, you know, you can use different percentages and so
             on, depending on how the facts shape up at the trial.  But, I mean,
22             for this purpose and assuming that Plaintiffs can prove all of their
             allegations, you know, you would use the entire company-specific
23             portion of the price.

24  Steinholt Dep. at 179:25-180:13.

25

26  _____

27  [5]  Mr. Steinholt also failed to remove all of the market factors from the loss despite conducting
     a regression using the NASDAQ-100 market index.  Because a regression is based upon
28  averages during the time period analyzed, it fails to properly account for the significant
     market and industry-wide news that was revealed on March 1.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Even Mr. Steinholt conceded that there was no basis for this assumption because

2    the Oracle-specific portion of the stock price drop could be attributed to non-fraud factors.

3    Steinholt Dep. at 42:5-18; 104:4-106:8.  For instance, he acknowledged that his damage

4    calculation might include losses that resulted because customers declined to purchase Suite 11i

5    for reasons unrelated to the fraud.

6          Q:  Did you perform any kind of quantitative analysis to eliminate
           the possibility that Oracle could have missed its forecasts for
7          reasons other than the product failing to meet the representations
           the company made?

8          A:  The – I assume that Plaintiffs' allegations are true in this
9          matter.  Now could it have – could it be possible that all of a
           sudden the last few days of the quarter all of these customers
10         decided, "Well, you know, it works, it's going to save us a ton of
           money but really we don't really want to save all of this money.
11         We're not going to buy the product."  Could that have happened?  I
           haven't performed that analysis.

12

13   *Id.* at 42:5-18.  Indeed, market participants attributed the earnings miss (and the loss) to

14   customers' decisions to delay purchases in light of changed economic conditions and to some

15   customers' preference for best of breed software, as opposed to 11i.  *See, e.g.,* James Report, at

16   Ex. 6, pp. 27-30.  Mr. Steinholt's damages calculation made no attempt to account for and

17   exclude losses caused by this or other non-fraud related factors.  Mr. Steinholt's analysis thus

18   makes it impossible for "a factfinder to ascribe some rough proportion of the whole loss to [the]

19   misstatements."  *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007).

20        Furthermore, Mr. Steinholt's analysis does not provide any means to apportion

21   the alleged damages among the alleged fraudulent misstatements and omissions.  For instance, if

22   the trier of fact concludes that Defendants did not misrepresent the quality and functionality of

23   Suite 11i or offer false guidance, or did in some respects, but not in others, Mr. Steinholt's

24   analysis would not provide the jury with a basis to calculate the resulting damages (if any).  Mr.

25   Steinholt admitted that this sort of apportionment would be very difficult, and that such a result

26   would also affect his loss causation opinion.  Steinholt Dep. at 56:13-24; *see also id.* at 56:25-

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

57:9; 182:11-184:9.[6]  This failure to apportion the damages across the various allegations is another aspect of his failure to perform the specific analysis required by *Dura* and, as this failure does with respect to loss causation and damages more broadly, it also prevents the trier of fact from accurately determining damages if any of Plaintiffs' allegations are rejected.  For these reasons, his 10b damages should be excluded.

2.      **Mr. Steinholt's "Constant Percentage Inflation" Is Inconsistent with *Dura*.**

Mr. Steinholt's use of constant percentage inflation to determine damages per share is prohibited under *Dura* and its progeny, and has been expressly rejected by at least one federal court.

Simply by the way it works mathematically (a single percentage multiplied by whatever the share price happened to be on each day of the Class Period), constant percentage inflation permits damages per share to fluctuate day-to-day during the Class Period.  It also permits damages to exceed the residual drop – i.e., Plaintiffs' damages would exceed the loss that occurred when the alleged fraud was disclosed.  For instance, Mr. Steinholt would permit shareholders who purchased on January 19, 2001 and sold after March 1, 2001 to get damages of $6.03, whereas the disclosure of the alleged truth on March 1, 2001, according to Mr. Steinholt, resulted in a $3.57 residual per share loss on March 2, 2001.  Mr. Steinholt's damage analysis would thus permit shareholders to recover up to $2.46 per share[7] in damages that are unrelated to any loss that occurred after the alleged corrective disclosure.  In addition, Mr. Steinholt's methodology allows someone who purchased on February 1 to get $0.16 per share more than a person who purchased shares on January 31, even though plaintiffs have not alleged any wrongful conduct on January 31 to explain why a shareholder who purchased a day later (but before any corrective disclosure) would be entitled to more damages.

---

[6]  Mr. Steinholt claims that the statements were all "linked."  However, he makes no effort to demonstrate that they are and it is not at all clear why statements regarding "availability" of Suite 11i would be linked to statements about integration or second quarter earnings.

[7]  $6.03 minus $3.57 equals $2.46.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1      Mr. Steinholt's methodology is incompatible with the strictures of *Dura*.  As

2  explained above, the Supreme Court in *Dura* required plaintiffs to prove that defendants'

3  misrepresentations caused the loss for which the plaintiff seeks to recover.  The Court

4  specifically rejected the argument that plaintiffs need only prove that the price on the date of

5  purchase was inflated because of the misrepresentation and held that "an inflated purchase price

6  will not itself constitute or proximately cause the relevant economic loss." *Dura*, 544 U.S. at

7  342.  Applying *Dura*, the Ninth Circuit further held that changes in the value of the stock before

8  a corrective disclosure cannot be causally related to a defendant's fraudulent actions because,

9  before the corrective disclosure, the truth about the state of the company has not yet been

10  disclosed.  *Daou*, 411 F.3d at 1027.  Mr. Steinholt's methodology, however, is both tied to the

11  inflated purchase price, rather than the relevant alleged economic loss on March 2, and

12  encompasses daily changes in the value of the stock that predate, and have nothing to do with,

13  the alleged corrective disclosure.  There is simply no reason to believe that, even assuming that

14  some fraud inflated the price of Oracle's stock, that this inflation remained *a constant*

15  *percentage of the company value*.  It is for these reasons that one federal court and academics

16  have rejected the constant percentage inflation method.  Indeed, the one court that addressed the

17  issue recently granted a *Daubert* motion, precluding the testimony of a damages expert in part on

18  the basis that his calculation used the constant percentage inflation method.  *See In re Williams*

19  *Sec. Litig.*, 2007 WL 2007987, at *65 (N.D. Okla. Jul. 6, 2007) ("[T]he application of the

20  constant percentage inflation approach would give the equity investor the 'partial downside

21  insurance policy' which *Dura* counsels that the securities law should not provide.") (citation

22  omitted)[8]; *see also* Daniel P. Lefler & Allan W. Kleidon, *Just How Much Damage Did Those*

23

---

24  [8]  The court in *Williams* noted that it could "conceive of a case, involving a short class period,
in which the constant percentage inflation approach would at least clear the Daubert hurdle,

25  leaving the final determination of the merits of the matter to be resolved by the finder of fact.
But, given the tortured history of WCG's securities in the 18 months before the first asserted

26  corrective disclosure January 29, 2002, this is not that case."  *In re Williams*, 2007 WL
2007987 at *65 n.54.  Like the case in *Williams*, the use of constant percentage inflation to

27  measure alleged damages in this case does not clear the *Daubert* hurdle.  Given the volatility
of Oracle's stock price during the Class Period, constant percentage inflation would permit

28  damages greater than the residual loss for some class members and award damages for losses
not related to the alleged fraud.

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   *Misrepresentations Cause and To Whom?: Damages Measurement in "Fraud on the Market"*

2   *Securities Class Actions*, 15 PLI/Corp. 285, 295 (2005) ("Because it awards recoveries based on

3   price declines that are unrelated to the fraud, the percentage approach introduces through the

4   back door price declines that the Supreme Court expressly held in *Dura* do not meet the test for

5   'loss causation.'").[9]   Accordingly, Mr. Steinholt's opinion regarding constant-percentage

6   inflation damages should be excluded.

7        E.    **Mr. Steinholt's Estimate of Section 20A Damages Is Unreliable and Does Not
             Comport with *Dura*.**

8

9           Damages for a Section 20A violation are limited to the amount by which the

10   defendant benefited, *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1490 (N.D. Cal. 1992), or the

11   profits made or losses avoided by an individual who engages in insider trading.  *Short v. Bellville*

12   *Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir. 1990).  Section 20A damages are typically

13   measured by calculating "the difference between the price the insider realizes and the market

14   price of the securities after the news is released."  *Id.*  The date used to measure damages should

15   occur *no later* than "a reasonable time after the inside information had been generally

16   disseminated." *S.E.C. v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983).

17           Mr. Steinholt calculated Section 20A damages in two ways.  First, he determined

18   the profits that Messrs. Ellison and Henley allegedly gained by multiplying the number of shares

19   they sold by the alleged inflation per share on the day those shares were sold.  Report at ¶ 54.

20   Second, he calculated the "loss avoided" damages by measuring the difference between the price

21   at which Messrs. Ellison and Henley sold their shares and $15.80, which he determined was the

22   "average closing price" from March 16, 2001 through April 30, 2001.  *Id.*  As explained below,

23   _____

24   [9]  When asked in his deposition whether he was aware of any scientific or academic literature
   that supported the use of the "constant percentage" approach, Mr. Steinholt was only able to

25   cite two:  an article by Bradford Cornell and R. Gregory Morgan entitled "Using Finance
   Theory to Measure Damages in Fraud on the Market Cases" in the *UCLA Law Review* from

26   June 1990 and the *Litigation Services Handbook: The Role of the Financial Expert* from
   2001.  Steinholt Dep. at 175:13-176:10.  Neither provides persuasive support for this method

27   because, being from a law review, the Cornell and Morgan article has not been peer-
   reviewed, *Cicero v. Borg-Warner Automotive, Inc.*, 163 F. Supp. 2d 743, 747-48 (E.D. Mich.

28   2001) and *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 679 (D. Kan.
   1997), and the *Litigation Services Handbook* predates *Dura* by approximately four years.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY

Master File No. C-01-0988-MJJ (JCS)

1    Mr. Steinholt's application of each of these methods fails to satisfy the rigorous standards of

2    *Daubert* because they do not comply with the relevant legal requirements.

3         Mr. Steinholt's use of 17.44 percent inflation to calculate 20A damages is flawed

4    because he once again assumes that 100% of the residual drop was fraud-related and fails to

5    account for any Oracle-specific, non-fraud related information that was disclosed on March 1.  In

6    this regard, Mr. Steinholt's damage calculation does not comply with *Dura*, which should apply

7    equally to 20A violations.  *See, e.g., In re AOL Time Warner, Inc. Sec. Litig.*, 2007 WL

8    1789013, at *7-10 (S.D.N.Y. Jun. 20, 2007) (dismissing Section 14(a) claims for failure to

9    adequately allege loss causation as required by *Dura*).

10        Mr. Steinholt's alternative 20A damages calculation is also flawed because his

11   calculation is contrary to the law on 20A damages.  Mr. Steinholt calculated the losses avoided

12   by the alleged insider trading by calculating the difference between the price at which Messrs.

13   Ellison and Henley sold their shares and the average closing price between March 16, 2001 and

14   April 30, 2001 ($15.80).  Report at ¶ 54.  However, established precedent mandates that the date

15   used to measure loss avoided damages shall be *no later* than the date on which the inside

16   information has been reasonably disseminated – i.e., March 2.  *See MacDonald*, 699 F.2d at 55.

17   Moreover, Mr. Steinholt's analysis fails to comply with *Dura*, because it includes losses that

18   were the result of "changed economic circumstances, changed investor expectations, new

19   industry-specific or firm-specific facts, conditions, [and] other events" unrelated to the alleged

20   fraud.  *Dura*, 544 U.S. at 343.  From March 16 to April 30, 2001, Oracle's share price dropped

21   by $1.08, for reasons totally unrelated to the alleged fraud (as the alleged fraud was already

22   revealed).  Furthermore, this analysis is also inconsistent with Mr. Steinholt's own opinions that

23   the alleged truth was "substantially revealed" on March 2.  Report at ¶ 44.  Because the market

24   for Oracle's shares was (and is) efficient, as Steinholt himself concludes, the information

25   disclosed on March 1 was digested by the market the following day.  *See Report* at ¶ 27.  Thus,

26   any decline in share price after March 2, 2001 cannot be attributed to the Defendants' alleged

27   fraud.  Nevertheless, Mr. Steinholt's damages theory would force Messrs. Ellison and Henley to

28   pay for the non-fraud related losses that occurred from March 2 to April 30, 2001.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1       Because Mr. Steinholt has failed to apply the correct legal standards, Mr.

2    Steinholt's opinions regarding 20A damages should be excluded.  *See DSU Medical Corp.*, 296

3    F. Supp. 2d at 1148 ("Reliable methodology requires that the legal grounds used by an expert to

4    calculate damages be legally acceptable"); *Odyssey Waste Serv., LLC v. BFI Waste Sys. of N.A.,*

5    *Inc.,* 2007 WL 674594, at *14 (E.D. Pa. Feb. 28, 2007) ("[A]n expert's opinion must be

6    compatible with applicable law, i.e., an expert cannot propose damages that are not legally

7    recoverable.").

## III.    CONCLUSION

9       For all the foregoing reasons, Mr. Steinholt's Report, Rebuttal Report, and his

10   testimony should be excluded.

11   Dated:  July 26, 2007              Respectfully submitted,

LATHAM & WATKINS LLP
Peter A. Wald
Michele F. Kyrouz
Patrick E. Gibbs
Jamie L. Wine

By: *Patrick E. Gibbs/pMP*
Patrick E. Gibbs
Attorneys for Defendants ORACLE
CORPORATION, LAWRENCE J.
ELLISON, JEFFREY O. HENLEY, and
EDWARD J. SANDERSON

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEF's *DAUBERT* MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)