LATHAM & WATKINS LLP
Peter A. Wald (SBN 85705)
Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
       michele.kyrouz@lw.com

LATHAM & WATKINS LLP
Patrick E. Gibbs (SBN 183174)
Matthew Rawlinson (SBN 231890)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com
       matt.rawlinson@lw.com

LATHAM & WATKINS LLP
Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071
Phone: (213) 485-1234
Fax: (213) 891-7863
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS) (Consolidated) |
| | CLASS ACTION |
| This Document Relates To:<br>ALL ACTIONS. | **DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON**<br><br>Date: September 26, 2007<br>Time: 2:30 p.m.<br>Judge: Martin J. Jenkins |

fdf

LATHAM•WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

**TABLE OF CONTENTS**

Pages

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD ...........................................................................................................1

III. ARGUMENT.........................................................................................................................2

    A. Plaintiffs Misconstrue Mr. Yourdon's Opinions Regarding Suite 11i's Quality But Do Not Meaningfully Dispute Them. ..........................................2

        1. Plaintiffs' Motion Reinforces Mr. Yourdon's Basic Opinions.................................................................................................................2

        2. Plaintiffs' Arguments Undermine Their Own Expert, Mr. Hilliard.......................................................................................................5

    B. Plaintiffs' Attacks On The Reliability Of Mr. Yourdon's Remaining Opinions Also Fail. ..............................................................................5

        1. Mr. Yourdon's Opinions About Integration Are Reliable And Relevant. ..................................................................................................5

        2. Mr. Yourdon's Analysis Of The Challenged Statements Is Reliable And Relevant. ..................................................................................9

        3. Mr. Yourdon's Opinion Regarding Lost Deals Is Reliable. ......................12

    C. Mr. Yourdon Is Qualified To Provide Expert Testimony In This Matter..........................................................................................................14

        1. Mr. Yourdon Meets The Requirements Of Rule 702. ...............................14

        2. Plaintiffs' Specific Attacks On Mr. Yourdon Are Baseless. .....................15

IV. CONCLUSION ...................................................................................................................16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

i

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Basic, Inc. v. Levinson,*
   485 U.S. 224 (1988) .................................................................................................. 10

*Calva-Cerqueira v. United States,*
   2003 U.S. Dist. LEXIS 15964 (D.D.C. 2003) .......................................................... 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ............................................................................................ 2, 14

*Harner v. Prudential Securities,*
   785 F. Supp. 626 (E.D. Mich. 1992) ....................................................................... 10

*Hawa Abdi Jama v. Esmor Corr. Servs.,*
   2007 U.S. Dist. LEXIS 45706 (D.N.J. 2007). .......................................................... 13

*In re Convergent Technologies Securities Litigation,*
   948 F.2d 507 (9th Cir. 1991) ..................................................................................... 9

*In re Verifone Securities Litigation,*
   784 F. Supp. 1471 (N.D. Cal. 1992) ........................................................................ 10

*Kennecott Copper Corp. v. Curtiss-Wright Corp.,*
   584 F.2d 1195 (2nd Cir. 1978) .................................................................................. 9

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,*
   326 F.3d 1333 (11th Cir. 2003) ............................................................................... 15

## RULES

Fed. R. Evid. 702 ............................................................................................................ 2, 5, 14

Fed. R. Evid. 703 .................................................................................................................. 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

ii

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' efforts to exclude the opinions of Defendants' software expert, Edward Yourdon, merely reinforce Mr. Yourdon's fundamental point: the extensive record in this case does not provide a sufficient basis to reach generalized conclusions about Suite 11i's quality. Indeed, Plaintiffs' attack on Mr. Yourdon primarily rests on a mischaracterization of his core analysis and opinions. Mr. Yourdon did not offer an affirmative opinion on the quality of the Suite 11i software. Rather, he opined on the proper *means of evaluating* the quality of software like Suite 11i. Based on this methodology, Mr. Yourdon determined that the anecdote-driven analysis offered by Plaintiffs and Plaintiffs' software expert, Brooks Hilliard, is meaningless.

Plaintiffs' Motion offers no evidence or analysis undermining Mr. Yourdon's opinions about how to analyze software quality. To the contrary, Plaintiffs' criticism essentially embraces Mr. Yourdon's methodology and then applies it to their mischaracterized version of his opinions. The irony is that Plaintiffs' attack is far more effective against their own expert, whose opinions depend on his conclusions about Suite 11i's quality, than against Mr. Yourdon, whose opinions do not. The very questions put forward by Plaintiffs in their motion (regarding Suite 11i's size, bug count, comparative bug count, bug severity, *etc.*) are precisely the questions Mr. Hilliard cannot answer, notwithstanding the broad opinions he offers regarding Suite 11i's "commercial quality" and "commercial acceptability."

Not only do Plaintiffs fail to engage Mr. Yourdon's primary opinions, they repeatedly undermine their credibility by omitting critical portions of Mr. Yourdon's testimony and Reports and blatantly misrepresenting his actual methods and analysis. Plaintiffs' mischaracterizations aside, Plaintiffs raise no legitimate concerns about the admissibility of Mr. Yourdon's opinions.

## II. LEGAL STANDARD

Under the Federal Rules of Evidence and the *Daubert* line of cases, the use of expert witness testimony is appropriate to "assist the trier of fact to understand the evidence or to determine a fact in issue" if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

1

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993).

### III. ARGUMENT

#### A. Plaintiffs Misconstrue Mr. Yourdon's Opinions Regarding Suite 11i's Quality But Do Not Meaningfully Dispute Them.

##### 1. Plaintiffs' Motion Reinforces Mr. Yourdon's Basic Opinions.

Plaintiffs have framed their "product" claims as a dispute about whether Suite 11i's quality was so poor that all of Defendants' statements about it are false. *See* Declaration of Rees Morgan[1] at Exh. 7, Plaintiffs' Amended Motion for Partial Summary Judgment at §§ III.C, E-H. To that end, Plaintiffs set up a straw man – implying that Mr. Yourdon has offered an affirmative opinion on Suite 11i's quality – and then argue that Mr. Yourdon lacks sufficient evidence to reach an opinion regarding quality. *See generally* Motion at 15-17. Mr. Yourdon, however, has not offered an affirmative opinion on Suite 11i's overall quality; rather, the focus of his opinions is the appropriate *means of evaluating* the quality of large software, including ERP software like Suite 11i. *See* Exh. 1, Yourdon Report at § IV; Exh. 2, Yourdon Rebuttal at §§ IV, VIII. Applying this analysis, he further opined that Plaintiffs had not appropriately evaluated Suite 11i's quality, and that the evidence identified by Plaintiffs in support of their claims is insufficient to provide *any meaningful basis* for conclusions about Suite 11i's quality. *See* Exh. 2, Yourdon Rebuttal at § IV.

Plaintiffs' Motion merely *reinforces* these conclusions. Plaintiffs argue that Mr. Yourdon cannot make any claims about Suite 11i's quality without knowing Suite 11i's size, the number of bugs it experienced, evidence of bug numbers from other ERP vendors, the number of bugs and other problems that should be expected and so on. This is exactly Mr. Yourdon's point: he explained that such information is necessary to properly evaluate software quality – but has not been adduced in discovery in this case. *See, e.g.*, Exh. 2, Yourdon Rebuttal at § VIII; Exh. 3, Yourdon Tr. at 54:15-19. Plaintiffs never proffer any reason why Mr. Yourdon's paradigm for evaluating quality would be inappropriate or unreliable. To the contrary, Plaintiffs' second software expert, Dr. Randall Jensen, ***agrees*** with Mr. Yourdon as to the type of information

---

[1] All exhibits cited herein are attached to the concurrently filed Declaration of Rees Morgan.

LATHAM&WATKINS<sup>LLP</sup>  
ATTORNEYS AT LAW  
SAN FRANCISCO  
LA\1754223.7

2

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE  
EXPERT TESTIMONY OF EDWARD YOURDON  
Master File No. C-01-0988-MJJ (JCS)

necessary to properly evaluate software quality.[2] *See* Exh. 8, Jensen Tr. at 29:12-14, 33:22-34:1. And by adopting Mr. Yourdon's frame of analysis and asking systematic questions about software size, bug count, bug counts in similar software and other metrics, Plaintiffs' Motion further endorses Mr. Yourdon's basic analytical approach.

This does not mean that Mr. Yourdon does not offer opinions about Oracle's allegedly fraudulent statements, including opinions about Suite 11i's integration, particularly as compared to best-of-breed products. For example, Mr. Yourdon opines that Suite 11i was a "technical success" Exh. 1, Yourdon Report at ¶ 12. This opinion is predicated on Mr. Yourdon's technical review of the Suite 11i, which confirmed that Suite 11i's architecture was data integrated and workflow integrated, including across the ERP and CRM boundary. *See id.* at § VIII. This is not in dispute: Plaintiffs concede that Suite 11i reflected a common data schema (*see* Exh. 9, Hilliard Tr. at 157:24-158:4); have never offered any evidence that Suite 11i's modules required systems integration to work together; and do not contest that Suite 11i was substantially more integrated at purchase than the "best-of-breed" software packages to which Defendants compared Suite 11i in the allegedly false statements (*see id.* at 87:6-7, 144:1-11).

The challenged statements compare Suite 11i to alternative ERP solutions, notably "best-of-breed" pacakges; they do not address "quality" or "commercial acceptability" or represent that Suite 11i met a particular quality standard. *See* Defendants' Opposition To Plaintiffs' Amended Motion For Partial Summary Judgment at § III.C.1. Suite 11i's quality is at issue only because Plaintiffs did not undertake technical analysis of the software that would allow them to address the substance of Defendants' statements. Despite Plaintiffs' representation to the Court that they needed the original version of Suite 11i software for their expert's review (and the subsequent production of the software for that purpose), Mr. Hilliard decided that installing the software would be "of no significant value" to his opinions.[3] *Compare* Exh. 14 February 4, 2005

---

[2] Dr. Jensen repeatedly notes that Mr. Hilliard's Report lacked this sort of information, acknowledging that Mr. Hilliard had no basis to draw conclusions regarding the number of defects in Suite 11i or whether Suite 11i's defect level was out of the ordinary and that he did not perform a sufficient investigation to opine on Suite 11i's quality or stability. *See* Exh. 8, Jensen Tr. at 38:10-16, 83:7-14, 111:8-112:2.

[3] This does not stop Plaintiffs, however, from complaining that Mr. Yourdon "never used – let alone tested – the actual software ...." Motion at 2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

3

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

Discovery Hearing Transcript at 22:3-9 *with* Exh. 5, Hilliard Report at § 3.1. Likewise, he found the technical documentation for Suite 11i was "not relevant." Exh. 9, Hilliard Tr. at 149:17-20. As a result, Plaintiffs attack the statements indirectly, making claims about Suite 11i's overall quality based on various anecdotal evidence. Mr. Yourdon's position on this issue is clear: Plaintiffs never presented evidence establishing that Suite 11i experienced any problems atypical for the release of sophisticated new software products. *See* Exh. 1, Yourdon Report at § IV. Plaintiffs' barrage of questions about the basis for the quality opinions they invent for Mr. Yourdon reinforces this conclusion. *See infra.* at § III.A.2.

To further illustrate these points, Mr. Yourdon uses established industry data – predominantly textbooks by Capers Jones, who Plaintiffs' software experts admit is "is a leading authority in the world of software estimating, measurement, metrics, productivity and quality" (Exh. 8, Jensen Tr. at 16:19-21) – to provide context for the number and severity of defects that users were encountering with Suite 11i based on a typical size and footprint for ERP products. As even one of Plaintiffs' experts concedes, (*id.* at 35:4-36:9), without such context, isolated reports of problems are meaningless. Indeed, the existence of metrics of the type Mr. Yourdon references illustrates why Plaintiffs' handful of anecdotal accounts of product problems sheds no light on whether Suite 11i had typical defect levels: all commercial software has defects, including show-stopper defects, and Plaintiffs have made no effort to show that the defects in Suite 11i exceeded the expected level for software of its size and complexity.[4]  Exh. 3, Yourdon Tr. at 98:5-18; Exh. 8, Jensen Tr. at 35:4-6.[5]  Plaintiffs fail to explain why Mr. Yourdon's use of

---

[4] Plaintiffs desperately claim that Mr. Yourdon could not perform a comparative analysis because Mr. Youdon does not "know *from any internal company material what those software companies were experiencing* in terms of functionality or bugs as it relates to their software suites during that period of time?" Exh. 3, Yourdon Tr. at 67:16-19. But Mr. Yourdon relied on published studies based on the pooled internal data from exactly this sort of ERP vendor. Plaintiffs offer no reason why this data is not reliable evidence of the expected levels of bugs in ERP software. Nor, though they bear the burden of proof in this matter, did Plaintiffs make any effort to obtain this sort of comparative discovery themselves.

[5] Though Plaintiffs complain of Mr. Yourdon's "wild speculation" regarding Suite 11's size and scope (Motion at 16-17), Mr. Yourdon provided a likely size for the software based on the number of areas of functionality included in the suite, the number of person-hours that went into programming the software, and the length of the code – all compared to established industry metrics. *See* Exh. 1, Yourdon Report at ¶¶ 90-91. Ultimately, Mr. Yourdon's figure was merely illustrative; he made clear that there is not sufficient information in the record to determine Suite 11i's size, except that it was, as Plaintiffs' experts concede, "unquestionably large and complex." *Id.* at ¶ 91, *see also* Exh. 4, Jensen Rebuttal at Conclusion #1; Exh. 9, Hilliard Tr. at 85:20-22. Capers Jones' books describe in detail the footprint of a "typical"

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

4

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

industry metrics to put this abstract agreement into context is unreliable or inappropriate. *Cf.* Advisory Committee Notes to Fed. R. Evid. 702 (encouraging the use of expert testimony to provide context to assist fact-finder in drawing inferences).

### 2. Plaintiffs' Arguments Undermine Their Own Expert, Mr. Hilliard.

Plaintiffs' arguments demonstrate why their own expert's affirmative conclusions about Suite 11i's quality are unsupportable. Unlike Mr. Yourdon, Mr. Hilliard purports to reach specific conclusions regarding Suite 11i's quality. *See, e.g.*, Exh. 5, Hilliard Report at §§ 5.1.6, 5.2.3, 5.3.4 (Suite 11i "never achieved minimally acceptable standards for commercial business software."). However, Mr. Hilliard fails to address any of the issues raised by Plaintiffs in their Motion. *See* Motion at 23 fn. 22 (asking "How does Yourdon define quality?"); *id.* at 2 (Mr. Yourdon has "no reasonable basis to know either the size of the software or the number of defects."), *id.* at 15 ("did not make any comparisons of Suite 11i…to any other software available at the same time"), *id.* at 15 fn. 12 ("Nor did he compare the software of Suite 11i to past releases of Oracle software"); *id.* at 16 ("did not … count the number of function points in Suite 11i"). Mr. Hilliard admits he cannot answer any of these questions: he does not know Suite 11i's size, how many bugs it had, or how it compares to other software products. *See* Exh. 9, Hilliard Tr. at 85:12-15 (does not have "any understanding" of Suite 11i's size); *id.* at 88:1-3 (does not know how many defects); *id.* at 87:6-7 (did not compare Suite 11i to *any* other software). Plaintiffs effectively prove Mr. Yourdon's opinion that absent such evidence there can be no reliable conclusions about Suite 11i's quality – including by Mr. Hilliard.

### B. Plaintiffs' Attacks On The Reliability Of Mr. Yourdon's Remaining Opinions Also Fail.

#### 1. Mr. Yourdon's Opinions About Integration Are Reliable And Relevant.

##### a. *Plaintiffs' Reference To Immaterial Aspects Of Integration Is A Red Herring.*

Plaintiffs complain that Mr. Yourdon did not consider user interface or functional

---

ERP system, and Suite 11i includes all modules in that footprint and more. *See* Exh. 1, Yourdon Report at ¶ 79. Analysts at the time described Suite 11i as combining "cover[ing]s the functionality of at least five (ERP, CRM, SCM, HRMS, Service) enterprise class applications." Exh. 6, Sharon Ward, *Oracle's E-Business Suite 11i*, HurwitzGroup Analyst Report, April 11, 2001 (NDCA-ORCL 110505-11) at 110506 (explaining that Suite 11i had "a substantial number of bug reports, but probably on par with the total number that would be found in any five such applications.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

5

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

integration.[6] But Mr. Yourdon explained in his opening report that he did not consider these issues because Defendants' statements focused on Suite 11i's reduced need for systems integration compared with best of breed products – and user interface and functional integration are not relevant to systems integration. *See* Exh. 1, Yourdon Report at § VI.6.2, (data integration and workflow integration represent the "lion's share" of systems integration work); *id.* at 36, fn. 38 ("[User interface and functional integration] have very limited relevance to systems integration or the market's understanding of whether an ERP system was properly described as 'integrated' or 'interoperable.'"). Plaintiffs' expert tacitly admits this in his opening report, which does not mention functional integration and only references "a common user interface" as "sometimes" an aspect of overall integration. Exh. 5, Hilliard Report at 63. Plaintiffs never complained about functional or user interface integration before Mr. Yourdon explained he did not consider them relevant to the challenged statements, and still do not identify any customer complaints regarding user or functional interface integration.

To manufacture an issue with Mr. Yourdon's opinions on integration, Plaintiffs attempt to give the imply a concession by omitting (without designation) the bolded language below:

> Q. Did you understand statements by the company that Suite 11i was integrated and interoperable to be excluding functional integration or user interface integration?
>
> A. No, I did not. ***I did not do so. But as I explained in footnote 38 at the bottom of page 36, I said that it had very limited relevance to systems integration overall or the market's understanding of whether an ERP was properly described as integrated, et cetera. And that as I understood the situation at the time, that plaintiffs had not raised issues about those two other aspects or dimensions of integration.***

*Compare* Motion at 9 *with* Exh. 3, Yourdon Tr. at 237:4-15 (omitted testimony emphasized); *see also* Exh. 1, Yourdon Report at § VI.6.2. Mr. Yourdon's full response to the question simply affirms the analysis in his Report and does not support Plaintiffs' argument.

---

[6] As discussed and defined in Mr. Yourdon's opening report, functional integration in the sense that he raised it has a very narrow meaning. *See* Exh. 1, Yourdon Report at 36, fn. 38, ("Functional integration is concerned with the behavior of a system (*e.g.*, if a system requires some program logic to calculate, for example, the sales tax on a purchased item, there should be only one instance of that program logic stored somewhere in the system."). It should not be confused with work flow integration.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

6

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

b.   *Mr. Yourdon's Opinions On Overall Integration Are Reliable.*

(1)   Plaintiffs Mischaracterize Mr. Yourdon's Review Of Business Requirements.

Plaintiffs wrongly contend that Mr. Yourdon's integration analysis is flawed because he allegedly did not have an "intimate knowledge" of all of Suite 11i's business requirements and business flows. Due to Suite 11i's size, Mr. Yourdon examined "a representative subset of common data entities…and associated business flows diagrams…in both the ERP and CRM components of Suite 11i" and specifically opined that Suite 11i "is integrated with respect to that representative subset." Exh. 1, Yourdon Report at ¶¶ 138-39. Plaintiffs do not claim that Mr. Yourdon's sample was unrepresentative, or that Mr. Yourdon's analysis was incorrect with respect to any examples he analyzed. Plaintiffs merely misconstrue Mr. Yourdon's testimony to suggest that Mr. Yourdon did not have an understanding of any of the business requirements. Particularly since Plaintiffs' expert did not review the business requirements documentation at all even though his definition of "commercial acceptability" expressly references the meeting of customer requirements (*see* Exh. 5, Hilliard Report at § 3.2), it defies logic for Plaintiffs to suggest Mr. Yourdon's decision to review a representative sample of these materials rather than the entire universe of thousands of pages of requirements documents is fatal to his opinions.

(2)   Plaintiffs Wrongly Claim That Mr. Yourdon Dismissed Evidence Of Errors.

Plaintiffs' complaint that Mr. Yourdon "summarily dismissed evidence of software defects" in evaluating Suite 11i's integration is directly contradicted by Mr. Yourdon's Reports and testimony. The extensive list of documents Mr. Yourdon considered in forming his opinions makes clear that Mr. Yourdon reviewed evidence of complaints from Oracle customers and employees. *See* Exh. 1, Yourdon Report at App. A. However, as Mr. Yourdon explained, customer complaints are common in ERP implementations and without context do not constitute meaningful evidence of quality. Concluding certain evidence does not support a conclusion is not the same as "dismissing" it.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

7

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

      c.    *Plaintiffs Falsely Claim "Yourdon Never Assesses Whether Any Customer Installed a Full Suite – Much Less During The Class Period."*

Mr. Yourdon assessed successful customer implementations primarily to rebut Mr. Hilliard's statements doubting the existence of such evidence. *See* Exh. 9, Hilliard Tr. at 58:25-60:6. Now that Mr. Yourdon presented evidence of many successful implementations, Plaintiffs falsely claim complain "[Mr.] Yourdon Never Assesses Whether Any Customer Installed a Full Suite – Much Less During The Class Period." *See* Motion at 20. Mr. Yourdon, however, discussed in detail POSCO's successful, multinational implementation of the *full suite* in his Rebuttal Report. *See* Exh. 2, Yourdon Rebuttal Report at ¶ 181. Plaintiffs also claim that the companies "[Mr.] Yourdon does list as 'success stories' in his rebuttal report are not running ERP and CRM modules together, and were 'successful' only after the Class Period". Motion at 20. This claim is also wrong. As Mr. Yourdon testified, and discussed in his Rebuttal Report, there are many examples of customers running both ERP and CRM modules during the class period and after. *See* Exh. 2, Yourdon Rebuttal Report at § VII.1.4; *see also id.* at fns. 147-153 (citing "Go-Live Reports" including customers live on ERP and CRM, such as Aero Fulfillment, BellSouth, Chevron RMX, Marconi Fibreway, Netpliance, Parachute.net, Wincor Nixdorf).

In any event, Plaintiffs' narrow focus on implementations of the "full suite" during the Class Period[7] is misleading. Suite 11i contained many industry-specific modules, and it is not realistic to expect most – or even many – customers to install every module, even if they install the full functional footprint. Indeed, Defendants encouraged customers to start with part of the suite and add other modules later. *See* Exh. 12, February 13, 2001 Transcript of AppsWorld 2001 Larry Ellison Press Conference (NDCA-ORCL 306962-86) at 306974-75. Nor is it reasonable to expect many customers to have achieved such an implementation in the 10 months

---

[7] Plaintiffs' allegation that "Mr. Yourdon did not appear to be aware that there was an established Class Period in the case" is both misleading and irrelevant. *See* Motion at 21. Early in Mr. Yourdon's deposition Plaintiffs counsel represented that the "relevant time period" for his questions was "June 2000 to June 2001." Exh. 3, Yourdon Tr. at 43:7-9. Later in the deposition, Mr. Yourdon incorporated this representation into a response, noting he was unsure whether the Class Period was "December 14th, 2000 to February 26th, or whether it is, as you had suggested earlier, June 1st to June 1st" (Exh. 3, Yourdon Tr. at 129:5-7). In any event, Mr. Yourdon's reports make numerous references to the Class Period in this case (*see, e.g.,* Exh. 1, Yourdon Report at ¶ 212, Exh. 2, Yourdon Rebuttal Report at ¶¶ 8, 33, 148, 174).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

8

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

between the first release of Suite 11i and the close of the Class Period. Plaintiffs' own expert acknowledges that ERP implementations "historically has taken customers a year or more to implement; six months would be extremely fast." See Exh. 5, Hilliard Report at § 4.2.4. It is thus a remarkable accomplishment that Oracle had over 350 customers live on some or all of the suite prior to the end of the Class Period.[8]

### 2. Mr. Yourdon's Analysis Of The Challenged Statements Is Reliable And Relevant.

#### a. *Mr. Yourdon Appropriately Viewed The Statements As An Expert.*

Plaintiffs argue that Mr. Yourdon should have assessed Defendants' statements from the perspective of investors generally rather than a person who is familiar with the software industry. Motion at 18-19; *see also* Exh. 9, Hilliard Tr. at 228:10-231:11. Given that many (maybe most) of the prospective jurors are likely investors, Plaintiffs are really arguing that Mr. Yourdon should have evaluated the material from the perspective of the very audience his testimony is intended to educate. Plaintiffs do not explain the basis for this proposition, nor do they explain how a technical expert would accurately evaluate technical statements about "pre-integration," "systems integration," and "best of breed" products from a lay perspective (or what value such an analysis would add). Nor does the law require such an analysis. *See In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991) ("[A]llegedly false statements cannot be read in a vacuum; rather, they must be read in context."); *see also Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195 (2nd Cir. 1978) ("Corporations are not required to address their shareholders like children, for fear of later 'nit-picking' by plaintiffs or courts."); *Harner v. Prudential Sec.*, 785 F.Supp. 626, 641 (E.D. Mich. 1992) ("The law assumes a certain level of comprehension and judgment among investors."); *In re Verifone Sec. Litig.*, 784 F. Supp. 1471,

---

[8] Plaintiffs rely on a footnote to Mr. Yourdon's report indicating that, "[a]s in common in the industry Oracle listed a customer as 'live' when it has fully implemented at least one module of Suite 11i" in an effort to cast doubt on Mr. Yourdon's references to "live" customers. *See* Motion at 20 (*citing* Yourdon Report at fn. 277). But the documents that Mr. Yourdon cites specifically identify how many and which modules each customer has implemented. *See* Exh. 2, Yourdon Rebuttal Report at ¶ 113, fns. 147-53 (citing *R11i Customer Information* summaries, known at Oracle as "Go-Live Reports"). As these documents indicate, most customers were live on multiple modules, and the number of live customers (as well as the number of modules any given customers had implemented) increased significantly over the course of the Class Period. *See* Exh. 13, *R11i Customer Information* summaries.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

9

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

1482 (N.D. Cal. 1992) (noting role of analysts).

Mr. Yourdon's analysis of Oracle's discussion of software-related terms from the perspective of someone who understand the industry is appropriate, as IT professionals comprised the vast majority of decision-makers regarding the purchase of Suite 11i and were the primary persons evaluating the software at customer sites. In any event, as a review of Mr. Yourdon's full testimony indicates, this is another instance when Plaintiffs can only support their claim by truncating Mr. Yourdon's full response. Plaintiffs acknowledge that "Defendants consider their 'major audiences' to be 'industry analysts, financial analysts/investors, partners [and] OAUG Board" (Motion at 18) – but incomprehensibly claim that these are not the individuals Mr. Yourdon considered in forming his opinion. Plaintiffs omit from their quotation Mr. Yourdon's testimony explaining that he in fact considered all of these audiences:

> I'm limiting it to people who are involved in, work in or are associated with the IT industry *which, in my opinion, would include some of these analysts that I've mentioned who, in my opinion, have some degree of expertise with regard to evaluating and assessing products.*

*Compare* Motion at 18 *with* Exh. 3, Yourdon Tr. at 82:24-83:4 (omitted testimony emphasized).

        b.    *Mr. Yourdon Appropriately Assessed The Accuracy Of The Statements.*

Plaintiffs' nit-picking over whether Mr. Yourdon opined that the challenged statements are "accurate" or "fundamentally true" or "accurate in context" elevates form over substance. Mr. Yourdon's various word choices merely reflect the same common sense that is embodied in the legal standard for an actionable misstatement: the securities laws punish only material misstatements. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988). Likewise, Plaintiffs' attempt to impugn Mr. Yourdon's credibility for Mr. Yourdon reasonably noting at deposition that he considered Defendants statements accurate "in the context that they were made and for the audience for whom they were intended" is ludicrous. Exh. 3, Yourdon Tr. at 75:13-17. Plaintiffs' claim is particularly specious given that Plaintiffs do not identify any aspect of the statements that Mr. Yourdon viewed as inaccurate.

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

10

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

    c. *Plaintiffs' Contention That Mr. Yourdon "Failed To Consider The Majority Of The Alleged False And Misleading Statements" Is Unfounded.*

Plaintiffs allege Mr. Yourdon "failed to consider the majority of the alleged false and misleading statements." Motion at 19. This statement is also wrong. Mr. Yourdon's Report addresses every challenged statement regarding Suite 11i that Plaintiffs identified in their operative complaint or responses to contention interrogatories.[9] *Compare* Exh. 1, Yourdon Report at § IX.1 *with* Exhs. 10-11, Responses to Contention Interrogatories, Revised Second Amended Complaint ("Operative Complaint"). Plaintiffs' Motion identifies only one "unconsidered" statement, regarding whether customers saved money by implementing Suite 11i. Motion at 19. But Mr. Yourdon addressed that issue both in his Reports and at deposition:

> [B]ased on my experience with the cost of implementation as provided by consulting firms…which is quoted in the previous paragraph of Mr. Ellison's statement, usually associated with a great deal of integration activity, after-the-fact integration activity, which generally is far more expensive than the cost of the ERP product itself. Indeed, as someone has indicated here in some material that I've cited, often as much as ten times more expensive.
>
> So I would certainly be willing to make such, or offer such an opinion [that customers saved money by implementing Suite 11i] as having been fundamentally true with the understanding that there might be the occasional outlier or anomaly where perhaps the implementation savings were smaller or nonexistent, but it would be an extreme exception, as opposed to the general case.

Exh. 3, Yourdon Tr. at 95:10-25; *see also* Exh. 2, Yourdon Rebuttal Report at ¶ 175. Plaintiffs never challenge the fact that the lion's share of expense in a typical ERP implementation comes from systems integration. They also concede that systems integration is not required between the various elements of Suite 11i. In short, they do not deny the key components of this aspect of Mr. Yourdon's analysis (which he laid out in detail in his testimony), and offer no serious basis to contradict (much less to exclude presentation of) the obvious conclusion that follows.

    d. *Mr. Yourdon Appropriately Assessed "Plaintiffs' Evidence"*

Plaintiffs falsely accuse Mr. Yourdon of basing his opinion on nothing more than the

---

[9] In his report, Mr. Hilliard challenged for the first time additional statements that had never been included in any of Plaintiffs' complaints or discovery responses, such the statement that Suite 11i was "available," and Mr. Yourdon addressed those new allegations in his Rebuttal Report. *Compare* Exh. 3, Hilliard Report at § 4.1 *with* Exh. 2, Yourdon Rebuttal Report at § V.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

11

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

operative complaint. But Mr. Yourdon focused on "Plaintiffs' evidence" – primarily identified in the Operative Complaint and Plaintiffs' responses to contention interrogatories – as the best articulation and evidence Plaintiffs could muster in support of their case. *See* Exh. 1, Yourdon Report at App. A. In any event, as is clear from the extensive citations and appendices to his Reports, Mr. Yourdon undertook a comprehensive review of the evidence in this case – well beyond the materials Plaintiffs identified in their complaint, discovery responses, and expert reports. *Compare* Exh. 1, Yourdon Report at App. A (listing over 60 depositions and 1800 documents relied upon by Mr. Yourdon) *with* Motion at 12, fn. 10 (claiming Mr. Yourdon's "investigation was comprised solely of looking at plaintiffs' revised second amended complaint despite extensive discovery."). Plaintiffs' Motion does not identify *any* contemporaneous evidence that Mr. Yourdon failed to consider.[10] Rather, the thorough nature of Mr. Yourdon's review is confirmed by his reference to the vast majority of evidence cited in Mr. Hilliard's Report *prior to his receipt of Mr. Hilliard's report*.[11] *See* Exh. 1, Yourdon Report at App. A.

        3.    Mr. Yourdon's Opinion Regarding Lost Deals Is Reliable.

            a.    *Mr. Yourdon Has A Sufficient Evidentiary Basis For His Opinion Regarding Lost Deals.*

Mr. Yourdon appropriately offers a narrow opinion that, based on his 40 years of experience, the record in this case does not support the inference that Oracle lost deals included in its 3Q 2001 forecast due to unknown or unexpected product quality issues product problems. Mr. Yourdon does not, as Plaintiffs suggest, offer an opinion as to "what caused Oracle to miss its third quarter 2001 guidance or provide analysis on Oracle's pipeline." *Compare* Motion at

---

[10] Plaintiffs have identified only a single email that Mr. Yourdon did not recall reviewing. That email was an nonetheless identified by Mr. Yourdon in the Appendix of materials which he reviewed and relied. *See* Exh. 1, Yourdon Report at App. A. Mr. Hilliard had far more memory failures of this variety than did Mr. Yourdon. *See* Exh. 9, Hilliard Tr. at 44:25-45:3, 217:3-7;

[11] Indeed, though Mr. Hilliard claims to have had "access" to the entire record (though he cannot or will not identify the specific documents he reviewed and relied upon) the only material Plaintiffs point to that was cited in Mr. Hilliard's Report but does not appear on Mr. Yourdon's Appendix of relied upon materials is *Softwar*, a popular biography of Larry Ellison penned by an English journalist with no personal knowledge of the underlying facts of this case. Although Mr. Yourdon read *Softwar* and cited it in his Rebuttal Report, he did not rely on it for the truth of the matters stated therein because experts are not permitted to rely on inadmissible hearsay materials unless they are of a type normally relied on by experts in the field. *See* Fed. R. Evid. 703. *Softwar* is not the sort of information software experts normally rely on in assess software integration, functionality, or quality. Instead, Mr. Yourdon relied on Mr. Ellison's sworn testimony regarding the specific *Softwar* issues that Plaintiffs raised.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

12

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

1  22-23 *with* Exh. 1, Yourdon Report at § XI. His opinion is grounded in a substantial sampling of
2  deals to assess whether product problems caused deals to be lost. Plaintiffs cannot show that Mr.
3  Yourdon's "methodology of taking a sample is scientifically flawed." *See Hawa Abdi Jama v.*
4  *Esmor Corr. Servs.*, 2007 U.S. Dist. LEXIS 45706 (D.N.J. 2007) (denying *Daubert* motion).

Mr. Yourdon reviewed over 100 deals included in the 3Q 2001 forecast,[12] including all deals specifically identified by Plaintiffs and all deals worth over $2 million. Though Plaintiffs suggest that it was inappropriate to look only at large deals, they do not provide any reasoned basis for believing that large deals have some systematic bias with respect to the questions at issue here. In fact, Mr. Yourdon explained at deposition that larger deals are, if anything, *more* likely to fall through due to quality issues. Exh. 3, Yourdon Tr. at 192:2-12. The adequacy of Mr. Yourdon's sampling is supported by the fact that Plaintiffs *still* provide no evidence that specific deals were lost over product problems or that might otherwise undermine his conclusion.

Plaintiffs grossly distort Mr. Yourdon's statements with their claim that Mr. Yourdon's opinion is unreliable because "[h]e admits to not having read the relevant testimony." Motion at 22. As Mr. Yourdon testified and as his Report shows, he read the depositions of forecasting witnesses relevant to his inquiry – along with hundreds of documents regarding the sampled deals. Given the limited nature of his opinions, Mr. Yourdon noted he did not review "the broad range of all such depositions in other financial and forecasting and accounting matters," as there no need for him to do so. Exh. 3, Yourdon Tr. at 19:20-21. Rather, he reviewed "a limited number of such depositions, which I did, and which are cited in my report." *Id.* at 19:23-25. Consistent with this testimony, Appendix A to Mr. Yourdon's Report makes clear that he reviewed the deposition transcripts and exhibits of the forecasting witnesses relevant to his lost deals opinions, including George Roberts, Jay Nussbaum, Edward Sanderson, and Michael Cochran. Plaintiffs never identify any other material Mr. Yourdon should have considered.

        b.    *Plaintiffs' Criticisms Ignore The Limits Of Mr. Yourdon's Opinion.*

Plaintiffs' challenge to Mr. Yourdon's opinion regarding lost deals again relies on a

---

[12] Mr. Yourdon appropriately relies on Glenn Hubbard in order to understand which potential deals were included in Oracle's pipeline. *See Calva-Cerqueira v. United States*, 2003 U.S. Dist. LEXIS 15964, 49-50 (D.D.C. 2003) (experts are "permitted to rely on other expert opinions").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

13

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

misunderstanding of his opinions. His process for reaching that opinion is fully explained and may be recreated and tested. *See Daubert*, 509 U.S. at 593-94. Plaintiffs do not challenge his methodology; they simply complain that the opinion could consider more deals – without identifying any inadequacy in Mr. Yourdon's sample. Plaintiffs' complaint that Mr. Yourdon only reviewed deals included in the forecast, claiming that "some people just never picked up the phone" after hearing about product problems misses the point. *See* Motion at 22, Exh. 3, Yourdon Tr. at 104:21-25. Plaintiffs may argue that deals not included in the forecast are relevant to loss causation (though they have not identified any evidence to support this proposition) but that is no basis to exclude Mr. Yourdon's more limited conclusion. Mr. Yourdon did not offer a broad opinion on lost causation. He offered a very specific opinion on deals in Oracle's pipeline. Plaintiffs' vague allusions to other potential customers that were not included in the forecast has nothing to do with whether Mr. Yourdon's analysis is proper on its own terms.

### C.    Mr. Yourdon Is Qualified To Provide Expert Testimony In This Matter.

#### 1.    Mr. Yourdon Meets The Requirements Of Rule 702.

Mr. Yourdon is a preeminent authority in the software industry, qualified to testify as an expert here by virtue of his education, knowledge, skill, and experience. *See* Fed. R. Evid. 702. Mr. Yourdon pioneered structured analysis and design programming methods (an accomplishment that resulted in his induction into the Computer Hall of Fame); he founded and ran a company that trained more than 250,000 people in structured programming, design, analysis, data modeling, and project management (and which now is a unit of IBM); and he has written and lectured extensively on technical issues with software, including at MIT, Harvard, Stanford, and Berkeley. *See* Exh. 1, Yourdon Report at § 1. In fact, both of Plaintiffs' software experts acknowledge Mr. Yourdon's expertise in the software industry: Dr. Jensen's writings rely on Mr. Yourdon and cite him extensively (*see, e.g.*, Randall W. Jensen and Charles C. Tonies, eds., *Software Engineering* (1979) at 64, 89, 343), and Mr. Hilliard has sought Mr. Yourdon's technical advice in another matter (*see* Exh. 9, Hilliard Tr. at 101:12-18). Mr.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

14

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)

1  Yourdon has published over 500 technical articles and more than two dozen books.[13]  Mr.
2  Hilliard's publications are limited to a consumer guide to computer purchases (an abridged
3  version of which he published in a local newspaper). *See* Exh. 5, Hilliard Report at Exh. 3.
4    Mr. Yourdon also has extensive experience with sophisticated software generally and
5  ERP software in particular.  In his decades working in the computer industry, Mr. Yourdon has
6  served as a developer, project leader, IT executive, and consultant on numerous major software
7  projects. *See* Exh. 1, Yourdon Report at ¶ 1.  Indeed, the United States Department of Defense
8  called upon Mr. Yourdon to serve on its advisory council regarding "best practice" guidelines
9  and techniques for large, complex software projects. *Id.* at ¶ 6.  Mr. Yourdon's considerable
10 experience with ERP software includes the selection, acquisition, and implementation of
11 enterprise business applications and ERP packages for many clients in the field as well as the
12 evaluation of ERP software in litigation. *Id.* at ¶ 1.  Certainly, Mr. Yourdon is more qualified
13 that Mr. Hilliard under any reasonable view of their respective qualifications.[14]

14   2. <u>Plaintiffs' Specific Attacks On Mr. Yourdon Are Baseless.</u>

15   Plaintiffs' only effort to specifically challenge Mr. Yourdon's qualifications is a weakly
16 repackaged attack on one portion of his methodology:  Plaintiffs contend Mr. Yourdon "is
17 unqualified to offer an opinion" because he did not perform a sufficient review of the business
18 requirements for Suite 11i "in this particular instance to render an opinion on the integration of
19 Suite 11i." Motion at 8. But Plaintiffs cannot extrapolate an alleged fault with Mr. Yourdon's
20 process as to one of his conclusions[15] into a wholesale challenge to his qualifications. *See Quiet*
21 *Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003).  To the

---

[13] Plaintiffs' claim that Mr. Yourdon's "credibility is further undermined by his failure to list his publications which were widely criticized" is nonsensical. Every publication that Plaintiffs' claimed Mr. Yourdon failed to include was included in his Report – indeed, Plaintiffs' Motion *cites* Mr. the Report to identify the allegedly missing publications. *See* Motion at 24, fn. 24 (*citing* Yourdon Report at App. C).

[14] Mr. Yourdon's qualifications highlight the deficient credentials of Plaintiffs' expert, Mr. Hilliard. Mr. Hilliard has no relevant technical experience; he admits he is a management consultant who "does not do software development [or] implement computer software or systems." Exh. 5, Hilliard Report at Exh. 3. Mr. Hilliard does not even have experience analyzing integration or the overall quality of a software system in the litigation context. *See* Exh. 9, Hilliard Tr. at 21:19-24, 24:13-17.

[15] As discussed in Section III.B.1, Mr. Yourdon employed a reliable methodology to reach his conclusion that Suite 11i was integrated; Plaintiffs have misconstrued Mr. Yourdon's tests for integration and misrepresented his testimony regarding his process.

LATHAM&WATKINS  LA\1754223.7  15  DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON
ATTORNEYS AT LAW
SAN FRANCISCO  Master File No. C-01-0988-MJJ (JCS)

1  contrary, the evidence indicates Mr. Yourdon is well-qualified to provide expert testimony here.

2      Plaintiffs also seek to exclude all of Mr. Yourdon's testimony and analysis based on his
3  correction during deposition of a mistaken Latin abbreviation. Motion at 24. Mr. Yourdon
4  explained that he inadvertently used the abbreviation "*i.e.*" instead of "*e.g.*" in a background
5  section of his Report. *See* Exh. 1, Yourdon Report at ¶ 41; *see also* Exh. 3, Yourdon Tr. at
6  60:25-62:18. This attempt to make a mountain out of typographical molehill demonstrates how
7  little basis Plaintiffs have to challenge Mr. Yourdon and how desperate they are to exclude him.

8  **IV.  CONCLUSION**

9      For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs'
10  Motion to Exclude Expert Testimony of Edward Yourdon.

11  Dated:  August 27, 2007

Respectfully submitted,
LATHAM & WATKINS LLP
   Peter A. Wald
   Patrick E. Gibbs
   Michele F. Kyrouz
   Jamie L. Wine
   Matthew Rawlinson

By: _____/S/_____
   Matthew Rawlinson
   Attorneys for Defendants ORACLE
   CORPORATION, LAWRENCE J.
   ELLISON, JEFFREY O. HENLEY,
   and EDWARD J. SANDERSON

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1754223.7

16

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-MJJ (JCS)