1  LATHAM & WATKINS LLP
     Peter A. Wald (SBN 85705)
2    Michele F. Kyrouz (SBN 168004)
   505 Montgomery Street, Suite 2000
3  San Francisco, California 94111-2562
   Telephone: (415) 391-0600
4  Facsimile: (415) 395-8095
   E-mail: peter.wald@lw.com
5          michele.kyrouz@lw.com

6  LATHAM & WATKINS LLP
     Jamie L. Wine (SBN 181373)
7  633 West Fifth Street, Suite 4000
   Los Angeles, California 90071-2007
8  Phone: (212) 906-1200
   Fax: (212) 751-4864
9  E-mail: jamie.wine@lw.com

10 Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
   J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
11
   ORACLE CORPORATION
12   Dorian Daley (SBN 129049)
     James C. Maroulis (SBN 208316)
13 500 Oracle Parkway
   Mailstop 5OP7
14 Redwood Shores, California 94065
   Telephone: (650) 506-5200
15 Facsimile: (650) 506-7114
   E-mail: jim.maroulis@oracle.com
16
   Attorneys for Defendant ORACLE CORPORATION
17

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
  Matthew Rawlinson (SBN 231890)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com
        matt.rawlinson@lw.com

18              **UNITED STATES DISTRICT COURT**

19   **NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION**

20 In re ORACLE CORPORATION
   SECURITIES LITIGATION
21

22
   This Document Relates To:
23
   ALL ACTIONS.
24

25

26

27

28

Master File No. C-01-0988-MJJ (JCS)
(Consolidated)

CLASS ACTION

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE
THE TESTIMONY OF DEFENDANTS'
ACCOUNTING EXPERT, J. DUROSS
O'BRYAN**

Date:    September 26, 2007
Time:    2:30 p.m.
Judge:   Martin J. Jenkins

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1758422.9

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1

**TABLE OF CONTENTS**

2

<u>Page</u>

3

4   I.     INTRODUCTION ................................................................................................. 1

5   II.    STANDARD OF REVIEW ................................................................................... 2

6   III.   ARGUMENT ........................................................................................................ 3

7          A.     Mr. O'Bryan's Testimony Is Reliable and Will Assist the Trier of
                  Fact.............................................................................................................. 3
8
           B.     There Is No Basis to Exclude Mr. O'Bryan's Testimony...................................... 4
9
                  1.     Mr. O'Bryan Did Not Rely on Unproduced Materials in
10                        Rendering His Opinion Regarding the Bad Debt Transfers ..................... 5

11                 2.     It Is Outrageous for Plaintiffs to Claim "Unfair Surprise"
                          Regarding Mr. O'Bryan's Opinion on the HP Transaction ....................... 7
12
                   3.     Mr. O'Bryan's Review of the Source Documents for a
13                        Sample of 60 Debit Memos Was an Appropriate Exercise
                          of Professional Judgment ........................................................................ 8
14
                   4.     Mr. O'Bryan's Testimony Regarding the Bad Debt
15                        Transfers Was Based Upon an Independent Analysis of the
                          Evidence............................................................................................. 9
16
                   5.     Plaintiffs' Attack on Mr. O'Bryan's Materiality Analysis Is
17                        Meritless............................................................................................ 10

18  IV.    CONCLUSION................................................................................................... 11

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS<sup>LLP</sup>   LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.*,
   No. 03 C 7713, 2005 U.S. Dist. LEXIS 10692

5

   (N.D. Ill. Feb. 22, 2005) ............................................................................................. 7

6

*Bell v. Fore Sys., Inc.*,
   No. 97-1265, 2002 U.S. Dist. LEXIS 27871

7

   (W.D. Penn. Aug. 2, 2002) .......................................................................................... 4

8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................................................... 2

9

*Halterman v. Legato Software*,
   No. C 04-02660 JW, 2006 U.S. Dist. LEXIS 20136

10

   (N.D. Cal. April 5, 2006) ............................................................................................ 8

11

*Hill v. Reederei F. Laeisz G.M.B.H.*,
   435 F.3d 404 (3rd Cir. 2006) ...................................................................................... 7

12

*Kennedy v. Collagen Corp.*,
   161 F.3d 1226 (9th Cir. 1998) ................................................................................ 2, 8

13

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................................... 2

14

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*
   94 Civ. 5587 (PKL)(RLE), 2000 U.S. Dist. LEXIS 3742

15

   (S.D.N.Y. Mar. 24, 2000) ......................................................................................... 11

16

*SEC v. Stansbury Holdings Corp.*,
   No. 06-CV-00088 REB-BNB, 2007 U.S. Dist. LEXIS 48140

17

   (D. Colo. June 29, 2007) .................................................................................. 4, 8, 10

18

*United States v. Tarwater*,
   308 F.3d 494 (6th Cir. 2002) ...................................................................................... 2

19

### RULES

20

Fed. R. Evid. § 702 ............................................................................................................... 2

21

22

23

24

25

26

27

28

**LATHAM&WATKINS**LLP   LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

## I.    INTRODUCTION

Faced with their own accounting expert's fatal concession that the debit memos had no financial statement impact (thus gutting Plaintiffs' sole accounting claim), Plaintiffs resorted to filing a baseless motion to exclude the testimony of Defendants' accounting expert, J. Duross O'Bryan (the "Motion").  But Plaintiffs' Motion is not really a *Daubert* motion at all.  Plaintiffs do not attack the admissibility of Mr. O'Bryan's opinions, nor do they challenge his extensive and impressive qualifications, his reasoning, or his methodology.  Instead, Plaintiffs raise discovery disputes, attack Mr. O'Bryan's credibility and challenge the correctness of certain of his opinions.  None of this is a proper basis for excluding expert testimony.

Plaintiffs' Motion is based on two core arguments that are flawed and fundamentally misrepresent the record.  First, Plaintiffs wrongly claim that Mr. O'Bryan based some of his opinions on documents that were not produced to Plaintiffs.  In fact, as Mr. O'Bryan testified, all of his opinions were based upon materials Defendants produced to Plaintiffs and that Mr. O'Bryan identified in his reports.  While Plaintiffs complain that Defendants did not provide Plaintiffs with a copy of a binder that Mr. O'Bryan brought to his deposition, that binder contains summaries of documents in the record, handwritten notes and draft work papers to which Plaintiffs are not entitled.  Indeed, Plaintiffs fail to mention that, under a February 6, 2007 expert discovery stipulation, the parties agreed that they need not produce:  (i) data or information not relied upon by the expert in forming his opinions; or (ii) draft work papers, intermediate calculations, or notes prepared by or for the expert.  (*See* Ex. 1, at ¶¶ 5-6.)[1]  Plaintiffs also neglect to mention that their own accounting expert, D. Paul Regan, referred throughout his testimony to a set of binders he brought to his deposition, and – consistent with the stipulation – Plaintiffs similarly did not produce those binders.

Second, Plaintiffs make the remarkable argument that they were "unfairly surprised" when Mr. O'Bryan offered rebuttal testimony regarding the Hewlett-Packard ("HP") transaction.  Yet it was Plaintiffs' expert who devoted almost 30 pages of his 64-page opening report to the

---

[1] All Exhibits cited herein are true and correct copies of the consecutively numbered exhibits attached to the Declaration of Peter W. Baldwin filed in support hereof.

LATHAM&WATKINSᴸᴸᴾ  LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1   accounting for the HP transaction – an issue not pled in the complaint and one which Special

2   Master Infante specifically ruled was not a proper subject of discovery in this case.  Apparently,

3   Plaintiffs believe that their expert can opine freely on accounting theories that are not at issue in

4   the case, but Defendants' expert is precluded from responding to those arguments on rebuttal.

5         The remainder of Plaintiffs' Motion is nothing more than a series of unsubstantiated

6   claims that Mr. O'Bryan allegedly did not consider evidence that he indisputably analyzed, or

7   that Mr. O'Bryan's testimony somehow lacks credibility.  The record clearly shows that these

8   claims are baseless.  Accordingly, the Motion should be summarily denied.

9   **II.      STANDARD OF REVIEW**

10        An expert may testify in the form of an opinion if (1) the testimony is based upon

11   sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

12   (3) the witness has applied the principles and methods reliably to the facts of the case.  *See* Fed.

13   R. Evid. 702.  In this regard, the Federal Rules of Evidence assign the trial judge the task of

14   ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task

15   at hand.  *See Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592 (1993).  The trial court's

16   "gatekeeping" role applies "not only to testimony based on 'scientific' knowledge, but also to

17   testimony based on 'technical' and 'other specialized' knowledge."  *Kumho Tire Co., Ltd. v.*

18   *Carmichael*, 526 U.S. 137, 141 (1999); *see also United States v. Tarwater*, 308 F.3d 494, 513

19   (6th Cir. 2002) (although *Daubert* factors "were of limited value" in assessing expert accounting

20   testimony, the court nonetheless considered the reliability and relevancy of the testimony).

21        Expert testimony may be excluded only if the reasoning or methodology underlying the

22   testimony is invalid or irrelevant to the issues in the case.  *See Daubert*, 509 U.S. at 592-93.  The

23   court must decide whether the "expert testimony proffered in the case is sufficiently tied to the

24   facts of the case that it will aid the jury in resolving a factual dispute."  *Id.* at 591 (internal

25   quotation and citation omitted).  However, the court's role is not intended to replace the

26   adversary system.  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998) ("The

27   *Daubert* duty is to judge the reasoning used in forming an expert conclusion.  The test is whether

28   or not the reasoning is scientific [or technical] and will assist the jury.").

LATHAM&WATKINS LLP   LA\1758422.9

ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1   **III.    ARGUMENT**

2        **A.       Mr. O'Bryan's Testimony Is Reliable and Will Assist the Trier of Fact**

3        Mr. O'Bryan's credentials and qualifications are not subject to dispute.  Mr. O'Bryan has

4   been a licensed Certified Public Accountant ("CPA") for 29 years.  (*See* Ex. 2, at 1.)  He has

5   participated in over 200 separate engagements involving accounting issues.  (*Id.*)  He currently is

6   the Managing Director in the Financial Advisory Services ("FAS") practice of AlixPartners,

7   LLP.  (*Id.*, at 2.)  Prior to joining AlixPartners, Mr. O'Bryan was a Partner at

8   PricewaterhouseCoopers LLP for approximately 16 years.  (*Id.*)  During this time,   Mr.

9   O'Bryan served as the Partner-In-Charge of the FAS practice for the Western Region from 1995

10  to 1998, and the New York Metro Region from 1998 to 1999.  (*Id.*)  Thereafter, Mr. O'Bryan

11  served as the Partner-In-Charge of the FAS and Dispute Analysis and Investigations practices for

12  the Western Region from 2000 to 2003.  (*Id.*; Ex. 3, at 11:11-13, 17:10-20:12.)

13       In forming his expert opinions in this case, Mr. O'Bryan extensively analyzed a host of

14  relevant evidence and accounting literature.  Among other things, Mr. O'Bryan reviewed:

15  (1) the deposition transcripts of over 20 accounting witnesses; (2) various accounting system

16  reports generated by Oracle; (3) the script output, which contains complete accounting histories

17  for 926 debit memos (which were the focus of accounting-related discovery orders); (4) Ernst &

18  Young LLP's ("EY") agreed-upon procedures memorandum; (5) source documents for a sample

19  of 60 transactions; (6) various analysts' reports relating to, among other things, Oracle's earnings

20  release for the second quarter of fiscal year 2001 ("2Q01"); and (7) the revenue recognition

21  checklist and other documents regarding the HP transaction.  (*See* Ex. 2, at 20-42, Appendix C;

22  Ex. 4, at Appendix.)  Notably, Plaintiffs' accounting expert reviewed and relied upon much of

23  the same evidence cited in Mr. O'Bryan's reports.  (*See*, *e.g.*, Ex. 5, at 32 n.124, Exhibit B.)

24       Based upon his review and analysis of these materials, Mr. O'Bryan formed the

25  following opinions:

26       (1)    The accounting for the 46,000-plus debit memos netted to zero, an opinion with

27              which Plaintiffs' accounting expert witness agrees (*see* Ex. 2, at 10-14; Ex. 6, at

28              208:22-209:12, 213:11-20, 214:24-215:19, 219:24-220:12);

LATHAM&WATKINS LLP  LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1       (2)     With respect to the 2Q01 transfers into the bad debt reserve:  (a) at least

2               $2 million of the $10.6 million of transfers that were the subject of fact discovery

3               were proper when made or could have been recognized as revenue prior to 2Q01

4               (*see* Ex. 2, at 32-36); and (b) even if the entire $20 million in 2Q01 bad debt

5               transfers were improper (which they were not), the impact on Oracle's 2Q01

6               financial statements was immaterial (*id.* at 36-40); and

7       (3)     The decision to recognize approximately $19.9 million in revenue in 2Q01 on the

8               HP transaction, which was approved by Oracle's revenue recognition group, its

9               outside auditor and the Finance and Audit Committee, was not improper.  (*Id.*, at

10              41-42; *see also* Ex. 4, at 26.)

11      Given the nature of Plaintiffs' accounting allegations, the complexity of revenue

12 recognition generally, and Mr. O'Bryan's extensive experience with these issues, there can be no

13 question that his testimony will aid the jury in understanding the relevant facts.  *See*, *e.g.*, *SEC v.*

14 *Stansbury Holdings Corp.*, No. 06-CV-00088 REB-BNB, 2007 U.S. Dist. LEXIS 48140, at *8-9

15 (D. Colo. June 29, 2007) (testimony of expert accounting witness regarding materiality analysis

16 under GAAP would be helpful to the trier of fact); *Bell v. Fore Sys., Inc.*, No. 97-1265, 2002

17 U.S. Dist. LEXIS 27871, at *13 (W.D. Penn. Aug. 2, 2002) (denying motion to exclude expert

18 opinion because GAAP issues "clearly [were] within the scope of [the expert's] specialized

19 knowledge and experience.").

20       **B.**     **There Is No Basis to Exclude Mr. O'Bryan's Testimony**

21      Plaintiffs seek to challenge the admissibility of Mr. O'Bryan's testimony based upon a

22 misreading of the parties' discovery obligations, unfounded claims of surprise and

23 Mr. O'Bryan's purportedly inadequate analysis of certain evidence.  As detailed below, none of

24 Plaintiffs' arguments is a proper basis for excluding Mr. O'Bryan's opinions or testimony under

25 *Daubert* and its progeny.

26

27

28

LATHAM&WATKINS<sup>LLP</sup>  LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1     **1.**    **Mr. O'Bryan Did Not Rely on Unproduced Materials in Rendering**

2         **His Opinion Regarding the Bad Debt Transfers**

3      Plaintiffs devote much of the Motion to the contention that Mr. O'Bryan relied upon a

4 binder comprised of unproduced materials in forming his opinion that at least $2 million of the

5 2Q01 bad debt transfers were appropriate when made. (*See* Motion, at 7.)  Quite simply, this is

6 not a proper basis for a *Daubert* motion.  Plaintiffs are attempting to turn an untimely and

7 unfounded discovery dispute over whether they are entitled to certain materials into an attempt to

8 exclude a portion of Mr. O'Bryan's testimony under the auspices of a *Daubert* motion.  In so

9 doing, Plaintiffs mischaracterize Mr. O'Bryan's testimony about his purported "reliance" on the

10 contents of the binder.  In any event, Defendants' good faith withholding of the binder is

11 supported by the expert discovery stipulation and, ironically, is consistent with Plaintiffs'

12 understanding of the scope of expert discovery considering their refusal to produce the binders to

13 which their own accounting expert referred repeatedly throughout his deposition. [2]

14      The expert discovery stipulation in this case, which Plaintiffs inexplicably ignore in their

15 Motion, requires the parties to produce only those materials relied upon by the expert in forming

16 his opinions.  (*See* Ex. 1, at ¶ 6 ("[T]he parties agree that other data or information that may have

17 been considered by a Testifying Expert but was not relied on by the Testifying Expert in forming

18 her or his opinions need not be disclosed or produced.").)  Here, the binder to which

19 Mr. O'Bryan referred during his deposition was prepared *after* Mr. O'Bryan completed and

20 produced his expert reports (and thus after he formed his opinions), as part of his preparation for

21 his deposition.  (*See* Ex. 7, at 1.)  Consistent with this fact, Mr. O'Bryan testified that his

22 opinions were based upon the script output and other underlying source materials, all of which

23 were produced to Plaintiffs and used by Plaintiffs' own accounting expert in forming his own

24 opinions.  (*Id.*; *see also* Ex. 5, at 32 n. 124, Exhibit B.)  Mr. O'Bryan explained:

25

26

27 [2] Plaintiffs mistakenly cite Mr. O'Bryan's purported reliance on the binder as a basis for excluding his "testimony on *the debit memo issues*[.]"  (Motion, at 8 (emphasis added).)  However, as the testimony cited in the Motion demonstrates, the materials in the binder relate

28 only to the bad debt transfers, not the debit memos.  (*Id.* at 7.)  Plaintiffs have offered no basis for excluding Mr. O'Bryan's testimony regarding the debit memos.

LATHAM&WATKINS<sup>LLP</sup>   LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1
2
3
4
5
6

> As I said, the script outputs were reviewed by us, and the information comes off that.  You can get all of the numbers that you see in my report as to the $2 million right off of the script outputs or the notes, the miscellaneous receipts.  All we did, for ease of summarization, was prepare just that, a summary, which then ties to these numbers.  So I certainly looked at it.  But that data that I relied on was the source data, i.e., the script outputs or the underlying source data.

7    (*See* Ex. 3, at 141:12-22.)

8        In addition, the stipulation expressly provides that the parties do not have to produce

9 "draft work papers…intermediate calculations…or data" or "[a]ny notes or other writings…

10 prepared by . . . a Testifying Expert in connection with this matter."  (*See* Ex. 1, at ¶ 5.)  Putting

11 aside the fact that Mr. O'Bryan testified that he did not rely on the binder in reaching any of his

12 opinions, the binder contains notes and draft work papers, which are not subject to discovery in

13 this case.  (*Id.*)  Thus, Defendants' withholding of the binder is entirely consistent with the terms

14 of the expert discovery stipulation (and, again, is consistent with the approach taken by Plaintiffs

15 regarding their accounting expert's binders).

16        Indeed, following Mr. O'Bryan's deposition, Plaintiffs never requested a copy of the

17 binder.  Instead, Plaintiffs opted to use this discovery "dispute" improperly as a vehicle to try to

18 exclude Mr. O'Bryan's testimony.  (*See* Ex. 7, at 1-2)  Although Defendants firmly believe that

19 Plaintiffs are not entitled to Mr. O'Bryan's binder under the expert discovery protocol, in the

20 spirit of compromise, Defendants offered to produce Mr. O'Bryan's binder in exchange for

21 Plaintiffs' producing the binders upon which Mr. Regan relied and repeatedly referenced during

22 his deposition.  (*Id.*)  Plaintiffs, however, rejected this offer.[3]

23

24

25

---

[3] Notably, Plaintiffs waited until the day of this filing – nearly two full weeks after Defendants
26 originally proposed exchanging binders – even to respond to Defendants' offer.  (*See* Ex. 8, at 1-2.)  Furthermore, although Plaintiffs claimed in their response that Mr. Regan's binders
27 contained only his reports and exhibits, they do not indicate whether these report and exhibit copies contained handwritten notes, highlighting, or other notations.  Indeed, Plaintiffs
28 inexplicably refused to produce Mr. Regan's actual binders (or copies thereof), and instead offered only to assemble and produce new binders themselves.

LATHAM&WATKINS LLP    LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

**2.      It Is Outrageous for Plaintiffs to Claim "Unfair Surprise" Regarding Mr. O'Bryan's Opinion on the HP Transaction**

The propriety of Oracle's decision to recognize revenue on the HP transaction is not properly an issue in this case, having never been pled.  As noted above, Special Master Infante specifically ruled that evidence pertaining to the HP transaction did not fall within the scope of fact discovery. (*See* Ex. 9, at 15:24-16:5.)  Plaintiffs' accounting expert nevertheless devoted almost 30 pages of his Opening Report to the HP transaction, arguing that he saw no evidence in the record that Oracle complied with the relevant accounting literature in deciding to recognize revenue on the software license agreement – an unsurprising fact, given the Special Master's ruling that Plaintiffs were not entitled to discovery on this issue.  (*Id.*; Ex. 5, at 34-63.)  To add to that, Mr. Regan (1) did not even review the critical documents relevant to Oracle's decision to recognize revenue on the HP transaction prior to issuing his opinions (*see* Ex. 6, at 172:6-12, 184:14-185:6, 190:1-18); and (2) has no experience applying the relevant accounting literature to determine whether revenue should be recognized on a software license transaction in the first instance.  (*Id.*, at 208:9-21.)

As a result, Mr. O'Bryan was compelled to respond to the issues raised by Mr. Regan regarding the HP transaction in his Rebuttal Report.  Plaintiffs cannot seriously claim that they were "surprised" or "prejudiced" by Mr. O'Bryan's opinion in this regard.  (*See* Motion, at 16-17.)  The rebuttal report is the appropriate place to respond to arguments raised in a plaintiff's opening report.  *See Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 423 (3rd Cir. 2006) (acknowledging that there is no "bright line rule that every opinion by an expert must be preliminarily stated in the [opening] report, or forever be precluded.").  To the extent that Plaintiffs claim to have suffered any prejudice, either as a result of Mr. O'Bryan's opinion on the HP transaction or the fact that documents were produced in support of Mr. O'Bryan's Rebuttal Report (documents that are not responsive under any discovery order), it is an issue of Plaintiffs' own making.  *See Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 U.S. Dist. LEXIS 10692, at *5 (N.D. Ill. Feb. 22, 2005) ("[I]n its rebuttal expert report, [a party] presents expert opinions refuting arguments made by the opposing party in its initial expert report.").

LATHAM&WATKINS LLP  LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

**3.      Mr. O'Bryan's Review of the Source Documents for a Sample of 60**

**Debit Memos Was an Appropriate Exercise of Professional Judgment**

Plaintiffs argue that Mr. O'Bryan's testimony on the debit memos should be excluded because he purportedly "failed to explain his methodology for analyzing 60 sample debit memos" and Plaintiffs have "no way of determining which 60 debit memos O'Bryan relied upon." (Motion, at 8-9.) This argument is meritless.

Mr. O'Bryan analyzed *all* 926 debit memos in the script output. (*See* Ex. 3, at 105:14-24.) In order to assure the accuracy of the data contained in the script output, he exercised professional judgment and decided to test the underlying source documents for a random selection of 60 debit memos. (*Id.*, at 107:5-108:10.) Based upon more than 25 years of accounting experience, including years of audit testing and sampling, Mr. O'Bryan determined that a random sample of 60 debit memos was sufficient to test the accuracy of the script output. (*See* Ex. 2, at 25 (the sample of 60 was "randomly" selected and was "sufficient to confirm [his] understanding of how debit memos were processed").)

While Plaintiffs challenge this approach, they fail to suggest the "appropriate" number of debit memos that should have been tested in the exercise of professional judgment. *See Kennedy*, 161 F.3d at 1230 (lack of contradictory evidence supports admissibility of expert opinion). Moreover, there is no evidence that Plaintiffs' accounting expert reviewed *any* source documents. In addition, while Plaintiffs claim that they "have no way of determining which 60 debit memos O'Bryan relied upon" (*see* Motion, at 9), they never even asked Mr. O'Bryan during his deposition to identify the 60 debit memos he analyzed. Accordingly, Plaintiffs have no basis for claiming that Mr. O'Bryan's methodology was wrong or that they do not have sufficient information. In any event, even if Plaintiffs could demonstrate that Mr. O'Bryan did not test enough debit memos, it would bear only on the credibility and not the admissibility of the evidence. *See Stansbury*, 2007 U.S. Dist. LEXIS 48410, at *6; *Halterman v. Legato Software*, No. C 04-02660 JW, 2006 U.S. Dist. LEXIS 20136, at *4 (N.D. Cal. April 5, 2006).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1758422.9

8

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1        **4.        Mr. O'Bryan's Testimony Regarding the Bad Debt Transfers Was**

2               **Based Upon an Independent Analysis of the Evidence**

3        Plaintiffs' contention that "the only opinions contained in [Mr. O'Bryan's] report on the

4   $2 million in transfers are unfounded conclusions" is undermined by Mr. O'Bryan's reports and

5   his deposition testimony.  (*See* Motion, at 7.)  In his Opening Report, Mr. O'Bryan described his

6   independent review and analysis of the script output and source documents, which formed the

7   basis of his opinion that at least $2 million in bad debt transfers in 2Q01 were appropriate when

8   made.  (*See* Ex. 2, at 32-33.)  Moreover, Mr. O'Bryan walked through two examples of bad debt

9   transfers that illustrate his analysis of this issue.  (*Id.*, at 33-36.)  At his deposition, Mr. O'Bryan

10  explained how he reached his conclusion that $2 million of the bad debt transfers were

11  appropriate when made, and he described each of the three categories of transfers that comprise

12  the $2 million.  (*See*, *e.g.*, Ex. 3, at 136:2-16 ($2 million total); 141:23-142:10, 157:21-158:20

13  ($700,000 in royalty payments); 176:19-178:6, 189:12-190:15 ($800,000 in erroneous credit

14  memos); 202:10-203:11 ($500,000 that may have been appropriate when made for various other

15  reasons).)

16       Plaintiffs simply are incorrect in contending that Mr. O'Bryan "failed to cite a single

17  document, deposition or supporting data point" in support of his opinions regarding the bad debt

18  transfers.  (*See* Motion, at 11.)  Page 33 of Mr. O'Bryan's Opening Report, cited by Plaintiffs in

19  support of their argument, merely summarized Mr. O'Bryan's findings and conclusions.  The

20  subsequent pages, in which Mr. O'Bryan sets forth multiple examples of transactions that

21  support his conclusions, are replete with footnotes and citations to supporting evidence.  (*See* Ex.

22  2, at 34-35.)  To the extent that Mr. O'Bryan did not cite every document upon which he relied in

23  the body of his report, he identified them in the appendices.  (*See* Ex. 3, at 157:14-17.)[4]

24  _____

25  [4] Plaintiffs' argument that O'Bryan failed "to provide the list of the 121 debit memos that were
    transferred" to the bad debt reserve misses the mark.  (*See* Motion, at 9.)  As an initial matter,
26  debit memos were never "transferred" into the bad debt reserve.  With respect to the 121
    transactions that have transfers into the bad debt reserve in their audit trial, Mr. O'Bryan
27  described precisely how he identified those transactions, and he explained how Plaintiffs could
    get the same data from the script output.  (*See*, *e.g.*, Ex. 3 at 168:23-169:13 ("You just go into the
28  script and run a sort in the database that has the credit amount 12601, then it prints all the
    information about that.  That's all we did.").)

LATHAM&WATKINS LLP LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
9        EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1    Thus, Mr. O'Bryan articulated the steps he took to arrive at his conclusions, based upon

2    objective analysis and verifiable evidence.  This is precisely what *Daubert* requires, regardless of

3    whether Plaintiffs agree with the conclusions Mr. O'Bryan ultimately reached.  To the extent

4    Plaintiffs believe that the analysis should have been more detailed or more thorough, "those

5    issues are . . . ripe for cross examination and presentation of contrary evidence." *See Stansbury*,

6    2007 U.S. Dist. LEXIS 48140, at *8.[5]

7            **5.        Plaintiffs' Attack on Mr. O'Bryan's Materiality Analysis Is Meritless**

8    Assuming *arguendo* that all of the transfers into the bad debt reserve in 2Q01 and

9    Oracle's recognition of revenue on the HP transaction were inappropriate, Mr. O'Bryan

10   concluded that any resulting overstatement was immaterial because it would represent

11   approximately 1.5% of Oracle's total reported revenue during the quarter.  (*See* Ex. 4, at 51.)

12   Although Plaintiffs claim that this testimony is speculative and lacks reliable foundation (*see*

13   Motion, at 13), their arguments ignore most of the evidence Mr. O'Bryan considered and focus

14   instead on a single component of his testimony – *i.e.*, the market's reaction to Oracle's beating,

15   versus meeting, consensus earnings expectations.  (*Id.*)

16   In reaching his opinion on materiality, Mr. O'Bryan analyzed the various quantitative and

17   qualitative factors pursuant to Staff Accounting Bulletin 99.  (*See* Ex. 2, at 36-40.)  During his

18   deposition, Mr. O'Bryan described in detail each of the factors he considered, and the

19   methodology he employed in assessing materiality.  (*See*, *e.g.*, Ex. 3, at 283:3-285:6, 291:4-

20   292:2, 306:22-309:10.)  Mr. O'Bryan explained that his analysis was consistent with what is

21   "typically done by auditors as it relates to materiality, particularly about stock movement" and

22   _____

23   [5] Plaintiffs also assume the truth of their own unproven accusations and attack Mr. O'Bryan's
     opinions as relying upon "the testimony of the individuals who were involved in the financial
24   misconduct[.]" (*See* Motion, at 12 n.8.)  Ironically, while Mr. O'Bryan relied upon two
     experienced and senior accounting personnel with first-hand knowledge of the relevant facts,
25   Plaintiffs rely upon:  (1) a Confidential Witness ("CW") who is being criminally prosecuted for
     embezzling $1 million from Oracle and who has refused to testify in this case, citing his Fifth
26   Amendment right against self-incrimination (*see* Ex. 10, at 1-7; Ex. 11, at 1-2); (2) a second CW
     who never worked for Oracle and did not participate in the creation of the debit memos (*see* Ex.
27   12, at 66:5-9, 66:19-68:5, 156:18-157:16); and (3) a low-level collections employee who did not
     know what a debit memo was until October 2002 (two years after-the-fact) and had no role in the
28   creation of or accounting for the debit memos.  (*See* Ex. 13, at 117:11-19; Ex. 14, at 383:6-
     385:4.)

LATHAM&WATKINS<sup>LLP</sup>  LA\1758422.9
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)

1   was based upon "professional standards,. . . professional care and auditor's judgment."  (*Id.*, at

2   291:4-21.)[6]  Given this testimony, Plaintiffs have offered no legitimate basis for excluding

3   Mr. O'Bryan's testimony on materiality.  *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 94

4   Civ. 5587 (PKL)(RLE), 2000 U.S. Dist. LEXIS 3742, at *10 (S.D.N.Y. Mar. 24, 2000) (court

5   permitted expert testimony on materiality based upon, among other things, expert's knowledge

6   and experience as a professional analyst, review of court records, SEC filings and similar

7   material).[7]

8   **IV.      CONCLUSION**

9         For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion to

10  Exclude the Testimony of Defendants' Accounting Expert J. Duross O'Bryan be denied.

11  Dated:  August 27, 2007                              LATHAM & WATKINS LLP
                                                          Peter A. Wald
12                                                        Jamie L. Wine
                                                          Michele F. Kyrouz
13                                                        Patrick E. Gibbs
                                                          Matthew Rawlinson
14

15

16

17                                           By:_____/s/_____

18                                                        Jamie L. Wine
                                                          Attorneys for Defendants ORACLE
19                                                        CORPORATION, LAWRENCE J.
                                                          ELLISON, JEFFREY O. HENLEY, and
20                                                        EDWARD J. SANDERSON

21

22

23  _____

24  [6]  Plaintiffs' accounting expert purported to apply an identical methodology in assessing
    materiality.  While both experts testified about the market's reaction to Oracle meeting versus
25  beating consensus expectations, neither cited analysts reports in support of this particular
    analysis.  (*See* Ex. 3, at 302:12-21; Ex. 6, at 132:10-133:22.)  Given that each side had an
26  opportunity to cross examine the opposing expert regarding materiality, failure to cite the
    analysts reports certainly is not grounds for either side to seek to exclude testimony.

27  [7]  Plaintiffs' attempt to discredit Mr. O'Bryan for purportedly failing to disclose a prior instance
    where his deposition testimony was excluded is futile.  (*See* Motion, at 17-18.)  In the very
28  deposition passage Plaintiffs cite, Mr. O'Bryan clearly explains that he simply misunderstood the
    original question.  (*Id.*)

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1758422.9

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-MJJ (JCS)