Certified Copy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

- - -

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION, | )<br>)<br>)<br>)   No. C-01-0988-MJJ |
| This Document Relates To: | )       Volume I<br>) |
| ALL ACTIONS. | )<br>) |

CONFIDENTIAL

VIDEOTAPED DEPOSITION OF

ALEXANDER BENDER, III, CPA

SAN FRANCISCO, CALIFORNIA

September 21, 2006

SHEILA CHASE & ASSOCIATES
REPORTING FOR:
LiveNote World Service
221 Main Street, Suite 1250
San Francisco, California 94105
Phone: (415) 321-2311
Fax: (415) 321-2301

REPORTED BY:

RICHARD M. RAKER, CSR NO. 3445

```
 1   looked at the remittance invoices for each of the
 2   cash receipts related to the debit memo that it
 3   reviewed?
 4        A.   We didn't look at their remittances for
 5   each debit memo, no.
 6             (Interruption)
 7             THE WITNESS:  We did not look at their
 8   remittance advices for the debit memos, no, not that
 9   I recall.
10   BY MS. RADCLIFFE:
11        Q.   Do you know if Ernst & Young looked at
12   any general activity preceding the debit memos to
13   determine why specific items were put "on account"?
14             MR. KONOVALOV:  Was that proceeding?
15             THE WITNESS:  Preceding?
16             MS. RADCLIFFE:  Preceding.
17             THE WITNESS:  No.  Not that I recall,
18   no.
19   BY MS. RADCLIFFE:
20        Q.   Do you know if there is any
21   documentation of Ernst & Young undertaking that
22   effort?
23        A.   I'm not -- I am not familiar with that,
24   no.
25        Q.   Do you know why Ernst & Young did not
```

```
 1   undertake that effort with respect to the debit memo
 2   transactions?
 3        A.   I don't know why specifically, no.
 4        Q.   Do you know why generally?
 5        A.   I don't think we were requested to do
 6   so.
 7        Q.   And who would have made that request?
 8        A.   Based on what I've read here, I presume
 9   the special committee -- the special litigation
10   committee.
11        Q.   And do you have any understanding that
12   it was a special litigation committee who set forth
13   the parameters of Ernst & Young's review of the debit
14   memos?
15        A.   As I mentioned before, only through
16   reading this memo that -- and talking with general
17   counsel that that's how it came about.  But I was not
18   part of those conversations, no.
19        Q.   Do you know in Ernst & Young's review of
20   the debit memos whether the debit memo transactions
21   had any effect on Oracle's income for fiscal quarter
22   2001?
23        A.   Based on procedures performed, it did
24   not.
25        Q.   And are those procedures the ones set
```

```
 1   forth in the memo at EY 00143 and the script?
 2        A.   Yes.
 3        Q.   Do you know if there was any evidence
 4   that Ernst & Young uncovered in its review that the
 5   underlying debit memo transactions had any effect on
 6   income?
 7        A.   Say it one more time.  I'm sorry.
 8        Q.   Sure.  Do you know if Ernst & Young ever
 9   learned in its review that the underlying debit memo
10   transactions had any effect on income?
11        A.   Based on our procedures, they did not
12   have any impact on income.
13        Q.   And do you know where that's documented
14   in the work papers?
15        A.   On page 144.  Just give me one second.
16   I'll read this.
17        Q.   Certainly.  Take your time.
18        A.   So on page 144, in the middle of the
19   page, it says, "The accounting distribution lines for
20   all items tested show the debit to Account 25005 and
21   a corresponding credit to Account 25005."  And in
22   parentheses, "We note no financial statement impact."
23        Q.   And is it your understanding that that
24   means no impact on the income?
25        A.   Yes, income part of the financial
```

1   statements.
2       Q.    And I just want to clarify.
3       A.    And I was going to finish my answer.
4       Q.    Go ahead.
5       A.    On page 145, "In the review of Account
6   25005, we note, based upon our review and testing, it
7   appears that no revenue was booked as a result of
8   reversing amounts from Account 25005."
9             And then under the deferred revenue
10  analysis, "Based upon our review of the company's
11  deferred revenue balances in Q2 '01, the changes in
12  the balance appeared reasonable and consistent with
13  similar quarters of previous and subsequent years,
14  indicating no inappropriate activity with revenue."
15      Q.    Let me see if I can clarify two things.
16      A.    Sure.
17      Q.    Is there a difference between an impact
18  on income and impact on revenue?
19      A.    Sure.
20      Q.    And so can there be an impact on income
21  but not an impact on revenue?
22      A.    There could, yes.
23      Q.    Do you know if Ernst & Young
24  specifically tested whether or not there was an
25  impact on Oracle's income in the second quarter of

```
 1   fiscal 2001?
 2        A.    Yes.  We looked at the credits, and the
 3   credits were always the balance sheet -- the same
 4   balance-sheet account.
 5        Q.    And other than this memo, is there any
 6   other documentation of that?
 7        A.    No, not that I'm aware of.
 8        Q.    And when I say "memo," EY 00143, just so
 9   the record's clear.
10        A.    Right.
11        Q.    And I think I asked two different
12   questions, and I want to make sure your answer is the
13   same for both.  I first asked with respect to whether
14   there was any impact on income with respect to the
15   debit memo transactions that Ernst & Young tested.
16              The second question is whether or not
17   there was any -- if Ernst & Young learned whether or
18   not there was any impact from the underlying
19   transactions to the debit memos on income.
20              MR. KONOVALOV:  Objection; vague and
21   ambiguous.
22              THE WITNESS:  To answer the first
23   question, we did not note any items that impacted
24   income as part of our testing.  And the answer to
25   your second question, we did not become aware of any
```

Case 3:01-cv-00988-SI   Document 1210-15   Filed 10/09/07   Page 7 of 7

## REPORTER'S CERTIFICATE

I, RICHARD M. RAKER, CSR #3445, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney or of any of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this _____ day of _____, 2006.

_____
RICHARD M. RAKER, C.S.R. No. 3445

1