```
 1            IN THE UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                       ---oOo---                  Certified Copy
 4
 5
 6   In Re ORACLE CORPORATION
     SECURITIES LITIGATION
 7                               FILE NO. C-01-0988-MJJ
     This Document Relates To:
 8   _____/
 9
10
11                        CONFIDENTIAL
12          VIDEOTAPED DEPOSITION OF GARY MATUSZAK
13               Tuesday, August 1, 2006
14
15             SHEILA CHASE & ASSOCIATES
16                   REPORTING FOR:
17               LiveNote World Service
18            221 Main Street, Suite 1250
19          San Francisco, California 94105
20              Phone: (415)  321-2311
21              Fax:   (415)  321-2301
22
23
24   Reported by:
25   ANDREA M. IGNACIO HOWARD, RPR, CSR NO. 9830
```

1   Q   Do you recall any conversations at all about
2   this deal in the second quarter of '01?
3   A   I recall having discussions regarding this
4   contract.  I don't recall specific conversations we
5   had surrounding this contract.
6   Q   Okay.  Well, what do you recall even
7   generally about your discussions about this contract?
8   A   Well, I recall trying to obtain an
9   understanding of the commitment to purchase
10  $30 million of hardware, understanding what Oracle's
11  normal procurement budget was for capital equipment,
12  for servers and, you know, other hardware equipment,
13  what they normally purchased from Hewlett-Packard,
14  what the price was on the equipment they purchased
15  from Hewlett-Packard, and how that related to the
16  price that they would purchase equipment under this
17  arrangement; and based upon all of the discussions we
18  had and documents we reviewed, this $30 million
19  purchase was -- you know, other than the fact that it
20  was signed at the same time as the license agreement,
21  it was a normal hardware purchase.
22       They purchased a significant amount of
23  hardware from Hewlett-Packard, and the prices weren't
24  any different.  My recollection is the prices weren't
25  any different than any of the other purchases they had

1   with Hewlett-Packard.
2       Q   Okay. So is it fair to say that Andersen's
3   conclusion after reviewing all the evidence and all
4   the documents provided to you regarding this deal --
5   was it Andersen's conclusion that the $30 million
6   hardware purchase -- sorry -- that HP's purchase of
7   Oracle's software was not contingent at all in any way
8   upon Oracle's $30 million hardware purchase from HP?
9           MR. KONOVALOV: Objection.
10          MR. SIDORSKY: Objection to form.
11          MR. KONOVALOV: Vague and ambiguous.
12          THE WITNESS: So earlier you asked me how I
13  would respond if it was contingent. I told you I
14  didn't know. Now you're asking me whether if this is
15  contingent, was it contingent, and how we conclude it?
16          So my answer is, I don't know that it was
17  contingent, but management concluded that it was
18  appropriate to recognize revenue under that license
19  arrangement. And Andersen, after reviewing all the --
20  the evidence that was provided to us, concurred with
21  management's agreement.
22          MR. GREENSTEIN: Okay.
23      Q   But I'm asking you if in concurring with
24  management's decision, did you conclude that there was
25  any contingency between HP's purchase of software and

```
 1   Oracle's purchase of hardware?
 2           MR. SIDORSKY:  Objection to form.
 3           THE WITNESS:  And again I -- I think I've
 4   responded that I don't know whether one was
 5   specifically contingent upon the other.
 6           MR. GREENSTEIN:  Q.  But I'm asking what your
 7   conclusion was in order to -- to agree with
 8   management.
 9           In order to agree with management, Oracle's
10   management, to recognize revenue, didn't you have to
11   either conclude -- didn't you have to conclude that
12   they weren't contingent?
13           MR. SIDORSKY:  Objection.
14           MR. GREENSTEIN:  Q.  The purchases weren't
15   contingent under the -- under SOP 97-2?
16           MR. SIDORSKY:  Objection.
17           MR. KONOVALOV:  Objection; vague and
18   ambiguous; it's argumentative.
19           MR. SIDORSKY:  Yeah, objection to form.  It's
20   been asked and answered.  It is calling for
21   speculation.  It's based on facts and evidence.
22   It's -- it's -- it's assuming things that -- without
23   foundation.  Objection to form.
24           THE WITNESS:  I -- I don't know that we had
25   to specifically conclude that they were not
```

CERTIFICATE OF REPORTER

I, ANDREA M. IGNACIO HOWARD, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a Certified Shorthand Reporter of the State of California, and was thereafter transcribed into typewriting, and that the foregoing transcript constitutes a full, true and correct report of said deposition and of the proceedings which took place;

That I am a disinterested person to the said action.

IN WITNESS WHEREOF, I have hereunto set my hand this 14 day of August 2006.

_____

ANDREA M. IGNACIO HOWARD CSR No. 9830