Certified Copy

```
 1
 2      IN THE UNITED STATES DISTRICT COURT
 3    FOR THE NORTHERN DISTRICT OF CALIFORNIA
 4
      In re:
 5    Oracle Corporation Securities  )
      Litigation.                    )  Case No. C010988 MJJ
 6    This Document Relates To:  All )
      Actions.                       )
 7    -------------------------------)
 8
 9              Wednesday, June 28, 2006
10              9:09 a.m.
11
12         * * *  C O N F I D E N T I A L  * * *
13
14         Confidential Videotaped Deposition
15    of JASON SEVIER, held at the offices of
16    David Feldman Worldwide, Inc., 805 Third
17    Avenue, New York, New York 10022, pursuant
18    to Subpoena, before Otis Davis, a Notary
19    Public of the State of New York.
20
21
22
23
24
25
```

1    Jason Sevier - Confidential
2    transaction with HP, right?
3        A.   Correct.
4        Q.   Do you know what it means in
5    the first bullet point where it states "$30
6    million hardware purchase guarantee"?
7        A.   Yes.
8        Q.   What does it mean?
9        A.   It means that Oracle had an
10   arrangement that they were going to
11   purchase $30 million worth of hardware from
12   Hewlett Packard, i.e. whether it's
13   computers, printers, whatnot.
14       Q.   Did you know when that purchase
15   guarantee was supposed to take place?
16       A.   I do not recall.
17       Q.   Some portion of it clearly was
18   in the second quarter of 2001, is that
19   fair?
20            MR. KONOVALOV:  Objection,
21       lacks foundation.
22       A.   I don't recall.  It was in the
23   contract.  I can't recall when the actual
24   purchase was required or did take place.
25       Q.   Do you know whether Oracle had

```
 1            Jason Sevier - Confidential
 2   agreed to the $30 million purchase
 3   guarantee in exchange for an agreement to
 4   purchase Oracle software in Q2 '01?
 5        A.   That I don't recall.
 6        Q.   But you do recall this $30
 7   million hardware purchase guarantee being
 8   in the contract?
 9             MR. SIDORSKY:  Objection to
10        form.
11        A.   I recall from the standpoint
12   that it was laid out in the audit committee
13   package as a highlight in the contract.
14   These bullets reflect the highlights from
15   the specific contract.
16             So that's how I recall it.  I
17   don't recall at the time, I recall based on
18   seeing it in this presentation.
19        Q.   But this page is titled
20   "Results of Second-Quarter Review Revenue -
21   Review Continued," right?
22        A.   Correct.
23        Q.   Does that suggest there was
24   revenue recorded in the second quarter of
25   2000 related to the HP $30 million hardware
```

1       Jason Sevier - Confidential

2  purchase guarantee?
3          MR. SIDORSKY:  Objection to
4      form.
5      A.    It implies that HP was a
6  contract that we looked at.  Without seeing
7  the specific contract or financial
8  statements, I can't tell you how much of
9  the HP contract was recognized or was
10 deferred.  It just means that it was a
11 contract we looked at.
12     Q.    For the second quarter?
13     A.    For the second quarter.
14     Q.    And that it was related to
15 revenue for the second quarter?
16     A.    Correct.
17     Q.    Do you know what a barter
18 transaction is?
19     A.    I do.
20     Q.    Can you tell me what it is?
21         MR. SIDORSKY:  Objection to
22     form.
23         Again, I don't believe the
24     witness is here in his capacity to
25     testify about hypothetical

```
 1         Jason Sevier - Confidential
 2      transactions or give you testimony in
 3      a capacity as an expert about contract
 4      or accounting terms.
 5            You can answer.
 6            MR. KONOVALOV:  I'll join the
 7      objection.
 8      A.    A barter transaction is when
 9  one party gives up a good or service in
10  return from another party for a good or
11  service, so no cash changes hand.
12      Q.    How does that impact revenue in
13  any given quarter?
14            MR. KONOVALOV:  Same
15      objections, also an incomplete
16      hypothetical.
17            MR. SIDORSKY:  I join in that
18      objection, it's hypothetical and
19      calling for speculation and vague.
20      But go ahead.
21      A.    You want to know in the context
22  of this contract, or just in general how it
23  works?
24      Q.    Why don't we first talk about
25  how it impacts this contract and then
```

274

```
 1
 2                  C E R T I F I C A T E
 3    STATE OF NEW YORK    )
 4                         : ss.
 5    COUNTY OF NEW YORK   )
 6
 7            I, OTIS DAVIS, a Notary Public
 8    within and for the State of New York, do
 9    hereby certify:
10            That JASON SEVIER, the witness
11    whose deposition is hereinbefore set
12    forth, was duly sworn by me and that such
13    deposition is a true record of the
14    testimony given by the witness.
15            I further certify that I am not
16    related to any of the parties to this
17    action by blood or marriage, and that I
18    am in no way interested in the outcome of
19    this matter.
20            IN WITNESS WHEREOF, I have hereunto
21    set my hand this 5th day of July 2006.
22
23
24                  _____
25                          OTIS DAVIS
```