LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
  Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
      michele.kyrouz@lw.com

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
  Matthew Rawlinson (SBN 231890)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com
      matt.rawlinson@lw.com

LATHAM & WATKINS LLP
  Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Phone: (213) 485-1234
Fax: (213) 891-8763
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>————————————————<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988-MJJ (JCS) (Consolidated)<br><br>CLASS ACTION<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF GEORGE FOSTER**<br><br>**Honorable Judge Martin J. Jenkins** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

III.   ARGUMENT ............................................................................................................ 3

    A.     Professor Foster Is Independent, Unbiased and Lacks any
        Connection to the Defendants that Would Warrant Exclusion of
        His Testimony ........................................................................................ 3

    B.     Professor Foster's Opinions Are His Own and Are Based upon
        Facts in the Record. .............................................................................. 6

        1.     Professor Foster Has Foundation for His Opinions and
            Meets the Requirements of Rule 26. ....................................... 6

        2.     Professor Foster's Opinions Are Based on the Facts in the
            Record. ..................................................................................... 8

    C.     Professor Foster's Opinions Are Reliable and Stem from a
        Methodology that Flows Naturally from His Research and
        Teachings. ............................................................................................ 12

        1.     Professor Foster's Methodology Stems from His Teaching,
            Research and Previous Writings and Is Supported by
            Experts in the Field. ............................................................... 12

        2.     Professor Foster's Reliance on Securities Analysts Is
            Appropriate. ............................................................................. 13

        3.     Professor Foster's Analyses Regarding Intra-Quarter
            Metrics Are Reliable. .............................................................. 15

IV.    CONCLUSION ....................................................................................................... 18

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1

## **TABLE OF AUTHORITIES**

2

Page

3

## **CASES**

*Beam v. Stewart*,
    845 A.2d 1040 (Del. 2004) ....................................................................................... 5

*Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*,
    No. 99 Civ. 1725(VM), 2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003) ............................. 11

*Daubert v. Merrell Dow Pharms.*,
    42 F.3d 1311 (9th Cir. 1995) ........................................................................... passim

*Dunn v. Sears, Roebuck & Co.*,
    639 F.2d 1171 (5th Cir. 1981) ................................................................................. 5

*Folden v. Washington State Dep't of Social & Human Services*,
    744 F. Supp. 1507 (W.D. Wash 1990), *aff'd* 981 F.2d 1054 (9th Cir. 1992)....................... 6

*Habecker v. Copperloy Corp.*,
    893 F.2d 49 (3d Cir. 1990) ................................................................................... 10

*In re Oracle Corp. Deriv. Litig.*,
    824 A.2d 917 (Del. Ch. 2003) ............................................................................ 4, 5

*In re Oracle Corp. Deriv. Litig.*,
    867 A.2d 904 (Del. Ch. 2004), *aff'd* 2005 Del. LEXIS 150 (Del. Apr. 14,
    2005) ................................................................................................................ 5

*Keystone Mfg. Co. v. Jaccard Corp.*,
    394 F. Supp. 2d 543 (W.D.N.Y. 2005) ....................................................................... 6

*Kumho Tire Co. v. Carmichael*,
    526 U.S 137 (1999) ...................................................................................... 16, 17

*Manning v. Crockett*,
    No. 95-C-3117, 1999 U.S. Dist. LEXIS 7966 (N.D. Ill. May 18, 1999)............................... 7

*PRS Benefits v. Cent. Leasing Mgmt.*,
    No. 3:03-CV-1183-B, 2004 U.S. Dist. LEXIS 24135 (N.D. Tex. Nov. 29,
    2004)................................................................................................................. 8

*Seeley v. Hamilton Beach/Proctor Silex, Inc.*,
    349 F. Supp. 23 381 (N.D.N.Y. 2004)........................................................................ 7

*Trigon Ins. Co. v. United States*,
    204 F.R.D. 277 (E.D. Va. 2001) .............................................................................. 7

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
    313 F. Supp. 2d 213 (S.D.N.Y. 2004) ....................................................................... 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RULES**

Fed. R. Civ. Proc. 26(a)(2)(B) .................................................................... 6, 7

Fed. R. Evid. 403 .......................................................................................... 10

Fed. R. Evid. 702 ............................................................................................. 7

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

## I.     INTRODUCTION

Plaintiffs' motion to exclude the report and expert testimony of Professor George Foster is predicated on incorrect legal standards, mere supposition (as opposed to evidence), and a misreading or obfuscation of the factual record.  Contrary to plaintiffs' claims, Professor Foster's opinions are reliable, tied to the facts, and rely on data and techniques commonly used by economists and forecasting experts.

Professor Foster was retained by Defendants to respond to certain opinions of plaintiffs' purported expert, Dr. Alan Goedde, regarding Oracle's forecasting process.  Based on a review of the factual record and in light of his extensive experience with analyzing forecasting and budgeting processes, Professor Foster concluded that "[c]ontrary to Dr. Goedde's conclusions, Oracle's financial forecasting process met relevant quality criteria and incorporated relevant economic and business information in a timely and appropriate manner," and that "Dr. Goedde's conclusion that Oracle's internal measures indicated that Oracle would miss its public guidance is not supported by the data."  Declaration of Douglas R. Britton In Support of Plaintiffs' Motion to Exclude the Expert Testimony of George Foster ("Britton (Foster) Decl.") Ex. 1 ¶ 12.

Plaintiffs first argue that Professor Foster somehow has a disabling bias and that his opinions should be excluded not because of any personal connection to defendants, but because he teaches at Stanford University.  Plaintiffs' argument is based entirely upon their supposition that, because three other Stanford professors (with whom Professor Foster is only nominally acquainted) are or were on Oracle's Board, and another director is a contributor to the university, Professor Foster is incapable of rendering an independent opinion.  Plaintiffs have not cited (and cannot cite) any evidence that these individuals influenced Professor Foster's opinions, that Professor Foster's tenure at Stanford is in any way dependent upon him rendering favorable opinions, or that he would sacrifice his academic reputation and academic freedom to opine favorably on behalf of the Defendants.

Plaintiffs also argue that Professor Foster's opinions should be excluded because he allegedly lacks knowledge of the facts underlying his opinions, and plaintiffs claim that the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1    opinions are not even his own.  This argument is completely unfounded.  In the four weeks that

2    Professor Foster had to respond to Dr. Goedde's opinions, Professor Foster spent 40-50

3    additional hours on this matter, and supervised a team of litigation consultants (as permitted by

4    the Federal Rules) in gathering relevant documents, conducting analysis and drafting the report.

5    Professor Foster testified that he was intimately involved in drafting the report, approved each

6    word, and that the opinions in the report were his own.  His report, along with his deposition

7    testimony, clearly demonstrates a detailed understanding of the facts necessary for him to reach

8    his conclusions.  The fact that Professor Foster, at his deposition, could not recall certain facts in

9    the massive record in this case does not illustrate a lack of foundation.  And contrary to the

10   opinions of plaintiffs' expert, Dr. Alan Goedde, Professor Foster's opinions are based on the

11   facts in the record and have the "fit" necessary for his opinions to be admissible in this action.

12           Ultimately, Professor Foster's opinions are reliable and based upon commonly

13   used-methodologies and principles.  His opinions are consistent with, and flow naturally from,

14   the methodology Professor Foster has used in his twenty-plus years of teaching, research, and

15   writings in the field of forecasting and budgeting.  His opinions should therefore be permitted as

16   they meet the standards of reliability and relevancy set forth by *Daubert* and its progeny and will

17   assist the trier of fact in understanding the quality of Oracle's forecasting process and in

18   interpreting the internal data generated from Oracle's forecasting process.

19   **II.     BACKGROUND**

20           Professor George Foster is the Paul L. and Phyllis Wattis Professor of

21   Management at the Graduate school of Business at Stanford University.  Britton (Foster) Decl.

22   Ex. 1 ¶ 4.  He possesses a bachelors and masters degree in economics from the University of

23   Sydney and a Ph.D. in Business Administration from Stanford University.  *Id.*  Professor Foster

24   researches and teaches budgeting and forecasting, and has written extensively about the two

25   subjects in articles as well as in his books *Financial Statement Analysis* and *Cost Accounting.*  *Id.*

26   ¶¶ 5-6; Declaration of Andrew M. Farthing in Opposition to Plaintiffs' Motions to Exclude

27   Expert Testimony of R. Glenn Hubbard and George Foster ("Farthing Decl.") Ex. 23 at 43:2-

28   44:5, 52:10-23.  As part of an ongoing executive management program for Irish software

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

executives, he has interviewed numerous CEOs regarding their forecasting processes to assist them in growing their companies. Farthing Decl. Ex. 23 at 57:5-63:5. In connection with his research, Professor Foster has gained detailed knowledge about the participant companies' management systems, including planning, budgeting, marketing and sales systems. Britton (Foster) Decl. Ex. 1 ¶ 9.

Professor Foster was asked to complete two assignments in rebuttal to Dr. Goedde's opening expert report:

   a.   Evaluate Oracle's forecasting process and determine whether it met the relevant standards of quality in light of Dr. Goedde's statements that Oracle's forecasting process suffered from various deficiencies.

   b.   Evaluate whether the internal information Dr. Goedde cites indicated that Oracle executives knew or should have known that Oracle would not achieve its public guidance.

Britton (Foster) Decl. Ex. 1 ¶ 2. Professor Foster determined that Oracle's financial forecasting process indeed "met relevant quality criteria and incorporated relevant economic and business information in a timely and appropriate manner. He also disagreed with Dr. Goedde's conclusion that "Oracle's internal measures indicated that Oracle would miss its public guidance" and found that the conclusion was not supported by the data. *Id.* ¶ 12. As part of his analysis regarding the quality of Oracle's forecasting process, Professor Foster determined that the process incorporated appropriate mechanisms to take into account changes in macroeconomic conditions. *Id.* ¶ 12A(3)(a). He was not asked to (and did not) analyze the outlook for Oracle's business sector and the U.S. economy, or determine whether Oracle's guidance was consistent with that outlook. Farthing Decl. Ex. 23 at 40:15-40:24. That analysis was performed by Defendants' expert, Professor R. Glenn Hubbard. Britton (Foster) Decl. Ex. 13 ¶¶ 1, 10-11.

## III.   ARGUMENT

### A.   Professor Foster Is Independent, Unbiased and Lacks any Connection to the Defendants that Would Warrant Exclusion of His Testimony.

Plaintiffs argue that because Professor Foster teaches at Stanford University that his impartiality and reliability in this case are undermined. In particular, plaintiffs appear to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

argue that the mere fact of Professor Foster's employment as a fully-tenured professor by Stanford—an institution with an endowment of *$14 billion*[1]—disqualifies him from testifying in this action because Stanford may receive future donations from Oracle or persons affiliated with Oracle.  Pls. Mot. at 5-8.  Plaintiffs' argument must fail both because plaintiffs cannot prove that any connections between Stanford and Oracle affected Professor Foster's opinions, and because there is no authority whatsoever for plaintiffs' position.

First, plaintiffs appear to argue that because three Stanford professors (out of a total of approximately 1,800 tenured Stanford faculty[2]) were or are directors of Oracle (Professors Grundfest, Boskin and Garcia-Molina), Professor Foster would not be willing to offer an opinion against Messrs. Ellison, Sanderson or Henley, or the Company.  Plaintiffs, however, have not cited any evidence to suggest any relationship other than the fact that the three professors teach at the same university as Professor Foster (but in different departments), and have certainly not suggested any relationship between Professor Foster and any of defendants in this matter.[3]  Likewise, plaintiffs have not introduced any evidence that Professor Foster's employment, financial wherewithal, or even Stanford's financial health is dependent upon a contribution from defendants, and that such a possibility affected Professor Foster's opinion.  Indeed, Professor Foster clearly testified that his opinions were not affected by any of the relationships he has at Stanford, stating: "I base my opinions on my professional judgment, not on what are the consequences to other parties."  Farthing Decl. Ex. 23 at 24:21-25:10.

Plaintiffs' argument lacks any legal basis.  In support of their argument, plaintiffs rely solely upon the decision of the Delaware Court of Chancery denying Oracle's special litigation committee's motion to terminate.  Pls. Mot. at 5-7 (citing *In re Oracle Corp. Deriv.*

---

[1]  Stanford's endowment grew to $14 billion in 2006.  Farthing Decl. Ex. 24, *University endowment expands to $14 billion*, SAN FRANCISCO CHRONICLE, January 22, 2007 at B-1.

[2]  *See* Farthing Decl. Ex. 25 (http://www.stanford.edu/home/stanford/facts/faculty.html).

[3]  Indeed, the only association plaintiffs have cited are that Professor Foster has attended lectures by Professor Grundfest, met Professor Boskin on occasion, and met Mr. Ellison once at a basketball game.  Professor Foster testified that he does not know Processor Garcia-Molina.  Farthing Decl. Ex. 23 at 26:3-30:2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1   *Litig.*, 824 A.2d 917, 939-40 (Del. Ch. 2003).[4]  In that case, the special litigation committee,

2   comprised of Oracle directors, possessed the discretion to terminate any claims the company may

3   have had against Messrs. Ellison and Henley and enter *judgment* in their favor.  Because of the

4   gravity of this task, Delaware law requires that a special committee demonstrate that there is no

5   genuine issue of fact as to the committee's independence.  *Id* at 938.  It was because of the

6   unique nature of the committee's power and the need to ensure that the committee's objectivity

7   cannot be reasonably questioned, that the court determined that the committee had not met its

8   burden of demonstrating its independence could not reasonably be questioned; the court did not,

9   however, make any finding about whether the committee members were, or were not,

10   independent.  *Id.* at 939-42..[5]

11         Here the Court is not being asked to enter judgment for defendants solely on the

12   basis of Professor Foster's testimony; instead the Court must determine whether Professor

13   Foster's opinions possess the requisite degree of reliability to be admitted under the Federal

14   Rules of Evidence.  Unlike the special committee context, the party seeking to admit expert

15   testimony does not need to demonstrate by a summary judgment standard that there is no

16   genuine issue as to a material fact as to the expert's independence.  Indeed, courts make clear

17   that independence, biases, and potential biases should rarely serve as the basis for exclusion, and

18   any such bias can be explored in cross-examination.  *See, e.g., Dunn v. Sears, Roebuck & Co.,*

19   639 F.2d 1171, 1174 (5th Cir. 1981) ("That a witness is an employee of a party does not preclude

20   his qualification as an expert", and stating that bias can be explored at cross-examination and

21

---

22   [4]  Plaintiffs' reliance on the related derivative case in Delaware Chancery Court is ironic.  In

23   that case, after the court denied the Special Litigation Committee's motion to terminate, the
court granted defendants' motion for summary judgment, concluding that "no rational trier of

24   fact" could find that Oracle's CEO Larry Ellison or it's then-CFO, Jeff Henley, possessed
any material, nonpublic financial information indicating that Oracle would miss its guidance.

25   *See In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 906 (Del. Ch. 2004), *aff'd* 2005 Del.
LEXIS 150 (Del. Apr. 14, 2005).  In their recently filed motion for summary judgment

26   against Defendant Ellison, plaintiffs entirely failed to discuss—or even cite—this authority,
which is squarely on point and is directly adverse.

27   [5]  In any event, the Delaware Supreme Court distanced itself from the position taken by the
Oracle decision in *Beam v. Stewart*, 845 A.2d 1040 (Del. 2004), where it held that

28   professional and social relationships do not impugn a director's independence.  845 A.2d at
1050-51, 1054-55.

LATHAM&WATKINS<sup></sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1  argued to a jury); *Folden v. Washington State Dep't of Social & Human Services*, 744 F. Supp.

2  1507 (W.D. Wash 1990) (permitting expert who was a co-owner of one of the nursing homes in

3  the class and whose compensation was contingent upon the outcome of the case to testify, but

4  discounting the expert's testimony), *aff'd* 981 F.2d 1054 (9th Cir. 1992).

5        Plaintiffs' bias claim is unsupported by the facts and is insufficient to preclude

6  Professor Foster from serving as an expert in this matter.

7      B.    **Professor Foster's Opinions Are His Own and Are Based upon Facts in the Record.**

8

9          1.    **Professor Foster Has Foundation for His Opinions and Meets the Requirements of Rule 26.**

10        Professor Foster clearly testified that the opinions expressed in his report were his

11  own, that he outlined and drafted portions of the report, and that every word in the report he

12  approved. Farthing Decl. Ex. 23 at 19:25-20:2. He also demonstrated a detailed understanding

13  of Oracle's forecasting process in his report and at his deposition. Despite this record, plaintiffs

14  suggest that because Professor Foster utilized litigation consultants and could not remember

15  certain facts during his deposition, he lacks the requisite foundation for his opinions to be

16  admitted. Plaintiffs' argument is contrary to well established law.

17        Federal Rule of Civil Procedure 26 requires that an expert witness provide a

18  "written report prepared and signed by the witness." Fed. Rule Civ. Proc. 26(a)(2)(B). The rule

19  contemplates that the expert may need assistance in preparing the report, but that it "should be

20  written in a manner that reflects the testimony to be given by the witness and it must be signed

21  by the witness." Adv. Comm. Notes on 1993 Amendments. Professor Foster testified that he

22  complied with this rule. Professor Foster signed his report, Britton (Foster) Decl. Ex. 1 at p. 56,

23  and testified under oath and cross-examination that he "drafted the report in the sense of every

24  word I changed or ran with. I did an extensive draft at the outset." Farthing Decl. Ex. 23 at

25  19:25-20:2. Professor Foster also testified that he supervised and directed the work performed

26  by the consultants at Analysis Group. *Id.* at 18:10-20:24. As such, Professor Foster complied

27  with the relevant requirements and his testimony and report should be admitted. *See Keystone*

28  *Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005) (admitting expert

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1   testimony where expert declared that he was substantially involved in the preparation of his

2   report and that the opinions were his own); *see also Trigon Ins. Co. v. United States*, 204 F.R.D.

3   277, 295 (E.D. Va. 2001) (denying motion to exclude expert because moving party failed to

4   show that the expert did not provide "the substance of the opinions");[6] *Manning v. Crockett*, No.

5   95-C-3117, 1999 U.S. Dist. LEXIS 7966, at *9-11 (N.D. Ill. May 18, 1999) (denying motion to

6   exclude expert witness because moving party failed to provide evidence that the expert "lacked

7   significant personal involvement in the preparation of his report").[7]

8            Professor Foster also demonstrated that he has sufficient foundation for his

9   opinions based on the information contained in his report.  Rule 26 requires that the written

10  report contain a "complete statement of … the data or other information considered by the

11  witness in forming the opinions." Fed. Rule Civ. Proc. 26(a)(2)(B).  Professor Foster's report

12  includes this information.  Britton (Foster) Decl. Ex. 1 at Appendix C.  The fact that Professor

13  Foster "skimmed" a few documents or deposition transcripts in the few short weeks he had to

14  prepare his rebuttal report and relied on litigation consultants to sift through the record to select

15  documents relevant to his analysis (in accordance with Professor Foster's instructions) does not

16  indicate a lack of foundation sufficient to warrant exclusion.  *See* Fed. R. Evid. 702 (expert

17  testimony must be based on "*sufficient* facts or data") (emphasis added); *Seeley v. Hamilton*

18  *Beach/Proctor Silex, Inc.*, 349 F. Supp. 23 381, 387 (N.D.N.Y. 2004) (assuming facts and failing

19  to review schematics of allegedly defective device did not make expert's testimony

20  inadmissible).  To the extent Professor Foster was unable to recall particular facts at his

---

[6]  Plaintiffs insinuate that Professor Foster's use of the consultants at Analysis Group is somehow improper based on the holdings of *Trigon*.  Yet in *Trigon* the court made no findings that Analysis Group had engaged in improper conduct and ultimately entered judgment for Analysis Group's client.  *See Trigon Ins. Co. v. United States*, 215 F. Supp. 2d 687 (E.D.Va. 2002). In addition, plaintiffs have made no allegations that Analysis Group improperly disposed of drafts in this case, nor could they, as plaintiffs stipulated that drafts were not discoverable, *see* Farthing Decl. Ex. 26 ¶¶ 5-6, and finally, this is yet another example of plaintiffs raising another baseless spoliation issue—and this time from totally different case.

[7]  Plaintiffs also criticize Professor Foster for "only" personally devoting 40-50 hours to his rebuttal report, Pls. Mot. at 8-9.  Given that Professor Foster had four weeks to generate his report, and that he also used litigation consultants in this matter, this argument falls flat.  The argument is also ironic considering that Dr. Jensen, one of plaintiffs' rebuttal experts, devoted only 16 hours to the preparation of his rebuttal report.  Farthing Decl. Ex. 27.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1   deposition from a record that spans millions of pages and more than 150 deposition transcripts

2   (between this action and the prior derivative action), that is also not a sufficient basis to exclude

3   his testimony. *Daubert* does not require that the expert pass plaintiffs' memory test (using

4   plaintiffs' grading curve), and plaintiffs cite no authority to the contrary. *See PRS Benefits v.*

5   *Cent. Leasing Mgmt.*, No. 3:03-CV-1183-B, 2004 U.S. Dist. LEXIS 24135, at *10 (N.D. Tex.

6   Nov. 29, 2004) (denying motion to exclude expert's testimony when expert was unable to recall

7   specific information during his deposition because "*Daubert* simply requires reliability, not a

8   photographic memory"). Regardless, Professor Foster displayed at his deposition a

9   commendable grasp of the facts. *See, e.g.*, Farthing Decl. Ex. 23 at 202:12-14, 203:20-24,

10  205:17-25, 207:22-208:19, 214:1-7, 219:4-14, 222:7-12 (testifying to George Roberts' position,

11  movement of the Potential projection through the quarter, the basis for Minton's upside

12  adjustments, when Oracle began to give formal guidance and its former practice of providing

13  informal input to securities analysts, Henley's opinion regarding big deals in the NAS division,

14  that Henley provided 12 cents EPS guidance to the market in 3Q01 that was more conservative

15  than the rounded 13 cents projected by Minton, and when Oracle first began selling Suite 11i).

16          2.      **Professor Foster's Opinions Are Based on the Facts in the Record.**

17          Plaintiffs also argue that Professor Foster's opinions lack foundation because his

18  report did not discuss certain "facts" or made improper inferences not based on facts in the

19  record. Plaintiffs make a similar argument in support of the motion to exclude defendants'

20  expert, Professor Hubbard. But as discussed in defendants' opposition to that motion, plaintiffs'

21  argument is based on a misunderstanding or obfuscation of the facts in the record.

22          a.      **Mr. Ellison Did not Direct That the Field Forecast Contain**
                    **More Risk.**

23

24          Plaintiffs first argue that Professor Foster failed to take into account a purported

25  directive from Mr. Ellison to the sales force to "add additional risk … to the field-level forecast."

26  Pls. Mot. at 13-15. Plaintiffs' citations in support of this argument, however, merely refer to Dr.

27  Goedde's reports—not any record evidence—and plaintiffs ignore Mr. Ellison's very clear

28  testimony under oath that he did not want additional risk in the forecast. Farthing Decl. Ex. 28 at

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1    423:20-426:7.  In contrast, Professor Foster considered the record and the deposition testimony

2    of Messrs. Ellison, Henley, Sanderson and Ms. Minton, concluding that no such change

3    occurred.  Britton (Foster) Decl. Ex. 1 ¶¶ 77-85, *citing* Ellison 9/21/06 Depo. at 423-27, Henley

4    11/16/06 Depo. at 277-79, Minton 7/7/06 Depo. at 19, 101-12, Sanderson 7/25/06 Depo. at 269-

5    71, 273-75.  In addition to considering this testimony (and contrary to plaintiffs' allegations),

6    Professor Foster conducted an analysis to see if he could detect a change in the pipeline that

7    would be consistent with such a directive being issued and followed.  Professor Foster's analysis

8    revealed that the field forecast for Q3 FY01 was not unusual as compared to prior quarters,

9    leading him to believe that the purported directive did not occur as plaintiffs and Dr. Goedde

10   have argued.  Britton (Foster) Decl. Ex. 1 ¶¶ 79-80.  Ultimately, plaintiffs' argument is not

11   predicated on any evidence, and at best, amounts to nothing more than a disagreement among

12   experts, which is not a basis for exclusion under *Daubert*.  *U.S. Info. Sys. v. IBEW Local Union*

13   *No. 3*, 313 F. Supp. 2d 213, 231 (S.D.N.Y. 2004) (holding that disagreements among experts was

14   not an issue of admissibility, but something to be addressed on cross-examination).

15
                    b.        **Minton's Potential Projection Was the Result of Her**
16                            **Judgment, Taking Into Account a Variety of Inputs.**

17            Plaintiffs also argue that Professor Foster failed to consider certain internal

18   metrics in rendering his opinion that Oracle's forecast was supported by the data, but instead

19   focused only on Ms. Minton's Potential projection, which according to Dr. Goedde, was simply

20   the result of the mathematical product of the conversion ratio from the same quarter in the prior

21   year and the current quarter's pipeline.  Thus, plaintiffs claim that Professor Foster's opinions are

22   not tied to the facts and are unreliable.  Pls. Mot. at 13-16.

23            Plaintiffs' argument is not supported by the evidence.  Again, plaintiffs rely on

24   Dr. Goedde's report as support for the "fact" that Ms. Minton calculated her Potential projection

25   using only the historical conversion ratio.  Pls. Mot. at 15, *citing* Britton (Foster) Decl. Ex. 19 at

26   p. 78.  The record facts, however, refute Dr. Goedde's opinion.  Ms. Minton testified that the

27   Potential projection was based on a number of factors, including discussion with sales executives

28   and field finance personnel—consistent with Professor Foster's conclusions.  Farthing Decl. Ex.

LATHAM&WATKINS⊔ₚ
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1   29 at 121:17-127:24.[8]  Moreover, Professor Foster analyzed the historical accuracy of Minton's

2   Potential projection, and found that it was historically Oracle's most accurate forecasting tool—

3   and a conservative one.  Britton (Foster) Decl. Ex. 1 ¶¶ 44-48, 90-97.  Professor Foster's

4   decision to focus on the potential forecast (as opposed to only the conversion ration) is therefore

5   reliable and tied to the facts.

6           c.      **Professor Foster's Opinion That Macroeconomic Information
                    Entered the Forecast Process Through Salespeople Is Based on
7                   Appropriate Evidence in the Record.**

8           Professor Foster concluded that Oracle's forecasting process included appropriate

9   mechanisms to take into account changes in macroeconomic conditions.  Professor Foster

10  reached this conclusion as part of his analysis in determining whether Oracle's forecasting

11  process met relevant quality standards.  He did not determine whether the data was consistent

12  with macroeconomic indicators, which was the province of Professor Hubbard's analysis.[9]

13  Plaintiffs' criticism that Professor Foster did not consider macroeconomic changes is thus

14  irrelevant; moreover, it ignores the fact that the record indicates that macroeconomic information

---

[8]  If plaintiffs were correct that Ms. Minton based her Potential projection solely on the prior
year's conversion ratio, her Potential projection would have projected revenues much higher
in the first half of fiscal year 2001 than what actually occurred because the conversion rates
in 1Q01 (45%) and 2Q01 (49%) were significantly below the conversion rates in 1Q00
(56%) and 2Q00 (57%).  Pls. MSJ at 5.  This, however, was not the case, meaning that the
Potential projection could not have been based solely or largely on the prior year's
conversion ratio.  Britton (Foster) Decl. Ex. 1 ¶¶ 44-48.  Because the Potential projection was
not based solely on the conversion ratio, there was no reason for Professor Foster to
separately "study the reliability of the historical conversion ratio", as plaintiffs contend.  Pls.
Mot. at 15.

[9]  Although both Professors Foster and Hubbard discuss the use of macroeconomic information
in Oracle's forecasting process, their opinions are fundamentally different.  *Compare* Britton
(Foster) Decl. Ex. 1 ¶ 12.A.3(a) ("Oracle's forecasting process included appropriate
mechanisms to take into account changes in macroeconomic conditions.") *with* Britton
(Foster) Decl. Ex. 13 ¶ 11 ("Defendants' … statements regarding Oracle's financial
performance during 3Q FY2001 were reasonable in light of the relevant sector-specific and
macroeconomic data available during the course of Oracle's 3Q FY2001 and the
contemporaneous information available through Oracle's internal forecasting process.").
Furthermore even if their opinions were duplicative, plaintiffs have not and cannot
demonstrate that the probative value of those opinions are " *substantially outweighed* by …
considerations of … needless presentation of cumulative evidence."  Fed. Rule Evid. 403
(emphasis added); *cf. Habecker v. Copperloy Corp.*, 893 F.2d 49, 53 (3d Cir. 1990) (holding
that it was not harmless error to improperly exclude expert witness whose testimony would
be duplicative of another expert).  *See also* Opposition to Motion to Exclude Deposition of
Professor Hubbard at 16-17 (the arguments of which are incorporated to this motion in the
interests of brevity).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1    was in fact built into Oracle's forecasting process (so any macroeconomic change would indeed

2    have been reflected in the data).

3            Plaintiffs also argue that Professor Foster lacked a factual basis for his conclusion

4    that the forecasting process included macroeconomic information.  This argument, however, is

5    clearly refuted by the record.  For instance, both Jay Nussbaum, the former Executive Vice

6    President of Oracle Services Industries, and Edward Sanderson, former Executive Vice President

7    of Oracle Product Industries, testified that they would gather information from their salespeople

8    as to what was going on with specific clients, such as whether the CIO at the client "was in a

9    good mood … do they have a sense of urgency to get this done, have they done all the

10   paperwork, is the selection process over."  Britton (Foster) Decl. Ex. 1 ¶ 57 (*quoting* Nussbaum

11   3/23/04 Depo. pp. 30-34, Sanderson 7/25/06 Depo. p. 39).  Jennifer Minton also explained that in

12   creating her potential forecast, she was "pushing these guys to find out whether or not there was

13   any changes in their forecast which is a result of the macroeconomic conditions that were

14   prevalent in the news, but nobody was moving off their forecast."  Farthing Decl. Ex. 30 at

15   237:19-238:16.  Although this testimony did not include specifics as to what each particular

16   customer explained to each salesperson years earlier, it was more than sufficient for Professor

17   Foster to opine that "by virtue of relying on sales representatives' estimates of likely purchases

18   by potential customers, Oracle's forecasting process incorporated relevant macroeconomic,

19   product, and customer information."  Britton (Foster) Decl. Ex. 1 ¶ 61.

20           In sum, Professor Foster's report is properly based upon the *facts* in the record,

21   and the arguments of plaintiffs and their expert contrary to those facts cannot serve as a basis to

22   exclude Professor Foster's testimony.  *Daubert*, 509 U.S. at 591-92; *Cary Oil Co., Inc. v. MG*

23   *Refining & Marketing, Inc.*, No. 99 Civ. 1725(VM), 2003 WL 1878246, at *3 (S.D.N.Y. Apr. 11,

24   2003) (denying motion to exclude expert whose opinion "fits the facts of the case and is not

25   premised on a false predicate fact").[10]

---

26   [10]   Plaintiffs also claim that Professor Foster's conclusion should not be permitted because

27          plaintiffs were purportedly excluded from discovering evidence from the files of regional
            sales managers.  Pls. Mot. at 21-23.  This argument, also made in their motion to exclude

28          Professor Hubbard, lacks merit for multiple reasons.  First, plaintiffs have not explained why
            this discovery limitation impacts their ability to challenge Professor Foster's opinion on this

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

C.     **Professor Foster's Opinions Are Reliable and Stem from a Methodology that Flows Naturally from His Research and Teachings.**

Professor Foster's opinions are also reliable under the standard articulated in *Daubert* and the Federal Rules.  Plaintiffs' arguments to the contrary ignore Professor Foster's twenty-plus years in academia teaching the same methodology he applies in his report, the fact that Professor Foster's methodologies have been utilized by other experts in the field, and/or are based upon a misunderstanding of the facts and the unreliable opinions of plaintiffs' own expert.

1.     **Professor Foster's Methodology Stems from His Teaching, Research and Previous Writings and Is Supported by Experts in the Field.**

In defining a reasonable forecast process, Professor Foster articulated three criteria for a reasonable forecast process based on his experience and teaching:  "(a) Is there a structured, broad-based process for collecting and evaluating information?  (b) Does the process have appropriate checks and balances?  (c) Is the process historically validated?"  Britton (Foster) Decl. Ex. 1 ¶ 29; Farthing Decl. Ex. 23 at 97:14-98:9.  Plaintiffs' claim that these criteria are somehow unreliable because they were developed expressly for the purpose of this litigation is simply false.

The criteria that Professor Foster used were not developed for this litigation, but have been utilized by Professor Foster and others before.  Professor Foster testified that he has taught this approach to his students for several years.  Farthing Decl. Ex. 23 at 97:14-98:9 ("This is an approach I've had to evaluating, in general, control systems, not just forecasting systems, budgeting systems for some time. …  I've been teaching with this for some time.").  The criteria also flow from Professor Foster's previous research and written works as well.  For instance, in asking whether "there [is] a structured, broad-based process for collecting and evaluating information" and whether "the process have appropriate checks and balances," Britton (Foster) Decl. Ex. 1 ¶ 29, Professor Foster draws upon his writings in his textbook *Financial Statement*

issue.  Second, while Defendants did not need to produce documents from the files of the regional sales mangers, nothing precluded plaintiffs from deposing these individuals or lower level sales people.  They chose not to.  There has been no fundamental unfairness as plaintiffs had access to all the information Professor Foster relied upon.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1  *Analysis*, where he noted that forecasts that aggregate the forecasts of different groups or

2  individuals (and different forecasting approaches) demonstrate greater accuracy.  Farthing Decl.

3  Ex. 7 at 285-86.  Similarly, Professor Foster's criteria regarding the historic validation of a

4  forecasting process, Britton (Foster) Decl. Ex. 1 ¶ 29, draws upon Chapter 8.3 of *Financial*

5  *Statement Analysis*, where he explains criteria used to evaluate the accuracy of forecasts.

6  Farthing Decl. Ex. 7 at 264-71.  Because Professor Foster's criteria "grow[] naturally and

7  directly out of research [he] [has] conducted independent of the litigation," they have indicia of

8  reliability more than sufficient to be admissible.  *Daubert v. Merrell Dow Pharms.*, 42 F.3d

9  1311, 1317 (9th Cir. 1995).

10  In addition to flowing from his prior writings, the criteria that Professor Foster

11  used find support in the text authored by another forecasting expert, Professor Armstrong, a

12  professor of marketing at the Wharton School of the University of Pennsylvania, and the very

13  expert on whom Dr. Goedde relies.  Professor Armstrong's text specifically recognizes the

14  importance of the three criteria used by Professor Foster.  *See* Farthing Decl. Ex. 31 at 686, 709-

15  18 (stating that forecasts should be based on "relevant, valid, and reliable data" and "use diverse

16  sources of data" to account for potential biases, and that evaluation of forecast accuracy is key).

17  Even plaintiffs' own purported expert did not disagree with the criteria used by Professor Foster.

18  Farthing Decl. Ex. 3 [Goedde Depo] at 242:3-10.  This is fatal to plaintiffs' criticisms.

19  The fact that these exact three criteria have not been specifically used in any of

20  Professor Foster's prior writings is not dispositive, nor does it suggest that Professor Foster

21  developed these criteria just for this litigation.[11]

22  ## 2.  **Professor Foster's Reliance on Securities Analysts Is Appropriate.**

23  Professor Foster's conclusion that Oracle's forecasting process was reasonable is

24  confirmed by the historical performance of the process and the fact that those forecasts were

25  generally consistent with the independent forecasting models of securities analysts.  Britton

---

27  [11]  Further evidence that Professor Foster's criteria were not created solely for purposes of this
28  litigation is shown by the fact that those criteria are similar to those he used in assessing the
reasonableness of AT&T's budgeting process in another securities litigation matter.  Farthing
Decl. Ex. 23 at 98:5-13 ("Certainly in the AT&T litigation I used this [sic] criteria.").

LATHAM&WATKINS␣␣␣
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1   (Foster) Decl. Ex. 1 ¶¶ 44-48, 62.  Plaintiffs argue that Professor Foster is attempting to prove

2   what was occurring within Oracle from what was known outside of Oracle.  Pls. Mot. at 18.

3          Plaintiffs mischaracterize Professor Foster's opinion.  Professor Foster opined that

4   "[i]f Dr. Goedde's opinion that Oracle's forecasting process failed to take market information

5   into account in Q3 FY01 were valid, one would expect to see a clear divergence between what

6   Oracle was forecasting internally and what security analysts were forecasting."  Britton (Foster)

7   Decl. Ex. 1 ¶ 62.  Professor Foster found that the forecasts of Oracle and the analysts were

8   generally consistent, and given that security analysts "have access to a wide variety of market

9   information" in creating their forecasts, it was "reasonable to infer that Oracle's forecasts also

10  reflected market-based information."  *Id.*[12]

11         Plaintiffs also contend that Professor Foster's opinions are unreliable because

12  securities analysts' forecasts are inherently unreliable, a point which plaintiffs claim Professor

13  Foster conceded in his prior writings.  Pls. Mot. at 18-19.  Plaintiffs' argument is based on a

14  misleading presentation of Professor Foster's textbook, and is contrary to the writings of

15  Professor Foster and other well-known economists.  Even the very quote from Foster's book,

16  *Financial Statement Analysis*, that plaintiffs purport to rely on indicates that analysts have a

17  strong incentive to provide accurate information—"[a]nalysts also report that high penalties are

18  placed on taking positions that diverge markedly from the consensus ***when the consensus***

19  ***subsequently turns out to be correct***."  Farthing Decl. Ex. 7 at p. 289 (emphasis added).

20  Professor Foster noted in his textbook that analyst models are often more accurate than

21  management projections because they have access to, and utilize, a wide-variety of

22  macroeconomic and firm-specific information, and that if new, unexpected information is

23  available (which occurs rarely), the analysts would revise their projections.  *Id.* at p. 274, 279.

24  Professor Foster's textbook also specifically presented data that on average, analysts' forecasts

25  are not biased in favor of management, generally offer pessimistic views, and provide

---

[12]  Plaintiffs' argument that Professor Foster should have discussed with analysts the basis for their projections is therefore irrelevant.  Pls. Mot. at 19-20.  Professor Foster's point was not to vet the analysts' own projections, but rather to look at their projections and compare it with that of Oracle's projections in an effort to determine whether Oracle's projections included macroeconomic information.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1   projections that are lower than what management expects. *Id.* at p. 277. Professor Foster's

2   findings that analysts tend to be more pessimistic than management have been verified by many

3   more recent academic studies.[13] Moreover, as noted in the opposition to Plaintiffs' Motion to

4   Exclude the Testimony of Professor Hubbard, several noted economists regularly rely on analyst

5   reports in forming macroeconomic and industry-level opinions. *See, e.g.,* Farthing Decl. Exs. 4-

6   5. Indeed, even plaintiffs' own expert, Dr. Goedde, testified that he uses analyst reports to

7   examine industry-level information. *See* Farthing Decl. Ex. 6 pp. 7-8; Farthing Decl. Ex. 3 at

8   142:15 – 143:10.

9          Plaintiffs' arguments that Professor Foster's reliance on security analysts was not

10  appropriate have no merit, and accordingly, plaintiffs' attempt to exclude Professor Foster's

11  testimony on this ground fails.

12          3.      **Professor Foster's Analyses Regarding Intra-Quarter Metrics Are**

13                  **Reliable.**

14          Finally, plaintiffs contend that Professor Foster's opinions regarding certain intra-

15  quarter metrics are unreliable. These criticisms are based upon the flawed notion that because

16  Professor Foster's statistical analyses have not been used before in this particular context and

17  have not been peer reviewed they are somehow unreliable. However, Professor Foster's

18  opinions are predicated on well-established statistical methods, are capable of duplication, and

19  are sufficiently reliable.

20          Using a regression analysis, Professor Foster assessed whether actual performance

21  in the first month and second month of the quarter would be predictive of overall quarter

22  performance. Professor Foster's analysis was designed to test Dr. Goedde's assertion that the

23  hockey-stick effect "did not prevent Oracle from knowing that it would miss public guidance

24  until the last few days of the quarter." Farthing Decl. Ex. 6 p. 50. The implicit assumption in

25  Dr. Goedde's conclusion is that the actual revenue for the first month and second months of the

26  quarter had predictive value as to the total quarterly revenues. *See id.* at 50-51, Ex. 25.

27  Professor Foster's analysis determined that the actual results from earlier months of the quarter

28  ────────────────
[13]   *See, e.g.,* Farthing Decl. Exs. 8-9.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1    are not reliable predictors of latter months' revenues.  Britton (Foster) Decl. Ex. 1 ¶¶ 69-76.  This

2    conclusion is consistent with the deposition testimony of both Mr. Ellison and Mr. Henley.  *See*

3    Farthing Decl. Ex. 32 at 292:17-294:16; Ex. 33 at 365:23-366:1.  Plaintiffs claim that this

4    analysis is "nonsensical" (but do not explain why) and lacks reliability because it has not been

5    peer reviewed, lacks a known error rate, and was prepared solely for the purpose of the litigation.

6    This is disingenuous.  A regression, such as the one performed by Professor Foster, is a standard

7    statistical technique commonly used by economists (including plaintiffs' own purported expert

8    Dr. Goedde) to determine the relationship between certain variables (in this case, the earlier

9    months' revenues and latter months' revenues).  *See* Farthing Decl. Ex. 6 at Exs. 23 and 25;

10   Farthing Decl. Ex. 23 at 155:23-156:3.  The regression specifically used by Professor Foster is

11   capable of duplication and testing, further indicating its reliability.  *Daubert*, 43 F.3d at 1316.

12   Ultimately, plaintiffs' criticism amounts to nothing more than the fact that Professor Foster had

13   not previously used a regression to determine the relationship between these two specific

14   variables.  This does not affect the reliability of Professor Foster's analysis, and it certainly does

15   not warrant exclusion of Professor Foster's opinions.  *See Kumho Tire Co. v. Carmichael*, 526

16   U.S. 137, 142 (1999) ("*Daubert's* list of specific factors neither necessarily nor exclusively

17   applies to all experts or in every case.  Rather, the law grants a district court the same broad

18   latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimately

19   reliability determination.").

20          Professor Foster also analyzed intraquarter pipeline growth (how the pipeline

21   changed during the quarter) in order to assess Dr. Goedde's conclusion that "[t]he behavior of

22   Oracle's Pipeline also informed defendants that Oracle was being adversely impacted by the

23   downturn in the economy and problems with its products."  Farthing Decl. Ex. 6 p. 36-37

24   (analyzing the decline in pipeline of $807 million over the course of the quarter and comparing it

25   to declines of $340-$548 million in prior quarters).  Dr. Goedde's conclusion logically relies on

26   an assumed *positive* relationship between intra-quarter pipeline growth and inter-quarter license

27   revenue growth.  Professor Foster tested Dr. Goedde's untested assumption, even though no

28   defendant testified that they used intra-quarter pipeline growth as a forecasting measure.

LATHAM&WATKINS^{LLP}
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1    Professor Foster's test involved plotting the intra-quarter growth in the pipeline and the year-

2    over-year actual license revenue growth on a chart and determining a "best fit" line, using

3    regression analysis.  Britton (Foster) Decl. Ex. 1 ¶¶ 108-10, Figure 11.  If Dr. Goedde's

4    assumption was correct, the best fit line would need to have a statistically significant, positive

5    coefficient (revealing a positive slope of the best fit line).  However, the best fit line had a

6    negative coefficient, which rebuts Dr. Goedde's untested assertion that the decline in pipeline in

7    3Q01 informed defendants that Oracle's sales were being adversely affected.  *Id.* at ¶ 110.

8         Plaintiffs criticize Professor Foster's analysis because he did not report on the

9    statistical significance of his analysis and used a small data sample.  Pls. Mot. at 20-21.  Both of

10   these criticisms lack merit.  First, because the best fit line did not have a statistically significant

11   positive coefficient (but rather a negative coefficient), there was sufficient statistical evidence to

12   reject Dr. Goedde's hypothesis (regardless of the statistical significance of the negative

13   coefficient).  Second, although it is true that more data points generally increases the robustness

14   of a statistical analysis, Professor Foster's finding of a negative coefficient based on his analysis

15   of the six most recent quarters of data prior to Q3 FY01 was sufficient evidence in and of itself

16   to reject Dr. Goedde's hypothesis.  Professor Foster's opinion regarding intraquarter pipeline

17   growth is reliable, and based on a scientific and statistical analysis utilizing accepted

18   mathematical methodologies.  It more than meets the *Daubert* criteria for admissibility.  *Kumho*

19   *Tire*, 526 U.S. at 149-50.

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

1    **IV.    CONCLUSION**

2          For the foregoing reasons, Defendants respectfully request that plaintiffs' motion

3    be denied.

4    Dated:  August 27, 2007                   Respectfully submitted,

5                                    LATHAM & WATKINS LLP

6

7

8                      By:_____/s/_____
                            Peter A. Wald

9                           Attorneys for Defendants ORACLE
                            CORPORATION, LAWRENCE J.

10                          ELLISON, JEFFREY O. HENLEY,
                            and EDWARD J. SANDERSON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)