Pages 1 - 47

United States District Court

Northern District of California

Before The Honorable Martin J. Jenkins, Judge

| | |
|---|---|
| Nursing Home Pension, | ) |
| Plaintiff, | ) |
| vs. | ) No. C01-0988 MJJ |
| Oracle Corporation, | ) |
| Defendant. | ) |

San Francisco, California
Thursday, March 16, 2006

### Reporter's Transcript Of Proceedings

**Appearances:**

For Plaintiff:
    Lerach Coughlin Stoia
    Geller Rudman & Robbins
    401 B Street, Suite 1700
    San Diego, California  92101
By: **Mark Solomon, Esquire**
    **Douglas Britton, Esquire**
    **Valerie L. McLaughlin, Esquire**

    Lerach Coughlin Stoia
    Geller Rudman & Robbins
    100 Pine Street, Suite 2600
    San Francisco, California  94111
By: **Shawn A. Williams, Esquire**
    **Willow E. Radcliffe, Esquire**

(Appearances continued on next page.)

*Reported By:* *Sahar McVickar, RPR, CSR No. 12963*
    *Official Reporter, U.S. District Court*
    *For the Northern District of California*

(Computerized Transcription By Eclipse)

1        MR. SOLOMON:  Thank you, Your Honor.
2             I don't think yet I've heard anything that you have
3   said that I disagree with, but I feel we may get to that point
4   in a few minutes, I hope we don't.
5             This is not an extraordinarily different sort of
6   class action than other class actions.  This is a class action
7   that has lots of complicated ingredients, but the broad strokes
8   for class certification are the same as in many, many, many
9   class -- class actions.
10            The defendants try in their briefs to suggest that
11  this is an extraordinarily long class period.  They say it's
12  not days or weeks, it's two and a half months.  Well, it's ten
13  weeks.  It's an extraordinarily short class period compared to
14  most.  Many class periods, you may be aware, are a year two or
15  even three years.  This is ten discreet weeks.
16            And in those weeks, the defendants make
17  representations to the market that the economy was not
18  affecting them adversely.  They made statement to the market
19  that the 11I was a great product that was selling well, and
20  that it was being used effectively.  They said that they were
21  on track to meet with their forecasted revenues.  And they said
22  those facts repeatedly.  They in the meantime engaged in
23  historic inside sellings up to that amount approaching
24  $1 billion.
25            By the end of the class period, there was a

1  disclosure on March 1st, and that disclosure told the market
2  that they were going to miss their forecasts, their
3  applications, database and license.  And in a conference call,
4  they told the market that the economy had done them in.
5         Two weeks later, they came back for more.  They
6  said, "Sorry, it's even worse than we thought."  And they said
7  the economy's done us in.  Applications are down."
8         **THE COURT:**  Are you relying on any disclosure prior
9  to March 1st?
10         **MR. SOLOMON:**  I am not, Your Honor.
11         Each occasion there were these specific.
12         **THE COURT:**  There you have it.
13         **MR. GIBBS:**  I appreciate that.
14         **MR. SOLOMON:**  Each occasion there was a 20 percent
15  drop in the stock of the price, and compared to miniscule drops
16  on the NASDAQ.
17         **THE COURT:**  Right.  I think these are things in your
18  brief.  You indicate I have to look at the historical pattern,
19  and they haven't missed in three years.
20         I read your papers.
21         **MR. SOLOMON:**  Correct.
22         We believe that just based on what I just told you
23  lost causation is clearly indicated appropriately.  There is a
24  straw man or a red herring that they have used throughout their
25  briefing to try and undermine the lost causation argument we

1  make.  And that is, they say, the accounting claims, they also
2  say the design claims, which I'll get into, the accounting
3  claims have no lost causation; well, that is interesting.  We
4  don't really know, to be quite honest, about the accounting
5  claims.  It could be a continuing fraud.  It may well be a
6  case --
7           THE COURT:  What are you saying?
8           MR. SOLOMON:  Okay.  The second quarter --
9           THE COURT:  No I understand what you -- what aspect
10 of the claim you are -- the accounting claim, but are you
11 saying you don't know if there is a causal relationship?
12          MR. SOLOMON:  What I'm saying is that there was no
13 disclosure on either March 1st or March 15 that actually said
14 we have been in error in our accounting, and that is part of
15 the reason why --
16          THE COURT:  They never made a misstatement --
17          MR. SOLOMON:  They didn't.  No, they didn't.
18 However, we discovered, as you are aware, what appears to be a
19 huge accounting fraud at the end of the second quarter before
20 the class period begins.  And we have alleged it.  And the
21 Ninth Circuit has found it an important allegation, just as the
22 Ninth Circuit has found that the other allegations are
23 important, allegations that they weren't being adversely
24 affected by the economy, allegations concerning 11I and
25 allegations concerning the forecast.

```
 1              Now, whether or not they have disclosed the fraud we
 2    allege with respect to the accounting allegations is of no
 3    moment to class certification, because we have alleged that the
 4    other misrepresentations they made during the class period were
 5    directly related to the partial disclosure and the next -- what
 6    we still say was a partial disclosure, to some extent.
 7              THE COURT:  Why wouldn't I certify a class that only
 8    deals with your methodology for proving up what you have
 9    alleged -- by looking at the complaint you can establish loss
10    of causation for, and that methodology would apply
11    appropriately there.
12              MR. SOLOMON:  Well, what I'm saying is the
13    accounting fraud is in the case certainly to establish
14    Scienter.  It's very powerful fact pattern if, in fact, we are
15    right.
16              THE COURT:  Right.
17              MR. SOLOMON:  -- to establish Scienter.
18              THE COURT:  Your position, though, is that won't
19    defeat certification.
20              MR. SOLOMON:  Correct.
21              THE COURT:  Because you otherwise pled lost
22    causation.
23              MR. SOLOMON:  Correct, that is our position.
24              Now, it may well be that part of the --
25              THE COURT:  Was that your position in the papers?
```

1           **MR. SOLOMON:**  Well, I think to be fair, our position
2     in the papers was we know that these -- the 11I and the economy
3     and the forecasting misrepresentations were tied to the
4     disclosures.  We are not saying there is a direct connection
5     between the accounting fraud and the disclosures.  It may well
6     be that there have been reversals in the third quarter of what
7     they did, to some extent in the second quarter, that may have
8     affected the results that may actually establish some lost
9     causation.  We are not there yet, Your Honor, we don't know.
10              I don't want to give you a discovery dispute, and I
11    won't, but the fact of the matter is we have not got to the
12    bottom yet of the accounting fraud, and we are working very
13    hard trying to do that.  But what I'm trying to say to you,
14    Your Honor, is that has nothing to do with whether or not you
15    should certify this class.  It's a red herring.
16              **THE COURT:**  So let's talk about the methodology you
17    provide for how you plan to at least establish the causal
18    relationship, which I suspect you do agree is an issue that I
19    need to grapple with.
20              **MR. SOLOMON:**  Absolutely.
21              **THE COURT:**  Okay.
22              **MR. SOLOMON:**  And, obviously, Mr. Steinholt has
23    suggested that we would use an event study, that that event
24    study would be looking at events, representations in the class
25    period, it would be looking at the stock price movement, and in

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing. The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

*Sahar McVickar, RPR, CSR*

**Sahar McVickar, RPR, CSR No. 12963**

**March 16, 2006**