LATHAM & WATKINS LLP
Peter A. Wald (SBN 85705)
Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
        michele.kyrouz@lw.com

LATHAM & WATKINS LLP
Patrick E. Gibbs (SBN 183174)
Matthew Rawlinson (SBN 231890)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com
        matt.rawlinson@lw.com

LATHAM & WATKINS LLP
Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071
Phone: (213) 485-1234
Fax: (213) 891-7863
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
Dorian Daley (SBN 129049)
James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS) (Consolidated) <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD** <br><br> Date: September 26, 2007 <br> Time: 2:30 p.m. <br> Judge: Martin J. Jenkins |

LATHAM & WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

# TABLE OF CONTENTS

**Pages**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. Mr. Hilliard's Testimony Is Not Relevant. ............................................................. 2

    B. Plaintiffs Fail To Demonstrate That Mr. Hilliard Has Followed And Applied A Reliable Methodology. ................................................................. 4

        1. Plaintiffs Still Do Not Meaningfully Describe Mr. Hilliard's Methodology. ............................................................................. 4

        2. Mr. Hilliard Does Not Appear To Have Applied This Newly Identified Methodology. ........................................................... 5

        3. Plaintiffs Cannot Rebut The Core Flaw In Mr. Hilliard's Methodology. ............................................................................................. 7

        4. Mr. Hilliard Cannot Vouch For The Reliability Of His Own Methodology. ............................................................................................. 8

        5. There Is No Evidence That The Method Plaintiffs Now Identify Is A Reliable Basis To Reach Mr. Hilliard's Conclusions. ............................................................................................... 9

        6. The Bulk of Plaintiffs' Response Is Irrelevant To the *Daubert* Inquiry. ................................................................................. 10

    C. Mr. Hilliard's Opinions Rely On Incomplete And Unreliable Evidence. ................................................................................................................. 10

        1. Mr. Hilliard Impermissibly Relies On Anecdotal Evidence. .................... 10

        2. Mr. Hilliard Impermissibly Relies On Unreliable Hearsay. .................... 13

III. CONCLUSION ................................................................................................................. 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\577423.10

i

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Ambrosini v. Labarraque*,
    101 F.3d 129 (D.D.C. 1996) .................................................................................................. 10

*Berry v. City of Detroit*,
    25 F.3d 1342 (6th Cir. 1994) .................................................................................................... 9

*Cavallo v. Star Enter.*,
    892 F. Supp. 756 (E.D. Va. 1995), *aff'd in pertinent part*, 100 F.3d 1150 (4th
    Cir. 1996) ......................................................................................................................... 11, 12

*Commodity Futures Trading Com'n v. Wilshire Inv. Mgm't Corp.*,
    407 F. Supp. 2d 1304 (S.D. Fla. 2005) .................................................................................. 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    43 F.3d 1311 (9th Cir.), *on remand, cert. denied*, 516 U.S. 869 (1995) ......................... 3, 8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ................................................................................................................. 5

*Democratic Party of Wash. State v. Reed*,
    2002 WL 32925223 (W.D. Wash. 2002) ............................................................................... 11

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ........................................................................................................... 7, 10

*Goebel v. Denver & Rio Grande Western R.R.*,
    346 F.3d 987, 992 (10th Cir. 2003) ......................................................................................... 7

*Groobert v. Pres. & Dirs. of Georgetown College*,
    219 F. Supp. 2d 1 (D.D.C. 2002) ........................................................................................... 10

*Mitchell v. Gencorp Inc.*,
    165 F.3d 778 (10th Cir. 1999) .................................................................................................. 8

*Olson v. Ford Motor Co.*,
    410 F. Supp. 2d 855 (D.N.D. 2006) ....................................................................................... 13

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
    326 F.3d 1333 (11th Cir. 2003) ................................................................................................ 9

*Redman v. John D. Brush & Co.*,
    111 F.3d 1174 (4th Cir. 1997) ......................................................................................... 13, 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\577423.10

ii

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

*Shawgo v. GMC*,
  2007 U.S. Dist. LEXIS 58102 (S.D. Ill. 2007) ........................................................................ 5

*United States v. Rosales*,
  19 F.3d 763 (1st Cir. 1994) ..................................................................................................... 3

*United States v. Sandoval-Mendoza*,
  472 F.3d 645 (9th Cir. 2006) ................................................................................................... 8

**RULES**

Fed. R. Evid. 104 ........................................................................................................................ 13

Fed. R. Evid. 403 .......................................................................................................................... 3

Fed. R. Evid. 702 ..................................................................................................................... 3, 6

Fed. R. Evid. 703 ........................................................................................................................ 13

SV\577423.10

iii

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' efforts to recast Mr. Hilliard's opinions in response to Defendants' Motion demonstrate the fundamental unreliability of his testimony – and reveal that Mr. Hilliard's role is merely to provide a purported "expert" cloak for Plaintiffs' favorite inflammatory sound bites about Suite 11i.  Mr. Hilliard never addressed the core technical issues relevant to Defendants' statements.  Instead, in his Report, he generalized from isolated criticisms to sweeping conclusions that Suite 11i was of such poor quality that Defendants' statements must be false.  This theory never made sense, and after Plaintiffs' other software expert delivered a fatal critique of Mr. Hilliard's methodology, Plaintiffs abandoned it altogether.  Plaintiffs now concede that as far as they (and Mr. Hilliard) know, Suite 11i customers may have experienced fewer and less serious problems than users of other ERP software.  As a result, Plaintiffs' Opposition reduces Mr. Hilliard to little more than an authoritative sponsor to vouch for inflammatory but irrelevant complaints raised by others – and thus to provoke a jury into an unjustified finding of liability.

Plaintiffs' recent concessions, however, are fatal to the claim that Mr. Hilliard's testimony is relevant to the issues in this case.  Mr. Hilliard already conceded he cannot dispute any statements about Suite 11i's structure or design, since he neither performed a technical analysis of Suite 11i nor reviewed its technical documentation.  When Plaintiffs acknowledged that Mr. Hilliard does not know how Suite 11i's quality compared to any other software, and therefore had no basis to say that the quality was so bad that Defendants' statements were rendered false, they severed any conceivable link between Mr. Hilliard's underlying analysis and the challenged statements.  Absent such a link, Mr. Hilliard's testimony does not "speak clearly and directly" to the challenged statements and thus does not come close to meeting the heightened standard of relevance required to permit presentation of his opinions to the jury.

Plaintiffs also fail to meet their burden to prove Mr. Hilliard used a reliable methodology and applied it consistently.  After failing to meaningfully describe Mr. Hilliard's methods in his Report, Plaintiffs cobbled together a vague three-step "process" from Mr. Hilliard's deposition testimony for the purpose of their Opposition.  But Plaintiffs, having ignored until now the basic

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

SV\577423.10

1

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure, cannot belatedly justify Mr. Hilliard's opinions on the basis of a purported methodology that is nowhere described in his Reports. Even now, Plaintiffs provide no description from which Mr. Hilliard's analysis could be recreated or tested. Plaintiffs do not show that any professional (including Mr. Hilliard) ever relies on this method – which, on its face, is designed to help customers choose among different software to buy – to reach conclusions of the type drawn by Mr. Hilliard.

In fact, there is no evidence that Mr. Hilliard applied this new "method" to analyze any of the statements at issue, and he unambiguously admits he did not apply it when he evaluated some of them. Indeed, it is not clear what, if anything, Mr. Hilliard's "process" amounted to beyond reviewing some unidentified subset of the documents and depositions from this case and adopting their lay critiques of Suite 11i as his conclusions. Plaintiffs' Opposition is a laundry list of isolated complaints about Suite 11i designed to detract from Plaintiffs' admission of the core fault identified in Defendants' Motion: neither they nor Mr. Hilliard can judge Suite 11i's quality against any objective or relative measure. Mr. Hilliard thus fails to meet *Daubert'*s requirement that he reliably bridge the "analytical gap" between evidence of bugs and implementation problems, on the one hand, and his conclusions about Suite 11i's quality, on the other.

Finally, Plaintiffs cannot defend the reliability of the evidence on which Mr. Hilliard bases his analysis. The evidence is largely anecdotal hearsay, consisting of unverified and untestable customer complaints of the type that all the experts admit would not be considered reliable in the field. Plaintiffs highlight a subset of this evidence and argue it is not as unreliable as the rest. But Mr. Hilliard's willingness to offer the same opinions even if most of his evidence is excluded from consideration merely demonstrates the plasticity of his analysis. In any event, the evidence Plaintiffs highlight plainly suffers from the same faults prior courts found justify exclusion of opinions as unreliable and only further undermines Mr. Hilliard's analysis.

In sum, Mr. Hilliard's proffered testimony fails the test of admissibility in every respect.

## II.  ARGUMENT

### A.  Mr. Hilliard's Testimony Is Not Relevant.

Because expert testimony poses "special dangers to the fact-finding process…judges

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

*must*…exclude proffered [expert testimony] under Rules 702 and 403 unless they are **convinced** that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1321 & n.17 (9th Cir.), *on remand, cert. denied*, 516 U.S. 869 (1995) ("*Daubert II*"); *see also United States v. Rosales*, 19 F.3d 763, 766 (1st Cir. 1994) ("[E]xpert testimony could create a substantial danger of undue prejudice . . . because of its aura of special reliability and trustworthiness.").

Here, Plaintiffs' recent admissions demonstrate Mr. Hilliard's analysis is not sufficiently relevant to the challenged statements to permit admission. Though Plaintiffs' initial claims were based on "integration" and "interoperability," Mr. Hilliard never addressed those issues directly, since he never performed a technical analysis of the software and never reviewed the software's documentation. Instead, he offered opinions premised on conclusions that Suite 11i suffered from problems that were more frequent or severe than ordinary. *See* Motion at 3; *see also* Declaration of Rees Morgan[1] at Exh. 1, Hilliard Report at §§ 5.1.6, 5.2.3, 5.3.4 (Suite 11i "never achieved minimally acceptable standards for commercial business software."). After Mr. Hilliard's Reports and deposition, however, Plaintiffs' other software expert, Dr. Randall Jensen agreed with Defendants that the evidence cited by Mr. Hilliard was meaningless and provided no basis to evaluate Suite 11i's performance absent context. *See id*. at 12. Following this rebuke by their own expert, Plaintiffs have shifted position again and now admit "***[i]t is undisputed that neither party knows with any degree of accuracy either the size of Suite 11i or the number of defects the software contained***." Opp'n at 18. But Dr. Jensen confirmed this information is critical: without it, Mr. Hilliard cannot determine whether the "evidence" he cites indicates Suite 11i had problems that differed in frequency or severity from similar software, or is merely the normal expression of the tens of thousands of serious bugs typically present in such software at release. *See* Exh. 2, Jensen Tr. at 30:25-31:13, 93:10-14; Exh. 4, Yourdon Report at § V.3.3.[2]

Any logical connection between Mr. Hilliard's analysis and the representations made by

---

[1] All exhibits cited herein are attached to the concurrently filed Declaration of Rees Morgan.
[2] After their expert's concessions, Plaintiffs labeled any analysis of quality "an impossible inquiry." Opp'n at 18. But a reliable analysis *is possible* (*see* Exh. 6, Yourdon Rebuttal Report at § IV; Exh. 2, Jensen Tr. at 111:8-112:2) – Mr. Hilliard simply has not done so.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

Defendants, however, is fundamentally undermined if Mr. Hilliard cannot opine that Suite 11i's quality rendered the statements false. Since nothing in the challenged statements claimed that Suite 11i met a particular quality standard and Plaintiffs have not proven that Suite 11i's quality was poor, the link between Mr. Hilliard's testimony and the challenged statements never was sufficient to support Plaintiffs' claims. Now that Plaintiffs admit that Mr. Hilliard has no basis to render opinions with respect to whether Suite 11i experienced problems that were atypical for software of its type, however, Mr. Hilliard's testimony is reduced to mere repetition of other people's complaints about the software, untethered to Defendants' specific representations.

Plaintiffs, however, cannot present Mr. Hilliard as an ombudsman to testify to every complaint ever made about Suite 11i under the guise of presenting expert opinions about the challenged statements. Indeed, Mr. Hilliard does not dispute the basic comparative claims made by Defendants about integration (*i.e.*, that Suite 11i was more integrated and required less systems integration than best of breed alternatives). *See* Exh. 3, Hilliard Tr. at 144:1-11; 157:9-22. Instead, Mr. Hilliard claims that Suite 11i did not "work as represented" because there were internal and customer complaints concerning software bugs or allegedly missing features. *See* Opp'n at 15-16; Exh. 1, Hilliard Report at § 3.2. In so doing, he assumes the truth of complaints and then works backward to conclude there must have been a false representation about that issue. However, he never demonstrates that the bugs were atypical for software as large and complex as Suite 11i and ignores that the evidence does not support the proposition that the allegedly missing features were ever represented to be part of the software, or explains why his conclusions are relevant to the specific claims made in Defendants' statements.[3]

**B.     Plaintiffs Fail To Demonstrate That Mr. Hilliard Has Followed And Applied A Reliable Methodology.**

1.     <u>Plaintiffs Still Do Not Meaningfully Describe Mr. Hilliard's Methodology.</u>

Plaintiffs still fail to adequately describe Mr. Hilliard's methodology. *See Shawgo v.*

---

[3] Much of the evidence Plaintiffs highlight is too vague even to link to problems with Suite 11i itself (rather than hardware limitations, user error, or other potential causes), much less to specific problems that rendered Defendants' technical claims false. *See*, *e.g.*, Opp'n at 7 (claiming Chipotle "experience[ed] major performance problems with 11i," which other evidence indicates may also have been caused by Chipotle's hardware); *id.* ("The situation at [Liberty Mutual] is dire."); *id.* at 19 ("[W]e pissed off a lot of customers."). Given that, it is simply irrelevant to the challenged statements.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

1    *GMC*, 2007 U.S. Dist. LEXIS 58102, *6 (S.D. Ill. 2007) (striking expert for failure to
2    "sufficiently describe" methodology).  Mr. Hilliard's Reports fail the expert disclosure
3    requirements of Federal Rule of Civil Procedure 26, as they do not describe his process beyond
4    averring that it is the same process he uses "with consulting clients for computer system
5    selection."  Exh. 1, Hilliard Report at § 3.2; *see* Fed. R. Civ. P. 26(b)(2).  After the fact, Plaintiffs
6    strung together snippets from Mr. Hilliard's deposition in order to define for him a method,
7    noting that Mr. Hilliard's process "involved (a) defining the needs of the client; (b) identifying
8    potential vendors; and (c) evaluating the suitability of the vendor's software to the client's
9    needs."  Opp'n at 15-16.  This falls far short of a meaningful description of the methods that
10   would allow Mr. Hilliard's analysis to be recreated or tested as required by *Daubert*.  *Daubert v.*
11   *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993) ("*Daubert*").

12        To the contrary, this alleged methodology is so vague that it is meaningless.  Nowhere in
13   Mr. Hilliard's report, his depositions, or Plaintiffs' Opposition, however, will one find how Mr.
14   Hilliard chose to define client needs, separate what is "commercially acceptable" from what is
15   not, or evaluated "suitability" – much less how Mr. Hilliard determined Suite 11i did not
16   "perform[] as represented."  Mr. Hilliard and Plaintiffs give no indication how, *ex ante*, one
17   could predict the acceptable the level of defects in Suite 11i or how, *ex post*, one could determine
18   if Mr. Hilliard has reliably applied his methodology, or has departed from it.  In sum, Mr.
19   Hilliard and Plaintiffs still fail to identify a methodology that could meet the *Daubert* standard.
20   *See id.*; *see also Shawgo*, 2007 U.S. Dist. LEXIS 58102, *6.

21        2.    <u>Mr. Hilliard Does Not Appear To Have Applied This Newly Identified Methodology</u>

22        To the extent that one believes the three goals now identified by Plaintiffs constitute a
23   "methodology," there is no evidence that Mr. Hilliard actually followed it when he performed his
24   analysis in this case. To the contrary, in his opening report, Mr. Hilliard takes Oracle to task for
25   its suggestion that its software meets 80% to 85% of customer needs because "it is not really
26   possible to compute a meaningful number of needs met and unmet (particularly since some needs
27   have more value than others)."  Exh. 1, Hilliard Report at 43.   Likewise, when Defendants asked
28   at deposition that he identify the various client needs that were the basis for his analysis, he could

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

not, or would not, identify them. *See generally* Exh. 1, Hilliard Tr. at 34-38. Nowhere in the over one hundred pages of Mr. Hilliard's Reports does he *ever* put the three parts of his analysis together to specifically balance customer needs (such as trade-offs between cost, risk, the need for new functionality, the need to implement a new system quickly), the specific strengths and weaknesses of various alternative vendors (including relative maturity and stability of their current software release), and then explain why Suite 11i would fall so short of these alternatives that Defendants' statements would be considered false and misleading. *See* Opp'n at 15-16. Rather, he expressly disclaims *any* analysis of other "potential vendors" with respect to overall performance or the particular features at issue in the challenged statements. *See* Exh. 3, Hilliard Tr. at 87:6-7 ("I didn't look at it on a relative basis."). Indeed, such an evaluation of other "potential vendors" constitutes the essence of the comparative analysis that Mr. Hilliard never performed and that Plaintiffs now claim is both irrelevant and impossible. *See* Opp'n at 18. Thus, even if one accepts Plaintiffs' characterization of Mr. Hilliard's "method," his failure to apply it undermines any claim that his opinions are reliable. *See* Fed. R. Evid. 702.

Mr. Hilliard also has admitted that with respect to certain of the challenged statements **he did not apply** Plaintiffs' three-part method. At his deposition, defense counsel challenged Mr. Hilliard's claim that certain statements were "misleading" given that what the information that he claimed was omitted from the statements was common knowledge in the industry. *See* Exh. 3, Hilliard Tr. at 224:22-225:2. Mr. Hilliard did not dispute this point, but responded by clarifying that ***he was not viewing the statements as an IT professional or customer:***

> Q. Do you think that customers who heard Oracle say that no systems integration was required to use the 11i suite believed that it would automate every single piece of functionality they needed for their particular business so they would not need to integrate with any legacy systems or any point solution providers?
>
> THE WITNESS: I didn't look at this from the perspective of the customer. I looked at it from the perspective – because those statements, as I understood them, were made to financial analysts who were then interpreting them or repeating them verbatim or what have you to determine whether they would make stock recommendations or not. So I was looking at it not from the perspective of someone in the IT industry or from a customer, but from the perspective to those people to whom that statement was made who are people who don't have that knowledge, and who I think ***without that knowledge would have had every reason to take that literally.***

*Id.* at 228:10-229:5. The context makes clear that (contrary to Plaintiffs' suggestion that

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

Defendants are "mischaracterizing" his testimony) Mr. Hilliard was using his assumption of the lack of contextual knowledge on the part of the listener *as the basis for his conclusion* that the statements were misleading. Plaintiffs do not explain how this could be consistent with their claim that Mr. Hilliard's process is reliable because it is the same process he and other IT professionals use. Worse, Plaintiffs fail to justify Mr. Hilliard's departure from what they claim is his method. *See Goebel v. Denver & Rio Grande Western R.R.*, 346 F.3d 987, 992 (10th Cir. 2003) (opinion is inadmissible if expert "changes" or "misapplies" methodology).[4]

    3. <u>Plaintiffs Cannot Rebut The Core Flaw In Mr. Hilliard's Methodology.</u>

Plaintiffs' Opposition also offers two unavailing responses in an attempt to defend Mr. Hilliard's methodology from Defendants' core criticism that Mr. Hilliard ignored the context of large, commercial software when he purported to evaluate Suite 11i, and therefore he could not reach meaningful conclusions about whether Defendants' representations were accurate.

First, Plaintiffs argue that because "no one knows" Suite 11i's size or how many bugs it had, these metrics cannot be the proper test of anything. *See* Opp'n at 18. Plaintiffs further claim, without explanation, that Mr. Hilliard did take "context" into account "[w]here it was appropriate." *Id*. This response, however, does little more than highlight the *ipse dixit* nature of Mr. Hilliard's opinions. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Neither Mr. Hilliard nor Plaintiffs even address how to distinguish Suite 11i's bugs from the serious errors that industry data shows are present in all major software releases. This is precisely the "analytical gap" Mr. Hilliard is required to fill, and Plaintiffs' Opposition makes no attempt to do so. *See id*. (Testimony that requires "too great an analytical gap between the data and the opinion offered" must be excluded.). Plaintiffs cannot avoid this problem by conceding they no longer contest Suite 11i's quality, while continuing to claim Defendants' statements are false because Suite 11i had the typical bugs found in such software.

Second, Plaintiffs argue that Suite 11i was so "revolutionary" that no meaningful comparison with other software was possible. *See* Opp'n at 18. Nothing about what made Suite

---

[4] Plaintiffs also never address the obvious negative pregnant created by Mr. Hilliard's testimony – that had he used the methodology typically used by customers and IT professionals (the methodology that Plaintiffs now claim is Mr. Hilliard's core method), then the statements could not be misleading.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

11i revolutionary, however, changed the basic metrics used to evaluate software's reliability or performance. Suite 11i still had function points. It still had bugs. As Dr. Jensen opined on Plaintiffs' behalf, one can certainly count both, and compare these numbers with the same metrics for other software of similar size. Plaintiffs have failed, however, to provide any reason to believe that, in analyzing Suite 11i, Mr. Hilliard did anything other than identify some portion of the tens of thousands of bugs typically present in such software, and then claim that they justify his conclusions. For the reasons set forth in Defendants Motion and above, this "method" will not support the conclusions Mr. Hilliard derives from it.

4. <u>Mr. Hilliard Cannot Vouch For The Reliability Of His Own Methodology.</u>

Even if Mr. Hilliard had applied the process Plaintiffs cobbled together, there is no evidence that this newly identified method is generally accepted or considered reliable by others in the industry. Plaintiffs describe Mr. Hilliard's process as "the same as the process [Mr. Hilliard uses] and that literally hundreds or thousands of other IT consultants use in the selection of software." Opp'n at 15; *see also id.* at 16. But neither Mr. Hilliard nor Plaintiffs cite any evidence to support this assertion or that would allow the Court to determine whether this process is standardized among different professionals. *See*, *e.g.*, *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006).

Instead of providing independent evidence to corroborate Mr. Hilliard's claim that his "method" is well-accepted, Plaintiffs respond with citations to Defendants' expert Ed Yourdon and Oracle executive Mark Barrenechea. But these citations are to **definitions** of terms Mr. Hilliard uses, **not to** the three-part methodology described above. Mr. Hilliard's methodology finds no support from anyone but himself and Plaintiffs' counsel. But the very touchstone of *Daubert* is independent evidence of reliability. *See Daubert II*, 43 F.3d at 1316 ("[A]n expert's bald assurance of validity is not enough."); *see also Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). As a result, absent unusual circumstances, a party presenting an expert must show "some objective, independent validation of an expert's methodology." *Id*. An expert may not vouch for his own reliability, as Mr. Hilliard attempts to do here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

5. <u>There Is No Evidence That The Method Plaintiffs Now Identify Is A Reliable Basis To Reach Mr. Hilliard's Conclusions.</u>

There is also no reason to believe Mr. Hilliard's newly identified "methodology" is a reliable basis to analyze the issues he opines on here. *See* Opp'n at 15-16. The process Plaintiffs describe is designed to help customers select among software vendors. *See* Exh. 1, Hilliard Report at § 3.2 ("I use the same basic methodology…that I use with consulting clients for computer system selection."). Plaintiffs do not describe how Mr. Hilliard's "vendor selection" process – which is concerned with evaluating the fit of a vendor with a specific customer – is a reliable method to determine whether Suite 11i is "integrated" or otherwise conformed to Defendants' statements, particularly when there is no specific "customer" to whose needs the software's capabilities can be fitted.[5] Absent persuasive evidence that this method is used and considered **reliable for the purpose** Mr. Hilliard uses it in this case, it cannot be considered sufficiently reliable to support Mr. Hilliard's opinions. *See Daubert II*, 43 F.3d at 1316.

Plaintiffs cannot avoid Mr. Hilliard's lack of a reliable methodology with vague allusions to his "personal experience."[6] Experience is no substitute for methodology. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003). Personal experience alone *may* be a reliable basis for testimony in certain unusual fields, but that is not the case here. Plaintiffs truncate their quotation to relevant case law regarding the use of experience, which reads in full: "[P]ersonal experience can be a reliable and valid basis for expert testimony. This

---

[5] For instance, when Mr. Hilliard was asked at his deposition to describe how one would measure the integration of best-of-breed products once they had undergone systems integration, he vigorously resisted any clear definition of "integration," noting that the issue was context dependant. *See* Exh. 3, Hilliard Tr. at 145:17-146:15. As a result, he argued, any conclusion about whether such software was successfully integrated depended on the individual customer's needs. This sort of analysis may be appropriate to software selection, but this approach bears little resemblance to the blanket conclusion that Defendants' statements were all false or misleading, and the "analysis" that supports it –which ignores these factors.

[6] In any event, Mr. Hilliard's experience is not relevant to these issues. The "question is not the expert's general qualifications in some field, but whether the **precise question** on which he will be asked to opine is within his field of expertise." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (emphasis added). Plaintiffs try to dodge the fatal flaws discussed herein by falsely insisting Defendants "tacitly concede…[Mr. Hilliard's] extensive qualifications." Opp'n at 4. But as explained in the Motion (and as Mr. Hilliard admits), Mr. Hilliard is a management consultant who "does not do software development [or] implement computer software or systems" – **not a technical expert**. Exh. 1, Hilliard Report at Exh. 3. While Mr. Hilliard has testified on topics from "data allegedly deleted or modified without authorization" to "procurement and tax matters" (Exh. 7, Hilliard website), he has never opined on overall quality or integration of a product like Suite 11i (*see* Exh. 3, Hilliard Tr. at 21:19-24, 24:13-17).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

is particularly true with non-scientific testimony, **where the Daubert factors may not apply because the issue is 'highly particular and has not attracted scientific scrutiny.'**" *Compare* Opp'n at 15 *with Groobert v. Pres. & Dirs. of Georgetown College*, 219 F. Supp. 2d 1, 6 (D.D.C. 2002) (*citing Ambrosini v. Labarraque*, 101 F.3d 129, 134 (D.D.C. 1996) (emphasis indicates Plaintiffs' omission). Here, Defendants have identified precisely the objective and rigorous methods that are actually used to evaluate the performance and functionality of complex software, and Plaintiffs' expert Dr. Jensen has confirmed them. Exh. 5, Yourdon Report at §§ V.3, VI; Exh. 2, Jensen Tr. at 111:8-112:2. These standards exist, but Mr. Hilliard ignores them.

### 6. The Bulk of Plaintiffs' Response Is Irrelevant To the *Daubert* Inquiry.

Ultimately, the bulk of Plaintiffs' Opposition does nothing more than recite dozens of the sound bites relied upon by Mr. Hilliard in reaching his conclusions. *See, e.g.*, Opp'n at 7-8, 18-19. As the Supreme Court's decision in *Joiner* demonstrates, however, an evidence dump cannot save Mr. Hilliard's opinions from Defendants' critique of his methods. *See Joiner*, 522 U.S. at 144-45. In *Joiner*, an expert was excluded for failing to sufficiently explain how his conclusions were tied to the underlying data. In response, the proffering party "failed to reply to this criticism" and instead focused on whether the information the expert cited "can ever be a proper foundation for an expert's opinion." The Court concluded that "was not the issue. The issue was whether *these* experts' opinions were sufficiently supported by the [information] on which they purported to rely." *Id.* (emphasis in original). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 146 (affirming exclusion of expert's testimony). Here, as in *Joiner*, Plaintiffs trumpet bits and pieces of the enormous record but fail to explain how Mr. Hilliard could have reliably generalized his conclusions from this evidence. Mere reiteration of evidence is no answer to the detailed and specific flaws in Mr. Hilliard's methods raised by Defendants particularly when, as described below, the evidence is entirely unreliable.

### C. Mr. Hilliard's Opinions Rely On Incomplete And Unreliable Evidence.

#### 1. Mr. Hilliard Impermissibly Relies On Anecdotal Evidence.

As Plaintiffs admit, courts regularly reject expert reports and testimony based upon
LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

anecdotal evidence. Opp'n at 8. Plaintiffs emphasize the rationale for this rejection:

> [C]ase reports are not reliable scientific evidence of causation, because they simply describe[] reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group.

*Id.* (*citing Cavallo v. Star Enter.*, 892 F. Supp. 756, 767 (E.D. Va. 1995), *aff'd in pertinent part*, 100 F.3d 1150 (4th Cir. 1996)). As a result, courts will exclude opinions based on "unfounded extrapolation" from such evidence. *Dem. Party of Wash. State v. Reed*, 2002 WL 32925223 at *15 (W.D. Wash. 2002). To demonstrate that this evidence is a reliable basis for his opinion, Mr. Hilliard must do more than identify relevant "phenomena"; he must also compare it to "the rate at which the phenomena occur in the general population." *Cavallo*, 892 F. Supp. at 767.

Mr. Hilliard's Report, however, is one long example of "reported phenomena" with no context to render them meaningful or reliable. As Plaintiffs acknowledge, Mr. Hilliard fails to establish the basic facts with respect to Suite 11i – he does not know the software's size, or the number of bugs its users experienced, or how frequent bugs were. He considered a tiny fraction of the customers implementing the software.[7] Indeed, the customers analyzed by Hilliard are **unrepresentative** of the larger Suite 11i customer experience, a point that Plaintiffs do not contest. *See* Motion at 14; *see also* Exh. 3, Hilliard Tr. at 78:4-79:2 ("I didn't look to see whether there might have been – whether that was represented – representative, because that wasn't relevant."). Plaintiffs' other software expert, Dr. Jensen, readily agreed that one would have to look at far more than Mr. Hilliard did to evaluate Suite 11i. *See* Exh. 2, Jensen Tr. at 111:8-112:2. In the context of complex software, where serious bugs are fact of life, Mr. Hilliard does not present any evidence that the problems he identifies occurred more often or more severely in Suite 11i than in any other software of similar size or complexity (or even that the rate of errors was disproportionate given Suite 11i's size). As a result, the evidence he cites provides no reliable basis to extrapolate to any conclusion about Suite 11i.

---

[7] Mr. Hilliard relies on about 40 troubled implementations, out of the more than 2,500 customers implementing Suite 11i during the Class Period. Plaintiffs suggest that fewer than 2,500 customers were implementing, but offer neither evidence nor explanation of this claim. *See* Opp'n at 10. Mr. Hilliard admitted that he has no idea how many customers were implementing Suite 11i during the Class Period. *See* Exh. 3, Hilliard Tr. at 77:7-8..

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

Plaintiffs try to defend Hilliard's opinions on the grounds that he relied on "an extensive body of evidence" that was not anecdotal.[8] Opp'n at 8. But the evidence Plaintiffs highlight is unreliable in precisely the sense described by the cases excluding anecdotal evidence. For instance, Plaintiffs reference, as a key piece of their "extensive body" of non-anecdotal evidence, comments by Oracle executives Larry Ellison and Ron Wohl suggesting that, in retrospect, Suite's 11i's pre-release testing should have been more extensive. *See id.* at 6. The comments do not identify how much testing Oracle actually performed, how much testing was the norm in the industry, or how Oracle's testing compared to that norm; they reflect little more than the benefit of hindsight. Indeed, it is undisputed that this "inadequate" testing was the most thorough pre-release testing that Oracle (at that time a leading software company for over a decade) had ever performed. *See* Exh. 5, Yourdon Rebuttal at VII.1.3. As Defendants' Motion pointed out, Plaintiffs do not identify the increase in errors (if any) that allegedly resulted from this unspecified testing deficiency, or whether, as a result, Suite 11i had a higher error rate than similar software. Thus, the material Plaintiffs tout is precisely the sort of "reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group" that the courts reject. *Cavallo*, 892 F.Supp. at 767.

Even if a subset of Mr. Hilliard's evidence were reliable, Plaintiffs' argument would merely underscore the core problem with Mr. Hilliard's failure to articulate an intelligible methodology. Plaintiffs make much of the "100 contemporaneously created documents and communications" cited by Mr. Hilliard, but a significant portion of these are simply customer complaints or reports of customer complaints (*i.e.*, anecdotal evidence). *Id.* at 6. Thus, Plaintiffs suggest they could abandon most of this evidence and it would make no difference. Apparently,

---

[8] This claim is undermined by Plaintiffs' briefing, which indicates both Mr. Hilliard and Plaintiffs relied heavily on anecdotal complaints about Suite 11i from customers, third-party implementers, and others. *See, e.g.*, Exh. 1, Hilliard Report at 28-31, 34-37, 45-47, 56-58, 69-70; 74, 87-101; Plfs' Opp. to Defs' MSJ at 15-25. Indeed, Plaintiffs cite many anecdotal reports of Suite 11i problems in this Opposition. Opp'n. at 6-7. Plaintiffs cannot sidestep this fact by claiming that Hilliard relied upon "the words of the defendants and/or the defendants' highest-ranking employees," since many of those Oracle employees were merely passing along anecdotal reports of software issues. *See, e.g.,* Opp'n at 9; 7:13-18 (*citing* emails by Oracle employees regarding specific, one-off problems). Isolated complaints from Oracle employees are not only hearsay (*see* Motion at 17), but, without more, are still anecdotal and cannot support an expert's opinion for the same reasons as direct customer complaints.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

if Mr. Hilliard had only 50, 30, or even fewer pieces of "contemporaneous evidence," upo which to rely, rather than the claimed 100, his analysis would be exactly the same.[9]  This merely highlights the lack of any specific connection between the evidence on which Mr. Hilliard purports to rely and his conclusions.  As a result, Defendants are forced to play a game of evidentiary "whack-a-mole," while Plaintiffs constantly shift the evidence underlying Mr. Hilliard's opinions each time Defendants expose flaws in a particular category.[10]

### 2. Mr. Hilliard Impermissibly Relies On Unreliable Hearsay.

Plaintiffs also argue Mr. Hilliard may rely on hearsay customer complaints, including those that are double hearsay filtered through an Oracle employee.  *See Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 861-62 (D.N.D. 2006) ("[C]ustomer complaints, whether contained in Ford's business records or compiled by another party, all constitute hearsay.").  Plaintiffs contend this material is "of a type reasonably relied upon by experts in the particular field in forming opinions." Opp'n at 12 (*citing* Fed. R. Evid. 703).[11]  This claim, on which Plaintiffs bear the burden of proof, (s*ee* Fed. R. Evid. 104(a); *see also Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997)), is incorrect.  Every witness to address the issue – both fact and expert – agreed customer trouble reports are not considered reliable by software experts in

---

[9] As industry data demonstrates, a typical full-suite ERP release normally has more than 100,000 bugs, including 20,000 severe bugs and 1,000 that could shut the system down entirely. *See* Exh. 5, Yourdon Report at ¶ 87.  Given that, Plaintiffs' citation to only "100 pieces" of evidence of bugs undercuts Plaintiffs' claims, rather than supporting them.

[10] Plaintiffs suggestion that Mr. Yourdon relied on this sort of evidence is incorrect.  Opp'n at 13.  After reviewing the technical documentation regarding data integration, Mr. Yourdon merely reviewed customer trouble reports to confirm his technical investigation.  Exh. 6, Yourdon Tr. at 230:20-231:17.  He found virtually none that related to integration, which suggested that the issue did not require further investigation.  *Id*.  Plaintiffs' suggestion that this is the equivalent of relying on customer complaints to evaluate that actual nature of software problems is simply comparing apples to oranges.  Rather, Mr. Yourdon, like both of Plaintiffs' experts, indicated that it was inappropriate and contrary to industry practice to rely on customer trouble reports to draw conclusions about software problems.

[11] Plaintiffs argue "customer complaints are not hearsay…customer complaints are not presented *only* to provide the truth of the matter asserted, but are used to demonstrate customers' experiences in implementations." Opp'n at 12.  This is nonsensical.  Mr. Hilliard's opinions assert Defendants' various product-related statements were false because Suite 11i could not work in the manner described by Defendants. *Id.* at 8.  In support, Mr. Hilliard cited many customer complaints discussing problems with Suite 11i that allegedly undermine Defendants' statements.  Mr. Hilliard thus is offering these customer complaints for the truth of the matter asserted; *i.e.*, that Suite 11i behaved as the customers described, not how Defendants claimed it would operate. *Id*.at 7-8, 15-16.  These statements are indisputably hearsay.  *Olson*, 410 F. Supp. 2d at 861-62; *see also Commodity Futures Trading Com'n v. Wilshire Inv. Mgm't Corp.,* 407 F. Supp. 2d 1304, 1315 n.2 (S.D. Fla. 2005) (customer complaints memorialized in reports that fall within hearsay exception are inadmissible hearsay within hearsay).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)

13

1  the field.  Motion at 18 (*citing* Messrs. Wohl, Sellers, Yourdon, Jensen, and Hilliard and Ms.

2  Shaw).  **Both** Plaintiffs' software experts testified customer trouble reports often incorrectly

3  blame software for problems caused by other sources.  *See* Exh. 2, Jensen Tr. at 84:21-22, Exh.

4  3, Hilliard Tr. at 91:25-92:3, 122:12-16.  As a result, even Mr. Hilliard concedes he does not rely

5  on such data when evaluating software in the field.  *See* Exh. 3, Hilliard Tr. at 36:4-22.

6        Plaintiffs also claim it is the best available evidence.  Opp'n at 8.  But this is no basis to

7  admit unreliable hearsay, nor does it make it an appropriate basis for expert opinion.  *See*

8  *Redman,* 111 F.3d at 1179.  Moreover, this material is only the "best available" evidence because

9  of Plaintiffs' litigation choices.  On top of on the extensive record from the SLC investigation

10  and the derivative cases, Plaintiffs had the benefit of over two years of discovery, including the

11  production of the Suite 11i software and technical materials, which Plaintiffs insisted upon, but

12  then never used.  Plaintiffs could also have sought data reflecting bug frequency and severity

13  totals for Suite 11i.  Or they could have pursued testimony from some of the over 100 customers

14  they subpoenaed about those customers' experiences with Suite 11i.  Plaintiffs' failures both to

15  gather much of the evidence necessary to evaluate these questions and to properly analyze the

16  evidence they did gather cannot excuse them from having reliable and appropriate evidence to

17  support their expert's opinions.

18  **III.    CONCLUSION**

19        For the foregoing reasons, Defendants respectfully request that the Court exclude the

20  Reports and testimony of Brooks Hilliard at trial in this matter.

21  Dated:  September 10, 2007

                      Respectfully submitted,
                      LATHAM & WATKINS LLP
                         Peter A. Wald
                         Patrick E. Gibbs
                         Michele F. Kyrouz
                         Jamie L. Wine
                          Matthew Rawlinson

                      By:_____/S/_____
                        Matthew Rawlinson
                        Attorneys for Defendants ORACLE
                        CORPORATION, LAWRENCE J.
                        ELLISON, JEFFREY O. HENLEY,
                        and EDWARD J. SANDERSON

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
DECLARATIONS AND TESTIMONY OF BROOKS HILLIARD
Master File No. C-01-0988-MJJ (JCS)