```
 1              IN THE UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4
 5   In re ORACLE CORPORATION                    CERTIFIED COPY
 6   SECURITIES LITIGATION.
 7                              Master File No. C-01-0988-MJJ
 8   This Document Relates To:
 9
10      ALL ACTIONS.
11   _____/
12
13                        ---oOo---
14                      CONFIDENTIAL
15             DEPOSITION OF LAWRENCE ELLISON
16                        VOLUME I
17                 THURSDAY, JULY 13, 2006
18                        ---oOo---
19
20             SHEILA CHASE & ASSOCIATES
                    REPORTING FOR:
21              LiveNote World Service
             221 Main Street, Suite 1250
22           San Francisco, California 94105
                Phone:  (415) 321-2311
23              Fax:    (415) 321-2301
24   Reported by:
     DIANA NOBRIGA, CSR, CRR
25   LICENSE NO. 7071
```

1       A.   April 13th, 2001.

2       Q.   Yes.

3       A.   Okay.

4       Q.   And this is just for the consulting
5  organization; correct?

6       A.   I believe so, yes.

7       Q.   Looking at 159568, which is page 24 of the
8  presentation, and it talks about, "R11i Product Issues
9  have resulted in a 2 point deterioration in fiscal year
10 01 Margin Percentage."

11           Do you see that?

12      A.   I do.

13      Q.   Then there is some figures then an asterisk,
14 then it talks about -- it says the following, "Largest
15 customers include Paxar ($2M), Ingersoll-Rand ($2M),
16 Xerox ($1M), Greenway Medical ($1M), Honeywell ($1M),
17 and Franklin Covey ($1M).

18           Do you see all that?

19      A.   No, I don't.  Page 25 -- are we on the same
20 page?

21      Q.   Maybe not.

22      A.   We're not on the same page.  That's page 24 of
23 the presentation.

24      Q.   Did I say 25?  I apologize.

25           MR. LINDSTROM:  And I think counsel -- go

```
 1   ahead.  If you will, I think he's referring to the
 2   asterisk at the bottom of the page.
 3           THE WITNESS:  Because that's not consistent
 4   with the next page of the presentation.
 5           MR. LINDSTROM:  Now that we have the right
 6   page, why don't you repose the question.
 7           THE WITNESS:  It is interesting that the
 8   document, page 24, says, "$2M Ingersoll-Rand," and here
 9   it says Ingersoll-Rand is less than a million.
10           MR. LINDSTROM:  There is no pending question.
11           THE WITNESS:  Okay.  I just noticed they are
12   not consistent.
13           MR. SOLOMON:  This is your document.
14           THE WITNESS:  Not mine personally.  Someone at
15   Oracle wrote this document.  Okay.
16           MR. SOLOMON:  Q.  So, anyway, I was looking at
17   page 24 of the presentation and I was -- I referenced
18   the 2 point deterioration in margin as a result of R11i
19   product issues.  Then I was going to the asterisk where
20   it says, "Largest customers include," then we went
21   through the dollar amounts.
22           This appears, does it not, to reflect the fact
23   that Oracle had to make concessions to those customers
24   with respect to the implementation of 11i; is that fair?
25       A.  Go on.  But it was a new product.  New product
```

1  takes more consulting to deliver.  The customers
2  sometimes get upset if the size of the consulting bill
3  is too big, because the consultants are learning about
4  the products as they go, and it is not uncommon for us
5  to have to make concessions under those circumstances.
6       Q.   Okay.  So you agree?
7       A.   Yes.
8            MR. SOLOMON:  I've marked as the next exhibit
9  a document produced by defendants with a Bates range
10 018737 to 742.
11                (Exhibit 27 marked for
12                 identification.)
13           MR. SOLOMON:  Q.  Take a chance to look at it,
14 then tell me if you recognize it, please.
15      A.   Okay.
16      Q.   Do you recognize it?
17      A.   I do.
18      Q.   And you received it on or around November 8th
19 of 2000?
20      A.   Parts of it, yes.
21      Q.   If you go to the third page of the document,
22 which is 018379, it is addressed to you, Larry Ellison?
23      A.   Yes.
24      Q.   And it is signed Terry Conner, Senior Vice
25 President and CIO, President of Information Systems.  Do

```
 1   you see that?
 2        A.   I do.
 3        Q.   The last page.
 4             It appears it was also perhaps signed by Helen
 5   Sayles, Senior Vice President of Human Resources.
 6             Do you see that on the right bottom?
 7        A.   I do.
 8        Q.   Do you know those individuals?
 9        A.   I do not.
10        Q.   Did you read this e-mail when it was sent to
11   you?
12        A.   I did.
13        Q.   And you'll see that after identifying the
14   company, the writers say -- I'm on page 018739 --  "We
15   are writing this to bring to your attention what we
16   consider a major breach of promise from Oracle and in
17   the hope that we can yet recover to a mutually
18   acceptable outcome."
19             Do you see that?
20        A.   I do.
21        Q.   It goes on to say, "Having gone through
22   extensive review of alternatives, we purchased the
23   Oracle 11i Human Resources Management System in late
24   1999.  Our decision was based on your team's explicit
25   commitment to delivery of a product that would perform
```

```
 1        Q.   And if you look at the first page there is
 2   expressed -- I could read it all, I guess, but there
 3   seems to be expressed frustration that the Order
 4   Management issues were not being addressed.  Is that
 5   fair?
 6        A.   Give me a second.
 7             MR. LINDSTROM:  Can you direct the witness to
 8   some specific language?
 9             MR. SOLOMON:  Sure.
10             MR. LINDSTROM:  Other than simply on the first
11   page.
12             MR. SOLOMON:  Q.  If you look to "Renee and
13   Ron, I still have not received any reply."
14        A.   Okay.
15        Q.   Do you see that?
16        A.   Okay.
17        Q.   Just the first few lines.
18        A.   Okay.
19        Q.   Okay.  Were you aware at the time that issues
20   concerning Order Management were being raised by Oracle
21   customers?
22        A.   Yes.
23        Q.   Was the resolution of any of those problems
24   costing Oracle money?
25             MR. LINDSTROM:  Does your question go beyond
```

```
 1  Brock Tools?
 2          MR. SOLOMON:  Yes.
 3          THE WITNESS:  The development of -- I'm not
 4  sure I understand your question.  I'm not trying to be
 5  cute.
 6          But clearly, to develop the software, to debug
 7  the software, to test the software, to deliver the
 8  software, always costs us money.
 9          MR. SOLOMON:  Q.  I'm getting at either legal
10  settlements or free consulting or free implementation.
11      A.  I think there were certainly cases where we
12  couldn't bill for consulting.  Not very many cases.  But
13  again -- but there were certainly some cases of not
14  being able to charge for consulting.  And I'm sure there
15  are a few cases of legal settlements, but not very many.
16      Q.  Okay.  I don't know if I asked you the file
17  question, but in case I didn't, this would have been in
18  your file in January, it wasn't produced from your file.
19  You don't know why?
20      A.  I do not know why.
21          MR. LINDSTROM:  Well, again, when you say
22  wouldn't it have been in his file January 2001, that
23  mischaracterizes his testimony, or would have been in
24  his file.  So I'll object to the question on that
25  ground.  The answer may stand.
```

```
 1            MR. SOLOMON:  I'm not sure I followed that,
 2   but that's fine.
 3            MR. LINDSTROM:  Well, he told you that prior
 4   to the institution of the litigation that he had a
 5   practice of periodically cleaning up his e-mails, and so
 6   when you preface your statement by saying, "This would
 7   have been in his files as of January 2001," we don't
 8   know that.  We don't know whether that might have been
 9   cleaned up as one of his periodic --
10            MR. SOLOMON:  It is dated January.  Do you
11   think he deleted it before he got it?
12            MR. LINDSTROM:  I'm missing the point.
13            MR. SOLOMON:  It is dated January.  I'm just
14   saying it was in his file at some stage.
15            MR. LINDSTROM:  No, no.  What you're saying is
16   it would have been in his file.
17            MR. SOLOMON:  Of course it would have been.
18            MR. LINDSTROM:  I see.  What you're saying it
19   was in his file initially.
20            MR. SOLOMON:  Yeah.
21            MR. LINDSTROM:  I was taking your question as
22   you stated it to mean that it was in his file when the
23   litigation commenced.  I apologize.
24            MR. SOLOMON:  That's not what I said.
25            So let's look at the next exhibit, which is
```

```
 1              CERTIFICATE OF DEPOSITION OFFICER
 2              I, DIANA NOBRIGA, hereby certify that the
 3   witness in the foregoing deposition was by me duly sworn
 4   to testify to the truth, the whole truth, and nothing
 5   but the truth in the within-entitled cause; that said
 6   deposition was taken at the time and place therein
 7   stated; that the testimony of said witness was reported
 8   by me, a Certified Shorthand Reporter and disinterested
 9   person, and was thereafter transcribed into typewriting,
10   and that the pertinent provisions of the applicable code
11   or rules of civil procedure relating to the notification
12   of the witness and counsel for the parties hereto of the
13   availability of the original transcript of the
14   deposition for reading, correcting and signing have been
15   met.
16              I further certify that I am not of counsel or
17   attorney for either or any of the parties to said
18   deposition, nor in any way interested in the outcome of
19   the cause named in said action.
20              In WITNESS WHEREOF, I have hereunto
21   subscribed by my hand this 19th day of July 2006.
22
23
24                           _____
25                           DIANA NOBRIGA, CSR NO. 7071
```