1  LATHAM & WATKINS LLP
      Peter A. Wald (SBN 85705)
2     Michele F. Kyrouz (SBN 168004)
   505 Montgomery Street, Suite 2000
3  San Francisco, CA 94111-2562
   Telephone: (415) 391-0600
4  Facsimile: (415) 395-8095
   E-mail: peter.wald@lw.com
5    michele.kyrouz@lw.com

6  LATHAM & WATKINS LLP
      Jamie L. Wine (SBN 181373)
7  633 West Fifth Street, Suite 4000
   Los Angeles, CA 90071-2007
8  Phone: (213) 485-1234
   Fax: (213) 891-8763
9  E-mail: jamie.wine@lw.com

   LATHAM & WATKINS LLP
      Patrick E. Gibbs (SBN 183174)
      Matthew Rawlinson (SBN 231890)
   140 Scott Drive
   Menlo Park, CA 94025
   Telephone: (650) 328-4600
   Facsimile: (650) 463-2600
   E-mail: patrick.gibbs@lw.com

10 Attorneys for Defendants ORACLE
   CORPORATION, LAWRENCE
11 J. ELLISON, JEFFREY O. HENLEY,
   and EDWARD J. SANDERSON
12
   ORACLE CORPORATION
13    Dorian Daley (SBN 129049)
      James C. Maroulis (SBN 208316)
14 500 Oracle Parkway
   Mailstop 5OP7
15 Redwood Shores, California 94065
   Telephone: (650) 506-5200
16 Facsimile: (650) 506-7114
   E-mail:
17 jim.maroulis@oracle.com

18 Attorneys for Defendant ORACLE
   CORPORATION

19                **UNITED STATES DISTRICT COURT**

20        **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| 21  In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS) (Consolidated) |
| 22 | |
| 23 | CLASS ACTION |
| 24  This Document Relates To: | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF BJORN I. STEINHOLT** |
| 25  ALL ACTIONS. | |
| 26 | Honorable Judge Martin J. Jenkins Hearing Date: September 24, 2007 |
| 27 | Time: 9:30 a.m. |
| 28 | |

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 2

    A. Mr. Steinholt's Loss Causation and Damages Opinions Are Unhelpful, Irrelevant, and Unreliable Because He Fails to Consider and Remove Market, Industry, and Oracle-Specific Information .......................... 2

    B. The Use of a Constant Percentage Inflation Ribbon as a Measure of Damages Is Not Supported by Academic Literature or Permissible Under *Dura*. ............................................................................................ 5

    C. Contrary to Plaintiffs' Argument, Mr. Steinholt's Estimate of Section 20A Damages Should be Stricken Because it Calculates Damages in a Manner Incompatible with *Dura*...................................................... 7

    D. Mr. Steinholt's Opinions Regarding Materiality Are Unhelpful, Irrelevant, and Unreliable. ....................................................................................... 8

III. CONCLUSION............................................................................................................... 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i   DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

# TABLE OF AUTHORITIES

## CASES

*Basic v. Levinson*,
   485 U.S. 224 (1988) ................................................................................................. 8, 9

*Brewer Quality Homes, Inc. v. Comm'r*,
   2003 WL 21545886 (U.S. Tax Ct. July 10, 2003) ......................................................... 6

*Daubert v. Merrell*,
   509 U.S. 579 (1993) ................................................................................................... 1, 4

*DSU Med. Corp. v. JMS Co., Ltd.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ........................................................................ 9

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) .......................................................................................... 1, 2, 4, 6

*Evans v. Gen. Motors Corp.*,
   459 F. Supp. 2d 407 (D.Md. 2006) ............................................................................ 8, 9

*In re AOL Time Warner, Inc. Sec. Litig.*,
   2007 WL 1789013 (S.D.N.Y. Jun. 20, 2007) ................................................................ 7

*In re Daou Sys., Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ....................................................................................... 6

*In re Gilead Sciences*,
   2006 WL 1320466 (N.D. Cal. May 12, 2006) ............................................................... 4

*In re Ikon Office Solutions, Inc. Sec. Litig.*
   131 F. Supp. 2d 680 (E.D. Pa. 2001) ............................................................................ 3

*In re SEC v. MacDonald*,
   699 F.2d 47 (1st Cir. 1983) ........................................................................................... 7

*In re Silicone Gel Breasts Implants Products Liability Litig.*,
   318 F. Supp. 2d 879 (C.D. Cal. 2004) ........................................................................... 4

*In re Williams Sec. Litig.*,
   2007 U.S. Dist. LEXIS 49123 (D. Okla. July 6, 2007) ......................................... passim

*KB Home v. Antares Homes, Ltd.*,
   2007 WL 1893370 (N.D. Tex. June 28, 2007) ............................................................ 10

*Kohler v. Comm'r*,
   2006 WL 2059210 (U.S. Tax. Ct. July 25, 2003) .......................................................... 6

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2nd Cir. 2007) ........................................................................................ 4

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*,
   2005 WL 1541062 (D.N.J. June 30, 2005) .................................................................... 3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

*Smith v. U.S.*,
   923 F. Supp. 896 (S.D. Miss. 1996)................................................................................6

*Tech. Licensing Corp. v. Gennum Corp.*,
   2004 WL 1274391 (N.D. Cal. Mar. 26, 2004).....................................................9

*TSC Industries v. Northway, Inc.*,
   426 U.S. 438 (1976)..........................................................................................8

*U.S. v. Bingham*,
   992 F.2d 975 (9th Cir. 1993) ............................................................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii    DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

## I.  INTRODUCTION

As explained in Defendants' moving papers, Plaintiffs' purported expert, Bjorn I. Steinholt, has not offered any opinion or conducted any analysis that will assist the trier of fact in determining whether and to what extent Oracle's stock drop was the result of allegation-related disclosures.  Mr. Steinholt neither analyzes nor opines on the central loss causation question presented:  whether the March 1, 2001 earnings announcement disclosed "the relevant truth" to the market (*i.e.*, disclosed material facts about Oracle previously concealed by Defendants), and if so, whether that announcement also disclosed *other* material facts about Oracle *not related* to Plaintiffs' allegations, which must be factored out before damages cognizable under the federal securities laws can be identified.

Plaintiffs do not contest this assertion.  Rather, Plaintiffs cite to Mr. Steinholt's regression analysis (a purported "event study"), and claim that this analysis had the effect of eliminating market and industry factors from the drop on March 2.  Mr. Steinholt's "event study," however, uses a market index, and thus fails to remove industry-specific influences on Oracle's stock price.  Moreover, it does not consider any Oracle-specific, non-allegation related influences on that stock price.  Mr. Steinholt just assumed that 100% of the March 2, 2001 residual stock drop was attributable to the disclosure of the alleged fraud – without considering whether Oracle's earnings miss caused the market to reevaluate Oracle's future prospects for reasons having nothing to do with "disclosure of the alleged fraud" – for example, due to changed investor expectations about the economy and its future impact on Oracle.  Thus, Mr. Steinholt's "event study" does not provide the necessary causal link between the alleged March 1, 2001 "corrective disclosure" (*i.e.*, the alleged revelation of the "relevant truth") and Oracle's stock drop, nor does it eliminate the possibility that the drop was caused by "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events" unrelated to the alleged fraud, as required by *Dura Pharmaceuticals., Inc. v. Broudo*, 544 U.S. 336, 343 (2005).  Consequently, Mr. Steinholt's "opinion" on loss causation is both unreliable and irrelevant, and should be excluded under *Daubert v. Merrell*, 509 U.S. 579, 591-92 (1993).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

Mr. Steinholt's use of a "constant percentage inflation ribbon" to measure alleged recoverable damages also cannot be reconciled with *Dura*. As Plaintiffs concede, this methodology permits investors to recover for stock price declines occurring *before* the alleged corrective disclosure, which, under *Dura*, cannot be causally related to the fraud. *Dura*, 544 U.S. at 343; *see also In re Williams Sec. Litig.*, 2007 U.S. Dist. LEXIS 49123 (D. Okla. July 6, 2007). As to Mr. Steinholt's 20A damages calculation, Plaintiffs make no attempt to reconcile with *Dura*'s teaching Mr. Steinholt's inclusion of losses that occurred well after the alleged corrective disclosure—*i.e.*, losses that had nothing to do with the alleged fraud. It is as if *Dura* never happened, and loss causation is not required.

Plaintiffs' arguments regarding Mr. Steinholt's materiality analysis are also inconsistent with well-established precedent, which makes clear that information is material only if there is a substantial likelihood that a reasonable shareholder would consider it important **and** that it would significantly alter the total mix of information. As Plaintiffs concede, Mr. Steinholt did not analyze the total mix of information, or how that total mix would have been altered had the alleged omitted facts been revealed. As a result, Mr. Steinholt cannot offer a reliable or relevant opinion as to whether the alleged false statements were material.

For these reasons, Mr. Steinholt's reports and testimony are unreliable, irrelevant, and unhelpful to the trier of fact, and should be excluded.

## II.   ARGUMENT

### A.   Mr. Steinholt's Loss Causation and Damages Opinions Are Unhelpful, Irrelevant, and Unreliable Because He Fails to Consider and Remove Market, Industry, and Oracle-Specific Information.

Mr. Steinholt agrees with defendant's expert, Professor Christopher James, that "Oracle's stock price fell in reaction to its earnings and revenue miss for the quarter which had current and future cash flow implications." Steinholt Rebuttal Report at ¶ 13.[1] This is uncontested, and the statement does not assist the trier of fact in determining the ultimate question of loss causation: whether, and to what extent, the stock drop on March 2 was caused

---

[1] The Steinholt Report and Rebuttal Report, and the James Report are all attached to the declaration of Holly J. Tate In Support of Defendants' Motion to Exclude Expert Reports and Testimony of Bjorn I. Steinholt (filed 7/26/2007) (Doc. # 856).

1  by allegation-related disclosures.  And as to this crucial question, Plaintiffs concede Mr.
2  Steinholt offers no opinion or analysis, but rather just assumes Plaintiffs will "prove their
3  allegations regarding Oracle's third quarter 2001 miss."  Pls. Opp. 9-10.  This is insufficient.  In
4  cases such as this one, where the alleged corrective disclosure does not directly expose the
5  alleged fraud, a loss causation expert cannot just speculate that the market recognized a
6  relationship between the announcement and the fraud, *In re Ikon Office Solutions, Inc. Sec.*
7  *Litig.*, 131 F. Supp. 2d 680, 690, (E.D. Pa. 2001), *aff'd*, 277 F.3d 658 (3d Cir. 2002), but rather
8  must "provide ***proof*** that the market recognized a relationship between the event disclosed and
9  the fraud." *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.,* 2005 WL 1541062, at *8 (D.N.J. June
10 30, 2005) (emphasis added); *In re Williams*, 2007 U.S. Dist. LEXIS 49123.
11         Plaintiffs nonetheless contend that Mr. Steinholt's opinion on loss causation is
12 relevant and reliable because of his purported event study.  Plaintiffs claim that this analysis had
13 the effect of eliminating market and industry factors from the drop on March 2, and therefore
14 Plaintiffs' losses were proximately caused by "*Company-specific factors*."  *See* Pls. Opp. at 9
15 (emphasis added).  Plaintiffs' argument is demonstrably false.
16         Mr. Steinholt's purported event study uses a market index, the NASDAQ-100,
17 which fails to remove industry-specific influences from the stock drop.  This is because the
18 regression on the market index does not consider the industry news being revealed on the day in
19 question that needs to be examined in order to factor out industry-specific information as
20 required by *Dura*.  For example, Mr. Steinholt's analysis does not take into account the fact that
21 all of Oracle's competitors' stock prices declined on March 2 and that their average stock price
22 response was statistically significant.  See James Report at ¶¶ 47-69.  The fact that Mr.
23 Steinholt's regression did not eliminate this type of industry-specific news from the loss can be
24 illustrated by comparing Mr. Steinholt's NASDAQ-100 market index to Professor James's
25 enterprise software index.  Mr. Steinholt's NASDAQ-100 index declined by 4.40 percent on
26 March 2, 2001.  Steinholt Report, Exhibit H.  Professor James' 9-firm enterprise software index
27 fell by 12.35 percent on that day.  James Report at ¶ 61.  The significant difference in the returns
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

shows that Mr. Steinholt's analysis failed to fully remove industry specific news, as required by *Dura*.

Because Mr. Steinholt failed to factor out this industry-specific news, he cannot determine whether the drop occurred as a result of "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events" unrelated to the alleged fraud. *Dura*, 544 U.S. at 343. *See also In re Gilead Sciences*, 2006 WL 1320466, at *21 (N.D. Cal. May 12, 2006). Rather than consider these alternatives, Mr. Steinholt assumed, without any basis, that 100% of Oracle residual stock price drop was related to the alleged fraud, and used the entire drop to calculate his 10b damages. This failure to address such obvious alternative explanations for the loss is grounds for exclusion. *See, e.g., In re Williams*, 2007 U.S. Dist. LEXIS 49123, at *202-03 ("In securities litigation, non-fraud causes of a loss in value are 'obvious alternative explanations.' Because Dr. Nye fails to address the alternative explanations as required by the law of loss causation, his [first damage scenario] will be excluded.") (*quoting* Rule 702, Fed. R. Evid., Advisory Committee notes to 2002 amendments); *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2nd Cir. 2007).[2]

Because Mr. Steinholt's analysis does not assist the trier of fact in determining whether the alleged misstatements *proximately caused* the stock drop on March 2, his opinion regarding loss causation should be excluded.[3] *See, e.g., Daubert*, 509 U.S. at 591-92 ("Rule

---

[2] Plaintiffs contend that it is up to Defendants to identify and quantify Company-specific factors unrelated to the alleged fraud. Pls. Opp. at 13. This inverts the burden. It is plaintiffs' responsibility to prove that that loss was not the result of "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events" unrelated to the alleged fraud. *Dura*, 544 U.S. at 343. In any event, Defendants have stated that Oracle's earnings miss was a result of the sudden and sharp impact of the economic slowdown on the enterprise software industry, and it was this miss that caused Oracle's stock price to decline. James Report at ¶ 3. Mr. Steinholt simply fails to consider this reality. *See In re Silicone Gel Breasts Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) (stating that in assessing an expert's reliability, a court should consider whether the expert considered alternative explanations).

[3] Plaintiffs also suggest that Mr. Steinholt's analysis shows that the March 1 disclosure "revealed the true economic facts about the Company's performance and prospects." Pls. Opp. at 9. Plaintiffs seem to suggest that the revelation of the true financial condition is enough to demonstrate loss causation. This position, however, is inconsistent with *Dura* and its progeny, which requires plaintiffs to prove a causal connection between the price drop and the "relevant truth." *Dura*, 544 U.S. at 343.

702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). Similarly, his damages analysis fails to distinguish between the non-fraud and the alleged-fraud-related portion of the stock drop, and, as a consequence, his damages calculation should be excluded. *See, e.g., In re Williams*, 2007 U.S. Dist. LEXIS 49123 (excluding expert's testimony on loss causation and damages despite the fact that he conducted an event study).

### B. The Use of a Constant Percentage Inflation Ribbon as a Measure of Damages Is Not Supported by Academic Literature or Permissible Under *Dura*.

Plaintiffs go to great lengths to suggest that Mr. Steinholt's use of a constant percentage inflation ribbon is supported by case law and academic literature. Plaintiffs' argument is false, and indeed, they cite no case law to support Mr. Steinholt's opinion that damages can exceed the residual stock drop that occurred on March 2, 2001. Nor do Plaintiffs attempt to square the use of per share damages based on a constant percentage inflation ribbon— where damages fluctuate day-to-day during the class period before the corrective disclosure— with the Supreme Court's holding in *Dura*. They cannot.

Plaintiffs first argue that *Dura* is irrelevant to the issue of calculating proper damages. Pls. Opp. at 14. Although *Dura* did not discuss specific methodologies of calculating damages, *Dura*'s opinions regarding loss causation are directly related to calculating damages. *See, e.g., In re Williams*, 2007 U.S. Dist. LEXIS 49123, at *228 (excluding expert's damages opinions as they "did not square with the law of loss causation applied through the prism of *Daubert* and *Rule 702*").

Plaintiffs also argue that even if *Dura* does apply, a constant percentage inflation ribbon and damages that exceed the residual drop are permissible because, according to a non-peer reviewed article co-written by plaintiffs attorneys and a plaintiffs expert whose analyses have frequently been questioned, "loss causation exists whenever fraud leads the stock price to be higher than it should be, the buyer pays 'too much' for the stock, and the buyer is unable to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

recover that overpayment in the market place." Pls. Opp. at 14.[4] Plaintiffs' definition of loss causation, however, was rejected by the Court in *Dura*, when it held that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Dura*, 544 U.S. at 342. Moreover, because it allows Plaintiffs to recover damages that had nothing to do with the alleged fraud (because the definition would allow Plaintiffs to recover losses for stock price declines occurring *before* the alleged corrective disclosure, and in excess of the residual price drop), a constant percentage inflation ribbon cannot be squared with *Dura*. 544 U.S. at 342. None of Plaintiffs' authorities—academic or legal—allow for recoverable damages greater than the residual dollar drop.[5]

Indeed, as discussed in Defendants' opening brief, a court recently rejected the use of a constant percentage inflation ribbon to measure damages. In rejecting this approach, the court in *Williams* noted that "a loss in value occurring before the first corrective disclosure 'cannot be considered causally related to [defendant's] fraudulent [conduct].'" *In re Williams*, 2007 U.S. Dist. LEXIS 49123, at *211 (*citing In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1027 (9th Cir. 2005)). Plaintiffs attempt to distinguish this case, arguing that the *Williams* decision involved leakage, as opposed to a single alleged corrective disclosure, and a stock that was trading in the penny range. Pls. Opp. at 15.[6] These distinctions are immaterial. In this case, just like in *Williams*, the use of a constant percentage inflation ribbon would allow for the recovery of losses that predate, and have nothing to do with, the loss that occurred after the

---

[4] *See* Madge S. Thorsen, Richard A. Kaplan, and Scott Hakala, *Rediscovering the Economics of Loss Causation*, 6 J. Bus. & Sec. L. 93, 95. Professor Hakala's testimony has been questioned in *Smith v. U.S.*, 923 F. Supp. 896, 903 (S.D. Miss. 1996), *Brewer Quality Homes, Inc. v. Comm'r*, 2003 WL 21545886, at *10 (U.S. Tax Ct. July 10, 2003), and *Kohler v. Comm'r*, 2006 WL 2059210, at *11-12 (U.S. Tax Ct. July 25, 2003).

[5] In support of Mr. Steinholt's use of a constant percentage inflation ribbon, Plaintiffs contend that such "inflation is a mathematical certainty when a stock, absent the alleged fraud, would have traded as it did, just at a lower level, and is a reality that is fully supported by the academic literature." Pls. Opp. at 13. Plaintiffs cite no academic literature in support of this statement, and in any event, *Dura* precludes recovery of damages greater than the residual dollar drop.

[6] Plaintiffs also cite to the *Williams* footnote in which the court, in *dicta*, found that it could conceive of a case in which the constant percentage inflation approach would at least clear the *Daubert* hurdle. The case the *Williams* court hypothesized, however, did not involve a situation like the one here, where Oracle's stock was extremely volatile. *See In re Williams*, 2007 U.S. Dist. LEXIS 49123, at *212 n.54.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

alleged corrective disclosure. *See* Mot. at 13. The court in *Williams* found that this would violate *Dura* and excluded the expert's damage analysis. This court should similarly so hold.

### C. Contrary to Plaintiffs' Argument, Mr. Steinholt's Estimate of Section 20A Damages Should be Stricken Because it Calculates Damages in a Manner Incompatible with *Dura*.

Plaintiffs' arguments that Mr. Steinholt's calculation of Section 20A damages is reliable and comports with applicable law are completely untenable.

Mr. Steinholt calculated 20A damages in two ways, the amount by which the Defendants benefited and the loss that they avoided. In neither case does Mr. Steinholt attempt to limit his damages to only those losses caused by the alleged fraud as required by *Dura*.[7] As to his first calculation, Mr. Steinholt assumes that 100% of the residual stock drop was fraud-related and thus uses inflation per share of 17.44% to determine the amounts by which Defendants benefited. As stated above, Mr. Steinholt's assumption that 100% of the residual stock drop was attributable to the alleged fraud is incorrect and not permissible under *Dura* because it fails to consider alternative factors and information. *See, e.g., In re Williams*, 2007 U.S. Dist. LEXIS 49123, at *203.

Mr. Steinholt's calculation of "losses avoided" damages also violates *Dura* because it is based on the average of Oracle's share price between March 16, 2001 and April 30, 2001. Plaintiffs defend Mr. Steinholt's use of this average because, according to Plaintiffs, that was when the Defendants would have been able to trade under Oracle's insider trading policy. This argument has no basis in law, and Plaintiffs do not cite any cases that suggest that the calculation of losses avoided is predicated on when Defendants could have sold under a company's insider trading policy. Rather, the cases make clear that 20A damages should be based upon the price of the stock a "reasonable time" after the inside information has been disseminated, *i.e.*, the period of time it would take for the market to "digest" the disseminated information. *In re SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983). Thus, Mr. Steinholt should have used the stock price on March 2, 2001 (the day after the disclosure) to determine the

---

[7] Plaintiffs do not dispute that *Dura* applies to 20A violations. *See, e.g., In re AOL Time Warner, Inc. Sec. Litig.*, 2007 WL 1789013, at *7-10 (S.D.N.Y. Jun. 20, 2007) (dismissing Section 14(a) claims for failure to adequately allege loss causation as required by *Dura*).

losses Defendants allegedly avoided by their alleged insider sales. Mr. Steinholt applied the wrong legal standard and his damages analysis under 20A should be excluded. *DSU Med. Corp.*, 296 F. Supp. 2d 1140, 1148; *Evans v. Gen. Motors Corp.*, 459 F. Supp. 2d 407, 411 (D.Md. 2006)

Mr. Steinholt's calculation of "losses avoided" damages also violates *Dura* because it includes losses that are unrelated to the alleged fraud. From March 16 to April 30, Oracle's share price dropped an additional $1.08. Because the only alleged corrective disclosure took place on March 2, this drop could have nothing to do with the alleged fraud. As such, Mr. Steinholt's use of the average closing price during the trading window would result in Messrs. Ellison and Henley paying damages that are not connected with the revelation of any alleged inside information. Such losses are not recoverable under *Dura*.

### D. Mr. Steinholt's Opinions Regarding Materiality Are Unhelpful, Irrelevant, and Unreliable.

Finally, Plaintiffs defend Mr. Steinholt's materiality analysis claiming that Mr. Steinholt used the materiality definition set forth in *TSC Industries v. Northway, Inc.*, 426 U.S. 438 (1976) and *Basic v. Levinson*, 485 U.S. 224 (1988). *See* Pls. Opp. at 6. Plaintiffs misread both cases.

In *Basic*, the Court makes clear that information is only material if there is a substantial likelihood that a reasonable investor would consider it important **and** the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the 'total mix' of information made available:

> [T]he [*TSC*] Court was careful not to set too low a standard of materiality; it was concerned that a minimal standard might bring an overabundance of information within its reach, and lead management "simply to bury the shareholders in an avalanche of trivial information -- a result that is hardly conducive to informed decisionmaking." **It further explained that to fulfill the materiality requirement "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."**

*Basic*, 485 U.S. at 231 (emphasis added) (citations omitted).

1   Nonetheless, Mr. Steinholt made no effort to determine whether the alleged
2   omitted facts would have substantially altered the total mix of information; indeed he did not
3   even analyze what was in the total mix of information in the first instance.  Plaintiffs concede
4   both of these points and instead, cite to Mr. Steinholt's "event study" to suggest that Mr.
5   Steinholt used a reliable and relevant methodology to determine materiality.  However, Mr.
6   Steinholt's "event study" is simply his regression analysis, which fails to consider the actual
7   events—*i.e.*, what **new** information was disclosed to the market that could have caused the stock
8   price's reaction.  This is a critical and necessary step in assessing materiality.[8]  *See* Declaration
9   of David M. Friedman, Exh. 1 (Cornell, Bradford and R. Gregory Morgan, "Using Finance
10  Theory to Measure Damages in Fraud on the Market Cases," 37 UCLA L. Rev. 883, 895 and 992
11  (June 1990) ("Estimating investor assessments requires a detailed investigation of the facts as
12  they existed at the time of the misrepresentation or omission and at the time of disclosure.")).

13   By failing to perform an analysis of the total mix of information, Mr. Steinholt
14  cannot determine from his "event study" that it was the alleged false information that actually
15  *caused* the price movement.  His analysis does not assist the trier of fact in determining whether
16  the alleged false statements were material—whether the omitted fact "would have been viewed
17  by the reasonable investor as having altered the 'total mix' of information made available."
18  *Basic*, 485 U.S. at 231.  Consequently, his opinion should be excluded.  *See, e.g., DSU Med.*
19  *Corp.*, 296 F. Supp. 2d at 1148; *Tech. Licensing Corp. v. Gennum Corp.*, 2004 WL 1274391
20  (N.D. Cal. Mar. 26, 2004).[9]

---

[8] Plaintiffs contend that Mr. Steinholt used the same method of assessing materiality as Defendants' expert, Professor James.  Professor James, however, does not just use a regression to determine materiality.  Rather, as part of his event study, Professor James did a thorough analysis of the total mix of information before and during the class period. *See* James Report ¶¶ 21-42.  Professor James also analyzed the stock price reaction after each alleged false statement made during the Class Period, whereas Mr. Steinholt only used his "event study" to assess the materiality of statements made on December 14 and March 1.

[9] Plaintiffs argue that *DSU* and *Tech Licensing* do not stand for the proposition that opinions should be excluded if an expert applies an incorrect legal standard.  In those cases, plaintiffs contend the experts' analysis was excluded because they did not apply "specific court-approved methodologies in determining damages in patent cases." *See* Pls. Opp. at n.2.  In other words, they applied the wrong legal standard.  In any event, numerous other cases stand for the same proposition—where experts apply incorrect legal standards, their opinions should be excluded. *See, e.g,. Evans*, 459 F. Supp. 2d at 411 (D. Md. 2006) ("Since the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF's REPLY ISO MOTION TO EXCLUDE STEINHOLT
REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

### III. CONCLUSION

For all the foregoing reasons, Mr. Steinholt's Report, Rebuttal Report, and his testimony should be excluded.

Dated: September 10, 2007

Respectfully submitted,

LATHAM & WATKINS LLP
Peter A. Wald
Patrick E. Gibbs
Michele F. Kyrouz
Jamie L. Wine
Matthew Rawlinson

By:_____/s/_____
Patrick E. Gibbs
Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

---

opinion of the [] expert fails to apply the proper legal standard, it must, and will, be disregarded."); *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, *9 -10 (N.D. Tex. June 28, 2007) (same).

SF\624645.6