LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
  Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
          michele.kyrouz@lw.com

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
  Matthew Rawlinson (SBN 231890)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com
          matt.rawlinson@lw.com

LATHAM & WATKINS LLP
  Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Phone: (213) 485-1234
Fax: (213) 891-8763
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS) (Consolidated) |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANTS' [CORRECTED] REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ALAN G. GOEDDE** |
| ALL ACTIONS. | |
| | **Honorable Judge Martin J. Jenkins** |

## FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 2

    A.    Dr. Goedde Is Not Qualified To Render An Opinion Regarding A "Major Macroeconomic Change" ....................................................................... 2

    B.    Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is Unreliable ............................................................................... 3

        1.    Dr. Goedde's Definition Of A "Major Macroeconomic Change" Is Unreliable .................................................................... 3

        2.    Dr. Goedde's Methodology For Determining That A "Major Macroeconomic Change" Occurred Is Unreliable ...................... 5

        3.    Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is Irrelevant Because He Fails To Connect It To Oracle's Business .......................................................... 7

    C.    Dr. Goedde's Opinions Relating to Oracle's Forecasting Process Are Unreliable ....................................................................................... 9

        1.    Dr. Goedde's Opinion That Minton Calculated Her Upside Adjustments Based On Application Of The Prior Year's Conversion Ratio Is Unreliable ................................................. 9

        2.    Dr. Goedde's Opinion That Ellison Issued A Directive Causing More Risk To Enter Oracle's Forecasts In 2Q01 Is Unreliable ............................................................................ 13

    D.    The New Goedde Declaration Is Untimely And Concedes that Dr. Goedde's Prior Work Is Unreliable And Inaccurate ............................................ 14

III.    CONCLUSION ................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

5
*Alexander v. Smith & Nephew, P.L.C.,*
   98 F. Supp. 2d 1310 (N.D. Okla. 2000) ............................................................... 3

6
*Amorgianos v. Nat'l R.R. Passenger Corp.,*
   303 F.3d 256 (2d Cir. 2002)................................................................... 9, 10, 14

7

8
*Cavallo v. Star Enter.,*
   892 F. Supp. 756 (E.D. Va. 1995), *aff'd in part, rev'd in part,* 100 F.3d 1150
   (4th Cir. 1996), *cert. denied,* 522 U.S. 1044 (1998) ............................................ 11

9

10
*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993)............................................................... 1, 2, 4, 5, 9, 13

11
*Daubert v. Merrell Dow Pharms., Inc.,*
   43 F.3d 1311 (9th Cir. 1995) .............................................................................. 5

12

13
*Hoffman v. Caterpillar, Inc.,*
   368 F.3d 709 (7th Cir. 2004) ............................................................................ 15

14
*In re Williams Sec. Litig.,*
   No. 4:02-cv-00072 SPF-FHM, 2007 WL 2007987, (N.D. Okla. July 6, 2007) .................. 15

15

16
*Maiz v. Virani,*
   253 F.3d 641 (11th Cir. 2001) ............................................................................ 3

17
*Miller v. Pfizer, Inc.,*
   356 F.3d 1326 (10th Cir. 2004) ......................................................................... 15

18

19
*Muhktar v. Cal. State Univ.,*
   299 F.3d 1053 (9th Cir. 2002) ............................................................................ 4

20
*Whiting v. Boston Edison Co.,*
   891 F. Supp. 12 (D. Mass. 1995) ........................................................................ 3

21

22

### RULES

23
Fed. R. Civ. Proc. 26.................................................................................. 2, 14, 15

24
Fed. R. Civ. Proc. 26(a)(2)(B) ........................................................................ 7, 15

25
Fed. R. Civ. Proc. 26(a)(2)(C) ............................................................................ 14

26
Fed. R. Evid. 702 ............................................................................................... 1

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

# I.      INTRODUCTION

Dr. Goedde's testimony and reports – including his new Declaration in Opposition to Summary Judgment – should be excluded because Dr. Goedde lacks the appropriate training, experience or education to offer these opinions and because his opinions fail to meet the exacting standards of reliability and relevance under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Dr. Goedde purports to offer an opinion that Oracle faced a "major macroeconomic change" heading into 3Q01, but Dr. Goedde is not a macroeconomist and does not have the expertise necessary to offer that opinion.  That lack of expertise is evident in Dr. Goedde's inability to define "major macroeconomic change" and the indicators he relied on in reaching his opinion, which bear no relation to the factors actually considered by macroeconomists. Moreover, Dr. Goedde fails to offer a reliable, scientific basis for connecting his "major macroeconomic change" to some impact on Oracle's business and its ability to forecast quarterly results, rendering his opinion irrelevant as well as unreliable.

Dr. Goedde's opinions relating to Oracle's forecasting process must also be excluded because they rely on his "major macroeconomic change" opinion, which is flawed, and also because they suffer from independent methodological flaws.  First, despite undisputed testimony to the contrary, Dr. Goedde opines that Minton derived her Potential forecast by simply multiplying the prior year's conversion ratio by the current pipeline.  If this were true, Dr. Goedde could show it with simple math – since it is not, he has constructed a new regression analysis purporting to show a connection that simply does not exist.  Dr. Goedde's analysis is hopelessly flawed and misleading; if done correctly, the regression Dr. Goedde purports to do affirmatively proves just the opposite – that Minton used judgment, not a mathematical equation, to determine the Potential forecast.  *See* Farthing Reply Decl. Ex. 5 ("Foster Rebuttal Decl.") ¶¶ 10-51.  Second, Dr. Goedde opines that more risk was introduced into Oracle's field forecasts beginning in 2Q01. Even if Dr. Goedde were correct about the field forecast (which he is not), he does not even attempt to show that this purported change rendered Minton's Upside adjustments superfluous.  Failure to complete this indispensable logical step renders Dr. Goedde's opinion

1   unreliable and inadmissible.

2       In response to Defendants' motion, Plaintiffs have submitted another report by Goedde in

3   the form of a new declaration in support of Plaintiffs' Opposition to Defendants' Motion for

4   Summary Judgment ("Goedde Declaration").  In so doing, Plaintiffs concede that Dr. Goedde's

5   prior analyses were insufficient, and in several instances simply wrong.  However, the Goedde

6   Declaration should be excluded because it is untimely under the Court's expert discovery

7   schedule and Rule 26, and it suffers from the same, or even greater, methodological flaws

8   inherent in Dr. Goedde's other, previously disclosed work.  Defendants' motion to exclude Dr.

9   Goedde's testimony and reports, including the Declaration, should be granted.

10  **II.    ARGUMENT**

11      A.      **Dr. Goedde Is Not Qualified To Render An Opinion Regarding A "Major
                Macroeconomic Change"**

12      Plaintiffs contend that Dr. Goedde is qualified to render his opinion regarding a "major

13  macroeconomic change" because of his education and work experience.  Opp. at 4-7.  However,

14  Plaintiffs overstate his qualifications by presenting a misleading exposition of Dr. Goedde's

15  supposed expertise.  Plaintiffs contend that Dr. Goedde's dissertation provides support for his

16  opinion that Oracle was facing a "major macroeconomic change" heading into 3Q01, but Dr.

17  Goedde himself testified that his dissertation was focused on "factors that contributed to growth

18  of companies, whether companies grew by extending the breadth of their products or developing

19  new products," a very different topic from his opinion in this case of how macroeconomic factors

20  affect Oracle's quarterly earnings.  Declaration of Andrew M. Farthing in Support of

21  Defendants' Reply in Support of *Daubert* Motion to Exclude Expert Reports and Testimony of

22  Alan G. Goedde ("Farthing Reply Decl.") Ex. 1 at 47:17-23.  Plaintiffs also tout Dr. Goedde's

23  work experience as a "financial economist at the U.S. Export-Import Bank," but Dr. Goedde's

24  deposition testimony makes clear that his job consisted primarily of underwriting loans, which

25  says nothing of his qualifications to render the opinions he has offered in this case.  *Id.* at 49:4-

26  51:2.[1]

27  ───────────────

28  [1]    In their opposition, Plaintiffs quote Dr. Goedde's deposition testimony that he "did a forecast
        for the Export-Import Bank," Opp. at 6 (citing Farthing Reply Decl. Ex. 1 at 77:5-12) for the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Plaintiffs also fail to meaningfully distinguish *Whiting v. Boston Edison Co.* and

2  *Alexander v. Smith & Nephew, P.L.C.*, Opp. at 5 n.2, both of which held that general

3  qualifications in a field, like Dr. Goedde's "extensive economic education that graduate

4  programs provide," *id.*, are insufficient to establish admissibility of the purported expert's

5  testimony.  *Whiting*, 891 F. Supp. 12, 24 (D. Mass. 1995); *Alexander*, 98 F. Supp. 2d 1310, 1315

6  (N.D. Okla. 2000).[2]   Plaintiffs argue that the experts in these cases were "excluded because they

7  were being offered for specialized opinions on causation outside their field of specialty," Opp. at

8  5 n.2, as medical doctors (each of whom received extensive medical education in a graduate

9  program).  This is precisely the problem here—while Dr. Goedde may have a graduate degree in

10  economics generally, he is not a specialist and lacks training in macroeconomics and cannot

11  opine about a purported "major macroeconomic change."  *See* Farthing Decl. Ex. 1 at pp. 4-8.

12  Plaintiffs bear the burden of demonstrating the qualifications of their purported expert, not

13  generally in a broad field, but as to the "specific subject for which his testimony is offered," and

14  they have failed to meet that burden.  *Whiting*, 891 F. Supp. at 24.[3]

15    B.    **Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is**
         **Unreliable**

16

17        1.    **Dr. Goedde's Definition Of A "Major Macroeconomic Change" Is**
              **Unreliable**

18

---

19  proposition that Dr. Goedde has macroeconomic experience, but Plaintiffs neglect to mention
    that Dr. Goedde retracted that statement moments later, and that he instead only relied on the

20  forecasts of others.  Farthing Reply Decl. Ex. 1 at 77:23-78:1 ("Q.  But you weren't asked to
    do a macroeconomic forecast, to actually prepare one, in terms of what the future was going

21  to be of the economy?  A.  No.").  *Cf. Maiz v. Virani*, 253 F.3d 641, 655 (11th Cir. 2001)
    (permitting expert with "Ph.D. in economic from Yale [and] extensive experience as a

22  professional economist, and a substantial background in estimating damages" to opine on
    plaintiffs' damages).  Dr. Goedde's experience selecting investments for a charitable

23  foundation, Opp. at 6, is similarly far afield from his opinion here that a "major
    macroeconomic change" had occurred.

24  [2]  Unless otherwise noted, all emphasis is added and citations are omitted.

25  [3]  Plaintiffs attempt to sidestep Dr. Goedde's lack of qualifications to determine whether a
    "major macroeconomic change" occurred by referring to Dr. Goedde's purported

26  "forecasting experience [that] necessarily encompassed macroeconomic data analysis."  Opp
    at 6; *see also id.* at 11 (arguing that "the very point of Dr. Goedde's opinion [regarding a

27  'major macroeconomic change'] is based on his extensive forecasting experience").  This
    puts the cart before the horse.  Dr. Goedde has opined, independent of Oracle's forecasts, that

28  "Oracle was facing a major macroeconomic change heading into 3Q FY01, resulting in a
    decline in the market for its products."  Farthing Decl. Ex. 1 at 4.  Dr. Goedde's supposed
    forecasting experience does not qualify him to render that opinion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Plaintiffs contend that Dr. Goedde "uniformly defined" the phrase "major

2    macroeconomic change" at his deposition.  Opp. at 8.  Nothing could be further from the truth.

3    As shown in Defendants' opening brief (Mot. at 3-5, 10-11), Dr. Goedde's "definition" for that

4    term continuously morphed under the questioning of counsel.[4]  Dr. Goedde first defined "major

5    macroeconomic change" as "[a] change that affects [Oracle's] business."  Farthing Reply Decl.

6    Ex. 1 at 79:6-8.  Then Dr. Goedde defined major macroeconomic change as one that affected

7    Oracle's customers, not Oracle's business, but again this definition was circular.  *Id.* at 80:12-20.

8    In an attempt to quantify a "major macroeconomic change," as opposed to a macroeconomic

9    change, Dr. Goedde's testimony became even more convoluted:  "Q.  Is there—over what

10   particular time period would there have to be a lower growth rate for there to be a major

11   macroeconomic change, according to your definition?  A.  It would affect—it's not so much the

12   time period.  It's what the extent of the change was."  *Id.* at 81:18-23.  Yet, when asked to define

13   the extent of that change, Dr. Goedde responded that "I would look to see what the conditions

14   are of the change, what—I'd have to look in more detail of the different changes."  *Id.* at 83:1-

15   20.  In other words, Dr. Goedde "knows it when he sees it."

16   The entirely subjective nature of Dr. Goedde's "definition" of a "major macroeconomic

17   change" is unreliable under *Daubert*.  509 U.S. at 593.  For example, Plaintiffs contend in their

18   opposition that "the FOMC's Federal Funds rate reduction twice in one month—which it had not

19   done for ten years—was a major change under any definition," Opp. at 9, but Dr. Goedde fails to

20   explain how those actions by the Federal Reserve in January 2001 should have informed Oracle

21   executives in December 2000 that they were facing a "major macroeconomic change *heading*

22   *into 3Q FY01*," Farthing Decl. Ex. 1 at 4, and Dr. Goedde also fails to explain how the Federal

---

4    Given that Plaintiffs concede that "major macroeconomic change" is not a term of art or
     otherwise defined in the macroeconomic literature, Opp. at 10, it is especially incumbent
     upon Dr. Goedde to provide a functional definition of that term so that his opinion that such a
     change occurred can be evaluated and tested.  *Daubert*, 509 U.S. at 593.  In addition, this
     "descriptive phrase," as Plaintiffs call it, Opp. at 10, in the guise of expert testimony has
     great potential to mislead and prejudice the jury, especially in light of Mr. Ellison's lay
     testimony, which uses "major macroeconomic change" quite differently than does Dr.
     Goedde.  *See* Farthing Reply Decl. Ex. 3 at 384:6-385:7; *Muhktar v. Cal. State Univ.*, 299
     F.3d 1053, 1063-64 (9th Cir. 2002) ("Maintaining *Daubert's* standards is particularly
     important considering the aura of authority experts often exude, which can lead juries to give
     more weight to their testimony.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Reserve's actions "affected the purchasers of Oracle's products," Farthing Reply Decl. Ex. 1 at

2    80:19-20.

3          Plaintiffs also contend that Dr. Goedde's use of the phrase "major macroeconomic

4    change" is reliable because it "grow[s] naturally out of his education and professional

5    experience," Opp. at 10, though as shown above, Dr. Goedde's credentials on macroeconomics

6    (as opposed to economics generally) are lacking.  Plaintiffs' argument also fails because they

7    distort the very quote from the Ninth Circuit's opinion in *Daubert* on which they purportedly

8    rely, which states that the relevant inquiry is whether the expert "propos[es] to testify about

9    matters growing naturally and directly out of research they have conducted independent of the

10   litigation."  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).  Dr.

11   Goedde's opinions do not grow naturally and directly out of research he has conducted

12   independent of this litigation; he is a professional expert and litigation consultant, unlike

13   Professor Hubbard, who has a substantial body of research and peer-reviewed publications on

14   macroeconomics independent of this litigation.  *Compare* Farthing Reply Decl. Ex. 1 at 39:19-

15   40:9 *with* Farthing Decl. Ex. 10 at Appendix A.

16         In sum, Dr. Goedde's "major macroeconomic change" is one that he created solely for

17   use in this litigation, it cannot be defined even by Dr. Goedde, and his conclusions and opinions

18   stemming from it must be excluded as unreliable.

19              **2.    Dr. Goedde's Methodology For Determining That A "Major**
20                    **Macroeconomic Change" Occurred Is Unreliable**

21         Plaintiffs contend that "[d]efendants cite no authority for the proposition that [the five]

22   factors [relied upon by Dr. Goedde] unreliably measured the macroeconomic environment facing

23   Oracle in 3QFY01."  Opp. at 12.  However, it is clearly *Plaintiffs'* burden to demonstrate that

24   Dr. Goedde's analysis is reliable.  *Daubert*, 509 U.S. at 592 n.10; Mot. at 11-12.  Plaintiffs fail to

25   cite any authority for Dr. Goedde's factors; indeed, as Defendants clearly demonstrated in their

26   opening brief, the National Bureau of Economic Research's Business Cycle Dating Committee

27   used *none* of Dr. Goedde's factors in reaching its determinations about the state of the United

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    States economy.  Mot. at 11-12 (citing Farthing Decl. Ex. 11 at 6).[5]

2          The unreliability of these five factors is underscored by Dr. Goedde's failure to

3    meaningfully and empirically connect them to Oracle's sales.  For example, Dr. Goedde opines

4    that the NASDAQ is an appropriate input for determining that a "major macroeconomic change"

5    had occurred, but he fails to analyze such basic measures as the percentage of Oracle's sales that

6    are made to NASDAQ companies (instead noting only that some of Oracle's competitors also

7    trade on NASDAQ), and ignores the fact that the performance of the NASDAQ has no

8    relationship to Oracle's sales.  Farthing Decl. Ex. 12 at ¶¶ 62-65.[6]  Plaintiffs attempt to excuse

9    Dr. Goedde's myopic emphasis on the NASDAQ by stating that "[t]he focus of Dr. Goedde's

10   opinions was on the technology sector of the economy that directly affected Oracle's operations,

11   not on broad-based indicators of the general economy."  Opp. at 12-13.  Yet Plaintiffs ignore the

12   undisputed fact that Oracle's customers came from all sectors of the general economy—not just

13   high technology—a fact that undercuts Dr. Goedde's focus on the technology sector and renders

14   his methodology unreliable.  Farthing Decl. Ex. 10 at ¶¶ 86-93 and Figure 14 (demonstrating that

15   Oracle's top customers included government, industrial and commercial machinery,

16

17   _____

18   [5]  Plaintiffs argue that Professor Hubbard's consideration of software sector indices operates as
     a concession that equity indices are appropriate macroeconomic indicators.  Opp. at 13 n.10.

19   Plaintiffs misconstrue Professor Hubbard's analysis, which used software sector indices for
     analyzing in more detail the state of the software sector, Farthing Decl. Ex. 10 at ¶¶ 53-93,

20   but instead relied on macroeconomic information such as industrial production, employment,
     and an array of composite indicators for determining the overall macroeconomic outlook.

21   *See* Farthing Decl. Ex. 10 at ¶¶ 53-93 (sector-specific analysis), ¶¶ 94-156 (macroeconomic
     analysis).

22   [6]  In their opposition, Plaintiffs go so far as to argue that "the NASDAQ, which had fueled
     Oracle's extraordinary results in 3QFY00, had collapsed."  Opp. at 9.  This is a complete

23   fabrication.  NASDAQ is simply an index—"NASDAQ" did not fuel Oracle's results
     because "NASDAQ" does not buy Oracle software—instead, numerous customers across a

24   variety of industries and geographies drove Oracle's sales in 3Q00, and in 3Q01.  *See*
     Farthing Decl. Ex. 10 at ¶¶ 86-93.  Plaintiffs also contend that "[w]hen the NASDAQ was

25   rising in significant part because of venture capital funding and dot.com growth, Oracle's
     revenues from the dot.com sector alone skyrocketed from $4 million in 1Q99 to $172 million

26   in 4Q00.  When it collapsed, Oracle's dot.com revenues collapsed with it."  Opp. at 13 n.10.
     Defendants do not dispute that Oracle's dot-com revenues were less favorable in 1Q01 and

27   2Q01 than they had been in FY 2000, but Oracle sells its products many more sectors than
     just dot-coms, and Oracle's record-breaking company-wide results in 1Q01 and 2Q01

28   conclusively rebut the baseless assertion that "the NASDAQ was a reliable gauge of the
     health of a *significant part* of Oracle's business."  *Id.*; Farthing Decl. Ex. 12 at ¶¶ 75-84.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

communications, financial institutions, utilities and many more).[7]

3. **Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is Irrelevant Because He Fails To Connect It To Oracle's Business**

Dr. Goedde's opinion regarding a "major macroeconomic change" should also be excluded because he fails to show it had a meaningful impact on Oracle's business or ability to forecast during Oracle's 3Q01, rendering the opinion irrelevant to the issues in this case. Plaintiffs' response to this argument misses the point. Plaintiffs merely note that, in hindsight, it turned out that the economy was responsible for Oracle's miss – relying on statements made by Defendants on March 1 and 15, 2001—*after* the 3Q01 results were in and *after* Oracle started to understand why its guidance had not been achieved. Opp. at 14-16. Nothing in Defendants' statements, and nothing in Dr. Goedde's analysis, reliably demonstrates how Oracle executives could have known *prior* to the end of the quarter that the economy would adversely affect Oracle's ability to make its forecast.

Plaintiffs rely on the proposition that Oracle's "forecast process … was based on a year-over-year extrapolation," and that by purportedly demonstrating this, Dr. Goedde "established a meaningful link" between his opinions and Oracle's forecasts. Opp. at 15 (citing Farthing Decl. Ex. 1 at 4-8, 10-21; Farthing Decl. Ex. 2 at 74-81). As set forth in detail below, the undisputed facts – as well as the plain math – show that Minton did not generate the Potential forecast by a mechanical year over year extrapolation—it was based on judgment not on formulaic

---

[7] Plaintiffs also contend that Dr. Goedde's interpretation of the macroeconomic factors considered by Professor Hubbard support his opinion that a "major macroeconomic change" occurred. Opp. at 13 & n.9. This argument fails for two reasons. First, it violates Federal Rule of Civil Procedure 26(a)(2)(B), which requires that an expert report contain "a *complete* statement of *all* opinions to be expressed *and the basis and reasons therefor*," as Dr. Goedde did not include this analysis in his opening report. Fed. R. Civ. Proc. 26(a)(2)(B). As a result, Defendants' experts could not address Dr. Goedde's analysis in their rebuttal reports. Second, Defendants dispute Dr. Goedde's interpretation of the macroeconomic indicators considered by Professor Hubbard, and reserve their right to demonstrate the fallacies in Dr. Goedde's interpretation should his testimony be admitted. As just one example, Dr. Goedde's interpretation of the Bureau of Economic Analysis data relating to investment in software (apparently Dr. Goedde's other five indicators were more useful than this data) is improper because it measures growth rates period-over-period, whereas Oracle measured growth (and provided the allegedly false guidance to the market) year-over-year. *See* Opp. at 13 n.9 and Goedde Decl. ¶¶ 11-12. Had Dr. Goedde calculated the year-over-year rates, he would have found that the data released on January 31, 2001 showed that investment in software increased 24.6% in 4Q CY00 over 4Q CY99—nearly exactly the 25% license growth guidance provided by Oracle for its 3Q FY01. *See* Goedde Decl. Ex. 7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

calculation.  Thus, this issue cannot create a "link" between Dr. Goedde's opinions and Oracle's forecasts. Mot. at 15-16; 20A Opp. at 9-10; MSJ Reply at 5-6; *infra* at II.C.1.

Plaintiffs again point to the NASDAQ and Oracle's dot-com revenues as a "prime example and an objective measure establishing that Dr. Goedde's methodologies are reliable." Opp. at 15.  Not so.  The data contained in the table below are all drawn from Dr. Goedde's initial report, and they clearly indicate that heading into 3Q01, Oracle's total license revenues were growing rapidly and Oracle executives had no reason to believe that Oracle's 3Q01 guidance of 25% license growth would not be achieved:

| Quarter | NASDAQ Close at End of Quarter[8] | Percentage Change in NASDAQ Since March 1, 2000 | Percentage of Oracle Revenues from Dot.coms[9] | Year-Over-Year Growth in Total License Revenues[10] |
|---------|-----------|-----------|-----------|-----------|
| 3Q00 | 4784.08 | -- | 10.63% | 29.38% |
| 4Q00 | 3400.91 | -28.91% | 9.56% | 21.07% |
| 1Q01 | 4206.35 | -12.08% | 6.61% | 33.71% |
| 2Q01 | 2597.93 | -45.70% | 6.01% | 30.08% |

These data show that despite the fact that the NASDAQ had lost nearly half its value between the end of 3Q00 and the end of 2Q01, and despite the fact that the percentage of Oracle's revenues attributable to dot-coms had also dropped by almost half, Oracle achieved stronger year-over-year growth in total license revenues in 2Q01 as compared to 3Q00 (and in excess of the growth guidance given to the market for 3Q01), debunking any potential causal link between the level of the NASDAQ or Oracle's dot-com sales and Oracle's license revenues generally.  By no means is the purported "dot.com collapse … an objective measure establishing that Dr. Goedde's methodologies are reliable"—to the contrary, the data clearly indicate that Dr.

---

[8]   Farthing Decl. Ex. 1 at Ex. 4.  Figure for 3Q00 reported as of the close on March 1, 2000, which is the first day of 4Q00.

[9]   Farthing Decl. Ex. 1 at p. 13.  Defendants characterize these figures as presented above because they were used in this way by Dr. Goedde in his report.  The source document on which Dr. Goedde purportedly relies, however, indicates that Dr. Goedde's labeling of the figures in his report is incorrect for two reasons:  1) the revenues attributed to dot.coms are only from the General Business division, and not NAS or even Oracle as a whole; and 2) these revenues only include field sales, and do not include sales by the iSD division, which was responsible for larger volumes of smaller sales.  *See* Farthing Reply Decl. Ex. 4.

[10]   Farthing Decl. Ex. 1 at Ex. 24.  At budget rates.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Goedde's conclusions regarding the purported "major macroeconomic change" are unreliable

2    and will not assist the finder of fact.[11]  *Daubert*, 509 U.S. at 592-93.

3        C.    **Dr. Goedde's Opinions Relating to Oracle's Forecasting Process Are
             Unreliable**

4

5        Dr. Goedde's opinions regarding Oracle's forecasting process are unreliable and should

6    be excluded for two reasons.  First, Dr. Goedde's opinions regarding Oracle's forecasting

7    process unquestionably rely on his opinion that a "major macroeconomic change" occurred, and

8    because "it is critical that an expert's analysis be reliable at every step," these forecasting

     opinions should be excluded as well.  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256,

9    267 (2d Cir. 2002); Farthing Decl. Ex. 2 at 76.[12]  Second, Dr. Goedde's opinions suffer from

10   serious methodological flaws rendering them unreliable, as set forth below.

11

12       1.    **Dr. Goedde's Opinion That  Minton Calculated Her Upside
             Adjustments Based On Application Of The Prior Year's Conversion
             Ratio Is Unreliable**

13

14       Dr. Goedde's opinion that Minton derived her Upside adjustment by multiplying the prior

15   year's conversion ratio by the current pipeline is contrary to the undisputed evidence in this case

16   – including Minton's own testimony and the mathematical calculations showing at what she

17   actually did in 3Q01 simply does not equal the product of the prior year's conversion ratio times

     the current pipeline.  Nonetheless, Dr. Goedde has performed a new regression analysis with

18   which he purports to demonstrate that Minton's Potential Forecast is "an extrapolation" based on

19   the application of the prior year's conversion rate.  Goedde Decl. ¶¶ 4-5 & Exs. 1-3.  Based on

20   that analysis, Dr. Goedde claims that the mechanical application of the conversion rate explains

21   94% of the "variations" over time in Minton's Potential Forecast.  *Id.* ¶ 5.  Dr. Goedde's

22   conclusion, and the new regression analysis on which it is based, must be excluded under

23

24   _____

25   [11]  Dr. Goedde's opinion is also irrelevant because in order for Plaintiffs to prevail on their
         claims that Oracle intentionally or recklessly disregarded the economy when providing its
26       3Q01 guidance, Plaintiffs must demonstrate that the purported "major macroeconomic
         change" was known to Oracle, *but not to the market*, a proposition that defies logic.

27   [12]  Plaintiffs argue that Dr. Goedde has "good grounds" for his opinions, Opp. at 17 n.13, but
         these are not *independent* of the purported "major macroeconomic change."  *See*
28       *Amorgianos*, 303 F.3d at 267; Farthing Reply Decl. Ex. 1 at 101:13-20 ("I didn't segment
         [my opinion] to determine what the weight was for each of these factors").

1  *Daubert* as unreliable and irrelevant.[13]

2      First, any alleged statistical "correlation" between the Potential Forecast and the amount

3  that Dr. Goedde derived by mechanically applying the prior year's conversion rate (the "Goedde

4  Forecast") is fundamentally irrelevant.  At best, Dr. Goedde's regression shows that from week

5  to week, Minton's Potential Forecast fell within some range of the number she would have

6  yielded if she had mechanically applied the prior year's conversion rate to the current pipeline

7  (*i.e.*, the Goedde Forecast).  Foster Rebuttal Decl. ¶ 36.  But if Minton had, in fact, mechanically

8  applied the prior year's conversion rate, her Potential Forecast would be ***exactly the same*** as the

9  Goedde Forecast each week.  *See* Goedde Decl. Exs. 1, 2.  Indeed, Dr. Goedde does not cite a

10  single instance in which Minton's Potential Forecast was exactly the same as the Goedde

11  Forecast.  The closest these two numbers come is over $5 million, and the difference between the

12  two is as high as $278 million, averages over $100 million each week, and is nearly $145 million

13  on December 11, 2000 (the forecast on which Oracle's based its guidance).  *Id.*

14      Even if the relationship between the two were "statistically significant" (as Dr. Goedde

15  claims), that statistical relationship would not prove that Minton actually derived the Potential

16  Forecast by applying the prior year's conversion rate to the current quarter's pipeline.  Quite the

17  contrary, Dr. Goedde's own data show that Minton applied considerable judgment in deriving

18  the Potential Forecast.[14]  Sometimes her judgment led her to forecast results in excess of what

19  the prior year's conversion rate would have predicted, but more frequently her judgment led her

20  to forecast results far less than what the prior year's conversion rate would have predicted.  *Id.*

21  Moreover, Minton's judgment clearly added value to the forecasting process.  As demonstrated

22   

23  [13]  Because Dr. Goedde's conclusion regarding the genesis of Minton's Potential projection is unreliable and inadmissible, his opinion regarding the failure to use macroeconomic data in Oracle's forecasts that relies on that conclusion must also be excluded.  *See* Opp. at 19 (contending that Minton "did not take economic conditions into consideration when performing her conversion ratio analysis, which formed the basis of her Potential Forecast."); *Amorgianos*, 303 F.3d at 267.

26  [14]  In particular, Dr. Goedde's regression shows that within the 95% confidence interval, Oracle's December 11 license revenue forecast could have ranged from $1.3 billion to $1.56 billion.  Foster Rebuttal Decl. ¶ 36.  That nearly $260 million range necessarily implies that Minton exercised her judgment and considered other inputs before arriving at the Potential projection.  Dr. Goedde thus has no basis for his conclusion that the Potential projection "was based almost exclusively on historical conversion analysis," Farthing Decl. Ex. 2 at 76.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   in Dr. Foster's Rebuttal Declaration, Minton's Potential Forecast was far more accurate in

2   predicting Oracle's final quarterly results than the Goedde Forecast would have been. Foster

3   Rebuttal Decl. ¶¶ 10-15.

4       Second, setting aside relevance, Dr. Goedde's new opinion (Goedde Decl. ¶ 5 and Exs. 2-

5   3) must be excluded because his underlying regression analysis is methodologically unsound and

6   does not support the conclusion that Dr. Goedde purports to draw from it. *See Cavallo v. Star*

7   *Enter.*, 892 F. Supp. 756 (E.D. Va. 1995), *aff'd in part, rev'd in part*, 100 F.3d 1150 (4th Cir.

8   1996), *cert. denied*, 522 U.S. 1044 (1998) (courts must ensure "that there is a scientifically valid

9   link between the sources or studies consulted and the conclusion reached."). Dr. Goedde claims

10  that his regression proves that "variations" in the Goedde Forecast explain 94% of "any

11  variations over time" in Minton's Potential Forecast. Goedde Decl. ¶ 5. But that is not the

12  regression he actually performed. Dr. Goedde's regression analysis did not test for any

13  correlation between *variations* in the Goedde Forecast and *variations* in the Potential Forecast.

14  Foster Rebuttal Decl. ¶¶ 24-34. Instead, it tested the correlation between the *amount* (dollar

15  value) of the Goedde Forecast on a given date and the *amount* of the Potential Forecast on that

16  same date. *Id.* As such, Dr. Goedde's regression cannot and does not show a statistically

17  significant relationship between *variations* in the Goedde Forecast and *variations* in the Potential

18  Forecast, as he purports.

19      Moreover, by testing the relationship between the amounts of each variable, rather than

20  the variations in each, Dr. Goedde has committed a fundamental methodological error. Minton's

21  Potential Forecast and the Goedde Forecast are what economists refer to as "time series" data.

22  Foster Rebuttal Decl. ¶¶ 37-51. Since most time series data tend to vary relatively little from one

23  observation to the next and may have in common underlying trends, a regression of the amounts

24  or levels of time series data will overstate the explanatory power of the regression simply

25  because the two variables both move in the same time frame. *Id.* Indeed, for this reason, the

26  Federal Judicial Center's Reference Manual on Statistical Evidence specifically cautions against

27

28

LATHAM&WATKINS<sup></sup>
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1   conclusions based on the correlations of such variables.[15]

2         If Dr. Goedde had actually done what he purported to do – regressing the variations – his

3   result would have been entirely different.  Dr. Foster performed that regression appropriately and

4   determined that the ***variations*** in the Goedde Forecast actually explain ***only about two percent*** of

5   the variations in the dollar value of the Potential – ***not the 94% claimed by Dr. Goedde***.  Foster

6   Rebuttal Decl. ¶ 34.

7         Dr. Goedde's analysis is further undermined by his failure to account for the seasonality

8   of Oracle's business—*i.e.*, the fact that Oracle's quarterly sales tend to increase from quarter to

9   quarter over the course of any given fiscal year, with the fourth quarter routinely generating the

10  highest sales of the year.  Because of this phenomenon, Oracle itself—and the securities analysts

11  who cover the company—tend to analyze Oracle's quarterly results by comparison to the same

12  quarter the prior year (as opposed to, for example, the results of the just-prior quarter).  Rather

13  than studying different quarters separately, Dr. Goedde's regression purports to test the

14  correlation between the Goedde Forecast and Minton's Potential Forecast over the entire time

15  period he studied (treating observations in Q3, for example, the same as observations in Q1).  By

16  ignoring the differences among the quarters of Oracle's fiscal year, Dr. Goedde's results are

17  driven, to a large extent, by the seasonality of Oracle's sales and Potential Forecast across

18  quarters.  Foster Rebuttal Decl. ¶¶ 37-51.

19        Put another way, given the way in which Dr. Goedde's regression was structured, the

20  seasonality in Oracle's business, by itself, would yield an apparently strong R-Squared, without

21  regard to any real relationship between the two variables he purports to have studied (*i.e.*, the

22  Goedde Forecast and the Potential Forecast).  To illustrate this point, Dr. Foster conducted a

23  multiple regression measuring only the seasonality in the Potential forecast.  Foster Rebuttal

24  ───────────────────

25  [15] As stated in the Federal Judicial Center's Reference Manual on Statistical Evidence:  "Since
     most aggregate time series have substantial growth, or trend, in common, it will not be

26  difficult to 'explain' one time series using another time series, simply because both are
     moving together.  It follows as a corollary that a high $R^2$ does not by itself mean that the

27  variables included in the model are the appropriate ones."  Farthing Reply Decl. Ex. 6 at 216;
     Farthing Reply Decl. Ex. 7 at 560-62 ("[R]egression of one random walk on another is

28  virtually certain to produce a significant relationship, even if the two are, in fact,
     independent.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    Decl. ¶ 48 and Fig. 13.  Dr. Foster's regression actually explains ***more*** of the variation in the

2    Potential Forecast than does Dr. Goedde's regression.

3            For all of the foregoing reasons, Dr. Goedde's conclusion is unreliable and should be

4    excluded.  The gatekeeper function contemplated by *Daubert* exists precisely to keep

5    superficially appealing, yet scientifically flawed, analysis like this from the finder of fact.

6    *Daubert*, 509 U.S. at 589.

7            **2.    Dr. Goedde's Opinion That Ellison Issued A Directive Causing More
              Risk To Enter Oracle's Forecasts In 2Q01 Is Unreliable**[16]

8

9            Dr. Goedde has opined that as a result of the "directive," the amount of management

10   judgment in the field forecast increased, thus "eliminating the need for Ms. Minton's upside

11   adjustments."  Farthing Decl. Ex. 2 at 84; Farthing Decl. Ex. 1 at 23 ("Ellison directed a

12   significant change that rendered Minton's upside adjustments unnecessary and unreliable.").

13   However, Dr. Goedde has utterly failed to prove this is true.  Even if Dr. Goedde could show that

14   there was more judgment in the field forecasts after a purported "directive," he has not

15   completed the syllogism to show how this actually eliminated the need for Minton's Upside

16   adjustments in 3Q01.  In fact, despite the purported directive in September or early October

17   2000, the field's forecasts for 2Q01 were below the actual results, especially earlier in the

18   quarter, as shown in the table below:[17]

| Division | 2Q01 Actuals | October 9, 2000 Forecast | November 3, 2000 Forecast | November 27, 2000 Forecast |
|----------|--------------|--------------------------|---------------------------|----------------------------|
| NAS | $278,636,000 | $260,089,000 | $270,001,000 | $284,167,000 |
| OSI | $153,227,000 | $149,973,000 | $149,973,000 | $150,000,000 |
| OPI | $108,699,000 | $87,000,000 | $87,000,000 | $97,001,000 |
| Total | $540,562,000 | $497,062,000 | $506,974,000 | $531,168,000 |

22   The above data clearly demonstrate a continuing need for Minton's Upside adjustments, even

23   after the purported directive, as the sales force continued to sandbag, just as Ellison believed they

---

[16]   It is important to note that Dr. Goedde's two key conclusions regarding Oracle's forecasting
       processes are inconsistent.  If Minton had based her Potential projection on the product of the
       current year's *pipeline* and the prior year's conversion ratio, whatever sales opportunities
       were included in the field *forecast* and how much management judgment in the field
       *forecast* (the subjects of the purported "directive") would be completely irrelevant.

[17]   Farthing Reply Decl. Ex. 8 at 975588; Farthing Reply Decl. Ex. 9 at 1532638; Farthing
       Reply Decl. Ex. 10 at 1532705; Farthing Reply Decl. Ex. 11 at 1532782.  All figures at
       budget rates and all forecasts are exclusive of Ms. Minton's adjustments.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

1    would.  Farthing Reply Decl. Ex. 3 at 425:5-21.

2          In addition, Dr. Goedde's new analysis of the purported increase in judgment in the field

3    forecasts after the purported directive in the Goedde Declaration is misleading and unreliable

4    because he draws conclusions from insufficient data and fails to address the total amount of

5    judgment in the Potential.  Foster Rebuttal Decl. ¶¶ 64-73.  As to OPI and OSI, Dr. Goedde only

6    considers one and two pre-"directive" data points, respectively, which provide an insufficient

7    basis for his conclusions.  *Id.* at ¶ 67.  As to NAS, Dr. Goedde ignores that large amounts of

8    judgment had been used before and after the purported "directive," *id.* at ¶ 68, and also fails to

9    measure the total amount of judgment in the Potential, which would be necessary to reach his

10   conclusion that Ms. Minton's upside adjustments were rendered unnecessary by the purported

11   "directive."  *Id.* at ¶¶ 70-73.  In fact, using Dr. Goedde's own selected weeks for observations,

12   the average amount of total judgment (by managers, Mr. Roberts and Ms. Minton) above the

13   NAS field forecast *decreased* from 25 percent before the "directive" to just 18 percent after the

14   directive.  *Id.* at ¶ 71.  Similarly, it is clear that Minton used proportionately less upside

15   adjustments in 3Q01 than in prior quarters (Farthing Decl. Ex. 10 at ¶ 189), consistent with her

16   testimony that she would "take into consideration the number of upside deals that were not in the

17   forecast, and any other input that I may have received from the field."  Farthing Reply Decl. Ex.

18   2 at 207:8-11.  Dr. Goedde has failed to demonstrate a necessary step in his analysis, and as a

19   result, his conclusions are unreliable and should be excluded.  *Amorgianos*, 303 F.3d at 267.

20        D.    **The New Goedde Declaration Is Untimely And Concedes that Dr. Goedde's
               Prior Work Is Unreliable And Inaccurate**

21
22        Finally, the Goedde Declaration should also be excluded because it violates Rule 26 and

23   this Court's scheduling order.  On March 5, 2007, the Court entered as an order the parties'

     stipulated schedule for expert discovery, which provided for a simultaneous exchange of opening

24   reports on May 25, 2007 and another simultaneous exchange of rebuttal reports on June 22,

25   2007; expert discovery was to close on July 12, 2007.  Farthing Reply Decl. Ex. 12 at 2; *see also*

26   Fed. R. Civ. Proc. 26(a)(2)(C) ("These disclosures shall be made at the times and in the sequence

27   directed by the court.").  Rule 26 also requires that an expert's report "contain a complete

28

statement of all opinions to be expressed and the basis and reasons therefor."  Fed. R. Civ. Proc. 26(a)(2)(B).

The Goedde Declaration is untimely on its face, and it, together with Dr. Goedde's earlier reports and testimony, should be excluded both because it violates the Court's scheduling order, and because it is now patent that Dr. Goedde's opening and rebuttal reports do not "contain a complete statement of all opinions to be expressed [by him] and the basis and reasons" for those opinions as required by Rule 26.  *See In re Williams Sec. Litig.*, No. 4:02-cv-00072 SPF-FHM, 2007 WL 2007987, at *49 (N.D. Okla. July 6, 2007) (excluding expert because his report did not comply with Rule 26); *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 715 (7th Cir. 2004) (excluding portion of expert's opinion that was not properly disclosed in accordance with Rule 26).[18]   By belatedly producing the Goedde Declaration, Plaintiffs have deprived Defendants of the opportunity to depose Dr. Goedde on these opinions and analyses.  Nevertheless, at some point the process of expert discovery must come to an end, rather than have an endless cycle of rebuttals, sur-replies, and depositions.  Expert discovery is over, and the Goedde Declaration should be excluded.

## III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that Dr. Goedde's reports, testimony and opinions, including the Goedde Declaration, be excluded in their entirety.

Dated:  September 10, 2007                                       Respectfully submitted,

LATHAM & WATKINS LLP

By:_____/s/_____
          Patrick E. Gibbs
          Attorneys for Defendants

---

[18]   Plaintiffs cite to *Miller v. Pfizer, Inc.* for the proposition that the Goedde Declaration is permissible, Opp. at 21 n.20, but that case further supports Defendants' position.  356 F.3d 1326 (10th Cir. 2004).  The *Miller* court held that because "an expert's *initial* Rule 26 report cannot always anticipate every possible challenge to the report, … *on occasion* it may be appropriate to permit the party using the expert to submit supplements to the report in response to assertions by opposing experts that there are gaps in the expert's chain of reasoning."  *Id.* at 1332.  Here, Dr. Goedde had the opportunity to provide both an initial report *and a rebuttal report*, as contemplated by the Court's scheduling order.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)