```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                        -oOo-
 4    IN RE
      ORACLE CORPORATION                    CERTIFIED COPY
 5    SECURITIES LITIGATION
                                    MASTER FILE NO.
 6                                  C-01-0988-MJJ
      This Document Relates To:
 7
          ALL ACTIONS
 8    _____/
 9
10
11                        -oOo-
12
13                    CONFIDENTIAL
14        VIDEOTAPED DEPOSITION OF SARAH KOPP
15                    June 14, 2006
16
17                        -oOo-
18             SHEILA CHASE & ASSOCIATES
                    REPORTING FOR:
19              LiveNote World Service
              221 Main Street, Suite 1259
20               San Francisco, CA 94105
              Telephone: (415) 321-2300
21                 Fax: (415) 321-2301
22                        -oOo-
23    Reported by:
      KELLIE A. ZOLLARS, CSR, RPR, CRR
24    CSR License No. 5735
25
```

```
 1   of won deals?  W-o-n deals?
 2       A.  Yes.  Won or closed.
 3       Q.  So prior to February 14th, there was only
 4   $34 million in closed deals in OSI?
 5       MS. KYROUZ:  Objection.
 6       MS. McLAUGHLIN:  According to this e-mail.
 7       THE WITNESS:  According to OSO, uhm, yes.
 8       BY MS. McLAUGHLIN:
 9       Q.  Do you have any reason to believe that that
10   was an inaccurate number as you're sitting here today?
11       MS. KYROUZ:  Objection.  Vague.  Lacks foundation.
12       THE WITNESS:  I don't have any reason to believe
13   it's inaccurate.  It's not unusual, but it's not
14   inaccurate I don't think.
15       BY MS. McLAUGHLIN:
16       Q.  So explain to me because I'm a little confused
17   between the first two sentences -- between the two
18   sentences in this paragraph.  It says, "Although in
19   OSO there is $55 million of judgment in Jay's number
20   these guys signed up for the $180 million commit
21   yesterday.  I believe we will come in somewhere
22   between 210 and 220"?
23       A.  Uh-huh.
24       Q.  So are -- in this e-mail are you stating that
25   you think that they will actually -- and it says "come
```

1    in somewhere between," meaning we'll get those amount
2    of deals -- that amount of deals closed above what
3    they were willing to commit the day before?
4    A. No. What I'm saying is that I think in total
5    for the quarter they're going to land at a revenue
6    number of somewhere between 210 and 220 based on that
7    commit plus some combination of those big deals. I'm
8    not saying that the 210 and 220 is on top of anything.
9    That is where I think they will ultimately land.
10    Q. Okay. So your -- from your perspective in
11    this e-mail, and correct me if I'm wrong, you believe
12    they'll land somewhere between 30 and 40 million
13    dollars more than they were willing to commit the day
14    before?
15    A. Uhm, I wouldn't say more than they were
16    willing to commit. What I would say is they were
17    comfortable with the 180. That's not to say that they
18    were uncomfortable with it being any higher than that.
19    They were comfortable saying "I will make a commitment
20    that we'll do 180, we could do more." So I wouldn't
21    say -- I wouldn't say more than they were willing to
22    stand up to because that's not really the case. It's
23    more than they committed to but not more than they
24    thought they could potentially do.
25    Q. And you -- and you knew this because you were

```
 1  aware of what they were thinking what they could
 2  potentially do?  Was there -- or I guess what
 3  I'm asking --
 4      A.  Yeah.
 5      Q.  -- is that what --
 6      A.  I certainly --
 7      MS. KYROUZ:  Objection.  Vague.  Misstates the
 8  document.
 9      THE WITNESS:  I wouldn't say I knew what they were
10  thinking, that I was in their heads; but having
11  attended the staff meeting and talking about these
12  deals with Jay, you know, we were going through which
13  deals he thought were likely to close versus unlikely
14  to close; and some of these were not in that 180
15  number or in it for a very small amount.
16          So forecasting is doing that.  It's trying to
17  figure out over and above what's been committed if
18  there's an opportunity for anything better than that.
19  And at that point in time I believed that -- and as I
20  said, there's a huge swing in the numbers so it's
21  difficult to pinpoint.  But at that point in time I
22  thought that the forecast of 210 I think it was and
23  the 220 was -- somewhere in there would be where we
24  would come out.
25      BY MS. McLAUGHLIN:
```

```
 1      Q.  Okay.  And let me ask you this question:  When
 2   you say that there's really such a huge swing in the
 3   number, are you referring to the fact that the deals
 4   you were depending on to close in the next two weeks
 5   were those swing deals?  Is that what you're referring
 6   to?
 7      MS. KYROUZ:  Objection.  Misstates the document.
 8   Vague.  Lacks foundation.
 9      MS. McLAUGHLIN:  I'm asking her what she thinks.
10      THE WITNESS:  So -- no, I'm not saying that we're
11   relying on all of those deals to close.  I'm saying
12   that we believe some of them will close.  And so my
13   prediction is based on some of them closing.
14   BY MS. McLAUGHLIN:
15      Q.  Okay.  So when we --
16      A.  But no -- sorry.
17      Q.  Sorry.
18      So when we look in the financial services
19   category, it says "10 million at Capital One must
20   close."  What is "must close"?  Is that one of the
21   swing deals that must close for you to make that
22   projected number you're talking about lower?
23      MS. KYROUZ:  Objection.  Vague.  Misstates the
24   document.
25      THE WITNESS:  I don't recall if the must close on
```

Kopp, Sarah
CONFIDENTIAL

8/14/2006

```
 1   STATE OF CALIFORNIA    )
 2   COUNTY OF SAN MATEO    )
 3            I hereby certify that the witness in the
 4   foregoing videotaped deposition, SARAH KOPP, was by me
 5   duly sworn to testify to the truth, the whole truth,
 6   and nothing but the truth, in the within-entitled
 7   cause; that said deposition was taken at the time and
 8   place herein named; that the deposition is a true
 9   record of the witness' testimony as reported by me, a
10   duly certified shorthand reporter and a disinterested
11   person, and was thereafter transcribed into
12   typewriting by computer.
13            I further certify that I am not interested in
14   the outcome of the said action, nor connected with,
15   nor related to any of the parties in said action, nor
16   to their respective counsel.
17            IN WITNESS WHEREOF, I have hereunto set my
18   hand this 27th day of June, 2006.
19
20
21            _____
22       for  KELLIE A. ZOLLARS, CSR
23            STATE OF CALIFORNIA
24
25
```