IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Certified Copy

In re ORACLE CORPORATION

SECURITIES LITIGATION.

                Master File No. C-01-0988-MJJ

This Document Relates To:


ALL ACTIONS.

_____/


---oOo---

CONFIDENTIAL

VIDEOTAPED DEPOSITION OF JOHN DUROSS O'BRYAN

THURSDAY, JULY 12, 2007


---oOo---

SHEILA CHASE & ASSOCIATES
REPORTING FOR:
LiveNote World Service
221 Main Street, Suite 1250
San Francisco, California 94105
Phone: (415) 321-2311
Fax:   (415) 321-2301


Reported by:
DIANA NOBRIGA, CSR, CRR
LICENSE NO. 7071

```
 1        A.    I do, yes.
 2        Q.    Are you willing to produce those?
 3        A.    That's not up to me.
 4        MR. GLENNON:  To the extent that you can
 5   establish the foundation for requiring production, we'll
 6   certainly entertain that discussion.  But I don't think
 7   you've done that.
 8        MR. GREENSTEIN:  Q.  So you're not willing to
 9   do it?
10        MR. GLENNON:  This is counsel's decision, as
11   you know.
12        But what Mr. O'Bryan has said is that
13   everything that he has gleaned and everything he's
14   relied upon is from the script output, which is actually
15   listed in the appendix to his expert report, which I'm
16   happy to point out to you, if you'd like.
17        MR. GREENSTEIN:  Q.  Mr. O'Bryan, do you think
18   it is helpful -- was it helpful for you to have a list
19   of those 277 items?
20        A.    For me personally?
21        Q.    Yeah.
22        A.    Well, certainly it summarized what they were
23   and how much they were.  But they come right out of the
24   script output.
25        Q.    If you could turn -- strike that.
```

| | |
|---|---|
| 1 | Mr. O'Bryan, is it your testimony, your expert |
| 2 | testimony, that Ernst and Young analyzed the 2Q '01 bad |
| 3 | debt transfers, the transfers from 25005 to 12601 in the |
| 4 | second quarter? |
| 5 | A.  Yes. |
| 6 | Q.  They did review it? |
| 7 | A.  Yes. |
| 8 | Q.  What evidence can you provide that supports |
| 9 | your conclusion? |
| 10 | A.  As I recall, it was a deposition of Jennifer |
| 11 | Minton and also deposition of Mr. Henley. |
| 12 | Q.  Is there anything else you relied upon in |
| 13 | order to determine, to conclude that Ernst and Young |
| 14 | reviewed the $20.1 million in bad debt transfers in the |
| 15 | second quarter of '01? |
| 16 | A.  Well, just my experience as an auditor, and |
| 17 | knowing what auditors would be aware of and would talk |
| 18 | to clients about. |
| 19 | When you have the chief financial officer, |
| 20 | Mr. Henley, saying, "I've talked to them about that, or |
| 21 | would have talked to them about it," I think that's |
| 22 | pretty good evidence that they would have been spoken |
| 23 | to. |
| 24 | Then you also have Ms. Minton, who is also in |
| 25 | the accounting department, mentioning that they had been |

1    talked to about it. To me they would know that.
2           In addition to that, it would be an item that
3    an auditor would be interested in, given the amount, and
4    specifically given the fact that the client is telling
5    you this is something I want you to look at.
6        Q.   When you say an auditor would look at it, it
7    is not your testimony that Ernst and Young audited
8    Oracle's second quarter '01, is it?
9        A.   No. I'm sure they performed the SAF 71
10   review.
11       Q.   Just so it is clear, Ernst and Young did not
12   audit Oracle's second quarter '01 bad debt transfers?
13           MR. GLENNON: Objection; vague as to time. Do
14   you want to clarify?
15           MR. GREENSTEIN: Q. At any time. Is it your
16   testimony that Ernst and Young audited Oracle's second
17   quarter '01 financials?
18       A.   Well, no. Arthur Andersen was the auditor.
19   But Ernst and Young was made aware of this in the
20   October/November of '02 time frame when this unapplied
21   cash project took place. And I base that on testimony
22   that I've seen, as well as just my own experience as an
23   auditor that that would be something you'd see, and it
24   would be something you'd look at.
25           And as soon as you see it and as soon as you

```
 1   look at it, you have to immediately look at it with
 2   respect to the materiality back to the quarter it was
 3   appropriately booked.
 4       Q.   Why would you have to immediately look at it?
 5       A.   Because it is something the clients brought up
 6   to you and said, "Hey, will you take a look at this and
 7   tell me" -- worst case scenario, hypothetically, which
 8   we play out in my report, is the entire $20 million is
 9   something that should be taken back to the second
10   quarter and reduce revenues by that.
11           The auditor would immediately say, "Look, I'm
12   not going to go do a bunch of analysis how this
13   happened.  That's the company's internal policy and
14   internal operations.  However, I do want to know if
15   that's something that has to be looked at and
16   investigated for me, the auditor, to know if it was
17   material in the second Q of '01 to potentially have to
18   restate the Q."
19           Even though they didn't audit the second Q of
20   '01, they being Ernst and Young, they certainly would
21   have had to consider materiality to go back and restate
22   that Q.  They would have responsibility for restating
23   that Q even though they did not report on it at the time
24   it was prepared.
25       Q.   So, just to be clear, your testimony is that
```

```
 1   Ernst and Young did a review of the transfers from 25005
 2   to 12601 in the second quarter '01, and issued an
 3   opinion on that amount?
 4           MR. GLENNON:  Objection; mischaracterizes the
 5   testimony.  It is also vague and ambiguous as to time.
 6           THE WITNESS:  No.  Auditors don't issue
 7   opinions on individual transactions and/or accounts
 8   within a set of financial statements.
 9           MR. GREENSTEIN:  Q.  Let me rephrase.  So
10   you're saying they did review it though; right?
11           MR. GLENNON:  Objection; mischaracterizes the
12   testimony, it's vague and ambiguous.
13           THE WITNESS:  I believe that Ernst and Young
14   was made aware of the transfers and considered,
15   immediately upon being aware of, they would need to
16   consider whether or not it was material to that quarter.
17           MR. GREENSTEIN:  Q.  So do you -- do you know
18   if they considered it or not?
19           MR. GLENNON:  Objection; vague and ambiguous,
20   asked and answered.
21           THE WITNESS:  I do.  And they were.
22           MR. GREENSTEIN:  Q.  So your expert opinion is
23   that Ernst and Young reviewed the $20.1 million in
24   transfers from 25005 to 12601 in the second quarter?
25           MR. GLENNON:  Objection; vague and ambiguous
```

```
 1   this deposition is five.  This is the end of videotape
 2   number five in Volume I in the deposition of J. Duross
 3   O'Bryan.  The original videotapes will be retained by
 4   LiveNote World Service.  We're going off the record.
 5   The time on the monitor is 7:37.
 6                  (Discussion off the record.)
 7           MR. GREENSTEIN:  We just had a discussion off
 8   the record.  Both parties agree that the deposition and
 9   the exhibits should be designated as confidential.
10           MR. GLENNON:  And it is going to get shipped
11   to us for our review in 30 days to review and sign?
12           MR. GREENSTEIN:  Right.
13           (Whereupon, at 7:38 p.m. the deposition of
14   JOHN DUROSS O'BRYAN was adjourned.)
15
16           I declare under penalty of perjury that the
17   foregoing is true and correct.
18
19   Dated: _____     _____
20                                  JOHN DUROSS O'BRYAN
21
22
23
24
25
```

```
1    STATE OF CALIFORNIA         )
2                                )
3    COUNTY OF ALAMEDA           )
4             I, DIANA NOBRIGA, hereby certify that the
5    witness in the foregoing deposition was by me duly sworn
6    to testify to the truth, the whole truth, and nothing
7    but the truth in the within-entitled cause; that said
8    deposition was taken at the time and place therein
9    stated; that the testimony of said witness was reported
10   by me, a Certified Shorthand Reporter and disinterested
11   person, and was thereafter transcribed into typewriting,
12   and that the pertinent provisions of the applicable code
13   or rules of civil procedure relating to the notification
14   of the witness and counsel for the parties hereto of the
15   availability of the original transcript of the
16   deposition for reading, correcting and signing have been
17   met.
18            And I further certify that I am not of counsel
19   or attorney for either or any of the parties to said
20   deposition, nor in any way interested in the outcome of
21   the cause named in said action.
22            DATED: 7/16/07
23
24                                         _____
25                                   DIANA NOBRIGA, CSR NO. 7071
```