1    LATHAM & WATKINS LLP                    LATHAM & WATKINS LLP
       Peter A. Wald (SBN 85705)               Patrick E. Gibbs (SBN 183174)
2      Michele F. Kyrouz (SBN 168004)        135 Scott Drive
       Sean P.J. Coyle (SBN 233039)          Menlo Park, CA 94025
3    505 Montgomery Street, Suite 2000       Telephone: (650) 328-4600
     San Francisco, CA 94111-2562            Facsimile: (650) 463-2600
4    Telephone: (415) 391-0600               E-mail: patrick.gibbs@lw.com
     Facsimile: (415) 395-8095
5    E-mail: peter.wald@lw.com
             michele.kyrouz@lw.com
6            sean.coyle@lw.com

7    LATHAM & WATKINS LLP
       Jamie L. Wine (SBN 181373)
8    633 West Fifth Street, Suite 4000
     Los Angeles, CA 90071
9    Phone: (213) 485-1234
     Fax: (213) 891-8763
10   E-mail: jamie.wine@lw.com

11   Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
     J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
12
     ORACLE CORPORATION
13     Dorian Daley (SBN 129049)
       James C. Maroulis (SBN 208316)
14   500 Oracle Parkway
     Mailstop 5OP7
15   Redwood Shores, California 94065
     Telephone: (650) 506-5200
16   Facsimile: (650) 506-7114
     E-mail: dorian.daley@oracle.com
17           jim.maroulis@oracle.com

18   Attorneys for Defendant ORACLE CORPORATION

19                     **UNITED STATES DISTRICT COURT**

20        **NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION**

                                          Master File No. C-01-0988-MJJ
21   In re ORACLE CORPORATION              (Consolidated)
     SECURITIES LITIGATION
22                                         **DECLARATION OF SEAN P.J. COYLE IN
                                           SUPPORT OF DEFENDANTS'
23   _____   MEMORANDUM REGARDING
                                           PLAINTIFFS' MOTION TO COMPEL
24   This Document Relates To:             TESTIMONY AND DETERMINE THE
                                           APPLICABILITY OF THE FIFTH
25   ALL ACTIONS.                          AMENDMENT RIGHT AGAINST SELF-
                                           INCRIMINATION**

26
                                           **Judge:  Martin J. Jenkins
27                                         Date:    May 1, 2007
                                           Time:    9:30 a.m.**
28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

VOLUME 2

COYLE DECL ISO DEFS' MEMO RE PLTFS' MTC TESTIMONY
AND DETERMINE THE APPLICABILITY OF 5TH AMEN
Master File No. C-01-0988-MJJ

# EXHIBIT 4

Exhibit 4 to the Coyle Declaration in Support of
Defendants' Memorandum Regarding Plaintiffs'
Motion to Compel Testimony and Determine
the Applicability of the Fifth Amendment Right
Against Self-Incrimination

**Remains Sealed** at this Time Per the Request of
Counsel for Matthew Symonds

# EXHIBIT 5

1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  MARK SOLOMON (151949)
   DOUGLAS R. BRITTON (188769)
3  VALERIE L. McLAUGHLIN (191916)
   GAVIN M. BOWIE (235532)
4  STACEY M. KAPLAN (241989)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   marks@lerachlaw.com
7  dougb@lerachlaw.com
   valeriem@lerachlaw.com
8  gbowie@lerachlaw.com
   skaplan@lerachlaw.com
9       – and –
   SHAWN A. WILLIAMS (213113)
10 WILLOW E. RADCLIFFE (200087)
   MONIQUE C. WINKLER (213031)
11 ELI R. GREENSTEIN (217945)
   100 Pine Street, Suite 2600
12 San Francisco, CA  94111
   Telephone:  415/288-4545
13 415/288-4534 (fax)
   shawnw@lerachlaw.com
14 willowr@lerachlaw.com
   moniquew@lerachlaw.com
15 elig@lerachlaw.com

16 Lead Counsel for Plaintiffs

17                 UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19 In re ORACLE CORPORATION            )  Master File No. C-01-0988-MJJ
   SECURITIES LITIGATION               )
20 _____ )  CLASS ACTION
                                       )
21 This Document Relates To:           )  PLAINTIFFS' REPLY IN SUPPORT OF
                                       )  MOTION TO COMPEL ADDITIONAL
22      ALL ACTIONS.                   )  TIME FOR THE DEPOSITIONS OF LARRY
                                       )  ELLISON AND SAFRA CATZ
23 _____ )

24                                        DATE:    March 9, 2007
                                          TIME:    8:45 a.m.
25                                        JUDGE:   The Honorable
                                                   Edward A. Infante (Ret.)
26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   PLAINTIFFS HAVE NOT HAD A FAIR OPPORTUNITY TO EXAMINE
      ELLISON OR CATZ REGARDING 800,000 PAGES OF RECENTLY
      PRODUCED DOCUMENTS ....................................................................................... 1

      A.    Plaintiffs Will Be Prejudiced Unless Granted Additional Time to Examine
            Ellison and Catz Regarding Softwar Transcripts Containing a "Number of
            Central Facts and Circumstances at Issue in This Case" ........................................ 3

      B.    Given Evidence of the Involvement of Ellison and His Counsel in the
            Destruction of the Softwar Materials, Plaintiffs Should Be Granted
            Additional Time to Examine Ellison ....................................................................... 7

      C.    Plaintiffs Are Entitled to Additional Time to Depose Ellison and Catz
            Regarding Newly Produced Documents Relating to Oracle's 2002 Clean
            Up ......................................................................................................................... 10

            1.    Plaintiffs Are Entitled to Ask Ellison and Catz About the New
                  Production Concerning the 2002 Clean Up and Bad Debt Transfers ........ 10

            2.    Defendants' Second Attempt to Alter the Testimony of Jennifer
                  Minton Regarding Her Involvement in the 2002 Clean Up
                  Confirms the Need to Question Ellison and Catz About the New
                  Documents ............................................................................................... 12

III.  CONCLUSION ...................................................................................................... 13

1

## TABLE OF AUTHORITIES

2
Page

3    CASES

4    *U.S. v. Lundwall,*
5        1 F. Supp. 2d 249 (S.D.N.Y. 1998) ........................................................................... 7

6    STATUTES, RULES AND REGULATIONS

7    18 U.S.C.
         §1503 ............................................................................................................................. 8

8    Federal Rules of Civil Procedure
9        Rule 26............................................................................................................................ 12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Defendants recently produced, for the first time, over 800,000 pages of documents to plaintiffs. These documents concern central accounting allegations as well as, by defendants' own admission, a "number of central facts and circumstances at issue in this case." As these documents have never been previously produced either in this litigation or the derivative litigation, plaintiffs have never had an opportunity to examine either Larry Ellison or Safra Catz, key witnesses in this litigation, regarding them. Plaintiffs are entitled to additional time to examine both Ellison and Catz regarding these documents.

Additionally, defendants have recently admitted that the Softwar materials ordered produced by Your Honor were intentionally destroyed after the filing of plaintiffs' motion to compel their production. Defendants have also admitted that the initial story regarding the destruction of Softwar evidence was completely fabricated. There is substantial evidence of Ellison's involvement in the destruction of the Softwar materials. And, notably, Matthew Symonds had absolutely no incentive to destroy (in fact, had every incentive to retain) the Softwar materials other than a desire to protect Ellison from their obviously incriminating contents. Plaintiffs will soon receive discovery from Symonds and PC World regarding the destruction of the Softwar materials. Plaintiffs will be prejudiced if they are not granted additional time to examine Ellison regarding the evidence destruction.

## II.    PLAINTIFFS HAVE NOT HAD A FAIR OPPORTUNITY TO EXAMINE ELLISON OR CATZ REGARDING 800,000 PAGES OF RECENTLY PRODUCED DOCUMENTS

Defendants first argue that plaintiffs are not entitled to additional deposition time with Ellison and Catz because they are already in possession of deposition transcripts from the Delaware litigation and because they have already deposed both witnesses. This argument lacks merit. Not only are plaintiffs not required to rely on the work of other lawyers in a case containing different allegations than the current litigation, but the 800,000 pages of documents which form the basis for plaintiffs' motion were never produced in either litigation. Neither the plaintiffs in Delaware nor the plaintiffs in this case have ever been given the opportunity to examine Ellison or Catz regarding these new issues or documents. As such, the Delaware depositions and, indeed, the depositions

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL ADDITIONAL TIME FOR THE
DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ - C-01-0988-MJJ

1 | already taken in this case, bear little relevance to the question of whether plaintiffs are entitled to

2 | examine Mr. Ellison and Ms. Catz on this new discovery.

3 |     Defendants also argue that plaintiffs' request for a stipulation is somehow evidence that

4 | plaintiffs had decided to bring this motion to compel prior to reviewing the documents.  The true

5 | facts completely undercut this argument.  First, plaintiffs' initial contact with defendants regarding

6 | the stipulation was on January 24, 2007.  The first draft of the stipulation was sent to counsel for

7 | defendants on January 25, 2007.  The stipulation was not filed until January 30, 2007.  All of these

8 | events took place over a week after defendants' production of the 2002 Softwar transcripts and their

9 | production of over 400,000 pages of accounting documents.[1]  Before contacting defendants

10 | regarding the stipulation, plaintiffs had already reviewed the Softwar transcripts and knew that they

11 | wished to bring a motion to compel based on them alone.  Plaintiffs were also aware that the

12 | deadline for any motion to compel on the basis of those documents was fast-approaching.  To

13 | promote efficiency, plaintiffs contacted defendants to request that they be allowed to bring one

14 | motion on the basis of all of the new productions, instead of having separate deadlines for each

15 | production.  That defendants now feel the need to use plaintiffs' efforts at efficiency as a reason for

16 | denying their motion speaks to the weakness of the support for their opposition.

17 |     Defendants' arguments are red herrings.  To the extent possible, given the size of the recent

18 | productions, plaintiffs have commenced review of them and made the determination that, based on

19 | the relevance of the documents to their claims, they require the opportunity to examine Ellison and

20 | Catz.  Defendants themselves were well aware, surely based on their own review of the recent

21 | documents, that plaintiffs would desire further time to examine Ellison and Catz.  In their letter to

22 | 

23 | [1]     Defendants' contentions regarding Mr. Solomon's representations at the January 16, 2007 telephonic hearing with Your Honor are, likewise, irrelevant.  Mr. Solomon merely informed Your

24 | Honor that plaintiffs might bring a motion to compel additional time based on the various new productions.  *See* Declaration of Stacey M. Kaplan in Support of Plaintiffs' Reply in Support of Motion to Compel Additional Time for the Depositions of Larry Ellison and Safra Catz ("Kaplan

25 | Decl."), Ex. A at 5 ("We may want to come to the court on a good cause showing, based on the documents that we receive, and request additional time on those one-day sittings with each of these

26 | witnesses.").

27 | All "Ex. __" references are to the Kaplan Declaration.

28 | 

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL ADDITIONAL TIME FOR THE
DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ - C-01-0988-MJJ     - 2 -

1    Your Honor of January 15, 2005, defendants admitted that plaintiffs might want to utilize documents

2    from the productions ordered for January 17 and 30 during the depositions of Ellison and Catz. *See*

3    Ex. B at 2.[2]

4         In sum, plaintiffs will be severely prejudiced if they are not granted additional time to

5    examine these key witnesses regarding the recently produced documents.[3]

6    **A.    Plaintiffs Will Be Prejudiced Unless Granted Additional Time to**
       **Examine Ellison and Catz Regarding Softwar Transcripts Containing**
7       **a "Number of Central Facts and Circumstances at Issue in This Case"**

8         Defendants do not seriously dispute that plaintiffs are entitled to additional deposition time to

9    depose Ellison and Catz regarding the recently produced transcripts.  Indeed, having proclaimed

10   their relevance to a "number of central facts and circumstances at issue in this case," defendants

11   instead argue that plaintiffs are not entitled to additional deposition time because they mentioned the

12   possible production of these documents in their previous motion for additional deposition time. The

13   record, however, does not support defendants' argument.

14        First, plaintiffs' only reference to the possible production of the Softwar transcripts in their

15   October 30, 2006 motion to compel was two sentences which read as follows: "Finally, plaintiffs are

16   moving to compel the production of several categories of documents which are likely to implicate

17   Mr. Ellison, including documents concerning and created in preparation for SOFTWAR . . . . If

18   ─────────────────────

19   [2]    "Defendants do not know whether Plaintiffs intend to use these accounting-related
       documents with Ms. Catz or Mr. Ellison, but Plaintiffs have refused to rule out that possibility. . . .
20   Defendants can see no reason why these two depositions should proceed now if there is any
       possibility that Plaintiffs will wish to question these witnesses about documents to be produced over
21   the next two weeks"; "Plaintiffs have made clear that they intend to question both Mr. Ellison and
       Ms. Catz about the customer issues involved in these documents"; "To the extent that Plaintiffs may
22   wish to question Mr. Ellison or Ms. Catz about any of [the SOFTWAR discovery related] issues,
       Defendants can see no reason why Mr. Ellison's or Ms. Catz's depositions should proceed now
23   given the risk that later-received materials may generate yet another request for more deposition
       time." *Id*. at 2-3.

24   [3]    Further, in addition to the Softwar transcripts and the hundreds of boxes of new accounting
25   docs, after the filing of plaintiffs' current motion defendants produced additional documents
       pursuant to the Special Master's January 3, 2007 Order which specifically referenced Ellison and
26   Catz. *See, e.g.*, Ex. C at NDCA-ORCL 1914916-18 (e-mail string regarding Catz's request that
       Ellison approve a transaction and stating "Approved – Larry"); Exs. D-F (e-mails to and from Catz).
27   Plaintiffs are entitled to ask Ellison and Catz about these documents that were previously withheld as
       privileged.

28

1    plaintiffs are successful in their pursuit of these documents, plaintiffs expect that they will want to

2    examine Mr. Ellison regarding their contents." Ex. G at 9. These two sentences are part of six pages

3    that plaintiffs devoted to the basis for their request for additional time for Ellison. Those six pages

4    concluded with the following: "Because plaintiffs have received thousands of pages of new

5    documents implicating Mr. Ellison and proving that he lied under oath, and because plaintiffs have

6    not yet had the opportunity to examine Mr. Ellison about previously produced and incriminating

7    documents or the baffling recent production from his files, plaintiffs respectfully request that this

8    Court compel Mr. Ellison to appear for an additional seven hours of deposition time." *Id.* at 10. The

9    possible production of Softwar tapes and transcripts was not mentioned at all in the section of that

10   motion requesting additional time with Catz.

11        On November 20, 2006, plaintiffs filed their reply. In the reply, plaintiffs decreased the

12   amount of time requested with both Ellison and Catz and, for each, specifically reserved their rights

13   with respect to all future productions of documents. *See* Ex. H at 8-9 ("[N]oting that defendants

14   have recently informed plaintiffs that the hundreds of documents that they had 'sourced' to Ellison

15   were not actually from his files, *plaintiffs are willing, subject to this Court's rulings on its other*

16   *pending motions to compel, to decrease the amount of time necessary to fairly examine Mr.*

17   *Ellison. Without waiving rights with regard to any documents produced in the future*, plaintiffs

18   respectfully request an additional 5 hours to examine Mr. Ellison.") (emphasis added); *Id.* at 10

19   ("[O]n the basis of documents which have been produced to date, plaintiffs request an additional

20   hour of deposition time with Ms. Catz . . . *subject to resolution of the plaintiffs' currently pending*

21   *motions to compel. Should defendants be ordered to produce any additional documents, and*

22   *should those additional documents implicate Ms. Catz in any way, plaintiffs reserve the right to*

23   *revisit the amount of additional time requested*.").

24        On December 14, 2006 Your Honor issued an Order requiring Ellison to appear for an

25   additional 3.5 hours of deposition time and Catz to appear for an additional 2.5 hours of deposition

26   time. As to Ellison, Your Honor summarized plaintiffs' arguments regarding their request to compel

27   additional time as follows: "Plaintiffs contend that they should be granted additional time to examine

28   Ellison regarding: (1) Defendants' post-close of discovery production of documents from Ellison's

1    files; (2) recently produced documents that Plaintiffs assert prove that Ellison lied under oath;

2    (3) recently produced pages of highly relevant documents incriminating Ellison; (4) huge amounts of

3    previously produced incriminating evidence." Ex. I at 2-3. Your Honor concluded that: "Ellison is a

4    defendant in this case. Defendants produced a large number of documents that relate to Ellison after

5    Plaintiffs deposed him and after the close of discovery. As a result of this late production, Plaintiffs

6    have not had a fair examination of Ellison within the meaning of Rule 30(d)(2)." *Id.* at 4.

7            On the basis of two sentences in plaintiffs' October 30, 2006 motion, defendants now claim

8    that plaintiffs are not entitled to additional time to depose Ellison and Catz regarding 200 pages of

9    interviews with Ellison regarding "central facts and circumstances at issue in this litigation." At the

10   time of plaintiffs' previous motion to compel, neither plaintiffs nor the Court could know what the

11   volume or import of the Softwar transcripts would be.[4] Additionally, the record does not support the

12   conclusion that the transcripts were a basis for any additional time granted.

13           Defendants also claim that, because plaintiffs examined Ellison regarding Softwar during his

14   September 21, 2006 deposition, they are not entitled to examine him regarding 200 pages of

15   interviews on topics relevant to this litigation. However, none of the quotes specifically referred to

16   in plaintiffs' motion appear anywhere in Softwar. Were it known to be the case that the transcripts

17   contain the exact information as Softwar, there would have been no reason for Your Honor to order

18   them produced. But no one ever believed that was the case. The transcripts do, in fact, contain a

19   variety of relevant information not contained in Softwar. Plaintiffs are entitled to examine Ellison

20   regarding this newly produced information.

21           Defendants argue that plaintiffs should not be allowed additional time to depose Catz

22   regarding the Softwar transcripts because she is "hardly a central figure to the events at issue" in this

23   litigation. Catz was clearly a central figure at Oracle during the Class Period. She was an executive

24   _____

25   [4]      In their motion to compel additional deposition time with Daniel Cooperman, plaintiffs
     argued that they were entitled to the time requested on the basis of documents which might be
26   ordered produced in the future. In denying plaintiffs' motion, Your Honor held: "With respect to
     'redacted' documents to be produced to Plaintiffs and other documents to be produced pursuant to
27   Plaintiffs' other motions, Plaintiffs' need to depose Cooperman regarding the unredacted documents
     and other documents is entirely speculative." Ex. J at 5.
28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL ADDITIONAL TIME FOR THE
DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ - C-01-0988-MJJ                              - 5 -

1  vice president who effectively functioned as Ellison's Chief of Staff. She attended daily meetings

2  with executive management, discussing forecasts, product issues, and accounting, to name a few.

3  She was in charge of the Covisint deal. She negotiated deals with customers and dealt with customer

4  complaints as well as resulting settlement and concessions. She was heavily involved in the

5  problems with the internal implementation at Oracle. That defendants must resort to belittling the

6  importance of Catz, clearly a key player in the events at issue, is a clear indication of the weakness

7  of their argument.

8      In addition, Catz works closely with Ellison. A recent article in *Forbes* discusses her

9  relationship with Ellison and her responsibilities at Oracle. For example:

10  • "In this murkiness, Catz and Phillips, tapped from low-profile Wall Street
11     jobs years ago, wield enormous clout in divergent styles. Safra Catz is the
       alpha of this pair, minding margins and downsizing and constantly e-mailing
12     and phoning the boss. Born in Israel and reared in Boston, she is frightfully
       antipress and unabashedly tough on customers. She works behind the
13     throne. . . . When Ellison must deal with General Electric, he issues an order:
       'Send in the Israeli!' He has seen execs 15 years older (Catz is 43) 'come
14     without the facts and start a fight. Then they leave almost in tears.'" (Ex. K
       at 84). We have none of these e-mails from the Class Period or the period
15     following, most likely because Ellison's files have been destroyed. Plaintiffs
       are clearly entitled to examine Safra Catz regarding Ellison's statements in
16     interviews.

17  • "By the time Lane and Bloom had quit in 2000 Safra Catz had taken control.
       A dealmaker at the brokerage Donaldson, Lufkin & Jenrette, she had covered
18     the software industry since 1986 and was a close friend of Ellison. He was
       enchanted by her intellect . . ., and 13 years later he brought her to Oracle.
19     They speak five times a day. 'Her power isn't that she has a lot of people
       working for her; she doesn't,' says Henley, the board chairman. 'Her power
20     is that she's on the same wavelength as Larry.'" *Id.* at 90-91.

21  • "Catz gets tough when the sales force wants to discount prices. She's the
       efficiency queen. She folded 70 employee databases into a single one to
22     scrutinize labor costs. . . . Oracle is now neck and neck with Microsoft in
       profitability, with an operating . . . margin of 42% in its last fiscal year . . . .
23     That margin is up from the 26% it was when Catz arrived." *Id.* at 91.

24      During the Class Period, Catz attended meetings with Ellison four out of five working days.

25  She functioned as the self-professed co-Chief Operating Officer of Oracle. She has a close

26  relationship with Ellison and, according to Henley, speaks with him five times a day. Her

27  relationship with Ellison was clearly such that she should be able to offer insight into hundreds of

28  hours of interviews with Ellison regarding events at issue in this litigation.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL ADDITIONAL TIME FOR THE
DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ - C-01-0988-MJJ

1   Finally, Catz was involved in the negotiation process for Softwar itself.  Both the draft

2   contract between Ellison and Symonds and the promotional article, "The Rewards of Recklessness,"

3   were produced from her files.  Plaintiffs are clearly entitled to additional time to examine both

4   Ellison and Catz regarding the Softwar transcripts.

5   **B.    Given Evidence of the Involvement of Ellison and His Counsel in the
        Destruction of the Softwar Materials, Plaintiffs Should Be Granted
6       Additional Time to Examine Ellison**

7   Defendants claim that plaintiffs are not entitled to additional time to depose Ellison regarding

8   the destruction of the Softwar materials ordered produced because he "was not personally involved

9   in the circumstances surrounding their unavailability.  Contrary to defendants' contentions, despite

10  the fact that plaintiffs have not yet received discovery from either Symonds or PC World on this

11  issue, there is still substantial evidence implicating Mr. Ellison.

12

13  (

14  #

15  ordered by Your Honor was intentionally destroyed after plaintiffs filed a motion to compel the

16  evidence on October 30, 2006.  Defendants have also admitted that the initial story told to plaintiffs

17  and the Court about how and when the Softwar evidence was destroyed, was intentionally fabricated.

18  Plaintiffs are entitled to examine Ellison regarding his communications with Symonds both during

19  this period and before.  Plaintiffs also have no personal knowledge as to whether Ellison ever

20  possessed the transcripts in question.  Plaintiffs are entitled to examine Ellison, under oath, regarding

21  these issues.

22   In addition, Ellison and Symonds were close friends.  Besides his friendship with Ellison,

23  Symonds had every incentive not to destroy the Softwar materials.  Symonds served for three years

24  as the Technology and Communications Editor for *The Economist* prior to taking a leave of absence

25  to research and write Softwar.  He currently serves as the Political Editor of *The Economist*.

26  Symonds is clearly a public figure with much to lose.  As a political journalist, his public credibility

27  is extremely important.  Yet, Symonds has chosen to engage in the intentional destruction of relevant

28  evidence for which he now faces possible criminal penalties.  *See U.S. v. Lundwall*, 1 F. Supp. 2d

1   249, 255 (S.D.N.Y. 1998) (holding that non-parties who destroyed evidence relevant to civil

2   litigation had obstructed justice in violation of 18 U.S.C. §1503 after finding that "[d]efendants here

3   are not charged with concealing and destroying documents they incorrectly concluded were not

4   sought, or erroneously thought to be irrelevant or burdensome.  Rather, they are charged with

5   seeking to impair a pending court proceeding through the intentional destruction of documents

6   sought in, and highly relevant to, that proceeding"). The reasons for Mr. Symonds's actions scream

7   out from between the lines. The contents of the destroyed materials must have been explosive and

8   highly damaging, as Ellison and Symonds obviously knew.

9            In addition to a desire to avoid possible criminal penalties for the destruction of evidence,

10  Symonds had plenty of other incentive to retain the tapes and transcripts of interviews with Ellison.

11  Symonds continues to write magazine articles about Ellison.  Also, under the final Softwar

12  agreement, he shares motion picture rights with Ellison, has the first of first and last refusal for any

13  treatment of a motion picture based on the book, may draw from the "transcripts of conversations

14  conducted in preparation on the Work" for a second, short book, and has the right of first refusal to

15  write any future editions or revisions of the book.  The materials destroyed by Symonds would

16  clearly be useful for any such future endeavors.  As such, Symonds must have had very good

17  incentive to destroy them.  Such incentive no doubt came from Larry Ellison.  Plaintiffs are entitled

18  to examine Ellison regarding the destruction.

19           In addition, there is ample evidence that defendants knew of the destruction of Softwar

20  materials prior to informing either plaintiffs or the Court. On January 2, 2007, Your Honor issued an

21  order requiring defendants to produce, by January 16, 2007, tapes and transcripts of interviews with

22  Ellison created in preparation of Softwar.  Plaintiffs immediately requested information regarding

23  the anticipated size of defendants' production. See Ex. M.

24           During a January 4, 2007 conversation among plaintiffs' and defendants' counsel,

25  Mr. Solomon asked Mr. Gibbs about the status of the Softwar materials.  Mr. Gibbs responded that

26  he did not yet know whether defendants would take the position that Symonds was refusing to turn

27  over the materials or that they no longer existed.  Plaintiffs' counsel was so stunned by that

28  statement that he quickly memorialized it. See Ex. N ("Gibbs stated today that he is dealing with the

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL ADDITIONAL TIME FOR THE
DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ - C-01-0988-MJJ

- 8 -

1   Softwar issues for defendants and does not know – even today – whether their position will be that

2   the tapes ad [sic] transcripts no longer exist, or that Symonds refuses to turn them over.").[5]   On

3   January 5, 2007, plaintiffs followed up via letter, confirming Gibbs's statements and expressing

4   disbelief at this position.  *See* Ex. O.  Defendants did not respond to the January 5, 2007 letter.

5   Later, during a meet and confer regarding the parties' Joint Status Statement (and in the Statement

6   itself) in advance of the CMC with Judge Jenkins on January 9, 2007,  Mr. Gibbs denied having

7   made the statement.  *See* Ex. P at 7.

8          It would be an amazing coincidence if plaintiffs were both so dishonest and so clairvoyant as

9   to pretend that defendants made the statements regarding the destruction of the Softwar materials to

10   counsel for defendants one week before defendants first confirmed to plaintiffs that the Softwar

11   materials had, in fact, been destroyed. From Symonds's declaration, plaintiffs clearly knew that the

12   Softwar materials existed as of November 2006.  They had no possible way of knowing that the

13   materials would be destroyed after the filing of their motion to compel the production of such

14   materials.  The plausible explanation (indeed, the only explanation that makes sense) is that Mr.

15   Gibbs made the representation attributed to him.  By January 4, 2007, counsel for defendants either

16   knew that the Softwar materials had been destroyed or that they were about to be destroyed.

17          During a telephone conversation on the afternoon (PST) of January 10, 2007, Mr. Solomon

18   and Mr. Williams again asked Mr. Gibbs about the status of the Softwar materials.  As of that date,

19   just three business days before the materials were to be produced, Mr. Gibbs claimed that he had not

20   yet spoken to Mr. Symonds and, thus, still did not know the status of the Softwar materials.  That

21   same day, eight days after the Special Master's Order, Mr. Gibbs sent Symonds a letter purporting to

22   inform Symonds, for the first time, that the Softwar materials finally had been ordered produced and

23   demanding that Symonds produce such materials.

24          Defendants' failure to seek the Softwar materials from Symonds prior to January 10, 2007 is

25   further evidence that they were fully aware that the materials had been or were about to be

26   _____

27   [5]     Plaintiffs produce this e-mail, without waiver, solely to demonstrate the immediate
memorialization of defense counsels' shocking statement.

28

1   destroyed.  Had the materials been produced, they would have contained over a 100 hours of tapes

2   and transcripts of interviews with Ellison.  Defendants were obligated to produce these materials to

3   plaintiffs by January 16, 2007.  To produce the materials, defendants would have had to procure

4   them in the United Kingdom, review them, and format them prior to producing them to plaintiffs. It

5   seems highly unlikely that defendants, who have been quick to request extensions for such large

6   scale reviews in the past, would wait until January 10, 2007 (again, just three business days prior to

7   the date of their production obligation) to even inform Symonds that they had been ordered.  The

8   more logical explanation, once again, is that defendants were not concerned with ensuring time to

9   adequately review the materials prior to production because they were fully aware (at least by

10  January 4, 2007) that the materials either had been or were about to be destroyed.

11          Finally, plaintiffs will soon be receiving discovery from both PC World and Symonds.  The

12  High Court of Justice in England recently ordered both testimonial and documentary evidence from

13  both Symond and PC World.  Plaintiffs are entitled to examine Ellison, using this evidence, about

14  his involvement in the destruction of the Softwar materials.

15      **C.**    **Plaintiffs Are Entitled to Additional Time to Depose Ellison and Catz**
             **Regarding Newly Produced Documents Relating to Oracle's 2002**
16           **Clean Up**

17          **1.**    **Plaintiffs Are Entitled to Ask Ellison and Catz About the New**
                    **Production Concerning the 2002 Clean Up and Bad Debt**
18                   **Transfers**

19          On January 30 and February 5, 2007, defendants produced, for the first time, over 381,000

20  pages of documents relating to Oracle's bad debt transfers and Oracle's 2002 Clean Up, an event that

21  was suspiciously initiated days after plaintiffs filed their [Proposed] Revised Second Amended

22  Complaint for Violations of the Federal Securities Laws ("Amended Complaint"), including new

23  accounting allegations, on December 9, 2002.  Many of these documents refer and relate specifically

24  to "debit memos" and the November 2000 Clean Up, two of the most fundamentally relevant

25  categories of accounting documents that were ordered by Judge Spero in the March 10, 2005

26  Discovery Plan.

27          Despite the clear relevance of the circumstances surrounding the 2002 Clean Up, defendants

28  resisted discovery on this issue for over two years and made false representations to the Court about

1    the lack of "connection" between the 2002 Clean Up and the debit memos. Plaintiffs had to file

2    several motions dating back to 2002 just to obtain the documents relating to the 2002 Clean Up.

3    Thus, any claim by defendants that plaintiffs have had access to the "information" relating to the

4    2002 Clean Up is disingenuous and false.  Plaintiffs did not have these documents until January 30,

5    2007.

6         Although plaintiffs have only scratched the surface of defendants' massive new accounting

7    production, discovery has now confirmed that the 2002 Clean Up and Oracle's bad debt transfers

8    were part of a systematic post-Class Period cover up by Oracle to hide their accounting improprieties

9    and the corresponding audit trail.  In their Opposition, defendants try to distance Ellison and Catz

10   from the 2002 Clean Up by claiming, for the first time, that the 2002 Clean Up was undertaken

11   completely by "entry-level" collections employees in Oracle's "satellite offices." *See* Defs.' Opp. at

12   10 ("both activities were performed by entry-level collections staff working at Oracle's Rocklin,

13   California facility").[6]  Defendants apparently want the Court to believe that upon the filing of

14   plaintiffs' Amended Complaint on December 9, 2002, including the new accounting allegations

15   concerning millions in fictitious earnings, these rogue lower level employees authorized themselves

16   to investigate plaintiffs' lawsuit, shut down Oracle's collections department to facilitate the clean up,

17   and reverse and refund millions of dollars in debit memo transactions to Oracle's customers all

18   without any knowledge of the CEO, CFO and Chief Operating Officer.  Not only is defendants'

19   theory nonsensical, it is belied by the evidence thus far in the case.

20        Evidence shows that the 2002 Clean Up involved, and indeed was directed by, Oracle

21   executives at the highest levels, including CFO Jeff Henley, and Jennifer Minton, Oracle's Corporate

22   Controller, who rolled up to Ellison and is now Oracle's Chief Accounting Officer. Ex. Q at 9, 12-

23   14. However, Ellison's and Catz's testimony is needed to resolve conflicting testimony among Jeff

24   Henley and his direct reports, Jennifer Minton and Tom Williams. Henley testified that he placed

25   Minton in charge of the 2002 Clean Up and investigation, but Minton denied it. Williams claimed he

26

27   [6]    All "Defs.' Opp. __" references are to Defendants' Opposition to Plaintiffs' [Renewed]
     Motion to Compel Additional Time for the Depositions of Larry Ellison and Safra Catz.

28

was in charge, but Henley would not corroborate this. Documents produced for the first time in January and February 2007 may be used to probe Ellison and Catz about the truth of this matter. Ellison and Catz may offer insight why Oracle's most senior accounting executives - including Henley, his direct report - cannot agree on who was in charge. *See, e.g.*, Ex. R at NDCA-ORCL 1733110-6.

Further, Minton reported at weekly executive committee meetings attended by both Ellison and Catz. Surely the Executive Committee would have discussed a massive clean up that resulted in the refund of millions of dollars to Oracle's customers. And certainly, Ellison, as the CEO, and Catz, as the self-professed "co-Chief Operating Officer" during the period at issue, would have become aware of the 2002 Clean Up. Indeed, in January and February 2007, Oracle produced documents showing that Oracle's Audit Committee met during October 2002 and November 2002, after plaintiffs' Amended Complaint was filed, to discuss the 2002 Clean Up. Other newly produced documents suggest that the Audit Committee reviewed the 2002 Clean Up results, including the fact that there were millions in transfers from unapplied cash to Oracle's bad debt reserve, and that tens of millions of dollars were owed to Oracle customers from prior overpayments. Plaintiffs have never had the opportunity to question any witness about these documents because they were previously unaware of their existence. Under any interpretation of Fed. R. Civ. P. 26, plaintiffs are entitled to ask Ellison and Catz about the new 2002 Clean Up documents to determine what they knew.

2. **Defendants' Second Attempt to Alter the Testimony of Jennifer Minton Regarding Her Involvement in the 2002 Clean Up Confirms the Need to Question Ellison and Catz About the New Documents**

The fact that defendants have repeatedly attempted to misrepresent the involvement of Oracle's top management to distance them from what was obviously a cover up underscores and heightens the need to question Ellison and Catz about the new documents. For example, in their opposition to plaintiffs' motion to compel the 2002 Clean Up documents, defendants attempted to alter the deposition testimony of Ms. Minton to make it look like she was aware of what was going on during the 2002 Clean Up. "Minton stated that while she was not involved and did not recall the results, she 'thought it was appropriate for legal to keep [her] *involved*.'" *See* Ex. S at 21 (emphasis

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL ADDITIONAL TIME FOR THE DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ - C-01-0988-MJJ

- 12 -

1    added).  During her first day of deposition, however, Ms. Minton testified, "I was told – I think it

2    was appropriate for legal to keep me *uninvolved* in the investigation."  *See* Ex. T at 175:18-19.

3    After plaintiffs alerted the Special Master to defendants' blatant alteration of Ms. Minton's

4    testimony, defendants quickly sent a letter to Your Honor acknowledging the inaccurate quotation of

5    Ms. Minton's testimony and claiming it was merely an accidental "*typographical error*."  *See* Ex. U

6    (emphasis added) ("Upon reviewing Plaintiffs' reply briefs, we discovered that Defendants'

7    Opposition . . . *contains a typographical error*. . . .  Defendants note that this misquote was

8    accidental.").

9          Shockingly, in defendants' current brief regarding Ellison and Catz, defendants apparently

10   make the same "typographical error" by once again altering Ms. Minton's testimony to change the

11   word "*uninvolved*" to "*involved*."  *See* Defs.' Opp. at 11 n.13 ("Ms. Minton originally testified that

12   while she was not involved and did not recall the results, she 'thought it was appropriate for legal to

13   keep [her] *involved*.").  The fact that defendants have now tried to mislead the Court *twice* about

14   Ms. Minton's deposition testimony confirms that their previous claims of a "typo" are simply not

15   credible.  It also confirms the need for plaintiffs to take testimony from Ellison and Catz to

16   determine what was really going on during the 2002 Clean Up and who was involved.

17   **III.   CONCLUSION**

18         For the foregoing reasons, plaintiffs respectfully request the Court grant their Motion to

19   Compel Additional Time for the Depositions of Larry Ellison and Safra Catz.

20   DATED:  March 7, 2007                           Respectfully submitted,

21                                                    LERACH COUGHLIN STOIA GELLER
22                                                     RUDMAN & ROBBINS LLP
                                                      MARK SOLOMON
23                                                    DOUGLAS R. BRITTON
                                                      VALERIE L. McLAUGHLIN
24                                                    GAVIN M. BOWIE
                                                      STACEY M. KAPLAN
25

26                                                    *Stacy M. Kaplan*
27                                                    STACEY M. KAPLAN

28

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
MONIQUE C. WINKLER
ELI R. GREENSTEIN
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

S:\CasesSD\Oracle3\BRF00039856.doc

**PROOF OF SERVICE BY E-MAIL**

I, KELLY BRENNAN, not a party to the within action, hereby declare that on March 7, 2007, I served the attached **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL ADDITIONAL TIME FOR THE DEPOSITIONS OF LARRY ELLISON AND SAFRA CATZ** on the parties in the within action by e-mail addressed as follows:

**COUNSEL FOR PLAINTIFFS:**

| | | |
|---|---|---|
| Mark Solomon, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SD | marks@lerachlaw.com |
| Douglas Britton, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SD | dougb@lerachlaw.com |
| Valerie McLaughlin, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SD | valeriem@lerachlaw.com |
| Gavin Bowie, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SD | gbowie@lerachlaw.com |
| Shawn Williams, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | shawnw@lerachlaw.com |
| Willow Radcliffe, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | willowr@lerachlaw.com |
| Eli Greenstein, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | elig@lerachlaw.com |
| Monique Winkler, Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP – SF | moniquew@lerachlaw.com |

**COUNSEL FOR DEFENDANTS:**

| | | |
|---|---|---|
| Peter Wald, Esq.* | Latham & Watkins 505 Montgomery Street, Suite 2000 San Francisco, CA 94111 | peter.wald@lw.com |
| Michele Kyrouz, Esq. | Latham & Watkins – SF | michele.kyrouz@lw.com |
| Matthew Harrison, Esq. | Latham & Watkins – SF | matthew.harrison@lw.com |
| Patrick Gibbs, Esq. | Latham & Watkins – Menlo Park | patrick.gibbs@lw.com |
| Brian Glennon, Esq. | Latham & Watkins –LA | brian.glennon@lw.com |
| Jamie Wine, Esq. | Latham & Watkins | jamie.wine@lw.com |

* Denotes service via hand delivery and e-mail

# EXHIBIT 6

Exhibit 6 to the Coyle Declaration in Support of
Defendants' Memorandum Regarding Plaintiffs'
Motion to Compel Testimony and Determine
the Applicability of the Fifth Amendment Right
Against Self-Incrimination

**Remains Sealed** at this Time Per the Request of
Counsel for Matthew Symonds

# EXHIBIT 7

**ORACLE**

LAWRENCE J. ELLISON
*Chief Executive Officer*

Corporate Headquarters
500 Oracle Parkway
M/S 5opCEO
Redwood Shores
California 94065

phone   650.506.5366
fax      650.506.7171

January 10, 2007

**Via Email and First-Class Mail**

Matthew Symonds
16 St Peters Road
Twickenham
TW1 1QX England

Dear Matthew:

I'm writing to request your help in responding to a court order that recently was issued in the *In re Oracle Securities Litigation*. As I'm sure you remember, that case is a class action pending in federal court in San Francisco. Both Oracle and I are defendants.

Plaintiffs have sought very broad discovery, and one of the discovery motions they made concerned any tapes or transcripts of interviews you conducted with me in connection with your research for *Softwar*. We opposed this motion because, quite frankly, we believed those materials were yours, not Oracle's or mine. In a recent order (which my attorneys will send to you), the court disagreed with our view. The court has ruled that I can and must get copies of these materials from you. I've been ordered to produce these materials to plaintiffs next week.

Although I understand that my lawyers will be sending you a more formal letter, I wanted to write to you separately to request that you cooperate with my counsel and forward these materials as quickly as you can. I apologize for any burden or inconvenience that this request creates.

Sincerely,

Larry Ellison

cc:   Peter Wald, Esq.
       Daniel Cooperman, Esq.

CONFIDENTIAL PURSUANT TO
PROTECTIVE ORDER

NDCA-ORCL 1915565

# EXHIBIT 8

Mar-16-07   11:04am   From-LERACH COUGHLIN                    T-935   P.002/003   F-579



**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Stacey M. Kaplan
skaplan@lerachlaw.com

March 16, 2007

<u>VIA FACSIMILE</u>
415-395-8095

Matthew Harrison
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2582

    Re:   *Oracle Securities Litigation*

Dear Matthew:

    I write in response to your letter, received yesterday afternoon, regarding the depositions of Matthew Symonds and Kevin Prendergrast. As counsel for both Mr. Symonds and Mr. Prendergrast have indicated their unavailability to proceed on March 20, 2007, plaintiffs have scheduled both depositions to take place on March 19, 2007. However, as only one examiner has been appointed by the English High Court, it is only possible to proceed with one examination at a time. Accordingly, plaintiffs intend to examine Mr. Symonds beginning at 9:30 a.m. and, depending on Mr. Symonds's testimony, to break from examining Mr. Symonds to examine Mr. Prendergrast, if necessary and for as long as necessary, beginning at 2:00 p.m.. Upon completion of their examination of Mr. Prendergrast, plaintiffs will then resume their examination of Mr. Symonds for as long as necessary.

    Regarding defendants' concern that they have the opportunity to cross-examine Mr. Symonds and Mr. Prendergrast, plaintiffs will make every attempt to extract evidence from these witnesses as expeditiously as possible and will likewise make every effort to accommodate defendants' request for their own examination. However, plaintiffs note that defendants have made no attempt to request their own examination time either from the courts in the United States or from the High Court in England. Plaintiffs and the integrity of the judicial process are the victims of the criminal misconduct of those involved in facilitating the destruction of the evidence and the cover-up and dissembling that occurred after the destruction. Especially in light of defendants' failure to cooperate in providing plaintiffs with



March 16, 2007
Page 2

information regarding the materials and their destruction, plaintiffs must utilize the time granted to us by the courts to ensure that we discover the evidence to which we are entitled.

If you have any questions, please do not hesitate to contact me.

Sincerely,

*Stacey M. Kaplan*

STACEY M. KAPLAN

S:\CasesSD\Oracle3\Corres\Harrison 031607_SMK.doc

Mar-16-07   11:04am   From-LERACH CO⋯⋯                                      T-835   P.001/003   F-579



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

# FACSIMILE

|  | | **Fax No.** | **Telephone No.** |
|---|---|---|---|
| **To:** | Matthew Harrison | 415-395-8095 | |
| **cc:** | | | |

| **From:** | Stacey Kaplan | **Date:** | March 16, 2007 |
|---|---|---|---|
| **Case Code:** | 201064-00001 | **Time:** | |
| **Subject:** | Oracle 3 | | |

## Message/Document(s) faxed:

See attached

### Please call fax operator at 619-231-1058 if all pages are not received.

ORIGINAL DOCUMENTS: Will follow by ☐ mail ☐ courier – OR – ☒ Will not follow unless requested.

**CONFIDENTIALITY NOTE:** This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

### Number of pages being transmitted including the cover page: _____

FAX OPERATOR: Return originals to:                                          Ext:

655 West Broadway, Suite 1900 • San Diego, California 92101-3301 • 619.231.1058 • Fax 619.231.7423 • www.lerachlaw.com