1 | COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
2 | MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
3 | STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
4 | San Diego, CA 92101
Telephone: 619/231-1058
5 | 619/231-7423 (fax)
marks@csgrr.com
6 | dougb@csgrr.com
skaplan@csgrr.com
7 | – and –
SHAWN A. WILLIAMS (213113)
8 | WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
9 | ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
10 | 100 Pine Street, Suite 2600
San Francisco, CA 94111
11 | Telephone: 415/288-4545
415/288-4534 (fax)
12 | shawnw@csgrr.com
willowr@csgrr.com
13 | moniquew@csgrr.com
elig@csgrr.com
14 | dpfefferbaum@csgrr.com

15 | Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL TESTIMONY AND DETERMINE THE APPLICABILITY OF THE FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION TO FOREIGN CITIZEN AND NON-U.S. RESIDENT MATTHEW SYMONDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |

18

19

20

21

22

23 | **PREVIOUSLY FILED ON**
**MARCH 30, 2007**
24 | **DOCKET NO. 752**
**REDACTED VERSION**
25 |

DATE:           May 1, 2007
TIME:           9:30 a.m.
COURTROOM:      The Honorable
                Martin J. Jenkins

26

27

28

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................................1

II.     SUMMARY OF MR. SYMONDS' INVOLVEMENT IN THIS CASE ............................4

        A.      Mr. Symonds' Sworn Declaration Submitted to This Court ...................................5

        B.      Mr. Symonds' Representations Concerning the Destruction of Softwar
                Evidence.................................................................................................................6

        C.      Mr. Symonds' Deposition and Sudden Invocation of the Fifth Amendment .........7

III.    LEGAL ARGUMENT.........................................................................................9

        A.      Mr. Symonds' Attempted Invocation of the Fifth Amendment Was
                Improper..................................................................................................................9

                1.      Mr. Symonds Is a Foreign Citizen and Non-U.S. Resident Alien
                        and Therefore Is Not Entitled to Invoke the Fifth Amendment
                        Protection Against Self-Incrimination ...........................................................9

                2.      Even Assuming *Arguendo* that Mr. Symonds Has the Right to
                        Invoke the Fifth Amendment He Has Not Demonstrated a Real
                        Danger that His Testimony in the U.K. Would Tend to Incriminate
                        Him and Therefore the Privilege Does Not Attach.....................................12

                3.      Mr. Symonds Has Waived Any Right to Invoke the Fifth
                        Amendment by Submitting Sworn Testimony, Producing
                        Documents, and Making Representations Regarding *Softwar* to
                        This Court and the Parties in This Case.........................................................14

                        a.      The November 9, 2006 Sworn Declaration and Subsequent
                                Deposition Testimony Constitute Waiver........................................16

                        b.      Mr. Symonds' Letters, Correspondence and
                                Representations to Defendants' Counsel and Larry Ellison
                                Constitute Waiver ...........................................................................17

                        c.      Mr. Symonds' Production of Documents in Response to
                                Discovery Requests in This Case Constitute Waiver ....................20

        B.      Mr. Symonds' Attempted Invocation of the "Reporter's Privilege" Under
                the First Amendment Was Not Proper.....................................................................20

IV.     CONCLUSION.................................................................................................22

1

**TABLE OF AUTHORITIES**

2

Page

3  *Aldridge Elec. Inc. v. Fid. & Deposit Co.*,
     No. 04 C 4021, 2006 U.S. Dist. LEXIS 62149
4     (N.D. Ill. Aug. 31, 2006).........................................................................................................17

5  *Alvarez-Machain v. United States, No. CV 93-4072 JGD (JHx)*,
     1994 U.S. Dist. LEXIS 21702
6     (C.D. Cal. Jan. 20, 1995) ........................................................................................................10

7  *Barrera-Echavarria v. Rison*,
     44 F.3d 1441 (9th Cir. 1995) ...................................................................................................10
8
   *Bear Sterns & Co., Inc. v. Wyler*,
9     182 F. Supp. 2d 679 (N.D. Ill. 2002) ......................................................................................13

10 *Boumediene v. Bush*,
     476 F.3d 98, 2007 U.S. App. LEXIS 3682
11    (D.C.C. Feb. 27, 2007)...........................................................................................3, 10, 11, 14

12 *Brown v. Walker*,
     161 U.S. 591 (1896)................................................................................................................12
13
   *Chavez v. Martinez*,
14    538 U.S. 760 (2003)................................................................................................................12

15 *Crowe v. County of San Diego*,
     303 F. Supp. 2d 1050 (S.D. Cal. 2004)...................................................................................14
16
   *Gherebi v. Bush*,
17    374 F.3d 727 (9th Cir. 2004) ...................................................................................................10

18 *Hicks v. Bush*,
     No. 02-299 (CKK), 2007 U.S. Dist. LEXIS 20774
19    (D.D.C. Mar. 23, 2007)..............................................................................................................3

20 *IBM Corp. v. Brown*,
     857 F. Supp. 1384 (C.D. Cal. 1994) .......................................................................................15
21
   *In re Estate of Marcos, Human Rights Litig.*,
22    25 F.3d 1467 (9th Cir. 1994) ...................................................................................................10

23 *In re Grand Jury Subpoenas (Fainaru-Wada)*,
     438 F. Supp. 2d 1111 (N. D. Cal. 2006) .............................................................................21, 22
24
   *In re Iraq & Afghanistan Detainees Litigation*,
25    Misc. No. 06-0145 (TFH), 2007 U.S. Dist. LEXIS 21853
     (D.D.C. Mar. 27, 2007)........................................................................................................3, 11
26
   *Johnson v. Eisentrager*,
27    339 U.S. 763 (1950).......................................................................................................2, 9, 10, 11

28

**Page**

*Klein v. Harris*,
    667 F.2d 274 (2d Cir. 1981)....................................................................................15, 16, 17

*Nutramax Labs., Inc. v. Twin Labs., Inc.*,
    32 F. Supp. 2d 331 (D. Md. 1999) ...................................................................................15

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
    262 F. Supp. 2d 302 (S.D.N.Y. 2003)....................................................................15, 16, 19

*Rogers v. United States*,
    340 U.S. 367 (1951)....................................................................................................12, 15

*Shoen v. Shoen*,
    48 F.3d 412 (9th Cir. 1995) .......................................................................................21, 22

*Tan v. Reno, No. C 99-4000 MJJ*,
    1999 U.S. Dist. LEXIS 16603 (N.D. Cal. Oct. 15, 1999)....................................................12

*United States ex rel. Turner v. Williams*,
    194 U.S. 279 (1904)........................................................................................................20

*United States v. Anderson*,
    79 F.3d 1522 (9th Cir. 1996) .........................................................................14, 16, 17, 20

*United States v. Black*,
    469 F. Supp. 2d 513, Case No. 05 ...................................................................................14

*United States v. Raven*,
    103 F. Supp. 2d 38 (D. Mass. 2000) ...............................................................................13

*United States v. Unruh*,
    855 F.2d 1363 (9th Cir. 1987) .......................................................................................14

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990).............................................................................2, 4, 6, 7, 9, 13, 21

*Universal Trading & Inv. Co. v. Kiritchenko*,
    No. C-99-3073 MMC (EDL), 2006 U.S. Dist. LEXIS 94550, at *11
    (N.D. Cal. Dec. 22, 2006) ...............................................................................................16

*Zadvydas v. Davis*,
    533 U.S. 678 (2001).........................................................................................................9

*Zicarelli v. New Jersey State Comm'n of Investigation*,
    406 U.S. 472 (1972)........................................................................................................12

**STATUTES, RULES AND REGULATIONS**

18 U.S.C.
    §1512(c)(1) ..........................................................................................................12, 13, 14

1

2                                                                                              **Page**

3
    Federal Rules of Civil Procedure
4       Rule 37(a)...........................................................................................................................1

5   United States Constitution
        Amendment V, Clause 2 .................................................................................................12
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2 PLEASE TAKE NOTICE that on May 1, 2007, at 9:30 a.m. before the Honorable Martin J.
3 Jenkins, plaintiffs will and hereby do move this Court for an order compelling testimony and
4 determining the applicability of the First and Fifth Amendments to the U.S. Constitution to foreign
5 citizen and non-U.S. resident Matthew Symonds. This motion is brought pursuant to Fed. R. Civ. P.
6 37(a) and Civil L.R. 37. The parties have fulfilled their obligation to meet and confer in compliance
7 with Civil L.R. 37-1(b). This motion is based on this notice of motion, the memorandum of points
8 and authorities, the Declaration of Mark Solomon ("Solomon Decl."), the pleadings and other
9 documents contained in the record and any other evidence that is submitted before or during the
10 hearing on this matter.

11 **MEMORANDUM OF POINTS AND AUTHORITIES**

12 **I. INTRODUCTION**

13 This motion raises the issue of whether a foreign citizen and non-U.S. resident is entitled to
14 invoke the Fifth Amendment right to self-incrimination to the U.S. Constitution, and the purported
15 "reporter's privilege," in connection with deposition testimony related to evidence destruction in this
16 case.

17 On March 19 and 20, 2007, plaintiffs attempted to depose third party Matthew Symonds, the
18 author of the published book "*Softwar*: An Intimate Portrait of Larry Ellison and Oracle." This
19 deposition took place in London, England, pursuant to a Request for International Judicial
20 Assistance issued by Judge Spero and Special Master Infante. The primary purpose of the
21 deposition was to inquire about the existence and whereabouts of numerous audio/digital tapes and
22 transcripts relating to Mr. Symonds' contemporaneous interviews with defendant Larry Ellison
23 during (and after) the relevant time period in this litigation (the "Softwar Evidence"). The Softwar
24 Evidence was deemed relevant and ordered produced by Special Master Infante on January 2, 2007,
25 in response to a motion to compel brought by plaintiffs. Solomon Decl., Ex. A at 1 ("The book, co-
26 authored by Mr. Ellison is clearly relevant to the issues identified in the Discovery Plan.").

27 Subsequent to the Special Master's January 2, 2007 order, plaintiffs learned from defendants
28 that "some time *after* becoming aware of plaintiffs' motion to compel [the Softwar Evidence]," Mr.

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ                    - 1 -

1 Symonds participated in the destruction of Softwar Evidence and then fabricated an unbelievable
2 story about how, when and why the materials were destroyed. Solomon Decl., Ex. G. Later,
3 according to defendants, Mr. Symonds retracted his story, and admitted that his representations were
4 "false." *Id.* Plaintiffs also learned that Mr. Symonds had extensive discussions with counsel for
5 defendants about the details of the document destruction, and engaged in secret communications
6 with defendant Larry Ellison about the Sofwar Evidence.

7 Mr. Symonds is now attempting to invoke the Fifth Amendment to shield from discovery the
8 facts about the crucial Softwar Evidence and the unprivileged communications with Oracle
9 Corporation's ("Oracle") counsel and defendant Ellison. Acknowledging that the laws of his
10 resident country (United Kingdom) provide no similar right against self-incrimination, Mr. Symonds
11 now seeks the protection of U.S. constitutional rights of which he is not entitled, for the specific
12 purpose of preventing plaintiffs from discovering when, how and why highly relevant evidence
13 ordered by Special Master Infante was destroyed, and what Mr. Symonds knows about the
14 substantive facts in this case.

15 Mr. Symonds' attempt to invoke the Fifth Amendment must fail for several reasons. First,
16 under a legion of U.S. Supreme Court authority, Mr. Symonds is not entitled to rights under the Fifth
17 Amendment because he is a foreign citizen of a sovereign country, residing on foreign soil, with no
18 presence whatsoever in the United States. *Johnson v. Eisentrager*, 339 U.S. 763, 783-85 (1950)
19 (rejecting claim that foreign non-resident aliens outside the territory of the U.S. are entitled to Fifth
20 Amendment rights); *accord United States v. Verdugo-Urquidez*, 494 U.S. 259, 266 (1990) (holding
21 that foreign citizen and non-U.S. resident aliens are not entitled to Fourth Amendment protection).
22 With respect to the Fifth Amendment, the Supreme Court has "rejected the claim that aliens are
23 entitled to Fifth Amendment rights outside the sovereign territory of the United States." *Verdugo-*
24 *Urquidez*, 494 U.S. at 269. That rejection has been characterized by the Supreme Court as
25 "emphatic." *Id.*

26 Notably, just in the past month, in three cases receiving national attention involving rights of
27 detainees held at Guantanamo Bay Naval Base in Cuba and various prisons in Iraq and Afghanistan,
28 courts have confirmed the well-settled rule of law that foreign citizen non-resident aliens outside the

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ                  - 2 -

1  territorial and sovereign control of the U.S. are not entitled to invoke the protections of the U.S.
2  Constitution. *Boumediene v. Bush*, 476 F.3d 98, No. 05-5062, 2007 U.S. App. LEXIS 3682, at *26
3  (D.C.C. Feb. 27, 2007) ("Precedent in this court and the Supreme Court holds that the Constitution
4  does not confer rights on aliens without property or presence within the United States."); *accord*
5  *Hicks v. Bush*, No. 02-299 (CKK), 2007 U.S. Dist. LEXIS 20774, at *18 (D.D.C. Mar. 23, 2007); *In*
6  *re Iraq & Afghanistan Detainees Litigation*, Misc. No. 06-0145 (TFH), 2007 U.S. Dist. LEXIS
7  21853, at *31 (D.D.C. Mar. 27, 2007) ("[A]t the very least, it is considered settled law that
8  nonresident aliens must be within the sovereign territory of the United States to stake any claim to
9  the rights secured by the Fifth Amendment."). Accordingly, Mr. Symonds has no right to invoke the
10 Fifth Amendment.[1]

11       Second, even if Mr. Symonds theoretically has the right to invoke the Fifth Amendment, he
12 still must be compelled to testify because he waived any protections by previously signing a sworn
13 written declaration to this Court, drafted for him by defendants, regarding the Softwar Evidence.
14 Mr. Symonds also briefly testified about the declaration during the March 19-20, 2007 deposition,
15 but then abruptly refused to provide any details surrounding the declaration when pressed by
16 plaintiffs' counsel. Furthermore, Mr. Symonds made numerous representations to defendants which
17 have been incorporated into sworn filings submitted to this Court. He also wrote letters and engaged
18 in extensive discussions with defendants' counsel and Larry Ellison about the Softwar Evidence,
19 without allowing plaintiffs to test the substance or veracity of his or defendants' representations.

20       Notably, Mr. Symonds also produced a limited number of transcripts of his interviews with
21 defendant Ellison which contain the same subject matter that Mr. Symonds is now refusing to testify
22 about. Mr. Symonds' selective testimony and responses to discovery have created a distorted
23 version of the truth regarding Mr. Ellison's statements during the Class Period (December 14, 2000
24 through March 1, 2001) and Mr. Symonds' and Oracle's role in the document destruction. Any

25 ──────────
26 [1] Mr. Symonds also refused to answer several questions based on the "reporter's privilege" purportedly grounded in the First Amendment. As plaintiffs will demonstrate, *infra*, however, Mr. Symonds' invocation of the First Amendment and any purported "reporter's privilege" is equally meritless.
27
28

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ          - 3 -

1 hypothetical right to the Fifth Amendment has been waived by Mr. Symonds' previous conduct and
2 testimonial evidence.

3        Finally, even if Mr. Symonds had the right to invoke the Fifth Amendment, and even
4 assuming that right was not waived by his prior sworn testimonial evidence and production of
5 documents, the privilege of self-incrimination does not attach because Mr. Symonds has not
6 established that there is any real danger that his testimony would incriminate him in a U.S.
7 proceeding. *Verdugo-Urquidez*, 494 U.S. at 264 ("The privilege against self-incrimination
8 guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. . . .
9 Although conduct by law enforcement officials prior to trail may ultimately impair [the Fifth
10 Amendment right], a constitutional violation occurs only at trial."). Here, Mr. Symonds is not the
11 subject of a U.S. criminal proceeding or investigation and there are no facts to suggest that there is
12 any real danger of incrimination at trial.

13        All of the parties, including Mr. Symonds, and the Court Examiner appointed by the Royal
14 Courts of Justice in the U.K., have agreed that it is necessary and proper for this Court to decide the
15 Constitutional issues raised by Mr. Symonds. The Court Examiner in the U.K. has expressly
16 adjourned Mr. Symonds' deposition until he obtains guidance and a ruling from this Court.
17 Accordingly, plaintiffs seek an order compelling Mr. Symonds to testify based on the inapplicability
18 of the First and Fifth Amendments. In the alternative, plaintiffs seek an order ruling on the U.S.
19 Constitutional issues and issuing a Request for International Judicial Assistance to the Royal Courts
20 of Justice in the U.K. to require Mr. Symonds' testimony based upon the findings of this Court.

21 **II.**      **SUMMARY OF MR. SYMONDS' INVOLVEMENT IN THIS CASE**

22        The troubling details surrounding Mr. Symonds' participation in the destruction of Softwar
23 Evidence have been set forth in several court filings, including the parties' briefing in connection
24 with Defendants' Motion to Reverse the Special Master's January 2, 2007 Order Granting Plaintiffs'
25 Motion to Compel Evidence Relating to Softwar, which will be heard on April 3, 2007. For
26 purposes of this motion, plaintiffs will summarize only the facts pertinent to the U.S. Constitutional
27 issues.

28

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ     - 4 -

1

## A. Mr. Symonds' Sworn Declaration Submitted to This Court

2    On October 30, 2006, plaintiffs filed a Motion to Compel Evidence Pertaining to the Book

3 Softwar. Plaintiffs' motion was based on the fact that just weeks earlier defendants produced, for the

4 first time, documents relating to Softwar that alerted plaintiffs to their right to the production of the

5 Softwar Evidence. The documents produced by defendants included a draft of the contract between

6 Mr. Symonds and Mr. Ellison that clearly demonstrated Mr. Ellison's control and ownership of the

7 tapes and transcripts relating to over 100 hours of interviews conducted in connection with Softwar.

8    On November 13, 2006, defendants opposed plaintiffs' motion. Solomon Decl., Ex. B.

9 Attached to defendants' opposition was a sworn declaration from Mr. Symonds containing specific

10 representations regarding the Softwar Evidence and defendant Larry Ellison's purported

11 involvement in the circumstances surrounding the Softwar Evidence (the "Symonds Declaration").

12 Solomon Decl., Ex. C. Specifically, the Symonds Declaration stated as follows:

13            I, Matthew Symonds, declare as follows:

14            1.    I am the author of the book *SOFTWAR: An Intimate Portrait of Larry
             *Ellison and Oracle* ("SOFTWAR"), featuring commentary by Larry Ellison, which
15            was released by Simon & Schuster in 2003.

16            2.    Mr. Ellison did not provide me with any transcripts, notes, working
             papers, tapes or other materials in connection with the book, and therefore at the
17            conclusion of my work on SOFTWAR, I did not return any such materials to Mr.
             Ellison. I believe Mr. Ellison may have provided personal photographs for use in the
18            book, but the photographs were provided directly to the publisher, not to me. To my
             knowledge, those photographs are the only preexisting materials that Mr. Ellison
19            provided in connection with the book. I did receive from Oracle some of its past
             annual reports, which I believe are still in my possession. However, these are
20            documents which were and remain in the public domain.

21            3.    The materials that I created in the course of researching and writing
             SOFTWAR, including any interview notes, transcripts or digital recording files, are
22            my sole property, to which neither Mr. Ellison nor anyone else has any right of
             access. I have never provided Mr. Ellison with access to or copies of any interview
23            notes, transcripts or digital recording files that I created in the course of researching
             and writing SOFTWAR.

24
             I hereby declare under penalty of perjury under the laws of the United States
25            that the foregoing is true and correct and that this declaration was executed on
             November 9th, 2006 in London, England.
26

27

28

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ                    - 5 -

1  *Id.* Despite the Symonds Declaration, Special Master Infante ultimately found that defendant Ellison

2  had legal custody and control of the Softwar Evidence and granted plaintiffs' motion to compel.

3  Solomon Decl., Ex. A.

**B.    Mr. Symonds' Representations Concerning the Destruction of Softwar Evidence**

Following the January 2, 2007 order requiring defendants to produce the Sofwar Evidence,

and perhaps foreshadowing their knowledge of the document destruction, defendants represented to

plaintiffs that they had not yet decided whether their position would be that the Softwar Evidence no

longer existed, or that Mr. Symonds refused to turn them over. Solomon Decl., Ex. D.

On January 11, 2007, plaintiffs received a letter from defendants conveying the disturbing

news that most of the Softwar Evidence had been destroyed. Solomon Decl., Ex. E. Defendants

represented, based on purported discussions with Mr. Symonds, that the laptop computer on which

the Softwar Evidence resided had been attacked by a "virus" and that Mr. Symonds had taken the

computer to an undisclosed computer "repair shop." *Id.* According to defendants, Mr. Symonds

stated that because the repair shop told him that it would cost more to fix the computer than it would

to purchase a new computer, Mr. Symonds opted to not fix the computer and "instructed the repair

shop to dispose of the computer." *Id.*

1

2

3    On February 22, 2007, after plaintiffs began the expensive and time consuming process of

4 issuing international discovery to Mr. Symonds, defendants sent plaintiffs another letter revealing

5 that the initial story told by Mr. Symonds involving the "computer virus" and the "repair shop" was

6 "*false*." Solomon Decl., Ex. G. The letter stated the following in pertinent part:

7    *Mr. Symonds informed us today that, contrary to what he previously told us, he did
     not try to have the laptop computer repaired; he was never told the laptop had a*
8    *computer virus; he was never told that the data files on the computer were
     inaccessible; and he did not instruct a repair shop to dispose of the laptop.* Mr.
9    Symonds now claims that, some time after becoming aware of Plaintiffs' motion to
     compel production of materials related to Softwar, he attempted to use the laptop on
10   which the recordings and transcripts were stored, and, because it was not performing
     properly, he disposed of the computer himself by dropping it off at a facility for the
11   "ecological" disposal of computers and similar items. (He did not identify the
     facility.)

12
     *Id.*

13
                 C.    **Mr. Symonds' Deposition and Sudden Invocation of the Fifth**
14                     **Amendment**

15   Pursuant to the request and recommendation of Judge Spero and Special Master Infante, the

16 Royal Courts of Justice in the U.K. ordered that Mr. Symonds' deposition take place on March 12,

17 2007 in London. Solomon Decl., Ex. H. Following the issuance of the order, plaintiffs engaged in

18 several meet and confers with counsel for Mr. Symonds to discuss the details of the deposition.

19 Pursuant to a request from Mr. Symonds, plaintiffs agreed to postpone the deposition to March 19,

20 2007, and to provide Mr. Symonds with the categories and lines of questioning to be used at the

21 deposition. Counsel for plaintiffs and Mr. Symonds agreed to remove several lines of questioning to

22 avoid further delay and litigation over the scope of the deposition. Solomon Decl., Ex. I.

23   On March 19, 2007, the deposition commenced. After being sworn in and testifying that his

24 name was "Matthew John Symonds," counsel for Mr. Symonds stated on the record that "*On the*

25 *advice of counsel, Mr. Symonds will not be answering any further questions. He will be asserting*

26

27   ² Here, as elsewhere, all emphasis is added unless otherwise noted.

28

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ          - 7 -

1 *the privilege not to answer, pursuant to the Fifth Amendment to the U.S. Constitution.*" Solomon
2 Decl., Ex. J at 3[3]. Counsel for Symonds also stated on the record that "[t]here is no right to self-
3 incrimination under English law in respect of potential foreign criminal proceedings." *Id.* at 4.
4 Counsel for Mr. Symonds claimed that he was not told about Mr. Symonds' Fifth Amendment plea
5 until the morning of the deposition on March 19, 2007. *Id.*

6 After a lengthy discussion by the parties and the Court Examiner on the record, it was agreed
7 that the deposition would be adjourned until the morning of March 20, 2007 so that the parties could
8 assess their positions. *Id.* at 48-57. On March 20, 2007, the deposition reconvened. Solomon Decl.,
9 Ex. K. The parties agreed, with the endorsement of the Special Examiner, that plaintiffs would
10 commence specific questioning and to the extent Mr. Symonds believed he was entitled to the Fifth
11 Amendment, he could assert it in response to each question. *Id.* at 5-6. Taking the position that
12 touching upon the subject matter of his writings about defendant Ellison and his communications
13 with Ellison and his lawyers would risk incriminating him, Mr. Symonds refused to testify and
14 asserted the Fifth Amendment to all except two questions. *Id.* at 10-11.

15 At the end of the March 20, 2007 deposition, the parties and Mr. Symonds agreed, and the
16 Special Examiner endorsed, that the most expeditious way to determine whether Mr. Symonds'
17 invocation of U.S. Constitutional rights was proper was to submit the issue to this Court for
18 resolution. *See id.* at 6-7 ("[Counsel for Mr. Symonds]: It seems eminently sensible that the matter
19 should be determined by the U.S. Courts and there is an agreed schedule of filings of briefs and a
20 hearing [if] the judge is available."). [4]

21

22

23 [3] Due to formatting irregularities in the transcripts of the Symonds' deposition, there are two
24 sets of page references. All citations are to the references with the term "Page" preceding the page number.

25 [4] As the Court Examiner in England recognized, English law contemplates that a deposition
26 may be adjourned until the parties obtain a ruling on the privilege issues from U.S. courts. *See*
§3(1)(b) of the Evidence (Proceedings in Other Jurisdictions) Act 1975 (allowing foreign courts to
27 decide issues pertaining to privilege related to requests made to English Courts under the Hague
Convention). Solomon Decl., Ex. J at 6-8.

28

1           Accordingly, Mr. Symonds' counsel has agreed to consent to jurisdiction in this Court for the

2 limited purpose of determining whether U.S. Constitutional rights apply and whether Mr. Symonds

3 should be compelled to testify. Ex. K at 47 ("[Counsel for Mr. Symonds]: "That schedule is agreed.

4 It is understood that the proposal is that the reference to the U.S. court should go ***straight to Judge***

5 ***Jenkins*** in the U.S. District Court, Northern District of California."); *see also* Solomon Decl., Ex.

6 M.[5]

7 **III.**    **LEGAL ARGUMENT**

8         **A.**    **Mr. Symonds' Attempted Invocation of the Fifth Amendment Was Improper**

9

10                **1.**    **Mr. Symonds Is a Foreign Citizen and Non-U.S. Resident Alien and Therefore Is Not Entitled to Invoke the Fifth Amendment Protection Against Self-Incrimination**

11

12           "It is well established that certain constitutional protections available to persons inside the

United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533

13

14 U.S. 678, 693 (2001). In particular, the Supreme Court has concluded that neither the Fourth nor

Fifth Amendments obtain with respect to foreign non-resident aliens abroad. *Eisentrager*, 339 U.S.

15

16 at 783-85 (rejecting claim that Fifth Amendment applies to non-resident aliens outside the U.S.);

*accord Verdugo-Urquidez*, 494 U.S. at 266 (rejecting claim that Fourth Amendment applies to non-

17

18 resident aliens outside the U.S.). With respect to the Fifth Amendment, the Supreme Court has

"rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory

19

20 of the United States." *Verdugo-Urquidez*, 494 U.S. at 269. That rejection has been characterized by

the Supreme Court as "emphatic." *Id*.

21

22         Such extraterritorial application of organic law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. Not one word can be cited.

23         No decision of this Court supports such a view. . . . None of the learned

24

25 [5]     Additionally, plaintiffs are seeking to compel the production of documents relating to the

26 Softwar Evidence, to the extent they still exist. Those documents were ordered produced by both Special Master Infante and the English judicial authorities. Both defendants and Mr. Symonds have

27 represented that no remaining documents relating to the Softwar Evidence exist. However, to the extent the documents exist, plaintiffs are entitled to them as well.

28

commentators on our Constitution has even hinted at it. The practice of every modern government is opposed to it.

*Eisentrager*, 339 U.S at 784-85.

For its part, the Ninth Circuit has acknowledged the Constitutional principles adopted by the Supreme Court in *Eisentrager* and *Verdugo-Urquidez*. *See Gherebi v. Bush*, 374 F.3d 727, 732 n.8. (9th Cir. 2004) ("Certainly, the government construes [*Eisentrager*] as foreclosing the right of enemy aliens to file habeas petitions in cases in which there is no relevant connection with U.S. territorial jurisdiction or sovereignty, as the case may be. We accept that construction for purposes of this appeal. We also believe it to be the most reasonable construction of the Court's decision."); *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (*en banc*) ("Noncitizens who are outside United States territories enjoy very limited protections under the United States Constitution."); *In re Estate of Marcos, Human Rights Litig.*, 25 F.3d 1467, 1476 n.12 (9th Cir. 1994) (recognizing that "the Constitution itself does not apply to aliens whose claims arise outside the United States"); *accord Alvarez-Machain v. United States*, No. CV 93-4072 JGD (JHx), 1994 U.S. Dist. LEXIS 21702, at *34 (C.D. Cal. Jan. 20, 1995) ("A Ninth Circuit panel, albeit in passing, has read *Verdugo-Urquidez* [sic] for the broad proposition that 'the Constitution itself does not apply to aliens whose claims arise outside the United States.'").

Recently, the U.S. Court of Appeals for the D.C. Circuit cited the long history of Supreme Court precedent in acknowledging that non-resident aliens outside the sovereign territory of the U.S. are not entitled to rights under the U.S. Constitution. *Boumediene*, 2007 U.S. App. LEXIS 3682, at *26 ("Precedent in this court and the Supreme Court holds that the Constitution does not confer rights on aliens without property or presence within the United States."); *accord Hicks*, 2007 U.S. Dist. LEXIS 20774, at *18 ("[T]o the extent that Petitioner argues that he has a constitutionally protected right to seek a writ of habeas corpus, . . . *Boumediene* forecloses that argument by holding that Guantanamo Bay detainees – aliens without property or presence in this country – have no constitutional rights.").

Just three days ago, Chief Judge Thomas F. Hogan of the District Court of D.C. held that U.S. Constitutional rights do not attach to non-resident aliens even in the most "lamentable" cases:

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ                    - 10 -

> No matter how appealing it might be to infer a [common law] remedy to vindicate injuries caused by federal officials committing abuses as severe as those alleged here, which otherwise might not be fully redressed, *the reality is that several controlling cases compel the inescapable conclusion that the plaintiffs in this case are not entitled to such a cause of action because the Fifth and Eighth Amendments do not apply to them* . . . .

*Iraq & Afghanistan Detainees Litig.*, 2007 U.S. Dist. LEXIS 21853, at \*23 (citing *Eisentrager*, 339 U.S. 763; *Verdugo-Urquidez*, 494 U.S. 259; *Zadvydas v. Davis*, 533 U.S. 678; *Boumediene*, 476 F.3d 981); *see also Iraq & Afghanistan Detainees Litig.*, 2007 U.S. Dist. LEXIS 21853, at \*31 (*"[A]t the very least, it is considered settled law that nonresident aliens must be within the sovereign territory of the United States to stake any claim to the rights secured by the Fifth Amendment."*).

Here, it is clear that Mr. Symonds is not entitled to the Fifth Amendment right against self-incrimination. Mr. Symonds has not demonstrated any "property or presence" whatsoever in the U.S. Mr. Symonds is a foreign citizen and resident of the U.K. sitting before a deposition in London, England. The United States has neither territorial nor sovereign control over the U.K. or its citizenry.

Indeed, Mr. Symonds' lack of presence in the U.S. is confirmed by the fact that plaintiffs were forced to utilize international discovery procedures established by the Hague Convention just to secure Mr. Symonds' deposition in the U.K. Plaintiffs sought a Request for International Judicial Assistance from Judge Spero and Judge Infante merely to initiate the discovery process in the U.K. Solomon Decl., Ex. M. The deposition proceeding was conducted by a Court Examiner appointed by the Royal Courts of Justice in England, and Mr. Symonds attempted to invoke U.S. Constitutional rights on British soil.

Surely, in light of the recent decisions in *Boumediene*, *Hicks*, and *Iraq & Afghanistan Detainees Litig.*, all of which involved litigants under the physical custody and control of the U.S., and the latter of which involved "horrifying torture allegations," Mr. Symonds cannot be entitled to invoke U.S. Constitutional rights that were not afforded to other non-resident aliens.

1

2

3

> **2. Even Assuming *Arguendo* that Mr. Symonds Has the Right to Invoke the Fifth Amendment He Has Not Demonstrated a Real Danger that His Testimony in the U.K. Would Tend to Incriminate Him and Therefore the Privilege Does Not Attach**

4

The Self-Incrimination Clause of the Fifth Amendment provides that: "no person . . . shall be

5

compelled in any criminal case to be a witness against himself." U.S. Const. amend. V, cl. 2.

6

To assert this privilege against self-incrimination, witnesses' fear of conviction on the basis

7

of his/her testimony must be reasonable, real, and appreciable. *See Brown v. Walker*, 161 U.S. 591,

8

599 (1896); *Rogers v. United States*, 340 U.S. 367, 374 (1951). The witness must face a "real

9

danger" of conviction to invoke the privilege because the privilege does not protect against "remote

10

and speculative possibilities." *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472,

11

478 (1972); *see also, e.g., Tan v. Reno*, No. C 99-4000 MJJ, 1999 U.S. Dist. LEXIS 16603 (N.D.

12

Cal. Oct. 15, 1999) (Jenkins, M.) (finding that foreign national was not entitled to Fifth Amendment

13

privilege against self-incrimination for failure to establish "real danger" that testimony would be

14

criminating). "Even for persons who have a legitimate fear that their statements may subject them to

15

criminal prosecution, we have long permitted the compulsion of incriminating testimony so long as

16

those statements (or evidence derived from those statements) cannot be used against the speaker in

17

any criminal case." *Chavez v. Martinez*, 538 U.S. 760, 768 (2003).

18

During the March 19, 2007 deposition, counsel for Mr. Symonds suggested that the right to

19

invoke the Fifth Amendment arises from the possibility that Mr. Symonds' testimony may tend to

20

incriminate him under 18 U.S.C. 1512 (c)(1). Solomon Decl., Ex. J at 16-19. That section provides

21

that whoever "corruptly . . . alters, destroys, mutilates, or conceals a record, document or other

22

object, or attempts to do so with the intent to impair the object's integrity or availability for use in an

23

official proceeding" has committed a crime. 18 U.S.C. 1512(c)(1). Mr. Symonds' counsel stated on

24

the record that "the question would be whether the claim to privilege related to anticipated foreign or

25

domestic criminal proceedings, and I have to accept that the claim to privilege in this case would

26

relate to the possibility of foreign criminal proceedings." Solomon Decl., Ex. J at 16-19.

27

Importantly, Mr. Symonds has not set forth any facts that demonstrate that his testimony

28

related to the Softwar Evidence would reveal that he "corruptly" committed criminal acts in

1 │ connection with an "official proceeding." 18 U.S.C. 1512(c). Nor has Mr. Symonds demonstrated
2 │ that the statute necessarily implicates civil discovery proceedings unconnected to any criminal
3 │ investigation or regulatory inquiry which Mr. Symonds contemplated at the time of his invocation.
4 │ In short, the distorted record created by Mr. Symonds' selective representations and testimony do not
5 │ provide a sufficient danger that he would be charged or tried by the government under 18 U.S.C.
6 │ 1512(c) for his conduct in a civil discovery proceeding.

7 │       Speculation that testimony might lead to the imaginary possibility of incrimination in foreign
8 │ proceedings does not suffice to trigger Fifth Amendment rights for foreign nationals, even if the
9 │ party attempting to invoke the privilege is a criminal defendant. *See Bear Sterns & Co., Inc. v.*
10 │ *Wyler*, 182 F. Supp. 2d 679, 680-81 (N.D. Ill. 2002) (rejecting claim that foreign national and
11 │ defendant in U.S. criminal proceeding is entitled to Fifth Amendment protection due to failure to
12 │ demonstrate that Fifth Amendment applied and that responding to discovery would be
13 │ incriminating).[6] Further, even if Mr. Symonds could demonstrate that he was subject of an ongoing
14 │ criminal proceeding or investigation in the U.S. (he cannot), he still could not invoke the Fifth
15 │ Amendment. *See United States v. Raven*, 103 F. Supp. 2d 38, 39-40 (D. Mass. 2000) (rejecting
16 │ claim that Dutch national residing abroad was entitled to Fifth and Sixth Amendment rights despite
17 │ being indicted and charged by a U.S. grand jury) ("When the questioning takes place overseas . . .
18 │ foreign nationals do not benefit from the protections of the United States Constitution.").

19 │       Here, Mr. Symonds has not demonstrated that his testimony in the U.K. would tend to
20 │ incriminate him. Mr. Symonds is not a defendant in this case nor is he the subject of a U.S. criminal
21 │ investigation. Plaintiffs are seeking discovery in a civil proceeding regarding evidence and conduct
22 │ concerning civil defendants. Mr. Symonds has provided no facts to demonstrate that his testimony
23 │ would incriminate him at trial and therefore even if he is entitled to the privilege, he cannot currently
24 │ refuse to testify. *See Verdugo-Urquidez*, 494 U.S. at 264 ("The privilege against self-incrimination

25 │

26 │ ⁶    Notably, similar to this case, in *Bear Sterns*, the discovery sought by plaintiffs was pursuant
    │ to a "Letter Rogatory" from a U.S. court to the Dutch judicial authorities. The court found that it
27 │ could compel defendant to produce the discovery even though the discovery was initially ordered by
    │ a court in the Netherlands. 182 F. Supp. 2d at 680-81.

28 │

1   guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. . . .

2   Although conduct by law enforcement officials prior to trial may ultimately impair that right, a

3   constitutional violation occurs only at trial."); *accord Crowe v. County of San Diego*, 303 F. Supp.

4   2d 1050, 1091 (S.D. Cal. 2004) ("[T]he Fifth Amendment privilege against self-incrimination is not

5   violated by the use of a defendant's compelled statements unless and until the statements are used

6   against the defendant at trial."). Accordingly, Mr. Symonds cannot rely upon the Fifth Amendment

7   to shield his testimony from discovery in this case. [7]

8
9
                  **3.    Mr. Symonds Has Waived Any Right to Invoke the Fifth
                          Amendment by Submitting Sworn Testimony, Producing
                          Documents, and Making Representations Regarding *Softwar* to
                          This Court and the Parties in This Case**

10
11              Irrespective of whether Mr. Symonds has the right to assert the Fifth Amendment, and even

    assuming that the right attached at the time of his deposition in this case, Mr. Symonds still must be
12
    compelled to testify because any Fifth Amendment right has been waived. *United States v.*
13
    *Anderson*, 79 F.3d 1522, 1527 (9th Cir. 1996) (finding that witness' prior testimony and production
14
    of documents "without asserting his fifth amendment privilege" waived the privilege) ("We have no
15
    difficulty concluding that in so doing [defendant] waived his fifth amendment privilege against self-
16
    incrimination."); *United States v. Unruh,* 855 F.2d 1363, 1374 (9th Cir. 1987) ("The defendant's
17
    failure to invoke the privilege against self-incrimination waives a later claim of privilege.").
18

19

20
21   [7]      During the March 19, 2007 deposition, counsel for Mr. Symonds relied upon *United States v.*
    *Black*, 469 F. Supp. 2d 513, Case No. 05 CR 727, 2006 U.S. Dist. LEXIS 92352 (N.D. Ill. Dec. 26,
22   2006), for the proposition that 18 U.S.C. 1512(c) could be applied extraterritorially to foreign
    nationals. Solomon Decl., Ex. J at 19-20. Notably, however, the defendant in that case, Conrad
23   Black, the now infamous former CEO of Hollinger International Inc., had established *residence* in
    Palm Beach Florida, and owned an apartment in New York City which he frequented. *Black*, 2006
24   U.S. Dist. LEXIS 92352, at **8-9. Thus, the defendant was a U.S. *resident* subject to the laws of
    the U.S. and had established sufficient "property or presence" under the U.S. Constitution.
25   *Boumediene*, 2007 U.S. App. LEXIS 3682, at *31. Further, Black's alleged violation of 18 U.S.C.
    1512(c)(1) occurred in connection with official criminal and Securities and Exchange Commission
26   proceedings in the U.S. in which Black was a defendant. *Black*, 2006 U.S. Dist. LEXIS 92352, at
    *73. Here, there are no facts indicating that Mr. Symonds is a U.S. resident or the subject of a
27   criminal proceeding or investigation in which his testimony is being used to incriminate him. Thus,
    the holding in *Black* is not applicable to the facts here.

28

1    The Supreme Court has noted that with respect to the right against self-incrimination, "where
2  criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure
3  of the details." *Rogers*, 340 U.S. at 373. "Thus, if the witness himself elects to waive his privilege,
4  as he may doubtless do, since the privilege is for his protection and not for that of other parties, and
5  discloses his criminal connections, he is not permitted to stop, but must go on and make a full
6  disclosure." *Id.* (citing *Brown v. Walker*, 161 U.S. 591, 597 (1896)); *see also Nutramax Labs., Inc.*
7  *v. Twin Labs., Inc.*, 32 F. Supp. 2d 331 (D. Md. 1999) (privilege waived because previously-filed
8  affidavit contained statements relating to subject matter of litigation, to which witness later
9  attempted to assert Fifth Amendment); *IBM Corp. v. Brown*, 857 F. Supp. 1384, 1390 (C.D. Cal.
10  1994) (testifying at deposition operates as waiver).

11    As Judge Learned Hand observed, the privilege against self-incrimination "'should not
12  furnish one side with what may be false evidence and deprive the other of any means of detecting the
13  imposition. The time for a witness to protect himself is when the decision is first presented to
14  him;...anything more puts a mischievous instrument at his disposal.'" *Klein*, 667 F.2d at 288
15  (quoting *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942)); *accord OSRecovery, Inc. v.*
16  *One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) ("allowing a witness to testify on
17  potentially self-incriminatory matters and then avoid relevant cross-examination 'would make of the
18  Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a
19  positive invitation to mutilate the truth a party offers to tell'") (quoting *Brown*, 356 U.S. at 155-56).

20    Some courts have adopted a two-prong test for finding waiver of the privilege against self-
21  incrimination from a witness' prior statements. Known as the "Klein test" in most jurisdictions
22  based on the Second Circuit's decision in *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981), waiver
23  will be found if two prongs are satisfied:

24    (1) the witness' prior statements have created a significant likelihood that the finder
      of fact will be left with and prone to rely on a distorted view of the truth; and (2) the
25    witness had reason to know that his prior statements would be interpreted as waiver
      of the fifth amendment's privilege against self-incrimination.
26

27

28

1  *Id.*; *see also, e.g.*, *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-3073 MMC (EDL), 2006

2  U.S. Dist. LEXIS 94550, at *11 (N.D. Cal. Dec. 22, 2006) ("Although the *Klein v. Harris* two-prong

3  test has not been expressly adopted in the Ninth Circuit, it is instructive.").

4  Here, given Mr. Symonds' voluntary disclosure of testimonial and documentary evidence in

5  this case and his liberal one-sided disclosure of information to defendants for the specific purpose of

6  frustrating discovery, the fact-finding function of the jury will be severely impaired without Mr.

7  Symonds' testimony. *See Anderson*, 79 F.3d at 1527 (holding that testimony and production of

8  documents waived Fifth Amendment privilege); *see also OSRecovery*, 262 F. Supp. 2d at 307 ("An

9  individual may not use the Fifth Amendment as both a shield and a sword, answering some

10  questions related to a particular topic in a given proceeding and avoiding others, as dictated by whim

11  or self-interest.").

12

### a. The November 9, 2006 Sworn Declaration and Subsequent Deposition Testimony Constitute Waiver

13

14  On November 9, 2006, Mr. Symonds submitted a sworn declaration to this Court. Solomon

15  Decl., Ex. C. The Symonds Declaration was submitted in support of Oracle's opposition to

16  plaintiffs' motion to compel the Softwar Evidence, for the express purpose of preventing plaintiffs

17  from obtaining the Software Evidence. The Symonds Declaration made sworn representations to

18  this Court and the parties about the existence, whereabouts, and circumstances surrounding the

19  Softwar Evidence, precisely the same topics that Mr. Symonds now refuses to testify about. *Id.*

20  Notably, at the March 20, 2007 deposition, after Mr. Symonds began to assert the Fifth

21  Amendment with respect to specific questions, when asked whether he drafted a declaration for

22  defendants in this case, he voluntarily provided testimony as follows:

23  Q. And the pending question is: have you ever drafted a declaration for submission
   to a U.S. court in connection with pending proceedings against Oracle Corporation
   and Mr. Ellison and others?

24

25  A. *Yes, I have.*

26  Q. And when did you do that?

27  A. *Early November 2006.*

28  Q. And did somebody ask you to draft that declaration?

1      A. On the advice of counsel, I assert the privilege not to answer, pursuant to the Fifth Amendment of the U.S. constitution.

2

3      Q. Okay. But your testimony is that you did draft it, as opposed to simply signing it; is that true?

4      A. *No. Well, I signed --*

5      [Counsel for Mr. Symonds]: Forgive me. I am instructing Mr. Symonds to assert his privilege.

6

7      A. Okay. On the advice of counsel, I assert the privilege not to answer, pursuant to the Fifth Amendment of the U.S. constitution.

8 Solomon Decl., Ex. K at 10.

9      In other words, Mr. Symonds voluntarily opened the door to the facts surrounding his

10 November 9, 2006 declaration, while being fully aware and having "reason to know" that his

11 testimony would be interpreted as waiver. *See Klein*, 667 F.2d at 287 (second prong of *Klein* test).

12 Further, the fact that Mr. Symonds attempted to provide self-serving testimony that he drafted the

13 declaration, yet when pressed he tried to retract that statement and stated that he only "signed" the

14 declaration, triggers the first prong of the *Klein* test, because Mr. Symonds' testimony has "created a

15 significant likelihood that the finder of fact will be left with and prone to rely on a distorted version

16 of the truth." *Id.*

17      In sum, it is clear that Mr. Symonds has improperly attempted to use the Fifth Amendment to

18 distort the record and prevent plaintiffs from discovering the facts surrounding the circumstances and

19 substance of his November 9, 2006 declaration, while knowing that his testimony would be

20 interpreted as waiver. Accordingly, Mr. Symonds must be compelled to answer questions about the

21 November 9, 2006 declaration. *Anderson*, 79 F.3d at 1527; *Klein*, 667 F.2d at 287; *see also Aldridge*

22 *Elec. Inc. v. Fid. & Deposit Co.*, No. 04 C 4021, 2006 U.S. Dist. LEXIS 62149 (N.D. Ill. Aug. 31,

23 2006) (holding that defendant waived right to invoke Fifth Amendment at deposition because he

24 made prior sworn statements regarding the same subject matter).

25                       **b.   Mr. Symonds' Letters, Correspondence and Representations to Defendants' Counsel and Larry**

26                               **Ellison Constitute Waiver**

27      Despite Mr. Symonds' newly realized belief that his testimony on the Sofwar Evidence might

28 incriminate him, Mr. Symonds has liberally made numerous representations to counsel for

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ      - 17 -

1  defendants about the circumstances surrounding the destruction of the Softwar Evidence.  These

2  representations were ultimately incorporated into sworn representations made to this Court and used

3  by defendants to resist discovery of Softwar Evidence and attempt to reverse Special Master

4  Infante's January 2, 2007 Order.

1

2                                   Thus, it is clear that Mr. Symonds has

3 generously provided testimony about the very subject matter that he claims is "incriminating" only

4 when it was shielded from plaintiffs' view. This type of disingenuous use of the Fifth Amendment is

5 not proper. Mr. Symonds conduct "suggests an unprincipled and ill-advised effort to frustrate lawful

6 discovery." *OSRecovery*, 262 F. Supp. 2d at 307.

7          Importantly, defendants have made inconsistent representations to plaintiffs and this Court

8 about Ellison's involvement with Mr. Symonds and the Softwar Evidence, which must be tested by

9 deposing Mr. Symonds. Initially, defendants represented to Special Master Infante that "Mr.

10 Ellison's efforts to preserve [the Softwar Evidence] consist of a request, *through Ellison's counsel*,

11 that Mr. Symonds preserve them" and that "Mr. Ellison was *not involved personally* in the

12 circumstances surrounding their unavailability." Solomon Decl., Ex. N. Defendants also

13 represented that "*Defendants have no personal knowledge about the events described by Mr.*

14 *Symonds (either today or previously), and we have no way to independently verify Mr. Symonds'*

15 *claims*." Solomon Decl., Ex. G.

16

17

18 that "in addition to conversations between Defendants' counsel and Mr. Symonds recounted above,

19 *Mr. Ellison also has had conversations with Mr. Symonds regarding the Softwar-related materials*

20 that are the subject of the Special Master's December 29, 2006 Order." Solomon Decl., Ex. O.

21 Noticeably, this admission was buried in the last few lines of a "Second Supplement" to defendants'

22 Motion to Reverse, which purportedly was filed to "clarify" their prior submissions. *Id.*

23          In sum, Mr. Symonds and defendants have created a distorted and incomplete record of false

24 facts and inconsistent statements that have now tainted the record with respect to the Softwar

25 Evidence destruction. Solomon Decl., Ex. P. Indeed, Mr. Symonds has been able to secretly

26 conduct private discussions and meetings with counsel for defendants and to make representations to

27 plaintiffs and the Court through the filter of an adversarial party. Furthermore, plaintiffs have been

28 unable to take meaningful discovery of these representations, discussions, and admissions made by

1  Mr. Symonds and have been unable to test the veracity of what defendants are now relying upon to

2  disprove their involvement in the spoliation of the Softwar Evidence. Now, as a last resort, Mr.

3  Symonds is seeking to borrow the U.S. Constitution to hide the truth and leave the fact-finder with a

4  distorted and incomplete record of the destruction of crucial evidence. Mr. Symonds' conduct and

5  the numerous representations and sworn testimony already submitted in this case are sufficient to

6  demonstrate waiver of any hypothetical rights under the Fifth Amendment. *Anderson*, 79 F.3d at

7  1527.

8                          **c.      Mr. Symonds' Production of Documents in Response to
                                   Discovery Requests in This Case Constitute Waiver**

9
10          On January 16, 2007, Mr. Symonds produced a limited subset of documents in response to

plaintiffs' discovery requests. Solomon Decl., Ex. Q. The documents purportedly were produced to
11
defendants' counsel who then produced them to plaintiffs. *Id.* The documents contained some
12
limited pieces of transcripts of Symonds' interviews with Ellison in connection with *Softwar*.
13
Defendants represented that those documents were the only remaining documents that Mr. Symonds
14
provided to defendants. *Id.* Mr. Symonds did not invoke any Fifth Amendment rights in connection
15
with the production.
16
Mr. Symonds' production of documents relating to the Softwar Evidence constitutes waiver
17
of any Fifth Amendment rights that would attach to the testimonial subject matter of those
18
documents. Indeed, to the extent that Mr. Symonds' deposition testimony on the subject matter
19
contained in the documents (*i.e.*, what defendant Ellison told him during interviews) would
20
incriminate him, that has already occurred by virtue of his production of documents. *Anderson*, 79
21
F.3d at 1527 (holding that production of documents waived Fifth Amendment privilege).
22

23          **B.      Mr. Symonds' Attempted Invocation of the "Reporter's Privilege"
                     Under the First Amendment Was Not Proper**

24          As set forth above, Mr. Symonds is not entitled to invoke U.S. Constitutional rights. This

25  analysis applies with the same force to Mr. Symonds' attempt to invoke the "reporter's privilege"

26  purportedly grounded in the First Amendment. *See United States ex rel. Turner v. Williams*, 194

27  U.S. 279, 292 (1904) (excludable alien is not entitled to First Amendment rights, because "he does

28  not become one of the people to whom these things are secured by our Constitution by an attempt to

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ                    - 20 -

1 enter forbidden by law"). In fact, the Supreme Court has suggested that the protections afforded

2 under the First Amendment may be even *more* restrictive than those under the Fifth Amendment.

3 *See Verdugo-Urquidez*, 494 U.S. at 265 (comparing the scope of the First and Fifth Amendments).

4    In any event, even if Mr. Symonds were entitled to rights under the First Amendment, his

5 invocation of the reporter's privilege was still improper. As an initial matter, as Judge White

6 recently observed:

7    "The Ninth Circuit's position on the issue appears clear to this Court: unless and until
     the Supreme Court states that a common law reporter's privilege exists, or unless
8    Congress enacts such a privilege, *Branzburg's* mandate is binding. Accordingly, the
     Court declines Movants' invitation to apply the *Jaffee* factors and recognize a
9    common law reporter's privilege under Rule 501. However, even if a reporter's
     privilege exists or should be recognized under the federal common law, the Court
10   concludes that it would be overcome on the facts of this case."

11 *See In re Grand Jury Subpoenas (Fainaru-Wada)*, 438 F. Supp. 2d 1111, 1119 (N. D. Cal. 2006).

12    In any event, Mr. Symonds' attempted use of the privilege is substantively meritless. First,

13 plaintiffs have satisfied the three-part test set forth in *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995).

14 Under *Shoen*, a civil litigant is entitled to discovery notwithstanding a valid assertion of the

15 journalist's privilege by a nonparty upon a showing that the requested material is "(1) unavailable

16 despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant

17 to an important issue in the case." *Id.* at 416.

18    It is undisputed that the Softwar Evidence is "unavailable despite plaintiffs' exhaustion of all

19 reasonable alternative sources," most notably because it has been destroyed. *Id.* Plaintiffs have filed

20 multiple motions to secure the Softwar Evidence and have sought assistance of international judicial

21 authorities to obtain the discovery. Plaintiffs have also sought the discovery directly from Oracle

22 and defendant Larry Ellison, who was found to have legal custody and control of the evidence, yet

23 plaintiffs still cannot obtain the evidence ordered by the Court. Indeed, because Mr. Symonds has

24 admitted to destroying the Softwar Evidence, his testimony about the circumstances surrounding the

25 evidence and the substantive content of the documents are the only evidence left concerning these

26 facts. There are no other reasonable alternatives to secure the material.

27    The second prong set forth in *Shoen* is also satisfied because the discovery sought is not

28 cumulative. The Softwar Evidence is unique and it would appear that Mr. Symonds' testimony

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ          - 21 -

1 would be one of the only first-hand sources of what was contained on the destroyed tapes and the
2 contents of Ellison's statements. *Grand Jury Subpoenas*, 438 F. Supp. 2d at 1120 ("[T]he
3 Government has established that the testimony would not be cumulative in that it would appear to be
4 the only first-hand evidence of the identity or identities of the source or sources.").

5 Finally, the third prong set forth in *Shoen*, 48 F.3d at 416, is satisfied here because the
6 Softwar Evidence is directly relevant to this case. Solomon Decl., Ex. A at 1 ("The book, co-
7 authored by Mr. Ellison is *clearly relevant* to the issues identified in the Discovery Plan."). The
8 unique evidence involves contemporaneous interview transcripts and tapes reflecting statements
9 made by defendant Larry Ellison during and after the Class Period in this case. Further, the shocking
10 developments regarding the destruction of the Softwar Evidence confirm the compelling relevance
11 of Mr. Symonds' testimony about what was said during Ellison's interviews. The fact that Mr.
12 Symonds participated in destroying the Softwar Evidence and then lied about it during a time in
13 which he was having personal discussions with Larry Ellison raises many questions relevant to this
14 litigation. There simply is no other place to get the unique Softwar Evidence except by Symonds'
15 testimony and production of documents.

16 **IV. CONCLUSION**

17 Based on the foregoing, plaintiffs' motion should be granted.

18 DATED: October 10, 2007                 COUGHLIN STOIA GELLER
19                                      RUDMAN & ROBBINS LLP
                                     MARK SOLOMON
                                     DOUGLAS R. BRITTON
20                                      STACEY M. KAPLAN

21

22                                      /s/
23                                 MARK SOLOMON

                                   655 West Broadway, Suite 1900
24                                    San Diego, CA 92101
                                   Telephone: 619/231-1058
25                                    619/231-7423 (fax)

26

27

28

NOT OF MTN & MTN TO COMPEL TESTIMONY & DETERMINE THE APPLICABILITY OF THE
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION - C-01-0988-MJJ        - 22 -

1

2
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS

3
WILLOW E. RADCLIFFE
MONIQUE C. WINKLER

4
ELI R. GREENSTEIN
DANIEL J. PFEFFERBAUM

5
100 Pine Street, Suite 2600
San Francisco, CA 94111

6
Telephone: 415/288-4545
415/288-4534 (fax)

7
Lead Counsel for Plaintiffs

8
T:\CasesSF\Oracle3\10-10-07 continuation of under seal docs\MOT00046302_Redacted.doc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on October 10, 2007, I electronically filed the foregoing with the Clerk

3  of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4  addresses denoted on the attached Electronic Mail Notice List.

5    I certify under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct. Executed on October 10, 2007.

7

8                                                          /s/
                                           MARK SOLOMON

9                                           COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
10                                          655 West Broadway, Suite 1900
                                           San Diego, CA 92101-3301
11                                          Telephone: 619/231-1058
                                           619/231-7423 (fax)
12

13                                          E-mail:marks@csgrr.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com

- **Brian P Murray**

bmurray@rabinlaw.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_s

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Dorian Daley**
500 Oracle Parkway
Redwood City, CA 94065

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900

San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111