Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-09888-MJJ (JCS) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN PREPARATION FOR THE BOOK SOFTWAR |
|---|---|

On October 30, 2006, Plaintiffs submitted a motion to compel Defendants Oracle Corporation ("Oracle"), Lawrence J. Ellison ("Ellison"), Jeffrey O. Henley and Edward J. Sanderson (collectively, "Defendants") to produce documents concerning and created in preparation for the book *SOFTWAR*, written by Matthew Symonds. Defendants' opposition to the motion was submitted on November 13, 2006. Plaintiffs' reply was submitted on November 20, 2006. On December 14, 2006, the Special Master issued an order regarding the motion, attached hereto as Exhibit A. In pertinent part, the order provides that:

> The book, co-authored by Mr. Ellison, is clearly relevant to the issues identified in the Discovery Plan. Documents concerning and created for the book appear reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1). The primary question for the Special Master for purposes of this motion is whether Ellison has control over the tapes and transcripts of interviews sought by Plaintiffs. In order to answer this question, the Special Master must review the final agreement between Ellison and Symonds regarding the book. The document plainly is relevant to Plaintiffs' claims, and Defendants have failed to justify any objection to the production of the final agreement. Accordingly, the Special Master, in order to finally resolve the present motion, will require Defendants to submit a copy of the final agreement between Symonds and Ellison for *in camera* review. The Special Master will review the agreement and then determine whether any further documents should be produced.

Defendants were ordered to provide the Special Master with a copy of the final agreement within five business days of receipt of the order. On December 20, 2006, Oracle submitted a copy of the final agreement and an amendment to the final agreement. The Special Master has considered the final agreement and the papers and arguments of counsel and rules as follows:

### Background

The final agreement between Ellison and Mr. Symonds is dated February 8, 2001 ("the agreement"). Section 1 of the agreement addresses the duties of the parties to the agreement, wherein Ellison agreed that (1) Symonds would have full access to business meetings provided all commercially sensitive information divulged in such meetings is subject to Clause 2 of the this Agreement; and (2) that he would grant Symonds full access both to Oracle's archives and to Ellison's personal archives, photographs and documents and any other materials necessarily related to the Work. Agreement, § 1(a)(iii & ix). Symonds agreed that:

> Upon completion of the Work, [Symonds will] return to Ellison all tapes, transcripts and working papers provided by Ellison, and not make further use of these materials without Ellison's express written consent.

Agreement, § 1(b)(iv). The agreement's confidentiality clause provides that:

> Both parties understand and agree that all conversations and communication conducted by the parties to this agreement in preparation of the work (except, to the extent which such conversation and communications inform the Work itself; this clause shall apply to such conversations and communications until publication of the Work), including the terms of this Agreement, shall at all times be kept confidential. Symonds agrees to execute the Nondisclosure Agreement by and between Symonds and Oracle Corporation that is attached hereto as Exhibit A.



> In all cases of this Agreement's termination, regardless of the basis for such termination, Symonds shall promptly upon such termination surrender to Ellison the original copy of all manuscripts, drafts, notes, and other material prepared by him for the Work learned during the course of researching and/or in connection with the Work as well as all audio and video tapes of all interviews conducted in connection with the preparation of the Work and the original and all copies of, all letters, photographs, diaries, and other material furnished by or on behalf of Ellison to Symonds in connection with his preparation of the

Work and shall not retain copies thereof. Neither Symonds nor Ellison shall have the right whatsoever to make any use of any material prepared by Symonds hereunder. Ellison's possession of the original copy of such materials is merely intended to permit the enforcement of this use restriction which, both parties agree, may be enforced by injunctive relief. Symonds shall have no right to use in any way the materials furnished by and on behalf of Ellison.

In the attached Nondisclosure Agreement, Symonds agreed to use Confidential Information solely for the purpose of preparing the Work, and that he will not make Confidential Information available (subject to paragraph 4 of the Nondisclosure Agreement, "Mandatory Disclosure") to any third party. Nondisclosure Agreement, ¶ 3. The Nondisclosure Agreement defines "Confidential Information" to include any information including but limited to that which related to business information disclosed by Oracle to Symonds, either directly, indirectly, in writing or orally. *Id.*, ¶ 2.

## Discussion

Plaintiffs' motion seeks to compel production of documents concerning and created in preparation for the book. More specifically, Plaintiffs seek production of: (1) a final copy of the agreement; (2) any other communications or drafts created in preparation for that agreement; and (3) the transcripts, working papers and interview tapes relating to the book.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." Fed. R. Civ. P. 26(b)(1). "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

"Any party may serve on any other party a request .. to produce and permit the party making the request ... to inspect ... any designated documents or electronically stored information ... which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a). "Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

Plaintiffs' request for production of the agreement and any interview notes, transcripts or recordings relating to the book appear reasonably calculated to lead to the discovery of admissible evidence. The requested information is responsive to numerous requests for production propounded upon Defendants by Plaintiffs. With respect to these materials, the primary question for the Special Master is whether Ellison has control over the tapes and transcripts of interviews sought by Plaintiffs. The Special Master has reviewed the agreement between Ellison and Symonds. The agreement provides Ellison with "control" over "all tapes, transcripts and working papers provided by Ellison." Defendants' interpretation of the term "provided" is unduly restrictive. The agreement, read as a whole, gives Ellison the legal right to obtain all tapes and transcripts of interviews with Ellison created in the course of the preparation of the book for publication.

The tapes and transcripts likely will contain both relevant and irrelevant information. However, the fact that the tapes and transcripts may include irrelevant or non-responsive information does not provide a basis for the Special Master to order production of less than all tapes and transcripts at issue. Any redaction of "irrelevant" information from the tapes would be burdensome and time consuming. Moreover, as previously noted in other orders, Defendants are not permitted to unilaterally redact information on the basis of relevance. Accordingly, Plaintiffs' motion to compel production of the agreement and any interview notes, transcripts or tape recordings relating to the book is GRANTED IN PART. Defendants shall provide Plaintiffs with a copy of: (1) the final agreement; and (2) any and all tape recordings and/or transcripts of interviews with Ellison created in the preparation of the book.

Plaintiffs' requests for the production of "documents concerning and created for the book" and "any other communications or drafts created in preparation for that agreement," which would include tapes of other interviews created in preparation of the book, do not appear to be reasonably calculated to lead to the discovery admissible evidence, are overbroad, and any

4

response to such requests would be unduly burdensome. Accordingly, the Plaintiffs' motion to compel production of documents responsive to these requests is DENIED. Plaintiffs' request for production of Symonds's written interview notes likewise is DENIED.

Defendants shall provide Plaintiffs with a copy of the final agreement and copies of any and all responsive tapes and/or transcripts no later than January 16, 2007.

IT IS SO ORDERED.

Dated: 12-29-06

_____
Hon. Edward A. Infante (Ret.)
Special Master

5

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Case No. C-01-09888-MJJ (JCS)<br><br>ORDER RE: PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN PREPARATION FOR THE BOOK SOFTWAR |

On October 30, 2006, Plaintiffs submitted a motion to compel Defendants Oracle Corporation ("Oracle"), Lawrence J. Ellison ("Ellison"), Jeffrey O. Henley and Edward J. Sanderson (collectively, "Defendants") to produce documents concerning and created in preparation for the book *Softwar*. Defendants' opposition to the motion was submitted on November 13, 2006. Plaintiffs' reply was submitted on November 20, 2006. The Special Master has considered the papers and the arguments of counsel and rules as follows:

## Background

The book *SOFTWAR: An Intimate Portrait of Larry Ellison and Oracle* by Matthew Symonds ("the book") was published in 2003. Both parties assert that work on the book commenced in March 2001 and proceeded for the next nine months. Symonds was accorded full access to accompany Ellison throughout his working day into every kind of business meeting with colleagues and customers all over the world. Symonds states: "I will spend at least 10 days each month with Ellison and will record up to 200 hours of one-to-one interviews. I will have office-space at Oracle on the same floor as Ellison and...will also travel with him and be present in all parts of his business.... I will interview past and present employees of Oracle as well as Ellison's wide circle of business and personal friends...." See NDCA-ORCL 1053853. Additionally,

## EXHIBIT A

1

Symonds states that Ellison agreed to make available "previously confidential company memoranda and e-mail." *Id.*

Plaintiffs describe the book as discussing "in great detail, the release of 11i, the months of hardships that accompanied its release..., sales by insiders including Ellison's January 2001 sales, Oracle's forecasting process and the effect of the dot-com bubble burst on the Company, and Oracle's billion dollar savings claims...." Plaintiffs' Motion to Compel at 2. Plaintiffs further detail the contents of the book, stating:

> In Chapter 9, titled "The Laboratory," Symonds writes (and Ellison provides commentary) on the development of 11i, including information refuting Oracle's marketing mantra throughout the Class Period that it had saved over a billion dollars implementing 11i. Chapter 10, ... titled "Ready or Not," chronicles the release of 11i and the problems associated with that release. Chapter 11, titled "Taking Stock," discusses Ellison's insider selling ...in January 2001 as well as Oracle's earnings shortfall announcement in March 2001 and the effects of the macroeconomic climate on Oracle's earning in late 2000 and early 2001. Chapter 12, titled "Hungarian Lessons," details Ellison's relationship with GE and GE Power System's experience with the Class Period implementation of 11i in a small Hungarian plant ...

Plaintiffs' Motion to Compel at 4.

On March 10, 2005, Judge Spero issued an Amended Order Setting a Discovery Plan ("the Discovery Plan"). The Discovery Plan provides in pertinent paRt that Defendants shall produce:

> (1) "documents and communications...concerning the United States economy and its impact or potential impact on Oracle's revenues, earnings and expenses; its impact or potential impact on customer purchasing decisions of IT products and services in general; and specifically the purchase of products or services from Oracle"; (2) High level documents describing the scope and dimension of 'bug problems' with Suite 11i and/or any of its modules other than integration and interoperability"; (3) "Documents regarding any lost or deferred sales of an Oracle product, as well as any material expense with respect to any Oracle product—such as refunds, rebates or remediation"; (4) documents relating to Oracle's forecasts, including any mention of the economy as it relates to Oracle's forecasting during the Relevant Time Period and as it relates to the Company's pipeline and its growth or decline"' and (5) "documents and communications regarding Defendants' sales or contemplated sales of Oracle securities during January 2001."

During Ellison's September 21, 2006 deposition, Plaintiffs questioned Ellison extensively about statements contained in the book. The book is unusual in that, unlike most biographies, it contains footnotes and comments by one of its subjects, Mr. Ellison. *See, e.g.,* Coyle Decl., Ex. 2 (*SOFTWAR* Excerpts) at 63. Ellison and Symonds are joint copyright holders of the work.

Subsequent to Ellison's deposition, on October 2, 2006, Defendants produced, for the first time, a January 5, 2001 e-mail discussing the book and attaching: (1) a draft contract between Ellison and Symonds and (2) a promotional story titled "Softwar: The Rewards of Recklessness" used to interest prospective publishers. *See* Solomon Reply Decl., Ex. B. The e-mail establishes that any personal access Ellison provided to Symonds began before the close of the Class Period. The draft contract also attached to the January 5, 2001 email contains the following provisions:

- "Upon completion of the Work, [Symonds will] return to Ellison all tapes, transcripts and working papers provided by Ellison, and not make further use of these materials without Ellison's express written consent." *See* Ex. B. at NDCA-ORCL 1053825.



- "In all cases of this Agreement's termination, regardless of the basis for such termination, Symonds shall promptly upon such termination surrender to Ellison the original copy of all manuscripts, drafts, notes, and other material prepared by him for the Work, learned during the course of researching and/or in connection with the Work as well as all audio and video tapes of all interviews conducted in connection with the preparation of the Work and the original and all copies of, all letters, photographs, diaries, and other material furnished by or on behalf of Ellison to Symonds in connection with his preparation of the Work and shall not retain copies thereof. Neither Symonds nor Ellison shall have the right whatsoever to make any use of any material prepared by Symonds hereunder. Ellison's possession of the original copy of such materials is merely intended to permit the enforcement of this use restriction which, both parties agree, may be enforced by injunctive relief." *Id.* at NDCA-ORCL 1053838.

Plaintiffs subsequently requested that defendants produce documents concerning and created in preparation for the book. Specifically, Plaintiffs requested production of: (1) a final copy of the agreement between Symonds and Ellison concerning their work on the book; and (2) any other communications or drafts created in preparation for that agreement as well as the transcripts, working papers, and hundreds of hours of interview tapes which were to be returned

to Ellison pursuant to the agreement between Symonds and Ellison. On October 17, 2006, Defendants stated that because "plaintiffs have provided absolutely no basis for this demand" and that "no such [document] request exists]," Defendants would not produce the requested documents. On October 30, 2006, Plaintiffs filed the present motion to compel production of documents concerning and created in preparation for the book.

### Legal Standard

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." Fed. R. Civ. Proc. 26(b)(1). "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

"Any party may serve on any other party a request .. to produce and permit the party making the request ... to inspect ... any designated documents or electronically stored information ... which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a). "Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). The party seeking production of the documents bears the burden of proving that the opposing party has such control. *Id.*

### Discussion

4

Plaintiffs assert that documents concerning and created in preparation for the book are directly relevant to Plaintiffs' allegations, and are responsive to the Discovery Plan and many of Plaintiffs' document requests.[1] Plaintiffs assert that documents concerning and created for the book include: (1) a final copy of the agreement; (2) any other communications or drafts created in preparation for that agreement; and (3) the transcripts as well as the transcripts, working papers and hundreds of hours of interview tapes that Plaintiffs assert were returned to Ellison pursuant to his agreement with Symonds. Plaintiffs assert that these documents, including the tapes, are in Mr. Ellison's control and must be produced. Plaintiffs' "control" argument is based upon the terms of the draft agreement between Ellison and Symonds. Plaintiffs assert that if the quoted clauses (see above) are contained in the final agreement, Ellison has control of the documents because he has the legal right to obtain those documents on demand.

Defendants contend that: (1) the final agreement between Symonds and Ellison is not relevant to issues in this case; (2) Ellison does not have (and never did have) possession, custody or control of any interview notes, transcripts or recordings relating to the book;[2] (3) Plaintiffs' demand for all other documents "concerning and created in preparation for" the book is vague, overbroad (several chapters of the book do not discuss information relevant to this action) and not reasonably calculated to lead to the discovery of admissible evidence; (4) Defendants have never agreed that documents concerning the book are responsive or relevant; and (5) Plaintiffs have been provided "voluminous contemporaneous emails and other materials" by Defendants and have had a "full and fair opportunity to examine Mr. Ellison about the book."

---

[1] Plaintiffs assert that documents concerning and created in preparation for the book are responsive to *inter alia* requests 1-16, 18-21, 23-27 and 35 in Plaintiffs' first set of requests for production of documents and requests 10, 11 and 21 in Plaintiffs' third set of requests for production documents. Request 6 seeks "all documents and communications relating to the United States economy and its impact on sales of Oracle's database and applications products, including, but not limited to, order cancellations, order or purchase delays, and discounts offered on Oracle products or services." Request 21 seeks "all documents and communications relating to the timing or release of 11i, including, but not limited to, each subsequent version of 11i, for example, 11i5 and 11i5.3." Request 24 seeks "all documents and communications relating to customer or potential customer complaints, concerns or dissatisfaction with the functionality, implementation or integration of 11i or any of its individual modules, including, but not limited to, the CRM module." Request 27 seeks "all documents and communications supporting, or relating to Oracle's claim that it had already saved $1 billion through the internal implementation of its applications software."

[2] Defendants assert that Ellison did not provide Symonds with any "tapes" or "transcripts" or "working papers," and therefore Symonds never returned any such materials to Mr. Ellison and Ellison has no right to access any of the materials Symonds created during this research and writing of the book. See Symonds Decl. at ¶¶ 2-3. Defendants further argue that because Symonds lives and works in London, England, he is beyond the subpoena power of this Court and any attempt to subpoena Mr. Symonds would require the Court to issue a letter of request to a British court, which would, in turn, raise the question of whether the requested discovery is proper under the Hague Convention.

In reply, Plaintiffs assert that: (1) Defendants admit to the relevance of the requested information by failing to present a serious argument to the contrary in their opposition; (2) the lone document created in preparation for the book which has been produced confirms the relevance of the requested documents; (3) if the final contract resembles the draft contract, Ellison has the legal right to seek and obtain possession of the requested documents; (4) Defendants do not have the right to argue they have no legal control of the requested materials while they continue to refuse to produce the final draft of the agreement between Symonds and Ellison; and (5) independent of the final contract, Ellison has the legal right to endeavor to obtain the requested materials and therefore must at a minimum show that he has endeavored to do so.

*Production of the Final Contract between Ellison and Symonds*

The book, co-authored by Mr. Ellison, is clearly relevant to the issues identified in the Discovery Plan. Documents concerning and created for the book appear reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1). The primary question for the Special Master for purposes of this motion is whether Ellison has control over the tapes and transcripts of interviews sought by Plaintiffs. In order to answer this question, the Special Master must review the final agreement between Ellison and Symonds regarding the book. The document plainly is relevant to Plaintiffs' claims, and Defendants have failed to justify any objection to the production of the final agreement. Accordingly, the Special Master, in order to finally resolve the present motion, will require Defendants to submit a copy of the final agreement between Symonds and Ellison for *in camera* review. The Special Master will review the agreement and then determine whether any further documents should be produced.

Defendants shall provide the Special Master with a copy of the final agreement within five business days of receipt of this order.

IT IS SO ORDERED.

Dated: 12-14-06

Hon. Edward A. Infante (Ret.)
Special Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2007, I served the attached amended ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN PREPARATION FOR THE BOOK SOFTWAR in the within action by e-mail addressed as follows:

| Name | Firm | Email |
|---|---|---|
| Mark Solomon Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | marks@lerachlaw.com |
| Douglas Britton Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | dougb@lerachlaw.com |
| Valerie McLaughlin Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | valeriem@lerachlaw.com |
| Gavin Bowie Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | gbowie@lerachlaw.com |
| Shawn Williams Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | shawnw@lerachlaw.com |
| Willow Radcliffe Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | willowr@lerachlaw.com |
| Eli Greenstein Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | elig@lerachlaw.com |
| Jennie Anderson Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | jenniea@lerachlaw.com |
| Monique Winkler Esq. | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | moniquew@lerachlaw.com |
| Peter Wald Esq. | Latham & Watkins | peter.wald@lw.com |
| Michele Kyrouz Esq. | Latham & Watkins | michele.kyrouz@LW.com |
| Patrick Gibbs Esq. | Latham & Watkins | patrick.gibbs@lw.com |
| Matthew Harrison Esq. | Latham & Watkins | matt.harrison@LW.com |
| Sean Coyle Esq. | Latham & Watkins | sean.coyle@lw.com |