FROM LATHAM & WATKINS LLP Fax Machine #2    (MON) 11. 13' 06 17:40/ST. 17:39/NO. 4861909999 P 2

1  LATHAM & WATKINS LLP
   Peter A. Wald (SBN 85705)
2     Michele F. Kyrouz (SBN 168004)
   505 Montgomery Street, Suite 2000
3  San Francisco, CA 94111-2562
   Telephone: (415) 391-0600
4  Facsimile: (415) 395-8095
   E-mail: peter.wald@lw.com
5          michele.kyrouz@lw.com

6  LATHAM & WATKINS LLP
      Jamie L. Wine (SBN 181373)
7  885 Third Avenue, Suite 1000
   New York, NY 10022-4834
8  Phone: (212) 906-1200
   Fax: (212) 751-4864
9  E-mail: jamie.wine@lw.com

LATHAM & WATKINS LLP
   Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

10 Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
   J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
11
   ORACLE CORPORATION
12    Dorian E. Daley (SBN 129049)
      James C. Maroulis (SBN 208316)
13 500 Oracle Parkway
   Mailstop 5OP7
14 Redwood Shores, California 94065
   Telephone: (650) 506-5200
15 Facsimile: (650) 506-7114
   E-mail: jim.maroulis@oracle.com
16
   Attorneys for Defendant ORACLE CORPORATION
17

18                  UNITED STATES DISTRICT COURT

19        NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

20
   In re ORACLE CORPORATION          Master File No. C-01-0988-MJJ (JCS)
21 SECURITIES LITIGATION             (Consolidated)

22                                   CLASS ACTION

23                                   DEFENDANTS' OPPOSITION TO
   This Document Relates To:         PLAINTIFFS' MOTION TO COMPEL
24                                   DEFENDANTS' PRODUCTION OF
   ALL ACTIONS.                      DOCUMENTS CONCERNING AND
25                                   CREATED IN PREPARATION FOR THE
                                     BOOK SOFTWAR
26

27                        CONFIDENTIAL

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Motion to Compel the Production of Documents Concerning and Created in Preparation for the book SOFTWAR (the "Motion") should be denied. The primary object of Plaintiffs' Motion – interview notes, transcripts and recordings relating to the book – are not in Mr. Ellison's possession, custody or control, and they never have been. As detailed in the attached declaration from the book's author, Matthew Symonds, Mr. Ellison did not provide Mr. Symonds with any interview notes, transcripts or recordings, and therefore Mr. Symonds never returned any such materials to Mr. Ellison. The materials that Mr. Symonds created in the course of his research for the book, including any interview notes, transcripts or recordings, belong to Mr. Symonds, and Mr. Symonds has never provided Mr. Ellison with access to or copies of any such materials. *See* Declaration of Matthew Symonds ("Symonds Decl.") at ¶¶ 2-3.

Plaintiffs' broader, catch-all request – for all documents "concerning and created in preparation for the book" is overly broad and unduly burdensome, as it calls for documents that have nothing at all to do with this case. The book itself deals with a wide variety of subjects that are wholly irrelevant here, such as Mr. Ellison's boat racing activities and his personal relationships. To request, as Plaintiffs do, all documents "concerning and created in preparation for the book" is not reasonably calculated to lead to the discovery of admissible evidence.

To the extent that the book deals with facts and circumstances that are relevant to this case, Plaintiffs have had a full and fair opportunity to examine Mr. Ellison about the book. During the second day of Mr. Ellison's deposition, Plaintiffs spent hours asking Mr. Ellison about the book, including Mr. Ellison's own commentary in the footnotes and text of the book. *See* Ex. 1 (Transcript of the September 21, 2006 Deposition of Larry Ellison) ("Ellison Tr.") at 334:14-414:10.[1] While Defendants disagree with Plaintiffs' characterization of this testimony as "incriminating" (Plfs' Mot. at 5), Plaintiffs' citation to this testimony confirms that they have had

---

[1] All references to "Ex. __" are to the Declaration of Sean P.J. Coyle in Support of Defendants' Opposition to Plaintiffs' Motion, submitted concurrently herewith.

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO
SF\861362
DEF's OPP TO PLF's MOT. TO COMPEL SOFTWAR DOCS
Master File No. C-01-0988-MJJ (JCS)
1

1  plenty of time, and plenty of information, to question Mr. Ellison about the book. Plaintiffs have
2  made absolutely no showing that the documents they seek here – all documents "concerning and
3  created in preparation for the book" – would add any meaningful information to the discovery
4  process, and certainly not enough to justify the burden of searching for documents responsive to
5  such a vague and overly broad request. Plaintiffs' Motion should be denied.

6  **II.   FACTUAL BACKGROUND**

7           The book *SOFTWAR: An Intimate Portrait of Larry Ellison and Oracle* was
8  published in 2003, two years after this case was filed. *See* Plfs' Mot. at 2. As Plaintiffs'
9  concede, the interviews and meetings between Mr. Ellison and Mr. Symonds in connection with
10 the book did not commence until March 2001, after Oracle had announced the earnings miss at
11 issue in this case. *See Id.* at 1.

12          The book itself discusses a wide variety of subjects relating to Oracle and Mr.
13 Ellison. Those subjects include, among many others, Oracle's founding, Mr. Ellison's boat
14 racing activities, Mr. Ellison's childhood, family background, early adulthood, his children, and
15 his personal relationships. *See* Ex. 2 (SOFTWAR Excerpts) at Chapters 4, 17, 19, 20 & 26.

16          Some portions of SOFTWAR discuss events and circumstances at issue in this
17 case. *See* Ex. 2 (SOFTWAR Excerpts) at 210 (discussing the final days of 3Q01). In that
18 regard, however, because the underlying interviews and meetings in connection with the book
19 did not begin until March 2001, the book itself necessarily discusses these events in retrospect,
20 as opposed to real time.

21          Unlike most profiles or biographies, SOFTWAR contains footnotes and
22 comments by one of its subjects, Mr. Ellison. *See, e.g.*, Ex. 2 (SOFTWAR Excerpts) at 63.
23 During his deposition, Plaintiffs questioned Mr. Ellison at length about various passages from
24 the book, including his own footnotes and comments. *See* Ex. 1 (Ellison Tr.) at 334:14-414:10.
25 Mr. Ellison answered the questions forthrightly, confirming many of the statements attributed
26 directly to him, and discussing his level of agreement or disagreement with certain statements
27 made by Mr. Symonds. *See, e.g., Id.* at 335:6-336:5. Not surprisingly, Defendants disagree
28 strongly with Plaintiffs' characterization of this testimony as "incriminating" (Plfs' Mot. at 5),

FROM LATHAM & WATKINS LLP Fax Machine #2        (MON) 11. 13' 06 17:40/ST. 17:39/NO. 4861909999 P  5

but in any event, Plaintiffs clearly had a full and fair opportunity to question Mr. Ellison about the book and the statements in the book attributed to Mr. Ellison and Mr. Symonds.

Of course, the book itself is but a secondary source, and Plaintiffs spent much of their deposition time with Mr. Ellison asking him about the voluminous contemporaneous e-mails and other materials produced by Defendants in discovery. They had no shortage of such materials: To date, Defendants have produced to Plaintiffs well over 1 million pages documents from or referring to the relevant time period, including over 12,000 pages of e-mails and other documents sent to or received by Mr. Ellison. *See* Coyle Decl. at ¶ 7. Those materials, of course, reflect much more direct evidence of the events that led up to the March 1, 2001 earnings preannouncement that gave rise to this lawsuit.

## III. ARGUMENT

Plaintiffs' Motion calls for three categories of documents relating to SOFTWAR: (1) the final SOFTWAR agreement between Ellison and Symonds, (2) the "tapes, transcripts and working papers" Plaintiffs claim were returned to Ellison under the terms of the agreement, and (3) any other documents "concerning or created in preparation for the book." Plaintiffs' requests for all three categories should be denied.

### A. The Final Agreement Between Symonds and Ellison Is Irrelevant.

Plaintiffs' request for the final agreement between Ellison and Symonds should be denied because the agreement is not relevant to the issues in this case. Indeed, Plaintiffs do not seriously argue that it is. Instead, Plaintiffs seek production of the document because they believe it will "shed light on the question of which individual currently possess the transcripts, notes, and hundreds of hours of highly relevant interview tapes." Plfs' Mot. at 11-12. As discussed in more detail below, however, there is a much more direct answer to this question: Mr. Symonds himself has testified (by declaration) that he never provided Mr. Ellison with any interview notes, transcripts or recordings, and Mr. Ellison has no right to access any of the materials Mr. Symonds created during this research and writing of the book. *See* Symonds Decl. at ¶¶ 2-3.

B. **Mr. Ellison Does Not Have (And Never Did Have) Possession, Custody Or Control Of Any Interview Notes, Transcripts Or Recordings Relating To SOFTWAR.**

In support of their request for interview notes, transcripts or recordings relating to SOFTWAR, Plaintiffs cite a draft agreement between Mr. Symonds and Mr. Ellison, which contained the following clause:

> Upon completion of the Work, [Symonds will] return to Ellison all tapes, transcripts, and working papers provided by Ellison, and not make further use of these materials without Ellison's express written consent.

See Plfs' Ex. 1 at NDCA-ORCL 1053825.[2] From this, Plaintiffs simply assume that Mr. Ellison provided Mr. Symonds with "tapes, transcripts and working papers," and that these materials are necessarily relevant to the issues in this case.

In fact, Mr. Ellison did not provide Mr. Symonds with any "tapes" or "transcripts" or "working papers", and therefore Mr. Symonds never returned any such materials to Mr. Ellison. See Symonds Decl. at ¶ 2. Moreover, the materials that Mr. Symonds created in the course of his research, including any interview notes, transcripts or recordings, belong to Mr. Symonds, and Mr. Symonds has confirmed that he has never provided Mr. Ellison with any access to or copies of any such materials. Id. at ¶ 3. Simply put, the materials that Mr. Symonds created in the course of his research are not within Mr. Ellison's "possession, custody or control." See U.S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989) (holding that the party seeking production of documents bears the burden of proving that the opposing party has them in its possession, custody or control).

Plaintiffs' argument that Mr. Ellison has "possession, custody and control" of Mr. Symonds' research materials simply because Mr. Symonds is a "close friend and colleague" (Plfs' Mot. at 11) is simply incorrect. The "control" standard requires that the party from whom documents are sought has the "legal right to obtain" them from a nonparty in whose possession

---

[2] All references to "Plfs' Ex. __" are to the Declaration of Mark Solomon in Support of Plaintiffs' Motion.

1  they reside. *In re Citric Acid Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999). Thus, for instance, a
2  party is not in control of documents if the party can only obtain them with the permission of
3  another. *See e.g., Clark v. Vega Wholesale, Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998) (holding
4  that a party was not in control of her medical records even though she could obtain them by
5  signing a release and stating that "a party [must] have exclusive control of the documents before
6  the Court orders production," such as, for example, "when a party is able to command release of
7  the documents by the person or entity in actual possession . . . [,] usually [as] the result of statute,
8  affiliation or employment.").[3] Here, Mr. Symonds' declaration makes clear that the materials he
9  created in the course of his research, including any interview notes, transcripts or recordings, are
10 his sole property, to which neither Mr. Ellison nor anyone else has a right of access. Clearly, Mr.
11 Ellison does not have "possession, custody or control" of any such materials.
12         Plaintiffs' request for permission to subpoena Mr. Symonds also should be
13 denied. As Plaintiffs know, Mr. Symonds lives and works in London, England, and therefore is
14 not subject to the subpoena power of this Court. *See, e.g.,* Symonds Decl. Any attempt to
15 subpoena Mr. Symonds would require the Court to issue a letter of request to a British court,
16 which would, in turn, have to address the question of whether the requested discovery is proper
17 under the Hague Convention. *See, e.g., Tulip Comps. Int'l B.V. v. Dell Comp. Corp.*, 254 F.
18 Supp. 2d 469, 472 (D. Del. 2003) ("Pursuant to the Convention, a Letter of Request must provide
19 the contracting state with specific information regarding the lawsuit and the information sought.
20 The signatory state, upon receipt and consideration, 'shall [then] apply the appropriate measure
21 of compulsion' as is customary 'for the execution of orders issued by the authorities of its own

---

[3] Plaintiffs cite no authority for their argument that Mr. Ellison has control over tapes in Symonds' possession because he has the "practical ability" to demand them, and in fact, the Ninth Circuit has squarely rejected this so-called "practical ability" standard. *See In re Citric Acid Litig.*, 191 F.3d at 1108; *see also e.g., Forester v. City of Vancouver*, 2006 U.S. Dist. LEXIS 72624 (D. Wash. 2006) ("The 'practical-ability-to-obtain documents' test, urged upon this Court by the defendants, has been squarely rejected by the Ninth Circuit."). Plaintiffs' failure to cite any authority for this point – as well as their failure to cite any evidentiary support for most of the factual assertions in their motion – violates Local Rules 7-4(a)(5) and 7-5(a), which require a moving party to cite specific support for legal and factual assertions. This failure alone requires that the Motion be denied. *See, e.g., Freeman v. Alta Bates Summit Med. Center Campus, et al.*, 2004 WL 2326369, at *6-*7 (N.D. Cal. 2004) (denying motion for failure to comply with Local Rule 7-4(a)(5)).

1  country.'") (quoting Hague Evidence Convention, Art. 10) (alterations in original). This process
2  would take weeks, if not months, and would substantially delay the completion of discovery,
3  which was supposed to close on October 2, 2006. Although Plaintiffs suggest that their delay in
4  seeking discovery from Mr. Symonds is justified by their assumption that they could have
5  obtained these materials from Mr. Ellison (*see* Plfs' Mot. at 12 n.2), Plaintiffs' (incorrect) claim
6  that Mr. Ellison had control over these materials is based upon a document that was produced
7  after the October 2, 2006 close of discovery, in response to the Special Master's September 15,
8  2006 Order. *See* Plfs' Ex. 1 at NDCA-ORCL; Ex. 3 (October 16, 2006 Letter from S. Coyle to
9  S. Williams); Ex. 4 (September 15, 2006 Order). Plaintiffs do not seriously suggest that they
10 previously believed that these materials would have been in Mr. Ellison's control. Indeed, if
11 they did, it would raise the separate, but related question of why they did not previously seek the
12 materials from Mr. Ellison. Plaintiffs have identified absolutely no basis, let alone a reasonable
13 basis, for concluding that Mr. Ellison would have had possession, custody or control over Mr.
14 Symonds' research materials. If Plaintiffs wanted to seek access to Mr. Symonds' materials,
15 they should have done so before the close of fact discovery. Any attempt to subpoena those
16 records now will result in weeks of delay.

17       C.    **Plaintiffs' Demand For All Other Documents "Concerning And Created In
18             Preparation For" SOFTWAR Is Overbroad And Not Reasonably Calculated
19             To Lead To The Discovery Of Admissible Evidence.**

20       Much of Plaintiffs' Motion is devoted to arguing that the book SOFTWAR
21 contains passages discussing issues relevant to this case. *See* Plfs' Mot. at 1-9. But Plaintiffs are
22 not seeking to compel production of the book. As Plaintiffs' own Motion makes clear, however,
23 Plaintiffs have had ample opportunity to ask Mr. Ellison questions about the book. *See id.* at 5-8.
24       What Plaintiffs are seeking to compel (other than the final agreement and the
25 interview notes, transcripts and recordings discussed above) is all documents "concerning and
26 created in preparation for the book SOFTWAR." *See* Plfs' Mot. at 10. This request, on its face,
27 is both vague and overbroad. Even if the book were confined to subjects relevant to this case, all
28 documents "concerning" the book, and all documents "created in preparation for the book"

would be overly broad and inappropriate. See *Synopsys, Inc. v. Nassda Corp.*, 2002 WL 32749137, at 1 (N.D. Cal. 2002) (denying discovery requests as overbroad because many of the documents sought were "irrelevant to this lawsuit") *Waggener v. UNUM Life Ins. Co. of Am.*, 238 F. Supp. 2d 1179, 1188 (S.D. Cal. 2002) (denying discovery requests as overbroad where they sought documents that were not relevant to the claims and defenses in the case).

In fact, however, the book addresses a wide variety of subjects that are completely irrelevant to the issues in this case. Just a few examples illustrate the point:

- *Chapter 4: "Beginnings"* – focusing on Oracle's founding.
- *Chapter 5: "To the Limit"* – discussing events at Oracle during the 1980s and early 1990s.
- *Chapter 6: "Growing Up"* – discussing Oracle during the first half of the 1990s.
- *Chapter 8: "Falling Out"* – describing the events that led to former President of Oracle Ray Lane leaving the company in 2000.
- *Chapters 17 and 26: "Alternative Stress" and "The First Loser"* – detailing Mr. Ellison's boat racing activities.
- *Chapter 19: "Family Values"* – describing Mr. Ellison's childhood, dealing with being adopted, family background, early adulthood and children.
- *Chapter 20: "Three Strikes, You're Out"* – focusing on Ellison's personal relationships.

*See* Ex. 2 (SOFTWAR Excerpts).

These portions of the book itself are completely irrelevant; documents "concerning" and "created in preparation for" the book are even more so. And other than the "final" agreement and the research materials discussed above, Plaintiffs have not identified *any* specific documents that would be responsive to this request, let alone explain why such documents would be reasonably calculated to lead to the discovery of admissible evidence. To the extent that Plaintiffs' broad request somehow includes documents touching on the issues in

1  this case, there is absolutely no basis to conclude that such documents would be sufficiently
2  probative to warrant the burden of searching for all documents responsive to this request.
3        This is particularly true where, as here, Plaintiffs already have voluminous
4  materials from Oracle and Mr. Ellison that are directly relevant to the case at hand. Oracle has
5  produced over one millions pages worth of documents, most of which are contemporaneous
6  documents from the relevant time period. Included in these documents are at least 12,000 pages
7  of documents sent or received by Mr. Ellison, and a number of other documents referring to Mr.
8  Ellison. Coyle Decl. at ¶ 7. These documents, in addition to the testimony of over well over 100
9  witnesses, are the primary evidence relevant to the facts and circumstances at issue here. In
10 addition, to the extent that portions of SOFTWAR are relevant to the facts at issue in this case,
11 Plaintiffs already have the book itself, which includes Mr. Ellison's own statements and
12 commentary, and Plaintiffs have had a full and fair opportunity to question Mr. Ellison about the
13 book. In light of the voluminous materials Plaintiffs already have, including numerous Oracle
14 documents from the relevant time period, Plaintiffs' request for all documents "concerning or
15 created in preparation for" a book that was researched and written *after* the time period at issue
16 here simply is not "reasonably calculated to lead to the discovery of admissible evidence," (Fed.
17 R. Civ. P. 26(b)), and the probative value of the materials Plaintiffs seek are vastly outweighed
18 by the burden of searching for documents responsive to this vague and overbroad request.
19      D.   **Defendants Have Never Agreed That Documents "Concerning" SOFTWAR**
20           **Are Relevant Or Responsive.**
21           Plaintiffs suggest that Defendants have effectively conceded that documents
22 "concerning" SOFTWAR are relevant and responsive because Defendants "recently produced to
23 plaintiffs documents concerning nothing but SOFTWAR." Plfs' Mot. at 8. To that end,
24 Plaintiffs cite a single document that Defendants produced on October 16, 2006 in response to
25 the Special Master's September 15, 2006 Order. See Plfs' Mot. at 2-3 (citing Plfs' Ex. 1 at
26 NDCA-ORCL 1053825); Ex. 4 (September 15, 2006 Order). The document is a January 5, 2001
27 email with three attachments (one of which is a v-card identifying the sender of the email),
28 including the draft agreement relating to SOFTWAR to which Plaintiffs' refer, as well as a

LATHAM-WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO
SF\561362

8

DEF's OPP TO PLF's MOT. TO COMPEL SOFTWAR DOCS
Master File No. C-01-0988-MJJ (JCS)

FROM LATHAM & WATKINS LLP Fax Machine #2     (MON) 11. 13' 06 17:41/ST. 17:39/NO. 4861909999 P 11

1   document that appears to describe the subject of the anticipated book. See Plfs' Ex. 1 at NDCA-
2   ORCL 1053823-1053839; NDCA-ORCL 1053842-1053855.
3           Contrary to Plaintiffs' argument, this document was not produced because
4   documents "concerning" SOFTWAR, *per se*, are relevant or responsive. It was produced
5   because one of the attachments to the e-mail refers to statements by certain unnamed industry
6   analysts regarding Oracle's Suite 11i. See Plfs' Ex. 1 at NDCA-ORCL 1053850. The document
7   is responsive, if at all, to the portion of the Court's September 15 Order requiring Defendants to
8   produce documents and communications with or concerning research analysts or securities
9   analysts. See Ex. 4 (September 15, 2006 Order). The remainder of the document – including the
10  draft agreement and the cover e-mail – is neither relevant nor responsive. See Plfs' Ex. 1.[4]
11  Simply put, by producing this document, Defendants did not, as Plaintiffs argue, somehow
12  concede that *all* documents "concerning" SOFTWAR are either relevant or responsive here. On
13  the contrary, as discussed above, Defendants believe this request is vague, overbroad, and calls
14  for voluminous documents that have nothing to do with the issues in this case.
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  
27  [4] As noted above, Plaintiffs go to great lengths to show that certain portions of the book itself refer to facts and circumstances at issue in this case. See Plfs' Mot. at 1-10. But Plaintiffs
28  have not cited any document request or order to which the draft agreement (or the final agreement, for that matter) would be responsive.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel Defendants' Production of Documents Concerning and Created in Preparation for the Book SOFTWAR.

Dated: November 13, 2006

Respectfully submitted,

LATHAM & WATKINS LLP
Peter A. Wald
Michele F. Kyrouz
Patrick E. Gibbs
Jamie L. Wine

By: *Patrick E. Gibbs/SPJL*
Patrick E. Gibbs
Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

FROM LATHAM & WATKINS LLP Fax Machine #2 (MON) 11. 13' 06 17:42/ST. 17:39/NO. 4861909999 P 13

## PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 years and not a party to this action. My business address is Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, San Francisco, CA 94111-2562.

On November 13, 2006, I served the following document described as:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN PREPARATION FOR THE BOOK SOFTWAR**

**DECLARATION OF SEAN P. J. COYLE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN PREPARATION FOR THE BOOK SOFTWAR**

**DECLARATION OF MATTHEW SYMONDS**

by serving a true copy of the above-described document in the following manner:

### BY HAND DELIVERY

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for hand delivery by a messenger courier service or a registered process server. Under that practice, documents are deposited to the Latham & Watkins LLP personnel responsible for dispatching a messenger courier service or registered process server for the delivery of documents by hand in accordance with the instructions provided to the messenger courier service or registered process server; such documents are delivered to a messenger courier service or registered process server on that same day in the ordinary course of business. I caused a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for hand delivery by a messenger courier service or a registered process server.

The Honorable Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Shawn A. Williams, Esq.
Willow E. Radcliffe, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman &
   Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238

FROM LATHAM & WATKINS LLP Fax Machine #2    (MON) 11. 13' 06 17:42/ST. 17:39/NO. 4861909999 P 14

## BY FACSIMILE

I am familiar with the office practice of Latham & Watkins LLP for collecting, processing, and transmitting facsimiles. Under that practice, when a facsimile is deposited with the Latham & Watkins LLP personnel responsible for facsimiles, such facsimile is transmitted that same day in the ordinary course of business. I deposited the above-described document for facsimile transmission in accordance with the office practice of Latham & Watkins LLP for collecting and processing facsimiles. The facsimile of the above-described document was transmitted to the following party from San Francisco, California on November 13, 2006, at the time noted on the attached confirmation sheet:

Mark Solomon, Esq.
Douglas Britton, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman &
   Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Fax No.: (619) 231-7423

Shawn A. Williams, Esq.
Willow E. Radcliffe, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman &
   Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
Fax No.: (415) 288-4534

The facsimile number of the sending machine is (415) 395-8095. Said transmission was complete and without error. The party on whom this facsimile transmission has been served has agreed in writing to such form of service pursuant to agreement.

## BY OVERNIGHT MAIL DELIVERY

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for overnight mail delivery by Federal Express. Under that practice, documents are deposited with the Latham & Watkins LLP personnel responsible for depositing documents in a post office, mailbox, subpost office, substation, mail chute, or other like facility regularly maintained for receipt of overnight mail by Federal Express; such documents are delivered for overnight mail delivery by Federal Express on that same day in the ordinary course of business, with delivery fees thereon fully prepaid and/or provided for. I deposited in Latham & Watkins LLP' interoffice mail a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for overnight mail delivery by Federal Express:

Mark Solomon, Esq.
Douglas Britton, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 13, 2006, at San Francisco, California.

*Doreen M. Griffin*
Doreen M. Griffin

| | |
|---|---|
| 1 | LATHAM & WATKINS LLP<br>Peter A. Wald (SBN 85705) |
| 2 | Michele F. Kyrouz (SBN 168004)<br>Sean P.J. Coyle (SBN 233039) |
| 3 | 505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111-2562 |
| 4 | Telephone: (415) 391-0600<br>Facsimile: (415) 395-8095 |
| 5 | E-mail: peter.wald@lw.com<br>michele.kyrouz@lw.com |
| 6 | sean.coyle@lw.com<br>LATHAM & WATKINS LLP |
| 7 | Jamie L. Wine (SBN 181373)<br>885 Third Avenue, Suite 1000 |
| 8 | New York, NY 10022-4834<br>Phone: (212) 906-1200 |
| 9 | Fax: (212) 751-4864<br>E-mail: jamie.wine@lw.com |

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

10

11  Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

12  ORACLE CORPORATION
      Dorian E. Daley (SBN 129049)
13    James C. Maroulis (SBN 208316)
    500 Oracle Parkway
14  Mailstop 5OP7
    Redwood Shores, CA 94065
15  Telephone: (650) 506-5200
    Facsimile: (650) 506-7114
16  E-mail: jim.maroulis@oracle.com

17  Attorneys for Defendant ORACLE CORPORATION

18
                        UNITED STATES DISTRICT COURT
19
              NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION
20

| | |
|---|---|
| 21<br>22 | In re ORACLE CORPORATION<br>SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS)<br>(Consolidated) |
| 23 | | **DECLARATION OF SEAN P.J. COYLE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'** |
| 24 | This Document Relates To: | **MOTION TO COMPEL DEFENDANTS'** |
| 25 | ALL ACTIONS. | **PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN** |
| 26 | | **PREPARATION FOR THE BOOK SOFTWAR** |
| 27 | | |
| 28 | | |

CONFIDENTIAL

I, Sean P. J. Coyle, declare as follows:

1. I am an attorney duly licensed to practice before the courts of the State of California. I am an associate with the law firm of Latham & Watkins LLP ("Latham"), counsel of record for Defendants in the above-entitled action. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion to Compel Defendants' Production of Documents Concerning and Created in Preparation for the Book SOFTWAR.

3. Attached hereto as Exhibit 1 is a true and correct copy of deposition transcript of the September 21, 2006 Deposition of Lawrence Ellison in the Consolidated Proceeding (Master File No. C-01-0988-MJJ (JCS)) entitled *In re Oracle Corporation Securities Litigation* in the Northern District of California.

4. Attached hereto as Exhibit 2 is a true and correct copy of excerpts of the book *SOFTWAR: An Intimate Portrait of Larry Ellison and Oracle*, by Matthew Symonds.

5. Attached hereto as Exhibit 3 is a true and correct copy of an October 16, 2005 letter from Sean P.J. Coyle, for Defendants, to Shawn A. Williams, for Plaintiffs.

6. Attached hereto as Exhibit 4 is a true and correct copy of the Court's September 15, 2006 Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Further Responses to Plaintiffs' Third Set of Requests for Production, Fourth Set of Interrogatories and Third Set of Requests for Admission.

///
///
///
///
///
///
///
///

FROM LATHAM & WATKINS LLP Fax Machine #2        (MON) 11. 13' 06 17:42/ST. 17:39/NO. 4861909999 P 17

7. I am informed and do believe that Defendants have produced in this action over 12,000 pages of e-mails and other documents sent to or received by defendant Larry Ellison.

I hereby certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 13, 2006 in San Francisco, California.

*Sean P.J. Coyle*

SFS516161.2

LATHAM•WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

2 COYLE DECL. ISO DEF'S OPP. TO P'S MOTION TO COMPEL
DEF. PRODUCTION OF DOCS CONCERNING BOOK SOFTWAR

FROM LATHAM & WATKINS LLP Fax Machine #2    (MON)11.13'06 17:42/ST. 17:39/NO. 4861909999 P 18

## PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 years and not a party to this action. My business address is Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, San Francisco, CA 94111-2562.

On November 13, 2006, I served the following document described as:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN PREPARATION FOR THE BOOK SOFTWAR**

**DECLARATION OF SEAN P. J. COYLE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS CONCERNING AND CREATED IN PREPARATION FOR THE BOOK SOFTWAR**

**DECLARATION OF MATTHEW SYMONDS**

by serving a true copy of the above-described document in the following manner:

### BY HAND DELIVERY

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for hand delivery by a messenger courier service or a registered process server. Under that practice, documents are deposited to the Latham & Watkins LLP personnel responsible for dispatching a messenger courier service or registered process server for the delivery of documents by hand in accordance with the instructions provided to the messenger courier service or registered process server; such documents are delivered to a messenger courier service or registered process server on that same day in the ordinary course of business. I caused a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for hand delivery by a messenger courier service or a registered process server.

| | |
|---|---|
| The Honorable Edward A. Infante (Ret.)<br>JAMS<br>Two Embarcadero Center, Suite 1500<br>San Francisco, CA 94111 | Shawn A. Williams, Esq.<br>Willow E. Radcliffe, Esq.<br>Lerach, Coughlin, Stoia, Geller, Rudman &<br>    Robbins LLP<br>100 Pine Street, Suite 2600<br>San Francisco, CA 94111-5238 |

FROM LATHAM & WATKINS LLP Fax Machine #2    (MON) 11. 13' 06 17:42/ST. 17:39/NO. 4861909999 P 19

## BY FACSIMILE

I am familiar with the office practice of Latham & Watkins LLP for collecting, processing, and transmitting facsimiles. Under that practice, when a facsimile is deposited with the Latham & Watkins LLP personnel responsible for facsimiles, such facsimile is transmitted that same day in the ordinary course of business. I deposited the above-described document for facsimile transmission in accordance with the office practice of Latham & Watkins LLP for collecting and processing facsimiles. The facsimile of the above-described document was transmitted to the following party from San Francisco, California on November 13, 2006, at the time noted on the attached confirmation sheet:

Mark Solomon, Esq.
Douglas Britton, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman &
  Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Fax No.: (619) 231-7423

Shawn A. Williams, Esq.
Willow E. Radcliffe, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman &
  Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111-5238
Fax No.: (415) 288-4534

The facsimile number of the sending machine is (415) 395-8095. Said transmission was complete and without error. The party on whom this facsimile transmission has been served has agreed in writing to such form of service pursuant to agreement.

## BY OVERNIGHT MAIL DELIVERY

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for overnight mail delivery by Federal Express. Under that practice, documents are deposited with the Latham & Watkins LLP personnel responsible for depositing documents in a post office, mailbox, subpost office, substation, mail chute, or other like facility regularly maintained for receipt of overnight mail by Federal Express; such documents are delivered for overnight mail delivery by Federal Express on that same day in the ordinary course of business, with delivery fees thereon fully prepaid and/or provided for. I deposited in Latham & Watkins LLP' interoffice mail a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for overnight mail delivery by Federal Express:

Mark Solomon, Esq.
Douglas Britton, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **November 13, 2006**, at San Francisco, California.

*Doreen M. Griffin*
Doreen M. Griffin