031907 Matthew Symonds DRAFT.txt

CONFIDENTIAL
DRAFT

Monday, March 19, 2007

(10:31 a.m.)

THE VIDEOGRAPHER:  Here begins videotape number 1
in the deposition of Matthew Symonds, in the matter of in
Re. Oracle Corporation Securities Litigation in the
United States District Court, Northern District of
California.  Case number C-01-0988-MJJ.

Today's date is March 19th, 2007.  The time on
the video monitor is 10:31.  The video operator today is
Wendy Viner of Merrill Legal Solutions.  This video
deposition is taking place at Harbottle & Lewis, Hanover
House, 14 Hanover Square, London, West 1.

Counsel, would you please voice identify
yourselves and state whom you represent.

MR. SOLOMON:  Mark Solomon from Lerach Coughlin in
San Diego, representing the Plaintiffs.

MS. KAPLAN:  Stacey Kaplan of Lerach Coughlin,
representing the Plaintiffs.

MR. MULLIKEN:  David Mulliken of Latham & Watkins
in London, representing the Defendants.

MR. GIBBS:  Patrick Gibbs, also from
Latham & Watkins, for the Defendants.

MR. FENTON:  I am Adam Fenton QC.  I am the
Examiner appointed by the court.

MR. SHILLITO:  Richard Shillito, solicitor,

1

CONFIDENTIAL
DRAFT

031907 Matthew Symonds DRAFT.txt
representing Matthew Symonds, the witness.

MR. PARKES: Richard Parkes QC, barrister,
representing Matthew Symonds, the witness.

THE VIDEOGRAPHER: Thank you. The court reporter
today is Rose Kay of Merrill Legal Solutions. Please
proceed.

STATEMENT BY MR. FENTON:

MR. FENTON: There is one matter I am going to
raise on the record before taking the oath from Mr. Symonds
and that is that I have suggested to the parties that in
relation to objections to questions based on grounds other
than privilege, that I should not offer my opinion which in
any event is only a non-binding opinion on those objections;
in the interests of saving time and money for the parties.

And the parties are agreeable to that, but I have
made clear and I stress for the record that should anyone
wish me to start offering my opinion on objections generally
or in relation to a specific objection, I would be delighted
to do so; and the only reason I am suggesting I don't is in
fact to save time and money for the parties.

So with that introduction, I am going to swear
Mr. Symonds. Will you please say after me.

MATTHEW SYMONDS

having been duly sworn,

testified as follows:

2

CONFIDENTIAL
DRAFT

MR. FENTON: Very good. So the questioning may
proceed.

031907 Matthew Symonds DRAFT.txt
DIRECT EXAMINATION BY MR. SOLOMON:

        BY MR. SOLOMON:

        Q.  Thank you, Mr. Fenton.

        Mr. Symonds, could you tell me your full name,

please.

        A.  My name is Matthew John Symonds.

        Q.  And what is your occupation?

        A.  I am on the advice of counsel as to the

privilege. Sorry, Richard.

        MR. PARKES:  No, may I interrupt at that point,

sir.

        MR. FENTON:  Yes.

        MR. PARKES:  On the advice of counsel, Mr. Symonds
will not be answering any further questions. He will be
asserting privilege not to answer, pursuant to the Fifth
Amendment to the U.S. constitution.

        MR. FENTON:  Right. Well, what I would be
grateful for some assistance on is: is this, as your
submission, advice, is this objection being taken as
a matter of American law or is it being taken as a matter of
English law?

        MR. PARKES:  It is taken ultimately as a matter of
American law, but in the short term it has to be taken also

3

CONFIDENTIAL
DRAFT

as a matter of English law.

        MR. FENTON:  Because as I understand it, I am
required to rule on matters of privilege. But I am
obviously in a position to rule as a matter only of English
law, as I understand it. And I will need some assistance as

031907 Matthew Symonds DRAFT.txt
to whether or not the privilege against self-incrimination
would apply in these circumstances, given that it is
evidence being taken for foreign proceedings.

        MR. PARKES:  I think that the correct position, as
far as English law is concerned, would be simply that there
is a discretion in the court as to whether or not to order
the answering of a question.

        There is no right to self-incrimination under
English law in respect of potential foreign criminal
proceedings.  Section 14 of the Civil Evidence Act 1968
plainly does not apply, which in general terms establishes
the right to a privilege to self-incrimination in this
jurisdiction; does not apply in respect of foreign criminal
proceedings.  And --

        MR. FENTON:  And I am sorry to interrupt, but
these are obviously not criminal proceedings in any event.

        MR. PARKES:  These are not; that is certainly
true.  But of course the question would be whether the claim
to privilege related to anticipated foreign or domestic
criminal proceedings, and I have to accept that the claim to

                                4

                          CONFIDENTIAL
                             DRAFT

privilege in this case would relate to the possibility of
foreign criminal proceedings.  And therefore section 14 of
the Civil Evidence Act would have no application.

        MR. FENTON:  Right.

        MR. PARKES:  It would appear to be that the
closest that one can -- the furthest that one can go,
I think, under the English jurisdiction is, and I am afraid to

                            Page 4

031907 Matthew Symonds DRAFT.txt
that in my haste this morning, I have left this particular
authority behind. I will have to ask Lawrence Abramson if
he will be kind enough to extract it for me from his
library.

The furthest one can go is a decision of
Mr Justice Morritt in the case of Arab Bank v Hashim,
I think the name is. Number 2. Can I give you the
reference if you don't mind. I am so sorry about that.

MR. ABRAMSON: Do you want this now?

MR. PARKES: I think it would probably be helpful
to have it now.

MR. FENTON: I think I would like it now if it is
going to be relied on, please.

MR. PARKES: May I just find my note. It is 1990,
1 weekly Law Reports. If you could get me the 1990 volume,
the first volume of the 1990 --

MR. ABRAMSON: What is the name of the case?

MR. PARKES: It is Arab Monetary Fund, I think.

5

CONFIDENTIAL
DRAFT

I am sorry, not Arab Bank. Arab Monetary Fund, number 2,
I think. But could I possibly borrow your copy of Phippson
for a moment, sir.

MR. FENTON: Yes.

MR. PARKES: Because I think I can get the
reference out of that.

MR. CASTELLANI: It is Arab Monetary Fund v
Hashim.

MR. PARKES: Against Hashim, that is right.

MR. CASTELLANI: 1989, 1 weekly Law Reports.
Page 5

031907 Matthew Symonds DRAFT.txt

There is a number 2; it came later.

     MR. PARKES: There were several, actually.
I think it was --

     MR. CASTELLANI: It is 1 All England, 673.

     MR. FENTON: I think one needs to be careful
because Arab Monetary Fund v Hashim has generated an
enormous number of interlocutories.

     MR. PARKES: That is absolutely right.

     MR. FENTON: So let's just make sure it is the --
you may well be right.

     MR. ABRAMSON: But it is a first instance
decision.

     MR. PARKES: It is a first instance decision of
Mr Justice Morritt and I think actually, I think it is 1990,
I think, 1 All England, 673, I think is going to be the

6

CONFIDENTIAL
DRAFT

right reference.

     MR. FENTON: At the top, it looks as if that is in
89, 1 Weekly. It looks like it is ...

     MR. PARKES: There are two related decisions.
There is one of Mr Justice Hoffman the following year and
one of Mr Justice Morritt. And it may well be -- I am
sorry, I think you may well be right. Yes, I am sorry. Can
somebody go after Mr. Abramson? It is 1989, 1 weekly Law
Reports.

     MR. FENTON: Could I just ask. There is no --
aside to this question at all, has the fact that privilege
is going to be taken, when was that communicated to you?

031907 Matthew Symonds DRAFT.txt
MR. PARKES: Only this morning, I am afraid.

MR. FENTON: Right.

MR. PARKES: In the light of discussions with the San Francisco counsel, in the course of the weekend.

MR. FENTON: Yes. As I said, there was no sign of this.

MR. PARKES: No, I understand.

MR. FENTON: I am just anxious to ensure that everyone concerned has an opportunity to consider the point.

MR. PARKES: Yes.

MR. FENTON: So there will now be a short delay whilst the relevant authorities are ...

MR. PARKES: I apologize that I left that behind.

7

CONFIDENTIAL
DRAFT

THE VIDEOGRAPHER: Shall we go off the record?

MR. FENTON: Yes, that is probably sensible.

THE VIDEOGRAPHER: Going off the record. The time is 10:41.

(10:41 a.m.)

(A short break)

(11:01 a.m.)

THE VIDEOGRAPHER: We are back on the record. The time is 11:01.

MR. FENTON: Right. Now, do you want to say something? I was going to say something, if you don't mind.

MR. PARKES: Please.

MR. FENTON: Which is that having taken advantage of the brief adjournment to look at the matter myself, it seems to me that the privilege against self-incrimination
Page 7

031907 Matthew Symonds DRAFT.txt

under English law does not apply; it clearly does not apply
to section 14, as Mr. Parkes mentioned, which I have
confirmed for myself.

But I think I should also say that the matter
appears to me to be dealt with in section 3 of the Evidence
(Proceedings in Other Jurisdictions) Act 1975, which is the
Act pursuant to which this deposition is taking place.

And section 3(1), which is headed "Privilege of
witnesses", says:

"A person shall not be compelled by virtue of an

8

CONFIDENTIAL
DRAFT

order under section 2 above ..."

The order in this case is under section 2.

"... to give any evidence which he could not be
compelled to give:

(a). In civil proceedings in the part of the UK
in which the court that made the order exercises
jurisdiction."

It seems to me that is not relevant because there
is not a privilege against self-incrimination as a matter of
English law. That is to say, with a view to being
incriminated by reference to English proceedings.

"(b). Subject to subsection (2) below, in civil
proceedings in the country or territory in which the
requesting court exercises jurisdiction."

So section 3(1)(b) is, on what Mr. Parkes has
said, potentially applicable because it is -- it provides
effectively that a person shall not be compelled by virtue

031907 Matthew Symonds DRAFT.txt
of an order under this Act to give evidence which he could

not be compelled to give in civil proceedings in the country

or territory in which the requesting court exercises

jurisdiction.

So that would be a matter for the District Court.
A question of what the District Court in California would
do.

However, section 3(2) says:

9

CONFIDENTIAL
DRAFT

"Subsection (1)(b) above ..."

Which is the potentially relevant section I have
just mentioned about a witness not being compelled to give
evidence where he could not be compelled in the civil
proceedings in the jurisdiction of the requesting court.

"Subsection (1)(b) above shall not apply, unless
the claim of the person in question to be exempt from giving
the evidence is either:

"Supported by a statement contained in the
request."

Which is not the case in this case, I interject.
Or (b):

"Conceded by the applicant for the order."

And I have not heard the Plaintiffs yet, but
I infer it won't be conceded.

"And where such a claim made by any person is not
supported or conceded as aforesaid, he may (subject to the
other provisions of this section) ..."

And I interject there, I don't see that those are
relevant.

Page 9

031907 Matthew Symonds DRAFT.txt

"He may be required to give the evidence to which the claim relates, but that evidence shall not be transmitted to the requesting court if that court, on the matter being referred to it, upholds the claim."

And so the situation, as I see it, and I hope this

10

CONFIDENTIAL
DRAFT

is a helpful rather than an unhelpful interjection, is that I have a discretion to require the evidence to be given, to require Mr. Symonds to answer. But the evidence will not be transmitted even to the requesting court if I required it and if he answered it, or the court required it and he answered it, the English court required it and he answered it; if objection was taken to the admissibility of the evidence before the Californian court. And would that only be transmitted if the Californian court held that it was admissible?

But that, as I see it, is a summary of the position. What I would like some assistance on is on the exercise of my discretion as to whether or not Mr. Symonds should be required to answer. And it seems to me again, hopefully being helpful rather than unhelpful, that I would be grateful for some assistance on how the Californian court or the jurisdiction and the relevant place in California, would regard what is alleged to have been done or may alleged to have been done; whether that would be regarded as criminal.

In other words, what the risk of being required to answer the questions, what risks that might or might not

031907 Matthew Symonds DRAFT.txt
expose Mr. Symonds to. That is one thing that occurs to me.

But I am in no way curtailing anything that anyone else wants to say; and as I say, I hope that has been

11

CONFIDENTIAL
DRAFT

a helpful rather than not interjection. And that is all I have to say.

SUBMISSIONS BY MR. PARKES:

MR. PARKES: That is thoroughly helpful, sir, because that saves me taking you there, which was going to be my next step.

The purpose of the reference to the case of the Arab Monetary Fund v Hashim decision of Mr Justice Morritt was simply to point out to you that this being in the context of a Mareva injunction which entailed discovery in aid of the injunction, there is a dictum of Mr Justice Morritt at page 474 of the decision which simply says that -- obviously this is in the context of an injunction and therefore it is a slightly different matter -- in the case of self-incrimination for offences under the law on any part of the United Kingdom, he says.

MR. FENTON: Sorry.

MR. PARKES: I am sorry, 474(c).

MR. FENTON: Sorry.

MR. PARKES: "In the case of self-incrimination for offences under the law of any part of the UK, privilege exists. In the case of offences under the criminal law of a foreign state, there is no privilege, but I see no reason why the possibility of self-incrimination or the incrimination of others should not be a factor to be taken
Page 11

031907 Matthew Symonds DRAFT.txt

12

CONFIDENTIAL
DRAFT

into account in deciding whether and, if so, in what terms
a disclosure order should be made."

And no doubt similar considerations will inform
the court's decision as to whether or not to require
a witness to give an oral answer to a question.  But that,
I think, is as far as I can take matters; apart from
section 3.

MR. FENTON:  Right.

MR. PARKES:  As far as section 3 is concerned,
first of all I would like to explain to you what the
potential risk is for Mr. Symonds in the United States.
^^    And also to argue that the claim of Mr. Symonds to be
exempt from giving the evidence is supported by a statement
contained in the request.  Plainly that is not so in express
terms, but I will explain if I may in a moment.

MR. FENTON:  I don't mean to pre-judge that.

MR. PARKES:  Obviously you are right in the sense
that there is no express assertion in the letter of request
that the matters for which the deposition is sought are
likely to attract Fifth Amendment privilege.

You will have seen from the letter of request that
it seeks information in particular, if we -- I don't know
how you have got it.  Mine is paginated throughout,
unfortunately.

MR. FENTON:  I have got it as an exhibit.

13

031907 Matthew Symonds DRAFT.txt
CONFIDENTIAL
DRAFT

MR. PARKES: To Mr. Symonds's affidavit. That is
right, witness statement. It is page 5. I would like to
take you to first the letter of request. You will
observe --

MR. FENTON: Here begins these ...

MR. PARKES: That's right. That is the summary
of -- the end of the summary of the complaint, the letter of
request.

MR. FENTON: Yes.

MR. PARKES: You will see that the Plaintiffs are
pursuing relief in the class action for the defendants'
destruction of evidence. Plaintiffs have claimed that
Defendants have engaged in additional evidence destruction
since the commencement of this action in March 2001. And
therefore among the remedies Plaintiffs seek for evidence
destruction are judgment or an adverse inference instruction
to the jury at trial.

MR. FENTON: Yes.

MR. PARKES: If one then looks on, there is then
at page 6 a description of the interviews which Mr. Symonds
conducted with Mr. Ellison.

MR. FENTON: Yes.

MR. PARKES: And at page 7, fifth line down, we
see that -- well, take it at the top.

"Plaintiffs immediately requested information

14

CONFIDENTIAL
DRAFT

regarding Defendants' production of the Softwar materials."

031907 Matthew Symonds DRAFT.txt

That is following the order for production by the U.S. court.

"In response, Plaintiffs counsel has stated that counsel for Defendants indicated that they were not yet sure whether Defendants' would take the position that the materials no longer existed or that Symonds was refusing to produce them. Defendants' counsel denies suggesting the possibility that the materials were destroyed. Nonetheless, on January 11, 2007, Defendants' counsel represented to Plaintiffs that at least some of the materials had been destroyed. As Symonds' November 9, 2006 declaration made it clear that the materials still existed at that point, to the extent that they have been destroyed, such destruction must necessarily have taken place between 9th November and 11th January. However, all information Plaintiffs have regarding the whereabouts of the materials ordered no "to be"     produced has come from counsel for Defendants. Plaintiffs are seeking production of such materials directly from Symonds or, to the extent that such materials have, in fact, been destroyed, testamentary evidence regarding that destruction."

And then you will see going down that page, that it is said that Mr. Symonds, according to the Defendants counsel, Mr. Symonds --

15

CONFIDENTIAL
DRAFT

MR. FENTON:  Yes.

MR. PARKES:  You will see that there is some reference to PC World.

Page 14

031907 Matthew Symonds DRAFT.txt
MR. FENTON:   Yes.

MR. PARKES:   And I don't want to drag you there
this at enormous length.  The point is, one sees it again if
one goes over the page to page 8, Mr. Symonds' attempt to
replies with the order by production of transcripts.

And then over on page 9, "Purpose of the evidence
or judicial act sought".

"The evidence at issue in this letter of request
consists of materials containing direct statements by
Defendant Larry Ellison regarding the events at issue in
this class action, as well as information regarding the
possible deliberate destruction of some of those materials.
The evidence regarding destruction of these materials is
relevant to the scienter, or mens rea, of Defendants, the
falsity of Defendants' statements, and the materiality of
Defandants' statements, all of which are elements that
PlaintiffsDefendants must prove at trial.

"In addition, after reviewing any evidence
regarding their destruction, should the court find that
these materials were destroyed in violation of either the
U.S. Federal Rules of Civil Procedure or the Private
Securities Litigation Reform Act of 1995, possible sanctions

16

CONFIDENTIAL
DRAFT

include default judgment of the presentation of evidence
regarding the destruction at trial accompanied by an adverse
inference jury instruction."

So you will see that the letter of request majors
strongly on concerns about possible destruction of
information.  Plainly in the first instance, that concern
Page 15

031907 Matthew Symonds DRAFT.txt

relates to the Defendants in the U.S. action. But it is
Mr. Symonds who is to be deposed regarding these matters.

And I obviously don't want to speculate, but, and
plainly Mr. Symonds's position is that there is any question
of any breach of United States law. But the question of
destruction of evidence appears to be covered by 18
United States code, section 1512(c). Which if I may drn.

MR. FENTON:  Sorry, can I have that?

MR. PARKES:  18, United States code,
section 1512(c).

MR. FENTON:  And is that a Civil Code or
a criminal code?

MR. PARKES:  That is a criminal code, as
I understand it. I am looking for a nod from Mr. Solomon.

MR. SOLOMON:  Read on and I will let you know.

MR. PARKES:  As I understand it, given that the
consequences of conviction are a possible sentence of
imprisonment of up to 20 years, I think which may take it
that as a criminal provision. If I may read the subsection

17

CONFIDENTIAL
DRAFT

to you, this is section 1512(c) provides that whoever
corruptly:

"1.  Alters, destroys, mutilates or conceals
a record, document or other object or attempts to do so with
the intent to impair the object's integrity or availability
for use in an official proceeding."

Just pausing there, there is no question that an
official proceeding includes a proceeding before a judge or

Page 16

031907 Matthew Symonds DRAFT.txt
court of the United States:

"Or 2, otherwise obstructs, influences or impedes
any official proceeding or attempts to do so shall be fined
under this title or be imprisoned not more than 20 years or
both."

Now, for obvious reasons I do not want to explore
this matter further than I need to.

MR. FENTON: No.

MR. PARKES: But if, as appears, Mr. Symonds is to
be asked about questions of destruction of evidence, the
concern might be, or is, that the appropriate U.S. criminal
provision which covers destruction of evidence in certain
circumstances is section 1512(c) and his claim to privilege
would relate certainly to that provision of the
United States code.

MR. FENTON: Yes. I mean, as I see it, my reading
of section 3.

18

CONFIDENTIAL
DRAFT

MR. PARKES: Yes.

MR. FENTON: The question is really there is no,
as I see it at the moment, there is no question of
a privilege against self-incrimination arising under English
law, because it appears that that is only available in
relation to potential prosecutions in English courts and
possibly under disciplinary proceedings in English
tribunals. But it is territorially disriktd.

MR. PARKES: Yes.

MR. FENTON: So the question really is, as I see
it, whether or not this would be available to Mr. Symonds

031907 Matthew Symonds DRAFT.txt

under U.S. law. In other words, whether he could avoid
answering the question on the basis it was liable to
incriminate him under U.S. law. And on that, you have said
that there is potential for infringement of a US criminal
statute.

MR. PARKES: Well, the structure of evidence, yes,
may fall within that (destruction).

MR. FENTON: Yes. I say potential, yes.

MR. PARKES: Yes.

MR. FENTON: But the Fifth Amendment which
underlies this would be, that would permit Mr. Symonds to
refuse to answer these questions as a matter of U.S. law.
Is that your submission? Yes, it is, although of course
that is a question of which in the normal course of matter

19

CONFIDENTIAL
DRAFT

would be decided by the U.S. District Court.

MR. FENTON: Yes. Obviously it has to be, but --

MR. PARKES: Yes.

MR. FENTON: But it is, as far as my powers go,
I am going to require not Mr. Symonds to answer, by
reference to the position under the law in California and so
I obviously need to try to understand. But the Fifth
Amendment, you say, would allow him to refuse to answer
these questions as a matter of U.S. law.

MR. PARKES: Certainly.

MR. FENTON: Can I ask a question. Does the U.S.
code have extrater torrial effect? In other words, if you
commit an act which apparently falls within the section that

Page 18

031907 Matthew Symonds DRAFT.txt
you read, section 1512(c).

        MR. PARKES: Yes.

        MR. FENTON: In England, is that an act which is
prohibited by this section?

        MR. PARKES: Yes, it is. As I understand it, the
position is that there is extrater torrial federal
jurisdiction over an offenc under section 1512. I think it
would probably be appropriate if I were a US lawyer, which
I am not, to refer to the case in the United States v Black,
in which, as I understand it, it was said that congress has
expressly made its intent clear to criminalise conduct
outside the United States that obstructs official

20

CONFIDENTIAL
DRAFT

proceedings in the United States relation apparently to the
section.

        MR. FENTON: This is conrad Black, is it?

        MR. PARKES: No. Oh, I do not think so.

        MR. SOLOMON: I think it is probably older than
that.

        MR. PARKES: It is 2006. It might be an early
hearing in the Black case, I suppose.

        MR. SOLOMON: I think you are right.

        MR. PARKES: Entirely possible. My difficulty,
sir. You must forgive me for brg a little scuffy in this
because I have only been in consultation with U.S. counsel
yesterday.

        MR. FENTON: There is no question of any reproach
on my part. I am really just trying to see what the
position is, what assistance you can provide me and I am
Page 19

031907 Matthew Symonds DRAFT.txt

grateful for it.

MR. PARKES: Yes.

MR. FENTON: All right. Now, is there anything else you would like to say to me at this point, Mr. Parkes?

MR. PARKES: Yes. May I just make one other point and that is that you will note that the letter of request at page 10, paragraph 13, stipulates that the examination shall be taken under the Federal Rules of Civil Procedure of the United States of America, except of course to the extent

21

CONFIDENTIAL
DRAFT

that such rules are incompatible with the internal rules of the United Kingdom in which case such laws will take control.

And what I would like to submit is that under the Federal Rules of Civil Procedure, there is a general discovery rule, federal rule of civil procedure 26 little B (1 sfwhvment (.

MR. FENTON: Just let me get that in.

MR. PARKES: Federal rule of civil proceed 26 (b) 1. Sorry I have not had time to put this in writing but the time has not allowed it ^check.

MR. FENTON: Right.

MR. PARKES: As I understand it, that is a general discovery rule which states that, and I quote:

"Parties may obtain discovery regarding any matter not privileged, that is relevant to the claim or defence of any party."

MR. FENTON: Right.

Page 20

031907 Matthew Symonds DRAFT.txt

MR. PARKES: And rule, if I may just go on

a little further.

MR. FENTON: Yes, please.

MR. PARKES: Rule 30 (d) (1) which is part of the

rule which governs depositions, states that, and I quote:

"A person may instruct a deponent not to answer

only when necessary to preserve a privilege."

22

CONFIDENTIAL
DRAFT

MR. FENTON: Right.

MR. PARKES: And finally if I may say so, if I may

refer to this. Rule 30 (c) -- actually, I am not sure that

I need to refer to rule 30 (c) I think that is sufficient.

But the Ninth Circuit, as I understand it, which

is the relevant circuit for the purposes binding authority

in proceedings in California, has stated in respect of rule

26, which is the general discovery rule which I have cited

to you, said this:

"Rule 26 provides that discovery may only be had

of matter 'not privileged, which is relevant to the subject

matter involved in the pending action'."

MR. FENTON: Right.

MR. PARKES: And what is privileged is defined by

the federal rules of evidence which include of course the

privilege against self-incrimination.

So the way in which I put it, therefore, is that

given that the letter of request demands that the

examination be taken under the Federal Rules of Civil

Procedure, there is necessarily a statement in the letter of

request that the Fifth Amendment will be applied where

031907 Matthew Symonds DRAFT.txt

appropriate. That must follow from -- that must follow in
the light of the references which I have given you, as to
the procedure.

     MR. FENTON: Yes, I am not sure what "discovery"

23

CONFIDENTIAL
DRAFT

means in that context. It is often used in a wider sense in
the States.

     MR. PARKES: Yes.

     MR. FENTON: I mean, I would require a lot of
persuasion that there is obviously a concept of privilege in
the United States. And I think the real question is (would
not).

     MR. FENTON: Yes.

     MR. FENTON: The extent to which it actually
applies here.

     MR. PARKES: Well --

     MR. FENTON: Nor would I require that much
persuasion that there is privilege against
self-incrimination in general terms but that is obviously
subject to what Mr. Solomon or anyone else may say.

     MR. PARKES: Yes. Well, I do not want to labour
the point unduly. I could, I think there are other
references in the federal --

     MR. FENTON: Right.

     MR. PARKES: In the U.S. rules which I can take
you to. But the point is, broadly speaking, that the letter
of request rules ^check in the United States except in the
event there is a conflict. And that necessarily impraifses

Page 22

031907 Matthew Symonds DRAFT.txt
the right to privilege against self-incrimination.   That
being so, what I submit is that the claim.  Person in

24

CONFIDENTIAL
DRAFT

question then, Mr. Symonds to be exempt from giving the
evidence is to that extent supported by a statement
contained in the request within section 32 of the 1975 Act,
because the statement contained in the request is the
examination it be to be taken under the Federal Rules of
Civil Procedure which embrace the right to privilege against
self-incrimination ^check.

        MR. FENTON:  Very well.

        MR. PARKES:  I need to address you also on the
question of discretion.  I have done so to an extent already
because I have referred to the relevant section.  It may be
necessary, depending on the arguments which are raised
against me, to come back to you on that and make a further
point but I would rather not do so at this stage if it is
not necessary to do so.  It rather depends on what line is
taken against me.

        MR. FENTON:  So be it.

        MR. PARKES:  So I think that is all that I have to
say for the moment.  Submissions by.

        MR. SOLOMON:  In the light of this being a late
breaking development, we would like to take a break and
discuss it if we may.

        MR. FENTON:  I was going to ask if you felt you
had adequate time.

        MR. ABRAMSON:  We need ten minutes.

Page 23

031907 Matthew Symonds DRAFT.txt
25

CONFIDENTIAL
DRAFT

MR. PARKES:  I ought to apologize to everybody the
fact.  You will appreciate, it has been difficult for us to
take U.S. advice.  It could only be done yesterday.

MR. ABRAMSON:  Can I just make a point of detail
on lunch.  who wants sandwiches and who wants to go out for
a break?  Any preferences?

THE VIDEOGRAPHER:  I will go off the record?

MR. ABRAMSON:  Sorry, yes.

THE VIDEOGRAPHER:  Going off the record.  The time
is 11:28.

(11:28 a.m.)

(A short break)

(12:10 p.m.)

THE VIDEOGRAPHER:  We are back on the record.  The
time is 12:10.

SUBMISSIONS BY MR. ABRAMSON:

MR. ABRAMSON:  Right.  Our position is we do
accept you have a discretion whether to proceed as you have
suggested, with you directing Mr. Symonds to answer
questions and then his deposition being held in the, the by
the Master pending decisions by the United States court as
to whether or not his claim to privilege would be upheld.

MR. FENTON:  Yes.  That is what would happen.
I have not made that as positive suggestion.  I said that is
what would happen if I exercised discretion in favour of

26

CONFIDENTIAL
DRAFT
Page 24

031907 Matthew Symonds DRAFT.txt

requiring Mr. Symonds to answer questions.

MR. ABRAMSON: Indeed, yes. We are accepting that
discretion exists. We think, that is exactly what you
should do, for the following reasons.

First, we had correspondence with Mr. Symonds'
lawyers last week over the terms of which Mr. Symonds would
appear. During the course of that correspondence, the list
of questions that Mr. Symonds was being asked to answer was
severely cut down. Have we got the correspondence that has
been circulated? And that culminated with Farrer saying on
the 7th March:

"Our client accepts the deletion of the five
proposed lines of questioning, but with two provisos.

"The first is that your clients accept our request
that the deposition be postponed (we suggest that it be
postponed to Monday, 19 March)."

Which is today.

"To allow our client further time to consider his
position. The second proviso, bearing in mind the
objections expressed previously to the proposed lines of
questioning in our letter of 6 March, 2007, but in the
interests of saving costs if possible, is that our client
must reserve the right to argue before the Examiner on the
day that the other lines of questioning to which we have
referred are also irrelevant and, if necessary, apply to the

27

CONFIDENTIAL
DRAFT

court at that point."

That is the basis upon which this deposition was
Page 25

031907 Matthew Symonds DRAFT.txt

moved to today and no reference there to self-incrimination.

Second, in the time we have had, we have looked to whether the Fifth Amendment applies. We believe it applies to U.S. citizens and U.S. residents. Mr. Symonds is neither and therefore he has no Fifth Amendment right.

Thirdly, we would ask you to consider to what extent any prosecution is likely if Mr. Symonds has destroyed evidence. He is a journalist who just happened to write a book about one of the parties to this litigation. It is, I suggest, unlikely off his own bat that he would have decided to destroy evidence in the litigation. If he has done so, the likelihood is he has done so at the instig nation of or in the collusion of one of the parties. Whilst that might not resolve him from liability, the chances are the prosecution that is brought off the back would be brought against one of the parties ^check.

Fourthly, costs. We have five U.S. lawyers in the room. Five or six. And several English ones. We have not done this just to get a list of "sorry, I take the Fifth Amendment". It would be far more cost effective to order questions to be answered question. For the answers to be held here and to assume that our -- the American judge will form the right decision to protect Mr. Symonds if indeed he

28

CONFIDENTIAL
DRAFT

needs protection.

Finally, I would ask you to bear in mind what the original question was that smashinged this debate: what is your occupation? To the extent that you are otherwise

031907 Matthew Symonds DRAFT.txt
minded not to direct Mr. Symonds to answer questions, then
it should be on a question-by-question basis; and not every
question.

That is all I need to say, sir.

MR. FENTON: Mr. Solomon, you were being to?

MR. SOLOMON: I have nothing further to say,
except that it is by no means you be clear, as Mr. Abramson
said, that Mr. Symonds is entitled to the protections of the
U.S. constitution in these circumstances. But I have every
expectation that when that issue, if that issue needs to be
fully briefed, that the U.S. court will be able to make the
right determination.

MR. FENTON: Are you a US qualified lawyer?

MR. SOLOMON: Yes, I am.

MR. ABRAMSON: Sorry --

MR. FENTON: Are you able to give me any authority
in relation to that concept? I mean, I appreciate you have
had ...

MR. SOLOMON: Yes. We didn't have the best
internet connection available but I can give you one U.S.
Supreme Court decision that certainly suggests that the

29

CONFIDENTIAL
DRAFT

intention is that only residents of the U.S. or citizens of
the U.S. be embraced by the protections of the U.S.
constitution. In particular, the Fifth Amendment and the
site that we were able to pull, at least for that scwawl.
Is Kwong Hai Chew, K-W-O-N-G, H-A-I, C-H-E-W. That is a US
Supreme Court decision, I believe from 1953. 344 U.S. 590.

MR. FENTON: I have to say that I, I am bound to
Page 27

031907 Matthew Symonds DRAFT.txt

say I find that a slightly surprising proposition, in the
sense that if, to use an example as I said before, if conrad
Black, who is I think not a US citizen, is being prosecuted,
which he is, I think, in the U.S., I can't really see why he
should not be entitled to refuse to prosecute himself.  Any
more than a US citizen would.

        MR. SOLOMON:  He is a resident.

        MR. FENTON:  He is a resident, is he?  I see.
Very well.

        MR. ABRAMSON:  The only point that is worth adding
to that of course is that the onus should be on Mr. Symonds
to prove his privilege, rather than for us to disprove it.

        MR. FENTON:  I appreciate that.  Very good.  Now,
does anyone else want to say anything before we go back to
Mr. Parkes?  Do the Defendants want to say anything on this?

        MR. MULLIKEN:  Since Mr. Symonds is a non-party
inked proceeding, I think the Defendants don't have
a position on this.  We obviously refer to the judgment of

                            30

                        CONFIDENTIAL
                          DRAFT

counsel for the witness and the Examiner.

        MR. FENTON:  So be it, thank you.

        MR. GIBBS:  We would add only that we disagree
with the suggestion that any of the Defendants participated
in any of the conduct the parties are alleging but that is
not an issue for today.

        MR. FENTON:  Yes.  That is not an allegation you
need to answer here.  Mr. Parkes.

        MR. PARKES:  Yes.  May I deal with Mr. Abramson's

                        Page 28

031907 Matthew Symonds DRAFT.txt
points.  would you just give me a moment.  There is one
point I need to find in my notes.  It won't take me
a second.

          MR. FENTON:  Do you want to go off the record?

          MR. PARKES:  I am content, if you just allow me
a moment or two, I can find it.

          MR. FENTON:  Yes, of course.  (Pause).

          I will do what I can, sir, I think.  For a start,
a reference was made to the correspondence and to the letter
of the 7th March which we have.

          MR. FENTON:  Yes.

          MR. PARKES:  Mr. Abramson in reading that
paragraph, omitted three crucial words.  You will see that
the sentence he read in full is:

          "The first is that your clients accept our request
that the deposition be postponed to allow our client further

31

CONFIDENTIAL
DRAFT

time to consider his position and take advice."

          That having been a theme of the earlier
correspondence, that it was essential for Mr. Symonds to
take advice on the position under U.S. law and that of
course is the relevance of the expression "and to take
advice".

          The whole thrust of the early correspondence to
which that is a reference was to explain it necessary for
Mr. Symonds to take in respect of his position under U.S.
law which plainly could only depend whether or not
appropriate should be asserted against self-incrimination
^check.  The second question on the point of whether or not
                              Page 29

031907 Matthew Symonds DRAFT.txt

the Fifth Amendment is non-applicable to non-U.S. citizens.
As I understand --

        MR. FENTON: Or residents, I think.

        MR. PARKES: I am sorry, to U.S. citizens or
residents.

        MR. FENTON: That it applies only to U.S.
citizens.

        MR. PARKES: Yes, that is right. As I understand
it, that is not the case. What I am struggling to do, and
I don't think I am going to be able to do is produce chapter
and verse because the U.S. lawyers have not yesterday
completely -- have not yet given us a complete statement of
the U.S. law. As I understand the position, given the

32

CONFIDENTIAL
DRAFT

extraterritorial nature of the statute in question, the
probability is that the Fifth Amendment protections would
extend to anybody who is charged under legislation with an
extraterritorial effect. But I can't take it any further at
the moment because I am not in a position to develop that.

        But plainly that is a question which I suppose is
really impossible to resolve today. Our position is of
course the question of the U.S. law ^check. That is as far
as I can take my response to Mr. Abramson's submission
there.

        His next point was to question whether or not any
prosecution was likely, even if Mr. Symonds has destroyed
evidence. Well, that of course is a question entirely of
speculation, sir, and one has absolutely no idea whether or

031907 Matthew Symonds DRAFT.txt
not, if the evidence were given, U.S. prosecuting

authorities would or would not decide to proceed against

him. And it would be quite impossible for you to conclude

that a prosecution was unlikely. The fact is there must be

a risk of a prosecution if we are talking about, as the

Plaintiffs seek to do, destruction of evidence in the light

of the terms of section 1512(c).

Fourthly, the question of costs. Well, five U.S.

lawyers in room and Mr. Abramson says we have not done this

to get a claim to the Fifth. Well, of course that is right

and the question of costs is one which the court is going to

33

CONFIDENTIAL
DRAFT

have to consider. At the appropriate point but it can't be

material to the question of whether or not Mr. Symonds ought

to be allowed to make the claim to privilege.

As regards the final point, he said: let's go back

to the original question: what is your occupation? Now, the

reason for the assertion of privilege in respect of what may

seem on the face of it is harmless question is that, as

I understand it, if the privilege is not asserted in toto in

respect of a line of questioning, there are always potent

arguments under U.S. law that privilege has been waived.

If, for example, a question is answered about the sort of

work which Mr. Symonds does, and that was what the question

was directed to, it would be argued or might be argued in

the U.S. proceedings that he had waived his right to assert

the privilege in respect of other questions which concern

his journalistic and professional entities ^check. That is

what I understand the position to be from our U.S. counsel.
Page 31

031907 Matthew Symonds DRAFT.txt
And that is why even on such a seemingly innocuous question
as that, the privilege was asserted.

      MR. FENTON:  Right.

      MR. PARKES:  Can I just mention -- well, perhaps
I should not do so yet, but as I understand it, what you are
considering, sir, is first whether or not you should
exercise your discretion to require Mr. Symonds to ...

      MR. FENTON:  Yes.  As I see it, the first question

34

CONFIDENTIAL
DRAFT

is whether or not this claim is supported by the statements
in the letter of request.  If it is, will not have any
discretion ^check.  If it is not, I then have a discretion
whether or not to require Mr. Symonds to answer.  If I do
and he does answer, then there are various consequences.
And if I don't, there are also various possible
ramifications.

      MR. PARKES:  I think there probably is one further
point which I ought to make, which I think is relevant to
the exercise of your discretion.  Your reference to the
ramifications is, I imagine, a reference to the procedure
under part 34, rule 20 of the Civil Procedure Rules
whereby --

      MR. FENTON:  Yes.  I mean, sorry.  To cut across
you.  But if I require you to answer the questions (him),
then what will happen is that if he does answer them,
a separate statement, a separate part of the deposition will
be brought into existence.  It will go to the Senior Master
with an explanation from me as to why it is separate, which

Page 32

031907 Matthew Symonds DRAFT.txt
will involve me saying what has happened, settings the
grounds of privilege ^check. It will then be held by the
Senior Master. He will ask the Californian court whether or
not the claim to privilege is well founded. If the
Californian court says it is, then the evidence will be
returned to Mr. Symonds.

35

CONFIDENTIAL
DRAFT

MR. PARKES: Yes.

MR. FENTON: And that will be an end of it. If
the Californian court says it is not, then subject to
whatever remedies there may be by way of an appeal in
California, the evidence will be transmitted. And obviously
if I don't require him to answer, then it may be that there
is an application to the Master to require him to answer.

MR. PARKES: Yes, certainly. Can I just raise,
then, one further point.

MR. FENTON: Please do.

MR. PARKES: That is that I just need to address
you on the implications of your ordering him to answer,
having regard to the procedure which the English Civil
Procedure Rules contemplate which is what you just
described.

When the privilege against self-incrimination is
tested in the U.S. courts, counsel on both sides argue the
question of principle in front of a judge. As I understand
it, what then happens is that the witness puts forward,
usually I think in written terms, the facts which give rise
to the privilege. And those are passed to the judge who
sees them, but does not pass them to the other side.
Page 33

031907 Matthew Symonds DRAFT.txt

So that in effect, the detailed facts which give rise to the privilege are not disclosed to the other side. That, as I understand it, is what happens in the

36

CONFIDENTIAL
DRAFT

United States.

The English procedure contemplated by rule 20 is in dramatic contrast; because if it is followed, because what it envisages is that the questions are answered but kept aside in a separate document. But they are answered in the presence of counsel for the parties in the litigation in the United States.

Mr. Symonds would in effect be testifying under oath as to all the facts. And whatever he said would be admissible against him either via the transcript or via the witnesses, the evidence of witnesses in the room at the instance of federal prosecuting authorities.

So the point is that although no doubt he would be preserving his position as far as the evidence which he gives in the civil proceedings is concerned, plainly he would be, he would be exposing himself to precisely the risk which he seeks to avoid by taking the Fifth. Because the evidence which he gives in this court could be admissible in criminal proceedings in the United States; notwithstanding the procedures which we have for transmission of the material subject to ^check by the Senior Master.

So your --

MR. FENTON: Is there any authority for that from U.S. law? I mean, I understand what you are saying.

Page 34

031907 Matthew Symonds DRAFT.txt
MR. PARKES: Yes. I have no more at the moment.

37

CONFIDENTIAL
DRAFT

I mean, I have been told, plainly I have been told in
extremely clear and plain terms that the English procedure
is what the U.S. lawyers regard as, in their terms, horrific
in terms of its implications ^check. But I am not in
a position at this point to cite authority but apparently as
I understand it, as a matter of principle, there is nothing
to stop the prosecuting authorities from obtaining the
transcript or from requiring those present in this room to
depose as to what Mr. Symonds says, which would be
admissible in criminal proceedings. As I understand it, it
is --

MR. FENTON: Well, no-one here could be required
to do that. But --

MR. PARKES: Well, under U.S. law. Apparently
U.S. counsel present on this room are susceptible to the
jurisdiction of the U.S. courts could be compelled to depose
as to what Mr. Symonds has said here today. They could no
doubt be required to hand over copies of the transcript
which they have. And apparently that material would be
admissible against Mr. Symonds in the U.S. criminal
proceedings. That is the difficulty. I mean, it is most
curious that the -- although the fact plainly envisages that
it is important to protect the interests of somebody who
wishes to assert the privilege in foreign proceedings, the
Civil Procedure Rules have adopted a procedure which does

38

Page 35

031907 Matthew Symonds DRAFT.txt

CONFIDENTIAL
DRAFT

precisely the opposite.  It exposes the deponent to the risk
of a prosecution, rather than protecting him.  And that is
a matter, I suggest, which is relevant to your discretion as
to whether or not he ordered to be answer the questions at
all.

          MR. FENTON:  Yes, it is relevant, if it is
correct.

          MR. PARKES:  Well --

          MR. FENTON:  And I don't say that with any
disrespect.

          MR. PARKES:  No, I know you don't.

          MR. FENTON:  Mr. Solomon, have you anything to say
in relation to that because that is a point of law that I do
not think was foreshadowed in the opening submissions of
Mr. Parkes.

          MR. SOLOMON:  Well, if the invocation of the Fifth
Amendment assertion were litigated in the U.S., I don't know
that there is any hard and fast procedure as to how that
would get litigated.  It is possible that there would be an
"in camera" review with respect to some of the underlying
bases for the assertion.  But it is not something that I can
give you any detailed information on.  It is not something
that I think is subject, as I say, to any regular process.

          I would say that I think the Fifth Amendment is
designed for utilisation in particular proceedings.  There

                              39

                        CONFIDENTIAL
                            DRAFT

                          Page 36

031907 Matthew Symonds DRAFT.txt
has never been a guarantee that there would not be leakage
of the information one way or the other.

If it is not embraced and is not protected by the
Fifth Amendment, I think it is right to the extent it exists
and I think that is in dispute in any event, it is right to
the extent it does not exist, it is not absolute and does
not guarantee, there is no guarantee of complete secrecy.

MR. ABRAMSON:  It is somewhat counter intuitive to
suggest that an American -- this is all, we know that
Mr. Symonds has no privilege against self-incrimination
under English law, so all that is let is one of the U.S.
law.  Are the U.S. judges going to determine that the
privilege exists or it does not.  If it does not, then his
testimony can be used.  And if it does and a US judge has
determined that privilege exists, it steams difficult to see
how second hand evidence such as the deposition itself could
be introduced into evidence or any of us in this room could
be asked to give what is presumably hearsay evidence of what
Mr. Symonds said.  It is difficult to see how that argument
can be run every single time.

MR. FENTON:  There is something in that point.  My
difficulty is that I have no basis to choose between you at
the moment.

MR. PARKES:  Could I -- yes.  No, I am sorry.
MR. FENTON:  That is really down to the state at

40

CONFIDENTIAL
DRAFT

which the point has been taken.  Again, I do not raise that
by way of any criticism.  It is just that no doubt both
sides are doing their best in the time available.
Page 37

031907 Matthew Symonds DRAFT.txt

MR. PARKES: Can I just say, sorry. Just on one point, I am sorry if I am interrupting you. As I understand it, I think under English law the position would be the same. ·Any admissions made by Mr. Symonds against his interest would be exceptions, common law exceptions to the hearsay rule. I think in English the the English law of evidencest evidence. As I understand it, the position is the same under U.S. law.

MR. FENTON: There must be a question of policy as to whether you are going to allow effectively indirect evidence of self incriminating material which I apprehend is the basis of Mr. Abramson's point.

MR. PARKES: Yes.

MR. FENTON: That whether in a sense you would be allowed to circumvent the whole purpose for the invocation. If the civil court has said you can invoke it to protect you from the evidence being given.

MR. PARKES: Yes.

MR. FENTON: It does seem quite surprising that the very purpose for which the civil court has enabled the amendment to be invoked can then be circumvented by the fact that, and I quite follow the position logically, the witness

41

CONFIDENTIAL
DRAFT

has given evidence and there happens to be somebody else who can testify as to what evidence the witness gave. It seems to me that there would be a large policy question as to whether or not criminal authorities ought to be able to rely on evidence in those circumstances.

Page 38

031907 Matthew Symonds DRAFT.txt

MR. PARKES: Can I -- yes.

MR. FENTON: Please.

MR. PARKES: Can I just say that it appears that the federal courts may issue protective orders in cases where witnesses are concerned about giving evidence that may be incriminating. And there is one case cited in support of that proposition, which is Grand Jury proceedings (Williams) 995 F.2 d 1013 (11th Circuit 1993). The purpose of such an order being to allow the witness to give his evidence without any fear that federal prosecutors can obtain the information by way of a Grand Jury subpoena of the transcript.

Well now, apparently the Ninth Circuit which is of course the relevant circuit for our purposes, has held that federal criminal Grand Jury subpoenas take precedence over such protective orders protecting the interests of the witness giving evidence.

So the position appears to be that if Mr. Symonds answered questions in accordance with the English procedure and his evidence was then sprayed from the remainder of it

42

CONFIDENTIAL
DRAFT

and kept by the Senior Master, the transcript of the evidence could still be obtained if necessary by a federal Grand Jury subpoena. And a Grand Jury could also, as I am informed, compel the evidence of witnesses to his deposition; even if the transcript was not available.

And so as I understand it, there is every reason to believe that that evidence could be obtained by a federal prosecutor. That is the basis of my concern.

031907 Matthew Symonds DRAFT.txt

MR. ABRAMSON: Did I hear the suggestion that the Grand Jury would subpoena something in the possession of an English Master?

MR. PARKES: No, I am sorry. No, but presumably the transcript would be in the possession of the various parties who are present in the deposition.

MR. ABRAMSON: Well, is the way around that to ensure there is only one copy that is left with the court pending this argument, if that is really a concern?

MR. PARKES: That would be obviously of assistance as I understand it but it does not answer the point that witnesses are susceptible to subpoena to give their evidence as to what was said during the hearing of the deposition. (Pause).

MR. FENTON: Is that --

MR. PARKES: I think that is all I can usefully say.

43

CONFIDENTIAL
DRAFT

MR. FENTON: What I would like to ask for my own purposes is: what is the timetable we are facing in the context of the U.S. litigation? Sorry, that is to say when must evidence be put before the court, or when -- if evidence is to be taken from Mr. Symonds, when must it be taken to be taken account of in the trial?

MR. SOLOMON: At present, the magistrate, the special Master that is in charge of discovery has ordered that depositions take place to the extent they are still pending, prior to March 31st. The only exception to

031907 Matthew Symonds DRAFT.txt
that is Larry Ellison himself, and apparently there is the
potential that his deposition will be continued next
session, the next session of his deposition will take place
the first two weeks of April.

At the moment, we don't have any further latitude
from the court.

MR. FENTON: And what is the trial?

MR. SOLOMON: The trial is scheduled --

MR. FENTON: The trial date?

MR. SOLOMON: November 26th. And before that,
just so you know, we will be going through an expert witness
phase, followed by a positive motion phase, followed by
pretrial work and the calender is pretty jam packed.

MR. GIBBS: Just a point of clarification. My
understanding of the special Master's ruling about the

44

CONFIDENTIAL
DRAFT

timing of the depositions is that the depositions of
Mr. Ellison and Mr. Katz, Ms. Katz, were going to be taken
by the end of March, with the possible exception of
Mr. Ellison who may go in April. I don't understand there
to be any ruling setting a deadline for Mr. Symonds'
deposition.

MR. SOLOMON: I think that is fair. I think it is
implicit probably that the magistrate expects the
depositions to be concluded. We certainly don't have any
permission to take Mr. Symonds' deposition beyond
March 31st. However, of course, if there were a good
cause, we would seek to do that if we had no choice.

MR. FENTON: Very well. I am now going to take
Page 41

031907 Matthew Symonds DRAFT.txt

a few minutes to consider what I am going to say. Can we go
off the record.

THE VIDEOGRAPHER: Going off the record. The time
is 12:42.

(12:42 p.m.)

(A short break)

(12:58 p.m.)

THE VIDEOGRAPHER: We are back on the record. The
time is 12:58.

RULING BY THE EXAMINER:

MR. FENTON: This morning, Mr. Symonds was due to
be deposed in the proceedings with which we are concerned,

45

CONFIDENTIAL
DRAFT

which is the Local 144 Nursing Home Pension Fund against
Sawyer, which are taking place in the U.S. District Court,
Northern District of California.

Mr. Symonds has come this morning, but Mr. Parkes
QC, his counsel, has objected to him answering questions and
indeed objected to the second question which was what was
his occupation; on the grounds of, to put it broadly,
self-incrimination. The privilege against
self-incrimination.

And the way that was developed was that it was not
said that there was a danger of incriminating Mr. Symonds in
relation to any UK laws, but that he runs the risk of
incriminating himself in relation to U.S. laws in relation
to which would be susceptible.

Now, the argument was put on two bases by

Page 42

031907 Matthew Symonds DRAFT.txt
Mr. Parkes.    Firstly, that the claim to privilege was

supported by a statement contained in the letter of request

within the meaning of section 3(2)(a) of the Evidence

(Proceedings in Other Jurisdictions) Act 1975.

        I am satisfied that that is not so supported, but

that is not the end of the matter because in those

circumstances, the same subsection gives the Examiner

a discretion as to how to proceed.

        Now, the difficulty which I as the Examiner face

this morning is that this point, the privilege point, has

                         46

                     CONFIDENTIAL
                        DRAFT

only been taken this morning; and I offer no criticism of

anyone in relation to the timing. But by its nature, it

depends very heavily upon various matters of U.S. law and

understandably, given the timing, there has not been any

opportunity really to produce materials relating to U.S. law

or to develop any arguments in relation to it.

        Now, in those circumstances, I have put myself in

the same position as if I were the Master who were deciding

this, to which either party can go if they are dissatisfied

with my decision.

        And I find myself in some difficulty as to being

able to answer the question at all on the current state of

the information as to U.S. law.

        And what I propose to do, although I am willing to

be addressed on it by the parties, is to adjourn this until

10 o'clock tomorrow morning to allow the parties to put

before me any further material in relation to U.S. law, and

also the risk of -- the actual risk of prosecution which
                        Page 43

031907 Matthew Symonds DRAFT.txt

Mr. Symonds faces.

And there are four points in particular which
have -- which seem of some significance to me.

The first is whether or not the U.S. code relied
on by Mr. Parkes is of extraterritorial effect.

The second is whether the Fifth Amendment is or is
not open to U.S. non-residents or U.S. non-citizens.

47

CONFIDENTIAL
DRAFT

The third question is the actual or factual
likelihood of prosecution if this evidence is required to be
given.

And fourthly, the point raised by Mr. Parkes in
reply; that if evidence is required to be given by
Mr. Symonds, notwithstanding that restrictions could be
placed on the transcript or any copies of the transcript,
that at least the U.S. lawyers present in the room could be
enforced to give evidence of Mr. Symonds' evidence by
subpoena issued against them by U.S. federal authorities.

Now, I appreciate that adjourning it for even
a day is not particularly satisfactory, and no doubt from
anyone's point of view. But given the timing at which
this -- the time at which this point has come forward, it
seems to me that sensibly and to arrive at a rationally
defensible decision, I ought to adjourn it for a short time.
As I say, if the parties wish to address me on the length of
the adjournment, I am open to be addressed on that point.

That is my ruling. Do you want to say anything
now or would you like to go off the record?

Page 44

031907 Matthew Symonds DRAFT.txt
MR. SOLOMON:  I would like to go off the record,

please.

          MR. PARKES:  Yes, please.

          MR. FENTON:  Thank you.

          THE VIDEOGRAPHER:  Going off the record.  The time

                          48

                    CONFIDENTIAL
                       DRAFT

is 13:06.

(1:06 p.m.)

                  (A short break)

(1:24 p.m.)

          THE VIDEOGRAPHER:  We are back on the record.  The
time is 1.24.

          Submissions by Mr. Parkes.

          MR. FENTON:  Mr. Parkes.

          MR. PARKES:  Sir, could I say that I will
certainly be grateful for the opportunity to put symptom
more material before the court, before you to assist you to
reach a conclusion.

          My only hesitation is as to whether I ought to be
asking you for a longer period than simply an adjournment
until tomorrow morning.

          I have taken it upon myself, I am afraid, not yet
to ring U.S. counsel to ask how long he will need, because
I am conscious that it is still half past 6 in the morning
in San Francisco and I hoped that you might be prepared,,
depending on what Mr. Solomon says to you, to defer the
question of -- if you are minded to adjourn -- of when that
adjournment will be to, until after you have dealt with the
deponent from PC World, to enable me to call U.S. counsel at

031907 Matthew Symonds DRAFT.txt
a slightly more civilised hour and to give him at least
perhaps 7 o'clock in the morning, instead of half past 67.

49

CONFIDENTIAL
DRAFT

        MR. FENTON:  That seems to be sensible if it is
not going to have any practical implications.

        MR. ABRAMSON:  Just --

        MR. FENTON:  Yes, I am sorry.  The question of
deferring the decision as to whether we come back tomorrow
morning or at some point, until after the deposition of
Mr. Prendergast.  Unless that has practical implications
or ...

        MR. ABRAMSON:  It might do because if you were to
direct, at the end of this you were to direct Mr. Symonds to
answer the questions.

        MR. FENTON:  Yes.

        MR. ABRAMSON:  I am not sure he is going to, or
whether he would take it off to the Master to appeal.  If he
is going to do that, then our preference would be for you to
proceed now, direct him to answer, at which point he will
say: no, I will not.  Then if we can sort that out now, we
can have a prospect of getting before a Master tomorrow or
if not a Master, a judge.  If there is a prospect of this
depositions taking place in our favour by tomorrow because
Mark and Stacey have to leave on Wednesday morning.  They
cannot stay longer than that.  So I wouldn't want to get
into position where we are putting it back until tomorrow,
only to find that we are in a position of saying: sorry, go
to a Master.  If that is going to happen, let's go now.

                    Page 46

031907 Matthew Symonds DRAFT.txt

50

CONFIDENTIAL
DRAFT

MR. FENTON: Right. What are you asking me to do?

MR. ABRAMSON: I am asking you therefore to proceed with the deposition, at least to the first question, and see what the answer is.

MR. PARKES: For my part, sir, I would very much prefer that you should be in a position to make a decision. And to that end, I would want to do my best to come up with further authorities in support of the propositions which I have been trying to advance.

MR. FENTON: Right.

MR. ABRAMSON: An alternative is it to adjourn this decision to a Master, defer it.

MR. FENTON: Is that right? Does there not need to be some decision which can then be taken to the court? I suppose the decision to adjourn can be taken to the court, but that is rather unsatisfactory.

MR. ABRAMSON: I am not sure your decision is one that the appealing party has to prove is wrong as a matter of law. I think --

MR. FENTON: It is the rehearing, is it?

MR. ABRAMSON: I would have thought so. I do not have an authority for that, but ...

But if it is a hearing which it must be possible for you to adjourn to a Master. That is what I thought. The same as a Master can adjourn a hearing for the judge to

51

CONFIDENTIAL
Page 47

●                                            ●

031907 Matthew Symonds DRAFT.txt
DRAFT

make that decision.

MR. PARKES: Sir, I know ...

MR. FENTON: Sorry. But that would result in my
saying on what view do you want me to adjourn it to a Master
to be heard tomorrow, which I would have great hesitation in
doing because the Master would be in charge of his own list.

MR. ABRAMSON: Well no, but if you refer it to
a Master for the first available opportunity, it would be up
to us to get it on tomorrow if we can.

MR. FENTON: Mr. Parkes, what do you say?

MR. PARKES: Well, I know in a sense that I am the
author of my own misfortune although you have kindly
accepted and it is the case, that we have done our best to
take U.S. advice as soon as we have been able to.

MR. FENTON: I am not sure I have accepted that.
But it seems to me the timing point, we are where we are.

MR. PARKES: We are where we are, precisely so.
I am anxious that these difficult questions should not be
determined in an overly rushed fashion. It is difficult
enough for the court to have to try to resolve questions of
a foreign law, without the proper materials being before the
court to assist it in that determination.

MR. FENTON: Yes. That may or may not be
difficult, I don't know. Again, I am not ... but at the
moment, it is really for my position, it is simply a case of

52

CONFIDENTIAL
DRAFT

assertion and cewnter assertion and I cast no as

Page 48

031907 Matthew Symonds DRAFT.txt
persecutions on either side. But they may be quite
straightforward questions in reality.

But on the practical side, Mr. Abramson, what
happens if the deposition does not go ahead tomorrow?

MR. ABRAMSON: It will have to be rescheduled for
another date, later in the month. Next month, I guess.

MR. FENTON: But your concern, I am just trying to
get -- your concern is the accounts of the costs of everyone
coming over again. Rather that if it does not happen
tomorrow, the opportunity will be lost for good?

MR. ABRAMSON: Mark?

MR. SOLOMON: A part of the issue is in the
States, we are allowed to choose the order in which
depositions take place in order to advance our strategy.
And at the moment we are in a position that we wanted to be
in, and that was that we were going to take Mr. Symonds's
deposition and gather his evidence.

MR. FENTON: In advance of Mr. Ellison.

MR. PARKES: Precisely. We are running against
the possibility that that will be upset. We are running up
against the possibility that it will be difficult to
(Mr. Solomon) reschedule prior to his deposition, whenever
that takes place. That is my concern.

Now, counsel for Mr. Ellison obviously is present

53

CONFIDENTIAL
DRAFT

and assert to you that there is a possibility that
Mr. Ellison's deposition will be rescheduled for the first
two weeks of April. If they were able to give us any
indications of what dates in those next two weeks
Page 49

031907 Matthew Symonds DRAFT.txt

Mr. Ellison would make himself available, that might inform this process.

MR. FENTON: I see. Because my concern really is not to do anything which is going to jeopardise the progress of the litigation in the States; obviously insofar as that is compatible with Mr. Symonds' rights.

But it strikes me at the moment that if you get before a Master tomorrow in this situation, there is a danger -- it may not occur -- that the Master may feel the same way as I do. But in a sense, that is a matter for Mr. Abramson.

But what I wonder is whether Mr. Parkes, if you can get in touch or get one of your team to get in touch with your Californian lawyers, and maybe we can see what material is available after we have dealt with Mr. Prendergast later on this afternoon.

And if on Mr. Abramson's side they are prepared to go ahead and on the state of the material is then available, maybe I can reach a decision this evening; depending on what material has come forth.

MR. PARKES: It is envisaged that I might be able

54

CONFIDENTIAL
DRAFT

to get hold of some more material this afternoon?

MR. FENTON: Yes.

MR. SOLOMON: Is it not the case that if there is more clarity on the invocation of the Fifth Amendment, that that would answer a lot of the subsidiary questions and issues? And if that is the case and if that were the focus,

031907 Matthew Symonds_DRAFT.txt
I would imagine that both sides could work quickly to try
and get the final answer. I note that over the weekend,
counsel for Mr. Symonds was unable to find any authority
establishing that right. We have been unable to find any
authority establishing that right. we have seen notations
that the rights are intended for citizens and residents
connected with the USA may be important. If that can be
resolved sooner rather than later, we may be move forward
rather more expeditiously.

MR. FENTON:  Yes, that is possibly right.  But
I would have thought an issue like that something which
ought to be capable of fairly fast resolution.

MR. SOLOMON:  I agree, I agree.

MR. FENTON:  There may be other questions which
are not.  And equally the extraterritoriality ought not, of
the relevant privilege under the criminal code, I would have
thought.  which should be suss acceptable really to the
answer.  I can't belief this is the first case in which such
a question would have arises ^check.

55

CONFIDENTIAL
DRAFT

But I think in view of of what has been said, it
may be unsatisfactory.  I think I am going to adjourn this,
my decision, as Mr. Parkes suggested.  I don't know when we
adjourn this to, to after Mr. Prendergast.  But I think
I will leave the matter open generally at that point as to
whether or not we, depending on what you both say to me at
that point, whether we just give whatever further argument
there is and I will issue a decision or whether I will defer
to tomorrow morning.

031907 Matthew Symonds DRAFT.txt

Now, one possibility tomorrow morning, if it does go tomorrow morning, is that we could meet very early in order to allow matters to proceed. Or if necessary, do it by phone maybe at 8 o'clock in the morning. I would certainly make myself available if that was going to assist.

MR. PARKES: what, you were envisaging doing it by a telephone hearing?

MR. FENTON: Yes. Because if the position is -- and I am very conscious that Mr. Symonds' rights must, if he has the right, it must take precedence over everything. But if I am being told by Mr. Abramson that one of the problems with my suggested course ask that his U.S. lawyers have to go tomorrow and therefore in effect an adjournment until tomorrow is an adjournment to an unknown date, one possibility if we can't deal with it this evening is to deal with it early tomorrow morning and then to potentially allow

56

CONFIDENTIAL
DRAFT

mobilisation of whatever needs to be mobilised in an attempt to get on tomorrow. which both parties may want to consider.

But I say that because it has occurred to me in the course of what has been said in the last few minutes.

MR. PARKES: Okay.

MR. FENTON: All right, so as I said, probably said no three times, I appreciate it may be unsatisfactory but I think I will adjourn the matter effectively generally as to what -- as to what time I make the decision.

MR. PARKES: Can I just say, sir, that it seems to

031907 Matthew Symonds DRAFT.txt
me most unlikely that I am going to be able to supplement
the material which I can put before you in the time
available this afternoon, because U.S. lawyers -- it is now
20 to 7 San Francisco time. He is going to have to get into
his office. I don't know how long that is going to take
him. But it is going to be some while before he is even
there.

    MR. FENTON: Yes.

    MR. PARKES: Let alone even be able to apply his
minds to these questions.

    MR. FENTON: I assumed he might have applied his
mind to them a little bit already.

    MR. PARKES: He has, but plainly he wanted further
time. He spent a great deal of yesterday on this, as

57

CONFIDENTIAL
DRAFT

I understand it, Sunday.

    MR. ABRAMSON: On the question of whether non-U.S.
residents have constitutional rights is presumably many
lawyers on the east coast who can answer that who would have
been up for some time now.

    MR. FENTON: I think that what we should do. In
terms of time, how long is Mr. Prendergast likely to take?

    MR. SOLOMON: I would say an hour or so frrks my
perspective.

    MR. FENTON: Right. Well, if he is coming at 2,
then we will be here at 3. And I mean, that is not
realistically a very long time if we are then going to
proceed to further argument.

    What about the suggestion that we do something

031907 Matthew Symonds DRAFT.txt
very early tomorrow morning, should that arise?

     MR. ABRAMSON:  Fine by me.

     MR. SOLOMON:  Fine by me.

     MR. FENTON:  Does anyone have any ... but does
that, there is no point in doing that unless that is going
to address the concern that you have expressed.  That is the
only point in doing it, to allow either party to do
something tomorrow if that happens.

     MR. ABRAMSON:  In a sense, it depends on you,
doesn't it?  What is actually -- I mean, we are on the
record still, are we?

58

CONFIDENTIAL
DRAFT

     THE VIDEOGRAPHER:  Yes.

     MR. FENTON:  If you want to go off the record.

     MR. ABRAMSON:  It is a question for you and I do
not want to embarrass you.

     MR. FENTON:  I am sure Mr. Parkes won't be
embarrassed.

     MR. ABRAMSON:  We know what you can do and how far
you can appeal things.  We know that if you are determined
that no deposition is going to take place tomorrow, come
what may, that can be done.

     MR. PARKES:  I am sorry, I wouldn't quite put it
that way.  We are absolutely determined to assert
Mr. Symonds' Fifth Amendment rights and if that is something
which we have to go some way up the traditional hierarchy in
this country to achieve, we shall do so.

     MR. FENTON:  I am sure you can take it Mr. Parkes

031907 Matthew Symonds DRAFT.txt
will protect Mr. Symonds rights to that extent.

        MR. ABRAMSON:  The assumption one will go to the
Court of Appeal tomorrow.

        MR. PARKES:  If one is realistic, this matter is
not going to be determined tomorrow.

        MR. ABRAMSON:  Right.  In that case, there seems
little point in trying to go through as many of the hoops as
we can get there tomorrow if there are going to remain hoops
to go through at a later date.

59

CONFIDENTIAL<br>DRAFT

        MR. FENTON:  No, that is what I was wondering.
There is certainly no point in concertinaing things in order
to have a resolution tomorrow.  If in fact there is not
going to be a resolution tomorrow.  But I nonetheless think,
unless someone else is going to say something to me,
I nonetheless think this ought to be determined so far as
I am concerned tomorrow morning.  And that was behind my
original suggestion, so that matters can be moved on quickly
by either side.

        MR. PARKES:  Yes.

        MR. FENTON:  So that the matter can be resolved.

        MR. ABRAMSON:  That is plainly sensible but
I think the difference between 8 o'clock and 9 o'clock or
9.30 is of little consequence in those circumstances.

        MR. FENTON:  That is fine and I would not suggest
that it be done at 8 o'clock unless there was some point in
doing it then, rather than at 10.  So as things stand, I am
persuaded back to the original position of 10 o'clock; given
what has been said.

Page 55

031907 Matthew Symonds DRAFT.txt

MR. GIBBS: If I may speak to that. Some of us are currently scheduled to go home tomorrow on a flight close to midday. I would have a preference for doing it earlier as long as it is not inconvenient for everyone. Obviously we will do what works for everyone but if the issue is not going to be resolved tomorrow in any event,

60

CONFIDENTIAL
DRAFT

I would prefer an earlier start to the degree it is feasible.

MR. FENTON: I hear that but I have to be aware that the burden is going to fall on Mr. Parkes, Mr. Solomon and Mr. Abramson. And you, I think, would be able to pick up what happens from the transcript anyway. So I would be -- I would in those circumstances be bound to hear what they have to say about starting before 10.

But shall we leave it, gentlemen? But at the moment, I am minded to adjourn it until, with respect to 10 o'clock tomorrow morning. Unless anyone wants to say anything else to me about it after the evidence of Mr. Prendergast.

MR. PARKES: Can I just suggest that if anybody has anything to say, it might be well to say it now. You may be able to make a decision now and get on with work.

MR. FENTON: Yes, sorry. I was trying to be helpful, rather than ...

MR. PARKES: I do appreciate that.

MR. FENTON: Well, has anyone else have anything to say? Now, shall we reconvene at 10 o'clock tomorrow



031907 Matthew Symonds DRAFT.txt
morning for this matter to be resolved.

       THE VIDEOGRAPHER:  Going off the record.  The time

is 13:43.

(1:43 p.m.)

61

CONFIDENTIAL
DRAFT

(The deposition concluded)



031907 Matthew Symonds DRAFT.txt

62