**SEALED
BY COURT ORDER**

1  LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2  MARK SOLOMON (151949)
    DOUGLAS R. BRITTON (188769)
3  VALERIE L. McLAUGHLIN (191916)
    GAVIN M. BOWIE (235532)
4  655 West Broadway, Suite 1900
    San Diego, CA  92101
5  Telephone: 619/231-1058
    619/231-7423 (fax)
6  marks@lerachlaw.com
    dougb@lerachlaw.com
7  valeriem@lerachlaw.com
    gbowie@lerachlaw.com
8    – and –
    SHAWN A. WILLIAMS (213113)
9  WILLOW E. RADCLIFFE (200087)
    ELI R. GREENSTEIN (217945)
10 MONIQUE C. WINKLER (213031)
    100 Pine Street, Suite 2600
11 San Francisco, CA  94111
    Telephone: 415/288-4545
12 415/288-4534 (fax)
    shawnw@lerachlaw.com
13 willowr@lerachlaw.com
    elig@lerachlaw.com
14 jennica@lerachlaw.com
    moniquew@lerachlaw.com
15
    Lead Counsel for Plaintiffs
16

**ORIGINAL
FILED**

FEB X 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

REC'D FEB 0 6 2007

UNITED STATES DISTRICT COURT

17                         NORTHERN DISTRICT OF CALIFORNIA

18
    In re ORACLE CORPORATION          )   Master File No. C-01-0988-MJJ
19 SECURITIES LITIGATION              )
    _____ )   CLASS ACTION
20                                     )
    This Document Relates To:          )   REQUEST FOR INTERNATIONAL
21                                     )   JUDICIAL ASSISTANCE PURSUANT TO
        ALL ACTIONS.                   )   THE HAGUE CONVENTION OF 18
22 _____ )   MARCH 1970 ON THE TAKING OF
                                            EVIDENCE ABROAD IN CIVIL OR
23                                          COMMERCIAL MATTERS

24

25                              [Filed Under Seal]

26

27

28

1   LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2   MARK SOLOMON (151949)
    DOUGLAS R. BRITTON (188769)
3   VALERIE L. McLAUGHLIN (191916)
    GAVIN M. BOWIE (235532)
4   655 West Broadway, Suite 1900
    San Diego, CA 92101
5   Telephone: 619/231-1058
    619/231-7423 (fax)
6   marks@lerachlaw.com
    dougb@lerachlaw.com
7   valeriem@lerachlaw.com
    gbowie@lerachlaw.com
8       – and –
    SHAWN A. WILLIAMS (213113)
9   WILLOW E. RADCLIFFE (200087)
    ELI R. GREENSTEIN (217945)
10  MONIQUE C. WINKLER (213031)
    100 Pine Street, Suite 2600
11  San Francisco, CA 94111
    Telephone: 415/288-4545
12  415/288-4534 (fax)
    shawnw@lerachlaw.com
13  willowr@lerachlaw.com
    elig@lerachlaw.com
14  jenniea@lerachlaw.com
    moniquew@lerachlaw.com
15
    Lead Counsel for Plaintiffs

16

17                UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19  In re ORACLE CORPORATION        )   Master File No. C-01-0988-MJJ
    SECURITIES LITIGATION           )
20                                  )   CLASS ACTION
    _____ )
21  This Document Relates To:       )   REQUEST FOR INTERNATIONAL
                                    )   JUDICIAL ASSISTANCE PURSUANT TO
22      ALL ACTIONS.                )   THE HAGUE CONVENTION OF 18
    _____ )   MARCH 1970 ON THE TAKING OF
23                                      EVIDENCE ABROAD IN CIVIL OR
                                        COMMERCIAL MATTERS
24

25

26

27

28

1    The United States District Court for the Northern District of California presents its

2  compliments to The Senior Master of the Supreme Court of Judicature, Queen's Bench Division,

3  Royal Courts of Justice, United Kingdom, and requests international judicial assistance to obtain

4  evidence to be used in a civil proceeding before this Court in the above captioned matter. This Court

5  has determined that it would further the interests of justice if documentary and testamentary

6  evidence currently in the possession or control of Matthew Symonds and DSG Retail Limited

7  ("DSG"), a public company incorporated pursuant to the laws of England and Wales, were provided

8  to the Lead Plaintiffs and the Class in this case and in the manner set forth herein.

9  **SECTION I.**

10    1.    Sender

11  Honorable Magistrate Judge Joseph C. Spero
   United States District Court for the Northern District of California
12  Courtroom A, 15th Floor
   450 Golden Gate Avenue
13  San Francisco, CA 94102
   United States of America
14
    2.    Central Authority of the Requested State
15
   The Senior Master of the Supreme Court of Judicature
16  Queen's Bench Division
   Royal Courts of Justice
17  Strand
   London WC 2A 2LL
18  United Kingdom

19    3.    Person to whom the executed request is to be returned

20  Mark Solomon, Esq.
   LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
21  655 West Broadway, Suite 1900
   San Diego, CA 92101
22  United States of America
   Telephone: (01) (619) 231-1058
23  Toll Free Telephone: (01) 800-449-4900
   Facsimile: (01) (619) 231-7423
24
    4.    Specification of the date by which the Requesting Authority requires receipt of
25      the response to the Letter of Request

26      (a)    Date:  ASAP

27

28  REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
   CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
   COMMERCIAL MATTERS - C-01-0988-MJJ                                    - 1 -

1           (b)    Reason for urgency: The discovery is necessary for depositions that must

2   occur prior to March 31, 2007 and for a court hearing currently scheduled February 27, 2007.

3   **SECTION II.**

4           IN CONFORMITY WITH ARTICLE 3 OF THE HAGUE CONVENTION ON THE
    TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

5   (THE "HAGUE CONVENTION"), THE UNDERSIGNED HAS THE HONOR TO
    SUBMIT THE FOLLOWING REQUEST:

6

7   5.    (a)    Requesting Judicial Authority (Article 3, a)

8   Honorable Magistrate Judge Joseph C. Spero
    United States District Court for the Northern District of California
    Courtroom A, 15th Floor

9   450 Golden Gate Avenue
    San Francisco, CA 94102

10  United States of America

11          (b)    To the competent authority of the United Kingdom

12  The Senior Master of the Supreme Court of Judicature
    Queen's Bench Division

13  Royal Courts of Justice
    Strand

14  London WC 2A 2LL
    United Kingdom

15          (c)    Name of the case and identifying number

16  *In re Oracle Corporation Securities Litigation*, Master File No. C-01-0988-MJJ. This case

17  has been certified as a class action and shall be referred to herein as the "Class Action."

18  6.    Names and addresses of the parties and their representatives (including

19      representatives in the requested State)

20      (a)    The Applicant – Plaintiff

21      The applicant is Local 144 Nursing Home Pension Fund, UFCW Local 56 Retail Meat

22  Pension Fund, Drifton Finance Corporation, and Robert D. Sawyer, the duly appointed Lead

23  Plaintiffs in the case described herein. The applicant is represented by and can be contacted through

24  court-appointed Class Counsel:

25      Mark Solomon, Esq.
    LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

26  655 West Broadway, Suite 1900
    San Diego, CA 92101

27  United States of America
    Telephone: (01) (619) 231-1058

28  REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
    CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
    COMMERCIAL MATTERS - C-01-0988-MJJ          - 2 -

1   Toll Free Telephone: (01) 800-449-4900
    Facsimile: (01) (619) 231-7423

2

3        (b)     Defendants

    The Defendants: Oracle Corporation; and current and former Oracle executives Lawrence J.

4

5   Ellison, Jeffrey O. Henley, and Edward J. Sanderson. They are represented by and may be contacted

    through their lead counsel named below.
6
        Patrick E. Gibbs
7       LATHAM & WATKINS LLP
        140 Scott Drive
8       Menlo Park, California 94025
        United States of America
9       Telephone: (01) (650) 328-4600
        Facsimile: (01) (650) 463-2600
10
        (c)     Other parties
11
    This Letter of Request seeks evidence from Matthew Symonds and DSG. These individuals
12
    and entities are not parties to the proceedings described herein but are likely to have evidence
13
    relevant to the proceedings.   Matthew Symonds may be reached at the following contact
14
    information.
15
        Matthew J. Symonds
16      16 St. Peters Road
        Twickenham
17      Middlesex TWI 1QX

18  DSG may be reached at the following contact information

19      DSG Retail Limited
        Marylands Avenue
20      Hemel Hempstead
        Hertfordshire, HP27TG
21
    7.   (a)     Nature of the proceedings (Article 3, c)
22
    Lead Plaintiffs in the Class Action allege violations of the United States federal securities
23
    laws as described below.
24
        (b)     Summary of the Complaint
25
    This is a civil class action in which the current operative complaint is the Revised Second
26
    Amended Complaint for Violations of the Federal Securities Laws filed by Plaintiffs on December 9,
27
    2002. This litigation is active and the parties are proceeding to trial in the U.S. District Court for the
28  REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
    CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
    COMMERCIAL MATTERS - C-01-0988-MJJ                                    - 3 -

1  Northern District of California before Judge Martin J. Jenkins. Further, this action is of a
2  commercial nature and was brought by Plaintiffs seeking recovery from Defendants for alleged
3  securities fraud violations.

4  Oracle sells database management systems and applications software. In 2000, Oracle
5  launched its applications Suite 11i, which was designed to permit businesses to manage their
6  financial, manufacturing, sales, logistics, e-commerce, and supplier information without having to
7  purchase and integrate separate software from different vendors. However, Plaintiffs allege that
8  Oracle released Suite 11i without sufficient technical development and that numerous defects in the
9  program soon became apparent. Additionally, Plaintiffs allege that a downturn in the U.S. economy
10  negatively affected Oracle's customers and their buying decisions.

11  Plaintiffs further allege that, with the knowledge of the economic downturn and Suite 11i
12  problems, Defendants continued to misleadingly assure investors that Oracle's business was sound
13  and growing. Defendants forecasted $0.12 earnings per share, $2.9 billion in revenues, 25%
14  database growth, and 75% applications growth for Oracle's third quarter, and Plaintiffs contend that
15  Defendants attributed much of that projected growth to 11i. Plaintiffs argue that Defendants'
16  assurances were knowingly false when made because of the problems with Suite 11i and the
17  economy and resulting negative impact on Oracle's business.

18  Plaintiffs allege that Defendants' assurances drove Oracle's stock price from $27 per share to
19  a class period high of $34 per share. Defendants took advantage of this inflation by selling nearly
20  $1 billion of their personal holdings in Oracle. In particular, Plaintiffs allege that Defendant Larry
21  Ellison, while in possession of this undisclosed, adverse information, sold over $894 million of his
22  personal holdings in Oracle securities. These sales by Ellison, Oracle's co-founder, Chairman of the
23  Board and CEO, are alleged to be out of line with his selling history.

24  On March 1, 2001, just days after its most recent assurances regarding its business prospects
25  and weeks after Ellison's stock sales, Oracle announced that it would miss its third quarter forecasts
26  by $0.02 per share, and its revenue forecast by $233 million.

27

28  REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
COMMERCIAL MATTERS - C-01-0988-MJJ                                                    - 4 -

1   These claims have been found sufficient to state a claim against Defendants for violations of

2   the United States federal securities laws.

3   In addition, Plaintiffs are pursuing relief in the Class Action for Defendants' destruction of

4   evidence. As well as the destruction of evidence regarding Softwar, which is discussed below,

5   Plaintiffs have claimed that Defendants have engaged in additional evidence destruction since the

6   commencement of this action in March 2001. Among the remedies Plaintiffs seek for evidence

7   destruction are judgment or an adverse inference instruction to the jury at trial.

8   (c)   Summary of Defenses

9   Defendants have raised a number of procedural and substantive legal defenses throughout the

10   course of litigating this action. Such defenses include the failure to allege any false or misleading

11   statements with sufficient particularity; failure to plead scienter[1] with sufficient particularity; that

12   certain statements alleged by Plaintiffs to be actionable are protected under safe harbor provisions of

13   the United States federal securities laws;[2] and failure to satisfy certain loss causation pleading

14   requirements.

15   Litigation is ongoing, but the Lead Plaintiffs' claims have been found sufficient to state a

16   claim against Defendants for violations of the United States federal securities laws.

17   (d)   Other necessary information or documents

18   In March 2001, as Defendants were announcing their earnings miss as described in the

19   Complaint, author Matthew Symonds (former Technology and Communications Editor and current

20   Political Editor for *The Economist*) began interviewing his friend, Defendant Larry Ellison (who sold

21

22   [1]   Scienter refers to Defendants' *mens rea*. Plaintiffs must prove that Defendants acted knowingly or with "deliberate or conscious recklessness."

23   [2]   The United States federal securities laws provide a safe harbor for any "forward-looking

24   statement" that is "identified" as such and is "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the

25   forward-looking statement." A "forward-looking statement" is any statement regarding (1) financial projections; (2) plans and objectives of management for future operations; (3) future economic

26   performance; or (4) the assumptions "underlying or related to" any of these issues. For statements that fall within the safe harbor, Plaintiffs must prove that such statements were made with "actual

27   knowledge" that they were false or misleading.

28

1  over $894 million of his personal holdings in Oracle during the class period), for a book, titled

2  *Softwar: An Intimate Portrait of Larry Ellison and Oracle* ("Softwar"). Softwar contains extensive

3  discussion by Defendant Ellison and others of the events at issue in this litigation and even discusses

4  the litigation itself.  For example, the book contains a mass of detailed information regarding

5  problems with Oracle's application Suite 11i and resulting concessions to and settlements with

6  unhappy customers, insider stock sales, including Defendant Ellison's sales of over $894 million of

7  his personal holdings in Oracle in January 2001, and Oracle's forecasting process and the effect of

8  the crashing economy on Oracle's business, to name a few.  The Court has held that the book is

9  "clearly relevant" to the issues in the litigation.

10        In preparation of the book Softwar, Symonds spent 18 months conducting in depth interviews

11  with Ellison.  The February 9, 2001 Final Agreement between Ellison and Symonds indicates that

12  Symonds conducted at least 135 hours of recorded interviews with Ellison between March 2001 and

13  August 2002.  As a result of this extensive interview process, over a hundred hours of tapes and

14  transcripts of such interviews were created.  Because of the clear relevance of the information

15  contained in the book, it is readily apparent that these tapes and transcripts, which consist of

16  interviews that form the basis for the information in the book, will contain material which is relevant

17  to the litigation.

18        On October 30, 2006 Plaintiffs moved to compel Defendants to produce documents

19  concerning and created in preparation for Softwar. Extensive briefing ensued. During the course of

20  that briefing, on November 9, 2006, Symonds signed a declaration in support of Defendants'

21  Opposition to Plaintiffs' Motion to Compel which confirmed that the tapes and transcripts of his

22  interviews with Ellison were still in his possession and had not yet been destroyed.  On January 2,

23  2007 the Court issued an Order finding that, although the materials were in the physical possession

24  of Symonds, Ellison has legal control of them pursuant to a contract between Symonds and Ellison.

25  As a result, the Court ordered Defendants to produce copies of "any and all tape recordings and/or

26  transcripts of interviews with Ellison created in preparation of the book" Softwar by January 16,

27  2007.

28

1    Plaintiffs immediately requested information regarding Defendants' production of the
2  Softwar materials. In response, Plaintiffs counsel has stated that counsel for Defendants indicated
3  that they were not yet sure whether Defendants' would take the position that the materials no longer
4  existed or that Symonds was refusing to produce them. Defendants' counsel denies suggesting the
5  possibility that the materials were destroyed. Nonetheless, on January 11, 2007, Defendants'
6  counsel represented to Plaintiffs that at least some of the materials had been destroyed. As
7  Symonds' November 9, 2006 declaration made it clear that the materials still existed at that point, to
8  the extent that they have been destroyed, such destruction must necessarily have taken place between
9  November 9, 2006 and January 11, 2007. However, all information Plaintiffs have regarding the
10  whereabouts of the materials ordered produced has come from counsel for Defendants. Plaintiffs are
11  seeking production of such materials directly from Symonds or, to the extent such materials have, in
12  fact, been destroyed, testamentary evidence regarding that destruction.

13    According to Defendants' counsel, after signing his declaration in November 2006, Symonds
14  attempted to access the audio files of interviews with Defendant Ellison, which were stored on a
15  laptop computer that Symonds had not used since writing Softwar. He was unable to open the files
16  and, as a result, took the computer to the Brentford PC World (a retail location of DSG) for service.
17  At first, Defendants' counsel informed Plaintiffs that Symonds was told by PC World that the cost of
18  repairing the computer would be the same as the cost of buying a new computer and, as a result, he
19  instructed PC World to dispose of the computer. Defendants' counsel later amended that version,
20  stating instead that Symonds (the former Technology and Communications Editor for *The*
21  *Economist*) had also been informed by PC World that the audio files contained on the computer were
22  not recoverable. Despite Defendants' counsels' explanation of the disposition of the materials, the
23  Brentford PC World, according to Defendants' counsel, has no record of Symonds' or his computer.
24  Again, however, Plaintiffs are relying only on the representations of Defendants' counsel and, thus,
25  request the right to seek production of the materials or, to the extent PC World (DSG) informs
26  Plaintiffs that such materials are not in their possession, testamentary and documentary evidence of
27  the destruction of the materials.

28  REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
     CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
     COMMERCIAL MATTERS - C-01-0988-MJJ                                                          - 7 -

1       According to Defendants' counsel, despite his destruction of the computer containing the

2   audio files, Symonds still had possession of at least some of the transcripts which the Court ordered

3   produced and turned at least some of these transcripts in his possession over to Defendants for

4   production. When he produced those transcripts to defendants, he said that he did so only because

5   his close friend Ellison asked that he do so. On January 16, 2007 Defendants produced to Plaintiffs

6   those transcripts provided by Symonds.

7       These transcripts further confirm the relevance of the Softwar materials ordered produced.

8   Although the transcripts only contain Symonds' later interviews with Ellison, which took place in

9   2002, they are rife with discussion regarding the events and circumstances underlying this litigation.

10  The transcripts include discussion of the release of 11i, the problems that ensued and their effect on

11  Oracle, referred to by Ellison as "brand damage," and even this litigation, to name a few. The

12  materials which are missing are likely to contain even more relevant information, as they are from

13  the interviews recorded in 2001, beginning just days after the events underlying this lawsuit.

14      Upon learning of Defendants' counsels' representations regarding the destruction of

15  evidence, Plaintiffs immediately sought relief from the Court. At a hearing on January 16, 2006, the

16  Court held that Plaintiffs could issue a Letter of Request to seek production of the materials

17  compelled by the January 2, 2007 Order as well as information regarding the unavailability of such

18  materials. The Court signed an Order permitting the issuance of such a Letter of Request on January

19  23, 2007.

20      Plaintiffs intend to seek sanctions as a result of the destruction of the Softwar materials.

21  Possible sanctions include default judgment or the presentation of evidence regarding the destruction

22  at trial accompanied by an adverse inference jury instruction.

23      A copy of the Complaint is attached hereto as Exhibit 1. Copies of the briefing on Plaintiffs'

24  Motion to Compel Defendants' Production of Documents Concerning and Created in Preparation for

25  the Book Softwar, as well as the Orders concerning such briefing, are attached hereto as Exhibits 2-

26  6. The Final Agreement between Matthew Symonds and Defendant Larry Ellison regarding Softwar

27  is attached as Exhibit 7.

28  REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
    CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
    COMMERCIAL MATTERS - C-01-0988-MJJ    - 8 -

8.  (a)  Evidence to be obtained or other judicial act to be performed (Article 3, d)

The evidence to be obtained consists of testimonial and documentary evidence for use at trial in the Class Action.  Plaintiffs seek the Softwar materials ordered produced as well as documentary and testamentary evidence regarding the creation, storage, and possible destruction of such materials. It is requested that a United Kingdom judicial authority compel (i) the parties identified in Schedule A hereto to appear and be deposed under oath as to their knowledge of facts that are relevant to the issues of this case and (ii) the parties identified in Schedule B hereto to produce the documentary evidence identified in Schedule B.

(b)  Purpose of the evidence or judicial act sought

The evidence at issue in this Letter of Request consists of materials containing direct statements by Defendant Larry Ellison regarding the events at issue in this Class Action as well as information regarding the possible deliberate destruction of some of those materials. The evidence regarding destruction of these materials is relevant to the scienter, or *mens rea*, of Defendants, the falsity of Defendants' statements, and the materiality of Defendants' statements, all of which are elements that Plaintiffs must prove at trial. In addition, after reviewing any evidence regarding their destruction, should the Court find that these materials were destroyed in violation of either the United States Federal Rules of Civil Procedure or the Private Securities Litigation Reform Act of 1995, possible sanctions include default judgment or the presentation of evidence regarding the destruction at trial accompanied by an adverse inference jury instruction.

As such, Plaintiffs have good cause to believe that the materials and information will aid in establishing facts relevant to this case.

9.  Identity and addresses of persons to be examined

The identity and addresses of the persons to be examined are set forth in Schedule A hereto.

10.  Statement of the subject matter about which they are to be examined (Article 3, f)

The subject matter about which the persons identified in Schedule A hereto will be examined is set forth on Schedule C hereto.

11.  Documents or other property to be inspected (Article 3, g)

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
COMMERCIAL MATTERS - C-01-0988-MJJ                                              - 9 -

1    The documents to be inspected and copied by Lead Plaintiffs' agent in the United Kingdom

2    are identified in Schedule B hereto.  Lead Plaintiffs' agent in London may be reached as follows:

3        Lawrence Abramson, Esq.
         Solicitor
4        HARBOTTLE & LEWIS LLP
         14 Hanover Square
5        London W1S 1HP
         United Kingdom
6        Telephone: +44 (0) 20 7667 5000
         Facsimile: +44 (0) 20 7667 5100

7        12.    Requirement that any evidence be given under oath or affirmation and specific
8               form to be used (Article 3, h)

9        The examination of the persons identified on Schedule A shall be given under oath before (a)

10   a secretary of embassy, consul general, vice-consul or consular agent of the United States of

11   America or any other person authorized to administer oaths under the laws of the United Kingdom;

12   or (b) before a person appointed by the appropriate judicial authority of the United Kingdom to

13   administer oaths and take testimony.

14       The Court further requests that the appropriate judicial authority require that the testimony

15   given during the examinations be given under the following oath: "I [name of deponent] swear that

16   the testimony that I am about to give is the truth, the whole truth and nothing but the truth, so help

17   me God" or that the duly appointed officer shall make inquiry of such witness to ensure that he/she

18   understands the gravity of the procedure and affirms that his/her statement will be true and correct in

19   all respects.

20       13.    Special methods or procedure to be followed (Articles 3, i and 9)

21       The examinations shall be taken under the Federal Rules of Civil Procedure of the United

22   States of America, except to the extent such rules are incompatible with the internal laws of the

23   United Kingdom, in which case, such laws shall control.

24       The examination shall be taken before a commercial stenographer and a commercial

25   videographer and a verbatim transcript and videotape shall be produced.

26       14.    Request for notification of time and place for the execution of the Request and
27              identity and address of any person to be notified (Article 7)

         Please send notice of the time and place for the execution of the Request to:
28   REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
     CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
     COMMERCIAL MATTERS - C-01-0988-MJJ                                          - 10 -

1  Mark Solomon, Esq.
   LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
2  655 West Broadway, Suite 1900
   San Diego, CA 92101
3  United States of America
   Telephone: (01) (619) 231-1058
4  Toll Free Telephone: (01) 800-449-4900
   Facsimile: (01) (619) 231-7423
5
   15.    Fees and Costs
6
        The fees and costs incurred which are reimbursable under the second paragraph or Article 14
7
   or under Article 26 of the Hague Convention will be borne by the Lead Plaintiffs. Their payment of
8
   any such fees and costs is without prejudice to their making a subsequent request to be reimbursed
9
   for these costs by Defendants in the Class Action.
10
        The Special Master hereby RECOMMENDS that the Court issue the Requests as set forth
11
   above:
12
   DATED:    1-30-07
13                                        _____
14                                        THE HONORABLE EDWARD A. INFANTE (RET.)
                                          SPECIAL DISCOVERY MASTER
15 IT IS SO REQUESTED:

16 DATED:                                       JOSEPH C. SPERO

17                                        _____
                                          THE HONORABLE JOSEPH C. SPERO
18                                        UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28 REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE
   CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
   COMMERCIAL MATTERS - C-01-0988-MJJ                                          - 11 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE A**

**PERSONS TO BE EXAMINED**

Mr. Matthew Symonds
DSG Retail Limited (particularly, a representative from its Brentford PC World retail location)

1                                          **SCHEDULE B**

2    **DOCUMENTS TO BE EXAMINED AND COPIED FROM MATTHEW SYMONDS**

3   **I.**    **DEFINITIONS**

4        Unless otherwise stated, the terms set forth below are defined as follows:

5        1.    "You" or "your" refers to Matthew Symonds, and any of his agents, attorneys,

6 advisors, accountants and all other persons acting or purporting to act on his behalf.

7        2.    "Documents" refers to letters, words, or numbers set down by handwriting,

8 typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic

9 recording (including e-mails), or other form of data compilation.

10       3.    "Oracle" refers to defendant Oracle Corporation, any of its subsidiaries, divisions or

11 affiliates (foreign and domestic), predecessors, successors and any present and former officers,

12 directors, employees, agents or members of the Board of Directors of Oracle, its attorneys,

13 accountants, advisors, committees and all other persons acting or purporting to act on its behalf.

14       4.    The connectives "and" and "or" shall be construed either disjunctively or

15 conjunctively as necessary to bring within the scope of the document request all responses that

16 otherwise might be construed to be outside of its scope.

17       5.    The use of the singular shall be deemed to include the plural, and the use of one

18 gender shall include all others, as appropriate in the context.

19       6.    "Including" shall be construed to mean "without limitation."

20   **II.**    **INSTRUCTIONS**

21        1.    All documents shall be produced as they are maintained in the ordinary course of

22 business, and shall be produced in their original folders, binders, covers or containers, or facsimile

23 thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such

24 documents are stored and retrieved.

25        2.    In responding to these requests, you shall produce all responsive documents

26 (including those stored electronically) which are in your possession, custody, or control, or in the

27 possession, custody or control of your agents, attorneys, advisors, accountants, or other

28 representatives. A document shall be deemed to be within your control if you have the right to

1  secure or endeavor to secure the document or a copy of the document from another person having

2  possession or custody of the document.

3      3.      You are to produce for inspection and copying by plaintiffs, original documents

4  including those stored electronically as they are kept in the usual course of business. If the original

5  is not in your custody, then a copy thereof, and all non-identical copies which differ from the

6  original or from the other copies produced for any reason, including, without limitation, the making

7  of notes thereon.

8      4.      To the extent that there are documents containing information responsive to these

9  requests that are currently in electronic format, the documents are to be produced in their native

10 format (*e.g.*, Word, Excel or Word Perfect).

11     5.      If production is withheld on the ground of privilege, as to each such withheld

12 document state the following information:

13          (a)      which privilege is claimed;

14          (b)      who is asserting the privilege;

15          (c)      a precise statement of the facts upon which said claim of privilege is based;

16 and

17          (d)      the following information describing each purportedly privileged document:

18                   (i)      a brief description sufficient to identify its nature, *i.e.*, agreement,

19 letter, memorandum, type, etc.;

20                   (ii)     the subject matter and purpose of the document;

21                   (iii)    the date it was prepared;

22                   (iv)     the date it bears;

23                   (v)      the date it was sent;

24                   (vi)     the date it was received;

25                   (vii)    the identity of the person preparing it;

26                   (viii)   the identity of the person sending it;

27                   (ix)     the identity of each person to whom it was sent or was to have been

28 sent, including all addresses and all recipients of copies;

1           (x)     a statement as to whom each identified person represented or

2 purported to represent at all relevant times;

3           (xi)     all persons to whom its contents have been disclosed; and

4           (xii)     a precise description of the place where each copy of that document is

5 kept, including the title or description of the file in which said document may be found and the

6 location of such file.

7     6.     If a portion of any document responsive to these requests is withheld under claim of

8 privilege pursuant to Instruction No. 5, any non-privilege portion of such document must be

9 produced with the portion claimed to be privileged or redacted;

10     7.     You are to produce each document requested herein in its entirety, without deletion or

11 excision (except as qualified by Instruction Nos. 5 and 6 above);

12     8.     Whenever a document is not produced in full or is produced in redacted form, so

13 indicate on the document and state with particularity the reason or reasons it is not being produced in

14 full, and describe to the best of your knowledge, information and belief, and with as much

15 particularity as possible, those portions of the document which are not being produced.

16     9.     If a document responsive to these requests was at any time in your possession,

17 custody or control but is no longer available for production, as to each such document state the

18 following information:

19           (a)     whether the document is lost or missing;

20           (b)     whether it has been destroyed;

21           (c)     whether the document was transferred or delivered to another person and, if

22 so, at whose request;

23           (d)     whether the document has been otherwise disposed of; and

24           (e)     a precise statement of the circumstances surrounding the disposition of the

25 document and the date of its disposition.

26

27

28

III.    DOCUMENTS REQUESTED

REQUEST NO. 1

The tapes, files, or other audio or video recordings of your hundreds of hours (at least 135 hours) of interviews with Larry Ellison which you conducted every month between March 2001 and August 2002 in preparation of the book *Softwar: An Intimate Portrait of Larry Ellison and Oracle*.

REQUEST NO. 2

The documents evidencing transcription of your hundreds of hours (at least 135 hours) of interviews with Larry Ellison which you conducted every month between March 2001 and August 2002 in preparation of the book *Softwar: An Intimate Portrait of Larry Ellison and Oracle*.

REQUEST NO. 3

The computer on which you stored the tapes, files, or other audio or video recordings or documents evidencing transcription of your hundreds of hours (at least 135 hours) of interviews with Larry Ellison which you conducted every month between March 2001 and August 2002 in preparation of the book *Softwar: An Intimate Portrait of Larry Ellison and Oracle*.

**DOCUMENTS TO BE EXAMINED AND COPIED FROM DSG RETAIL LIMITED**

**IV.   DEFINITIONS**

Unless otherwise stated, the terms set forth below are defined as follows:

1.     You" or "your" refers to DSG Retail Limited, and any of its predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants and all other persons acting or purporting to act on its behalf.

2.     "Documents" refers to letters, words, or numbers set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording (including e-mails), or other form of data compilation.

3.     "Oracle refers to defendant Oracle Corporation, any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors and any present and former officers, directors, employees, agents or members of the Board of Directors of Oracle, its attorneys, accountants, advisors, committees and all other persons acting or purporting to act on its behalf.

4.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that otherwise might be construed to be outside of its scope.

5.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include all others, as appropriate in the context.

6.     "Including" shall be construed to mean "without limitation."

**V.   INSTRUCTIONS**

1.     All documents shall be produced as they are maintained in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved.

2.     In responding to these requests, you shall produce all responsive documents (including those stored electronically) which are in your possession, custody, or control, or in the

1   possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or
2   affiliates, or any of your respective directors, officers, managing agents, agents, employees,
3   attorneys, advisors, accountants, or other representatives. A document shall be deemed to be within
4   your control if you have the right to secure or endeavor to secure the document or a copy of the
5   document from another person having possession or custody of the document.

6       3.      You are to produce for inspection and copying by plaintiffs, original documents
7   including those stored electronically as they are kept in the usual course of business. If the original
8   is not in your custody, then a copy thereof, and all non-identical copies which differ from the
9   original or from the other copies produced for any reason, including, without limitation, the making
10  of notes thereon.

11      4.      To the extent that there are documents containing information responsive to these
12  requests that are currently in electronic format, the documents are to be produced in their native
13  format (e.g., Word, Excel or Word Perfect).

14      5.      If production is withheld on the ground of privilege, as to each such withheld
15  document state the following information:

16          (a)     which privilege is claimed;

17          (b)     who is asserting the privilege;

18          (c)     a precise statement of the facts upon which said claim of privilege is based;
19  and

20          (d)     the following information describing each purportedly privileged document:

21                  (i)     a brief description sufficient to identify its nature, i.e., agreement,
22  letter, memorandum, type, etc.;

23                  (ii)    the subject matter and purpose of the document;

24                  (iii)   the date it was prepared;

25                  (iv)    the date it bears;

26                  (v)     the date it was sent;

27                  (vi)    the date it was received;

28                  (vii)   the identity of the person preparing it;

1              (viii)   the identity of the person sending it;

2              (ix)    the identity of each person to whom it was sent or was to have been

3   sent, including all addresses and all recipients of copies;

4              (x)    a statement as to whom each identified person represented or

5   purported to represent at all relevant times;

6              (xi)    all persons to whom its contents have been disclosed; and

7              (xii)   a precise description of the place where each copy of that document is

8   kept, including the title or description of the file in which said document may be found and the

9   location of such file.

10       6.     If a portion of any document responsive to these requests is withheld under claim of

11   privilege pursuant to Instruction No. 5, any non-privilege portion of such document must be

12   produced with the portion claimed to be privileged or redacted;

13       7.     You are to produce each document requested herein in its entirety, without deletion or

14   excision (except as qualified by Instruction Nos. 5 and 6 above);

15       8.     Whenever a document is not produced in full or is produced in redacted form, so

16   indicate on the document and state with particularity the reason or reasons it is not being produced in

17   full, and describe to the best of your knowledge, information and belief, and with as much

18   particularity as possible, those portions of the document which are not being produced.

19       9.     If a document responsive to these requests was at any time in your possession,

20   custody or control but is no longer available for production, as to each such document state the

21   following information:

22              (a)    whether the document is lost or missing;

23              (b)    whether it has been destroyed;

24              (c)    whether the document was transferred or delivered to another person and, if

25   so, at whose request;

26              (d)    whether the document has been otherwise disposed of; and

27              (e)    a precise statement of the circumstances surrounding the disposition of the

28   document and the date of its disposition.

## VI.    DOCUMENTS REQUESTED

REQUEST NO. 1

The computer belonging to Matthew Symonds that was brought to your Brentford PC World location for servicing between November 9, 2006 and January 11, 2007.

REQUEST NO. 2

The audio files on the computer belonging to Matthew Symonds that was brought to your Brentford PC World location for servicing.

REQUEST NO. 3

Your corporate policy relating to the identification, service, or disposition of computers that are brought to your stores for service.

REQUEST NO. 4

A copy of the form completed when Matthew Symonds brought his computer to your Brentford PC World location for servicing.

1          **SCHEDULE C**

2     **SUBJECTS ON WHICH IDENTIFIED PERSONS WILL BE EXAMINED**

3          The identified persons will be examined as to their knowledge of matters described in this

4     Letter of Request and knowledge of all facts discovered regarding the Softwar materials ordered

5     produced by the Court on January 2, 2007 and the whereabouts or destruction of any of those

6     materials.

7

8     S:\Cases\SD\Oracle3\mis00038383.doc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28