

LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

MARK SOLOMON
msolomon@lerachlaw.com

March 8, 2007

VIA HAND DELIVERY

Honorable Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:   In re Oracle Securities Litigation
      Master File No. C-01-0988-MJJ

Dear Judge Infante:

Plaintiffs write to notify Your Honor of further and alarming recent developments concerning the Softwar materials ordered produced by Your Honor on December 29, 2006. Specifically, just this morning, plaintiffs were informed that despite having been notified by Symonds via e-mail on February 14, 2007 of the likely possession of copies of the materials by an individual, Jason Wright, who is associated with a transcription service in the United Kingdom, defendants made no genuine effort to procure any such copies. Nor did defendants make any effort to inform plaintiffs or the Court in their multiple filings since then of their knowledge. Instead, they allowed Matthew Symonds, who has already admitted to the intentional destruction of Larry Ellison's copies of the materials, to make representations to the owner of the service that he was under no legal obligation to produce the materials and that such materials are irrelevant to this litigation. Accordingly, plaintiffs request an emergency telephonic hearing with Your Honor to discuss these developments.

As Your Honor is aware, on January 11, 2007 (despite clear indications that defendants were aware of the destruction or possible destruction at least a week earlier) (see Ex. 1), defendants informed plaintiffs that after plaintiffs had moved to compel their production on October 30, 2006, the majority of the Softwar materials ordered produced had been destroyed.[1] On January 16, 2007, defendants produced 200 hundred pages of transcripts of 2002 interviews with Mr. Ellison, conducted in preparation of Softwar. The transcripts contain the name and web address of the transcription service used by Mr. Symonds to create the transcripts (Outsource Typing Services – www.typing.co.uk). See, e.g., Ex. 2. Plaintiffs immediately sent a private investigator to contact the service and to try to recover any copies of the materials which it might have retained. Plaintiffs' investigator contacted an individual

---

[1]   All "Ex. ___" references are to exhibits attached hereto.



[Insert Addressee Names]
March 8, 2007
Page 2

named Jason Wright, the current owner of www.typing.co.uk, and requested that he provide plaintiffs with any copies of the materials that had been retained.

In a January 19, 2007 letter, after several pleas by plaintiffs for any information regarding the materials, Patrick Gibbs purported to inform plaintiffs that Mr. Symonds had used Outsourced Typing Services ("OTS") to transcribe his interviews with Mr. Ellison. See Exs. 3-5. According to Mr. Gibbs, Mr. Symonds had recently attempted to contact the transcribers with whom he had dealt at OTS, but his e-mails came back undelivered (and he had no other contact information for them). Mr. Gibbs failed and refuses to provide plaintiffs with either the names of the transcribers or the e-mail addresses apparently used by Mr. Symonds to attempt to contact them. See Ex. 19.

On February 13, 2007, Mr. Wright e-mailed Mr. Symonds to inform him that he had been contacted by plaintiffs' investigator and thought it prudent to speak with Mr. Symonds before proceeding. "I've been approached by an American private investigator who is working for a Californian law firm that is representing an Oracle shareholder group in an action against Mr. Ellison. The investigator wants to obtain copies of the audio files and transcripts of your conversations with Mr. Ellison. I thought it prudent to speak to you about this before proceeding." See Ex. 6 at 6.

That same day, Mr. Symonds responded to Mr. Wright's e-mail, informing Mr. Wright that "[t]he transcripts and audio files were generated by me, at my cost and for my exclusive use. The typing.co uk service was a confidential service. The files in question have no relevance whatsoever to this litigation." Mr. Symonds then asked Mr. Wright not to take any action until Mr. Symonds had sought "legal advice" on the matter. See Ex. 6 at 5.

On February 14, 2007 Mr. Symonds again wrote to Mr. Wright, informing him that he had forwarded Mr. Wright's e-mails to defendants' counsel [Mr. Gibbs], who would be contacting Mr. Wright to request copies of the materials:

> I have forwarded your email address to Mr. Ellison's lawyer by copying this communication to him. **He will also ask you to make available to him the transcripts and audio files as he is under instruction by the court to use his best efforts provide them to the plaintiffs**. I do not regard myself as under a legal obligation to provide this material, which as I have stated is both mine and bears no relevance to the litigation. But in a spirit of co-operation, I ask that you comply with this request if you are able to do do [sic]. I am sorry you have been involved in this business. See id. at 5.

Notwithstanding their receipt of the February 14, 2007 e-mail strongly indicating Mr. Wright had possession of the audio and transcripts, by March 5, 2007, when plaintiffs filed their Opposition to Defendants' Motion to Reverse the Special Master's Order Re: Softwar



[Insert Addressee Names]
March 8, 2007
Page 3

materials, counsel for defendants still had not contacted Mr. Wright to ask that he provide them with the materials, or at all. Incredibly, almost three weeks after being told Mr. Wright appeared to possess the materials, neither defendants nor their counsel had attempted even to contact Mr. Wright. Nor had they provided plaintiffs with any information about these developments. In the meantime, however, defendants and their counsel continued to represent to the Court and to plaintiffs that they were doing everything in their power to procure the Softwar materials.

In a February 22, 2007 letter, Mr. Gibbs informed plaintiffs that Mr. Symonds's original representations regarding his destruction of the materials (that he had instructed PC World to dispose of the computer after being told that the files were not recoverable) were completely false. See Ex. 7. Instead, according to Mr. Gibbs, sometime after learning of plaintiffs' motion to compel the materials, Mr. Symonds intentionally destroyed them by disposing of his laptop computer (which contained the audio files) at an unnamed facility for the ecological destruction of such materials. Mr. Gibbs went on to write the following:

> In particular, Mr. Symonds continues to maintain that, other than the typing service he previously identified, Mr. Symonds did not provide copies of any recordings or transcripts of his interviews with Mr. Ellison to anyone.
>
> As we have previously noted, Defendants have no personal knowledge about the events described by Mr. Symonds (either today or previously), and we have no way to independently verify Mr. Symonds' claims. *Id.*

In a February 23, 2007 letter, defendants informed Your Honor of the new version of events. See Ex. 8. In addition, on February 23, 2007, defendants filed a Supplement to their Motion to Reverse Special Master's Re: Softwar Materials in which they informed the Court of the previous misrepresentation regarding the destruction of the materials and of the new version of events. See Ex. 9. In their Supplement, defendants went on to represent:

> Having asked Mr. Symonds in November of 2006 to preserve these materials, and having demanded that Mr. Symonds produce these materials to Defendants for production to Plaintiffs in accordance with the Special Master's Order, Defendants are extremely troubled by Mr. Symonds' most recent version of events, and by Mr. Symonds' failure to provide a truthful explanation regarding what happened to the computer files at issue.
>
> As demonstrated by Mr. Symonds' conduct, and by his failure to tell Defendants' counsel the truth about his handling of the materials called for by the Order, Defendants have no control over Mr. Symonds or the interview recordings and transcripts of his interviews with Mr. Ellison. ***If Defendants had control over those materials, they would have produced them in***

[Insert Addressee Names]
March 8, 2007
Page 4

    *this case.* If Defendants had any control of Mr. Symonds' actions, he would have preserved these materials (as Defendants' counsel asked him to do); he would have provided all of the materials at issue to Defendants (as Defendants' counsel asked him to do); and Defendants would have produced them. . . .

    Defendants have moved to reverse the Special Master's Order both because Defendants believe the ruling was legally incorrect and because it would be fundamentally unfair to hold Defendants responsible for the actions of a person who is outside their control. Mr. Symonds' actions over the past two months amply confirm that Defendants have no control over this witness, and lacking such control, Defendants should not be penalized for his improper conduct." *Id.* at 2-3 (emphasis added).

Upon receiving Mr. Gibbs February 23, 2007 letter, plaintiffs immediately demanded details from defendants regarding the new version of events. *See* Exs. 10-11. In response, on February 26, 2007, Mr. Gibbs wrote the following to Mr. Solomon:

    ***We have made clear repeatedly that neither we nor our clients have any personal knowledge*** of the facts regarding Mr. Symonds' handling of these materials. As such, ***we can only relay to you what we have been told by Mr. Symonds, who is the only person we know to have had physical possession of the recordings and transcripts in question.*** Your suggestion that Defendants or their counsel are somehow responsible for a potential loss of evidence – and your accusation that we have acted with the intent to "facilitate" the destruction of evidence – is specious. It is undisputed that neither Defendants nor their counsel have ever had physical possession, custody or control over the interview recordings and transcripts at issue. At all times those materials have been in the sole physical possession, custody and control of Matthew Symonds, a third party over whom neither we nor our clients have any control. . . .

    We were as surprised as anyone to hear from Mr. Symonds that he had not preserved all of his interview recordings and transcripts, as I had asked him to do back in November of last year. ***Since learning that fact, we have relayed to you, in real time, all the information we have been able to gather that might lead to the discovery of any other copies of the materials called for by the Order.*** The questions I have declined to answer have nothing to do with any effort to locate the materials, but instead were a transparent effort to try and create a record in order to seek sanctions. . . . We believe any request for sanctions under these circumstances would be frivolous, and we will respond to any such request at the appropriate time. In the meantime, however, we do not intend to engage in a prolonged written



[Insert Addressee Names]
March 8, 2007
Page 5

> argument with you over these issues. **_Had you spent even half this much energy seeking these materials directly from Mr. Symonds (as you could have done at any time_** during the nearly two-years of fact discovery in this case), **_you may well have had them by now_**." See Ex. 11 (emphasis added).

On March 5, 2007 plaintiffs filed their Opposition to Defendants' Motion to Reverse in which the details of defendants and Mr. Symonds misconduct are fully explicated. See Ex. 12.[2] The Opposition was filed and served on the evening of 5th. It would seem that after reading plaintiffs' compelling Opposition (although plaintiffs have no way of knowing this for certain) Mr. Gibbs sprang into action. At 10:56 p.m. on March 5, 2007, having waiting three weeks and done nothing, Mr. Gibbs finally initiated contact with Mr. Wright who, as far as Mr. Gibbs knew as of February 14, 2007, was in possession of the transcripts. See Ex. 6 at 4-5. Incredibly, since March 5, Mr. Gibbs has had difficulty refraining from contacting Mr. Wright whose existence he ignored for three weeks. Id. at 1-4. For the first time, Mr. Gibbs suddenly recognized the criminal consequences of the misconduct by defendants, their counsel, and Mr. Symonds and he enthusiastically described those consequences to Mr. Wright. Mr. Gibbs also engaged in a flurry of letter writing activity to plaintiffs, making misrepresentations regarding his contact with Mr. Wright and Mr. Symonds.[3] See Ex. 13.

Defendants' conduct since plaintiffs' requests of the Softwar materials has been egregious in the extreme. They have taken frivolous positions orchestrated to facilitate the destruction of priceless evidence. Despite every indication that they knew that the evidence had been or was about to be destroyed much earlier, they failed to inform either plaintiffs or the Court until January 11, 2007. They claim that they failed to tell Symonds of the Order itself until January 10, 2007, notwithstanding its service upon them on January 2, 2007. See Ex. 14. Since January 11, defendants have delayed or absolutely refused to provide plaintiffs with information necessary to pursue their own investigation of the materials. Despite plaintiffs' multiple requests, defendants still have not provided plaintiffs with any information regarding the dates on which the destruction allegedly took place. See Exs. 3-5, 10-11, 15-16. They have provided absolutely no information on the computer on which Mr. Symonds stored

---

[2] Plaintiffs filed their Opposition on March 5, 2007 and their Corrected Opposition (attached as Ex. 12) the following day with minimal corrections.

[3] On March 6, 2007, Mr. Gibbs wrote to plaintiffs to inform that Mr. Symonds had been contacted by Mr. Wright and that Mr. Gibbs himself had been in recent contact with Mr. Wright. See id. Upon receipt of this letter, plaintiffs instructed their investigator to again contact Mr. Wright. Today, Mr. Wright provided plaintiffs with his communications with Mr. Symonds and Mr. Gibbs, which are attached to this letter. See Ex. 6.

Case 3:01-cv-00988-SI  Document 1295-16  Filed 10/10/07  Page 6 of 6



[Insert Addressee Names]
March 8, 2007
Page 6

the materials (make, model, etc.). They have not provided the name or locations of the "ecological facility" where Mr. Symonds allegedly disposed of the computer (it took five days for them to provide plaintiffs with the name of the "repair shop" where they originally represented the computer was destroyed. See Ex. 17-18). See Exs. 8, 11. Letters from the undersigned and from Shawn Williams seeking information have largely been ignored. Defendants and their counsel have made no affirmative efforts to recover the materials and, instead, have taken affirmative steps to prevent plaintiffs from receiving it.

Now plaintiffs have undisputable evidence that defendants and their counsel had no interest whatsoever in producing the Softwar materials to plaintiffs pursuant to Your Honor's Order. Instead of complying with their legal obligation, upon learning of a possible source of such materials, defendants' only affirmative action was to lie to plaintiffs and the Court about their "efforts."

Plaintiffs respectfully request that Your Honor allow discovery from Latham & Watkins and defendants regarding their contact with Mr. Symonds, any individual associated with OTS or www.typing.co.uk, and their efforts to preserve and obtain the materials subject to court order.

Respectfully submitted,

MARK SOLOMON

Document6