Peter A. Wald
Direct Dial: (415) 395-8006
E-mail: peter.wald@lw.com

**LATHAM&WATKINS**LLP

505 Montgomery Street, Suite 2000
San Francisco, California 94111-2563
Tel: (415) 391-0600  Fax: (415) 395-8095
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

January 15, 2007

**BY EMAIL AND FACSIMILE**

The Honorable Edward A. Infante
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111

      Re:    In re Oracle Corporation Securities Litigation

Your Honor:

      We write in response to Mr. Solomon's January 12, 2007 letter to Your Honor requesting an emergency telephonic conference regarding materials that are the subject of Your Honor's December 29, 2006 Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Defendants' Production of Documents Concerning and Created in Preparation for the Book *SOFTWAR* (the "Order"). We expect that Plaintiffs will raise these issues during the hearing currently scheduled for Tuesday, January 16, 2007, at 8:45 a.m.

      Mr. Solomon's January 12 letter requests leave to issue a Letter Rogatory to the United Kingdom High Court on an expedited basis for the purpose of obtaining discovery from Matthew Symonds, the author of *SOFTWAR*, and other third parties in the United Kingdom, as well as leave to issue a subpoena to Simon & Schuster, Inc. *See* 1/12/2007 Letter from M. Solomon to the Honorable E. Infante (the "Solomon letter") at ¶6. Defendants do not object to Plaintiffs' request for leave to issue a Letter Rogatory with respect to Mr. Symonds and the "repair shop personnel" referred to in Mr. Solomon's letter, nor do Defendants object to Plaintiffs' request for leave to issue a subpoena to Simon & Schuster, Inc., even though both requests may be untimely given the October 2, 2006 discovery cutoff.

      Defendants' only objection is to the scope of Plaintiffs' request. Plaintiffs have requested leave to seek production from these third parties of "all materials related to *Softwar*." *See* Solomon Letter at ¶ 6. Plaintiffs requested essentially the same scope of discovery in their initial Motion to Compel Defendants' Production of Documents Concerning and Created in Preparation for the Book *SOFTWAR*. *See* 10/30/2006 Motion to Compel at 1. In the Order, however, Your Honor found that only a limited portion of the requested materials—tapes and transcripts of interviews with Larry Ellison—were reasonably calculated to lead to the discovery of admissible evidence. *See* 12/29/2006 Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Defendants' Production of Documents Concerning and Created in Preparation for the Book Softwar at 4-5. Your Honor found that the remaining materials Plaintiffs requested were

The Honorable Edward A. Infante
January 15, 2007
Page 2

LATHAM&WATKINS LLP

not reasonably calculated to lead to the discovery of admissible evidence, and that conclusion remains correct: Plaintiffs' request for production of "all materials related to *Softwar*" is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, to the extent that Plaintiffs intend to seek discovery of materials beyond the scope of the materials that Your Honor ordered to be produced in the Order (*i.e.*, tapes and transcripts of interviews of Larry Ellison in preparation for *Softwar*), Defendants object to the scope of the proposed discovery.

Setting aside the specific relief requested, Mr. Solomon's January 12 letter makes a number of wild and inaccurate allegations regarding the tapes and transcripts that are the subject of Your Honor's Order. We wish to address here some of Mr. Solomon's most hyperbolic accusations and suggestions.

First, it is important to point out that the materials subject to Your Honor's Order—the tapes and transcripts of Mr. Symonds' interviews of Mr. Ellison in connection with *SOFTWAR*—are not now and have never been in the *physical* possession, custody, or control of Mr. Ellison or any other Defendant. At all times since their creation, those tapes and transcripts have been in the physical possession, custody and control of Mr. Symonds, a third party who resides in the United Kingdom and who is neither employed by nor an agent of Mr. Ellison or any of the other Defendants.

Second, Defendants are unaware of any evidence that these materials were "intentionally destroyed," as Mr. Solomon claims. As set forth in Mr. Gibbs' January 11, 2007 letter to Mr. Solomon, Mr. Symonds has informed Defendants' counsel that the materials were stored in files on a laptop computer and that these files were rendered inaccessible due to a virus of some kind. *See* 1/11/2007 Letter from P. Gibbs at ¶2. In a January 12 conversation, Mr. Symonds further informed Defendants' counsel that when he attempted to have the computer repaired, he was told that even if the computer were repaired successfully (at a cost that would exceed the cost of a new computer), all the data stored on the computer (including the recordings and transcripts at issue here) would be lost. In other words, according to Mr. Symonds, the electronic audio files of Mr. Symonds' interviews of Mr. Ellison, as well as the electronic files of transcripts of those interviews, were irretrievably lost due to a computer virus. Defendants have no means of independently verifying the information provided by Mr. Symonds, but nor do we (or Plaintiffs) have any contrary information. There is, in other words, no evidence at this time to support Mr. Solomon's charge of "intentional spoliation." *See* Solomon Letter at ¶5].

Third, apparently based upon Your Honor's recent conclusion that Mr. Ellison had a legal right to control these materials, Mr. Solomon suggests that Defendants had a duty to preserve the materials—and, indeed, to collect them from Mr. Symonds—long before this issue ever arose in connection with Plaintiffs' October 30, 2006 motion to compel materials related to *SOFTWAR*.[1]

---

[1] Given Plaintiffs' threat to seek sanctions on this basis, Defendants will, within the twenty days allowed under Fed. R. Civ. P. 53(g)(2), seek an order from Judge Jenkins setting aside the Special Master's conclusion that Mr. Ellison had "control" over these materials.

SF\593670.1

The Honorable Edward A. Infante
January 15, 2007
Page 3

\THAM&WATKINS℠

*See* Solomon Letter. This suggestion assumes, at a minimum, that long before Plaintiffs filed their motion, Mr. Ellison knew or had reason to know that these materials would become the subject of discovery in this action, and knew that the Special Master ultimately would conclude that these materials were within Mr. Ellison's "control." These assumptions are contradicted by every fact in the record: At all times since these materials were created, Mr. Ellison and Mr. Symonds believed that these materials were Mr. Symonds' property, over which Mr. Ellison had no legal right of control. *See* 11/9/2006 Declaration of Matthew Symonds at ¶3. Before this dispute arose, Mr. Ellison and Mr. Symonds behaved in a manner that was consistent with this belief (and fundamentally inconsistent with the Special Master's finding of "control"). After the book was completed, Mr. Symonds did not return the tapes and transcripts at issue to Mr. Ellison, as he would have been required to do under the Special Master's reading of the parties' agreement. *See* 11/9/2006 Declaration of Matthew Symonds at ¶2. And to this day Mr. Symonds maintains that the tapes and transcripts at issue are his sole property, to which no one else has or had any right of access or control. *See* 1/11/2007 Gibbs letter at ¶2. At a minimum, therefore, Mr. Ellison had a good faith belief that these materials were not within his possession, custody or control, and certainly Mr. Ellison cannot be sanctioned (as Mr. Solomon suggests) for the loss of these materials while they were in the physical control of a third party over whom Mr. Ellison has absolutely no control. Plaintiffs' suggestion that Mr. Ellison should have acted to preserve these materials many years ago is particularly ill-founded given Plaintiffs' own failure to even request these materials until the very close of discovery in this case, even though the book was published in 2003.

At a more practical level, there is no reason to believe that Mr. Symonds would have felt bound by any prior "direction" to preserve these materials. When Plaintiffs' filed their motion to compel materials relating to *SOFTWAR*, Defendants' counsel contacted Mr. Symonds, confirmed that he still had possession of the materials, and asked Mr. Symonds to preserve them pending the resolution of Plaintiffs' motion. *See* 1/11/2007 Gibbs letter at ¶2. Yet when he discovered a problem with the computer on which these materials were stored, Mr. Symonds did not attempt to contact or notify Defendants' counsel, let alone ask them what to do with the computer. *See* 1/11/2007 Gibbs letter at ¶2. And, again, Mr. Symonds maintains to this day that these materials were and are his sole property.[2] *See* 1/11/2007 Gibbs letter at ¶2. We are at a loss to understand what more Plaintiffs believe Mr. Ellison could or should have done, let alone how these circumstances would justify "the most severe sanction." *See* Solomon Letter at ¶6. Setting aside the hyperbole and unfounded accusations in Mr. Solomon's letter, it is clear that Mr. Ellison has acted reasonably and in good faith with regard to the materials that are the subject of Your Honor's Order, and he will continue to do so.

---

[2] Indeed, although Mr. Symonds initially indicated that he would voluntarily produce whatever responsive hard copy transcripts he now has in his possession, Mr. Symonds later suggested that he might not turn over those transcripts due to concerns about confidentiality of his sources. Just this morning, Mr. Symonds delivered copies of at least some hard copy interview transcripts to Latham & Watkins LLP's London office.

SF\593670.1

The Honorable Edward A. Infante
January 15, 2007
Page 4

**ATHAM&WATKINS**LLP

      This dispute involves two parties—Plaintiffs and Defendants—who have NO personal knowledge of the facts. Plaintiffs do not know what Mr. Symonds did or didn't do with the evidence at issue, and the only information Defendants possess has been gleaned from a small number of telephone conversations with Mr. Symonds. In light of this lack of first-hand knowledge, Defendants are understandably reluctant to make representations to Your Honor regarding what Mr. Symonds did with the computer files at issue. Since Plaintiffs claim that Mr. Symonds's disposition of these materials is critical to this case, Defendants respectfully submit that the appropriate course of action is to give Plaintiffs the discovery they seek, subject to the limitations described above to conform with Your Honor's prior order. That way, both parties will finally learn exactly what happened to the *SOFTWAR* materials at issue, and Your Honor will have an appropriate factual record upon which to decide this issue.

      We look forward to discussing these issues with Your Honor during the hearing tomorrow.

      Respectfully,

*Peter Wald /AM*

Peter A. Wald
of LATHAM & WATKINS LLP

cc: Shawn Williams
cc: Mark Solomon

SF\593670.1