Case 3:01-cv-00988-MJJ   Document 642   Filed 01/22/2007   Page 1 of 1

1   LATHAM & WATKINS LLP                    LATHAM & WATKINS LLP
      Peter A. Wald (SBN 85705)                 Patrick E. Gibbs (SBN 183174)
2     Michele F. Kyrouz (SBN 168004)        140 Scott Drive
    505 Montgomery Street, Suite 2000        Menlo Park, California 94025
3   San Francisco, CA 94111-2562            Telephone: (650) 328-4600
    Telephone: (415) 391-0600               Facsimile: (650) 463-2600
4   Facsimile: (415) 395-8095               E-mail: patrick.gibbs@lw.com
    E-mail: peter.wald@lw.com
5         michele.kyrouz@lw.com

6   LATHAM & WATKINS LLP                                     E-FILED
      Jamie L. Wine (SBN 181373)
7   885 Third Avenue, Suite 1000
    New York, NY 10022-4834
8   Phone: (212) 906-1200
    Fax: (212) 751-4864
9   E-mail: jamie.wine@lw.com

10  Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
    J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
11
    ORACLE CORPORATION
12    Dorian E. Daley (SBN 129049)
      James C. Maroulis (SBN 208316)
13  500 Oracle Parkway
    Mailstop 5OP7
14  Redwood Shores, California 94065
    Telephone: (650) 506-5200
15  Facsimile: (650) 506-7114
    E-mail: jim.maroulis@oracle.com
16
    Attorneys for Defendant ORACLE CORPORATION
17
                    UNITED STATES DISTRICT COURT
18
          NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION
19  In re ORACLE CORPORATION              Master File No. C-01-0988-MJJ (JCS)
    SECURITIES LITIGATION                 (Consolidated)
20
                                          CLASS ACTION
21
    This Document Relates To:            DEFENDANTS' NOTICE OF MOTION
22                                        AND MOTION TO REVERSE SPECIAL
    ALL ACTIONS.                          MASTER'S ORDER RE: *SOFTWAR*
23                                        MATERIALS

24                                        Date:    Feb. 27, 2007
                                          Time:    9:30 a.m.
25                                        Judge:   Martin J. Jenkins

26                        FILED UNDER SEAL

27

28

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

2709
#1624
V ol 78

1  LATHAM & WATKINS LLP
2     Peter A. Wald (SBN 85705)
      Michele F. Kyrouz (SBN 168004)
3    505 Montgomery Street, Suite 2000
     San Francisco, CA 94111-2562
     Telephone: (415) 391-0600
4    Facsimile: (415) 395-8095
     E-mail: peter.wald@lw.com
5            michele.kyrouz@lw.com

6  LATHAM & WATKINS LLP
7     Jamie L. Wine (SBN 181373)
     885 Third Avenue, Suite 1000
     New York, NY 10022-4834
8    Phone: (212) 906-1200
     Fax: (212) 751-4864
9    E-mail: jamie.wine@lw.com

LATHAM & WATKINS LLP
   Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

REC'D JAN 2 3 2007

10  Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
    J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
11
12  ORACLE CORPORATION
       Dorian E. Daley (SBN 129049)
       James C. Maroulis (SBN 208316)
13  500 Oracle Parkway
    Mailstop 5OP7
14  Redwood Shores, California 94065
    Telephone: (650) 506-5200
15  Facsimile: (650) 506-7114
    E-mail: jim.maroulis@oracle.com
16
    Attorneys for Defendant ORACLE CORPORATION
17
                    **UNITED STATES DISTRICT COURT**
18
         **NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION**
19

| | |
|---|---|
| In re ORACLE CORPORATION<br>SECURITIES LITIGATION | Master File No. C-01-0988-MJJ (JCS)<br>(Consolidated) |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANTS' NOTICE OF MOTION<br>AND MOTION TO REVERSE SPECIAL<br>MASTER'S ORDER RE: *SOFTWAR*<br>MATERIALS** |
| ALL ACTIONS. | |
| | Date:   Feb. 27, 2007<br>Time:   9:30 a.m.<br>Judge:  Martin J. Jenkins |

26                    **FILED UNDER SEAL**

27

28

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..... 2

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 3

A. The Book ..... 3

B. The Agreement Between Ellison and Symonds ..... 4

C. Plaintiffs' Motion to Compel Production of Materials Relating to *Softwar* ..... 5

D. The Special Master's Order Compelling Production of Tapes and Transcripts of Mr. Symonds' Interviews With Mr. Ellison ..... 7

E. Defendants' Attempts to Obtain the Tapes and Transcripts Called for By The Special Master's Order ..... 7

F. Plaintiffs' Unfounded Accusations of "Criminal Misconduct" and Threats to Seek "The Most Severe Sanctions" ..... 9

III. ARGUMENT ..... 10

A. Standard of Review ..... 10

B. The Special Master's Finding of "Control" Was Erroneous ..... 10

1. The Agreement Did Not Give Mr. Ellison Any Right to Control The Tapes and Transcripts of Interviews Mr. Symonds Conducted ..... 12

2. The Special Master's Finding of "Control" Is Contrary to the Parties' Pre-Dispute Behavior Under the Agreement ..... 14

3. The Special Master's Finding of "Control" Contradicts the Expressed Intent and Understanding of Both Contracting Parties ..... 14

IV. CONCLUSION ..... 15

1 **TABLE OF AUTHORITIES**

2                                                                                          Page

3                                      **CASES**

4  *Doe ex rel. Doe v. Keala*
5      361 F. Supp. 2d 1171 D. Haw. 2005)................................................................................... 10

   *Federal Ins. Co. v. Americas Ins. Co.*
6      691 N.Y.S.2d 508 (N.Y. App. Div. 1999)............................................................................. 13

7  *Fox Film Corp. v. Springer*
       273 N.Y. 434 (N.Y. 1937)..................................................................................................... 15
8
   *Greenfield v. Phillies Records*
9      780 N.E. 2d 166 (N.Y. 2002) ............................................................................................... 12

10 *Micron Techn., Inc. v. Tessera, Inc.*
       2006 WL 1646133 (N.D. Cal. 2006)..................................................................................... 11
11
   *Reiss v. Financial Performance Corp.*
12     764 N.E.2d 958 (N.Y. 2001) ................................................................................................. 12

13 *Slamow v. Delco*
       594 N.E.2d 918 (N.Y. 1992) ................................................................................................. 12
14
   *Snug Harbor Square Venture v. Never Home Laundry, Inc.*
15     675 N.Y.S.2d 365 (N. Y. App. Div. 1998)........................................................................... 13

16 *United States v. Int'l Union of Petroleum & Industrial Workers*
       870 F.2d 1450 (9th Cir. 1989)............................................................................................... 11
17
   *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*
18     807 N.E. 2d 876 (N.Y. 2004) ............................................................................................... 12

19                                   **STATUTES**
20
   Fed. R. Civ. P. 26(b)................................................................................................................. 10
21
   Fed. R. Civ. P. 34..................................................................................................................... 10
22
   Fed. R. Civ. P. 34 (a) ............................................................................................................... 11
23
   Fed. R. Civ. P. 53(2)................................................................................................................. 10
24
   Fed. R. Civ. P. 53(g)(2)-(4) ..................................................................................................... 10
25

26                            **OTHER AUTHORITIES**

27 4 WILLISTON ON CONTRACTS 3d ed. § 623 ............................................................................... 14
28

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

8A Charles Alan Wright and Arthur R. Miller, Federal Practice And Procedure §
2210 (2d ed 2006).................................................................................................................. 11

RESTATEMENT (SECOND) OF CONTRACTS § 202........................................................................ 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

.ATHAM•WATKINS™
ATTORNEYS AI LAW
SAN FRANCISCO

iii

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    **I.    INTRODUCTION**

3              On January 2, 2007, the Special Master issued an order requiring Defendants to

4    produce "any and all tape recordings and/or transcripts of interviews with [Defendant Larry]

5    Ellison created in the preparation of the book [*SOFTWAR: An Intimate Portrait of Larry Ellison*

6    *and Oracle*]." It is undisputed that these tapes and transcripts are not now and have never been

7    in the *physical* possession, custody or control of Mr. Ellison or the other Defendants. The

8    Special Master found that Mr. Ellison has legal "control" over the tapes and transcripts based on

9    an agreement between Mr. Ellison and the author of *Softwar*, Matthew Symonds, a writer for *The*

10   *Economist* who lives and works in the United Kingdom. The Special Master's finding of

11   "control" is contrary to the plain and unambiguous language of the agreement itself; contrary to

12   the parties' pre-dispute course of performance under the agreement for at least three years; and

13   contrary to the expressed understanding of both parties to the contract. In concluding that Mr.

14   Ellison has a legal right to obtain the tapes and transcripts at issue, in other words, the Special

15   Master invented a "right" that neither party to the agreement ever intended or understood to exist

16   under the agreement.

17             Although Defendants disagree with the Special Master's finding of "control," in

18   an attempt to move discovery forward, Defendants' counsel contacted Mr. Symonds and

19   demanded copies of the interview tapes and transcripts called for by the Special Master's order.

20   Mr. Symonds—who continues to assert that the materials are his sole property, over which Mr.

21   Ellison has no right of access or control—agreed to provide Defendants with 213 pages of hard

22   copy interview transcripts, all of which were timely produced to Plaintiffs. According to Mr.

23   Symonds, however, a number of electronic files containing recordings and transcripts of Mr.

24   Symonds' interviews with Mr. Ellison have been lost due to a computer virus. Defendants

25   immediately informed Plaintiffs of the circumstances and attempted to determine whether any of

26   the interview recordings or transcripts could be obtained from any other source. To date, no

27   other copies have been located.

28

1           Not content with Defendants' efforts to obtain and produce the materials called

2    for by the Special Master's order, Plaintiffs immediately began making wild accusations of

3    "criminal misconduct" and threatened to seek "the most severe sanctions." *See* Ex. 1 (Jan. 12,

4    2007 Letter from M. Solomon to S. M. Infante) at 1-2.[1] Indeed, to that end, Plaintiffs have

5    recently launched an entirely new round of discovery, most of which is aimed not at finding the

6    tapes or transcripts themselves. Instead, Plaintiffs are seeking to build a record to support a

7    request for sanctions. Plaintiffs' threats and accusations are all based on the Special Master's

8    *post hoc* finding that Mr. Ellison has legal "control" over Mr. Symonds' interview tapes and

9    transcripts. Given that control, Plaintiffs argue, Mr. Ellison (and, apparently, the other

10   Defendants) had a legal duty to preserve those tapes and transcripts from the date of their very

11   creation. Thus, despite the undisputed fact that Mr. Ellison has never had *physical* possession,

12   custody or control over these materials, and despite the fact that neither Mr. Ellison nor Mr.

13   Symonds ever believed Mr. Ellison had legal "control" over these materials, Plaintiffs believe

14   Mr. Ellison (and the other Defendants) should be held responsible for their loss.

15          Even if the Special Master's finding of "control" were correct, sanctions would be

16   wholly inappropriate here, particularly the "most severe sanctions" Plaintiffs have threatened to

17   seek. But because Plaintiffs have decided to use the Special Master's finding as the basis for yet

18   another attempt to seek terminating sanctions, Defendants hereby request an order from this

19   Court reversing the Special Master's erroneous finding that Mr. Ellison had "control" over Mr.

20   Symonds' tapes and transcripts and the resulting order compelling Defendants to produce those

21   tapes and transcripts to Plaintiffs in this litigation. To date, the Special Master has ruled on over

22   30 discovery motions in this case. Although Defendants have disagreed with a number of those

23   rulings, this is the only one Defendants have sought to modify via Rule 53.

24   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

25       **A.   The Book**

26          In 2003, two years after this lawsuit was filed, Simon & Schuster published the

27

[1] All exhibit references are to the Declaration of Sean P.J. Coyle in Support of Defendants'

28   Motion to Reverse Special Master's Order re: *Softwar* Materials ("Coyle Decl."), filed
concurrently herewith.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO
      3
DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1   book *SOFTWAR: An Intimate Portrait of Larry Ellison and Oracle*, ("*Softwar*") authored by
2   Matthew Symonds (at that time a political editor at *The Economist*) and featuring footnoted
3   commentary by the book's primary subject, Mr. Ellison. Ex. 2 (*Softwar* excerpts). As the title
4   suggests, the book's focus is on Mr. Ellison and Oracle. To be sure, portions of the book
5   discuss, in retrospect, some of the events and circumstances at issue in this case. However,
6   Oracle's 3Q01 earnings miss is by no means the central focus of the book. In fact, significant
7   portions of the book discuss Oracle's founding and early development, while other portions are
8   dedicated, in turn, to Mr. Ellison's boat racing activities, his childhood and family background,
9   and some of his personal relationships. *Id.* at chapters 4, 17, 19, 20 & 26. Mr. Symonds'
10   primary research for the book began in March of 2001, weeks after Oracle had announced the
11   earnings miss at issue in this suit, and included a number of interviews with Mr. Ellison and Mr.
12   Symonds' observations while traveling with Mr. Ellison. *Id.* at 11-13. In addition, as noted, the
13   book contains footnotes throughout the work that were authored by Mr. Ellison himself. *See,*
14   *e.g., id.* at 63. The footnotes represent Mr. Ellison's own words regarding the topics on which
15   they touch, unedited by Mr. Symonds, as the author himself noted in the book's foreword. *Id.* at
16   XII.

17   **B.   The Agreement Between Ellison and Symonds**

18       Before the project began, Mr. Symonds and Mr. Ellison entered into an agreement
19   (the "Agreement") outlining the parties' rights and obligations with respect to the book project.
20   *See* Ex. 3 (*Softwar* Agreement). Among other things, the Agreement required Mr. Ellison to
21   make himself available to Mr. Symonds for a number of one-on-one interviews and to provide
22   Mr. Symonds with access to Ellison's personal archives, photographs, documents and other
23   materials. *See id.* at § 1(a)(i)-(xiii).

24       In the event that the Agreement were terminated short of the book's completion,
25   the Agreement required Mr. Symonds to "surrender" to Mr. Ellison (i) any materials that Mr.
26   Ellison had provided to Mr. Symonds; and (ii) the original copy of all materials that Mr.
27   Symonds had prepared in the course of his research, including "all audio and video tapes of all
28   interviews conducted in connection with the preparation of the Work . . . ." *See id.* at § 16(i). In

.ATHAM&WATKINS··
ATTORNEYS AT LAW
SAN FRANCISCO
4
DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1  the event the book was completed, Mr. Symonds was required to "return" to Mr. Ellison only the

2  materials that had been "provided by [Mr.] Ellison . . . ." *Id.* at § 1(b)(iv). Thus, if the book was

3  completed, Mr. Symonds would retain possession of the materials he had created in the course of

4  his research, including interview tapes and transcripts.

5          As noted above, the book was published in 2003, and the Agreement was never

6  terminated. Accordingly, the provision requiring Mr. Symonds to "surrender" the materials he

7  had created in the course of his research was never triggered. *See id.* at § 16(i). Consistent with

8  the language of the Agreement, Mr. Symonds never provided Mr. Ellison (or anyone else) with

9  access to or copies of the recordings or transcripts of the interviews Mr. Symonds conducted in

10  the course of his research. *See* Ex. 4 (Symonds Declaration) at ¶ 3. The only pre-existing

11  materials that Mr. Ellison ended up providing—some photographs that he supplied directly to the

12  publisher—were returned to Mr. Ellison. *See id.* at ¶ 2.

13          C.      **Plaintiffs' Motion to Compel Production of Materials Relating to *Softwar***

14          Despite the fact that *Softwar* was published in 2003, nearly two years before

15  discovery in this case began, Plaintiffs did not request that Defendants produce materials relating

16  to the book until after the twice-extended close of discovery in the case. There is no question but

17  that Plaintiffs were aware of the book. During Mr. Ellison's second full day of deposition

18  testimony in this case (which took place 11 days before the discovery cutoff), Plaintiffs spent

19  several hours asking Mr. Ellison questions about various passages in the book. Still, as of the

20  October 2, 2006 discovery cutoff, Plaintiffs had not made any request for any materials relating

21  to *Softwar.*[2]

22          Several weeks later, on October 10, 2006 Plaintiffs demanded, for the first time,

23  that Defendants produce *all* documents pertaining to the book. Exs. 6 (Oct. 10, 2006 Letter from

24  S. Kaplan) & 7 (Oct. 13, 2006 Letter from M. Solomon). During the meet and confer process,

25  _____

[2]  Plaintiffs have argued, and the Special Master found, that because portions of the book
26  discuss certain of the facts at issue in this case (*e.g.*, Oracle's Q301 earnings miss), portions
of the underlying interviews are likely responsive to Plaintiffs' general discovery requests.
27  *See* Ex. 5 (Oct. 20, 2006 letter from S. Kaplan). But before the discovery cutoff, Plaintiffs
had never specifically requested any materials relating to *Softwar*, although Plaintiffs clearly
28  were aware of the book and knew that Mr. Ellison had been interviewed at length in
connection with its writing.

LATHAM•WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO
5
DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

Plaintiffs were unable to identify any specific discovery requests calling for the production of such materials, and Defendants objected to Plaintiffs' request on several grounds. Ex. 8 (Oct. 17, 2006 Letter from S. Coyle).

On October 30, 2006, Plaintiffs filed a motion to compel "documents concerning and created in preparation for" *Softwar*. Ex. 9 (Plfs' Mot. to Compel *Softwar* Materials). In it, Plaintiffs requested an order compelling production of "[a]ll documents concerning and created in preparation for the book," including tapes and transcripts of the interviews Mr. Symonds had conducted with Mr. Ellison and others. *Id.* at 10-12; Ex. 10 (Plfs' [Proposed] Order re: *Softwar* Materials). Plaintiffs argued variously that Mr. Ellison had "control" over these materials under the terms of the Agreement and because Mr. Ellison and Mr. Symonds had become "friends" in the course of the book project. *See* Ex. 9 (Plfs' Mot. to Compel *Softwar* Materials) at 11-12.

Defendants opposed Plaintiffs' motion on two primary grounds. First, Defendants argued that Plaintiffs' request for *all* documents concerning *Softwar* was overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Ex. 11 (Defs' Opp. to Plfs' Mot. to Compel *Softwar* Materials) at 6-8. Second, Defendants noted that Mr. Ellison could not produce any of Mr. Symonds' interview tapes or transcripts because those materials were not then and never had been in Mr. Ellison's possession, custody or control. *Id.* at 4-6. Defendants submitted a declaration in which Mr. Symonds testified that the materials he created in the course of his research, including his interview tapes and transcripts, were his sole property, to which neither Mr. Ellison nor anyone else had a legal right of access or control. *See* Ex. 4 (Symonds Declaration) at ¶ 3. Mr. Symonds also testified that he had never provided Mr. Ellison with access to or copies of any of his interview tapes or transcripts. *See id.* Finally, Mr. Symonds confirmed that the contract language cited in Plaintiffs' motion—section 1(b)(iv) of the Agreement—only applied to pre-existing materials that Mr. Ellison had provided to Mr. Symonds, and did not require Mr. Symonds to turn over any of the materials that Mr. Symonds created in the course of his research. *See id.* at ¶ 2.[3]

---

[3] While preparing this declaration, Mr. Symonds assured Defendants' counsel that he still had copies of his interview tapes and transcripts. *See* Ex. 12 (Jan. 11, 2007 Letter from P. Gibbs) at 1-2. Although Mr. Symonds maintained that the tapes and transcripts were his sole

1    After considering the parties' papers, the Special Master entered an initial order

2    requiring Defendants to produce the final Agreement between Mr. Ellison and Mr. Symonds for

3    *in camera* review to determine what, if any materials, Defendants should be ordered to produce.

4    *See* Ex. 13 (Special Master's Dec. 14, 2006 Order re: *Softwar* Materials Order) at 6.

5    **D.    The Special Master's Order Compelling Production of Tapes and**

6    **Transcripts of Mr. Symonds' Interviews With Mr. Ellison**

7    After reviewing the final Agreement, the Special Master denied Plaintiffs' request

8    for all documents concerning *Softwar*. *See* Ex. 14 (Special Master's Dec. 29, 2006 Order re:

9    *Softwar* Materials) at 4-5.[4] However, the Special Master concluded that a portion of what

10   Plaintiffs had requested—tapes and transcripts of interviews with Mr. Ellison alone—appeared

11   reasonably calculated to lead to the discovery of admissible evidence. *See id.* On the question of

12   possession, custody and control, the Special Master found that the Agreement "gives Mr. Ellison

13   the legal right to obtain all tapes and transcripts of interviews with Mr. Ellison created in the

14   course of the preparation of the book for publication. " *Id.* at 4.  In so doing, the Special Master

15   cited the same provision Plaintiffs had cited in their motion to compel—*i.e.*, clause 1(b)(iv), with

16   its language requiring Mr. Symonds to "return" materials "provided by Ellison." *See id.* at 2, 4.

17   The Special Master appears to have concluded that Mr. Ellison had "provided" the materials on

18   the tapes and transcripts by sitting for the interviews. *See id.* at 4.  As a result, the Special

19   Master ordered Defendants to produce "any and all tape recordings and/or transcripts of

20   interviews with Mr. Ellison created in preparation of the book." *Id.*

21   **E.    Defendants' Attempts to Obtain the Tapes and Transcripts Called for By**

22   **The Special Master's Order**

23   In response to the Special Master's Order, Defendants contacted Mr. Symonds,

24   provided him with a copy of the Order, and demanded that he provide Defendants with copies of

25   any and all tapes and transcripts of interviews with Mr. Ellison. Ex. 15 (Jan. 10, 2007 Letter

26   from P. Gibbs to M. Symonds, and attached orders). In a series of conversations, Mr. Symonds

27   property, Defendants' counsel asked Mr. Symonds to maintain copies of the tapes and
     transcripts pending the Special Master's resolution of the motion to compel. *See id.*

28   [4]   The Order was dated December 29, 2006 and issued on January 2, 2007.

.ATHAM&WATKINS⸗
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1    continued to maintain that the tapes and transcripts at issue were his sole property, to which
2    neither Mr. Ellison nor anyone else had a legal right of access or control. *See* Exs. 12 (Jan. 11,
3    2007 Letter from P. Gibbs); 16 (Jan. 15 Letter from P. Wald to S. M. Infante); 17 (Jan. 16, 2007
4    Letter from P. Gibbs); & 18 (Jan. 19, 2007 Letter from P. Gibbs). Nevertheless, Mr. Symonds
5    ultimately agreed, voluntarily, to provide Defendants with all of the hard copy Ellison interview
6    transcripts in his possession, which Defendants timely produced to Plaintiffs. *See* Ex. 19 (Letter
7    from R. Morgan). These transcripts cover a number of the central facts and circumstances at
8    issue in this case, including the timing of the release of Oracle's Suite 11i (Exs. 20 (June 2002
9    Tr.) at NDCA-ORCL 1529279-80 & 21 (June 24, 2002 Tr.) at NDCA-ORCL 1529310), Oracle's
10   attempts to address bugs, stability, and functional gaps in early versions of its Suite 11i (Exs. 22
11   (Jan. 18, 2002 Tr.) at NDCA-ORCL 1529157-58 & 21 (June 24, 2002 Tr.) at NDCA-ORCL
12   1529302-03), including specifically the Order Management module (Ex. 22 (Jan. 18, 2002 Tr.) at
13   NDCA-ORCL 1529167-68), the concept of integration as it pertains to Oracle's Suite 11i (Ex. 21
14   (June 24, 2002 Tr.) at NDCA-ORCL 1529302-03), specific Suite 11i customer implementations
15   (Ex. 23 (April 13, 2002 Tr.) at NDCA-ORCL 1529217-18), Oracle's one billion dollar savings
16   claim (Ex. 20 (June 2002 Tr.) at NDCA-ORCL 1529276), Mr. Ellison's stock sales, (Ex. 21
17   (June 24, 2002 Tr.) at NDCA-ORCL 1529284-85) and even some discussion of this very suit (*id.*
18   at NDCA-ORCL 1528285).

19            In the course of several conversations with Defendants' counsel regarding the
20   Order, Mr. Symonds informed Defendants' counsel that a number of electronic files in which he
21   had stored audio recordings and transcripts of his interviews with Mr. Ellison had been lost as
22   the result of a computer virus. *See* Exs. 12 (Jan 11, 2007 Letter from P. Gibbs); 16 (Jan. 15,
23   2007 Letter from P. Wald to S. M. Infante); 17 (Jan. 16, 2007 Letter from P. Gibbs); & 18 (Jan.
24   19, 2007 Letter from P. Gibbs). According to Mr. Symonds, when he attempted to repair the
25   computer on which these files were stored, he was told that the computer might be repaired, but
26   the cost of repair would be approximately the same as a new computer, and even if the computer
27   were repaired, the data files stored on the computer (including several audio files and transcripts
28   of Mr. Symonds' interviews with Mr. Ellison) could not be restored. *See* Exs. 16 (Jan. 15, 2007

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1   Letter from P. Wald to S. M. Infante); 17 (Jan. 16, 2007 Letter from P. Gibbs); & 18 (Jan. 19,

2   2007 Letter from P. Gibbs). Although Defendants' counsel had previously asked Mr. Symonds

3   to maintain copies of these files, Mr. Symonds apparently instructed the computer repair shop to

4   dispose of the computer rather than attempting to repair it. *See id.* In so doing, Mr. Symonds did

5   not contact any of Defendants or Defendants' counsel. *See id.*

6           F.      **Plaintiffs' Unfounded Accusations of "Criminal Misconduct" and Threats to**

7                   **Seek "The Most Severe Sanctions"**

8           Defendants immediately apprised Plaintiffs of the information Mr. Symonds had

9   provided regarding his computer. *See* Ex. 12 (Jan. 11, 2007 Letter from P. Gibbs). Defendants

10  also began to investigate whether the audio files and/or transcripts could be recovered from

11  another source. *See* Ex. 16 (Jan. 15, 2007 Letter from P. Wald to S. M. Infante). To date, it

12  appears that Mr. Symonds had maintained the only copies of these electronic files. *See* Exs. 17

13  (Jan. 16, 2007 Letter from P. Gibbs) & 18 (Jan. 19, 2007 Letter from P. Gibbs). Defendants'

14  investigation is ongoing.

15          Just as quickly, and without any evidence, Plaintiffs began making wild and

16  unfounded accusations of "criminal misconduct," and threatened to seek "the most severe

17  sanctions." *See* Exs. 24 (Jan. 11, 2007 Letter from M. Solomon) & 1 (Jan 12, 2007 Letter from

18  M. Solomon to S. M. Infante). To that end, Plaintiffs requested leave to issue Letters Rogatory

19  to the United Kingdom High Court so that Plaintiffs could seek discovery from Mr. Symonds

20  and from the computer repair shop with which he had left the computer where the audio files and

21  transcripts had been stored. *See* Ex. 1 (Jan. 12, 2007 Letter from M. Solomon to S. M. Infante).

22  Plaintiffs also requested leave to issue a subpoena to the book's publisher, Simon & Schuster.

23  *See id.* at 2. In both cases, Plaintiffs attempted to expand the scope of this discovery well beyond

24  the scope set forth in the Special Master's Order, requesting leave to subpoena from these third

25  parties "all materials related to *Softwar*." *See id.* at 1-2; Ex. 16 (Jan. 15, 2007 Letter from P.

26  Wald to S. M. Infante). The Special Master granted Plaintiffs' request to seek discovery from

27  these third parties, but limited the scope of such discovery to the scope of the Order, *i.e.*, all tapes

28  and transcripts of interviews with Mr. Ellison, and to the unavailability of materials called for

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1   under the Order. *See* Coyle Decl. at ¶ 29.

2          In the meantime, Plaintiffs continued to make baseless allegations of "unlawful"
3   conduct and peppered Defendants with a lengthy list of questions, amounting to interrogatories,
4   most of which were aimed not at discovering materials subject to the Special Master's Order, but
5   instead trying to lay the groundwork for a motion for sanctions. *See* Exs. 25 (Jan. 17, 2007
6   Letter from M. Solomon), 26 (Jan 18, 2007 Letter from S. Kaplan); & 18 (Jan. 19, 2007 Letter
7   from P. Gibbs).

8   **III.     ARGUMENT**

9          **A.     Standard of Review**

10          A party may file an objection to or motion to modify the Special Master's order,
11   and the Court may modify or reverse the order in whole or in part. *See* Fed. R. Civ. P. 53(2).
12   Upon a party's objection or motion to modify or reverse, the Court reviews *de novo* the Special
13   Master's findings of law and fact. *See* Fed. R. Civ. P. 53(g)(2)-(4); *see also Doe ex rel. Doe v.*
14   *Keala*, 361 F. Supp. 2d 1171, 1177 (D. Haw. 2005). Although Defendants first attempted to
15   obtain the materials called for by the Special Master's Order, Plaintiffs have made clear that they
16   intend to use the Special Master's finding of "control" in order to seek sanctions against
17   Defendants for the apparent loss of Mr. Symonds' electronic audio and transcript files. Because
18   the Special Master's finding of "control" was erroneous, Defendants respectfully request an
19   order reversing the Special Master's finding and the resulting order compelling Defendants to
20   produce "any and all tape recordings and/or transcripts of interviews with [Mr.] Ellison created
21   in preparation of the book." Ex. 14 (Special Master's Dec. 29, 2006 Order re: *Softwar*
22   Materials) at 4:24-25.

23          **B.     The Special Master's Finding of "Control" Was Erroneous**

24          Federal Rule of Civil Procedure 34 permits a party to request the production of
25   documents that are within the scope of Rule 26(b)—that is, reasonably likely to lead to the
26   discovery of admissible evidence—as long as such documents are within the "possession,
27   custody or control" of the party upon whom the request is served. *See* Fed. R. Civ. P. 34 (a).
28   For this purpose, the mere "practical ability" to obtain the materials at issue is not enough. *See*

THAM•WATKINS···
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1  *In re Citric Acid Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999). Instead, "[c]ontrol is defined as the

2  *legal right* to obtain documents upon demand." *United States v. Int'l Union of Petroleum &*

3  *Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (emphasis added).[5]  As commentators

4  have recognized, "[c]aution must be exercised when the notion of control is extended . . .

5  because sometimes the party's actual ability to obtain compliance from nonparties may prove

6  more modest than anticipated" and that even "where the case for finding 'control' is stronger

7  courts should be alert to the possibility that despite good-faith efforts parties may prove unable to

8  obtain materials from nonparties." 8A Charles Alan Wright and Arthur R. Miller, Federal

9  Practice And Procedure § 2210 (2d ed. 2006).

10            The Special Master concluded that Mr. Ellison has "control" over the tapes and

11  transcripts at issue under the terms of the February 8, 2001 Agreement between Mr. Ellison and

12  Mr. Symonds, the author of *Softwar*. *See* Ex. 14 (Special Master's Dec. 29, 2006 Order re:

13  *Softwar* Materials) at 4.  In so doing, the Special Master misread the plain language of the

14  Agreement; ignored the contracting parties' pre-dispute conduct under the Agreement; and

15  ignored the expressed understanding of both contracting parties to the effect that the tapes and

16  transcripts at issue were and are Mr. Symonds' sole property, to which neither Mr. Ellison nor

17  any other party has a legal right of access or control.  Simply put, as discussed in more detail

18  below, the Special Master's finding of "control" contradicts every relevant fact in the record.

19  Accordingly, the Special Master's finding should be reversed.

20  ///

21  ///

22  ///

23  ///

24

25  [5]  For this reason, Mr. Symonds' voluntary production of certain hard copy transcripts does not
demonstrate, or even support a finding of, control. *Cf., e.g., Micron Techn., Inc. v. Tessera,*
26  *Inc.*, 2006 WL 1646133, *1-*2 (N.D. Cal. 2006) (holding that "evidence that [two affiliated
companies, SUI and SPIL,] are closely related companies with some management in
27  common," which "would likely be sufficient under a 'practical ability' standard[,] . . . falls
short under the Ninth Circuit's 'legal right' test" because there was "no mechanism for SUI
28  to *compel* SPIL to produce those documents, and SPIL *could* legally continue to refuse to
turn over further documents") (emphasis added).

ATHAM•WATKINS»
ATTORNEYS AT LAW
SAN FRANCISCO
11
DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1          1.    The Agreement Did Not Give Mr. Ellison Any Right to Control The Tapes

2           .    and Transcripts of Interviews Mr. Symonds Conducted

3        "The fundamental, neutral precept of contract interpretation is that agreements are

4 construed in accord with the parties' intent [and] '[t]he best evidence of what the parties to a

5 written agreement intend is what they say in their writing.'" *Greenfield v. Phillies Records*, 780

6 N.E. 2d 166, 170 (N.Y. 2002) (quoting *Slamow v. Delcol,* 594 N.E. 2d 918, 919 (N.Y. 1992)).[6]

7 Thus, "'courts may not by construction add or excise terms, nor distort the meaning of those used

8 and thereby make a new contract for the parties under the guise of interpreting the writing.'"

9 *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (quoting

10 *Reiss v. Financial Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001)). In finding a right of

11 "control" under the Agreement between Mr. Symonds and Mr. Ellison, the Special Master did

12 precisely that: namely, made a new contract for the parties under the guise of interpreting the

13 writing.

14        The Special Master appears to have relied principally on clause 1(b)(iv) of the

15 Agreement, which provided that upon completion of the book, Mr. Symonds was required to

16 "***return*** to Ellison all tapes, transcripts and working papers ***provided by Ellison***, and not make

17 further use of these materials without Ellison's express written consent." *See* Ex. 3 (*Softwar*

18 Agreement)at p.3, § 1(b)(iv) (emphasis added); *see also* Ex. 14 (Special Master's Dec. 29, 2006

19 Order re: *Softwar* Materials) at 4:12-13 ("The agreement provides Ellison with 'control' over

20 'all tapes, transcripts and working papers provided by Ellison."). On its face, this provision

21 refers to pre-existing materials that Mr. Ellison provided to Mr. Symonds; it does not apply to

22 any of the materials that Mr. Symonds created in the course of his own research. Indeed, Mr.

23 Symonds could hardly "return" to Mr. Ellison any of the materials that Mr. Symonds created, as

24 Mr. Ellison had never possessed them in the first place.

25        The Special Master appears to have concluded that the phrase "provided by

26 Ellison" includes the interview tapes and transcripts that Mr. Symonds created, apparently

27

[6] The Agreement provides that "[t]he validity, construction and performance of this Agreement
28 shall be governed and interpreted in accordance with the laws of the State of New York."
*See* Ex. 3 (*Softwar* Agreement) at p. 12, § 12.

LATHAM•WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1 | because Mr. Ellison sat for the interviews. *See* Ex. 14 (Special Master's Dec. 29, 2006 Order re:
2 | *Softwar* Materials) at 4:13-14 ("Defendants' interpretation of the term 'provided' is unduly
3 | restrictive."). This interpretation of clause 1(b)(iv) is incompatible with the termination
4 | provision of clause 16(i), which clearly and unambiguously distinguishes between the materials
5 | provided by or on Mr. Ellison's behalf ("all copies of . . . all letters, photographs, diaries, and
6 | other material furnished by or on behalf of Ellison to Symonds") and the materials that Mr.
7 | Symonds created himself, including interview tapes ("all manuscripts, drafts, notes, and other
8 | material prepared by [Mr. Symonds] for the Work learned during the course of the researching
9 | and/or in connection with the Work as well as all audio and video tapes of all interviews
10 | conducted in connection with the preparation of the Work"). *See* Ex. 3 (*Softwar* Agreement) at
11 | §§ 1(b)(iv), 16(i). Cleary, when the parties wished to require Mr. Symonds to "surrender" the
12 | materials that Mr. Symonds created, including interview tapes, they knew how to do so. Clause
13 | 16(i)'s clear and unambiguous distinction between the materials provided by Mr. Ellison, on the
14 | one hand, and the materials that Mr. Symonds created (including interview tapes), on the other
15 | hand, undercuts the Special Master's reading of clause 1(b)(iv). The Special Master, in other
16 | words, failed to read the Agreement as a whole, as required under New York law. *See Snug*
17 | *Harbor Square Venture v. Never Home Laundry, Inc.*, 675 N.Y.S.2d 365, 366 (N. Y. App. Div.
18 | 1998) ("In construing a contract, the document must be read as a whole to determine the parties'
19 | purpose and intent, giving a practical interpretation to the language employed so that the parties'
20 | reasonable expectations are realized.").

21 |       Reading the Agreement as a whole, it is clear that if the Agreement were
22 | terminated short of completing the book, Mr. Symonds was required to return both the materials
23 | that Mr. Ellison had provided and the materials that Mr. Symonds created, including interview
24 | tapes. If the book were completed (as it was), then Mr. Symonds was only required to return the
25 | pre-existing materials that Mr. Ellison had provided.
26 | / / /
27 | / / /
28 | / / /

2. The Special Master's Finding of "Control" Is Contrary to the Parties' Pre-
Dispute Behavior Under the Agreement

"[T]he parties' course of performance under the contract is considered to be the most persuasive evidence of the agreed intention of the parties." *Federal Ins. Co. v. Americas Ins. Co.*, 691 N.Y.S.2d 508, 512 (N.Y. App. Div. 1999); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 202, comment g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of its meaning."); 4 WILLISTON ON CONTRACTS 3d ed. § 623 ("An important aid in the construction of contracts is the practical construction placed on the agreement by the parties themselves.").

Under the Special Master's interpretation of the Agreement, Mr. Symonds was required to return the tapes and transcripts of his interviews to Mr. Ellison immediately upon completion of the book. *See* Ex. 3 (*Softwar* Agreement) at § 1(b)(iv). The book was published in 2003, but Mr. Symonds never "return[ed]" to Mr. Ellison any tapes or transcripts of the interviews he conducted, nor did Mr. Ellison ever demand them. For three years, in other words, the parties have performed in a manner that is consistent with their own interpretation of the Agreement—that it gave Mr. Ellison no right of control over the tapes and transcripts Mr. Symonds prepared—and in a manner that is fundamentally inconsistent with the Special Master's reading of the Agreement. Indeed, Mr. Symonds' recent conduct in disposing of his computer without contacting Mr. Ellison or his counsel is further evidence of Mr. Symonds' understanding that these materials were his sole property. In concluding that Mr. Ellison has a legal right to "control" Mr. Symonds' interview tapes and transcripts, the Special Master completely ignored the parties' own "practical construction" of the Agreement as evidenced by their three-year, pre-dispute course of performance under it.

3. The Special Master's Finding of "Control" Contradicts the Expressed
Intent and Understanding of Both Contracting Parties

In a typical contract dispute, two or more contracting parties disagree over the meaning of an agreement. In this case, however, the two contracting parties both agree on the meaning of the contract at issue. Specifically, both Mr. Ellison and Mr. Symonds believe the

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS' NOTICE OF MOTION AND MOTION TO REVERSE
SPECIAL MASTER'S ORDER RE: *SOFTWAR* MATERIALS
Master File No. C-01-0988-MJJ (JCS)

1  Agreement does not give Mr. Ellison any legal right to control the tapes and transcripts at issue.

2  *See* Exs. 4 (Symonds Declaration) & 11 (Defs' Opp. to Plfs' Mot. to Compel *Softwar* Materials).

3  The Special Master, in other words, has invented a right—Mr. Ellison's alleged right to "control"

4  Mr. Symonds' tapes and transcripts—*that neither contracting party ever intended or*

5  *understood to have existed*. In so doing, the Special Master simply ignored the evidence of the

6  contracting parties' intent, substituting instead the Special Master's own view of what the

7  contract's language should mean. *See* Ex. 14 (Special Master's Dec. 29, 2006 Order re: *Softwar*

8  Materials) at p. 4. As the New York courts have recognized, "[t]he parties who made the

9  contract presumably understood the meaning of the words they used." *Fox Film Corp. v.*

10  *Springer*, 273 N.Y. 434, 436 (N.Y. 1937) (noting the parties' agreement as to the meaning of

11  certain terms and stating: "We accept the meaning which the parties agree the words were

12  intended to have.").

13      This Court, too, should accept the meaning that the contracting parties agree their

14  words were intended to have and reverse the Special Master's finding, contrary to both parties'

15  expressed understanding of the Agreement, that Mr. Ellison had "control" over the tapes and

16  transcripts of the interviews Mr. Symonds conducted.

17  **IV.    CONCLUSION**

18      Based on the foregoing, Defendants respectfully request that Defendants' Motion

19  be granted.

20  Dated: January 22, 2007          Respectfully submitted,

21                         LATHAM & WATKINS LLP
22                         Peter A. Wald
Michele F. Kyrouz
23                         Patrick E. Gibbs
Jamie L. Wine
24

25                         By: Patrick E Gibbs / PRJC
Patrick E. Gibbs
26                         Attorneys for Defendants ORACLE
CORPORATION, LAWRENCE J.
27                         ELLISON, JEFFREY O. HENLEY,
and EDWARD J. SANDERSON
28

.

.

## Christian Castro

| From: | ECF-CAND@cand.uscourts.gov |
|---|---|
| Sent: | Monday, January 22, 2007 8:05 PM |
| To: | efiling@cand.uscourts.gov |
| Subject: | Activity in Case 3:01-cv-00988-MJJ Nursing Home Pension Fund et al v. Oracle Corporation et al "Notice (Other)" |

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.
U.S. District Court
California Northern District

Notice of Electronic Filing
The following transaction was entered on 1/22/2007 at 8:04 PM PST and filed on 1/22/2007

Case Name: Nursing Home Pension Fund et al v. Oracle Corporation et al Case Number: 3:01-cv-988 https://ecf.cand.uscourts.gov/cgi-bin/DktRpt.pl?27321

Document Number: 642
Copy the URL address from the line below into the location bar of your Web browser to view the document: https://ecf.cand.uscourts.gov/cgi-bin/show_case_doc?
642,27321,,72109050,,,1237

Docket Text:
NOTICE by Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley, Edward J. Sanderson <I>DEFENDANTS' NOTICE OF MOTION AND MOTION TO REVERSE SPECIAL MASTER'S ORDER RE: SOFTWAR MATERIALS FILED UNDER SEAL</I> (Kyrouz, Michele) (Filed on 1/22/2007)

The following document(s) are associated with this transaction:
Document description: Main Document
 Original filename: \\Sfdata2\data1\casedata\038128-Oracle\0025-Securities\_Files
\Objection to Softwar Order\Caption Page to Motion.pdf  Electronic document Stamp:
 [STAMP CANDStamp_ID=977336130 [Date=1/22/2007] [FileNumber=3174810-0]
[789b7883c5d17df7fa256a6b3175316d49aeadd556e04645e2d663176eb19254f5380c4d739d392c8ade7d77e
10b2fc14cb500bca171080a31d6415f6e63b93a]]

3:01-cv-988 Notice will be electronically mailed to:
Jennie Lee Anderson                                              jenniea@lerachlaw.com

Eric J. Belfi                                              ebelfi@labaton.com,
ElectronicCaseFiling@labaton.com

Doug Britton                                              dougb@lerachlaw.com,
e_file_sd@lerachlaw.com; e_file_sf@lerachlaw.com

Patrick Edward Gibbs                                              patrick.gibbs@lw.com,
zoila.aurora@lw.com

Eli Greenstein                                              Elig@lerachlaw.com,
e_file_sd@lerachlaw.com; e_file_sf@lerachlaw.com

Kirke M. Hasson
kirke.hasson@pillsburylaw.com, cheryl.grant@pillsburylaw.com

Reed R. Kathrein                                              reedk@lerachlaw.com,
e_file_sf@lerachlaw.com; e_file_sd@lerachlaw.com

Michele F. Kyrouz                                              michele.kyrouz@lw.com

Nicole Lavallee                                              nlavallee@bermanesq.com

William S. Lerach                                              e_file_sd@lerachlaw.com

1

James C. Maroulis                                         jim.maroulis@oracle.com

Caroline McIntyre                                         cmcintyre@be-law.com,
swalker@be-law.com

Brian P Murray                                            bmurray@rabinlaw.com

Shinyung Oh                                               shinyungoh@paulhastings.com

Willow E. Radcliffe                                       willowr@lerachlaw.com,
e_file_sd@lerachlaw.com; e_file_sf@lerachlaw.com

Sanna Rachel Singer                                       ssinger@sideman.com,
mthomas@sideman.com

Mark Solomon                                              marks@lerachlaw.com,
e_file_sd@lerachlaw.com; e_file_sf@lerachlaw.com

Shawn A. Williams                                         shawnw@lerachlaw.com,
e_file_sd@lerachlaw.com; e_file_sf@lerachlaw.com; aelishb@lerachlaw.com;
moniquew@lerachlaw.com; travisd@lerachlaw.com; cwood@lerachlaw.com

Jamie Lynne Wine                                          jamie.wine@lw.com,
karen.kelly@lw.com

Monique Winkler                                           MoniqueW@lerachlaw.com,
E_File_SF@lerachlaw.com; MoniqueW@lerachlaw.com; shawnw@lerachlaw.com;
travisd@lerachlaw.com


3:01-cv-988 Notice will be delivered by other means to:
Dorian Daley
500 Oracle Parkway
Redwood City, CA 94065

Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Darren J. Robbins
 Lerach Coughlin Stoia Geller Rudman  & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101