COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
skaplan@csgrr.com
     – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
moniquew@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | Master File No. C-01-0988-MJJ<br><br>CLASS ACTION<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN |
| This Document Relates To:<br><br>ALL ACTIONS. | | |

**PREVIOUSLY FILED ON SEPTEMBER 10, 2007**
**(DOCKET NO. 1099)**

## I.     INTRODUCTION

Defendants' Opposition to Plaintiffs' Motion to Exclude the Testimony of Defendants' Accounting Expert J. Duross O'Bryan ("Opposition" or "Defs' Opp.") fails to address or justify the uncontroverted fact that Mr. O'Bryan's opinions on both the debit memo/bad debt reserve allegations and the improper "swap" transaction with Hewlett Packard ("HP") (the "HP Transaction") were not based on proper foundational facts, data, or analyses which reliably applied established principles to those facts.  With respect to the debit memos, Mr. O'Bryan's report relies upon several unsupported analyses regarding huge categories of debit memos that are not part of the record and unknown to plaintiffs, including an undefined "sample" of 60 debit memos, 121 transactions relating to "transfers to the bad debt reserve in 2Q01" and 277 debit memo overpayments that were purportedly "refunded" prior to November 17, 2000.  Plfs' Mem. at 8-13.[1] Mr. O'Bryan did not provide even simple list of the debit memos that he analyzed for each category, or any information on dates, customer names, or supporting analyses related to his categories of debit memos.  Defendants' Opposition does not explain how this unsupported testimony will be useful to the jury without the underlying facts and data necessary to understand the opinions.

With respect to Mr. O'Bryan's opinion on the HP Transaction, defendants fail to justify or even dispute that Mr. O'Bryan relied heavily upon numerous incomplete documents, e-mails and other evidence that were not produced to plaintiffs or their experts until ***after*** the deadline for the parties to exchange expert rebuttal reports. This is a stark violation of the parties' expert stipulation and the fundamental requirements of Fed. R. Civ. P. 26(a)(2). Neither plaintiffs nor their expert D. Paul Regan ("Regan") had any chance to review, analyze or rebut the new documents regarding the HP Transaction prior to submitting rebuttal reports and were precluded from incorporating these documents into their analysis.  This type of conduct violates both the spirit and letter of Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702 and 703. Mr. O'Bryan's opinions should be excluded.

---

[1]     "Plfs' Mem." refers to Plaintiffs' Motion to Exclude the Testimony of Defendants' Accounting Expert J. Duross O'Bryan ("Motion").

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN - C-01-0988-MJJ                    - 1 -

## II.      ARGUMENT

### A.      O'Bryan's Opinions on the Debit Memo Transactions Are Improper

#### 1.      Defendants Have Failed to Justify Their Violation of the Expert Stipulation and the Requirements of Federal Rules of Civil Procedure 26(a)(2) and Federal Rules of Evidence 702 and 703

Plaintiffs' Motion demonstrated that Mr. O'Bryan's opinions on the "financial statement impact" of the debit memo transactions and the corresponding transfers of customer overpayments to revenue and earnings via the bad debt reserve were not based on sufficient factual foundation, or the proper application of facts to reliable principles and methods. Plfs' Mem. at 6-13. Oddly, defendants assert that plaintiffs "inexplicably ignore" the parties' "expert discovery stipulation" in their Opposition. Defs' Opp. at 5. In fact, plaintiffs' Motion expressly relies upon the stipulation and *quotes it word-for-word* on page 7, lines 9-10: "[T]he stipulation requires experts to produce 'copies of all other documents, data, or other information relied upon by each Testifying Expert.'" Plfs' Mem. at 8:9-10. The stipulation memorializes the parties' practical understanding and application of the requirements of Fed. R. Civ. P. 26(a) and Fed. R. Evid. 702 and 703. Defendants have violated these requirements and the stipulation.

Defendants' characterization of this issue as a "discovery dispute" misses the mark. Plaintiffs' Motion is based on the inadmissibility of Mr. O'Bryan's testimony because it lacks proper foundation, supporting facts, and the proper application of admissible facts to reliable principles and methods. This is the very standard cited by defendants in their Opposition. Defs' Opp. at 2. Most fundamentally, it is impossible for plaintiffs, the jury, or the Court to analyze, test or even understand what Mr. O'Bryan did in forming his opinions because he did not produce or disclose all of the documents, facts and calculations that he expressly "relied upon" in forming his conclusions. Plfs' Mem. at 6-8. It is clear from Mr. O'Bryan's deposition testimony (and the lack of evidence cited in his reports) that he expressly relied upon documents, data, calculations and other information contained in a "binder" that he brought to and used extensively at his deposition. *Id*. Plaintiffs repeatedly asked Mr. O'Bryan if he "relied upon" the information in his binder, such as lists of debit memos, calculations and other source information relating to debit memo transactions, and Mr.

1    O'Bryan repeatedly said that he did.  Plfs' Mem. at 7; Ex. 2 at 137:21-25, 141:3-7.[2]  Plaintiffs

2    repeatedly requested this information on the record during the deposition, but defendants' counsel

3    expressly forbade Mr. O'Bryan from producing the materials.  Plfs' Mem. at 9; Ex. 2 at 167:1-

4    170:7.[3]

5           Defendants now claim that plaintiffs "mischaracterize Mr. O'Bryan's testimony about his

6    purported 'reliance' on the contents of [his] binder."  Defs' Opp. at 5.  This is curious, because

7    plaintiffs did not "mischaracterize" the testimony at all.  Plaintiffs quoted it word-for-word.  Plfs'

8    Mem. at 7.  Thus, to the extent defendants contend that Mr. O'Bryan did not "rely upon" the

9    evidence in the binder, they are disputing the testimony of their own expert.[4]  As set forth below,

10   numerous of Mr. O'Bryan's opinions were unfounded and inadmissible under Fed. R. Evid. 702 and

11   703.

12

13   ─────────────────────

14   [2]      Exhibits referenced herein are attached to the Declaration of Eli R. Greenstein in Support of
     Plaintiffs' Motion ("Ex._"), and the Declaration of Peter W. Baldwin in Support of Defendants'

15   Opposition ("Defs' Opp. Ex._").

16   [3]      Defendants point to the fact that they belatedly "offered" to produce Mr. O'Bryan's binders
     in "exchange for" the binders Mr. Regan brought to his deposition.  Defs' Opp. at 6.  Notably, this

17   "offer" arose only after plaintiffs filed the present motion.  The offer to belatedly produce the
     requisite evidence is not meaningful months after expert reports have been exchanged and expert

18   depositions are over.  As plaintiffs explained in a letter to defendants, the whole purpose of the
     disclosure requirements of Fed. R. Civ. P. 26(a)(2) and the expert stipulation is to allow both experts

19   to properly review, analyze and rebut if necessary, the evidence relied upon by the opposition expert.
     Defs' Opp. Ex. 8.  Producing the information months *after* it can be usefully analyzed does not cure

20   the prejudice that already occurred.  Mr. Regan's "binders" simply consisted of his reports and the
     exhibits cited therein.  *Id.*  Unlike Mr. O'Bryan, Mr. Regan did not submit opinions based on lists of

21   debit memos not disclosed to defendants.  *Id.*  Plaintiffs and their expert did not have all of the
     evidence relied upon by Mr. O'Bryan to rebut his opinions and cross-examine him at deposition.

22   Defendants' attempt to seem reasonable months after refusing to produce the same evidence on the
     record during Mr. O'Bryan's deposition should be rejected.

23   [4]      Defendants claim that the binder of information used by Mr. O'Bryan during his deposition
     was prepared "after Mr. O'Bryan completed and produced his expert reports (and thus after he

24   formed his opinions), as part of his preparation for his deposition."  Defs' Opp. at 5.  This argument
     makes no sense.  The information that Mr. O'Bryan relied upon, including the lists of the 60

25   "randomly chosen" debit memos, the 121 debit memo transfers to the bad debt reserve, and the 277
     debit memos that were purportedly "refunded" prior to November 17, 2000 necessarily was created

26   and relied upon prior to submitting his report or he would not have been able to issue any report at
     all.  The information in his binder is the same information he relied upon in writing his reports.  The

27   date of the creation of the binder is irrelevant.

28

     PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF
     DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN - C-01-0988-MJJ            - 3 -

### a.   The Sample of 60 Unknown Debit Memos

Plaintiffs' Motion challenged the fact that Mr. O'Bryan's report relied upon "source" documents related to only 60 of the total 46,000+ debit memos that he "randomly chose" without providing any supporting information on the actual debit memos. Plfs' Mem. at 8-9. Mr. O'Bryan's complete opinion was that "[t]he sample size of 60 was sufficient to confirm my understanding of how debit memos were processed," Plfs' Mem. at 8; Ex. 1 at 25 n.73, but he failed to provide even a crude list of the 60 debit memos, the customers that related to the debit memos, the amounts of the debit memos, or any information concerning the transactional history of those debit memos. He failed to provide any explanation of the methodology he used to "confirm" his understanding, or to provide the evidence he used to make that determination. There is no way to verify or even assess Mr. O'Bryan's conclusions on these 60 debit memos because he refused to provide the underlying supporting facts. Plfs' Mem. at 8-9.

Defendants attempt to counter this argument by defending the sample size of 60 debit memos and claiming it must be appropriate based on Mr. O'Bryan's "25 years of accounting experience, including years of audit testing and sampling." Defs' Opp. at 8. This misses the point entirely. Plaintiffs are not challenging Mr. O'Bryan's credentials as an expert. Plaintiffs are contesting his opinions on the 60 debit memos because he provides no supporting information regarding the 60 debit memos that he analyzed, and he provides no explanation of how he applied facts about those debit memos to reliable principles to form his opinion. One would think that Mr. O'Bryan's 25 years of "audit testing and sampling" would provide him with the tools to explain what he did in analyzing the 60 debit memos, but he provides no such analysis in his reports.

Defendants also attack plaintiffs' expert D. Paul Regan ("Regan") and claim that "there is no evidence that [Regan] reviewed *any* source documents." Defs' Opp. at 8 (emphasis in original). As an initial matter, defendants did not challenge or file any *Daubert* motion to contest the admissibility of *any* of Mr. Regan's opinions (even though they challenged all of plaintiffs' other experts). In any event, unlike Mr. O'Bryan, Mr. Regan provided hundreds of citations to source documents and other evidence to support his opinions on the debit memos that have gone completely unrebutted by

1   defendants.  It is no surprise, therefore, that defendants concluded that they could not challenge the

2   admissibility of Mr. Regan's testimony.

3                    **b.      The 121 Unknown Transfers to the Bad Debt Reserve**

4              Mr. O'Bryan's opinion that he discovered "121 transfers to the bad debt reserve during the

5   second quarter of fiscal year 2001" is unsupported by a single supporting document or list.  Plfs'

6   Mem. at 9; Ex. 1 at 32.  Again, Mr. O'Bryan does not provide the customer names of the "121

7   transfers" or even a simple list of the corresponding debit memos that the transfers were applied to.

8   Plfs' Mem. at 9.  Plaintiffs specifically asked for the list of 121 debit memos at the deposition and

9   defendants' counsel refused to produce it.  Plfs' Mem. at 9; Ex. 2 at 167:1-170:7.  Thus, there is no

10  way to verify Mr. O'Bryan's conclusions or determine the methodology he used to conclude that

11  there were "121 transfers to the bad debt reserve" in 2Q01.  Plfs' Mem. at 9.  Defendants claim that

12  Mr. O'Bryan "described precisely how he identified those transactions, and he explained how

13  Plaintiffs could get the same data from the Script Output."  Defs' Opp. at 9.  Mr. O'Bryan's

14  description, however, was insufficient.  He stated that "[y]ou just go into the script and run a sort in

15  the database that has the credit amount 12601, then it prints ***all the information about that***.  That's

16  all we did."  Ex. 2 at 169:4-7.  This one sentence summary hardly qualifies as adequate foundation

17  and reliable methodology for analyzing 121 transactions.  Mr. O'Bryan is required to provide and

18  explain how he interpreted that data, what criteria he used to interpret it, and the specific information

19  that he relied upon from "all the information about that."   Mr. O'Bryan provides no support

20  whatsoever for his opinions concerning the 121 transfers.

21                    **c.      The 277 Unknown Debit Memos that Were Purportedly
                              Refunded Prior to November 17, 2000**
22

23            Plaintiffs' Motion challenged Mr. O'Bryan's conclusion that 277 debit memos were

24  purportedly "refunded" prior to November 17, 2000.  Plfs' Mem. at 10 n.7.  Mr. O'Bryan failed to

25  provide a list of those 277 debit memos, the customers associated with the debit memos, the dates of

26  the refunds, or any underlying facts to support his conclusion that those debit memos were refunded.

27  Ex. 2 at 207-208.

28

1    This information is necessary to effectively test Mr. O'Bryan's opinions on the 277 debit

2    memos, especially given Mr. O'Bryan's admission during his deposition that one of the debit memos

3    that he claimed was refunded prior to November 17, 2000 –  a $76,645.04 refund and debit memo

4    for customer Household Finance – did not appear as a refund on the "Script Output" database, the

5    very document that defendants claim contains "complete accounting histories for 926 debit memos."

6    Defs' Opp. at 3.  Mr. O'Bryan could not explain why the purported refund was not in the Script

7    Output and he admitted that ***"I expected to see it.  I did not see it."***  Ex. 2 at 267:4-268:14.  This

8    inexplicable flaw in the evidence relied upon by Mr. O'Bryan is the very reason why plaintiffs are

9    entitled to supporting facts and data regarding the 277 debit memos that Mr. O'Bryan claims were

10   refunded.  It very well could be that there are similar disputes with respect to the other 276 purported

11   refunds of debit memos.  Mr. O'Bryan's failure to provide even the most fundamental information

12   on the 60 "randomly chosen" debit memos, the 121 debit memos that were transferred to the bad

13   debt reserve, and the 277 debit memos that were purportedly refunded is improper under Fed. R.

14   Civ. P. 26(a)(2) and Fed. R. Evid. 702 and 703.  Plfs' Mem. at 8-10.

### d.    The $2 million In Purportedly Appropriate Transfers to the Bad Debt Reserve in 2Q01

16

17   Plaintiffs' Motion demonstrated that Mr. O'Bryan's opinions regarding $2 million of

18   "appropriate" transfers to the bad debt reserve lacked any supporting evidence, facts or methods in

19   applying the facts to reliable principles.  Plfs' Mem. at 10-12.  Plaintiffs established that Mr.

20   O'Bryan provided no support for each of the three components of the $2 million: (a) the $700,000 in

21   alleged "royalty" payments; (b) the $800,000 in "erroneous credit memos"; and (c) the $500,000 in

22   debit memos that "could be" proper.  *Id*.  Notably, defendants in their motion do not even attempt to

23   claim that the $500,000 component was proper; they concede only that the amount "***may*** have been

24   appropriate" when made "for various other reasons."  Defs' Opp. at 9 (emphasis added).  It is

25   precisely those "various other reasons" that are not anywhere in the record, and were not supported

26   or explained by Mr. O'Bryan.

27   Defendants claim that Mr. O'Bryan's testimony on the remaining $1.5 million in transfers is

28   reliable because, at his deposition, he "walked through two examples of bad debt transfers that

illustrate his analysis of this issue." *Id*.  These "two examples" are not sufficient to support the entirety of his opinions.  Mr. O'Bryan admitted in his deposition that there were at least "12 debit memos" related to the $800,000 in "erroneous credit memos."  Yet he did not identify those 12 debit memos in his report, or provide any supporting evidence or analysis as to why he concluded those debit memos were "appropriate."  Mr. O'Bryan also did not provide any evidence showing that the credit memos were "erroneous" or how he could make that determination years after the credit memos were issued.  He merely concluded that they were "erroneous."  Mr. O'Bryan's opinion on the purported $700,000 in "royalty payments" suffers from the same infirmities.  Plfs' Mem. at 10.

### B.    Mr. O'Bryan's Opinions on Materiality Are Improper

Plaintiffs' Motion demonstrated that Mr. O'Bryan's opinion on the materiality of Oracle's financial misstatements was based on analyses never explained or supported in his reports.  Plfs' Mem. at 13.  Specifically, Mr. O'Bryan failed to provide the documents, stock price calculations and other data used in determining historical trends and the materiality of "meeting" vs. "beating" Wall Street consensus earnings expectations.  *Id*.

During his deposition, Mr. O'Bryan tried to cure the deficiencies in his reports by explaining a *post hoc* methodology for analyzing Oracle's stock price trends based on "a multitude of things I looked at in the surrounding circumstances."  He did not provide the actual evidence, facts and supporting data used in forming his opinions, primarily because that information was contained in his "binder" that defendants' refused to produce.  None of Mr. O'Bryan's "trend" analyses were contained in his opening or rebuttal reports.  *Id*. at 14.  Accordingly, Mr. O'Bryan's opinions on materiality are unsupported, unfounded and would require an analysis of hearsay information not properly in the record or contained in Mr. O'Bryan's reports.

### C.    Mr. O'Bryan's Opinion on the HP Transaction Was Based on Documents Never Produced to Plaintiffs or Their Experts

Defendants claim that it is "outrageous" for plaintiffs to claim unfair surprise regarding Mr. O'Bryan's opinion on the HP Transaction.  Defs' Opp. at 7.  They claim that "[p]laintiffs cannot seriously claim that they were 'surprised' or 'prejudiced' by Mr. O'Bryan's opinion in this regard." *Id*.  Defendants' vitriol is misplaced.  Plaintiffs were not surprised that Mr. O'Bryan issued an

1    opinion on the HP Transaction – indeed, they were expecting it.  What plaintiffs did not expect was

2    that Mr. O'Bryan would provide a one-paragraph opinion on the HP Transaction that he admitted

3    was "light," and then wait until after Mr. Regan issued his detailed 26-page opinion with scores of

4    supporting evidence to perform a real analysis of the transaction.  Plfs' Mem. at 14-17.

5         Plaintiffs were also surprised that Mr. O'Bryan relied upon countless documents that were

6    never produced to plaintiffs and their experts until the day that rebuttal reports were exchanged, and

7    then attacked Mr. Regan for **not** reviewing those new documents (that he never had access to) prior

8    to submitting his reports.  The prejudice and unfair surprise is not the result of the fact that Mr.

9    O'Bryan submitted an opinion on the HP Transaction.  It is the result of not having fair and equal

10   access to evidence and being sandbagged with a 26-page rebuttal opinion (after a one-paragraph

11   "light" opinion) that relies almost exclusively on incomplete evidence that was never produced

12   before.[5]  Expert opinions based on such improper and unfair discovery tactics should be excluded.[6]

13

14

15

16

17

18

19

20

_____

21   [5]    Defendants contend that "[p]laintiffs believe that their expert can opine freely on accounting

22   theories that are not at issue in the case, but Defendants' expert is precluded from responding to
     those arguments on rebuttal."  Defs' Opp. at 2.  Not so.  Mr. O'Bryan is certainly allowed to rebut

23   Mr. Regan's testimony on the HP Transaction.  What he is not permitted to do under Fed. R. Civ. P.
     26(a)(2) is submit a incomplete and unsupported one-paragraph "light" opinion that does not

24   perform any independent analysis at all, and then wait until rebuttal to perform a substantive opinion
     based on documents that were never produced to plaintiffs' experts.

25   [6]    It is more than a little ironic that defendants have moved for summary judgment on the

26   accounting issues as being "undisputed" as a matter of law, but when trying to defend the usefulness
     of Mr. O'Bryan's testimony to a jury, they state that "***[g]iven the nature of Plaintiffs' accounting***

27   ***allegations, the complexity of revenue recognition generally . . . there can be no question that his***
     ***testimony will aid the jury in understanding the relevant facts.***"  Defs' Opp. at 4.

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF
DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN - C-01-0988-MJJ          - 8 -

III.     CONCLUSION

Based on the foregoing, plaintiffs' Motion should be granted.

DATED: October 10, 2007                    Respectfully submitted,

                                           COUGHLIN STOIA GELLER
                                             RUDMAN & ROBBINS LLP
                                           SHAWN A. WILLIAMS
                                           WILLOW E. RADCLIFFE
                                           MONIQUE C. WINKLER
                                           ELI R. GREENSTEIN
                                           DANIEL J. PFEFFERBAUM


                                                    s/ ELI R. GREENSTEIN
                                                  ELI R. GREENSTEIN

                                           100 Pine Street, Suite 2600
                                           San Francisco, CA  94111
                                           Telephone:  415/288-4545
                                           415/288-4534 (fax)

                                           COUGHLIN STOIA GELLER
                                             RUDMAN & ROBBINS LLP
                                           MARK SOLOMON
                                           DOUGLAS R. BRITTON
                                           STACEY M. KAPLAN
                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)

                                           Lead Counsel for Plaintiffs

\\netapp1b.lc.local\docs\edoc\CasesSD\Oracle3\Refiled Pleadings\BRF00045360_reply exclude Obryan.doc

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF
DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN - C-01-0988-MJJ          - 9 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 10, 2007.

 s/ ELI R. GREENSTEIN
ELI R. GREENSTEIN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

E-mail:EliG@csgrr.com

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com
- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com
- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com
- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com
- **Stacey Marie Kaplan**
  SKaplan@csgrr.com
- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com
- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com
- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com
- **William S. Lerach**
  e_file_sd@lerachlaw.com
- **James C. Maroulis**
  jim.maroulis@oracle.com
- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com
- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com
- **Brian P Murray**
  bmurray@rabinlaw.com
- **Shinyung Oh**
  shinyungoh@paulhastings.com
- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com
  ,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com
- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com
- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Dorian Daley**
500 Oracle Parkway
Redwood City, CA 94065

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111