COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
skaplan@csgrr.com
    – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
moniquew@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF R. GLENN HUBBARD |

DATE: November 16, 2007
TIME: 1:30 p.m
COURTROOM: The Honorable
Martin J. Jenkins

**PREVIOUSLY FILED ON SEPTEMBER 10, 2007
(DOCKET NO. 1075)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................1

    A.    Hubbard's Bias Precludes Him from Offering Reliable Opinions ...........1

    B.    Hubbard's Opinions About Oracle's Forecasting Process and Internal
           Forecast Data Should Be Excluded.............................................................3

    C.    Hubbard's Opinion that Oracle's Sales Forecasts Were Informed by
           Economic Data Is Speculative and Should Be Excluded..........................6

    D.    Hubbard's Opinions Are Duplicative of Foster's Opinions and Should Be
           Excluded Under Rule 403 ...........................................................................8

    E.    Hubbard's Opinions About Whether the Economy Was in a Recession
           Should Be Excluded....................................................................................9

    F.    Hubbard's Opinions that Rely on the Financial Results of Oracle's
           Competitors and the Statements of Analysts About Those Results Are
           Unreliable.................................................................................................11

    G.    Hubbard's Opinions Based on Unspecified Channel Checks Are
           Unreliable.................................................................................................12

    H.    Hubbard's Opinion that the Diversity of Oracle's Customer Base
           Protected Its Revenues Should Be Excluded as Unreliable and Irrelevant ...........13

    I.    Hubbard's Opinions Invade the Province of the Jury............................14

III.    CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

Page

**CASES**

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ..................................................5, 6

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) ........................................................ *passim*

*Folden v. Wash. State Dep't of Social & Health Servs.*,
   744 F. Supp. 1507 (W.D. Wash. 1990),
   *aff'd*, 981 F.2d 1054 (9th Cir. 1992) .................................3

*GST Telecomms., Inc. v. Irwin*,
   192 F.R.D. 109 (S.D.N.Y. 2000) ......................................14

*Guillory v. Domtar Indus.*,
   95 F.3d 1320 (5th Cir. 1996) ...........................................5

*Habecker v. Copperloy Corp.*,
   893 F.2d 49 (3d Cir. 1990).................................................9

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ...........................................5

*Hester v. BIC Corp.*,
   225 F.3d 178 (2d Cir. 2000)...............................................10

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   258 F. Supp. 2d 576 (S.D.Tex. 2003) ...............................5

*Mukhtar v. Cal. State Univ.*,
   299 F.3d 1053 (9th Cir. 2002) ......................................3, 9

*Polsby v. Shalala*,
   925 F. Supp. 379 (D. Md. 1996),
   *aff'd*, 165 F.3d 19 (4th Cir. 1998).....................................3

*Ralston v. Smith & Nephew Richards, Inc.*,
   275 F.3d 965 (10th Cir. 2001) ......................................4, 5

*SEC v. Lipson*,
   46 F. Supp. 2d 758 (N.D. Ill. 1999) ...............................14

*Thompson v. State Farm Fire & Cas. Co.*,
   34 F.3d 932 (10th Cir. 1994) .........................................14

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
   395 F.3d 416 (7th Cir. 2005) .........................................7

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF R. GLENN HUBBARD - C-01-0988-MJJ

- ii -

1

2                                                                                                    **Page**

3   **STATUTES, RULES AND REGULATIONS**

4   15 U.S.C.

§78j(b)............................................................................................................1

5   Federal Rules of Evidence

6           Rule 403...............................................................................................8, 9

7           Rule 702.......................................................................................1, 6, 8, 9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **I.     INTRODUCTION**

2          In an attempt to show that they did not violate §10(b) of the Securities Exchange Act of 1934

3  by making false and misleading statements concerning financial data, earnings guidance, and the

4  performance of Oracle's product Suite 11i, defendants have offered the opinions of R. Glenn

5  Hubbard to support the "reasonableness" of the false and misleading statements at issue in this

6  litigation.  In particular, Hubbard has opined that defendants' statements were reasonable in light of

7  his views regarding Oracle's forecasting process and the United States' economy in Oracle's fiscal

8  year 2001.  In Plaintiffs' Notice of Motion and Motion to Exclude the Expert Testimony of R. Glenn

9  Hubbard ("Motion"), plaintiffs demonstrated numerous inadequacies in Hubbard's opinions, which

10 plaintiffs showed to be irrelevant, unreliable, tainted with bias, and beyond the scope of Hubbard's

11 particular area of expertise.  In an attempt to avoid having Hubbard's opinions excluded, defendants

12 have suddenly changed course and now claim that these opinions are offered for purposes much

13 more limited than those that clearly appear on the face of Hubbard's report.  Defendants, however,

14 cannot cure the obvious shortcomings of Hubbard's purported expert opinions and his failure to

15 satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms.*, 509

16 U.S. 579 (1993).  As such, Hubbard's testimony must be excluded.

17 **II.    ARGUMENT**

18         **A.     Hubbard's Bias Precludes Him from Offering Reliable Opinions**

19         In their Motion, plaintiffs exposed the fact that Hubbard has a well-documented history of

20 aversion toward securities class action litigation and a personal agenda to curb such litigation.

21 Motion at 5-6.  As co-chairman of the Committee on Capital Markets Regulation (the "Paulson

22 Committee"), Hubbard is one of three individuals to sign the preface of the Paulson Committee's

23 November 30, 2006 Interim Report.  *Id.*  In this report, the Paulson Committee (and hence Hubbard)

24 clearly advocates the curtailing of the current securities class action regime by pointing to "liability

25 risks" and "[c]lass action settlement costs" as main contributing factors to the loss of U.S. market

26 competitiveness, recommending "adjustments to our regulatory and litigation framework so that

27 public markets are less burdensome," endorsing "caps on liability," and claiming that "the penalties

28 [of securities enforcement] have grown disproportionately large relative to their deterrent benefit."

1   Motion Ex. 12 at x, xii, 5, 11.[1]  Despite defendants' attempts to depict this report as balanced and

2   bipartisan, the Paulson Committee's (and hence Hubbard's) anti-class action perspective is made

3   readily evident in a three-page section of the report analyzing the "[c]ost-[b]enefit" of shareholder

4   litigation.  *Id*. at 78-80.  In this section, the Paulson Committee (and hence Hubbard) states that,

5   "[t]he modern securities class action lawsuit creates a heavy burden for public companies; without a

6   substantial social benefit, this burden cannot be justified." *Id*. at 78.  This statement leaves no doubt

7   that the Paulson Committee (and hence Hubbard) has a strong bias against securities class action

8   litigation.

9           Defendants' attempt to refute Hubbard's bias by pointing to his deposition testimony and to

10   the fact that he has testified for plaintiffs in the past fall well short.  *See* Defendants' Opposition to

11   Plaintiffs' Motion to Exclude Expert Testimony of R. Glenn Hubbard ("Opp.") at 5.  First, the

12   McKesson-HBOC litigation cited by defendants was an individual action and therefore does not fall

13   within the category of cases that Hubbard seeks to terminate.  *See* Motion Ex. 2 at 9:22-10:24; Reply

14   Ex. 1 at 7.[2] Also, the party for whom Hubbard testified in that matter was Merrill Lynch, a frequent

15   defendant in securities class actions.  Motion Ex. 2 at 9:22-10:24.  Such "service" to the plaintiffs

16   does nothing to refute Hubbard's bias.  Moreover, Hubbard's testimony that his "view is not that

17   there is no grounds for securities litigation," is far from any kind of endorsement of a "need for

18   securities litigation," as defendants claim.  *See* Motion Ex. 2 at 27:16-22; Opp. at 5.  Despite their

19   efforts, defendants cannot escape the fact that, by signing the Paulson Committee's report, Hubbard

20   has demonstrated a personal bias against securities class action litigation, which was confirmed by

21   his testimony.  *See* Motion Ex. 2 at 25:12-15.  Accordingly, it is a stretch to think that Hubbard

22   would issue opinions that would serve to do anything other than facilitate the termination of this

23

24   _____

25   [1]      All "Motion Ex. ___" references are to the Declaration of Douglas R. Britton in Support of
        Plaintiffs' Motion to Exclude the Expert Testimony of R. Glenn Hubbard.

26   [2]      All "Reply Ex. ___" references are to the Declaration of Douglas R. Britton in Support of
27   Plaintiffs' Reply in Further Support of Their Motion to Exclude the Expert Testimony of R. Glenn
        Hubbard.

28   PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
        EXPERT TESTIMONY OF R. GLENN HUBBARD - C-01-0988-MJJ                                    - 2 -

action – regardless of its merits.  Any other opinion would directly undermine the objectives of the Paulson Committee.

While the merits of Hubbard's views on securities class actions may not be at issue in this case, his independence and objectivity clearly are.  In fact, the effect of his bias can be seen by the divergence between his previous views on the state of the U.S. economy and those which he expresses for purposes of this litigation.  *See* §II.E., *infra*.  The practical certainty that Hubbard's opinions have been biased by his personal views, combined with the other factors discussed below, require that Hubbard's purported expert testimony be excluded from this case.  *See, e.g.*, *Polsby v. Shalala*, 925 F. Supp. 379, 393 (D. Md. 1996) (finding that a "lack of independence as an expert witness destroys his credibility") *aff'd*, 165 F.3d 19 (4th Cir. 1998).[3]

**B.**     **Hubbard's Opinions About Oracle's Forecasting Process and Internal Forecast Data Should Be Excluded**

In his report, Hubbard repeatedly expresses opinions concerning Oracle's internal forecasting process, including analyses of the information made available to defendants through this process, the historical accuracy of the process, and the overall reasonableness of the process.  Motion Ex. 1 at 5, 78-94.  As detailed in plaintiffs' Motion, these opinions are based on unreliable methodologies and are outside the scope of Hubbard's purported area of expertise.  *See* Motion at 6-10.

Defendants respond to the shortcomings illuminated by plaintiffs by re-characterizing Hubbard's opinions, claiming that he is not actually testifying as to the reasonableness of Oracle's forecasting process, but rather, only the reasonableness of Oracle's statements in light of internal data gathered from Oracle's forecasting process.  Opp. at 13-15.  The plain language of Hubbard's

---

[3]      Defendants reliance on *Folden v. Wash. State Dep't of Social & Health Servs.*, 744 F. Supp. 1507 (W.D. Wash. 1990), *aff'd*, 981 F.2d 1054 (9th Cir. 1992), for the proposition that the effect of Hubbard's bias should be to discount his testimony but not exclude it, is misplaced.  Opp. at 5.  Because *Folden* was a bench trial, the danger of allowing an unreliable expert opinion to influence jurors was not present.  Moreover, the court in that case still made it very clear that a lack of independence can destroy an expert witness' credibility.  *Id.* at 1522.  When the bias rises to the level it has in this case, exclusion is necessary to prevent the jury from being misled by unreliable opinions.  *See Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002) ("Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony.").

report, however, makes it clear that he is in fact attempting to opine on the quality and reasonableness of Oracle's forecast process. *See, e.g.*, Motion Ex. 1 at 78, ¶159 ("[Oracle's forecasting] process is exactly **what one would expect** in Oracle's type of business");[4] 79, ¶160 ("In developing projections and forecasts, **it is appropriate** for a company to start by asking the front line sales representatives for their sales prospects."); 81, ¶168 ("Oracle's practice of basing its forecasts on sales representatives' projections, management assessment of deals in progress, and historical conversion ratios **was reasonable** given the inherent uncertainty of the company's license revenue, its biggest source of revenue.").   Defendants' attempt to re-characterize Hubbard's opinions effectively serves as a concession that Hubbard is not qualified to opine on the reasonableness of Oracle's forecasting process and that he employed unreliable methodologies in doing so.

Defendants have not carried and, in fact, cannot carry their burden of showing that Hubbard is qualified to opine on the reasonableness or quality of Oracle's internal forecasting process. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001) (explaining that proponent of expert testimony bears burden of demonstrating expert's qualifications).   They claim that plaintiffs' concerns regarding Hubbard's qualifications are "laughable" – but in fact, Hubbard's attempt to offer expert opinions on matters for which he is not qualified to opine is a very serious matter.   While Hubbard may be experienced in the field of macroeconomics, defendants have pointed to no qualifications that would enable him to offer expert opinions on the forecasting procedures of a corporate entity such as Oracle.   They offer only his government service and his experience as an outside corporate director as the sum total of his qualifications to opine on the quality of Oracle's forecasting process, without providing any details about his actual forecasting experience in those roles.   Opp. at 13.   But neither his role as Deputy Assistant Secretary (Tax Analysis) of the U.S. Department of the Treasury nor his experience as an outside director imply that he is qualified to opine on internal corporate forecasting procedures.   The former is far too removed from the realities of the business environment, while the latter generally requires limited

---

[4]         Citations are omitted and emphasis is added, unless otherwise noted.

1    involvement with the day-to-day processes of the corporation.  *See, e.g.*, *In re Enron Corp. Sec.,*

2    *Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 626 n.55 (S.D.Tex. 2003).  As such, defendants

3    have failed miserably to satisfy their burden of qualifying Hubbard as an expert on corporate

4    forecasting, and his opinions regarding this issue must therefore be excluded.  *See Ralston*, 275 F.3d

5    at 970 n.4.[5]

6            Even if defendants could carry their burden, plaintiffs have shown that the methodologies

7    Hubbard employs to support his opinions on this matter are clearly unreliable.  *See* Motion at 8-10.

8    In their Motion, plaintiffs exposed a multitude of inadequacies relating to Hubbard's analysis of

9    Oracle's forecasting process, including his failure to consider the impact of Ellison's forecasting

10   directive, his failure to test the reliability of the conversion ratio, his failure to consider the effects of

11   Oracle's changing product mix, his failure to account for the problems Oracle was experiencing with

12   Suite 11i, and his failure to consider the very "'forecasting indicators'" that Ellison testified were

13   "'key'" to gauging Oracle's forecast.  *Id.* at 9.  These factors each had a very significant impact on

14   Oracle's forecasting process.  *See, e.g.*, Motion Ex. 2 at 15:5-18; Motion Ex. 13 at 179:6-25.  As

15   such, their blatant omission from Hubbard's analysis makes his opinions regarding Oracle's

16   forecasting process completely unreliable.  Plaintiffs have shown that Hubbard completely ignored a

17   wealth of information that directly undermined his opinions and rendered them wholly unreliable.

18   *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (exclusion

19   where proposed expert had not considered all relevant evidence). [6]

20

21

22   [5]    Defendants' reliance on *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th
Cir. 2004), is misplaced.  While the expert in that case lacked experience relating specifically to bad
23   faith claims, he had extensive experience in the insurance business.  Here, defendants have failed to
show that Hubbard has any practical experience working with forecasts in a business environment.
24   In fact, Hubbard testified that "I'm not a business person, sir, I'm a professor."  Motion Ex. 2 at
46:4-5.

25   [6]    Recognizing that Hubbard's failure to consider these facts shows that his methods were
flawed, defendants assert that his shortcomings "do[] not render Professor Hubbard's opinions
26   unreliable to the point they warrant exclusion."  Opp. at 14.  Aside from the lukewarm enthusiasm
the statement betrays, it is unpersuasive in saving those opinions from exclusion.  Defendants'
27   attempt to rely on *Guillory v. Domtar Indus.*, 95 F.3d 1320 (5th Cir. 1996), as somehow excusing
their unreliability because their flaws may not have been as egregious as other experts who have
28

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF R. GLENN HUBBARD - C-01-0988-MJJ                                    - 5 -

1    Even if the only purpose of Hubbard's opinions is to show, as defendants now claim, that

2    defendants' statements were reasonable in light of information made available through Oracle's

3    forecasting process, Hubbard would still be required to conduct a thorough and reliable examination

4    of the forecasting process in order to ascertain exactly what reliable information was actually made

5    available by that process.  Because plaintiffs have illustrated that Hubbard failed to conduct any such

6    analysis of Oracle's forecasting process, his opinion that defendants' statements were reasonable in

7    light of that process is necessarily unreliable.  Hubbard's testimony must be excluded as a result.

8    Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589.

9    Defendants claim that none of the significant facts plaintiffs identify as missing from

10   Hubbard's analysis are supported by evidence because plaintiffs rely on the report of their expert,

11   Dr. Goedde.  Opp. at 14.  This assertion is patently false.  Dr. Goedde's report cited a wealth of

12   evidence showing that Oracle's forecasting process was unreliable, including that Ellison's directive

13   occurred and was followed and that the conversion ratio on which Oracle based public guidance was

14   growing increasingly unreliable.  Motion at 8-9; *see also* Reply Ex. 2 at 203683; Reply Exs. 3-4.

15   Hubbard's disregard of this evidence does not qualify as a disagreement between experts.  Although

16   experts are allowed to rely on their party's version of the facts to a certain extent, the fact that

17   Hubbard has blatantly disregarded facts that have been shown to be fundamental to the matters on

18   which he is opining makes his opinions unreliable and excludable.[7]  *Concord*, 207 F.3d at 1056.

19   **C.      Hubbard's Opinion that Oracle's Sales Forecasts Were Informed by
            Economic Data Is Speculative and Should Be Excluded**

20

21   As illustrated in plaintiffs' Motion, Hubbard offers nothing more than rank speculation to

22   support his opinion that Oracle's sales forecasts were the product of economic information.  Motion

23   at 10.  In arriving at his opinion, Hubbard does not utilize any methodology at all, let alone a reliable

24   been excluded, is unavailing.  Whether Hubbard altered facts or completely ignored them, his

25   methodologies were unreliable.

26   [7]    Defendants also claim that the declaration of Ray Lane is irrelevant to Hubbard's analysis.
     Opp. at 15 n.5.  However, as plaintiffs showed in their Motion, Mr. Lane's declaration is relevant to

27   the reliability of Hubbard's analysis because it highlights Hubbard's failure to even consider
     alternative explanations.

28

1   and accepted one.  He fails to cite to any customer testimony, customer documents, sales documents,

2   or other internal information to inform or test his opinion.  *See* Motion Ex. 4 at 21-22, ¶¶56-60.

3   Instead, Hubbard relies on his own intuition to speculate that salespeople must have received

4   meaningful macroeconomic information from customers and incorporated it into their forecasts.  *See*

5   *id*. at 21, ¶55; Motion at 10.

6        Although defendants claim that Hubbard's assumptions are supported by the testimony of

7   three Oracle executives, this is far from the truth.  Opp. at 16; *see also* Motion Ex. 4 at 21-22, ¶¶56-

8   60.  The statements relied on by Hubbard are in fact completely void of any specifics regarding the

9   kind of information executives or salespeople learned from their customers, whether they had a

10  reliable understanding of how forthcoming their customers were, or whether and how any

11  information gained from customers was actually incorporated into the field-level forecasts.  *See*

12  Motion Ex. 4 at 21-22.  Furthermore, Hubbard's opinion is directly at odds with testimony from

13  Henley, who stated:

14        Until you get to the end of the quarter, unfortunately, in this crazy business
          I'm in, ***you really don't test your customer*** to see what they really think about their
15        business and ***what they really think about the economy***.

16  Reply Ex. 5 at 206:5-9.  This testimony shows the speculative and unreliable nature of Hubbard's

17  opinions.  But even if some economic data had been incorporated into Oracle's forecast at the sales

18  level, Hubbard has not shown and cannot show that adjustments for the economic environment were

19  still not required because information at that level would certainly be imperfect.  Hubbard fails to

20  account for, or even consider, this fact.  Due to the deficiencies in Hubbard's analysis, his opinion

21  that Oracle's sales forecasts were the product of information that reflected macroeconomic changes

22  is supported by nothing more than Hubbard's own intuition and is clearly not the result of any

23  reliable or testable methodology.  *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416,

24  419 (7th Cir. 2005) ("An expert must offer good reason to think that his approach produces an

25  accurate estimate using professional methods, and this estimate must be testable . . . 'expert intuition,

26  is neither normal . . . nor testable.'").

27        Hubbard's opinion on this matter must be excluded because it again relies on an analysis of

28  the nature of Oracle's forecast process.  *See* Opp. at 15 ("As part of his analysis, Professor Hubbard

1    concluded that Oracle's forecast process, by its nature, included economic and macroeconomic

2    information."). As detailed in the previous section, Hubbard is not qualified to offer expert opinions

3    on forecasting processes within the business environment, much less what a salesperson may or may

4    not intuitively consider in forming their sales forecasts. As such, Hubbard's opinions are not only

5    based on unreliable methods and mere speculation, but they are also outside the scope of his area of

6    expertise.  As such, Hubbard's testimony on this issue must be excluded. Fed. R. Evid. 702;

7    *Daubert*, 509 U.S. at 589.

8         **D.    Hubbard's Opinions Are Duplicative of Foster's Opinions and Should
               Be Excluded Under Rule 403**

9
10        Plaintiffs' Motion demonstrated that defendants have offered numerous duplicative opinions

11   from Foster and Hubbard regarding the reasonableness of Oracle's forecasting process and the

12   incorporation of economic data into that process. Motion at 12-13. In their response, defendants do

13   not refute the fact that Hubbard and Foster offer duplicative opinions; rather, defendants focus on

14   their claim that Hubbard and Foster offer their opinions for different purposes.[8]  Opp. at 16. As

15   plaintiffs have shown, however, there is no practical difference in their opinions. Motion at 12-13.

16   Both experts opine on the reasonableness and quality of Oracle's forecasting process – the fact that

17   Hubbard adds his conclusion that the forecasting process supported the reasonableness of

18   defendants' statements does not change the reality that, through the identical opinions in their

19   respective reports, Hubbard and Foster have attempted to offer cumulative evidence that should be

20   excluded under Federal Rule of Evidence 403. *See* Motion at 12-13.

21        Defendants argue that plaintiffs cannot demonstrate that the probative value of defendants'

22   duplicative expert opinions are substantially outweighed by considerations of needless presentation

23   of cumulative evidence. Opp. at 16-17. Defendants, however, offer no analysis on this issue. And,

24   considering the shortcomings of Hubbard's analysis regarding Oracle's forecasting process,

25   including his lack of qualifications to offer such opinions and the unreliability of the methods he

26

27   [8]    Defendants' failure to dispute the duplicative aspects of these opinions effectively serves as a
     concession that the opinions are duplicative.

28   PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
     EXPERT TESTIMONY OF R. GLENN HUBBARD - C-01-0988-MJJ                           - 8 -

1   employed to arrive at such opinions, the probative value of these opinions is minimal at best.  On the

2   other hand, considering the danger for expert opinions to carry unnecessarily heavy weight – a

3   danger that courts have repeatedly recognized – the considerations in favor of excluding Hubbard's

4   forecasting opinions as needlessly cumulative evidence are substantial.  *See Mukhtar*, 299 F.3d at

5   1063-64.  As such, Hubbard's opinions relating to Oracle's forecasting process should be excluded

6   under Rule 403.[9]

7           **E.      Hubbard's Opinions About Whether the Economy Was in a Recession
                      Should Be Excluded**

8
9           In his report, Hubbard makes it very clear that the rationale for his analysis of whether the

10  economy was in a recession was to examine the reasonableness of defendants' statements regarding

11  their public guidance.  Motion Ex. 1 at 52, ¶94.  In their Motion, however, plaintiffs exposed

12  Hubbard's utter failure to analyze or attempt to explain the connection between the reasonableness

13  of defendants' statements and the existence (or lack thereof) of a recession.  Motion at 13-17.  As

14  such, plaintiffs exposed Hubbard's failure to provide the requisite '"fit"' between his opinion and the

15  issues in this case.  *Id.*; *see also Daubert*, 509 U.S. at 591 ("'An additional consideration under Rule

16  702 – and another aspect of relevancy – is whether expert testimony proffered in the case is

17  sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'").

18          Defendants argue that Hubbard's opinions are relevant to plaintiffs' allegations concerning

19  Oracle's misleading statements that they were not experiencing any impact from the struggling

20  economy, as well as Oracle's safe harbor defense.  Opp. at 6-8.  But Hubbard cannot properly opine

21  that any of defendants' statements were reasonable in light of the fact that there was no recession

22  without first conducting a thorough analysis of how a recession was necessary to make their

23  statements unreasonable.  Hubbard's failure to conduct any analysis of how a recession would affect

24  the reasonableness of any of defendants' statements prevents him from properly opining that

25
26  [9]      Defendants' reliance on *Habecker v. Copperloy Corp.*, 893 F.2d 49, 53 (3d Cir. 1990), is
    misplaced.  There, the court did not hold that the trial court should have admitted the duplicative
27  testimony; it simply held it was not in a position to determine that the trial court could not have
    admitted the testimony.
28

1    defendants' statements were reasonable in light of the fact that there was no recession. Hubbard has

2    failed to provide the necessary "fit" for this opinion and, thus, it must be excluded from testimony.

3    *Daubert*, 509 U.S. at 591.

4         It is not surprising, however, that Hubbard did not conduct the required analysis because the

5    existence (or lack thereof) of a recession simply is not relevant to a determination of whether

6    defendants' statements were unreasonable. The relevant issue in this case is whether the economy,

7    whatever its technical state, was having a negative impact on Oracle's business such that Oracle's

8    statements were false and misleading. An opinion that the economy did not meet the technical

9    definition of a recession will not "'assist the trier of fact to understand the evidence or to determine a

10   fact in issue.'" *Daubert*, 509 U.S. at 591. Such an opinion can only confuse the issues. By opining

11   that defendants' statements were reasonable because the economy was not in a recession, Hubbard

12   improperly plays the role of oath-helper. Hubbard's testimony must be excluded. *See, e.g.*, *Hester*

13   *v. BIC Corp.*, 225 F.3d 178, 184-85 (2d Cir. 2000) (finding that where the jury's opinion is as good

14   as the witness', the witness turns into no more than an improper "oath helper").

15        Even if defendants could somehow show this opinion to be relevant to a factual issue in this

16   case, exclusion would still be warranted because Hubbard's opinion appears to have been developed

17   solely for purposes of this litigation. *See Daubert*, 43 F.3d at 1317 ("One very significant fact to be

18   considered is whether the expert[] . . . developed their opinions expressly for purposes of

19   testifying."). As plaintiffs revealed in their Motion, Hubbard served as an economic advisor to the

20   Bush Administration (the "Administration") during the period at issue in this litigation, and it is

21   well-documented that, during that time, the Administration's position was that a recession was

22   imminent, or at least very likely. Motion at 16-17. As such, Hubbard's current opinion is directly at

23   odds with the position taken by the very Administration he was advising during the period in

24   question. *Id*. [10] The inconsistency makes Hubbard's opinion that the economy was not in a

25   recession unreliable, and thus, his testimony must be excluded.[11]

26   _____

27   [10]    Hubbard's testimony that he did not share the Administration's view on the economy is
28   simply not credible since he failed to mention any such disagreements in his reports. Instead, he

1  **F.      Hubbard's Opinions that Rely on the Financial Results of Oracle's
          Competitors and the Statements of Analysts About Those Results Are
2          Unreliable**

3          Hubbard also attempts to use the financial results of Oracle's competitors, as well as analyst

4  commentary of those results, to opine that defendants did not know about the effect of the economic

5  downturn on Oracle's business until the very end of the quarter.  Motion at 16; Motion Ex. 1 at 34-

6  42, ¶¶50-51, 70-81, 91-93.  Plaintiffs, however, have shown that Hubbard's analysis renders his

7  opinion on this matter both unreliable and irrelevant.  Motion at 17-18.  In response, defendants

8  again change course and attempt to re-characterize the nature of Hubbard's analysis by claiming that

9  he offered this opinion simply to show that defendants' statements were consistent with general

10 information known at the time.  Opp. at 11.  No matter which view one takes, however, Hubbard's

11 opinion is both unreliable and irrelevant.

12         Hubbard's report is clear on its face that the purpose of his opinion regarding Oracle's

13 competitors is to support his conclusion that defendants' statements were reasonable because they

14 did not know about the effects of the economic slowdown until the end of the quarter.  Motion Ex. 1

15 at 34-42, ¶¶50-51, 70-81, 91-93.  In doing so, Hubbard relies on information and anecdotal evidence

16 from outside of Oracle, even though it is clear that contradictory information was available within

17 Oracle at that time.  Motion at 18-19; Reply Ex. 6 at 76:1-77:16, 113:25-116:19, 122:1-25, 127:24-

18 129:25, 143:12-144:3, 156:4-159:21; Reply Ex. 7 at 333:22-334:1, 466:20-467:19, 551:1-553:18;

19 Reply Ex. 5 at 64:15-65:20, 114:5-118:9, 120:4-13, 222:18-223:24.  His methods are therefore

20 unreliable.  Moreover, the outside information on which Hubbard relies is, itself, unreliable because

21 he fails to test the competitor testimonials, he fails to verify the specific time at which Oracle's

22 competitors began to witness the cited economic slowdown, and he fails to investigate the

23

24 repeatedly emphasized his role as the Administration's economic advisor.  Only when challenged by
   plaintiffs did Hubbard distance himself from the Administration.
25

   [11]      Defendants' attempt to support Hubbard's opinion with the findings of the National Bureau
26 of Economic Research Business Cycle Dating Committee is unpersuasive.  Opp. at 8.  The
   determinations this committee made nearly a year after the period in question are completely
27 irrelevant to what Oracle knew or understood at that time.

28

1  foundation and accuracy of the analyst statements.  Motion at 18.  Hubbard's opinions should be

2  excluded.

3          Even if the opinion is considered only for the limited purpose of showing that defendants'

4  statements were consistent with information generally known at the time, it is both irrelevant and

5  unreliable.  Indeed, defendants have failed to explain how an opinion that defendants' statements

6  were consistent with information generally known by others at the time would assist a trier of fact in

7  determining any fact at issue in this case.  Accordingly, defendants cannot provide the required "fit"

8  for Hubbard's opinion.  *Daubert*, 509 U.S. at 591.  Even if they could, however, Hubbard's opinion

9  should be excluded as unreliable because he failed to test the reliability of his outside sources.

10 Motion at 18-19.

11         Hubbard's reliance on securities analysts fails for another reason – they are unreliable

12 because they largely rely on information from management.  As plaintiffs established in their

13 Motion, defendants' own purported expert George Foster has written about the unreliable nature of

14 securities analyst forecasts.  Motion at 19-20.  Defendants attempt to counter this fact by claiming

15 that plaintiffs "cherry-picked" Foster's writing.  Opp. at 10.  Defendants' argument, however, does

16 nothing to refute the fact that Foster clearly questions the reliability of security analysts, which is an

17 opinion shared by Ellison – "[w]hat most analysts say about your company has more to do with the

18 financial results of your last couple of quarters than anything else."  Reply Ex. 8 at 262.  Hubbard's

19 opinion should be excluded.

20     **G.    Hubbard's Opinions Based on Unspecified Channel Checks Are
           Unreliable**

21

22         Hubbard also relies on analyst expectations and independent channel checks of Oracle's

23 business throughout the Class Period to support his opinion that defendants' statements were

   reasonable because analysts were confident in Oracle's ability to make its guidance.  Motion Ex. 1 at

24 28-29, 34, ¶¶63-64, 69; Motion Ex. 4 at 8-13, ¶¶21-31.  Plaintiffs, however, have shown that this

25 analysis is both unreliable and irrelevant.  Motion at 19-20.  Like his analysis relating to Oracle's

26 competitors, Hubbard again attempts to rely on statements and information from outside of Oracle to

27 support the reasonableness of defendants' statements, as opposed to examining the available

28

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF R. GLENN HUBBARD - C-01-0988-MJJ                                    - 12 -

1    evidence from within Oracle.  *Id.*  And he does so without testing the reliability of this outside

2    information.  *Id.*

3           Defendants attempt to counter this argument with the same response they use for Hubbard's

4    opinion regarding Oracle's competitors.  Opp. at 9-11.  But, for the same reasons discussed in the

5    previous section, defendants' argument fails.  If the opinion is intended to support the reasonableness

6    of defendants' statements by analyzing what they knew at the time, it employs an unreliable

7    methodology for doing so.  If the opinion is intended simply to show that defendants' statements

8    were consistent with what others thought, then not only is it the product of unreliable methodology,

9    but it also lacks the proper "fit" to any of the issues in this case.  Either way, this opinion should be

10   excluded from testimony.

11          **H.    Hubbard's Opinion that the Diversity of Oracle's Customer Base**

12          **        Protected Its Revenues Should Be Excluded as Unreliable and**
**                Irrelevant**

13          Hubbard also concludes that defendants' statements were reasonable because the diversity of

14   Oracle's customer base protected its revenues from being significantly affected by any slowdowns in

15   the economy.  Motion Ex. 1 at 46-47, ¶86.  Plaintiffs, however, showed in their Motion that Hubbard

16   failed to bridge the analytical gap between his general proposition and the issue presented here –

17   whether Oracle's ability to reach public quarterly guidance and the Company's health thereafter

18   could be affected by an economic slowdown in the segments of the market that affected Oracle's

19   business.  Defendants still do not bridge the analytical gap.  Motion at 20-21.  Instead, they respond

20   by, yet again, re-characterizing Hubbard's opinion and claiming that plaintiffs misunderstand its

21   nature.  Opp. at 12.

22          Plaintiffs have not misunderstood.  Defendants assert that Hubbard's analysis revealed that

23   the "customer base was extremely broad," thus suggesting that Oracle executives could expect to

24   remain insulated from economic slowdowns and had a reasonable basis for their supposed

25   confidence in Oracle's condition and prospects.  Opp. at 12.  However, as plaintiffs demonstrated in

26   their Motion, Hubbard's analysis says nothing about the effect that this diversity could have on

27   public guidance or the ongoing growth of the Company.  Motion at 20-21.  Instead, Hubbard's

28   assessment is based solely on an examination of the number of customers Oracle had and the impact

1   of that number on Oracle's revenue.  As such, his analysis fails to account for Oracle's vulnerability

2   to any segment-specific economic slowdowns, and thus amounts to an irrelevant assessment of

3   Oracle's customer base and its diversity.  *Id.*

4          To demonstrate the significance of Hubbard's flawed analysis, plaintiffs point to a statement

5   from defendant Henley at the end of the quarter that the dot.com sector contributed to Oracle's miss.

6   Motion at 21.  Plaintiffs do not, as defendants claim, attempt to use this statement as "ex-post

7   evidence" to show that defendants' prior statements were unreasonable (which they were).  Rather,

8   plaintiffs use this quote to illustrate that Oracle's guidance could be affected by a single sector of the

9   market, which undermines the reliability of Hubbard's analysis.  Given defendants' ultimate

10  concession that a slowdown in one specific segment did in fact have an impact on Oracle's miss,

11  Hubbard's failure to adequately address the vulnerability of Oracle's guidance renders his opinion

12  completely unreliable and irrelevant.

13          **I.        Hubbard's Opinions Invade the Province of the Jury**

14         Plaintiffs' Motion established that Hubbard's opinions regarding the "reasonableness" of

15  defendants' statements are "at worst, rank speculation; [and] at best, they are credibility choices that

16  are within the province of the jury."  *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1999).  By

17  attempting to define whether defendants' actions were "reasonable," Hubbard is effectively opining

18  that defendants' statements did not violate the securities laws.  *See Thompson v. State Farm Fire &*

19  *Cas. Co.*, 34 F.3d 932, 939 (10th Cir. 1994).  Defendants do not dispute this point.

20         Defendants claim that Hubbard is not opining on what defendants subjectively believed –

21  which they concede is a question for the trier of fact – but rather, whether their statements were

22  objectively reasonable in light of information known at the time.  Opp. at 17.  But defendants cannot

23  credibly dispute that Hubbard's opinions address questions of law and fact that must be left to the

24  jury.  *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000).

25

26

27

28

1

## III.    CONCLUSION

2       For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs'

3  motion to exclude the expert testimony of R. Glenn Hubbard.

4  DATED:  October 10, 2007                    Respectfully submitted,

5                                              COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
6                                              MARK SOLOMON
                                               DOUGLAS R. BRITTON
7                                              STACEY M. KAPLAN

8

9                                                      s/DOUGLAS R. BRITTON
                                                    DOUGLAS R. BRITTON
10
                                               655 West Broadway, Suite 1900
11                                             San Diego, CA  92101
                                               Telephone:  619/231-1058
12                                             619/231-7423 (fax)

13                                             COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
14                                             SHAWN A. WILLIAMS
                                               WILLOW E. RADCLIFFE
15                                             MONIQUE C. WINKLER
                                               ELI R. GREENSTEIN
16                                             100 Pine Street, Suite 2600
                                               San Francisco, CA  94111
17                                             Telephone:  415/288-4545
                                               415/288-4534 (fax)
18
                                               Lead Counsel for Plaintiffs
19
   S:\CasesSD\Oracle3\Refiled Pleadings\BRF00045338_Reply Hubbard.doc
20

21

22

23

24

25

26

27

28

1

2

<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on October 10, 2007, I electronically filed the foregoing with the Clerk

3

4

of the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List.

5

6

        I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on October 10, 2007.

7

8

                                        s/DOUGLAS R. BRITTON
                                        DOUGLAS R. BRITTON

9

10

                                        COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP

11

                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101-3301
                                        Telephone:  619/231-1058

12

                                        619/231-7423 (fax)

13

                                        E-mail: dougb@csgrr.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com
- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com
- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com
- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com
- **Stacey Marie Kaplan**
  SKaplan@csgrr.com
- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com
- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com
- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com
- **William S. Lerach**
  e_file_sd@lerachlaw.com
- **James C. Maroulis**
  jim.maroulis@oracle.com
- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com
- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com
- **Brian P Murray**
  bmurray@rabinlaw.com
- **Shinyung Oh**
  shinyungoh@paulhastings.com
- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com
  ,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com
- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com
- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Dorian Daley**
500 Oracle Parkway
Redwood City, CA 94065

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111