COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
skaplan@csgrr.com
       – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
moniquew@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) | Master File No. C-01-0988-MJJ |

This Document Relates To:

ALL ACTIONS.

Master File No. C-01-0988-MJJ

<u>CLASS ACTION</u>

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GEORGE FOSTER

DATE:            November 16, 2007
TIME:            1:30 p.m.
COURTROOM:   The Honorable
                      Martin J. Jenkins

**PREVIOUSLY FILED ON SEPTEMBER 10, 2007
(DOCKET NO. 1083)**

1

**TABLE OF CONTENTS**

2

**Page**

3

I.     INTRODUCTION ........................................................................................1

4

II.    ARGUMENT .............................................................................................1

5

A.    Foster's Opinions Are Biased and Therefore Unreliable.........................1

6

B.    Foster's Lack of Fundamental Knowledge of the Facts Undermines the
       Reliability of His Opinions ...................................................................3

7

8

C.    Foster's Failure to Consider Relevant Facts Renders His Opinions
       Unreliable..........................................................................................6

9

       1.    Foster's Failure to Analyze Ellison's Directive...........................6

10

       2.    Foster Failed to Consider the Reliability of the Historical
             Conversion Ratio that Formed the Basis of Oracle's Guidance ..........8

11

12

       3.    Foster Failed to Consider the Macroeconomic Conditions Facing
             Oracle in 3QFY01 ...................................................................9

13

D.    Foster's Opinions Based on His Definition of a "Reasonable Forecast
       Process" Should Be Excluded Under *Daubert* ....................................10

14

15

E.    Foster's Opinions Based on Securities Analysts Should Be Excluded.................11

16

F.    Foster's Regression Analysis to Study Intra-Quarter Revenue Is Unreliable........13

17

G.    Foster's Regression Analysis to Study Intra-Quarter Pipeline Growth Is
       Unreliable.........................................................................................14

18

H.    Foster's Opinions Are Duplicative and Should Be Excluded..............................14

19

III.   CONCLUSION..........................................................................................15

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Beam v. Stewart*,
  845 A.2d 1040 (Del. 2004) ................................................................................2

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ...........................................................................6

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993).................................................................................. *passim*

*Dunn v. Sears, Roebuck & Co.*,
  639 F.2d 1171 (5th Cir. 1981) ...........................................................................3

*Folden v. Washington State Department of Social & Human Services*,
  744 F. Supp. 1507 (W.D. Wash. 1990)...............................................................3

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*,
  No. 5:96:MD:1122, 1999 U.S. Dist. LEXIS 17153
  (W.D. Mich. Sept. 29, 1999)...............................................................................3

*In re Oracle Corp. Derivative Litig.*,
  824 A.2d 917 (Del. Ch. 2003)....................................................................1, 2, 3

*Keystone Mfg. Co. v. Jaccard Corp.*,
  394 F. Supp. 2d 543 (W.D.N.Y. 2005) ...............................................................4

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999).......................................................................................9, 12

*Manning v. Crockett*,
  No. 95 C 3117, 1999 WL 342715 (N.D. Ill. May 18, 1999) ...........................4, 5

*Mukhtar v. Cal. State Univ.*,
  299 F.3d 1053 (9th Cir. 2002) .........................................................................2, 11

*PRS Benefits v. Central Leasing Management*,
  No. 3:03-CV-1183-B, 2004 U.S. Dist. LEXIS 24135
  (N.D. Tex. Nov. 29, 2004) ...................................................................................6

*Seeley v. Hamilton Beach/Proctor-Silex, Inc.*,
  349 F. Supp. 2d 381 (N.D.N.Y. 2004) ...............................................................5

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996)..............................................................................14

*Target Mkt. Publ'g v. ADVO, Inc.*,
  136 F.3d 1139 (7th Cir. 1998) ...........................................................................6

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
  878 F.2d 791 (4th Cir. 1989) ............................................................................10

1

2                                                                                                    **Page**

3   *Trigon Ins. Co. v. United States*,
              204 F.R.D. 277 (E.D. Va. 2001) ...............................................................................3, 4, 5
4
     *U.S. Info. Sys. v. IBEW Local Union No. 3*,
5            313 F. Supp. 2d 213 (S.D.N.Y. 2004)..............................................................................7

6   **STATUTES, RULES AND REGULATIONS**

7   Federal Rules of Civil Procedure
              Rule 26.......................................................................................................................4
8            Rule 26(a)(2)(B)........................................................................................................4

9   Federal Rules of Evidence
              Rule 403.............................................................................................................14, 15
10           Rule 702.......................................................................................................1, 4, 6, 7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      INTRODUCTION

        Defendants' opposition offers little challenge to the numerous shortcomings that plaintiffs highlighted in their Motion to Exclude the Expert Testimony of George Foster ("Motion" or "Mot."). As plaintiffs demonstrated in their Motion, Foster failed to satisfy his obligations under Federal Rule of Evidence 702 and under the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  He possesses the same "bias-creating relationships" that the Delaware Court of Chancery recognized in the derivative litigation and he lacks fundamental knowledge of the facts underlying his opinions because he failed to independently verify or adequately analyze the opinions presented in the report that defendants' litigation consultant prepared for him to sign.  *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 948 (Del. Ch. 2003). In fact, Foster failed to consider critical facts that undermined Oracle's forecast process and rendered his opinions unreliable and manufactured.  Defendants' opposition does not credibly rebut these facts.  The combined weight of Foster's shortcomings requires the exclusion of his opinions.

II.     ARGUMENT

        A.      **Foster's Opinions Are Biased and Therefore Unreliable**

        Plaintiffs established in their Motion that Foster has connections to Oracle, its directors and executives that undermine his reliability.  Mot. at 5-8.  Defendants have done nothing to rebut this argument.  In fact, they do not dispute (and therefore concede) that Foster possesses the very same "bias-creating relationship[]" that the Delaware Court of Chancery condemned in the derivative case. *Oracle Derivative*, 824 A.2d at 948.  Instead, they claim that Foster is "[u]nbiased" because plaintiffs cannot prove that these relationships "affected Professor Foster's opinions."  Defendants' Opposition to Plaintiffs' Motion to Exclude Expert Testimony of George Foster ("Opp.") at 1, 3-6. And they emphasize that Foster works "in [a] different department[]" as purported proof that Foster's opinions will not be infected by his professional relationships.  *Id.* at 4.  The Delaware Court of Chancery correctly rejected these very same arguments when it rejected the conflicted SLC:

        Even though Boskin ***was in a different academic department*** from either SLC member, it is reasonable to assume that the fact that Boskin was also on faculty would – to persons possessing typical sensibilities and institutional loyalty – be a matter of more than trivial concern. . . .  Although they were not responsible for fundraising, as sophisticated professors ***they undoubtedly are aware of how***

*important large contributors are to Stanford, and they share in the benefits that come from serving at a university with a rich endowment*.

*Oracle Derivative*, 824 A.2d. at 942-43.[1]   The court found the SLC lacked independence because "requiring SLC members to consider accusing a fellow professor and two large benefactors of their university of conduct that is rightly considered a violation of criminal law was unnecessary and inconsistent with the concept of independence recognized by our law."  *Id*. at 921.  The same lack of independence here has caused Foster to dispute credible evidence, ignore evidence, advance theories designed solely for this litigation and adopt a report prepared by defendants' litigation consultant without independently analyzing the opinions presented in that report.  Foster's "bias-creating relationships" (*id*. at 948) have obviously affected his opinions.[2]

Defendants attempt to distinguish the Delaware Chancery Court's findings of bias by asserting that the legal standard there was different.  Opp. at 5.  They argue that these findings should not apply here "because of the unique nature of the committee's power [in the derivative case] and the need to ensure that the committee's objectivity cannot be reasonably questioned."  *Id*.  But defendants have not explained how those overriding concerns do not apply to expert witnesses who can have significant influence on a jury by virtue of their "aura of authority."  *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002).  There is no difference here in principal or potential effect.  The findings of the Delaware Court reflect a proper concern that a real potential for bias emanates from the same types of relationships present here.  *Oracle Derivative*, 824 A.2d at 942-43, 947-48.[3]

---

[1]    Unless otherwise noted, all emphasis is added and citations and footnotes are omitted.

[2]    Contrary to defendants' argument, the Delaware Supreme Court in *Beam v. Stewart*, 845 A.2d 1040 (Del. 2004), did not distance itself from the findings of bias in *Oracle*.  Opp. at 5 n.5.  In fact, the Delaware Supreme Court in *Beam* even referenced *Oracle* and stated "[a]side from the procedural distinctions, the Stanford connections in *Oracle* are factually distinct from the relationships present here."  *Beam*, 845 A.2d at 1055.  There is also no irony in plaintiffs' reliance on the Delaware Chancery Court's opinion.  Opp. at 5 n.4.  The Delaware summary judgment opinion, on which defendants rely heavily, is irrelevant to the analysis given the plethora of additional and compelling facts, evidence and arguments presented in this case.

[3]    Defendants' argument that Foster's bias is somehow less important because this "Court is not being asked to enter judgment for defendants solely on the basis of Professor Foster's testimony" is

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GEORGE FOSTER - C-01-0988-MJJ                                                            - 2 -

Defendants have cited no authority for the proposition that bias is not a proper consideration in an overall assessment of reliability under *Daubert*.  Opp. at 5-6.  In fact, they rely on *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1174 (5th Cir. 1981) and *Folden v. Washington State Department of Social & Human Services*, 744 F. Supp. 1507, 1522 (W.D. Wash. 1990), for the proposition that a biased expert is not ***necessarily*** precluded from qualification.  *Id.*  But nothing in *Dunn* or *Folden* holds that bias is not a proper *Daubert* consideration.  In fact, *Folden* notes that an expert's lack of independence destroys his credibility.  *Id.*

**B.    Foster's Lack of Fundamental Knowledge of the Facts Undermines the Reliability of His Opinions**

Plaintiffs established in their Motion that Foster's opinions should be excluded because they are not his own.  Mot. at 8-12.  His lack of fundamental knowledge of the case and the contents of his report reveal that he did not independently analyze the case as presented in the report that Analysis Group ("AGE") drafted for him to sign.  *Id.*  The law is clear that under these circumstances, the expert must be excluded – "if opinions expressed in an expert report are not the opinions of the expert, the expert will not be able to satisfy the requirements of [Fed. R. Evid.] 702 and *Daubert* that the report be based on the expert's own valid reasoning and methodology." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 294 (E.D. Va. 2001).  This is especially true where, as here, the expert does not investigate the opinions in a report prepared by others for the expert to sign. *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, No. 5:96:MD:1122, 1999 U.S. Dist. LEXIS 17153 (W.D. Mich. Sept. 29, 1999).

Here, defendants cannot credibly dispute that Foster had limited involvement in preparing the report.  Opp. at 6-7.  And it showed at Foster's deposition.  While defendants characterize Foster's level of knowledge as "commendable" (Opp. at 8), even a cursory review of his deposition transcript reveals otherwise.  Foster had difficulty recalling the contents of his report and did not know even the most basic concepts that were necessary to form an opinion on Oracle's forecasting process.

absurd.  Opp. at 5.  Defendants will rely on Foster's opinions at trial to do exactly that. Nevertheless, the Court should be extremely concerned with Foster's bias because it will cause unreliable opinions to influence the jury, in violation of *Daubert*.  509 U.S. at 589.

1  Mot. at 10-12.  In fact, Foster gave testimony conflicting with the opinions contained in his report on

2  several occasions.  *Id*. at 12.  The root cause is obvious: Foster did not investigate or independently

3  analyze the opinions in the report that AGE prepared for him.[4]

4          Despite his lack of knowledge, defendants point to Foster's testimony explaining that "he

5  'drafted the report in the sense of every word [he] changed or ran with'" and that "'[he] did an

6  extensive draft at the outset.'"  Opp. at 6.  Like Foster's opinions, these arguments are fundamentally

7  flawed.  Even defendants' own authority condemns the "I changed or ran with every word" approach

8  where the expert does not do the work necessary to independently verify the facts and opinions in the

9  report – "preparing the expert's opinion from whole cloth and then asking the expert to sign it if he

10  or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the

11  report." *Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715, at *3 (N.D. Ill. May 18, 1999).[5]

12          Defendants' attempt to reduce *Daubert* to a mere formality fails.  Opp. at 6.  They argue that

13  Foster's report "should be admitted" because he complied with Fed. R. Civ. P. 26 by signing his

14  report and including a statement of information considered in forming his opinions.  *Id.  Daubert* and

15  Fed. R. Evid. 702 clearly require more.  Defendants' authority does not hold otherwise.  Opp. at 6-7.

16  *Keystone Mfg. Co. v. Jaccard Corp*., 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005) (expert not

17  excluded where "there is no persuasive evidence that [the expert] was ***not*** substantially involved in

18  preparing the report"); *Trigon*, 204 F.R.D. at 295 (finding insufficient evidence to prove that the

19  expert's report was authored by someone else because AGE destroyed the relevant documentation);

20

21  [4]      Defendants attempt to minimize the role of AGE by asserting that the *Trigon* court "made no
findings that Analysis Group had engaged in improper conduct."  Opp. at 7 n.6.  Defendants are
22  wrong.  The *Trigon* court found that AGE's likely destruction of documents warranted "adverse
inferences respecting the substantive testimony and credibility of the experts" at trial, and that AGE
23  was foreclosed from "further participation in any aspect of the development and presentation of . . .
expert testimony."  *Trigon*, 204 F.R.D. at 291.

24  [5]      Foster's testimony that he "did an extensive draft at the outset" is contradicted by the record.
25  Foster testified that he devoted a mere 16 hours (two days) to this case prior to receiving
Dr. Goedde's report.  Declaration of Douglas R. Britton in Support of Plaintiffs' Motion to Exclude
26  the Expert Testimony of George Foster ("Britton Decl."), Ex. 2 at 5:22-6:4, 19:25-20:2 (all "Ex."
references are to the Britton Decl.).  There is simply no way for Foster to have developed the type of
27  knowledge that would have been required to provide an "extensive draft at the outset" given this
limited involvement.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-MJJ                                              - 4 -

1   *Manning*, 1999 WL 342715, at *3 ("Preparation implies involvement other than perusing a report

2   drafted by someone else and signing one's name at the bottom to signify agreement.").

3      Defendants' arguments about Foster's knowledge fare no better. Opp. at 7-8. Defendants

4   argue that he "demonstrated that he has sufficient foundation for his opinions based on the

5   information contained in his report." *Id*. at 7. But what is in the report cannot save Foster as the

6   opinions are not his own. Defendants' next argument is that "'skimm[ing]'" documents and relying

7   on litigation consultants because of timing issues does not indicate a lack of foundation sufficient to

8   warrant exclusion. *Id.* They again miss the point. What indicates a lack of foundation is Foster's

9   lack of knowledge showing that the opinions in the report are those of AGE and not Foster. Even if

10  they were Foster's opinions, however, they would be unreliable because the selection of documents

11  by defendants and AGE caused Foster to ignore relevant categories of the record necessary to reach

12  an independent and informed opinion. *See* §II.C., *infra*.[6]

13     Plaintiffs showed in their Motion that Foster lacked knowledge of basic facts that were

14  necessary for his opinions. Mot. at 8-12. Defendants have failed to present any legitimate rebuttal.

15  Instead, they respond by arguing that "*Daubert* does not require that the expert pass plaintiffs'

16  memory test." Opp. at 8. Defendant's argument fails for two reasons: (1) *Daubert* ***does*** require an

17  expert to render a relevant and reliable opinion, which requires a working knowledge of relevant

18  facts; and (2) plaintiffs' "memory test" was nothing more than an inquiry into Foster's knowledge of

19  facts that he certainly should have known if the opinions in his report were his own. Mot. at 10-12.

20  Defendants suggest that Foster does not need to know facts "from a record that spans millions of

21  pages and more than 150 deposition transcripts." Opp. at 8. But Foster's lack of knowledge was not

22  about obscure facts buried in the record; rather, it was about elementary facts germane to his

23  opinions. Tellingly, defendants do not even mention those specific facts Foster could not recall and

24

25  _____

    [6]   *Seeley v. Hamilton Beach/Proctor-Silex, Inc*., 349 F. Supp.2d 381 (N.D.N.Y. 2004), is not
26  persuasive. Opp. at 7. The *Seeley* court found that the claim that the expert assumed facts was
    unsupported, and that a review of toaster schematics was not necessary because it was such a simple
27  device. *Seeley*, 349 F. Supp.2d at 387. Here, exclusion is warranted because Foster failed to take
    into consideration numerous foundational facts, as detailed above.

28

1    instead respond with a handful of facts that, in no way, offset the overwhelming amount of evidence

2    that Foster knows nothing about.  Mot. at 10-12.[7]

3    ### C.   Foster's Failure to Consider Relevant Facts Renders His Opinions Unreliable

4            This case demonstrates the very reason why an expert should not merely adopt the opinions

5    of others – Foster failed to consider relevant facts that, if measured, would have at least had a

6    bearing on the outcome of his opinions.  The law is clear.  An expert must be excluded where he

7    fails to adequately account for obvious alternative explanations.  *See* Fed. R. Evid. 702, advisory

8    committee's notes.  Courts have routinely excluded expert opinions where the expert has failed to

9    consider necessary information.  *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039,

10   1056 (8th Cir. 2000) (exclusion where proposed expert had not considered all relevant evidence);

11   *Target Mkt. Publ'g v. ADVO, Inc.*, 136 F.3d 1139, 1143 (7th Cir. 1998) (excluding testimony based

12   on mere speculation).  That is exactly what Foster has done in this case.

13   ### 1.   Foster's Failure to Analyze Ellison's Directive

14           Plaintiffs showed in their Motion that Foster's opinions should be excluded because he failed

15   to account for the fact that Oracle's forecast process had changed prior to 3Q01 as a result of

16   Ellison's 2Q01 directive to increase the risk in the Field Forecast.  Mot. at 13.  Instead of analyzing

17   how that change could have affected the forecasting process and the reliability of public guidance,

18   Foster elected to dispute the evidence and nothing more.  *Id.*  He employed no methodology in

19   reaching his opinions and instead played the role of oath-helper by denying that Ellison gave the

20   directive or, if he did, that the sales representatives followed it.  *Id.*

21           Defendants argue for the first time that Foster did conduct an analysis to see if the directive

22   was issued and followed.  Opp. at 9.  But the paragraphs that they cite do nothing more than compare

23   the Field Forecast to analyst consensus estimates, which in no way would have revealed whether or

24

25   _____

26   [7]      Defendants' reliance upon *PRS Benefits v. Central Leasing Management*, No. 3:03-CV-1183-
     B, 2004 U.S. Dist. LEXIS 24135 (N.D. Tex. Nov. 29, 2004), is misplaced.  Opp. at 8.  In *PRS*, the

27   court held that a witness need not have a photographic memory to be reliable.  Foster had the polar
     opposite of a photographic memory in this case.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-MJJ                                               - 6 -

1    not Ellison's directive was given or followed.  *Id.*  In fact, Foster testified that he did not conduct an

2    analysis of the directive because he did not believe that it occurred:

3         Q:     Okay.  Now, did you do any testing to see if there was, in fact, any additional
              risk put into the field forecast?

4

                                    *        *        *

5

6         THE WITNESS:      The testing I did was to look at, I mean, what were the
              statements of the people, the key people.  And I didn't see any evidence that they
              were saying that was occurring.

7

8    Declaration of Douglas R. Britton in Support of Plaintiffs' Reply in Further Support of Their Motion

9    to Exclude the Expert Testimony of George Foster ("Britton Reply Decl."), Reply Ex. A at 118:14-

     21.[8]

10

11        Defendants dismiss Foster's failure to conduct any meaningful analysis by, again, denying

12   that Ellison directed the Field Forecast to include more risk.  Opp. at 8.  Simply denying the record is

13   insufficient to satisfy *Daubert's* requirements, particularly where, as here, ample evidence reveals

14   that Ellison gave the directive.[9]  Foster's refusal to consider relevant evidence is not tantamount to a

15   disagreement among experts, as defendants argue.  Opp. at 9.  Had Foster considered the evidence

16   and reached a different conclusion, then that would qualify as a disagreement.  But he blindly

17   adhered to defendants' point of view without conducting any analysis of "obvious alternative

18   explanations."  Fed. R. Evid. 702, advisory committee's notes.  His opinions are consequently

19   unreliable.[10]

20

21

22

     _____

23   [8]     All "Reply Ex." references are to the Britton Reply Decl.

24   [9]     Defendants try to avoid the reality that Foster employed no methodology by challenging
         plaintiffs' citations to Dr. Goedde's reports because they claim the report is not "record evidence."
25       Opp. at 8.  Defendants are wrong.  Dr. Goedde's report contain cites to the record as does plaintiffs'
         Motion.  Mot. at 13.
26

27   [10]    Absent a disagreement, defendants' reliance upon *U.S. Info. Sys. v. IBEW Local Union No. 3*,
         313 F. Supp. 2d 213, 231 (S.D.N.Y. 2004), is misplaced.  Opp. at 9.
28

## 2. Foster Failed to Consider the Reliability of the Historical Conversion Ratio that Formed the Basis of Oracle's Guidance

Defendants do not dispute that Foster did not study the reliability of the conversion ratio that Minton used for purposes of establishing the Potential Forecast. Opp. at 9-10. This admission should end the analysis. By failing to analyze the reliability of the very metric that Foster testified was "one factor that you use" (and that he admitted was used by Minton), he employed an unreliable methodology that serves to exclude his opinions. Ex. 1 at 22, ¶54; Ex. 2 at 85:8-86:1.

Defendants argue that there was no reason for Foster to test the reliability of the conversion ratio because they dispute that the historical conversion ratio formed the basis of the Potential Forecast. Opp. at 9-10. But disputing the evidence does not satisfy their burden of establishing that Foster's opinions were based on reliable methodologies. Foster offered an opinion that "the use of historical Conversion Ratios as a check on the reasonableness of the current forecast was a strength of Oracle's forecasting process." Ex. 1 at 22, ¶54. When Foster decided to offer this opinion, it was incumbent on him to study the accuracy of that check. This is especially true since a number of changes undermined the accuracy of the historical conversion ratio analysis. Mot. at 15-16. His failure to do so undermines the reliability of his opinions.[11]

Defendants' denial that Minton based her Potential Forecast on the historical conversion ratio analysis is demonstrably false. Opp. at 10 n.8. Minton testified that it formed the basis of her upside adjustments. Reply Ex. B at 135:7-136:12. Ellison testified that Oracle's forecast was based on an extrapolation. Reply Ex. C at 384:6-385:7; Reply Ex. D at 211. And Minton confirmed it in a 2002 e-mail: "***By evaluating historical trends, Jeff and I would be able to determine what the true forecast was by applying historical conversion rates to the pipeline***." Reply Ex. E. In fact, Dr. Goedde's supplemental analysis shows that a calculated forecast based on the prior year's conversion rate tracked almost identically Minton's Potential Forecast between 3QFY00 and 3QFY01. The Declaration of Alan G. Goedde in Support of Plaintiffs' Opposition to Defendants'

---

[11]     Defendants again attempt to refute the evidence because plaintiffs cited Dr. Goedde's report. Opp. at 9. But Dr. Goedde's report contains cites to the record that readily support his opinions.

Motion for Summary Judgment ("Goedde Decl."), ¶¶3-5 & Exs. 1-3.  There is conclusive evidence that defendants' denials are baseless.  Foster's failure to analyze the reliability of the conversion ratio requires his exclusion.[12]

### 3.   Foster Failed to Consider the Macroeconomic Conditions Facing Oracle in 3QFY01

Plaintiffs established in their Motion that Foster's methodology was unreliable because he failed to consider the economic change facing Oracle in 3QFY01.  Mot. at 16.  Defendants have not (and cannot) credibly challenge this contention.  Instead, they argue that "macroeconomic change[]" is irrelevant to Foster's opinions because he "concluded that Oracle's forecasting process included appropriate mechanisms to take into account changes in macroeconomic conditions."  Opp. at 10.  Defendants' argument is flawed for several reasons.

First, it ignores the weight of evidence revealing that the Potential Forecast was a year-over-year extrapolation based on the prior year's conversion ratio and that Ellison himself testified that changing economic conditions would render Oracle's forecast process unreliable as a result.  *See* §II.C.2., *supra*; Reply Ex. C at 384:6-385:7.  It was inexcusable for Foster to disregard macroeconomic conditions given Ellison's testimony.  Second, Foster's conclusion about macroeconomic information informing the sales process is itself based on flawed methodology.  Foster failed to cite to any evidence demonstrating that economic information was incorporated into Oracle's forecast process as he suggests or, if it was, that adjustments for the changing economic conditions were still not required.  Mot. at 21-23.[13]  Third, Foster's conclusion is directly belied by

---

[12]   Defendants argue that the Potential Forecast in the first two quarters of FY01 proves that Minton did not base the projection "solely on the prior year's conversion ratio" because it projected a conversion rate lower than the prior year's conversion rate.  Opp. at 10 n.8.  For this reason, defendants argue that "there was no reason for Professor Foster to separately 'study the reliability of the historical conversion ratio.'"  *Id.*  Defendants are wrong.  While the Potential Projection and the conversion ratio analysis did not produce identical forecasts, they were 97% correlated with 94% of any variations in the Potential Forecast explained by similar variations in the conversion ratio forecast.  Goedde Decl., ¶5 & Exs. 2-3.  Even if defendants' denial had evidentiary support, however, Foster opined that the historical conversion ratio analysis was "a strength of Oracle's forecasting process."  Ex. 1 at 22, ¶54.  This opinion required Foster to study its reliability.

[13]   Defendants concede that the testimony on which Foster relied "did not include specifics as to what each particular customer explained to each salesperson."  Opp. at 11.  But they add, without

1  Henley who testified that Oracle did not "test [its] customer[s] to see what they really think about

2  their business and what they really think about the economy."  Reply Ex. F at 206:5-9.[14]

3          **D.      Foster's Opinions Based on His Definition of a "Reasonable Forecast Process" Should Be Excluded Under _Daubert_**

4

5          Foster invented three criteria tailored to support his opinion that Oracle's forecast process

6  was reasonable.  Mot. at 17.  Defendants insist that the methodology that Foster used to define a

7  "reasonable forecast process" was reliable because it stems from his "twenty-plus years in

8  academia."  Opp. at 12.  But defendants cannot legitimately dispute that Foster has not studied or

9  evaluated a forecast process using this criteria.  _Id._  In fact, the best they can offer is that he used it

10  once before in the _AT&T_ litigation.  _Id_. at 13 n.11.  But defendants' own authority rejects prior

11  litigation as a basis for reliability.  _Thomas J. Kline, Inc. v. Lorillard, Inc._, 878 F.2d 791, 800 (4th

12  Cir. 1989).

13          Foster's criteria are fundamentally flawed.  He testified that his criteria have not been subject

14  to peer review and that he has never checked with another scholar as to whether these criteria are

15  reasonable. Ex. 2 at 98:24-25.  Given that Foster's forecasting qualifications are limited to academic

16  studies, the failure to have his criteria peer-reviewed alone justifies his exclusion.  Defendants argue

17  that Foster's analysis grows naturally out of his academic experience, but point to no evidence that

18  Foster's criteria have been determined to be accurate or used in an academic setting.  Opp. at 12-13.

19  Foster's application of a novel standard is simply not reliable under _Daubert_, particularly as

20  _____

21  any support, that "it was more than sufficient for Professor Foster to opine that 'by virtue of relying on sales representatives' estimates of likely purchases by potential customers, Oracle's forecasting

22  process incorporated relevant macroeconomic, product, and customer information.'"  _Id._  Why? Because Foster said so?  This is the very type of _ipse dixit_ of an expert that courts routinely exclude

23  as unreliable and irrelevant.  _Kumho Tire Co. v. Carmichael_, 526 U.S. 137, 157 (1999).  Indeed, Foster's opinion is rank speculation because he failed to consider any evidence at the sales

24  representative level.  Even if sales representatives were cognizant of economic conditions, however, adjustments for changing economic conditions were still required given the imperfect information

25  that sales representatives may have received.

26  [14]      Foster's opinions should also be excluded because defendants did not produce documents from Oracle's sales representatives. Mot. at 22-23.  Defendants cannot benefit from their discovery

27  positions and document destruction by asserting that "nothing precluded plaintiffs from deposing these individuals."  Opp. at 11-12 n.10.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-MJJ                                                      - 10 -

1    defendants admit that Foster has not even used these criteria in any of his prior academic writings.

2    *Id*. at 13.  Foster's forecasting criteria are nothing more than "junk science."  *Mukhtar*, 299 F.3d at

3    1063.

4            Defendants' argument that Foster's forecasting criteria grow naturally out of research that he

5    did in *Financial Statement Analysis* is directly undermined by Foster's testimony.  Opp. at 12-13.  In

6    fact, Foster testified that his criteria had not been subject to peer review or subject to any scrutiny by

7    the academic community.  Ex. 2 at 97:24-98:4, 98:24-25.  If defendants' argument had any merit,

8    Foster would certainly have said so in his deposition.  The reason that he did not is evident from a

9    review of the chapters that defendants cite.  Opp. at 12-13.  They argue that sections from Foster's

10   textbook show that the criteria that he offers in this case "flow[]" from his previous writings.  *Id.*

11   But the sections that defendants cite study the accuracy of ***security analyst*** forecast approaches and

12   do not mention any of the criteria that Foster offers in this case.  Opp. at 12-13; Declaration of

13   Andrew M. Farthing in Support of Defendants' Opposition to Plaintiffs' Motion to Exclude Expert

14   Testimony of R. Glenn Hubbard the George Foster ("Farthing Decl."), Ex. 7 at 264-71, 285-86.[15]

15        **E.      Foster's Opinions Based on Securities Analysts Should Be Excluded**

16           Foster opined that Oracle's forecast process was reasonable because its internal projections

17   did not diverge from the models of securities analysts.  Mot. at 18-20.  In doing so, he unreliably

18   considered facts and data outside of Oracle to prove what was known within Oracle.  *Id.*  Because

19   they cannot deny that he did so, defendants argue that plaintiffs' mischaracterize Foster's opinion.

20   Opp. at 14.  But Foster's report was clear.  He attempted to prove that Oracle's forecasting process

21   took market information into consideration by citing securities analyst projections and anecdotal

22   commentary to support his opinion.  Ex. 1 at 25, ¶62.  This methodology is unreliable and

23   unacceptable given that Foster had access to internal information with which to test the same

24

25   [15]      The authoritative source (Professor Armstrong) relied upon by plaintiffs' expert, Dr. Goedde,
26   does not save defendants.  Opp. at 12-13.  In fact, the criteria that Foster hand-selected for this case
     are not among the list of principles that represent the foundations of forecasting outlined in Professor
27   Armstrong's writings.  Farthing Decl., Ex. 31 at 7-8.  The general references to the importance of
     reliable data mentioned by Professor Armstrong do not help defendants.  *Id*. at 686, 709-18.

28

1  proposition.  And to make his opinions even more unreliable, he did not cite any testimony from or

2  interviews with any of the analysts on which he relies.  In fact, he did not inquire of a single analyst

3  about the model that they used, what influenced their decisions, who they spoke to, why they spoke

4  to those individuals, or why not.  Foster's methodologies were therefore unreliable and his opinions

5  should be excluded under *Daubert*.  Opp. at 13-15.

6        Defendants argue that evaluating this information was unnecessary because Foster was

7  merely comparing analyst projections with Oracle's.  *Id*. at 14 n.12.  But knowing how the analysts

8  covering Oracle developed their models was absolutely necessary to inform Foster's opinion.  *Id*.

9  Without knowing the basics of how these analysts modeled Oracle's projections, Foster's opinion

10  amounts to rank speculation and should be excluded.  *Daubert*, 509 U.S. at 589.[16]  Foster's opinions

11  should also be excluded because he did not employ the same level of intellectual rigor that he used in

12  his academic work.  When he studied the models of security analysts for his textbook, *Financial*

13  *Statement Analysis*, **he spoke to the analysts**.  Mot. at 19.  By failing to do so here, he did not

14  employ the same level of intellectual rigor that characterizes even his own practices.  *See Kumho*

15  *Tire*, 526 U.S. at 152 (*Daubert* requires the trial court to assure itself that the expert "employs in the

16  courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

17  relevant field.").[17]

18  _____

19  [16]     Had he inquired, he would have discovered what Ellison knew – that securities analysts rely
    on little more than company data.  Reply Ex. D at 262 ("[w]hat most analysts say about your
20  company has more to do with the financial results of your last couple of quarters than anything
    else"); *id*. at 431 ("'[a]nalysts don't try to foretell the future; they try to explain the recent past . . .
21  they just look at the numbers'").  Ellison's testimony directly undermines Foster's reliance on the
    models of securities analysts.

22  [17]     Defendants' attempt to avoid the damaging nature of Foster's writings in *Financial Statement*
23  *Analysis* is unpersuasive.  Opp. at 14.  Foster's writing was clear that projections of security analysts
    suffer from numerous infirmities that undermine his reliance on those projections.  Mot. at 18-19.
24  Defendants try to rebut those findings by emphasizing that analysts suffer penalties only "when the
    consensus subsequently turns out to be correct."  *Id*.  But they ignore Foster's finding that these
25  potential penalties result in analysts making "forecasts that diverge less from the consensus than
    what they would report in the absence of these penalties."  Opp. at 14; Farthing Decl., Ex. 7 at 289.
26  This finding directly undermines Foster's use of analysts in this case.  Ex. 1 at 25, ¶62.  Had Foster
    relied on evidence from (or discussion with) the analysts that covered Oracle, he would have a
27  foundation for opining on what one could expect from the models of security analysts.  By failing to
    do so, he is simply speculating.

28

Defendants cannot dispute that their own expert questions the reliability of the very source on which he relies to offer opinions in this case.  But defendants argue that Foster's reliance was proper because economists, and even Dr. Goedde, rely on information from analyst reports to form opinions.  Opp. at 15.  But Foster's opinion does not rely on information contained in analyst reports, which can be verified for accuracy.  It makes assumptions about the financial models of security analysts without knowing what formed the basis of those models.  For that reason, defendants' argument is unpersuasive.  *Id*.  Defendants cannot carry their burden to show that Foster's opinions are based on reliable methodologies.

**F.    Foster's Regression Analysis to Study Intra-Quarter Revenue Is Unreliable**

Foster developed his regression analysis to study Oracle's intra-quarter revenue strictly for purposes of this case.  Mot. at 16-17.  He applied novel variables to reach the nonsensical conclusion that revenue in the first two months are unimportant to the quarter unless they can predict revenue in month three.  *Id*.  Foster cited no support, in experience or through academic literature, for this conclusion or for the variables that he selected, and admitted that he created it specifically for purposes of this litigation.  Ex. 2 at 156:4-25.  It should be excluded under *Daubert*.

In any event, results in the first two months were viewed as predictive by defendants.   Ex. 2 at 156:4-25.  Because they are "useful in predicting the quarter," Ellison testified that he relies on monthly results to gauge Oracle's performance.  Reply Ex. G at 286:15-18, 291:22-292:6.  Ellison's testimony therefore undermines Foster's analysis and defendants' arguments, which suggest nothing more that a "Hail Mary" might possibly save the quarter.  Opp. at 15-16.  Courts recognize that "information that strongly implies an important future outcome," as is the case with Oracle's performance and results in December 2000 and January 2001, "is not immune from mandatory disclosure merely because it does not foreordain any particular outcome."  *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1210 (1st Cir. 1996).  Foster's analysis is unreliable and should be excluded under *Daubert* as well as Fed. R. Evid. 403.  Its probative value is nonexistent in light of Ellison's testimony and the applicable legal standards, and it presents a significant danger of confusing the jury.

### G.    Foster's Regression Analysis to Study Intra-Quarter Pipeline Growth Is Unreliable

In their Motion, plaintiffs establish that Foster's regression analysis to study Oracle's pipeline growth was inherently unreliable.  Mot. at 20-21.  Foster admitted as much in his deposition.  *Id.*  Despite Foster's testimony, defendants argue that it is inconsequential that Foster "did not report on the statistical significance of his analysis and used a small data sample" to reach his conclusions. Opp. at 17.  Defendants are wrong.  Small data samples, as Foster concedes, render regression analyses unreliable. Ex. 2 at 194:8-16.  Indeed, Foster admitted that he did not perform regression analyses in other parts of his report because there were not enough data points.  *Id.* at 193:2-194:2.

Defendants argue that "although it is true that more data points generally increases the robustness of a statistical analysis, Professor Foster's finding of a negative coefficient based on his analysis of the six most recent quarters of data prior to Q3 FY01 was sufficient evidence in and of itself to reject Dr. Goedde's hypothesis."  Opp. at 17.  But defendants cite to no authority or evidence suggesting this is the case.  *Id.*  Given the illogical results of Foster's regression (that Oracle's sales rise when its opportunities fall), the "negative coefficient" is meaningless because the data sample was insufficient.  Indeed, Foster himself repeatedly attempted at his deposition to distance himself from this conclusion because the study sample was so small.  Ex. 2 at 184:7-11, 186:7-16, 190:20-191:11.  Foster even failed to perform a necessary "F test" to gauge the reliability of his regression and could not explain whether or not his results were reliable using standard statistical analysis.  Ex. 2 at 185:7-15, 190:20-192:12.  His methodology was unreliable.

### H.    Foster's Opinions Are Duplicative and Should Be Excluded

Plaintiffs' Motion established that Foster's and Hubbard's opinions are duplicative. Mot. at 23-24. Defendants argue to the contrary by claiming that Hubbard "opined on the reasonableness of defendants' statements and Professor Foster responded to plaintiffs' expert regarding the quality of Oracle's forecasting process."  Defendants' Opposition to Plaintiffs' Motion to Exclude Expert Testimony of R. Glen Hubbard at 16.  This is nonsense.  To opine on the reasonableness of defendants' statements, Hubbard had to opine on the reasonableness of the forecasting process

1   behind those statements.  The contents of Hubbard's report show that he did.  Reply Ex. H at 78-104

2   ("Oracle's forecasting process . . . provided a reasonable basis for Oracle's guidance and later

3   statements regarding its performance in 3Q FY2001.").

4          There is no difference between Hubbard's and Foster's opinions concerning Oracle's

5   forecasting process.  Indeed, they performed almost the same analysis using Oracle's Potential

6   Forecast.  Mot. at 23-24.  Tellingly, defendants made no effort to explain the mountain of

7   overlapping opinions, charts and figures contained in Hubbard's and Foster's reports.  *Id.*  Foster's

8   opinions have no probative value since Hubbard gives the same opinions.  If Hubbard's opinions are

9   admitted, Foster's should be excluded under Fed. R. Evid. 403.

10   **III.   CONCLUSION**

11          For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs'

12   Motion to exclude the opinions of Foster.

13   DATED:  October 10, 2007                  Respectfully submitted,

14                                             COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
15                                             MARK SOLOMON
                                               DOUGLAS R. BRITTON
16                                             STACEY M. KAPLAN

17                                                   s/DOUGLAS R. BRITTON
18                                                DOUGLAS R. BRITTON

19                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
20                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)

21                                             COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
22                                             SHAWN A. WILLIAMS
                                               WILLOW E. RADCLIFFE
23                                             MONIQUE C. WINKLER
                                               ELI R. GREENSTEIN
24                                             DANIEL J. PFEFFERBAUM
                                               100 Pine Street, Suite 2600
25                                             San Francisco, CA  94111
                                               Telephone:  415/288-4545
26                                             415/288-4534 (fax)

27                                             Lead Counsel for Plaintiffs

28   S:\CasesSD\Oracle3\Refiled Pleadings\BRF00045330_Foster Reply.doc

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-MJJ                                          - 15 -

1 <u>CERTIFICATE OF SERVICE</u>

2     I hereby certify that on October 10, 2007, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses denoted on the attached Electronic Mail Notice List.

5     I certify under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.  Executed on October 10, 2007.

7
                                          s/DOUGLAS R. BRITTON
8                                        DOUGLAS R. BRITTON

9                                        COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
10                                       655 West Broadway, Suite 1900
                                         San Diego, CA  92101-3301
11                                       Telephone:  619/231-1058
                                         619/231-7423 (fax)
12

13                                       E-mail:dougb@csgrr.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com
- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com
- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com
- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com
- **Stacey Marie Kaplan**
  SKaplan@csgrr.com
- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com
- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com
- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com
- **William S. Lerach**
  e_file_sd@lerachlaw.com
- **James C. Maroulis**
  jim.maroulis@oracle.com
- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com
- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com
- **Brian P Murray**
  bmurray@rabinlaw.com
- **Shinyung Oh**
  shinyungoh@paulhastings.com
- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com
  ,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com
- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com
- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Dorian Daley
500 Oracle Parkway
Redwood City, CA 94065

Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Raymond Lane
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

PRG-Schultz USA, Inc.
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

Darren Jay Robbins
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Sanna Rachel Singer
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111
```