COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
skaplan@csgrr.com
        – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
moniquew@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) Master File No. C-01-0988-MJJ ) ) <u>CLASS ACTION</u> ) |
| This Document Relates To:<br><br>ALL ACTIONS. | ) PLAINTIFFS' REPLY TO DEFENDANTS' ) OPPOSITION TO MOTION TO EXCLUDE ) EXPERT TESTIMONY OF EDWARD ) YOURDON |
| | DATE:         November 16, 2007<br>TIME:         1:30 p.m.<br>COURTROOM: The Honorable Martin J. Jenkins |

**PREVIOUSLY FILED ON SEPTEMBER 10, 2007
(DOCKET NO. 1112)**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. Legal Standard ............................................................................................................2

    B. Yourdon's Opinion Is Not Helpful Because He Excluded Everyone Except IT Professionals from His Analysis of the Issues in Question and Never Opines upon Full Integration ..................................................................................2

    C. Because Yourdon Did Not Form a Reliable Opinion Concerning the Integration of Suite 11i, His Opinion Is Entirely Irrelevant ....................................4

    D. Yourdon's Report and Analysis Are Not Helpful to the Trier of Fact Because He Offers No Opinion as to the Quality of Suite 11i ..............................6

    E. Defendants Still Cannot Present Credible Evidence of Any Customers Live on Both ERP and CRM During the Class Period ...........................................8

    F. Yourdon Failed to Consider All of the Relevant Evidence Provided to Him in the Course of His Assignment .......................................................................10

III. CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bourjaily v. United States*,
	483 U.S. 171 (1987) ................................................................................................................2

*Kumho Tire Co. v. Carmichael*,
	526 U.S. at 137, 152 (1999) .....................................................................................................3

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
	702 ................................................................................................................................ *passim*

I.  INTRODUCTION

Between Edward Yourdon's ("Yourdon") flawed analysis of the Oracle Corporation ("Oracle") E-Business Suite 11i Software ("Suite 11i"), and defendants' strained reading of Yourdon's report and rebuttal, it is apparent that Yourdon offers no relevant or reliable opinions and that his testimony must be wholly excluded under Fed. R. Evid. 702. In a move which effectively invalidates the entirety of Yourdon's analysis, defendants now state that Yourdon offers no opinion whatsoever on the quality of Suite 11i. Defs' Opp.[1] at 2-5. Yet, Yourdon's defense of the software's quality runs through the entirety of his report, rebuttal and deposition testimony. He defined quality as "the absence of software bugs" and then opined on the effects of software bugs on implementation, integration and functionality. Ex. 1[2] ¶41. He concluded that Suite 11i was a "technical success and a marketplace success." *Id*. ¶12. And stated that: "Plaintiffs have unfairly implied that Suite 11i had unusually poor quality because it contained bugs in its early stages . . . . I have seen no evidence that Suite 11i was worse than any other ERP product." *Id*. ¶195. And he admitted: "did [Suite 11i] have some quality problems? I would agree to that, yes." Ex. 3 at 188:2-3.

Defendants' objective is clear: having conceded that Yourdon's analysis could never survive Fed. R. Evid. 702 scrutiny and admitting, as Yourdon had to, that thousands of defects impacted the software quality, and that Oracle gave customers millions in concessions and refunds, defendants devote the majority of their opposition arguing (wrongly) that Brooks L. Hilliard CMC CCP ("Hilliard"), plaintiffs' expert, cannot offer an opinion on quality. *See* Defs' Opp. at 2-5; Ex. 3 at 188:2-3; Ex. 1 ¶¶201-202. However, while defendants argue at length about Yourdon's *inability* to measure the quality of Suite 11i (likely because he did not review the evidence), they fail to address critical deficiencies in those opinions which they claim Yourdon does offer. Defendants bear the

---

[1]  "Defs' Opp." refers to Defendants' Opposition to Motion to Exclude Expert Testimony of Edward Yourdon, filed August 27, 2007.

[2]  All "Ex. __" references refer to the Declaration of Shawn A. Williams in Support of Plaintiffs' Reply to Defendants' Opposition to Motion to Exclude Expert Testimony of Edward Yourdon, filed herewith.

1 burden of establishing by a preponderance of the evidence that Yourdon offers relevant and reliable
2 opinions.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  They cannot meet their burden.

3 **II.     ARGUMENT**

4       **A.     Legal Standard**

5 To be admissible under Fed. R. Evid. 702, an expert must be qualified, and his testimony
6 must be reliable and helpful to the trier of fact.  Reliable expert testimony must be: (1) "based upon
7 sufficient facts or data"; (2) the "product of reliable principles and method"; and (3) the reliable
8 product of the principles and methods applied to the facts of the case.  Fed. R. Evid. 702.  The
9 proponent bears the burden of establishing that the pertinent admissibility requirements are met by a
10 preponderance of the evidence.  *See Bourjaily*, 483 U.S. at 175.

11       **B.     Yourdon's Opinion Is Not Helpful Because He Excluded Everyone Except IT Professionals from His Analysis of the Issues in Question**
12       **and Never Opines upon Full Integration**

13 Yourdon's opinions are not helpful to the trier of fact because he intentionally avoids stating
14 whether defendants knew or should have known that their statements to investors were – or were not
15 – false and misleading.  First, Yourdon found defendants' statements to be alternately "accurate,"
16 "not false" or "fundamentally true," and then only to those "people who had a background and
17 education in the field of computer hardware or software, and most likely people who were employed
18 by or somehow directly involved in companies that provide computer products and services."  Ex. 1
19 ¶¶12, 156, 258; Ex. 3 at 30:23-31:4, 70:12-13.  This is because Yourdon unequivocally limited his
20 findings of veracity to the miniscule audience of "IT professionals."  Ex. 3 at 82:22-83:4 ("I'm
21 limiting [my opinion] to people who are involve in, work in or are associated with the IT industry.").

22 Defendants incorrectly claim that Yourdon's analysis is relevant because "IT professionals
23 comprised the vast majority of decision-makers regarding the purchase of Suite 11i."  Defs' Opp. at
24 10.  Defendants ignore a key distinction: the alleged statements and omissions at issue were made to
25 the investing public, not purchasers of Suite 11i.  *See, e.g.*, Ex. 21.  Even Oracle did not consider IT

26
27
28

professionals to be one of the "major audiences" for these statements.[3] Ex. 4. Yourdon's failure to consider reasonable investors, *i.e.* Local 144 Nursing Home Pension Fund, former airline pilot Robert Sawyer and Ryan Kuehmichel, in the formation of his opinions renders them irrelevant. The entirety of Yourdon's report, rebuttal[4] and deposition testimony must be excluded under Fed. R. Evid. 702.

In opposition, defendants offer the deliberately obtuse interpretation of plaintiffs' argument that Yourdon should have evaluated defendants' statements as a lay person. Defs' Opp. at 10. This reading of plaintiffs' argument as to why Yourdon should be excluded is absurd. In fact, it would likely be impossible for Yourdon to analyze the facts as a lay person as he himself is an IT professional. To be relevant, Yourdon must offer an expert opinion (once qualified) whether he believes defendants' statements that Suite 11i was fully integrated, fully interoperable out of the box, worked in every language and that it helped save money were false or misleading to reasonable investors. *See* Ex. 9 at §4-4.2.7. He does none of these. Yourdon inexplicably determined that the statements were *only* "accurate," "fundamentally true" or "not false" as made to a certain select audience which had both educational and professional experience in the IT field.[5] *See* Ex. 1 ¶¶12,

---

[3] It is unclear why defendants extensively quote Yourdon's deposition testimony regarding the fact that Yourdon thinks "some [] analysts" are IT professionals. *See* Defs' Opp. at 10. This only underscores the fact that the *vast majority* of the intended audience of investors are not IT professionals.

[4] Having conceded that Yourdon will not be certified in this litigation, many of defendants' arguments suggest that Yourdon offers reliable opinions in his rebuttal report. *See, e.g.*, Defs' Opp. at 2, 8, 11. Yourdon's rebuttal report must be excluded because it suffers from the same lack of relevance and reliability that plagues his opening report. Yourdon's arguments in his rebuttal are based on the same irrelevant findings that defendants' statements were accurate as viewed by the miniscule audience of IT investors and that Suite 11i was integrated based on his flawed review of the technical documentation alone.

[5] Defendants wrongly assert that Yourdon's failure to clearly articulate whether defendants' statements were "accurate" or "fundamentally true" (per his report) or "not false" (per his deposition) simply reflects the "legal standard" for "material misstatements." Defs' Opp. at 10. Ex. _3 at 70:12-13. The trial court must ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. at 137, 152 (1999). Here, Yourdon vacillates between different conclusions, shifting from "accurate" in some situations to merely "fundamentally true" when forced to confront defects in Suite 11i. This level of uncertainty reflects a lack of rigorous investigation and the failure to fully form reliable opinions.

156; Ex. 3 at 70:12-13.   Even given the opportunity at his deposition to expand his analysis or opinion, Yourdon could not, and instead reaffirmed that his opinion would only be relevant to those few who were IT professionals.  Ex. 3 at 82:22-85:4.

### C. Because Yourdon Did Not Form a Reliable Opinion Concerning the Integration of Suite 11i, His Opinion Is Entirely Irrelevant

Plaintiffs demonstrate that Yourdon's opinion on the integration of Suite 11i is also unreliable and unhelpful for purposes of this action.  First and foremost, Yourdon purports to offer the opinion that Suite 11i was "fully integrated" and "fully interoperable" despite the fact that Yourdon admittedly failed to evaluate two of the four forms of integration.  Ex. 1 ¶12; Exs. 21-22.  Experts on both sides agree that integration comprises more forms than Yourdon analyzed.  Ex. 10 at 5-8; Ex. 1 ¶104 n.38.  A failure of any of the four forms of integration can render software not integrated.  *See* Ex. 10 at 7-8.  While Hilliard could conclude that defendants' failures in any single aspect of integration rendered Suite 11i not integrated, Yourdon cannot support the statements that Suite 11i was "fully integrated" and "fully interoperable" and that it supported "seamless integration across the marketplace."   Exs. 5-6, 21-22.   Defendants admit in their opposition that systems integration encompasses elements of functional and user interface integration.  Defs' Opp. at 6.  Thus it is impossible for Yourdon to offer a reliable opinion regarding defendants' statement that Suite 11i was "fully integrated" and "fully interoperable out of the box," when this includes aspects of integration which he did not evaluate.  Exs. 21-23. .

Defendants shamelessly advance the only argument they can: that functional integration and user interface integration were not relevant to "full integration" because according to customers (that Yourdon did not evaluate) did not complain about these issues.  Defs' Opp. at 6.  Yet, Yourdon has consistently maintained that customer reports are not a reliable source of information.  Furthermore, by this logic Yourdon would be able to conclude that Suite 11i was fully integrated despite failing to evaluate two forms of integration.  Defs' Opp. at 6.  Yet, the E-Business Suite High Level Requirements Document, which was prepared internally by Oracle engineers, details multiple defects related to both functional and user interface integration.  *See* Ex. 7 at 069914 (discussing functional integration defect at sections "1.2 Sales Modules – Duplication," "1.8 Planning engines,"

1  "1.9 Duplication of Quality functionality" and user interface integration defects at "3.2 Common
2  User Interface," "3.12 Process Navigator for the whole E-Business Suite" and "3.17 Translation of
3  Custom Applications").

4  Second, undermining the reliability of Yourdon's analysis, despite defining integration for
5  both "the end-user . . . as well as for IT professionals" as "simply mean[ing] that the pieces (or
6  component or modules) of the system 'work together,'" Yourdon devised an inquiry which
7  completely ignored whether the pieces of the Suite 11i actually "work[ed] together." Ex. 1 ¶100;
8  *see also* Plts' Mot.[6] at II.B. Indeed, Yourdon's claims to only have examined "technical
9  documentation" of Suite 11i, which admittedly did not reveal whether the "software actually
10 functioned in the way that the diagrams [he] reviewed depicted." Ex. 3 at 230:4-12. The functional
11 impact of Suite 11i bugs and defects could only be gleaned from what Yourdon did not do, *i.e.*
12 "look[ing] at actual implementations and reports from customers to see whether [Suite 11i] was
13 operating as designed." Ex. 3 at 230:4-12; *see* Ex. 1 ¶¶192-195. When forced to confront the
14 massive number of defects – 5,000 in the first six months – Yourdon retreated, stating that "the
15 integration was imperfect" and that these errors "do[] not change the fact that 'all the pieces are
16 designed and engineered'" to be integrated. Ex. 1 at ¶¶140-141, 192-195.

17 Third, Yourdon fails his own test because he "did not acquire an intimate knowledge of the
18 business requirements for the various Suite 11i components," a requirement Yourdon himself
19 claimed would be necessary to form an opinion in this case. Ex. 3 at 226:10-227:5; Ex. 1 ¶139.
20 When asked if he believed that his failure to develop "intimate knowledge" meant that he "cannot
21 provide a complete answer to the three questions" which comprised his analysis of integration, he
22 answered: "That's correct." Ex. 3 at 226:23-227:1. Defendants offer only an excuse for his neglect,
23 saying such knowledge would have required the review of "thousand of pages of requirements
24 documents" a task which was apparently too onerous for Yourdon. Defs' Opp. at 7. In contrast,
25 Hilliard reviewed "thousands" of documents in forming his opinion. Ex. 8 at 47:15.

---

[6] "Plts' Mot." refers to Plaintiffs' Notice of Motion and Motion to Exclude Expert Testimony of Edward Yourdon, filed July 26, 2007.

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF EDWARD YOURDON - C-01-0988-MJJ                                        - 5 -

Indeed, Yourdon's failure to review thousands of pages of contemporaneous evidence, which detail experiences with Suite 11i that prove defendants' statements to be false, is fatal to his opinions. Yourdon stated that customer complaints "do not indicate anything to [him] about the overall quality of the software." Ex. 1 ¶201. Defendants attempt to spin this in their opposition, stating that customer complaints "without context do not constitute meaningful evidence of quality." Defs' Opp. at 7. However, the elusive "context" which Yourdon seeks was found in those very documents which defendants state he "considered" but evidently did not affect his findings. Defs' Opp. at 7; Ex. 1 ¶¶201-202. For instance, Yourdon did not consider the admission of Lawrence Ellison, Chief Executive Officer ("CEO") of Oracle, found in *Softwar*, that Suite 11i was rushed to market. Ex. 24 at 189. Nor did Yourdon consider the admission of Ron Wohl, chief executive for ERP development, that Suite 11i was not fully tested (Ex. 11 at 106), or the E-Business Suite High Level Requirements Document which revealed that certain modules were incapable of displaying Asian character sets (let alone remaining untranslated). Ex. 7 at 069921. At his deposition, Yourdon was shown an AMR Research Report, for which representatives from 50 large corporations using Suite 11i were interviewed, which found that: "Almost every customer [AMR Research] spoke with expressed disappointment with the quality of Oracle's software releases" and that: "There is little doubt that Oracle's 11i quality problems have significantly slowed its momentum in the enterprise application market." Ex. 3 179:14-187:25; Ex. 12. Yourdon stated that he had seen this report and it did not "impact" his analysis or indicate "anything" about the quality of Suite 11i. Ex. 3 at 179:25-180:10. The information needed to put customer complaints in context was available to Yourdon, he simply chose to ignore it.

**D.  Yourdon's Report and Analysis Are Not Helpful to the Trier of Fact Because He Offers No Opinion as to the Quality of Suite 11i**

Through a strained reading of Yourdon's report, rebuttal and deposition testimony, defendants state that: "Mr. Yourdon, however, has not offered an affirmative opinion on Suite 11i's overall quality; rather, the focus of his opinions is the appropriate means of evaluating the quality of large software." Defs' Opp. at 2. It defies logic that defendants now state that Yourdon does not offer an opinion on quality. For instance, in addition to finding that Suite 11i was integrated, he also

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF EDWARD YOURDON - C-01-0988-MJJ - 6 -

opined that it was "a technical success and a marketplace success." Ex. 1 ¶12.[7] Yourdon stated that Suite 11i defects, customer complaints and free consulting services provided to customers suffering from failing implementations "do not indicate anything to me about the overall quality of the software" (Ex. 1 ¶¶201-202), and that: "Plaintiffs have unfairly implied that Suite 11i had unusually poor quality because it contained bugs in its early stages . . . . I have seen no evidence that Suite 11i was worse than any other ERP product." Ex. 1 ¶195. Yourdon testified: "Did they have some quality problems? I would agree to that, yes." Ex. 3 at 188:2-3. Read in the context of Yourdon's findings about Suite 11i, these statements could logically be interpreted as positive representation about Suite 11i's quality – *i.e.* that the evidence demonstrates that Suite 11i was of average quality.[8]

Yourdon's opinion on the so-called "quality" of Suite 11i must be excluded in any event as it is not based on a reliable methodology and ignores the facts available to him. The metric for measuring quality, which defendants claim Yourdon supports, is based on the number of defects per function point, a metric also used by Capers Jones ("Jones") in his book, *Estimating Software Costs*. Ex. 25; Defs' Opp. at 4. It is well established that this metric is unhelpful in the context of this litigation because the experts agree that no party knows, with any level of accuracy or precision, the number of function points in Suite 11i or the number of defects. Ex. 14 at Conclusion #1-2. Furthermore, despite defendants' claims that Jones provides the relevant industry data that would be

---

[7] Defendants' current position that Yourdon does not offer any opinion as to Suite 11i quality conflicts with Yourdon's analysis of lost deals. Yourdon concludes that Oracle did not lose any deals in the third quarter of 2001 "because of generally unknown or unexpected quality problems with Suite 11i." Ex. 1 ¶¶12, 241 (referring to "undisclosed or unexpected quality problems"). Given that Yourdon "has not offered an affirmative opinion on Suite 11i's overall quality," any opinion he offers concerning whether Oracle lost deals because of "undisclosed or unexpected quality problems" must necessarily be baseless. Ex. 1 ¶241. Yourdon cannot have it both ways: he cannot disclaim any opinion on quality, then suggest that poor quality played no role in defendants' lost deals.

[8] This is further evidenced by the arguments of defendants' counsel, who in their efforts to exclude Hilliard, claim that Oracle's licensing revenue in the quarter following the class period was evidence of Suite 11i's **commercial quality**. *See* Defendants' Notice of Motion and Motion to Exclude Declaration and Testimony of Brooks Hilliard, filed July 26, 2007, at 16. To the extent that defendants' counsel based such an argument on Yourdon's opinion that Suite 11i was "a marketplace success," apparently shows they have misinterpreted Yourdon's report. Ex. 1 ¶12.

necessary for a comparison (were such figures available for Suite 11i), Jones states that his numbers are "not accurate" and should not be used for "serious business purposes." Ex. 25 at 101.

Although defendants now claim that Yourdon offers a metric based on the number of defects per function point, Yourdon disavowed such a measure at his deposition. Defs' Opp. at 2. Yourdon's report defined quality as the "absence of software bugs," that is, until he attempted to change this definition at his deposition from "quality . . . *i.e.* absence of bugs" to "quality *e.g.* absence of bugs," stating that: "Normally [number of defects] would be considered *just one aspect* of quality." Ex. 3 at 60:12-61:16.[9] This alteration brings Yourdon more in accordance with Hilliard's definition of commercial quality (which encompassed Suite 11i's instability, poor performance and unacceptable customer support), as Hillard stated "my opinion of the quality of the Oracle 11*i* product is based on the severity and the criticality of software defects . . . not on the sheer number of such defects alone." Ex. 9 at 79, §5.3.

Defendants clearly state that Yourdon offers only one means to measure quality, and that it cannot be used to measure the quality of Suite 11i, because the relevant data "has not been adduced in discovery in this case." Defs' Opp. at 2. However, defendants allude to Yourdon as educating the jury to "provide context" as a means to undermine Hilliard's findings. Defs' Opp. at 5. The jury will not benefit from Yourdon's testimony that his method cannot produce a reliable result. Yourdon offers only a methodology which he admits cannot be utilized in this litigation.

E.  **Defendants Still Cannot Present Credible Evidence of Any Customers Live on Both ERP and CRM During the Class Period**

Defendants have repeatedly presented misleading statistics about the number of "live" customers using Suite 11i in an attempt to rebut plaintiffs' claims that the software was not "fully integrated" and "fully interoperable out of the box." Exs. 21-22. However, because a customer was counted as "live" when it had implemented only a single module, these figures do not support defendants' claims that the software was integrated and fully interoperable out of the box, as the key

---

[9]  Defendants suggest that this is an insignificant typographical error. Defs' Opp. at 16. However, when asked about quality at his deposition, Yourdon stated: "I'd love to have you tell me what you mean by quality." Ex. 3 at 60:7-8.

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT
TESTIMONY OF EDWARD YOURDON - C-01-0988-MJJ                                                                                           - 8 -

1  value proposition of Suite 11i is that it integrated workflows "cross[] the boundary" between CRM
2  and ERP modules, a situation that would require two modules at bare minimum.  Ex. 2 ¶205 n.277;
3  Ex. 1 ¶137.

4      In his rebuttal report, Yourdon listed various "success stories" of companies who ultimately
5  were able to implement some form of Suite 11i, but none of these possessed the key elements of
6  being "live" during the class period on both ERP and CRM.  *See* Ex. 2 ¶¶174-187.[10]  At his
7  deposition, Yourdon stated that he ***believed*** that a list of customers using both CRM and ERP
8  modules existed in his report or rebuttal report.  Ex. 3 at 93:13-94:8.  It does not, nor could he name
9  any.  Ex. 3 at 94:3-23.  Defendants fail once again in their opposition to present any credible
10 evidence of a customer live on both ERP and CRM during the class period.  First they present
11 POSCO, a corporation which Yourdon states began implementation of ERP and CRM in July 2000,
12 but did not complete it until June 2001.  Ex. 2 ¶181.  It is unclear why defendants would suggest that
13 POSCO refutes plaintiffs' arguments given that the class period ends in March 2001.  Furthermore,
14 as of June 2001, POSCO was experiencing "***critical showstopper***[]" defects and internal Oracle
15 communications state that the "product in it's [sic] present structure" could not meet POSCO's
16 needs.  Exs. 15-16.  Second, defendants offer an unsupported string of companies plucked from
17 Oracle's "Go-Live" reports which they now claim were live on both CRM and ERP during the class
18 period.  Defs' Opp. at 8.  These reports are clearly unreliable.  Contemporaneous documentary
19 evidence shows that customers listed as live in the "Go-Live" reports were experiencing significant
20 problems.  For instance, a January 24, 2001 report lists Chipotle as live on "Financials, HR, PA, Inv,
21 PO."  Ex. 26.  Yet, a March 2001 email indicates that Chipotle was having "major 11i performance
22 issues" which were "serious enough that Chipotle has removed themselves from the reference
23 program."  Ex. 18.  Ample evidence conflicts defendants' claims that the companies they list were

---

[10]     For instance, Yourdon incredibly lists Ingersoll Rand, a corporation who stated in October 2000 that they "cannot get the software to function [and] have little confidence in Oracle's ability to provide a stable working environment" and who are apparently ***still*** in the process of upgrading to Suite 11i.  Ex. 17; Ex. 2 ¶186.  Furthermore, this "success story" had consulting fees of $2.7M forgiven by defendants as well as being granted $1.5M in future discounts on various Oracle services related to Suite 11i.  Ex. 2 ¶186.

28

1  actually live. For instance, defendants list Marconi Fibreways as "live," yet, a January 2001 email
2  indicates that "Sales on-line dropped – basic functionality didn't work." Ex. 19. Defendants also list
3  Bell South as "live" on both ERP and CRM, yet, a January 2001 email indicates that BellSouth
4  required 6,000 CRM patches and described a "broken" Suite 11i implementation. Ex. 20 at 221146.
5  The cryptic entries in the "Go-Live" reports, unsupported by any other evidence, simply does not
6  support defendants' claims that there were "many examples" of customers live on both ERP and
7  CRM during the class period. Defs' Opp. at 8. Instead, it reflects the reality described in the 2002
8  E-Business Suite High Level Requirements Document, which stated that the "weaknesses within the
9  [Suite 11i] architecture . . . are so fundamental that it exposes [Oracle's] development environment
10 as *best of breed* rather than one of unified software vendor." Ex. 7 at 069913.

###    F.    Yourdon Failed to Consider All of the Relevant Evidence Provided to Him in the Course of His Assignment

Yourdon admitted at his deposition that he did not perform a "review of all of the evidence that was in [his] possession concerning concessions that Oracle paid to customers due to product problems." Ex. 3 at 117:3-7. While this alone suggests that Yourdon's analysis did not meet the rigorous standards articulated by the court in *Kumho*, his admission that a thorough review of that evidence may have "potentially" changed his opinion, removes any doubt that Yourdon's report, rebuttal and deposition testimony must be excluded. Ex. 3 at 116:23. Evidence that Oracle paid significant concessions, worth millions of dollars, to various Suite 11i customers supports plaintiffs' arguments that Suite 11i did not perform as defendants represented during the class period. Yourdon's failure to even consider this information is fatal to the admissibility of his testimony and reports in this case.

## III. CONCLUSION

Yourdon's flawed methodology drastically undermines the reliability of his report, rebuttal and deposition testimony. By withdrawing from them any opinion as to the so-called quality of Suite 11i, defendants leave baseless conclusions devoid of any supporting analysis. Defendants have failed to carry their burden; Yourdon offers no relevant or reliable opinions. Accordingly, he should be excluded in entirety from this litigation.

DATED: October 10, 2007

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
MONIQUE C. WINKLER
ELI R. GREENSTEIN
DANIEL J. PFEFFERBAUM


      s/SHAWN A. WILLIAMS
      SHAWN A. WILLIAMS

100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON
DOUGLAS R. BRITTON
STACEY M. KAPLAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

S:\CasesSD\Oracle3\Refiled Pleadings\brf00045335.doc

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON - C-01-0988-MJJ

- 11 -

CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 10, 2007.

  s/SHAWN A. WILLIAMS
SHAWN A. WILLIAMS

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

E-mail:  ShawnW@csgrr.com

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com
- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com
- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com
- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com
- **Stacey Marie Kaplan**
  SKaplan@csgrr.com
- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com
- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com
- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com
- **William S. Lerach**
  e_file_sd@lerachlaw.com
- **James C. Maroulis**
  jim.maroulis@oracle.com
- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com
- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com
- **Brian P Murray**
  bmurray@rabinlaw.com
- **Shinyung Oh**
  shinyungoh@paulhastings.com
- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com
- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com
- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Dorian Daley
500 Oracle Parkway
Redwood City, CA 94065

Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Raymond Lane
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

PRG-Schultz USA, Inc.
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

Darren Jay Robbins
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Sanna Rachel Singer
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111
```