COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
skaplan@csgrr.com
       – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
moniquew@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ALAN G. GOEDDE |
| ALL ACTIONS. | |
| | DATE: November 16, 2007 TIME: 1:30 p.m. COURTROOM: The Honorable Martin J. Jenkins |

**PREVIOUSLY FILED ON AUGUST 27, 2007**
**(DOCKET NO. 1017)**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................2

III.    ARGUMENT ..........................................................................................................3

        A.      Legal Standard .............................................................................................3

        B.      Dr. Goedde Is Qualified to Testify Concerning Macroeconomic
                Conditions Facing Oracle in 3QFY01 ........................................................4

        C.      Dr. Goedde's Opinions Concerning the Macroeconomic Change Facing
                Oracle in 3QFY01 Are Reliable and Will Assist the Trier of Fact ............8

                1.      Dr. Goedde Repeatedly, and Reliably, Defines "Major
                        Macroeconomic Change" ....................................................................8

                2.      The Factors Considered by Dr. Goedde Are Reliable Indicators of
                        the Economic Climate Facing Oracle Leading Up to and
                        Throughout 3QFY01 .........................................................................12

                3.      Defendants Cannot Credibly Deny a Link Between the Major
                        Macroeconomic Change Facing Oracle in 3QFY01 and Oracle's
                        Business ............................................................................................14

        D.      Dr. Goedde's Opinions Concerning Oracle's Forecasting Process Are
                Reliable and Will Assist the Trier of Fact ...............................................16

IV.     CONCLUSION.....................................................................................................21

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Alexander v. Smith & Nephew, P.L.C.*,
5
    98 F. Supp. 2d 1310 (N.D. Okla. 2000) ...............................................5, 6

6
*Amorgianos v. Amtrak*,
    303 F.3d 256 (2d Cir. 2002) ...............................................................16

7
*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
8
    509 U.S. 209 (1993) ...........................................................................19

9
*Daubert v. Merrell Dow Pharms.*,
    43 F.3d 1311 (9th Cir. 1995) .............................................................10
10

*Daubert v. Merrell Dow Pharms.*,
11
    509 U.S. 579 (1993) ................................................................. *passim*

12
*DSU Med. Corp. v. JMS Co., Ltd.*,
13
    296 F. Supp. 2d 1140 (N.D. Cal. 2003) .............................3, 4, 17, 19

14
*Friendship Heights Assocs. v. Koubek*,
    785 F.2d 1154 (4th Cir. 1986) .............................................................7
15

16
*Gardner v. Gen. Motors Corp.*,
    507 F.2d 525 (10th Cir. 1974) .............................................................7

17
*Guillory v. Domtar Indus.*,
18
    95 F.3d 1320 (5th Cir. 1996) .............................................................17

19
*Hoffman  v. Caterpillar, Inc.*,
    368 F.3d 709 (7th Cir. 2004) .............................................................21
20

21
*In re Paoli R.R. Yard PCB Litig.*,
    916 F.2d 829 (3d Cir. 1990) .................................................................4

22
*In re Williams Sec. Litig.*,
23
    No. 02-cv-072-SPF-FHM, 2007 U.S. Dist. LEXIS 49123
    (N.D. Okla. July 6, 2007) ...................................................................21
24

25
*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ..............................................................3, 4, 10

26
*Lavespere v. Niagra Mach. & Tool Works, Inc.*,
27
    910 F.2d 167 (5th Cir. 1990) ...............................................................7

28

**Page**

CASES

*Lust v. Merrell Dow Pharms.*,
     89 F.3d 594 (9th Cir. 1996) ...................................................................................14

*Maiz v. Virani*,
     253 F.3d 641 (11th Cir. 2001) ...........................................................................3, 7

*Micro Chem., Inc. v. Lextron, Inc.*,
     317 F.3d 1387 (Fed. Cir. 2003)................................................................17, 19, 21

*Miller v. Pfizer, Inc.*,
     356 F.3d 1326 (10th Cir. 2004) .............................................................................21

*Mukhtar v. Cal. State Univ.*,
     299 F.3d 1053 (9th Cir. 2002) ...........................................................................4, 18

*Playtex Prods. v. Proctor & Gamble Co.*,
     No. 02 Civ. 8046 (WHP), 2003 U.S. Dist. LEXIS 8913
     (S.D.N.Y. May 28, 2003).........................................................................................18

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*,
     No. 95 Civ. 8136 (RCC), 2001 U.S. Dist. LEXIS 20737
     (S.D.N.Y. Dec. 13, 2001) .......................................................................................19

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
     878 F.2d 791 (4th Cir. 1989) ...................................................................................7

*Thomas v. Newton Int'l Enters.*,
     42 F.3d 1266 (9th Cir. 1994) ...............................................................................4, 7

*United States v. Sandoval-Mendoza*,
     472 F.3d 645 (9th Cir. 2006) ....................................................................................3

*Vienne v. Am. Honda Motor Co.*,
     No. 99-3716, 2001 U.S. Dist. LEXIS 606 (E.D. La. Jan 16, 2001)....................7

*Whiting v. Boston Edison Co.*,
     891 F. Supp. 12 (D. Mass. 1995) .............................................................................5

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
     Rule 702........................................................................................... *passim*
     Rule 26.................................................................................................21
     Rule 26(a)(2)........................................................................................21

# I.      INTRODUCTION

Defendants' *Daubert* Motion to Exclude Expert Reports and Testimony of Alan G. Goedde ("Motion" or "Mot.") seeks to exclude plaintiffs' expert Dr. Goedde by attacking his economic qualifications and by mischaracterizing the nature of his opinions and methodology.  Defendants' arguments are misguided.  Dr. Goedde is eminently qualified to opine about the economy facing Oracle in 3QFY01 and how that economy impacted Oracle's forecast process.  He has a Ph.D. and Masters Degree in Economics from Duke University and years of experience with business forecasting and analyzing macroeconomic data in connection with that forecasting.  In this case, Dr. Goedde uses that experience to opine that Oracle Corporation ("Oracle" or the "Company") was facing a major macroeconomic change leading up to and during Oracle's 3QFY01, and that Oracle's forecasting process was unreliable as a result of that change and many others within Oracle.  In doing so, he utilized reliable methodologies and considered the very economic indicators that a business forecaster would consider when creating and evaluating a forecast – the indicators reflecting on the economic environment directly facing the Company doing the forecast.  His opinion and testimony are relevant to defendants' knowledge that Oracle's December 14, 2000 earnings guidance, and numerous statements made by defendants during Oracle's 3QFY01 concerning the Company's business and operations, were knowingly false when made.  Dr. Goedde's opinions are reliable under the *Daubert* framework and will assist the trier of fact to understand and determine facts at issue.[1]

Defendants' challenges to Dr. Goedde's methodologies are baseless.  They devote a significant portion of their brief to the argument that Dr. Goedde's opinions should be excluded

---

[1]      Defendants' Motion is notable not for the objections that it raises, but for the objections that it fails to raise.  Defendants' Motion says nothing about the extensive forecasting experience that Dr. Goedde possesses.  Its silence is a concession that Dr. Goedde is qualified to give opinions about Oracle's forecasting process.  Defendants also fail to challenge any of the opinions that Dr. Goedde gives about the broad economic indicators that he analyzed in rebuttal to R. Glenn Hubbard's opinions.  Ex. 1 at 2-44.  (All exhibits ("Ex.") are attached to the Declaration of Douglas R. Britton in Support of Plaintiffs' Opposition to Defendants' *Daubert* Motion to Exclude Expert Reports and Testimony of Alan G. Goedde.)  They therefore concede that Dr. Goedde's opinions and the methodologies on which those opinions are based are reliable.

1  because he supposedly could not define "major macroeconomic change" at his deposition.  Mot. at

2  1-5, 10-11.  But Dr. Goedde repeatedly and uniformly defined that phrase in his deposition and his

3  reports identify the very conditions that support his definition.  Those conditions include the collapse

4  of the NASDAQ, the bursting of the dot.com bubble (which defendant Sanderson referred to itself as

5  a "major macroeconomic event"), the reduction of the Federal Funds rate twice in one month by the

6  Federal Open Market Committee ("FOMC"), the contemporaneous comments by market

7  participants, and the earnings shortfalls of Oracle's competitors.  Defendants' refusal to accept Dr.

8  Goedde's definition of the very macroeconomic change that they themselves blamed for Oracle's

9  3QFY01 earnings miss does not serve as a legitimate basis to exclude Dr. Goedde's testimony.  Ex.

10  2 at NDCA-ORCL 050662; Ex. 3 at NDCA-ORCL 050621-22.

11       Defendants also rely heavily on the baseless argument that Dr. Goedde's opinions should be

12  excluded because his interpretation of the evidence is different from theirs.  But it is well-settled that

13  a difference of opinion is not a proper basis for exclusion, as such judgments are reserved for the

14  trier of fact.  Dr. Goedde used his expertise to analyze the sector of the economy in which Oracle

15  operated and every relevant forecasting measure utilized by Oracle.  In doing so, he reliably

16  deconstructed Oracle's forecasting process to reveal to the trier of fact that the process was

17  unreliable and inaccurate, and produced inaccurate and baseless guidance.  Dr. Goedde's detailed

18  analysis of the very metrics that defendants testified that they used in the process satisfies even the

19  most exacting standards of reliability.  In fact, defendants' argument that Dr. Goedde's analysis is

20  purely subjective is odd (and meritless) given that his analysis focused on the defendants' own

21  metrics.  These arguments cannot serve as a basis to exclude Dr. Goedde's opinions.

22       Defendants' objections amount to no more than mere disagreements and, if anything, are a

23  proper basis for cross-examination – not exclusion.  Plaintiffs respectfully request that the Court

24  deny defendants' Motion.

25  **II.     BACKGROUND**

26       Dr. Goedde offers the following opinions to assist the trier of fact:

27      •    Oracle was facing a major macroeconomic change heading into 3QFY01
         resulting in a decline in the market for its products;

28

- • Accepted forecast principles require a forecaster to consider all relevant and material events impacting a company's business;

- • Oracle failed to make adjustments to its forecast process to account for the negative impact of the changes in the economy and the market for Oracle's products in violation of accepted forecast principles;

- • Defendants knew that failing to adjust for the negative impact of the changes in the economy made its Public Guidance unreliable;

- • In 2QFY01, Larry Ellison directed significant changes to Oracle's forecast process that resulted in more "risk" being included in future Field Forecasts and rendered Jennifer Minton's upside adjustments unreliable;

- • The numerous internal measures available to defendants throughout 3Q FY01, including Field Forecasts, disclosed that Oracle was being impacted adversely by the declining economy and that Oracle would not achieve its Public Guidance;

- • The "Hockey-Stick" phenomenon did not prevent Oracle from knowing that it would miss Public Guidance until the last few days of the quarter.

Ex. 4 at 4.  In forming his opinions, Dr. Goedde considered numerous relevant documents and testimony.  His reports contain 140 pages of detailed analysis, including numerous charts and figures scrutinizing Oracle's economic and forecasting realities during the relevant time.  Dr. Goedde's opinions are reliable for the reasons set forth below and would readily assist the trier of fact to understand or determine facts at issue.

## III.   ARGUMENT

### A.   Legal Standard

The trial courts act as gatekeepers in determining whether to admit expert testimony.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).  However, "*Daubert* makes the district court a gatekeeper, not a fact finder."  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006).  "'[A] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury.'"  *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).  The court's sole gatekeeping responsibility is to determine the reliability of expert opinions through a preliminary assessment of the methodologies underlying the opinion.  *Daubert*, 509 U.S. at 592-93.  In performing its gatekeeping role, the court does not focus on the correctness of the conclusions of the expert's testimony.  *See, e.g.*, *DSU*, 296 F. Supp. 2d at

1   1146-47.  Rather, the court focuses on whether the methodology used by the expert to reach his

2   conclusions is sufficiently reliable for submission of that testimony into evidence.  *Id.*

3        Federal Rule of Evidence 702 governs the admission of expert opinion testimony.  Under

4   *Daubert* and *Kumho Tire*, only relevant and reliable expert opinion testimony is admissible.  Expert

5   opinion testimony is relevant if the knowledge underlying it has a "'valid . . . connection to the

6   pertinent inquiry.'"  *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592).  Relevance, in

7   this context, requires that the expert's proposed opinion would assist the trier of fact to understand or

8   determine a fact in issue.  *Daubert*, 509 U.S. at 591 (holding that the requirement that the expert

9   testimony "'assist the trier of fact' . . . goes primarily to relevance") (citation omitted).  Expert

10  opinion testimony is reliable if the knowledge underlying it "has 'a reliable basis in the knowledge

11  and experience of [the relevant] discipline.'"  *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509

12  U.S. at 592); *see also Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002) ("A trial

13  court not only has broad latitude in determining whether an expert's testimony is reliable, but also in

14  deciding how to determine the testimony's reliability.").  As the Supreme Court emphasized, "[t]he

15  inquiry envisioned by Rule 702 is . . . a flexible one" (*Daubert*, 509 U.S. at 594), and must be "tied

16  to the facts of a particular case."  *Kumho Tire*, 526 U.S. at 150.

17    **B.    Dr. Goedde Is Qualified to Testify Concerning Macroeconomic**
      **Conditions Facing Oracle in 3QFY01**

18

19        A witness may be qualified as an expert by "knowledge, skill, experience, training, or

20  education." Fed. R. Evid. 702.  The qualification standard under Rule 702 is to be applied liberally.

21  *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) ("Federal Rule of Evidence

22  702 . . . contemplates a broad conception of expert qualifications."); *In re Paoli R.R. Yard PCB*

23  *Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) (holding it appropriate to interpret Rule 702 liberally and

24  that an expert witness should not have to satisfy an overly narrow qualification test).  Here,

25  Dr. Goedde is qualified through his education, knowledge, experience and training to opine on the

26  macroeconomic environment facing Oracle in 3QFY01 and how that environment impacted Oracle's

27  forecasting process.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-MJJ                                    - 4 -

1      Dr. Goedde's economic education is extensive.  He holds a Ph.D. and a Masters Degree in

2   Economics from Duke University and has taught a course in international economics at American

3   University in Washington, D.C.  Ex. 4 at 2 & Ex. 1; Ex. 5 at 46:21-25, 71:25-72:4.  His graduate

4   studies focused on international trade and statistics and industrial organization, which is the study of

5   how companies make decisions to allocate resources in markets where their goods and services are

6   sold.  Ex. 5 at 47:1-23; Ex. 6 at 298.  In fact, Dr. Goedde's dissertation studied how companies grow

7   given the competitive environment in the industries in which they were engaged – a study that

8   necessarily involved an economic analysis of the markets under evaluation.  Ex. 5 at 47:13-23.  He is

9   qualified to opine on the economic environment facing Oracle by virtue of his education.[2]

10      Dr. Goedde is also qualified through significant experience working with both forecasting

11   and macroeconomic data – facts that defendants conveniently ignore.  Dr. Goedde testified that he

12   studied business forecasting as part of his graduate work and extensively engaged in business

13   forecasting throughout his professional career, including as a financial economist at the U.S. Export-

14   Import Bank, as a manager at Arthur Andersen, director of strategic planning at NutraSweet, as a

15   Vice President at the First National Bank of Chicago, as a graduate school teacher, and on several

16   prior occasions as an expert witness. *Id*. at 13:7-20, 16:21-24, 48:14-21, 49:14-23, 51:16-20, 58:3-

17

18   [2]      Defendants argue that Dr. Goedde's opinions should be excluded because his education did
19   "not involve the kind of macroeconomic analysis [he] purports to offer in his opinion."  Mot. at 8-9.
     But they then cite language from a textbook that shows the precise opposite – "industrial
20   organization is the study of the structure of firms ***and markets and of their interactions***."  Mot. at 9
     n.4 (emphasis added).  Defendants also ignore the extensive economic education that graduate
21   programs provide, which include extensive study of macroeconomic issues and data.  Since
     Dr. Goedde's opinion focused on the market that affected Oracle, his graduate studies support his
22   qualification in this case.  For these reasons, neither *Whiting v. Boston Edison Co.*, 891 F. Supp. 12
     (D. Mass. 1995), nor *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310 (N.D. Okla. 2000),
23   support defendants' arguments.  Mot. at 8-9.  Both cases stand for nothing more than the proposition
     that courts cannot establish "[a] blanket qualification for all physicians to testify as to anything
24   medically-related."  *Alexander*, 98 F. Supp. 2d at 1315.  In fact, the expert opinions in both *Whiting*
     and *Alexander* were excluded because they were being offered for specialized opinions on causation
25   outside their field of specialty.  *Whiting*, 891 F. Supp. at 19-20, 25 (practitioner excluded from
     offering opinion on cause of leukemia where he was "not trained in hematology or oncology, the
26   medical disciplines in the treatment of leukemias"); *Alexander*, 98 F. Supp. 2d at 1315 (practitioner
     not qualified to give opinion on cause of spinal condition where he "lacks experience or training in
27   orthopedics, spinal surgery, spinal fusion with instrumentation, neurology, or other areas related to
     specialized opinions").  The same is not true here for Dr. Goedde.

28

22, 72:10-13.   And he explained that this forecasting experience necessarily encompassed macroeconomic data analysis:

> I mean, we've always looked at the economy in each of my jobs in strategic planning, whether it was for Andersen or . . . National Bank of Chicago or NutraSweet.  Those broad factors are certainly part of what would go into our forecast and we need to be, you know, mindful of them in determining what – whether there should be changes to the forecast.

*Id*. at 77:15-22.  This is the precise type of experience that will be helpful to a jury in understanding how the economic environment facing Oracle in 3QFY01 affected Oracle's forecasting process.

Dr. Goedde also has extensive practical experience assessing macroeconomic conditions.  He did so through his former role as a financial economist at the U.S. Export-Import Bank and currently does so as a member of the Board of Directors of Associated Foundations, a charitable organization that makes grants to universities and community organizations.  *Id*. at 73:19-74:4, 77:5-12.  In fact, Dr. Goedde testified that he prepared a forecast of economic conditions while at the U.S. Export-Import Bank of the type that defendants argue he is not qualified to give in this case:

> I did a forecast for the Export-Import Bank.  When I was there they were looking at specifically developing some economic expertise about the future economic growth areas.

                              *      *      *

> We would use macroeconomic forecasts that were prepared by others and had our own assessment of them and analyze them from that perspective.

*Id*. at 77:5-12, 78:5-7.  And as a member of Associated Foundations, Dr. Goedde testified that he currently works considerably with macroeconomic data to choose how to invest and distribute funds:

> My role is helpful in choosing the investments.  I focus on economic issues that are – we expect in the future or we figure out what sectors of the economy we should be investing in in the future.

                              *      *      *

> We look at, you know, recent pronouncements by the Federal Reserve Board.  We look at what other macroeconomic – economists are saying about the forecasts for the economy, government initiatives in the economy.  It's in broad-based economic factors.

*Id*. at 75:7-20, 76:22-77:1.  Given this experience, Dr. Goedde has, on multiple prior occasions, served as an expert witness concerning macroeconomic data and specifically how that data should influence forecasting decisions.  *Id*. at 13:7-20, 15:6-13, 20:8-21:14, 22:3-24:7.  It is abundantly

1   clear that Dr. Goedde is qualified to serve as an expert here through his "knowledge, skill,

2   experience, training [and] education."  Fed. R. Evid. 702.[3]

3        Defendants also argue that Dr. Goedde is not qualified because he has not "prepared a

4   macroeconomic forecast" or published research concerning macroeconomic data, "nor has he

5   previously analyzed macroeconomic conditions in 2000 and 2001."  Mot. at 9.  But defendants cite

6   to no authority suggesting that this is the type of experience required for an expert to give opinions

7   on the economy – especially where, as here, the economy is significant for how it impacts a

8   forecasting process.  Indeed, the liberal approach of Rule 702 envisions numerous avenues by which

9   to establish the qualifications of an expert witness – all of which are satisfied here.[4]  Fed. R. Evid.

10   702; *Thomas*, 42 F.3d at 1269; *see also Maiz*, 253 F.3d at 665 (finding an argument to exclude

11   expert on the basis of qualifications "not convincing" where the expert had a Ph.D. in economics

12   from Yale and extensive experience as a professional economist).[5]

13

---

14   [3]    Despite his testimony, defendants insist that Dr. Goedde's "only prior experience opinion

15   [sic] on macroeconomic conditions involved alleged expert testimony on economic conditions facing the semiconductor industry in the late 1990's."  Mot. at 9.  It is evident from the foregoing

16   discussion that defendants have selectively read Dr. Goedde's deposition transcript.  He has evaluated macroeconomic conditions in many contexts.  For this reason alone, *Thomas J. Kline, Inc.*

17   *v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989), does not help defendants.  But *Kline* is distinguishable in other respects.  In *Kline*, the court considered an expert's admission that she

18   lacked any training or experience in the relevant field, other than previously serving as an expert, in evaluating her reliability.  *Id.*  Here, Dr. Goedde has extensive educational and professional

19   credentials in addition to previously serving as an expert on a number of occasions.

20   [4]    Defendants attempt to bolster their argument by contrasting Dr. Goedde's experience with Hubbard's, who has extremely limited experience, if any, with forecasting in a business

21   environment.  Hubbard's qualifications (or lack thereof) certainly do not undermine Dr. Goedde's. And while Hubbard's experience includes serving as an advisor to President-Elect Bush and as the

22   Chairman of President Bush's Council on Economic Advisors, the opinions that he gives in this case about the economic environment are directly at odds with the advice that he was apparently giving to

23   President-Elect Bush during Oracle's 3QFY01.  *See* Plaintiffs' Motion to Exclude the Expert Testimony of R. Glenn Hubbard at 16-17.  Tellingly, defendants challenge very few, if any, of the

24   economic opinions in Dr. Goedde's rebuttal report, which showed that virtually all of the macroeconomic indicators cited by Hubbard support Dr. Goedde's opinion.  *See* Ex. 1 at 2-44.

25   [5]    Even if the Court finds that Dr. Goedde's education and experience do not perfectly conform

26   to the issues, numerous courts have found experts qualified where an expert's background closely parallels the issues.  *See, e.g.*, *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 176

27   (5th Cir. 1990) (allowing an expert with a doctorate in mechanical engineering to testify about the defective design of a press brake even though he had never designed one); *Friendship Heights*

28   *Assocs. v. Koubek*, 785 F.2d 1154, 1159-60 (4th Cir. 1986) (concluding that an architect who lacked

C.      **Dr. Goedde's Opinions Concerning the Macroeconomic Change Facing Oracle in 3QFY01 Are Reliable and Will Assist the Trier of Fact**

Defendants attempt to refute Dr. Goedde's opinion that Oracle was facing a major macroeconomic change entering 3QFY01 on the basis of three ill-conceived arguments: (1) Dr. Goedde does not adequately define "major macroeconomic change"; (2) the factors considered by Dr. Goedde in reaching his opinion were not scientifically selected; and (3) there is no scientific connection between Oracle's business and the major macroeconomic change that it faced in 3QFY01. Mot. at 10-14. Defendants' arguments are the result of improperly applying the *Daubert* factors and, in any event, are belied by the record and Dr. Goedde's analysis.

1.      **Dr. Goedde Repeatedly, and Reliably, Defines "Major Macroeconomic Change"**

Defendants devote seven out of eighteen pages of their Motion to the proposition that Dr. Goedde's opinions should be excluded because he did not "define" major macroeconomic change to their satisfaction. Mot. at 1-5, 10-11. Any reasonable review of the record, however, reveals that Dr. Goedde repeatedly and uniformly defined that phrase in response to defendants' repetitive questions. Dr. Goedde's answer was clear:

[Q:]    What is your definition of a major macroeconomic change?

A:      A change that affects their business.

                    *        *        *

[A:]    Macroeconomics would be outside the operation of Oracle. There were several changes. The . . . overall economy was experiencing a period of lower growth, and the more sector-specific economy was experiencing a change in growth as well.

                    *        *        *

practical experience concerning the coatings on concrete was qualified and noting that experience is not necessary if other proof is offered on qualifications); *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (finding a mechanical engineering professor qualified to opine on the design of a truck's exhaust system despite a lack of experience in design or manufacture of the particular system); *Vienne v. Am. Honda Motor Co.*, No. 99-3716, 2001 U.S. Dist. LEXIS 606, at *7-*8 (E.D. La. Jan 16, 2001) (finding an expert qualified to testify on a three-wheeler's design defects despite the fact that he was not an engineer and had never designed a three-wheeler, because of his experience and academic background).

1

2

3

> A:     I would look to see if there was a change from a period of high growth to a period of much lower growth.  That would be one way of looking at a macroeconomic change.  Say a turning point.  If the company had undergone a number of periods of high growth and now the conditions were shifting so that they were in low growth, that would be a major change.

4   Ex. 5 at 79:6-8, 81:9-13, 82:12-18.  Dr. Goedde's reports also thoroughly outline the conditions that

5   are consistent with his definition and that support his opinion.  Ex. 4 at 4-8, 10-17; Ex. 1 at 2-44.

6   Defendants' refusal to accept Dr. Goedde's definition, even though supported by extensive analysis,

7   cannot serve as a basis to exclude his relevant and reliable opinions about the economic environment

8   in Oracle's 3QFY01.

9           As explained in detail in Dr. Goedde's reports, the conditions that Oracle faced in 3QFY01

10   support his opinion that Oracle was facing major economic change that was the polar opposite of the

11   conditions in Oracle's 3QFY00.  Tech spending was on the decline, the FOMC reduced the Federal

12   Funds rate twice in one month, and the NASDAQ, which had fueled Oracle's extraordinary results in

13   3QFY00, had collapsed.  Ex. 4 at 4-8; Ex. 1 at 9-20.  Indeed, the FOMC's Federal Funds rate

14   reduction twice in one month – which it had not done for ten years – was a major change under any

15   definition, especially since the FOMC actually raised the Federal Funds rate in Oracle's 3QFY00 to

16   offset an overheated economy.[6]   Ex. 1 at 15-19.   Dr. Goedde's opinions parallel the

17   contemporaneous opinions of economists about the overall economy in general – and the software

18   sector in particular – and are therefore objectively reliable.  Defendants' complaints about

19   Dr. Goedde's definition are nothing but a red herring to deny reality – that the macroeconomic

20

21

_____

22   [6]      The FOMC characterized its second January 2001 reduction as a "'relatively aggressive

23   policy adjustment in a short period of time.'"  Ex. 1 at 16 (citation omitted).  And, some very prominent economists held the view that the economy was in a recession in Oracle's 3QFY01:

24          *The Boston Globe* – 2/1/01 – "'What we're seeing here, in the numbers so far,

25   is that one sector of the economy is in a bona fide recession; that's manufacturing,' said Wayne Ayers, chief economist at FleetBoston Financial." *Id*. at 65.

26          *Chicago Tribune* – 2/1/01 – "'The economy's in a recession and the Fed is

27   responding accordingly,' said Steve Roach, chief economist at Morgan Stanley Dean Witter."  *Id*.

28

1   environment facing Oracle in 3QFY01 was radically different than the quarter that Oracle used for

2   comparison.[7]

3        Defendants also argue that the phrase "major macroeconomic change" is not a term of art,

4   but cite to nothing suggesting that experts are limited to testifying about terms of art.[8]  Mot. at 10.

5   Further, defendants claim that Dr. Goedde created the phrase "major macroeconomic change"

6   "solely for purposes of this litigation," and therefore his opinions must be excluded under *Daubert*.

7   Mot. at 11.  Defendants ignore the Supreme Court's finding that the application of *Daubert* factors

8   must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150.  Nothing about a

9   descriptive phrase invokes the concerns of *Daubert's* "solely for purposes of litigation" factor.  As

10  the Ninth Circuit explained in *Daubert*, "[o]ne very significant fact to be considered is whether the

11  experts are proposing to testify about matters growing naturally and directly out of research they

12  have conducted independent of the litigation, or whether they have developed their opinions

13  expressly for purposes of testifying."  *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1317 (9th

14  Cir. 1995).  Thus, the "solely for purposes of litigation" factor concerns itself here only with whether

15  Dr. Goedde is testifying about matters growing naturally out of his education and professional

16  experience, not whether he has ever before used the descriptive phrase "major macroeconomic

17  change."  For all the reasons set forth in §III.B., Dr. Goedde is clearly testifying about matters

18  "growing naturally out of his education and professional experience."  *Id*.  In short, there is

19

20  _____

21  [7]     Defendants argue that Dr. Goedde's opinions are unreliable because he could not quantify the degree of change necessary to qualify as "major" or define the period of time over which the change

22  would occur. Mot. at 11. Defendants are again mistaken. Dr. Goedde quantified the relevant time period, which was the year-over-year time period that defendants used for purposes of extrapolating

23  and he quantified the dramatic slowing growth that supports his opinion as reflected in the collapse of the NASDAQ and the significant slowdown in the software sector in which Oracle operated. *See*

24  Ex. 4 at 4-8,12-15; Ex. 1 at 41.  By any reasonable definition, Oracle was experiencing a major economic change between 3QFY01 and 3QFY00. Defendants' arguments are a transparent attempt

25  to avoid this reality.

26  [8]     Defendants' claim that the lack of peer-review for the phrase "major macroeconomic change" is fatal to Dr. Goedde's opinions is misguided. Mot. at 10. The Supreme Court held in

27  *Daubert* that some propositions may be "too particular" to be published. *Daubert*, 509 U.S. at 593. Whether Oracle was facing a "major macroeconomic change" falls within this category. *Id*.

28

1  absolutely no basis, in law or reason, to exclude Dr. Goedde's testimony because of his use of the

2  descriptive phrase "major macroeconomic change."

3       Defendants also repeatedly (and improperly) argue that Dr. Goedde should be excluded

4  because he does not accept their interpretation (often distorted) of the evidence.  Mot. at 10 n.6.  *See*

5  *also* §III.D., *infra*.  With respect to the phrase "major macroeconomic change," they argue that he

6  should be excluded because he "rejected Mr. Ellison's own definition of the term (a 'sudden growth

7  in the economy or sudden shrinkage in the economy')" and they say he did so "presumably because

8  the economic data do not support Dr. Goedde's conclusion under that definition."  Mot. at 10 n.6.  In

9  doing so, they argue that what Ellison really meant was a "contraction" in the economy as that term

10 is used by economists.  *Id.* (arguing that Dr. Goedde "conceded" that there was not a contraction in

11 the economy).  Not only is defendants' factual argument legally flawed, but it is also mistaken.  At

12 its most basic level, defendants distort Ellison's testimony.  *Id.*  He testified that any number of

13 factors could cause Oracle's forecast to be inaccurate.  Ex. 7 at 384:6-385:7.  Included in those

14 factors was a "major macroeconomic change" and "sudden growth in the economy or sudden

15 shrinkage in the economy."  Mot. at 10 n.6.  He did not testify that a "contraction," as defendants'

16 lawyers would like to use that term, would undermine the accuracy of Oracle's forecast.  *Id.*  In fact,

17 executives within Oracle, Sanderson in particular, referred to the "dotcom falloff" alone as a "major

18 macroeconomic event" that defendants likely discussed at Oracle's executive committee meetings.

19 Ex. 17 at 88:5-17.

20      Irrespective of Ellison's definition, the very point of Dr. Goedde's opinion, which is based on

21 his extensive forecasting experience, is that the sudden slowing of growth in the sector that Oracle

22 faced is what undermined the accuracy of Oracle's forecast, because that forecast was based largely

23 on a year-over-year extrapolation.  *See* Ex. 4 at 4-8, 10-21; *see also* Declaration of Alan G. Goedde

24 in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Goedde

25 Decl."), filed concurrently herewith, ¶¶11, 12 & Exs. 7-9.  Even if Ellison's testimony could be

26 stretched to what defendants would now like it to be, it cannot serve as a basis to exclude

27 Dr. Goedde's opinion.

28

2.  **The Factors Considered by Dr. Goedde Are Reliable
Indicators of the Economic Climate Facing Oracle Leading Up
to and Throughout 3QFY01**

Defendants claim that Dr. Goedde relied on only five factors that they now consider insufficient in assessing the macroeconomic conditions facing Oracle in 3QFY01: (1) the NASDAQ crash; (2) the bursting of the dot.com bubble; (3) media coverage of the demise of venture capital funding; (4) the collapse of technology spending; and (5) the earnings shortfalls of Oracle's competitors. Mot. at 11. Defendants assert that these factors were not "scientifically" chosen, and therefore Dr. Goedde's opinions must be excluded. This is nonsense. Defendants cite no authority for the proposition that these factors unreliably measured the macroeconomic environment facing Oracle in 3QFY01. For this reason alone, defendants' argument fails.

Defendants also argue that Dr. Goedde has "not cited any rationale . . . for relying on these factors." *Id.* at 12. However, Dr. Goedde provided the rationale for analyzing these factors in his report. Ex. 4 at 4-8, 12-17. For example:

- The NASDAQ included 14 out of 17 companies Oracle identified as competitors in its FY2000 10-K filing (*id.* at 5);

- "Of the 100 largest stocks in the NASDAQ, 66 were listed in the information technology industry – an industry in which Oracle competed and sold products" (*id.*);

- Oracle's dot.com sales accelerated significantly in fiscal years 1999 and 2000 during the height of the dot.com bubble and venture capital funding (*id.* at 6);

- Internal Oracle documentation shows the collapse of Oracle's dot.com revenues and drying up of venture capital funding (*id.* at 14); and

- With respect to Cisco and Sun, Ellison stated that "'[i]f you plot the stock price of Cisco, Oracle, and Sun, you will see that all three companies rose and fell together in perfect synchronization as sentiment about the internet rose and fell'" (*id.* at 5 (citation omitted)).

Clearly, the factors that Dr. Goedde chose directly speak to the macroeconomic conditions facing Oracle during 3QFY01. Defendants have no basis to argue that there is no "rationale" for relying on these factors.

Defendants also argue that the factors Dr. Goedde considered to gauge the economy facing Oracle bear "no resemblance to the economic indicators actually relied upon by experts in the field to evaluate macroeconomic trends." Mot. at 12. Defendants are misguided. The focus of

1   Dr. Goedde's opinions was on the technology sector of the economy that directly affected Oracle's

2   operations, not on broad-based indicators of the general economy.  Even if he had focused on those

3   indicators, however, his opinion would not have changed.  As discussed in Dr. Goedde's rebuttal

4   report, each of the factors that Hubbard analyzed for the general economy supported Dr. Goedde's

5   opinion.  *See* Ex. 1 at 20-44.  This provides an independent and objective measure of reliability,

6   which defendants do not seriously challenge.[9]

7          Notably, defendants' own expert applied the same categories of factors that Dr. Goedde

8   applied when analyzing the sector in which Oracle operated.  Like Dr. Goedde, Hubbard evaluated

9   the measure of equity values of companies in the sector in which Oracle operated,[10] he studied

10  market commentary from analysts during that period of time, and he studied Oracle's business as

11  measured by the diversity of Oracle's customer base.  Ex. 8 at 21-50.  Defendants cannot credibly

12

13  _____

14  [9]     Defendants argue that "Dr. Goedde later conceded that the U.S. government data showed that

15  spending on software continually increased during calendar year 2000" and suggest that his
    testimony is inconsistent with his opinion.  Mot. at 11 n.7.  Defendants' argument is disingenuous.

16  They have intentionally omitted the part of Dr. Goedde's testimony where he stated that Oracle's
    counsel was mischaracterizing the exhibit used in the line of questioning.  Ex. 5 at 124:4-125:25.  He

17  explained clearly that while the raw numbers were increasing, it was the rate at which they were
    increasing that supports his opinion.  *Id*.  In fact, as the FOMC recognized, the rate of growth in

18  equipment and software was *decelerating* rapidly at the end of calendar year 2000 (and even
    contracted in 4QCY00) and software specifically collapsed from nearly 7% growth in the beginning

19  of the year to just 2.9% in 4QCY00.  Goedde Decl. ¶¶11, 12 & Exs. 7-9.  This collapse was reported
    publicly on January 31, 2001, in the middle of Oracle's 3QFY01.  *Id*.  Defendants cannot avoid the

20  reality of the economic environment at the time with this type of sleight of hand.

21  [10]    It is ironic that defendants argue that the National Bureau of Economic Research ("NBER")
    "did not consider the performance of any selection of equity securities to be a legitimate and

22  accurate macroeconomic indicator" when their own expert analyzed this very type of measure.  Mot.
    at 12; Ex. 8 at 42-46.  Hubbard's use of software sector indices belies their suggestion that the

23  NBER should set the standard for appropriate economic analysis in this case.  Mot. at 12.  Perhaps
    the NBER does not study selections of equity securities because it is attempting to gauge the

24  direction of the general U.S. economy instead of how the economic environment affects one firm in
    that economy.  Nevertheless, any suggestion that the collapse of the NASDAQ was not a gauge of

25  the economic health of companies in that market defies reality.  When the NASDAQ was rising in
    significant part because of venture capital funding and dot.com growth, Oracle's revenues from the

26  dot.com sector alone skyrocketed from $4 million in 1Q99 to $172 million in 4Q00.  Ex. 4 at Exs. 4
    & 5.  When it collapsed, Oracle's dot.com revenues collapsed with it.  *Id*.  Dr. Goedde therefore

27  establishes that the NASDAQ was a reliable gauge of the health of a significant part of Oracle's
    business.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-MJJ                     - 13 -

1    argue that Dr. Goedde's selection of criteria was not scientific when their expert selected similar

2    criteria.[11]

3        The macroeconomic factors selected by Dr. Goedde are reliable indicators of the

4    macroeconomic conditions facing Oracle during the relevant time, and defendants cannot refute that

5    consideration of these factors would assist the trier of fact.

6        **3.    Defendants Cannot Credibly Deny a Link Between the Major
                Macroeconomic Change Facing Oracle in 3QFY01 and
7                Oracle's Business**

8        Defendants argue that "unless the 'major macroeconomic change' that Dr. Goedde observes

9    had some meaningful impact on Oracle's business and its ability to forecast quarterly results,

10   Dr. Goedde's opinion is utterly irrelevant to the case." Mot. at 13. But defendants ignore that the

11   very reason defendants cited for Oracle's 3QFY01 collapse was a dramatically shifting economic

12   landscape. On March 1, 2001, defendant Ellison blamed the U.S. economy for Oracle's earnings

13   miss – "senior managers are deferring expenses and pushing out IT expenditures in light of the

14   uncertain U.S. economy." Ex. 2 at NDCA-ORCL 050660. Oracle's CFO, defendant Henley, told

15   the market on March 15, 2001, of the Company's 3Q01 earnings collapse and stated: "But clearly, I

16   think it was the economy that really did us in." Ex. 3 at NDCA-ORCL 050622. It is readily

17   apparent that the macroeconomic analysis undertaken by Dr. Goedde is highly relevant to the case as

18   it demonstrates Oracle's knowledge of the changing macroeconomic conditions facing the company

19   entering 3QFY01, which ultimately caused a significant part of Oracle's earnings collapse.

20

21

---

22   [11]    Defendants argue that NBER's conclusion in November 2001 that business activity in the
23   U.S. had peaked in March 2001 "strongly undercuts Dr. Goedde's opinion." Mot. at 12-13 n.9.
     What the NBER concluded almost a full year after the Class Period has no bearing on Dr. Goedde's
24   opinions and certainly cannot serve as a basis to exclude his testimony. This is especially true since
     Dr. Goedde established in his rebuttal report that virtually every broad-based economic indicator at
25   the time supports his opinion. *See* Ex. 1 at 20-44. *Lust v. Merrell Dow Pharmaceuticals*, 89 F.3d
     594, 598 (9th Cir. 1996), does not hold otherwise. In *Lust*, the court expressed concern that an
26   expert reached a conclusion "shared by no other scientist" in the field. *Id.* at 598. Contrary to the
     facts in *Lust*, here Dr. Goedde's opinions were shared by many economists in the field at the time
27   (including defendants' own expert as reflected in the comments of the Bush administration) and are
     supported by reliable economic analyses.

28

1    Defendants' argument that Dr. Goedde "made absolutely no effort to show that the factors he

2    analyzed have any impact on Oracle's business at all, much less an impact that significantly

3    hampered Oracle's ability to forecast its quarterly results" is plainly wrong. Mot. at 13. Dr. Goedde

4    has demonstrated the impact of these factors on Oracle's business in many ways.  He demonstrates

5    that changing economic conditions would have undermined Oracle's forecast process because it was

6    based on a year-over-year extrapolation.  Ex. 4 at 4-8, 10-21; Ex. 1 at 74-81.  By demonstrating that

7    the economic environment had changed dramatically, Dr. Goedde established a meaningful link.  He

8    also established a direct link between the collapse of the NASDAQ and a collapse in Oracle's

9    revenues.  In fact, his report details Oracle's lost dot.com revenue, which Henley cites as a cause of

10   Oracle's miss – "'the dot.com erosion that had started several quarters earlier'" had a "'negative

11   comparison effect'" on Oracle.  Ex. 4 at 16, 46 (citations omitted); Ex. 9 at 233:20-235:17, 309:13-

12   311:9.  And Dr. Goedde also testified that there was a logical (and undisputed link) between reduced

13   technology spending and venture capital funding and Oracle's business:

14       Q:    Are you alleging that there's a direct correlation between the VC funding and
               whatever the levels are of VC funding and the overall Oracle revenue?
15
                              *        *        *
16
         [A:]  VC funding is an indicator of the health of the dot-com market.  The health of
17             the dot-com market drives sales of – to dot-com companies.

18       Q:    And you're not offering an opinion that there's any more direct correlation
               than just this idea that VC funding reflects the overall health of the dot-coms?
19
         A:    Well, it's not an idea.  It's – that's how dot-coms get funded.
20
                              *        *        *
21
         A:    It's not just an idea.
22
23   Ex. 5 at 111:7-23.  The dot.com collapse (which defendant Sanderson identified as itself a "major

24   macroeconomic event") is, again, a prime example and an objective measure establishing that

25   Dr. Goedde's methodologies are reliable.[12]

26   _____

27   [12]   According to their own experts, Oracle's conversion ratio (the rate at which Oracle converted
     its pipeline into sales) declined significantly year-over-year in every quarter between 3QFY00 and
28   3QFY01.  Ex. 10 at 27.  It is not a coincidence that this decline correlated to the collapse in the

1    Defendants also argue that Dr. Goedde has not shown that Oracle's forecast process could

2    not properly account for the dot.com bust. Mot. at 13. Not true. Dr. Goedde's analysis is clear and

3    supported by the factual record. Since Oracle's forecast depended in large measure on a year-over-

4    year extrapolation, it could not have properly accounted for the dot.com collapse. This is especially

5    true since Oracle's public guidance was aggressive by any measure and that aggression was in

6    comparison to an extraordinary quarter that was driven, in large part, by sales to Oracle's dot.com

7    customers. Indeed, the very focus of Dr. Goedde's opinion is that Oracle's forecast process was

8    unreliable because it did not consider changing economic circumstances. Defendants have raised

9    nothing more than a pure factual issue that cannot serve as a basis to exclude Dr. Goedde's opinions.

10    Defendants' objections may be the appropriate basis for cross-examination, but not for

11    exclusion under *Daubert*.

12    **D.    Dr. Goedde's Opinions Concerning Oracle's Forecasting Process Are Reliable and Will Assist the Trier of Fact**

13    While defendants mount a vigorous challenge to Dr. Goedde's economic qualifications, they

14    do not dispute (and therefore concede) that he has the "knowledge, skill, experience, training, or

15    education" to opine upon Oracle's forecasting process. Fed. R. Evid. 702. In fact, of the three

16    forecasting experts proffered in this case, Dr. Goedde is the only expert who has actually prepared

17    and evaluated a forecast in the business environment. *See* Ex. 4 at 2-4; Ex. 5 at 13:7-20, 16:21-

18    17:21, 48:14-21, 49:12-51:2, 51:4-70:3, 72:10-13. Given these dynamics (and the fact that their own

19    experts lack the necessary qualifications), it is no wonder that defendants concede that Dr. Goedde is

20    qualified.[13]

---

23    NASDAQ. Defendants' contention that there was no meaningful correlation between the NASDAQ
      collapse and Oracle's business is belied by the record and disproven by their own analysis. Mot. at

24    14. While they argue that Oracle's conversion ratios did not move in perfect tandem with the
      NASDAQ, they cannot dispute that Oracle was converting far fewer deals in its pipeline in FY01

25    (when the NASDAQ was collapsing) than it was in FY00 (when the NASDAQ was on the rise).

26    [13]    Defendants argue that Dr. Goedde's forecasting opinions are unreliable because they rely on
      his economy opinions. Mot. at 14. As discussed in §III.C., *supra*, defendants' argument is based on

27    a flawed premise. Dr. Goedde used a reliable methodology to reach his opinions about the economy
      in which Oracle operated in 3QFY01. *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002),

28    does not support their argument. In *Amorgianos*, the court stated the general proposition that "it is

1    Having no basis to challenge his forecasting qualifications, defendants mount a number of

2    challenges that do nothing more than argue their version of the facts. Mot. at 14-18. Under no

3    circumstances can these factual arguments serve as a basis to exclude Dr. Goedde's opinions. *DSU*,

4    296 F. Supp. 2d at 1147 ("'it is not the role of the trial court to evaluate the correctness of facts

5    underlying one expert's testimony'") (quoting *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387,

6    1392 (Fed. Cir. 2003)); Fed. R. Evid. 702 advisory committee's note (the amendment on "'sufficient

7    facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground

8    that the court believes one version of the facts and not the other"). "[W]hen the parties' experts rely

9    on conflicting sets of facts, an expert may testify on his party's version of the disputed facts. The

10   proper way for a party to challenge an expert in such a situation . . . is through cross-examination of

11   the expert." *DSU*, 296 F. Supp. 2d at 1148.

12   Defendants argue that Dr. Goedde's forecasting opinions should be excluded because he

13   "simply ignored Ms. Minton's testimony as to how she derived the Potential Projection." Mot. at

14   15.[14] They say that because Dr. Goedde's assumptions are contradicted by Minton's testimony, his

15   conclusions are unreliable and inadmissible. *Id.* Not only are defendants' arguments legally

16   baseless, they are even more factually flawed. Indeed, the weight of the evidence in this case

17

18   critical that an expert's analysis be reliable at every step," but added that "'[t]he judge should only
     exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her

19   conclusions.'" *Id.* (citations omitted). It is defendants that fail both steps. Not only have they failed
     to establish that Dr. Goedde's economy opinions are based on unreliable methodologies, but they

20   also cannot legitimately dispute that Dr. Goedde has "good grounds" for his opinion. *Id.* Indeed,
     economists at the time shared the same opinion that Dr. Goedde offers in this case, and virtually all

21   of the broad economic indicators that defendants' own experts analyzed support Dr. Goedde's

22   opinion. Ex. 1 at 20-44.

23   [14]  Defendants' reliance upon *Guillory v. Domtar Industries*, 95 F.3d 1320 (5th Cir. 1996), to
     argue that Dr. Goedde's opinions should be excluded for relying on facts purportedly contradicted by

24   the record is misplaced. Mot. at 15. In *Guillory*, the court excluded a forklift expert that had
     constructed a forklift model with a different design than the forklift at issue in the case and included

25   "post-accident modifications added to the forklifts" that made his conclusions "unfounded and
     misleading." *Id.* at 1331. The court concluded that the expert's opinion was based on "altered facts"

26   and speculation to bolster defendants' position. *Id.* This case is very different. Dr. Goedde has not
     altered any facts and is instead applying his methods reliably to the facts of the case as he views

27   them. *Guillory* does not support defendants' argument that Dr. Goedde should accept their distorted
     view of the evidence.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-MJJ                         - 17 -

1   confirms that historical conversion rates predominately formed the basis of Oracle's forecasts.

2   Minton said it.  Ex. 11 at 135:7-136:12.  Ellison said it.  Ex. 7 at 384:6-385:7.  And Dr. Goedde's

3   analysis confirms it.  In fact, not only did Dr. Goedde study the relative movements in the

4   conversion ratios year over year, which he testified "closely mirrored" Minton's Potential Projection,

5   but his supplemental analysis also confirms that Minton adhered to the conversion ratio process to

6   form her Potential Forecast.  Ex. 5 at 148:8-20, 150:25-152:19; Ex. 1 at Ex. 4; Goedde Decl. ¶¶3-5 &

7   Exs. 1-3.  In fact, Minton admitted in a 2002 e-mail that she reached her "true forecast" exactly as

8   Dr. Goedde says she did – by "applying historical conversion rates to the pipeline":

> [F]orecast conversion ratios – forecast as a % of pipeline.  We track this for every forecast period within a quarter.  This enables us to evaluate conversion rates.  The conversion rates have been declining over historical periods due to the economic recession.  When we were going through the dot.com bubble, the field would generally 'sandbag' their forecast. ***By evaluating historical trends, Jeff and I would be able to determine what the true forecast was by applying historical conversion rates to the pipeline***.  As a side note, my upside analysis was usually spot on!

13   Ex. 12.[15]  Defendants' demand for quantification of the difference between a mechanical application

14   of the conversion ratio and Minton's upside adjustment is unnecessary given the weight of the

15   evidence supporting Dr. Goedde's opinion.  Mot. at 16.  Nevertheless, Dr. Goedde testified that there

16   was very little deviation between Minton's Potential Forecast and a mechanical application of the

17   historical conversion ratio, and his supplemental analysis proves it.  Ex. 5 at 148:8-20, 150:25-

18   152:19; Goedde Decl. ¶¶3-5 & Exs. 1-3.  Defendants' factual arguments do not support excluding

19   Dr. Goedde's opinions.[16]

---

[15]   Defendants repeat the identical argument that they made about the NASDAQ in their challenge to Dr. Goedde's economy opinions to support their argument that Dr. Goedde's forecasting opinions should be excluded.  *Compare* Mot. at 15 *with* Mot. at 13-14.  Defendants' argument fails in the forecasting context for the same reason that it failed in the economic context.  As Minton herself explained, "[t]he conversion rates have been declining over historical periods due to the economic recession."  Ex. 12.  This fact, which defendants knew going into 3QFY01, supports Dr. Goedde's opinions.  *See* Discussion III.C.3., *supra*.

[16]   *Mukhtar*, 299 F.3d at 1066, and *Playtex Products v. Proctor & Gamble Co.*, No. 02 Civ. 8046 (WHP), 2003 U.S. Dist. LEXIS 8913 (S.D.N.Y. May 28, 2003), do not support defendants' argument.  In fact, in *Mukhtar*, the court "express[ed] no opinion on the merits of whether [the expert's] testimony was, in fact, reliable" and held only that the court failed to properly make a reliability finding before admitting the expert's opinion.  299 F.3d at 1066 n.12.  *Playtex Products*, 2003 U.S. Dist. LEXIS 8913, on the other hand, is distinguishable.  There, defendants offered the

1    Defendants' next factual argument challenges Dr. Goedde's opinion that Oracle's forecasting

2  process did not take into account macroeconomic information because it is "contrary to

3  Ms. Minton's testimony." Mot. at 17.  Defendants also suggest that Dr. Goedde's opinions should

4  be excluded because their own experts say "that macroeconomic information was taken into account

5  in the forecasting process."  *Id.*   None of these arguments can serve as a basis to exclude

6  Dr. Goedde's testimony.  One presents a factual question and the other presents a dispute between

7  experts.[17]  In fact, contrary to defendants' view of the evidence, Minton testified that she did not take

8  economic conditions into consideration when performing her conversion ratio analysis, which

9  formed the basis of her Potential Forecast. Ex. 11 at 135:7-136:12; Ex. 1 at 74-76 & Ex. 4; Goedde

10  Decl. ¶¶3-5 & Exs. 1-3.  And plaintiffs have moved to exclude Foster's and Hubbard's opinions

11  concerning this issue as it amounts to rank speculation.  Defendants have no basis to challenge

12  Dr. Goedde's conclusions on this issue from the record.  Even if defendants could establish

13  inconsistent facts, however, it would be meaningless for purposes of a *Daubert* motion.  Fed. R.

14  Evid. 702; *DSU*, 296 F. Supp. 2d at 1147-48 ("[W]hen the parties' experts rely on conflicting sets of

15  facts, an expert may testify on his party's version of the disputed facts.").[18]

16

---

17  opinion of an obstetrician/gynecologist to validate their claim that Playtex's tampons were "So
18  Comfortable You Can't Even Feel Them."  *Id.* at *28-*29.  But in offering her opinion, the expert
   relied only on her "own experience as a practicing and teaching obstetrician/gynecologist" and
19  "'anecdotal conversations' she had with some patients."  *Id.* at *29.  The court held that the expert's
   conclusions "founded solely on 'anecdotal evidence'" were not reliable and were inadmissible as
20  they could not be tested or verified.  *Id.*  The opposite is true here.  Dr. Goedde's opinions on the
   mechanical application of Oracle's historical conversion can be, and have been, tested. Ex. 1 at 74-
21  76 & Ex. 4.  Supplemental analysis has further validated Dr. Goedde's opinion. Goedde Decl. ¶¶3-5
   & Exs. 1-3.

22  [17]    Defendants' arguments that their experts contradict Dr. Goedde's opinions relating to
23  Oracle's monthly revenues and its pipeline declines fail for the same reason.  Mot. at 16 n.11.
   Differing expert opinions can hardly serve as a basis to exclude expert testimony. *Micro Chem.*, 317
24  F.3d at 1392.

25  [18]    Hubbard's and Foster's opinions that macroeconomic conditions were considered in the
   forecasting process through Oracle's interactions with customers is not only speculative, but it is also
26  belied by Henley's testimony – "Until you get to the end of the quarter, unfortunately, in this crazy
   business I'm in, *you really don't test your customer[s] to see what they really think about their*
27  *business and what they really think about the economy*."  Ex. 9 at 206:5-9 (emphasis added).
   Given the weight of the evidence supporting Dr. Goedde's opinion, defendants' arguments that the
28  record supports Dr. Goedde's exclusion is preposterous. *Brooke Group Ltd. v. Brown & Williamson*

1    Defendants also argue that Dr. Goedde's opinion "is unreliable because it is based on a

2    misreading of the evidence" that defendant Ellison ordered more risk included in Oracle's 3QFY01

3    forecast.  Mot. at 17.  But there is substantial evidence in the record to support the fact that defendant

4    Ellison did just that.   Ex. 4 at 11; Ex. 13; Ex. 14; Ex. 15 at NDCA-ORCL 151961-62; Ex. 16 at

5    19:17-19, 105:10-21; Ex. 7 at 423:24-425:1.  In fact, Dr. Goedde's supplemental analysis reveals

6    that Oracle's sales divisions followed Ellison's directive and added a substantial amount of

7    additional "management judgment" right after they received Ellison's directive.  Goedde Decl. ¶¶6-

8    10 & Exs. 4-6.  And Dr. Goedde explained in his deposition how his opinion is consistent with

9    Ellison's testimony denying that he wanted more risk in the forecast, which defendants claim serves

10   as a basis to exclude his testimony:

11           I think he – he was – that question was asked to him in a deposition, and I think there
             was some confusion.  He started talking about – not the risk, but I think he clarified
12           the position.

13           But the point is what he wanted was no more sandbagging.  So if there's not
             going to be any more sandbagging, salespeople are going to have to put more risk in
14           their forecasts.  So I think when that was made clear to him, I think he agrees that the
             salespeople have to eliminate the sandbagging.
15

16   Ex. 5 at 223:8-17.  What defendants "believe" to be correct is irrelevant for this Motion.  Rather, it is

17   for the trier of fact to determine who is correct.[19]  Dr. Goedde's opinion cannot be excluded simply

18   _____

19   *Tobacco Corp.*, 509 U.S. 209 (1993) and *Supply & Building Co. v. Estee Lauder International, Inc.*,
     No. 95 Civ. 8136 (RCC), 2001 U.S. Dist. LEXIS 20737 (S.D.N.Y. Dec. 13, 2001), do not support
20   defendants' argument.  *Brooke Group* holds that only where evidence is "insufficient as a matter of
     law to support" a claim or "**indisputable** record facts contradict or otherwise render the opinion
21   unreasonable" can an expert's opinion not support a jury finding.  509 U.S. at 242-43 (emphasis
     added).  *Supply & Building*, on the other hand, reveals the type of analysis that is precluded under
22   the *Brooke Group* principle.  *Supply & Bldg.*, 2001 U.S. Dist. LEXIS 20737, at *14-*16.  There, the
     court excluded plaintiffs' expert who "based his report on his client's unrealistic assurances rather
23   than available records."  *Id.* at *16.  The court noted that "[p]laintiff does not and cannot cite a place
     in the record demonstrating that [plaintiffs' expert] reviewed Supply & Building's records rather
24   than relying on his client's conclusory statements" and held that "this is not the type of shortcut to be
     expected from an economist with 25 years of experience."  *Id.* at *14, *16.  Dr. Goedde does nothing
25   of the sort.  Instead, he applies his methodologies reliably to his reasonable interpretation of Oracle's
     records.

26   [19]    Defendants also misrepresent Dr. Goedde's opinion that Ellison's directive doubled the risk
     in Oracle's forecast.  Mot. at 18.  Dr. Goedde testified that "double the risk" means that Minton
27   added risk on top of a field forecast that already included more risk (*i.e.*, double layers of risk).
     Ex. 5 at 228:6-14.

28

1    because he does not ascribe to defendants' version of the facts.  Fed. R. Evid. 702; *Micro Chem.*, 317

2    F.3d at 1392.  To the extent defendants disagree with Dr. Goedde, they are entitled to vigorously

3    cross-examine him at trial.[20]

4           Defendants' factual disagreements and distortions of the record are clearly insufficient to

5    meaningfully object to the reliability of Dr. Goedde's opinions.  Dr. Goedde's opinions should not

6    be excluded as they are relevant, reliable, and would assist the trier of fact.

7    **IV.    CONCLUSION**

8           For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants'

9    *Daubert* Motion to Exclude Expert reports and Testimony of Alan G. Goedde.

10   DATED:  October 10, 2007                          Respectfully submitted,

11                                                     COUGHLIN STOIA GELLER
                                                          RUDMAN & ROBBINS LLP
12                                                     MARK SOLOMON
                                                       DOUGLAS R. BRITTON
13                                                     STACEY M. KAPLAN

14

15                                                              s/DOUGLAS R. BRITTON
                                                       DOUGLAS R. BRITTON
16

17
_____

18   [20]    Defendants argue that Dr. Goedde's supplemental analysis of management judgment is
     inadmissible. Mot. at 18 n.15. Defendants are wrong. An expert is allowed to supplement under the
19   Federal Rules to address challenges made by opposing experts. *Miller v. Pfizer, Inc.*, 356 F.3d 1326,
     1332 (10th Cir. 2004) (finding that an expert's initial Rule 26 report cannot always anticipate every
20   possible challenge to the report and it may be appropriate to permit the party using the expert to
     submit supplements to the report in response to assertions by opposing experts that there are gaps in
21   the expert's chain of reasoning).  Dr. Goedde's additional analysis was done after defendants'
     experts made the absurd (and inadmissible) claim that Oracle did not follow Ellison's directive.
22   Ex. 5 at 220:12-22.  Dr. Goedde's analysis is not a new opinion.  Rather, it is an analysis that
     supplements an existing opinion and is therefore proper.  Defendants' reliance on *Hoffman  v.*
23   *Caterpillar, Inc.*, 368 F.3d 709 (7th Cir. 2004) and *In re Williams Sec. Litig.*, No. 02-cv-072-SPF-
     FHM, 2007 U.S. Dist. LEXIS 49123 (N.D. Okla. July 6, 2007), is misplaced.  Neither case holds
24   that an expert may not supplement his opinions at summary judgment based upon arguments or
     challenges raised by defendants or their experts, especially those raised for the first time in
25   defendants' rebuttal reports.  *Hoffman* precluded expert testimony that the plaintiff sought to
     introduce **on the first day of trial** because plaintiff had not amended her Rule 26 disclosures and
26   gave no indication that she intended to offer a new basis for the expert opinion. 368 F.3d at 714-15.
     The court excluded this opinion only because defendants would have been harmed by the last minute
27   introduction. *Id. Williams*, on the other hand, merely recounts the general standard outlined in Rule
     26(a)(2) and is therefore irrelevant to the analysis.  2007 U.S. Dist. LEXIS 49123, at *160-*161.

28

1

2               655 West Broadway, Suite 1900
               San Diego, CA  92101

3               Telephone:  619/231-1058
               619/231-7423 (fax)

4               COUGHLIN STOIA GELLER
                 RUDMAN & ROBBINS LLP

5               SHAWN A. WILLIAMS
               WILLOW E. RADCLIFFE

6               MONIQUE C. WINKLER
               ELI R. GREENSTEIN

7               DANIEL J. PFEFFERBAUM
               100 Pine Street, Suite 2600

8               San Francisco, CA  94111
               Telephone:  415/288-4545

9               415/288-4534 (fax)

10              Lead Counsel for Plaintiffs

11  S:\CasesSD\Oracle3\Refiled Pleadings\BRF0004470_OPP EXCLUDE GOEDDE.doc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 10, 2007.

s/DOUGLAS R. BRITTON
DOUGLAS R. BRITTON

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dougb@csgrr.com

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com
- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com
- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com
- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com
- **Stacey Marie Kaplan**
  SKaplan@csgrr.com
- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com
- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com
- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com
- **William S. Lerach**
  e_file_sd@lerachlaw.com
- **James C. Maroulis**
  jim.maroulis@oracle.com
- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com
- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com
- **Brian P Murray**
  bmurray@rabinlaw.com
- **Shinyung Oh**
  shinyungoh@paulhastings.com
- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com
- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com
- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Dorian Daley**
500 Oracle Parkway
Redwood City, CA 94065

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111