COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
skaplan@csgrr.com
        – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
moniquew@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION ) ) ) ) This Document Relates To: ) ) ALL ACTIONS. ) ) | Master File No. C-01-0988-MJJ  <br>CLASS ACTION  <br>DECLARATION OF ALAN G. GOEDDE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT  <br>DATE:           November 16, 2007  <br>TIME:           1:30 p.m.  <br>COURTROOM:  The Honorable  <br>                       Martin J. Jenkins |

**PREVIOUSLY FILED ON AUGUST 27, 2007**
**(DOCKET NO. 1030)**

I, ALAN G. GOEDDE, declare as follows:

1.  I submit this declaration in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and to supplement certain of the analyses outlined in the expert reports that I submitted on behalf of plaintiffs in this case. I have personal knowledge of the facts set forth below, or where I do not have personal knowledge, I am informed and believe the stated facts to be true and correct.

2.  I am a Vice President at Freeman & Mills, Inc. I have been retained as an expert witness by plaintiffs in this action. I submitted the Expert Report of Alan G. Goedde, Ph.D., on May 25, 2007 and the Rebuttal Expert Report of Alan G. Goedde, Ph.D., on June 22, 2007. I was deposed by counsel for Oracle in this action on July 11, 2007.

3.  During the course of my deposition, counsel for Oracle queried me on my calculation of pipeline conversion rates using constant dollar licensing revenue information from Oracle's 3Q FY00 Upside Reports, which formed the basis of the calculations set forth in Exhibit 4 to my rebuttal report. In that exhibit, I demonstrated that Ms. Minton's upside adjustments were based on the pipeline conversion ratios that Oracle had achieved in the same period for the prior year. As I explained in my deposition, Exhibit 4 revealed that the prior year conversion rate and the Potential Forecast conversion rate generally mirrored each other in every quarter between 3Q FY00 and 3Q FY01. This analysis supported my opinion that the prior year conversion rate was the basis for Ms. Minton's Potential Forecast and therefore Oracle's guidance in 3Q FY01.

4.  In Exhibit 4 to my rebuttal report, I used data from Oracle's 3Q FY00 Upside Reports to perform my calculation for the historical pipeline conversion ratio from that quarter as it appeared to represent the most accurate information concerning Oracle's pipeline in that quarter. But as discussed in my deposition, there appears to have been an error in my calculation because of the differences in the FY00 Upside Reports and FY01 Upside Reports, which are attributable to differing budget rates in each year. After my deposition, I recalculated the pipeline conversion rates for 3Q FY00 using constant dollar licensing revenue information from Oracle's 3Q FY01 Upside Reports (rather than 3Q FY00 Upside Reports). This analysis is reflected in Exhibit 1 of this declaration. The results continue to support my opinions. In fact, the revised analysis reveals an

1 even closer correlation between the historical pipeline conversion rate in 3Q FY00 and the Potential Forecast conversion rates that Oracle used for the Potential Forecast in 3Q FY01. This data supports my opinion that the prior year conversion rate was the basis for Ms. Minton's Potential Forecast and therefore Oracle's guidance in 3Q FY01.

5. Given defendants' denial that the historical pipeline conversion rate formed the basis of Ms. Minton's Potential Forecast, I performed additional analysis to test the correlation between the historical pipeline conversion ratio and Ms. Minton's Potential Forecast. *See* Exs. 2, 3. That analysis revealed that Ms. Minton's Potential Forecast and a calculated forecast based on the prior year's conversion rate multiplied by the current pipeline (*i.e.*, Ms. Minton's conversion ratio analysis) are highly correlated with a coefficient of correlation (Multiple R) of 97%. Ex. 3. I also tested the importance of this relationship and found that 94% (Adjusted R Square) of any variations over time in Ms. Minton's Potential Forecast can be explained by similar variations in the calculated forecast based on the prior year's conversion rate. *Id.* This analysis provides further support for my opinion that Ms. Minton's Potential Forecast was an extrapolation based largely on the prior year's conversion rate. *See* Exs. 2, 3.

6. In both of my expert reports, I explained my opinion that "[i]n Q2 FY01, Larry Ellison directed significant changes to Oracle's forecast process that resulted in more 'risk' being included in future Field Forecasts and rendered Jennifer Minton's upside adjustments unreliable." I based my opinion on several internal Oracle e-mails and the deposition testimony of Larry Ellison explaining that Mr. Ellison changed the forecast process to eliminate what is known as "sandbagging" from Oracle's sales force. "Sandbagging" is a term used to describe a practice by sales representatives and executives of underestimating a forecast to ensure that the forecast can be reached.

7. Based upon my review of defendants' rebuttal expert reports, I learned for the first time that defendants are denying that Oracle's sales force actually followed Mr. Ellison's directive. As I explained in my deposition, this position caused me to perform additional analysis to determine whether there was any validity to defendants' denial. That additional analysis shows that there is no support for these denials. Exs. 4-6. In fact, it confirms that Oracle's U.S. license divisions actually

DECLARATION OF ALAN GOEDDE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - C-01-0988-MJJ - 2 -

1  followed Ellison's directive and added additional risk to the Field Forecast. *Id.* My review of a
2  number of different reports reveals that the U.S. license divisions substantially increased
3  "management judgment" to raise the Field Forecast after Mr. Ellison directed the Field to add more
4  risk to their forecast. *Id.* While these divisions had used "management judgment" in prior quarters,
5  the sudden jump in the size of that judgment after Mr. Ellison's directive supports my reading of the
6  evidence that the Field followed that directive.

7  8. In NAS, with the exception of the last week of the quarter in 3Q FY01, "management
8  judgment" added anywhere from $62.2 million to $129 million to the Field Forecasts. *See* Ex. 4.
9  Prior to 3Q FY01, "management judgment" was negative most of the time and never reached higher
10 than $24 million in any quarter dating back to 3Q FY00 except for in the first three weeks of
11 4Q FY00, the quarter following Oracle's extraordinary performance in 3Q FY00. In those three
12 weeks, NAS added between $60 million and $125 million in judgment, but that judgment collapsed
13 down to $7 million by the middle of the quarter and returned to the negative territory by quarter end.
14 *Id.* In 2Q FY01, NAS increased its "management judgment" from negative $24.6 million at the
15 beginning of the quarter to $21 million after Mr. Ellison's directive. It remained in the $20 million
16 range for most of the quarter thereafter. This upward trend continued through 3Q FY01 and into
17 4Q FY01. "Management judgment" reached as high as $102.7 million in 4Q FY01 before declining
18 by the end of the quarter. The "management judgment" trends in the NAS division further support
19 my opinion that the Field followed Mr. Ellison's directive.

20 9. The records for OSI are far less extensive but reveal the same pattern. Ex. 5. The
21 "OSI Forecast Summary Report by Product Category" reports on which I was able to find
22 "management judgment" for OSI reveal dramatically increased amounts after Mr. Ellison's directive.
23 *Id.* Those reports show that OSI added up to $94 million in "management judgment" in 3Q FY01,
24 which was out of line with its prior practice. *Id.* Prior to Ellison's directive, OSI had added zero or
25 negative management judgment (historical reports were apparently only produced for 1Q FY01 and
26 2Q FY01). *Id.* OSI responded to Mr. Ellison's directive in 2Q FY01 by adding up to $27 million in
27 judgment at the end 2Q FY01. After OSI's $94 million in judgment in 3Q FY01, the OSI division
28 added "management judgment" between $66.1 million and $102.7 million for 4Q FY01 – again out

of line with its practice before Mr. Ellison's directive. *Id.* The "management judgment" trends in OSI further support my opinion that the Field followed Mr. Ellison's directive.

10. The same is true for OPI. Ex. 6. I understand that Edward Sanderson took over responsibility for OPI in late summer of 2000 during Oracle's 1Q FY01. In 2Q FY01, the first full quarter in which Sanderson had responsibility for that division, the records reveal consistent application of negative "management judgment" prior to Ellison's directive. *Id.* Shortly after that directive, "management judgment" jumped to $19 million and remained positive through the end of the quarter. *Id.* The same is true for 3Q FY01. With the exception of the first week of February 2001, OPI added positive "management judgment" through the entire quarter. *Id.* The first two reports of the quarter (Weeks 2 and 4) reflect "management judgment" for the entire forecast, $160 million and $150 million, respectively, and subsequent reports reflect management judgment as high as $25 million. *Id.* The reports in 4Q FY01 also reveal a consistent pattern of increasing "management judgment." *Id.* The "management judgment" trends in OPI further support my opinion that the Field followed Ellison's directive.

11. Counsel for plaintiffs have also asked me to address Oracle's argument that sequential increases in Gross Domestic Product ("GDP") for fixed investment in software in CY00 purportedly undermines my opinion that Oracle was facing a major macroeconomic change in 3Q FY01. During my deposition, counsel for Oracle presented me with a press release from the Bureau of Economic Analysis ("BEA"), which included GDP data for calendar quarters 4Q CY99 through 4Q CY00. I noted during my deposition that the raw data for each quarter in the software sector increased sequentially, but I testified that counsel was mischaracterizing the release because the data did not reflect the rate of growth in software, which is what I relied upon in forming my opinions. Since my deposition, I have analyzed the data further and note that it supports my opinion that fixed investment in software was decelerating throughout CY00. Ex. 7. In fact, the broader measure of fixed investment in equipment and software actually contracted in 4Q CY00, which encompassed the first month of Oracle's 3Q FY01. *Id.*

12. The data shows that fixed investment for software peaked just after Oracle's 3Q FY00 and declined consistently thereafter until it fell sharply at the beginning of Oracle's 3Q FY01. *Id.*

The rate of growth for fixed investment in software dropped from nearly 7% in 1Q CY00 to just 2.9% in 4Q CY00. The data also reveals that the broader measure of fixed investment in equipment and software declined from 5% growth in 1Q CY00 to negative 1.6% in 4Q CY00. This data supports my opinion that Oracle was facing a major macroeconomic change in 3Q FY01. I have attached as Exhibits 8 and 9 to this declaration relevant excerpts of the BEA releases that form the basis of this analysis. Exhibit 8 is the relevant part of the BEA release dated January 31, 2001, which provided quarterly data from 4Q CY99 through 4Q CY00. Exhibit 9 is the relevant part of the BEA release dated September 28, 2000, which provided quarterly data back to 2Q CY99.

13. Exhibits 1 through 7 to this declaration are true and correct summaries of voluminous writings pursuant to Federal Rule of Evidence 1006. The exhibits to my expert reports also present true and correct summaries of voluminous writings. The source data for these exhibits consist of writings too voluminous to be conveniently examined by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 26th day of August, 2007, at Los Angeles, California.

_____
ALAN G. GOEDDE

S:\CasesSD\Oracle3\DEC00044919_Goedde.doc

DECLARATION OF ALAN GOEDDE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - C-01-0988-MJJ                                                    - 5 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 10, 2007.

<u>  s/ DOUGLAS R. BRITTON                       </u>
DOUGLAS R. BRITTON

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dougb@csgrr.com

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com
- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com
- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com
- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com
- **Stacey Marie Kaplan**
  SKaplan@csgrr.com
- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com
- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com
- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com
- **William S. Lerach**
  e_file_sd@lerachlaw.com
- **James C. Maroulis**
  jim.maroulis@oracle.com
- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com
- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com
- **Brian P Murray**
  bmurray@rabinlaw.com
- **Shinyung Oh**
  shinyungoh@paulhastings.com
- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com
- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com
- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com
- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Dorian Daley
500 Oracle Parkway
Redwood City, CA 94065

Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Raymond Lane
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

PRG-Schultz USA, Inc.
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

Darren Jay Robbins
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Sanna Rachel Singer
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111
```