Certified Copy

1              IN THE U.S. DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3                     --oOo--
4    In Re Oracle Corporation Securities
     Litigation
5
     This Document Relates to:
6    All Actions.
                              No. C010988 MJJ
7

                                            /
8    _____

                        --oOo--
9
              Wednesday, June 7, 2006
10
                        --oOo--
11
        CONFIDENTIAL VIDEOTAPED DEPOSITION OF
12
            THOMAS ANTHONY WILLIAMS
13
                        --oOo--
14
     Ref No.  1-2699
15   Reported By:  ELIZABETH A. WILLIS, CSR No. 12155
                   Registered Professional Reporter
16

17
18
19
20
21
22
23
24
25

1   history that touched upon 12601?

2          MS. WINE:  Objection.  Mischaracterizes the

3   evidence.

4          THE DEPONENT:  I already said it wasn't

5   discussed at that first meeting in 2002.

6       BY MR. WILLIAMS:

7       Q.   All right.  And subsequent to the first

8   meeting did you have a discussion with anyone during

9   which anyone said to you that some of the November 17th,

10  2000, debit memos had a history that touched on 12601?

11      A.   No.

12      Q.   If that were true that some of them did would

13  that information have been important to you?

14          MS. WINE:  Objection.  Incomplete

15  hypothetical.

16          THE DEPONENT:  Not at that point.

17      BY MR. WILLIAMS:

18      Q.   Why not?

19      A.   Because -- and I don't remember the genesis of

20  it, but we had started to look at what was the activity

21  going into 12601, coming out of 25005.  So at that point

22  whether it was in the November 17th debit memos or not

23  was somewhat irrelevant to me.  It was a different issue

24  to me.

25      Q.   Did at some point that become important to

1    you?

2         A.    It became important to me to understand how

3    much moved from 25005 to 12601, yes.

4         Q.    And did you ask anyone to provide you with a

5    history of any of the debit memo transactions that had

6    at some point gone through 12601?

7         A.    No.

8         Q.    Why not?

9         A.    Because it wouldn't be relevant.

10        Q.    To what?

11        A.    The debit memos had no effect on the company's

12   financial statements.  The debit and the credit went

13   exactly the same place, 25005.  So the 46,000 debit

14   memos from my perspective were done with whether or

15   not -- once we determined that that was the accounting

16   entry debit, credit, same account, no effect on the

17   financial statements.  Separate from that was an

18   additional issue which is, "Okay.  Have things moved out

19   of 25005 to 12601?"  Whether or not they were ever in

20   the debit memo population was irrelevant because we were

21   dealing with, "Well, how much moved from 25005 to 12601

22   and was it appropriate?"  So it was not meaningful for

23   me to try and look at the 46,000 debit memos because,

24   you know, I am not going to look at 46,000 items to find

25   out did they ever go through 12601.  It was much easier

1    to go look at 25005 and 12601 and look at every

2    transaction that moved between those two accounts.

3          Q.   So do you know whether any of the debit memo

4    transactions on November 17th, 2000, moved to 12601?

5                MS. WINE:  Objection.  Vague and ambiguous.

6                THE DEPONENT:  Based on this document I

7    believe there was at least one.  Do I know if there are

8    additional ones?  No.

9          BY MR. WILLIAMS:

10         Q.   And so during your -- when it became relevant

11   to you and you began looking at what had gone from 25005

12   through 12601, did you find any -- any transactions that

13   were also related to a debit memo?

14         A.   Never attempted to link them to a debit memo

15   because, again, the debit memos didn't create an

16   accounting entry that affected the financial

17   statements.  The only transactions that could affect the

18   financial statements were a movement from 25005 to 12601

19   that was inappropriate.

20         Q.   So when you were looking at those 25005 to

21   12601 transactions were you looking at the full history

22   of those transactions or were you just looking to

23   determine whether or not there was a specific tie from

24   25005 straight to 12601?

25         A.   I don't understand that question.  "Specific

1    tie"?  I don't understand.

2         Q.    Well, a direct transaction from 12601 to 25005

3    or vice versa?

4              MS. WINE:  Can you repeat the question?  I am

5    not following it.

6              COURT REPORTER:  "Q.  So

7              when you were looking at those

8              25005 to 12601 transactions were

9              you looking at the full history

10             of those transactions or were

11             you just looking to determine

12             whether or not there was a specific

13             tie from 25005 straight to 12601?"

14             MS. WINE:  Objection.  Vague and ambiguous.

15             MR. WILLIAMS:  He is out of time on the tape.

16             THE VIDEOGRAPHER:  This marks the end of tape

17   2, volume 1, in the deposition of Thomas Williams at

18   2:49.  Going off the record.

19             (Off the record.)

20             THE VIDEOGRAPHER:  On record at 3:04.  This

21   marks the beginning of tape 3, volume 1, in the

22   deposition of Thomas Williams.

23             MR. WILLIAMS:  I am going to ask the reporter

24   to mark this document as Williams number 4.

25             (Exhibit No. 4 was marked for identification.)

1   to 12601 were appropriate because we had already written

2   off the invoice.  And so by moving it to 12601 we

3   effectively restored the debit to P&L that we previously

4   had taken when we did that credit memo.

5        Q.   Do you recall meeting with the committee

6   during the time period that people in your organization

7   were doing an investigation as to what occurred with the

8   debit memos?

9        A.   You know, as I said before, I think I talked

10  to them more than once.  I don't recall where those

11  meetings were.  I mean, they obviously were after the

12  second amended complaint, but I don't know exactly when

13  they were.

14       Q.   Do you recall telling the committee that,

15  based on at least the preliminary work that had been

16  done to investigate what occurred, that it appeared that

17  approximately 40 percent of the transfers matched

18  written-off invoices?

19       A.   No.  I mean, I recall having some data that I

20  relayed to them in a preliminary result, but I don't

21  remember what percentage was in what bucket.  So I

22  couldn't say today that it was 40 percent.

23       Q.   Do you recall the conclusion of the

24  investigation into the transfers to 12601?

25            MS. WINE:  Objection.  Vague and ambiguous.

1        THE DEPONENT:  I mean, the end result was if

2    there was an error made in moving something from 25005

3    to 12601 we put it back where it belonged.  If the

4    amount was owed to a customer we paid them and, you

5    know, the net amount of, you know -- of items that were

6    moved was not material enough because I know we did not

7    adjust our financial statements for any prior periods.

8        BY MR. WILLIAMS:

9        Q.   Do you have -- as you sit here today do you

10   know what the number was?

11       A.   As I sit here today, no.

12       Q.   Do you recall telling the committee that in

13   the process of investigating the debit memo allegations

14   Mike Quinn and Greg Myers told you that some of these

15   transfers had been occurring?  Right?

16       A.   I mean, I don't believe so.  I sort of

17   remember this as being two distinct items.  One of which

18   was, you know, the items in the second amended

19   complaint.  Did we or did we not book any revenue

20   related to the processing of those debit memos on

21   November 17th?  No.  Separate issue -- and I don't

22   recall when it came up -- was, "Well, you know, there

23   has been some movement."  There was no connection

24   between the two of them.  They were two different

25   topics, if you will.

1      Q.    Do you know whether the second sort of

2  investigation occurred before or after you saw the ex

3  parte application?

4      A.    I don't recall.

5            MR. WILLIAMS:  Do you want to change that now?

6            THE VIDEOGRAPHER:  This marks the end of tape

7  3, in volume 1, in the deposition of Thomas Williams at

8  5:10.  Going off the record.

9            (Off the record.)

10           THE VIDEOGRAPHER:  On record at 5:24.  This

11  marks the beginning of tape 4, in volume 1, in the

12  deposition of Thomas Williams.

13      BY MR. WILLIAMS:

14      Q.    I am going to show you what has been

15  previously marked as Quinn number 4.  I am going to ask

16  you to just take a look at Quinn number 4 for me,

17  including an e-mail attached at the back of it.

18      A.    Okay.

19      Q.    Okay.  Now, had you seen Quinn number 4 prior

20  to today?

21      A.    I don't recall if I had or not.  I mean,

22  reading it I recall something about him doing a

23  declaration.  I don't know if I read this or not.

24      Q.    You can see that it is a declaration in

25  opposition to plaintiff's ex parte application, right?

I, ELIZABETH A. WILLIS, a Certified Shorthand Reporter of the State of California, duly authorized to administer oaths, do hereby certify:

That I am a disinterested person herein; that the Witness, named in the foregoing deposition was by me duly sworn to testify the truth, the whole truth, and nothing but the truth; that the deposition was reporter in shorthand by me, ELIZABETH A. WILLIS, a Certified Shorthand Reporter of the State of California, and thereafter transcribed into typewriting.

That before completion of the deposition, review of the transcript [  ] was [X] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

Date_____6-8-06_____

_____
ELIZABETH A. WILLIS,
RPR, CSR #12155

--oOo--