Patrick E. Gibbs
Direct Dial: 650-463-4696
patrick.gibbs@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: (650) 328-4600 Fax: (650) 463-2600
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

January 19, 2007

**BY FACSIMILE AND E-MAIL**

Mark Solomon
LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301

Re: In re Oracle Corporation Securities Litigation

Dear Mark:

I write in response to your letter dated January 17, 2007, which I first received by e-mail at 10:34 p.m. on the evening of the 17th.

As an initial matter, your version of our conversation last Friday, January 11, is incomplete and misleading. You fail to note that after you told me what relief you intended to seek from Judge Infante, I followed up and asked you what information you would be seeking. It is then that you refused to talk any further and told me that "all will be revealed" in a letter that I would receive shortly. (Naively, I assumed you meant a meet and confer letter to me rather than a preemptive missive to Judge Infante.) Again, had you simply told me what information you wanted, I would have provided you with all of the information then available to me. It is true that your January 10 letter requested information about the computer repair shop and Simon & Schuster. Had I not been required to spend the better part of Friday afternoon dealing with your "emergency" letter to Judge Infante, I may have been able to respond to your January 10 letter that day rather than the following business day. But you decided to conduct this dialogue by letter rather than by telephone, apparently because you are more interested in trying to build a record than in obtaining information. Obviously, exchanging letters takes longer than speaking by telephone, and any resulting delay is the consequence of your own decision to launch a week-long letter writing campaign rather than simply speaking to me Friday. In light of that decision, your repeated complaints about the speed with which you are receiving information ring hollow.

Moreover, your continued accusations and suggestions regarding the conduct of the Defendants and Latham & Watkins LLP in this matter are completely unfounded. I do not plan to answer what amounts to a series of interrogatories aimed at building a record to support a motion for sanctions. The information I have already provided you, and the additional information I provide below, make it more than clear that Defendants and their counsel have acted reasonably and in good faith at all times.

LATHAM&WATKINS℠

With that background, we have been able to determine the following with regard to the tapes and transcripts that are the subject of the Special Master's December 29, 2006 Order. Except where otherwise noted, this information comes from conversations with Mr. Symonds.

Mr. Symonds recorded his interviews with Mr. Ellison on one or more Olympus digital recording devices. Because the devices are able to store no more than three to six hours of material, Mr. Symonds downloaded the resulting digital audio files to his laptop, without retaining copies on any of the digital recording devices. Once the audio files were stored on his laptop, Mr. Symonds did not make any additional copies or backups of the files. In the course of writing the book, Mr. Symonds had transcripts made from certain of the audio files. The transcripts were prepared by a company called Outsourced Typing Services. To have a transcript prepared, Mr. Symonds would upload an audio file to a secure portion of the company's web site (www.typing.co.uk), and then Mr. Symonds would receive a transcript back from the company in Word format by e-mail or by downloading it from the company's web site. At our request, Mr. Symonds checked and determined that he does not have copies of any e-mails attaching transcripts from the company. Apparently, Mr. Symonds recently attempted to contact Outsourced Typing Services in connection with another matter and was unable to find the company or locate any of the people with whom he dealt there. Mr. Symonds has attempted to contact the two individuals with whom he dealt at the company by e-mail (the only means by which he had communicated with them regarding the *SOFTWAR* transcripts), but his e-mails came back undelivered, and he has no other contact information for them. The address at which the company used to maintain its website (www.typing.co.uk) no longer has any information about Outsourced Typing Services, and appears to have been taken over by a different company.

Except as discussed above in connection with having transcripts made, Mr. Symonds did not provide anyone else with copies or access to these audio files or the transcripts. In that regard, Mr. Symonds has told us specifically that he did not provide any copies of the audio files or any interview transcripts to anyone at Simon & Schuster. We have been trying to contact Simon & Schuster directly to confirm that they do not have copies of any of Mr. Symonds' interview recordings or transcripts, but Mr. Ellison's contact is no longer with the company, and we have not yet been able to determine whether anyone else at Simon & Schuster has taken over responsibility for matter pertaining to the book. Given Mr. Symonds' repeated insistence that he never sent any audio files or transcripts to anyone at Simon & Schuster, it appears unlikely that Simon & Schuster has any responsive materials, but we will continue to try an confirm this fact. If it turns out that Simon & Schuster does possess any responsive audio files, tapes or transcripts, we will attempt to obtain them, but we note that Mr. Ellison has no control over Simon & Schuster and we cannot be sure that Simon & Schuster would comply with any such request. We have contacted Andrew Wylie of The Wylie Agency, Inc., who has confirmed that The Wylie Agency never received any recordings or transcripts of Mr. Symonds' interviews with Mr. Ellison in connection with *SOFTWAR*. As such, it do not now have any copies of any such recordings or transcripts.

As discussed in my prior letters, some time after discussing these materials with me last November, during which Mr. Symonds assured me that he still had copies of (among other things) all of his interview and transcript files, and I asked him to retain those materials, Mr. Symonds attempted to use the computer and discovered that he was unable to access his

files. He took the computer to PC World in Brentford, and was told that although PC World might be able to repair the computer (at a cost roughly equal to the cost of a new computer), the data stored on the hard drive could not be retrieved. Mr. Symonds does not remember the name of the individual with whom he dealt at PC World, but he believes the person may have been an Asian male. He has no further information or recollection. Because the data stored on the computer could not be restored, and the cost of repair was roughly equal to the cost of a new computer, Mr. Symonds decided not to try to have the computer repaired and instructed the store to dispose of it. After receiving a copy of the Special Master's Order, Mr. Symonds contacted the store to determine whether it still had his computer, and he was told that the store had no record of Mr. Symonds or his computer.

As you know, Mr. Symonds agreed to produce to us copies of all the hard copy Ellison interview transcripts in his possession. We understand from Mr. Symonds that the transcripts he delivered to us, which we timely produced to you on January 16, include all of the Larry Ellison transcripts currently in his possession, none of which have been redacted. Mr. Symonds has emphasized several times that he still considers these transcripts (as well as the apparently lost audio files and Word transcripts) to be his sole property, and he has stressed that he has agreed to produce them voluntarily, and without conceding that anyone has any legal right to obtain them. I am not comfortable giving you a home telephone number for Mr. Symonds without his consent, nor do I think it is appropriate or necessary. Mr. Symonds' work e-mail (matthew.symonds@economist.com) and telephone number (+44 (0) 20 7830 7085) are readily available at www.economist.com. (I first made contact with Mr. Symonds through the web site.) The home address I have for him is address is 16 St Peters Road, Twickenham, TW1 1QX England.

As I said, I believe the information provided above and in my prior letters amply demonstrates that Defendants and their counsel have acted appropriately and in good faith with regard to the materials called for by the Special Master's Order. And the information set forth above is more than sufficient for Plaintiffs to undertake the additional discovery allowed by the Special Master.

Very truly yours,

Patrick E. Gibbs
of LATHAM & WATKINS LLP


cc:     Shawn Williams