May 16, 2005

**MAYER BROWN ROWE & MAW**

**VIA FACSIMILE**

Shawn A. Williams
LERACH COUGHLIN STOIA GELLER
RUDMAN ROBBINS
100 Pine Street, 26th Floor
San Francisco, CA 94111

Mayer, Brown, Rowe & Maw LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112

Main Tel (650) 331-2000
Main Fax (650) 331-2060
www.mayerbrownrowe.com

Re:  *In re Oracle Corp. Sec. Litig.*,
      Case No. C-01-0988

**Lee H. Rubin**
Direct Tel (650) 331-2037
Direct Fax (650) 331-4537
lrubin@mayerbrownrowe.com

Dear Shawn:

    I write in response to your May 4, 2005, letter concerning our proposal regarding efforts to assess the retrievability of data on disaster-recovery tapes that Oracle collected soon after this lawsuit was filed.

    Let me begin by reminding you that we have been discussing Oracle's disaster-recovery tapes since mid-February 2005, so my recent letter should *not* be a surprise to you. Indeed, during our February 18, 2005, discovery conference, which took place in your office, my colleagues and I made it clear that Oracle did not intend to restore any disaster-recovery tapes at its cost in order to search for responsive information in this lawsuit. In response, your partner, Doug Britton, pointed out that, in his opinion, the seminal case on this issue is *Zubalake* v. *UBS Warburg LLC*, 217 F.R.D. 309, 319 (S.D.N.Y. 2003), which sets forth a standard for *shifting the costs* of such a restoration, and further commented that an equal sharing of costs to restore data from any back-up tapes would be consistent with *Zubalake*. Based on that conversation, we left the February 18 meeting understanding (as we later documented to the Court) that Plaintiffs had offered to "defray half the cost for producing any email that is inaccessible — for example, email that is stored on a backup tape that would need to be restored" if such searching of disaster-recovery tapes became necessary. See Letter from Lee. H. Rubin to Magistrate Judge Spero dated February 22, 2005. Your claim of "surprise" and your current position on this issue — that Oracle must restore disaster-recovery tapes and bear all the costs of that effort — are inconsistent with your partner's offer in February.

    Your letter wrongly asserts that in order to meet their obligations under the Federal Rules of Civil Procedure, Defendants *must* restore these tapes to an accessible format, search them for responsive information, and bear the cost burden of doing so. See Letter from Shawn A. Williams to Vincent P. Schmeltz and Lee H. Rubin dated May 4, 2005 ("S. Williams Ltr."). Contrary to your contention, Defendants have more than adequately fulfilled their obligations under the Federal Rules of Civil Procedure and the Court's March 10 Amended Order Setting A Discovery Plan ("Discovery Plan"). As a result, we believe that it is unnecessary for us to restore the inaccessible data on these tapes and search the restored data for responsive

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

May 16, 2005
Page 2

documents. Indeed, over the past three weeks, we have produced over 250,000 pages of documents as well as all of the software from the relevant time period (and the related technical documentation and high level design documents). These documents include relevant and responsive data from the custodians described in Section I.B of the Discovery Plan. Within the next week, we will be producing source logs for the documents produced, which will provide Plaintiffs with a complete catalogue of those employees from whose files we obtained these documents.

Your suggestion that Oracle has not satisfied its obligations because it preserved "only selected individuals' files . . . at the time that this case was initiated" is difficult to take seriously. S. Williams Ltr. at 1. Certainly, Oracle did not endeavor to preserve documents from all of the more than 40,000 Oracle employees around the world. See *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (quoting *William T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) ("[A] litigant is under no duty to keep or retain every document in its possession . . ."). Instead, consistent with well-established litigation standards, Oracle took reasonable steps to identify those employees who may have documents relevant to the litigation and to search and preserve those documents that appeared relevant to Plaintiffs' claims. See *Zubalake*, 220 F.R.D. at 217. Furthermore, as a part of the Special Litigation Committee's investigation, Oracle collected and preserved additional documents, which have been produced to Plaintiffs. And, finally, over the past 60 days, Oracle has collected still more data in order to meet its obligations under the Discovery Plan. In response to your request, and in order to further demonstrate the breadth and thoroughness of Oracle's document preservation and collection efforts, we will provide Plaintiffs with a list of "every individual whose files were searched and preserved" for purposes of this litigation. S. Williams Ltr. at 2.

Of course, Oracle's preservation and collection efforts are no less reasonable simply because Oracle's initial preservation efforts did not encompass some number of employees who are included in the Discovery Plan. A number of those employees are the Area Vice Presidents ("AVPs"), a group that the Court agreed to bring within the ambit of the Discovery Plan at Plaintiffs' request, but who were not likely to have evidence in their files concerning the speakers' knowledge of whether Oracle was likely to achieve its market guidance — the issue at the core of Plaintiffs' claims. We do note, however, that we did preserve the files of AVPs who were directly identified in or otherwise central to the original complaint (*e.g.*, Nic Classick). And, based on our recent collection efforts, responsive documents will be produced from the files of other AVPs as well. Moreover, documents from the files of AVPs are relevant only to the extent that these AVPs communicated information regarding Oracle's performance in 3Q01 to Oracle's senior executives, and Oracle preserved, reviewed, and produced the responsive documents from those senior executives' files.

In light of these efforts, we would hope that you would agree with our conclusion that it is unnecessary to attempt to restore any of the 190 disaster-recovery tapes. Should you still wish to have the tapes restored after reviewing our documents and our preservation and collection efforts, however, we have offered to split the cost of determining, in the first instance, whether or not the data on these tapes are retrievable. If you are willing to consider our proposal (and your

May 16, 2005
Page 3

letter gives no indication that you are), we are prepared to provide further information about these tapes and what it would require to restore them. If, on the other hand, you remain steadfast in your position that Defendants are obligated to restore these tapes entirely at their own cost, then we believe that any further dialogue on this issue would not be productive.

Defendants' proposal is entirely consistent with governing law. Oracle's disaster-recovery tapes contain "inaccessible" data, *i.e.*, data that is not used in the ordinary course for data retrieval and data that cannot be retrieved without great difficulty. *See Zubulake*, 220 F.R.D. at 218 (tapes used for disaster recovery have "inaccessible" data, while tapes used for regular data retrieval have "accessible" data); see also *Zubalake*, 217 F.R.D. at 314, 319 (describing the difficulty of retrieving data from a sequential access device, which requires each piece of the data to be in place in order to access any of it). One of the principal teachings of *Zubalake* (as your colleague Doug Britton recognized) is that it is often appropriate to shift the costs of converting "inaccessible" data into a "reasonably usable" format.

Indeed, the testimony of Oracle's 30(b)(6) witness on electronic systems, including backup procedures (which will not be presented again, despite your request), confirms that Oracle's disaster-recovery tapes contain quintessentially "inaccessible" data. Oracle uses its tapes only for immediate disaster recovery — not for general data storage. B. Fuller 30(b)(6) Dep. at 89-90 (explaining the process of system backups and stating that "It's – it's really for disaster.") During the relevant time period, Oracle prepared disaster-recovery backup tapes of its systems several times a week. *Id.* Every thirty days, Oracle returned these tapes to "backup rotation," rather than retaining them for future data access. *Id.* at 90 ("A. Now, tomorrow I will take a backup, but I'll overwrite Monday's backup on the disk. Q. Because – because it captures Monday and Tuesday? A. No. Monday is – Monday is irrelevant, if you think about it, right? So we're in transactions, right, the world moves on."); see also *id.* at 104 (description of e-mail backup procedure). Furthermore, Oracle has upgraded its software and hardware on numerous occasions since 2001 — so it is not possible to restore these tapes on, and access the data with, current servers and software. B. Fuller Dep. at 29-32; 102-03, 106. Because these tapes contain inaccessible data, restoration of the tapes directly falls within *Zubalake's* cost-shifting paradigm. In light of Oracle's document preservation, collection and production efforts, and the other factors set forth in *Zubulake,* cost-shifting is plainly appropriate here — if the tapes are to be restored at all. Because Oracle has fully complied with its discovery obligations, Oracle believes that the tapes should not be restored (assuming the tapes could be restored).

Finally, you inquire whether Oracle restored disaster-recovery tapes in connection with the *United States v. Oracle Corporation* antitrust action, apparently suggesting that if Oracle had to restore tapes in that action, Oracle should be required to restore tapes here as well. Simply put, it did not. Just as Oracle was not required to bear the burden and expense of restoring such tapes in a massive antitrust action involving the United States Department of Justice, so too, Oracle should not be required to bear that burden here.

May 16, 2005
Page 4

I look forward to hearing from you.

Sincerely,

Lee H. Rubin