# EXHIBIT 25

# PART 1

LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
  Michele F. Kyrouz (SBN 168004)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com
       michele.kyrouz@lw.com

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
135 Commonwealth Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
  Jamie L. Wine (SBN 181373)
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
E-mail: jamie.wine@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian E. Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, CA 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988-MJJ (JCS)<br>(Consolidated)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS RESPONSIVE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS AND COMPLIANCE WITH THE DISCOVERY PLAN**<br><br>**Judge Martin J. Jenkins** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

# TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 3 |
| | A. Plaintiffs' First Set of Document Production Requests and Defendants' Responses and Objections Thereto | 3 |
| | B. The Parties' Dispute Over the Scope of Discovery and Defendants' Request for a Protective Order Regarding Suite 11i | 3 |
| | C. The Events Leading to the March 1, 2005 Discovery Conference | 3 |
| | D. The March 1, 2005 Discovery Conference and Entry of the Discovery Plan | 5 |
| III. | LEGAL STANDARD | 6 |
| IV. | ARGUMENT | 7 |
| | A. Documents "Relating to Escalated 11i Customers" Are Not Called For By the Discovery Plan. | 7 |
| | B. The "Departmental Email Boxes" to Which Plaintiffs Refer Have Either Been Searched or Are Not Within the Scope of the Discovery Plan. | 9 |
| | C. Plaintiffs Motion to Compel Production of "Numerous Settlement Agreements" Should Be Denied. | 11 |
| | D. Oracle Does Not Maintain A Centralized Organizational Chart. | 13 |
| | E. Defendants Have Already Produced Responsive Documents Relating to The Securities And Exchange Commission Inquiry. | 14 |
| | F. Defendants' Source Logs Are Accurate | 15 |
| | G. Plaintiffs' Motion Fails to Comply With Civil Local Rule 37-2 | 15 |
| | H. Plaintiffs' Motion Should Be Denied As Untimely | 16 |
| V. | CONCLUSION | 18 |

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No C-01-0988-MJJ (JCS)

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Choate v. Nat'l Railroad Passenger Corp.*,
132 F.Supp.2d 569 (E.D. Mich. 2001) .................................................................................. 16

*Country Fresh Farms Int'l v. American Family Prods.*,
1994 U.S. Dist LEXIS 10565 (D. Or. 1994) ......................................................................... 15

*Dimmick v. U.S.*, Slip Copy,
2006 WL 1646116 (N.D. Cal. 2006) ..................................................................................... 16

*Gault v. Nabisco Biscuit Comp.*,
184 F.R.D. 620 (D. Nev. 1999) ........................................................................................ 16, 17

*Global Polymer Industries, Inc. v. C&A Pro LLC*,
2006 WL 1344088 (D.S.D. May 15, 2006) ............................................................................ 7

*Green v. Baca*,
219 F.R.D. 485 (N.D. Cal. 2003) ............................................................................................ 7

*Munoz-Santana v. U.S. Immigration & Naturalization Service*,
742 F.2d 561 (9th Cir. 1984) .................................................................................................. 7

*Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992) .................................................................................................. 7

## FEDERAL RULES

Fed R. Civ. P. 26(b) ...................................................................................................... 7, 16

## LOCAL RULES

N.D. Cal. Civil L. L.R. 37-2 ........................................................................................... 15, 16

## OTHER

8a Wright, Miller and Marcus, *Federal Practice and Procedure*,
Civil 2d §2285 (1994 & Supp. 1998) ................................................................................ 15, 16

The Rutter Group, *Federal Civil Procedure Before Trial*,
§ 11:2353 (2006) .................................................................................................................... 16

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

## I. INTRODUCTION

The very title of "Plaintiffs' Motion to Compel Documents Responsive to Plaintiffs' First Set of Requests for Production of Documents and Compliance With the Discovery Plan" (the "Motion") highlights one of the Motion's two fatal flaws. Judge Spero's March 10, 2005 Amended Order Setting a Discovery Plan (the "Discovery Plan" or "Plan") resolved a number of disputes regarding the scope of discovery in this case, including disputes over Plaintiffs' First Set of Requests for the Production of Documents. In so doing, the Discovery Plan sharply limited the scope of Plaintiffs' first set of document requests. With their Motion, however, Plaintiffs seek to enforce that first set of document requests as if the Discovery Plan had never been entered at all.

Nowhere is this more apparent than with Plaintiffs' demand for production of "[d]ocuments regarding 11i customer escalations and implementation problems." Motion at 10. This request plainly falls outside the "scope of discovery" established by the Discovery Plan, and Plaintiffs do not suggest otherwise. Indeed, at the hearing on the Plan, Judge Spero specifically rejected Plaintiffs' request for discovery into "customer escalations" and individual customer implementation problems. *See* Declaration of Rees F. Morgan in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Documents Responsive to Plaintiffs' First Set of Requests for Production of Documents and Compliance With the Discovery Plan ("Morgan Decl."), Ex. 1 (March 1, 2005 Transcript) at 29:25-30:2; 36:19-37:1. With this Motion, in other words, Plaintiffs are simply repeating a request that Judge Spero denied when he entered the Plan. Plaintiffs never sought to modify the Plan to allow for discovery into "customer escalations" and "implementation problems." Instead, Plaintiffs seek to enforce their very first set of document requests – the dispute over which led to the entry of the Plan in the first place.

The same is true with respect to Plaintiffs' demand for documents from what Plaintiffs refer to as "departmental email boxes." Motion at 14-15. In the Discovery Plan, Judge Spero carefully identified the precise files that Oracle would be required to search for responsive documents. *See* Plfs' Ex. 3 (Discovery Plan) at 1:13-23. Judge Spero had previously emphasized the importance of having clarity on this issue. *See* Morgan Decl., Ex. 1 (March 1,

1  2005 Transcript) at 7:13-18 ("I want to figure out whose files you are going to search today. . . .
2  It is going to be very specific because I want you to know what you are going to get and I want
3  them to know what to look for."). Plaintiffs' Motion ignores this provision of the Plan, and
4  utterly fails to show that any of these "departmental email boxes" are within the scope of the
5  "files to be searched" under the Plan. Again, Plaintiffs never sought to modify the scope of the
6  Plan in order to require production of documents from these files.

7  To the extent that Plaintiffs' Motion seeks production of documents that *are*
8  within the scope of the Plan, the Motion's second major flaw is revealed: Plaintiffs have failed
9  to show that Defendants are withholding any documents called for by the Discovery Plan. Thus,
10 for example, Plaintiffs demand the production of "numerous settlement agreements." Motion at
11 9-10. But Plaintiffs have failed to demonstrate that there are any such agreements that meet the
12 remaining scope limitations of the Discovery Plan, including the Relevant Time Period, the "files
13 to be searched," and the $500,000 threshold for any "material expense." *See* Plfs' Ex. 3
14 (Discovery Plan) at 1:9 – 2:17. Instead, Plaintiffs cite several documents with stray references to
15 "settlement agreements" and "negotiations" and simply assume that additional, responsive
16 documents exist. The same flaw underlies Plaintiffs' demand for additional organizational charts
17 (Motion at 17) and additional documents pertaining to an informal inquiry by the Securities and
18 Exchange Commission (Motion at 17-18). In both cases, Defendants have conducted a
19 reasonable and good faith search for responsive documents, and there are no additional
20 documents to produce. There is, in other words, nothing to compel.

21 Plaintiffs' final demand, for an "updated and consolidated" source log, is
22 completely baseless. Oracle has produced over 700,000 pages in this case, sourcing them to
23 roughly 100 different custodians. From this vast production, Plaintiffs cite two sourcing errors
24 (both long since corrected), and a single witness who said he did not believe he received
25 documents that were sourced to him. *See* Motion at 16-17. From this, Plaintiffs argue that
26 Defendants' source logs are "wildly inaccurate and unreliable in many respects," and they
27 demand that Defendants be ordered to produce an "updated and consolidated source log" for all
28 of the more than 700,000 pages of documents produced in this case. *Id.* Plaintiffs make

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

absolutely no showing in support of this argument, and there is literally no basis for imposing such a burden on the Defendants.

## II. FACTUAL BACKGROUND

### A. Plaintiffs' First Set of Document Production Requests and Defendants' Responses and Objections Thereto

Plaintiffs served Defendants with Plaintiffs' First Set of Requests for Production on December 9, 2004. These requests were extremely broad in scope, and Defendants objected to Plaintiffs' requests on a number of grounds, including that the requests were overly broad and unduly burdensome. In those instances where Defendants agreed to produce certain responsive documents, Defendants' limited their agreement to documents that may have been seen by, communicated to, or relied on by the "Speakers," which were defined as Larry Ellison, Jeffrey Henley, Edward Sanderson, Stephanie Aas, Mark Barrenechea and Jennifer Glass. *See, e.g.*, Plfs' Ex. 2 at 2 & No. 5. (This has come to be referred to as the "Speakers" objection.)

### B. The Parties' Dispute Over the Scope of Discovery and Defendants' Request for a Protective Order Regarding Suite 11i

In the wake of Defendants' objections, the parties met and conferred regarding the appropriate scope of discovery in the case, and on February 1, 2005, Defendants filed a letter brief with the Court seeking a protective order limiting the scope of discovery with respect to Suite 11i. Plfs' Ex. 15. In the letter brief, Defendants argued that Suite 11i-related document discovery should be limited to documents concerning alleged Suite 11i integration defects that were sent or received by the Speakers and their direct reports or Jennifer Minton and her direct reports, *and* that referred to lost 3Q01 sales and/or sales forecasts. *Id.* at 2. Plaintiffs disagreed, and, after further discussions, Plaintiffs filed a letter brief responding to Defendants' request for a protective order governing Suite 11i document discovery. Morgan Decl., Ex. 2_(Plaintiffs' February 4, 2005 Letter Brief).

### C. The Events Leading to the March 1, 2005 Discovery Conference

At a hearing on February 4, 2005, Judge Spero expressed considerable frustration that discovery in the case was "out of control," and entered a tentative ruling requiring the parties

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

to attend a discovery conference for the purpose of establishing a discovery plan:

> So here's what my tentative ruling is going to be. I'm going to order you to a discovery conference. The discovery conference will have lead trial counsel for the plaintiff and lead trial counsel for the defendant, and anybody else you want to bring, and me, and we're going to come up with a discovery plan, and that discovery plan will include what kinds of discovery you're going to have and from whom. I want witness names, to the extent you have them by now, of course, when those are going to happen, you know, not the date of the deposition, but during what period of time, when the documents of a particular type are going to be produced; subject matter limitations, the full range of appropriate discovery plan.
>
> \*   \*   \*
>
> What I propose to do is have you each propose to each other comprehensive discovery plans, and then have lead trial counsel sit down and discuss them in person, see if they can hammer it out. Then we'll all meet. Then you'll give me a letter that says, these are the competing discovery plans, these are the issues that we've worked out, these are the issues that are left, and here's our positions on them, and why. I would want that to be a joint letter. And then we'll have a discovery conference, and out of that discovery conference will come an order, and that will be the blueprint for discovery in the case.

See Morgan Decl., Ex. 3 (February 4, 2005 Transcript) at 5:23 – 6:24.

Consistent with this tentative ruling, on February 8, 2005, Judge Spero ordered the parties to exchange proposals for the scope of discovery and to develop a joint Discovery Plan in anticipation of a discovery conference. *See* Morgan Decl., Ex. 4 (February 8, 2005 Order). The parties exchanged competing proposals on February 14, 2005, and they submitted a Joint Discovery Plan outlining their competing proposals on February 23, 2005. Morgan Decl., Ex. 5 (February 14, 2005 Letter from S. Williams to L. Rubin); Ex. 6 (February 14, 2005 Letter from L. Rubin to S. Williams); Ex. 7 (February 23, 2005 Joint Discovery Plan); Ex. 8 (February 23, 2005 Defendants' Supplemental Proposed Discovery Plan).

The parties' proposals, as reflected in their separate proposals and the Joint Discovery Plan, differed sharply over the appropriate scope of discovery. *Compare* Morgan Decl., Ex. 5 (February 14, 2005 Letter from S. Williams to L. Rubin) at 2 *with* Ex. 6 (February 14, 2005 Letter from L. Rubin to S. Williams) at 4. On February 23, 2005, the parties submitted a Joint Discovery Plan outlining their competing proposals. *See* Morgan Decl., Ex. 7 (February

23, 2005 Joint Discovery Plan) & Ex. 8 (February 23, 2005 Defendants' Supplemental Proposed Discovery Plan).

Plaintiffs' proposals requested many of the same categories of documents they seek here, but Judge Spero specifically rejected those requests when he entered the Discovery Plan. For example, in their Motion, Plaintiffs seek discovery relating to "bugs and gaps in 11i", "the timing of the release of 11i", and "patches necessary to fix product problems." Motion at 5:19-22. Plaintiffs sought the same categories of documents in their February 14, 2005 letter proposal and the Joint Discovery Plan. *See* Morgan Decl., Ex. 5 (February 14, 2005 Letter from S. Williams to L. Rubin) at 2 ("[d]ocuments and communications regarding the costs of implementation and timing of release of products"); Morgan Decl., Ex. 7 (February 23, 2005 Joint Discovery Plan) at 5 ("[d]ocuments from the Company's technical staff regarding the timing or release of different modules and iterations of modules, and/or patches to fix or correct problems, gaps and bugs"). In the Discovery Plan, Judge Spero rejected Plaintiffs' request for documents related to patches and the timing and release of 11i, and he sharply limited the scope of documents to be produced regarding bugs. Plfs' Ex. 3 (Discovery Plan) at 2:13-15. Instead, Judge Spero adopted a much narrower category of 11i-related documents suggested by Defendants. *See* Morgan Decl., Ex. 1 (March 1, 2005 Transcript) at 40:3-5 (THE COURT: "With respect to the documents concerning product functionality, I'm going to adopt the defendant's version of the subject matter, which was with some modifications.") Plaintiffs' Motion, therefore, seeks a number of categories of documents that Judge Spero specifically declined to include in the Discovery Plan.

**D.     The March 1, 2005 Discovery Conference and Entry of the Discovery Plan**

After receiving the Joint Discovery Plan, Judge Spero convened a discovery conference to discuss the parties' competing proposals on March 1, 2005. At the hearing, Judge Spero heard extensive arguments from both sides and ruled on a variety of issues, but indicated he would consider modification upon an appropriate showing. Morgan Decl., Ex. 1 (March 1, 2005 Transcript) at 41:15-20 ("MR. SOLOMON: Your Honor, I guess all I would say to that is, you know, with what -- potentially revisit that as we go along, but based on the information now

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

1  I understand. THE COURT: Sure. *It takes a showing to revisit it obviously*, but I don't -- you
2  know, this is a learning process for me, too.") (emphasis added).
3      In the wake of the discovery conference, Judge Spero entered the Amended Order
4  Setting a Discovery Plan. Among other things, the Plan identified, by name or position, the
5  specific Oracle employees whose files Oracle would be required to search. Plfs' Ex. 3
6  (Discovery Plan) at 1:13-24. The Plan called for production of documents from the "Relevant
7  Time Period," which Judge Spero defined as June 1, 2000 to June 1, 2001, as well as documents
8  created outside this period that refer to events occurring within the Relevant Time Period. *Id.*, at
9  1:9-12. The Plan also outlined six categories of documents and explicitly identified the types of
10 documents to be produced from each category. *Id.* at 1:25 – 3: 16.[1] With respect to discovery
11 relating to Oracle's Suite 11i, the Court essentially adopted Defendants' proposal. *Compare id.*
12 at 2:7-17 *with* Morgan Decl., Ex.. 7 (February 23, 2005 Joint Discovery Plan) at 6-7; *see also*
13 Morgan Decl., Ex. 1 (March 1, 2005 Transcript) at 40:3-5.

14 **III.   LEGAL STANDARD**

15     Ignoring the limitations on discovery established by the Discovery Plan, Plaintiffs
16 argue that the legal standard governing their Motion is whether the requested discovery "appears
17 reasonably calculated to lead to the discovery of admissible evidence." Motion at 8-9 (citing
18 Fed. R. Civ. P. 26(b)(1)). Plaintiffs further argue that the Defendants, as the parties opposing
19 discovery, bear the burden of showing why the requested discovery should not be allowed. *Id.*
20     The entry of the Discovery Order, of course, completely undermines this analysis.
21 As discussed above, Judge Spero intended the Discovery Plan to be the "blueprint for discovery
22 in this case." *See* Morgan Decl., Ex. 3 (February 4, 2005 Transcript) at 6:23-24. Although the
23 Discovery Order was, of course, subject to change upon an appropriate showing, Plaintiffs have
24 never filed a motion to modify the Plan to allow for the discovery they seek with this Motion.
25 As such, the existing Discovery Plan continues to define the scope of discovery, and to the extent

---

[1] The six categories are the Economy; Functionality of Oracle's Suite 11i Software and Its Individual Modules; Revenue/Earnings Forecasting; Accounting and Underlying Documents; Insider Trading; and the Special Litigation Committee. *Id.*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

that Plaintiffs seek production of documents that are outside of that scope, Plaintiffs' Motion should be denied: Courts routinely hold that requests for documents or information that are beyond the scope of existing discovery orders are invalid on their face. *Global Polymer Industries, Inc. v. C&A Pro LLC*, 2006 WL 1344088 (D.S.D. May 15, 2006) (denying plaintiffs' motion to compel with respect to discovery requests outside the bounds of an order setting the scope of discovery).

To the extent that Plaintiffs' Motion seeks production of documents that are within the scope of the Plan, the Court must "weigh the burden or expense of proposed discovery against its likely benefit," taking into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Green v. Baca*, 219 F.R.D. 485, 493 (N.D. Cal. 2003) (*citing* Fed. R. Civ. P. 26(b)(2)). Contrary to Plaintiffs' argument (Motion at 9:6-7), it is the ***moving party's*** responsibility to make a "showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence." *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992) (district court properly denied motion to compel where moving party failed to make the required showing). Where the moving party has failed to demonstrate that its need outweighs the cost of production and that cost would be substantial, it is an abuse of discretion for a Court to grant a motion to compel. *See Munoz-Santana v. U.S. Immigration & Naturalization Service*, 742 F.2d 561, 562-64 (9th Cir. 1984).

## IV. ARGUMENT

### A. Documents "Relating to Escalated 11i Customers" Are Not Called For By the Discovery Plan.

Plaintiffs claim that "[d]ocuments regarding 11i customer escalations and implementation problems are clearly discoverable pursuant to Fed. R. Civ. P. 26(b)(1)." Motion at 10. Plaintiffs do not even attempt to show that such documents are called for by the Discovery Plan, and with good reason. Nothing in the Discovery Plan calls for production of documents relating to "escalated 11i customers" or "implementation problems." In the section providing for

discovery regarding "Functionality of Oracle's Suite 11i Software and Its Individual Modules," the Discovery Plan calls for Defendants to produce the following documents:

    (a)    Software versions 1, 2 and 3 of Oracle's Suite 11i;

    (b)    High level design documents for Suite 11i;

    (c)    Technical manuals for Suite 11i;

    (d)    "Bug reports" that in any way reference integration or interoperability;

    (e)    High level documents describing the scope and dimension of "bug problems" within Suite 11i and/or any of its modules other than integration and interoperability;

    (f)    Documents regarding any lost or deferred sales of any Oracle product, as well as any material expense with respect to any Oracle product – such as refunds, rebates or remediation. For purposes of this issue only, "material expense" is defined as having a financial impact greater than or equal to $500,000.

See Plfs' Ex. 3 (Discovery Plan) at 2:7-17.

These limitations, moreover, are no accident: In shaping the Discovery Plan, Judge Spero specifically considered and rejected the very same request Plaintiffs are making here for production of documents pertaining to "escalated customers" and individual customer implementation problems. *See* Morgan Decl., Ex. 1 (March 1, 2005 Transcript) at 29: 2 – 30:2; 36:10 – 37:1. On the question of discovery relating to product functionality generally, Judge Spero indicated that such discovery should be "at a pretty high level, not on the ground." Morgan Decl., Ex. 1 (March 1, 2005 Transcript) at 29:21-22. He went on to say, "I don't think by learning every defect that any customer found with the product advances the ball. So I don't – I don't think we can go quite that broadly." *Id.*, (March 1, 2005 Transcript) at 29:25-30:2. Later, Plaintiffs' counsel specifically asked Judge Spero to allow discovery pertaining to "customer escalations," and Judge Spero denied the request as precisely the type of "on the ground" facts that would not "advance[] the ball":

> MR. WILLIAMS: I have one additional comment very quickly, your Honor. It appears that internally at the company there were, you know, CRM customer escalations. And what it appears to be is when a customer had a problem and as the problem grew more significant and escalated through Oracle, and it appears that they