# EXHIBIT 25

# PART 2

1    may have even had what's called daily work lists and
     communications with customers in the CRM escalations process.
2    So that might be a beginning to get –

3    THE COURT:  No, that's an end.  You know, this is a software
     company that has customers who they communicate with, I'm sure
4    -- you know, frankly, we are a federal government and we are a
     software customer and we have bugs and our staff is in daily
5    communication with the providers, and I'm sure those things get
     recorded and escalated all through, you know, but that's not what
6    we are going to go through here.  That actually is on the ground.
     What I mean by on the ground is those.

7    *Id.*, (March 1, 2005 Transcript) at 36:10 – 37:1.

8         Plaintiffs' Motion here requests precisely the same type of "on the ground"

9    discovery that Judge Spero rejected at the March 1, 2005 hearing and in the Discovery Plan.

10   Although the Discovery Plan was subject to change upon an appropriate showing *(i.e.,* that

11   Plaintiffs' need outweighed the resulting burden), Plaintiffs never sought to modify the Plan to

12   include documents pertaining to "customer escalations" or problems with individual customer

13   implementations.  And, moreover, any attempt to modify the Plan now should be rejected as

14   untimely.[2]  *See infra,* 16-17.

15        **B.    The "Departmental Email Boxes" to Which Plaintiffs Refer Have Either**

16             **Been Searched or Are Not Within the Scope of the Discovery Plan.**

17        Plaintiffs allege that Defendants "violated" the Discovery Plan by "neglecting to

18   search and produce documents from departmental email boxes."  Motion at 14.  Plaintiffs'

19   argument, of course, begs the question of whether any of these "departmental email boxes" are

20

21   ─────────────────────

22   [2] This is particularly true since Magistrate Judge Spero explicitly invited Plaintiffs to seek
     modification of the scope of discovery at the March 1, 2005 hearing that led to the Discovery
23   Plan:

24        In terms of product problems.  I don't want you to go into bugs with the customers.  I
          don't want you to go into anything bugs other than interoperability and integration, okay?
25        I think that you are going to get these high level in the first instance issues about the
          dimensions of the problems other than the integrations problems.  *If you can convince me*
26        *that that's such a level that you need customer inquiries, we will get to that.*  But to start
          with, I don't want any investigation of just sort of everybody's problems with the Oracle
27        software.

28   Morgan Decl., Ex. 1 (March 1, 2005 Transcript) at 107:16 - 108:1 (emphasis added).

1   within the scope of the Discovery Plan at all.

2           As an initial matter, many of the so-called "email boxes" are actually distribution

3   lists or mailing lists, not separate "email boxes" requiring a separate search. *See* Plfs' Ex. 37.

4   To the extent that any of the Custodians received emails directed to these distribution lists, the

5   emails would have gone to the Custodians' regular inboxes, which were searched for documents

6   pursuant to the Discovery Plan. *Id.*

7           To the extent that any of these "email boxes" were, in fact, separate inboxes as

8   opposed to distribution lists, Plaintiffs have not established that any of them are within the scope

9   of any Custodians' "files" – that is, the only files Oracle was required to search for responsive

10  documents under the Discovery Plan. *See* Plfs' Ex. 3 (Discovery Plan) at 1:13-23. For example,

11  with regard to the HQAPP address, Plaintiffs argue that "those with access to HQAPP would

12  pass along actual deal approvals conveyed by" Safra Catz, who is a Custodian under the

13  Discovery Plan. *See* Motion at 15. But Plaintiffs do not argue (nor could they) Ms. Catz herself

14  ever used the HQAPP address, and they do not claim that "those with access to HQAPP"

15  included any other Custodians. *Id.* In other words, Plaintiffs have failed to establish that the

16  HQAPP address included any documents "from the files of" any Custodian.

17          Plaintiffs also cite testimony from Julie Chan regarding a "revrec@usoracle.com"

18  email address and testimony from Samual Yohannes regarding an "arinfo@oracle.com" email

19  address. *See* Motion at 14-15. Although Plaintiffs claim Defendants have not searched these

20  email addresses, Plaintiffs are incorrect. As Plaintiffs know, pursuant to Judge Spero's October

21  19, 2005 Order, Defendants already searched the "arinfo" email box and found no responsive

22  documents, and Defendants have already agreed to search the "revrec" email box for responsive

23  documents and will produce any such documents along with the supplemental production called

24  for by Special Master Infante's July 17, 2006 Order. Thus, as to the "arinfo" and "revrec" email

25  boxes, there is nothing to compel.

26          Plaintiffs also complain that Oracle has declined to identify "all relevant

27  departmental email boxes and distribution lists" and to identify "the individuals who received

28  email from, or had access to, each box or list." Plaintiffs have cited no discovery request or

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

1    order requiring Oracle to provide such information, and there is none.  There is absolutely no

2    basis for compelling Oracle to do so, nor is there any reason to.  Plaintiffs' blanket and

3    conclusory assertion that they are entitled to know this information because this is a securities

4    case, *see* Motion at 15, is nowhere near sufficient to impose such a burden on Oracle.  Plaintiffs

5    have had the opportunity to examine deposition witnesses about specific email lists and boxes,

6    and they will undoubtedly continue to do so.  There is simply no justification for a blanket order

7    requiring Oracle to identify "all relevant" boxes or distribution lists (whatever "relevant" may

8    mean in that context).

9    **C.    Plaintiffs Motion to Compel Production of "Numerous Settlement**

10    **Agreements" Should Be Denied.**

11    Plaintiffs claim that Defendants have failed to produce "numerous settlement

12    agreements" with Suite 11i customers.  *See* Motion at 9-10.  Presumably, Plaintiffs seek an order

13    compelling production of these "numerous settlement agreements," although the precise relief

14    requested is not clear from Plaintiffs' Motion or Proposed Order.  Plaintiffs' demand appears to

15    be based upon Section I.C.2(f), which requires Defendants to produce documents regarding "any

16    material expense with respect to any Oracle product – such as refunds, rebates or remediation."

17    *See* Plfs' Ex. 3 (Discovery Plan) at 2:15-17.

18    As an initial matter, however, Plaintiffs' Motion ignores various limitations in the

19    Discovery Plan, such as the finite number of Custodian files Defendants were required to search,

20    the Relevant Time Period (June 1, 2000 to June 1, 2001, or documents referring to events during

21    that period), and the definition of "material expense" as "having a financial impact greater than

22    or equal to $500,000."  *See* Plfs' Ex. 3 (Discovery Plan) at 1:9 – 2:17.

23    More fundamentally, though, Plaintiffs have failed to demonstrate that there are,

24    in fact, any responsive documents that have not been produced.  Instead, Plaintiffs cite three

25    documents (Exhibits 39, 40 and 41) that contain stray references to "settlement agreements,"

26    "negotiations" and "settlements."  Motion 9-10.  None of these three documents suggests that

27    there are any responsive documents yet to be produced.

28    Exhibit 39 is a PowerPoint presentation made by Senior Vice President John

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

1    Nugent. *See* Plfs' Ex. 39. Among the "FY01 YTD Accomplishments" for "General Business

2    U.S.," the document includes "Negotiated Numerous Settlement Agreements." *See id.* at

3    NDCA-ORCL 609313. The document does not say anything else about the purported settlement

4    agreements – it does not identify the customers; it does not indicate the dollar amount (if any) of

5    the agreements; it does not say whether these "settlement agreements" were reduced to writing;

6    and it does not say whether the agreements involved Suite 11i or, instead, some other Oracle

7    product. *See* Plfs' Ex. 39. By itself, this stray reference to "settlement agreements" does not

8    support Plaintiffs' claim that Defendants have failed to produce any documents called for by the

9    Discovery Plan, Plaintiffs submit no other evidence to explain the reference. (In that regard,

10   Plaintiffs took Mr. Nugent's deposition, introduced this document as an exhibit, but never asked

11   him about the reference to "settlement agreements." *See* Morgan Decl., Ex. 9 (Nugent

12   Transcript) at 223:18 – 224:4, & Ex. 10 (Nugent Deposition Ex. 28).

13            Exhibit 40 appears to be a spreadsheet (or part of a spreadsheet) identifying some

14   group of Oracle customers and associated issues. *See* Plfs' Ex. 40. One entry says of a

15   customer: "Purchased 11i Fin, OM, iStore etc., implemented by Answerthink (fixed bid), went

16   $323K over budget, they believe 11i OM does not work. They are suing us." *See id.* at NDCA-

17   ORCL 236032. Plaintiffs do not submit any deposition testimony or other evidence to explain

18   this comment, but on its face, the document refers to the "Amt of Relief" for this customer as

19   "20K" – far below the $500,000 materiality threshold set by the Discovery Plan.

20            Exhibit 41 is a "FY 02 Consulting Budget Review" that refers to "negotiations

21   and settlements," but this reference, too, is far from clear, and although Plaintiffs have examined

22   several witnesses regarding this document, Plaintiffs have not elicited any testimony suggesting

23   that Oracle has withheld any responsive documents pertaining to these "negotiations and

24   settlements." On its face, the document appears to reflect consulting work that went "unbilled"

25   due to unexplained "product issues," but it does not suggest that any of that unbilled work

26   resulted from any "settlement agreements" that are otherwise called for under the Discovery

27   Plan. *See* Plfs' Ex. 41 at NDCA-ORCL 159567-68. Indeed, though the document appears to be

28   internally inconsistent, one page of the document suggests that the resulting "unbilled revenue

1  value" for the vast majority of the referenced customers is less than the $500,000 threshold. *See*

2  *id.* at NDCA-ORCL 159568.

3        In sum, Defendants performed a diligent, good faith search for documents

4  responsive to Section C(2)(f) of the Discovery Plan and produced the non-privileged, responsive

5  documents identified in that search. Plaintiffs offer no evidence to the contrary.

6        **D.    Oracle Does Not Maintain A Centralized Organizational Chart.**

7        Plaintiffs complain that Oracle has not produced "organizational charts and other

8  documents that depict or describe Oracle's organization or structure during the relevant time

9  period." Motion at 17. As Oracle has repeatedly explained to Plaintiffs, Oracle does not (and

10  did not during the Relevant Time Period) maintain the type of organizational chart to which

11  Plaintiffs refer. *See e.g.*, Morgan Decl., Ex. 11 (June 9, 2006 Letter from P. Gibbs to S.

12  Williams). Oracle does maintain a system, called Aria, that shows reporting relationships

13  between Oracle's employees, and Oracle has produced several copies of reports from the Aria

14  system showing the direct reports of Oracle's senior executives, including the Individual

15  Defendants. *See e.g.*, Morgan Decl., Ex. 12 (NDCA-ORCL 314349-53).[3]

16        Plaintiffs nevertheless claim to have uncovered evidence that Oracle does, in fact,

17  maintain a traditional, centralized organizational chart. Motion at 17:12-21. To that end,

18  Plaintiffs cite a letter from Plaintiffs' counsel claiming to have seen "organizational charts that

19  do appear to depict a traditional reporting structure." *See* Plfs' Ex. 25. Plaintiffs do not attach

20  the actual documents to which Plaintiffs' counsel referred in the letter, and with good reason:

21

22  [3] In addition to the Aria print-outs, Oracle has produced, at Plaintiffs' request, the report of the
Special Litigation Committee of Oracle's Board of Directors. The SLC Report describes in
23  detail the relevant Oracle employees' roles at the company, including reporting relationships
and job responsibilities. Morgan Decl., Ex. 13_(SLC Report) at Part II ("Background and
24  History of Oracle) pp.6-13; 27-29; 33. Plaintiffs themselves argued for production of the SLC
Report in order to "streamline" the discovery process by giving them insight into Oracle's
25  organizational structure. *Id.*, Ex. 14_(Plaintiffs' June 24, 2005 Reply in Further Support of
Their Motion to Compel the Report of Oracle Corp.'s SLC and All Memoranda or Notes
26  Considered by the SLC) at 12. Plaintiffs' contention that, at this late stage of discovery, they
still need organization charts to understand Oracle's organization is baseless. Given the more
27  than one year of discovery that has occurred, including production of the SLC Report, Plaintiffs
should have all the understanding of Oracle's organizational structure they need.
28

LATHAM•WATKINS⊔
ATTORNEYS AT LAW
SAN FRANCISCO
                                   13
DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

1  the documents themselves consist of random PowerPoint presentations prepared by individual

2  employees, and they depict, in PowerPoint format, reporting relationships and organizational

3  structures of various groups or departments within Oracle. *See* Morgan Decl., Exs. 15-17; 12

4  (NDCA 153019-65 at 153025 and 153031; NDCA-ORCL 260511-16; NDCA-ORCL 277578-99

5  at 277596-97; NDCA-ORCL 314353). These documents do not, in any way, suggest that Oracle

6  maintains a centralized organizational chart for the entire company. And to the extent Plaintiffs

7  are suggesting that Oracle should be required to produce every document that depicts any part of

8  Oracle's organization in this format, such a suggestion is absurd. There is literally no way, short

9  of a manual review of millions of pages of documents, for Oracle to find every single

10 PowerPoint presentation depicting the organizational structure of various groups and

11 departments within the company.

12         Plaintiffs' also cite the deposition testimony of Thomas Williams, but they

13 blatantly mischaracterize it. Just a few lines above the testimony Plaintiffs cite, Mr. Williams

14 makes clear that he is talking about the Aria system, which only shows reporting relationships

15 between employees. *See* Morgan Decl., Ex. 18 (Williams Transcript) at 26:6 – 12 ("You know,

16 at Oracle at that time there was a – effectively an organization chart maintained online that was

17 based on the hierarchies in the HR database. So you could go to that screen, database, whatever

18 – you know, location on the server and see your name in a box and see all of the direct reports

19 that you had in a box and see below them their direct reports.") This is precisely the same

20 system from which Oracle previously provided reports reflecting the direct reports of Oracle's

21 senior executives. *See* Morgan Decl., Ex. 12 (NDCA-ORCL 314349-53). There is no other

22 centralized, organizational chart.

23     **E.    Defendants Have Already Produced Responsive Documents Relating to The**

24           **Securities And Exchange Commission Inquiry.**

25         Plaintiffs have in their possession all non-privileged documents pertaining to the

26 SEC's inquiry regarding their accounting allegations. Plaintiffs' repeated demand that Oracle

27 reconfirm this fact is a waste of the parties' resources and the Court's time.

28         Plaintiffs have failed to make any showing that Defendants' production is

LATHAM•WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

1   deficient. In their Motion, Plaintiffs point to Defendants' purported failure to produce "an
2   inquiry letter from the SEC." Motion at 18. However, Plaintiffs offer no evidence that such a
3   document exists. Defendants conducted a diligent, good faith search for documents relating to
4   the SEC inquiry regarding the accounting allegations, and produced all non-privileged
5   documents identified in that search on December 2, 2005. Morgan Decl., Ex. 19 (December 2,
6   2005 Letter from V. Schmeltz to W. Radcliffe). Defendants' production of the documents
7   responsive to the Court's Orders relating to the SEC is grounds for denying Plaintiffs' motion to
8   compel. *See, e.g., Country Fresh Farms Int'l v. American Family Prods.*, 1994 U.S. Dist.
9   LEXIS 10565 (D. Or. 1994) (denying motion to compel, and finding discovery response to be
10  adequate, where party asserted that documents either did not exist or had already been produced).

11          **F.      Defendants' Source Logs Are Accurate.**

12          Plaintiffs claim, falsely, that "[D]efendants have failed to timely produce source
13  logs in this case, and the logs produced are wildly inaccurate and unreliable in many respects."
14  Motion at 16. In support of this claim, Plaintiffs cite all of two alleged mistakes in Defendants'
15  source logs, and a single document that was sourced to a witness who later testified that he did
16  not believe it was from his files. *See* Motion at 16-17.

17          Even taken at face value, these examples provide no support for Plaintiffs' claim
18  that Defendants logs are "wildly inaccurate and unreliable in many respects." Defendants have
19  produced and sourced for Plaintiffs over 700,000 pages of documents from roughly 100 different
20  custodians. Two sourcing errors (both corrected long ago), and a single witness who did not
21  believe a document came from his files is hardly evidence of "wildly inaccurate" or "unreliable"
22  source logs," and does not come close to justifying an order compelling Oracle to produce yet
23  another "consolidated and updated" source log for all of the more than 700,000 pages of
24  documents produced so far.

25          **G.      Plaintiffs' Motion Fails to Comply With Civil Local Rule 37-2**

26          In the Northern District, any motion to compel further responses to discovery
27  requests "must set forth each request in full, followed immediately by the objections and/or
28  responses thereto." N.D. Cal. Civil. L.R. 37-2. In addition, "[f]or each such request, the moving

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

1  papers must detail the basis for the party's contention that it is entitled to the requested discovery

2  and must show how the proportionality and other requirements of FRCivP 26(b)(2) are

3  satisfied." *Id.* Although Plaintiffs' Motion purports to seek further responses to their First Set of

4  Requests for Production of Documents, and purports to be brought pursuant to Civil Local Rule

5  37, Plaintiffs have failed to set forth, in full, the specific document requests they seek to enforce,

6  let alone Defendants' objections and responses thereto, and Plaintiffs do not even purport to

7  address the proportionality and other requirements of FRCivP 26(b)(2). Plaintiffs' Motion

8  should be denied on this basis alone. *See e.g., Dimmick v. U.S.,* Slip Copy, 2006 WL 1646116

9  (N.D. Cal. 2006) (denying moving party's motion to compel in its entirety for failure to follow

10 Local Rule 37-2); *see also* N.D. Cal. Civil L.R. 37-2 ("Failure by counsel or party to comply

11 with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any

12 authorized sanction.")

13 **H.    Plaintiffs' Motion Should Be Denied As Untimely**

14        Undue delay is grounds for denying a motion to compel. *See Gault v. Nabisco*

15 *Biscuit Comp.,* 184 F.R.D. 620, 622 (D. Nev. 1999) ("If the moving party has unduly delayed,

16 the court may conclude that the motion [to compel] is untimely," *citing* 8A Wright, Miller and

17 Marcus, *Federal Practice and Procedure,* Civil 2d § 2285 (1994 & Supp. 1998)). Once a party

18 has had the opportunity to identify supposed deficiencies in the opposing party's responses to

19 discovery requests, "the motion should be made within a reasonable time or the court may find

20 there has been a waiver (especially if the moving party was aware of the deficiency earlier and

21 failed to move promptly…)." *See* The Rutter Group, *Federal Civil Procedure Before Trial,* §

22 11:2353 (2006) *and cases cited therein.* "Discovery is not for the purpose of permitting a party

23 to engage in an unlimited attempt to probe the factual basis of a claim until there is enough

24 evidence to make out a case." *Choate v. Nat'l Railroad Passenger Corp.,* 132 F.Supp.2d 569,

25 574 (E.D. Mich. 2001) (finding that the moving party's "failure to promptly enforce his

26 discovery rights constitutes a waiver of such rights.")

27        Plaintiffs' Motion is clearly untimely. The document requests Plaintiffs seek to

28 enforce with this Motion were served eighteen months ago, on December 9, 2004. *See* Plfs' Ex.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01-0988-MJJ (JCS)

1 | 1. Defendants responded and objected on January 18, 2005, and the parties met and conferred on

2 | Plaintiffs' document requests on January 27 and 28, 2005. *See* Plfs' Exs. 2, 16. In the wake of

3 | the Discovery Plan, Defendants began to produce documents in May of 2005, and Defendants

4 | had completed the vast majority of the production by June 2005. Plaintiffs did not file the instant

5 | Motion, however, until August 15, 2006. Even setting aside the effect of the Discovery Plan –

6 | which, as noted above, sharply limited the scope of Plaintiffs' first set of document requests –

7 | Plaintiffs' Motion to compel further responses to those requests should be denied as untimely.

8 | Plaintiffs' prolonged delay in moving to compel further responses is particularly

9 | egregious given the procedural history of this case. Since Judge Jenkins' December 17, 2004

10 | scheduling order, Plaintiffs have twice moved to extend the discovery cutoff, and presented

11 | separate sets of "omnibus" discovery motions to Judge Spero and Special Master Infante.

12 | Throughout this period, Plaintiffs never once sought to compel further responses to their now-

13 | eighteen-month-old document requests. In the meantime, Oracle has produced 700,000 pages of

14 | documents under the existing Discovery Plan, and the parties have deposed over 100 witnesses.

15 | There is simply no excuse for Plaintiffs' delay in seeking to compel further responses to these

16 | discovery requests until the very end of the discovery period. *See Gault*, 184 F.R.D. at 622.

17 | As noted above, Plaintiffs have not moved to modify the Discovery Plan in order

18 | to permit the discovery they seek to compel with this Motion. Even if they had, however, for the

19 | same reasons that Plaintiffs' motion to compel is untimely, any request to Modify the Plan at this

20 | stage should also be denied as untimely.

21

22

23

24

25

26

27

28

1    V.    CONCLUSION

2              For the reasons set forth above, Defendants respectfully request that the Court

3    deny Plaintiffs' Motion.

4

5    Dated: August 25, 2006                    LATHAM & WATKINS LLP
                                                Peter A. Wald
6                                               Michele F. Kyrouz
                                                Jamie L. Wine
7                                               Patrick E. Gibbs

8

9                                        By: _Patrick Gibbs_____

10                                             Patrick E. Gibbs
                                               Attorneys for Defendants ORACLE
11                                             CORPORATION, LAWRENCE J.
                                               ELLISON, JEFFREY O. HENLEY,
12                                             and EDWARD J. SANDERSON

13   SF\575319.4

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                        18

DEFS' OPP TO PLFS' MOTION TO COMPEL DOCUMENTS AND
COMPLIANCE WITH DISCOVERY PLAN
Master File No. C-01 0988-MJJ (JCS)

## PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 years and not a party to this action. My business address is Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, San Francisco, Ca 94111.

On **August 25, 2006**, I served the following document described as:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS RESPONSIVE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS AND COMPLIANCE WITH THE DISCOVERY PLAN.**

by serving a true copy of the above-described document in the following manner:

### BY HAND DELIVERY

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for hand delivery by a messenger courier service or a registered process server. Under that practice, documents are deposited to the Latham & Watkins LLP personnel responsible for dispatching a messenger courier service or registered process server for the delivery of documents by hand in accordance with the instructions provided to the messenger courier service or registered process server; such documents are delivered to a messenger courier service or registered process server on that same day in the ordinary course of business. I caused a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for hand delivery by a messenger courier service or a registered process server.

The Honorable Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111

Shawn A. Williams
Willow E. Radcliffe
Lerach, Couglin, Stoia, Geller, Rudman
& Robbins LLP
100 Pine Street, Suite 2600
San Francisco, California 94111-5238

## BY US MAIL

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service. Under that practice, documents are deposited with the Latham & Watkins LLP personnel responsible for depositing documents with the United States Postal Service; such documents are delivered to the United States Postal Service on that same day in the ordinary course of business, with postage thereon fully prepaid. I deposited in Latham & Watkins LLP' interoffice mail a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service:

Mark Solomon
Douglas R. Britton
Lerach, Coughlin, Stoia, Geller, Rudman
 & Robbins LLP
401 B Street, Suite 1600

## BY FACSIMILE

I am familiar with the office practice of Latham & Watkins LLP for collecting, processing, and transmitting facsimiles. Under that practice, when a facsimile is deposited with the Latham & Watkins LLP personnel responsible for facsimiles, such facsimile is transmitted that same day in the ordinary course of business. I deposited the above-described document for facsimile transmission in accordance with the office practice of Latham & Watkins LLP for collecting and processing facsimiles. The facsimile of the above-described document was transmitted to the following parties from San Francisco, California on August 25, 2006, at the times noted on the attached confirmation sheet:

Mark Solomon
Douglas Britton
Lerach, Coughlin, Stoia, Geller, Rudman
 & Robbins LLP
401 B Street, Suite 1600
San Diego, California 92101-4297
Fax No.: (619) 231-7423

Shawn A. Williams
Willow E. Radcliffe
Lerach, Couglin, Stoia, Geller, Rudman
 & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, California 94111-5238
Fax No.: (415) 288-4534

The facsimile number of the sending machine is (415) 395-8095. Said transmission was complete and without error. All parties on whom this facsimile transmission has been served have agreed in writing to such form of service pursuant to agreement.

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **August 25, 2006**, at San Francisco, California.

Jennifer A. Kolin