```
***********************
    TRANSMISSION REPORT
***********************
```

(FRI) MAR  2 2007 18:22
LATHAM & WATKINS LLPLA 213-891-8763 #18

| DOCUMENT # | TIME STORED | TIME SENT | DURATION | PAGE(S) | MODE | RESULT |
|---|---|---|---|---|---|---|
| 4861938-643 | 3. 2 18:18 | 3. 2 18:18 | 1'41" | 8 | ECM | OK |

| DESTINATION | DST. TEL # |
|---|---|
| #61416192317423 | #61416192317423 |

# LATHAM&WATKINS LLP

633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Tel: (213) 485-1234  Fax: (213) 891-8763
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

**FACSIMILE TRANSMISSION**
March 2, 2007

| To: | Eli R. Greenstein<br>Lerach, Coughlin, Stoia, Geller,<br>Rudman & Robbins LLP | Fax: (415) 288-4534 | Tel: (415) 288-4545 |
|---|---|---|---|
| | Mark Solomon<br>Lerach, Coughlin, Stoia, Geller,<br>Rudman & Robbins LLP | (619) 231-7423 | (619) 231-1058 |

| From: | Lang Morton-Owens |
|---|---|
| Re: | In Re: Oracle Securities Litigation |

☐ Original(s) to follow          Number of pages, including cover: 8

Please see attached

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
TRANSMISSION REPORT
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(FRI) MAR  2 2007 18:17
LATHAM & WATKINS LLPLA 213-891-8763 #18

| DOCUMENT # | TIME STORED | TIME SENT | DURATION | PAGE(S) | MODE | RESULT |
|---|---|---|---|---|---|---|
| 4861938-642 | 3. 2 18:15 | 3. 2 18:15 | 1'38" | 8 | ECM | OK |

| DESTINATION | DST. TEL # |
|---|---|
| #61414152884534 | #61414152884534 |

# LATHAM & WATKINS LLP

633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Tel: (213) 485-1234  Fax: (213) 891-8763
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

**FACSIMILE TRANSMISSION**
March 2, 2007

| To: | Eli R. Greenstein | Fax: (415) 288-4534 | Tel: (415) 288-4545 |
|---|---|---|---|
| | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | | |
| | Mark Solomon | (619) 231-7423 | (619) 231-1058 |
| | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | | |

| From: | Lana Morton-Owens |
|---|---|
| Re: | In Re: Oracle Securities Litigation |

☐ Original(s) to follow     Number of pages, including cover: 8

Please see attached

# LATHAM&WATKINS LLP

633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Tel: (213) 485-1234  Fax: (213) 891-8763
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

**FACSIMILE TRANSMISSION**
March 2, 2007

| To: | Eli R. Greenstein | **Fax:** (415) 288-4534 | **Tel:** (415) 288-4545 |
|---|---|---|---|
| | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | | |
| | Mark Solomon | (619) 231-7423 | (619) 231-1058 |
| | Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP | | |

| From: | Lana Morton-Owens |
|---|---|
| Re: | In Re: Oracle Securities Litigation |

☐ Original(s) to follow     Number of pages, including cover: 8

Please see attached

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal service. Thank you.

**If there are any problems with this transmission, please call (213) 891-7533.**
LA\1583072.3

038128-0025

Lana Morton-Owens
Direct Dial (213) 891-7402
Lana.morton-owens@lw.com

**LATHAM&WATKINS**LLP

633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Tel: (213) 485-1234  Fax: (213) 891-8763
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

March 2, 2007

**VIA FACSIMILE**

Eli R. Greenstein
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, 26th Floor
San Francisco, CA 94111

   Re: <u>In re Oracle Securities Litigation</u>
      Case No. C-01-0988 MJJ

Dear Eli:

   We write in response to your February 16, 2007 letter, in which Plaintiffs claim to "memorialize" certain issues and "follow up" on various other concerns regarding Defendants' supplemental accounting productions. (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 1.)

   At the outset, Plaintiffs' incomplete, inaccurate and misleading characterization of events is unproductive, and appears to be designed to produce unnecessary motion practice, rather than resolve whatever genuine concerns Plaintiffs may have. Furthermore, it is unclear why Plaintiffs continue to pursue issues stemming from productions that Defendants completed last Fall, and which Defendants have long since resolved. Nevertheless, in an effort to resolve any outstanding issues without Court intervention, we have looked into each of the items you mentioned, and respond to them below, in the order set forth in your letter.

  A. **Plaintiffs' Assertions Regarding Defendants' Productions of Documents in Response to the July 17, 2006 Order are Inaccurate and Unfounded**

   Plaintiffs' argument that they have been prejudiced by "technical" issues or minor delays in Defendants' earlier accounting productions is wholly unsupportable. Many of the productions identified in your letter were completed last Fall. In all but a few isolated cases, Plaintiffs were in possession of documents and were able to review the document images on or within a few days of the August 31, 2006 deadline imposed by Special Master Infante. Moreover, in light of these technical issues, Plaintiffs also were granted an extension of time in which to move to compel additional discovery. Thus, Plaintiffs actually received more than adequate relief for these minor issues, and any assertion of prejudice is both unfounded and untimely.

   Plaintiffs' argument that they suffered prejudice stemming from Defendants' "reproductions" of documents fares no better. As you are aware, many of the "reproductions"

LA\1693698.1

Eli R. Greenstein, Esq.
March 2, 2007
Page 2

**LATHAM&WATKINS**LLP

identified in your letter were voluntary and made as a courtesy to Plaintiffs, at Plaintiffs' request. (*See, e.g.,* Letter from Konovalov to Greenstein, dated September 15, 2006 at 1; Letter from Glennon to Greenstein, dated January 8, 2007, at 1; Letter from Glennon to Greenstein, dated January 22, 2007, at 1-2; Letter from Morton-Owens to Greenstein, dated February 5, 2007, at 1; Letter from Morton-Owens to Greenstein, dated February 7, 2007, at 1-2.) The remaining "reproductions" Plaintiffs identify in the letter either resolved purported technical issues that did not affect Plaintiffs' ability to review the document images, or were aimed at reorganizing the documents (that already were in Plaintiffs' possession) in a manner specifically requested by Plaintiffs, for their own convenience. Defendants even produced a series of elaborate and detailed charts, linking documents from the original productions to the "replacement" productions, simply to facilitate Plaintiffs' review of the materials. Defendants have complied with all of Plaintiffs' "reproduction" requests, regardless of how extensive, expensive or unfounded.

Given the volume and nature of these documents, understandably, there were some unforeseen technical issues concerning the formatting and organization of some documents. None of those issues, however, prevented Plaintiffs from reviewing the documents themselves. In fact, Plaintiffs' requests for charts linking the documents on the various productions demonstrates conclusively that Plaintiffs were capable of reviewing documents, from the outset, contained on the disks that ultimately were reproduced. (*See, e.g.,* Letter from Greenstein to Defendants' Counsel, dated December 1, 2006, at 1; Letter from Greenstein to Defendants' Counsel, dated December 22, 2007, at 1) ("Plaintiffs have already spent considerable time and money reviewing the documents and spreadsheets produced on ORC 77-80 (and subsequently the documents on ORC 114).").

Plaintiffs' most recent claim that the documents Defendants produced pursuant to the July 17, 2006 Order "are still incomplete and problematic" is inaccurate. As an initial matter, Plaintiffs' February 16, 2007 letter marks the first time that Plaintiffs have raised some of these issues. (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 2.) The delay in raising these concerns notwithstanding, many of the specific issues cited in your letter were addressed and resolved months ago. For instance, Defendants previously resolved all issues concerning the production of ORC 72-92. (*See., e.g.,* Letter from Konovalov to Anderson, dated September 1, 2006; Letter from Konovalov to Greenstein, dated September 15, 2007; Letter from Glennon to Greenstein, dated October 6, 2006.) As noted above, Defendants also voluntarily created charts linking the documents contained on these disks to address Plaintiffs' stated concern that they were "unable to ascertain which documents were not reproduced as part of the January 17, 2007 production." (*See* Letter from Glennon to Greenstein, dated January 22, 2007.) While Plaintiffs broadly assert that certain documents that Defendants produced last year are "corrupt and unreadable," Plaintiffs do not identify any specific document suffering from such defects. Defendants have gone to great lengths to ensure the propriety of their document productions, and to correct expeditiously any issues that Plaintiffs have identified. If there are individual documents that Plaintiffs believe are corrupted, please specifically identify them and we promptly will look into it. Simply demanding that Defendants reproduce entire document productions, without any support, is unreasonable.

LA\1693698.1

Eli R. Greenstein, Esq.
March 2, 2007
Page 3

LATHAM&WATKINS LLP

Moreover, Plaintiffs' February 16 letter also marks the first time Plaintiffs have raised any concerns about ORC 120, a disk Defendants produced nearly four months ago. This disk contains redacted copies of 41 documents that inadvertently were withheld on privilege grounds, and later produced in redacted form. It appears that Defendants did not reproduce unredacted copies of these 41 documents on January 17, 2006. Although we apologize for this oversight, it bears noting that Plaintiffs have had the redacted copies of these documents – which set forth all data pertaining to the 926 debit memos – since November 2006. In any event, we will produce ORC 212 on Monday, which will include documents Bates labeled NDCA-ORCL 3041844-3042188. As Defendants anticipate that Plaintiffs will request a chart linking the redacted documents on ORC 120 to the unredacted versions of the same documents contained on ORC 212, we also will produce a chart linking the documents on the two disks.

### B. Plaintiffs' Complaints About Defendants' Recent Productions Are Baseless

Contrary to your assertion, Defendants' January 30, 2007 document production was not "incomplete." (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 2-3.) Plaintiffs were able to review these documents on the very day that Defendants produced them. Two days after initially producing these documents, Defendants discovered an issue with some of the metadata and voluntarily reproduced 23 load files – even before Plaintiffs identified the issue with the metadata. These load files contained *only* metadata and, thus, the reproduction of the load files did not prevent Plaintiffs from reviewing and analyzing the documents. Plaintiffs' contention that Defendants reproduced "200,000 load files," and that Plaintiffs were "unable" to view the documents in the two-day interim is a gross mischaracterization.

Furthermore, Plaintiffs' accusation that Defendants had to replace certain documents on February 7, 2006 is misleading. As you know, Defendants originally produced these documents on February 5, 2006, with load files compatible with a "Summation" database. In response, Plaintiffs telephonically requested that Defendants reproduce an additional load file that would allow Plaintiffs to load the documents onto a "Concordance" database. At the same time, Plaintiffs also made additional requests regarding the format and organization of certain electronic folders. Although Defendants were under no obligation to comply with these demands, Defendants reproduced the documents in precisely the format Plaintiffs requested. (*See* Letter from Morton-Owens to Greenstein, dated February 7, 2007.) It is unfortunate that Plaintiffs are attempting to use Defendants' good faith efforts to accommodate Plaintiffs' convenience requests to manufacture additional discovery disputes.

In addition, Plaintiffs' contention that Defendants somehow "contradicted" themselves regarding the production of certain reports, although baseless, ultimately is irrelevant. During a conference call on February 6, 2007, Plaintiffs noted that documents Bates labeled NDCA-ORCL 1534309-1534433 appeared to be duplicates. (*See* Letter from Morton-Owens to Greenstein, dated February 7, 2007.) Defendants researched the issue, notified Plaintiffs that the batch of documents did include duplicates, and assured Plaintiffs that Defendants would "resolve the issue." (*Id.*) Two days later, Defendants reproduced the reports, thus resolving the issue.

LA\1693698.1

Eli R. Greenstein, Esq.
March 2, 2007
Page 4

LATHAM&WATKINS LLP

(*See* Letter from Morton-Owens to Greenstein, dated February 9, 2007).[1] Again, this appears to be another example of Plaintiffs exploiting Defendants' efforts to resolve these issues to create additional and unwarranted disputes.[2]

The remaining "problems" set forth in your letter either stem from Plaintiffs' confusion about the documents or represent issues that Defendants already have resolved. (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 4.) First, Plaintiffs' contention about the documents on ORC 202 containing dates that are represented by decimals rather than whole numbers was resolved when we reproduced ORC 202A, on February 20, 2007. (*See* Letter from Morton-Owens to Greenstein, dated February 20, 2007.) Second, the issue regarding the default dates of "1969 or 1970" has been explained to Plaintiffs on multiple occasions over the course of two years. (*See, e.g.*, Letter from Leffert to Winkler, dated August 26, 2005; Letter from Glennon to Greenstein, dated December 15, 2007.) Third, with respect to the 75 documents that do not contain dates, we will produce on Monday a CD entitled "February 28, 2007 load files" which contains the correct date fields for documents Bates numbered NDCA-ORCL 1127475 through 1251298. Of course, this issue did not affect the content of the documents themselves, or prevent Plaintiffs from reviewing Defendants' supplemental accounting productions.[3] Fourth, although Plaintiffs contend that the documents Defendants produced on January 30, 2007 do not have Bates numbers embedded in the OCR, there is no requirement that the OCR be embedded with the Bates information.[4] Finally, most of the documents that Plaintiffs claim are "empty" or "not viewable" were, in fact, processed correctly; the files indicate that they are "empty" or "not viewable" in their native format. (*See* Letter from

---

[1] Although Plaintiffs' claim that the problem with this report is "an example" of a much larger issue impacting other reports, the examples cited in the letter do not appear to be defective.

[2] With respect to document Bates labeled NDCA-ORCL 1731119, Plaintiffs' stated concern about the document's "original" native format misses the mark. (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 3.) Defendants produced this data in precisely the same format as it was kept in the normal course of business. Defendants cannot reproduce this data – in an Access Database or otherwise – without altering the data.

[3] Notably, documents Bates labeled NDCA-ORCL 1508895 through 1511914 were placed into a zip file by an Oracle employee; thus, the original date information was replaced electronically by the zip file date. *See, e.g.*, NDCA-ORCL 1508484-1508485. Accordingly, Defendants cannot repopulate the date field for these documents without altering the data, as it was kept in the ordinary course of business. Moreover, Defendants will not be "correcting" document Bates labeled NDCA-ORCL 1529155 because there is no data on the underlying document.

[4] As you know, Defendants have provided this information only when producing documents originally maintained in hardcopy form. Because the recent accounting productions involved electronic documents, Defendants will not reproduce these documents with embedded OCR information, unless Plaintiffs agree to bear the cost of such reproduction.

LA\1693698.1

LATHAM&WATKINS LLP

Greenstein to Morton-Owens, dated February 16, 2007, *citing* NDCA-ORCL 1482Y09-410 [*sic*]; NDCA-ORCL 14822442-444; NDCA-ORCL 1643326.)[5]

### C. Defendants Consistently Have Produced Email Communications in Compliance with the Federal Rules and Applicable Discovery Orders

Plaintiffs' contention about the format of emails also is untimely and meritless. (*See id.*, at 4.) In your letter, Plaintiffs contend, for the first time, that Defendants have produced "strings of emails that contain embedded emails without headers, dates, and other crucial information." (*Id.*) Notably, the format of Defendants' email productions has remained constant since the outset of fact discovery in this case, over two years ago. (*See* Letter from Schmeltz to Williams, dated February 17, 2005.)

Regardless, Defendants have produced email strings in precisely the same format as they were maintained in the ordinary course of business. The "default" settings in the email viewers used by Oracle's employees do not set forth automatically this "embedded" information. Thus, to the extent Defendants produced email chains that included such information, that results from the fact that the end user had adjusted his or her settings to display this information on the viewer. Defendants cannot reproduce these documents in manner requested, without fundamentally altering the form of the documents.

Plaintiffs' contention that Oracle should have produced certain email chains from the files of other custodians is similarly flawed. The fact that a document appears in Molly Littlefield's files, but was not produced from the files of another custodian who appears in the email chain, cannot come as a surprise to Plaintiffs, especially given the contents of the communications upon which Plaintiffs rely in advancing this argument. (*See* Letter from Greenstein to Morton-Owens, at 4-5, *citing* NDCA-ORCL 1733103-109.) This particular email exchange does not reference, discuss or even mention the creation or accounting for any of the 46,000 debit memos, much less the 926 debit memos that have been the focus of discovery in this case. (*See* March 10, Discovery Plan, at 2.) Indeed, the Court did not permit Plaintiffs even to seek discovery into the 2002 "unapplied cash" project until December 19, 2006. Contrary to Plaintiffs' assertions, Defendants' retention and production of this document is a testament to Oracle's document preservation efforts.

The remaining concerns that Plaintiffs raise in connection with Defendants' email productions can be addressed in short order. First, Plaintiffs point out that documents Bates labeled NDCA-ORCL 1733011 and 1733056 appear to be two different copies of the same email, but with different time stamps and attachment properties. (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 5.) The basis for Plaintiffs' concern is unclear; it is

---

[5] A small number of documents that Plaintiffs identified in the letter do not appear "empty" or "not viewable" in Defendants' production set. (*See* NDCA-ORCL 1703193-1703195 and NDCA-ORCL 1643326.) Although it is unclear why Plaintiffs are having problems with these four documents, we will reproduce them within a week.

**LATHAM&WATKINS**LLP

precisely because of these differences that Defendants produced both versions of this email. Second, we have investigated Plaintiffs' concern about document Bates labeled NDCA-ORCL 1488445-59, and concluded that our production is accurate and your concern is unfounded. Third, with respect to NDCA-ORCL 1727995 and 1607463, these documents are not "stray email strings," but rather, the attachment field demonstrates that these documents are attachments to another email. Finally, Plaintiffs' claim that NDCA-ORCL 1721641 "cannot be read" is difficult to address considering that your letter provides such little detail on this issue. Nonetheless, although it is unclear why Plaintiffs "cannot . . . read" this particular document, Defendants will produce a new version of the document within a week.

### D. Defendants' Production of Metadata More Than Complies With Oracle's Discovery Obligations

Plaintiffs mistakenly argue that Defendants have failed to produce "crucial metadata that is required by Fed. R. Civ. P. 26 and the Discovery Plan." (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 5-6.) As you know, the March 10 Discovery Plan requires only that Defendants produce the following metadata fields: date, senders, receivers and custodian. (*See* March 10 Discovery Plan, at 4.) In addition to this metadata, at Plaintiffs' request, Defendants have produced attachment field metadata. In other words, Defendants have produced more metadata than is required under either the Federal Rules or the March 10 Discovery Plan. In any event, Plaintiffs never requested any additional metadata until months *after* the close of fact discovery. Thus, Defendants will not be supplementing metadata from prior accounting productions in response to Plaintiffs' untimely and unreasonable request.

### E. Plaintiffs Have Suffered No Prejudice as a Result of Defendants' Recent Productions

Plaintiffs also argue that Defendants somehow "improperly withheld" documents relating to debit memos. (*See* Letter from Greenstein to Morton-Owens, dated February 16, 2007, at 6.) The examples Plaintiffs have identified, however, contain no additional information that was not already in Plaintiffs' possession since the dawn of fact discovery. Indeed, many of the examples upon which Plaintiffs rely simply consist of emails attaching debit memo lists that Plaintiffs have had since November 2005. Plaintiffs questioned each of the witnesses identified in your letter at length about the creation and accounting for the debit memos. In fact, your contention about being deprived of the opportunity to fully depose Greg Myers with the documents is particularly unfounded, considering that Plaintiffs chose to depose him only as a Rule 30(b)(6) witness – *long before* Defendants had completed the majority of the accounting productions.

Furthermore, Plaintiffs' characterization of Defendants' production of these documents as "a most severe form of spoliation" is empty rhetoric. (*Id.*) The fact that Defendants retained and produced these documents evidences Defendants' document preservation efforts, and undermines whatever spoliation argument Plaintiffs intend to advance "at the appropriate time." (*Id.*)

LA\1693698.1

Eli R. Greenstein, Esq.
March 2, 2007
Page 7

**LATHAM&WATKINS**LLP

### F.     Defendants Have Responded to All of Plaintiffs' Stated Concerns

    As we repeatedly have made clear, Defendants take their discovery obligations under the Federal Rules and the Court's discovery orders very seriously. Defendants' productions of documents in this case have complied fully with these obligations. Moreover, Defendants have looked into each of Plaintiffs' complaints and responded promptly and in good faith. Because most of the issues you have raised are meritless, Defendants are not required, and will not, re-review "all" prior accounting document productions as Plaintiffs request in your letter. However, as set forth above and as we have done in the past, we will address and resolve the issues with a small number of documents identified by Plaintiffs. To the extent that you have additional specific concerns about documents, we would be happy to address them with Plaintiffs.

    Please do not hesitate to contact me should you have any further questions.

                Very truly yours,

                *Lana Morton-Owens* /nb

                Lana Morton-Owens
                of Latham & Watkins LLP

cc: Mark Solomon

LA\1693698.1