IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Certified Copy**

In re ORACLE CORPORATION
SECURITIES LITIGATION

Master File No. C-01-0988-MJJ

This document relates to:

ALL ACTIONS.

_____/

---oOo---

TELEPHONIC HEARING BEFORE JUDGE INFANTE

Thursday, September 21, 2006

---oOo---

SHEILA CHASE & ASSOCIATES
Reporting for
LiveNote World Service
221 Main Street, Suite 1250
San Francisco, California 94105
Phone:  (415) 321-2300
Fax:  (415) 321-2301

Reported by
SHEILA CHASE, CSR, RPR
License No. 4934

```
 1            BE IT REMEMBERED that on Thursday, September 21,

 2  2006, commencing at the hour of 8:30 a.m., before me,

 3  SHEILA CHASE, CSR, RPR, a Certified Shorthand Reporter

 4  for the State of California, appeared telephonically:

 5

    Counsel on behalf of Plaintiffs:

 6

        SHAWN A. WILLIAMS, Esquire
 7      MARK SOLOMON, Esquire
        JENNIE LEE ANDERSON, Esquire
 8      LERACH, COUGHLIN, STOIA, GELLAR, RUDMAN & ROBBINS
        100 Pine Street, Suite 2600
 9      San Francisco, California 94111
        Phone: (415) 288-4545
10      E-mail:  shawnw@lerachlaw.com
                 marks@lerachlaw.com
11               jenniea@lerachlaw.com

12

    Counsel on behalf of Defendants:

13

        PATRICK E. GIBBS, Esquire
14      SEAN P.J. COYLE, Esquire
        LATHAM & WATKINS, LLP
15      140 Scott Drive
        Menlo Park, California 94025
16      Phone:  (650) 328-4600
        E-mail:  patrick.gibbs@lw.com
17               sean.coyle@lw.com

18

    Special Master:

19

        JUDGE EDWARD A. INFANTE (Ret.)
20      JAMS SAN FRANCISCO
        Two Embarcadero Center, Suite 1500
21      San Francisco, California 94111
        Phone:  (415) 774-2603

22
                       ---o0o---
23

24

25
```

```
 1                          ---oOo---

 2          TELEPHONIC HEARING BEFORE JUDGE INFANTE

 3              September 21, 2006 - 8:30 a.am

 4                          ---oOo---

 5          JUDGE INFANTE:  This is a hearing following the

 6   parties' efforts to meet and confer regarding proposed

 7   orders submitted to the special master.

 8          I'd like to acknowledge that I have received a

 9   great deal of material since our hearing on September

10   11th.

11          I received plaintiffs' letter dated September

12   15th, which explained the meet and confer efforts of the

13   parties, and had attached to it two proposed orders.

14          One was Exhibit A, which was written on the

15   12th.  Another was Exhibit C, which was written on the

16   14th.  Also attached was Exhibit D, a letter sent to

17   Latham & Watkins regarding the identity of certain

18   escalation managers who might have relevant documents.

19          I received a letter from Mr. Gibbs dated

20   September 18 also describing meet and confer efforts and

21   containing a proposed order attached as Exhibit A.

22          I then received on September 20th a second

23   letter from defendants, along with a box of several

24   exhibits -- I believe there were a 183 exhibits -- which

25   were documents that have been produced relating to
```

1    Exhibit 42.

2              That letter of September 20th was misdated.

3    That's September 18, but the date was corrected by a

4    subsequent letter, which in all other respects was

5    identical to the first letter.

6              I also received a letter from plaintiffs'

7    counsel dated September 20th in which you explain your

8    examination of the exhibits that was submitted to me and

9    served on you, and you again urge the special master to

10   select one of the two proposed orders that you

11   originally submitted, which was Exhibit A and Exhibit C

12   to your September 14th letter.

13             I have reviewed all of the materials you have

14   submitted.  I also reviewed the hearing transcript from

15   the hearing on September 11th, which is a rough draft

16   transcript.

17             I'll give you one final opportunity to speak to

18   these issues now, and then I will issue an order.

19             So the plaintiffs may proceed.

20        MR. WILLIAMS:  Thank you, Your Honor.  This is

21   Shawn Williams, and I will be brief.

22             Without rehashing all of the argument that was

23   submitted to the Court prior to the September 11th,

24   2006, hearing and the argument made before the Court on

25   September 11, I will say that, consistent with Your

1   Honor's instructions, as we have identified in our

2   letter, plaintiffs quickly reviewed the transcript and

3   the briefing in the matter and sent to Mr. Gibbs a

4   proposed order that we believe truly captured the

5   direction in which the Court was going as it issued an

6   order granting in part our motion to compel.

7          We also in that -- after that, we urged

8   Mr. Gibbs to seek out information from Oracle employees

9   that would further identify where the responsive

10  documents would be, in order to minimize any search

11  burden that was articulated at the hearing.

12         Mr. Gibbs never responded to that, never

13  indicated that he had spoken to anyone to help narrow

14  that burden, and never provided any suggestion as to how

15  we could tailor the proposed order in a way that would

16  be fair to both parties.

17         We think that initial proposed order was fair

18  to both parties; nevertheless, we did go back and we

19  gave Mr. -- we went back, edited our proposed order and

20  provided that to Mr. Gibbs.  And that was very, very

21  specific.  And what we tried to do there was, really,

22  stay in line with the Court's comments at the hearing so

23  that we did not overreach and seek more than what we

24  were entitled to or more than what the Court indicated

25  would be fair.  Mr. Gibbs responded with nothing.

1              We followed up by trying to help Mr. Gibbs find

2     individuals at the company, specific escalation

3     managers, senior escalation specialists, clearly people

4     and a division that might have responsive documents or

5     which would allow him to speak to people that might be

6     able to direct him where the responsive documents would

7     be.  They responded with nothing.

8              With respect to the databases that were

9     discussed at the hearing, the ECMS database, we again

10    identified that and asked Mr. Gibbs if he could retrieve

11    certain of the documents from that database.  Mr. Gibbs

12    responded with nothing.

13             With respect to that, I think there are a

14    couple of easy questions which could be responded to

15    quickly:  Does the database still exist?

16             If it exists, there should be no associated

17    burden with going to the database and getting all of the

18    responsive documents from that database simply to begin

19    the production of responsive documents.

20             I do want to address Mr. Gibbs' proposed order.

21             The proposed order that Mr. Gibbs has attached

22    to his letter which, indeed, attempts to reargue a

23    motion that clearly the defendants had lost, suggests

24    that, again, there is no way for him to define what an

25    escalated report or -- I'm sorry -- an escalation report

1    or escalated type report is.

2           That is simply an effort in misdirection.

3    There are numerous witnesses who have simply defined

4    escalation reports or escalation, meaning an account

5    having difficulty that was raised to be visible to

6    management.

7           The company clearly had at least two to three

8    databases that housed that type of information, and had

9    a team of individuals that were responsible for

10   responding to, gathering and synthesizing that

11   information.

12          However, what we get from the other side is

13   that it is impossible to figure this out.  That is

14   simply untrue.

15          With respect to the order -- or the proposed

16   order that Mr. Gibbs has submitted, he suggests that the

17   plaintiffs should limit their requests or the order

18   should be limited to 50 specific customers.

19          Respectfully, that is simply nonsense.  We have

20   identified at least 65 customers who were hot, hot

21   escalated customers.  We have identified -- and that was

22   simply in one division of the company.

23          His suggestion that we should limit our request

24   or the order should be limited to something less than

25   that fraction of hot customers is -- it's simply absurd.

1          Not only have we identified that 65, it only

2     goes to one section, the ERP section of the company, and

3     does not address CRM at all, where we know the majority

4     of the problems occurred.

5          So I don't think that the proposed orders that

6     have been submitted by the other side are orders that

7     are a good faith effort to reach a conclusion that is in

8     line with Your Honor's direction of the other day.

9          Finally, I want to address the exhibits that

10    were submitted to the Court.  I think they were

11    submitted yesterday morning.  That's when we got them.

12         I think we have identified and analyzed them

13    for Your Honor in our letter.  But, indeed, they are

14    multiple documents -- or multiple copies of the same

15    document.

16         In fact, they submit to Your Honor Exhibit 42

17    at least two or three times, the very document that we

18    were hoping would help define the scope of the proposed

19    order.

20         They have attached, Your Honor, our amended

21    complaint.  And I'm not sure what the purpose of that

22    was.

23         They have attached a CRM white paper, another

24    document that we had actually provided to them two years

25    ago.

1          It's totally unhelpful.  Its burdensome.  I'm

2     sure it is to the Court and us.  We spent hours and

3     hours working through that yesterday.  I'm sure the

4     defendant's spent hours and hours and hours over the

5     weekend preparing that to submit to the Court, at the

6     same time failing to identify or propose an order that

7     would be helpful.

8          I'm going to conclude there, Your Honor, and I

9     will answer any questions that you may have.  Thank you

10    very much.

11         JUDGE INFANTE:  I have a question.

12         One of the issues that Mr. Gibbs specifically

13    discusses in his submission is the scope of the search.

14    What do you propose the scope of the search should be,

15    keeping in mind the discovery plan?  What is your answer

16    to that question?

17         MR. WILLIAMS:  With respect to the scope of the

18    search, Your Honor, at the very least it has to include

19    the people who are in the discovery plan, which

20    Mr. Gibbs has identified as 210.

21         I will say that they have been slightly unclear

22    on that because on the one hand they have said they

23    produced all of the documents from those people's files,

24    and on the other hand, they are saying they are going to

25    go back to those people's files and produce documents

1    they have said they've already produced.

2           But certainly it would encompass those people.

3    It would encompass all of the customers.  And I think

4    they have now identified in their letter 248  Suite 11i

5    escalated customers and the escalation reports and

6    documents related to those customers.

7           And the documents should come from the

8    division -- the escalation managers and the senior

9    escalation specialists, they should come from the

10   databases that we have identified as the customer -- the

11   ECMS database, the CRM database, and the customer care

12   database, or division that handles those issues.

13          And Oracle should provide the Court and us with

14   the identity of all of those people.  We certainly don't

15   know all of those people.  I do have some names, and I

16   can help defendants seek out those people, and I think

17   that I have done that.  I think there are more.

18          But we were supposed to meet and confer and

19   have a discussion about it, and we didn't get anything

20   valuable from the other side, other than the arguments

21   that they made to Your Honor.

22          So, given the narrowness of the issue regarding

23   the escalations themselves, even a company-wide search

24   would not be unduly burdensome unless the other side can

25   provide something that is meaningful and will allow us

1    to get the documents that we need.

2            I hope that answered Your Honor's question.

3            JUDGE INFANTE:  It did.  Thank you.

4            Mr. Gibbs?

5            MR. GIBBS:  Thank you, Your Honor.

6            I don't want to spend a whole lot of time on

7    the meet and confer process.  I don't think rehashing

8    that is productive.  But I do want to note that I

9    strenuously disagree with Mr. Williams' characterization

10   of that process.

11           We suggested, immediately upon receiving their

12   first draft order, that Your Honor had noted it may be

13   appropriate to focus the discovery by identifying lists

14   of particular customers.  And after that comment

15   plaintiffs agreed to revise their draft order.

16           The revised order did not have a specific list

17   or refer to a specific list of customers, except as

18   included but not limited to.  And so, in substance, it

19   was the same as the prior order.

20           We also suggested to Mr. Williams that, even if

21   we had a disagreement on some fundamental issues, it may

22   be appropriate to keep trying to meet and confer about

23   the remaining issues while we were working towards a

24   hearing with Your Honor to discuss the more fundamental

25   disagreement.

1          Mr. Williams declined to proceed with any

2     further meet and confer on any other issues and insisted

3     that we call Your Honor Friday afternoon and get on the

4     phone with you that day, if possible.

5          So I disagree with the characterization that we

6     have offered (inaudible due to coughing).  But I think

7     it's more productive to focus on the terms of the order

8     that should be entered here.

9          Our focus was on two primary goals here:  We

10    wanted clarity about the files we need to search and the

11    documents we need to search for, first of all.  And we

12    want a scope that, as much as possible, allows us to

13    complete this production by the existing discovery

14    cutoff.

15         Now, on the first issue of certainty, there are

16    a handful of kind of definitional issues where we have a

17    disagreement with plaintiffs' counsel.  Let me run

18    through some of the items that Mr. Williams has noted.

19         First of all, we did think that Your Honor's

20    suggestion at the hearing of identifying a specific list

21    of customers was a useful one.  We spent a fair amount

22    of time searching around on our own trying to come up

23    with an alternative specific list so we would know

24    exactly which customers we need to search for.

25         We concluded that any list we proposed would

1   likely be questioned on the grounds that we had sort of

2   cherry-picked the customers we wanted to be the subject

3   of discovery.

4         That was the genesis of the idea of giving the

5   plaintiffs some number of customers they can identify

6   for further discovery.

7         Now Mr. Williams notes that the one exhibit

8   they have shown Your Honor, Exhibit 42, has 65 customers

9   on it.  We suggested 50.

10        I think at this point in the case, given the

11   enormous discovery that has taken place, I don't think

12   it's unreasonable for the Court to ask the plaintiffs to

13   focus their remaining discovery efforts on some number

14   of customers that are most important to them.

15        This is not the beginning of discovery.  They

16   are not operating in a complete vacuum.  They know a lot

17   about these customers.

18        So we didn't think it's necessary to provide

19   all documents regarding every single escalated customer,

20   every single customer who has escalated over the entire

21   one year or nine-month period, whatever period one

22   chooses.

23        We think it's appropriate to have them focus on

24   the ones that matter the most, and we would propose that

25   they choose those people.

1          Now, if 50 is not the right number, that's

2     fine.  Another number might be appropriate.  We just

3     want a specific list of names so that we have a means of

4     conducting an electronic search that can reasonably get

5     done within the time left in the discovery period.  If

6     50 is not the right number, then maybe another number is

7     appropriate.  We want a specific list so that there is

8     certainty about what we need to do and so that we can

9     have a scope that we can get done in the time allowed.

10          Same issue on the files to be searched issue:

11    We did not understand Your Honor at the hearing to have

12    ruled one way or the other whether responsive documents

13    should come from the files of the 210 people whose files

14    have already been searched, or alternatively from the

15    entire company.

16          We don't think an all-company search is

17    reasonable at this stage of the litigation.  We think

18    that the 210 individuals who are already within the

19    scope of the discovery plan are a perfectly good set of

20    senior people at Oracle who are likely to have the truly

21    relevant information that bears on what the company and

22    its senior executives knew.

23          Now, we are more than happy to consider adding

24    specific names to that list if there is reason to do

25    that, if there are people who are highly likely to have

1    information, but we want a specific list of people.

2           And when I tried to meet and confer on this

3    issue with plaintiffs, plaintiffs' counsel consistently

4    took the position that we needed to be obligated to

5    produce any escalation-related document from anywhere in

6    the company no matter whose file it resides in, and we

7    just think that is too broad, it's not certain enough,

8    it doesn't give enough certainty, and there is no way we

9    can search the entire company for documents pertaining

10   to every single escalated customer and still meet the

11   existing discovery cutoff.

12          I do want to address the repeated references to

13   an ECMS database.  Plaintiffs took the deposition

14   Tuesday of Kirsten Shaw.  Kirsten Shaw was the

15   gatekeeper for all customer escalations that took place

16   within the development organization at Oracle, and any

17   escalated customer issues that got to any senior

18   managers went through Ms. Shaw.

19          So plaintiffs got a lot of information from her

20   about how these systems worked, including the fact that

21   the ECMS is not a database.  It is a report that was

22   done on the PC of a single Oracle employee.  As best we

23   can tell, the information that populated that report

24   came from a technical assistant's report database that

25   was managed by the support organization headed up by

1    Mr. Rocha, who is within the discovery plan.

2           That technical assistance report database has

3    already been searched.  It can be searched again.  But,

4    again, we want certainty and clarity about what we need

5    to search it for, and we think customer names is a very

6    good place to focus the discovery.

7           On the escalation report issue and the question

8    of whether plaintiffs can reasonably be expected to

9    identify the customers that report to them, I just want

10   to stress:  At the hearing when this issue was

11   discussed, the plaintiffs suggested that they only had

12   five or six escalation reports, which I took to mean

13   lists of escalated customers.  And this is the last

14   definitional issue we are struggling with.

15          Because they said at the hearing they only had

16   five or six escalation reports, I took them to be

17   referring to lists of escalated customers.  But their

18   position now is that "escalation report" means any

19   document pertaining to any escalated customer.

20          I think that's too broad and (inaudible due to

21   coughing) limited to escalated customers.  They already

22   have quite a few of them.  They have, I believe,

23   approximately 28 such reports identifying 248 escalated

24   customers.

25          I do want to address the ambiguity that

1    Mr. Williams alluded to.  We have said several times

2    that we did not believe escalation reports were within

3    the scope of the discovery plan.

4         I believe Your Honor has disagreed with us on

5    that, and has ordered that we should be required to

6    produce escalation reports.  I took that to mean lists

7    of escalated customers.

8         So, although we have, in fact, produced a

9    number of lists of escalated customers, I don't believe

10   we have produced every list of escalated customers out

11   of the files of the 210 custodians.  So I'm not

12   proposing that, by limiting it to the 210 individuals,

13   there would be no further production.  I think there

14   would be.

15        The same is true as to documents discussing the

16   escalation status of each of those customers.  We did

17   not understand those to be within the scope of the

18   discovery plan.  I think Your Honor has disagreed with

19   us, as least to some extent on that.

20        So I think that the 210 discovery plan

21   custodians, which includes the originally named

22   custodians, all of the deposition witnesses in this

23   case, as well as the additional 14 that the plaintiffs

24   have identified, is a very good group.  It's a big

25   group, a lot of people, a lot of documents.  And,

1    frankly, it is all of the senior executives at Oracle

2    during a time frame, including Ms. Shaw who was just

3    deposed the other day, who was the gatekeeper within the

4    development organization where the most difficult and

5    most important customer escalations went.

6            So we think our order is -- it certainly was

7    proposed in good faith.  We think it's a reasonable

8    scope.  If the number 50 is not the right number, we

9    certainly would understand a larger number, but we think

10   it's reasonable for the plaintiffs to focus on the ones

11   that really matter to them now.

12           JUDGE INFANTE:  Okay, Mr. Gibbs.  I do agree

13   with you that a number of customers should be

14   identified.  That was my thinking at the hearing.  I

15   steered both of you toward that concept.

16           And I do agree that not the entire company

17   should be searched, but we should be a little bit more

18   focused with the scope of the search.

19           So those concepts are agreeable to me.

20           I will tell the plaintiffs that I believe a

21   fair number of customers would be 80 customers.  I

22   believe there are about 248 escalated customers, and I

23   think 80 would give you a fair representation for you to

24   be able to present a picture of what we call upper level

25   information, as opposed to ground level information, as

1    to each and every complaint of every customer.

2              This is not a case involving customer lawsuits.

3    This is a case of alleged securities fraud in which you

4    allege forecasts were known by senior management well

5    before the end of the class period to be problematic,

6    somewhat caused by the Suite 11i product.

7              Keeping all of that in mind and weighing

8    relevancy with burden, I believe you should identify the

9    customers.  I believe the files to be searched should be

10   the files Mr. Gibbs has described in his proposed order,

11   line 18 through line 23.

12             But I would be willing to increase that for a

13   few other individuals as a cross-check.  For example,

14   the escalation managers that you identify in Exhibit D

15   to your September 14th submission.

16             So, with that in mind, I will give the

17   plaintiffs an opportunity to respond.

18             MR. WILLIAMS:  Thank you, Your Honor.  I want

19   to address a couple of things.

20             First, the number 210 that Mr. Gibbs repeatedly

21   mentions to the Court:  I should say that at least 50 of

22   those, Your Honor, are our confidential witnesses.

23             And you may recall that, when we were before

24   you a couple months ago on our preservation motion, one

25   of issues was that, whenever we took those depositions,

1   we got letters from the defendant's saying there were no

2   responsive documents in their files.

3          And so that was what I was referring to when

4   Mr. Gibbs is going to go back and look at the very same

5   files that they have already told us that there was

6   nothing responsive in.

7          So that number is not 210.  It's much lower

8   than that, especially when you take into account at

9   least 12 witnesses relating to the accounting issues.

10  So that's not entirely an accurate picture of what the

11  search could or would be.

12         JUDGE INFANTE:  I know what the search is going

13  to be.  It's going to be what the discovery order

14  provides, plus the 14 people you identified.  So let's

15  stop arguing about needless tangents here.

16         MR. WILLIAMS:  Okay.

17         With respect to 80 customers, Your Honor, we

18  think that that's fair.  We would like from the

19  defendants a complete list of the other side, the CRM

20  customers that were, in fact, escalated during the

21  relevant period, so that we can choose a selection from

22  those customers.

23         We do have some from the ERP, which is what we

24  have presented to Your Honor.  We don't have the ones

25  from CRM.  We would like to get those.

1          And with respect to the cross-check Your Honor

2     mentioned, I identified a couple of people for

3     Mr. Gibbs.  I think I can identify at least three or

4     four more, specifically, Steve Cox, who I think was an

5     escalation manager in CRM.  And I think I can get him a

6     couple to three or four more names by the end of the

7     day.  And I would like to be able to do that.

8          JUDGE INFANTE:  I would allow you to submit six

9     names of individuals, up to six names of individuals,

10    that are in the escalation management or escalation

11    employees.  You have already identified three in your

12    letter, and one just now.  I'll allow you to identify up

13    to six more people who worked in the escalation

14    projects.

15         And we will leave it at that.  That's simply a

16    cross-check on the discovery plan scope of search.

17         MR. WILLIAMS:  Thank you, Your Honor.

18         Just so that we don't get into a dispute with

19    the other side about cross-check, those files will be

20    searched?

21         JUDGE INFANTE:  That's what I'm saying.

22         MR. WILLIAMS:  Thank you.

23         JUDGE INFANTE:  And 80 customers.

24         Now, what about the CRM list of customers,

25    Mr. Gibbs?

1              MR. GIBBS:  Your Honor, I'm not sure what

2    Mr. Williams is talking about on the CRM side.

3              It's true that Exhibit 42, the list of 65 hot

4    escalated customers for one division, discusses ERP

5    customers, but the plaintiffs do have a number of lists

6    of escalated customers that include CRM customers.

7              Indeed, they have at least one document I'm

8    looking at right now.  It's a November 7, 2000,

9    document.  It's an E-mail.  The "re" line is "CRMS dot

10   customer escalations."  And it includes only CRM

11   customers.

12             A number of the other escalated customer lists

13   we have given them are not limited to ERP.  They include

14   CRM.

15             And as part of what we had proposed, if there

16   are any additional lists of escalated customers on

17   either side within the files of these 210 folks, we

18   would produce those, too.  So we will produced what we

19   have out of this set.

20             I think they already have a number of lists

21   that include escalated CRM customers as well as ERP

22   customers.

23             JUDGE INFANTE:  I take, from reviewing the

24   documents that were sent to me, I believe that

25   plaintiffs have sufficient lists now to select 80

1    customers.

2              So you may select 80 customers.

3              Of course, you are going to have to produce --

4    you may receive more lists in this production.  You may

5    receive more lists, but we are not going to exceed 80

6    customers.

7              If you wish to select 75 customers or 70

8    customers or 65 customers, I don't care.  You are not

9    going to get more than 80.

10             If you wish to reserve until you receive

11   further lists and then identify an additional number of

12   customers, you may.  But the ceiling is  80.  Do you

13   understand that?

14             MR. WILLIAMS:  Understood, Your Honor.

15             JUDGE INFANTE:  So, if you want to have an

16   initial identification, you may do so.  But 80 customers

17   is the ceiling.  That should give you sufficient

18   information with respect to the allegations in your

19   complaint.

20             Essentially, I would take Mr. Gibbs' order that

21   was submitted as an exhibit to the September 18th

22   letter, and I would rework that order to identify 80

23   customers.  I would rework the order with respect to the

24   scope of search.

25             And I would give plaintiffs' one day to

1    identify, for purposes of scope of search, any

2    escalation employees whose files you wish searched, up

3    to six.

4            Can you do that within a day.

5            MR. GIBBS:  I think we can, Your Honor.  By

6    tomorrow even, yes.

7            JUDGE INFANTE:  Right.  Again, this is not a

8    company-wide search.  We have weighed burden.

9            So you have identified three, possibly four,

10   escalation employees whose files may be likely to

11   contain documents that are relevant.

12           And with respect to customers, how soon will

13   you serve Latham & Watkins the list of customers that

14   this discovery many relate to?

15           MR. GIBBS:  I think we can do that by Monday.

16           JUDGE INFANTE:  Okay.  That will be Monday

17   September 18.

18           MR. GIBBS:  Right -- No.  Today is the 21st.

19           JUDGE INFANTE:  I mean Monday the --

20           MR. GIBBS:  -- 25th.

21           JUDGE INFANTE:  -- 25th.  Okay.

22           MR. WILLIAMS:  Just one further comment, Your

23   Honor:

24           I think that in Mr. Gibbs letter he referenced

25   the concessions and settlements being limited to the

1  customers that were going to -- to the escalated

2  customers, and it certainly should be limited to the

3  escalated customers.

4        If there are others that relate to Suite 11i

5  problems, I don't know if the Court really spoke

6  directly on that issue, and I don't want it to be one

7  that we actually have a dispute about later.

8        JUDGE INFANTE:  No, I'm just -- the settlements

9  and concessions will relate to the customers that you

10 identified.  Period.

11       If you choose to identify customers -- for

12 example, regarding those seven or eight settlements that

13 you contend were over $500,000, which is no longer a

14 benchmark of relevancy, you may do so --

15       MR. WILLIAMS.  Okay.

16       JUDGE INFANTE:  -- or you may not.  That's up

17 to you.

18       MR. WILLIAMS:  Okay.  Thank you very much.

19       JUDGE INFANTE:  Any questions, Mr. Gibbs,

20 regarding my order?

21       MR. GIBBS:  No, Your Honor.  We think it's very

22 clear, and we appreciate it.

23       JUDGE INFANTE:  Now I would like you to draft

24 an order and submit it to me, if you can, by the end the

25 day, that is consistent with what we have just decided.

1          MR. GIBBS:  We will do that, Your Honor.  Would

2    you like us to show it to plaintiffs' counsel first?

3          JUDGE INFANTE:  Yes.

4          MR. GIBBS:  We will do so.

5          JUDGE INFANTE:  Okay.  I think this matter is

6    resolved.

7          MR. WILLIAMS:  Thank you very much, Your Honor.

8          MR. GIBBS:  Thank you very much, Your Honor.

9          JUDGE INFANTE:  Okay.  Good day.

10          (The proceedings concluded at 9:15 a.m.)

11                      ---oOo---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## REPORTER'S CERTIFICATE

I, SHEILA CHASE, the undersigned, do hereby certify that the foregoing proceeding was taken by telephone conference call at the time therein stated and was thereafter transcribed into typewriting.

I further certify that I am not of counsel nor attorney for either or any of the parties in the foregoing caption named, or in any way interested in the outcome of the cause named in said caption.

Dated: 9-28-06

SHEILA CHASE, CSR, RPR
CSR No. 4934

27