Edward W. Swanson SBN 159859
Alexis Haller SBN 201210
SWANSON, McNAMARA & HALLER LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Third-Party Witness Matthew Symonds

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ <br><br> <u>CLASS ACTION</u> <br><br> **THIRD-PARTY WITNESS MATTHEW SYMONDS' REPLY TO PLAINTIFFS' RESPONSE TO REQUEST FOR PROTECTIVE SEAL** |
| This Document Relates To: <br> ALL ACTIONS. | Date:     October 26, 2007 <br><br> Time:    11:30 a.m. <br><br> Court:   The Honorable Martin J. Jenkins |

## I. INTRODUCTION

Mr. Symonds has designated a limited number of documents to be maintained under seal. Given the harm that disclosure of the documents could cause Mr. Symonds, a non-party and a British subject, this Court should order that the materials be kept under seal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 2007, after full briefing by the parties and by third-party witness Matthew Symonds, this Court held that Mr. Symonds was entitled to invoke the privilege against self-incrimination. *See* Order Regarding Plaintiffs' Motion to Compel Testimony and Determine the Applicability of the Fifth Amendment Right Against Self-Incrimination to Foreign Citizen and Non-U.S. Resident Matthew Symonds, Docket No. 843 ("Fifth Amendment Order"). The Court further found that Plaintiffs' allegations "place Symonds' conduct squarely within the ambit of [28 U.S.C.] Section 1512(c)," and that Mr. Symonds faces the "possibility of prosecution[.]" *Id.* at 19. The Court held that many of Plaintiffs' questions at Mr. Symonds' deposition directly implicated the Fifth Amendment privilege (*id.* at 22-23), and ordered an "*in camera* proceeding" to allow Mr. Symonds to substantiate his claim of privilege as to the remainder of Plaintiffs' questions. *Id.* at 23.

On August 2, 2007, the Court held a status conference "re: proposed procedure for in camera hearing." Docket No. 953. With the agreement of the parties, the Court ordered that the scope of the Fifth Amendment privilege be briefed in writing. *Id.*

Mr. Symonds submitted his brief regarding the scope of the Fifth Amendment privilege on August 10, 2007. Docket No. 971. The brief filed publicly was redacted. *Id.*

On August 17, 2007, Plaintiffs filed their response to Mr. Symonds' brief. Docket No. 974. Although Plaintiffs quoted a redacted portion of Mr. Symonds' brief, Plaintiffs did not redact any portion of their response. *Id.* In their brief, Plaintiffs essentially conceded that the Fifth Amendment privilege would apply to all questions posed during Mr. Symonds' deposition. *Id.*

On October 2, 2007, this Court held a hearing regarding the process for handling sealed documents. The Court ordered that an OSC be filed and served by October 9, 2007, with a response due by October 19, 2007, and a reply due by October 23, 2007. Docket No. 1172. Contrary to Plaintiffs' contention, the Court did not order parties and/or non-parties to file briefs in support of any sealing designations by October 9,

1  2007. *Id.*

2  On October 9, 2007, the parties and Mr. Symonds filed the OSC. Docket No. 1242. The filing contained the documents, or portions of documents, that Mr. Symonds contended should remain under seal. *Id.*, Exhibit A ("Symonds' Designation of Materials").

On October 19, 2007, Plaintiffs filed a response to the OSC, arguing that the documents designated by Mr. Symonds should not remain under seal. Plaintiffs' Response to Non-Parties Matthew Symonds Et Al.'s Requests for Protective Seal ("Pltfs' Sealing Response"), Docket No. 1384. Notably, the media did not file any opposition to Mr. Symonds' designation of documents to remain under seal.

### III.   ARGUMENT

#### A.   Legal Standard

A "court has supervisory power over its own records, and the decision to seal a file is within the court's discretion." *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, — F.R.D. —, 2007 WL 2914517, at *4 (D. Minn. 2007);[1] *see also, e.g., Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (reviewing decision regarding sealing of documents under abuse of discretion standard). As a general rule, if the document is not attached to a dispositive motion, a party seeking to preserve its confidentiality must merely show "good cause" under Rule 26(c). *Id.* at 1179. The "public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1180.

With regard to documents attached to dispositive motions, a party seeking to seal a judicial record generally bears the burden of overcoming a strong presumption of public access by meeting the "compelling reasons" standard. *Kamakana*, 447 F.3d at 1178. The "party must articulate[ ] compelling reasons supported by specific factual findings, that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178-79. The "mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, *without more*, compel the court to seal its records." *Id.* at 1179.

---

[1] Emphasis is added, and citations and internal quotations are omitted, throughout this brief, except as otherwise indicated.

Symonds' Reply re: Request to Seal, No. C-01-0988-MJJ      2

The higher "compelling reasons" standard does not automatically apply whenever a document is attached to a dispositive motion. What "makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *McConnell v. Federal Election Comm'n*, 251 F. Supp. 2d 919, 932 (D.D.C. 2003). The "presumption [of public access] is strong where a judicial document directly affects an adjudication, but where a document only plays a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts only to a little more than a prediction of public access absent a countervailing reason." *United States v. Snyder*, 187 F. Supp. 2d 52, 63 (N.D.N.Y. 2002); *see also United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (same).[2]

Two other legal principles are relevant here. First, in *Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522 (1987), the Supreme Court made it clear that foreign litigants are entitled to special protections from U.S. courts:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. . . . American courts should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations[.]

*Id.* at 546.

Second, non-parties typically receive greater protections from burdens imposed by compelled disclosure of confidential information. *See United States v. Criden,* 681 F.2d 919, 921 (3d Cir.1982) (recognizing an exception to the presumption of access where confidential material is determined to be injurious to third parties); *Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("[t]here appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents."); *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) ("When the sensitive information pertains to non-parties who are not public figures, the balancing of interests in favor of protecting the privacy of the

---

[2] The *Kamakana* court found that documents attached to a dispositive motion are subject to the compelling reasons standard because they are "directly relevant to the merits of the case." *Kamakana*, 447 F.3d at 1180. However, the Ninth Circuit has not addressed what standard applies where – as here – the party filing a dispositive motion attaches documents that are wholly unrelated to the merits of the underlying action.

non-parties and against uninhibited access to the records is strengthened."); *Light Sources, Inc. v. Cosmedico Light, Inc*. 360 F. Supp. 2d 432, 441 (D. Conn. 2005) (maintaining under seal "confidential material related to third parties" that was attached to summary judgment motion).

### B. Mr. Symonds' Fifth Amendment Brief, and the Portion of Plaintiffs' Response Brief that Quotes Mr. Symonds' Brief, Should Remain Under Seal

Because an *in camera* procedure was appropriate under Ninth Circuit law and because Mr. Symonds' Fifth Amendment brief could be used to embarrass him or harm his reputation, the portions of the Fifth Amendment briefing that analyze specific questions asked of Mr. Symonds by Plaintiffs' counsel should remain under seal.

As an initial matter, the Fifth Amendment briefing was non-dispositive. The briefing, which addressed questions at a deposition in March 2007 regarding the alleged destruction of evidence in early 2007 (*see* Docket Nos. 971, 974), was wholly unrelated to the underlying causes of action, which concern Mr. Ellison's stock sale in 2001. As such, Mr. Symonds need only show "good cause" for keeping the briefing under seal.

There is ample "good cause" here. As set forth above, the Court – in its Fifth Amendment Order and in the status conference on August 2, 2007 – specifically envisioned an *in camera* proceeding with regard to the applicability of the Fifth Amendment privilege to the specific questions asked by Plaintiffs' counsel during Mr. Symonds' deposition. *See* Fifth Amendment Order at 23:10-15, 25:3; *see also* Docket No. 953. Such an *in camera* proceeding is appropriate under Ninth Circuit law. *See*, *e.g.*, *United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996). It also affords individuals the opportunity to argue freely regarding the applicability of the privilege against self-incrimination, without waiver or concern that such arguments will subsequently become a matter of public record. With regard to issues of privilege, the Court benefits from the frank dialogue that *in camera* proceedings produce. Indeed, the Court benefitted in this case – following Mr. Symonds' *in camera* submission, Plaintiffs essentially acknowledged that the Fifth Amendment applied to all questions asked at Mr. Symonds' deposition, thereby alleviating the need for the Court's resolution of the legal issues presented. Because of the *in camera* nature of the proceeding, the Court should maintain the documents under seal. *See*, *e.g.*, *Team Obsolete Ltd. v. A.H.R.M.A. Ltd*., 464 F. Supp. 2d 164, 165-66 (E.D.N.Y. 2006) (upholding the sealing of materials submitted for *in camera* review with regard to privilege

1   issue).

2       Mr. Symonds meets the good cause standard for other reasons as well. A witness in Mr. Symonds'
3   position is forced to assert the Fifth Amendment privilege to all questions, even questions where the answer
4   would be exonerating and unhelpful to the other side, because answering a specific question risks waiver
5   of the privilege as to the same subject matter. *See*, *e.g.*, *Rogers v. United States,* 340 U.S. 367, 372-74
6   (1951). To a layperson, however, the invocation of the Fifth Amendment privilege to a specific question
7   often means that the answer must be incriminating. *See*, *e.g.*, *Ullmann v. United States*, 350 U.S. 422, 426
8   (1956) ("Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers.
9   They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming
10  the privilege.").[3] That is why a person's invocation of the Fifth Amendment privilege is inadmissible in
11  criminal proceedings. *See* Instruction 3.04 of the Manual of Model Criminal Jury Instructions for the Ninth
12  Circuit.

13      Given the well-recognized view of "[t]oo many" who readily assume guilt when an individual
14  invokes the Fifth Amendment privilege, the unsealing of Fifth Amendment briefing is likely to cause Mr.
15  Symonds humiliation and harm to his reputation. Those reviewing the brief, and the questions discussed
16  therein, are likely to jump to the conclusion that Mr. Symonds' responses would all be incriminating.
17  Because there exists a real possibility of prosecution, Mr. Symonds would be powerless to defend himself.
18  This is precisely the type of "good cause" that justifies sealing under Rule 26(c), particularly in light of Mr.
19  Symonds' status as a foreign non-party.

20      **C.    The Financial Terms Set Forth in the *Softwar* Contract Should Remain Under Seal**

21      Plaintiffs oppose Mr. Symonds' request to have the confidential financial terms of the *Softwar*
22  contract, and negotiations regarding those financial terms, kept under seal. Mr. Symonds' request to
23  maintain personal financial information under seal should be granted.

24      As an initial matter, Mr. Symonds has no objection to the disclosure of the non-financial terms of
25  the agreement, a position he has made clear by designating only the small portions of the orders that discuss

---

27      [3] Indeed, that is apparently Plaintiffs' view as well. *See* Plaintiffs' Response to Third-Party Matthew
    Symonds' Memorandum of Points and Authorities Regarding Applicability of the Fifth Amendment
28  Privilege to Questions Identified by the Court, Docket No. 974, at 1:13-26.

the financial aspects of the *Softwar* agreement, and allowing other portions of the *Softwar* agreement to become public. *See* Symonds' Designation of Materials at 1, 4, and 7; *see also* Pltfs' Sealing Response at 6. The only issue is whether the financial terms of the agreement, and negotiations regarding those terms, should be disclosed to the public.

Plaintiffs' argument that the financial information is subject to a "compelling reasons" standard should be rejected. The financial information is wholly irrelevant to Plaintiffs' claims and motions. Although Plaintiffs chose to attach the entire *Softwar* agreement to their summary judgment motion against Ellison and to their request for sanctions, Plaintiffs nowhere relied on the agreement's financial provisions in their briefing. While documents that are relied upon by a court in summary adjudication are properly subject to the compelling reasons standard (*Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 159 (S.D.N.Y. 2003)), extraneous material attached to a dispositive motion – and not even relied upon by the party in arguing for summary adjudication – should be subject to the good cause standard under Rule 26(c). *See McConnell v. Federal Election Comm'n*, 251 F. Supp. 2d 919, 932 (D.D.C. 2003) ("[W]hat makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process."); *United States v. Snyder*, 187 F. Supp. 2d 52, 62-63 (N.D.N.Y. 2002) ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. [T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). Because Plaintiffs do not argue that the financial provisions of the contract are relevant to their claims or motions, the Court should apply the good cause standard. And personal financial information of a third party easily meets Rule 26(c)'s good cause standard. *See*, *e.g.*, *135 Randomly Selected Class Claimants v. Denman Inv. Corp., Inc.*, No. 05-cv-00702-MSK-MEH, 2007 WL 1725582, at *1 (D. Colo. June 13, 2007) (finding good cause for protective order covering financial information).

Moreover, contrary to Plaintiffs' claims, such personal financial information meets even the compelling reasons standard. *See*, *e.g.*, *In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003) ("Personal financial information, such as one's income . . . , is universally presumed to be private, not public. The magistrate judge sensibly concluded that [the defendant's] strong interest in the privacy of his and his family's personal financial information outweighs any common law presumption in these

circumstances."); *Doran v. Cameron Park Inn*, No. Civ.S 02 0267 GEB PA, 2003 WL 24205918, at *1 (E.D. Cal. Aug. 25, 2003) ("Defendants correctly assume that personal financial information, such as an individual's income . . ., is presumed at common law to be private."); *U.S. ex rel. Permison v. Superlative Technologies, Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007) (stating that "personal privacy interests" can outweigh the public's right to access); *SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (stating a court can properly keep under seal portions of documents whose disclosure would "invad[e] personal privacy gratuitously").[4] As a result, even when the information is introduced at trial, a court is well within its discretion to redact a contractual provision that reveals financial information about a non-party. *See Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.*, 340 F. Supp. 2d 1118, 1124 (D. Or. 2003) (redacting price paid under a contract that was at issue at trial to "protect the interests of [a] non-party"); *cf. McConnell*, 251 F. Supp. 2d at 932 (D.D.C. 2003) ("litigants to this proceeding have a lesser claim to privacy than third parties").

Given that disclosure of the financial terms of the agreement would invade a non-party's privacy interests – and would release information that is of no relevance in the underlying civil action – the Court should order that the financial portion of the *Softwar* contract, and the negotiations related to that portion of the contract, remain under seal.

**D.    The Alleged Letter from Matthew Symonds to Patrick Gibbs Should be Kept Under Seal**

The alleged letter from Mr. Symonds to Patrick Gibbs ("Symonds-Gibbs Letter"), counsel for Oracle, should be maintained under seal.

The Symonds-Gibbs letter is not attached to Plaintiffs' motion for summary judgment, and Plaintiffs

---

[4] Plaintiffs cite *Kamakana*, 447 F.3d at 1184, and *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003), for the proposition that the financial information at issue here is "not the type of 'sensitive' financial information that courts have found satisfy the compelling reasons standard." Pltfs' Sealing Response at 6. However, neither *Kamakana* nor *Foltz* purport to set any limit on the type of financial information entitled to protection. *Kamakana*, 447 F.3d at 1184; *Foltz*, 331 F.3d at 1137. Because the cases do not address the release of the type of non-party personal financial information at issue here, they are inapposite to the issue before the Court.

Symonds' Reply re: Request to Seal, No. C-01-0988-MJJ        7

nowhere rely on the letter in that brief.[5] The letter is attached only as an Exhibit 206 to Plaintiffs' motion for sanctions, and is referred to only a single time in Plaintiffs' brief. *See* Plaintiffs' Supplemental Submission Regarding Defendants' Destruction of Evidence and Request for Sanctions and Objections to Special Master's July 17, 2006 Order ("Pltfs' Mtn. for Sanctions"), Docket No. 1176, at 32:7-10. Nevertheless, Plaintiffs argue that the motion for sanctions is a "dispositive" motion, and that the Court should apply the higher "compelling reasons" standard with regard to the Symonds-Gibbs letter.

The Court should decline Plaintiffs' request to apply the higher standard. As Defendants have shown, Plaintiffs' attempt to seek terminating sanctions against Defendants based upon the alleged acts of a third party is farfetched indeed. *See* Defendants' Opposition to Plaintiffs' Submission Regarding Spoliation Issues, Docket No. 1381, at 9-14, 31-37. Plaintiffs cite no authority for the proposition that terminating sanctions are appropriate under the circumstances, and do not come close to meeting any of the requirements set forth for terminating sanctions under the law. *Id.* Plaintiffs' characterization of the motion for sanction as "dispositive" does not make it so. Given the lack of support for the relief sought, Plaintiffs' attempt to invoke the higher standard should be denied.

In any event, the sealing of the Symonds-Gibbs letter meets both the good cause and compelling reasons standards. This Court has already held that Symonds faces a possibility of prosecution under 18 U.S.C. section 1512(c), a statutory provision that carries a maximum term of 20 years in prison. Fifth Amendment Order at 18-19. The letter could be used to incriminate Mr. Symonds, and the danger of incrimination is an undue burden under Rule 26(c). *See*, *e.g.*, *In re Roman Catholic Archbishop of Portland in Oregon*, 335 B.R. 815, 835 (Bkrtcy. D. Or. 2005) (stating that discovery that could result in the deponent being "arrested" imposed an "undue burden").[6] Moreover, while the Ninth Circuit has stated in *dictum* that

---

[5] The summary judgment motion attaches an order that refers to the Symonds-Gibbs letter, but not the letter itself. *See* Symonds' Designation of Materials at 5.

[6] Plaintiffs rely upon two cases – *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993) and *Cipollone v. Liggett Group, Inc.*, 106 F.R.D. 573, 576-77 (D.N.J. 1985) – for the proposition that the potential of incrimination is not sufficient to meet the good cause standard. Both cases, however, involved *corporations* that were parties to the lawsuits. *See Culinary Foods*, 151 F.R.D. at 301 ("Although the information regarding the hazards of products and the *corporation's* knowledge of the information may be embarrassing and incriminating, this alone is insufficient to bar public disclosure."); *Cipollone*, 106 F.R.D. at 576-77 (finding that the fact that disclosures regarding tobacco company might "prove

1  incrimination, *without more*, is insufficient to meet the compelling reasons standard, there is a great deal
2  "more" here.  Mr. Symonds is a non-party and, as such, is entitled to greater protection.  He is also a British
3  subject, and the Court must exercise "special vigilance" to protect him from unduly burdensome
4  consequences of U.S. legal proceedings.  *Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 546.  The
5  letter is not relied upon by Plaintiffs in arguing for summary judgment, and is cited only in passing in a fairly
6  implausible – and unsupported – motion for terminating sanctions.  Under the circumstances of this case,
7  an order continuing the sealing of the document is appropriate.[7]

        **E.**    **The Symonds Deposition Transcript Should be Kept Under Seal**

9  Because its release would cause embarrassment and harm to Mr. Symonds' reputation, the transcript
10 of Mr. Symonds' deposition should be maintained under seal.

11 As with the Symonds-Gibbs letter discussed above, the transcript of Mr. Symonds' deposition is not
12 attached to Plaintiffs' motion for summary judgment.  It is, instead, only attached to Plaintiffs' motion for
13 sanctions, and only cited a single time therein.  Pltfs' Mtn. for Sanctions at 32 n.20.  As a result, for the
14 reasons discussed *supra*, the Court should not consider Plaintiffs' motion for sanctions as "dispositive."

15 Under either the good cause or the compelling reasons standard, however, the Court should order
16 the deposition transcript to be maintained under seal.  Rule 26(c) specifically permits protective orders where
17 the information could result in "embarrassment" or "undue burden."  As stated above, "too many" people
18 view the invocation of the Fifth Amendment privilege as an admission of guilt; given the questions asked

---

embarrassing and incriminating" was not sufficient to maintain confidentiality, where "[i]t would be difficult to envision a case involving a greater or more widespread interest" given that the use of tobacco "affects hundreds of millions of people throughout the world.").  Because an individual is entitled to greater protections than a corporation with regard to the confidentiality of documents (*Doran*, 2003 WL 24205918, at *1), the cases relied upon by Plaintiffs do not apply.

[7] Plaintiffs argue that the Symonds-Gibbs letter should not be kept under seal because it was never "designated confidential by Symonds."  Pltfs' Sealing Response at 4.  However, as Plaintiffs acknowledge, the document was marked confidential by Defendants pursuant to the Revised Stipulated Protective Order Governing Confidentiality, and it has, to date, only been filed under seal – including by Plaintiffs themselves in connection with the motion to compel.  *See* Exhibit F to the Declaration of Mark Solomon, Docket No. 753.  As soon as it became known to Mr. Symonds that the document might be unsealed, Mr. Symonds designated the document to be maintained under seal.  Symonds' Designation of Materials at 1-3, 5 and 8. Accordingly, any argument that Mr. Symonds somehow waived confidentiality as to the document is meritless.

by Plaintiffs, and Mr. Symonds' invocation of the Fifth Amendment, releasing the deposition transcript would result in embarrassment and harm to Mr. Symonds' reputation.

The same holds true under the compelling reasons standard. Although Plaintiffs cite the Ninth Circuit's *dictum* that embarrassment "without more" does not rise to the level of a compelling reason, there is, as argued above, much "more" here – Mr. Symonds status as a non-party and a British subject, and the tangential relation of his assertion of the Fifth Amendment to the underlying causes of action. Accordingly, even under a higher standard, the deposition transcript should be kept under seal.

### F. The Portion of the Ellison Transcript Designated by Mr. Symonds Should be Kept Under Seal

Because of the danger of incrimination, the portions of Mr. Ellison's deposition transcript designated by Mr. Symonds should be kept under seal.

Unlike the Symonds deposition transcript, the transcript of Mr. Ellison's March 30, 2007 deposition is attached to dispositive motion papers. As a result, the higher "compelling reasons" standard applies.

Once again, that standard is met here. Mr. Ellison's testimony, like the Symonds-Gibbs letter, could be used to incriminate Mr. Symonds. While incrimination "without more" is not enough, the additional factors listed above – the facts that Mr. Symonds is a foreigner and a non-party – warrant maintaining the portions of Mr. Ellison's deposition transcript relating to Mr. Symonds under seal.

## IV. CONCLUSION

Based upon the foregoing, Mr. Symonds respectfully requests that the Court order that the materials designated by Mr. Symonds be maintained under seal.

Dated: October 23, 2007                                        Respectfully submitted,

                                                                /s/ Edward W. Swanson
                                                                EDWARD W. SWANSON
                                                                ALEXIS HALLER
                                                                SWANSON, McNAMARA & HALLER LLP
                                                                Attorneys for MATTHEW SYMONDS