COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
STACEY M. KAPLAN (241989)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
skaplan@csgrr.com
       – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MONIQUE C. WINKLER (213031)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
moniquew@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL SUBMISSION REGARDING DEFENDANTS' DESTRUCTION OF EVIDENCE AND REQUEST FOR SANCTIONS AND OBJECTIONS TO SPECIAL MASTER'S JULY 17, 2006 ORDER DENYING PLAINTIFFS' MOTION TO COMPEL THE RESTORATION OF BACKUP TAPES AND FOR MISCELLANEOUS RELIEF FOR THE DESTRUCTION OF EVIDENCE |
| ALL ACTIONS. | |
| | DATE: November 16, 2007<br>TIME: 1:30 p.m.<br>COURTROOM: The Honorable Martin J. Jenkins |

## I. DEFENDANTS FAILED TO PRESERVE CRUCIAL EVIDENCE AND KNOWINGLY MISREPRESENTED THEIR COMPLIANCE WITH THE PSLRA PRESERVATION REQUIREMENTS

Defendants admit or fail to deny the following facts regarding their document preservation:

- Larry Ellison's files were not preserved. Opp. at 21-22.[1]

- The audio files of Symonds' interviews of Ellison for *SOFTWAR* and the vast majority of the interview transcripts including all of 2001 transcripts were not preserved/were destroyed.

- The files of Oracle's AVPs who oversaw the Company's sales force and consultants, and reported directly to the Company's senior executives were not preserved. Opp. at 19-20.

- Far less than 1% of the Company's employees were instructed to preserve documents when the case was initiated. Supp. at 9; Opp. at 3-4.

- None of Oracle's employees were informed of the duty to preserve post-Class Period evidence and defendants failed to prevent the auto-deletion of emails sent post-Class Period. Supp. at 13-15.

- The files of Oracle's organizations responsible for Suite 11i implementations and addressing customer complaints and escalations about Suite 11i were not preserved, even though these organizations could have been informed through group email addresses. Opp. at 17-19.

- Forecasting reports were not preserved which also violated the Company's document retention policies. Supp. at 18-20; Exs. 189-91, F.

- The files of employees in General Business, where the so called "cracks" in the forecast first started to appear in 3Q01, were not preserved. Supp. at 10-11; Opp. at 18-19.

- Defendants knew about plaintiffs' accounting allegations in May 2002, but took no action to preserve relevant documents until October 2002 and even in October failed to preserve the files of the majority of the individuals involved. Opp. at 5; Supp. at fn.5.

- Group e-mail boxes used by groups within Oracle to send and receive relevant information, including REVREC (revenue recognition), were not preserved. Opp. at 24.

- The Oracle Sales Online database was not preserved. Opp. at 22-23.

- In June 2002, Oracle falsely assured the Court that plaintiffs would suffer no prejudice from loss of evidence because "all defendants must preserve all documents just as if they were the subject of a continuing request for production." Supp. at 33. Defendants similarly declared they were not "deleting, destroying, or altering" evidence in opposition to plaintiffs' November 2002 *ex parte* application. *Id*. at 21.

- In March 2005, defendants knowingly misled the Court by stating that the "Speakers" received information only from direct reports. The Court ordered defendants to also produce AVP files. At no time did defendants inform the Court that they had not made any effort to determine who communicated with the "Speakers" or inform the Court of the above preservation failures, including that the files of the AVPs had not been preserved. *Id*. at 34.

---

[1] "Supp." and "Supplement" refer to plaintiffs' Supplemental Submission filed on October 5, 2007. All "Ex." references are to the Winkler Declarations filed with the Supplement. "Opp." and "Opposition" refer to Defendants' Opposition to the Supplement filed on October 19, 2007.

PLTFS' REPLY IN SUPPORT OF SUPPL SUBM RE DFNTS' DESTRUCT OF EVID AND REQ FOR
SANCT AND OBJECT TO SPECIAL MASTER'S JULY 17, 2006 ORDER - C-01-0988-MJJ     - 1 -

## II. THE EVIDENCE PRESERVATION STANDARD IS CLEAR AND DEFENDANTS' CONDUCT WARRANTS THE MOST SEVERE SANCTION

The PSLRA expressly imposed the duty on defendants to "treat all documents, data compilations (including electronically recorded or stored data) . . . that are relevant to the allegations, as if they were the subject of a continuing request for production of documents." 15 U.S.C. §78u-4(b)(3)(C)(i). Defendants were required to communicate the duty to preserve relevant evidence to *all employees* (not simply "key players") and make certain that *all sources* of potentially relevant evidence were identified and placed on hold. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432-35 (S.D.N.Y. 2004); 15 U.S.C. §78u-4(b)(3)(C)(i).

Where, as here, defendants admittedly failed to preserve (destroyed) evidence that they knew was potentially relevant to this litigation and failed to produce documents as ordered by the Court, with the culpable state of mind, dismissal is appropriate. Supp. at 2-7, *citing, e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115-16 (9th Cir. 2004). The culpable state of mind requirement is satisfied by a showing of either "willfulness, fault, or bad faith." *Leon*, 464 F.3d at 958. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'"[2] *Id*. at 959. Defendants' willfulness, fault *and* bad faith are evident here, as is the prejudice to plaintiffs ensuing from defendants' actions.[3] As set forth in the Supplement, for the same reasons, the evidentiary sanctions in plaintiffs' proposed order are also appropriate. Supp. at 7-8, *citing, e.g.*, *World Courier v. Barone*, No. C 06-3072 THE, 2007 U.S. Dist. LEXIS 31714, at *4 (N.D. Cal. Apr. 13, 2007).

---

[2] Contrary to defendants' claim, the *Leon* court was clearly discussing the degree of culpability required, not the "degree of relevance necessary to support sanctions." *Compare Leon*, 464 F. 3d at 958 and *Konrath v. Amphitheater Unified Sch. Dist. No. 10*, No. CIV 04-179-TUC-CKJ, 2007 U.S. Dist. LEXIS 72306 at *22 (D. Ariz. Sept. 26, 2007), *with* Opp. at 12.

[3] Plaintiffs are not required to prove through extrinsic evidence that the destroyed evidence would have supported plaintiffs' claims in order to establish prejudice. *Leon*, 464 F.3d at 959 (the relevance of the destroyed documents cannot be clearly ascertained because they no longer exist).

## III. DEFENDANTS CONTINUE TO STONEWALL PLAINTIFFS AND THE COURT REGARDING PRESERVATION AND DISCOVERY

Defendants have no credible opposition to plaintiffs' request for sanctions owing to blatant preservation and discovery abuses. The evidence is undeniable, indeed overwhelming. Plaintiffs' ability to try the case with all of the relevant evidence is forever compromised as intentional spoliation continued during discovery. Moreover, defendants' Opposition is wrought with continual obfuscation of both the law and the facts.[4] For example, the entire premise of defendants' opposition is that the Discovery Plan, entered four years after this litigation was filed, should dictate the preservation requirements and this Court's analysis of their compliance.[5] *See, e.g.*, Opp. at 17, 19. Defendants' version of document preservation obligations makes no sense and would eviscerate the PSLRA. And there is no authority that even closely resembles defendants' tortured logic. Defendants' other contentions are just wrong, *i.e.*, "The law is clear that Defendants had no duty to preserve multiple copies of identical documents." Opp. at 21, *citing Wachtel v. Health Net, Inc.*, No. 01-4183, 2007 U.S. Dist. LEXIS 26308 (D.N.J. Apr. 10, 2007). Nowhere does *Wachtel* excuse the preservation of documents, even if they were ultimately duplicative.[6] Opp. at 21.

Defendants' absolute failure to ever even identify the admittedly relevant Lane declaration reveals defendants' willful and indeed bad faith discovery abuses – the Lane declaration wholly supports plaintiffs' claims and specifically demonstrates that defendants had no reasonable basis for the 3Q01 earnings forecast. Ex. G (indicating softening in Oracle's license business in December

---

[4] Defendants falsely state that Segal and her team met with Cochran, Fitzpatrick, Block, Hamel and Shaw "to secure any relevant materials in their possession." Opp. at 16-17. In truth, Segal stated not once, but *twice* that she did not even know who Cochran was; she did not recall talking with or sending an email to Fitzpatrick or Block; she was not familiar with Hamel and did not communicate with him; and she did not recall Shaw. Ex. 78 at 94:1-4; 105:9-11; 155:2-16; 158:6-13; 161:9-11; 212:9-14.

[5] Defendants also mistakenly argue that whether plaintiffs *specifically* requested documents, sought to depose witnesses, or moved to compel the production of documents in discovery bears some relationship to defendants' preservation obligations. Opp. at 7-8, 17, 33.

[6] Moreover, *Wachtel* does not even stand for the proposition that during discovery, a party does not have to produce "multiple copies of identical documents." Rather, *Wachtel* addressed the defendants' compliance with a specific court order to produce "only those documents that had not already been produced pursuant to earlier discovery orders." 2007 U.S. Dist. LEXIS 26308, at *4.

2000 and that 2Q01 Covisint revenue should not have been included in assessing trends going forward). Finally, for the first time after almost three years of discovery, contrary to what the Company told its SLC, defendants now claim that the information on Ellison's website was in fact preserved, but was deemed by defendants not responsive to discovery requests. Opp. at 22; *see also* Supp. at 16.

### A. Defendants' Sanctionable Conduct Regarding *SOFTWAR* Materials

Defendants' obligation to preserve the *SOFTWAR* materials began the moment the materials were created. Supp. at 28. Even when plaintiffs filed their motion to compel production of *SOFTWAR*-related materials and despite Ellison's control over the evidence, defendants admittedly did not demand the materials from Symonds until over two months after plaintiffs' motion to compel and over one week ***after*** being ordered to produce them. *Id.* Instead, Ellison secretly encouraged the spoliation, and continued to do so through February 2007, telling Symonds that he did not want plaintiffs to have the evidence. Supp. at 32. The undisputed fact is that the overwhelming majority of *SOFTWAR* materials have been destroyed. The resultant prejudice to plaintiffs is severe – over a hundred hours of contemporaneous recordings and transcripts of Ellison discussing the events are gone. Indeed, using the scant transcripts from 2002 that were belatedly produced, plaintiffs have shown they include critical information not revealed in *SOFTWAR*. Supp. at 27-28. Defendants simply ignore this evidence. For these reasons, sanctions are not merely appropriate, but required because defendants' intentional failures and/or actions have resulted in the loss of this invaluable evidence. *Barone*, 2007 U.S. Dist. LEXIS 31714, at *2-*5. Defendants had legal control of the evidence and have not shown that their failure to produce *SOFTWAR* materials was beyond their control, rendering the cases cited by defendants inapplicable. Opp. at 34-35.[7]

---

[7] Moreover, as plaintiffs submitted in the Supplement, it is well settled law that courts may draw adverse inferences against parties in a civil litigation based on a non-party witness' invocation of the Fifth Amendment. Supp. at 7. The independent evidence demonstrates Ellison and Symonds have a close relationship and Ellison's involvement in the destruction of the *SOFTWAR* materials supporting an adverse inference against Ellison based upon Symonds' invocation of the Fifth Amendment. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1059, 1077 (N.D. Cal. 2007).

**B.     Defendants' Sanctionable Conduct Regarding Accounting Evidence**

Defendants do not deny that: (1) defendants knowingly misled the Court concerning the 2002 Clean Up which thwarted discovery of a huge cache of documents which they knew related to plaintiffs' debit memo allegations; (2) the 2002 Clean Up resulted in the alteration and deletion of important electronic evidence related to the fraudulent debit memo transactions in an effort to conceal the fraud; and (3) defendants withheld critical accounting evidence until after discovery closed preventing plaintiffs from using the evidence during depositions. Supp. at 21-27.

First, the evidence is irrefutable that the purpose of the 2002 Clean Up was to "help" Oracle address plaintiffs' lawsuit, "resolve" the fictitious debit memo transactions, and "clean up" the trail of electronic evidence that showed that Oracle illegally concealed customer overpayments and converted the money to fictitious earnings in 2Q01. Supp. at 21-23. Defendants have not even attempted to reconcile the fact that they falsely represented to the Court that there was "***no connection whatsoever***" between the 2002 Clean Up and the debit memos. Ex. 14 at 52:13-16. When the 2002 Clean Up documents were ordered produced by Judge Infante (after discovery closed), key accounting documents appeared that had the term "debit memos," including the very 12 debit memos identified in the complaint (Ex. 18), and even discussed plaintiffs' "***ex parte document***" the day after plaintiffs filed it before this Court. Ex. A, Ex. 21 at 1609365.[8]

Defendants also ignore the scores of accounting documents and incriminating emails written during the 2002 Clean Up which confirm that Oracle attempted to illegally keep customer money by

---

[8] Defendants' try to excuse their sanctionable withholding of documents by claiming that certain particularly incriminating emails "mistakenly never were loaded into our database" and minutes of board meetings during the 2002 Clean Up somehow were not located until six years after the litigation began. Given their other misrepresentations to the Court about the 2002 Clean Up documents, however, this excuse is simply not credible. The email at Ex. 54 that defendants suddenly "found" contains an admission by Oracle's "unapplied cash specialist" that Oracle was fully aware of their fraudulent transfer of customer overpayments at the end of 2Q01 to inflate their financial results via the bad debt reserve. Defendants have failed to explain how such a critical document, written only 11 days before the debit memos were created, could have been missed by Oracle's lawyers in producing documents. Further, it is not credible that something as fundamental as board minutes that ***expressly discuss plaintiffs' lawsuit*** and the 2002 Clean Up would not have been found in ***any*** of the witnesses' files who attended the meetings, including Oracle's own lawyers Segal and Cooperman, and key custodians Ellison, Henley, Minton and Catz. Supp. at 27, Ex. 60.

any means necessary, including fraud. Exs. 21-27. Oracle never addresses the string of emails (which refer to Jennifer Minton by name) where one employee suggested that Oracle might be able to hide a customer overpayment and keep the money if the purchase order "end[ed] up in a fire under mysterious circumstances." Ex. 23. Although defendants try to characterize their attempted accounting cover up as a "separate accounting issue" that they "discovered" during the debit memo investigation (Opp. at 6), the documents unequivocally confirm that during the 2002 Clean Up Oracle reversed the accounting for over $50 million in debit memo transactions (including the $20 million in customer money that was transferred to earnings in 2Q01), removed the customer money from the bad debt reserve, and refunded and escheated millions of dollars in customer money. Exs. 19, 21-27, 35-36, 39.[9] All of these accounting reversals and *post hoc* alterations of the historical audit trail of the transactions resulted in the loss of the original transactional history and data related to the debit memos. Defendants must be sanctioned for their conduct.

DATED: October 26, 2007                              Respectfully submitted,

                                                                                    s/ Shawn A. Williams
                                                                                SHAWN A. WILLIAMS

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
MONIQUE C. WINKLER
ELI R. GREENSTEIN
DANIEL J. PFEFFERBAUM
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

---

[9] Defendants also are silent about their improper withholding of relevant emails and documents showing that Jennifer Minton, Oracle's Controller and current CFO – who certified Oracle's 2Q01 false financials with the SEC and was involved in executing the fraudulent $20 million transfer of customer money to earnings – was heavily involved in the 2002 Clean Up, despite her false testimony during deposition that "I was told – I think it was appropriate for legal to keep me uninvolved in the investigation." Supp. at 22-23. Defendants withheld the Minton emails for the entire discovery period under the guise of the 2002 Clean Up, even though they knew the 2002 Clean Up was initiated to help Oracle "resolve" the accounting fraud alleged in plaintiffs' lawsuit.

PLTFS' REPLY IN SUPPORT OF SUPPL SUBM RE DFNTS' DESTRUCT OF EVID AND REQ FOR
SANCT AND OBJECT TO SPECIAL MASTER'S JULY 17, 2006 ORDER - C-01-0988-MJJ     - 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON
DOUGLAS R. BRITTON
STACEY M. KAPLAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

T:\CasesSF\Oracle3\REP00046735.doc

PLTFS' REPLY IN SUPPORT OF SUPPL SUBM RE DFNTS' DESTRUCT OF EVID AND REQ FOR
SANCT AND OBJECT TO SPECIAL MASTER'S JULY 17, 2006 ORDER - C-01-0988-MJJ      - 7 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following designated Internet site at:  http://securities.csgrr.com/.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 26, 2007.

s/ Shawn A. Williams
SHAWN A. WILLIAMS

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:ShawnW@csgrr.com

# Mailing Information for a Case 3:01-cv-00988-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com

- **Brian P Murray**

  bmurray@rabinlaw.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_s

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Dorian Daley
500 Oracle Parkway
Redwood City, CA 94065

Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Raymond Lane
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

PRG-Schultz USA, Inc.
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105
```

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111