# Exhibit 7

Case 3:01-cv-00988-MJJ Document 971 Filed 08/10/2007 Page 1 of 18

Edward W. Swanson SBN 159859
Alexis Haller SBN 201210
SWANSON, McNAMARA & HALLER LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Third-Party Witness Matthew Symonds

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-MJJ |
|---|---|
| | CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | **THIRD-PARTY WITNESS MATTHEW SYMONDS' MEMORANDUM OF POINTS AND AUTHORITIES REGARDING APPLICABILITY OF FIFTH AMENDMENT PRIVILEGE TO QUESTIONS IDENTIFIED BY THE COURT** |
| | **FILED UNDER SEAL** |

Case 3:01-cv-00988-MJJ Document 971 Filed 08/10/2007 Page 2 of 18

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. QUESTIONS IDENTIFIED BY THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

[redacted]

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Case 3:01-cv-00988-MJJ Document 971 Filed 08/10/2007 Page 3 of 18

## TABLE OF AUTHORITIES

### CASES

*Anton v. Prospect Café Milano, Inc.*, 233 F.R.D. 216 (D.D.C. 2006) . . . . 9,10,10 n.8

*Couch v. United States*, 409 U.S. 322 (1973) . . . . 10,13

*Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000) . . . . 7

*Enrichi v. United States*, 212 F.2d 702 (10th Cir. 1954) . . . . 7-8

*FDIC v. Sovereign State Capital, Inc.*, 557 F.2d 683 (9th Cir. 1977) . . . . 7,8,11

*Hoffa v. United States*, 385 U.S. 293 (1966) . . . . 7

*Hoffman v. United States*, 341 U.S. 479 (1951) . . . . 7,10 n.8

*In re Donald Sheldon & Co.*, 193 B.R. 152 (Bkrtcy. S.D.N.Y. 1996) . . . . 10-11

*J.C. Penney Life Ins. Co. v. Houghton*, Civ. A. No. 86-2637, 1986 WL 14732 (E.D.Pa. Dec. 24, 1986) . . . . 8,10

*Maffie v. United States*, 209 F.2d 225 (1st Cir. 1954) . . . . 8,9

*Ohio v. Reiner*, 532 U.S. 17 (2001) . . . . 11 n.10

*Shane v. United States*, 283 F.2d 355 (9th Cir. 1960) . . . . 8

*Shendal v. United States*, 312 F.2d 564 (9th Cir. 1963) . . . . 8,11 n.10

*Simpson v. United States*, 241 F.2d 222 (9th Cir. 1957) . . . . 8

*Simpson v. United States*, 355 U.S. 7 (1957) . . . . 8

*United States v. Chalan*, 812 F.2d 1302 (10th Cir. 1987) . . . . 9

*United States v. Chandler*, 380 F.2d 993 (2d Cir. 1967) . . . . 8

*United States v. Gianakos*,
415 F.3d 912 (8th Cir. 2005) . . . . . . . . . . 10

*United States v. Hubbell*,
530 U.S. 27 (2000) . . . . . . . . . . 7

*United States v. Hyde*,
208 F. Supp. 2d 1052 (N.D. Cal. 2002) . . . . . . . . . . 10

*United States v. Massey*,
419 F.3d 1008 (9th Cir. 2005) . . . . . . . . . . 11 n.9

*United States v. Neff*,
615 F.2d 1235 (9th Cir. 1980) . . . . . . . . . . 7,9,12,13

*United States v. Powe*,
591 F.2d 833 (D.C. Cir. 1978) . . . . . . . . . . 7,12,13

**STATUTES**

18 U.S.C. § 1512(c) . . . . . . . . . . 1,11 n.9,12

**OTHER AUTHORITIES**

3 E. DEVITT & C. BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS
§ 34.08 (3d ed. 1978) . . . . . . . . . . 11 n.9

Case 3:01-cv-00988-MJJ Document 971 Filed 08/10/2007 Page 5 of 18

# I. INTRODUCTION

Plaintiffs accuse Matthew Symonds of destroying recordings and transcripts of Mr. Symonds' alleged interviews with Larry Ellison in connection with the book *Softwar*. Based upon Plaintiffs' allegations, this Court has held that Mr. Symonds faces the possibility of prosecution under 18 U.S.C. section 1512(c). [redacted]

As such, the questions are all covered by the Fifth Amendment. Just as Plaintiffs could use Mr. Symonds' answers to make their case in the civil context that Mr. Symonds obstructed justice (assuming Mr. Symonds gave the answers Plaintiffs expect), so could prosecutors use that testimony to make a case of criminal obstruction. Indeed, assuming Mr. Symonds' testimony were as Plaintiffs expect, a prosecutor at a criminal trial could simply turn on the videotape of Mr. Symonds' deposition testimony and establish from Mr. Symonds' own mouth facts that would directly help the prosecution's case [redacted] Because that is exactly what the Fifth Amendment prohibits, this Court should hold that Mr. Symonds properly invoked the privilege against self-incrimination as to all questions at the March 20, 2007 deposition.

\\\

\\\

\\\

## II. RELEVANT PROCEDURAL BACKGROUND

On June 29, 2007, this Court ruled that Mr. Symonds was entitled to invoke the privilege against self-incrimination. *See* Order Regarding Plaintiffs' Motion to Compel Testimony and Determine the Applicability of the Fifth Amendment Right Against Self-Incrimination to Foreign Citizen and Non-U.S. Resident Matthew Symonds, Docket No. 843 ("Order"), at 7-19. In the Order, the Court examined which questions the privilege would permit Mr. Symonds to refuse to answer. *Id.* at 22. The Court found "that the questions that Symonds declined to answer fall into two basic categories: (1) those where the danger of self-incrimination is readily apparent, and (2) those where the danger is less apparent and insufficient as currently identified by Symonds." *Id.* The Court stated that the first category of questions "consists primarily of questions concerning the destruction of the *Softwar* recordings and transcripts, as well as questions about communications with Defendants or their lawyers after Plaintiffs filed their motion to compel." *Id.* The Court held that "such questions clearly run the risk of self-incrimination" and that Mr. Symonds would not be compelled to answer them. *Id.* at 22-23.

According to the Court, "[t]he second category of questions, for which Symonds has made an insufficient showing at the present time, includes questions directed at the content of Symonds' original interviews for the *Softwar* book, as well as other events that preceded Plaintiffs' motion to compel the *Softwar* materials." *Id.* at 23. The Court specifically identified 62 questions in this category. *Id.* at 23 n.19. The Court stated that "[t]he incriminating nature of such questions is not readily apparent to the Court" and that Mr. Symonds must "articulate[] a credible basis for invoking the Fifth Amendment." *Id.* at 23. The Court provided Mr. Symonds with the opportunity to make a further showing *in camera* to "substantiate his claims of privilege with respect to this second category of questions." *Id.*

At a status hearing on August 2, 2007, the parties agreed to submit briefs regarding the applicability of the Fifth Amendment to the questions identified by the Court. *See* Docket No. 953.

## III. QUESTIONS IDENTIFIED BY THE COURT

The questions identified by the Court, Order at 23 n.19, can be divided into six categories



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[1] For purposes of this brief only, and because the nature of the issues before the Court continues to be legal rather than factual, counsel for Mr. Symonds will proceed upon the alleged facts set forth in pages 5:18 to 6:14 of the Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matter, dated February 1, 2007 ("Letter of Request"). Mr. Symonds does not admit or concede any of the alleged facts set forth in the Letter of Request and expressly reserves all privileges applicable to the subject matters set forth therein.

[2] Citations are to the Deposition of Mr. Matthew Symonds, Vol. II, March 20, 2007, attached as Exhibit K to the Declaration of Mark Solomon in Support of Plaintiffs' Motion to Compel Testimony and Determine the Applicability of the Fifth Amendment Right Against Self-Incrimination to Foreign Citizen and Non-U.S. Resident Matthew Symonds ("Solomon Decl."), filed March 30, 2007.

[3] [redacted]





Case 3:01-cv-00988-MJJ Document 971 Filed 08/16/2007 Page 9 of 18

Symonds' Fifth Amendment Brief, No. C-01-0988-MJJ 5



Case 3:01-cv-00988-MJJ Document 971 Filed 08/10/2007 Page 10 of 18

Symonds' Fifth Amendment Brief, No. C-01-0988-MJJ 6

[redacted]

## IV. LEGAL STANDARD

The protection afforded by the privilege against self-incrimination extends beyond the compelled disclosure of incriminating information. As the Supreme Court has stated, the privilege "embraces [answers] which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951);[6] *see also, e.g.*, *United States v. Hubbell*, 530 U.S. 27, 38 (2000) ("Compelled testimony that communicates information that may lead to incriminating evidence is privileged even if the information itself is not inculpatory."); *Hoffa v. United States*, 385 U.S. 293, 304 n.7 (1966) ("Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself."). Courts have found that the privilege applies when an answer could:

- "provide an indirect link to incriminating evidence[.]" *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000).
- "provide a lead or clue to evidence having a tendency to incriminate." *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980).
- "reveal facts . . . bearing upon knowledge and intent." *FDIC v. Sovereign State Capital, Inc.*, 557 F.2d 683, 687 (9th Cir. 1977).
- "supply an investigatory lead, (or produce) . . . evidence . . . by focusing investigation on a witness as a result of his compelled disclosures." *United States v. Powe*, 591 F.2d 833, 845 n.46 (D.C. Cir. 1978).
- "open sources of information which might reasonably furnish a link in the chain of evidence needed in the prosecution of the claimant for a federal crime." *Enrichi v. United States*, 212

---

[6] Emphasis is added, and citations and internal quotations are omitted, throughout this brief, except as otherwise indicated.

F.2d 702, 703 (10th Cir. 1954).

- disclose "a fact that could serve as a link in a chain of circumstantial evidence from which guilt might be inferred" or a "fact" that "might furnish a lead to a bit of evidence useful to the prosecution." *Maffie v. United States*, 209 F.2d 225, 228 (1st Cir. 1954).
- "give a prosecutor a starting point from which he might proceed step by step to link the witness with criminal offenses." *J.C. Penney Life Ins. Co. v. Houghton*, Civ. A. No. 86-2637, 1986 WL 14732, at *3 (E.D.Pa. Dec. 24, 1986).

In short, the link in the chain test is "broadly protective." *United States v. Chandler*, 380 F.2d 993, 1000 (2d Cir. 1967). It has been "liberally construed" by the courts. *Id.* at 997.

The Supreme Court has itself made it clear that *Hoffman*'s link in the chain test must be broadly construed. In *Simpson v. United States*, 241 F.2d 222 (9th Cir. 1957), the defendant refused to answer several seemingly innocuous questions asked by a Congressional subcommittee investigating communism, including "would you please state your residence[,]" "[w]ould you give . . . a brief resume of your educational background[,]" "did you ever go to high school[,]" and "[w]ere you ever in the armed forces of the United States?" *Id.* at 223. The Ninth Circuit upheld the defendant's conviction for contempt, stating that "there will be borderline cases on delineation [of the Fifth Amendment privilege], but this is not one of them." *Simpson*, 241 F.2d at 224. Citing *Hoffman*, the Supreme Court granted certiorari and summarily reversed. *Simpson v. United States*, 355 U.S. 7 (1957).

The reversal in *Simpson* had an immediate impact on the Ninth Circuit's view of the breadth of Fifth Amendment protections. Based upon the summary reversal in *Simpson*, the Ninth Circuit held that a wide range of questions asked of alleged prostitutes in *Shane v. United States*, 283 F.2d 355 (9th Cir. 1960) – including "How long have you lived in Vallejo?" – were covered by the Fifth Amendment privilege. *Id.* at 357. Similarly, in *Shendal v. United States*, 312 F.2d 564 (9th Cir. 1963), the Ninth Circuit stated that "the full sweep of the *Hoffman* decision" requires "examin[ing]" the Supreme Court's reversal in *Simpson*. *Id.* at 565. The *Shendal* court stated that *Hoffman*, "in effect, holds that the claim of privilege is good unless the court can find that *any* prospective answer *could not possibly* incriminate or form a link in the chain." *Id.*

Other cases also demonstrate the breadth of the *Hoffman* standard. In *FDIC v. Sovereign State Capital, Inc.*, 557 F.2d 683 (9th Cir. 1977), the defendant in a civil action by the FDIC – a former bank president who had been accused of improperly approving loans to corporations that he controlled – asserted

the privilege against self-incrimination to a series of questions, including "[a]re you presently involved in any business activities[,]" "[d]oes your daughter . . . contribute any money to your support[,]" "[d]o you own in your name or jointly any type of bank account," "[d]o you own any insurance policies[,]" and "[d]o you have an accountant?" *Id.* at 686. The court held that the questions could provide prosecutors with investigatory leads, yield facts bearing upon knowledge and intent, and supply "links in the chain of evidence" in connection with criminal charges. *Id.* at 687; *see also*, *e.g.*, *United States v. Chalan*, 812 F.2d 1302, 1310 (10th Cir. 1987) (upholding claim of privilege where "testimony would have revealed an association to the owner of one of the suspected weapons" in the robbery/murder); *Maffie*, 209 F.2d at 231 (holding that questions relating to acquaintances or associates, where the goal is to implicate the witness in a criminal relationship with such individuals, are protected).

The recent decision in *Anton v. Prospect Café Milano, Inc.*, 233 F.R.D. 216 (D.D.C. 2006), a wrongful death action, is instructive. In *Anton*, an underage hostess for the defendant restaurant fell to her death from a residential building after drinking alcohol at the restaurant. During the course of discovery, the plaintiff deposed the assistant manager of the restaurant, who was present at the time of the drinking and a resident of the apartment from where the decedent fell. At his deposition, the assistant manager invoked the Fifth Amendment privilege to a large number of questions, including questions relating to his employment at the restaurant and the manner in which the restaurant operated its business. *Id.* 219. The court upheld the claim of privilege, stating that "any information revealed by [the witness] concerning his relationship with [the restaurant] and their business practices could furnish a link in the chain of evidence in demonstrating [the witness'] knowledge of, participation in, or complacency with wrongdoing on [the restaurant's] part." *Id.* at 220.[7]

In determining whether answers could provide a link in the chain, a court "must examine the implications of the question(s) in the setting in which (they are) asked." *Neff*, 615 F.2d at 1239-40. The judge must "be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." *Id.* at 1240. It is clear, however, that a court should not be swayed by the fact that

[7] The court also ruled that the information regarding the assistant manager's length of employment and the restaurant's business operations was likely available through other discovery processes, which weighed against compelling disclosure. *Id.* at 220.

the answers are perceived to be self-evident. For example, the fact that it may have been clear that the assistant manager was employed by the restaurant in *Anton* did not mean that such testimony could be compelled from the assistant manager himself. This is because "[i]t is extortion of information from the accused himself that offends our sense of justice." *Couch v. United States*, 409 U.S. 322, 328 (1973); *see also, e.g.*, *United States v. Gianakos*, 415 F.3d 912, 919 (8th Cir. 2005) ("This privilege is designed to prevent the use of the legal process to force from the lips of an accused individual, evidence necessary to convict him."); *United States v. Hyde*, 208 F. Supp. 2d 1052, 1054 (N.D. Cal. 2002) ("The Fifth Amendment privilege against self-incrimination protects the accused from being incriminated by his or her own compelled testimonial communications.").[8]

**V. ARGUMENT**

*see also, e.g.*, *In re Donald Sheldon & Co.*, 193 B.R.

---

[8] For the same reason, a witness cannot be compelled, even in an *in camera* hearing, to provide evidence that reveals guilt. *See, e.g.*, *Hoffman*, 341 U.S. at 486 ("if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee."); *Anton*, 233 F.R.D. at 218 ("The judge's inquiry into the scope of the privilege is limited by the Fifth Amendment and the judge may not force a witness to prove incrimination by testimony.").

152, 161 (Bkrtcy. S.D.N.Y. 1996) (stating that the prosecution should not be "free to build up a criminal case, in whole or in part, with the assistance of enforced disclosures by the accused.") For that reason, the questions seek information protected by the privilege against self-incrimination.

The questions could also "reveal facts . . . bearing upon knowledge and intent." *Sovereign State Capital*, 557 F.2d at 687 [10]

[9] Section 1512(c) requires that a defendant acted "corruptly." The term "corruptly" has been defined under other criminal statutes as "performed with the intent to secure an unlawful benefit for oneself or another." *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005); *see also* 3 E. DEVITT & C. BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 34.08 (3d ed. 1978) ("The motive to act corruptly is ordinarily a hope or expectation of either financial gain or other benefit to one's self, or some aid or profit or benefit to another."). Mr. Symonds does not concede that the term "corruptly" under section 1512(c) is so defined – however, it is plain that a prosecutor could argue for that definition in a criminal case.

[10] As with all of the possible answers discussed in this brief, Mr. Symonds does not claim that answers to the questions *would* yield such information. That is not the standard. Instead, to find that the privilege does not apply, a court must find that "*any* prospective answer *could not possibly* incriminate or form a link in the chain." *Shendal*, 312 F.2d at 565. Moreover, it is well-established that "one of the Fifth Amendment's basic functions . . . is to protect *innocent* men . . . who otherwise might be ensnared by ambiguous circumstances." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (emphasis in original).

In sum, because the questions could elicit information critical to a prosecutor's case, they satisfy the link in the chain test.

[redacted]

---

[redacted]

Symonds' Fifth Amendment Brief, No. C-01-0988-MJJ 12



[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

Symonds' Fifth Amendment Brief, No. C-01-0988-MJJ 13

[redacted]

## VI. CONCLUSION

Based upon the foregoing, Mr. Symonds respectfully submits that Mr. Symonds properly invoked the privilege against self-incrimination as to all questions at the March 20, 2007 deposition.

Dated: August 10, 2007

Respectfully submitted,

/s/ Edward W. Swanson
EDWARD W. SWANSON
ALEXIS HALLER
SWANSON, McNAMARA & HALLER LLP
Attorneys for MATTHEW SYMONDS

---

[11] [redacted]

[12] To the extent that Plaintiffs do not agree that both of these questions belong in the protected category, Mr. Symonds reserves the right to supplement the record with *ex parte* submissions.