# Exhibit 1

*Philip Simon*

**AGREEMENT** made as of this 8th day of February 2001, by and between **Larry Ellison** ("Ellison") and **Matthew Symonds** ("Symonds") both c/o The Wylie Agency, Inc., 250 West 57th Street, Suite 2114, New York, NY 10107 ("Wylie").

WHEREAS, the parties propose that Symonds will write a book, authorized by Ellison, on Ellison and the Oracle Corporation ("the Work"), and are desirous of establishing all their rights and obligations in and to the Work and all secondary and subsidiary rights.

NOW, THEREFORE, in consideration of the execution of this Agreement, and the undertakings of the parties as hereinafter set forth, it is agreed as follows:

1.  <u>Duties:</u>

   (a)  Ellison shall:

   (i)  Make himself available in New York for a minimum of two (2) days in January 2001 (unless otherwise mutually agreed) to assist in the presentation and sale of the Work to publishers;

   (ii)  Provide Symonds with office space in the vicinity of Ellison's own at the Oracle Corporation, for Symonds's use until fulfillment of his services and obligations hereunder;

   (iii)  For nine (9) months beginning in March 2001, make his schedule available to Symonds on a weekly basis, and, by the 25th day of each month, Ellison and Symonds shall agree either to one ten (10)-day period or to two (2) separate

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

five (5)-day periods in the following month within which Symonds shall accompany Ellison throughout his working day with full access to business meetings provided all commercially sensitive information divulged in such meetings is subject to Clause 2 of this Agreement;

(iv)   Make himself available to Symonds within each ten (10)-day monthly meeting period (from March 2001 through November 2001) for a minimum of ten (10) hours per week of one-on-one interview time;

(v)   For an additional nine (9) months beginning in December 2001, make himself available to Symonds for a minimum of five (5) hours per month of one-on-one interview time;

(vi)   Provide Symonds with a dedicated email address and a personal telephone number for all confidential communications related to the Work;

(vii)   Consult and advise Symonds on his research, the names of other persons to be interviewed, and any other resources to the best of his knowledge;

(viii)   Provide Symonds with a letter authorizing him to conduct such interviews, when necessary;

(ix)   Grant Symonds full access both to Oracle's archives and to Ellison's personal archives, photographs, documents and any other materials necessarily related to the Work (Ellison shall either grant /clear permissions or provide/obtain releases, as such permissions and releases are appropriate and required for publication, for the inclusion of any and all such materials in the Work);

Symonds/Ellison, page 2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

NDCA-ORCL 1529372

(x)    Grant Symonds access to Ellison's personal life insofar as such access will, in the parties' mutual opinion, inform the Work as a portrait of Ellison (e.g. Ellison's preparation for the America's Cup);

(xi)    Travel with Symonds when both parties agree such travel is needed for interviews and research;

(xii)    Provide Symonds with a letter confirming Ellison's authorization of the Work, subject to the obligations of both parties as set forth herein;

(xiii)    Make himself available for a minimum of one (1) week at the time of publication to promote the Work.

(b)    Symonds shall:

(i)    Conduct extensive interviews with anyone whom Symonds considers in his sole discretion to be informative to the Work, including but not limited to Ellison and other persons who may be proposed as subjects by Ellison;

(ii)    Produce written and edited materials that, in style and content, are professionally competent and fit for publication according to industry standards;

(iii)    Meet publishers' deadlines in a timely manner;

(iv)    Upon completion of the Work, return to Ellison all tapes, transcripts and working papers provided by Ellison, and not make further use of these materials without Ellison's express written consent.

Symonds/Ellison, page 3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER    NDCA-ORCL 1529373

2.   <u>Confidentiality</u>: Both parties understand and agree that all conversations and communications conducted by the parties to this agreement in preparation of the Work (except, to the extent to which such conversations and communications inform the Work itself; this clause shall apply to such conversations and communications until initial publication of the Work), including the terms of this Agreement, shall at all times be kept confidential. Symonds agrees to execute the Nondisclosure Agreement by and between Symonds and Oracle Corporation that is attached hereto as Exhibit A.

3.   <u>Editorial Control and Approval of Manuscript</u>: Symonds shall have final approval over the text of the Work ("Symonds's Contribution"). However, Ellison shall have the right to review Symonds's Contribution and to present a different view, or different angle on an issue, which the Publisher shall (subject to the Publisher's consent) print in a footnote or inserted text set within the body of Symonds's Contribution ("Ellison's Contribution"), and Symonds shall not have final approval over Ellison's Contribution. For the purposes of the preceding sentence, Symonds shall deliver a copy of the completed text of Symonds's Contribution to Ellison no less than forty-five (45) days before the Publisher's deadline. Ellison shall be solely responsible for the delivery of Ellison's Contribution to the Publisher by the Publisher's deadline, subject to Clause 16(e), below.

4.   <u>Copyright Ownership and Grants of Rights</u>:

   (a)   It is understood that Symonds and Ellison shall share <u>equally</u> copyright in the Work. All publishing agreements and other arrangements will be made and signed by Symonds and Ellison as the equal shareholders of copyright in the Work and on

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

terms and conditions Symonds and Ellison in their mutual discretion deem desirable. It is hereby understood and agreed that the Work shall be approximately 85,000 words in length and shall be complete and suitable for delivery to an initial publisher ("Publisher") by October 31, 2002. Any other terms of agreements for publication of the Work shall be subject to good faith negotiation.

(b)     With respect to all motion picture rights (i.e. film and television and all ancillary and allied rights) to the text of the Work, it is understood that such rights are shared <u>equally</u> by Symonds and Ellison and shall be sold jointly with Ellison's life rights, if at all.  It is understood and agreed that Ellison retains his life rights. It is agreed that Ellison shall not enter into any agreement involving film or allied rights in the Work other than the arrangement provided for herein while the Work remains in print and for a period of two (2) years thereafter. ████████████████████████ ████████████████████████████████████████████████ ███████████████████████, pursuant to the acquisition of such rights to the Work. Each party shall promptly notify the other of any interest for such rights to the Work or to Ellison's life or to both and the parties shall negotiate all other terms in good faith at the time of exploitation. All motion picture rights-related agreements and other arrangements are to be signed by both Symonds and Ellison as the equal shareholders of copyright in the Work.

(c)     Symonds shall have the right of first and last refusal to write a treatment for a motion picture based on the Work, subject to terms of such writing services to be negotiated in good faith.

Symonds/Ellison, page 5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                NDCA-ORCL 1529375

(d) If it is understood and agreed that a second, short book on a single subject for·a business leaders series may be drawn from the transcripts of conversations conducted in preparation of the Work. In such event, the arrangement for that book shall be subject to a new agreement under mutually agreeable terms.

(e) It is understood and agreed that Symonds shall have the first right of refusal to write any future editions or revisions of the Work, subject to terms to be negotiated in good faith. It is further understood and agreed that neither Ellison nor the Publisher nor another publisher in negotiation with Ellison may offer any other author terms more favorable than those offered Symonds to write or revise a future edition of the Work without first offering such terms to Symonds.



Symonds/Ellison, page 6

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER      NDCA-ORCL 1529376



Symonds/Ellison, page 7

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

NDCA-ORCL 1529377



6.   <u>Agent:</u>  All sums of money due Symonds and Ellison under the terms of this agreement shall

be paid to The Wylie Agency, Inc., 250 West 57th Street, Suite 2114, New York, NY 10107,

and the receipt of said agent shall be a good and valid discharge of all indebtedness; and the

said agent is hereby empowered to act as Symonds's and Ellison's exclusive agent on

Symonds's and Ellison's behalf in all matters arising from and pertaining to this agreement.

For services rendered and to be rendered, Symonds and Ellison do hereby irrevocably assign

and transfer to The Wylie Agency, Inc., its executors, administrators and assigns, and the

said The Wylie Agency, Inc. which is an intended third party beneficiary under this

agreement, shall retain a sum equal to ten percent (10%) as an agency coupled with an

interest out of all gross monies accruing to the account of Symonds and Ellison under this

agreement pursuant to the sale of North American rights to the Work and a sum equal to

twenty percent (20%) of all gross monies accruing to the account of Symonds and Ellison

under this agreement pursuant to the sale of British and foreign-language rights to the Work

(such 20% shall be inclusive of co-agent commissions, if applicable), prior to deductions

from or charges against such monies for travel and entertainment, international faxes,

Symonds/Ellison, page 8

express mail, postage, photocopying, and any other expenses incurred directly related to the Work. The sale of any and all rights to the Work shall be subject to the prior approval of both Symonds and Ellison.

7. <u>Authorship Credit:</u>    Symonds shall receive sole authorship credit in the form "By Matthew Symonds" for the Work on the cover, jacket, title page, and any other place where the authorship is customarily included on a book and in advertising and promotion of the Work. This provision applies to all editions of the Work published by the Publisher and/or by any publisher and to all editions of the Work or portions of the Work licensed for publication by any publisher and any licensee or purchaser of any subsidiary rights, including but not limited to all print publication, film and television allied and ancillary rights, audio, radio, live stage, and multimedia rights.

8. <u>Representations:</u>

(a)    Ellison warrants and represents that he has the right to enter into this Agreement, to perform as hereby required, and to grant the rights herein granted. Ellison further warrants and represents that Ellison's Contribution (i) will not infringe upon any copyright or any other proprietary right at common law of any third party; (ii) all necessary permissions for Ellison's Contribution will be obtained; (iii) Ellison's Contribution will contain no matter whatsoever that is obscene or libelous, violates any third party's right of privacy or publicly, or is otherwise in contravention of law or the right of any third party.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

NDCA-ORCL 1529379

(b)     Symonds warrants and represents that he has the right to enter into this Agreement, to perform as hereby required, and to grant the rights herein granted.  Symonds further warrants and represents that (i) Symonds's Contribution will not infringe upon any copyright or any other proprietary right at common law of any third party; (ii) all necessary permissions for Symonds's Contribution will be obtained; and (iii) Symonds's Contribution will contain no matter whatsoever that is obscene or libelous, violates any third party's right of privacy or publicly, or is otherwise in contravention of law or the right of any third party.

9.      <u>Competitive Works:</u>     Beginning with the date of this Agreement, Ellison will not hereafter authorize any work or enter into any agreement or understanding with any person or entity which might conflict with this Agreement (i.e., Ellison will not, without the Publisher's permission, enter into another agreement regarding the publication of a book based upon his life story for a period of three (3) years after the initial hardcover publication of the Work).

10.     <u>Indemnification:</u>     Each party hereto shall indemnify, defend and hold harmless the other party hereto from any and all claims, debts, demands, suits, actions, proceedings, and/or prosecutions ("Claims") based on allegations which, if true, would constitute a breach of any of that party's warranties and representations hereunder, and any and all liabilities, losses, damages, and expenses (including attorneys' fees and costs) in consequence thereof.  The indemnifying party's obligations are conditioned upon the indemnified party: (i) giving the indemnifying party prompt written notice of any Claim for which the indemnified party is seeking an indemnity; (ii) granting control of the defense and settlement

Symonds/Ellison, page 10

to the indemnifying party; and (iii) reasonably cooperating with the indemnifying party at the indemnifying party's expense. The protection of any licensee's Errors & Omissions Policy as provided in any such license agreement shall extend to both parties.

11.  <u>Assignment:</u>   This agreement is not assignable by either party without the prior written consent of the other except to assign the receipt of payments, such assignment to be made effective by sufficient prior written notice. This agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, successors or permitted assigns.

12.  <u>Notices:</u>   Formal business and financial notices given hereunder will be given by (i) personal delivery, (ii) overnight courier, (iii) telecopy followed by first class mail, or (iv) certified mail, return receipt requested, to the following addresses:

(a)  If to Symonds:

Matthew Symonds

_____

_____

_____

(b)  If to Ellison:

Larry Ellison

_____

Symonds/Ellison, page 11

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER          NDCA-ORCL 1529381

_____

_____

With a copy to:

Andrew Wylie
The Wylie Agency, Inc.
250 West 57th Street
Suite 2114
New York, NY 10107

A party may change its address by written notice to the other party.  Notices will be deemed to be received and effective (i) when personally delivered, (ii) one (1) day after the date of forwarding by overnight courier, (iii) on the date of telecopy with confirmation, provided a copy is also sent by U.S. Mail, or (iv) if sent via certified mail, on the date of receipt.

13.  <u>Applicable Law</u>:     The validity, construction and performance of this Agreement shall be governed and interpreted in accordance with the laws of the State of New York.

14.  <u>Arbitration</u>:     Any controversy or claim arising out of this agreement or the breach thereof shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award may be entered in the highest court of the forum, State or Federal, having jurisdiction.  Such arbitration shall be held in the City of New York unless otherwise agreed by the parties.

15.  <u>Term of Agreement</u>:  If the Work is published, this agreement shall be in force and continue for the copyright therein and any renewals of such copyright.

Symonds/Ellison, page 12

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

16.   <u>Termination:</u>

(a)   Ellison reserves the absolute right to terminate this Agreement at any time with or without cause. Termination without cause shall be effective immediately upon Symonds's receipt of written notice from Ellison provided (i) neither Symonds nor Ellison shall make any use whatsoever of Symonds's work product completed at that point; (ii) Symonds shall be entitled to keep all amounts and expense reimbursements theretofore paid to him for his services rendered hereunder; (iii) Symonds shall receive his share of advances paid as of the effective date of termination under any publication agreement entered into by <u>the parties</u> in respect to the Work; (iv) <u>in addition,</u> Symonds shall receive his share of any advances due on delivery of all or part of the Work to the Publisher or on publication of any edition of the Work provided Symonds has fulfilled all of his services and obligations hereunder and the Work is deliverable or, if already delivered, acceptable to the Publisher (v) Ellison shall be solely responsible for terminating the Publisher's agreement and any other grants of rights in the Work in place and repaying the Publisher and any other licensees any paid advances and fees in full. In the event of such termination, Symonds shall make no claim to any portion of advances or royalties paid or to be paid subsequent to the effective date of termination except as provided in (iii) and (iv) of this sub-clause.

(b)   Ellison may terminate this agreement upon thirty (30) days written notice if, for any reason other than Ellison's fault, the publisher has rejected the manuscript of the Work as unacceptable or Symonds has been unable to deliver a manuscript by the

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

NDCA-ORCL 1529383

mutually agreed upon deadline unless another publisher acceptable to Ellison agrees to publish the Work based on Symonds's work product then completed and to repay all advances to the Publisher; in such event, Symonds shall return to Ellison any advance payments paid to him and, upon such repayment, this Agreement shall be terminated.

(c)    If the Publisher terminates the Publisher's agreement either because Symonds's manuscript was not timely delivered or was, in the Publisher's opinion, unsatisfactory, Ellison may elect not to terminate this Agreement. In such event, Ellison shall not demand repayment of sums previously paid hereunder and Symonds shall use his best efforts to cooperate with Wylie in negotiating an agreement with a new publisher by meeting with prospective publishers and making available excerpts of the manuscript of the Work. If an agreement is executed with a new publisher, Symonds shall use his best efforts to produce a manuscript acceptable to such publisher within the required schedule.

(d)    In the event Symonds is unable to deliver a satisfactory manuscript of the Work to the Publisher within the time limits established by the Publisher as the same may be extended due to Ellison's failure to cooperate with Symonds, Symonds may terminate this Agreement immediately on written notice to Ellison and retain all sums theretofore paid to him hereunder. Ellison shall be solely responsible for terminating the Publisher's agreement and any other grants of rights in the Work in place and repaying the Publisher and any other licensees any paid advances and fees in full. The retention of sums previously paid to him shall be Symonds's sole and exclusive remedy in the case of termination under this section.

Symonds/Ellison, page 14

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER    NDCA-ORCL 1529384

(e)    In the event Symonds delivers a satisfactory manuscript of Symonds's Contribution to the Publisher within the time limits established by the Publisher as the same may be extended and has delivered the same to Ellison no later than forty-five (45) days prior to the Publisher's deadline in accordance with Clause 3 hereinabove and Ellison fails to deliver Ellison's Contribution to the Publisher by the Publisher's deadline, should the Publisher withhold any advance payments as a result of Ellison's nondelivery of Ellison's Contribution, Symonds shall, in addition to having the right to terminate this Agreement and retaining all sums previously paid to Symonds hereunder, receive from Ellison his share of any advances due on delivery of all or part of the Work to the Publisher and on publication of any edition of the Work. In the event of Symonds's termination, Ellison shall be solely responsible for terminating the Publisher's agreement and any other grants of rights in the Work in place and repaying the Publisher and any other licensees any paid advances and fees in full.

(f)    Should Symonds die or become disabled so as to make it impossible for him to complete the Work within the time provided, then in the case of Symonds's death this Agreement shall immediately terminate or, in the case of Symonds's disability, Ellison may, upon thirty (30) days written notice, terminate this Agreement. Upon such termination, neither party shall make any use of Symonds's work product completed at the date of termination. Ellison may however negotiate with Symonds or his estate, as the case may be, for the use of his work on the Work completed as of the date of termination. The parties shall negotiate with each other in good faith for such use and shall be guided by the principle that Symonds or his estate should

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER      NDCA-ORCL 1529385

receive that portion of the compensation which would have been due to Symonds had he been able to complete the Work corresponding to the portion of the Work which Symonds was, in fact, able to complete.

(g)   Should Ellison die or become disabled so as to make it impossible, in Symonds's sole and reasonable discretion, for Symonds to complete the Work within the time provided, then in the case of Ellison's death this Agreement shall immediately terminate or, in the case of Ellison's disability, Symonds may, upon thirty (30) days written notice, terminate this Agreement. Upon such termination, neither party shall make any use of Symonds's work product completed at the date of termination. Symonds may however negotiate with Ellison or his estate, as the case may be, for the use of his work on the Work completed as of the date of termination. The parties shall negotiate with each other in good faith for such use.

(h)    Should Ellison die or become disabled before Symonds's completion of the Work and Symonds determines in his sole and reasonable discretion that it is possible for him to complete the Work within the time provided, the parties shall negotiate with each other in good faith for such continuation and use of the Work and shall be guided by the principle that (i) if Ellison or his estate continues to fulfill Ellison's obligations hereunder inasmuch as is necessary for Symonds to complete the Work within the time period provided, and (ii) if Ellison or his Estate continues to fulfill all obligations of any Publisher agreement or other licenses granting rights in the Work in place as of the date of termination, Ellison or his estate should receive the compensation which would have been due to Ellison pursuant to Clause 5 herein.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    NDCA-ORCL 1529386

(i)    In all cases of this Agreement's termination, regardless of the basis for such termination, Symonds shall promptly upon such termination surrender to Ellison the original copy of all manuscripts, drafts, notes, and other material prepared by him for the Work learned during the course of researching and/or in connection with the Work as well as all audio and video tapes of all interviews conducted in connection with the preparation of the Work and the original and all copies of, all letters, photographs, diaries, and other material furnished by or on behalf of Ellison to Symonds in connection with his preparation of the Work and shall not retain copies thereof. Neither Symonds nor Ellison shall have the right whatsoever to make any use of any material prepared by Symonds hereunder. Ellison's possession of the original copy of such materials is merely intended to permit the enforcement of this use restriction which, both parties agree, may be enforced by injunctive relief. Symonds shall have no right to use in any way the materials furnished by and on behalf of Ellison.

17.    <u>Entire Agreement:</u>    The terms and conditions herein contained constitute the entire agreement between the parties and supersede any and all previous communications and understandings, whether oral or written, between the parties hereto with respect to the subject matter of this Agreement.  No amendment or modification of this Agreement shall be valid unless in writing and signed by both parties.  If all parties have not signed this agreement by January 31, 2001, the terms offered herein shall be null and void.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER        NDCA-ORCL 1529387

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date and year first above written.

_____     9 ii 01
Matthew Symonds          Date

_____     _____
Larry Ellison          Date

Symonds/Ellison, page 18

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER          NDCA-ORCL 1529388

# NONDISCLOSURE AGREEMENT

This Nondisclosure Agreement (the "Agreement") is made on _____ by and between Matthew Symonds, c/o The Wylie Agency, Inc. 250 West 57th Street, Suite 2114, New York, NY 10107 ("Recipient") and Oracle Corporation, a Delaware corporation located at 500 Oracle Parkway, Redwood Shores, CA 94010 ("Company").

1. **Purpose.** Recipient has entered into an Agreement with Lawrence J. Ellison ("Ellison") dated _____ (the "Book Collaboration Agreement") pursuant to which Recipient will write a book on Ellison and Company (the "Work"). In connection with Recipient's preparation of the Work, certain of Company's Confidential Information may be disclosed to Recipient.

2. **Definition.** "Confidential Information" means any information, technical data or know-how, including, but not limited to, that which relates to research, product plans, products, services, customers, partners, customer lists, markets, software, developments, inventions, marketing, strategy, finances, financial results or other business information disclosed by Company to Recipient either directly, indirectly, in writing or orally. Confidential Information does not include information, technical data or know-how which: (i) was in the public domain at the time it was disclosed or falls within the public domain, unless it falls into the public domain as a result of actions of Recipient; or (ii) was known to Recipient at the time of disclosure, which knowledge Recipient shall have the burden of establishing by clear and convincing evidence; or (iii) was independently developed by Recipient without the benefit of data received from Company, which independent development Recipient shall have the burden of establishing by clear and convincing evidence.

3. **Non-Use and Non-Disclosure of Confidential Information.** Recipient agrees not to misuse or misappropriate any Confidential Information, and Recipient agrees to notify Company of any misuse or misappropriation of Confidential Information that comes to his attention. Recipient agrees to use Confidential Information solely for the purpose of preparing the Work. Recipient will not make Confidential Information available to any third party including, but not limited to, by disclosing it in the Work, except as specifically authorized in writing by Company. Recipient agrees that he will take all reasonable measures to protect the secrecy of and avoid the unauthorized disclosure or use of Confidential Information in order to prevent it from falling into the public domain, which measures shall include the highest degree of care that Recipient utilizes to protect his own confidential information.

4. **Mandatory Disclosure.** In the event that Recipient is requested or required by legal process to disclose any Confidential Information, he shall give prompt notice to Company so that Company may seek a protective order or other appropriate relief. In the event that such protective order is not obtained, Recipient shall disclose only that portion of the Confidential Information which his counsel advises that he is legally required to disclose, provided that he shall exercise his reasonable efforts to preserve confidentiality of the Confidential Information including, without limitation, by cooperating with Company to obtain an appropriate order or

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

NDCA-ORCL 1529389

other reliable assurance that confidential treatment will be accorded the Confidential Information by such tribunal.

5. <u>**Insider Trading.**</u>  Recipient acknowledges that he has received, read and understood Company's policy against trading in Company stock while in the possession of inside information (i.e., material nonpublic information) as attached hereto.  Recipient agrees to sell or otherwise dispose of Company stock strictly in compliance with this policy and all related securities laws.

6. <u>**Term.**</u>  The foregoing commitments of Recipient in this Agreement shall survive any termination of relationship between the parties until such time as all Confidential Information disclosed hereunder becomes publicly known and made generally available through no action or inaction of Recipient.

7. <u>**Governing Law and Jurisdiction.**</u>  This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California, and shall be binding upon the parties hereto.  The federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement and Recipient consents to personal jurisdiction in such courts.

8. <u>**Remedies.**</u>  Recipient agrees that his obligations hereunder are necessary and reasonable in order to protect Company, and expressly agrees that monetary damages would be inadequate to compensate Company for any breach by the Recipient of any covenants or agreements set forth herein.  Accordingly, each party agrees and acknowledges that any such violation or threatened violation will cause irreparable injury to Company and that, in addition to any other remedies that may be available, in law, in equity, or otherwise, Company shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach, without the necessity of proving actual damages.

9. <u>**Waiver, Entire Agreement.**</u>  Failure or inability of any party to enforce any right hereunder shall not waive any right with respect to any other or future rights or occurrences.  This Agreement sets forth the entire agreement between the parties and supersedes prior proposals, agreements and representations between them, whether written or oral.  In the event of any conflict between this Agreement and the Book Collaboration Agreement, this Agreement shall control.  This Agreement may be changed only if agreed to in writing.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

MATTHEW SYMONDS

_____
Matthew Symonds

ORACLE CORPORATION

Name: _____

Title: _____

Symonds/Ellison, page 20

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# INSIDER TRADING POLICY

## Insider Trading

We expect you to comply with federal and state securities laws governing your transactions in Oracle or other company securities.

## Legal requirements

Federal and state securities laws and regulations prohibit you from using material, non-public company information for personal advantage and from disclosing this information to any other person before it is broadly available. You expose yourself and Oracle to civil and criminal liability if you or members of your immediate family trade in securities while you possess inside information gained through your work at Oracle or if you provide others with inside information for their use in securities trading. Individuals can be liable for civil penalties of up to three times the gain in any trade, including profits made and losses avoided, as well as criminal fines of up to $1 million and prison terms of up to 10 years.

## Definitions

Material information includes any information-positive or negative-that a reasonable investor would consider important in the decision to buy, hold, or sell securities.  Material information includes: financial or key business data; merger, acquisition, or divestiture discussions; award or cancellation of a major contract; key management changes; forecasts of unanticipated financial results; significant litigation; gain or loss of a substantial customer or supplier.

Trading includes the purchase, sale, or exercise of options in securities.

Securities include common stock, bonds, employee stock options, futures, and other financial instruments.

Trading on material, inside information may include making a single purchase or sale, or engaging in a pattern of transactions which might appear to take advantage of inside information possessed by others at Oracle. Possessing inside information at the time of the trade-- whether or not you actually use or rely on it-- may be considered trading on inside information. The number of shares or the dollar amounts involved need not be large, nor must you hold the securities directly to be considered trading on inside information. It is enough that the securities are beneficially owned or controlled by or for you through family members, partnerships, trusts, or other such entities.

## General guidelines

Keep inside information confidential at all times and do not "tip" inside information to anyone. Be particularly careful about communicating any information about Oracle to brokers and others involved in trading Oracle securities.

Symonds/Ellison, page 21

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    NDCA-ORCL 1529391

If you are aware of inside information, you should not trade in Oracle securities. And, you should hold the inside information confidential until Oracle has disclosed it to the general public through a press release, the press has circulated it, and investors have had time to evaluate it. Generally, you should refrain from trading from the time you become aware of the inside information until two full trading days after Oracle has issued a press release disclosing the information. For example, if Oracle issues its press release on Thursday, you should refrain from trading until the following Tuesday.

**"No trading" periods (Revised February 2000)**

If you have access to earnings and revenue information, you should refrain from trading in Oracle securities during the following period of time: from two weeks before the end of each quarter through two full trading days after Oracle releases its earnings report for that quarter. For example, if Oracle issues a press release announcing earnings at the close of market on Tuesday, you should continue to refrain from trading until the market opens on Friday.

**Speculative transactions**

We strongly discourage you from engaging in speculative transactions in Oracle securities, such as short sales, puts, calls, straddles, or similar transactions. In most instances, such transactions provide none of the benefits of traditional stock ownership, and, in the case of "short sales," represent a wager against Oracle's success. For these reasons, we ask that you refrain from any short sale or from any purchase or sale of any put, call, straddle, or other publicly traded option in Oracle securities. This policy does not apply to the exercise of any employee stock options granted by Oracle.

Symonds/Ellison, page 22

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER