# Exhibit A

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 3 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES, INC., et al., | 2:06-cv-01093 FMC-JCx |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS** |
| vs. | |
| JUSTIN BUNNELL, et al., | |
| Defendants. | |

This matter came on for hearing on December 10, 2007 on Plaintiffs' Motion for Terminating Sanctions Based on Defendants' Willful Spoliation of Key Evidence (docket no. 280), filed August 30, 2007. The parties were in possession of the Court's tentative decision to deny the motion. Following oral argument, the matter was taken under submission.

Having considered the issues raised in oral argument, and reviewed the evidence cited there and in the parties' papers, and for the reasons and in the manner set forth below, the Court hereby GRANTS the Motion.

//
//
//

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are motion picture studios that own copyrights or exclusive reproduction and distribution rights to numerous films and television programs. Defendants operate a website, www.torrentspy.com, that enables users to locate and download dot-torrent files. Using dot-torrent files and an independent computer software program, a "BitTorrent" client, users join a peer-to-peer network that facilitates the copying and distribution of the files that were the subject of the users' search. Defendants' website thereby allegedly permits Internet users to locate and download, view, store, and distribute unauthorized copies of Plaintiffs' copyrighted motion pictures and television shows. In this way, Plaintiffs allege Defendants knowingly enable, encourage, induce, and profit from the online piracy of Plaintiffs' copyrighted works.

On February 23, 2006, Plaintiffs filed a Complaint for copyright infringement. Numerous discovery disputes have arisen between the parties. Plaintiffs now claim that Defendants willfully despoiled evidence in four ways:

### 1. Deletion and Modification of Torrentspy User Forums Postings

Plaintiffs claim that Defendants responded to the filing of this lawsuit with a plan to delete and modify "hundreds or thousands" of postings on Torrentspy forums whose content included references to copyright infringement. (Mot. at 4-8.) In a private forum posting, "Xanthus"[1] informs its volunteer moderators:

---

[1] "Xanthus" is Defendant Wes Parker. (Parker Am. Decl. ¶ 12.) Parker/Xanthus was the only person in Torrentspy's "senior management" who engaged with the forum's volunteer moderators, including MaggiePixel/Ayn Shipley. (*Id.* at ¶¶ 11-12.)

2

> We need to make sure that these forums stay clear of anything related to piracy. If people talk about piracy or ask for pirated works, then it can be used against us in court. Please make sure to be on the watch for these kinds of things and remove them promptly. I'd even recommend using the search engine to find past threads that may hurt us.

(March 2, 2006 posting by "Xanthus," Fabrizio Decl. Ex. 8.) Xanthus's post yielded a number of responses and proposals from moderators. On March 6, 2006, moderator "MaggiePixel" (whose real name is Ayn Shipley) suggested that each moderator review forum threads "for content, and clos[e] threads if possible." (Posting by MaggiePixel, Fabrizio Decl. Ex. 8 at 262.) She proposed the creation of a hidden forum called "Archived Threads" and concluded, "From a legal point of view, we need Xanthus's input on whether hiding the threads is sufficient, or whether he feels the need to have the archivable threads physically removed." (*Id.* at 262-263.) Xanthus posted: "MaggiePixel, this proposal is perfect for our needs. Let's go ahead with this plan." (*Id.* at 264.)

Forum postings were modified to replace the names of copyrighted works with, for example, "[some movie 1]" and "[some movie 2]." (Dec. 15, 2005 posting by "Flareup," edited by MaggiePixel on March 5, 2006, Fabrizio Decl. Ex. 9 at 291-92; Dec. 4, 2005 posting by "Mikeb353," edited by MaggiePixel on March 4, 2006, Fabrizio Decl. Ex. 10 at 295; Shipley Depo. 74: 10-24, 75: 14-25.) Two forum threads were deleted entirely: a thread on how to "crack" or bypass the copyright security on electronic games and a glossary of terms like CAM, TS, DVDSCR, and Telecine.[2] (Shipley Depo. 59: 13-25, 60: 1-25, 65: 4-

---

[2] These terms refer to various means of copying existing programs: "CAM" refers to copies of films made by using a hand-held camera in a movie theater. Stephen Bates, *Coming Soon to a P.C. Near You: The Past, Present, and Future of Movie Copyright Infringement on the Internet*, 5 VA. SPORTS & ENT. L.J.

3

8.) This process was implemented to "clean up" the site in response to the lawsuit, with an eye to avoiding future complaints of copyright infringement. (Parker Am. Decl. at ¶ 18.) Torrentspy claims that it assumed Plaintiffs would have already seen the existing forum postings. (*Id.*) Thus, its intention was not to destroy evidence but to "steer clear of anything related to piracy." (*Id.* at ¶ 19.) This contention is simply not believable. The destruction of evidence clearly relevant on the issue of copyright infringement cannot be justified by the assumption that it's already been viewed by the plaintiffs.

Most piracy-related threads were closed and removed from public view, leaving their content intact, rather than modified. (*Id.* at 21.) In total, MaggiePixel estimates that she reviewed 2,792 forum threads. (Shipley Depo. 65: 6-7.)

Vbulletin, the software Torrentspy uses to operate the forums, "does not save material which has been edited from a forum post." (Parker Am. Decl. ¶ 5.) Parker claims the forums are tangential to Torrentspy's main operation (the exchange of data over a peer-to-peer network). Torrentspy considered the forums as another way to garner advertising revenue and left the content

---

97,110 (2005); Shipley Depo. 61: 7-13. "TS" stands for "Telesync," and refers to copies of films made by setting up a camera in the projection booth during the playing of a film. Shipley Depo. 61: 15-23, 62: 5-8. "TC" refers to Telecine, a method of copying film to video (which has a legitimate use in film preservation). *See* NATIONAL FILM PRESERVATION FOUNDATION, THE FILM PRESERVATION GUIDE: THE BASICS FOR ARCHIVES, LIBRARIES, AND MUSEUMS 48 (2004), *available at* www.filmpreservation.org/preservation/fpg.pdf. "DVDSCR" refers to DVD Screeners, copies of films distributed for limited purposes, like advance criticism or consideration for awards, and not meant to be distributed further. *See* Bates at 110 n.120; Shipley Depo. 63: 24-25, 64: 1-15.

4

unmonitored.[3] This benign neglect ended upon the institution of this suit. (*Id.* at ¶¶ 6-9.)

### 2. Deletion of Directory Headings Referencing Copyrighted Works

TorrentSpy maintained a directory of torrents available for download, which included entries for major television shows. The telelvision directory contained hundreds of entries, in alphabetical order, *e.g., According to Jim, Adventures of Superman, ALF, All in the Family, American Idol.* (Fabrizio Decl. Ex. 12; Shipley Depo. 83: 9-15.) Defendants have deleted these directory headings. (*See* Fabrizio Decl. Exs. 12-15; Shipley Depo. 83: 16-18; 91: 2-8.) The torrents filed under these headings were not deleted from the web site, but moved to headings like "TV-Unsorted." (Shipley Depo. 91: 2-8, 13-22.)

Prior to March 2006, the Torrentspy website had categories for CAM, Telecine, Telesync, and DVD screeners, which were eliminated as part of the "cleanup" of the site. (Shipley Depo. 82: 16-25, 83: 1-2.) For example, on March 15, 2006 MaggiePixel posted the following: "CAM/TS/TC/DVDSCR sub-categories in the Movie category are being merged into the Movie-unsorted area. New submissions can be placed there, so that site mods/admins are not liable for the creation/management of them." (Fabrizio Decl. Ex. 8 at 283; Shipley Depo. 93: 23-25, 94: 1-2.) Wes Parker made this change himself. (Shipley Depo. 31: 13-21.) No dot-torrent files in these categories were deleted from the site, but instead moved to the "Unsorted" category. (*Id.* at 92: 6-10.)

---

[3]The forums addressed many topics, including exchanges on user-generated content; debates on the importance of copyright protection; reviews and critiques of popular culture; and discussions and trouble-shooting advice for the main site. (Parker Am. Decl. ¶ 10.) Defendants admit some users discussed how to use Torrentspy's services for exchanging pirated works. (*Id.* at 9.)

5

Plaintiffs contend that, to date, Defendants have not produced previously existing, unaltered versions of their directories, contrary to Defendants' representations to the Court. (Parker Am. Decl. ¶ 22; Fallow Decl. ¶ 5.) The previous directory headings may be available to Plaintiffs as cached on web sites such as Google. (Parker Am. Decl. ¶ 22.)

### 3. April 2007 Destruction of User IP Addresses

Plaintiffs contend that Defendants have prevented them from determining the extent of infringement fostered by the Torrentspy site and whether Defendants themselves directly infringe on Plaintiffs' copyrights by uploading files. Defendants have claimed not to have full IP addresses[4] and have produced lists of IP addresses with the fourth octet missing. Wes Parker testified under oath that Torrenspy has never recorded full IP addresses. (Fabrizio Decl. Ex. 4 at 175-76) In fact, the record reflects forum conversations between moderators indicating that records of full IP addresses do exist. In a March 1-3, 2006 forum thread between moderators MaggiePixel and Cabana Bob,[5] MaggiePixel asks for four IP addresses to be banned. (Fabrizio Decl. Ex. 30.) She provides the full IP addresses (*e.g.*, "165.228.130.11."). (*Id.*) Other postings describe the process for banning users by username and IP address. (Forum Thread, February 28- March 2, 2006, Fabrizio Decl. Ex. 32; *see also* Fabrizio Decl. Ex. 33.) In these posts, the moderators refer to and occasionally provide lists of, the complete IP addresses of banned users. (*Id.*; *see also* Forum Thread, July 7, 2006, Fabrizio Decl. Ex. 35; Ex. 36.)

---

[4] An IP address "consists of four numbers separated by a dot. Each of those numbers is called an octet, and that number can range in value from 0 to 255." (Depo. Robert Clymer 43: 21-25, Fabrizio Decl. Ex. 2)

[5] Cabana Bob's real name is Robert Clymer. (Parker Am. Decl. ¶ 36.)

1    E-mail exchanges between Xanthus (*i.e.*, Wes Parker),
2 "support@torrentspy.com," and "justin@baventures.com" (Justin Bunnell), that
3 discuss reinstating banned IP addresses include complete IP addresses. (Fabrizio
4 Decl. Ex. 37.) Torrentspy moderators recall that Torrentspy recorded full IP
5 addresses (all four octets) until about April 2007. (Shipley Depo. 36: 15-25, 89:
6 15-21; Fabrizio Decl. Ex. 1 at 17; Clymer Depo. 44: 12-16, 51: 9-18, Fabrizio
7 Decl. Ex. 2 at 131; Dennis Decl. ¶ 37.) Defendants were ordered by Magistrate
8 Judge Chooljian to produce these IP addresses as part of server logs on February
9 13, 2007.

### 4. Identities and Addresses of Site Moderators

Defendants stated, under oath, in responses to interrogatories that the true names and addresses of Torrentspy's volunteer forum moderators were unknown, and that they were known to defendants only by their nicknames or "handles" and email addresses. (Fabrizio Decl. Ex. 48 at 18)  Defendants retort that most of their interactions with the volunteer moderators took place over Instant Messenger, using Internet "handles" rather than legal names (e.g., "MaggiePixel" for Ayn Shipley). (Parker Am. Decl. ¶ 36.) To the extent Torrentspy has records of moderators' legal names and addresses, this information is "scattered like a needle in a haystack of other communications." (*Id.*)

Ayn Shipley's deposition testimony contradicts Defendants' explanation. Shipley states that she sometimes used her real name in communications with Defendant Wes Parker. (Shipley Depo. 19: 10-17, Fabrizio Decl. Ex. 1 at 19.) In addition, she sent the names and addresses of moderators to Parker so that he could send them Torrentspy T-shirts. (*Id.* at 10: 18-25, 11: 19-22, 12: 14-20.) Wes Parker testified that he took two or three of the forum moderators to Las Vegas as a thank-you gift. (Fabrizio Ex. 4 at 178-180.)

7

1　　　　The evidence also demonstrates that Defendants Parker and Bunnell
2  improperly attempted to influence the testimony of site moderators. This
3  apparently was done by implying in instant messages and in telephone
4  conversations that TorrentSpy would pay moderators' legal fees only if the
5  moderators agreed to testify to certain things or to withhold requested evidence,
6  such as their personal computer hard drives. (Shipley Depo. 32: 9-11, 20-25, 33:
7  1-2, 24-25, 34: 1-6; Clymer Depo. 9: 17-25, 10: 1-5, 8-18, 25, 11: 1-6.) Shipley
8  testified that she was told she should delay responding to requests that she turn
9  over her hard drive until the "magic date" of August 2, 2007 (*Id.* at 34: 7-11),
10 which happened to be the discovery cut-off date in this case. Robert Clymer
11 described Defendant Bunnell, during a conversation about Torrentspy paying for
12 Clymer's legal fees, as pressing him to answer the question, "'Well, let me just
13 ask you how you would answer–you never actually banned user by IP address,
14 right?'" (Clymer Depo. 10: 6-18.)

15　　　　Defendants adamantly deny this characterization of their conversations
16 with moderators. (Bunnell Decl. ¶ 6; Parker Am. Decl. ¶ 39; *see also* Shipley
17 Depo. 35: 21-25.) Bunell states that "magic date" is a phrase not found in his
18 vocabulary. (Bunnell Decl. ¶ 4.) Rather, Bunnell and Parker believe Shipley
19 may have heard the date August 2 in reference to the commencement of Parker's
20 annual vacation, not to the date of discovery cut-off in this case. (*Id.*; Parker
21 Am. Decl. ¶ 38.) Paying for moderators' legal fees was "an obvious topic for
22 discussion" once they were served with subpoenas, especially since many
23 moderators are students without the means to hire counsel. (Parker Am. Decl. ¶¶
24 37, 40.)

25　　　　　　　　　　　　　　* * *

26　　　　On August 30, 2007, Plaintiffs filed the instant Motion for Terminating
27 Sanctions Based on Defendants' Willful Spoliation of Key Evidence.
28

## STANDARD OF LAW

Spoliation occurs when a party destroys evidence after receiving some notice that the evidence was potentially relevant to litigation, thereby impairing the non-spoiling party's "ability to go to trial or threaten[ing] to interfere with the rightful decision of the case." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988). A court may sanction spoliation by: imposing monetary sanctions; instructing the jury to draw an adverse inference against the despoiling party; excluding testimony based on despoiled evidence proffered by the despoiling party; or, if willfulness is found, entering default judgment against the despoiling party. *UMG Recordings, Inc. v. Hummer Winblad Venture Partners et al.*, 462 F. Supp. 2d 1060, 1066 (2006).

The Court's authority to sanction a party for despoiling evidence derives from two sources: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting Fed. R. Civ. P. 37(b)(2)). Entry of default judgment is an appropriate sanction only where spoliation is "due to willfulness, bad faith, or fault," resulting in unfair prejudice to the opposing party that no lesser sanction can remedy. *In re Exxon Valdez*, 102 F.3d 429, 432-33 (9th Cir. 1996); *United States ex rel. Wiltec Guam, Inc.*, 857 F.2d at 603. In deciding whether to enter default judgment as a sanction, the Court must weigh a number of factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d

9

1  337, 348 (9th Cir. 1995) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948
2  (9th Cir. 1993)); *see also Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (1988).

## DISCUSSION

Plaintiffs have convinced the Court that their ability to prove their case has been inalterably prejudiced by Defendants' willful spoliation of evidence, making terminating sanctions the only effective recourse. The Court has concluded that Defendants' conduct constitutes spoliation and second, that termination of the case in favor of Plaintiffs is the proper sanction, applying each of the above factors in turn.

### A.  **Willful or Bad Faith Spoliation of Evidence**

The deleted (or modified) evidence includes directory headings naming copyrighted works and forum posts explaining how to locate and download specific copyrighted works. Upon being served with Plaintiffs' suit for copyright infringement, Defendants were on notice that this information would be of importance in the case. In particular, the postings and directory headings are significant in demonstrating whether Defendants knowingly contributed to copyright infringement. This evidence was not deleted or modified negligently, but intentionally in direct response to the institution of this suit. Therefore, Defendants' conduct constitutes willful spoliation.

Defendants maintain that they assumed Plaintiffs must have copied their forum postings and directory headings by the time of filing suit, thereby making any alteration or deletion by Defendants entirely innocent. To the extent that forum threads were closed or hidden, and then made available to Plaintiffs in discovery, this explanation may be sufficient. Given the sheer volume of forum postings on the Torrentspy site, however, Defendants' assertion that they assumed Plaintiffs would have already copied every post demonstrating

inducement or enticement of infringement is disingenuous. Nor is a plaintiff obligated to duplicate all publicly available information prior to filing suit, in anticipation that a defendant will thereafter destroy it. *See Leon*, 464 F.3d at 960. Rather, the forum postings and directory headings could have and should have been preserved, notwithstanding Defendants' professed desire to avoid future liability for infringement. (Parker Am. Decl. ¶ 18.) Defendants could have reached that goal simply by taking down from the web site the offending posts, while preserving them and producing them in discovery.[6] By Defendants' own admission, the edited postings now cannot be recovered in their original form. (Parker Am. Decl. ¶ 5.)

The timing of the change in IP address collection belies Defendants' explanations of their failure to produce the full IP addresses called for in discovery. Until April 2007, full IP addresses were available, as evidenced by communications of the forums' moderators. After April 2007, the fourth octet of these IP addresses disappeared. Defendants produced IP addresses with only three octets. User IP addresses, in the context of server logs and dot-torrent file upload records, were a contested subject of discovery well before April 2007. The Court concludes that Defendants were well aware of their obligation to preserve those addresses in their entirety. Their deletion of the fourth octet of these addresses was willful.

With regard to the withholding of the full names and addresses of Torrentspy's forum moderators, the evidence establishes that this information was, in some instances known to Defendants and, in other instances, readily

---

[6]Defendants state that they have produced unaltered, closed forum threads. Parker Am. Decl. ¶ 21. The irreversible editing of some posts, however, creates doubt as to whether all forum posts have been produced; *i.e.*, now that Defendants have altered some posts, it is difficult to determine how many posts have been edited or, perhaps, have disappeared altogether.

11

available to them. The Court finds that Defendants' failure to fully disclose the identities and contact information of moderators was willful.

### B. Factors

#### 1. Expeditious Resolution of Litigation and Managing the Court's Docket

The first two factors the Court must consider in determining whether default is an appropriate sanction for Defendants' willful spoliation are the public's interest in the expeditious resolution of litigation and the Court's need to manage its docket. Here, Defendants' discovery conduct has unnecessarily drawn out the discovery period in this case.[7] Multiple discovery disputes have consumed a considerable amount of time both here and before the Magistrate Judge. Thus, these factors weigh strongly in favor of terminating the case in favor of Plaintiffs.

#### 2. Risk of Prejudice to Plaintiffs

For the Court to impose the sanction of default, it must find that there is a nexus between the Defendants' misconduct and the merits of the case, such that the misconduct "interfere[s] with the rightful decision of the case." *Halaco Eng'g Co.*, 843 F.2d at 381-82. The Court finds that Plaintiffs have suffered prejudice, to the extent that a rightful decision is not possible.

---

[7] *See, e.g.,* May 3, 2007 Order (Judge Chooljian) ("The court notes that the documents requests in issue were propounded in August 2006. It is incomprehensible to this court, particularly in light of the paltry showing made by defendants in connection with Plaintiffs' Motion, that despite the ample amount of time defendants have had to do so, defendants have still not fully responded to said requests and . . . have violated the February 13 Order directing them to do so.")

1  Plaintiffs' main contention in this litigation is that the Torrentspy website
2  entices, promotes, and contributes to copyright infringement by its users. *See* 17
3  U.S.C. § 106. The Supreme Court recently explained, "One infringes
4  contributorily by intentionally inducing or encouraging direct infringement, *see*
5  *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d
6  Cir. 1971), and infringes vicariously by profiting from direct infringement while
7  declining to exercise a right to stop or limit it, *Shapiro, Bernstein & Co. v. H. L.*
8  *Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)." *MGM Studios Inc. v. Grokster,*
9  *Ltd.*, 545 U.S. 913, 930 (2005); *see also* NIMMER ON COPYRIGHT §§ 12.04[A][2],
10 [A][3] (Matthew Bender 2007). Thus, the alteration or deletion of forum posts
11 specifically referencing copyrighted works, or providing guides on how to
12 download "CAM/TS/TC/DVDSCR"s, has prejudiced Plaintiffs' ability to
13 demonstrate Defendants' alleged inducement or encouragement of infringement,
14 necessary to prove contributory infringement. This altered or deleted evidence
15 also would have been relevant to proving Defendants' failure to exercise its right
16 to stop or limit infringement, necessary to prove vicarious infringement.

17  The deletion of the directory headings is similarly prejudicial, and only
18 slightly mitigated to the extent that archived versions of the directory headings
19 may be available elsewhere. Defendants' failure to produce the full contact
20 information of its forum moderators is prejudicial given that the moderators are
21 well-placed to discuss the extent of Torrentspy's ability to supervise its users'
22 infringing activities. The likelihood that other forum moderators would have
23 provided testimony helpful to the plaintiff and damaging to the defendant is
24 demonstrated by the evidence gleaned from the two moderators plaintiffs were
25 successful in locating.

26  In a case such as this, where a substantial number of items of evidence
27 have been destroyed, a plaintiff's burden would be particularly onerous if he
28 were required to prove the relevance of all the destroyed items. "The relevance

13

of ...[destroyed] documents cannot be clearly ascertained because the documents no longer exist." Therefore, a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon v. IDX Sys. Corp.*, 464 F.3d. at 959.

The Court finds that Plaintiffs have suffered prejudice as a result of Defendants' willful spoliation of evidence. Defendants' misconduct is connected to the merits of the case because the despoiled evidence bears on Plaintiffs' theories of contributory and vicarious liability. Although this prejudice has been mitigated somewhat by Plaintiffs' success in locating some relevant evidence despite Defendants' misconduct, this factor nonetheless weighs strongly in favor of terminating sanctions.

### 3. Public Policy in Favor of Deciding Cases on Their Merits

The fourth factor is the public policy in favor of deciding cases on their merits. This case raises questions of copyright infringement and privacy that are of considerable public importance beyond the narrow interests of the parties here. The filing of an *amicus curiae* brief in connection with a previous motion is evidence of this. Therefore, this factor weighs against the imposition of terminating sanctions against Defendants.

### 4. Availability of Lesser Sanctions

Recognizing that terminating sanctions are an extreme measure, only to be imposed if no lesser sanctions would serve, the Court issued a tentative decision to deny terminating sanctions and invited counsel to address the question of what lesser sanctions would be appropriate. At oral argument, Plaintiffs maintained their position that no alternate sanction could possibly alleviate the harm to Plaintiffs in this case. Defendant offered no alternative sanctions in response.

1    Defendants have already been subjected to lesser sanctions in this case.
2 Monetary sanctions of $30,000 were imposed for violations of discovery orders,
3 and as an additional sanction, Defendants were deemed to have waived certain
4 privilege arguments. Further, Defendants were warned by the Magistrate Judge
5 that more severe sanctions would be imposed if they continued to ignore her
6 orders.
7    After oral argument, and further examination of the history of this case,
8 the Court concludes that no lesser sanctions would be appropriate or effective.
9 A rule excluding evidence would be futile, since the issue here is not the efforts
10 by Defendants to introduce evidence which could be excluded, but rather
11 Defendants' destruction or concealment of evidence, forcing Plaintiffs to go to
12 trial with "incomplete and spotty evidence" at trial. *Anheuser-Busch, Inc. v.
13 Natural Beverage Distribs.*, 69 F.3d. 337, 348 (9th Cir. 1995)   As the Court
14 found in *Leon,* fashioning a jury instruction which creates a presumption in favor
15 of Plaintiffs would leave Plaintiffs equally helpless to rebut any material that
16 Defendants might use to overcome the presumption. *Leon,* 464 F.3d. at 960.
17 Monetary sanctions have previously been imposed and have been ineffective.

### C. Summary

Defendants' conduct during discovery in this case has been obstreperous.
They have engaged in widespread and systematic efforts to destroy evidence and
have provided false testimony under oath in an effort to hide evidence of such
destruction. Indeed, Defendants' lateness and incomplete responses to discovery
requests have led the Magistrate Judge to warn or sanction them on more than one

15

occasion.[8] Although termination of a case is a harsh sanction appropriate only in "extraordinary circumstances," *Halaco Eng'g Co. v. Costle*, 843 F.2d at 380, the circumstances in this case are sufficiently extraordinary to merit such a sanction. Lesser sanctions would not be adequate to punish the defendants for the wrongful conduct and ameliorate the prejudice and harm to the plaintiffs.

## Conclusion

Plaintiffs' Motion for Terminating Sanctions is GRANTED. The Clerk is directed to enter the Default of the defendants in this case.

**IT IS SO ORDERED.**

Dated: December 13, 2007

_____
FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

---

[8] *See* May 3, 2007 Order (Judge Chooljian); August 8, 2007 Order (Judge Chooljian) (imposing $30,000 in discovery sanctions and warning Defendants of the possibility of additional sanctions for noncompliance with discovery orders).