Exhibit A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

QUALCOMM INCORPORATED,

         Plaintiff,

v.

BROADCOM CORPORATION,

         Defendant.

and RELATED COUNTERCLAIMS.

Case No. 05cv1958-B (BLM)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS AND SANCTIONING QUALCOMM, INCORPORATED AND INDIVIDUAL LAWYERS**

**[DOC. NOS. 489, 540, 599, 614]**

At the conclusion of trial, counsel for Broadcom Corporation ("Broadcom") made an oral motion for sanctions after Qualcomm Incorporated ("Qualcomm") witness Viji Raveendran testified about emails that were not produced to Broadcom during discovery. Doc. No. 489. The trial judge, United States District Court Judge Rudi M. Brewster, referred the motion to this Court pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(b) of the United States District Court for the Southern District of California. Doc. No. 494. On May 29, 2007, Broadcom filed a written motion requesting that the Court sanction Qualcomm for its failure to produce tens of thousands of documents that Broadcom had requested in discovery. Doc. No. 540. Qualcomm timely

1  opposed, and Broadcom filed a reply.  Doc. Nos. 568, 578, 581.  This
2  Court heard oral argument on Broadcom's motion on July 26, 2007.

3       After hearing oral argument and reviewing Judge Brewster's Order
4  on Remedy for Finding of Waiver ("Waiver Order") and Order Granting
5  Broadcom Corporation's Motion for Exceptional Case Finding and for an
6  Award of Attorney's Fees (35 U.S.C. § 285) ("Exceptional Case Order"),
7  this Court issued an Order to Show Cause Why Sanctions Should Not be
8  Imposed against Qualcomm's retained attorneys ("OSC").  Doc. No. 599.
9  Specifically, this Court ordered James R. Batchelder, Adam A. Bier,
10 Craig H. Casebeer, David E. Kleinfeld, Kevin K. Leung, Christian E.
11 Mammen, Lee Patch, Kyle Robertson, Victoria Q. Smith, Barry J. Tucker,
12 Jaideep Venkatesan, Bradley A. Waugh, Stanley Young, Roy V. Zemlicka,
13 and any and all other attorneys who signed discovery responses, signed
14 pleadings and pretrial motions, and/or appeared at trial on behalf of
15 Qualcomm to appear and show cause why sanctions should not be imposed
16 for their failure to comply with this Court's orders.  Id.

17      On October 3, 2007, nineteen attorneys filed declarations and
18 briefs responsive to the OSC.  Doc. Nos. 670, 673-74, 676-80, 682, 685-
19 87, 689-91, 693-700.  Qualcomm filed a brief and four declarations.
20 Doc. Nos. 675, 681, 683-84, 692.  The attorneys filed objections to
21 Qualcomm's brief on October 5, 2007 [Doc. No. 704], and both Broadcom
22 and Qualcomm filed responsive briefs on October 9, 2007 [Doc. Nos. 705-
23 06].  This Court heard extensive oral argument on the sanctions issue
24 on October 12, 2007.  Doc. No. 709 (October 12, 2007 Hearing
25 Transcript).

26      Having considered all of the written and oral arguments presented
27 and supporting documents submitted, and for the reasons set forth more
28 fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Broadcom's

motion for sanctions against Qualcomm, **REFERS TO THE STATE BAR OF CALIFORNIA** six attorneys, and **SANCTIONS** Qualcomm and six of its retained lawyers.  Doc. Nos. 489, 540, 599, 614.

__BACKGROUND__

**A.   __The Patent Infringement Case__**

Qualcomm initiated this patent infringement action on October 14, 2005, alleging Broadcom's infringement of Qualcomm patent numbers 5,452,104 (the "'104 patent'") and 5,576,767 (the "'767 patent'") based on its manufacture, sale, and offers to sell H.264-compliant products. Compl.  ¶¶ 7-16.  Qualcomm sought injunctive relief, compensatory damages, attorneys' fees and costs.  Id. at 3.  On December 8, 2006, Broadcom filed a First Amended Answer and Counterclaims in which it alleged (1) a counterclaim that the '104 patent is unenforceable due to inequitable conduct, and (2) an affirmative defense that both patents are unenforceable due to waiver.  Doc. No. 370.  Broadcom's waiver defense was predicated on Qualcomm's participation in the Joint Video Team ("JVT") in 2002 and early 2003.  Doc. No. 540-2 at 3.  The JVT is the standards-setting body that created the H.264 standard, which was released in May 2003 and governs video coding.  Waiver Order at 5-9.

**B.   __Evidence of Qualcomm's Participation in the JVT__**

Over the course of discovery, Broadcom sought information concerning Qualcomm's participation in and communications with the JVT through a variety of discovery devices.  For example, as early as January 23, 2006, Broadcom served its First Set of Requests for the Production of Documents and Things (Nos. 1-88), in which it requested:

> [a]ll documents given to or received from a standards setting body or group that concern any standard relating to the processing of digital video signals that pertains in any way to any Qualcomm Patent, including without limitation communications, proposals, presentations, agreements,

-3-

commitments, or contracts to or from such bodies... . [and]

[a]ll documents concerning any Qualcomm membership, participation, interaction, and/or involvement in setting any standard relating to the processing of digital video signals that pertains in any way to any Qualcomm Patent. This request also covers all proposed or potential standards, whether or not actually adopted.

Decl. of Kate Saxton Supp. Broadcom's Mot. for Sanctions [Doc. No. 540] ("Saxton Decl."), Ex. BB-2 (Request for Production Nos. 49 & 50). On July 14, 2006, Broadcom served its Second Set of Requests for Production of Documents and Things (Nos. 89-115), calling for production of:

[a]ll documents referring to or evidencing any participation by Qualcomm in the proceedings of the JVT, the ISO, the IEC, and/or the ITU-T; and

[a]ll documents constituting, referring to, or evidencing any disclosure by any party to the JVT, the ISO, the IEC, and/or the ITU-T of any Qualcomm Patent and/or any Related Qualcomm Patent.

Id., Exs. D & DD (Request for Production Nos. 93-94). Broadcom also requested similar information via interrogatories and multiple Rule 30(b)(6) deposition notices. See id., Ex. EE (Broadcom Interrogatory Nos. 19-20); Saxton Suppl. Decl., Ex. K (Broadcom Interrogatory No. 13); Broadcom's Mem. Supp. Mot. for Sanctions [Doc. No. 540] ("Def.'s Mem.") at 4 n.4 (sample excerpt from Broadcom deposition notice directed to the Qualcomm witness knowledgeable about "attendance or participation by any Qualcomm principal, employee, or representative at any H.264 standards committee meetings").

On their face, Qualcomm's written discovery responses did not appear unusual. In response to Broadcom's request for JVT documents, Qualcomm, in a discovery response signed by attorney Kevin Leung, stated "Qualcomm will produce non-privileged relevant and responsive documents describing QUALCOMM's participation in the JVT, if any, which can be

-4-                                                                    05cv1958-B (BLM)

1    located after a reasonable search."  Doc. No. 543-3, Ex. X (Qualcomm's

2    Response to Broadcom's Request for Production No. 93); Decl. of Kevin

3    Leung at 5-6, Ex. 3.    Similarly, Qualcomm committed to producing

4    "responsive non-privileged documents that were given to or received from

5    standards-setting body responsible for the ISO/IEC MPEG-4 Part 10

6    standard, and which concern any Qualcomm participation in setting the

7    ISO/IEC MPEG-4 Part 10 standard."[1]  Leung Decl. at 6; Decl. of Christian

8    Mammen at 7-8.  When asked for "the facts and circumstances of any and

9    all communications between Qualcomm and any standards setting body

10   relating to video technology, including ... the JVT ...," Qualcomm

11   responded that it first attended a JVT meeting in December 2003 and that

12   it first submitted a JVT proposal in January 2006.  Decl. of Stanley

13   Young at 14 and Ex. 6 (Response to Interrogatory No. 19).  In response

14   to Interrogatory No. 13, Qualcomm stated that it submitted four

15   proposals to the JVT in 2006 but had no earlier involvement.  Leung

16   Decl. at 6-7; Decl. of Kyle S. Robertson at 11 and Ex. 2.  This response

17   included the statement that "Qualcomm's investigation concerning this

18   interrogatory is ongoing and Qualcomm reserves the right to supplement

19   its response to this interrogatory as warranted by its investigation."

20   Id.  Kevin Leung signed both of these interrogatory responses.  See

21   Robertson Decl., Ex. 2 (Response to Interrogatory No. 13) and Young

22   Decl., Ex. 6 (Response to Interrogatory No. 19).

23       Qualcomm's responses to Broadcom's Rule 30(b)(6) deposition notices

24   were more troubling.  Initially, Qualcomm designated Christine Irvine

25

26   ───────────────

27       [1]    The standard adopted by the JVT and at issue in this case is known by two
     names: H.264 and MPEG-4 Part 10.  The MPEG-4 Part 10 nomenclature is used by the
     ISO/IEC organization but both names refer to the same standard.  Leung Decl. at 6;

28   Mammen Decl. at 7.  The Court will use the H.264 designation throughout this Order.

as the corporation's most knowledgeable person on the issue of Qualcomm's involvement in the JVT. Leung Decl. at 3-4. Although attorney Leung prepared Irvine for her deposition (id.), Qualcomm did not search her computer for any relevant documents or emails or provide her with any information to review (Decl. of Christine Irvine at 2-3; Decl. of Christine Glathe at 3). Irvine testified falsely that Qualcomm had never been involved in the JVT. Leung Decl. at 4. Broadcom impeached Irvine with documents showing that Qualcomm had participated in the JVT in late 2003. Id. Qualcomm ultimately agreed to provide another Rule 30(b)(6) witness. Id.

Qualcomm designated Scott Ludwin as the new representative to testify about Qualcomm's knowledge of and involvement in the JVT. Id. Leung prepared and defended Ludwin at his deposition. Id. Qualcomm did not search Ludwin's computer for any relevant documents nor take any other action to prepare him. Decl. of Scott Ludwin at 2-3 (listing all of the preparation he did not do); Glathe Decl. at 3. Ludwin testified falsely that Qualcomm only began participating in the JVT in late 2003, after the H.264 standard had been published. Id. In an effort to impeach him (and extract the truth), Broadcom showed Ludwin a December 2002 email reflector list from the Advanced Video Coding ("AVC") Ad Hoc Group that listed the email address viji@qualcomm.com.[2] Decl. of Stanley Young at 19-20; Robertson Decl. at 14, Ex. 3; Leung Decl. at 8.

---

[2] The document is an "Input Document to JVT" entitled "Ad Hoc Report on AVC Verification Test." Robertson Decl., Ex. 3. The report discusses a meeting set to take place on Awaji Island. Id. Annex A to the document is entitled a "list of Ad Hoc Members." Id. It includes Raveendran's email address, viji@qualcomm.com, and identifies her as a member of list avc_ce. Id. While the document is not an email sent to or from Raveendran, it indicates that a Qualcomm employee was receiving JVT/AVC reports in 2002. This document became critical to Broadcom as it was the only evidence in Broadcom's possession indicating the truth-that Qualcomm had been actively involved in the JVT and the development of the H.264 standard in 2002.

1  Although Ludwin did not recognize the document, Broadcom utilized the

2  document throughout the litigation to argue that Qualcomm had

3  participated in the JVT during the development of the H.264 standard.

4  Young Decl. at 19-20; Robertson Decl. at 14-17; Decl. of Jaideep

5  Venkatesan at 14-15.

6  As the case progressed, Qualcomm became increasingly aggressive in

7  its argument that it did not participate in the JVT during the time the

8  JVT was creating the H.264 standard.[3]  This argument was vital to

9  Qualcomm's success in this litigation because if Qualcomm had

10 participated in the creation of the H.264 standard, it would have been

11

12 _____

13 [3]      For example, on September 1, 2006, Qualcomm submitted an expert declaration confirming the absence of any corporate records indicating Qualcomm's participation in

14 the JVT.  Saxton Decl., Ex. Z.  The declaration was prepared by the Heller Ehrman lawyers and reviewed by numerous Day Casebeer and Qualcomm in-house attorneys.

15 Venkatesan Decl. at 9-12; Robertson Decl. at 9; Young Decl. at 15-16.  In November, Qualcomm filed a Motion for Summary Adjudication ("MSA") and supporting reply arguing

16 that the evidence established Qualcomm's non-participation in the JVT during the relevant period.  Saxton Decl., Exs. FF & GG.  Numerous in-house and outside counsel

17 reviewed the pleadings and attorneys Young, Batchelder and Patch argued the motion. Young Decl. at 18-22; Vekatesan Decl. at 12-15; Robertson Decl. at 10-16; Batchelder

18 Decl. at 14-15; Patch Decl. at 4; Decl. of Barry J. Tucker at 4 (Tucker signed the MSA pleadings); Decl. of David E. Kleinfeld at 4 (Kleifeld signed the reply pleadings).

19 In its reply, Qualcomm dismissed the appearance of Raveendran's email address on the JVT *ad hoc* group email reflector list and denied any suggestion that the email

20 reflector list indicated Raveendran received any JVT-related information or otherwise had any involvement in the JVT *ad hoc* committee.  Saxton Decl., Ex. II.  On November

21 19, 2006, Qualcomm filed (1) a Motion in Limine to exclude evidence relating to, among other things, Qualcomm's participation in the JVT, declaring that the "facts

22 demonstrate" Qualcomm "did not participate in JVT deliberations while the H.264 standard was being created" and (2) a Memorandum of Contentions of Fact and Law in

23 which it similarly asserted its lack of involvement in the H.264 standardization process.  Id., Exs. HH & KK at 2.  Numerous in-house and outside counsel also reviewed

24 these pleadings.  Mammen Decl. at 15 (Mammen signed the Memorandum); Decl. of Craig H. Casebeer at 4-5; Decl. of Roy V. Zemlicka at 2, 5-6; Batchelder Decl. at 15; Venkatesan

25 Decl. at 15-16; Robertson Decl. at 16-17; Tucker at 4 (Tucker signed the motion and related pleadings on behalf of Zemlicka).  Qualcomm reiterated these arguments in

26 its Rebuttal Memorandum of Contentions of Fact and Law filed on December 4, 2006 and signed by Mammen.  Saxton Decl., Ex. JJ; Mammen Decl. at 15.  On January 24, 2007,

27 after the discovery of the Raveendran emails, Qualcomm filed its Motion for Judgment as a Matter of Law ("JMOL") asserting the same lack of participation argument.  Decl.

28 of Victoria Q. Smith at 2-5; Casebeer Decl. at 7; Robertson Decl. at 19.  Smith signed the JMOL.  Smith Decl. at 2.

1   required to identify its patents that reasonably may be essential to the

2   practice of the H.264 standard, including the '104 and '767 patents, and

3   to license them royalty-free or under non-discriminatory, reasonable

4   terms.  Waiver Order at 5-9.  Thus, participation in the JVT in 2002 or

5   early 2003 during the creation of the H.264 standard would have

6   prohibited Qualcomm from suing companies, including Broadcom, that

7   utilized the H.264 standard.  In a nutshell, the issue of whether

8   Qualcomm participated in the JVT in 2002 and early 2003 became crucial

9   to the instant litigation.

10  **C.   Trial and Decision Not to Produce avc_ce Emails**

11       Trial commenced on January 9, 2007, and throughout trial, Qualcomm

12  argued that it had not participated in the JVT in 2002 and early 2003

13  when the H.264 standard was being created.  In his opening statement,

14  Qualcomm's lead attorney, James Batchelder, stated:

15       Later, in May of '03, the standard is approved and published.
         And then Qualcomm, in the fall of 2003, it begins to
16       participate not in JVT because it's done.  H.264 is approved
         and published.  Qualcomm begins to participate in what are
17       called professional extensions, things that sit on top of the
         standard, additional improvements.
18

19  Waiver Order at 45; Batchelder Decl. at 15.

20       While preparing Qualcomm witness Viji Raveendran to testify at

21  trial, attorney Adam Bier discovered an August 6, 2002 email to

22  viji@qualcomm.com welcoming her to the avc_ce mailing list.  Decl. of

23  Adam Bier at 4, Ex. A.  Several days later, on January 14, 2007, Bier

24  and Raveendran searched her laptop computer using the search term

25  "avc_ce" and discovered 21 separate emails, none of which Qualcomm had

26  produced in discovery.  Id. at 7.  The email chains bore several dates

27  in November 2002 and the authors discussed various issues relating to

28  the H.264 standard.  Mammen Decl. at 16-19, Ex. 8.  While Raveendran was

not a named author or recipient, the emails were sent to all members of two JVT email groups (jvt-experts and avc_ce) and Raveendran maintained them on her computer for more than four years.  Id.  The Qualcomm trial team decided not to produce these newly discovered emails to Broadcom, claiming they were not responsive to Broadcom's discovery requests. Bier Decl. at 7; Mammen Decl. at 18-19; Patch Decl. at 6-7; Batchelder Decl. at 16.  The attorneys ignored the fact that the presence of the emails on Raveendran's computer undercut Qualcomm's premier argument that it had not participated in the JVT in 2002.  Mammen Decl. at 18-19; Bier Decl. at 7; Patch Decl. at 7.  The Qualcomm trial team failed to conduct any investigation to determine whether there were more emails that also had not been produced.

Four days later, during a sidebar discussion, Stanley Young argued against the admission of the December 2002 avc_ce email reflector list, declaring: "Actually, there are no emails -- there are no emails ... there's no evidence that any email was actually sent to this list.  This is just a list of email ... addresses.  There's no evidence of anything being sent."  Trial Tr. vol. VII at 91-92; Young Decl. at 25-29.  None of the Qualcomm attorneys who were present during the sidebar mentioned the 21 avc_ce emails found on Raveendran's computer a few days earlier. Id.; Batchelder Decl. at 16-17; Casebeer Decl. at 6.

During Raveendran's direct testimony on January 24th, attorney Lee Patch pointedly did not ask her any questions that would reveal the fact that she had received the 21 emails from the avc_ce mailing list; instead, he asked whether she had "any knowledge of having **read**" any emails from the avc_ce mailing list.  Patch Decl. at 8-9; Trial Tr. vol. VIII at 46.  But on cross-examination, Broadcom asked the right question and Raveendran was forced to admit that she had received emails from the

avc_ce mailing list.  Trial Tr. vol. VIII at 53.  Immediately following

this admission, in response to Broadcom's request for the emails, and

despite the fact that he had participated in the decision three days

earlier not to produce them, Patch told the Court at sidebar:

> [I]t's not clear to me [the emails are] responsive to anything.  So that's something that needs to be determined before they would be produced ... I'm talking about whether they were actually requested in discovery... .  I'm simply representing that I haven't seen [the emails], and [whether Broadcom requested them] hasn't been determined.

Order at 46; Patch Decl. at 10.  Over the lunch recess that same day,

Qualcomm's counsel produced the 21 emails they previously had retrieved

from Raveendran's email archive.  Trial Tr. vol. VIII at 114.

On January 26, 2007, the jury returned unanimous verdicts in favor

of Broadcom regarding the non-infringement of the '104 and '767 patents,

and in favor of Qualcomm regarding the validity and non-obviousness of

the same.  Doc. No. 499.  The jury also returned a unanimous advisory

verdict in favor of Broadcom that the '104 patent is unenforceable due

to inequitable conduct and the '104 and '767 patents are unenforceable

due to waiver.  Id. at 14.

On March 21, 2007, Judge Brewster found (1) in favor of Qualcomm

on Broadcom's inequitable conduct counterclaim regarding the '104

patent, and (2) in favor of Broadcom on Broadcom's waiver defense

regarding the '104 and '767 patents.  Doc. No. 528.  On August 6, 2007,

Judge Brewster issued a comprehensive order detailing the appropriate

remedy for Qualcomm's waiver.  Doc. No. 593.  After a thorough overview

of the JVT, the JVT's policies and guidelines, and Qualcomm's knowledge

of the JVT and evidence of Qualcomm's involvement therein, see id. at

5-22, Judge Brewster found:

> by clear and convincing evidence that Qualcomm, its

1  employees, and its witnesses actively organized and/or
2  participated in a plan to profit heavily by (1) wrongfully
   concealing the patents-in-suit while participating in the JVT
3  and then (2) actively hiding this concealment from the Court,
   the jury, and opposing counsel during the present litigation.

4  Id. at 22.  Judge Brewster further found that Qualcomm's "counsel

5  participated in an organized program of litigation misconduct and

6  concealment throughout discovery, trial, and post-trial before new

7  counsel took over lead role in the case on April 27, 2007." Id. at 32.

8  Based on "the totality of the evidence produced both before and after

9  the jury verdict," and in light of these findings, Judge Brewster

10 concluded that "Qualcomm has waived its rights to enforce the '104 and

11 '767 patents and their continuations, continuations-in-part, divisions,

12 reissues, or any other derivatives of either patent." Id. at 53.

13     Also on August 6, 2007, Judge Brewster granted Broadcom's Motion

14 for an Award of Attorneys' Fees pursuant to 35 U.S.C. § 285.  Doc. No.

15 594.  Judge Brewster found clear and convincing evidence that Qualcomm's

16 litigation misconduct, as set forth in his Waiver Order, see Doc. No.

17 593, justified Qualcomm's payment of all "attorneys' fees, court costs,

18 expert witness fees, travel expenses, and any other litigation costs

19 reasonably incurred by Broadcom" in the defense of this case.  Doc. No.

20 594 at 4.  On December 11, 2007, Judge Brewster adopted this court's

21 recommendation and ordered Qualcomm to pay Broadcom $9,259,985.09 in

22 attorneys' fees and related costs, as well as post-judgment interest on

23 the final fee award of $8,568,633.24 at 4.91 percent accruing from

24 August 6, 2007.  Doc. Nos. 715 & 717.

25 D.   **Qualcomm's Post-Trial Misconduct**

26     Following trial, Qualcomm continued to dispute the relevancy and

27 responsiveness of the 21 Raveendran emails.  Bier Decl., Exs. B-E.

28 Qualcomm also resisted Broadcom's efforts to determine the scope of

1    Qualcomm's discovery violation.    Id., Exs. B-F.    By letter dated

2    February 16, 2007, Bier told Broadcom "[w]e continue to believe that

3    Qualcomm performed a reasonable search of Qualcomm's documents in

4    response to Broadcom's Requests for Production and that the twenty-one

5    unsolicited emails received by Ms. Raveendran from individuals on the

6    avc_ce reflector are not responsive to any valid discovery obligation

7    or commitment." Id., Ex. C.    In response to Broadcom's request that

8    Qualcomm conduct additional searches to determine the scope of

9    Qualcomm's discovery violation, Bier stated in a March 7, 2007 letter,

10   we "believe your negative characterization of Qualcomm's compliance with

11   its discovery obligation to be wholly without merit" but he advised that

12   Qualcomm agreed to search the current and archived emails of five trial

13   witnesses using the requested JVT, avc_ce and H.264 terms.    Id., Exs.

14   D & E.    Bier explained that Qualcomm has "not yet commenced these

15   searches, and [does] not yet know the volume of results we will obtain."

16   Id., Ex. E.    Throughout the remainder of March 2007, Bier repeatedly

17   declined to update Broadcom on Qualcomm's document search.    Id., Ex. F.

18        But, on April 9, 2007, James Batchelder and Louis Lupin, Qualcomm's

19   General Counsel, submitted correspondence to Judge Brewster in which

20   they admitted Qualcomm had thousands of relevant unproduced documents

21   and that their review of these documents "revealed facts that appear to

22   be inconsistent with certain arguments that [counsel] made on Qualcomm's

23   behalf at trial and in the equitable hearing following trial." Saxton

24   Decl., Exs. H & I.    Batchelder further apologized "for not having

25   discovered these documents sooner and for asserting positions that

26   [they] would not have taken had [they] known of the existence of these

27   documents." Id., Ex. H.

28   ///

05cv1958-B (BLM)

1    As of June 29, 2007, Qualcomm had searched the email archives of
2    twenty-one employees and located more than forty-six thousand documents
3    (totaling more than three hundred thousand pages), which had been
4    requested but not produced in discovery.  Broadcom's Reply Supp. Mot.
5    for Sanctions at 1 n.2.  Qualcomm continued to produce additional
6    responsive documents throughout the summer.  Doc. No. 597 (Qualcomm's
7    August 7, 2007 submission of three additional avc_ce emails it had not
8    produced to Broadcom).

9                              **DISCUSSION**

10    As summarized above, and as found by Judge Brewster, there is clear
11    and convincing evidence that Qualcomm intentionally engaged in conduct
12    designed to prevent Broadcom from learning that Qualcomm had
13    participated in the JVT during the time period when the H.264 standard
14    was being developed.  To this end, Qualcomm withheld tens of thousands
15    of emails showing that it actively participated in the JVT in 2002 and
16    2003 and then utilized Broadcom's lack of access to the suppressed
17    evidence to repeatedly and falsely aver that there was "no evidence"
18    that it had participated in the JVT prior to September 2003.  Qualcomm's
19    misconduct in hiding the emails and electronic documents prevented
20    Broadcom from correcting the false statements and countering the
21    misleading arguments.

22  **A.  Legal Standard**

23    The Federal Civil Rules authorize federal courts to impose
24    sanctions on parties and their attorneys who fail to comply with
25    discovery obligations and court orders.  Rule 37 authorizes a party to
26    file a motion to compel an opponent to comply with a discovery request
27    or obligation when the opponent fails to do so initially.  Fed. R. Civ.
28    P. 37(a).  If such a motion is filed, the rule requires the court to

award reasonable attorney's fees to the prevailing party unless the court finds the losing party's position was "substantially justified" or other circumstances make such an award unjust. Id. Depending upon the circumstances, the court may require the attorney, the client, or both to pay the awarded fees. Id. If the court grants a discovery motion and the losing party fails to comply with the order, the court may impose additional sanctions against the party. Fed. R. Civ. P. 37(b). There is no requirement under this rule that the failure be willful or reckless; "sanctions may be imposed even for negligent failures to provide discovery." Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1343 (9th Cir. 1985).

The Federal Rules also provide for sanctions against individual attorneys who are remiss in complying with their discovery obligations:

> [e]very discovery request, response or objection made by a party ... shall be signed by at least one attorney [and] [t]he signature of the attorney ... constitutes a certification that to the best of the signer's knowledge, information, and belief, ***formed after a reasonable inquiry***, the request, response, or objection is: consistent with the rules and law, not interposed for an improper purpose, and not unreasonable or unduly burdensome or expensive.

Fed. R. Civ. P. 26(g)(2) (emphasis added). "[W]hat is reasonable is a matter for the court to decide on the totality of the circumstances." Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment). The Committee explained that:

> Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. This subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. The term "response" includes answers to interrogatories and to requests to admit as well as responses to production requests. [¶] If primary responsibility for conducting

-14-                                                    05cv1958-B (BLM)

1  discovery is to continue to rest with the litigants, they
2  must be obliged to act responsibly and avoid abuse. With
   this in mind, Rule 26(g), which parallels the amendments to
   Rule 11, requires an attorney ... to sign each discovery
3  request, response, or objection.

4  Id. If an attorney makes an incorrect certification without substantial

5  justification, the court must sanction the attorney, party, or both and

6  the sanction may include an award of reasonable attorney's fees. Fed.

7  R. Civ. P. 26(g)(3). If a party, without substantial justification,

8  fails "to amend a prior response to discovery as required by Rule

9  26(e)(2)," the court may prevent that party from using that evidence at

10 trial or at a hearing and impose other appropriate sanctions, including

11 the payment of attorney's fees. Fed. R. Civ. P. 37(c)(1). As the

12 Supreme Court confirmed, Rule 26(g), like Rule 11, requires that the

13 court impose "an appropriate sanction" on the attorney; in other words,

14 one which is commensurate with the discovery harm. See Fed. R. Civ. P.

15 26(g)(3); Chambers v. NASCO, Inc., 501 U.S. 32, 51 (1991).

16     In addition to this rule-based authority, federal courts have the

17 inherent power to sanction litigants to prevent abuse of the judicial

18 process. See Chambers, 501 U.S. at 44-46. All "federal courts are

19 vested with inherent powers enabling them to manage their cases and

20 courtrooms effectively and to ensure obedience to their orders... . As

21 a function of this power, courts can dismiss cases in their entirety,

22 bar witnesses, award attorney's fees and assess fines." Aloe Vera of

23 Am., Inc. v. United States, 376 F.3d 960, 964-65 (9th Cir. 2004)

24 (citation omitted). Sanctions are appropriate in response to "willful

25 disobedience of a court order ... or when the losing party has acted in

26 bad faith, vexatiously, wantonly, or for oppressive reasons." Fink v.

27 Gomez, 239 F.3d 989, 991 (9th Cir. 2001). When a court order is

28 violated, a district court considering the imposition of sanctions must

also examine the risk of prejudice to the complying party and the availability of less drastic sanctions. See Commodity Futures Trading Comm'n v. Noble Metals, 67 F.3d 766, 771 (9th Cir. 1995).

Regardless of whether sanctions are imposed under the Federal Rules or pursuant to a court's inherent power, the decision to impose sanctions lies within the sound discretion of the court. See Lasar v. Ford Motor Co., 399 F.3d 1101, 1109-14 (9th Cir. 2005) (reviewing sanctions imposed under the court's inherent power); Payne v. Exxon Corp., 121 F.3d 503, 510 (9th Cir. 1997) (upholding sanctions imposed under the Federal Rules).

**B.   Broadcom Did Not File a Motion to Compel Discovery**

As summarized above, Broadcom served interrogatories and requested documents relating to Qualcomm's participation in the JVT. Qualcomm responded that "Qualcomm will produce non-privileged relevant and responsive documents describing QUALCOMM's participation in the JVT, if any, which can be located after a reasonable search." Doc. No. 543-3, Ex. X (Qualcomm's Response to Broadcom's Request for Production No. 93). Qualcomm also committed to producing "responsive non-privileged documents that were given to or received from standards-setting body responsible for the [H.264] standard, and which concern any Qualcomm participation in setting the [H.264] standard." Mammen Decl. at 7-8.

Despite these responses, Qualcomm did not produce over 46,000 responsive documents, many of which directly contradict the non-participation argument that Qualcomm repeatedly made to the court and jury. Because Qualcomm agreed to produce the documents and answered the interrogatories (even though falsely), Broadcom had no reason to file

///

///

a motion to compel.[4]   And, because Broadcom did not file a motion to compel, Broadcom's possible remedies are restricted.   If Broadcom had filed a motion to compel, it could have obtained sanctions against Qualcomm and its attorneys.   Fed. R. Civ. P. 37(a) & (b).   Because Broadcom did not file a motion to compel, it may only seek Rule 37 sanctions against Qualcomm.   Fed. R. Civ. P. 37(c).   Thus, Qualcomm's suppression of documents placed its retained attorneys in a better legal position than they would have been in if Qualcomm had refused to produce the documents and Broadcom had filed a motion to compel.

This dilemma highlights another problem with Qualcomm's conduct in this case.   The Federal Rules of Civil Procedure require parties to respond to discovery in good faith; the rules do not require or anticipate judicial involvement unless or until an actual dispute is discovered.   As the Advisory Committee explained, "[i]f primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse."   Fed. R. Civ. P. 26(g) Advisory Committee Notes (1983 Amendment).   The Committee's concerns are heightened in this age of electronic discovery when attorneys may not physically touch and read every document within the client's custody and control.   For the current "good faith" discovery system to function in the electronic age, attorneys and

---

[4]   Qualcomm attempts to capitalize on this failure, arguing "Broadcom never raised any concern regarding the scope of documents Qualcomm agreed to produce in response to Request No. 50, and never filed a motion to compel concerning this request. Accordingly, there is no order compelling Qualcomm to respond more fully to it." Mammen Decl. at 9.  Qualcomm made the same argument with regard to its other discovery responses.  Id. at 9-11; see also Bier Decl., Ex. C.  This argument is indicative of the gamesmanship Qualcomm engaged in throughout this litigation.  Why should Broadcom file a motion to compel when Qualcomm agreed to produce the documents?  What would the court have compelled: Qualcomm to do what it already said it would do?  Should all parties file motions to compel to preserve their rights in case the other side hides documents?

clients must work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review, and produce responsive documents. Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search. Producing 1.2 million pages of marginally relevant documents while hiding 46,000 critically important ones does not constitute good faith and does not satisfy either the client's or attorney's discovery obligations. Similarly, agreeing to produce certain categories of documents and then not producing all of the documents that fit within such a category is unacceptable. Qualcomm's conduct warrants sanctions.

## C.   **Sanctions**

The Court's review of Qualcomm's declarations, the attorneys' declarations, and Judge Brewster's orders leads this Court to the inevitable conclusion that Qualcomm intentionally withheld tens of thousands of decisive documents from its opponent in an effort to win this case and gain a strategic business advantage over Broadcom. Qualcomm could not have achieved this goal without some type of assistance or deliberate ignorance from its retained attorneys. Accordingly, the Court concludes it must sanction both Qualcomm and some of its retained attorneys.[5]

---

[5]   The Court is limited in its review and analysis of the debacle that occurred in this litigation because Judge Brewster only referred the discovery violation to this Court. Doc. No. 494 ("Dft's Oral Motion [489] for Sanctions re Production of Documents re Witness Viji Raveendran – made and submitted on 01-24-07 – Referred to the Magistrate Judge"). Judge Brewster did not refer any sanction motions relating to false statements made to the trial judge or in pleadings resolved by the trial judge. Id. Accordingly, this Court is limited in its review, analysis, and conclusion to discovery violations and applicable discovery rules and remedies. See Fed. R. Civ. P. 11(d) (Rule 11 does "not apply to disclosures and discovery requests, responses, objections, and motions").

### 1.   <u>**Misconduct by Qualcomm**</u>

Qualcomm violated its discovery obligations by failing to produce more than 46,000 emails and documents that were requested in discovery and that Qualcomm agreed to produce.  <u>See</u> Fed. R. Civ. P. 26(g) Advisory Committee Notes (1983 Amendment) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37).  Rule 37 dictates that "[a] party that without substantial justification fails to ... amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use" the suppressed evidence in court proceedings.  Fed. R. Civ. P. 37(c)(1).  The court also may impose other appropriate sanctions, including the imposition of reasonable attorneys' fees.  <u>Id.</u>

Qualcomm has not established "substantial justification" for its failure to produce the documents.  In fact, Qualcomm has not presented **_any_** evidence attempting to explain or justify its failure to produce the documents.  Despite the fact that it maintains detailed records showing whose computers were searched and which search terms were used (Glathe Decl. at 3 (identifying the individuals whose computers were not searched for specific types of documents)), Qualcomm has not presented any evidence establishing that it searched for pre-September 2003 JVT, avc_ce, or H.264 records or emails on its computer system or email databases.  Qualcomm also has not established that it searched the computers or email databases of the individuals who testified on Qualcomm's behalf at trial or in depositions as Qualcomm's most knowledgeable corporate witnesses; in fact, it indicates that it did not conduct any such search.  <u>Id.</u>; Irvine Decl. at 2; Ludwin Decl. at 3; Decl. of Viji Raveendran at 1, 4.  The fact that Qualcomm did not

1   perform these basic searches at any time before the completion of trial

2   indicates that Qualcomm intentionally withheld the documents.   This

3   conclusion is bolstered by the fact that when Qualcomm "discovered" the

4   21 Raveendran emails, it did not produce them and did not engage in any

5   type of review to determine whether there were additional relevant,

6   responsive, and unproduced documents. Bier Decl. at 7; Mammen Decl. at

7   16-18; Patch Decl. at 5-7.   The conclusion is further supported by the

8   fact that after trial Qualcomm did not conduct an internal investigation

9   to determine if there were additional unproduced documents (Bier Decl.,

10  Ex. E (Qualcomm still had not searched as of March 7, 2007)); but,

11  rather, spent its time opposing Broadcom's efforts to force such a

12  search and insisting, without any factual basis, that Qualcomm's search

13  was reasonable.   Id. at 10-11, Exs. B-F; Patch Decl. at 11-14.

14      Qualcomm's claim that it inadvertently failed to find and produce

15  these documents also is negated by the massive volume and direct

16  relevance of the hidden documents.   As Judge Brewster noted, it is

17  inexplicable that Qualcomm was able to locate the post-September 2003

18  JVT documents that either supported, or did not harm, Qualcomm's

19  arguments but were unable to locate the pre-September 2003 JVT documents

20  that hurt its arguments.   Waiver Order at 38.   Similarly, the

21  inadvertence argument is undercut by Qualcomm's ability to easily locate

22  the suppressed documents using fundamental JVT and avc search terms when

23  forced to do so by Broadcom's threat to return to court.   See October

24  12, 2007 Hearing Transcript at 192.   Finally, the inadvertence argument

25  also is belied by the number of Qualcomm employees and consultants who

26  received the emails, attended the JVT meetings, and otherwise knew about

27  the information set forth in the undisclosed emails.   Waiver Order at

28  10-12, 21-32.   It is inconceivable that Qualcomm was unaware of its

involvement in the JVT and of the existence of these documents.

Assuming *arguendo*, that Qualcomm did not know about the suppressed emails, Qualcomm failed to heed several warning signs that should have alerted it to the fact that its document search and production were inadequate.  The first significant concern should have been raised in connection with the Rule 30(b)(6) depositions of Christine Irvine and Scott Ludwin.  Both individuals testified as the Qualcomm employee most knowledgeable about Qualcomm's involvement in the JVT.  But, Qualcomm did not search either person's computer for JVT documents, did not provide either person with relevant JVT documents to review, and did not make any other efforts to ensure each person was in fact knowledgeable about Qualcomm's JVT involvement.  Irvine Decl. at 2; Ludwin Decl. at 3; Glathe Decl. at 3.  These omissions are especially incriminating because many of the suppressed emails were to or from Irvine.  Waiver Order at 10-12, 25-26.  If a witness is testifying as an organization's most knowledgeable person on a specific subject, the organization has an obligation to conduct a reasonable investigation and review to ensure that the witness does possess the organization's knowledge.[6]  Fed. R. Civ. P. 30(b)(6); In re JDS Uniphase Corp. Sec. Litig., 2007 WL 219857, *1 (N.D. Cal. 2007) (the corporation "must prepare the designee to the

---

[6]   Qualcomm's self-serving statements that "outside counsel selects ... the custodians whose documents should be searched" and the paralegal does not decide "what witnesses to designate to testify on behalf of the company" (Glathe Decl. at 1) does not relieve Qualcomm of its obligations.  Qualcomm has not presented any evidence establishing what actions, if any, it took to ensure it designated the correct employee, performed the correct computer searches, and presented the designated employee with sufficient information to testify as the corporation's most knowledgeable person.  Qualcomm also has not presented any evidence that outside counsel knew enough about Qualcomm's organization and operation to identify all of the individuals whose computers should be searched and determine the most knowledgeable witness.  And, more importantly, Qualcomm is a large corporation with an extensive legal staff; it clearly had the ability to identify the correct witnesses and determine the correct computers to search and search terms to use.  Qualcomm just lacked the desire to do so.

extent matters are reasonably available, whether from documents, past
employees, or other sources") (internal citation omitted); 1 Discovery
Proceedings in Federal Court § 8.6 (3rd ed. 2007) ("[a] party responding
to a request for a deposition of a corporate representative to testify
on behalf of the corporation must make a good-faith endeavor to
designate the persons having knowledge of the matters sought by the
interrogator and to prepare those persons in order that they can answer
fully, completely, and unevasively, the questions posed by the
interrogator as to the relevant subject matters"). An adequate
investigation should include an analysis of the sufficiency of the
document search and, when electronic documents are involved, an analysis
of the sufficiency of the search terms and locations. In the instant
case, a reasonable inquiry should have included using the JVT, avc and
H.264 search terms and searching the computers of Raveendran, Irvine,
Ludwin (and other Qualcomm employees identified in the emails discovered
on the computers of these witnesses). This minimal inquiry would have
revealed the existence of the suppressed documents. Moreover, the fact
that Broadcom alleged, and Qualcomm agreed or acquiesced, that Irvine
was not sufficiently knowledgeable about Qualcomm's JVT involvement or
adequately prepared for her deposition, should also have alerted
Qualcomm to the inadequacy of its document search and production.

Another ignored warning flag was the December 2002 avc_ce email
reflector containing Raveendran's email address. Broadcom utilized this
document in several ways to argue that Qualcomm was involved in the JVT
prior to September 2003. Patch Decl. at 19-20 (document was shown to
Ludwin during his deposition); Leung Decl. at 8; Robertson Decl. at 14
(document attached to Broadcom's opposition to Qualcomm's MSA). Even
though this document indicated that in December 2002, a Qualcomm

employee was a member of the avc_ce email group, which related to the JVT and the development of the H.264 standard, there is no evidence that its presence triggered a search by Qualcomm for "avc_ce," "JVT," or any other relevant term on Raveendran's computer or any other Qualcomm database.  Again, if Qualcomm had performed this search, it would have located the suppressed emails.  The fact that Qualcomm chose not to investigate this document supports the conclusion that Qualcomm intentionally withheld the 46,000 emails.  This conclusion is reinforced by the fact that, without any investigation, Qualcomm repeatedly tried to discredit the document and Broadcom's reliance on it.  Waiver Order at 45; Young Decl. at 25-29.

Qualcomm had the ability to identify its employees and consultants who were involved in the JVT, to access and review their computers, databases and emails, to talk with the involved employees and to refresh their recollections if necessary, to ensure that those testifying about the corporation's knowledge were sufficiently prepared and testified accurately, and to produce in good faith all relevant and requested discovery.  See Nat'l Assoc. of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987) (holding in case where sanctions imposed for withholding of documents that "a reasonable inquiry into the factual basis of its discovery responses as well as the factual basis of subsequent pleadings, papers, and motions based on those responses ... would have required, at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the defendant potentially possessing responsive information, and to account for the collection and subsequent production of the information").  Qualcomm chose not to do so and therefore must be sanctioned.  ///

### 2.   **Attorneys' Misconduct**

The next question is what, if any, role did Qualcomm's retained lawyers play in withholding the documents?   The Court envisions four scenarios.   First, Qualcomm intentionally hid the documents from its retained lawyers and did so so effectively that the lawyers did not know or suspect that the suppressed documents existed.   Second, the retained lawyers failed to discover the intentionally hidden documents or suspect their existence due to their complete ineptitude and disorganization. Third, Qualcomm shared the damaging documents with its retained lawyers (or at least some of them) and the knowledgeable lawyers worked with Qualcomm to hide the documents and all evidence of Qualcomm's early involvement in the JVT.   Or, fourth, while Qualcomm did not tell the retained lawyers about the damaging documents and evidence, the lawyers suspected there was additional evidence or information but chose to ignore the evidence and warning signs and accept Qualcomm's incredible assertions regarding the adequacy of the document search and witness investigation.

Given the impressive education and extensive experience of Qualcomm's retained lawyers (see exhibit A[7]), the Court rejects the first and second possibilities.   It is inconceivable that these talented, well-educated, and experienced lawyers failed to discover through their interactions with Qualcomm any facts or issues that caused (or should have caused) them to question the sufficiency of Qualcomm's

---

[7]     Additional information regarding each attorney's role and involvement in this litigation is set forth in his or her declaration and summarized in Exhibit A to this Order. To address the attorneys' Due Process concerns arising from Qualcomm's self-serving and misleading declarations (Doc. No. 704), the Court will not consider the Qualcomm declarations (Glathe, Raveendran, Irvine and Ludwin) in evaluating the conduct of Qualcomm's retained counsel.

document search and production.   Qualcomm did not fail to produce a
document or two; it withheld over 46,000 critical documents that
extinguished Qualcomm's primary argument of non-participation in the
JVT.   In addition, the suppressed documents did not belong to one
employee, or a couple of employees who had since left the company; they
belonged to (or were shared with) numerous, current Qualcomm employees,
several of whom testified (falsely) at trial and in depositions.  Given
the volume and importance of the withheld documents, the number of
involved Qualcomm employees, and the numerous warning flags, the Court
finds it unbelievable that the retained attorneys did not know or
suspect that Qualcomm had not conducted an adequate search for
documents.

    The Court finds no direct evidence establishing option three.
Neither party nor the attorneys have presented evidence that Qualcomm
told one or more of its retained attorneys about the damaging emails or
that an attorney learned about the emails and that the knowledgeable
attorney(s) then helped Qualcomm hide the emails.   While knowledge may
be inferred from the attorneys' conduct, evidence on this issue is
limited due to Qualcomm's assertion of the attorney-client privilege.[8]

---

[8]      Qualcomm asserted the attorney-client privilege and decreed that its
retained attorneys could not reveal any communications protected by the privilege.
Doc. No. 659; October 12, 2007 Hearing Transcript at 38.  Several attorneys complained
that the assertion of the privilege prevented them from providing additional
information regarding their conduct.  See, e.g., Young Decl. at 12; Leung Decl. at 3-5;
Robertson Decl. at 14-16.   This concern was heightened when Qualcomm submitted its
self-serving declarations describing the failings of its retained lawyers.  Doc. No.
704. Recognizing that a client has a right to maintain this privilege and that no
adverse inference should be made based upon the assertion, the Court accepted
Qualcomm's assertion of the privilege and has not drawn any adverse inferences from it.
October 12, 2007 Hearing Transcript at 4-5.  However, the fact remains that the Court
does not have access to all of the information necessary to reach an informed decision
regarding the actual knowledge of the attorneys.  As a result, the Court concludes for
purposes of this Order that there is insufficient evidence establishing option three.

Thus, the Court finds it likely that some variation of option four occurred; that is, one or more of the retained lawyers chose not to look in the correct locations for the correct documents, to accept the unsubstantiated assurances of an important client that its search was sufficient, to ignore the warning signs that the document search and production were inadequate, not to press Qualcomm employees for the truth, and/or to encourage employees to provide the information (or lack of information) that Qualcomm needed to assert its non-participation argument and to succeed in this lawsuit. These choices enabled Qualcomm to withhold hundreds of thousands of pages of relevant discovery and to assert numerous false and misleading arguments to the court and jury. This conduct warrants the imposition of sanctions.[9]

### a. **Identity of Sanctioned Attorneys**

The Court finds that each of the following attorneys contributed to Qualcomm's monumental discovery violation and is personally

---

[9] The applicable discovery rules do not adequately address the attorneys' misconduct in this case. Rule 26(g) only imposes liability upon the attorney who signed the discovery request or response. Fed. R. Civ. P. 26(g). Similarly, Rule 37(a) authorizes sanctions against a party or attorney only if a motion to compel is filed; Rule 37(b) authorizes sanctions against a party or an attorney if the party fails to comply with a discovery order; and, Rule 37(c) only imposes liability upon a party for the party's failure to comply with various discovery obligations. Fed. R. Civ. P. 37. Under a strict interpretation of these rules, the only attorney who would be responsible for the discovery failure is Kevin Leung because he signed the false discovery responses. Doc. No. 543-3, Exs. W, X & Y; Robertson Decl., Ex. 2. However, the Court believes the federal rules impose a duty of good faith and reasonable inquiry on all attorneys involved in litigation who rely on discovery responses executed by another attorney. See Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment) (Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37); Fed. R. Civ. P. 11 (by signing, filing, submitting or advocating a pleading, an attorney is certifying that the allegations have factual, evidentiary support). Attorneys may not utilize inadequate or misleading discovery responses to present false and unsupported legal arguments and sanctions are warranted for those who do so. Id. The facts of this case also justify the imposition of sanctions against these attorneys pursuant to the Court's inherent power. See, Fink, 239 F.3d at 993-94 ("an attorney's reckless misstatements of law and fact, when coupled with an improper purpose ... are sanctionable under a court's inherent power").

1  responsible:   James Batchelder, Adam Bier, Kevin Leung, Christopher

2  Mammen, Lee Patch, and Stanley Young ("Sanctioned Attorneys").

3       Attorneys Leung, Mammen and Batchelder are responsible for the

4  initial discovery failure because they handled or supervised Qualcomm's

5  discovery responses and production of documents.   The Federal Rules

6  impose an affirmative duty upon lawyers to engage in discovery in a

7  responsible manner and to conduct a "reasonable inquiry" to determine

8  whether discovery responses are sufficient and proper.   Fed. R. Civ. P.

9  26(g); Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment).

10 In the instant case, a reasonable inquiry should have included searches

11 using fundamental terms such as JVT, avc_ce or H.264, on the computers

12 belonging to knowledgeable people such as Raveendran, Irvine and Ludwin.

13 As the post-trial investigation confirmed, such a reasonable search

14 would have revealed the suppressed documents.   Had Leung, Mammen,

15 Batchelder, or any of the other attorneys insisted on reviewing

16 Qualcomm's records regarding the locations searched and terms utilized,

17 they would have discovered the inadequacy of the search and the

18 suppressed documents.[10]  Similarly, Leung's difficulties with the Rule

19 _____

20      [10]   Leung's attorney represented during the OSC hearing that Leung requested
   a more thorough document search but that Qualcomm refused to do so.   October 12, 2007
21 Hearing Transcript at 14-15.   If Leung was unable to get Qualcomm to conduct the type
   of search he deemed necessary to verify the adequacy of the document search and
22 production, then he should have obtained the assistance of supervising or senior
   attorneys.   If Mammen and Batchelder were unable to get Qualcomm to conduct a competent
23 and thorough document search, they should have withdrawn from the case or taken other
   action to ensure production of the evidence.   See The State Bar of California, Rules
24 of Professional Conduct, Rule 5-220 (a lawyer shall not suppress evidence that the
   lawyer or the lawyer's client has a legal obligation to reveal); Rule 3-700 (a lawyer
25 shall withdraw from employment if the lawyer knows or should know that continued
   employment will result in a violation of these rules or the client insists that the
26 lawyer pursue a course of conduct prohibited under these rules).   Attorneys' ethical
   obligations do not permit them to participate in an inadequate document search and then
27 provide misleading and incomplete information to their opponents and false arguments
   to the court.   Id.; Rule 5-200 (a lawyer shall not seek to mislead the judge or jury
28 by a false statement of fact or law); see also, In re Marriage of Gong and Kwong, 157

30(b)(6) witnesses, Irvine and Ludwin, should have alerted him (and the supervising or senior attorneys) to the inadequacy of Qualcomm's document production and to the fact that they needed to review whose computers and databases had been searched and for what. Accordingly, the Court finds that the totality of the circumstances establish that Leung, Mammen and Batchelder did not make a reasonable inquiry into Qualcomm's discovery search and production and their conduct contributed to the discovery violation.

Attorneys Bier, Mammen and Patch are responsible for the discovery violation because they also did not perform a reasonable inquiry to determine whether Qualcomm had complied with its discovery obligations. When Bier reviewed the August 6, 2002 email welcoming Raveendran to the avc_ce email group, he knew or should have known that it contradicted Qualcomm's trial arguments and he had an obligation to verify that it had been produced in discovery or to immediately produce it. If Bier, as a junior lawyer, lacked the experience to recognize the significance of the document, then a more senior or knowledgeable attorney should have assisted him. To the extent that Patch was supervising Bier in this endeavor, Patch certainly knew or should have recognized the importance of the document from his involvement in Qualcomm's motion practice and trial strategy sessions.

Similarly, when Bier found the 21 emails on Raveendran's computer that had not been produced in discovery, he took the appropriate action and informed his supervisors, Mammen and Patch. Bier Decl. at 7. Patch discussed the discovery and production issue with Young and Batchelder.

Cal. App. 4th 939, 951 (1st Dist. 2007) ("[a]n attorney in a civil case is not a hired gun required to carry out every direction given by the client;" he must act like the professional he is).

Patch Decl. at 6-7.  While all of these attorneys assert that there was a plausible argument that Broadcom did not request these documents, only Bier and Mammen actually read the emails.  Patch Decl. at 6-7; Batchelder Decl. at 16.  Moreover, all of the attorneys missed the critical inquiry:  was Qualcomm's document search adequate? If these 21 emails were not discovered during Qualcomm's document search, how many more might exist?  The answer, obviously, was tens of thousands.  If Bier, Mammen, Patch, Young or Batchelder had conducted a reasonable inquiry after the discovery of the 21 Raveendran emails, they would have discovered the inadequacy of Qualcomm's search and the suppressed documents.  And, these experienced attorneys should have realized that the presence on Raveendran's computer of 21 JVT/avc_ce emails from 2002 contradicted Qualcomm's numerous arguments that it had not participated in the JVT during that same time period.  This fact, alone, should have prompted the attorneys to immediately produce the emails and to conduct a comprehensive document search.

Finally, attorneys Young, Patch, and Batchelder bear responsibility for the discovery failure because they did not conduct a reasonable inquiry into Qualcomm's discovery production before making specific factual and legal arguments to the court.  Young decided that Qualcomm should file a motion for summary adjudication premised on the fact that Qualcomm had not participated in the JVT until after the H.264 standard was adopted in May 2003.  Given that non-participation was vital to the motion, Young had a duty to conduct a reasonable inquiry into whether that fact was true.  And, again, had Young conducted such a search, he would have discovered the inadequacy of Qualcomm's document search and production and learned that his argument was false.  Similarly, Young had a duty to conduct a reasonable inquiry into the accuracy of his

statement before affirmatively telling the court that no emails were sent to Raveendran from the avc_ce email group.[11]  Young also did not conduct a reasonable (or any) inquiry during the following days before he approved the factually incorrect JMOL.[12]  A reasonable investigation would have prevented the false filing.

Patch was an integral part of the trial team-familiar with Qualcomm's arguments, theories and strategies.  He knew on January 14th that 21 avc_ce emails had been discovered on Raveendran's computer.  Without reading or reviewing the emails, Patch participated in the decision not to produce them.  Several days later, Patch carefully tailored his questions to ensure that Raveendran did not testify about the unproduced emails.  And, after Broadcom stumbled into the email testimony, Patch affirmatively misled the Court by claiming that he did not know whether the emails were responsive to Broadcom's discovery requests.  This conduct is unacceptable and, considering the totality of the circumstances, it is unrealistic to think that Patch did not know or believe that Qualcomm's document search was inadequate and that Qualcomm possessed numerous, similar and unproduced documents.

---

[11]     Patch claims that he told Young about the 21 Raveendran emails, but Young denies it.  Under either scenario, however, Young had a duty to conduct a reasonable investigation before making that affirmative statement to the court.  Sadly, Young did not conduct any investigation; he merely assumed that others had conducted an adequate investigation.

[12]     While the Court recognizes that the Day Casebeer attorneys were primarily responsible for discovery in this case, the Heller Ehrman attorneys took on the task of preparing witnesses and briefing regarding the JVT and, thus, were in a position to evaluate during this process whether the underlying discovery upon which they relied was adequate.  Young, unlike Venkatesan and Robertson, was the primary liaison with Day Casebeer and also was privy to the evolving theories of the case.  As such, he was made aware of some of the red flags such as the discovery of the JVT emails on Raveendran's computer and was in the best position both to understand their significance and to communicate any concerns to the Day Casebeer attorneys or Qualcomm in-house counsel.

1   Batchelder also is responsible because he was the lead trial

2   attorney and, as such, he was most familiar with Qualcomm's important

3   arguments and witnesses.  Batchelder stated in his opening statement

4   that Qualcomm had not participated in the JVT before late 2003.  Despite

5   this statement and his complete knowledge of Qualcomm's legal theories,

6   Batchelder did not take any action when he was informed that JVT

7   documents that Qualcomm had not produced in discovery were found on

8   Raveendran's computer.  He did not read the emails, ask about their

9   substance, nor inquire as to why they were not located during discovery.

10  And, he stood mute when four days later, Young falsely stated that no

11  emails had been sent to Raveendran from the avc_ce email group.

12  Finally, all of the pleadings containing the lie that Qualcomm had not

13  participated in the JVT in 2002 or early 2003 were sent to Batchelder

14  for review and he approved or ignored all of them.[13]  The totality of

15  the circumstances, including all of the previously-discussed warning

16  signs, demanded that Batchelder conduct an investigation to verify the

17  adequacy of Qualcomm's document search and production.  His failure to

18  do so enabled Qualcomm to withhold the documents.

19      For all of these reasons, the Court finds that these attorneys did

20  not conduct a reasonable inquiry into the adequacy of Qualcomm's

21  document search and production and, accordingly, they are responsible,

22  along with Qualcomm, for the monumental discovery violation.

23  ///

24  ///

25

26  _____

27      [13]   Several declarations state or imply that senior lawyers failed to review
    or comment on pleadings prepared by junior lawyers and sent to them prior to filing.
    If this is true, it constitutes additional evidence that the senior lawyers turned a
28  blind eye to Qualcomm's discovery failures.

### b.   <u>Identity of Non-Sanctioned Attorneys</u>

Based upon the Court's review of the submitted declarations (see Exhibit A), the Court finds that the following attorneys do not bear any individual responsibility for the discovery violation and, on that basis, declines to sanction them:  Ruchika Agrawal, Howard Loo, William Nelson, Ryan Scher, Bradley Waugh, David Kleinfeld, Barry Tucker, Heidi Gutierrez, Victoria Smith, Roy Zemlicka, Craig Casebeer, Jaideep Venkatesan, and Kyle Robertson.

The Court declines to sanction attorneys Agrawal, Loo, Nelson, Scher, Waugh and Guiterrez because they did not significantly participate in the preparation or prosecution of the instant case or primarily participated in aspects of the case unrelated to those at issue in this Order and Judge Brewster's Waiver Order and Exceptional Case Order.  <u>See</u> Exhibit A.

The Court also declines to sanction Heller Ehrman attorneys Kleinfeld and Tucker.  These attorneys primarily monitored the instant case for its impact on separate Qualcomm/Broadcom litigation.  However, for logistical reasons, both attorneys signed as local counsel pleadings that contained false statements relating to Qulacomm's non-participation in the JVT.  Given the facts of this case as set forth above and in the declarations, the limitations provided by the referral, and the totality of the circumstances, the Court finds that it was reasonable for these attorneys to sign the pleadings, relying on the work of other attorneys more actively involved in the litigation.[14]

---

[14]   The Court is declining to sanction these attorneys for their role in signing and filing false pleadings, but the Court notes that sanctioning local counsel for such conduct is possible and may be imposed in another case under different circumstances.  Attorneys must remember that they are required to conduct a reasonable inquiry into the accuracy of the pleadings prior to signing, filing or arguing them.

While a closer call, the Court also declines to sanction Day Casebeer attorneys Casebeer, Smith and Zemlicka. Unlike the Sanctioned Attorneys, Casebeer did not begin working on this case until after discovery had closed and he did not learn about the Raveendran emails until after she testified at trial. Thus, he would not have been privy to any of the red flags, which should have alerted the Sanctioned Attorneys to the fact that significant discovery gaps existed and further investigation was necessary.

Smith and Zemlicka prepared and signed pleadings containing false statements about Qualcomm's non-participation in the JVT. While they did more substantive work on the false motions than Kleinfeld and Tucker, all four relied on work conducted by other lawyers who were more involved in the discovery and litigation. In addition, Smith and Zemlicka worked under the direction of Casebeer who told them to rely on and conform the motion to the discussion of facts set forth in Qualcomm's MSA.[15] Although the Court questions the reasonableness of the attorneys' decision to rely on the MSA without conducting any independent investigation under the facts of this case, the Court concludes that the totality of the circumstances do not justify

---

Fed. R. Civ. P. 11. While it may be reasonable for attorneys to rely on the work conducted by other attorneys (<u>Townsend v. Holman Consulting Corp.</u>, 929 F.2d 1358, 1364 (9th Cir. 1990)(*en banc*)(describing various applications of the "reasonableness" inquiry)), that determination is dependent on the circumstances of each case.

[15]   The Court notes that Casebeer stated that "[i]t was not then, or now, my practice to independently confirm factual representations that had previously been made to a court by colleagues working on a case, where I had no reason to question the accuracy of such representations." Casebeer Decl. at 5. It is the last phrase that the Court considers critical. As discussed in previous sections, the fault that the Court finds throughout this case was the failure of Qualcomm and many of its attorneys to realize (or take appropriate action based upon the realization) that there **was** a reason (actually several reasons) to question the accuracy of the representations and the adequacy of the discovery search and production.

sanctioning Zemlicka or Smith.  This conclusion is bolstered by the fact that the pleadings were reviewed and approved by attorneys with more litigation experience and more familiarity with this case.

For similar reasons, the Court finds it inappropriate to individually sanction Heller Ehrman attorneys Kyle Robertson and Jaideep Venkatesan.  These attorneys, working for Stanley Young, began work on JVT-related issues in August 2006.  Robertson, under the supervision of Venkatesan, made significant efforts to confirm the accuracy of the facts upon which he relied in drafting various pleadings, including: (1) reviewing numerous deposition transcripts and discovery responses, (2) circulating drafts of all pleadings he prepared to more senior outside and inside counsel with the expectation that they would inform him of any factual inaccuracies, and (3) upon learning from Broadcom's opposition to the MSA of the December 2002 report listing Raveendran's email address, searching the JVT website for information about the Ad-Hoc Group email list, contacting numerous Day Casebeer and Heller Ehrman attorneys for more information, and finally calling Raveendran at home. The Court again finds it troubling that these attorneys failed to investigate the adequacy of Qualcomm's document search and production before filing the pleadings but, given the totality of the circumstances, the Court declines to sanction Robertson and Venkatesan.

**3.   <u>Imposed Sanctions</u>**

As set forth above, the evidence establishes that Qualcomm intentionally withheld tens of thousands of emails and that the Sanctioned Attorneys assisted, either intentionally or by virtue of acting with reckless disregard for their discovery obligations, in this discovery violation.  The remaining issue, then, is what are the appropriate sanctions.

### a. **Monetary Sanctions Against Qualcomm**

In its sanction motion, Broadcom requested that this Court order Qualcomm to (1) reimburse Broadcom for its attorneys' and experts' fees incurred in litigating this case, to the extent not already awarded pursuant to the Exceptional Case Order, (2) pay a substantial fine to the Court, (3) implement a discovery compliance program to prevent Qualcomm's future litigation misconduct, and (4) identify all false statements and arguments.  Doc. No. 540 at 2, 14.  Broadcom also requested an opportunity to conduct additional discovery regarding Qualcomm's discovery violations.  Id.  Because Broadcom prevailed at trial and in post-trial hearings, despite the suppressed evidence, and because the case is on appeal, oversight sanctions such as monitoring Qualcomm's discovery efforts, or identifying false testimony and arguments are not appropriate.   Monetary sanctions, however, are appropriate.

The suppressed emails directly rebutted Qualcomm's argument that it had not participated in the JVT during the time the H.264 standard was being developed.  As such, their absence was critical to Qualcomm's hope and intent of enforcing its patents against Broadcom (as well as presumably all other cellular companies utilizing the H.264 technology in their products).  Because Broadcom prevailed at trial and in the post-trial hearings despite the suppressed evidence, it is reasonable to infer that had Qualcomm intended to produce the 46,000 incriminating emails (and thereby acknowledge its early involvement in the JVT and its accompanying need to disclose its intellectual property), the instant

case may never have been filed.[16]  Even if Qualcomm did file this case, the hidden evidence would have dramatically undermined Qualcomm's arguments and likely resulted in an adverse pretrial adjudication, much as it caused the adverse post-trial rulings.  <u>See</u> Waiver Order; Exceptional Case Order.  Accordingly, Qualcomm's failure to produce the massive number of critical documents at issue in this case significantly increased the scope, complexity and length of the litigation and justifies a significant monetary award.  <u>See</u>, Fed. R. Civ. P. 26(g)(3) & 37(c).

The Court therefore awards Broadcom all of its attorneys' fees and costs incurred in the instant litigation.  Because Judge Brewster already has awarded these costs and fees to Broadcom in the Exceptional Case Order and a double recovery would be improper, this Court directs that Qualcomm receive credit toward this penalty for any money it pays to Broadcom to satisfy the exceptional case award.  Accordingly, for its monumental and intentional discovery violation, Qualcomm is ordered to pay $8,568,633.24 to Broadcom; this figure will be reduced by the amount actually paid by Qualcomm to Broadcom to satisfy the exceptional case award.[17]

///

///

---

[16]   Qualcomm argues that while it was aware of the H.264 standard and its application to the instant litigation, it was not aware of the issue that if it had participated in the JVT's development of the H.264 standard, it could not have enforced its H.264 patents until Broadcom raised this issue as an affirmative defense.  Mammen Decl. at 11-12.  This argument strains credulity as the potential defense screams for consideration prior to filing this suit.

[17]   Because the attorneys' fees sanction is so large, the Court declines to fine Qualcomm.  If the imposition of an $8.5 million dollar sanction does not change Qualcomm's conduct, the Court doubts that an additional fine would do so.

### b.   **Referral to the California State Bar**

As set forth above, the Sanctioned Attorneys assisted Qualcomm in committing this incredible discovery violation by intentionally hiding or recklessly ignoring relevant documents, ignoring or rejecting numerous warning signs that Qualcomm's document search was inadequate, and blindly accepting Qualcomm's unsupported assurances that its document search was adequate.  The Sanctioned Attorneys then used the lack of evidence to repeatedly and forcefully make false statements and arguments to the court and jury.  As such, the Sanctioned Attorneys violated their discovery obligations and also may have violated their ethical duties.  See e.g., The State Bar of California, Rules of Professional Conduct, Rule 5-200 (a lawyer shall not seek to mislead the judge or jury by a false statement of fact or law), Rule 5-220 (a lawyer shall not suppress evidence that the lawyer or the lawyer's client has a legal obligation to reveal or to produce).  To address the potential ethical violations, the Court refers the Sanctioned Attorneys to The State Bar of California for an appropriate investigation and possible imposition of sanctions.[18]  Within ten days of the date of this Order, each of the Sanctioned Attorneys must forward a copy of this Order and Judge Brewster's Waiver Order to the Intake Unit, The State Bar of California, 1149 South Hill Street, Los Angeles, California 90015 for

---

[18]   Monetary sanctions would be appropriate to address the discovery violations.  However, the Court declines to impose monetary sanctions against the Sanctioned Attorneys for several reasons.  First, if the imposed sanctions do not convince the attorneys to behave in a more ethical and professional manner in the future, monetary sanctions are unlikely to do so.  Second, it is possible that Qualcomm will seek contribution from its retained attorneys after it pays Broadcom's attorneys' fees and costs and, in light of that significant monetary sanction, an additional fine is unlikely to affect counsel's future behavior.  Third, the Court acknowledges the limitations on its authority (see sections A and B and footnotes 5 and 9) and, based on those concerns, declines to impose significant monetary sanctions.

1  appropriate investigation.

2                  **c.**   **Case Review and Enforcement of Discovery Obligations**

3        The Court also orders Qualcomm and the Sanctioned Attorneys to

4  participate in a comprehensive Case Review and Enforcement of Discovery

5  Obligations ("CREDO") program.  This is a collaborative process to

6  identify the failures in the case management and discovery protocol

7  utilized by Qualcomm and its in-house and retained attorneys in this

8  case, to craft alternatives that will prevent such failures in the

9  future, to evaluate and test the alternatives, and ultimately, to create

10 a case management protocol which will serve as a model for the future.

11       Because they reviewed and approved the false pleadings, the Court

12 designates the following Qualcomm attorneys to participate in this

13 process as Qualcomm's representatives:  Alex Rogers, Roger Martin,

14 William Sailer, Byron Yafuso, and Michael Hartogs (the "Named Qualcomm

15 Attorneys").[19]  Qualcomm employees were integral participants in hiding

16 documents and making false statements to the court and jury.  Qualcomm's

17 in-house lawyers were in the unique position of (a) having unlimited

18 access to all Qualcomm employees, as well as the emails and documents

19 maintained, possessed and used by them, (b) knowing or being able to

20 determine all of the computers and databases that were searched and the

21 search terms that were utilized, and (c) having the ability to review

22 all of the pleadings filed on Qualcomm's behalf which did (or should

23 have) alerted them to the fact that either the document search was

24

25 _____

26      [19]    Qualcomm chose not to provide any information to the Court regarding the actions of Qualcomm's counsel or employees so the Court must rely on the retained attorneys' statements that these attorneys were involved in the case.  Robertson Decl.

27 at 13, 22; Venkatesan Decl. at 14; Young Decl. at 18, 21, 35.  Qualcomm's General Counsel at the time, Lou Lupin, is not included in this list since he has resigned from

28 the company.  October 12, 2007 Hearing Transcript at 108, 198.

inadequate or they were knowingly not producing tens of thousands of relevant and requested documents. Accordingly, Qualcomm's in-house lawyers need to be involved in this process.

At a minimum, the CREDO protocol must include a **detailed analysis** (1) identifying the factors [20] that contributed to the discovery violation (e.g., insufficient communication (including between client and retained counsel, among retained lawyers and law firms, and between junior lawyers conducting discovery and senior lawyers asserting legal arguments); inadequate case management (within Qualcomm, between Qualcomm and the retained lawyers, and by the retained lawyers); inadequate discovery plans (within Qualcomm and between Qualcomm and its retained attorneys); etc.), (2) creating and evaluating proposals, procedures, and processes that will correct the deficiencies identified in subsection (1), (3) developing and finalizing a comprehensive protocol that will prevent future discovery violations (e.g., determining the depth and breadth of case management and discovery plans that should be adopted; identifying by experience or authority the attorney from the retained counsel's office who should interface with the corporate counsel and on which issues; describing the frequency the attorneys should meet and whether other individuals should participate in the communications; identifying who should participate in the development of the case management and discovery plans; describing and evaluating various methods of resolving conflicts and disputes between the client and retained counsel, especially relating to the adequacy of

---

[20]     In the CREDO program, the Court does not seek the identities of individuals who contributed to the discovery failure, nor the content of communications between or among counsel and client so this program does not implicate the attorney-client privilege.

1  discovery  searches;  describing  the  type,  nature,  frequency,  and

2  participants in case management and discovery meetings; and, suggesting

3  required  ethical  and  discovery  training;  etc.),  (4)  applying  the

4  protocol  that  was  developed  in  subsection  (3)  to  other  factual

5  situations,  such  as  when  the  client  does  not  have  corporate  counsel,

6  when  the  client  has  a  single  in-house  lawyer,  when  the  client  has  a

7  large  legal  staff,  and  when  there  are  two  law  firms  representing  one

8  client,  (5) identifying and evaluating data tracking systems, software,

9  or  procedures  that  corporations  could  implement  to  better  enable  inside

10  and  outside  counsel  to  identify  potential  sources  of  discoverable

11  documents  (e.g.  the  correct  databases,  archives,  etc.),  and  (6)  any

12  other  information  or  suggestions  that  will  help  prevent  discovery

13  violations.

14      To  facilitate  development  of  the  CREDO  program,  the  Sanctioned

15  Attorneys  and  Named  Qualcomm  Attorneys  are  required  to  meet[21]  at  9:00

16  a.m.  on  Tuesday,  January  29,  2008,  in  the  chambers  of  the  Honorable

17  Barbara  L.  Major,  United  States  Magistrate  Judge,  940  Front  Street,

18  Suite  5140,  San  Diego,  California,  92101.   The  Court  will  participate

19  only  to  the  extent  necessary  to  ensure  that  the  participants  are

20  complying  with  the  instructions  in  this  Order.   The  Court  will  provide

21  whatever  time  is  necessary  for  the  participants  to  fully  and  completely

22  examine,  analyze  and  complete  the  CREDO  protocol.   At  the  conclusion  of

23  the  process,  the  participating  attorneys  will  submit  their  proposed

24  protocol  to  the  Court.   The  Court  will  review  the  proposed  protocol  and,

---

[21]   While not required to do so, a Broadcom attorney may participate in the process.  If Broadcom decides to participate, Qualcomm and the Sanctioned Attorneys must pay the Broadcom attorney's reasonable costs and fees incurred in traveling to and participating in this program.

1  if sufficient, order it filed.  The Court will notify the Sanctioned

2  Attorneys and Named Qualcomm Attorneys if the proposed protocol is

3  insufficient so further revisions can be implemented.  When completed

4  protocol is submitted, the Sanctioned Attorneys and Named Qualcomm

5  Attorneys shall each file a declaration under penalty of perjury

6  affirming that they personally participated in the entire process that

7  led to the CREDO protocol and specifying the amount of time they spent

8  working on it.

9      While no one can undo the misconduct in this case, this process,

10 hopefully, will establish a baseline for other cases.  Perhaps it also

11 will establish a turning point in what the Court perceives as a decline

12 in and deterioration of civility, professionalism and ethical conduct

13 in the litigation arena.  To the extent it does so, everyone benefits -

14 Broadcom, Qualcomm, and all attorneys who engage in, and judges who

15 preside over, complex litigation.  If nothing else, it will provide a

16 road map to assist counsel and corporate clients in complying with their

17 ethical and discovery obligations and conducting the requisite

18 "reasonable inquiry."

19                            **CONCLUSION**

20     For the reasons set forth above, the Court **GRANTS IN PART** and

21 **DENIES IN PART** Broadcom's sanction motion and **ORDERS** Qualcomm to pay

22 Broadcom $8,568,633.24.  Qualcomm will receive credit toward this

23 sanction for any amount it pays to Broadcom to satisfy the Exceptional

24 Case sanction.  The Court also **REFERS to The State Bar of California** for

25 an investigation of possible ethical violations attorneys James R.

26 Batchelder, Adam A. Bier, Kevin K. Leung, Christian E. Mammen, Lee Patch

27 and Stanley Young.  The Court **ORDERS** these six attorneys and Qualcomm

28 in-house attorneys Alex Rogers, Roger Martin, William Sailer, Byron

Yafuso, and Michael Hartogs to appear 9:00 a.m. on Tuesday, January 29, 2008, in the chambers of the Honorable Barbara L. Major, United States Magistrate Judge, 940 Front Street, Suite 5140, San Diego, California, 92101 to develop the comprehensive Case Review and Enforcement of Discovery Obligations protocol in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  January 7, 2008

BARBARA L. MAJOR
United States Magistrate Judge

COPY TO:

HONORABLE RUDI M. BREWSTER
U.S. DISTRICT JUDGE

ALL COUNSEL

**Exhibit A**[22]

**Day Casebeer Madrid & Batchelder**


**James R. Batchelder**-Partner and founding member of Day Casebeer, B.A. from Franklin & Marshall College, J.D. from University of California, Los Angeles, School of Law.  Qualcomm's lead attorney throughout this case.  Delivered Qualcomm's opening and closing arguments and refined Qualcomm's trial strategies and theories. Delegated case preparation and trial issues to other attorneys or teams of attorneys but was available for consultation on discovery and all trial issues. Was told on January 14, 2007 that JVT documents that Qualcomm had not produced in discovery were located on Raveendran's computer, but he did not review them and directed other attorneys to handle the issue. Present for the January 18, 2007 sidebar during which Young stated that there was no evidence that any emails were sent to the viji@qualcomm.com address and he did not correct the statement nor mention the 21 Raveendran emails.  Present for the January 24, 2007 sidebar after Raveendran's testimony during which Patch implied that the 21 emails had not been reviewed. Participated in drafting several pleadings that ultimately were determined to contain false statements and arguments, including Qualcomm's Post-Trial Brief Concerning Waiver and Inequitable Conduct. Doc. No. 678.


**Lee Patch**-Partner, B.S. from Carnegie Mellon University, J.D. from Duquesne University School of Law.  Defended Raveendran's deposition. Responsible for defending Qualcomm against Broadcom's inequitable conduct allegations.  Supervised Bier in the trial preparation of Viji Raveendran and conducted the direct examination of Raveendran.  Learned about the 21 Raveendran emails on January 14, 2007, told Batchelder and Young about the email discovery, and did not review the emails but participated in the decision not to produce them.  Did not ask Raveendran about the 21 emails discovered on her laptop or whether she had received any avc_ce emails; asked her whether she had **read** any avc_ce emails.  In the sidebar immediately after Raveendran admitted she received avc_ce emails, Patch stated that he had not seen the emails and did not know whether they were responsive to Broadcom's discovery requests; he did not tell the court that Qualcomm already had reviewed the emails and decided not to produce them to Broadcom.  Participated in drafting and arguing pleadings that contained false and misleading statements regarding Qualcomm's non-participation in the JVT.  Doc. No. 676.

---

[22]   All of the information in this exhibit was obtained from the attorneys' declarations.

-43-

**Christian E. Mammen**-Senior Associate during trial and currently a Partner, B.A. from Trinity University, J.D. from Cornell Law School, D. Phil. in law from Oxford University.  Drafted the complaint, handled day-to-day discovery activities, and supervised Leung in additional discovery matters.  Prepared memoranda regarding document retention, collection and production. Reviewed the 21 Raveendran emails on January 14, 2007 and made the decision not to produce them.  Helped prepare, reviewed, and signed some of the pleadings which contained false statements.  Participated in the post-trial correspondence and resistance to Broadcom's requested additional document searches.  Doc. No. 682.

**Kevin Leung**-Associate, B.A. from University of California at Berkeley, J.D. from University of California at Los Angeles.  Had primary responsibility for discovery duties, including drafting and signing written discovery responses; supervised by Mammen.  Prepared and defended Christine Irvine's personal and Rule 30(b)(6) depositions. Supervised by Mammen and Batchelder in this regard.  Discovered shortly before Irvine's deposition 400,000 pages of publicly available JVT documents that a Qualcomm employee had downloaded to Qualcomm's computer system but Broadcom refused to continue the deposition.  Irvine testified that Qualcomm had never been involved in the JVT but subsequent review of the publicly available JVT documents established that Qualcomm was involved in the JVT in late 2003.  The subsequent review also revealed December 2002 and March 2003 reports of an *ad hoc* group concerning coding efficiency analysis and testing of H.264 that listed Raveendran's email address.  Based upon at least Irvine's false statement, Leung agreed to Broadcom's request for a new Rule 30(b)(6) witness on Qualcomm's involvement in the JVT.  Scott Ludwin was the replacement Rule 30(b)(6) witness and Leung defended his deposition. Ludwin testified that Qualcomm had not participated in the JVT prior to late 2003.  After Ludwin's deposition, Leung worked with Qualcomm and produced additional documents concerning Qualcomm's involvement in the JVT in and after December 2003.  Leung explains that the earlier document were not discovered because the mid-2006 search involved computers belonging to the Multimedia Development and Standardization Group, not the Digital Cinema Group.  Doc. No. 680.

**Adam Bier**-Junior associate, undergraduate degree from University of California, Berkeley, J.D. from the New York University School of Law. Bier did not participate in pre-trial document collection.  During trial, he was responsible for the twice-daily disclosures of evidence to be used and witnesses to be called at trial.  Patch also asked him to assist in preparing Raveendran to testify at trial.  In that regard, he met with Raveendran on several days in January 2007.  On or about January 7, 2007, Bier became aware of an August 6, 2002 email received by Raveendran welcoming her to the avc_ce email group.  Bier does not recall what, if anything, he did after learning about this document. On January 14, 2007, Bier and Raveendran searched her computer using the search term "avc_ce" and discovered 21 separate emails that had not been produced to Broadcom.  Bier brought those emails to the attention of Mammen and Patch.  The three attorneys decided not to produce the emails to Broadcom.  After Raveendran testified on January 24, 2007, Bier

helped produce to Broadcom the 21 emails found on Raveendran's computer. The August 6, 2002 email was not included in this document production. After trial, Bier, under the supervision of Batchelder, Patch and Mammen, corresponded with Broadcom's counsel, arguing that the 21 Raveendran emails were not covered by any Broadcom discovery request and resisting Broadcom's attempts to force Qualcomm to conduct additional searches for JVT documents.  In March 2007, Bier advised Broadcom that Qualcomm would conduct limited additional document searches.  Doc. No. 686.

**Craig Casebeer**-Partner and founding member of Day Casebeer, B.A. from Stanford University, J.D. from University of California at Berkeley, Boalt Hall.  Joined this litigation shortly before trial and provided assistance and trouble-shooting experience to Batchelder and the rest of Qualcomm's trial team.  Supervised the preparation of motions in limine.  Directed Zemlicka to use Qualcomm's MSA to draft the motion in limine to exclude evidence relating to Qualcomm's participation in the JVT.   Conducted the trial testimony of two witnesses who were not mentioned in Judge Brewster's Waiver Order.  Present for the January 18, 2007 sidebar during which Young stated that there was no evidence of emails being sent to the group, including Raveendran.  Supervised Smith in the drafting, editing and finalizing of the JMOL, although the waiver portion was prepared by the Heller Ehrman lawyers.  Participated in the decision to produce the 21 emails after Raveendran's testimony. Authored the letter to Judge Brewster submitting the Amended JMOL, which corrected the statements determined to be false based upon the Raveendran emails.  Participated in drafting Qualcomm's Post-Trial Brief Concerning Waiver and Inequitable Conduct, which contained statements later determined to be false and misleading.  Doc. No. 679.

**Victoria Q. Smith**-Junior associate, B.S. from University of Tulsa, J.D. from University of Michigan.  Assisted in the preparation of expert witnesses and other technical witnesses.  Helped prepare and signed both of Qualcomm's Motions for Judgment as a Matter of Law.  Smith did not draft the portion of the JMOL that concerned waiver.  Doc. No. 691.

**Roy V. Zemlicka**-Junior associate, bachelor's degree from University of California at Santa Cruz, J.D. from Santa Clara University.  Performed discrete tasks to assist senior lawyers in pre-trial litigation.  Signed two pleadings relating to Qulacomm's Motion in Limine to Exclude Evidence relating to Qualcomm's participation in the JVT.  Also helped prepare the motion, although the majority of his work was on an issue that was subsequently moved to another motion in limine and then resolved prior to court argument.  Inserted language from Qualcomm's MSA into the Motion in Limine and this language subsequently was determined to be false and misleading.  Zemlicka did not perform any independent factual investigation; he relied on prior Qualcomm pleadings.  Doc. No. 694.

**Ruchika Agrawal**-First year associate, Bachelor's degree from Rutgers University, Master's degree from Stanford University, J.D. from University of Virginia Law School.  Attended two chamber's conferences regarding jury instructions. Assisted with discrete tasks during trial, including assisting in the mock cross-examination of Raveendran.  Was present in court during Raveendran's testimony and sat with her during break in testimony but did not discuss her testimony or the 21 emails. Doc. No. 677.

**William P. Nelson**-Associate, J.D. from University of California, Boalt Hall.  Had minimal involvement in the instant litigation and none related to Qualcomm's participation in the JVT.  Signed Qualcomm's opposition to Broadcom's motion for leave to file an amended answer and counterclaims and argued the motion in court.  Doc. No. 689.

**Howard T. Loo**-Associate, B.A. from Stanford University, J.D. University of California at Berkeley's Boalt Hall.  Only billed 11.8 hours to this case but signed a pleading unrelated to the JVT or H.264 standard.  Doc. No. 687.

**Ryan L. Scher**-First year associate, J.D. from Tulane University. Attended two chamber's conferences regarding jury instructions.  Also performed discrete tasks related to trial for more senior lawyers.  Doc. No. 690.

**Bradley A. Waugh**-Associate, B.S. from Georgia Institute of Technology, M.S. from Rice University, J.D. from Stanford University.  Heavily involved in instant case but vast majority of work related to claim construction, infringement and some invalidity.  Waugh also provided technical assistance to lawyers responsible for the JVT issues.  Signed several pleadings unrelated to the issues addressed in Judge Brewster's order.  Doc. No. 693.

**Heller Ehrman LLP**

**Stanley Young**-Firm shareholder, A.B., A.M. from Stanford University, J.D. from Harvard Law School.  Became involved with this case in early 2006.  Initially only responsible for damages issues.  Understood that Day Casebeer was responsible for written discovery and document production.  In August 2006, Young agreed to Batchelder's request to have Heller Ehrman assume responsibility for handling JVT issues. Decided to file the MSA arguing that Qualcomm had not participated in the JVT at any time before the H.264 standard was established. Supervised Venkatesan and Robertson in the preparation of expert reports and pleadings relating to JVT issues, including the MSA and reply. Argued the MSA to Judge Brewster on December 5, 2006.  Agreed to present the JVT witnesses at trial, although they ultimately were not used at trial.  Argued at sidebar on January 18, 2007 to exclude the December

2002 email reflector list containing Raveendran's email address and affirmatively stated that there was no evidence that any emails had been sent to Raveendran's email address. Although Young denies knowing about the 21 Raveendran emails, his statement occurred four days after Patch claims he notified Young of the discovery. Directed Day Casebeer and Heller Ehrman lawyers to prepare an Amended JMOL to correct the false statements regarding Qualcomm's non-participation that had been included in the original JMOL filed on January 24, 2007. Doc. No. 699-4.

**Jaideep Venkatesan**-Associate, J.D. from University of California at Los Angeles. At Young's direction, worked on the damages aspect of this case and later on responding to the expert report relating to JVT issues. Venkatesan and Young discussed the JVT discovery and issues with Patch and other Day Casebeer lawyers. Supervised Robertson in preparing Dr. Richardson's expert declaration. Transmitted the draft declaration to Day Casebeer lawyers Patch, Leung and Waugh and Qualcomm in-house lawyers Alex Rogers and Roger Martin for review. Worked with Robertson to prepare Qualcomm's MSA and the related reply. The Reply, which addressed the December 2002 email reflector list including Raveendran's address, was sent to Day Casebeer lawyers Leung, Mammen, Patch and Batchelder and Qualcomm lawyers Rogers, Martin and Byron Yafuso. Also prepared or assisted in preparing and/or reviewing other pleadings ultimately determined to contain false or misleading JVT statements. Doc. No. 699-3.

**Kyle S. Robertson**-Junior associate, B.A. from Grinnel College, J.D. from Boalt Hall School of Law at the University of California at Berkeley. In August 2006, Young directed Robertson to become involved in the JVT issues. To become familiar with the subject, Robertson went to the JVT website and learned about its work and intellectual property rights policies. In late August, he attended the deposition of Gary Sullivan, the Chairman of the JVT. It was the first deposition Robertson had attended and he obtained background information and specific questions from Patch. He also reviewed a number of JVT-related depositions taken by other attorneys. Under Venkatesan and Young's supervision, Robertson prepared several pleadings, including the MSA and related Reply, and an expert declaration, all of which were sent to other attorneys for review. In preparing those documents, Robertson relied on depositions taken and discovery prepared by Day Casebeer lawyers. He circulated the MSA pleadings to Qualcomm attorneys Rogers, Martin, Louis Lupin, William Sailer and Michael Hartogs and Day Casebeer attorneys Batchelder, Patch and Mammen. When Robertson received Broadcom's opposition to the MSA, which included the December 2002 email reflector, he searched the JVT website to learn about the AVC *ad hoc* group, discussed it with senior lawyers at Heller Ehrman and Day Casebeer, and contacted Raveendran. Robertson also prepared a portion of the JMOL and post-trial briefs, which later were determined to contain the false and misleading statements regarding Qualcomm's non-participation in the JVT. The documents were transmitted to a number of Day Casebeer and Qualcomm in-house lawyers for review prior to filing. Doc. No. 699-2.

**<u>Heidi M. Gutierrez</u>**-Firm shareholder, B.S. from United States Naval Academy, J.D. University of San Diego Law School.  Had minimal responsibility with the instant case and none related to the JVT or H.264 standard.  Doc. No. 670-6

**<u>David E. Kleinfeld</u>**-Firm shareholder.  Not actively involved in this case but monitored instant litigation for developments that might affect other Qualcomm/Broadcom litigation.  Signed several pleadings, including Qualcomm's Reply to its MSA, as local counsel.  The pleadings were prepared by other lawyers in Northern California but signed by Kleinfeld for logistical reasons.  Doc. No. 670-4.

**<u>Barry J. Tucker</u>**-Firm shareholder, B.A. University of California, Los Angeles, J.D. from University of California, Hastings College of Law. Not actively involved in this case but coordinated instant litigation with other Qualcomm/Broadcom litigation.  Signed approximately 15 Qualcomm pleadings, including the MSA and Motion in Limine to Exclude Evidence relating to Qualcomm's participation in the JVT, as local counsel.  The documents were prepared by Heller Ehrman or Day Casebeer lawyers located outside of San Diego but signed by Tucker for logistical reasons.  Doc. No. 670-5.