**Patrick E. Gibbs**
Direct Dial: (650) 463-4696
patrick.gibbs@lw.com

140 Scott Drive
Menlo Park, California  94025
Tel: +1.650.328.4600  Fax: +1.650.463.2600
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

July 14, 2008

**BY ELECTRONIC CASE FILING**

The Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Oracle Corp. Sec. Litig.*, No. C-01-0988-SI

Your Honor:

      In answer to the Court's questions:  (1) no sanctions of any kind are warranted here, and (2) even if the Court were to grant the sanctions plaintiffs request, it would not preclude the Court from granting summary judgment for defendants.  Plaintiffs have not shown that defendants destroyed any evidence, let alone with a culpable state of mind, nor have they shown prejudice.  The sanctions plaintiffs propose are not designed to cure prejudice from any loss of evidence.  Rather, they are designed to fill gaps in their case and eliminate unfavorable evidence.

## I.    BACKGROUND

      Immediately after receiving a copy of the complaint, Oracle in-house counsel Lauren Segal directed Oracle's IT department to preserve email disaster recovery tapes for the class period, which included the emails of Oracle's North American work force – tens of thousands of employees.  D1382-2, ¶ 8.[1]  Segal then sent the first of several document preservation notices to Oracle's senior executives and others with responsibility for the matters discussed in the complaint.  *Id.*, ¶¶ 10-18.  Following up on these notices, Segal investigated the facts to locate relevant documents.  *Id.*, ¶ 22.  As Segal identified employees with additional documents, Segal and others sometimes sent preservation notices and then collected documents; in other cases, they collected documents without first sending preservation notices.  *Id.*, ¶¶ 22, 28, 30.  These efforts continued for years and expanded as plaintiffs' claims changed over time.  *Id.*, ¶¶ 33-35.

      By any standard, defendants preserved and produced a massive amount of information.  In granting summary judgment for the defendants in a derivative case based on the same facts, Delaware Vice Chancellor Strine characterized the factual record as "massive."  *In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 908 (Del. Ch. 2004).  The record in this case includes this "massive" record from the derivative case as well as millions of pages of additional documents produced here:  defendants have produced at least 2.1 million pages of documents from the files of at least 129 custodians, along with 209 disks of electronic data.  D1180, Ex. 62.

      Despite the enormous record available to them, plaintiffs asked Special Master Infante to sanction defendants for "spoliation" of evidence.  D1180, Ex. 1.  In addition to terminating sanctions, plaintiffs requested an order requiring Oracle to restore the email disaster recovery tapes that Segal had preserved.  D569, Ex. H.  The Special Master denied plaintiffs' motion because plaintiffs failed to prove any prejudice from the alleged spoliation; and therefore he did not reach the remaining elements.  D1180, Ex. 9 at 39:20-23; Ex. 4 at 1.  The Special Master also

---

[1]  Documents in the court file are cited by docket number, *e.g.*, "D1382-2" for Docket #1382-2.

declined to order the restoration of the email tapes because plaintiffs failed to show that they would have included any relevant evidence not already produced by Oracle. D1180, Ex. 9 at 40:1-7. Plaintiffs appealed the denial of their motion, but Judge Jenkins never heard that appeal, and plaintiffs later folded that appeal, with other issues, into the motion now before the Court.

## II.   SANCTIONS ARE NOT WARRANTED HERE

Where a party improperly destroys evidence, the Court has broad authority to impose a range of sanctions, including an admonition, an award of attorneys' fees relating to the additional necessary discovery, an order precluding evidence, an adverse inference, or "terminating" sanctions. *Leon v. IDX Systems Corp.*, No. C03-1158P, 2004 WL 5571412, at *5 (W. D. Wash. 2004). The sanctions plaintiffs seek here – preclusion orders and an adverse inference – are the most severe sanctions short of terminating sanctions, and they require proof that (1) evidence was destroyed at a time when defendants had control of it and an obligation to preserve it, (2) the evidence was destroyed with a "culpable state of mind" and (3) the evidence was relevant to a party's claim or defense. *Hamilton v. Signature Flight Support Corp.*, No. C 05-0490, 2005 U.S. Dist. LEXIS 40088, at *10 (N.D. Cal. Dec. 20, 2005). Because this case is governed by the PSLRA, sanctions of any kind are inappropriate absent willfulness. D1381 at 11.

Under this standard, "relevant" means more than merely admissible under Fed. R. Evid. 401; it means that the lost evidence "would support [a party's] claim or defense." *Hamilton*, 2005 U.S. Dist. LEXIS 40088 at *10; *Residential Funding Corp. v. DeGeorge Fin'l Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). This requirement is "essential," for "[s]anctions interfering with a litigant's claim or defenses violate due process when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983). Thus, plaintiffs must show "there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce evidence favorable to [them]." *Hamilton*, 2005 U.S. Dist. LEXIS, at *22-23. Speculation is not enough: "The burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'" *Byrnie v. Town of Cromwell, Bd. of Ed.*, 243 F.3d 93, 108 (2d Cir. 2001) (*quoting Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998)); *see also Hamilton*, U.S. Dist. LEXIS 40088, at *23 ("[W]here the moving party fails to provide any extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to [the spoliator] or would have been relevant to the issues of this lawsuit, spoliation sanctions are not warranted. . . .") (citation and internal quotes omitted). Plaintiffs' request for sanctions here is based on five categories of evidence. But plaintiffs have not shown, for any category, that defendants lost or destroyed any evidence – much less with a "culpable state of mind" – nor have they shown prejudice.

### A.   The OSO Back-Up Tapes

Oracle Sales Online (or "OSO") was a database in which Oracle salespeople entered information about all pending sales opportunities, both those they expected to close and those they were working on but had no expectation of closing during the current quarter. D1406 at 6. OSO was a dynamic database, changing as new information was entered. D1180, Ex. 78 at 259:5-260:9. It did not store historical information; rather, it reflected current information about Oracle's "pipeline" (*i.e.*, potential transactions). *Id.* OSO did not yield a "forecast." Instead, the "pipeline" was just one piece of data used in an exhaustive forecasting process. D1406 at 6-8.

**LATHAM&WATKINS**LLP

Plaintiffs claim that Oracle "purged" backup tapes of the OSO database, but they cite no admissible evidence of this claim. D1381 at 22-23. Moreover, the allegation is irrelevant: The Special Master denied plaintiffs' motion to compel the production of the database, finding that it was not reasonably calculated to lead to the discovery of admissible evidence. D1180, Ex. 184 at 4. If the OSO database did not meet the standard for discovery under Fed. R. Civ. P. 26(a) – a finding plaintiffs did not appeal – it cannot meet the test for "prejudice." And plaintiffs can hardly claim prejudice from an alleged failure to preserve what they were not entitled to receive.

### B.     Sales, Consulting and Support Organizations and Area Vice Presidents

Plaintiffs also claim that Oracle failed to preserve documents from employees in the sales, consulting and support organizations. This claim is based on plaintiffs' challenges to Oracle's preservation efforts. *See* D1381 at 2-5, 14-25 (addressing preservation claims).

Oracle's preservation of the email tapes, which would have included the emails of every North American employee within the sales, consulting and support units (including AVPs), flatly contradicts plaintiffs' claim. D1381 at 19. (It also negates any suggestion that Oracle acted with a "culpable state of mind.") Although plaintiffs moved to compel the restoration of the disaster recovery tapes, the Special Master found that plaintiffs had failed to show that the tapes would have any *relevant* evidence not already produced by Oracle. D1180-9 at 40:1-7. To the extent that the tapes include any unproduced documents plaintiffs are again asking for sanctions based on materials that were, in fact, preserved, and that plaintiffs were not entitled to receive.

In any event, plaintiffs' suggestion that Oracle had a duty to preserve the files of every single employee within these business units – which included thousands of people – is incorrect. Oracle's duty was to preserve the files of the "key players" in the case. *Zubulake*, 220 F.R.D. at 217-18 ("[T]he duty to preserve extends to those employees likely to have relevant information – the 'key players' in the case."). Indeed, the Discovery Plan entered by Judge Spero in March of 2005 only required Oracle to produce documents from a small fraction of the employees in the sales, consulting and support organizations. D1180, Ex. 43 at § I.B. Here, Oracle has produced over 150,000 pages of documents from the files of at least 64 employees within the sales, consulting and support organizations (including AVPs). D1180, Ex. 62. Plaintiffs have not identified a single "key player" whose files were not preserved.

As the Special Master found, moreover, plaintiffs have not shown prejudice – they cite no proof that any allegedly lost or destroyed evidence would have supported their case. On the contrary, while seeking sanctions for having to rely on "incomplete and spotty evidence," plaintiffs simultaneously filed two motions for partial summary judgment *in their favor*, claiming that there is a mountain of evidence supporting their claims. D1257, D1259. The evidence in this case, though it does not support plaintiffs' claims, is anything but "incomplete" or "spotty."

### C.     The "Audit Trail" for the Debit Memos

Plaintiffs claim that defendants "altered and deleted" documents showing the "accounting history of customer overpayments and debit memo transactions." This claim, rejected by Judge Jenkins when plaintiffs first made it in 2002 (D1381 at 25), remains baseless. Plaintiffs rely entirely on the testimony of a collections employee (Ian Hatada) for the proposition that certain "notes" were altered. *Id*. at 26. However, Hatada admitted on cross-examination that he never saw any "note" being altered or destroyed and could identify none that were; in fact, the method of updating notes at the time *preserved* historical data. *Id.* at 26-27. Furthermore, these "notes" had no impact on any accounting entries or audit trail. *Id.*

3

LATHAM&WATKINS LLP

### D. Larry Ellison's "Files"

Citing no proof at all, plaintiffs simply assert that "Ellison's files were not preserved." In fact, Ellison received the initial preservation notice, and his files were preserved. Plaintiffs claim that only "15 emails" were produced from Ellison's files, but by this they mean only that 15 emails were listed as having come from Ellison's email account on defendants' source log. In fact, Oracle produced at least 1,650 emails sent or received by Ellison. D1383, ¶ 4. Despite having deposed Ellison for three days, and despite having deposed and received documents from dozens of people who worked closely with him, plaintiffs do not cite a shred of evidence that any relevant email sent or received by Ellison was lost. D1381 at 21; *compare Zubulake*, 220 F.R.D. at 215 (citing proof that specific emails were missing). Thus, plaintiffs are complaining that they did not receive duplicate copies, sourced to Ellison, of emails they actually received. But there is no duty to produce duplicate copies. D1381 at 21; *Payless v. Target Corp.*, No. 05-4023, 2008 U.S. Dist. LEXIS 28878, at *14 (D. Kan. Apr. 8, 2008). Plaintiffs can hardly show prejudice just because the emails were sourced to other Oracle custodians. In any event, there can be no showing of "willfulness" here given that Ellison's emails were on the disaster recovery tapes.

### E. Matthew Symonds' Interview Recordings and Transcripts

Finally, plaintiffs complain about defendants' failure to produce certain audio recordings and transcripts of interviews that author Matthew Symonds conducted with Ellison. Those materials, however, were never in defendants' *physical* possession, custody or control, and to the extent they have been destroyed, neither Ellison nor any other defendant destroyed them. On the contrary, if they were destroyed, it was despite defendants' request to preserve them, and despite multiple requests that Symonds turn them over. D1381 at pp. 8, 31; D1180 at Exs. 213, 214, 179 at 574:1-576:13 & 643:8-645:13; D1382 at Ex. 14. Far from "discourag[ing]" Symonds from producing these materials, Ellison repeatedly asked Symonds to turn them over for production to plaintiffs. D1382 at Ex. 14; D1180 at Ex. 179, 574:1-576:13. Where, as here, a party is unable to comply with a discovery order despite good faith efforts, and due to circumstances beyond its control (here, Symonds' conduct), sanctions are inappropriate. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958); *Falstaff Brewing Corp. v. Miller Brewing Corp.*, 702 F.2d 770, 783 n.8 (9th Cir. 1983).

Moreover, plaintiffs have failed to show prejudice. Symonds' interviews with Ellison formed the basis of a book that was published in 2003, and which plaintiffs used extensively in deposing Ellison. D1381 at 7; D1180, Ex. 117 at 334:14-414:10 & 460:9-464:19. Based solely on excerpts from the book that they claim are "relevant," plaintiffs assume the interview tapes and transcripts would have included additional "relevant" materials. But Plaintiffs have cited no evidence that the missing recordings and transcripts included any statements by Ellison that would have been "relevant" and were not in the book. Plaintiffs cannot show prejudice sufficient to justify an adverse inference instruction. *Mitchell v. Adm'r*, No. 01 Civ. 2760, 2008 U.S. Dist. LEXIS 27390, at *5-6 (S.D.N.Y. Apr. 3, 2008) (affirming denial of sanctions for destruction of notes that formed the basis for letters produced in the case "in the absence of a showing that the notes differed from the letters that were produced and that they would support plaintiff's claims"). Indeed, plaintiffs declined the opportunity to pursue additional deposition time with Symonds, which might have uncovered evidence regarding the content of the missing materials. D974; *Convolve, Inc. v. Compaq Comp. Corp.*, 223 F.R.D. 162, 176 (S.D.N.Y. 2004) (sanctions denied for missing emails where plaintiff "made no effort to determine the substance of those communications in anything but the most general terms").

LATHAM&WATKINS LLP

### III. THE PROPOSED SANCTIONS DO NOT RELATE TO ANY LOST EVIDENCE

The sanctions plaintiffs propose here bear no relationship to any alleged loss of evidence. *Unigard Security Ins. Co. v Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (holding that courts may exclude evidence if it "would unfairly prejudice an opposing party"); *Lewis v. Telephone Empl. Credit Union*, 87 F.3d 1537, 1558 (9th Cir. 1996) (sanctions must be "carefully fashioned" and may not "unduly interfere[] with [a party's] ability to produce relevant evidence."). Instead, they are a "wish list" designed to plug holes in plaintiffs' proof and avoid evidence that undermines their case.

Nowhere is this more clear than in plaintiffs' request to bar evidence or argument from anyone in the NAS, OSI or General Business units, with particular focus on a single AVP, Nic Classick. But Classick received a preservation notice, and Oracle has produced over 600 pages of documents from his files. D1382-2, ¶¶ 24, 26; D1180, Ex. 62 at 7. There is no evidence that Classick's files were lost. The reason plaintiffs want to preclude his evidence is obvious: late in 3Q01, Classick wrote an email to George Roberts (the head of the NAS unit) describing a sudden drop off in sales at the very end of the quarter. D1406 at 11:26-12:24. Classick's email, and an ensuing exchange among Roberts, Ellison, and Henley, makes clear just how surprised defendants were by the miss. Plaintiffs' focus on Classick illustrates that this sanction is merely an effort to eliminate evidence that is fundamentally inconsistent with plaintiffs' claim. Indeed, in granting summary judgment for the defendants in the derivative case, Vice Chancellor Strine relied upon Classick's email as evidence that "the bottom [fell] out" at the very end of 3Q01. *In re Oracle Corp. Deriv. Litig.*, 867 A.2d at 922-23.

Plaintiffs' requested sanction regarding OSO is equally transparent. Although they claim only that tapes of the OSO database were "purged," plaintiffs request an order barring any evidence or argument that the OSO database "or reports based on data from OSO supported the Company's sales forecast until the end of 3Q01." D1465 at 5. But defendants have produced hundreds of "reports based on data from OSO," and none of them supports plaintiffs' claims. D1184; D1406 at 6-11. Once again, plaintiffs seek this sanction precisely because Vice Chancellor Strine relied on these kinds of reports in granting summary judgment for defendants in the derivative case. *In re Oracle Corp. Deriv. Litig.*, 867 A.2d at 922. As Vice Chancellor Strine held, the reports that defendants received showed that Oracle was on track to make its public guidance until the bottom fell out at the very end of the quarter. *Id.* at 922-23. Plaintiffs' proposed sanction is simply an effort to avoid this evidence, which dooms their case. Plaintiffs' request for an order precluding defendants from arguing that Ellison did not "rely" on OSO is likewise unwarranted. Plaintiffs never requested any OSO "log-in" information, and they cite no evidence that it was lost or destroyed.

In a similar vein is plaintiffs' request for an order precluding defendants "from offering evidence or argument inconsistent with proof that defendants knew the reported 2Q01 financial statements were positively impacted by accounting adjustments made to customer overpayments." Plaintiffs have never cited a shred of evidence that any of the defendants had any reason to think Oracle's 2Q01 financial statements were incorrect. D1406 at 47. And plaintiffs offer no proof that the allegedly "altered" or "destroyed" notes – written by entry-level collection employees – would have contained any such evidence. Plaintiffs' proposed order has nothing to do with spoliation. It is an attempt to fill a glaring hole in their case.

5

**LATHAM&WATKINS**LLP

Finally, plaintiffs' all-purpose, proposed adverse inference instruction bears no relationship to any claim of spoliation – and certainly not to any demonstrated loss of evidence or prejudice. Given the devastating impact it can have, courts have cautioned that an adverse inference instruction is "an extreme sanction" that "should not be given lightly. *Zubulake*, 220 F.R.D. at 220. Plaintiffs here have not come close to justifying an instruction that could cripple the defendants' ability to defend this case.

## IV.  PLAINTIFFS' SANCTIONS WOULD NOT BAR SUMMARY JUDGMENT

Setting aside non-evidentiary sanctions (which obviously would not impact summary judgment), evidentiary sanctions for spoliation can never defeat summary judgment against a party who has otherwise offered "no evidence" or "utterly inadequate evidence." *Kronish*, 150 F.3d at 128; *Byrnie*, 243 F.3d at 107. While an adverse inference may preclude summary judgment in a "marginal case" where a party has otherwise produced some substantial evidence, there must be "some showing indicating that the destroyed evidence would have been relevant to the contested issue." *Kronish*, 150 F.3d at 127. Thus, if a defendant is entitled to summary judgment for a failure of proof on one element of a claim, destruction of evidence relevant to a different element will not preclude summary judgment. *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 431864 at *12-14, n.8 (S.D.N.Y. Feb. 9, 2007); *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 1438753, *2 n.3 (S.D.N.Y. May 16, 2007).

Defendants' summary judgment briefing makes clear that plaintiffs' claims fail for several independent reasons. The undisputed facts show that defendants' statements about Oracle's forecast and the economy were true, and none of the defendants knew (or was reckless in not knowing) otherwise. D1406 at 23-25, 28. The undisputed facts show that defendants' statements about Suite 11i were true, and in any event, plaintiffs have offered zero evidence that problems with Suite 11i caused Oracle's miss. *Id.* at 37-39. Plaintiffs' claims about Oracle's accounting in the second quarter of the 2001 fiscal year are not only baseless, but completely irrelevant to Oracle's miss in the third quarter of that year. *Id.* Because plaintiffs have offered no evidence (or, at best, utterly inadequate evidence) on these issues, defendants are entitled to summary judgment even if the Court were to grant the sanctions plaintiffs request.

Indeed, even accepting as true plaintiffs' characterization of the evidence they have and the evidence they claim to have lost, plaintiffs have not cited any existing or allegedly lost evidence regarding the key element of loss causation. Plaintiffs bear the burden of proving damages caused by the alleged fraud, as opposed to "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions or other events[.]" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005); *see also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (plaintiffs must "ascribe some rough proportion of the whole loss to [the] misstatements"). It is not enough to say that a stock price drop followed disclosure of the "truth." Instead, to avoid summary judgment, plaintiffs must offer evidence from which a reasonable jury could find that some particular portion of the price decline was caused by fraud, as opposed to other unrelated factors. D1450 (attaching *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008) (granting summary judgment where "there is simply no way for a juror to determine whether the alleged fraud caused any portion of Plaintiffs' loss")); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1266 (N.D. Okla. 2007) (granting summary judgment where evidence did not "enable a factfinder to ascribe some rough proportion of the whole loss to the misstatements.") (internal quotations and citations omitted); *In re Zonagen Sec. Litig.*, 322 F. Supp. 2d 764, 781-82 (S.D. Tex. 2003) (granting summary

**LATHAM&WATKINS**LLP

judgment where expert failed to "undertake an independent analysis to determine whether and how much any other event might have increased or decreased Zonagen's stock price").

Here, Oracle's March 1, 2001 announcement revealed information unrelated to any alleged fraud at Oracle. D1200-4 at ¶¶ 57-69. Before March 1, Oracle and its competitors exceeded expectations and were unaffected by the economy. Following Oracle's March 1, 2001 announcement that it would not achieve guidance because customers deferred spending due to economic uncertainty, *all* of Oracle's competitors' stock prices declined – not the result one would expect if Oracle's stock drop had been caused solely by the disclosure of fraud at Oracle. In fact, most of Oracle's competitors went on to miss their own guidance, citing the same factors as Oracle, and analysts described Oracle's miss as revealing economic weakness impacting the entire industry. D1449 at 23:12-32:25, 93:10-99:16. It is beyond dispute that the March 2, 2001 stock drop was caused by the market learning of a sudden, unexpected and industry-wide downturn. In light of this evidence, Plaintiffs must, at a minimum, produce evidence that at least some portion of the stock price decline was caused by fraud as opposed to these non-fraud factors. *Omnicom*, 541 F. Supp. 2d at 554; *Williams*, 496 F. Supp. 2d at 1266, 1295; *Zonagen*, 322 F. Supp. 2d at 781-82; *Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 995 (7th Cir. 2007) (granting summary judgment where plaintiffs failed to refute evidence that loss was the result of market forces that also impacted competitors); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1016 (C.D. Cal. 2003) (granting summary judgment where plaintiff failed to "eliminate that portion of the price decline of [the company's] stock which is unrelated to the alleged wrong."). But plaintiffs' only "evidence" here is the opinion of Mr. Steinholt, who admitted that he did not disaggregate these "non fraud" factors because he "assumed" plaintiffs' claims were true. D1234 at 10-13. This is not enough to show loss causation. *Omnicom*, 541 F. Supp. 2d at 554; *Williams*, 496 F. Supp. 2d at 1266, 1295; *Zonagen*, 322 F. Supp. 2d at 781-82; *Oscar Private Equity Inv. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 271 (5th Cir. 2007); D1429 (attaching *Ryan v. Flowserve Corp.*, 245 F.R.D. 560, 573-74 (N.D. Tex. 2007)).

Nothing in plaintiffs' letter brief suggests that any of the allegedly lost or destroyed evidence would have supported plaintiffs' loss causation argument, nor could it. The touchstone for loss causation is what the market knew, and how the market valued Oracle's stock. Thus, the evidence concerning this issue necessarily focuses on publicly available information, which neither party could spoliate. None of the sanctions plaintiffs seek would cure plaintiffs' complete failure of proof regarding what portion, if any, of Oracle's stock-price drop was attributed by the market to the alleged fraudulent conduct. *Kronish*, 150 F.3d at 127; *Gordon Partners*, 2007 WL 431864, at *14 n.8 (adverse inference for spoliation of evidence regarding falsity and scienter was "irrelevant to the separate element of loss causation"); *Gordon Partners*, 2007 WL 1438753, at *1-2 (granting summary judgment because plaintiff failed to submit evidence that "eliminate[d] [] that portion of the price decline that [was] the result of forces unrelated to the wrong"). Even if the Court were to grant all of the sanctions plaintiffs propose, defendants would be entitled to judgment as a matter of law.

Respectfully submitted,

Patrick E. Gibbs
of LATHAM & WATKINS LLP

7