1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  MARK SOLOMON (151949)
   DOUGLAS R. BRITTON (188769)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone:  619/231-1058
   619/231-7423 (fax)
5  marks@csgrr.com
   dougb@csgrr.com
6        – and –
   SHAWN A. WILLIAMS (213113)
7  WILLOW E. RADCLIFFE (200087)
   ELI R. GREENSTEIN (217945)
8  DANIEL J. PFEFFERBAUM (248631)
   100 Pine Street, Suite 2600
9  San Francisco, CA  94111
   Telephone:  415/288-4545
10 415/288-4534 (fax)
   shawnw@csgrr.com
11 willowr@csgrr.com
   elig@csgrr.com
12 dpfefferbaum@csgrr.com

13 Lead Counsel for Plaintiffs

14 [Additional counsel appear on signature page.]

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

| 17 | In re ORACLE CORPORATION SECURITIES LITIGATION | ) | Master File No. C-01-0988-SI |
|---|---|---|---|
| 18 | | ) | <u>CLASS ACTION</u> |
| 19 | This Document Relates To: | ) ) | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR |
| 20 | ALL ACTIONS. | ) ) | ADMINISTRATIVE RELIEF TO SUBMIT RECENT AUTHORITY IN SUPPORT OF |
| 21 | | ) | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

I.  **INTRODUCTION**

The local rules of this district are unambiguously clear about the manner in which a party may submit new authority. "[C]ounsel may bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed, by serving and filing a Statement of Recent Decision . . . *without argument*." Civ. L.R. 7-3(d) (emphasis added unless otherwise noted). Defendants' August 5, 2008 Motion for Administrative Relief to Submit Recent Authority ("Defs' Mot." or "Motion") disregards this straightforward rule and seeks to recast and reargue their summary judgment motion, well over a year after that motion was filed. Defendants' Motion also misstates the law and entirely ignores the overwhelming evidentiary proof of loss causation. This type of back-door briefing under the guise of submitting "recent authority" is not and should not be permitted. Defendants' Motion should be denied and stricken in its entirety.[1]

II.  **ARGUMENT**

In addition to its procedural defects, defendants' Motion is substantively meritless. Not only do defendants mischaracterize the holding in *Metzler*, 2008 WL 2853402, they ignore the voluminous evidentiary record establishing loss causation, including testimony and opinions from both parties' experts that together unequivocally establish that "defendants' misrepresentation (or other fraudulent conduct) proximately caused the plaintiffs' economic loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *see also In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005) ("[P]laintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff."); 15 U.S.C. §78u-4(b)(4). The parties have already addressed this issue extensively in their summary judgment briefing. *See* Dkt. 1053 at 23-25, Dkt. 1428 at 46-50. Moreover, Judge Martin J. Jenkins (ret.), applying both *Dura* and *Daou*, has already rejected the same loss causation theory and "corrective disclosure" arguments that defendants proffer here. *See Nursing Home Pension Fund v. Oracle*

---

[1] Plaintiffs do not object to the submission of the recent decision in *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, No. 06-55826, ___ F.3d ___, 2008 WL 2853402 (9th Cir. July 25, 2008), so long as it is "without argument" as required under Civ. L.R. 7-3(d).

*Corp.*, No. C-01-0988-MJJ, 2006 U.S. Dist. LEXIS 94470, at *35-*36 (N.D. Cal. Dec. 20, 2006) ("*Dura* does not . . . state that [a corrective disclosure] is the *only* way to plead and prove loss causation.") (emphasis in original) ("[A]s to Defendants' argument that Plaintiffs have failed to identify a corrective disclosure . . . the Court finds them without merit"). *See also Dura*, 544 U.S. at 341-44. Nothing in *Metzler* overrules *Dura* or *Daou*; in fact, the panel in *Metzler* expressly relies upon those decisions. *See Metzler*, 2008 WL 2853402, at *10 ("[N]either *Daou* nor *Dura* require an admission or finding of fraud before loss causation can properly be pled."). In any event, defendants' assertion that there is "no evidence" establishing that defendants' conduct caused plaintiffs' economic loss is flatly contradicted by the record. Dkt. 1428 at 46-50.

**A.    Defendants' Misrepresentations Proximately Caused Plaintiffs' Loss**

On December 14, 2000, the first day of the Class Period, Oracle announced false 2Q01 earnings results of $0.11 per share. Dkt. 1428, Ex. 105. Defendants overstated reported earnings by $0.01 due to improper accounting manipulations, thereby beating securities analysts' expectations by a penny.[2] Dkt. 1428 at 1. Oracle also bragged of an "astounding" sales pipeline and falsely claimed that the slowing U.S. economy and dot-com bubble were not affecting the Company's financial condition or future prospects. *See*, *e.g.*, Dkt. 1428, Ex. 26 at 234423. ("***We have seen no slowing in our business***."). Defendants further misrepresented that Suite 11i ("11i"), Oracle's new suite of applications software, was "pre-integrated and fully interoperable out of the box," allowing customers to implement it quickly and save money, even in a slowing economy, and that 11i would therefore drive both applications and database sales. Dkt. 1428 at 14-20.[3] Finally, the Company

---

[2]    The evidence demonstrates unequivocally that Oracle did not earn $0.11 per share in 2Q01 and illegally manufactured $0.01 per share and over $40 million in fictitious revenue and earnings by (i) transferring money from a slush fund of customer overpayments; and (ii) executing an illegal roundtrip, or "swap," transaction with Hewlett Packard after midnight on the last day of 2Q01. Dkt. 1428 at 1-13.

[3]    *See also, e.g.*, Dkt. 1428, Ex. 170 (December 15, 2000 Deutsche Bank Alex. Brown report: "Applications license growth of 66% solidly outpaced Street expectations in the 50-60% range. The ***outperformance should also allay concerns about the viability of Oracle's applications business and the relative immaturity of release*** 11i following last quarter's decent, but slightly disappointing 42% growth."); *see also* Dkt. 1428, Ex. 129 (December 15, 2000 Salomon Smith Barney report: "We anticipate the ***applications division will continue to accelerate*** given that the Company has

1   falsely forecasted 75% growth for 11i applications growth in 3Q01 and overall earnings of $0.12 per
2   share – based directly upon the false reported earnings of $0.11 per share in 2Q01. Dkt. 1053, Ex.
3   29 at 8 (Henley: "*So we did 11 cents in the second quarter*. So I would assume, *12 cents would be*
4   *a reasonable number at this point*.").

5   Defendants' false December 14, 2000 statements caused a statistically significant increase in
6   Oracle's stock price. Dkt. 1428, Ex. 168 at ¶¶35, 39. Each of the false representations was also
7   repeated throughout the Class Period, causing the Company's stock price to remain artificially
8   inflated. *Id.* At the same time the individual defendants made and reiterated the above false
9   representations, contemporaneous evidence shows that defendants knew but failed to disclose that, in
10  truth, the sales pipeline for 3Q01 that Oracle had told investors was "astounding" and "had never
11  been stronger," had in fact been on a sharp and continuing decline. Dkt. 1428 at 27-40. The sales
12  staff was experiencing fewer and smaller deals because of the dot-com bust and tightening IT
13  budgets as a result of the slowing economy. *Id.* Some sales personnel reportedly reduced efforts to
14  sell 11i because of product defects. Dkt. 1428 at 14-24. Indeed, the evidence shows that 11i was
15  technically incomplete and not fully tested, customers had difficulty implementing the software and
16  demanded money be returned. *Id.* at 21-24. Oracle also lost sales because it was unable to
17  demonstrate 11i to potential new customers due to technical defects. *Id*. at 20-24. The Company's
18  margins also deteriorated due to problems with 11i. *Id.* at 20. In fact, though Oracle misrepresented
19  the ease with which 11i could be implemented and installed, when Oracle actually implemented 11i
20  internally during the Class Period, technical defects caused the Company to lose $20 million in 3Q01
21  revenue, contributing to the ultimate sales and revenue miss. *Id*. at 27.

22  **B.     The March 1, 2001 Adverse Disclosures**

23  On March 1, 2001, the last day of the Class Period, Oracle revealed that it had badly missed
24  its $0.12 per share earnings forecasts by $0.02 and had missed its projected 75% growth in 11i

---

exhibited significant traction since the release of Version 2 of its ebusiness Suite in October. We are under the impression that the first version had considerable bugs and the most recent version is really gaining traction . . . .").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ADMINISTRATIVE RELIEF TO
SUBMIT RECENT AUTHORITY - C-01-0988-SI                                                          - 3 -

1  applications by 33%.  Dkt. 1428, Exs. 196, 351.  Defendants, among other things, specifically
2  attributed Oracle's earnings and forecast miss to lost sales due to the failure of dot-com customers
3  and the economic slowdown to which Oracle had falsely claimed to have been immune.  Dkt. 1428,
4  Ex. 352 at NDCA-ORCL 050622.  ("[W]e knew the dot-coms would have an effect.  But clearly, I
5  think *it was the economy that really did us in*."); Dkt. 1428, Ex. 196 ("*The problem is the U.S.*
6  *economy*.").  Oracle's adverse disclosures caused a huge statistically significant stock price decline
7  on March 2, 2001.  *See* Dkt. 1428, Ex. 168 at ¶¶26, 43.  Defendants' own expert, Christopher M.
8  James, admits that the March 1, 2001 disclosures were new information for investors concerning the
9  true financial condition of Oracle's overall business, including applications growth of 11i and its
10  future prospects, which caused Oracle's precipitous stock price decline:

> Well, I think the announcement required – provided the market with what I would view *material new information regarding both the applications business as well as Oracle's other businesses and how they were faring in the then current economic environment*.
>
> Q.      And what was the new information regarding how the applications business was faring . . . ?
>
> A.      . . . I think *it is clear to me that the market and market participants were concerned about the earnings miss and what it conveyed in terms of future business prospects in the then current economic environment*.

17  Dkt. 1053, Ex. 137 at 137:13-138:1.

18  Further, the evidence also undisputedly demonstrates that 11i defects resulted in lost sales
19  and millions in expenses to implement and fix the faulty 11i product.  Dkt. 1428 at 14-24.
20  Defendants also knew that failed customer demonstrations hurt sales and conversion ratios.  Dkt.
21  1428 at 21-22; Ex. 133 at 094091.  11i technical defects experienced during Oracle's own internal
22  implementation also directly contributed to the earnings miss and employees complained at the time
23  that forecasts were at risk.  *See* Dkt. 1428 at 14-26; Ex. 161 at 276549.  ("We are starting to feel the
24  impact across all area(s) of our business . . . on the forecast because of the reporting limitations with
25  R11i Order Management."); Dkt. 1053, Ex. 51 at 101417 ("Mark – [We] are seriously at risk of
26  missing additional support revenue in the month of February . . . .  We cannot afford to miss our
27  revenue forecast this quarter . . . ."). According to Oracle's Special Litigation Committee, "*Oracle's*
28  *business may have been affected by the internal implementation of Suite 11i. . . .  First, it is*

1 *possible that the implementation of the OKS module of Suite 11i contributed to a shortfall in*
2 *Support revenue in Q3 FY 2001*." Dkt. 1053, Ex. 93 at 295356.

3       Accordingly, as set forth in plaintiffs' summary judgment briefing, Dkt. 1053 and 1428, the evidence in the record and the testimony of both experts establishes that defendants' misconduct and its false and misleading representations made during the Class Period are "causally connected" to the losses sustained by investors when Oracle's stock declined as the result of its adverse disclosures and revelations on March 1, 2001. Dkt. 1428 at 46-50.[4] Defendants' unsupported theory that proof of loss causation requires a virtual mirror image "corrective disclosure" that specifically attributes its adverse news to fraud has been rejected by the U.S. Supreme Court, the Ninth Circuit and Judge Jenkins in this case. *Dura*, 544 U.S. at 341-44; *Daou*, 411 F.3d at 1026; 2006 U.S. Dist. LEXIS 94470, at *35-36. This makes sense; requiring mirror image corrective disclosures to prove loss causation would allow wrongdoers to evade liability simply "by refusing to admit their falsity." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994). "[R]eading *Dura* to require proof of a complete, corrective disclosure [of prior misstatements] would allow wrongdoers to immunize themselves with a protracted series of partial disclosures." *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 47 (D.D.C. 2006); *See also In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 540, 544 (N.D. Ill. 2007) (same). Regardless, the facts here satisfy even defendants' erroneous view of loss causation. Dkt. 1428 at 46-50.

### III. CONCLUSION

Based on the foregoing, Defendants' Motion should be denied and stricken in its entirety.

DATED: August 8, 2008                                    Respectfully submitted,

                                                                         s/ Shawn A. Williams
                                                                         SHAWN A. WILLIAMS

---

[4] As detailed in plaintiffs' motion for sanctions and spoliation of evidence (Dkt. 1302), documents relevant to plaintiffs' claims and files of key employees were not preserved. Had they been preserved, they too would likely further evidence the connection between defendants' misconduct and plaintiffs' economic loss.

| | |
|---|---|
| 1 | |
| 2 | COUGHLIN STOIA GELLER |
| | RUDMAN & ROBBINS LLP |
| 3 | SHAWN A. WILLIAMS |
| | WILLOW E. RADCLIFFE |
| 4 | ELI R. GREENSTEIN |
| | DANIEL J. PFEFFERBAUM |
| 5 | 100 Pine Street, Suite 2600 |
| | San Francisco, CA  94111 |
| 6 | Telephone:  415/288-4545 |
| | 415/288-4534 (fax) |
| 7 | |
| | COUGHLIN STOIA GELLER |
| 8 | RUDMAN & ROBBINS LLP |
| | MARK SOLOMON |
| 9 | DOUGLAS R. BRITTON |
| | 655 West Broadway, Suite 1900 |
| 10 | San Diego, CA  92101 |
| | Telephone:  619/231-1058 |
| 11 | 619/231-7423 (fax) |
| 12 | COUGHLIN STOIA GELLER |
| | RUDMAN & ROBBINS LLP |
| 13 | STACEY M. KAPLAN |
| | 9601 Wilshire Blvd., Suite 510 |
| 14 | Los Angeles, CA  90210 |
| | Telephone:  310/859-3100 |
| 15 | 310/278-2148 (fax) |
| 16 | Lead Counsel for Plaintiffs |

T:\casesSF\oracle3\bRF00053230.doc

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ADMINISTRATIVE RELIEF TO SUBMIT RECENT AUTHORITY - C-01-0988-SI

- 6 -

CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 8, 2008.

s/ Shawn A. Williams
SHAWN A. WILLIAMS

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

E-mail:shawnw@csgrr.com

## Mailing Information for a Case 3:01-cv-00988-SI

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Dorian Estelle Daley**
  dorian.daley@oracle.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,eeberline@morganlewis.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com,#sfdocket@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,sholloway@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Raymond Lane
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

PRG-Schultz USA, Inc.
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

Darren Jay Robbins
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Sanna Rachel Singer
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111
```