LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (pro hac vice)
233 South Wacker Drive, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: sean.berkowitz@lw.com

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-SI (JCS) (Consolidated) |
| | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | DEFENDANTS' NOTICE OF DAUBERT MOTION AND DAUBERT MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ALAN G. GOEDDE; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT<br><br>Honorable Judge Susan Illston |

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................1

II.    SUMMARY OF DR. GOEDDE'S OPINIONS................................2

    A.    Dr. Goedde's "Major Macroeconomic Change" Opinion .......................3

    B.    Dr. Goedde's Forecasting Process Opinions .................................5

III.    ARGUMENT ...............................................................7

    A.    Legal Standard ...........................................................7

    B.    Dr. Goedde's Opinion Regarding Macroeconomic Conditions Facing Oracle In Q301 Should Be Excluded................................9

        1.    Dr. Goedde Is Not Qualified To Testify Regarding Macroeconomic Conditions Facing Oracle In Q301 .................................9

        2.    Dr. Goedde's Opinion Regarding A Major Macroeconomic Change is Unreliable and Unscientific ......................................10

            a.    Dr. Goedde Cannot Reliably Define A "Major Macroeconomic Change"................................................11

            b.    There Is No Objective or Scientific Basis for Selecting the Five Factors Dr. Goedde Relied Upon in Concluding That A "Major Macroeconomic Change" Occurred ..............12

            c.    Dr. Goedde Offers No Reliable, Scientific Basis for Connecting His "Major Macroeconomic Change" to Oracle's Business................................................14

    C.    Dr. Goedde's Opinions Regarding Oracle's Forecasting Process Should Be Excluded................................................15

        1.    Dr. Goedde's Opinions Regarding Oracle's Forecasting Process Are Based On His Inadmissible Opinion That Oracle Was Facing A Major Macroeconomic Change................................15

        2.    Dr. Goedde's Opinions Regarding Oracle's Forecasting Process are Unreliable and Unscientific ..................................16

            a.    Dr. Goedde's Opinion That Ms. Minton's Forecasts Were Mechanically Derived Is Unreliable .............................18

            b.    Dr. Goedde's Opinion That A Directive From Mr. Ellison Doubled the Risk In Oracle's Forecasts Is Unreliable..................22

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

1

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.    The Goedde Declaration and Goedde Rebuttal Declaration Are Untimely
And Concede That Dr. Goedde's Prior Work Is Unreliable And Inaccurate ........24

IV.    CONCLUSION...................................................................................................................25

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1

2

## <u>CASES</u>

3

*Alexander v. Smith & Nephew, P.L.C.,*
  98 F. Supp. 2d 1310 (N.D. Okla. 2000) ...................................................................... 9

4

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
  303 F.3d 256 (2d Cir. 2002) ............................................................................. 16, 24

5

6

*Avila v. Willits Envtl. Remediation Trust,*
  No. C 99-3941 SI, 2008 WL 360858 (N.D. Cal. Feb. 6, 2008) ................................ 24

7

*Berry v. City of Detroit,*
  25 F.3d 1342 (6th Cir. 1994) ............................................................................... 8, 10

8

9

*Brooke Group v. Brown & Williamson Tobacco Corp.,*
  509 U.S. 209 (1993) ............................................................................................. 8, 17

10

11

*Cavallo v. Star Enter.,*
  892 F. Supp. 756 (E.D. Va. 1995) ............................................................................ 18

12

13

*Daubert v. Merrell Dow Pharms., Inc.,*
  43 F.3d 1311 (9th Cir. 1995) ............................................................................... 8, 13

14

*Daubert v. Merrell Dow Pharms., Inc.,*
  509 U.S. 579 (1993) .......................................................................... 7, 8, 16, 18

15

16

*DSU Med. Corp. v. JMS Co., Ltd.,*
  296 F. Supp. 2d. 1140 (N.D. Cal. 2003) ................................................................... 7

17

*General Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ................................................................................................. 14

18

19

*Guillory v. Domtar Indus. Inc.,*
  95 F.3d 1320 (5th Cir. 1996) ....................................................................... 8, 17, 22

20

*In re Oracle Corp. Deriv. Litig.,*
  867 A.2d 904 (Del. Ch. 2004) ................................................................................. 17

21

22

*Keener v. United States,*
  181 F.R.D. 639 (D. Mont. 1998) ....................................................................... 24, 25

23

24

*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137 (1999) ..................................................................................... 7, 8, 15

25

*Lust v. Merrell Dow Pharms., Inc.,*
  89 F.3d 594 (9th Cir. 1996) ............................................................................... 7, 14

26

27

*McCleskey v. Zant,*
  580 F. Supp. 338 (N.D. Ga. 1984) ........................................................................... 21

28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ................................................................. 8, 11, 12

*Playtex Products, Inc. v. Proctor & Gamble Co.*,
  No. 02 Civ. 8046, 2003 WL 21242769 (S.D.N.Y. May 28, 2003)........................... 8

*Redman v. John D. Brush & Co.*,
  111 F.3d 1174 (4th Cir. 1997) ................................................................. 8, 12

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*,
  No. 95 CIV.8136(RCC), 2001 WL 1602976 (S.D.N.Y. 2001) .................... 16, 17, 22

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
  878 F.2d 791 (4th Cir. 1989) ................................................................. 10

*United States v. Webb*,
  115 F.3d 711 (9th Cir. 1997) ................................................................. 8

*Weisgram v. Marley Co.*,
  528 U.S. 440 (2000) ................................................................. 1, 8, 10

*Whiting v. Boston Edison Co.*,
  891 F. Supp. 12 (D. Mass. 1995) ................................................................. 9

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ................................................................. 24

*Zenith Elec. Corp. v. WH-TV Broadcasting Corp.*,
  395 F.3d 416 (7th Cir. 2005) ................................................................. 14

## OTHER AUTHORITIES

ANDREW B. ABEL & BEN S. BERNANKE, MACROECONOMICS at 2 (4th ed. 2001) .................. 9

DENNIS W. CARLTON & JEFFREY M. PERLOFF, MODERN INDUSTRIAL ORGANIZATION at 2 (2d ed. 1994) ................................................................. 9

http://www.nber.org/info.html (visited Sept. 20, 2008)................................................. 13

http://www.whitehouse.gov/cea (visited Sept. 20, 2008) ............................................. 10

PAUL R. KRUGMAN & MAURICE OBSTFELD, INTERNATIONAL ECONOMICS at 3 (6th ed. 2003) ...... 9

## RULES

Fed. R. Civ. P. 26(a)(2)(B) ................................................................. 24

Fed. R. Civ. P. 26(a)(2)(C) ................................................................. 24

Fed. R. Civ. P. 37(c)(1)................................................................. 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Evid. 702 ............................................................................................ 7, 11, 14

Fed. R. Evid. 702, Adv. Comm. Notes (2000)............................................. 8, 11, 12, 14

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE THAT Defendants Oracle Corporation, Lawrence J. Ellison,

3  Jeffrey O. Henley and Edward J. Sanderson (collectively, "Defendants") hereby move for an

4  order precluding Plaintiffs from offering Alan G. Goedde's May 25, 2007 Expert Report ("Initial

5  Report"), his June 22, 2007 Rebuttal Report ("Rebuttal Report"), the August 26, 2007

6  Declaration of Alan G. Goedde in Support of Plaintiffs' Opposition to Defendants' Motion for

7  Summary Judgment ("Goedde Declaration") and the November 6, 2007 Declaration of Alan G.

8  Goedde in Response to the Rebuttal Declaration of George Foster ("Goedde Rebuttal

9  Declaration") (collectively, the "Reports"), and any testimony related to his opinions regarding

10  macroeconomic conditions affecting Oracle in 3Q01 and Oracle's forecasting process, at trial of

11  this matter.  This motion is based upon this Notice of Motion, the following Memorandum of

12  Points and Authorities, the files and records in this action, and such arguments and evidence as

13  may be presented to the Court.

14

15  Dated:  October 20, 2008                    Respectfully submitted,
                                                LATHAM & WATKINS LLP
16

17                                              By:____/s/ Peter A. Wald_____
18                                                 Peter A. Wald
                                                   Attorneys for Defendants ORACLE
19                                                 CORPORATION, LAWRENCE J.
                                                   ELLISON, JEFFREY O. HENLEY, and
20                                                 EDWARD J. SANDERSON

21

22

23

24

25

26

27

28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

1

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In July 2007, Defendants moved to exclude Dr. Goedde's Reports and testimony as not meeting the "exacting standards of reliability" required by *Daubert* and Rule 702. *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).  Proving that Defendants' criticisms were correct, Dr. Goedde purported to make not one, but two further revisions to his analysis and testimony in response to Defendants' motion.  Those revisions, though purporting to blunt Defendants' criticisms, instead reinforce the fact that Dr. Goedde's ever-changing testimony is unreliable and should neither be considered by the Court nor permitted to reach a jury.

Dr. Goedde opines that Oracle was facing a major macroeconomic change heading into 3Q01 and that Oracle's forecasting process was hopelessly flawed and completely unreliable, even though that same process had accurately (but conservatively) predicted Oracle's quarterly performance over the course of the preceding two years.  Dr. Goedde is not qualified to testify about macroeconomic conditions facing Oracle in 3Q01 because he lacks any relevant education and professional experience in macroeconomics.  His economic training and experience is purportedly in the areas of industrial organization, international trade and statistics.  Other than perhaps one instance of paid testimony, he has absolutely no experience evaluating macroeconomic trends.  It is therefore not surprising that his opinion that Oracle faced a major macroeconomic change in 3Q01 is not grounded in macroeconomic science; indeed, it is wholly unscientific, subjective and unreliable.

At his deposition, Dr. Goedde was unable to provide a coherent definition of a "major macroeconomic change" (a phrase not otherwise defined or used in the relevant academic literature), nor could he identify any objective criteria for determining whether or when such a change has occurred.  It is merely a label that Dr. Goedde made up to characterize a completely subjective conclusion he reached based on a handful of factors – factors Dr. Goedde chose to include in his "analysis" without reference to any objective standards or criteria.  Indeed, the factors Dr. Goedde reviewed in forming his opinion bear no resemblance to the types of macroeconomic indicators that experts in the field use to reach conclusions about

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

1

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

macroeconomic trends. Based on the record, Dr. Goedde appears to have started with his conclusion that Oracle faced a "major macroeconomic change," and then worked backwards to select a set of purported economic indicators that would support it.

Furthermore, Dr. Goedde performed absolutely no analysis (scientific or otherwise) to determine whether the factors he examined have anything to do with Oracle's business. Because his opinion purports to be that Oracle faced a "major macroeconomic change" that negatively affected its business, Dr. Goedde's failure to even attempt to demonstrate a link between the factors he examined and the strength or weakness of Oracle's business and its forecasted sales and profits per quarter renders his opinion utterly useless to the finder of fact. Simply put, Dr. Goedde's process does not come close to the "reliable principles and methods" and "fit" required by Rule 702.

Dr. Goedde's opinions regarding Oracle's forecasting process fare no better. Not only has he conceded that his original analyses in this regard are inaccurate and unreliable, but his opinion that Oracle's forecasting process was flawed is inseparably connected to his unreliable and inadmissible opinion that Oracle was facing a "major macroeconomic change" – fatally undercutting his opinion on the forecasting process. Yet even Dr. Goedde's revised analyses still contains conceptual and factual errors. Dr. Goedde relies on assumptions that find no support in the record other than his own testimony, and indeed are contradicted by factual record developed over years of discovery.

Finally, the Goedde Declaration and the Goedde Rebuttal Declaration are untimely and violate Rule 26's requirements on expert disclosure as implemented through this Court's scheduling order. Dr. Goedde's opinions must therefore be excluded.

## II.    SUMMARY OF DR. GOEDDE'S OPINIONS

Dr. Goedde is a Vice President at Freeman & Mills, Inc. where he spends "greater than 50 percent" of his time consulting on litigation matters. Initial Report, p. 2; Goedde Depo. at

39:19-40:9.[1]  His educational background includes an B.S. in engineering and an M.A. and Ph.D. in economics from Duke University.  Initial Report, p. 2.  He offers two opinions, both of which are inadmissible in this case.

A.      **Dr. Goedde's "Major Macroeconomic Change" Opinion**

Dr. Goedde's first opinion is that "Oracle was facing a major macroeconomic change heading into Q3 FY01 resulting in a decline in the market for its products."  Initial Report, p. 4. Dr. Goedde reached this conclusion based upon:  (1) the NASDAQ index; (2) Oracle's sales to dot com companies; (3) press reports that venture capital investment declined; (4) his own conclusion, based on anecdotal reports, that "[b]y November 2000, technology spending was down considerably and companies had problems acquiring financing;" and (5) that Cisco Systems and Sun Microsystems purportedly lowered earnings expectations during Oracle's 3Q01.  Initial Report, pp. 4-8.  Dr. Goedde chose these factors without reference to any objective standards or criteria, and consulted no pre-established parameters in his analysis.  *See id.*  His conclusion is based entirely on his own subjective judgment regarding the data.

The phrase "major macroeconomic change" is not a term of art and has no generally accepted meaning among macroeconomists.  *See* Goedde Depo. at 79:6-84:23, 84:24-85:4. Although Dr. Goedde repeatedly used the phrase, at his deposition he had enormous difficulty defining it:  "[Q.]  What is your definition of a major macroeconomic change? A.  A change that affects their business.  Q.  So you're saying it's a macroeconomic change that affects Oracle's business?  A.  Yes."  Goedde Depo. at 79:6-11.  After defining a "major macroeconomic change" as one that affects Oracle's *business*, Dr. Goedde changed his definition and instead focused on a change that affected Oracle's *customers*, but in so doing, he created a circular definition – using the very term "major macroeconomic change" in his answer:

---

[1]      All exhibits are to the Declaration of Andrew M. Farthing ("Farthing Decl.") (Dkt. 1190), the Declaration of Andrew M. Farthing in Support of Defendants' Reply in Support of *Daubert* Motion to Exclude Reports and Testimony of Alan G. Goedde ("Farthing Reply Decl.") (Dkt. 1241), and the November 9, 2007 Declaration of Andrew M. Farthing ("Farthing 11/9/07 Decl.") (Dkt. 1409).  Exhibits 1-3 of the Farthing Declaration are the Initial Report, Rebuttal Report and the transcript of Dr. Goedde's July 11, 2007 deposition ("Goedde Depo."), respectively.

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

3

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1

2

Q.      So you're saying – when you say that Oracle was facing a major macroeconomic change, you're saying it was the sector that Oracle operated in, that part of the economy had suffered some sort of an economic – macroeconomic change?  Is that what you mean?

3

4

A.      The sector that – in which it sold its products.  The purchasers of those – there was a major macroeconomic change that affected the purchasers of Oracle's products.

5

Goedde Depo. at 80:12-20.  No doubt recognizing that these circular definitions are not

6

defensible, Dr. Goedde changed direction again, defining a "major macroeconomic change" by

7

reference to growth in the economy:

8

9

Q.      I'm asking for your definition of how you know what is a major macroeconomic change.

10

…

11

12

THE WITNESS:        Macroeconomics would be outside the operation of Oracle.  There were several changes.  The economy – overall economy was experiencing a period of lower growth, and the more sector-specific economy was experiencing a change in growth as well.

13

BY MS. KYROUZ:

14

15

[Q.]    Okay.  So a period of lower growth or change in growth is, in your mind, a major macroeconomic change?

16

A.      Yes.

Goedde Depo. at 81:6-17.

17

18

19

20

21

Within this new framework, however, Dr. Goedde could not put any parameters around this change in growth:  "Q.  [O]ver what particular time period would there have to be a lower growth rate for there to be a major macroeconomic change, according to your definition?  A.  It would affect – it's not so much the time period.  It's what the extent of the change was."  Goedde Depo. at 81:18-23.

22

23

Dr. Goedde likewise could not identify any objective, coherent parameters to distinguish a "major" macroeconomic change from any other change:

24

25

Q.      So you think any change in the trend of the economy is a major macroeconomic change?

26

…

27

THE WITNESS:        No, not necessarily.

28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

4

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

BY MS. KYROUZ:

Q.      Okay.  So how do you know if it qualifies to the level of a major macroeconomic change under your definition?

A.      I would look to see what the conditions are of the change, what – I'd have to look in more detail of the different changes.

Goedde Depo. at 83:9-20.  When asked how to determine whether a change was "major," Dr. Goedde responded that it would be "a change [that] would require some sort of activity or action on behalf of the participants in the market," but what that activity or action would be is unknown.  Goedde Depo. at 84:13-23.  Dr. Goedde's opinion regarding a "major macroeconomic change" is nothing more than a label he made up based on definitions even he cannot fully explain.

**B.      Dr. Goedde's Forecasting Process Opinions**

Dr. Goedde's second category of opinions is that Oracle's forecasting process was flawed for a variety of reasons, in particular that "Oracle failed to make adjustments to its forecasting process to account for the negative impact of the changes in the economy and the market for Oracle's products in violation of accepted forecast principles."  Initial Report, p. 4.  This conclusion is based in large part on Dr. Goedde's first opinion that Oracle faced a "major macroeconomic change" going into 3Q01, and Dr. Goedde concedes that he cannot separate the opinions.  *See* Goedde Depo. at 101:13-20.

In addition, in reaching his opinion about Oracle's forecasting process, Dr. Goedde purports to conclude that Jennifer Minton, who was in charge of Oracle's forecasting process in 3Q01, mechanically applied a conversion ratio (sales divided by pipeline) in determining the adjustments she made to the field forecasts, purportedly on the basis of "very little deviation" between Ms. Minton's forecast and the mathematical product of the current pipeline against the prior year's conversion ratio.  *See* Initial Report, pp. 17-22; Rebuttal Report, pp. 74-76; Goedde Depo. at 170:19-171:8.  Yet Dr. Goedde was unable to define what "very little deviation" meant, tie it to any objective, generally accepted framework, or explain why the deviations here still supported his opinion.  Goedde Depo. at 170:19-172:7.

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

5

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1    Rightfully concerned that this "analysis" could not pass muster under *Daubert*,

2  Dr. Goedde created three new regression analyses that purported to support his opinion that

3  Ms. Minton mechanically applied the prior year's conversion ratio to create the current year's

4  forecast.  *See* Goedde Decl. ¶¶ 4-5 & Exs. 1-3; Goedde Rebuttal Decl. ¶¶ 21-32 & Exs. A-B.

5  Each of these three analyses were created after the close of expert discovery and after

6  Defendants illustrated the deficiencies in Dr. Goedde's earlier work in their *Daubert* motion.  His

7  first supplemental analysis is flawed because he does not test what he is purporting to test (he

8  tests amounts rather than the claimed variations between those amounts).  *Compare* Goedde

9  Decl. ¶ 5 *with* Farthing Reply Decl. Ex. 5, ("Foster Rebuttal Decl.") ¶¶ 24-34.  Dr. Goedde's

10  second supplemental regression analysis (Goedde Rebuttal Decl. ¶ 10) is a stepwise regression, a

11  method that the very author Dr. Goedde relies on rejects because it "is an admission of ignorance

12  concerning which variables should be entered."  Farthing 11/9/07 Decl. Ex. 7 at 193-94.  And

13  Dr. Goedde's third supplemental regression, though he interprets it to conclusively demonstrate

14  that Minton mechanically applied the conversion ratio, shows that the movements are closer to

15  random than mechanical in 3Q01.  *See* Goedde Rebuttal Decl. Ex. B (note that three of the eight

16  observations within 3Q01 (lines 26-33) move in the opposite direction, when in a mechanical

17  relationship the observations should move in the same direction every time).

18    Dr. Goedde also claims that Oracle's forecasting process did not take into account

19  macroeconomic information in 3Q01, Initial Report, p. 11-12.  For this conclusion, Dr. Goedde

20  purports to rely on Jennifer Minton's testimony that she "did not consider any economic factors

21  when performing the license – when we prepared the license pipeline conversion package."

22  Initial Report, p. 12.  But this testimony says nothing about the forecasting process generally –

23  only the calculation of one particular metric.  *Id.*

24    For his conclusion that Oracle's process was unreliable and unreasonable, Dr. Goedde

25  relies on a single email from one divisional finance analyst to another.  *See* Farthing Decl. Ex. 5,

26  NDCA-ORCL 203681-83.  From this email, Dr. Goedde assumed that Mr. Ellison sought to, and

27  did, introduce more risk into the forecasting  process.  Initial Report, pp. 4, 22-26.  Dr. Goedde

28

CH1060766

6

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

ATTORNEYS AT LAW
SAN FRANCISCO

either ignored or did not fairly consider Mr. Ellison's testimony on the subject: "Q.  Okay.  At around this time, did you want more risk to be put into the forecasts? … **THE WITNESS:**  *No.* I've always wanted the forecast to be accurate.  You know, I would say slightly conservative but accurate."  Farthing Decl. Ex. 6, Ellison Depo. at 423:7-12 (emphasis added).

Dr. Goedde also accuses Oracle of doubling the risk in the forecast, but his Reports reflect absolutely no scientific or quantitative analysis to show how the risk in the forecast was increased, much less doubled.  Although Dr. Goedde claimed at his deposition that he performed an analysis, it is not reflected in either of his Reports.  *See* Goedde Depo. at 217:3-220:14. Instead, this "analysis" was only belatedly disclosed after Defendants filed their *Daubert* motion. Goedde Decl. ¶¶ 6-10 & Exs. 4-6.  But this "analysis," like Dr. Goedde's other work, is flawed, with Dr. Goedde unreasonably drawing broad conclusions from insufficient analysis and turning a blind eye to data that do not support his conclusions.  *See* Foster Rebuttal Decl. ¶¶ 52-73.

## III.    ARGUMENT

### A.    Legal Standard

Federal Rule of Evidence 702 states that a "witness qualified as an expert by knowledge, skill, experience, training, or education" can offer opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  These requirements apply not just to scientific knowledge, but also to other technical or specialized knowledge.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).  Expert economic analysis qualifies as "technical" or "specialized" knowledge for purposes of *Daubert*.  *See DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003).

The party seeking to introduce expert testimony bears the burden of proving that the expert's testimony is admissible under Rule 702.  *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).  To that end, *Daubert* and its progeny require proposed expert testimony to meet two criteria.  First, the proposed expert must have appropriate "knowledge, skill, experience, training or education" in the field in question. Fed. R. Evid. 702.  The

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

7

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

proposed expert's qualifications must "provide a foundation for a witness to answer a specific question" relevant to the issues at hand. *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). The relevant inquiry is whether a witness has "sufficient *specific knowledge* to deal with the particular issues in the case at hand." *United States v. Webb*, 115 F.3d 711, 718 (9th Cir. 1997) (emphasis added).

Second, if the proposed expert is sufficiently qualified, the court must determine whether his opinions meet "exacting standards of reliability" in the sense required by *Daubert* and *Kumho Tire*.[2] *Weisgram*, 528 U.S. at 455. In that regard, Rule 702 requires that expert testimony be based on objective criteria and reliable scientific methodology before it can be admitted. *See Daubert*, 509 U.S. at 593; *Nimely v. City of New York*, 414 F.3d 381, 396, 399 (2d Cir. 2005). The proffered testimony must be "properly grounded, well-reasoned, and not speculative." Fed. R. Evid. 702, Adv. Comm. Notes (2000). Further, Rule 703 demands that expert witnesses rely only "on information of a kind reasonably relied on by experts in the field." *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997).

Other factors may also be considered where appropriate. *Daubert*, 509 U.S. at 594-95; *see also* Fed. R. Evid. 702, Adv. Comm. Notes (2000). Among the factors courts have considered are:

- Whether the opinion is based on "sound science," "discernible methodology" and an "objective, independent validation" of that methodology. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*"); *Playtex Products, Inc. v. Proctor & Gamble Co.*, No. 02 Civ. 8046, 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003).

- Whether the expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

- Whether the opinion is supported by facts present in the record. *Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242-243 (1993); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

---

[2] Factors articulated by *Daubert* to aid in determining reliability include: (1) whether the expert's theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the theory has achieved general acceptance. *Daubert*, 509 U.S. at 593-94.

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

8

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

**B.     Dr. Goedde's Opinion Regarding Macroeconomic Conditions Facing Oracle In Q301 Should Be Excluded**

**1.     Dr. Goedde Is Not Qualified To Testify Regarding Macroeconomic Conditions Facing Oracle In Q301**

Dr. Goedde lacks the necessary education and experience to opine on macroeconomic conditions Oracle may have faced in 2000-2001.  That Dr. Goedde is trained as an economist does not, without more, qualify him to opine on the macroeconomic conditions facing Oracle in 3Q01.  *See Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) (holding that under FRE 702, "a witness must be qualified in the *specific* subject for which his testimony is offered.  Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.") (emphasis in original).  In that regard, Dr. Goedde's masters and doctorate studies were focused not on macroeconomics, but instead on "industrial organization and international trade and statistics." Goedde Depo. at 47:1-12.  These fields do not involve the kind of macroeconomic analysis Dr. Goedde purports to offer in his opinion.[3]  As such, Dr. Goedde's educational background does not qualify him to opine on the state of the macroeconomic conditions facing Oracle in 3Q01.  *See Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1315 (N.D. Okla. 2000) (excluding physician's testimony, holding that "[t]he simple possession of a medical degree is insufficient to qualify a physician to testify as to the advantages of a spinal fixation device, the

---

[3]     For example, macroeconomics has been defined as "the study of the structure and performance of national economies and the policies that governments use to try to affect economic performance."  Farthing Decl. Ex. 7, ANDREW B. ABEL & BEN S. BERNANKE, MACROECONOMICS at 2 (4th ed. 2001).  In contrast, industrial organization is "the study of the structure of firms and markets and of their interactions. … The study of industrial organization adds to the perfectly competitive model real-world frictions such as limited information, transaction costs, costs of adjusting prices, government actions, and barriers to entry by new firms into a market.  It then considers how firms are organized and how they compete in such a world."  Farthing Decl. Ex. 8, DENNIS W. CARLTON & JEFFREY M. PERLOFF, MODERN INDUSTRIAL ORGANIZATION at 2 (2d ed. 1994).  International economics is the study of "issues raised by the special problems of economic interaction between sovereign states."  Farthing Decl. Ex. 9, PAUL R. KRUGMAN & MAURICE OBSTFELD, INTERNATIONAL ECONOMICS at 3 (6th ed. 2003).

medical causation of spine-related ailments, or the mechanical functioning of an orthopedic

implantation device").

Moreover, Dr. Goedde has never published any research assessing or evaluating

macroeconomic conditions, nor has he previously analyzed macroeconomic conditions in the

years 2000 and 2001, or prepared a macroeconomic forecast. Goedde Depo. at 73:16-18; 77:23-

78:7.  His only prior experience opinion on macroeconomic conditions involved alleged expert

testimony on economic conditions facing the semiconductor industry in the late 1990's.  *Id.* at

23:2-15.  That experience, of course, does not qualify him as an expert in the field.  *See Thomas

J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) (noting that "it would be

absurd to conclude that one can become an expert simply by accumulating experience in

testifying").[4]  Lacking any education, training, or experience in assessing macroeconomic

conditions, Dr. Goedde is not qualified to opine on the state of the economy in 2000-2001 and

how the economy may have affected Oracle.  *Berry*, 25 F.3d at 1351 (the witness' qualifications

must "provide a foundation for a witness to answer a specific question.").

### 2. Dr. Goedde's Opinion Regarding A Major Macroeconomic Change is Unreliable and Unscientific

Setting aside his lack of qualifications, Dr. Goedde's methods fall far short of the

"exacting standards of reliability" required by *Daubert* and Rule 702.  *Weisgram*, 528 U.S. at

455.  His opinion that "Oracle was facing a major macroeconomic change heading into Q301

resulting in a decline in the market for its products," Initial Report, p. 4, is wholly subjective and

unscientific, and fails to meet any meaningful standard of reliability.  Indeed, Dr. Goedde's

---

[4]      In contrast, Defendant's macroeconomics expert, Professor R. Glenn Hubbard, Ph.D., served as an advisor to President-Elect Bush and as the Chairman of President Bush's Council of Economic Advisers in the 2000-2001 time period. Farthing Decl. Ex. 10, Hubbard Report ¶ 6.  The Council of Economic Advisers exists "to gather timely and authoritative information concerning economic developments and economic trends, both current and prospective, to analyze and interpret such information for the purpose of determining whether such developments and trends are interfering, or are likely to interfere, with the achievement of such policy, and to compile and submit to the President studies relating to such developments and trends."  *See* http://www.whitehouse.gov/cea (visited Sept. 20, 2008).

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

10

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

"method" – and the very phrase "major macroeconomic change" – appear to have been made up for the sole purpose of offering an opinion in this case.[5]

### a.   Dr. Goedde Cannot Reliably Define A "Major Macroeconomic Change"

One key touchstone of a reliable, scientific opinion is that it be based upon "objective criteria."  Fed. R. Evid. 702; *see also* Fed. R. Evid. 702, Adv. Comm. Notes (2000); *Nimely*, 414 F.3d at 399 (rejecting expert opinion premised on "unverifiable subjectivity").  Dr. Goedde's opinion that Oracle faced a "major macroeconomic change" fails this most basic test.

Dr. Goedde concedes that "major macroeconomic change" is not a term of art within the field of macroeconomics, has not been used in any peer-reviewed article, and indeed, has no established, objective definition among macroeconomists.  Goedde Depo. at 84:24-85:4.  Lacking any established, objective definition generally accepted by experts in the field, Dr. Goedde simply made one up – or at least tried.  During his deposition, however, Dr. Goedde was utterly unable to provide a coherent definition of the term.  *See* Section II.A, *supra*; Goedde Depo. at 79:6-84:23.

He began with a thoroughly circular definition, under which a "major macroeconomic change" (which Dr. Goedde would ultimately conclude fundamentally affected Oracle's business), is defined as a macroeconomic change that affects Oracle's business.  *See* Goedde Depo. at 79:6-11.  He later defined it as a change affecting Oracle's customers, but this definition was also circular, using the very phrase "major macroeconomic change" to define itself.  *See id.* at 80:12-20.  He finally defined it, amorphously, as "a period of lower growth" or a "change in

---

[5]   Dr. Goedde appears to have made up this term in order to invoke lay testimony of Mr. Ellison that if there had been a "major macroeconomic change," it would no longer be possible to "extrapolate" based on historical trends.  Initial Report, p. 18; Farthing Decl. Ex. 6, Ellison Depo. at 384:6-385:7.  Having done so, however, Dr. Goedde rejected Mr. Ellison's own definition of the term (a "sudden growth in the economy or sudden shrinkage in the economy"), presumably because the economic data do not support Dr. Goedde's conclusion under that definition, as he conceded in his deposition.  *See* Goedde Depo. at 181:2-182:17.  ("There was not a contraction in the economy.").

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

11

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1    growth."  *See id.* at 81:6-17.[6]  But even with this change, Dr. Goedde was unable to quantify the

2    degree of change necessary to qualify as a "major" change or the period of time over which the

3    change would occur.  *See id.* at 81:18-84:23.

4          Simply put, the phrase "major macroeconomic change" is a label that Dr. Goedde created

5    *solely for purposes of this litigation* to mislead the trier of fact concerning the state of the

6    economy in Oracle's 3Q01.  Goedde Depo. at 85:13-15.  It is a "subjective, conclusory

7    approach" that lacks any objective criteria, and therefore it "cannot reasonably be assessed for

8    reliability."  Fed. R. Evid. 702, Adv. Comm. Notes (2000).  It therefore fails to meet the

9    requirements of *Daubert* and Rule 702.  *Id.*; *Nimely*, 414 F.3d at 399.

10                **b.      There Is No Objective or Scientific Basis for Selecting the Five
                           Factors Dr. Goedde Relied Upon in Concluding That A "Major
11                         Macroeconomic Change" Occurred**

12         Expert opinions that do not rely "on information of a kind reasonably relied on by experts

13   in the field" are not admissible under Rule 703.  *Redman*, 111 F.3d at 1179.  Here, Dr. Goedde

14   relied on five factors in assessing the macroeconomic climate as of Oracle's 3Q01:  (1) the

15   NASDAQ index; (2) Oracle's sales to dot com companies; (3) press reports that venture capital

16   investment declined; (4) anecdotal reports that "[b]y November 2000, technology spending was

17   down considerably and companies had problems acquiring financing;"[7] and (5) that Cisco

18   Systems and Sun Microsystems purportedly lowered earnings expectations during Oracle's

19   3Q01.  Initial Report, pp. 4-8.  As with Dr. Goedde's creation of the phrase "major

20   macroeconomic change," there is absolutely no science behind Dr. Goedde's selection of these

21   five factors.

22

23

24   [6]      Indeed, it was only after four previous attempts to define "major macroeconomic change"
             that Dr. Goedde actually made reference to a macroeconomic factor (growth in the
25           overall economy) and recognized that "[m]acroeconomics would be outside the operation
             of Oracle."  Goedde Depo. at 79:6-81:13.
26
     [7]     Dr. Goedde later conceded that the U.S. government data showed that spending on
27           software continually increased during calendar year 2000.  Goedde Depo. at 120:20-
             122:17 ("THE WITNESS:   Those numbers are increasing over time.").
28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

12

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1    Dr. Goedde cites no objective criteria for selecting the five factors he relied upon, nor

2 does he cite any published research or authoritative source suggesting that an expert in the field

3 can reliably assess macroeconomic conditions by analyzing those five factors.  *See* Reports at

4 *passim*.  Indeed, Dr. Goedde has not cited any rationale (let alone a scientific basis) for relying

5 on these factors, and other than the fact that they support his conclusion, there appears to be

6 none.  To be admissible under *Daubert*, Dr. Goedde would have needed to:

7    explain precisely how [he] went about reaching [his] conclusions and point to
     some objective source – a learned treatise, the policy statement of a professional
8    association, a published article in a reputable scientific journal or the like – to
     show that [he has] followed the scientific method, as it is practiced by (at least) a
9    recognized minority of scientists in their field.

10 *Daubert II*, 43 F.3d at 1319.

11   Instead, the factors Dr. Goedde relied upon bear no resemblance to the economic

12 indicators actually relied upon by experts in the field to evaluate macroeconomic trends.  For

13 example, the "policy statement of a professional association," namely the Business Cycle Dating

14 Committee of the National Bureau of Economic Research ("NBER"),[8] which "maintains a

15 quarterly chronology of the U.S. business cycle," identifies peaks and troughs in the business

16 cycle based on four factors:  industrial production, employment, real income, and wholesale-

17 retail trade (or in other words, the volume of sales of the manufacturing and trade sectors).  *See*

18 Farthing Decl. Ex. 11 at 1, 6.   In analyzing industrial production and manufacturing/trade sales,

19 NBER relies on data provided by the Federal Reserve and the Commerce Department's Bureau

20 of Economic Analysis, respectively.  *Id.*  Dr. Goedde did not rely on any of these factors in

21 forming his opinion here.  Initial Report, pp. 4-8.

22   Notably, Dr. Goedde's conclusion that Oracle experienced a "major" (and downward)

23 "macroeconomic change" beginning with the decline of the NASDAQ in *March 2000* is

24 contradicted by the NBER's conclusion, announced in November 2001, that business activity in

25

_____

26 [8]   The NBER was founded in 1920 and is "the nation's leading nonprofit economic research
     organization. Sixteen of the 31 American Nobel Prize winners in Economics and six of
27   the past Chairmen of the President's Council of Economic Advisers have been
     researchers at the NBER."  *See* http://www.nber.org/info.html (visited Sept. 20, 2008).

28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

13

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

the U.S. continued to grow throughout 2000 and ultimately peaked in *March 2001* – after the close of Oracle's 3Q01.  Farthing Decl. Ex. 11.  This fact strongly undercuts Dr. Goedde's opinion and demonstrates its unreliability.  *See* Fed. R. Evid. 702, Adv. Comm. Notes (2000) ("when an expert purports to apply principles and methods in accordance with professional standards, and yet reaches a conclusion that other experts in the field would not reach, the trial court may fairly suspect that the principles and methods have not been faithfully applied"); *see also Lust*, 89 F.3d at 598.

> **c.  Dr. Goedde Offers No Reliable, Scientific Basis for Connecting His "Major Macroeconomic Change" to Oracle's Business**

But even if Dr. Goedde had properly determined that a "major macroeconomic change" had occurred beginning in March 2000, he has still failed to explain how this purported change affected Oracle's business.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion offered."  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Zenith Elec. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005) (excluding expert testimony and concluding, that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process").

Ostensibly, the purpose of Dr. Goedde's work was to demonstrate that by the beginning of 3Q01, Oracle faced a significant change in its business and, more specifically, in its ability to forecast quarterly sales and profits.  Put another way, unless the "major macroeconomic change" that Dr. Goedde observes had some meaningful impact on Oracle's business and its ability to forecast quarterly results, Dr. Goedde's opinion is utterly irrelevant to the case.  *See* Fed. R. Evid. 702 (only permitting expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue").  Given the apparent purpose of his work, one would expect Dr. Goedde to analyze economic factors that have a demonstrable impact on Oracle's business, or at least some observable correlation with them.  He did not.

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

14

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

In fact, Dr. Goedde made absolutely no effort to show that the factors he analyzed had any impact on Oracle's business at all, much less an impact that significantly hampered Oracle's ability to forecast its quarterly results.  For example, Dr. Goedde performed no analysis, let alone a scientific one, to show that Oracle's forecasting process was unable to properly account for any supposed decline in sales to dot-com customers, or any other customers.  Initial Report at pp. 12-16.

As for the remaining factors, Dr. Goedde has done nothing to show that they have any relationship at all with Oracle's business.  Dr. Goedde did not analyze the relationship, if any, between Oracle's quarterly sales and movements in the NASDAQ index, changes in "technology" spending, and venture capital investment.  Had he done so, he would have found (as Defendants' experts did) that there is no meaningful correlation.  *See also* Farthing Decl. Ex. 12, Hubbard Rebuttal ¶¶ 61-102; Farthing Decl. Ex. 13, Foster Report ¶ 63.  More to the point, if Dr. Goedde had performed that analysis, he would have also had to explain away the inconvenient truth that despite the NASDAQ losing nearly half its value between March 1, 2000 and November 30, 2000, Oracle grew year-over-year license revenues over that time by 21%, 34% and 30% in 4Q00, 1Q01 and 2Q01 respectively, before projecting 25% growth for 3Q01.  Goedde Report Ex. 24.  Dr. Goedde's failure to demonstrate a connection between the five factors he analyzed and Oracle's business can hardly be considered the "intellectual rigor that characterizes the practice of" macroeconomists.  *Kumho Tire*, 526 U.S. at 152.  As such, Dr. Goedde's opinion that Oracle faced a "major macroeconomic change" is inadmissible.  *Id.*

**C.     Dr. Goedde's Opinions Regarding Oracle's Forecasting Process Should Be Excluded**

**1.     Dr. Goedde's Opinions Regarding Oracle's Forecasting Process Are Based On His Inadmissible Opinion That Oracle Was Facing A Major Macroeconomic Change**

Dr. Goedde opines that Oracle's forecasting process was flawed because, among other perceived deficiencies, it failed to consider the major macroeconomic change facing Oracle in Q301.  Initial Report, pp. 17-22; Rebuttal Report, pp. 76-81.  This opinion is based upon Dr. Goedde's opinion that Oracle confronted a major macroeconomic change, which is itself

Attorneys At Law
San Francisco

CH1060766

15

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1   unscientific and unreliable by *Daubert* standards.  *See* discussion *supra* at Section III.B.  As

2   such, his opinion regarding Oracle's forecasting process is also unreliable and is inadmissible for

3   the same reasons.[9]  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)

4   (holding that "any step that renders the analysis unreliable under the *Daubert* factors renders the

5   expert's testimony inadmissible") (citations and internal quotations omitted).

6              **2.**      **Dr. Goedde's Opinions Regarding Oracle's Forecasting Process are**
                                **Unreliable and Unscientific**

7           Setting aside the reliance on Dr. Goedde's first, inadmissible opinion, Dr. Goedde's

8   opinions about Oracle's forecasting process independently fail the *Daubert* test.  In particular,

9   Dr. Goedde makes numerous conclusions without testing his hypotheses, and relies on premises

10   that are expressly contradicted by the record.  These defects also render his opinions regarding

11   Oracle's forecasting process inadmissible.  *See Daubert*, 509 U.S. at 593; *Supply & Bldg. Co. v.*

12   *Estee Lauder Int'l, Inc.*, No. 95 CIV.8136(RCC), 2001 WL 1602976, at *5 (S.D.N.Y. 2001)

13   (rejecting expert who relied on premises that were "contradicted by other data available to [the

14   expert]").

15           As noted above, Dr. Goedde's opinions rely in part on his criticism that Ms. Minton

16   improperly derived the Potential Projection for Q301, when the NASDAQ index was decreasing,

17   from the Conversion Ratio in Q300, when the NASDAQ was increasing.  Initial Report, pp. 5,

18   19-20.  In so doing, Dr. Goedde simply ignored Ms. Minton's testimony as to how she derived

19   the Potential Projection.  Farthing Decl. Ex. 4, Minton Depo. at 121:24-126:24 (testifying that

20   her upside adjustments were based on a number of factors, including:  1) the status of large deals;

21   2) the best, forecast and worst case numbers for each division; 3) the actual conversion ratio

22   from the same quarter in the prior year; 4) an analysis of the opportunities for the current quarter

23   and the likelihood that they would close informed by discussion with field sales and finance

24   personnel; and 5) the "forecasting behaviors" of the individuals involved in the process and

25   whether they historically sandbagged).  Dr. Goedde's assumptions are contradicted by Ms.

26

---

27   [9]      Dr. Goedde admits the two opinions cannot be separated.  *See* Goedde Depo. at 101:13-
         20 ("I didn't segment it to determine what the weight was for each of these factors.").

28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

16

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  Minton's testimony and his conclusions are therefore unreliable and inadmissible.  *See Guillory*,

2  95 F.3d at 1331 (holding that expert testimony based on facts contradicted by the record was

3  properly excluded because "[e]xpert evidence based on a fictitious set of facts is just as

4  unreliable as evidence based upon no research at all").

5       Dr. Goedde also claims that Oracle's forecasting process did not take into account

6  macroeconomic information in 3Q01, again misconstruing Ms. Minton's very clear testimony.

7  Initial Report, pp. 11-12.  As both Professors Hubbard and Foster have demonstrated,[10] the

8  record amply demonstrates that macroeconomic information was taken into account in Oracle's

9  forecasting process and that the process was historically accurate.[11]  Dr. Goedde's conclusion is

10  based solely on his own say-so, yet is contrary to Ms. Minton's testimony, and is therefore

11  unreliable.  *See Brooke*, 509 U.S. at 242-243 ("When an expert opinion is not supported by

12  sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict

13  or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Supply &*

14  *Bldg. Co.*, 2001 WL 1602976, at *5.

15       Additionally, Dr. Goedde implicitly assumed that the direction of the NASDAQ index

16  had an effect on Oracle's conversion ratio.  Otherwise, his criticism of Ms. Minton for using a

17  conversion ratio from a period when NASDAQ was rising to forecast sales during a period when

18  NASDAQ was decreasing would make no sense.  But he performed absolutely no empirical

---

[10]  *See* Farthing Decl. Ex. 13, Foster Report ¶¶ 56-61 (opining that macroeconomic information was incorporated through "1) sales representatives' deal-level forecast, which were based on their discussions with customers; and 2) management judgment based on discussions between managers and their direct reports, their customers, and other internal company information as well as their understanding of the world around them); *id.* ¶ 62 (demonstrating that Oracle's EPS projections were consonant with those of securities analysts, who are incorporating market information into their projections); Farthing Decl. Ex. 12, Hubbard Rebuttal ¶¶ 51-60 ("economic data are incorporated to inform the [forecasting] process").

[11]  Professor Foster concluded that the Potential Forecast, generated by the forecasting process, was indeed Oracle's most accurate forecasting metric.  Farthing Decl. Ex. 13, Foster Report ¶ 114; *see also In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 941 (Del. Ch. 2004).  Professor Foster analyzed the Potential Forecast for six of seven quarters prior to Q3 FY01 and established that Oracle's forecasting process yielded a Potential Projection that was conservative when compared to Actual Results.  *Id.* at ¶¶ 47, 114.

1   analysis to confirm this hypothesis; he simply assumed there was a meaningful relationship

2   between the two.  Initial Report, pp. 19-20.  In contrast, Professor Foster's quantitative analysis

3   compared Oracle's conversion ratio in quarters prior to Q301 and found that Dr. Goedde's

4   hypothesis was false – there was no relationship between Oracle's conversion ratios and the

5   direction of the NASDAQ index.  Farthign Decl. Ex. 13, Foster Report ¶ 63.  Dr. Goedde's

6   failure to even try to test his hypothesis, and the fact that it is demonstrably false, further

7   undercuts his opinion.  *See Daubert*, 509 U.S. at 593 (scientific methodology requires generating

8   and testing hypotheses).[12]

9
   ### a.    Dr. Goedde's Opinion That Ms. Minton's Forecasts Were Mechanically Derived Is Unreliable

10   Dr. Goedde concluded that Ms. Minton mechanically applied the prior year's conversion

11   ratio to the current year's pipeline to determine her upside adjustments and Oracle's forecast (the

12   "Potential Forecast").  *See* Goedde Rebuttal Decl. ¶ 3 ("the prior year's conversion rate was *the*

13   *basis* for the Potential Forecast") (emphasis added).  The results of Dr. Goedde's own (flawed)

14   analyses categorically reject such a conclusion, and instead support Ms. Minton's testimony that

15   multiple factors were weighed, according to her judgment and experience, in making the upside

16   adjustments.  Yet, Dr. Goedde has unreasonably persisted in this untenable conclusion.  *See*

17   *Cavallo v. Star Enter.*, 892 F. Supp. 756, 762 (E.D. Va. 1995) (courts must ensure "that there is a

18   scientifically valid link between the sources or studies consulted and the conclusion reached"),

19   *aff'd in part, rev'd in part*, 100 F.3d 1150 (4th Cir. 1996), *cert. denied*, 522 U.S. 1044 (1998).

20

---

21   [12]   Dr. Goedde's subsidiary opinions regarding the forecasting process, including the
22   hockey-stick effect and certain of Oracle's internal forecasting measures suffer from
       similar defects.  Initial Report, pp. 4, 26-51.  For instance, Dr. Goedde contends that
23   Oracle's actual monthly revenues "informed defendants that Oracle would not meet its
       Public Guidance," Initial Report, p. 51, but Professor Foster concluded that not only was
24   Dr. Goedde's analysis improperly constructed, Farthing Decl. Ex. 13, Foster Report ¶¶
       70-77, but that a properly constructed analysis shows that there is no predictive value to
25   actual revenues for the first two months of a quarter.  *Id.* at ¶¶ 72-76.  Similarly,
       Dr. Goedde concludes that "[s]ignificant pipeline declines" over the course of 3Q01
26   "informed defendants … that Oracle was being adversely affected by the economic
       environment," Initial Report, p. 37, but Professor Foster demonstrated that as a matter of
27   historical fact, Oracle tended to have greater revenue growth in quarters where the
       pipeline decreased.  Farthing Decl. Ex. 13, Foster Report ¶¶ 108-10.

28

ATTORNEYS AT LAW
SAN FRANCISCO
CH1060766
18
DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1    To begin with, and at the simplest level, using Dr. Goedde's figures to compare the prior

2    year's conversion rate to the current year's conversion rate shows they are not the same.  Goedde

3    Decl. Ex. 1.  In fact, they often differ dramatically, like on December 11, 2000, when Ms.

4    Minton predicted a 48% conversion rate compared to the 53% actually achieved a year earlier.

5    *Id.*  It is therefore unsurprising that because the conversion rates differ, at no point over more

6    than a year of observations does Ms. Minton's actual forecast equal what the forecast would be if

7    Dr. Goedde's conclusion were correct.  Goedde Decl. Ex. 2.  Instead, the closest the two

8    numbers come is $5 million, the difference averages over $100 million, and is nearly $145

9    million on December 11, 2000 (the forecast on which Oracle's public guidance was based).  *Id.*

10   Quite simply, other factors must be in play besides the prior year's conversion rate.[13]  Similarly,

11   Dr. Goedde's analysis admits that between February 26, 2001 and February 28, 2001, the

12   Potential projection declined by 11% – almost $139 million – even though the pipeline remained

13   the same.  Rebuttal Report at Ex. 4.  If Dr. Goedde's hypothesis were correct (that Minton

14   performed a mechanical application of the prior year's conversion ratio to the current quarter's

15   pipeline to derive the Potential projection), the Potential on February 28, 2001 would have been

16   the same as it had been two days earlier.

17   Though Dr. Goedde's regression analyses prove the truthfulness of Ms. Minton's

18   testimony, he continues to be in denial.  At the commonly used 95% confidence interval, the

19   regression proffered in the Goedde Declaration (at Ex. 3), would predict a forecast on December

20   11, 2000 of between $1.299 billion and $1.559 billion – a range of nearly $260 million that

21   implies other factors and judgment must affect Ms. Minton's forecasts.  Foster Rebuttal Decl. ¶

22   36.  And the stepwise regression in the Goedde Rebuttal Declaration similarly explains that there

23   are three statistically significant variables besides the prior year's conversion ratio that help

24   determine Ms. Minton's forecast.  Goedde Rebuttal Decl. Ex. A.  Finally, his first differences

25   regression shows that during 3Q01, changes in Ms. Minton's forecast moved in the *opposite*

26

27   [13]    It is also worth noting that 88% of the time, the forecast Ms. Minton created was more
         conservative than what the historical conversion ratio would have suggested.  Goedde
         Decl. Ex. 2.

28

CH1060766

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

direction as changes in the forecast supposed by the prior year's conversion ratio (the "Goedde Forecast") three times out of eight.  *Id.* Ex. B.  If the relationship between the two were completely random, they should differ four times out of eight.  That the movements are closer to random than the eight of eight that would be expected if "the prior year's conversion rate was the basis for the Potential Forecast," is telling.  Goedde Rebuttal Decl. ¶ 3.  Thus, even accepting Dr. Goedde's work at face value, it cannot support the conclusion he purports to draw from it; rather it supports Ms. Minton's testimony that she weighed many factors and exercised her judgment in determining Oracle's forecasts.

But wholly apart from the unreliability of the conclusions he draws from his analyses, Dr. Goedde's analyses are themselves unreliable.  Dr. Goedde claims that his first regression proves that "variations" in the forecast based on the prior year's conversion ratio explain 94% of "any variations over time" in Minton's forecast.  Goedde Decl. ¶ 5.  But that is not the regression he actually performed.  Dr. Goedde's regression analysis did not test for any correlation between *variations* in the Goedde Forecast and *variations* in Ms. Minton's forecast.  Foster Rebuttal Decl. ¶¶ 24-34.  Instead, it tested the correlation between the *amount* (dollar value) of the Goedde Forecast on a given date and the *amount* of Ms. Minton's forecast on that same date.  *Id.*  As such, Dr. Goedde's regression cannot and does not show a statistically significant relationship between *variations* in the Goedde Forecast and *variations* in Ms. Minton's forecast.

Moreover, by testing the relationship between the amounts of each observation, rather than the variations between them, Dr. Goedde has committed a fundamental methodological error.  Ms. Minton's forecast and the Goedde Forecast are what economists refer to as "time series" data.  Foster Rebuttal Decl. ¶¶ 37-51.  Since most time series data tend to vary relatively little from one observation to the next and may have in common underlying trends, a regression of the amounts or levels of time series data will overstate the explanatory power of the regression simply because the two variables both move in the same time frame.  *Id.*  Indeed, for this reason the Federal Judicial Center's Reference Manual on Statistical Evidence specifically cautions

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

20

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

against drawing conclusions regarding explanatory power based on the correlations of such variables.[14]

Had Dr. Goedde actually done the analysis he purported to do – regressing the variations – his result would have been entirely different.  Professor Foster performed that regression appropriately and determined that the *variations* in the Goedde Forecast explain *only about two percent* of the variations in the dollar value of Ms. Minton's forecast – not the 94% claimed by Dr. Goedde.  Foster Rebuttal Decl. ¶ 34.  Dr. Goedde also fails to ignore the differences among the quarters in Oracle's fiscal year, which further skews his analysis.  *Id.* at ¶¶ 37-51.  Professor Foster accounted for this seasonality, which itself explains more of the variation in Ms. Minton's forecasts than does Dr. Goedde's regression.  *Id.* at ¶ 48 & Fig. 13.

In responding to Professor Foster's criticism, Dr. Goedde used a stepwise regression that he concluded supported his conclusion "that the prior year's conversion rate was the basis for" Ms. Minton's forecasts.  Goedde Rebuttal Decl. ¶ 3.  Yet the use of stepwise regressions in economic analysis has been uniformly criticized by leading authors in the field.  Farthing 11/9/07 Decl. Ex. 7 at 193-94 ("[M]ost researchers avoid stepwise regressions. … Using a stepwise procedure is an admission of ignorance concerning which variables should be entered."), Ex. 8 at 401 ("[E]conomists have tended to avoid stepwise regression methods" because there is "good reason to be skeptical of a 'model' that is constructed entirely by mechanical means."), Ex. 9 at 52 ("[S]tepwise regression is to be avoided.").[15]  A purported expert that uses models rejected by

---

[14]    As stated in the Federal Judicial Center's Reference Manual on Statistical Evidence: "Since most aggregate time series have substantial growth, or trend, in common, it will not be difficult to 'explain' one time series using another time series, simply because both are moving together.  It follows as a corollary that a high $R^2$ does not by itself mean that the variables included in the model are the appropriate ones."  Farthing Reply Decl. Ex. 6 at 216; Farthing Reply Decl. Ex. 7 at 560-62 ("[R]egression of one random walk on another is virtually certain to produce a significant relationship, even if the two are, in fact, independent.").

[15]    *See also McCleskey v. Zant*, 580 F. Supp. 338, 369 n.7, 376 (N.D. Ga. 1984) ("Any model produced by stepwise regression would not meet the legal statistical conventions discussed earlier in that the model is not validated by a person who is by experience or learning acquainted with how the process actually works. … [S]tepwise regression can present a very misleading picture through the presentation of models which have relatively high $r^2$ and have significant coefficients but which models do not really mean

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

21

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  published authorities, and then interprets the results of those models in a way that is contrary to

2  their results is not reliable, and Dr. Goedde's opinions regarding the derivation of Ms. Minton's

3  forecasts therefore cannot be admissible.

4  **b.    Dr. Goedde's Opinion That A Directive From Mr. Ellison Doubled the Risk In Oracle's Forecasts Is Unreliable**

5  Finally, Dr. Goedde's opinion that Mr. Ellison directed that more "risk" be included in

6  the forecast, causing the forecast process to be flawed (Initial Report, pp. 4, 22-26), is unreliable

7  because it is based on a misreading of the documentary record and deposition testimony, and is

8  also contradicted by the data.[16]  At first, Dr. Goedde's opinion that more "risk" was introduced

9  into the forecasting process was not supported by any quantitative analysis.  *See* Initial Report,

10  pp. 22-26; Rebuttal Report, pp. 81-84.  Instead, he simply assumed on the basis of single email

11  between two finance employees in one department that sales personnel across the country or

12  world all uniformly received and followed the supposed "directive" in a way that miraculously

13  ended sandbagging despite it being contrary to their own interests and incentives.  *See* Goedde

14  Depo. at 223:18-224:15.  This lack of methodology is consistent with the other "I know it when I

15  see it" opinions offered by Dr. Goedde.

16  Dr. Goedde opined that as a result of this "directive" from Mr. Ellison that the amount of

17  management judgment in the field forecast increased, thus "eliminating the need for Ms.

18  Minton's upside adjustments."  Rebuttal Report at 84; Initial Report at 23 ("Ellison directed a

19  significant change that rendered Minton's upside adjustments unnecessary and unreliable.").

20

21  anything.  *Because of this the court cannot accord any weight to any evidence produced by the model created by stepwise regression*.") (emphasis in original), *rev'd on other grounds sub nom. McCleskey v. Kemp*, 753 F.2d 877 (11th Cir. 1985), *aff'd*, 481 U.S. 279 (1987).

22

23  [16]  Dr. Goedde's conclusion is based on a misconstruction of Mr. Ellison's deposition testimony, and is therefore inadmissible.  *Supply & Bldg. Co.*, 2001 WL 1602976, at *5 (rejecting expert who relied on premises that were "contradicted by other data available to [the expert]").  Mr. Ellison specifically testified that he did not request more risk, but rather he "always wanted the forecast to be accurate. … slightly conservative but accurate."  Farthing Decl. Ex. 6, Ellison Depo. at 423:7-12.  Indeed, Dr. Goedde does not discuss this testimony in his Initial Report to explain why he disregarded it or found it not credible.  Dr. Goedde's opinion on this subject is therefore unreliable and inadmissible.  *See Guillory*, 95 F.3d at 1331.

However, Dr. Goedde utterly failed to prove this is true. Even if Dr. Goedde could have shown that there was more judgment in the field forecasts after a purported "directive," he still has not completed the syllogism to show how this actually eliminated the need for Minton's Upside adjustments in 3Q01. In fact, despite the purported directive in September or early October 2000, the field's forecasts for 2Q01 were below the actual results, especially earlier in the quarter, as shown in the table below:[17]

| Division | 2Q01 Actuals | October 9, 2000 Forecast | November 3, 2000 Forecast | November 27, 2000 Forecast |
|----------|--------------|--------------------------|---------------------------|----------------------------|
| NAS | $278,636,000 | $260,089,000 | $270,001,000 | $284,167,000 |
| OSI | $153,227,000 | $149,973,000 | $149,973,000 | $150,000,000 |
| OPI | $108,699,000 | $87,000,000 | $87,000,000 | $97,001,000 |
| Total | $540,562,000 | $497,062,000 | $506,974,000 | $531,168,000 |

The above data clearly demonstrate a continuing need for Minton's Upside adjustments, even after the purported directive, as the sales force continued to sandbag, just as Ellison believed they would. Farthing Reply Decl. Ex. 3 at 425:5-21.

In addition, Dr. Goedde's new analysis of the purported increase in judgment in the field forecasts after the purported directive in the Goedde Declaration is misleading and unreliable because he draws conclusions from insufficient data and fails to address the total amount of judgment in the Potential. Foster Rebuttal Decl. ¶¶ 64-73. As to OPI and OSI, Dr. Goedde only considers one and two pre-"directive" data points, respectively, which provide an insufficient basis for his conclusions. *Id.* at ¶ 67. As to NAS, Dr. Goedde ignores that large amounts of judgment had been used before and after the purported "directive," *id.* at ¶ 68, and also fails to measure the total amount of judgment in the Potential, which would be necessary to reach his conclusion that Ms. Minton's upside adjustments were rendered unnecessary by the purported "directive." *Id.* at ¶¶ 70-73. In fact, using Dr. Goedde's own selected weeks for observations, the average amount of total judgment (by managers, Mr. Roberts and Ms. Minton) above the NAS field forecast *decreased* from 25 percent before the "directive" to just 18 percent after the

---

[17]     Farthing Reply Decl. Ex. 8 at 975588; Farthing Reply Decl. Ex. 9 at 1532638; Farthing Reply Decl. Ex. 10 at 1532705; Farthing Reply Decl. Ex. 11 at 1532782. All figures at budget rates and all forecasts are exclusive of Ms. Minton's adjustments.

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

23

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1    directive.  *Id.* at ¶ 71.  Similarly, it is clear that Minton used proportionately less upside

2    adjustments in 3Q01 than in prior quarters (Farthing Decl. Ex. 10 at ¶ 189), consistent with her

3    testimony that she would "take into consideration the number of upside deals that were not in the

4    forecast, and any other input that I may have received from the field."  Farthing Reply Decl. Ex.

5    2 at 207:8-11.  Dr. Goedde has failed to demonstrate a necessary step in his analysis, and as a

6    result, his conclusions are unreliable and should be excluded.  *Amorgianos*, 303 F.3d at 267.

7        **D.    The Goedde Declaration and Goedde Rebuttal Declaration Are Untimely
                 And Concede That Dr. Goedde's Prior Work Is Unreliable And Inaccurate**

8            On March 5, 2007, this Court entered as an order the parties' stipulated schedule for

9    expert discovery, which provided for an initial simultaneous exchange of expert reports on May

10   25, 2007, another simultaneous exchange of rebuttal reports on June 22, 2007, and the close of

11   expert discovery on July 12, 2007.  Farthing Reply Decl. Ex. 12 at 2; *see also* Fed. R. Civ. P.

12   26(a)(2)(C) ("These disclosures shall be made at the times and in the sequence directed by the

13   court.").  Rule 26 requires that an expert's report "contain a complete statement of all opinion to

14   be expressed and the basis and reasons therefor."  Fed. R. Civ. P. 26(a)(2)(B).

15           The Goedde Declaration and Goedde Rebuttal Declarations are untimely on their face,

16   and they, together with Dr. Goedde's earlier reports and testimony, should be excluded both

17   because Plaintiffs have willfully disobeyed the Court's scheduling order, and also because it is

18   now patent that the Initial Report and Rebuttal Report do not "contain a complete statement of all

19   opinions to be expressed [by Dr. Goedde] and the basis and reasons" for those opinions as

20   required by Rule 26.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106

21   (9th Cir. 2001) (holding that "exclusion is an appropriate remedy for failing to fulfill the required

22   disclosure requirements of Rule 26(a)," even absent a showing of bad faith or willfulness); *Avila*

23   *v. Willits Envtl. Remediation Trust*, No. C 99-3941 SI, 2008 WL 360858, at *16 (N.D. Cal. Feb.

24   6, 2008) (striking supplemental expert declaration because "much of this second declaration

25   contains statements of opinion and explanations of methodology that could and should have been

26   included in [the expert]'s original *prima facie* declaration"); *Keener v. United States*, 181 F.R.D.

27   639, 642 (D. Mont. 1998) ("If the [later disclosure] is supplemental evidence, then, of necessity,

28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

24

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1   the [party submitting it] must concede that the first disclosure did not comply with Rule 26.");

2   *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information … as required by

3   Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence

4   on a motion, at a hearing, or at trial, unless the failure was substantially justified or is

5   harmless.").

6         The belated creation and production of the Goedde Declaration and Goedde Rebuttal

7   Declaration have deprived Defendants of the opportunity to depose Dr. Goedde with respect to

8   these new opinions and analyses.  Nevertheless, expert discovery is now closed, and the Goedde

9   Declaration and Goedde Rebuttal Declaration should both be excluded, in addition to

10  Dr. Goedde's earlier reports and testimony, which Dr. Goedde has now conceded are incomplete

11  and inaccurate.  *Keener*, 181 F.R.D. at 640 ("Supplemental opinions are required under

12  Rule 26(e)(1) in only three situations:  1) upon court order; 2) when the party learns that the

13  earlier information is *inaccurate or incomplete*; or 3) when answers to discovery requests are

14  inaccurate or incomplete.") (emphasis added).

15  **IV.    CONCLUSION**

16        For the foregoing reasons, Defendants respectfully request that Dr. Goedde's Reports and

17  opinions be excluded in their entirety.

18  Dated:  October 20, 2008              Respectfully submitted,
                                 LATHAM & WATKINS LLP

19

20                           By:_____/s/ Peter A. Wald_____

21                             Peter A. Wald

22                             Attorneys for Defendants ORACLE
                               CORPORATION, LAWRENCE J.

23                             ELLISON, JEFFREY O. HENLEY, and
                               EDWARD J. SANDERSON

24

25

26

27

28

ATTORNEYS AT LAW
SAN FRANCISCO

CH1060766

25

DEFENDANTS' MOTION TO EXCLUDE GOEDDE
REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)