# EXHIBIT 5

Hearing before Spero  3/1/2005  10:02:00 AM

1

```
 1                    Pages 1 - 161
 2             UNITED STATES DISTRICT COURT
 3             NORTHERN DISTRICT OF CALIFORNIA
 4       BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE
 5   IN RE:                  )
                             ) Case No. C01-0988 MJJ
 6   ORACLE SECURITIES LITIGATION  )
                             ) Tuesday
 7   _____) March 1, 2005
                        11:00 a.m.
 8
 9             TRANSCRIPT OF PROCEEDINGS
10
11   APPEARANCES:
12   For Plaintiff:    LERACH, COUGHLIN, STOIA, GELLER
                       Rudman & Robbins LLP
13                     100 Pine Street
                       Suite 2600
14                     San Francisco, California 94111
                    BY: MARK SOLOMON, ESQ.
15                      SHAWN A. WILLIAMS, ESQ.
                        MONIQUE WINKLER, ESQ.
16                      WILLOW RADCLIFFE, ESQ.
17
18          (APPEARANCES CONTINUED ON FOLLOWING PAGE)
19
20
21
22
23
24   Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR
                    Official Reporter - US District Court
25                  Computerized Transcription By Eclipse
```

15

1   that that information is insufficient, well, they can make that
2   argument. We don't think it is.
3       And, in fact, I think it's also important to point
4   out that this issue was already litigated once, admittedly not
5   in a way that would be binding on this Court, but in the
6   related shareholder derivative litigation this exact issue was
7   litigated and the California and Delaware courts agree to the
8   same speakers minus, what? In other words, the direct reports.
9       And we think that that is -- it properly balances the
10  needs of discovery, what the plaintiffs really needs to be able
11  to prove their case, and at the same time takes into account
12  the burden. There is, obviously, a significant burden shift
13  from 53 to, you know, a couple hundred or even more.
14      THE COURT: I'm not saying that. I asked you about
15  33 additional people, the AVPs.
16      MR. RUBINSTEIN: Well, again, the AVP documents --
17  for instance, it seems to us that one way to perceive this --
18  again the AVP communicates to their superior. And then if the
19  plaintiffs want to say, well, that document then gives me a
20  reason why I need to see the documents from this particular
21  AVP, I think that would be a more reasonable way to proceed.
22      It just seems to me that when you get two layers
23  down, that the marginal cost or the marginal benefit is more
24  than outweighed by the incremental burden of having to do the
25  additional searching.

16

1       THE COURT: All right. I understand that. Let me
2   say this. I always think these discovery disputes are put in
3   the hands of the person least qualified to resolve them when
4   they are put in the hands of a judge because I can't -- there
5   is no way that I know any one-tenth of what anyone in this room
6   knows about exactly what you are talking about, where the
7   marginal utility of the additional search is insignificant as
8   compared to the main liability issues in the case.
9       Nonetheless, I have to make some rather gross calls
10  and so I'm going to do that. It seems to me that the issue is
11  not just things that were communicated, but the underlying
12  facts on the ground that are separate and apart from -- that
13  are a separate element from exactly what the speakers knew, and
14  so I'm inclined to have some measured discovery beyond the
15  speakers group.
16      So my preliminary and first ruling will be that the
17  files to be searched are the -- did you say 53 individuals?
18      MR. RUBINSTEIN: That's correct, your Honor.
19      THE COURT: The 53 individuals that the defendants
20  have identified, plus the area vice-presidents' files in the
21  three sales and consulting divisions listed in the letter.
22  Okay.
23      MR. WILLIAMS: Can I add just one more point, your
24  Honor?
25      THE COURT: Yes.

17

1       MR. WILLIAMS: Only that I think that that's a fair
2   place to begin.
3       Starting with the list that they have provided, there
4   are a number of people who are not on that list who are clearly
5   -- whose files are clearly relevant to the forecasting issues.
6       I think beginning with the 53 that they have provided
7   to the Court is -- it's not really a fair position to begin
8   because it's a group that is -- was chosen -- I don't know why
9   they chose this group.
10      THE COURT: I know why they chose this group. They
11  chose this group because this is a securities fraud case and
12  you have to prove the knowledge of the people who actually
13  spoke, and these are the people from whom they get their
14  information. That's why they chose this group.
15      If you have an additional forecaster that's
16  important, tell me. We will talk about it. Who is it?
17      MR. WILLIAMS: Well, his -- for instance, John
18  Nugent. Okay. John Nugent is --
19      THE COURT: How do you spell Mr. Nugent's name?
20      MR. WILLIAMS: N-U-G-E-N-T.
21      THE COURT: Okay.
22      MR. WILLIAMS: He's not on that list. He was a
23  person who defendants relied on or at least was a significant
24  individual in the derivative action going directly to the
25  forecasting issue.

25

| | |
|---|---|
| 1 | THE COURT: We are getting second quarter 01 |
| 2 | documents, so. |
| 3 | MR. RUBINSTEIN: Your Honor, also let me respond on |
| 4 | the question of work charts. When he -- I'm sorry? |
| 5 | THE COURT: He just completely rebutted your argument |
| 6 | and you are just going to rest? |
| 7 | MR. RUBINSTEIN: He was not employed by the company |
| 8 | in the third quarter. I cannot give the precise termination |
| 9 | date. |
| 10 | THE COURT: Were you listening to what he was saying? |
| 11 | MR. RUBINSTEIN: I can't give the Court the exact -- |
| 12 | THE COURT: Then your answer is "I don't know." |
| 13 | MR. RUBIN: And that's just my point, your Honor. We |
| 14 | are not saying categorically -- |
| 15 | THE COURT: Okay. Well, I will tell you. I don't |
| 16 | want fights about this. I wanted this resolved today. I |
| 17 | expected you people to know your company and for this dialogue |
| 18 | to happen now if it didn't happen before. It should have |
| 19 | happened before. |
| 20 | MR. RUBIN: Frankly, your Honor -- |
| 21 | THE COURT: Hey, forget it. You know, you both -- |
| 22 | both sides have been unreasonable in this process, as I said. |
| 23 | The last time I thought both sides had taken an unnecessarily |
| 24 | harsh and adversarial view and I expect it to stop. |
| 25 | So I blame you both. You are never going to convince |

26

| | |
|---|---|
| 1 | me it's all their fault because you didn't -- you said give me |
| 2 | the names and they said no. I won't believe that. I simply |
| 3 | won't believe that, and I'm sure that that's not precisely the |
| 4 | way it happened. |
| 5 | In any event, in any event, I wanted to get rid of |
| 6 | this mess now. I want to have as few disputes as possible. I |
| 7 | don't want them -- how many people are on your laundry list? |
| 8 | MR. WILLIAMS: We don't have a laundry list, your |
| 9 | Honor. |
| 10 | THE COURT: How many people are on your list? |
| 11 | MR. WILLIAMS: It's precisely about the 160 that |
| 12 | defendants represented to you, and we got that list from the |
| 13 | documents they provided to us. That's our universe of |
| 14 | knowledge on who is there. |
| 15 | THE COURT: Well, I'm not giving you all the regional |
| 16 | managers, but who is your list of people who obviously will |
| 17 | have knowledge that you need? |
| 18 | MR. WILLIAMS: Oh, this list is -- at least 13 of -- |
| 19 | 14 people that obviously have information. |
| 20 | THE COURT: All right. When we are done today, you |
| 21 | can all stay and talk about those 13. |
| 22 | MR. SOLOMON: Your Honor, may I just interject? |
| 23 | THE COURT: Yes. |
| 24 | MR. SOLOMON: As you can imagine, that is an ongoing |
| 25 | process, a review of production. |

27

| | |
|---|---|
| 1 | THE COURT: Yes. |
| 2 | MR. SOLOMON: And I just want to add, this is the |
| 3 | first time today I have ever heard a suggestion that the people |
| 4 | that are relevant in this case should be limited to employees |
| 5 | during the class period. I have never heard that before. |
| 6 | THE COURT: I don't even know that that was the |
| 7 | import of his comment, but in any event it certainly won't be |
| 8 | the limitation. |
| 9 | All right. The area according to the files to be |
| 10 | searched is the 53 individuals identified by the defendants, |
| 11 | plus the area vice-presidents' files in all three sales |
| 12 | consulting divisions identified in the letter. |
| 13 | The parties are directed to -- with respect to any |
| 14 | other individual files that in addition to these may, based on |
| 15 | specific information learned by plaintiff's counsel, have |
| 16 | discoverable information to meet-and-confer on those requests |
| 17 | for file reviews. |
| 18 | And, obviously, we are going to have to have some |
| 19 | kind of a process for if, I would love to say or when, that |
| 20 | process breaks down and we will get to that at the end. |
| 21 | Okay. Second, the second area is discovery to be |
| 22 | taken from defendants under economy and the impact on sales and |
| 23 | the -- sales revenue and earnings. |
| 24 | It seems to me you have got an agreement on the |
| 25 | subject matter, okay, and now we have an order to the times to |