# EXHIBIT 100

PRIVILEGED COMMUNICATION
M E M O R A N D U M

TO:

FR:   Daniel Cooperman
      Senior Vice President, General Counsel and Secretary

RE:   Outline and Checklist of Restrictions on Purchases and
      Sales of Stock by Executive Officers and Directors

DT:

---

     This is an outline of the legal and corporate policy restrictions you must consider before making purchases or sales of Oracle securities. A proposed purchase or sale must satisfy ALL legal and corporate policy restrictions described in the outline. A checklist is attached to assist you in quickly identifying any issues that may prevent you from making a purchase or sale. If you answer "yes" to any of the questions on the checklist, then you may not be able to complete the transaction.

     BEFORE MAKING ANY PURCHASE OR SALE OF ORACLE SECURITIES, ORACLE'S CORPORATE POLICIES REQUIRE THAT YOU CONSULT WITH ORACLE'S CHIEF FINANCIAL OFFICER, OR, IF THE CHIEF FINANCIAL OFFICER IS UNAVAILABLE, WITH ORACLE'S GENERAL COUNSEL (OR HIS DESIGNEE) FOR CLEARANCE OF YOUR TRADE. In addition, you may wish to consult with your personal attorney at your own expense.

     If you have any questions regarding this outline, please do not hesitate to call me at (650) 506-5500.

I.   **PROHIBITION ON INSIDER TRADING**

     A.   <u>No Trading on Inside Information</u>.  Federal securities laws and regulations forbid trading in securities based on inside information. You expose yourself and Oracle to civil and criminal liability if you (including members of your immediate family) trade in Oracle securities while you possess inside information, or if you provide others with inside information for their use in securities trading.

     "Insider information" is information that is not available to the general public and that could affect an investor's decision about buying or selling the securities. Such information may

EXHIBIT 128
Rachel A. Ferrier
CSR No. 6948
Date: 9/21/06
Witness
Ellison

Confidential-Subject
to Protective Order

CA-ORCL 001529

be positive or negative and may include, but is not limited to, information concerning earnings (e.g., revenues, operating profits, as well as net income and earnings per share), a proposed merger or acquisition, significant financing transactions, changes in financial circumstances such as significant write-offs, a major new product or service, an important new contract, an intended offering of securities, potential litigation or other legal proceedings, or a significant change in the status of litigation or proceedings.

"Trading" includes the purchase, sale (including short sales) of securities and purchase sale, or exercise of options in securities. "Securities" includes common stock, employee stock options, and market options such as CBOE (The Chicago Board Options Exchange) options.

Trading on inside information can include making a single purchase or sale, or engaging in or facilitating a pattern of transactions, which might appear to take advantage of inside information possessed by others at Oracle. You need not actually use or rely on inside information, but simply possess it at the time of the trade, to be considered trading on inside information. Also, the number of shares or dollar amounts involved need not be large. In addition, you need not hold the securities directly to be considered trading on inside information. It is enough that the securities are beneficially owned or controlled by or for you through family members, partnerships, trusts, or other such entities.

B.   **General Guidelines.** You should keep inside information confidential at all times. It is unlawful to "tip" inside information to anyone. You should be particularly careful about communicating any inside information about Oracle to brokers and others involved in trading Oracle securities.

If you are aware of insider information, you should not trade in Oracle securities and you should hold the inside information confidential until Oracle has disclosed it to the general public through a press release, the press has circulated it, and investors have had time to evaluate it. Generally, you should refrain from trading from the time you become aware of the inside information until two full trading days after Oracle has issued a press release disclosing the information. For example, if Oracle issues its press release on Thursday, you should refrain from trading until the following Tuesday.

C.   **No Trading Periods.** Oracle's corporate policy requires that executive officers and directors refrain from trading in Oracle securities during the following periods of time (frequently referred to as the "closed-window period"): FROM TWO WEEKS BEFORE THE END OF EACH QUARTER THROUGH TWO FULL TRADING DAYS AFTER ORACLE RELEASES ITS EARNINGS REPORT FOR THAT QUARTER. The SEC routinely investigates unusual market activity during the period before the announcement of material corporate developments.

D.   **No Open Market Options Transactions.** As a means of avoiding even the appearance of impropriety, Oracle adopted, by Board of Directors resolution, a policy prohibiting executive officers and directors from buying, selling, or otherwise trading market options (e.g., short sales, puts, calls, straddles or similar transactions) in Oracle securities.

Confidential-Subject
to Protective Order

2

CA-ORCL 001530

E. **Trading in Securities of Other Companies.** Oracle's Insider Trading Policy also applies to trading in securities of other companies. You may not trade in the securities of another company while you possess inside information regarding that company gained through your work at Oracle. You should also keep inside information regarding other companies confidential at all times and you should not "tip" the inside information to anyone.

## II. SECTION 16 RESTRICTIONS

A. **Liability for Short-Swing Profits.** Section 16(b) of the Securities Exchange Act of 1934 (the "1934 Act") imposes timing restrictions on purchases and sales of stock by executive officers and directors (together, "insiders"). It requires insiders to pay to Oracle any profits made on any matching purchases and sales occurring within any six-month period. With certain exceptions, a matching purchase and sale is any pair of purchase and sale transactions within any six-month period, even if they involve different shares or stock certificates. However, Section 16(b) does not preclude insiders from making repeated (a) sales of stock within a six-month period, so long as no such sale can be matched with a purchase anytime within the six months before and after such sale or (b) purchases of stock within a six-month period, so long as no such purchase can be matched with a sale anytime within the six months before and after such purchase.

B. **Reporting of Stock Transactions.** Section 16(a) of the 1934 Act requires all insiders to file the following forms with the SEC disclosing any sales or purchases of Oracle stock:

(i) Form 3 must be filed within 10 days of a person becoming an insider to report insider status and stock ownership on that date;

(ii) Form 4 must be filed within 10 days of the last day of any calendar month in which an insider completes a stock transaction to report such transaction (data is collected monthly by Oracle's Stock Plan Services Department); and

(iii) Form 5 must be filed within 45 days of the end of each fiscal year (i.e., July 15th) to report stock activity during that fiscal year not otherwise reported on Form 3 or 4 and to report any delinquent Form 3 or 4 filings.

Oracle's Stock Plan Services Department collects data for these forms, fills them out, circulates them for signature and files them with the SEC by the 10th of each month. Oracle must report late SEC filings in its proxy statements and annual reports on Form 10-K. Oracle's Stock Plan Services and Corporate & Securities Legal Department are committed to assisting you in complying with you Section 16(a) filing requirements.

C. **Special Rules for Stock Options.** The grant of an Oracle stock option, as well as its subsequent exercise, are exempt transactions for purposes of Section 16(b) As a result, you generally may exercise an option and sell the underlying shares in a "same-day-sale" without

3

Confidential-Subject   CA-ORCL 001531
to Protective Order

incurring Section 16(b) liability (assuming no other matching purchases). Current reporting of all option exercises is required to be disclosed on Form 4 in the month following the transaction. Although the rules allow for deferred reporting of option grants, it is Oracle's policy to report these transactions on a current basis in order to avoid an inadvertent updating error in a subsequent Form 4 or Form 5 filing.

        D.    <u>Special Rules for Employee Stock Purchase Plan ("ESPP")</u>.  Section 16(b) provides an exemption from short-swing profit liability for purchases of Oracle stock by executive officers in the ESPP (though sales of Oracle stock purchases through the ESPP are not exempt; they are treated like any other sale). Although purchases of stock under the ESPP are no longer required to be reported on Form 4 in the month following the transaction, it is Oracle's policy to report these transactions on a current basis in order to avoid an inadvertent updating error in a subsequent Form 4 or Form 5 filing.

        E.    <u>Special Rule for 401(k) Plan</u>.  Executive officers are excluded from participation in the Oracle stock account under the 401(k) Savings and Investment Plan. SEC rules make compliance with Section 16 very complex for participants in the 401(k) Oracle stock account. While an officer's initial investment in the 401(k) Oracle stock account is exempt from Section 16 liability, subsequent stock fund switch and cash out elections are not generally exempt and consequently, may be matchable to one another and subject to Section 16 liability. Therefore, the exclusion was put in place to eliminate the risk of inadvertent violation of the short-swing profit and reporting rules. Executive officers are free to participate in all of the other investment accounts offered under the 401(k) Plan.

### III.   RULE 144 RESTRICTIONS

        A.    <u>Basic Conditions of Rule 144</u>.  Rule 144 requires sales to be unsolicited and made either to a market maker or through a normal broker's transaction, and limits the number of shares that you may sell in any three-month period to the greater of (i) one percent (1%) of the total number of shares of common stock outstanding (as of October 31, 1999 approximately 1.42 billion) or (ii) the average weekly trading volume in the stock during the four weeks preceding the sale (as of October 31, 1999, approximately 70 million; this number will vary greatly). If you sell more than 500 shares of shares worth in aggregate more than $10,000 within a three-month period, you also must file a Form 144 (available through your broker) with the SEC. Rule 144 also imposes certain holding period requirements, as described below.

        B.    <u>No Holding Period for Shares Purchased on the Open Market or Under Oracle Stock Plans</u>.  Shares purchased on the open market (i.e., from a broker or a market maker) or under any of the following stock plans (the "Plans") may be sold publicly without any holding period requirement so long as all of the conditions set forth in Section III.A. (and the other Sections of this memorandum) are met:

    (i)     Employee Stock Purchase Plan (1992);
    (ii)    Stock Option Plan (1985);

Confidential-Subject
to Protective Order

CA-ORCL-001532

4

(iii)    1990 Directors' Stock Option Plan;
(iv)    1990 Executive Officers' Stock Option Plan;
(v)     1991 Long-Term Equity Incentive;
(vi)    1993 Directors' Stock Option Plan; and
(vii)   401(k) Savings and Investment Plan.

**C.      One-Year Holding Period for Other Shares.**  Any other purchases of shares (i.e., in the unlikely event that you acquire shares in a private transaction) must be held for one year from the later of the date that the shares were acquired (i) from Oracle or (ii) from an affiliate of Oracle.  In addition, such purchases must meet all of the conditions set forth in Section III.A.

**D      Practical Considerations.**  When you present shares to your broker for sale under Rule 144, you will be referred to their Rule 144 compliance group, who will verify that the various requirements are satisfied and will assist you in completing a Form 144 (if required).  In order to complete your sale, the broker must receive a stock certificate without a restrictive legend from Oracle's transfer agent.

## IV.     SCHEDULE 13G (5% STOCKHOLDER REPORTS)

Persons (or groups) who were 5% stockholders at the time of Oracle's IPO (i.e., Larry Ellison) and those subsequent acquisitions of Oracle stock do not exceed the 2% level but who continue to hold in excess of 5% of Oracle stock must file a Schedule 13G with Oracle and the SEC by February 14th of each year.  Schedule 13G must be updated each year to reflect current ownership.  Such persons may be required to file a Schedule 13D to replace Schedule 13G if they make acquisitions exceeding 2% of the outstanding stock of Oracle within any 12-month period and do not report such acquisitions pursuant to Section 16.

## V.      PENALTIES

**A.      Anti-fraud Violations.**  Civil penalties for violations of the anti-fraud provisions (e.g., insider trading) can total up to three times the gain in any trade (including profits made and losses avoided) as well as criminal fines of up to $1,100,000 and prison terms of up to ten years.  In addition, a violator of the anti-fraud provisions of the securities laws may be removed from office and barred temporarily or permanently from serving as an officer or director of any public company.

**B.      Reporting Violations.**  The SEC may seek substantial civil penalties and other sanctions for violations of the securities laws, including failure to comply with the reporting requirements discussed above.  The SEC has the authority to institute court actions or administrative proceedings to compel filing of delinquent reports, enjoin further violations, and/or impose civil penalties.  In addition, the SEC has the authority to refer appropriate cases to

Confidential-Subject
to Protective Order

5

CA-ORCL 001533

the Department of Justice for criminal prosecution.  Civil penalties for violations of reporting obligations range from $5,500 to $110,000 per violation.  Each day of noncompliance may be deemed a separate violation.

        C.     <u>Section 16(b) Violations</u>.  Insiders must pay to Oracle (and Oracle has a duty to collect) any profits made on any matching purchases and sales within a six-month period of time.

Confidential-Subject
to Protective Order

CA-ORCL 001534

6

NDCA-ORCL 005600

## CHECKLIST

The checklist is provided to assist you in quickly identifying any issues that may prevent you from making a purchase or sale of Oracle securities. If you answer "yes" to any of the questions on the checklist, then you may be prevented from making any such sale or purchase.

BEFORE MAKING ANY PURCHASES OR SALES OF ORACLE SECURITIES, ORACLE'S CORPORATE POLICIES REQUIRE YOU TO CONSULT WITH ORACLE'S CHIEF FINANCIAL OFFICER OR, IF THE CHIEF FINANCIAL OFFICER IS UNAVAILABLE, WITH ORACLE'S GENERAL COUNSEL (OR HIS DESIGNEE) FOR CLEARANCE OF YOUR TRADE. In addition, you may wish to consult with your personal attorney at your own expense.

|  | | Yes | No |
|---|---|---|---|
| I. | PROHIBITION ON INSIDER TRADING | | |
| | **No Trading on Insider Information** Are you in possession of inside information (e.g., write-offs, revenues, profits, earnings per share, acquisitions)? | _____ | _____ |
| | **Closed Window Periods** Is Oracle currently in a closed window period (i.e. from the first day of the last two full weeks of the last month of each quarter until two full trading days after the earnings report for the quarter)? | _____ | _____ |
| | **No Speculative Transactions** Are you contemplating buying, selling, or otherwise trading market options in Oracle securities? | _____ | _____ |
| II | SECTION 16 RESTRICTIONS | | |
| | **Liability for Short Swing Profits** If you are selling stock, have you made any purchases within the last six months (include members of your immediate family)? | _____ | _____ |
| | If you are buying stock, have you made any sales within the last six months (include members of your immediate family)? | _____ | _____ |
| | Have you chosen the Oracle stock account under the 401(k) Plan (executive officers are excluded from this investment option)? | _____ | _____ |
| III | RULE 144 RESTRICTIONS | | |
| | **Basic Conditions of Rule 144** Has your broker raised any Rule 144 issues in the course of reviewing the transaction? | _____ | _____ |

7

Confidential-Subject
to Protective Order

CA-ORCL 001535

EXHIBIT 101

**130**

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609915

1   MAYER, BROWN, ROWE & MAW
    STEVEN O. KRAMER (State Bar No. 79626)
2   CHRISTOPHER P. MURPHY (State Bar No. 120048)
    JOHN NADOLENCO (State Bar No. 181128)
3   GERMAIN D. LABAT (State Bar No. 203907)
    350 South Grand Avenue, 25th Floor
4   Los Angeles, California 90071-1503
    Telephone:    (213) 229-9500
5   Facsimile:    (213) 625-0248

6   MAYER, BROWN, ROWE & MAW
    DONALD M. FALK (State Bar No. 150256)
7   555 College Avenue
    Palo Alto, California 94306
8   Telephone    (650) 331-2030
    Facsimile    (650) 331-2060
9
    Attorneys for Defendants
10  MICHAEL J. BOSKIN, LAWRENCE J. ELLISON,
    JEFFREY O. HENLEY and DONALD L. LUCAS
11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                  FOR THE COUNTY OF SAN MATEO

14

15  SYED AKHTER, JOHN BOSCO, JOSEPH        JUDICIAL COUNCIL COORDINATION
    BOYLE, CARY COLLINS, Trustee of the     PROCEEDING NO. 4180
16  Chadsey Educational Trust dated February 21,
    1997, BARRY J. GAMBLE, MAX KATZ,        SUPERIOR COURT CASE NO. 417511
17  ALAN PIERCE, derivatively on behalf of
    ORACLE CORPORATION,
18                  Plaintiffs,
                                            DEFENDANT LAWRENCE J.
19        v.                                ELLISON'S SUPPLEMENTAL
                                            RESPONSES TO PLAINTIFF CARY
20  MICHAEL J. BOSKIN, LAWRENCE J.          COLLINS' FIRST SET OF SPECIAL
    ELLISON, JEFFREY O. HENLEY, DONALD      INTERROGATORIES
21  L. LUCAS, and DOES 1 through 100,
    inclusive,                              RESPONSE NOS. 6 and 11-27
22                                          DESIGNATED CONFIDENTIAL
                  Defendants,               PURSUANT TO PROTECTIVE ORDER
23
    and ORACLE CORPORATION,                 The Honorable John G. Schwartz,
24                                          Coordination Trial Judge
                  Nominal Defendant.
25

26  PROPOUNDING PARTY:         Plaintiff Cary Collins

27  RESPONDING PARTY:          Defendant Lawrence J. Ellison

28  SET NUMBER:                One

                                       DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
                                         TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

1    Defendant Lawrence J. Ellison ("Mr. Ellison" or "Defendant") supplements his responses

2  to Plaintiff Cary Collins' First Set of Special Interrogatories (the "Interrogatories") as follows:

3                                      **PRIOR OBJECTIONS**

4        In supplementing his responses to the Interrogatories, Defendant does not waive any of

5  the previously raised objections to the Interrogatories.  Accordingly, Defendant incorporates by

6  this reference the Preliminary Statement, General Objections, and the specific objections

7  corresponding to each Interrogatory set forth in Defendant Lawrence J. Ellison's Responses To

8  Plaintiff Cary Collins' First Set Of Special Interrogatories, dated June 20, 2002 (the

9  "Objections").

10                                   **RELEVANT TIME PERIOD**

11       Consistent with the Court's prior ruling with respect to the relevant time period for

12  purposes of discovery in general, all responses shall be limited to the period January 1, 2000

13  through January 31, 2001, unless an Interrogatory calls for a more narrow time period or a

14  response indicates otherwise.  In no case shall a response provide or be interpreted to provide

15  information later than January 31, 2001.

16          **SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

17  **INTERROGATORY NO. 1:**

18       State the name, address, telephone number, and relationship to you of each PERSON who

19  prepared or assisted in the preparation of the responses to these specially prepared

20  interrogatories.  (As used in these interrogatories, "PERSON" means and includes a natural

21  person, firm, association, organization, partnership, business, trust, corporation, or public entity.)

22  **RESPONSE TO INTERROGATORY NO. 1:**

23       Subject to, consistent with, and without waiving any of the Objections, Defendant

24  responds as follows.

25       Mr. Ellison was assisted in the preparation of these responses by his attorneys and

26  counsel of record in this action, MAYER, BROWN, ROWE & MAW, 350 South Grand Avenue,

27  25th Floor, Los Angeles, California 90071-1503, Telephone: 213-229-9500, Facsimile: 213-625-

28  0248.

28547498.01B29588                                          1

                                           DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
                                             TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609917

**INTERROGATORY NO. 2:**

Describe with particularity your responsibilities as a member of the Board of Directors of ORACLE during the period from January 1, 2000, to the present, including, but not limited to, your responsibilities as a member of any committee or subcommittee of the Board of Directors of ORACLE, by stating any titles and/or positions held by you, your duties, work performed, and/or services rendered, and the relevant dates for each. (As used in these interrogatories, "ORACLE" means and includes Nominal Defendant Oracle Corporation.)

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to, consistent with, and without waiving any of the Objections, Defendant responds as follows. During fiscal 3Q01, Mr. Ellison was Chief Executive Officer and a member of the Board of Directors of Oracle Corporation ("Oracle" or the "Corporation"). As a Board member, it is Mr. Ellison's responsibility, in concert with the Board, to elect and appoint officers and agents to act on behalf of the Corporation and to act on other major matters affecting the Corporation, consistent with Delaware law and the Corporation's Bylaws. Mr. Ellison also served as a member of the Executive Committee and the Plan Committee. The following is a description of the functions and responsibilities of the foregoing Board committees:

Executive Committee. Unless otherwise determined by the Board, the Executive Committee is generally vested with all the powers of the full Board, except that the Executive Committee cannot take action beyond certain financial limits, liquidate the Company, sell all or substantially all of the Company's assets, merge the Company with another company where the Company is not the surviving entity, or take any other action not permitted to be delegated to a committee under Delaware law or the Company's Bylaws.

Plan Committee. The Plan Committee is authorized to approve stock option awards, subject to certain limitations established by the Board.

**INTERROGATORY NO. 3:**

Describe each DISPOSITION of ORACLE common stock by you between January 1, 1995, and February 28, 2001, by stating the number of shares disposed of, the date of each DISPOSITION, the type of DISPOSITION, the price obtained per share, the PERSON from

2

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609918

1    whom you acquired each share that was disposed of, the form (whether cash or other) and

2    amount of consideration paid for each share that was disposed of, the cost value of each share

3    that was disposed of, the place where you acquired each share, and the date you acquired each

4    share. (As used in these interrogatories, "DISPOSITION" means and includes any form or

5    method of transferring ownership whether by sale, gift or otherwise.).

6    **RESPONSE TO INTERROGATORY NO. 3:**

7         Subject to, consistent with, and without waiving any of the Objections, Defendant

8    responds as follows. Pursuant to Code of Civil Procedure § 2030(f)(2), Defendant responds that

9    information sought by this Interrogatory may be obtained from publicly available documents

10   filed with the Securities and Exchange Commission. Some of these documents have been

11   produced previously and are numbered CD-I 00080 to CD-I 00107 and CD-I 00162 to CD-I

12   00193.

13   **INTERROGATORY NO. 4:**

14        DESCRIBE EACH DOCUMENT relating to each DISPOSITION of any ORACLE

15   securities by you between January 1, 1995, and February 28, 2001. (As used in these

16   Interrogatories, "DESCRIBE EACH DOCUMENT" shall mean to state the type of document

17   (i.e., letter, contract, deed, memo, etc.), the date of the document, the document's author(s), the

18   addressee(s) or recipient(s), the number of pages, the subject matter, and the name(s) and

19   address(es) of all PERSON(S) having possession or control of an original or any copy of the

20   document.)

21   **RESPONSE TO INTERROGATORY NO. 4:**

22        Subject to, consistent with, and without waiving any of the Objections, Defendant

23   responds as follows. Pursuant to Code of Civil Procedure § 2030(f)(2), Defendant responds that

24   information sought by this Interrogatory may be obtained from publicly available documents

25   filed with the Securities and Exchange Commission. Some of these documents have been

26   produced previously and are numbered CD-I 00080 to CD-I 00107 and CD-I 00162 to CD-I

27   00193.

28

3

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609919

1 | **INTERROGATORY NO. 5:**

2 |      IDENTIFY EACH PERSON with whom you communicated any reasons for your

3 | DISPOSITION of any ORACLE securities between January 1, 1995, and February 28, 2001.

4 | (As used in these Interrogatories, "IDENTIFY EACH PERSON" means to give, to the extent

5 | known, the PERSON'S full name, present or last known address and telephone numbers, and

6 | when referring to a natural PERSON, additionally, the present or last known place of

7 | employment. Once a PERSON has been identified in accordance with this paragraph, only the

8 | name of that PERSON should be listed in response to subsequent discovery requesting the

9 | identification of that PERSON.)

10 | **RESPONSE TO INTERROGATORY NO. 5:**

11 |      Subject to, consistent with, and without waiving any of the Objections, Defendant

12 | responds as follows.  Mr. Ellison did not discuss the reasons for his stock sales in the third

13 | quarter of fiscal year 2001 with anyone.

14 | **INTERROGATORY NO. 6:**

15 |      Identify with particularity all reasons for any DISPOSITION of any ORACLE securities

16 | between January 1, 1995, and February 28, 2001, that you communicated to the PERSONS

17 | identified in your response to Interrogatory No. 5 by stating the reasons you communicated, the

18 | PERSON to whom each reason was communicated, when each reason was communicated, and

19 | whether the communication was written or oral.

20 | **RESPONSE TO INTERROGATORY NO. 6:**

21 |      [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

22 | PROTECTIVE ORDER ENTERED IN THIS CASE.]

23 |      Subject to, consistent with, and without waiving any of the Objections, Defendant

24 | responds as follows.  Mr. Ellison recalls that the reasoning for his trades in Oracle stock during

25 | fiscal 3Q01 included, but may not have been limited to, the following:  certain of Mr. Ellison's

26 | Oracle stock options were about to expire and the remaining windows to exercise and sell such

27 | options prior to expiration were limited and uncertain; Mr. Ellison believed that it was a safe

28 |

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609920

1  quarter in which to sell Oracle stock; and he did not possess any material, non-public information

2  that would prevent or affect his trades in Oracle stock.

3  **INTERROGATORY NO. 7:**

4      Describe each instance when you acquired ORACLE common stock by exercising

5  options between January 1, 1990, and February 28, 2001, by stating the number of shares

6  acquired, the date each share was acquired, the price paid per share, the expiration date of each

7  such option, the PERSON from whom you acquired each such option, the consideration you

8  gave for the acquisition of each such option, and the date you acquired each such option.

9  **RESPONSE TO INTERROGATORY NO. 7:**

10      Subject to, consistent with, and without waiving any of the Objections, Defendant

11  responds as follows.  Pursuant to Code of Civil Procedure § 2030(f)(2), Defendant responds that

12  information sought by this Interrogatory may be obtained from publicly available documents

13  filed with the Securities and Exchange Commission.  Some of these documents have been

14  produced previously and are numbered CD-I 00080 to CD-I 00107 and CD-I 00162 to CD-I

15  00193.

16  **INTERROGATORY NO. 8:**

17      Describe each acquisition of ORACLE common stock other than by exercise of options

18  by you between January 1, 1990, and February 28, 2001, by stating the number of shares

19  acquired, the date each share was acquired, the means by which you acquired each share, the

20  consideration you gave for each share acquired, and the PERSON from whom you acquired each

21  share.

22  **RESPONSE TO INTERROGATORY NO. 8:**

23      Subject to, consistent with, and without waiving any of the Objections, Defendant

24  responds as follows.  Pursuant to Code of Civil Procedure § 2030(f)(2), Defendant responds that

25  information sought by this Interrogatory may be obtained from publicly available documents

26  filed with the Securities and Exchange Commission.  Some of these documents have been

27  produced previously and are numbered CD-I 00080 to CD-I 00107 and CD-I 00162 to CD-I

28  00193.

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609921

1    <u>INTERROGATORY NO. 9:</u>

2       DESCRIBE EACH DOCUMENT relating to each acquisition of any ORACLE securities

3   by you between January 1, 1990, and February 28, 2001.

4    <u>RESPONSE TO INTERROGATORY NO. 9:</u>

5       Subject to, consistent with, and without waiving any of the Objections, Defendant

6   responds as follows.  Pursuant to Code of Civil Procedure § 2030(f)(2), Defendant responds

7   information sought by this Interrogatory may be obtained from publicly available documents

8   filed with the Securities and Exchange Commission.  Some of these documents have been

9   produced previously and are numbered CD-I 00080 to CD-I 00107 and CD-I 00162 to CD-I

10   00193.

11   <u>INTERROGATORY NO. 10:</u>

12       IDENTIFY EACH PERSON with whom you communicated any reasons for your

13   acquisition of any ORACLE securities between January 1, 1990 and February 28, 2001.

14   <u>RESPONSE TO INTERROGATORY NO. 10:</u>

15       Subject to, consistent with, and without waiving any of the Objections, Defendant

16   responds as follows.  Mr. Ellison did not discuss the reasons for his stock sales in the third

17   quarter of fiscal year 2001 with anyone.

18   <u>INTERROGATORY NO. 11:</u>

19       Identify with particularity each reason for the acquisition of any ORACLE securities

20   between January 1, 1990, and February 28, 2001, that you communicated to the PERSONS

21   identified in your response to Interrogatory No. 10 by stating the reasons you communicated, the

22   PERSON to whom each reason was communicated, when each reason was communicated, and

23   whether the communication was written or oral.

24   <u>RESPONSE TO INTERROGATORY NO. 11:</u>

25       [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

26   PROTECTIVE ORDER ENTERED IN THIS CASE.]

27       Subject to, consistent with, and without waiving any of the Objections, Defendant

28   responds as follows.  Mr. Ellison recalls that the reasoning for his trades in Oracle stock during

6

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609922

1  fiscal 3Q01 included, but may not have been limited to, the following:  certain of Mr. Ellison's

2  Oracle stock options were about to expire and the remaining windows to exercise and sell such

3  options prior to expiration were limited and uncertain; Mr. Ellison believed it was a safe quarter

4  in which to sell Oracle stock; and he did not possess any material, non-public information that

5  would prevent or affect his trades in Oracle stock.

6  **INTERROGATORY NO. 12:**

7      IDENTIFY EACH PERSON who communicated any facts to you prior to January 5,

8  2001, relating to ORACLE'S financial condition for the period from December 1, 2000, to

9  February 28, 2001.

10  **RESPONSE TO INTERROGATORY NO. 12:**

11      [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

12  PROTECTIVE ORDER ENTERED IN THIS CASE.]

13      Subject to, consistent with, and without waiving any of the Objections, Defendant

14  responds as follows.  Given Mr. Ellison's position as Oracle's Chairman and Chief Executive

15  Officer, virtually all Oracle-related communications directed to him relate directly or indirectly

16  to Oracle's "financial condition."  Subject to the forgoing qualification, see Responses to

17  Interrogatory Nos. 16 and 24.

18  **INTERROGATORY NO. 13:**

19      DESCRIBE EACH DOCUMENT you reviewed prior to January 5, 2001, relating to

20  ORACLE'S financial condition for the period from between December 1, 2000, to February 28,

21  2001.

22  **RESPONSE TO INTERROGATORY NO. 13:**

23      [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

24  PROTECTIVE ORDER ENTERED IN THIS CASE.]

25      Subject to, consistent with, and without waiving any of the Objections, Defendant

26  responds as follows.  Given Mr. Ellison's position as Oracle's Chairman and Chief Executive

27  Officer, virtually all Oracle-related documents he reviews relate directly or indirectly to Oracle's

28

7

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

1  "financial condition."  Subject to the forgoing qualification, see Responses to Interrogatory Nos.

2  17 and 25.

3  **INTERROGATORY NO. 14:**

4      IDENTIFY EACH PERSON who communicated any facts to you during the period from

5  January 5, 2001, to February 28, 2001, relating to ORACLE'S financial condition for the period

6  from December 1, 2000, to February 28, 2001.

7  **RESPONSE TO INTERROGATORY NO. 14:**

8      [THIS RESPONSE IS DESIGNATED **CONFIDENTIAL** PURSUANT TO THE

9  PROTECTIVE ORDER ENTERED IN THIS CASE.]

10      Subject to, consistent with, and without waiving any of the Objections, Defendant

11  responds as follows.  Given Mr. Ellison's position as Oracle's Chairman and Chief Executive

12  Officer, virtually all Oracle-related communications directed to him relate directly or indirectly

13  to Oracle's "financial condition."  Subject to the forgoing qualification, see Responses to

14  Interrogatory Nos. 18 and 26.

15  **INTERROGATORY NO. 15:**

16      DESCRIBE EACH DOCUMENT you reviewed during the period from January 5, 2001,

17  to February 28, 2001, relating to ORACLE'S financial condition for the period from between

18  December 1, 2000, to February 28, 2001.

19  **RESPONSE TO INTERROGATORY NO. 15:**

20      [THIS RESPONSE IS DESIGNATED **CONFIDENTIAL** PURSUANT TO THE

21  PROTECTIVE ORDER ENTERED IN THIS CASE.]

22      Subject to, consistent with, and without waiving any of the Objections, Defendant

23  responds as follows.  Given Mr. Ellison's position as Oracle's Chairman and Chief Executive

24  Officer, virtually all Oracle-related documents he reviews relate directly or indirectly to Oracle's

25  "financial condition."  Subject to the forgoing qualification, see Responses to Interrogatory Nos.

26  19 and 27.

27

28

8

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES<br>TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609924

**INTERROGATORY NO. 16:**

IDENTIFY EACH PERSON who communicated any facts to you prior to January 5, 2001, relating to ORACLE's ability to meet its sales projections for the period between December 1, 2000, and February 28, 2001.

**RESPONSE TO INTERROGATORY NO. 16:**

[THIS RESPONSE IS DESIGNATED CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS CASE.]

Subject to, consistent with, and without waiving any of the Objections, Defendant responds as follows. Mr. Ellison does not specifically recall receiving specific facts from specific persons during 3Q01. However, Mr. Ellison generally received forecast, pipeline, sales and "deal" information relating to fiscal 3Q01 from information from various Executive Vice Presidents, including, but not limited to, Sandy Sanderson, Jay Nussbaum, Sergio Giacoletto and George Roberts. Mr. Ellison also received financial information from members of Oracle's finance organization, including Jeff Henley and Jennifer Minton. In addition, as discovery in this action and Defendant's investigation have only recently begun and are ongoing, Defendant reserves the right to supplement this response as appropriate at a later date.

**INTERROGATORY NO. 17:**

DESCRIBE EACH DOCUMENT you reviewed prior to January 5, 2001, relating to ORACLE's ability to meet its sales projections for the period between December 1, 2000, and February 28, 2001.

**RESPONSE TO INTERROGATORY NO. 17:**

[THIS RESPONSE IS DESIGNATED CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS CASE.]

Subject to, consistent with, and without waiving any of the Objections, Defendant responds as follows. Mr. Ellison does not specifically recall receiving specific facts from specific persons during 3Q01. However, Mr. Ellison generally reviewed fiscal 3Q01 forecasting documents, including forecast reports; pipeline conversion trends; large "deal" reports; and communications from various Executive Vice Presidents, including, but not limited to, Sandy

9

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609925

1  Sanderson, Sergio Giacoletto, Jay Nussbaum and George Roberts.  Mr. Ellison also received

2  financial information from members of Oracle's finance organization, including Jeff Henley and

3  Jennifer Minton.  In addition, as discovery in this action and Defendant's investigation have only

4  recently begun and are ongoing, Defendant reserves the right to supplement this response as

5  appropriate at a later date.

6  **INTERROGATORY NO. 18:**

7      IDENTIFY EACH PERSON who communicated any facts to you during the period from

8  January 5, 2001, to February 28, 2001, relating to ORACLE's ability to meet its sales projections

9  for the period between December 1, 2000, and February 28, 2001.

10  **RESPONSE TO INTERROGATORY NO. 18:**

11      [THIS RESPONSE IS DESIGNATED CONFIDENTIAL PURSUANT TO THE

12  PROTECTIVE ORDER ENTERED IN THIS CASE.]

13      Subject to, consistent with, and without waiving any of the Objections, Defendant

14  responds as follows.  Mr. Ellison does not specifically recall receiving specific facts from

15  specific persons during 3Q01.  However, Mr. Ellison generally received forecast, pipeline, sales

16  and "deal" information relating to fiscal 3Q01 from information from various Executive Vice

17  Presidents, including, but not limited to Sandy Sanderson, Sergio Giacoletto, Jay Nussbaum and

18  George Roberts.  Mr. Ellison also received financial information from members of Oracle's

19  finance organization, including Jeff Henley and Jennifer Minton.  In addition, as discovery in

20  this action and Defendant's investigation have only recently begun and are ongoing, Defendant

21  reserves the right to supplement this response as appropriate at a later date.

22  **INTERROGATORY NO. 19:**

23      DESCRIBE EACH DOCUMENT you reviewed during the period from January 5, 2001,

24  to February 28, 2001, relating to ORACLE's ability to meet its sales projections for the period

25  between December 1, 2000, and February 28, 2001.

26  ///

27

28

10

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609926

1  **RESPONSE TO INTERROGATORY NO. 19:**

2       [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

3  PROTECTIVE ORDER ENTERED IN THIS CASE.]

4       Subject to, consistent with, and without waiving any of the Objections, Defendant

5  responds as follows.  Mr. Ellison does not specifically recall receiving specific facts from

6  specific persons during 3Q01.  However, Mr. Ellison generally received forecast, pipeline, sales

7  and "deal" reports from various Executive Vice Presidents, including, but not limited to Sandy

8  Sanderson, Sergio Giacoletto, Jay Nussbaum and George Roberts.  Mr. Ellison also received

9  financial information from members of Oracle's finance organization, including Jeff Henley and

10 Jennifer Minton.  In addition, as discovery in this action and Defendant's investigation have only

11 recently begun and are ongoing, Defendant reserves the right to supplement this response as

12 appropriate at a later date.

13 **INTERROGATORY NO. 20:**

14      IDENTIFY EACH PERSON who communicated any facts to you prior to January 5,

15 2001, relating to any problems with the performance of ORACLE's 11i Suite.

16 **RESPONSE TO INTERROGATORY NO. 20:**

17      [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

18 PROTECTIVE ORDER ENTERED IN THIS CASE.]

19      Subject to, consistent with, and without waiving any of the Objections, Defendant

20 responds as follows.  Other than the usual issues involved with the development of a complex

21 software product such as the 11i Suite, Mr. Ellison was not and is not aware of any "problems"

22 with the performance of the 11i Suite.  Mr. Ellison generally received information relating to 11i

23 from members of Oracle's development organization, including Ron Wohl, Vice President of

24 Applications Development, and Mark Barrenechea, Senior Vice President of CRM Products.

25 Mr. Ellison also generally received information regarding sales of 11i from his senior sales

26 executives, including George Roberts, Sergio Giacoletto, Jay Nussbaum and Sandy Sanderson,

27 as well as periodic reports from members of Oracle's support organization, including Mike

28 Rocha.  In addition, as discovery in this action and Defendant's investigation have only recently

11

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609927

1   begun and are ongoing, Defendant reserves the right to supplement this response as appropriate

2   at a later date.

3   **INTERROGATORY NO. 21:**

4       DESCRIBE EACH DOCUMENT you reviewed prior to January 5, 2001, relating to any

5   problems with the performance of ORACLE's 11i Suite.

6   **RESPONSE TO INTERROGATORY NO. 21:**

7       [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

8   PROTECTIVE ORDER ENTERED IN THIS CASE.]

9       Subject to, consistent with, and without waiving any of the Objections, Defendant

10  responds as follows.  Other than the usual issues involved with the development of a complex

11  software product such as the 11i Suite, Mr. Ellison was not and is not aware of any "problems"

12  with the performance of the 11i Suite. Mr. Ellison generally reviewed written communications

13  relating to 11i information from those identified in the response to Interrogatory No. 20.  In

14  addition, as discovery in this action and Defendant's investigation have only recently begun and

15  are ongoing, Defendant reserves the right to supplement this response as appropriate at a later

16  date.

17  **INTERROGATORY NO. 22:**

18      IDENTIFY EACH PERSON who communicated any facts to you during the period from

19  January 5, 2001, to February 28, 2001, relating to any problems with the performance of

20  ORACLE's 11i Suite.

21  **RESPONSE TO INTERROGATORY NO. 22:**

22      [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

23  PROTECTIVE ORDER ENTERED IN THIS CASE.]

24      Subject to, consistent with, and without waiving any of the Objections, Defendant

25  responds as follows.  Other than the usual issues involved with the development of a complex

26  software product such as the 11i Suite, Mr. Ellison was not and is not aware of any "problems"

27  with the performance of the 11i Suite. Mr. Ellison generally received information relating to 11i

28  from members of Oracle's development organization, including Ron Wohl, Vice President of

12

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609928

1  Applications Development, and Mark Barrenechea, Senior Vice President of CRM Products.

2  Mr. Ellison also generally received information regarding sales of 11i from his senior sales

3  executives, including George Roberts, Sergio Giacoletto, Jay Nussbaum and Sandy Sanderson,

4  as well as periodic reports from members of Oracle's support organization, including Mike

5  Rocha.In addition, as discovery in this action and Defendant's investigation have only recently

6  begun and are ongoing, Defendant reserves the right to supplement this response as appropriate

7  at a later date.

8  **INTERROGATORY NO. 23:**

9       DESCRIBE EACH DOCUMENT you reviewed during the period from January 5, 2001,

10  to February 28, 2001, relating to any problems with the performance of ORACLE's 11i Suite.

11  **RESPONSE TO INTERROGATORY NO. 23:**

12       [THIS RESPONSE IS DESIGNATED <u>CONFIDENTIAL</u> PURSUANT TO THE

13  PROTECTIVE ORDER ENTERED IN THIS CASE.]

14       Subject to, consistent with, and without waiving any of the Objections, Defendant

15  responds as follows.  Other than the usual issues involved with the development of a complex

16  software product such as the 11i suite, Mr. Ellison was not and is not aware of any "problems"

17  with the performance of the 11i suite.  Mr. Ellison generally reviewed written communications

18  relating to 11i information from those identified in the response to Interrogatory No. 22.  In

19  addition, as discovery in this action and Defendant's investigation have only recently begun and

20  are ongoing, Defendant reserves the right to supplement this response as appropriate at a later

21  date.

22  **INTERROGATORY NO. 24:**

23       IDENTIFY EACH PERSON who communicated any facts to you prior to January 5,

24  2001, relating to ORACLE's actual sales of goods and services for the period from December 1,

25  2000, to February 28, 2001.

26  ///

27

28

13

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609929

1   RESPONSE TO INTERROGATORY NO. 24:

2       [THIS RESPONSE IS DESIGNATED CONFIDENTIAL PURSUANT TO THE

3   PROTECTIVE ORDER ENTERED IN THIS CASE.]

4       Subject to, consistent with, and without waiving any of the Objections, Defendant

5   responds as follows.  Mr. Ellison does not have a specific recollection of receiving specific facts

6   from specific persons during 3Q01.  However, Mr. Ellison generally received sales and "deal"

7   information relating to fiscal 3Q01 from various Executive Vice Presidents, including Sandy

8   Sanderson, Jay Nussbaum, Sergio Giacoletto and George Roberts.  Mr. Ellison also received

9   regular financial information from members of Oracle's finance organization, including Jeff

10   Henley and Jennifer Minton.  In addition, as discovery in this action and Defendant's

11   investigation have only recently begun and are ongoing, Defendant reserves the right to

12   supplement this response as appropriate at a later date.

13   INTERROGATORY NO. 25:

14       DESCRIBE EACH DOCUMENT you reviewed prior to January 5, 2001, relating to

15   ORACLE's actual sales of goods and services for the period from December 1, 2000, to

16   February 28, 2001.

17   RESPONSE TO INTERROGATORY NO. 25:

18       [THIS RESPONSE IS DESIGNATED CONFIDENTIAL PURSUANT TO THE

19   PROTECTIVE ORDER ENTERED IN THIS CASE.]

20       Subject to, consistent with, and without waiving any of the Objections, Defendant

21   responds as follows.  Mr. Ellison does not specifically recall receiving documents during 3Q01.

22   However, Mr. Ellison generally reviewed monthly and quarterly reports that described sales in

23   various sectors during this period and communications from various Executive Vice Presidents,

24   including Sandy Sanderson, Jay Nussbaum, Sergio Giacoletto and George Roberts.  In addition,

25   as discovery in this action and Defendant's investigation have only recently begun and are

26   ongoing, Defendant reserves the right to supplement this response as appropriate at a later date.

27

28

14

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES<br>TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609930

**INTERROGATORY NO. 26:**

    IDENTIFY EACH PERSON who communicated any facts to you during the period from January 5, 2001, to February 28, 2001, relating to ORACLE's actual sales of goods and services for the period from December 1, 2000, to February 28, 2001.

**RESPONSE TO INTERROGATORY NO. 26:**

    [THIS RESPONSE IS DESIGNATED **CONFIDENTIAL** PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS CASE.]

    Subject to, consistent with, and without waiving any of the Objections, Defendant responds as follows. Mr. Ellison does not have a specific recollection of receiving specific facts from specific persons during 3Q01. However, Mr. Ellison generally received sales and "deal" information relating to fiscal 3Q01 from various Executive Vice Presidents, including Sandy Sanderson, Jay Nussbaum, Sergio Giacoletto and George Roberts. Mr. Ellison also received regular financial information from members of Oracle's finance organization, including Jeff Henley and Jennifer Minton. In addition, as discovery in this action and Defendant's investigation have only recently begun and are ongoing, Defendant reserves the right to supplement this response as appropriate at a later date.

**INTERROGATORY NO. 27:**

    DESCRIBE EACH DOCUMENT you reviewed during the period from January 5, 2000, to February 28, 2001, relating to ORACLE's actual sales of goods and services for the period from December 1, 2000, to February 28, 2001.

**RESPONSE TO INTERROGATORY NO. 27:**

    [THIS RESPONSE IS DESIGNATED **CONFIDENTIAL** PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS CASE.]

    Subject to, consistent with, and without waiving any of the Objections, Defendant responds as follows. Mr. Ellison does not specifically recall receiving specific documents during 3Q01. However, Mr. Ellison generally reviewed monthly and quarterly reports that described sales in various sectors during this period and communications from various Executive Vice Presidents, including Sandy Sanderson, Jay Nussbaum, Sergio Giacoletto and George Roberts.

15

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609931

1  In addition, as discovery in this action and Defendant's investigation have only recently begun

2  and are ongoing, Defendant reserves the right to supplement this response as appropriate at a

3  later date.

4  **INTERROGATORY NO. 28:**

5       Describe with particularity the shares of stock in ORACLE that you owned on December

6  26, 2000, by stating the number of shares owned and the price you paid for each share.

7  **RESPONSE TO INTERROGATORY NO. 28:**

8       Subject to, consistent with, and without waiving any of the Objections, Defendant

9  responds as follows.  Pursuant to Code of Civil Procedure § 2030(f)(2), Defendant responds that

10  information sought by this Interrogatory may be obtained from publicly available documents

11  filed with the Securities and Exchange Commission.  Some of these documents have been

12  produced previously and are numbered CD-I 00080 to CD-I 00107 and CD-I 00162 to CD-I

13  00193.

14  **INTERROGATORY NO. 29:**

15       Describe with particularity the shares of stock in ORACLE that you owned on

16  February 1, 2001, by stating the number of shares owned and the price you paid for each share.

17  **RESPONSE TO INTERROGATORY NO. 29:**

18       Subject to, consistent with, and without waiving any of the Objections, Defendant

19  responds as follows.  Pursuant to Code of Civil Procedure § 2030(f)(2), Defendant responds that

20  information sought by this Interrogatory may be obtained from publicly available documents

21  filed with the Securities and Exchange Commission.  Some of these documents have been

22  produced previously and are numbered CD-I 00080 to CD-I 00107 and CD-I 00162 to CD-I

23  00193.

24  **INTERROGATORY NO. 30:**

25       Describe with particularity the stock options for purchase of stock in ORACLE that you

26  had a right to exercise on December 26, 2000, by stating the number of shares you were entitled

27  to purchase by reason of each such option, the expiration date of each such option, the PERSON

28

16

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609932

1   from whom you acquired each such option, the consideration you gave for the acquisition of

2   such option, and the date you acquired each such option.

3   **RESPONSE TO INTERROGATORY NO. 30:**

4       Subject to, consistent with, and without waiving any of the Objections, Defendant

5   responds as follows.

| Option Date | Number of Exercisable Options as of 12/26/00 | Expiration Date |
|---|---|---|
| 7/31/91 | 23,047,000 | 8/1/01 |
| 5/24/93 | 4,050,000 | 5/25/03 |
| 5/31/94 | 4,050,000 | 5/31/04 |
| 5/31/95 | 6,075,000 | 5/31/05 |
| 5/31/96 | 6,300,000 | 5/31/06 |
| 7/26/96 | 900,000 | 7/26/06 |
| 1/20/97 | 10,125,000 | 1/19/07 |
| 7/13/98 | 3,000,000 | 7/13/08 |
| 6/14/99 | 10,000,000 | 6/4/09 |
| TOTAL | 67,547,000 | |

18   **INTERROGATORY NO. 31:**

19       Describe with particularity the stock options for purchase of stock in ORACLE that you

20   had a right to exercise on February 1, 2001, by stating the number of shares you were entitled to

21   purchase by reason of each such option, the expiration date of each such option, the PERSON

22   from whom you acquired each such option, the consideration you gave for the acquisition of

23   each such option, and the date you acquired each such option.

24   / / /

25   / / /

26   / / /

27   / / /

28

17

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609933

**RESPONSE TO INTERROGATORY NO. 31:**

Subject to, consistent with, and without waiving any of the Objections, Defendant responds as follows.

| Option Date | Number of Exercisable<br>Options as of 1/31/01 | Expiration Date |
|---|---|---|
| 7/31/91 | 23,047,000 | 8/1/01 |
| 5/24/93 | 4,050,000 | 5/25/03 |
| 5/31/94 | 4,050,000 | 5/31/04 |
| 5/31/95 | 6,075,000 | 5/31/05 |
| 5/31/96 | 6,300,000 | 5/31/06 |
| 7/26/96 | 900,000 | 7/26/06 |
| 1/20/97 | 13,500,000 | 1/19/07 |
| 7/13/98 | 3,000,000 | 7/13/08 |
| 6/14/99 | 10,000,000 | 6/4/09 |
| **TOTAL** | **47,875,000** | |

**INTERROGATORY NO. 32:**

Describe each meeting you attended with any member of the SPECIAL LITIGATION COMMITTEE acting in their capacity as members of the SPECIAL LITIGATION COMMITTEE by providing particulars regarding the discussion, the time, place and duration of the meeting, the PERSONS who were present, whether the meeting was held in person or by any other means, whether any statements were made under penalty of perjury at the meeting, whether any recordation or memorialization was made of such meeting, whether any further meetings were scheduled, and whether the SPECIAL LITIGATION COMMITTEE made any requests that required follow up after the meeting. (As used in these interrogatories, "SPECIAL LITIGATION COMMITTEE" means the Special Litigation Committee of ORACLE's board of directors, which is comprised of Joseph A. Grundfest and Hector Garcia-Molina and which was purportedly formed by Written Consent of the Board of Directors of ORACLE dated February 1,

18

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609934

1   2002, as well as any of the SPECIAL LITIGATION COMMITTEE'S agents, representatives,

2   and attorneys.)

3   **RESPONSE TO INTERROGATORY NO. 32:**

4        Subject to, consistent with, and without waiving any of the Objections, Defendant

5   responds as follows.  Mr. Ellison was interviewed by representatives of the Special Litigation

6   Committee on May 30, 2002 at Oracle's headquarters, 500 Oracle Parkway, Redwood City,

7   California 94065.  Mr. Ellison was represented by his counsel, Mayer, Brown, Rowe & Maw,

8   and the Special Litigation Committee was represented by Joseph Grundfest and its counsel,

9   Simpson, Thacher & Bartlett.  The interview lasted approximately two hours and was not

10   transcribed.  Topics covered at the interview included subjects raised by the allegations in this

11   litigation, *Bauer* v. *Ellison*, et al., Case No. C 02-1304, and *In re Oracle Corp. Derivative*

12   *Litigation*, Consolidated Civil Action No. 18751.  A follow-up interview is scheduled for

13   September 20, 2002.

14   DATED:  September 16, 2002        MAYER, BROWN ROWE & MAW

15

16

17   By: _____

18        John Nadolenco
          Attorneys for Defendants MICHAEL J. BOSKIN,
19        LAWRENCE J. ELLISON, JEFFREY O. HENLEY
          and DONALD L. LUCAS

20

21

22

23

24

25

26

27

28

19

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609935

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

I, LAWRENCE J. ELLISON, have read the foregoing DEFENDANT LAWRENCE J. ELLISON'S SUPPLEMENTAL RESPONSES TO FIRST SET OF SPECIAL INTERROGATORIES and know its contents. I declare under penalty of perjury under the laws of the State of California that the matters stated therein are true and correct to the best of my knowledge, information and belief.

Executed on this _____ day of September, 2002 at _____, California.

_____
Lawrence J. Ellison

DEFENDANT ELLISON'S SUPPLEMENTAL RESPONSES
TO FIRST SET OF SPECIAL INTERROGATORIES

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609936

1

**PROOF OF SERVICE
BY U.S. MAIL**

2

I, Janice Austgen, declare:

3

    I am a resident of the State of California and over the age of eighteen years, and not a

4

party to the within action; my business address is: 350 South Grand Avenue, 25th Floor, Los
Angeles, California 90071.

5

    On September 16, 2002, I served the foregoing documents described as follows:

6

**DEFENDANT LAWRENCE J. ELLISON'S SUPPLEMENTAL RESPONSES TO
PLAINTIFF CARY COLLINS' FIRST SET OF SPECIAL INTERROGATORIES**

7

8

    ☒    By placing the document(s) listed above in a sealed envelope with postage prepaid,
via First Class Mail, in the United States mail at Los Angeles, California addressed
as set forth on the attached service list.

9

10

**SEE ATTACHED SERVICE LIST**

11

    ☐    By personally delivering the document(s) listed above to the person(s) at the
address(es) set forth below.

12

    ☐    By placing the document(s) listed above in a sealed UPS envelope and affixing a
pre-paid air bill, and causing the envelope to be delivered to a Federal Express
agent for delivery.

13

14

    I am readily familiar with the firm's practice of collection and processing correspondence

15

for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
day with postage thereon fully prepaid in the ordinary course of business. I am aware that on

16

motion of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.

17

    I declare that I am employed in the office of a member of the bar of this court at whose

18

direction the service was made.

19

    Executed on September 16, 2002, at Los Angeles, California.

20

21

*Janice Austgen*

22

Janice Austgen

23

24

25

26

27

28

LADB01 28547637.1 091602 1359P
01829588

PROOF OF SERVICE

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609937

# SERVICE LIST

Consolidated Derivative Action
Judicial Counsel Coordination Proceeding No. 4180
San Mateo County Superior Court Case No. 417511

| | |
|---|---|
| Dario de Ghetaldi<br>Jerry E. Nastari<br>Amanda L. Riddle<br>**COREY, LUZAICH, PLISKA,<br>DE GHETALDI & NASTARI LLP**<br>700 El Camino Real<br>P. O. Box 669<br>Millbrae, CA 94030 | Joseph J. Tabacco, Jr.<br>Nicole Lavallee<br>Karen Rosenthal<br>**BERMAN, DEVALERIO PEASE<br>TABACCO BURT & PUCILLO**<br>425 California Street, Suite 2025<br>San Francisco, CA 94104 |
| Karen L. Morris<br>**MORRIS & MORRIS**<br>1105 N. Market Street, Suite 1600<br>P.O. Box 2166<br>Wilmington, DE 19801 | James McManis<br>Colleen Duffy-Smith<br>Arron Nesbitt<br>**McMANIS, FAULKNER & MORGAN**<br>A Professional Corporation<br>160 W. Santa Clara Street, 10th Floor<br>San Jose, CA 95113 |
| Dorian Daley<br>Lauren G. Segal<br>**ORACLE CORPORATION**<br>500 Oracle Parkway<br>Mailstop 50P7<br>Redwood City, CA 94065 | George Trevor<br>300 Tamal Plaza, Suite 180<br>Corte Madera, CA 94925-1131 |
| James D. Baskin III<br>**BASKIN, BENNETT & KOMLOV,<br>L.L.P.**<br>919 Congress Avenue, Suite 1000<br>Austin, TX 78701 | Harvey Greenfield<br>Laura Perrone<br>**LAW FIRM OF HARVEY<br>GREENFIELD**<br>60 East 42nd Street, Suite 2001<br>New York, NY 10165 |
| Harold B. Obstfeld<br>**HAROLD B. OBSTFELD, P.C.**<br>260 Madison Avenue<br>New York, NY 10016 | David R. Scott<br>James E. Miller<br>**SCOTT & SCOTT, LLC**<br>108 Norwich Avenue<br>Colchester, CT 06415 |
| David R. Buchanan<br>**SEEGER WEISS LLP**<br>One William Street<br>New York, NY 10004-2502 | Thomas D. Mauriello<br>**LAW OFFICES OF<br>THOMAS D. MAURIELLO**<br>4040 Civic Center Drive, Suite 200<br>San Rafael, CA 94903 |

2

LADB01 28547637.1 091602 1359P
01829588

PROOF OF SERVICE

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 609938