LATHAM & WATKINS LLP
    Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
E-mail: peter.wald@lw.com

Attorneys for Defendants ORACLE CORPORATION,
LAWRENCE J. ELLISON, JEFFREY O. HENLEY and
EDWARD J. SANDERSON

ORACLE CORPORATION
    Dorian Daley (SBN 129049)
    James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone:  (650) 506-5200
Facsimile:  (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
    Patrick E. Gibbs  (SBN 183174)
135 Commonwealth Drive
Menlo Park, California 94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
    Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail: sean.berkowitz@lw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION,<br><br>This Documents Relates To:<br><br>ALL ACTIONS | Master File No. C-01-0988 (SI) (Consolidated)<br><br>**DEFENDANTS' REVISED NOTICE OF *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF BJORN I. STEINHOLT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Honorable Judge Susan Illston<br>Hearing Date:  January 9, 2009<br>Time:  9:00 a.m. |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on January 9, 2009, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 10 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, Defendants Oracle Corporation, Lawrence J. Ellison, Jeffrey O. Henley and Edward J. Sanderson will and hereby do move this Court for an order excluding Bjorn I. Steinholt's opinions and testimony on loss causation and damages, as set forth in his May 25, 2007 Expert Report, his June 22, 2007 Rebuttal Report and his deposition testimony. This motion is made on the grounds that his opinions on these subjects are unreliable and irrelevant and thus inadmissible pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

This Motion is based upon this Notice of Motion, the following Memorandum of Points and Authorities, and the files and records of this action, together with such arguments and evidence as may be presented to the Court at or prior to the hearing on this motion.

Dated: October 20, 2008         LATHAM & WATKINS LLP
                                Peter A. Wald
                                Patrick E. Gibbs
                                Sean M. Berkowitz


                                         /s/
                                By: _____
                                         Peter A. Wald
                                Attorneys for Defendants ORACLE
                                CORPORATION, LAWRENCE J. ELLISON,
                                JEFFREY O. HENLEY, and EDWARD J.
                                SANDERSON

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
                                         OPINIONS AND TESTIMONY
                                         Master File No. C-01-0988 (SI)

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................................ 1

II. STANDARD OF REVIEW ....................................................................................................... 2

III. ARGUMENT ............................................................................................................................ 4

    A.    Steinholt's Opinions On Loss Causation Are Based Upon A Defective Event Study ........................................................................................ 4

        1.    Steinholt's Event Study Failed To Eliminate Industry Forces ............................................................................................................. 5

        2.    Steinholt Did Not Perform Any Analysis To Determine If The March 1 Announcement Revealed A "Relevant Truth" ..................... 7

    B.    Steinholt's Damages Calculations Cannot Be Reconciled With *Dura* And Its Progeny ............................................................................................ 8

        1.    Steinholt's "Constant Percentage Inflation" Damages Model Is Inconsistent With *Dura* ............................................................... 9

        2.    Steinholt's Analysis Of Section 20A Damages Is Unreliable And Does Not Comport With *Dura* ....................................... 11

IV. CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Ahlberg v. Chrysler Corp.*,
    481 F.3d 630 (8th Cir. 2007) ................................................................................................ 8

*Bagby v. Rydex Invs.*,
    No. 3:06-CV-06480G ECF, 2007 U.S. Dist. LEXIS 11199 (N.D. Tex. Feb. 16,
    2007) ....................................................................................................................................... 5

*Carpe v. Aquila, Inc.*,
    No. 02-0388-CV-W-FJG, 2005 WL 1138833 (W.D. Mo. Mar. 23, 2005) ............................. 5

*Cicero v. Borg-Warner Automotive, Inc.*,
    163 F. Supp. 2d 743 (E.D. Mich. 2001) ................................................................................ 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) .................................................................................................. 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ............................................................................................................ 1, 3

*DSU Med. Corp. v. JMS Co., LTD*,
    296 F. Supp. 2d 1140 (N.D. Cal. 2003) ............................................................................ 3, 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ....................................................................................................... passim

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,
    299 F.3d 1053 (9th Cir. 2002) ................................................................................................ 3

*Gordon Partners v. Blumenthal*,
    No. 02-Civ.-7377, 2007 WL 1438753 (S.D.N.Y. May 16, 2007) .......................................... 5

*In re AOL Time Warner, Inc. Sec. Litig.*,
    No. Civ. 0695 (SWK), 2007 WL 1789013 (S.D.N.Y. Jun. 20, 2007) .................................. 12

*In re Daou Systems, Inc. Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005) .............................................................................................. 10

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    131 F. Supp. 2d 680 (E.D. Pa. 2001) ................................................................................. 4, 8

*In re Impac Mort. Holdings, Inc. Sec. Litig.*,
    544 F. Supp. 2d 1083 (C.D. Cal. 2008) .................................................................................. 8

*In re Imperial Credit Indus., Inc., Sec. Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) .................................................................................. 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

*In re Omnicom Group, Inc. Sec. Litig.*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008) .................................................................................. 1, 5

*In re Verifone Sec. Litig.*,
  784 F. Supp. 1471 (N.D. Cal. 1992) ....................................................................................... 11

*In re Williams Sec. Litig.*,
  496 F. Supp. 2d 1195 (N.D. Okla. 2007) ..................................................................... 1, 5, 7, 10

*In re Zonagen Sec. Litig.*,
  322 F. Supp. 2d 764 (S.D. Tex. 2003) ......................................................................................5

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ....................................................................................................................3

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005) .......................................................................................................8

*Lust v. Merrell Dow Pharm., Inc.*,
  89 F.3d 594 (9th Cir. 1996) ........................................................................................................3

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd*,
  No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164 (D. N.J. June 30, 2005) .................... 4, 8

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
  --- F.3d ---, 2008 WL 3905427 (9th Cir. Aug. 26, 2008) ............................................. 4, 8, 10

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank*,
  877 F.2d 1333 (7th Cir. 1989) ...................................................................................................3

*Odyssey Waste Serv., LLC v. BFI Waste Sys. of N.A., Inc.*,
  No. 05-CV-1929, 2007 WL 674594 (E.D. Pa. Feb. 28, 2007) ............................................ 12

*Playtex Prod., Inc. v. Proctor & Gamble Co.*,
  No. 02 Civ. 8046, 2003 WL 21242769 (S.D.N.Y. May 28, 2003) ........................................3

*Redfoot v. B.F. Ascher & Co.*,
  No. C05-2045 PJH, 2007 WL 1593239 (N.D. Cal. Jun. 1, 2007) .........................................3

*Robbins v. Kroger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................................................5

*Ryan v. Flowserve*,
  245 F.R.D. 560 (N.D. Tex. 2007) ................................................................................. 1, 4, 5, 8

*S.E.C. v. MacDonald*,
  699 F.2d 47 (1st Cir. 1983) ................................................................................................ 11, 12

*Short v. Bellville Shoe Mfg. Co.*,
  908 F.2d 1385 (7th Cir. 1990) ................................................................................................ 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
   173 F.R.D. 675 (D. Kan. 1997) .................................................................................................. 11

*Zenith Elec. Corp. v. WH-TV Broadcasting Corp.*,
   395 F.3d 416  (7th Cir. 2005) ................................................................................................ 3, 8

## STATUTES

15 U.S.C. § 78u-4(b)(4) ........................................................................................................... 4

## RULES

Fed. R. Evid. 702 ................................................................................................................. 1, 3

## OTHER AUTHORITIES

Daniel P. Lefler & Allan W. Kleidon, *Just How Much Damage Did Those
   Misrepresentations Cause and To Whom?: Damages Measurement in "Fraud
   on the Market" Securities Class Actions*, 1505 PLI/Corp. 285 (2005) ................................ 10

Federal Judicial Center, *Reference Manual on Scientific Evidence* at 22 (2d ed.
   2000) ........................................................................................................................................ 7

John Y. Campbell *et al.*, *The Econometrics of Financial Markets* 149-89 (1997) ....................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv                    DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
                                       OPINIONS AND TESTIMONY
                                       Master File No. C-01-0988 (SI)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants move to exclude Bjorn I. Steinholt's expert opinions and testimony on loss causation and damages, as set forth in his May 25, 2007 Expert Report (the "Report"), his June 22, 2007 Rebuttal Report (the "Rebuttal Report") (collectively, the "Reports") and his deposition testimony.[1]

To carry their burden on loss causation under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), Plaintiffs must establish that the March 2, 2001 stock drop was caused by the market learning of and reacting to the disclosure of new facts that were concealed by the alleged frauds (*i.e.*, a "relevant truth").  At a minimum, this requires Plaintiffs to proffer a competent event study that correlates stock price movements to company-specific information by eliminating that portion of the stock drop caused by market *and* industry forces.  Although Steinholt conducted an event study in this case, he failed to eliminate the effects of the industry on Oracle's March 2 stock price decline.  Indeed, Steinholt based his regression analysis on a market index only, and *not* an industry index.  Thus, while an event study typically isolates the stock price affects of company-specific information, Steinholt's analysis does not even do that, because he failed to account for the pervasive industry influences on Oracle's stock price.[2]

---

[1]   Steinholt's Reports and deposition transcript were attached as Exhibits A, B and C, respectively, to the previously-filed Declaration of Holly J. Tate ("Tate Decl."), ¶¶ 3-5.  (Docket No. 1200.)

[2]   Steinholt's analysis and opinions in this case cannot establish loss causation as a matter of law, and the mere existence of expert evidence, like any other evidence, does not defeat summary judgment.  *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).  Thus, even if Steinholt's opinions and testimony were admissible under the Federal Rules of Evidence, they will not enable Plaintiffs to survive summary judgment.  *Ryan v. Flowserve*, 245 F.R.D. 560, 573-74 (N.D. Tex. 2007) (even if Steinholt's opinions were admissible, plaintiffs nevertheless failed to establish loss causation); *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008) (while expert's testimony was admissible under *Daubert*, it was insufficient to establish loss causation); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1295 (N.D. Okla. 2007) ("With or without … proposed expert testimony, the summary judgment record provides no basis upon which a finder of fact could reasonably determine, consistent with loss causation doctrine established by *Dura* and its progeny, that plaintiffs' claimed losses were caused by defendants' alleged misrepresentations or omissions[.]").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

1    Nor does Steinholt even attempt to offer an opinion on what specifically caused the
2  March 2 stock drop.  Indeed, he only attempted (and failed) to isolate the stock price effects of
3  Oracle-specific information, leaving the task of actually *proving* the "causal connection" to
4  Plaintiffs.  Steinholt freely admitted that he *assumed* Plaintiffs would prove their allegations, and
5  that this "proof" would provide the required causal link.  But Plaintiffs have not put forth a shred
6  of evidence on loss causation *other than* the expert opinions and testimony of Steinholt.  Indeed,
7  there is no record evidence that the March 1 disclosure, which precipitated the stock drop,
8  revealed a fact that had been concealed by any of the alleged frauds, nor is there any evidence
9  that the market recognized a relationship between the alleged frauds and the stock price decline.
10  Steinholt's event study, even if it were properly performed (it was not), cannot save Plaintiffs
11  from this manifest failure of proof.

12    Steinholt's methodology for calculating Plaintiffs' purported damages fares no better.
13  His damages calculations for both the alleged Sections 10(b) and 20A violations – which are
14  premised upon the "constant percentage inflation" theory – are inconsistent with *Dura*, as they
15  include losses that pre- and post-date the March 2 stock drop, and thus, include losses that could
16  not possibly have been caused by the revelation of any "relevant truth."  In fact, under
17  Steinholt's damages model, many Plaintiffs would recover damages that greatly exceed the
18  amount of the loss that occurred on March 2 (after Plaintiffs contend the "relevant truth" became
19  "generally known").  The Supreme Court and the Ninth Circuit specifically have held that such
20  damages are not recoverable because they would give investors a partial downside insurance
21  policy, precisely what *Dura* counsels against.

22  **II.    STANDARD OF REVIEW**
23    Scientific, technical or other specialized knowledge is admissible *only* if it "will assist the
24  trier of fact to understand the evidence or to determine a fact in issue" *and* if "(1) the testimony
25  is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 594.[3]

The proponent of the expert has the burden of proving that the expert's testimony is admissible. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594 (9th Cir. 1996). Under *Daubert*, a trial court is required to "determine whether the expert testimony is sufficiently tied to the facts of the case to be of use to the trier of fact in resolving a factual dispute," *Daubert*, 509 U.S. at 591, or in other words, that the expert testimony "fits" the facts of the case. "[T]he standard for fit [under *Daubert*] is higher than bare relevance." *Redfoot v. B.F. Ascher & Co.*, No. C05-2045 PJH, 2007 WL 1593239, at *4 (N.D. Cal. Jun. 1, 2007) (citation omitted). Accordingly, a court "must ensure that the proposed expert testimony … logically advances a material aspect of the proposing party's case," *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995), *on remand, cert. denied,* 516 U.S. 869 (1995), or that the "evidence [has] a valid scientific connection to the disputed material facts in a case." *Daubert*, 509 U.S. at 591.

The trial court also must determine that the proposed expert opinion is reliable, predicated upon a discernable methodology and contains an analysis that is more than just the expert's unsupported assertions. *Daubert*, 509 U.S. at 593-94; *Zenith Elec. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005) (excluding expert testimony and stating "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.") (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)); *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 n.7 (9th Cir. 2002) (excluding "opinion evidence which is connected to existing data only by the *ipse dixit* of the expert"); *Playtex Prod., Inc. v. Proctor & Gamble Co.*, No. 02 Civ. 8046, 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003) (excluding expert opinions for "fail[ing] to meet the threshold for reliability under *Daubert*, as they did not rely on any discernable methodology").

---

[3] The *Daubert* requirement that evidence be both relevant and reliable applies not just to scientific knowledge, but to other technical or specialized knowledge as well. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Courts have concluded that expert economic analysis qualifies as "technical" or "specialized" knowledge for purposes of *Daubert*. *DSU Med. Corp. v. JMS Co., LTD,* 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003).

## III. ARGUMENT

### A. STEINHOLT'S OPINIONS ON LOSS CAUSATION ARE BASED UPON A DEFECTIVE EVENT STUDY

Steinholt was retained to opine on loss causation, Report ¶ 4, and his Report specifically states that it is his opinion that Oracle's March 1 disclosure of its earnings miss "reduced and/or eliminated the inflation in Oracle's common stock resulting from the alleged false and misleading statements and omissions." *Id.* ¶ 46.

Loss causation is an essential element of a Section 10(b) claim. 15 U.S.C. § 78u-4(b)(4); *Dura*, 544 U.S. at 342. To establish loss causation, a plaintiff must prove a "causal connection" between a defendant's alleged misrepresentation and the loss for which the plaintiff seeks to recover. *Dura,* 544 U.S. at 345-46. As the Supreme Court has explained, "the logical link between [an] inflated share price" resulting from an alleged misstatement "and any later economic loss is not invariably strong" because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events[.]" *Id.* at 343. Thus, to establish loss causation, a plaintiff must show that the company's stock price dropped when the "relevant truth" – *i.e.*, a "truth" that a defendant's fraudulent statements or omissions concealed from the market – became "generally known." *Id.* at 342-44; *see also Metzler Investment GMBH v. Corinthian Colleges, Inc.*, --- F.3d ---, 2008 WL 3905427, at *9 (9th Cir. Aug. 26, 2008) (dismissing securities fraud complaint where plaintiff failed to allege "that the market became aware of, and the resulting stock drop resulted from, [the alleged] fraud.").[4]

---

[4] Although the market may learn a "relevant truth" through something other than an express "corrective disclosure," *i.e.*, such as through an indirect disclosure, "this adds a step to the loss causation…analysis." *Flowserve*, 245 F.R.D. at 579. Under these circumstances, a securities fraud plaintiff must establish that the market recognized a relationship between the event disclosed and the alleged fraud. *Metzler*, 2008 WL 3905427, at *11; *Flowserve*, 245 F.R.D. at 579 ("When fraud is revealed through indirect disclosure, plaintiffs must provide proof that the market recognized a relationship between the event disclosed and the fraud to establish loss causation."); *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd*, No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164, at *26-27 (D. N.J. June 30, 2005) (same); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 690 (E.D. Pa. 2001) (same); *Robbins v. Kroger Properties, Inc.*, 116

1.    **STEINHOLT'S EVENT STUDY FAILED TO ELIMINATE INDUSTRY FORCES**

As part of his loss causation analysis, Steinholt conducted an "event study." Report at ¶ 50. An event study is a statistical analysis of a company's stock price movement that attempts to isolate the effects of company-specific information. *See* John Y. Campbell *et al.*, *The Econometrics of Financial Markets* 149-89 (1997); *Gordon Partners v. Blumenthal*, No. 02-Civ.-7377, 2007 WL 1438753, at *1-2 (S.D.N.Y. May 16, 2007) (granting summary judgment where plaintiffs failed to offer an event study "factor[ing] out performance of the stock market generally or of stocks in relevant related stock indices."). However, the mere fact that Steinholt performed an event study in this case is not, *ipso facto*, sufficient evidence of loss causation. As an initial matter, to isolate the stock price effects of company-specific information, it is imperative that the event study account for and eliminate market *and* industry forces. *In re Imperial Credit Indus., Inc., Sec. Litig.*, 252 F. Supp. 2d 1005, 1016 (C.D. Cal. 2003); *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, 2005 WL 1138833, at *4-5, *8 (W.D. Mo. Mar. 23, 2005). And even then, a competent event study – without more – does not assess whether particular company-specific information reveals a "truth" that was concealed by an alleged fraud. *Flowserve*, 245 F.R.D. at 570, 573-74; *Omnicom*, 541 F. Supp. 2d at 554; *Williams*, 496 F. Supp. 2d at 1264; *In re Zonagen Sec. Litig.*, 322 F. Supp. 2d 764, 781-82 (S.D. Tex. 2003).

Here, Steinholt's event study fails at the outset as it does not even purport to eliminate the effects of industry forces on Oracle's stock price. Steinholt's only attempt to factor out industry-specific influences was a regression that analyzed the relationship between Oracle's stock price movements and the NASDAQ-100. Report ¶ 53. The NASDAQ-100, however, is a *market* index, not an *industry* index. *Id.* ("For the purpose of measuring the *market* effect, I used the NASDAQ-100 index.") (emphasis added); *see also Bagby v. Rydex Invs.*, No. 3:06-CV-06480G ECF, 2007 U.S. Dist. LEXIS 11199, at *3 (N.D. Tex. Feb. 16, 2007) (describing the NASDAQ-100 as a "market ind[ex]"). It includes "100 of the largest domestic and international non-financial securities listed on the NASDAQ Stock Market based upon market capitalization," and

---

F.3d 1441, 1448 (11th Cir. 1997) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

1   it encompasses a broad array of companies *outside* of Oracle's industry – such as EBay,
2   Starbucks and Bed Bath & Beyond.  Report at Ex. H; Ex. 1.[5]

3        Steinholt's failure to account for industry forces is crippling in light of the undisputed
4   facts of this case.  Prior to March 1, 2001, Oracle and its competitors exceeded expectations and
5   were unaffected by the economy.  Exs. 2-5.  On March 1, Oracle announced that it had missed its
6   3Q01 guidance because customers deferred purchases in the final days of 3Q01 due to concerns
7   about the economy.  Ex. 6 at NDCA-ORCL 442139.  Following Oracle's March 1
8   announcement, *all* of Oracle's competitors' stock prices declined, and most went on to miss their
9   own guidance (citing the same industry forces that Oracle had blamed for its miss).  James Decl.,
10  Ex. 1 ¶¶ 57-69;[6] Exs. 7-11.  Analysts uniformly described Oracle's earnings miss, not as a
11  disclosure of any fact that Defendants had concealed, but instead as a revelation of a sudden and
12  unexpected economic downturn affecting the entire industry.  Exs. 12-17.

13       Steinholt's event study failed to account for and eliminate the impact of *all* of this
14  industry-specific information on Oracle's stock price.  Steinholt's failure to remove the portion
15  of the loss caused by these industry factors is easily shown by comparing the NASDAQ-100
16  return (-4.4%) to the average return of Oracle's competitors (-12.35%).  Report Ex. H; James
17  Decl., Ex. 1 at Ex. 5.  Steinholt's failure to eliminate industry effects also can be demonstrated
18  by looking at the stock prices of Oracle's competitors, all of which declined on March 2, 2001.
19  James Decl., Ex. 1 ¶ 61; *see also* James Decl., Ex. 1 at Ex. 8.  The fact that all of Oracle's
20  competitors suffered stock price declines on March 2 demonstrates that the market was reacting
21  to new information specific to the industry (which Steinholt failed to consider).

22       Thus, because Steinholt failed to eliminate industry effects, his event study does not
23  isolate – as it must – the stock price effects of Company-specific information from the "tangle of

---

[5]  "Ex__" refers to exhibits attached to the Declaration of Brian T. Glennon in Support of Defendants' Revised Notice of *Daubert* Motion to Exclude Opinions and Testimony of Bjorn I. Steinholt (filed concurrently herewith).

[6]  Absent new, material news related to the market or the industry, the probability that all of Oracle's competitors' stock prices would decline on March 2, 2001 is less than 1%.  October 20, 2008 Declaration of Christopher James ("James Decl."), Ex. 1 ¶ 61.

1  [other] factors" that affected the stock price. *Dura*, 544 U.S. at 343. Steinholt's analysis,
2  therefore, cannot establish loss causation, and should be excluded. *Williams*, 496 F. Supp. 2d at
3  22 (noting that the "'fit prong of the *Daubert* test and the helpfulness standard of Rule 702
4  require courts to exclude a plaintiff's expert testimony that does not satisfy the plaintiff's
5  substantive burden of proof on an issue.") (quoting Federal Judicial Center, *Reference Manual*
6  *on Scientific Evidence* at 22 (2d ed. 2000)).

### 2.  STEINHOLT DID NOT PERFORM ANY ANALYSIS TO DETERMINE IF THE MARCH 1 ANNOUNCEMENT REVEALED A "RELEVANT TRUTH"

It is important to keep in mind that Plaintiffs have proffered Steinholt's opinions on loss causation for the *sole* purpose of establishing the effects of company-specific information on Oracle's stock price (which, as described above, his event study failed to do). Plaintiffs (admittedly) have *not* offered Steinholt's testimony and opinions to establish that there actually was a "causal connection" between the alleged fraud and the March 2 stock drop. (Docket 1314, at 8.) Instead, Steinholt assumed that Plaintiffs would prove their case, and that this "proof" would provide the evidentiary link required by *Dura*. Rebuttal Report ¶ 13 ("For my purposes, I assumed that plaintiffs' allegations are true, and, consequently, I concluded that the price decline on March 2, 2001 relates directly to plaintiffs' allegations."); *see also* Report ¶ 7. Indeed, Steinholt readily admitted that he performed no analysis at all to determine what specifically caused the stock drop:

> Q. ….It is your assumption that Plaintiffs' allegations, discussed in your reports, are true, that furnishes the link between Plaintiffs' allegations and the March 2nd price decline; is that correct?
>
> A. Yes. I mean, if Plaintiffs' allegations are not true, or they are unable to prove those allegations, then that is obviously, you know, that obviously changes my opinion.
>
> Q. Well, changes your opinion how?
>
> A. Well, if they cannot prove the case, their case, then obviously there are no damages.

Steinholt Depo. at 54: 13-24 (objections to form omitted).

1   Whether Plaintiffs have carried their burden of establishing the required "causal
2   connection" between the alleged fraud and the March 2 stock drop is an issue of law for the
3   Court to resolve on summary judgment. *Flowserve*, 245 F.R.D. at 571-73; *McKowan*, 2005 WL
4   1541062, at *9-11; *Ikon*, 131 F. Supp. 2d at 688-91. But Plaintiffs have offered no evidence of
5   loss causation *other than* the opinions and testimony of Steinholt. Indeed, there is no evidence
6   that the March 1 announcement revealed a "relevant fact," such that it constitutes a "corrective
7   disclosure" under the law. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005); *In
8   re Impac Mort. Holdings, Inc. Sec. Litig.*, 544 F. Supp. 2d 1083, 1102 n.13 (C.D. Cal. 2008);
9   *Flowserve*, 245 F.R.D. at 572. Nor is there any evidence that the market recognized any
10  relationship between the alleged fraud and Oracle's 3Q01 earnings miss, as required where a
11  plaintiff claims that the fraud was revealed indirectly. *Metzler*, 2008 WL 3905427; *Flowerve*,
12  245 F.R.D. at 579; *McKowan*, 2005 U.S. Dist. LEXIS 32164, at *26-27. Steinholt clearly cannot
13  provide this missing evidentiary link, because he simply assumed it existed and that Plaintiffs
14  would prove it.

15  Because Steinholt merely assumed that Plaintiffs would establish the required causal link
16  between the alleged frauds and the March 2 stock drop, his opinions provide no benefit to the
17  finder of fact. To the contrary, they present a real danger of misleading the finder of fact into
18  believing that Steinholt performed a more meaningful analysis than he has. As such, his
19  opinions and testimony should be excluded. *Zenith*, 395 at 419-20 (excluding expert testimony
20  and stating that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to
21  the judicial process."); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 635-36 (8th Cir. 2007) ("The
22  proffer of [the expert's] testimony was properly rejected because [the expert] employed no
23  methodology – reliable or otherwise.").

24  **B.    STEINHOLT'S DAMAGES CALCULATIONS CANNOT BE RECONCILED WITH *DURA***
25  **AND ITS PROGENY**

26  Steinholt intends to testify about Plaintiffs' alleged damages on their Sections 10(b) and
27  20A claims. Report at ¶¶ 47-55. However, Steinholt's damages analysis – which would allow
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8    DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

Plaintiffs to recover damages that could not possibly have been caused by the alleged frauds, in amounts that greatly exceed the residual stock drop – flatly disregards established precedent.

### 1. STEINHOLT'S "CONSTANT PERCENTAGE INFLATION" DAMAGES MODEL IS INCONSISTENT WITH *DURA*

Steinholt used a regression analysis and he assumed that the entire residual loss on March 2 was caused by the alleged fraud. Steinholt Depo. at 179:25-180:13. He calculated a residual return of -16.68 percent (or $3.57 per share) on March 2. Report at Ex. H. He then determined the alleged inflation that existed on March 1 (17.44 percent or $3.73 per share on March 1),[7] and he applied that 17.44 percentage inflation as a constant ratio throughout the Class Period to calculate the per share damages. James Decl., Ex. 2 ¶¶ 49-50. However, simply by the way it works mathematically (a single percentage multiplied by whatever the share price happened to be on each day of the Class Period), using "constant percentage inflation" permits damages per share to fluctuate day-to-day during the Class Period, and are in all days except one, higher (as high as $6.03 per share) than his measure of Oracle's residual stock price decline on March 2, 2001 of $3.57. Report at Ex. I.

For instance, Steinholt's methodology would permit shareholders who purchased on January 19, 2001 and sold after March 1, 2001 to get damages of $6.03, whereas the disclosure of the alleged "truth" on March 1, according to Steinholt, resulted in a $3.57 residual per share loss on March 2, 2001. *Id.* Steinholt's damages analysis would thus allow shareholders to recover up to $2.46 per share[8] in damages that are unrelated to any loss that occurred following the March 1 announcement. Furthermore, Steinholt's methodology allows an investor who purchased on February 1 to recover $0.16 per share more than a person who purchased shares on January 31, even though Plaintiffs have not alleged any wrongful conduct on January 31 to

---

[7] Steinholt obtained this figure by dividing the difference between Oracle's actual price on *March 1*, 2001, $21.38, and what he inferred to be the "true value" of the stock, $17.65, by the actual price of the stock on that date, again $21.38. $21.38 minus $17.65 equals $3.73. $3.73 divided by $21.38, and multiplied by 100%, equals 17.44%.

[8] $6.03 minus $3.57 equals $2.46.

1 explain why a shareholder who purchased a day later (but before any "relevant truth" became
2 "generally known") would be entitled to more damages.  *Id.*
3       Under *Dura*, securities fraud plaintiffs must prove that a defendant's misrepresentations
4 or omissions caused the loss for which they seek to recover.  The Supreme Court specifically
5 rejected the argument that a plaintiff need only prove that the price on the date of purchase was
6 inflated because of the misrepresentation, and held that "an inflated purchase price will not itself
7 constitute or proximately cause the relevant economic loss."  *Dura*, 544 U.S. at 342; *Williams*,
8 496 F. Supp. 2d at 1275 (excluding expert's damages opinions as they "did not square with the
9 law of loss causation applied through the prism of *Daubert* and Rule 702.").  Applying *Dura*, the
10 Ninth Circuit has held that changes in the value of the stock before the truth becomes "generally
11 known" cannot be causally related to a defendant's fraudulent actions.  *In re Daou Systems, Inc.*
12 *Sec. Litig.*, 411 F.3d 1006, 1026-27 (9th Cir. 2005); *see also Metzler*, 2008 WL 3905427¸ at *9
13 ("[T]he *Daou* court's careful delineation between losses caused after the company's conduct was
14 revealed, and losses suffered before the revelation, confirm[s] that … the [fraudulent] practices
15 … [must be] revealed to the market and cause[] the resulting losses.").  Steinholt's methodology,
16 however, is tied to the inflated purchase price rather than the relevant alleged economic loss on
17 March 2, and encompasses daily changes in the value of the stock that predate (and have
18 absolutely nothing to do with) the March 1 announcement.  Report at Ex. I.
19       There simply is no reason to believe that – even if some fraud inflated the price of
20 Oracle's stock – such inflation remained *a constant percentage of the company value*.  Indeed,
21 one case which recently considered this issue granted a *Daubert* motion, precluding the
22 testimony of a damages expert, in part because of his use of the constant percentage inflation
23 method.  *Williams*, 496 F. Supp. 2d at 1270 ("[T]he application of the constant percentage
24 inflation approach would give the equity investor the 'partial downside insurance policy' which
25 *Dura* counsels that the securities law should not provide.") (citation omitted); *see also* Daniel P.
26 Lefler & Allan W. Kleidon, *Just How Much Damage Did Those Misrepresentations Cause and*
27 *To Whom?: Damages Measurement in "Fraud on the Market" Securities Class Actions*, 1505
28 PLI/Corp. 285, 295 (2005) ("Because it awards recoveries based on price declines that are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFs' REVISED *DAUBERT* MOTION TO EXCLUDE STEINHOLT
OPINIONS AND TESTIMONY
Master File No. C-01-0988 (SI)

1  unrelated to the fraud, the percentage approach introduces through the back door price declines
2  that the Supreme Court expressly held in *Dura* do not meet the test for 'loss causation.'").[9]

### 2.     STEINHOLT'S ANALYSIS OF SECTION 20A DAMAGES IS UNRELIABLE AND DOES NOT COMPORT WITH *DURA*

Damages for a Section 20A violation are limited to the amount by which the defendant benefited, *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1490 (N.D. Cal. 1992), or the profits made or losses avoided by an individual who engages in insider trading. *Short v. Bellville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir. 1990). Section 20A damages typically are measured by calculating "the difference between the price the insider realizes and the market price of the securities after the news is released." *Id*. The date used to measure damages should occur *no later* than "a reasonable time after the inside information had been generally disseminated." *S.E.C. v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983).

In this case, Steinholt attempted to calculate Section 20A damages in two ways. First, he determined the profits that Ellison and Henley allegedly gained by multiplying the number of shares they sold by the alleged inflation per share on the day those shares were sold. Report at ¶ 54. Second, he calculated the "loss avoided" damages by measuring the difference between the price at which Ellison and Henley sold their shares and $15.80, which he determined was the "average closing price" from March 16, 2001 through April 30, 2001. *Id*.

Steinholt's first method fails because of his use of the "constant percent inflation" model, as discussed above. Moreover, Steinholt assumed that 100% of the residual drop was fraud-related and failed to account for any industry factors that influenced Oracle's stock price decline

---

[9] When asked in his deposition whether he was aware of any scientific or academic literature that supported the use of the "constant percentage" approach, Steinholt only was able to cite two: An article by Bradford Cornell and R. Gregory Morgan entitled "Using Finance Theory to Measure Damages in Fraud on the Market Cases" in the *UCLA Law Review* from June 1990 and the *Litigation Services Handbook: The Role of the Financial Expert* from 2001. Steinholt Depo. at 175:13-176:10. Neither provides persuasive support for this method because, being from a law review, the Cornell and Morgan article has not been peer-reviewed, *Cicero v. Borg-Warner Automotive, Inc.*, 163 F. Supp. 2d 743, 747-48 (E.D. Mich. 2001) and *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 679 (D. Kan. 1997), and the *Litigation Services Handbook* predates *Dura* by approximately four years.

on March 2, 2001.  In this regard, Steinholt's first damages calculation, therefore, does not comply with *Dura*, which should apply equally to Section 20A violations.  *In re AOL Time Warner, Inc. Sec. Litig.*, No. Civ. 0695 (SWK), 2007 WL 1789013, at *7-10 (S.D.N.Y. Jun. 20, 2007) (dismissing Section 14(a) claims for failure to adequately allege loss causation as required by *Dura*); *Williams*, 496 F. Supp. 2d at 1275 (excluding expert's damages opinions as they "did not square with the law of loss causation applied through the prism of *Daubert* and Rule 702.").

Steinholt's alternative Section 20A damages calculation also is flawed because he calculated the losses avoided by the alleged insider trading by analyzing the difference between the price at which Ellison and Henley sold their shares and the average closing price *between March 16, 2001 and April 30, 2001 ($15.80)*.  Report at ¶ 54.  However, established precedent mandates that the date used to measure loss avoided damages shall be *no later* than the date on which the inside information has reasonably been disseminated – *i.e.*, March 2, 2001.  *MacDonald*, 699 F.2d at 55.  Thus, Steinholt's analysis includes losses that were the result of "changed investor expectations" and "new industry-specific or firm-specific facts" unrelated to the alleged frauds.  *Dura*, 544 U.S. at 343.  Indeed, from March 16 to April 30, 2001, Oracle's share price dropped by $1.08, for reasons that cannot be blamed on the disclosure of any "relevant truth" (as the alleged fraud – according to Plaintiffs – already had been revealed).  James Decl., Ex. 2 at ¶¶ 54-55.  Because the market for Oracle's shares was (and is) efficient, as Steinholt himself concluded, the information disclosed on March 1 was digested by the market the following day.  Report at ¶¶ 26-27.  Nevertheless, Steinholt's damages theory would force Ellison and Henley (to the extent they are found liable under Section 20A) to pay for the non-fraud related losses that occurred from March 16 to April 30, 2001.

In sum, because Steinholt failed to apply the correct legal standards, Steinholt's opinions regarding Plaintiffs' Sections 10(b) and 20A damages should be excluded.  *DSU Medical Corp.*, 296 F. Supp. 2d at 1148 ("Reliable methodology requires that the legal grounds used by an expert to calculate damages be legally acceptable"); *Odyssey Waste Serv., LLC v. BFI Waste Sys. of N.A., Inc.*, No. 05-CV-1929, 2007 WL 674594, at *14 (E.D. Pa. Feb. 28, 2007) ("[A]n

expert's opinion must be compatible with applicable law, i.e., an expert cannot propose damages that are not legally recoverable.").

## IV. CONCLUSION

For the foregoing reasons, Steinholt's opinions and deposition testimony on loss causation and damages should be excluded.

Dated: October 20, 2008

Respectfully submitted,

LATHAM & WATKINS LLP
    Peter A. Wald
    Patrick E. Gibbs
    Sean M. Berkowitz

By: /s/
    Peter A. Wald
Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON