# EXHIBIT 401

CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

--oOo--

| | |
|---|---|
| In re: ORACLE CORPORATION SECURITIES LITIGATION _____ / | Master File No. C-01-0988-MJJ (JCS) CLASS ACTION |

-- TRANSCRIPT DESIGNATED AS CONFIDENTIAL --

Videotaped Deposition of

D. PAUL REGAN, CPA, CFE

Monday, July 9, 2007

Reported by:
Leslie Rockwood

CSR No. 3462

Job No. 75266

Esquire Deposition Services
800.770.3363

CONFIDENTIAL

1   page 13 of his rebuttal report, that there are refunds
2   which predated September 17th, 2000, of $103 million, I
3   know that that refunding of $103 million on those items
4   are not at issue and don't relate to item -- my Opinion
5   Number 1.  If the -- these items were refunded, which
6   accumulate to the $20 million excess, they wouldn't be in
7   the $20 million excess.
8           Q.  BY MR. GLENNON:  Did you attempt to reach a
9   conclusion and form an opinion, as plaintiffs' accounting
10  expert, on the financial statement impact of those debit
11  memos that do not contain bad debt transfers in their
12  accounting histories?
13              MR. GREENSTEIN:  Objection.  Form.
14              THE WITNESS:  Can I hear the question?
15              (The record was read by the reporter as
16              follows:
17              "QUESTION:  Did you attempt to reach a
18              conclusion and form an opinion, as
19              plaintiffs' accounting expert, on the
20              financial statement impact of those debit
21              memos that do not contain bad debt transfers
22              in their accounting histories?")
23              THE WITNESS:  Yes.  However, it became
24  apparent that -- that we don't have a -- a complete
25  understanding of the trends -- the other elements of

99

1  transactions that are included in the debit memos.  With
2  respect to the debit memos that are a part of the
3  process, which are addressed in my Opinion Number 1, I
4  can gain an understanding of the issues with respect to
5  those items.  I can see they're -- how that was utilized
6  to enable Oracle to overstate its income by $20 million.
7       But with respect to the other items, I don't
8  have enough of the complete picture of those debit memos
9  to understand how they may have been used by Oracle so
10 that I can give an opinion in this case.
11      Q.   BY MR. GLENNON:  What about the 277 refunds
12 totaling $103 million that took place before
13 November 17th 2000, did you attempt to reach an opinion
14 with respect to those particular debit memos?
15      MR. GREENSTEIN:  Objection.  Foundation,
16 vague and ambiguous.
17      THE WITNESS:  Well, certainly I reached the
18 opinion that those transactions do not bear upon my
19 opinion with respect to the $20 million overstatement of
20 the bad debt reserve, which was utilized by Oracle to
21 enhance it's earnings in Q2 '01.
22      With respect to the debit memos that are not
23 associated with -- with that approximately $20 million
24 overstatement, I've not reached an opinion with respect
25 to those debit memos because of the incomplete discovery

```
 1   with respect to those items, as I describe later in my
 2   original report.
 3        Q.   BY MR. GLENNON:  Are you saying that with
 4   respect to the 277 refunds totaling $103 million that
 5   occurred before November 17th, 2000, that you were unable
 6   to form an accounting opinion regarding the debit memos
 7   that correspond with those refunds?
 8             MR. GREENSTEIN:  Objection.  Form.
 9             THE WITNESS:  I don't have an opinion with
10   respect to those, other than that they are not related to
11   the $20 million issue which I summarized as Opinion
12   Number 1 on page 2.
13        Q.   BY MR. GLENNON:  Did you attempt to form an
14   opinion with respect to the financial statement impact of
15   the creation of the debit memos that relate to the
16   277 refunds totaling $103 million that were issued prior
17   to November 17th, 2000?
18             MR. GREENSTEIN:  Objection.  Form.
19             THE WITNESS:  What I determined is that I
20   didn't have enough understanding with respect to those
21   transactions and the process that they are -- that they
22   relate to, to determine whether or not Oracle at any time
23   enabled the pieces of those debit memos and the pieces of
24   transactions that are associated with that $103 million
25   at any time in its history, whether or not I would reach
```

1    MR. GREENSTEIN: Brian, we've been going

2    quite a while. Whenever you want to take a break, we

3    should probably do that.

4    THE WITNESS: It might even be lunch time,

5    12:30?

6    MR. GLENNON: That's fine. We can break now.

7    THE VIDEOGRAPHER: We are now going off the

8    video record. The time is 12:32 p.m.

9    (A lunch recess was taken from 12:32 p.m.

10    until 1:39 p.m.)

11    (Present after lunch: Paul J.N. Ritchie.)

12    THE VIDEOGRAPHER: We are now back on the

13    video record. The time is 1:39 p.m.

14    Q. BY MR. GLENNON: Good afternoon, Mr. Regan.

15    A. Good afternoon.

16    MR. GLENNON: I'd just like to note for the

17    record that Paul Ritchie of Deloitte Financial Advisory

18    Services has now joined us in the deposition room. So we

19    are no longer piping to him from afar.

20    Q. Mr. Regan, shortly before we took a break,

21    you were discussing approximately $20 million in

22    transfers into the bad debt reserve which occurred in the

23    second quarter of fiscal year 2001. You're familiar with

24    your testimony on that particular issue?

25    A. Yes.

```
 1                    REPORTER'S CERTIFICATE
 2         I certify that the witness in the forgoing
 3   deposition,
 4
 5   was by me duly sworn to tell the truth, the whole truth
 6   and nothing but the truth in the within-entitled cause;
 7   that said deposition was taken at the time and place
 8   herein named; that the testimony of said witness was
 9   reported by me, a duly certified shorthand reporter and
10   a disinterested person, and was thereafter transcribed
11   under my direction into typewriting.
12         I further certify that I am not of counsel or
13   attorney for either or any of the parties to said
14   deposition, nor in any way interested in the outcome of
15   the cause named in said caption.
16         Dated
17
18
19                    _Leslie Rockwood_
                      Leslie Rockwood
20                    Certified Shorthand Reporter
                      State of California
21                    Certificate No. 3462
22
23
24
25
```