# EXHIBIT 403

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                  NORTHERN DISTRICT OF CALIFORNIA
 3                       SAN FRANCISCO DIVISION
 4                                                    CERTIFIED COPY
 5    In re ORACLE CORPORATION
 6    SECURITIES LITIGATION.
 7                              Master File No. C-01-0988-MJJ
 8    This Document Relates To:
 9
10       ALL ACTIONS.
11    _____/
12
13                           ---oOo---
14                         CONFIDENTIAL
15                DEPOSITION OF MICHAEL ROCHA
16                   FRIDAY, APRIL 7, 2006
17                           ---oOo---
18
19                 SHEILA CHASE & ASSOCIATES
                         REPORTING FOR:
20                   LiveNote World Service
                  221 Main Street, Suite 1250
21              San Francisco, California 94105
                     Phone:  (415) 321-2311
22                   Fax:    (415) 321-2301
23
      Reported by:
24    DIANA NOBRIGA, CSR, CRR
      LICENSE NO. 7071
25
```

1    A.   HP was a partner and a customer, and we were a
2  customer of them.
3    Q.   Can you explain what you're telling
4  Mr. Ellison in this October 12th, 2000 e-mail?
5    A.   I'm giving him a status update on the entire
6  account, from, you know -- from their relationship as a
7  customer to their relationship as joint development
8  partner.  It's basically a status update for him to meet
9  with Carly.
10   Q.   Do you recall that HP was not happy with the
11 quality of the CRM products?
12   A.   Yes.  I'm relaying -- I'm relaying information
13 directly from my counterpart at HP at this point.
14   Q.   Was that Bill Russell?
15   A.   Yes.
16   Q.   What issues were HP having with 11i?
17   A.   You would have to ask Mark Barrenechea.  I
18 wasn't intimately involved with the implementation.
19   Q.   So in this e-mail you're just relaying what
20 Mr. Russell of HP told you; is that correct?
21   A.   Yes.  I'm essentially responsible for the
22 partnership with HP, and I'm giving Larry a picture of
23 the entire account.  And one component of that is their
24 implementation of our CRM software.
25   Q.   Do you know whether HP ever implemented the

```
 1   CRM software?  Strike that.
 2          Do you know whether HP ever actually went live
 3   on the CRM software?
 4      A.  I believe they did.
 5      Q.  Turning to the second page of that document,
 6   which is 28734.  You state, "Given the size of our
 7   software sales opportunity, you may want to agree that
 8   we'll purchase the hardware.  We need it."
 9          What are you referring to there?
10      A.  I'm referring to the fact that we -- to build
11   the products -- again, I was responsible at this time
12   for porting and joint development and testing, and all
13   that stuff, on the various hardware platforms.  One of
14   those platforms was HP.  And I'm saying here that we
15   need hardware to do our job, and HP wants us to buy the
16   hardware.  And so it's kind of -- I'm basically saying
17   it's your call as to whether we pay for it -- you know,
18   we pay for it, or we essentially try to go back to them
19   and say this is part of a partnership.  And a
20   partnership organized around sort of building products
21   together.
22          So the statement, "We need it," is essentially
23   in reference to the hardware.
24      Q.  Okay.  And did Oracle have a large software
25   sales opportunity with HP?
```

Rocha, Michael
CONFIDENTIAL

4/7/2006

1      MR. HARRISON:  Objection; vague.

2      THE WITNESS:  Oracle had an ongoing

3  relationship with HP that had a lot of different facets,

4  and we probably had some sales opportunities in there.

5  I don't know if it was specific at that time.

6      MS. WINKLER:  Q.  Okay.  I just was

7  referencing -- you say, "Given the size of our software

8  sales opportunity."

9      A.  Yeah.  And again, that software sales

10 opportunity could have happened -- we're talking about

11 an implementation.  It could have been a sale that

12 happened the previous quarter.

13     Q.  Or could it have been a future sale?

14     A.  Could have been.

15     Q.  Okay.  Do you recall the problems that the

16 customer Papa John's was having with Suite 11i?

17     A.  I think you already asked me that.  Didn't we

18 go through Papa John's?

19     Q.  We went through some documents that referenced

20 Papa John's, and I apologize if I already asked you, but

21 I don't think I did.

22     A.  Okay.  Well, if you did -- I thought I said

23 that no, I do not remember the specific account.

24     Q.  How about New Zealand Dairy Group?

25     A.  No.

```
 1              CERTIFICATE OF DEPOSITION OFFICER
 2              I, DIANA NOBRIGA, hereby certify that the
 3   witness in the foregoing deposition was by me duly sworn
 4   to testify to the truth, the whole truth, and nothing
 5   but the truth in the within-entitled cause; that said
 6   deposition was taken at the time and place therein
 7   stated; that the testimony of said witness was reported
 8   by me, a Certified Shorthand Reporter and disinterested
 9   person, and was thereafter transcribed into typewriting,
10   and that the pertinent provisions of the applicable code
11   or rules of civil procedure relating to the notification
12   of the witness and counsel for the parties hereto of the
13   availability of the original transcript of the
14   deposition for reading, correcting and signing have been
15   met.
16              I further certify that I am not of counsel or
17   attorney for either or any of the parties to said
18   deposition, nor in any way interested in the outcome of
19   the cause named in said action.
20              In WITNESS WHEREOF, I have hereunto
21   subscribed by my hand this 14th day of April 2006.
22
23
24                              _____
25                              DIANA NOBRIGA, CSR NO. 7071
```