# EXHIBIT 425

1     UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA

3     -oOo-

**Certified Copy**

4   IN RE

ORACLE CORPORATION

5   SECURITIES LITIGATION

MASTER FILE NO.

6   C-01-0988-MJJ

7   This Document Relates To:

8       ALL ACTIONS

9   _____/

10

11

12     -oOo-

CONFIDENTIAL

13

VIDEOTAPED DEPOSITION OF SAFRA CATZ

14

July 20, 2006

15

-oOo-

16

17     SHEILA CHASE & ASSOCIATES

REPORTING FOR:

18     LiveNote World Service

221 Main Street, Suite 1259

19     San Francisco, CA 94105

Telephone: (415) 321-2300

20     Fax: (415) 321-2301

21     -oOo-

22

23   Reported by:

KELLIE A. ZOLLARS, CSR, RPR, CRR

24   CSR License No. 5735

25

1    different terms and the discounts and things like that

2    for the HP deal to some extent.

3        Q.  Did you negotiate directly with HP?

4        A.  I didn't, no.

5        Q.  Who was doing the negotiations?

6        A.  I think it's one of our sales guys.  He

7    doesn't work at Oracle anymore, I think.

8        Q.  Do you remember his name?

9        A.  Mike.

10       Q.  Cochran?

11       A.  I don't think so.  Like "dis" something.

12   Cesare.

13       Q.  DeCesare.

14       So you were working with Mike on the terms and

15   discounts, and he was interfacing with HP; is that

16   fair?

17       A.  That's -- I don't know who he was inter- -- I

18   assume so.  He could have been dealing with another

19   Oracle guy and then HP; but he was the account rep, I

20   think, at the time.

21       Q.  Now, that was a barter transaction, wasn't it?

22       MR. LINDSTROM:  Objection.  Calls for a legal

23   conclusion.

24       THE WITNESS:  Yeah.  It depends what you mean by

25   barter so...

1      BY MR. BRITTON:

2         Q.  Do you have an understanding what a barter

3      transaction is?

4         A.  Not entirely.

5         Q.  Oracle agreed to purchase products from HP in

6      exchange for HP agreeing to purchase products from

7      Oracle.

8         MR. LINDSTROM:  Is that a representation from you

9      of what a barter transaction is?  In other words, do

10     you want her to assume that in responding --

11        MR. BRITTON:  No.

12        Q.  I'm asking you did Oracle agree to purchase

13     products from HP in exchange for HP agreeing to

14     purchase products from Oracle?

15        A.  I don't know if that's exactly what happened.

16     But Oracle bought products -- anyway Oracle was

17     already buying a lot of products, and Oracle wanted HP

18     to be the big CRM reference.  I know that.  And Oracle

19     was already very much trying to have an alternative to

20     Sun, which was our entire platform.  So we were

21     already in the process of moving some of our

22     purchasing to HP, and had already done quite a bit.

23     And had planned to.  At the same time HP had already

24     bought and was implementing Oracle CRM, but hadn't

25     done their global rollout; and to do it they would

1    have had to buy more software.  So I think both of us

2    did the deals we were doing around the same time.  Or

3    close to the same time.

4        Q.  Okay.

5        A.  I don't know, give or take a quarter or two.

6        Q.  Were they contingent upon one another?

7        A.  I don't think they were exactly contingent,

8    but I think people wanted to -- you know, I don't

9    really remember.

10       Q.  Okay.  Let me show you a document.

11       THE WITNESS:  Is this yours?

12       THE REPORTER:  No, that's yours.

13       MR. LINDSTROM:  That's yours.

14       THE WITNESS:  It has a "1" on it.

15       THE REPORTER:  Yeah.

16       BY MR. BRITTON:

17       Q.  Okay.  I've placed in front of you what has

18   been marked as Catz Exhibit 1.  Will you take a moment

19   to look at this exhibit.

20           And for the record, Catz Exhibit 1 starts at

21   Bates NDCA-ORCL 025018 and ends at 019.

22       A.  Okay.

23       Q.  Have you seen -- do you recognize Exhibit 1?

24       A.  Yeah.  I do.

25           It's me sending an e-mail to our accounting

```
 1 | STATE OF CALIFORNIA     )
 2 | COUNTY OF SAN MATEO     )
 3 |         I hereby certify that the witness in the
 4 | foregoing deposition,
 5 | was by me duly sworn to testify to the truth, the
 6 | whole truth, and nothing but the truth in the
 7 | within-entitled cause; that said deposition was taken
 8 | at the time and place herein named; that the
 9 | deposition is a true record of the witness's testimony
10 | as reported by me, a duly certified shorthand reporter
11 | and a disinterested person, and was thereafter
12 | transcribed into typewriting by computer.
13 |         I further certify that I am not interested in
14 | the outcome of the said action, nor connected with,
15 | nor related to any of the parties in said action, nor
16 | to their respective counsel.
17 |         IN WITNESS WHEREOF, I have hereunto set my
18 | hand this _____ of _____, _____.
19 |
20 |
21 | _____
22 |            KELLIE A. ZOLLARS, CSR
23 |            STATE OF CALIFORNIA
24 |
25 |
```