1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  MARK SOLOMON (151949)
   DOUGLAS R. BRITTON (188769)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone:  619/231-1058
   619/231-7423 (fax)
5  marks@csgrr.com
   dougb@csgrr.com
6        – and –
   SHAWN A. WILLIAMS (213113)
7  WILLOW E. RADCLIFFE (200087)
   ELI R. GREENSTEIN (217945)
8  DANIEL J. PFEFFERBAUM (248631)
   100 Pine Street, Suite 2600
9  San Francisco, CA  94111
   Telephone:  415/288-4545
10 415/288-4534 (fax)
   shawnw@csgrr.com
11 willowr@csgrr.com
   elig@csgrr.com
12 dpfefferbaum@csgrr.com

13 Lead Counsel for Plaintiffs

14 [Additional counsel appear on signature page.]

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17 In re ORACLE CORPORATION        )   Master File No. C-01-0988-SI
   SECURITIES LITIGATION           )
18 _____ )   CLASS ACTION
                                   )
19 This Document Relates To:       )   PLAINTIFFS' OPPOSITION TO
                                   )   DEFENDANTS' *DAUBERT* MOTION TO
20      ALL ACTIONS.               )   EXCLUDE EXPERT REPORTS AND
                                   )   TESTIMONY OF ALAN G. GOEDDE
21 _____ )
                                       DATE:    January 9, 2009
22                                     TIME:    9:00 a.m.
                                       CTRM:    The Honorable Susan Illston
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................1

II.     BACKGROUND .............................................................................................................3

III.    ARGUMENT ...................................................................................................................3

        A.      Legal Standard ....................................................................................................3

        B.      Dr. Goedde Is Qualified to Testify Concerning Macroeconomic
                Conditions Facing Oracle in 3QFY01 ...............................................................4

        C.      Dr. Goedde's Opinions Concerning the Macroeconomic Change Facing
                Oracle in 3QFY01 Are Reliable and Will Assist the Trier of Fact.....................8

                1.      Dr. Goedde Repeatedly, and Reliably, Defines "Major
                        Macroeconomic Change".........................................................................8

                2.      The Factors Considered by Dr. Goedde Are Reliable Indicators of
                        the Economic Climate Facing Oracle Leading Up to and
                        Throughout 3QFY01.............................................................................12

                3.      Defendants Cannot Credibly Deny a Link Between the Major
                        Macroeconomic Change Facing Oracle in 3QFY01 and Oracle's
                        Business .................................................................................................15

        D.      Dr. Goedde's Opinions Concerning Oracle's Forecasting Process Are
                Reliable and Will Assist the Trier of Fact ........................................................17

        E.      Dr. Goedde's Declaration and Rebuttal Declaration Are Required
                Supplemental Disclosures Under Rule 26 and Do Not Concede that
                Dr. Goedde's Prior Work Is Unreliable and Inaccurate.....................................23

IV.     CONCLUSION...............................................................................................................25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-SI

- i -

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Alexander v. Smith & Nephew, P.L.C.*,
   98 F. Supp. 2d 1310 (N.D. Okla. 2000)...................................................................5

5

6

*Amorgianos v. AMTRAK*,
   303 F.3d 256 (2d Cir. 2002)..............................................................................17

7

*Avila v. Willits Environmental Remediation Trust*,
   No. C 99-3941 SI, 2008 U.S. Dist. LEXIS 19742
   (N.D. Cal. Feb. 6, 2008)...................................................................................25

8

9

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993)..........................................................................................21

10

11

*Cavallo v. Star Enter.*,
   892 F. Supp. 756 (E.D. Va. 1995) ..............................................................19, 20

12

13

*Daubert v. Merrell Dow Pharms.*,
   43 F.3d 1311 (9th Cir. 1995) .....................................................................11, 14

14

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)....................................................................................*passim*

15

16

*DSU Med. Corp. v. JMS Co., Ltd.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ..........................................4, 18, 21, 22

17

18

*Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A.*,
   785 F.2d 1154 (4th Cir. 1986) ...........................................................................8

19

*Galentine v. Holland Am. Line-Westours, Inc.*,
   333 F. Supp. 2d 991 (W.D. Wash. 2004).........................................................25

20

21

*Gardner v. Gen. Motors Corp.*,
   507 F.2d 525 (10th Cir. 1974) ...........................................................................8

22

23

*Guillory v. Domtar Industries*,
   95 F.3d 1320 (5th Cir. 1996) ...........................................................................18

24

*In re Paoli R.R. Yard PCB Litig.*,
   916 F.2d 829 (3d Cir. 1990)................................................................................4

25

26

*In re Welding Fume Prods. Liab. Litig.*,
   No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164
   (N.D. Ohio Aug. 8, 2005) .................................................................................20

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-SI

- ii -

1

2                                                                                    **Page**

3   *Keener v. United States,*
        181 F.R.D. 639 (D. Mont. 1998)...........................................................................24
4

5   *Kumho Tire Co. v. Carmichael,*
        526 U.S. 137 (1999)..............................................................................3, 4, 10
6

    *Lavespere v. Niagra Mach. & Tool Works,*
7       910 F.2d 167 (5th Cir. 1990) ................................................................................8

8   *Lust by & Through Lust v. Merrell Dow Pharmaceuticals,*
        89 F.3d 594 (9th Cir. 1996) ................................................................................14
9

10  *Maiz v. Virani,*
        253 F.3d 641 (11th Cir. 2001) .........................................................................4, 7

11  *Major v. Treen,*
        574 F. Supp. 325 (E.D. La. 1983).......................................................................20
12

13  *McCleskey v. Zant,*
        580 F. Supp. 338 (N.D. Ga. 1984)......................................................................20
14

15  *Micro Chem., Inc. v. Lextron, Inc.,*
        317 F.3d 1387 (Fed. Cir. 2003)................................................................18, 21, 23
16

17  *Miller v. Pfizer, Inc.,*
        356 F.3d 1326 (10th Cir. 2004) .........................................................................23

18  *Mukhtar v. Cal. State Univ.,*
        299 F.3d 1053 (9th Cir. 2002) ..............................................................................4
19

20  *Supply & Building Co. v. Estee Lauder International, Inc.,*
        No. 95 Civ. 8136 (RCC), 2001 U.S. Dist. LEXIS 20737
21      (S.D.N.Y. Dec. 14, 2001).....................................................................................21

22  *Talbert v. City of Chicago,*
        236 F.R.D. 415 (N.D. Ill. 2006)..........................................................................23
23

24  *Tenbarge v. Ames Taping Tool Sys.,*
        190 F.3d 862 (8th Cir. 1999) .............................................................................23

25  *Thomas J. Kline, Inc. v. Lorillard, Inc.,*
        878 F.2d 791 (4th Cir. 1989) ................................................................................7
26

27  *Thomas v. Newton Int'l Enters.,*
        42 F.3d 1266 (9th Cir. 1994) ............................................................................4, 7

28

1

2                                                                                                      **Page**

3  *United States v. Sandoval-Mendoza*,
          472 F.3d 645 (9th Cir. 2006) ............................................................................3
4

5  *Vienne v. Am. Honda Motor Co.*,
          No. 99-3716, 2001 U.S. Dist. LEXIS 606
6          (E.D. La. Jan. 16, 2001) ...................................................................................8

7  *Whatley v. Merit Distribution Servs.*,
          166 F. Supp. 2d 1350 (S.D. Ala. 2001)..........................................................24
8

9  *Whiting v. Boston Edison Co.*,
          891 F. Supp. 12 (D. Mass. 1995) .....................................................................5
10

11 *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
          259 F.3d 1101 (9th Cir. 2001) .......................................................................24

12

13 **STATUTES, RULES AND REGULATIONS**

14 Federal Rules of Civil Procedure
          Rule 26..........................................................................................................23, 24
15        Rule 26(a)...........................................................................................................24
          Rule 26(a)(2)(D) .................................................................................................23
16        Rule 26(e)(1).......................................................................................................24
          Rule 26(e)(2).......................................................................................................23
17        Rule 37................................................................................................................24
          Rule 37(c)(1).......................................................................................................24
18

19 Federal Rules of Evidence
          Rule 702.......................................................................................... *passim*

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Defendants' *Daubert* Motion to Exclude Expert Reports and Testimony of Alan G. Goedde ("Motion" or "Mot.") seeks to exclude plaintiffs' expert Dr. Goedde by attacking his economic qualifications and by mischaracterizing the nature of his opinions and methodology.  Defendants' arguments are misguided.  Dr. Goedde is eminently qualified to opine about the economy facing Oracle in 3QFY01 and how that economy impacted Oracle's forecast process.  He has a Ph.D. and Masters Degree in Economics from Duke University and years of experience with business forecasting and analyzing macroeconomic data in connection with that forecasting.  In this case, Dr. Goedde uses that experience to opine that Oracle Corporation ("Oracle" or the "Company") was facing a major macroeconomic change leading up to and during Oracle's 3QFY01, and that Oracle's forecasting process was unreliable as a result of that change and many others within Oracle.  In doing so, he utilized reliable methodologies and considered the very economic indicators that a business forecaster would consider when creating and evaluating a forecast – the indicators reflecting on the economic environment directly facing the company doing the forecast.  His opinion and testimony are relevant to defendants' knowledge that Oracle's December 14, 2000 earnings guidance, and numerous statements made by defendants during Oracle's 3QFY01 concerning the Company's business and operations, were knowingly false when made.  Dr. Goedde's opinions are reliable under the *Daubert* framework and will assist the trier of fact to understand and determine facts at issue.[1]

Defendants' challenges to Dr. Goedde's methodologies are baseless.  They devote a significant portion of their brief to the argument that Dr. Goedde's opinions should be excluded

---

[1] Defendants' Motion is notable not for the objections that it raises, but for the objections that it fails to raise.  Defendants' Motion says nothing about the extensive forecasting experience that Dr. Goedde possesses.  Its silence is a concession that Dr. Goedde is qualified to give opinions about Oracle's forecasting process.  Defendants also fail to challenge any of the opinions that Dr. Goedde gives about the broad economic indicators that he analyzed in rebuttal to R. Glenn Hubbard's opinions.  Ex. 1 at 2-45.  (All exhibits ("Ex.") are attached to the Declaration of Douglas R. Britton in Support of Plaintiffs' Opposition to Defendants' *Daubert* Motion to Exclude Expert Reports and Testimony of Alan G. Goedde.)  They therefore concede that Dr. Goedde's opinions and the methodologies on which those opinions are based are reliable.

1   because he supposedly could not define "major macroeconomic change" at his deposition.  Mot. at

2   1-5, 10-11.  But Dr. Goedde repeatedly and uniformly defined that phrase in his deposition and his

3   reports identify the very conditions that support his definition.  Those conditions include the collapse

4   of the NASDAQ, the bursting of the dot.com bubble (which defendant Sanderson referred to itself as

5   a "major macroeconomic event"), the reduction of the Federal Funds rate twice in one month by the

6   Federal  Open  Market  Committee  ("FOMC"),  the  contemporaneous  comments  by  market

7   participants, and the earnings shortfalls of Oracle's competitors.  Defendants' refusal to accept

8   Dr. Goedde's definition of the very macroeconomic change that they themselves blamed for Oracle's

9   3QFY01 earnings miss does not serve as a legitimate basis to exclude Dr. Goedde's testimony.

10   Ex. 2 at NDCA-ORCL 050662; Ex. 3 at NDCA-ORCL 050621-22.

11        Defendants also rely heavily on the baseless argument that Dr. Goedde's opinions should be

12   excluded because his interpretation of the evidence is different from theirs.  But it is well settled that

13   a difference of opinion is not a proper basis for exclusion, as such judgments are reserved for the

14   trier of fact.  Dr. Goedde used his expertise to analyze the sector of the economy in which Oracle

15   operated and every relevant forecasting measure utilized by Oracle.  In doing so, he reliably

16   deconstructed  Oracle's  forecasting  process  to  reveal  to  the  trier  of  fact  that  the  process  was

17   unreliable and inaccurate, and produced inaccurate and baseless guidance.  Dr. Goedde's detailed

18   analysis of the very metrics that defendants testified that they used in the process satisfies even the

19   most exacting standards of reliability.  In fact, defendants' argument that Dr. Goedde's analysis is

20   purely subjective is odd (and meritless) given that his analysis focused on the defendants' own

21   metrics.  These arguments cannot serve as a basis to exclude Dr. Goedde's opinions.

22        Defendants' revised Motion does no more than expand on their factual disagreements with

23   Dr. Goedde, attack his conclusions, and complain that a supplemental analysis that they have had for

24   over a year somehow serves as a basis to exclude Dr. Goedde's opinions.  If anything, defendants'

25   objections are a basis for cross-examination – not exclusion.  And since defendants have suffered

26   absolutely no prejudice (much less demonstrated any) from Dr. Goedde's supplemental analysis,

27   which he undertook to address issues raised for the first time in defendants' rebuttal expert reports, it

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-SI                                            - 2 -

1   is permissible under the Federal Rules.   Plaintiffs respectfully request that the Court deny

2   defendants' Motion.

3   **II.   BACKGROUND**

4       Dr. Goedde offers the following opinions to assist the trier of fact:

5       &bull;    Oracle was facing a major macroeconomic change heading into 3QFY01
        resulting in a decline in the market for its products;

6

7       &bull;    Accepted forecast principles require a forecaster to consider all relevant and
        material events impacting a company's business;

8       &bull;    Oracle failed to make adjustments to its forecast process to account for the
        negative impact of the changes in the economy and the market for Oracle's
9           products in violation of accepted forecast principles;

10       &bull;    Defendants knew that failing to adjust for the negative impact of the changes
        in the economy made its Public Guidance unreliable;

11

12       &bull;    In 2Q FY01, Larry Ellison directed significant changes to Oracle's forecast
        process that resulted in more "risk" being included in future Field Forecasts
        and rendered Jennifer Minton's upside adjustments unreliable;

13

14       &bull;    The numerous internal measures available to defendants throughout
        3Q FY01, including Field Forecasts, disclosed that Oracle was being
        impacted adversely by the declining economy and that Oracle would not
15           achieve its Public Guidance;

16       &bull;    The "Hockey-Stick" phenomenon did not prevent Oracle from knowing that
        it would miss Public Guidance until the last few days of the quarter.

17

18   Ex. 4 at 4.  In forming his opinions, Dr. Goedde considered numerous relevant documents and

19   testimony.  His reports contain 140 pages of detailed analysis, including numerous charts and figures

20   scrutinizing Oracle's economic and forecasting realities during the relevant time.  Dr. Goedde's

21   opinions are reliable for the reasons set forth below and would readily assist the trier of fact to

22   understand or determine facts at issue.

23   **III.   ARGUMENT**

24       **A.   Legal Standard**

25       The trial courts act as gatekeepers in determining whether to admit expert testimony.  *Kumho*

26   *Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579,

27   589 (1993).  However, "*Daubert* makes the district court a gatekeeper, not a fact finder." *United*

28   *States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006).  "'[A] district court's gatekeeper

role under Daubert is not intended to supplant the adversary system or the role of the jury.'" *DSU Med. Corp. v. JMS Co., Ltd*., 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). The court's sole gatekeeping responsibility is to determine the reliability of expert opinions through a preliminary assessment of the methodologies underlying the opinion. *Daubert*, 509 U.S. at 592-93. In performing its gatekeeping role, the court does not focus on the correctness of the conclusions of the expert's testimony. *See, e.g.*, *DSU*, 296 F. Supp. 2d at 1146-47. Rather, the court focuses on whether the methodology used by the expert to reach his conclusions is sufficiently reliable for submission of that testimony into evidence. *Id.*

Federal Rule of Evidence 702 governs the admission of expert opinion testimony. Under *Daubert* and *Kumho Tire*, only relevant and reliable expert opinion testimony is admissible. Expert opinion testimony is relevant if the knowledge underlying it has a "'valid . . . connection to the pertinent inquiry.'" *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). Relevance, in this context, requires that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 591 (holding that the requirement that the expert testimony "'assist the trier of fact' . . . goes primarily to relevance") (citation omitted). Expert opinion testimony is reliable if the knowledge underlying it "has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592); *see also Mukhtar v. Cal. State Univ*., 299 F.3d 1053, 1064 (9th Cir. 2002) ("A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding ***how*** to determine the testimony's reliability."). As the Supreme Court emphasized, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one" (*Daubert*, 509 U.S. at 594), and must be "'tied to the facts' of a particular 'case.'" *Kumho Tire*, 526 U.S. at 150 (citations omitted).

**B.     Dr. Goedde Is Qualified to Testify Concerning Macroeconomic Conditions Facing Oracle in 3QFY01**

A witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The qualification standard under Rule 702 is to be applied liberally. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) ("Federal Rule of Evidence 702 . . . contemplates a broad conception of expert qualifications."); *In re Paoli R.R. Yard PCB*

*Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) (holding it appropriate to interpret Rule 702 liberally and that an expert witness should not have to satisfy an overly narrow qualification test).   Here, Dr. Goedde is qualified through his education, knowledge, experience and training to opine on the macroeconomic environment facing Oracle in 3QFY01 and how that environment impacted Oracle's forecasting process.

Dr. Goedde's economic education is extensive.   He holds a Ph.D. and a Masters Degree in Economics from Duke University and has taught a course in international economics at American University in Washington, D.C.  Ex. 4 at 2 & Ex. 1; Ex. 5 at 46:21-25, 71:25-72:4.  His graduate studies focused on international trade and statistics and industrial organization, which is the study of how companies make decisions to allocate resources in markets where their goods and services are sold.  Ex. 5 at 47:1-23; Ex. 6 at 298.  In fact, Dr. Goedde's dissertation studied how companies grow given the competitive environment in the industries in which they were engaged – a study that necessarily involved an economic analysis of the markets under evaluation.  Ex. 5 at 47:13-23.  He is qualified to opine on the economic environment facing Oracle by virtue of his education.[2]

Dr. Goedde is also qualified through significant experience working with both forecasting and macroeconomic data – facts that defendants conveniently ignore.  Dr. Goedde testified that he

---

[2]      Defendants argue that Dr. Goedde's opinions should be excluded because his education did "not involve the kind of macroeconomic analysis [he] purports to offer in his opinion."  Mot. at 9. But they then cite language from a textbook that shows the precise opposite – "industrial organization is the 'study of the structure of firms ***and markets and of their interactions***.'"  *Id*. at 9 n.3 (emphasis added).  Defendants also ignore the extensive economic education that graduate programs provide, which include extensive study of macroeconomic issues and data.  Since Dr. Goedde's opinions focused on the market that affected Oracle, his graduate studies support his qualification in this case.  For these reasons, neither *Whiting v. Boston Edison Co.*, 891 F. Supp. 12 (D. Mass. 1995), nor *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310 (N.D. Okla. 2000), support defendants' arguments.  Mot. at 9-10.  Both cases stand for nothing more than the proposition that courts cannot establish "[a] blanket qualification for all physicians to testify as to anything medically-related."  *Alexander*, 98 F. Supp. 2d at 1315.  In fact, the expert opinions in both *Whiting* and *Alexander* were excluded because they were being offered for specialized opinions on causation outside their field of specialty.  *Whiting*, 891 F. Supp. at 19-20, 25 (practitioner excluded from offering opinion on cause of leukemia where he was "not trained in hematology or oncology, the medical disciplines involved in the treatment of leukemias"); *Alexander*, 98 F. Supp. 2d at 1315 (practitioner not qualified to give opinion on cause of spinal condition where he "lacks experience or training in orthopedics, spinal surgery, spinal fusion with instrumentation, neurology, or other areas related to . . . specialized opinions").  The same is not true here for Dr. Goedde.

1    studied business forecasting as part of his graduate work and extensively engaged in business

2    forecasting throughout his professional career, including as a financial economist at the U.S. Export-

3    Import Bank, as a manager at Arthur Andersen, as director of strategic planning at NutraSweet, as a

4    Vice President at the First National Bank of Chicago, as a graduate school teacher, and on several

5    prior occasions as an expert witness. Ex. 5 at 13:7-20, 16:21-24, 48:14-21, 49:12-23, 51:16-20,

6    58:3-22, 72:10-13. And he explained that this forecasting experience necessarily encompassed

7    macroeconomic data analysis:

8          I mean, we've always looked at the economy in each of my jobs in strategic
           planning, whether it was for Andersen or . . . National Bank of Chicago or

9          NutraSweet. Those broad factors are certainly part of what would go into our
           forecast and we need to be, you know, mindful of them in determining what –

10         whether there should be changes to the forecast.

11   *Id.* at 77:15-22. This is the precise type of experience that will be helpful to a jury in understanding

12   how the economic environment facing Oracle in 3QFY01 affected Oracle's forecasting process.

13         Dr. Goedde also has extensive practical experience assessing macroeconomic conditions. He

14   did so through his former role as a financial economist at the U.S. Export-Import Bank and currently

15   does so as a member of the Board of Directors of Associated Foundations, a charitable organization

16   that makes grants to universities and community organizations. *Id.* at 73:19-74:4, 77:5-12. In fact,

17   Dr. Goedde testified that he prepared a forecast of economic conditions while at the U.S. Export-

18   Import Bank of the type that defendants argue he is not qualified to give in this case:

19         I did a forecast for the Export-Import Bank. When I was there they were looking at
           specifically developing some economic expertise about the future economic growth

20         areas.

21               *    *    *

22         We would use macroeconomic forecasts that were prepared by others and had our
           own assessment of them and analyze them from that perspective.

23

24   *Id.* at 77:5-12, 78:5-7. And as a member of Associated Foundations, Dr. Goedde testified that he

25   currently works considerably with macroeconomic data to choose how to invest and distribute funds:

26         My role is helpful in choosing the investments. I focus on economic issues that are –
           we expect in the future or we figure out what sectors of the economy we should be
           investing in in the future.

27               *    *    *

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-SI       - 6 -

> We look at, you know, recent pronouncements by the Federal Reserve Board.  We look at what other macroeconomic – economists are saying about the forecasts for the economy, government initiatives in the economy.  It's in broad-based economic factors.

*Id.* at 75:16-20, 76:22-77:1.  Given this experience, Dr. Goedde has, on multiple prior occasions, served as an expert witness concerning macroeconomic data and specifically how that data should influence forecasting decisions.  *Id.* at 13:7-20, 15:6-13, 20:8-21:14, 22:3-24:7.  It is abundantly clear that Dr. Goedde is qualified to serve as an expert here through his "knowledge, skill, experience, training [and] education."  Fed. R. Evid. 702.[3]

Defendants also argue that Dr. Goedde is not qualified because he has not "prepared a macroeconomic forecast" or published research concerning macroeconomic data, "nor has he previously analyzed macroeconomic conditions in the years 2000 and 2001."  Mot. at 10.  But defendants cite to no authority suggesting that this is the type of experience required for an expert to give opinions on the economy – especially where, as here, the economy is significant for how it impacts a forecasting process.  Indeed, the liberal approach of Rule 702 envisions numerous avenues by which to establish the qualifications of an expert witness – all of which are satisfied here.[4]  Fed. R. Evid. 702; *Thomas*, 42 F.3d at 1269; *see also Maiz*, 253 F.3d at 665 (finding an argument to

---

[3]    Despite his testimony, defendants insist that Dr. Goedde's "only prior experience opinion [sic] on macroeconomic conditions involved alleged expert testimony on economic conditions facing the semiconductor industry in the late 1990's."  Mot. at 10.  It is evident from the foregoing discussion that defendants have selectively read Dr. Goedde's deposition transcript.  He has evaluated macroeconomic conditions in many contexts.  For this reason alone, *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989), does not help defendants.  But *Kline* is distinguishable in other respects.  In *Kline*, the court considered an expert's admission that she lacked any training or experience in the relevant field, other than previously serving as an expert, in evaluating her reliability.  *Id.*  Here, Dr. Goedde has extensive educational and professional credentials in addition to previously serving as an expert on a number of occasions.

[4]    Defendants attempt to bolster their argument by contrasting Dr. Goedde's experience with Hubbard's, who has extremely limited experience, if any, with forecasting in a business environment.  Hubbard's qualifications (or lack thereof) certainly do not undermine Dr. Goedde's.  And while Hubbard's experience includes serving as an advisor to President-Elect Bush and as the Chairman of President Bush's Council on Economic Advisors, the opinions that he gives in this case about the economic environment are directly at odds with the advice that he was apparently giving to President-Elect Bush during Oracle's 3QFY01.  *See* Plaintiffs' Motion to Exclude the Expert Testimony of R. Glenn Hubbard (Docket #1491) at 16-17.  Tellingly, defendants challenge very few, if any, of the economic opinions in Dr. Goedde's rebuttal report, which showed that virtually all of the macroeconomic indicators cited by Hubbard support Dr. Goedde's opinion.  *See* Ex. 1 at 2-45.

1  exclude expert on the basis of qualifications "not convincing" where the expert had a Ph.D. in

2  economics from Yale and extensive experience as a professional economist).[5]

3  **C.    Dr. Goedde's Opinions Concerning the Macroeconomic Change**
   **Facing Oracle in 3QFY01 Are Reliable and Will Assist the Trier of**

4  **Fact**

5  Defendants attempt to refute Dr. Goedde's opinion that Oracle was facing a major

6  macroeconomic change entering 3QFY01 on the basis of three ill-conceived arguments: (1)

7  Dr. Goedde does not adequately define "major macroeconomic change"; (2) the factors considered

8  by Dr. Goedde in reaching his opinion were not scientifically selected; and (3) there is no scientific

9  connection between Oracle's business and the major macroeconomic change that it faced in

10  3QFY01. Mot. at 10-15. Defendants' arguments are the result of improperly applying the *Daubert*

11  factors and, in any event, are belied by the record and Dr. Goedde's analysis.

12  **1.    Dr. Goedde Repeatedly, and Reliably, Defines "Major**
    **Macroeconomic Change"**

13  Defendants argue that Dr. Goedde's opinions should be excluded because he did not "define"

14  major macroeconomic change to their satisfaction. Mot. at 3-5, 10-12. Any reasonable review of

15  the record, however, reveals that Dr. Goedde repeatedly and uniformly defined that phrase in

16  response to defendants' repetitive questions. Dr. Goedde's answer was clear:

17  [Q:]    What is your definition of a major macroeconomic change?

18  A:    A change that affects their business.

19

20

21  [5]    Even if the Court finds that Dr. Goedde's education and experience do not perfectly conform
   to the issues, numerous courts have found experts qualified where an expert's background closely

22  parallels the issues. *See, e.g.*, *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 176 (5th Cir.
   1990) (allowing an expert with a doctorate in mechanical engineering to testify about the defective

23  design of a press brake even though he had never designed one); *Friendship Heights Assocs. v.*
   *Vlastimil Koubek, A.I.A.*, 785 F.2d 1154, 1159-60 (4th Cir. 1986) (concluding that an architect who

24  lacked practical experience concerning the coatings on concrete was qualified and noting that
   experience is not necessary if other proof is offered on qualifications); *Gardner v. Gen. Motors*

25  *Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (finding a mechanical engineering professor qualified to
   opine on the design of a truck's exhaust system despite a lack of experience in design or manufacture

26  of the particular system); *Vienne v. Am. Honda Motor Co.*, No. 99-3716, 2001 U.S. Dist. LEXIS
   606, at *7-*8 (E.D. La. Jan. 16, 2001) (finding an expert qualified to testify on a three-wheeler's

27  design defects despite the fact that he was not an engineer and had never designed a three-wheeler,
   because of his experience and academic background).

28

1                              *         *         *

2        [A:]     Macroeconomics would be outside the operation of Oracle.  There
         were several changes.  The . . . overall economy was experiencing a period of lower
3        growth, and the more sector-specific economy was experiencing a change in growth
         as well.
4
                              *         *         *
5
6        A:        I would look to see if there was a change from a period of high growth
         to a period of much lower growth.  That would be one way of looking at a
7        macroeconomic change.  Say a turning point.  If the company had undergone a
         number of periods of high growth and now the conditions were shifting so that they
8        were in low growth, that would be a major change.

9   Ex. 5 at 79:6-8, 81:9-13, 82:12-18.  Dr. Goedde's reports also thoroughly outline the conditions that

10  are consistent with his definition and that support his opinion.  Ex. 4 at 4-8, 10-17; Ex. 1 at 2-45.

11  Defendants' refusal to accept Dr. Goedde's definition, even though supported by extensive analysis,

12  cannot serve as a basis to exclude his relevant and reliable opinions about the economic environment

13  in Oracle's 3QFY01.

14          As explained in detail in Dr. Goedde's reports, the conditions that Oracle faced in 3QFY01

15  support his opinion that Oracle was facing a major economic change that was the polar opposite of

16  the conditions in Oracle's 3QFY00.  Tech spending was on the decline, the FOMC reduced the

17  Federal Funds rate twice in one month, and the NASDAQ, which had fueled Oracle's extraordinary

18  results in 3QFY00, had collapsed.  Ex. 4 at 4-8; Ex. 1 at 9-20.[6]  Indeed, the FOMC's Federal Funds

19  rate reduction twice in one month – which it had not done for ten years – was a major change under

20  any definition, especially since the FOMC actually raised the Federal Funds rate in Oracle's

21

22

23  ────────────────

24  [6]        In their previous Reply, defendants made the peculiar argument that the "'NASDAQ' did not
    fuel Oracle's results because 'NASDAQ' does not buy Oracle software."  Defs' 9/10/07 Reply
25  (Docket #1124) at 6 n.6.  The argument is absurd.  It was the success of the companies traded on the
    NASDAQ and the dramatic influx of capital to those companies that fueled Oracle's results.  The
26  index itself reflected the success and ultimate collapse of those companies.  Tellingly, defendants'
    own expert recognized that "[y]et another way of measuring the health of the software sector would
27  be to consider stock prices via various indices that are designed to measure changes in the sector."
    Ex. 9 at 45.

28

3QFY00 to offset an overheated economy.[7]  Ex. 1 at 15-19.  Dr. Goedde's opinions parallel the contemporaneous opinions of economists about the overall economy in general – and the software sector in particular – and are therefore objectively reliable.  Defendants' complaints about Dr. Goedde's definition are nothing but a red herring to deny reality – that the macroeconomic environment facing Oracle in 3QFY01 was radically different than the quarter that Oracle used for comparison.[8]

Defendants also argue that the phrase "major macroeconomic change" is not a term of art, but cite to nothing suggesting that experts are limited to testifying about terms of art.[9]  Mot. at 11.  Further, defendants claim that Dr. Goedde created the phrase "major macroeconomic change" "solely for purposes of this litigation," and therefore his opinions must be excluded under *Daubert*.  *Id*. at 12.  Defendants ignore the Supreme Court's finding that the application of *Daubert* factors must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150.  Nothing about a

---

[7]  The FOMC characterized its second January 2001 reduction as a "'relatively aggressive policy adjustment in a short period of time.'"  Ex. 1 at 16 (citation omitted).  And, some very prominent economists held the view that the economy was in a recession in Oracle's 3QFY01:

> *The Boston Globe* – 2/1/01 – "'What we're seeing here, in the numbers so far, is that one sector of the economy is in a bona fide recession; that's manufacturing,' said Wayne Ayers, chief economist at FleetBoston Financial."

> *Chicago Tribune* – 2/1/01 – "'The economy's in a recession and the Fed is responding accordingly,' said Steve Roach, chief economist at Morgan Stanley Dean Witter."

*Id*. at 65 (citations omitted).

[8]  Defendants argue that Dr. Goedde's opinions are unreliable because he could not quantify the degree of change necessary to qualify as "major" or define the period of time over which the change would occur. Mot. at 12. Defendants are again mistaken. Dr. Goedde quantified the relevant time period, which was the year-over-year time period that defendants used for purposes of extrapolating and he quantified the dramatic slowing growth that supports his opinion as reflected in the collapse of the NASDAQ and the significant slowdown in the software sector in which Oracle operated. *See* Ex. 4 at 4-8,12-15; Ex. 1 at 41.  By any reasonable definition, Oracle was experiencing a major economic change between 3QFY00 and 3QFY01.  Defendants' arguments are a transparent attempt to avoid this reality.

[9]  Defendants' claim that the lack of peer-review for the phrase "major macroeconomic change" is fatal to Dr. Goedde's opinions is misguided. Mot. at 11. The Supreme Court held in *Daubert* that some propositions may be "too particular" to be published. *Daubert*, 509 U.S. at 593. Whether Oracle was facing a "major macroeconomic change" falls within this category. *Id*.

descriptive phrase invokes the concerns of *Daubert's* "solely for purposes of litigation" factor.  As the Ninth Circuit explained in *Daubert*, "[o]ne very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."  *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*").  Thus, the "solely for purposes of litigation" factor concerns itself here only with whether Dr. Goedde is testifying about matters growing naturally out of his education and professional experience, not whether he has ever before used the descriptive phrase "major macroeconomic change."  For all the reasons set forth in §III.B., Dr. Goedde is clearly testifying about matters "growing naturally out of his education and professional experience."  *Id.*  In short, there is absolutely no basis, in law or reason, to exclude Dr. Goedde's testimony because of his use of the descriptive phrase "major macroeconomic change."[10]

Defendants also repeatedly (and improperly) argue that Dr. Goedde should be excluded because he does not accept their interpretation (often distorted) of the evidence.  Mot. at 11 n.5.  *See also* §III.D., *infra*.  With respect to the phrase "major macroeconomic change," they argue that he should be excluded because he "rejected Mr. Ellison's own definition of the term (a 'sudden growth in the economy or sudden shrinkage in the economy')" and they say he did so "presumably because the economic data do not support Dr. Goedde's conclusion under that definition."  Mot. at 11 n.5.  In doing so, they argue that what Ellison really meant was a "contraction" in the economy as that term is used by economists.  *Id.* (arguing that Dr. Goedde "conceded" that there was not a contraction in the economy).  Not only is defendants' factual argument legally flawed, but it is also mistaken.  At its most basic level, defendants distort Ellison's testimony.  *Id.*  He testified that any number of factors could cause Oracle's forecast to be inaccurate.  Ex. 7 at 384:6-385:7.  Included in those factors was a "'major macroeconomic change'" and "'sudden growth in the economy or sudden

---

[10]    In their previous Reply, defendants argued that plaintiffs cannot prevail on their fraud claims because the market knew about the macroeconomic change.  Defs' 9/10/07 Reply (Docket #1124) at 9 n.11.  Defendants' argument makes no sense.  Only defendants knew that the economic change would render Oracle's forecasting process unreliable.

1   shrinkage in the economy.'" Mot. at 11 n.5. He did not testify that a "contraction," as defendants'

2   lawyers would like to use that term, would undermine the accuracy of Oracle's forecast. *Id.* In fact,

3   executives within Oracle, Sanderson in particular, referred to the "dotcom falloff" alone as a "major

4   macroeconomic event" that defendants likely discussed at Oracle's executive committee meetings.

5   Ex. 8 at 88:5-17.

6         Irrespective of Ellison's definition, the very point of Dr. Goedde's opinion, which is based on

7   his extensive forecasting experience, is that the sudden slowing of growth in the sector that Oracle

8   faced is what undermined the accuracy of Oracle's forecast, because that forecast was based largely

9   on a year-over-year extrapolation. *See* Ex. 4 at 4-8, 10-21; *see also* Declaration of Alan G. Goedde

10  in Support of Plaintiffs' Opposition to Defendants' Revised Motion for Summary Judgment

11  ("Goedde Decl."), filed concurrently herewith, ¶¶5-18 & Exs. C-D. Even if Ellison's testimony

12  could be stretched to what defendants would now like it to be, it cannot serve as a basis to exclude

13  Dr. Goedde's opinion.

14                    **2.      The Factors Considered by Dr. Goedde Are Reliable
                              Indicators of the Economic Climate Facing Oracle Leading Up**
15                            **to and Throughout 3QFY01**

16        Defendants claim that Dr. Goedde relied on only five factors that they now consider

17  insufficient in assessing the macroeconomic conditions facing Oracle in 3QFY01: (1) the NASDAQ

18  crash; (2) the bursting of the dot.com bubble; (3) media coverage of the demise of venture capital

19  funding; (4) the collapse of technology spending; and (5) the earnings shortfalls of Oracle's

20  competitors. Mot. at 12. Defendants assert that these factors were not "scientifically" chosen, and

21  therefore Dr. Goedde's opinions must be excluded. This is nonsense. Defendants cite no authority

22  for the proposition that these factors unreliably measured the macroeconomic environment facing

23  Oracle in 3QFY01. For this reason alone, defendants' argument fails.

24        Defendants also argue that Dr. Goedde has "not cited any rationale . . . for relying on these

25  factors." *Id*. at 13. However, Dr. Goedde provided the rationale for analyzing these factors in his

26  report. Ex. 4 at 4-8, 12-17. For example:

27        •     The NASDAQ included 14 out of 17 companies Oracle identified as competitors in
                its FY2000 10-K filing (*id*. at 5);
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-SI          - 12 -

- "Of the 100 largest stocks in the NASDAQ, 66 were listed in the information technology industry – an industry in which Oracle competed and sold products" (*id.*);

- Oracle's dot.com sales accelerated significantly in fiscal years 1999 and 2000 during the height of the dot.com bubble and venture capital funding (*id.* at 6);

- Internal Oracle documentation shows the collapse of Oracle's dot.com revenues and drying up of venture capital funding (*id.* at 14); and

- With respect to Cisco and Sun, Ellison stated that "'[i]f you plot the stock price [of] Cisco, Oracle, and Sun, you will see that all three companies rose and fell together in perfect synchronization as sentiment about the internet rose and fell'" (*id.* at 5 (citation omitted)).

Clearly, the factors that Dr. Goedde chose directly speak to the macroeconomic conditions facing Oracle during 3QFY01.  Defendants have no basis to argue that there is no "rationale" for relying on these factors.

Defendants also argue that the factors Dr. Goedde considered to gauge the economy facing Oracle bear "no resemblance to the economic indicators actually relied upon by experts in the field to evaluate macroeconomic trends."  Mot. at 13.  Defendants are misguided.  The focus of Dr. Goedde's opinions was on the technology sector of the economy that directly affected Oracle's operations, not on broad-based indicators of the general economy.  Even if he had focused on those indicators, however, his opinion would not have changed.  As discussed in Dr. Goedde's rebuttal report, each of the factors that Hubbard analyzed for the general economy supported Dr. Goedde's opinion.  *See* Ex. 1 at 20-45.  This provides an independent and objective measure of reliability, which defendants do not seriously challenge.[11]

---

[11]    Defendants argue that "Dr. Goedde later conceded that the U.S. government data showed that spending on software continually increased during calendar year 2000" and suggest that his testimony is inconsistent with his opinion. Mot. at 12 n.7.  Defendants' argument is disingenuous.  They have intentionally omitted the part of Dr. Goedde's testimony where he stated that Oracle's counsel was mischaracterizing the exhibit used in the line of questioning. Ex. 5 at 124:4-125:25.  He explained clearly that while the raw numbers were increasing, it was the rate at which they were increasing that supports his opinion.  *Id.*  In fact, as the FOMC recognized, the rate of growth in equipment and software was ***decelerating*** rapidly at the end of calendar year 2000 (and even contracted in 4QCY00) and software specifically collapsed from nearly 7% growth in the beginning of the year to just 2.9% in 4QCY00.  Goedde Decl., ¶¶24-25 & Ex. H.  This collapse was reported publicly on January 31, 2001, in the middle of Oracle's 3QFY01.  *Id.*  Defendants cannot avoid the reality of the economic environment at the time with this type of sleight of hand.  In their previous Reply, defendants attempted to show a "fallacy" in Dr. Goedde's interpretation of the FOMC's software data by arguing that sequential growth rates are an incorrect way to analyze the data. Defs'

1    Notably, defendants' own expert applied the same categories of factors that Dr. Goedde

2    applied when analyzing the sector in which Oracle operated.  Like Dr. Goedde, Hubbard evaluated

3    the measure of equity values of companies in the sector in which Oracle operated,[12] he studied

4    market commentary from analysts during that period of time, and he studied Oracle's business as

5    measured by the diversity of Oracle's customer base.  Ex. 9 at 21-50.  Defendants cannot credibly

6    argue that Dr. Goedde's selection of criteria was not scientific when their expert selected similar

7    criteria.[13]

8    _____

9    9/10/07 Reply (Docket #1124) at 7 n.7.  It is defendants that are mistaken.  The sequential decline in
     growth revealed the direction of the economic environment facing Oracle in its 3Q01.  Indeed, it was

10   this decelerating growth that economists, the FOMC, and even defendants themselves, were
     concerned about throughout the Class Period.  Defendants' argument is also ironic given that their

11   own expert analyzed economic data sequentially.  *See, e.g.*, Ex. 9 at 43-44.

12   [12]  Defendants have abandoned their argument that the National Bureau of Economic Research
     ("NBER") "did not consider the performance of any selection of equity securities to be a legitimate

13   and accurate macroeconomic indicator."  Defs' 10/9/07 Mot. to Exclude Goedde (Docket #1189) at
     12.  They did so because plaintiffs established that their own expert analyzed this very type of

14   measure in his own analysis.  Ex. 9 at 42-46.  Now, defendants quote *Daubert II*, 43 F.3d at 1319, to
     argue that Dr. Goedde had to "'point to some objective source . . . to show that [he has] followed the

15   scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.'"
     Mot. at 13.  Not only is *Daubert II* inapposite as it addresses scientific opinions about whether a drug

16   caused a plaintiff's harm, but also the standard defendants cite is applicable only if a party cannot
     "[e]stablish[] that an expert's proffered testimony grows out of pre-litigation research or that the

17   expert's research has been subjected to peer review," which "are the two principal ways . . . [to]
     show that the evidence satisfies . . . Rule 702."  *Daubert II*, 43 F.3d at 1318.  Since Goedde's

18   opinions are based on his pre-litigation experience, defendants' proffered statement is inapplicable.
     *Id*.  Defendants also repeat the argument that the collapse of the NASDAQ was not a gauge of the

19   economic health of companies in that market.  Mot. at 13.  Defendants' argument defies reality.
     When the NASDAQ was rising in significant part because of venture capital funding and dot.com

20   growth, Oracle's revenues from the dot.com sector alone skyrocketed from $4 million in 1Q99 to
     $172 million in 4Q00.  Ex. 4 at Exs. 4 & 5.  When it collapsed, Oracle's dot.com revenues collapsed

21   with it.  *Id*.  Dr. Goedde therefore establishes that the NASDAQ was a reliable gauge of the health of
     a significant part of Oracle's business.

22   [13]  Defendants argue that NBER's conclusion in November 2001 that business activity in the
     U.S. had peaked in March 2001 "strongly undercuts Dr. Goedde's opinion."  Mot. at 13-14.  What

23   the NBER concluded almost a full year after the Class Period has no bearing on Dr. Goedde's
     opinions and certainly cannot serve as a basis to exclude his testimony.  This is especially true since

24   Dr. Goedde established in his rebuttal report that virtually every broad-based economic indicator at
     the time supports his opinion.  *See* Ex. 1 at 20-45.  *Lust by & Through Lust v. Merrell Dow*

25   *Pharmaceuticals*, 89 F.3d 594, 598 (9th Cir. 1996), does not hold otherwise.  In *Lust*, the court
     expressed concern that an expert reached a conclusion "shared by no other scientist" in the field.  *Id*.

26   at 598.  Contrary to the facts in *Lust*, here Dr. Goedde's opinions were shared by many economists in
     the field at the time (including defendants' own expert as reflected in the comments of the Bush

27   administration) and are supported by reliable economic analyses.

28

1    The macroeconomic factors selected by Dr. Goedde are reliable indicators of the

2    macroeconomic conditions facing Oracle during the relevant time, and defendants cannot refute that

3    consideration of these factors would assist the trier of fact.

4             **3.    Defendants Cannot Credibly Deny a Link Between the Major
                     Macroeconomic Change Facing Oracle in 3QFY01 and
5                    Oracle's Business**

6             Defendants argue that "unless the 'major macroeconomic change' that Dr. Goedde observes

7    had some meaningful impact on Oracle's business and its ability to forecast quarterly results,

8    Dr. Goedde's opinion is utterly irrelevant to the case." Mot. at 14.  But defendants ignore that the

9    very reason defendants cited for Oracle's 3QFY01 collapse was a dramatically shifting economic

10   landscape.  On March 1, 2001, defendant Ellison blamed the U.S. economy for Oracle's earnings

11   miss – "senior managers are deferring expenses and pushing out IT expenditures in light of the

12   uncertain U.S. economy."  Ex. 2 at NDCA-ORCL 050660.  Oracle's CFO, defendant Henley, told

13   the market on March 15, 2001, of the Company's 3Q01 earnings collapse that: "But clearly, I think it

14   was the economy that really did us in."  Ex. 3 at NDCA-ORCL 050622.  It is readily apparent that

15   the macroeconomic analysis undertaken by Dr. Goedde is highly relevant to the case as it

16   demonstrates Oracle's knowledge of the changing macroeconomic conditions facing the Company

17   entering 3QFY01, which ultimately caused a significant part of Oracle's earnings collapse.

18           Defendants' argument that Dr. Goedde "made absolutely no effort to show that the factors he

19   analyzed have any impact on Oracle's business at all, much less an impact that significantly

20   hampered Oracle's ability to forecast its quarterly results" is plainly wrong.  Mot. at 15.  Dr. Goedde

21   has demonstrated the impact of these factors on Oracle's business in many ways.  He demonstrates

22   that changing economic conditions would have undermined Oracle's forecast process because it was

23   based on a year-over-year extrapolation.  Ex. 4 at 4-8, 10-21; Ex. 1 at 74-81.  By demonstrating that

24   the economic environment had changed dramatically, Dr. Goedde established a meaningful link.  He

25   also established a direct link between the collapse of the NASDAQ and a collapse in Oracle's

26   revenues.  In fact, his report details Oracle's lost dot-com revenue, which Henley cites as a cause of

27   Oracle's miss – "'the dot-com erosion that had started several quarters earlier'" had a "'negative

28   comparison effect'" on Oracle.  Ex. 4 at 16, 46 (citations omitted); Ex. 11 at 233:20-235:17, 309:13-

311:9.[14]   And Dr. Goedde also testified that there was a logical (and undisputed link) between

reduced technology spending and venture capital funding and Oracle's business:

>   Q:      Are you alleging that there's a direct correlation between the VC
>   funding and whatever the levels are of VC funding and the overall Oracle revenue?
>
>   *          *          *
>
>   [A:]    VC funding is an indicator of the health of the dot-com market.  The
>   health of the dot-com market drives sales of – to dot-com companies.
>
>   Q:      And you're not offering an opinion that there's any more direct
>   correlation than just this idea that VC funding reflects the overall health of the dot-
>   coms?
>
>   A:      Well, it's not an idea.  It's – that's how dot-coms get funded.
>
>   *          *          *
>
>   A:      It's not just an idea.

Ex. 5 at 111:7-23.  The dot.com collapse (which defendant Sanderson identified as itself a "major

macroeconomic event") is, again, a prime example and an objective measure establishing that

Dr. Goedde's methodologies are reliable.[15]  Ex. 8 at 88:5-17.

---

[14]    In their previous Reply, defendants challenged the figures that Dr. Goedde cites regarding Oracle's dot.com revenue.  Defs' 9/10/07 Reply (Docket #1124) at 8 n.9.  They argue that Dr. Goedde's labeling is incorrect because "1) the revenues attributed to dot.coms are only from the General Business division, and not NAS or even Oracle as a whole; and 2) these revenues only include field sales, and do not include sales by the iSD division, which was responsible for larger volumes of smaller sales."  *Id.*  Defendants' argument is meritless.  The General Business division was the division at Oracle dedicated to dot.coms and Dr. Goedde's analysis is based on the data that defendants themselves were analyzing internally at the time.

[15]    According to their own experts, Oracle's conversion ratio (the rate at which Oracle converted its pipeline into sales) declined significantly year-over-year in every quarter between 3QFY00 and 3QFY01.  Ex. 11 at 27.  It is not a coincidence that this decline correlated to the collapse in the NASDAQ.  Defendants' contention that there was no meaningful correlation between the NASDAQ collapse and Oracle's business is belied by the record and disproven by their own analysis.  Mot. at 15.  While they argue that Oracle's conversion ratios did not move in perfect tandem with the NASDAQ, they cannot dispute that Oracle was converting far fewer deals in its pipeline in FY01 (when the NASDAQ was collapsing) than it was in FY00 (when the NASDAQ was on the rise).  The "inconvenient truth," as defendants describe it, that Oracle grew year-over-year license revenue in the three quarters before the Class Period does not help their argument.  *Id.*  What defendants fail to tell the Court is that the growth in those quarters was compared to the quarters before Oracle's business took off in 3Q00.  Ex. 12.  Defendants' argument is baseless.

1    Defendants also argue that Dr. Goedde has not shown that Oracle's forecast process could

2    not properly account for the dot.com bust. Mot. at 15. Not true. Dr. Goedde's analysis is clear and

3    supported by the factual record. Since Oracle's forecast depended in large measure on a year-over-

4    year extrapolation, it could not have properly accounted for the dot.com collapse. This is especially

5    true since Oracle's public guidance was aggressive by any measure and that aggression was in

6    comparison to an extraordinary quarter that was driven, in large part, by sales to Oracle's dot.com

7    customers. Indeed, the very focus of Dr. Goedde's opinion is that Oracle's forecast process was

8    unreliable because it did not consider changing economic circumstances. Defendants have raised

9    nothing more than a pure factual issue that cannot serve as a basis to exclude Dr. Goedde's opinions.

10    Defendants' objections may be the appropriate basis for cross-examination, but not for

11    exclusion under *Daubert*.

    **D.    Dr. Goedde's Opinions Concerning Oracle's Forecasting Process Are**
12    **Reliable and Will Assist the Trier of Fact**

13    While defendants mount a vigorous challenge to Dr. Goedde's economic qualifications, they

14    do not dispute (and therefore concede) that he has the "knowledge, skill, experience, training, or

15    education" to opine upon Oracle's forecasting process. Fed. R. Evid. 702. In fact, of the three

16    forecasting experts proffered in this case, Dr. Goedde is the only expert who has actually prepared

17    and evaluated a forecast in the business environment. *See* Ex. 4 at 2-4; Ex. 5 at 13:7-20, 16:21-

18    17:21, 48:14-21, 49:12-51:2, 51:4-70:3, 72:10-13. Given these dynamics (and the fact that their own

19    experts lack the necessary qualifications), it is no wonder that defendants concede that Dr. Goedde is

20    qualified.[16]

21

22

23    [16]    Defendants argue that Dr. Goedde's forecasting opinions are unreliable because they rely on
    his economy opinions. Mot. at 15-16. As discussed in §III.C., *supra*, defendants' argument is based
24    on a flawed premise. Dr. Goedde used a reliable methodology to reach his opinions about the
    economy in which Oracle operated in 3QFY01. *Amorgianos v. AMTRAK*, 303 F.3d 256, 267 (2d
25    Cir. 2002), does not support their argument. In *Amorgianos*, the court stated the general proposition
    that "it is critical that an expert's analysis be reliable at every step," but added that "'[t]he judge
26    should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for
    his or her conclusions.'" *Id.* (citations omitted). It is defendants that fail both steps. Not only have
27    they failed to establish that Dr. Goedde's economy opinions are based on unreliable methodologies,
    but they also cannot credibly dispute that Dr. Goedde has "good grounds" for his opinion. *Id.*
28    Indeed, economists at the time shared the same opinion that Dr. Goedde offers in this case, and

1    Having no basis to challenge his forecasting qualifications, defendants mount a number of

2    challenges that do nothing more than argue their version of the facts.  Mot. at 15-24.  Under no

3    circumstances can these factual arguments serve as a basis to exclude Dr. Goedde's opinions.  *DSU*,

4    296 F. Supp. 2d at 1147 ("'it is not the role of the trial court to evaluate the correctness of facts

5    underlying one expert's testimony'") (quoting *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387,

6    1392 (Fed. Cir. 2003)); Fed. R. Evid. 702 advisory committee's note (the amendment on "'sufficient

7    facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground

8    that the court believes one version of the facts and not the other").  "[W]hen the parties' experts rely

9    on conflicting sets of facts, an expert may testify on his party's version of the disputed facts.  The

10   proper way for a party to challenge an expert in such a situation . . . is through cross-examination of

11   the expert."  *DSU*, 296 F. Supp. 2d at 1148.

12   Defendants argue that Dr. Goedde's forecasting opinions should be excluded because he

13   "simply ignored Ms. Minton's testimony as to how she derived the Potential Projection."  Mot. at

14   16.[17]  They say that because Dr. Goedde's assumptions are contradicted by Minton's testimony, his

15   conclusions are unreliable and inadmissible.  *Id.*  Not only are defendants' arguments legally

16   baseless, they are even more factually flawed.  Indeed, the weight of the evidence in this case

17   confirms that historical conversion rates predominately formed the basis of Oracle's forecasts.

18   Minton said it.  Ex. 13 at 135:7-136:12.  Ellison said it.  Ex. 7 at 384:6-385:7.  And Dr. Goedde's

19   analysis confirms it.  In fact, not only did Dr. Goedde study the relative movements in the

20   _____

21   virtually all of the broad economic indicators that defendants' own experts analyzed support

22   Dr. Goedde's opinion.  Ex. 1 at 20-45.

23   [17]  Defendants' reliance upon *Guillory v. Domtar Industries*, 95 F.3d 1320 (5th Cir. 1996), to
     argue that Dr. Goedde's opinions should be excluded for relying on facts purportedly contradicted by

24   the record is misplaced.  Mot. at 17.  In *Guillory*, the court excluded a forklift expert who had
     constructed a forklift model with a different design than the forklift at issue in the case and included

25   "post-accident modifications added to the forklifts" that made his conclusions "unfounded and
     misleading."  *Guillory*, 95 F.3d at 1331.  The court concluded that the expert's opinion was based on

26   "altered facts" and speculation to bolster defendants' position.  *Id.*  This case is very different.
     Dr. Goedde has not altered any facts and is instead applying his methods reliably to the facts of the

27   case as he views them.  *Guillory* does not support defendants' argument that Dr. Goedde should
     accept their distorted view of the evidence.

28

conversion ratios year over year, which he testified "closely mirrored" Minton's Potential Projection, but his supplemental analysis also confirms that Minton adhered to the conversion ratio process to form her Potential Forecast. Ex. 5 at 148:8-20, 150:25-152:19; Ex. 1 at Ex. 4; Goedde Decl., ¶¶5-18 & Exs. C-D. In fact, Minton admitted in a 2002 e-mail that she reached her "true forecast" exactly as Dr. Goedde says she did – by "applying historical conversion rates to the pipeline":

> [F]orecast conversion ratios – forecast as a % of pipeline. We track this for every forecast period within a quarter. This enables us to evaluate conversion rates. The conversion rates have been declining over historical periods due to the economic recession. When we were going through the dot.com bubble, the field would generally "sandbag" their forecast. **By evaluating historical trends, Jeff and I would be able to determine what the true forecast was by applying historical conversion rates to the pipeline**. As a side note, my upside analysis was usually spot on!

Ex. 14 (emphasis added).[18]

Defendants' expanded criticism of Dr. Goedde's opinion about how Minton developed her Potential Forecast fares no better than their previous criticism. Mot. at 18-22. As an initial matter, they misrepresent Dr. Goedde's opinion. He has not testified that the historical conversion ratio was the only basis for Minton's Potential Forecast as defendants contend. *Id.* He has made it clear, many times over, that the historical conversion ratio was the predominant factor in her analysis and, as a result, was inaccurate given the circumstances that Oracle faced in 3Q01. Ex. 1 at 74-87; Ex. 4 at 11-23. For this reason alone, defendants' factual arguments are flawed and cannot serve as a basis to exclude. They are also flawed from a more fundamental *Daubert* perspective – they attack the "unreliability of the conclusions he draws from his analyses" (Mot. at 20), which defendants' own authority holds is not a basis for exclusion. *Cavallo v. Star Enter.*, 892 F. Supp. 756, 762 (E.D. Va. 1995) (courts "must not exclude expert testimony based on a valid methodology simply because they

---

[18]    Defendants argue that Dr. Goedde's forecasting opinions should be excluded because he has not correlated the direction of the NASDAQ with Oracle's conversion rates. Mot. at 17-18. As in the economic context, the direct link that Dr. Goedde made between the NASDAQ and Oracle's dot.com sales provides a meaningful relationship. And contrary to defendants' contention that there was no relationship between the collapse of the NASDAQ and Oracle's conversion ratios, Minton herself acknowledged internally that "[t]he conversion rates have been declining over historical periods due to the economic recession." Ex. 14 at NDCA-ORCL 132078. This fact, which defendants knew going into 3QFY01, supports Dr. Goedde's opinions. *See* Discussion §III.C.3., *supra*.

1   disagree with the ultimate conclusion reached."); *see also Daubert*, 509 U.S. at 595 (court must not

2   focus on conclusions).[19]

3          Defendants' challenge to Dr. Goedde's methods are similarly flawed.  Mot. at 20-22.  While

4   they mount a vigorous challenge on how he performed his regression, Dr. Goedde has undermined

5   that challenge and established that the rebuttal declaration of George Foster was, in fact, flawed in its

6   challenges.  Goedde Decl., Ex. B ¶¶6-20.  Indeed, the primary basis for defendants' challenge is that

7   seasonality and year-over-year growth explain Dr. Goedde's results instead of Minton's forecasting

8   process.  Mot. at 20-22.  But Dr. Goedde revealed that Dr. Foster's analysis, on which defendants'

9   argument is based, failed to do the same.  Nevertheless, Dr. Goedde performed an analysis based on

10  an "error correction model" specifically designed to address Dr. Foster's critiques and concluded

11  that his opinion remained the same and is reliable.  Goedde Decl., ¶¶15-18 & Exs. C-D.  This

12  analysis directly undermines defendants' challenge.  Importantly, defendants do not challenge the

13  error correction analysis in any credible way.  Instead, they make the simplistic argument that

14  changes in "Minton's forecast moved in the opposite direction as changes in the forecast supposed

15  by the prior year's conversion ratio" without mentioning that the opposite movement was

16  statistically insignificant.  Mot. at 19-20.  Defendants' motion says nothing else about the validity of

17  Dr. Goedde's error correction model, or the important fact that the results from that model support

18  Dr. Goedde's opinion.[20]

19

---

20  [19]     *Cavallo*, 892 F. Supp. at 762, does not support defendants' contention that factual
21  disagreements or challenges to an expert's conclusions are a basis to exclude.  Mot. at 18.  In fact,
     the court in *Cavallo* excluded the expert's opinions because they were "based largely on hypothesis
22  and speculation."  892 F. Supp. at 773.  The opposite is true here.  Dr. Goedde's opinions on the
     mechanical application of Oracle's historical conversion can be, and have been, tested.  Ex. 1 at 74-
23  76 & Ex. 4.  Supplemental analysis has further validated Dr. Goedde's opinion.  Goedde Decl., ¶¶15-
     18 & Exs. C-D.

24  [20]     Defendants' reliance on *McCleskey v. Zant*, 580 F. Supp. 338, 369 n.7 (N.D. Ga. 1984), to
25  attack Dr. Goedde's use of a "stepwise regression" to undermine Foster's analysis is misplaced.
     Mot. at 21.  *McCleskey* criticized the regression when used to "select[] the background variables"
26  because it "makes no judgment as to whether or not the variables it selects might in reality have
     anything to do with the decision."  *McCleskey*, 580 F. Supp. at 369 n.7, 376.  But Dr. Goedde did not
27  use the "stepwise regression" to select the variables in the regression.  And contrary to defendants'
     argument that stepwise regression is completely unreliable, courts have found that stepwise
28  regression is a reliable basis on which to admit expert testimony.  *See Major v. Treen*, 574 F. Supp.

1     Defendants' next factual argument challenges Dr. Goedde's opinion that Oracle's forecasting

2     process did not take into account macroeconomic information because it is "contrary to Ms.

3     Minton's testimony."  Mot. at 17.  Defendants also suggest that Dr. Goedde's opinions should be

4     excluded because their own experts say "that macroeconomic information was taken into account in

5     Oracle's forecasting process."  *Id*.  None of these arguments can serve as a basis to exclude

6     Dr. Goedde's testimony.  One presents a factual question and the other presents a dispute between

7     experts.[21]  In fact, contrary to defendants' view of the evidence, Minton testified that she did not take

8     economic conditions into consideration when performing her conversion ratio analysis, which

9     formed the basis of her Potential Forecast. Ex. 13 at 135:7-136:12; Ex. 1 at 74-76 & Ex. 4; Goedde

10    Decl., ¶¶5-18 & Exs. C-D.  And plaintiffs have moved to exclude Foster's and Hubbard's opinions

11    concerning this issue as it amounts to rank speculation.  Defendants have no basis to challenge

12    Dr. Goedde's conclusions on this issue from the record.  Even if defendants could establish

13    inconsistent facts, however, it would be meaningless for purposes of a *Daubert* motion.  Fed. R.

14    Evid. 702; *DSU*, 296 F. Supp. 2d at 1148 ("[W]hen the parties' experts rely on conflicting sets of

15    facts, an expert may testify on his party's version of the disputed facts.").[22]

16

---

17    325, 337 (E.D. La. 1983) (stepwise regression used to empirically measure voting patterns); *In re*

18    *Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164, at *72 (N.D.
      Ohio Aug. 8, 2005) (stepwise regression was appropriate because "allowing cross-examination to

19    expose any weaknesses in these methodologies is both sufficient and preferable, rather than
      wholesale exclusion of [the expert's] opinions").

20    [21]  Defendants' arguments that their experts' opinions contradict Dr. Goedde's opinions relating

21    to Oracle's monthly revenues and its pipeline declines fail for the same reason.  Mot. at 18 n.12.
      Differing expert opinions can hardly serve as a basis to exclude expert testimony. *Micro Chem.*, 317

22    F.3d at 1392.

23    [22]  Hubbard's and Foster's opinions that macroeconomic conditions were considered in the
      forecasting process through Oracle's interactions with customers is not only speculative, but it is also

24    belied by defendant Henley's testimony – "Until you get to the end of the quarter, unfortunately, in
      this crazy business I'm in, *you really don't test your customer[s] to see what they really think about*

25    *their business and what they really think about the economy*." Ex. 10 at 206:5-9 (emphasis added).
      Given the weight of the evidence supporting Dr. Goedde's opinion, defendants' arguments that the

26    record supports Dr. Goedde's exclusion is preposterous. *Brooke Group Ltd. v. Brown & Williamson*
      *Tobacco Corp.*, 509 U.S. 209 (1993), and *Supply & Building Co. v. Estee Lauder International, Inc.*,

27    No. 95 Civ. 8136 (RCC), 2001 U.S. Dist. LEXIS 20737 (S.D.N.Y. Dec. 14, 2001), do not support
      defendants' argument. *Brooke Group* holds that only where evidence is "insufficient as a matter of

28    law to support" a claim or "*indisputable* record facts contradict or otherwise render the opinion

1    Defendants also argue that Dr. Goedde's opinion "is unreliable because it is based on a

2  misreading of the documentary record and deposition testimony, and is also contradicted by the

3  data" that defendant Ellison ordered more risk included in Oracle's 3QFY01 forecast. Mot. at 22.

4  But there is substantial evidence in the record to support the fact that defendant Ellison did just that.

5  Ex. 4 at 11; Ex. 7 at 423:24-425:1; Ex. 15 at 19:17-19, 105:10-21; Exs. 16, 17; Ex. 18 at NDCA-

6  ORCL 151961-62.  In fact, Dr. Goedde's supplemental analysis reveals that Oracle's sales divisions

7  followed Ellison's directive and added a substantial amount of additional "management judgment"

8  right after they received Ellison's directive.  Goedde Decl., ¶¶19-23 & Exs. E-G.  And Dr. Goedde

9  explained in his deposition how his opinion is consistent with Ellison's testimony denying that he

10  wanted more risk in the forecast, which defendants claim serves as a basis to exclude his testimony:

11           A:       I think he – he was – that question was asked to him in a deposition,
          and I think there was some confusion.  He started talking about – not risk, but I think
12        he clarified the position.

13           But the point is what he wanted was no more sandbagging.  So if there's not
          going to be any more sandbagging, salespeople are going to have to put more risk in
14        their forecasts.  So I think when that was made clear to him, I think he agrees that the
          salespeople have to eliminate the sandbagging.

15

16  Ex. 5 at 223:8-17.  What defendants believe to be correct is irrelevant for this Motion.  Rather, it is

17  for the trier of fact to determine who is correct.[23]  Dr. Goedde's opinion cannot be excluded simply

18  _____

19  unreasonable" can an expert's opinion not support a jury finding.  509 U.S. at 242-43 (emphasis
   added).  *Supply & Building*, on the other hand, reveals the type of analysis that is precluded under
20  the *Brooke Group* principle.  There, the court excluded plaintiffs' expert who "based his report on
   his client's unrealistic assurances rather than available records."  *Brooke Group*, 2001 U.S. Dist.
21  LEXIS 20737, at *16.  The court noted that "[p]laintiff does not and cannot cite a place in the record
   demonstrating that [plaintiff's expert] reviewed Supply & Building's records rather than relying on
22  his client's conclusory statements" and held that "[t]his is not the type of shortcut to be expected
   from an economist with 25 years of experience."  *Id.* at *14, *16.  Dr. Goedde does nothing of the
23  sort.  Instead, he applies his methods reliably to his reasonable interpretation of Oracle's records.

24  [23]    Defendants have expanded their attack on Dr. Goedde's analysis of Ellison's directive and
   the fact that his analysis revealed that management judgment in the Field Forecast increased after the
25  directive because they claim that he purportedly "failed to prove this is true."  Mot. at 23-24.  They
   then proceed to argue that their view of the evidence reveals that Dr. Goedde's analysis fails to
26  support his conclusion.  *Id.* at 23-24.  Defendants' motion demonstrates a fundamental
   misunderstanding of *Daubert's* standards.  Their singular focus on Dr. Goedde's view of the facts or
27  the conclusions that he reaches from his analysis cannot serve as a basis to exclude his testimony.
   Defendants' arguments are not only baseless, but also they cannot serve as a basis to exclude.  They
28  argue that he has not shown how Ellison's directive eliminated the need for Minton's upside

1   because he does not ascribe to defendants' version of the facts.  Fed. R. Evid. 702; *Micro Chem.*, 317

2   F.3d at 1392.  To the extent defendants disagree with Dr. Goedde, they are entitled to vigorously

3   cross-examine him at trial.[24]

4          Dr. Goedde's opinions should not be excluded as they are relevant, reliable and would assist

5   the trier of fact.

6   **E.     Dr. Goedde's Declaration and Rebuttal Declaration Are Required**
           **Supplemental Disclosures Under Rule 26 and Do Not Concede that**
7          **Dr. Goedde's Prior Work Is Unreliable and Inaccurate**

8          Defendants argue that Dr. Goedde's declarations should be excluded as "untimely on their

9   face," and his reports excluded because they do not "'contain a complete statement of all opinions to

10  be expressed [by Dr. Goedde] and the basis and reasons' for those opinions."  Mot. at 24 (citation

11  omitted).  Defendants are wrong on both points.  Contrary to their argument that supplementing a

12  report automatically compels exclusion, Rule 26 ***requires*** an expert to supplement information

13  included in his expert report.  Fed. R. Civ. P. 26(a)(2)(D), (e)(2); *see Tenbarge v. Ames Taping Tool*

14  *Sys.*, 190 F.3d 862, 865 (8th Cir. 1999) (failure to supplement expert's testimony led to new trial).

15  In fact, supplementation is proper to correct an error, or to make a report complete."  *Talbert v. City*

16

---

17  adjustments (Mot. at 23), but ignore Dr. Goedde's testimony that the directive was given to eliminate
    the same issue for which Minton's upside was historically necessary (*i.e.*, sandbagging).  *See, e.g.*,
18  Ex. 5 at 223:8-17.  Defendants' remaining arguments raise nothing more than disputed issues of fact
    appropriately addressed through cross examination.  *DSU*, 296 F. Supp. 2d at 1148.  And none of
19  those factual arguments eliminate the obvious fact that the U.S. License Divisions dramatically
    increased management judgment shortly after Ellison's directive.  Their argument that Dr. Goedde
20  relied on insufficient data not only fails to undermine the dramatic increase in management
    judgment, but it also does not justify exclusion since it is defendants that are responsible for the lack
21  of data.  Mot. at 23.

22  [24]    Defendants argue that Dr. Goedde's supplemental analysis of management judgment is
    inadmissible.  Mot. at 24-25.  Defendants are wrong.  An expert is allowed to supplement under the
23  Federal Rules to address challenges made by opposing experts.  *Miller v. Pfizer, Inc.*, 356 F.3d 1326,
    1332 (10th Cir. 2004) (finding that an expert's initial Rule 26 report cannot always anticipate every
24  possible challenge to the report and it may be appropriate to permit the party using the expert to
    submit supplements to the report in response to assertions by opposing experts that there are gaps in
25  the expert's chain of reasoning).  Dr. Goedde's additional analysis was done after defendants'
    experts made the absurd (and inadmissible) claim that Oracle did not follow Ellison's directive.
26  Ex. 5 at 220:12-22.  Dr. Goedde's analysis is not a new opinion.  Rather, it is an analysis that
    supplements an existing opinion based on positions that defendants took after Dr. Goedde submitted
27  his reports.  It is therefore proper.

28

1   *of Chicago*, 236 F.R.D. 415, 423 (N.D. Ill. 2006).  Defendants' contention would render Rule 26

2   meaningless since any supplement, regardless of the circumstances, would necessarily lead to

3   exclusion.  Rule 26 does not contain any language supporting this view.  In fact, courts have

4   recognized that "there is no inflexible rule of civil procedure that prohibits [a] supplemental

5   report."[25]  *Id.*

6         Despite a duty to supplement, defendants urge the Court to exclude Dr. Goedde's

7   declarations and all "earlier reports and testimony" as an appropriate sanction under Rule 37.  Mot.

8   at 24.  Defendants' argument is flawed in two respects.  First, they have not explained how a

9   supplement on one opinion can serve as a basis to exclude other opinions.  Defendants have cited no

10  authority to support such an extreme position.  Second, Rule 37 expressly permits a party to

11  supplement an expert report if doing so would be "harmless."  Fed. R. Civ. P. 37(c)(1).  And case

12  law reveals that a party is not harmed by supplementation where, as here, they have sufficient time to

13  address the supplement.  *Whatley v. Merit Distribution Servs.*, 166 F. Supp. 2d 1350, 1357 (S.D. Ala.

14  2001) (technical failure to comply with the court's deadline for filing supplemental opinions was not

15  unduly prejudicial "especially in light of the continuances of this matter, the way in which discovery

16  has proceeded in this case, and due to the fact that Defendants have not only since had ample time to

17  review these supplemental opinions but also because Defendants have themselves filed detailed

18  evidentiary motions to exclude, as to these experts regarding the admissibility of their testimony").[26]

19  _____

20  [25]    Defendants argue that Dr. Goedde's supplemental declarations are a concession that his prior
21  reports are unreliable (citing *Keener v. United States*, 181 F.R.D. 639, 642 (D. Mont. 1998)).  Mot. at
    24.  Not true.  Rule 26 does not determine the reliability of expert reports, but is simply the
22  procedure under which those reports are submitted.  In fact, *Keener* states that "[s]upplemental
    opinions are **required** under Rule 26(e)(1) . . . when the party learns that the earlier information is
23  inaccurate or incomplete."  *Id.* at 641 (emphasis added).  *Keener* certainly does not hold that
    supplementing under Rule 26 automatically compels exclusion.

24  [26]    Defendants rely on *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th
25  Cir. 2001), to argue that "exclusion is an appropriate remedy for failing to fulfill the required
    disclosure requirements of Rule 26(a)."  But *Yeti* acknowledged that "information may be introduced
26  if the parties' failure to disclose the required information is substantially justified or harmless" and
    excluded a report that the plaintiff failed to submit for two and a half years, and waited 28 days prior
27  to trial before doing so, which the court found was not harmless.  That is certainly not the case here.
    *Id.*

28

1   Dr. Goedde's supplemental expert report is not unduly prejudicial to defendants.  Expert

2   reports were exchanged on May 25, 2007.  Rebuttal reports were exchanged on June 22, 2007.  And

3   supplemental declarations were filed on August 26, 2007 and November 6, 2007.  Dr. Goedde has

4   now combined those declarations into a single declaration.  Defendants have now been in possession

5   of Dr. Goedde's supplemental analyses for over a year. The fact that defendants have prepared a

6   detailed motion to exclude Dr. Goedde's supplemental declarations and fully critiqued his

7   supplemental analyses shows that they have not suffered undue prejudice.  In fact, it directly

8   undermines defendants' sole claim of harm – that they could not depose Dr. Goedde on the analysis.

9   *Galentine v. Holland Am. Line-Westours, Inc.*, 333 F. Supp. 2d 991, 994 (W.D. Wash. 2004)

10  (inability to depose expert is not the type of prejudice that warrants exclusion).[27]

11  **IV.    CONCLUSION**

12  For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants'

13  *Daubert* Motion to Exclude Expert Reports and Testimony of Alan G. Goedde.

14  DATED:  November 17, 2008                    Respectfully submitted,

15                                              COUGHLIN STOIA GELLER
                                                  RUDMAN & ROBBINS LLP
16                                              MARK SOLOMON
                                                DOUGLAS R. BRITTON

17

18                                              _____s/ DOUGLAS R. BRITTON_____
19                                                    DOUGLAS R. BRITTON

20

21

22

23  _____

24  [27]    *Avila v. Willits Environmental Remediation Trust*, No. C 99-3941 SI, 2008 U.S. Dist. LEXIS
    19742 (N.D. Cal. Feb. 6, 2008), does not help defendants.  The court struck the supplemental report
25  because "much of this second declaration contains statements of opinion and explanations of
    methodology that could and should have been included in [the expert]'s original *prima facie*
26  declaration." *Id*. at *50.  The same is not true for the analyses in Dr. Goedde's declarations.  Indeed,
    he supplemented his reports only after learning for the first time in the rebuttal reports of defendants'
27  experts that defendants were denying the existence of Ellison's directive and Minton's reliance on
    the historical conversion ratio.  Goedde Decl., ¶¶5, 20.

28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
DANIEL J. PFEFFERBAUM
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
STACEY M. KAPLAN
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

Lead Counsel for Plaintiffs

S:\CasesSD\Oracle3\BRF00055632_Opp Exclude Goedde.doc

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT
REPORTS AND TESTIMONY OF ALAN G. GOEDDE - C-01-0988-SI                    - 26 -

CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 17, 2008.

                                              s/ DOUGLAS R. BRITTON
                                              DOUGLAS R. BRITTON

                                              COUGHLIN STOIA GELLER
                                                  RUDMAN & ROBBINS LLP
                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101-3301
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)

                                              E-mail:  dougb@csgrr.com

## Mailing Information for a Case 3:01-cv-00988-SI

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,jillk@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Dorian Estelle Daley**
  dorian.daley@oracle.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,eeberline@morganlewis.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com,#sfdocket@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**

marks@csgrr.com,e_file_sf@csgrr.com,sholloway@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Raymond Lane
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

PRG-Schultz USA, Inc.
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

Darren Jay Robbins
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Sanna Rachel Singer
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111

Monique C. Winkler
Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111
```