LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
E-mail: peter.wald@lw.com

Attorneys for Defendants ORACLE CORPORATION,
LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and
EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone:  (650) 506-5200
Facsimile:  (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
  Patrick E. Gibbs  (SBN 183174)
140 Scott Drive
Menlo Park, California 94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail: sean.berkowitz@lw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

**In re ORACLE CORPORATION
SECURITIES LITIGATION,**

**This Documents Relates To:**

ALL ACTIONS

**Master File No. C-01-0988 (SI) (Consolidated)**

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE
FOSTER**

Honorable Judge Susan Illston

Date:  January 9, 2009
Time: 9:00 a.m.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
SV\639690.6

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................ 2

III.    ARGUMENT ........................................................................................................... 3

    A.   Professor Foster Is Independent, Unbiased and Lacks any
        Connection to the Defendants that Would Warrant Exclusion of
        His Testimony. ................................................................................................... 3

    B.   Professor Foster's Opinions Are His Own and Are Based upon
        Facts in the Record. .......................................................................................... 6

        1.   Professor Foster Has Foundation for His Opinions and
            Meets the Requirements of Rule 26. ..................................................... 6

        2.   Professor Foster's Opinions Are Based on the Facts in the
            Record. .................................................................................................. 8

            a.   Mr. Ellison Did not Direct That the Field Forecast
                Contain More Risk. .................................................................. 8

            b.   Minton's Potential Projection Was the Result of Her
                Judgment, Taking Into Account a Variety of Inputs................... 10

            c.   Professor Foster's Opinion That Macroeconomic
                Information Entered the Forecast Process Through
                Salespeople Is Based on Appropriate Evidence in
                the Record. ............................................................................... 11

    C.   Professor Foster's Opinions Are Reliable and Stem from a
        Methodology that Flows Naturally from His Research and
        Teachings. .......................................................................................................... 13

        1.   Professor Foster's Methodology Stems from His Teaching,
            Research and Previous Writings and Is Supported by
            Experts in the Field. .............................................................................. 13

        2.   Professor Foster's Reliance on Securities Analysts Is
            Appropriate. .......................................................................................... 15

        3.   Professor Foster's Analyses Regarding Intra-Quarter
            Metrics Are Reliable. ............................................................................ 16

IV.     CONCLUSION............................................................................................................ 19

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

i

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Beam v. Stewart,*
   845 A.2d 1040 (Del. 2004) ........................................................................................... 5

*Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.,*
   No. 99 Civ. 1725(VM), 2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003) .............................. 13

*Daubert v. Merrell Dow Pharms. Inc.,*
   509 U.S. 579 (1993) .................................................................................................... 13

*Daubert v. Merrell Dow Pharms.,*
   42 F.3d 1311 (9th Cir. 1995) ................................................................................. 14, 17

*Dunn v. Sears, Roebuck & Co.,*
   639 F.2d 1171 (5th Cir. 1981) ....................................................................................... 5

*Folden v. Washington State Dep't of Social & Human Services,*
   744 F. Supp. 1507 (W.D. Wash 1990) ........................................................................... 6

*Habecker v. Copperloy Corp.,*
   893 F.2d 49 (3d Cir. 1990) .......................................................................................... 12

*Hamilton v. Signature Flight Support Corp.,*
   2005 U.S. Dist. LEXIS 40088 (N.D. Cal. Dec. 20, 2005) ................................................ 9

*In re Oracle Corp. Deriv. Litig.,*
   824 A.2d 917 (Del. Ch. 2003) .................................................................................... 4, 5

*In re Oracle Corp. Deriv. Litig.,*
   867 A.2d 904 (Del. Ch. 2004) ....................................................................................... 5

*Keithley v. The Home Store.com, Inc.,*
   No. C-03-04447 (EDL), 2008 U.S. Dist. LEXIS 61741 (N.D. Cal. Aug. 12,
   2008) .......................................................................................................................... 9

*Keystone Mfg. Co. v. Jaccard Corp.,*
   394 F. Supp. 2d 543 (W.D.N.Y. 2005) .......................................................................... 6

*Kumho Tire Co. v. Carmichael,*
   526 U.S 137 (1999) ............................................................................................... 17, 19

*Manning v. Crockett,*
   No. 95-C-3117, 1999 U.S. Dist. LEXIS 7966 (N.D. Ill. May 18, 1999) ............................ 7

*PRS Benefits v. Cent. Leasing Mgmt.,*
   No. 3:03-CV-1183-B, 2004 U.S. Dist. LEXIS 24135 (N.D. Tex. Nov. 29,
   2004) .......................................................................................................................... 8

*Seeley v. Hamilton Beach/Proctor Silex, Inc.*,
    349 F. Supp. 23 381 (N.D.N.Y. 2004) .................................................................. 7

*Skeete v. McKinsey & Co.*,
    1993 U.S. Dist. LEXIS 9099 (S.D.N.Y. 1993) ...................................................... 9

*Trigon Ins. Co. v. United States*,
    204 F.R.D. 277 (E.D. Va. 2001) ............................................................................ 7

*Trigon Ins. Co. v. United States*,
    215 F. Supp. 2d 687 (E.D.Va. 2002) ...................................................................... 7

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
    313 F. Supp. 2d 213 (S.D.N.Y. 2004) .................................................................. 10

**RULES**

Fed. R. Civ. P. 26(a)(2)(B) ...................................................................................... 6

Fed. R. Evid. 403 .................................................................................................. 12

Fed. R. Evid. 702 .................................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

iii

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-MJJ (JCS)

I.      INTRODUCTION

Plaintiffs' motion to exclude the report and expert testimony of Professor George Foster is predicated on incorrect legal standards, mere supposition (as opposed to evidence), and a misreading or obfuscation of the factual record.  Contrary to plaintiffs' claims, Professor Foster's opinions are reliable, tied to the facts, and rely on data and techniques commonly used by economists and forecasting experts.

Professor Foster was retained by Defendants to respond to certain opinions of plaintiffs' purported expert, Dr. Alan Goedde, regarding Oracle's forecasting process.  Based on a review of the factual record and in light of his extensive experience with analyzing forecasting and budgeting processes, Professor Foster concluded that "[c]ontrary to Dr. Goedde's conclusions, Oracle's financial forecasting process met relevant quality criteria and incorporated relevant economic and business information in a timely and appropriate manner," and that "Dr. Goedde's conclusion that Oracle's internal measures indicated that Oracle would miss its public guidance is not supported by the data."  Declaration of Douglas R. Britton In Support of Plaintiffs' Motion to Exclude the Expert Testimony of George Foster ("Britton (Foster) Decl.") (Dkt. 1278) Ex. 1 ¶ 12.

Plaintiffs first argue that Professor Foster somehow has a disabling bias and that his opinions should be excluded not because of any personal connection to defendants, but because he teaches at Stanford University.  Plaintiffs' argument is based entirely upon their supposition that, because three other Stanford professors (with whom Professor Foster is only nominally acquainted) are or were on Oracle's Board, and another director is a contributor to the university, Professor Foster is incapable of rendering an independent opinion.  Plaintiffs have not cited (and cannot cite) any evidence that these individuals influenced Professor Foster's opinions, that Professor Foster's tenure at Stanford is in any way dependent upon him rendering favorable opinions, or that he would sacrifice his academic reputation and academic freedom to opine favorably on behalf of the Defendants.

Plaintiffs also argue that Professor Foster's opinions should be excluded because he allegedly lacks knowledge of the facts underlying his opinions, and plaintiffs claim that the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

1

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1   opinions are not even his own.  This argument is completely unfounded.  In the four weeks that

2   Professor Foster had to respond to Dr. Goedde's opinions, Professor Foster spent 40-50

3   additional hours on this matter, and supervised a team of litigation consultants (as permitted by

4   the Federal Rules) in gathering relevant documents, conducting analysis and drafting the report.

5   Professor Foster testified that he was intimately involved in drafting the report, approved each

6   word, and that the opinions in the report were his own.  His report, along with his deposition

7   testimony, clearly demonstrates a detailed understanding of the facts necessary for him to reach

8   his conclusions.  The fact that Professor Foster, at his deposition, could not recall certain facts in

9   the massive record in this case does not illustrate a lack of foundation.  And contrary to the

10  opinions of plaintiffs' expert, Dr. Alan Goedde, Professor Foster's opinions are based on the

11  facts in the record and have the "fit" necessary for his opinions to be admissible in this action.

12          Ultimately, Professor Foster's opinions are reliable and based upon commonly-

13  used methodologies and principles.  His opinions are consistent with, and flow naturally from,

14  the methodology Professor Foster has used in his twenty-plus years of teaching, research, and

15  writings in the field of forecasting and budgeting.  His opinions should therefore be permitted as

16  they meet the standards of reliability and relevancy set forth by *Daubert* and its progeny and will

17  assist the trier of fact in understanding the quality of Oracle's forecasting process and in

18  interpreting the internal data generated from Oracle's forecasting process.

19  **II.      BACKGROUND**

20          Professor George Foster is the Paul L. and Phyllis Wattis Professor of

21  Management at the Graduate School of Business at Stanford University.  Britton (Foster) Decl.

22  Ex. 1 ¶ 4.  He possesses a bachelors and masters degree in economics from the University of

23  Sydney and a Ph.D. in Business Administration from Stanford University.  *Id.*  Professor Foster

24  researches and teaches budgeting and forecasting, and has written extensively about the two

25  subjects in articles as well as in his books *Financial Statement Analysis* and *Cost Accounting*.  *Id.*

26  ¶¶ 5-6; Declaration of Andrew M. Farthing in Opposition to Plaintiffs' Motions to Exclude

27  Expert Testimony of R. Glenn Hubbard and George Foster ("Farthing Decl.") (Dkt. 1223) Ex. 23

28  at 43:2-44:5, 52:10-23.  As part of an ongoing executive management program for Irish software

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

2

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1   executives, he has interviewed numerous CEOs regarding their forecasting processes to assist

2   them in growing their companies.  Farthing Decl. Ex. 23 at 57:5-63:5.  In connection with his

3   research, Professor Foster has gained detailed knowledge about the participant companies'

4   management systems, including planning, budgeting, marketing and sales systems.  Britton

5   (Foster) Decl. Ex. 1 ¶ 9.

6            Professor Foster was asked to complete two assignments in rebuttal to Dr.

7   Goedde's opening expert report:

8        a.    Evaluate Oracle's forecasting process and determine whether it met the
              relevant standards of quality in light of Dr. Goedde's statements that
9              Oracle's forecasting process suffered from various deficiencies.

10       b.    Evaluate whether the internal information Dr. Goedde cites indicated that
              Oracle executives knew or should have known that Oracle would not
11             achieve its public guidance.

12   Britton (Foster) Decl. Ex. 1 ¶ 2.  Professor Foster determined that Oracle's financial forecasting

13   process indeed "met relevant quality criteria and incorporated relevant economic and business

14   information in a timely and appropriate manner."  He also disagreed with Dr. Goedde's

15   conclusion that "Oracle's internal measures indicated that Oracle would miss its public

16   guidance" and found that conclusion was not supported by the data.  *Id.* ¶ 12.  As part of his

17   analysis regarding the quality of Oracle's forecasting process, Professor Foster determined that

18   the process incorporated appropriate mechanisms to take into account changes in

19   macroeconomic conditions.  *Id.* ¶ 12A(3)(a).  He was not asked to (and did not) analyze the

20   outlook for Oracle's business sector and the U.S. economy, or determine whether Oracle's

21   guidance was consistent with that outlook.  Farthing Decl. Ex. 23 at 40:15-40:24. That analysis

22   was performed by Defendants' expert, Professor R. Glenn Hubbard.  Britton (Foster) Decl. Ex.

23   13 ¶¶ 1, 10-11.

24   **III.    ARGUMENT**

25       **A.    Professor Foster Is Independent, Unbiased and Lacks any Connection to the
              Defendants that Would Warrant Exclusion of His Testimony.**
26

27            Plaintiffs argue that because Professor Foster teaches at Stanford University that

28   his impartiality and reliability in this case are undermined.  In particular, plaintiffs appear to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

3

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1  argue that the mere fact of Professor Foster's employment as a fully-tenured professor by

2  Stanford—an institution with an endowment of *$17.1 billion*[1]—disqualifies him from testifying

3  in this action because Stanford may receive future donations from Oracle or persons affiliated

4  with Oracle.  Pls. Mot. at 5-8.  Plaintiffs' argument must fail both because plaintiffs cannot prove

5  that any connections between Stanford and Oracle affected Professor Foster's opinions, and

6  because there is no authority whatsoever for plaintiffs' position.

7  First, plaintiffs appear to argue that because three Stanford professors (out of a

8  total of more than 1,800 tenured Stanford faculty[2]) were or are directors of Oracle (Professors

9  Grundfest, Boskin and Garcia-Molina), Professor Foster would not be willing to offer an opinion

10  against Messrs. Ellison, Sanderson or Henley, or the Company.  Plaintiffs, however, have not

11  cited any evidence to suggest any relationship other than the fact that the three professors teach

12  at the same university as Professor Foster (but in different departments), and have certainly not

13  suggested any relationship between Professor Foster and any of defendants in this matter.[3]

14  Likewise, plaintiffs have not introduced any evidence that Professor Foster's employment,

15  financial wherewithal, or even Stanford's financial health is dependent upon a contribution from

16  defendants, and that such a possibility affected Professor Foster's opinion.  Indeed, Professor

17  Foster clearly testified that his opinions were not affected by any of the relationships he has at

18  Stanford, stating: "I base my opinions on my professional judgment, not on what are the

19  consequences to other parties."  Farthing Decl. Ex. 23 at 24:21-25:10.

20  Plaintiffs' argument lacks any legal basis.  In support of their argument, plaintiffs

21  rely upon the decision of the Delaware Court of Chancery denying Oracle's special litigation

22  committee's motion to terminate.  Pls. Mot. at 5-8 (citing *In re Oracle Corp. Deriv. Litig.*, 824

23

24

---

25  [1]  Declaration of David C. Fortney. ("Fortney Decl.) Ex. 1, *Cal to announce $2 billion fundraising drive*, SAN FRANCISCO CHRONICLE, Sept. 17, 2008 at B-1.

26  [2]  *See* Farthing Decl. Ex. 25 (http://www.stanford.edu/home/stanford/facts/faculty.html).

27  [3]  Indeed, the only association plaintiffs have cited are that Professor Foster has attended

28  lectures by Professor Grundfest, met Professor Boskin on occasion, and met Mr. Ellison once at a basketball game.  Professor Foster testified that he does not know Processor Garcia-Molina.  Farthing Decl. Ex. 23 at 26:3-30:2.

LATHAM&WATKINS LLP  SV\639690.6
ATTORNEYS AT LAW
SAN FRANCISCO
4
DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1    A.2d 917, 939-40 (Del. Ch. 2003).[4]  In that case, the special litigation committee, comprised of

2    Oracle directors, possessed the discretion to terminate any claims the company may have had

3    against Messrs. Ellison and Henley and enter *judgment* in their favor.  Because of the gravity of

4    this task, Delaware law requires that a special committee demonstrate that there is no genuine

5    issue of fact as to the committee's independence.  *Id* at 938.  It was because of the unique nature

6    of the committee's power and the need to ensure that the committee's objectivity cannot be

7    reasonably questioned, that the court determined that the committee had not met its burden of

8    demonstrating its independence could not reasonably be questioned; the court did not, however,

9    make any finding about whether the committee members were, or were not, independent.  *Id.* at

10   939-42.[5]

11        Here the Court is not being asked to enter judgment for defendants solely on the

12   basis of Professor Foster's testimony;[6] instead the Court must determine whether Professor

13   Foster's opinions possess the requisite degree of reliability to be admitted under the Federal

14   Rules of Evidence.  Unlike the special litigation committee context, the party seeking to admit

15   expert testimony does not need to demonstrate by a summary judgment standard that there is no

16   genuine issue as to a material fact as to the expert's independence.  Indeed, courts make clear

17   that independence, biases, and potential biases should rarely serve as the basis for exclusion, and

18   any such bias can be explored in cross-examination.  *See*, *e.g.*, *Dunn v. Sears, Roebuck & Co.*,

19   639 F.2d 1171, 1174 (5th Cir. 1981) ("That a witness is an employee of a party does not preclude

20

21   [4]  Plaintiffs' reliance on the related derivative case in Delaware Chancery Court is ironic.  In
     that case, after the court denied the Special Litigation Committee's motion to terminate, the
22   court granted defendants' motion for summary judgment, concluding that "no rational trier of
     fact" could find that Oracle's CEO Larry Ellison or its then-CFO, Jeffrey Henley, possessed
23   any material, nonpublic financial information indicating that Oracle would miss its guidance.
     *See In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 906 (Del. Ch. 2004), *aff'd* 2005 Del.
24   LEXIS 150 (Del. Apr. 14, 2005).  In their recently filed motion for summary judgment
     against Defendant Ellison, plaintiffs entirely failed to discuss—or even cite—this authority,
     which is squarely on point and is directly adverse.
25   [5]  In any event, in *Beam v. Stewart*, 845 A.2d 1040 (Del. 2004), the Delaware Supreme Court
26   distanced itself from the position taken by the Oracle decision, further limiting that ruling to
     the narrow procedural context of a Special Litigation Committee's motion to terminate.  The
27   *Beam* court held that professional and social relationships do not impugn a director's
     independence.  845 A.2d at 1050-51, 1054-55.
28   [6]  In fact, consistent with Professor Foster's role as a rebuttal expert, none of Professor Foster's
     opinions or testimony is relied upon in Defendants' Motion for Summary Judgment.

LATHAM&WATKINS^LLP   SV\639690.6
ATTORNEYS AT LAW
SAN FRANCISCO
5
DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1   his qualification as an expert", and stating that bias can be explored at cross-examination and

2   argued to a jury); *Folden v. Washington State Dep't of Social & Human Services*, 744 F. Supp.

3   1507 (W.D. Wash 1990) (permitting expert who was a co-owner of one of the nursing homes in

4   the class and whose compensation was contingent upon the outcome of the case to testify, but

5   discounting the expert's testimony), *aff'd* 981 F.2d 1054 (9th Cir. 1992).

6          Plaintiffs' bias claim is unsupported by the facts and is insufficient to preclude

7   Professor Foster from serving as an expert in this matter.

8       **B.**    **Professor Foster's Opinions Are His Own and Are Based upon Facts in the**
          **Record.**

9

10             **1.**    **Professor Foster Has Foundation for His Opinions and Meets the**
                 **Requirements of Rule 26.**

11          Professor Foster clearly testified that the opinions expressed in his report were his

12   own, that he outlined and drafted portions of the report, and that he approved every word in the

13   report.  Farthing Decl. Ex. 23 at 19:25-20:2.  He also demonstrated a detailed understanding of

14   Oracle's forecasting process in his report and at his deposition.  Despite this record, plaintiffs

15   suggest that because Professor Foster utilized litigation consultants and could not remember

16   certain facts during his deposition, he lacks the requisite foundation for his opinions to be

17   admitted.  Plaintiffs' argument is contrary to well established law.

18          Federal Rule of Civil Procedure 26 requires that an expert witness provide a

19   "written report prepared and signed by the witness."  Fed. Rule Civ. Proc. 26(a)(2)(B).  The rule

20   contemplates that the expert may need assistance in preparing the report, but that it "should be

21   written in a manner that reflects the testimony to be given by the witness and it must be signed

22   by the witness."  Adv. Comm. Notes on 1993 Amendments.  Professor Foster testified that he

23   complied with this rule.  Professor Foster signed his report, Britton (Foster) Decl. Ex. 1 at p. 56,

24   and testified under oath and cross-examination that he "drafted the report in the sense of every

25   word I changed or ran with.  I did an extensive draft at the outset."  Farthing Decl. Ex. 23 at

26   19:25-20:2.  Professor Foster also testified that he supervised and directed the work performed

27   by the consultants at Analysis Group.  *Id.* at 18:10-20:24.  As such, Professor Foster complied

28   with the relevant requirements and his testimony and report should be admitted.  *See Keystone*

LATHAM&WATKINS LLP   SV\639690.6
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1    *Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005) (admitting expert

2    testimony where expert declared that he was substantially involved in the preparation of his

3    report and that the opinions were his own); *see also Trigon Ins. Co. v. United States*, 204 F.R.D.

4    277, 295 (E.D. Va. 2001) (denying motion to exclude expert because moving party failed to

5    show that the expert did not provide "the substance of the opinions");[7] *Manning v. Crockett*, No.

6    95-C-3117, 1999 U.S. Dist. LEXIS 7966, at *9-11 (N.D. Ill. May 18, 1999) (denying motion to

7    exclude expert witness because moving party failed to provide evidence that the expert "lacked

8    significant personal involvement in the preparation of his report").[8]

9               Professor Foster also demonstrated that he has sufficient foundation for his

10   opinions based on the information contained in his report.  Rule 26 requires that the written

11   report contain a "complete statement of … the data or other information considered by the

12   witness in forming the opinions."  Fed. Rule Civ. Proc. 26(a)(2)(B).  Professor Foster's report

13   includes this information.  Britton (Foster) Decl. Ex. 1 at Appendix C.  The fact that Professor

14   Foster "skimmed" a few documents or deposition transcripts in the few short weeks he had to

15   prepare his rebuttal report and relied on litigation consultants to sift through the record to select

16   documents relevant to his analysis (in accordance with Professor Foster's instructions) does not

17   indicate a lack of foundation sufficient to warrant exclusion.  *See* Fed. R. Evid. 702 (expert

18   testimony must be based on "*sufficient* facts or data") (emphasis added); *Seeley v. Hamilton*

19   *Beach/Proctor Silex, Inc.*, 349 F. Supp. 23 381, 387 (N.D.N.Y. 2004) (assuming facts and failing

20   to review schematics of allegedly defective device did not make expert's testimony

21   inadmissible).  To the extent Professor Foster was unable to recall particular facts at his

---

22

23   [7]  Plaintiffs insinuate that Professor Foster's use of the consultants at Analysis Group is
     somehow improper based on the holdings of *Trigon*.  Yet in *Trigon* the court made no

24   findings that Analysis Group had engaged in improper conduct and ultimately entered
     judgment for Analysis Group's client.  *See Trigon Ins. Co. v. United States,* 215 F. Supp. 2d

25   687 (E.D.Va. 2002).  In addition, plaintiffs have made no allegations that Analysis Group
     improperly disposed of drafts in this case, nor could they, as plaintiffs stipulated that drafts

26   were not discoverable, *see* Farthing Decl. Ex. 26 ¶¶ 5-6.

27   [8]  Plaintiffs also criticize Professor Foster for "only" personally devoting 40-50 hours to his
     rebuttal report, Pls. Mot. at 8-9.  Given that Professor Foster had four weeks to generate his
     report, and that he also used litigation consultants in this matter, this argument falls flat.  The

28   argument is also ironic considering that Dr. Jensen, one of plaintiffs' rebuttal experts,
     devoted only 16 hours to the preparation of his rebuttal report.  Farthing Decl. Ex. 27.

LATHAM&WATKINS^LLP   SV\639690.6
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

deposition from a record that spans millions of pages and more than 150 deposition transcripts (between this action and the prior derivative action), that is also not a sufficient basis to exclude his testimony. *Daubert* does not require that the expert pass plaintiffs' memory test (using plaintiffs' grading curve), and plaintiffs cite no authority to the contrary. *See PRS Benefits v. Cent. Leasing Mgmt.*, No. 3:03-CV-1183-B, 2004 U.S. Dist. LEXIS 24135, at *10 (N.D. Tex. Nov. 29, 2004) (denying motion to exclude expert's testimony when expert was unable to recall specific information during his deposition because "*Daubert* simply requires reliability, not a photographic memory"). Regardless, Professor Foster displayed at his deposition a commendable grasp of the facts. *See*, *e.g.*, Farthing Decl. Ex. 23 at 202:12-14, 203:20-24, 205:17-25, 207:22-208:19, 214:1-7, 219:4-14, 222:7-12 (testifying to George Roberts' position, movement of the Potential projection through the quarter, the basis for Jennifer Minton's ("Minton") upside adjustments, when Oracle began to give formal guidance and its former practice of providing informal input to securities analysts, Henley's opinion regarding big deals in the NAS division, that Henley provided 12 cents EPS guidance to the market in 3Q01 that was more conservative than the rounded 13 cents projected by Minton, and when Oracle first began selling Suite 11i).[9]

## 2. Professor Foster's Opinions Are Based on the Facts in the Record.

Plaintiffs also argue that Professor Foster's opinions lack foundation because his report did not discuss certain "facts" or made improper inferences not based on facts in the record. Plaintiffs make a similar argument in support of the motion to exclude defendants' expert, Professor Hubbard. But as discussed in defendants' opposition to that motion, plaintiffs' argument is based on a misunderstanding or obfuscation of the facts in the record.

### a. Mr. Ellison Did not Direct That the Field Forecast Contain More Risk.

Plaintiffs first argue that Professor Foster failed to take into account a purported

---

[9]   It is ironic that Plaintiffs criticize Professor Foster for being unfamiliar with the purportedly critical identity of John Nugent, Pls. Mot. at 11, when Mr. Nugent's name does not appear in Plaintiffs' Motion for Summary Judgment Against Lawrence Ellison For Trading On The Basis Of Material Non-Public Information. Apparently Mr. Nugent was not critical enough to figure personally in Plaintiffs' 50-page dispositive motion.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

8

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1  directive from Mr. Ellison to the sales force to "add additional risk … to the field-level forecast."

2  Pls. Mot. at 13-15.  Plaintiffs' citations in support of this argument, however, refer to Dr.

3  Goedde's reports—not any record evidence (though they purport to incorporate by reference

4  their motion for summary judgment)—and plaintiffs ignore Mr. Ellison's very clear testimony

5  under oath that he did not want additional risk in the forecast.  Farthing Decl. Ex. 28 at 423:20-

6  426:7.[10]  In contrast, Professor Foster considered the record and the deposition testimony of

7  Messrs. Ellison, Henley, Sanderson and Ms. Minton, concluding that no such change occurred.

8  Britton (Foster) Decl. Ex. 1 ¶¶ 77-85, *citing* Ellison 9/21/06 Depo. at 423-27, Henley 11/16/06

9  Depo. at 277-79, Minton 7/7/06 Depo. at 19, 101-12, Sanderson 7/25/06 Depo. at 269-71, 273-

10  75.  In addition to considering this testimony (and contrary to plaintiffs' allegations), Professor

---

[10]  Plaintiffs are wrong to suggest that the adverse inference could be extended so far as to assume the existence of the so-called "directive."  Adverse inference sanctions must be "narrowly tailor[ed]" to the circumstances of a given case and not "go beyond what is necessary to cure the prejudice" caused by the spoliation.  *Keithley v. The Home Store.com, Inc.*, No. C-03-04447 (EDL), 2008 U.S. Dist. LEXIS 61741, at *3, *10, *51-54 (N.D. Cal. Aug. 12, 2008).  The party seeking sanctions is not entitled to rely on "pure speculation as to the content" of spoliated materials, but rather should provide extrinsic evidence that the lost materials "would have been unfavorable to the spoliator."  *Hamilton v. Signature Flight Support Corp.*, 2005 U.S. Dist. LEXIS 40088, at *23-24 (N.D. Cal. Dec. 20, 2005) (citing *Skeete v. McKinsey & Co.*, 1993 U.S. Dist. LEXIS 9099, at *23 (S.D.N.Y. 1993).  To allow Plaintiffs to leverage the adverse inference into a directive would trample the narrow scope of the September 2, 2008 Order and require the Court to speculate, without any corroborating evidence, that all evidence of this purported dramatic shift in Oracle's forecasting system was somehow expunged not only from Mr. Ellison's files but from the files of every other custodian whose documents were produced in the case as well as the memories of all deponents.

Indeed, extending the inference as Plaintiffs wish would call for the Court to indulge Plaintiffs' assumption that Mr. Ellison issued a directive that was disseminated throughout the hundreds of members of Oracle's sales force and that the sales force, in turn, fundamentally changed the way they went about putting deals in the pipeline and generated their forecasts – even though there is no record of this "directive" or its effect on the forecasting process.  Plaintiffs deposed dozens of Oracle witnesses who were involved in the sales forecasting process, including three Executive Vice Presidents, two finance directors, and at least six Group or Area Vice Presidents in charge of license sales (not to mention the dozens of "confidential witnesses" cited in Plaintiffs' complaint). But not a single witness testified that any such "directive" was ever issued.  Plaintiffs also received over 2.1 million pages of documents from 129 custodians at Oracle.  Yet the only "evidence" of this alleged directive is a single email from two lower-level Oracle employees.  Ultimately, however, there is no evidence that Mr. Ellison had any emails in his files about the so-called directed when the duty to preserve evidence arose or that he ever discussed this issue during the interviews for *Softwar*.  The Court should take guidance from the record in crafting any adverse inference.  *Keithley*, 2008 U.S. Dist. LEXIS 61741, at *49-50.  Here, the record establishes that Plaintiffs' purported "directive" is pure fiction, and the September 2, 2008 Order does not affect this conclusion.

1   Foster conducted an analysis to see if he could detect a change in the pipeline that would be

2   consistent with such a directive being issued and followed.  Professor Foster's analysis revealed

3   that the field forecast for Q3 FY01 was not unusual as compared to prior quarters, leading him to

4   believe that the purported directive did not occur as plaintiffs and Dr. Goedde have argued.

5   Britton (Foster) Decl. Ex. 1 ¶¶ 79-80.   Ultimately, plaintiffs' argument is not predicated on any

6   evidence, and at best, amounts to nothing more than a disagreement among experts, which is not

7   a basis for exclusion under *Daubert*.  *U.S. Info. Sys. v. IBEW Local Union No. 3*, 313 F. Supp. 2d

8   213, 231 (S.D.N.Y. 2004) (holding that disagreements among experts was not an issue of

9   admissibility, but something to be addressed on cross-examination).

10                      b.      Minton's Potential Projection Was the Result of Her Judgment,
                               Taking Into Account a Variety of Inputs.
11

12            Plaintiffs also argue that Professor Foster failed to consider certain internal

13   metrics in rendering his opinion that Oracle's forecast was supported by the data, but instead

14   focused only on Ms. Minton's Potential projection, which according to Dr. Goedde, was simply

15   the result of the mathematical product of the conversion ratio from the same quarter in the prior

16   year and the current quarter's pipeline.  Thus, plaintiffs claim that Professor Foster's opinions are

17   not tied to the facts and are unreliable.  Pls. Mot. at 15-16.

18            Plaintiffs' argument is not supported by the evidence.  Again, plaintiffs rely on

19   Dr. Goedde's report as support for the "fact" that Ms. Minton calculated her Potential projection

20   using only the historical conversion ratio.  Pls. Mot. at 15-16.  The record facts, however, refute

21   Dr. Goedde's opinion.  Ms. Minton testified that the Potential projection was based on a number

22   of factors, including discussion with sales executives and field finance personnel—consistent

23   with Professor Foster's conclusions.  Farthing Decl. Ex. 29 at 121:17-126:24.[11]

24   _____

25   [11]   If plaintiffs were correct that Ms. Minton based her Potential projection solely on the prior
     year's conversion ratio, her Potential projection would have projected revenues much higher
26   in the first half of fiscal year 2001 than what actually occurred because the conversion rates
     in 1Q01 (45%) and 2Q01 (49%) were significantly below the conversion rates in 1Q00
27   (56%) and 2Q00 (57%).  Declaration of George Foster, Ex. 1 at Figure 4.  (Dkt. No. 1503).
     This, however, was not the case, meaning that the Potential projection could not have been
28   based solely or largely on the prior year's conversion ratio.  Britton (Foster) Decl. Ex. 1 ¶¶
     44-48.  Because the Potential projection was not based solely on the conversion ratio, there

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

10

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1           To begin with, and at the simplest level, the prior year's conversion rate and the

2   current year's conversion rate often differ dramatically, like on December 11, 2000, when Ms.

3   Minton predicted a 48% conversion rate compared to the 53% actually achieved a year earlier.

4   Goedde Decl. Ex. 1.  It is therefore unsurprising that because the conversion rates differ, at no

5   point over more than a year of observations does Ms. Minton's Potential equal what the forecast

6   would be if Ms. Minton did base the Potential on the historical conversion ratio.  Goedde Decl.

7   Ex. 2.  Instead, the closest the two numbers come is $5 million, the difference averages over

8   $100 million, and is nearly $145 million on December 11, 2000 (the forecast on which Oracle's

9   public guidance was based).  *Id.*  Quite simply, other factors must be in play besides the prior

10  year's conversion rate, just as Ms. Minton testified.[12]  Moreover, Professor Foster analyzed the

11  historical accuracy of Minton's Potential projection, and found that it was historically Oracle's

12  most accurate forecasting tool—and a conservative one.  Britton (Foster) Decl. Ex. 1 ¶¶ 44-48,

13  90-97.[13]  Professor Foster's decision to focus on the potential forecast (as opposed to only the

14  conversion ration) is therefore reliable and tied to the facts.

15                   c.      Professor Foster's Opinion That Macroeconomic Information
                             Entered the Forecast Process Through Salespeople Is Based on

16                               Appropriate Evidence in the Record.

17          Professor Foster concluded that Oracle's forecasting process included appropriate

18  mechanisms to take into account changes in macroeconomic conditions.  Professor Foster

19  reached this conclusion as part of his analysis in determining whether Oracle's forecasting

20

21        was no reason for Professor Foster to separately "study [] the reliability of the historical

22  conversion ratio", as plaintiffs contend.  Pls. Mot. at 16.

[12]  Similarly, Dr. Goedde's analysis admits that between February 26, 2001 and February 28,
23  2001, the Potential projection declined by 11% – almost $139 million – even though the
pipeline remained the same.  Rebuttal Report at Ex. 4.  If Dr. Goedde's hypothesis were
24  correct (that Minton performed a mechanical application of the prior year's conversion ratio
to the current quarter's pipeline to derive the Potential projection), the Potential on February
25  28, 2001 would have been the same as it had been two days earlier.

26  [13]  Plaintiffs have cited to an email written by Ms. Minton in 2002 in support of their argument
that the Potential was mechanically derived where she boasts about her predictions being
27  "spot on."  *See* PX 13.  Inasmuch as Ms. Minton's Potential was *indisputably Oracle's most
accurate* forecasting tool, much more so than the simple multiplication of the pipeline and
28  the prior year's conversion ratio, the falsity of plaintiffs' theory is apparent.  Britton (Foster)
Decl. Ex. 1 ¶¶ 44-48, 90-97.

LATHAM&WATKINS^LLP  SV\639690.6
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1    process met relevant quality standards.  He did not determine whether the data was consistent

2    with macroeconomic indicators, which was the province of Professor Hubbard's analysis.[14]

3    Plaintiffs' criticism that Professor Foster did not consider macroeconomic changes is thus

4    irrelevant; moreover, it ignores the fact that the record indicates that macroeconomic information

5    was in fact built into Oracle's forecasting process (so any macroeconomic change would indeed

6    have been reflected in the data).

7              Plaintiffs also argue that Professor Foster lacked a factual basis for his conclusion

8    that the forecasting process included macroeconomic information.  This argument, however, is

9    clearly refuted by the record.  For instance, both Jay Nussbaum, the former Executive Vice

10   President of Oracle Services Industries, and Edward Sanderson, former Executive Vice President

11   of Oracle Product Industries, testified that they would gather information from their salespeople

12   as to what was going on with specific clients, such as whether the CIO at the client "was in a

13   good mood … do they have a sense of urgency to get this done, have they done all the

14   paperwork, is the selection process over."  Britton (Foster) Decl. Ex. 1 ¶ 57 (*quoting* Nussbaum

15   3/23/04 Depo. pp. 30-34, Sanderson 7/25/06 Depo. p. 39).  Ms. Minton also explained that in

16   creating her potential forecast, she was "pushing these guys to find out whether or not there was

17   any changes in their forecast which is a result of the macroeconomic conditions that were

18   prevalent in the news, but nobody was moving off their forecast."  Farthing Decl. Ex. 30 at

19   237:19-238:16.  Although this testimony did not include specifics as to what each particular

20

21   [14]  Although both Professors Foster and Hubbard discuss the use of macroeconomic information
     in Oracle's forecasting process, their opinions are fundamentally different.  *Compare* Britton
22   (Foster) Decl. Ex. 1 ¶ 12.A.3(a) ("Oracle's forecasting process included appropriate
     mechanisms to take into account changes in macroeconomic conditions.") *with* Britton
23   (Foster) Decl. Ex. 13 ¶ 11 ("Defendants' … statements regarding Oracle's financial
     performance during 3Q FY2001 were reasonable in light of the relevant sector-specific and
24   macroeconomic data available during the course of Oracle's 3Q FY2001 and the
     contemporaneous information available through Oracle's internal forecasting process.").
25   Furthermore even if their opinions were duplicative, plaintiffs have not and cannot
     demonstrate that the probative value of those opinions are " *substantially outweighed* by …
26   considerations of … needless presentation of cumulative evidence."  Fed. Rule Evid. 403
     (emphasis added); *cf. Habecker v. Copperloy Corp.*, 893 F.2d 49, 53 (3d Cir. 1990) (holding
27   that it was not harmless error to improperly exclude expert witness whose testimony would
     be duplicative of another expert).  *See also* Opposition to Motion to Exclude Deposition of
28   Professor Hubbard at 16-17 (the arguments of which are incorporated to this motion in the
     interests of brevity).

1   customer explained to each salesperson years earlier, it was more than sufficient for Professor

2   Foster to opine that "by virtue of relying on sales representatives' estimates of likely purchases

3   by potential customers, Oracle's forecasting process incorporated relevant macroeconomic,

4   product, and customer information."  Britton (Foster) Decl. Ex. 1 ¶ 61.

5          In sum, Professor Foster's report is properly based upon the *facts* in the record,

6   and the arguments of plaintiffs and their expert contrary to those facts cannot serve as a basis to

7   exclude Professor Foster's testimony.  *Daubert*, 509 U.S. at 591-92; *Cary Oil Co., Inc. v. MG*

8   *Refining & Marketing, Inc.*, No. 99 Civ. 1725(VM), 2003 WL 1878246, at *3 (S.D.N.Y. Apr. 11,

9   2003) (denying motion to exclude expert whose opinion "fits the facts of the case and is not

10  premised on a false predicate fact").[15]

11         **C.    Professor Foster's Opinions Are Reliable and Stem from a Methodology that
           Flows Naturally from His Research and Teachings.**

12

13         Professor Foster's opinions are also reliable under the standard articulated in

14  *Daubert* and the Federal Rules.  Plaintiffs' arguments to the contrary ignore Professor Foster's

15  twenty-plus years in academia teaching the same methodology he applies in his report, the fact

16  that Professor Foster's methodologies have been utilized by other experts in the field, and/or are

17  based upon a misunderstanding of the facts and the unreliable opinions of plaintiffs' own expert.

18         **1.    Professor Foster's Methodology Stems from His Teaching, Research
           and Previous Writings and Is Supported by Experts in the Field.**

19

20         In defining a reasonable forecast process, Professor Foster articulated three

21  criteria for a reasonable forecast process based on his experience and teaching:  "(a) Is there a

22  structured, broad-based process for collecting and evaluating information?  (b) Does the process

23  have appropriate checks and balances?  (c) Is the process historically validated?"  Britton

24  _____

    [15] Plaintiffs also claim that Professor Foster's conclusion should not be permitted because
25  plaintiffs were purportedly excluded from discovering evidence from the files of regional
    sales managers. Pls. Mot. at 22-23.  This argument, also made in their motion to exclude
26  Professor Hubbard, lacks merit for multiple reasons.  First, plaintiffs have not explained why
    this discovery limitation impacts their ability to challenge Professor Foster's opinion on this
27  issue.  Second, while Defendants did not need to produce documents from the files of the
    regional sales mangers, nothing precluded plaintiffs from deposing these individuals or lower
28  level sales people.  They chose not to do so.  There has been no fundamental unfairness as
    plaintiffs had access to all the information Professor Foster relied upon.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

13

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1   (Foster) Decl. Ex. 1 ¶ 29; Farthing Decl. Ex. 23 at 97:14-98:9.  Plaintiffs' claim that these criteria

2   are somehow unreliable because they were developed expressly for the purpose of this litigation

3   is simply false.

4          The criteria that Professor Foster used were not developed for this litigation, but

5   have been utilized by Professor Foster and others before.  Professor Foster testified that he has

6   taught this approach to his students for several years.  Farthing Decl. Ex. 23 at 97:14-98:9 ("This

7   is an approach I've had to evaluating, in general, control systems, not just forecasting systems,

8   budgeting systems for some time. …  I've been teaching with this for some time.").  The criteria

9   also flow from Professor Foster's previous research and written works as well.  For instance, in

10  asking whether "there [is] a structured, broad-based process for collecting and evaluating

11  information" and whether "the process have appropriate checks and balances," Britton (Foster)

12  Decl. Ex. 1 ¶ 29, Professor Foster draws upon his writings in his textbook *Financial Statement*

13  *Analysis*, where he noted that forecasts that aggregate the forecasts of different groups or

14  individuals (and different forecasting approaches) demonstrate greater accuracy.  Farthing Decl.

15  Ex. 7 at 285-86.  Similarly, Professor Foster's criteria regarding the historic validation of a

16  forecasting process, Britton (Foster) Decl. Ex. 1 ¶ 29, draws upon Chapter 8.3 of *Financial*

17  *Statement Analysis*, where he explains criteria used to evaluate the accuracy of forecasts.

18  Farthing Decl. Ex. 7 at 264-71.  Because Professor Foster's criteria "grow[] naturally and

19  directly out of research [he] [has] conducted independent of the litigation," they have indicia of

20  reliability more than sufficient to be admissible.  *Daubert v. Merrell Dow Pharms.*, 42 F.3d

21  1311, 1317 (9th Cir. 1995).

22         In addition to flowing from his prior writings, the criteria that Professor Foster

23  used find support in the text authored by another forecasting expert, Professor Armstrong, a

24  professor of marketing at the Wharton School of the University of Pennsylvania, and the very

25  expert on whom Dr. Goedde relies.  Professor Armstrong's text specifically recognizes the

26  importance of the three criteria used by Professor Foster.  *See* Farthing Decl. Ex. 31 at 686, 709-

27  18 (stating that forecasts should be based on "relevant, valid, and reliable data" and "use diverse

28  sources of data" to account for potential biases, and that evaluation of forecast accuracy is key).

LATHAM&WATKINSᴸᴸᴾ SV\639690.6
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1   Even plaintiffs' own purported expert did not disagree with the criteria used by Professor Foster.

2   Farthing Decl. Ex. 3 [Goedde Depo] at 242:3-10.  This is fatal to plaintiffs' criticisms.

3          The fact that these exact three criteria have not been specifically used in any of

4   Professor Foster's prior writings is not dispositive, nor does it suggest that Professor Foster

5   developed these criteria just for this litigation.[16]

6              **2.      Professor Foster's Reliance on Securities Analysts Is Appropriate.**

7          Professor Foster's conclusion that Oracle's forecasting process was reasonable is

8   confirmed by the historical performance of the process and the fact that those forecasts were

9   generally consistent with the independent forecasting models of securities analysts.  Britton

10  (Foster) Decl. Ex. 1 ¶¶ 44-48, 62.  Plaintiffs argue that Professor Foster is attempting to prove

11  what was occurring within Oracle from what was known outside of Oracle.  Pls. Mot. at 18.

12         Plaintiffs mischaracterize Professor Foster's opinion.  Professor Foster opined that

13  "[i]f Dr. Goedde's opinion that Oracle's forecasting process failed to take market information

14  into account in Q3 FY01 were valid, one would expect to see a clear divergence between what

15  Oracle was forecasting internally and what security analysts were forecasting."  Britton (Foster)

16  Decl. Ex. 1 ¶ 62.  Professor Foster found that the forecasts of Oracle and the analysts were

17  generally consistent, and given that security analysts "have access to a wide variety of market

18  information" in creating their forecasts, it was "reasonable to infer that Oracle's forecasts also

19  reflected market-based information."  *Id.*[17]

20         Plaintiffs also contend that Professor Foster's opinions are unreliable because

21  securities analysts' forecasts are inherently unreliable, a point which plaintiffs claim Professor

22  Foster conceded in his prior writings.  Pls. Mot. at 18-20.  Plaintiffs' argument is based on a

23  _____

24  [16]   Further evidence that Professor Foster's criteria were not created solely for purposes of this
       litigation is shown by the fact that those criteria are similar to those he used in assessing the
25     reasonableness of AT&T's budgeting process in another securities litigation matter.  Farthing
       Decl. Ex. 23 at 98:5-13 ("Certainly in the AT&T litigation I used this [sic] criteria.").
26
   [17]   Plaintiffs' argument that Professor Foster should have discussed with analysts the basis for
27     their projections is therefore irrelevant.  Pls. Mot. at 18-20.  Professor Foster's point was not
       to vet the analysts' own projections, but rather to look at their projections and compare it
28     with that of Oracle's projections in an effort to determine whether Oracle's projections
       included macroeconomic information.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

15

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

misleading presentation of Professor Foster's textbook, and is contrary to the writings of Professor Foster and other well-known economists.  Even the very quote from Foster's book, *Financial Statement Analysis*, that plaintiffs purport to rely on indicates that analysts have a strong incentive to provide accurate information—"[a]nalysts also report that high penalties are placed on taking positions that diverge markedly from the consensus ***when the consensus subsequently turns out to be correct***."  Farthing Decl. Ex. 7 at p. 289 (emphasis added). Professor Foster noted in his textbook that analyst models are often more accurate than management projections because they have access to, and utilize, a wide-variety of macroeconomic and firm-specific information, and that if new, unexpected information is available (which occurs rarely), the analysts would revise their projections.  *Id.* at p. 274, 279. Professor Foster's textbook also specifically presented data that on average, analysts' forecasts are not biased in favor of management, generally offer pessimistic views, and provide projections that are lower than what management expects.  *Id.* at p. 277.  Professor Foster's findings that analysts tend to be more pessimistic than management have been verified by many more recent academic studies.[18]  Moreover, as noted in the opposition to Plaintiffs' Motion to Exclude the Testimony of Professor Hubbard, several noted economists regularly rely on analyst reports in forming macroeconomic and industry-level opinions.  *See*, *e.g.*, Farthing Decl. Exs. 4-5.  Indeed, even plaintiffs' own expert, Dr. Goedde, testified that he uses analyst reports to examine industry-level information.  *See* Farthing Decl. Ex. 6 pp. 7-8; Farthing Decl. Ex. 3 at 142:15 – 143:10.

Plaintiffs' arguments that Professor Foster's reliance on security analysts was not appropriate have no merit, and accordingly, plaintiffs' attempt to exclude Professor Foster's testimony on this ground fails.

### 3.  Professor Foster's Analyses Regarding Intra-Quarter Metrics Are Reliable.

Finally, plaintiffs contend that Professor Foster's opinions regarding certain intra-quarter metrics are unreliable.  These criticisms are based upon the flawed notion that because

---

[18]  *See, e.g.,* Farthing Decl. Exs. 8-9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

16

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1    Professor Foster's statistical analyses have not been used before in this particular context and

2    have not been peer reviewed they are somehow unreliable.  However, Professor Foster's

3    opinions are predicated on well-established statistical methods, are capable of duplication, and

4    are sufficiently reliable.

5             Using a regression analysis, Professor Foster assessed whether actual performance

6    in the first month and second month of the quarter would be predictive of overall quarter

7    performance.  Professor Foster's analysis was designed to test Dr. Goedde's assertion that the

8    hockey-stick effect "did not prevent Oracle from knowing that it would miss public guidance

9    until the last few days of the quarter."  Farthing Decl. Ex. 6 p. 50.  The implicit assumption in

10   Dr. Goedde's conclusion is that the actual revenue for the first month and second months of the

11   quarter had predictive value as to the total quarterly revenues.  *See id.* at 50-51, Ex. 25.

12   Professor Foster's analysis determined that the actual results from earlier months of the quarter

13   are not reliable predictors of latter months' revenues.  Britton (Foster) Decl. Ex. 1 ¶¶ 69-76.  This

14   conclusion is consistent with the deposition testimony of both Mr. Ellison and Mr. Henley.  *See*

15   Farthing Decl. Ex. 32 at 292:17-294:16; Ex. 33 at 365:23-366:1.  Plaintiffs claim that this

16   analysis lacks reliability because it has not been peer reviewed, lacks a known error rate, and was

17   prepared solely for the purpose of the litigation.  Pls. Mot. at 17-18.  This is disingenuous.  A

18   regression, such as the one performed by Professor Foster, is a standard statistical technique

19   commonly used by economists (including plaintiffs' own purported expert Dr. Goedde) to

20   determine the relationship between certain variables (in this case, the earlier months' revenues

21   and latter months' revenues).  *See* Farthing Decl. Ex. 6 at Exs. 23 and 25; Farthing Decl. Ex. 23

22   at 155:23-156:3.  The regression specifically used by Professor Foster is capable of duplication

23   and testing, further indicating its reliability.  *Daubert*, 43 F.3d at 1316.  Ultimately, plaintiffs'

24   criticism amounts to nothing more than the fact that Professor Foster had not previously used a

25   regression to determine the relationship between these two specific variables.  This does not

26   affect the reliability of Professor Foster's analysis, and it certainly does not warrant exclusion of

27   Professor Foster's opinions.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999)

28   ("*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in

LATHAM&WATKINS™   SV\639690.6
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1  every case.  Rather, the law grants a district court the same broad latitude when it decides *how* to

2  determine reliability as it enjoys in respect to its ultimately reliability determination.”).

3  Professor Foster also analyzed intraquarter pipeline growth (how the pipeline

4  changed during the quarter) in order to assess Dr. Goedde's conclusion that “[t]he behavior of

5  Oracle's Pipeline also informed defendants that Oracle was being adversely impacted by the

6  downturn in the economy and problems with its products.”  Farthing Decl. Ex. 6 pp. 36-37

7  (analyzing the decline in pipeline of $807 million over the course of the quarter and comparing it

8  to declines of $340-$548 million in prior quarters).  Dr. Goedde's conclusion logically relies on

9  an assumed *positive* relationship between intra-quarter pipeline growth and inter-quarter license

10  revenue growth.  Professor Foster tested Dr. Goedde's untested assumption, even though no

11  defendant testified that they used intra-quarter pipeline growth as a forecasting measure.

12  Professor Foster's test involved plotting the intra-quarter growth in the pipeline and the year-

13  over-year actual license revenue growth on a chart and determining a “best fit” line, using

14  regression analysis.  Britton (Foster) Decl. Ex. 1 ¶¶ 108-10, Figure 11.  If Dr. Goedde's

15  assumption was correct, the best fit line would need to have a statistically significant, positive

16  coefficient (revealing a positive slope of the best fit line).  However, the best fit line had a

17  negative coefficient, which rebuts Dr. Goedde's untested assertion that the decline in pipeline in

18  3Q01 informed defendants that Oracle's sales were being adversely affected.  *Id.* at ¶ 110.

19  Plaintiffs criticize Professor Foster's analysis because he did not report on the

20  statistical significance of his analysis and used a small data sample.  Pls. Mot. at 20-22.  Both of

21  these criticisms lack merit.  First, because the best fit line did not have a statistically significant

22  positive coefficient (but rather a negative coefficient), there was sufficient statistical evidence to

23  reject Dr. Goedde's hypothesis (regardless of the statistical significance of the negative

24  coefficient).[19]  Second, although it is true that more data points generally increases the robustness

---

25

26  [19]  Dr. Goedde asserted that the declining pipeline during Oracle's 3Q01 indicated that Oracle would have lower sales growth.  Farthing Decl. Ex. 6 at 36-37.  As Professor Foster noted, this assertion implies that there would be a positive relationship between the intra-quarter change in Oracle's Pipeline and quarterly sales growth—decreases in the Pipeline become associated with decreases in quarterly sales growth.  Britton (Foster) Decl. Ex. 1 ¶¶ 108-110.

27

28  Professor Foster examined the relationship between these two variables with a regression analysis using the data available to Dr. Goedde.  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\639690.6

18

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE
EXPERT TESTIMONY OF GEORGE FOSTER
Master File No. C-01-0988-SI (JCS)

1  of a statistical analysis, Professor Foster's finding of a negative coefficient based on his analysis

2  of the six most recent quarters of data prior to Q3 FY01 was sufficient evidence in and of itself

3  to reject Dr. Goedde's hypothesis.  Professor Foster's opinion regarding intraquarter pipeline

4  growth is reliable, and based on a scientific and statistical analysis utilizing accepted

5  mathematical methodologies.  It more than meets the *Daubert* criteria for admissibility.  *Kumho*

6  *Tire*, 526 U.S. at 149-50.

7  **IV.     CONCLUSION**

8           For the foregoing reasons, Defendants respectfully request that plaintiffs' motion

9  be denied.

10  Dated:  November 17, 2008                    Respectfully submitted,

11                                               LATHAM & WATKINS LLP

12

13                                               By:  _____/s/ Patrick E. Gibbs_____
                                                      Patrick E. Gibbs
14                                                    Attorneys for Defendants ORACLE
                                                      CORPORATION, LAWRENCE J.
15                                                    ELLISON, JEFFREY O. HENLEY,
                                                      and EDWARD J. SANDERSON
16

17

18

19

20

21

22

23  If Dr. Goedde's assertion were supported by the available evidence, the regression analysis
    would find a statistically significant positive coefficient on the independent variable (in this
    case, intraquarter change in the Pipeline).   A confidence interval around the coefficient is
24  computed to determine whether it is statistically significant.  Fortney Decl. Ex. 2 at 380-81.
    If the value zero is within the confidence interval then the researcher concludes that there is
25  no statistically significant relationship. *Id.*  Therefore, to conclude that a positive coefficient
    is statistically significant, the lower bound of the confidence interval would have to be
26  greater than zero.  Professor Foster found that the coefficient on the independent variable was
    negative.   Because the lower end of a confidence interval is less than the value of the
27  coefficient, the lower bound of the confidence interval in this case would have to be negative.
    Therefore, Professor Foster concluded that the available data could not support the assertion
28  that there was a positive relationship between the two variables.   No further statistical
    analysis or reporting was necessary to reach this conclusion.