LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
E-mail: peter.wald@lw.com

Attorneys for Defendants ORACLE CORPORATION,
LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and
EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone:  (650) 506-5200
Facsimile:  (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
  Patrick E. Gibbs  (SBN 183174)
140 Scott Drive
Menlo Park, California 94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail: sean.berkowitz@lw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION,<br><br>This Documents Relates To:<br><br>ALL ACTIONS | Master File No. C-01-0988 (SI) (Consolidated)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF R. GLENN HUBBARD**<br><br>Honorable Judge Susan Illston<br><br>Date:  January 9, 2009<br>Time: 9:00 a.m. |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

1

**TABLE OF CONTENTS**

2

Page

3

I.    INTRODUCTION .................................................................................................. 1

4

II.   PROFESSOR HUBBARD'S OPINIONS .......................................................... 3

5

III.  ARGUMENT ........................................................................................................ 4

6

    A.    Professor Hubbard Is Not Biased........................................................... 4

7

    B.    Professor Hubbard's Opinions Regarding Macroeconomic and
        Sector Specific Data Are Relevant and Reliable. .................................. 6

8

9

        1.    Professor Hubbard's Opinions Regarding the Recession
               Are Closely Tied to the Facts and Are Reliable. ...................... 6

10

        2.    Professor Hubbard's Opinions Regarding Competitors'
               Financial Performance and Securities Analysts' Opinions

11
               Are Reliable. ............................................................................. 8

12

        3.    Professor Hubbard's Opinion that Oracle's Customer Base
               Was Diversified Is Relevant and Reliable. .............................. 12

13

    C.    Professor Hubbard Is Qualified to Offer the Opinion He Made
14
        Regarding Oracle's Internal Forecasts, and that Opinion Is
        Reliable. ................................................................................................ 12

15

        1.    Professor Hubbard Is Qualified to Opine that Oracle's
16
               Statements Were Reasonable in Light of the
               Contemporaneous Information Available Through Oracle's
17
               Forecasting Process.................................................................. 13

18

        2.    Professor Hubbard's Opinion That Oracle's Statements
               Were Reasonable In Light of the Contemporaneous
19
               Information Available Through Oracle's Forecasting
               Process Is Based on the Record. .............................................. 14

20

        3.    Professor Hubbard's Opinion that Oracle's Forecasts Were
               Informed by Economic Data Is Based on Substantial
21
               Evidence................................................................................... 15

22

        4.    Professor Hubbard's Opinions Regarding Oracle's Internal
               Data Are Not Duplicative of the Opinions of Professor
23
               Foster....................................................................................... 16

24
    D.    Professor Hubbard's Opinions Assist the Trier of Fact and Should
        be Admitted........................................................................................... 17

25

IV.   CONCLUSION.................................................................................................... 18

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

# TABLE OF AUTHORITIES

Page

## CASES

*Carnegie Mellon Univ. v. Hoffman-LaRoche, Inc.*,
  55 F. Supp. 2d 1024 (N.D. Cal. 1999) ............................................................................. 8, 9

*Daubert v. Merrell Dow Pharms.*,
  43 F.3d 1311 (9th Cir. 1995) ............................................................................................ 7, 8

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993) ............................................................................................................ 14

*Folden v. Washington State Dep't of Social & Human Services*,
  744 F. Supp. 1507 (W.D. Wash 1990), *aff'd* 981 F.2d 1054 (9th Cir. 1992) .................... 5

*Guillory v. Domtar Indus., Inc.*,
  95 F.3d 1320 (5th Cir. 1996) ............................................................................................. 15

*Habecker v. Copperloy Corp.*,
  893 F.2d 49 (3d Cir. 1990) ................................................................................................ 17

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ...................................................................................... 13, 14

*SEC v. Lipson*,
  46 F. Supp. 2d 758 (N.D. Ill. 1999) .................................................................................. 17

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004) ............................................................................... 15

## RULES

Fed. R. Evid. 10b-5 ................................................................................................................... 5

Fed. R. Evid. 403 ..................................................................................................................... 17

Fed. R. Evid. 704 ..................................................................................................................... 17

Fed. R. Evid. 704(a) ................................................................................................................ 17

## I.      INTRODUCTION

Defendants' expert, Professor R. Glenn Hubbard, is Dean of the Graduate School of Business at Columbia University, former Chairman of the President's Council of Economic Advisers, and one of the nation's foremost experts on macroeconomics.  Professor Hubbard was asked by Defendants to opine on the outlook for Oracle's business sector and the U.S. economy during Oracle's fiscal year third quarter 2001 and whether Oracle's public guidance was reasonable and consistent with that outlook and Oracle's own internal data.  Professor Hubbard concluded that it was.

Plaintiffs now raise a litany of objections to Professor Hubbard, all of which lack merit and are based on a complete obfuscation of both the facts and Professor Hubbard's conclusions.  First, plaintiffs claim that Professor Hubbard is biased because he serves on the Committee on Capital Markets Regulation, which according to plaintiffs advocates the dissolution of the current securities class action process.  This is patently false—this bipartisan committee does no such thing.  Moreover, plaintiffs have not established that Professor Hubbard shares these alleged views, that his opinions were influenced by his alleged views, or that the alleged bias rises to a level warranting exclusion.

Plaintiffs next claim that Professor Hubbard's opinions concerning the then state of the economy and the indicia Hubbard examined are not relevant, not tied to the facts of this case, or not reliable.  Plaintiffs' argument ignores the reality that their own allegations have raised the issue of the effect of the economy on Oracle, and if and when macroeconomic and sector-specific economic issues affected Oracle's financial projections and subsequent performance.  It also ignores the fact that defendants repeatedly cautioned—in their public statements, on the earnings call itself, and in SEC filings—that a sudden economic downturn in the economy could impact its ability to meet its financial projections. This cautionary language brings the alleged false statements within the protections of the safe harbor provision of the PSLRA.  It is precisely for these reasons that in rendering his conclusions, Professor Hubbard examined a host of macroeconomic and sector-specific data, including market indices, economic indicators, competitor performance, analysts' "channel checks," analysts' own financial

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

projections for Oracle and its competitors, and when the country had entered into a recession. All of these data points are not only relevant, but precisely the data that a macroeconomist considers in assessing the outlook for Oracle's business and the economy in general.

Plaintiffs also seek to exclude Professor Hubbard's opinion that Oracle's statements were reasonable in light of Oracle's internal data. Plaintiffs argue that Professor Hubbard is not qualified to render such an opinion, did not consider certain information, and that his opinion is duplicative of another defense expert. Plaintiffs' argument is predicated on a misunderstanding of Professor Hubbard's opinions. Professor Hubbard is not offering an opinion regarding the quality of Oracle's forecasting process (which was analyzed by defendants' rebuttal expert, Professor George Foster), but rather opines that Oracle's forecasting process included macroeconomic information, and that the results of the forecasting process were consistent with Oracle's earnings guidance. Thus, many of plaintiffs' criticisms miss the mark. In any event, Professor Hubbard has extensive real-world experience in the forecasting and budgeting arena, further indicating the reliability of his opinions. Plaintiffs' claim that he failed to consider certain information in rendering his opinions is nothing more than an obfuscation of the factual record. At best, plaintiffs' claim merely suggests a dispute as to the conclusions of Professor Hubbard, not whether the methodologies employed by Professor Hubbard are reliable.

Finally, plaintiffs' claim that that the determination as to the reasonableness of defendants' statements should be left to a jury lacks merit. The law permits an expert to render an opinion that embraces an ultimate issue to be decided by the jury. Moreover, whether Oracle's guidance was consistent with macroeconomic, sector-specific, and internal financial data is precisely the type of issue that calls for expert testimony, particularly from someone with Professor Hubbard's qualifications. Professor Hubbard's opinions should be permitted as they will assist the trier of fact.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

## II.      PROFESSOR HUBBARD'S OPINIONS

Professor Hubbard is the Dean of Columbia University's Graduate School of Business.  He possesses a masters' degree and a Ph.D. in economics from Harvard University. From 2001-2003, Professor Hubbard served as Chairman of the President's Council of Economic Advisers, a three-member body which provides the President of the United States with economic analysis and advice on the development and implementation of a wide range of economic policy issues.  Declaration of Douglas R. Britton In Support of Plaintiffs' Motion to Exclude the Expert Testimony of R. Glenn Hubbard ("Britton (Hubbard) Decl.") (Dkt. 1492) Ex. 1 ¶¶ 5-6.  Professor Hubbard has been an advisor or consultant to the Board of Governors of the Federal Reserve System, the Federal Reserve Bank of New York, and many other governmental organizations. *Id.* at ¶ 6.  Professor Hubbard also has served as a director or advisor to numerous companies, including MetLife, Capmark Financial Corporation, ADP, KKR Financial Corporation, and many others.  *Id.* at Appendix A at 3.  Professor Hubbard has authored more than one hundred articles, as well as textbooks on money and financial markets, corporate finance, and principles of economics.  *Id.* at ¶ 5.

Professor Hubbard was asked to opine on the "outlook for Oracle's business sector and the U.S. economy during Oracle's 3Q FY2001" and whether "Oracle's public guidance during its 3Q FY2001 [was] consistent with the outlook for Oracle's business sector, the U.S. economy, and Oracle's own internal information."  Britton (Hubbard) Decl. Ex. 1 at 1. It is Professor Hubbard's opinion that:

> [E]arnings per share ("EPS") and other financial performance guidance Oracle issued on December 14, 2000 was reasonable and consistent with the business conditions Oracle faced at the time, including what was known about relevant sector-specific data and macroeconomic data.  It was also reasonable in light of Oracle's internal forecasting process and data at the time.
>
> Defendants' subsequent statements regarding Oracle's financial performance during 3Q FY2001 were reasonable in light of the relevant sector-specific and macroeconomic data available during the course of Oracle's 3Q FY2001 and the contemporaneous information available through Oracle's internal forecasting process.

*Id.* ¶¶ 10-11.  In rendering these opinions, Professor Hubbard examined and interpreted a host of sector-specific and general macroeconomic data prior to the issuance of Oracle's December 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

2000 guidance, and the data that was available during (and to a lesser extent, after) the quarter. *Id.* ¶¶ 53-156.   For instance, Professor Hubbard examined market participants, industry analysts, and trade press commentary regarding their outlook for Oracle, its competitors, and the sector generally.  *Id.* ¶¶ 53-85, 91-93. He examined analysts' financial projections for Oracle's third quarter as well as competitors' guidance and subsequent performance after Oracle announced its preliminary third quarter financial results.  *Id.* ¶ 66-81.  Professor Hubbard also examined the diversity of Oracle's customer base, general macroeconomic indicators and whether and when the country had entered a recession.  *Id.* ¶¶ 86-90, 94-156.  Professor Hubbard then examined Oracle's internal forecasting data, and determined whether the statements made by Oracle were consistent with those data.  *Id.* ¶¶ 157-210.

Professor Hubbard has in addition offered a number of rebuttal opinions to plaintiffs' purported forecasting and macroeconomics expert, Dr. Alan Goedde.  Specifically, Professor Hubbard disagrees with Dr. Goedde concerning the then-current economic conditions, and whether it was known or knowable that such information would have a negative impact on Oracle.  Britton (Hubbard) Decl. Ex. 4 at ¶¶ 8-9.  He concludes that while the information was more mixed during 3Q01 than in the recent past, the economy was still growing and was not in a recession.  *Id.*  ¶ 8.  Professor Hubbard also concludes, contrary to Dr. Goedde, that data reflecting macroeconomic conditions were incorporated in Oracle's forecasting process.  *Id.* ¶ 9.  Professor Hubbard does not, however, offer any opinions refuting Dr. Goedde's opinions about the quality of Oracle's forecasting process.  Rather, those opinions are refuted by defendants' other expert, Professor George Foster, a professor at Stanford University's School of Business and a well-known expert in the field of forecasting and budgeting.

## III.    ARGUMENT

### A.    Professor Hubbard Is Not Biased.

Plaintiffs' argument that Professor Hubbard is so biased that his opinions warrant exclusion is predicated on a complete misinterpretation of the purpose and findings of the Committee on Capital Markets Regulation, a committee co-chaired by Professor Hubbard.  More importantly, plaintiffs have not cited any evidence to suggest Professor Hubbard himself is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

biased, that his opinions in this matter are affected by any such alleged bias, or that the purported bias rises to a level that warrants exclusion.  Plaintiffs cannot cite any such evidence.

Plaintiffs contend that one of the "principal endeavors" of the Committee on Capital Markets Regulation is "to curb shareholder litigation," and that the committee's November 30, 2006 report "advocates the dissolution of the current securities class action process."  Pls. Mot. at 6.  This is false.  In fact, the committee's purpose is to "explore a range of issues related to maintaining and improving the competitiveness of the U.S. capital markets. [Its] objective is to recommend policy changes that should be made, or areas of research that should be pursued, to preserve and enhance the balance between efficient and competitive capital markets and shareholder protection."  Britton (Hubbard) Decl. Ex. 12 at vii.  As part of its numerous recommendations, the committee recommended clarifying uncertainties in the application of  Rule 10b-5 (such as the definition of materiality), but notably did not advocate curbing shareholder protections.  In fact, it clearly stated that it supported "continued civil, and where justified, criminal enforcement against individuals, including CEOs with whom the buck should stop."  *Id.* at xii.

Thus, plaintiffs' claim that Professor Hubbard has a "bias" against securities class actions, as evidenced by his service on the committee, is completely without merit.  Professor Hubbard testified that there are grounds for securities litigation.  Britton (Hubbard) Decl. Ex. 2 at 27:16-22.  Indeed, Professor Hubbard has previously testified for plaintiffs in securities matters, most recently in litigation related to the McKesson-HBOC merger.  *See* Britton (Hubbard) Decl. Ex. 1 at Appendix B; Britton (Hubbard) Decl. Ex. 2 at 9:22-10:24.  Even if plaintiffs had established such a bias, and that the bias affected Professor Hubbard's opinions (which plaintiffs have not), the law requires a showing of a bias far greater than even what plaintiffs' misguided arguments suggest before an expert's testimony will be excluded.  *See Folden v. Washington State Dep't of Social & Human Services*, 744 F. Supp. 1507 (W.D. Wash 1990) (permitting expert, who was a part owner of a nursing home in the plaintiff class and whose compensation was contingent upon the outcome of the case, to testify, but discounting the expert's testimony), *aff'd* 981 F.2d 1054 (9th Cir. 1992).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

Plaintiffs have not shown any bias on the part of Professor Hubbard, and certainly not the level of bias necessary to exclude his opinions.

**B.      Professor Hubbard's Opinions Regarding Macroeconomic and Sector Specific Data Are Relevant and Reliable.**

Plaintiffs attack only a small subset of the data points that Professor Hubbard relied upon in forming his opinions as either not relevant or unreliable:  when the economy went into recession, analysts' "channel checks," competitors' performance, and the breadth of Oracle's customer base.  Contrary to plaintiffs' protestations, each of these data points is indeed relevant and reliable, and are entirely appropriate for Professor Hubbard to consider.

**1.      Professor Hubbard's Opinions Regarding the Recession Are Closely Tied to the Facts and Are Reliable.**

Plaintiffs argue that Professor Hubbard's opinions regarding whether the United States economy was in a recession are not sufficiently "tied to the facts of this case" and should be excluded because Professor Hubbard did not determine whether a recession was "a necessary precursor" to Oracle missing its guidance.  *See* Pls. Mot. at 14-15.  Plaintiffs' argument is disingenuous and misunderstands (or misstates) the nature of Professor Hubbard's opinions regarding the recession.

As an initial matter, it is plaintiffs who have directly put the state of the economy, including whether the economy was in a recession, at issue.  Plaintiffs' own complaint specifically alleges that defendants made a series of false statements about the state of the economy and whether it was affecting Oracle's business.  *See, e.g.,* RSAC ¶¶ 45-49; 60-61; 65-66.  For instance, plaintiffs allege that on December 14 and 15, 2000 Oracle falsely stated that it was not seeing any impact of a softening economy on its business.  RSAC ¶ 45.  Plaintiffs allege that similar statements were made throughout the Class Period in an attempt to persuade investors that Oracle was on track to achieve 3Q01 guidance.  Plaintiffs' complaint, however, largely ignores the context in which those statements were made—for instance, defendants cautioned during the earnings call that if a recession occurred, it could affect Oracle's ability to meet financial projections.  *See, e.g.,* Defs.' Ex. 56 at 003218; RSAC ¶ 60 ("Obviously the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

economy is a wild card.  So if we went into a **recession** or there is a sharp downturn [in the economy], we could be impacted.").  Similar cautionary language was repeated by defendants in numerous other public statements, and in Oracle's SEC filings.  This cautionary language places the alleged false public statements within the protections of the safe harbor provision of the PSLRA.

Plaintiffs' argument is also based upon a misconception of Professor Hubbard's opinion on when the economy went into a recession.  Professor Hubbard did not analyze whether the occurrence of a macroeconomic recession was *the reason* why Oracle missed (or as plaintiffs put it, was a "necessary precursor to missing") its guidance.  Rather, Professor Hubbard examined when the economy went into a recession as part of his analysis in reaching his opinion that the alleged false statements concerning earnings guidance were "reasonable and consistent with business conditions Oracle faced at the time, including what was known about relevant sector-specific data and macroeconomic data."[1]  *See* Britton (Hubbard) Decl. Ex. 1  ¶¶ 10-11; *Id.* ¶ 23 (listing when the recession occurred as a basis for one of his two opinions); *see also* Britton (Hubbard) Decl. Ex. 4  ¶ 15.

Thus, Professor Hubbard's opinions will assist the trier of fact in understanding the state of the economy at the time of the alleged false statements.  His opinions are relevant and sufficiently tied to both plaintiffs' allegations regarding the alleged false statements concerning Oracle's guidance and the effect of the economy, as well as Oracle's safe harbor defense.  *See, e.g., Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (describing the "fit requirement" as the determination of whether the expert testimony is "relevant to the task at hand, . . . '*i.e.*, that it logically advances a material aspect of the proposing party's case.'").

---

[1]    It is worth noting that plaintiffs' own purported macroeconomic expert tried to render a similar opinion regarding macroeconomic conditions and their impact on the reliability of defendants' earnings guidance.  Dr. Goedde opines that before Oracle issued its guidance, Oracle faced a "major macroeconomic change."  Dr. Goedde, however, does not (and cannot) define what that term means, and offers no reliable, scientific way of proving that defendants indeed faced such a "major macroeconomic change."  *See* Declaration of Andrew M. Farthing in Opposition to Plaintiffs' Motions to Exclude Expert Testimony of R. Glenn Hubbard and George Foster ("Farthing Opp. Decl.") (Dkt. 1223) Ex. 3 at 79:6-84:23, 84:24-85:4.

Finally, plaintiffs attack the reliability of Professor Hubbard's analysis of when the recession occurred by claiming that he rendered this opinion solely for the purpose of the litigation. Plaintiffs rely only on their assertion that his conclusions are "contrary to the advice that Hubbard provided to the administration" during his tenure as Chairman of the President's Council of Economic Advisers. Pls. Mot. at 17. However, plaintiffs have no evidence of this, and indeed Professor Hubbard testified that he gave no such advice. Britton (Hubbard) Decl. Ex. 2 at 51:4-11 ("I said to [the President] that nothing in the data at that time could be construed as suggesting the economy was in a recession, I said that [] just simply wasn't a reasonable reading of the data.").[2]

Indeed, his opinions regarding when the recession occurred are entirely consistent with the findings of the National Bureau of Economic Research Business Cycle Dating Committee, a committee comprised of prominent economists that investigates peaks in the business cycle and deems when an economy is in recession. The committee chair concluded in April 2001 that the data did not yet warrant investigation of whether the economy was in a recession, and in fact the committee did not determine until November 2001 that the country had entered a recession beginning in March 2001 (after Oracle announced its earnings miss). Farthing Opp. Decl. Exs. 1, 2.

In sum, Professor Hubbard's opinions regarding the recession are reliable and supported by others, are well-connected to the facts of this case, and were not developed for the purpose of litigation. *See, e.g.*, *Daubert*, 43 F.3d at 1317 ("independent research, rather than research conducted for the purposes of litigation, carries with it the indicia of reliability"); *Carnegie Mellon Univ. v. Hoffman-LaRoche, Inc.*, 55 F. Supp. 2d 1024 (N.D. Cal. 1999).

### 2. Professor Hubbard's Opinions Regarding Competitors' Financial Performance and Securities Analysts' Opinions Are Reliable.

Plaintiffs argue that Professor Hubbard's opinions regarding competitors' financial performance, securities analysts' statements about those competitors, and securities

---

[2] Lacking any evidence, plaintiffs instead try and attribute comments made by President Bush to Professor Hubbard. But plaintiffs have not offered and cannot offer any evidence that Professor Hubbard shared those views or so advised the President.

LATHAM&WATKINS™
ATTORNEYS AT LAW
SILICON VALLEY

analysts' statements about Oracle are unreliable and irrelevant.  Plaintiffs contend that Professor Hubbard uses this information to "prove what was happening within Oracle at the time."  Pls. Mot. at 18.  Plaintiffs again miss the point as to why Professor Hubbard examined this data.

Professor Hubbard examined competitor performance and securities analysts' statements as part of his analysis in determining whether Oracle's public statements were consistent with then-known sector-specific and macroeconomic data.  Britton (Hubbard) Decl. Ex. 1 ¶¶ 13-15.  As set forth in Professor Hubbard's reports, securities analysts routinely examined macroeconomic and sector-specific indicators, and performed "channel checks" (conversations with customers and other industry players such as system integrators) to verify their opinions about current business conditions.  Before and during the Class Period, these analysts expressed optimism and determined that current economic conditions had not affected demand in the enterprise software sector.  *See, e.g., id.* ¶¶ 53-65.  For instance, Morgan Stanley conducted surveys of spending patterns in assessing whether or not companies were likely to reduce spending on information technology budgets in calendar year 2001.  Morgan Stanley reported as late as February 5, 2001 that "74% percent of CIOs surveyed said they have not yet reduced IT spending due to the current economic conditions—the same percentage in our previous survey."  *Id.* ¶ 60; *see also id.* ¶ 54 ("We've been asking several of the integrators (Andersen, PriceWaterhouseCoopers and KPMG) for signs of negative macroeconomic trends or more conservative budgets for next year, and none have detected any indicators to date in their pipelines") (*quoting* Morgan Stanley Dean Witter December 4, 2000 report).  Many of these analyst reports were available to Oracle at the time it issued its public earnings guidance, and thus it is another basis for Professor Hubbard's conclusion that Oracle's guidance was reasonable and consistent with the sector-specific and macroeconomic data that was known at the time.

Plaintiffs nonetheless suggest that it is unreasonable for Professor Hubbard to rely on these analyst reports and their channel checks and surveys as they are anecdotal evidence.  Pls. Mot. at 18-20.  Plaintiffs' suggestion is without merit, as noted economists, including the current Chairman of the Federal Reserve, regularly rely upon analyst reports to analyze macroeconomic and sector-specific conditions.  *See, e.g.,* Farthing Opp. Decl. Ex. 4 at 3, 5-6, 8-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

9; Farthing Opp. Decl. Ex. 5.  Indeed, even plaintiffs' own purported macroeconomic expert, Dr. Goedde, testified that he uses analyst reports, such as CIO reports and surveys, to examine industry-level information.  *See* Farthing Opp. Decl. Ex. 6 pp. 7-8; Farthing Opp. Decl. Ex. 3 at 142:15 – 143:10.  Dr. Goedde just chose not to do so in this case.

   Securities analysts also offered their own independent estimates of Oracle's third quarter projections, most of which projected throughout the quarter that Oracle would earn 12 cents per share in 3Q01.  Britton (Hubbard) Decl. Ex. 1 at Figure 7.  Professor Hubbard used these data points as further indicia of the reasonableness of defendants' statements.  *Id.* ¶¶ 66-69.  Nonetheless, plaintiffs contend that Professor Hubbard's opinions should be excluded because, according to cherry-picked portions of a textbook written in 1986 by defendants' other expert, Professor Foster, analysts' earnings projections are not always based upon detailed analyses, are not frequently revised, and may be biased or risk-averse.  Pls. Mot. at 19-20.  Plaintiffs also contend that the data are not reliable because Professor Hubbard did not analyze each of these analysts' conclusions.  *Id.*  Plaintiffs' argument again ignores the reason for Professor Hubbard's analysis—Professor Hubbard did not examine the data to show what was currently in Oracle's pipeline or to vet analysts' own models, but rather to determine whether defendants' statements were consistent with macroeconomic and sector-specific information known at the time.  Moreover, plaintiffs' criticisms of analysts' projections are based upon only a few select quotes in Professor Foster's textbook, when in fact the textbook specifically presented data that on average, analysts' forecasts are not biased in favor of management, generally offer pessimistic views, and provide projections that are lower than what management expects.  Farthing Opp. Decl. Ex. 7 at p. 277.  Professor Foster's findings that analysts tend to be more pessimistic than management have been verified by more recent academic studies.[3]  Professor Foster also noted that analyst models are often more accurate because they have access to and utilize macroeconomic and firm-specific information, and that if new, unexpected information is

---

[3]  *See, e.g.,* Farthing Opp. Decl. Ex. 8, S. Ramnath, et al., *Value Line and I/B/E/S Earnings Forecasts*. INTERNATIONAL JOURNAL OF FORECASTING 21, 185-198 (2005); Farthing Opp. Decl. Ex. 9, J. Jacob, et al., *Do Analysts at Independent Research Firms Make Better Earnings Forecasts?* (University of Colorado working paper 2003).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

available (which occurs rarely), the analysts would revise their projections.  *Id.* at pp. 274, 279.

Thus, plaintiffs' criticisms of analysts' forecasts are in fact unfounded, and in any event miss the

point as to why Professor Hubbard examined them.[4]

Plaintiffs' attack on Professor Hubbard's reliance on analyst commentary as to

Oracle's competitors and their financial performance is also misplaced.  Pls. Mot. at 18-19.

Professor Hubbard examined Oracle's competitors and their analyst coverage as it was indicative

of sector-specific information and macroeconomic data known at the time.  For instance,

Oracle's competitors, prior to Oracle's earnings guidance and during the Class Period, were

optimistic about the economy, and found (as Oracle did) that the slowing economy was not

affecting their business.  Britton (Hubbard) Decl. Ex. 1 ¶ 56.  The fact that several of Oracle's

competitors had subsequent earnings misses is yet another basis for Professor Hubbard's

conclusion that defendants' public statements were consistent with information known at the

time (otherwise these competitors would have revised their guidance downward before their

subsequent miss), and that the effect of the economy on the sector was not known until after

Oracle announced its results.  *Id.* ¶ 76.  Professor Hubbard's opinions are not unique.  Indeed,

immediately after Oracle's earnings miss, market participants speculated that if the economy and

the industry were to blame for Oracle's miss then they would expect to see Oracle's competitors

miss when they announced their earnings.  *Id.* ¶ 72 (citing March 16, 2001 analyst report of Banc

of America Securities).  That in fact happened.

In short, analysts' channel checks, their financial projections, and competitor

performance (as well as commentary regarding competitors) are all indicia that Oracle's

guidance was reasonable and consistent with macroeconomic and sector-specific information.

Plaintiffs have not cited any authority that such data should not be considered by economists or

are otherwise unreliable.  In fact, it is the exact type of information that economists, including

---

[4]   It is also worth noting that analysts' financial projections for Oracle, while generally
projecting 12 cents per share, had very different estimates for license revenue, some above,
and below Oracle's offered guidance.  *See* Farthing Opp. Decl. Exs. 10-22; summarized in
the chart attached as Exhibit A.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SILICON VALLEY

11

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

purported experts like Dr. Goedde, rely.

### 3. Professor Hubbard's Opinion that Oracle's Customer Base Was Diversified Is Relevant and Reliable.

Finally, plaintiffs attack Professor Hubbard's opinion regarding the diversity of Oracle's customer base. Plaintiffs contend that Professor Hubbard should have analyzed how one specific sector could have affected Oracle's achieving its public guidance, rather than examining the breadth of the customer bases and concluding that a broad customer base could protect revenues from being overly affected by one customer or single sector. Pls. Mot. at 21-22. Plaintiffs again misunderstand the nature of Professor Hubbard's opinions.

Professor Hubbard examined the diversity of Oracle's customer base to determine the reasonableness of defendants' statements concerning guidance and what effect the economy and sector-specific information was having on Oracle. The fact that the customer base was extremely broad suggests both that Oracle executives could expect to be insulated from sector-specific changes and that there was a reasonable basis for Oracle as a whole to not feel the effects of any slowdown within certain industries at the time the statements were made. To attack Professor Hubbard's conclusions, plaintiffs allege that statements made by Defendant Henley *after* the earnings miss that purportedly attributed the miss to a single sector. First, the statement by Defendant Henley made no such admission, but noted just that the dot-com sector "*played some part*" in the earnings miss. More importantly, ex-post evidence, with the benefit of hindsight, is irrelevant to the key issue of whether defendants statements were reasonable and consistent with information known at the time those statements were made.

Professor Hubbard's analysis of then-known sector-specific and macroeconomic conditions that formed the basis of his opinions is reliable and relevant, and should be permitted.

### C. Professor Hubbard Is Qualified to Offer the Opinion He Made Regarding Oracle's Internal Forecasts, and that Opinion Is Reliable.

Professor Hubbard examined Oracle's internal data to determine whether the statements made by defendants concerning Oracle's earnings projections were reasonable. Plaintiffs' arguments that Professor Hubbard's opinions should be excluded as he is purportedly

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

not qualified to render such an opinion, that his analysis ignores certain data, and that his opinions are duplicative of Professor Foster's are without merit.

### 1. Professor Hubbard Is Qualified to Opine that Oracle's Statements Were Reasonable in Light of the Contemporaneous Information Available Through Oracle's Forecasting Process.

As an initial matter, plaintiffs' argument that Professor Hubbard lacks the requisite expertise to offer these opinions borders on laughable. Professor Hubbard is the dean of one of the country's leading business schools and has served on the boards of directors or as an advisor to numerous companies. Professor Hubbard specifically testified that he has had "direct experience" in forecasting both while in government service and in his capacity as a corporate director. As a director, he has developed practical experience working with forecasts in a business environment, having been "called upon to take a look at the way [companies] do forecasts and to try to evaluate those forecasts." Britton (Hubbard) Decl. Ex. 2 at 35:3-17. Contrary to plaintiffs' spurious assertions, Professor Hubbard has real-world practical experience and is capable of rendering opinions regarding whether defendants' statements were consistent with Oracle's internal data and the macroeconomic conditions prevailing at the time. *See, e.g.*, Fed. R. Evid. 702 (requiring testifying expert to be "qualified as an expert by knowledge, skill, experience, training or education"); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) ("Rule 702 contemplates a broad conception of expert qualifications. Moreover the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert.") (citations omitted).

Moreover, plaintiffs' arguments that Professor Hubbard lacks the requisite expertise is predicated (once again) on a misunderstanding of the nature of his opinions. Professor Hubbard is not testifying as to the quality of Oracle's forecasting process (though he is qualified to do so). Rather, as explained above, Professor Hubbard's opinions relate to whether Oracle's statements were reasonable in light of macroeconomic, sector-specific, and internal data gathered from Oracle's forecasting process. Britton (Hubbard) Decl. Ex. 1 ¶¶ 5-6. To reach his opinion, Professor Hubbard looked at a variety of factors, including: i) the forecasting process, to

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

13

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

see whether it included macroeconomic information (it did); ii) how the "hockey-stick" affected the process; iii) Oracle's past performance vis-à-vis its forecasting process; and iv) whether the data in the forecast supported Oracle's guidance when using certain metrics (such as historical conversion ratios). *Id.* ¶¶ 157-210.  Given Professor Hubbard's experience both in forecasting (public and private) and in the field of economics and business generally, Professor Hubbard is qualified to testify.  *See, e.g., Hangarter*, 373 F.3d at 1015-16 (finding no error by the trial court in admitting expert with years of experience in the field of insurance, even though he lacked experience in evaluating bad faith claims).

> **2.     Professor Hubbard's Opinion That Oracle's Statements Were Reasonable In Light of the Contemporaneous Information Available Through Oracle's Forecasting Process Is Based on the Record.**

Plaintiffs next attack Professor Hubbard's conclusions because he purportedly failed to consider various "facts" that allegedly undermined Oracle's forecast process.  Plaintiffs' argument is not predicated on evidence, but merely on the unsupported assertions of their purported expert, Dr. Goedde.

First, as Professor Hubbard did not opine on the quality and reliability of Oracle's forecast process, plaintiffs' criticisms are misguided.  But in any event, plaintiffs' assertion that Professor Hubbard failed to consider various "facts" is unsupported by the evidence, and certainly does not render Professor Hubbard's opinions unreliable to the point they warrant exclusion.  *Daubert*, 509 U.S. at 591  (requiring expert testimony to be "sufficiently tied to the facts of the case"); *cf. Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (affirming exclusion of expert testimony based on facts that were indisputably wrong and altered by expert to support his position).  For instance, plaintiffs argue that Professor Hubbard failed to take into account a purported directive from Mr. Ellison to the sales force to "increase the risk (and amount) in the [field-level] forecast."  Pls. Mot. at 8.  In support of this allegation, plaintiffs cite to their own purported expert, but cite to no record evidence other than purportedly incorporating their motion for summary judgment) indicating that Mr. Ellison actually made such a directive, that such a directive was in fact carried out, or that the additional risk affected

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

the forecast.  Plaintiffs also suggest Professor Hubbard was aware of such a purported directive, but testified to the contrary.  Britton (Hubbard) Decl. Ex. 2 at 41:10-42:7.  It is not surprising that Professor Hubbard could not recall such a directive—the record evidence is clear that such a directive was not made and had not occurred.  *See* Britton (Hubbard) Decl. Ex. 6 ¶¶ 77-85, *citing* Ellison 9/21/06 Depo. at 423-27, Henley 11/16/06 Depo at 277-79, Minton 7/7/06 Depo. at 19, 101-12, Sanderson 7/25/06 Depo. at 269-71, 273-75.  Plaintiffs also suggest Professor Hubbard's opinions should be excluded because he did not consider the purported "fact" that the conversion ratio was becoming unreliable.  Pls. Mot. at 9.  Plaintiffs again do not cite any evidence of these "facts," but rather cite to the opinions of their own expert.  Plaintiffs also do not explain how these purported "facts" render Professor Hubbard's opinion about the reasonableness of defendants' statements unreliable.  At best, plaintiffs' criticisms ultimately are nothing more than a disagreement among experts, which is not a basis for exclusion.  *U.S. Info. Sys. v. IBEW Local Union No. 3*, 313 F. Supp. 2d 213, 231 (S.D.N.Y. 2004) (holding that disagreements among experts was not an issue of admissibility, but something to be addressed on cross-examination).[5]

### 3. Professor Hubbard's Opinion that Oracle's Forecasts Were Informed by Economic Data Is Based on Substantial Evidence.

As part of his analysis, Professor Hubbard concluded that Oracle's forecast process, by its nature, included economic and macroeconomic information.  Britton (Hubbard) Decl. Ex. 4 ¶ 51-60.  Professor Hubbard offered an example of how such information is incorporated within the forecast, explaining that an individual salesperson may talk to a customer and learn the customer's information technology initiatives, when a project will be budgeted, and related information, all of which relate to the economic circumstances of the client.  That information, whether or not understood in macroeconomic terms, would then be factored into the salesperson's assessment of whether Oracle is likely to make a sale to that client.  *Id.* ¶ 55.

---

[5] Plaintiffs also criticize Professor Hubbard for not considering the declaration of Ray Lane. Pls. Mot. at 10.  Plaintiffs have not indicated why it would be relevant to Professor Hubbard's opinions, and indeed as Professor Hubbard testified, the sentiments of a former employee who was not employed by Oracle during the class period are not relevant to whether defendants' statements during the class period were reasonable in light of Oracle's internal data at the time.  Britton (Hubbard) Decl. Ex. 2 at 117:15-121:5.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

Plaintiffs allege that this example "forms the basis of [Professor Hubbard's] opinions," and is speculative and thus unreliable.  Pls. Mot. at 11.

Contrary to plaintiffs' accusation, Professor Hubbard's example is supported by, and based upon, deposition testimony of many Oracle executives.  These executives specifically discussed how they interfaced with customers, and how customers' intentions with respect to purchasing decisions were reflected in Oracle's pipeline and forecast.  *See* Britton (Hubbard) Decl. Ex. 4 ¶¶ 56-60 (citing deposition testimony of Jay Nussbaum, Sarah Kopp, and Edward Sanderson; *see also* Britton (Hubbard) Decl. Ex. 1 ¶ 171-180.[6]

**4.**    Professor Hubbard's Opinions Regarding Oracle's Internal Data Are Not Duplicative of the Opinions of Professor Foster.

Plaintiffs also contend that Professor Hubbard's opinions concerning Oracle's forecast process are duplicative of Professor Foster's opinions, and thus should be excluded.  As described above, Professors Foster and Hubbard analyzed different subject matters:  Professor Hubbard opined on the reasonableness of defendants' statements and Professor Foster responded to plaintiffs' expert regarding the quality of Oracle's forecasting process.  *Compare* Britton (Hubbard) Decl. Ex. 1 ¶¶ 5-6 *with* Britton (Hubbard) Decl. Ex. 6 ¶ 12.  Of course, as plaintiffs indicate, both experts examined similar data points (such as how Oracle's forecasting process works), but they did so for different purposes and rendered different opinions. Even if their opinions were duplicative, plaintiffs have not and cannot demonstrate that the probative value of those opinions are "*substantially outweighed* by … considerations of … needless presentation of cumulative evidence."  Fed. Rule Evid. 403 (emphasis added); *cf.*

---

[6]    Plaintiffs also claim that Professor Hubbard's conclusion should not be permitted because plaintiffs were purportedly excluded from discovering evidence from the files of regional sales managers. Pls. Mot. At 11-12.  This argument lacks merit for multiple reasons.  First, plaintiffs have not explained why this discovery limitation impacts their ability to challenge Professor Hubbard's opinion on this issue.  Second, while defendants did not need to produce documents from the files of the regional sales mangers, plaintiffs did in fact receive documents sent by these sales managers, as they were included in some of the files of the more than 100 custodians whose documents were produced.  Moreover, plaintiffs have taken more than seventy deposition in this matter, and nothing precluded them from deposing the regional sales mangers or lower-level sales-people.  Plaintiffs just chose not to.  Ultimately, there has been no fundamental unfairness as plaintiffs had access to all the information upon which Professor Hubbard relied.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

DEFS.' OPP'N TO PLS.' MOTION TO EXCLUDE EXPERT
TESTIMONY OF R. GLENN HUBBARD
Master File No. C-01-0988-SI (JCS)

*Habecker v. Copperloy Corp.*, 893 F.2d 49, 53 (3d Cir. 1990) (holding that it was not harmless error to improperly exclude expert witness whose testimony would be duplicative of another expert).

**D.      Professor Hubbard's Opinions Assist the Trier of Fact and Should be Admitted.**

Finally, plaintiffs claim that Professor Hubbard's opinions should be excluded because they invade the province of the jury.  This throw-away argument is contrary to well-established law.

Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed. Rule Evid. 704(a).  The cases cited by plaintiffs are not to the contrary.  In *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1999), for example, the court rejected an expert's opinion as to what the defendant believed.  Professor Hubbard is not opining on what the defendants subjectively believed—a question for the trier of fact—but rather whether their statements are objectively reasonable in light of the macroeconomic, sector-specific and internal information available at the time.[7]  *See* Britton (Hubbard) Decl. Ex. 1 ¶¶ 10-11.  This is precisely the type of information that is ripe for expert opinion, particularly an expert with Professor Hubbard's qualifications.

Because Professor Hubbard does not possess any disabling bias, and because his opinions will "assist the trier of fact to understand the evidence or to determine a fact in issue," his opinions are admissible.  Fed. Rule Evid. 702.

---

[7]   If plaintiffs' argument were to have any merit, Dr. Goedde's opinions, including that defendants were informed that "Oracle was not likely to meet Public Guidance" would be similarly objectionable and would need to be excluded on this basis as well.  *See* Farthing Opp. Decl. Ex. 6 at p. 28.  Of course, Dr. Goedde's opinions should be excluded for reasons unrelated to the fact that he opines on an "ultimate issue."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

## IV.    CONCLUSION

For the foregoing reasons, defendants respectfully request that plaintiffs' motion be denied.

Dated:  November 17, 2008                Respectfully Submitted,

LATHAM & WATKINS LLP


By: _____/s/ Patrick E. Gibbs_____
Patrick E. Gibbs
Attorneys for Defendants ORACLE
CORPORATION, LAWRENCE J.
ELLISON, JEFFREY O. HENLEY,
and EDWARD J. SANDERSON

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY