LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
E-mail: peter.wald@lw.com

Attorneys for Defendants ORACLE CORPORATION,
LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and
EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone:  (650) 506-5200
Facsimile:  (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
  Patrick E. Gibbs  (SBN 183174)
140 Scott Drive
Menlo Park, California 94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail: sean.berkowitz@lw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988 (SI) (Consolidated)<br><br>CLASS ACTION<br><br>**DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON**<br><br>**Date:   January 9, 2009**<br>**Time:   9:00 a.m.**<br>**Judge:  Susan Illston** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Pages**

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD .......................................................................................... 2

III.    ARGUMENT ....................................................................................................... 7

    A.   Plaintiffs Misconstrue Mr. Yourdon's Opinions Regarding Suite
        11i's Quality But Do Not Meaningfully Dispute Them. ....................................... 7

        1.   Plaintiffs' Motion Reinforces Mr. Yourdon's Basic
            Opinions. ................................................................................................ 7

        2.   Plaintiffs' Arguments Undermine Their Own Expert, Mr.
            Hilliard. ............................................................................................... 10

    B.   Plaintiffs' Attacks On The Reliability Of Mr. Yourdon's
        Remaining Opinions Also Fail ......................................................................... 11

        1.   Mr. Yourdon's Opinions About Integration Are Reliable
            And Relevant. ...................................................................................... 11

        2.   Mr. Yourdon's Analysis Of The Challenged Statements Is
            Reliable And Relevant. ........................................................................ 15

        3.   Mr. Yourdon's Opinion Regarding Lost Deals Is Reliable. .................... 18

    C.   Mr. Yourdon Is Qualified To Provide Expert Testimony In This
        Matter. ............................................................................................................ 20

        1.   Mr. Yourdon Meets The Requirements Of Rule 702. ............................ 20

        2.   Plaintiffs' Specific Attacks On Mr. Yourdon Are Baseless. ................... 21

IV.     CONCLUSION .................................................................................................. 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Pages</u>

3
**CASES**

4
*Basic, Inc. v. Levinson,*
    485 U.S. 224 (1988) ............................................................................................ 13

5

6
*Calva-Cerqueira v. United States,*
    2003 U.S. Dist. LEXIS 15964 (D.D.C. 2003) ..................................................... 16

7
*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ..................................................................................... 4, 17

8

9
*Harner v. Prudential Securities,*
    785 F. Supp. 626 (E.D. Mich. 1992) ................................................................... 12

10

11
*Hawa Abdi Jama v. Esmor Corr. Servs.,*
    2007 U.S. Dist. LEXIS 45706 (D.N.J. 2007). ..................................................... 16

12
*In re Convergent Technologies Securities Litigation,*
    948 F.2d 507 (9th Cir. 1991) ............................................................................... 12

13

14
*In re Verifone Securities Litigation,*
    784 F. Supp. 1471 (N.D. Cal. 1992) ................................................................... 13

15

16
*Kennecott Copper Corp. v. Curtiss-Wright Corp.,*
    584 F.2d 1195 (2nd Cir. 1978) ............................................................................ 12

17
*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,*
    326 F.3d 1333 (11th Cir. 2003) ........................................................................... 19

18

19
*Rosenbaum v. Syntex Corp.* (*In re Syntex Corp. Secs. Litig.*),
    95 F.3d 922 (9th Cir. 1996) ................................................................................... 2

20

21
**RULES**

22
Fed. R. Evid. 702 ....................................................................................... 2, 5, 14

23
Fed. R. Evid. 703 ............................................................................................... 12

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

ii

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1     <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.    INTRODUCTION**

3        Plaintiffs' efforts to exclude the opinions of Defendants' software expert, Edward

4 Yourdon, merely reinforce Mr. Yourdon's fundamental point:  the extensive record in this case

5 does not provide any basis to reach generalized conclusions about Suite 11i's quality, much less

6 whether Suite 11i's quality was so unacceptable as to render all of Defendants' statements about

7 it false.  Indeed, Plaintiffs' attack on Mr. Yourdon primarily rests on a mischaracterization of his

8 core analysis and opinions.  Mr. Yourdon did not offer an affirmative opinion on the quality of

9 the Suite 11i software.  Rather, Mr. Yourdon provides the context necessary to understand and

10 evaluate statements about complex enterprise software like Suite 11i and then opines on the

11 proper *means of evaluating* the quality of such software.  Based on this methodology, Mr.

12 Yourdon determined that the anecdote-driven analysis of Suite 11i offered by Plaintiffs and

13 Plaintiffs' primary software expert, Brooks Hilliard, is meaningless.

14        Plaintiffs' Motion offers no evidence or analysis undermining Mr. Yourdon's opinions.

15 To the contrary, Plaintiffs' criticism essentially embraces Mr. Yourdon's methodology and then

16 applies it to their mischaracterized version of his opinions.  The irony is that Plaintiffs' attack is

17 far more effective against their own expert, whose opinions depend on his conclusions about

18 Suite 11i's quality, than against Mr. Yourdon, whose opinions do not.  The very questions put

19 forward by Plaintiffs in their motion (regarding Suite 11i's size, bug count, comparative bug

20 count, bug severity, *etc.*) are precisely the questions Mr. Hilliard cannot answer, notwithstanding

21 the broad opinions he offers regarding Suite 11i's "commercial quality" and "commercial

22 acceptability."

23        Not only do Plaintiffs fail to engage Mr. Yourdon's primary opinions, they repeatedly

24 undermine their credibility by omitting critical portions of Mr. Yourdon's testimony and Reports

25 and misrepresenting his actual methods and analysis.  Plaintiffs' mischaracterizations aside,

26 Plaintiffs raise no legitimate concerns about the admissibility of Mr. Yourdon's opinions.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

1

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

## II.      BACKGROUND

Mr. Yourdon is an acknowledged authority in the commercial software industry.  Indeed, each of Plaintiffs' two software experts have looked to Mr. Yourdon for guidance over the years.[1]  Defendants retained Mr. Yourdon to offer expert testimony regarding complex commercial software projects, including those involving Enterprise Resource Planning ("ERP") and Customer Relationship Management ("CRM") products such as Suite 11i.

Mr. Yourdon's testimony is relevant to Plaintiffs' claims because it provides necessary context for Defendants' public statements about Suite 11i.  *See* Docket No. 1501, October 20, 2008 Declaration of Edward Yourdon[2] ("Yourdon Decl.") at Exh. 1, Expert Report of Edward Yourdon ("Yourdon Report") at ¶ 10; *see* Advisory Committee Notes to Fed. R. Evid. 702 (encouraging the use of expert testimony to provide context to assist fact-finder); *In re Syntex Corp. Secs. Litig.*, 95 F.3d 922, 930 (9th Cir. 1996) (challenged statements must be viewed in context).  In addition, based on the appropriate commercial context, Mr. Yourdon explains the meaning of the technical terms used by the Defendants and evaluates whether Plaintiffs' rubric for evaluating whether Suite 11i met these descriptions is consistent with industry usage and practice.  Finally, Mr. Yourdon evaluates Plaintiffs' contention that Defendants' public statements about Suite 11i during the Class Period were false.

Mr. Yourdon's analysis initially addressed the Suite 11i-related statements identified by Plaintiffs in the operative complaint and in response to contention interrogatories:

- "[Y]ou can buy our complete E-Business Suite, where all the pieces are designed and engineered to fit together, and no systems integration is required.  It's up and running in months.  You get the savings in months.  It costs you less, and it takes less time to install" (Docket No. 155, Revised Second Amended Complaint ("RSAC") at ¶ 50);

- "There's no systems integration required.  No software modifications required to use our E-Business Suite" (RSAC at ¶ 51);

[1] Dr. Jensen's writings rely on Mr. Yourdon and cite him extensively (*see*, *e.g.*, Randall W. Jensen and Charles C. Tonies, eds., *Software Engineering* (1979) at 64, 89, 343), and Mr. Hilliard has sought Mr. Yourdon's technical advice in another matter (*see* Exh. 9, Hilliard Tr. at 101:12-18).

[2] Exhibits 1 and 2 are attached to the Declaration of Edward Yourdon, filed October 20, 2008, Docket No. 1501.  All other exhibits cited herein are attached to the Declaration of Rees Morgan in support of Defendants' Opposition to Motion to Exclude Expert Testimony of Edward Yourdon, filed August 27, 2007, Docket No. 1205.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

2

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

- "The suite is pre-integrated and fully interoperable out of the box, helping to lower consulting costs and time-to-value. . . .  Oracle sees robust demand for both its database and applications business.  Specifically, Sanderson noted demand for ERP is surprisingly robust while advanced planning and scheduling, CRM, and SCM products are also performing well.  Oracle says it is also seeing sustained demand for its database product, despite industry-wide concern over contracting IT budgets.  Sanderson noted two trends driving demand for databases is demand for the 11i applications that are typically bundled with the database as well as applications of other vendors that rely on the functionality of the Oracle database" (RSAC ¶ 58);

- "Oracle's CRM suite is both complete and integrated. . . .  No systems integration is required to install the Oracle CRM suite.  In fact, systems integration labor usually runs many times the cost of the software or the hardware needed to run the system - and the customer gets to pay for it.  To install the Oracle CRM suite, no systems integration is required.  And because the CRM suite consists of true Internet applications, every application works in every country, every major language and every major currency" (RSAC ¶ 63); and

- "We were the first company to use this eBusiness suite and in the very first year we put it in, we saved $1 billion. . . .  In fact, we recommend that you start with, you try a component of the suite and then you add it in. Now the nice thing is it's like Lego blocks. Once you have one piece in, the other pieces just snap together.  There's no systems integration required.  The key thing is, you can install just one piece and then again install another piece.  No systems integration.  You just basically turn it on or snap ib together. . . .  Plug and play.  It is absolutely, all the pieces within the suite are literally plug and play" (RSAC ¶ 68).

Exh. 1, Yourdon Report at ¶ 143.  Mr. Yourdon's analysis later was expanded to address the statements that Plaintiffs challenged for the first time in Mr. Hilliard's expert report.  Yourdon Decl. at Exh. 2, Rebuttal Expert Report of Edward Yourdon ("Yourdon Rebuttal") at ¶ 52.  Plaintiffs (and Mr. Hilliard) claim that all of Defendants' alleged statements were false because Suite 11i "suffered from" bugs and instability, which prevented the individual modules from sharing data, and required patches and consulting work to fix the defects.  Docket No. 1506, Plaintiffs' Motion for Summary Judgment Against Lawrence Ellison ("Plaintiffs' MSJ") at §§ II.A.2, III.C.4.

### A.    Mr. Yourdon's Opening Report

Mr. Yourdon explains that Plaintiffs' attack on Defendants' statements relies on an interpretation of them that is inconsistent with industry usage.  *Id.* at § IX.  To provide the background necessary to understand the statements, Mr. Yourdon describes the state of the enterprise applications industry before Suite 11i's release, which forms the backdrop against

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

LA\1911989.7

which the challenged statements were made.  *Id.* at § VI.3.  Prior to Oracle's release of Suite 11i,

no software vendor offered a single "suite" of enterprise software that included a wide range of

both front-office (CRM) and back-office (ERP) applications upon which a company could run its

business.  Instead, businesses and other organizations were required to build their own ERP and

CRM systems by selecting "best-of-breed" components – *e.g.*, the best payroll system, the best

inventory control system, and the best general ledger and accounting system – from a variety of

different vendors.  *Id.* at ¶ 70-72.  Because these various components were developed by

different companies (often as stand-alone units, including their own data storage modules) they

could not automatically share data when installed.  *Id.*  Instead, companies typically would have

to retain outside software consultants (often called "systems integrators") to write custom

programming to make the different modules of software to speak with one another.  *Id.* at ¶ 72.

This process, called "systems integration," often costs significantly more than the original

software itself.  *Id.*  As Mr. Yourdon explains, it is against this backdrop that Defendants told the

market that, because the individual applications within Suite 11i it were "designed and

engineered" to work together without any such custom programming, Suite 11i would

significantly reduce or eliminate systems integration.  *Id.* at ¶¶ 71-72, 127-29.  Mr. Yourdon's

review of contemporaneous reports regarding Suite 11i indicates that computer-industry

technical analysts – whose opinions and assessments were widely consulted and weighed both by

prospective customers and market analysts – shared this understanding of Defendants'

statements as well.  *Id.* at ¶¶ 160-66.

   In his Report, Mr. Yourdon notes that, in the context of the enterprise software industry,

each of the alleged statements quoted above boils down to an assertion that (1) Suite 11i's

modules were "complete," "integrated" (or "pre-integrated") and "interoperable" with one

another, compared with the best-of-breed offerings on the market and therefore (2) no "systems

integration" was required to enable modules of the Suite work with one another after it was

purchased.  Yourdon Report at § IX.2.2.  Mr. Yourdon further explains that the "evidence"

Plaintiffs rely on to challenge these statements is irrelevant because Plaintiffs (1) fail to compare

Suite 11i to the best-of-breed offerings available on the market and (2) confuse the issue of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

4

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1   aftermarket systems integration with implementation (*i.e.,* the necessary and laborious work

2   required for customers to install and use any enterprise software system). *Id.* at ¶ 144-45.  Mr.

3   Yourdon notes that, while Plaintiffs make suggestions as to additional ways in which Suite 11i

4   could work together (some of which are drawn from customer complaints or requests for

5   additional features), they never meaningfully dispute that the individual modules in Suite 11i

6   communicated, shared data, and otherwise worked together. *Id.* at ¶¶ 140-41.  Nor do they

7   dispute that Suite 11i was more complete, integrated, and interoperable than any best-of-breed

8   package that a customer might purchase in lieu of Suite 11i. *Id.* at ¶¶ 157-59.  Accordingly

9   Plaintiffs do not – and cannot – contend that Suite 11i required post-purchase systems integration

10  in order to make its applications work together, much less that Suite 11i required more post-

11  purchase systems integration than best-of-breed alternatives. *Id.* at ¶ 160.  While Plaintiffs can

12  show that Suite 11i required some effort to install (or "implement") or to customize, the same is

13  true for all complex business software, and Defendants never claimed otherwise. *Id.* at ¶ 161.

14  Accordingly, Mr. Yourdon concludes, Plaintiffs' evidence regarding work necessary to install or

15  customize Suite 11i is not relevant to whether systems integration was necessary.

16       Mr. Yourdon also opines that, in light of the way Suite 11i was designed and engineered,

17  Defendants' statements about Suite 11i were true. *Id.* at § IX.2.2.  In the course of forming this

18  opinion, Mr. Yourdon conducted a technical analysis of Suite 11i by reviewing the technical

19  reference documents describing the architecture, design, and implementation of the components

20  of Suite 11i, including the diagrams of the relationships, workflows, and data paths between the

21  different applications. *Id.* at § VIII.  Based on his review of the technical documentation, Mr.

22  Yourdon opines that no aftermarket software programming was required to enable the separate

23  modules of Suite 11i to work together, and thus no systems integration was necessary to

24  implement Suite 11i. *Id.* at ¶ 149.  In other words, unlike with best-of-breed alternatives,

25  customers did not have to write custom code for the modules to speak with each other. *Id.*

26       In addition, Mr. Yourdon opines that Suite 11i was "integrated" and "interoperable"

27  because all of its modules were developed by Oracle and based on a single data model. *Id.* at §§

28  VIII.1, IX.2.2.  In other words, all of the data was integrated and accessible in one place, rather

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

5

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    than contained in the separate silos inherent in multiple best-of-breed modules from different

2    vendors.  *Id.* at ¶ 126.  On that basis, Mr. Yourdon opines that Defendants' statements about

3    Suite 11i were true and that Plaintiffs' complaints regarding alleged quality problems did not

4    affect the truth of the statements.  Exh. 1, Yourdon Report at § IX.2.2.

5              **B.      Mr. Yourdon's Rebuttal Report**

6              Mr. Yourdon also submitted a rebuttal report in response to the opening report of

7    Plaintiffs' first software expert, Mr. Hilliard, which included the following six categories of

8    allegedly false statements: (1) statements regarding integration; (2) statements regarding support

9    for global operations; (3) statements regarding globally accessible real-time data; (4) statements

10   regarding extremely rapid implementation; (5) statements regarding comprehensive

11   functionality; and (6) statements regarding immediate availability.  Exh. 2, Yourdon Rebuttal

12   Report at ¶ 52.  Only the statements in the first category had been challenged by Plaintiffs in the

13   operative complaint or in response to contention interrogatories.

14             Mr. Hilliard never challenged any of these statements directly.  Rather, his conclusion

15   that the challenged statements were false relied on his opinion that the software was of extremely

16   poor quality.  *See* Exh. 5, Hilliard Report at § 3.  In response, Mr. Yourdon again explained that

17   Plaintiffs (and Mr. Hilliard) were ignoring necessary context regarding the statements –

18   including the accepted metrics for evaluating software quality – and instead basing their analysis

19   on "evidence" that professionals in the industry would not normally rely.  Exh. 2, Yourdon

20   Rebuttal Report at § IV.  Mr. Yourdon thus explained the appropriate methodology of evaluating

21   software quality and demonstrated that the evidence relied upon by Mr. Hilliard (and by

22   Plaintiffs) does not support a conclusion that Suite 11i suffered from unusual quality issues.  *Id.*

23   at §§ IV.3.2; VIII.  Accordingly, the alleged quality problems cited by Mr. Hilliard did not

24   render Defendants' alleged statements false.  *Id.* at § VII.  In addition, Mr. Yourdon drew upon

25   his technical analysis of the software, as well as a review of Oracle and customer records, to

26

27

28

LATHAM&WATKINS LLP  
ATTORNEYS AT LAW  
SAN FRANCISCO

LA\1911989.7

6

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE  
EXPERT TESTIMONY OF EDWARD YOURDON  
Master File No. C-01-0988-(SI)

1   conclude that Defendants' alleged statements regarding support for global operations (*id.* at

2   VI.2), rapid implementation (*id.* at § VI.3) and immediate availability (*id.* at § VI.4) were true.[3]

3   **III.   LEGAL STANDARD**

4        Under the Federal Rules of Evidence and the *Daubert* line of cases, the use of expert

5   witness testimony is appropriate to "assist the trier of fact to understand the evidence or to

6   determine a fact in issue" if "(1) the testimony is based upon sufficient facts or data, (2) the

7   testimony is the product of reliable principles and methods, and (3) the witness has applied the

8   principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; *see also Daubert v.*

9   *Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 593-94 (1993).

10  **IV.   ARGUMENT**

11      **A.   Plaintiffs Misconstrue Mr. Yourdon's Opinions Regarding Suite 11i's Quality But Do Not Meaningfully Dispute Them.**

12         **1.   Plaintiffs' Motion Reinforces Mr. Yourdon's Basic Opinions.**

13       Plaintiffs have framed their "product" claims as a dispute about whether Suite 11i's

14  quality was so poor that all of Defendants' statements about it are false.  *See*, *e.g.*, Docket No.

15  1506, Plaintiffs' MSJ at §§ II.A.2, III.C.4.  To that end, Plaintiffs set up a straw man – implying

16  Mr. Yourdon has offered an affirmative opinion on Suite 11i's quality – and then argue Mr.

17  Yourdon lacks sufficient evidence to reach an opinion regarding quality.  *See* Motion at 15-17.

18  Mr. Yourdon, however, has not offered an affirmative opinion on Suite 11i's overall quality;

19  rather, the focus of his opinions is the appropriate *means of evaluating* the quality of large

20  software, including software like Suite 11i.  *See* Exh. 1, Yourdon Report at § IV; Exh. 2,

21  Yourdon Rebuttal at §§ IV, VIII.  Applying this analysis, he further opined that Plaintiffs had not

22  appropriately evaluated Suite 11i's quality, and that the evidence Plaintiffs identify to support

23  their claims is insufficient to provide *any meaningful basis* for conclusions about Suite 11i's

24  quality.  *See* Exh. 2, Yourdon Rebuttal at § IV.

25

26

27  [3] Mr. Yourdon did not conduct additional analysis regarding alleged statements about globally accessible real-time data and comprehensive functionality because Mr. Hilliard did not identify

28  specific statements by Defendants about either topic or even explain his definition of either term. *See* Exh. 1, Yourdon Report at p. 21, fns. 46-47.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

7

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    Plaintiffs' Motion merely reinforces these conclusions.  Plaintiffs argue that Mr. Yourdon

2 cannot make any claims about Suite 11i's quality without knowing Suite 11i's size, the number

3 of bugs it experienced, evidence of bug numbers from other ERP vendors, the number of bugs

4 and other problems that should be expected and so on.  This is exactly Mr. Yourdon's point: he

5 explained that such information is necessary to properly evaluate software quality – but has not

6 been adduced in discovery in this case.  *See*, *e.g.*, Yourdon Decl. at Exh. 2, Yourdon Rebuttal at

7 § VIII; Docket No. 1205, Declaration of Rees Morgan ("Morgan Decl.") at Exh. 3, Yourdon Tr.

8 at 54:15-19.  Plaintiffs never proffer any reason why Mr. Yourdon's paradigm for evaluating

9 quality would be inappropriate or unreliable.  To the contrary, Plaintiffs' second software expert,

10 Dr. Randall Jensen, agrees with Mr. Yourdon as to the type of information necessary to properly

11 evaluate software quality.[4]  *See* Exh. 8, Jensen Tr. at 29:12-14, 33:22-34:1.  And by asking

12 systematic questions about software size, bug count, bug counts in similar software and other

13 metrics, Plaintiffs' Motion further endorses Mr. Yourdon's basic analytical approach.

14    Mr. Yourdon's analysis supports his opinions about Oracle's allegedly fraudulent

15 statements, including opinions about Suite 11i's integration, particularly as compared to best-of-

16 breed products.  For example, Mr. Yourdon opines that Suite 11i was a "technical success"  Exh.

17 1, Yourdon Report at ¶ 12.  This opinion is predicated on Mr. Yourdon's technical review of the

18 Suite 11i, which confirmed that Suite 11i's architecture was data integrated and workflow

19 integrated, including across the ERP and CRM boundary.  *See id.* at § VIII.  This is not in

20 dispute:  Plaintiffs concede that Suite 11i reflected a common data schema (*see* Exh. 9, Hilliard

21 Tr. at 157:24-158:4); have never offered any evidence that Suite 11i's modules required systems

22 integration to work together; and do not contest that Suite 11i was substantially more integrated

23 at purchase than the "best-of-breed" software packages to which Defendants compared Suite 11i

24 in the allegedly false statements (*see id.* at 87:6-7, 144:1-11).

25

26

27 [4] Dr. Jensen repeatedly notes that Mr. Hilliard's Report lacked this sort of information,
acknowledging that Mr. Hilliard had no basis to draw conclusions regarding the number of
defects in Suite 11i or whether Suite 11i's defect level was out of the ordinary, and that he did

28 not perform a sufficient investigation to opine on Suite 11i's quality or stability. *See* Exh. 8,
Jensen Tr. at 38:10-16, 83:7-14, 111:8-112:2.

LATHAM&WATKINS LLP  LA\1911989.7
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    The challenged statements compare Suite 11i to alternative enterprise applications

2    solutions, notably "best-of-breed" packages; they do not address "quality" or "commercial

3    acceptability" or represent that Suite 11i met a particular quality standard.  *See* Defendant

4    Ellison's Opposition To Plaintiffs' Motion For Summary Judgment Under Section 20A at §

5    IV.E.1, filed concurrently.  Suite 11i's quality is at issue only because Plaintiffs did not

6    undertake technical analysis of the software that would allow them to address the substance of

7    Defendants' statements.  Despite Plaintiffs' representation to the Court that they needed the

8    original version of Suite 11i software for their expert's review (and the subsequent production of

9    the software for that purpose), Mr. Hilliard decided that installing the software would be "of no

10   significant value" to his opinions.[5]  *Compare* Exh. 14 February 4, 2005 Discovery Hearing

11   Transcript at 22:3-9 *with* Exh. 5, Hilliard Report at § 3.1.  Likewise, he found the technical

12   documentation for Suite 11i – which shows how the products were designed and engineered –

13   was "not relevant."  Exh. 9, Hilliard Tr. at 149:17-20.  As a result, Plaintiffs attack the statements

14   indirectly, making claims about Suite 11i's overall quality based on various anecdotal evidence.

15   Mr. Yourdon's position on this issue is clear:  Plaintiffs never presented evidence establishing

16   that Suite 11i experienced any problems atypical for the release of sophisticated new software

17   products. *See* Exh. 1, Yourdon Report at § IV.  Plaintiffs' barrage of questions about the basis for

18   the quality opinions they invent for Mr. Yourdon reinforces this conclusion.  *See infra.* at §

19   III.A.2.

20       To further illustrate these points, Mr. Yourdon uses established industry data –

21   predominantly textbooks by Capers Jones, who Plaintiffs' software experts admit is "is a leading

22   authority in the world of software estimating, measurement, metrics, productivity and quality"

23   (Exh. 8, Jensen Tr. at 16:19-21) – to provide context for the number and severity of defects that

24   users were encountering with Suite 11i based on a typical size and footprint for ERP products.

25   As even one of Plaintiffs' experts concedes (*id.* at 35:4-36:9)**,** without such context, isolated

26   reports of problems are meaningless.  Indeed, the existence of metrics of the type Mr. Yourdon

27

28   _____
     [5] This does not stop Plaintiffs, however, from complaining that Mr. Yourdon "never used – let
     alone tested – the actual software …."  Motion at 2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

9

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-00988-(SI)

1    references illustrates why Plaintiffs' handful of anecdotal accounts of product problems sheds no

2    light on whether Suite 11i had typical defect levels:  all commercial software has defects,

3    including show-stopper defects, and Plaintiffs have made no effort to show that the defects in

4    Suite 11i exceeded the expected level for software of its size and complexity.[6]  Exh. 3, Yourdon

5    Tr. at 98:5-18; Exh. 8, Jensen Tr. at 35:4-6.[7]  Plaintiffs fail to explain why Mr. Yourdon's use of

6    industry metrics to put this abstract agreement into context is unreliable or inappropriate. *Cf.*

7    Advisory Committee Notes to Fed. R. Evid. 702 (encouraging the use of expert testimony to

8    provide context to assist fact-finder in drawing inferences).

9                2.    Plaintiffs' Arguments Undermine Their Own Expert, Mr. Hilliard.

10         Plaintiffs' arguments demonstrate why their own expert's affirmative conclusions about

11   Suite 11i's quality are unsupportable.  Unlike Mr. Yourdon, Mr. Hilliard purports to reach

12   specific conclusions regarding Suite 11i's quality.  *See, e.g.*, Exh. 5, Hilliard Report at §§ 5.1.6,

13   5.2.3, 5.3.4 (Suite 11i "never achieved minimally acceptable standards for commercial business

14   software.").  However, Mr. Hilliard fails to address any of the issues raised by Plaintiffs in their

15   Motion.  *See* Motion at 23 fn. 22 (asking "How does Yourdon define quality?"); *id.* at 2 (Mr.

16   Yourdon has "no reasonable basis to know either the size of the software or the number of

17   ────────────────────

18   [6] Plaintiffs desperately claim that Mr. Yourdon could not perform a comparative analysis
     because Mr. Yourdon does not "know *from any internal company material what those software*
     *companies were experiencing* in terms of functionality or bugs as it relates to their software

19   suites during that period of time?"  Exh. 3, Yourdon Tr. at 67:16-19.  But Mr. Yourdon relied on
     published studies based on the pooled internal data from exactly this sort of ERP vendor.

20   Plaintiffs offer no reason why this data is not reliable evidence of the expected levels of bugs in
     ERP software.  Nor, though they bear the burden of proof in this matter, did Plaintiffs make any

21   effort to obtain this sort of comparative discovery themselves.

22   [7] Though Plaintiffs complain of Mr. Yourdon's "wild speculation" regarding Suite 11's size and
     scope (Motion at 16-17), Mr. Yourdon provided a likely size for the software based on the
     number of areas of functionality included in the suite, the number of person-hours that went into

23   programming the software, and the length of the code – all compared to established industry
     metrics.  *See* Exh. 1, Yourdon Report at ¶¶ 90-91.  Ultimately, Mr. Yourdon's figure was merely

24   illustrative; he made clear that there is not sufficient information in the record to determine Suite
     11i's size, except that it was, as Plaintiffs' experts concede, "unquestionably large and complex."

25   *Id.* at ¶ 91, *see also* Exh. 4, Jensen Rebuttal at Conclusion #1; Exh. 9, Hilliard Tr. at 85:20-22.
     Capers Jones' books describe in detail the footprint of a "typical" ERP system, and Suite 11i

26   includes all modules in that footprint and more.  *See* Exh. 1, Yourdon Report at ¶ 79.  Analysts at
     the time described Suite 11i as combining "cover[ing]s the functionality of at least five (ERP,

27   CRM, SCM, HRMS, Service) enterprise class applications."  Exh. 6, Sharon Ward, *Oracle's E-*
     *Business Suite 11i*, HurwitzGroup Analyst Report, April 11, 2001 (NDCA-ORCL 110505-11) at

28   110506 (explaining that Suite 11i had "a substantial number of bug reports, but probably on par
     with the total number that would be found in any five such applications.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

10

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1   defects."), *id.* at 15 ("did not make any comparisons of Suite 11i…to any other software

2   available at the same time"), *id.* at 15 fn. 12 ("Nor did he compare the software of Suite 11i to

3   past releases of Oracle software"); *id.* at 16 ("did not … count the number of function points in

4   Suite 11i").  Mr. Hilliard admits he cannot answer any of these questions:  he does not know

5   Suite 11i's size, how many bugs it had, or how it compares to other software products.  *See* Exh.

6   9, Hilliard Tr. at 85:12-15 (does not have "any understanding" of Suite 11i's size); *id.* at  88:1-3

7   (does not know how many defects); *id.* at 87:6-7 (did not compare Suite 11i to *any* other

8   software).  Plaintiffs effectively prove Mr. Yourdon's opinion that absent such evidence there

9   can be no reliable conclusions about Suite 11i's quality – including by Mr. Hilliard.

10      **B.     Plaintiffs' Attacks On The Reliability Of Mr. Yourdon's Remaining
                  Opinions Also Fail.**

11          1.   <u>Mr. Yourdon's Opinions About Integration Are Reliable And Relevant.</u>

12               a.   *Plaintiffs' Reference To Immaterial Aspects Of Integration Is A
                      Red Herring.*

13

14      Plaintiffs complain that Mr. Yourdon did not consider user interface or functional

15   integration.[8]  But Mr. Yourdon explained in his opening report that he did not consider these

16   issues because Defendants' statements focused on Suite 11i's reduced need for systems

17   integration compared with best of breed products – and user interface and functional integration

18   are not relevant to systems integration.  *See* Exh. 1, Yourdon Report at § VI.6.2, (data integration

19   and workflow integration represent the "lion's share" of systems integration work); *id.* at 36, fn.

20   38 ("[User interface and functional integration] have very limited relevance to systems

21   integration or the market's understanding of whether an ERP system was properly described as

22   'integrated' or 'interoperable.'").  Plaintiffs' expert tacitly admits this in his opening report,

23   which does not mention functional integration and only references "a common user interface" as

---

24   [8] As discussed and defined in Mr. Yourdon's opening report, functional integration in the sense
     that he raised it has a very narrow meaning.  *See* Exh. 1, Yourdon Report at 36, fn. 38,

25   ("Functional integration is concerned with the behavior of a system (*e.g.*, if a system requires
     some program logic to calculate, for example, the sales tax on a purchased item, there should be

26   only one instance of that program logic stored somewhere in the system.").  It should not be
     confused with "work flow" integration, which is the ability of one part of the system to "talk" to

27   other related parts of the system in order to carry out "workflows" – *e.g.*, the flow from a
     customer order to the shipping of that order and associated inventory updates, to the generation

28   of a customer invoice for the order, to the collection of cash for the order, to updates to the
     general ledger to reflect the revenue generated by the order.  *See id.* at ¶ 104.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

LA\1911989.7

"sometimes" an aspect of overall integration.  Exh. 5, Hilliard Report at 63.  Plaintiffs never complained about functional or user interface integration before Mr. Yourdon explained he did not consider them relevant to the challenged statements, and still do not identify any customer complaints regarding user or functional interface integration.

To manufacture an issue with Mr. Yourdon's opinions on integration, Plaintiffs attempt to give the imply a concession by omitting (without designation) the bolded language below:

> Q.      Did you understand statements by the company that Suite 11i was integrated and interoperable to be excluding functional integration or user interface integration?
>
> A.      No, I did not.  **I did not do so.  But as I explained in footnote 38 at the bottom of page 36, I said that it had very limited relevance to systems integration overall or the market's understanding of whether an ERP was properly described as integrated, et cetera.  And that as I understood the situation at the time, that plaintiffs had not raised issues about those two other aspects or dimensions of integration.**

*Compare* Motion at 9 *with* Exh. 3, Yourdon Tr. at 237:4-15 (omitted testimony emphasized); *see also* Exh. 1, Yourdon Report at § VI.6.2.  Mr. Yourdon's full response to the question simply affirms the analysis in his Report and does not support Plaintiffs' argument.

        b.      *Mr. Yourdon's Opinions On Overall Integration Are Reliable.*

           (1)      Plaintiffs Mischaracterize Mr. Yourdon's Review Of Business Requirements.

Plaintiffs wrongly contend that Mr. Yourdon's integration analysis is flawed because he allegedly did not have an "intimate knowledge" of all of Suite 11i's business requirements and business flows.  Due to Suite 11i's size, Mr. Yourdon examined "a representative subset of common data entities…and associated business flows diagrams…in both the ERP and CRM components of Suite 11i" and specifically opined that Suite 11i "is integrated with respect to that representative subset."  Exh. 1, Yourdon Report at ¶¶ 138-39.  Plaintiffs do not claim that Mr. Yourdon's sample was unrepresentative, or that Mr. Yourdon's analysis was incorrect with respect to any examples he analyzed.  Plaintiffs merely misconstrue Mr. Yourdon's testimony to suggest that Mr. Yourdon did not have an understanding of any of the business requirements.  Particularly since Plaintiffs' expert did not review the business requirements documentation at all, even though his definition of "commercial acceptability" expressly references the meeting of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

12

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-00988-(SI)

1   customer requirements (*see* Exh. 5, Hilliard Report at § 3.2), it defies logic for Plaintiffs to

2   suggest Mr. Yourdon's decision to review a representative sample of these materials rather than

3   the entire universe of thousands of pages of requirements documents is fatal to his opinions.

4                           (2)    **Plaintiffs Wrongly Claim That Mr. Yourdon Dismissed
                                   Evidence Of Errors.**

5           Plaintiffs' complaint that Mr. Yourdon "summarily dismissed evidence of software

6   defects" in evaluating Suite 11i's integration is directly contradicted by Mr. Yourdon's Reports

7   and testimony.  The extensive list of documents Mr. Yourdon considered in forming his opinions

8   makes clear that Mr. Yourdon reviewed evidence of complaints from Oracle customers and

9   employees.  *See* Exh. 1, Yourdon Report at App. A.  However, as Mr. Yourdon explained,

10  customer complaints are common in ERP implementations and without context do not constitute

11  meaningful evidence of quality.  Plaintiff's other expert agrees with Mr. Yourdon's analysis on

12  this point.  Exh. 8, Jensen Tr. at 84:21-22 ("Q. Is the user's error report by itself typically enough

13  to know whether there is in fact a defect in the software?  A.  Not initially, no.").  Reasonably

14  concluding certain evidence does not support a conclusion is not the same as "dismissing" it.

15                          c.    *Plaintiffs Falsely Claim "Yourdon Never Assesses Whether Any
                                  Customer Installed a Full Suite – Much Less During The Class
16                                Period."*

17          Mr. Yourdon assessed successful customer implementations primarily to rebut Mr.

18  Hilliard's statements doubting the existence of such evidence.  *See* Exh. 9, Hilliard Tr. at 58:25-

19  60:6.  Now that Mr. Yourdon presented evidence of many successful implementations, Plaintiffs

20  falsely claim complain "[Mr.] Yourdon Never Assesses Whether Any Customer Installed a Full

21  Suite – Much Less During The Class Period."  *See* Motion at 20.  Mr. Yourdon, however,

22  discussed in detail POSCO's successful, multinational implementation of the *full suite* in his

23  Rebuttal Report.  *See* Exh. 2, Yourdon Rebuttal Report at ¶ 181.  Plaintiffs also claim that the

24  companies "[Mr.] Yourdon does list as 'success stories' in his rebuttal report are not running

25  ERP and CRM modules together, and were 'successful' only after the Class Period".  Motion at

26  20.  This claim is also wrong.  As Mr. Yourdon testified, and discussed in his Rebuttal Report,

27  there are many examples of customers running both ERP and CRM modules during the class

28  period and after.  *See* Exh. 2, Yourdon Rebuttal Report at § VII.1.4; *see also id.* at fns. 147-153

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

13

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    (citing "Go-Live Reports" including customers live on ERP and CRM, such as Aero Fulfillment,

2    BellSouth, Chevron RMX, Marconi Fibreway, Netpliance, Parachute.net, Wincor Nixdorf).

3            In any event, Plaintiffs' narrow focus on implementations of the "full suite" during the

4    Class Period[9] is misleading.  Suite 11i contained many industry-specific modules, and it is not

5    realistic to expect most – or even many – customers to install every module, even if they install

6    the full functional footprint.  Indeed, Defendants encouraged customers to start with part of the

7    suite and add other modules later.  *See* Exh. 12, February 13, 2001 Transcript of AppsWorld

8    2001 Larry Ellison Press Conference (NDCA-ORCL 306962-86) at 306974-75.  Nor is it

9    reasonable to expect many customers to have achieved such an implementation in the 10 months

10   between the first release of Suite 11i and the close of the Class Period.  Plaintiffs' own expert

11   acknowledges that ERP implementations "historically has taken customers a year or more to

12   implement; six months would be extremely fast."  *See* Exh. 5, Hilliard Report at § 4.2.4.  It is

13   thus a remarkable accomplishment that Oracle had over 350 customers live on some or all of the

14   suite prior to the end of the Class Period.[10]

15

16

17

18

---

19   [9] Plaintiffs' allegation that "Mr. Yourdon did not appear to be aware that there was an
     established Class Period in the case" is both misleading and irrelevant.  *See* Motion at 21.  Early
20   in Mr. Yourdon's deposition Plaintiffs counsel represented that the "relevant time period" for his
     questions was "June 2000 to June 2001."  Exh. 3, Yourdon Tr. at 43:7-9.  Later in the deposition,
21   Mr. Yourdon incorporated this representation into a response, noting he was unsure whether the
     Class Period was "December 14th, 2000 to February 26th, or whether it is, as you had suggested
22   earlier, June 1st to June 1st" (Exh. 3, Yourdon Tr. at 129:5-7).  In any event, Mr. Yourdon's
     reports make numerous references to the Class Period in this case (*see*, *e.g.*, Exh. 1, Yourdon
23   Report at ¶ 212, Exh. 2, Yourdon Rebuttal Report at ¶¶ 8, 33, 148, 174).

     [10] Plaintiffs attempt to cast doubt on Mr. Yourdon's references to "live" customers by citing a
24   footnote in Mr. Yourdon's report stating that, "[a]s is common in the industry Oracle listed a
     customer as 'live' when it has fully implemented at least one module of Suite 11i."  *See* Motion
25   at 19 (*citing* Yourdon Report at fn. 277).  But the documents that Mr. Yourdon cites specifically
     identify how many and which modules each customer has implemented.  *See* Exh. 2, Yourdon
26   Rebuttal Report at ¶ 113, fns. 147-53 (citing *R11i Customer Information* summaries, known at
     Oracle as "Go-Live Reports").  As these documents indicate, most customers were live on
27   multiple modules, and the number of live customers (as well as the number of modules any given
     customers had implemented) increased significantly over the course of the Class Period.  *See*
28   Exh. 13, *R11i Customer Information* summaries.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7                                    14                    DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
                                                                     EXPERT TESTIMONY OF EDWARD YOURDON
                                                                     Master File No. C-01-0988-(SI)

2. <u>Mr. Yourdon's Analysis Of The Challenged Statements Is Reliable And Relevant.</u>

a. *Mr. Yourdon Appropriately Viewed The Statements As An Expert.*

Plaintiffs argue that Mr. Yourdon should have assessed Defendants' statements from the perspective of investors generally rather than a person who is familiar with the software industry. Motion at 18-19; *see also* Exh. 9, Hilliard Tr. at 228:10-231:11.  Given that many (maybe most) of the prospective jurors are likely investors, Plaintiffs are really arguing that Mr. Yourdon should have evaluated the material from the perspective of the very audience his testimony is intended to educate.  Plaintiffs do not explain the basis for this proposition, nor do they explain how a technical expert would accurately evaluate technical statements about "pre-integration," "systems integration," and "best of breed" products from a lay perspective, let alone what value such an analysis would add.  Nor does the law require such an analysis.  *See In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991) ("[A]llegedly false statements cannot be read in a vacuum; rather, they must be read in context.");  *see also Kennecott Copper Corp. v. Curtiss-Wright Corp.,* 584 F.2d 1195 (2nd Cir. 1978) ("Corporations are not required to address their shareholders like children, for fear of later 'nit-picking' by plaintiffs or courts."); *Harner v. Prudential Sec.*, 785 F.Supp. 626, 641 (E.D. Mich. 1992) ("The law assumes a certain level of comprehension and judgment among investors."); *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1482 (N.D. Cal. 1992) (noting role of analysts).

Mr. Yourdon's analysis of Oracle's discussion of software-related terms from the perspective of someone who understands the industry is appropriate, as IT professionals comprised the vast majority of decision-makers regarding the purchase of Suite 11i and were the primary persons evaluating the software at customer sites.  In any event, as a review of Mr. Yourdon's full testimony indicates, this is another instance when Plaintiffs can only support their claim by truncating Mr. Yourdon's full response.  Plaintiffs acknowledge that "Defendants consider their 'major audiences' to be 'industry analysts, financial analysts/investors, partners [and] OAUG Board" (Motion at 18) – but incomprehensibly claim that these are not the individuals Mr. Yourdon considered in forming his opinion.  Plaintiffs omit from their quotation Mr. Yourdon's testimony explaining that he in fact considered all of these audiences:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

15

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    I'm limiting it to people who are involved in, work in or are
2    associated with the IT industry **which, in my opinion, would
     include some of these analysts that I've mentioned who, in my
3    opinion, have some degree of expertise with regard to evaluating
     and assessing products.**

4    *Compare* Motion at 18 *with* Exh. 3, Yourdon Tr. at 82:24-83:4 (omitted testimony emphasized).

5                 b.    *Mr. Yourdon Appropriately Assessed The Accuracy Of The
                        Statements.*

6         Plaintiffs' nit-picking over whether Mr. Yourdon opined that the challenged statements

7    are "accurate" or "fundamentally true" or "accurate in context" elevates form over substance.

8    Mr. Yourdon's various word choices merely reflect the same common sense that is embodied in

9    the legal standard for an actionable misstatement:  the securities laws punish only material

10   misstatements.  *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988).  Likewise, Plaintiffs'

11   attempt to impugn Mr. Yourdon's credibility for having reasonably noted that he considered

12   Defendants statements accurate "in the context that they were made and for the audience for

13   whom they were intended" is ludicrous.  Exh. 3, Yourdon Tr. at 75:13-17.  Plaintiffs' claim is

14   particularly specious given that Plaintiffs do not identify any aspect of the statements that Mr.

15   Yourdon viewed as inaccurate.

16                 c.    *Plaintiffs' Contention That Mr. Yourdon "Failed To Consider The
                        Majority Of The Alleged False And Misleading Statements" Is
17                      Unfounded.*

18        Plaintiffs allege Mr. Yourdon "failed to consider the majority of the alleged false and

19   misleading statements." Motion at 19.  This statement is also wrong.   Mr. Yourdon's Report

20   addresses every challenged statement regarding Suite 11i that Plaintiffs identified in their

21   operative complaint or responses to contention interrogatories.[11]  *Compare* Exh. 1, Yourdon

22   Report at § IX.1 *with* Exhs. 10-11, Responses to Contention Interrogatories, Revised Second

23   Amended Complaint ("Operative Complaint").  Plaintiffs' Motion identifies only one statement

24   that they claim Mr. Yourdon failed to consider – namely, one regarding whether customers saved

25

26

27   ---
     [11] In his report, Mr. Hilliard challenged for the first time additional statements that had never
     been included in any of Plaintiffs' complaints or discovery responses, such the statement that
28   Suite 11i was "available," and Mr. Yourdon addressed those new allegations in his Rebuttal
     Report.  *Compare* Exh. 3, Hilliard Report at § 4.1 *with* Exh. 2, Yourdon Rebuttal Report at § V.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

16

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    money by implementing Suite 11i.  Motion at 19.  But Mr. Yourdon addressed that issue both in

2    his Reports and at deposition:

> [B]ased on my experience with the cost of implementation as
> provided by consulting firms…which is quoted in the previous
> paragraph of Mr. Ellison's statement, usually associated with a
> great deal of integration activity, after-the-fact integration activity,
> which generally is far more expensive than the cost of the ERP
> product itself.  Indeed, as someone has indicated here in some
> material that I've cited, often as much as ten times more expensive.
>
> So I would certainly be willing to make such, or offer such an
> opinion [that customers saved money by implementing Suite 11i]
> as having been fundamentally true with the understanding that
> there might be the occasional outlier or anomaly where perhaps the
> implementation savings were smaller or nonexistent, but it would
> be an extreme exception, as opposed to the general case.

10   Exh. 3, Yourdon Tr. at 95:10-25; *see also* Exh. 2, Yourdon Rebuttal Report at ¶ 175.  Plaintiffs

11   never challenge the fact that the lion's share of expense in a typical ERP implementation comes

12   from systems integration.  They also concede that systems integration is not required between the

13   various elements of Suite 11i.  In short, they do not deny the key components of this aspect of

14   Mr. Yourdon's analysis (which he laid out in detail in his testimony), and offer no serious basis

15   to contradict (much less to exclude presentation of) the obvious conclusion that follows.

16              d.     *Mr. Yourdon Appropriately Assessed "Plaintiffs' Evidence"*

17          Plaintiffs falsely accuse Mr. Yourdon of basing his opinion on nothing more than the

18   operative complaint.  But Mr. Yourdon focused on "Plaintiffs' evidence" – primarily identified

19   in the Operative Complaint and Plaintiffs' responses to contention interrogatories – as the best

20   articulation and evidence Plaintiffs could muster in support of their case.  *See* Exh. 1, Yourdon

21   Report at App. A.  In any event, as is clear from the extensive citations and appendices to his

22   Reports, Mr. Yourdon undertook a comprehensive review of the evidence in this case – well

23   beyond the materials Plaintiffs identified in their complaint, discovery responses, and expert

24   reports.  *Compare* Exh. 1, Yourdon Report at App. A (listing over 60 depositions and 1800

25   documents relied upon by Mr. Yourdon) *with* Motion at 12, fn. 10 (claiming Mr. Yourdon's

26   "investigation was comprised solely of looking at plaintiffs' revised second amended complaint

27   despite extensive discovery.").  Plaintiffs' Motion does not identify *any* contemporaneous

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

17

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-00988-(SI)

1   evidence that Mr. Yourdon failed to consider.[12]  Rather, the thorough nature of Mr. Yourdon's

2   review is confirmed by his reference to the vast majority of evidence cited in Mr. Hilliard's

3   Report *prior to his receipt of Mr. Hilliard's report*.[13]  *See* Exh. 1, Yourdon Report at App. A.

4              3.    <u>Mr. Yourdon's Opinion Regarding Lost Deals Is Reliable.</u>

5                  a.    *Mr. Yourdon Has A Sufficient Evidentiary Basis For His Opinion Regarding Lost Deals.*

6         Mr. Yourdon appropriately offers a narrow opinion that, based on his 40 years of

7   experience, the record in this case does not support the inference that Oracle lost deals included

8   in its 3Q 2001 forecast due to unknown or unexpected product quality issues product problems.

9   Mr. Yourdon does not, as Plaintiffs suggest, offer an opinion as to "what caused Oracle to miss

10   its third quarter 2001 guidance or provide analysis on Oracle's pipeline."  *Compare* Motion at

11   22-23 *with* Exh. 1, Yourdon Report at § XI.  His opinion is grounded in a substantial sampling of

12   deals to assess whether product problems caused deals to be lost.  Plaintiffs cannot show that Mr.

13   Yourdon's "methodology of taking a sample is scientifically flawed. " *See Hawa Abdi Jama v.*

14   *Esmor Corr. Servs.*, 2007 U.S. Dist. LEXIS 45706 (D.N.J. 2007) (denying *Daubert* motion).

15         Mr. Yourdon reviewed documents pertaining to over 100 deals included in the 3Q 2001

16   forecast,[14] including all deals specifically identified by Plaintiffs and all deals worth over $2

17   million.  Though Plaintiffs suggest that it was inappropriate to look only at large deals, they do

18   not provide any reasoned basis for believing that large deals have some systematic bias with

19

20   [12] Plaintiffs have identified only a single email that Mr. Yourdon did not recall reviewing.  That email was an nonetheless identified by Mr. Yourdon in the Appendix of materials which he
21   reviewed and relied.  *See* Exh. 1, Yourdon Report at App. A.  Mr. Hilliard had far more memory failures of this variety than did Mr. Yourdon.  *See* Exh. 9, Hilliard Tr. at 44:25-45:3, 217:3-7;

22   [13] Indeed, though Mr. Hilliard claims to have had "access" to the entire record (though he cannot or will not identify the specific documents he reviewed and relied upon) the only material
23   Plaintiffs point to that was cited in Mr. Hilliard's Report but does not appear on Mr. Yourdon's Appendix of relied upon materials is *Softwar*, a popular biography of Larry Ellison penned by an
24   English journalist with no personal knowledge of the underlying facts of this case.  Although Mr. Yourdon read *Softwar* and cited it in his Rebuttal Report, he did not rely on it for the truth of the
25   matters stated therein because experts are not permitted to rely on inadmissible hearsay materials unless they are of a type normally relied on by experts in the field.  *See* Fed. R. Evid. 703.
26   *Softwar* is not the sort of information software experts normally rely on in assess software integration, functionality, or quality.  Instead, Mr. Yourdon relied on Mr. Ellison's sworn
27   testimony regarding the specific *Softwar* issues that Plaintiffs raised.

28   [14] Mr. Yourdon appropriately relies on Glenn Hubbard in order to understand which potential deals were included in Oracle's pipeline.  *See Calva-Cerqueira v. United States*, 2003 U.S. Dist. LEXIS 15964, 49-50 (D.D.C. 2003) (experts are "permitted to rely on other expert opinions").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

18

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1   respect to the questions at issue here.   In fact, Mr. Yourdon explained at deposition that larger

2   deals are, if anything, ***more*** likely to fall through due to quality issues.  Exh. 3, Yourdon Tr. at

3   192:2-12.   The adequacy of Mr. Yourdon's sampling is supported by the fact that Plaintiffs *still*

4   provide no evidence that specific deals were lost over product problems or that might otherwise

5   undermine his conclusion.

6        Plaintiffs grossly distort Mr. Yourdon's statements with their claim that Mr. Yourdon's

7   opinion is unreliable because "[h]e admits to not having read the relevant testimony."  Motion at

8   22.  As Mr. Yourdon testified and as his Report shows, he read the depositions of forecasting

9   witnesses relevant to his inquiry – along with hundreds of documents regarding the sampled

10  deals.  Given the limited nature of his opinions, Mr. Yourdon noted he did not review "the broad

11  range of all such depositions in other financial and forecasting and accounting matters," as there

12  no need for him to do so.  Exh. 3, Yourdon Tr. at 19:20-21.  Rather, he reviewed "a limited

13  number of such depositions, which I did, and which are cited in my report."  *Id.* at 19:23-25.

14  Consistent with this testimony, Appendix A to Mr. Yourdon's Report makes clear that he

15  reviewed the deposition transcripts and exhibits of the forecasting witnesses relevant to his lost

16  deals opinions, including George Roberts, Jay Nussbaum, Edward Sanderson, and Michael

17  Cochran.  Plaintiffs never identify any other material Mr. Yourdon should have considered.

18        b.   *Plaintiffs' Criticisms Ignore The Limits Of Mr. Yourdon's Opinion.*

19        Plaintiffs' challenge to Mr. Yourdon's opinion regarding lost deals again relies on a

20  misunderstanding of his opinions.  His process for reaching that opinion is fully explained and

21  may be recreated and tested.  *See Daubert*, 509 U.S. at 593-94.  Plaintiffs do not challenge his

22  methodology; they simply complain that the opinion could consider more deals – without

23  identifying any inadequacy in Mr. Yourdon's sample.  Plaintiffs' complaint that Mr. Yourdon

24  only reviewed deals included in the forecast, claiming that "some people just never picked up the

25  phone" after hearing about product problems misses the point.  *See* Motion at 22, Exh. 3,

26  Yourdon Tr. at 104:21-25.  Plaintiffs may argue that deals not included in the forecast are

27  relevant to loss causation (though they have not identified any evidence to support this

28  proposition) but that is no basis to exclude Mr. Yourdon's more limited conclusion.  Mr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

19

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    Yourdon did not offer a broad opinion on lost causation.  He offered a very specific opinion on

2    deals in Oracle's pipeline.  Plaintiffs' vague allusions to other potential customers that were not

3    included in the forecast has nothing to do with whether Mr. Yourdon's analysis is proper on its

4    own terms.

5          C.    **Mr. Yourdon Is Qualified To Provide Expert Testimony In This Matter.**

6                1.    <u>Mr. Yourdon Meets The Requirements Of Rule 702.</u>

7          Mr. Yourdon is a preeminent authority in the software industry, qualified to testify as an

8    expert here by virtue of his education, knowledge, skill, and experience.  *See* Fed. R. Evid. 702.

9    Mr. Yourdon pioneered structured analysis and design programming methods (an

10   accomplishment that resulted in his induction into the Computer Hall of Fame); he founded and

11   ran a company that trained more than 250,000 people in structured programming, design,

12   analysis, data modeling, and project management (and which now is a unit of IBM); and he has

13   written and lectured extensively on technical issues with software, including at MIT, Harvard,

14   Stanford, and Berkeley.   *See* Exh. 1, Yourdon Report at § 1.  In fact, both of Plaintiffs' software

15   experts acknowledge Mr. Yourdon's expertise in the software industry:  Dr. Jensen's writings

16   rely on Mr. Yourdon and cite him extensively (*see*, *e.g.*, Randall W. Jensen and Charles C.

17   Tonies, eds., *Software Engineering* (1979) at 64, 89, 343), and Mr. Hilliard has sought Mr.

18   Yourdon's technical advice in another matter (*see* Exh. 9, Hilliard Tr. at 101:12-18).  Mr.

19   Yourdon has published over 500 technical articles and more than two dozen books.[15]  Mr.

20   Hilliard's publications are limited to a consumer guide to computer purchases (an abridged

21   version of which he published in a local newspaper). *See* Exh. 5, Hilliard Report at Exh. 3.

22         Mr. Yourdon also has extensive experience with sophisticated software generally and

23   ERP software in particular.  In his decades working in the computer industry, Mr. Yourdon has

24   served as a developer, project leader, IT executive, and consultant on numerous major software

25   projects.  *See* Exh. 1, Yourdon Report at ¶ 1.  Indeed, the United States Department of Defense

---

26
27   [15] Plaintiffs' claim that Mr. Yourdon's "credibility is further undermined by his failure to list his publications which were widely criticized" is nonsensical.  Every publication that Plaintiffs claimed Mr. Yourdon failed to include was included in his Report – indeed, Plaintiffs' Motion
28   *cites* Mr. Yourdon's Report to identify the allegedly missing publications.  *See* Motion at 24, fn. 24 (*citing* Yourdon Report at App. C).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

20

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    called upon Mr. Yourdon to serve on its advisory council regarding "best practice" guidelines

2    and techniques for large, complex software projects.  *Id.* at ¶ 6.  Mr. Yourdon's considerable

3    experience with ERP software includes the selection, acquisition, and implementation of

4    enterprise business applications and ERP packages for many clients in the field as well as the

5    evaluation of ERP software in litigation.  *Id.* at ¶ 1.  Certainly, Mr. Yourdon is more qualified

6    that Mr. Hilliard under any reasonable view of their respective qualifications.[16]

7                   2.    <u>Plaintiffs' Specific Attacks On Mr. Yourdon Are Baseless.</u>

8          Plaintiffs' only effort to specifically challenge Mr. Yourdon's qualifications is a weakly

9    repackaged attack on one portion of his methodology:  Plaintiffs contend Mr. Yourdon "is

10   unqualified to offer an opinion" because he did not perform a sufficient review of the business

11   requirements for Suite 11i "in this particular instance to render an opinion on the integration of

12   Suite 11i."  Motion at 8.  But Plaintiffs cannot extrapolate an alleged fault with Mr. Yourdon's

13   process as to one of his conclusions[17] into a wholesale challenge to his qualifications.  *See Quiet*

14   *Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003).  To the

15   contrary, the evidence indicates Mr. Yourdon is well-qualified to provide expert testimony here.

16          Plaintiffs also seek to exclude all of Mr. Yourdon's testimony and analysis based on his

17   correction during deposition of a mistaken Latin abbreviation.  Motion at 24.  Mr. Yourdon

18   explained that he inadvertently used the abbreviation "*i.e.*" instead of "*e.g.*" in a background

19   section of his Report.  *See* Exh. 1, Yourdon Report at ¶ 41; *see also* Exh. 3, Yourdon Tr. at

20   60:25-62:18.   This attempt to make a mountain out of typographical molehill demonstrates how

21   little basis Plaintiffs have to challenge Mr. Yourdon and how desperate they are to exclude him.

22

23

24   [16] Mr. Yourdon's qualifications highlight the deficient credentials of Plaintiffs' expert, Mr.

25   Hilliard.  Mr. Hilliard has no relevant technical experience; he admits he is a management consultant who "does not do software development [or] implement computer software or

26   systems." Exh. 5, Hilliard Report at Exh. 3.  Mr. Hilliard does not even have experience analyzing integration or the overall quality of a software system in the litigation context.  *See*

27   Exh. 9, Hilliard Tr. at 21:19-24, 24:13-17.

28   [17] As discussed in Section III.B.1, Mr. Yourdon employed a reliable methodology to reach his conclusion that Suite 11i was integrated; Plaintiffs have misconstrued Mr. Yourdon's tests for integration and misrepresented his testimony regarding his process.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1911989.7

21

DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE
EXPERT TESTIMONY OF EDWARD YOURDON
Master File No. C-01-0988-(SI)

1    **V.      CONCLUSION**

2            For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs'

3    Motion to Exclude Expert Testimony of Edward Yourdon.

4    Dated:  November 17, 2008                          Respectfully submitted,
                                                        LATHAM & WATKINS LLP
5                                                          Peter A. Wald
                                                           Patrick E. Gibbs
6                                                          Sean M. Berkowitz

7
                                                        By:___/s/Patrick E. Gibbs_____
8                                                          Patrick E. Gibbs
                                                           Attorneys for Defendants ORACLE
9                                                          CORPORATION, LAWRENCE J.
                                                           ELLISON, JEFFREY O. HENLEY,
10                                                         and EDWARD J. SANDERSON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28