LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: sean.berkowitz@lw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988-SI (Consolidated)<br><br>CLASS ACTION<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' ACCOUNTING EXPERT, J. DUROSS O'BRYAN**<br><br>Date: January 9, 2008<br>Time: 9:00 a.m.<br>Judge: The Honorable Susan Illston |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................... 1

II.  STANDARD OF REVIEW .............................................................................................. 2

III. ARGUMENT ..................................................................................................................... 3

   A.   Mr. O'Bryan's Testimony Is Reliable and Will Assist the Trier of Fact............................................................................................................................. 3

   B.   There is No Basis to Exclude Mr. O'Bryan's Testimony ..................................... 5

      1.   Mr. O'Bryan Did Not Rely on Unproduced Materials in Rendering His Opinion Regarding the Bad Debt Transfers ...................... 5

      2.   It Is Outrageous for Plaintiffs to Claim "Unfair Surprise" Regarding Mr. O'Bryan's Opinion on the HP Transaction ....................... 7

      3.   Mr. O'Bryan's Review of the Source Documents for a Sample of 60 Debit Memos Was an Appropriate Exercise of Professional Judgment ........................................................................... 8

      4.   The Debit Memo "Lists" Are Nothing More Than Ways of Sorting the Data in the Produced Script Output.......................................... 9

      5.   Mr. O'Bryan's Testimony Regarding the Bad Debt Transfers Was Based Upon an Independent Analysis of the Evidence................................................................................................... 12

      6.   Plaintiffs' Attack on Mr. O'Bryan's Materiality Analysis is Meritless.................................................................................................... 14

IV. CONCLUSION................................................................................................................ 15

LATHAM&WATKINS<sup>LLP</sup>  LA\1913781.3
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

# TABLE OF AUTHORITIES

**Page**

### CASES

*Bell v. Fore Sys., Inc.*,
   No. 97-1265, 2002 U.S. Dist. LEXIS 27871
   (W.D. Penn. Aug. 2, 2002) .................................................................................................. 4

*Danis v. USN Comm's., Inc.*,
   121 F. Supp. 2d 1183 (N.D. Ill. 2000) .................................................................................. 4

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .............................................................................................................. 2

*Halterman v. Legato Software*,
   No. C 04-02660 JW, 2006 U.S. Dist. LEXIS 20136
   (N.D. Cal. April 5, 2006) ..................................................................................................... 9

*Hill v. Reederei F. Laeisz G.M.B.H.*,
   435 F.3d 404 (3rd Cir. 2006) ................................................................................................ 7

*In re USGen New England, Inc. v. TransCanada Pipelines, Ltd.*,
   No. 03-30465, 2007 Bankr. LEXIS 2820 (Bankr. D. Md. Aug. 16, 2007) ........................... 8

*Kennedy v. Collagen Corp.*,
   161 F.3d 1226 (9th Cir. 1998) ........................................................................................... 2, 9

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) .............................................................................................................. 2

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*
   94 Civ. 5587 (PKL)(RLE), 2000 U.S. Dist. LEXIS 3742
   (S.D.N.Y. Mar. 24, 2000) ................................................................................................... 15

*SEC v. Stansbury Holdings Corp.*,
   No. 06-CV-00088 REB-BNB, 2007 U.S. Dist. LEXIS 48140
   (D. Colo. June 29, 2007) ........................................................................................... 4, 9, 13

*United States v. Tarwater*,
   308 F.3d 494 (6th Cir. 2002) ................................................................................................ 2

*United States v. Turner*,
   No. CR05-355C, 2007 U.S. Dist. LEXIS 33709 (W.D. Wash. May 8, 2007) ..................... 4

### RULES

Fed. R. Evid. § 702 ..................................................................................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

ii

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

## I. INTRODUCTION

Faced with their own accounting expert's fatal concession that the debit memos had no financial statement impact (thus gutting Plaintiffs' sole accounting claim), Plaintiffs resorted to filing a baseless motion to exclude the testimony of Defendants' accounting expert, J. Duross O'Bryan (the "Motion"). But Plaintiffs' Motion is not really a *Daubert* motion at all. Plaintiffs do not attack the admissibility of Mr. O'Bryan's opinions, nor do they challenge his extensive and impressive qualifications, his reasoning or his methodology. Instead, Plaintiffs raise discovery disputes, attack Mr. O'Bryan's credibility and challenge the correctness of certain of his opinions. None of this is a proper basis for excluding expert testimony.

Plaintiffs' Motion primarily is based upon two core arguments that are flawed and fundamentally misrepresent the record. First, Plaintiffs wrongly claim that Mr. O'Bryan based some of his opinions on documents that were not produced to Plaintiffs. In fact, as Mr. O'Bryan testified, all of his opinions were based upon materials Defendants produced to Plaintiffs and that Mr. O'Bryan identified in his Reports. While Plaintiffs complain that Defendants did not provide Plaintiffs with a copy of a binder that Mr. O'Bryan brought to his deposition, that binder contains summaries of documents in the record, handwritten notes and draft work papers to which Plaintiffs are not entitled. Indeed, Plaintiffs fail to mention that under a February 6, 2007 expert discovery stipulation, the parties agreed that they need not produce: (i) data or information not relied upon by the expert in forming his opinions; or (ii) draft work papers, intermediate calculations, or notes prepared by or for the expert. (*See* Ex. 1 at ¶¶ 5-6.)[1] Plaintiffs also neglect to mention that their own accounting expert, D. Paul Regan, referred throughout his testimony to a set of binders he brought to his deposition, and – consistent with the stipulation – Plaintiffs similarly did not produce those binders.

Second, Plaintiffs make the remarkable argument that they were "unfairly surprised" when Mr. O'Bryan offered rebuttal testimony regarding the Hewlett-Packard ("HP") transaction.

---

[1] All Exhibits cited herein are true and correct copies of the consecutively-numbered exhibits attached to the concurrently filed Declaration of Brian T. Glennon in Support of Defendants' Opposition to Plaintiffs' Motion to Exclude the Testimony of Defendants' Accounting Expert, J. Duross O'Bryan.

1   Yet it was Plaintiffs' expert who devoted almost 30 pages of his 64-page Opening Report to the
2   accounting for the HP transaction – an issue not pled in the complaint and one which Special
3   Master Infante specifically ruled was not a proper subject of discovery in this case.  Apparently,
4   Plaintiffs believe that their expert can opine freely on accounting theories that are not at issue in
5   the case, but Defendants' expert is precluded from responding to those arguments on rebuttal.
6       The remainder of Plaintiffs' Motion is nothing more than a series of unsubstantiated
7   claims that Mr. O'Bryan allegedly did not consider evidence that he indisputably analyzed, or
8   that Mr. O'Bryan's testimony somehow lacks credibility.  The record clearly shows that these
9   claims are baseless.  Accordingly, the Motion should be summarily denied.

10  **II.    STANDARD OF REVIEW**
11      An expert may testify in the form of an opinion if (1) the testimony is based upon
12  sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and
13  (3) the witness has applied the principles and methods reliably to the facts of the case.  *See* Fed.
14  R. Evid. 702.  In this regard, the Federal Rules of Evidence assign the trial judge the task of
15  ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task
16  at hand.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  The trial court's
17  "gatekeeping" role applies "not only to testimony based on 'scientific' knowledge, but also to
18  testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v.
19  Carmichael*, 526 U.S. 137, 141 (1999); *see also United States v. Tarwater*, 308 F.3d 494, 513
20  (6th Cir. 2002) (although *Daubert* factors "were of limited value" in assessing expert accounting
21  testimony, the court nonetheless considered the reliability and relevancy of the testimony).
22      Expert testimony may be excluded only if the reasoning or methodology underlying the
23  testimony is invalid or irrelevant to the issues in the case.  *See Daubert*, 509 U.S. at 592-93.  The
24  court must decide whether the "expert testimony proffered in the case is sufficiently tied to the
25  facts of the case that it will aid the jury in resolving a factual dispute."  *Id.* at 591 (internal
26  quotation and citation omitted).  However, the court's role is not intended to replace the
27  adversary system.  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998) ("The
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

*Daubert* duty is to judge the reasoning used in forming an expert conclusion. The test is whether or not the reasoning is scientific [or technical] and will assist the jury.").

## III.   ARGUMENT

### A.   Mr. O'Bryan's Testimony Is Reliable and Will Assist the Trier of Fact

Mr. O'Bryan's credentials and qualifications are not subject to dispute. Mr. O'Bryan has been a licensed Certified Public Accountant ("CPA") for 30 years. (*See* Ex. 2 at 1.) He has participated in over 200 separate engagements involving accounting issues. (*Id.*) He currently is the Managing Director in the Financial Advisory Services ("FAS") practice of AlixPartners, LLP. (*Id.* at 2.) Prior to joining AlixPartners, Mr. O'Bryan was a Partner at PricewaterhouseCoopers LLP for approximately 16 years. (*Id.*) During this time, Mr. O'Bryan served as the Partner-In-Charge of the FAS practice for the Western Region from 1995 to 1998, and the New York Metro Region from 1998 to 1999. (*Id.*) Thereafter, Mr. O'Bryan served as the Partner-In-Charge of the FAS and Dispute Analysis and Investigations practices for the Western Region from 2000 to 2003. (*Id.*; Ex. 3 at 11:11-13, 17:10-20:12.)

In forming his expert opinions in this case, Mr. O'Bryan extensively analyzed a host of relevant evidence and accounting literature. Among other things, Mr. O'Bryan reviewed: (1) the deposition transcripts of over 20 accounting witnesses; (2) various accounting system reports generated by Oracle; (3) the script output, which contains complete accounting histories for 926 debit memos (which were the focus of accounting-related discovery orders); (4) Ernst & Young LLP's ("EY") agreed-upon procedures memorandum; (5) source documents for a sample of 60 transactions; (6) various analysts' reports relating to, among other things, Oracle's earnings release for the second quarter of fiscal year 2001 ("2Q01"); and (7) the revenue recognition checklist and other documents regarding the HP transaction. (*See* Ex. 2 at 20-42, Appendix C; Ex. 4 at Appendix.) Notably, Plaintiffs' accounting expert reviewed and relied upon much of the same evidence cited in Mr. O'Bryan's Reports. (*See*, *e.g.*, Ex. 5 at 32 n.124, Exhibit B.)

Based upon his review and analysis of these materials, Mr. O'Bryan formed the following opinions:

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

1  (1) The accounting for the 46,000-plus debit memos netted to zero, an opinion with
2       which Plaintiffs' accounting expert witness agrees (*see* Ex. 2 at 10-14; Ex. 6 at
3       208:22-209:12, 213:11-20, 214:24-215:19, 219:14-220:12);
4  (2) With respect to the 2Q01 transfers into the bad debt reserve: (a) at least
5       $2 million of the $10.6 million of transfers that were the subject of fact discovery
6       were proper when made or could have been recognized as revenue prior to 2Q01
7       (*see* Ex. 2 at 32-36); and (b) even if the entire $20 million in 2Q01 bad debt
8       transfers were improper (they were not), the impact on Oracle's 2Q01 financial
9       statements was immaterial (*id.* at 36-40; *see also* Ex. 4 at 50-52 (opining that even
10      if *both* the 2Q01 bad debt transfers *and* the HP transaction were erroneous, any
11      financial statement impact would be immaterial)); and
12 (3) The decision to recognize approximately $19.9 million in revenue in 2Q01 on the
13      HP transaction, which was approved by Oracle's revenue recognition group, its
14      outside auditor and the Finance and Audit Committee, was not improper. (Ex. 2
15      at 41-42; *see also* Ex. 4 at 25-50.)
16      Given the nature of Plaintiffs' accounting allegations, the complexity of revenue
17 recognition generally, and Mr. O'Bryan's extensive experience with these issues, there can be no
18 question that his testimony will aid the jury in understanding the relevant facts. *See*, *e.g.*, *SEC v.
19 Stansbury Holdings Corp.*, No. 06-CV-00088 REB-BNB, 2007 U.S. Dist. LEXIS 48140, at *8-9
20 (D. Colo. June 29, 2007) (testimony of expert accounting witness regarding materiality analysis
21 under GAAP would be helpful to the trier of fact); *United States v. Turner*, No. CR05-355C,
22 2007 U.S. Dist. LEXIS 33709, at *3 (W.D. Wash. May 8, 2007) (expert testimony on the scope
23 of GAAP and whether particular practices qualify as GAAP is preferred); *Bell v. Fore Sys., Inc.*,
24 No. 97-1265, 2002 U.S. Dist. LEXIS 27871, at *13 (W.D. Penn. Aug. 2, 2002) (denying motion
25 to exclude expert opinion because GAAP issues "clearly [were] within the scope of [the expert's]
26 specialized knowledge and experience."); *Danis v. USN Comm's., Inc.*, 121 F. Supp. 2d 1183,
27 1192 (N.D. Ill. 2000) (GAAP and GAAS standards are established through expert testimony).
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

4

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

**B.     There is No Basis to Exclude Mr. O'Bryan's Testimony**

Plaintiffs seek to challenge the admissibility of Mr. O'Bryan's testimony based upon a misreading of the parties' discovery obligations, unfounded claims of surprise and Mr. O'Bryan's purportedly inadequate analysis of certain evidence. As detailed below, none of Plaintiffs' arguments is a proper basis for excluding Mr. O'Bryan's opinions or testimony under *Daubert* and its progeny.

**1.     Mr. O'Bryan Did Not Rely on Unproduced Materials in Rendering His Opinion Regarding the Bad Debt Transfers**

Plaintiffs devote much of the Motion to the contention that Mr. O'Bryan relied upon a binder comprised of unproduced materials in forming his opinion that at least $2 million of the 2Q01 bad debt transfers were appropriate. (*See* Motion at 7-8.) Quite simply, this is not a proper basis for a *Daubert* motion. Plaintiffs are attempting to turn an untimely and unfounded discovery dispute over whether they are entitled to certain materials into an attempt to exclude a portion of Mr. O'Bryan's testimony under the auspices of a *Daubert* motion. In so doing, Plaintiffs mischaracterize Mr. O'Bryan's testimony about his purported "reliance" on the contents of the binder. In any event, Defendants' good faith withholding of the binder is supported by the expert discovery stipulation and, ironically, is consistent with Plaintiffs' understanding of the scope of expert discovery considering their refusal to produce the binders to which their own accounting expert referred repeatedly throughout his deposition.[2]

The expert discovery stipulation in this case, which Plaintiffs inexplicably ignore in their Motion, requires the parties to produce only those materials relied upon by the expert in forming his opinions. (*See* Ex. 1 at ¶ 6 ("[T]he parties agree that other data or information that may have been considered by a Testifying Expert but was not relied on by the Testifying Expert in forming her or his opinions need not be disclosed or produced.").) Here, the binder to which

---

[2] Plaintiffs mistakenly cite Mr. O'Bryan's purported reliance on the binder as a basis for excluding his "testimony on *the debit memo issues*[.]" (Motion at 8 (emphasis added).) However, as the testimony cited in the Motion demonstrates, the materials in the binder relate to the bad debt transfers, not the debit memos. (*Id.* at 7.) Plaintiffs have offered no basis for excluding Mr. O'Bryan's testimony regarding the debit memos.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

5

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

Mr. O'Bryan referred during his deposition was prepared *after* Mr. O'Bryan completed and produced his expert Reports (and thus after he formed his opinions), as part of his preparation for his deposition. (*See* Ex. 7 at 1.) Consistent with this fact, Mr. O'Bryan testified that his opinions were based upon the script output and other underlying source materials, all of which were produced to Plaintiffs and used by Plaintiffs' accounting expert in forming his own opinions. (*Id.*; *see also* Ex. 5 at 32 n.124, Exhibit B.) As Mr. O'Bryan explained:

> As I said, the script outputs were reviewed by us, and the information comes off of that. You can get all of the numbers that you see in my report as to the $2 million right off of the script outputs or the notes, the miscellaneous receipts. All we did, for ease of summarization, was prepare just that, a summary, which then ties to these numbers. So I certainly looked at it. But the data that I relied on was the source data, i.e., the script outputs or the underlying source data.

(*See* Ex. 3 at 141:12-22.)

In addition, the stipulation expressly provides that the parties do not have to produce "draft work papers … intermediate calculations … or data" or "[a]ny notes or other writings … prepared by … a Testifying Expert in connection with this matter." (*See* Ex. 1 at ¶ 5.) Putting aside the fact that Mr. O'Bryan testified that he did not rely on the binder in reaching any of his opinions, the binder contains notes and draft work papers, which are not subject to discovery in this case. (*Id.*) Thus, Defendants' withholding of the binder is entirely consistent with the terms of the expert discovery stipulation (and, again, is consistent with the approach taken by Plaintiffs regarding their accounting expert's binders).

Tellingly, Plaintiffs never attempted to stop the deposition when Defendants refused to produce the binder, nor did Plaintiffs seek to compel production of the binder and re-open Mr. O'Bryan's deposition. Indeed, following Mr. O'Bryan's deposition, *Plaintiffs never even requested a copy of the binder*. Instead, Plaintiffs opted to use this discovery "dispute" improperly as a vehicle to try to exclude Mr. O'Bryan's testimony. (*See* Ex. 7 at 1-2.) Although Defendants firmly believe that Plaintiffs are not entitled to Mr. O'Bryan's binder under the expert discovery protocol, in the spirit of compromise, Defendants offered to produce Mr.

1  O'Bryan's binder in exchange for Plaintiffs producing the binders upon which Mr. Regan relied
2  and repeatedly referenced during his deposition. (*Id.*) Plaintiffs, however, rejected this offer.[3]

### 2. It Is Outrageous for Plaintiffs to Claim "Unfair Surprise" Regarding Mr. O'Bryan's Opinion on the HP Transaction

The propriety of Oracle's decision to recognize revenue on the HP transaction is not properly an issue in this case, having never been pled. As noted above, Special Master Infante specifically ruled that evidence pertaining to the HP transaction did not fall within the scope of fact discovery. (*See* Ex. 9 at 15:24-16:6, 16:25-17:8.) Plaintiffs' accounting expert nevertheless devoted almost 30 pages of his Opening Report to the HP transaction, arguing that he saw no evidence in the record that Oracle complied with the relevant accounting literature in deciding to recognize revenue on the software license agreement – an unsurprising fact, given the Special Master's ruling that Plaintiffs were not entitled to discovery on this issue. (*Id.*; Ex. 5 at 34-63.) To add to that, Mr. Regan (1) did not even review the critical documents relevant to Oracle's decision to recognize revenue on the HP transaction prior to issuing his opinions (*see* Ex. 6 at 172:6-12, 184:14-185:6, 190:1-18); and (2) has no experience applying the relevant accounting literature to determine whether revenue should be recognized on a software license transaction in the first instance. (*Id.* at 208:9-21.)

As a result, Mr. O'Bryan was compelled to respond to the issues raised by Mr. Regan regarding the HP transaction in his Rebuttal Report. Plaintiffs cannot seriously claim that they were "surprised" or "prejudiced" by Mr. O'Bryan's opinion in this regard. (*See* Motion at 16-17.) The rebuttal report is the appropriate place to respond to arguments raised in a plaintiff's opening report. *See, e.g.*, *Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 423 (3rd Cir. 2006) (acknowledging that there is no "bright line rule that every opinion by an expert must be

---

[3] Notably, Plaintiffs waited until the day this opposition originally was filed – nearly two full weeks after Defendants initially proposed exchanging binders – before even responding to Defendants' offer. (*See* Ex. 8 at 1-2.) Furthermore, although Plaintiffs claimed in their response that Mr. Regan's binders contained only his Reports and exhibits, they did not indicate whether these Reports and exhibit copies contained handwritten notes, highlighting or other notations. Indeed, Plaintiffs inexplicably refused to produce Mr. Regan's actual binders (or copies thereof), and instead offered only to assemble and produce new binders themselves. (*Id.* at 2 n.1.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

7

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

1  preliminarily stated in the [opening] report, or forever be precluded."); *In re USGen New
2  England, Inc. v. TransCanada Pipelines, Ltd.*, No. 03-30465, 2007 Bankr. LEXIS 2820, at *45-
3  46 (Bankr. D. Md. Aug. 16, 2007) (noting that "[r]ebuttal evidence is defined as evidence given
4  to explain, repel, counteract, or disprove facts given in evidence by the opposing party" and
5  denying motion to strike rebuttal reports "intended to counteract [opposing expert's] opinion[.]")
6  (internal quotations and citations omitted).

7      Nor can Plaintiffs claim that they were prejudiced by the timing of Defendants'
8  production of HP-related documents, considering that these documents were not responsive to
9  any discovery order, and Defendants were not obligated to produce them at any prior point in
10 time. To the extent that Plaintiffs claim to have suffered any prejudice, either as a result of Mr.
11 O'Bryan's opinion on the HP transaction or the fact that documents were produced in support of
12 Mr. O'Bryan's Rebuttal Report, it is an issue entirely of their own making because they
13 proffered expert opinions on an issue that is not properly part of the case without having the
14 documents necessary to support or substantiate those opinions.[4]

### 3. Mr. O'Bryan's Review of the Source Documents for a Sample of 60 Debit Memos Was an Appropriate Exercise of Professional Judgment

17     Plaintiffs argue that Mr. O'Bryan's testimony on the debit memos should be excluded
18 because he purportedly "failed to explain his methodology for analyzing 60 sample debit
19 memos" and Plaintiffs have "no way of determining which 60 debit memos O'Bryan relied
20 upon." (Motion at 9.) This argument is meritless.

21     Mr. O'Bryan analyzed *all* 926 debit memos in the script output. (*See* Ex. 3 at 105:14-24.)
22 In order to assure the accuracy of the data contained in the script output, he exercised
23 professional judgment and decided to test the underlying source documents for a random
24 selection of 60 debit memos. (*Id.* at 107:5-108:10.) Based upon 30 years of accounting

---

[4] Defendants produced the additional HP-related documents on June 22, 2007, in support of Mr. O'Bryan's Rebuttal Report. Tellingly, despite the fact that these documents were produced over two weeks prior to Mr. Regan's expert deposition (on July 9, 2007), Plaintiffs refused to show Mr. Regan the relevant revenue recognition documents in advance of his testimony. (Ex. 6 at 166:2-167:15.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

8

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

experience, including years of audit testing and sampling, Mr. O'Bryan determined that a random sample of 60 debit memos was sufficient to test the accuracy of the script output. (*See* Ex. 2 at 25 and n.73 (the sample of 60 was "randomly" selected and was "sufficient to confirm [his] understanding of how debit memos were processed.").)

While Plaintiffs challenge this approach, they fail to suggest the "appropriate" number of debit memos that should have been tested in the exercise of professional judgment. *See Kennedy*, 161 F.3d at 1230 (lack of contradictory evidence supports admissibility of expert opinion). Moreover, there is no evidence that Plaintiffs' accounting expert reviewed *any* source documents. In addition, while Plaintiffs claim that they "have no way of determining which 60 debit memos O'Bryan relied upon" (Motion at 9), *they never even asked Mr. O'Bryan during his deposition to identify the 60 debit memos he analyzed*. But more importantly, all of the source materials that Mr. O'Bryan relied upon in analyzing these 60 debit memos are set forth in Appendix C to his Report, which Plaintiffs can use to identify the 60 debit memos that Mr. O'Bryan tested. (Ex. 2 at Appendix C.) Accordingly, Plaintiffs have no basis for claiming that Mr. O'Bryan's methodology was wrong or that they do not have sufficient information. In the end, even if Plaintiffs could demonstrate that Mr. O'Bryan did not test enough debit memos, that would bear only on the credibility and not the admissibility of the evidence. *See Stansbury*, 2007 U.S. Dist. LEXIS 48410, at *6; *Halterman v. Legato Software*, No. C 04-02660 JW, 2006 U.S. Dist. LEXIS 20136, at *4 (N.D. Cal. April 5, 2006).[5]

**4.    The Debit Memo "Lists" Are Nothing More Than Ways of Sorting the Data in the Produced Script Output**

Plaintiffs also take issue with Mr. O'Bryan's purported failure to provide Plaintiffs with two "lists" of debit memos; one setting forth the debit memos that correspond to the 121 bad

---

[5] In any event, Plaintiffs' argument about the 60 debit memos for which Mr. O'Bryan reviewed source information ultimately is of little moment. As noted above, Mr. O'Bryan stated in his Report and during his deposition that he reviewed the source documents underlying these debit memos to assess the accuracy of the script output (Ex. 2 at 24-25; Ex. 3 at 106:12-108:10), upon which Plaintiffs' accounting expert also relied in forming his opinions. (Ex. 5 at 32 n.124.) And, both experts agree that the debit memos had no financial statement impact whatsoever. (Ex. 2 at 3-4, 10-14; Ex. 6 at 208:22-209:12, 213:11-20, 214:24-215:19, 219:14-220:12.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

9

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

1  debt transfers in 2Q01 in the script output, and the other listing the 277 debit memos in the script
2  output which have prior refunds in their accounting histories. (*See* Motion at 9, 10 n.7.)
3  However, during his deposition, Mr. O'Bryan explained how he sorted the data in the script
4  output (the same evidence upon which Plaintiffs' accounting expert relied in forming his
5  opinions) to identify the debit memos that correspond with the 121 bad debt transfers in 2Q01
6  and the 277 debit memos that have prior refunds in their accounting histories. In doing so, Mr.
7  O'Bryan not only described his methodology, he demonstrated that he relied upon the produced
8  script output in forming these opinions (and not any unproduced "lists" or "summaries").

9  For instance, Plaintiffs claim that Mr. O'Bryan failed "to provide the list of the 121 debit
10  memos that were transferred" to the bad debt reserve. (*Id.* at 9.) As an initial matter, debit
11  memos – by definition – cannot be (and never were) "transferred" into the bad debt reserve. But
12  more importantly, with respect to the debit memos that have the 121 transfers into the bad debt
13  reserve in 2Q01 in their audit trail, Mr. O'Bryan described how he identified those transactions,
14  and he explained how Plaintiffs could use the data already provided to them to reach the same
15  conclusion:

> Q. Mr. O'Bryan, is there any way sitting here if I go back to the script output I could determine the debit memo numbers for these 121 transfers?
>
> A. Yes.
>
> Q. Okay. How would I do that?
>
> A. You just go into the script output and run a sort in the database that has the credit amount 12601, then it prints all the information about that. That's all we did.
>
> Q. So if I did that, and then whatever came up as crediting 12601, there would [be] 121 transfer items?
>
> A. It would be 121 debit memos or transfers from 25005 into 12601, totaling $10,586,182.02.

27  (Ex. 3 at 168:24-169:13 (objections omitted).)

LATHAM&WATKINS<sup>LLP</sup>  LA\1913781.3
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

1   Similarly, Plaintiffs claim that Defendants failed to produce a "list" of the 277 debit
2   memos that have prior refunds in their accounting histories. Again, Mr. O'Bryan's testimony
3   makes unmistakably clear that he determined the number of debit memos that had prior refunds
4   in their audit trails simply by sorting the same evidence upon which Plaintiffs' accounting expert
5   relied – the (produced) script output. As Mr. O'Bryan explained:

> Q. If I wanted to go into the script output and figure out those 277 debit memos, what would I do?
>
> A. You just go in and run a query on accounts payable to see where there was a refund.
>
> Q. How would a refund show up? Would it say refund?
>
> A. The best place to go is account payable.
>
> Q. So if I just ran a query by accounts payable, 277 items would pop up?
>
> A. Yes.
>
> \*       \*       \*
>
> Q. So if I ran a query in the script output for that column pre November 17th then 277 items would pop up?
>
> A. That is correct, 277 items totaling –
>
> Q. $103 million?
>
> A. $102,906,609, which we rounded up.

(*Id.* at 204:3-12, 205:1-6.)

   This testimony demonstrates that the "lists" to which Plaintiffs refer are nothing more than ways of sorting the electronic data in the previously-produced script output. As set forth above, Mr. O'Bryan explained during his deposition how Plaintiffs could use the data in their possession to recreate what Mr. O'Bryan had done. Plaintiffs may not like this testimony, indeed they may disagree with Mr. O'Bryan's methodology, but Plaintiffs (and their accounting expert) have had this same evidence throughout fact and expert discovery. In light of Mr. O'Bryan's explanation of the steps he took and the evidence he considered in reaching his conclusions – as

LATHAM&WATKINSLLP    LA\1913781.3
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

1  *Daubert* requires – any further criticism by Plaintiffs goes to credibility and *not* admissibility.
2  *See Stansbury*, 2007 U.S. Dist. LEXIS 48410, at *8.

### 5. Mr. O'Bryan's Testimony Regarding the Bad Debt Transfers Was Based Upon an Independent Analysis of the Evidence

Plaintiffs' contention that "the only opinions contained in [Mr. O'Bryan's] report on the $2 million in transfers are unfounded conclusions" is undermined by Mr. O'Bryan's Reports and his deposition testimony. (*See* Motion at 7.)  In his Opening Report, Mr. O'Bryan described his independent review and analysis of the script output and source documents, which formed the basis of his opinion that at least $2 million in bad debt transfers in 2Q01 were appropriate when made. (*See* Ex. 2 at 32-33.)  Moreover, Mr. O'Bryan walked through two examples of bad debt transfers that illustrate his analysis of this issue. (*Id.* at 33-36.)

At his deposition, Mr. O'Bryan explained how he reached his conclusion that $2 million of the bad debt transfers were appropriate when made, he described the evidence he relied upon in forming his opinions, he described each of the three categories of transfers that comprise the $2 million and he identified the individual debit memo numbers that corresponded to the bad debt transfers in each of the three categories. (*See*, *e.g.* Ex. 3 at 136:2-16 (explaining his methodology in determining that $2 million in bad debt transfers were appropriate or should previously have been recognized as revenue); 141:23-142:10, 143:10-20, 157:21-158:20 (explaining the methodology employed, the debit memo numbers and customer names associated with the $700,000 in royalty payments); 176:19-181:18, 189:12-190:6, 192:13-194:9, 195:7-199:25 (explaining the methodology he employed, the debit memo numbers and examples of customers associated with the $800,000 in erroneous credit memos); 202:10-203:22 (describing the analysis employed, the associated debit memo numbers, and the basis for his conclusion that $500,000 in other bad debt transfers may have been appropriate).)  In the end, Mr. O'Bryan provided Plaintiffs with everything they need to perform their own analysis, assess Mr. O'Bryan's methodology, test his findings and challenge his opinions.[6]

---

[6] Contrary to Plaintiffs' argument, Mr. O'Bryan did not state that his opinion with respect to the $500,000 in bad debt transfers was "not as complete"; instead, he correctly observed that "the

1    Plaintiffs simply are incorrect in contending that Mr. O'Bryan "failed to cite a single document, deposition or supporting data point" in support of his opinions regarding the bad debt transfers. (*See* Motion at 11.) Page 33 of Mr. O'Bryan's Opening Report, cited by Plaintiffs in support of their argument, merely summarized Mr. O'Bryan's findings and conclusions. The subsequent pages, in which Mr. O'Bryan sets forth multiple examples of transactions that support his conclusions, are replete with footnotes and citations to supporting evidence. (*See* Ex. 2 at 34-36.) And, to the extent that Mr. O'Bryan did not cite every document upon which he relied in the body of his Report, he identified them in the appendices. (*See* Ex. 2 at Appendix C; Ex. 3 at 157:2-17.)

    Thus, Mr. O'Bryan articulated the steps he took to arrive at his conclusions, based upon objective analysis and verifiable evidence. This is precisely what *Daubert* requires, regardless of whether Plaintiffs agree with the conclusions Mr. O'Bryan ultimately reached. To the extent Plaintiffs believe that the analysis should have been more detailed or more thorough, "those issues are … ripe for cross examination and presentation of contrary evidence." *Stansbury*, 2007 U.S. Dist. LEXIS 48140, at *8.[7]

---

evidence relating to these transfers [was] not as complete as the evidence [he] reviewed in connection with the [other] $1.5 million in transfers[.]" (*Compare* Motion at 12 *with* Ex. 2 at 33.) Nor can Plaintiffs' legitimately argue that Mr. O'Bryan did not provide any support for his opinion with respect to these transfers. (Ex. 3 at 202:10-203:22 (explaining the basis upon which he opined that these transfers could be appropriate).) Plaintiffs' accounting expert, in stark contrast, admittedly did not perform *any* analysis to determine whether any of the 2Q01 bad debt transfers were proper or could be recognized as revenue. (Ex. 6 at 233:21-234:3.)

[7] Plaintiffs also assume the truth of their own unproven accusations and attack Mr. O'Bryan's opinions as relying upon "the testimony of the individuals who were involved in the financial misconduct[.]" (*See* Motion at 12 n.8.) Ironically, while Mr. O'Bryan relied upon two experienced and senior accounting personnel with first-hand knowledge of the relevant facts, Plaintiffs rely upon: (1) a Confidential Witness ("CW") who is being criminally prosecuted for embezzling $1 million from Oracle and who has refused to testify in this case, citing his Fifth Amendment right against self-incrimination (*see* Ex. 10 at 1-7; Ex. 11 at 1-2); (2) a second CW who never worked for Oracle and did not participate in the creation of the debit memos (*see* Ex. 12 at 66:5-9, 66:19-68:5, 156:18-157:16); and (3) a low-level collections employee who did not know what a debit memo was until October 2002 (two years after-the-fact), who had no role in the creation of or accounting for the debit memos and who admittedly did not understand the accounting for the debit memos. (*See* Ex. 13 at 117:11-19; Ex. 14 at 383:6-385:4, 438:10-17, 440:23-441:9.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

13

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

### 6. Plaintiffs' Attack on Mr. O'Bryan's Materiality Analysis is Meritless

Assuming *arguendo* that all of the transfers into the bad debt reserve in 2Q01 *and* Oracle's recognition of revenue on the HP transaction were inappropriate, Mr. O'Bryan concluded that any resulting overstatement was immaterial because it would represent approximately 1.5% of Oracle's total reported revenue during the quarter. (*See* Ex. 4 at 50-52.) Although Plaintiffs claim that this testimony is speculative and lacks reliable foundation (*see* Motion at 13), their arguments ignore most of the evidence Mr. O'Bryan considered and focus instead on a single component of his testimony – *i.e.*, the market's reaction to Oracle's beating, versus meeting, consensus earnings expectations. (*Id.*)

In reaching his opinion on materiality, Mr. O'Bryan analyzed the various quantitative and qualitative factors pursuant to Staff Accounting Bulletin 99. (*See* Ex. 2 at 36-40; Ex. 4 at 50-52.) During his deposition, Mr. O'Bryan described in detail each of the factors he considered, and the methodology he employed in assessing materiality. (*See*, *e.g.*, Ex. 3 at 278:21-279:8, 283:3-285:6, 291:4-292:2, 306:22-309:10.) Mr. O'Bryan explained that his analysis was consistent with what is "typically done by auditors as it relates to materiality, particularly about stock movement" and was based upon "professional standards, … professional care and auditor's judgment." (*Id.* at 291:4-21.)

Plaintiffs ignore all of this analysis, and as noted above, focus only on Mr. O'Bryan's opinions with respect to the stock market's reaction to Oracle meeting versus beating earnings expectations. Notably, Mr. O'Bryan testified about this issue only because Plaintiffs specifically asked him whether he performed such an analysis during his deposition. (Ex. 3 at 285:18-23.) Furthermore, Mr. O'Bryan made clear that this was only one component of his materiality opinion (*id.* at 287:15-22), and he explained his methodology in detail:

> We looked on a quarter basis for first Q '99 all the way through second Q of '01 the actual consensus, analyst expectation, versus the actual reported amounts. Then we looked at the stock price as it relates to the date that the earnings [were] released, and the day plus one, day plus three, and day plus five. We basically looked at five different dates after Oracle had released its earnings.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI

1  (*Id.* at 288:1-8.) Plaintiffs can hardly challenge this analysis considering that Mr. O'Bryan's

2  opinions on stock price movements clearly were based upon publicly-available information, and

3  Plaintiffs' own expert accounting witness performed the same analysis. (Ex. 6 at 132:10-

4  134:22.)[8]

5        Given this testimony, Plaintiffs have offered no legitimate basis for excluding Mr.

6  O'Bryan's testimony on materiality. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 94 Civ.

7  5587 (PKL)(RLE), 2000 U.S. Dist. LEXIS 3742, at *10 (S.D.N.Y. Mar. 24, 2000) (court

8  permitted expert testimony on materiality based upon, among other things, expert's knowledge

9  and experience as a professional analyst, review of court records, SEC filings and similar

10 material).[9]

11 **IV.    CONCLUSION**

12       For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion to

13 Exclude the Testimony of Defendants' Accounting Expert, J. Duross O'Bryan, be denied.

14 Dated:  November 17, 2008            LATHAM & WATKINS LLP
                                          Peter A. Wald
15                                        Patrick E. Gibbs
                                          Sean M. Berkowitz
16

17                                        By:_____/s/Patrick E. Gibbs
                                             Patrick E. Gibbs
18                                        Attorneys for Defendants ORACLE
                                          CORPORATION, LAWRENCE J.
19                                        ELLISON, JEFFREY O. HENLEY and
                                          EDWARD J. SANDERSON
20

---

[8] Moreover, while both experts testified about the market's reaction to Oracle meeting versus beating consensus expectations, neither cited analyst reports in support of this particular analysis. (*See* Ex. 3 at 302:12-21; Ex. 6 at 132:10-20.) Given that each side had an opportunity to cross examine the opposing expert regarding materiality, failure to cite analyst reports certainly is not grounds for either side to seek to exclude testimony.

[9] Plaintiffs' attempt to discredit Mr. O'Bryan for purportedly failing to disclose a prior instance where his deposition testimony was excluded is futile. (*See* Motion at 17-18.) In the very deposition passage Plaintiffs cite, Mr. O'Bryan clearly explains that he simply misunderstood the original question. (*Id.*)

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

LA\1913781.3

15

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF J. DUROSS O'BRYAN
Master File No. C-01-0988-SI