Exhibit R

10-31-07 Final Transcript.txt

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

```
IN RE JDS UNIPHASE            )    PAGES 946 - 1109
                              )
SECURITIES LITIGATION,        )    NO. C02-1486CW
                              )
                              )    JURY TRIAL, VOLUME 7
                              )
                              )    OAKLAND, CALIFORNIA
_____)    WEDNESDAY, OCTOBER 31, 2007
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

```
FOR PLAINTIFF:           LABATON SUCHAROW LLP
                         140 BROADWAY
                         NEW YORK, NEW YORK 10005
                    BY:  MARK S. ARISOHN,
                         BARBARA J. HART,
                         ANTHONY J. HARWOOD,
                         MICHAEL W. STOCKER,
                         STEFANIE SUNDEL, ATTORNEYS AT LAW

                         GOLDMAN, SCARLATO & KARON
                         101 W. ELM STREET, SUITE 360
                         CONSHOHOCKEN, PENNSYLVANIA  19408
                    BY:  LAURA KILLIAN, ATTORNEY AT LAW
```

(APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258

                                                            947

1                 A P P E A R A N C E S (CONT'D.)

2

3    FOR THE PLAINTIFFS:     BERMAN, DE VALERIO, PEASE, TABACCO,
                             BURT & PUCILLO
4                            425 CALIFORNIA STREET, SUITE 2100
                                Page 1

10-31-07 Final Transcript.txt

11        THE COURT: TEN MINUTES OVER?
12        MR. STOCKER: IT'S ABOUT A HALF AN HOUR.
13        THE COURT: OKAY. WHY DON'T YOU STOP IT AT 1:30,
14 THEN.
15        MR. STOCKER: CERTAINLY.
16        THE COURT: OR AT SOME REASONABLE STOPPING POINT
17 AROUND THERE.
18        (WHEREUPON, THE VIDEOTAPED DEPOSITION OF ALISON
19 REYNDERS WAS PLAYED FROM 1:11 P.M. TO 1:26 P.M.)
20        MR. STOCKER: WE'RE GOING TO CHANGE TOPICS IN THE
21 VIDEOTAPE SO IT'S PROBABLY A PRETTY GOOD PLACE TO STOP.
22        THE COURT: OKAY.
23        WE'LL BREAK FOR THE DAY, LADIES AND GENTLEMEN, AND
24 WE'LL BE BACK TOMORROW MORNING AT 8:30. HAVE A HAPPY HALLOWEEN.
25        I'D LIKE TO SEE THE ATTORNEYS FOR A MOMENT, PLEASE.

                                                                                       1098

1        (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE
2 PRESENCE OF THE JURY:)
3        THE COURT: SO I'M WORKING ON THIS HAKALA STUFF. I'M
4 NOT INCLINED TO EXCLUDE HAKALA ON DAUBERT GROUNDS, FINDING --
5 CONTINUING TO FIND THAT HIS RELEVANCE AND RELIABILITY ARE
6 ADEQUATE FOR HIM TO TESTIFY AND THAT ANY PROBLEMS WITH HIS
7 METHODS OR SO FORTH CAN BE ADDRESSED ON CROSS-EXAMINATION.
8        I'M A LITTLE CONCERNED ABOUT A NEW MOTION THAT I'VE
9 RECEIVED ABOUT HIS CONSTANT PERCENTAGE METHOD. I HAVE TO GO
10 BACK AND SEE IF THAT WAS BRIEFED BEFORE, RAISED AND ADDRESSED
11 BEFORE OR NOT.
12        MY REASON FOR USING THE DOLLAR AMOUNT AS OPPOSED TO
13 THE PERCENTAGE IN THE JURY INSTRUCTIONS WAS BECAUSE I THOUGHT
14 THEY WERE ESSENTIALLY THE SAME, AND ONE WAS CALCULABLE FROM THE
15 OTHER SUCH THAT IF SOMETHING WAS X PERCENT HIGHER THAN SOMETHING

10-31-07 Final Transcript.txt

16  ELSE, IT WAS THAT MANY DOLLARS HIGHER THAN SOMETHING ELSE, AND
17  THAT THE JURY WAS ULTIMATELY APT TO COME UP WITH A NUMBER THAT
18  STARTED WITH A DOLLAR SIGN AS OPPOSED TO SOME OTHER FINDING.  IF
19  THAT'S NOT THE CASE, THEN -- THEN PERHAPS I MISUNDERSTOOD.  AND
20  I DON'T KNOW IF THERE'S PRIOR BRIEFING I CAN LOOK BACK TO THAT
21  WILL REMIND ME OF THIS, IF PLAINTIFFS WANT TO ADDRESS IT NOW
22  VERBALLY OR IF PLAINTIFFS WANT TO WRITE SOMETHING UP AND GIVE IT
23  TO ME TO READ TONIGHT.
24      MR. ETH:  YOUR HONOR, THERE IS PRIOR BRIEFING ON
25  THIS.

                                                              1099

1       THE COURT:  WHERE IS IT?
2       MR. ETH:  PRELIMINARY JURY INSTRUCTIONS, THE COMMENTS
3   ON THAT.  THE DRAFT THAT THE COURT HAD GIVEN US REFERRED TO THE
4   DOLLAR AMOUNT.  AND THE PLAINTIFFS SAID IT SHOULD BE A
5   PERCENTAGE AMOUNT, AND WE SAID NO, IT SHOULDN'T.  SO THERE WAS
6   BRIEFING ON THIS POINT IN THAT -- THE JOINTLY SUBMITTED COMMENTS
7   ON THE PRELIMINARY JURY INSTRUCTIONS.
8       MR. HARWOOD:  I ALSO THINK THE ISSUE WAS BRIEFED IN
9   THE DAUBERT MOTIONS.  AND WE UNDERSTOOD THE RULING ON THE
10  DAUBERT MOTION, WHICH DENIED THE MOTION, TO BE A DENIAL OF THE
11  CRITICISMS RAISED ABOUT THE CONSTANT PERCENTAGE METHOD.
12      THE COURT:  OH, WELL, I DON'T RULE ON WHAT'S RIGHT OR
13  WRONG.  I JUST RULE WHETHER IT CAN GO TO THE JURY.
14      MR. HARWOOD:  THAT'S -- WELL, THAT'S WHAT I
15  UNDERSTOOD THAT WE WOULD THEN BE ABLE TO PRESENT THAT METHOD TO
16  THE JURY.
17      THE COURT:  BUT HOW DOES THAT RELATE TO THE DAMAGE
18  INSTRUCTION?  HOW WILL THE JURY -- IF IN FACT IT'S A DIFFERENT
19  CALCULATION THAN A DOLLAR AMOUNT, HOW IS THE JURY GOING TO REACH
20  A DOLLAR AMOUNT FROM THAT CALCULATION?
21      MR. HARWOOD:  IF WE APPLY THE CONSTANT PERCENTAGE

Page 127

10-31-07 Final Transcript.txt

22  METHOD, THE JURY DOES NOT REACH A DOLLAR AMOUNT. THEY DETERMINE
23  PERCENTAGE INFLATION PER SHARE OVER TIME PERIODS. AND THEN IN
24  THE CLAIMS PROCEEDING, THE DOLLAR AMOUNT WOULD BE DETERMINED.
25          MR. ETH: SO, YOUR HONOR, WHAT IT DOES, TAKE A

1100

1   PERCENTAGE METHOD, EVERY SINGLE DAY WILL BE A DIFFERENT DOLLAR
2   AMOUNT. STOCK GOES UP A NICKEL, THERE'S A DIFFERENT AMOUNT OF
3   DAMAGES. STOCK GOES DOWN A DIME, DIFFERENT AMOUNT OF DAMAGES.
4   CHANGES EVERY SINGLE DAY. THAT'S WHAT WE SAID IN THAT PAPER
5   ABOUT WHY YOU CAN'T GO WITH THAT METHOD.
6           THE COURT: HMM. WELL, CAN HE DO IT -- CAN HE
7   TRANSLATE IT?
8           MR. ETH: HE'S DONE BOTH DOLLAR AND PERCENTAGE, BY
9   THE WAY. IN FACT, HE'S DONE FIVE DIFFERENT METHODS. BUT HE'S
10  GOT A DOLLAR NUMBER. HE'S GOT A PERCENTAGE NUMBER. HE'S GOT A
11  HYBRID METHOD. HE'S GOT A WHOLE BUNCH OF DIFFERENT METHODS
12  ALREADY SUBMITTED.
13          MY UNDERSTANDING IS THEY WERE GOING TO PRESENT ALL
14  HIS METHODS IS WHAT THEY WERE PLANNING ON DOING.
15          MR. HARWOOD: WELL, LET ME EXPLAIN HOW IT WOULD BE
16  TRANSLATED INTO A DOLLAR AMOUNT AND WHY IT CAN'T -- THAT
17  TRANSLATION CAN'T BE DONE OUTSIDE OF THE CLAIMS PROCESS.
18          SO TO TRANSLATE A PERCENTAGE INFLATION INTO A DOLLAR
19  AMOUNT, EACH INVESTOR HAS TO COME FORWARD WITH A CLAIM AND SAY
20  ON THIS DATE, I PURCHASED AND -- AND THE JURY'S VERDICT WOULD
21  SAY, WELL, THE INFLATION ON THAT DATE WAS 50 PERCENT, AND YOU
22  PAID A HUNDRED DOLLARS FOR YOUR STOCK SO THERE WAS $50 THAT YOU
23  OVER PAID. AND THEN ON ANOTHER DATE, I SOLD, AND IF THE -- IF
24  YOU -- IF THE INVESTOR SOLD FOR $50 AND THE INFLATION WAS THEN
25  20 PERCENT, THAT WOULD BE $10 OF INFLATION AND YOU WOULD

1101

```
                          10-31-07 Final Transcript.txt
 1   SUBTRACT THE INFLATION ON THE DATE OF SALE FROM THE INFLATION ON
 2   THE DATE OF PURCHASE, AND YOU'D GET THE INFLATION -- THE DAMAGES
 3   THAT THE INVESTOR SUFFERED, WHICH WOULD BE $40.
 4              THE COURT:  WELL, CAN DR. HAKALA TESTIFY ABOUT HOW
 5   THE JURY COULD DETERMINE A DOLLAR AMOUNT?
 6              MR. HARWOOD:  YES.  HE'S -- HE'S PUT IT AS AN
 7   ALTERNATE -- ALTERNATE METHOD, THE DOLLAR DROP METHOD, AND HE'S
 8   PREPARED TO TESTIFY ON THAT AS AN ALTERNATIVE.
 9              THE COURT:  OKAY.  WELL, YOU'D BETTER HAVE HIM DO
10   THAT.
11              MR. HARWOOD:  AND WILL WE BE PRECLUDED FROM
12   TESTIFYING ABOUT THE PERCENTAGE METHOD?
13              THE COURT:  I DON'T -- I DON'T THINK SO.  BUT IT MAY
14   BE THAT IT WILL END UP BEING MOOT AND THE JURY WON'T BE
15   INSTRUCTED TO CONSIDER THAT.  SO IF YOU'VE -- WANT TO DO IT
16   ANYWAY, I GUESS YOU CAN.
17              MR. HARWOOD:  UNDERSTOOD.
18              THE COURT:  MAYBE HE CAN EXPLAIN SOME CONNECTION
19   BETWEEN THE TWO.
20              MR. HARWOOD:  UNDERSTOOD.
21              THE COURT:  OKAY.  OH, AND THEN ON KALKHOVEN, I HAD
22   GUESSED THAT WHEN I GOT THE SECRET DOCUMENT, IT WOULD TELL ME
23   WHAT THE SECRET WAS, BUT IT DIDN'T.
24              I MEAN, I HAD ASSUMED THAT THE NOTION THAT THERE WAS
25   SOMETHING THAT HE WAS TO BE REPRIMANDED ABOUT AND TALKED TO
                                                                   1102
 1   ABOUT WOULD BE REVEALED IN THE REDACTED PARAGRAPH, BUT THE
 2   REDACTED PARAGRAPH, TO ME, DOESN'T REVEAL IT.  MAYBE I'M MISSING
 3   SOMETHING.
 4              MR. ETH:  WELL, THAT'S WHAT IT SAYS AND --
 5              THE COURT:  WELL, IS THERE SOME OTHER EXPLANATION
 6   SOMEWHERE ELSE IN SOME OTHER DOCUMENT OR TESTIMONY THAT'S
                                 Page 129
```

10-31-07 Final Transcript.txt

```
 7   BEEN --
 8              MR. ETH:  THAT'S IT --
 9              THE COURT:  -- PRIVILEGE CLAIMED.
10              MR. ETH:  -- WHICH IS WHY MAGISTRATE JUDGE LAPORTE
11   SAID IT'S EXCULPATORY.
12              THE COURT:  SO THERE'S NOTHING ELSE IN ANY OF
13   REDACTED DOCUMENTS THAT EXPLAINS WHAT THEY WERE TALKING ABOUT?
14              MR. ETH:  WE SUBMITTED TWO DIFFERENT BOARD MINUTES,
15   AND THAT'S THE EXPLANATION IS IN THOSE BOARD MINUTES.
16              THE COURT:  WELL, THERE'S ONE HIGHLIGHTED PARAGRAPH.
17              MR. ETH:  RIGHT.  BUT THERE'S ANOTHER -- I THINK WE
18   SUBMITTED ANOTHER SET OF BOARD MINUTES THAT WOULD GIVE YOU SOME
19   MORE CONTEXT.
20              THE COURT:  DID THAT HAVE A HIGHLIGHTED PARAGRAPH IN
21   IT?
22              MR. ETH:  NO.
23              THE COURT:  I DON'T HAVE IT IN FRONT OF ME NOW SO NOW
24   I CAN'T REMEMBER, BUT I DON'T --
25              MR. ETH:  THAT OTHER ONE WOULD GIVE SOME CONTEXT TO
                                                                 1103
 1   THE PART THAT HAD BEEN REDACTED.  IT'S JUST BEEN HANDED TO ME.
 2   BUT THERE'S REALLY NOTHING ELSE TO IT.
 3              THE COURT:  WELL, AND SO I SUPPOSE TO THE EXTENT
 4   PEOPLE ARE ASKED ABOUT IT, TO TRY AND FIND OUT WHAT THIS WAS ALL
 5   ABOUT, THEY ALL CLAIMED PRIVILEGE AND WE NEVER --
 6              MR. ETH:  IT WAS EITHER PRIVILEGED OR THEY DIDN'T
 7   KNOW.
 8              MS. HART:  AND DESPITE THE BOARD MINUTES, IN REGARD
 9   TO HIM BEING ASKED TO GO OUT INTO THE HALLWAY, HE TOO TESTIFIED
10   THAT HE DIDN'T KNOW.  HE WAS TO HAVE GONE OUT IN THE HALLWAY
11   WITH TWO OF THE MEMBERS OF THE BOARD, AND THE ISSUE OF WHETHER
```

10-31-07 Final Transcript.txt

14          THE COURT:  OH, NO.  IF HE'S GOING TO TESTIFY AT ALL,
15   HE'LL TESTIFY LIVE TOMORROW.
16                  (SIMULTANEOUS COLLOQUY.)
17          THE COURT:  -- THEY MAY NOT USE HIM AT ALL FOR TIME
18   REASONS.
19          MR. ETH:  THAT'S FINE.
20          THE COURT:  IF THAT HAPPENS, IT WILL BE UNFORTUNATE
21   FOR HIM PERHAPS, BUT --
22          MR. ETH:  OKAY.  THANK YOU.
23          (PROCEEDINGS WERE CONCLUDED AT 1:41 P.M.)
24                          --OOO--
25

CERTIFICATE OF REPORTER

       I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED
STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY
THAT THE FOREGOING PROCEEDINGS IN C02-1486CW, IN RE JDS
UNIPHASE CORPORATION SECURITIES LITIGATION, WERE REPORTED BY
ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER
TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE
FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID
PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.
       THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID
TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE
COURT FILE.


                 _____
                 RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR
                      THURSDAY, NOVEMBER 1, 2007
                              Page 136

10-31-07 Final Transcript.txt