COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
      – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | ) ) ) Master File No. C-01-0988-SI |
| | ) CLASS ACTION |
| This Document Relates To: | ) ) PLAINTIFFS' REPLY IN FURTHER |
| ALL ACTIONS. | ) SUPPORT OF THEIR MOTION TO ) EXCLUDE THE EXPERT TESTIMONY OF ) R. GLENN HUBBARD |

DATE:    January 9, 2009
TIME:    9:00 a.m.
CTRM:  The Honorable Susan Illston

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................................1

II.  ARGUMENT ......................................................................................................................1

    A.  Hubbard's Bias Precludes Him from Offering Reliable Opinions .........................1

    B.  Hubbard's Opinions About Oracle's Forecasting Process and Internal
        Forecast Data Should Be Excluded..........................................................................3

    C.  Hubbard's Opinion that Oracle's Sales Forecasts Were Informed by
        Economic Data Is Speculative and Should Be Excluded.........................................7

    D.  Hubbard's Opinions Are Duplicative of Foster's Opinions and Should Be
        Excluded Under Rule 403 ........................................................................................8

    E.  Hubbard's Opinions About Whether the Economy Was in a Recession
        Should Be Excluded.................................................................................................9

    F.  Hubbard's Opinions that Rely on the Financial Results of Oracle's
        Competitors and the Statements of Analysts About Those Results Are
        Unreliable ...............................................................................................................11

    G.  Hubbard's Opinions Based on Unspecified Channel Checks Are
        Unreliable ...............................................................................................................13

    H.  Hubbard's Opinion that the Diversity of Oracle's Customer Base
        Protected Its Revenues Should Be Excluded as Unreliable and Irrelevant ...........13

    I.  Hubbard's Opinions Invade the Province of the Jury............................................14

III.  CONCLUSION .................................................................................................................15

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Concord Boat Corp. v. Brunswick Corp.,*
  207 F.3d 1039 (8th Cir. 2000) ...................................................................6, 7

5

6

*Daubert v. Merrell Dow Pharms.,*
  43 F.3d 1311 (9th Cir. 1995) .........................................................................10

7

*Daubert v. Merrell Dow Pharms.,*
  509 U.S. 579 (1993) .......................................................................... *passim*

8

*Folden v. Wash. State Dep't of Social & Health Servs.,*
  744 F. Supp. 1507 (W.D. Wash. 1990),
  *aff'd,* 981 F.2d 1054 (9th Cir. 1992) .............................................................3

9

10

*GST Telecomms., Inc. v. Irwin,*
  192 F.R.D. 109 (S.D.N.Y. 2000) ..................................................................15

11

*Guillory v. Domtar Indus.,*
  95 F.3d 1320 (5th Cir. 1996) ...........................................................................6

12

13

*Habecker v. Copperloy Corp.,*
  893 F.2d 49 (3d Cir. 1990).................................................................................9

14

*Hangarter v. Provident Life & Accident Ins. Co.,*
  373 F.3d 998 (9th Cir. 2004) ...........................................................................5

15

16

*Hester v. BIC Corp.,*
  225 F.3d 178 (2d Cir. 2000)............................................................................10

17

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
  258 F. Supp. 2d 576 (S.D. Tex. 2003) .............................................................5

18

19

*Mukhtar v. Cal. State Univ.,*
  No. 01-15565, 2002 U.S. App. LEXIS 27934
  (9th Cir. Aug. 7, 2002)..................................................................................3, 9

20

21

*Polsby v. Shalala,* 925 F. Supp. 379 (D. Md. 1996),
  *aff'd sub nom., Polsby v. Chase,* 165 F.3d 19 (4th Cir. 1998)............................3

22

*Ralston v. Smith & Nephew Richards, Inc.,*
  275 F.3d 965 (10th Cir. 2001) ......................................................................4, 5

23

24

*SEC v. Lipson,*
  46 F. Supp. 2d 758 (N.D. Ill. 1999) ..............................................................14

25

*Thompson v. State Farm Fire & Cas. Co.,*
  34 F.3d 932 (10th Cir. 1994) .........................................................................14

26

27

28

Page

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
   395 F.3d 416 (7th Cir. 2005) ............................................................................................... 8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b) ..................................................................................................................................... 1

Federal Rules of Evidence
   Rule 403 .................................................................................................................................. 9
   Rule 702 ................................................................................................................. 1, 6, 8, 10

I.   **INTRODUCTION**

In an attempt to show that they did not violate §10(b) of the Securities Exchange Act of 1934 by making false and misleading statements concerning financial data, earnings guidance, and the performance of Oracle's product, Suite 11i, defendants have offered the opinions of R. Glenn Hubbard to support the "reasonableness" of the false and misleading statements at issue in this litigation.  In particular, Hubbard has opined that defendants' statements were reasonable in light of his views regarding Oracle's forecasting process and the United States' economy in Oracle's fiscal year 2001.  In Plaintiffs' Notice of Motion and Motion to Exclude the Expert Testimony of R. Glenn Hubbard ("Motion" or "Mot."), plaintiffs demonstrated numerous inadequacies in Hubbard's opinions, which plaintiffs showed to be irrelevant, unreliable, tainted with bias, and beyond the scope of Hubbard's particular area of expertise.  In an attempt to avoid having Hubbard's opinions excluded, defendants have suddenly changed course and now claim that these opinions are offered for purposes much more limited than those that clearly appear on the face of Hubbard's report.  Defendants, however, cannot cure the obvious shortcomings of Hubbard's purported expert opinions and his failure to satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).  As such, Hubbard's testimony must be excluded.

II.   **ARGUMENT**

A.   **Hubbard's Bias Precludes Him from Offering Reliable Opinions**

In their Motion, plaintiffs exposed the fact that Hubbard has a well-documented history of aversion toward securities class action litigation and a personal agenda to curb such litigation.  Mot. at 5-6.  As co-chairman of the Committee on Capital Markets Regulation (the "Paulson Committee"), Hubbard is one of three individuals who signed the preface of the Paulson Committee's November 30, 2006 Interim Report.  *Id.*  In this report, the Paulson Committee (and hence Hubbard) clearly advocates the curtailing of the current securities class action regime by pointing to "liability risks" and "[c]lass action settlement costs" as main contributing factors to the loss of U.S. market competitiveness, recommending "adjustments to our regulatory and litigation framework so that public markets are less burdensome," endorsing "caps on liability," and claiming that "the penalties [of securities enforcement] have grown disproportionately large relative to their

1    deterrent benefit." Mot. Ex. 12 at x, xii, 5, 11.[1]  Despite defendants' attempts to depict this report as

2    balanced and bipartisan, the Paulson Committee's (and hence Hubbard's) anti-class action

3    perspective is made readily evident in a three-page section of the report analyzing the "[c]ost-

4    [b]enefit" of shareholder litigation.  *Id.* at 78-80.  In this section, the Paulson Committee (and hence

5    Hubbard) states that, "[t]he modern securities class action lawsuit creates a heavy burden for public

6    companies; without a substantial social benefit, this burden cannot be justified."  *Id.* at 78.  This

7    statement leaves no doubt that the Paulson Committee (and hence Hubbard) has a strong bias against

8    securities class action litigation.

9            Defendants' attempt to refute Hubbard's bias by pointing to his deposition testimony and to

10   the fact that he has testified for plaintiffs in the past falls well short.  *See* Defendants' Opposition to

11   Plaintiffs' Motion to Exclude Expert Testimony of R. Glenn Hubbard ("Opp.") at 5.  First, the

12   McKesson-HBOC litigation cited by defendants was an individual action and therefore does not fall

13   within the category of cases that Hubbard seeks to terminate.  *See* Mot. Ex. 2 at 9:22-10:24; Reply

14   Ex. 1 at 7.[2]  Also, the party for whom Hubbard testified in that matter was Merrill Lynch, a frequent

15   defendant in securities class actions.  Mot. Ex. 2 at 9:22-10:24.  Such "service" to the plaintiffs does

16   nothing to refute Hubbard's bias.  Moreover, Hubbard's testimony that his "view is not that there is

17   no grounds for securities litigation," is far from any kind of endorsement of securities litigation that

18   defendants support.  *See id.* at 27:16-22; Opp. at 5.  Indeed, defendants have effectively abandoned

19   that claim, removing the argument from their previous opposition that Hubbard "sees a need for

20   securities litigation."  Defendants' Opposition to Plaintiffs' Motion to Exclude Expert Testimony of

21   R. Glenn Hubbard, filed August 27, 2007, at 5.  The reason for the change is clear – he does not see

22   a need for securities litigation.

23

24   _____

25   [1]      All "Mot. Ex." references are to the Declaration of Douglas R. Britton in Support of
         Plaintiffs' Motion to Exclude the Expert Testimony of R. Glenn Hubbard.

26   [2]      All "Reply Ex." references are to the Declaration of Douglas R. Britton in Support of
27   Plaintiffs' Reply in Further Support of Their Motion to Exclude the Expert Testimony of R. Glenn
         Hubbard.

28

1    Despite their efforts, defendants cannot escape the fact that, by signing the Paulson

2 Committee's report, Hubbard has demonstrated a personal bias against securities class action

3 litigation, which was confirmed by his testimony. *See* Mot. Ex. 2 at 25:12-15. Accordingly, it is a

4 stretch to think that Hubbard would issue opinions that would serve to do anything other than

5 facilitate the termination of this action – regardless of its merits. Any other opinion would directly

6 undermine the objectives of the Paulson Committee.

7    While the merits of Hubbard's views on securities class actions may not be at issue in this

8 case, his independence and objectivity clearly are. In fact, the effect of his bias can be seen by the

9 divergence between his previous views on the state of the U.S. economy and those which he

10 expresses for purposes of this litigation. *See* §II.E., *infra*. The practical certainty that Hubbard's

11 opinions have been biased by his personal views, combined with the other factors discussed below,

12 require that Hubbard's purported expert testimony be excluded from this case. *See, e.g.*, *Polsby v.*

13 *Shalala*, 925 F. Supp. 379, 393 (D. Md. 1996) (finding that a "lack of independence as an expert

14 witness destroys his credibility"), *aff'd sub nom.*, *Polsby v. Chase*, 165 F.3d 19 (4th Cir. 1998).[3]

15    **B.    Hubbard's Opinions About Oracle's Forecasting Process and Internal**
         **Forecast Data Should Be Excluded**
16

17    In his report, Hubbard repeatedly expresses opinions concerning Oracle's internal forecasting

18 process, including analyses of the information made available to defendants through this process, the

19 historical accuracy of the process, and the overall reasonableness of the process. Mot. Ex. 1 at 5, 78-

20 94. As detailed in plaintiffs' Motion, these opinions are based on unreliable methodologies and are

21 outside the scope of Hubbard's purported area of expertise. *See* Mot. at 6-10.

22 [3]    Defendants' reliance on *Folden v. Wash. State Dep't of Social & Health Servs.*, 744 F. Supp.

23 1507 (W.D. Wash. 1990), *aff'd*, 981 F.2d 1054 (9th Cir. 1992), for the proposition that the effect of
   Hubbard's bias should be to discount his testimony but not exclude it, is misplaced. Opp. at 5.

24 Because *Folden* was a bench trial, the danger of allowing an unreliable expert opinion to influence
   jurors was not present. Moreover, the court in that case still made it very clear that a lack of

25 independence can destroy an expert witness's credibility. *Folden*, 744 F. Supp. at 1522. When the
   bias rises to the level it has in this case, exclusion is necessary to prevent the jury from being misled

26 by unreliable opinions. *See Mukhtar v. Cal. State Univ.*, No. 01-15565, 2002 U.S. App. LEXIS
   27934, at *24 (9th Cir. Aug. 7, 2002) ("Maintaining *Daubert*'s standards is particularly important

27 considering the aura of authority experts often exude, which can lead juries to give more weight to
   their testimony.").

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF R. GLENN HUBBARD - C-01-0988-SI                                                    - 3 -

1      Defendants respond to the shortcomings illuminated by plaintiffs by re-characterizing

2 Hubbard's opinions, claiming that he is not actually testifying as to the reasonableness of Oracle's

3 forecasting process, but rather, only the reasonableness of Oracle's statements in light of internal

4 data gathered from Oracle's forecasting process.  Opp. at 13-15.  The plain language of Hubbard's

5 report, however, makes it clear that he is in fact attempting to opine on the quality and

6 reasonableness of Oracle's forecasting process.  *See, e.g.*, Mot. Ex. 1, ¶159 ("[Oracle's forecasting]

7 process is exactly ***what one would expect*** in Oracle's type of business")[4]; ¶160 ("In developing

8 projections and forecasts, ***it is appropriate*** for a company to start by asking the front line sales

9 representatives for their sales prospects."); ¶168 ("Oracle's practice of basing its forecasts on sales

10 representatives' projections, management assessment of deals in progress, and historical conversion

11 ratios ***was reasonable*** given the inherent uncertainty of the company's license revenue, its biggest

12 source of revenue.").  Defendants' attempt to re-characterize Hubbard's opinions effectively serves

13 as a concession that Hubbard is not qualified to opine on the reasonableness of Oracle's forecasting

14 process and that he employed unreliable methodologies in doing so.

15      Defendants have not carried and, in fact, cannot carry their burden of showing that Hubbard

16 is qualified to opine on the reasonableness or quality of Oracle's internal forecasting process.  *See*

17 *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001) (explaining that

18 proponent of expert testimony bears burden of demonstrating expert's qualifications).  They claim

19 that plaintiffs' concerns regarding Hubbard's qualifications are "laughable" – but, in fact, Hubbard's

20 attempt to offer expert opinions on matters for which he is not qualified to opine is a very serious

21 matter.  While Hubbard may be experienced in the field of macroeconomics, defendants have

22 pointed to no qualifications that would enable him to offer expert opinions on the forecasting

23 procedures of a corporate entity such as Oracle.  They offer only his government service and his

24 experience as an outside corporate director as the sum total of his qualifications to opine on the

25 quality of Oracle's forecasting process, without providing any details about his actual forecasting

---

[4]     All emphasis is added and citations are omitted, unless otherwise noted.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF R. GLENN HUBBARD - C-01-0988-SI        - 4 -

1    experience in those roles.  Opp. at 13.  But neither his role as Deputy Assistant Secretary (Tax

2    Analysis) of the U.S. Department of the Treasury nor his experience as an outside director imply that

3    he is qualified to opine on internal corporate forecasting procedures.  The former is far too removed

4    from the realities of the business environment, while the latter generally requires limited

5    involvement with the day-to-day processes of the corporation.  *See, e.g.*, *In re Enron Corp. Sec.,*

6    *Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 626 n.55 (S.D. Tex. 2003).  As such, defendants

7    have failed miserably to satisfy their burden of qualifying Hubbard as an expert on corporate

8    forecasting, and his opinions regarding this issue must therefore be excluded.  *See Ralston*, 275 F.3d

9    at 970 n.4.[5]

10        Even if defendants could carry their burden, plaintiffs have shown that the methodologies

11   Hubbard employs to support his opinions on this matter are clearly unreliable.  *See* Mot. at 8-10.  In

12   their Motion, plaintiffs exposed a multitude of inadequacies relating to Hubbard's analysis of

13   Oracle's forecasting process, including his failure to consider the impact of Ellison's forecasting

14   directive, his failure to test the reliability of the conversion ratio, his failure to consider the effects of

15   Oracle's changing product mix, his failure to account for the problems Oracle was experiencing with

16   Suite 11i, and his failure to consider the very "'forecasting indicators'" that Ellison testified were

17   "'key'" to gauging Oracle's forecast.  *Id.* at 9.  These factors each had a very significant impact on

18   Oracle's forecasting process.  *See, e.g.*, Mot. Ex. 2 at 15:5-18; Mot. Ex. 13 at 179:6-25.  As such,

19   their blatant omission from Hubbard's analysis makes his opinions regarding Oracle's forecasting

20   process completely unreliable.  Plaintiffs have shown that Hubbard completely ignored a wealth of

21   information that directly undermined his opinions and rendered them wholly unreliable.  *See, e.g.*,

22

23

24   ───────────────

25   [5]      Defendants' reliance on *Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998 (9th
     Cir. 2004), is misplaced.  While the expert in that case lacked experience relating specifically to bad

26   faith claims, he had extensive experience in the insurance business.  *Id.* at 1015-16.  Here,
     defendants have failed to show that Hubbard has any practical experience working with forecasts in

27   a business environment.  In fact, Hubbard testified that, "I'm not a businessperson, sir, I'm a
     professor."  Mot. Ex. 2 at 46:4-5.

28

1    *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (exclusion where

2    proposed expert had not considered all relevant evidence). [6]

3           Even if the only purpose of Hubbard's opinions is to show, as defendants now claim, that

4    defendants' statements were reasonable in light of information made available through Oracle's

5    forecasting process, Hubbard would still be required to conduct a thorough and reliable examination

6    of the forecasting process in order to ascertain exactly what reliable information was actually made

7    available by that process. Because plaintiffs have illustrated that Hubbard failed to conduct any such

8    analysis of Oracle's forecasting process, his opinion that defendants' statements were reasonable in

9    light of that process is necessarily unreliable. Hubbard's testimony must be excluded as a result.

10   Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589.

11          Defendants claim that none of the significant facts plaintiffs identify as missing from

12   Hubbard's analysis are supported by evidence because plaintiffs rely on the report of their expert,

13   Dr. Goedde. Opp. at 14. This assertion is patently false. Dr. Goedde's report, as well as plaintiffs'

14   Motion, cites a wealth of evidence showing that Oracle's forecasting process was unreliable,

15   including that Ellison's directive occurred and was followed, and that the conversion ratio on which

16   Oracle based public guidance was growing increasingly unreliable. Mot. at 8-9; *see also* Reply Ex. 2

17   at 203683; Reply Exs. 3, 4. Hubbard's disregard of this evidence does not qualify as a disagreement

18   between experts. Although experts are allowed to rely on their party's version of the facts to a

19   certain extent, the fact that Hubbard has blatantly disregarded facts that have been shown to be

20

21

22

23
_____

24   [6]     Recognizing that Hubbard's failure to consider these facts shows that his methods were
     flawed, defendants assert that his shortcomings "do[] not render Professor Hubbard's opinions
25   unreliable to the point they warrant exclusion." Opp. at 14. Aside from the lukewarm enthusiasm
     the statement betrays, it is unpersuasive in saving those opinions from exclusion. Defendants'
26   attempt to rely on *Guillory v. Domtar Indus.*, 95 F.3d 1320 (5th Cir. 1996), as somehow excusing
     their unreliability because their flaws may not have been as egregious as other experts who have
27   been excluded, is unavailing. Whether Hubbard altered facts or completely ignored them, his
     methodologies were unreliable.

28

1  fundamental to the matters on which he is opining makes his opinions unreliable and excludable.[7]

2  *Concord Boat*, 207 F.3d at 1056.

      **C.**    **Hubbard's Opinion that Oracle's Sales Forecasts Were Informed by Economic Data Is Speculative and Should Be Excluded**

3

4        As illustrated in plaintiffs' Motion, Hubbard offers nothing more than rank speculation to

5  support his opinion that Oracle's sales forecasts were the product of economic information.  Mot. at

6  10.  In arriving at his opinion, Hubbard does not utilize any methodology at all, let alone a reliable

7  and accepted one.  He fails to cite to any customer testimony, customer documents, sales documents,

8  or other internal information to inform or test his opinion.  *See* Mot. Ex. 4, ¶¶56-60.  Instead,

9  Hubbard relies on his own intuition to speculate that salespeople must have received meaningful

10  macroeconomic information from customers and incorporated it into their forecasts.  *See id.*, ¶55;

11  Mot. at 10.

12        Although defendants claim that Hubbard's assumptions are supported by the testimony of

13  three Oracle executives, this is far from the truth.  Opp. at 16; *see also* Mot. Ex. 4, ¶¶56-60.  The

14  statements relied on by Hubbard are in fact completely void of any specifics regarding the kind of

15  information executives or salespeople learned from their customers, whether they had a reliable

16  understanding of how forthcoming their customers were, or whether and how any information

17  gained from customers was actually incorporated into the field-level forecasts.  *See* Mot. Ex. 4,

18  ¶¶56-60.  Furthermore, Hubbard's opinion is directly at odds with testimony from Henley, who

19  stated:

20          Until you get to the end of the quarter, unfortunately, in this crazy business

21  I'm in, ***you really don't test your customer*** to see what they really think about their business and ***what they really think about the economy***.

22  Reply Ex. 5 at 206:5-9.  This testimony shows the speculative and unreliable nature of Hubbard's

23  opinions.  But even if some economic data had been incorporated into Oracle's forecast at the sales

24

25  _____

26  [7]    Defendants also claim that the declaration of Ray Lane is irrelevant to Hubbard's analysis.  Opp. at 15 n.5.  However, as plaintiffs showed in their Motion, Mr. Lane's declaration is relevant to the reliability of Hubbard's analysis because it highlights Hubbard's failure to even consider alternative explanations.

27

28

level, Hubbard has not shown and cannot show that adjustments for the economic environment were still not required because information at that level would certainly be imperfect.  Hubbard fails to account for, or even consider, this fact.  Due to the deficiencies in Hubbard's analysis, his opinion that Oracle's sales forecasts were the product of information that reflected macroeconomic changes is supported by nothing more than Hubbard's own intuition and is clearly not the result of any reliable or testable methodology.  *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable . . . 'expert intuition,' is neither normal . . . nor testable . . . .").

Hubbard's opinion on this matter must be excluded because it again relies on an analysis of the nature of Oracle's forecasting process.  *See* Opp. at 15 ("As part of his analysis, Professor Hubbard concluded that Oracle's forecast process, by its nature, included economic and macroeconomic information.").  As detailed in the previous section, Hubbard is not qualified to offer expert opinions on forecasting processes within the business environment, much less what salespeople may or may not intuitively consider in forming their sales forecasts.  As such, Hubbard's opinions are not only based on unreliable methods and mere speculation, but they are also outside the scope of his area of expertise.  As such, Hubbard's testimony on this issue must be excluded. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589.

### D.    Hubbard's Opinions Are Duplicative of Foster's Opinions and Should Be Excluded Under Rule 403

Plaintiffs' Motion demonstrated that defendants have offered numerous duplicative opinions from Foster and Hubbard regarding the reasonableness of Oracle's forecasting process and the incorporation of economic data into that process.  Mot. at 12-14.  In their response, defendants do not refute the fact that Hubbard and Foster offer duplicative opinions; rather, defendants focus on their claim that Hubbard and Foster offer their opinions for different purposes.[8]  Opp. at 16.  As

---

[8]    Defendants' failure to dispute the duplicative aspects of these opinions effectively serves as a concession that the opinions are duplicative.

1  plaintiffs have shown, however, there is no practical difference in their opinions.  Mot. at 12-14.

2  Both experts opine on the reasonableness and quality of Oracle's forecasting process – the fact that

3  Hubbard adds his conclusion that the forecasting process supported the reasonableness of

4  defendants' statements does not change the reality that, through the identical opinions in their

5  respective reports, Hubbard and Foster have attempted to offer cumulative evidence that should be

6  excluded under Federal Rule of Evidence 403.  *See id.*

7       Defendants argue that plaintiffs cannot demonstrate that the probative value of defendants'

8  duplicative expert opinions is substantially outweighed by considerations of needless presentation of

9  cumulative evidence.  Opp. at 16-17.  Defendants, however, offer no analysis on this issue.  And,

10  considering the shortcomings of Hubbard's analysis regarding Oracle's forecasting process,

11  including his lack of qualifications to offer such opinions and the unreliability of the methods he

12  employed to arrive at such opinions, the probative value of these opinions is minimal at best.  On the

13  other hand, considering the danger for expert opinions to carry unnecessarily heavy weight – a

14  danger that courts have repeatedly recognized – the considerations in favor of excluding Hubbard's

15  forecasting opinions as needlessly cumulative evidence are substantial.  *See Mukhtar*, 2002 U.S.

16  App. LEXIS 27934, at *24.  As such, Hubbard's opinions relating to Oracle's forecasting process

17  should be excluded under Rule 403.[9]

18  **E.     Hubbard's Opinions About Whether the Economy Was in a Recession**
       **Should Be Excluded**

19       In his report, Hubbard makes it very clear that the rationale for his analysis of whether the

20  economy was in a recession was to examine the reasonableness of defendants' statements regarding

21  their public guidance.  Mot. Ex. 1, ¶94.  In their Motion, however, plaintiffs exposed Hubbard's utter

22  failure to analyze or attempt to explain the connection between the reasonableness of defendants'

23  statements and the existence (or lack thereof) of a recession.  Mot. at 14-18.  As such, plaintiffs

24

25  ─────────────────

26  [9]     Defendants' reliance on *Habecker v. Copperloy Corp.*, 893 F.2d 49, 53 (3d Cir. 1990), is
misplaced.  There, the court did not hold that the trial court should have admitted the duplicative

27  testimony; it simply held it was not in a position to determine that the trial court could not have
admitted the testimony.

28

1    exposed Hubbard's failure to provide the requisite "'fit'" between his opinion and the issues in this

2    case. *Id.*; *see also Daubert*, 509 U.S. at 591 ("'An additional consideration under Rule 702 – and

3    another aspect of relevancy – is whether expert testimony proffered in the case is sufficiently tied to

4    the facts of the case that it will aid the jury in resolving a factual dispute.'").

5        Defendants argue that Hubbard's opinions are relevant to plaintiffs' allegations concerning

6    Oracle's misleading statements that they were not experiencing any impact from the struggling

7    economy, as well as Oracle's safe harbor defense. Opp. at 6-8. But Hubbard cannot properly opine

8    that any of defendants' statements were reasonable in light of the fact that there was no recession

9    without first conducting a thorough analysis of how a recession was necessary to make their

10   statements unreasonable. Hubbard's failure to conduct any analysis of how a recession would affect

11   the reasonableness of any of defendants' statements prevents him from properly opining that

12   defendants' statements were reasonable in light of the fact that there was no recession. Hubbard has

13   failed to provide the necessary "fit" for this opinion and, thus, it must be excluded from testimony.

14   *Daubert*, 509 U.S. at 591.

15       It is not surprising, however, that Hubbard did not conduct the required analysis because the

16   existence (or lack thereof) of a recession simply is not relevant to a determination of whether

17   defendants' statements were unreasonable. The relevant issue in this case is whether the economy,

18   whatever its technical state, was having a negative impact on Oracle's business such that Oracle's

19   statements were false and misleading. An opinion that the economy did not meet the technical

20   definition of a recession will not "'assist the trier of fact to understand the evidence or to determine a

21   fact in issue.'" *Id.* Such an opinion can only confuse the issues. By opining that defendants'

22   statements were reasonable because the economy was not in a recession, Hubbard improperly plays

23   the role of oath helper. Hubbard's testimony must be excluded. *See, e.g.*, *Hester v. BIC Corp.*, 225

24   F.3d 178, 184-85 (2d Cir. 2000) (finding that where the jury's opinion is as good as the witness's,

25   the witness turns into no more than an improper "oath helper").

26       Even if defendants could somehow show this opinion to be relevant to a factual issue in this

27   case, exclusion would still be warranted because Hubbard's opinion appears to have been developed

28   solely for purposes of this litigation. *See Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1317 (9th

1   Cir. 1995) ("One very significant fact to be considered is whether the expert[] . . . developed [his]

2   opinions expressly for purposes of testifying.").  As plaintiffs revealed in their Motion, Hubbard

3   served as an economic advisor to the Bush Administration (the "Administration") during the period

4   at issue in this litigation, and it is well-documented that during that time, the Administration's

5   position was that a recession was imminent, or at least very likely.  Mot. at 16-18.  As such,

6   Hubbard's current opinion is directly at odds with the position taken by the very Administration he

7   was advising during the period in question.  *Id.*[10]  The inconsistency makes Hubbard's opinion that

8   the economy was not in a recession unreliable, and thus, his testimony must be excluded.[11]

9       **F.    Hubbard's Opinions that Rely on the Financial Results of Oracle's**
        **Competitors and the Statements of Analysts About Those Results Are**
10      **Unreliable**

11          Hubbard also attempts to use the financial results of Oracle's competitors, as well as analyst

12   commentary of those results, to opine that defendants did not know about the effect of the economic

13   downturn on Oracle's business until the very end of the quarter.  Mot. at 16; Mot. Ex. 1, ¶¶70-81,

14   91-93.  Plaintiffs, however, have shown that Hubbard's analysis renders his opinion on this matter

15   both unreliable and irrelevant.  Mot. at 18-19.  In response, defendants again change course and

16   attempt to re-characterize the nature of Hubbard's analysis by claiming that he offered this opinion

17   simply to show that defendants' statements were consistent with general information known at the

18   time.  Opp. at 11.  No matter which view one takes, however, Hubbard's opinion is both unreliable

19   and irrelevant.

20          Hubbard's report is clear on its face that the purpose of his opinion regarding Oracle's

21   competitors is to support his conclusion that defendants' statements were reasonable because they

22   _____

23   [10]     Hubbard's testimony that he did not share the Administration's view on the economy is
     simply not credible since he failed to mention any such disagreement in his reports.  Instead, he
24   repeatedly emphasized his role as the Administration's economic advisor.  Only when challenged by
     plaintiffs did Hubbard distance himself from the Administration.
25

26   [11]     Defendants' attempt to support Hubbard's opinion with the findings of the National Bureau
     of Economic Research Business Cycle Dating Committee is unpersuasive.  Opp. at 8.  The
27   determinations this committee made nearly a year after the period in question are completely
     irrelevant to what Oracle knew or understood at that time.

28

1   did not know about the effects of the economic slowdown until the end of the quarter.  Mot. Ex. 1,

2   ¶¶70-81, 91-93.  In doing so, Hubbard relies on information and anecdotal evidence from outside of

3   Oracle, even though it is clear that contradictory information was available within Oracle at that

4   time.  Mot. at 18-19; Reply Ex. 6 at 75:25-77:16, 113:25-116:19, 122:1-25, 127:24-129:25, 143:12-

5   144:3, 156:4-159:21; Reply Ex. 7 at 333:22-334:1, 466:19-467:19, 551:1-553:18; Reply Ex. 5 at

6   64:15-65:20,  114:5-118:9,  120:4-13,  222:18-223:24.   His  methods  are  therefore  unreliable.

7   Moreover, the outside information on which Hubbard relies is, itself, unreliable because he fails to

8   test the competitor testimonials, he fails to verify the specific time at which Oracle's competitors

9   began  to  witness  the  cited  economic  slowdown,  and  he  fails  to  investigate  the  foundation  and

10  accuracy of the analyst statements.  Mot. at 18.  Hubbard's opinions should be excluded.

11          Even if the opinion is considered only for the limited purpose of showing that defendants'

12  statements were consistent with information generally known at the time, it is both irrelevant and

13  unreliable.  Indeed, defendants have failed to explain how an opinion that defendants' statements

14  were consistent with information generally known by others at the time would assist a trier of fact in

15  determining any fact at issue in this case.  Accordingly, defendants cannot provide the required "fit"

16  for Hubbard's opinion.  *Daubert*, 509 U.S. at 591.  Even if they could, however, Hubbard's opinion

17  should be excluded as unreliable because he failed to test the reliability of his outside sources.  Mot.

18  at 18-19.

19          Hubbard's reliance on securities analysts fails for another reason – they are unreliable

20  because they largely rely on information from management.  As plaintiffs established in their

21  Motion, defendants' own purported expert, George Foster, has written about the unreliable nature of

22  securities analyst forecasts.  Mot. at 20-21.  Defendants attempt to counter this fact by claiming that

23  plaintiffs "cherry-picked" Foster's writing.  Opp. at 10.  Defendants' argument, however, does

24  nothing to refute the fact that Foster clearly questions the reliability of securities analysts, which is

25  an opinion shared by Ellison:  "What most analysts say about your company has more to do with the

26  financial results of your last couple of quarters than anything else."  Reply Ex. 8 at 262.  Hubbard's

27  opinion should be excluded.

28

### G.    Hubbard's Opinions Based on Unspecified Channel Checks Are Unreliable

Hubbard also relies on analyst expectations and independent channel checks of Oracle's business throughout the Class Period to support his opinion that defendants' statements were reasonable because analysts were confident in Oracle's ability to make its guidance. Mot. Ex. 1, ¶¶63, 64, 69; Mot. Ex. 4, ¶¶21-31.  Plaintiffs, however, have shown that this analysis is both unreliable and irrelevant. Mot. at 19-21.  Like his analysis relating to Oracle's competitors, Hubbard again attempts to rely on statements and information from outside of Oracle to support the reasonableness of defendants' statements, as opposed to examining the available evidence from within Oracle. *Id.*  And he does so without testing the reliability of this outside information. *Id.*

Defendants attempt to counter this argument with the same response they use for Hubbard's opinion regarding Oracle's competitors.  Opp. at 9-11.  But, for the same reasons discussed in the previous section, defendants' argument fails.  If the opinion is intended to support the reasonableness of defendants' statements by analyzing what they knew at the time, it employs an unreliable methodology for doing so.  If the opinion is intended simply to show that defendants' statements were consistent with what others thought, then not only is it the product of unreliable methodology, but it also lacks the proper "fit" to any of the issues in this case.  Either way, this opinion should be excluded from testimony.

### H.    Hubbard's Opinion that the Diversity of Oracle's Customer Base Protected Its Revenues Should Be Excluded as Unreliable and Irrelevant

Hubbard also concludes that defendants' statements were reasonable because the diversity of Oracle's customer base protected its revenues from being significantly affected by any slowdowns in the economy.  Mot. Ex. 1, ¶86.  Plaintiffs, however, showed in their Motion that Hubbard failed to bridge the analytical gap between his general proposition and the issue presented here – whether Oracle's ability to reach public quarterly guidance and the Company's health thereafter could be affected by an economic slowdown in the segments of the market that affected Oracle's business.  Defendants still do not bridge the analytical gap.  Mot. at 20-21.  Instead, they respond by, yet again,

1   re-characterizing Hubbard's opinion and claiming that plaintiffs misunderstand its nature.  Opp. at

2   12.

3           Plaintiffs have not misunderstood.  Defendants assert that Hubbard's analysis revealed that

4   the "customer base was extremely broad," thus suggesting that Oracle executives could expect to

5   remain insulated from economic slowdowns and had a reasonable basis for their supposed

6   confidence in Oracle's condition and prospects.  *Id.*  However, as plaintiffs demonstrated in their

7   Motion, Hubbard's analysis says nothing about the effect that this diversity could have on public

8   guidance or the ongoing growth of the Company.  Mot. at 19-21.  Instead, Hubbard's assessment is

9   based solely on an examination of the number of customers Oracle had and the impact of that

10  number on Oracle's revenue.  As such, his analysis fails to account for Oracle's vulnerability to any

11  segment-specific economic slowdowns, and thus amounts to an irrelevant assessment of Oracle's

12  customer base and its diversity.  *Id*.

13          To demonstrate the significance of Hubbard's flawed analysis, plaintiffs point to a statement

14  from defendant Henley at the end of the quarter that the dot.com sector contributed to Oracle's miss.

15  Mot. at 21.  Plaintiffs do not, as defendants claim, attempt to use this statement as "ex-post

16  evidence" to show that defendants' prior statements were unreasonable (which they were).  Rather,

17  plaintiffs use this quote to illustrate that Oracle's guidance could be affected by a single sector of the

18  market, which undermines the reliability of Hubbard's analysis.  Given defendants' ultimate

19  concession that a slowdown in one specific segment did in fact have an impact on Oracle's miss,

20  Hubbard's failure to adequately address the vulnerability of Oracle's guidance renders his opinion

21  completely unreliable and irrelevant.

22          **I.      Hubbard's Opinions Invade the Province of the Jury**

23          Plaintiffs' Motion establishes that Hubbard's opinions regarding the "reasonableness" of

24  defendants' statements are "at worst, rank speculation; [and] at best, they are credibility choices that

25  are within the province of the jury."  *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1999).  By

26  attempting to define whether defendants' actions were "reasonable," Hubbard is effectively opining

27  that defendants' statements did not violate the securities laws.  *See Thompson v. State Farm Fire &*

28  *Cas. Co.*, 34 F.3d 932, 939 (10th Cir. 1994).  Defendants do not dispute this point.

1    Defendants claim that Hubbard is not opining on what defendants subjectively believed –

2 which they concede is a question for the trier of fact – but rather, whether their statements were

3 objectively reasonable in light of information known at the time. Opp. at 17. But defendants cannot

4 credibly dispute that Hubbard's opinions address questions of law and fact that must be left to the

5 jury. *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000).

6 **III.    CONCLUSION**

7    For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs'

8 motion to exclude the expert testimony of R. Glenn Hubbard.

9 DATED:  December 12, 2008                  Respectfully submitted,

10                                           COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
11                                           MARK SOLOMON
                                             DOUGLAS R. BRITTON
12

13
                                                      s/ DOUGLAS R. BRITTON
14                                                  DOUGLAS R. BRITTON

15                                           655 West Broadway, Suite 1900
                                             San Diego, CA  92101
16                                           Telephone:  619/231-1058
                                             619/231-7423 (fax)
17
                                             COUGHLIN STOIA GELLER
18                                             RUDMAN & ROBBINS LLP
                                             SHAWN A. WILLIAMS
19                                           WILLOW E. RADCLIFFE
                                             ELI R. GREENSTEIN
20                                           DANIEL J. PFEFFERBAUM
                                             100 Pine Street, Suite 2600
21                                           San Francisco, CA  94111
                                             Telephone:  415/288-4545
22                                           415/288-4534 (fax)

23                                           COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
24                                           STACEY M. KAPLAN
                                             9601 Wilshire Blvd., Suite 510
25                                           Los Angeles, CA  90210
                                             Telephone:  310/859-3100
26                                           310/278-2148 (fax)

27                                           Lead Counsel for Plaintiffs

28 C:\PROGRA~1\pdfDocs\users\DeeM\Import\BRF00056119_Hubbard_Reply.doc

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF R. GLENN HUBBARD - C-01-0988-SI                                    - 15 -

1                                 <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on December 12, 2008, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5 mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6 participants indicated on the attached Manual Notice List.

7          I certify under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct.  Executed on December 12, 2008.

9

10                                            s/ DOUGLAS R. BRITTON
                                     DOUGLAS R. BRITTON

11                                   COUGHLIN STOIA GELLER

12                                        RUDMAN & ROBBINS LLP
                                   655 West Broadway, Suite 1900

13                                   San Diego, CA  92101-3301
                                   Telephone:  619/231-1058

14                                   619/231-7423 (fax)

15                                   E-mail:DougB@csgrr.com

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 3:01-cv-00988-SI

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,jillk@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Dorian Estelle Daley**
  dorian.daley@oracle.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,eeberline@morganlewis.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com,#sfdocket@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,sholloway@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111

**Monique C. Winkler**
Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111