COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
      – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-SI |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GEORGE FOSTER |
| | DATE:      January 9, 2009<br>TIME:      9:00 a.m.<br>CTRM:   The Honorable Susan Illston |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ........................................................................................................1

    A.    Foster's Opinions Are Biased and Therefore Unreliable.........................1

    B.    Foster's Lack of Fundamental Knowledge of the Facts Undermines the Reliability of His Opinions ...........................................................................3

    C.    Foster's Opinions Lack a Reliable Factual Foundation...........................6

        1.    Foster's Failure to Analyze Ellison's Directive............................7

        2.    Foster Failed to Consider the Reliability of the Historical Conversion Ratio that Formed the Basis of Oracle's Guidance .................8

        3.    Foster Failed to Consider the Macroeconomic Conditions Facing Oracle in 3QFY01 .......................................................................9

    D.    Foster's Opinions Based on His Definition of a "Reasonable Forecast Process" Should Be Excluded Under *Daubert* ......................................10

    E.    Foster's Opinions Based on Securities Analysts Should Be Excluded.................12

    F.    Foster's Intra-Quarter Revenue Regression Is Unreliable .....................13

    G.    Foster's Pipeline Growth Regression Is Unreliable..............................14

    H.    Foster's Opinions Are Duplicative and Should Be Excluded...............15

III.   CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page

**CASES**

*Beam v. Stewart,*
    845 A.2d 1040 (Del. 2004) ...............................................................................2

*Concord Boat Corp. v. Brunswick Corp.,*
    207 F.3d 1039 (8th Cir. 2000) ..........................................................................6

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579 (1993) ............................................................................... *passim*

*Dunn v. Sears, Roebuck & Co.,*
    639 F.2d 1171 (5th Cir. 1981) ..........................................................................3

*Folden v. Wash. State Dep't of Social & Health Servs.,*
    744 F. Supp. 1507 (W.D. Wash. 1990), *aff'd,*
    981 F.2d 1054 (9th Cir. 1992) ..........................................................................3

*Hamilton v. Signature Flight Support Corp.,*
    No. C 05-0490 CW (MEJ), 2005 U.S. Dist. LEXIS 40088
    (N.D. Cal. Dec. 20, 2005) .................................................................................7

*In re Jackson Nat'l Life Ins. Co. Premium Litig.,*
    No. 5:96:MD:1122, 1999 U.S. Dist. LEXIS 17153
    (W.D. Mich. Sept. 29, 1999) ............................................................................3

*In re Oracle Corp. Derivative Litig.,*
    824 A.2d 917 (Del. Ch. 2003) ......................................................................1, 2

*Keithley v. Home Store.com, Inc.,*
    No. C-03-04447 SI (EDL), 2008 U.S. Dist. LEXIS 61741
    (N.D. Cal. Aug. 12, 2008) ................................................................................7

*Keystone Mfg. Co. v. Jaccard Corp.,*
    394 F. Supp. 2d 543 (W.D.N.Y. 2005) ...........................................................5

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ...................................................................................10, 13

*Manning v. Crockett,*
    No. 95 C 3117, 1999 U.S. Dist. LEXIS 7966
    (N.D. Ill. May 17, 1999) ...............................................................................4, 5

*Mukhtar v. Cal. State Univ.,*
    No. 01-15565, 2002 U.S. App. LEXIS 27934
    (9th Cir. Aug. 7, 2002) ................................................................................2, 11

*PRS Benefits v. Cent. Leasing Mgmt.,*
    No. 3:03-CV-1183-B, 2004 U.S. Dist. LEXIS 24135
    (N.D. Tex. Nov. 29, 2004) ................................................................................6

**Page**

*Seeley v. Hamilton Beach/Proctor-Silex, Inc.*,
349 F. Supp. 2d 381 (N.D.N.Y. 2004)............................................................................5

*Shaw v. Digital Equip. Corp.*,
82 F.3d 1194 (1st Cir. 1996) .........................................................................................14

*Target Mkt. Publ'g v. ADVO, Inc.*,
136 F.3d 1139 (7th Cir. 1998) .........................................................................................6

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
878 F.2d 791 (4th Cir. 1989) .........................................................................................11

*Trigon Ins. Co. v. United States*,
204 F.R.D. 277 (E.D. Va. 2001) ...............................................................................3, 4, 5

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
313 F. Supp. 2d 213 (S.D.N.Y. 2004)..............................................................................8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 26 ...........................................................................................................................4

Federal Rules of Evidence
Rule 403 ...................................................................................................................14, 15
Rule 702 ................................................................................................................1, 4, 6, 8

# I.   INTRODUCTION

Defendants' opposition offers little challenge to the numerous shortcomings that plaintiffs highlighted in their Motion to Exclude the Expert Testimony of George Foster ("Motion" or "Mot."). As plaintiffs demonstrated in their Motion, Foster failed to satisfy his obligations under Federal Rule of Evidence 702 and under the Supreme Court's decision in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). He possesses the same "bias-creating relationships" that the Delaware Court of Chancery recognized *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 948 (Del. Ch. 2003), and he lacks fundamental knowledge of the facts underlying his opinions because he failed to independently verify or analyze the opinions presented in the report that defendants' litigation consultant prepared for him to sign. In fact, Foster failed to consider critical facts that undermined Oracle's forecast process, which render his opinions unreliable and manufactured. Defendants' opposition does not credibly rebut these facts. The combined weight of Foster's shortcomings requires the exclusion of his opinions.

# II.   ARGUMENT

## A.   Foster's Opinions Are Biased and Therefore Unreliable

Plaintiffs established in their Motion that Foster has connections to Oracle and its directors and executives that undermine his reliability. Mot. at 5-8. Defendants have done nothing to rebut this argument. In fact, they do not dispute (and therefore concede) that Foster possesses the very same "bias-creating relationship[]" that the Delaware Court of Chancery condemned in the derivative case. *Oracle Derivative*, 824 A.2d at 948. Instead, they claim that Foster is "[u]nbiased" because plaintiffs cannot prove that these relationships "affected Professor Foster's opinions." Defendants' Opposition to Plaintiffs' Motion to Exclude Expert Testimony of George Foster ("Opp.") at 1, 3-6. And they emphasize that Foster works "in [a] different department[]" as purported proof that Foster's opinions will not be infected by his professional relationships. *Id.* at 4. The Delaware Court of Chancery correctly rejected these very same arguments when it rejected the conflicted SLC:

> Even though Boskin **was in a different academic department** from either SLC member, it is reasonable to assume that the fact that Boskin was also on faculty would – to persons possessing typical sensibilities and institutional loyalty – be a

1                matter of more than trivial concern. . . .   **[T]hey undoubtedly are aware of how**

2    **important large contributors are to Stanford, and they share in the benefits that come from serving at a university with a rich endowment**.

3    *Oracle Derivative*, 824 A.2d at 942-43.[1]   The court found the SLC lacked independence because

4    "requiring SLC members to consider accusing a fellow professor and two large benefactors of their

5    university of conduct that is rightly considered a violation of criminal law was unnecessary and

6    inconsistent with the concept of independence recognized by our law." *Id*. at 921. The same lack of

7    independence here has caused Foster to dispute credible evidence, ignore evidence, advance theories

8    designed solely for this litigation and adopt a report prepared by defendants' litigation consultant

9    without independently analyzing the opinions presented in that report. Foster's "bias-creating

10   relationships" (*id*. at 948) have obviously affected his opinions.[2]

11               Defendants attempt to distinguish the Delaware Chancery Court's findings of bias by

12   asserting that the legal standard there was different. Opp. at 5. They argue that these findings

13   should not apply here "because of the unique nature of the committee's power [in the derivative

14   case] and the need to ensure that the committee's objectivity cannot be reasonably questioned." *Id.*

15   But defendants have not explained how those overriding concerns do not apply to expert witnesses

16   who can have significant influence on a jury by virtue of their "aura of authority." *Mukhtar v. Cal.*

17   *State Univ.*, No. 01-15565, 2002 U.S. App. LEXIS 27934, at *24 (9th Cir. Aug. 7, 2002). There is

18   no difference here in principal or potential effect. The findings of the Delaware Court reflect a

19   proper concern that a real potential for bias emanates from the same types of relationships present

20   here. *Oracle Derivative*, 824 A.2d at 942-43, 947-48.

21   _____

22   [1]      Unless otherwise noted, all emphasis is added and citations and footnotes are omitted.

23   [2]      The Delaware Supreme Court in *Beam v. Stewart*, 845 A.2d 1040 (Del. 2004), did not distance itself from the findings of bias in *Oracle Derivative* or limit those findings of bias. Opp. at

24   5 n.5. In fact, it held that "the Stanford connections in *Oracle* [*Derivative*] are factually distinct from the relationships present here." *Beam*, 845 A.2d at 1055. The court also did not hold that professional and social relationships do not impugn a director's independence. In fact, it held the

25   exact opposite and noted ways plaintiffs could have strengthened their allegations based on those relationships. There is also no irony in plaintiffs' reliance on the Delaware Chancery Court's

26   opinion. Opp. at 5 n.4. The Delaware summary judgment opinion, on which defendants rely

27   heavily, is irrelevant to the analysis given the plethora of additional and compelling facts, evidence and arguments presented in this case.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-SI                                                    - 2 -

1      Defendants have cited no authority for the proposition that bias is not a proper consideration

2 in an overall assessment of reliability under *Daubert*.  Opp. at 5-6.  In fact, they rely on *Dunn v.*

3 *Sears, Roebuck & Co.*, 639 F.2d 1171, 1174 (5th Cir. 1981), and *Folden v. Wash. State Dep't of*

4 *Social & Health Servs.*, 744 F. Supp. 1507, 1522 (W.D. Wash. 1990), *aff'd*, 981 F.2d 1054 (9th Cir.

5 1992), for the proposition that a biased expert is not ***necessarily*** precluded from qualification.  Opp.

6 at 5-6.  But nothing in *Dunn* or *Folden* holds that bias is not a proper *Daubert* consideration.  In fact,

7 *Folden* notes that an expert's lack of independence destroys his credibility.  *Folden*, 744 F. Supp. at

8 1522.[3]

9      **B.**     **Foster's Lack of Fundamental Knowledge of the Facts Undermines**
              **the Reliability of His Opinions**

10

11      Plaintiffs established in their Motion that Foster's opinions should be excluded because they

12 are not his own.  Mot. at 8-12.  His lack of fundamental knowledge of the case and the contents of

13 his report reveal that he did not independently analyze the case as presented in the report that

14 Analysis Group ("AGE") drafted for him to sign.  *Id*.  The law is clear that under these

15 circumstances, the expert must be excluded – "if opinions expressed in an expert report are not the

16 opinions of the expert, the expert will not be able to satisfy the requirements of [Fed. R. Evid.] 702

17 and *Daubert* that the report be based on the expert's own valid reasoning and methodology." *Trigon*

18 *Ins. Co. v. United States*, 204 F.R.D. 277, 294 (E.D. Va. 2001).  This is especially true where, as

19 here, the expert does not investigate the opinions in a report prepared by others for the expert to sign.

20 *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, No. 5:96:MD:1122, 1999 U.S. Dist. LEXIS 17153

21 (W.D. Mich. Sept. 29, 1999).

22      Here, defendants cannot credibly dispute that Foster had limited involvement in preparing the

23 report.  Opp. at 6-7.  And it showed at Foster's deposition.  While defendants characterize Foster's

24 _____

25 [3]      Defendants' argument that Foster's bias is somehow less important because this "Court is not
being asked to enter judgment for defendants solely on the basis of Professor Foster's testimony" is

26 absurd.  Opp. at 5.  Defendants will rely on Foster's opinions at trial to do exactly that.  That they
claim not to rely on his opinions at summary judgment is irrelevant.  *Id*. at 5 n.6.  It is the impact on

27 the jury that compels Foster's exclusion.  The Court should be extremely concerned about Foster's
bias causing unreliable opinions to influence the jury.  *Daubert*, 509 U.S. at 589.

28

level of knowledge as "commendable" (Opp. at 8), even a cursory review of his deposition transcript reveals otherwise.  Foster had difficulty recalling the contents of his report and did not even know the most basic concepts that were necessary to form an opinion on Oracle's forecasting process. Mot. at 10-12.  In fact, Foster gave testimony conflicting with the opinions contained in his report on several occasions.  *Id*. at 12.  The root cause is obvious: Foster did not investigate or independently analyze the opinions in the report that AGE prepared for him.[4]

Despite his lack of knowledge, defendants point to Foster's testimony explaining that "he 'drafted the report in the sense of every word [he] changed or ran with'" and that "'[he] did an extensive draft at the outset.'"  Opp. at 6.  Like Foster's opinions, these arguments are fundamentally flawed.  Even defendants' own authority condemns the "I changed or ran with every word" approach where the expert does not do the work necessary to independently verify the facts and opinions in the report – "preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report." *Manning v. Crockett*, No. 95 C 3117, 1999 U.S. Dist. LEXIS 7966, at *8 (N.D. Ill. May 17, 1999).[5]

Defendants' attempt to reduce *Daubert* to a mere formality fails.  Opp. at 6.  They argue that Foster's report "should be admitted" because he complied with Fed. R. Civ. P. 26 by signing his report and including a statement of information considered in forming his opinions.  *Id. Daubert* and Fed. R. Evid. 702 clearly require more.  Defendants' authority does not hold otherwise.  Opp. at 6-7.

---

[4]     Defendants attempt to minimize the role of AGE by asserting that the *Trigon* court "made no findings that Analysis Group had engaged in improper conduct."  Opp. at 7 n.7.  Defendants are wrong.  The *Trigon* court found that AGE's likely destruction of documents warranted "adverse inferences respecting the substantive testimony and credibility of the experts" at trial, and that AGE was foreclosed from "further participation in any aspect of the development and presentation of . . . expert testimony."  *Trigon*, 204 F.R.D. at 291.

[5]     Foster's testimony that he "did an extensive draft at the outset" is contradicted by the record. Foster testified that he devoted a mere 16 hours (two days) to this case prior to receiving Dr. Goedde's report.  Declaration of Douglas R. Britton in Support of Plaintiffs' Motion to Exclude the Expert Testimony of George Foster ("Britton Decl."), Ex. 2 at 5:22-6:4, 19:25-20:2 (all "Ex." references are to the Britton Decl.).  There is simply no way for Foster to have developed the type of knowledge that would have been required to provide an "extensive draft at the outset" given this limited involvement.

1    *Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005) (expert not

2    excluded where "there is no persuasive evidence that [the expert] was ***not*** substantially involved in

3    preparing the report") (emphasis in original); *Trigon*, 204 F.R.D. at 295 (finding insufficient

4    evidence to prove that the expert's report was authored by someone else because AGE destroyed the

5    relevant documentation); *Manning*, 1999 U.S. Dist. LEXIS 7966, at *8-*9 ("Preparation implies

6    involvement other than perusing a report drafted by someone else and signing one's name at the

7    bottom to signify agreement.").

8        Defendants' arguments about Foster's knowledge fare no better. Opp. at 7-8. Defendants

9    argue that he "demonstrated that he has sufficient foundation for his opinions based on the

10   information contained in his report." *Id.* at 7. But what is in the report cannot save Foster as the

11   opinions are not his own. Defendants' next argument is that "'skimm[ing]'" documents and relying

12   on litigation consultants because of timing issues does not indicate a lack of foundation sufficient to

13   warrant exclusion. *Id.* They again miss the point. What indicates a lack of foundation is Foster's

14   lack of knowledge showing that the opinions in the report are those of AGE and not Foster. Even if

15   they were Foster's opinions, however, they would be unreliable because the selection of documents

16   by defendants and AGE caused Foster to ignore relevant categories of the record necessary to reach

17   an independent and informed opinion. *See* §II.C., *infra*.[6]

18       Plaintiffs showed in their Motion that Foster lacked knowledge of basic facts that were

19   necessary for his opinions. Mot. at 8-12. Defendants have failed to present any legitimate rebuttal.

20   Instead, they respond by arguing that "*Daubert* does not require that the expert pass plaintiffs'

21   memory test." Opp. at 8. Defendant's argument fails for two reasons: (1) *Daubert* ***does*** require an

22

_____

23   [6]   *Seeley v. Hamilton Beach/Proctor-Silex, Inc*., 349 F. Supp. 2d 381 (N.D.N.Y. 2004), is not
     persuasive. Opp. at 7. The *Seeley* court found that the claim that the expert assumed facts was

24   unsupported, and that a review of toaster schematics was not necessary because it was such a simple
     device. *Seeley*, 349 F. Supp. 2d at 387. Here, exclusion is warranted because Foster failed to take

25   into consideration numerous foundational facts, as detailed above. Defendants' comparison between
     Foster and plaintiffs' expert, Dr. Jensen, actually proves plaintiffs' point. Opp. at 7 n.8.

26   Dr. Jensen's argument was far more narrow in scope than Foster's, and Foster dedicated 40-50 hours
     on a report that spanned 91 pages, including substantive exhibits, and supposedly did so after

27   reviewing the wealth of information and data listed in his "Documents Relied On" exhibit.
     Defendants' position is simply not credible. The opinions in Foster's report are AGE's.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-SI                                                    - 5 -

1    expert to render a relevant and reliable opinion, which requires a working knowledge of relevant

2    facts; and (2) plaintiffs' "memory test" was nothing more than an inquiry into Foster's knowledge of

3    facts that he certainly should have known if the opinions in his report were his own.  Mot. at 10-12.

4    Defendants suggest that Foster does not need to know facts "from a record that spans millions of

5    pages and more than 150 deposition transcripts."  Opp. at 8.  But Foster's lack of knowledge was not

6    about obscure facts buried in the record; rather, it was about elementary facts germane to his

7    opinions.[7]  Tellingly, defendants do not even mention those specific facts Foster could not recall and

8    instead respond with a handful of facts that, in no way, offset the overwhelming amount of evidence

9    that Foster knows nothing about.  *Compare* Opp. at 8 *with* Mot. at 10-12.[8]

10        **C.    Foster's Opinions Lack a Reliable Factual Foundation**

11            This case demonstrates the very reason why an expert should not merely adopt the opinions

12    of others – Foster failed to consider relevant facts that, if measured, would have at least had a

13    bearing on the outcome of his opinions.  The law is clear.  An expert must be excluded where he

14    fails to adequately account for obvious alternative explanations.  *See* Fed. R. Evid. 702 advisory

15    committee's notes.  Courts have routinely excluded expert opinions where the expert has failed to

16    consider necessary information.  *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039,

17    1056 (8th Cir. 2000) (exclusion where proposed expert had not considered all relevant evidence);

18    *Target Mkt. Publ'g v. ADVO, Inc.*, 136 F.3d 1139, 1143 (7th Cir. 1998) (excluding testimony based

19    on mere speculation).  That is exactly what Foster has done in this case.

---

20

21    [7]        Defendants claim that "[i]t is ironic that Plaintiffs criticize Professor Foster for being
      unfamiliar with the purportedly critical identity of John Nugent . . . when Mr. Nugent's name does

22    not appear in Plaintiffs' Motion for Summary Judgment Against Lawrence Ellison For Trading On
      The Basis Of Material Non-Public Information ["Ellison MSJ"]."  Opp. at 8 n.9.  It is defendants'

23    argument that is ironic since a report prepared by Nugent is quoted prominently in that motion.
      Ellison MSJ at 8 ("AVPs in NAS 'began to voice concern' in December, and in January 'were

24    reluctant to raise their forecast' as 'deals began to shrink and get delayed.'  Ex. 31 at 179337.").
      Mr. Nugent's report reveals that Oracle was being adversely affected by the economy as early as

25    December 2000, despite defendants' claims to the contrary.  *Id.*  Foster knew nothing about this.

26    [8]        Defendants' reliance upon *PRS Benefits v. Cent. Central. Leasing Mgmt.*, No. 3:03-CV-1183-B, 2004
      U.S. Dist. LEXIS 24135 (N.D. Tex. Nov. 29, 2004), is misplaced.  Opp. at 8.  In *PRS*, the court held

27    that a witness need not have a photographic memory to be reliable.  *PRS*, 2004 U.S. Dist. LEXIS
      24135, at *10.  Foster had the polar opposite of a photographic memory in this case.

28

### 1.    Foster's Failure to Analyze Ellison's Directive

Plaintiffs showed in their Motion that Foster's opinions should be excluded because he failed to account for the fact that Oracle's forecast process had changed prior to 3Q01 as a result of Ellison's 2Q01 directive to increase the risk in the Field Forecast.  Mot. at 13-15.  Instead of analyzing how that change could have affected the forecasting process and the reliability of public guidance, Foster elected to dispute the evidence and nothing more.  *Id.*  He employed no methodology in reaching his opinions and instead played the role of oath-helper by denying that Ellison gave the directive or, if he did, that the sales representatives followed it.  *Id.*

Defendants argue for the first time that Foster did conduct an analysis to see if the directive was issued and followed.  Opp. at 9-10.  But the paragraphs that they cite do nothing more than compare the Field Forecast to analyst consensus estimates, which in no way would have revealed whether or not Ellison's directive was given or followed.  *Id.*  In fact, Foster testified that he did not conduct an analysis of the directive because he did not believe that it occurred: "The testing I did was to look at, I mean, what were the statements of the people, the key people.  And I didn't see any evidence that they were saying that was occurring."  Declaration of Douglas R. Britton in Support of Plaintiffs' Reply in Further Support of Their Motion to Exclude the Expert Testimony of George Foster ("Britton Reply Decl."), Reply Ex. A at 118:14-21.[9]

Defendants dismiss Foster's failure to conduct any meaningful analysis by, again, denying that Ellison directed the Field Forecast to include more risk.[10]  Opp. at 8-9.  Simply denying the

--------

[9]    All "Reply Ex." references are to the Britton Reply Decl.

[10]    Defendants' attempt to avoid the consequences of Ellison's evidence destructions fails.  Opp. at 9 n.10.  Foster was clear that he refused to believe that Ellison gave the directive because he did not see a communication from him explaining the directive.  Mot. at 13-15.  The Court's finding that Ellison willfully destroyed his e-mail directly undermines Foster's opinion.  Defendants' argument that Ellison's directive is "pure fiction" ignores the evidence.  Opp. at 9 n.10.  While defendants urge the Court to look to the absence of communications, they ignore the clear import of the evidence that does exist – Patricia McManus, as "lead" trainer for OSO, implemented the directive through OSO training, not through company-wide correspondence.  Declaration of Shawn A. Williams in Support of Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Revised Motion for Summary Judgment, Ex. 265; *id.*, Ex. 231 ("We will incorporate this in our OSO 11i training . . . .").  They also ignore the communications between Oracle's top executives discussing Ellison's change.  *Id.*, Exs. 266, 271, 272.  And while defendants emphasize the lack of "memor[y]

1    record is insufficient to satisfy *Daubert*'s requirements, particularly where, as here, ample evidence

2    reveals that Ellison gave the directive.[11]   Foster's refusal to consider relevant evidence is not

3    tantamount to a disagreement among experts, as defendants argue.   Opp. at 10.   Had Foster

4    considered the evidence and reached a different conclusion, then that would qualify as a

5    disagreement.  But he blindly adhered to defendants' point of view without conducting any analysis

6    of "obvious alternative explanations."  Fed. R. Evid. 702 advisory committee's notes.  Absent a

7    disagreement, defendants' reliance upon *U.S. Info. Sys. v. IBEW Local Union No. 3*, 313 F. Supp. 2d

8    213, 231 (S.D.N.Y. 2004), is misplaced.  Opp. at 9-10.  His opinions are consequently unreliable.

### 2.    Foster Failed to Consider the Reliability of the Historical Conversion Ratio that Formed the Basis of Oracle's Guidance

10          Defendants do not dispute that Foster did not study the reliability of the conversion ratio that

11   Minton used for purposes of establishing the Potential Forecast.  Opp. at 9-10.  This admission

12   should end the analysis.  By failing to analyze the reliability of the very metric that Foster testified

13   was "one factor that you use" (and that he admitted was used by Minton), he employed an unreliable

14   methodology that serves to exclude his opinions.  Ex. 1, ¶54; Ex. 2 at 85:8-86:1.

15          Defendants argue that there was no reason for Foster to test the reliability of the conversion

16   ratio because they dispute that the historical conversion ratio formed the basis of the Potential

17   Forecast.  Opp. at 9-10.  But disputing the evidence does not satisfy their burden of establishing that

18   Foster's opinions were based on reliable methodologies.  Foster offered an opinion that "the use of

---

of all deponents," they disregard the memory of the most crucial one – Ellison himself, who testified that the reference to "Larry" in the e-mail explaining the directive was to him – "Q. Does this . . . reflect a change in forecasting that you directed?  A. Yeah."  *Id.*, Ex. J at 423:20-424:22.  *Keithley v. Home Store.com, Inc.*, No. C-03-04447 SI (EDL), 2008 U.S. Dist. LEXIS 61741, at *3, *10, *51-*54 (N.D. Cal. Aug. 12, 2008), and *Hamilton v. Signature Flight Support Corp.*, No. C 05-0490 CW (MEJ), 2005 U.S. Dist. LEXIS 40088, at *23-*24 (N.D. Cal. Dec. 20, 2005), do not support defendants' argument.  The Court has already found that sanctions are appropriate.  Foster's reliance on a lack of communication from Ellison compels his exclusion.

[11]       Defendants try to avoid the reality that Foster employed no methodology by challenging plaintiffs' citations to Dr. Goedde's reports because they claim the report is not "record evidence."  Opp. at 8-9.  Defendants are wrong.  Dr. Goedde's report contains cites to the record and plaintiffs' Motion contains independent cites to the record and incorporates plaintiffs' motion for summary judgment, which also cites record evidence.  Mot. at 13-15 & n.6.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-SI                                                          - 8 -

historical Conversion Ratios as a check on the reasonableness of the current forecast was a strength of Oracle's forecasting process." Ex. 1, ¶54.  When Foster decided to offer this opinion, it was incumbent on him to study the accuracy of that check.  This is especially true since a number of changes undermined the accuracy of the historical conversion ratio analysis.  Mot. at 15-16.  His failure to do so undermines the reliability of his opinions.

Defendants' denial that Minton based her Potential Forecast on the historical conversion ratio analysis is demonstrably false.  Opp. at 10 n.11.  Minton testified that it formed the basis of her upside adjustments.  Reply Ex. B at 135:7-136:12.  Ellison testified that Oracle's forecast was based on an extrapolation.  Reply Ex. C at 384:6-385:7; Reply Ex. D at 211.  And Minton confirmed it in a 2002 e-mail: "*By evaluating historical trends, Jeff and I would be able to determine what the true forecast was by applying historical conversion rates to the pipeline*."  Reply Ex. E.[12]  In fact, Dr. Goedde's supplemental analysis confirms it.  Declaration of Alan G. Goedde in Support of Plaintiffs' Opposition to Defendants' Revised Motion for Summary Judgment, ¶¶6-18.  There is conclusive evidence that defendants' denials are baseless.  Foster's failure to analyze the reliability of the conversion ratio requires his exclusion.[13]

### 3. Foster Failed to Consider the Macroeconomic Conditions Facing Oracle in 3QFY01

Plaintiffs have established that Foster's methodology was unreliable because he failed to consider the economic change facing Oracle in 3QFY01.  Mot. at 16.  Defendants have not (and cannot) credibly challenge this contention.  Instead, they argue that "macroeconomic change[]" is

---

[12]  Defendants address Minton's admission by mischaracterizing plaintiffs' contentions.  Opp. at 11 n.13.  Neither plaintiffs nor Dr. Goedde have argued that Minton did nothing more than mechanically apply the conversion ratio.  *Id*. at 11.  Instead, they explain it exactly as Minton did – that the historical conversion ratio analysis was the foundation for the Potential Forecast.

[13]  Defendants argue that the Potential Forecast in the first two quarters of FY01 proves that Minton did not base the projection "solely on the prior year's conversion ratio" because it projected a conversion rate lower than the prior year's conversion rate.  Opp. at 10 n.11.  For this reason, defendants argue that "there was no reason for Professor Foster to separately 'study . . . the reliability of the historical conversion ratio.'"  *Id.* at 10-11 n.11.  Defendants are wrong.  Foster's opinion that the historical conversion ratio analysis was "a strength of Oracle's forecasting process" required Foster to study its reliability.  Ex. 1, ¶54.

1   irrelevant to Foster's opinions because he "concluded that Oracle's forecasting process included

2   appropriate mechanisms to take into account changes in macroeconomic conditions." Opp. at 11.

3   Defendants' argument is flawed for several reasons.

4   　　　First, it ignores the weight of evidence revealing that the Potential Forecast was a year-over-

5   year extrapolation based on the prior year's conversion ratio and that Ellison himself testified that

6   changing economic conditions would render Oracle's forecast process unreliable as a result. *See*

7   §II.C.2., *supra*; Reply Ex. C at 384:6-385:7.   It was inexcusable for Foster to disregard

8   macroeconomic conditions given Ellison's testimony.    Second, Foster's conclusion about

9   macroeconomic information informing the sales process is itself based on flawed methodology.

10  Foster failed to cite to any evidence demonstrating that economic information was incorporated into

11  Oracle's forecast process as he suggests or, if it was, that adjustments for the changing economic

12  conditions were still not required. Mot. at 22-23.[14]  Third, Foster's conclusion is directly belied by

13  Henley who testified that Oracle did not "test [its] customer[s] to see what they really think about

14  their business and what they really think about the economy." Reply Ex. F at 206:5-9. Tellingly,

15  defendants say nothing about Henley's admission.

16  　　　**D.　　Foster's Opinions Based on His Definition of a "Reasonable Forecast**
            **Process" Should Be Excluded Under *Daubert***
17

18  　　　Foster invented three criteria tailored to support his opinion that Oracle's forecast process

19  was reasonable. Mot. at 17. Defendants insist that the methodology that Foster used to define a

20  "reasonable forecast process" was reliable because it stems from his "twenty-plus years in

21  academia." Opp. at 13. But defendants cannot legitimately dispute that Foster has not evaluated a

22  _____

    [14]    Defendants concede that the testimony on which Foster relied did not include specifics from
23  sales representatives. Opp. at 11. But they add, without any support, that "it was more than
    sufficient for Professor Foster to opine that 'by virtue of relying on sales representatives' estimates
24  of likely purchases by potential customers, Oracle's forecasting process incorporated relevant
    macroeconomic, product, and customer information.'" *Id.* at 12-13. Why? Because Foster said so?
25  This is the very type of *ipse dixit* of an expert that courts routinely exclude as unreliable and
    irrelevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999). Indeed, Foster's opinion is
26  rank speculation because he failed to consider any evidence at the sales representative level. Even if
    sales representatives were cognizant of economic conditions, however, adjustments for changing
27  economic conditions were still required given the imperfect information that sales representatives
    may have received. Foster's assumptions compel his exclusion.

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-SI                                              - 10 -

1  forecast process using this criteria.  *Id.*  The best they can offer is that he used it once before in the

2  *AT&T* litigation.  *Id.* at 15 n.16.  But defendants' own authority rejects prior litigation as a basis for

3  reliability.  *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989).

4          Foster's criteria are fundamentally flawed.  He testified that his criteria have not been subject

5  to peer review and that he has never checked with another scholar as to whether these criteria are

6  reasonable.  Ex. 2 at 98:16-25.  Given that Foster's forecasting qualifications are limited to academic

7  studies, the failure to have his criteria peer-reviewed alone justifies his exclusion.  Defendants argue

8  that Foster's analysis grows naturally out of his academic experience, but point to no evidence that

9  Foster's criteria have been determined to be accurate or used in an academic setting.  Opp. at 14.

10  Foster's application of a novel standard is simply not reliable under *Daubert*, particularly as

11  defendants admit that Foster has not even used these criteria in any of his prior academic writings.

12  *Id.*  Foster's criteria are nothing more than "'junk science.'"  *Mukhtar*, 299 F.3d at 1063.

13          Defendants' argument that Foster's forecasting criteria grow naturally out of research that he

14  did in *Financial Statement Analysis* is directly undermined by Foster's testimony.  Opp. at 14.  In

15  fact, Foster testified that his criteria had not been subject to peer review or subject to any scrutiny by

16  the academic community.  Ex. 2 at 97:24-98:4, 98:24-25.  If defendants' argument had any merit,

17  Foster would certainly have said so in his deposition.  The reason that he did not is evident from a

18  review of the chapters that defendants cite.  Opp. at 14.  They argue that sections from Foster's

19  textbook show that the criteria that he offers in this case "flow[]" from his previous writings.  *Id.*

20  But the sections that defendants cite study the accuracy of ***security analyst*** forecast approaches and

21  do not mention any of the criteria that Foster offers in this case.  *Id.*; Declaration of Andrew M.

22  Farthing in Support of Defendants' Opposition to Plaintiffs' Motions to Exclude Expert Testimony

23  of R. Glenn Hubbard and George Foster (Dkt. Nos. 981 & 1223) ("Farthing Decl."), Ex. 7 at 264-71,

24  285-86.[15]

25

26

---

27  [15]    The authoritative source (Professor Armstrong) relied upon by plaintiffs' expert, Dr. Goedde,
28  does not save defendants.  Opp. at 14.  In fact, the criteria that Foster hand-selected for this case are
        not among the list of principles that represent the foundations of forecasting outlined in Professor

1          **E.      Foster's Opinions Based on Securities Analysts Should Be Excluded**

2          Foster opined that Oracle's forecast process was reasonable because its internal projections

3  did not diverge from the models of securities analysts. Mot. at 18-20. In doing so, he unreliably

4  considered facts and data outside of Oracle to prove what was known within Oracle. *Id.* Because

5  they cannot deny that he did so, defendants argue that plaintiffs' mischaracterize Foster's opinion.

6  Opp. at 15. But Foster's report was clear. He attempted to prove that Oracle's forecasting process

7  took market information into consideration by citing securities analyst projections and anecdotal

8  commentary to support his opinion. Ex. 1, ¶62. This methodology is unreliable and unacceptable

9  given that Foster had access to internal information with which to test the same proposition. And to

10 make his opinions even more unreliable, he did not cite any testimony from or interviews with any

11 of the analysts on which he relies. In fact, he did not inquire of analysts about the model that they

12 used, what influenced their decisions, who they spoke to, why they spoke to those individuals, or

13 why not. Foster's methodologies were therefore unreliable and his opinions should be excluded

14 under *Daubert*. Opp. at 15-16.

15         Defendants argue that evaluating this information was unnecessary because Foster was

16 merely comparing analyst projections with Oracle's. *Id*. at 15 n.17. But knowing how the analysts

17 covering Oracle developed their models was absolutely necessary to inform Foster's opinion. *Id.*

18 Without knowing the basics of how these analysts modeled Oracle's projections, Foster's opinion

19 amounts to rank speculation and should be excluded. *Daubert*, 509 U.S. at 589.[16] Foster's opinions

20 should also be excluded because he did not employ the same level of intellectual rigor that he used in

21 his academic work. When he studied the models of security analysts for his textbook, *Financial*

22 *Statement Analysis*, **he spoke to the analysts**. Mot. at 19-20. By failing to do so here, he did not

23 

---

24 Armstrong's writings. Farthing Decl. (Dkt. Nos. 981 & 1223), Ex. 31 at 7-8. The general references
   to reliable data do not sanction Professor Foster's "criteria." *Id*. at 686, 709-18.

25 

26 [16]     Had he inquired, he would have discovered what Ellison knew – that securities analysts rely
   on little more than company data. Reply Ex. D at 262 ("What most analysts say about your
   company has more to do with the financial results of your last couple of quarters than anything
27 else."). Ellison's testimony directly undermines Foster's opinion.

28 

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
TESTIMONY OF GEORGE FOSTER - C-01-0988-SI                                          - 12 -

1   employ the same level of intellectual rigor that characterizes even his own practices.  *See Kumho*

2   *Tire*, 526 U.S. at 152 (*Daubert* requires an expert to "employ[] in the courtroom the same level of

3   intellectual rigor that characterizes the practice of an expert in the relevant field.").[17]

4       Defendants cannot credibly dispute that their own expert questions the reliability of the very

5   source on which he relies to offer opinions in this case.  But defendants argue that Foster's reliance

6   was proper because economists, and even Dr. Goedde, rely on information from analyst reports to

7   form opinions.  Opp. at 16.  But Foster's opinion does not rely on information contained in analyst

8   reports, which can be verified for accuracy.  It makes assumptions about the financial models of

9   security analysts without knowing what formed the basis of those models.  For that reason,

10   defendants' argument is unpersuasive.  *Id.*  Defendants cannot carry their burden to show that

11   Foster's opinions are based on reliable methodologies.

12       **F.   Foster's Intra-Quarter Revenue Regression Is Unreliable**

13       Foster developed his regression analysis to study Oracle's intra-quarter revenue strictly for

14   purposes of this case.  Mot. at 17-18.  He applied novel variables to reach the non-sensical

15   conclusion that revenue in the first two months are unimportant to the quarter unless they can predict

16   revenue in month three.  *Id.*  Foster cited no support, in experience or through academic literature,

17   for this conclusion or for the variables that he selected, and admitted that he created it specifically

18   for purposes of this litigation.  Ex. 2 at 156:4-25.  It should be excluded under *Daubert*.

19       In any event, results in the first two months were viewed as predictive by defendants.

20   Because they are "useful in predicting the quarter," Ellison testified that he relies on monthly results

21

22   [17]    Defendants' attempt to avoid the damaging nature of Foster's writings is unpersuasive.  Opp.
23   at 14.  Foster was clear that projections of security analysts suffer from numerous infirmities that
    undermine his reliance on those projections.  Mot. at 18-20.  Defendants try to rebut those findings
24   by emphasizing that analysts suffer penalties only "'when the consensus subsequently turns out to be
    correct.'"  Opp. at 16.  But they ignore Foster's finding that these potential penalties result in
25   analysts making "forecasts that diverge less from the consensus than what they would report in the
    absence of these penalties." Farthing Decl. (Dkt. Nos. 981 & 1223), Ex. 7 at 289; Opp. at 16.  This
26   finding directly undermines Foster's use of analysts in this case.  Ex. 1, ¶62.  Had Foster relied on
    evidence from (or discussion with) the analysts that covered Oracle, he would have a foundation for
27   opining on what one could expect from the models of security analysts.  By failing to do so, he is
    simply speculating.

28

1    to gauge Oracle's performance.  Reply Ex. G at 286:15-18, 291:22-292:6.  Ellison's testimony

2    undermines Foster's analysis and defendants' arguments, which suggest nothing more than that a

3    "Hail Mary" might possibly save the quarter.  Opp. at 17-18.  Courts recognize that "information that

4    strongly implies an important future outcome," as is the case with Oracle's results in December 2000

5    and January 2001, "is not immune from mandatory disclosure merely because it does not foreordain

6    any particular outcome."  *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1210 (1st Cir. 1996).  Foster's

7    analysis is unreliable and should be excluded under *Daubert* and Fed. R. Evid. 403.  Its probative

8    value is nonexistent in light of Ellison's testimony and the applicable legal standards, and it presents

9    a significant danger of confusing the jury.

10           **G.      Foster's Pipeline Growth Regression Is Unreliable**

11           Plaintiffs have established that Foster's regression analysis to study Oracle's pipeline growth

12   was inherently unreliable.  Mot. at 20-22.  Foster admitted as much in his deposition.  *Id.*  Despite

13   Foster's testimony, defendants argue that it is inconsequential that Foster "did not report on the

14   statistical significance of his analysis and used a small data sample" to reach his conclusions.  Opp.

15   at 18.  Defendants are wrong.  Small data samples, as Foster concedes, render regression analyses

16   unreliable.  Ex. 2 at 194:8-16.  Indeed, Foster admitted that he did not perform regression analyses in

17   other parts of his report because there were not enough data points.  *Id.* at 193:2-194:2.[18]

18           Defendants argue that "although it is true that more data points generally increases the

19   robustness of a statistical analysis, Professor Foster's finding of a negative coefficient based on his

20   analysis of the six most recent quarters of data prior to Q3 FY01 was sufficient evidence in and of

21   itself to reject Dr. Goedde's hypothesis."  Opp. at 18-19.  But defendants cite to no authority or

22   evidence suggesting this is the case.  *Id.*  Given the illogical results of Foster's regression (that

23   Oracle's sales rise when its opportunities fall), the "negative coefficient" is meaningless because the

24   data sample was insufficient.  Indeed, Foster himself repeatedly attempted at his deposition to

25

26   [18]     Defendants' argument that statistical significance is unnecessary for Foster's statistical attack
     on Dr. Goedde's opinions makes no sense.  Opp. at 18.  They cite to nothing to support this position
27   and say nothing about Dr. Foster's admission that small data samples render regression analyses
     unreliable.  This admission belies defendants' focus on the "confidence interval."  *Id.* at 19 n.19.

28
     PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
     TESTIMONY OF GEORGE FOSTER - C-01-0988-SI                                              - 14 -

1    distance himself from this conclusion because the study sample was so small.  Ex. 2 at 184:7-11,

2    186:7-16, 190:20-191:11.  Foster even failed to perform a necessary "F test" to gauge the reliability

3    of his regression and could not explain whether or not his results were reliable using standard

4    statistical analysis.  *Id.* at 185:7-15, 190:20-192:12.  His methodology was unreliable.

5          **H.**     **Foster's Opinions Are Duplicative and Should Be Excluded**

6          Plaintiffs' Motion established that Foster's and Hubbard's opinions are duplicative.  Mot. at

7    23-25.  Defendants argue to the contrary by claiming that Hubbard "opined on the reasonableness of

8    defendants' statements and Professor Foster responded to plaintiffs' expert regarding the quality of

9    Oracle's forecasting process."  Defendants' Opposition to Plaintiffs' Motion to Exclude Expert

10   Testimony of R. Glen Hubbard at 16.  This is nonsense.  To opine on the reasonableness of

11   defendants' statements, Hubbard had to opine on the reasonableness of the forecasting process

12   behind those statements.  The contents of Hubbard's report show that he did.  Reply Ex. H at 78-104;

13   *id.*, ¶213 ("Oracle's forecasting process . . . provided a reasonable basis for Oracle's guidance and

14   later statements regarding its performance in 3Q FY2001.").

15         There is no difference between Hubbard's and Foster's opinions concerning Oracle's

16   forecasting process.  Indeed, they performed almost the same analysis using Oracle's Potential

17   Forecast.  Mot. at 23-25.  Tellingly, defendants made no effort to explain the mountain of

18   overlapping opinions, charts and figures contained in Hubbard's and Foster's reports.  *Id.*  Foster's

19   opinions have no probative value since Hubbard gives the same opinions.  If Hubbard's opinions are

20   admitted, Foster's should be excluded under Fed. R. Evid. 403.

21   **III.**     **CONCLUSION**

22         For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs'

23   Motion to exclude the opinions of Foster.

24   DATED:  December 12, 2008          Respectfully submitted,

25

26                          s/ DOUGLAS R. BRITTON
                           DOUGLAS R. BRITTON

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MARK SOLOMON
DOUGLAS R. BRITTON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
WILLOW E. RADCLIFFE
ELI R. GREENSTEIN
DANIEL J. PFEFFERBAUM
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
STACEY M. KAPLAN
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

Lead Counsel for Plaintiffs

C:\PROGRA~1\pdfDocs\users\DeeM\Import\BRF00056116_Foster_Reply.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 12, 2008.

<u>s/ DOUGLAS R. BRITTON</u>
DOUGLAS R. BRITTON

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  DougB@csgrr.com

## Mailing Information for a Case 3:01-cv-00988-SI

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,jillk@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Dorian Estelle Daley**
  dorian.daley@oracle.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,eeberline@morganlewis.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com,#sfdocket@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,sholloway@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111

**Monique C. Winkler**
Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111