1   COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2   MARK SOLOMON (151949)
    DOUGLAS R. BRITTON (188769)
3   655 West Broadway, Suite 1900
    San Diego, CA  92101
4   Telephone:  619/231-1058
    619/231-7423 (fax)
5   marks@csgrr.com
    dougb@csgrr.com
6            – and –
    SHAWN A. WILLIAMS (213113)
7   WILLOW E. RADCLIFFE (200087)
    ELI R. GREENSTEIN (217945)
8   DANIEL J. PFEFFERBAUM (248631)
    100 Pine Street, Suite 2600
9   San Francisco, CA  94111
    Telephone:  415/288-4545
10  415/288-4534 (fax)
    shawnw@csgrr.com
11  willowr@csgrr.com
    elig@csgrr.com
12  dpfefferbaum@csgrr.com

13  Lead Counsel for Plaintiffs

14  [Additional counsel appear on signature page.]

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17  In re ORACLE CORPORATION          )   Master File No. C-01-0988-SI
    SECURITIES LITIGATION             )
18  _____  )   CLASS ACTION
                                      )
19  This Document Relates To:         )   PLAINTIFFS' REPLY IN SUPPORT OF
                                      )   MOTION TO EXCLUDE THE TESTIMONY
20       ALL ACTIONS.                 )   OF DEFENDANTS' ACCOUNTING
                                      )   EXPERT J. DUROSS O'BRYAN
21  _____  )

22                                        DATE:     January 9, 2009
                                          TIME:     9:00 a.m.
23                                        CTRM:     The Honorable Susan Illston

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ...................................................................................................................2

 A. O'Bryan's Opinions on the Debit Memo Transactions Are Unreliable and Improper Under Fed. R. Evid. 702 and *Daubert* ....................................................2

  1. The "Sample" of 60 Undisclosed Debit Memos...........................................5

  2. The 121 Unknown Transfers to the Bad Debt Reserve .............................6

   a. The 277 Unknown Debit Memos that Were Purportedly Refunded Prior to November 17, 2000 ...........................................8

   b. The $2 million in Purportedly "Appropriate" Transfers to the Bad Debt Reserve in 2Q01........................................................8

 B. Mr. O'Bryan's Opinions on Materiality Are Improper .........................................10

 C. Mr. O'Bryan's Opinion on the HP Transaction Was Based on Documents Never Produced to Plaintiffs or Their Experts.......................................................10

III. CONCLUSION...............................................................................................................13

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Avila v. Willits Envtl. Remediation Trust*,
        No. C 99-3941 SI, 2008 U.S. Dist. LEXIS 19742

5

        (N.D. Cal. Feb. 6, 2008)....................................................................................1

6

*Daubert v. Merrell Dow Pharms., Inc.*,

7

        509 U.S. 579 (1993)....................................................................................2, 5, 6

8

*Farnham v. Rehwald*,
        No. B170124, 2005 Cal. App. Unpub. LEXIS 3107

9

        (Cal. App. 2d Dist. April 5, 2005). ........................................................13

10

*GE v. Joiner*,

11

        522 U.S. 136 (1997)....................................................................................1

12

*Humphreys v. Regents of the Univ. of Cal.*,
        No. C 04-03808 SI, 2006 U.S. Dist. LEXIS 47822

13

        (N.D. Cal. July 6, 2006)........................................................................11

14

*In re Leap Wireless Int'l, Inc.*,

15

        301 B.R. 80 (Bankr. S.D. Cal. 2003) ..................................................5

16

**STATUTES, RULES AND REGULATIONS**

17

Federal Rules of Civil Procedure
        Rule 26(a)(2)...................................................................... *passim*

18

Federal Rules of Evidence

19

        Rule 702 ............................................................................ *passim*

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Defendants' Opposition to Plaintiffs' Motion to Exclude the Testimony of Defendants' Accounting Expert J. Duross O'Bryan ("Opposition" or "Defs' Opp.") fails to address or justify the uncontroverted fact that Mr. O'Bryan's opinions on both the debit memo/bad debt reserve allegations and the improper "swap" transaction with Hewlett Packard ("HP") (the "HP Transaction") were not based on (1) sufficient facts or data; (2) reliable principles and methods; and (3) did not apply the principles and methods reliably to the facts of the case.  *See* Fed. R. Evid. 702. With respect to the debit memos, Mr. O'Bryan's report relies upon several unsupported and speculative conclusions regarding categories of debit memos that were not identified or disclosed in his report, including an undefined "sample" of 60 debit memos, 121 debit memo transactions relating to "transfers to the bad debt reserve in 2Q01," and 277 debit memo overpayments that were allegedly "refunded" prior to November 17, 2000. Plfs' Mot. at 8-13.[1]  Mr. O'Bryan did not provide any dates, customer names, debit memo amounts or supporting analyses related to these categories of debit memos.  He simply stated he looked at these 458 undisclosed debit memo transactions and concluded that plaintiffs' accounting allegations were meritless.  But expert testimony cannot be "connected to existing data only by the *ipse dixit* of the expert." *Avila v. Willits Envtl. Remediation Trust*, No. C 99-3941 SI, 2008 U.S. Dist. LEXIS 19742, at*22 (N.D. Cal. Feb. 6, 2008) (quoting *GE v. Joiner*, 522 U.S. 136, 146 (1997)).  Defendants' Opposition does not explain how Mr. O'Bryan's unsupported opinions will be useful to the jury without the underlying facts and data necessary to examine or even understand the opinions.  There is "simply too great an analytical gap between the data and the opinion proffered." *Id.*

With respect to Mr. O'Bryan's opinion on the HP Transaction, defendants fail to dispute that Mr. O'Bryan relied heavily upon numerous incomplete documents, e-mails and other evidence that were not produced to plaintiffs or their experts until months **after** the Court deadline for expert production, and **after** the deadline for the parties to exchange expert rebuttal reports. This is a stark

---

[1]   "Plfs' Mot." and "Motion" refer to Plaintiffs' Motion to Exclude the Testimony of Defendants' Accounting Expert J. Duross O'Bryan.

violation of both the parties' expert stipulation and the fundamental requirements of Fed. R. Civ. P. 26(a)(2). Neither plaintiffs nor their expert D. Paul Regan ("Regan") had any chance to review, analyze or rebut the new documents regarding the HP Transaction prior to submitting rebuttal reports and were precluded from incorporating these documents into their analysis.  The new documents raised even more suspicious facts that create genuine disputes concerning the HP Transaction.  Mr. O'Bryan's opinion violates both the spirit and letter of Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702 and should be excluded.

## II.    ARGUMENT

### A.    O'Bryan's Opinions on the Debit Memo Transactions Are Unreliable and Improper Under Fed. R. Evid. 702 and *Daubert*

Plaintiffs' Motion demonstrated that Mr. O'Bryan's opinions on the "financial statement impact" of the debit memo transactions and the corresponding transfers of customer overpayments to revenue and earnings via the bad debt reserve were not based on sufficient factual foundation, or the proper application of reliable principles and methods to those facts.  Plfs' Mot. at 6-13 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).  Oddly, defendants assert that plaintiffs "inexplicably ignore" the parties' "expert discovery stipulation." Defs' Opp. at 5.  In fact, plaintiffs' Motion expressly relies upon the stipulation and *quotes it word-for-word* on page 8, lines 12-13: "*[T]he stipulation requires experts to produce 'copies of all other documents, data, or other information relied upon by each Testifying Expert.*'"[2] Defendants violated these requirements and the stipulation.

Defendants' assertion that plaintiffs have not challenged Mr. O'Bryan's "reasoning or methodology" makes no sense.  The entire premise of plaintiffs' motion is that Mr. O'Bryan's reasoning (and the factual foundation for that reasoning) is unreliable and his methodology is improper under Fed. R. Evid. 702.  Defendants' characterization of this issue as a "discovery dispute" also misses the mark. Defs' Opp. at 5.  Plaintiffs' Motion is based on the inadmissibility of Mr. O'Bryan's testimony because it lacks proper foundation, fails to disclose supporting facts, and

---

[2]        Unless otherwise noted, all emphasis is added and citations and quotations omitted.

1   fails to apply reliable principles and methods.  This is the same standard cited by defendants in their

2   Opposition.  Defs' Opp. at 2.

3           Most fundamentally, it is impossible for plaintiffs, the jury, or the Court to analyze, test or

4   even understand what Mr. O'Bryan did in forming his opinions because he did not produce or

5   disclose all of the documents, facts and calculations that he expressly "relied upon" in forming his

6   conclusions.  Plfs' Mot. at 6-8.  It is clear from Mr. O'Bryan's deposition testimony (and the lack of

7   evidence cited in his reports) that he expressly relied upon documents, data, calculations and other

8   information contained in a "binder" that he brought to and used extensively at his deposition.  *Id.*

9   Plaintiffs repeatedly asked Mr. O'Bryan if he "relied upon" the information in his binder, such as the

10  identity of debit memo customers that he purportedly looked at and other source information relating

11  to debit memo transactions, and Mr. O'Bryan repeatedly said that he did.  Plfs' Mot. at 7-8; Motion

12  Ex. 2 at 137:21-25, 141:3-7.[3]  Plaintiffs repeatedly requested this information on the record during

13  the deposition, but defendants' counsel expressly forbade Mr. O'Bryan from producing the

14  materials.  Plfs' Mot. at 9; Ex. 2 at 167:1-170:7.  Defendants' belated "offer" to produce Mr.

15  O'Bryan's binders in "exchange for" the binders Mr. Regan brought to his deposition is

16  disingenuous.  Defs' Opp. at 6-7.  This so-called "offer" arose only after plaintiffs ***filed the instant***

17  ***motion***.  Defs' Opp. Ex. 8.[4]  An "offer" to belatedly produce the requisite evidence months ***after***

18  expert reports have been exchanged and expert depositions are completed, is not meaningful and

19  makes a mockery of the expert discovery process.  As plaintiffs explained in a letter to defendants,

20  the whole purpose of the disclosure requirements of Fed. R. Civ. P. 26(a)(2) and the expert

21  stipulation is to allow both experts to properly review, analyze, and rebut if necessary, the evidence

22  relied upon by the opposing expert ***before*** rebuttal expert reports are due.  Defs' Opp. Ex. 8.

23  Producing the information months ***after*** the court-imposed deadlines for expert discovery does not

24

25  _____

26  [3]      "Motion Ex. __" refers to Exhibits attached to the Declaration of Eli R. Greenstein in Support
    of Plaintiffs' Motion.

27  [4]      Refers to Ex. 8 to the Declaration of Brian T. Glennon in Support of Defendants' Opposition.

28  PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF
    DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN - C-01-0988-SI          - 3 -

1    cure the prejudice that already occurred.[5]  Mr. O'Bryan's opinions will not be helpful to the jury

2    without a reliable basis.

3         It is not surprising that defendants shifted their position on Mr. O'Bryan's binders only *after*

4    plaintiffs filed the instant motion revealing their improper discovery tactics.  Defendants have been

5    "shifting" their position and improperly withholding accounting discovery throughout this case.  As

6    Judge Infante stated in one of his orders "enforcing" a previous order compelling accounting

7    discovery (an order that defendants failed to comply with):

8         "***Judge Spero has already voiced concern*** that Defendants have made statements to
         the Court regarding discovery of accounting documents and then later ***changed their***
9         ***position***. ***Here, again,*** Defendants have stated one position (that there is no link
         between the debit memos and the 2002 Clean Up project) and ***later shifted that***
10        ***position*** (by claiming all linked documents have been produced and that the link is
         not substantial)."

11   Reply Ex. 1 at 19.[6]  Defendants' refusal to produce the documents relied upon by Mr. O'Bryan until

12   *after* expert discovery closed, and *after* plaintiffs filed this motion, is improper.[7]  Mr. O'Bryan did

13   not submit a reliable expert opinion in compliance with Fed. R. Evid. 702, Fed. R. Civ. P.

14   26(a)(2), and the principles espoused by *Daubert* and its progeny.  Without the fundamental

15

16   [5]      In stark contrast to Mr. O'Bryan, plaintiffs' expert's "binders" simply consisted of his reports
17   and the exhibits cited therein, all of which were already ***produced to defendants***.  Unlike Mr.
     O'Bryan, Mr. Regan did not submit opinions based on 458 debit memos not disclosed to defendants.
18   Even if Mr. Regan's binders contained "handwritten notes, highlighting or other notations" (Defs'
     Opp. at 7 n. 3), neither party is entitled to that work product.  Plaintiffs have not asked for Mr.
19   O'Bryan's notes, highlighting or other notations.  They simply asked for the underlying data, facts,
     and the identity of the 458 debit memos and other information purportedly "relied upon" by Mr.
20   O'Bryan in forming his opinions.  He refused to provide it.  That is a violation of Fed. R. Civ. P.
     26(a)(2), Fed. R. Evid. 702, and the parties' expert discovery stipulation.

21   [6]      "Reply Ex. __" refers to Exhibits to the Declaration of Eli R. Greenstein in Support of
22   Plaintiffs' Reply in Support of Motion to Exclude the Testimony of Defendants' Accounting Expert
     J. Duross O'Bryan, filed herewith.

23   [7]      Defendants' comments about why they did not turn over the binder reveal the kind of
24   improper delay tactics employed throughout this litigation on the accounting issues.  Defs' Opp. at 6.
     Plaintiffs should not have to "attempt to stop" an expert deposition, "move to compel" the
25   documents that were already required to be produced, and "re-open" Mr. O'Bryan's deposition, all
     during an extremely narrow window for expert discovery.  Defs' Opp. at 6.  Defendants simply
26   should have complied with the rules on expert discovery.  Mr. O'Bryan agreed on the record during
     his deposition to produce all documents that he "relied upon" in his binder, and defendants' counsel
27   expressly overruled him.  Motion Ex. 2 at 167:1-170:7.  Defendants' improper tactics to withhold
     accounting evidence expressly relied upon by their expert should not be countenanced.

28

1   information and analysis relied upon by Mr. O'Bryan, his opinion is simply an unfounded

2   conclusion and will not assist the jury in any way.

3       **1.      The "Sample" of 60 Undisclosed Debit Memos**

4           Plaintiffs' Motion challenged the fact that Mr. O'Bryan's report relied upon "source"

5   documents related to only 60 of the total 46,000+ debit memos that he "randomly chose" without

6   providing any supporting information on the 60 debit memos. Plfs' Mot. at 8-9.  Mr. O'Bryan's

7   only explanation of his methodology was conclusory: "[t]he sample size of 60 was sufficient to

8   confirm my understanding of how debit memos were processed." Plfs' Mot. at 8; Motion Ex. 1 at 25

9   n.73.  This kind of empty conclusion will not form the basis of testimony helpful to a jury because

10  Mr. O'Bryan failed to provide any information regarding the 60 debit memos, the customers that

11  related to the debit memos, the amounts of the debit memos, or ***any information*** concerning the

12  transactional history of those debit memos.  He failed to provide any explanation of the methodology

13  he used to "confirm" his understanding, or to provide the evidence he used to make that

14  determination.  There is no way to verify or even assess Mr. O'Bryan's conclusions regarding these

15  60 debit memos because he refused to provide or identify the underlying evidence supporting his

16  conclusions. Plfs' Mot. at 8-9.  If the Court sought to determine which 60 debit memos Mr. O'Bryan

17  analyzed, it could not do so because the information is not in Mr. O'Bryan's report or ***anywhere*** in

18  the record.  This renders his opinion on the 60 debit memos meaningless.  *In re Leap Wireless Int'l,*

19  *Inc.*, 301 B.R. 80, 86 (Bankr. S.D. Cal. 2003) (striking expert testimony that relied upon information

20  not provided to the opposing party and stating:  "Falkenberg relied upon confidential information in

21  preparing his report and in arriving at his conclusion . . . It denied [the opposing party] the right to

22  cross-examine Falkenberg concerning his entire methodology.  Further, it prevented the Court from

23  performing the 'gatekeeping' functions which it must perform to admit his testimony.").

24          Defendants attempt to counter this argument by defending the sample ***size*** of 60 debit memos

25  and claiming it must be appropriate based on Mr. O'Bryan's "30 years of accounting experience,

26  including years of audit testing and sampling." Defs' Opp. at 8-9.  This misses the point entirely.

27  Plaintiffs are not challenging the size of the sample or Mr. O'Bryan's ***credentials*** as an expert.

28  Plaintiffs are contesting his opinions on the 60 debit memos because Mr. O'Bryan did not identify or

1    provide any information for the 60 debit memos that he analyzed, and he provided no explanation of

2    *how* he applied reliable methods to the facts to form his opinion.

3         Defendants also attack plaintiffs' expert and claim that "there is no evidence that [Regan]

4    reviewed *any* source documents."  Defs' Opp. at 9 (emphasis in original).  As an initial matter,

5    defendants did not challenge or file any *Daubert* motion to contest the admissibility of *any* of Mr.

6    Regan's opinions (even though they challenged plaintiffs' other experts).  In any event, unlike Mr.

7    O'Bryan, Mr. Regan provided hundreds of citations to source documents and other evidence to

8    support his opinions on the debit memos – evidence that has gone completely unrebutted by

9    defendants.  Reply Ex. 2.  It is no surprise, therefore, that defendants concluded that they could not

10   challenge the admissibility of Mr. Regan's testimony.  This motion is not about what Mr. Regan did;

11   the reliability of his methodology has not been contested.[8]

12                    **2.     The 121 Unknown Transfers to the Bad Debt Reserve**

13        Mr. O'Bryan's opinion that he discovered "121 transfers to the bad debt reserve during the

14   second quarter of fiscal year 2001" is unsupported by a single supporting document.  Plfs' Mot. at 9;

15   Motion Ex. 1 at 32.  Again, Mr. O'Bryan does not even provide the customer names of the "121

16   transfers" or even a simple list of the corresponding debit memos that the transfers were applied to.

17   Plfs' Mot. at 9.  Plaintiffs specifically asked for a list of customer names and other information

18   regarding the 121 debit memos at Mr. O'Bryan's deposition and defendants' counsel *refused to*

19   *produce it*.  Plfs' Mot. at 9; Motion Ex. 2 at 167:1-170:7.  Thus, there is no way to verify Mr.

20

21   _____

22   [8]     Inexplicably, defendants use their *Daubert* opposition to gratuitously attack several of
     plaintiffs' confidential witnesses who have nothing to do with expert testimony or the *Daubert*
23   analysis.  In fact, it is odd that defendants continue to attack pleading witnesses, when there is a full
     evidentiary record on the accounting issues, including over a million pages of documents and
24   hundreds of hours of deposition testimony by witnesses who had knowledge of the accounting
     improprieties.  One of these witnesses, Ian Hatada, who testified that Oracle tried to clean up the
25   accounting improprieties to "help" Oracle address plaintiffs' lawsuit, has been attacked by
     defendants before, and Special Master Infante rejected the same argument.  Reply Ex. 1 at 19.
26   ("Mr. Hatada's testimony that he and the rest of Oracle's collections staff was told in 2002 that the
     unapplied cash clean up project was in response to a law suit and concerned debit memos created in
27   2000 *cannot be negated by attacking Mr. Hatada's personal knowledge of Oracle's accounting*
     *practices*.").  This Court should reject the same argument here.

28

1   O'Bryan's conclusions or determine the methodology he used in analyzing the undisclosed "121

2   transfers to the bad debt reserve" in 2Q01.  Plfs' Mot. at 9. [9]

3           Defendants claim that Mr. O'Bryan "described how he identified those transactions, and he

4   explained how Plaintiffs could use the data . . . to reach the same conclusion."  Defs' Opp. at 10.

5   Mr. O'Bryan's description, however, was meaningless.  He stated that "[y]ou just go into the script

6   and run a sort in the database that has the credit amount 12601, then it prints *all the information*

7   *about that*.  That's all we did."  Motion Ex. 2 at 169:4-7.  This one sentence summary hardly

8   qualifies as adequate foundation and reliable methodology for analyzing *121 debit memo*

9   *transactions*.  Mr. O'Bryan is required to provide and explain *how* he interpreted that data, what

10  *criteria* he used to interpret it, and the specific information that he relied upon from "all the

11  information about that."  Mr. O'Bryan provides no support whatsoever for his opinions concerning

12  the 121 debit memo transfers.

13          Defendants' suggestion that plaintiffs' expert could "use the data" or "sort" the data on his

14  own to somehow recreate the 121 debit memo transactions relied upon by Mr. O'Bryan is

15  preposterous.  Defs' Opp. at 10-11.  Experts are not permitted to simply state a conclusion with no

16  foundational data or methodology and ask plaintiffs to hunt for and "use the data" on their own to

17  reinvent defendants' expert's methodology.  *See* Fed. R. Evid. 702.  Defs' Opp. at 12.  That kind of

18  opinion will not assist a jury at all.  Indeed, the fact that defendants suggested in their Opposition

19  that "[i]n the end, Mr. O'Bryan provided Plaintiffs with everything they need to *perform their own*

20  *analysis* . . ." demonstrates their fundamental misunderstanding of the requirements of Fed. R. Evid.

21  702.  Defs' Opp. at 12.  Mr. Regan already "perform[ed] [his] own analysis," and submitted a

22

23

---

24  [9]        Defendants' suggestion that plaintiffs should have asked Mr. O'Bryan to name individually
    all 458 debit memo transactions that he identified in his report during a 7-hour deposition, is
25  ludicrous.  Defs' Opp. at 9.  That is the whole purpose of the expert disclosure requirements of Fed.
    R. Evid. 702 and Fed. R. Civ. P. 26(a)(2) – to provide the information relied upon by the expert
26  *before* the expert's deposition so the opposing party can effectively cross-examine him.  Forcing a
    party to ask about 458 individual transactions on the record in a deposition rather than simply
27  producing a list of the transactions and customer names is simple gamesmanship.

28

1   lengthy report replete with reliable evidence.  He is not required to guess and re-create Mr.

2   O'Bryan's methods.

3       **3.    The 277 Unknown Debit Memos that Were Purportedly
            Refunded Prior to November 17, 2000**

4

5       Plaintiffs' Motion challenged Mr. O'Bryan's conclusion that 277 debit memos were

6   purportedly "refunded" prior to November 17, 2000.  Plfs' Mot. at 10 n.7.  Mr. O'Bryan failed to

7   provide a list of those 277 debit memos, the customers associated with the debit memos, the dates of

8   the refunds, or ***any*** underlying facts to support his conclusion that those debit memos were refunded.

9   Motion Ex. 2 at 207-208.

10      This information is necessary to effectively test Mr. O'Bryan's opinions on the 277 debit

11  memos, especially given Mr. O'Bryan's admission during his deposition that one of the debit memos

12  that he claimed was "refunded" prior to November 17, 2000 – a $76,645.04 refund and debit memo

13  for customer Household Finance – ***did not appear as a refund*** in the "Script Output" database, the

14  very database that defendants claim contains "complete accounting histories for 926 debit memos."

15  Defs' Opp. at 3.  Mr. O'Bryan could not explain why the purported refund was not in the Script

16  Output – he admitted that ***"I expected to see it.  I did not see it."***  Motion Ex. 2 at 267:4-268:14.

17  This inexplicable flaw in the evidence relied upon by Mr. O'Bryan is the very reason why plaintiffs

18  are entitled to supporting facts, data and customer names regarding the 277 debit memos that Mr.

19  O'Bryan claims were "refunded."  There are likely similar disputes with respect to the other 276

20  purported refunds of debit memos, but Mr. O'Bryan failed to identify those debit memos.

21      In sum, Mr. O'Bryan's failure to provide even the most fundamental information on the 60

22  "randomly chosen" debit memos, the 121 debit memos that were transferred to the bad debt reserve,

23  and the 277 debit memos that were purportedly "refunded" is improper under Fed. R. Civ. P.

24  26(a)(2) and Fed. R. Evid. 702.  Plfs' Mot. at 8-10.

25      **4.    The $2 million in Purportedly "Appropriate" Transfers to the
            Bad Debt Reserve in 2Q01**

26      Plaintiffs' Motion demonstrated that Mr. O'Bryan's opinions regarding $2 million in

27  allegedly "appropriate" transfers to the bad debt reserve had no support in the record or Mr.

28  O'Bryan's report.  Plfs' Mot. at 10-12.  Plaintiffs established that Mr. O'Bryan provided no support

1   for each of the three components of the $2 million: (a) the $700,000 in alleged "royalty" payments;

2   (b) the $800,000 in "erroneous" credit memos; and (c) the $500,000 in debit memos that "could be"

3   proper.  *Id.*  Notably, defendants in their motion do not even attempt to claim that the $500,000

4   component was proper; they concede only that the amount "*may* have been appropriate." Defs' Opp.

5   at 12.  Thus, Mr. O'Bryan's opinion on the $500,000 piece of the allegedly "proper" $2 million has

6   no support in the record.   In fact, when pressed, Mr. O'Bryan admitted that the evidence on those

7   transactions was "not as complete" and conceded that he could not conclusively say the transfers

8   were proper:

9       A.      [T]he notes were not conclusive for me, nor did I see any other type of
        support.  **We put that into a bucket of could be**.

10

11      Q.      Could be. **So you can't definitively say that $500,000 of transfers was
        proper; correct?**

12      A.      **That's correct.**

13   Motion Ex. 2 at 203:9-14.   Speculation that a transaction "could be" or "may have been" appropriate

14   is not reliable expert testimony under Fed. R. Evid. 702.

15       Defendants claim that Mr. O'Bryan's testimony on the remaining $1.5 million in transfers is

16   reliable because, at his deposition, he purportedly "walked through two examples of bad debt

17   transfers that illustrate his analysis of this issue." Defs' Opp. at 12. These "two examples" made no

18   sense. Mr. O'Bryan admitted in his deposition that there were at least "12 debit memos" related to

19   the $800,000 in "erroneous credit memos." Motion Ex. 2 at 182:19-184:15. Yet he did not identify

20   those 12 debit memos in his report, or provide any supporting evidence or analysis as to why he

21   concluded those debit memos were "appropriate." Mr. O'Bryan also did not provide any evidence

22   showing that the credit memos were "erroneous" or how he could make that determination **years**

23   **after** the credit memos were issued. He merely concluded that they were "erroneous" without any

24   supporting evidence. Mr. O'Bryan's opinion on the purported $700,000 in "royalty payments"

25   suffers from the same infirmities. Plfs' Mot. at 10.[10]

26   _____

27   [10]      Defendants attempt to deflect attention from their own unreliable expert by asserting that
28   plaintiffs' expert "did not perform **any** analysis to determine whether any of the 2Q01 bad debt

1

**B.      Mr. O'Bryan's Opinions on Materiality Are Improper**

2

Plaintiffs' Motion demonstrated that Mr. O'Bryan's opinion on the materiality of Oracle's

3 financial misstatements was based on analyses never explained or supported in his reports.  Plfs'

4 Mot. at 13.  Specifically, Mr. O'Bryan failed to provide the documents, stock price calculations and

5 other data used in determining historical trends and the materiality of "meeting" vs. "beating" Wall

6 Street consensus earnings expectations.  Motion Ex. 1 at 36-40.

7

During his deposition, Mr. O'Bryan tried to cure the deficiencies in his reports by explaining

8 a vague *post hoc* methodology for analyzing Oracle's stock price trends based on "a multitude of

9 things I looked at in the surrounding circumstances."  Motion Ex. 2 at 302:19-20.  He did not

10 provide the actual evidence, facts and supporting data for that "multitude of things" used in forming

11 his opinions.  Also, none of Mr. O'Bryan's "trend" analyses were contained in his opening or

12 rebuttal reports.  Accordingly, Mr. O'Bryan's opinions on materiality are unsupported, unfounded

13 and would require an analysis of hearsay information not properly in the record or contained in Mr.

14 O'Bryan's reports.[11]

15

**C.      Mr. O'Bryan's Opinion on the HP Transaction Was Based on
             Documents Never Produced to Plaintiffs or Their Experts**

16

17

Defendants claim that it is "outrageous" for plaintiffs to claim "unfair surprise" regarding

Mr. O'Bryan's opinion on the HP Transaction.  Defs' Opp. at 7.  They claim that "[p]laintiffs cannot

18

---

19 transfers were proper or could be recognized as revenue."  Defs' Opp. at 13 n.6.  In fact, Mr. Regan

20 provided a lengthy analysis and supporting evidence for his conclusion that *all of the $20 million in transfers* was improper.  Reply Ex. 2, ¶¶19-23, 30-38.  Indeed, as he explained, it is never proper to

21 convert customer overpayments to revenue and earnings.  *Id.*  If the money was truly "revenue," as Mr. O'Bryan suggests, it would not have been sitting in Oracle's customer overpayments account

22 and would never have been transferred to Account 12601 to inflate earnings in the first place.  *Id.*  If defendants' argument that Mr. Regan did not do "any analysis" had any merit whatsoever (it does

23 not), defendants certainly would have moved to exclude Mr. Regan's testimony.  They did not.

24 [11]     Defendants concede that Mr. O'Bryan did not provide plaintiffs with any analysis in his reports concerning the materiality of the difference between "meeting" and "beating" Wall Street

25 expectations. Defs' Opp. at 14 ("Mr. O'Bryan testified about this issue *only because* Plaintiffs specifically asked him whether he performed such an analysis during

26 his deposition.").  That is precisely the point.  Mr. O'Bryan did not disclose his methodology in his reports and although he provided a vague and belated explanation of what he purportedly did during

27 his deposition, he did not produce the actual findings, data, the stock price movements, or the dates that he used to conduct the analysis.  This is not permitted under Fed. R. Evid. 702.

28

1   seriously claim that they were 'surprised' or 'prejudiced' by Mr. O'Bryan's opinion in this regard."

2   *Id*.  Defendants' vitriol is misplaced.  Plaintiffs were not surprised that Mr. O'Bryan issued an

3   opinion on the HP Transaction – indeed, they were expecting it.  What is improper and prejudicial is

4   that Mr. O'Bryan provided a ***one-paragraph opinion*** on the HP Transaction that he admitted was

5   "light," and then waited until after Mr. Regan issued his detailed 29-page opinion, replete with

6   hundreds of supporting documents, to perform a real analysis of the HP Transaction.  Plfs' Mot. at

7   14-17.[12]  This is not proper.  *See Humphreys v. Regents of the Univ. of Cal.*, No. C 04-03808 SI,

8   2006 U.S. Dist. LEXIS 47822 (N.D. Cal. July 6, 2006) ("Without more information, plaintiff is

9   prevented from understanding the reasons behind Pratt's opinion, and the Court certainly is unable to

10  determine whether Pratt's report meets the threshold "reliability" requirement for expert testimony.

11  Further, it appears that Pratt reached his conclusion after reviewing only Finkelman's report, which

12  is the sole document that Pratt's report specifically states that he reviewed. This further suggests that

13  Pratt's opinion is unreliable.").  Plaintiffs' expert did not have fair and equal access to evidence and

14  was sandbagged with a 26-page rebuttal opinion (after a one-paragraph "light" opinion) that relies

15  almost exclusively on incomplete evidence that was never produced before.  That is why defendants'

16  claim that "[p]laintiffs believe that their expert can opine freely on accounting theories that are not at

17  issue in the case, but Defendants' expert is precluded from responding to those arguments on

18  rebuttal" is so puzzling.  Defs' Opp. at 2.  Mr. O'Bryan is certainly allowed to rebut Mr. Regan's

19  testimony on the HP Transaction.  What he is not permitted to do under Fed. R. Civ. P. 26(a)(2) and

20  Fed. R. Evid. 702 is submit an incomplete and unsupported one-paragraph "light" opinion that does

21  not perform any independent analysis at all, and then wait until rebuttal to perform a substantive

22

---

23  [12]      Defendants claim that the HP Transaction was "not a proper subject of discovery" is
    inaccurate.  Defs' Opp. at 2.  Defendants produced numerous documents related to the HP
24  Transaction throughout the litigation, attended countless hours of depositions where the HP deal was
    discussed in detail (including of HP itself), and their expert proffered expert testimony concerning
25  the deal.  If the HP deal was not a proper subject for discovery, how do defendants explain why they
    produced scores of HP documents during discovery?  Furthermore, contrary to defendants' assertion,
26  Judge Infante expressly declined to issue a ruling on the HP issue and allowed the HP deposition to
    proceed.  Defendants have participated in years of discovery on the HP transaction and cannot now
27  attempt to avoid the evidence simply because they find it unfavorable for their case.

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF
DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN - C-01-0988-SI          - 11 -

opinion based on documents that were ***never produced to plaintiffs' expert***.  Expert opinions based on such an improper and unreliable foundation should be excluded.[13]

Finally, defendants attempt to downplay Mr. O'Bryan's false representation that his testimony was never  excluded in any case by asserting that Mr. O'Bryan "simply misunderstood the original question."  The question could not be more simple:

> Q.   ***Has your testimony in any case in the past five years ever been excluded by the court?***
>
> A.   ***No.***
>
> Q.   ***Never?***
>
> A.   ***No.***

Motion Ex. 2 at 35:15-19.

This was false.  Mr. O'Bryan's sworn expert testimony was excluded in 2003 by a California state court judge for being "***unduly speculative and therefore insufficient***."   *See* Motion Ex. 7 (*Farnham v. Rehwald*, No. B170124, 2005 Cal. App. Unpub. LEXIS 3107, at *19 (Cal. App. 2d Dist. April 5, 2005)).  The lower court's ruling was subsequently upheld by the California Court of Appeals.  *Id*., at *5 ("***The trial court's exclusion of O'Bryan's testimony*** was neither arbitrary nor capricious and certainly did not 'exceed the bounds of reason.'").  It is hard to believe that a highly sophisticated and credentialed expert with over 30 years of experience who has testified in countless securities fraud cases, would "misunderstand" such a straightforward question.  Gamesmanship has no place in the expert discovery process and it should not be rewarded.  Mr. O'Bryan's testimony should be excluded.

---

[13]     It is more than a little ironic that defendants have moved for summary judgment on the accounting issues as being "undisputed" as a matter of law, but when trying to defend the usefulness of Mr. O'Bryan's testimony to a jury, they state that "***[g]iven the nature of Plaintiffs' accounting allegations, the complexity of revenue recognition generally . . . there can be no question that his testimony will aid the jury in understanding the relevant facts.***"  Defs' Opp. at 4.

1    **III.     CONCLUSION**

2          Based on the foregoing, plaintiffs' Motion should be granted.

3    DATED:  December 12, 2008                    Respectfully submitted,

4                                                 COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
5                                                 MARK SOLOMON
                                                  DOUGLAS R. BRITTON
6                                                 655 West Broadway, Suite 1900
                                                  San Diego, CA  92101
7                                                 Telephone:  619/231-1058
                                                  619/231-7423 (fax)
8
                                                 COUGHLIN STOIA GELLER
9                                                   RUDMAN & ROBBINS LLP
                                                  SHAWN A. WILLIAMS
10                                                WILLOW E. RADCLIFFE
                                                  ELI R. GREENSTEIN
11                                                DANIEL J. PFEFFERBAUM
                                                  100 Pine Street, Suite 2600
12                                                San Francisco, CA  94111
                                                  Telephone:  415/288-4545
13                                                415/288-4534 (fax)

14

15                                                        s/ Eli R. Greenstein
                                                 _____
16                                                       ELI R. GREENSTEIN

17                                                COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
18                                                STACEY M. KAPLAN
                                                  9601 Wilshire Blvd., Suite 510
19                                                Los Angeles, CA  90210
                                                  Telephone:  310/859-3100
20                                                310/278-2148 (fax)

21                                                Lead Counsel for Plaintiffs

     C:\PROGRA~1\pdfDocs\users\DeeM\Import\BRF00056001_O'Bryan Reply.doc
22

23

24

25

26

27

28
     PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF
     DEFENDANTS' ACCOUNTING EXPERT J. DUROSS O'BRYAN - C-01-0988-SI                  - 13 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following designated Internet site at: http://securities.csgrr.com/.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 12, 2008.

s/ Eli R. Greenstein
ELI R. GREENSTEIN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

E-mail: Elig@csgrr.com

## Mailing Information for a Case 3:01-cv-00988-SI

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,jillk@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Dorian Estelle Daley**
  dorian.daley@oracle.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,eeberline@morganlewis.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com,#sfdocket@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysobolevа@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,sholloway@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111

**Monique C. Winkler**
Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111