# EXHIBIT 30

1   MAYER, BROWN, ROWE & MAW LLP
    Donald M. Falk (SBN 150256)
2   Lee H. Rubin (SBN 141331)
    Shirish Gupta (SBN 205584)
3   Two Palo Alto Square, Suite 300
    Palo Alto, California 94306
4   Telephone:     (650) 331-2000
    Facsimile:     (650) 331-2060
5   lrubin@mayerbrownrowe.com

6   MAYER, BROWN, ROWE & MAW LLP
    Alan N. Salpeter (admitted *pro hac vice*)
7   Javier Rubinstein (admitted *pro hac vice*)
    Vincent P. Schmeltz III (admitted *pro hac vice*)
8   71 South Wacker Drive
    Chicago, IL 60606
9   Telephone:     (312) 782-0600
    Facsimile:     (312) 701-7711
10  jrubinstein@mayerbrownrowe.com

11  Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
    J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
12
    ORACLE CORPORATION
13  Dorian Daley (SBN 129049)
    James C. Maroulis (SBN 208316)
14  500 Oracle Parkway, Mailstop 5OP7
    Redwood Shores, California 94065
15  Telephone:     (650) 506-5200
    Facsimile:     (650) 506-7114
16  jim.maroulis@oracle.com

17  Attorneys for Defendants ORACLE CORPORATION

REC'D JUN 2 3 2005

18              **UNITED STATES DISTRICT COURT**

19      **NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION**

20
    IN RE ORACLE CORPORATION               Case No. C-01-0988-MJJ
21  SECURITIES LITIGATION                  (Consolidated)

22                                         **DEFENDANTS' THIRD
                                           SUPPLEMENTAL RESPONSES TO**
23  This Document Relates To:              **PLAINTIFFS' FIRST SET OF
                                           INTERROGATORIES**
24  ALL ACTIONS.

25
                                           **Judge Martin J. Jenkins**
26                                         **Magistrate Judge Joseph C. Spero**

27

28

1      Pursuant to Federal Rule of Civil Procedure 33, Defendants Oracle Corporation

2 ("Oracle"), Lawrence J. Ellison ("Ellison"), Jeffrey O. Henley ("Henley") and Edward J.

3 Sanderson ("Sanderson") (collectively "Defendants") hereby supplement their responses to

4 Plaintiffs' First Set of Interrogatories to Defendants Oracle, *et al*. ( the "Interrogatories").

5                              **GENERAL RESPONSES AND OBJECTIONS**

6      Defendants hereby incorporate the General Responses and Objections listed in their

7 responses to the Interrogatories, served on February 14, 2005.

8                              **SPECIFIC RESPONSES AND OBJECTIONS**

9      Without waiving or limiting each of the above general responses and objections and

10 subject thereto, Defendants respond to Plaintiffs' specific interrogatories as follows:

11 **INTERROGATORY NO. 1:**

12      State all facts upon which you based your statement made during Oracle's March 15, 2001

13 third quarter financial results conference call that "I think it was the economy that really did us

14 in."

15 **RESPONSE TO INTERROGATORY NO. 1:**

16      Defendants incorporate each of their General Objections as though fully set forth herein.

17 Defendants further object to Interrogatory No. 1 as overbroad and unlikely to lead to the

18 discovery of admissible evidence. Defendants further object to this Interrogatory as unduly

19 burdensome to respond in the time allotted. Defendants are willing to meet and confer

20 concerning this Interrogatory.

21 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

22      Defendants incorporate each of their General Objections as though fully set forth herein.

23 Subject to and without waiving these objections, Defendants state that the statement "I think it

24 was the economy that really did us in" was based on the circumstances surrounding the sudden

25 drop-off in deal conversions that occurred in the last few days of 3Q01. *See* NDCA-ORCL

26 050620-50621 and 050651.

27

28

1    "Despite the fact that its revenues tended to come in quite close to the end of quarters,

2    Oracle had successfully met its earnings projections in every quarter from 1998 through 2Q 01."

3    *In re Oracle Corp. Deriv. Litig.*, C.A. No. 18751 (Del. Ct. Chancery – December 2, 2004

4    Opinion) ("Strine Op."). In the two quarters immediately following the release of Suite 11i

5    (1Q01 and 2Q01), Oracle produced record-breaking financial results. In 1Q01, Oracle's net

6    income rose by 111% compared to 1Q00, yielding split-adjusted earnings of more than 8 cents

7    per share, two cents above Oracle's projection. NDCA-ORCL 01092-1216. Oracle's second

8    quarter in FY01 was an even greater success, with net income rising by 62% compared to 2Q00.

9    NDCA-ORCL 01509-1645.

10   Coming off two historic quarters, Oracle's sales divisions began the quarter by internally

11   forecasting robust growth in 3Q01 consistent with Oracle's public guidance. Indeed, Oracle's

12   internal financial reports, including its 3Q01 Upside Reports, Pipeline Reports and Big Deal

13   Reports, as well as its monthly update reports, such as its monthly Flash Reports and Red/Grey

14   Financial Reference Books, all of which Defendants produced as part of their Initial Disclosures,

15   continued to show robust growth until the last few days of the quarter, when reports began

16   coming in that customers were delaying purchases due to the economy.

17   Specifically, the February 5, 12, and 19 Upside Reports[1] showed quarterly earnings of

18   $0.12 or $0.11 per share, consistent with Oracle's public guidance, and well within range of

19   achieving that guidance. The lowest of these reports predicted earnings per share of $0.1123

20   EPS, less than three-tenths of a cent short of the level needed, with rounding, to meet the

21   unchanged public projection. *See* NDCA-ORCL 00389-422 and 00436-456.

22   The February 5, 2001 Pipeline Report[2] revealed 32% pipeline growth, well above Oracle's

23   25% growth estimate on December 14, 2000. NDCA-ORCL 00524-534. Using the 3Q00

24   conversion rate of 53%, the Pipeline Report still projected that Oracle would easily meet its

25   quarterly performance targets, as it would have at any recent historical conversion rate.

26

27

28

---

[1] Upside Reports have been produced to Plaintiffs at NDCA-ORCL 00001-503.
[2] Pipeline Reports have been produced to Plaintiffs at NDCA-ORCL 00504-534.

2

1       The Flash Report[3] issued on February 8, 2001, which reported actual results for the first

2   two months of 3Q01, showed License revenue growth of 25%—directly in line with Oracle's

3   projection of 25% License revenue growth.   NDCA-ORCL 00545.   Likewise, the Red/Grey

4   Book[4] showed that net income for the first two months of 3Q01 was up 72% from Oracle's net

5   income reported for the first two months of 3Q00.

6       In the last week of the quarter, the Upside Reports were generated daily.   The Report

7   generated on February 26 showed an EPS forecast of 11.19 cents (a .04 cent decrease from the

8   prior week).   NDCA-ORCL 00454; *see also* Strine Op. at 34.   On the last day of the quarter,

9   however, Oracle's projections dropped 10% to 10.07 cents EPS.   NDCA-ORCL 00488.

10       As Vice Chancellor Strine recognized, "The undisputed evidence [is] that Oracle's 3Q 01

11   prospects weakened substantially in the last month of the quarter (February 2001), the month

12   following the completion of trading by Henley and Ellison, largely due to customers refusing to

13   close deals in the final days of the quarter."   Strine Op. at 3.   Oracle's "Big Deal" Reports[5] also

14   showed the strength of Oracle's business until the last three days of 3Q01.   "Big Deal Reports"

15   are prepared near the end of each quarter, tracking the volume of deals of License deals in North

16   America over $500,000.   Through Monday, February 26, 2001, Oracle already had closed "big

17   deals" at nearly *triple* the rate of 3Q00.   Only on February 27, 2001 did the trajectory of Big

18   Deals begin to plummet, sinking from a positive 192% on February 26 to a *negative* 1% on

19   February 28 due to the massive number of last-minute customer decisions not to close significant

20   license transactions.   *Compare* NDCA-ORCL 00554 and 00558.   Some of the customers had

21   relayed that their last-minute decisions to defer signing contracts with Oracle was because of their

22   concerns with the economy and their own finances.   *See* NDCA-ORCL 03454-3456, 03458-3459

23   and 03460-3461.   *See also* NDCA-ORCL 050660 and 050638.   Indeed, in at least five of the

24   deferrals, the contracts had been fully negotiated and purchase orders were in front of the

25

26

27   [3] Flash Reports have been produced to Plaintiffs at NDCA-ORCL 00535-548.
     [4] Red/Grey Books have been produced to Plaintiffs at NDCA-ORCL 00561-01772.
28   [5] Big Deal Reports have been produced to Plaintiffs at NDCA-ORCL 00550-560.

3

1    customers' top executives for approval. *See* NDCA-ORCL 03454-3456, 050622, 050663-050664

2    and 050667-50668.

3    The last-minute e-mail traffic confirms that the sudden drop-off in closings surprised

4    Oracle executives.[6] A string of e-mails during the last 72 hours of 3Q01 also confirms that the

5    Defendants and other senior Oracle executives did not suspect that Oracle might miss its quarterly

6    forecast until the dramatic fall-off in big-deal conversions in that period. *See also* Strine Op. at

7    34-37. Just before 1 a.m. on Monday, February 26, George Roberts (the EVP of NAS) sent the

8    first in the series to Ellison, Henley, Jennifer Minton (SVP and Corporate Controller), Safra Catz

9    (EVP and Director) and David Winton (the NAS finance director). Roberts explained in his e-

10   mail that:

11   
> On Friday John Nugent told me that he had 10mm of forecasted
> business fall out of the forecast in the West area. It was not one or
> two deals but over 70 separate transactions slipped. The mix of
> accounts was 70% new economy and 30% brick and mortar. The
> top reason given by the companies was capital preservation.

> I spent the weekend reviewing the numbers, pipeline and upside
> deals to see if we could still find a way to the 320mm [Feb. 26
> Forecast Projection for NAS]. However based on the continual
> erosion of the pipeline and forecast this quarter I am reducing my
> forecast by 20mm. This puts the forecast at 300mm with a best
> case of 305mm.

NDCA-ORCL 03462. Roberts also forwarded an e-mail that he had received from Nic Classick,

the sales executive in charge of the NAS west region, apologizing for the sudden collapse within

NAS (*id.*):

> Thursday afternoon it looked like our forecast would be in the $60's
> m[illion]. After netting everything thru Friday night we will off an
> addl $10 m[illion] and are looking at a quarter number in the low
> 50's. I am aware of the impact this news has to Oracle and I am
> sorry that we have created such a problem. This is my organization
> and I am responsible for a forecast to you—I failed.

---

27   [6] The suddenness of the change is succinctly captured in the comments and actions of the CEO of Siebel Systems,

28   Tom Siebel, who did not see any signs of an impending collapse until February of 2001. *See* NDCA-ORCL 050676-50680.

4

1    Classick explained exactly what had happened (*id.*):

2          From the 2-16 forecast to the 2-23 forecast, we had 78 field deals,
           by 47 different reps totaling $14.9 m[illion] move out of the
3          quarter. The last month of the quarter I go over deals line by line
           item with the managers weekly. This has been successful in the
4          past as it gives me the oppt to get accurate info to provide upper
5          management and build a reliable forecast.

6    Classick contrasted the shock of the current quarter with his prior experience (*id.*):

7          In my 6 years with Oracle this is the most difficult news I have had
           to deliver as a forecast, especially this late in the quarter, is a
8          personal commitment and I have let you and Oracle down. I am
9          sorry.

10         Henley responded to Roberts' e-mail by noting that "[t]his has been the 'economy risk'

11   we've been facing all quarter. You don't really see it until the end of the quarter when people

12   have to sign the dotted line and they are more cautious so things start slipping." NDCA-ORCL

13   03458. Ellison responded next, asking: "George, do you think that these deals have slipped into

14   Q4 or have they simply disappeared?" NDCA-ORCL 03460. Classick replied (*id.*):

15         NET—lost to competition 5%, firm q4 projects 25%, delayed until
16         economic or business conditions are clearer 70%. We had 5 POs
           cut that Presidents pulled until April as they wanted to see what
17         their q1 would look like. The uncertainty of their business and
           outlooks for the year has caused many clients to delay until they
18         better understand what directions 2001 will take. We can't commit
19         this 70% as April results and the business climate will have to
           determine.
20

21   NAS was not alone. A long series of e-mails to Minton from Sarah Kopp of OSI on February 27

22   and 28 revealed a rapid deterioration in OSI's conversion of significant transactions during the

23   final 48 hours of the quarter—losing more than $100 million in deals in just 36 hours. *See*

24   NDCA-ORCL 03463-3481.

25

26

27

28

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER    DEFENDANTS' THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF
INTERROGATORIES; CASE NO. C-01-0988-MJJ

1  **INTERROGATORY NO. 2:**

2        State all facts upon which you based your statement made during Oracle's March 15, 2001

3  third quarter financial results conference call that "[r]ight up to the end of the quarter ... [Oracle]

4  [h]adn't seen any indication of an erosion in our internal forecast or heard of significant issues in

5  regular conversations with the U.S. sales and management."

6  **RESPONSE TO INTERROGATORY NO. 2:**

7        Defendants incorporate each of their General Objections as though fully set forth herein.

8  Subject to and without waiving these objections, Defendants state that the statement that "[r]ight

9  up to the end of the quarter ... [Oracle] [h]adn't seen any indication of an erosion in our internal

10  forecast or heard of significant issues in regular conversations with the U.S. sales and

11  management" was based on Oracle's forecasting documents, including its 3Q01 Upside Reports

12  and Pipeline Reports, as well as its monthly update reports, such as its Big Deal Reports, Flash

13  Reports and Monthly/Quarterly Financial Reference Books, all of which Defendants produced as

14  part of their Initial Disclosures.

15  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

16        Defendants incorporate each of their General Objections as though fully set forth herein.

17  Subject to and without waiving these objections, Defendants incorporate Supplemental Response

18  to Interrogatory Number 1 as if it were set forth herein.

19

20  **INTERROGATORY NO. 3:**

21        State all facts upon which you based your statement made during Oracle's March 15, 2001

22  third quarter financial results conference call that "if you look at our numbers after the second

23  month in Q3, we were well ahead and had [a] very strong pipeline."

24  **RESPONSE TO INTERROGATORY NO. 3:**

25        Defendants incorporate each of their General Objections as though fully set forth herein.

26  Subject to and without waiving these objections, Defendants state that the statement that "if you

27  look at our numbers after the second month in Q3, we were well ahead and had [a] very strong

28  pipeline" was based on Oracle's forecasting documents, including its 3Q01 Upside Reports and

1   Pipeline Reports, as well as its monthly update reports, such as its Big Deal Reports, Flash

2   Reports and Monthly/Quarterly Financial Reference Books, all of which Defendants produced as

3   part of their Initial Disclosures.

4   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

5   Defendants incorporate each of their General Objections as though fully set forth herein.

6   Subject to and without waiving these objections, Defendants incorporate Supplemental Response

7   to Interrogatory Number 1 as if it were set forth herein.

8   Further answering, Defendants state that, among other things, Ellison had the following

9   specific, objective evidence on which to base the foregoing statement. In December 2000, Oracle

10   closed the single largest licensing deal in its history—the $60 million Covisint transaction. As

11   Vice Chancellor Strine recognized in his December 2004 decision in *In re Oracle Derivative*

12   *Litigation*, the Covisint deal "gave Oracle a strong start for the quarter and that revenue was

13   included in the December 11 Upside Report. And, as of that time, the December 11, 2000

14   Pipeline Report was showing total company Pipeline growth of 52%." Strine Op. at 20. The

15   Vice Chancellor also went on to state that the Covisint deal "generated real revenue ... that

16   Ellison knew would help Oracle make the mark." Strine Op. at 77. Finally, "[w]ith Covisint,

17   Oracle had clearly dropped enough revenue in the license bucket to be on the way to filling it at

18   the end of the quarter." Strine Op. at 80.

19   Ellison's understanding as to the strength of Oracle's prospects after the first two months

20   of the quarter was also supported by several reports prepared and distributed in February 2001.

21   For example, the February 5, 2001 Pipeline Report reported 32% pipeline growth, well above

22   Oracle's 25% growth estimate on December 14, 2000. NDCA-ORCL 00524-534. Applying the

23   3Q00 conversion rate of 53%, the February 5, 2001 Pipeline Report still projected that Oracle

24   would easily meet its quarterly performance targets, as it would have at any recent historical

25   conversion rate.[7] The February 8, 2001 Flash Report and the Red/Grey Book reporting actual

26

27   [7] Indeed, as Vice Chancellor Strine found, "in 3Q 01 the Pipeline was, at all relevant times, sufficient for Oracle to

28   either exceed, meet, or not fall materially short of the Market Estimates, assuming historical conversion rates." Strine Op. at 85 n.176.

7

1    results for the first two months of the quarter provided further support for this statement,

2    reporting License revenue growth of 25%—directly in line with Oracle's projection of 25%

3    License revenue growth—and an increase in net income of 72% over the first two months of

4    3Q00. *See, e.g.,* NDCA-ORCL 00545 (Flash Report); NDCA-ORCL 00561-01772 (Red/Grey

5    Books). Finally, through Monday, February 26, 2001, Oracle had closed "big deals" at nearly

6    *triple* the rate of 3Q00.

7              Throughout this time, Ellison held Oracle's Executive Management Committee

8    accountable for giving him the most accurate possible estimates of Oracle's progress toward the

9    public projections—and he based his statements about the progress of 3Q01 on the information he

10   received. As Vice Chancellor Strine found, it was an "undisputed fact that Ellison and Henley

11   actively questioned [their] subordinates about their numbers. . . . If, after creating an

12   environment in which hard questions about estimates were continually asked by EMC members

13   and by members of [Jennifer] Minton's team in a culture in which conservative projecting was the

14   rule, Ellison and Henley received—as they did—Best Estimates suggesting that Oracle would

15   meet the Market Estimates, the idea that material, adverse information existed simultaneously

16   with those Estimates is less, not more, tenable." Strine Op. at 70.

17

18   **INTERROGATORY NO. 4:**

19              Identify each of the "very, very large deals [that] didn't sign" referenced by you in the

20   March 15, 2001 third quarter financial results conference call.

21   **RESPONSE TO INTERROGATORY NO. 4:**

22              Defendants incorporate each of their General Objections as though fully set forth herein.

23   Subject to and without waiving these objections, Defendants will, in lieu of a written response,

24   produce responsive documents pursuant to Fed. R. Civ. P. 33(d).

25   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

26              Defendants incorporate each of their General Objections as though fully set forth herein.

27   Subject to and without waiving these objections, Defendants are in the process of investigating

28

8

1  and searching for the information requested and, as the information is obtained, will continue to

2  provide supplemental responses to this Interrogatory.

3  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

4      Defendants incorporate each of their General Objections as though fully set forth herein.

5  Subject to and without waiving these objections, notwithstanding the continuing investigation

6  being undertaken by Defendants, Defendants state that "very, very large deals" is not a routinely

7  used term within Oracle.  However, Oracle does track "big deals" (deals valued at $500,000 or

8  more).  Big deals that did not close in the last month of 3Q01 included, among others, deals for

9  the following potential customers:

10  24/7 Media
    AARP #3
11  Acros
    Acterna
12  Ahold Holdings USA, Inc.
    AK Steel
13  Allina Health System
    Alltel
14  American Electric Power
    American National Insurance Comp.
15  Americredit
    Apigent Solutions
16  Arrow Electronics
    Automatic Data Processing
17  Barton Malow
    BellSouth Cingular (Newco)
18  BellSouth Corporation
    Best Buy
19  Best Buy Co, Inc.
    Bisys
20  BMC Software
    Boeing BCAG
21  Brightpoint
    Broadvision
22  Brunswick Corporation
    Capital One
23  CBT Systems
    ChaseCom
24  Chiliad Publishing
    Ciena Corporation
25  Cigna Dental & Behavioral Health
    City of Detroit Government
26  City of Omaha, NE
    Coastal Lumber
27  Columbia University
    Comms Canada
28  Compaq Computer Corporation

9

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

| 1 | Concord Communications |
| | Consonus |
| 2 | Continental Airlines |
| | Convergys Corporation |
| 3 | Cort Furniture |
| | CP Ships |
| 4 | CR Bard |
| | Credit Suisse First Boston |
| 5 | Cummins ONAN |
| | Cypress Semiconductor |
| 6 | Data Centric Broadband |
| | Defense Logistics Agency |
| 7 | Dell Computer Corporation |
| | DFO |
| 8 | Diebold Incorporated |
| | DISA |
| 9 | Discover Financial Services, Inc. |
| | DVI Inc. |
| 10 | Ebenx |
| | EBS Dealings |
| 11 | Efficient Networks |
| | First Data Resources |
| 12 | Fleet Bank |
| | Fusion UV |
| 13 | Gap Inc. |
| | GE |
| 14 | GE  Lighting |
| | GE Power Systems |
| 15 | Geico |
| | General Electric Corporate |
| 16 | General Motors Corporation |
| | Global Crossing |
| 17 | GT Interactive |
| | Halliburton Company |
| 18 | HE Butt Grocery |
| | Health Alliance Plan |
| 19 | Ingraham Micro |
| | Intel |
| 20 | Inventory Locator Service |
| | Investors Group |
| 21 | Janssen Ortho LLC |
| | King County |
| 22 | Leader Technologies |
| | lexicon marketing |
| 23 | Lithonia Lighting |
| | Lockheed Martin Technology Services |
| 24 | Logistics Services |
| | Los Angeles Dept of Water and Power |
| 25 | Loudcloud Inc |
| | Lucent Microelectronics |
| 26 | Lucent Technologies |
| | MA ITD |
| 27 | Maritime Telegraph & Telephone Company Limited |
| | Maryland JIS |
| 28 | McGhan Medical |

10

1 | McGhan Medical Corporation
Mellon Financial Services
2 | Mercy/HC/IC-Hospitals,,AKA,,CHE-SFLA
MI Drilling Fluids
3 | Miami-Dade County
Mitsubishi Heavy Industries
4 | Monroe County
Montgomery County Public Schools
5 | Motorola Inc.--PCS
Myriad
6 | Nacio Systems
NASA Johnson Space Center
7 | Navair El - 259579
Navisite
8 | Navy - ITC New Orleans
Navy - Medical
9 | News Corporation
Northwestern (Expanets)
10 | Norwest Financial Services
NYS OFT
11 | On Fiber Communications
OnStar
12 | OptiGlobe Communications
Origin
13 | Pactolis Communications
Parsons Brinckerhoff
14 | Personnel Decisions International
Pizza Hut
15 | Pomeroy Computer Resources, Inc.
Premier Schools
16 | Prince Georges County Public Schools
Providian Financial
17 | Prudential
Qualcomm Consumer Products
18 | Radio Systems
Rand Technologies Corporation
19 | Raytheon
Real Networks
20 | Robert Half Inc.
Rockefeller University
21 | Ross Stores
SBC Communications Inc
22 | Seagate Technology
Securities Industry Automation Corporation (SIAC)
23 | Solectron
Sony Semiconductor
24 | Southwest Alabama IJIS Project
SPX
25 | St Johns River Community College
Starbucks
26 | State of New Jersey
State of New York
27 | State System of Higher Education (PA)
Sun
28 | Sun Microsystems

11

1  Symantec
   TDS
2  TechMaster
   Technicolor Entertainment Services
3  TechRx Incorporated
   Tektronix
4  Timberland
   Topp Telecom
5  Tosco
   Tower Semi Co.
6  Transora
   Tricare Communications & Customer Service
7  Trinity
   UCHHS
8  Ultimate Electronics
   Union Bank
9  Unisys Corporation
   University of Chicago Hospitals
10 US Filter
   Veritas Software Corporation
11 Vision Tek, Inc.
   VWR Scientific
12 Web ID
   Website Results
13 Wells Fargo
   WGBH
14 Windsor Mold Group
   World Commerce Online
15 Youraccounts.com
   Zimmer Inc

16 **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

17      Defendants incorporate each of their General Objections as though fully set forth herein.

18 Subject to and without waiving these objections, notwithstanding the continuing investigation

19 being undertaken by Defendants, Defendants state that, in addition to the deals for the potential

20 customers listed in the Second Supplemental Response to Interrogatory Number 4, big deals that

21 did not close in the last month of 3Q01 included, among others, deals for the following potential

22 customers:

23 Bank of Tokyo Mitsubishi
24 Howard University
   WorldCom
25 Sprint
   WIN/Italy
26

27

28

1   **INTERROGATORY NO. 5:**

2          State all facts upon which you based your statement made during Oracle's March 15, 2001

3   third quarter financial results conference call that "in the applications space, clearly, I think part

4   of the reason we did so poorly was because of the slowdown in the U.S. economy."

5   **RESPONSE TO INTERROGATORY NO. 5:**

6          Defendants incorporate each of their General Objections as though fully set forth herein.

7   Defendants further object to Interrogatory Number 5 as overbroad and unlikely to lead to the

8   discovery of admissible evidence.  Defendants further object to this Interrogatory as unduly

9   burdensome to respond in the time allotted, but are willing to meet and confer.

10  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

11         Defendants incorporate each of their General Objections as though fully set forth herein.

12  Subject to and without waiving these objections, Defendants incorporate Supplemental Response

13  to Interrogatory Number 1 as if it were set forth herein.

14

15  **INTERROGATORY NO. 6:**

16         Identify each contract that you indicated during the March 15, 2001 third quarter financial

17  results conference call "slipped as a result of key executives delaying decisions to sign the deals

18  when they represented the final signature."

19  **RESPONSE TO INTERROGATORY NO. 6:**

20         Defendants incorporate each of their General Objections as though fully set forth herein.

21  Subject to and without waiving these objections, Defendants will, in lieu of a written response,

22  produce responsive documents pursuant to Fed. R. Civ. P. 33(d).

23  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

24         Defendants incorporate each of their General Objections as though fully set forth herein.

25  Subject to and without waiving these objections, Defendants are in the process of investigating

26  and searching for the information requested and, as the information is obtained, will continue to

27  provide supplemental responses to this Interrogatory.

28

1 **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

2       Defendants incorporate each of their General Objections as though fully set forth herein.
3 Subject to and without waiving these objections, Defendants state that they have made a good
4 faith effort to obtain the information requested and, to date, have been unable to do so. However,
5 Defendants' investigation continues and, if Defendants obtain such information, they will provide
6 supplemental responses to this Interrogatory.

7 **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

8       Defendants incorporate each of their General Objections as though fully set forth herein.
9 Subject to and without waiving these objections, notwithstanding their continuing investigation,
10 Defendants state that the reference to contracts that "slipped as a result of key executives delaying
11 decisions to sign the deals when they [were] []presented the final signature," which was made in
12 the March 15, 2001 third quarter financial results conference call, was based upon the information
13 that Oracle employees such as Nic Classick and George Roberts provided in the final days of
14 3Q01 and in the days following the close of the quarter. *See* NDCA-ORCL 03458-3459, 03462,
15 03454-3456. That information included, among other things, the e-mail correspondence that is
16 quoted in Defendants' Supplemental Response to Interrogatory Number 1 and that is the subject
17 of Interrogatories Number 12 and Number 13. As a result, the contracts that "slipped as a result
18 of key executives delaying decisions to sign the deals when they [were] []presented the final
19 signature" included many of the same deals that are responsive to Interrogatories Number 12 and
20 Number 13.

21

22 **INTERROGATORY NO. 7:**

23       State all facts upon which you based your statement made during Oracle's March 15, 2001
24 third quarter financial results conference call that "the conversion rates were much less than
25 normal in Q3."

26 **RESPONSE TO INTERROGATORY NO. 7:**

27       Defendants incorporate each of their General Objections as though fully set forth herein.
28 Subject to and without waiving these objections, Defendants state that the statement that "the

1  conversion rates were much less than normal in Q3" was based on Oracle's forecasting
2  documents, including its 3Q01 Upside Reports and Pipeline Reports, as well as its monthly
3  update reports, such as its Big Deal Reports, Flash Reports and Monthly/Quarterly Financial
4  Reference Books, all of which Defendants produced as part of their Initial Disclosures.

5  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

6      Defendants incorporate each of their General Objections as though fully set forth herein.
7  Subject to and without waiving these objections, Defendants respond as follows:

8      The December 11 Pipeline Report projected a conversion rate of 53% (identical to the rate
9  in 3Q00). NDCA-ORCL 00505. Oracle's public projection, on the other hand, correlated to a far
10 more conservative 42% conversion rate. Applying the 3Q00 conversion rate to the 3Q01 pipeline
11 as of December 11, 2000 would have yielded earnings of $0.16 per share, well above the $0.12
12 per share projected on December 14, 2000.

13     As it turns out, Oracle's actual License revenues for 3Q01 were $1,108,917,000, reflecting
14 a conversion rate of 37% of the December 11 pipeline, 17 percentage points ("pp") below the
15 average conversion rate for the preceding seven quarters, and 7 pp lower than *any* conversion rate
16 within the preceding seven quarters. NDCA-ORCL 00505 and 01916. Had Oracle experienced
17 even the conservative 42% conversion rate, it would have generated sufficient income to report
18 EPS of 12 cents.

19     Oracle's actual License revenues for 3Q01 reflected a conversion rate of 41% based on
20 the January 15 pipeline. NDCA-ORCL 00515 and 01916. This again was 13 pp lower than the
21 average conversion rate for the preceding seven quarters and 7 pp lower than *any* conversion rate
22 in the preceding two years. NDCA-ORCL 00522. Had Oracle repeated any of these historic
23 conversion rates in 3Q01, Oracle would have met its quarterly performance forecasts. *See*
24 NDCA-ORCL 00515.

25
26
27
28

1  **INTERROGATORY NO. 8:**

2  Identify each of the 83 customers that you stated were "live" on 11i as of December 14,

3  2000.

4  **RESPONSE TO INTERROGATORY NO. 8:**

5  Defendants incorporate each of their General Objections as though fully set forth herein.

6  Subject to and without waiving these objections, Defendants will, in lieu of a written response,

7  produce responsive documents pursuant to Fed. R. Civ. P. 33(d).

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

9  Defendants incorporate each of their General Objections as though fully set forth herein.

10  Subject to and without waiving these objections, Defendants are in the process of investigating

11  and searching for the information requested and, as the information is obtained, will continue to

12  provide supplemental responses to this Interrogatory.

13  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

14  Defendants incorporate each of their General Objections as though fully set forth herein.

15  Subject to and without waiving these objections, Oracle states that it understood the following 85

16  customers to have been live on Suite 11i as of December 2000:

17  Advanced Telecom Group
Agilera
18  American Bureau of Shipping
American Linen Supply
19  Applied Digital Solutions
ATA
20  AT&T
Atrion
21  At Stake
Bank First
22  Barclays UK
Belgacom
23  Boeing
Broad Band
24  Cap Gemini
Carling Technologies
25  CDMV (Quebec)
Center 7
26  Chevron (RMX)
City3K
27  Corrugated Services
CyberSource
28  Doral

16

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

DEFENDANTS' THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF
INTERROGATORIES; CASE NO. C-01-0988-MJJ

| | |
|---|---|
| 1 | EchoStar |
| | Edge Consultant Pte Ltd |
| 2 | eGarden.com |
| | Egreetings Network |
| 3 | Ensemble Communications |
| | Entegra |
| 4 | Expedient |
| | Fidelity Employer Services Corp. |
| 5 | Franke |
| | GiantLoop Network |
| 6 | Guangzhou Zhujiang Brewery Group |
| | Hallmark |
| 7 | Honeywell |
| | Hostcentric |
| 8 | Hutchinson Telecom (UK) |
| | Industry Suppliers |
| 9 | Ingersoll Rand |
| | Inventec |
| 10 | Legerity |
| | Loudcloud |
| 11 | Ludwig Beck |
| | Lufthansa Airplus |
| 12 | Maple Networks |
| | Maritz Corporation |
| 13 | MetalMaker |
| | MobShop.com |
| 14 | Mutual Materials |
| | Netpliance |
| 15 | Network Access Solutions |
| | New Zealand Dairy Board |
| 16 | Odwalla |
| | PacWest |
| 17 | Papa Johns |
| | Peace Computers |
| 18 | Pella Windows |
| | Portal |
| 19 | Questlink |
| | RAF (UK) |
| 20 | Red Herring |
| | Reed Personal |
| 21 | Resolution/Reso Direct |
| | Retek |
| 22 | Sageo |
| | Satyam Infoway |
| 23 | Service Electronics |
| | Silterra |
| 24 | Spancrete |
| | TeleDenmark |
| 25 | TeliaNet |
| | Tririga |
| 26 | Unilever Platform-1 |
| | VA Linux |
| 27 | Value Vision |
| | Vertex |
| 28 | Vingage (iFramevideo.com) |

17

1  Virtual Ink
   Vodafone (UK)
2  Waitemata Health
   Westpac Banking Corp.
3  Women.com
   YOU (Telpluss)
4  ZapMedia

5

6  **INTERROGATORY NO. 9:**

7      Identify each of the 165 customers which George Roberts, Oracle Executive Vice

8  President of North American Sales, stated during the February 13, 2001 Robertson Stephens

9  Technology Conference in San Francisco were "live" on 11i as of February 13, 2001.

10  **RESPONSE TO INTERROGATORY NO. 9:**

11      Defendants incorporate each of their General Objections as though fully set forth herein.

12  Defendants further object to Interrogatory Number 9 as overbroad and unlikely to lead to the

13  discovery of admissible evidence.  Defendants further object to this Interrogatory as unduly

14  burdensome to respond in the time allotted, but are willing to meet and confer.

15  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

16      Defendants incorporate each of their General Objections as though fully set forth herein.

17  Subject to and without waiving these objections, Defendants are in the process of investigating

18  and searching for the information requested and, as the information is obtained, will continue to

19  provide supplemental responses to this Interrogatory.

20  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

21      Defendants incorporate each of their General Objections as though fully set forth herein.

22  Subject to and without waiving these objections, Oracle understood that the following 181

23  customers were live on 11i as of February 21, 2001, just one week after the conference at which

24  George Roberts stated 165 customers were live on 11i:

25  ABIT Computer Corp.
   Aceva
26  ACT Manufacturing
   Advanced Telecom Group
27  Aero Fulfillment Services
   Agilera
28  Agility Communications

18

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1 | Airfreight Limited
Airprime
2 | Airslide Ltd
Amdahl Ireland
3 | American Bureau of Shipping
American Linen Supply
4 | American Power Corp.
Applied Digital Solutions
5 | ATA
AT&T
6 | Atrion
At Stake
7 | Auckland Healthcare Services
AXA
8 | Bank First
Barclays UK
9 | Beckman Coulter
Beijing Zaccess Systems
10 | Belgacom
BellSouth Technology Services
11 | Biogen
Blue Circle UK
12 | Boeing
Broad Band
13 | BT Syntegra
Business Telecom
14 | Canterbury Uni.
Cap Gemini
15 | Carling Technologies
CDMV (Quebec)
16 | Celulares Telefonica
Center 7
17 | Centerpoint Broadband
Chevron (RMX)
18 | Chipotle
City3K
19 | Color Line
Compaq
20 | Coop CWS
Corrugated Services
21 | Covisint
Creative Labs
22 | Creative Technology
Curl Corporation
23 | CyberSource
Digital Lighthouse
24 | Doral
Dutch Office Suppliers
25 | Eastgate Technologies
Eaton
26 | EchoPass
EchoStar
27 | Edge Consultant Pte Ltd
eGarden.com
28 | Egreetings Network

19

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

| 1 | EICN |
| | Empirix |
| 2 | Ensemble Communications |
| | Entegra |
| 3 | Entel Bolivia |
| | EvoSource |
| 4 | Expedient |
| | F5 |
| 5 | Fidelity Employer Services Corp. |
| | Firepond Europe |
| 6 | Franke |
| | F&W Publications |
| 7 | GCHQ |
| | GE Corporate |
| 8 | GE-India Technology Centre |
| | Getty Images |
| 9 | GiantLoop Network |
| | Guangzhou Zhujiang Brewery Group |
| 10 | Hallmark |
| | Honeywell |
| 11 | Hostcentric |
| | Hutchinson Telecom (UK) |
| 12 | Imation |
| | Inchon International Airport |
| 13 | Industry Suppliers |
| | Ingersoll Rand |
| 14 | Innogy |
| | Intelitouch.com |
| 15 | Inventec |
| | I-stt.com Pte Ltd |
| 16 | Jackson Laboratory |
| | JDS Uniphase |
| 17 | Kelly Services |
| | KEMA |
| 18 | Kleinfelder |
| | Legerity |
| 19 | LG Nikko |
| | Liberty Mutual |
| 20 | Litton Tricare Management |
| | Livestock Improvement |
| 21 | Lloyds |
| | Loomis and Fargo |
| 22 | Loudcloud |
| | Ludwig Beck |
| 23 | Lufthansa Airplus |
| | Maersk Sealand |
| 24 | Maple Networks |
| | Marconi Fibreway |
| 25 | Maritz Corporation |
| | Mastec |
| 26 | Master Protection |
| | Matsushita Technology Pte Ltd |
| 27 | MetalMaker |
| | Millipore |
| 28 | MobShop.com |

20

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

DEFENDANTS' THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF
INTERROGATORIES; CASE NO. C-01-0988-MJJ

| | |
|---|---|
| 1 | MRF Limited |
| | Mutual Materials |
| 2 | MyFacilities.com |
| | Myfamily.comn |
| 3 | Netpliance |
| | Network Access Solutions |
| 4 | New Zealand Dairy Board |
| | North American Mfg. Co. |
| 5 | Odwalla |
| | Open Interactive |
| 6 | OptiGlobe do Brasil |
| | PacWest |
| 7 | Papa Johns |
| | Parachute.net |
| 8 | Peace Computers |
| | Pella Windows |
| 9 | PeoplePC |
| | Penske Logistics |
| 10 | Pioneer Standard Electronics |
| | Poore Brothers |
| 11 | Portal |
| | Power Med |
| 12 | Qlogic |
| | Questlink |
| 13 | RAF (UK) |
| | RATP |
| 14 | Red Herring |
| | Reed Executive |
| 15 | Resolution/Reso Direct |
| | Retek |
| 16 | Rexall Showcase |
| | Sageo |
| 17 | Satyam Infoway |
| | Select Medical |
| 18 | Service Electronics |
| | Silterra |
| 19 | Space4Rent.com |
| | Spancrete |
| 20 | Suntory Water Group |
| | SynQor |
| 21 | Talk2 |
| | TeliaNet |
| 22 | TMP Worldwide Europe |
| | Toshiba Medical Systems |
| 23 | Tririga |
| | Tumbleweed |
| 24 | Unilever Platform-1 |
| | United Steel Workers |
| 25 | US Dept. of Defense |
| | VA Linux |
| 26 | Value Vision |
| | Vertex |
| 27 | Vingage (iFramevideo.com) |
| | Virtual Ink |
| 28 | Vodafone (UK) |

21

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

1 | Waitemata Health
Well Logic
2 | Western National
Westpac Banking Corp.
3 | Wincor-Nixdorf
Women.com
4 | Worldsource 360
Xerox Omni Fax
5 | YOU (Telpluss)
ZapMedia
6

7

**INTERROGATORY NO. 10:**

8

9        Identify each customer you indicated during Oracle's March 1, 2001 pre-announcement

conference call "decided to delay their IT spending."

10

**RESPONSE TO INTERROGATORY NO. 10:**

11

12        Defendants incorporate each of their General Objections as though fully set forth herein.

Defendants further object to Interrogatory Number 10 as overbroad and unlikely to lead to the

13

discovery of admissible evidence. Defendants further object to this Interrogatory as unduly

14

burdensome to respond in the time allotted, but are willing to meet and confer.

15

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

16

17        Defendants incorporate each of their General Objections as though fully set forth herein.

Subject to and without waiving these objections, Defendants are in the process of investigating

18

and searching for the information requested and, as the information is obtained, will continue to

19

provide supplemental responses to this Interrogatory.

20

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

21

22        Defendants incorporate each of their General Objections as though fully set forth herein.

Subject to and without waiving these objections, Defendants state that they have made a good

23

faith effort to obtain the information requested and, to date, have been unable to do so. However,

24

Defendants' investigation continues and, if Defendants obtain such information, they will provide

25

supplemental responses to this Interrogatory.

26

27

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1 | **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

2 | Defendants incorporate each of their General Objections as though fully set forth herein.

3 | Defendants further object on the ground that transcript of the March 1, 2001, pre-announcement

4 | conference call does not contain the quoted language "decided to delay their IT spending."

5 | Subject to and without waiving these objections, notwithstanding their continuing investigation,

6 | Defendants will interpret Interrogatory No. 10 as asking Defendants to identify each customer

7 | that Defendants indicated during Oracle's March 1, 2001, pre-announcement conference call that

8 | was "pushing out IT expenditures in  light of the uncertain U.S. economy." That statement was

9 | based upon the information that Oracle employees such as Nic Classick and George Roberts

10 | provided in the final days of 3Q01 and in the days following the close of the quarter. *See* NDCA-

11 | ORCL 03458-3459, 03462, 03454-3456. That information included, among other things, the e-

12 | mail correspondence that is quoted in Defendants' Supplemental Response to Interrogatory

13 | Number 1 and that is the subject of Interrogatories Number 12 and Number 13. As a result, the

14 | customers that "decided to delay their IT spending" included many, if not all, of the same

15 | customers whose deals are responsive to Interrogatories Number 12 and Number 13.

16 |

17 | **INTERROGATORY NO. 11:**

18 | Identify each of the 47 "reps" referenced in the Nick Classik e-mail to George Roberts

19 | cited in the Delaware Chancery Court Opinion in *In re Oracle Deriv. Litig.*, Consolidated C.A.

20 | No. 18751, 2004 Del. Ch. LEXIS 177 at *55-56 (Del. Ch. Nov. 24, 2004).

21 | **RESPONSE TO INTERROGATORY NO. 11:**

22 | Defendants incorporate each of their General Objections as though fully set forth herein.

23 | Defendants further object to Interrogatory Number 11 as overbroad and unlikely to lead to the

24 | discovery of admissible evidence. Defendants further object to this Interrogatory as unduly

25 | burdensome to respond in the time allotted, but are willing to meet and confer.

26 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

27 | Defendants incorporate each of their General Objections as though fully set forth herein.

28 | Subject to and without waiving these objections, Defendants are in the process of investigating

1    and searching for the information requested and, as the information is obtained, will continue to

2    provide supplemental responses to this Interrogatory.

3    **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

4          Defendants incorporate each of their General Objections as though fully set forth herein.

5    Subject to and without waiving these objections, in the last few weeks of 3Q01, Classick was

6    informed that the following General Business West sales representatives had deals which were

7    being pushed back to 4Q01:

8

Brett Austin
9    Jason Bates
Michelle Beasley
10   Jeff Bennett
Kimberley Buchanan
11   Paul Cairns
Jason Cary
12   David Cohune
Scott Curry
13   Stephanie Curry
Alfred DelFavero
14   Layne Devereaux
Amy Dimond
15   John Dosch
D'Arcy Doyle
16   Jeannie Eidt
Mark Fazio
17   Denny Fish, Jr.
Deborah Floyd
18   David Fox
Kevin Francis
19   Robert Frati
Mick Gallagher
20   Brian Goldstein
Michael Goudie
21   Rebecca Green
Douglas Grigg
22   Michael Henehan
James Hoffman
23   Simon Holland
Daniel Hortter
24   Deke Johnson
Joseph Kaliszewski
25   Frederick Klein
Danna Leahy
26   Corydon Lermo
Michael LeRose
27   Paul Lobascio
Patrice Logue
28   Jason Lorber

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

1   Suzanne Lynch
    Lynette Mathews
2   Christopher Matthews
    Gregory McAllister
3   Keith McCord
    Charles McGinn
4   Lewis McLin
    Shelby McPherson
5   Harold Minkin
    Joe Murphy
6   Michael Nicholls
    Michael O'Toole
7   Mark Palodichuk
    Dean Panzica
8   Scott Parsons
    John Pola
9   Teri Rossetto (now Teri Shaughnessy)
    Siobhan Ryan
10  Steve Shillingford
    Megan Tuck
11  Mark VanBuhler
    John Vanderzanden
12  Andy Vick
    Lisa Welke
13  Robert Wilcox
    Marshall Williamson
14
    *See* NDCA-ORCL 051016 – 051030; NDCA-ORCL 051034 – 051044.
15

16  **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

17       Defendants incorporate each of their General Objections as though fully set forth herein.

18  Subject to and without waiving these objections, Defendants provide the following contact

19  information with respect to the sales representatives listed in the Second Supplemental Response

20  to Interrogatory Number 11.

21

| **Name** | **Last Known Address** |
| --- | --- |
| Brett Austin | 1842 Peninsula Verde Drive Rancho Palos Verdes, CA 90275 |
| Jason Bates | 30 Hyannis Laguna Niguel, CA 92677 |
| Michelle Beasley | 9 Bay Forest Place Oakland, CA 94611 |
| Jeff Bennett | 308 108th Avenue NE, # D-213 Bellevue, WA 98004 |

28

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

| | |
|---|---|
| Paul Cairns | 1758 Lucca Place<br>San Jose, CA 95138 |
| Jason Cary | 924 Olive Street<br>Santa Barbara, CA 93101 |
| David Cohune | 363 Cordell Drive<br>Danville, CA 94526 |
| Scott Curry | 1920 Birch Avenue<br>San Carlos, CA 94070 |
| Stephanie Curry | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Alfred DelFavero | 745 South Gaylord Street<br>Denver, CO 80209 |
| Layne Devereaux | 88 Edgecombe Drive<br>Salt Lake City, UT 84103 |
| Amy Dimond | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| John Dosch | 1224 Loma Drive<br>Hermosa Beach, CA 90254 |
| D'Arcy Doyle | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Jeannie Eidt | 28141 Las Brisas del Mar<br>San Juan Capistrano, CA 92675 |
| Mark Fazio | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Denny Fish, Jr. | 455 Vallejo Street # 307<br>San Francisco, CA 94133 |
| Deborah Floyd | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| David Fox | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Kevin Francis | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |

26

| | |
|---|---|
| Robert Frati | 2834 Pierce Street San Francisco, CA 94123 |
| Mick Gallagher | 5 Flores Foothill Ranch, CA 92610 |
| Brian Goldstein | 38A Heather Avenue San Francisco, CA 94118 |
| Michael Goudie | 24272 Whitney Court Laguna Niguel, CA 92677 |
| Rebecca Green | 3661 Clay Street San Francisco, CA 94118 |
| Douglas Grigg | c/o Oracle Corporation 500 Oracle Parkway Mailstop 5OP7 Redwood Shores, CA 94065 |
| Michael Henehan | 8730 East Heatherbrae Drive Scottsdale, AZ 85251 |
| James Hoffman | 5805 Ranchview Road Oceanside, CA 92057 |
| Simon Holland | c/o Erik Morlang 1660 S. Albion St., Suite 918 Denver, CO 80222 |
| Daniel Hortter | 5 Tanglewood Coto De Caza, CA 92679 |
| Deke Johnson | 3338 Lower Lock Avenue Belmont, CA 94002 |
| Joseph Kaliszewski | c/o Oracle Corporation 500 Oracle Parkway Mailstop 5OP7 Redwood Shores, CA 94065 |
| Frederick Klein | c/o Oracle Corporation 500 Oracle Parkway Mailstop 5OP7 Redwood Shores, CA 94065 |
| Danna Leahy | c/o Oracle Corporation 500 Oracle Parkway Mailstop 5OP7 Redwood Shores, CA 94065 |
| Corydon Lermo | 233 Aragon Blvd. San Mateo, CA 94402 |
| Michael LeRose | c/o Oracle Corporation 500 Oracle Parkway Mailstop 5OP7 Redwood Shores, CA 94065 |
| Paul Lobascio | 3515 Lost Hills Court Colorado Springs, CO 80918 |

27

| | |
|---|---|
| Patrice Logue | 125 West Gardenia Drive<br>Phoenix, AZ 85021 |
| Jason Lorber | 338 Whitecap Lane<br>Newport Coast, CA 92657 |
| Suzanne Lynch | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Lynette Mathews | 2645 170th Avenue SE<br>Bellevue, WA 98008 |
| Christopher Matthews | 4612 Jacques St.<br>Torrance, CA 90503 |
| Gregory McAllister | 3126 Turk Blvd<br>San Francisco, CA 94118 |
| Keith McCord | 20112 McKinley Lane<br>Huntington Beach, CA 92646 |
| Charles McGinn | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Lewis McLin | 517 Mississippi St.<br>San Francisco, CA 94107 |
| Shelby McPherson | 2411 98th Ave. N.E.<br>Clyde Hill, WA 98004 |
| Harold Minkin | 2206 Bettina Avenue<br>Belmont, CA 94002 |
| Joe Murphy | 29 Butternut Road<br>Sutton, MA 01590 |
| Michael Nicholls | 1358 W. Briarwood Avenue<br>Littleton, CO 80120 |
| Timothy Michael O'Toole | 91 Brunswick Road<br>Lake Oswego, OR 97034 |
| Mark Palodichuk | 2827 NE 32nd Ave.<br>Portland, OR 97212 |
| Dean Panzica | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Scott Parsons | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| John Pola | 25 Clifford Terrace<br>San Francisco, CA 94117 |
| Teri Rossetto | 1770 Pacific Avenue, #302 |

| (now Teri Shaughnessy) | San Francisco, CA 94109 |
|---|---|
| Siobahn Ryan | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Steve Shillingford | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Megan Tuck | 515 Chelmsford Road<br>Hillsborough, CA 94010 |
| Mark VanBuhler | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| John Vanderzanden | c/o Oracle Corporation<br>500 Oracle Parkway<br>Mailstop 5OP7<br>Redwood Shores, CA 94065 |
| Andy Vick | 1135 Hampton Court<br>Encinitas, CA 92024 |
| Lisa Welke | 19 Sarazen Lane<br>Coto De Caza, CA 92679 |
| Robert Wilcox | 11255 Lake Forest Drive<br>Chesterland, OH 44026 |
| Marshall Williamson | 740 West Chula Vista Rd.<br>Tucson, AZ 85704 |

**INTERROGATORY NO. 12:**

Identify each of the 78 "field deals" which moved out of the quarter as referenced in the Nick Classik e-mail cited in the opinion of the Delaware Chancery Court in *In re Oracle Deriv. Litig.*, Consolidated C.A. No. 18751, 2004 Del. Ch. LEXIS 177 at *55 (Del. Ch. Nov. 24, 2004).

**RESPONSE TO INTERROGATORY NO. 12:**

Defendants incorporate each of their General Objections as though fully set forth herein. Defendants further object to Interrogatory Number 12 as overbroad and unlikely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory as unduly burdensome to respond in the time allotted, but are willing to meet and confer.

DEFENDANTS' THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF
INTERROGATORIES; CASE NO. C-01-0988-MJJ

1   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

2       Defendants incorporate each of their General Objections as though fully set forth herein.

3   Subject to and without waiving these objections, Defendants are in the process of investigating

4   and searching for the information requested and, as the information is obtained, will continue to

5   provide supplemental responses to this Interrogatory.

6   **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

7       Defendants incorporate each of their General Objections as though fully set forth herein.

8   Subject to and without waiving these objections, in the last few weeks of 3Q01, Classick was

9   informed that deals with the following General Business West division customers were being

10  pushed back to 4Q01:

11

12  24/7 Media Inc.
    AboveNet
13  Accumedia.com
14  Activision
    Advanced Fiber
15  Affinity
    Ameriscape
16  arcade planet
17  Ask Jeeves
    Astracon
18  At Once
    Aventail
19  Barclays
    Barnes Construction
20  Beeline Networks
21  BioQ
    BiVision
22  Buzztime
    Captura Software
23  Caritasoft
24  Caspian Networks
    Cellular Technical Services
25  Centerpoint
    CenterSpan Communications
26  CG Time
    Contivo
27  corixa
28  Cybercilium

                        30

| | |
|---|---|
| 1 | Cyclone Commerce |
| | DealPlanner.com |
| 2 | Deckers Outdoor Corporation |
| | Denalii |
| 3 | Digital Bees |
| | Digital Lava |
| 4 | Edmunds.com |
| | EJigsaw |
| 5 | Empowertel Networks |
| 6 | Encore Software |
| | esurg.com |
| 7 | Farwest Steel |
| | First Trust |
| 8 | Fisher Development |
| | Flightsafety |
| 9 | FusionOne |
| | Gator |
| 10 | Gladstone Institute |
| 11 | Global Motor Sports Group |
| | Global Music One |
| 12 | Globexplorer |
| | Good Technology |
| 13 | Great Western Chemical Co. |
| | hellonetwork.com |
| 14 | Hiverworld |
| 15 | HNC Software, Inc. |
| | HS Resources |
| 16 | Hypersoft |
| | iCargo |
| 17 | ICG Communications, Inc. |
| 18 | ICN Pharmaceuticals, Inc. |
| | iKnowMed |
| 19 | IMPAC Funding |
| | Informano |
| 20 | Innuity |
| 21 | InterTrade |
| | Intesys Technologies |
| 22 | IPWireless |
| | J2 Global Communications |
| 23 | Kanisa |
| | Khimetrics |
| 24 | Legato Systems |
| 25 | Lexicon Marketing |
| | LFR Technologies |
| 26 | Makeanoffer |
| | MCDATA Corp. |
| 27 | MediaConnex |
| 28 | Mesa Airlines |

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

31

| | |
|---|---|
| 1 | Mid Stream |
| 2 | Mifund |
| | Missilelock |
| 3 | Modele |
| | Mypotential.com |
| 4 | Myriad Genetics |
| | Myrio.com |
| 5 | Nacio Systems |
| | Naomi Walker |
| 6 | Neoplanet |
| 7 | netdocuments |
| | New Global Telecom |
| 8 | Nextengine.com |
| | NTECHRA |
| 9 | Oncology Therapeutic Networks |
| | ONI System |
| 10 | On-Line Asset Exchange |
| 11 | Optical Micro Machines |
| | Orcom Solutions, Inc. |
| 12 | Pacific Broadband |
| | Pixar Animation Studios |
| 13 | Pointcross |
| | Popcast |
| 14 | Portblue |
| 15 | Power Quest |
| | Primarion |
| 16 | Pure Markets |
| | Pyxis Corporation |
| 17 | QLogic |
| | Qsent |
| 18 | Quark, Inc. |
| 19 | quios |
| | Radicalmail.com |
| 20 | RapidStream, Inc. |
| | Requisite Technology |
| 21 | Rhythms NetConnections, Inc. |
| 22 | Rockford Corporation |
| | Rockford Fosgate, Inc. |
| 23 | RuleSpace Inc. |
| | ScoutFire |
| 24 | SealedMedia |
| | Securant Technologies |
| 25 | Senvid |
| 26 | SkyMall |
| | Smartpoint |
| 27 | Sourcemine |
| | Stonepath Group |
| 28 | Sumitomo Sitix |

CONFIDENTIAL – SUBJECT
TO PROTECTIVE ORDER

Survival Insurance Brokerage
Symyx Technologies Inc.
Syntellect
TASQ Technologies
Technicolor Entertainment Serv.
Teletech
Televigation
Tightlink
Tornado
Trust Benefits
Ultimate Electronics
Ultraband
UltraDNs
US Wireless
Vista
VistaCare
Whizbang Labs
Wild Blue
Wind River Systems, Inc.
Woodgrain Millwork, Inc.
Wooshi
World Minerals
Worldwide Packets
Wow TV
Xisource
Xuma
Xylo
Yellowonline.com
Zambeel
ZDTV
Zeevo
Zenodata

*See* NDCA-ORCL 051016 – 051030; NDCA-ORCL 051034 – 051044.

**INTERROGATORY NO. 13:**

Identify each of the 70 transactions which "slipped" in the "West Area" referenced in the February 26, 2001 e-mail from George Roberts to Ellison, Henley and Jennifer Minton cited in the opinion of the Delaware Chancery Court in *In re Oracle Deriv. Litig.,* Consolidated C.A. No. 18751, 2004 Del. Ch. LEXIS 177 at *54 (Del. Ch. Nov. 24, 2004).

**RESPONSE TO INTERROGATORY NO. 13:**

Defendants incorporate each of their General Objections as though fully set forth herein. Defendants further object to Interrogatory Number 13 as overbroad and unlikely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory as unduly burdensome to respond in the time allotted, but are willing to meet and confer.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Defendants incorporate each of their General Objections as though fully set forth herein. Subject to and without waiving these objections, Defendants are in the process of investigating and searching for the information requested and, as the information is obtained, will continue to provide supplemental responses to this Interrogatory.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Defendants incorporate each of their General Objections as though fully set forth herein. Subject to and without waiving these objections, Defendants incorporate the Second Supplemental Response to Interrogatory Number 12 as if it were set forth herein.

**INTERROGATORY NO. 14:**

Identify each entity that conveyed to Oracle in Oracle's third fiscal quarter 2001 that it could not or would not purchase Oracle software licenses or services in Oracle's third fiscal quarter 2001 due to the United States economy, preservation of capital or information technology spending.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendants incorporate each of their General Objections as though fully set forth herein. Defendants further object to Interrogatory Number 14 as overbroad and unlikely to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory as unduly burdensome to respond in the time allotted, but are willing to meet and confer.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Defendants incorporate each of their General Objections as though fully set forth herein. Defendants further object on the grounds that Interrogatory Number 14 requests information that

1    is beyond the knowledge of the Speakers and their direct reports. Plaintiffs' inquiries regarding

2    information known to other individuals but not known to the Individual Defendants is not an

3    appropriate line of inquiry. To the extent that Interrogatory Number 14 seeks information known

4    to the Speakers, Defendants object on the grounds that Interrogatory Number 14 is repetitive and

5    duplicative, in whole or in part, of Interrogatories Number 4 and Number 6.

6    **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

7           Defendants incorporate each of their General Objections as though fully set forth herein.

8    Subject to and without waiving these objections, notwithstanding the continuing investigation

9    being undertaken by Defendants, Defendants state that the entities that conveyed to Oracle during

10   Oracle's 3Q01 that they would not or could not purchase Oracle software licenses or services in

11   Oracle's 3Q01 due to the United States economy, preservation of capital or information

12   technology spending included many, if not all, of the customers whose "big deals" did not sign,

13   which is the subject of Interrogatory Number 4. Defendants therefore incorporate their Second

14   and Third Supplemental Responses to Interrogatory Number 4 as if it were set forth herein.

15

16   Dated: June 21, 2005                              MAYER, BROWN, ROWE & MAW LLP

17

18                                                     By: _Vincent P. Schmelz III_
                                                           Vincent P. Schmeltz III

19                                                     Attorneys for Defendants Oracle Corporation,
                                                       Lawrence J. Ellison, Jeffrey O. Henley and
20                                                     Edward J. Sanderson

21

22

23

24

25

26

27

28

                                           35

1                               **VERIFICATION**

2        I have read the foregoing document entitled: **DEFENDANTS' THIRD**

3   **SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF**

4   **INTERROGATORIES** and know its contents. I am informed and believe that the matters

5

6   stated therein, to the extent they are directed to Oracle Corporation, are true and on that ground

7   certify or declare under penalty of perjury under the laws of the United States of America that

8   the same are true and correct.

9

10        Executed on June _16_ , 2005 at _500 ORACLE PARKWAY, REDWOOD_

11                                                  _SHORES, CA_

12

13                              By: _Thomas S. Olinger_
                                        Oracle Corporation

14                                         By Thomas Olinger
                                        Vice President, Corporate Controller

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>VERIFICATION</u>

2

I have read the foregoing document entitled: **DEFENDANTS' THIRD**

3

**SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF**

4

**INTERROGATORIES** and know its contents.  I am informed and believe that the matters

5

stated therein, to the extent they are directed to me as an individual, are true and on that ground

6

certify or declare under penalty of perjury under the laws of the United States of America that

7

the same are true and correct.

8

9

10

Executed on ___June, 9___, 2005 at ___woodside, California___.

11

12

13

Lawrence J. Ellison

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION**

2    I have read the foregoing document entitled: **DEFENDANTS' THIRD**

3  **SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF**

4  **INTERROGATORIES** and know its contents.  I am informed and believe that the matters

5  stated therein, to the extent they are directed to me as an individual, are true and on that ground

6  certify or declare under penalty of perjury under the laws of the United States of America that

7
   the same are true and correct.
8

9

10   Executed on ___*May 17*___, 2005 at *Rancho Santa Fe, CA* .

11

12                                      By: ___*Edward J. Sanderson*___

13                                            Edward J. Sanderson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## VERIFICATION

2

I have read the foregoing document entitled: **DEFENDANTS' THIRD**

3

**SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF**

4

5

**INTERROGATORIES** and know its contents. I am informed and believe that the matters

6

stated therein, to the extent they are directed to me as an individual, are true and on that ground

7

certify or declare under penalty of perjury under the laws of the United States of America that

8

the same are true and correct.

9

10

Executed on ___M A Y___ 18 ___, 2005 at _PALM DESERT, CALIFORNIA_.

11

12

13

Jeffrey O. Henley

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

I, Misty Puleo, declare:

3     I am a resident of the State of California and over the age of eighteen years, and not a party
to the within action; my business address is:  Two Palo Alto Square, Suite 300, 3000 El Camino
4     Real, Palo Alto, California 94306.

5          On June 21, 2005, I served the foregoing document(s) described as:

6              **DEFENDANTS' THIRD SUPPLEMENTAL RESPONSES**
**TO FIRST SET OF INTERROGATORIES**

7

8     ☒     By transmitting via facsimile the document(s) listed above (exclusive of exhibits) to the
fax number(s) set forth below on this date.

9

10    ☒     By placing the document(s) listed above in a sealed envelope with postage prepaid, via
First Class Mail, in the United States mail at Palo Alto, California addressed as set forth
11           below.

12
William S. Lerach                          Sanford Svetcov
13    Mark Solomon                               Shawn A. Williams
Douglas Britton                            Willow E. Radcliffe
14    **LERACH, COUGHLIN, STOIA,**                 **LERACH, COUGHLIN, STOIA,**
**GELLER, RUDMAN & ROBBINS LLP**             **GELLER, RUDMAN & ROBBINS LLP**
15    401 B Street, Suite 1700                   100 Pine Street, Suite 2600
San Diego, CA 92101                        San Francisco, CA 94111
16    Fax: (619) 231-7423                        Fax: (415) 288-4534

17         Following ordinary business practices, the envelope was sealed and placed for collection
and mailing on this date, and would, in the ordinary course of business, be deposited with the
18    United States Postal Service on this date.

19         I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.  I declare under penalty of perjury under the laws of the United
20    States of America that the above is true and correct.

21
Executed on June 21, 2005 at Palo Alto, California.
22

23

24                                          Misty Puleo

25

26

27

28