LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: sean.berkowitz@lw.com

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988-SI (JCS) (Consolidated)<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ALAN G. GOEDDE**<br><br>**Honorable Judge Susan Illston** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Dr. Goedde Is Not Qualified To Render An Opinion Regarding A "Major Macroeconomic Change" ............................................................................ 2

    B. Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is Unreliable ................................................................................................. 3

        1. Dr. Goedde Cannot Define "Major Macroeconomic Change" ................................................................................................................ 3

        2. Dr. Goedde's Methodology For Determining That A "Major Macroeconomic Change" Occurred Is Unreliable ........................ 5

        3. Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is Irrelevant Because He Fails To Connect It To Oracle's Business ................................................................. 7

    C. Dr. Goedde's Opinions Relating to Oracle's Forecasting Process Are Unreliable ........................................................................................................ 8

        1. Dr. Goedde's Opinion That Ms. Minton Calculated Her Upside Adjustments Based On Application Of The Prior Year's Conversion Ratio Is Unreliable ........................................................ 9

        2. Dr. Goedde's Opinion That Ellison Issued A Directive Causing More Risk To Enter Oracle's Forecasts In 2Q01 Is Unreliable .................................................................................................. 11

    D. The New Goedde Declarations Are Untimely And Concede that Dr. Goedde's Prior Work Is Unreliable And Inaccurate And Should Be Excluded ........................................................................................................ 13

III. CONCLUSION ............................................................................................................. 15

LATHAM&WATKINS  SV\643663.6
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Smith & Nephew, P.L.C.*
   98 F. Supp. 2d 1310 (N.D. Okla. 2000) .................................................................................. 2

*Amorgianos v. National Railroad Passenger Corp.,*
   303 F.3d 256 (2d Cir. 2002) ........................................................................................ 9, 10, 13

*Cavallo v. Star Entertainment,*
   892 F. Supp. 756 (E.D. Va. 1995), *aff'd in part, rev'd in part*, 100 F.3d 1150
   (4th Cir. 1996), *cert. denied*, 522 U.S. 1044 (1998) ............................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.,*
   43 F.3d 1311 (9th Cir. 1995) ................................................................................................... 5

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ........................................................................................................ passim

*Galentine v. Holland American Line—Westours, Inc.,*
   333 F. Supp. 2d 991 (W.D. Wash. 2004) .............................................................................. 13

*General Electric Corp. v. Joiner,*
   522 U.S. 136 (1997) ............................................................................................................... 11

*In re Welding Fume Productions Liability Litigation,*
   No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164 (N.D. Ohio Aug. 8, 2005) .................. 10

*Keener v. United States,*
   181 F.R.D. 639 (D. Mont. 1998) ........................................................................................... 15

*Maiz v. Virani,*
   253 F.3d 641 (11th Cir. 2001) ................................................................................................. 2

*Major v. Treen,*
   574 F. Supp. 325 (E.D. La. 1983) ......................................................................................... 10

*Muhktar v. California State University,*
   299 F.3d 1053 (9th Cir. 2002) ............................................................................................ 3, 4

*Point Productions A.G. v. Sony Music Entm't, Inc.,*
   No. 93 Civ. 4001(NRB), 2004 U.S. Dist. LEXIS 2676 (S.D.N.Y. 2004) ...................... 14, 15

*Talbert v. City of Chicago,*
   236 F.R.D. 415 (N.D. Ill. 2006) ............................................................................................ 14

*Tenbarge v. Ames Taping Tool Systems, Inc.,*
   190 F.3d 862 (8th Cir. 1999) ................................................................................................. 14

*Whatley v. Merit Distributing Servs.,*
   166 F. Supp. 2d 1350 (S.D. Ala. 2001) ................................................................................. 14

*Whiting v. Boston Edison Co.*
   891 F. Supp. 12 (D. Mass. 1995) ....................................................................................... 2, 3

LATHAM&WATKINS  SV\643663.6
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

**Statutes**

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................................................ 6

Fed. R. Civ. P. 26. .................................................................................................................... 1, 15

Fed. R. Evid. 702 ............................................................................................................................ 1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

iii

DEFENDANTS' [CORRECTED] REPLY ISO MOTION TO
EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-MJJ (JCS)

## I. INTRODUCTION

Dr. Goedde's testimony and reports should be excluded because Dr. Goedde lacks the appropriate training, experience or education to offer these opinions and because his opinions fail to meet the exacting standards of reliability and relevance under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Dr. Goedde purports to offer an opinion that Oracle faced a "major macroeconomic change" heading into 3Q01, but Dr. Goedde is not a macroeconomist and does not have the expertise necessary to offer that opinion. That lack of expertise is evident in Dr. Goedde's inability to define "major macroeconomic change" and the indicators he relied on in reaching his opinion, which bear no relation to the factors actually considered by macroeconomists. Moreover, Dr. Goedde fails to offer a reliable, scientific basis for connecting his "major macroeconomic change" to some impact on Oracle's business and its ability to forecast quarterly results, rendering his opinion irrelevant as well as unreliable.

Dr. Goedde's opinions relating to Oracle's forecasting process must also be excluded because they rely on his "major macroeconomic change" opinion, which is flawed, and also because they suffer from independent methodological flaws. First, despite undisputed testimony to the contrary, Dr. Goedde opines that Minton derived her Potential forecast by simply multiplying the prior year's conversion ratio by the current pipeline. If this were true, Dr. Goedde could show it with simple math—since it is not, he has constructed several regression analyses purporting to show a connection that simply does not exist. Second, Dr. Goedde opines that more risk was introduced into Oracle's field forecasts beginning in 2Q01. Even if Dr. Goedde were correct about the field forecast (which he is not), he does not even attempt to show that this purported change rendered Minton's historically accurate and conservative Upside adjustments superfluous. Failure to complete this indispensable logical step renders Dr. Goedde's opinion unreliable and inadmissible.

Finally, Dr. Goedde's *seriatim* declarations are untimely on their face and prove that Dr. Goedde's earlier reports do not meet the requirements of Rule 26. Defendants' motion to exclude Dr. Goedde's testimony and reports, including his later declarations, should be granted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

1

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

## II. ARGUMENT

### A. Dr. Goedde Is Not Qualified To Render An Opinion Regarding A "Major Macroeconomic Change"

Plaintiffs contend that Dr. Goedde is qualified to render his opinion regarding a "major macroeconomic change" because of his education and work experience. Opp. at 4-8. Plaintiffs, however, overstate his qualifications by presenting a misleading exposition of Dr. Goedde's supposed expertise. Plaintiffs contend that Dr. Goedde's dissertation provides support for his opinion that Oracle was facing a "major macroeconomic change" heading into 3Q01, Opp. at 5, but Dr. Goedde himself testified that his dissertation was focused on "whether companies grew by extending the breadth of their products or developing new products," a very different topic from his opinion in this case of how macroeconomic factors affect Oracle's quarterly earnings. Declaration of Andrew M. Farthing in Support of Defendants' Reply in Support of *Daubert* Motion to Exclude Expert Reports and Testimony of Alan G. Goedde ("Farthing Reply Decl.", Dkt. 1241) Ex. 1 at 47:17-23. Plaintiffs also tout Dr. Goedde's work experience as a "financial economist at the U.S. Export-Import Bank," Opp. at 6, but Dr. Goedde's deposition testimony makes clear that his job consisted primarily of underwriting loans, which says nothing of his qualifications to render the opinions he has offered in this case. *Id.* at 49:4-51:2.[1]

Plaintiffs also fail to meaningfully distinguish *Whiting v. Boston Edison Co.* and *Alexander v. Smith & Nephew, P.L.C.*, Opp. at 5 n.2, both of which held that general qualifications in a field, like Dr. Goedde's "extensive economic education that graduate programs provide," *id.*, are insufficient to establish admissibility of the purported expert's testimony. *Whiting*, 891 F. Supp. 12, 24 (D. Mass. 1995); *Alexander*, 98 F. Supp. 2d 1310, 1315

---

[1] In their opposition, Plaintiffs quote Dr. Goedde's deposition testimony that he "did a forecast for the Export-Import Bank," Opp. at 6 (citing Farthing Reply Decl. Ex. 1 at 77:5-12) for the proposition that Dr. Goedde has macroeconomic experience. Plaintiffs neglect to mention that Dr. Goedde retracted that statement moments later, and that he instead only relied on the forecasts of others. Farthing Reply Decl. Ex. 1 at 77:23-78:1 ("Q. But you weren't asked to do a macroeconomic forecast, to actually prepare one, in terms of what the future was going to be of the economy? A. No."). *Cf. Maiz v. Virani*, 253 F.3d 641, 655 (11th Cir. 2001) (permitting expert with "Ph.D. in economic from Yale [and] extensive experience as a professional economist, and a substantial background in estimating damages" to opine on plaintiffs' damages). Dr. Goedde's experience selecting investments for a charitable foundation, Opp. at 6-7, is similarly far afield from his opinion here that a "major macroeconomic change" had occurred.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

2

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  (N.D. Okla. 2000).[2]  Plaintiffs argue that the experts in these cases were "excluded because they
2  were being offered for specialized opinions on causation outside their field of specialty," Opp. at
3  5 n.2, as medical doctors (each of whom received extensive medical education in a graduate
4  program). This is precisely the problem here—while Dr. Goedde may have a graduate degree in
5  economics generally, he is not a specialist and lacks training in macroeconomics and cannot
6  opine about a purported "major macroeconomic change." *See* Farthing Decl. (Dkt. 1190) Ex. 1
7  at pp. 4-8. Plaintiffs bear the burden of demonstrating the qualifications of their purported
8  expert, not generally in a broad field, but as to the "specific subject for which his testimony is
9  offered," and they have failed to meet that burden here. *Whiting*, 891 F. Supp. at 24.[3]

   B.   **Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is Unreliable**

        1.   **Dr. Goedde Cannot Define "Major Macroeconomic Change"**

13 Although Plaintiffs contend that Dr. Goedde "uniformly defined" the phrase "major
14 macroeconomic change" at his deposition, even they cannot point to what that definition is —
15 they cite three different portions of his deposition testimony in their unsuccessful attempt to
16 identify such a definition. Opp. at 8-9. Plaintiffs' attempt to stitch together Goedde's deposition
17 testimony about "major macroeconomic change" to produce a coherent definition fails
18 completely. As shown in Defendants' opening brief (Mot. at 3-5, 11-12), Dr. Goedde's
19 purported "definition" continuously morphed under the questioning of counsel.[4] Dr. Goedde

---

[2] Unless otherwise noted, all emphasis is added and citations are omitted.

[3] Plaintiffs attempt to sidestep Dr. Goedde's lack of qualifications to determine whether a "major macroeconomic change" occurred by referring to Dr. Goedde's purported "forecasting experience [that] necessarily encompassed macroeconomic data analysis." Opp at 6. This puts the cart before the horse. Dr. Goedde has opined, independent of Oracle's forecasts, that "Oracle was facing a major macroeconomic change heading into 3Q FY01, resulting in a decline in the market for its products." Farthing Decl. Ex. 1 at 4. Dr. Goedde's supposed forecasting experience does not qualify him to render that opinion.

[4] Given that Plaintiffs concede that "major macroeconomic change" is not a term of art or otherwise defined in the macroeconomic literature, Opp. at 10, it is especially incumbent upon Dr. Goedde to provide a functional definition of that term so that his opinion that such a change occurred can be evaluated and tested. *Daubert*, 509 U.S. at 593. In addition, this "descriptive phrase," as Plaintiffs call it, Opp. at 11, in the guise of expert testimony has great potential to mislead and prejudice the jury, especially in light of Mr. Ellison's lay testimony, which uses "major macroeconomic change" quite differently than does Dr. Goedde. *See* Farthing Reply Decl. Ex. 3 at 384:6-385:7; *Muhktar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

3

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1   first defined "major macroeconomic change" as "[a] change that affects [Oracle's] business."
2   Farthing Reply Decl. Ex. 1 at 79:6-8.  Then Dr. Goedde defined "major macroeconomic change"
3   as one that affected Oracle's customers, not Oracle's business, but again this definition was
4   circular.  *Id.* at 80:12-20.  In an attempt to quantify a "major macroeconomic change," as
5   opposed to a macroeconomic change, Dr. Goedde's testimony became even more convoluted:
6   "Q.  Is there—over what particular time period would there have to be a lower growth rate for
7   there to be a major macroeconomic change, according to your definition?  A.  It would affect—
8   it's not so much the time period.  It's what the extent of the change was."  *Id.* at 81:18-23.  Yet,
9   when asked to define the extent of that change, Dr. Goedde responded that "I would look to see
10  what the conditions are of the change, what—I'd have to look in more detail of the different
11  changes."  *Id.* at 83:1-20.  In other words, Dr. Goedde "knows it when he sees it."

12        The entirely subjective nature of Dr. Goedde's "definition" of a "major macroeconomic
13  change" is unreliable under *Daubert*.  509 U.S. at 593.  For example, Plaintiffs contend in their
14  opposition that "the FOMC's Federal Funds rate reduction twice in one month—which it had not
15  done for ten years—was a major change under any definition," Opp. at 9, but Dr. Goedde fails to
16  explain how those actions by the Federal Reserve in January 2001 should have informed Oracle
17  executives in December 2000 that they were facing a "major macroeconomic change *heading*
18  *into 3Q FY01*," Farthing Decl. Ex. 1 at 4, and Dr. Goedde also fails to explain how the Federal
19  Reserve's actions "affected the purchasers of Oracle's products," Farthing Reply Decl. Ex. 1 at
20  80:19-20.[5]

21        Plaintiffs also contend that Dr. Goedde's use of the phrase "major macroeconomic
22  change" is reliable because it "grow[s] naturally out of his education and professional
23  experience," Opp. at 11, though as shown above, Dr. Goedde's credentials on macroeconomics
24  (as opposed to economics generally) are lacking.  Plaintiffs' argument also fails because they

---

25  ("Maintaining *Daubert's* standards is particularly important considering the aura of authority
26  experts often exude, which can lead juries to give more weight to their testimony.").

[5] In addition, it is telling of Plaintiffs' gamesmanship, *see infra* § II.D, and their attempt to
27  salvage Dr. Goedde's baseless conclusions, that Dr. Goedde now relies on actions taken, and
    data reviewed, by the Federal Reserve, in support of the opinion issued in his opening report that
28  a "major macroeconomic change" occurred.  In fact, there is not a single mention of the Federal
    Reserve or FOMC in that report.  Farthing Decl. Ex. 1 at *passim*.

distort the very quote from the Ninth Circuit's opinion in *Daubert* on which they purportedly rely, which states that the relevant inquiry is whether the expert "propos[es] to testify about matters growing naturally and directly out of research they have conducted independent of the litigation." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Dr. Goedde's opinions do not grow naturally and directly out of research he has conducted independent of this litigation; he is a professional expert and litigation consultant, unlike Professor Hubbard, who has a substantial body of research and peer-reviewed publications on macroeconomics independent of this litigation. *Compare* Farthing Reply Decl. Ex. 1 at 39:19-40:9 *with* Farthing Decl. Ex. 10 at Appendix A.

In sum, Dr. Goedde's "major macroeconomic change" was created solely for use in this litigation. It cannot be defined even by Dr. Goedde, and his conclusions and opinions stemming from it must be excluded as unreliable.

### 2. Dr. Goedde's Methodology For Determining That A "Major Macroeconomic Change" Occurred Is Unreliable

Plaintiffs contend that "[d]efendants cite no authority for the proposition that [the five] factors [relied upon by Dr. Goedde] unreliably measured the macroeconomic environment facing Oracle in 3QFY01." Opp. at 12. However, it is clearly *Plaintiffs'* burden to demonstrate that Dr. Goedde's analysis is reliable. *Daubert*, 509 U.S. at 592 n.10; Mot. at 12-15. Plaintiffs fail to cite any authority for Dr. Goedde's factors; indeed, as Defendants clearly demonstrated in their opening brief, the National Bureau of Economic Research's Business Cycle Dating Committee used *none* of Dr. Goedde's factors in reaching its determinations about the state of the United States economy. Mot. at 13 (citing Farthing Decl. Ex. 11 at 6).[6]

The unreliability of these five factors is underscored by Dr. Goedde's failure to meaningfully and empirically connect them to Oracle's sales. For example, Dr. Goedde opines

---

[6] Plaintiffs argue that Professor Hubbard's consideration of software sector indices operates as a concession that equity indices are appropriate macroeconomic indicators. Opp. at 14 & n.12. Plaintiffs misconstrue Professor Hubbard's analysis, which used software sector indices for analyzing in more detail the state of the software sector, Farthing Decl. Ex. 10 at ¶¶ 53-93, but instead relied on macroeconomic information such as industrial production, employment, and an array of composite indicators for determining the overall macroeconomic outlook. *See* Farthing Decl. Ex. 10 at ¶¶ 53-93 (sector-specific analysis), ¶¶ 94-156 (macroeconomic analysis).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

5

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  that the NASDAQ is an appropriate input for determining that a "major macroeconomic change"
2  had occurred, but he fails to analyze such basic measures as the percentage of Oracle's sales that
3  are made to NASDAQ companies (instead noting only that some of Oracle's competitors also
4  trade on NASDAQ), and ignores the fact that the performance of the NASDAQ has no
5  relationship to Oracle's sales. Farthing Decl. Ex. 12 at ¶¶ 62-65.[7] Plaintiffs attempt to excuse
6  Dr. Goedde's myopic emphasis on the NASDAQ by stating that "[t]he focus of Dr. Goedde's
7  opinions was on the technology sector of the economy that directly affected Oracle's operations,
8  not on broad-based indicators of the general economy." Opp. at 13. Yet Plaintiffs ignore the
9  undisputed fact that Oracle's customers came from all sectors of the general economy—not just
10 high technology—a fact that undercuts Dr. Goedde's focus on the technology sector and renders
11 his methodology unreliable. Farthing Decl. Ex. 10 at ¶¶ 86-93 and Figure 14 (demonstrating that
12 Oracle's top customers included government, industrial and commercial machinery,
13 communications, financial institutions, utilities and many more).[8]

---

[7] Plaintiffs contend that "[w]hen the NASDAQ was rising in significant part because of venture capital funding and dot.com growth, Oracle's revenues from the dot.com sector alone skyrocketed from $4 million in 1Q99 to $172 million in 4Q00. When it collapsed, Oracle's dot.com revenues collapsed with it." Opp. at 14 n.12. Defendants do not dispute that Oracle's dot-com revenues were less favorable in 1Q01 and 2Q01 than they had been in FY 2000, but Oracle sells its products many more sectors than just dot-coms. Oracle's record-breaking company-wide results in 1Q01 and 2Q01, despite dramatic declines in the NASDAQ since March 2000, conclusively rebut the baseless assertion that "the NASDAQ was a reliable gauge of the health of a *significant part* of Oracle's business." *Id.*; Farthing Decl. Ex. 12 at ¶¶ 75-84.

[8] Plaintiffs also contend that Dr. Goedde's interpretation of the macroeconomic factors considered by Professor Hubbard support his opinion that a "major macroeconomic change" occurred. Opp. at 13 & n.11. This argument fails for two reasons. First, it violates Federal Rule of Civil Procedure 26(a)(2)(B), which requires that an expert report contain "a *complete* statement of *all* opinions the witness will express *and the basis and reasons for them*," as Dr. Goedde did not include this analysis in his opening report. Fed. R. Civ. Proc. 26(a)(2)(B). As a result, Defendants' experts could not address Dr. Goedde's analysis in their rebuttal reports. Second, Defendants dispute Dr. Goedde's interpretation of the macroeconomic indicators considered by Professor Hubbard, and reserve their right to demonstrate the fallacies in Dr. Goedde's interpretation should his testimony be admitted. As just one example, Dr. Goedde's interpretation of the Bureau of Economic Analysis data relating to investment in software (apparently Dr. Goedde's other five indicators were more useful than this data) is improper because it measures growth rates period-over-period, whereas Oracle measured growth (and provided the allegedly false guidance to the market) year-over-year. *See* Opp. at 13 n.11 and Goedde Decl. ¶¶ 11-12. Had Dr. Goedde calculated the year-over-year rates, he would have found that the data released on January 31, 2001 showed that investment in software increased 24.6% in 4Q CY00 over 4Q CY99—nearly exactly the 25% license growth guidance provided by Oracle for its 3Q FY01. *See* Goedde Decl. Ex. 7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

6

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

### 3. Dr. Goedde's Opinion Regarding A "Major Macroeconomic Change" Is Irrelevant Because He Fails To Connect It To Oracle's Business

Dr. Goedde's opinion regarding a "major macroeconomic change" should also be excluded because he fails to show it had a meaningful impact on Oracle's business or ability to forecast during Oracle's 3Q01, rendering the opinion irrelevant to the issues in this case. Plaintiffs' response to this argument misses the point. Plaintiffs merely note that, in hindsight, it turned out that the economy was responsible for Oracle's miss—relying on statements made by Defendants on March 1 and 15, 2001—*after* the 3Q01 results were in and *after* Oracle started to understand why its guidance had not been achieved. Opp. at 15-16. Nothing in Defendants' statements, and nothing in Dr. Goedde's analysis, reliably demonstrates how Oracle executives could have known *prior* to the end of the quarter that the economy would adversely affect Oracle's ability to make its forecast.

Plaintiffs rely on the proposition that Oracle's "forecast process … was based on a year-over-year extrapolation," and that by purportedly demonstrating this, Dr. Goedde "established a meaningful link" between his opinions and Oracle's forecasts. Opp. at 15 (citing Farthing Decl. Ex. 1 at 4-8, 10-21; Farthing Decl. Ex. 2 at 74-81). As set forth in detail below, the undisputed facts—as well as the basic math—show that Minton did not generate the Potential forecast by a mechanical year over year extrapolation—it was based on judgment not on formulaic calculation. Thus, this issue cannot create a "link" between Dr. Goedde's opinions and Oracle's forecasts. Mot. at 14-15; *infra* at II.C.1.

Plaintiffs again point to the NASDAQ and Oracle's dot-com revenues as a "prime example and an objective measure establishing that Dr. Goedde's methodologies are reliable." Opp. at 16. Not so. The data contained in the table below are all drawn from Dr. Goedde's initial report, and they clearly indicate that heading into 3Q01, Oracle's total license revenues were growing rapidly and Oracle executives had no reason to believe that Oracle's 3Q01 guidance of 25% license growth would not be achieved:

LATHAM&WATKINS<sup>LLP</sup>  SV\643663.6
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

| Quarter[9] | NASDAQ Close at End of Quarter | Percentage Change in NASDAQ Since March 1, 2000 | Percentage of Oracle Revenues from Dot.coms | Year-Over-Year Growth in Total License Revenues |
|---|---|---|---|---|
| 3Q00 | 4784.08 | -- | 10.63% | 29.38% |
| 4Q00 | 3400.91 | -28.91% | 9.56% | 21.07% |
| 1Q01 | 4206.35 | -12.08% | 6.61% | 33.71% |
| 2Q01 | 2597.93 | -45.70% | 6.01% | 30.08% |

These data show that despite the fact that the NASDAQ had lost nearly half its value between the end of 3Q00 and the end of 2Q01, and despite the fact that the percentage of Oracle's revenues attributable to dot-coms had also dropped by almost half, Oracle achieved robust license revenue growth during that period of time. This pattern of consistent license revenue growth, at the same time the NASDAQ was collapsing, debunks any potential link between the level of the NASDAQ or Oracle's dot-com sales and Oracle's license revenues generally. By no means is the purported "dot.com collapse … an objective measure establishing that Dr. Goedde's methodologies are reliable"—to the contrary, the data clearly indicate that Dr. Goedde's conclusions regarding the purported "major macroeconomic change" are unreliable and irrelevant because they are not connected to Oracle's business, and will therefore not assist the finder of fact.[10] *Daubert*, 509 U.S. at 592-93.

C. **Dr. Goedde's Opinions Relating to Oracle's Forecasting Process Are Unreliable**

Dr. Goedde's opinions regarding Oracle's forecasting process are unreliable and should be excluded for two reasons. First, Dr. Goedde's opinions regarding Oracle's forecasting

---

[9] Farthing Decl. Ex. 1 at p. 13, Ex 4, Ex. 24. All figures at budget rates. NASDAQ close for 3Q00 reported as of the close on March 1, 2000, which is the first day of 4Q00. Defendants characterize the dot.com figures as presented above because they were used in this way by Dr. Goedde in his report. The source document on which Dr. Goedde purportedly relies, however, indicates that Dr. Goedde's labeling of the figures in his report is incorrect for two reasons: 1) the revenues attributed to dot.coms are only from the General Business division, and not NAS or even Oracle as a whole; and 2) these revenues only include field sales, and do not include sales by the iSD division, which was responsible for larger volumes of smaller sales. *See* Farthing Reply Decl. Ex. 4. Plaintiffs feebly attempt to rebut this truth, Opp. at 16 n.14, but do not cite any evidence in support of their argument.

[10] Dr. Goedde's opinion is also irrelevant because in order for Plaintiffs to prevail on their claims that Oracle intentionally or recklessly disregarded the economy when providing its 3Q01 guidance, Plaintiffs must demonstrate that the purported "major macroeconomic change" was known to Oracle, *but not to the market*, a proposition that defies logic.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

8

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  process unquestionably rely on his opinion that a "major macroeconomic change" occurred, and
2  because "it is critical that an expert's analysis be reliable at every step," these forecasting
3  opinions should be excluded as well. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256,
4  267 (2d Cir. 2002); Farthing Decl. Ex. 2 at 76.[11] Second, Dr. Goedde's opinions suffer from
5  serious methodological flaws rendering them unreliable, as set forth below.

### 1. Dr. Goedde's Opinion That Ms. Minton Calculated Her Upside Adjustments Based On Application Of The Prior Year's Conversion Ratio Is Unreliable

Dr. Goedde's opinion that the Potential Projection "was based almost exclusively on historical conversion analysis," Farthing Decl. Ex. 2 at 76, is completely unsupported by the record. 20A Opp. at 11-13. Recognizing that the record cannot support this proposition, Plaintiffs attempt to defeat Defendants' Motion by recharacterizing Dr. Goedde's opinion. They now contend that Dr. Goedde opined merely that the prior year's conversion ratio was "the predominant factor" in Ms. Minton's analysis. Opp. at 19.[12]

But even if the Court were to accept this "predominant factor" characterization at face value, Dr. Goedde's opinion would still need to be excluded for lack of relevance. *See Cavallo v. Star Enter.*, 892 F. Supp. 756 (E.D. Va. 1995), *aff'd in part, rev'd in part*, 100 F.3d 1150 (4th Cir. 1996), *cert. denied*, 522 U.S. 1044 (1998) (courts must ensure "that there is a scientifically valid link between the sources or studies consulted and the conclusion reached."). Given that the Potential at no point was equal to the product of the historical conversion ratio and the current year's pipeline, it is undisputed that additional factors were considered. Therefore, even if Ms. Minton began her forecasting process with a historical conversion analysis, Dr. Goedde would

---

[11] Plaintiffs argue that Dr. Goedde has "good grounds" for his opinions, Opp. at 17 n.16, but these are not *independent* of the purported "major macroeconomic change." *See Amorgianos*, 303 F.3d at 267; Farthing Reply Decl. Ex. 1 at 101:13-20 ("I didn't segment [my opinion] to determine what the weight was for each of these factors").

[12] Notably, Plaintiffs' summary judgment briefing takes a completely different and much stronger position, arguing that Ms. Minton performed a "year-over-year extrapolation … to estimate Oracle's license revenues for the quarter." 20A MSJ at 5; see also Opp. to DMSJ at 24 & n.29 (arguing that "Defendants knew that the extrapolated Potential... was unreasonable" and that Minton "extrapolated without adjusting"). These attempts to constantly reshape Dr. Goedde's opinions to meet the needs of the day underscore the inherent weakness in Plaintiffs' position and should be rejected.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

9

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  still need to demonstrate "a scientifically valid link" that the additional adjustments Ms. Minton
2  made did not correct for any inherent deficiencies in using the historical conversion ratio as part
3  of the process.  He has not done so (nor could he given Ms. Minton's historical accuracy), and
4  Dr. Goedde's opinions should therefore be excluded as irrelevant.[13]

5  On the merits, Plaintiffs' revisionist history continues.  In the Motion, Defendants
6  demonstrated the unreliability of Dr. Goedde's regression analysis that purported to show that
7  "94% … of any variations over time in Ms. Minton's Potential Forecast can be explained by
8  similar variations in the calculated forecast based on the prior year's conversion rate."  Goedde
9  Decl. ¶ 5; Mot. at 20-21.  Conceding that those criticisms were well-founded, Plaintiffs have
10 omitted that regression analysis from Dr. Goedde's "combined" November 17, 2008 declaration,
11 Dkt. 1542, and they do not even attempt to defend the analysis in their Opposition.

12 Having abandoned his earlier regression analysis, Dr. Goedde now purports to rely on a
13 stepwise regression that he submitted for the first time months after expert discovery closed.
14 Opp. at 20 & n.20.  In the Motion, Defendants explained that stepwise regression "is to be
15 avoided" because it constitutes "an admission of ignorance" on the part of the person performing
16 the regression.  Mot. at 21 (citing Farthing 11/9/07 Decl. (Dkt. 1409) Exs. 7-9).[14]  Plaintiffs have
17 made no effort to refute these academic authorities.  That Plaintiffs and Dr. Goedde do not even

---

[13] Because Dr. Goedde's conclusion regarding the genesis of Minton's Potential projection is unreliable and inadmissible, his opinion regarding the failure to use macroeconomic data in Oracle's forecasts that relies on that conclusion must also be excluded.  *See* Opp. at 21 (contending that Minton "did not take economic conditions into consideration when performing her conversion ratio analysis, which formed the basis of her Potential Forecast."); *Amorgianos*, 303 F.3d at 267.

[14] Plaintiffs point to *Major v. Treen*, 574 F. Supp. 325 (E.D. La. 1983) and *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164 (N.D. Ohio Aug. 8, 2005) in support of an argument that stepwise regression "is a reliable basis on which to admit expert testimony."  Those authorities do not support that proposition.  In *Major*, for example, there is no indication that the use of stepwise regression was challenged in the context of determining voting patterns based on race, and thus no reason to believe it is a valid methodology in this econometric setting.  574 F. Supp. at 337.  And in *In re Welding Fume*, the expert that was allowed to testify, Dr. Wells, was *criticizing* the use of stepwise regression—not promoting it.  2005 U.S. Dist. LEXIS 46164, at *71-72; *see also* Supplementary Declaration of Martin T. Wells, Ph. D., *In re Welding Rod Prods. Liab. Litig.*, 2004 WL 3690602, at ¶ 39 ("Professor Makuch's favorable views on step-wise variable selection are contrary to the mainstream statistics literature…. [S]tepwise variable selection procedures are well known to be problematic.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

10

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

attempt to defend this flawed methodology is telling of their willingness to tender "junk science" in an effort to mislead the trier of fact. *See Gen. Elec. Corp. v. Joiner*, 522 U.S. 136, 153 (1997).

Furthermore, the purported "error correction model" or "first differences" regression now relied upon by Dr. Goedde does not support his opinions. Opp. at 20. First, it bears repeating that this "first differences" regression is Dr. Goedde's *third* post-deposition attempt to create a valid analysis to support his opinion, his prior two attempts having been utterly discredited by Defendants. Mot. at 5-6. Second, Dr. Goedde still cannot explain how this most recent model—which shows that his hypothesis is *wrong* 38% percent of the time in 3Q01—supports his opinion. Mot. at 19-20. Third, Dr. Goedde fails to explain the *magnitude* of the differences shown by his analysis even on the occasions when the differences move in the same direction.[15]

Dr. Goedde's opinion that Minton derived her Upside adjustment by multiplying the prior year's conversion ratio by the current pipeline is contrary to the undisputed evidence in this case—including Minton's own testimony and Dr. Goedde's calculations. Because his ultimate opinions are based on this unsupportable premise, Dr. Goedde's conclusions are unreliable and should be excluded. The gatekeeper function contemplated by *Daubert* exists precisely to keep superficially appealing, yet scientifically flawed, analysis like this from the finder of fact. *Daubert*, 509 U.S. at 589.

### 2. Dr. Goedde's Opinion That Ellison Issued A Directive Causing More Risk To Enter Oracle's Forecasts In 2Q01 Is Unreliable

Dr. Goedde has opined that as a result of the "directive," the amount of management judgment in the field forecast increased, thus "eliminating the need for Ms. Minton's upside adjustments." Farthing Decl. Ex. 2 at 84; Farthing Decl. Ex. 1 at 23 ("Ellison directed a significant change that rendered Minton's upside adjustments unnecessary and unreliable.").

---

[15] For example, on observation 27, although the differences move in the same direction, Minton's Potential decreases by 6.27%, whereas the mechanical forecast decreases by only 2.33%—meaning that Minton's judgment generated a decrease in the Potential more than 2.5 times *greater* than what a mechanical forecasting process would have suggested. Goedde Rebuttal Decl. Ex. D. Similarly, on observation 33, Minton's Potential increases by 0.98%, whereas the mechanical forecast increases by 5.24%—meaning that Minton's judgment generated a increase in the Potential more than 5 times *smaller* than what a mechanical forecasting process would have implied. *Id.* These calculations also confirm the conservative nature of Ms. Minton's Potential.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

11

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  However, Dr. Goedde has utterly failed to prove this is true.  Even if Dr. Goedde could show that
2  there was more judgment in the field forecasts after a purported "directive," he has not
3  completed the syllogism to show how this actually eliminated the need for Minton's Upside
4  adjustments in 3Q01.  In fact, despite the purported directive in September or early October
5  2000, the field's forecasts for 2Q01 were below the actual results, especially earlier in the
6  quarter, as shown in the table below:[16]

| Division | 2Q01 Actuals | October 9, 2000 Forecast | November 3, 2000 Forecast | November 27, 2000 Forecast |
|---|---|---|---|---|
| NAS | $278,636,000 | $260,089,000 | $270,001,000 | $284,167,000 |
| OSI | $153,227,000 | $149,973,000 | $149,973,000 | $150,000,000 |
| OPI | $108,699,000 | $87,000,000 | $87,000,000 | $97,001,000 |
| Total | $540,562,000 | $497,062,000 | $506,974,000 | $531,168,000 |

10  The above data clearly demonstrate a continuing need for Minton's Upside adjustments, even
11  after the purported directive, as the sales force continued to sandbag, just as Ellison believed they
12  would.  Farthing Reply Decl. Ex. 3 at 425:5-21.
13        In addition, Dr. Goedde's new analysis of the purported increase in judgment in the field
14  forecasts after the purported directive in the Goedde Declaration is misleading and unreliable
15  because he draws conclusions from insufficient data and fails to address the total amount of
16  judgment in the Potential.[17]  Foster Rebuttal Decl. ¶¶ 64-73.  As to OPI and OSI, Dr. Goedde
17  only considers one and two pre-"directive" data points, respectively, which provide an
18  insufficient basis for his conclusions.  *Id.* at ¶ 67.  As to NAS, Dr. Goedde ignores that large
19  amounts of judgment had been used before and after the purported "directive," *id.* at ¶ 68, and
20  also fails to measure the total amount of judgment in the Potential, which would be necessary to
21  reach his conclusion that Ms. Minton's upside adjustments were rendered unnecessary by the
22  purported "directive."  *Id.* at ¶¶ 70-73.  In fact, using Dr. Goedde's own selected weeks for
23  observations, the average amount of total judgment (by managers, Mr. Roberts and Ms. Minton)
24  above the NAS field forecast *decreased* from 25 percent before the "directive" to just 18 percent

---

[16] Farthing Reply Decl. Ex. 8 at 975588; *Id.* Ex. 9 at 1532638; *Id.* Ex. 10 at 1532705; *Id.* Ex. 11 at 1532782.  All figures at budget rates and all forecasts are exclusive of Ms. Minton's adjustments.

[17] Plaintiffs' familiar refrain that a lack of evidence supporting their position must the result of spoliation, Opp. at 23 n.23 ("it is defendants that are responsible for the lack of data"), falls flat. *See*, *e.g.*, 20A Opp. at 45-49.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

12

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  after the directive. *Id.* at ¶ 71.  Similarly, it is clear that Minton used proportionately less upside
2  adjustments in 3Q01 than in prior quarters (Farthing Decl. Ex. 10 at ¶ 189), consistent with her
3  testimony that she would "take into consideration the number of upside deals that were not in the
4  forecast, and any other input that I may have received from the field."  Farthing Reply Decl. Ex.
5  2 at 207:8-11.  Dr. Goedde has failed to demonstrate a necessary step in his analysis, and as a
6  result, his conclusions are unreliable and should be excluded.  *Amorgianos*, 303 F.3d at 267.

      D.  **The New Goedde Declarations Are Untimely And Concede that Dr. Goedde's Prior Work Is Unreliable And Inaccurate And Should Be Excluded**

9        Plaintiffs' belated supplementation of Dr. Goedde's reports are improper, and Plaintiffs'
10 arguments to the contrary lack merit.  Plaintiffs' core argument is that their belated submissions
11 are acceptable because they were "not unduly prejudicial to defendants."  Opp. at 25.  Given the
12 facts of this case, Plaintiffs certainly do not meet their burden of proving a lack of prejudice.
13 *Galentine v. Holland Am. Line—Westours, Inc.*, 333 F. Supp. 2d 991, 993 (W.D. Wash. 2004)
14 ("The party that wants the information admitted has the burden of proving that his failure to
15 disclose the information in accordance with Rule 26 or other court orders was harmless.").
16 Indeed, Plaintiffs' suggestion that Defendants are not prejudiced by the serial supplementation of
17 Dr. Goedde's reports, after the close of discovery, and after Defendants moved to exclude Dr.
18 Goedde's testimony based on his original faulty analysis, borders on frivolous.
19       Defendants have been unable to depose Dr. Goedde with respect to his new analyses and
20 opinions, inasmuch as the cutoff for expert discovery passed months before Dr. Goedde's
21 declarations were served on Defendants.  Though Plaintiffs rely on *Galentine* for the proposition
22 that this inability to depose Dr. Goedde is harmless, *Galentine* actually supports Defendants'
23 position that such untimely disclosure is prejudicial.  333 F. Supp. 2d at 994.  Recognizing the
24 prejudicial nature of plaintiffs' untimely expert disclosure, the *Galentine* court not only
25 permitted defendants the opportunity to depose the expert, but also imposed a sanction that
26 permitted the prejudiced party "to allow the jury to be informed of the fact of non-disclosure" so

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

13

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1   that it will "cast doubt on the credibility of Plaintiff's expert." *Id.* at 994-95.[18]

2   *Whatley v. Merit Distrib. Servs.*, 166 F. Supp. 2d 1350, 1356 (S.D. Ala. 2001), similarly does not help Plaintiffs demonstrate lack of prejudice because the facts in that case are clearly distinguishable from the ones here. In *Whatley,* the expert's report at issue was merely two days late, and the other expert's report was a rebuttal report submitted before any court deadline for submission of rebuttal reports had been set. *See also Talbert v. City of Chicago*, 236 F.R.D. 415, 420 (N.D. Ill. 2006) (allowing supplementation because expert discovery was allowed to remain open precisely to permit the supplemental report). Here, the Court issued a cutoff for rebuttal expert reports of June 22, 2007. Farthing Reply Decl. Ex. 12. Rather than being a few days late, Plaintiffs deliberately withheld Dr. Goedde's supplemental analysis in order to gain a tactical advantage. Indeed, in withholding Dr. Goedde's supplemental analysis until *after* his deposition, and *after* defendants had moved to exclude his testimony (on the date required by the Court's scheduling order), Plaintiffs are playing the very game of evasion that even the cases they cite say should not be permitted. "Discovery of expert opinion must not be allowed to degenerate into a game of evasion. The purpose of our modern discovery procedure is to narrow the issues to *eliminate surprise*, and to achieve substantial justice." *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999). "[Plaintiffs] clearly had a duty to inform [Defendants] of any changes or additions to [Dr. Goedde]'s testimony. [Their] failure to do so denied [Defendants] the opportunity to develop [their] cross-examination of [Dr. Goedde]." *Id.*

As here, in *Point Productions A.G. v. Sony Music Entm't, Inc.*, the plaintiff's expert served his supplemental report *after* expert discovery had closed and *after* defendants had moved to exclude that expert. No. 93 Civ. 4001 (NRB), 2004 U.S. Dist. LEXIS 2676, at *25-26 (S.D.N.Y. Feb. 23, 2004). The supplemental report was, "ostensibly, in direct response to" the arguments made in the motion to exclude. *Id.* In granting defendants' motion to preclude the plaintiff's expert from testifying, the court rejected plaintiffs' arguments that the delayed production was justified, concluding that "[t]o accept the contention that the [supplemental

---

[18] If Dr. Goedde is permitted to testify at trial, Defendants respectfully request that the jury be so instructed.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

14

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  materials] merely support an initial position when they in fact expound a wholly new and
2  complex approach designed to fill a significant and logical gap in the first report would
3  eviscerate the purpose of the expert disclosure rules." *Id.* at *32. This Court should similarly
4  reject Plaintiffs' "eleventh hour effort to rescue a deficient expert report that has been the basis
5  for the course of this litigation." *Id.* at *38. Defendants are "entitled to challenge the reliability
6  of [Plaintiffs'] expert witness as the record then stood [at the close of expert discovery] without
7  providing [Plaintiffs] open-ended opportunities to endeavor to fill the flaws and gaps in [their
8  expert's] report as [Defendants] identif[y] them." *Id.* at *43.

9      The Court should exclude Dr. Goedde's declarations as untimely, and Dr. Goedde's
10 earlier reports (which do not contain the opinions or analysis in his later declarations) as
11 "inaccurate or incomplete" and failing to contain "a complete statement of all opinions the
12 witness will express and the basis and reasons for them" as required by Rule 26. *Keener v.*
13 *United States*, 181 F.R.D. 639, 640 (D. Mont. 1998).

14 **III. CONCLUSION**

15     For the foregoing reasons, Defendants respectfully request that Dr. Goedde's reports,
16 testimony, opinions, and declarations, be excluded in their entirety.

17 Dated: December 12, 2008                    Respectfully submitted,

18                                             LATHAM & WATKINS LLP

19

20                                             By:_____/s/ Patrick E. Gibbs ___
                                                  Patrick E. Gibbs
21                                                   Attorneys for Defendants

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SV\643663.6

15

DEFENDANTS' REPLY ISO MOTION TO EXCLUDE
GOEDDE REPORTS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)