COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
MARK SOLOMON (151949)
DOUGLAS R. BRITTON (188769)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@csgrr.com
dougb@csgrr.com
     – and –
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
ELI R. GREENSTEIN (217945)
DANIEL J. PFEFFERBAUM (248631)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
willowr@csgrr.com
elig@csgrr.com
dpfefferbaum@csgrr.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION | Master File No. C-01-0988-SI |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF EDWARD YOURDON |
| ALL ACTIONS. | |
| | DATE:    January 9, 2009 |
| | TIME:    9:00 a.m. |
| | CTRM:  The Honorable Susan Illston |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................3

        A.      Yourdon's Opinions as to the Quality of Suite 11i Are Unreliable and Not
                Helpful to the Trier of Fact ......................................................................3

                1.      Testimony Regarding an Inapplicable Measure of Software Quality
                        Is Not Relevant to This Litigation ................................................4

        B.      Yourdon's Opinions Are Neither Relevant Nor Reliable Because He
                Excluded Everyone Except IT Professionals from His Analysis of the
                Statements at Issue ....................................................................................6

        C.      Because Yourdon Did Not Form a Reliable Opinion Concerning the
                Integration of Suite 11i, His Opinions Must Be Excluded ........................8

        D.      Yourdon's Opinion Is Undermined by the Lack of Credible Evidence of
                Any Customer Live on Both ERP and CRM During the Class Period.................12

        E.      Yourdon's Analysis of Lost Deals Is Not Reliable and Must Be Excluded ..........14

III.    CONCLUSION....................................................................................................15

1

## TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Avila v. Willits Envtl. Remediation Trust*,
    No. C 99-3941 SI, 2008 U.S. Dist. LEXIS 19742
    (N.D. Cal. Feb. 6, 2008)......................................................................................4, 6

*Bourjaily v. United States*,
    483 U.S. 171 (1987)..................................................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................ *passim*

*DeLuca v. Merrell Dow Pharms., Inc.*,
    911 F.2d 941 (3d Cir. 1990)....................................................................................12

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..........................................................................................1, 6, 9

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
    524 F. Supp. 2d 1166 (N.D. Cal. 2007) ...................................................................6

*In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
    543 F.3d 150 (3d Cir. 2008)......................................................................................7

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)......................................................................................12

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).............................................................................................2, 8

*Nichols v. Am. Nat'l Ins. Co.*,
    154 F.3d 875 (8th Cir. 1998) ...................................................................................2

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ................................................................................10

*Staehr v. Hartford Fin. Servs. Group*,
    No. 06-3877-cv, 2008 U.S. App. LEXIS 23551
    (2d Cir. Nov. 17, 2008)............................................................................................7

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ............................................................................12, 14

25

26

27

28

1

2                                                                                          **Page**

3   **STATUTES, RULES AND REGULATIONS**

4   Federal Rules of Evidence
        Rule 403 ........................................................................................................................7, 8
5       Rule 702 ...................................................................................................................1, 4, 7

6   **SECONDARY AUTHORITIES**

7   3 J. Weinstein & M. Berger,
        *Weinstein's Evidence* 702[03] (1988) ....................................................................12
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

The opinions of defendants' software expert, Edward Yourdon ("Yourdon"), are neither reliable nor relevant to this litigation. Fed. R. Evid. 702. As to relevancy, Yourdon's opinions are inadmissible because they will not "assist the trier of fact to understand the evidence or to determine a fact in issue." *See id.* Likewise, Yourdon's opinions do not meet the reliability requirements of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) because they are not the product of reliable principles and methods or based upon sufficient facts or data. Indeed, the analytical gaps in Yourdon's analysis are simply too great for his opinions to be admitted. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Yourdon admittedly failed to apply his own proscribed (yet flawed and irrelevant) methodology to assess the quality of Suite 11i – the defects per function point metric. *See* Pls' Mot. at 15-17.[1] In fact, Yourdon's opinions relating to quality are so unreliable they have now been disavowed by defendants: "Mr. Yourdon did not offer an affirmative opinion on the quality of the Suite 11i software." Defs' Opp. at 1. Defendants' thinly veiled attempt to rewrite Yourdon's opinions in their opposition highlights the very reasons why Yourdon's opinions must be excluded. The opinions proffered by Yourdon are unequivocally premised on the quality of Suite 11i – his report, rebuttal and deposition testimony make this clear. In his affirmative report, Yourdon defines Suite 11i's quality as "the absence of software bugs" (although he later sought to change this definition at his deposition) and then opines on the effects of software bugs on implementation, integration and functionality. Ex. 1, ¶41. He then concludes that Suite 11i was a "technical success and a marketplace success." *Id.*, ¶12. Yourdon further states that: "Plaintiffs have unfairly implied that Suite 11i had unusually poor quality because it contained bugs in its early stages. . . . I have seen no evidence that Suite 11i was worse than any other ERP product . . . ." *Id.*, ¶195. At his

---

[1]    "Pls' Mot." shall refer to Plaintiffs' Motion to Exclude Expert Testimony of Edward Yourdon. "Defs' Opp." shall refer to Defendants' Opposition to Motion to Exclude Expert Testimony of Edward Yourdon. All "Ex. __" references shall refer to the Declaration of Shawn A. Williams in Support of Plaintiffs' Reply in Support of Motion to Exclude Expert Testimony of Edward Yourdon, filed herewith.

1   deposition, he provided an opinion as to the quality of Suite 11i: "*did* [Suite 11i] have some quality

2   problems?  I would agree to that, yes."  Ex. 3 at 188:2-3.  Yourdon's actual opinions and analysis

3   cannot be reconciled with the position taken by defendants that he offers no affirmative opinion with

4   respect to quality.  Accordingly, Yourdon's opinions relating to Suite 11i's quality must be excluded.

5           In addition to defendants' abandonment of Yourdon's quality assessment, defendants ignore

6   the litany of defects in Yourdon's opinion which plaintiffs articulated in their motion and which

7   defendants fail to rebut.  Yourdon not only failed to consider all of the relevant evidence available to

8   him in this litigation, importantly, in his evaluation of integration, he defines a four-level inquiry (for

9   which he is not qualified to answer by his own admission) and then ignores two of the four forms of

10  integration required to determine whether Suite 11i was fully integrated.  This analytical gap is fatal

11  to the reliability of his opinions relating to integration.

12          Further, Yourdon's unsolidified and ever-shifting opinions that defendants' statements were

13  alternately "accurate," "fundamentally true," and "not false" were inappropriately narrowed to an

14  audience of "IT professionals" – a limitation which further renders his testimony irrelevant to this

15  litigation as it would not tend to prove or disprove any material issue in the case.  Expert testimony

16  is only admissible when the testimony will "assist the trier of fact" or in other words, when the

17  factual issue is one that the trier of fact would not ordinarily be able to resolve without technical or

18  specialized assistance.  *Daubert*, 509 U.S. at 591; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156

19  (1999).  Indeed, if a jury is capable of drawing its own inferences from the available evidence (*i.e.*,

20  the interpretation of defendants' statements as a reasonable investor of ordinary intelligence would),

21  expert opinion does not "assist the trier of fact" and is not admissible.  *See Nichols v. Am. Nat'l Ins.*

22  *Co.*, 154 F.3d 875, 883 (8th Cir. 1998) (expert testimony regarding credibility and veracity of

23  witness properly excluded because "[w]eighing evidence and determining credibility are tasks

24  exclusive to the jury").

25          Finally, defendants try to deflect from Yourdon's flawed analysis by devoting the majority of

26  their opposition arguing (wrongly) that Brooks L. Hilliard CMC CCP ("Hilliard"), plaintiffs' expert,

27  cannot offer an opinion on the quality of Suite 11i.  This issue is the subject of separate briefing, and

28  more importantly, does nothing to rebut plaintiffs' arguments that Yourdon should be excluded.

Indeed, the proponent of an expert opinion bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence, *see Bourjaily v. United States*, 483 U.S. 171, 175 (1987), a burden defendants have failed to carry with respect to Yourdon's flawed opinions.

## II.   ARGUMENT

### A.   Yourdon's Opinions as to the Quality of Suite 11i Are Unreliable and Not Helpful to the Trier of Fact

Defendants now disavow any opinion Yourdon has regarding the quality of Suite 11i: "Mr. Yourdon . . . has not offered an affirmative opinion on Suite 11i's overall quality; rather, the focus of his opinions is the appropriate *means of evaluating* the quality of large software . . . ." Defs' Opp. at 1, 7-8 (italics by defendants). Yet, Yourdon's report, rebuttal and deposition testimony belie defendants' attempt to recast Yourdon's opinions. Yourdon's opinions regarding quality abound. For example, Yourdon concluded without any proper methodology or evidentiary basis that:

- "Oracle's Suite 11i product was an exemplar of a large, sophisticated, complex ERP system - and, as such, it initially experienced many of the well-known problems common to large, sophisticated products in the software industry. Plaintiffs' arguments about product quality unfairly attempt to magnify the problems of Suite 11i. The reality is that all large, sophisticated, new software releases experience early stages in which bugs must be worked out, and the company must stabilize the product and secure reference customers."

- "The problems here were not unique, and there is no evidence that they were of any greater magnitude than any other comparable past release of Oracle ERP software. Notwithstanding the initial difficulties, the Suite 11i product did work, and was both a technical success and a marketplace success within a reasonable period of time."

- "The specific statements regarding the Suite 11i product that Plaintiffs have identified as 'false' were, in fact, accurate."

- "The evidence in this case does not support the conclusion that Oracle's Suite 11i suffered from undisclosed bugs or other problems that were out of the ordinary for a major new release of an ERP product."

- "The evidence in this case does not support the conclusion that deals in Oracle's forecast or sales pipeline failed to close in Oracle's Q3 2001 because of generally unknown or unexpected quality problems with Suite 11i."

Ex. 1, ¶258.

1    These conclusions are indeed affirmative representations about Suite 11i's quality – *i.e.*, that

2    the evidence purportedly demonstrates that Suite 11i was at least of average quality.[2]   Because

3    Yourdon's opinion of Suite 11i's quality underlies the basis of much of his reports and deposition

4    testimony, defendants' denial that he has offered an opinion is a rejection of the entirety of his expert

5    analysis.  Yourdon's "quality" opinions are not only fundamentally flawed but unhelpful to the jury.

6    Accordingly, the Court should exclude Yourdon's opinions premised on quality.  Fed. R. Evid. 702;

7    *Daubert*, 509 U.S. 579; *Avila v. Willits Envtl. Remediation Trust*, No. C 99-3941 SI, 2008 U.S. Dist.

8    LEXIS 19742, at *16 (N.D. Cal. Feb. 6, 2008).

9    **1.    Testimony Regarding an Inapplicable Measure of Software
         Quality Is Not Relevant to This Litigation**

10   While on one hand, defendants claim Yourdon is not offering an affirmative opinion of Suite

11   11i's quality, on the other, defendants claim that Yourdon endorses a measurement of software

12   quality based on the number of defects per function point, citing Capers Jones' ("Jones") book,

13   *Estimating Software Costs*.  Ex. 25; Defs' Opp. at 7-10.  This metric is irrelevant in the context of

14   this litigation because the experts agree that no party knows the number of function points or the

15   number of defects in Suite 11i.  Pls' Mot. at 15-17; Ex. 14 at Conclusion #1-2.  Perhaps even more

16   significantly, Yourdon in error relies on Jones as providing the relevant industry data necessary for a

17   comparative evaluation of the Suite 11i software.  Jones, however, unequivocally states that his

18   numbers are "not accurate" and should not be used for "serious business purposes."  Ex. 25 at 101.

19   Further, defendants have held out Suite 11i as a revolutionary product and not comparable to any

20   other software on the market at the time of its release.  *See* Pls' Mot. at 14-15.  Thus, no comparison

21   of defects per function point between Suite 11i and other software would be relevant.

---

[2]      This is further evidenced by the arguments of defendants' counsel, who in their efforts to exclude Hilliard, claim that Oracle's licensing revenue in the quarter following the class period was evidence of Suite 11i's **commercial quality**.  *See* Defendants' Motion to Exclude Declaration and Testimony of Brooks Hilliard, filed October 20, 2008 at 15 n.8.  To the extent that defendants' counsel based such an argument on Yourdon's opinion that Suite 11i was "a marketplace success," it apparently shows they have misinterpreted Yourdon's report.  Ex. 1, ¶12.

1    Defendants' belated attempt to rewrite Yourdon's opinions as endorsing, but not applying,

2    this metric to measure quality based on the number of defects in the software, conflicts with

3    Yourdon's sworn deposition testimony.  Defs' Opp. at 1, 7.  When asked about the impact of bugs

4    on software quality at his deposition, Yourdon retorted: "As you might appreciate, I'd love to have

5    you tell me what you mean by quality."  Ex. 3 at 60:7-8.  When counsel for plaintiffs pointed to the

6    definition of quality in Yourdon's report, "quality (*i.e.*, absence of software bugs)," Yourdon sought

7    to change his definition from "quality (*i.e.*, absence of bugs)" to "quality (*e.g.*, absence of bugs)."

8    He stated: "Normally [number of defects] would be considered *just one aspect* of quality."  *Id.* at

9    60:12-61:16.  Defendants are wrong to dismiss this as a mere typographical error; the change in

10   terminology undermines much of their argument.  Defs' Opp. at 21.

11   Indeed, accepting Yourdon's definition of quality as articulated in his deposition (*e.g.*,

12   absence of bugs), his definitions of commercial quality are in line with both Hilliard and Oracle

13   executives like Mark Barrenechea.  Ex. 27 at 233:17-234:1.  For instance, Hilliard's conclusion that

14   Suite 11i was not of commercial quality was based on his findings regarding Suite 11i's instability,

15   poor performance and unacceptable customer support.  Ex. 9, §5.3.  Hilliard stated "my opinion of

16   the quality of the Oracle 11*i* product is based on the severity and the criticality of software

17   defects . . .  not on the sheer number of such defects alone."  *Id.* at 79, §5.3.  Thus, a change in

18   definition of the meaning of quality cannot be dismissed as a mere typographical error.  The

19   attempted definitional change undercuts the entirety of Yourdon's analysis with respect to quality as

20   well as his rebuttal attack on Hilliard.[3]  Importantly, Yourdon's definitional change also undermines

21   defendants' claim that defects per function point metric is the ***only*** means of measuring software

22   quality (or even that Yourdon endorses such a measurement), as his sworn testimony indicates that

23   quality encompasses more than the number of defects alone.  Indeed, the change is material as it

24   _____

25   [3]    For example, Yourdon states in his rebuttal that Hilliard "has not performed any analysis to
     determine whether Oracle's Suite 11i product had substantially more bugs that any other comparable
26   enterprise software product in the market place at the time.  Absent such a baseline, his conclusions
     about product quality are also meaningless."  Ex. 2, ¶9.  Yourdon undermines himself at his
27   deposition when he states that quality encompasses more than bug counts alone.

28

1  renders Yourdon's opinions hopelessly contradictory and illogical and thus, inadmissible.  *In re*

2  *Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1181 (N.D.

3  Cal. 2007); *Gen. Elec.*, 522 U.S. at 146.

4         In short, Yourdon's opinion that quality must be measured in accordance with Jones' defects

5  per function point metric should be excluded because: (i) Yourdon's own methodology is conflicted

6  by his testimony; (ii) the technical source he relies on for his methodology clearly indicates that the

7  defects per function point averages he provides are "not accurate"; and (iii) the opinion (as proposed

8  now by defendants) is irrelevant to this litigation as it is essentially impossible to apply this metric to

9  Suite 11i as it existed over six years ago.  *Avila*, 2008 U.S. Dist. LEXIS 19742, at *16 (Evidence that

10  has no relationship to issues in the case is irrelevant, does not assist the jury and should be

11  excluded.).

12         **B.    Yourdon's Opinions Are Neither Relevant Nor Reliable Because He
13                 Excluded Everyone Except IT Professionals from His Analysis of the
                   Statements at Issue**

14         Yourdon's opinions that defendants' statements were "accurate," "not false" or

15  "fundamentally true," are flawed because he inappropriately narrowed the scope of his opinions to

16  those "people who had a background and education in the field of computer hardware or software,

17  and most likely people who were employed by or somehow directly involved in companies that

18  provide computer products and services." Ex. 3 at 30:23-31:4, 70:12-13; Ex. 1, ¶¶12, 156, 258; *see*

19  Pls' Mot. at 17-19.  At his deposition, Yourdon unequivocally confirmed that his findings of veracity

20  were narrowed to an audience of "IT professionals."  Ex. 3 at 82:22-83:4 ("I'm limiting [my

21  opinion] to people who are involved in, work in or are associated with the IT industry. . . .").

22         Defendants try to claim that Yourdon's analysis is relevant because "IT professionals

23  comprised the vast majority of decision-makers regarding the purchase of Suite 11i." Defs' Opp. at

24  15.  Defendants ignore a key distinction: the statements and omissions at issue here were made to the

25  investing public.[4]  *See, e.g.*, Ex. 21.  Even Oracle did not consider IT professionals to be one of the

26  _____

27  [4]    Defendants' citations (which actually paraphrase, not quote, the cited cases) only further
28  serve to support plaintiffs' position – the relevant inquiry is whether the statements were false and

1   "major audiences" for these statements.[5]  Ex. 4.  Yourdon's failure to consider reasonable investors,

2   like plaintiffs Local 144 Nursing Home Pension Fund, former airline pilot Robert Sawyer and Ryan

3   Kuehmichel, in the formation of his opinions renders them irrelevant.  Accordingly, Yourdon's

4   opinions must be excluded under Fed. R. Evid. 702, because his opinions are not relevant to the

5   issues in this case and will serve to confuse or mislead the jury.  *See also* Fed. R. Evid. 403.[6]

6        In their opposition, defendants misconstrue plaintiffs' argument as to why Yourdon should

7   be excluded.  Defs' Opp. at 15.  Yourdon fails to offer an expert opinion as to whether he believes

8   defendants' statements that Suite 11i was fully integrated, fully interoperable out of the box, worked

9   in every language and that it helped save money were false or misleading ***to reasonable investors***.

10  *See* Ex. 9 at §4-4.2.7.  Yourdon inexplicably and fatally narrowed the scope of his opinion to a

11  determination that defendants' statements were ***only*** "accurate," "fundamentally true" or "not false"

12  as made to a certain select audience which had both educational and professional experience in the

13  IT field.  *See* Ex. 1, ¶¶12, 156; Ex. 3 at 70:12-13; *see also* Ex. 3 at 82:22-85:4.  Yourdon's opinion is

14  neither relevant or helpful to a jury but, in fact, unfairly will confuse a jury.  *Daubert*, 509 U.S. 579;

15  Fed. R. Evid. 403.

16

17  misleading as heard by ***reasonable investors***.  Indeed, as set forth in *In re Merck & Co., Inc. Sec.*
    *Derivative & ERISA Litig.*, 543 F.3d 150, 161 (3d Cir. 2008), the relevant audience in securities
18  litigation is the reasonable investor of ordinary intelligence.  Plaintiffs have never argued that the
    statements should be read in a vacuum or without context, but in a securities fraud action, the
19  veracity of the statements as understood by a small group of specially trained professionals is not a
    relevant inquiry or defense.

20  [5]   It is unclear why defendants extensively quote Yourdon's deposition testimony regarding the
    fact that Yourdon thinks "some [] analysts" are IT professionals.  *See* Defs' Opp. at 16.  This only
21  underscores the fact that the ***vast majority*** of the intended audience of investors are not IT
    professionals.  Indeed, the Second Circuit recently addressed the importance of information being
22  widely available to an investor of ordinary intelligence as opposed to information contained in a
    industry publication.  *Staehr v. Hartford Fin. Servs. Group*, No. 06-3877-cv, 2008 U.S. App. LEXIS
23  23551, at *73-*74 (2d Cir. Nov. 17, 2008).  The relevant inquiry is the reasonable investor ***not*** the
    reasonable IT professional or industry analyst.
24

25  [6]   Many of defendants' arguments suggest that Yourdon offers reliable opinions in his rebuttal
    report.  *See, e.g.*, Defs' Opp. at 1-3, 6-7, 13-14.  Yourdon's rebuttal report, however, must be
26  excluded because it suffers from the same lack of relevance and reliability that plagues his opening
    report.  Yourdon's rebuttal opinions are based on the same irrelevant findings that defendants'
27  statements were accurate as viewed by the miniscule audience of IT investors and that Suite 11i was
    integrated based on his flawed review of the technical documentation alone.

28

1    Defendants also assert, without support, that Yourdon's failure to clearly articulate his

2    opinions as to whether defendants' statements were "accurate" or "fundamentally true" or "not false"

3    simply reflects the "legal standard" for "material misstatements." Defs' Opp. at 16; Ex. 3 at 70:12-

4    13. As explained in plaintiffs' motion, Yourdon vacillates between different conclusions, shifting

5    from "accurate" in some situations to merely "fundamentally true" when forced to confront defects

6    in Suite 11i. *See* Pls' Mot. at 21 (discussing Yourdon's attempt at his deposition to qualify his

7    opinion that certain statements were accurate). The trial court must ensure that an expert "employs

8    in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

9    relevant field." *Kumho Tire*, 526 U.S. at 152. Yourdon's uncertainty reflects a lack of rigorous

10   investigation and the failure to fully form reliable opinions. Accordingly, his opinion regarding

11   defendants' statements should be excluded.

12       **C.    Because Yourdon Did Not Form a Reliable Opinion Concerning the
             Integration of Suite 11i, His Opinions Must Be Excluded**

13

14       Yourdon's opinion on the integration of Suite 11i is unreliable and unhelpful to the trier of

15   fact. Yourdon's opinion that Suite 11i was "fully integrated" and "fully interoperable" is

16   fundamentally flawed because he failed to follow his own purported methodology, and he admittedly

17   failed to evaluate two of the four forms of integration which he opines are necessary for software to

18   be "fully integrated." Ex. 1, ¶12; Exs. 21-22. Experts on both sides agree that integration comprises

19   four forms of integration (two more forms than Yourdon analyzed). Ex. 10 at 5-8; Ex. 1, ¶104, n.38.

20   A failure of any of the four forms of integration can render software not integrated. *See* Ex. 10 at 7-

21   8. Accordingly, Yourdon's opinion that Suite 11i was "fully integrated" and "fully interoperable"

22   and that it supported "seamless integration across the marketplace" is undermined by his own

23   proposed methodology that he failed to employ. Exs. 5-6, 21-22. Defendants admit in their

24   opposition that systems integration encompasses elements of functional and user interface

25   integration and that Yourdon does not opine on these forms. Defs' Opp. at 11-12. Thus it is

26   impossible for Yourdon to offer a reliable opinion regarding defendants' statement that Suite 11i was

27   "fully integrated" and "fully interoperable out of the box," based on his proffered methodology,

28   when this includes aspects of integration which he did not evaluate. Exs. 21-23. Yourdon's failure

1    to analyze all four forms of integration is evidence of an analytical gap between the data analyzed

2    and the opinion proffered and is grounds for exclusion. *Gen. Elec.*, 522 U.S. at 146.

3         Defendants try to deflect from Yourdon's faulty opinion by claiming that functional

4    integration and user interface integration were not relevant to full integration because customers did

5    not complain about these issues. Defs' Opp. at 12.[7]  Yourdon, however, has dismissed customer

6    complaints as "anecdotal" and stated that customer reports are not a reliable source of information.

7    Ex. 1, ¶201; Ex. 3 at 113:1-24.  Yourdon is barred from now relying on a purported absence of

8    complaints (which he claims are not reliable and thus ignored) to explain the analytical gap in his

9    opinion.

10        Yourdon's definition of integration, and superficial analysis of Suite 11i's integration, are

11   completely incongruous and fail the "fit" requirement. *Daubert*, 509 U.S. at 591-92.  He defined

12   integration for both "the end-user . . . as well as for IT professionals" as "simply mean[ing] that the

13   pieces (or component or modules) of the system 'work together.'"  However, Yourdon's analysis

14   completely ignored whether the pieces of Suite 11i actually "work[ed] together."  Ex. 1, ¶100; *see*

15   *also* Pls' Mot. at 7-11.  Indeed, Yourdon only examined "technical documentation" of Suite 11i,

16   which he admits did not reveal whether the "software actually functioned in the way that the

17   diagrams [he] reviewed depicted."  Ex. 3 at 230:4-12.  Yourdon did not "look at actual

18   implementations and reports from customers to see whether [Suite 11i] was operating as designed."[8]

19   Ex. 3 at 230:4-12; *see* Ex. 1, ¶¶192-195.  When forced to confront the massive number of Suite 11i

20

21   [7]       Contrary to defendants' claims, Suite 11i suffered from defects related to both functional and
     user-interface integration, as evidenced by the E-Business Suite High Level Requirements
22   Document, which was prepared internally by Oracle engineers.  *See* Ex. 7 at 069914 (discussing
     functional integration defect at sections "1.2 Sales Modules – Duplication," "1.8 Planning engines,"
23   "1.9 Duplication of Quality functionality" and user interface integration defects at "3.2 Common
     User Interface," "3.12 Process Navigator for the whole E-Business Suite" and "3.17 Translation of
24   Custom Applications").

25   [8]       Defendants' claim that quality is at issue only because Hilliard did not use the software is
     baseless.  Defs' Opp. at 9.  Hilliard formed relevant and reliable opinions by reviewing the
26   contemporaneous documentary evidence produced in this litigation, in addition to the sworn
     depositions of the defendants.  Moreover, defendants' claim that plaintiffs represented to the Court
27   "that they needed the original version of Suite 11i software" is not supported by their citations.  *Id.*
     (citing Ex. 14 to Declaration of Rees Morgan).

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
EDWARD YOURDON - C-01-0988-SI                                                                    - 9 -

1    defects – 5,000 in the first six months – Yourdon stated that "the integration was imperfect" but that

2    these errors "do[] not change the fact that 'all the pieces are designed and engineered'" to be

3    integrated. Ex. 1, ¶¶140-141, 192-195. Yourdon's flawed analysis of integration will not assist the

4    trier of fact. Yourdon deliberately ignored the evidence which demonstrated that defendants utterly

5    failed in bringing a fully integrated and interoperable product to market during the class period. As

6    held in this case by the Ninth Circuit: "The most direct way to show both that a statement was false

7    when made and that the party making the statement knew that it was false is via contemporaneous

8    reports or data, available to the party, which contradict the statement." *Nursing Home Pension*

9    *Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).

10          Fatally, Yourdon also devised an inquiry for testing the integration of Suite 11i for this

11   litigation which he was unable to execute. Yourdon "did not acquire an intimate knowledge of the

12   business requirements for the various Suite 11i components," a requirement he stated would be

13   necessary for him to form an opinion of Suite 11i integration. Ex. 3 at 226:10-227:5; Ex. 1, ¶139.

14   When asked if he believed that his failure to develop "intimate knowledge" meant that he "cannot

15   provide a complete answer to the three questions" which comprised his analysis of integration, he

16   answered: "That's correct." Ex. 3 at 226:23-227:1. Defendants offer only an excuse for his neglect,

17   saying such knowledge would have required the review of "thousands of pages of requirements

18   documents," a task which was apparently too onerous for Yourdon. Defs' Opp. at 12-13.[9]

19   Defendants miss the fundamental point: Yourdon designed his opinion for this litigation based on an

20   inquiry that required "intimate knowledge" of various business requirements and yet failed to apply

21   the inquiry which he opined is necessary. Such an analytical gap is grounds for exclusion.

22          Yourdon also fails to address thousands of pages of contemporaneous evidence which details

23   how the software actually performed and which contradict his opinions. *Oracle*, 380 F.3d at 1230.

24   Yourdon stated that customer complaints "do not indicate anything to [him] about the overall quality

25   of the software." Ex. 1, ¶201. Defendants attempt to spin this in their opposition, stating that

26

27   [9]     In contrast, Hilliard reviewed "thousands" of documents in forming his opinion. Ex. 8 at
     47:15.

28

1    customer complaints "without context do not constitute meaningful evidence of quality." Defs' Opp.

2    at 13; Ex. 1, ¶¶201-202.   Defendants claim that Yourdon "considered" the documents which

3    plaintiffs say he ignored because these documents appear in Appendix A to his report, and that

4    Yourdon reasonably chose to disregard them.[10] Defs' Opp. at 13.  However, Yourdon's own report

5    highlights the significance of many of these documents.  *See* Pls' Mot. at 11-14.  For instance,

6    Yourdon explained that software vendors use "SWAT" teams to address particularly disastrous

7    implementations. Ex. 1, ¶52.  Yet, Yourdon stated that "plaintiff's [sic] evidence" that Oracle used

8    SWAT teams "***does not indicate anything*** to me about the quality of the Software."  *Id.*, ¶202.

9         Yourdon further ignored the contemporaneous documentation and sworn deposition

10   testimony which provided "context" for customer complaints – including evidence of insufficient

11   testing, internal discussion of customer problems and significant concessions to customers.   For

12   instance, Yourdon did not consider the admission of Lawrence Ellison, CEO of Oracle, found in

13   *Softwar*, that Suite 11i was rushed to market.  Ex. 24 at 189.   Nor did Yourdon consider the

14   admission of Ron Wohl, chief executive for ERP development, that Suite 11i was not fully tested

15   (Ex. 11 at 106), or the E-Business Suite High Level Requirements Document which revealed that

16   certain modules were incapable of displaying Asian character sets (and therefore remained

17   untranslated). Ex. 7 at 069921.  At his deposition, Yourdon was shown an AMR Research Report,

18   for which representatives from 50 large corporations using Suite 11i were interviewed, which found

19   that: "Almost every customer [AMR Research] spoke with expressed disappointment with the

20   quality of Oracle's software releases" and that "There is little doubt that Oracle's 11i quality

21   problems have significantly slowed its momentum in the enterprise application market."  Ex. 12;

22   Ex. 3 at 179:14-187:25.  Yourdon stated that he had seen this report and it did not "impact" his

23   analysis or indicate "anything" about the quality of Suite 11i.  Ex. 3 at 179:25-180:10.

24

25   _____

26   [10]    Notably, defendants do not reference a single instance wherein Yourdon actually addresses
     such evidence in his report or rebuttal.  Moreover, much of the contemporaneous evidence which
27   Yourdon dismisses is not actually customer complaints, but other evidence, including internal
     communications among Oracle employees.

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
EDWARD YOURDON - C-01-0988-SI                                                          - 11 -

1    Yourdon admitted at his deposition that he did not perform a "review of all of the evidence

2    that was in [his] possession concerning concessions that Oracle paid to customers due to product

3    problems," and that a thorough review of that evidence may have "potentially" changed his opinion.

4    Ex. 3 at 116:23, 117:3-7.  Evidence that Oracle paid significant concessions, worth millions of

5    dollars, to various Suite 11i customers supports plaintiffs' arguments that Suite 11i did not perform

6    as defendants represented during the class period.[11]   Yourdon's failure to even consider this

7    information provides further grounds to exclude his opinions from this case as unhelpful and

8    unreliable.  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (Testimony must be

9    excluded where "the source upon which an expert's opinion relies is of such little weight that the

10   jury should not be permitted to receive that opinion.").

11   The "'ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability,

12   helpfulness turns on whether the expert's "technique or principle [is] sufficiently reliable so that it

13   will aid the jury in reaching accurate results."'"  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744

14   (3d Cir. 1994) (quoting *DeLuca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 956 (3d Cir. 1990) and

15   3 J. Weinstein & M. Berger, *Weinstein's Evidence* 702[03], at 702-35 (1988)).  Because Yourdon

16   failed to analyze two forms of integration, ignored evidence of how the software actually functioned,

17   failed to gain intimate knowledge of the business requirements and disregarded evidence which

18   contradicted his findings, his analysis should be considered so unreliable as to be completely

19   unhelpful to the jury and excluded.

20         **D.    Yourdon's Opinion Is Undermined by the Lack of Credible Evidence
21               of Any Customer Live on Both ERP and CRM During the Class
                 Period**

22   In his rebuttal report, Yourdon listed various "success stories" of companies who ultimately

23   were able to implement some form of Suite 11i, but none of these possessed the key elements of

24

25   _____

26   [11]    Indeed, in a February 23, 2005 joint letter to the Court regarding the parties Joint Discovery
27   Plan, defendants admitted that "If the software is not performing according to specifications, the fix
     will be paid for by Oracle."  Ex. 28 at 8.

28

1   being "live" during the class period on both ERP and CRM.  *See* Ex. 2, ¶¶174-187.[12]  At his

2   deposition, Yourdon stated that he ***believed*** that a list of customers using both CRM and ERP

3   modules existed in his report or rebuttal report.  Ex. 3 at 93:13-94:8.  It does not, nor could he name

4   any.  Ex. 3 at 94:3-23.  Defendants fail once again in their opposition to present any credible

5   evidence of a customer live on both ERP and CRM during the class period.[13]  First they present

6   POSCO, a corporation which Yourdon states began implementation of ERP and CRM in July 2000,

7   but did not complete it until June 2001.  Ex. 2, ¶181.  It is unclear why defendants would suggest

8   that POSCO refutes plaintiffs' arguments given that the class period ends in March 2001.

9   Furthermore, as of June 2001, POSCO was experiencing "***critical showstopper***[]" defects, and

10  internal Oracle communications state that the "product in it's [sic] present structure" could not meet

11  POSCO's needs.  Exs. 15-16.  Second, defendants offer an unsupported string of companies plucked

12  from Oracle's "Go-Live" reports which they now claim were live on both CRM and ERP during the

13  class period.  Defs' Opp. at 13-14.  These reports are clearly unreliable.  Contemporaneous

14  documentary evidence shows that customers listed as live in the "Go-Live" reports were

15  experiencing significant problems due to 11i defects.  For instance, a January 24, 2001 report lists

16  Chipotle as live on "Financials, HR, PA, Inv, PO."  Ex. 26.  Yet, a March 2001 e-mail indicates that

17  Chipotle was having "major 11i performance issues" which were "serious enough that Chipotle has

18  removed themselves from the reference program."  Ex. 18.  Ample evidence contradicts defendants'

19  claims that the companies they list were actually live.  For instance, defendants list Marconi

20  Fibreways as "live," yet, a January 2001 e-mail indicates that "Sales on-line dropped – basic

21

22  [12]     For instance, Yourdon, incredibly, lists Ingersoll Rand, a corporation that stated in October
23  2000 that they "cannot get the software to function [and] have little confidence in Oracle's ability to
    provide a stable working environment" and that are apparently ***still*** in the process of upgrading to
24  Suite 11i.  Ex. 17; Ex. 2, ¶186.  Furthermore, this "success story" had consulting fees of $2.7 million
    forgiven by defendants as well as being granted $1.5M in future discounts on various Oracle services
25  related to Suite 11i.  Ex. 2, ¶186.

26  [13]     Defendants claim that it is not reasonable to expect many customers to have achieved such
    implementations in the 10 months between release and the end of the class period.  Defs' Opp. at 14.
27  Yet Oracle trumpeted the rapid installation of Suite 11i and claimed that it could be implemented in
    90 days.  Ex. 29; *see also* Ex. 9, §5.1.3.

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
EDWARD YOURDON - C-01-0988-SI                                              - 13 -

1    functionality didn't work." Ex. 19. Defendants also list Bell South as "live" on both ERP and CRM,

2    yet, a January 2001 e-mail indicates that BellSouth required 6,000 CRM patches and described a

3    "broken" Suite 11i implementation. Ex. 20 at 221146. The cryptic entries in the "Go-Live" reports,

4    unsupported by any other evidence, simply does not support defendants' claims that there were

5    "many examples" of customers live on both ERP and CRM during the class period. Defs' Opp. at

6    13-14. Instead, it reflects the reality described in the 2002 E-Business Suite High Level

7    Requirements Document, which stated that the "weaknesses within the [Suite 11i] architecture . . .

8    are so fundamental that it exposes [Oracle's] development environment as **best of breed** rather than

9    one of unified software vendor." Ex. 7 at 069913.

10          Defendants have repeatedly presented misleading statistics about the number of "live"

11   customers using Suite 11i in an attempt to rebut plaintiffs' claims that the software was not "fully

12   integrated" and "fully interoperable out of the box." Exs. 21-22. However, because a customer was

13   purportedly counted as "live" when it had implemented only a single module, these figures do not

14   support defendants' claims that the software was integrated and fully interoperable out of the box, as

15   the key value proposition of Suite 11i is that its integrated workflows "cross[] the boundary"

16   between CRM and ERP modules, a situation that would require two modules at bare minimum.

17   Ex. 2, ¶205, n.277; Ex. 1, ¶137. Because Yourdon bases his opinion on unreliable internal reports

18   and ignored contemporaneous evidence to the contrary, his opinion is unreliable. *Viterbo*, 826 F.2d

19   at 422.

20          **E.      Yourdon's Analysis of Lost Deals Is Not Reliable and Must Be
                       Excluded**

21

22          Yourdon concludes that Oracle did not lose any deals in the third quarter of 2001 "because of

23   generally unknown or unexpected quality problems with Suite 11i." Ex. 1, ¶¶12, 241 (referring to

     "undisclosed or unexpected quality problems"). Given that defendants have disavowed any opinion

24   as to quality – Yourdon "has not offered an affirmative opinion on Suite 11i's overall quality" – his

25   opinions on lost deals must be excluded as lacking any reliable methodology. *Id.*, ¶241. Defendants

26   cannot have it both ways – having disavowed Yourdon's opinion as to quality, his opinions as to lost

27   deals which rely on his "quality" analysis must be excluded as well.

28   PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF
     EDWARD YOURDON - C-01-0988-SI                                                    - 14 -

1    In addition to Yourdon's lack of qualifications to testify about Oracle's forecast or pipeline,

2  his failure to review the full factual record related to lost deals and his unreliable methodology,

3  Yourdon's analysis of lost deals is significantly undermined by his arbitrary choice to review deals

4  above $2,000,000.  Pls' Mot. At 22-23.  He provides no explanation for this decision, and it conflicts

5  with Oracle's verified interrogatory response that large deals are those worth more than $500,000.

6  Ex. 30 at 9 ("Oracle does track 'big deals' (deals valued at $500,000 or more).")

7  **III.    CONCLUSION**

8    In conclusion, defendants have failed to carry their burden of demonstrating the admissibility

9  of their software expert, Yourdon.  Because Yourdon's opinions are neither relevant nor reliable, his

10  expert opinions should  be excluded in their entirety from this litigation.

11  DATED:  December 12, 2008                Respectfully submitted,

12                                           COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
13                                           SHAWN A. WILLIAMS
                                             WILLOW E. RADCLIFFE
14                                           ELI R. GREENSTEIN
                                             DANIEL J. PFEFFERBAUM

15

16
                                                          /s/
17                                               SHAWN A. WILLIAMS

18                                           100 Pine Street, Suite 2600
                                             San Francisco, CA  94111
19                                           Telephone:  415/288-4545
                                             415/288-4534 (fax)
20
                                             COUGHLIN STOIA GELLER
21                                             RUDMAN & ROBBINS LLP
                                             MARK SOLOMON
22                                           DOUGLAS R. BRITTON
                                             655 West Broadway, Suite 1900
23                                           San Diego, CA  92101
                                             Telephone:  619/231-1058
24                                           619/231-7423 (fax)

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
STACEY M. KAPLAN
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

Lead Counsel for Plaintiffs

C:\PROGRA~1\pdfDocs\users\DeeM\Import\BRF00056111_Yourdon Reply.doc

1    <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on December 12, 2008, I electronically filed the foregoing with the Clerk

3    of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4    addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5    mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6    participants indicated on the attached Manual Notice List.

7        I further certify that I caused this document to be forwarded to the following designated

8    Internet site at:  http://securities.csgrr.com/.

9        I certify under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.  Executed on December 12, 2008.

11

12                                    /s/
                                SHAWN A. WILLIAMS

13

14                              COUGHLIN STOIA GELLER
                                    RUDMAN & ROBBINS LLP

15                              100 Pine Street, 26th Floor
                                San Francisco, CA  94111

16                              Telephone:  415/288-4545
                                415/288-4534 (fax)

17

18                              E-mail:shawnw@csgrr.com

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 3:01-cv-00988-SI

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,jillk@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Dorian Estelle Daley**
  dorian.daley@oracle.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,eeberline@morganlewis.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com,#sfdocket@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,sholloway@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.com

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

**Raymond Lane**
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

**PRG-Schultz USA, Inc.**
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Sanna Rachel Singer**
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111

**Monique C. Winkler**
Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111