# Exhibit 489

```
 1  MAYER, BROWN, ROWE & MAW
    Donald M. Falk (SBN 150256)
 2  555 College Avenue
    Palo Alto, California 94306
 3  Telephone:  (650) 331-2030
    Facsimile:  (650) 331-2060
 4
    MAYER, BROWN, ROWE & MAW
 5  Steven O. Kramer (SBN 79626)
    Christopher P. Murphy (SBN 120048)
 6  350 South Grand Avenue, 25th Floor
    Los Angeles, California 90071-1503
 7  Telephone:  (213) 229-9500
    Facsimile:  (213) 625-0248
 8
    Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
 9  J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

10  ORACLE CORPORATION
    Dorian Daley (SBN 129049)
11  Lauren G. Segal (SBN 150826)
    500 Oracle Parkway
12  Mailstop 5OP7
    Redwood City, California 94065
13  Telephone:  (650) 506-5200
    Facsimile:  (650) 506-7114
14
    Attorneys for Defendant ORACLE CORPORATION
15
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. C-01-0988-MJJ<br>(Consolidated)<br><br>**DECLARATION OF MICHAEL QUINN**<br><br>Date:   N/A<br>Time:   N/A<br>Place:  Ctrm. 11<br>Honorable Martin J. Jenkins,<br>United States District Judge |

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 312666

I, Michael Quinn, declare as follows:

1. I am Vice President of Americas Revenue Accounting at Oracle Corporation. I have worked at Oracle since June 29, 1998.

2. I make this Declaration in opposition to the Plaintiffs' Ex Parte Application for an Order Directing Oracle to Preserve Evidence and Granting Particularized Discovery.

3. I have personal knowledge of the matters set forth below.

4. In 2000, my staff participated in the conversion of Oracle's accounts receivable and other related systems over to Oracle's new 11i applications. As part of that conversion, it was determined that the previous functionality of assigning "on account" notations to unassigned cash receipts, once they were to be applied, was no longer necessary, and it was thus required that all existing "on account" flags that had accumulated in our Unapplied Cash Account (25005) be reversed through a series of offsetting debit/credit transactions within Account 25005, and thus would have no impact on Oracle's financial statements. I assigned Greg Myers, who reported to me, to serve as Project Manager for this project.

5. Earlier this year, I also was personally assigned by Thomas Williams to manage an investigation into the proper disposition of unassigned cash receipts that Oracle's collection staff had, over time, assigned to an accounts receivable reserve account known as Account 12601. That project is still ongoing.

6. Currently I cannot fully respond to the false allegations contained in plaintiffs' Ex Parte Application because I am traveling on business in Brazil, and have been out of the country ever since plaintiffs' Application was filed. I can, however, categorically deny right now that neither I nor anyone else at Oracle to the best of knowledge, has altered, deleted or destroyed any evidence. If given the opportunity, I would be eager to provide a complete, point-by-point response to plaintiffs' false accusations so that I could dispel them once and for all. Because of the accelerated schedule for our response, however, I will focus my testimony solely upon plaintiffs' false accusation that Oracle has engaged in, or is likely to engage in, the destruction of evidence.

DECLARATION OF MICHAEL QUINN
CASE NO. C-01-0988-MJJ

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 312667

7. Plaintiffs accuse Oracle of "destroy[ing] evidence critical to plaintiffs' claims" in connection with our recent investigation to determine the proper source and disposition of cash receipts previously allocated by the collections staff into Oracle's accounts receivable reserve account. These accusations are completely *false*. At no time have I ever directed anyone, nor have I ever been directed, to alter or destroy any Oracle records or evidence whatsoever. To my knowledge, no evidence has been altered or destroyed.

8. Our ongoing investigation into the origin and disposition of cash receipts contained in Oracle's Accounts Receivable (A/R) reserve account (Account 12601) has nothing to do with the approximately 46,000 debit memo transactions that occurred on November 17, 2000, and that plaintiffs refer to in their Application. Nor will our ongoing work in any way "alter" transactions that took place in the past. It is certainly true that *new* accounting entries likely will be made in some cases, but such new entries will leave a clear and traceable audit trail that will preserve the accounting history relating to these transactions. The project that plaintiffs refer to as the "action plan" was (and is) intended to move the receipts out of the reserve account and into their proper location.

9. Plaintiffs mischaracterize the nature and the scope of this action plan by selectively referring only to the last few sentences of an email that I sent to my team describing the purpose of this investigation. See Ex. D to Keatly Decl. A complete copy of the email is attached hereto as Exhibit A. I articulated the specific objectives of the investigation in the first page that plaintiffs leave out. These stated objectives confirm that I never instructed anyone at Oracle to alter or destroy any historical records or evidence. To the contrary, I explained to my team that the purpose of this investigation was to gather and analyze historical data, *not* to destroy it.

10. *None* of these instructions was (or is) intended by me, either directly or indirectly, to "alter" or "delete" any historical transactions or records. Instead, the process is solely intended to make sure that cash receipts are properly moved to the account where they belong. Any such movements will clearly be reflected by an audit trail that will preserve the history of these and earlier transactions.

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 312668

11.     Plaintiffs' witnesses also are wrong when they claim that either I or anyone else at Oracle instructed personnel to alter or delete historical transaction notes on Oracle's A/R system. To begin with, no such instruction has been given to any employee involved in the project or otherwise. That is not to say, though, that comment entries might not be changed to ensure that the comments accurately reflected the current status of the transaction in question.

12.     More importantly, however, *all* of the 12601 transactions (from the original cash receipt transactions through the final positive miscellaneous receipt transactions) from August 2000 up through the period immediately preceding the recent 12601 project have been electronically *preserved*, including *all* of the most recent comments associated with those transactions. We ran a report of all 12601 transactions from August 2000 through October 2002 before we began our project. These transactions, including all comments associated with those transactions, have been fully and independently preserved to this day. Accordingly, plaintiffs' assertion that any electronic "evidence" has been destroyed in connection with our ongoing project is categorically *false*.

13.     It is also important to point out that the "comments" that plaintiffs' witnesses refer to have absolutely no accounting significance whatsoever. As explained above, if any 12601 transactions are to be modified as a result of our ongoing project, complete accounting entries will be created that preserve a full audit trail, and will not affect any historical transactions whatsoever.

14.     Plaintiffs also claim that one of the "methods" that Oracle currently is using to address the cash receipt reserve issue is to "erase the debit memo's all together." (Keatly Decl. ¶ 18) That is also false. It is impossible for any user of the Accounts Receivable System to alter or erase source documentation or accounting entries that have already posted to the general ledger. Even if a transaction is reversed, there will always be a clear audit trail.

15.     Finally, I would like to point out a number of factual errors in the statements contained in Mr. Keatly's Declaration. First of all, I do not, and have never, reported directly to Jennifer Minton. See App. p. 1, ¶ 1, p. 3, ¶ 1. During the past few years I have reported to Thomas Williams, Oracle's Vice President of North America Finance (and who is certainly *not*

3                    DECLARATION OF MICHAEL QUINN
                     CASE NO. C-01-0988-MJJ

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 312669

1  a consultant (see App. p. 1 ¶ 7)). Mr. Williams in turns reports directly to Jennifer Minton and
2  has done so for the last four years.

4

DECLARATION OF MICHAEL QUINN
CASE NO. C-01-0988-MJJ

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

NDCA-ORCL 312670

1 | I declare under penalty of perjury under the laws of the United States of America that
2 | the above is true and correct and that this Declaration was executed on November 14, 2002 in
3 | Sao Paulo, Brazil.

*[signature]*
MICHAEL QUINN

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 312671