# Exhibit 490

```
 1  MAYER, BROWN, ROWE & MAW
    Donald M. Falk (SBN 150256)
 2  555 College Avenue
    Palo Alto, California 94306
 3  Telephone:  (650) 331-2030
    Facsimile:  (650) 331-2060
 4
    MAYER, BROWN, ROWE & MAW
 5  Steven O. Kramer (SBN 79626)
    Christopher P. Murphy (SBN 120048)
 6  350 South Grand Avenue, 25th Floor
    Los Angeles, California 90071-1503
 7  Telephone:  (213) 229-9500
    Facsimile:  (213) 625-0248 Attorneys for Defendants ORACLE CORPORATION,
 8  LAWRENCE
    J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON
 9
    ORACLE CORPORATION
10  Dorian Daley (SBN 129049)
    Lauren G. Segal (SBN 150826)
11  500 Oracle Parkway
    Mailstop 5OP7
12  Redwood City, California 94065
    Telephone:  (650) 506-5200
13  Facsimile:  (650) 506-7114

14  Attorneys for Defendant ORACLE CORPORATION

15                  UNITED STATES DISTRICT COURT

16       NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

17

18  IN RE ORACLE CORPORATION          Case No. C-01-0988-MJJ
    SECURITIES LITIGATION             (Consolidated)
19
                                      DECLARATION OF GREG MYERS
20

21
                                      Date:   N/A
22                                    Time:   N/A
    This Document Relates To:         Place:  Ctrm. 11
23                                            Honorable Martin J. Jenkins,
    ALL ACTIONS.                              United States District Judge
24
```

DECLARATION OF GREG MYERS
CASE NO. C-01-0988-MJJ

CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER

NDCA-ORCL 312662

I, Greg Myers, declare as follows:

**Introduction**

1. I am Senior Manager, Accounts Receivable, Global Process Owner, at Oracle Corporation. I have been employed at Oracle since August 11, 1997.

2. I make this Declaration in opposition to the Plaintiffs' Ex Parte Application for an Order Directing Oracle to Preserve Evidence and Granting Particularized Discovery.

3. In 2000, I reported to Michael Quinn (as I still do today) and was involved in the conversion of Oracle's accounting systems over to Oracle's new 11i applications. As part of that conversion, it was determined that the previous functionality of assigning "on account" notations to unassigned cash receipts, once they were to be applied, was no longer necessary, and it was thus required that all existing "on account" flags that had accumulated in our Unapplied Cash Account (25005) be reversed through a series of offsetting debit/credit transactions within Account 25005, and thus would have no impact on Oracle's financial statements. I was assigned by Mr. Quinn to serve as Project Manager for this project.

4. Earlier this year, I was also involved in an investigation into the disposition of unassigned cash receipts that Oracle's collection staff had, over time, assigned to an accounts receivable reserve account known as Account 12601. Mr. Quinn serves as project manager for this project, and I am involved in an advisory role, helping to facilitate the project by providing data and training assistance.

5. At the present time, it is difficult for me to fully respond to the false allegations contained in plaintiffs' Ex Parte Application, due to the fact that I am traveling on business in Ireland, and have been out of the country ever since plaintiffs' Application was filed. I can, however, categorically deny right now that neither I nor anyone else at Oracle to the best of knowledge, has altered, deleted or destroyed any evidence. If given the opportunity, I will be most anxious to fully respond and dispel each of plaintiffs' false accusations once and for all. Due to the press of time, however, I will focus my testimony solely upon plaintiffs' false accusation that Oracle has engaged in, or is likely to engage in, the destruction of evidence.

DECLARATION OF GREG MYERS
CASE NO. C-01-0988-MJJ

**CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER**

NDCA-ORCL 312663

6. Plaintiffs accuse Oracle of "destroy[ing] evidence critical to plaintiffs' claims" in connection with our recent investigation to determine the proper source and disposition of cash receipts previously allocated by the collections staff into Oracle's accounts receivable reserve account. These accusations are completely *false*. At no time have I ever directed anyone, nor have I ever been directed, to alter or destroy any Oracle records or evidence whatsoever. To my knowledge, no evidence has been altered or destroyed.

7. Our ongoing investigation into the origin and disposition of cash receipts contained in Oracle's Accounts Receivable (A/R) reserve account (known as Account 12601) has nothing to do with the approximately 46,000 debit memo transactions that occurred on November 17, 2000, and that plaintiffs refer to in their Application. Nor will our ongoing work in any way "alter" transactions that took place in the past. It is certainly true that *new* accounting entries likely will be made in some cases, but such new entries will leave a clear and traceable audit trail that will preserve the accounting history relating to these transactions.

8. Plaintiffs state in their Ex Parte Application that "the purpose of the plan was to direct cash collections personnel and accounts receivable personnel to clean up the debit memos that were created in November 2000, plus any debit memo's created between 1998 to the present which were above $15000." (Pg 4 ll. 16-17) This is entirely untrue.

9. Plaintiffs' witnesses also are wrong when they claim that Oracle has instructed its personnel to alter or delete historical transaction notes on Oracle's AR system. To begin with, no such instruction has been given to any employee involved in the project or otherwise. That is not to say, though, that comment entries might not be changed to ensure that the comments accurately reflected the current status of the transaction in question.

10. More importantly, *all* of the 12601 transactions (from the original cash receipt transactions through the final positive miscellaneous receipt transactions) from August 2000 up through the period immediately preceding the recent 12601 project have been electronically *preserved*, including *all* of the most recent comments associated with those transactions. Accordingly, plaintiffs' assertion that any electronic "evidence" has been destroyed in connection with our ongoing project is categorically *false*.

2           DECLARATION OF GREG MYERS
                       CASE NO. C-01-0988-MJJ

**CONFIDENTIAL PURSUANT
TO PROTECTIVE ORDER**

**NDCA-ORCL 312664**

11. It is also important to point out that the "comments" that plaintiffs' witnesses refer to have absolutely no accounting significance whatsoever. As explained above, if any 12601 transactions are to be modified as a result of our ongoing project, complete accounting entries will be created that preserve a full audit trail, and will not affect any historical transactions whatsoever.

Plaintiffs also claim that one of the "methods" that Oracle currently is using to address the cash receipt reserve issue is to "erase the debit memo's all together." (Keatly Decl. ¶ 18) That is simply false. It is impossible for any user of the Accounts Receivable System to alter or erase source documentation or accounting entries that have already posted to the general ledger. Even if a transaction is reversed, there will always be a clear audit trail in the accounting and in the Application. Thus, Mr. Keatly's suggestion (at ¶ 13 of his Declaration) that Oracle has directed personnel in the collections department to alter electronic records so that it will appear as though the unapplied cash had not been booked as revenue in November 2000, is utterly absurd.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that this Declaration was executed on November 14, 2002 in Dublin, Ireland.

GREG MYERS

3

DECLARATION OF GREG MYERS
CASE NO. C-01-0988-MJJ

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

NDCA-ORCL 312665