LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: sean.berkowitz@lw.com

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE
J. ELLISON, JEFFREY O. HENLEY and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, CA 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-01-0988-SI (JCS) (Consolidated)<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF BJORN I. STEINHOLT**<br><br>**Judge:** **Honorable Susan Illston**<br>**Date:** **January 9, 2009**<br>**Time:** **9:00 a.m.** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

    A. Steinholt's Loss Causation Opinions Are Unhelpful And Unreliable ................................................................................................................ 3

        1. Steinholt Performed No Analysis To Determine Whether The March 1 Announcement Revealed A "Relevant Truth" (No "Corrective Disclosure") ........................................................... 3

        2. Steinholt's Regression Analysis Failed To Eliminate Industry Forces (No Admissible "Event Study") ..................................... 6

        3. Steinholt Failed To Eliminate Company-Specific, Non-Fraud-Related Information (No "Disaggregation") .................................. 9

    B. Steinholt's Damages Analysis Cannot Be Reconciled With *Dura* ....................... 11

        1. Constant Percentage Inflation Does Not Comport With *Dura* .................................................................................................. 11

        2. Steinholt's Section 20A Damages Do Not Comport With *Dura* .................................................................................................. 14

III. CONCLUSION .................................................................................................................. 15

i

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page**

## CASES

*Brodsky v. Yahoo!, Inc.*,
    No. C 08-02150 CW, 2008 WL 4531815 (N.D. Cal. Oct. 7, 2008) ....................................... 9

*Carpe v. Aquila, Inc.*,
    No. 02-0388-CV-W-FJG, 2005 WL 1138833 (W.D. Mo. Mar. 23, 2005)............................ 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................................. 3

*Cicero v. Borg-Warner Automotive, Inc.*,
    163 F. Supp. 2d 743 (E.D. Mich. 2001)................................................................................ 13

*DSU Med. Corp. v. JMS Co., Ltd.*,
    296 F. Supp. 2d 1140 (N.D. Cal. 2003) .......................................................................... 13, 15

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 579 (2005)........................................................................................................ passim

*Evans v. Gen. Motors Corp.*,
    459 F. Supp. 2d 407 (D. Md. 2006) ...................................................................................... 15

*Gordon Partners v. Blumenthal*,
    No. 02 Civ. 7377, 2007 WL 1438753 (S.D.N.Y. May 16, 2007)................................... 3, 6, 9

*Green v. Occidental Petroleum Corp.*,
    541 F.2d 1335 (9th Cir. 1976) ......................................................................................... 11, 12

*In re Broadcom Corp. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12, 2005)............................................. 12, 13

*In re Daou Systems, Inc. Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005) ...................................................................................... 5, 11, 14

*In re Enron Corp Sec., Deriv. & ERISA Litig.*,
    No. H-01-3624, 2008 U.S. Dist. LEXIS 84656 (S.D. Tex. Sept. 8, 2008)........................... 12

*In re Exec. Telecard, Ltd. Secs. Litig.*,
    979 F. Supp. 1021 (S.D.N.Y. 1997)........................................................................................ 6

*In re Imperial Credit Sec. Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) .................................................................................. 6

*In re JDS Uniphase Corp.*,
    No. 02-01486CW (N.D. Cal. Oct. 9, 2007) ......................................................................... 13

*In re Omnicom Group, Inc. Sec. Litig.*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2008)........................................................................... 2, 3, 9

ii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

*In re Redback Networks, Inc., Sec. Litig.*,
    No. C 03-5642, 2007 WL 963958 (N.D. Cal. March 30, 2007) ............................................ 11

*In re SEC v. MacDonald*,
    699 F.2d 47 (1st Cir. 1983) ............................................................................................... 15

*In re Williams Sec. Litig.*,
    496 F. Supp. 2d 1195 (N.D. Okla. 2007) ..................................................................... passim

*In re Zonagen Sec. Litig.*,
    322 F. Supp. 2d 764 (S.D. Tex. 2003) .......................................................................... 9, 11

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir. 2007) ........................................................................................ 2, 6, 9

*McCabe v. Ernst & Young, LLP*,
    494 F.3d 418 (3d Cir. 2007) ................................................................................................. 3

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*,
    No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164 (D. N.J. June 30, 2005) ...................... 3

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................................. 3, 5, 9, 11

*Nursing Home Pension Fund v. Oracle Corp.*,
    2006 U.S. Dist. LEXIS 94470 (N.D. Cal. Dec. 20, 2006) ................................................. 10

*Oscar Priv. Equity Invest. v. Allegiance Telecom., Inc.*,
    487 F.3d 261 (5th Cir. 2007) ............................................................................................... 9

*Ryan v. Flowserve*,
    245 F.R.D. 560 (N.D. Tex. 2007) .............................................................................. 3, 4, 5

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
    173 F.R.D. 675 (D. Kan. 1997) ......................................................................................... 13

**OTHER AUTHORITIES**

David I. Tabak and Frederick C. Dunbar,
    "Materiality and Magnitude: Event Studies in the Courtroom," *Litigation
    Services Handbook: The Role of the Financial Expert* (3d ed. 2001) .................................. 9

Federal Judicial Center, *Reference Manual on Scientific Evidence* (2d ed. 2000) ....................... 3

**RULES**

Fed. R. Evid. 702 ............................................................................................................................ 9

iii

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

I.  INTRODUCTION

Plaintiffs' purported loss causation and damages expert, Bjorn I. Steinholt, has not offered any opinions that will assist the trier of fact in determining whether – and to what extent – Oracle's stock drop was caused by fraud.[1] First, to establish loss causation, a securities fraud plaintiff must prove that the market learned – either directly or indirectly – of a truth that was concealed by the alleged fraud (*i.e.*, a "relevant truth").  DMSJ at 40-48.  But there is *no* evidence that Oracle's March 1, 2001 announcement, which precipitated the stock drop, revealed *any* fact concealed by the alleged "fraud," nor is there any evidence that the market recognized a relationship between the announcement and the alleged "fraud."  *Id.*; *see also* 20A Opp. at 34-43; DMSJ Reply at 6-14.  Steinholt offers nothing on this issue.[2]  This failure of proof on the threshold issue of "corrective disclosure" ends the loss causation analysis and entitles Defendants to summary judgment – even before considering the reliability of Steinholt's analysis under *Daubert*.

Even if Plaintiffs could establish that the March 1 disclosure revealed a "relevant truth" (they cannot), Plaintiffs still must establish that the March 2, 2001 stock drop was *caused* by the revelation (direct or otherwise) of this "relevant truth," as opposed to market or industry forces, or other company-specific, non-fraud-related factors.  At a minimum, this requires Plaintiffs to proffer a competent expert witness event study (regression analysis), which eliminates the effects of *both* market *and* industry forces on Oracle's stock price.  Steinholt's "event study" fails to do so.  Steinholt admittedly performed a regression analysis on a market index only – which did not

---

[1] Steinholt's Reports and deposition transcript were attached as Exhibits A, B and C, respectively, to the previously-filed Tate Declaration (Dkt. No. 1200).  *See* Mot. at 1 n.1.  Professor James' Reports are attached as Exhibits 1 and 2 to the October 20, 2008 Declaration of Christopher James.  Additional exhibits ("Ex.") refer to the Coyle Declaration, filed concurrently herewith.

[2] Steinholt did not attempt to determine whether the March 1 announcement disclosed new Oracle-specific information that was concealed by the alleged fraud in this case.  Nowhere is this more apparent than in Plaintiffs' Opposition briefs, where they set forth their latest (albeit legally unsupportable) theory of loss causation, without citing to Steinholt's Reports, testimony or opinions.  For purposes of his work, Steinholt merely assumed that a "causal connection" existed, and that Plaintiffs would prove it.  Report at ¶ 7; Rebuttal Report at ¶ 13; Steinholt Depo. at 54:13-24.

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  (and could not) eliminate that portion of Oracle's stock price decline caused by forces affecting
2  the entire enterprise software industry.
3        Finally, even if Steinholt had performed a proper event study and had isolated the portion
4  of Oracle's stock price decline that related only to the disclosure of company-specific
5  information (which he did not), he failed to eliminate that portion of the stock drop that was
6  caused by the disclosure of company-specific information *unrelated* to the alleged fraud.  This
7  process is called "disaggregation" and is a required step in loss causation analysis.  *Lattanzio v.*
8  *Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007); *In re Omnicom Group, Inc. Sec.*
9  *Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008).  It is necessary to ensure that, consistent with
10  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 344 (2005), damages are limited to
11  disclosure of the "relevant truth."  Instead of performing this required analysis, Steinholt simply
12  assumed that 100% of the March 2 residual stock drop was attributable to disclosure of the
13  alleged fraud, without considering whether Oracle's earnings miss caused the market to
14  reevaluate Oracle's future prospects for reasons having nothing to do with Plaintiffs' allegations.
15  In the end, Steinholt's work on loss causation establishes nothing more than a statistically
16  significant stock price decline on March 2, 2001 – a fact that is both undisputed and insufficient
17  to establish loss causation.
18        Steinholt's damages analyses fare no better.  Steinholt's use of a "constant percentage
19  inflation ribbon" to measure alleged damages improperly permits investors to recover for stock
20  price declines occurring *before* the alleged corrective disclosure (which cannot be causally
21  related to the fraud) in amounts that *greatly exceed* the residual stock drop on March 2, 2001.
22  This flatly contravenes *Dura*.  With respect to Steinholt's Section 20A damages analysis,
23  Plaintiffs similarly make no attempt to reconcile with *Dura* Steinholt's inclusion of losses that
24  cannot be attributed to the alleged fraud (*i.e.*, his "profits gained" damages) and losses that
25  occurred long after the alleged corrective disclosure (*i.e.*, his "losses avoided" damages).  On the
26  whole, Plaintiffs' Opposition reads as if *Dura* never happened.
27        For each of these reasons, Steinholt's opinions and testimony on loss causation and
28  damages are unreliable, irrelevant and unhelpful to the trier of fact, and should be excluded.

2

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

## II. ARGUMENT

### A. Steinholt's Loss Causation Opinions Are Unhelpful And Unreliable

Plaintiffs concede that they bear the burden of establishing loss causation on their Section 10(b) claim. Opp. at 5. To carry this burden, Plaintiffs must demonstrate that the March 2 stock drop was caused by the market learning of and reacting to the disclosure of a "relevant truth" – *i.e.*, new company-specific facts that had been concealed by the alleged fraud. *Dura*, 544 U.S. at 343; *see also Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008). Steinholt's opinions and testimony in this case come nowhere close to establishing loss causation, and thus, are of no help to the trier of fact. *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1262 n.48 (N.D. Okla. 2007) (the "'fit' prong of the *Daubert* test and the helpfulness standard of Rule 702 require courts to exclude a plaintiff's expert testimony that does not satisfy the plaintiff's substantive burden of proof on an issue.") (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence*, at 22 (2d ed. 2000)).

### 1. Steinholt Performed No Analysis To Determine Whether The March 1 Announcement Revealed A "Relevant Truth" (No "Corrective Disclosure")

Whether Oracle's March 1 disclosure revealed a "relevant truth" as required under *Dura* is an issue for the Court to decide on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986) (summary judgment appropriate where nonmovant fails to set forth sufficient evidence to establish triable issue on element on which it bears the burden of proof); *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 1438753, at *1-2 (S.D.N.Y. May 16, 2007) (granting summary judgment where plaintiffs failed "to show whether any loss (and if so how much) was caused by defendants' conduct as oppose to other market factors"); *see also McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 427 n.4 (3d Cir. 2007); *Omnicom*, 541 F. Supp. 2d at 554; *Ryan v. Flowserve*, 245 F.R.D. 560, 578-82 (N.D. Tex. 2007); *Williams*, 496 F. Supp. 2d at 1264; *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, No. 94-5522 (RBK), 2005 U.S. Dist. LEXIS 32164, at *31-34 (D. N.J. June 30, 2005).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1   In both their Opposition to this *Daubert* Motion and their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs articulate their latest loss causation theory in an effort to link the alleged fraud to the March 1 announcement. Opp. at 6-8.[3] But in doing so, Plaintiffs never reference Steinholt's analysis or opinions, and instead quote from press and analyst reports that Steinholt never considered. *Compare id. with* Appendix to the Expert Report of Bjorn I. Steinholt *and* Steinholt Rebuttal Exs. A & B. This is because Steinholt did not attempt to offer an opinion on this issue; instead, he simply assumed that the required "causal connection" existed, and that Plaintiffs would prove it. Opp. at 5 ("For purposes of his analysis, Steinholt assumed that plaintiffs will prove their claims."); *id.* at 7 ("Plaintiffs have pled and *will prove*, as noted by Steinholt, that these disclosures were exactly the opposite of false affirmations during the Class Period[.]") (emphasis added).

Although Plaintiffs cite Steinholt's Report for the proposition that "[t]he March 1, 2001 event substantially revealed the truth regarding Oracle's true performance" (Opp. at 9 (citing Report at ¶¶ 42-44)), this clearly does not establish loss causation. In fact, this is *the exact same opinion* that was considered and rejected in another recent case that is factually analogous and directly on point. In *Flowserve*, 245 F.R.D. at 573-74,[4] Steinholt opined that a stock drop following two press releases was caused by the alleged fraud, because the press releases revealed the company's "true financial condition." *Id.* at 573. In rejecting this opinion and granting summary judgment for defendants, the court observed that the "noticeable flaw" in Steinholt's analysis was his "central assumption that the alleged fraud and the [disclosures precipitating the stock drop] are, in fact related[.]" *Id.* The "true financial condition" theory – *like Steinholt's "true performance" theory in this case* – failed to establish loss causation because "[u]nder this logic, the relatedness test set forth in *Dura* is optional." *Id.* Indeed, "[r]ather than follow

---

[3] As set forth in Defendants' Reply in Support of Motion for Summary Judgment at 5-14, Plaintiffs' new loss causation arguments fail as matter of law.

[4] In *Flowserve*, as in this case: (i) there was no direct disclosure of any alleged fraud; (ii) the sole evidence on loss causation were the opinions and testimony of Steinholt; (iii) Steinholt assumed that plaintiffs would furnish a link between the disclosure and the alleged fraud; (iv) analyst commentary did not attribute the miss to the alleged fraud; and (v) competitors of both companies suffered missed earnings and similar fates.

4

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

precedent, a plaintiff … with debatable evidence of fraud can pick the largest stock drop irrespective of the actual reason and still relate the fraud because the stock drop is nevertheless a revelation of the company's true financial health." *Id.*[5]

Steinholt's "true performance" opinion in this case fails for precisely the same reasons. It is insufficient as a matter of law to claim that a disclosure revealed a company's "true performance" because this does not establish that the pre-disclosure stock price was inflated by an alleged fraud, nor does it show that the post-disclosure price decline was caused by revelation of that alleged fraud. In this sense, to be relevant for loss causation purposes, Steinholt was required to demonstrate not just that the March 1 announcement revealed Oracle's "true performance" (or "true financial condition"), but *also* that it revealed the falsity of Defendants' previous statements (*i.e.*, the "relevant truth"). Steinholt's "true performance" theory here – like his "true financial condition" theory in *Flowserve* – fails entirely to provide this required "causal connection," *Flowserve*, 245 F.R.D. at 573, and ignores the crucial distinction drawn by the Supreme Court in *Dura* between stock drops caused by disclosure of the "relevant truth" and stock drops caused by unrelated market and industry forces. *Dura*, 544 U.S. at 342-44; *Metzler*, 540 F.3d at 1063. Because there is no record evidence that the market understood the March 1 announcement as revealing a "relevant truth," Defendants are entitled to summary judgment regardless of the competency or reliability of Steinholt's event study (regression analysis).[6]

---

[5] The *Flowserve* decision is entirely consistent with Ninth Circuit law on loss causation. *Metzler*, 540 F.3d at 1064 ("So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statements precipitating a loss as a coded message revealing the fraud…. Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited – that loss causation is established through an allegation that a stock was purchased at an inflated price."); *In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 1006, 1021 (9th Cir. 2005) (plaintiffs could not recover for losses predating an August 1998 corrective disclosure because the "relevant truth" had not yet become "generally known.").

[6] Plaintiffs contend that "Defendants do not … explain … how on the one hand they contend the March 1, 2001 disclosure was material new information concerning 11i and the economy causing a statistically significant stock price decline but on the other hand claim that the disclosure revealed nothing relevant about the misrepresentations alleged." Opp. at 9. Plaintiffs mischaracterize the very passage they quote in their Opposition. Professor James did not opine that the March 1 announcement contained material new information concerning 11i; instead, as the passage Plaintiffs quote makes clear, Professor James said that the announcement provided the market with "material new information regarding both the applications *business* as well as Oracle's other businesses and *how they were faring in the then current economy*." *Id.* (quoting Williams Decl. Ex. O at 137:13-18, 137:22-138:1) (emphasis added). *See Metzler*, 540 F.3d at

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

**2.    Steinholt's Regression Analysis Failed To Eliminate Industry Forces (No Admissible "Event Study")**

The Supreme Court has acknowledged that a stock drop may result from non fraud-related market or industry forces, such as "changed economic circumstances, changed investor expectations, new industry-specific facts, conditions, or other events[.]" *Dura*, 544 U.S. at 342-43. Thus, even if Plaintiffs could show that the March 1 disclosure revealed a "relevant truth," they nevertheless were required to distinguish the stock price effect of the alleged fraud from this "tangle of [other] factors" that affect a stock's price. *Id.* at 343; *see also Lattanzio*, 476 F.3d at 158; *In re Imperial Credit Sec. Litig.*, 252 F. Supp. 2d 1005, 1014-15 (C.D. Cal. 2003). At a minimum, this requires Plaintiffs to proffer a competent event study that accounts for *both* market *and* industry forces unrelated to the alleged fraud. *Dura*, 544 U.S. at 343; *see also Gordon Partners*, 2007 WL 1438753, at *1-2; *Williams*, 496 F. Supp. 2d at 1264; *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, 2005 WL 1138833, at *4-5, *8 (W.D. Mo. Mar. 23, 2005); *Imperial,* 252 F. Supp. 2d at 1014-15; *In re Exec. Telecard, Ltd. Secs. Litig.*, 979 F. Supp. 1021, 1026-28 (S.D.N.Y. 1997).

Plaintiffs do not deny that in performing his regression analysis, Steinholt relied *only* upon a market index (the NASDAQ-100). Opp. at 14.[7] Instead, Plaintiffs offer three arguments in an attempt to justify this fundamental error. First, Plaintiffs cite the declaration of Defendants' expert at the class certification stage, Stefan Boedeker, in which Boedeker noted that Oracle's stock price tracked the NASDAQ-100 index during the Class Period. *Id.* As an initial matter, Plaintiffs raised this same argument last year during the original hearing on

---

1063 (loss causation requires "that the market learned of and reacted to this fraud, as opposed to merely reacting to reports of the defendant's poor financial health generally").

[7] Plaintiffs mischaracterize Defendants' argument regarding this fundamental deficiency in Steinholt's event study. *See* Opp. at 14 (claiming that Defendants "argue that the NASDAQ index was not the appropriate index to use in the performance of an event study."). Opp. at 14. The fact that Steinholt attempted to eliminate *market* forces through a regression on the NASDAQ-100 is *not* the issue. The fact that this was *all* Steinholt did *is* the issue. Oracle's March 1, 2001 announcement was the harbinger of a sudden and unexpected downturn in the entire enterprise software industry. DMSJ at 41-42. Steinholt's failure to account for and eliminate these industry-specific forces – which impacted *all* of Oracle's competitors – means that he did not isolate that portion of the residual price decline that was caused by the disclosure of new company-specific facts.

6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1   Defendants' Motion for Summary Judgment, and Judge Jenkins flatly rejected it – noting that the
2   question of whether Plaintiffs could establish loss causation on summary judgment was not at
3   issue during class certification proceedings.  Ex. 1 at 192:14-193:4 ("[T]he class certification
4   motion was not an explication of whether you could meet the issue of los[s] causation on a
5   record in a summary judgment context.").  Moreover, Boedeker's declaration has nothing to do
6   with the reliability of Steinholt's regression analysis; Boedeker *never* said that a regression on
7   the NASDAQ-100 would remove industry effects or that the NASDAQ-100 was a proper index
8   of Oracle's industry.  Williams Decl. at Ex. J.[8]  Boedeker simply used the NASDAQ-100 to
9   illustrate that Oracle's stock price moved *during* the Class Period for reasons unrelated to the
10  fraud because Plaintiffs had alleged losses stemming from the decline in Oracle's stock price
11  from its *intra-Class Period high* of $35 (a gambit they now have abandoned).  Williams Decl.
12  Ex. J, at ¶ 5 (citing RSAC at ¶ 75).  In any event, Steinholt's use of the NASDAQ-100 market
13  index did *not* eliminate the pervasive effects of industry forces on Oracle's stock price decline,
14  which easily can be seen by comparing the NASDAQ-100 return (-4.4%) to the average return of
15  Oracle's competitors (-12.35%).  *See* Mot. at 6.  And, the fact that *all* of Oracle's competitors
16  suffered stock price declines on March 2 demonstrates that the market was reacting to new
17  information specific to the industry (which Steinholt failed to consider).

18          Second, Plaintiffs' cite *The Econometrics of Financial Markets* for the proposition that a
19  multi-factor model in an event study "produces limited, if any, analytical gains."  Opp. at 15.
20  However, the "limited … gains" to which the authors refer pertain to the threshold for a
21  determination of statistical significance for a particular return.  *See* Williams Decl. Ex. S, at 155-
22  56 (stating that using a multi-factor model provides "*little reduction in the variance of the*
23  *abnormal return*") (emphasis added).  But Defendants do not dispute that the March 2 stock
24  price decline was statistically significant.  Indeed, Defendants' loss causation expert reached the
25  same conclusion.  James Report ¶ 49.  Instead, the critical issue is whether, and to what extent,

---

[8]  In fact, Boedeker opined that the NASDAQ index could be used to "control for *market-driven* price movements" during the Class Period that were "unrelated to the alleged fraud."  Williams Decl. Ex. J, at ¶¶ 6, 8 (emphasis added).

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

the March 2 stock drop was caused by fraud, as opposed to industry or other non fraud-related factors. Steinholt's analysis offers no guidance on this issue. *Dura*, 544 U.S. at 342-43.

Finally, Plaintiffs contend that Steinholt's analysis "did account for and eliminate both industry and market factors," because his regression on the NASDAQ-100 purportedly eliminated *both* forces, and in any event, six of the nine competitors identified by Defendants' loss causation expert are listed in the NASDAQ-100. Opp. at 15-16. As an initial matter, Steinholt admitted in his Report that he used the NASDAQ-100 to remove market – *but not industry* – effects. Report ¶ 53 ("For the purpose of measuring the *market* effect, I used the NASDAQ-100 index.") (emphasis added). More importantly, if a regression on the NASDAQ-100 market index – standing alone – could eliminate both market *and* industry forces in this case, one would expect the March 2 returns on the NASDAQ-100 and on an index of Oracle's competitors to be the same (or at least similar), which they clearly were not. *See supra* at 7. Plaintiffs' second argument – that Steinholt accounted for industry forces because six out of the nine competitors whose stock prices declined on March 2, 2001 are included in the NASDAQ-100 – is nonsense. The inclusion of six competitors, in "a capitalization-weighted index of the 100 largest and most active non-financial domestic and international companies listed on the NASDAQ" (Opp. at 15) – including scores of non-competitors like EBay, Bed, Bath & Beyond and Starbucks – does *not* isolate the stock price effects of forces specific to the enterprise software industry.[9] This is why Steinholt was required separately to account for the industry factors that impacted the stock prices of Oracle and *all* its competitors. *See* Mot. at 5-7.[10]

---

[9] In fact, the weights of the six competitors in the NASDAQ-100, as of March 2, 2001, were: (1) Ariba, 0.268%; BEA Systems, 0.915%; i2, 0.852%; MSFT, 8.265%; PSFT, 0.867%; and Siebel 1.443%. *See* Ex. 2.

[10] Plaintiffs also argue that Steinholt's regression analysis has a higher "r-squared" than the regression model used by Defendants' loss causation expert. Opp. at 16, n.13. However, a higher r-squared number means only that the NASDAQ-100 index used by Steinholt *generally* better tracks Oracle's stock returns over the control period; it does not mean that a regression on a market index eliminates the impact of industry influences, as *Dura* requires, because on a given day (like March 2, 2001), industry factors may have a much greater impact on a company's stock price movement. In fact, one of the authorities Steinholt cited in his Rebuttal Report explained that in circumstances such as those presented here, simply choosing the index with the highest r-squared may not suffice: "There are various reasons for not simply choosing the index with the strongest statistical properties. One would be if it were known that there was a change in the operating characteristics or competitive environment facing members of one index between the

8

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    In sum, because Steinholt failed to factor out industry-specific forces, he cannot
2 determine – as he must – the extent to which the March 2 stock drop was caused by "changed
3 economic circumstances, changed investor expectations, new industry-specific or firm-specific
4 facts, conditions, or other events" unrelated to the alleged fraud. *Dura*, 544 U.S. at 343*; see also*
5 *Metzler*, 540 F.3d at 1063*; Brodsky v. Yahoo!, Inc.*, No. C 08-02150 CW, 2008 WL 4531815, at
6 *12 (N.D. Cal. Oct. 7, 2008); *Omnicom*, 541 F. Supp. 2d at 554; *Gordon Partners*, 2007 WL
7 1438753, at *1-2.  His failure in this regard is grounds for exclusion under *Daubert*, and
8 independently entitles Defendants to summary judgment.  *Williams*, 496 F. Supp. 2d at 1267 ("In
9 securities litigation, non-fraud causes of a loss in value are 'obvious alternative explanations.'
10 Because Dr. Nye fails to address the alternative explanations as required by the law of loss
11 causation, his [first damage scenario] will be excluded.") (*quoting* Fed. R. Evid. 702, Advisory
12 Committee notes to 2002 amendments).

### 3. Steinholt Failed To Eliminate Company-Specific, Non-Fraud-Related Information (No "Disaggregation")

   Plaintiffs also were required to eliminate (or disaggregate) that portion of the March 2 stock drop that was caused by Oracle-specific information unrelated to the alleged frauds.  Mot. at 1, 7; *Lattanzio*, 476 F.3d at 158 (plaintiff must "ascribe some rough proportion of the whole loss to [defendant's] misstatements"); *see also Omnicom*, 541 F. Supp. 2d at 554; *In re Zonagen Sec. Litig.*, 322 F. Supp. 2d 764, 781-82 (S.D. Tex. 2003); *Oscar Priv. Equity Invest. v. Allegiance Telecom., Inc.*, 487 F.3d 261, 271 (5th Cir. 2007).  For instance, market analysts attributed Oracle's earnings miss (and the loss) – not to any alleged fraud – but to customers' decisions to delay purchases in light of *changed* economic circumstances.  James Report at Ex. 6, pp. 27-30.  Rather than consider this alternative, Steinholt simply assumed, without any analysis, that 100% of Oracle's residual stock price drop was related to the alleged fraud.  Steinholt Depo. at 179:25-180:13.  Steinholt conceded that there was no basis for this assumption because the Oracle-specific portion of the stock drop could be attributed to non-fraud factors.  *Id.* at 42:5-18,

---

estimation and event windows."  David I. Tabak and Frederick C. Dunbar, "Materiality and Magnitude: Event Studies in the Courtroom," *Litigation Services Handbook: The Role of the Financial Expert* (3d ed. 2001) at n.27 (cited in Rebuttal Report at ¶ 9, n.4).

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

104:4-106:8. Indeed, he acknowledged that his damages calculation could include losses that resulted because customers declined to purchase Suite 11i for reasons *wholly unrelated* to any fraud:

> Q: Did you perform any kind of quantitative analysis to eliminate the possibility that Oracle could have missed its forecasts for reasons other than the product failing to meet the representations the company made?
>
> A: The – I assume that Plaintiffs' allegations are true in this matter. Now could it have – could it be possible that all of a sudden the last few days of the quarter all of these customers decided, "Well, you know, it works, it's going to save us a ton of money but really we don't really want to save all of this money. We're not going to buy the product." Could that have happened? I haven't performed that analysis.

*Id*. at 42:5-18.

Furthermore, because he *assumed* that 100% of the residual loss was attributable to company-specific information related to the fraud, Steinholt admitted that his analysis does not permit a reasonable juror to determine what portion of the stock drop is attributable to fraud:

> Q. And you have concluded that 100 percent of the Oracle-specific information that caused that residual price drop was related to fraud; correct?
>
> A. This – yes. I mean, this damage analysis looks at the entire company-specific portion of that price decline as relating to the alleged fraud in this matter. Now, you know, after – as the trial progresses and so on, if somebody would attribute 50 percent to it or 20 percent or 75 percent, sure, you know, I mean, that's – you know, you can use different percentages and so on, depending how the facts shape up at the trial.

*Id.* at 179:25-180:24. Ironically, Steinholt admitted earlier in this case that eliminating company-specific information unrelated to the fraud is a critical step in determining the extent to which a loss is attributable to fraud, as opposed to non fraud-related factors:

> The first step of the damage analysis generally involves a so-called event study. … *The second step of the damage analysis is to analyze price movements attributable to company specific events in order to determine if these events are fraud related or non-fraud related.* Using the above methodology, economic losses attributable to the alleged fraud (or damages) can be separated from economic losses attributable to non-fraud related factors.

*Nursing Home Pension Fund v. Oracle Corp.*, No. C-01-0988-MJJ, 2006 U.S. Dist. LEXIS 94470, at *37 n.4 (N.D. Cal. Dec. 20, 2006) (emphasis added). Because Steinholt admittedly failed to disaggregate the effects of non-fraud-related, Oracle-specific information on the March

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  2 stock drop, his analysis cannot establish what portion (if any) of the stock price decline was
2  caused by the alleged fraud. *Dura*, 544 U.S. at 343. For this independent reason, his opinions
3  and analysis on loss causation should be excluded. *Williams*, 496 F. Supp. 2d at 1264; *Zonagen*,
4  322 F. Supp. 2d at 781-82.

### B. Steinholt's Damages Analysis Cannot Be Reconciled With *Dura*

Steinholt's damages opinions should be excluded because they cannot be squared with controlling precedent. Steinholt's damages opinions would allow Plaintiffs to recover losses that both pre- and post-date the alleged corrective disclosure, and therefore, were not (and could not have been) caused by the alleged fraud. Moreover, Steinholt's opinions would allow Plaintiffs to recover damages that greatly exceed the amount of the March 2 residual drop. In sum, Steinholt's damages theories would convert the securities laws into a partial downside insurance policy, precisely what *Dura* prohibits. *Dura*, 544 U.S. at 347-48.

#### 1. Constant Percentage Inflation Does Not Comport With *Dura*

Plaintiffs contend that Steinholt's use of a "constant percentage inflation" damages calculation (which they misleadingly dub "out of pocket" damages) is supported by the law and academic literature. Opp. at 11-13. However, Plaintiffs cite no post-*Dura* authority that would permit them to recover damages in excess of the March 2 residual stock drop – an unavoidable consequence of Steinholt's "constant percentage inflation" analysis. Mot. at 9. Plaintiffs similarly provide no authority that would allow them to recover for losses that were incurred *before* March 1 – and thus, could not possibly have been caused by the alleged fraud. *Id.* Contrary to Plaintiffs' arguments, post-*Dura* cases from the Ninth Circuit and the Northern District specifically have held that such damages are *not* recoverable. *Metzler*, 540 F.3d at 1063; *Daou*, 411 F.3d at 1026-27 (holding that losses sustained before the revelation of the relevant truth could not be recovered because they were not caused by the alleged fraud); *In re Redback Networks, Inc., Sec. Litig.*, No. C 03-5642, 2007 WL 963958, at *6 (N.D. Cal. Mar. 30, 2007) (limiting damages to those that occurred after the relevant truth began to come out).

Plaintiffs cite *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir. 1976), and argue that the measure of damages should be the difference between the inflated price and the

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  "true value" of the stock at the time of purchase (*i.e.*, "out of pocket" damages). Opp. at 10.[11]

2  To be clear, Judge Sneed's concurring opinion in *Green* does *not* endorse the "constant

3  percentage inflation" methodology. *Green*, 541 F.2d at 1341. Instead, Judge Sneed's opinion

4  suggests that, for purposes of certifying a class, damages may be calculated by determining the

5  difference between a *value* line and a *price* line. *Id.* at 1341-44. Indeed, the examples of "value

6  lines" provided by Judge Sneed do not contemplate a "constant percentage inflation" model. *See*

7  *id.* at 1345 n.6, n.7 (discussing an example in which inflation percentage fluctuates from 6.7%

8  [$10/$150], to 15% [$25/$165], to 3.4% [$5/$145]). More importantly, the *Green* case pre-dates

9  *Dura* by almost thirty years – and certainly cannot be relied upon in any way that conflicts with

10  *Dura*. *Compare Dura*, 544 U.S. at 342 ("[A]n inflated purchase price will not itself constitute or

11  proximately cause the relevant economic loss") *with Green*, 541 F.2d at 1345 ("The spread

12  between the price and value lines *at the date of purchase* provides the proper measure of

13  recovery.") (emphasis in original).[12]

14  Plaintiffs' argument that "courts in this district have allowed expert testimony on the

15  constant percentage theory" is baseless. Opp. at 2, 12. Most of the cases cited by Plaintiffs are

16  settlement allocation orders from courts outside the Northern District. Opp. at 11-13 (citing *In re*

17  *Enron Corp Sec., Deriv. & ERISA Litig.*, No. H-01-3624, 2008 U.S. Dist. LEXIS 84656, at *44

18  n.5 (S.D. Tex. Sept. 8, 2008) and *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS

19  41976, at *9) (C.D. Cal. Sept. 12, 2005)). Furthermore, neither the *Enron* nor the *Broadcom*

---

[11] Plaintiffs' reliance on pre-*Dura* authority to support Steinholt's damages calculations is hardly surprising, considering that Steinholt based his analysis upon a loss causation definition that cannot be squared with *Dura*. Report at ¶ 40 ("Loss causation exists whenever fraud leads the stock price to be higher than it should be, the buyer pays 'too much' for the stock, and the buyer is unable to recover that overpayment in the marketplace."). Steinholt's definition disregards the teachings of *Dura* and *Metzler*, which require securities fraud plaintiffs to establish that their losses were caused by the revelation of a "relevant truth." *Dura*, 544 U.S. at 342; *Metzler*, 540 F.3d at 1063.

[12] Plaintiffs' argument that Defendants' expert, Professor James, "agrees" that the "out-of-pocket method" is the "appropriate method of calculating damages" is demonstrably incorrect. Opp. at 11 (citing James Rebuttal at ¶ 43). As Professor James noted, assessing "out-of-pocket" damages might be *a step* toward arriving at recoverable damages, but "it cannot be the final step," because "[t]o calculate *recoverable* damages," it is necessary to determine "the appropriate portion of the dollar price decline(s) actually suffered when an alleged misrepresentation or omission is corrected." *Id.* (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1   decision endorses Steinholt's "constant percentage inflation" methodology. *Id.* In any event, as
2   settlement allocation decisions, these cases did not involve the admissibility or reliability of
3   expert opinions under *Daubert*; instead, they were decided under Rule 23's far less stringent
4   "fair and adequate" standard. *Compare Broadcom*, 2005 U.S. Dist. LEXIS 41976, at *6-7 (the
5   "allocation formula need only have a reasonable, rational basis, particularly if recommended by
6   experienced and competent counsel") *with DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d
7   1140, 1148 (N.D. Cal. 2003) ("Reliable methodology requires that the legal grounds used by an
8   expert to calculate damages be legally acceptable.").

   The only Northern District decision Plaintiffs *do* cite is a minute order (with no meaningful discussion) and a few pages of argument transcript from *In re JDS Uniphase Corp.*, No. 02-01486CW (N.D. Cal. Oct. 9, 2007). *See* Williams Decl., Exs. R & U. The minute order provides no support for Plaintiffs' arguments, and the transcript affirmatively undercuts them. The court in the *JDS* case correctly recognized that "constant percentage inflation" presented significant problems for a jury in determining damages under *Dura*. In fact, it appears from the transcript that the court allowed the expert to testify because he had an *alternative damages theory*, which Steinholt has not offered here. *See id.* at Ex. R at 129:4-10 (Court: "Can Dr. Hakala testify about how the jury could determine a dollar amount?" Counsel: "Yes. He's … put it as an alternate method." Court: "Well you'd better have him do that."); *see also id.* at 129:13-16 (noting that any testimony regarding constant percentage inflation "might end up being moot and the jury won't be instructed to consider that.").[13]

   Finally, unable to reconcile their damages analysis with *Dura*, Plaintiffs are forced to embrace the unsupported – and untenable – position that *Dura* is irrelevant to the issue of

---

[13] Plaintiffs also cite an article by Bradford Cornell and R. Gregory Morgan entitled "Using Finance Theory to Measure Damages in Fraud on the Market Cases" in the UCLA Law Review from June 1990. Opp. at 10-11. Like the cases upon which Plaintiffs primarily rely, this article pre-dates *Dura*. Moreover, even on its own terms the article provides that constant percentage inflation is appropriate *only* in cases involving mirror-image corrective disclosures, which Plaintiffs contend did not occur here. *Id.* at 3-4. Finally, the article was never peer-reviewed. *Cicero v. Borg-Warner Automotive, Inc.*, 163 F. Supp. 2d 743, 747-48 (E.D. Mich. 2001); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 679 (D. Kan. 1997). Although Plaintiffs argue that the article was peer-reviewed, they cite no evidence to support this claim. Opp. at 11, n.8.

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

1  calculating damages. Opp. at 11. Because *Dura* addressed loss causation, it necessarily limits

2  the types of economic losses for which a plaintiff may recover. *Dura*, 544 U.S. at 344. Indeed,

3  in *Williams*, the court rejected the use of "constant percentage inflation" because "a loss in value

4  occurring before the first corrective disclosure 'cannot be considered causally related to

5  [defendant's] fraudulent [conduct].'" *Williams*, 496 F. Supp. 2d at 1267, 1269 (*citing Daou*, 411

6  F.3d at 1027). The court excluded the plaintiffs' damages expert under *Daubert* because his

7  methodology did not comport with *Dura*, therefore entitling defendants to summary judgment.

8  *Id.* at 1275 (granting summary judgment on loss causation grounds after excluding expert's

9  damages opinions that "did not square with the law of loss causation applied through the prism

10 of *Daubert* and *Rule 702*").[14]

### 2. Steinholt's Section 20A Damages Do Not Comport With *Dura*

Steinholt attempted to calculate Section 20A damages in two ways: the amount by which the Defendants allegedly benefited, and the loss that they purportedly avoided. Neither method complies with *Dura*'s requirement that damages be limited only to those losses caused by the alleged fraud. With respect to his first calculation, Steinholt used inflation per share of 17.44% (constant percentage ribbon) and assumed that 100% of the residual stock drop was fraud-related (no disaggregation of non-fraud related factors) to determine the amounts by which Defendants benefited. This assumption and methodology is both incorrect and impermissible under *Dura*. *Williams*, 496 F. Supp. 2d at 1266-67.

Steinholt's calculation of "losses avoided" damages also violates *Dura* because it is based on the average of Oracle's share price *between March 16, 2001 and April 30, 2001*. Plaintiffs defend Steinholt's use of this average by arguing that this was when Defendants would next have

---

[14] Plaintiffs quote the footnote in *Williams* where the court, in *dicta*, reasoned that it could conceive of a case in which the "constant percentage inflation" approach would at least clear the *Daubert* hurdle. Opp. at 13. The hypothetical case the court in *Williams* envisioned, however, was not *this* case; Oracle's stock was extremely volatile during the class period, thus resulting in potential out-of-pocket damage differences among class members that could not have been caused by the revelation of fraud-related information. *Williams*, 496 F. Supp. 2d at 1270. Moreover, Plaintiffs' attempt to distinguish *Williams* on the grounds that it involved "leakage" misses the mark. Opp. at 15. The critical point in *Williams* – as in this case – is that the "constant percent inflation" model would allow for the recovery of damages that pre-date, and thus have nothing to do with, disclosure of the alleged fraud. *See* Mot. at 13.

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO *DAUBERT* MOTION TO
EXCLUDE STEINHOLT OPINIONS AND TESTIMONY
Master File No. C-01-0988-SI (JCS)

been able to trade under Oracle's insider trading policy. This argument has no basis in law, and Plaintiffs cite no authority to support it. Rather, the cases make clear that Section 20A damages should be based upon the price of the stock a "reasonable time" after the inside information has been disseminated, *i.e.*, the period of time it would take for the market to "digest" the disseminated information. *In re SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983). Thus, Steinholt should have used the stock price on March 2, 2001 (the day after the disclosure) to determine the losses Defendants avoided by their alleged insider sales.

Steinholt's calculation of "losses avoided" damages also violates *Dura* because it includes losses unrelated to the alleged frauds. From March 16 to April 30, Oracle's share price dropped an additional $1.08. Because the only alleged corrective disclosure took place on March 1, this additional drop had nothing to do with the alleged frauds. As such, Steinholt's use of the average closing price during the trading window would result in Defendants paying damages that were not caused by the revelation of any alleged inside information. As discussed above, such losses are not recoverable under *Dura*. Steinholt applied the wrong legal standard, and his damages analysis under Section 20A should be excluded. *DSU*, 296 F. Supp. 2d at 1148; *Evans v. Gen. Motors Corp.*, 459 F. Supp. 2d 407, 411 (D. Md. 2006).

## III.   CONCLUSION

For the foregoing reasons, Steinholt's opinions and testimony on loss causation and damages should be excluded.

Dated: December 12, 2008

Respectfully submitted,

LATHAM & WATKINS LLP
  Peter A. Wald
  Patrick E. Gibbs
  Sean M. Berkowitz


By:   /s/ Patrick E. Gibbs
        Patrick E. Gibbs
Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY, and EDWARD J. SANDERSON

15