# EXHIBIT 28



SAN DIEGO • SAN FRANCISCO
NEW YORK • BOCA RATON
ATLANTA • WASHINGTON, DC
LOS ANGELES • PHILADELPHIA

July 7, 2008

VIA ELECTRONIC CASE FILING

The Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

  Re: *In re Oracle Corporation Securities Litigation*
    Master File No. C-01-0988-SI (N.D. Cal.)

Dear Judge Illston:

  Plaintiffs submit this letter brief pursuant to the Court's June 26, 2008 Order Requesting Supplemental Briefing Regarding Sanctions presenting the parties with the following questions: 1) whether sanctions less than terminating are appropriate, and 2) whether those sanctions would prevent the Court from entering partial or full summary judgment in favor of defendants. The answer to both questions is, unequivocally: yes.

## I. INTRODUCTION

  Defendants have moved for summary judgment on all of plaintiffs' claims. Before reaching the question of sanctions, plaintiffs' opposition to Oracle's motion for summary judgment details defendants' failure to show the absence of a genuine issue of material fact on any of the alleged claims. Indeed, defendants, including their accounting expert, don't dispute that the Company's 2Q01 financial statements were inflated as a result of manipulations of customer overpayments. Without them, Oracle would have reported 2Q01 EPS of $0.10, as opposed to $0.11. The only (disputed) issue remaining is the materiality of the earnings overstatement.[1] Materiality is a question typically reserved for trial. *SEC v. Talbot*, No. 06-55561, 2008 U.S. App. LEXIS 13726 (9th Cir. June 30, 2008).

  As to defendants' statements that Suite 11i ("11i") was (1) "fully integrated and interoperable out of the box;" (2) was quick to install (like Lego Blocks); (3) worked in every language; and (4) helped save money and would drive 75% applications sales growth even in a slowing economy, the evidence demonstrates that these statements were knowingly false. Defendants admit that Oracle did not fully test whether 11i worked in an integrated fashion, and even after releasing it, Oracle could not show a working Suite of software during sales calls. Internal documents show that months after the release of 11i, Oracle sales staff complained that "we still cannot show customers . . . the combination of CRM and ERP." Rather than being implemented fast and saving customers money, 11i defects resulted in lost sales and margin deterioration. Customers that had purchased 11i demanded return of their money or simply refused to pay. Internal documents further show, contrary to Oracle's claims, Oracle's own attempt to internally implement 11i stalled its business for two weeks and 11i defects cost millions in 3Q01 revenue.

---

[1] The Court has already ruled that with respect to loss causation, a "corrective disclosure" is not required to establish loss causation, much less a mirror image disclosure that defendants suggest is necessary. *See Nursing Home Pension Fund v. Oracle Corp.*, 2006 U.S. Dist. LEXIS 94470 (N.D. Cal. Dec. 20, 2006), citing *Dura Pharmaceuticals v. Bruodo*, 544 U.S. 336 (2005).



The Honorable Susan Illston
July 7, 2008
Page 2

With respect to defendants' false claims that Oracle was not being impacted by the slowing economy, the evidence shows that defendants knew at the time of the statements that the slowing economy had already caused customers to cancel and delay purchases and reduce their own budgets for IT. These factors caused the Company's sales pipeline, its leading indicator of sales, to collapse more than $328 million in December 2000. The January 2001 Flash Reports of December month-end sales illustrated to defendants sharp sales growth declines in both North American Sales ("NAS") and Oracle Service Industries ("OSI") (December : - 81% for OSI and -24% for NAS). The 11i technical defects and declining sales trends were known to defendants as they reiterated false positive statements and the negative sales information was communicated to Ellison hours *before* he began selling nearly $1 billion in the Company's stock. These facts, and more, require complete denial of defendants' summary judgment motion.

Nevertheless, evidentiary sanctions are warranted to correct the prejudice suffered as a result of defendants' spoliation of relevant evidence. The sanctions would preclude defendants from asserting or relying on evidence not preserved to rebut plaintiffs' evidence. For example, defendants should be precluded from asserting that the Oracle Sales Online ("OSO") database, which was not preserved, supports their contention that sales growth was not deteriorating at the rapid rate other evidence indicates. Further, the jury should be instructed that the data from OSO would, had it been preserved, be unfavorable to defendants and be favorable to plaintiffs. As to whether sanctions prevent the Court from entering partial or full summary judgment, plaintiffs believe that genuine issues of material fact exist without the requested sanctions. With such sanctions, it is beyond doubt, defendants' summary judgment motion should be denied.

## II. ARGUMENT

### A. Oracle Failed to Preserve Relevant Evidence

Oracle has a duty to preserve documents pursuant to both the FRCP and the PSLRA. 15 U.S.C. §78u-4(b)(3)(C)(i). While under these preservation mandates, defendants failed to preserve or affirmatively engaged in conduct resulting in the destruction of evidence relevant to every issue in the action. For example:

- Upon filing of this action, Oracle only communicated document preservation requirements to 43 employees; Oracle excluded senior executives, including Area Vice Presidents ("AVPs") responsible for forecasting sales, and entire sales, support and consulting organizations responsible for 11i software implementations.

- After plaintiffs filed the operative complaint, Oracle knowingly altered documents evidencing the audit trail of the November 17, 2000 debit memos, and lied to the Court about whether documents were being destroyed.

- After plaintiffs filed this action, Oracle "purged" back-up tapes of its OSO database, the primary sales forecasting tool in use during the Class Period.

- After the Court issued an Order compelling their production, *SOFTWAR* tapes and transcripts were destroyed, including interviews with Ellison where Ellison discussed defects



The Honorable Susan Illston
July 7, 2008
Page 3

with 11i, stock sales, Oracle's forecasting process and the effect of the declining economy on Oracle's business.

- Larry Ellison's files, including e-mail, were not preserved.

The failure to preserve evidence has permeated the action and prejudiced plaintiffs.[2]

### B. Plaintiffs Have Been Prejudiced by Oracle's Failure to Preserve and/or Affirmative Destruction of Relevant Evidence

A party is prejudiced if spoliation impairs that party's ability to try a case or threatens to interfere with the rightful decision of a case. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960 (9th Cir. 2006). Prejudice is shown when the victim is forced to rely on "incomplete and spotty evidence." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995). Where a party destroys evidence with knowledge of impending litigation, such behavior suggests that the evidence would have been threatening to the defense. *AdvantaCare Health Partners v. Access IV*, No. C 03-04496 JF, 2004 U.S. Dist. LEXIS 16835, at *22 (N.D. Cal. Aug. 17, 2004). *Ritchie v. United States*, 451 F.3d 1019, 1025 (9th Cir. 2006) (application of a strict standard of proof regarding the relevance of destroyed evidence would allow parties who have intentionally destroyed evidence to profit from that destruction); *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 2006) (same).[3]

#### 1. Defendants' Alteration of Documents Evidencing the Audit Trail of Debit Memos Forever Destroyed Available Proof

After plaintiffs filed the operative complaint in October 2002 alleging that Oracle had improperly kept and converted customer overpayments and used the monies, through a series of debit memo transactions, to artificially inflate 2Q01 reported revenue and earnings, Oracle engaged in a "Clean Up" effort in which defendants altered and deleted documents evidencing the accounting history of customer overpayments and debit memo transactions. One witness testified that Oracle told employees that the Clean Up was to "help Oracle" address this lawsuit. The Clean Up was clearly in bad faith, alone sufficient for the fact finder to conclude that the missing evidence would be relevant and unfavorable to Oracle. *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 199-200 (S.D.N.Y. 2007). Defendants knew that the accounting evidence was key to plaintiffs' proof. In fact, the Court had previously ordered dismissal of plaintiffs' first amended complaint finding that plaintiffs had failed to account for Oracle's financial success in 1Q01 and 2Q01, stating "the second quarter [2Q01] . . . was even more successful than the first with earnings at 11 cents per share, beating Oracle's own forecast by one cent." September 11, 2002 Order Granting Defendants' Motion to Dismiss

---

[2] *See* Plaintiffs' October 5, 2007 Notice of Motion and Supplemental Submission Regarding Defendants' Destruction of Evidence and Request for Sanctions and Objections to Special Master's July 17, 2006 Order Denying Plaintiffs' Motion to Compel the Restoration of Backup Tapes and for Miscellaneous Relief for the Destruction of Evidence.

[3] Unless otherwise noted, citations are omitted.



The Honorable Susan Illston
July 7, 2008
Page 4

("September 6, 2002 Order") at 18. The destroyed evidence would have been relevant to why 2Q01 was a reported "financial success."

For years afterward, in order to evade production of damaging facts, Oracle misrepresented to the Court that there was no connection between the 2002 Clean Up and the November 2000 debit memo transactions. After depositions of accounting witnesses were taken, defendants were ordered to produce documents relating to the 2002 Clean Up which prove that it was in fact directly connected to the November 2000 debit memos. Some documents expressly refer to the November 17, 2000 debit memos and plaintiffs' lawsuit. Further, contrary to defendants' assertions, the November 17, 2000 debit memos had a "major" impact on revenue. Neither plaintiffs, nor the jury, will know exactly what the destroyed documents would have revealed. Plaintiffs submit they would have been unfavorable to defendants.

2. **Oracle's Destruction of OSO Back-Up Tapes Has Impaired Plaintiffs' Ability to Prove Status of Sales**

Defendants affirmatively purged OSO back-up tapes. OSO was the primary pipeline and sales forecasting tool used during the Class Period. Ellison bragged that OSO allowed him to view up to the minute sales data and "choreograph" the sales staff. Executive V.P. George Roberts described OSO as "the only place [sales reps would put sales opportunities] unless they had them under their pillow." And, this Court, years ago, dismissing plaintiffs' first amended complaint, found that information from this forecasting system would be a necessary part of plaintiffs' proof. September 11, 2002 Order at 13, 16 ("Providing the Court with information that Sanderson or Ellison had 'up to the minute' global roll-ups without providing what the details actually were cannot satisfy the pleading requirements of the PSLRA.").[4] *After* plaintiffs filed this lawsuit, Oracle purged OSO back-up tapes.

3. **Oracle's Destruction of Evidence Has Prejudiced Plaintiffs' Ability to Present Contemporaneous Evidence of Defendants' State of Mind**

Defendants' destruction of e-mail (both sent and received), forecasting reports and files from its sales, consulting, and support organizations is highly prejudicial. Plaintiffs' burden at trial requires proof that defendants knew or were reckless in not knowing that the statements made during the Class Period, at the time they were made, were false. The spotty evidence that has been produced, though incomplete, shows that from top to bottom, Oracle knew that the declining economy and 11i defects were hurting sales. In the most stark example, Ellison's files were not preserved. Although Ellison bragged of being a "hands-on CEO" who received "more than a hundred e-mails a day, most of which he answers himself," less than *15 e-mails* have been produced from Ellison's files. Even more evident of defendants' intent to evade discovery of relevant facts, Ellison admits that he personally discouraged Mathew Symonds from producing the *SOFTWAR* materials, because plaintiffs would likely only use the materials to harm him. Symonds ultimately destroyed the Court-ordered production of the *SOFTWAR* materials, including 135 hours of interviews, tapes and

---

[4] The details the Court believed necessary are exactly those that would have been in OSO. Indeed, in response to plaintiffs' FRCP 33 interrogatories, defendants claim that they cannot identify all of the deals lost during the Class Period or explain the reasons why they were lost, but assert that none were lost as a result of 11i defects.

Case 3:01-cv-00988-SI   Document 1595-28   Filed 02/11/09   Page 6 of 11


**COUGHLIN
STOIA
GELLER
RUDMAN
ROBBINS** LLP

The Honorable Susan Illston
July 7, 2008
Page 5

transcripts with Ellison discussing 11i, insider trading, forecasting, the economy, and Oracle's billion dollar savings claim.

### C. Proof of Spoliation Justifies Lesser Evidentiary Sanctions

Lesser Evidentiary sanctions are warranted in the form of an adverse inference instruction to the jury, and the preclusion of testimony or other evidence on issues in dispute. This Court possesses the inherent power to sanction a party for the destruction of evidence. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). That authority includes the power to exclude evidence that would "'unfairly prejudice an opposing party.'" *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006). Here, plaintiffs have established what is required, "that (1) the party having control over the evidence had an obligation to preserve it; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense." *World Courier v. Barone*, No. C 06-3072 TEH, 2007 U.S. Dist. LEXIS 31714, at *3-*4 (N.D. Cal. Apr. 16, 2007). Bad faith is not necessary – ordinary negligence will suffice. *See Padgett v. City of Monte Sereno*, No. C 04-03946 JW, 2007 U.S. Dist. LEXIS 24301 (N.D. Cal. Mar. 20, 2007). Accordingly, the following proposed adverse interference instruction to the jury is warranted:

> "After defendants were on notice of this litigation and while under a duty to preserve relevant information, documents in defendants' possession or control, including e-mail correspondence, were either altered or destroyed. The documents which were destroyed were from the files of the individual defendants, sales executives and consultants responsible for implementation and technological support for Oracle software products including Suite 11i. Among the documents that have been destroyed are back-up tapes of the Oracle Sales Online forecasting system the defendants relied upon to forecast sales and sales growth. In addition, audio files of interviews of Mr. Ellison discussing issues relevant to this case, for example, the impact of the economy on Oracle's business, Suite 11i, and Mr. Ellison's sales of Oracle Stock at issue, were destroyed. Finally, certain of the documents or systems that were in defendants' possession or control, and which were altered or destroyed, would have evidenced the audit trail of transactions related to the November 17, 2000 debit memos.
>
> For purposes of your consideration of the evidence or lack of evidence on the issues before you, you should assume that had each of these categories of evidence been preserved and presented to you, that evidence would have been favorable to plaintiffs' case and unfavorable to the defendants' defense. You are permitted this inference even if there is no evidence that the defendants acted intentionally or in bad faith."

Apart from this adverse inference instruction, defendants should be precluded from presenting evidence or argument on issues impacted by defendants' spoliation. For example:

(a) Because OSO back-up tapes have been purged, defendants should not be permitted to admit evidence or make argument suggesting that that the OSO database or reports based on data from OSO supported the Company's sales forecast until the end of 3Q01. Defendants should also be precluded from



The Honorable Susan Illston
July 7, 2008
Page 6

admitting evidence or making argument that Ellison did not rely on OSO because Ellison's log-in information to OSO has been destroyed.

(b) Defendants should be precluded from offering evidence or making argument from NAS, OSI and General Business employees, including AVPs and specifically AVP Nic Classick, to support their defense that Oracle was unaware of sales weakness until late in 3Q01. Defendants admit that the large part of the sales miss came from OSI, NAS and OPI, including General Business. Defendants never preserved the files of Oracle's employees in those organizations, including AVPs, even though Henley told investors that U.S. General Business was among the divisions in which the cracks first started to show. In fact, *only five individuals* in NAS and OSI received preservation instructions. Internal documents confirm that AVPs as a group began to voice concern in about sales in December 2000 and were reluctant to raise their forecast in January as deals began to shrink and get delayed.

(c) Defendants should be precluded from introducing evidence from members of the sales, consulting or support organizations or making argument based on information from these organizations that defendants were unaware of 11i technical defects and problematic implementations experienced by customers. Defendants also failed to preserve files of AVPs, all of whom were responsible not only for forecasting sales but selling 11i to customers. The few documents that have been produced from what remained from some AVP files support plaintiffs' claims. For example, AVP Michael Cochran, in the Class Period, wrote that at least one customer had purchased components of 11i which were virtually unusable due to technical defects, and that delays at this customer alone were costing Oracle $75,000 per week. The testimony of another AVP, Michael Decesare, confirms that with 11i, "there was major pieces of functionality that were advertised that just did not exist. . . . It does not operate as integrated out of the box." Defendants did not instruct consulting and support organizations to preserve documents. Shortly after the Class Period, one customer support employee, Charles Kendig, Oracle's VP of Quality and Customer Satisfaction, wrote: "failed implementations are putting our [OSI] state/local verticals out of business. . . . There are just too many problems with the software." The documents from employees' files in these organizations would be relevant and likely unfavorable to defendants.

(d) Because documents evidencing the audit trail of debit memo transactions in 2Q01 have been destroyed, and others intentionally withheld until after the close of discovery, defendants should be precluded from offering evidence or argument inconsistent with proof that defendants knew that reported 2Q01 financial statements were positively impacted by accounting adjustments made to customer overpayments.

D.  **Evidentiary Sanctions Will Result In Full Denial of Defendants' Motion for Summary Judgment**

Any evidentiary sanctions levied against Oracle would preclude entry of summary judgment or partial summary judgment in defendants' favor. Several courts have found, after imposition of evidentiary sanctions, a spoliating party could not successfully defend against a motion for summary judgment, nor could it win an offensive motion for summary judgment. *See, e.g., Unigard*, 982 F.2d at 369 (once sanction of exclusion of evidence was applied, spoliator could not "offer any admissible evidence creating a disputed material fact"); *Bishop v. Saab Auto. A.B.*, No. CV 95-0721 JGD (JRx), 1996 U.S. Dist. LEXIS 22888, at *14-*15 (C.D. Cal.



The Honorable Susan Illston
July 7, 2008
Page 7

April 18, 1996) (upon spoliation sanction of exclusion of evidence, insufficient evidence existed to create a genuine issue of material fact); *Moyers by & Through Moyers v. Ford Motor Co.*, 941 F. Supp. 883, 885 (E.D. Mo. 1996) (granting summary judgment for defendants as a sanction for plaintiff's spoliation).

Here, plaintiffs' opposition to defendants' motion for summary judgment details admitted facts that in 2Q01 Oracle improperly transferred $20 million in customer overpayments to income. As a result, instead of reporting $0.10 EPS, Oracle reported $0.11, beating First Call estimates by a penny. Defendants knew that the customer overpayments were not Oracle's money and knew that without the improper adjustment the Company would have only reported $0.10 EPS.

Plaintiffs' opposition further shows that 11i simply did not work like they said and defendants knew it. In truth, it was not pre-integrated and interoperable out of the box or fully tested. Though the Company had represented the 11i software as being "plug and play," Ellison has admitted, that in truth, "[N]ot all of the pieces worked together as well as they could . . . . Therefore, using that plug analogy . . . there would be a receptacle but no prong in one of the plugs . . . ." Ellison knew all of these material non- public facts, which were contrary to Oracle's public representations, at the time that he executed historical stock sales. On January 17, 2001 Ellison was informed that NAS and OSI had recorded *negative 24%* and *negative 81%* sales in December (the first month of the quarter) and that but for sales to one customer, OPI hade posted *negative 85%* growth. Through December, the Company's U.S. divisions had sold only $1.3 million of 11i applications. Less than 36 hours later, Ellison began what ultimately amounted to sales of 29 million shares of Oracle stock for nearly $1 billion. Ellison had not sold in 5 years.

Like here, "where the innocent party has produced some (not insubstantial) evidence in support of his claim, the intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line. In the absence of such a result, the purposes of the adverse inference are eviscerated." *See Kronisch*, 150 F.3d at 124-130; *see also Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107-111 (2d Cir. 2001) ("In borderline cases, an inference of spoliation, in combination with 'some (not insubstantial) evidence' for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment."); *Scott v. IBM Corp.*, No. 98-4092 (JBS), 2000 U.S. Dist. LEXIS 17979, at *11-*12 (D.N.J. Nov. 29, 2000) ("Having found that there is a genuine dispute of material fact as to whether a jury could find pretext, it would be inappropriate for this Court to grant summary judgment . . . .").

Because the facts presented independently and in conjunction with the imposition of evidentiary sanctions create genuine issues of material fact, defendants' motion for summary judgment should be denied.

### III.     CONCLUSION

For the foregoing reasons, evidentiary sanctions are warranted and defendants' motion for summary judgment should be denied.

Respectfully submitted,

SHAWN A. WILLIAMS

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 7, 2008.

    s/ Shawn A. Williams
    SHAWN A. WILLIAMS

    COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
    100 Pine Street, 26th Floor
    San Francisco, CA  94111
    Telephone:  415/288-4545
    415/288-4534 (fax)

    E-mail:swilliams@csgrr.com

**Mailing Information for a Case 3:01-cv-00988-SI**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennie Lee Anderson**
  jennie@libertylaw.com

- **Eric J. Belfi**
  ebelfi@labaton.com,ElectronicCaseFiling@labaton.com

- **Doug Britton**
  dougb@csgrr.com,ldeem@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Dorian Estelle Daley**
  dorian.daley@oracle.com

- **Patrick Edward Gibbs**
  patrick.gibbs@lw.com,svdocket@lw.com,zoila.aurora@lw.com

- **Eli Greenstein**
  Elig@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Kirke M. Hasson**
  kirke.hasson@pillsburylaw.com,cheryl.grant@pillsburylaw.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,eeberline@morganlewis.com

- **Stacey Marie Kaplan**
  SKaplan@csgrr.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Michele Frances Kyrouz**
  michele.kyrouz@lw.com,#sfdocket@lw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **James C. Maroulis**
  jim.maroulis@oracle.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,swalker@be-law.com

- **Valerie McLaughlin**
  valeriem@lerachlaw.com,kellyb@lerachlaw.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Shinyung Oh**
  shinyungoh@paulhastings.com

- **Dawn S. Pittman**
  dpittman@morganlewis.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Mark Solomon**
  marks@csgrr.com,e_file_sf@csgrr.com,sholloway@csgrr.com,e_file_sd@csgrr.com

- **Edward W. Swanson**
  eswanson@swansonmcnamara.com

- **Shawn A. Williams**
  shawnw@csgrr.com,dpfefferbaum@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com,aelishb@csgrr.

- **Jamie Lynne Wine**
  jamie.wine@lw.com,karen.kelly@lw.com

- **Monique C. Winkler**
  shawnw@csgrr.com,travisd@csgrr.com,e_file_sd@csgrr.com,E_File_SF@csgrr.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Corey D. Holzer
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
Suite E-107
Atlanta, GA 30338

Raymond Lane
Bergeson LLP
303 Almaden Blvd., Ste. 500
San Jose, CA 95110

PRG-Schultz USA, Inc.
Paul Hastings Janofsky & Walker LLP
55 Second Street
24th Floor
San Francisco, CA 94105

Darren Jay Robbins
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Sanna Rachel Singer
Sideman & Bancroft LLP
One Embarcadero Center, 8th Floor
San Francisco, CA 94111
```