# EXHIBIT B

1 of 1 DOCUMENT

**In re SHORETEL INC., SECURITIES LITIGATION,**

**No. C 08-00271 CRB**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

**2009 U.S. Dist. LEXIS 11151**


**February 2, 2009, Decided
February 2, 2009, Filed**

**COUNSEL:** For William Watkins, Individually and on Behalf of All Others Similarly Situated, Plaintiff: Lewis S. Kahn, LEAD ATTORNEY, Kahn Gauthier Swick, LLC, New Orleans, LA; Eric J. O'Bell, PRO HAC VICE, Law Offices of Eric J. O'Bell, LLC, Metairie, LA; Peter E. Borkon, Reed R. Kathrein, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Berkeley, CA.

For Loren Swanson, Art Landesman, Plaintiffs: Kim Elaine Miller, LEAD ATTORNEY, Kahn Gauthier Swick LLC, New York, NY; Reed R. Kathrein, Hagens Berman Sobol Shapiro LLP, Berkeley, CA.

For ShoreTel, Inc., John W. Combs, Michael E. Healy, Edwin J. Basart, Gary J. Daichendt, Thomas van Overbeek, Kenneth D. Denman, Charles D. Kissner, Edward F. Thompson, Defendants: Catherine Duden Kevane, Dean S. Kristy, Jennifer Lloyd Kelly, Leslie A Kramer, Susan Samuels Muck, Fenwick & West LLP, San Francisco, CA.

For Lehman Brothers, Inc., J.P. Morgan Securities, Inc., Piper Jaffray & Co., Defendants: Adrienne L. Taclas, Charlene Sachi Shimada, Donn P. Pickett, John D. Pernick, Bingham McCutchen LLP, East Palo Alto, CA.

**JUDGES:** CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES R. BREYER

**OPINION**

**MEMORANDUM AND ORDER**

In this securities law putative class action, plaintiffs are Shoretel, Inc. shareholders who purchased common stock pursuant to a July 3, 2007 Initial Public Offering ("IPO"). Now pending before the Court are defendants' motions to dismiss. After carefully considering the papers filed by the parties, and having heard oral argument, the motions to dismiss are GRANTED in part with leave to amend.

**ALLEGATIONS OF THE CONSOLIDATED AMENDED COMPLAINT**

In connection with the IPO, Shoretel issued a Registration Statement that made materially untrue statements and omissions regarding its growth, revenue recognition practices, and net payment terms. Shoretel also made materially untrue representations regarding payment for and accounting of demonstration products -- millions of dollars of which were actually unaccounted for, causing Shoretel to overstate inventory and understate costs of sales. Shoretel also negligently understated its bad debt allowances for accounts receivable, decreasing expenses prior to the IPO. Complaint P 4.

Plaintiff learned of the Registration Statement misrepresentations and misleading omissions on January 7, 2008 when Shoretel reported its results for the second quarter ending December 31, 2007. Complaint P 52.

**DISCUSSION**

Case 3:01-cv-00988-SI   Document 1601-2   Filed 02/20/09   Page 3 of 7

Page 2
2009 U.S. Dist. LEXIS 11151

Plaintiffs bring their claims under Sections 11 and 15 of the Securities Act of 1933.

> Section 11 of the Securities Act contains a private right of action for purchasers of a security if the issuer publishes a registration statement in connection with that security that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). To prevail in such an action, a plaintiff must prove "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment."

Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 2009 WL 69278 *3 (9th Cir. 2009). Section 15 provides a cause of action against persons who control other persons liable under Section 11. 15 U.S.C. § 77o.

Defendants move to dismiss on the ground (1) that the complaint sounds in fraud and the allegations do not satisfy Rule 9(b), (2) the allegations, even if true, do not allege actionable misrepresentations, and (3) the complaint on its face proves defendants' affirmative defense of negative _**loss causation**_.

## A. Rule 9(b) Does Not Apply To the Complaint

The first issue is what pleading standard applies to plaintiffs' Section 11 and 15 claims.

The heightened pleading requirements of the PSLRA do not apply to Section 11 claims, Falkowski v. Imation Corp., 309 F.3d 1123, 1133 (9th Cir.2002); however, "plaintiffs are required to allege their claims with increased particularity under Federal Rule of Civil Procedure 9(b) if their complaint 'sounds in fraud.'" Rubke, 551 F.3d 1156, 2009 WL 69278 at *3. To determine whether a complaint "sounds in fraud," the court must examine the language and structure of the complaint to discern whether the complaint "allege[s] a unified course of fraudulent conduct" and "rel[ies] entirely on that course of conduct as the basis of a claim." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). If so, the fraudulent conduct must be alleged with particularity. "[A] plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." Id. at 1104. The non-fraud allegations "need only satisfy the ordinary notice pleading standards of Rule 8(a). " Id. at 1105.

Here, the allegations of the Complaint do not sound in fraud; rather, plaintiffs repeatedly allege negligence. Plaintiffs never allege that any individual _knew_ the statements in the Registration Statement were false. In Ladmen Partners, Inc. v. Globalstar, Inc., 2008 U.S. Dist. LEXIS 76670, 2008 WL 4449280 (S.D.N.Y. Sep. 30, 2008), in contrast, the district court applied Rule 9(b) because the complaint alleged that named individuals _knew_ that the statements were false "and participated in an essentially fraudulent scheme to deceive investors." 2008 U.S. Dist. LEXIS 76670, [WL] at *12. In Rubke, the court held that Rule 9(b) applied to the Section 11 claim because the plaintiff also alleged securities fraud based on the same allegations. No such knowledge is alleged here. Accordingly, the Court will not apply the heightened pleading standard of Rule 9(b).

## B. Untrue Statements and Misleading Omissions

The Court's inquiry, then, is whether under Federal Rule of Civil Procedure 8 the Complaint states a claim for violation of Section 11. Under Rule 8(a), a plaintiff must "'provide a 'short and plain statement of the claim showing that [he] is entitled to relief.'" Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)). "This is not an onerous burden. Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." Id. (internal quotation marks and citation omitted). Nonetheless, the complaint is properly dismissed if it fails to plead "'enough facts to state a claim to relief that is plausible on its face.'" Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting Bell Atlantic. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). In making this determination a court must be mindful that

> a district court ruling on a motion to dismiss is not sitting as a trier of fact. It is true that the court need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences. But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of theroceedings when the plaintiff's case can be rejected on

evidentiary grounds. "p[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

In re Gilead Sciences Securities Litigation, 536 F.3d 1049, 1057 (9th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

Defendants assert that each of plaintiff's theories of untrue statement/misleading omission falls short of this standard.

### 1. Statements Concerning Shortel's Growth

The Registration Statement reported that revenue had tripled between 2003 and 2006 and that this growth "has largely been driven by increased demand for IP telecommunications systems from new enterprise customers." Complaint P 20. Plaintiffs allege that the latter statement was untrue because the increased growth in sales was driven not by increased demand, but rather by an intense "do anything" internal pressure to sell, Complaint P 21, which included offering questionable discounts, selling equipment to customers who did not have the infrastructure to use the products or the ability to pay. This intense pressure to sell meant Shoretel had exhausted its customer base before the IPO so that revenue growth was unlikely to continue. Complaint PP 21-23.

Defendants contend that the statement that "growth in revenue has largely been driven by increased demand" is not false because plaintiffs do not challenge that revenue did in fact grow. Plaintiffs' theory, however, is that the statement is false because the growth in revenue was not driven by demand but rather by Shoretel aggressively selling product to companies that were unable to support the product or were not creditworthy; in other words, there was not really a growth in "demand" but instead a growth in the pushy, aggressive sales tactics. Plaintiffs' complaint offers sufficient facts such that the claim--under this theory--is not facially implausible.

While the Complaint includes an allegation that the intense pressure to sell meant Shortel had exhausted its customer base before the IPO so that revenue growth was unlikely to continue, Complaint P 2, the Court does not understand the Complaint to allege that Shoretel made a representation as to future growth; only a representation as to the reasons for past growth. Indeed, the Registration Statement specifically disavowed any intent to make any representations as to future growth.

### 2. Statements About Payment Terms and Revenue Recognition Practices

The Registration Statement reported that payment terms generally range from net 30 to net 60 days and that in the event payment terms are extended, the revenue is recognized when payment becomes due. Complaint P 24. Shoretel, however, booked revenue as soon as contracts were signed, even though sales persons--due to the intense pressure to increase revenue prior to the IPO--were orally extending the deadlines for customers to pay beyond 60 days and in some instances the customers had no intention or even ability to pay for Shoretel's systems. Complaint PP 25-30.

Shoretel contends that these representations were not false because Shoretel has not restated its financials and "Plaintiffs have not alleged a single fact indicating that Shoretel did not follow these policies." Reply at 6. To the contrary, the above allegations are that Shoretel did not, in fact, follow its stated policies.

### 3. Statements Regarding Company Credit and Associated Revenue Recognition

The Registration Statement disclosed that if a partner is not creditworthy, Shortel does not recognize any revenue from a sale until payment is received and all other revenue recognition criteria have been met. Complaint P 31. Plaintiffs allege that notwithstanding that statement, Shoretel extended credit without regard to creditworthiness and continued to book all of its agreements as sales the day the sale was made. "The Company's practice was simple: extend credit to any customer wiling to buy and book revenues immediately." Complaint P 32.

These allegations sufficiently allege a misleading statement.

### 4. Statements Regarding the Monitoring of Key Financial Metrics

The Registration Statement reported that Shortel "monitor[s] a number of key metrics to help forecast growth, establish budgets, measure the effectiveness of sales and marketing efforts and measure operational effectiveness." Complaint P 33. Plaintiffs allege that due to the incompetence of one of its officers, Shoretel was unable to adequately track

2009 U.S. Dist. LEXIS 11151

its financial situation and thus misreported certain financials, including expenses, in the Registration Statement. Complaint PP 31-37.

Plaintiffs have not identified how the Registration Statement representation is false or misleading. Plaintiffs do not allege that Shoretel did not engage in monitoring, only that it did so poorly.

### 5. Statements Regarding the Accounts Receivable Allowance

The Registration Statement reported an allowance of $ 256,000 for doubtful accounts for the period ending March 31, 2007 and stated that Shoretel reviews its allowance for doubtful accounts on a quarterly basis by assessing accounts receivable that are overdue. "Accordingly, the account of this allowance will fluctuate based upon changes in revenue levels, collection of specific balances in accounts receivable and estimated changes in channel partner credit quality or likelihood of collection." Complaint P 38. Plaintiffs allege this latter statement was misleading because the amount of the allowance decreased even after accounts receivable had increased.

Again, regardless of whether Shoretel should have increased its bad debt allowance, and was negligent in not doing so, plaintiffs fail to articulate how the statement in the Registration Statement--which accurately reflected the amount of the allowance--was false. This claim, too, is dismissed with leave to amend.

### 6. Statements Regarding Demonstration Products

Plaintiffs also note that the Registration Statement advised that certain partners purchase demonstration products at a greater than the standard discount and that the discounts are recorded as a reduction in revenue upon shipment of the demonstration units. According to plaintiff, this statement was misleading because Shoretel did not disclose that it gave away millions of dollars in equipment as "demonstration products," but failed to account for such "gifts" so inventory was overstated and costs of sales were understated. Complaint P 43-45.

Plaintiffs' Opposition does not address how the representation in the Registration Statement was false or misleading. This claim is dismissed with leave to amend.

### C. _Loss Causation_

The federal securities laws provide a private right of action to shareholders "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 344, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). Such causal losses occur when the share price falls significantly after the truth about the untrue statements or misleading omissions becomes known. Id. at 347; In re Daou Systems, 411 F.3d 1006, 1027 (9th Cir. 2005) (explaining that damages are recoverable under the federal securities laws when the shareholders' economic loss from the decline in their stock value was the direct result of alleged misrepresentations).

In a Section 11 securities case plaintiffs need not allege **_loss causation_**, that is, the plaintiffs need not allege that the misrepresentations in the registration statement caused the plaintiffs' loss; instead, *the defendants* may prove as an affirmative defense that the plaintiffs' loss, or some portion thereof, was not caused by the alleged misstatements or omissions:

> [I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value ... resulting from such part of the registration statement[ ] with respect to which his liability is being asserted, . . . such portion or all of such damages shall not be recoverable.

15 U.S.C. § 77k(e). This defense is sometimes referred to as the "negative causation" defense and courts have characterized the defendant's burden as "heavy." In re Worlds of Wonder Securities Litigation, 35 F.3d 1407, 1421-22 (9th Cir. 1994).

Defendants claim that they have met their burden of proving negative causation (lack of **_loss causation_**) as a matter of law because negative causation is apparent from the allegations of the Complaint. Plaintiffs respond that "[*l]oss causation* arguments at the motion to dismiss stage are premature." Plaintiffs are wrong. As is the case with any affirmative defense, if the facts as alleged by plaintiffs, and documents which the court may take judicial notice of, establish the affirmative defense as a matter of law then the motion to dismiss may be granted. See McCalden v. California Library

Case 3:01-cv-00988-SI   Document 1601-2   Filed 02/20/09   Page 6 of 7

Page 5
2009 U.S. Dist. LEXIS 11151

Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990) (noting that a complaint may be dismissed because the allegations give rise to an affirmative defense if the defense clearly appears on the face of the pleading); In re Alamosa Holdings, Inc., 382 F.Supp. 2d 832, 865-66 (N.D. Tex. 2005) (dismissing section 11 claim on a 12(b)(6) motion on the ground that plaintiffs' own allegations established that their loss was not caused by the alleged misrepresentations in the Registration Statement); In re McKesson HBOC, Inc., 126 F.Supp.2d 1248, 1262 (N.D. Cal. 2000) (granting motion to dismiss certain Section 11 claims on ground that "the complaint reveals that the Section 11 defendants have an absolute 'negative causation' defense"). Levine v. Atricure, Inc., 508 F.Supp.2d 268 (S.D.N.Y. 2007), does not hold to the contrary; indeed, it acknowledges that an affirmative defense may be established on a motion to dismiss if the complaint on its face negates the factual presumption of causation. Id. at 273 n.4., 274.

Here, plaintiffs affirmatively allege that the putative class was damaged by the stock drop caused by Shoretel's January 7, 2008 press release. Complaint PP 11-12, 52-54; Plaintiffs' Opposition to Underwriters' Motion at 13 (explaining that although plaintiffs are not required to allege *loss causation*, the complaint adequately does so by pleading the January 7, 2008 press release and the fifty percent drop in share price that day). That press release, however, merely disclosed that Shortel's results for the quarter ending December 31, 2007 fell short of expectations and that a preliminary review revealed that sales to new customers had declined, although sales to existing customers had increased; it reveals nothing about what was allegedly misrepresented in or omitted from the Registration Statement. In Daou, in contrast, the complaint adequately alleged *loss causation* because the complaint alleged that the market had reacted to disclosure of the misstatements (improper revenue recognition) "as opposed to merely reacting to reports of the defendant's poor financial health generally." Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1063 (9th Cir. 2008) (describing the holding of Daou, 411 F.3d at 1026). By alleging that their losses occurred as a result of the press release--which on its face does not disclose any of the misrepresentations alleged in the Complaint--plaintiffs have shown that the market reacted to defendant's poor financial health (or not as robust as expected financial health) rather than to a disclosure of the Registration Statement's allegedly false and misleading representations.

The Ninth Circuit's recent decision in Metzler illustrates why negative causation is apparent here. The plaintiffs alleged that the defendant for-profit vocational schools engaged in certain fraudulent acts to obtain federal funding, a major source of the schools' revenue. 540 F.3d at 1055. The complaint identified two disclosures to the market that purportedly revealed the fraud and caused the plaintiffs' loss: (1) a newspaper story reporting a Department of Education investigation into one of the defendant's 88 campuses, and (2) a press release from the defendant disclosing reduced earnings and earning projections. Id. at 1059. The court affirmed the dismissal of the complaint for failure to allege *loss causation* on the ground that neither the newspaper story nor the press release disclosed the alleged fraudulent scheme to obtain federal funding. Id. at 1063. Here, the January 7, 2008 press release--which plaintiffs affirmatively identify as the disclosure that caused plaintiffs' losses--cannot rationally be inferred as disclosing the alleged misstatements or misleading omissions in the Registration Statement. Accordingly, the face of the Complaint demonstrates negative causation.

Plaintiffs' attempt to distinguish Metzler on the ground that it is a PSLRA case in which the plaintiff has the burden of alleging *loss causation* is unavailing. While plaintiffs did not have to allege *loss causation* here, plaintiffs nonetheless affirmatively alleged that the January 7, 2008 press release caused the losses of the putative class. The allegations of the Complaint--and the press release itself--establish that the press release did not disclose the alleged misstatements or misleading omissions and therefore establishes defendants' negative causation defense.

Levine is distinguishable. The Levine complaint did not negate the presumption of causation because it did not allege precisely when the disclosure that caused the plaintiff's loss occurred. 508 F.Supp.2d at 274. Here, in contrast, plaintiffs specifically allege that the loss occurred as a result of the January 7, 2008 press release--and that the press release was the first time this information was disclosed. Complaint P 52; see also id. at P 11 ("[I]t was not until January 7, 2008, that investors learned the truth about the Company when Defendants announced that the problems which existed at the time of the IPO would result in extremely disappointing results for the second quarter of fiscal year 2008"). The Complaint thus leaves no room for an inference that the truth "leaked out" prior to the press release; rather, the Complaint alleges that it is the press release that disclosed the information that caused the stock drop on January 7, 2008.

**CONCLUSION**

For the foregoing reasons, the Court rules as follows:

(1) The heightened pleading standards of Rule 9(b) do not apply to the Complaint,

2009 U.S. Dist. LEXIS 11151

(2) Defendants' motion to dismiss the Section 11 and Section 15 claims for failure to comply with Rule 8(a) are granted with leave to amend as is set forth in the body of this Memorandum and Order,

(3) Defendants' motion to dismiss on the ground that the face of the Complaint establishes negative _**loss causation**_ is GRANTED with leave to amend, and

(4) Plaintiffs shall file an Amended Complaint within 30 days of the date of this Memorandum and Order.

**IT IS SO ORDERED**.

Dated: Feb. 2, 2009

/s/ Charles R. Breyer

CHARLES R. BREYER

UNITED STATES DISTRICT

JUDGE