# EXHIBIT 1

```
                                      PAGES 1 - 66

              UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

         BEFORE THE HONORABLE SUSAN ILLSTON
```

IN RE ORACLE CORPORATION        )
SECURITES LITIGATION,           )
                                ) NO. C 01-0988 SI
(THIS DOCUMENT RELATES TO ALL   )
ACTIONS                         )
                                )
                                )  SAN FRANCISCO, CALIFORNIA
                                )  FRIDAY, FEBRUARY 13, 2009
                                )

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

**FOR PLAINTIFF**               COUGHLIN, STOIA, GELLER, RUDMAN &
                                    ROBBINS, LLP
                                655 WEST BRAODWAY, SUITE 1900
                                SAN DIEGO, CALIFORNIA   92101
                          BY:   **MARK SOLOMON, ESQUIRE**
                                **DOUGLAS R. BRITTON, ESQUIRE**


                                COUGHLIN, STOIA, GELLER, RUDMAN &
                                    ROBBINS, LLP
                                100 PINE STREET, 26TH FLOOR
                                SAN FRANCISCO, CALIFORNIA   94111
                          BY:   **SHAWN A. WILLIAMS, ESQUIRE**
                                **ELI GREENSTEIN, ESQUIRE**
                                **DANIEL PFEFFERBAUM, ESQUIRE**
                                **WILLOW RADCLIFFE, ESQUIRE**
                                **STACEY KAPLAN, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)


REPORTED BY:        JOAN MARIE COLUMBINI, CSR 5435, RPR
                    OFFICIAL COURT REPORTER, U.S. DISTRICT COURT

1  QUESTIONS IN RESPONSE TO THE ARGUMENT THAT IF THE DISCLOSURE
2  ITSELF DOESN'T STATE THAT THERE WAS A MISREPRESENTATION EARLIER,
3  THERE WAS NO -- THERE'S NO LOSS CAUSATION.  SHE SAYS:
4              "IF WE ASSUME FOR A MINUTE THAT THE INITIAL
5         MISREPRESENTATIONS MADE HERE WERE FALSE AND
6         FRAUDULENT, IS THERE ANY QUESTION THAT THEY
7         CAUSED THE LOSS?"
8         AND COUNSEL FOR THE DEFENDANTS WENT ON TO MAKE AN
9  ARGUMENT THAT, YES, INDEED, THERE WAS A QUESTION, BECAUSE, IN
10 THEIR VIEW, IF THERE WAS NO DISCLOSURE OF THE FRAUD, THERE COULD
11 BE NO LOSS CAUSATION.
12        LATER ON, AT THE BOTTOM OF THE PAGE, JUSTICE O'CONNOR
13 STATES:
14             "THAT'S A PECULIAR RULE THAT THE DISTRICT
15        COURT APPLIED, BECAUSE IT REWARDS DEFENDANTS FOR
16        FAILING TO COME CLEAN.  IT'S AN ODD RULE."
17        SHE GOES ON ON THE NEXT PAGE TO SAY:
18             "I DON'T UNDERSTAND IT.  IT SAYS, IF YOU
19        DON'T REVEAL WHAT YOU'VE DONE YOU'RE SAFE.  SO
20        YOU DON'T EVER HAVE TO TELL THE TRUTH."
21        AND, FINALLY, ON PAGE 10, AFTER CONTINUING THE
22 ARGUMENT, JUSTICE O'CONNOR SAYS:
23             "YOUR THEORY REWARDS CONCEALMENT."
24        THAT'S EXACTLY WHAT THE DEFENDANTS HERE ARE ARGUING,
25 THAT SIMPLY BECAUSE THEY DID NOT ADMIT TO THE FRAUD THAT'S

1   ALLEGED HERE, PLAINTIFFS CAN'T PROVE LOSS CAUSATION. THAT'S NOT

2   THE LAW. THAT'S NOT WHAT *DURA* SAYS, NOT WHAT *DAOU* SAYS, NOT

3   WHAT *GILEAD* SAYS, NOT WHAT *CORINTHIANS* SAYS.

4           NOW, WHEN YOU LOOK AT THE DISCLOSURES THEMSELVES, IT

5   IS CLEAR THAT EVEN THOUGH WE DON'T NEED IT, THERE'S ALMOST A

6   ONE-TO-ONE CORRELATION BETWEEN WHAT WE ALLEGE TO BE THE

7   MISREPRESENTATION AND THE ULTIMATE DISCLOSURE. SO WHAT ARE

8   THE --

9           **THE COURT:** BEFORE YOU GET TO THE ALMOST

10  ONE-TO-ONE --

11          **MR. WILLIAMS:** SURE.

12          **THE COURT:** WHAT DO YOU THINK THE RULE IS THAT I'M

13  SUPPOSED TO APPLY?

14          **MR. WILLIAMS:** I THINK THE RULE IS THAT PLAINTIFFS

15  HAVE TO DEMONSTRATE A CONNECTION BETWEEN THE FRAUD THAT'S

16  ALLEGED AND THE ULTIMATE STOCK PRICE DECLINE.

17          **THE COURT:** CAUSAL CONNECTION?

18          **MR. WILLIAMS:** A CAUSAL CONNECTION BETWEEN THE FRAUD

19  AND THE ULTIMATE STOCK PRICE DECLINE.

20          **THE COURT:** WHAT'S THE FRAUD HERE?

21          **MR. WILLIAMS:** THE FRAUD HERE IS MISREPRESENTATIONS

22  ABOUT THE SECOND QUARTER 2001 FINANCIAL RESULTS;

23  MISREPRESENTATIONS CONCERNING THE THIRD QUARTER FORECASTS OF 12

24  CENTS PER SHARE, 75 PERCENT APPLICATIONS GROWTH; THE

25  MISREPRESENTATIONS ABOUT THE FUNCTIONALITY OF SUITE 11I THAT'S

```
 1  PREINTEGRATED, INTEROPERABLE OUT OF THE BOX, GETS IMPLEMENTED
 2  FAST, AND IT'S GOING TO SAVE CUSTOMERS MONEY.  THAT'S -- THOSE
 3  ARE THE MISREPRESENTATIONS.
 4          THE COURT:  SO THEY HAVE TO HAVE CAUSED THE LOSS?
 5          MR. WILLIAMS:  THEY HAVE TO HAVE CAUSED THE LOSS.
 6          THE COURT:  AND THE LOSS HAPPENS WHEN THE MARKET
 7  DROPS?
 8          MR. WILLIAMS:  THE LOSS HAPPENS WHEN THE MARKET
 9  LEARNS THE TRUE FINANCIAL CONDITION OF THE COMPANY, IN THIS CASE
10  ON MARCH 1ST WHEN THEY ANNOUNCE THE EARNINGS MISS.
11          NOW, THE MARKET CLEARLY UNDERSTOOD THAT THE ECONOMIC
12  CONDITION OF THIS COMPANY WAS NOT WHAT THEY REPRESENTED IT TO BE
13  DURING THAT TIMEFRAME.
14          THE COURT:  SO WHAT YOU'RE SAYING THEN IS THE MARKET
15  HAD TO HAVE UNDERSTOOD THAT THERE WAS A MISSTATEMENT, NOT THAT
16  THERE WAS --
17          MR. WILLIAMS:  EXACTLY.
18          THE COURT:  -- NOT THAT THEY MISSED A PENNY ON THE
19  EARNINGS; THAT CAN'T BE THE REASON FOR THE DROP.
20          MR. WILLIAMS:  NO, ABSOLUTELY NOT.  THERE'S NO WAY
21  FOR THE MARKET TO UNDERSTAND OR TO KNOW THE DETAILS OF THE FRAUD
22  THAT'S ALLEGED.  WHAT THE MARKET CLEARLY UNDERSTOOD WAS THIS
23  COMPANY IS NOT WHAT THEY SAID IT WAS.  IT IS NOT WORTH WHAT THEY
24  SAID IT WAS, AND THAT CAME OUT ON MARCH 1ST.
25          THE COURT:  SO THERE HAS TO BE A MARKET INCORPORATION
```

1  OF AN UNDERSTANDING THAT THERE HAD BEEN MISSTATEMENTS?
2          **MR. WILLIAMS:**  ABSOLUTELY.
3          **THE COURT:**  OKAY.
4          **MR. WILLIAMS:**  ABSOLUTELY.
5          THERE IS SOME MISREPRESENTATION THAT CAUSED THE STOCK
6  PRICE TO BE ARTIFICIALLY INFLATED DURING THAT PERIOD, AND THIS
7  DISCLOSURE REVEALED THE TRUE FINANCIAL CONDITION OF THE COMPANY
8  WHICH CAUSED THE STOCK PRICE TO DECLINE.
9          NOW, IT'S UP TO US TO PROVE THE CASE.  WE'VE GOT TO
10 PROVE FALSITY.  WE'VE GOT TO PROVE SCIENTER.  WE'VE GOT TO PROVE
11 LOSS CAUSATION, OF COURSE, AND DAMAGES.  THOSE ARE FOUR
12 ELEMENTS.  WE'VE GOT TO PROVE THEM ALL, NOT JUST LOSS CAUSATION.
13 IF YOU LOOK AT THE LOSS CAUSATION PIECE BY ITSELF, THEN IT MAKES
14 SENSE THEN TO ASSUME THE SAME FALSITY.
15         **THE COURT:**  YEAH, IF YOU ARE GOING TO ISOLATE IT --
16         **MR. WILLIAMS:**  IF YOU ARE GOING TO ISOLATE IT, YOU
17 HAVE TO ASSUME FIRST FALSITY.
18         **THE COURT:**  SO GO AHEAD AND TELL ME ABOUT YOUR ALMOST
19 ONE-TO-ONE CONFERENCE HERE.  I'M ASSUMING FALSITY OF ALL THE
20 PRIOR STATEMENTS.
21         **MR. WILLIAMS:**  SURE.  IF YOU ASSUME THE FALSITY OF
22 THE REPRESENTATIONS THAT WE'RE GOING TO MAKE 12 CENTS PER SHARE
23 ON DECEMBER 14, 2001, WHEN THEY ANNOUNCE THAT, OOPS, NO, WE'RE
24 NOT, WE'RE ONLY GOING TO MAKE TEN CENTS PER SHARE, THAT IS AN
25 INDICATION THAT'S LOSS CAUSATION.

1    NOW, WE HAVE TO PROVE UP THE FACTS OF THE FRAUD IN
2 BETWEEN, BUT ONCE YOU ASSUME THAT THAT STATEMENT IS FALSE, AND
3 IT'S ADMITTED THAT THEY'RE NOT GOING TO MAKE IT IN THE STOCK
4 PRICE DECLINES, I THINK THAT YOU'VE ACTUALLY -- YOU'VE ALLEGED
5 AND YOU'VE COME A LONG WAY TO PROVING THAT THE MISREPRESENTATION
6 WAS CONNECTED TO THE LOSS.
7    **THE COURT**:  WELL, I GUESS THAT'S CRYSTALLIZING THE
8 QUESTION IN MY MIND, BECAUSE YOU ASK ME TO, AND FOR THESE
9 PURPOSES I WILL, ASSUME THAT IT WAS A MISREPRESENTATION, THE 12
10 CENTS.
11    **MR. WILLIAMS**:  MM-HMM.
12    **THE COURT**:  AND THEN THE MARKET IS AWARE THAT
13 PREVIOUSLY THEY HAD ANTICIPATED 12 CENTS, AND NOW THEY ARE
14 COMING OUT WITH TEN.  SO THEY UNDERSTAND THERE'S A DIFFERENTIAL
15 THERE.
16    BUT DOES THE MARKET HAVE TO ATTRIBUTE THE
17 DIFFERENTIAL TO A FALSE STATEMENT, FRAUD, SOMETHING BAD, AS
18 OPPOSED TO, WE MISSED IT?
19    **MR. WILLIAMS**:  NO, THE MARKET DOESN'T HAVE TO
20 ATTRIBUTE IT TO FRAUD.  THE MARKET HAS TO RECOGNIZE THAT THE
21 REPRESENTATIONS OF THE FINANCIAL CONDITION OF THIS COMPANY WERE
22 NOT WHAT THEY SAID IT WAS, AND IT'S UP TO US -- IT'S UP TO US TO
23 DEMONSTRATE THAT FRAUD CAUSED THE LOSS.
24    IF THE MARKET UNDERSTOOD AT THE VERY BEGINNING THAT
25 IT WAS, INDEED, FRAUD, THEN ONE COULD SIMPLY FILE A COMPLAINT

```
 1  AND GO TO SUMMARY JUDGMENT.  THERE WOULD BE NO NEED FOR
 2  DISCOVERY IN BETWEEN.
 3          THE COURT:  WELL, I MEAN, I DON'T KNOW IF YOU ARE
 4  RIGHT.  I DON'T KNOW IF YOU ARE RIGHT THAT THE MARKET DOESN'T
 5  HAVE TO ATTRIBUTE IT TO SOMETHING BAD AS OPPOSED TO MERELY
 6  MISSING THE NUMBER.
 7          MR. WILLIAMS:  WE MISUNDERSTOOD EACH OTHER.
 8  CERTAINLY, THE MARKET HAS TO ATTRIBUTE IT TO SOMETHING BAD,
 9  WHICH IS DEFENDANTS SAID THAT THIS COMPANY WAS WORTH X, OR THE
10  FUTURE FINANCIAL CONDITION WOULD BE WORTH X, AND THAT DISCLOSURE
11  INDICATED THAT THE REPRESENTATIONS BY THE COMPANY DIDN'T APPEAR
12  TO BE TRUE.  AND IT CAUSED THE STOCK PRICE DECLINE.
13          I THINK THIS IS A PERFECT CASE THAT DEMONSTRATES WHAT
14  JUSTICE O'CONNOR WAS TALKING ABOUT, REWARDING DEFENDANTS FOR NOT
15  COMING CLEAN.
16          IF I COULD HAND UP A FEW EXHIBITS FOR YOUR HONOR TO
17  TAKE A LOOK AT?
18          THE COURT:  A FEW.
19          MR. WILLIAMS:  WE'VE GIVEN YOU 400 EXHIBITS, AND I
20  THINK THAT WE WERE TRYING TO MAKE THIS A LITTLE BIT MORE
21  CONVENIENT FOR YOU, BUT, CLEARLY, A LARGE CHUNK OF THIS CASE IS
22  ABOUT THE MISREPRESENTATIONS CONCERNING SUITE 11I, AND ONE OF
23  THE -- LET ME JUST GET TO IT.  JUST A MOMENT.
24          CAN YOU PULL UP 135, PLEASE?
25          IF YOUR HONOR WILL TAKE A LOOK AT EXHIBIT 135?  IT IS
```

1  SUPPORT REVENUES.  NEITHER OF THOSE IS THE SUBJECT OF
2  PLAINTIFF'S FRAUD CLAIM.  POINT ONE.
3      POINT TWO, YOUR HONOR, MR. WILLIAMS, THROUGHOUT HIS
4  PRESENTATION, CONFLATES FALSITY WITH LOSS CAUSATION, AND AS THE
5  COURT IN *FLOWSERVE* SAYS, QUOTE:
6       "PLAINTIFF'S ATTEMPT TO USE A MERITS-BASED
7        ARGUMENT AS A BRIDGE FOR THE GAP IN RELATEDNESS
8        BETWEEN THE ALLEGED FRAUD AND THE JULY AND
9        SEPTEMBER STATEMENTS IS WITHOUT SUPPORT.  SUCH
10       EVIDENCE THAT WAS NEVER DISCLOSED TO THE PUBLIC
11       WOULD NOT PRODUCE MARKET REACTION, ANALYST
12       COMMENTARY AND HARM TO INVESTORS.  THE USE OF
13       UNDISCLOSED INTERNAL KNOWLEDGE TO IMPUTE
14       IMPLICIT MARKET KNOWLEDGE UNDERMINES THE ACTUAL
15       EFFECT REQUIREMENTS."
16     AND THAT CRYSTALLIZES THE LEGAL ISSUE VERY CLEARLY,
17 YOUR HONOR.
18     FINALLY --
19     **THE COURT:**  WELL, A POINT THAT MR. WILLIAMS MADE THAT
20 HAS MADE ME THINK IS THAT YOU RELIED VERY HEAVILY ON THIS
21 *FLOWSERVE* ANALYSIS.
22     **MR. WALD:**  YES, YOUR HONOR.
23     **THE COURT:**  AND, INDEED, YOU SEEM TO BE URGING ME TO
24 PAY ATTENTION TO THE WAY THEY STRUCTURED THE OPINION TO DEAL
25 WITH THE LOSS CAUSATION ISSUE.  SO SHOULD I WAIT AND FIND OUT

```
 1  WHAT THE FIFTH CIRCUIT DOES?
 2          MR. WALD:  WELL, YOUR HONOR, ON THAT QUESTION, WE'VE
 3  CITED YOU I THINK NINE CASES THAT GRANT SUMMARY JUDGMENT.
 4          THE COURT:  I KNOW.
 5          MR. WALD:  FOLLOWING ANALYSIS.
 6          THE COURT:  EVEN TODAY YOU TALKED A LOT ABOUT THIS
 7  ONE.
 8          MR. WALD:  WE THINK FLOWSERVE IS AN IMPORTANT CASE,
 9  YOUR HONOR.  THERE'S NO QUESTION ABOUT IT.  THE IKON CASE AND
10  THE MCKOWAN CASE FOLLOW EXACTLY THE SAME RATIONALE.
11          I WOULDN'T PURPORT TO TELL THE COURT WHAT IT SHOULD
12  DO.
13          IN TERMS OF NINTH CIRCUIT JURISPRUDENCE, NINTH
14  CIRCUIT JURISPRUDENCE REQUIRES EXACTLY THE SAME RELATEDNESS,
15  YOUR HONOR.  IT REQUIRES A DISCLOSURE TO THE MARKET; OTHERWISE,
16  THERE'S NO SEPARATION BETWEEN THE FALSITY PRONG AND LOSS
17  CAUSATION.  THAT WAS WHAT DURA WAS ALL ABOUT.  THERE MUST BE A
18  DISCLOSURE OF THE SPECIFIC FRAUD THAT WAS ALLEGED IN ORDER FOR
19  LOSS CAUSATION TO HAVE INDEPENDENT MEANING AS AN ELEMENT OF A
20  10(B)(5) CLAIM.  DURA SAYS THAT.  DAOU SAYS THAT.  GILEAD SAYS
21  THAT.  GILEAD TALKS ABOUT WHAT THE ANALYSTS UNDERSTOOD, AGAIN,
22  IN THAT FRAMEWORK.  AND, OF COURSE, METZLER SAYS THAT.
23          SO WHEN MR. WILLIAMS STANDS UP HERE AND SAYS, WELL,
24  IT WASN'T WORTH WHAT THEY SAID IT WAS WORTH -- WHAT HAPPENED ON
25  MARCH 1 WAS THAT THE ANALYSTS REALIZED THAT THE COMPANY'S FUTURE
```

1  CASH FLOWS WERE GOING TO BE IMPACTED, SO THEY TOOK THE STOCK
2  PRICE DOWN, BUT NOT BECAUSE OF THE DISCLOSURE OF A FRAUD, BUT
3  BECAUSE IT WAS THE HARBINGER OF AN INDUSTRY-WIDE DOWNTURN.
4  THAT'S WHY THE PLAINTIFFS' ARTICULATION OF THE LEGAL STANDARD ON
5  PAGE 45 OF THE OPPOSITION IS WRONG.
6          OF COURSE, THE DISCLOSURE CAUSED THE DECLINE. THE
7  QUESTION IS, DID THE ALLEGED FRAUD CAUSE THE DECLINE?  AND AS TO
8  THAT, THE MARKET HAD TO BE AWARE THAT THERE WAS FALSE
9  STATEMENTS.
10          SO WITH RESPECT TO *ADOBE*, FOR EXAMPLE, WITH RESPECT
11 TO STATEMENT THAT WE'RE GOING TO GIVE GUIDANCE, OKAY, AND IT WAS
12 GOING TO BE 12 CENTS, THE FACT THEY DIDN'T REACH THE GUIDANCE
13 UNDER THE JURISPRUDENCE THAT THIS COURT KNOWS VERY WELL, DOESN'T
14 MEAN THAT STATEMENT WAS FALSE. THE QUESTION IS WHETHER IT HAD A
15 REASONABLE BASIS WHEN IT WAS MET.
16          SO LET'S ASSUME FOR THESE PURPOSES THAT IT DIDN'T
17 HAVE A REASONABLE BASIS. OKAY?  THAT THEY MET THE FALSITY
18 PRONG.  DID THE MARKET UNDERSTAND ON MARCH 1ST THAT THE EARNINGS
19 MISS, WHICH IS WHAT'S IMPORTANT TO FOCUS ON, THAT THE EARNINGS
20 MISS WAS CAUSED BY THE FACT THAT THE DEFENDANTS DIDN'T HAVE A
21 REASONABLE BASIS THAT IT WAS FALSE?
22          **THE COURT:**  THAT GETS BACK TO JUSTICE O'CONNOR'S
23 QUESTION THEN, DOESN'T IT?
24          **MR. WALD:**  YOUR HONOR, WITH GREAT RESPECT FOR JUSTICE
25 O'CONNOR --

## **CERTIFICATE OF REPORTER**

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 01-0988 SI, IN RE: ORACLE SECURITIES LITIGATION, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

/S/ JOAN MARIE COLUMBINI

JOAN MARIE COLUMBINI, CSR 5435, RPR

WEDNESDAY, FEBRUARY 18, 2009