LATHAM & WATKINS LLP
  Peter A. Wald (SBN 85705)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
E-mail: peter.wald@lw.com

Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY and EDWARD J. SANDERSON

ORACLE CORPORATION
  Dorian Daley (SBN 129049)
  James C. Maroulis (SBN 208316)
500 Oracle Parkway
Mailstop 5OP7
Redwood Shores, California 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114
E-mail: jim.maroulis@oracle.com

Attorneys for Defendant ORACLE CORPORATION

LATHAM & WATKINS LLP
  Patrick E. Gibbs (SBN 183174)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
E-mail: patrick.gibbs@lw.com

LATHAM & WATKINS LLP
  Sean M. Berkowitz (*pro hac vice*)
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: sean.berkowitz@lw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In re ORACLE CORPORATION SECURITIES LITIGATION, <br><br> This Documents Relates To: <br><br> ALL ACTIONS | Master File No. C-01-0988 (SI) (Consolidated) <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF TO SUBMIT REPLY** <br><br> Honorable Judge Susan Illston |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' RESPONSE TO MOTION FOR
ADMINISTRATIVE RELIEF TO SUBMIT REPLY
MASTER FILE NO. C-01-0988-SI

## I. INTRODUCTION

Plaintiffs' Reply is procedurally improper and substantively meritless; it is prohibited under the rules (*see* Civ. Local Rule 7-11(c)) and is premised upon a legal standard that directly conflicts with Supreme Court and Ninth Circuit jurisprudence. Plaintiffs attempt to justify this submission by citing a need "to make clear their position" (Reply at 1), despite having submitted more than six briefs on the issue consisting of hundreds of pages of legal argument (not to mention oral argument). (Docket Nos. 1475, 1506, 1538, 1541, 1569 and 1602.) Plaintiffs further contend that their submission is warranted because the law is "developing on the standards of loss causation" – yet they base their latest theory not on the cases that purportedly justified the underlying motion but upon their defective interpretation of a legal construct from the Second Circuit (articulated in a case decided over four years ago), which when properly framed is entirely consistent with the governing Ninth Circuit jurisprudence on loss causation (*Metzler*) that Plaintiffs assiduously fail to address. (Reply at 1-2.) In the end, Plaintiffs come nowhere close to satisfying the loss causation standards set forth in *Dura* and embraced by the Ninth Circuit. Even if the Court were inclined to consider Plaintiffs' latest (improper) submission, their arguments must be rejected.

## II. ARGUMENT

Having previously argued that they "need only present enough evidence from which a reasonable jury could conclude that the disclosure caused the decline" (Docket No. 1541 at 45), Plaintiffs *now* contend that loss causation requires "only that the truth as to Oracle's operations was different than as previously represented and, as a result, depreciation in share value occurred." (Reply at 2.)[1] The consistent flaw in Plaintiffs' shifting legal position is that their purported loss is not "linked" to the market's awareness of a fact that was allegedly concealed by fraud.[2] This is the

---

[1] Plaintiffs' new legal standard is fundamentally inconsistent with the standard they articulated at the February 13 hearing. (Docket No. 1599 at 45:14-17 (Court: "So what you're saying then is the market had to have understood that there was a misstatement…. Mr. Williams: Exactly."); *id.* at 45:25-46:2 (Court: "So there has to be a market incorporation of an understanding that there had been misstatements? Mr. Williams: Absolutely.").)

[2] In *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-44 (2005), the Supreme Court held that a securities fraud plaintiff must demonstrate that its loss was caused when a "relevant truth" became "generally known." However, Plaintiffs' latest theory would encompass losses caused by events unrelated to fraud, and would provide recovery for stock price declines where the relevant truth

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' RESPONSE TO MOTION FOR
ADMINISTRATIVE RELIEF TO SUBMIT REPLY
MASTER FILE NO. C-01-0988-SI

1   "causal connection" required by *Dura*, and the lynchpin of the Ninth Circuit's loss causation
2   analysis. Plaintiffs' latest proposed standard (loss causation requires "that the truth as to Oracle's
3   operations was different than as previously represented") conflates the elements of "falsity" and
4   "loss causation" (reading out the latter altogether), and simply cannot be reconciled with the
5   standard adopted by the Ninth Circuit in *Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
6   540 F.3d 1049, 1063 (9th Cir. 2008) ("[T]he practices that the plaintiff contends are fraudulent
7   must be revealed to the market and cause[] the resulting losses."). Absent evidence that the market
8   learned a "relevant truth," there can be no loss causation under the federal securities laws.

A.   **THE NINTH CIRCUIT REQUIRES "MARKET AWARENESS" OF THE RELEVANT TRUTH**

The Ninth Circuit requires securities fraud plaintiffs to demonstrate that their losses were caused by the market's learning of and reacting to the revelation of facts that were concealed by the alleged fraud. *See Metzler*, 540 F.3d at 1063; *In re Daou Sys.*, 411 F.3d 1006 (9th Cir. 2005).

In *Metzler*, the plaintiff alleged that an operator of vocational colleges engaged in a pervasive fraud aimed at boosting federal funding and manipulating enrollment records. *Metzler*, 540 F.3d at 1055. The plaintiff claimed that the truth was revealed (causing the stock drop) in a June 24, 2004 *Financial Times* story and an August 2, 2004 earnings announcement. *Id.* at 1063. The Court dismissed the action because plaintiff did not allege "that the June 24 and August 2 announcements disclosed – or even suggested – to the market that Corinthian was manipulating student enrollment figures…." *Id.* Notably, the Court rejected plaintiff's argument that the August 2 press release was "understood by the market" as a "euphemism" for improper enrollment practices, because there were no facts suggesting "that on August 2 the market became aware that Corinthian was manipulating student records…." *Id.* at 1064. The Court concluded that as long as there is a stock drop, "a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud." *Id.* However, "[e]nabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura*

---

never was revealed to the market. As *Dura* makes clear, the securities laws are not meant to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Id*. at 345.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2   DEFENDANTS' RESPONSE TO MOTION FOR
    ADMINISTRATIVE RELIEF TO SUBMIT REPLY
    MASTER FILE NO. C-01-0988-SI

discredited – that loss causation is established through an allegation that a stock was purchased at an inflated price." *Id.* (internal citations omitted).[3]

Similarly, in *Daou* the Court held that plaintiff adequately pled loss causation because "the [complaint] allege[d] that 'Defendants … revealed that the Company's rapidly escalating work in progress account represented over $10 million in unbilled receivables – *the direct result of prematurely recognizing revenue*." *Daou*, 411 F.3d at 1026. However, the plaintiff did not adequately plead loss causation for the drop in stock price that occurred *before* the corrective disclosure occurred because the facts concealed by the fraud had not yet been revealed to the market. *Id.* at 1027. As the Ninth Circuit subsequently explained in *Metzler*: "[T]he *Daou* court's careful delineation between losses caused after … and losses suffered before the revelation, confirm that the complaint must allege *that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses*." *Metzler*, 540 F.3d at 1063 (emphasis added). The Court further observed that "Plaintiffs adequately pled loss causation in *Daou* because their complaint alleged that the *market learned of and reacted to this fraud*, as opposed to merely reacting to reports of the defendant's poor financial health generally." *Id.* (emphasis added).[4]

In the face of this clear and controlling Ninth Circuit precedent – and without even citing let alone discussing *Metzler* – Plaintiffs introduce for the first time an entirely new theory of loss causation: "materialization of the concealed risk." (Reply at 1-2 (*citing Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005).) The "materialization of the concealed risk" doctrine is a legal construct emanating from the Second Circuit, which requires "that the misstatement or omission conceal[] something from the market that, *when disclosed*, negatively affected the value

---

[3] Relying on *Metzler*, Judge Breyer recently dismissed a Section 11 claim on loss causation grounds because the disclosure precipitating the stock drop "reveal[ed] nothing about what was allegedly misrepresented in or omitted from the Registration Statement." *In re Shoretel Inc. Sec. Litig.*, No. C 08-00271, 2009 U.S. Dist. LEXIS 11151, at *15 (N.D. Cal. Feb. 2, 2009).

[4] In *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008), the Ninth Circuit adhered to the rule that loss causation requires that the market learn the relevant truth. In *Gilead*, the plaintiff sufficiently pled loss causation because the alleged corrective disclosure – an October press release (which followed an earlier partial disclosure) – revealed lower-than-expected revenues, which *analysts* specifically ascribed to "lower end-user demand," which in turn was alleged to have been caused by the earlier partial disclosure of defendants' illegal marketing practices. *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' RESPONSE TO MOTION FOR
ADMINISTRATIVE RELIEF TO SUBMIT REPLY
MASTER FILE NO. C-01-0988-SI

1   of the security." *Lentell*, 396 F.3d at 173 (emphasis added). This doctrine does not allow

2   Plaintiffs an "end-run" around *Dura*, nor does it provide a mechanism for demonstrating loss

3   causation in the absence of evidence that the market learned a "relevant truth." Indeed, *Lentell* – a

4   case that Defendants cited in their summary judgment briefing (Docket Nos. 1524 and 1544) –

5   requires the plaintiff to identify either a corrective disclosure (*Lentell*, 396 F.3d at 175 ("[t]here is

6   no allegation that the market reacted negatively to a corrective disclosure regarding the falsity of

7   [defendant's misstatements]")) or "market realization" that the defendant had concealed the very

8   risk causing the loss. *Id.* at 176 ("[P]laintiffs allege no loss resulting from the *market's realization*

9   that the [misstatements] were false, or that [defendant] concealed any risk that could plausibly have

10  caused plaintiffs' loss.") (emphasis added). Under either scenario – and consistent with *Dura* – the

11  lynchpin of the analysis is "market realization" or "awareness" of the previously concealed facts.

12  *Id.*; *see also In re Williams Sec. Litig.*, No. 07-5119, 2009 WL 388048, at *7 (10th Cir. Feb. 18,

13  2009) (rejecting "materialization of the concealed risk" argument where expert "could not explain

14  how the market learned of the fraud").[5]

15        In any event, while Plaintiffs invoke the "materialization of the concealed risk" standard,

16  they continue to characterize this as a "corrective disclosure" case (as it has been plead and argued

17  for the past eight years), and assert that their losses were caused by Oracle's March 1

18  announcement. (Reply at 4 ("Oracle's March 1, 2001 revelation … is the announcement that

19  forces the market to revalue Oracle by more than 20%.").)[6] Of course, the March 1 announcement

20  – like the disclosures in *Metzler* – did not reveal *anything* about the alleged misstatements in this

---

[5] In *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2009 U.S. Dist. LEXIS 8125, at *21 (N.D. Cal. Feb. 4, 2009), the court held that on a motion to dismiss, the defendant had failed to demonstrate "negative causation" as a matter of law under Section 11 of the Securities Act (where the defendant bears the burden of proof on loss causation). This decision does *not* stand for the proposition that a plaintiff can establish loss causation without establishing market awareness of the "relevant truth;" indeed, the *Schwab* case cites and relies upon *Lentell,* which as demonstrated above requires such market awareness under both the "corrective disclosure" and "materialization of the concealed risk" frameworks. While the *Schwab* court did not cite or discuss *Metzler,* the Second Circuit's analysis in *Lentell* is consistent with the Ninth Circuit's analysis in *Metzler*.

[6] Plaintiffs have always claimed that the March 1 announcement caused their alleged losses. (RSAC ¶ 17 ("[I]n a March 1, 2001 press release, Oracle revealed that defendants' prior assurances … were inaccurate."); *see also* Docket Nos. 1254 at 48-49, 1288 at 12, 1538 at 7 and 1541 at 46.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4   DEFENDANTS' RESPONSE TO MOTION FOR
ADMINISTRATIVE RELIEF TO SUBMIT REPLY
MASTER FILE NO. C-01-0988-SI

1 case. (Docket Nos. 1524, 1567 and 1599 at 23:16-20.) Nor is there a shred of evidence that the market attributed Oracle's 3Q01 earnings miss to any fact concealed by the alleged misstatements (*i.e.*, indirect disclosure). (*Id.*; *see also* 1599 at 23:21-38:17.) That is the end of the analysis.

**B.  PLAINTIFFS' PURPORTED "EVIDENCE" OF MARKET AWARENESS PROVES NOTHING**

Implicitly conceding the vacancy of their position on the legal standard, Plaintiffs again retreat to a rehash of the "evidence" they offered in support of their loss causation argument. Everything they recite in the Reply, of course, was set forth in the voluminous briefing that Plaintiffs have already submitted – and it speaks volumes about the quality of this evidence that Plaintiffs did not even bother to address it at oral argument. (Docket No. 1599.)[7]

In any event, while Plaintiffs contend that "there may be market realization" *and* that is the "type of direct connection which occurred here" (Reply at 3), none of Plaintiffs' evidence remotely suggests that the market recognized *any* relationship between the earnings miss and the alleged misstatements. Nor does a single article or analyst report reveal (or even suggest) that Defendants' prior statements were false. (Docket Nos. 1567 at 9-12, 1544 at 40-42 and 1599 at 28:12-38:9.) Indeed, it is precisely because there is no evidence the market ever learned a "relevant truth" that Plaintiffs have filed a series of post-hearing briefs, which propose new and shifting loss causation standards that contravene *Metzler* while failing even to discuss it.

**III.  CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Administrative Relief to Submit Reply Brief in Response to Defendants' Opposition to Plaintiffs' Motion for Administrative Relief.

Dated: March 2, 2009
        LATHAM & WATKINS LLP
          Peter A. Wald
          Patrick E. Gibbs
          Sean M. Berkowitz

By: _____/s/ Peter A. Wald_____
      Peter A. Wald
Attorneys for Defendants ORACLE CORPORATION, LAWRENCE J. ELLISON, JEFFREY O. HENLEY and EDWARD J. SANDERSON

---

[7]  As noted at the February 13 hearing, the evidence upon which Plaintiffs rely in support of their loss causation argument is set forth on page 18 of their 20A MSJ Reply. (Docket No. 1569 at 18.)

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' RESPONSE TO MOTION FOR
ADMINISTRATIVE RELIEF TO SUBMIT REPLY
MASTER FILE NO. C-01-0988-SI