# EXHIBIT D



LEXSEE 2009 US DISTRICT LEXIS 22022

### IN RE DOTHILL SYSTEMS CORPORATION SECURITIES LITIGATION

CASE NO. 06-CV-228 JLS (WMc)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

*2009 U.S. Dist. LEXIS 22022*

March 18, 2009, Decided
March 18, 2009, Filed

**COUNSEL:** [*1] For Matt Brody, On Behalf of Himself and All Others Similarly Situated, Matt Brody, Plaintiffs: Kara Michelle Wolke, Glancy Binkow and Goldberg, Los Angeles, CA.

For Lead Plaintiffs, Plaintiff: Andy Sohrn, LEAD ATTORNEY, Kara Michelle Wolke, Glancy Binkow and Goldberg, Los Angeles, CA; Philip C Tencer, Cooley Godward Kronish LLP, San Diego, CA.

For Dot Hill Systems Corporation, James L Lambert, Dana W Kammersgard, Preston S Romm, William R Sauey, Defendants: Darcie Tilly, Meghan O'Ryan Spieker, Cooley Godward Kronish, San Diego, CA; Philip C Tencer, Cooley Godward Kronish LLP, San Diego, CA.

For The Detroit Pension, Movant: Ira M Press, Peter S Linden, LEAD ATTORNEYS, Kirby McInerney LLP, New York, NY; Lionel Z Glancy, LEAD ATTORNEY, Glancy Binkow and Goldberg, Los Angeles, CA; Michael M Goldberg, LEAD ATTORNEY, Glancy and Blinkow, Los Angeles, CA.

For The Brucker Group, Movant: Michiyo Michelle Furukawa, LEAD ATTORNEY, Milberg LLP, Los Angeles, CA.

For Inna Naryznai, Plaintiff: Michael M Goldberg, LEAD ATTORNEY, Glancy and Blinkow, Los Angeles, CA; Kara Michelle Wolke, Glancy Binkow and Goldberg, Los Angeles, CA.

For Joseph Chris Jardin, Plaintiff: Frank J Johnson, Jr, LEAD ATTORNEY, Johnson [*2] Bottini, LLP, San Diego, CA; Kara Michelle Wolke, Glancy Binkow and Goldberg, Los Angeles, CA.

For Yoel Steinberg, Plaintiff: Leigh A Parker, LEAD ATTORNEY, Weiss and Lurie, Los Angeles, CA; Kara Michelle Wolke, Glancy Binkow and Goldberg, Los Angeles, CA.

For Police and Fire Retirement System of the City of Detroit, Plaintiff: Michael M Goldberg, LEAD ATTORNEY, Glancy and Blinkow, Los Angeles, CA; Peter S Linden, LEAD ATTORNEY, Kirby McInerney LLP, New York, NY; Kara Michelle Wolke, Glancy Binkow and Goldberg, Los Angeles, CA.

For The General Retirement System of the City of Detroit, Plaintiff: Eric J Belfi, LEAD ATTORNEY, Murray Frank and Sailer, New York, NY; Ira M Press, Peter S Linden, LEAD ATTORNEY, Kirby McInerney LLP, New York, NY; Michael M Goldberg, LEAD ATTORNEY, Glancy and Blinkow, Los Angeles, CA; Michelle Wolke, Glancy Binkow and Goldberg, Los Angeles, CA.

**JUDGES:** Honorable Janis L. Sammartino, United States District Judge.

**OPINION BY:** Janis L. Sammartino

**OPINION**

**ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS AND (2) DISMISSING WITHOUT PREJUDICE**

(Doc. No. 92.)

Presently before the Court is a motion to dismiss the Third Amended Consolidated Class Action Complaint ("TACC") by Dot Hill Systems Corporation, [*3] James L. Lambert, Dana W. Kammersgard, Preston S. Romm, and William R. Sauey [1] ("Defendants"). (Doc. No. 92.) For the reasons stated below, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITHOUT PREJUDICE** the present action.

> 1   The individual defendants held the following roles during the relevant period: Lambert--founder, director, Chief Executive Officer, President, Chief Operating Officer, Vice-Chairman of Board; Kammersgard--Chief Technical Officer, President, and Chief Executive Officer; Sauey--founder and director; and Romm--Chief Financial Officer and Treasurer. (TACC PP 19-22.)

## BACKGROUND

### A. Facts

Lead Plaintiffs bring this putative class action on behalf of all purchasers of Dot Hill common stock between April 23, 2003 and April 27, 2006. (TACC P 1.)

Dot Hill provides data storage devices (i.e., hard drives), both as stand-alone units and as part of larger storage systems. (Id. P 2.) Dot Hill's devices employ Redundant Array of Independent Disks ("RAID") technology. (Id.) In 2002, facing severe declines in sales and revenue, Dot Hill restructured its business by outsourcing its manufacturing, transitioning to an indirect sales model, and sharply reducing sales and administrative [*4] personnel. (Id. P 3.) That same year, Dot Hill secured a contract to provide data storage systems to Sun Microsystems, which became the source of 80-90% of Dot Hill's quarterly revenues. (Id. P 4.)

In September 2003, Dot Hill completed a secondary stock offering that raised approximately $ 154 million, with the individual defendants selling an additional $ 23.1 million. (Id. P 6.) Dot Hill used some of the revenues from this offering to purchase Chaparral Network Storage, Inc., a provider of RAID technology, with the intent of integrating Chaparral technology into its own products. (Id. P 7.) Dot Hill's share price increased from $ 6 at the start of the class period to a peak price of $ 18, dropped by half in 2004 and early 2005, eventually declined to $ 4.55 on April 28, 2006 and then subsequently declined to $ 3 per share. (Id. P 12.)

The TACC alleges four sets of misrepresentations giving rise to Plaintiffs' claim for federal securities fraud. First, Plaintiffs allege that, for the first 3 quarters of 2004, Dot Hill misrepresented (1) its financial results, and (2) the certification of Dot Hill's disclosure controls. (Id. PP 27-28.) Plaintiffs allege that Dot Hill admitted the falsity [*5] of these statements when it acknowledged "internal control deficiencies that constitute material weaknesses" and attributed those deficiencies to outdated software and inadequate accounting resources. (Id. P 30-35.) According to the TACC, Dot Hill's management knew of the shortcomings in its accounting software through conversations between employees and the executive defendants, but were committed to the software for financial and personal reasons. (Id. P 38.) Management was also allegedly aware of understaffing in the accounting department because of the long hours worked by those employees, the difficulty "clos[ing] the books" each month, and the absence of staff with adequate credentials. (Id. P 40.)

Second, Plaintiffs allege misrepresentations associated with Defendants' remarks about the salutary effects of staff cuts and its business model predicated on outsourced manufacturing and indirect sales. Dot Hill particularly emphasized its annualized revenue figure of more than $ 1 million per employee. (Id. PP 42, 44-48.) Dot Hill further represented its expectation that it would continue to operate with fewer than two hundred employees. (Id. PP 43, 45.) Moreover, during the relevant [*6] period, Dot Hill touted that its business model as a success. (Id., PP 45-48.) The representations that this business model was working well were allegedly false because Dot Hill's business model, rather than making the company sustainably profitable, "had resulted in organizational dysfunction and breakdown." (Id. P 49.) Pointing to inadequate accounting personnel and inexperienced sales staff, Plaintiffs claim that Dot Hill could not perform "basic task[s]" such as "producing materially correct financial statements." (Id. P 50.) The TACC attributes these shortcomings to Defendants' insistence on maintaining per-employee revenue levels above $ 1 million. (Id. P 52.) Plaintiffs allege that Defendants' representations of "a 'lean' or 'efficient' organization" in 2003-04, including its representations of profits earned during those periods, were effectively false because, if Dot Hill had maintained operating costs and employee headcount at sustainable levels during that period, its financial results would have been much worse. (Id. PP 55, 58.) Dot Hill's results in subsequent years declined because the company incurred operating costs associated with hiring more accountants and upgrading [*7] software and because the incompetent sales force could not secure new customers. (Id. PP 50, 60.)

Third, Plaintiffs allege that Defendants made misleading representations about Dot Hill's relationship with Sun Microsystems, its largest customer, and the acquisition of Chaparral technologies. (Id. PP 62-64.) . These positive statements included Dot Hill's commitment to

Case 3:01-cv-00988-SI    Document 1612-4    Filed 04/02/09    Page 4 of 12

Page 3
2009 U.S. Dist. LEXIS 22022, *

making the relationship with Sun successful, (see, e.g., id. P 67) announcements of extensions of the Sun-Dot Hill contract, (see, e.g., id. P 66) and claims that the integration of Chaparral technology into Dot Hill products was "on schedule" and "continuing smoothly." (See, e.g., id. P 75.) Plaintiffs allege that Sun was actually dissatisfied with Dot Hill's services and that Dot Hill acquired Chaparral because Sun demanded that Dot Hill acquire a new source of RAID technology. (Id. P 85.) Further, the integration of the Chaparral technology was progressing more slowly, with the delivery of products to market more remote than Dot Hill was representing. (Id. P 80.) Dot Hill management allegedly must have known about these delays in the Chaparral integration because Defendant Kammersgard, Dot Hill's Chief Technology Officer, [*8] kept aware of issues in Dot Hill's product development including those regarding the integration. (Id. P 83.) Plaintiffs claim that the slowness of the Chaparral integration made Sun very dissatisfied, and that, as such, Plaintiff's claims that the companies' relationship was healthy were false. (Id. P 85.) The alleged truth finally came to light on April 28, 2006, when Dot Hill disclosed that Sun had awarded a product development contract to one of Dot Hill's competitors. (Id. P 95.)

Fourth, and finally, Plaintiffs allege that Defendants misrepresented the extent of their success in attracting new customers. (Id. P 87.) These misrepresentations included press releases announcing "agreements" with third parties, and statements proclaiming Dot Hill's intent to pursue additional customers and their success in doing so. (Id. PP 88-97.) Plaintiffs claim that these statements were misleading because the agreements did not require purchases of Dot Hill products, often failed to generate much revenue, and Defendants were not actually committed to acquiring and keeping new customers. (See, e.g., id. PP 98, 102, & 105.) Defendants allegedly knew that these statements were false because they [*9] were aware of Dot Hill's underqualified sales staff and inadequate investment in business development. (Id. PP 104-05.)

### B. Procedure

The TACC pleads two causes of action for (1) violation of Exchange Act § *10(b)* and *Rule 10b-5*, and (2) controlling person liability under Exchange Act § *20(a)*. The Hon. Thomas J. Whelan reassigned the action to this Court on September 25, 2007. (Doc. No. 64.) On September 2, 2008, this Court granted Defendants' motion to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint ("SACC"), and dismissed this case without prejudice. (Doc. No 85.) On October 10, 2008, Plaintiffs filed the TACC. (Doc. No. 88.) Defendants filed the instant motion to dismiss on November 24, 2008. (Doc. No. 92.) Plaintiffs filed their opposition on January 15, 2009 and Defendants filed a reply brief on February 5, 2009. (Doc. Nos. 95 & 97.)

## DISCUSSION

### A. Legal Standard

To survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)* [*10] (citing *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id. at 1965* (internal citations omitted). In reviewing the motion to dismiss, the Court must assume the truth of all factual allegations and construe inferences in the light most favorable to the nonmoving party. *Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).*

A plaintiff "must state with particularity the circumstances constituting fraud." *Fed. R. Civ. P. 9(b).* Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *15 U.S.C. § 78u-4(b)(1).* Therefore, plaintiffs must specifically identify the allegedly fraudulent statements or acts of fraud. *Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).* And, plaintiffs must plead evidentiary facts including [*11] the dates, times, places, and persons associated with each misrepresentation or act of fraud. *In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1548-49 n.7 (9th Cir. 1994)* (en banc) (superseded by statute on other grounds); *Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).*

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2).* Therefore, plaintiffs must also plead scienter with particularity. *Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001); In re Impac Mortgage Holdings, Inc. Sec. Litig., 554 F. Supp. 2d 1083, 1099 (C.D. Cal. 2008).* Plaintiffs "must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 979 (9th Cir. 1999).* Recklessness amounts to "'an extreme departure from the standards of ordinary care, and . . . presents a danger of misleading buyers and sellers that is either known to the

Case 3:01-cv-00988-SI  Document 1612-4  Filed 04/02/09  Page 5 of 12

Page 4
2009 U.S. Dist. LEXIS 22022, *

defendant or is so obvious that the actor must have been aware of it.'" *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 389 (9th Cir. 2002) [*12] (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990)). Liability for forward-looking statements, however, attaches only if the plaintiff can prove that the statement was made with actual knowledge of its falsity. *15 U.S.C. § 78u-5(c)(1)(B)*; *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003). As recently prescribed by the Supreme Court, to determine the strength of a scienter inference, this Court "must consider plausible nonculpable explanations for the defendants' conduct, as well as inferences favoring the plaintiff." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2510, 168 L. Ed. 2d 179 (2007). The complaint survives "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id.

Courts within the Ninth Circuit combine the falsity and scienter pleading requirements into a single inquiry, such that "'the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of [*13] the statements when made.'" *In re Read-Rite Corp.*, 335 F.3d 843, 846 (9th Cir. 2003) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)).

When plaintiffs base their allegations on information and belief, "[i]t is not sufficient . . . to set forth a belief that certain unspecified sources will reveal . . . facts that will validate [plaintiffs'] claim." *Silicon Graphics*, 183 F.3d 970 at 985; *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1023 (S.D. Cal. 2005). Although a complaint may keep confidential the identities of personal sources, those confidential witnesses "should be 'described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004) (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)); *Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1211 (S.D. Cal. 2005). A complaint relying on anonymous confidential witnesses must also contain "adequate corroborating details." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005); *Adecco*, 371 F. Supp. 2d at 1211. [*14] Such details might include job descriptions, work responsibilities, position titles, and corporate executives to whom the witnesses reported. *Daou Sys.*, 411 F.3d at 1016. However, the Ninth Circuit has cautioned that a confidential witness's reliance on hearsay "may indicate that [the] confidential witnesses' report is not sufficiently reliable, plausible, or coherent to warrant further consideration under Daou." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 2009 WL 311070, at *11 n.4 (9th Cir. 2009) (citation omitted). To determine the adequacy of allegations based on confidential witness accounts, the court evaluates "'the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of the sources, [and] the reliability of the sources.'" *Id.* at 1015 (quoting *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29 (1st Cir. 2002)); *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1141-42 (W.D. Wash. 2006).

Also as part of a securities fraud claim, plaintiffs must plead "'loss causation,' i.e., a causal connection between the material misrepresentation and [*15] the loss." *15 U.S.C. § 78u-4(b)(4)*; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). In other words, "the complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008). "A limited temporal gap" from the revelation of the misrepresentation to the stock price decline does not invalidate the loss causation theory. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008). Without specifying whether loss causation pleading must satisfy the particularity requirements of *FRCP 9(b)* or simply provide the "short and plain statement of the claim" of *FRCP 8(a)(2)*, the Ninth Circuit requires "sufficient detail to give defendants ample notice of plaintiffs' loss causation theory, and to give [the court] some assurance that the theory has a basis in fact." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989-90 (9th Cir. 2008).

When dismissing a complaint, the Court may deny leave to amend only if it appears with certainty that the plaintiff cannot state a claim and any amendment would be futile. See *Fed. R. Civ. P. 15(a)* [*16] (stating leave to amend "shall be freely given when justice so requires"); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B. Discussion**

1. Falsity/Scienter

*a. Five Specific Categories of Misrepresentations*

I. FINANCIAL STATEMENTS

The TACC does not resolve this Court's concerns about the inadequate scienter pleadings. Even as

Case 3:01-cv-00988-SI    Document 1612-4    Filed 04/02/09    Page 6 of 12

Page 5
2009 U.S. Dist. LEXIS 22022, *

amended, "[n]one of the alleged misrepresentations in the financial statements . . . pertain[] to the adequacy of defendants' accounting software or the qualifications of its accounting department." *In re Dot Hill Sys. Corp. Sec. Litig. (Dot Hill III), F. Supp. 2d , 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at \*6 (S.D. Cal. 2008).* Plaintiffs add two additional alleged misrepresentations in its TACC. Plaintiffs point to Dot Hill's Sarbanes-Oxley ("SOX") certifications signed by Defendants Lambert and Romm which state that (1) the financial statements are accurate to the best of their knowledge, (Compl. P 28) and (2) that Dot Hill had adequate disclosure controls and procedures. (Compl. PP 28-29.)

First, Plaintiffs have not provided any additional information that would indicate [\*17] that the Defendants knew that financial statements were false when they were made. Plaintiffs' allegation, as their brief readily admits, is that "defendants had actual and prior knowledge of the *factors* that caused Dot Hill to report false financial statements." (Opp., at 12-13.) This is the same basis of liability advanced in the SACC. However, to survive the instant motion, Plaintiffs must plead scienter with respect to the falsity of the financial statements. Simple awareness of the factors which led to the inaccuracies in Dot Hill's financial statements do not constitute "a strong circumstantial case of deliberate recklessness or conscious misconduct." *DSAM, 288 F.3d at 390.* Even taking Plaintiffs' "other allegations" into account, (Opp., at 13) the inference of scienter is not "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, 127 S. Ct. at 2510.*

Second, Plaintiffs argue that Defendants SOX certifications, which stated that Dot Hill had adequate disclosure controls and procedures, were materially false and that Defendants made those statements with the requisite scienter. (TACC P 30-37; Opp., at 13-15.) The Court finds two problems [\*18] with this allegation as currently pled. The first problem is that falsity is lacking because the allegation glosses over the difference between "internal controls" and "disclosure controls." As Defendants point out in their reply brief, the restated financials admitted a deficiency in Dot Hill's internal controls, not their disclosure controls. (Reply, at 1-2.) Disclosure controls "ensure that information required to be disclosed by the issuer in the reports that it files or submits under the Act (*15 U.S.C. 78a et seq.*) is recorded, processed, summarized and reported, within the time periods specified in the Commission's rules and forms." *17 C.F.R. § 240.13a-15(e).* Internal controls, on the other hand, are intended "to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles." *17 C.F.R. § 240.13a-15(f).* As such, Defendants admission of a material weakness in their internal controls does not contradict the prior statement certifying Dot Hill's disclosure controls.

Even if the Court accepted that the certification of disclosure controls was [\*19] actually a certification of internal controls, Plaintiffs have still not sufficiently alleged scienter as to these statements. It is clear that Sarbanes-Oxley certifications cannot, in and of themselves, create an inference of scienter. *Zucco, 552 F.3d 981, 2009 WL 311070, at \*17-\*18.* Beyond those certifications, Plaintiffs' allege that Defendants' knew (1) the accounting department was working hard, (2) that Defendants' ERP system was "hard to use" or less than ideal, and (3) about the "big issues" identified by the auditors. Even if these allegations were true, they do not strongly indicate that Defendants knew that Dot Hill's disclosure controls and procedures were not "effective to ensure that information required to be disclosed . . . is recorded, processed, summarized and reported" at the time of the certifications. (TACC P 29.)

II. OPERATIONAL STRUCTURE

Again, Plaintiffs' amended complaint does not resolve the issues raised by this Court in its prior order. Plaintiffs claim that the TACC "cures the defects raised in the Order by making clear that these allegations relate, not to mismanagement, but to defendants' misstatements that its lean 'business plan works' when in fact it was not." (Opp., at 3.) [\*20] They claim that Defendants' "admissions" and confidential witness statements show that these statements were materially false when made, and that Defendants were deliberately reckless or actually knew that the business plan was not working. (Id., at 3-4.)

Nonetheless, "there is simply no false statement in defendants' . . . representations about its operating structure." *Dot Hill III, 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at \*7.* First, Plaintiffs admit that Defendants' most objectively verifiable statements about Dot Hill's operations, such as the claim that the company had revenue of one million dollars per employee and that the company was being operated with less employees, were true. (See, e.g., Opp., at 5.) Next, although Plaintiffs argue that it is not complaining about Defendants' management choices, (Opp., at 3) it appears both from the TACC and from Plaintiffs' brief that mismanagement is the core allegation. (See e.g., Compl. P 50(a)-(f); Opp., at 4.) These confidential witness statements do not establish (1) that Defendants acted in a deliberately reckless manner or (2) that they actually knew that the "leaner" business model would have deleterious future effects. Plaintiffs' confidential witnesses [\*21] still present only "a litany of employee complaints about how Dot Hill was managed during the relevant period." *Dot Hill III,*

*2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *7.* As this Court previously held, Plaintiffs' mismanagement allegations do not carry their pleading burden. Id.

Even taking Plaintiffs' claims about the content of their complaint at face value, dismissal of this claim is proper. Plaintiffs argue that Defendants' key misstatement was "that its lean 'business plan works.'" (Opp., at 3.) The Court, however, finds that this statement is "puffery." For a statement "to be actionable under federal securities laws, [it] must be material and of the type upon which a reasonable investor would rely." *In re Syntex Corp. Sec. Litig., 855 F.Supp. 1086, 1093-94 (N.D. Cal. 1994).* Conversely, "statements are not actionable if they 'are vague and constitute run-of-the-mill corporate optimism on which no reasonable investor would rely.'" *In re Wet Seal, Inc. Sec. Litig., 518 F. Supp. 2d 1148, 1168 (C.D. Cal. 2007)* (quoting *In re Copper Mountain Sec. Litig., 311 F.Supp.2d 857, 869 (N.D. Cal. 2004))*; see also *In re Metawave Commc'ns Corp. Sec. Litig., 298 F. Supp. 2d 1056, 1090 (W.D. Wash. 2003)* (citing *Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 200-01 (3d Cir. 1990))* [*22] (statements that are "so 'exaggerated' or 'vague' that no reasonable investor would rely on the statement when considering the total mix of available information," are not actionable); *In re Splash Tech. Holdings, Inc. Sec. Litig., 160 F. Supp. 2d 1059, 1076-77 (N.D. Cal. 2001).* In this case, according to the Complaint, Defendants' relevant false statements include that its "business plan works," (Compl. P 45) that their business model had "great results" and "yield[ed the] desired results," (Id. PP 46-47) and that their "operating model was working excellently." (Id. P 48.) Plaintiffs argue that these statements are clearly material because they involved "Dot Hill's most important matters." (Opp., at 10.) The Court disagrees. All of these statements are "vague" to the point of being "run-of-the-mill corporate optimism on which no reasonable investor would rely." *Wet Seal, 518 F.Supp. 2d at 1168.* As such, these statements are not actionable.

Finally, Plaintiffs have not adequately pled scienter. To this end Plaintiffs cite later statements by the Defendants that more personnel would be hired. (TACC P 49.) These subsequent statements do not demonstrate scienter at the time the allegedly [*23] false statements were made. *Read-Rite, 335 F.3d at 846.* Moreover, Plaintiffs' confidential witnesses merely parrot the belief that Dot Hill was understaffed and that there was a lot of work to do. This also does not establish scienter because low staff levels where everyone is working very hard would appear be exactly what Defendants desired and thus the very epitome of "working excellently." The fact that the lean business model eventually proved ineffective does not change this conclusion because "[f]raud by hindsight is not actionable." *Ronconi, 253 F.3d at 430 n.12.* In light of these facts, these allegations do not create an inference of scienter at least as compelling as the opposing inferences. *Tellabs, 551 U.S. 308, 127 S.Ct. 2499 at 2510, 168 L. Ed. 2d 179.*

### III. SUN MICROSYSTEMS RELATIONS & CHAPARRAL INTEGRATION

In the TACC, Plaintiffs have combined their allegations regarding Sun and the Chaparral integration into a single section of the complaint. Plaintiffs have not, however, cured the defects previously identified by this Court. Plaintiffs contend that Defendants made false statements by claiming (1) that the "integration of Chaparral technology was on schedule," and (2) that the integration "would assist [*24] its relationship with Sun." (Opp., at 6.)

First, with respect to the Chaparral integration, Plaintiffs have not ameliorated the Court's previously-expressed concerns. The Court's prior order noted that Plaintiffs "fail to provide an adequate explanation of why these statements are misleading." *Dot Hill III, 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *6.* Here, Plaintiffs merely assert that "the integration was not going smoothly and defendants knew that they would not be able to provide Sun with Chaparral integrated products," and that Defendants were ultimately unsuccessful in their integration efforts. (Opp., at 7-8.) This still does not explain "why" Defendants statements were misleading. Plaintiffs merely aver that "the integration was not going smoothly." (Id., at 7.) This is no better than Plaintiffs' prior contention that "progress, products and performance were significantly worse than advertised." (Doc. No. 59, at 6.) Plaintiffs have not proffered any facts that would suggest that Defendants' statements were untrue when made. [2] *15 U.S.C. § 78u-4(b)(1).*

> 2   The frequently noted claim that the Chaparral integration was not completed in April 2006 does not assist in showing scienter because it only addresses [*25] outcome, not Defendants' knowledge when making the statements. (See, e.g., TACC P 82.)

Further, Plaintiffs still do not adequately explain why Defendants statements are more than puffery. Plaintiffs argue that the statements' context means that they are not puffery. (Id., at 10-11.) However, Plaintiffs do not allege that the surrounding statements are untrue. Moreover, they do not explain why any "reasonable investor would rely" on such "exaggerated" or "vague" statements in light of all of the information, including the (apparently true) "specific predictions" and "specific representations" that formed the context for the more general alleged misstatement. *Metawave Commc'ns, 298 F. Supp. 2d at 1090* (citing *Hoxworth, 903 F.2d at*

200-01); see *Splash Tech, 160 F. Supp. 2d at 1076-77* (dismissing as non-actionable puffery references to, e.g., "strong" demand, "better than expected" or "robust" results, and an "improved" product line); (Opp., at 11).

In addition, the scienter allegations regarding these misstatements are also inadequate. Plaintiffs allege that Defendant Kammersgard must have known of problems in the Chaparral integration because of his position as Chief Technology Officer. [*26] (TACC P 83.) They also provide the statements of two confidential witness statements that the integration was not completed on schedule. (See id. P 82.) This, as before, is "not even close to providing the 'specific facts' necessary to establish scienter." *Dot Hill III, 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *7*. It does not establish that Defendants knew that these statements were false or acted in a deliberately reckless manner when the statements. Plaintiffs' confidential witness statements (1) are not contemporaneous with Defendants statements, [3] and (2) do not go to knowledge or recklessness in making the statements.

> 3  Even presuming that CW 15's statement was contemporaneous with Defendants' allegedly false statements regarding the Chaparral integration, "management expectations divorced from reality" does not establish intent or recklessness. (TACC P 82(a).)

Second, Plaintiffs' allegations regarding the Sun relationship fail to satisfy the PSLRA's pleading standard. Although Plaintiffs eliminated some of the statements identified in this Court's prior order as puffery, (see, e.g., SACC PP 80 & 81) the remaining statements still contain "exaggerated" and "vague" statements. (See, e.g., TACC PP 67, [*27] 73, & 74 (discussing making the relationship between Dot Hill and Sun a success).) The allegedly false statements were also made in the context of multiple contract extensions between Dot Hill and Sun. Plaintiffs do not adequately explain why the Court should ignore this contextual fact, especially in light of specific disclaimers regarding those extensions. (See, e.g., Tencer Decl. ISO MTD, Ex. A, at 148.) Most importantly, however, Plaintiffs still have not persuasively explained why Dot Hill was legally required to disclose the specific obstacles in its relationship with Sun. *Dot Hill III, 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *8*. Plaintiffs' evidence still lacks any sort of baseline from which to evaluate the relationship between Dot Hill and Sun. (Id.) Without that, there is no way to tell if Dot Hill's actions were indicative of things not going well with Sun or simply a normal business relationship.

Plaintiffs have also insufficiently addressed the Court's problems with its scienter allegations. First, Plaintiffs have not provided inferences of scienter that are as compelling as nonculpable explanations for Defendants conduct. For example, the nonculpable explanation for Dot Hill's acquisition [*28] of Chaparral, a commitment to its largest customer, is more compelling than the inference of scienter. (Id.) Similarly, the more compelling explanation for Dot Hill and Sun working together on bug fixes for Dot Hill's products is a functional business relationship. (Id.) Second, with respect to Dot Hill's press releases, Plaintiffs have not explained why the risk warnings contained therein were inadequate. As the Ninth Circuit has held, "detailed risk disclosure . . . negates an inference of scienter." *In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1425 (9th Cir. 1994)*. Here, Dot Hill disclosed the precise risk of which Plaintiffs complain: that Sun wasn't obligated to buy any Dot Hill products and could cancel the contract. (See, e.g., Tencer Decl. ISO MTD, Ex. D, at 267.) Plaintiffs' allegation that these warnings were simply "boilerplate" is entirely unsupported. Moreover, Plaintiffs have not explained why a warning that addresses in detail the precise risk which comes to pass, even if that warning is simply "boilerplate," is insufficient. (Opp., at 18, 24.)

Finally, Plaintiffs allege that Defendants' statements about Dot Hill's relationship with Sun are false because "the Chaparral [*29] integration was not going smoothly and this was negatively impacting [Dot Hill's] relationship with Sun." (Opp., at 6.) However, because Plaintiffs have not established falsity or scienter with respect to its Chaparral integration allegations, those statements do not bolster the allegation that the statements about the Sun relationship were false.

IV. NEW CUSTOMERS

Plaintiffs' "new customer" allegations also require dismissal because their falsity and scienter allegations are defective. [4] Although Plaintiffs identify some statements which they claim to be false, the allegations involved do not demonstrate falsity. (See, e.g., TACC P 98.) First, Plaintiffs have not pled that Dot Hill's representations that they entered into new contracts with vendors are false.

> 4  At oral argument, Plaintiffs' counsel conceded that the TACC does not resolve the concerns expressed by the Court in its prior order.

Second, Plaintiffs' allegation that Defendants' statements were false because the "contracts with new customers were small and in most cases 'one-off orders,'" is also inadequate. (Id.) Even if these "partnerships" were limited, such limitation does not demonstrate that Dot Hill was not "commit[ted] [*30] to the channel and to increasing [their] OEM and indirect sales revenue going forward." Allegations that are "not necessarily inconsistent" with the allegedly false statement do not establish

Case 3:01-cv-00988-SI   Document 1612-4   Filed 04/02/09   Page 9 of 12

Page 8
2009 U.S. Dist. LEXIS 22022, *

falsity. *Ronconi,* 253 F.3d at 432-33 (citing *Yourish v. Cal. Amplifier,* 191 F.3d 983 (9th Cir. 1999)). Moreover, to the extent Plaintiffs present claims such as Dot Hill not "getting 'traction' from NS solutions," it fails to demonstrate why signing up a new customer, even to a small contract, should not be considered "traction." (TACC P 103.)

Third, even if Plaintiffs could show that these statements were false, their evidence does not demonstrate scienter. In significant measure, these allegations still amount to a criticism of (1) Dot Hill's management's willingness to spend on marketing, (TACC PP 101 & 105) and (2) the quality of Dot Hill's sales staff. (Id. PP 100, 102, & 104.) As this Court previously held, allegations of mismanagement are not actionable in securities fraud cases. E.g., *Field v. Trump,* 850 F.2d 938, 947-48 (2d Cir. 1988); *In re Bellsouth Corp. Sec. Litig.,* 355 F. Supp. 2d 1350, 1373 (N.D. Ga. 2005); *In re Citigroup, Inc. Sec. Litig.,* 330 F. Supp. 2d 367, 375-78 (S.D.N.Y. 2004); [*31] *In re E.Spire Commc'ns, Inc. Sec. Litig.,* 127 F. Supp. 2d 734, 748 (D. Md. 2001). Further, to the extent that Plaintiffs have alleged something more than mismanagement, the inferences of scienter are negated by Dot Hill's risk disclosures. (Tencer Decl. ISO MTD, Ex. A, at 148); see also *Wet Seal,* 518 F. Supp. 2d at 1165(quoting *Worlds of Wonder,* 35 F.3d at 1425). Those disclosures specified that "[n]one of [Dot Hill's] contracts . . . contain any minimum purchasing commitment," and that future contracts would likely also contain no such provisions. (Tencer Decl. ISO MTD, Ex. A, at 148.) As such, Plaintiffs have not adequately alleged scienter.

### b. Generalized Scienter Allegations

Plaintiffs again bolster their specific scienter allegations with generalized scienter allegations relevant to the entire TACC. (TACC P 108-19.) Even with the changes in the TACC, these generalized allegations are still unavailing. First, the insider trading allegations are problematic for precisely the same reasons identified in this Court's prior order. See *Dot Hill III,* 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *9. Plaintiffs have not made a single meaningful change to those allegations in the TACC. As stated in this Court's prior [*32] order:

> The insider trading allegations are problematic because the insider sales in September 2003 preceded the vast majority of the alleged misrepresentations. In reviewing plaintiffs' list of misrepresentations made before that date, the Court finds that many of these paragraphs contain no actual representations, cite representations which were factually true, and/or pertain to representations made after the September 2003 sales. Therefore, as currently pled, the individual defendants did not trade stock "at times calculated to maximize personal benefit from undisclosed inside information." *Ronconi,* 253 F.3d at 435; see *Vantive Corp.,* 283 F.3d at 1093 (finding no suspicious timing when stock sales made over a year before press release on which lawsuit was based).

Id. (citation omitted). Considering the same allegations here, the Court reaches the same conclusion.

Second, although Plaintiffs have changed their "hands on management" allegations, they also remain deficient. (TACC PP 116-18.) The Ninth Circuit has acknowledged that "allegations regarding management's role in a company may be relevant and help satisfy the PSLRA scienter requirement." *South Ferry LP, No. 2 v. Killinger,* 542 F.3d 776, 785 (9th Cir. 2008). [*33] However, "[g]eneral allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient." *Daou Systems,* 411 F.3d at 1022; *In re Ligand Pharms., Inc. Sec. Litig.,* 2005 U.S. Dist. LEXIS 44911, 2005 WL 2461151, at *14 (S.D. Cal. 2005). In light of the governing legal standards, the Court still finds Plaintiffs' "hands-on" scienter allegations unpersuasive. Plaintiffs' amended confidential witness statements do not sufficiently bolster these allegations. These statements still do not allege that any specific involvement in the subject matter of the misrepresentations. Cf. *Batwin v. Occam Networks, Inc.,* 2008 U.S. Dist. LEXIS 52365, 2008 WL 2676364, at *11-*12 (C.D. Cal. 2008) (holding that scienter was adequately pled because defendants actively monitored revenue reporting and the complaint detailed the specific ways individual defendants kept track of the company's weekly revenue). Moreover, even if this case was appropriate for one of the South Ferry exceptions, Plaintiffs have not adequately pled factual misrepresentations and thus the exceptions still do not apply. *Dot Hill III,* 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *9-*10.

Finally, [*34] Plaintiffs again argue that management departures shortly prior to Sun "award[ing] the new data storage product contract to another provider" creates a further inference of scienter. (TACC P 119.) As this Court previously found, executive departures occurring around the same time as a major drop in the stock price "are not in and of themselves evidence of scienter." *In re Cornerstone Propane Partners, L.P.,* 355 F. Supp. 2d

*1069, 1093 (N.D. Cal. 2005)*. In this case, the executive departure allegations are still inadequate to create an inference of scienter.

2. Group Pleading

Defendants argue that Plaintiffs are engaging in impermissible group pleading. (Memo. ISO Motion, at 13.) Specifically, they claim that the TACC "does not contain any alleged misstatements by Messrs. Sauey or Kammersgard." (Id.) Plaintiffs respond that group pleading is proper, and that, even if it is not, Dot Hill is liable for corporate-issued documents. (Opp., at 11-12.)

The 'group published information' doctrine is "a presumption that the allegedly false and misleading 'group published information' complained of is the collective action of officers and directors." *In re GlenFed, Inc. Sec. Litig., 60 F.3d 591, 593 (9th Cir. 1995)*. [*35] The doctrine "allows Plaintiffs to attribute statements to individual defendants based upon their corporate titles, rather than pleading facts that show that a defendant actually made, authored, or communicated a statement." *In re Syncor Intern. Corp. Sec. Litig., 327 F.Supp.2d 1149, 1156 (C.D. Cal. 2004)*. However, the continuing validity of the doctrine has come into question since the PSLRA's enactment. *Immune Response, 375 F. Supp. 2d at 1028-29*. The Ninth Circuit has yet to decide this issue, and district courts are split. Id. The weight of authority, including four circuits, supports the view that group pleading is no longer proper. See, e.g., *Winer Family Trust v. Queen, 503 F.3d 319, 337 (3rd Cir. 2007)*; *Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 603 (7th Cir. 2006)*, rev'd on other grounds by *551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)*; *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 365-66 (5th Cir. 2004)*; *Phillips v. Sci.-Atlanta, Inc., 374 F.3d 1015, 1018 (11th Cir. 2004)*; *In re Dura Pharms., Inc. Sec. Litig., 452 F. Supp. 2d 1005, 1031 (S.D. Cal. 2006)*; *Immune Response, 375 F. Supp. 2d at 1028-31*; *Allison v. Brooktree Corp., 999 F. Supp. 1342, 1350 (S.D. Cal. 1998)*. [*36] The Court finds this authority persuasive, and rejects the group pleading doctrine. Because none of the allegedly false statements identified by Plaintiffs were made by Defendants Sauey and Kammersgard, there is no basis for their liability and they must be dismissed from this action.

3. Safe Harbor Under the PSLRA

Defendants further contend that many of the statements in the TACC are protected under the PSLRA's safe harbor provision. (Memo. ISO Motion, at 22-24.) The PSLRA contains a provision which precludes liability for a forward looking statement which is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." *15 U. S.C. § 78u-5(c)*. The meaningful cautionary statement provision "does not require a listing of all factors that might make results different from those forecasted. Instead the warning must only mention important factors of similar significance to those actually realized." *In re Ligand Pharms., Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 44911, 2005 WL 2461151, at *17 (S.D. Cal. 2005)* (citing *In re Copper Mountain Sec. Litig., 311 F. Supp. 2d 857, 882 (N.D. Cal. 2004))*. [*37] "However, if the challenged statement is forward-looking, 'the plaintiffs must have alleged facts that would create a strong inference that the defendants made the forecasts with 'actual knowledge ... that the statement[s were] false or misleading' at the time made.'" *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1134 (9th Cir. 2004)* (quoting *Vantive, 283 F.3d at 1091*).

A number of statements cited in the TACC are clearly forward looking. For example, in P 47, Plaintiffs cite to a statement that Dot Hill's headcount would increase a little bit during 2004, but would not grow that significantly. Next, in P 67, Dot Hill stated that they planned to make their relationship with Sun a success during 2004. Third, in P 69, Dot Hill predicted that its integration of Chaparral technology would allow them to compete more efficiently. In P 76, Dot Hill stated that they expected products with Chaparral technology to start shipping in the first or second quarter of 2005. Finally, in P 91, Plaintiffs cite Dot Hill's statement that it "will continue to focus on increasing revenue through strategic partnerships . . . during 2004." Many other statements Plaintiffs [*38] rely on in the complaint are similarly forward-looking.

Each of these forward-looking statements are also bolstered by meaningful cautionary language. (See Gavin Decl. ISO Motion, Ex. C, at 20, 22 & 26; Tenser Decl. ISO Motion, Ex. D, at 270, 270.1.) For example, the statements cited in TACC P 91 contained the warnings that Dot Hill's customers could cancel or reduce their order or terminate the agreement. (Tencer Decl. ISO Motion, Ex. D, at 270) It also referred readers to the risks set forth in Dot Hill's 8-K, 10-K, and 10-Q filings. (Id., at 270.1; see also *In re LeapFrog Enters., Inc. Sec. Litig., 527 F. Supp. 2d 1033, 1047 (N.D. Cal. 2007)* (finding that reference to the "Risk Factors" section of the defendant's 10-K and 10-Q sufficed as "meaningful cautionary language").) Plaintiffs' claims that these are "vacuous tautologies" and this language is "ritual boilerplate" are unsupported. (Opp., at 24.)

Because the TACC contains a substantial number of forward-looking statements protected under the PSLRA's safe harbor provision, dismissal of the TACC is appropriate. However, these statements do not necessarily re-

quire dismissal with prejudice because the TACC also contains non-forward-looking [*39] statements.

### 4. Confidential Witnesses

Plaintiffs have added a number of details to their confidential witness statements since the SACC. See *Dot Hill III, 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at \*10-\*12*. Defendants argue that these statements still lack sufficient detail to plead falsity or scienter. (Memo. ISO Motion, at 20-21.) First, Defendants claim that Plaintiffs witness statements "contain impermissible conclusions and lack the corroborating details necessary to determine whether the witnesses had first hand knowledge of the topics they discuss." (Id., at 20.) Second, Defendants argue that the confidential witness statements fail to establish why they know the particular facts asserted. (Id., at 20-21.) Plaintiffs respond that their confidential witness statements contain sufficient supporting detail and that Defendants are ignoring the facts pled and their obvious implications. (Opp., at 4 n.3.)

The Court finds that some of Plaintiffs' confidential witness statements remain inadequate. Confidential witnesses "should be 'described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Nursing Home Pension Fund, 380 F.3d at 1233* [*40] (quoting *Novak, 216 F.3d at 314*). That is, there must be sufficient information that would allow the to "'be able to tell whether a confidential witness is speaking from personal knowledge or merely regurgitating gossip and innuendo.'" *Limantour, 432 F. Supp. 2d at 1141* (quoting *Metawave Commc'ns, 298 F. Supp. 2d at 1068*). In the present complaint, some confidential witness statements lack such information. The Court lists a selection of problematic statements here.

--In P 38(g), Plaintiffs cite Confidential Witness 11, a senior accounts payable clerk, for the proposition that Dot Hill "had been looking into a new ERP system but that management decided not to invest in one because of cost concerns." This allegation does not sufficiently explain how a clerk would be in the position of knowing about Dot Hill's exploration of a new ERP system or management's reasons for retaining the CHARTS system.

--In P 50(a), Plaintiffs cite Confidential Witness 22, an internal auditor, for several propositions, including that "Defendant Romm, knew of [accounting department] understaffing and inexperience and hired a Vice President of Finance to 'clean up.'" As pled, this statement does not establish [*41] how the witness came to have knowledge of why the Vice President of Finance was hired, since it appears this occurred before the confidential witness joined Dot Hill.

--In P 52(c), Plaintiff's include only a conclusion that Defendants were deliberately reckless. To the extent that this is intended to convey the a confidential witness statement, it is inadequate because it (1) does not specify who made the statement, (2) states only a conclusion, and (3) supports that conclusion with no facts.

--In P 82(a), Plaintiffs cite Confidential Witness 15, an OEM salesperson, to establish that "management [had] expectations divorced from reality" and that Dot Hill's management "knew" "product development was taking longer than anticipated." Again, Plaintiffs do not explain how a salesperson understood the "reality" of product development or how he knew whether Dot Hill had "competent" engineering. They also do not explain how a salesperson was in a position to know what management "all knew."

--Similarly, in P 100, Plaintiffs rely on Confidential Witness 15's statement "that the Individual Defendants' directive to maintain a ratio of revenue to employees in excess of $ 1 million per employer was [*42] the main focus of the company rather than the quality of employees." As before, it is unclear how this salesperson knew "the main focus of the company."

As before, Plaintiffs must amend in order to provide greater detail about the confidential witnesses and how they came to have the knowledge attributed to them.

### 5. Loss Causation

The Court further finds Plaintiffs' loss causation allegations inadequate with respect to the second, third, and fourth sets of misrepresentations.

First, the Court finds that the loss causation allegations regarding Plaintiffs' second set of misrepresentations are inadequate for two reasons. To begin with, as discussed above, Plaintiffs have not adequately pled facts demonstrating that the statements were false when made. Where there is no misrepresentation, there can be no link between that fictional misrepresentation and plaintiffs' loss. *Dura Pharms., 544 U.S. at 342*. Second, the February 2005 press release which Plaintiffs claim was the disclosing event specifically disclaimed any problems with Dot Hill's operational structure prior to 2004. (Tencer Decl. Ex. E, at 294.) All but one of the alleged misstatements took place in 2003. (See TACC PP 43-46; but see [*43] id. P 48.) A disclosing event which does not actually disclose the falsity of the alleged misrepresentations is inadequate.

Second, with respect to loss causation on the Sun and Chaparral allegations, the Court finds it inadequate. As in the SACC, Plaintiffs do not allege any specific disclosure showing that the delay in the Chaparral integration was ever revealed to the market. [5] Further, Plaintiffs have not pled a disclosing event regarding the al-

leged misstatements about Dot Hill's relationship with Sun. The press release stating that Sun had taken its business elsewhere is not a disclosure of a misstatement. It announced that Sun would no longer be working with Dot Hill, not that Sun was "displeased" with Dot Hill or that the companies' relationship was "not nearly as rosy" as Dot Hill allegedly claimed. (TACC P 85.) Since "the complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses," Plaintiffs' complaint is inadequate. *Metzler Inv. GMBH*, 540 F.3d 1049, 2008 WL 2853402, at *9;

> 5  To the extent that the April 2006 announcement regarding Sun is the alleged source of the disclosure, (Opp., at 22) it is not a disclosure. [*44] As this Court previously found, that press release contains "no disclosure of any information concerning the progress of the Chaparral integration." *Dot Hill III*, 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *12.

Finally, Plaintiffs have not resolved the loss causation problems identified in this Court's prior order with respect to the new customer misrepresentations. *Dot Hill III*, 2008 U.S. Dist. LEXIS 88791, 2008 WL 4184616, at *12. Plaintiffs claim that their economic loss took place in 2004 as "the market increasingly began to suspect . . . that Dot Hill would remain a one-trick pony dependent almost wholly on sales to Sun." (TACC P 124; accord P 121.) Again, however, many of Dot Hill's representations concerning the outreach to new customers and formation of agreements with those customers also took place in 2004. (Id. PP 88(g)-(h), 94-97.) As the misrepresentations continued throughout the period in which Plaintiffs allegedly discovered the fraud, Plaintiffs fail to point to any disclosure that Defendants' ongoing misrepresentations were fraudulent. At the motion to dismiss phase, the Court may reject this "facially implausible" theory of loss causation. See *Gilead Scis.*, 536 F.3d 1049, 2008 WL 3271039, at *8.

6. Exchange Act § 20(a)

Plaintiffs have [*45] again failed to plead a viable cause of action under Exchange Act § 10(b). "To be liable under [Exchange Act] section 20(a), the defendants must be liable under another section of the Exchange Act." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999); *Ligand Pharms.*, 2005 U.S. Dist. LEXIS 44911, 2005 WL 2461151, at *20 n.16. Therefore, the Court dismisses Plaintiffs' second cause of action for a violation of *section 20(a)*.

7. Leave to Amend

Finding that justice so requires, the Court will grant Plaintiffs leave to amend and deny Defendants' request to dismiss the TACC with prejudice. However, the Court is cognizant of Defendants' arguments supporting a dismissal with prejudice. If Plaintiffs are unable to resolve the concerns stated herein to the Court's satisfaction, it would be difficult to avoid the conclusion that further amendment would be futile.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss the third amended consolidated class action complaint **WITH LEAVE TO AMEND.** If Plaintiffs elect to file an amended complaint, they **SHALL FILE** within fourteen (14) days of the date this Order is electronically filed. If Plaintiffs file a Fourth Amended Consolidated [*46] Class Action Complaint, they **SHALL LODGE** and **SERVE** a redlined copy within five (5) business days of the electronic filing.

IT IS SO ORDERED.

DATED: March 18, 2009

/s/ Janis L. Sammartino

Honorable Janis L. Sammartino

United States District Judge